**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) ) ) | Case No. 23-11069 (___) |
| Debtors. | ) ) ) | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING
NOTIFICATION AND HEARING PROCEDURES FOR CERTAIN
TRANSFERS OF COMMON STOCK AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

**Relief Requested**

1.  The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), (a) approving certain notification and hearing procedures, substantially in the form attached as Exhibit 1, to the Interim Order (the "Procedures"), related to certain transfers of Debtor Yellow Corporation's existing classes (or series) of common stock or in each case any Beneficial Ownership[3] therein (any such record or Beneficial Ownership of common stock,

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration, as applicable.

[3] "Beneficial Ownership" will be determined in accordance with the applicable rules of sections 382 and 383 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1–9834 as amended (the "IRC"), and the U.S. Department of the Treasury regulations thereunder ("Treasury Regulations") (other than Treasury Regulations

collectively, the "Common Stock"); (b) directing that any purchase, sale, other transfer of Common Stock in violation of the Procedures shall be null and void *ab initio*; and (c) granting related relief. In addition, the Debtors request that the Court schedule a final hearing approximately twenty-one days from the Petition Date.

### Jurisdiction and Venue

2.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory bases for the relief requested herein are sections 105, 362, and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 3002

---

section 1.382-2T(h)(2)(i)(A)), and includes direct, indirect, and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) a holder would be considered to beneficially own equity securities that such holder has an Option to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rules 2002-1 and 9013-1(m).

## Background

5. The Debtors were a leading provider of transportation services with a 100-year history. With its family of trucking brands—Yellow Logistics, Holland, Reddaway, New Penn, and YRC—the Debtors provided their customers with one of the most comprehensive less-than-truckload ("<u>LTL</u>") networks in North America.

6. The Debtors commenced these chapter 11 cases to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders. Through these chapter 11 cases, the Debtors will immediately commence an orderly and value-maximizing wind-down of their businesses. The Debtors will use their time in chapter 11 to market a sale or sales of all or substantially all of their assets.

7. On August 6, 2023 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no official committees have been appointed or designated.

## The Tax Attributes

8. Companies generally have a variety of tax attributes. A company generates net operating losses ("<u>NOLs</u>") if the operating expenses it has incurred exceed the revenues it has earned during a single tax year. A company may apply or "carry forward" NOLs to reduce future

3

tax payments (subject to certain conditions discussed below).[4]  *See* IRC § 172.  Generally, a company's deduction for net business interest expense is limited to 30 percent of its adjusted taxable income plus certain other amounts.  Any business interest expense disallowed is carried forward and treated as business interest expense in the following tax year ("163(j) Carryforwards").  *See* IRC § 163.  While NOLs and 163(j) Carryforwards are the most ubiquitous tax attributes, companies can also generate a variety of other tax attributes, including foreign tax business, business tax credits, and capital loss carryforwards, as the case may be.  Moreover, the "tax basis" in a company's assets can be vital to determining a company's tax attributes.

9.    As discussed below, a company's tax attributes can become subject to significant limitation under IRC §§ 382 and 383 if an "ownership change" occurs.  The purpose of the relief requested herein is to minimize the risk that an "ownership change" occurs before the conclusion of these restructuring cases.  In doing so, the Debtors intend to maximize the value of their estates by limiting tax liabilities generated during or as a result of the actions taken during the cases.

10.   The Debtors currently estimate that, as of December 31, 2022, they had approximately $846.2 million in federal NOLs, approximately $183.8 million of 163(j) Carryforwards, and approximately $100,000 in general business credits (together, with certain other tax attributes, the "Tax Attributes").[5]  The Debtors may generate additional Tax Attributes in the 2023 tax year, including during the pendency of these chapter 11 cases.  The Tax Attributes are potentially of significant value to the Debtors and their estates because the Debtors

---

[4]  In addition, under certain circumstances, certain NOLs generated may be "carried back" to offset taxable income in prior years.  The specific rules regarding carrybacks and carryforwards depend on when a particular NOL was generated.

