IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**MOTION OF
DEBTORS FOR ENTRY OF
INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS
TO (A) FILE A CONSOLIDATED LIST
OF CREDITORS IN LIEU OF SUBMITTING A
SEPARATE MAILING MATRIX FOR EACH DEBTOR,
(B) FILE A CONSOLIDATED LIST OF THE DEBTORS'
THIRTY LARGEST UNSECURED CREDITORS, (C) SERVE CERTAIN
PARTIES IN INTEREST BY EMAIL, (D) APPROVE THE FORM AND
MANNER OF SERVICE OF THE NOTICE OF COMMENCEMENT, AND
(E) REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION
OF NATURAL PERSONS, (II) WAIVING THE REQUIREMENT TO FILE A
LIST OF EQUITY SECURITY HOLDERS, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion:[2]

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith. Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration, as applicable.

**Relief Requested**

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"), (a) authorizing, but not directing, the Debtors to (i) file a consolidated list of creditors in lieu of submitting a separate mailing matrix for each Debtor, (ii) file a consolidated list of the Debtors' thirty largest unsecured creditors in lieu of filing lists for each Debtor, (iii) serve certain parties in interest by email, (iv) approve the form and manner of service of the notice of commencement of these chapter 11 cases, (v) redact certain personally identifiable information of natural persons, (b) waiving the requirement to file a list of, and to provide notice directly to, the equity security holders of Debtor Yellow Corporation, and (c) granting related relief. In addition, the Debtors request that the Court schedule a final hearing approximately twenty-one days from the Petition Date.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 107(c), and 521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 1007, 2002, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 1001-1(c), 1007-2, 2002-1 and 9013-1(m), and 9018-1(d).

## Background

5.      The Debtors were a leading provider of transportation services with a 100-year history. With its family of trucking brands—Yellow Logistics, Holland, Reddaway, New Penn, and YRC—the Debtors provided their customers with one of the most comprehensive less-than-truckload ("LTL") networks in North America.

6.      The Debtors commenced these chapter 11 cases to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders. Through these chapter 11 cases, the Debtors will immediately commence an orderly and value-maximizing wind-down of their businesses. The Debtors will use their time in chapter 11 to market a sale or sales of all or substantially all of their assets.

7.      On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no official

committees have been appointed or designated.

### Basis for Relief

**I.   Cause Exists to Authorize the Debtors to File a Consolidated List of Creditors in Lieu of Filing a Separate Mailing Matrix for Each Debtor.**

8.  Local Rule 2002-1(f)(v) requires each debtor, or its duly retained agent in jointly administered cases, to maintain a separate creditor mailing matrix. Local Rule 1001-1(c) permits modification of the Local Rules by the Court "in the interest of justice." Permitting the Debtors to maintain a single consolidated list of creditors (the "Creditor Matrix") in lieu of maintaining a separate creditor matrix for each Debtor is warranted. Requiring the Debtors to segregate and convert their computerized records to a Debtor-specific creditor matrix format would be an unnecessarily burdensome task and could result in duplicative mailings.

9.  Courts in this district have granted relief similar to the relief requested herein since the modifications to Local Rule 2002-1(f)(v) took effect. *See, e.g.*, *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 19, 2023) (authorizing filing of consolidated list of creditors in lieu of separate mailing matrices); *In re SiO2 Med. Prods., Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. June 15, 2023) (same); *In re Lannett Co., Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. May 5, 2023) (same); *In re FB Debt Fin. Guar., LLC*, No. 23-10025 (KBO) (Bankr. D. Del. Jan. 13, 2023) (same); *In re Carestream Health, Inc.,* No. 22-10778 (JKS) (Bankr. D. Del. Oct. 7, 2022) (same).[3]

**II.  It Is Appropriate and Necessary for the Debtors to File a Single Consolidated List of the Debtors' Thirty Largest Unsecured Creditors in These Chapter 11 Cases.**

10.  Bankruptcy Rule 1007(d) provides that a debtor shall file "a list containing the name, address, and claim of the creditors that hold the 20 largest unsecured claims, excluding

---

[3]  Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

insiders" (the "Top 20 List"). Fed. R. Bank. P. 1007(d); *see also* Local Rule 1007-2(a) (requiring a debtor to file "a list containing the name and complete address of each creditor"). This Top 20 List is primarily used by the United States Trustee for the District of Delaware (the "U.S. Trustee") to evaluate the types and amounts of unsecured claims against the debtor and thereby identify potential candidates to serve on an official committee of unsecured creditors appointed in the debtor's case pursuant to section 1102 of the Bankruptcy Code.

