## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Bankr. Case No. 23-11069 (___)<br><br>(Joint Administration Requested) |
| ARMANDO RIVERA, JOHN FRANKLIN, JR., NICOLE GONZALEZ, RICHARD WEBB, SCOTT WEBB, DARYL DEVINE, RICHIE RICHARDSON, PAUL ASHLEY, BRANDON WILSON, DUSTIN PAGE, KIMBERLY SULLIVAN and CHRISTOPHER DOWDY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YELLOW CORPORATION, YRC INC. (d/b/a YRC FREIGHT), USF HOLLAND LLC, NEW PENN MOTOR EXPRESS LLC, and USF REDDAWAY INC.,<br><br>Defendants. | Adv. Pro. No. |

## CLASS ACTION ADVERSARY PROCEEDING COMPLAINT FOR (1) VIOLATION OF WARN ACT 29 U.S.C. § 2101, *ET SEQ.*; (2) VIOLATION OF NEW JERSEY MILLVILLE DALLAS AIRMOTIVE PLANT JOB LOSS NOTIFICATION ACT; (3) VIOLATION OF CALIFORNIA LABOR CODE §§ 1400 ET SEQ. and (4) VIOLATION OF NEW YORK WARN ACT, NYLL § 860 *ET SEQ*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

Plaintiffs Armando Rivera, John Franklin, Jr., Nicole Gonzalez, Richard Webb, Scott Webb, Daryl Devine, Richie Richardson, Paul Ashley, Brandon Wilson, Dustin Page, Kimberly Sullivan and Christopher Dowdy ("Plaintiffs")[2] allege on behalf of themselves and a putative class of similarly situated former employees of Yellow Corporation (the "Company"), YRC Inc. (d/b/a YRC Freight), USF Holland LLC ("Holland"), New Penn Motor Express LLC ("New Penn") and USF Reddaway Inc. ("Reddaway") (collectively, "Yellow," "Debtors" or "Defendants") by way of this Class Action Adversary Proceeding Complaint against Defendants as follows:

## <u>NATURE OF THE ACTION</u>

1.      The Plaintiffs bring this action on behalf of themselves and other similarly situated former employees who worked for Defendants and who were terminated without cause as part of, or as the result of, mass layoffs or plant closings ordered by Defendants beginning on or about July 28, 2023, who were not provided 60 days advance written notice of their terminations by Defendants, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, the California Labor Code § 1400 *et. seq.* ("CAL-WARN Act"), and 90 days' notice as required by the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, PL. 2007, c.212, C.34:21-2 ("New Jersey WARN Act") and New York Worker Adjustment and Retraining Notification Act ("NY WARN Act"), New York Labor Law ("NYLL") § 860 *et seq.*, (collectively, the "WARN Acts").

2.      Plaintiffs also bring a claim under the New Jersey WARN Act for damages to the New Jersey-based employees of Defendants, for severance pay equivalent to one week of pay (calculated at their average rate of compensation during the last three years of employment with

---

[2] Raisner Roupinian LLP has been individually retained by more than one hundred (100) former employees of Defendants.

Defendants or the final regular rate of compensation, whichever is higher) for each full year that he or she worked. In addition, the New Jersey-based employees are entitled to an additional four weeks of severance pay, pursuant to N.J. Stat. Ann. § 34:21-2(b).

3.      Plaintiffs were terminated along with nearly 30,000 other similarly situated employees as part of, or as the foreseeable result of mass layoffs or plant closings ordered by Defendants beginning on or about July 28, 2023.

4.      Defendants failed to give Plaintiffs and other similarly situated employees of Defendants the requisite 60 or 90 days' advance notice of their terminations, as required by the WARN Acts.  As a consequence, Plaintiffs and other similarly situated employees of Defendants seek their statutory remedies.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1367 and 29 U.S.C. § 2104(a)(5); and the Amended Standing Order of Reference of the United States District Court for the District of Delaware Dated February 29, 2012.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O). Pursuant to Fed. R. Bankr. P. 7012(b) and Del. Bankr. L.R. 7012-1, Plaintiffs do consent to entry of final orders or judgment by the bankruptcy court.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1409 and 29 U.S.C. § 2104(a)(5).

## THE PARTIES

### *Plaintiffs*

8.      Plaintiff Armando Rivera was employed by Defendants as a dock worker and union steward from July 1998 until July 28, 2023.

