## EXHIBIT A

**Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. __** |

**ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR THE
SALE OR SALES OF THE DEBTORS' ASSETS; (B) SCHEDULING
AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE
THEREOF; (C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES,
(D) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER
OF NOTICE THEREOF; (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession

(collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), (a) authorizing and approving the

Bidding Procedures attached hereto as **Exhibit 1**, (b) approving Bid Protections, (c) establishing

certain related dates and deadlines, (d) approving the form and manner of notice of the Auction

attached hereto as **Exhibit 2** (the "<u>Auction Notice</u>"), (e) approving the Assumption/Assignment

Procedures, including the notices of potential assumption and proposed cure amounts attached

hereto as **Exhibit 3** (the "<u>Cure Notice</u>"), (f) approving the form and manner of notice of the

Winning Bidder attached hereto as **Exhibit 4** (the "<u>Notice of Winning Bidder</u>"), and (g) granting

related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

upon the Kaldenberg Declaration; and this Court having jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware, dated February 29, 2012; and this Court having found

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that

this Court may enter a final order consistent with Article III of the United States Constitution; and

this Court having found that venue of this proceeding and the Motion in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in

the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a

hearing on the Motion were appropriate  and no other notice need be provided; and this Court

having reviewed the Motion and having heard the statements in support of the relief requested

therein at a hearing before this Court (the "Hearing"); and this Court having determined that the

legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief

granted herein; and upon all of the proceedings had before this Court; and after due deliberation

and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:[3]

1.    Jurisdiction and Venue.   The Court has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue

is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.B.

2.    Statutory and Legal Predicates.   The statutory and legal predicates for the relief

requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code,

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and Local Rules 2002-1, 6004-1, and 9006-1.C.

3.    <u>Sale Process</u>.  The Debtors and their advisors engaged pre-petition with a number of potential interested parties to solicit and develop the highest and otherwise best offers for the Assets.

4.    <u>Bidding Procedures</u>.  The Debtors have articulated good and sufficient business reasons for the Court to approve the bidding procedures attached hereto as **<u>Exhibit 1</u>** (the "<u>Bidding Procedures</u>").    The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the value of the proceeds of one or more sales (each, a "<u>Sale Transaction</u>") of all or substantially all of the Debtors' assets (the "<u>Assets</u>").    The Bidding Procedures were negotiated in good faith and at arm's-length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Debtors' Assets.    The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

5.    <u>Stalking Horse Bidder</u>.  To the extent the Debtors select a Stalking Horse Bidder (as defined below), any Bid Protections (as defined in the Bidding Procedures) to the extent payable under the Stalking Horse Agreement (as defined below) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code and treated as an allowed administrative expense claim against the Debtors' estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

6.    <u>Auction Notice</u>.  The Auction Notice, substantially in the form attached hereto as **<u>Exhibit 2</u>**, is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale(s), including, without limitation:  (a) the date, time, and place of the Auction (if any); (b) the Bidding Procedures; (c) reasonably specific identification of the Assets to be sold;

and (d) a description of the Sale(s) as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable definitive Sale documentation), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds, and no other or further notice of the Sale(s) shall be required.

7.      <u>Assumption and Assignment Provisions</u>.  The Debtors have articulated good and sufficient business reasons for the Court to approve the assumption and assignment procedures set forth herein (the "<u>Assumption and Assignment Procedures</u>"), which are fair, reasonable, and appropriate.   The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

8.      <u>Notice of Winning Bidder</u>.  The Notice of Winning Bidder, substantially in the form attached hereto as **<u>Exhibit 3</u>**, is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale(s), including, without limitation:  (a) the Winning Bidder, (b) the Back-Up Bidder, if applicable, (c) the proposed Bid Protections provided to the Winning Bidder, (d) the key terms of the proposed Sale, and (e) the date, time, and place of the Sale Hearing.

9.      <u>Cure Notice</u>.  The  Cure Notice, the form of which is attached hereto as **<u>Exhibit 4</u>**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

10.     <u>Stalking Horse Notice</u>.  The Debtors shall file a Stalking Horse Notice that is reasonably calculated to provide interested parties with timely and proper notice of the designation of the Stalking Horse, including, without limitation:  (a) the Winning Bidder, (b) the Back-Up

Bidder, if applicable, (c) the proposed Bid Protections provided to the Winning Bidder, (d) the key terms of the proposed Sale, and (e) the date, time, and place of the Sale Hearing.

11.    <u>Notice</u>.  Notice of the Motion, the proposed Bidding Procedures, and the Bidding Procedures Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances of the Debtors' Chapter 11 Cases, such that no other or further notice need be provided except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

12.    The Motion is GRANTED as set forth herein.

13.    All objections to the relief granted in this order (the "<u>Order</u>") that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**A.    The Bidding Procedures**

14.    The Bidding Procedures attached hereto as **<u>Exhibit 1</u>** are hereby approved, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale(s) of the Assets and the Auctions.   The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a "Qualified Bid," are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interests.   The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

15.     The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

16.     Subject to this Order and the Bidding Procedures, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, shall have the right to (a) determine which Qualified Bid is the highest or otherwise best offer, (b) reject any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors, and (c) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.

17.     The Debtors shall have the right to, in their reasonable business judgment and with the consent of the Consultation Parties, and in a manner consistent with their fiduciary duties and applicable law, modify the Bidding Procedures, including to, among other things, (a) extend or waive deadlines or other terms and conditions set forth therein, (b) adopt new rules and procedures for conducting the bidding and Auction process, (c) if applicable, provide reasonable accommodations to a Stalking Horse Bidder, or (d) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the value of the Assets; provided, that such extensions, waivers, new rules and procedures, accommodations and modifications (i) do not conflict with and are not inconsistent with this Order, the Bidding Procedures, the DIP Orders, the Bankruptcy Code or any order of the Bankruptcy Court, (ii) are promptly communicated to each

Qualified Bidder and (iii) are in form and substance acceptable to the DIP Lenders (as defined in the Bidding Procedures).

18.     If the Debtors, in consultation with the Consultation Parties, determine not to conduct an Auction, then the Debtors shall file a notice with the Court of such determination within one business day of the making of such determination by the Debtors.

**B.     The Stalking Horse Bid and Bid Protections.**

19.     Following entry of this Order, the Debtors shall be authorized, but not obligated, in an exercise of their reasonable business judgment and with the consent of the Consultation Parties, (a) to select one or more Qualified Bidders to act as stalking horse bidders in connection with a Sale Transaction (each, a "Stalking Horse Bidder") and enter into a purchase agreement with respect to such Sale Transaction with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder, to agree to the Bid Protections; *provided* that the aggregate of the Cash Breakup Fee and the total Expense Reimbursements shall in no event exceed three percent (3%) of the applicable Purchase Price.  No later than three business days after entry into a Stalking Horse Agreement, or as soon as reasonably practicable thereafter, the Debtors shall file a notice with the Court to provide interested parties notice of the Debtors' entry into a Stalking Horse Agreement.

20.     Except for a Stalking Horse Bidder to the extent of the Bid Protections, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment in connection with any Bid; and by submitting a Bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for allowance or payment of any such expense reimbursement or fee, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

21.     Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the Bidding Procedures, the applicable escrow agreement, or order of the Court.

**C.     Important Dates and Deadlines.**

22.     The following dates and deadlines are hereby approved:

| **Date and Time** (all times in Eastern Time) | **Event or Deadline** |
| --- | --- |
| August 18, 2023 | Deadline for Indications of Interest |
| September 30, 2023 | Deadline to execute a Stalking Horse Agreement |
| October 15, 2023 | Bid Deadline |
| October 18, 2023 | Auction (if required) |
| October 20, 2023 | Notice of Winning Bidder |
| October 23, 2023 | Sale Objection Deadline for General Bids |
| October 26, 2023 | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) |

23.     The deadline by which Indications of Interest must be received is **5:00 p.m. (prevailing Eastern Time) on August 24, 2023** (the "IOI Deadline").     The deadline by which Bids must be *actually received* by the Debtors and their advisors is **5:00 p.m. (prevailing Eastern Time) on October 15, 2023** (the "Bid Deadline").

