**IN THE UNITED STATES BANKRUPTCY DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>     Debtors. | Chapter 11<br>Bankr. Case No. 23-11069(CTG)<br><br>(Joint Administration Requested) |

| | |
|---|---|
| ROGER KEEF, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>YELLOW CORPORATION, YRC INC.<br>(d/b/a YRC FREIGHT)<br><br>     Defendant. | Adv. Pro. No. |

**CLASS ACTION ADVERSARY PROCEEDING COMPLAINT**

Plaintiff Roger Keef ("Plaintiff")[2] brings this Class Action Complaint individually and on behalf of himself and a putative class of similarly situated former employees of Yellow Corporation. Plaintiff alleges the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Sauder Schelkopf LLC has been contacted by over 100 former employees of the Defendant.

## NATURE OF THE ACTION

1.      This case arises out of Defendant Yellow Corporation's ("Defendant" or "Yellow Corp.") failure to provide its works with the 60-day advance notice required under the federal Worker Adjustment and Retraining Notification Act (the "WARN Act"), codified at 29 U.S.C. § 2101 *et seq.*

2.      Specifically, starting on or about July 28, 2023, Defendant halted its operations and terminated the employment of approximately 30,000 employees. It has been alleged that prior to ceasing operations and abruptly terminating its employees, Defendant had failed to contribute to its pension and health insurance plans.

3.      Through this action, Plaintiff and other similarly situated employees of Defendant seek recovery of damages in the amount of sixty (60) days' pay and benefits under the WARN Act, as well as civil penalties as set forth below.

## JURISDICTION AND VENUE

4.      The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case is being brought pursuant to the WARN Act, 29 U.S.C. § 2101, *et seq.* and the Amended Standing Order of Reference of the United States District Court for the District of Delaware Dated February 29, 2012.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O). Pursuant to Fed. R. Bankr. P. 7012(b) and Del. Bankr. L.R. 7012-1, Plaintiffs do consent to entry of final orders or judgment by the bankruptcy court.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1409 and 29 U.S.C. § 2104(a)(5) because Defendant is incorporated under the laws of the state of Delaware.

## THE PARTIES

### *Plaintiff*

7.      Plaintiff Roger Keef is a resident of Illinois and was employed by Defendant as a Dock Hand / Spotter from February 1995 until July 30, 2023. Plaintiff worked at Defendant's facility located at 2000 Lincoln Highway, Chicago Heights, Illinois (the "Chicago Heights Facility").

8.      On July 30, 2023, Plaintiff was notified that he was terminated without cause effective immediately. At the time of his termination, Plaintiff was paid an hourly wage of $26.88 per hour. Plaintiff worked over 40 hours per week and was paid overtime wages for all hours worked in excess of 40 hours per week. Along with his wages, Plaintiff received health insurance, a 401(k) plan, short-term disability insurance, long-term disability insurance, life insurance, accidental death and dismemberment insurance, vacation pay, and monthly bonuses (combined, the "Benefits").

9.      On July 30, 2023, Plaintiff became aware through social media it was his last day and that he should not report to work thereafter.

10.      At no time prior to July 30, 2023, did Plaintiff receive written notice that his employment would be terminated.

11.      Along with Plaintiff, approximately 400 other employees of Defendant who worked at, reported to, or received assignments from the Chicago Heights Facility were terminated on or about July 30, 2023 without 60 days' advance written notice.

### *Defendant*

12.      Defendant operated a less than truckload business ("LTL") with operations throughout the United States in which carriers ship goods from multiple shippers in single trailers.

Defendant advertised that it is the "original less-than-truckload carrier" and that it "created this industry."[3] A less-than-truckload shipping refers to a shipping service for smaller loads or freight quantities. Conversely, full truckload generally refers to a shipment that fills up a truck on its own.

13.     Yellow Corporation is a Delaware corporation with its corporate headquarters located in Nashville, Tennessee.

14.     Until July 28, 2023, Defendant operated approximately 80 freight terminals and 200 other locations throughout the United States.

15.     On July 28, 2023, Defendant carried out a termination of operations and/or mass layoffs and closures at its facilities nationwide. The abrupt closure resulted in the loss of employment for at least 33% of its workforce and at least 50 full-time employees, not including part-time employees at most facilities.

