## EXHIBIT A

**Motion**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | Case No. 25-11454 (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF DEBTORS
FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE
DEBTORS TO (A) CONTINUE TO OPERATE
THE CASH MANAGEMENT SYSTEM, (B) HONOR
CERTAIN PREPETITION OBLIGATIONS RELATED
THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS,
(D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS,
(II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY TRANSACTIONS, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state as follows in support of this motion:[2]

### Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "<u>Interim Order</u>" and the "<u>Final Order</u>," and, collectively, the "<u>Orders</u>"), (a) authorizing the Debtors to (i) continue to

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances supporting the motion, is set forth in the *Declaration of Chris Cramer, Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer of Claire's Holdings LLC and Certain of its Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* filed contemporaneously herewith (the "<u>First Day Declaration</u>"). Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

operate their Cash Management System (as defined below) and maintain their existing Debtor Bank Accounts (as defined herein), (ii) honor certain prepetition and postpetition obligations related thereto, (iii) maintain existing Business Forms (as defined below) in the ordinary course of business, and (iv) continue to perform Intercompany Transactions (as defined below); (b) granting administrative expense status to the Intercompany Transactions; (c) waiving certain requirements under section 345 of the Bankruptcy Code and U.S. Trustee Guidelines (each as defined below); and (d) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 345, 363, 364, 503, 558, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 2015-2, and 9013-1.

**Background**

5.      On August 6, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**The Cash Management System**

**I.      Overview.**

6.      In the ordinary course of business, the Debtors (and, together with their non-Debtor affiliates, the "Company") maintain an integrated cash management system (the "Cash Management System") to facilitate the efficient operation of their business, a schematic of which is attached as Exhibit 1 to the Orders.  The Debtors use the Cash Management System in the ordinary course of their business to collect, transfer, and disburse funds generated from their operations and to facilitate cash monitoring, forecasting, and reporting.  The Cash Management System is comparable to the centralized cash management systems commonly used by businesses similar in size and scale to the Debtors.

7.      The Debtors' treasury and accounting departments maintain daily oversight of the Cash Management System and implement controls for entering, processing, and releasing funds in the ordinary course of the Debtors' business, including in connection with the Intercompany Transactions.  The Debtors' treasury department regularly performs reconciliations of the Bank Accounts to the Debtors' books and records to ensure that all transfers are accounted for properly.

8.      The Cash Management System facilitates the timely and efficient collection, management, and disbursement of funds used in the Debtors' business.  All of the cash held in the Master Concentration Account, Corporate Checking Account, Electronic Payment Account, Preauthorized ACH Payment Account, Check Disbursement Account, and Store Accounts (each as defined below), is subject to security interests in favor of JPMorgan Chase Bank, N.A. ("JPMorgan"), in its capacity as the administrative agent under the Prepetition ABL Facility, subject to the priority of payments among the secured parties set forth in the ABL Credit Agreement.  The Debtors estimate that cash receipt collections will average approximately $62 million per month during these chapter 11 cases.

9.      Because of the nature and operational scale of the Debtors' business, any disruption to the Cash Management System could have an immediate and significant adverse effect on the Debtors' operations and ability to effectuate their chapter 11 objectives to the detriment of all stakeholders.  Accordingly, to minimize disruption and maximize the value of the Debtors' estates, the Debtors request authority, but not direction, to continue operating their existing Cash Management System and honor certain prepetition obligations related thereto in the ordinary course of business and consistent with prepetition practices during the pendency of these chapter 11 cases.

## II.      The Bank Accounts.

10.      As of the Petition Date, the Cash Management System supporting the Company's North American operations consists of 193 bank accounts, 180 of which are owned by the Debtors (the "Debtor Bank Accounts") and 13 of which are owned by non-Debtor entities (the "Non-Debtor Bank Accounts," and together with the Debtor Bank Accounts, the "Bank Accounts" maintained at multiple banks, collectively the "Cash Management Banks").

11.     As of the Petition Date, the Bank Accounts are identified on <u>Exhibit 2</u> attached to

the Orders and are described in the following table:

| Account | Account Description |
|---|---|
| **Master Concentration Account**<br><br><u>Citibank</u><br>x5866 | The Debtors maintain a Master Concentration Account in the United States with Citibank, N.A., which is the Debtors' main operating account into which funds are (i) wired, swept, or otherwise transferred from (a) the Debtors' Store Deposit Accounts, (b) concession partners, (c) credit card payments made at stores and online, and (d) the Company's Non-Debtor Bank Accounts, and (ii) deposited by check on account of miscellaneous non-trade receipts.<br><br>Funds from the Master Concentration Account are, in turn, transferred to: (a) the Debtors' Disbursement Accounts, as necessary to fund disbursements from such accounts, including disbursements necessary to fund the Debtors' (i) Standard Electronic Payment Account, (ii) Preauthorized ACH Payment Account, (iii) Check Disbursement Account, and (iv) Standard Payroll Account (each as defined below) and (b) Commercial Checking Account.<br><br>The Master Concentration Account is subject to a Deposit Account Control Agreement in favor of the ABL Agent.<br><br>As of the Petition Date, the Master Concentration Account had an aggregate balance of approximately $5,000,000. |
| **Store Deposit Accounts**<br><br>The Store Accounts listed in <u>Exhibit 2</u> to the Orders | The Company operates approximately 1,350 stores in the United States and Puerto Rico.  Any cash received by these stores is deposited nightly into one of 167 bank accounts (the "<u>Store Accounts</u>").  Cash deposited into Store Accounts is manually swept at least three times per week into the Master Concentration Account.  The Store Accounts are maintained at a number of different banks.  The Store Accounts are located throughout the country at local Bank branches and receive deposits from the Company's stores proximate to each applicable Bank branch.  In areas with a high density of stores, multiple stores may deposit cash received into the same Store Account.  Where multiple stores deposit into the same Store Account, each store has a unique deposit identifier that enables the Debtors and the relevant Bank to track the amount deposited by each store into the respective Store Account.  In geographic areas more sparsely served by the Company's stores, each store has its own Store Account.  On the Petition Date, the Store Accounts had a collective balance of approximately $165,000. |

| Account | Account Description |
|---|---|
| **Disbursement Accounts**<br>Citibank<br>x6055<br>x5882<br>x5874 | The Debtors maintain four accounts (the "Disbursement Accounts") at Citibank, N.A., which are funded with cash transferred daily from the Master Concentration Account in an amount sufficient to fund the Debtors' obligations in the ordinary course. As of July 2025, Citibank has imposed a daily ACH limit of $1.5 million.<br><br>Disbursement Account ending in x5874 is the account from which all ACH and wire transfers are made to various vendors and is used to wire intercompany funds non-debtors the "Electronic Payment Account").<br><br>Disbursement Account ending x5882 is the account from which various taxes, fees, and other obligations (including credit card fees) are automatically withdrawn (the "Preauthorized ACH Payment Account") and in which all auto-debits are processed.<br><br>Disbursement Account ending in x6055 is the account from which vendor checks are issued (the "Check Disbursement Account"). |
| **Commercial Checking Account**<br><br>Citizens Bank<br>x0708 | The Debtors hold an interest-bearing commercial checking account at Citizens Bank. To the extent there is excess working capital or a need to fund operations in the ordinary course of business, funds may be moved between the Commercial Checking Account and the Master Concentration Account. As of the Petition Date, the Debtors have approximately $19,000,000 in the Commercial Checking Account. |
| **Adequate Assurance Account**<br><br>JPMorgan Chase<br>x3961 | Debtor Claire's (Gibraltar) Holdings Limited maintains a Bank Account with JPMorgan Chase, N.A. as adequate assurance for utility providers as further described in the Utilities Motion[3] (the "Adequate Assurance Account"). The Adequate Assurance Account will hold approximately $470,000. |
| **Employee Payroll and Collateral Accounts**<br><br>Citibank<br>x5903<br><br>U.S. Bank<br>x0382<br><br>Wisely<br>x9573 | Debtor Claire's Stores, Inc. maintains an account ending x5903 at Citibank from which the Debtors process standard payroll obligations and related obligations (the "Payroll Account"). The Payroll Account is manually funded for each payroll cycle with cash in the amount needed to cover each forthcoming payroll run. Excess funds, if any, would be swept back into the Master Concentration Account.<br><br>Debtor Claire's Stores, Inc. maintains an account at U.S. Bank, N.A. that contains approximately $546,000 as collateral for the Corporate Card Program. |

---

[3] Contemporaneously herewith, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* (the "Utilities Motion"). The Adequate Assurance Account will be funded in accordance with the procedures set forth in the Utilities Motion.

| Account | Account Description |
|---|---|
| | The Debtors hold an account through Wisely, an affiliate of payroll provider ADP. The pre-paid card account, issued by Fifth Third Bank, N.A., holds *de minimis* funds for the purpose of honoring obligations relating to ADP's Wisely program which provides participating employees an alternative method to receive their pay. |
| **International Operations Account**<br><br>Citibank<br>x6282 | Debtor Claire's Intellectual LLC maintains one bank account with Citibank (x6282). The account (a) collects royalty payments and license fees from franchise partners and (b) acts as the intermediary between the Debtors' North American cash management system and their non-Debtor European affiliates. Cash receipts are swept to the Master Concentration Account on a regular basis. |
| **Foreign Bank Account**<br><br>NatWest Offshore Gibraltar Ltd<br>x1611 | Debtor Claire's (Gibraltar) Holdings Limited maintains one Bank Account with National Westminster Offshore Gibraltar Ltd ("NatWest Gibraltar"). This account holds *de minimis* funds in British Pounds Sterling, U.S. Dollars, Euros, and has the capability of holding funds in Swiss Francs. In the aggregate, the Foreign Bank Account holds the equivalent of $176. |
| **Other Accounts**<br><br>Citibank<br><br>x5938<br><br>x5946<br><br><br>PNC Bank<br><br>x9868 | Debtor Claire's Holdings LLC maintains one bank account (x5946) for payments of regulatory fees.<br><br>Debtor CLSIP, LLC maintains one bank account (x5938) which is dormant and contains zero funds as of the petition date.<br><br>Debtor Claire's Boutiques, Inc maintains one account (x9868) which is dormant and contains zero funds as of the petition date. |
| **Non-Debtor Bank Accounts**<br><br>The Non-Debtor Bank Accounts listed in Exhibit 2 to the Orders | The Cash Management System integrates certain Bank Accounts held by certain non-Debtor affiliates, as more comprehensively set forth on Exhibit 2.<br><br>The accounting and treasury team oversees, tracks, and authorizes any Intercompany Transactions to and from the Non-Debtor Bank Accounts to and from the Debtor Bank Accounts. The Non-Debtor Bank Accounts, among other uses, facilitate the Intercompany Transactions as described below.<br><br>Non-Debtor Claire's Stores Canada Corp. maintains a Currency Account for the purposes of remitting funds between Canada and the United States. In the ordinary course of business, the Debtors' Canadian operations generate proceeds and reimbursements that are remitted to the Debtors' accounts. To facilitate these transactions, the Debtors convert Canadian Dollars into United States Dollars, which are held in the Currency Account, subject to monthly sweeps to the Master |

| Account | Account Description |
|---|---|
| | Concentration Account held at Citibank in order to redomicile such cash proceeds. |
| | Non-Debtor Claire's European Services Ltd maintains an account at HSBC (x0395) which is part of the larger Claire's European Cash Pool.  The Debtors occasionally transfer funds as a means of global support to this account. |
| | Non-Debtor RSI International Ltd maintains an account at HSBC (x6274).  The Debtors regularly transfer funds to this account to settle payments for merchandise purchases and operating support of the purchasing agent RSI International Limited (as described more comprehensively herein). |

12.     As of the Petition Date, there is an estimated aggregate amount of approximately $24.6 million in cash in the Bank Accounts, of which the Debtor Bank Accounts hold approximately $24.1 million in unrestricted cash.

