## EXHIBIT A

### Motion

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS
TO (A) MAINTAIN INSURANCE, SURETY COVERAGE, AND
LETTERS OF CREDIT ENTERED INTO PREPETITION AND
SATISFY PREPETITION OBLIGATIONS RELATED THERETO,
(B) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE
INSURANCE POLICIES, SURETY BONDS, AND LETTERS OF CREDIT,
(C) CONTINUE TO PAY BROKER FEES, AND (D) HONOR AND RENEW THEIR
PREMIUM FINANCING AGREEMENT, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state

as follows in support of this motion:[2]

<u>**Relief Requested**</u>

1.    The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **<u>Exhibit A</u>** and **<u>Exhibit B</u>** (the "<u>Interim Order</u>" and "<u>Final Order</u>," respectively),

(a) authorizing, but not directing, the Debtors to (i) maintain coverage under the Insurance Policies,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances supporting the motion, is set forth in the *Declaration of Chris Cramer, Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer of Claire's Holdings LLC and Certain of Its Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* filed contemporaneously herewith (the "<u>First Day Declaration</u>"). Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

Surety Bonds, and Letters of Credit (each as defined herein) and pay any related obligations, (ii) renew, amend, supplement, extend, or purchase insurance, surety coverage, and letters of credit, in the ordinary course of business and consistent with prepetition practice, and (iii) continue to pay certain broker fees, and (iv) honor and renew their Premium Financing Agreement (as defined herein) entered into prepetition, satisfy obligations related thereto, and enter into premium financing agreements on a postpetition basis in the ordinary course of business and consistent with prepetition practice, and (b) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 364(c), 1107(a), 1108, and 1112(b)(4)(c) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 9013-1.

## Background

5.      On August 6, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## The Insurance Policies and Related Payment Obligations

6.      In the ordinary course of business, the Debtors maintain 43 insurance policies listed on **Exhibit C** attached hereto (each, an "Insurance Policy" and collectively, the "Insurance Policies")[3] that are administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers").  The Insurance Policies provide the Debtors and non-Debtor entities[4] coverage for, among other things, the Debtors' property, general liability, employee benefits liability, foreign liability, automobile liability, cyber liability, umbrella coverage, crime, and

---

[3]   The descriptions of the Insurance Policies set forth in this motion constitute a summary only.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions in this motion.  Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted Insurance Policies from **Exhibit C**.  The Debtors request authority, but not direction, to honor existing Insurance Policies and renew Insurance Policies, as applicable, regardless of whether the Debtors inadvertently failed to include a particular Insurance Policy on **Exhibit C**, and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used herein and in the Interim Order and Final Order.

[4]   In some instances, the Debtors are insured under an insurance policy that also provides coverage to a non-Debtor entity as well.  Intercompany transactions are described, and relief is requested, in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate the Cash Management System (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* (the "Cash Management Motion"), filed contemporaneously herewith.

directors' and officers' liability. The Insurance Policies generally are one year in length and renew at various times throughout each year.

7.        The Debtors' ability to maintain the Insurance Policies, to renew, supplement, and modify the same, and to enter into new insurance policies as needed in the ordinary course of business, is essential to preserving the value of the Debtors' estates. The Insurance Policies are also essential to the ongoing operation of the Debtors' business. Moreover, in many instances, insurance coverage is required by statutes, rules, regulations, and contracts that govern the Debtors' commercial activities, including the Bankruptcy Code and the *Region 3 Operating Guidelines for Chapter 11 Cases* (the "U.S. Trustee Guidelines") published by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), which requires, among other things, that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, the Debtors seek authority, but not direction, to maintain the Insurance Policies, to pay related prepetition obligations, to renew, supplement, or modify the Insurance Policies as needed, and to enter into new insurance policies in the ordinary course of business and consistent with past practice.

8.        The annual premiums for the Insurance Policies total approximately $2.4 million in the aggregate for the 2025 term, not including applicable deductibles.[5] Certain premiums for

---

[5] Some of the Insurance Policies require the Debtors to pay a per-incident deductible (collectively, "Deductibles"). Generally, if a claim is made against such Insurance Policies, the applicable Insurance Carrier will administer the claim and make payments in connection therewith in accordance with the terms of such policy, and the Insurance Carrier will have a claim against the Debtors in the amount of the applicable Deductible. Alternatively, certain of the Insurance Policies use self-insured retentions on a per-claim basis (collectively, the "SIRs") instead of Deductibles. If a claim is made under such Insurance Policies, the Debtors must make payments in the first instance (whether related to defense costs or on account of the underlying liability) up to the amount of the SIR and, once the Debtors have made payments to satisfy such amount, the carrier becomes obligated to cover remaining costs in accordance with the terms of such policy. Out of an abundance of caution, the Debtors seek authority, but not direction, to pay all prepetition amounts that may be due and owing on account of the Deductibles and to continue honoring all payment obligations under the Deductibles in the ordinary course of business to ensure uninterrupted coverage thereunder.

the Insurance Policies are paid in monthly installments pursuant to a Premium Financing Agreement. Other Insurance Policy premiums are paid in a single lump sum shortly after the Insurance Policy inception or renewal date. The Debtors pay certain premiums through the Broker (as defined below). The Debtors believe that, as of the Petition Date, there are no outstanding premiums due on account of the Insurance Policies.

9.     By this motion, the Debtors seek authority, but not direction, to pay any prepetition amounts due and owing in connection with the Insurance Policies in the ordinary course of business and consistent with prepetition practice. The Debtors further seek authority, but not direction, to enter into new Insurance Policies, including ancillary policies, in the ordinary course of business on a postpetition basis and consistent with prepetition practices, without further Court approval, to ensure uninterrupted coverage.

