## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) USE CASH COLLATERAL, AND (B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Cash Collateral Motion")[2] of Yellow Corporation ("Yellow Corp")

and each of its above-captioned affiliates (collectively, the "Debtors"), pursuant to sections 105,

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Cash Collateral Motion or DIP Credit Agreement (as defined herein), as applicable; *provided*, however, that, for the avoidance of doubt, UST Cash Collateral, Prepetition UST Tranche A Credit Agreement, Prepetition UST Tranche A Loan Documents, Prepetition UST Tranche A Borrower, Prepetition UST Tranche A Guarantors, Prepetition UST Tranche A Loan Parties, BNY, Prepetition UST Tranche A Agent, Prepetition UST Tranche A Lenders, Prepetition UST Tranche A Secured Parties, Prepetition UST Tranche A Obligations, Prepetition UST Tranche B Credit Agreement, Prepetition UST Tranche B Loan Documents, Prepetition UST Loan Documents, Prepetition UST Tranche B Borrower, Prepetition UST Tranche B Guarantors, Prepetition UST Tranche B Loan Parties, Prepetition UST Tranche B Agent, Prepetition UST Tranche B Lenders, Prepetition UST Lenders, Prepetition UST Tranche B Secured Parties, Prepetition UST Tranche B Obligations, Prepetition UST Secured Obligations, Prepetition UST Tranche A Liens, Prepetition UST Tranche A Permitted Senior Liens, Prepetition UST Tranche A Collateral, Prepetition UST Tranche B Liens, Prepetition UST Tranche B Liens, UST Tranche B Term Priority Collateral, Prepetition UST Tranche B Permitted Senior Liens, Prepetition UST Tranche B Priority Collateral, Prepetition UST Tranche B Collateral, Prepetition UST Secured Parties, UST Tranche B Adequate Protection Liens, UST Tranche A Adequate Protection Liens, UST Adequate Protection Liens, UST Tranche B 507(b) Claims, UST Tranche A 507(b) Claims, UST 507(b) Claims, UST Tranche B Adequate Protection Fees and Expenses, UST Tranche A Adequate Protection Fees and Expenses, UST Adequate Protection Fees and Expenses, UST Tranche B Adequate Protection Obligations, UST Tranche A Adequate Protection Obligations, UST Adequate Protection Obligations, UST Adequate Protection Payments, and UST Adequate Protection shall have the meanings given to those terms in the proposed interim cash collateral order attached as Exhibit B to the Cash Collateral Motion. *See* Docket No. 16-2 (the "Proposed Interim UST Cash Collateral Order").

361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), seeking entry of this interim order (this "Interim Order"), among other things:

- authorizing the Debtors to use Cash Collateral on an interim basis solely in accordance with this Interim Order (as defined below) and the Interim Approved Budget (as defined below);

- authorizing the Debtors to remit ABL Cash Collateral (as defined below) to the Prepetition ABL Agent as set forth herein and for the Prepetition ABL Agent to apply such ABL Cash Collateral to permanently reduce or cash collateralize, as applicable, Prepetition ABL Obligations as set forth herein;

- subject to the restrictions set forth in this Interim Order, authorizing the Debtors to use Cash Collateral and provide adequate protection to the Prepetition Secured Parties (as defined below), including the Prepetition UST Secured Parties for any diminution in value of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "Diminution in Value");

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors and the Prepetition Secured Parties, including the the Prepetition UST Secured Parties, to implement and effectuate the terms and provisions of this Interim Order;

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order; and

The Court having considered the interim relief requested in the Cash Collateral Motion, the exhibits attached thereto and the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), and the evidence submitted and arguments made at the interim hearing held on August 9, 2023 (the "Interim Hearing"); and due and sufficient notice of the

Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Cash Collateral Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Cash Collateral Motion or otherwise on the record at the Interim Hearing is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending entry of anticipated further interim orders, on terms and conditions acceptable to the Prepetition ABL Agent (and, with respect to the Prepetition UST Secured Parties, as stated on the record at the Interim Hearing), providing for debtor-in-possession financing and usage of cash collateral substantially memorializing the terms of adequate protection and otherwise affecting the rights of the Prepetition Secured Parties and the Prepetition UST Secured Parties contained herein (including, with respect to the Prepetition UST Secured Parties, as set forth in the Proposed Interim UST Cash Collateral Order) (the anticipated "Interim DIP Order," and together with the anticipated Proposed Interim UST Cash Collateral Order, the "Interim Orders"), otherwise is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.   *Petition Date*.   On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

B.   *Debtors in Possession*.   The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.   *Jurisdiction and Venue*.   This Court has core jurisdiction over these cases, the Cash Collateral Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.   Consideration of the Cash Collateral Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   Venue for these cases and proceedings on the Cash Collateral Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Bankruptcy Local Rules 2002-1, 4001-2, and 9013-1.

D.   *Committee Formation*.   As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these cases (a "Creditors' Committee") or any other statutory committee.

E.   *Notice*.   The Interim Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).   Proper, timely, adequate and sufficient notice of the Cash Collateral Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and Bankruptcy Local Rules, and no other or further notice was or shall be required under the circumstances.   The interim relief granted herein is necessary to avoid immediate and irreparable

4

harm to the Debtors and their estates pending the securing of debtor-in-possession financing and entry of the Interim Orders.

F.     *Cash Collateral*.  As used herein, the term "Cash Collateral" shall mean, to the extent such cash constitutes Prepetition ABL Priority Collateral, all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) within the meaning of section 363(a) of the Bankruptcy Code.

