# **Exhibit 1**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, et al.,[1] | ) | Case No. 23-11069 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## MOTION OF DEBTORS FOR ENTRY OF
## INTERIM AND FINAL ORDERS (I) AUTHORIZING THE
## DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
## COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
## EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

### Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), (a) authorizing, but not directing, the Debtors to continue to administer the Compensation and Benefits Programs (as defined herein), including payment of prepetition obligations related thereto in an aggregate amount not to exceed approximately $22,320,000 pursuant to the Interim Order and in an amount to be determined pursuant to the Final Order; and (b) granting related relief.  In

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]     A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration, as applicable.

addition, the Debtors request that the Court schedule a final hearing within approximately twenty-one days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

<b><u>Jurisdiction and Venue</u></b>

2.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.   The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 363(c), 507(a), and 541(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rules 2002-1 and 9013-1.

<b><u>Background</u></b>

5.      The Debtors were a leading provider of transportation services with a 100-year history.   With its family of trucking brands—Yellow Logistics, Holland, Reddaway, New Penn, and YRC—the Debtors provided their customers with one of the most comprehensive less-than-truckload ("<u>LTL</u>") networks in North America.

6.      The Debtors commenced these chapter 11 cases to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders.  Through these chapter 11 cases, the Debtors will immediately commence an orderly and value-maximizing wind-down of their businesses.  The Debtors will use their time in chapter 11 to market a sale or sales of all or substantially all of their assets.

7.      On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no official committees have been appointed or designated.

**The Debtors' Workforce**

**I.      The Debtors' Prepetition Workforce**.

8.      Prior to the Petition Date, the Debtors employed approximately 28,500 total employees in the U.S. and Canada, consisting of approximately 23,000 union employees and approximately 5,500 non-union employees.  As discussed in the First Day Declaration, in late July, the Debtors' management team and advisors commenced permanent layoffs of their workforce, began clearing the Debtors' freight network, and ceased most, if not all, operations in the U.S. and Canada.

9.      On July 28, 2023, the Debtors implemented a reduction in force (the "RIF") and notified approximately 3,350 non-union employees in the U.S. that they were being terminated. The Debtors paid cash severance amounts to eligible non-union U.S. employees pursuant to the Debtors' severance policy.  Shortly thereafter, on July 30, 2023, the Debtors posted notice at all

terminal locations that substantially all operations had ceased. Simultaneously, the Debtors provided notice to the IBT, the International Association of Machinists and Aerospace Workers, the Office and Professional Employees International Union, and the International Longshoremen's Association unions that the Debtors would be permanently laying-off and consequently terminating approximately 23,000 union employees in the U.S. On July 31, 2023, the Debtors issued notices pursuant to the federal Worker Adjustment and Retraining Notification Act (the "WARN Act") to the approximately 23,000 individual union employees in the U.S., notifying such employees that they had been permanently laid off and consequently terminated.

10.     On August 2, 2023, the Debtors paid cash severance amounts and statutory termination pay, as applicable, to eligible Canadian union and non-union employees pursuant to individual employment contracts and/or policy, as applicable. The Debtors also terminated an additional approximately 200 U.S. non-union employees and made payments to those individuals pursuant to the Debtors' severance policy (all employees terminated before the Petition Date, collectively, the "Former Employees").

## II.    The Debtors' Postpetition Workforce.

11.     The Debtors have retained a core group of approximately 1,650 go-forward employees (the "Employees") to maintain the essential knowledge necessary to the Debtors' assets and operations to pursue an orderly wind-down of their estates in these chapter 11 cases. Of these, approximately 1,575 are U.S. Employees, and approximately 75 are Canadian Employees. Approximately 1,550 U.S. Employees and approximately all Canadian Employees are full-time Employees, and approximately 25 U.S. Employees are part-time Employees. The Employees are compensated on a salaried or hourly basis. Approximately 1,300 U.S. Employees and approximately all Canadian Employees are salaried. Salaried Employees include corporate management along with certain administrative and technical personnel. Approximately 275 of the

Debtors' U.S. Employees are paid on an hourly basis. As of the Petition Date, none of the Debtors' Employees are union members.

12. The Debtors historically sourced, and will continue to source, critical labor support from various agencies and periodically retain specialized individuals as independent contractors or temporary workers (the "Temporary Workers") to complete discrete projects relating to, among others, information technology, collections, warehousing, and other back-office support. In general, the Debtors pay Temporary Workers according to services contracts. The Temporary Workers are an important supplement to the efforts of the Debtors' Employees.

13. Together, the Employees and Temporary Workers perform a variety of critical functions including accounting, administration, finance, human resources, management, security, and other tasks that are essential to the Debtors' limited operations for purposes of implementing a value-maximizing wind-down.

14. The Debtors seek authority, in their sole discretion, to (a) pay and honor certain prepetition claims for, and (b) continue to pay on a postpetition basis in the ordinary course, among other amounts, wages, salaries, commissions, overtime, fees, notice pay, pay in lieu of notice of termination, severance pay, paid time off, vacation pay, sick pay, and other compensation (including compensation for independent contractors and temporary workers), payroll services, federal, state, city, local, and provincial (as applicable) withholding taxes, and other amounts withheld (including garnishments, Employees' share of insurance premiums, taxes, and savings and retirement plan contributions and benefits), health insurance, leaves of absence, life insurance, short-term and long-term disability coverage, expense reimbursements, certain other benefits that the Debtors have historically provided in the ordinary course, amounts owed under employment agreements, contractor agreements, or consulting agreements, and to pay all administrative and

processing costs incident to the foregoing, and certain obligations incident to the WARN Act and various state law equivalent "mini-WARN Acts" and obligations in respect of group terminations in Canada, if any, and all compensation and programs described herein (the foregoing, collectively, the "Compensation and Benefits" and programs related thereto, the "Compensation and Benefit Programs").[3]

15.     As set forth below, by this motion, the Debtors seek authority, but not direction, to pay, remit, or reimburse, as applicable, the following aggregate prepetition amounts on account of the Compensation and Benefits Programs set forth below:

| Prepetition Employee-Related Obligations | Amount Requested | |
|---|---|---|
| | Interim | Final |
| **Compensation** | | |
| Wages | $8,725,000 | $8,725,000 |
| Temporary Workers Fees | $300,000 | $600,000 |
| Deductions and Withholdings | $6,225,000 | $6,225,000 |
| Reimbursable Expenses | $375,000 | $375,000 |
| Collections Program | $55,000 | $55,000 |
| **Subtotal** | **$15,680,000** | **$15,980,000** |
| **Benefits** | | |
| Health Plans and Additional Employee Benefits | $6,640,000 | **TBD** |
| Paid Time Off and Other Leaves of Absence | $0 | $92,900,000 |
| **Subtotal** | **$6,640,000** | **TBD** |
| **Compensation and Benefits** | **$22,320,000** | **TBD** |

16.     Further descriptions of these programs and the prepetition amounts owing, if any, on account of such programs are provided below.  Subject to the Court's approval, the Debtors intend to continue the Compensation and Benefits Programs described herein in the ordinary course.  Out of an abundance of caution, the Debtors request authority to modify, change, supplement, and/or discontinue any of their Compensation and Benefits Programs and to

---

[3]     Out of an abundance of caution, the Debtors request the right to continue, modify, change, or discontinue any other similar programs not discussed herein, in the ordinary course during these chapter 11 cases, in their sole discretion and without the need for further Court approval, subject to applicable law.

implement new programs, policies, and benefits in the ordinary course during these chapter 11 cases in their sole discretion (subject in all respects to the terms of the Interim Order and Final Order, as applicable) and without the need for further Court approval, subject to applicable law. For the avoidance of doubt, to the extent the Debtors seek to pay outstanding prepetition amounts on account of the Compensation and Benefits Programs in excess of the priority amount of $15,150 imposed by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Priority Claim Amount"), the Debtors request such relief solely pursuant to the Final Order.

