# Exhibit 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF DEBTORS
FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO
(A) MAINTAIN INSURANCE COVERAGE ENTERED
INTO PREPETITION AND PAY RELATED PREPETITION
OBLIGATIONS AND (B) RENEW, SUPPLEMENT, MODIFY, OR
PURCHASE INSURANCE COVERAGE, (II) APPROVING CONTINUATION
OF THE SURETY BOND PROGRAM, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

## Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), (a) authorizing, but not directing, the Debtors to (i) maintain coverage under the Insurance Policies and the Surety Bonds (each as defined herein) and pay any related prepetition or postpetition

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]     A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration, as applicable.

amounts or obligations related hereto and (ii) renew, supplement, modify, or purchase Insurance Policies or Surety Bonds in the ordinary course, and (c) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately twenty-one days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 9013-1.

## Background

5.      The Debtors were a leading provider of transportation services with a 100-year history.  With its family of trucking brands—Yellow Logistics, Holland, Reddaway, New Penn, and YRC—the Debtors provided their customers with one of the most comprehensive less-than-truckload ("LTL") networks in North America.

2

6.      The Debtors commenced these chapter 11 cases to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders.  Through these chapter 11 cases, the Debtors will immediately commence an orderly and value-maximizing wind-down of their businesses.  The Debtors will use their time in chapter 11 to market a sale or sales of all or substantially all of their assets.

7.      On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no official committees have been appointed or designated.

### The Debtors' Insurance Policies

8.      The Debtors maintain 82 insurance policies (collectively, the "Insurance Policies") administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers"). The Insurance Policies provide coverage for, among other things, automobile liability, general liability, workers' compensation, commercial umbrella and excess liability, property (including Canadian property), excess flood, shipper's interest, legal liability, errors and omissions, consumer-generated cargo liability, cargo legal liability, international casualty DIC, directors' and officers' liability, cyber liability, fiduciary liability, employment practices liability,

employed-lawyers professional liability, and employee dishonesty liability.[3]  A schedule of the Insurance Policies is attached hereto as **Exhibit C**.  The annual premiums for the Insurance Policies total approximately $38.9 million in the aggregate, of which 68 percent is financed through a third-party premium financing company. The Debtors estimate that, as of the Petition Date, there are no outstanding premiums due to Insurance Carriers on account of the Insurance Policies.

9.      The Debtors' ability to maintain the Insurance Policies, to renew, supplement, and modify the same as needed, and to enter into new insurance policies as needed consistent with prepetition practices, is essential to preserving the value of the Debtors' estates.  Moreover, in many instances, insurance coverage is required by statutes, rules, regulations, and contracts that govern the Debtors' commercial activities, including the requirement of the United States Trustee for the Distract of Delaware (the "United States Trustee") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  Accordingly, the Debtors seek authority, but not direction, to maintain the Insurance Policies, to pay related prepetition obligations, to renew, supplement, or modify the Insurance Policies, and to enter into new insurance policies as needed.

10.      To the extent not already prepaid, the Debtors will need to continue to:  (a) make premium payments when due and post collateral, including surety bonds and letters of credit, required in order to preserve the coverage provided under the Insurance Policies; (b) make payments in respect of (i) any prepetition workers' compensation benefits incurred but not yet

---

[3]      The descriptions of the Insurance Policies set forth in this motion constitute a summary only.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions set forth in this motion.

reported or paid, (ii) any prepetition claims that were filed but have yet to be resolved, and (iii) newly reported claims as they arise; and (c) continue to make payments to Sedgwick Claims Management Services, Inc. ("Sedgwick") and Broadspire Management Services, Inc. ("Broadspire," together with Sedgwick, the "Third-Party Claims Administrators") with respect to the administration of both prepetition and postpetition workers' compensation bodily injury and property damage claims, in each case to the extent outstanding.

### Liability, Property, and Other Insurance Programs

11.     The Debtors maintain various liability and property-related Insurance Policies (collectively, the "Property and Casualty Insurance Programs"). The Debtors are required to pay premiums under the Property and Casualty Insurance Programs based upon fixed rates established by the applicable Insurance Carrier. The aggregate amount of annual premiums for the Property and Casualty Insurance Programs currently in effect is approximately $32.8 million. The Debtors pay these premiums directly to the Insurance Carriers, premium finance companies, or to any of the various applicable insurance brokers that aid the Debtors in procuring their insurance.

12.     In addition, the Debtors maintain their current automobile and general liability ("AL/GL") insurance coverage (the "AL/GL Policies") through several layers of third-party insurance. Old Republic General Insurance Corporation ("ORIC") and Old Republic Insurance Company of Canada (together with ORIC, the "ORIC Companies") are, respectively, the Debtors' primary carriers on Insurance Policies for the United States and Canada, with a combined annual premium amount of approximately $5.54 million for the current year. The Debtors and the ORIC Companies operate a loss sensitive insurance arrangement, with Insurance Policies issued on a quarterly basis, pursuant to which the Debtors' pay losses for amounts up to the $6 million deductible per AL/GL occurrence and $5 million deductible per occurrence under the Debtors'

5

Insured Workers' Compensation Program (as defined herein).  In connection therewith, the Debtors are required to post certain collateral through letters of credit for the ORIC Companies calculated by an actuarial assessment of projected losses within the retentions for which such ORIC Company is liable.  The Debtors' inability to pay pre-petition claims related to their AL/GL and Workers' Compensation Programs could trigger a draw by the ORIC Companies against the Debtors' letter of credit.

13.     The AL/GL Policy period runs through May 31, 2024. The Debtors' AL/GL Policies are extensive given the size of the Debtors' U.S. and Canadian operations, and to facilitate the Company's AL/GL Policies programs, the Debtors maintain a service agreement with Sedgwick to efficiently administer processing and payment by the Debtors of all AL/GL and non-litigated liability claims, and the Debtors pay Sedgwick a monthly service fee for administering this process.  The Debtors estimate that there are approximately $211,000 in prepetition amounts outstanding to Sedgwick on account of such services.  As such, the Debtors seeks the authority, but not direction, to pay any prepetition amounts that might be accrued and unpaid on account of the AL/GL Policies.

14.     The Debtors currently maintain liability insurance coverage for their directors and officers (the "D&O Liability Insurance") with Federal Insurance Company for primary coverage. The Debtors also currently maintain fiduciary liability insurance (the "Fiduciary Liability Insurance") that helps protect companies from claims of mismanagement and the legal liability related to serving as a fiduciary.  Due to the claims-made-and-notified structure of the D&O Liability Insurance and Fiduciary Liability Insurance, an insured party must make a claim and notify the insurer during the active period of the policy for coverage to apply.  The Debtors' D&O Liability Insurance and Fiduciary Liability Insurance expires on October 14, 2023.  As such, the

Debtors have negotiated and procured run-off coverage to provide against unnecessary distraction and safeguard the Debtors' directors' and officers' conscientious decision-making during the Debtors' wind-down process. The Debtors do not believe that there are any prepetition amounts outstanding with respect to run-off coverage for the D&O Liability Insurance and Fiduciary Liability Insurance at this time, however, out of an abundance of caution, the Debtors request the authority to pay any prepetition amounts that might be accrued and unpaid on account of such run-off coverage.