[5]  Amounts are estimates and subject to change.

may be able to utilize the Tax Attributes to offset any taxable income, including any such taxable income generated by transactions consummated during these chapter 11 cases (including with respect to any taxable disposition of some or all of the Debtors' assets). Additionally, depending on the structure utilized in the Plan, in the event any of the Debtors' Tax Attributes were to survive, the Debtors may be able to carry forward certain of those Tax Attributes to offset federal taxable income or federal tax liability in future years. The relief requested herein is expected to preserve the value of the Tax Attributes to the benefit of the Debtors' stakeholders.

I.   **An "Ownership Change" May Negatively Affect the Debtors' Utilization of the Tax Attributes.**

11.   Sections 382 and 383 of the IRC limit the amount of federal taxable income and federal tax liability, respectively, that can be offset by a corporation's tax attributes in taxable years (or portions thereof) following an "ownership change." Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more "5 percent" shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the three-year testing period ending on the date of the ownership change. The total percentage point increases of stock owned by one or more "5 percent" shareholders within the measuring period is generally referred to as the amount of the "ownership shift." In situations involving multiple classes of stock with different rights, the determination of whether a shareholder is a "5 percent" shareholder is made by reference to stock value (without regard to certain considerations such as control premiums or minority discounts, and with reference to certain mechanical tests). For example, an ownership change would occur in the following situation:

> An individual ("A") owns 50.1 percent of the stock of corporation XYZ. A sells her 50.1 percent interest to another individual ("B"), who owns 5 percent of XYZ's stock. Under section 382 of the IRC, an ownership change has occurred because B's interest in XYZ has

increased more than 50 percentage points (from 5 percent to 55.1 percent) during the testing period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a 5 percent shareholder and increases his ownership by more than 50 percentage points during the testing period.

12. It is critical to understand that, under these rules, a company can be harmed as a result of actions by parties that are unknown to the company. As noted above, if a person unknown to the company were to acquire more than 5 percent of the company's stock (determined in accordance with the rules set forth above), the company would experience an "ownership shift" (or an increase in the magnitude of an "ownership shift") that could lead to an ownership change. By the time the company knew who the unidentified shareholder was, the shareholder would have already purchased the shares, and the harm would be done. Accordingly, for the Procedures to be effective, the Procedures must bind unknown parties.

13. As one particularly salient example, companies in certain instances may enact charter restrictions to protect their tax attributes. Such charter restrictions may impose *substantive* limitations on sales and purchases of equity that are similar to the procedural limitations requested in this motion. Although such charter restrictions are put to a shareholder vote before being enacted, they always bind unknown parties (*i.e.*, persons that are not shareholders at the time the vote is taken) and do so via public information issued by the company in connection with the adoption of such charter restrictions. It is true that the relief requested in this motion is not being put to a shareholder vote—nor should it be, because the requested relief is intended to maximize the value of the Debtors for all stakeholders—but unlike charter restrictions, the relief requested in this motion merely implements *procedures* that must be observed before relevant actions are taken.

14. If an ownership change occurs, section 382 of the IRC limits the amount of a corporation's future taxable income that may be offset by its "pre-change losses" and section 383 of the IRC limits the amount of a corporation's future tax liability that may be offset by its "excess credits," in each case, to an annual amount based on the fair market value of all of the stock of the corporation prior to the ownership change multiplied by the long-term tax-exempt rate that applies to the month of the ownership change.[6]  *See* IRC §§ 382(b) and 383(a). Pre-change losses and excess credits include the Debtors' Tax Attributes and any so-called "realized built-in losses" (as defined in section 382(h)(3) of the IRC).[7]  Once a Tax Attribute is limited under section 382 or 383 of the IRC, its use may be limited forever.[8]  Thus, certain transfers with respect to the Beneficial Ownership of Common Stock effected before the effective date of the Debtors' consummation of the relevant chapter 11 proceedings may trigger an "ownership change" for IRC purposes, severely endangering the Debtors' ability to utilize the Tax Attributes, which would cause substantial damage to the Debtors' estates.