11. The Debtors request authority to file a single list of their thirty largest general unsecured, non-insider creditors on a consolidated basis (the "Top 30 List"). Because the Top 20 Lists of the Debtors could overlap, and certain Debtors may have fewer than thirty significant unsecured creditors, filing separate Top 20 Lists for each Debtor would be of limited utility. In addition, compiling separate Top 20 Lists for each individual Debtor could consume an excessive amount of the Debtors' and their advisors' limited time and resources. The Debtors believe that the consolidated Top 30 List will better aid the U.S. Trustee in its efforts to communicate with these creditors.

12. Courts in this district have granted relief similar to the relief requested herein. *See, e.g.*, *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 19, 2023) (authorizing filing of consolidated top thirty general unsecured creditors list); *In re SiO2 Med. Prods., Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. June 15, 2023) (same); *In re Lannett Co., Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. May 5, 2023) (same); *In re Performance Powersports Grp. Investor, LLC*, No. 23-10047 (LSS) (Bankr. D. Del. Feb. 9, 2023) (same); *In re Gigamonster*

*Networks, LLC,* No. 23-10051 (JKS) (Bankr. D. Del. Jan. 18, 2023) (same); *In re DCL Holdings (USA) Inc.*, No. 22-11319 (JKS) (Bankr. Del. Dec. 22, 2022) (same).[4]

13. Accordingly, filing the Top 30 List is necessary for the efficient and orderly administration of these chapter 11 cases, appropriate under the facts and circumstances, and in the best interests of the Debtors' estates.

**III.   Request For Authority to Provide Service to Creditors via Email Is Appropriate and Should Be Approved.**

14. Although the Bankruptcy Rules generally require notices to be served on creditors at their addresses, they give significant latitude to bankruptcy courts for modifying the general rule. *See* Fed. R. Bankr. P. 2002(m) and 9007. Bankruptcy courts have explicit authority to modify the manner in which notice is given. Fed. R. Bankr. P. 2002(m). In complex chapter 11 cases in this and other districts, courts have permitted debtors to provide email service to creditors. *See In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 19, 2023) (authorizing debtors to provide email service to customers with a valid email address on file with the debtors and non-customer creditors who have a valid email address on file with the debtors, but have not designated a physical mailing address); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Jan. 9, 2023) (same); *In re Cred Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Nov. 10, 2020) (authorizing debtors to serve customers via email); *see also In re Benefytt Techs. Inc.*, No. 23-90566 (Bankr. S.D. Tex. May 23, 2023) (authorizing debtors to provide email service of the notice of commencement to all parties in the creditor matrix); *In re Celsius Network LLC*, No. 22-10964 (Bankr. S.D.N.Y. Sept. 16, 2022) (authorizing debtors to provide notices to

---

[4]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

customers by email and web/mobile application in addition to first class mail, as applicable).

15. In 2022, the Debtors provided freight services for approximately 250,000 customers. In addition, the Debtors have approximately 30,000 employees and former employees. Email service will help alleviate administrative burdens. Not only is email service likely the most efficient and cost-effective manner by which service of all interested parties can be completed, it is also the most likely to facilitate creditor responses. Accordingly, the Debtors request authority to serve their creditors by email, where an email address is available to the Debtors.

16. The Debtors submit that implementation of the procedures requested herein is appropriate in these chapter 11 cases and well within the Court's equitable powers under section 105(a) of the Bankruptcy Code.

**IV.   Service of Notices to Creditors by the Claims and Noticing Agent Is Warranted.**

17. Bankruptcy Rule 2002(a) provides, in relevant part, that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least twenty-one days' notice by mail of: the meeting of creditors under § 341 or § 1104(b) of the Code." Fed. R. Bankr. P. 2002(a). Subsection (f) provides that notice of the order for relief shall be sent by mail to all creditors. *See* Fed. R. Bankr. P. 2002(f).