3

9.      Plaintiff Rivera is a resident of the state of California.

10.     Upon information and belief, Plaintiff Rivera worked at or reported to Defendants' facility located at 18298 Slower Ave, Bloomington, California.

11.     Plaintiff John Franklin, Jr., was employed by Defendants as a foreman from March 1992 until July 28, 2023.

12.     Plaintiff Franklin is a resident of the state of New York.

13.     Upon information and belief, Plaintiff Franklin worked at or reported to Defendants' facility located at 58-60 Page Place Maspeth, New York.

14.     Plaintiff Nicole Gonzalez was employed by Defendants as a payroll administrator from June 2017 until July 28, 2023.

15.     Plaintiff Gonzalez is a resident of the state of New Jersey.

16.     Upon information and belief, Plaintiff Gonzalez worked at or reported to Defendants' facility located at 15 Thomas J Rhodes Industrial Drive, Mercerville, New Jersey.

17.     Plaintiff Richie Richardson was employed by Defendants as a P&D Driver from April 2023 until July 28, 2023.

18.     Plaintiff Richardson is a resident of the state of New Jersey.

19.     Upon information and belief, Plaintiff Richardson worked at Defendants' facility located at 700 Dell Road, Carlstadt, New Jersey.

20.     Plaintiff Richard Webb was employed by Defendants as a city driver from October 2016 until July 28, 2023.

21.     Plaintiff Richard Webb is a resident of the state of South Carolina.

22.     Upon information and belief, Plaintiff Richard Webb worked at or reported to Defendants' facility located at 588 Shackleford Road, Piedmont, South Carolina.

23.     Plaintiff Scott Webb was employed by Defendants as a driver from January 1997 until July 28, 2023.

24.     Plaintiff Scott Webb is a resident of the state of Texas.

25.     Upon information and belief, Plaintiff Scott Webb worked at or reported to Defendants' facility located at 200 N. Beltline Road, Irving, Texas.

26.     Plaintiff Daryl Devine was employed by Defendants as a driver and dock worker from May 2023 until July 28, 2023.

27.     Plaintiff Devine is a resident of the state of Ohio.

28.     Upon information and belief, Plaintiff Devine worked at or reported to Defendants' facility located at 10855 Market St North Lima, Ohio.

29.     Plaintiff Brandon Wilson was employed by Defendants as a driver and dock worker from November 2021 until July 28, 2023.

30.     Plaintiff Wilson is a resident of the state of Tennessee.

31.     Upon information and belief, Plaintiff Wilson worked at or reported to Defendants' facility located at 345 Roadway Drive, Ringgold, Georgia.

32.     Plaintiff Paul Ashley was employed by Defendants as a driver and dock worker from November 1991 until July 28, 2023.

33.     Plaintiff Ashley is a resident of the state of Colorado.

34.     Upon information and belief, Plaintiff Ashley worked at or reported to Defendants' facility located at 14700 East Smith Road, Aurora, Colorado.

35.     Plaintiff Dustin Page was employed by Defendants as a linehaul driver from June 2012 until July 28, 2023.

36.     Plaintiff Page is a resident of the state of Missouri.

37.     Upon information and belief, Plaintiff Page worked at or reported to Defendants' facility located at 3500 Booth Ave, Kansas City, Missouri.

38.     Plaintiff Kimberly Sullivan was employed by Defendants as a linehaul driver from September 2012 until July 28, 2023.

39.     Plaintiff Sullivan is a resident of the state of Indiana.

40.     Upon information and belief, Plaintiff Sullivan worked at or reported to Defendants' facility located at 1818 S. High School Road, Indianapolis, Indiana.

41.     Plaintiff Christopher Dowdy was employed by Defendants as a city/dock worker l from September 2020 until July 28, 2023.

42.     Plaintiff Dowdy is a resident of the state of Arkansas.

43.     Upon information and belief, Plaintiff Dowdy worked at or reported to Defendants' facility located at 3310 Gill Road, Memphis, Tennessee.

44.     Plaintiffs were terminated without cause.

45.     At no time prior to July 28, 2023, did Plaintiffs receive written notice that their employment would be terminated.