24.     Each bidder participating at the Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale Transaction, as set forth in the Bidding Procedures; and the Auction, if any, shall be transcribed or videotaped.

25.     If an Auction is held, such Auction shall be held on **October 18, at [●] (prevailing Eastern Time).**  Any Auction held will be conducted via remote video or in-person at the Debtors'

election.  The Debtors shall provide Qualified Bidders with notice of the date, time, and place of the Auction no later than two business days before such Auction; *provided* that such notice will be provided to Qualified Bidders no later than five business days before such Auction in the event the Auction (a) takes place outside of New York City, New York, or (b) is not conducted via remote video.  As set forth more fully in the Bidding Procedures, only Qualified Bidders shall be entitled to bid at the Auction.

26.     Objections to the proposed Sale Order by any Winning Bid(s) (or Back-Up Bid(s), as applicable) must be made on or before **October 23, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the, "Sale Objection Deadline").  All objections must:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** no later than the Sale Objection Deadline by the following parties (the "Notice Parties"):

| Proposed Co-Counsel to the Debtors | Proposed Co-Counsel to the Debtors |
|---|---|
| Kirkland & Ellis LLP<br>601 Lexington Ave<br>New York, New York 10022<br>Allyson B. Smith (allyson.smith@kirkland.com)<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Patrick J. Nash Jr., P.C. (patrick.nash@kirkland.com)<br>David Seligman P.C. (david.seligman@kirkland.com)<br>Steve Toth (steve.toth@kirkland.com)<br>Whitney Fogelberg (whitney.fogelberg@kirkland.com) | Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor, PO Box 8705<br>Wilmington, Delaware 19801<br>Laura Davis Jones (ljones@pszjlaw.com)<br>Timothy P. Cairns (tcairns@pszjlaw.com)<br>Peter J. Keane (pkeane@pszjlaw.com)<br>Edward Corma (ecorma@pszjlaw.com) |
| **Proposed Investment Banker to the Debtors** | **Office of the United States Trustee (Region 7)** |
| Ducera Partners LLC<br>11 Tmes Square, 36th Floor<br>New York, New York 10036<br>Cody Kaldenberg (ckaldenberg@ducerapartners.com)<br>Jon Cremeans (jcremeans@ducerapartners.com) | The U.S. Trustee<br>844 King Street, Suite 2207, Lockbox 35,<br>Wilmington, Delaware 19801<br>Jane Leamy (jane.m.leamy@usdoj.gov) |

27.     If any party fails to timely file with the Court and serve an objection by the Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to the Sale Transaction(s), such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of the Sale Transaction(s), including the transfer of the Assets to the Winning Bidder, free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

28.     The Court will hold a hearing to consider approval of the Sale Transaction(s) contemplated by each Winning Bid (or Back-Up Bid(s)).  With respect to any Winning Bid(s) (or Back-Up Bid(s)), the Sale Hearing will be held on **October 26, 2023 at [_]:[_] [a./p.]m.** (the "<u>Sale Hearing</u>"). The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

**E.     Credit Bidding**

29.     Any bidder holding a perfected security interest in any of the Assets may seek to credit bid all, or a portion of, such bidder's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "<u>Credit Bid</u>"); *provided*, that such Credit Bid complies with the terms of the Bidding Procedures.

**G.     Notice of Sale Transaction**

30.     The Auction Notice, substantially in the form attached to this Order as <u>**Exhibit 2**</u>, is approved.  Within three business days of the entry of this Order or as soon thereafter as reasonably practicable, the Debtors shall cause the Auction Notice to be served upon

parties in interest and posted on the Debtors' restructuring webpage at https://dm.epiq11.com/YellowCorporation (or such other applicable URL) (the "Case Webpage").

31.     Within three business days after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall place a publication version of the Auction Notice for one day in *The New York Times* (national edition) and post it onto the Case Webpage.  Such notice shall be deemed sufficient and proper notice of the Sale(s) with respect to known interested parties.

32.     Within two business days after the conclusion of the Auction (if any), or as soon as reasonably practicable thereafter, the Debtors will file on the docket the Notice of Winning Bidder substantially in the form attached to this Order as **Exhibit 4**.

33.     Within three business days three business days of the Stalking Horse Deadline or as soon as reasonably practicable thereafter, the Debtors will file on the docket the Stalking Horse Notice.

**H.     Assumption and Assignment Procedures.**

34.     The Assumption/Assignment Procedures below are hereby approved and shall be the procedures by which the Debtors will notify counterparties (the "Contract Counterparties") to executory contracts and unexpired leases with the Debtors (the "Contracts") of proposed cure amounts in the event the Debtors determine to assume and assign such Contracts in connection with a Sale Transaction.  Nothing in this Order shall be deemed to limit the Debtors' ability to negotiate partial assumption and/or assumption and assignment of Contracts with Contract Counterparties on a consensual basis.

a.     **Cure Notice**.  No later than fourteen days prior to the Cure Objection Deadline, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notices, attached hereto as **Exhibit 3**, on the Contract Counterparties, and post the Cure Notice to the case website https://dm.epiq11.com/YellowCorporation.

b.    <u>**Content of Cure Notice**</u>.  The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information:  (i) a list of the applicable Contracts that may be assumed or assumed and assigned in connection with the Sale (the "<u>Assigned Contracts</u>," and each individually, an "<u>Assigned Contract</u>"); (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimates of the proposed amount necessary to cure all monetary defaults, if any, under each Assigned Contract (the "<u>Cure Costs</u>"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "<u>Cure Objection</u>"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Winning Bid.

c.    <u>**Cure Objections**</u>.  Cure Objections, if any, to a Cure Notice must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; *provided* that the Debtors may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

d.    <u>**Effects of Filing a Cure Objection**</u>.  A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Sale Order.

e.    <u>**Dispute Resolution**</u>.  Any Cure Objection to the assumption or assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the Winning Bidder's reasonable discretion.  To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Winning Bidder, pending a resolution of the Cure Objection after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the Winning Bidder may determine that such Contract should not be assumed and assigned, in which case the Winning Bidder will not be responsible for any Cure Costs in respect of such contract.  Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Costs (any such objection, a "<u>Cure Dispute</u>"), the applicable Assigned Contract may be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower

amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

f.    **Supplemental Cure Notice**.    If the Debtors discover Contracts inadvertently omitted from the Cure Notice or the Winning Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the Sale, the Debtors may, after consultation with the Winning Bidder, at any time before the closing of the Sale supplement the Cure Notice with previously omitted Contracts or modify a previously filed Cure Notice, including by modifying the previously stated Cure Costs associated with any Contracts (the "Supplemental Cure Notice").

g.    **Objection to the Supplemental Cure Notice**.    Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "Supplemental Cure Objection") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs, if any, modified by the Supplemental Cure Notice.    All Supplemental Cure Objections must: (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 5:00 p.m. (prevailing Eastern Time) on the date that is twenty-one (21) days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

h.    **Dispute Resolution of Supplemental Cure Objection**.    If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant Contracts.    If there is no such objection, then the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice.    Notwithstanding the foregoing, if a Supplemental Cure Objection relates solely to a Cure Dispute, the applicable Assigned Contract may be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

## I.    Miscellaneous.

35.    All persons and entities that participate in the Auction or bidding for any Asset during the Sale Transaction process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding

Procedures, the Auction or any other relief requested in the Motion or granted in this Order, (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

36.     The Debtors are authorized to take all steps and pay all amounts necessary or appropriate to implement the relief granted in this Order.