## FACTUAL BACKGROUND

16.     Starting on or about July 28, 2023, news broke that Yellow Corp. was shutting down its operations and laying off all of its approximately 30,000 employees.[4]

17.     The Teamsters Union, which is reported to represent approximately 22,000 of the 30,000 laid off employees, released a statement where it called the news "unfortunate but not surprising. Yellow has historically proven that it could not manage itself despite billions of dollars in worker concessions and hundreds of millions in bailout funding from the federal government. This is a sad day for workers and the American freight industry."[5]

18.     In 2020, Yellow applied for and received a $700 million loan through the

---

[3] https://www.myyellow.com/us/en/about-us (last visited Aug. 6, 2023).
[4] https://qz.com/yellow-shutting-down-filing-bankruptcy-teamsters-union-1850691143 (last visited Aug. 6, 2023).
[5] *Id.*

COVID-19 relief effort. In exchange for the loan, the Treasury department took a 30% stake in Yellow Corp. Recently, the Congressional Oversight Committee questioned whether Yellow Corp. should have received a bailout from taxpayers.[6]

19.    At the time it received its loan, Yellow Corp. was also facing charges of defrauding the government through overbilling on shipments of items for the US military. The dispute eventually settled and Yellow Corp. paid a $6.85 million fine.

20.    On August 6, 2023, Defendant filed a voluntary petition for relief under Chapter 11 of Title 11 the United States Bankruptcy Code in this Court.

### CLASS ACTION ALLEGATIONS

21.    Plaintiff sues under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure made applicable by Fed. R. Bankr. P. Rule 7023 and the WARN Act under 29 U.S.C. § 2104(a)(5), individually and on behalf of the following Class:

> All persons employed at by Defendant whose employment was involuntarily terminated starting on or about July 28, 2023 without receiving sixty (60) days' written notice before the date of termination of employment.

22.    Excluded from the above Class is: (1) any entity in which Defendant have a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class.

23.    Numerosity (Federal Rule of Civil Procedure 23(a)(2)) – The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of the members of the Class is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes that the Class is equal to nearly

---

[6] https://www.transportdive.com/news/treasury-department-loan-yellow-corp-congressional-report/654153/ (last visited Aug. 6, 2023).

30,000 members.

24.    Upon information and belief, Defendant has databases, and/or other documentation identifying those employees whose employment was terminated on or about July 28, 2023 as part of the mass layoff. Further, the Class definition identifies unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify him or herself as having a right to recover.  Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

25.    Commonality (Federal Rule of Civil Procedure 23(a)(2)) – This action involves common questions of law and fact.  These common questions of law and fact take precedence over those questions that may only affect individual Class members.  The questions of law and fact common to both Plaintiff and the Class members include, but are not limited to, the following: (a) whether Defendant was an employer under the WARN Act; whether Plaintiff and the Class were employees; whether Defendant's employment locations were covered facilities; whether Defendant gave at least sixty days advance written notice to Plaintiff and the Class; and whether Defendant failed to provide 60 days of wages and other employee benefits following their respective terminations.

26.    Typicality (Federal Rule of Civil Procedure 23(a)(3)) – Plaintiff's claims are typical of all of the members of the Class.  The evidence and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members, as Plaintiff was an employee of Defendant and Plaintiff's employment was terminated without proper notice on or about July 28, 2023.

27.    Adequacy (Federal Rule of Civil Procedure 23(a)(4)) – Plaintiff will fairly and

adequately protect the interests of the Class members.  Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection.  There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Plaintiff and his counsel intend to prosecute this action vigorously.

28.    Predominance and Superiority (Federal Rule of Civil Procedure 23(b)(3)) – The common questions of law or fact identified herein and to be identified through discovery take precedence over questions that may affect only individual Class members.  Further, the class action is superior to all other available methods for the fair and efficient adjudication of matter. Because the injuries suffered by the individual Class members may be relatively small, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class members to individually seek redress for Defendant's wrongful conduct.  Even if any individual person or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court.  In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class

action, Plaintiff and the Class members will continue to suffer losses, thereby, allowing these violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

29.    Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, Plaintiff would contemplate the use of additional media and/or mailings.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF THE FEDERAL WARN ACT

30.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

31.    At all times material herein, Plaintiff, and similarly situated persons, have been entitled to the rights, protections, and benefits provided under the federal WARN Act, 29 U.S.C. § 2101 *et. seq*.  Plaintiff and members of the Class are "affected employees" of Defendant within the meaning of 29 U.S.C. §2101(a)(5).

32.    Defendant was an "employer" as that term is defined in 29·U.S.C. § 210l(a)(l) and 20 C.F.R. § 639.3(a).  Defendant employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

33.    Starting on or about July 28, 2023, Defendant engaged in a "mass layoff" at the Facility, as that term is defined in 29 U.S.C. § 2101(a)(3).

34.    Plaintiff is informed and believes, and thereon alleges, that the mass layoff resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(3), for at least 50 employees constituting at least of 33% of the employees at the Facility.

35.     Plaintiff and each of the other members of the Class had their employment terminated without cause.

36.     Defendant failed to give Plaintiff and other members of the Class written notice that complied with the requirements of the federal WARN Act.

37.     Plaintiff and each of the other Class members are "aggrieved employees" of Defendant, as that term is defined in 29 U.S.C. §2104(a)(7).