## III.    Bank Fees and Payment Processing Fees.

### A.    Payment Processing Fees.

13.     In the ordinary course of business, the Debtors pay approximately $220,000 per month in the aggregate to the Cash Management Banks on account of fees incurred in connection with the administration of the Cash Management System (the "Bank Fees").  The Debtors estimate that they owe approximately $160,000 in Bank Fees as of the Petition Date.  Absent payment of the Bank Fees, the Cash Management Banks might assert setoff rights against the funds in the Debtors' Bank Accounts, freeze the Debtors' Bank Accounts, and/or refuse to provide banking services to the Debtors.  To ensure the uninterrupted operation of the Cash Management System, the Debtors request authority, but not direction, to continue paying Bank Fees, including any Bank Fees that are owed as of the Petition Date, in the ordinary course of business on a postpetition basis and consistent with past practice.

**B.      Payment Processing Fees.**

14.     The Debtors accept payment from customers at in-store and online points of sale via (i) Visa, MasterCard, American Express, Discover credit cards, debit cards, Apple Pay, Google Pay, and Klarna and (ii) PayPal at online points of sale only (collectively, the "Non-Cash Payments") in addition to cash receipts.  To process Non-Cash Payments, the Debtors are party to certain agreements (the "Payment Processing Agreements") with payment processors, including WorldPay, LLC and PayPal (the "Payment Processing Companies" and each, a "Payment Processing Company").  Pursuant to the Payment Processing Agreements, the Debtors generally receive gross customer sales in the Master Concentration Account, which is then debited for any applicable Chargebacks, returns, and processing fees.  The processing fees charged for each company vary, but are in the range of 0.5% to 2.0% (the "Processing Fees").  As of the Petition Date, the Debtors do not believe that they have amounts due and owing attributable to Processing Fees, but in an abundance of caution seek the authority, but not direction, to honor such Processing Fees that may have arisen prior to the Petition Date.

15.     The majority of the Debtors' sales are made using Non-Cash Payments.  An inability to accept Non-Cash Payments likely would have a severe negative effect on the Debtors' business and ability to generate revenue.  Accordingly, by this motion, the Debtors seek authority, but not direction, to pay any prepetition Processing Fees incurred in connection with processing any Non-Cash Payments and to continue paying the Processing Obligations related thereto whether arising prior to, on, or after the Petition Date in the ordinary course of business and consistent with past practice.

IV.    **P-Card Program.**

16.    As part of the Cash Management System, the Debtors maintain a corporate credit card program (the "Corporate Credit Card Program"),[4] pursuant to which certain employees are issued purchasing credit cards (the "P-Cards" and the P-Card component of the Corporate Credit Card Program, the "P-Card Program"), through U.S. Bank, National Association ("U.S. Bank"). The Debtors only provide P-Cards to employees if there is a justifiable business need, with approximately 20 employees currently holding these cards.  The P-Cards are secured by cash collateral deposited into the Bank Account at U.S. Bank ending in x0382.  The credit limit for each P-Card varies by employee.  No employee's limit exceeds $50,000 and the aggregate limit of all P-Cards is $230,000.

17.    The P-Cards are used by the Debtors' employees to pay for certain work-related expenses, including, but not limited to, office supplies, vendor payments, and small, non-recurring purchases made on behalf of the Debtors.  Historically, the Debtors spend approximately $90,000 in the aggregate per month on account of the P-Card Program.  The Debtors estimate that there is approximately $70,000 outstanding on account of the P-Cards as of the Petition Date.

18.    Employees' continued use of the P-Cards for work-related purposes is essential to the Debtors' postpetition operations.  Accordingly, the Debtors seek authority, but not direction, to issue P-Cards pursuant to the P-Card Program, subject to any terms and conditions thereof, and to pay prepetition or postpetition amounts, if any, owed with respect thereto, including any

---

[4]    By this motion, the Debtors seek authority to continue the P-Card component of the Corporate Credit Card Program, which is an obligation of the Debtors in the first instance.  The Debtors also seek authority to continue honoring reimbursement obligations related to Corporate Credit Cards issued under the Corporate Credit Card Program in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* (filed contemporaneously herewith).

administrative fees and charges owed in connection therewith, in each case, in the ordinary course of business consistent with past practice.

## V.      Intercompany Transactions.

19.      In the ordinary course of business, the Debtors regularly engage in routine transactions with each other as well as with their non-Debtor affiliates (collectively, the "Intercompany Transactions") resulting in intercompany receivables and payables (the "Intercompany Claims").  The Debtors account for and record all Intercompany Transactions and Intercompany Claims in their centralized accounting system, and any such transfers are monitored and reconciled on a monthly basis.

### A.      Procurement Transactions.

20.      Intercompany Transactions occur as part of the ordinary course operations of the Cash Management System and are essential for the procurement of goods across the Company's enterprise.  For instance, CBI Distributing Corp. ("CBI"), a Debtor, acts as a purchasing entity on behalf of other Debtors and, in the ordinary course of business, will purchase inventory from third party vendors, and subsequently sell that inventory to Debtor BMS Distributing Corp., and ultimately to Debtor and non-Debtor entities for sale in stores, with such transactions being recorded as Intercompany Claims on those entities' books and records.

21.      Additionally, and in the ordinary course of business, both the Debtors and certain of their non-Debtor affiliates utilize the services of RSI International Ltd. ("RSI"), a non-Debtor affiliate organized under the laws of Hong Kong, as a buying agent in connection with their global supply chain management practices.  Specifically, CBI, and certain non-debtor procurement entities, are party to an agency agreement with Claire's China Services.  Claire's China Services, in turn, outsources the sourcing services to RSI.  CBI, along with the Company's non-Debtor purchasers, places purchase orders directly with foreign vendors, generally in mainland China.

The foreign vendor will issue invoices to RSI, which then invoices the relevant Company entity for the aggregate funds attributable to such purchases.  On a weekly basis, the Debtor and non-Debtor purchasers pay outstanding invoices from RSI, which thereafter remits payment to the applicable vendors.  Weekly payments by the Debtors to RSI averaged approximately $1 million over the four-month prepetition period.[5]  In addition to payment for merchandise sourced by RSI, the Debtors remit approximately $400,000 per month to RSI to cover operating expenses such as payroll, rent, and other business expenses.  Although RSI is invoiced directly by vendors, RSI solely acts in its capacity as an agent of the relevant Company entity and the ultimate liability for goods procured by RSI on behalf of the Debtors are obligations of such Debtors.

22.    The Debtors' operations are highly dependent upon their continued ability to utilize RSI to procure inventory from mainland China and other foreign markets, as well as to utilize purchasing entities within the corporate structure to acquire merchandise and other goods on behalf of the Debtors.  Modifying this means of purchasing would require the Debtors to develop new means of dealing with their vendor base and to remit funds for goods purchased.  This would be particularly damaging where, as here, there is a high premium on maintaining the status quo with vendors whose support the Debtors will need during the pendency of these chapter 11 cases.  Due to the Debtors' existing procurement channels, it would be deleterious to the Debtors' ability to build inventory and in turn to sell products without the ability to honor reimbursement requests from RSI.

---

[5]    For the avoidance of doubt, by this motion, the Debtors seek the authority, but not direction, to continue their agency arrangement with RSI in order to manage purchases from foreign vendors.  The Debtors separately seek relief to honor prepetition amounts due to vendors, if any, pursuant to the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Certain (A) Critical Vendors, (B) Foreign Vendors, (C) 503(b)(9) Claimants, and (D) Lien Claimants, (II) Granting Administrative Expense Priority to Outstanding Orders, and (III) Granting Related Relief*, filed contemporaneously herewith.

B.      **Global Enterprise Support.**

23.     Intercompany Transactions also include the transfer of support payments by a Debtor to another Debtor or non-Debtor Affiliate in the ordinary course, with a corresponding adjustment to the applicable entities' books and records.  The Debtors engage in Intercompany Transactions within and between their North American and European businesses on an as-needed basis.  As noted herein, these Intercompany Transactions are booked as Intercompany Claims between affiliated entities and are undertaken for the purposes of ensuring that entities across the Company's enterprise can satisfy demands as they come due.  In the ordinary course of business, as entities subsequently generate surpluses, such Intercompany Claims are reduced or eliminated.

24.     For example, on an ad-hoc basis, non-debtor Claire's Stores Canada Corp. ("Claire's Stores Canada") transfers excess funds to the Debtors.  Inventory shipments from Debtor BMS Distributing Corp., as procurement entity for the North American business, sells procured merchandise to Claire's Stores Canada.  As a result, an Intercompany Claim from Claire's Stores Canada to BMS Distributing Corp. accrues in the ordinary course and is accounted for through intercompany accounting entries.  As Claire's Stores Canada generates excess cash flow, Claire's Stores Canada remits funds to the Debtors' Master Concentration Account, which is owned by Claire's Stores, Inc.  As a result, an Intercompany Claim from Claire's Stores, Inc. to Claire's Stores Canada accrues in the ordinary course and is accounted for through intercompany accounting entries.  Other than these inventory-related transactions, Claire's Stores Canada funds its own day-to-day operations, including payroll, rent, and local vendor expenses.  The Debtors do not anticipate the need to transfer funds to Claire's Stores Canada during these chapter 11 cases.  Out of an abundance of caution, however, the Debtors seek the authority, but not direction, to continue such Intercompany Transactions in the ordinary course of business and consistent with

past practice to the extent further inventory procurements are needed on behalf of Claire's Stores Canada.

25.    Additionally, on an as-needed basis, the Debtors provide funding to support the operations of their non-Debtor European affiliates. Specifically, the Debtors transfer funds from the Electronic Payment Account to an account held by Debtor Claire's Intellectual LLC. The funds are subsequently transferred to the HSBC European cash pool, where they become available for use by the applicable non-Debtor European affiliates. Accounts in the European cash pool are not Debtor accounts, but certain bank accounts are subject to deposit account control agreements in favor of JPMorgan, in its capacity as agent under the ABL facility.

26.    The Debtors' continued ability to engage in the Intercompany Transactions are essential to the operation of the Debtors' business. The Intercompany Transactions form a vital means of managing liquidity between entities that experience demands at different times. The Intercompany Transactions also allow for streamlined receipt of funds through a smaller number of accounts and minimize operational redundancies. The Debtors maintain, and will continue to maintain, records of these transfers of cash and bookkeeping entries on a postpetition basis, and can ascertain, trace, and account for the Intercompany Transactions on demand.

**C.    Netting.**

27.    In most instances, Intercompany Transactions between the Debtors and non-Debtor affiliates are "netted," rather than settled in cash. The Debtors continue to implement internal mechanisms that will permit them, with the assistance of their advisors, to accurately track the balance of all prepetition and postpetition Intercompany Transactions. Continued "netting" practices will allow the Debtors to accrue and settle Intercompany Claims without the delay and expense of settling such claims in cash. Accordingly, the Debtors seek authority, but not direction, to continue these "netting" practices in the ordinary course consistent with past practice.

D.    **According Administrative Expense Status to Intercompany Claims.**

28.    The Debtors' continued ability to engage in, perform under, and honor Intercompany Transactions and to accrue Intercompany Claims is essential to the Debtors' operations.  As a retailer, procurement of inventory is at the heart of the Debtors' business. Upending the Debtors' procurement function at the commencement of these chapter 11 cases would destroy value at a time when the Debtors' business needs stability.  To ensure that each Debtor, particularly the procurement entities such as CBI, will not be forced to fund the operations of another entity at the expense of such Debtor's creditors, the Debtors respectfully request pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, that all valid postpetition payments from a Debtor or a non-Debtor affiliate to or on behalf of a Debtor on account of a postpetition Intercompany Transaction be accorded administrative expense status.

VI.    **Compliance with the Bankruptcy Code and Guidelines.**

A.    **The Cash Management Banks' Compliance with the U.S. Trustee Guidelines and Section 345 of the Bankruptcy Code.**

29.    Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a). In order to comply with section 345 of the Bankruptcy Code, the *Region 3 Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines") for the United States Trustee for the District of Delaware (the "U.S. Trustee") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee (each, and "Authorized Depository").  Section 345(b) of the Bankruptcy Code requires a debtor's bank to post a bond unless a debtor's funds are "insured or guaranteed by the United States or by

15

a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." 11 U.S.C. § 345(b).