### The Debtors' Broker and Claims Administrator

10.     The Debtors employ AON Risk Services Inc. (the "Broker") to assist them with the procurement and negotiation of the majority of the Insurance Policies.[6] The Broker, among other things: (a) assists the Debtors in obtaining comprehensive insurance coverage for their operations in a cost-effective manner; (b) manages renewal data; and (c) provides ongoing support throughout the applicable policy periods for the Insurance Policies (the "Broker Services"). In exchange for these services, the Debtors pay the Broker commissions, which are typically incorporated into the premiums of the Insurance Policies and paid at the same time. Thus, the Debtors believe they do not currently owe any amounts to the Broker on account of the Broker Services. However, out of an abundance of caution and to ensure uninterrupted coverage under the Insurance Policies, the

---

[6]     Prior to the Petition Date, the Debtors engaged Cobbs Allen Capital, LLC d/b/a CAC Specialty to place certain of the Directors' and Officers' Liability Insurance, Employment Practices Liability Insurance, and Fiduciary Insurance policies.

Debtors seek authority, but not direction, to pay any prepetition amounts owed to the Broker on account of the Broker Services and to continue to honor their obligations to the Broker as they come due in the ordinary course of business on a postpetition basis consistent with past practice.

11.    The Debtors also employ Gallagher Bassett (the "Claims Administrator") to efficiently administer processing and payment by the Debtors of general liability, workers compensation, and auto liability policies and claims (the "Claims Administration Services"). The Debtors pay the Claims Administrator a monthly fee for its services. As of the Petition Date, the Debtors do not owe any outstanding premiums to the Claims Administrator. The Debtors believe that the continuation of the Claims Administration Services is necessary to ensure the Debtors' administration of the applicable Insurance Policies on a postpetition basis. Accordingly, the Debtors seek authority, but not direction, to pay any prepetition amounts owed to the Claims Administrator on account of the Claims Administration Services and to continue to honor their obligations to the Claims Administrator as they come due in the ordinary course of business on a postpetition basis consistent with past practice.

**The Surety Bonds**

12.    In the ordinary course of business, the Debtors are required to provide surety bonds or other forms of credit support (collectively, the "Surety Bonds") to certain third parties, often governmental units, such as U.S. Customs and Border Protection, or other public agencies, to secure the payment or performance of certain obligations (the "Surety Bond Program"). Further, the Debtors are required to maintain the Surety Bonds under certain state law in order to lawfully conduct their business and operations in the applicable jurisdictions. To preserve value during these chapter 11 cases, the Debtors must maintain the existing Surety Bond Program by providing the sureties (each, a "Surety" and collectively, the "Sureties") with collateral, renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of business, and

executing other agreements, as appropriate, in connection with the Surety Bond Program. Failure to provide, maintain, or timely replace the Surety Bonds will interfere with the Debtor's postpetition operations and ability to effectuate their chapter 11 objectives. As of the Petition Date, the Debtors maintain five Surety Bonds. The total annual premiums for the Surety Bonds are approximately $105,000 in the aggregate.[7] A schedule of the Surety Bonds is attached hereto as **Exhibit D**.

13.    The issuance of the Surety Bonds lessens the risk of the Debtors' nonperformance or nonpayment by providing that the Surety will perform or tender payment. Unlike an insurance policy, if a surety incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal. To continue their business operations during these chapter 11 cases, the Debtors must be able to provide financial assurance to governmental units and public agencies as well as certain utility providers. In turn, the Debtors must be able to maintain the existing Surety Bond Program, including payment of the Surety Premiums, providing collateral, renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of business, and executing other agreements as needed, in connection with the Surety Bond Program (the "Surety Obligations"). Moreover, the Debtors' ability to maintain the Surety Bonds, to renew, supplement, and modify the same as needed, and to enter into new surety bonds as needed is essential to preserving the value of the Debtors' estates.

14.    The Surety Premiums generally are assessed on an annual basis and are paid by the Debtors when the Surety Bonds are issued and upon each renewal. As of the Petition Date, the Debtors do not believe that they owe any outstanding amounts on account of the Surety Premiums. Nevertheless, out of an abundance of caution, to ensure uninterrupted coverage in connection with

---

[7]    The Surety Bonds are renewed annually. The total annual premium may be adjusted as they are renewed.

the Surety Bonds, the Debtors seek authority to honor any prepetition Surety Obligations, to renew, amend, supplement, or modify the Surety Bonds as needed, and to enter into new surety bonds in the ordinary course of business consistent with past practice.

## Letters of Credit

15.     The Debtors also maintain letters of credit in connection with certain obligations related to lease performance, regulatory requirements, utilities, customs, and insurance-related obligations (collectively, the "Letters of Credit").  As of the Petition Date, the Debtors have five outstanding letters of credit, issued by Citibank and JP Morgan Chase Bank, in an aggregate amount of approximately $5.7 million.  A schedule of the Letters of Credit is attached hereto as **Exhibit E**.

16.     The Debtors must maintain the Letters of Credit to operate their business and effectuate their chapter 11 objectives.  Accordingly, the Debtors also seek authority, but not direction, to honor any outstanding prepetition amounts owed in connection with the Letters of Credit, to renew, supplement, or modify the Letters of Credit as needed, and to enter into new letters of credit in the ordinary course of business and consistent with prepetition practice.