G.     *Debtors' Stipulations*.  Subject to the provisions and limitations contained in paragraph 17 hereof, and after consultation with their attorneys, the Debtors admit, stipulate and agree that:

(i)     *Prepetition B-2 Term Loan*.  Pursuant to that certain Amended and Restated Credit Agreement, dated as of September 11, 2019 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition B-2 Credit Agreement" and, collectively with all other agreements (including all Loan Documents (as defined therein)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition B-2 Loan Documents"), by and among (a) Yellow Corp., as borrower (in such capacity, the "Prepetition B-2 Borrower"), (b) the guarantors party thereto (the "Prepetition B-2 Guarantors" and, together with the Prepetition B-2 Borrower, the "Prepetition B-2 Loan Parties"), (c) Alter Domus Products Corp., as administrative and collateral agent (the "Prepetition B-2 Agent"), and (d) the lenders party thereto from time to time (the "Prepetition B-2 Lenders" and, together with the Prepetition

B-2 Agent, the "Prepetition B-2 Secured Parties"), Prepetition B-2 Loan Parties incurred "Obligations" (as defined in the Prepetition B-2 Credit Agreement, the "Prepetition B-2 Obligations") to the Prepetition B-2 Secured Parties on a joint and several basis;

(ii)     *Prepetition ABL Facility*.    Pursuant to that certain Loan and Security Agreement, dated as of February 13, 2014 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition ABL Credit Agreement", collectively with all other agreements (including all Loan Documents (as defined therein)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition ABL Loan Documents", and the credit facilities evidenced thereby, collectively, the "Prepetition ABL Facility") among (a) Yellow Corp, as administrative borrower (together with the other borrowers party thereto, the "Prepetition ABL Borrowers"), (b) the guarantors party thereto (the "Prepetition ABL Guarantors" and, together with the Prepetition ABL Borrowers, the "Prepetition ABL Loan Parties" and, together with the Prepetition B-2 Loan Parties, Prepetition UST Tranche A Loan Parties, and the Prepetition UST Tranche B Loan Parties the "Prepetition Loan Parties"), (c) Citizens Business Capital, a division of Citizens Asset Finance, Inc. (a subsidiary of Citizens Bank, N.A.), as agent (the "Prepetition ABL Agent" and, together with the Prepetition B-2 Agent, Prepetition UST Tranche A Agent, and the Prepetition UST Tranche B Agent, the "Prepetition Agents"), (d) the lenders from time to time party thereto (the "Prepetition ABL Lenders" and, together with the Prepetition B-2 Lenders, the Prepetition UST Tranche A Lenders and the Prepetition UST Tranche B Lenders, the "Prepetition Lenders"), and (e) the issuing banks from time to time party thereto (together with

the Prepetition ABL Agent and the Prepetition ABL Lenders, the "Prepetition ABL Secured Parties" and, together with the Prepetition Agents, the Prepetition Lenders, and the Bank Product Providers (as defined in the Prepetition ABL Credit Agreement), the "Prepetition Secured Parties"), the Prepetition ABL Loan Parties incurred "Obligations" (as defined in the Prepetition ABL Credit Agreement, the "Prepetition ABL Obligations" and, together with the Prepetition B-2 Obligations, Prepetition UST Tranche A Obligations and Prepetition UST Tranche B Obligations, the "Prepetition Secured Obligations") to the Prepetition ABL Secured Parties on a joint and several basis;

(iii)    *Prepetition UST Tranche A Term Loan and Prepetition UST Tranche B Term Loan*. The Debtors' stipulations contained in paragraph G, subparagraphs (i) through (xi) of the Proposed Interim UST Cash Collateral Order are fully incorporated herein in their entirety.

(iv)    *Prepetition Intercreditor Agreement*.  Pursuant to (and to the extent set forth in) that certain Amended and Restated Intercreditor Agreement, dated as of July 7, 2020 (as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Intercreditor Agreement" and, together with the Prepetition B-2 Loan Documents, the Prepetition ABL Loan Documents, and the Prepetition UST Loan Documents, the "Prepetition Loan Documents") by and among the Prepetition ABL Agent, the Prepetition B-2 Agent, the Prepetition UST Tranche A Agent, and the Prepetition UST Tranche B Agent, the parties thereto agreed, among other things, to the relative priority of such parties' respective security interests in the Prepetition Collateral (as defined below) and postpetition Collateral, which relative priorities are governed by and set forth in the Prepetition Intercreditor Agreement.  The Prepetition Loan Documents, including the Prepetition Intercreditor Agreement, are, in each case, binding and enforceable against the parties thereto,

7

(v)     *Prepetition B-2 Obligations*.  As of the Petition Date, the Prepetition B-2 Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition B-2 Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition B-2 Credit Agreement) in the aggregate principal amount of not less than $485,372,693.29, plus accrued and unpaid interest thereon and any fees, exit fees, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees and fees of other consultants and professionals), costs, charges, indemnities, and other Prepetition B-2 Obligations in each case incurred under (or reimbursable pursuant to) or secured by the Prepetition B-2 Loan Documents;

(vi)    *Prepetition ABL Obligations*.  As of the Petition Date, the Prepetition ABL Loan Parties were validly, justly and lawfully indebted and liable to the Prepetition ABL Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for (x) not less than $858,520.35 in outstanding principal amount of Loans (as defined in the Prepetition ABL Credit Agreement) plus accrued and unpaid interest thereon, (y) not less than $359,288,388.60 in outstanding and undrawn Letters of Credit (as defined in the Prepetition ABL Credit Agreement) plus accrued and unpaid fees with respect thereto, and (z) any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, financial advisors' fees, and fees of other consultants and professionals), costs, charges, indemnities, and other Prepetition ABL Obligations (including, without limitation, Bank Product Debt, as defined in the Prepetition ABL Credit Agreement) in each case incurred under (or reimbursable pursuant to) or secured by the Prepetition ABL Loan Documents.  As of the Petition Date, (1) ABL Cash Collateral (as defined below) in an amount equal to $91,449,240.35 is being held on deposit in the Borrowing Base Cash Account (as defined in the Prepetition ABL Credit

8

Agreement) and (2) ABL Cash Collateral (as defined below) in an amount equal to $3,800,000 has been pledged to the Prepetition ABL Agent as security for certain Bank Product Debt owed to Citizens Bank, N.A. and/or its affiliates (such amounts described in this sentence, collectively, the "Existing ABL Cash Collateral Deposits");