## Employee Compensation

17.     The Debtors seek authority, but not direction, to pay, remit, or reimburse as applicable (a) pay certain prepetition claims, if any, relating to the Compensation and Benefits Programs; (b) pay all costs related to or on account of the Compensation and Benefits Programs; and (c) continue to make payments related to the Compensation and Benefits Programs on a postpetition basis in the ordinary course.

**I.     Wages**.

18.     The Debtors incurred, and continue to incur, payroll obligations to their Former Employees and Employees, respectively.  Such obligations are generally comprised of wages and salaries (the "Wages").  The Debtors pay their hourly Employees according to several different payment periods.  The Debtors pay their Employees' wages and salaries in arrears either:  (a) on a weekly basis every Thursday or Friday; (b) on a bi-weekly basis every Wednesday or Friday; or (c) on a bi-weekly basis paid current on Friday.   The Debtors pay their salaried Employees (i) current on the fifteenth day and the last day of every month or (ii) in arrears on the eleventh day and twenty-sixth day of every month (each date of payment a "Pay Day").  If a Pay Day falls on a Saturday, Sunday, or certain holidays, however, the Debtors instead make such payments on the last business day before such regularly scheduled date.  The vast majority of the Employees receive

their wages and salaries by direct deposit through electronic transfer of funds directly to Employees' bank accounts, with the remaining U.S. Employees and Canadian Employees receiving checks. On average, the Debtors expect to incur approximately $3,400,000 per week for gross Employee wages, which amount may decrease over time, inclusive of net pay and Withholding and Deduction Obligations (as defined below) during these chapter 11 cases.

19.    Because certain of the Former Employees and Employees are paid in arrears, they have not been paid all of their prepetition wages and compensation as of the Petition Date. Additionally, some individuals may be entitled to compensation because (a) discrepancies may exist between the amounts paid and the amounts that should have been paid and (b) some checks issued prior to the Petition Date may not have been presented for payment or may not have cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date.

20.    As of the Petition Date, the Debtors estimate that they owe approximately $8,725,000 in unpaid wages (the "Unpaid Wages"), consisting of approximately $1,600,000 for Employees and $7,125,000 for Former Employees who are typically paid in arrears and thus their next pay period is scheduled for after the Petition Date.

21.    The Debtors fund their own payroll accounts in advance of each Pay Day and are also responsible for paying all of the withholdings and payroll taxes to applicable third parties. The majority of the Debtors service their payroll accounts and issue checks on each Pay Day. The Debtors utilize payroll service company Automatic Data Processing, Inc. or one of its affiliates ("ADP") for certain payroll processing and third-party remittance services. The Debtors expect to pay service and processing fees to ADP of approximately $15,000 per month and approximately $1,000 (CAD) per month and estimate that, as of the Petition Date, they owe ADP approximately $50,000 and approximately $6,000 (CAD). By this motion, the Debtors request authority to pay

any prepetition amounts due to ADP (the "Unpaid Payroll Processing Fees"), and to continue using ADP as the Debtors' payroll processor on a postpetition basis in the ordinary course.

22.　　In addition to obligations to their Employees, the Debtors incur compensation obligations to Temporary Workers in the ordinary course.　The Debtors expect to pay approximately $50,000 per week on account of work performed by the Temporary Workers, and related fees.　As of the Petition Date, the Debtors estimate that they owe approximately $600,000 in prepetition accrued wages, salaries, and fees to Temporary Workers or their agencies (the "Temporary Workers Fees").

23.　　By this motion, pursuant to the Interim Order, the Debtors request authority, in their sole discretion, to (a) pay the unpaid Temporary Workers Fees, and Unpaid Wages of Former Employees and Employees in the ordinary course of the Debtors' business, and (b) pay Temporary Workers Fees and Wages in the ordinary course on a postpetition basis.

## II.　Non-Employee Director Compensation (Final Order Only).

24.　　As of the Petition Date, the board includes nine non-Employee individuals who serve as directors for the Debtors (the "Non-Employee Directors").　The Non-Employee Directors receive an average annual cash retainer of $272,000, paid quarterly in advance, as compensation for serving on the board and various committees (the "Non-Employee Director Fees").　As of the Petition Date, the Debtors do not believe they owe any amounts on account of Non-Employee Director Fees and believe that they are authorized to pay any postpetition Non-Employee Director Fees in the ordinary course.　However, out of an abundance of caution, by this motion, the Debtors seek authority to continue to pay the Non-Employee Director Fees on a postpetition basis in the ordinary course and consistent with their prepetition practices.

### III.     **Deductions and Withholdings**.

25.     **Deductions**.  During each applicable pay period, the Debtors routinely deduct certain amounts from Employees' paychecks, including, without limitation, garnishments, levies, child support and related fees, and pre-tax deductions payable pursuant to certain of the Debtors' Health Plans (as defined herein), including, but not limited to, an Employee's share of healthcare benefits and insurance premiums, retirement plan contributions, and legally ordered deductions (collectively, the "Deductions").  The Debtors forward such Deduction amounts to various third party recipients.

26.     **Payroll Taxes**.  In addition to the Deductions, certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay pursuant to federal, state, and local income taxes, as well as Social Security and Medicare taxes; similarly, the Debtors are required by law to withhold from their Canadian Employees' wages, amounts related to federal and provincial income taxes, employment insurance premiums, social insurance (Canada Pension Plan / Quebec Pension Plan) premiums, and, in some provinces, provincial health insurance taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities.  The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance, Social Security and Medicare taxes, and Canadian or provincial, as applicable, employment insurance premiums, social insurance (Canada Pension Plan / Quebec Pension Plan) premiums, and in some provinces, provincial health insurance taxes, levies, or assessments and workers compensation levies or assessments (the "Employer Payroll Taxes" and, together with the Employee Payroll Taxes, the "Payroll Taxes").  The majority of Payroll Taxes are generally processed and forwarded to the appropriate federal, state, or local taxing authority promptly after the Employees' payroll checks are disbursed.