15. The Debtors currently maintain cyber liability insurance coverage (the "Cyber Liability Insurance") for losses relating to the damage to, or loss of information from, information technology ("IT") systems and networks. Due to the claims-made-and-notified structure of Cyber Liability Insurance, an insured party must make a claim and notify the insurer during the active period of the policy for coverage to apply. The Debtors maintain Cyber Liability Insurance currently, but such coverage will lapse when the policy expires on August 31, 2023. As such, the Debtors seek the authority, to negotiate, renew, and procure such run-off coverage to provide against unforeseen issues.

## Insurance Brokers

16. The Debtors employ various insurance brokers (the "Brokers") to assist them with the procurement and negotiation of the Insurance Policies, the processing of claims, and, in certain circumstances, to remit payment to the Insurance Carriers on behalf of the Debtors. The preservation of the agreements and arrangements in place with such Brokers is essential to the maintenance of the Insurance Policies and necessary for the efficient operation of the Debtors' business. In addition to brokering the renewal of the Debtors' various Insurance Policies on favorable terms, the Brokers fulfill a necessary gateway function between the Debtors and their

various insurance providers, providing information and assistance related to the Insurance Policies.

17.    In exchange for the Brokers' services, the Debtors and the Debtors' Insurance Carriers pay fees to the Brokers (the "Brokers' Fees"). The Debtors' inability to pay the Brokers' Fees would immediately and irreparably jeopardize the Debtors' relationships with their Brokers and their insurance companies, and a search for new Brokers and insurance coverage would incur substantial costs and consume valuable time. As stated above, such a disruption in insurance coverage and administration of the Insurance Policies would severely impair the Debtors' ability to maximize the value of their estates. As of the Petition Date, the Debtors estimate that they owe prepetition Brokers' Fees in the aggregate amount of approximately $610,000, which Brokers' Fees are on account of recently procured Insurance Policies as well as currently ongoing negotiations for the renewal of other Insurance Policies.[4]

### The Debtors' Workers' Compensation Programs

18.    The Debtors' self-insured workers' compensation programs (the "Self-Insured Workers' Compensation Program") require the Debtors to pay a self-insured retention ("SIR") obligation of up to $5 million per occurrence, and the Debtors' insured workers' compensation program (the "Insured Workers' Compensation Program," together with the Self-Insured Workers' Compensation Program, the "Workers' Compensation Programs") requires the Debtors to pay a combined deductible and reimbursement of up to $5 million per occurrence. The Debtors secure their obligations in respect of the certain of their Insurance Policies, including the Workers' Compensation Program, with an aggregate total of approximately $354.5 million in collateral

---

[4]    In addition, the Debtors anticipate that they will be obligated to pay Brokers' Fees associated with potential future renewals as part of the premiums associated with such renewals.

(letters of credit and cash in support of certain Surety Bonds) posted with the Debtors' insurance companies, as well as directly with certain states in which the Debtors maintain operations. The Debtors have posted a total of nearly $148.9 million in Surety Bonds with respect to their self-insurance obligations under their Workers' Compensation Programs in the states in which they operated as self-insured employers.

19.    The Debtors believe that absent the immediate relief requested herein, the Insurance Policies, Workers' Compensation Programs, and their administration would likely experience substantial disruption. The Debtors' inability to pay prepetition claims related to their Self-Insured Workers' Compensation Programs would trigger payment on the Debtors' Surety Bonds to the states in which the Debtor is a self-insurer, resulting in the Debtors' sureties drawing on the currently-issued letters of credit and potentially cancelling the associated bond. Accordingly, the Debtors submit that a failure to receive the relief requested herein would substantially jeopardize the Debtors' wind-down efforts.

20.    The Debtors maintain their Workers' Compensation Programs through three types of programs, briefly described in turn herein. For the avoidance of doubt, the Debtors seek the authority, but not direction, to continue the Workers' Compensation Programs in the ordinary course.

**A.    State-Funded Programs.**

21.    The Debtors are required by law in the various states where they operate to maintain workers' compensation and to provide employees with Workers' Compensation Programs for claims arising from or related to workplace illnesses or injuries arising during their employment with the Debtors. Therefore, and in accordance with applicable requirements of local law, the Debtors maintain the Workers' Compensation Programs in all 50 states, as well as in Puerto Rico and Canada. Absent compliance with these laws, the Debtors would either be prohibited from

9

operating in the relevant state or be placed into state-run insurance pools, which are generally prohibitively expensive, thereby causing immediate and irreparable harm to the Debtors' insurance program.

22.     In certain states and provinces, the Debtors Workers' Compensation Programs are administered through such state's or province's "monopolistic" workers' compensation insurance fund (collectively, the "State-Funded Programs").  As of the Petition Date, approximately 164 of the Debtors' employees and former employees receive workers' compensation benefits through the State-Funded Programs.  The Debtors expect to pay the applicable state and provincial agencies charged with administering the State-Funded Programs approximately $113,000 in aggregate annual premiums for the 2023 calendar year.

**B.    Self-Insured Programs.**

23.     The Debtors provide their workers with insurance through the Self-Insured Workers' Compensation Program in many of the states where they operate.  Pursuant to the Self-Insured Workers' Compensation Program, the Debtors pay applicable workers' compensation claims as they arise.  The various states that permit the Debtors to operate the Self-Insured Workers' Compensation Programs also require the Debtors to pay periodic assessments directly to certain of such states' agencies throughout the year (the "Self-Insured Assessments").  If the Debtors are not authorized to pay certain prepetition claims related to their Self-Insured Workers' Compensation Programs and potentially post additional collateral, certain states would likely revoke the Debtors' qualified self-insured employer status. A revocation of self-insured status would force the Debtors to seek alternative arrangements,

which in turn would result in the Debtors' estates incurring unnecessary costs, including higher premiums and collateral requirements.

24. In 2022, the Debtors paid an approximate aggregate amount of $1.85 million in Self-Insured Assessments. The Debtors estimate that as of the Petition Date, approximately $1.02 million in prepetition Self-Insured Assessments have accrued but remain unpaid.

25. The Debtors also have contracted with Chubb Global Casualty (Ace American Insurance Company) ("Chubb") to provide excess coverage for the Self-Insured Workers' Compensation Programs. The Debtors make payments to workers for claims covered by the Self-Insured Workers' Compensation Programs for the full value on any given claim and Chubb is responsible for reimbursing the Debtors for such amounts in excess of any state's applicable claim limit. Chubb provides coverage for workers' compensation claims greater than $5 million through premium-funded insurance managed through the Debtors' premium financing agreements (the "PFAs"). To secure the Debtors' obligations under the Chubb arrangement, Chubb requires the Debtors to post collateral in the form of irrevocable letters of credit in the amount of $10 million.

**C. Insured Programs.**

26. The Debtors also ensure their workers' compensation liabilities through a series of jurisdiction-specific Insured Workers' Compensation Programs,[5] under which ORIC is the Debtors' primary carrier. The ORIC workers' compensation policy constitutes a loss sensitive insurance arrangement, which requires the Debtors to reimburse ORIC up to $5 million per

---

[5] In the ordinary course of business, certain of the Debtors may decide to transition from insured to self-insured in certain states. Out of an abundance of caution, the Debtors seek approval herein to transition from insured to self-insured (or vice versa) in any particular state in their business judgment.

workers' compensation occurrence.  ORIC provides coverage for workers' compensation claims greater than $5 million through premium funded insurance.  The ORIC policies renew on a quarterly basis, providing ORIC a non-renewal option if premiums are not paid or collateral is not secured.  Pursuant to the terms of the ORIC workers' compensation arrangement, the Debtors must pay an aggregate annual premium of approximately $5.04 million, paid in quarterly installments.