15. Notably, the Debtors have limited the relief requested herein to the extent necessary to preserve estate value. Specifically, the proposed Interim Order and Final Order will affect only (a) holders of the equivalent of more than 2,345,847 shares of Common Stock[9] (*i.e.*, 4.5 percent

---

[6] The applicable long-term tax-exempt rate changes from month to month. For ownership changes occurring in August 2023, the applicable long-term tax-exempt rate is 3.05 percent.

[7] The rules relating to potential limitations on the ability to offset taxable income with so-called realized built-in losses are highly complex and depend on, among other things, the extent (if any) of a debtor's "net unrealized built-in loss." A net unrealized built-in loss is equal to the excess of the aggregate adjusted basis of all of a corporation's applicable assets over their fair market value (as determined for purposes of section 382 of the IRC) immediately prior to the ownership change. IRC § 382(h)(3)(A)(i). Once a net unrealized built-in loss is limited under section 382 or 383 of the IRC, its use is limited for 5 years.

[8] Realized built-in losses that are deducted beginning after the expiration of a five-year "recognition period" are no longer subject to limitation, but any realized built-in losses that are deducted prior to the expiration of such period are limited forever.

[9] Based on approximately 52,129,939 shares of Common Stock outstanding as of the Petition Date.

or more of Beneficial Ownership of the Common Stock) and (b) parties who are interested in purchasing sufficient Common Stock to result in such party becoming a holder of 4.5 percent or more of Beneficial Ownership of the outstanding Common Stock.

16. To maximize the use of the Tax Attributes and enhance recoveries for the Debtors' stakeholders, the Debtors seek limited relief that will enable them to closely monitor certain transfers of Beneficial Ownership of Common Stock so as to be in a position to act expeditiously to prevent such transfers, if necessary, with the purpose of preserving the Tax Attributes. By establishing and implementing such Procedures, the Debtors will be in a position to object to "ownership changes" that threaten their ability to preserve the value of their Tax Attributes for the benefit of the estates.

## II. Proposed Procedures for Transfers of Common Stock.

17. The Procedures are the mechanism by which the Debtors propose that they will monitor and, if necessary, object to certain transfers of Beneficial Ownership of Common Stock to ensure preservation of the Tax Attributes. The Procedures, which are fully set forth in Exhibit 1 to the Interim Order and the Final Order, respectively, are detailed below.[10]

Procedures for Transfers of Common Stock

a. Any entity (as defined in section 101(15) of the Bankruptcy Code) that is a Substantial Shareholder (as defined herein) must file with the Court, and serve upon: (i) the Debtors, Yellow Corporation, 200 W. 110th Street, Overland Park, Kansas 66211, Attn.: General Counsel; (ii) proposed co-counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, 60654, Attn.: Patrick J. Nash (patrick.nash@kirkland.com), David Seligman (david.seligman@kirkland.com), and Whitney Fogelberg (whitney.fogelberg@kirkland.com), and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith

---

[10] Capitalized terms used in this section but not otherwise defined herein have the meanings given to them in the Procedures. To the extent that this summary and the terms of the Procedures are inconsistent, the terms of the Procedures control.

(allyson.smith@kirkland.com); (iii) proposed co-counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, PO Box 8705, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com) and Timothy P. Cairns (tcairns@pszjlaw.com); (iv) counsel to any statutory committee appointed in these chapter 11 cases; (v) the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Jane Leamy (jane.m.leamy@usdoj.gov); and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002 or Local Counsel Rule 2002-(b), (collectively, the "Declaration Notice Parties"), a declaration of such status, substantially in the form attached to the Procedures as Exhibit 1A (each, a "Declaration of Status as a Substantial Shareholder"), on or before the later of (A) twenty calendar days after the date of the Notice of Interim Order, or (B) ten calendar days after becoming a Substantial Shareholder; *provided* that, for the avoidance of doubt, the other procedures set forth herein shall apply to any Substantial Shareholder even if no Declaration of Status as a Substantial Shareholder has been filed.[11]

b. Prior to effectuating any transfer of Beneficial Ownership of Common Stock that would result in an increase in the amount of Common Stock of which a Substantial Shareholder has Beneficial Ownership or would result in an entity or individual becoming a Substantial Shareholder, the parties to such transaction must file with the Court, and serve upon the Declaration Notice Parties, an advance written declaration of the intended transfer of Common Stock, as applicable, substantially in the form attached to the Procedures as Exhibit 1B (each, a "Declaration of Intent to Accumulate Common Stock").