18. The Debtors request that Epiq Corporate Restructuring, LLC ("Epiq"), the Debtors' proposed claims and noticing agent (the "Claims and Noticing Agent"), undertake all mailings and email service, as applicable, directed by the Court or the U.S. Trustee or as required in section 342(a) of the Bankruptcy Code and Bankruptcy Rules 2002(a) and (f), including serving the notice of commencement of these chapter 11 cases, substantially in the form attached as Exhibit 1 to the Interim Order (the "Notice of Commencement"), on all parties listed on the Creditor Matrix to advise them of the meeting of creditors under section 341 of the Bankruptcy Code. Service of the

Notice of Commencement on the Creditor Matrix will not only avoid confusion among creditors but will also prevent the Debtors' estates from incurring unnecessary costs associated with serving multiple notices to the parties listed on the Debtors' voluminous Creditor Matrix. Accordingly, service of the Notice of Commencement is warranted.

19. The Debtors believe that using the Claims and Noticing Agent to promptly provide notices to all applicable parties will maximize efficiency in administering these chapter 11 cases and will ease administrative burdens that would otherwise fall upon the Court and the U.S. Trustee. Additionally, the Claims and Noticing Agent will assist the Debtors in preparing creditor lists and mailing initial notices, and, therefore, it is more efficient to authorize the Claims and Noticing Agent to mail or email, as applicable, all notices, including the Notice of Commencement. Accordingly, Epiq should undertake such mailings and email service.

## V. Redaction of Certain Confidential Information of Natural Persons Is Warranted.

20. Section 107(c)(1) of the Bankruptcy Code provides that the Court:

> for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
>
> (A) Any means of identification . . . contained in a paper filed, or to be filed, in a case under [the Bankruptcy Code].
>
> (B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1). In addition, privacy and data regulations have been enacted in key jurisdictions where the Debtors operate and conduct business. For example, in 2018, the state of California enacted the California Consumer Privacy Act of 2018 (the "CCPA"), which provides individuals domiciled in California the right to, among other things, request their collected

personal information, including postal addresses, be deleted by entities subject to the regulation and opt out of the sale of personal information by such entities to third parties. Violators risk injunctions and civil penalties of up to $2,500 for *each* violation and up to $7,500 for *each intentional* violation. Cal. Civ. Code § 1798.155. The CCPA applies to all for-profit entities doing business in California ("CCPA Entities") that collect and process consumers' personal data and satisfy one of the following criteria: (a) annual gross revenue in excess of $25 million; (b) buys, shares, receives, or sells the personal information of more than 50,000 consumers, households, or devices for commercial purposes; or (c) receives 50% or more of their annual revenues from selling consumers' personal information. Cal. Civ. Code § 1798.140(c)(1). The Debtors likely qualify as CCPA Entities because the Debtors maintain twenty-five leased and eight owned locations in California and the Debtors' annual gross revenue for 2022 was $5.245 billion. *See also* the Virginia Consumer Data Protection Act Va. Code §§ 59.1-575-59.1-585 (effective as of January 1, 2023), the Connecticut Act Concerning Personal Data Privacy and Online Monitoring, Public Act § 22-15 (effective as of July 1, 2023), the Colorado Privacy Act, Colo. Rec. Stat. § 6-1 (effective as of July 1, 2023), the Utah Consumer Privacy Act, Utah Code § 13-61 (effective on December 31, 2023), the Florida Digital Bill of Rights, Fla. Stat. § 501.701 (effective on July 1, 2024), the Texas Data Privacy and Security Act, Tex. Bus. & Com. Code Ann. § 541 (effective on July 1, 2024), the Montana Consumer Data Privacy Act, Mont. Code Ann. § 35 (effective on October 1, 2024), the Iowa Data Privacy Law, Iowa Code § 715D.1. (effective on January 1, 2025), the Tennessee Information Protection Act, Tenn. Code Ann. § 47-18 (effective on July 1, 2025), and the Indiana Data Privacy Law, Ind. Code § 24-15 (effective on January 1, 2026).