46.     On or about July 28, 2023, Plaintiffs were notified of their terminations.

47.     Plaintiffs' last day of employment was July 28, 2023.

48.     Along with Plaintiffs, approximately 30,000 other employees of Defendants who worked at, reported to, or received assignments from the Defendants' facilities throughout the United States (collectively, the "Facilities") were terminated on or about July 28, 2023 without 60 days' advance written notice.

### ***Defendants***

49.     Upon information and belief and at all relevant times, Defendants operated a less

6

than truckload business ("LTL") with operations throughout the United States in which carriers ship goods from multiple shippers in single trailers.

50.     Defendant Yellow Corporation ("Yellow") is a publicly traded Delaware corporation.

51.     Defendant YRC Inc. (d/b/a YRC Freight) ("YRC Freight") is a Delaware corporation.

52.     YRC Freight is Yellow's legacy operation and largest LTL subsidiary.

53.     Defendant USF Holland LLC ("Holland") is a Delaware limited liability company.

54.     Holland provided next-day LTL services across the Central, Southeastern, and Midwestern regions of the United States.

55.     Defendant New Penn Motor Express LLC ("New Penn") is a Delaware limited liability company.

56.     New Penn provided next-day LTL services across the Northeastern region of the country, including New Jersey and New York, as well as cross-border service to Eastern Canada.

57.     Defendant USF Reddaway Inc. ("Reddaway") is an Oregon corporation. Reddaway provided next-day and two-day LTL services across the Western region of the country, including in Hawaii, as well as cross-border service to Western Canada and by sea to Alaska.

58.     Upon information and belief, Defendants are headquartered in Nashville, Tennessee.

59.     Upon information and belief, Holland and New Penn are wholly owned subsidiaries of Yellow Corporation. YRC Inc. (d/b/a YRC Freight) is a wholly owned subsidiary of Roadway

LLC, which is a wholly owned subsidiary of Yellow Corporation. Reddaway is a wholly owned subsidiary of YRC Regional Transportation, Inc., which is a wholly owned subsidiary of Yellow Corporation.

60.     Upon information and belief, in 2019, Yellow embarked on a plan to rebrand itself as "One Yellow" by combining YRC Freight, Holland, New Penn and Reddaway to create "one super-regional carrier." As a unified carrier, its services would be integrated across the country.

61.     In furtherance of its One Yellow strategy, Yellow reorganized its leadership to, in its words "streamline decision making and enhance execution across all functional areas of the organization." It completed the reorganization of its enterprise-wide sales force, and migrated the IT functions of the subsidiary Defendants to a common IT platform called "One Operating Platform."

62.     Yellow has consolidated YRC Freight's operations with Reddaway's operations in the West.

63.     Upon information and belief, until July 28, 2023, Defendants operated 80 freight terminals and 200 other locations throughout the United States.

64.     On information and belief, beginning on July 28, 2023, Defendants carried out a termination of operations and/or mass layoffs and closures at its Facilities nationwide that resulted in the loss of employment for at least 33% of its workforce and at least 50 full-time employees, not including part-time employees at most facilities.

65.     On July 28, 2023, Plaintiffs were informed that it was their last day and that they should not report to work thereafter.

66.     On information and belief, the approximately 30,000 other employees who worked at the Facilities, were similarly told on July 28, 2023 and over the next few days, that the facility was closed and they should no longer report to work.

67.     Upon information and belief, while certain California-based employees were informed that their health care coverage would extend to August 31, coverage would be ending for others on or around August 5.

68.     Immediately prior to the terminations on July 28, 2023, Defendants employed nearly 30,000 union and non-union employees, including Plaintiffs.

69.     On August 6, 2023, Defendants each filed a voluntary petition for relief under Chapter 11 of Title 11 the United States Bankruptcy Code in this Court (See Bankr. Case Nos. 23-11069 *et seq.* (together, the "Debtors")).

## FEDERAL WARN ACT CLASS ALLEGATIONS

70.     Plaintiffs bring a claim for relief for violation of 29 U.S.C. § 2101 *et seq.*, individually and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Federal Rules of Civil Procedure, Rule 23(a) and (b) made applicable by Fed. R. Bankr. P. Rule 7023 ("Rule 23"), who worked at, received assignments from, or reported to one of Defendants' Facilities and were terminated without cause on or about July 28, 2023 or was terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about July 28, 2023 and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) (the "WARN Class").