37.     This Order shall be binding on the Debtors and its successors and assigns, including any chapter 7 or chapter 11 trustee or other fiducially appointed for the estates of the Debtors.

38.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

39.     To the extent any provisions of this Order are inconsistent with the Motion, the terms of this Order shall control.  To the extent any provisions of this Order are inconsistent with the Bidding Procedures, the terms of this Order shall control.

40.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

41.     Nothing contained in the Motion or this Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Order), is

intended as or shall be construed or deemed to be:  (a) an admission as to the amount, validity or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

42.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

43.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

44.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

45.    The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without

further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

46.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

47.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

**<u>EXHIBIT 1</u>**

Bidding Procedures

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (___) |
| Debtors. | (Joint Administration Requested) |

## BIDDING PROCEDURES

On August 6, 2023 (the "Petition Date"), Yellow Corporation and the above-captioned debtors and debtors in possession (collectively, the "Debtors" and, the "Company"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

Thereafter, on [●], 2023, the Court entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (C) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (VI) Granting Related Relief* (the "Bidding Procedures Order"), by which the Court approved the bidding procedures set forth herein (these "Bidding Procedures").[2]

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing and auction process for the sale or sales (the "Sale") of all or substantially all of the Debtors' assets (collectively, the "Assets"), through one or more transactions (a "Sale Transaction"), which transaction(s) may be effectuated through a sale or sales pursuant to section 363 of the Bankruptcy Code, and which transactions may contemplate the sale of one or more of the following assets (or assumption and assignment of leases, as applicable):

- any owned or leased vehicles, tractors, trucks, trailers, tank trailer and other trailers, or similar vehicles and trailers, railroad cars, locomotives, stacktrains and other rolling stock

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    Unless otherwise specified herein, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order and its respective motion filed at Docket. No. [●] (the "Bidding Procedures Motion").

and accessories used on such railroad cars, locomotives or other rolling stock (including superstructures and racks) (the "Rolling Stock");

- any owned or leases real estate, including 169 terminals owned by the Debtors;
- any sale-leaseback equity, pursuant to capital lease agreements through which the Debtors lease certain facilities;
- any owned or licensed intellectual property, including any customer lists, trademarks, copyrights, domain names, or other similar intellectual property; and
- any inventory, spare parts, supplies, accounts receivable, or other assets.

Subject to the remaining terms of these Bidding Procedures, a Potential Bidder (as defined below) may bid on the Assets (i) in individual lots, (ii) as a collective whole, or (iii) in any combination.

The ability to undertake and consummate any sale of the Assets shall be subject to competitive bidding as set forth herein and approval by the Court. In addition to any Stalking Horse Bid (as defined below), the Debtors will consider bids for any or all of the Assets in a single bid from a single bidder or in multiple bids from multiple bidders. Any bid for less than all of the Assets, even if such bid is the highest or otherwise best bid for such Assets, is subject to higher or otherwise better bids on packages of Assets that may include such Assets. Similarly, any bid on all of the Assets is subject to bids on individual Assets or packages of Assets that are, in the aggregate, higher or otherwise better bids.

The Debtors, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties (as defined herein) and solely to the extent permitted under the DIP Credit Agreement (as defined in the DIP Motion), may elect to exclude any Assets from the Bidding Procedures and sell such Assets at either a private or public sale, subject to Court approval of any alternative sale method. The Debtors may determine in their discretion, following consultation with the Consultation Parties, whether to proceed with a Sale of any Asset pursuant to these Bidding Procedures.

## 1. KEY DATES AND DEADLINES

| Date and Time (all times in Eastern Time) | Event or Deadline |
|---|---|
| August 18, 2023 | Deadline for Indications of Interest |
| September 30, 2023 | Deadline to execute a Stalking Horse Agreement |
| October 15, 2023 | Bid Deadline |
| October 18, 2023 | Auction (if required) |
| October 20, 2023 | Notice of Winning Bidder |
| October 23, 2023 | Sale Objection Deadline for Bids |
| October 26, 2023 | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) |

## 2. SUBMISSIONS TO THE DEBTORS; CONSULTATION PARTIES

All submissions to the Debtors required or permitted to be made under these Bidding Procedures must be directed to each of the following persons or entities unless otherwise provided:

2.1. Debtors: Yellow Corporation, 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211, Attn.: General Counsel.

2.2. Debtors' Proposed Counsel: (i) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, 60654, Attn.: Patrick J. Nash Jr., P.C. (patrick.nash@kirkland.com), David Seligman P.C. (david.seligman@kirkland.com), Steve Toth (steve.toth@kirkland.com); and Whitney Fogelberg (whitney.fogelberg@kirkland.com) and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Allyson B. Smith (allyson.smith@kirkland.com); and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, PO Box 8705, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns (tcairns@pszjlaw.com), Peter J. Keane (pkeane@pszjlaw.com), and Edward Corma (ecorma@pszjlaw.com).

2.3. Debtors' Proposed Investment Banker: Ducera Partners LLC, 11 Times Square, 36th Floor, New York, New York 10036, Attn: Cody Kaldenberg (ckaldenberg@ducerapartners.com) and Jon Cremeans (jcremeans@ducerapartners.com).

2.4. Debtors' Proposed Financial Advisor: Alvarez & Marsal North America, LLC, Brian Whittman (BWhittman@alvarezandmarsal.com) and Michael Leto (mleto@alvarezandmarsal.com).

The "Consultation Parties" are (A) the Prepetition B-2 Lenders, (B) the Prepetition ABL Agent, (C) the DIP Lenders, (D) the official committee of unsecured creditors of the Debtors (the "Committee"), if any, (E) other secured lenders with liens on the Assets, (F) the Prepetition UST Secured Parties (as defined in the Interim UST Cash Collateral Order);[3] provided that, to the extent that the Prepetition B-2 Lenders, the Prepetition ABL Agent, the Prepetition UST Secured Parties, the DIP Lenders, any members of the Committee, or any other secured lender with a lien on the Assets, including any Prepetition Agents, the Prepetition UST Agent, and DIP Agent,[4] submit a credit bid in connection with any Sale Transaction, such party shall not be a Consultation Party. For the avoidance of doubt, neither the Prepetition B-2 Lenders nor the DIP Lenders shall be Potential Bidders unless and until the Prepetition B-2 Agent or DIP Agent, as

---

[3] "Prepetition UST Tranche B Liens" shall have the meaning given to such term in the *Interim UST Cash Collateral and Adequate Protection Order (I) Authorizing the Debtors to (A) Use UST Cash Collateral and All Other Prepetition UST Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Interim UST Cash Collateral Order").

[4] "Prepetition B-2 Lenders," "Prepetition ABL Agent" "Prepetition Agents," "DIP Lenders," and "DIP Agent" shall each have the meaning ascribed to them in the DIP Motion.

applicable, submits a credit bid on their behalf. Materials and information provided to the advisors to any Consultation Party may be shared with such Consultation Party, subject to the respective confidentiality agreement entered into by and between each such Consultation Party and the Debtors.

**3.    POTENTIAL BIDDERS & ACCEPTABLE BIDDERS**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale Transaction (a "Potential Bidder") must deliver or have previously delivered to the Debtors and each of their advisors the following documents and information (unless the Debtors, in their reasonable business judgment after consultation with the Consultation Parties, choose to waive any of the requirements set forth in this Section 3 for any Potential Bidder):

3.1.    a statement and other factual support demonstrating, to the Debtors' satisfaction, that the Potential Bidder has a *bona fide* interest in purchasing any or all of the Assets and is likely to be able to submit a Qualified Bid (as defined below) by the Bid Deadline (as defined below), and has the financial ability to consummate its proposed Sale Transaction;

3.2.    a description of any connections the Potential Bidder, its affiliates, and related persons have to the Debtors, any current or former directors and officers of the Debtors, their non-Debtor affiliates, and their primary creditors as identified by the Debtors;

3.3.    an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement");

3.4.    the identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on such Potential Bidder's behalf for all purposes regarding the contemplated Sale Transaction(s); and

3.5.    an optional non-binding written indication of interest specifying, among other things, with respect to any proposed Sale Transaction, the identity of the Assets to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such Potential Bidder.