38.     Defendant failed to pay Plaintiff and each of the Class members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation pay for 60 days following notice of their terminations and failed to pay accrued retirement benefits, for 60 days following notice of their respective terminations.  Plaintiff and the Class have been injured as a result of these federal WARN Act violations.

39.     As a result of Defendant's violation of the federal WARN Act, Plaintiff and the Class are entitled to back pay for each day of Defendant's violation at a rate of compensation not less than the higher of the average regular rate received by each employee during the last 3 years of the employee's employment, or the final regular rate received by such employee, up to a maximum of 60 days.

40.     Plaintiff and the Class are also entitled to all benefits under any employee benefit plan described in 29 U.S.C. § 1002(3), including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred, up to a maximum of 60 days.

41.     Defendant is also liable to Plaintiff for reasonable attorneys' fees under 29 U.S.C. § 2104(a)(6).

## SECOND CLAIM FOR RELIEF
## VIOLATIONS OF THE ILLINOIS WARN ACT

42.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

43.     At all times material herein, Plaintiff, and similarly situated persons, have been entitled to the rights, protections, and benefits provided under Illinois' WARN Act, codified at 820 ILCS 65 *et. seq.*

44.     Plaintiff and members of the Class are "affected employees" of Defendant within the meaning of 820 ILCS 65/5(a).

45.     Defendant was an "employer" as that term is defined in 820 ILCS 65/5(c) and continue to operate as a business.  Defendant employed 75 or more employees, excluding part-time employees, who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime.

46.     Starting on or about July 28, 2023, Defendant engaged in a "mass layoff" as that term is defined in 820 ILCS 65/5(d).

47.     Plaintiff is informed and believes, and thereon alleges, that the mass layoff resulted in "employment loss," as that term is defined by 820 ILCS 65/5(b).

48.     Plaintiff and each of the other members of the Class had their employment terminated without cause.

49.     Defendant failed to give Plaintiff and other members of the Class written notice that complied with the requirements of Illinois' WARN Act.

50.     Defendant failed to pay Plaintiff and each of the Class members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation pay for 60 days following notice of their terminations and failed to pay accrued retirement benefits, for 60 days following notice of their respective terminations.  Plaintiff and the Class have been injured as a

result of these WARN Act violations.

51.     As a result of Defendant's violation of Illinois' WARN Act, pursuant to 820 ILCS 65/30, Plaintiff and the Class are entitled to back pay for each day of Defendant's violation at a rate of compensation not less than the higher of the average regular rate received by each employee during the last 3 years of the employee's employment, or the final regular rate received by such employee, up to a maximum of 60 days.

52.     Plaintiff and the Class are also entitled to the value of the cost of any benefits to which the employee would have been entitled had his or her employment not been lost, including the cost of any medical expenses incurred by the employee that would have been covered under an employee benefit plan, up to a maximum of 60 days.

53.     Pursuant to 820 ILCS 65/40, Defendant is also liable for a civil penalty up $500 for each day of its violation of Illinois' WARN Act

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, request the following relief:

1.     For an order certifying this action as a class action under Federal Rule of Civil Procedure 23;

2.     For an order determining that Defendant has violated the provisions of the federal WARN Act and Illinois' Warn Act;

3.     For an award of damages for unpaid compensation and owed Plaintiff and Class Members pursuant to the federal WARN Act and Illinois' WARN Act;

4.     For an award of civil penalties pursuant to 820 ILCS 65/40;

5.     Appointment of Plaintiff as the Class Representative

6.      Appointment of the undersigned counsel as Class Counsel.

7.      An allowed administrative priority claim against Defendants under 11 U.S.C. § 503 for the reasonable attorney's fees and the costs disbursements that Plaintiff incurs in the prosecution of this action pursuant to 29 U.S.C. § 2104(a)(6) and/or other applicable law; and

8.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.


Dated: August 7, 2023                        Respectfully submitted,

                                             THE BIFFERATO FIRM PA


                                             */s/ Ian Connor Bifferato*
                                             Ian Connor Bifferato (#3273)
                                             1007 North Orange St., 4th Floor
                                             Wilmington, Delaware 19801
                                             Telephone: (302) 225-7600
                                             Facsimile: (302) 298-0688
                                             Email: cbifferato@tbf.legal

                                             and

                                             Joseph G. Sauder
                                             Joseph B. Kenney
                                             **SAUDER SCHELKOPF LLC**
                                             1109 Lancaster Avenue
                                             Berwyn, PA 19312
                                             Tel: (610) 200-0581
                                             Facsimile: 610-421-1326
                                             jgs@sstriallawyers.com
                                             jbk@sstriallawyers.com

                                             *Attorneys for Plaintiff*