30.    The vast majority of the Debtors' cash, approximately 80%, is held in Authorized Depositories compliant with the U.S. Trustee Guidelines, including, but not limited to, Citizens Bank, JP Morgan Chase, and U.S. Bank.  The remaining Debtor Bank Accounts, representing approximately 20% of funds in Debtors' Cash Management System, are held in institutions that are not authorized depositories, but are otherwise insured depositories in compliance with section 345(b).  The core of the Debtor's cash management system is held in accounts at Citibank which, while not an authorized depository, is a well-capitalized, reputable institution.  The Disbursement Accounts at Citibank do not hold estate cash in excess of what is required to fund expenditures for the day and the Master Concentration Account maintains a minimum operating buffer of approximately $5 million.  The expense and burden of transferring funds from Citibank and changing the Cash Management System at the outset of these chapter 11 cases would be without creditor benefit.  Moreover, all of the Debtors' U.S. Bank Accounts are insured by the Federal Deposit Insurance Corporation or through another deposit insurance program.

31.    While the Foreign Bank Account at NatWest is not held in an Authorized Depository, it is held in a well-capitalized, reputable financial institution that is insured by the Gibraltar Deposit Guarantee Scheme, which provides coverage up to €100,000 per account.  The Foreign Bank Account enables the Debtors to honor certain tax and regulatory obligations as they arise.  The Foreign Bank Account holds the equivalent of $176 at current exchange rates.  As such, the cost, time, and effort of winding down the Foreign Bank Account would far exceed the estate exposure of maintaining the Foreign Bank Account.

32.     Cause exists to allow the Debtors to continue utilizing the existing Bank Accounts consistent with past practice.  If the Debtors open any new accounts during these cases, the Debtors will do so at institutions that are designated as Authorized Depositories by the U.S. Trustee Guidelines.

33.     The Cash Management System is complex and critical to the ongoing stability of the Debtors' business.  Because the Bank Accounts are held authorized depositories or are otherwise maintained at well-capitalized and highly stable institutions protected by FDIC or analogous depository protection regimes, the Debtors believe that their accounts comply with section 345(b) of the Bankruptcy Code.  Nevertheless, the Debtors will continue to work in good faith with the U.S. Trustee to address any concerns regarding the use of these accounts on a postpetition basis.  To the extent the Court does not determine that the requirements of section 345(b) of the Bankruptcy Code are satisfied, the Debtors request a sixty-day waiver of the requirements of section 345(b) of the Bankruptcy Code, without prejudice to the Debtors' right to seek and additional extension after the entry of the Interim Order, to either (a) bring the applicable Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or (b) seek appropriate relief from the Court.  Granting such relief will allow the Debtors to continue utilizing the existing Bank Accounts and will inure to the benefit of all stakeholders.

**B.      Compliance with U.S. Trustee Guidelines as to Business Forms and Books and Records.**

34.     The Debtors use a variety of business forms including letterhead, purchase orders, invoices, and checks (the "Business Forms") in the ordinary course of business, as part of the Cash Management System.  The Debtors also maintain books and records to document their financial results and a wide array of operating information (collectively, the "Books and Records").  To avoid a material disruption to their business operations and to minimize administrative expense to

their estates, the Debtors request authorization, but not direction, to continue using all the Business

Forms and Books and Records, without reference to the Debtors' status as debtors in possession,

in accordance with Local Rule 2015-1.

### Basis for Relief

I.    **The Court Should Authorize the Debtors' Continued Use of the Cash Management System as it Is Essential to the Debtors' Ongoing Operations and Restructuring Efforts.**

35.    The U.S. Trustee Guidelines require debtors in possession to, among other things:

(a) establish one debtor-in-possession bank account for all estate monies required for the payment

of taxes, including payroll taxes; (b) close all existing bank accounts and open new

debtor-in-possession accounts; (c) maintain a separate debtor-in-possession account for cash

collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the

bankruptcy case number and type of account on such checks.  These requirements are intended to

provide a clear line of demarcation between prepetition and postpetition transactions, payments,

and operations and help protect against the inadvertent payment of prepetition claims by

preventing banks from honoring checks drawn before the Petition Date.

36.    Considering the complexity of the Debtors' business and financial affairs and their

need to collect, transfer, and disburse funds throughout the Cash Management System (which ties

into the Debtors' existing corporate accounting and cash forecasting reporting), enforcing these

provisions of the U.S. Trustee Guidelines during these chapter 11 cases would disrupt the Debtors'

ability to efficiently administer these chapter 11 cases.  Accordingly, the Debtors respectfully

request that the Court allow them to operate each of the Bank Accounts listed on Exhibit 2 annexed

to the Orders, as they were maintained in the ordinary course of business prior to the Petition Date.

37.    The continuation of the Cash Management System should be permitted pursuant to

section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use

property of the estate in the ordinary course of business without notice or a hearing." Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter[]." *In re Baldwin United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). Additionally, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit emphasized that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (noting that maintaining an existing cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

38.     Here, requiring the Debtors to adopt a new, segmented cash management system during these chapter 11 cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' operations. Importantly, the Cash Management System provides the Debtors with the ability to, among other things, quickly assess the location and amount of funds, which, in turn, allows management to track and control such funds, ensure cash availability throughout the Debtors' corporate structure, and reduce administrative costs through a centralized method of coordinating the collection and movement of funds. In light of the size and complexity of the Debtors' operations, any disruption of the Cash Management System could have a severe adverse effect on the Debtors' ability to effectively monetize their assets, the cost of which would ultimately be borne by the Debtors' creditors and other stakeholders. By contrast, maintaining the current Cash Management System will facilitate the Debtors' smooth transition into chapter 11 by,

among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.  Finally, maintaining the current Cash Management System will allow the Debtors' treasury and accounting employees to focus on their daily responsibilities as opposed to the non-accretive task of reconstructing the Cash Management System.

39.     The Debtors respectfully submit that parties in interest will not be harmed by their maintenance of the Cash Management System, including maintenance of the Bank Accounts and the Intercompany Transactions, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date.  Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' accounting and treasury departments.   In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and stakeholders.

40.     Accordingly, the Debtors respectfully request the Court authorize, but not direct, the continued use of the existing Cash Management System to facilitate the Debtors' transition into chapter 11.  Specifically, the Debtors request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Cash Management Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.  Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Cash Management Banks to have drawn, issued, or

otherwise presented before the Petition Date may be honored by the Cash Management Banks only to the extent authorized by order of the Court.  If the Debtors' ability to conduct transactions by these methods is impaired, the Debtors may be unable to perform under certain contracts, and payments to vendors could be delayed, resulting in unnecessary disruption to their business operations and additional costs to their estates.

41.    The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent such guidelines require the Debtors to make all disbursements by check. In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  As discussed above, in the ordinary course of business, the Debtors conduct transactions through wires, ACH transfers, direct deposits, and other similar methods.  If the Debtors' ability to conduct transactions by these methods—including their ability to pay associated fees—is impaired, the Debtors may be unable to perform under certain contracts, their business operations may be unnecessarily disrupted, and their estates will incur additional costs.

42.    The Debtors further request that the Court authorize the Cash Management Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or after the Petition Date.  The Debtors also request that, to the extent a Cash Management Bank honors a prepetition check or other item drawn on any account either: (a) at the direction of the Debtors; (b) in the good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of reasonable customary item handling procedures, such bank will not be deemed to be liable to the Debtors, their estates, or any other party on account of

such prepetition check or other item honored postpetition.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

43.     Moreover, the Debtors request authority to authorize the Cash Management Banks to:  (a) continue to charge the Debtors the Bank Fees, as applicable; and (b) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or after the Petition Date, in the ordinary course and consistent with past practice.

44.     Finally, the Debtors seek a waiver of the requirement under the U.S. Trustee Guidelines to establish specific bank accounts for tax payments, including payroll taxes.  The Debtors' tax obligations can be paid out of the Debtor Bank Accounts as they are in the ordinary course of business, and the U.S. Trustee can adequately monitor the flow of funds into, among, and out of the accounts, as set forth in the required reporting.  Moreover, the creation of a new debtor-in-possession account designated solely for tax obligations would be unnecessary and inefficient.

45.     Courts in this district routinely allow debtors in large chapter 11 cases to maintain their existing cash management systems and waive the U.S. Trustee Guidelines on the grounds that they may be potentially disruptive to a debtor's postpetition business operations and restructuring efforts.  Such relief generally is non-controversial.  *See, e.g.*, *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (authorizing the debtors to continue using their existing cash management system); *In re Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re JOANN Inc.*, No. 25-10068 (CTG) (Bankr. D. Del. Feb. 10, 2025)

(same); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 19, 2024) (same); *In re*

*Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same).[6]

## II.    The Court Should Authorize Payment of Fees and Prepetition Obligations Related to the Bank Accounts and Payment Processing.

46.    The relief requested herein is essential to the Debtors' continuation of ordinary

course operations and, as such, is warranted under sections 105(a) and 363 of the Bankruptcy Code

on an emergency basis as allowed, to avoid immediate and irreparable harm, by

Bankruptcy Rule 6003.  Courts have recognized that it is appropriate to authorize the payment of

prepetition obligations where necessary to protect and preserve the estate.  *See, e.g.*, *In re Just for*

*Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497

(Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y.

1989); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  Several legal theories

rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of

prepetition claims.

47.    Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and

a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1).  "In determining whether to authorize the use, sale

or lease of property of the estate under this section, courts require the debtor to show that a sound

business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147,

153 (D. Del. 1999) (collecting cases); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying on

section 363 to authorize payment of prepetition claims where doing so was necessary to maximize

the value of the debtor's estate); *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

justification existed to justify payment of certain prepetition obligations); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor in possession to 'protect and preserve the estate, including an operating business' going-concern value." *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

48.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See Just for Feet*, 242 B.R. at 825–26.  Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing

*Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).  Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."  *CoServ*, 273 B.R. at 497.

49.     These standards are satisfied here because the payment of fees, including Bank Fees, Processing Fees, and related prepetition obligations are necessary to maintain the Cash Management System and avoid any disruption in the administration of the Bank Accounts.  The Debtors request authority, but not direction, to continue to pay the Bank Fees and Processing Fees, including any prepetition Bank Fees and Processing Fees, in the ordinary course of business, in light of the material benefit of maintaining the Cash Management System.  The relief requested represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003.

**III.    The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms.**

50.     To the extent the Debtors have any preprinted checks, and to avoid disruption of the Cash Management System and unnecessary expense, pursuant to Local Rule 2015-1(a), the Debtors request that they be authorized to continue to use such checks and other Business Forms substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  The Debtors submit that parties in interest will not be prejudiced by this relief.  Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing preprinted business forms is unnecessary and would be unduly burdensome.  Nonetheless, and in accordance with Local Rule 2015-1(a), with respect to any checks that are generated electronically, or following the depletion of the Debtors' preprinted check stock during the pendency of these chapter 11 cases, if any, the Debtors shall ensure that

such electronic checks and new check stock reflect their status as debtors in possession and the corresponding bankruptcy case number.

51.    In other large chapter 11 cases, courts in this District have allowed debtors to use their prepetition Business Forms without the "debtor in possession" label.  *See, e.g.*, *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (authorizing the debtors' continued use of preprinted business forms without a "Debtor in Possession" marking); *In re Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re JOANN Inc.*, No. 25-10068 (CTG) (Bankr. D. Del. Feb. 10, 2025) (same); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 19, 2024) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same).

**IV.    The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Claims Among the Debtors.**

52.    The Debtors' funds move through the Cash Management System as described above.  At any given time, there may be Intercompany Claims owing by one Debtor to another Debtor.  Intercompany Transactions are made between and among Debtors and non-Debtor affiliates in the ordinary course as part of the Cash Management System.[7]  The Debtors closely track all fund transfers in their accounting systems and can ascertain, trace, and account for all Intercompany Transactions previously described.  The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.

---

[7]    Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises like that of the Debtors, the Debtors submit that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  Moreover, the continued performance of the ordinary course Intercompany Transactions is integral to ensure the Debtors' ability to operate their businesses as debtors in possession.

53.     If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' and their estates' detriment.  Since these transactions represent extensions of intercompany credit made in the ordinary course of business that are an essential component of the Cash Management System, the Debtors respectfully submit that the continued performance of the Intercompany Transactions is in the best interest of the Debtors' estates and their creditors and, therefore, the Debtors should be permitted to continue such performance.  On the other hand, preserving "business as usual" and avoiding the unnecessary distractions inevitably associated with any substantial disruption in the Cash Management System will facilitate the Debtors' ongoing operations and minimize significant cost, expense, and logistical difficulties for the Debtors' management, which should otherwise be focused on obtaining the most value-maximizing outcome for these chapter 11 cases.