## Premium Financing Agreement

17.     In the ordinary course, the Debtors finance the premium payments for certain of their Insurance Policies (collectively, the "Financed Policies"), pursuant to a premium financing agreement (the "Premium Financing Agreement") with AFCO Direct ("AFCO").  The Premium Financing Agreement allows the Debtors to spread an insurance premium over the term of the policy rather than paying the entire premium upfront.  Specifically, as summarized in the schedule

attached hereto as **Exhibit F**, the Debtors are currently party to one Premium Financing Agreement with AFCO.

18.     Continuing to perform under the Premium Finance Agreement in the ordinary course of business on a postpetition basis is essential for the payment and maintenance of the Financed Policies and is in the best interest of the Debtors' estates.  In light of their financial circumstances, alternative insurance premium finance companies may not be willing to provide insurance premium financing to the Debtors on attractive market terms on a postpetition basis.  As a result, it is critical for the Debtors to perform under the existing Premium Finance Agreement.

19.     As of the Petition Date, the Debtors owe approximately $520,000 in outstanding obligations under the Premium Financing Agreement, of which $105,000 will come due prior to the final hearing.  The Debtors seek the authority, but not direction, to pay related prepetition obligations under the Premium Financing Agreement in the ordinary course of business and consistent with prepetition practice to ensure uninterrupted coverage, to pay related postpetition obligations due in the ordinary course, and to enter into premium financing agreements in the ordinary course of business and consistent with prepetition practice on a postpetition basis.

## Basis for Relief

**I.      The Bankruptcy Code and U.S. Trustee Guidelines Require the Debtors to Maintain Insurance Coverage and Satisfy Their Insurance Obligations.**

20.     The Debtors' existing Insurance Policies provide a comprehensive range of protection of the Debtors' business and assets.  Therefore, it is essential that the Debtors' Insurance Program continues in full force and effect during the course of these chapter 11 cases. Section 1112(b) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage of

the Insurance Policies is required by various state and federal regulations, laws, certain credit agreements, and contracts that govern the Debtors' commercial activities.

21.     Further, the U.S. Trustee Guidelines require that a debtor in possession under chapter 11 of the Bankruptcy Code maintain insurance and pay all insurance premiums as they come due.  *See* U.S. Trustee Guidelines at III(A).  The U.S. Trustee Guidelines further require, absent an order of the court otherwise, a debtor in possession under chapter 11 of the Bankruptcy Code to maintain (if applicable) casualty insurance, workers' compensation insurance, and general liability insurance along with any other insurance customary in such debtors' business. *Id.* at III(B).  The relief requested is necessary to ensure that the Debtors comply with their obligations under the Bankruptcy Code, applicable law, and the U.S. Trustee Guidelines.

## II.     The Debtors Should Be Authorized to Satisfy Prepetition Obligations Required under the Insurance Policies, the Surety Bonds, the Premium Financing Agreement, and the Letters of Credit and to Continue Honoring Such Obligations Postpetition.

22.     The Debtors believe that they have authority to the continue the Insurance Policies, the Surety Bonds Program, and the Letters of Credit, and renew, amend, supplement, extend, purchase, or enter into new Insurance Policies, Premium Financing Agreements, Surety Bonds, and Letters of Credit, and maintain the Insurance Policies, Surety Bonds, and the Letters of Credit in the ordinary course of business during these chapter 11 cases.  See 11 U.S.C. § 363(c) ("[T]he trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.").  Nevertheless, the Debtors seek such relief out of an abundance of caution given the importance of the Insurance Policies, Surety Bonds, Premium Financing Agreement, and the Letters of Credit to the protection of their estates.

23.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g.*, *In re Just for Feet, Inc.*,

242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  Several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims.

24.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor in possession to 'protect and preserve the estate, including an operating business' going-concern value."  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

25.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent

equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825–26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

26.     Failure to maintain the Insurance Policies, the Surety Bonds, and the Letters of Credit could have a detrimental impact on the Debtors' ability to effectuate their sale and monetization efforts and the value of their estates. The non-payment of any Insurance Premiums, Broker Fees, or related fees under the Insurance Policies, Premium Financing Agreement, Surety Bonds, or Letters of Credit could result in one or more of the Insurance Carriers or Sureties terminating or declining to renew the Insurance Policies or Surety Bonds or refusing to enter into

new insurance policies, premium financing agreements, or surety bonds with the Debtors.  Any interruption in coverage would expose the Debtors to a number of risks, including potential (a) direct liability of the payment of claims that otherwise would have been covered under the Insurance Policies, (b) material costs and other losses that otherwise would have been reimbursed, (c) inability to obtain similar insurance coverage on terms as equally favorable as the present coverage, (d) higher costs for reestablishing lapsed Insurance Policies or obtaining new insurance coverage, and (e) regulatory exposure in the event the Debtors are required to maintain certain insurance and surety coverage to continue their operations.  If any of these situations arise, the Debtors and their advisors would be forced to address these matters, thus expending limited time and resources.  Accordingly, the relief requested herein is necessary to allow the Debtors to maintain appropriate insurance coverage, Surety Bonds, and Letters of Credit to maximize the value of their estates and effectuate the Debtors' chapter 11 objectives.

27.     Courts in this district have granted relief similar to the relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code.  *See, e.g.*, *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. July 22, 2025 (authorizing debtors to continue their current insurance policies, pay related prepetition obligations, and renew, supplement, modify, or purchase insurance and surety coverage); *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (same); *Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 13, 2024) (same).[8]

---

[8]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

### III.    The Court Should Authorize the Debtors to Honor and Renew the Premium Financing Agreement.

28.    Payment of prepetition premiums and amounts owing under the Premium Financing Agreement is necessary and appropriate and may be authorized under sections 105(a) and 363(b) of the Bankruptcy Code. Moreover, pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. *See, e.g.*, *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co.*, 47 B.R. 444, 448–49 (D. Colo. 1985) (authorizing an interim financing agreement where the debtor's business judgment indicated financing was necessary and reasonable for benefit of the estate).  To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis.  *See In re Snowshow Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986).