(vii) *Validity of Prepetition Secured Obligations.*  The Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties, as applicable, enforceable in accordance with the respective terms of the relevant documents, and no portion of the Prepetition Secured Obligations or any payment made to the Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(viii) *Validity, Perfection and Priority of Prepetition B-2 Liens.*  As of the Petition Date, pursuant to the Prepetition B-2 Loan Documents, the Prepetition B-2 Loan Parties granted to the Prepetition B-2 Agent, for the benefit of the Prepetition B-2 Secured Parties, a security interest in and continuing lien on (the "Prepetition B-2 Liens") substantially all of their respective assets and property (other than Excluded Assets (as defined in the Prepetition B-2 Loan Documents), collectively, the "Prepetition B-2 Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the Non-UST Tranche B Term Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents,

and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition B-2 Priority Collateral"), subject only to any liens permitted by the Prepetition B-2 Loan Documents to be senior to the Prepetition B-2 Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition B-2 Permitted Senior Liens"); (ii) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the UST Tranche B Joint Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Joint Collateral"), subject only to the *pari passu* liens of the Prepetition UST Tranche B Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition UST Tranche B Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition UST Tranche B Priority Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject and subordinate only to the liens of the Prepetition ABL Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition ABL Priority Collateral;

(ix)    *Validity, Perfection and Priority of Prepetition ABL Liens*.    As of the Petition Date, pursuant to the Prepetition ABL Loan Documents, the Prepetition ABL Loan Parties granted to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, a

security interest in and continuing lien on (the "Prepetition ABL Liens" and, together with the Prepetition B-2 Liens, Prepetition UST Tranche A Liens, and Prepetition UST Tranche B Liens, the "Prepetition Liens") substantially all of their respective assets (other than Excluded Assets (as defined in the Prepetition ABL Credit Agreement) and property (collectively, the "Prepetition ABL Collateral" and, collectively with the Prepetition B-2 Collateral, Prepetition UST Tranche A Collateral, and Prepetition UST Tranche B Collateral, the "Prepetition Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), subject only to any liens permitted by the Prepetition ABL Loan Documents to be senior to the Prepetition ABL Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition ABL Permitted Senior Liens" and, collectively with the Prepetition B-2 Permitted Senior Liens, Prepetition UST Tranche A Permitted Senior Liens, and Prepetition UST Tranche B Permitted Senior Liens, the "Prepetition Permitted Senior Liens");[4] (ii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition B-2 Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition B-2 Priority Collateral; (iii) a valid,

---

[4] For the avoidance of doubt, no reference to the "Prepetition Permitted Senior Liens" shall refer to or include the Prepetition Liens.

binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and Prepetition UST Tranche B Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition Joint Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and Prepetition UST Tranche B Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition UST Tranche B Priority Collateral;

(x)     *Waiver of Challenge*.   None of the Prepetition Liens (including the Prepetition UST Liens) are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(xi)     *No Control*.   None of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition Loan Documents;

(xii)     *No Claims or Causes of Action*.   No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Parties and each of their respective Representatives (as defined below), in each case, in their capacity as such, under

or relating to any agreements by and among the Debtors and any Prepetition Secured Party that is in existence as of the Petition Date; and

H.    *Findings Regarding Use of Cash Collateral.*

(i)     The Debtors have demonstrated an immediate and critical need to use Cash Collateral in order to, among other things, maintain, administer, and preserve certain limited operations and maximize the value of their estates through an orderly winddown process of their businesses and comprehensive sale effort of their assets. Without the ability of the Debtors to use Cash Collateral as set forth in this Interim Order, the Debtors, their estates, and parties-in-interest would be immediately and irreparably harmed. Accordingly the Debtors have an immediate need to use Cash Collateral as set forth in this Interim Order to, among other things, maximize the value of the assets of the Debtors' estates to maximize the recovery to all creditors of the estates.

(ii)     Based on the Cash Collateral Motion and the record and argument presented to the Court at the Interim Hearing, the terms of the adequate protection granted to the Prepetition Secured Parties (including the Prepetition UST Secured Parties) as provided in paragraphs 12–14 of this Interim Order (collectively, the "Adequate Protection"), and the terms on which the Debtors may continue to use Cash Collateral pursuant to this Interim Order and in accordance with the Approved Budget are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

(iii)     The Prepetition Secured Parties (including the Prepetition UST Secured Parties) are entitled to the Adequate Protection as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the Cash Collateral Motion and on the record presented to the Court, the terms of the proposed Adequate Protection are fair and

reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral, including Cash Collateral.

(iv)    To the extent that their consent is required, the requisite Prepetition Secured Parties (including, without limitation, the Prepetition UST Secured Parties) have consented or are deemed to have consented to the use of Prepetition Collateral, including Cash Collateral, in each case on the terms set forth in this Interim Order and pursuant to the Approved Budget; *provided* that nothing in this Interim Order shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) for the use of Cash Collateral other than on the terms set forth in this Interim Order, (y) be construed as a consent by any party to any other lien encumbering Prepetition Collateral, including Prepetition UST Collateral (whether senior or junior) other than as contemplated by this Interim Order, or (z) prejudice, limit or otherwise impair the rights of any Prepetition Secured Party (including any of the Prepetition UST Secured Parties) to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the Prepetition Secured Parties (including the Prepetition UST Secured Parties) to object to such relief, are hereby preserved, subject to the terms and conditions of the Prepetition Intercreditor Agreement..

(v)    The Debtors have prepared and delivered to the advisors to the Prepetition ABL Agent and to the advisors to the Prepetition Secured Parties (including the Prepetition UST Secured Parties) an initial budget (the "Initial Budget"), attached hereto as Schedule 1.  The Initial Budget may be modified, amended, extended, and updated from time to time solely upon the consent of the Prepetition ABL Agent.  Each subsequent budget, once approved by the Prepetition ABL Agent (and the Prepetition UST Secured Parties, such consent not to be unreasonably

14

withheld) shall modify, replace, supplement or supersede, as applicable, the Initial Budget for the periods covered thereby (the Initial Budget and each subsequent approved budget, an "Approved Budget").

I.    *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Absent the relief granted in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Immediate access to and use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and the Approved Budget, is therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The Cash Collateral Motion and this Interim Order comply with the requirements of Bankruptcy Local Rule 4001-2.

J.    *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens*.  Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors or the Prepetition Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien.  For the avoidance of doubt, the right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Senior Lien, and such right is expressly subject to the Prepetition Liens (each as defined herein), including the Prepetition UST Liens.  The Prepetition Liens (including the Prepetition UST Liens) are continuing liens and the collateral securing such liens will continue to be encumbered by such liens.