27.     The Deductions and Payroll Taxes (together, the "Withholding and Deduction Obligations") are expected to be approximately $1,250,000 per week in the U.S. and approximately $33,500 (CAD) per week in Canada during these chapter 11 cases, which amounts may decrease over time.  As of the Petition Date, the Debtors estimate that the aggregate amount of accrued but unpaid Withholding and Deduction Obligations is approximately $5,800,000 in the U.S. and $550,000 (CAD) in Canada.  By this motion, the Debtors seek authority to pay or deduct in a manner consistent with historical practice any unpaid Withholding and Deduction Obligations, including amounts that may have accrued or been incurred prior to the Petition Date, and to continue to honor the Withholding and Deduction Obligations in the ordinary course on a postpetition basis.[4]

## IV.     Honoring Checks for, and Payment of, Reimbursable Expenses.

28.     The Debtors reimburse Employees or pay credit card invoices on their behalf for approved, legitimate expenses incurred on behalf of the Debtors in the ordinary course.  The Debtors expect Employees to continue to incur necessary reimbursable expenses (the "Reimbursable Expenses") in connection with the Debtors' limited business operations for purposes of implementing a value-maximizing wind-down.  The Reimbursable Expenses include, without limitation:  (a) mileage reimbursement; (b) travel expenses for meals, hotels, and rental cars; (c) telephone expenses paid by Employees; (d) certain automobile maintenance for eligible Employees that require use of personal vehicles; (e) certain other automobile reimbursement programs for eligible safety and security Employees and (f) fuel expenses.  Employees who pay

---

[4]    Concurrently herewith, the Debtors have filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Payment of Certain Prepetition and Postpetition Taxes and Fees and (II) Granting Related Relief*, in which the Debtors are not seeking any relief relating to payroll taxes.

for their own Reimbursable Expenses up front can apply for reimbursement of Reimbursable Expenses by submitting an expense report.  Once the Debtors determine that the charges are for legitimate reimbursable business expenses, the Debtors reimburse Employees for such expenses.

29.     The Debtors estimate that as of the Petition Date, Employees and Former Employees incurred approximately $375,000 of Reimbursable Expenses, which remain unpaid.

30.     Employees incur Reimbursable Expenses on the Debtors' behalf and with the understanding that they ultimately will be reimbursed by the Debtors.  Accordingly, to avoid harming Employees and Former Employees who incurred or may incur the Reimbursable Expenses, the Debtors request authority, to be exercised in their sole discretion, to:  (a) reimburse Employees and former Employees for unpaid prepetition Reimbursable Expenses; (b) continue paying Reimbursable Expenses in accordance with prepetition practices; (c) modify their prepetition policies relating thereto as they deem appropriate; and (d) pay all Reimbursable Expenses that relate to the prepetition period and are submitted to the Debtors postpetition.

31.     By this motion, the Debtors request authority, in their sole discretion, to continue to honor and pay (a) unpaid, prepetition Reimbursable Expenses in the ordinary course, and (b) postpetition Reimbursable Expenses in the ordinary course.

**V.     Collections Program**.

32.     In the ordinary course, the Debtors also utilize a collections program for Employees in the Debtors' collections department (the "Collections Program") under which Employees are eligible to receive compensation based on amounts collected by such Employees, with the Employees earning a percentage thereof.  Earnings under the Collections Program are paid monthly in arrears for the prior month.  This program is critical, as monetizing the approximately $485 million in prepetition accounts receivable is essential to maximize the value of the estates for all stakeholders during these chapter 11 cases.  Approximately 75 non-insider Employees are

eligible to receive payments under the Collections Program, and the total aggregate amount expected to be paid each month is, on average, approximately $50,000. As of the Petition Date, the Debtors believe they owe Employees approximately $55,000 in accrued but unpaid amounts under the Collections Program.

33.    By this motion, the Debtors seek authority, in their sole discretion, to continue the Collections Program and to honor their prepetition and postpetition obligations to non-insider Employees thereunder.

### Employee Benefit Programs

34.    The Debtors offer their Employees the ability to participate in a number of insurance and benefits programs, including, among other things, health care, prescription drug, vision and dental plans, vacation time, sick leave and other paid leaves of absence, retirement savings plans, flexible spending accounts, life insurance and short-term salary continuation and long-term disability benefits, contractual severance arrangements, and the benefit programs described herein (collectively, the "Employee Benefit Programs" and the benefits offered thereunder, the "Benefits").

**I.    Medical, Dental and Vision Plans**.

35.    The Debtors offer health insurance to U.S. Employees (and offered health insurance to U.S. Former Employees who were not otherwise covered by a union health insurance plan) for medical, prescription drug, dental, and vision coverage (collectively, the "U.S. Health Plan").

36.    **Medical Plans**. Approximately 1,350 U.S. Employees participate in the U.S. medical plans, which are self-insured and expected to cost the Debtors approximately $2,650,000 each month, inclusive of fees to the third-party administrators of the programs that fluctuate based on the amount of participants, for payment of claims under the PPO and HMO (each as defined below) programs described herein. Among the plans offered by the Debtors are three Preferred

Provider Organization ("PPO") plans and one Health Maintenance Organization ("HMO") plan. The monthly health care premiums differ depending on the plan in which the Employee is enrolled, and the number of Employee dependents covered by the applicable plan. Claims for medical benefits are administered through various third-party administrators depending upon the medical plan the Employee selected. Currently, the Debtors use BlueCross BlueShield of Illinois as the claims administrator for its three PPOs, all of which are self-insured. Kaiser Permanente is the claims administrator for the HMO plan (which is fully insured). Eligibility for the HMO plan is based upon the Employee's geographic location. As of the Petition Date, the Debtors estimate that approximately $5,300,000 related to the U.S. medical plans remains outstanding and unpaid. The Debtors request authority to pay such amounts.

37. **Prescription Drug Plan**. Approximately 1,350 U.S. Employees participate in the U.S. prescription drug plan. Employees cannot enroll in a prescription drug plan without enrolling in one of the medical plans. Employees and dependents covered by the Debtors' PPO (self-insured) plans are covered under one of the three prescription drug plans, which is administered by CVS Caremark. For Employees electing coverage under the HMO, Kaiser Permanente provides the prescription drug coverage. The U.S. prescription drug plan is expected to cost the Debtors approximately $475,000 each month, inclusive of monthly fees to Kaiser Permanente and CVS Caremark, which are based upon the number of participants. As of the Petition Date, the Debtors estimate that approximately $700,000 related to the U.S. prescription drug plan remains outstanding and unpaid. The Debtors request authority to pay such amounts.

38. **Dental Plan**. Approximately 1,350 U.S. Employees participate in the U.S. self-insured dental plan. Claims for dental benefits are administered by Delta Dental of Kansas. The Debtors' average cost to administer the dental plan is expected to be approximately $100,000

per month, inclusive of monthly fees to Delta Dental of Kansas, which are largely based upon the number of participants. As of the Petition Date, the Debtors estimate that approximately $260,000 related to the U.S. dental plan remains outstanding and unpaid. The Debtors request authority to pay such amounts.

39.     **Vision Plan**. The Debtors provide certain vision benefits for their U.S. Employees. Approximately 1,300 U.S. Employees participate in the U.S. vision plan. Claims for vision benefits are administered by Surency. The Debtors' average cost to administer this vision plan is expected to be approximately $25,000 per month, inclusive of monthly fees to Surency, which are largely based upon the number of participants. As of the Petition Date, the Debtors estimate that approximately $50,000 related to the U.S. vision plan remains outstanding and unpaid. The Debtors request authority to pay such amounts.