### Third-Party Claims Administrators

27.    As discussed above, the Debtors' Workers' Compensation Programs are extensive given the size of the Debtors' U.S. and Canadian operations.  To facilitate the Debtors' Workers' Compensation Programs, the Debtors maintain a service agreement with Sedgwick to efficiently administer processing and payment by the Debtors of all workers' compensation claims and non-litigated liability claims.  The Debtors pay Sedgwick a monthly service fee for administering this process.    Additionally, the Debtors remain party to reimbursement agreements with Broadspire pursuant to which they must occasionally reimburse Broadspire for older claims that arose several years ago.  The Debtors do not believe that there are any prepetition amounts outstanding to the Third-Party Claims Administrators at this time on account of such services.  Out of an abundance of caution, however, the Debtors hereby request the authority to pay any prepetition amounts that may be accrued and unpaid on account of the Third-Party Claims Administrators' services.

### Premium Financing Agreements

28.    In the ordinary course, the Debtors finance the premium payments for their Insurance Policies (collectively, the "Financed Policies") pursuant to PFAs with third-party premium finance companies.  Specifically, the Debtors are currently party to two PFAs through

AFCO Premium Credit LLC ("AFCO"), one effective as of March 1, 2023 totaling approximately $2.3 million and another effective June 1, 2023 totaling approximately $23.2 million. As of the Petition Date, the Debtors owe approximately $2.4 million in outstanding obligations under the PFAs. The Debtors expect that approximately $18.4 million owed in connection with the PFAs will come due postpetition in the ordinary course. For the avoidance of doubt, the Debtors seek the authority, but not direction, to pay related prepetition obligations under the PFAs and any related postpetition obligations due in the ordinary course.

### The Surety Bond Program

29.     The Debtors are required to provide surety bonds or other forms of credit support (collectively, the "Surety Bonds") to certain third parties, often governmental units or other public agencies, to secure the payment or performance of certain obligations (the "Surety Bond Program"). A schedule of the Surety Bonds is attached hereto as **Exhibit D**. The Surety Bond Program covers, among other things, (a) workers' compensation obligations; (b) obligations relating to obtaining and maintaining permits or licenses; and (c) obligations related to Canadian and U.S. customs. The Surety Bonds are either obtained directly by the Debtors or indirectly on the Debtors' behalf by certain non-Debtor affiliates.

30.     The Debtors are party to several indemnity agreements that set forth the sureties' rights to recover from the Debtors (collectively, the "Surety Indemnity Agreements"). Pursuant to the Surety Indemnity Agreements, the Debtors agree to indemnify each surety from any loss, cost, or expense which the surety may incur on account of the issuance of any bonds on behalf of the Debtors.

31.     As of the Petition Date, the Debtors have approximately $153.9 million in outstanding Surety Bonds, collateralized by approximately $82 million in letters of credit. These

outstanding Surety Bonds secure their performance and obligations in the following general categories and for the following approximate amounts:

| Number of Bonds | Nature of Bond | Approximate Aggregate Bond Amount |
|---|---|---|
| 99 | Workers' compensation | $148,884,600 |
| 27 | Performance, property broker, and related toll, licensing, and permitting requirements | $2,877,000 |
| 17 | Canadian/US customs | $1,635,000 |
| 1 | Municipal obligations | $100,000 |
| 2 | Utility obligations | $205,920 |
| 2 | Excise tax | $175,080 |
| 11 | Notary | $101,000 |
| Total | | $153,978,600 |

32.     To effectuate the wind-down process, the Debtors must be able to provide financial assurances to local and national governments, regulatory agencies, and other third parties. This in turn requires the Debtors to maintain the existing Surety Bond Program, including the existing cash collateral arrangements with the sureties, and potentially to acquire additional surety bond capacity as needed in the ordinary course.

**Basis for Relief**

33.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

34.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Armstrong World*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).

35.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825−26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when

there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *See CoServ*, 273 B.R. at 497.

36.     The relief requested herein is necessary to allow the Debtors to maintain appropriate insurance coverage and surety bonds to maximize the value of their estates during these chapter 11 cases. Failure to maintain appropriate insurance coverage could, among other things, expose the Debtors to significant economic risk and also violate applicable legal requirements (including the United States Trustee's operating guidelines).

37.     Courts in this district have granted relief similar to the relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code. *See, e.g.*, *In re PGX Holdings, Inc., et al.*, No. 23-10718 (CTG) (Bankr. D. Del. July 21, 2023) (authorizing debtors on final basis to continue their current insurance policies and surety coverage, pay related prepetition obligations, renew, supplement, modify, or purchase insurance and surety coverage); *In re Lannett Co., Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. June 5, 2023) (same); *In re SiO2 Med. Prods., Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. Apr. 24, 2023) (authorizing debtors on a final basis to continue their current insurance policies, pay related prepetition obligations, renew, supplement, modify, or purchase insurance coverage); *In re Carestream Health, Inc.*, No. 22-10778 (JKS)

(Bankr. D. Del. Sept. 22, 2022) (same); *In re Ector Cty. Energy Ctr. LLC*, No. 22-10320 (JTD) (Bankr. D. Del. May 26, 2022) (same).[6]

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

38.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course by virtue of access to cash on hand and anticipated access to debtor-in-possession financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored. Therefore, the Debtors request authority, but not direction, to authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

39.     Bankruptcy Rule 6003 empowers a court to grant certain relief within the first twenty-one days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical, and the failure to receive the requested relief during the first twenty-one days of these chapter 11 cases could impact the Debtors' operations at this important juncture. The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize value of their estates for the benefit of all stakeholders. The Debtors have demonstrated

---

[6]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and the Court should grant the requested relief.

### **Reservation of Rights**

40.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

41.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

42.     The Debtors will provide notice of this motion to:  (a) the United States Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice; (h) the DIP Agent and counsel thereto; (i) Milbank LLP, as counsel to certain investment funds and accounts managed by affiliates of Apollo Capital Management, L.P.; (j) the administrative and collateral agents under the B-2 Term Loan and counsel thereto; (k) the ABL Agent and counsel thereto; (l) White & Case LLP, as counsel to Beal Bank USA; (m) the administrative and collateral agents under the UST Credit Agreements and counsel thereto; (n) t the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; (o) the Insurance Carriers; (p) the Brokers; (q) the sureties under the Surety Bonds; (r) Broadspire; (s) Sedgwick; (t) AFCO; and (u) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

43.     No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  August 7, 2023
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (*pro hac vice* pending) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (*pro hac vice* pending) |
| Peter J. Keane (DE Bar No. 5503) | Whitney Fogelberg (*pro hac vice* pending) |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 919 North Market Street, 17th Floor | 300 North LaSalle |
| P.O. Box 8705 | Chicago, Illinois 60654 |