c. Prior to effectuating any transfer of Beneficial Ownership of Common Stock that would result in a decrease in the amount of Common Stock of which a Substantial Shareholder has Beneficial Ownership or would result in an entity or individual ceasing to be a Substantial Shareholder, the parties to such transaction must file with the Court, and serve upon the Declaration Notice Parties, an advance written declaration of the intended transfer of Common Stock substantially in the form attached to the Procedures as Exhibit 1C (a "Declaration of Intent to Transfer Common Stock," and together with a Declaration of Intent to Accumulate Common Stock a "Declaration of Proposed Transfer").

d. The Debtors and the other Declaration Notice Parties shall have twenty calendar days after receipt of a Declaration of Proposed Transfer to file with the Court and serve on such Substantial Shareholder or potential

---

[11] Notwithstanding anything to the contrary in these procedures and notwithstanding that the U.S. Department of the Treasury is a Substantial Shareholder, the U.S. Department of the Treasury is excluded from the requirements in this paragraph (a) and shall not be required to file, or to serve upon any person or entity, a Declaration of Status as a Substantial Shareholder.

        Substantial Shareholder an objection to any proposed transfer of Beneficial Ownership of Common Stock, as applicable, described in the Declaration of Proposed Transfer on the grounds that such transfer might adversely affect the Debtors' ability to utilize their Tax Attributes. If the Debtors or any of the other Declaration Notice Parties file an objection, such transaction will remain ineffective unless such objection is withdrawn, or such transaction is approved by a final and non-appealable order of the Court. If the Debtors and the other Declaration Notice Parties do not object within such twenty-day period, (a) the Debtors must provide written notice to (i) Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn.: Dennis F. Dunne (DDunne@milbank.com) and Matthew L. Brod (MBrod@milbank.com) (as counsel to the administrative agent to the Prepetition B-2 Lenders), (ii) Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602, Attn: Michael Messersmith (Michael.Messersmith@arnoldporter.com), Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, New York 10019, Attn.: Benjamin Mintz (Benjamin.Mintz@arnoldporter.com), and Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., N.W., Washington, DC 20001, Attn.: Rosa Evergreen (Rosa.Evergreen@arnoldporter.com) (as counsel to the United States Department of Treasury), (iii) the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Jane Leamy (jane.m.leamy@usdoj.gov), (iv) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020-1095, Attn: Scott Greissman (sgreissman@whitecase.com), Elizabeth Feld (efeld@whitecase.com), and Andrew Zatz (azatz@whitecase.com) (as counsel to Beal Bank USA), and (v) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn.: Hampton, Foushee (hfoushee@choate.com); and (b) such transaction can proceed solely as set forth in the Declaration of Proposed Transfer. Further transactions within the scope of this paragraph must be the subject of additional notices in accordance with the procedures set forth herein, with an additional twenty-day waiting period for each Declaration of Proposed Transfer. To the extent that the Debtors receive an appropriate Declaration of Proposed Transfer and determine in their business judgment not to object, they shall provide notice of that decision as soon as is reasonably practicable to any statutory committee(s) appointed in these chapter 11 cases.

e.      For purposes of these Procedures: (i) a "<u>Substantial Shareholder</u>" is any entity or individual person that has Beneficial Ownership of at least: 2,345,847 shares of Common Stock (representing approximately 4.5 percent of all issued and outstanding shares of Common Stock); and (ii) "<u>Beneficial Ownership</u>" will be determined in accordance with the applicable rules of section 382 of the IRC, and the Treasury Regulations promulgated thereunder (other than Treasury Regulations section 1.382-2T(h)(2)(i)(A)) and includes direct, indirect, and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially

own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) a holder would be considered to beneficially own equity securities that such holder has an Option (as defined herein) to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