21. It is, therefore, appropriate to authorize the Debtors and the Claims and Noticing Agent, to redact from any paper filed or to be filed with the Court in these chapter 11 cases,

including the Creditor Matrix, the schedules of assets and liabilities and the statements of financial affairs (collectively, the "<u>Schedules and Statements</u>"), and any related affidavits of service, the home and email addresses of natural persons—including the Debtors' employees, former employees, and contract workers, as applicable. This relief is requested because, (a) such information can be used to perpetrate identity theft[5] and phishing scams or to locate survivors of domestic violence, harassment, or stalking under 11 U.S.C. § 107(c)(1), and (b) disclosure risks violating the the CCPA and other state data and privacy laws and regulations, exposing the Debtors to potential civil liability and significant financial penalties.

22.     Redaction is necessary to protect information that would create "undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c)(1). The risk related to section 107(c)(1) of the Bankruptcy Code is real and not merely speculative. In at least one chapter 11 case in Delaware, the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new address that had not been publicly available until then, forcing the employee to change addresses again.[6] More recently, in a chapter 11 case in the

---

[5] *See In re Endo Int'l. PLC*, No. 22-22549 (JLG), 2022 WL 16640880 at *7, 11, 12 (Bankr. S.D.N.Y. Nov. 2, 2022) (taking "judicial notice of the fact that identity theft is a world-wide problem," recognizing that the right of public access to judicial records "is not absolute," and authorizing the debtors to redact the names, home addresses, and email addresses of certain litigation claimants located in the US, EU, UK, and Australia from any paper filed with that court and/or otherwise made publicly available by the debtors and the claims and noticing agent thereof). *See also See Memorandum of Decision*, *In re Genesis Global Holdco, LLC*, Case No. 23-10063 (Bankr. S.D.N.Y Aug. 4, 2023) [ECF No. 581] (citing *Endo*, and finding that "[h]ome addresses fall within that category of information, as it is taken as a 'given' that they constitute personally identifiable information that is vital information to perpetrators of identity theft, stalking and intimate partner violence alike, and that publishing such information facilitates an identify thief's search for data and a stalker's or abuser's ability to find his or her target").

[6] The incident, which took place during the first Charming Charlie chapter 11 proceedings in 2017, is described in the "creditor matrix motion" filed in *Charming Charlie Holdings Inc.*, Case No. 19-11534 (CSS) (Bankr. D. Del. Jul. 11, 2019), Docket No. 4.

Southern District of New York, at least four phishing scams have been uncovered.[7] These incidents targeted individuals whose names were publicized in the creditor matrix, including one in which scammers modified a court order and sent it to individuals whose names were disclosed, two where scammers posed as associates of debtors' counsel using fake email accounts purportedly from debtors' counsel and requested that individual creditors reply with their account and other personal information, and another where scammers posed as the debtor's claims agent and requested the same information from individual creditors.

23. The Debtors propose to provide an unredacted version of the Creditor Matrix, Schedules and Statements, and any other filings redacted pursuant to the proposed Interim and Final Orders, respectively, to (a) the Court, (b) the U.S. Trustee, (c) counsel to any official committee appointed in these chapter 11 cases, (d) any party in interest upon a request to the Debtors (email to counsel is sufficient) or to the Court that is reasonably related to these chapter 11 cases, and (e) the Claims and Noticing Agent. Nothing requested herein or in the proposed Interim Order and Final Order is intended to preclude a party in interest's right to file a motion requesting that the Court unseal the redacted information. In addition, the Debtors will distribute as applicable any notices that are received at the Debtors' corporate headquarters and are intended for a current employee.

24. Courts in this district have granted the relief requested herein in comparable chapter 11 cases. *See, e.g.*, *In re PGX Holdings, Inc., et al.*, No. 23-10718 (CTG) (Bankr. D. Del. July 19, 2023) (authorizing the debtors, to redact the home and email addresses of individual creditors and interest holders listed on the creditor matrix and other pleadings filed with the court);

---

[7]  *See In re Celsius Network, LLC*, Case No. 22-10964 (MG), Docket Nos. 1527, 1904, 1992, 2082.