71.     The persons in the WARN Class identified above ("WARN Class Members") are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, it is estimated at close to 30,000 individuals. On information and belief, the

facts on which the calculation of that number can be based are presently within the sole control of Defendants.

72.     On information and belief, the identity of the members of the class and the recent residence address of each of the WARN Class Members is contained in Defendants' books and records.

73.     On information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Class Member at the time of his/her termination is contained in the books and records of Defendants.

74.     Common questions of law and facts exist as to members of the WARN Class, including, but not limited to, the following:

(a)     whether the members of the WARN Class were employees of Defendants who worked at, received assignments from, or reported to the Facilities;

(b)     whether Defendants unlawfully terminated the employment of the members of the WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the WARN Acts; and

(c)     whether Defendants unlawfully failed to pay the WARN Class members 60 days wages and benefits as required by the WARN Act.

75.     Plaintiffs' claim is typical of those of the WARN Class. Plaintiff, like other WARN Class members, worked at, received assignments from, or reported to the Facilities and was terminated without cause beginning on or about July 28, 2023 due to the mass layoffs and/or plant closings ordered by Defendants.

76.     At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639/(3)(a)(1) and continued to operate as a business until Defendants decided to order mass layoffs or plant closings at the Facilities.

77.     Plaintiffs will fairly and adequately protect the interests of the WARN Class.

Plaintiffs have retained counsel competent and experienced in complex class actions, including the WARN Act and employment litigation.

78.    Class certification of these claims is appropriate under Rule 23(b)(3) because questions of law and facts common to the WARN Class predominate over questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WARN Act litigation in bankruptcy court, where individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants, and damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

79.    Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

80.    Plaintiffs intend to send notice to all members of the WARN Class to the extent required by Rule 23.

## NEW JERSEY WARN ACT ALLEGATIONS

81.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

82.    Plaintiffs bring the New Jersey WARN Act claim for violation of the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, PL. 2007, c.212, C.34:21-2 ("New Jersey WARN Act") on behalf of a class of similarly situated persons pursuant to the New Jersey

WARN Act and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or reported to the Facilities and were terminated without cause on or about July 28, 20233 (the "New Jersey WARN Class").

83.     The persons in the New Jersey WARN Class identified above ("New Jersey WARN Class Members") are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

84.     On information and belief, the identity of the members of the class and the recent residence address of each of the New Jersey WARN Class Members is contained in Defendants' books and records.

85.     On information and belief, the rate of pay and benefits that were being paid by Defendants to each New Jersey WARN Class Member at the time of his/her termination is contained in the books and records of the Defendants.

86.     Common questions of law and fact exist as to members of the New Jersey WARN Class, including, but not limited to, the following:

(a)     whether the members of the New Jersey WARN Class were employees of the Defendants;

(b)     whether Defendants unlawfully terminated the employment of the members of the New Jersey WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the New Jersey WARN Act;

(c)     whether Defendants unlawfully failed to pay the New Jersey WARN Class members severance pay as required by the New Jersey WARN Act; and

(d)     whether Defendants are liable as a single employer to Plaintiffs and the New Jersey WARN Class members.

87.     Plaintiffs' claims are typical of those of the New Jersey WARN Class.  Plaintiffs, like the New Jersey WARN Class members, worked at or reported to the Facilities and were

terminated on or about July 28, 2023 due to the terminations ordered by Defendants.

88.     Plaintiffs will fairly and adequately protect the interests of the New Jersey WARN Class.  Plaintiffs have retained counsel competent and experienced in complex class actions on behalf of employees, including the New Jersey WARN Act, the federal WARN Act, other similar state laws, and employment litigation.

89.     Class certification of these Claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New Jersey WARN Class predominate over any questions affecting only individual members of the New Jersey WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of New Jersey WARN Class Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendants, and damages suffered by individual New Jersey WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

90.     Concentrating all the potential litigation concerning the New Jersey WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the New Jersey WARN Act rights of all the members of the Class.

91.     Plaintiffs intend to send notice to all members of the New Jersey WARN Class to the extent required by Rule 23.

### CALIFORNIA WARN ACT ALLEGATIONS, Cal. Lab. Code § 1401 et seq.

92.     Plaintiffs also bring a claim for Relief under the California WARN Act for violation of Lab. Code § 1401 on behalf of a class of similarly situated persons pursuant to Lab. Code §

1404 and Fed. R. Civ. P. Rule 23(a) and (b)(3), who worked at, reported to, or received assignments from Defendants' Facilities and were terminated without cause beginning on or about July 28, 2023 (the "Cal-WARN Class").