The Debtors will provide copies of materials delivered by any Potential Bidder prior to the date of these Bidding Procedures upon reasonable request by the Consultation Parties and/or their counsel.

The Debtors, in their reasonable business judgment, following consultation with the Consultation Parties, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a Bid (as defined herein) (such Potential Bidder, an "Acceptable Bidder").

The Debtors may, in their reasonable business judgment, conduct a process for the sale of unsold Assets that are not included in any Winning Bid(s), subject to the terms of the DIP Credit Agreement.

## 4.    DUE DILIGENCE

The Debtors, with their advisors, have established an electronic data room or rooms (the "Data Room") that provide standard and customary diligence materials, including information to allow Acceptable Bidders to submit a Qualified Bid (as defined below) and to seek and obtain financing commitments.

Only Acceptable Bidders shall be eligible to receive due diligence information and access to the Data Room and to additional non-public information regarding the Debtors. Subject to the other terms herein, the Debtors may provide to each Acceptable Bidder reasonable due diligence information, as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall use commercially reasonable efforts to post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' Data Room. The due diligence period for any Stalking Horse Bidder (as defined herein) will end prior to execution of the applicable Stalking Horse Agreement, unless otherwise agreed pursuant to the applicable Stalking Horse Agreement. For all Acceptable Bidders other than any Stalking Horse Bidder, the due diligence period will end on the Bid Deadline. The Debtors may, in their reasonable business judgment after consultation with the Consultation Parties, but shall have no obligation to, furnish any additional due diligence information to any person following execution of a Stalking Horse Agreement or the Bid Deadline, as applicable.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale(s) to any person except to an Acceptable Bidder or to such Acceptable Bidder's duly authorized representatives subject to the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' reasonable business judgment and after consultation with the Consultation Parties, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate the applicable Sale Transaction.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets (a) to any person or entity who is not an Acceptable Bidder or (b) if and to the extent doing so would (1) violate any law to which the Debtors are subject, including any privacy law, (2) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party, (3) violate any legally-binding obligation of any Debtor with respect to confidentiality, non-disclosure or privacy or (4) jeopardize protections afforded to any Debtor under the attorney-client privilege or the attorney work product doctrine (*provided*, that, in case of each of clauses (1) through (4), the Debtors shall use commercially reasonable efforts to (x) provide such access as can be provided (or otherwise convey such information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law and (y) provide such information in a manner without violating such privilege, doctrine, contract, obligation, or law).

5

The Debtors also reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure, including to an Acceptable Bidder whom the Debtors determine in consultation with the Consultation Parties is a competitor of the Debtors or is affiliated with any competitor of the Debtors.  Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

**All due diligence requests directed to the Debtors must be directed to: yellow@ducerapartners.com.**

**Each Potential Bidder or Acceptable Bidder (as defined below) shall comply with all reasonable requests with respect to information and due diligence access by the Debtors or their advisors regarding such Potential Bidder or Acceptable Bidder, as applicable, and its contemplated Sale Transaction.**

## 5.    BID REQUIREMENTS.

Any proposal, solicitation, or offer to consummate a Sale Transaction (each, a "Bid") must be submitted in writing and must satisfy the following requirements (collectively, the "Bid Requirements"):

5.1.    **Proposed Sale Transaction.**  Each Bid must clearly propose a Sale Transaction as to the Assets.  Each Bid must specify (1) which of such Assets are to be included in the proposed Sale Transaction (the "Acquired Assets") and (2) to the extent such Bid is for substantially all of the Assets, which Assets are to be excluded from the proposed Sale Transaction (the "Excluded Assets"), in each case, as well as the disposition of any liabilities or obligations of the Debtors.  For the avoidance of doubt, all Assets held by non-Debtor subsidiaries primarily related to the non-U.S. businesses of the Debtors shall be presumed to be Excluded Assets.

5.2.    **Purchase Price.**  Each Bid must clearly specify a purchase price, including and identifying separately any Cash and non-Cash components in US dollars (the "Purchase Price").  A Bid that encompasses less than all of the Assets but includes multiple businesses, segments, or groups of assets must contain sufficient information as to allow the Debtors to determine an allocation of value among each business, segment, or group of assets.  If the Debtors select a Stalking Horse Bidder (as defined below) for such assets, then such Purchase Price shall exceed such Stalking Horse Bid (as defined below) by at least the aggregate sum of (1) the Bid Protections (as defined below) for such assets, and (2) such additional amount as determined by the Debtors in their reasonable business judgment after consultation with the Consultation Parties.

5.3.    **Deposit.**  Each Bid other than a credit bid must be accompanied by a Cash deposit equal to ten percent (10%) of the applicable aggregate Purchase Price (the "Deposit"), to be held in one or more escrow accounts on terms acceptable to the Debtors and the Consultation Parties; *provided*, *however*, that the Debtors, in

their reasonable business judgment and in consultation with the Consultation Parties, may elect to waive or modify the requirement of a Deposit on a case-by-case basis. For the avoidance of doubt, to the extent the Purchase Price of a Bid is increased, at any time or from time to time, whether prior to commencement of the Auction or during the Auction, the amount of the Deposit shall automatically increase accordingly (to be equal to 10% of any increased Purchased Price) and the corresponding bidder will pay into escrow the amount of such increase, as promptly as practicable, and in any event within one business day, following such increase. Without limiting the foregoing, if a Purchase Price is increased in order to make a bid into a Qualified Bid, the Debtors may condition participation of the applicable bidder at the Auction on such bidder paying the then full amount of the Deposit into escrow prior to commencement of the Auction or such participation.

5.4.    **Transaction Documents.**    Each Bid must be accompanied by an executed purchase agreement with respect to the proposed Sale Transaction, including the exhibits, schedules, and ancillary agreements related thereto and any other related material documents integral to such Bid. In addition, (1) the executed purchase agreement accompanying such bidder's Bid must be further accompanied by a redline copy marked to reflect any amendments or modifications to the form purchase agreement provided by the Debtors and (2) if one or more Stalking Horse Bidders have been designated for the applicable Assets, the executed purchase agreement accompanying such bidder's Bid must be further accompanied by a redline copy marked against each applicable Stalking Horse Agreement.

5.5.    **Back-Up Bidder Commitment.**    Each Bid must include a written commitment by the applicable Potential Bidder to serve as a Back-Up Bidder in the event that such Potential Bidder's Bid is not selected as the Winning Bid; *provided* that the foregoing shall not apply to any Potential Bidder that (1) is the DIP Agent (on behalf of the DIP Lenders); (2) both (a) qualifies as a Secured Party (as defined herein) and (b) submits a Bid that contemplates providing consideration pursuant to section 363(k) of the Bankruptcy Code; or (3) is expressly exempted from such requirement pursuant to an applicable Stalking Horse Agreement (as defined herein).

5.6.    **Proof of Financial Ability to Perform.**    Each Bid must include written evidence that the Debtors reasonably conclude, in consultation with the Consultation Parties, demonstrates that the bidder has the necessary financial ability to close the proposed Sale Transaction. Such information must include the following:

5.6.1.    contact names and telephone numbers for verification of financing sources;

5.6.2.    evidence of the bidder's internal resources and, if applicable, proof of fully executed and effective financing commitments with limited conditionality customary for transactions of this type from one or more

reputable sources in an aggregate amount equal to the Cash portion of such Bid (including, if applicable, the payment of cure amounts), in each case, as are needed to close the Sale Transaction;

5.6.3.    a description of the bidder's pro forma capital structure; and

5.6.4.    any other financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such bidder has the ability to close the proposed Sale Transaction.