54.     To ensure each individual Debtor will not, at the expense of its creditors, fund the operations of another entity, the Debtors further request that, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all postpetition payments on account of any Intercompany Transactions that are intended to preserve the business and are incurred in the ordinary course of business in a manner substantially consistent with the Debtors' past practices, be accorded administrative expense status.  For the avoidance of doubt, the relief requested herein with respect to the postpetition Intercompany Transactions and the intercompany balances resulting therefrom shall not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any prepetition intercompany balance or the Intercompany Transaction(s) from which such intercompany balance may have arisen.  Out of an abundance of caution, the Debtors request the authority to continue conducting the Intercompany Transactions in the ordinary course of business without need for further Court order.

55.     The relief requested herein should be approved as it fairly balances the Debtors'

need to facilitate the ordinary course operation of their business, minimize disruption, and preserve

value, on the one hand, with maintaining the substantive interests of their stakeholders and the

general Bankruptcy Code interest in transparency, on the other hand.

56.     Similar relief has been granted in other comparable chapter 11 cases in this

jurisdiction. *See, e.g.*, *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025)

(authorizing the continuation of intercompany transactions in the ordinary course of business and

according administrative expense status to intercompany claims related thereto); *In re Liberated*

*Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re JOANN Inc.*,

No. 25-10068 (CTG) (Bankr. D. Del. Feb. 10, 2025) (same); *In re Accuride Corp.*, No. 24-12289

(JKS) (Bankr. D. Del. Nov. 19, 2024) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG)

(Bankr. D. Del. Nov. 18, 2024) (same).

**V.      Cause Exists for an Interim Extension to Comply with the U.S. Trustee Guidelines**
**Regarding Approved Depositories, and a Subsequent Waiver Thereof on a Final**
**Basis.**

57.     To the extent that the requirements of section 345 of the Bankruptcy Code are

inconsistent, or otherwise conflict, with (a) the cash management practices under the Cash

Management System or (b) any actions the Debtors take in accordance with an order of this Court,

the Debtors seek an extension (and ultimately a waiver) to come into compliance with the

requirements of section 345 of the Bankruptcy Code to allow the Debtors to continue their existing

cash management practices.

58.     Section 345(a) of the Bankruptcy Code authorizes deposit or investment of the

money of the estate, such as cash, as "will yield the maximum reasonable net return on such money,

taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  Although section

345(b) of the Bankruptcy Code generally requires that, with respect to investments other than

investments "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," the estate must require a bond in favor of the United States secured by the undertaking of a U.S. Trustee approved corporate surety, the court is permitted to dispense with this undertaking "for cause." 11 U.S.C. § 345(b).

59.     Courts may extend, modify, or waive compliance with section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines for "cause." In evaluating whether "cause" exists, courts have considered a number of factors such as:

> (a)     the sophistication of the debtor's business;
>
> (b)     the size of the debtor's business operations;
>
> (c)     the amount of the investments involved;
>
> (d)     the bank ratings (*e.g.*, Moody's Investor Service, Inc. and Standard & Poor's Financial Services LLC) of the financial institutions where the debtor-in-possession funds are held;
>
> (e)     the complexity of the case;
>
> (f)     the safeguards in place within the debtor's own business for insuring the safety of the funds;
>
> (g)     the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
>
> (h)     the benefit to the debtor;
>
> (i)     the harm, if any, to the debtor;
>
> (j)     the harm, if any, to the estate; and
>
> (k)     the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

*See In re Service Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

60.     Cause exists in these chapter 11 cases to grant the Debtors an extension, and subsequently waive the requirements, of section 345(b) of the Bankruptcy Code to the extent the Debtors are not already in compliance.  As described above, the majority of the Debtor Bank Accounts are held at Cash Management Banks that are Authorized Depositories, each of which is well-capitalized, financially stable, reputable, have excellent credit ratings, and are insured by the FDIC.    The Bank Accounts that are not held at Authorized Depositories are equally well-capitalized, financially stable, reputable, have excellent credit ratings, and are insured by the FDIC or a comparable foreign banking insurance program.  The nature of the Debtors' business, the number of Debtor Bank Accounts, and the size of the Debtors' liabilities also introduce substantial complexity to these chapter 11 cases.  The Debtors' current Cash Management System and the internal treasury team have active safeguards in place to both protect funds and ensure that distributions are made efficiently and accurately.   Maintaining the current Cash Management System involves the least amount of operational disruption in these chapter 11 cases, while attempting compliance with section 345(b) of the Bankruptcy Code by posting a bond would place an extreme burden on the Debtors at a time when they simply cannot afford it.  For these reasons, cause exists under section 345(b) of the Bankruptcy Code and Local Rule 2015-1(b) to grant an interim extension of the requirements of section 345(b) of the Bankruptcy Code and a subsequent waiver thereof on a final basis.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

61.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors do not

believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored. Therefore, the Debtors request authority to authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

62.      Bankruptcy Rule 6003 empowers a court to grant certain relief within the first 21 days after the petition date only to the extent that relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). For the reasons set forth above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm. The requested relief is necessary for the Debtors to operate their business in a value maximizing manner for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and request that the Court grant the requested relief.

## Reservation of Rights

63.      Notwithstanding anything to the contrary herein, nothing contained in this motion or any actions taken pursuant to any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount, validity, or priority of, or basis for, any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission,

or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

64.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

65.     The Debtors will provide notice of this motion to the following parties or their respective counsel, as applicable:  (a)  the U.S. Trustee; (b) the Priority Term Loan Agent; (c) the Existing Term Loan Agent; (d) the Agent under the ABL Facility; (e) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (f) the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; (i) the Cash Management Banks; and (j) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

66.     No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  August 6, 2025
Wilmington, Delaware

/s/ Zachary I. Shapiro
**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    defranceschi@rlf.com
            heath@rlf.com
            shapiro@rlf.com
            carlisle@rlf.com
            meehan@rlf.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Allyson B. Smith (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com
            allyson.smith@kirkland.com

- and -

Alexandra F. Schwarzman, P.C. (*pro hac vice* pending)
Robert A. Jacobson (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    alexandra.schwarzman@kirkland.com
            rob.jacobson@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re:  Docket No. __** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THE CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY TRANSACTIONS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to (i) continue to operate the Cash Management System and maintain their existing Debtor Bank Accounts, (ii) honor certain prepetition or postpetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue to perform Intercompany Transactions; (b) granting administrative expense status to the Intercompany Transactions; (c) waiving certain requirements under section 345 of the Bankruptcy Code and U.S. Trustee Guidelines; (d) scheduling a final hearing to consider approval

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

of the Motion on a final basis; and (e) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      Any objections to the entry of this Interim Order, to the extent not withdrawn or settled, are overruled.

3.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2025, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2025 and shall be served on:  (a) the Debtors, Claire's Holdings LLC, 2400 West Central Road, Hoffman Estates, Illinois 60192, Attn.: Brendan McKeough, Executive Vice President, Chief Legal Officer,

and Secretary (brendan.mckeough@claires.com) and 3 SW 129th Avenue, Pembroke Pines, Florida 33027, Attn: Michele Reilly, Assistant Secretary (michele.reilly@claires.com); (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Allyson B. Smith (allyson.smith@kirkland.com) and 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Alexandra F. Schwarzman, P.C. (alexandra.schwarzman@kirkland.com) and Robert A. Jacobson (rob.jacobson@kirkland.com) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attn: Paul N. Heath (heath@rlf.com) and Zachary I. Shapiro (shapiro@rlf.com); (c) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.:  Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov); (d) counsel to the Prepetition Priority Term Loan Agent and Existing Prepetition Term Loan Agent, Ankura Trust Company, LLC, Cahill Gordon & Reindell LLP, Attn.: Joel Moss (JMoss@cahill.com), Amit Trehan (ATrehan@cahill.com), and Sean Tierney (STierney@cahill.com); (e) counsel to the Prepetition ABL Agent, JPMorgan Chase Bank, N.A., Simpson Thacher & Bartlett LLP, Attn.: Elisha D. Graff (egraff@stblaw.com) and Zachary J. Weiner (zachary.weiner@stblaw.com) and Potter Anderson & Corroon LLP, Attn: L. Katherine Good (kgood@potteranderson.com) and Jeremy Ryan (jryan@potteranderson.com); and (f) any statutory committee appointed in these chapter 11 cases.

4.      The Debtors are authorized, but not directed, in all cases consistent with past practice and in the ordinary course of business, to:  (a) continue operating the Cash Management System, substantially as identified on **Exhibit 1** attached hereto and as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all correspondence and Business Forms, as well as checks and other documents related to the Bank

Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; *provided* that once the Debtors' preprinted Business Forms have been exhausted, the Debtors shall, when reordering their Business Forms, add the designation "Debtor in Possession" and corresponding bankruptcy case number thereon; (d) continue to perform and record Intercompany Transactions in the ordinary course of business, and treat postpetition Intercompany Claims in a manner consistent with this Court's grant of administrative expense status thereto; (e) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit 2** attached hereto without the need to comply with certain guidelines set forth in the U.S. Trustee Guidelines (to the extent applicable); (f) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (g) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (h) open new debtor in possession Bank Accounts, *provided that* the Debtors shall open any such new Bank Accounts only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement; and (i) pay any Bank Fees incurred in the ordinary course in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts.

5.      The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course and in a manner consistent with prepetition practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial

institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

6.     The Cash Management Banks are authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for:  (a) all checks drawn on the Debtors' accounts that are cashed at such Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' accounts with such Cash Management Banks prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; (c) ACH transfers issued and drawn on the Bank Accounts; and (d) all undisputed prepetition and postpetition amounts outstanding as of the date hereof, if any, owed to the Cash Management Banks as service charges and/or fees for the maintenance of the Cash Management System (collectively (a)-(d), the "Bank Account Claims"). The postpetition Bank Account Claims are entitled to administrative expense priority under section 503(b) of the Bankruptcy Code.

7.     Any existing deposit agreements between or among the Debtors, the Cash Management Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination, indemnification, and fee provisions, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices and the Debtors' prepetition

secured debt agreements, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Interim Order.

8.    Subject to the terms of this Interim Order, the Debtors are authorized, but not directed, in the ordinary course of business and consistent with historical practices, to open new accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate in their sole discretion.  The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank; *provided that* the Debtors shall open any such new Bank Accounts only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

9.    As soon as possible after entry of this Interim Order, the Debtors shall contact the Cash Management Banks that are a party to a Uniform Depository Agreement with the U.S. Trustee and: (a) provide such Cash Management Banks with the Debtors' employer identification number and lead case number for these chapter 11 cases; and (b) identify each of their bank accounts as being held by a debtor in possession and provide the corresponding bankruptcy case number.

10.    To the extent any of the Debtor Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is 30 days from the entry of this Interim Order, without prejudice to seek an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing

herein shall prevent the Debtors or the U. S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.

11.    The Debtors shall serve a copy of this Interim Order on the Cash Management Banks and as soon as possible after entry of this Interim Order, and upon any bank at which the Debtors open a new bank account immediately upon the opening of the new account.

12.    All banks provided with notice of this Interim Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

13.    Except as otherwise set forth herein, the Debtors and the Cash Management Banks may, without further order of this Court, agree and implement changes to the policies and procedures related to the Cash Management System in the ordinary course of business.

14.    In the course of providing cash management services to the Debtors, each of the Cash Management Banks is authorized, without further order of this Court and consistent with prepetition practices, to deduct the applicable fees (whether arising prior to or after the Petition Date) from the appropriate accounts of the Debtors, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.  Any such fees arising after the Petition Date that are charged by the Cash Management Banks consistent with established practice are entitled to administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

15.     Notwithstanding any other provision of this Interim Order, any Cash Management Bank may rely upon the representations of the Debtors, without a duty of inquiry, with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to, on, or after the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition or postpetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonably customary handling procedures, shall be deemed to be nor shall be liable to the Debtors or their estates or any other person or entity on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

16.     Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

17.     Any requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

18.     The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in connection with the Cash Management Systems, in the ordinary course of business, consistent with past practice.  The Debtors shall maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions, including Intercompany Transactions and the payment of Intercompany Claims, may

be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status. All postpetition payments under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

19.     The Debtors are authorized, but not directed, to continue the use of P-Cards pursuant to the P-Card Program in the ordinary course of business and consistent with prepetition practices, including by paying prepetition and postpetition obligations outstanding with respect thereto, subject to the limitations of this Interim Order and any other applicable interim and/or final orders of this Court. Any Cash Management Bank may rely on the representations of the Debtors with respect to its use of the P-Cards under the P-Card Program, and such Cash Management Bank shall not have any liability to any party for relying on such representations by a Debtor as provided for herein.