29.    Continuing to perform under the Premium Financing Agreements on a postpetition basis is in the best interests of the Debtors' estates.  In light of their financial circumstances, alternative insurance premium finance companies may not be willing to provide insurance premium financing to the Debtors on attractive market terms on a postpetition basis.  As a result, it is critical for the Debtors to continue to perform under their existing Premium Financing Agreement.  The Debtors also seek express authority to renew or enter into new premium financing agreements in the ordinary course of business.

30.    Courts in this district recognize the importance of a debtor honoring obligations under and renewing premium financing agreements and have granted relief similar to the relief

requested in this motion. *See, e.g.*, *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (authorizing the debtors to honor obligations under and renew premium financing agreements); *In re Liberated Brands LLC,* No. 25-10168 (JKS) (Bankr. D. Del. Feb 28, 2025) (same); *In re Accuride Corp.,* No. 24-12289 (JKS) (Bankr. D. Del. Nov. 13, 2024) (same); *In re SunPower Corp.,* No. 24-11649 (CTG) (Bank. D. Del. Aug 29, 2024) (same); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. May 18, 2020) (same).

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

31.      The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored.  Therefore, the Debtors request authority to authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

32.      Bankruptcy Rule 6003 empowers a court to grant certain relief within the first 21 days after the petition date only to the extent that relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a).  For the reasons set forth above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations.  Failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm.  The requested relief is necessary for the Debtors to operate their business in a

value-maximizing manner for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and request that the Court grant the requested relief.

## **Reservation of Rights**

33.     Notwithstanding anything to the contrary herein, nothing contained in this motion or any actions taken pursuant to any order granting the relief requested by this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount, validity, or priority of, or basis for, any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens;

(j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

34.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **Notice**

35.     The Debtors will provide notice of this motion to the following parties or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) the Priority Term Loan Agent; (c) the Existing Term Loan Agent; (d) the Agent under the ABL Facility; (e) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (f) the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; (i) the Insurance Carriers; (j) the Sureties; (k) the Broker; (l) the Claims Administrator; (m) AFCO; (n) the issuers of the Letters of Credit; and (o) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

36.    No prior request for the relief sought in this motion has been made to this or any

other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  August 6, 2025
Wilmington, Delaware

/s/ Zachary I. Shapiro

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    defranceschi@rlf.com
heath@rlf.com
shapiro@rlf.com
carlisle@rlf.com
meehan@rlf.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Allyson B. Smith (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    joshua.sussberg@kirkland.com
allyson.smith@kirkland.com

- and -

Alexandra F. Schwarzman, P.C. (*pro hac vice* pending)
Robert A. Jacobson (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    alexandra.schwarzman@kirkland.com
rob.jacobson@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. [●]** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO (A) MAINTAIN INSURANCE, SURETY COVERAGE, AND
LETTERS OF CREDIT ENTERED INTO PREPETITION AND
SATISFY PREPETITION OBLIGATIONS RELATED THERETO,
(B) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE
INSURANCE POLICIES, SURETY BONDS, AND LETTERS OF CREDIT,
(C) CONTINUE TO PAY BROKER FEES, AND (D) HONOR AND RENEW THEIR
PREMIUM FINANCING AGREEMENT, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for the entry of an interim order (this "<u>Interim Order</u>"), (a) authorizing, but not directing, the Debtors to (i) maintain coverage under the Insurance Policies, Surety Bonds, and Letters of Credit and pay any related obligations with respect thereto, (ii) renew, amend, supplement, extend, or purchase insurance, surety coverage, and letters of credit, in the ordinary course of business and consistent with prepetition practice, (iii) continue to pay certain broker fees, and (iv) honor and renew their Premium Financing Agreement entered into prepetition, satisfy obligations related thereto, and enter into premium financing agreements in the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

ordinary course of business and consistent with prepetition practice on a postpetition basis, (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      Any objections to the entry of this Interim Order, to the extent not withdrawn or settled, are overruled.

3.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2025, at__:__ .m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2025

and shall be served on: (a) the Debtors, Claire's Holdings LLC, 2400 West Central Road, Hoffman Estates, Illinois 60192, Attn.: Brendan McKeough, Executive Vice President, Chief Legal Officer, and Secretary (brendan.mckeough@claires.com) and 3 SW 129th Avenue, Pembroke Pines, Florida 33027, Attn: Michele Reilly, Assistant Secretary (michele.reilly@claires.com); (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Allyson B. Smith (allyson.smith@kirkland.com) and 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Alexandra F. Schwarzman, P.C. (alexandra.schwarzman@kirkland.com) and Robert A. Jacobson (rob.jacobson@kirkland.com) and (ii) Richards, Layton & Finger, P.A., 920 N King Street, Wilmington, Delaware 19801, Attn: Paul N. Heath (heath@rlf.com) and Zachary I. Shapiro (shapiro@rlf.com); (c) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov); (d) counsel to the Prepetition Priority Term Loan Agent and Existing Prepetition Term Loan Agent, Ankura Trust Company, LLC, Cahill Gordon & Reindell LLP, Attn.: Joel Moss (JMoss@cahill.com), Amit Trehan (ATrehan@cahill.com), and Sean Tierney (STierney@cahill.com); (e) counsel to the Prepetition ABL Agent, JPMorgan Chase Bank, N.A., Simpson Thacher & Bartlett LLP, Attn.: Elisha D. Graff (egraff@stblaw.com) and Zachary J. Weiner (zachary.weiner@stblaw.com) and Potter Anderson & Corroon LLP, Attn: L. Katherine Good (kgood@potteranderson.com) and Jeremy Ryan (jryan@potteranderson.com); and (f) any statutory committee appointed in these chapter 11 cases.