K.    *Intercreditor Agreement.*  Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement shall (i) remain in full force and effect, (ii) continue to govern

the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims or amounts payable in respect thereof), and (iii) not be deemed to be amended, altered or modified by the terms of this Interim Order, unless expressly set forth therein or herein, as applicable.

Based upon the Cash Collateral Motion, the foregoing findings and conclusions, and the overall record before the Court, including statements of counsel made at the Interim Hearing, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted on Interim and Immediate-Term Basis*.   The Cash Collateral Motion is granted on an interim basis and solely pursuant to the terms and conditions specifically set forth in this Interim Order.  All objections to the Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby overruled on the merits.

2.    *Reserved.*

3.    *Reserved.*

4.    *Reserved.*

5.    *Reserved.*

6.    *Reserved.*

7.    *Protection of Prepetition Secured Parties' Rights (Including the Prepetition UST Secured Parties' Rights)*

(a)    Upon the occurrence and continuance of any of the below events (each, a "Cash Collateral Termination Event") any such event being deemed an Event of Default, the

16

Prepetition ABL Agent or the Prepetition UST Agent, on not less than five (5) calendar days' notice to the Remedies Notice Parties (such five (5) calendar day period, the "ABL Remedies Notice Period"), and unless the Court orders otherwise (*provided* that during the ABL Remedies Notice Period, the Debtors, the Creditors' Committee (if appointed), and/or any party in interest shall be entitled to seek an emergency hearing with the Court for the purpose of contesting whether, in fact, a Cash Collateral Termination Event has occurred and is continuing or to obtain non-consensual use of Cash Collateral), may terminate its and the Prepetition ABL Secured Parties' or the Prepetition UST Lenders' consent, as applicable, to the Debtors' use of Cash Collateral (the date of such termination, the "Cash Collateral Termination Date"); (i) the filing of any motion or pleading by the Debtors, or the entry of an order on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify the Interim Order in a manner adverse to the Prepetition ABL Secured Parties or in a manner materially adverse to the Prepetition UST Secured Parties without the consent of the Prepetition ABL Secured Parties (or, as applicable, the Prepetition UST Secured Parties); (ii) the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors; (iii) the Debtors shall attempt to invalidate, reduce or otherwise impair the Prepetition ABL Obligations or the Prepetition UST Secured Obligations; (iv) the dismissal of any of the Chapter 11 Cases; (v) the conversion of any of the Chapter 11 Cases to a case under chapter 7; or (vi) the failure of the Debtors to make any payments as and when required under paragraph 11(c) and paragraph 12(a)(iii) of this Interim Order; (vii) the Debtors shall materially breach any of the other provisions of paragraph 11 of this Interim Order; (viii) any Approved Budget shall be updated, supplemented, replaced, or otherwise modified without the prior consent of the Prepetition ABL Agent and the Prepetition UST Secured Parties (the latter not to be unreasonably withheld); provided, that the Cash Collateral Termination

Date will automatically occur at 12:01 a.m. prevailing Eastern time on Wednesday, August 16, 2023 unless mutually extended by the Debtors and the Prepetition ABL Agent (and if extended beyond August 23, 2023, the Prepetition UST Agent and the Prepetition B-2 Agent).

(b)    Immediately upon the occurrence of the Cash Collateral Termination Date, the Prepetition ABL Secured Parties shall be authorized, subject to the Prepetition Intercreditor Agreement, to: (a) freeze monies or balances in the Debtors' accounts which constitute proceeds of ABL Priority Collateral; and (b) immediately set-off any and all amounts in accounts maintained by the Debtors to the extent such amounts constitute proceeds of ABL Priority Collateral.

(c)    No rights, protections or remedies of the Prepetition Secured Parties (including the Prepetition UST Secured Parties), granted by this Interim Order shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

8.    *Reserved.*

9.    *Reserved.*

10.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the Prepetition ABL Secured Parties pursuant to the provisions of this Interim Order shall, subject to the reservation of rights set out in paragraph 21 of this Interim Order with respect to the Prepetition Secured Parties (including the Prepetition UST Secured Parties), be irrevocable, received free and clear of any claim, charge, assessment or other liability.

11.    *Use of Cash Collateral.*

(a)    *Authorization to Use Cash Collateral*. The Debtors are hereby authorized, solely on the terms and conditions of this Interim Order, to use all Cash Collateral in accordance with the Approved Budget.

(b)    *Reserved.*

(c)    *Procedures for Use of ABL Cash Collateral*.

(i)    *Delivery of ABL Cash Collateral to Prepetition ABL Agent.*  No later than the first business day after the date that this Interim Order is entered, the Debtors shall remit to the Prepetition ABL Agent cash equal to $16,500,000 in respect of Cash Collateral constituting Prepetition ABL Priority Collateral ("ABL Cash Collateral") that was collected on or before August 2, 2023.  Beginning on the first business day after the date that this Interim Order is entered, and on each business day thereafter following receipt of any ABL Cash Collateral, the Debtors shall (x) wire 80% of the amount of ABL Cash Collateral received on or after August 3, 2023 into the applicable Debtor's blocked account ending *8700 maintained at Citizens Bank on the first business day following receipt of the funds to the extent not already remitted (or such other account as the Prepetition ABL Agent and Yellow Corp may agree in writing from time to time), to the extent not wired prior to the Petition Date (it being acknowledged that the Prepetition ABL Agent received two such wires prior to the Petition Date in respect of such percentage of the ABL Cash Collateral received on August 3, 2023 and a portion of the ABL Cash Collateral received on August 4, 2023), or (y) otherwise deliver 80% of the ABL Cash Collateral received on or after August 3, 2023 to the Prepetition ABL Agent in a manner satisfactory to the Prepetition ABL Agent (such remittance, deposit, or delivery, each a "Daily Delivery Event").  Commencing on the third business day of the week following entry of this Interim Order (and on the third business day of each week thereafter) (each, an "Eligibility Reporting Date"), the Debtors shall deliver to the