40.     **Voluntary Health Insurance**. The Debtors offer various voluntary health insurance plans to U.S. Employees that are funded entirely by Employees through post-tax payroll deductions, all of which are administered by Voya Financial. Approximately 200 U.S. Employees participate in Voluntary Hospital Indemnity Insurance, which pays a cash benefit directly to Employees and eligible dependents for hospital admissions. Approximately 300 U.S. Employees participate in Voluntary Accident Insurance, which pays a cash benefit directly to Employees and eligible dependents for specific injuries and events resulting from a covered accident. Approximately 250 U.S. Employees participate in Voluntary Critical Illness Insurance, which pays a cash benefit directly to Employees and eligible dependents diagnosed with a covered illness or condition (such as cancer, heart attack, stroke, multiple sclerosis, Alzheimer's, etc.).

41.     **Canadian Health Plan**. The Debtors offer self-insured health insurance to all of their Canadian Employees (who are not otherwise covered by a health insurance plan) for medical,

15

dental, and vision coverage (collectively, the "Canadian Health Plan," and together with the U.S. Health Plan, the "Health Plans").  The Debtors also provide Canadian Employees with prescription drug plans, vision plans, and self-insured dental plans.  Approximately 75 Canadian Employees participate in the Canadian Health Plan, which is administered by The Canada Life Insurance Company.  The Debtors expect to pay approximately $13,000 (CAD) per month on account of the Canadian Health Plans, inclusive of monthly fees to The Canada Life Insurance Company, which are largely based upon the number of participants.  As of the Petition Date, the Debtors estimate that approximately $30,000 related to the Canadian Health Plan remains outstanding and unpaid. The Debtors request authority to pay such amounts.

42.     **COBRA Benefits**.  Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Former Employees of the Debtors (the "COBRA Participants") may continue to receive benefits in connection with certain of the Health Plans (the "COBRA Benefits").  COBRA Participants may be entitled by law to continue to receive COBRA Benefits for up to eighteen months, and in some instances up to thirty six months, following termination of employment.

43.     Typically, COBRA Employees are responsible for paying all costs associated with the COBRA Benefits except in certain circumstances, not applicable here.  The Debtors provide the COBRA Benefits as part of their Employee Benefit Programs and Health Plans in the ordinary course expenditures.  Accordingly, the Debtors seek authority to continue providing the COBRA Benefits in the ordinary course, including any prepetition amounts that may ultimately be owed on account of the COBRA Benefits.

44.     By this motion, the Debtors seek authority, in their sole discretion, to (a) continue the Health Plans in the ordinary course, (b) continue making contributions to the Health Plans, and

(c) pay any prepetition amounts related thereto, including approximately $6,340,000 in prepetition amounts, and any premiums, claim amounts, and administration fees to the extent that they remain unpaid as of the Petition Date.

**II.    Paid Time Off and Other Leaves of Absence, and Holiday Pay**.

45.    **Paid Time Off**.  The Debtors provided, and continue to provide, certain of their Employees and Former Employees with a set amount of paid time off, vacation pay, sick time, or personal time (collectively "PTO").  The amount of PTO available to a particular Employee and the rate at which such PTO accrues is generally determined by the Employee's length of employment.  When an Employee elects to take PTO, that Employee is paid his or her regular hourly or salaried rate.  Employees are generally allowed to carry over 120 hours from the prior year, but certain states allow for additional carry over of PTO.

46.    **Leaves of Absence**.  The Debtors' allow their Employees to take certain leaves of absence for personal reasons, many of which are required by law ("Leaves of Absence").  Leaves of Absence include, among others, parental leave, pregnancy leave, ongoing medical conditions, bereavement, jury duty, military leave, or other personal issues.

47.    **Holiday Pay**.  The Debtors provide their U.S. Employees with paid holidays (the "Holiday Pay").  Canadian Employees receive a similar amount of Holiday Pay with the actual schedule differing province-by-province.

48.    **Interim and Final Relief Requested**.  By this motion, the Debtors request interim and final authorization, but not direction, to continue to honor and pay PTO in the ordinary course on a postpetition basis, including making any cash-out payments of Employees' earned but unused PTO with respect to Employees terminated after the Petition Date, subject to any limitations under section 503(c)(2) of the Bankruptcy Code.

49. **Relief Requested Solely on a Final Basis**.  By this motion, the Debtors request, solely on a final basis, authorization, but not direction, to honor and pay PTO, including making any cash-out payments of Employees' or Former Employees' earned but unused PTO which accrued prepetition, regardless of any limitations under section 503(c)(2) of the Bankruptcy Code.

### III.  Severance.

50. The Debtors maintain a severance policy under which U.S. Employees are entitled to receive benefits (the "U.S. Severance Program").  Under the U.S. Severance Program, eligible U.S. Employees below the level of director receive between 2- and 6-weeks' pay, depending on his or her position and years of completed service with the Debtors.  Eligible U.S. Employees with a position of director or above receive between 6.5-weeks and 13-weeks' pay, depending on his or her position with the Debtors.  Upon the Employee's involuntary separation from the Debtors due to a reduction in workforce and the Employee's timely execution of a release of claims against the Debtors, such Employee may receive severance benefits under the U.S. Severance Program.

51. During these chapter 11 cases, the Debtors anticipate further terminations during the postpetition period, and such terminations may implicate the WARN Act and/or various state law equivalent "mini-WARN Acts".  To the extent the RIF or any future terminations give rise to noticing or other obligations pursuant to the WARN Act or various state law equivalent "mini-WARN Acts" (the "WARN Obligations"), the Debtors, out of an abundance of caution, seek authority to make any postpetition payments that may be necessary for the Debtors to comply with the noticing or other requirements under the WARN Act and/or the various state law equivalent "mini-WARN Acts," as applicable.

52. Canadian law establishes statutory minimums for notice of termination and severance obligations—including, among others, health benefits—owed by companies to their employees; to the extent the RIF or any future terminations result in such statutory minimums

(the "Canadian Termination Obligations"), by this motion, out of an abundance of caution, the Debtors seek authority to make postpetition payments on behalf of prepetition or postpetition Canadian Termination Obligations, as applicable.

53.     The Debtors believe it is critical that they be authorized to continue offering severance benefits to current Employees who do not qualify as "insiders," as that term is defined in section 101(31) of the Bankruptcy Code, in the ordinary course after the Petition Date.  To commence an orderly wind-down, the Debtors require the unique knowledge and historical perspective of the Debtors' businesses possessed by the Employees.  By granting the relief requested herein, Employees are assured that they will have the same benefits available inside bankruptcy that they had prior to the Petition Date.