Wilmington, Delaware 19801
Telephone:      (302) 652-4100
Facsimile:       (302) 652-4400
Email:            ljones@pszjlaw.com
                     tcairns@pszjlaw.com
                     pkeane@pszjlaw.com
                     ecorma@pszjlaw.com

Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:            patrick.nash@kirkland.com
                     david.seligman@kirkland.com
                     whitney.fogelberg@kirkland.com

-and-

Allyson B. Smith (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            allyson.smith@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Re: Docket No. __ |

## INTERIM ORDER (I) AUTHORIZING
## THE DEBTORS TO (A) MAINTAIN INSURANCE
## COVERAGE ENTERED INTO PREPETITION AND PAY RELATED
## PREPETITION OBLIGATIONS AND (B) RENEW, SUPPLEMENT, MODIFY, OR
## PURCHASE INSURANCE COVERAGE, (II) APPROVING CONTINUATION OF
## THE SURETY BOND PROGRAM, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of this interim order (this "Interim Order"), (a) authorizing, but not directing, the Debtors to (i) maintain coverage under the Insurance Policies (as defined herein) and pay any related prepetition or postpetition amounts or obligations related hereto and (ii) renew, supplement, modify, or purchase insurance coverage in the ordinary course, (b) approving continuation of the Surety Bond Program, and (c) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at __:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2023 and shall be served on:  (a) the Debtors, 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211, Attn.: General Counsel; (b) proposed counsel to the Debtors (i) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, 60654, Attn.: Patrick J. Nash Jr., P.C. (patrick.nash@kirkland.com), David Seligman P.C. (david.seligman@kirkland.com), and Whitney Fogelberg (whitney.fogelberg@kirkland.com); (ii) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith (allyson.smith@kirkland.com); and (iii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, PO Box 8705, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns (tcairns@pszjlaw.com), Peter J. Keane (pkeane@pszjlaw.com), and Edward Corma

(ecorma@pszjlaw.com); (c) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Jane Leamy (jane.m.leamy@usdoj.gov); and (d) any statutory committee appointed in these chapter 11 cases.

3.      The Debtors shall serve a copy of the Motion and this Interim Order on each Insurance Carrier and Surety listed in <u>Exhibit C</u> and <u>Exhibit D</u> attached to the Motion within two business days after entry of this Interim Order.

4.      The Debtors are authorized, but not directed, to:  (a) continue and maintain the Insurance Policies[3]  and the Surety Bonds and pay any related prepetition or postpetition amounts or obligations in the ordinary course, including any amounts or obligations that may be owed to the Brokers;  and (b) renew, amend, supplement, extend, or purchase Insurance Policies and Surety Bonds, in each case, to the extent that the Debtors determine that such action is in the best interest of their estates; *provided* that the Debtors shall provide notice of any such modifications to, or cancellation of, their existing insurance coverage to the U.S. Trustee and any official committee appointed in the chapter 11 cases within seven (7) days of the effective date of such modification or cancellation.

5.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors'

---

[3]  For the avoidance of doubt, the term Insurance Policies shall include all insurance policies issued or providing coverage at any time to the Debtors or their predecessors and any agreements related thereto, whether or not listed on <u>Exhibit C</u> attached to the Motion.

designation of any particular check or electronic payment request as approved by this Interim Order.

6.    Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount, validity or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

7.    The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

8.    The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm" as contemplated by Bankruptcy Rule 6003.

9.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

10.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

11.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.     Notwithstanding anything to the contrary in this Interim Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving the debtor-in-possession financing in these chapter 11 cases.

13.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

14.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

15.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|                                          |     |                              |
| ---------------------------------------- | --- | ---------------------------- |
| In re:                                   | )   | Chapter 11                   |
|                                          | )   |                              |
| YELLOW CORPORATION, *et al.*,[1]         | )   | Case No. 23-11069 (___)      |
|                                          | )   |                              |
| Debtors.                                 | )   | (Jointly Administered)       |
|                                          | )   |                              |
|                                          | )   | Re: Docket No. __            |

**FINAL ORDER (I) AUTHORIZING
THE DEBTORS TO (A) MAINTAIN INSURANCE
COVERAGE ENTERED INTO PREPETITION AND PAY RELATED
PREPETITION OBLIGATIONS AND (B) RENEW, SUPPLEMENT, MODIFY, OR
PURCHASE INSURANCE COVERAGE, (II) APPROVING CONTINUATION OF
THE SURETY BOND PROGRAM, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of this final order (this "Final Order"), (a) authorizing, but not directing, the Debtors to (i) maintain coverage under the Insurance Policies (as defined herein) and pay any related prepetition or postpetition amounts or obligations related hereto and (ii) renew, supplement, modify, or purchase insurance coverage in the ordinary course, (b) approving continuation of the Surety Bond Program, and (c) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors shall serve a copy of the Motion and this Final Order on each Insurance Carrier listed in Exhibit C and each surety listed in Exhibit D attached to the Motion within two business days after entry of this Final Order.

3.      The Debtors are authorized, but not directed, to:  (a) continue and maintain the Insurance Policies[3] and the Surety Bonds and pay any related prepetition or postpetition amounts or obligations in the ordinary course, including any amounts or obligations that may be owed to the Broker; and (b) renew, amend, supplement, extend, or purchase Insurance Policies and Surety

---

[3]   For the avoidance of doubt, the term Insurance Policies shall include all insurance policies issued or providing coverage at any time to the Debtors or their predecessors and any agreements related thereto, whether or not listed on Exhibit C attached to the Motion.

Bonds, in each case, to the extent that the Debtors determine that such action is in the best interest of their estates.

4.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

5.      Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount, validity or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

6.      Notwithstanding anything to the contrary in this Final Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving the debtor-in-possession financing in these chapter 11 cases.

7.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

10.      The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

11.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

# **Exhibit C**

**Insurance Policies**

**Insurance Policies**

| Type of Coverage | Insurance Carrier | Policy Number | Expiration Date |
|---|---|---|---|
| Excess Liability | Aegis London | B080121224U21 | 3/1/2024 |
| Punitive Wrap | Magna Carta - Aegis | MCPD20617330 | 3/1/2024 |
| Property | Travelers<br>Travelers of Canada | KTJ-CMB-1T61970-A-23 | 3/1/2024 |
| Excess Flood | RSUI Indemnity | NHD930526 | 3/1/2024 |
| Auto / General Liability | Old Republic Insurance Company | MWML18562 | 6/1/2024 |
| Canadian AL / GL | Old Republic Insurance Company of Canada | CMWML 18562  19 | 6/1/2024 |
| Excess Liability | Aegis London | NAMCA2301488 | 6/1/2026 |
| Punitive Wrap | Magna Carta - Aegis | B0713NAMCA2301493 | 6/1/2026 |
| Excess Liability | Allianz Global Corporate & Specialty | B0713NAMCA2001331 | 6/1/2026 |
| Punitive Wrap | Allianz Global Corporate & Specialty | B080120233U20 | 6/1/2026 |
| Excess Liability | Aegis London | B080121224U21 | 3/1/2024 |
| Punitive Wrap | Magna Carta - Aegis | MCPD20617330 | 3/1/2024 |
| Umbrella Liability | Chubb | XEU G71497513 005 | 6/1/2024 |
| Punitive Wrap | Chubb Bermuda Insurance, Ltd. | PD12428-001-A | 6/1/2024 |
| Excess Liability | Berkshire International | 92SRD307240 | 6/1/2024 |
| Punitive Wrap | Berkshire International | 1221238 | 6/1/2024 |
| Excess Liability | Vantage Risk Ltd | P02XC0000019010 | 6/1/2024 |
| Excess Liability | Arcadian | ARCGL120462023 | 6/1/2024 |
| Excess Liability | Axis Surplus Insurance Company | P-001-001165984-01 | 6/1/2024 |
| Punitive Wrap | Axis Bermuda Puni-Wrap | 1148440123EC | 6/1/2024 |
| Excess Liability | Berkshire International | 92SRD307241 | 6/1/2024 |