Notice Procedures

a.  No later than two business days following entry of the Interim Order, the Debtors shall serve a notice by first class mail, substantially in the form attached to the Procedures as Exhibit 1D (the "Notice of Interim Order"), on (i) the U.S. Trustee for the District of Delaware; (ii) the entities listed on the consolidated list of creditors holding the 30 largest unsecured claims; (iii) the U.S. Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) counsel to any official committee appointed in these chapter 11 cases; (vi) all registered and nominee holders of Common Stock; and (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002 or Local Rule 2002-1(b). Additionally, no later than two business days following entry of the Final Order, the Debtors shall serve a Notice of Interim Order modified to reflect that the Final Order has been entered (as modified, the "Notice of Final Order") on the same entities that received the Notice of Interim Order.

b.  All registered and nominee holders of Common Stock shall be required to serve the Notice of Interim Order or Notice of Final Order, as applicable, on any holder for whose benefit such registered or nominee holder holds such Common Stock, down the chain of ownership for all such holders of Common Stock.

c.  Any entity or individual, or broker or agent acting on such entity's or individual's behalf who sells Common Stock to another entity or individual, shall be required to serve a copy of the Notice of Interim Order or Notice of Final Order, as applicable, on such purchaser of such Common Stock, or any broker or agent acting on such purchaser's behalf.

d.  To the extent confidential information is required in any declaration described in the Procedures, such confidential information may be filed and served in redacted form; *provided*, *however*, that any such declarations served on the Debtors **shall not** be in redacted form. The Debtors shall keep

all information provided in such declarations strictly confidential and shall not disclose the contents thereof to any person except: (i) to the extent necessary to respond to a petition or objection filed with the Court; (ii) to the extent otherwise required by law; or (iii) to the extent that the information contained therein is already public; *provided*, *however*, that the Debtors may disclose the contents thereof to their professional advisors, who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order. To the extent confidential information is necessary to respond to an objection filed with the Court, such confidential information shall be filed under seal or in a redacted form.

**Basis for Relief**

18. Section 541 of the Bankruptcy Code provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. The Tax Attributes are property of the Debtors' estates. *See Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991) ("We hold that the right to a carryforward attributable to its . . . NOL was property of [the debtor's] bankruptcy estate."); *Official Comm. of Unsecured Creditors v. Forman (In re Forman Enters., Inc.)*, 273 B.R. 408, 416 (Bankr. W.D. Pa. 2002) (finding that NOLs are property of the debtors' estates); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) (same). Section 362(a)(3) of the Bankruptcy Code, moreover, stays "any act [of an entity] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Accordingly, any act of a holder of a debtor's equity securities that causes the termination, or limits use, of the Tax Attributes violates the automatic stay. *See, e.g.*, *Prudential Lines*, 928 F.2d at 574 (holding that causing the termination of or adversely affecting the value of a debtor's NOL violates the automatic stay); *In re Phar-Mor, Inc.*, 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) ("[T]he sale of stock is prohibited by § 362(a)(3) as an exercise of control over the NOL, which is property of the estate.").

19. Implementing the Procedures is necessary and appropriate to enforce the automatic stay and, critically, to preserve the value of the Tax Attributes for the benefit of the Debtors' estates. Under sections 382 and 383 of the IRC, certain transfers with respect to Beneficial Ownership of Common Stock prior to the consummation of a chapter 11 plan could cause the termination or limit the use of the Tax Attributes. As stated above, Yellow currently estimates that, as of December 31, 2022, it had approximately $846.2 million of federal NOLs, approximately $183.8 million of 163(j) Carryforwards, and approximately $100,000 of general business credits. In addition, the Debtors may generate additional Tax Attributes in the 2023 tax year. As noted above, these Tax Attributes may be necessary to address tax consequences resulting from the implementation of the Plan and, depending upon the structure utilized to consummate the Plan, may provide the potential for material future tax savings (including in post-emergence years). The termination or limitation of the Tax Attributes could, therefore, be materially detrimental to all parties in interest, including by potentially limiting the Debtors' ability to utilize certain structures to consummate the Plan. Granting the relief requested herein will preserve the Debtors' flexibility in operating their businesses during the pendency of these chapter 11 cases and implementing an exit plan that makes full and efficient use of the Tax Attributes and maximizes the value of the Debtors' estates.