*In re SiO2 Med. Prods., Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. June 15, 2023) (same); *In re Performance Powersports Grp. Investor, LLC*, No. 23-10047 (LSS) (Bankr. D. Del. Feb. 9, 2023) (same); *In re Indep. Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Feb. 7, 2023) (same); *In re Gigamonster Networks, LLC,* No. 23-10051 (JKS) (Bankr. D. Del. Jan. 18, 2023) (same); *In re Tricida, Inc.*, No. 23-10024 (JTD) (same).[8]

25.   In addition to granting the requested relief, courts in this district have expounded on the importance of authorizing debtors to redact individual creditors' personally identifiable information, including home addresses. In *Art Van Furniture*, in overruling the objection of the U.S. Trustee to the same redaction relief proposed here, Judge Sontchi noted that the proposed redaction is not a "burden of proof" issue so "much as a common sense issue." Hr'g Tr. at 25:6–7, *In re Art Van Furniture, LLC*, No. 20-10533 (CSS) (Bankr. D. Del. Mar. 2020).[9] Judge Sontchi found that "at this point and given the risks associated with having any kind of private information out on the internet, [redaction] has really become routine [and] I think obvious relief." *Id*. at 25:13–16. Similarly, in *Clover Technologies*, Judge Owens overruled the U.S. Trustee's objection, noting that "[t]o me it is common sense. I don't need evidence that there is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name and address on the internet by

---

[8]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

[9]   Similarly, Judge Sontchi previously overruled the Delaware U.S. Trustee's objection to the redaction of individuals' information and found that "it's just plain common sense in 2019—soon-to-be 2020—to put as little information out as possible about people's personal lives to present [sic] scams . . . [Identity theft] is a real-life issue, and, of course, the issue of domestic violence is extremely important." Hr'g Tr. at 48:20–22, 49:3–5, *In re Anna Holdings*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019). Notably, Judge Sontchi acknowledged that "the world is very different from [the 1980s] when you and I started practice with the problems of identity theft" and that his perspective had evolved in that he was not previously aware of "the dangers with this kind of information becoming public." *See* Hr'g Tr. at 45:25–46:2, 47:22–24. The Debtors reserve the right to supplement the record with respect to such risks insofar as they are not self-evident in this instance.

way of the court's electronic case filing system and, of course, the claims agent's website. . . . The court can completely avoid contributing to the risk by redacting the addresses. And while there is, of course, an important right of access we routinely redact sensitive and confidential information for corporate entities and redact individual's home addresses." Hr'g Tr. at 24:21–25, 25:9–10, *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 22, 2020). And, in *Forever 21*, in overruling the U.S. Trustee's objection, Judge Gross found that "[w]e live in a new age in which the theft of personal identification is a real risk, as is injury to persons who, for personal reasons, seek to have their addresses withheld." Hr'g Tr. at 60:22–25, *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Dec. 19, 2019).

26. For these reasons, cause exists to authorize the Debtors to redact, pursuant to section 107(c)(1) of the Bankruptcy Code, the home and email addresses of natural persons listed on the Creditor Matrix, Schedules and Statements, or any other document filed with the Court. Absent such relief, the Debtors (a) may be in violation of applicable data privacy law, thereby exposing them to severe monetary penalties that could threaten the value of the Debtors' estate during this sensitive stage of their restructuring, (b) would unnecessarily render individuals more susceptible to identity theft and phishing scams, and (c) could jeopardize the safety of employees, independent contractors, former employees, and other individual creditors, who, unbeknownst to the Debtors, are survivors of domestic violence, harassment, or stalking, by publishing their home addresses without any advance notice or opportunity to opt out or take protective measures.

**VI.     Waiver of the Requirements to File a List of and to Provide Notice Directly to the Equity Security Holders is Warranted.**

27. Bankruptcy Rule 1007(a)(3) requires a debtor to file, within fourteen days after the petition date, a list of the debtor's equity security holders. Bankruptcy Rule 2002(d) requires that

equity security holders be provided notice of, among other things, the commencement of the bankruptcy case and the confirmation hearing.  Bankruptcy courts have authority to modify or waive the requirements under both rules.  Fed. R. Bankr. P. 1007(a)(3) ("[U]nless the court orders otherwise, the debtor shall file . . . a list of the debtor's equity security holders . . . ."); Fed. R. Bankr. P. 2002(d) ("[U]nless otherwise ordered by the court, the clerk . . . shall in the manner and form directed by the court give notice to all equity security holders . . . ."); see also 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); Fed. R. Bankr. P. 9007 ("When notice is to be given under these rules, the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given.").