93.    The persons in the Cal-WARN Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

94.    On information and belief, the identity of the members of the class and the recent residence address of each member of the Cal-WARN Class is contained in the books and records of Defendants.

95.    On information and belief, the rate of pay and benefits that were being paid by Defendants to each member of the Cal-WARN Class at the time of his/her termination is contained in the books and records of Defendants.

96.    Common questions of law and fact exist as to members of the Cal-WARN Class, including, but not limited to, the following:

(a)    whether the members of the Cal-WARN Class were employees of the Defendants;

(b)    whether Defendants unlawfully terminated the employment of the members of the Cal-WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the Cal-WARN Act; and

(c)    whether Defendants unlawfully failed to pay the Cal-WARN Class members 60 days wages and benefits as required by the Cal-WARN Act.

97.    Plaintiffs' claims are typical of those of the Cal-WARN Class.  The Plaintiffs, like the Cal-WARN Class members, worked at, reported to, or received assignments from the Facilities and were terminated on or about July 28, 2023, due to the terminations ordered by Defendants.

98.    Plaintiffs will fairly and adequately protect the interests of the Cal-WARN Class.

Plaintiffs have retained counsel competent and experienced in complex class actions on behalf of employees, including the Cal-WARN Act, the federal WARN Act, other similar state laws, and employment litigation. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Cal-WARN Class predominate over any questions affecting only individual members of the Cal-WARN Class, and because a class action superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of Cal-WARN Class Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual Cal-WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

99.     Concentrating all the potential litigation concerning the Cal-WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the Cal-WARN Act rights of all the members of the Class.

100.    Plaintiffs intend to send notice to all members of the Cal-WARN Class to the extent required by Rule 23.

## NEW YORK WARN ACT ALLEGATIONS

101.    Plaintiffs bring the for Relief under the New York WARN Act for violation of NYLL § 860 *et seq.*, on behalf of themselves and a class of similarly situated persons pursuant to NYLL § 860-G (7) and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or reported to one of Defendants' Facilities and were terminated without cause beginning on or about July 28, 2023, or who were terminated without cause as the result of the mass layoffs and/or plant

closings ordered by Defendants on or about July 28, 2023, and who are affected employees, within the meaning of NYLL § 860-A (1),(4) and(6) (the "NY WARN Class").

102.    The persons in the NY WARN Class identified above ("NY WARN Class Members") are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

103.    On information and belief, Defendants employed at least 50 employees within New York State as of the time notice was first required to be given.  On information and belief, Defendants terminated at least 25 full-time employees, within 30 of July 28, 2023 from Facilities in New York.

104.    On information and belief, the identity of the members of the class and the recent residence address of each of the NY WARN Class Members is contained in the books and records of Defendants.

105.    On information and belief, the rate of pay and benefits that were being paid by Defendants to each NY WARN Class Member at the time of his/her termination is contained in the books and records of the Defendants.

106.    Common questions of law and fact exist as to members of the NY WARN Class, including, but not limited to, the following:

(a)    whether the members of the NY WARN Class were employees of the Defendants who worked in a covered site of employment of Defendants;

(b)    whether Defendants, unlawfully terminated the employment of the members of the NY WARN Class without cause on their part and without giving them 90 days advance written notice in violation of the NY WARN Act;

(c)    whether Defendants unlawfully failed to pay the NY WARN Class members 60 days wages and benefits as required by the WARN Acts; and

(d)     whether Defendants as a single employer violated the WARN Act.

107.    Plaintiffs' claims are typical of those of the NY WARN Class.  Plaintiffs, like other NY WARN Class members, worked at or reported to Defendants' New York Facilities and were terminated on or about July 28, 2023, due to the termination of the Facilities ordered by Defendants.

108.    Plaintiffs will fairly and adequately protect the interests of the NY WARN Class. The Plaintiffs have retained counsel competent and experienced in complex class actions on behalf of employees, including the WARN Act, state laws similar to WARN, and employment litigation.