5.7.    **Contingencies; No Financing or Diligence Outs**.    Each Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

5.8.    **Identity**.    Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid—including each equity holder or other financial backer of the bidder if such bidder is an entity formed for the purpose of consummating the proposed Sale Transaction contemplated by such Bid—and the complete terms of any such participation. Each Bid should also include contact information for the specific person(s) and counsel whom the Debtors (and their advisors) should contact regarding such Bid.

5.9.    **Authorization**.    Each Bid must contain evidence acceptable to the Debtors that the bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Sale Transaction contemplated by such Bid.

5.10.    **Contracts and Leases**.    Each Bid must identify each and every executory contract and unexpired lease to be assumed and assigned in connection with the proposed Sale Transaction (collectively, the "Assigned Contracts"). Each Bid must be accompanied by adequate assurance of future performance under all Assigned Contracts, which shall include audited and unaudited financial statements, tax returns, bank account statements, and a description of the business to be conducted at the premises, and such other documentation as the Debtors may request (the "Adequate Assurance Package"). The Adequate Assurance Package should be submitted in its own compiled PDF document.

5.11.    **As-Is, Where-Is**.    Each Bid must include a written acknowledgement and representation that: (1) the bidder has had an opportunity to conduct any and all due diligence regarding the Sale Transaction prior to making its offer; (2) the bidder has relied solely upon its own independent review, investigation, or inspection of any documents in making its Bid; (3) except as may be set forth in Definitive Sale Documents (as defined below) concerning such Bid, the bidder did not rely, and is not relying upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or their advisors or other representatives regarding the Sale Transaction, the completeness of any

information provided in connection therewith or the Auction, if any, or otherwise; and (4) the bidder did not engage in any collusive conduct and acted in good faith in submitting its Bid.

5.12. **No Break-Up Fee.**  Each Bid must expressly state and acknowledge that such bidder shall not be entitled to, and shall not seek, any transaction break-up fee, termination fee, expense reimbursement, working fee, or similar type of payment; *provided*, that the Debtors are authorized in their discretion, subject to Section 6 of these Bidding Procedures, to offer Bid Protections (as defined below) to one or more Stalking Horse Bidders in accordance with the Bidding Procedures and the Bidding Procedures Order.  Provided further, each Bid must expressly waive any claim or or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code or the payment of any broker fees or costs in connection with bidding for any of the Assets and/or otherwise participating in the Auction or the sale process.

5.13. **Transition Services.**  Each Bid must state or otherwise estimate the types of transition services, if any, the Potential Bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Potential Bidder's Bid were selected as the Winning Bid for the applicable Assets.

5.14. **Indication of Interest.**  To the extent a bidder provided a non-binding indication of interest pursuant to Section 3.5 of these Bidding Procedures, each Bid submitted by such a bidder must describe any material deviations of the Bid from the indication of interest.

5.15. **Commitment to Close.**  Each Bid must include a commitment to close as soon as practicable, and state the expected date of closing of the Sale Transaction.

5.16. **Irrevocable Bid**.  Each Bid must contain a statement by the applicable bidder acknowledging and agreeing that such Bid and each of its provisions is binding upon the bidder and irrevocable in all respects.

5.17. **Compliance with Bidding Procedures**.  Each Bid must contain a covenant that the applicable bidder will comply with the terms of these Bidding Procedures and the Bidding Procedures Order.

5.18. **Combination Bids.**  For Bids that contemplate a purchase of multiple categories of Assets, each Bid must specify: (i) allocation of the Purchase Price across categories of Assets (*e.g.*, between Rolling Stock, real estate, etc.); (ii) for Bids that include real estate and sale-leaseback equity specifically, the Purchase Price must be allocated across each individual property included in the Bid; and (iii) Bids must indicate whether the offer is on an "all or none" basis in the event that the Potential Bidder is outbid for certain Assets contemplated in the Bid.

By submitting a Bid, each bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures and to refrain from (A) submitting a

Bid after conclusion of the Auction (if any) or (B) seeking to reopen the Auction (if any) once closed. **The submission of a Bid shall constitute a binding and irrevocable offer (a) for the Winning Bidder, until consummation of the Sale Transaction, (b) for the Back-Up Bidder (if any), as provided in these Bidding Procedures, including Section 11 hereof, and (c) for any bidder other than the Winning Bidder and Back-Up Bidder, until two business days after entry of the Sale Order approving the Winning Bid and (if applicable) the Back-Up Bid for the applicable Assets, and each Bid must include a written acknowledgment and representation to such effect.**

**For the avoidance of doubt, the Debtors may disclose the terms of any Bid that requires modification and/or termination of any collective bargaining agreements or related agreements with any union to such union; *provided* that such union has executed a confidentiality agreement with the Debtors.**

6.    **STALKING HORSE BIDDER.**

The Debtors are and shall be authorized, but not obligated, in an exercise of their reasonable business judgment, and upon consent of the Consultation Parties, to: (A) select one or more Acceptable Bidders to act as stalking horse bidders in connection with a Sale Transaction (each, a "Stalking Horse Bidder," and such Acceptable Bidder's Bid, a "Stalking Horse Bid") and enter into a purchase agreement with respect to such Sale Transaction with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (B) in connection with any Stalking Horse Agreement and in recognition of such Stalking Horse Bidder's expenditure of time, energy, and resources, the Debtors may, with the consent of the Consultation Parties, determine to (i) provide a breakup fee (other than with respect to a Stalking Horse Bidder that is a Secured Party (as defined herein)) (the "Breakup Fee") and/or (ii) reimburse such Stalking Horse Bidder's reasonable and documented out-of-pocket fees and expenses (including attorney's fees and expenses) actually incurred in connection with preparation and negotiation of the Stalking Horse Agreement (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections"); *provided* that, with respect to any Stalking Horse Agreement, the aggregate of the Breakup Fee and the total Expense Reimbursements shall in no event exceed three percent (3%) of the applicable Purchase Price. To the extent the Bid Protections do not otherwise comply with these Bidding Procedures, the Debtors reserve the right to seek Court approval of such Bid Protections. The applicable Debtors' entry into a Stalking Horse Agreement and/or provision of Bid Protections to a Stalking Horse Bidder shall be in compliance with the DIP Orders, the DIP Documents (as defined in the DIP Motion), and the Debtors' obligations thereunder.

No later than one business day after selecting a Stalking Horse Bidder, the Debtors shall file with the Court and serve a notice that (A) identifies the Stalking Horse Bidder and the material terms of the applicable Stalking Horse Bid, including the Purchase Price and the Assets to which such Stalking Horse Bid relates; and (B) attaches a copy of the corresponding Stalking Horse Agreement.

7.      **BID DEADLINES.**

Any Bid must be transmitted via email (in .pdf or similar format) to each of the parties specified in Section 2 hereof so as to be **actually received by such parties** on or before **October 15, 2023 by 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

8.      **QUALIFIED BIDS & QUALIFIED BIDDERS.**

A Bid is a "Qualified Bid" if the Debtors, in the Debtors' reasonable business judgment and in consultation with the Consultation Parties, determine that such Bid (A) satisfies the Bid Requirements set forth above; (B) is for an amount equal to or greater than $1,000,000.00 in the aggregate; and (C) is reasonably likely to be consummated if selected as the Winning Bid (or Back-Up Bid, as applicable) (as defined below) for the applicable Assets, no later than the Applicable Outside Date (as defined herein); *provided* that any Stalking Horse Bid shall constitute and be deemed a Qualified Bid.

An Acceptable Bidder that submits a Qualified Bid is a "Qualified Bidder" with respect to the Assets to which such Qualified Bid relates.