20.     Any existing agreements between or among the Debtors and any bank in respect of the P-Card Program shall continue to govern the postpetition relationship between the Debtors and such bank, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, rights, benefits, offset rights and remedies afforded under such agreements, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and such bank may, without further order of this Court, agree to and implement changes related to the P-Card Programs in the ordinary course of business, consistent with past practice and pursuant to the terms of those existing agreements. Without limiting the generality of the foregoing: (a) the aggregate credit limit under the P-Card Program with U.S Bank is $230,000 inclusive of both prepetition and postpetition obligations; (b) the Debtors are authorized to

continue to maintain the Credit Card Collateral Account for purposes of cash collateralizing all prepetition and postpetition obligations under P-Card Program, and all cash from time to time on deposit in such account shall remain subject to an exclusive first-priority lien in favor of the Prepetition ABL Agent as security for such obligations; (c) all prepetition and postpetition charges, fees, and interest under the P-Card Program are hereby authorized and required to be paid by the Debtors to U.S. Bank as they become due, and (d) in the event the Debtors fail to make any timely payment to U.S. Bank in respect of the obligations under the P-Card Program, U.S. Bank is authorized, in its discretion, to debit the Credit Card Collateral Account for the amount of any unpaid obligations, without further order of this Court.  To the extent necessary, U.S. Bank is hereby granted relief from the stay imposed under section 362 of the Bankruptcy Code for purposes of this paragraph.

21.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

22.     Nothing contained in the Motion or this Interim Order shall permit the Cash Management Banks to terminate any cash management services without 30 days' prior written notice (or such other period as may be specified in any agreement between the Debtors and such Cash Management Bank, which period shall control and govern termination of such cash management services notwithstanding anything herein to the contrary) to the Debtors.

23.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes those disbursements.

24.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

25.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

26.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

27.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief (including any payment made in accordance with this Interim Order), nothing in this Interim Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Interim Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement,

contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

28.　The contents of this Motion satisfy the contents of Bankruptcy Rule 6003.

29.　Notwithstanding anything to the contrary in this Interim Order, any payment to be made, obligation incurred or authorization contained herein shall be subject to and in compliance with the "Approved Budget" as defined in the orders of the Court approving the consensual use of cash collateral in these chapter 11 cases (including with respect to timing of payments thereunder).

30.　Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

31.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

32.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

33.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## <u>Exhibit 1</u>

**Cash Management System Schematic**



**Claire's Boutiques, Inc. & Claire's Puerto Rico**

- Claire's Boutiques, Inc
  Wisely (Issued by Fifth Third Bank)
  x9573
- Claire's Boutiques, Inc
  Wisely (Issued by Fifth Third Bank)
  x9573
- Store Deposit Accounts
  (Detail in Exhibit [x])

Third-Party Receipts

ABL Facility
JP Morgan (Agent)

**Claire's Stores, Inc**

- Collateral Account
  US Bank
  x382
- Commercial Checking Account
  Citizens Bank
  x0708
- Master Concentration Account
  Citibank N.A.
  x5866
- Payroll Account
  Citibank N.A.
  x5903
- Preauthorized ACH Account
  Citibank N.A.
  x5882
- Check Disbursement Account
  Citibank N.A.
  X6055
- Electronic Payments Account
  Citibank N.A.
  x5874

Third-Party Disbursements

**Claire's Intellectual LLC**

- Holding Account
  Claire's Intellectual
  Citibank N.A.
  x6282

- Franchise Receipts

**Non-Debtors**

- Claire's European Services LTD
  HSBC
  x0935
- Claire's Stores Canada Corp
  CIBC
  x7517
- RSI International Ltd
  HSBC
  x6274

**Other Debtors**

- CLSIP, LLC
  Citibank N.A.
  x5938
- Claire's (Gibraltar) Holdings LTD
  Natwest (Gibraltar)
  x1611
- Claire's Holdings LLC
  Citibank
  x5964
- [Adequate Assurance]
  Claire's (Gibraltar) Holdings LTD
  JP Morgan Chase
  x3961

**Legend**

→ Receipts        DACA ⬚

→ Disbursements

Note: All debtor bank accounts manually funded / swept

**Exhibit 2**

**Bank Accounts**

| Legal Entity | Banking Institution | Account No. | Account Type |
|---|---|---|---|
| Claire's Stores, Inc. | Citibank N.A. | x5866 | Master Concentration |
| Claire's Stores, Inc. | Citibank N.A. | x5874 | Disbursement |
| Claire's Stores, Inc. | Citibank N.A. | x5882 | Disbursement |
| Claire's Stores, Inc. | Citibank N.A. | x5903 | Disbursement |
| Claire's Stores, Inc. | Citibank N.A. | x6055 | Disbursement |
| Claire's Stores, Inc. | Citizens Bank | x0708 | Commercial Checking |
| Claire's Boutiques, Inc. | Wisely | x9573 | Payroll Card |
| Claire's Stores, Inc. | US Bank | x0382 | Collateral |
| CLSIP, LLC | Citibank N.A. | x5938 | Other |
| Claire's Intellectual LLC | Citibank N.A. | x6282 | International Operations |
| Claire's Holdings, LLC | Citibank N.A. | x5946 | Other |
| Claire's (Gibraltar) Holdings Limited | NatWest Offshore Gibraltar Ltd | x 611 | Foreign |
| Claire's (Gibraltar) Holdings Limited | JP Morgan Chase | x3961 | Adequate Assurance |
| Claire's Boutiques, Inc. | First National Bank | x2014 | Store Deposit |
| Claire's Boutiques, Inc. | Synovus Bank | x0401 | Store Deposit |
| Claire's Boutiques, Inc. | Titan Bank | x0765 | Store Deposit |
| Claire's Boutiques, Inc. | Commerce Bank | x0528 | Store Deposit |
| Claire's Boutiques, Inc. | Isabella Bank & Trust | x5449 | Store Deposit |
| Claire's Boutiques, Inc. | Synovus Bank | x7003 | Store Deposit |
| Claire's Boutiques, Inc. | American National Bank | x0578 | Store Deposit |
| Claire's Boutiques, Inc. | Bancfirst | x5936 | Store Deposit |

| | | | |
|---|---|---|---|
| Claire's Boutiques, Inc. | Hankcock Bank | x0277 | Store Deposit |
| Claire's Boutiques, Inc. | Desert Community Bank | x4701 | Store Deposit |
| Claire's Boutiques, Inc. | Flagstar Bank | x9759 | Store Deposit |
| Claire's Boutiques, Inc. | Community Bank | x4967 | Store Deposit |
| Claire's Boutiques, Inc. | Community Bank | x5899 | Store Deposit |
| Claire's Boutiques, Inc. | Plains Capital Bank | x4315 | Store Deposit |
| Claire's Boutiques, Inc. | Premier Bank | x0910 | Store Deposit |
| Claire's Boutiques, Inc. | Tri Counties Bank | x3379 | Store Deposit |
| Claire's Boutiques, Inc. | First Western Bank & Trust | x8841 | Store Deposit |
| Claire's Boutiques, Inc. | S&T Bank | x5936 | Store Deposit |
| Claire's Boutiques, Inc. | S&T Bank | x1553 | Store Deposit |
| Claire's Boutiques, Inc. | Bremer Bank | x4864 | Store Deposit |
| Claire's Boutiques, Inc. | Bremer Bank | x4082 | Store Deposit |
| Claire's Boutiques, Inc. | Bremer Bank | x7448 | Store Deposit |
| Claire's Boutiques, Inc. | Peoples Bank | x1315 | Store Deposit |
| Claire's Boutiques, Inc. | First National Bank Of Ottawa | x3158 | Store Deposit |
| Claire's Boutiques, Inc. | Nbc | x2461 | Store Deposit |
| Claire's Boutiques, Inc. | Kirkwood Bank & Trust | x6401 | Store Deposit |
| Claire's Boutiques, Inc. | International Bank Of Commerce | x3121 | Store Deposit |
| Claire's Boutiques, Inc. | First Bank Kansas | x1585 | Store Deposit |
| Claire's Boutiques, Inc. | Rio Grande Bank | x2906 | Store Deposit |
| Claire's Boutiques, Inc. | United Community Bank | x5319 | Store Deposit |
| Claire's Boutiques, Inc. | State Bank | x5915 | Store Deposit |
| Claire's Boutiques, Inc. | F & M Bank | x2574 | Store Deposit |

| Claire's Boutiques, Inc. | Commerce Bank | x5315 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | Community National Bank & Trust | x1092 | Store Deposit |
| Claire's Boutiques, Inc. | Franklin Savings Bank | x3662 | Store Deposit |
| Claire's Boutiques, Inc. | Premier Bank Of Minnesota | x1694 | Store Deposit |
| Claire's Boutiques, Inc. | Umpqua Bank | x6368 | Store Deposit |
| Claire's Boutiques, Inc. | Woodforest | x9224 | Store Deposit |
| Claire's Boutiques, Inc. | First Horizon Bank | x0778 | Store Deposit |
| Claire's Boutiques, Inc. | First Horizon Bank | x0779 | Store Deposit |
| Claire's Boutiques, Inc. | First Citizens Bank & Trust Co | x2782 | Store Deposit |
| Claire's Boutiques, Inc. | Hickory Point Bank | x0213 | Store Deposit |
| Claire's Boutiques, Inc. | Arvest Bank | x9801 | Store Deposit |
| Claire's Boutiques, Inc. | Citizens National Bank | x3627 | Store Deposit |
| Claire's Boutiques, Inc. | Ameris Bank | x0887 | Store Deposit |
| Claire's Boutiques, Inc. | Central Bank Boone County | x7363 | Store Deposit |
| Claire's Boutiques, Inc. | TD Bank | x3879 | Store Deposit |
| Claire's Boutiques, Inc. | Great Southern Bank | x1823 | Store Deposit |
| Claire's Boutiques, Inc. | Great Southern Bank | x3643 | Store Deposit |
| Claire's Boutiques, Inc. | German American Bank | x9495 | Store Deposit |
| Claire's Boutiques, Inc. | Border Bank | x5905 | Store Deposit |
| Claire's Boutiques, Inc. | Bancorpsouth | x5223 | Store Deposit |
| Claire's Boutiques, Inc. | Hancock Bank | x3121 | Store Deposit |
| Claire's Boutiques, Inc. | Truist Bank | x3672 | Store Deposit |
| Claire's Boutiques, Inc. | Truist Bank | x3680 | Store Deposit |
| Claire's Boutiques, Inc. | United Bank | x5676 | Store Deposit |

| Claire's Boutiques, Inc. | Hancock Bank | x7983 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | Park National Bank | x8189 | Store Deposit |
| Claire's Boutiques, Inc. | BOKF, NA dba BOKFinancial | x0366 | Store Deposit |
| Claire's Boutiques, Inc. | BOKF, NA dba BOKFinancial | x0377 | Store Deposit |
| Claire's Boutiques, Inc. | Banknorth | x1498 | Store Deposit |
| Claire's Boutiques, Inc. | Bancorpsouth | x3107 | Store Deposit |
| Claire's Boutiques, Inc. | Regions Bank | x2124 | Store Deposit |
| Claire's Boutiques, Inc. | Northway Bank | x7521 | Store Deposit |
| Claire's Boutiques, Inc. | Hawthorn Bank | x1217 | Store Deposit |
| Claire's Boutiques, Inc. | Dubuque Bank & Trust | x1531 | Store Deposit |
| Claire's Boutiques, Inc. | Bank Champaign | x6513 | Store Deposit |
| Claire's Boutiques, Inc. | Core First Bank & Trust | x0693 | Store Deposit |
| Claire's Boutiques, Inc. | Core First Bank & Trust | x0707 | Store Deposit |
| Claire's Boutiques, Inc. | Truist Bank | x8268 | Store Deposit |
| Claire's Boutiques, Inc. | Bank Champaign | x0459 | Store Deposit |
| Claire's Boutiques, Inc. | Nbt Bank | x2636 | Store Deposit |
| Claire's Puerto Rico Corp. | Banco Popular of Puerto Rico | x4300 | Store Deposit |
| Claire's Boutiques, Inc. | County Bank | x4001 | Store Deposit |
| Claire's Boutiques, Inc. | First Mid Bank & Trust | x8309 | Store Deposit |
| Claire's Boutiques, Inc. | 1st Summit Bank | x0552 | Store Deposit |
| Claire's Boutiques, Inc. | South State Bank | x5812 | Store Deposit |
| Claire's Boutiques, Inc. | First United Bank & Trust | x6101 | Store Deposit |
| Claire's Boutiques, Inc. | BMO Harris Bank | x1300 | Store Deposit |
| Claire's Boutiques, Inc. | Premier Bank | x5137 | Store Deposit |