4.    The Debtors are authorized, but not directed, to: (a) continue and maintain the Insurance Policies, Surety Bonds, and Letters of Credit, and pay any related prepetition or postpetition amounts or obligations in the ordinary course of business and consistent with

prepetition practice, including any amounts or obligations that may be owed to the Broker, the Claims Administrator, or AFCO; *provided* that such payments shall not exceed $250,000 in the aggregate pending entry of the Final Order and (b) renew, amend, supplement, extend, enter into, or purchase insurance policies, premium financing agreements, surety bonds, and letters of credit, in each case, to the extent that the Debtors determine that such action is in the best interest of their estates.

5.      The Debtors are authorized, but not directed, to continue to honor the terms of the Premium Financing Agreement and pay Insurance Premiums thereunder and to enter into, renew, amend, supplement, or extend premium financing agreements as necessary, to the extent that the Debtors determine that such action is in the ordinary course of business.

6.      The Debtors are authorized, but not directed, to pay any prepetition or postpetition obligations on account of the Deductibles or the SIRs in the ordinary course of business and consistent with prepetition practice.

7.      To the extent that any Insurance Policies or Surety Bonds or any related obligation, contract, or agreement are deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Interim Order nor any payments made in accordance with this Interim Order shall constitute the postpetition assumption of any such Insurance Policies or Surety Bonds or any related obligation, contract, or agreement pursuant to section 365 of the Bankruptcy Code.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors'

designation of any particular check or electronic payment request as approved by this Interim Order.

9.      Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount, validity, or priority of, or basis for, any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant

to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

10.      Notwithstanding anything to the contrary in this Interim Order, any payment to be made, obligation incurred or authorization contained herein shall be subject to and in compliance with the "Approved Budget" as defined in the orders of the Court approving the consensual use of cash collateral in these chapter 11 cases (including with respect to timing of payments thereunder).

11.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

12.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

13.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003.

14.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

16.      The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

17.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO (A) MAINTAIN INSURANCE, SURETY COVERAGE, AND
LETTERS OF CREDIT ENTERED INTO PREPETITION AND
SATISFY PREPETITION OBLIGATIONS RELATED THERETO,
(B) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE
INSURANCE POLICIES, SURETY BONDS, AND LETTERS OF CREDIT,
(C) CONTINUE TO PAY BROKER FEES, AND (D) HONOR AND RENEW THEIR
PREMIUM FINANCING AGREEMENT, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing, but not directing, the Debtors to (i) maintain coverage under the Insurance Policies, Surety Bonds, and Letters of Credit and pay any related obligations with respect thereto, (ii) renew, amend, supplement, extend, or purchase insurance, surety coverage, and letters of credit in the ordinary course of business and consistent with prepetition practice, and (iii) continue to pay certain broker fees, and (b) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      Any objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized, but not directed, to:  (a) continue and maintain the Insurance Policies, Surety Bonds, and Letters of Credit, and pay any related prepetition or postpetition amounts or obligations in the ordinary course of business and consistent with prepetition practice, including any amounts or obligations that may be owed to the Broker, Claims Administrator, or AFCO and (b) renew, amend, supplement, extend, enter into, or purchase

insurance policies, premium financing agreements, surety bonds, and letters of credit, in each case, to the extent that the Debtors determine that such action is in the best interest of their estates.

4.    The Debtors are authorized, but not directed, to continue to honor the terms of the Premium Financing Agreement and pay Insurance Premiums thereunder and to enter into, renew, amend, supplement, or extend premium financing agreements as necessary, to the extent that the Debtors determine that such action is in the ordinary course of business.

5.    The Debtors are authorized, but not directed, to pay any prepetition or postpetition obligations on account of the Deductibles or the SIRs in the ordinary course of business and consistent with prepetition practice.

6.    To the extent that any Insurance Policies or Surety Bonds or any related obligation, contract, or agreement are deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Final Order nor any payments made in accordance with this Final Order shall constitute the postpetition assumption of any such Insurance Policies or Surety Bonds or any related obligation, contract, or agreement pursuant to section 365 of the Bankruptcy Code.

7.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

8.    Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount, validity, or priority of, or basis for, any claim against the Debtors under the Bankruptcy

Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

9.     Notwithstanding anything to the contrary in this Final Order, any payment to be made, obligation incurred or authorization contained herein shall be subject to and in compliance

with the "Approved Budget" as defined in the orders of the Court approving the consensual use of

cash collateral in these chapter 11 cases (including with respect to timing of payments thereunder).

10.     The Debtors are authorized, but not directed, to issue postpetition checks, or to

effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests

that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts

owed in connection with the relief granted herein.

11.     Notice of the Motion as provided therein shall be deemed good and sufficient notice

of the Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final

Order are immediately effective and enforceable upon its entry.

13.     The Debtors are authorized, but not directed, to take all actions necessary to

effectuate the relief granted in this Final Order in accordance with the Motion.

14.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Final Order.