Prepetition ABL Agent information on collections from the prior week (as well as, if applicable, information regarding postpetition collections from prior thereto if either (a) such information has yet to be reported or (b) such information reflects a change from prior reporting (each of (a) and (b), as applicable, the "Supplemental Reporting")) in form and detail reasonably acceptable to the Prepetition ABL Agent. On the business day after each Eligibility Reporting Date, the Debtors shall (x) to the extent the cumulative Daily Delivery Events since August 3, 2023 (taking Supplemental Reporting into account, if applicable) resulted in delivery of less than 80% of the amount of ABL Cash Collateral received, remit to the Prepetition ABL Agent ABL Cash Collateral in an amount necessary to equal 80% of the amount of ABL Cash Collateral received on or after August 3, 2023 or (y) to the extent the cumulative Daily Delivery Events since August 3, 2023 (taking Supplemental Reporting into account, if applicable) resulted in delivery in excess of 80% of the amount of ABL Cash Collateral received, deduct from that day's Daily Delivery Event ABL Cash Collateral in an amount necessary to equal 80% of the amount of ABL Cash Collateral received on or after August 3, 2023. The portion of such ABL Cash Collateral to remain with the Debtors in accordance with this paragraph 11(c)(i) is referred to herein as the "Available ABL Cash Collateral". The Debtors shall be permitted to access and utilize all Available ABL Cash Collateral in accordance with the Approved Budget and the terms and provisions of this Interim Order. For the avoidance of doubt, no portion of the Existing ABL Cash Collateral Deposits shall be required to be remitted to the Debtors pursuant to this paragraph 11(c)(i), nor shall any portion of the Existing ABL Cash Collateral Deposits constitute Available ABL Cash Collateral.

(ii)     *ABL Cash Collateral in Prepetition ABL Agent's Possession.* The Prepetition ABL Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any other Prepetition

ABL Secured Party's possession or control which constitute Prepetition ABL Priority Collateral or proceeds thereof.

(d)     *Application of Cash Collateral to Prepetition ABL Obligations.* Notwithstanding anything to the contrary in this Interim Order, except with respect to the Available ABL Cash Collateral as set forth in paragraph 11(c)(i), the Prepetition ABL Agent is authorized at any time, and from time to time, to apply all or any portion of the ABL Cash Collateral (including, without limitation, the Existing ABL Cash Collateral Deposits) now or hereafter in the Prepetition ABL Agent's or any other Prepetition ABL Secured Party's possession or control to the payment or cash collateralization, as applicable, of Prepetition ABL Obligations in accordance with the Prepetition ABL Loan Documents, and no other party in interest shall have any right to use or direct the use of such ABL Cash Collateral, except that the Debtors shall have the right to use and direct the use of Available ABL Cash Collateral.  All such applications to Prepetition ABL Obligations shall be final, subject only to the right of parties in interest, including the Debtors, to seek a determination in accordance with paragraph 17 of this Interim Order that such applications resulted in the payment of any unsecured prepetition claim of the Prepetition ABL Secured Parties.

(e)     *Accounts Collection Practices.*  The Debtors shall maintain at all times reasonably appropriate staffing, staffing levels, and other resources with respect to Accounts billing and collections in order to maximize the Debtors' recovery of proceeds with respect to such Accounts.  The Debtors shall also provide the Prepetition ABL Agent with reasonable access to all Accounts billing and collections systems and associated staff members.

12.     *Adequate Protection of Prepetition Secured Parties (Including Adequate Protection of Prepetition UST Secured Parties).*  Pursuant to sections 361, 362, 363(e) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition

Collateral (including Cash Collateral) for the aggregate Diminution in Value and as an inducement to the Prepetition Secured Parties and the Prepetition UST Secured Parties to consent to the use of their Cash Collateral pursuant to this Interim Order and in accordance with the Approved Budget, the Prepetition Secured Parties and the Prepetition UST Secured Parties are granted the following Adequate Protection (collectively, the "Adequate Protection Obligations");:

(a)    *Adequate Protection of Prepetition ABL Secured Parties*.

(i)    *ABL Adequate Protection Liens*.  The Prepetition ABL Agent is hereby granted, for the benefit of the Prepetition ABL Secured Parties, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition ABL Secured Parties' Diminution in Value upon all of the Prepetition Collateral (the "ABL Adequate Protection Liens"), (i) in the case of the Prepetition ABL Priority Collateral, senior to all other liens, subject solely to the Prepetition Permitted Senior Liens, (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A)  the Prepetition Permitted Senior Liens, (A) the B-2 Adequate Protection Liens (as defined below), and (B) the Prepetition B-2 Liens, (iii) in the case of the Prepetition Joint Collateral and Prepetition UST Tranche B Collateral, subject and subordinate to, in the following order, (A) the Prepetition Permitted Senior Liens, (B) the UST Tranche B Adequate Protection Liens (as defined below), (C) the Prepetition UST Tranche B Liens, (D) the B-2 Adequate Protection Liens, and (F) the Prepetition B-2 Liens, and (iv) in the case of the Unencumbered Property, subject and subordinate to no other liens.

(ii)    *ABL Section 507(b) Claims*.  The Prepetition ABL Secured Parties are hereby granted allowed superpriority administrative expense claims against the Debtors on a

joint and several basis (without the need to file any proof of claim) on account of the Prepetition

ABL Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the

"ABL 507(b) Claims", and together with the ABL Adequate Protection Liens, the "ABL Adequate

Protection Obligations" ), which ABL 507(b) Claims shall be payable from and have recourse to

all Prepetition Collateral and all proceeds thereof (excluding avoidance actions under the

Bankruptcy Code but including, without limitation, proceeds of such avoidance actions).  Except

as otherwise provided herein, the ABL 507(b) Claims shall have priority over any and all

administrative expenses and all other claims against the Debtors now existing or hereafter arising,

of any kind whatsoever, including, without limitation, all administrative expenses of the kind

specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may

become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*,

*however*, that; (i) with respect to the Prepetition ABL Priority Collateral, the ABL 507(b) Claims

shall be senior to, in the following order, (A) the B-2 507(b) Claims (as defined below), and (B) the

UST Tranche B 507(b) Claims and the UST Tranche A 507(b) Claims (as defined below); (ii) with

respect to the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, the

ABL 507(b) Claims shall be junior to, in the following order, (A) the UST Tranche B 507(b)

Claims and (B) the B-2 507(b) Claims; and (ii) with respect to the Prepetition B-2 Priority

Collateral, the ABL 507(b) Claims shall be junior to the B-2 507(b) Claims.