54.     **Interim Relief Requested**.  By this motion, the Debtors seek interim authority, but not direction, to (a) make ordinary course postpetition payments, including any related fees, to Employees terminated after the Petition Date on behalf of obligations accrued postpetition, in connection with U.S. Severance Programs, WARN Obligations, and Canadian Termination Obligations, as applicable; and (b) make postpetition payments, including any related fees, on account of obligations, if any, that accrued prepetition in connection with the WARN Obligations, or Canadian Termination Obligations subject to any limitations under section 503(c)(2) of the Bankruptcy Code.  The Debtors do not believe that there are any accrued and outstanding prepetition U.S. Severance Program obligations on account of Former Employees and, accordingly, seek no relief to make such payments.  The Debtors are not seeking authority to make any severance payments to any insiders of the Debtors.

55.     **Final Relief Requested**.  By this motion, the Debtors seek final authority, in their sole discretion, to (a) make ordinary course postpetition payments on behalf of obligations,

including any related fees, accrued postpetition in connection U.S. Severance Programs, WARN Obligations, and Canadian Termination Obligations, as applicable; and (b) make postpetition payments, including any related fees, on account of obligations, if any, that accrued prepetition in connection with the WARN Obligations, or Canadian Termination Obligations subject to any limitations under section 503(c)(2) of the Bankruptcy Code. The Debtors are not seeking authority to make any severance payments to any insiders of the Debtors.

**IV.    Employee Savings and Retirement Plans**.

56.    **U.S. Qualified Defined Contribution Plans**. The Debtors sponsor a qualified defined contribution plan intended to meet the requirements of section 401(k) of the Internal Revenue Code (the "401(k) Plan").

57.    Approximately 1,300 U.S. Employees have an active 401(k) account, approximately all of which are currently contributing to the 401(k) Plan, and the approximate weekly amount withheld from the U.S. participants' paychecks for 401(k) contributions are expected to be $185,000. U.S. Employees may contribute between 1 percent and 89 percent to pre-tax and/or Roth 401(k) through payroll deduction. Employees are automatically enrolled at a 6 percent pre-tax deferral. The Debtors estimate that as of the Petition Date, they owe approximately $650,000 in remittances to the 401(k) Plan, which are included in the Withholding and Deduction Obligations described herein. These amounts represent Employee and Former Employee contributions held by the Debtors for transfer to the applicable third-party trustee and are included in the Withholding and Deduction Obligations described herein. By this motion, the Debtors seek authority, in their sole discretion, to continue to maintain the 401(k) Plan in the ordinary course postpetition and to pay any prepetition amounts owed thereunder.

58.    **Canadian Qualified Defined Contribution Plan**. The Debtors maintain certain registered retirement savings plans (the "RRSPs") meeting the requirements of Canadian law for

the benefit of Canadian salaried Employees.  Participants in the RRSPs receive matching contributions based, in part, on a percentage of their annual earnings.

59.     Approximately 40 Canadian Employees participate in the RRSP.  The Debtors expect the approximate weekly amount withheld from participating Canadian Employee paychecks for RRSP contributions and the Debtors' monthly matching contributions for Canadian Employees total approximately $2,000 (CAD).  By this motion, the Debtors seek authority to maintain and continue to fund the RRSPs in the ordinary course postpetition as well as authority, in their sole discretion, to pay any prepetition amounts that may be outstanding with respect to the RRSPs, including the matching contributions associated therewith, and amounts owed to Former Employees.

60.     **Pension Plans**.  The Debtors sponsor three qualified defined benefit pension plans for certain Employees and retirees: the Yellow Corporation Pension Plan, the Roadway LLC Pension Plan, and the Yellow Retirement Pension Plan (formerly the YRC Retirement Pension Plan) (collectively, the "Pension Plans").  The Debtors closed the Pension Plans to new participants on January 1, 2004, and, effective July 1, 2008, the Debtors froze benefit accruals under the Pension Plans for all participating employees.  On December 6, 2021, the Pension Plans entered into a contract for a group annuity to transfer the obligation to pay the remaining retirement benefits of certain specific plan participants in the Plans to a highly rated insurance company. Upon issuance of the group annuity contracts, the value of approximately 3,700 retirees' benefit obligations were irrevocably guaranteed by the insurer.  As of the Petition Date, the Debtors do not believe that they owe any accrued and unpaid amounts related to the Pension Plans.  By this motion, the Debtors request authority to maintain and continue to fund the Pension Plans in the

ordinary course postpetition as well as authority to modify, change, or discontinue the Pension Plans, in each case subject to applicable law.

## V.    Additional Employee Benefits.

61.    The Debtors also provide their Employees with a variety of insurance policies, flexible benefit programs, and various other benefits, including the programs set forth below (collectively, the "Additional Employee Benefits").  By this motion, pursuant to the Interim Order, the Debtors seek authority, in their sole discretion, to (a) continue the Additional Employee Benefits, (b) continue making the contributions described below to such benefit programs, (c) pay any amounts related thereto, including $300,000 in prepetition amounts, and any premiums and claim amounts, to the extent that they remain unpaid on the Petition Date, (d) revise any of the benefit programs described below in the ordinary course, and (e) where applicable, to resume any of the benefit programs described below at any time to the extent they deem appropriate.

### A.    Life Insurance and Disability Benefits.

62.    **U.S. Life Insurance**.  The Debtors provide all benefit-eligible U.S. Employees with basic life insurance coverage at no cost to U.S. Employees through Hartford Financial Services Group Inc. ("Hartford").  The maximum basic insurance amount provided is the lower of $50,000 or the amount of an Employee's "program pay," which is the sum of an Employee's annual base pay plus a three-year average of any lump sum payments, bonus, and incentive pay ("Program Pay").  This program is expected to cost the Debtors approximately $120,000 each month.  At their own cost, Employees may elect up to five times their Program Pay with a maximum coverage amount of $3 million (including basic life).  The premiums for the supplemental life insurance, in the aggregate amount of approximately $1,000,000 each year, are paid entirely by the electing Employees.  At the Employee's election, the supplemental life insurance may cover an Employee or his or her spouse and/or children.  The Debtors estimate that approximately 775 U.S. Employees

elected to purchase supplemental life insurance. The Employee contributions held by the Debtors for transfer to the applicable third-party insurer are included in the Withholding and Deduction Obligations described herein.

63.     **U.S. Accidental Death and Dismemberment Insurance**. The Debtors offer all benefit-eligible U.S. Employees, at the Employees' own cost, accidental death and dismemberment insurance ("AD&D") for the Employees or their families through Hartford, a third-party insurer. U.S. AD&D coverage cannot exceed the lower of 10 times Program Pay or $500,000. The Debtors estimate that approximately 1,000 U.S. Employees elected to purchase AD&D coverage. Employee contributions held by the Debtors for transfer to the applicable third-party insurer are included in the Withholding and Deduction Obligations described herein.

64.     **U.S. Long-Term Disability**. In addition, the Debtors provide full-time U.S. Employees with long-term disability benefits at no cost to the Employee at certain coverage levels through an affiliate of Hartford (the "U.S. Long-Term Disability Benefits"). The U.S. Long-Term Disability Benefits have two available coverage options: (a) 50 percent of Program Pay; or (b) 60 percent of Program Pay. The Debtors pay the full cost of the 50 percent of Program Pay coverage level and Employees can elect to buy-up to the 60 percent of Program Pay coverage level. The U.S. Long-Term Disability Benefits cover approximately 1,550 Employees. Employee contributions held by the Debtors for transfer to the applicable third-party insurer are included in the Withholding and Deduction Obligations described herein.