| Type of Coverage | Insurance Carrier | Policy Number | Expiration Date |
|---|---|---|---|
| Punitive Wrap | Berkshire International | 1221240 | 6/1/2024 |
| Excess Liability | Allied World Assurance Company, LTD (AWAC) | C060318/004 | 6/1/2024 |
| Excess Liability | Westchester Surplus Insurance Company | G74350033 001 | 6/1/2024 |
| Punitive Wrap | Chubb Bermuda Insurance, Ltd. | PD12438-001-A | 6/1/2024 |
| Excess Liability | CNA | 7033962247 | 6/1/2024 |
| Punitive Wrap | North Rock / CNA | 702100314 | 6/1/2024 |
| Excess Liability | Great American Assurance Co. | EXC 4455921 | 6/1/2024 |
| Punitive Wrap | GAI Insurance Company, Ltd. | EXC 1494396 | 6/1/2024 |
| Excess Liability | Lex-London | 62785570 | 6/1/2024 |
| Punitive Wrap | Lex-London | 16135386 | 6/1/2024 |
| Excess Liability | Chubb Bermuda Insurance, Ltd. | YRCW-1020/BSF03 | 6/1/2024 |
| Excess Liability | Arch Reinsurance Ltd. | UFP0064909-03 | 6/1/2024 |
| Excess liability | Helix Underwriting Parnters Ltd | CASFO200019LO2023 | 6/1/2024 |
| Excess Liability | AXA XL | BM00039016LI23A | 6/1/2024 |
| Excess Liability | Sompo (Endurance) | EXC10000006814 | 6/1/2024 |
| Excess Liability | Berkshire International | 92SRD307242 | 6/1/2024 |
| Punitive Wrap | Berkshire International | 1221242 | 6/1/2024 |
| Insured States WC | Old Republic Ins. Co. | MWC 108894 59 | 6/1/2024 |
| Self Insured States WC - All Other | Chubb | C66934202, C66932412, C6693245A & C66932497 | 6/1/2024 |
| Primary Cargo Liability | Travelers | QT-660-7S98668A-TIL-23 | 6/1/2024 |
| Excess Cargo (Terminal & Truck) | Roanoke (Munich Re Syndicate) | | 6/1/2024 |
| International DIC | Chubb | PHF D38239818 006 | 4/30/2025 |

| Type of Coverage | Insurance Carrier | Policy Number | Expiration Date |
|---|---|---|---|
| Storage Tank Liability | AIG Specialty Insurance Company | ST 67167890 | 4/30/2024 |
| Pollution Legal Liability | Chubb | PPI G2784652A 005 | 9/11/2025 |
| Primary Cyber | Beazley Insurance Co. | W3024A220201 | 8/31/2023 |
| Excess Cyber | Aspen American Insurance Co | AY00J2L22 | 8/31/2023 |
| Excess Cyber | Resilience | 720000344-0001 | 8/31/2023 |
| Excess Cyber | Crum & Forester (RT Specialty) | CYB-104704 | 8/31/2023 |
| Excess Cyber | AXA XL | MTE904180202 | 8/31/2023 |
| Excess Cyber | Everest | CY5EX00488-221 | 8/31/2023 |
| Excess Cyber | Mosaic | PCY2345322AA | 8/31/2023 |
| Excess Cyber | RSUI (via RT Specialty) | LHZ798281 | 8/31/2023 |
| Excess Cyber | Canopious (via RT Specialty) | CYT27220083 | 8/31/2023 |
| Excess Cyber | Applied (via RT Specialty) | BFLCYETKS011200_020803_01 | 8/31/2023 |
| Excess Cyber | Emergin (via RT Specialty) | W3024A220201 | 8/31/2023 |
| Professional Liability (DFF) | Lloyd's of London | RIGRTL09220112 | 9/1/2023 |
| Shippers Interest (Domestic Freight Forwarding DFF - Customer Purchase) | Lloyd's of London | RIGCAR09220078 | 9/1/2023 |
| Cargo Liability - Excess Valuation (Consumer Generated) | ACE | N10700504 | 9/1/2023 |
| Primary D&O | Chubb | J05961403 | 10/15/2023 |
| 1st Excess D&O | Allianz US Risk US Insurance Company | USF01159222 | 10/15/2023 |
| 2nd Excess D&O | Beazley Insurance Co. | V29054220301 | 10/15/2023 |
| 3rd Excess D&O | Markel | MKLM6EL0008799 | 10/15/2023 |
| 4th Excess D&O | Old Republic Insurance Co | ORPRO 12 102800 | 10/15/2023 |
| 8th Excess - Side A DIC Primary | Berkshire Hathaway Specialty Insurance | 47-EPC-324928-01 | 10/15/2023 |

| Type of Coverage | Insurance Carrier | Policy Number | Expiration Date |
|---|---|---|---|
| 9th Excess Side A DIC | Sompo | ADX30002068801 | 10/15/2023 |
| 10th Excess Side A DIC | CNA | 652276604 | 10/15/2023 |
| 11th Excess Side A DIC | AXA XL | ELU186108-22 | 10/15/2023 |
| 11th Excess Side A DIC | AIG | 01-613-52-20 | 10/15/2023 |
| Primary Fiduciary | Allianz US Risk US Insurance Company | USF01159322 | 10/15/2023 |
| Excess Fiduciary | Chubb | DOX G71102385 001 | 10/15/2023 |
| Excess Fiduciary | Beazley Insurance Co. | V29019220701 | 10/15/2023 |
| Excess Fiduciary | Old Republic Insurance Co | ORPRO 14 100452 | 10/15/2023 |
| Excess Fiduciary | AIG | 01-615-93-03 | 10/15/2023 |
| Crime | Chubb | 8224-2361 | 10/15/2023 |
| Crime | AIG | 01-613-92-02 | 10/15/2023 |
| Crime | Axis Insurance Company | P-001-000440836-03 | 10/15/2023 |
| Primary EPL | Markel Bermuda | MKLB25GPL0004148 | 10/15/2023 |
| EPL Excess | Beazley Insurance Co. | V1621D220401 | 10/15/2023 |
| EPL Puni-Wrap Excess | Beazley | AR-V1621D220401 | 10/15/2023 |
| Employed Lawyers Prof. | AIG | 01-613-85-84 | 10/15/2023 |
| K&R | HCC | U720-85886 | 10/15/2023 |