20. Additionally, the Procedures do not bar all transfers of Beneficial Ownership of Common Stock. The Debtors seek to establish procedures only to monitor those types of transactions that would pose a serious risk under the ownership change test pursuant to sections 382 and 383 of the IRC and to preserve the Debtors' ability to seek substantive relief if it appears that a proposed transfer could jeopardize the Debtors' utilization of the Tax Attributes. Because of the Tax Attributes' importance to the Debtors' restructuring, and thus all parties in

interest, the benefits of implementing the Procedures outweigh the drawbacks of subjecting a small subset of transfers to the Procedures.

21. Courts in this and other jurisdictions have routinely restricted transfers of equity interests with respect to beneficial interests of a debtor's stock, or instituted notice procedures regarding proposed transfers, to protect a debtor against the possible loss of its tax attributes. *See, e.g.*, *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del July 19, 2023) (final order establishing notification and hearing procedures related to certain stock transfers); *In re SIO2 Medical Products, Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. Apr. 24, 2023) (same); *In re Carestream Health, Inc.,* No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022) (same); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (interim order establishing notification and hearing procedures related to certain stock transfers); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021) (final order establishing notification and hearing procedures related to certain stock transfers).[12]

22. Accordingly, the Debtors request that the Court enter the Interim Order and the Final Order approving the Procedures to protect the Debtors against the possible loss or limitation of the Debtors' Tax Attributes.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

23. Bankruptcy Rule 6003 empowers a court to grant certain relief within the first twenty-one days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical, and the failure to receive the requested

---

[12] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

relief during the first twenty-one days of these chapter 11 cases could impact the Debtors' operations at this important juncture. The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and the Court should grant the requested relief.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

24.     To the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

25.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'

estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

### Notice

26. The Debtors will provide notice of this motion to: (a) the United States Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice; (h) the DIP Agent and counsel thereto; (i) Milbank LLP, as counsel to certain investment funds and accounts managed by affiliates of Apollo Capital Management, L.P.; (j) the administrative and collateral agents under the B-2 Term Loan and counsel thereto; (k) the ABL Agent and counsel thereto; (l) White & Case LLP, as counsel to Beal Bank USA; (m) the administrative and collateral agents under the UST Credit Agreements and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties"). As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m). In light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

27. No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: August 7, 2023
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (*pro hac vice* pending) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (*pro hac vice* pending) |
| Peter J. Keane (DE Bar No. 5503) | Whitney Fogelberg (*pro hac vice* pending) |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 919 North Market Street, 17th Floor | 300 North LaSalle |
| P.O. Box 8705 | Chicago, Illinois 60654 |
| Wilmington, Delaware 19801 | Telephone: (312) 862-2000 |
| Telephone: (302) 652-4100 | Facsimile: (312) 862-2200 |
| Facsimile: (302) 652-4400 | Email: patrick.nash@kirkland.com |
| Email: ljones@pszjlaw.com | david.seligman@kirkland.com |
| tcairns@pszjlaw.com | whitney.fogelberg@kirkland.com |
| pkeane@pszjlaw.com | |
| ecorma@pszjlaw.com | -and- |
| | Allyson B. Smith (*pro hac vice* pending) |
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone: (212) 446-4800 |
| | Facsimile: (212) 446-4900 |
| | Email: allyson.smith@kirkland.com |

*Proposed Co-Counsel for the Debtors and Debtors in Possession*