28.     The requirements to file a list of, and to provide notice directly to, equity security holders should be waived as to Debtor Yellow Corporation.  Debtor Yellow Corporation's common stock is publicly traded on the NASDAQ, with approximately 51,980,000 outstanding shares of common stock as of the Petition Date and cannot be readily traced to specific individual holders.  Debtor Yellow Corporation only maintains a list of its registered equity security holders and therefore must obtain the names and addresses of its beneficial shareholders from a securities agent.  Preparing and submitting such a list with last known addresses for each equity security holder and sending notices to all such parties will create undue expense and administrative burden with limited corresponding benefit to the estates or parties in interest.

29.     Debtor Yellow Corporation has taken or will take several actions to inform its equity security holders of the commencement of these chapter 11 cases.  On or about the date hereof, the Debtors will issue a press release announcing the filing.  Debtor Yellow Corporation also filed with its petition a list of persons and entities with significant holdings of its outstanding

common stock. As soon as is practicable following the date hereof, the Debtors intend to cause the notices required under Bankruptcy Rule 2002(d) to be served on registered holders of Debtor Yellow Corporation common stock and published in full in USA Today. The Debtors request that the requirements to file a list of and to provide notice directly to Debtor Yellow Corporation's equity security holders (other than registered holders of Debtor Yellow Corporation's common stock) be waived.

30.    Courts in this district have granted similar relief to the relief requested herein. *See, e.g., In re Lannett Co., Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. May 5, 2023) (waiving the requirement under Bankruptcy Rule 1007(a)(3) to file a list of equity security holders and provide notice directly thereto on an interim basis); *In re Hyrecar Inc.,* No. 23-10259 (JTD) (Bankr. D. Del. Feb. 28. 2023) (waiving the requirement under Bankruptcy Rule 1007(a)(3) to file a list of equity security holders and provide notice directly thereto on a final basis); *In re American Virtual Cloud Technologies, Inc.,* No. 23-10020 (MFW) (Bankr. D. Del. Jan. 12, 2023) (same); *In re NewAge, Inc.,* No. 22-10819 (LSS) (Bankr. D. Del. Sept. 29, 2022) (same); *In re Fred's, Inc.*, Case No. 19-11984 (CSS) (Bankr. D. Del. Sept. 10, 2019) (same).

### Compliance with Local Rule 9018-1(d)(iv)

31.    To the best of the knowledge, information, and belief of the undersigned proposed counsel to the Debtors, the documents that the Debtors are requesting to seal pursuant to the relief requested in this motion do not contain information subject to the Confidentiality Rights of another Holder of Confidentiality Rights (each as defined in Local Rule 9018-1(d)(iii)).

### Notice

32.    The Debtors will provide notice of this motion to: (a) the U. S. Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) the

office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice; (h) the DIP Agent and counsel thereto; (i) Milbank LLP, as counsel to certain investment funds and accounts managed by affiliates of Apollo Capital Management, L.P.; (j) the administrative and collateral agents under the B-2 Term Loan and counsel thereto; (k) the ABL Agent and counsel thereto; (l) White & Case LLP, as counsel to Beal Bank USA; (m) the administrative and collateral agents under the UST Credit Agreements and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013 1(m).  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

33.  No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: August 7, 2023
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (*pro hac vice* pending) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (*pro hac vice* pending) |
| Peter J. Keane (DE Bar No. 5503) | Whitney Fogelberg (*pro hac vice* pending) |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 919 North Market Street, 17th Floor | 300 North LaSalle |
| P.O. Box 8705 | Chicago, Illinois 60654 |
| Wilmington, Delaware 19801 | Telephone:  (312) 862-2000 |
| Telephone:  (302) 652-4100 | Facsimile:  (312) 862-2200 |
| Facsimile:  (302) 652-4400 | Email:  patrick.nash@kirkland.com |
| Email:  ljones@pszjlaw.com |     david.seligman@kirkland.com |
|     tcairns@pszjlaw.com |     whitney.fogelberg@kirkland.com |
|     pkeane@pszjlaw.com | |
|     ecorma@pszjlaw.com | -and- |

Allyson B. Smith (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  allyson.smith@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*