109.    Class certification of these Claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the NY WARN Class predominate over any questions affecting only individual members of the NY WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of NY WARN Class Act litigation, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual NY WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

110.    Concentrating all the potential litigation concerning the NY WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the NY WARN Act rights of all the members of the Class.

111.    Plaintiffs intend to send notice to all members of the NY WARN Class to the extent required by Rule 23.

## CLAIMS FOR RELIEF

### I.   Violation of the Federal WARN Act

112.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

113.   At all relevant times, Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

114.   At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639.(3)(a)(1) and continued to operate as a business until it decided to order the mass layoffs or plant closings at the Facilities.

115.   At all relevant times, Plaintiffs and the other similarly situated former employees were employees of Defendants as that term is defined by 29 U.S.C. § 2101.

116.   On or about July 28, 2023, Defendants ordered mass layoffs or plant closings at the Facilities, as that term is defined by 29 U.S.C. § 2101(a)(2).

117.   The mass layoffs or plant closings at the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Defendants' employees as well as thirty-three percent of Defendants' workforce at the Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2101(a)(8).

118.   Plaintiffs and the Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Defendants at the Facilities.

119.   Plaintiffs and the Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 2101(a)(5).

120.     Defendants were required by the WARN Act to give Plaintiffs and the Class Members at least 60 days advance written notice of their terminations.

121.     Defendants failed to give Plaintiffs and the Class members written notice that complied with the requirements of the WARN Act.

122.     Plaintiffs and each of the Class Members are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

123.     Defendants failed to pay Plaintiff and each of the Class Members their respective wages, salary, commissions, bonuses, health and life insurance premiums, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to provide employee benefits including health insurance, for 60 days from and after the dates of their respective terminations.

## II.     <u>Violation of the New Jersey WARN Act</u>

124.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

125.     At all relevant times, Defendants were an individual or private business entity defined as "employer" under the New Jersey WARN Act and continued to operate as a business until they decided to terminate operations at the Establishment and/or Facilities as defined by PL. 2007, c.212, C.34:21-2.

126.     Defendants operated facilities in Millville, Carlstadt, Kearny. South Plainfield, Hamilton, Cinnaminson, and Mercerville, New Jersey, all of which closed on or about July 28, 2023.

127.     On or about July 28, 2023, Defendants ordered a mass layoff and/or termination of operations as defined by PL. 2007, c.212, C.34:21-2.

128.     The New Jersey WARN Class Members suffered a termination of employment as defined by PL. 2007, c.212, C.34:21-2, having been terminated by Defendants without cause on their part.

129.     Defendants were required by the New Jersey WARN Act to give the New Jersey Class Members at least 90 days advance written notice of their terminations.

130.     Defendants failed to give the New Jersey WARN Class Members written notice that complied with the requirements of the New Jersey WARN Act.

131.     Defendants failed to pay the New Jersey WARN Class Members their respective lost wages, benefits and other remuneration, including severance pay equal to one week of pay (calculated at their average rate of compensation during the last three years of employment or the final regular rate of compensation, whichever is higher) for each full year that they worked, plus an additional four weeks of mandatory severance pay.

132.     Plaintiffs also bring a claim under the New Jersey WARN Act for damages to the New Jersey-based employees of Defendants, for severance pay equivalent to one week of pay (calculated at their average rate of compensation during the last three years of employment with Defendants or the final regular rate of compensation, whichever is higher) for each full year that he or she worked. In addition, the New Jersey-based employees are entitled, in addition to the mandatory severance payment, to an additional four weeks of severance pay.

   **III.     Violation of the California WARN Act, Cal. Lab. Code, § 1400 *et. seq.***

133.     Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs.

134.    Plaintiffs bring a Claim for Relief for violation of Lab. Code § 1401 on behalf of a class of similarly situated persons pursuant to Lab. Code § 1404 and Federal Rules of Civil Procedure 23(a) and (b), who worked at, reported to, or received assignments from the Facilities and were terminated without cause on or about July 28, 2023 and thereafter (the "CAL-WARN Class").

135.    Pursuant to Lab. Code § 1400(b), "'[e]mployer' means any person . . . who directly or indirectly owns and operates a covered establishment. A parent corporation is an employer as to any covered establishment directly owned and operated by its corporate subsidiary."

136.    Upon information and belief, Defendants are the employers of the Cal-WARN Class as that term is defined by Lab. Code § 1400(b) because they directly or indirectly owned and operated at least one covered establishment.