As soon as reasonably practicable after the applicable Bid Deadline, the Debtors will notify each Acceptable Bidder whether such party is a Qualified Bidder and shall provide the Consultation Parties' counsel with a copy of each Qualified Bid. If an Acceptable Bidder's Bid is determined not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit (if any) on the date that is three business days after the applicable Bid Deadline.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the date set for the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors following consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in the Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction (if any) as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

Notwithstanding anything herein to the contrary, the Debtors, in consultation with the Consultation Parties, reserve the right to work with (A) Potential Bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the applicable Bid Deadline and (B) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction (if any). The Debtors, in consultation with the Consultation Parties, reserve the right to cooperate with any Acceptable Bidder to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors, in consultation with the Consultation Parties, may accept a single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder and their Bid a single Qualified Bid for purposes of the Auction (if any)).

9.      **RIGHT TO CREDIT BID.**

Any Qualified Bidder that has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Party") shall be entitled to credit bid all or a portion of the face value of such Secured Party's claims against the Debtors toward the Purchase Price specified in such Qualified Bidder's Bid; *provided* that a Secured Party shall be entitled to credit bid its claim(s) only with respect to Assets that are subject to a valid and perfected first priority lien in favor of such Secured Party as to such claim(s).  Notwithstanding anything to the contrary herein, each of the Prepetition Agents, the Prepetition UST Agent, subject to section 363(k) of the Bankruptcy Code, and the DIP Agents may submit a credit bid of all or any portion of the aggregate amount of their respective secured claims, including, with respect to the DIP Agent, any postpetition financing claims.  Any credit bid submitted by any Prepetition Agent, subject to section 363(k) of the Bankruptcy Code, or the DIP Agent shall be deemed a Qualified Bid regardless of whether it meets the requirements set forth herein.

In the event that the DIP Agent, on behalf of the DIP Lenders, or the Prepetition B-2 Agent, on behalf of the Prepetition B-2 Lenders, submits a credit bid comprised of any of their DIP Obligations (as defined in the DIP Motion) or Prepetition B-2 Obligations (as defined in the DIP Motion), respectively, on any assets securing such respective obligations, and without limiting any other requirements for approval of any other bid as a higher or better offer or a Winning Bid, any further bid for the purchase of some or all of the assets and any sale of such assets to a Winning Bidder (other than the DIP Agent, on behalf of the DIP Lenders, or the Prepetition B-2 Agent, on behalf of the Prepetition B-2 Lenders) that is approved by the Court must provide for, at the closing of such Sale Transaction, indefeasible cash payments of the DIP Obligations and the Prepetition B-2 Obligations to the DIP Agent, on behalf of the DIP Lenders, or the Prepetition B-2 Agent, on behalf of the Prepetition B-2 Lenders, respectively, in greater than the dollar amount equivalent of the credit bid submitted by the DIP Agent, on behalf of the DIP Lenders, or the Prepetition B-2 Agent, on behalf of the Prepetition B-2 Lenders, as applicable, in order for the Bid of such Winning Bidder to be considered as a potentially higher or better bid and/or to be approved by the Court as a Winning Bid, unless otherwise agreed to by the DIP Agent, on behalf of the DIP Lenders, or the Prepetition B-2 Agent, on behalf of the Prepetition B-2 Lenders, as applicable.

Notwithstanding the foregoing, following the submission of a credit bid by the DIP Agent or any Prepetition Agent, the Debtors may sell a portion of the Assets that are subject to such credit bid with the prior written consent of the DIP Agent or such Prepetition Agent, as applicable, and the amount of such credit bid shall be adjusted accordingly.

The rights and defenses of the Debtors and any other party in interest with respect to whether any assertion that any liens, claims, encumbrances, or interests, if any, will attach to the proceeds of the Sale Transaction(s) are expressly preserved.

10.     **AUCTION.**

If the Debtors receive two or more Qualified Bids with respect to the same Assets by the applicable Bid Deadline, the Debtors may, in consultation with the Consultation Parties, conduct an auction (the "Auction") to determine the Winning Bidder (or Back-Up Bidder, as applicable)

with respect to such Assets. In such event, the Debtors will (A) notify all Qualified Bidders of the highest or otherwise best Qualified Bid with respect to the applicable Assets, as determined by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties (each such Qualified Bid, a "<u>Baseline Bid</u>") and (B) provide copies of the documents setting forth the terms of the Baseline Bid(s) to all Qualified Bidders, in each case, as soon as reasonably practicable after the Bid Deadline and in any event no later than prior to the commencement of the Auction. The Debtors' determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, deem relevant to the value of the Qualified Bid to the Debtors' estates and the Debtors' patient care mandate and related regulatory requirements.

If the Debtors, in consultation with the Consultation Parties, determine that they have received no Qualified Bids other than any Stalking Horse Bid(s) or they have received only a single Qualified Bid, then the Auction will not occur, and the Stalking Horse Bid(s) or the Qualified Bid will be deemed to be the Winning Bid(s) for the Assets to which such Stalking Horse Bid(s) or Qualified Bid relates. If the Debtors make such a determination, the Debtors shall file a notice with the Court within one business day of making such determination.

If the Debtors receive two or more Qualified Bids, the Auction shall take place on **October 18, 2023 at time to be announced by the Debtors in consultation with the Consultation Parties**, via remote video and/or in person at the Debtors' election, and shall be conducted in a timely fashion according to the procedures set forth in Section 10(i)-(vii) of these Bidding Procedures (the "<u>Auction Procedures</u>").

AUCTION PROCEDURES

(i)     **The Debtors Shall Conduct the Auction; General Provisions.** The Debtors, with the assistance of their advisors, shall direct and preside over any Auction and shall consult with the Consultation Parties throughout the Auction process. At the commencement of the Auction, the Debtors (1) may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit any successive Bid(s); and (2) shall describe the terms of the Baseline Bid. Only incremental Bids that comply with the terms set forth in Section 10(ii) of these Bidding Procedures shall be considered "Overbids." Overbids shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors, in consultation with the Consultation Parties, shall determine in their reasonable business judgment whether an incremental Bid is an Overbid. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Winning Bid (or Back-Up Bid, as applicable) (as defined below).

Only Qualified Bidders, the Debtors, the Consultation Parties and each of their respective legal and financial advisors, and any other parties specifically invited or permitted to attend by the Debtors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid

themselves or through duly authorized representatives. Except as otherwise permitted by the Debtors in consultation with the Consultation Parties, only Qualified Bidders shall be entitled to bid at the Auction.

The Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction.

The Debtors may, subject to Section 15 of these Bidding Procedures, announce at the Auction modified or additional procedures for conducting the Auction or otherwise modify these Bidding Procedures.

(ii)    **Terms of Overbids.** Each Overbid must comply with the following terms:

   (a)    <u>Minimum Overbid Increment</u>. At the commencement of the initial solicitation of Overbids, the Debtors, in consultation with the Consultation Parties, shall announce the minimum increment by which any Overbid must exceed the applicable Baseline Bid. At the commencement of each subsequent round of solicitation of Overbids, the Debtors shall announce the minimum increment by which any Overbid must exceed the Prevailing Highest Bid (as defined below) at such time. The Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, announce increases or reductions to the applicable minimum Overbid increment at any time during the Auction. Any Overbid made by a Stalking Horse Bidder shall be deemed to have been made in an amount equal to the Overbid plus, if applicable, the Expense Reimbursement and the Breakup Fee, to the extent provided in the applicable Stalking Horse Agreement.

   (b)    <u>Conclusion of Each Overbid Round</u>. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline by which time any Overbids must be submitted to the Debtors (an "<u>Overbid Round Deadline</u>"); *provided* that the Debtors, in their reasonable business judgment and after consultation with the Consultation Parties, may extend any Overbid Round Deadline.

   (c)    <u>Overbid Alterations</u>. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' reasonable business judgment and after consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

      (d)    <u>Announcing Highest Bid</u>.  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors, in consultation with the Consultation Parties, have identified an Overbid as being higher or otherwise better than, in the initial Overbid round, the Baseline Bid or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all applicable Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid.