4

| Claire's Boutiques, Inc. | Coast Central | x5864 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | City National Bank | x1619 | Store Deposit |
| Claire's Boutiques, Inc. | US Bank | x0998 | Store Deposit |
| Claire's Boutiques, Inc. | US Bank | x2853 | Store Deposit |
| Claire's Boutiques, Inc. | US Bank | x2858 | Store Deposit |
| Claire's Boutiques, Inc. | JP Morgan Chase | x5637 | Store Deposit |
| Claire's Boutiques, Inc. | JP Morgan Chase | x5629 | Store Deposit |
| Claire's Boutiques, Inc. | Wrentham Bank | x2933 | Store Deposit |
| Claire's Boutiques, Inc. | First American Bk | x0102 | Store Deposit |
| Claire's Boutiques, Inc. | United Bank | x9111 | Store Deposit |
| Claire's Boutiques, Inc. | Huntington National Bank | x0304 | Store Deposit |
| Claire's Boutiques, Inc. | Huntington National Bank | x0948 | Store Deposit |
| Claire's Boutiques, Inc. | South State Bank | x6752 | Store Deposit |
| Claire's Boutiques, Inc. | Exb Exchange Bank | x4462 | Store Deposit |
| Claire's Boutiques, Inc. | Bank Financial | x0830 | Store Deposit |
| Claire's Boutiques, Inc. | Bangor Saving | x7583 | Store Deposit |
| Claire's Boutiques, Inc. | TD Bank | x3301 | Store Deposit |
| Claire's Boutiques, Inc. | First Farmers Bank & Trust | x0433 | Store Deposit |
| Claire's Boutiques, Inc. | American Bank | x0177 | Store Deposit |
| Claire's Boutiques, Inc. | Bank Of The West | x2207 | Store Deposit |
| Claire's Boutiques, Inc. | TD Bank | x5418 | Store Deposit |
| Claire's Boutiques, Inc. | Arvest Bank | x5369 | Store Deposit |
| Claire's Boutiques, Inc. | American Bank Of Mt | x2801 | Store Deposit |
| Claire's Boutiques, Inc. | Inwood National Bank | x9514 | Store Deposit |

| | | | |
|---|---|---|---|
| Claire's Boutiques, Inc. | Citizens National Bank | x2597 | Store Deposit |
| Claire's Boutiques, Inc. | Trustco Bank | x5920 | Store Deposit |
| Claire's Boutiques, Inc. | Trustco Bank | x8605 | Store Deposit |
| Claire's Boutiques, Inc. | Regions Bank | x0149 | Store Deposit |
| Claire's Boutiques, Inc. | Regions Bank | x0432 | Store Deposit |
| Claire's Boutiques, Inc. | First Community Bank | x0513 | Store Deposit |
| Claire's Boutiques, Inc. | Key Bank | x6133 | Store Deposit |
| Claire's Boutiques, Inc. | Key Bank | x8188 | Store Deposit |
| Claire's Boutiques, Inc. | Key Bank | x0162 | Store Deposit |
| Claire's Boutiques, Inc. | First Financial Bank | x8093 | Store Deposit |
| Claire's Boutiques, Inc. | Citizens Bank | x5511 | Store Deposit |
| Claire's Boutiques, Inc. | Texas Bank And Trust | x4594 | Store Deposit |
| Claire's Boutiques, Inc. | Wells Fargo | x0492 | Store Deposit |
| Claire's Boutiques, Inc. | First Financial Bank | x6850 | Store Deposit |
| Claire's Boutiques, Inc. | Vectra Bank | x5449 | Store Deposit |
| Claire's Boutiques, Inc. | First Bankers Trust Co | x1723 | Store Deposit |
| Claire's Boutiques, Inc. | Wells Fargo | x6312 | Store Deposit |
| Claire's Boutiques, Inc. | Star Financial Bank | x0623 | Store Deposit |
| Claire's Boutiques, Inc. | Security Service | x2071 | Store Deposit |
| Claire's Boutiques, Inc. | TD Bank | x9464 | Store Deposit |
| Claire's Boutiques, Inc. | BMO Harris Bank | x7025 | Store Deposit |
| Claire's Boutiques, Inc. | Wells Fargo | x3267 | Store Deposit |
| Claire's Boutiques, Inc. | First Financial Bank | x7801 | Store Deposit |
| Claire's Boutiques, Inc. | BMO Harris Bank | x1449 | Store Deposit |

| Claire's Boutiques, Inc. | WesBanco Bank | x1669 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | Claire's European Services Ltd | x1068 | Store Deposit |
| Claire's Boutiques, Inc. | 1ST BANK | x5615 | Store Deposit |
| Claire's Boutiques, Inc. | LAKE REGION BANK | x4145 | Store Deposit |
| Claire's Boutiques, Inc. | LEA COUNTY STATE BANK | x0681 | Store Deposit |
| Claire's Boutiques, Inc. | Valley National Bank | x9198 | Store Deposit |
| Claire's Boutiques, Inc. | INTERNATIONAL BANK OF COMMERCE | x8301 | Store Deposit |
| Claire's Boutiques, Inc. | INTERNATIONAL BANK OF COMMERCE | x2801 | Store Deposit |
| Claire's Boutiques, Inc. | EASTERN BANK | x5025 | Store Deposit |
| Claire's Boutiques, Inc. | Citizens Bank | x4126 | Store Deposit |
| Claire's Boutiques, Inc. | Citizens Bank | x4102 | Store Deposit |
| Claire's Boutiques, Inc. | STAR FINANCIAL BANK | x0859 | Store Deposit |
| Claire's Boutiques, Inc. | SIMMONS BANK | x4172 | Store Deposit |
| Claire's Boutiques, Inc. | JP Morgan Chase | x6929 | Store Deposit |
| Claire's Boutiques, Inc. | First Hawaiian Bank | x3106 | Store Deposit |
| Claire's Boutiques, Inc. | NBT BANK | x0966 | Store Deposit |
| Claire's Boutiques, Inc. | Fifth Third Bank | x8945 | Store Deposit |
| Claire's Boutiques, Inc. | CITIZENS NATIONAL BANK | x0759 | Store Deposit |
| Claire's Boutiques, Inc. | FARMERS STATE BANK | x0869 | Store Deposit |
| Claire's Boutiques, Inc. | TD Bank | x3131 | Store Deposit |
| Claire's Boutiques, Inc. | Commerce Bank | x8526 | Store Deposit |
| Claire's Boutiques, Inc. | Bank of Hawaii | x6950 | Store Deposit |
| Claire's Boutiques, Inc. | Bank of Hawaii | x6831 | Store Deposit |
| Claire's Boutiques, Inc. | CORNERSTONE BANK | x0579 | Store Deposit |

| Claire's Boutiques, Inc. | Bank of America | x3821 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | Bank of America | x3834 | Store Deposit |
| Claire's Boutiques, Inc. | CAPE COD FIVE CENTS BANK | x0841 | Store Deposit |
| Claire's Boutiques, Inc. | M & T Bank | x2409 | Store Deposit |
| Claire's Boutiques, Inc. | PNC Bank | x8143 | Store Deposit |
| Claire's Boutiques, Inc. | PNC Bank | x8151 | Store Deposit |
| Claire's Boutiques, Inc. | PNC Bank | x0728 | Store Deposit |
| Claire's Boutiques, Inc. | CAMDEN NATIONAL BANK | x3839 | Store Deposit |
| Claire's Boutiques, Inc. | FIRST INTERSTATE BANK | x0156 | Store Deposit |
| Claire's Boutiques, Inc. | FIRST MID BANK & TRUST | x6410 | Store Deposit |
| Claire's Boutiques, Inc. | BANK OF THE WEST | x1280 | Store Deposit |
| Claire's Boutiques, Inc. | M & T Bank | x8917 | Store Deposit |
| Claire's Boutiques, Inc. | UMB Bank | x8744 | Store Deposit |
| Claire's Boutiques, Inc. | Fifth Third Bank | x3163 | Store Deposit |
| Claire's Boutiques, Inc. | Fifth Third Bank | x4350 | Store Deposit |
| Claire's Boutiques, Inc. | PNC Bank | x9868 | Other |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x3119 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x6217 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x7517 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x2716 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x6411 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x2910 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x2813 | Non-Debtor Account |
| Claire's China Services | Citibank N.A. | x5911 | Non-Debtor Account |

| | | | |
|---|---|---|---|
| Claire's Stores Canada Corp. | Scotia Bank | x7515 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x3011 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Bank of Montreal | x9103 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canada Trust TD | x6490 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Royal Bank | x3300 | Non-Debtor Account |
| Claire's European Services Ltd | HSBC Bank Plc | x0935 | Non-Debtor Account |
| RSI International Limited | HSBC Bank Plc | x6274 | Non-Debtor Account |

**<u>Exhibit B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING THE
DEBTORS TO (A) CONTINUE TO OPERATE
THE CASH MANAGEMENT SYSTEM, (B) HONOR
CERTAIN PREPETITION OBLIGATIONS RELATED
THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS,
(D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS,
(II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY TRANSACTIONS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of a final order (this "Final Order"), (a) authorizing the Debtors to (i) continue to operate the Cash Management System, (ii) honor certain prepetition or postpetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue to perform Intercompany Transactions consistent with historical practices; (b) waiving certain requirements under section 345 of the Bankruptcy Code and U.S. Trustee Guidelines; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      Any objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized, but not directed, in all cases consistent with past practice and in the ordinary course of business, to:  (a) continue operating the Cash Management System, substantially as identified on **Exhibit 1** attached hereto and as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all correspondence and Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status

as debtors in possession; *provided* that once the Debtors' preprinted Business Forms have been exhausted, the Debtors shall, when reordering their Business Forms, add the designation "Debtor in Possession" and corresponding bankruptcy case number thereon; (d) continue to perform and record Intercompany Transactions in the ordinary course of business, and treat postpetition Intercompany Claims in a manner consistent with this Court's grant of administrative expense status thereto; (e) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit 2** attached hereto without the need to comply with certain guidelines set forth in the U.S. Trustee Guidelines (to the extent applicable); (f) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (g) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (h) open new debtor in possession Bank Accounts, *provided that* the Debtors shall open any such new Bank Accounts only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement; and (i) pay any Bank Fees incurred in the ordinary course in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts.  To the extent the Debtors print any new checks during the pendency of these chapter 11 cases, they will include the designation "Debtor in Possession" and the corresponding bankruptcy case number.

4.      The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course and in a manner consistent with prepetition practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the

Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

5.      The Cash Management Banks are authorized to debit the Debtor Bank Accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for:  (a) all checks drawn on the Debtors' accounts that are cashed at such Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b)  all checks, ACH entries, or other items deposited in or credited to one of Debtor Bank Accounts with such Cash Management Banks prior to the Petition Date that have been dishonored, reversed, or returned unpaid for any reason, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, together with any fees and costs in connection therewith, to the same extent the Debtors was responsible for such items prior to the Petition Date; (c) ACH transfers issued and drawn on the Bank Accounts; and (d) all undisputed prepetition and postpetition amounts outstanding as of the date hereof, if any, owed to the Cash Management Banks as service charges and/or fees for the maintenance of the Cash Management System (collectively (a)–(d), the "Bank Account Claims").  The postpetition Bank Account Claims are entitled to administrative expense priority under section 503(b) of the Bankruptcy Code.