**Exhibit C**

**Insurance Policies[1]**

| LEGAL ENTITY | TYPE OF POLICY COVERAGE | INSURANCE CARRIER | POLICY NUMBER | POLICY TERM | APPROXIMATE ANNUALIZED GROSS PREMIUM | COVERED BY A PREMIUM FINANCING AGREEMENT? |
|---|---|---|---|---|---|---|
| CLAIRES BOUTIQUES INC., & CLAIRES PUERTO RICO CO | AUTOMOBILE LIABILITY | MAPFRE PRAICO INSURANCE COMPANY | 1226238001071 | 3/18/2025 - 3/18/2026 | $562 | |
| CLAIRE'S HOLDINGS LLC | DIRECTORS AND OFFICERS | ILLINOIS NATIONAL INSURANCE COMPANY | 01-701-49-22 | 10/12/2024 - 10/12/2025 | $35,570 | |
| CLAIRE'S HOLDINGS LLC | DIRECTORS AND OFFICERS | BERKLEY INSURANCE COMPANY | BPRO8115439 | 10/12/2024 - 10/12/2025 | $17,100 | |
| CLAIRE'S HOLDINGS LLC | AUTOMOBILE LIABILITY | GREENWICH INSURANCE COMPANY | RAD9438137-02 | 2/12/2025 - 1/29/2026 | $77,906 | Y |
| CLAIRE'S HOLDINGS LLC | CYBER | BEAZLEY SYNDICATE 2623/623 | ZU900D24APBR | 6/12/2025 - 6/12/2026 | $100,916 | |
| CLAIRE'S HOLDINGS LLC | DIRECTORS AND OFFICERS | U.S. SPECIALTY INSURANCE COMPANY | 14-MGU-24-A59529 | 10/12/2024 - 10/12/2025 | $85,129 | |

---

[1]    The Insurance Policies are issued pursuant to a master program with CNA Financial and handled by various fronting carriers.

| LEGAL ENTITY | TYPE OF POLICY COVERAGE | INSURANCE CARRIER | POLICY NUMBER | POLICY TERM | APPROXIMATE ANNUALIZED GROSS PREMIUM | COVERED BY A PREMIUM FINANCING AGREEMENT? |
|---|---|---|---|---|---|---|
| CLAIRE'S HOLDINGS LLC | DIRECTORS AND OFFICERS | FREEDOM SPECIALTY INSURANCE COMPANY | XMF2403758 | 10/12/2024 - 10/12/2025 | $49,375 | |
| CLAIRE'S HOLDINGS LLC | DIRECTORS AND OFFICERS | BEAZLEY INSURANCE COMPANY, INC. | V35E90240201 | 10/12/2024 - 10/12/2025 | $27,500 | |
| CLAIRE'S HOLDINGS LLC | DIRECTORS AND OFFICERS | ENDURANCE AMERICAN INSURANCE COMPANY | DOX3000081210 5 | 10/12/2024 - 10/12/2025 | $20,000 | |
| CLAIRE'S HOLDINGS LLC | DIRECTORS AND OFFICERS | STARR INDEMNITY & LIABILITY COMPANY | 1000621202241 | 10/12/2024 - 10/12/2025 | $18,605 | |
| CLAIRE'S HOLDINGS LLC | DIRECTORS AND OFFICERS | XL SPECIALTY INSURANCE COMPANY | ELU200130-24 | 10/12/2024 - 10/12/2025 | $44,460 | |
| CLAIRE'S HOLDINGS LLC | EXCESS LIABILITY | XL INSURANCE AMERICA, INC. | US00137386LI2 5A | 2/12/2025 - 1/29/2026 | $88,350 | Y |
| CLAIRE'S HOLDINGS LLC | EXCESS LIABILITY | NAVIGATORS INSURANCE COMPANY | NY25AXS86407 1IV | 2/12/2025 - 1/29/2026 | $79,251 | |
| CLAIRE'S HOLDINGS LLC | EXCESS LIABILITY | THE OHIO CASUALTY INSURANCE | ECO(26)5594280 4 | 2/12/2025 - 1/29/2026 | $32,500 | Y |

| LEGAL ENTITY | TYPE OF POLICY COVERAGE | INSURANCE CARRIER | POLICY NUMBER | POLICY TERM | APPROXIMATE ANNUALIZED GROSS PREMIUM | COVERED BY A PREMIUM FINANCING AGREEMENT? |
|---|---|---|---|---|---|---|
| | | COMPANY (LIBERTY MUTUAL) | | | | |
| CLAIRE'S HOLDINGS LLC | EXCESS LIABILITY | ASCOT INSURANCE COMPANY | EXNA25100009 11-01 | 2/12/2025 - 1/29/2026 | $32,500 | Y |
| CLAIRE'S HOLDINGS LLC | GENERAL/PRODUCTS LIABILITY | GREENWICH INSURANCE COMPANY | RGE3001700-02 | 2/12/2025 - 1/29/2026 | $160,041 | Y |
| CLAIRE'S HOLDINGS LLC | MARINE CARGO & WAR RISK | AGCS MARINE INSURANCE COMPANY | OC-OCW 91116600 | 2/13/2025 - UNTIL CANCELLED | $70,091 | Y |
| CLAIRE'S HOLDINGS LLC | PROPERTY | AFFILIATED FM INSURANCE COMPANY | 1146631 | 2/12/2025 - 1/29/2026 | $220,083 | Y |
| CLAIRE'S HOLDINGS LLC | PROPERTY | AFFILIATED FM INSURANCE COMPANY | 1146630 | 2/12/2025 - 1/29/2026 | $54,312 | Y |
| CLAIRE'S HOLDINGS LLC | UMBRELLA | THE CONTINENTAL INSURANCE COMPANY (CNA) | CUE 7036702684 | 2/12/2025 - 1/29/2026 | $168,540 | Y |