(b)    *Adequate Protection of Prepetition B-2 Secured Parties.*

(i)    *B-2 Adequate Protection Liens*.   The Prepetition B-2 Agent is

hereby granted, for the benefit of the Prepetition B-2 Secured Parties, effective and perfected upon

the date of this Interim Order and without the necessity of the execution of any mortgages, security

agreements, pledge agreements, financing statements or other agreements, a valid, perfected

replacement security interest in and lien on account of the Prepetition B-2 Secured Parties' Diminution in Value upon all of the Prepetition Collateral (the "B-2 Adequate Protection Liens"), (i) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to the Prepetition Permitted Senior Liens, (ii) in the case of the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, subject and subordinate to, in the following order, (A) the Prepetition Permitted Senior Liens, (B) the UST Tranche B Adequate Protection Liens and (C) the Prepetition UST Tranche B Liens; (iii) in the case of the Prepetition ABL Priority Collateral, subject and subordinate to, in the following order, (A) the Prepetition Permitted Senior Liens, (B) the ABL Adequate Protection Liens, and (C) the Prepetition ABL Liens, and (iv) in the case of the Unencumbered Property, subject and subordinate to no other liens.

(ii)      *B-2 Section 507(b) Claims*.  The Prepetition B-2 Secured Parties are hereby granted allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition B-2 Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "B-2 507(b) Claims," and together with the ABL 507(b) Claims and the UST 507(b) Claims, the "507(b) Claims" and the "B-2 507(b) Claims, together with the B-2 Adequate Protection Liens, the "B-2 Adequate Protection Obligations".  Except as otherwise provided herein, the B-2 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that (i) with respect to the Prepetition ABL Priority Collateral, the B-2 507(b) Claims shall be junior to the ABL 507(b) Claims; (iv) with respect to

the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, the B-2 507(b) Claims shall be junior to, the UST Tranche B 507(b) Claims; and (v) with respect to the Prepetition B-2 Priority Collateral, the B-2 507(b) Claims shall be senior to, in the following order, (A) the ABL 507(b) Claims and (B) the UST Tranche B 507(b) Claims and UST Tranche A 507(b) Claims.

(c)     *Adequate Protection of Prepetition UST Tranche B Secured Parties.*

(i)     *UST Tranche B Adequate Protection Liens.*  The Prepetition UST Tranche B Agent is hereby granted, for the benefit of the Prepetition UST Tranche B Secured Parties, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition UST Tranche B Secured Parties' Diminution in Value upon all of the Prepetition Collateral (the "UST Tranche B Adequate Protection Liens"), (i) in the case of the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, subject solely to the Prepetition Permitted Senior Liens, (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A)  Prepetition Permitted Senior Liens, (B) the B-2 Adequate Protection Liens, (C) the Prepetition B-2 Liens, (D) the ABL Adequate Protection Liens, and (F) the Prepetition ABL Liens, and *pari passu* with the UST Tranche A Adequate Protection Liens (as defined below), and (iii) in the case of the Prepetition ABL Priority Collateral, subject and subordinate to, in the following order, (A) the Prepetition Permitted Senior Liens, (B) the ABL Adequate Protection Liens, (C) the Prepetition ABL Liens, (D) the B-2 Adequate Protection Liens, and (E) the Prepetition B-2 Liens, and *pari passu* with the UST Tranche A Adequate Protection Liens.

(ii)      *UST Tranche B Section 507(b) Claims*.    The Prepetition UST Tranche B Secured Parties are hereby granted allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition UST Tranche B Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "UST Tranche B 507(b) Claims"), which UST Tranche B 507(b) Claims shall be payable from and have recourse to all Prepetition Collateral and all proceeds thereof (excluding avoidance actions under the Bankruptcy Code but including, without limitation, avoidance proceeds thereof).   Except as and to the extent otherwise provided herein, the UST Tranche B 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, (i) with respect to the Prepetition ABL Priority Collateral, the UST Tranche B 507(b) Claims shall be *pari passu* with the UST Tranche A 507(b) claims and junior to, in the following order, (A) the ABL 507(b) Claims and (B) the B-2 507(b) Claims; (iv) with respect to the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, the UST Tranche B 507(b) Claims shall be senior to, in the following order, (A) the B-2 507(b) Claims, (B) the ABL 507(b) Claims, and (C) the UST Tranche A 507(b) Claims (as defined below); and (v) with respect to the Prepetition B-2 Priority Collateral, the UST Tranche B 507(b) Claims shall be shall be *pari passu* with the UST Tranche A 507(b) claims and junior to, in the following order, (A) the B-2 507(b) Claims, and (B) the ABL 507(b) Claims.

(d)      *Adequate Protection of Prepetition UST Tranche A Secured Parties.*

(i)      *UST Tranche A Adequate Protection Liens.*  The Prepetition UST Tranche A Agent is hereby granted, for the benefit of the Prepetition UST Tranche A Secured Parties, effective and perfected upon the date of this Interim Cash Collateral Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition UST Tranche A Secured Parties' Diminution in Value upon all of the Prepetition Collateral (the "UST Tranche A Adequate Protection Liens" and together with the UST Tranche B Adequate Protection Liens, the "UST Adequate Protection Liens"), (i) in the case of the Prepetition ABL Collateral, subject and subordinate to, in the following order, (A) the Prepetition Permitted Senior Liens, (B) the ABL Adequate Protection Liens, (C) the Prepetition ABL Liens, (D) the B-2 Adequate Protection Liens, (E) the Prepetition B-2 Liens, and *pari passu* with the UST Tranche B Adequate Protection Liens, (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Prepetition Permitted Senior Liens, (B) the B-2 Adequate Protection Liens, (C) the Prepetition B-2 Liens, (D) the ABL Adequate Protection Liens, and (E) the Prepetition ABL Liens, and *pari passu* with the UST Tranche B Adequate Protection Liens, and (iii) in the case of the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, subject and subordinate to, in the following order, (A) the Prepetition Permitted Senior Liens, (B) the UST Tranche B Adequate Protection Liens, (C) the Prepetition UST Tranche B Liens, (D) the B-2 Adequate Protection Liens, (E) the Prepetition B-2 Liens, (F) the ABL Adequate Protection Liens, and (H) the Prepetition ABL Liens.