65.     **Canadian Life Insurance and Disability Benefits**. The Debtors provide all benefit-eligible Canadian Employees with certain life insurance, with premiums paid by the Debtors, and long-term disability coverage, with premiums paid by Employees. Life insurance and AD&D coverage are offered through Sun Life Assurance Company of Canada. Long-term

disability coverage is offered through Fenchurch General, and premiums are Employee paid. Short-term disability insurance is self-insured and paid through salary continuation, although Fenchurch General provides certain claims administration services. The basic Canadian life insurance and disability coverage and basic Canadian AD&D costs the Debtors approximately $70,000 (CAD) each year, in the aggregate. At their own cost, Employees may elect supplemental life insurance coverage; the premiums for this supplemental coverage are paid entirely by the electing Employees. The Debtors estimate that approximately 20 Canadian Employees have elected to purchase supplemental coverage. The Employee contributions held by the Debtors for transfer on account of Canadian supplemental coverage are included in the Withholding and Deduction Obligations described herein.

66.     **Short-Term Income Replacement Program**.  The Debtors provide certain of their Employees with short-term disability benefits under its Short-Term Income Replacement Program (the "STIR"), which is designed to provide partial wage replacement for eligible Employees who are necessarily absent from work due to illness or injury.  An Employee becomes eligible the first of the month following thirty days of completed service and after a period of absence more than the Employee's normal work week (typically three to five consecutive business days).  The Employee is eligible to receive full pay, 66.7 percent of full pay, or 60.0 percent of full pay for six months.  Exempt and non-exempt employees (as such terms are defined in the Fair Labor Standards Act of 1938), except for Reddaway non-exempt employees, receive 100 percent of base pay for the first thirteen weeks and 60 percent of base pay, thereafter, ending after the 26th week. Non-exempt employees are unpaid in the first week unless PTO is available.  Reddaway non-exempt employees are paid 66.7% of base pay for the 26-week period.  STIR benefits are paid as they arise as part of the Debtors' normal payroll process.  On a go-forward basis, the Debtors

expect to spend, on average, approximately $12,000 per month on account of U.S. Employees' STIR benefits.

### B. U.S. Flexible Benefit Plan.

67.     The Debtors offer their U.S. Employees the ability to contribute a portion of their pre-tax compensation to flexible spending accounts to pay for eligible out-of-pocket health care and dependent care expenses (the "Flexible Benefit Plan").  Approximately 110 U.S. Employees participate in the health care portion of the Flexible Benefit Plan.  Approximately 20 U.S. Employees participate in the dependent care portion of the Flexible Benefit Plan.  Employee contributions held by the Debtors for transfer to the applicable third-party are included in the Withholding and Deduction Obligations described herein.

## Basis for Relief

### I. Sufficient Cause Exists to Authorize the Debtors to Honor the Compensation and Benefits Obligations.

### A. Certain of the Compensation and Benefits Are Entitled To Priority Treatment.

68.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Compensation and Benefits Programs to priority treatment.  As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code for (a) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  To the extent that an Employee receives no more than the Priority Claim Amount, the relief sought with respect to compensation only affects the timing of payments to Employees and does not have any material negative impact on recoveries for general unsecured creditors.  To the extent an Employee is owed more than the Priority Claim Amount on account of certain Compensation

and Benefits Programs, full payment of such obligations in the ordinary course is warranted under section 363(b)(1) of the Bankruptcy Code and the doctrine of necessity.

69.     The Debtors' Employees are essential to the success of these chapter 11 cases and the Debtors' limited business operations for purposes of implementing a value-maximizing wind-down.  As such, payment of the Compensation and Benefits at this time is necessary to preserve and maximize the value of the Debtors' estates to the benefit of all stakeholders.  In light of Debtors' ongoing marketing efforts, losing the Debtors' Employees with historical knowledge of the Debtors' assets would create additional challenges to attracting potential bidders and successfully closing sales of the Debtors' assets.

### B.     Paying Certain Compensation and Benefits Is Required by Law.

70.     As discussed above, the Debtors seek authority to pay the Withholding and Deduction Obligations to the appropriate third-party payees.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' wages.  Certain Withholding and Deduction Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' wages on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Furthermore, federal, state, and provincial laws require the Debtors to withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also In re Net Pay Sols., Inc.*, 822 F.3d 144, 158 (3d Cir. 2016) (finding federal law required a corporate debtor to withhold tax funds to be paid to the IRS); *In re Branagan, Jr.*, 345 B.R. 144, 173-74 (Bankr. E.D. Pa. 2006) (holding the IRS had a valid proof of claim under federal law against debtor for failing to pay withheld employment taxes); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment

of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding and Deduction Obligations may not be property of the Debtors' estates, the Debtors request authority, but not direction, to transmit the Withholding and Deduction Obligations to the proper parties in the ordinary course. *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998).

71.     The Debtors therefore request that the Court recognize that the Withholding and Deduction Obligations are not property of the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the Petition Date, authorize the Debtors to transmit such monies to the proper parties in the ordinary course and consistent with past practice.

## II.     Paying Compensation and Benefits Is Warranted Under Sections 363(b) and 363(c) of the Bankruptcy Code and the Doctrine of Necessity.

72.     Section 363(c)(1) of the Bankruptcy Code expressly grants the Debtors the authority to "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing."  Therefore, the Debtors believe they are permitted to pay all postpetition amounts due pursuant to the Compensation and Benefits Programs as such actions are in the ordinary course of the Debtors' business.  Out of an abundance of caution, however, the Debtors seek entry of an order granting the relief requested herein to avoid any destruction to the value of their estates.

73.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the value of the estate.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–26 (D. Del. 1999); *see also In re Windstream Holdings Inc.*, 614 B.R. 441 (S.D.N.Y. 2020), *appeal dismissed as moot sub nom.*, 838 F. App'x 634 (2d Cir. 2021), *cert. denied sub nom.*, 142 S. Ct. 226, 211 L. Ed. 2d 99 (2021); *In re CoServ,*

*L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

74.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see, e.g.*, *In re Murray Metallurgical Coal Holdings, LLC*, 613 B.R. 442, 450 (Bankr. S.D. Ohio 2020) ("[T]here can be little doubt that [section 363(b)(1)] also provides a mechanism for debtors to obtain court authority to pay prepetition claims before confirmation if a sound business purpose supports the payment."); *In re Windstream Holdings Inc.*, 614 B.R. 441, 456 (S.D.N.Y. 2020) (finding authority to authorize the payment of prepetition claims where the debtor can "articulate some business justification, other than mere appeasement of major creditors . . . ."); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source of authority to make critical vendor payments, and section 105 is used to fill in the blanks."); *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b) of the Bankruptcy Code);

*Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397–98 (S.D.N.Y. 1983) (allowing contractor to pay prepetition claims of suppliers who were potential lien claimants under section 363 because the payments were necessary for general contractors to release funds owed to debtors); *see also In re CoServ L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

75.    Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825−26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay pre-petition claims that are essential to the continued operation of the business.). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882)). Indeed, at least one

court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

76.     These standards are satisfied here.  Paying the Compensation and Benefits and continuing the Compensation and Benefits Programs in the ordinary course represents a sound exercise of the Debtors' business judgment and is necessary to avoid immediate and irreparable harm to the Debtors' estates and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.  Paying the Compensation and Benefits Programs in the ordinary course will maximize the value of the Debtors' estates for the benefit of their creditors by allowing the Debtors' limited business operations to continue for purposes of implementing a value-maximizing wind-down.  Indeed, it is clear that without the relief requested herein, the Debtors' remaining Employees may seek alternative employment opportunities.  Such a development would diminish the value of the Debtors' estates at this critical juncture.