# Exhibit D

**Surety Bonds**

**Surety Bonds**

| Principal | Bond No. | Obligee | Nature of Bond | Expiration Date | Bond Amount |
|---|---|---|---|---|---|
| Liberty Mutual Group | 674218081 | State of Alabama, Department of Revenue | Performance, property broker, related toll, licensing, and permitting requirements | 12/31/2023 | $ 3,000.00 |
| Liberty Mutual Group | 674019265 | State of Alabama, Department of Revenue | Workers' Comp | 12/31/2023 | $ 300,000.00 |
| Protective | B-6250 | State of Alabama, Department of Revenue | Workers' Comp | | $ 400,000.00 |
| Protective | B-3091 | State of Alabama, Department of Revenue | Workers' Comp | | $ 250,000.00 |
| Liberty Mutual Group | 674020857 | The Industrial Commission of Arizona | Workers' Comp | 5/2/2024 | $ 100,000.00 |
| Protective | B-7042 | State of Arizona, Department of Revenue | Workers' Comp | | $ 415,429.00 |
| Protective | B-3092 | State of Arizona, Department of Revenue | Workers' Comp | | $ 100,000.00 |
| Arch Capital Group | SU1152238 | People of the State of California | Municipal | 5/10/2024 | $ 100,000.00 |
| Argo Group | SUR0016707 | Southern California Edison Company | Utility Obligation | 1/24/2024 | $ 185,000.00 |
| Chubb Group | K08990499 | State of California | Workers' Comp | 8/19/2023 | $ 88,626.00 |
| Chubb Group | K08805672 | State of California | Workers' Comp | 10/5/2023 | $ 681,155.00 |
| Intact Group | 800006663 | State of California, Department of Motor Vehicles | Performance, property broker, related toll, licensing, and permitting requirements | 3/1/2024 | $ 5,000.00 |
| Intact Group | 767-4266 | Canada Border Service Agency | Customs | 11/1/2023 | $ 25,000.00 |
| Intact Group | 800006667 | BestPass, Inc. | Performance, property broker, related toll, licensing, and permitting requirements | 3/28/2024 | $ 339,000.00 |
| Intact Group | 800006636 | United States of America | Performance, property broker, related toll, licensing, and permitting requirements | 5/20/2024 | $ 100,000.00 |
| Intact Group | 800006655 | Federal Motor Carrier Safety Administration | Performance, property broker, related toll, licensing, and permitting requirements | 10/1/2023 | $ 75,000.00 |
| Intact Group | 130517008 | Customs & Border Protection | Customs | 10/1/2023 | $ 200,000.00 |
| Intact Group | 767-4265 | Canada Border Service Agency | Customs | 11/1/2023 | $ 40,000.00 |
| Intact Group | 800006638 | United States of America | Performance, property broker, related toll, licensing, and permitting requirements | 5/20/2024 | $ 100,000.00 |
| Intact Group | 800006633 | United States of America | Performance, property broker, related toll, licensing, and permitting requirements | 5/20/2024 | $ 100,000.00 |
| Intact Group | 130517007 | Customs & Border Protection | Customs | 10/1/2023 | $ 50,000.00 |
| Intact Group | 800006660 | BestPass, Inc. | Performance, property broker, related toll, licensing, and permitting requirements | 12/8/2023 | $ 120,000.00 |
| Intact Group | 800006656 | Federal Motor Carrier Safety Administration | Performance, property broker, related toll, licensing, and permitting requirements | 10/1/2023 | $ 75,000.00 |
| Intact Group | 800006637 | United States of America | Performance, property broker, related toll, licensing, and permitting requirements | 5/20/2024 | $ 100,000.00 |
| Intact Group | 800006665 | Wayne County Department of Public Services | Performance, property broker, related toll, licensing, and permitting requirements | 9/8/2023 | $ 24,000.00 |
| Chubb Group | K08805799 | State of Colorado | Workers' Comp | 10/25/2023 | $ 300,000.00 |
| Intact Group | 800006648 | Pacific Gas and Electric | Utility Obligation | 7/25/2024 | $ 20,920.00 |
| Liberty Mutual Group | 674218068 | Executive Director, Department of Labor and Employment | Workers' Comp | 3/1/2024 | $ 500,000.00 |
| Liberty Mutual Group | 674020858 | State of Connecticut Workers' Compensation Commission | Workers' Comp | 5/2/2024 | $ 250,000.00 |
| Protective | B-6652 | State of Connecticut Workers' Compensation Commission | Workers' Comp | | $ 100,000.00 |
| Chubb Group | K08805969 | Delaware Dept of Labor, Office of Workers Compensation | Workers' Comp | 11/5/2023 | $ 750,000.00 |
| Chubb Group | K08806019 | Florida Self-Insurer's Guaranty Association, Inc. | Workers' Comp | 11/12/2023 | $ 1,273,306.00 |
| Liberty Mutual Group | 674010586 | State of Georgia | Workers' Comp | 12/8/2023 | $ 250,000.00 |
| Liberty Mutual Group | 674218080 | Georgia Self-Insurers Guaranty Fund | Workers' Comp | 3/23/2024 | $ 1,960,000.00 |
| Protective | B-3095 | State of Georgia | Workers' Comp | | $ 100,000.00 |
| Argo Group | SUR0016702 | Insurance Division of Iowa | Workers' Comp | 1/23/2024 | $ 1,000,000.00 |
| Protective | B-7941 | State of Iowa | Workers' Comp | | $ 300,000.00 |
| Liberty Mutual Group | 674017627 | Illinois Workers' Compensation Commission | Workers' Comp | 3/1/2024 | $ 30,175,000.00 |
| Liberty Mutual Group | 674213563 | State of Indiana | Workers' Comp | 9/1/2023 | $ 1,554,542.00 |
| Liberty Mutual Group | 674213562 | State of Indiana | Workers' Comp | 9/1/2023 | $ 1,535,693.00 |
| Protective | 788859 | State of Indiana | Workers' Comp | | $ 250,000.00 |
| Protective | B-3097 | State of Indiana | Workers' Comp | | $ 500,000.00 |
| Arch Capital Group | SU 1186059-0000 | Kansas Department of Revenue | Performance, property broker, related toll, licensing, and permitting requirements | 10/7/2023 | $ 50,000.00 |
| Chubb Group | K09207090 | State of Kansas | Workers' Comp | 4/1/2024 | $ 720,000.00 |
| CNA Surety | 65435817N | State of Kansas | Notary | 6/1/2025 | $ 7,500.00 |
| CNA Surety | 64784632N | State of Kansas | Notary | 11/1/2023 | $ 7,500.00 |
| CNA Surety | 65074680N | State of Kansas | Notary | 6/23/2024 | $ 7,500.00 |
| CNA Surety | 65748888N | State of Kansas | Notary | 1/12/2026 | $ 12,000.00 |
| CNA Surety | 66287469N | State of Kansas | Notary | 6/13/2026 | $ 12,000.00 |
| CNA Surety | 66532067N | State of Kansas | Notary | 2/15/2027 | $ 12,000.00 |
| CNA Surety | 65288628N | Kansas Secretary of State | Notary | 1/10/2025 | $ 7,500.00 |
| CNA Surety | 65256018N | Kansas Secretary of State | Notary | 12/15/2024 | $ 7,500.00 |
| CNA Surety | 65067546N | State of Kansas | Notary | 6/26/2024 | $ 7,500.00 |
| Chubb Group | K08805738 | Commonwealth of Kentucky Department of Workers Compensation | Workers' Comp | 10/12/2023 | $ 476,000.00 |