137.    Upon information and belief, besides the Bloomington Facility, Defendants closed their California facilities on or about July 28, 2023 in Visalia, Tracy, Sun Valley, Santa Maria, Santa Clara, Diego, Sacramento, Brisbane, Santa Rosa, Anderson, West Sacramento, Pomona. Pico Rivera, Orange, Ventura, Downey Gardena, Hayward, Fresno, Fontana, Eureka, Adelanto, Calexico, and Bakersfield.

138.    Defendants violated Cal-WARN by terminating the employment of similarly situated employees pursuant to a "mass layoff," "relocation" or "termination" as defined in Lab. Code § 1400 on or about July 28, 2023 or thereafter, without giving written notice at least 60 days before the order took effect to: (1) the employees affected by the order and (2) the Employment Development Department, the local workforce investment board, and the chief elected official of each city and county government within which the mass layoff, relocation or termination occurred.

The "mass layoff," "relocation" or "termination" was not necessitated by a physical calamity or act of war.

139.    As a result of Defendants' violation of Lab.  Code § 1401, Plaintiff and the other similarly situated employees are entitled to 60 days of back pay under Lab. Code § 1402(a-b).

140.    Plaintiffs have incurred and the other similarly situated employees will incur attorney's fees in prosecuting this claim and are entitled to an award of attorney's fees under Lab. Code § 1404.

**IV.    <u>Violation of the New York WARN Act, NYLL § 860 *et seq*.</u>**

141.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

142.    At all relevant times, Defendants were an individual or private business entity defined as "employer" under the NY WARN Act and continued to operate as a business until they decided to order a mass layoff or plant closing at the Facilities as defined by § 860-A(3),(4).

143.    On or about July 28, 2023, Defendants ordered mass layoffs and/or plant closings at its Facilities as defined by § 860-A(3),(4).

144.    The New York Plaintiffs and the New York Class Members suffered a termination of employment as defined by § 860-A(2)(C) having been terminated by Defendants without cause on their part.

145.    Defendants were required by the NY WARN Act to give the New York Plaintiffs and New York Class Members at least 90 days advance written notice of their terminations pursuant to § 860-B.

146.    Defendants failed to give the NY Plaintiffs and New York Class Members written notice that complied with the requirements of the NY WARN Act.

147.   Defendants failed to pay the NY Plaintiffs and each of the New York Class Members their respective wages, salary, commissions, bonuses, health and life insurance premiums, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and benefits including health and life insurance coverage, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period. § 860-G(2).

148.   The relief sought in this proceeding is predominately equitable in nature.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated persons, prays for the following relief as against Defendants:

A.     An allowed claim against Defendants in favor of the Plaintiffs and Class members equal to the sum of: (i)  unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for 60 days, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A), or California Labor Code § 1404; or under the New Jersey WARN Act PL. 2007, c.212, C.34:21-6,  or under NY Lab. L. § 860-G(2), including any civil penalties, with the first $15,150.00 of each Class member's allowed claim entitled to wage priority claim treatment under 11 U.S.C. § 507(a)(4) and (5), and any remainder as a general unsecured claim and the remainder as a general unsecured claim;

B.     Judgment in favor of each New Jersey Class Member for severance pay equivalent to one week of pay (calculated at their average rate of compensation during the last three years of

employment or the final regular rate of compensation, whichever is higher), plus an additional four weeks of mandatory severance pay;

C.          Certification that Plaintiffs and the other Class members constitute a single class with or without subclasses as provided under Rule 23(c)(4);

D.          Appointment of Plaintiff as the Class Representatives;

E.          Appointment of the undersigned attorneys as Class Counsel;

F.          An allowed administrative priority claim against Defendants under 11 U.S.C. § 503 for the reasonable attorneys' fees and the costs and disbursements that Plaintiffs incur in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6); and

G.          Such other and further relief as this Court may deem just and proper;

Dated: August 7, 2023

Respectfully submitted,

By: /s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
**LOIZIDES, P.A.**
1225 King Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
E-mail: loizides@loizides.com

OF COUNSEL:

Jack A. Raisner
René S. Roupinian
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, NY 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: jar@raisnerroupinian.com
Email: rsr@raisnerroupinian.com

*Attorneys for Plaintiffs and the putative class*