**(iii)**    **<u>Consideration of Overbids</u>.**  The Debtors reserve the right, in their reasonable business judgment and in consultation with the Consultation Parties, to adjourn the Auction one or more times, to, among other things (1) facilitate discussions between the Debtors and Qualified Bidders, (2) allow Qualified Bidders the opportunity to consider how they wish to proceed, and (3) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient and sufficiently unconditional financing commitments to consummate the proposed Sale Transaction at the prevailing Overbid amount.

**(iv)**    **<u>No Round-Skipping</u>.**  To remain eligible to participate in the Auction, in each round of bidding, each Qualified Bidder, except the Qualified Bidder that submitted the Prevailing Highest Bid, must submit an Overbid with respect to such round of bidding.  To the extent a Qualified Bidder that did not submit the Prevailing Highest Bid fails to submit an Overbid with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction; *provided* the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may permit a bidder that has been disqualified to take part in the Auction solely to the extent a Qualified Bidder that has not been disqualified has agreed (after receiving express permission from the Debtors upon consultation with the Consultation Parties) to permit such disqualified bidder to join such Qualified Bidder in its next-round Bid as an additional purchaser party or debt or equity financing source.

**(v)**    **<u>Closing the Auction</u>.**  The Auction shall continue until there is only one Qualified Bid for a particular group of assets that the Debtors determine, in their reasonable business judgment and in consultation with the Consultation Parties, to be the highest or otherwise best Qualified Bid for the applicable Assets.  Such Qualified Bid shall be designated the "<u>Winning Bid</u>" (or Back-Up Bid, as applicable, and the Qualified Bidder who submitted the Winning Bid, the "<u>Winning Bidder</u>") with respect to its proposed Acquired Assets, at which time the Auction with respect to such Assets shall be closed; *provided* that (1) such Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid; and (2) the Debtors' designation of a Qualified Bid as a Winning Bid (or

Back-Up Bid, as applicable) shall be subject to and conditioned on finalization of definitive documentation and the Court's approval of such Winning Bid (or Back-Up Bid, as applicable), applicable regulatory and third-party approvals, and the consummation of the Sale Transaction contemplated thereby.  As soon as reasonably practicable after the designation of a Winning Bid (or Back-Up Bid, as applicable), the Debtors, in consultation with the Consultation Parties, shall finalize definitive documentation to implement the terms of such Winning Bid (or Back-Up Bid, as applicable) and cause such definitive documentation to be filed with the Court.

(vi)    **No Collusion; Good Faith Offer.**  Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (1) such Qualified Bidder has not engaged in any collusion with respect to the bidding process (2) such Qualified Bidders' Qualified Bid is a good faith and irrevocable offer and such Qualified Bidder intends to consummate the Sale Transaction contemplated by its Qualified Bid if such Qualified Bid is the Winning Bid (or Back-Up Bid, as applicable) with respect to the applicable Acquired Assets, and (3) will serve as Back-Up Bid.

(vii)   **Rejection of Bids**.  The Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may reject, at any time before entry of an order of the Court approving a Winning Bid (or Back-Up Bid, as applicable), any Bid that the Debtors determine, after consultation with the Consultation Parties, is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code and/or these Bidding Procedures, or (3) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

## 11.    DESIGNATION OF A BACK-UP BIDDER.

If for any reason the Winning Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Winning Bidder, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid (each, a "Back-Up Bidder"), as determined by the Debtors after consultation with the Consultation Parties, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein and as set forth in the Sale Order, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four hours advance notice, which notice will be filed with the Court; *provided* that the forgoing shall not apply to any Potential Bidder that (1) both (a) qualifies as a Secured Party and (b) submits a Bid that contemplates providing consideration pursuant to section 363(k) of the Bankruptcy Code; or (2) is expressly exempted from such requirement pursuant to an applicable Stalking Horse Agreement.

Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid must remain open and irrevocable until the earlier of (1) the closing of the transactions contemplated by the

Winning Bid notwithstanding any outside date set forth in such Back-Up Bidder's proposed purchase agreement or the chapter 11 plan and (2) the date that is four months following the conclusion of the Auction.

## 12.    FIDUCIARY OUT.

Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or its board of directors, board of managers, or similar governing body to take any action or to refrain from taking any action with respect to any Sale Transaction or these Bidding Procedures solely to the extent such Debtor or governing body determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, until the entry of the applicable Sale Order, the Debtors and their respective directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to: (A) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Assets (each, an "Alternate Proposal"); (B) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (C) maintain or continue discussions or negotiations with respect to Alternate Proposals; (D) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (E) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

## 13.    "AS IS, WHERE IS".

Consummation of any Sale Transaction will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted and agreed to by the Debtors in the executed definitive written documentation for the applicable Sale Transaction (the "Definitive Sale Documents"). Unless otherwise specifically accepted and agreed to by the Debtors in Definitive Sale Documents, all of the Debtors' right, title, and interest in and to the Assets disposed of in a Sale Transaction will be transferred to the Winning Bidder (or Back-Up Bidder, as applicable) free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) of the Bankruptcy Code.

By submitting a Bid, each bidder will be deemed to acknowledge and represent that it (A) has had an opportunity to conduct adequate due diligence regarding the Debtors and the proposed Sale Transaction prior to making its Bid, (B) has relied solely on its own independent review, investigation, and inspection of any document, including executory contracts and unexpired leases, in making its Bid, and (C) did not rely on or receive from any person or entity (including any of the Debtors or their advisors or other representatives) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express,

implied by operation of law, or otherwise, with respect to the Sale Transaction or the completeness of any information provided in connection with the Sale Transaction or the Auction (if any), except as may be set forth in Definitive Sale Documents.

## 14. COMMISSIONS.

The Debtors shall be under no obligation to pay any commissions, fees, or expenses to any bidder's agent, advisor, or broker. All commissions, fees, or expenses for any such agents, advisors, or brokers shall be paid by the applicable bidder at such bidder's discretion. In no case shall any commissions, fees, or expenses for any bidder's agent, advisor, or broker be deducted from any proceeds derived from any Sale of the Assets. This Section 14 shall not apply to any Bid Protections that become payable pursuant to the terms of a Stalking Horse Agreement.

## 15. RESERVATION OF RIGHTS.

The Debtors shall be entitled to modify these Bidding Procedures in their reasonable business judgment in consultation with the Consultation Parties in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction (if any), additional customary terms and conditions on a Sale Transaction, including: (A) extending the deadlines set forth in these Bidding Procedures; (B) adjourning the Auction at the Auction; (C) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if any); (D) canceling the Auction; and (E) rejecting any or all Bids or Qualified Bids; provided, however, that the Debtors may not amend these Bidding Procedures or the bidding process to (i) reduce or otherwise modify their obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court, (ii) reduce or otherwise modify their obligations to obtain consent from any Consultation Party pursuant to these Bidding Procedures, the DIP Orders or the DIP Documents, as applicable, or (iii) provide for any extensions of deadlines, other modifications of the Bidding Procedures or acceptance of any bid which limit the rights set out in or the protections provided to the DIP Agent, the DIP Lenders, the Prepetition B-2 Agent, and the Prepetition B-2 Lenders as set forth in the DIP Orders or the DIP Documents (each as defined in the DIP Motion), or are inconsistent with the Debtors' agreements and obligations thereunder, in each case, without the prior written consent of the Required Lenders (as defined in the DIP Motion). All such modifications and additional rules will be communicated to each of the Consultation Parties, Potential Bidders, and Qualified Bidders; provided that, to the extent such modifications occur at the Auction, disclosure of such modifications is limited to those in attendance at the Auction.