6.      Any prepetition deposit, cash management, and treasury services agreements existing between or among the Debtors, the Cash Management Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the applicable Cash Management Bank, and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including, without limitation, the termination, indemnification, and

fee provisions, shall remain in full force and effect unless otherwise ordered by the Court (including, for the avoidance of doubt, any rights of the Cash Management Bank to use funds from the Debtor Bank Accounts to remedy any overdraft of another Debtor Bank Account to the extent permitted under the applicable deposit agreement), unless the Debtors and such Cash Management Bank agree otherwise, and any other legal rights and remedies afforded to the Cash Management Bank under applicable law shall be preserved, subject to applicable bankruptcy law.

7.      Subject to the terms of this Final Order, the Debtors are authorized, but not directed, in the ordinary course of business, to open new accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate in their sole discretion; *provided* that the Debtors shall give notice within fifteen days to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases of the opening of any new bank account or closing any existing Bank Account; *provided, further*, that the Debtors shall open any such new bank accounts only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such agreement.  The relief granted in this Final Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.

8.      To the extent any of the Debtor Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is 30 days from the entry of the Final Order, without prejudice to seek an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines without prejudice to

seek an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.

9.    All banks provided with notice of this Final Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

10.    Except as otherwise set forth herein, the Debtors and the Cash Management Banks may, without further order of this Court, agree and implement changes to the policies and procedures related to the Cash Management System in the ordinary course of business.

11.    In the course of providing cash management services to the Debtors, each of the Cash Management Banks is authorized, without further order of this Court and consistent with prepetition practices, to deduct the applicable fees (whether arising prior to or after the Petition Date) from the appropriate accounts of the Debtors, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.  Any such fees arising after the Petition Date that are charged by the Cash Management Banks consistent with established practice are entitled to administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

12.    Notwithstanding any other provision of this Final Order, any Cash Management Bank may rely upon the representations of the Debtors, without a duty of inquiry, with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to, on, or after the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition or postpetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonably customary handling procedures, shall be deemed to be nor shall be liable to the Debtors or their estates or any other person or entity on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

13.    Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

14.    Any requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

15.    The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in connection with the Cash Management Systems, consistent with past practice.  The Debtors shall maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions, including Intercompany Transactions and the payment of Intercompany Claims, may be readily traced,

ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status. All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

16.    Immediately upon entry of this Final Order, each of the Cash Management Banks at which Bank Accounts subject to automatic transfers or "sweeps" as part of the Cash Management System are maintained are authorized, solely pursuant to the written direction of the Debtors (email sufficient), without further order of this Court, to execute transfers or sweeps without regard to whether the funds swept and/or transferred include funds deposited prior to the Petition Date, as directed by the Debtors.

17.    The Debtors are authorized, but not directed, to continue using the P-Card Program in the ordinary course of business and consistent with prepetition practices, including by paying prepetition and postpetition obligations outstanding with respect thereto, subject to the limitations of this Interim Order and any other applicable interim and/or final orders of this Court. Any Cash Management Bank may rely on the representations of the Debtors with respect to its use of the P-Card Program, and such Cash Management Bank shall not have any liability to any party for relying on such representations by a Debtor as provided for herein.

18.    Any existing agreements between or among the Debtors and any bank in respect of the P-Card Program shall continue to govern the postpetition relationship between the Debtors and such bank, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, rights, benefits, offset rights and remedies afforded under such agreements, shall remain in full force and effect unless otherwise ordered by the Court, and the

Debtors and such bank may, without further order of this Court, agree to and implement changes related to the P-Card Programs in the ordinary course of business, consistent with past practice and pursuant to the terms of those existing agreements. Without limiting the generality of the foregoing: (a) the aggregate credit limit under the P-Card Program with U.S Bank is $230,000 inclusive of both prepetition and postpetition obligations; (b) the Debtors are authorized to continue to maintain the Credit Card Collateral Account for purposes of cash collateralizing all prepetition and postpetition obligations under P-Card Program, and all cash from time to time on deposit in such account shall remain subject to an exclusive first-priority lien in favor of the Prepetition ABL Agent as security for such obligations; (c) all prepetition and postpetition charges, fees, and interest under the P-Card Program are hereby authorized and required to be paid by the Debtors to U.S. Bank as they become due, and (d) in the event the Debtors fail to make any timely payment to U.S. Bank in respect of the obligations under the P-Card Program, U.S. Bank is authorized, in its discretion, to debit the Credit Card Collateral Account for the amount of any unpaid obligations, without further order of this Court. To the extent necessary, U.S. Bank is hereby granted relief from the stay imposed under section 362 of the Bankruptcy Code for purposes of this paragraph.

19.    Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

20.    Nothing contained in the Motion or this Interim Order shall permit the Cash Management Banks to terminate any cash management services without 30 days' prior written notice (or such other period as may be specified in any agreement between the Debtors and such

Cash Management Bank, which period shall control and govern termination of such cash management services notwithstanding anything herein to the contrary) to the Debtors.

21.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes those disbursements.

22.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

23.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

24.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief (including any payment made in accordance with this Final Order), nothing in this Final Order is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Final Order or the Motion or any order granting the relief requested by

the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

25.    Notwithstanding anything to the contrary in this Final Order, any payment to be made, obligation incurred or authorization contained herein shall be subject to and in compliance with the "Approved Budget" as defined in the orders of the Court approving the consensual use of cash collateral in these chapter 11 cases (including with respect to timing of payments thereunder).

26.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

27.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

28.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

29.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**<u>Exhibit 1</u>**

**Cash Management System Schematic**



**Exhibit 2**

**Bank Accounts**

| Legal Entity | Banking Institution | Account No. | Account Type |
|---|---|---|---|
| Claire's Stores, Inc. | Citibank N.A. | x5866 | Master Concentration |
| Claire's Stores, Inc. | Citibank N.A. | x5874 | Disbursement |
| Claire's Stores, Inc. | Citibank N.A. | x5882 | Disbursement |
| Claire's Stores, Inc. | Citibank N.A. | x5903 | Disbursement |
| Claire's Stores, Inc. | Citibank N.A. | x6055 | Disbursement |
| Claire's Stores, Inc. | Citizens Bank | x0708 | Commercial Checking |
| Claire's Boutiques, Inc. | Wisely | x9573 | Payroll Card |
| Claire's Stores, Inc. | US Bank | x0382 | Collateral |
| CLSIP, LLC | Citibank N.A. | x5938 | Other |
| Claire's Intellectual LLC | Citibank N.A. | x6282 | International Operations |
| Claire's Holdings, LLC | Citibank N.A. | x5946 | Other |
| Claire's (Gibraltar) Holdings Limited | NatWest Offshore Gibraltar Ltd | x 611 | Foreign |
| Claire's (Gibraltar) Holdings Limited | JP Morgan Chase | x3961 | Adequate Assurance |
| Claire's Boutiques, Inc. | First National Bank | x2014 | Store Deposit |
| Claire's Boutiques, Inc. | Synovus Bank | x0401 | Store Deposit |
| Claire's Boutiques, Inc. | Titan Bank | x0765 | Store Deposit |
| Claire's Boutiques, Inc. | Commerce Bank | x0528 | Store Deposit |
| Claire's Boutiques, Inc. | Isabella Bank & Trust | x5449 | Store Deposit |
| Claire's Boutiques, Inc. | Synovus Bank | x7003 | Store Deposit |

| Claire's Boutiques, Inc. | American National Bank | x0578 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | Bancfirst | x5936 | Store Deposit |
| Claire's Boutiques, Inc. | Hankcock Bank | x0277 | Store Deposit |
| Claire's Boutiques, Inc. | Desert Community Bank | x4701 | Store Deposit |
| Claire's Boutiques, Inc. | Flagstar Bank | x9759 | Store Deposit |
| Claire's Boutiques, Inc. | Community Bank | x4967 | Store Deposit |
| Claire's Boutiques, Inc. | Community Bank | x5899 | Store Deposit |
| Claire's Boutiques, Inc. | Plains Capital Bank | x4315 | Store Deposit |
| Claire's Boutiques, Inc. | Premier Bank | x0910 | Store Deposit |
| Claire's Boutiques, Inc. | Tri Counties Bank | x3379 | Store Deposit |
| Claire's Boutiques, Inc. | First Western Bank & Trust | x8841 | Store Deposit |
| Claire's Boutiques, Inc. | S&T Bank | x5936 | Store Deposit |
| Claire's Boutiques, Inc. | S&T Bank | x1553 | Store Deposit |
| Claire's Boutiques, Inc. | Bremer Bank | x4864 | Store Deposit |
| Claire's Boutiques, Inc. | Bremer Bank | x4082 | Store Deposit |
| Claire's Boutiques, Inc. | Bremer Bank | x7448 | Store Deposit |
| Claire's Boutiques, Inc. | Peoples Bank | x1315 | Store Deposit |
| Claire's Boutiques, Inc. | First National Bank Of Ottawa | x3158 | Store Deposit |
| Claire's Boutiques, Inc. | Nbc | x2461 | Store Deposit |
| Claire's Boutiques, Inc. | Kirkwood Bank & Trust | x6401 | Store Deposit |
| Claire's Boutiques, Inc. | International Bank Of Commerce | x3121 | Store Deposit |
| Claire's Boutiques, Inc. | First Bank Kansas | x1585 | Store Deposit |
| Claire's Boutiques, Inc. | Rio Grande Bank | x2906 | Store Deposit |
| Claire's Boutiques, Inc. | United Community Bank | x5319 | Store Deposit |

| Claire's Boutiques, Inc. | State Bank | x5915 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | F & M Bank | x2574 | Store Deposit |
| Claire's Boutiques, Inc. | Commerce Bank | x5315 | Store Deposit |
| Claire's Boutiques, Inc. | Community National Bank & Trust | x1092 | Store Deposit |
| Claire's Boutiques, Inc. | Franklin Savings Bank | x3662 | Store Deposit |
| Claire's Boutiques, Inc. | Premier Bank Of Minnesota | x1694 | Store Deposit |
| Claire's Boutiques, Inc. | Umpqua Bank | x6368 | Store Deposit |
| Claire's Boutiques, Inc. | Woodforest | x9224 | Store Deposit |
| Claire's Boutiques, Inc. | First Horizon Bank | x0778 | Store Deposit |
| Claire's Boutiques, Inc. | First Horizon Bank | x0779 | Store Deposit |
| Claire's Boutiques, Inc. | First Citizens Bank & Trust Co | x2782 | Store Deposit |
| Claire's Boutiques, Inc. | Hickory Point Bank | x0213 | Store Deposit |
| Claire's Boutiques, Inc. | Arvest Bank | x9801 | Store Deposit |
| Claire's Boutiques, Inc. | Citizens National Bank | x3627 | Store Deposit |
| Claire's Boutiques, Inc. | Ameris Bank | x0887 | Store Deposit |
| Claire's Boutiques, Inc. | Central Bank Boone County | x7363 | Store Deposit |
| Claire's Boutiques, Inc. | TD Bank | x3879 | Store Deposit |
| Claire's Boutiques, Inc. | Great Southern Bank | x1823 | Store Deposit |
| Claire's Boutiques, Inc. | Great Southern Bank | x3643 | Store Deposit |
| Claire's Boutiques, Inc. | German American Bank | x9495 | Store Deposit |
| Claire's Boutiques, Inc. | Border Bank | x5905 | Store Deposit |
| Claire's Boutiques, Inc. | Bancorpsouth | x5223 | Store Deposit |
| Claire's Boutiques, Inc. | Hancock Bank | x3121 | Store Deposit |
| Claire's Boutiques, Inc. | Truist Bank | x3672 | Store Deposit |