| LEGAL ENTITY | TYPE OF POLICY COVERAGE | INSURANCE CARRIER | POLICY NUMBER | POLICY TERM | APPROXIMATE ANNUALIZED GROSS PREMIUM | COVERED BY A PREMIUM FINANCING AGREEMENT? |
|---|---|---|---|---|---|---|
| CLAIRE'S HOLDINGS LLC | WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY | XL SPECIALTY INSURANCE COMPANY | RWD3001702-02 | 2/12/2025 - 1/29/2026 | $221,963 | Y |
| CLAIRE'S HOLDINGS LLC | WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY STATES INCLUDED: AK, NE, WI | XL SPECIALTY INSURANCE COMPANY | RWR3001701-02 | 2/12/2025 - 1/29/2026 | $6,911 | Y |
| CLAIRE'S HOLDINGS, LLC - CLAIRE'S STORES INC. | INTERNATIONAL PACKAGE POLICY | THE CONTINENTAL INSURANCE COMPANY (CNA) | WP 76 396 1956 | 1/29/2025 - 1/29/2026 | $98,456 | Y |
| CLAIRE'S STORES, INC. | TERRORISM | UNDERWRITERS AT LLOYD'S | CMCTR2500274 | 1/29/2025 - 1/29/2026 | $12,519 | |
| CLAIRE'S STORES, INC. | AUSTRIA LOCAL PACKAGE POLICY | VIENNA INSURANCE GROUP | 2025009078 | 1/1/2025 - 1/1/2030 | $7,452 | |
| CLAIRE'S STORES, INC. | AUTOMOBILE LIABILITY - CANADA (AB) | XL SPECIALTY INSURANCE COMPANY | CA00015470AU25A | 2/12/2025 - 1/29/2026 | $3,179 | |

| LEGAL ENTITY | TYPE OF POLICY COVERAGE | INSURANCE CARRIER | POLICY NUMBER | POLICY TERM | APPROXIMATE ANNUALIZED GROSS PREMIUM | COVERED BY A PREMIUM FINANCING AGREEMENT? |
|---|---|---|---|---|---|---|
| CLAIRE'S STORES, INC. | AUTOMOBILE LIABILITY - CANADA (BC) | XL SPECIALTY INSURANCE COMPANY | CA00019920AU 25A | 2/12/2025 - 1/29/2026 | $1,141 | |
| CLAIRE'S STORES, INC. | AUTOMOBILE LIABILITY - CANADA (MB) | XL SPECIALTY INSURANCE COMPANY | CA00019921AU 25A | 2/12/2025 - 1/29/2026 | $1,076 | |
| CLAIRE'S STORES, INC. | AUTOMOBILE LIABILITY - CANADA (NS) | XL SPECIALTY INSURANCE COMPANY | CA00015471AU 25A | 2/12/2025 - 1/29/2026 | $1,268 | |
| CLAIRE'S STORES, INC. | AUTOMOBILE LIABILITY - CANADA (ON) | XL SPECIALTY INSURANCE COMPANY | CA00015469AU 25A | 2/12/2025 - 1/29/2026 | $5,142 | |
| CLAIRE'S STORES, INC. | AUTOMOBILE LIABILITY - CANADA (QC) | XL SPECIALTY INSURANCE COMPANY | CA00015472AU 25A | 2/12/2025 - 1/29/2026 | $1,597 | |
| CLAIRE'S STORES, INC. | CRIME | AXIS INSURANCE COMPANY | P-001-001009685-03 | 10/12/2024 - 10/12/2025 | $30,510 | |
| CLAIRE'S STORES, INC. | EMPLOYER'S LIABILITY - IRELAND | ZURICH INSURANCE PLC | 02 CLP 3049732 | 1/29/2025 - 1/29/2026 | $29,436 | |
| CLAIRE'S STORES, INC. | EMPLOYER'S LIABILITY - UK | ZURICH INSURANCE COMPANY | GL227954 | 2/1/2025 - 1/31/2026 | $77,540 | |

| LEGAL ENTITY | TYPE OF POLICY COVERAGE | INSURANCE CARRIER | POLICY NUMBER | POLICY TERM | APPROXIMATE ANNUALIZED GROSS PREMIUM | COVERED BY A PREMIUM FINANCING AGREEMENT? |
|---|---|---|---|---|---|---|
| CLAIRE'S STORES, INC. | ENGINEERING INSPECTION - UK | ALLIANZ ENGINEERING INSPECTION SERVICES, LTD. | 27/NV/12508232/02 | 2/1/2025 - 1/31/2026 | $6,226 | |
| CLAIRE'S STORES, INC. | MOTOR FLEET - EIRE | ALLIANZ INSURANCE PLC | DN SFR 7161874 | 2/1/2025 - 1/31/2026 | $2,791 | |
| CLAIRE'S STORES, INC. | MOTOR FLEET - UK | ZURICH INSURANCE COMPANY | EM227960 | 2/1/2025 - 1/31/2026 | $27,079 | |
| CLAIRE'S STORES, INC. | PERSONAL ACCIDENT & TRAVEL | AON UNDERWRITING MANAGERS | P24PATPTP02385 | 1/30/2025 - 1/29/2026 | $13,853 | |
| CLAIRE'S STORES, INC. | PROPERTY | FM INSURANCE EUROPE S.A., LUXEMBOURG, BERN BRANCH | 1146632 | 2/12/2025 - 1/29/2026 | $53,698 | |
| CLAIRE'S STORES, INC. | PROPERTY | FM INSURANCE EUROPE S.A. | 1146629 | 2/12/2025 - 1/29/2026 | $140,791 | |
| CLAIRE'S STORES, INC. | PROPERTY | FM INSURANCE COMPANY LTD. | 1150067 | 2/12/2025 - 1/29/2026 | $257,767 | |
| CLAIRE'S STORES, INC. | SPECIAL CRIME | FEDERAL INSURANCE COMPANY | J06746305 | 10/12/2024 - 10/12/2027 | $14,265 | |