(ii)      *UST Tranche A Section 507(b) Claims.*  The Prepetition UST Tranche A Secured Parties are hereby granted allowed superpriority administrative expense claims

against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition UST Tranche A Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "UST Tranche A 507(b) Claims," and together with the UST Tranche B 507(b) Claims, the "UST 507(b) Claims"), which UST Tranche A 507(b) Claims shall be payable from and have recourse to all Prepetition Collateral and all proceeds thereof (excluding avoidance actions under the Bankruptcy Code but including, without limitation, avoidance proceeds thereof).  Except as otherwise provided herein, the UST Tranche A 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that (i) with respect to the Prepetition ABL Priority Collateral, the UST Tranche A 507(b) Claims shall be *pari passu* with the UST Tranche B 507(b) claims and junior to, in the following order, (A) the ABL 507(b) Claims and (B) the B-2 507(b) Claims; (iv) with respect to the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, the UST Tranche A 507(b) Claims shall be junior to, in the following order, (A) the UST Tranche B 507(b) Claims, (B) the B-2 507(b) Claims, and (C) the ABL 507(b) Claims; and (v) with respect to the Prepetition B-2 Priority Collateral, the UST Tranche A 507(b) Claims shall be shall be *pari passu* with the UST Tranche B 507(b) claims and junior to, in the following order, (A) the B-2 507(b) Claims, and (B) the ABL 507(b) Claims.

13.    *Maintenance of Collateral*.  The Prepetition Loan Parties shall continue to maintain and insure the Prepetition Collateral, including the Prepetition UST Collateral, in amounts and for the risks, and by the entities, as required under the Prepetition Loan Documents.

14.    *Perfection of Adequate Protection Liens.*

(a)    Without in any way limiting the validity of the automatic perfection of the Adequate Protection Liens and the UST Adequate Protection Liens under the terms of this Interim Order, the Prepetition Secured Parties (including the Prepetition UST Secured Parties) are hereby authorized, but not required, to execute in the name of the Prepetition Loan Parties (as applicable), as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction, or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests granted to them hereunder (the "Perfection Actions").  All such Perfection Actions shall be deemed to have been taken on the date of entry of this Interim Order.  The automatic stay shall be modified to the extent necessary to permit each of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) to take any Perfection Action.  For the avoidance of doubt, the Adequate Protection Liens and the UST Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order, whether or not the Prepetition Secured Parties (including the Prepetition UST Secured Parties) take such Perfection Actions.

(b)    A certified copy of this Interim Order may, in the discretion of each Prepetition Agent, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing and recording offices are hereby authorized and directed to accept a certified copy of this Interim Order for filing and/or recording, as applicable.

15.    *Preservation of Rights Granted Under this Interim Order.*

(a)    Other than the claims and liens expressly granted or permitted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order shall be permitted while any of the Adequate Protection Obligations and/or UST Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in or permitted under this Interim Order, the Adequate Protection Liens and the UST Adequate Protection Liens shall not be: (i) junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Prepetition Loan Parties; or (iv) junior to any intercompany liens or security interests of the Prepetition Loan Parties.

(b)    Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting these cases to cases to a Successor Case: (A) the Adequate Protection Liens, the UST Adequate Protection Liens, the 507(b) Claims (including the UST 507(b) Claims), and the Prepetition Liens (including the Prepetition UST Liens) shall continue in full force and effect, shall maintain their priorities as provided in this Interim Order, and shall remain binding on all parties in interest until all Adequate Protection Obligations and/or UST Adequate Protection Obligations shall have been indefeasibly paid in full; (B) the other rights granted by this Interim Order shall not be affected; and (C) this

Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any Adequate Protection Obligations and/or UST Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Agents of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, and enforceability of the Prepetition Liens (including the Prepetition UST Liens) and the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacatur or stay, the Adequate Protection Obligations, the UST Adequate Protection Obligations, Adequate Protection Liens, and 507(b) Claims incurred prior to the actual receipt of written notice by the Prepetition Agents, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Secured Parties (including the Prepetition UST Secured Parties) shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code.

(d)     Except as expressly provided in this Interim Order or the Adequate Protection Liens, the 507(b) Claims, and all other rights and remedies of the Prepetition Secured Parties granted by this Interim Order shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these cases, or terminating the joint administration of these cases; (ii) approving the sale of any Prepetition Collateral pursuant to section 363(b) of the Bankruptcy Code; or (iii) confirming a chapter 11 plan in any of the cases. The terms and provisions of this Interim Order (pending entry of the Interim DIP Order) shall

continue in full force and effect in these cases and in any Successor Cases until all Prepetition

Secured Obligations, and Adequate Protection Obligations (including UST Adequate Protection

Obligations) are indefeasibly paid in full in cash.

16.    *Reserved.*

17.    *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, and

agreements contained in this Interim Order shall be binding upon the Debtors in all circumstances

and for all purposes.  The Debtors' stipulations, admissions and agreements contained in this

Interim Order shall be binding upon all other parties in interest, including, without limitation, any

statutory or non-statutory committees appointed or formed in these cases and any other person or

entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter

11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all

purposes unless: (a) such committee or other party in interest with requisite standing has timely

filed an adversary proceeding or contested matter (subject to the limitations contained herein) by

no later than (i) the earlier of (w) one business day before the hearing approving a sale of

substantially all of the Debtors' assets or confirming a plan of reorganization, whichever occurs

first, (x) as to the Creditors' Committee only, 75 calendar days after entry of this Interim Order,

(y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the Challenge

Period (as defined below), the Challenge Period solely for any such chapter 7 trustee or chapter 11

trustee shall be extended to the date that is the later of (A) 75 calendar days after entry of this