77.     The importance of a debtor's workforce to its operations has been repeatedly recognized by courts in this district, and such courts have granted relief similar to the relief requested herein.  *See, e.g.*, *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 20, 2023) (authorizing debtors to continue Compensation and Benefit Programs and pay certain prepetition obligations related thereto on a postpetition basis); *In re KDC Agribusiness LLC*, No. 23-10788 (CTG) (Bankr. D. Del. July 18, 2023) (same); *In re The Rockport Company, LLC*, No. 23-10774 (BLS) (Bankr. D. Del. July 10, 2023) (same); *In re Lannett Co.*, No. 23-10559 (JKS) (Bankr. D. Del. June 5, 2023) (same); *In re Internap Holding LLC*, No. 23-10529 (CTG) (Bankr. D. Del. June 2, 2023) (same).[5]

---

[5]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

78.     Additionally, with respect to any amounts owed to non-insider Employees or Former Employees in excess of the Priority Claim Amount, out of an abundance of caution, the Debtors seek authority to pay such amounts solely pursuant to the Final Order.  Accordingly, the Debtors request authority, but not direction, to continue the Compensation and Benefits Programs and pay related obligations in the ordinary course.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

79.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course by virtue of access to cash on hand and anticipated access to debtor-in-possession financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored.  Therefore, the Debtors request authority, but not direction, to authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

80.     Bankruptcy Rule 6003 empowers a court to grant certain relief within the first twenty-one days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical and the failure to receive the requested relief during the first twenty-one days of these chapter 11 cases could impact the Debtors' operations at this important juncture.  The requested relief is necessary for the Debtors to operate this business in the ordinary course, preserve the ongoing value of their operations, and maximize value of their estates for the benefit of all stakeholders.  The Debtors have demonstrated that the

requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and the Court should grant the requested relief.

## Reservation of Rights

81.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

82.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

83.     The Debtors will provide notice of this motion to:  (a) the United States Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice; (h) the DIP Agent and counsel thereto; (i) Milbank LLP, as counsel to certain investment funds and accounts managed by affiliates of Apollo Capital Management, L.P.; (j) the administrative and collateral agents under the B-2 Term Loan and counsel thereto; (k) the ABL Agent and counsel thereto; (*l*) White & Case LLP, as counsel to Beal Bank USA; (m) the administrative and collateral agents under the UST Credit Agreements and counsel thereto; (n)  the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

84.     No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors request entry of Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a), granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  August 7, 2023
Wilmington, Delaware

/s/ Laura Davis Jones
_____

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (*pro hac vice* pending) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (*pro hac vice* pending) |
| Peter J. Keane (DE Bar No. 5503) | Whitney Fogelberg (*pro hac vice* pending) |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 919 North Market Street, 17th Floor | 300 North LaSalle |
| P.O. Box 8705 | Chicago, Illinois 60654 |

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:       (302) 652-4100
Facsimile:        (302) 652-4400
Email:             ljones@pszjlaw.com
                       tcairns@pszjlaw.com
                       pkeane@pszjlaw.com
                       ecorma@pszjlaw.com

Patrick J. Nash Jr., P.C. (*pro hac vice* pending)
David Seligman, P.C. (*pro hac vice* pending)
Whitney Fogelberg (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:        (312) 862-2200
Email:             patrick.nash@kirkland.com
                       david.seligman@kirkland.com
                       whitney.fogelberg@kirkland.com

-and-

Allyson B. Smith (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:        (212) 446-4900
Email:             allyson.smith@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

## **Exhibit A**

### **Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (___) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Re: Docket No. __ |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS
### TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
### COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
### EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to (i) pay all prepetition wages, salaries, other compensation, and Reimbursable Expenses on account of the Compensation and Benefits Programs and (ii) continue to administer the Compensation and Benefits Programs in the ordinary course, including payment of prepetition obligations related thereto in an aggregate amount not to exceed approximately $22,320,000 on an interim basis; (b) scheduling a final hearing to consider approval of the Motion on a final basis; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2023 and shall be served on:  (a) the Debtors, 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211, Attn.: General Counsel; (b) proposed counsel to the Debtors (i) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, 60654, Attn.: Patrick J. Nash Jr., P.C. (patrick.nash@kirkland.com), David Seligman P.C. (david.seligman@kirkland.com), and Whitney Fogelberg (whitney.fogelberg@kirkland.com); (ii) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith (allyson.smith@kirkland.com); and (iii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, PO Box 8705, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns

(tcairns@pszjlaw.com), Peter J. Keane (pkeane@pszjlaw.com), and Edward Corma (ecorma@pszjlaw.com); (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Jane Leamy (jane.m.leamy@usdoj.gov); and (d) any statutory committee appointed in these chapter 11 cases.

3.    The Debtors are authorized, but not directed, to continue, modify, change, and discontinue the Compensation and Benefits Programs in the ordinary course during these chapter 11 cases and without the need for further Court approval, subject to applicable law, *provided* that the Debtors shall seek Court approval, upon a motion and notice, of any modification that would implicate any portion of section 503(c) of the Bankruptcy Code, *provided*, *further*, that except as expressly provided for otherwise herein, nothing in this Interim Order shall, without prior court approval, authorize the Debtors to (a) pay any amounts to insiders on account of any bonus, retention, severance, or incentive programs, or (b) pay any amounts on account of the Compensation and Benefits Programs outside the ordinary course.

4.    The Debtors are authorized, but not directed, to pay and honor prepetition amounts outstanding under or related to the Compensation and Benefits Programs in the ordinary course not to exceed the amounts for the programs set forth in the table following this paragraph, pursuant to this Interim Order; *provided* that, pending entry of the Final Order, the Debtors shall not honor any obligations on account of the Compensation and Benefits Programs obligations that exceed the Priority Claim Amount, if any; *provided*, *further*, that the Debtors are not authorized to pay any amounts accrued prepetition on account of the Non-Employee Director Fees or U.S. Severance Programs pursuant to this Interim Order.

| Prepetition Employee-Related Obligations | Amount Requested |
|---|---:|
| **Compensation** | |
| Wages | $8,725,000 |
| Temporary Workers Fees | $300,000 |
| Deductions and Withholdings | $6,225,000 |
| Reimbursable Expenses | $375,000 |
| Collections Program | $55,000 |
| **Subtotal** | **$15,680,000** |
| **Benefits** | |
| Health Plans and Additional Employee Benefits | $6,640,000 |
| Paid Time Off and Other Leaves of Absence | - |
| **Subtotal** | **$6,640,000** |
| **Compensation and Benefits** | **$22,320,000** |

5.     The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Withholding and Deduction Obligations to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

6.     The Debtors are authorized, but not directed, to (a) continue the Health Plans in the ordinary course, (b) continue making contributions to the Health Plans, and (c) pay any prepetition amounts related thereto, including on account of any premiums, claim amounts, and administration fees to the extent that they remain unpaid as of the Petition Date.