| Principal | Bond No. | Obligee | Nature of Bond | Expiration Date | Bond Amount |
|---|---|---|---|---|---|
| Liberty Mutual Group | 674016746 | Commonwealth of Kentucky Department of Workers Claims | Workers' Comp | 9/15/2023 | $ 410,000.00 |
| Protective | B-7432 | State of Kentucky, WCC | Workers' Comp | | $ 602,298.00 |
| Chubb Group | K08990025 | State of Louisiana | Workers' Comp | 2/21/2024 | $ 150,000.00 |
| Protective | B-2987 | State of Louisiana | Workers' Comp | | $ 100,000.00 |
| Protective | B-3273 | State of Louisiana | Workers' Comp | | $ 25,000.00 |
| Chubb Group | K08805866 | Commonwealth of Massachusetts | Workers' Comp | 4/2/2024 | $ 1,190,000.00 |
| Protective | B-5144 | State of Massachusetts | Workers' Comp | | $ 1,250,000.00 |
| Liberty Mutual Group | 674020862 | Maryland Worker's Compensation Commission | Workers' Comp | 5/2/2024 | $ 100,000.00 |
| Liberty Mutual Group | 674020861 | Maryland Workers' Compensation Commission | Workers' Comp | 5/2/2024 | $ 200,000.00 |
| Protective | B-3098 | State of Maryland | Workers' Comp | | $ 375,000.00 |
| Liberty Mutual Group | 674020855 | Treasurer of the State of Maine | Workers' Comp | 5/1/2024 | $ 300,000.00 |
| Protective | 10607 | State of Maine | Workers' Comp | | $ 100,000.00 |
| Chubb Group | K0898993A | Michigan Department of Licensing and Regulatory Affairs Workers' Compensation Agency | Workers' Comp | 11/21/2023 | $ 2,300,000.00 |
| Intact Group | 767-4294 | Canada Border Service Agency | Customs | 11/1/2023 | $ 25,000.00 |
| Protective | B-6406 | State of Michigan | Workers' Comp | | $ 400,000.00 |
| Protective | B-6405 | State of Michigan | Workers' Comp | | $ 300,000.00 |
| Liberty Mutual Group | 674017167 | Minnesota Department of Commerce | Workers' Comp | 12/17/2023 | $ 5,952,000.00 |
| Protective | B-2990 | Minnesota Department of Commerce | Workers' Comp | | $ 3,488,843.00 |
| Protective | B-3099 | Minnesota Department of Commerce | Workers' Comp | | $ 75,000.00 |
| CNA Surety | 65387503N | State of Missouri | Notary | 1/27/2025 | $ 10,000.00 |
| Protective | B-2292 | State of Missouri, WCC | Workers' Comp | | $ 860,000.00 |
| Argo Group | SUR0016704 | Mississippi Workers' Compensation Commission | Workers' Comp | 1/10/2024 | $ 700,000.00 |
| Protective | B-2991 | Mississippi Workers' Compensation Commission | Workers' Comp | | $ 1,000,000.00 |
| Arch Capital Group | SU 1186058-0000 | North Carolina Department of Transportation | Performance, property broker, related toll, licensing, and permitting requirements | 8/3/2024 | $ 30,000.00 |
| Argo Group | SUR0016725 | State of North Carolina | Performance, property broker, related toll, licensing, and permitting requirements | 1/9/2024 | $ 1,000.00 |
| Argo Group | SUR0016719 | State of North Carolina, Alcoholic Beverage Control Commission | Performance, property broker, related toll, licensing, and permitting requirements | 4/4/2024 | $ 1,000.00 |
| Liberty Mutual Group | 674211506 | North Carolina Self-Insurance Security Association | Workers' Comp | 12/1/2023 | $ 3,196,514.50 |
| Protective | B-3046 | North Carolina Self-Insurance Security Association | Workers' Comp | | $ 500,000.00 |
| Protective | B-3103 | North Carolina Self-Insurance Security Association | Workers' Comp | | $ 200,000.00 |
| Liberty Mutual Group | 674020859 | State of Nebraska | Workers' Comp | 5/2/2024 | $ 1,033,160.00 |
| Protective | B-9032 | State of Nebraska | Workers' Comp | | $ 2,000.00 |
| Protective | B-6962 | State of Nebraska | Workers' Comp | | $ 150,000.00 |
| Intact Group | 130517006 | Customs & Border Protection | Customs | 9/30/2023 | $ 55,000.00 |
| Protective | 10166 | State of New Hampshire WCC | Workers' Comp | | $ 3,000,000.00 |
| Protective | B-3480 | State of New Hampshire WCC | Workers' Comp | | $ 500,000.00 |
| AXA XL | SB0066777 | Township of Hamilton | Performance, property broker, related toll, licensing, and permitting requirements | 5/7/2024 | $ 419,600.00 |
| Liberty Mutual Group | 674013587 | State of New Jersey Division of Workers Compensation | Workers' Comp | 9/16/2023 | $ 2,700,000.00 |
| Protective | B-2993 | State of New Jersey Division of Workers Compensation | Workers' Comp | | $ 400,000.00 |
| Protective | B-3101 | State of New Jersey Division of Workers Compensation | Workers' Comp | | $ 500,000.00 |
| Liberty Mutual Group | 674020860 | Director of the New Mexico Workers' Compensation Administration | Workers' Comp | 5/2/2024 | $ 600,000.00 |
| Protective | 10608 | Director of the New Mexico Workers' Compensation Administration | Workers' Comp | | $ 200,000.00 |
| Chubb Group | K08805957 | State of Nevada | Workers' Comp | 11/5/2023 | $ 178,000.00 |
| Argo Group | SUR0016724 | People of the State of New York | Performance, property broker, related toll, licensing, and permitting requirements | 12/31/2023 | $ 1,000.00 |
| Argo Group | SUR0016726 | State of New York Liquor Authority | Performance, property broker, related toll, licensing, and permitting requirements | 12/31/2023 | $ 1,000.00 |
| Argo Group | SUR0016709 | New York State Liquor Authority | Performance, property broker, related toll, licensing, and permitting requirements | 12/31/2025 | $ 1,000.00 |
| Intact Group | 800006657 | Federal Motor Carrier Safety Administration | Performance, property broker, related toll, licensing, and permitting requirements | 10/1/2023 | $ 75,000.00 |
| Intact Group | 800006644 | State of New York, Chair of the Workers' Compensation Board | Workers' Comp | 6/12/2024 | $ 9,862,000.00 |
| Intact Group | 800006682 | Federal Motor Carrier Safety Administration | Performance, property broker, related toll, licensing, and permitting requirements | 11/9/2024 | $ 75,000.00 |
| Intact Group | 800006635 | United States of America | Performance, property broker, related toll, licensing, and permitting requirements | 5/20/2024 | $ 100,000.00 |
| Chubb Group | K08907365 | State of Ohio | Workers' Comp | 7/23/2024 | $ 3,900,000.00 |
| Intact Group | 800006642 | State of Ohio | Workers' Comp | 5/23/2024 | $ 200,000.00 |
| Protective | B-3487 | State of Ohio | Workers' Comp | | $ 3,610,000.00 |
| Protective | B-2986 | State of Ohio | Workers' Comp | | $ 4,265,000.00 |
| Protective | 10055 | State of Oklahoma | Workers' Comp | | $ 650,000.00 |
| Chubb Group | K08805854 | State of Oregon | Workers' Comp | 10/26/2023 | $ 1,209,500.00 |
| Protective | B-8691 | State of Oregon | Workers' Comp | | $ 300,000.00 |
| Protective | B-9419 | State of Oregon | Workers' Comp | | $ 394,000.00 |