## 16. CONSENT TO JURISDICTION.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of these Bidding Procedures.

## 17. SALE HEARING.

The Court shall hold a hearing to consider approval of the Winning Bid(s) (and Back-Up Bid(s), as applicable) and the Sale Transaction(s) contemplated thereby (the "Sale Hearing"). **The Sale Hearing shall be held on October 26, 2023, subject to the availability of the Court.**

**The Sale Hearing may be continued to a later date by the Debtors' sending written notice to all Qualified Bidders and Consultation Parties prior to, or by making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any bidder or other party.**

18.     **RETURN OF DEPOSIT.**

Any Deposits provided by Qualified Bidders shall be held in one or more escrow accounts on terms acceptable to the Debtors.  Any such Deposits will be returned to Qualified Bidders that are not Winning Bidders (or Back-Up Bidders, as applicable) on the date that is three business days after the Auction (if any).  Any Deposit provided by a Winning Bidder (or Back-Up Bidder, as applicable) shall be applied to the Purchase Price of the applicable Sale Transaction at closing.

If a Winning Bidder (or Back-Up Bidder, as applicable) fails to consummate the Sale Transaction contemplated by its Winning Bid (or Back-Up Bid, as applicable) because of a breach by such Winning Bidder (or Back-Up Bidder, as applicable), the Debtors will not have any obligation to return any Deposit provided by such Winning Bidder (or Back-Up Bidder, as applicable), which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates.

**<u>EXHIBIT 2</u>**

**Auction Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (___) |
| Debtors. | (Joint Administration Requested) |

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [●], 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (C) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (VI) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to market and conduct an auction (the "Auction") to sell the Assets. The Auction will be governed by the bidding procedures approved pursuant to the Order and attached to the Order as Exhibit 1 thereto (the "Bidding Procedures").

Copies of the Order, the Bidding Procedures, or other documents related thereto are available upon visiting the Debtors' restructuring website at https://dm.epiq11.com/YellowCorporation.

Any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures. The IOI Deadline is **August 24, 2023, at 5:00 p.m. (prevailing Eastern Time)**. The Bid Deadline is **October 15, 2023, at 5:00 p.m. (prevailing Eastern Time).**

The Debtors intend to conduct one or more Auctions at which they will consider Bids submitted to the Debtors and their advisors, by and pursuant to the Bidding Procedures as set forth in the Order. With respect to any or all other Assets, the Debtors intend to conduct the Auction on **October 18, 2023, at [●] (prevailing Eastern Time)**, by videoconference or such other form of remote communication established by the Debtors.

The Debtors reserve the right to modify the Bidding Procedures, in their reasonable business judgment in accordance with the Bidding Procedures.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 10990 Roe Avenue, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Bidding Procedures, as applicable.

**<u>EXHIBIT 3</u>**

**Notice of Winning Bidder**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE OF WINNING BIDDER AND**
**BACK-UP BIDDER FOR CERTAIN OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [●], 2023, United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (C) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (VI) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct a marketing and auction process for the sale (the "Sale") of certain of the Debtors' assets (the "Assets") through one or more transactions (a "Sale Transaction").

On **[●], at [●] [a/p].m. (prevailing Eastern Time)**, pursuant to the Order, the Debtors conducted the Auction with respect to certain Assets by videoconference or such other form of remote communication established by the Debtors.

At the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, selected the following Winning Bidder and Back-Up Bidder with respect to the Assets.

| Asset(s) | Winning Bidder | Back-Up Bidder | Proposed Bid Protections | Key Terms of Proposed Sale |
|---|---|---|---|---|
| | | | | |

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 10990 Roe Avenue, Overland Park, Kansas 66211.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Motion, as applicable.

The Sale Hearing to consider approval of the Sale of the Assets to the Winning Bidder(s) at the Auction will be held before the Honorable [●], at the Court, [●], on **[●], 2023, at [●] [a/p].m. (prevailing Eastern Time)**.

At the Sale Hearing, the Debtors will seek the Court's approval of the Winning Bid(s) and Back-Up Bid(s) (if any).  Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale, and there will be no further bidding at the Sale Hearing.  If a Winning Bidder cannot or refuses to consummate the applicable Sale following entry of a Sale Order because of the breach or failure on the part of the Winning Bidder, the Back-Up Bidder (if any) will be deemed the new Winning Bidder and the Debtors shall be authorized, but not required, to close with such Back-Up Bidder on the Back-Up Bid without further order of the Court.

This notice is subject to the terms and conditions of the Motion and the Order, with such Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.  Parties interested in receiving more information regarding the sale or other disposition of the Assets may make a written request to Epiq Corporate Restructuring, LLC ("Epiq") (the notice and claims agent retained in these chapter 11 cases) by calling (866)-641-1076.

Copies of the Motion, the Order, this notice, and any other related documents are available: (a) upon request to Epiq by calling (866)-641-1076; (b) by visiting the Debtors' restructuring website at https://dm.epiq11.com/YellowCorporation; or (c) for a fee via PACER by visiting https://pacer.uscourts.gov.

**EXHIBIT 4**

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE OF POTENTIAL ASSUMPTION OR
ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS OR LEASES**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [●], 2023, United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (C) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (VI) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] by which the Court approved procedures for the assumption or assumption and assignment of executory contracts and unexpired leases and granted related relief, as set forth in the Order.

Pursuant to the Order and by this notice (this "Cure Notice"), the Debtors hereby notify you that they have determined, in the exercise of their reasonable business judgment, that each executory contract or unexpired lease set forth on **Schedule 1** attached hereto (the "Potential Assumption List") may be assumed (and, if applicable, assigned) effective as of the date (the "Assumption Date") set forth in **Schedule 1** or such other date as the Debtors and the counterparty or counterparties to such executory contracts or unexpired leases may agree.

The Debtors believe that the party to which each applicable executory contract or unexpired lease may be assigned has the financial wherewithal to meet all future obligations under such contract or lease and the Debtors will, at the request of the applicable counterparty, use commercially reasonable efforts to provide evidence thereof to such applicable counterparty (and their counsel, if known) thereby demonstrating that the assignee of the contract or lease has the ability to comply with the requirements of adequate assurance of future performance.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 10990 Roe Avenue, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Motion, as applicable.

Parties objecting to the proposed assumption and assignment (including a Winning Bidder's proposed form of adequate assurance of future performance) must file and serve a written objection (each, a "Cure Objection") so that such objection is filed with the Court and **actually received by the following parties no later than October 23, 2023, at 5:00 p.m. (prevailing Eastern Time)** with respect to the Auction for the Bids (the "Cure Objection Deadline"): (a) proposed counsel to the Debtors (i) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, 60654, Attn.: Patrick J. Nash Jr., P.C. (patrick.nash@kirkland.com), David Seligman P.C. (david.seligman@kirkland.com) Steve Toth (steve.toth@kirkland.com); and Whitney Fogelberg (whitney.fogelberg@kirkland.com) and (ii) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith (allyson.smith@kirkland.com); (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, PO Box 8705, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns (tcairns@pszjlaw.com), Peter J. Keane (pkeane@pszjlaw.com), and Edward Corma (ecorma@pszjlaw.com); (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Jane Leamy (jane.m.leamy@usdoj.gov); (d) proposed counsel to the DIP Lenders, Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn.: Dennis F. Dunne (DDunne@milbank.com) and Matthew L. Brod (MBrod@milbank.com).

Absent a Cure Objection being timely filed, the assumption of each executory contract or unexpired lease may become effective on the Assumption Date set forth in **Schedule 1**, or such other date as the Debtors and the counterparty or counterparties to such executory contract or unexpired lease may agree.

If an objection is timely filed and not withdrawn or resolved, such objection will be heard at the Sale Hearing or such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court. If such objection is overruled or withdrawn, the applicable executory contract or unexpired lease shall be assumed as of the Assumption Date set forth in **Schedule 1** or such other date as the Debtors and the counterparty or counterparties to such executory contract unexpired lease may agree.

**<u>Schedule I</u>**

**Potential Assumption List**