| Claire's Boutiques, Inc. | Truist Bank | x3680 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | United Bank | x5676 | Store Deposit |
| Claire's Boutiques, Inc. | Hancock Bank | x7983 | Store Deposit |
| Claire's Boutiques, Inc. | Park National Bank | x8189 | Store Deposit |
| Claire's Boutiques, Inc. | BOKF, NA dba BOKFinancial | x0366 | Store Deposit |
| Claire's Boutiques, Inc. | BOKF, NA dba BOKFinancial | x0377 | Store Deposit |
| Claire's Boutiques, Inc. | Banknorth | x1498 | Store Deposit |
| Claire's Boutiques, Inc. | Bancorpsouth | x3107 | Store Deposit |
| Claire's Boutiques, Inc. | Regions Bank | x2124 | Store Deposit |
| Claire's Boutiques, Inc. | Northway Bank | x7521 | Store Deposit |
| Claire's Boutiques, Inc. | Hawthorn Bank | x1217 | Store Deposit |
| Claire's Boutiques, Inc. | Dubuque Bank & Trust | x1531 | Store Deposit |
| Claire's Boutiques, Inc. | Bank Champaign | x6513 | Store Deposit |
| Claire's Boutiques, Inc. | Core First Bank & Trust | x0693 | Store Deposit |
| Claire's Boutiques, Inc. | Core First Bank & Trust | x0707 | Store Deposit |
| Claire's Boutiques, Inc. | Truist Bank | x8268 | Store Deposit |
| Claire's Boutiques, Inc. | Bank Champaign | x0459 | Store Deposit |
| Claire's Boutiques, Inc. | Nbt Bank | x2636 | Store Deposit |
| Claire's Puerto Rico Corp. | Banco Popular of Puerto Rico | x4300 | Store Deposit |
| Claire's Boutiques, Inc. | County Bank | x4001 | Store Deposit |
| Claire's Boutiques, Inc. | First Mid Bank & Trust | x8309 | Store Deposit |
| Claire's Boutiques, Inc. | 1st Summit Bank | x0552 | Store Deposit |
| Claire's Boutiques, Inc. | South State Bank | x5812 | Store Deposit |
| Claire's Boutiques, Inc. | First United Bank & Trust | x6101 | Store Deposit |

| Claire's Boutiques, Inc. | BMO Harris Bank | x1300 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | Premier Bank | x5137 | Store Deposit |
| Claire's Boutiques, Inc. | Coast Central | x5864 | Store Deposit |
| Claire's Boutiques, Inc. | City National Bank | x1619 | Store Deposit |
| Claire's Boutiques, Inc. | US Bank | x0998 | Store Deposit |
| Claire's Boutiques, Inc. | US Bank | x2853 | Store Deposit |
| Claire's Boutiques, Inc. | US Bank | x2858 | Store Deposit |
| Claire's Boutiques, Inc. | JP Morgan Chase | x5637 | Store Deposit |
| Claire's Boutiques, Inc. | JP Morgan Chase | x5629 | Store Deposit |
| Claire's Boutiques, Inc. | Wrentham Bank | x2933 | Store Deposit |
| Claire's Boutiques, Inc. | First American Bk | x0102 | Store Deposit |
| Claire's Boutiques, Inc. | United Bank | x9111 | Store Deposit |
| Claire's Boutiques, Inc. | Huntington National Bank | x0304 | Store Deposit |
| Claire's Boutiques, Inc. | Huntington National Bank | x0948 | Store Deposit |
| Claire's Boutiques, Inc. | South State Bank | x6752 | Store Deposit |
| Claire's Boutiques, Inc. | Exb Exchange Bank | x4462 | Store Deposit |
| Claire's Boutiques, Inc. | Bank Financial | x0830 | Store Deposit |
| Claire's Boutiques, Inc. | Bangor Saving | x7583 | Store Deposit |
| Claire's Boutiques, Inc. | TD Bank | x3301 | Store Deposit |
| Claire's Boutiques, Inc. | First Farmers Bank & Trust | x0433 | Store Deposit |
| Claire's Boutiques, Inc. | American Bank | x0177 | Store Deposit |
| Claire's Boutiques, Inc. | Bank Of The West | x2207 | Store Deposit |
| Claire's Boutiques, Inc. | TD Bank | x5418 | Store Deposit |
| Claire's Boutiques, Inc. | Arvest Bank | x5369 | Store Deposit |

| | | | |
|---|---|---|---|
| Claire's Boutiques, Inc. | American Bank Of Mt | x2801 | Store Deposit |
| Claire's Boutiques, Inc. | Inwood National Bank | x9514 | Store Deposit |
| Claire's Boutiques, Inc. | Citizens National Bank | x2597 | Store Deposit |
| Claire's Boutiques, Inc. | Trustco Bank | x5920 | Store Deposit |
| Claire's Boutiques, Inc. | Trustco Bank | x8605 | Store Deposit |
| Claire's Boutiques, Inc. | Regions Bank | x0149 | Store Deposit |
| Claire's Boutiques, Inc. | Regions Bank | x0432 | Store Deposit |
| Claire's Boutiques, Inc. | First Community Bank | x0513 | Store Deposit |
| Claire's Boutiques, Inc. | Key Bank | x6133 | Store Deposit |
| Claire's Boutiques, Inc. | Key Bank | x8188 | Store Deposit |
| Claire's Boutiques, Inc. | Key Bank | x0162 | Store Deposit |
| Claire's Boutiques, Inc. | First Financial Bank | x8093 | Store Deposit |
| Claire's Boutiques, Inc. | Citizens Bank | x5511 | Store Deposit |
| Claire's Boutiques, Inc. | Texas Bank And Trust | x4594 | Store Deposit |
| Claire's Boutiques, Inc. | Wells Fargo | x0492 | Store Deposit |
| Claire's Boutiques, Inc. | First Financial Bank | x6850 | Store Deposit |
| Claire's Boutiques, Inc. | Vectra Bank | x5449 | Store Deposit |
| Claire's Boutiques, Inc. | First Bankers Trust Co | x1723 | Store Deposit |
| Claire's Boutiques, Inc. | Wells Fargo | x6312 | Store Deposit |
| Claire's Boutiques, Inc. | Star Financial Bank | x0623 | Store Deposit |
| Claire's Boutiques, Inc. | Security Service | x2071 | Store Deposit |
| Claire's Boutiques, Inc. | TD Bank | x9464 | Store Deposit |
| Claire's Boutiques, Inc. | BMO Harris Bank | x7025 | Store Deposit |
| Claire's Boutiques, Inc. | Wells Fargo | x3267 | Store Deposit |

| Claire's Boutiques, Inc. | First Financial Bank | x7801 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | BMO Harris Bank | x1449 | Store Deposit |
| Claire's Boutiques, Inc. | WesBanco Bank | x1669 | Store Deposit |
| Claire's Boutiques, Inc. | Claire's European Services Ltd | x1068 | Store Deposit |
| Claire's Boutiques, Inc. | 1ST BANK | x5615 | Store Deposit |
| Claire's Boutiques, Inc. | LAKE REGION BANK | x4145 | Store Deposit |
| Claire's Boutiques, Inc. | LEA COUNTY STATE BANK | x0681 | Store Deposit |
| Claire's Boutiques, Inc. | Valley National Bank | x9198 | Store Deposit |
| Claire's Boutiques, Inc. | INTERNATIONAL BANK OF COMMERCE | x8301 | Store Deposit |
| Claire's Boutiques, Inc. | INTERNATIONAL BANK OF COMMERCE | x2801 | Store Deposit |
| Claire's Boutiques, Inc. | EASTERN BANK | x5025 | Store Deposit |
| Claire's Boutiques, Inc. | Citizens Bank | x4126 | Store Deposit |
| Claire's Boutiques, Inc. | Citizens Bank | x4102 | Store Deposit |
| Claire's Boutiques, Inc. | STAR FINANCIAL BANK | x0859 | Store Deposit |
| Claire's Boutiques, Inc. | SIMMONS BANK | x4172 | Store Deposit |
| Claire's Boutiques, Inc. | JP Morgan Chase | x6929 | Store Deposit |
| Claire's Boutiques, Inc. | First Hawaiian Bank | x3106 | Store Deposit |
| Claire's Boutiques, Inc. | NBT BANK | x0966 | Store Deposit |
| Claire's Boutiques, Inc. | Fifth Third Bank | x8945 | Store Deposit |
| Claire's Boutiques, Inc. | CITIZENS NATIONAL BANK | x0759 | Store Deposit |
| Claire's Boutiques, Inc. | FARMERS STATE BANK | x0869 | Store Deposit |
| Claire's Boutiques, Inc. | TD Bank | x3131 | Store Deposit |
| Claire's Boutiques, Inc. | Commerce Bank | x8526 | Store Deposit |
| Claire's Boutiques, Inc. | Bank of Hawaii | x6950 | Store Deposit |

| Claire's Boutiques, Inc. | Bank of Hawaii | x6831 | Store Deposit |
|---|---|---|---|
| Claire's Boutiques, Inc. | CORNERSTONE BANK | x0579 | Store Deposit |
| Claire's Boutiques, Inc. | Bank of America | x3821 | Store Deposit |
| Claire's Boutiques, Inc. | Bank of America | x3834 | Store Deposit |
| Claire's Boutiques, Inc. | CAPE COD FIVE CENTS BANK | x0841 | Store Deposit |
| Claire's Boutiques, Inc. | M & T Bank | x2409 | Store Deposit |
| Claire's Boutiques, Inc. | PNC Bank | x8143 | Store Deposit |
| Claire's Boutiques, Inc. | PNC Bank | x8151 | Store Deposit |
| Claire's Boutiques, Inc. | PNC Bank | x0728 | Store Deposit |
| Claire's Boutiques, Inc. | CAMDEN NATIONAL BANK | x3839 | Store Deposit |
| Claire's Boutiques, Inc. | FIRST INTERSTATE BANK | x0156 | Store Deposit |
| Claire's Boutiques, Inc. | FIRST MID BANK & TRUST | x6410 | Store Deposit |
| Claire's Boutiques, Inc. | BANK OF THE WEST | x1280 | Store Deposit |
| Claire's Boutiques, Inc. | M & T Bank | x8917 | Store Deposit |
| Claire's Boutiques, Inc. | UMB Bank | x8744 | Store Deposit |
| Claire's Boutiques, Inc. | Fifth Third Bank | x3163 | Store Deposit |
| Claire's Boutiques, Inc. | Fifth Third Bank | x4350 | Store Deposit |
| Claire's Boutiques, Inc. | PNC Bank | x9868 | Other |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x3119 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x6217 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x7517 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x2716 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x6411 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x2910 | Non-Debtor Account |

| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x2813 | Non-Debtor Account |
|---|---|---|---|
| Claire's China Services | Citibank N.A. | x5911 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Scotia Bank | x7515 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canadian Imperial Bank of Commerce (CIBC) | x3011 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Bank of Montreal | x9103 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Canada Trust TD | x6490 | Non-Debtor Account |
| Claire's Stores Canada Corp. | Royal Bank | x3300 | Non-Debtor Account |
| Claire's European Services Ltd | HSBC Bank Plc | x0935 | Non-Debtor Account |
| RSI International Limited | HSBC Bank Plc | x6274 | Non-Debtor Account |

**File a First Day Motion:**

[25-11454 Claire's Holdings LLC](#)

| | | |
|---|---|---|
| Type: bk | Chapter: 11 v | Office: 1 (Delaware) |
| Assets: y | Case Flag: VerifDue, PlnDue, DsclsDue | |

## U.S. Bankruptcy Court

## District of Delaware

Notice of Electronic Filing

The following transaction was received from Zachary I Shapiro entered on 8/6/2025 at 4:41 AM EDT and filed on 8/6/2025

**Case Name:**       Claire's Holdings LLC
**Case Number:**     [25-11454](#)
**Document Number:** [13](#)

**Docket Text:**
Motion Regarding Chapter 11 First Day Motions *(Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate the Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Continue to Perform Intercompany Transactions, and (II) Granting Administrative Expense Status to Postpetition Intercompany Transactions, and (III) Granting Related Relief)* Filed By Claire's Holdings LLC (Shapiro, Zachary)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Claire's - Cash Management Motion.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=8/6/2025] [FileNumber=19359081-0] [6f90c12112b25383ebd034dacdb739160547219e573e3c1eb3c3d2b493323f61eba1 6bd8526d57228e29a80aef6a55a0b0e732b687b4b51cb6c5fb7b42851469]]

**25-11454 Notice will be electronically mailed to:**

Zachary I Shapiro on behalf of Debtor Claire's Holdings LLC
shapiro@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com;rebecca--speaker-6328@ecf.pacerpro.com

U.S. Trustee
USTPRegion03.WL.ECF@USDOJ.GOV

**25-11454 Notice will not be electronically mailed to:**