| LEGAL ENTITY | TYPE OF POLICY COVERAGE | INSURANCE CARRIER | POLICY NUMBER | POLICY TERM | APPROXIMATE ANNUALIZED GROSS PREMIUM | COVERED BY A PREMIUM FINANCING AGREEMENT? |
|---|---|---|---|---|---|---|
| CLAIRE'S STORES, INC. A/O CLAIRE'S STORES CANADA CORP. | GENERAL/PRODUCTS LIABILITY | CONTINENTAL CASUALTY COMPANY (CNA) | CGL 665498450 | 1/29/2025 - 1/29/2026 | $7,823 | |

**Exhibit D**

**Surety Bonds**

| PRINCIPAL | BOND NO. | PROVIDER | NATURE OF BOND | EXPIRATION | BOND AMOUNT | PREMIUM AMOUNT |
|---|---|---|---|---|---|---|
| CLAIRE'S STORES PUERTO RICO CORP. | 800003192 | INTACT FINANCIAL CORPORATION | UTILITY BOND | 1/21/2026 | $8,370 | $168 |
| CLAIRE'S BOUTIQUES, INC. | 800118858 | INTACT FINANCIAL CORPORATION | LIEN BOND FOR TENANT SPACE AT FASHION SHOW MALL, LLC | 12/10/2025 | $141,300 | $2,826 |
| CLAIRE'S BOUTIQUES INC. | 800118863 | ONE BEACON INSURANCE COMPANY | IRREVOCABLE BI-WEEKLY PAYMENT BOND | 12/27/2025 | $20,000 | $400 |
| CBI DISTRIBUTING CORP. | 800111568 | ONE BEACON INSURANCE COMPANY | CUSTOMS BOND | 11/22/2025 | $900,000 | $27,000 |
| CBI DISTRIBUTING CORP. | 800160385 | ONE BEACON INSURANCE COMPANY | CUSTOMS BOND | 2/22/2026 | $2,500,000 | $75,000 |

### Exhibit E

**Letters of Credit**

| DEBTOR | VALUE | ISSUING BRANCH PARENT BANK NAME | BENEFICIARY |
|---|---|---|---|
| CLAIRE'S STORES, INC. | $ 1,414,000 | CITIBANK, N.A. | QBE INSURANCE CORPORATION AND/OR PRAETORIAN INSURANCE COMPANY AND/OR STONINGTON INSURANCE COMPANY |
| CLAIRE'S STORES, INC. | $ 75,000 | CITIBANK, N.A. | THE TRAVELERS INDEMNITY COMPANY |
| CLAIRE'S STORES, INC. | $ 1,278,515 | CITIBANK, N.A. | BROADSTONE CLE ILLINOIS, LLC |
| CLAIRE'S STORES, INC. | $ 1,000,000 | CITIBANK, N.A. | ATLANTIC SPECIALTY INSURANCE COMPANY |
| CLAIRE'S HOLDINGS LLC | $ 1,930,000 | JPMORGAN CHASE BANK, N.A. | XL SPECIALTY INSURANCE COMPANY |

**Exhibit F**

**Premium Financing Agreement**

| PREMIUM FINANCING PROVIDER | TYPE OF POLICY FINANCED | APPROXIMATE AMOUNT FINANCED | OUTSTANDING PREMIUM FINANCE AMOUNT | EFFECTIVE DATE | FINANCE CHARGE | MONTHLY INSTALLMENT |
|---|---|---|---|---|---|---|
| AFCO ACCEPTANCE CORPORATION | VARIOUS | $1,111,123 | $521,472 | 2/12/2025 | $36,113 | $104,294 |
| **TOTAL** | | **$1,111,123** | **$521,472** | | | |

**File a First Day Motion:**

[25-11454 Claire's Holdings LLC](#)

Type: bk                    Chapter: 11 v                    Office: 1 (Delaware)
Assets: y                    Case Flag: VerifDue, PlnDue,
                             DsclsDue

**U.S. Bankruptcy Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Zachary I Shapiro entered on 8/6/2025 at 3:32 AM EDT and filed on 8/6/2025
**Case Name:**          Claire's Holdings LLC
**Case Number:**        [25-11454](#)
**Document Number:** [9](#)

**Docket Text:**
Motion Regarding Chapter 11 First Day Motions *(Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (I) Authorizing the Debtors to (A) Maintain Insurance, Surety Coverage, and Letters of Credit Entered into Prepetition and Satisfy Prepetition Obligations Related Thereto, (B) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies, Surety Bonds, and Letters of Credit, and (C) Continue to Pay Broker Fees, and (D) Honor and Renew Their Premium Financing Agreement, and (II) Granting Related Relief)* Filed By Claire's Holdings LLC (Shapiro, Zachary)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Claire's - Insurance Motion.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=8/6/2025] [FileNumber=19359069-0]
[43c10d68ca0854d77523e580752ebe215b89eaccfb33a9682f1ce21bf6666870d13a
2ef1172b68e4fcf98354845aced70199eb8c04cc4d70348adcfa30bdbc71]]

**25-11454 Notice will be electronically mailed to:**

Zachary I Shapiro on behalf of Debtor Claire's Holdings LLC
shapiro@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com;rebecca--speaker-6328@ecf.pacerpro.com

U.S. Trustee
USTPRegion03.WL.ECF@USDOJ.GOV

**25-11454 Notice will not be electronically mailed to:**