Interim Order, or (B) the date that is 30 calendar days after their appointment, and (z) for all other

parties in interest, 75 calendar days after entry of this Interim Order; and (ii) any such later date as

(v) has been agreed to in writing (which may be by email) by the Prepetition ABL Agent with

respect to the Prepetition ABL Obligations or the Prepetition ABL Liens, (w) has been agreed to

in writing (which may be by email) by the Prepetition B-2 Agent with respect to the Prepetition B-2 Obligations or the Prepetition B-2 Liens, (x) has been agreed to in writing (which may be by email) by the Prepetition UST Secured Parties with respect to the Prepetition UST Secured Obligations or the Prepetition UST Liens, or (y) has been ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (i)-(ii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations, the Prepetition Liens (including the Prepetition UST Liens), or the Prepetition UST Secured Obligations or (B) asserting or prosecuting any avoidance actions under the Bankruptcy Code or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against any Prepetition Secured Parties (including the Prepetition UST Secured Parties) or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "Representatives") in connection with or related to the Prepetition Loan Documents, the Prepetition UST Loan Documents, the Prepetition Secured Obligations, the Prepetition UST Secured Obligations, the Prepetition Liens (including the Prepetition UST Liens), or the Prepetition Collateral (including the Prepetition UST Collateral); and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; *provided*, *however*, that any pleadings filed in connection with a Challenge shall set forth with specificity the basis for such Challenge and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred. If no Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the

plaintiff in any such Challenge, then: (1) the Debtors' stipulations, admission and agreements contained in this Interim Order shall be binding on all parties in interest; (2) the obligations of the Prepetition Loan Parties under the Prepetition Loan Documents and the Prepetition UST Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except as provided in the Prepetition Intercreditor Agreement), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these cases and any Successor Case(s); (3) the Prepetition Liens (including the Prepetition UST Liens) shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than as provided in the Prepetition Intercreditor Agreement), or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties (including

the Prepetition UST Secured Parties) and each of their Representatives shall be deemed forever waived, released and barred.  If any Challenge is timely filed during the Challenge Period, the stipulations, admissions and agreements contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions and agreements were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, the Prepetition UST Loan Documents, the Prepetition Secured Obligations, the Prepetition UST Secured Obligations, or the Prepetition Liens (including the Prepetition UST Liens), and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in these cases.

18.     *Reserved.*

19.     *Binding Effect; Successors and Assigns.*   The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the Prepetition Secured Parties (including the Prepetition UST Secured Parties), any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to

the benefit of the Prepetition Secured Parties (including the Prepetition UST Secured Parties), the Debtors, and their respective successors and assigns; *provided* that the Prepetition Secured Parties (including the Prepetition UST Secured Parties) shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral (including Prepetition UST Cash Collateral)) by, or to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

20.    Nothing in this Interim Order, the Prepetition Loan Documents, the Prepetition UST Loan Documents, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any Prepetition Secured Party (including any Prepetition UST Secured Party) any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  The Prepetition Secured Parties (including the Prepetition UST Secured Parties) shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Prepetition Collateral or the Prepetition UST Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the Prepetition Collateral shall be borne by the Debtors.

21.    *Limitation of Liability.*  In determining to permit the use of the Prepetition Collateral (including Cash Collateral (including Prepetition UST Cash Collateral)) solely in accordance with the Approved Budget, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the Prepetition Loan Documents, or the Prepetition UST Loan Documents, none of the Prepetition Secured Parties (including the Prepetition UST Secured

36

Parties) shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code).  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition Secured Parties or the Prepetition UST Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives.

22.    *Reserved.*

23.    *Reserved.*

24.    *Reserved.*

25.    *Reserved.*

26.    *Effectiveness*.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

27.    *Governing Order*.  Notwithstanding the relief granted in any other order by this Court, all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this Interim Order, including compliance with the Approved Budget and all other terms and conditions hereof.

28.     *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this Interim Order.

29.     *Reserved.*

30.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Cash Collateral Motion.

31.     *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

32.     *Necessary Action*.  The Debtors and the Prepetition Secured Parties (including the Prepetition UST Secured Parties) are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Interim Order.

33.     *Retention of Jurisdiction*.  This Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

34.     *Objections*.  Any objections or responses to entry of this Interim Order shall have been filed prior to or raised at the hearing held on August 9, 2023 at 3:00 p.m. (Prevailing Eastern Time).  Any party objecting to the relief sought at the hearing for entry of the Interim DIP Order or Interim UST Cash Collateral Order shall file and serve (via mail and e-mail), prior to such hearing, written objections, which objections shall be served upon (a) the Debtors, 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211 (Attn: Matthew A. Doheny and Leah Dawson);

(b) counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn.: Patrick J. Nash, Jr., P.C. and Whitney C. Fogelberg; 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith and Aaron Metviner; (c) counsel to certain investment funds and accounts managed by affiliates of Apollo Capital Management, L.P., Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn: Dennis F. Dunne and Matthew L. Brod; (d) counsel to Beal Bank USA, White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 Attn: Scott Greissman, Elizabeth Feld, and Andrew Zatz; (e) the Office of the United States Trustee for the District of Delaware; (f) counsel to the Creditors' Committee, if appointed; (g) the Prepetition ABL Agent, and counsel thereto, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Kevin Simard and Seth Mennillo; (h) the Prepetition B-2 Agent, and counsel thereto; (i) the Prepetition UST Tranche A Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (j) the Prepetition UST Tranche B Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; and (k) the United States Department of the Treasury and counsel thereto, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602, Attn: Michael Messersmith, 250 West 55th Street, New York, New York 10019, Attn: Benjamin Mintz, and 601 Massachusetts Ave., N.W., Washington, DC 20001, Attn: Rosa Evergreen, and the U.S. Department of Justice, 1100 L St NW Rm 7102, Washington, DC 20005-4035, Attn: I-Heng.Hsu and Crystal Geise.

35.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing and to any party that has filed with this Court a request for notices in these cases.


**Dated: August 10th, 2023**
**Wilmington, Delaware**

                                        **CRAIG T. GOLDBLATT**
                                        **UNITED STATES BANKRUPTCY JUDGE**