7.     The Debtors are authorized, but not directed, to pay in the ordinary course any costs and expenses incidental to payment of the Compensation and Benefits Programs obligations, including the Unpaid Payroll Processing Fees and all administrative and processing costs in connection therewith.

8.     The Debtors are authorized, but not directed, to:  (a) make ordinary course postpetition payments, including any related fees, to Employees terminated after the Petition Date on behalf of obligations accrued postpetition, in connection with WARN Obligations, the COBRA Benefits, and Canadian Termination Obligations, as applicable; and (b) make postpetition payments, including any related fees, on account of obligations, if any, that accrued prepetition in connection with the COBRA Benefits, WARN Obligations, or Canadian Termination Obligations,

in each case to the extent required pursuant to applicable law; *provided*, *however*, for the avoidance of doubt, that the WARN Obligations only encompass the noticing costs and administrative costs to be paid by the Debtors in connection therewith and not the payment of any amounts which may be owed to Employees or Former Employees.

9.     The Debtors are authorized, but not directed, to continue to honor and pay PTO in the ordinary course on a postpetition basis, but until entry of the Final Order shall not make any cash-out payments of Employees' earned but unused PTO with respect to Employees terminated after the Petition Date, unless required by applicable non-bankruptcy law.

10.     Nothing herein shall be deemed to authorize the payment of any amounts that violate or implicate section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code by separate motion at a later time.

11.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Compensation and Benefits Programs obligations.

12.     Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount, validity or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease

7

pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

13.     Notwithstanding anything to the contrary in this Interim Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving the debtor-in-possession financing in these chapter 11 cases.

14.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

15.     The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003.

16.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

17.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

18.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

21.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (___) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. __** |

---

### FINAL ORDER (I) AUTHORIZING THE DEBTORS
### TO (A) PAY PREPETITION WAGES, SALARIES, OTHER
### COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE
### EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors to (i) pay all prepetition wages, salaries, other compensation, and Reimbursable Expenses on account of the Compensation and Benefits Programs and (ii) continue to administer the Compensation and Benefits Programs in the ordinary course, including payment of prepetition obligations related thereto; and (b) granting related relief, in each case in the ordinary course, including payment of certain undisputed prepetition obligations related thereto, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

and this Court having found that this Court may enter a final order consistent with Article III of
the United States Constitution; and this Court having found that venue of this proceeding and the
Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having
found that the relief requested in the Motion is in the best interests of the Debtors' estates, their
creditors, and other parties in interest; and this Court having found that the Debtors' notice of the
Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and
no other notice need be provided; and this Court having reviewed the Motion and having heard the
statements in support of the relief requested therein at a hearing before this Court (the "Hearing");
and this Court having determined that the legal and factual bases set forth in the Motion and at the
Hearing establish just cause for the relief granted herein; and upon all of the proceedings had
before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY
ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to continue, modify, change, and
discontinue the Compensation and Benefits Programs in the ordinary course during these
chapter 11 cases and without the need for further Court approval, subject to applicable law,
*provided* that the Debtors shall seek Court approval, upon a motion and notice, of any modification
that would implicate any portion of section 503(c) of the Bankruptcy Code, *provided*, *further*, that
except as expressly provided for otherwise herein, nothing in this Final Order shall, without prior
court approval, authorize the Debtors to (a) pay any amounts to insiders on account of any bonus,
retention, severance, or incentive programs, or (b) pay any amounts on account of the
Compensation and Benefits Programs outside the ordinary course.

3.      The Debtors are authorized, but not directed, to pay and honor prepetition amounts outstanding under or related to the Compensation and Benefits Programs in the ordinary course in an aggregate amount not to exceed the total amount reflected in the table following this paragraph, pursuant to this Final Order.

| Prepetition Employee-Related Obligations | Amount Requested |
|---|---|
| **Compensation** | |
| Wages | $8,725,000 |
| Temporary Workers Fees | $600,000 |
| Deductions and Withholdings | $6,225,000 |
| Reimbursable Expenses | $375,000 |
| Collections Program | $55,000 |
| **Subtotal** | **$15,980,000** |
| **Benefits** | |
| Health Plans and Additional Employee Benefits | **TBD** |
| Paid Time Off and Other Leaves of Absence | $92,900,000 |
| **Subtotal** | **TBD** |
| **Compensation and Benefits** | **TBD** |

4.      The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Withholding and Deduction Obligations to the appropriate third-party recipients or taxing authorities in the ordinary course.

5.      The Debtors are authorized, but not directed, to (a) continue the Health Plans in the ordinary course, (b) continue contributing to the Health Plans, and (c) pay any prepetition amounts related thereto, including on account of any premiums, claim amounts, and administration fees to the extent that they remain unpaid as of the Petition Date.

6.      The Debtors are authorized, but not directed, to pay in the ordinary course any costs and expenses incidental to payment of the Compensation and Benefits Programs obligations, including the Unpaid Payroll Processing Fees, all administrative and processing costs, and necessary payments to outside professionals.

7.      The Debtors are authorized, but not directed, to (a) make ordinary course postpetition payments on behalf of obligations, including any related fees, accrued postpetition in

3

connection U.S. Severance Programs, WARN Obligations, the COBRA Benefits, and Canadian Termination Obligations, as applicable; and (b) make postpetition payments, including any related fees, on account of obligations, if any, that accrued prepetition in connection with the COBRA Benefits, WARN Obligations, or Canadian Termination Obligations, in each case to the extent required pursuant to applicable law; *provided*, *however*, for the avoidance of doubt, that the WARN Obligations only encompass the noticing costs and administrative costs to be paid by the Debtors in connection therewith and not the payment of any amounts which may be owed to Employees or Former Employees.

8.      The Debtors are authorized, but not directed, to continue to honor and pay PTO in the ordinary course on a postpetition basis, including making any cash-out payments of Employees' or Former Employees' earned but unused PTO, which accrued prepetition, regardless of any limitations under section 503(c)(2) of the Bankruptcy Code; *provided* that the Debtors shall not make any such payments to Former Employees on account of PTO until the payment in full of the Debtors' secured debt obligations.

9.      The Debtors are authorized, but not directed, to pay in the ordinary course any postpetition Non-Employee Director Fees.

10.     Nothing herein shall be deemed to authorize the payment of any amounts that violates or implicates section 503(c) of the Bankruptcy Code; provided that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code by separate motion at a later time.

11.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Compensation and Benefits Programs obligations.

4

12.     Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount, validity or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

13.     Notwithstanding anything to the contrary in this Final Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving the debtor-in-possession financing in these chapter 11 cases

14.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

15.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

17.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

18.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.