| Principal | Bond No. | Obligee | Nature of Bond | Expiration Date | Bond Amount |
|---|---|---|---|---|---|
| Liberty Mutual Group | 674211502 | Commonwealth of Pennsylvania, Bureau of Workers Compensation | Workers' Comp | 12/3/2023 | $ 6,100,000.00 |
| Protective | 10949 | Commonwealth of Pennsylvania, Bureau of Workers Compensation | Workers' Comp | | $ 5,000,000.00 |
| Protective | B-3105 | Commonwealth of Pennsylvania, Bureau of Workers Compensation | Workers' Comp | | $ 1,400,000.00 |
| Intact Group | 767-3466 | Canada Border Service Agency | Customs | 3/17/2024 | $ 20,000.00 |
| Liberty Mutual Group | 674020856 | Department of Labor & Training of the State of Rhode Island and Providence Plantation | Workers' Comp | 5/1/2024 | $ 250,000.00 |
| Protective | B-2998 | Department of Labor & Training of the State of Rhode Island and Providence Plantation | Workers' Comp | | $ 50,000.00 |
| Chubb Group | K08805982 | State of South Carolina, Workers' Compensation Commission | Workers' Comp | 11/6/2023 | $ 700,000.00 |
| Protective | B-3491 | State of South Carolina, Workers' Compensation Commission | Workers' Comp | | $ 250,000.00 |
| Protective | B-3106 | State of South Carolina, Workers' Compensation Commission | Workers' Comp | | $ 500,000.00 |
| Chubb Group | K08806068 | State of Tennessee | Workers' Comp | 12/13/2023 | $ 5,300,000.00 |
| CNA Surety | 65152996N | State of Tennessee, Secretary of State | Notary | 7/9/2024 | $ 10,000.00 |
| Liberty Mutual Group | 674013588 | State of Tennessee | Workers' Comp | 9/16/2023 | $ 2,125,000.00 |
| Protective | B-3000 | State of Tennessee | Workers' Comp | | $ 680,000.00 |
| Protective | B-3104 | State of Tennessee | Workers' Comp | | $ 500,000.00 |
| Protective | 11522 | State of Tennessee | Workers' Comp | | $ 300,000.00 |
| Protective | B-9213 | State of Tennessee | Workers' Comp | | $ 490,000.00 |
| Intact Group | 767-3935 | Canada Border Services Agency - CBSA | Customs | 9/1/2023 | $ 20,000.00 |
| Intact Group | 767-3936 | Canada Border Services Agency - CBSA | Customs | 9/1/2023 | $ 70,000.00 |
| Intact Group | 767-3937 | Canada Border Services Agency - CBSA | Customs | 9/1/2023 | $ 20,000.00 |
| Intact Group | 767-3938 | Canada Border Services Agency - CBSA | Customs | 9/1/2023 | $ 25,000.00 |
| Intact Group | 767-3939 | Canada Border Services Agency - CBSA | Customs | 9/1/2023 | $ 25,000.00 |
| Intact Group | 767-3940 | Canada Border Services Agency - CBSA | Customs | 9/1/2023 | $ 20,000.00 |
| Intact Group | 767-3941 | Canada Border Services Agency - CBSA | Customs | 9/1/2023 | $ 220,000.00 |
| Intact Group | 130517004 | Customs & Border Protection | Customs | 10/3/2023 | $ 50,000.00 |
| Intact Group | 130517005 | Customs & Border Protection | Customs | 10/3/2023 | $ 750,000.00 |
| Intact Group | 800006630 | State of Ohio | Performance, property broker, related toll, licensing, and permitting requirements | 5/15/2024 | $ 175,000.00 |
| Intact Group | 800003100 | Puerto Rico Department of Treasury Internal Revenue Area | Excise | 5/22/2024 | $ 170,080.00 |
| Intact Group | 800006639 | Executive Director, Department of Labor and Employment | Workers' Comp | 5/23/2024 | $ 1,300,000.00 |
| Intact Group | 140610009 | Customs & Border Protection | Customs | 6/15/2024 | $ 20,000.00 |
| Intact Group | 767-3908 | Canada Revenue Agency | Excise | 7/26/2024 | $ 5,000.00 |
| Intact Group | 800006651 | Federal Motor Carrier Safety Administration | Performance, property broker, related toll, licensing, and permitting requirements | 10/1/2023 | $ 75,000.00 |
| Intact Group | 800006643 | Insurance Commissioner of West Virginia | Workers' Comp | 5/23/2024 | $ 250,000.00 |
| Liberty Mutual Group | 674013586 | People of the State of Utah | Workers' Comp | 9/16/2023 | $ 500,000.00 |
| Chubb Group | K08805891 | State of Virginia | Workers' Comp | 11/28/2023 | $ 1,750,000.00 |
| Protective | B-3001 | State of Virginia | Workers' Comp | | $ 1,250,000.00 |
| Protective | B-10215 | State of Vermont | Workers' Comp | | $ 3,000,000.00 |
| Chubb Group | K08805714 | Washington Department of Labor and Industries | Workers' Comp | 10/11/2023 | $ 4,196,500.00 |
| Chubb Group | K08805726 | Washington Department of Labor and Industries | Workers' Comp | 10/11/2023 | $ 1,747,000.00 |
| Liberty Mutual Group | 674207219 | Washington Department of Labor and Industries | Workers' Comp | 6/19/2024 | $ 374,044.00 |
| Protective | B-8528 | Washington Department of Labor and Industries | Workers' Comp | | $ 245,000.00 |
| Protective | B-5322 | Washington Department of Labor and Industries | Workers' Comp | | $ 369,000.00 |
| Chubb Group | K08806056 | State of Wisconsin | Workers' Comp | 7/1/2024 | $ 4,000,000.00 |
| Protective | B-3002 | State of Wisconsin | Workers' Comp | | $ 3,000,000.00 |
| Protective | B-3112 | State of Wisconsin | Workers' Comp | | $ 500,000.00 |
| Argo Group | SUR0016727 | State of West Virginia | Performance, property broker, related toll, licensing, and permitting requirements | 1/9/2024 | $ 1,000.00 |
| Argo Group | SUR0016708 | West Virginia Alcohol Beverage Control Administration | Performance, property broker, related toll, licensing, and permitting requirements | 12/31/2023 | $ 1,000.00 |
| Intact Group | 800006649 | BestPass, Inc. | Performance, property broker, related toll, licensing, and permitting requirements | 8/1/2024 | $ 829,638.00 |
| Protective | B-6612 | State of West Virginia | Workers' Comp | | $ 1,000,000.00 |