# EXHIBIT 1

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Yellow Corporation aka YRC Worldwide Inc.,<br><br>   Debtor. | Chapter 11<br><br>Case No. 23-11069-CTG |

**AFFIDAVIT OF JOHN O'GORMAN IN SUPPORT OF MOTION OF PEAPACK CAPITAL CORPORATION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d), COMPELLING THE DEBTORS TO PERFORM THEIR CONTRACTUAL "TERMINATION OBLIGATIONS" AND FOR OTHER RELIEF**

STATE OF NEW JERSEY   :
                                           : SS.
COUNTY OF SOMERSET   :

JOHN O'GORMAN, of full age, being duly sworn according to law, upon his oath deposes and says:

1.      I am a Senior Vice President, Special Assets Officer for Peapack-Gladstone Bank (the "Bank"), the parent company and affiliate of Peapack Capital Corporation ("PCC"). I am authorized by PCC to submit this Affidavit in support of its Motion for an order granting, among other things, relief from the automatic stay in favor of PCC to permit it to retrieve 950 trailers[1] that it owns and leases to YRC Inc. d/b/a YRC Freight ("YRC Inc.") and USF Reddaway Inc. ("Reddaway") under a certain Master Lease with YRC Enterprise Services Inc. ("Enterprise") and related Schedules, all described in detail herein.

---

[1] PCC holds the physical titles to each trailer. So as not to burden the Court or the record, copies are not attached to this Affidavit but have been provided electronically to Debtor's counsel. Copies will be provided to any other party upon request.

2.      PCC specializes in equipment leasing and financing. I am familiar with PCC's record keeping and systems maintained in connection with its equipment leasing and financing operations. I have access to those records and systems, which are maintained in PCC's ordinary course of business. In my role as Special Assets Officer, I am responsible for addressing leasing and financing transactions that are in default or that are the subject of a bankruptcy proceeding. From my review of PCC's records and from my personal involvement in this matter, I have knowledge of the facts set forth herein.

### The Master Lease

3.      PCC and Enterprise, as agent for the "Lessee Affiliates"[2], entered into a Master Lease Agreement dated August 25, 2017 as thereafter amended by that certain First Amendment to Master Lease Agreement dated as of April 29, 2020 (as amended, the "Master Lease"). A true copy of the Master Lease is attached as Exhibit A. Each Schedule to the Master Lease constitutes a separate lease between PCC as Lessor and the specified Lessee Affiliate as Lessee. As described in detail below, four (4) Schedules or separate leases are outstanding and are governed by the Master Lease (the "Schedules"). The Schedules incorporate the terms of the Master Lease such that each Lessee Affiliate is bound by its terms.

4.      The Master Lease contains terms applicable to all Schedules including, without limitation, that upon lease termination, the Lessee may exercise an option to extend the lease term, return the equipment to PCC or purchase the equipment under a formula established in the Schedule. See Exhibit A, Sections 6(f) and 18(b). The parties agreed under the Master Lease that each Schedule is a true lease and not intended as security for a loan. See, e.g., id. at Sections 8(b) and 18(l). Pursuant to the Master Lease, PCC purchased equipment and leased it to a

---

[2] Exhibit B to the Master Lease named the following eligible Lessee Affiliates: YRC Inc., USF Holland LLC, Reddaway and New Penn Motor Express LLC.

Lessee Affiliate subject to the specific terms of each Schedule. Id. Section 2(b). Any late payments shall bear interest at a rate of 1% per month. Id. at Section 3(b).

5.       A Lessee's failure to make the required rental payments after the applicable notice and cure period, a bankruptcy filing by a Lessee or the Guarantor (defined herein), or a default by a Lessee or the Guarantor under any payment obligation of $100,000,000 or more, are some of the Events of Default itemized in the Master Lease. Id. at Section 16(a)(i), (v) and (ix).

6.       Upon an Event of Default, PCC's remedies include, without limitation, taking possession of the leased equipment. In addition, PCC is entitled to collect from the Lessee any outstanding monthly base rent plus, as liquidated damages, the Stipulated Loss Value as defined in each Schedule, attorney's fees and costs, and any other sums due under the Master Lease and Schedule, subject to any adjustments and additional deficiencies. Id. at Section 16(b).

### The Schedules

7.       Schedule No. 1 to the Master Lease is between PCC as Lessor and YRC Inc. as Lessee and is dated October 26, 2017 ("Schedule 1"). Schedule 1 was thereafter amended by that certain Amended and Restated Schedule No. 1 dated October 26, 2022 ("Amended Schedule 1"). True copies of Schedule 1, Amended Schedule 1 and a sample title of equipment leased under Schedule 1 are attached as Exhibit B.

8.       Pursuant to Amended Schedule 1, PCC leased 431 2018 Hyundai Translead 28′ HT Composite Dry Van Trailers (the "Schedule 1 Equipment") to YRC Inc. for a term of 72 months ending October 26, 2023. Exhibit A to Amended Schedule 1 specifically describes each of the 431 trailers owned by PCC and leased to YRC Inc. Amended Schedule 1 reflects a Total Equipment Cost of $9,173,516.80 and requires monthly payments of $110,839.23 each by the 26th day of each month.

9.     Schedule No. 2 to the Master Lease is between PCC as Lessor and YRC Inc. as Lessee and is dated November 21, 2017 ("Schedule 2").  Schedule 2 was thereafter amended by that certain Amended and Restated Schedule No. 2 dated November 21, 2022 ("Amended Schedule 2").  True copies of Schedule 2, Amended Schedule 2 and a sample title of equipment leased under Schedule 2 are attached as <u>Exhibit C</u>.

10.     Pursuant to Amended Schedule 2, PCC leased 430 2018 Hyundai Translead 28′ HT Composite Dry Van Trailers (the "Schedule 2 Equipment") to YRC Inc. for a term of 72 months ending November 21, 2023. Exhibit A to Amended Schedule 2 specifically describes each of the 430 trailers owned by PCC and leased to YRC Inc. Amended Schedule 2 reflects a Total Equipment Cost of $9,088,181.76 and requires monthly payments of $109,949.46 each by the 21st day of each month.

11.     Schedule No. 4 to the Master Lease is between PCC as Lessor and YRC Inc. as Lessee and is dated November 13, 2018 ("Schedule 4"). True copies of Schedule 4 and a sample title are attached as <u>Exhibit D</u>.

12.     Pursuant to Schedule 4, PCC leased 40 2019 Hyundai Translead 40′ Composite Dry Van Trailers with lift gates (the "Schedule 4 Equipment") to YRC Inc. for a term of 60 months ending November 13, 2023. Exhibit A to Schedule 4 specifically describes each of the 40 trailers owned by PCC and leased to YRC Inc. Schedule 4 reflects a Total Equipment Cost of $1,242,520.38 and requires monthly payments of $15,775.50 each by the 13th day of each month.

13.     Schedule No. 5 to the Master Lease is between PCC as Lessor and Reddaway as Lessee and is dated December 27, 2018 ("Schedule 5").  True copies of Schedule 5 and a sample title are attached as <u>Exhibit E</u>.

14.     Pursuant to Schedule 5, PCC leased 50 2019 Hyundai Translead 28′ HT Composite Dry Van Trailers (the "Schedule 5 Equipment"; together with Schedule 1 Equipment, Schedule 2 Equipment and Schedule 4 Equipment, the "Equipment") to Reddaway for a term of 60 months ending December 27, 2023. Exhibit A to Schedule 5 specifically describes each of the 50 trailers owned by PCC and leased to Reddaway. Schedule 5 reflects a Total Equipment Cost of $1,100,600.50 and requires monthly payments of $13,884.82 each by the 27th day of each month.

15.     PCC is the owner of the Equipment and holds the physical titles to same.

### The Guaranties

16.     YRC Worldwide Inc. ("Worldwide") executed a Guaranty made and effective as of August 25, 2017 (the "2017 Guaranty") under which Worldwide guaranteed all of the respective Lessee Affiliates' obligations under the Schedules.  A true copy of the 2017 Guaranty is attached as Exhibit F.

17.     Yellow Corporation ("Yellow"; together with Worldwide, the "Guarantor") executed a Guaranty made and effective as of February 4, 2021 (the "2021 Guaranty") under which Yellow guaranteed all of the respective Lessee Affiliates' obligations under the Schedules. A true copy of the 2021 Guaranty is attached as Exhibit G.

### Defaults

18.     As of the date of this Affidavit,  YRC Inc. and Reddaway failed to make timely monthly payments due under their respective Schedules and the Master Lease as follows:  (a) beginning on July 26, 2023 under Schedule 1; for August 21, 2023 for Schedule 2; for August 13, 2023 for Schedule 4; and beginning July 27, 2023 for Schedule 5. In addition, the filing of

these bankruptcy proceedings on August 6, 2023 is an event of default under the Schedules and Master Lease.

## **Remedies**

19.     As a result of the payment delinquencies and the commencement of these bankruptcy proceedings, YRC Inc. and Reddaway are in default under the Schedules and the Master Lease.  The filing of this Motion constitutes any required notice to these Lessees of the defaults.

20.     As a result of the defaults, PCC seeks relief from the automatic stay to exercise its rights under the Master Lease and the Schedules to retrieve its Equipment. In furtherance of this relief, PCC seeks (a) confirmation that insurance is in place on the Equipment, (b) a designated representative of the Debtors to coordinate with PCC for delivery of the Equipment, and (c) the Debtors' performance of its post-termination obligations of identifying the locations of the Equipment and assembling same for retrieval by PCC or its agent.

21.     PCC does not consent to the sale of its Equipment as part of the Debtors' proposed liquidation of assets.

John O'Gorman

Sworn and subscribed to
before me this 28th day
of August, 2023.

KATHERINE S. BARTLING
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 2/4/2024

MEI 45695385v.1

# EXHIBIT A

*Execution Counterpart*

### MASTER LEASE AGREEMENT

MASTER LEASE AGREEMENT ("Master Agreement") made as of August 25, 2017, between Peapack Capital Corporation, a New Jersey corporation, having its chief executive offices at 500 Hills Drive, Bedminster, NJ 07921-0700 ("Lessor") and **YRC Enterprise Services, Inc.**, a Delaware corporation, as an agent for and on behalf of the applicable Lessee Affiliate (defined below), having its chief executive offices at 10990 Roe Avenue, Overland Park, KS 66211; Attention: YRCW Treasury Department ("Lessee").

1.    **LEASE**

(a)    On the terms and conditions of this Master Agreement, Lessor shall lease to Lessee, and Lessee shall lease from Lessor, the items of personal property described in a schedule substantially in the form of the Schedule attached hereto as Exhibit A (collectively the "Equipment", and individually an "Item") in the form attached hereto, which shall incorporate this Master Agreement. Subject to Section 16(a)(vii), each Schedule shall constitute a separate and independent lease and contractual obligation of Lessee. The term "Lease" shall refer to an individual Schedule that incorporates this Master Agreement. In the event of a conflict between this Master Agreement and any Schedule, the language of the Schedule shall prevail. Each Lease shall be effective upon execution of the applicable Schedule by Lessor at its offices.

(b)    Lessee or any subsidiary corporation, or any affiliate corporation or business entity that is controlled or owned by, or is under common control or ownership with Lessee and which is identified on Exhibit B attached hereto (each a "Lessee Affiliate") is authorized to enter into Schedules as the named "Lessee" therein with Lessor. The terms and conditions stated in this Master Agreement shall apply and be incorporated by reference in any Schedule with the Lessee Affiliate, which shall be deemed to be the "Lessee" thereunder, subject to the Schedule containing additional terms and conditions as applicable. By written agreement the parties hereto can authorize additional Lessee Affiliates pursuant to further amendment to Exhibit B. YRC Enterprise Services, Inc. agrees that Lessor shall be entitled to deal exclusively with each Lessee Affiliate in connection with each applicable Lease and Lessor shall have no obligation to obtain approvals from, or provide notices to, YRC Enterprise Services, Inc. with respect to any Lease with a Lessee Affiliate. Lessor understands and agrees Lessor shall enter into separate and independent leases with Lessee Affiliates and that YRC Enterprise Services, Inc. does not guarantee the performance of Lessee Affiliates, shall not be deemed a co-obligor under any Lease, and shall not be jointly or severally liable for the fulfillment of any lessee obligations of any Lessee Affiliate. YRC Enterprise Services, Inc. will have no right or interest in any Lease between a Lessee Affiliate and Lessor or the Equipment leased thereunder. References to Lessee under a particular Lease (comprised of a Schedule and this Master Lease) shall be deemed to be a reference to either Lessee or one of the Lessee Affiliates as may actually be the lessee under such Lease.

1

(c)     YRC Worldwide Inc. (the "Guarantor") shall unconditionally guarantee to Lessor and any applicable Assignee (defined below) the full and prompt payment, observance and performance when due of all obligations of Lessee or any Lessee Affiliate arising under any Lease pursuant to a guaranty in form and substance of the Guaranty attached hereto as Exhibit C.

## 2.     TERM

(a)     <u>Term</u>. By entering into a Lease, Lessor leases to Lessee and Lessee leases from Lessor the Equipment covered thereby, in each case, for the Base Term identified therein and subject to such other terms and conditions as the parties shall agree.  In the event of a conflict between the provisions of this Master Lease and any Schedule, the provisions of the Schedule shall control.

(b)     <u>Purchase; Acceptance</u>.  In connection with each Lease, Lessee shall assign to Lessor the right to purchase certain Items of Equipment from each Supplier identified in the applicable Schedule for the purpose of leasing such Items to Lessee thereunder, by paying to the Supplier or such other person entitled thereto (pursuant to Lessee's written instructions) the purchase price specified in the related purchase documents. Lessor hereby appoints Lessee as Lessor's agent solely for the purpose of accepting delivery of each Item of Equipment from Supplier.  Lessee's execution and delivery of a Schedule will evidence Lessee's unconditional and irrevocable acceptance of the Items of Equipment described therein for all purposes of the subject Lease, but without prejudicing any of Lessee's rights against any Supplier or manufacturer.

## 3.     RENTAL

(a)     The rental amount payable to Lessor by Lessee for the Equipment will be as set forth on the applicable Schedule ("<u>Base Monthly Rental</u>").  As rent for Equipment, Lessee shall pay Lessor in immediately available funds and in advance on the first day of the month following the date the Equipment is accepted by Lessee (the "<u>Base Term Commencement Date</u>") and on the first day of each calendar month thereafter during the Base Term of the Lease the Base Monthly Rental, and upon receipt of an invoice, an amount equal to 1/30th of the Base Monthly Rental for each Item times the number of days which will elapse from the acceptance date to the Base Term Commencement Date of the Lease.  Each remittance from Lessee to Lessor shall contain information as to the Lease for which payment is made.

(b)     For any payment of rent or other amount due under a Lease which is past due, interest shall accrue at the rate of 1% per month, from the date such payment was due until payment is received by Lessor, or if such rate shall exceed the maximum rate of interest allowed by law, then at such maximum rate.

## 4.     TAXES

(a)     Lessee shall pay all assessments, license and registration fees, taxes (including sales, use, excise, personal property, ad valorem, stamp, documentary and other taxes) and all other governmental charges, fees, fines or penalties, whether payable by Lessor

or Lessee (other than federal and state taxes based on Lessor's income) relating to the Equipment or the use, registration, rental, shipment, transportation, delivery, ownership or operation thereof, and on or relating to this Lease or any Schedule. To the extent permitted by applicable law, Lessee shall file all returns required and furnish copies to Lessor at its request; except that in Lessor's sole and unrestricted discretion either before or after an Event of Default has occurred and is continuing with respect to any obligations of Lessee set forth above in this paragraph, Lessor may file such returns and pay such taxes, in which case Lessor will notify Lessee of such payments and Lessee will promptly reimburse Lessor for the payment of such taxes. In such an event and upon Lessor's request, Lessee will promptly furnish to Lessor such information as Lessor requests in connection with the preparation and filing of all returns relating to such taxes, assessments or charges.

5.    **NET LEASE**

(a)    The Lease is a net lease, it being the intention of the parties that all costs, expenses and liabilities associated with the Equipment or its lease shall be borne by Lessee. Lessee's agreement to pay all obligations under the Lease, including but not limited to Base Monthly Rental, is absolute and unconditional and such agreement is for the benefit of Lessor and any Assignee. Lessee's obligations shall not be subject to any abatement, deferment, reduction, setoff, defense, counterclaim, or recoupment for any reason whatsoever. No Lease shall be terminated, nor shall the obligations of Lessee be affected by reason of any defect in or damage to, or any loss or destruction of, or obsolescence of, the Equipment or any Item from any cause whatsoever, or the interference with its use by any private person, corporation or governmental authority, or as a result of any war, riot, insurrection or an Act of God. It is the express intention of Lessor and Lessee that all rent and other sums payable by Lessee under the Lease shall be, and continue to be, payable in all events throughout the term of the Lease. The Lease shall be binding upon the Lessee, its successors and permitted assigns and shall inure to the benefit of Lessor and any Assignee. EACH LEASE IS A NON-CANCELABLE, NON-TERMINABLE LEASE OF EQUIPMENT FOR THE ENTIRE TERM THEREOF.

6.    **INSTALLATION, USE AND RETURN OF EQUIPMENT**

(a)    Upon delivery of the Equipment to Lessee, Lessee shall pay all transportation and insurance charges with respect to the Equipment. In the case of a sale and leaseback transaction, Lessee shall, upon the request of Lessor, certify the date the Equipment was first put into use.

(b)    Provided that no Event of Default shall have occurred, Lessee shall, at all times during the term of the Lease, be entitled to unlimited use of the Equipment unless and until Lessor has exercised any of its remedies due to an Event of Default. Lessee will at all times keep the Equipment in its sole possession and control, except to the extent any Item may be (i) stored on a short-term basis at a customer's location, or (ii) in the possession of Lessee's contractor for the purpose of making repairs. Lessee will materially comply with all laws, regulations, and ordinances, and all applicable

3

requirements of the manufacturer of the Equipment that apply to the physical possession, use, operation, condition, and maintenance of the Equipment for purposes of satisfying legal and warranty requirements or otherwise. Lessee agrees to obtain all material permits and licenses necessary for the operation of the Equipment.

(c)    Lessee shall not without the prior written consent of Lessor, affix or install any accessory, feature, equipment or device to the Equipment or make any improvement, upgrade, modification, alteration or addition to the Equipment (any such accessory, feature, equipment, device or improvement, upgrade, modification, alteration or addition affixed or installed is an "Improvement") unless permitted by the manufacturer or required by law. Title to all Improvements shall, without further act, upon the making, affixing or installation of such Improvement, vest solely in Lessor, except such Improvements as may be readily removed without causing material damage to the Equipment and without in any way affecting or impairing the originally intended function, value, useful life or use of the Equipment. Provided the Equipment is returned to Lessor in the condition required by the Lease, title to the Improvement shall vest in the Lessee upon removal. Lessor does consent to the application of Lessee's trade dress to the Equipment and the installation of Lessee's standard in-cab safety, security, and operations Improvements, and Lessor agrees that such Improvements, to the extent removed from the Equipment, will remain Lessee's property and may be removed by Lessee at any time provided removal does not detract from the useful life, appearance, intended function, value or use of the Equipment. Any Improvement not removed from the Equipment prior to return shall at Lessor's option remain the property of Lessor.

(d)    During the term of the Lease and any renewal term, and until returned in the condition required by the Lease, Lessee shall cause all Improvements to be maintained, at Lessee's expense, in accordance with the requirements of Section 7. Unless otherwise agreed to by Lessor, and as long as the value, useful life, appearance, and use of the Equipment can be maintained, upon the expiration or earlier termination of the term of the Lease, any Improvement shall be de-installed and removed from the Equipment, at Lessee's expense. If the Improvement is removed, the Equipment shall be restored to its unmodified condition.

(e)    In the event an Improvement is provided to Lessee by a party other than Lessor, Lessee shall cause such party to execute and deliver to Lessor such documents as shall be reasonably necessary to protect the interests of Lessor and any Assignee in the Equipment, this Master Agreement and any Schedule.

(f)    Subject to Section 18(b), Lessee shall, at the termination of the Lease, at its expense, cause the Equipment to be returned to Lessor at such location within the continental United States as shall be designated by Lessor in compliance with the return conditions, if any, set forth in the applicable Schedule or any rider thereto. Until the return of the Equipment to Lessor, Lessee shall be obligated to pay the Base Monthly Rental and all other sums due under the Lease. Upon redelivery to Lessor, Lessee

4

shall arrange and pay for such repairs (if any) as are necessary for the Equipment to be returned in the condition required under the Lease.

## 7.    MAINTENANCE AND REPAIRS

(a)    During the term of the Lease, Lessee shall, at its expense, maintain the Equipment in compliance with the terms hereof and any additional terms set forth in the applicable Schedule or any rider thereto, and keep the Equipment in good working order, repair, appearance and condition and make all necessary adjustments, repairs and replacements, all of which shall become the property of Lessor. Lessee shall not use or permit the use of the Equipment for any purpose for which, the Equipment is not designed or intended. Upon request, Lessee shall furnish Lessor with a copy of the maintenance records as to any Item.

## 8.    OWNERSHIP, LIENS AND INSPECTIONS

(a)    Lessee shall keep the Equipment free from any marking or labeling which indicate a claim of ownership by Lessee or any party other than Lessor and its Assignee(s), and at Lessor's request, Lessee shall affix and maintain tags, decals or plates furnished by Lessor on the Equipment indicating ownership and title to the Equipment in Lessor or its Assignee(s), however, this provision does not prohibit Lessee from applying Lessee's standard trade dress to the Equipment. Upon reasonable notice to Lessee, Lessor or its agents shall have access to the Equipment and Lessee's books and records with respect to the Lease and the Equipment at reasonable times for the purpose of inspection and for any other purposes contemplated by the Lease, subject to the reasonable security requirements of Lessee.

(b)    Lessee has no interest in the Equipment except as expressly set forth in the Lease, and that interest is a lease-hold interest. Lessor and Lessee agree, and Lessee represents for the benefit of Lessor and its Assignee(s) that the Lease is intended to be a "finance lease" and not a "lease intended as security" as those terms are used in the Uniform Commercial Code ("UCC"); and that the Lease is intended to be a "true lease" as the term is commonly used under the Internal Revenue Code of 1986, as amended.

(c)    Lessee hereby irrevocably authorizes Lessor to file and record such UCC financing statement(s), amendments thereto and other lien recordation documents with respect to the Equipment subject to any Lease, ratifies such authorization and appointment with respect to any UCC financing statements or amendments thereto prior to the date of such Lease, and to do all acts or things necessary to protect Lessor's title and interest in such Equipment and under such Lease. Lessee shall not file any corrective or termination statement with respect to any UCC financing statements recorded by or for the benefit of Lessor with respect to any Equipment without Lessor's prior written consent. In order to secure the payment and performance in full of all of Lessee's obligations under each Lease, Lessee grants to Lessor a security interest in all Equipment subject to all Leases, together with all parts, accessories, accessions

and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins), and all proceeds of the foregoing (collectively, the "Collateral").

(d)    LESSEE SHALL KEEP THE LEASE, THE EQUIPMENT, THE COLLATERAL AND ANY IMPROVEMENTS TO THE EQUIPMENT OR THE COLLATERAL FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES OF WHATSOEVER KIND (EXCEPT THOSE CREATED BY OR RUNNING IN FAVOR OF LESSOR) AND LESSEE SHALL NOT ASSIGN THE LEASE OR ANY OF ITS RIGHTS UNDER THE LEASE OR SUBLEASE ANY OF THE EQUIPMENT OR GRANT ANY RIGHTS TO THE EQUIPMENT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR. No permitted assignment or sublease shall relieve Lessee of any of its obligations under the Lease and Lessee agrees to pay all costs and expenses Lessor may incur in connection with such sublease or assignment.

## 9.   DISCLAIMER OF WARRANTIES

(a)    LESSOR LEASES THE EQUIPMENT "AS IS," AND BEING NEITHER THE MANUFACTURER OF THE EQUIPMENT NOR THE AGENT OF EITHER THE MANUFACTURER OR SELLER, LESSOR DISCLAIMS ANY REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE CONDITION OR PERFORMANCE OF THE EQUIPMENT, ITS MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR WITH RESPECT TO PATENT INFRINGEMENTS OR THE LIKE. LESSOR SHALL HAVE NO LIABILITY TO LESSEE OR ANY OTHER PERSON FOR ANY CLAIM, LOSS OR DAMAGE OF ANY KIND OR NATURE WHATSOEVER, NOR SHALL THERE BE ANY ABATEMENT OF RENTAL FOR ANY REASON INCLUDING CLAIMS ARISING OUT OF OR IN CONNECTION WITH (i) THE DEFICIENCY OR INADEQUACY OF THE EQUIPMENT FOR ANY PURPOSE, WHETHER OR NOT KNOWN OR DISCLOSED TO LESSOR, (ii) ANY DEFICIENCY OR DEFECT IN THE EQUIPMENT, (iii) THE USE OR PERFORMANCE OF THE EQUIPMENT, OR (iv) ANY LOSS OF BUSINESS OR OTHER CONSEQUENTIAL LOSS OR DAMAGE, WHETHER OR NOT RESULTING FROM ANY OF THE FOREGOING.

(b)    For the term of the Lease, Lessor assigns to Lessee (to the extent possible), and Lessee may have the benefit of, any and all manufacturer's warranties, service agreements, and patent indemnities, if any, with respect to the Equipment; provided, however, that Lessee's sole remedy for the breach of any such warranty, indemnification, or service agreement shall be against the manufacturer of the Equipment and not against Lessor, nor shall any such breach have any effect whatsoever on the rights and obligations of Lessor or Lessee with respect to the Lease and Lessor shall reasonably cooperate with Lessee's requests so that Lessee may realize the benefits of such representations and warranties and indemnifications.

6

(C)   NO REPRESENTATIONS OR WARRANTIES OF THE MANUFACTURER OR DISTRIBUTOR OF THE EQUIPMENT, OR ANY OTHER THIRD PARTY, CAN BIND LESSOR, AND LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR SHALL HAVE NO OBLIGATIONS WITH RESPECT TO THE EQUIPMENT EXCEPT AS SPECIFICALLY SET FORTH HEREIN OR OTHER DOCUMENT EXECUTED BY LESSOR.

## 10.   ASSIGNMENT

(a)   Lessee acknowledges and understands that Lessor may assign to a successor, financing lender and/or purchaser (the "Assignee"), all or any part of the Lessor's right, title, and interest in and to the Lease and the Equipment and Lessee hereby consents to such assignment(s). In the event of an assignment, Lessor will notify Lessee of assignment as soon as reasonably practical. In the event Lessee transfers or assigns, or retransfers or reassigns, to an Assignee all or part of Lessor's interest in the Lease, the Equipment or any sums payable under the Lease (including any extension rentals, purchase sums or new schedule rentals which may become due at the end of the Base Term), whether as collateral security for loans or advances made or to be made to Lessor by such Assignee or otherwise, Lessee covenants that, upon receipt of notice of any such transfer or assignment and instructions from Lessor,

    i.   Lessee shall, if so instructed, pay and perform its obligations under the Lease to the Assignee (or to any other party designated by Assignee), and shall not assign or sublease the Lease or any of its rights under the Lease or permit the Lease to be amended, modified, or terminated without the prior written consent of Assignee; and

    ii.   Lessee's obligations under the Lease with respect to Assignee shall be absolute and unconditional and not be subject to any abatement, reduction, recoupment, defense, offset or counterclaim for any reason, alleged or proven, including, but not limited to, defect in the Equipment, the condition, design, operation or fitness for use of the Equipment or any loss or destruction or obsolescence of the Equipment or any part, the prohibition of or other restrictions against Lessee's use of the Equipment, the interference with such use by any person or entity, any failure by Lessor to perform any of its obligations contained in the Lease, any insolvency or bankruptcy of Lessor, or for any other cause; and

    iii.   Lessee shall, upon request of Lessor, submit documents and certificates as may be reasonably required by Assignee to secure and complete such transfer or assignment, including but not limited to the documents set forth in Section 15(c) of this Master Agreement; and

    iv.   Lessee shall deliver to Assignee copies of any notices which are required under the Lease to be sent to Lessor; and

7

v.      Lessee shall, if requested, restate to Assignee in writing the representations, warranties and covenants contained in the Lease (upon which Lessee acknowledges Assignee may rely) and shall make such other representations, warranties and covenants to Assignee as may be reasonably required to give effect to the assignment.

(b)     Lessor shall not make an assignment or transfer to any Assignee who shall not agree that, so long as Lessee is not in default under the Lease, such Assignee shall take no action to interfere with Lessee's quiet enjoyment and use of the Equipment in accordance with the terms of the Lease. No such assignment or conveyance shall relieve Lessor of its obligations under the Lease and Lessee agrees it shall not look to any Assignee to perform any of Lessor's obligations under the Lease. No such assignment shall increase Lessee's obligations nor decrease Lessee's rights hereunder.

(c)     Unless Lessor consents in writing, Lessee shall not assign the Lease or any of its rights under the Lease or sublease any of the Equipment or grant any rights to the Equipment, except, upon prior written notice from Lessee under a Lease, Lessee may assign any Lease to another Lessee Affiliate. No permitted assignment or sublease shall relieve Lessee of any of its obligations under the Lease and Lessee agrees to pay all costs and expenses Lessor may incur in connection with such sublease or assignment.

## 11.    QUIET ENJOYMENT

(a)     Lessor covenants that so long as no Event of Default exists and is continuing under a Lease, Lessor shall take no action to interfere with Lessee's possession and use of the Equipment subject to and in accordance with the provisions of the Lease.

## 12.    INDEMNIFICATION

(a)     Except for the sole and gross negligence or willful misconduct of Lessor or Assignee, Lessee shall and does agree to indemnify, protect, defend, save and keep harmless Lessor and its Assignee(s) from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, or expenses of any kind and nature whatsoever, including but not limited to attorneys' fees (including without limitation attorneys' fees in connection with the enforcement of this indemnification) which may be imposed upon, incurred by or asserted against Lessor or its Assignee(s) in any way relating to or arising out of the purchase, lease, possession, use, condition, operation, or accident in connection with the Equipment (including, without limitation, those claims for any damages to any person or property, any costs associated with, or any fines caused by violation of any Environmental Laws to the extent caused by Lessee's acts or omissions under the Lease). Lessor's and any Assignee's rights arising from this Section shall survive the expiration or other termination of the Lease. Nothing in this Section shall limit or waive any right of Lessee or Lessor to proceed against the manufacturer of the Equipment.

8

13.    **RISK OF LOSS**

(a)    As between Lessee and Lessor, Lessee assumes and shall bear the entire risk of loss and damage, whether or not insured against, of each Item from any and every cause whatsoever, and damage caused by the Item to the environment, any person or property, from the earlier of: (i) the date such risk of loss shifts from the vendor or supplier of the Item; or (ii) the date the Item is delivered to Lessee, and Lessee shall retain such risk of loss and damage until the Item is returned to Lessor or its designee at the location specified in the applicable Lease.

(b)    In the event of loss or damage of any kind to any Item, Lessee shall use all reasonable efforts to place the Item in good repair, condition and working order within one hundred eighty (180) days after such loss or damage, unless such Item has (in the reasonable opinion of Lessee) been irreparably damaged, in which case Lessee shall, within sixty (60) days of the Lessee's determination of irreparable loss, make its election to either pay Lessor the Stipulated Loss Value for the irreparably damaged Item or replace the irreparably damaged Item, all as provided in this Section. The "Stipulated Loss Value" with respect to each Item of Equipment shall be set forth in the applicable Schedule. To the extent that the Item is damaged but not irreparably damaged and if Lessee is entitled to obtain any portion of insurance proceeds for the repair of the Item, Lessee (provided no Event of Default has occurred and is continuing under the Lease) may arrange for the disbursement of such proceeds to the manufacturer or other entity approved by Lessor to perform the repairs to pay the cost of repair. However, Lessee's obligation to timely repair the damaged Item is not contingent upon receipt of such insurance proceeds.

(c)    If Lessee elects to pay Lessor the Stipulated Loss Value for the irreparably damaged Item, Lessee shall (i) pay such amount (computed as of the first day of the month following the determination of the irreparable damage by Lessee) to Lessor on the first day of the month following the election by Lessee as provided in (b) above, and (ii) pay all Base Monthly Rental for the Item up to and including the date that the Stipulated Loss Value is paid to Lessor. Upon Lessee's payment of the Stipulated Loss Value and all Base Monthly Rental then due and payable with respect to an Item, Lessor shall convey all of its right, title, and interest in and to such Item to Lessee (or the applicable insurance company, as applicable) on an "AS IS-WHERE IS" basis, without representation or warranty and Lessor shall execute and deliver to Lessee all certificates, agreements or other documents reasonably requested by Lessee to effect or give notice of such transfer. If not all the Equipment with respect to a Lease is irreparably damaged, the applicable Base Monthly Rental for the undamaged Equipment with respect to such Lease remaining due (after payment of the Stipulated Loss Value for the irreparably damaged Item) shall be re-calculated on a pro-rata basis after deducting the portion attributable to the irreparably damaged Item as of the day the Stipulated Loss Value is paid.

(d)    If Lessee elects to replace the irreparably damaged Item, Lessee shall continue all payments under the Lease without interruption, as if no such damage, loss, or destruction had occurred, and shall replace such irreparably damaged Item, paying

9

all such costs associated with the replacement, and Lessee shall be entitled to insurance proceeds thereof. Lessee shall effect the replacement by replacing the irreparably damaged Item with a "Replacement Item" so that Lessor has good, marketable and unencumbered title to such Replacement Item. The Replacement Item shall be in at least the condition required under the Lease, and shall have a fair market value equal to or greater than the Item replaced assuming such Item had been in the condition required by the Lease, and anticipated to have a fair market value at the expiration of the Base Term equal to the fair market value that the replaced Item would have had at the end of the Base Term assuming such Item had been in the condition required by the Lease, and be the same type and of at least equal capacity to the Item for which the replacement is being made. Upon delivery, such Replacement Item shall become subject to all of the terms and conditions of the Lease and, for the avoidance of doubt, ownership of such Replacement Item shall immediately vest in Lessor free and clear of all claims, liens and encumbrances. Lessee shall execute all instruments or documents necessary to effect the foregoing.

(e)     For purposes of this Section 13, the term "fair market value" shall mean the price of the Item delivered to Lessee's location that would be obtained in an arm's-length transaction between an informed and willing buyer-lessee under no compulsion to buy or lease and an informed and willing seller-lessor under no compulsion to sell or lease. If Lessor and Lessee are unable to agree upon fair market value, such value shall be determined at Lessee's expense in accordance with the foregoing definition, by three independent appraisers, one to be appointed by Lessee, one to be appointed by Lessor and the third to be appointed by the first two appraisers.

## 14.    INSURANCE

(a)     Lessee, at its own expense, shall procure and maintain the following insurance protecting the respective interests of Lessee and Lessor as to each Item (i) all-risk property insurance for damage to or destruction of the Item, in an amount equal to the actual cash value of the Item, naming Lessor as lender loss payee, and (ii) general liability and automobile liability insurance coverage for bodily injury and property damage with a minimum $2,000,000 combined single limit, naming Lessor as an additional insured to the extent of Lessee's indemnity obligations herein. Lessee shall furnish Lessor with a certificate of insurance evidencing the issuance of a policy or policies in at least the minimum amounts required. Each such policy (x) shall be in such form and with such insurers as may reasonably be satisfactory to Lessor (except that, as long as no Event of Default exists, Lessee may self-insure as to the property insurance), (y) shall provide that no cancellation or material modification of such insurance shall be effective without thirty days prior written notice to Lessor, and (z), with respect to all-risk property insurance, shall provide for a lender's loss payable endorsement in favor of Lessor and any Assignee. With respect to the interests of Lessor, each property insurance policy shall provide that, if the insurer denies Lessee's claim due to Lessee's acts or Lessee's failure to comply with the terms of such policy, Lessor will still have the right to receive loss payments; provided that Lessor (1) pays any premium due under such policy at the insurer's request if Lessee has failed to pay such premium, (2) submits a signed, sworn proof of loss within 60

days after receiving notice from Lessee of Lessee's failure to provide such proof of loss, and (3) has notified the insurer of any change in ownership or occupancy of the Equipment or substantial change in the risk insured known to Lessor.

15.    **REPRESENTATIONS AND WARRANTIES OF LESSEE**

(a)    As of the date hereof and as of the date of each Schedule, Lessee represents and warrants to Lessor and any Assignee (i) that the execution, delivery and performance of this Master Agreement and each Lease was duly authorized and that upon execution of this Master Agreement and the Lease by Lessee and Lessor, this Master Agreement and the Lease will be in full force and effect and constitute a valid legal and binding obligation of Lessee, and enforceable against Lessee in accordance with their respective terms; (ii) the Equipment is accurately described in the Lease and all documents of Lessee relating to the Lease; (iii) that Lessee is in good standing in the jurisdiction of its organization and if required by law in any jurisdiction in which any of the Equipment is located; (iv) that no consent or approval of, giving of notice to, registration with, or taking of any other action in respect of, any state, federal or other government authority or agency is required with respect to the execution, delivery, and performance by the Lessee of this Master Agreement or the Lease or, if any such approval, notice, registration or action is required, it has been obtained; (v) that the entering into and performance of this Master Agreement and the Lease will not violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's Articles of Incorporation, Bylaws, Articles of Organization and/or Operating Agreements or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest or other encumbrance upon any assets of Lessee or upon the Equipment pursuant to any instrument or agreement to which Lessee is a party or by which it or its property may be bound; (vi) there are no actions, suits or proceedings pending, or to the knowledge of Lessee, threatened, before any court or administrative agency, arbitrator or governmental body which will, if determined adversely to Lessee, materially adversely affect its ability to perform its obligations under the Lease or any related agreement to which it is a party; (vii) that aside from this Master Agreement and the Lease there are no additional agreements between Lessee and Lessor relating to the Equipment, and (viii) that any and all financial statements and other information with respect to Lessee supplied to Lessor at the time of execution of the Lease and any amendment, are true and complete in all material respects. The foregoing representations and warranties shall survive the execution and delivery of the Lease and any amendments hereto and shall upon the written request of Lessor, be evidenced in writing to Lessor's Assignee(s).

(b)    Prior to Lessor's acceptance of a Lease, and for the duration of the Term thereof, Lessee shall promptly provide Lessor with copies of Guarantor's comparative audited annual financial statements within 120 days after the end of each of Guarantor's fiscal years and management-prepared interim financial statements, certified by Guarantor's chief financial officer, within 60 days after the end of the first three fiscal quarters in each of Guarantor's fiscal years, provided that Lessee shall be deemed to have complied with this covenant to the extent that Guarantor timely files Forms 10-K and 10-Q with the Securities Exchange Commission that are

11

available at www.sec.gov. Lessor's obligations to perform under any Lease is subject to the condition that the financial statements furnished to Lessor by Lessee (or the consolidated financial reports filed with the SEC) present the financial condition and results of operations of Lessee and its affiliated corporations and/or companies, if any, as of the date of such financial statements and for the period then ending, and that since the date of such statements there have been no material adverse changes in the assets or liabilities, the financial condition or other condition. Lessee shall also provide Lessor with such other statements concerning the Lease and the condition of the Equipment as Lessor may from time to time reasonably request.

(c)     Upon Lessor's request, Lessee shall, with respect to each Lease, deliver to Lessor (i) a certificate of a secretarial officer of Lessee certifying the bylaw, resolution (specific or general) or corporate or limited liability company action authorizing the transactions contemplated in the Lease; (ii) an incumbency certificate certifying that the person signing this Master Agreement and the Lease holds the office the person purports to hold and has authority to sign on behalf of Lessee; (iii) an agreement with Lessor's Assignee with regard to any assignment as required by Section 10; and (iv) the purchase documents if Lessee has sold or assigned its interest in the Equipment to Lessor.

(d)     Neither Lessee, any Lessee Affiliate, Guarantor nor, to Lessee's knowledge, any of their respective parents, members, subsidiaries, directors, officers, employees or affiliates, is or will become a Prohibited Person (defined below). Lessee, Guarantor and each Lessee Affiliate is and will remain in full compliance with all applicable laws, including, without limitation, all OFAC Laws (defined below) and all AML Laws (defined below). Neither Lessee, any Lessee Affiliate nor Guarantor shall, directly or indirectly, make any payments to any government official or employee, political party, official of a political party, candidate for public office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the FCPA (defined below). Neither Lessee, any Lessee Affiliate nor Guarantor will use or operate the Equipment, or allow the Equipment to be used or operated, in any Prohibited Country (defined below) or for the benefit of any Prohibited Person, or will export, re-export or transfer the Equipment, or allow the Equipment to be exported, re-exported or transferred, to any Prohibited Person or in contravention of any OFAC Law or Export Control Law (defined below) applicable to Lessor, Lessee, any Lessee Affiliate, Guarantor or the Equipment. For purposes of this Section15(d), the term "Equipment" shall include any and all software and technology relating to the Equipment. For purposes of this Section 15(d), the following terms shall have the meanings given below:

i.      AML Laws means Bank Secrecy Act of 1970 (a/k/a the Currency and Foreign Transactions Reporting Act), as amended from time to time, including Title III of the USA PATRIOT Act of 2001, Public Law 107-56, and related legislation and regulations, 12 U.S.C. §1829b, 12 U.S.C. §§1951-59, 18 U.S.C. §§ 1956-7, 31 U.S.C. §§ 5311-14 and §§5316-32, and 31 C.F.R. Chapter X.

12

ii.     BIS means the Bureau of Industry and Security of the United States Department of Commerce.

iii.    DDTC means the Directorate of Defense Trade Controls of the United States Department of State.

iv.     Export Control Laws means all Laws administered and enforced by BIS and DDTC with respect to the export and re-export of controlled items including, without limitation, the Export Administration Regulations, Title 15 of the Code of Federal Regulations, Chapter VII, Subchapter C, as amended from time to time.

v.      FCPA means the United States Foreign Corrupt Practices Act of 1977, 15 U.S.C. §78dd-1 et seq., as amended from time to time.

vi.     Lessee's knowledge means the actual knowledge of any Responsible Officer of Lessee.

vii.    OFAC means the Office of Foreign Assets Control of the United States Department of the Treasury.

viii.   OFAC Laws means any Laws and Executive Orders relating to the economic sanctions programs administered by OFAC including, without limitation, the International Emergency Economic Powers Act, 50 U.S.C. sections 1701 et seq., the Trading with the Enemy Act, 50 App. U.S.C. sections 1 et seq., and the regulations published by OFAC, as set forth in 31 C.F.R. Parts 500 et seq., as amended from time to time.

ix.     OFAC SDN List means the list of Specially Designated Nationals and Blocked Persons published by OFAC from time to time.

x.      Prohibited Country means any country, territory or regime which is the subject of any comprehensive economic sanctions program or embargo administered or enforced from time to time by OFAC. For the avoidance of doubt, the Prohibited Countries as of the date of this Master Agreement are the Balkans, Belarus, Burma, Cote D'Ivoire (Ivory Coast), Cuba, Democratic Republic of Congo, Iran, Iraq, Liberia, North Korea, Sudan Syria and Zimbabwe.

xi.     Prohibited Person means (a) any person named or described from time to time on the OFAC SDN List or any other list of prohibited persons published or administered by OFAC, or any person named from time to time on the Denied Persons List, Entities List, Unverified List, Debarred List or Terrorist List published or administered from time to time by BIS or DDTC, (b) any person publicly identified as prohibited from doing business in the United States under any OFAC Law or other Law, (c) any person with whom Lessor is prohibited from dealing or engaging in any transaction by any OFAC Law, (d) any person that resides, is organized or chartered, or has a place of

13

business in a Prohibited Country, (e) any agency or instrumentality of, or entity owned or controlled by the government of a Prohibited Country, and/or (f) any person that is owned or controlled by the foregoing, whether or not identified by any list.

xii.   Responsible Officer means Lessee's chief executive officer, president, vice president, chief financial officer, treasurer, assistant treasurer, director of treasury or other similar officer and, as to any Lease, any secretary or assistant secretary of Lessee actually signing a Schedule on Lessee's behalf.

## 16.   DEFAULT, REMEDIES

(a)   Any one of the following shall be an "Event of Default" under a Lease:

i.   Lessee fails to pay any installment of rent or other charge or amount due under the Lease when the same becomes due and payable and such failure continues for ten (10) days after notice from Lessor; or

ii.   Except as expressly permitted in the Lease, Lessee attempts to remove, sell, assign or sublease or fails to deliver any documents or maintain the insurance required under the Lease; or

iii.   Any representation or warranty made by Lessee or Guarantor in the Lease or any document supplied in connection with the Lease or any financial statement is materially misleading or materially inaccurate; or

iv.   Lessee fails to observe or perform any of the other obligations required to be observed by Lessee under the Lease and such failure continues uncured for thirty (30) days after notice from Lessor; or

v.   Lessee or Guarantor sells, transfers or otherwise disposes of all or substantially all of its assets or properties (in one or more transactions); ceases doing business as a going concern; makes an assignment for the benefit of creditors; admits in writing its inability to pay its debts as they become due; files a voluntary petition in bankruptcy; is adjudicated a bankrupt or an insolvent; files a petition seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation or files an answer admitting or fails to deny the material allegations of a petition filed against it in any such proceeding; consents to or acquiesces in the appointment of a trustee, receiver, or liquidator for it or of all or any substantial part of its assets or properties, or if it or its trustee, receiver, liquidator or shareholders shall take any action to effect its dissolution or liquidation; or

vi.   If within ninety (90) days after the commencement of any proceedings filed against Lessee or Guarantor seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings shall not have

14

been dismissed, or if within ninety (90) days after the appointment (with or without Lessee's consent) of any trustee, receiver or liquidator of it or all of or any substantial part of its respective assets and properties, such appointment shall not be vacated; or

vii.     any of Lessee or any Lessee Affiliate ceases to be a direct or indirect wholly-owned subsidiary of Guarantor; or

viii.     An event of default has occurred (after any applicable notice and cure periods) under any other Lease with Lessee or any Lessee Affiliate executed and held at such time by Lessor or Lessor's Assignee; or

ix.     either Lessee or Guarantor shall be in default (beyond all applicable notice and cure periods) with respect to any payment or other obligation to any person the amount of which, whether accelerated or otherwise, is in excess of $100,000,000; or

x.     Lessee or Guarantor enters into any transaction of merger, consolidation or reorganization, and Lessee or Guarantor, as applicable, is not the surviving entity (such actions being referred to as an "Event"), unless the surviving entity is organized and existing under the laws of the United States or any state, and prior to such Event: (A) such person executes and delivers to Lessor an agreement satisfactory to Lessor, in its sole reasonable discretion, containing such person's effective assumption, and its agreement to pay, perform, comply with and otherwise be liable for, in a due and punctual manner, all of Lessee's or Guarantor's obligations having previously arisen, or then or thereafter arising, under any and all of the Leases and the Guaranty and any and all other documents, agreements, instruments, certificates, opinions and filings reasonably requested by Lessor; and (B) Lessor is satisfied, in its sole and absolute discretion, as to the creditworthiness of such person, and as to such person's conformance to the other standard criteria then used (at the time of such event) by Lessor when approving transactions similar to the transactions contemplated herein; provided that the foregoing shall not prevent the merger of Lessee or any Lessee Affiliate with and into another Lessee Affiliate or Lessee, as applicable, so long as Guarantor ratifies its obligations under the Guaranty with respect to all affected Leases in connection with any such merger.

(b)     Lessee shall immediately notify Lessor of the occurrence of an Event of Default. Upon the happening of any Event of Default, Lessor may declare the Lessee to be in default. Lessee authorizes Lessor at any time thereafter, with or without terminating the Lease, to enter any premises where any Item may be (subject to Lessee's reasonable safety and security policies) and take possession of the Item. Lessee shall, upon such declaration of default, without further demand, immediately pay Lessor an amount which is equal to (i) any unpaid amount due on or before Lessor declared the Lease to be in default (including, without limitation, any outstanding Monthly Base Rental), plus (ii) as liquidated damages for loss of a bargain and not as a penalty,

15

an amount equal to the Stipulated Loss Value for the Item, computed as of the date the last Base Monthly Rental payment was due prior to the date Lessor declared the Lease to be in default, together with interest, as provided herein, plus (iii) all attorney and court costs incurred by Lessor relating to the enforcement of its rights under the Lease. After an Event of Default, at the request of Lessor and to the extent requested by Lessor, Lessee shall immediately comply with the provisions of Section 6(d) and any other maintenance and/or return conditions set forth in the Lease, and Lessor may sell the Equipment at private or public sale, in bulk or in parcels, with or without notice, without having the Equipment present at the place of sale; or Lessor may lease, otherwise dispose of or keep idle all or part of the Equipment, subject, however, to its obligation, if any, to mitigate damages. The proceeds of sale, lease or other disposition, if any, of the Equipment shall be applied: (1) to all Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of the Equipment including actual attorney fees (and including, without limitation, any costs and expenses incurred pursuant to Section 16(d) of this Master Agreement); then (2) to the extent not previously paid by Lessee, to pay Lessor the Stipulated Loss Value for the Equipment and all other sums owed by Lessee under the Lease, including any unpaid rent which accrued to the date Lessor declared the Lease to be in default and indemnities then remaining unpaid under the Lease; then (3) to reimburse to Lessee Stipulated Loss Value previously paid by Lessee as liquidated damages; and (4) any surplus shall be retained by Lessor. Lessee shall pay any deficiency after the application described in (1) and (2) immediately. The exercise of any of the foregoing remedies by Lessor shall not constitute a termination of the Lease unless Lessor so notifies Lessee in writing. Lessor may also proceed by appropriate court action, either at law or in equity to enforce performance by Lessee of the applicable covenants of the Lease or to recover damages for the breach of the Lease or any other available remedies.

(c)     Upon the happening of an Event of Default by Lessee with regard to Software (as defined below) under Section 19(k) of this Master Agreement, Lessor may elect any of the following remedies: (i) by notice to Lessee, declare any License with respect to Software terminated, in which event the right and License of Lessee to use the Software shall immediately terminate and Lessee shall thereupon cease all use of the Software and return all copies thereof to Lessor or original Licensor; (ii) have access to and disable the Software by any means deemed necessary by Lessor, for which purposes Lessee hereby expressly consents to such access and disablement, promises to take no action that would prevent or interfere with Lessor's ability to perform such access and disablement, and waives and releases any and all claims that it has or might otherwise have for any and all losses, damages, expenses, or other detriment that it might suffer as a result of such access and disablement. Lessee agrees that the detriment that Lessor will suffer as a result of a breach by Lessee of the obligations contained in this Master Agreement cannot be adequately compensated by monetary damages, and therefore Lessor shall be entitled to injunctive and other equitable relief to enforce the provisions of this paragraph. LESSEE AGREES THAT LESSOR SHALL HAVE NO DUTY TO MITIGATE LESSOR'S DAMAGES UNDER ANY SCHEDULE BY TAKING LEGAL ACTION TO RECOVER THE SOFTWARE FROM LESSEE OR ANY THIRD PARTY, OR TO DISPOSE OF THE

16

SOFTWARE BY SALE, RE-LEASE OR OTHERWISE. Any waiver by Lessor of any breach of any obligation of Lessee shall not be deemed a waiver of any future breach of the same or any other obligation. The subsequent acceptance of rental payments under the Lease by Lessor shall not be deemed a waiver of any such prior existing breach at the time of acceptance of such rental payments. The rights afforded Lessor under this Section shall be cumulative and concurrent and shall be in addition to every other right or remedy provided for the Lease or now or later existing in law (including as appropriate all the rights of a secured party or lessor under the UCC) or in equity and Lessor's exercise or attempted exercise of such rights or remedies shall not preclude the simultaneous or later exercise of any or all other rights or remedies.

(d)     In the event Lessee shall fail to perform any of its obligations under the Lease, then Lessor may perform the same, at the cost and expense of Lessee, but shall not be obligated to do so. In any such event, Lessee shall promptly reimburse Lessor for any such costs and expenses incurred by Lessor.

(e)     In the event Lessee shall fail to perform any of its obligations under the Lease, then Lessor may perform the same at the cost and expense of Lessee, but shall not be obligated to do so. In any such event, Lessee shall promptly reimburse Lessor for any such costs and expenses incurred by Lessor.

17.     **INCOME TAX INDEMNITY**.  Lessee shall indemnify Lessor upon the occurrence of any Tax Loss as defined in and to the extent provided in any tax indemnity rider incorporated into and constituting a part of a Schedule.

18.     **GENERAL**

(a)     Each Lease shall be deemed to have been made and delivered in the State of New York and shall be governed in all respects by the laws of such State. LESSEE AGREES TO SUBMIT TO THE JURISDICTION OF THE FEDERAL COURTS IN THE STATE OF NEW YORK IN ALL MATTERS RELATING TO THE LEASE, THE EQUIPMENT, AND THE CONDUCT OF THE RELATIONSHIP BETWEEN LESSOR AND LESSEE. THE PARTIES HERETO AGREE THAT IN THE EVENT OF AN ALLEGED BREACH OF THIS MASTER AGREEMENT OR ANY DOCUMENTS RELATING THERETO BY EITHER PARTY, OR ANY CONTROVERSIES ARISE BETWEEN THE PARTIES RELATING TO THIS MASTER AGREEMENT, ANY LEASE, OR ANY DOCUMENTS RELATING THERETO, SUCH CONTROVERSIES SHALL BE TRIED BY A JUDGE ALONE BEFORE THE FEDERAL COURTS IN NEW YORK, NEW YORK.  THE PARTIES, HAVING HAD THE OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL OF THEIR OWN CHOOSING, HEREBY KNOWINGLY AND VOLUNTARILY CONSENT TO NEW YORK JURISDICTION AS SET FORTH HEREIN AND WAIVE THEIR RIGHTS TO A TRIAL BY JURY IN ANY MATTER RELATING TO THIS MASTER AGREEMENT, ANY LEASE, OR ANY DOCUMENTS RELATED THERETO.

(b)    Upon the completion of the Base Term, Lessee shall purchase the Equipment, extend the Lease, or return the Equipment as provided in the applicable Schedule.

(c)    This Master Agreement and the Schedule constitute the entire and only agreement between Lessee and Lessor with respect to the Lease of the Equipment, and the parties have only those rights and have incurred only those obligations as specifically set forth herein. The covenants, conditions, terms and provisions may not be waived or modified orally and shall supersede all previous proposals, both oral and written, negotiations, representations, commitments or agreements between the parties. The Lease may not be amended or discharged except by a subsequent written agreement entered into by duly authorized representatives of Lessor and Lessee. A photocopy or facsimile or scanned reproduction of an original signature of a party to this Master Agreement shall bind that party to the terms, conditions and covenants of this Master Agreement as if it were the original.

(d)    All notices, consents or requests desired or required to be given under the Lease shall be in writing and shall be delivered in person or sent by certified mail, return, receipt requested, or by courier service to the address of the other party set forth in the introduction of this Master Agreement or to such other address as such party shall have designated by proper notice.

(e)    Each Schedule shall be executed with one original. To the extent, if any, that a Schedule constitutes chattel paper (as such term is defined in the UCC) a security interest in the Schedule may only be perfected through the transfer or possession of the Schedule marked "Original". This Master Agreement is not chattel paper by itself.

(f)    Section headings are for convenience only and shall not be construed as part of the Lease.

(g)    It is expressly understood that all of the Equipment shall be and remain personal property, notwithstanding the manner in which the same may be attached or affixed to realty, and, upon Lessor's request, Lessee shall secure from its mortgagee, landlord or owner of the premises a waiver in form and substance reasonably satisfactory to Lessor.

(h)    Prior to the delivery of any Item, the obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of: labor disturbances, including strikes and lockouts; acts of God; fires; storms; accidents; failure to deliver any Item; governmental regulations or interferences or any cause whatsoever not within the sole control of Lessor.

(i)    Lessee hereby acknowledges and agrees that it has had a full and fair opportunity to read each of the terms and conditions of this Master Agreement, specifically Sections 2, 3, 16 and 18, and that Lessee fully understands the terms and conditions herein, having had the opportunity to consult with an attorney of its own choosing prior to executing this Master Agreement and any related documents.

18

(j)     Any provision of this Master Agreement or any Schedule prohibited by or unlawful or unenforceable under any applicable law of any jurisdiction or under particular circumstances shall be ineffective as to such jurisdiction and under such circumstances without invalidating the remaining provisions of this Master Agreement and such Schedule.

(k)     In the event the Equipment includes software (which Lessee agrees shall include all documentation, later versions, updates, upgrades, and modifications) (herein "Software"), the following shall apply: (i) Lessee shall possess and use the Software in accordance with the terms and conditions of any license agreement ("License") entered into with the vendor / licensor of such Software and shall not breach the License (at Lessor's request, Lessee shall provide a complete copy of the License to Lessor); (ii) Lessee agrees that Lessor shall have an interest in the License and Software arising out of its payment of the price thereof and is an assignee or third party beneficiary of the License; (iii) as due consideration of Lessor's payment of the License and Software and for providing the Software to Lessee at a lease rate (as opposed to a debt rate), Lessee agrees that Lessor is leasing (and not financing) the Software to Lessee; (iv) except for the original price paid by Lessor, Lessee shall, at its own expense, pay promptly when due all servicing fees, maintenance fees update and upgrade costs, modification cost, and all other costs and expenses relating to the Software and maintain the License in effect during the term of the Lease; and (v) the Software shall be deemed Equipment for all purposes under the Lease.

(l)     The parties agree that this is a "Finance Lease" as defined by section 2A-103(g) of the UCC.  Lessee acknowledges either (a) that Lessee has reviewed and approved any written Supply Contract (as defined by UCC 2-A-103(y)) covering the Equipment purchased from the Supplier (as defined by UCC 2A-103(x)) thereof for lease to Lessee or (b) that Lessor has informed or advised Lessee, in writing, either previously or by this Lease of the following: (i) the identity of the Supplier, (ii) that the Lessee may have rights under the Supply Contract; and (iii) that the Lessee may contact the Supplier for a description of any such rights Lessee may have under the Supply Contract.  Lessee waives any and all rights and remedies granted to Lessee by Sections 303 and 508 through 522 of Articles 2A of the UCC (although no such waiver shall constitute a waiver of any of Lessee's rights or remedies against the manufacturer of the Equipment).

(m)    The parties acknowledge that serial numbers and/or other identifiable information for one or more Items may be unavailable prior to execution of the applicable Schedule. If a Schedule fails to indicate serial numbers or other identifiable information or incorrectly identifies serial numbers or other identifiable information, for one or more Items after execution of the applicable Schedule, Lessee and Lessor shall amend the applicable Schedule to insert or correct serial numbers or other identifiable information therein.

(n)     Lessee hereby authorizes and appoints Lessor and Lessor's agents and Assignees as Lessee's attorney-in-fact to execute acknowledgement letters and other documents required to be executed by Lessee to effect any underwriting or perfect any security

19

interest with regard to a Schedule after the occurrence and during the continuation of an Event of Default.

(o)    Each Lease shall be binding upon the Lessee, its successors and permitted assigns and shall inure to the benefit of Lessor and its Assignee(s)..

*[Remainder of page intentionally left blank, signature page follows]*

The parties have executed this Master Lease Agreement as of the date first written above.

LESSOR: **Peapack Capital Corporation**

By: _____

Name: Robert R Cobleigh

Title: President

LESSEE: **YRC Enterprise Services, Inc.**

By: _____

Name: Mark Boehmer

Title: VP & Treasurer

21

EXHIBIT A
TO MASTER AGREEMENT
FORM OF SCHEDULE

SCHEDULE NO. _____

SCHEDULE NO. _____ dated _____ _____, 201_ (the "Schedule") between Peapack Capital Corporation (the "Lessor") and _____ (the "Lessee") incorporates by reference the terms and conditions of Master Lease Agreement dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement") and constitutes a separate lease between Lessor and Lessee. The Schedule and Master Agreement as incorporated herein are hereinafter referred to collectively, as the "Lease". All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Agreement.

1. Equipment: _____

2. Equipment Delivery Location (or Titling Jurisdiction for Vehicles (defined below) subject to certificates of title): _____.

3. Total Equipment Cost: $_____

4. Base Term: _____ Months

5. Base Term Commencement Date:

6. Base Term End Date:

7. Date of First Monthly Payment:

8. Date of Last Monthly Payment:

9. Base Monthly Rental: $_____ (plus applicable sales/use tax)

10. Base Monthly Rent Paid in Advance or Arrears:

11. Supplier: _____

12. Equipment Return Location: [To be determined by Lessor and Lessee upon execution of the Schedule.]

13. Stipulated Loss Value: See attached Exhibit A to this Schedule. Stipulated Loss Value means, with respect to any Item, the product of the Original Equipment Cost of such Item times the percentage applicable to the due date for the Base Monthly Rental payment for which the Stipulated Loss Value is being calculated, as set forth on Exhibit A attached hereto, except that following the expiration of the Base Term, the applicable percentage shall be the last percentage set forth on Exhibit A attached hereto. For the avoidance of doubt, Stipulated Loss Values are in addition to any unpaid Base Monthly Rental payments due on or prior to the same day.

A-1

14. <u>Special Terms</u>:

a. <u>Authorization for Electronic Payments</u>: Lessee agrees to originate base monthly lease payments to Lessor or its assigns via Automated Clearinghouse (ACH) from Lessee's account maintained with its financial institution.

b. <u>Guaranty</u>. Notwithstanding anything to the contrary herein, the parties acknowledge and agree that this Lease is guaranteed by YRC Worldwide Inc.

c. <u>Titled Equipment</u>: The Equipment contains one or more titled vehicles (individually, a "Vehicle" and collectively, the "Vehicles"). Each Vehicle shall be used predominantly in the United States in Lessee's business in accordance with all applicable governmental and insurer titling requirements and limitations. Title to each Vehicle shall at all times remain in Lessor, or Lessor's Assignee(s) as owner or, if permitted under the applicable vehicle titling statutes, as Lessor. Lessee hereby grants to Lessor an irrevocable power of attorney coupled with an interest in Lessee's name (a "Power of Attorney"), to apply for a certificate of title for any Vehicle that is required to be titled under the laws of any jurisdiction where the Vehicle is or may be used and/or to transfer title thereto upon assignment by Lessor to an Assignee or upon the exercise by Lessor of its remedies upon an Event of Default by Lessee under the Lease. In furtherance of such grant, Lessee shall provide a written Power of Attorney, in form and substance satisfactory to Lessor, upon Lessor's request. If Lessee fails to perform or comply with any of its agreements with respect to titling of Vehicles, Lessor may perform or comply with such agreements in its own name or in Lessee's name as attorney-in-fact and the amount of any payments and expenses of Lessor incurred in connection with such performance or compliance, together with interest thereon at the rate of 1% per month from the date Lessor made such payments or incurred such expenses until payment is received by Lessor, or if such rate shall exceed the maximum rate of interest allowed by law, then at such maximum rate, shall be deemed rent payable by Lessee upon demand.

Notwithstanding anything contrary contained in the Master Agreement, the following provisions shall apply to each Vehicle:

1) Lessee shall, at Lessee's own expense, register, title and license each Vehicle in the manner prescribed by Lessor as required by the applicable government or regulatory agency(ies). Lessee will do whatever may be necessary to have a statement of the interest of Lessor or any Assignee of Lessor in any Vehicle noted on any certificate of title relating to any Vehicle and will deliver said certificate to Lessor. In event Lessor registers, titles and/or licenses any Vehicle, Lessee shall immediately reimburse Lessor for all expenses relating thereto.

Lessee shall pay or provide for payment of all operating expenses of all Vehicles, including without limitation, gasoline, oil, anti-freeze, other fluids, servicing, repairs, storage, towing and fines.

2) Lessee shall require any operator of the vehicle to be properly licensed, trained and able to perform the functions necessary for safe operation. Lessee hereby

A-2

covenants that it shall not permit its employees, representatives or agents to use any Vehicle for illegal purposes, including, without limitation, the illegal transportation of controlled substances, firearms, explosives, or hazardous materials.

3) Lessee shall be responsible for all fees, traffic summonses, penalties and fines that may be imposed due to the use of the Vehicle.

4) Lessee shall provide to Lessor any documentation pertaining to any Vehicle as Lessor may, from time to time, reasonably request. Including but not limited to the location, mileage and condition of any or all Vehicles.

d. <u>End of Base Term Options</u>:  Provided no Event of Default has occurred and is continuing, and provided no Event of Default or event which with the giving of notice or lapse of time, or both, would constitute an Event of Default has occurred and is continuing, upon the completion of the Base Term, Lessee shall, upon giving ninety (90) days prior written notice to Lessor by certified mail, elect one of the following options:  (i) purchase all, but not less than all, of the Items of Equipment for a price to be agreed upon by both Lessor or any applicable Assignee and Lessee and on an "AS IS – WHERE IS" basis, without representation or warranty, (ii) extend the Lease for all, but not less than all, of the Items of Equipment for an additional twelve (12) months at the Base Monthly Rental then in effect or (iii) return all, but not less than all of the Items of Equipment to Lessor at Lessee's expense to a destination within the continental United States as directed by Lessor and in compliance with the return conditions set forth in Section 6(f) provided that for option (iii) to apply, Lessee shall have paid all late charges, interest, taxes, penalties and all other amounts due under the Lease.  At the conclusion of option (ii) above, if Lessee fails to provide Lessor with notice of its election to extend the Lease or return the Equipment, the Lease shall continue on a month-to-month basis with rent due and payable in an amount equal to the Base Monthly Rental until Lessee provides at least ninety (90) days prior written notice of Lessee's election to terminate the Lease and return the Equipment.

e. <u>Purchase Option, if Applicable</u>:  In the event this Schedule is intended to be a TRAC lease, Section 14.d. of this Schedule shall be deleted in its entirety and replaced with the purchase option described on Rider No. 1 attached hereto.

f. <u>Mobile Equipment</u>:  Notwithstanding anything to the contrary in the Master Agreement, Lessor acknowledges that the Equipment is mobile and may be moved to additional locations so long as Lessee keeps the Equipment in its sole possession and control, except that Lessee may store any Item of the Equipment at a customer's location for a limited period of time and in the ordinary course of business, and except when any Item of Equipment is undergoing required repairs. Upon Lessor's request, Lessee shall promptly provide Lessor the then current location of the Equipment.

15. <u>Maintenance and Return Conditions for Vehicles</u>:  Without limiting the obligations of Lessee under the Lease, Lessee shall, at its expense, do the following:

A-3

a. Lessee shall ensure that all Vehicles and their operations conform to all applicable local, state, and federal laws, health and safety guidelines. Upon return, the Vehicles will be complete and operational with all components as originally supplied and will have passed U. S. Department of Transportation or appropriate regulatory agency requirements for operation. If applicable, an inspection sticker or certificate will be furnished to Lessor verifying compliance with any regulatory requirements. Lessee shall satisfy all legal and regulatory conditions necessary for Lessor to sell or lease the Vehicles to a third party. Lessee will keep all licenses and operating certificates required for operation of the Vehicles current during the Lease Term.

b. Upon return, each Vehicle and its components shall meet all of their applicable manufacturer's specifications for performance under full rated loads. In addition, each Vehicle must be maintained throughout the Lease Term and returned upon the expiration or termination thereof in accordance with all of the following conditions:

    i. Tires. All tires shall be matched on each Vehicle by the same type and tread design, original size, and manufacturer, and have a minimum of 12/32 inch of remaining tread depth. All front tires shall be original casings; rear tires may be either casings or recapped casings. All tires shall be free of flat or bald spots, cupping, dry rot, cuts and exposed cords.

    ii. General Condition. The Vehicles must be able to pass Federal Highway Administration inspection. The Vehicles shall be structurally sound with no material structural or mechanical damage, in good overall appearance, clean with no missing or damaged parts, ordinary wear and tear excepted. The Vehicles shall be free of any material rust and corrosion. No glass shall be broken or cracked, no upholstery shall have any cuts or burns and there shall be no physical damage to exterior or interior materials, other than from normal use, that exceeds $1,000 in the aggregate to repair and no physical damage from accidents. Upon return, all Vehicles shall be completely de-identified, including but not limited to all commercial logos, advertising, graffiti, Lessee insignia and lettering. The de-identified surfaces shall be repaired and refinished in such a way that the area blends in with the remainder of the item's overall appearance. Manufacturer's identity plates and markings shall not be removed or obscured.

    iii. Documents and Records. Written records of scheduled and other maintenance and repair work done shall be kept, dated, and signed by the appropriate authority. A service history or log will be maintained during the Lease Term, in English, and a copy provided to Lessor upon request during the Lease Term, or at the expiration or other termination (by acceleration or otherwise) of the Lease. All maintenance records, maintenance record jackets, repair jackets, repair orders, license plates, registration certificates, and all other similar documents, in their entirety, must be returned to Lessor.

    iv. Brakes. Brake drums and linings shall not be cracked and shall not exceed manufacturer's recommended wear limits. Brake linings shall have a minimum

of 3/8 inch of remaining wear on each lining.

v.  Maintenance.    Lessee  shall  follow  the  manufacturer's  recommended maintenance and service schedule, including, without limitation, manufacturer's schedule of engine oil change and sampling, to the extent required to validate any warranty, at Lessee's sole cost and expense.  Any maintenance or repair work shall  comply  with  the  guidelines  and  procedures  as  specified  by  the manufacturers of the Vehicles or each component of the Vehicles.  Lessee will use only original manufacturer's approved replacement parts and components in the performance of any maintenance and repair of the Vehicles.  Lessee will at all times maintain the Vehicles in good operational condition and appearance, and  shall  not  discriminate  in  such  maintenance  between  owned  or  leased Vehicles.

vi.  If the Equipment includes Vehicles that are tractors, Lessee shall comply with the return conditions set forth on Rider No. 2 attached hereto, which is hereby incorporated into this Schedule.

16. Tax Indemnity Rider.  The income tax indemnity described on Rider No. 3 attached hereto is hereby incorporated into this Schedule.

All other terms and conditions of the Master Agreement shall remain in full force and effect without change.

The undersigned Lessee acknowledges that this Schedule authorizes the Lessor or its agents or assignee(s) to sign, execute and file on its behalf any and all necessary documents, including UCC financing statements and other filings and recordings, to make public this lease transaction.  The parties intend this transaction to be a true lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this Schedule is not a true lease but is in the nature of a sale, consignment, or other transaction, the parties intend and the Lessee hereby grants a continuing security interest in the Equipment from the date of this Schedule to secure the payment of all Lessee's indebtedness to Lessor.

IN THE EVENT OF ANY CONFLICT BETWEEN THE PROVISIONS OF THE MASTER AGREEMENT AND THIS SCHEDULE, THIS SCHEDULE SHALL PREVAIL.

THIS SCHEDULE TOGETHER WITH THE MASTER AGREEMENT, ANY ADDITIONAL PROVISION(S) REFERRED TO IN HEREIN OR THEREIN, AND ANY ADDENDA, ANNEXES, EXHIBITS OR RIDERS EXECUTED BY LESSOR AND LESSEE WHICH REFERENCES THIS SCHEDULE CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT.

*[Remainder of this page intentionally left blank, signatures appear on next page.]*

A-5

LESSOR: **Peapack Capital Corporation**          LESSEE:  **[YRC/Holland/Reddaway/N.P.]**

By:_____          By: _____

Name: _____          Name: _____

Title: _____          Title: _____

This original executed counterpart of this Schedule is hereby marked as "Original" and constitutes the chattel paper of this Schedule.  Any executed counterparts of this Schedule that do not include the immediately preceding sentence do not constitute chattel paper.

*Signature page to Schedule No. ___ to Master Lease Agreement,*
*dated _____, 2017, between Peapack Capital Corporation and YRC Enterprise Services, Inc.*

A-6

EXHIBIT A
TO
SCHEDULE NO. _____

STIPULATED LOSS VALUES
TO
SCHEDULE NO. _____

This Exhibit A is attached to and incorporated into Schedule No. ____, dated as of _____, 20__ (the "Schedule") between Peapack Capital Corporation (the "Lessor") and _____ ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement dated August 25, 2017 between Lessor and YRC Enterprises Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Schedule or the Master Agreement, as applicable.

| ITEM | DATE OF PAYMENT | STIPULATED LOSS VALUE |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

A-7

RIDER 1
TO
SCHEDULE NO. _____ (the "Schedule")

TRAC Provisions

This Rider No. 1 is attached to and made a part of Schedule No. ____, dated as of _____, 20__ (the "Schedule") between Peapack Capital Corporation ("Lessor") and _____ ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement, dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Lease and the Schedule.

In the event that this Rider 1 is applicable to Equipment under the Schedule and Master Agreement, it shall apply in lieu of the End of Base Term Options set forth in Section 14.d. of the Schedule.

A. TRAC Purchase Option

(1)    The "TRAC Percentage" is defined as _____ **Percent (__%)** of the Total Equipment Cost. Lessee and Lessor agree that the TRAC Percentage is a reasonable estimate of the fair market value of the Equipment at the end of the Term. Provided that no Event of Default has occurred and is continuing, Lessee may elect, by giving Lessor not less than ninety (90) days prior written notice (which notice shall be irrevocable without Lessor' written consent), to purchase all, but not less than all, of the Equipment described in this Schedule (hereinafter for purposes of this Section only, the "TRAC Equipment") for an amount equal to the TRAC Percentage multiplied by the Total Equipment Cost in which case all TRAC Equipment shall be sold to Lessee on an AS IS, WHERE IS BASIS, without recourse or warranty (except that Lessor has whatever title (if any) to the Equipment that was conveyed to it by the Supplier free of any security interest arising solely by reason of a claim against Lessor that Lessee is not responsible to remove pursuant to the Lease).

(2)    Unless Lessee has previously notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessee shall provide Lessor with written notice, not less than ninety (90) days before the expiration of the Base Term (which notice shall be irrevocable without Lessor's written consent), of Lessee's intent to return the TRAC Equipment (the "End of Term Notice"). If Lessor does not receive the End of Term Notice within the applicable time frame, the Base Term shall be automatically extended (the "Extension Term") without any notice or action on the part of Lessor for three additional months (at the Monthly Base Rental amount) and shall further be extended until the end of the second full month after the month during which the End of Term Notice is received by Lessor. Notwithstanding the foregoing, unless Lessee has previously duly notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessor shall have the right (but not the obligation), at any time during the final month of the Base Term or at any time during the Extension Term to terminate this Agreement, in which event Lessee shall be obligated to return the Equipment at the end of the then-current month (the "Extension Termination Date"). Lessee's failure to return any Item by the

A-8

Extension Termination Date in the manner and condition required by the Lease, for any reason whatsoever, shall constitute an immediate Event of Default under the Lease notwithstanding the making of any payment or the rendering of other performance hereunder. Upon return of the Equipment at the end of any Extension Term, the terms of subsection (3) below shall be applicable and the TRAC Percentage shall remain unchanged.

(3)      Unless Lessee purchases all of the TRAC Equipment in accordance with the terms hereof, Lessee shall return to Lessor all of the TRAC Equipment, pursuant to the return provisions of this Lease. Lessee's failure to return the TRAC Equipment as required hereunder shall constitute an Event of Default hereunder and the Base Term shall, at Lessor' election, be extended on a month-to-month basis. Upon return of the TRAC Equipment and provided that no Event of Default has occurred and is continuing, Lessor shall sell or otherwise dispose of the TRAC Equipment in a commercially reasonable manner. If the amount received by Lessor for the TRAC Equipment in such sale or disposition exceeds the sum of the TRAC Percentage multiplied by the Total Equipment Cost, plus the amounts remaining due under this Agreement and all costs of sale, any such excess shall be returned by Lessor to Lessee as a rental adjustment. If the amount received by Lessor for the TRAC Equipment in such sale or disposition (after deduction of any amounts remaining due under this Agreement and all costs of sale) is less than the TRAC Percentage multiplied by The Total Equipment Cost, then any such deficiency shall be paid by Lessee to Lessor as a rental adjustment provided however that in no event shall Lessee be obligated to pay to Lessor, as a rental adjustment under the TRAC provision, any such amount in excess of ____ **percent (___%)** of the Total Equipment Cost of the Equipment. Lessee agrees to facilitate any such sale or disposition of the TRAC Equipment and hereby grants to Lessor, its agents or employees, the right to enter Lessee's premises for the purpose of selling or otherwise disposing of the TRAC Equipment. Lessee shall reimburse Lessor for all costs of such sale or disposition, including all taxes, advertising costs or other commissions or expenses charged against the sales price. Lessee shall execute Lessor's approved form TRAC certificate at or before closing.

RIDER 2
TO
SCHEDULE NO. _____

This Rider No. 2 is attached to and incorporated into Schedule No. ___, dated as of _____, 20o__, between Peapack Capital Corporation ("Lessor") and _____ ("Lessee") which is issued pursuant to and incorporates the terms of the Master Lease Agreement, dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Schedule or the Master Agreement, as applicable.

Return Conditions For Tractors: Prior to returning Vehicles consisting of tractors to Lessor, Lessee shall, at its own cost and expense, cause Equipment consisting of tractors to meet the minimum required return conditions detailed below:

1. Equipment will meet the rules and regulations of the Department of Transportation (D.O.T.), Interstate Commerce Commission, and any other applicable regulatory inspection requirements.
2. There will be no structural or mechanical damage to the Equipment. The engine must have at least 80,000 mileage until the next manufacturer's scheduled "in-frame" overhaul, and be capable of meeting current smoke emission standards.
3. Lights and all accessories will be in working order.
4. Transmissions, clutches and drive trains will function with no slipping or grabbing, and the rear axle must also meet the manufacturer's minimum specifications under full load.
5. All air and fluid lines will be free of leaks, cuts or cracks.
6. Brake linings will have a minimum of 50% remaining wear, and must hold the unit without fading, as specified by the original manufacturer.
7. Tires will be matched by generic type and tread design and have at least 50% of tread life remaining, with no flats, D.O.T. acceptable, no dry rot on sidewalls, and rims or disc wheels shall have no split base rims. The front tires will not be recaps at return.
8. There will be no missing glass or damage to glass (cracks, chips or breaks).
9. All exteriors will be free of damage with paint in good condition and interiors free of cuts, tears or rips. (in all cases subject to reasonable wear and tear for the tractor's age and mileage).
10. All operating, mechanical and electrical components of the Equipment, including but not limited to, radiators, cooling systems, shocks, springs, radios, heaters and air conditioners, must be able to perform their function properly and as originally intended.
11. Upon request, Lessee will provide electronic maintenance records for a period of up to 24 months prior to the request date.
12. All signs and markings that identify a unit as a part of a fleet or constitute trade dress shall be removed and repainted in a workmanlike manner to blend with the rest of the unit. Size and regulatory markings are to remain on the unit.

A-10

RIDER 3
TO
SCHEDULE NO. __

**Tax Indemnification**

This Rider No. 3 is attached to and incorporated into Schedule No. ___ dated as of _____, 20__ (the "Schedule") between Peapack Capital Corporation (the "Lessor") and _____ ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement dated August 25, 2017, between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Schedule or the Master Agreement, as applicable.

    1.    Lessee represents and warrants that: (a) it believes that it is reasonable to estimate that the useful life of the Equipment exceeds the lease term (including any interim and fixed rental renewal periods) by the greater of one (1) year or twenty (20) percent of such estimated useful life, and that said Equipment will have a value at the end of the lease term, including any fixed rate renewal period, of at least twenty percent (20%) of the original equipment cost of the Equipment, without including in such value any increase or decrease for inflation or deflation during the original lease term; (b) the Equipment is, and will be used by Lessee so as to remain, property eligible for the MACRS Deductions (as defined below); (c) each item of Equipment constitutes "qualified property" pursuant to Section 168(k) of the Internal Revenue Code of 1986, as now or hereafter amended (the "Code"), (d) the Equipment shall be treated as originally placed in service not earlier than the date of the execution and delivery of the Schedule, or in the event the transaction is a sale-leaseback transaction, Lessee shall not have placed in service the Equipment subject to the Schedule at any time prior to three (3) months before the execution and delivery of the Schedule.

    2.    If, as a result of any Event of Default, act or omission of Lessee or breach of any representation or warranty of Lessee either (a) Lessor in computing its taxable income or liability for tax, shall lose, or shall not have, or shall lose the right to claim or there shall be disallowed or recaptured for Federal and/or state income tax purposes, in whole or in part, the benefit to Lessor of MACRS Deductions, or (b) Lessor shall become liable for additional tax (including, without limitation, as a result of Lessee having added an attachment or made an alteration to the Equipment, including (without limitation) any such attachment or alteration which would increase the productivity or capability of the Equipment so as to violate the provisions of Rev. Proc. 2001-28, 2001-1 C.B. 1156 (as it may hereafter be modified or superseded) (hereinafter referred to as a "Loss")), then Lessee shall pay Lessor the Tax Indemnification Payment as additional rent and Lessor shall revise the table of Stipulated Loss Values attached to the Schedule as Exhibit A to reflect the Loss.

    3.    As used herein: (a) "MACRS Deductions" shall mean the deductions under Section 167 of the Code, determined in accordance with the modified Accelerated Cost Recovery System with respect to the original equipment cost any Item of the Equipment using the accelerated method set forth in Section 168(b)(1); (b) "Lessor" shall be deemed to include the consolidated Federal taxpayer group of which Lessor is a member; and (c) "Tax Indemnification Payment" shall mean

A-11

such amount as, after consideration of (i) all taxes required to be paid by Lessor in respect of the receipt thereof under the laws of any governmental or taxing authority in the United States, and (ii) the amount of any interest or penalty which may be payable by Lessor in connection with the Loss, shall be required to cause Lessor's after-tax net return (the "Net Return") to be equal to, but no greater than, the Net Return computed consistently with current tax laws (and with the assumption that Lessor is taxed at the highest marginal Federal and state tax rates) as of the date of the Schedule that would have been available to Lessor had the Loss not occurred.

4.     Lessor shall be responsible for, and shall not be entitled to a Tax Indemnification Payment by Lessee on account of, any Loss arising solely as a direct result of the occurrence of any one or more of the following events: (a) the failure of Lessor to timely and properly claim MACRS Deductions, as applicable, in the tax return of Lessor other than as a result of changes in the Code or applicable regulations unless in the reasonable opinion of Lessor's tax counsel there is no basis for such claim; (b) the failure of Lessor to have sufficient taxable income before application of the MACRS Deductions to offset the full amount of such MACRS Deductions other than as a result of changes in the Code or applicable regulations; (c) any event which by the terms of the Lease requires payment by Lessee of the Stipulated Loss Value if such payment is thereafter actually made to Lessor, to the extent that such payment reimburses Lessor for amounts otherwise payable by Lessee pursuant hereto; or (d) a disqualifying disposition due to sale of any item of the Equipment or the Lease by Lessor prior to a Default.

5.     Lessor promptly shall notify Lessee in writing of such Loss and Lessee shall pay to Lessor the Tax Indemnification Payment within thirty (30) days of such notice. For these purposes, a Loss shall occur upon the earliest of: (a) the happening of any event (such as disposition or change in use of any item of the Equipment) which will cause such Loss; (b) the payment by Lessor to the Internal Revenue Service or state taxing authority of the tax increase (including an increase in estimated taxes) resulting from such Loss; (c) the date on which the Loss is realized by Lessor; or (d) the adjustment of the tax return of Lessor to reflect such Loss.

6.     The obligations of Lessee under this Rider No. 3, which accrue during the term of the Schedule, shall survive the expiration or termination of the Schedule.

LESSOR: **Peapack Capital Corporation**          LESSEE: _____


By: _____          By: _____

Name: _____          Name: _____

Title: _____          Title: _____

A-12

EXHIBIT B
TO
MASTER AGREEMENT

<u>LIST OF LESSEE AFFILIATES</u>

This Exhibit B is attached to and incorporated into the Master Lease Agreement dated August 25, 2017, between Lessor and YRC Enterprises Services, Inc. (the "Master Agreement").  All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Agreement, as applicable.

1.  YRC Inc., d/b/a YRC Freight
2.  USF Holland LLC
3.  USF Reddaway Inc.
4.  New Penn Motor Express LLC

B-1

EXHIBIT C
TO
MASTER AGREEMENT

<u>Guaranty</u>

THIS GUARANTY is made and effective on _____ _____, 2017 by YRC WORLDWIDE INC., a Delaware corporation, having an address for purposes of notices hereunder at 10990 Roe Avenue, Overland Park, KS 66211 (attention: YRCW Treasury Department) (the "Guarantor") to Peapack Capital Corporation, a New Jersey corporation, having an address for purposes of notices hereunder at 500 Hills Drive, Bedminster, NJ 07921-0700 (the "Lessor") on behalf of YRC Enterprises Services, Inc., a Delaware corporation, having its chief executive offices at 10990 Roe Avenue, Overland Park, KS 66211 ("YRC Enterprises"), USF HOLLAND INC., a Michigan corporation, having its chief executive offices at 750 E. 40th Street, Holland, MI 49423 ("Holland"), USF REDDAWAY, INC., an Oregon corporation having its chief executive offices at 7720 SW Mohawk St., Bldg. H, Tualatin, Oregon, 97062 ("Reddaway"), YRC INC., a Delaware corporation having its chief executive offices at 10990 Roe Avenue, Overland Park, KS 66211 ("YRC Freight"), and NEW PENN MOTOR EXPRESS, INC., a Pennsylvania corporation having its chief executive offices at 625 South Fifth Avenue, Lebanon, Pennsylvania 17042 ("New Penn"). YRC Enterprises, Holland, Reddaway, YRC Freight, and New Penn are each individually referred to as a "Lessee" and collectively as "Lessees."

R E C I T A L S:

WHEREAS, Lessor and YRC Enterprise have or intend to enter into Master Lease Agreement dated August 25, 2017, including all riders, exhibits, amendments, supplements or other attachments now or hereafter executed in connection therewith (collectively, the "Master Agreement"). In connection with the Master Agreement, Lessor and Lessees have or intend to enter into one or more Schedules (the "Schedule" or "Schedules") for the purpose of leasing equipment and other property listed thereon. Each Schedule shall incorporate the terms and conditions of the Master Agreement and shall constitute a separate and independent "Lease" for the equipment and other property listed thereon (collectively, the "Equipment").

WHEREAS, Lessor is unwilling to enter into one or more Leases with Lessees without Guarantor's unconditional guarantee of all of Lessees' obligations under each Lease; and

WHEREAS, by Lessor's execution of each Lease, Guarantor will receive reasonably equivalent value for this Guaranty; and

WHEREAS, in consideration of benefits to accrue to Guarantor by Lessor's execution of each Lease, Guarantor is willing to induce Lessor to enter into one or more Leases and to enter into this Guaranty.

NOW, THEREFORE, in consideration of the foregoing and as an inducement to Lessor to enter into one or more Leases with Lessees, Guarantor hereby unconditionally guarantees Lessees'

C-1

performance of all of its obligations under each Lease and hereby represents, warrants and agrees as follows:

1.  Guarantor hereby absolutely, unconditionally and irrevocably guarantees Lessees will fully and promptly pay any payment of rent or other amount due under a Lease, including without limitation any payment resulting from Lessees' breach or non-performance thereof. Guarantor agrees that this is an irrevocable, continuing guaranty and that Guarantor shall perform its obligations hereunder notwithstanding any renewal, extension, modification, increase or discharge of any of Lessees' obligations under the Lease.

2.  Guarantor represents and warrants to Lessor that all information concerning Guarantor furnished to Lessor is true and correct in all material respects.

3.  This Guaranty shall apply to all Schedules executed in connection with the Master Agreement, including, without limitation, any and all future Schedules entered into after the making and execution of this Guaranty. Neither Lessor nor Lessee shall be required to notify Guarantor of any Lessee's execution of each such Schedule before, at the time of, or after it is executed and delivered.

4.  Guarantor waives notice of acceptance hereof, presentment, demand, protest and notice of nonpayment or protest as to any Lease; any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against any Lessee or any other person directly or contingently liable for the obligations guaranteed hereunder; or against or with respect to any Lessee's property (including without limitation, any property that may collateralize its obligations to Lessor), arising from the existence or performance of this Guaranty; all exemptions , all demands and notices required by law, notice of dishonor and any other notice otherwise required with respect to any Lessee's failure to perform under any Lease; all setoffs and counterclaims; and any duty on Lessor's part (should such duty exist) to disclose to Guarantor any matter, fact or item related to the business operations or condition (financial or otherwise) of Lessees or their affiliates or property, whether now or hereafter known by Lessor. Guarantor also waives any defense or disability available to Lessees that might save or release them from liability including, without limitation, defect in or unenforceability of any Lease. No delay on the part of Lessor in exercising any rights under this Guaranty or failure to exercise the same shall operate as a waiver of such rights. No modification or waiver of the provisions of this Guaranty shall be effective unless in writing signed by Lessor, and no such waiver shall be applicable and effective except in the specific instance for which it is given.

5.  In accordance with the provisions of the Master Agreement, without causing a release of Guarantor from its obligations hereunder, and without being required to notify Guarantor of any of the following modifications made, Lessor shall be authorized to:

    a.  renew, extend (including extensions beyond the original term of any Lease), modify, release, increase or discharge any obligations of any Lessee, its customers, or co-guarantors (whether hereunder or under a separate instrument) or of any other party at any time directly or contingently liable for the payment of Lessee's obligations under any

C-2

Lease;

   b.  accept partial payments of any Lessee's obligations under any Lease;

   c.  accept new or additional documents, instruments or agreements relating to or in substitution of any Lessee's obligations under any Lease;

   d.  settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of any Lessee's obligations under any Lease, the Equipment and/or any security therefor in any manner;

   e.  consent to the transfer or return of the Equipment, and take and hold additional security or guaranties for any Lessee's obligations under any Lease;

   f.  amend, exchange, release or waive any security or guaranty (other than this Guaranty); or

   g.  bid and purchase at any sale of the Equipment or other security, and direct the order and manner of sale.

6.    Guarantor hereby represents and warrants that this Guaranty has been duly authorized and approved by all necessary corporate action.  Guarantor acknowledges that its obligations hereunder are separate and independent of Lessees' obligations under any Lease. Guarantor hereby waives any right to require Lessor to proceed first against any Lessee, against the Equipment or against any additional security under any Lease, or to pursue any other remedy available to it under the Lease or under applicable law.

7.    If any payment applied to Lessee's obligations is thereafter set aside, recovered, rescinded or required to be returned for any reason (including on account of a preference in the bankruptcy of Lessee), the obligation to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence notwithstanding such application, and this Guaranty shall be enforceable as to such obligation as fully as if such application had never been made.

8.    Guarantor agrees to pay all costs, expenses and legal fees paid or incurred by Lessor in connection with enforcing any obligation of any Lessee and this Guaranty.

9.    Guarantor agrees that this Guaranty shall be governed by and construed in accordance with the laws of the State of New York and that jurisdiction for any dispute shall be in the New York federal courts.  Guarantor agrees that it shall reimburse Lessor for all costs and expenses incurred by Lessor in connection with the enforcement of this Guaranty, including without limitation court costs and actual attorney's fees. THE PARTIES HERETO AGREE THAT IN THE EVENT OF AN ALLEGED BREACH OF THIS GUARANTY OR ANY DOCUMENTS RELATING THERETO BY EITHER PARTY, OR ANY CONTROVERSIES ARISE BETWEEN THE PARTIES RELATING TO THIS GUARANTY OR ANY DOCUMENTS RELATING THERETO, SUCH CONTROVERSIES SHALL BE TRIED BY A JUDGE ALONE BEFORE THE FEDERAL COURTS IN NEW YORK, NEW YORK.  THE PARTIES, HAVING HAD THE

OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL OF THEIR OWN CHOOSING, HEREBY KNOWINGLY AND VOLUNTARILY CONSENT TO NEW YORK JURISDICTION AS SET FORTH HEREIN AND WAIVE THEIR RIGHTS TO A TRIAL BY JURY IN ANY MATTER RELATING TO THIS GUARANTY OR ANY DOCUMENTS RELATED THERETO.

10. Nothing shall discharge or satisfy Guarantor's obligations hereunder except the full payment, performance and observance of all of each Lessee's obligations under each Lease. In connection with the assignment of a Lease, Lessor may assign this Guaranty to a successor, assignee, financing lender and/or purchaser without notice to or the consent of Guarantor. This Guaranty shall be binding upon the Guarantor, its successors and assigns and shall inure to the benefit of Lessor, its successors and assigns, including any successor assignees.

11. In providing this Guaranty, the Guarantor has not relied on any explicit or implicit representations, warranties, covenants or agreements whether made orally or in writing.

12. The covenants, conditions, terms and provisions of this Guaranty may not be waived or modified orally and shall supersede all previous, representations, commitments or agreements between the parties. In the event that any provision of this Guaranty shall be held to be invalid or unenforceable, the remaining provisions shall continue in full force and effect.

GUARANTOR:
YRC WORLDWIDE INC.

By: _____

Name: _____

Title: _____

3653549.7

C-4

<u>Guaranty</u>

THIS GUARANTY is made and effective as of August 25, 2017 by YRC WORLDWIDE INC., a Delaware corporation, having an address for purposes of notices hereunder at 10990 Roe Avenue, Overland Park, KS 66211 (attention: YRCW Treasury Department) (the "Guarantor") to Peapack Capital Corporation, a New Jersey corporation, having an address for purposes of notices hereunder at 500 Hills Drive, Bedminster, NJ 07921-0700 (the "Lessor") on behalf of YRC Enterprises Services, Inc., a Delaware corporation, having its chief executive offices at 10990 Roe Avenue, Overland Park, KS 66211 ("YRC Enterprises"), USF HOLLAND INC., a Michigan corporation, having its chief executive offices at 750 E. 40th Street, Holland, MI  49423 ("Holland"), USF REDDAWAY, INC., an Oregon corporation having its chief executive offices at 7720 SW Mohawk St., Bldg. H, Tualatin, Oregon, 97062 ("Reddaway"), YRC INC., a Delaware corporation having its chief executive offices at 10990 Roe Avenue, Overland Park, KS 66211 ("YRC Freight"), and NEW PENN MOTOR EXPRESS, INC., a Pennsylvania corporation having its chief executive offices at 625 South Fifth Avenue, Lebanon, Pennsylvania 17042 ("New Penn"). YRC Enterprises, Holland, Reddaway, YRC Freight, and New Penn are each individually referred to as a "Lessee" and collectively as "Lessees."

R E C I T A L S :

WHEREAS, Lessor and YRC Enterprise have or intend to enter into Master Lease Agreement dated as of August 25, 2017, including all riders, exhibits, amendments, supplements or other attachments now or hereafter executed in connection therewith (collectively, the "Master Agreement"). In connection with the Master Agreement, Lessor and Lessees have or intend to enter into one or more Schedules (the "Schedule" or "Schedules") for the purpose of leasing equipment and other property listed thereon. Each Schedule shall incorporate the terms and conditions of the Master Agreement and shall constitute a separate and independent "Lease" for the equipment and other property listed thereon (collectively, the "Equipment").

WHEREAS, Lessor is unwilling to enter into one or more Leases with Lessees without Guarantor's unconditional guarantee of all of Lessees' obligations under each Lease; and

WHEREAS, by Lessor's execution of each Lease, Guarantor will receive reasonably equivalent value for this Guaranty; and

WHEREAS, in consideration of benefits to accrue to Guarantor by Lessor's execution of each Lease, Guarantor is willing to induce Lessor to enter into one or more Leases and to enter into this Guaranty.

NOW, THEREFORE, in consideration of the foregoing and as an inducement to Lessor to enter into one or more Leases with Lessees, Guarantor hereby unconditionally guarantees Lessees' performance of all of its obligations under each Lease and hereby represents, warrants and agrees as follows:

1.      Guarantor hereby absolutely, unconditionally and irrevocably guarantees Lessees will fully and promptly pay any payment of rent or other amount due under a Lease, including without

limitation any payment resulting from Lessees' breach or non-performance thereof. Guarantor agrees that this is an irrevocable, continuing guaranty and that Guarantor shall perform its obligations hereunder notwithstanding any renewal, extension, modification, increase or discharge of any of Lessees' obligations under the Lease.

2.    Guarantor represents and warrants to Lessor that all information concerning Guarantor furnished to Lessor is true and correct in all material respects.

3.    This Guaranty shall apply to all Schedules executed in connection with the Master Agreement, including, without limitation, any and all future Schedules entered into after the making and execution of this Guaranty. Neither Lessor nor Lessee shall be required to notify Guarantor of any Lessee's execution of each such Schedule before, at the time of, or after it is executed and delivered.

4.    Guarantor waives notice of acceptance hereof, presentment, demand, protest and notice of nonpayment or protest as to any Lease; any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against any Lessee or any other person directly or contingently liable for the obligations guaranteed hereunder; or against or with respect to any Lessee's property (including without limitation, any property that may collateralize its obligations to Lessor), arising from the existence or performance of this Guaranty; all exemptions , all demands and notices required by law, notice of dishonor and any other notice otherwise required with respect to any Lessee's failure to perform under any Lease; all setoffs and counterclaims; and any duty on Lessor's part (should such duty exist) to disclose to Guarantor any matter, fact or item related to the business operations or condition (financial or otherwise) of Lessees or their affiliates or property, whether now or hereafter known by Lessor. Guarantor also waives any defense or disability available to Lessees that might save or release them from liability including, without limitation, defect in or unenforceability of any Lease. No delay on the part of Lessor in exercising any rights under this Guaranty or failure to exercise the same shall operate as a waiver of such rights. No modification or waiver of the provisions of this Guaranty shall be effective unless in writing signed by Lessor, and no such waiver shall be applicable and effective except in the specific instance for which it is given.

5.    In accordance with the provisions of the Master Agreement, without causing a release of Guarantor from its obligations hereunder, and without being required to notify Guarantor of any of the following modifications made, Lessor shall be authorized to:

a.    renew, extend (including extensions beyond the original term of any Lease), modify, release, increase or discharge any obligations of any Lessee, its customers, or co-guarantors (whether hereunder or under a separate instrument) or of any other party at any time directly or contingently liable for the payment of Lessee's obligations under any Lease;

b.    accept partial payments of any Lessee's obligations under any Lease;

c.    accept new or additional documents, instruments or agreements relating to or in

2

substitution of any Lessee's obligations under any Lease;

    d.   settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of any Lessee's obligations under any Lease, the Equipment and/or any security therefor in any manner;

    e.   consent to the transfer or return of the Equipment, and take and hold additional security or guaranties for any Lessee's obligations under any Lease;

    f.   amend, exchange, release or waive any security or guaranty (other than this Guaranty); or

    g.   bid and purchase at any sale of the Equipment or other security, and direct the order and manner of sale.

6.    Guarantor hereby represents and warrants that this Guaranty has been duly authorized and approved by all necessary corporate action.  Guarantor acknowledges that its obligations hereunder are separate and independent of Lessees' obligations under any Lease.  Guarantor hereby waives any right to require Lessor to proceed first against any Lessee, against the Equipment or against any additional security under any Lease, or to pursue any other remedy available to it under the Lease or under applicable law.

7.    If any payment applied to Lessee's obligations is thereafter set aside, recovered, rescinded or required to be returned for any reason (including on account of a preference in the bankruptcy of Lessee), the obligation to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence notwithstanding such application, and this Guaranty shall be enforceable as to such obligation as fully as if such application had never been made.

8.    Guarantor agrees to pay all costs, expenses and legal fees paid or incurred by Lessor in connection with enforcing any obligation of any Lessee and this Guaranty.

9.    Guarantor agrees that this Guaranty shall be governed by and construed in accordance with the laws of the State of New York and that jurisdiction for any dispute shall be in the New York federal courts.  Guarantor agrees that it shall reimburse Lessor for all costs and expenses incurred by Lessor in connection with the enforcement of this Guaranty, including without limitation court costs and actual attorney's fees. THE PARTIES HERETO AGREE THAT IN THE EVENT OF AN ALLEGED BREACH OF THIS GUARANTY OR ANY DOCUMENTS RELATING THERETO BY EITHER PARTY, OR ANY CONTROVERSIES ARISE BETWEEN THE PARTIES RELATING TO THIS GUARANTY OR ANY DOCUMENTS RELATING THERETO, SUCH CONTROVERSIES SHALL BE TRIED BY A JUDGE ALONE BEFORE THE FEDERAL COURTS IN NEW YORK, NEW YORK.  THE PARTIES, HAVING HAD THE OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL OF THEIR OWN CHOOSING, HEREBY KNOWINGLY AND VOLUNTARILY CONSENT TO NEW YORK JURISDICTION AS SET FORTH HEREIN AND WAIVE THEIR RIGHTS TO A TRIAL BY JURY IN ANY MATTER RELATING TO THIS GUARANTY OR ANY DOCUMENTS RELATED THERETO.

3

10. Nothing shall discharge or satisfy Guarantor's obligations hereunder except the full payment, performance and observance of all of each Lessee's obligations under each Lease. In connection with the assignment of a Lease, Lessor may assign this Guaranty to a successor, assignee, financing lender and/or purchaser without notice to or the consent of Guarantor. This Guaranty shall be binding upon the Guarantor, its successors and assigns and shall inure to the benefit of Lessor, its successors and assigns, including any successor assignees.

11. In providing this Guaranty, the Guarantor has not relied on any explicit or implicit representations, warranties, covenants or agreements whether made orally or in writing.

12. The covenants, conditions, terms and provisions of this Guaranty may not be waived or modified orally and shall supersede all previous, representations, commitments or agreements between the parties. In the event that any provision of this Guaranty shall be held to be invalid or unenforceable, the remaining provisions shall continue in full force and effect.


GUARANTOR:

YRC WORLDWIDE INC.

By: _____

Name: Mark Brehmer

Title: VP & Treasurer

3661904.1

4

## FIRST AMENDMENT TO MASTER LEASE AGREEMENT

**THIS FIRST AMENDMENT TO MASTER LEASE AGREEMENT** (this "**First Amendment**"), dated as of April 29  2020, is by and between **PEAPACK CAPITAL CORPORATION** (the "**Lessor**"**), YRC ENTERPRISE SERVICES, INC.**, as agent for and on behalf of the applicable Lessee Affiliate (the "**Lessee**"), **YRC INC**., and **USF REDDAWAY INC**. (each, a "**Lessee Affiliate**").

RECITALS:

**A.**    Lessor and Lessee entered into a certain Master Lease Agreement as of August 25, 2017 ("Master Lease Agreement") whereby approved Lessee Affiliates (as such term is defined in the Master Lease Agreement) have leased certain Equipment from Lessor pursuant to various Schedules to the Master Lease Agreement (each Schedule shall be deemed a "Lease" as such term is defined in the Master Lease Agreement);

**B.**    Schedule No. 1 to the Master Lease Agreement, dated as of October 26, 2017, Schedule No. 2 to the Master Lease Agreement, dated as of November 21, 2017, and Schedule No. 4 to the Master Lease Agreement, dated as of November 13, 2018, are each between YRC Inc. as Lessee Affiliate ("YRC Inc.") and Lessor;

**C.**    Schedule No. 3 to the Master Lease Agreement, dated as of December 29, 2017, and Schedule No. 5 to the Master Lease Agreement, dated as of December 27, 2018, are each between USF Reddaway Inc. as Lessee Affiliate ("Reddaway") and Lessor;

**D.**     Due to the current COVID-19 pandemic, both YRC Inc. and Reddaway have requested that Lessor grant them each a six (6) month deferral of their Base Monthly Rental payments due under their respective Schedules listed above;

**E.**    Lessor has agreed to the condition provided in Recital D provided that Lessee provide Lessor with an additional report that Lessee prepares on a regular basis;

**NOW, THEREFORE,** in consideration of the mutual agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessee, YRC Inc., Reddaway and Lessor hereby agree to amend the Master Lease Agreement, and the five (5) Leases specified above as follows:

1. Lessor agrees to a six (6) month deferral of Base Monthly Rental payments for YRC Inc. for Schedule No.1, Scheduled No. 2 and Schedule No. 4, beginning with the Base Monthly Rental payment due April 1, 2020 and continuing and including the Base Monthly Rental payment due on September 1, 2020,  On October 1, 2020, YRC Inc. shall resume making its regularly-scheduled Base Monthly Rental payments for Schedule No. 1, Schedule No. 2 and Schedule No. 4 pursuant to the terms of each Lease;

2. Lessor agrees to a six (6) month deferral of Base Monthly Rental payments for Reddaway. for Schedule No.3 and Schedule No.5, beginning with the Base Monthly Rental payment due April 1, 2020 and continuing and including the Base Monthly Rental payment due on September 1, 2020, On October 1, 2020, Reddaway Inc. shall resume making its regularly-scheduled Base Monthly Rental payments for Schedule No. 3 and Schedule No. 5 pursuant to the terms of each Lease;

3. The term "TRAC Percentage" as referenced in Rider No. 1 to Schedule No. 1, Rider No. 1 to Schedule No. 2, Rider No. 1 to Schedule No. 3, Rider No.1 to Schedule No. 4, and Rider No. 1 to Schedule No. 5 shall be defined as "50%".

4.  In section 3 of the TRAC Purchase Option provision in Rider No. 1 to Schedule No. 1, Rider No. 1 to Schedule No. 2, Rider No. 1 to Schedule No. 3, Rider No.1 to Schedule No. 4, and Rider No. 1 to Schedule No. 5, the percentage stated in the fourth to last sentence thereof shall be "37.9703%".

5.  For as long as the deferral of Base Monthly Rental payments is in effect, Lessee hereby agrees to provide its 13-week Cash Flow Forecast Report to the Lessor on at least a bi-weekly basis.

Except as expressly modified hereby, the terms and conditions of the Master Lease Agreement and each Lease remain in full force and effect, and are hereby ratified and confirmed in all respects.  In the event of a conflict between this First Amendment and the Master Lease Agreement and/or any Lease, the terms of this First Amendment shall govern. Capitalized terms used in this First Amendment which are defined in the Master Lease Agreement and/or Lease shall have the same meanings as ascribed to them in the Master Lease Agreement and/or Lease.

IN WITNESS WHEREOF, Lessee, YRC Inc., Reddaway and Lessor each have caused this First Amendment to be duly executed and delivered as of the date first above written.

**LESSEE: YRC ENTERPRISE SERVICES, INC.**

By: _____

Name: ___Mark D. Boehmer_____

Title: ___Vice President & Treasurer_____

**LESSEE AFFILIATE: YRC INC.**

By: _____

Name: ___Mark D. Boehmer_____

Title: ___Vice President & Treasurer_____

**LESSEE AFFILIATE: USF REDDAWAY INC.**

By: _____

Name: ___Mark D. Boehmer_____

Title: ___Vice President & Treasurer_____

**LESSOR: PEAPACK CAPITAL CORPORATION**

By: _____

Name: ___Robert R Cobleigh_____

Title: ___President_____

2

# EXHIBIT B

SCHEDULE NO. 1

This Schedule No. 1 dated October 26, 2017 (the "Schedule") between Peapack Capital Corporation (the "Lessor") and YRC Inc. (d/b/a YRC Freight) (the "Lessee") incorporates by reference the terms and conditions of Master Lease Agreement dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement") and constitutes a separate lease between Lessor and Lessee. The Schedule and Master Agreement as incorporated herein are hereinafter referred to collectively as the "Lease". All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Agreement.

1. Equipment:  See Exhibit A attached hereto.

2. Equipment Delivery Location (or Titling Jurisdiction for Vehicles (defined below) subject to certificates of title):  The titling jurisdiction is Indiana.

3. Total Equipment Cost:  $9,194,850.56

4. Base Term:  Sixty (60) Months

5. Base Term Commencement Date:  October 26, 2017

6. Base Term End Date:  October 26, 2022

7. Due Dates of Base Monthly Rental Payments: The 26th day of each month, commencing with November 26, 2017

8. Date of Last Base Monthly Rental Payment: October 26, 2022

9. Base Monthly Rental:  $111,097.00 (plus applicable sales/use tax)

10. Base Monthly Rent Paid in Advance or Arrears:  Arrears

11. Supplier:   American Trailer and Storage, Inc.

12. Equipment Return Location:  Anywhere in the continental United States as determined by Lessor.

13. Stipulated Loss Value: See attached Exhibit B to this Schedule.  Stipulated Loss Value means, with respect to any Item, the product of the Total Equipment Cost of such Item times the percentage applicable to the due date for the Base Monthly Rental payment for which the Stipulated Loss Value is being calculated, as set forth on Exhibit B attached hereto, except that following the expiration of the Base Term, the applicable percentage shall be the last percentage set forth on Exhibit B attached hereto. For the avoidance of doubt, Stipulated Loss Values are in addition to any unpaid Base Monthly Rental payments due on or prior to the same day.

14. Special Terms:

    a. Authorization for Electronic Payments:  Lessee agrees to originate base monthly lease payments to Lessor or its assigns via Automated Clearinghouse (ACH) from Lessee's

account maintained with its financial institution.

b.  Guaranty. Notwithstanding anything to the contrary herein, the parties acknowledge and agree that this Lease is guaranteed by YRC Worldwide Inc.

c.  Titled Equipment: The Equipment contains one or more titled vehicles (individually, a "Vehicle" and collectively, the "Vehicles"). Each Vehicle shall be used predominantly in the United States in Lessee's business in accordance with all applicable governmental and insurer titling requirements and limitations. Title to each Vehicle shall at all times remain in Lessor, or Lessor's Assignee(s) as owner or, if permitted under the applicable vehicle titling statutes, as lienholder. Lessee hereby grants to Lessor an irrevocable power of attorney coupled with an interest in Lessee's name (a "Power of Attorney"), to apply for a certificate of title for any Vehicle that is required to be titled under the laws of any jurisdiction where the Vehicle is or may be used and/or to transfer title thereto upon assignment by Lessor to an Assignee or upon the exercise by Lessor of its remedies upon an Event of Default by Lessee under the Lease. In furtherance of such grant, Lessee shall provide a written Power of Attorney, in form and substance satisfactory to Lessor, upon Lessor's request. If Lessee fails to perform or comply with any of its agreements with respect to titling of Vehicles, Lessor may perform or comply with such agreements in its own name or in Lessee's name as attorney-in-fact and the amount of any payments and expenses of Lessor incurred in connection with such performance or compliance, together with interest thereon at the rate of 1% per month from the date Lessor made such payments or incurred such expenses until payment is received by Lessor, or if such rate shall exceed the maximum rate of interest allowed by law, then at such maximum rate, shall be deemed rent payable by Lessee upon demand.

Notwithstanding anything contrary contained in the Master Agreement, the following provisions shall apply to each Vehicle:

1)  Lessee shall, at Lessee's own expense, register, title and license each Vehicle in the manner prescribed by Lessor as required by the applicable government or regulatory agency(ies). Lessee will do whatever may be necessary to have a statement of the interest of Lessor or any Assignee of Lessor in any Vehicle noted on any certificate of title relating to any Vehicle and will deliver said certificate to Lessor. In event Lessor registers, titles and/or licenses any Vehicle, Lessee shall immediately reimburse Lessor for all expenses relating thereto.

    Lessee shall pay or provide for payment of all operating expenses of all Vehicles, including without limitation, gasoline, oil, anti-freeze, other fluids, servicing, repairs, storage, towing and fines.

2)  Lessee shall require any operator of the vehicle to be properly licensed, trained and able to perform the functions necessary for safe operation. Lessee hereby covenants that it shall not permit its employees, representatives or agents to use any Vehicle for illegal purposes, including, without limitation, the illegal transportation of controlled substances, firearms, explosives, or hazardous

-2-

materials.

3) Lessee shall be responsible for all fees, traffic summonses, penalties and fines that may be imposed due to the use of the Vehicle.

4) Lessee shall provide to Lessor any documentation pertaining to any Vehicle as Lessor may, from time to time, reasonably request. Including but not limited to the location, mileage and condition of any or all Vehicles.

d. TRAC Rider:  The TRAC provisions described on Rider No. 1 attached hereto are hereby made applicable to and incorporated into this Schedule.

e. Mobile Equipment:  Notwithstanding anything to the contrary in the Master Agreement, Lessor acknowledges that the Equipment is mobile and may be moved to additional locations so long as Lessee keeps the Equipment in its sole possession and control, except that Lessee may store any Item of the Equipment at a customer's location for a limited period of time and in the ordinary course of business, and except when any Item of Equipment is undergoing required repairs. Upon Lessor's request, Lessee shall promptly provide Lessor the then current location of the Equipment.

15. Maintenance and Return Conditions for Vehicles:  Without limiting the obligations of Lessee under the Lease, Lessee shall, at its expense, do the following:

a. Lessee shall ensure that all Vehicles and their operations conform to all applicable local, state, and federal laws, health and safety guidelines.  Upon return, the Vehicles will be complete and operational with all components as originally supplied and will have passed U. S. Department of Transportation or appropriate regulatory agency requirements for operation.  If applicable, an inspection sticker or certificate will be furnished to Lessor verifying compliance with any regulatory requirements.  Lessee shall satisfy all legal and regulatory conditions necessary for Lessor to sell or lease the Vehicles to a third party.  Lessee will keep all licenses and operating certificates required for operation of the Vehicles current during the Lease Term.

b. Upon return, each Vehicle and its components shall meet all of their applicable manufacturer's specifications for performance under full rated loads.  In addition, each Vehicle must be maintained throughout the Lease Term and returned upon the expiration or termination thereof in accordance with all of the following conditions:

   i. Tires.  All tires shall be matched on each Vehicle by the same type and tread design, original size, and manufacturer, and have a minimum of 12/32 inch of remaining tread depth. All front tires shall be original casings; rear tires may be either casings or recapped casings.  All tires shall be free of flat or bald spots, cupping, dry rot, cuts and exposed cords.

   ii. General Condition.  The Vehicles must be able to pass Federal Highway Administration inspection. The Vehicles shall be structurally sound with no material structural or mechanical damage, in good overall appearance, clean with

- 3 -

no missing or damaged parts, ordinary wear and tear excepted. The Vehicles shall be free of any material rust and corrosion. No glass shall be broken or cracked, no upholstery shall have any cuts or burns and there shall be no physical damage to exterior or interior materials, other than from normal use, that exceeds $500 in the aggregate to repair and no physical damage from accidents. Upon return, all Vehicles shall be completely de-identified, including but not limited to all commercial logos, advertising, graffiti, Lessee insignia and lettering. The de-identified surfaces shall be repaired and refinished in such a way that the area blends in with the remainder of the item's overall appearance. Manufacturer's identity plates and markings shall not be removed or obscured.

iii.   Documents and Records. Written records of scheduled and other maintenance and repair work done shall be kept, dated, and signed by the appropriate authority. A service history or log will be maintained during the Lease Term, in English, and a copy provided to Lessor upon request during the Lease Term, or at the expiration or other termination (by acceleration or otherwise) of the Lease. All maintenance records, maintenance record jackets, repair jackets, repair orders, license plates, registration certificates, and all other similar documents, in their entirety, must be returned to Lessor.

iv.   Brakes. Brake drums and linings shall not be cracked and shall not exceed manufacturer's recommended wear limits. Brake linings shall have a minimum of 3/8 inch of remaining wear on each lining.

v.   Maintenance. Lessee shall follow the manufacturer's recommended maintenance and service schedule, including, without limitation, manufacturer's schedule of engine oil change and sampling, to the extent required to validate any warranty, at Lessee's sole cost and expense. Any maintenance or repair work shall comply with the guidelines and procedures as specified by the manufacturers of the Vehicles or each component of the Vehicles. Lessee will use only original manufacturer's approved replacement parts and components in the performance of any maintenance and repair of the Vehicles. Lessee will at all times maintain the Vehicles in good operational condition and appearance, and shall not discriminate in such maintenance between owned or leased Vehicles.

16. <u>Tax Indemnity Rider</u>. The income tax indemnity described on Rider No. 2 attached hereto is hereby incorporated into this Schedule.

All other terms and conditions of the Master Agreement shall remain in full force and effect without change.

The undersigned Lessee acknowledges that this Schedule authorizes the Lessor or its agents or assignee(s) to sign, execute and file on its behalf any and all necessary documents, including UCC financing statements and other filings and recordings, to make public this lease transaction. The parties intend this transaction to be a true lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this Schedule is not a true lease but is in the nature of a

sale, consignment, or other transaction, the parties intend and the Lessee hereby grants a continuing security interest in the Equipment from the date of this Schedule to secure the payment of all Lessee's indebtedness to Lessor.

IN THE EVENT OF ANY CONFLICT BETWEEN THE PROVISIONS OF THE MASTER AGREEMENT AND THIS SCHEDULE, THIS SCHEDULE SHALL PREVAIL.

THIS SCHEDULE TOGETHER WITH THE MASTER AGREEMENT, ANY ADDITIONAL PROVISION(S) REFERRED TO IN HEREIN OR THEREIN, AND ANY ADDENDA, ANNEXES, EXHIBITS OR RIDERS EXECUTED BY LESSOR AND LESSEE WHICH REFERENCES THIS SCHEDULE CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT.

*[Remainder of this page intentionally left blank, signatures appear on next page.]*

LESSOR: Peapack Capital Corporation

By: _____

Name: _____

Title: _____

LESSEE: YRC Inc. (d/b/a YRC Freight)

By: _____

Name: Mark D. Boehmer

Title: Vice President

This original executed counterpart of this Schedule is hereby marked as "Original" and constitutes the chattel paper of this Schedule. Any executed counterparts of this Schedule that do not include the immediately preceding sentence do not constitute chattel paper.

EXHIBIT A TO SCHEDULE NO. 1

DESCRIPTION OF EQUIPMENT SUBJECT TO SCHEDULE NO. 1

431 2018 Hyundai Translead 28' HT Composite Dry Van Trailers, more particularly described as follows:

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C7JT744001 | 135639 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744002 | 135640 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744003 | 135641 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744004 | 135642 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744005 | 135643 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744006 | 135644 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744007 | 135645 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744008 | 135646 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744009 | 135647 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744010 | 135648 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744011 | 135649 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744012 | 135650 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744013 | 135651 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744014 | 135652 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744015 | 135653 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744016 | 135654 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744017 | 135655 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744018 | 135656 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744019 | 135657 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744020 | 135658 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744021 | 135659 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744022 | 135660 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744023 | 135661 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744024 | 135662 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744025 | 135663 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744026 | 135664 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744027 | 135665 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744028 | 135666 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744029 | 135667 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744030 | 135668 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744031 | 135669 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744032 | 135670 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744033 | 135671 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744034 | 135672 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744035 | 135673 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

A-1

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C4JT744036 | 135674 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744037 | 135675 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744038 | 135676 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744039 | 135677 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744040 | 135678 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744041 | 135679 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744042 | 135680 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744043 | 135681 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744044 | 135682 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744045 | 135683 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744046 | 135684 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744047 | 135685 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744048 | 135686 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744049 | 135687 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744050 | 135688 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744051 | 135689 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744052 | 135690 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744053 | 135691 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744054 | 135692 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744055 | 135693 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744056 | 135694 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744057 | 135695 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744058 | 135696 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744059 | 135697 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744060 | 135698 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744061 | 135699 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744062 | 135700 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744063 | 135701 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744064 | 135702 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744065 | 135703 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744066 | 135704 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744067 | 135705 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744068 | 135706 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744069 | 135707 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744070 | 135708 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744071 | 135709 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744072 | 135710 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744073 | 135711 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744074 | 135712 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744075 | 135713 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744076 | 135714 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744077 | 135715 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C9JT744078 | 135716 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744079 | 135717 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744080 | 135718 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744081 | 135719 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744082 | 135720 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744083 | 135721 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744084 | 135722 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744085 | 135723 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744086 | 135724 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744087 | 135725 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744088 | 135726 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744089 | 135727 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744090 | 135728 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744091 | 135729 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744092 | 135730 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744093 | 135731 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744094 | 135732 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744095 | 135733 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744096 | 135734 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744097 | 135735 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744098 | 135736 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744099 | 135737 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744100 | 135738 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744101 | 135739 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744102 | 135740 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744103 | 135741 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744104 | 135742 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744105 | 135743 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744106 | 135744 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744107 | 135745 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744108 | 135746 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744109 | 135747 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744110 | 135748 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744111 | 135749 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744112 | 135750 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744113 | 135751 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744114 | 135752 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744115 | 135753 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744116 | 135754 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744117 | 135755 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744118 | 135756 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744119 | 135757 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

A-3

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C4JT744120 | 135758 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744121 | 135759 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744122 | 135760 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744123 | 135761 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744124 | 135762 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744125 | 135763 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744126 | 135764 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744127 | 135765 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744128 | 135766 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744129 | 135767 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744130 | 135768 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744131 | 135769 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744132 | 135770 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744133 | 135771 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744134 | 135772 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744135 | 135773 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744136 | 135774 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744137 | 135775 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744138 | 135776 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744139 | 135777 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744140 | 135778 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744141 | 135779 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744142 | 135780 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744143 | 135781 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744144 | 135782 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744145 | 135783 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744146 | 135784 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744147 | 135785 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744148 | 135786 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744149 | 135787 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744150 | 135788 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744151 | 135789 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744152 | 135790 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744153 | 135791 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744154 | 135792 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744155 | 135793 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744156 | 135794 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744157 | 135795 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744158 | 135796 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744159 | 135797 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744160 | 135798 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744161 | 135799 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C9JT744162 | 135800 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744163 | 135801 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744164 | 135802 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744165 | 135803 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744166 | 135804 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744167 | 135805 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744168 | 135806 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744169 | 135807 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744170 | 135808 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744171 | 135809 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744172 | 135810 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744173 | 135811 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744174 | 135812 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744175 | 135813 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744176 | 135814 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744177 | 135815 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744178 | 135816 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744179 | 135817 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744180 | 135818 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744181 | 135819 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744182 | 135820 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744183 | 135821 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744184 | 135822 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744185 | 135823 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744186 | 135824 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744187 | 135825 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744188 | 135826 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744189 | 135827 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744190 | 135828 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744191 | 135829 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744192 | 135830 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744193 | 135831 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744194 | 135832 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744195 | 135833 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744196 | 135834 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744197 | 135835 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744198 | 135836 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744199 | 135837 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744200 | 135838 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744201 | 135839 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744202 | 135840 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744203 | 135841 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281CXJT744204 | 135842 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744205 | 135843 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744206 | 135844 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744207 | 135845 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744208 | 135846 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744209 | 135847 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744210 | 135848 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744211 | 135849 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744212 | 135850 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744213 | 135851 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744214 | 135852 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744215 | 135853 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744216 | 135854 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744217 | 135855 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744218 | 135856 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744219 | 135857 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744220 | 135858 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744221 | 135859 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744222 | 135860 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744223 | 135861 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744224 | 135862 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744225 | 135863 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744226 | 135864 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744227 | 135865 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744228 | 135866 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744229 | 135867 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744230 | 135868 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744231 | 135869 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744232 | 135870 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744233 | 135871 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744234 | 135872 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744235 | 135873 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744236 | 135874 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744237 | 135875 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744238 | 135876 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744239 | 135877 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744240 | 135878 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744241 | 135879 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744242 | 135880 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744243 | 135881 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744244 | 135882 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744245 | 135883 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C4JT744246 | 135884 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744247 | 135885 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744248 | 135886 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744249 | 135887 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744250 | 135888 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744251 | 135889 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744252 | 135890 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744253 | 135891 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744254 | 135892 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744255 | 135893 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744256 | 135894 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744257 | 135895 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744258 | 135896 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744259 | 135897 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744260 | 135898 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744261 | 135899 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744262 | 135900 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744263 | 135901 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744264 | 135902 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744265 | 135903 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744266 | 135904 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744267 | 135905 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744268 | 135906 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744269 | 135907 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744270 | 135908 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744271 | 135909 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744272 | 135910 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744273 | 135911 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744274 | 135912 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744275 | 135913 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744276 | 135914 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744277 | 135915 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744278 | 135916 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744279 | 135917 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744280 | 135918 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744281 | 135919 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744282 | 135920 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744283 | 135921 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744284 | 135922 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744285 | 135923 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744286 | 135924 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744287 | 135925 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C9JT744288 | 135926 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744289 | 135927 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744290 | 135928 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744291 | 135929 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744292 | 135930 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744293 | 135931 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744294 | 135932 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744295 | 135933 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744296 | 135934 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744297 | 135935 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744298 | 135936 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744299 | 135937 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744300 | 135938 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744301 | 135939 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744302 | 135940 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744303 | 135941 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744304 | 135942 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744305 | 135943 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744306 | 135944 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744307 | 135945 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744308 | 135946 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744309 | 135947 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744310 | 135948 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744311 | 135949 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744312 | 135950 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744313 | 135951 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744314 | 135952 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744315 | 135953 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744316 | 135954 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744317 | 135955 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744318 | 135956 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744319 | 135957 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744320 | 135958 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744321 | 135959 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744322 | 135960 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744323 | 135961 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744324 | 135962 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744325 | 135963 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744326 | 135964 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744327 | 135965 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744328 | 135966 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744329 | 135967 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

A-8

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C4JT744330 | 135968 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744331 | 135969 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744332 | 135970 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744333 | 135971 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744334 | 135972 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744335 | 135973 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744336 | 135974 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744337 | 135975 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744338 | 135976 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744339 | 135977 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744340 | 135978 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744341 | 135979 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744342 | 135980 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744343 | 135981 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744344 | 135982 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744345 | 135983 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744346 | 135984 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744347 | 135985 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744348 | 135986 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744349 | 135987 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744350 | 135988 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744351 | 135989 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744352 | 135990 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744353 | 135991 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744354 | 135992 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744355 | 135993 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744356 | 135994 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744357 | 135995 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744358 | 135996 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744359 | 135997 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744360 | 135998 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744361 | 135999 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744362 | 136000 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744363 | 136001 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744364 | 136002 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744365 | 136003 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744366 | 136004 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CSJT744367 | 136005 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744368 | 136006 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744369 | 136007 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744370 | 136008 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744371 | 136009 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

A-9

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C9JT744372 | 136010 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744373 | 136011 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744374 | 136012 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744375 | 136013 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744376 | 136014 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744377 | 136015 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744378 | 136016 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744379 | 136017 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744380 | 136018 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744381 | 136019 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744382 | 136020 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744383 | 136021 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744384 | 136022 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744385 | 136023 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744386 | 136024 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744387 | 136025 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744388 | 136026 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744389 | 136027 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744390 | 136028 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744391 | 136029 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744392 | 136030 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744393 | 136031 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744394 | 136032 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744395 | 136033 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744396 | 136034 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744397 | 136035 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744398 | 136036 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744399 | 136037 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744400 | 136038 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744401 | 136039 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744402 | 136040 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744403 | 136041 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744404 | 136042 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744405 | 136043 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744406 | 136044 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744407 | 136045 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744408 | 136046 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744409 | 136047 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744410 | 136048 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744411 | 136049 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744412 | 136050 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744413 | 136051 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281CXJT744414 | 136052 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744415 | 136053 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744416 | 136054 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744417 | 136055 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744418 | 136056 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744419 | 136057 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744420 | 136058 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744421 | 136059 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744422 | 136060 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744423 | 136061 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744424 | 136062 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744425 | 136063 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744426 | 136064 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744427 | 136065 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744428 | 136066 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744429 | 136067 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744430 | 136068 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744431 | 136069 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| | | | | | TOTAL: | 9,194,850.56 |

## EXHIBIT B TO SCHEDULE NO. 1

## STIPULATED LOSS VALUE TABLE TO SCHEDULE NO. 1

| Base Monthly Rental Payment Number | SLV Percentage | Base Monthly Rental Payment Number | SLV Percentage | Base Monthly Rental Payment Number | SLV Percentage |
|---|---|---|---|---|---|
| 1 | 104.03% | 21 | 83.20% | 41 | 61.40% |
| 2 | 103.06% | 22 | 82.13% | 42 | 60.28% |
| 3 | 102.04% | 23 | 81.06% | 43 | 59.17% |
| 4 | 101.01% | 24 | 79.98% | 44 | 58.05% |
| 5 | 99.98% | 25 | 78.91% | 45 | 56.93% |
| 6 | 98.95% | 26 | 77.83% | 46 | 55.81% |
| 7 | 97.92% | 27 | 76.75% | 47 | 54.69% |
| 8 | 96.89% | 28 | 75.66% | 48 | 53.57% |
| 9 | 95.85% | 29 | 74.58% | 49 | 52.44% |
| 10 | 94.81% | 30 | 73.49% | 50 | 51.31% |
| 11 | 93.77% | 31 | 72.40% | 51 | 50.18% |
| 12 | 92.72% | 32 | 71.31% | 52 | 49.05% |
| 13 | 91.67% | 33 | 70.22% | 53 | 47.92% |
| 14 | 90.62% | 34 | 69.12% | 54 | 46.78% |
| 15 | 89.57% | 35 | 68.02% | 55 | 45.65% |
| 16 | 88.51% | 36 | 66.92% | 56 | 44.51% |
| 17 | 87.45% | 37 | 65.82% | 57 | 43.39% |
| 18 | 86.39% | 38 | 64.72% | 58 | 42.26% |
| 19 | 85.33% | 39 | 63.61% | 59 | 41.13% |
| 20 | 84.26% | 40 | 62.51% | 60 | 40.00% |

RIDER 1 TO SCHEDULE NO. 1

TRAC Provisions

This Rider No. 1 is attached to and made a part of Schedule No. 1, dated as of October 26, 2017 (the "Schedule") between Peapack Capital Corporation ("Lessor") and YRC Inc. (d/b/a YRC Freight) ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement, dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Lease and the Schedule.

TRAC Purchase Option

(1)     The "TRAC Percentage" is defined as 40% of the Total Equipment Cost. Lessee and Lessor agree that the TRAC Percentage is a reasonable estimate of the fair market value of the Equipment at the end of the Term. Provided that no Event of Default has occurred and is continuing, Lessee may elect, by giving Lessor not less than ninety (90) days prior written notice (which notice shall be irrevocable without Lessor' written consent), to purchase all, but not less than all, of the Equipment described in this Schedule (hereinafter for purposes of this Section only, the "TRAC Equipment") for an amount equal to the TRAC Percentage multiplied by the Total Equipment Cost in which case all TRAC Equipment shall be sold to Lessee on an AS IS, WHERE IS BASIS, without recourse or warranty (except that Lessor has whatever title (if any) to the Equipment that was conveyed to it by the Supplier free of any security interest arising solely by reason of a claim against Lessor that Lessee is not responsible to remove pursuant to the Lease).

(2)     Unless Lessee has previously notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessee shall provide Lessor with written notice, not less than ninety (90) days before the expiration of the Base Term (which notice shall be irrevocable without Lessor's written consent), of Lessee's intent to return the TRAC Equipment (the "End of Term Notice"). If Lessor does not receive the End of Term Notice within the applicable time frame, the Base Term shall be automatically extended (the "Extension Term") without any notice or action on the part of Lessor for three additional months (at the Base Monthly Rental amount) and shall further be extended until the end of the second full month after the month during which the End of Term Notice is received by Lessor. Notwithstanding the foregoing, unless Lessee has previously duly notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessor shall have the right (but not the obligation), at any time during the final month of the Base Term or at any time during the Extension Term to terminate this Agreement, in which event Lessee shall be obligated to return the Equipment at the end of the then-current month (the "Extension Termination Date"). Lessee's failure to return any Item by the Extension Termination Date in the manner and condition required by the Lease, for any reason whatsoever, shall constitute an immediate Event of Default under the Lease notwithstanding the making of any payment or the rendering of other performance hereunder. Upon return of the Equipment at the end of any Extension Term, the terms of subsection (3) below shall be applicable and the TRAC Percentage shall remain unchanged.

(3)     Unless Lessee purchases all of the TRAC Equipment in accordance with the terms hereof, Lessee shall return to Lessor all of the TRAC Equipment, pursuant to the return provisions

of this Lease. Lessee's failure to return the TRAC Equipment as required hereunder shall constitute an Event of Default hereunder and the Base Term shall, at Lessor' election, be extended on a month-to-month basis. Upon return of the TRAC Equipment and provided that no Event of Default has occurred and is continuing, Lessor shall sell or otherwise dispose of the TRAC Equipment in a commercially reasonable manner. If the amount received by Lessor for the TRAC Equipment in such sale or disposition exceeds the sum of the TRAC Percentage multiplied by the Total Equipment Cost, plus the amounts remaining due under this Agreement and all costs of sale, any such excess shall be returned by Lessor to Lessee as a rental adjustment. If the amount received by Lessor for the TRAC Equipment in such sale or disposition (after deduction of any amounts remaining due under this Agreement and all costs of sale) is less than the TRAC Percentage multiplied by The Total Equipment Cost, then any such deficiency shall be paid by Lessee to Lessor as a terminal rental adjustment provided however that in no event shall Lessee be obligated to pay to Lessor, as a terminal rental adjustment under the TRAC provision, any such amount in excess of 27.9703% of the Total Equipment Cost of the TRAC Equipment. Lessee agrees to facilitate any such sale or disposition of the TRAC Equipment and hereby grants to Lessor, its agents or employees, the right to enter Lessee's premises for the purpose of selling or otherwise disposing of the TRAC Equipment. Lessee shall reimburse Lessor for all costs of such sale or disposition, including all taxes, advertising costs or other commissions or expenses charged against the sales price. Lessee shall execute Lessor's approved form TRAC certificate at or before closing.

RIDER 2 TO SCHEDULE NO. 1

Tax Indemnification

This Rider No. 2 is attached to and incorporated into Schedule No. 1 dated as of October 26, 2017 (the "Schedule") between Peapack Capital Corporation (the "Lessor") and YRC Inc. ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement dated August 25, 2017, between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Schedule or the Master Agreement, as applicable.

1.     Lessee represents and warrants that: (a) it believes that it is reasonable to estimate that the useful life of the Equipment exceeds the lease term (including any interim and fixed rental renewal periods) by the greater of one (1) year or twenty (20) percent of such estimated useful life, and that said Equipment will have a value at the end of the lease term, including any fixed rate renewal period, of at least twenty percent (20%) of the original equipment cost of the Equipment, without including in such value any increase or decrease for inflation or deflation during the original lease term; (b) the Equipment is, and will be used by Lessee so as to remain, property eligible for the MACRS Deductions (as defined below); (c) each item of Equipment constitutes "qualified property" pursuant to Section 168(k) of the Internal Revenue Code of 1986, as now or hereafter amended (the "Code"), (d) the Equipment shall be treated as originally placed in service not earlier than the date of the execution and delivery of the Schedule, or in the event the transaction is a sale-leaseback transaction, Lessee shall not have placed in service the Equipment subject to the Schedule at any time prior to three (3) months before the execution and delivery of the Schedule.

2.     If, as a result of any Event of Default, act or omission of Lessee or breach of any representation or warranty of Lessee either (a) Lessor in computing its taxable income or liability for tax, shall lose, or shall not have, or shall lose the right to claim or there shall be disallowed or recaptured for Federal and/or state income tax purposes, in whole or in part, the benefit to Lessor of MACRS Deductions, or (b) Lessor shall become liable for additional tax (including, without limitation, as a result of Lessee having added an attachment or made an alteration to the Equipment, including (without limitation) any such attachment or alteration which would increase the productivity or capability of the Equipment so as to violate the provisions of Rev. Proc. 2001-28, 2001-1 C.B. 1156 (as it may hereafter be modified or superseded) (hereinafter referred to as a "Loss")), then Lessee shall pay Lessor the Tax Indemnification Payment as additional rent and Lessor shall revise the table of Stipulated Loss Values attached to the Schedule as Exhibit B to reflect the Loss.

3.     As used herein: (a) "MACRS Deductions" shall mean the deductions under Section 167 of the Code, determined in accordance with the modified Accelerated Cost Recovery System with respect to the original equipment cost of any Item of the Equipment using the accelerated method set forth in Section 168(b)(1) of the Code; (b) "Lessor" shall be deemed to include the consolidated Federal taxpayer group of which Lessor is a member; and (c) "Tax Indemnification Payment" shall mean such amount as, after consideration of (i) all taxes required to be paid by Lessor in respect of the receipt thereof under the laws of any governmental or taxing authority in the United States, and (ii) the amount of any interest or penalty which may be payable by Lessor

R-2-1

in connection with the Loss, shall be required to cause Lessor's after-tax net return (the "Net Return") to be equal to, but no greater than, the Net Return computed consistently with current tax laws (and with the assumption that Lessor is taxed at the highest marginal Federal and state tax rates) as of the date of the Schedule that would have been available to Lessor had the Loss not occurred.

4.      Lessor shall be responsible for, and shall not be entitled to a Tax Indemnification Payment by Lessee on account of, any Loss arising solely as a direct result of the occurrence of any one or more of the following events: (a) the failure of Lessor to timely and properly claim MACRS Deductions, as applicable, in the tax return of Lessor other than as a result of changes in the Code or applicable regulations unless in the reasonable opinion of Lessor's tax counsel there is no basis for such claim; (b) the failure of Lessor to have sufficient taxable income before application of the MACRS Deductions to offset the full amount of such MACRS Deductions other than as a result of changes in the Code or applicable regulations; (c) any event which by the terms of the Lease requires payment by Lessee of the Stipulated Loss Value if such payment is thereafter actually made to Lessor, to the extent that such payment reimburses Lessor for amounts otherwise payable by Lessee pursuant hereto; or (d) a disqualifying disposition due to sale of any item of the Equipment or the Lease by Lessor prior to a Default.

5.      Lessor promptly shall notify Lessee in writing of such Loss and Lessee shall pay to Lessor the Tax Indemnification Payment within thirty (30) days of such notice. For these purposes, a Loss shall occur upon the earliest of: (a) the happening of any event (such as disposition or change in use of any item of the Equipment) which will cause such Loss; (b) the payment by Lessor to the Internal Revenue Service or state taxing authority of the tax increase (including an increase in estimated taxes) resulting from such Loss; (c) the date on which the Loss is realized by Lessor; or (d) the adjustment of the tax return of Lessor to reflect such Loss.

6.      The obligations of Lessee under this Rider No. 2, which accrue during the term of the Schedule, shall survive the expiration or termination of the Schedule.

3710107.3

R-2-2

### TRAC Certification

This Certification is provided by YRC Inc. (d/b/a YRC Freight) ("**Lessee**") in connection with that certain Schedule No. 1 dated as of October 26, 2017 (the "**Schedule**"), between Lessee and Peapack Capital Corporation ("**Lessor**").

The parties intend and agree that the Schedule constitutes a "qualified motor vehicle operating agreement" within the meaning of Section 7701(h) of the Internal Revenue Code of 1986, as now or hereafter amended, and this Certification is required to be provided pursuant to that Section.

Lessee hereby certifies, under penalty of perjury, that it intends that more than fifty (50) percent of the use of the Equipment (as such term is defined in the Lease) is to be in a trade or business of the Lessee.

Lessee acknowledges that it has been advised that it will not be treated as the owner of the Equipment for Federal income tax purposes.

IN WITNESS WHEREOF, Lessee has caused this Certification to be duly executed as of October 25, 2017.

**YRC INC. (d/b/a YRC Freight)**
**LESSEE**

By: _____

Mark D. Boehmer, Vice President

3714187.1

 **ACORD®** | # CERTIFICATE OF LIABILITY INSURANCE Page 1 of 1 | DATE (MM/DD/YYYY) 10/25/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Willis of Greater Kansas, Inc. c/o 26 Century Blvd. P. O. Box 305191 Nashville, TN 37230-5191 | PHONE (A/C, No, Ext): 877-945-7378 | | FAX (A/C, No): 888-467-2378 |
| | E-MAIL ADDRESS: certificates@willis.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A: Old Republic Insurance Company | | 24147-000 |
| INSURED YRC Inc. dba YRC Freight 10990 Roe Ave Overland Park, KS 66211 | INSURER B: ACE American Insurance Company | | 22667-011 |
| | INSURER C: Travelers Property Casualty Company of Am | | 25674-003 |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

COVERAGES        CERTIFICATE NUMBER: 25765308        REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN. THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X **COMMERCIAL GENERAL LIABILITY** CLAIMS-MADE X OCCUR | Y | | MWML18562 | 3/1/2017 | 3/1/2018 | EACH OCCURRENCE | $ 6,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 6,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY PRO-JECT LOC OTHER: | | | | | | GENERAL AGGREGATE | $ 6,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 6,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** X ANY AUTO OWNED AUTOS ONLY SCHEDULED AUTOS HIRED AUTOS ONLY NON-OWNED AUTOS ONLY | Y | | MWML18562 | 3/1/2017 | 3/1/2018 | COMBINED SINGLE LIMIT (Ea accident) | $ 6,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB OCCUR EXCESS LIAB CLAIMS-MADE DED RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| A B | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | MWC108894 WCU C47870574 | 3/1/2017 3/1/2017 | 3/1/2018 3/1/2018 | X PER STATUTE OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 6,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 6,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 6,000,000 |
| C | Physical Damage | | | KTJ-CMB-6G71047-A-17 | 3/1/2017 | 3/1/2018 | $2,500,000 | Limit |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
RE:    Schedule No. 1

Peapack Capital Corporation is named as Additional Insured with respect to Liability and Loss Payee with respect to Physical Damage arising out of the maintenance, operation or use by the insured of equipment leased/rented from the Certificate Holder so long as the leased/rented equipment is in their care, custody and control.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Peapack Capital Corporation 500 Hills Drive Bedminster, NJ 07921 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *Brian Hoster* |

Coll:5140776 Tpl:2129132 Cert:25765308    © 1988-2015 ACORD CORPORATION. All rights reserved.
ACORD 25 (2016/03)        The ACORD name and logo are registered marks of ACORD

AMENDED AND RESTATED SCHEDULE NO. 1

This Amended and Restated Schedule No. 1 dated October 26, 2022 (the "Schedule") between Peapack Capital Corporation (the "Lessor") and YRC Inc. (d/b/a YRC Freight) (the "Lessee") incorporates by reference the terms and conditions of Master Lease Agreement dated August 25, 2017 between Lessor and, inter alia, YRC Enterprise Services, Inc. (the "Master Agreement") and constitutes a separate lease between Lessor and Lessee. The Schedule and Master Agreement as incorporated herein are hereinafter referred to collectively as the "Lease". All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Agreement. This Schedule (a) continues, as amended hereby, the original Schedule No. 1 between Lessee and Lessor dated October 26, 2017 (as amended, the "Original Agreement"), (b) does not extinguish or otherwise reduce the obligations created by the Original Agreement, (c) does not constitute a novation, and (d) continues in full force and effect the Original Agreement except as expressly set forth in this Schedule.

1. Equipment: See Exhibit A attached hereto.

2. Equipment Delivery Location (or Titling Jurisdiction for Vehicles (defined below) subject to certificates of title): The titling jurisdiction is Indiana.

3. Total Equipment Cost: $9,173,516.80

4. Base Term: Seventy two (72) Months

5. Base Term Commencement Date: October 26, 2017

6. Base Term End Date: October 26, 2023

7. Due Dates of Base Monthly Rental Payments: The 26th day of each month, commencing with November 26, 2017

8. Date of Last Base Monthly Rental Payment: October 26, 2023

9. Base Monthly Rental: $110,839.23 (plus applicable sales/use tax)

10. Base Monthly Rent Paid in Advance or Arrears: Arrears

11. Supplier: American Trailer and Storage, Inc.

12. Equipment Return Location: Anywhere in the continental United States as determined by Lessor.

13. Stipulated Loss Value: See attached Exhibit B to this Schedule. Stipulated Loss Value means, with respect to any Item, the product of the Total Equipment Cost of such Item times the percentage applicable to the due date for the Base Monthly Rental payment for which the Stipulated Loss Value is being calculated, as set forth on Exhibit B attached hereto, except that following the expiration of the Base Term, the applicable percentage shall be the last percentage set forth on Exhibit B attached hereto. For the avoidance of doubt, Stipulated Loss Values are



in addition to any unpaid Base Monthly Rental payments due on or prior to the same day.

14. <u>Special Terms</u>:

   a. <u>Authorization for Electronic Payments</u>:  Lessee agrees to originate base monthly lease payments to Lessor or its assigns via Automated Clearinghouse (ACH) from Lessee's account maintained with its financial institution.

   b. <u>Guaranty</u>.  Notwithstanding anything to the contrary herein, the parties acknowledge and agree that this Lease is guaranteed by Yellow Corporation

   c. <u>Titled Equipment</u>:  The Equipment contains one or more titled vehicles (individually, a "Vehicle" and collectively, the "Vehicles").   Each Vehicle shall be used predominantly in the United States in Lessee's business in accordance with all applicable governmental and insurer titling requirements and limitations. Title to each Vehicle shall at all times remain in Lessor, or Lessor's Assignee(s) as owner or, if permitted under the applicable vehicle titling statutes, as lienholder.  Lessee hereby grants to Lessor an irrevocable power of attorney coupled with an interest in Lessee's name (a "Power of Attorney"), to apply for a certificate of title for any Vehicle that is required to be titled under the laws of any jurisdiction where the Vehicle is or may be used and/or to transfer title thereto upon assignment by Lessor to an Assignee or upon the exercise by Lessor of its remedies upon an Event of Default by Lessee under the Lease.  In furtherance of such grant, Lessee shall provide a written Power of Attorney, in form and substance satisfactory to Lessor, upon Lessor's request.  If Lessee fails to perform or comply with any of its agreements with respect to titling of Vehicles, Lessor may perform or comply with such agreements in its own name or in Lessee's name as attorney-in-fact and the amount of any payments and expenses of Lessor incurred in connection with such performance or compliance, together with interest thereon at the rate of 1% per month from the date Lessor made such payments or incurred such expenses until payment is received by Lessor, or if such rate shall exceed the maximum rate of interest allowed by law, then at such maximum rate, shall be deemed rent payable by Lessee upon demand.

   Notwithstanding anything contrary contained in the Master Agreement, the following provisions shall apply to each Vehicle:

   1) Lessee shall, at Lessee's own expense, register, title and license each Vehicle in the manner prescribed by Lessor as required by the applicable government or regulatory agency(ies).  Lessee will do whatever may be necessary to have a statement of the interest of Lessor or any Assignee of Lessor in any Vehicle noted on any certificate of title relating to any Vehicle and will deliver said certificate to Lessor.  In event Lessor registers, titles and/or licenses any Vehicle, Lessee shall immediately reimburse Lessor for all expenses relating thereto.

   Lessee shall pay or provide for payment of all operating expenses of all Vehicles, including without limitation, gasoline, oil, anti-freeze, other fluids, servicing, repairs, storage, towing and fines.

-2-

2) Lessee shall require any operator of the vehicle to be properly licensed, trained and able to perform the functions necessary for safe operation. Lessee hereby covenants that it shall not permit its employees, representatives or agents to use any Vehicle for illegal purposes, including, without limitation, the illegal transportation of controlled substances, firearms, explosives, or hazardous materials.

3) Lessee shall be responsible for all fees, traffic summonses, penalties and fines that may be imposed due to the use of the Vehicle.

4) Lessee shall provide to Lessor any documentation pertaining to any Vehicle as Lessor may, from time to time, reasonably request. Including but not limited to the location, mileage and condition of any or all Vehicles.

d.  <u>TRAC Rider</u>: The TRAC provisions described on Rider No. 1 attached hereto are hereby made applicable to and incorporated into this Schedule.

e.  <u>Mobile Equipment</u>: Notwithstanding anything to the contrary in the Master Agreement, Lessor acknowledges that the Equipment is mobile and may be moved to additional locations so long as Lessee keeps the Equipment in its sole possession and control, except that Lessee may store any Item of the Equipment at a customer's location for a limited period of time and in the ordinary course of business, and except when any Item of Equipment is undergoing required repairs. Upon Lessor's request, Lessee shall promptly provide Lessor the then current location of the Equipment.

15. <u>Maintenance and Return Conditions for Vehicles</u>: Without limiting the obligations of Lessee under the Lease, Lessee shall, at its expense, do the following:

a.  Lessee shall ensure that all Vehicles and their operations conform to all applicable local, state, and federal laws, health and safety guidelines. Upon return, the Vehicles will be complete and operational with all components as originally supplied and will have passed U. S. Department of Transportation or appropriate regulatory agency requirements for operation.  If applicable, an inspection sticker or certificate will be furnished to Lessor verifying compliance with any regulatory requirements.  Lessee shall satisfy all legal and regulatory conditions necessary for Lessor to sell or lease the Vehicles to a third party. Lessee will keep all licenses and operating certificates required for operation of the Vehicles current during the Lease Term.

b.  Upon return, each Vehicle and its components shall meet all of their applicable manufacturer's specifications for performance under full rated loads.  In addition, each Vehicle must be maintained throughout the Lease Term and returned upon the expiration or termination thereof in accordance with all of the following conditions:

i.  Tires.  All tires shall be matched on each Vehicle by the same type and tread design, original size, and manufacturer, and have a minimum of 12/32 inch of remaining tread depth. All front tires shall be original casings; rear tires may be either casings or recapped casings.  All tires shall be free of flat or bald spots,

- 3 -

cupping, dry rot, cuts and exposed cords.

ii.     General Condition.  The Vehicles must be able to pass Federal Highway Administration inspection. The Vehicles shall be structurally sound with no material structural or mechanical damage, in good overall appearance, clean with no missing or damaged parts, ordinary wear and tear excepted. The Vehicles shall be free of any material rust and corrosion. No glass shall be broken or cracked, no upholstery shall have any cuts or burns and there shall be no physical damage to exterior or interior materials, other than from normal use, that exceeds $500 in the aggregate to repair and no physical damage from accidents. Upon return, all Vehicles shall be completely de-identified, including but not limited to all commercial logos, advertising, graffiti, Lessee insignia and lettering.  The de-identified surfaces shall be repaired and refinished in such a way that the area blends in with the remainder of the item's overall appearance.  Manufacturer's identity plates and markings shall not be removed or obscured.

iii.    Documents and Records.  Written records of scheduled and other maintenance and repair work done shall be kept, dated, and signed by the appropriate authority. A service history or log will be maintained during the Lease Term, in English, and a copy provided to Lessor upon request during the Lease Term, or at the expiration or other termination (by acceleration or otherwise) of the Lease.  All maintenance records, maintenance record jackets, repair jackets, repair orders, license plates, registration certificates, and all other similar documents, in their entirety, must be returned to Lessor.

iv.     Brakes.  Brake drums and linings shall not be cracked and shall not exceed manufacturer's recommended wear limits.  Brake linings shall have a minimum of 3/8 inch of remaining wear on each lining.

v.      Maintenance.   Lessee shall follow the manufacturer's recommended maintenance and service schedule, including, without limitation, manufacturer's schedule of engine oil change and sampling, to the extent required to validate any warranty, at Lessee's sole cost and expense.  Any maintenance or repair work shall comply with the guidelines and procedures as specified by the manufacturers of the Vehicles or each component of the Vehicles.  Lessee will use only original manufacturer's approved replacement parts and components in the performance of any maintenance and repair of the Vehicles.  Lessee will at all times maintain the Vehicles in good operational condition and appearance, and shall not discriminate in such maintenance between owned or leased Vehicles.

16. Tax Indemnity Rider.  The income tax indemnity described on Rider No. 2 attached hereto is hereby incorporated into this Schedule.

All other terms and conditions of the Master Agreement shall remain in full force and effect without change.

The undersigned Lessee acknowledges that this Schedule authorizes the Lessor or its agents or assignee(s) to sign, execute and file on its behalf any and all necessary documents, including UCC financing statements and other filings and recordings, to make public this lease transaction. The parties intend this transaction to be a true lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this Schedule is not a true lease but is in the nature of a sale, consignment, or other transaction, the parties intend and the Lessee hereby grants a continuing security interest in the Equipment from the date of this Schedule to secure the payment of all Lessee's indebtedness to Lessor.

IN THE EVENT OF ANY CONFLICT BETWEEN THE PROVISIONS OF THE MASTER AGREEMENT AND THIS SCHEDULE, THIS SCHEDULE SHALL PREVAIL.

THIS SCHEDULE TOGETHER WITH THE MASTER AGREEMENT, ANY ADDITIONAL PROVISION(S) REFERRED TO IN HEREIN OR THEREIN, AND ANY ADDENDA, ANNEXES, EXHIBITS OR RIDERS EXECUTED BY LESSOR AND LESSEE WHICH REFERENCES THIS SCHEDULE CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT.

*[Remainder of this page intentionally left blank, signatures appear on next page.]*

LESSOR: Peapack Capital Corporation

By: _____

Name: _____Richard Johnston_____
          Senior Vice President
Title: _____Peapack Capital Corporation_____

LESSEE:  YRC Inc. (d/b/a  YRC Freight)

By: _____

Name: Anthony P. Carreño

Title:  Senior Vice President, Treasury

This original executed counterpart of this Schedule is hereby marked as "Original" and constitutes the chattel paper of this Schedule.  Any executed counterparts of this Schedule that do not include the immediately preceding sentence do not constitute chattel paper.

*Signature page to Amended and Restated Schedule No. 1*

# INDIANA CERTIFICATE OF TITLE



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | VC2280151-FJPRW | SE | 2018 | 3H3V281C4JT744280 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 08/29/17 | 10/17/17 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213



**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**

**MAILING ADDRESS**    000375

PEAPACK CAPITAL CORPORATION
500 SHORT HILLS DR
BEDMINSTER NJ 07921

**ADDITIONAL OWNER(S)**

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITAL CORPORATION
500 SHORT HILLS DR
BEDMINSTER NJ 07921

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner
State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G2591648

**TITLE NUMBER**
17504203000049

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

# EXHIBIT C

## SCHEDULE NO. 2

This Schedule No. 2 dated November 21. 2017 (the "Schedule") between Peapack Capital Corporation (the "Lessor") and YRC Inc. (d/b/a YRC Freight) (the "Lessee") incorporates by reference the terms and conditions of Master Lease Agreement dated August 25. 2017 between Lessor and YRC Enterprise Services. Inc. (the "Master Agreement") and constitutes a separate lease between Lessor and Lessee. The Schedule and Master Agreement as incorporated herein are hereinafter referred to collectively as the "Lease". All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Agreement.

1. Equipment: See Exhibit A attached hereto.

2. Equipment Delivery Location (or Titling Jurisdiction for Vehicles (defined below) subject to certificates of title): The titling jurisdiction is Indiana.

3. Total Equipment Cost: $9.173.516.80

4. Base Term: Sixty (60) Months

5. Base Term Commencement Date: November 21. 2017

6. Base Term End Date: November 21. 2022

7. Due Dates of Base Monthly Rental Payments: The 21st day of each month. commencing with December 21. 2017

8. Date of Last Base Monthly Rental Payment: November 21. 2022

9. Base Monthly Rental: $110.968.84 (plus applicable sales/use tax)

10. Base Monthly Rent Paid in Advance or Arrears: Arrears

11. Supplier: American Trailer and Storage. Inc.

12. Equipment Return Location: Anywhere in the continental United States as determined by Lessor.

13. Stipulated Loss Value: See attached Exhibit B to this Schedule. Stipulated Loss Value means. with respect to any Item, the product of the Total Equipment Cost of such Item times the percentage applicable to the due date for the Base Monthly Rental payment for which the Stipulated Loss Value is being calculated. as set forth on Exhibit B attached hereto. except that following the expiration of the Base Term. the applicable percentage shall be the last percentage set forth on Exhibit B attached hereto. For the avoidance of doubt. Stipulated Loss Values are in addition to any unpaid Base Monthly Rental payments due on or prior to the same day.

14. Special Terms:

    a. Guaranty. Notwithstanding anything to the contrary herein. the parties acknowledge and agree that this Lease is guaranteed by YRC Worldwide Inc.

b. <u>Titled Equipment</u>: The Equipment contains one or more titled vehicles (individually, a "Vehicle" and collectively, the "Vehicles"). Each Vehicle shall be used predominantly in the United States in Lessee's business in accordance with all applicable governmental and insurer titling requirements and limitations. Title to each Vehicle shall at all times remain in Lessor, or Lessor's Assignee(s) as owner or, if permitted under the applicable vehicle titling statutes, as lienholder. Lessee hereby grants to Lessor an irrevocable power of attorney coupled with an interest in Lessee's name (a "Power of Attorney"), to apply for a certificate of title for any Vehicle that is required to be titled under the laws of any jurisdiction where the Vehicle is or may be used and/or to transfer title thereto upon assignment by Lessor to an Assignee or upon the exercise by Lessor of its remedies upon an Event of Default by Lessee under the Lease. In furtherance of such grant, Lessee shall provide a written Power of Attorney, in form and substance satisfactory to Lessor, upon Lessor's request. If Lessee fails to perform or comply with any of its agreements with respect to titling of Vehicles, Lessor may perform or comply with such agreements in its own name or in Lessee's name as attorney-in-fact and the amount of any payments and expenses of Lessor incurred in connection with such performance or compliance, together with interest thereon at the rate of 1% per month from the date Lessor made such payments or incurred such expenses until payment is received by Lessor, or if such rate shall exceed the maximum rate of interest allowed by law, then at such maximum rate, shall be deemed rent payable by Lessee upon demand.

Notwithstanding anything contrary contained in the Master Agreement, the following provisions shall apply to each Vehicle:

1) Lessee shall, at Lessee's own expense, register, title and license each Vehicle in the manner prescribed by Lessor as required by the applicable government or regulatory agency(ies). Lessee will do whatever may be necessary to have a statement of the interest of Lessor or any Assignee of Lessor in any Vehicle noted on any certificate of title relating to any Vehicle and will deliver said certificate to Lessor. In event Lessor registers, titles and/or licenses any Vehicle, Lessee shall immediately reimburse Lessor for all expenses relating thereto.

Lessee shall pay or provide for payment of all operating expenses of all Vehicles, including without limitation, gasoline, oil, anti-freeze, other fluids, servicing, repairs, storage, towing and fines.

2) Lessee shall require any operator of the vehicle to be properly licensed, trained and able to perform the functions necessary for safe operation. Lessee hereby covenants that it shall not permit its employees, representatives or agents to use any Vehicle for illegal purposes, including, without limitation, the illegal transportation of controlled substances, firearms, explosives, or hazardous materials.

3) Lessee shall be responsible for all fees, traffic summonses, penalties and fines that may be imposed due to the use of the Vehicle.

4) Lessee shall provide to Lessor any documentation pertaining to any Vehicle as Lessor may, from time to time, reasonably request, including but not limited to the location, mileage and condition of any or all Vehicles.

c. TRAC Rider: The TRAC provisions described on Rider No. 1 attached hereto are hereby made applicable to and incorporated into this Schedule.

d. Mobile Equipment: Notwithstanding anything to the contrary in the Master Agreement, Lessor acknowledges that the Equipment is mobile and may be moved to additional locations so long as Lessee keeps the Equipment in its sole possession and control, except that Lessee may store any Item of the Equipment at a customer's location for a limited period of time and in the ordinary course of business, and except when any Item of Equipment is undergoing required repairs. Upon Lessor's request, Lessee shall promptly provide Lessor the then current location of the Equipment.

15. Maintenance and Return Conditions for Vehicles: Without limiting the obligations of Lessee under the Lease, Lessee shall, at its expense, do the following:

a. Lessee shall ensure that all Vehicles and their operations conform to all applicable local, state, and federal laws, health and safety guidelines. Upon return, the Vehicles will be complete and operational with all components as originally supplied and will have passed U. S. Department of Transportation or appropriate regulatory agency requirements for operation. If applicable, an inspection sticker or certificate will be furnished to Lessor verifying compliance with any regulatory requirements. Lessee shall satisfy all legal and regulatory conditions necessary for Lessor to sell or lease the Vehicles to a third party. Lessee will keep all licenses and operating certificates required for operation of the Vehicles current during the Lease Term.

b. Upon return, each Vehicle and its components shall meet all of their applicable manufacturer's specifications for performance under full rated loads. In addition, each Vehicle must be maintained throughout the Lease Term and returned upon the expiration or termination thereof in accordance with all of the following conditions:

   i. Tires. All tires shall be matched on each Vehicle by the same type and tread design, original size, and manufacturer, and have a minimum of 12/32 inch of remaining tread depth. All front tires shall be original casings; rear tires may be either casings or recapped casings. All tires shall be free of flat or bald spots, cupping, dry rot, cuts and exposed cords.

   ii. General Condition. The Vehicles must be able to pass Federal Highway Administration inspection. The Vehicles shall be structurally sound with no material structural or mechanical damage, in good overall appearance, clean with no missing or damaged parts, ordinary wear and tear excepted. The Vehicles shall be free of any material rust and corrosion. No glass shall be broken or cracked, no upholstery shall have any cuts or burns and there shall be no physical damage to exterior or interior materials, other than from normal use, that exceeds $500 in

the aggregate to repair and no physical damage from accidents. Upon return, all Vehicles shall be completely de-identified, including but not limited to all commercial logos, advertising, graffiti, Lessee insignia and lettering. The de-identified surfaces shall be repaired and refinished in such a way that the area blends in with the remainder of the item's overall appearance. Manufacturer's identity plates and markings shall not be removed or obscured.

iii. Documents and Records. Written records of scheduled and other maintenance and repair work done shall be kept, dated, and signed by the appropriate authority. A service history or log will be maintained during the Lease Term, in English, and a copy provided to Lessor upon request during the Lease Term, or at the expiration or other termination (by acceleration or otherwise) of the Lease. All maintenance records, maintenance record jackets, repair jackets, repair orders, license plates, registration certificates, and all other similar documents, in their entirety, must be returned to Lessor.

iv. Brakes. Brake drums and linings shall not be cracked and shall not exceed manufacturer's recommended wear limits. Brake linings shall have a minimum of 3/8 inch of remaining wear on each lining.

v. Maintenance.   Lessee shall follow the manufacturer's recommended maintenance and service schedule, including, without limitation, manufacturer's schedule of engine oil change and sampling, to the extent required to validate any warranty, at Lessee's sole cost and expense. Any maintenance or repair work shall comply with the guidelines and procedures as specified by the manufacturers of the Vehicles or each component of the Vehicles. Lessee will use only original manufacturer's approved replacement parts and components in the performance of any maintenance and repair of the Vehicles. Lessee will at all times maintain the Vehicles in good operational condition and appearance, and shall not discriminate in such maintenance between owned or leased Vehicles.

16. Tax Indemnity Rider. The income tax indemnity described on Rider No. 2 attached hereto is hereby incorporated into this Schedule.

All other terms and conditions of the Master Agreement shall remain in full force and effect without change.

The undersigned Lessee acknowledges that this Schedule authorizes the Lessor or its agents or assignee(s) to sign, execute and file on its behalf any and all necessary documents, including UCC financing statements and other filings and recordings, to make public this lease transaction. The parties intend this transaction to be a true lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this Schedule is not a true lease but is in the nature of a sale, consignment, or other transaction, the parties intend and the Lessee hereby grants a continuing security interest in the Equipment from the date of this Schedule to secure the payment of all Lessee's indebtedness to Lessor.

- 4 -

IN THE EVENT OF ANY CONFLICT BETWEEN THE PROVISIONS OF THE MASTER AGREEMENT AND THIS SCHEDULE, THIS SCHEDULE SHALL PREVAIL.

THIS SCHEDULE TOGETHER WITH THE MASTER AGREEMENT, ANY ADDITIONAL PROVISION(S) REFERRED TO IN HEREIN OR THEREIN, AND ANY ADDENDA, ANNEXES, EXHIBITS OR RIDERS EXECUTED BY LESSOR AND LESSEE WHICH REFERENCES THIS SCHEDULE CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT.

*[Remainder of this page intentionally left blank, signatures appear on next page.]*

LESSOR: Peapack Capital Corporation

By: _____

Name: _____

Title: _____

LESSEE: YRC Inc. (d/b/a YRC Freight)

By: _____

Name: Mark D. Boehmer

Title: Vice President

This original executed counterpart of this Schedule is hereby marked as "Original" and constitutes the chattel paper of this Schedule. Any executed counterparts of this Schedule that do not include the immediately preceding sentence do not constitute chattel paper.

*Signature page to Schedule No. 2*

## EXHIBIT A TO SCHEDULE NO. 2

## DESCRIPTION OF EQUIPMENT SUBJECT TO SCHEDULE NO. 2

430 2018 Hyundai Translead 28' HT Composite Dry Van Trailers, more particularly described as follows:

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|------|-----------|----------------|------------|-------------|-----|-------|
| 3H3V281C1JT744432 | 136500 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744433 | 136501 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744434 | 136502 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744435 | 136503 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744436 | 136504 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744437 | 136505 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744438 | 136506 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744439 | 136507 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744440 | 136508 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744441 | 136509 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744442 | 136510 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744443 | 136511 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744444 | 136512 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744445 | 136513 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744446 | 136514 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744447 | 136515 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744448 | 136516 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744449 | 136517 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744450 | 136518 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744451 | 136519 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744452 | 136520 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744453 | 136521 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744454 | 136522 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744455 | 136523 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744456 | 136524 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744457 | 136525 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744458 | 136526 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744459 | 136527 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744460 | 136528 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744461 | 136529 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744462 | 136530 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744463 | 136531 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744464 | 136532 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744465 | 136533 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744466 | 136534 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C9JT744467 | 136535 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744468 | 136536 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744469 | 136537 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744470 | 136538 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744471 | 136539 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744472 | 136540 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744473 | 136541 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744474 | 136542 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744475 | 136543 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744476 | 136544 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744477 | 136545 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744478 | 136546 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744479 | 136547 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744480 | 136548 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744481 | 136549 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744482 | 136550 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744483 | 136551 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744484 | 136552 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744485 | 136553 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744486 | 136554 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744487 | 136555 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744488 | 136556 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744489 | 136557 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744490 | 136558 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744491 | 136559 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744492 | 136560 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744493 | 136561 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744494 | 136562 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744495 | 136563 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744496 | 136564 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744497 | 136565 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744498 | 136566 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744499 | 136567 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744500 | 136568 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744501 | 136569 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744502 | 136570 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744503 | 136571 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744504 | 136572 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744505 | 136573 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744506 | 136574 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744507 | 136575 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744508 | 136576 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

A-2

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281CXJT744509 | 136577 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744510 | 136578 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744511 | 136579 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744512 | 136580 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744513 | 136581 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744514 | 136582 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744515 | 136583 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744516 | 136584 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744517 | 136585 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744518 | 136586 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744519 | 136587 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744520 | 136588 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744521 | 136589 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744522 | 136590 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744523 | 136591 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744524 | 136592 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744525 | 136593 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744526 | 136594 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744527 | 136595 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744528 | 136596 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744529 | 136597 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744530 | 136598 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744531 | 136599 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744532 | 136600 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744533 | 136601 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744534 | 136602 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744535 | 136603 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744536 | 136604 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744537 | 136605 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744538 | 136606 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744539 | 136607 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744540 | 136608 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744541 | 136609 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744542 | 136610 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744543 | 136611 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744544 | 136612 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744545 | 136613 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744546 | 136614 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744547 | 136615 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744548 | 136616 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744549 | 136617 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744550 | 136618 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C9JT744551 | 136619 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744552 | 136620 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744553 | 136621 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744554 | 136622 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744555 | 136623 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744556 | 136624 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744557 | 136625 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744558 | 136626 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744559 | 136627 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744560 | 136628 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744561 | 136629 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744562 | 136630 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744563 | 136631 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744564 | 136632 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744565 | 136633 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744566 | 136634 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744567 | 136635 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744568 | 136636 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744569 | 136637 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744570 | 136638 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744571 | 136639 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744572 | 136640 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744573 | 136641 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744574 | 136642 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744575 | 136643 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744576 | 136644 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744577 | 136645 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744578 | 136646 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744579 | 136647 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744580 | 136648 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744581 | 136649 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744582 | 136650 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744583 | 136651 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744584 | 136652 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744585 | 136653 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744586 | 136654 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744587 | 136655 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744588 | 136656 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744589 | 136657 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744590 | 136658 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744591 | 136659 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744592 | 136660 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C3JT744593 | 136661 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744594 | 136662 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744595 | 136663 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744596 | 136664 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744597 | 136665 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744598 | 136666 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744599 | 136667 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744600 | 136668 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744601 | 136669 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744602 | 136670 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744603 | 136671 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744604 | 136672 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744605 | 136673 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744606 | 136674 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744607 | 136675 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744608 | 136676 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744609 | 136677 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744610 | 136678 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744611 | 136679 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744612 | 136680 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744613 | 136681 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744614 | 136682 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744615 | 136683 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744616 | 136684 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744617 | 136685 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744618 | 136686 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744619 | 136687 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744620 | 136688 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744621 | 136689 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744622 | 136690 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744623 | 136691 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744624 | 136692 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744625 | 136693 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744626 | 136694 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744627 | 136695 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744628 | 136696 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744629 | 136697 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744630 | 136698 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744631 | 136699 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744632 | 136700 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744633 | 136701 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744634 | 136702 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C4JT744635 | 136703 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744636 | 136704 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744637 | 136705 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744638 | 136706 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744639 | 136707 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744640 | 136708 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744641 | 136709 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744642 | 136710 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744643 | 136711 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744644 | 136712 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744645 | 136713 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744646 | 136714 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744647 | 136715 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744648 | 136716 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744649 | 136717 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744650 | 136718 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744651 | 136719 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744652 | 136720 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744653 | 136721 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744654 | 136722 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744655 | 136723 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744656 | 136724 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744657 | 136725 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744658 | 136726 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744659 | 136727 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744660 | 136728 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744661 | 136729 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744662 | 136730 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744663 | 136731 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744664 | 136732 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744665 | 136733 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744666 | 136734 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744667 | 136735 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744668 | 136736 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744669 | 136737 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744670 | 136738 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744671 | 136739 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744672 | 136740 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744673 | 136741 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744674 | 136742 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744675 | 136743 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744676 | 136744 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C9JT744677 | 136745 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744678 | 136746 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744679 | 136747 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744680 | 136748 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744681 | 136749 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744682 | 136750 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744683 | 136751 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744684 | 136752 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744685 | 136753 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744686 | 136754 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744687 | 136755 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744688 | 136756 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744689 | 136757 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744690 | 136758 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744691 | 136759 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744692 | 136760 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744693 | 136761 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744694 | 136762 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744695 | 136763 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744696 | 136764 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744697 | 136765 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744698 | 136766 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744699 | 136767 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744700 | 136768 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744701 | 136769 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744702 | 136770 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744703 | 136771 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744704 | 136772 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744705 | 136773 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744706 | 136774 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744707 | 136775 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744708 | 136776 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744709 | 136777 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744710 | 136778 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744711 | 136779 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744712 | 136780 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744713 | 136781 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744714 | 136782 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744715 | 136783 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744716 | 136784 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744717 | 136785 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744718 | 136786 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281CXJT744719 | 136787 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744720 | 136788 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744721 | 136789 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744722 | 136790 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744723 | 136791 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744724 | 136792 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744725 | 136793 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744726 | 136794 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744727 | 136795 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744728 | 136796 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744729 | 136797 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744730 | 136798 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744731 | 136799 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744732 | 136800 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744733 | 136801 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744734 | 136802 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744735 | 136803 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744736 | 136804 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744737 | 136805 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744738 | 136806 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744739 | 136807 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744740 | 136808 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744741 | 136809 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744742 | 136810 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744743 | 136811 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744744 | 136812 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744745 | 136813 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744746 | 136814 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744747 | 136815 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744748 | 136816 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744749 | 136817 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744750 | 136818 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744751 | 136819 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744752 | 136820 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744753 | 136821 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744754 | 136822 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744755 | 136823 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744756 | 136824 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744757 | 136825 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744758 | 136826 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744759 | 136827 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744760 | 136828 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|------|-----------|----------------|------------|-------------|-----|-------|
| 3H3V281C9JT744761 | 136829 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744762 | 136830 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744763 | 136831 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744764 | 136832 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744765 | 136833 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744766 | 136834 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744767 | 136835 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744768 | 136836 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744769 | 136837 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744770 | 136838 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744771 | 136839 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744772 | 136840 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744773 | 136841 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744774 | 136842 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744775 | 136843 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744776 | 136844 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744777 | 136845 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744778 | 136846 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744779 | 136847 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744780 | 136848 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744781 | 136849 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744782 | 136850 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744783 | 136851 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744784 | 136852 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744785 | 136853 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744786 | 136854 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744787 | 136855 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744788 | 136856 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744789 | 136857 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744790 | 136858 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744791 | 136859 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744792 | 136860 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744793 | 136861 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744794 | 136862 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744795 | 136863 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744796 | 136864 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744797 | 136865 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744798 | 136866 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744799 | 136867 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744800 | 136868 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744801 | 136869 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744802 | 136870 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|------|-----------|----------------|------------|-------------|-----|-------|
| 3H3V281CXJT744803 | 136871 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744804 | 136872 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744805 | 136873 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744806 | 136874 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744807 | 136875 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744808 | 136876 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744809 | 136877 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744810 | 136878 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744811 | 136879 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744812 | 136880 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744813 | 136881 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744814 | 136882 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744815 | 136883 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744816 | 136884 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744817 | 136885 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744818 | 136886 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744819 | 136887 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744820 | 136888 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744821 | 136889 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744822 | 136890 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744823 | 136891 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744824 | 136892 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744825 | 136893 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744826 | 136894 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744827 | 136895 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744828 | 136896 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744829 | 136897 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744830 | 136898 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744831 | 136899 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744832 | 136900 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744833 | 136901 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744834 | 136902 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744835 | 136903 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744836 | 136904 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744837 | 136905 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744838 | 136906 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744839 | 136907 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744840 | 136908 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744841 | 136909 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744842 | 136910 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744843 | 136911 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744844 | 136912 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| VIN: | YRC Unit# | Purchase Price | Delivery I | Delivery II | FET | Total |
|------|-----------|----------------|------------|-------------|-----|-------|
| 3H3V281C4JT744845 | 136913 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744846 | 136914 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744847 | 136915 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744848 | 136916 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744849 | 136917 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744850 | 136918 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744851 | 136919 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744852 | 136920 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744853 | 136921 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744854 | 136922 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744855 | 136923 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744856 | 136924 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744857 | 136925 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744858 | 136926 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744859 | 136927 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744860 | 136928 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744861 | 136929 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| | | | | | TOTAL | 9,173,516.80 |

EXHIBIT B TO SCHEDULE NO. 2

STIPULATED LOSS VALUE TABLE TO SCHEDULE NO. 2

| Base Monthly Rental Payment Number | SLV Percentage | Base Monthly Rental Payment Number | SLV Percentage | Base Monthly Rental Payment Number | SLV Percentage |
|---|---|---|---|---|---|
| 1 | 104.03% | 21 | 83.20% | 41 | 61.40% |
| 2 | 103.06% | 22 | 82.13% | 42 | 60.28% |
| 3 | 102.04% | 23 | 81.06% | 43 | 59.17% |
| 4 | 101.01% | 24 | 79.98% | 44 | 58.05% |
| 5 | 99.98% | 25 | 78.91% | 45 | 56.93% |
| 6 | 98.95% | 26 | 77.83% | 46 | 55.81% |
| 7 | 97.92% | 27 | 76.75% | 47 | 54.69% |
| 8 | 96.89% | 28 | 75.66% | 48 | 53.57% |
| 9 | 95.85% | 29 | 74.58% | 49 | 52.44% |
| 10 | 94.81% | 30 | 73.49% | 50 | 51.31% |
| 11 | 93.77% | 31 | 72.40% | 51 | 50.18% |
| 12 | 92.72% | 32 | 71.31% | 52 | 49.05% |
| 13 | 91.67% | 33 | 70.22% | 53 | 47.92% |
| 14 | 90.62% | 34 | 69.12% | 54 | 46.78% |
| 15 | 89.57% | 35 | 68.02% | 55 | 45.65% |
| 16 | 88.51% | 36 | 66.92% | 56 | 44.51% |
| 17 | 87.45% | 37 | 65.82% | 57 | 43.39% |
| 18 | 86.39% | 38 | 64.72% | 58 | 42.26% |
| 19 | 85.33% | 39 | 63.61% | 59 | 41.13% |
| 20 | 84.26% | 40 | 62.51% | 60 | 40.00% |

RIDER 1 TO SCHEDULE NO. 2

TRAC Provisions

This Rider No. 1 is attached to and made a part of Schedule No. 2, dated as of November 21, 2017 (the "Schedule") between Peapack Capital Corporation ("Lessor") and YRC Inc. ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement, dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Lease and the Schedule.

TRAC Purchase Option

(1)     The "TRAC Percentage" is defined as 40% of the Total Equipment Cost. Lessee and Lessor agree that the TRAC Percentage is a reasonable estimate of the fair market value of the Equipment at the end of the Term. Provided that no Event of Default has occurred and is continuing, Lessee may elect, by giving Lessor not less than ninety (90) days prior written notice (which notice shall be irrevocable without Lessor's written consent), to purchase all, but not less than all, of the Equipment described in this Schedule (hereinafter for purposes of this Section only, the "TRAC Equipment") for an amount equal to the TRAC Percentage multiplied by the Total Equipment Cost in which case all TRAC Equipment shall be sold to Lessee on an AS IS, WHERE IS BASIS, without recourse or warranty (except that Lessor has whatever title (if any) to the Equipment that was conveyed to it by the Supplier free of any security interest arising solely by reason of a claim against Lessor that Lessee is not responsible to remove pursuant to the Lease).

(2)     Unless Lessee has previously notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessee shall provide Lessor with written notice, not less than ninety (90) days before the expiration of the Base Term (which notice shall be irrevocable without Lessor's written consent), of Lessee's intent to return the TRAC Equipment (the "End of Term Notice"). If Lessor does not receive the End of Term Notice within the applicable time frame, the Base Term shall be automatically extended (the "Extension Term") without any notice or action on the part of Lessor for three additional months (at the Base Monthly Rental amount) and shall further be extended until the end of the second full month after the month during which the End of Term Notice is received by Lessor. Notwithstanding the foregoing, unless Lessee has previously duly notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessor shall have the right (but not the obligation), at any time during the final month of the Base Term or at any time during the Extension Term to terminate this Agreement, in which event Lessee shall be obligated to return the Equipment at the end of the then-current month (the "Extension Termination Date"). Lessee's failure to return any Item by the Extension Termination Date in the manner and condition required by the Lease, for any reason whatsoever, shall constitute an immediate Event of Default under the Lease notwithstanding the making of any payment or the rendering of other performance hereunder. Upon return of the Equipment at the end of any Extension Term, the terms of subsection (3) below shall be applicable and the TRAC Percentage shall remain unchanged.

(3)     Unless Lessee purchases all of the TRAC Equipment in accordance with the terms hereof, Lessee shall return to Lessor all of the TRAC Equipment, pursuant to the return provisions

of this Lease. Lessee's failure to return the TRAC Equipment as required hereunder shall constitute an Event of Default hereunder and the Base Term shall, at Lessor' election, be extended on a month-to-month basis. Upon return of the TRAC Equipment and provided that no Event of Default has occurred and is continuing, Lessor shall sell or otherwise dispose of the TRAC Equipment in a commercially reasonable manner. If the amount received by Lessor for the TRAC Equipment in such sale or disposition exceeds the sum of the TRAC Percentage multiplied by the Total Equipment Cost, plus the amounts remaining due under this Agreement and all costs of sale, any such excess shall be returned by Lessor to Lessee as a rental adjustment. If the amount received by Lessor for the TRAC Equipment in such sale or disposition (after deduction of any amounts remaining due under this Agreement and all costs of sale) is less than the TRAC Percentage multiplied by The Total Equipment Cost, then any such deficiency shall be paid by Lessee to Lessor as a terminal rental adjustment provided however that in no event shall Lessee be obligated to pay to Lessor, as a terminal rental adjustment under the TRAC provision, any such amount in excess of 27.9564% of the Total Equipment Cost of the TRAC Equipment. Lessee agrees to facilitate any such sale or disposition of the TRAC Equipment and hereby grants to Lessor, its agents or employees, the right to enter Lessee's premises for the purpose of selling or otherwise disposing of the TRAC Equipment. Lessee shall reimburse Lessor for all costs of such sale or disposition, including all taxes. advertising costs or other commissions or expenses charged against the sales price. Lessee shall execute Lessor's approved form TRAC certificate at or before closing.

RIDER 2 TO SCHEDULE NO. 2

Tax Indemnification

This Rider No. 2 is attached to and incorporated into Schedule No. 2 dated as of November 21, 2017 (the "Schedule") between Peapack Capital Corporation (the "Lessor") and YRC Inc. ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement dated August 25, 2017, between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Schedule or the Master Agreement, as applicable.

1.      Lessee represents and warrants that: (a) it believes that it is reasonable to estimate that the useful life of the Equipment exceeds the lease term (including any interim and fixed rental renewal periods) by the greater of one (1) year or twenty (20) percent of such estimated useful life, and that said Equipment will have a value at the end of the lease term, including any fixed rate renewal period, of at least twenty percent (20%) of the original equipment cost of the Equipment, without including in such value any increase or decrease for inflation or deflation during the original lease term; (b) the Equipment is, and will be used by Lessee so as to remain, property eligible for the MACRS Deductions (as defined below); (c) each item of Equipment constitutes "qualified property" pursuant to Section 168(k) of the Internal Revenue Code of 1986, as now or hereafter amended (the "Code"), (d) the Equipment shall be treated as originally placed in service not earlier than the date of the execution and delivery of the Schedule, or in the event the transaction is a sale-leaseback transaction, Lessee shall not have placed in service the Equipment subject to the Schedule at any time prior to three (3) months before the execution and delivery of the Schedule.

2.      If, as a result of any Event of Default, act or omission of Lessee or breach of any representation or warranty of Lessee either (a) Lessor in computing its taxable income or liability for tax, shall lose, or shall not have, or shall lose the right to claim or there shall be disallowed or recaptured for Federal and/or state income tax purposes, in whole or in part, the benefit to Lessor of MACRS Deductions, or (b) Lessor shall become liable for additional tax (including, without limitation, as a result of Lessee having added an attachment or made an alteration to the Equipment, including (without limitation) any such attachment or alteration which would increase the productivity or capability of the Equipment so as to violate the provisions of Rev. Proc. 2001-28, 2001-1 C.B. 1156 (as it may hereafter be modified or superseded) (hereinafter referred to as a "Loss")), then Lessee shall pay Lessor the Tax Indemnification Payment as additional rent and Lessor shall revise the table of Stipulated Loss Values attached to the Schedule as Exhibit B to reflect the Loss.

3.      As used herein: (a) "MACRS Deductions" shall mean the deductions under Section 167 of the Code, determined in accordance with the modified Accelerated Cost Recovery System with respect to the original equipment cost of any Item of the Equipment using the accelerated method set forth in Section 168(b)(1) of the Code; (b) "Lessor" shall be deemed to include the consolidated Federal taxpayer group of which Lessor is a member; and (c) "Tax Indemnification Payment" shall mean such amount as, after consideration of (i) all taxes required to be paid by Lessor in respect of the receipt thereof under the laws of any governmental or taxing authority in the United States, and (ii) the amount of any interest or penalty which may be payable by Lessor

in connection with the Loss, shall be required to cause Lessor's after-tax net return (the "Net Return") to be equal to, but no greater than, the Net Return computed consistently with current tax laws (and with the assumption that Lessor is taxed at the highest marginal Federal and state tax rates) as of the date of the Schedule that would have been available to Lessor had the Loss not occurred.

  4. Lessor shall be responsible for, and shall not be entitled to a Tax Indemnification Payment by Lessee on account of, any Loss arising solely as a direct result of the occurrence of any one or more of the following events: (a) the failure of Lessor to timely and properly claim MACRS Deductions, as applicable, in the tax return of Lessor other than as a result of changes in the Code or applicable regulations unless in the reasonable opinion of Lessor's tax counsel there is no basis for such claim; (b) the failure of Lessor to have sufficient taxable income before application of the MACRS Deductions to offset the full amount of such MACRS Deductions other than as a result of changes in the Code or applicable regulations; (c) any event which by the terms of the Lease requires payment by Lessee of the Stipulated Loss Value if such payment is thereafter actually made to Lessor, to the extent that such payment reimburses Lessor for amounts otherwise payable by Lessee pursuant hereto; or (d) a disqualifying disposition due to sale of any item of the Equipment or the Lease by Lessor prior to a Default.

  5. Lessor promptly shall notify Lessee in writing of such Loss and Lessee shall pay to Lessor the Tax Indemnification Payment within thirty (30) days of such notice. For these purposes, a Loss shall occur upon the earliest of: (a) the happening of any event (such as disposition or change in use of any item of the Equipment) which will cause such Loss; (b) the payment by Lessor to the Internal Revenue Service or state taxing authority of the tax increase (including an increase in estimated taxes) resulting from such Loss; (c) the date on which the Loss is realized by Lessor; or (d) the adjustment of the tax return of Lessor to reflect such Loss.

  6. The obligations of Lessee under this Rider No. 2, which accrue during the term of the Schedule, shall survive the expiration or termination of the Schedule.

3733793.1

TRAC Certification

This Certification is provided by YRC Inc. ("**Lessee**") in connection with that certain Schedule No. 2 dated as of November 21, 2017 (the "**Schedule**"), between Lessee and Peapack Capital Corporation ("**Lessor**").

The parties intend and agree that the Schedule constitutes a "qualified motor vehicle operating agreement" within the meaning of Section 7701(h) of the Internal Revenue Code of 1986, as now or hereafter amended, and this Certification is required to be provided pursuant to that Section.

Lessee hereby certifies, under penalty of perjury, that it intends that more than fifty (50) percent of the use of the Equipment (as such term is defined in the Lease) is to be in a trade or business of the Lessee.

Lessee acknowledges that it has been advised that it will not be treated as the owner of the Equipment for Federal income tax purposes.

IN WITNESS WHEREOF, Lessee has caused this Certification to be duly executed as of November 21, 2017.

**YRC INC.**
**LESSEE**

By: _____

Mark D. Boehmer, Vice President

3733910.1

AMENDED AND RESTATED SCHEDULE NO. 2

This Amended and Restated Schedule No. 2 dated November 21, 2022 (the "Schedule") between Peapack Capital Corporation (the "Lessor") and YRC Inc. (d/b/a YRC Freight) (the "Lessee") incorporates by reference the terms and conditions of Master Lease Agreement dated August 25, 2017 between Lessor and, inter alia, YRC Enterprise Services, Inc. (the "Master Agreement") and constitutes a separate lease between Lessor and Lessee.  The Schedule and Master Agreement as incorporated herein are hereinafter referred to collectively as the "Lease".  All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Agreement. This Schedule (a) continues, as amended hereby, the original Schedule No. 2 between Lessee and Lessor dated November 21, 2017 (as amended, the "Original Agreement"), (b) does not extinguish or otherwise reduce the obligations created by the Original Agreement, (c) does not constitute a novation, and (d) continues in full force and effect the Original Agreement except as expressly set forth in this Schedule.

1. Equipment:  See Exhibit A attached hereto.

2. Equipment Delivery Location (or Titling Jurisdiction for Vehicles (defined below) subject to certificates of title):  The titling jurisdiction is Indiana.

3. Total Equipment Cost:  $9,088,181.76

4. Base Term:  Seventy two (72) Months

5. Base Term Commencement Date:  November 21, 2017

6. Base Term End Date:  November 21, 2023

7. Due Dates of Base Monthly Rental Payments: The 21st day of each month, commencing with December 21, 2017

8. Date of Last Base Monthly Rental Payment: November 21, 2023

9. Base Monthly Rental:  $109,949.46 (plus applicable sales/use tax)

10. Base Monthly Rent Paid in Advance or Arrears:  Arrears

11. Supplier:  American Trailer and Storage, Inc.

12. Equipment Return Location:  Anywhere in the continental United States as determined by Lessor.

13. Stipulated Loss Value:  See attached Exhibit B to this Schedule.  Stipulated Loss Value means, with respect to any Item, the product of the Total Equipment Cost of such Item times the percentage applicable to the due date for the Base Monthly Rental payment for which the Stipulated Loss Value is being calculated, as set forth on Exhibit B attached hereto, except that following the expiration of the Base Term, the applicable percentage shall be the last percentage set forth on Exhibit B attached hereto.  For the avoidance of doubt, Stipulated Loss Values are

in addition to any unpaid Base Monthly Rental payments due on or prior to the same day.

14. Special Terms:

    a. Authorization for Electronic Payments: Lessee agrees to originate base monthly lease payments to Lessor or its assigns via Automated Clearinghouse (ACH) from Lessee's account maintained with its financial institution.

    b. Guaranty. Notwithstanding anything to the contrary herein, the parties acknowledge and agree that this Lease is guaranteed by Yellow Corporation

    c. Titled Equipment: The Equipment contains one or more titled vehicles (individually, a "Vehicle" and collectively, the "Vehicles"). Each Vehicle shall be used predominantly in the United States in Lessee's business in accordance with all applicable governmental and insurer titling requirements and limitations. Title to each Vehicle shall at all times remain in Lessor, or Lessor's Assignee(s) as owner or, if permitted under the applicable vehicle titling statutes, as lienholder. Lessee hereby grants to Lessor an irrevocable power of attorney coupled with an interest in Lessee's name (a "Power of Attorney"), to apply for a certificate of title for any Vehicle that is required to be titled under the laws of any jurisdiction where the Vehicle is or may be used and/or to transfer title thereto upon assignment by Lessor to an Assignee or upon the exercise by Lessor of its remedies upon an Event of Default by Lessee under the Lease. In furtherance of such grant, Lessee shall provide a written Power of Attorney, in form and substance satisfactory to Lessor, upon Lessor's request. If Lessee fails to perform or comply with any of its agreements with respect to titling of Vehicles, Lessor may perform or comply with such agreements in its own name or in Lessee's name as attorney-in-fact and the amount of any payments and expenses of Lessor incurred in connection with such performance or compliance, together with interest thereon at the rate of 1% per month from the date Lessor made such payments or incurred such expenses until payment is received by Lessor, or if such rate shall exceed the maximum rate of interest allowed by law, then at such maximum rate, shall be deemed rent payable by Lessee upon demand.

Notwithstanding anything contrary contained in the Master Agreement, the following provisions shall apply to each Vehicle:

    1) Lessee shall, at Lessee's own expense, register, title and license each Vehicle in the manner prescribed by Lessor as required by the applicable government or regulatory agency(ies). Lessee will do whatever may be necessary to have a statement of the interest of Lessor or any Assignee of Lessor in any Vehicle noted on any certificate of title relating to any Vehicle and will deliver said certificate to Lessor. In event Lessor registers, titles and/or licenses any Vehicle, Lessee shall immediately reimburse Lessor for all expenses relating thereto.

Lessee shall pay or provide for payment of all operating expenses of all Vehicles, including without limitation, gasoline, oil, anti-freeze, other fluids, servicing, repairs, storage, towing and fines.

2) Lessee shall require any operator of the vehicle to be properly licensed, trained and able to perform the functions necessary for safe operation. Lessee hereby covenants that it shall not permit its employees, representatives or agents to use any Vehicle for illegal purposes, including, without limitation, the illegal transportation of controlled substances, firearms, explosives, or hazardous materials.

3) Lessee shall be responsible for all fees, traffic summonses, penalties and fines that may be imposed due to the use of the Vehicle.

4) Lessee shall provide to Lessor any documentation pertaining to any Vehicle as Lessor may, from time to time, reasonably request. Including but not limited to the location, mileage and condition of any or all Vehicles.

d. <u>TRAC Rider</u>: The TRAC provisions described on Rider No. 1 attached hereto are hereby made applicable to and incorporated into this Schedule.

e. <u>Mobile Equipment</u>:  Notwithstanding anything to the contrary in the Master Agreement, Lessor acknowledges that the Equipment is mobile and may be moved to additional locations so long as Lessee keeps the Equipment in its sole possession and control, except that Lessee may store any Item of the Equipment at a customer's location for a limited period of time and in the ordinary course of business, and except when any Item of Equipment is undergoing required repairs. Upon Lessor's request, Lessee shall promptly provide Lessor the then current location of the Equipment.

15. <u>Maintenance and Return Conditions for Vehicles</u>:  Without limiting the obligations of Lessee under the Lease, Lessee shall, at its expense, do the following:

a. Lessee shall ensure that all Vehicles and their operations conform to all applicable local, state, and federal laws, health and safety guidelines.  Upon return, the Vehicles will be complete and operational with all components as originally supplied and will have passed U. S. Department of Transportation or appropriate regulatory agency requirements for operation.  If applicable, an inspection sticker or certificate will be furnished to Lessor verifying compliance with any regulatory requirements.  Lessee shall satisfy all legal and regulatory conditions necessary for Lessor to sell or lease the Vehicles to a third party.  Lessee will keep all licenses and operating certificates required for operation of the Vehicles current during the Lease Term.

b. Upon return, each Vehicle and its components shall meet all of their applicable manufacturer's specifications for performance under full rated loads.  In addition, each Vehicle must be maintained throughout the Lease Term and returned upon the expiration or termination thereof in accordance with all of the following conditions:

i. Tires.  All tires shall be matched on each Vehicle by the same type and tread design, original size, and manufacturer, and have a minimum of 12/32 inch of remaining tread depth. All front tires shall be original casings; rear tires may be either casings or recapped casings.  All tires shall be free of flat or bald spots,

cupping, dry rot, cuts and exposed cords.

ii. General Condition. The Vehicles must be able to pass Federal Highway Administration inspection. The Vehicles shall be structurally sound with no material structural or mechanical damage, in good overall appearance, clean with no missing or damaged parts, ordinary wear and tear excepted. The Vehicles shall be free of any material rust and corrosion. No glass shall be broken or cracked, no upholstery shall have any cuts or burns and there shall be no physical damage to exterior or interior materials, other than from normal use, that exceeds $500 in the aggregate to repair and no physical damage from accidents. Upon return, all Vehicles shall be completely de-identified, including but not limited to all commercial logos, advertising, graffiti, Lessee insignia and lettering. The de-identified surfaces shall be repaired and refinished in such a way that the area blends in with the remainder of the item's overall appearance. Manufacturer's identity plates and markings shall not be removed or obscured.

iii. Documents and Records. Written records of scheduled and other maintenance and repair work done shall be kept, dated, and signed by the appropriate authority. A service history or log will be maintained during the Lease Term, in English, and a copy provided to Lessor upon request during the Lease Term, or at the expiration or other termination (by acceleration or otherwise) of the Lease. All maintenance records, maintenance record jackets, repair jackets, repair orders, license plates, registration certificates, and all other similar documents, in their entirety, must be returned to Lessor.

iv. Brakes. Brake drums and linings shall not be cracked and shall not exceed manufacturer's recommended wear limits. Brake linings shall have a minimum of 3/8 inch of remaining wear on each lining.

v. Maintenance. Lessee shall follow the manufacturer's recommended maintenance and service schedule, including, without limitation, manufacturer's schedule of engine oil change and sampling, to the extent required to validate any warranty, at Lessee's sole cost and expense. Any maintenance or repair work shall comply with the guidelines and procedures as specified by the manufacturers of the Vehicles or each component of the Vehicles. Lessee will use only original manufacturer's approved replacement parts and components in the performance of any maintenance and repair of the Vehicles. Lessee will at all times maintain the Vehicles in good operational condition and appearance, and shall not discriminate in such maintenance between owned or leased Vehicles.

16. <u>Tax Indemnity Rider</u>. The income tax indemnity described on Rider No. 2 attached hereto is hereby incorporated into this Schedule.

All other terms and conditions of the Master Agreement shall remain in full force and effect without change.

The undersigned Lessee acknowledges that this Schedule authorizes the Lessor or its agents or assignee(s) to sign, execute and file on its behalf any and all necessary documents, including UCC financing statements and other filings and recordings, to make public this lease transaction. The parties intend this transaction to be a true lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this Schedule is not a true lease but is in the nature of a sale, consignment, or other transaction, the parties intend and the Lessee hereby grants a continuing security interest in the Equipment from the date of this Schedule to secure the payment of all Lessee's indebtedness to Lessor.

IN THE EVENT OF ANY CONFLICT BETWEEN THE PROVISIONS OF THE MASTER AGREEMENT AND THIS SCHEDULE, THIS SCHEDULE SHALL PREVAIL.

THIS SCHEDULE TOGETHER WITH THE MASTER AGREEMENT, ANY ADDITIONAL PROVISION(S) REFERRED TO IN HEREIN OR THEREIN, AND ANY ADDENDA, ANNEXES, EXHIBITS OR RIDERS EXECUTED BY LESSOR AND LESSEE WHICH REFERENCES THIS SCHEDULE CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT.

*[Remainder of this page intentionally left blank, signatures appear on next page.]*

LESSOR: **Peapack Capital Corporation**          LESSEE:  **YRC Inc. (d/b/a  YRC Freight)**

By: _____          By: _____

Name: _____          Name: Anthony P. Carreño

Title: _____          Title:  Senior Vice President, Treasury

This original executed counterpart of this Schedule is hereby marked as "Original" and constitutes the chattel paper of this Schedule.  Any executed counterparts of this Schedule that do not include the immediately preceding sentence do not constitute chattel paper.

EXHIBIT A TO AMENDED AND RESTATED SCHEDULE NO. 2

DESCRIPTION OF EQUIPMENT SUBJECT TO AMENDED AND RESTATED SCHEDULE NO. 2

426 2018 Hyundai Translead 28' HT Composite Dry Van Trailers, more particularly described as follows:

| Vin List: | YRC Unit # | Purchase Price | Delivery I | Delivery II | FET | Total |
|---|---|---|---|---|---|---|
| 3H3V281C1JT744432 | 136500 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744433 | 136501 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744434 | 136502 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744435 | 136503 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744436 | 136504 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744437 | 136505 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744438 | 136506 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744439 | 136507 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744440 | 136508 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744441 | 136509 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744443 | 136511 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744444 | 136512 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744445 | 136513 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744446 | 136514 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744447 | 136515 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744448 | 136516 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744449 | 136517 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744450 | 136518 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744451 | 136519 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744452 | 136520 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744453 | 136521 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744454 | 136522 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744455 | 136523 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744456 | 136524 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744457 | 136525 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744458 | 136526 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744459 | 136527 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744460 | 136528 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744461 | 136529 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744462 | 136530 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744463 | 136531 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744464 | 136532 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3H3V28lC5JT744465 | 136533 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC7JT744466 | 136534 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC9JT744467 | 136535 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC0JT744468 | 136536 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC2JT744469 | 136537 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC9JT744470 | 136538 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC0JT744471 | 136539 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC2JT744472 | 136540 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC4JT744473 | 136541 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC6JT744474 | 136542 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC8JT744475 | 136543 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lCXJT744476 | 136544 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC1JT744477 | 136545 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC3JT744478 | 136546 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC5JT744479 | 136547 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC1JT744480 | 136548 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC3JT744481 | 136549 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC5JT744482 | 136550 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC7JT744483 | 136551 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC9JT744484 | 136552 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC0JT744485 | 136553 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC2JT744486 | 136554 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC4JT744487 | 136555 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC6JT744488 | 136556 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC8JT744489 | 136557 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC4JT744490 | 136558 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC6JT744491 | 136559 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC8JT744492 | 136560 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lCXJT744493 | 136561 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC1JT744494 | 136562 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC3JT744495 | 136563 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC5JT744496 | 136564 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC7JT744497 | 136565 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC9JT744498 | 136566 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC0JT744499 | 136567 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC3JT744500 | 136568 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC5JT744501 | 136569 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC7JT744502 | 136570 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC9JT744503 | 136571 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC0JT744504 | 136572 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC2JT744505 | 136573 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28lC4JT744506 | 136574 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3H3V28IC6JT744507 | 136575 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744508 | 136576 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744509 | 136577 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744510 | 136578 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744511 | 136579 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744512 | 136580 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744513 | 136581 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744514 | 136582 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744515 | 136583 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744516 | 136584 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744517 | 136585 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744518 | 136586 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744519 | 136587 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744520 | 136588 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744521 | 136589 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744522 | 136590 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744523 | 136591 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744524 | 136592 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744525 | 136593 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744526 | 136594 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744527 | 136595 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744528 | 136596 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744529 | 136597 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744530 | 136598 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744531 | 136599 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744532 | 136600 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744533 | 136601 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744534 | 136602 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744535 | 136603 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744536 | 136604 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744537 | 136605 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744538 | 136606 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744539 | 136607 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744540 | 136608 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744541 | 136609 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744542 | 136610 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744543 | 136611 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744544 | 136612 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744545 | 136613 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744546 | 136614 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744547 | 136615 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744548 | 136616 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| 3H3V28IC0JT744549 | 136617 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
|---|---|---|---|---|---|---|
| 3H3V28IC7JT744550 | 136618 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744551 | 136619 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744552 | 136620 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744553 | 136621 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744554 | 136622 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744555 | 136623 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744556 | 136624 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744557 | 136625 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744558 | 136626 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744559 | 136627 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744560 | 136628 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744561 | 136629 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744562 | 136630 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744563 | 136631 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744564 | 136632 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744565 | 136633 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744566 | 136634 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744567 | 136635 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744568 | 136636 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744569 | 136637 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744570 | 136638 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744571 | 136639 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744572 | 136640 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744574 | 136642 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744575 | 136643 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744576 | 136644 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744577 | 136645 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744578 | 136646 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744579 | 136647 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744580 | 136648 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744581 | 136649 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744582 | 136650 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744583 | 136651 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744584 | 136652 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744585 | 136653 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744586 | 136654 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744587 | 136655 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744588 | 136656 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744589 | 136657 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744591 | 136659 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744592 | 136660 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3H3V281C3JT744593 | 136661 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744594 | 136662 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744595 | 136663 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744596 | 136664 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744597 | 136665 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744598 | 136666 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744599 | 136667 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744600 | 136668 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744601 | 136669 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744602 | 136670 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744603 | 136671 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744604 | 136672 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744605 | 136673 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744606 | 136674 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744607 | 136675 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744608 | 136676 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744609 | 136677 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744610 | 136678 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744611 | 136679 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744612 | 136680 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744613 | 136681 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744614 | 136682 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744615 | 136683 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744616 | 136684 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744617 | 136685 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744618 | 136686 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744619 | 136687 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744620 | 136688 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744621 | 136689 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744622 | 136690 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744623 | 136691 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744624 | 136692 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744625 | 136693 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744626 | 136694 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744627 | 136695 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744628 | 136696 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744629 | 136697 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744630 | 136698 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744631 | 136699 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744632 | 136700 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744633 | 136701 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744634 | 136702 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3H3V28IC4JT744635 | 136703 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744636 | 136704 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744637 | 136705 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744638 | 136706 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744639 | 136707 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744640 | 136708 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744641 | 136709 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744642 | 136710 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744643 | 136711 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744644 | 136712 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744645 | 136713 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744646 | 136714 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744647 | 136715 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744648 | 136716 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744649 | 136717 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744650 | 136718 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744651 | 136719 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744652 | 136720 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744653 | 136721 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744654 | 136722 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744655 | 136723 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744656 | 136724 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744658 | 136726 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744659 | 136727 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744660 | 136728 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744661 | 136729 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744662 | 136730 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744663 | 136731 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744664 | 136732 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744665 | 136733 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744666 | 136734 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744667 | 136735 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744668 | 136736 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744669 | 136737 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744670 | 136738 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744671 | 136739 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744672 | 136740 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744673 | 136741 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744674 | 136742 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744675 | 136743 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744676 | 136744 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744677 | 136745 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3H3V28IC0JT744678 | 136746 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744679 | 136747 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744680 | 136748 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744681 | 136749 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744682 | 136750 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744683 | 136751 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744684 | 136752 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744685 | 136753 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744686 | 136754 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744687 | 136755 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744688 | 136756 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744689 | 136757 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744690 | 136758 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744691 | 136759 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744692 | 136760 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744693 | 136761 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744694 | 136762 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744695 | 136763 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744696 | 136764 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744697 | 136765 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744698 | 136766 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744699 | 136767 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744700 | 136768 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744701 | 136769 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744702 | 136770 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744703 | 136771 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744704 | 136772 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744705 | 136773 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744706 | 136774 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744707 | 136775 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744708 | 136776 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744709 | 136777 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744710 | 136778 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744711 | 136779 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744712 | 136780 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744713 | 136781 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744714 | 136782 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744715 | 136783 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744716 | 136784 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744717 | 136785 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744718 | 136786 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744719 | 136787 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3H3V28IC6JT744720 | 136788 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744721 | 136789 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744722 | 136790 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744723 | 136791 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744724 | 136792 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744725 | 136793 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744726 | 136794 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744727 | 136795 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744728 | 136796 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744729 | 136797 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744730 | 136798 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744731 | 136799 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744732 | 136800 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744733 | 136801 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744734 | 136802 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744735 | 136803 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744736 | 136804 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744737 | 136805 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744738 | 136806 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744739 | 136807 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744740 | 136808 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744741 | 136809 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744742 | 136810 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744743 | 136811 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744744 | 136812 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744745 | 136813 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC2JT744746 | 136814 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744747 | 136815 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744748 | 136816 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744749 | 136817 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC4JT744750 | 136818 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC6JT744751 | 136819 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC8JT744752 | 136820 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28ICXJT744753 | 136821 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC1JT744754 | 136822 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC3JT744755 | 136823 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC5JT744756 | 136824 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744757 | 136825 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744758 | 136826 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC0JT744759 | 136827 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC7JT744760 | 136828 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28IC9JT744761 | 136829 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3H3V281C0JT744762 | 136830 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744763 | 136831 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744764 | 136832 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744765 | 136833 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744766 | 136834 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744767 | 136835 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744768 | 136836 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744769 | 136837 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744770 | 136838 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744771 | 136839 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744772 | 136840 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744773 | 136841 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744774 | 136842 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744775 | 136843 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744776 | 136844 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744777 | 136845 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744778 | 136846 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744779 | 136847 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744780 | 136848 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744781 | 136849 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744782 | 136850 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744783 | 136851 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744784 | 136852 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744785 | 136853 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744786 | 136854 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744787 | 136855 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744788 | 136856 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744789 | 136857 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744790 | 136858 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744791 | 136859 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744792 | 136860 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744793 | 136861 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744794 | 136862 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744795 | 136863 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744796 | 136864 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744797 | 136865 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744798 | 136866 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744799 | 136867 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744800 | 136868 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744801 | 136869 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744802 | 136870 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744803 | 136871 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3H3V281C1JT744804 | 136872 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744805 | 136873 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744806 | 136874 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744807 | 136875 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744808 | 136876 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744809 | 136877 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744810 | 136878 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744811 | 136879 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744812 | 136880 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744813 | 136881 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744814 | 136882 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744815 | 136883 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744816 | 136884 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744817 | 136885 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744818 | 136886 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744819 | 136887 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744820 | 136888 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744821 | 136889 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744822 | 136890 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744823 | 136891 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744824 | 136892 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744825 | 136893 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744826 | 136894 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744827 | 136895 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744828 | 136896 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744829 | 136897 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744830 | 136898 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744831 | 136899 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C6JT744832 | 136900 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C8JT744833 | 136901 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281CXJT744834 | 136902 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C1JT744835 | 136903 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C3JT744836 | 136904 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744837 | 136905 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744838 | 136906 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744839 | 136907 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C5JT744840 | 136908 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C7JT744841 | 136909 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C9JT744842 | 136910 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C0JT744843 | 136911 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C2JT744844 | 136912 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V281C4JT744845 | 136913 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3H3V28I C6JT744846 | 136914 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C8JT744847 | 136915 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I CXJT744848 | 136916 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C1JT744849 | 136917 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C8JT744850 | 136918 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I CXJT744851 | 136919 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C1JT744852 | 136920 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C3JT744853 | 136921 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C5JT744854 | 136922 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C7JT744855 | 136923 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C9JT744856 | 136924 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C0JT744857 | 136925 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C2JT744858 | 136926 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C4JT744859 | 136927 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C0JT744860 | 136928 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |
| 3H3V28I C2JT744861 | 136929 | 18,773.00 | 150.00 | 125.00 | 2,285.76 | 21,333.76 |

EXHIBIT B TO AMENDED AND RESTATED SCHEDULE NO. 2

STIPULATED LOSS VALUE TABLE TO AMENDED AND RESTATED SCHEDULE NO. 2

| Rent Payment Number | SLV Percentage | Rent Payment Number | SLV Percentage | Rent Payment Number | SLV Percentage |
|---|---|---|---|---|---|
| 1 | 104.10 | 25 | 80.11 | 49 | 61.95 |
| 2 | 103.17 | 26 | 79.07 | 50 | 60.86 |
| 3 | 102.20 | 27 | 78.03 | 51 | 59.77 |
| 4 | 101.23 | 28 | 76.99 | 52 | 58.68 |
| 5 | 100.26 | 29 | 75.94 | 53 | 57.58 |
| 6 | 99.28 | 30 | 76.10 | 54 | 56.49 |
| 7 | 98.30 | 31 | 76.25 | 55 | 55.40 |
| 8 | 97.32 | 32 | 76.41 | 56 | 54.32 |
| 9 | 96.33 | 33 | 76.57 | 57 | 53.24 |
| 10 | 95.34 | 34 | 76.73 | 58 | 52.15 |
| 11 | 94.35 | 35 | 76.89 | 59 | 51.07 |
| 12 | 93.35 | 36 | 75.84 | 60 | 50.00 |
| 13 | 92.35 | 37 | 74.79 | 61 | 49.66 |
| 14 | 91.35 | 38 | 73.74 | 62 | 48.78 |
| 15 | 90.34 | 39 | 72.68 | 63 | 47.85 |
| 16 | 89.33 | 40 | 71.62 | 64 | 46.91 |
| 17 | 88.32 | 41 | 70.55 | 65 | 45.96 |
| 18 | 87.30 | 42 | 69.48 | 66 | 45.01 |
| 19 | 86.28 | 43 | 68.42 | 67 | 44.07 |
| 20 | 85.26 | 44 | 67.34 | 68 | 43.13 |
| 21 | 84.24 | 45 | 66.27 | 69 | 42.19 |
| 22 | 83.21 | 46 | 65.19 | 70 | 41.25 |
| 23 | 82.18 | 47 | 64.11 | 71 | 40.30 |
| 24 | 81.15 | 48 | 63.03 | 72 | 38.93 |

RIDER 1 TO AMENDED AND RESTATED SCHEDULE NO. 2

TRAC Provisions

This Rider No. 1 is attached to and made a part of Amended and Restated Schedule No. 2, dated as of November 21, 2022 (the "Schedule") between Peapack Capital Corporation ("Lessor") and YRC Inc., (d/b/a YRC Freight) ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement, dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Lease and the Schedule.

TRAC Purchase Option

(1)    The "TRAC Percentage" is defined as 38.926% of the Total Equipment Cost. Lessee and Lessor agree that the TRAC Percentage is a reasonable estimate of the fair market value of the Equipment at the end of the Term. Provided that no Event of Default has occurred and is continuing, Lessee may elect, by giving Lessor not less than ninety (90) days prior written notice (which notice shall be irrevocable without Lessor' written consent), to purchase all, but not less than all, of the Equipment described in this Schedule (hereinafter for purposes of this Section only, the "TRAC Equipment") for an amount equal to the TRAC Percentage multiplied by the Total Equipment Cost in which case all TRAC Equipment shall be sold to Lessee on an AS IS, WHERE IS BASIS, without recourse or warranty (except that Lessor has whatever title (if any) to the Equipment that was conveyed to it by the Supplier free of any security interest arising solely by reason of a claim against Lessor that Lessee is not responsible to remove pursuant to the Lease).

(2)    Unless Lessee has previously notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessee shall provide Lessor with written notice, not less than ninety (90) days before the expiration of the Base Term (which notice shall be irrevocable without Lessor's written consent), of Lessee's intent to return the TRAC Equipment (the "End of Term Notice"). If Lessor does not receive the End of Term Notice within the applicable time frame, the Base Term shall be automatically extended (the "Extension Term") without any notice or action on the part of Lessor for three additional months (at the Base Monthly Rental amount) and shall further be extended until the end of the second full month after the month during which the End of Term Notice is received by Lessor. Notwithstanding the foregoing, unless Lessee has previously duly notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessor shall have the right (but not the obligation), at any time during the final month of the Base Term or at any time during the Extension Term to terminate this Agreement, in which event Lessee shall be obligated to return the Equipment at the end of the then-current month (the "Extension Termination Date"). Lessee's failure to return any Item by the Extension Termination Date in the manner and condition required by the Lease, for any reason whatsoever, shall constitute an immediate Event of Default under the Lease notwithstanding the making of any payment or the rendering of other performance hereunder. Upon return of the Equipment at the end of any Extension Term, the terms of subsection (3) below shall be applicable and the TRAC Percentage shall remain unchanged.

(3)    Unless Lessee purchases all of the TRAC Equipment in accordance with the terms hereof, Lessee shall return to Lessor all of the TRAC Equipment, pursuant to the return provisions

of this Lease.  Lessee's failure to return the TRAC Equipment as required hereunder shall constitute an Event of Default hereunder and the Base Term shall, at Lessor' election, be extended on a month-to-month basis.  Upon return of the TRAC Equipment and provided that no Event of Default has occurred and is continuing, Lessor shall sell or otherwise dispose of the TRAC Equipment in a commercially reasonable manner.  If the amount received by Lessor for the TRAC Equipment in such sale or disposition exceeds the sum of the TRAC Percentage multiplied by the Total Equipment Cost, plus the amounts remaining due under this Agreement and all costs of sale, any such excess shall be returned by Lessor to Lessee as a rental adjustment.  If the amount received by Lessor for the TRAC Equipment in such sale or disposition (after deduction of any amounts remaining due under this Agreement and all costs of sale) is less than the TRAC Percentage multiplied by The Total Equipment Cost, then any such deficiency shall be paid by Lessee to Lessor as a terminal rental adjustment provided however that in no event shall Lessee be obligated to pay to Lessor, as a terminal rental adjustment under the TRAC provision, any such amount in excess of 31.926% of the Total Equipment Cost of the TRAC Equipment.  Lessee agrees to facilitate any such sale or disposition of the TRAC Equipment and hereby grants to Lessor, its agents or employees, the right to enter Lessee's premises for the purpose of selling or otherwise disposing of the TRAC Equipment.  Lessee shall reimburse Lessor for all costs of such sale or disposition, including all taxes, advertising costs or other commissions or expenses charged against the sales price. Lessee shall execute Lessor's approved form TRAC certificate at or before closing.

RIDER 2 TO AMENDED AND RESTATED SCHEDULE NO. 2

Tax Indemnification

This Rider No. 2 is attached to and incorporated into Amended and Restated Schedule No. 2 dated as of November 21, 2022_(the "Schedule") between Peapack Capital Corporation (the "Lessor") and YRC Inc., (d/b/a YRC Freight) ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement dated August 25, 2017, between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Schedule or the Master Agreement, as applicable.

1. Lessee represents and warrants that: (a) it believes that it is reasonable to estimate that the useful life of the Equipment exceeds the lease term (including any interim and fixed rental renewal periods) by the greater of one (1) year or twenty (20) percent of such estimated useful life, and that said Equipment will have a value at the end of the lease term, including any fixed rate renewal period, of at least twenty percent (20%) of the original equipment cost of the Equipment, without including in such value any increase or decrease for inflation or deflation during the original lease term; (b) the Equipment is, and will be used by Lessee so as to remain, property eligible for the MACRS Deductions (as defined below); (c) each item of Equipment constitutes "qualified property" pursuant to Section 168(k) of the Internal Revenue Code of 1986, as now or hereafter amended (the "Code"), (d) the Equipment shall be treated as originally placed in service not earlier than the date of the execution and delivery of the Schedule, or in the event the transaction is a sale-leaseback transaction, Lessee shall not have placed in service the Equipment subject to the Schedule at any time prior to three (3) months before the execution and delivery of the Schedule.

2. If, as a result of any Event of Default, act or omission of Lessee or breach of any representation or warranty of Lessee either (a) Lessor in computing its taxable income or liability for tax, shall lose, or shall not have, or shall lose the right to claim or there shall be disallowed or recaptured for Federal and/or state income tax purposes, in whole or in part, the benefit to Lessor of MACRS Deductions, or (b) Lessor shall become liable for additional tax (including, without limitation, as a result of Lessee having added an attachment or made an alteration to the Equipment, including (without limitation) any such attachment or alteration which would increase the productivity or capability of the Equipment so as to violate the provisions of Rev. Proc. 2001-28, 2001-1 C.B. 1156 (as it may hereafter be modified or superseded) (hereinafter referred to as a "Loss")), then Lessee shall pay Lessor the Tax Indemnification Payment as additional rent and Lessor shall revise the table of Stipulated Loss Values attached to the Schedule as Exhibit B to reflect the Loss.

3. As used herein: (a) "MACRS Deductions" shall mean the deductions under Section 167 of the Code, determined in accordance with the modified Accelerated Cost Recovery System with respect to the original equipment cost of any Item of the Equipment using the accelerated method set forth in Section 168(b)(1) of the Code; (b) "Lessor" shall be deemed to include the consolidated Federal taxpayer group of which Lessor is a member; and (c) "Tax Indemnification Payment" shall mean such amount as, after consideration of (i) all taxes required to be paid by Lessor in respect of the receipt thereof under the laws of any governmental or taxing authority in

the United States, and (ii) the amount of any interest or penalty which may be payable by Lessor in connection with the Loss, shall be required to cause Lessor's after-tax net return (the "Net Return") to be equal to, but no greater than, the Net Return computed consistently with current tax laws (and with the assumption that Lessor is taxed at the highest marginal Federal and state tax rates) as of the date of the Schedule that would have been available to Lessor had the Loss not occurred.

4.      Lessor shall be responsible for, and shall not be entitled to a Tax Indemnification Payment by Lessee on account of, any Loss arising solely as a direct result of the occurrence of any one or more of the following events: (a) the failure of Lessor to timely and properly claim MACRS Deductions, as applicable, in the tax return of Lessor other than as a result of changes in the Code or applicable regulations unless in the reasonable opinion of Lessor's tax counsel there is no basis for such claim; (b) the failure of Lessor to have sufficient taxable income before application of the MACRS Deductions to offset the full amount of such MACRS Deductions other than as a result of changes in the Code or applicable regulations; (c) any event which by the terms of the Lease requires payment by Lessee of the Stipulated Loss Value if such payment is thereafter actually made to Lessor, to the extent that such payment reimburses Lessor for amounts otherwise payable by Lessee pursuant hereto; or (d) a disqualifying disposition due to sale of any item of the Equipment or the Lease by Lessor prior to a Default.

5.      Lessor promptly shall notify Lessee in writing of such Loss and Lessee shall pay to Lessor the Tax Indemnification Payment within thirty (30) days of such notice. For these purposes, a Loss shall occur upon the earliest of: (a) the happening of any event (such as disposition or change in use of any item of the Equipment) which will cause such Loss; (b) the payment by Lessor to the Internal Revenue Service or state taxing authority of the tax increase (including an increase in estimated taxes) resulting from such Loss; (c) the date on which the Loss is realized by Lessor; or (d) the adjustment of the tax return of Lessor to reflect such Loss.

6.      The obligations of Lessee under this Rider No. 2, which accrue during the term of the Schedule, shall survive the expiration or termination of the Schedule.

3710107.3



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | VC2280151-FJPRW | SE | 2018 | 3H3V281C8JT744590 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 10/19/17 | 12/05/17 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**

**MAILING ADDRESS**   000622

PEAPACK CAPITAL CORP
500 SHORT HILLS DR
BEDMINSTER NJ 07921

**ADDITIONAL OWNER(S)**

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITAL CORP
500 SHORT HILLS DR
BEDMINSTER NJ 07921

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

x *Heidi H. Smith*

**PRINTED NAME:** HeIDI H. SMITH   **POSITION:** VP

**DATE:** 12/16/21

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X

**PRINTED NAME:**   **POSITION:**
**DATE:**

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X

**PRINTED NAME:**   **POSITION:**
**DATE:**

---

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G3484095

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

17504239000274

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

# EXHIBIT D

SCHEDULE NO. 4

This Schedule No. 4 dated November 13, 2018 (the "Schedule") between Peapack Capital Corporation (the "Lessor") and YRC Inc. (d/b/a YRC Freight) (the "Lessee") incorporates by reference the terms and conditions of Master Lease Agreement dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement") and constitutes a separate lease between Lessor and Lessee. The Schedule and Master Agreement as incorporated herein are hereinafter referred to collectively as the "Lease". All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Agreement.

1. Equipment: See Exhibit A attached hereto.

2. Equipment Delivery Location (or Titling Jurisdiction for Vehicles (defined below) subject to certificates of title): The titling jurisdiction is Indiana.

3. Total Equipment Cost: $1,242,520.38

4. Base Term: Sixty (60) Months

5. Base Term Commencement Date: November 13, 2018

6. Base Term End Date: November 13, 2023                     13TH x  MDB

7. Due Dates of Base Monthly Rental Payments: The 9th day of each month, commencing with December 13, 2018

8. Date of Last Base Monthly Rental Payment: November 13, 2023

9. Base Monthly Rental: $15,775.50 (plus applicable sales/use tax)

10. Base Monthly Rent Paid in Advance or Arrears: Arrears

11. Supplier: American Trailer and Storage, Inc.

12. Equipment Return Location: Anywhere in the continental United States as determined by Lessor.

13. Stipulated Loss Value: See attached Exhibit B to this Schedule. Stipulated Loss Value means, with respect to any Item, the product of the Total Equipment Cost of such Item times the percentage applicable to the due date for the Base Monthly Rental payment for which the Stipulated Loss Value is being calculated, as set forth on Exhibit B attached hereto, except that following the expiration of the Base Term, the applicable percentage shall be the last percentage set forth on Exhibit B attached hereto. For the avoidance of doubt, Stipulated Loss Values are in addition to any unpaid Base Monthly Rental payments due on or prior to the same day.

14. Special Terms:

    a. Guaranty. Notwithstanding anything to the contrary herein, the parties acknowledge and agree that this Lease is guaranteed by YRC Worldwide Inc.

b. Titled Equipment: The Equipment contains one or more titled vehicles (individually, a "Vehicle" and collectively, the "Vehicles"). Each Vehicle shall be used predominantly in the United States in Lessee's business in accordance with all applicable governmental and insurer titling requirements and limitations. Title to each Vehicle shall at all times remain in Lessor, or Lessor's Assignee(s) as owner or, if permitted under the applicable vehicle titling statutes, as lienholder. Lessee hereby grants to Lessor an irrevocable power of attorney coupled with an interest in Lessee's name (a "Power of Attorney"), to apply for a certificate of title for any Vehicle that is required to be titled under the laws of any jurisdiction where the Vehicle is or may be used and/or to transfer title thereto upon assignment by Lessor to an Assignee or upon the exercise by Lessor of its remedies upon an Event of Default by Lessee under the Lease. In furtherance of such grant, Lessee shall provide a written Power of Attorney, in form and substance satisfactory to Lessor, upon Lessor's request. If Lessee fails to perform or comply with any of its agreements with respect to titling of Vehicles, Lessor may perform or comply with such agreements in its own name or in Lessee's name as attorney-in-fact and the amount of any payments and expenses of Lessor incurred in connection with such performance or compliance, together with interest thereon at the rate of 1% per month from the date Lessor made such payments or incurred such expenses until payment is received by Lessor, or if such rate shall exceed the maximum rate of interest allowed by law, then at such maximum rate, shall be deemed rent payable by Lessee upon demand.

Notwithstanding anything contrary contained in the Master Agreement, the following provisions shall apply to each Vehicle:

1) Lessee shall, at Lessee's own expense, register, title and license each Vehicle in the manner prescribed by Lessor as required by the applicable government or regulatory agency(ies). Lessee will do whatever may be necessary to have a statement of the interest of Lessor or any Assignee of Lessor in any Vehicle noted on any certificate of title relating to any Vehicle and will deliver said certificate to Lessor. In event Lessor registers, titles and/or licenses any Vehicle, Lessee shall immediately reimburse Lessor for all expenses relating thereto.

Lessee shall pay or provide for payment of all operating expenses of all Vehicles, including without limitation, gasoline, oil, anti-freeze, other fluids, servicing, repairs, storage, towing and fines.

2) Lessee shall require any operator of the vehicle to be properly licensed, trained and able to perform the functions necessary for safe operation. Lessee hereby covenants that it shall not permit its employees, representatives or agents to use any Vehicle for illegal purposes, including, without limitation, the illegal transportation of controlled substances, firearms, explosives, or hazardous materials.

3) Lessee shall be responsible for all fees, traffic summonses, penalties and fines that may be imposed due to the use of the Vehicle.

-2-

      4) Lessee shall provide to Lessor any documentation pertaining to any Vehicle as Lessor may, from time to time, reasonably request. Including but not limited to the location, mileage and condition of any or all Vehicles.

  c. TRAC Rider: The TRAC provisions described on Rider No. 1 attached hereto are hereby made applicable to and incorporated into this Schedule.

  d. Mobile Equipment: Notwithstanding anything to the contrary in the Master Agreement, Lessor acknowledges that the Equipment is mobile and may be moved to additional locations so long as Lessee keeps the Equipment in its sole possession and control, except that Lessee may store any Item of the Equipment at a customer's location for a limited period of time and in the ordinary course of business, and except when any Item of Equipment is undergoing required repairs. Upon Lessor's request, Lessee shall promptly provide Lessor the then current location of the Equipment.

15. Maintenance and Return Conditions for Vehicles: Without limiting the obligations of Lessee under the Lease, Lessee shall, at its expense, do the following:

  a. Lessee shall ensure that all Vehicles and their operations conform to all applicable local, state, and federal laws, health and safety guidelines. Upon return, the Vehicles will be complete and operational with all components as originally supplied and will have passed U. S. Department of Transportation or appropriate regulatory agency requirements for operation. If applicable, an inspection sticker or certificate will be furnished to Lessor verifying compliance with any regulatory requirements. Lessee shall satisfy all legal and regulatory conditions necessary for Lessor to sell or lease the Vehicles to a third party. Lessee will keep all licenses and operating certificates required for operation of the Vehicles current during the Lease Term.

  b. Upon return, each Vehicle and its components shall meet all of their applicable manufacturer's specifications for performance under full rated loads. In addition, each Vehicle must be maintained throughout the Lease Term and returned upon the expiration or termination thereof in accordance with all of the following conditions:

    i. Tires. All tires shall be matched on each Vehicle by the same type and tread design, original size, and manufacturer, and have a minimum of 12/32 inch of remaining tread depth. All front tires shall be original casings; rear tires may be either casings or recapped casings. All tires shall be free of flat or bald spots, cupping, dry rot, cuts and exposed cords.

    ii. General Condition. The Vehicles must be able to pass Federal Highway Administration inspection. The Vehicles shall be structurally sound with no material structural or mechanical damage, in good overall appearance, clean with no missing or damaged parts, ordinary wear and tear excepted. The Vehicles shall be free of any material rust and corrosion. No glass shall be broken or cracked, no upholstery shall have any cuts or burns and there shall be no physical damage to exterior or interior materials, other than from normal use, that exceeds $500 in

the aggregate to repair and no physical damage from accidents. Upon return, all Vehicles shall be completely de-identified, including but not limited to all commercial logos, advertising, graffiti, Lessee insignia and lettering. The de-identified surfaces shall be repaired and refinished in such a way that the area blends in with the remainder of the item's overall appearance. Manufacturer's identity plates and markings shall not be removed or obscured.

iii.   Documents and Records. Written records of scheduled and other maintenance and repair work done shall be kept, dated, and signed by the appropriate authority. A service history or log will be maintained during the Lease Term, in English, and a copy provided to Lessor upon request during the Lease Term, or at the expiration or other termination (by acceleration or otherwise) of the Lease. All maintenance records, maintenance record jackets, repair jackets, repair orders, license plates, registration certificates, and all other similar documents, in their entirety, must be returned to Lessor.

iv.   Brakes. Brake drums and linings shall not be cracked and shall not exceed manufacturer's recommended wear limits. Brake linings shall have a minimum of 3/8 inch of remaining wear on each lining.

v.   Maintenance.    Lessee shall follow the manufacturer's recommended maintenance and service schedule, including, without limitation, manufacturer's schedule of engine oil change and sampling, to the extent required to validate any warranty, at Lessee's sole cost and expense. Any maintenance or repair work shall comply with the guidelines and procedures as specified by the manufacturers of the Vehicles or each component of the Vehicles. Lessee will use only original manufacturer's approved replacement parts and components in the performance of any maintenance and repair of the Vehicles. Lessee will at all times maintain the Vehicles in good operational condition and appearance, and shall not discriminate in such maintenance between owned or leased Vehicles.

16. Tax Indemnity Rider. The income tax indemnity described on Rider No. 2 attached hereto is hereby incorporated into this Schedule.

All other terms and conditions of the Master Agreement shall remain in full force and effect without change.

The undersigned Lessee acknowledges that this Schedule authorizes the Lessor or its agents or assignee(s) to sign, execute and file on its behalf any and all necessary documents, including UCC financing statements and other filings and recordings, to make public this lease transaction. The parties intend this transaction to be a true lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this Schedule is not a true lease but is in the nature of a sale, consignment, or other transaction, the parties intend and the Lessee hereby grants a continuing security interest in the Equipment from the date of this Schedule to secure the payment of all Lessee's indebtedness to Lessor.

- 4 -

IN THE EVENT OF ANY CONFLICT BETWEEN THE PROVISIONS OF THE MASTER AGREEMENT AND THIS SCHEDULE, THIS SCHEDULE SHALL PREVAIL.

THIS SCHEDULE TOGETHER WITH THE MASTER AGREEMENT, ANY ADDITIONAL PROVISION(S) REFERRED TO IN HEREIN OR THEREIN, AND ANY ADDENDA, ANNEXES, EXHIBITS OR RIDERS EXECUTED BY LESSOR AND LESSEE WHICH REFERENCES THIS SCHEDULE CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT.

[*Remainder of this page intentionally left blank, signatures appear on next page.*]

LESSOR: **Peapack Capital Corporation**

By: _____

Name: _____

Title: _____

LESSEE: **YRC Inc. (d/b/a YRC Freight)**

By: _____

Name: Mark D. Boehmer

Title: Vice President

This original executed counterpart of this Schedule is hereby marked as "Original" and constitutes the chattel paper of this Schedule. Any executed counterparts of this Schedule that do not include the immediately preceding sentence do not constitute chattel paper.

*Signature page to Schedule No. 4*

EXHIBIT A TO SCHEDULE NO. 4

DESCRIPTION OF EQUIPMENT SUBJECT TO SCHEDULE NO. 4

Forty (40) 2019 Hyundai Translead 40' Composite Dry Van Trailers with lift gate, more particularly described as follows:

| VIN | YRC Unit # | Purchase Price | FET | Total |
|---|---|---|---|---|
| 3H3V401C1KT797001 | 821434 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C3KT797002 | 821435 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C5KT797003 | 821436 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C7KT797004 | 821437 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C9KT797005 | 821438 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C0KT797006 | 821439 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C2KT797007 | 821440 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C4KT797008 | 821441 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C6KT797009 | 821442 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C2KT797010 | 821443 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C4KT797011 | 821444 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C6KT797012 | 821445 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C8KT797013 | 821446 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401CXKT797014 | 821447 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C1KT797015 | 821448 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C3KT797016 | 821449 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C5KT797017 | 821450 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C7KT797018 | 821451 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C9KT797019 | 821452 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C5KT797020 | 821453 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C7KT797021 | 821474 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C9KT797022 | 821475 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C0KT797023 | 821476 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C2KT797024 | 821477 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C4KT797025 | 821478 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C6KT797026 | 821479 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C8KT797027 | 821480 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401CXKT797028 | 821481 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C1KT797029 | 821482 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C8KT797030 | 821483 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401CXKT797031 | 821484 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C1KT797032 | 821485 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C3KT797033 | 821486 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C5KT797034 | 821487 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C7KT797035 | 821488 | 27,484.83 | 3,328.18 | 31,063.01 |

| VIN | YRC Unit # | Purchase Price | FET | Total |
|---|---|---|---|---|
| 3H3V401C9KT797036 | 821489 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C0KT797037 | 821490 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C2KT797038 | 821491 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C4KT797039 | 821492 | 27,484.83 | 3,328.18 | 31,063.01 |
| 3H3V401C0KT797040 | 821493 | 27,484.83 | 3,328.18 | 31,063.01 |
| | | | TOTAL | $1,242,520.38 |

A-2

EXHIBIT B TO SCHEDULE NO. 4

STIPULATED LOSS VALUE TABLE TO SCHEDULE NO. 4

| Base Monthly Rental Payment Number | SLV Percentage | Base Monthly Rental Payment Number | SLV Percentage | Base Monthly Rental Payment Number | SLV Percentage |
|---|---|---|---|---|---|
| 1 | 104.06 | 21 | 83.38 | 41 | 61.62 |
| 2 | 103.06 | 22 | 82.32 | 42 | 60.51 |
| 3 | 102.05 | 23 | 81.26 | 43 | 59.39 |
| 4 | 101.04 | 24 | 80.19 | 44 | 58.27 |
| 5 | 100.02 | 25 | 79.12 | 45 | 57.14 |
| 6 | 99.00 | 26 | 78.05 | 46 | 56.01 |
| 7 | 97.97 | 27 | 76.97 | 47 | 54.88 |
| 8 | 96.95 | 28 | 75.89 | 48 | 53.75 |
| 9 | 95.92 | 29 | 74.81 | 49 | 52.61 |
| 10 | 94.89 | 30 | 73.73 | 50 | 51.47 |
| 11 | 93.86 | 31 | 72.64 | 51 | 50.33 |
| 12 | 92.82 | 32 | 71.55 | 52 | 49.18 |
| 13 | 91.78 | 33 | 70.46 | 53 | 48.03 |
| 14 | 90.74 | 34 | 69.36 | 54 | 46.89 |
| 15 | 89.70 | 35 | 68.27 | 55 | 45.74 |
| 16 | 88.65 | 36 | 67.17 | 56 | 44.59 |
| 17 | 87.60 | 37 | 66.06 | 57 | 43.45 |
| 18 | 86.55 | 38 | 64.96 | 58 | 42.30 |
| 19 | 85.50 | 39 | 63.85 | 59 | 41.15 |
| 20 | 84.44 | 40 | 62.74 | 60 | 40.00 |

RIDER 1 TO SCHEDULE NO. 4

(d/b/a YRC FREIGHT)
x

TRAC Provisions

This Rider No. 1 is attached to and made a part of Schedule No. 4, dated as of November 13, 2018 (the "Schedule") between Peapack Capital Corporation ("Lessor") and YRC Inc. ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement, dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Lease and the Schedule.

TRAC Purchase Option

(1)     The "TRAC Percentage" is defined as 40% of the Total Equipment Cost. Lessee and Lessor agree that the TRAC Percentage is a reasonable estimate of the fair market value of the Equipment at the end of the Term. Provided that no Event of Default has occurred and is continuing, Lessee may elect, by giving Lessor not less than ninety (90) days prior written notice (which notice shall be irrevocable without Lessor' written consent), to purchase all, but not less than all, of the Equipment described in this Schedule (hereinafter for purposes of this Section only, the "TRAC Equipment") for an amount equal to the TRAC Percentage multiplied by the Total Equipment Cost in which case all TRAC Equipment shall be sold to Lessee on an AS IS, WHERE IS BASIS, without recourse or warranty (except that Lessor has whatever title (if any) to the Equipment that was conveyed to it by the Supplier free of any security interest arising solely by reason of a claim against Lessor that Lessee is not responsible to remove pursuant to the Lease).

(2)     Unless Lessee has previously notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessee shall provide Lessor with written notice, not less than ninety (90) days before the expiration of the Base Term (which notice shall be irrevocable without Lessor's written consent), of Lessee's intent to return the TRAC Equipment (the "End of Term Notice"). If Lessor does not receive the End of Term Notice within the applicable time frame, the Base Term shall be automatically extended (the "Extension Term") without any notice or action on the part of Lessor for three additional months (at the Base Monthly Rental amount) and shall further be extended until the end of the second full month after the month during which the End of Term Notice is received by Lessor. Notwithstanding the foregoing, unless Lessee has previously duly notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessor shall have the right (but not the obligation), at any time during the final month of the Base Term or at any time during the Extension Term to terminate this Agreement, in which event Lessee shall be obligated to return the Equipment at the end of the then-current month (the "Extension Termination Date"). Lessee's failure to return any Item by the Extension Termination Date in the manner and condition required by the Lease, for any reason whatsoever, shall constitute an immediate Event of Default under the Lease notwithstanding the making of any payment or the rendering of other performance hereunder. Upon return of the Equipment at the end of any Extension Term, the terms of subsection (3) below shall be applicable and the TRAC Percentage shall remain unchanged.

(3)     Unless Lessee purchases all of the TRAC Equipment in accordance with the terms hereof, Lessee shall return to Lessor all of the TRAC Equipment, pursuant to the return provisions

of this Lease. Lessee's failure to return the TRAC Equipment as required hereunder shall constitute an Event of Default hereunder and the Base Term shall, at Lessor' election, be extended on a month-to-month basis. Upon return of the TRAC Equipment and provided that no Event of Default has occurred and is continuing, Lessor shall sell or otherwise dispose of the TRAC Equipment in a commercially reasonable manner. If the amount received by Lessor for the TRAC Equipment in such sale or disposition exceeds the sum of the TRAC Percentage multiplied by the Total Equipment Cost, plus the amounts remaining due under this Agreement and all costs of sale, any such excess shall be returned by Lessor to Lessee as a rental adjustment. If the amount received by Lessor for the TRAC Equipment in such sale or disposition (after deduction of any amounts remaining due under this Agreement and all costs of sale) is less than the TRAC Percentage multiplied by The Total Equipment Cost, then any such deficiency shall be paid by Lessee to Lessor as a terminal rental adjustment provided however that in no event shall Lessee be obligated to pay to Lessor, as a terminal rental adjustment under the TRAC provision, any such amount in excess of 27.1577% of the Total Equipment Cost of the TRAC Equipment. Lessee agrees to facilitate any such sale or disposition of the TRAC Equipment and hereby grants to Lessor, its agents or employees, the right to enter Lessee's premises for the purpose of selling or otherwise disposing of the TRAC Equipment. Lessee shall reimburse Lessor for all costs of such sale or disposition, including all taxes, advertising costs or other commissions or expenses charged against the sales price. Lessee shall execute Lessor's approved form TRAC certificate at or before closing.

RIDER 2 TO SCHEDULE NO. ~~14~~ x ~~MDB~~

### Tax Indemnification

This Rider No. 2 is attached to and incorporated into Schedule No. 4 dated as of November 13, 2018 (the "Schedule") between Peapack Capital Corporation (the "Lessor") and YRC Inc. (d/b/a YRC Freight) ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement dated August 25, 2017, between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Schedule or the Master Agreement, as applicable. x MDB

    1.    Lessee represents and warrants that: (a) it believes that it is reasonable to estimate that the useful life of the Equipment exceeds the lease term (including any interim and fixed rental renewal periods) by the greater of one (1) year or twenty (20) percent of such estimated useful life, and that said Equipment will have a value at the end of the lease term, including any fixed rate renewal period, of at least twenty percent (20%) of the original equipment cost of the Equipment, without including in such value any increase or decrease for inflation or deflation during the original lease term; (b) the Equipment is, and will be used by Lessee so as to remain, property eligible for the MACRS Deductions (as defined below); (c) each item of Equipment constitutes "qualified property" pursuant to Section 168(k) of the Internal Revenue Code of 1986, as now or hereafter amended (the "Code"), (d) the Equipment shall be treated as originally placed in service not earlier than the date of the execution and delivery of the Schedule, or in the event the transaction is a sale-leaseback transaction, Lessee shall not have placed in service the Equipment subject to the Schedule at any time prior to three (3) months before the execution and delivery of the Schedule.

    2.    If, as a result of any Event of Default, act or omission of Lessee or breach of any representation or warranty of Lessee either (a) Lessor in computing its taxable income or liability for tax, shall lose, or shall not have, or shall lose the right to claim or there shall be disallowed or recaptured for Federal and/or state income tax purposes, in whole or in part, the benefit to Lessor of MACRS Deductions, or (b) Lessor shall become liable for additional tax (including, without limitation, as a result of Lessee having added an attachment or made an alteration to the Equipment, including (without limitation) any such attachment or alteration which would increase the productivity or capability of the Equipment so as to violate the provisions of Rev. Proc. 2001-28, 2001-1 C.B. 1156 (as it may hereafter be modified or superseded) (hereinafter referred to as a "Loss")), then Lessee shall pay Lessor the Tax Indemnification Payment as additional rent and Lessor shall revise the table of Stipulated Loss Values attached to the Schedule as Exhibit B to reflect the Loss.

    3.    As used herein: (a) "MACRS Deductions" shall mean the deductions under Section 167 of the Code, determined in accordance with the modified Accelerated Cost Recovery System with respect to the original equipment cost of any Item of the Equipment using the accelerated method set forth in Section 168(b)(1) of the Code; (b) "Lessor" shall be deemed to include the consolidated Federal taxpayer group of which Lessor is a member; and (c) "Tax Indemnification Payment" shall mean such amount as, after consideration of (i) all taxes required to be paid by Lessor in respect of the receipt thereof under the laws of any governmental or taxing authority in the United States, and (ii) the amount of any interest or penalty which may be payable by Lessor

in connection with the Loss, shall be required to cause Lessor's after-tax net return (the "Net Return") to be equal to, but no greater than, the Net Return computed consistently with current tax laws (and with the assumption that Lessor is taxed at the highest marginal Federal and state tax rates) as of the date of the Schedule that would have been available to Lessor had the Loss not occurred.

4.      Lessor shall be responsible for, and shall not be entitled to a Tax Indemnification Payment by Lessee on account of, any Loss arising solely as a direct result of the occurrence of any one or more of the following events: (a) the failure of Lessor to timely and properly claim MACRS Deductions, as applicable, in the tax return of Lessor other than as a result of changes in the Code or applicable regulations unless in the reasonable opinion of Lessor's tax counsel there is no basis for such claim; (b) the failure of Lessor to have sufficient taxable income before application of the MACRS Deductions to offset the full amount of such MACRS Deductions other than as a result of changes in the Code or applicable regulations; (c) any event which by the terms of the Lease requires payment by Lessee of the Stipulated Loss Value if such payment is thereafter actually made to Lessor, to the extent that such payment reimburses Lessor for amounts otherwise payable by Lessee pursuant hereto; or (d) a disqualifying disposition due to sale of any item of the Equipment or the Lease by Lessor prior to a Default.

5.      Lessor promptly shall notify Lessee in writing of such Loss and Lessee shall pay to Lessor the Tax Indemnification Payment within thirty (30) days of such notice. For these purposes, a Loss shall occur upon the earliest of: (a) the happening of any event (such as disposition or change in use of any item of the Equipment) which will cause such Loss; (b) the payment by Lessor to the Internal Revenue Service or state taxing authority of the tax increase (including an increase in estimated taxes) resulting from such Loss; (c) the date on which the Loss is realized by Lessor; or (d) the adjustment of the tax return of Lessor to reflect such Loss.

6.      The obligations of Lessee under this Rider No. 2, which accrue during the term of the Schedule, shall survive the expiration or termination of the Schedule.

3710107.3

TRAC Certification *(d/b/a YRC FREIGHT)* x _NDB_ 

This Certification is provided by YRC Inc. ("**Lessee**") in connection with that certain Schedule No. 4 dated as of November 13, 2018 (the "**Schedule**"), between Lessee and Peapack Capital Corporation ("**Lessor**").

The parties intend and agree that the Schedule constitutes a "qualified motor vehicle operating agreement" within the meaning of Section 7701(h) of the Internal Revenue Code of 1986, as now or hereafter amended, and this Certification is required to be provided pursuant to that Section.

Lessee hereby certifies, under penalty of perjury, that it intends that more than fifty (50) percent of the use of the Equipment (as such term is defined in the Lease) is to be in a trade or business of the Lessee.

Lessee acknowledges that it has been advised that it will not be treated as the owner of the Equipment for Federal income tax purposes.

IN WITNESS WHEREOF, Lessee has caused this Certification to be duly executed as of November 13, 2018.

**YRC INC.** *(d/b/a YRC FREIGHT)* x _MB_
**LESSEE**

By: _____

Mark D. Boehmer, Vice President

3714187.1

# YRC Schedule 4

| Unit # | Year | Make | Model | VIN | Perfected Title Rcvd | Title State | Base Price | LA Basin | FET | Total Price |
|--------|------|------|-------|-----|----------------------|-------------|------------|----------|-----|-------------|
| 821434 | 2019 | Hyundai | 40' with liftgate | 3H3V401C1KT797001 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821435 | 2019 | Hyundai | 40' with liftgate | 3H3V401C3KT797002 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821436 | 2019 | Hyundai | 40' with liftgate | 3H3V401C5KT797003 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821437 | 2019 | Hyundai | 40' with liftgate | 3H3V401C7KT797004 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821438 | 2019 | Hyundai | 40' with liftgate | 3H3V401C9KT797005 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821439 | 2019 | Hyundai | 40' with liftgate | 3H3V401C0KT797006 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821440 | 2019 | Hyundai | 40' with liftgate | 3H3V401C2KT797007 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821441 | 2019 | Hyundai | 40' with liftgate | 3H3V401C4KT797008 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821442 | 2019 | Hyundai | 40' with liftgate | 3H3V401C6KT797009 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821443 | 2019 | Hyundai | 40' with liftgate | 3H3V401C2KT797010 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821444 | 2019 | Hyundai | 40' with liftgate | 3H3V401C4KT797011 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821445 | 2019 | Hyundai | 40' with liftgate | 3H3V401C6KT797012 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821446 | 2019 | Hyundai | 40' with liftgate | 3H3V401C8KT797013 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821447 | 2019 | Hyundai | 40' with liftgate | 3H3V401CXKT797014 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821448 | 2019 | Hyundai | 40' with liftgate | 3H3V401C1KT797015 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821449 | 2019 | Hyundai | 40' with liftgate | 3H3V401C3KT797016 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821450 | 2019 | Hyundai | 40' with liftgate | 3H3V401C5KT797017 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821451 | 2019 | Hyundai | 40' with liftgate | 3H3V401C7KT797018 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821452 | 2019 | Hyundai | 40' with liftgate | 3H3V401C9KT797019 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821453 | 2019 | Hyundai | 40' with liftgate | 3H3V401C5KT797020 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821474 | 2019 | Hyundai | 40' with liftgate | 3H3V401C7KT797021 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821475 | 2019 | Hyundai | 40' with liftgate | 3H3V401C9KT797022 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821476 | 2019 | Hyundai | 40' with liftgate | 3H3V401C0KT797023 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821477 | 2019 | Hyundai | 40' with liftgate | 3H3V401C2KT797024 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821478 | 2019 | Hyundai | 40' with liftgate | 3H3V401C4KT797025 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821479 | 2019 | Hyundai | 40' with liftgate | 3H3V401C6KT797026 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821480 | 2019 | Hyundai | 40' with liftgate | 3H3V401C8KT797027 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821481 | 2019 | Hyundai | 40' with liftgate | 3H3V401CXKT797028 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821482 | 2019 | Hyundai | 40' with liftgate | 3H3V401C1KT797029 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821483 | 2019 | Hyundai | 40' with liftgate | 3H3V401C8KT797030 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821484 | 2019 | Hyundai | 40' with liftgate | 3H3V401CXKT797031 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821485 | 2019 | Hyundai | 40' with liftgate | 3H3V401C1KT797032 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821486 | 2019 | Hyundai | 40' with liftgate | 3H3V401C3KT797033 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821487 | 2019 | Hyundai | 40' with liftgate | 3H3V401C5KT797034 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821488 | 2019 | Hyundai | 40' with liftgate | 3H3V401C7KT797035 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821489 | 2019 | Hyundai | 40' with liftgate | 3H3V401C9KT797036 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821490 | 2019 | Hyundai | 40' with liftgate | 3H3V401C0KT797037 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821491 | 2019 | Hyundai | 40' with liftgate | 3H3V401C2KT797038 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821492 | 2019 | Hyundai | 40' with liftgate | 3H3V401C4KT797039 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| 821493 | 2019 | Hyundai | 40' with liftgate | 3H3V401C0KT797040 | 11/21/18 PT | IN | 27,484.83 | 250.00 | 3,328.18 | 31,063.01 |
| | | | | | | | 1,099,393.20 | 10,000.00 | 133,127.18 | 1,242,520.38 |

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C1KT797001 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

| OWNER(S) NAME | ODOMETER/BRAND | BRAND(S) |
|---|---|---|
| YRC INC<br>10990 ROE AVE<br>LEAWOOD KS 662111213 | EXEMPT/EXEMPT | |



**MAILING ADDRESS**    000156

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

---

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334802

**TITLE NUMBER**

18504219000319

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

# INDIANA CERTIFICATE OF TITLE




# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE

| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C3KT797002 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**

**MAILING ADDRESS**   000157

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334801

**TITLE NUMBER**

18504219000320

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**




# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE

| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|------|-----------|-----------|------|-----|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C5KT797003 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|------------|-------------------|---------------|------------|----------------|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**   **ODOMETER/BRAND**   **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213



EXEMPT/EXEMPT

**MAILING ADDRESS**   000158   **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334800

**TITLE NUMBER**
18504219000321

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C7KT797004 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**   **ODOMETER/BRAND**   **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT

**MAILING ADDRESS**   000159   **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334799

**TITLE NUMBER**

18504219000322

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C9KT797005 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**           **ODOMETER/BRAND**          **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213



EXEMPT/EXEMPT

**MAILING ADDRESS**           **ADDITIONAL OWNER(S)**
000160

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

_____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

_____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

_____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334798

**TITLE NUMBER**

18504219000323

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

## INDIANA CERTIFICATE OF TITLE




# STATE OF INDIANA

## CERTIFICATE OF TITLE FOR A VEHICLE

| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|------|-----------|-----------|------|-----|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C0KT797006 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|-----------|-------------------|---------------|------------|----------------|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**                    **ODOMETER/BRAND**          **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**MAILING ADDRESS**          **ADDITIONAL OWNER(S)**
000161

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334797

**TITLE NUMBER**

18504219000324

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

# INDIANA CERTIFICATE OF TITLE

# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE




| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C2KT797007 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**  ODOMETER/BRAND  BRAND(S)

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213



EXEMPT/EXEMPT

**MAILING ADDRESS**  000162  **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334796

**TITLE NUMBER**

18504219000325

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C4KT797008 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**   **ODOMETER/BRAND**   **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**   000163   **ADDITIONAL OWNER(S)**
PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334795

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**
18504219000326

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C6KT797009 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**



**MAILING ADDRESS**
000164

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME:     POSITION:

DATE:

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME:     POSITION:

DATE:

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME:     POSITION:

DATE:

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334794

**TITLE NUMBER**

18504219000327

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS



**INDIANA CERTIFICATE OF TITLE**

# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C2KT797010 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**



**MAILING ADDRESS**
000165

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____
DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____
DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334793

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

18504219000328

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS**

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C4KT797011 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**   **ODOMETER/BRAND**   **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**    000166    **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

---

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334792

**TITLE NUMBER**
18504219000329

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C6KT797012 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**



**MAILING ADDRESS**  000167

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334791

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

18504219000330

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS**

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C8KT797013 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**      **ODOMETER/BRAND**      **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**   000168      **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**    **FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

PEAPACK CAPITOL CORPORATION    X _____
500 HILLS DR STE 300
BEDMINSTER NJ 079211538    **PRINTED NAME:**    **POSITION:**

   **DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**    **SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**    **POSITION:**
**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**    **THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**    **POSITION:**
**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner
State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**
18504219000331

G5334790

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS**

## INDIANA CERTIFICATE OF TITLE



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401CXKT797014 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**



**MAILING ADDRESS** 000170

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:**

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:**

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:**

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

### INDIANA BUREAU OF MOTOR VEHICLES

**Peter L. Lacy, Commissioner**

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334788

**TITLE NUMBER**

18504219000333

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C1KT797015 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**  |  **ODOMETER/BRAND**  |  **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

ODOMETER/BRAND
EXEMPT/EXEMPT



**MAILING ADDRESS** 000171  |  **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____  POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334787

**TITLE NUMBER**
18504219000334

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C3KT797016 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**  **ODOMETER/BRAND**  **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**
000172

**ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____  **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____  **POSITION:** _____

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____  **POSITION:** _____

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**
18504219000335

G5334786

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA

## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C5KT797017 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**          **ODOMETER/BRAND**          **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**   000173          **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____  **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____  **POSITION:** _____

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____  **POSITION:** _____

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334785

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

18504219000336

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**




# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE

| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C7KT797018 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**   **ODOMETER/BRAND**   **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**   000174   **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

X _____

**PRINTED NAME:**   **POSITION:**

**DATE:**

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**   **POSITION:**
**DATE:**

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**   **POSITION:**
**DATE:**

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**
18504219000337

G5334784

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

# INDIANA CERTIFICATE OF TITLE




# STATE OF INDIANA

## CERTIFICATE OF TITLE FOR A VEHICLE

| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C9KT797019 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**          **ODOMETER/BRAND**          **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**          **ADDITIONAL OWNER(S)**
000175

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____     POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____     POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____     POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334783

**TITLE NUMBER**

18504219000338

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

## INDIANA CERTIFICATE OF TITLE




# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE

| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C5KT797020 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME** | **ODOMETER/BRAND** | **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS** 000176 | **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

---

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334782

**TITLE NUMBER**

18504219000339

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C7KT797021 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**



**MAILING ADDRESS**  000177

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**



**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334781

**TITLE NUMBER**

18504219000340

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C9KT797022 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**          **ODOMETER/BRAND**          **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**   000178          **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____   **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____   **POSITION:** _____

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____   **POSITION:** _____

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334365

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**
18504219000341

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

# INDIANA CERTIFICATE OF TITLE



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C0KT797023 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**      **ODOMETER/BRAND**      **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**  000179      **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334364

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

18504219000342

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C2KT797024 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**   **ODOMETER/BRAND**   **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**   000180   **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538



**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

X _____

**PRINTED NAME:**   **POSITION:**

**DATE:**

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**   **POSITION:**

**DATE:**

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**   **POSITION:**

**DATE:**

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

### INDIANA BUREAU OF MOTOR VEHICLES

**Peter L. Lacy, Commissioner**

G5334363

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**
18504219000343

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C4KT797025 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**

**MAILING ADDRESS**   000181

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334362

**TITLE NUMBER**

18504219000344

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA

## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C6KT797026 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**  **ODOMETER/BRAND**  **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**  000182  **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____  **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____  **POSITION:** _____
**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____  **POSITION:** _____

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334361       State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

18504219000345

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C8KT797027 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

| OWNER(S) NAME | ODOMETER/BRAND | BRAND(S) |
|---|---|---|
| | EXEMPT/EXEMPT | |

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213



**MAILING ADDRESS**  DD01183

**ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

---

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

### INDIANA BUREAU OF MOTOR VEHICLES

**Peter L. Lacy, Commissioner**

G5334360

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

18504219000346

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS**

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA

## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401CXKT797028 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

| OWNER(S) NAME | ODOMETER/BRAND | BRAND(S) |
|---|---|---|
| YRC INC<br>10990 ROE AVE<br>LEAWOOD KS 662111213 | EXEMPT/EXEMPT | |



**MAILING ADDRESS**   000184

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

---

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334359

**TITLE NUMBER**

18504219000347

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**




# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE

| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C1KT797029 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**



**MAILING ADDRESS** 000185

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME:              POSITION:

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME:              POSITION:

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME:              POSITION:

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334358

**TITLE NUMBER**

18504219000348

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA

## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C8KT797030 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**  **ODOMETER/BRAND**  **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213



EXEMPT/EXEMPT

**MAILING ADDRESS**  0001&b  **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

X _____

**PRINTED NAME:** _____   **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____   **POSITION:** _____

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**   **THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____   **POSITION:** _____

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334357

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

18504219000349

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401CXKT797031 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

| OWNER(S) NAME | ODOMETER/BRAND | BRAND(S) |
|---|---|---|
| YRC INC<br>10990 ROE AVE<br>LEAWOOD KS 662111213 | EXEMPT/EXEMPT | |

**MAILING ADDRESS**    000187

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME:            POSITION:

DATE:

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME:            POSITION:

DATE:

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME:            POSITION:

DATE:

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334356

**TITLE NUMBER**

18504219000350

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA

## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C1KT797032 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**      **ODOMETER/BRAND**      **BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

EXEMPT/EXEMPT



**MAILING ADDRESS**   000188      **ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538



---

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**    **FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

X _____

**PRINTED NAME:**      **POSITION:**

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**    **SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**      **POSITION:**

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**    **THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**      **POSITION:**

**DATE:** _____

---

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

### INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334355

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

18504219000351

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

## INDIANA CERTIFICATE OF TITLE



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C3KT797033 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**



**MAILING ADDRESS** 000189

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334354

**TITLE NUMBER**

18504219000352

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**




# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE

| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C5KT797034 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**



**MAILING ADDRESS** 000190

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334353

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

18504219000353

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C7KT797035 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**

**MAILING ADDRESS** 000191

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334352

**TITLE NUMBER**

18504219000354

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C9KT797036 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**

**MAILING ADDRESS**          000192

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**

**DATE:**

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**
**DATE:**

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**          **POSITION:**
**DATE:**

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

### INDIANA BUREAU OF MOTOR VEHICLES

**Peter L. Lacy, Commissioner**

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334351

**TITLE NUMBER**

18504219000355

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C0KT797037 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213



**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**

**MAILING ADDRESS**

000193

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:** _____ **POSITION:** _____

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334350

**TITLE NUMBER**

18504219000356

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

# INDIANA CERTIFICATE OF TITLE



# STATE OF INDIANA

## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C2KT797038 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213



**ODOMETER/BRAND**

EXEMPT/EXEMPT

**BRAND(S)**

**MAILING ADDRESS**
000155
PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**ADDITIONAL OWNER(S)**

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**    **POSITION:**

**DATE:** _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**    **POSITION:**

**DATE:** _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

**PRINTED NAME:**    **POSITION:**

**DATE:** _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334803

**TITLE NUMBER**

18504219000318

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

# INDIANA CERTIFICATE OF TITLE



# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE



| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C4KT797039 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

| OWNER(S) NAME | ODOMETER/BRAND | BRAND(S) |
|---|---|---|
| YRC INC | EXEMPT/EXEMPT | |

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213



| MAILING ADDRESS | ADDITIONAL OWNER(S) |
|---|---|

000194

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____   POSITION: _____

DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

G5334349

**TITLE NUMBER**

18504219000357

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

**INDIANA CERTIFICATE OF TITLE**




# STATE OF INDIANA
## CERTIFICATE OF TITLE FOR A VEHICLE

| MAKE | MODEL NAME | BODY TYPE | YEAR | VIN |
|---|---|---|---|---|
| HYUNDAI TRANSLEAD | UNKNOWN | SE | 2019 | 3H3V401C0KT797040 |

| TITLE TYPE | FORMER TITLE/STATE | PURCHASE DATE | ISSUE DATE | USAGE TAX PAID |
|---|---|---|---|---|
| NORMAL | C OF O/IN | 09/19/18 | 11/01/18 | $0.00 |

**OWNER(S) NAME**　　　　　　　**ODOMETER/BRAND**　　　　　　**BRAND(S)**

YRC INC
10990 ROE AVE
LEAWOOD KS 662111213

ODOMETER/BRAND: EXEMPT/EXEMPT

**MAILING ADDRESS**　　000169　　　**ADDITIONAL OWNER(S)**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

PEAPACK CAPITOL CORPORATION
500 HILLS DR STE 300
BEDMINSTER NJ 079211538

**FIRST LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____

DATE: _____

**SECOND HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**SECOND LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____
DATE: _____

**THIRD HOLDER OF LIEN, MORTGAGE OR ENCUMBRANCE**

**THIRD LIEN, MORTGAGE OR ENCUMBRANCE RELEASED BY:**

X _____

PRINTED NAME: _____ POSITION: _____
DATE: _____

The Commissioner of the Bureau of Motor Vehicles, pursuant to the laws of the State of Indiana, certifies that the vehicle/watercraft has been duly titled and the owner of the described vehicle/watercraft is subject to the liens set forth.

## INDIANA BUREAU OF MOTOR VEHICLES

### Peter L. Lacy, Commissioner

G5334789

State Form 9697 (R10 / 1-17)
Approved by State Board of Accounts, 2016

**TITLE NUMBER**

18504219000332

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS

# EXHIBIT E

SCHEDULE NO. 5

This Schedule No. 5 dated December 27, 2018 (the "Schedule") between Peapack Capital Corporation (the "Lessor") and USF Reddaway Inc. (the "Lessee") incorporates by reference the terms and conditions of Master Lease Agreement dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement") and constitutes a separate lease between Lessor and Lessee. The Schedule and Master Agreement as incorporated herein are hereinafter referred to collectively as the "Lease". All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Agreement.

1. <u>Equipment:</u>  See Exhibit A attached hereto.

2. <u>Equipment Delivery Location (or Titling Jurisdiction for Vehicles (defined below) subject to certificates of title):</u>  The titling jurisdiction is Washington. The principal garaging location is: 7720 SW Mohawk St., Bldg. H, Tualatin, OR 97062.

3. <u>Total Equipment Cost:</u>  $1,100,600.50

4. <u>Base Term:</u>  Sixty (60) Months

5. <u>Base Term Commencement Date:</u>  December 27, 2018

6. <u>Base Term End Date:</u>  December 27, 2023

7. <u>Due Dates of Base Monthly Rental Payments:</u>  The 27th day of each month, commencing with January 27, 2019

8. <u>Date of Last Base Monthly Rental Payment:</u>  December 27, 2023

9. <u>Base Monthly Rental:</u>  $13,884.82 (plus applicable sales/use tax)

10. <u>Base Monthly Rent Paid in Advance or Arrears:</u>  Arrears

11. <u>Supplier:</u>  American Trailer and Storage, Inc.

12. <u>Equipment Return Location:</u>  Anywhere in the continental United States as determined by Lessor.

13. <u>Stipulated Loss Value:</u>  See attached Exhibit B to this Schedule. Stipulated Loss Value means, with respect to any Item, the product of the Total Equipment Cost of such Item <u>times</u> the percentage applicable to the due date for the Base Monthly Rental payment for which the Stipulated Loss Value is being calculated, as set forth on Exhibit B attached hereto, except that following the expiration of the Base Term, the applicable percentage shall be the last percentage set forth on Exhibit B attached hereto. For the avoidance of doubt, Stipulated Loss Values are in addition to any unpaid Base Monthly Rental payments due on or prior to the same day.

14. <u>Special Terms:</u>

    a. <u>Guaranty.</u>  Notwithstanding anything to the contrary herein, the parties acknowledge

and agree that this Lease is guaranteed by YRC Worldwide Inc.

b.  Titled Equipment: The Equipment contains one or more titled vehicles (individually, a "Vehicle" and collectively, the "Vehicles").   Each Vehicle shall be used predominantly in the United States in Lessee's business in accordance with all applicable governmental and insurer titling requirements and limitations. Title to each Vehicle shall at all times remain in Lessor, or Lessor's Assignee(s) as owner or, if permitted under the applicable vehicle titling statutes, as lienholder. Lessee hereby grants to Lessor an irrevocable power of attorney coupled with an interest in Lessee's name (a "Power of Attorney"), to apply for a certificate of title for any Vehicle that is required to be titled under the laws of any jurisdiction where the Vehicle is or may be used and/or to transfer title thereto upon assignment by Lessor to an Assignee or upon the exercise by Lessor of its remedies upon an Event of Default by Lessee under the Lease. In furtherance of such grant, Lessee shall provide a written Power of Attorney, in form and substance satisfactory to Lessor, upon Lessor's request. If Lessee fails to perform or comply with any of its agreements with respect to titling of Vehicles, Lessor may perform or comply with such agreements in its own name or in Lessee's name as attorney-in-fact and the amount of any payments and expenses of Lessor incurred in connection with such performance or compliance, together with interest thereon at the rate of 1% per month from the date Lessor made such payments or incurred such expenses until payment is received by Lessor, or if such rate shall exceed the maximum rate of interest allowed by law, then at such maximum rate, shall be deemed rent payable by Lessee upon demand.

Notwithstanding anything contrary contained in the Master Agreement, the following provisions shall apply to each Vehicle:

1)  Lessee shall, at Lessee's own expense, register, title and license each Vehicle in the manner prescribed by Lessor as required by the applicable government or regulatory agency(ies).   Lessee will do whatever may be necessary to have a statement of the interest of Lessor or any Assignee of Lessor in any Vehicle noted on any certificate of title relating to any Vehicle and will deliver said certificate to Lessor. In event Lessor registers, titles and/or licenses any Vehicle, Lessee shall immediately reimburse Lessor for all expenses relating thereto.

Lessee shall pay or provide for payment of all operating expenses of all Vehicles, including without limitation, gasoline, oil, anti-freeze, other fluids, servicing, repairs, storage, towing and fines.

2)  Lessee shall require any operator of the vehicle to be properly licensed, trained and able to perform the functions necessary for safe operation. Lessee hereby covenants that it shall not permit its employees, representatives or agents to use any Vehicle for illegal purposes, including, without limitation, the illegal transportation of controlled substances, firearms, explosives, or hazardous materials.

3)  Lessee shall be responsible for all fees, traffic summonses, penalties and fines that

- 2 -

may be imposed due to the use of the Vehicle.

4) Lessee shall provide to Lessor any documentation pertaining to any Vehicle as Lessor may, from time to time, reasonably request. Including but not limited to the location, mileage and condition of any or all Vehicles.

c. <u>TRAC Rider</u>: The TRAC provisions described on Rider No. 1 attached hereto are hereby made applicable to and incorporated into this Schedule.

d. <u>Mobile Equipment</u>:  Notwithstanding anything to the contrary in the Master Agreement, Lessor acknowledges that the Equipment is mobile and may be moved to additional locations so long as Lessee keeps the Equipment in its sole possession and control, except that Lessee may store any Item of the Equipment at a customer's location for a limited period of time and in the ordinary course of business, and except when any Item of Equipment is undergoing required repairs. Upon Lessor's request, Lessee shall promptly provide Lessor the then current location of the Equipment.

15. <u>Maintenance and Return Conditions for Vehicles</u>:  Without limiting the obligations of Lessee under the Lease, Lessee shall, at its expense, do the following:

a. Lessee shall ensure that all Vehicles and their operations conform to all applicable local, state, and federal laws, health and safety guidelines.  Upon return, the Vehicles will be complete and operational with all components as originally supplied and will have passed U. S. Department of Transportation or appropriate regulatory agency requirements for operation.  If applicable, an inspection sticker or certificate will be furnished to Lessor verifying compliance with any regulatory requirements.  Lessee shall satisfy all legal and regulatory conditions necessary for Lessor to sell or lease the Vehicles to a third party.  Lessee will keep all licenses and operating certificates required for operation of the Vehicles current during the Lease Term.

b. Upon return, each Vehicle and its components shall meet all of their applicable manufacturer's specifications for performance under full rated loads.  In addition, each Vehicle must be maintained throughout the Lease Term and returned upon the expiration or termination thereof in accordance with all of the following conditions:

i. Tires.  All tires shall be matched on each Vehicle by the same type and tread design, original size, and manufacturer, and have a minimum of 12/32 inch of remaining tread depth. All front tires shall be original casings; rear tires may be either casings or recapped casings.  All tires shall be free of flat or bald spots, cupping, dry rot, cuts and exposed cords.

ii. General Condition.  The Vehicles must be able to pass Federal Highway Administration inspection. The Vehicles shall be structurally sound with no material structural or mechanical damage, in good overall appearance, clean with no missing or damaged parts, ordinary wear and tear excepted. The Vehicles shall be free of any material rust and corrosion.  No glass shall be broken or cracked, no upholstery shall have any cuts or burns and there shall be no physical damage

to exterior or interior materials, other than from normal use, that exceeds $500 in the aggregate to repair and no physical damage from accidents. Upon return, all Vehicles shall be completely de-identified, including but not limited to all commercial logos, advertising, graffiti. Lessee insignia and lettering. The de-identified surfaces shall be repaired and refinished in such a way that the area blends in with the remainder of the item's overall appearance. Manufacturer's identity plates and markings shall not be removed or obscured.

iii.    Documents and Records. Written records of scheduled and other maintenance and repair work done shall be kept, dated, and signed by the appropriate authority. A service history or log will be maintained during the Lease Term, in English, and a copy provided to Lessor upon request during the Lease Term, or at the expiration or other termination (by acceleration or otherwise) of the Lease. All maintenance records, maintenance record jackets, repair jackets, repair orders, license plates, registration certificates, and all other similar documents, in their entirety, must be returned to Lessor.

iv.    Brakes. Brake drums and linings shall not be cracked and shall not exceed manufacturer's recommended wear limits. Brake linings shall have a minimum of 3/8 inch of remaining wear on each lining.

v.    Maintenance.    Lessee shall follow the manufacturer's recommended maintenance and service schedule, including, without limitation, manufacturer's schedule of engine oil change and sampling, to the extent required to validate any warranty, at Lessee's sole cost and expense. Any maintenance or repair work shall comply with the guidelines and procedures as specified by the manufacturers of the Vehicles or each component of the Vehicles. Lessee will use only original manufacturer's approved replacement parts and components in the performance of any maintenance and repair of the Vehicles. Lessee will at all times maintain the Vehicles in good operational condition and appearance, and shall not discriminate in such maintenance between owned or leased Vehicles.

16. Tax Indemnity Rider. The income tax indemnity described on Rider No. 2 attached hereto is hereby incorporated into this Schedule.

All other terms and conditions of the Master Agreement shall remain in full force and effect without change.

The undersigned Lessee acknowledges that this Schedule authorizes the Lessor or its agents or assignee(s) to sign, execute and file on its behalf any and all necessary documents, including UCC financing statements and other filings and recordings, to make public this lease transaction. The parties intend this transaction to be a true lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this Schedule is not a true lease but is in the nature of a sale, consignment, or other transaction, the parties intend and the Lessee hereby grants a continuing security interest in the Equipment from the date of this Schedule to secure the payment of all Lessee's indebtedness to Lessor.

- 4 -

IN THE EVENT OF ANY CONFLICT BETWEEN THE PROVISIONS OF THE MASTER AGREEMENT AND THIS SCHEDULE, THIS SCHEDULE SHALL PREVAIL.

THIS SCHEDULE TOGETHER WITH THE MASTER AGREEMENT, ANY ADDITIONAL PROVISION(S) REFERRED TO IN HEREIN OR THEREIN. AND ANY ADDENDA, ANNEXES, EXHIBITS OR RIDERS EXECUTED BY LESSOR AND LESSEE WHICH REFERENCES THIS SCHEDULE CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT.

*[Remainder of this page intentionally left blank, signatures appear on next page.]*

LESSOR: Peapack Capital Corporation

By: _____

Name: ___ROBERT R. COBLEIGH___

Title: _____PRESIDENT_____

LESSEE: USF Reddaway Inc.

By: _____

Name: Mark D. Boehmer

Title: Vice President

This original executed counterpart of this Schedule is hereby marked as "Original" and constitutes the chattel paper of this Schedule. Any executed counterparts of this Schedule that do not include the immediately preceding sentence do not constitute chattel paper.

EXHIBIT A TO SCHEDULE NO. 5
DESCRIPTION OF EQUIPMENT SUBJECT TO SCHEDULE NO. 5

1.    Fifty (50) 2019 Hyundai Translead 28' HT Composite Dry Van Trailers, more
particularly described as follows:

|     | Vin List: | Unit # | Purchase Price | FET | Total |
|-----|-----------|--------|----------------|-----|-------|
| 1.  | 3H3V281C3KT823201 | 289206 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 2.  | 3H3V281C5KT823202 | 289207 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 3.  | 3H3V281C7KT823203 | 289208 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 4.  | 3H3V281C9KT823204 | 289209 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 5.  | 3H3V281C0KT823205 | 289210 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 6.  | 3H3V281C2KT823206 | 289211 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 7.  | 3H3V281C4KT823207 | 289212 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 8.  | 3H3V281C6KT823208 | 289213 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 9.  | 3H3V281C8KT823209 | 289214 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 10. | 3H3V281C4KT823210 | 289215 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 11. | 3H3V281C6KT823211 | 289216 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 12. | 3H3V281C8KT823212 | 289217 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 13. | 3H3V281CXKT823213 | 289218 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 14. | 3H3V281C1KT823214 | 289219 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 15. | 3H3V281C3KT823215 | 289220 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 16. | 3H3V281C5KT823216 | 289221 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 17. | 3H3V281C7KT823217 | 289222 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 18. | 3H3V281C9KT823218 | 289223 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 19. | 3H3V281C0KT823219 | 289224 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 20. | 3H3V281C7KT823220 | 289225 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 21. | 3H3V281C9KT823221 | 289226 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 22. | 3H3V281C0KT823222 | 289227 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 23. | 3H3V281C2KT823223 | 289228 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 24. | 3H3V281C4KT823224 | 289229 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 25. | 3H3V281C6KT823225 | 289230 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 26. | 3H3V281C8KT823226 | 289231 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 27. | 3H3V281CXKT823227 | 289232 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 28. | 3H3V281C1KT823228 | 289233 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 29. | 3H3V281C3KT823229 | 289234 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 30. | 3H3V281CXKT823230 | 289235 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 31. | 3H3V281C1KT823231 | 289236 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 32. | 3H3V281C3KT823232 | 289237 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 33. | 3H3V281C5KT823233 | 289238 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |
| 34. | 3H3V281C7KT823234 | 289239 | $ 19,653.58 | $ 2,358.43 | $ 22,012.01 |

| 35. | 3H3V281C9KT823235 | 289240 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 36. | 3H3V281C0KT823236 | 289241 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 37. | 3H3V281C2KT823237 | 289242 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 38. | 3H3V281C4KT823238 | 289243 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 39. | 3H3V281C6KT823239 | 289244 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 40. | 3H3V281C2KT823240 | 289245 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 41. | 3H3V281C4KT823241 | 289246 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 42. | 3H3V281C6KT823242 | 289247 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 43. | 3H3V281C8KT823243 | 289248 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 44. | 3H3V281CXKT823244 | 289249 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 45. | 3H3V281C1KT823245 | 289250 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 46. | 3H3V281C3KT823246 | 289251 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 47. | 3H3V281C5KT823247 | 289252 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 48. | 3H3V281C7KT823248 | 289253 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 49. | 3H3V281C9KT823249 | 289254 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |
| 50. | 3H3V281C5KT823250 | 289255 | $ | 19,653.58 | $ | 2,358.43 | $ | 22,012.01 |

A-2

EXHIBIT B TO SCHEDULE NO. 5

STIPULATED LOSS VALUE TABLE TO SCHEDULE NO. 5

| Base Monthly Rental Payment Number | SLV Percentage | Base Monthly Rental Payment Number | SLV Percentage | Base Monthly Rental Payment Number | SLV Percentage |
|---|---|---|---|---|---|
| 1 | 104.06 | 21 | 83.38 | 41 | 61.62 |
| 2 | 103.06 | 22 | 82.32 | 42 | 60.51 |
| 3 | 102.05 | 23 | 81.26 | 43 | 59.39 |
| 4 | 101.04 | 24 | 80.19 | 44 | 58.27 |
| 5 | 100.02 | 25 | 79.12 | 45 | 57.14 |
| 6 | 99.00 | 26 | 78.05 | 46 | 56.01 |
| 7 | 97.97 | 27 | 76.97 | 47 | 54.88 |
| 8 | 96.95 | 28 | 75.89 | 48 | 53.75 |
| 9 | 95.92 | 29 | 74.81 | 49 | 52.61 |
| 10 | 94.89 | 30 | 73.73 | 50 | 51.47 |
| 11 | 93.86 | 31 | 72.64 | 51 | 50.33 |
| 12 | 92.82 | 32 | 71.55 | 52 | 49.18 |
| 13 | 91.78 | 33 | 70.46 | 53 | 48.03 |
| 14 | 90.74 | 34 | 69.36 | 54 | 46.89 |
| 15 | 89.70 | 35 | 68.27 | 55 | 45.74 |
| 16 | 88.65 | 36 | 67.17 | 56 | 44.59 |
| 17 | 87.60 | 37 | 66.06 | 57 | 43.45 |
| 18 | 86.55 | 38 | 64.96 | 58 | 42.30 |
| 19 | 85.50 | 39 | 63.85 | 59 | 41.15 |
| 20 | 84.44 | 40 | 62.74 | 60 | 40.00 |

RIDER 1 TO SCHEDULE NO. 5

<u>TRAC Provisions</u>

This Rider No. 1 is attached to and made a part of Schedule No. 5, dated as of December 27, 2018, (the "Schedule") between Peapack Capital Corporation ("Lessor") and USF Reddaway Inc. ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement, dated August 25, 2017 between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Lease and the Schedule.

<u>TRAC Purchase Option</u>

(1)    The "TRAC Percentage" is defined as 40% of the Total Equipment Cost. Lessee and Lessor agree that the TRAC Percentage is a reasonable estimate of the fair market value of the Equipment at the end of the Term. Provided that no Event of Default has occurred and is continuing, Lessee may elect, by giving Lessor not less than ninety (90) days prior written notice (which notice shall be irrevocable without Lessor's written consent), to purchase all, but not less than all, of the Equipment described in this Schedule (hereinafter for purposes of this Section only, the "TRAC Equipment") for an amount equal to the TRAC Percentage multiplied by the Total Equipment Cost in which case all TRAC Equipment shall be sold to Lessee on an AS IS, WHERE IS BASIS, without recourse or warranty (except that Lessor has whatever title (if any) to the Equipment that was conveyed to it by the Supplier free of any security interest arising solely by reason of a claim against Lessor that Lessee is not responsible to remove pursuant to the Lease).

(2)    Unless Lessee has previously notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessee shall provide Lessor with written notice, not less than ninety (90) days before the expiration of the Base Term (which notice shall be irrevocable without Lessor's written consent), of Lessee's intent to return the TRAC Equipment (the "End of Term Notice"). If Lessor does not receive the End of Term Notice within the applicable time frame, the Base Term shall be automatically extended (the "Extension Term") without any notice or action on the part of Lessor for three additional months (at the Base Monthly Rental amount) and shall further be extended until the end of the second full month after the month during which the End of Term Notice is received by Lessor. Notwithstanding the foregoing, unless Lessee has previously duly notified Lessor of Lessee's election to purchase the TRAC Equipment, Lessor shall have the right (but not the obligation), at any time during the final month of the Base Term or at any time during the Extension Term to terminate this Agreement, in which event Lessee shall be obligated to return the Equipment at the end of the then-current month (the "Extension Termination Date"). Lessee's failure to return any Item by the Extension Termination Date in the manner and condition required by the Lease, for any reason whatsoever, shall constitute an immediate Event of Default under the Lease notwithstanding the making of any payment or the rendering of other performance hereunder. Upon return of the Equipment at the end of any Extension Term, the terms of subsection (3) below shall be applicable and the TRAC Percentage shall remain unchanged.

(3)    Unless Lessee purchases all of the TRAC Equipment in accordance with the terms hereof, Lessee shall return to Lessor all of the TRAC Equipment, pursuant to the return provisions

of this Lease. Lessee's failure to return the TRAC Equipment as required hereunder shall constitute an Event of Default hereunder and the Base Term shall, at Lessor' election, be extended on a month-to-month basis. Upon return of the TRAC Equipment and provided that no Event of Default has occurred and is continuing, Lessor shall sell or otherwise dispose of the TRAC Equipment in a commercially reasonable manner. If the amount received by Lessor for the TRAC Equipment in such sale or disposition exceeds the sum of the TRAC Percentage multiplied by the Total Equipment Cost, plus the amounts remaining due under this Agreement and all costs of sale, any such excess shall be returned by Lessor to Lessee as a rental adjustment. If the amount received by Lessor for the TRAC Equipment in such sale or disposition (after deduction of any amounts remaining due under this Agreement and all costs of sale) is less than the TRAC Percentage multiplied by The Total Equipment Cost, then any such deficiency shall be paid by Lessee to Lessor as a terminal rental adjustment provided however that in no event shall Lessee be obligated to pay to Lessor, as a terminal rental adjustment under the TRAC provision, any such amount in excess of 27.2425% of the Total Equipment Cost of the TRAC Equipment. Lessee agrees to facilitate any such sale or disposition of the TRAC Equipment and hereby grants to Lessor, its agents or employees, the right to enter Lessee's premises for the purpose of selling or otherwise disposing of the TRAC Equipment. Lessee shall reimburse Lessor for all costs of such sale or disposition, including all taxes, advertising costs or other commissions or expenses charged against the sales price. Lessee shall execute Lessor's approved form TRAC certificate at or before closing.

## RIDER 2 TO SCHEDULE NO. 5

### Tax Indemnification

This Rider No. 2 is attached to and incorporated into Schedule No. 5 dated as of December 27, 2018 (the "Schedule") between Peapack Capital Corporation (the "Lessor") and USF Reddaway Inc. ("Lessee"), which is issued pursuant to and incorporates the terms of the Master Lease Agreement dated August 25, 2017, between Lessor and YRC Enterprise Services, Inc. (the "Master Agreement"). All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Schedule or the Master Agreement, as applicable.

      1.     Lessee represents and warrants that: (a) it believes that it is reasonable to estimate that the useful life of the Equipment exceeds the lease term (including any interim and fixed rental renewal periods) by the greater of one (1) year or twenty (20) percent of such estimated useful life, and that said Equipment will have a value at the end of the lease term, including any fixed rate renewal period, of at least twenty percent (20%) of the original equipment cost of the Equipment, without including in such value any increase or decrease for inflation or deflation during the original lease term; (b) the Equipment is, and will be used by Lessee so as to remain, property eligible for the MACRS Deductions (as defined below); (c) each item of Equipment constitutes "qualified property" pursuant to Section 168(k) of the Internal Revenue Code of 1986, as now or hereafter amended (the "Code"), (d) the Equipment shall be treated as originally placed in service not earlier than the date of the execution and delivery of the Schedule, or in the event the transaction is a sale-leaseback transaction, Lessee shall not have placed in service the Equipment subject to the Schedule at any time prior to three (3) months before the execution and delivery of the Schedule.

      2.     If, as a result of any Event of Default, act or omission of Lessee or breach of any representation or warranty of Lessee either (a) Lessor in computing its taxable income or liability for tax, shall lose, or shall not have, or shall lose the right to claim or there shall be disallowed or recaptured for Federal and/or state income tax purposes, in whole or in part, the benefit to Lessor of MACRS Deductions, or (b) Lessor shall become liable for additional tax (including, without limitation, as a result of Lessee having added an attachment or made an alteration to the Equipment, including (without limitation) any such attachment or alteration which would increase the productivity or capability of the Equipment so as to violate the provisions of Rev. Proc. 2001-28, 2001-1 C.B. 1156 (as it may hereafter be modified or superseded) (hereinafter referred to as a "Loss")), then Lessee shall pay Lessor the Tax Indemnification Payment as additional rent and Lessor shall revise the table of Stipulated Loss Values attached to the Schedule as Exhibit B to reflect the Loss.

      3.     As used herein: (a) "MACRS Deductions" shall mean the deductions under Section 167 of the Code, determined in accordance with the modified Accelerated Cost Recovery System with respect to the original equipment cost of any Item of the Equipment using the accelerated method set forth in Section 168(b)(1) of the Code; (b) "Lessor" shall be deemed to include the consolidated Federal taxpayer group of which Lessor is a member; and (c) "Tax Indemnification Payment" shall mean such amount as, after consideration of (i) all taxes required to be paid by Lessor in respect of the receipt thereof under the laws of any governmental or taxing authority in the United States, and (ii) the amount of any interest or penalty which may be payable by Lessor

in connection with the Loss, shall be required to cause Lessor's after-tax net return (the "Net Return") to be equal to, but no greater than, the Net Return computed consistently with current tax laws (and with the assumption that Lessor is taxed at the highest marginal Federal and state tax rates) as of the date of the Schedule that would have been available to Lessor had the Loss not occurred.

      4.      Lessor shall be responsible for, and shall not be entitled to a Tax Indemnification Payment by Lessee on account of, any Loss arising solely as a direct result of the occurrence of any one or more of the following events: (a) the failure of Lessor to timely and properly claim MACRS Deductions, as applicable, in the tax return of Lessor other than as a result of changes in the Code or applicable regulations unless in the reasonable opinion of Lessor's tax counsel there is no basis for such claim; (b) the failure of Lessor to have sufficient taxable income before application of the MACRS Deductions to offset the full amount of such MACRS Deductions other than as a result of changes in the Code or applicable regulations; (c) any event which by the terms of the Lease requires payment by Lessee of the Stipulated Loss Value if such payment is thereafter actually made to Lessor, to the extent that such payment reimburses Lessor for amounts otherwise payable by Lessee pursuant hereto; or (d) a disqualifying disposition due to sale of any item of the Equipment or the Lease by Lessor prior to a Default.

      5.      Lessor promptly shall notify Lessee in writing of such Loss and Lessee shall pay to Lessor the Tax Indemnification Payment within thirty (30) days of such notice. For these purposes, a Loss shall occur upon the earliest of: (a) the happening of any event (such as disposition or change in use of any item of the Equipment) which will cause such Loss; (b) the payment by Lessor to the Internal Revenue Service or state taxing authority of the tax increase (including an increase in estimated taxes) resulting from such Loss; (c) the date on which the Loss is realized by Lessor; or (d) the adjustment of the tax return of Lessor to reflect such Loss.

      6.      The obligations of Lessee under this Rider No. 2, which accrue during the term of the Schedule, shall survive the expiration or termination of the Schedule.

3765061.2

TRAC Certification

This Certification is provided by USF Reddaway Inc. ("**Lessee**") in connection with that certain Schedule No. 5 dated as of December 27. 2018 (the "**Schedule**"). between Lessee and Peapack Capital Corporation ("**Lessor**").

The parties intend and agree that the Schedule constitutes a "qualified motor vehicle operating agreement" within the meaning of Section 7701(h) of the Internal Revenue Code of 1986, as now or hereafter amended, and this Certification is required to be provided pursuant to that Section.

Lessee hereby certifies, under penalty of perjury. that it intends that more than fifty (50) percent of the use of the Equipment (as such term is defined in the Lease) is to be in a trade or business of the Lessee.

Lessee acknowledges that it has been advised that it will not be treated as the owner of the Equipment for Federal income tax purposes.

IN WITNESS WHEREOF. Lessee has caused this Certification to be duly executed as of December 27, 2018.

**USF Reddaway Inc.**
**LESSEE**

By: _____
Mark D. Boehmer, Vice President

3714187.1



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1759705824**

| Vehicle Identification Number (VIN) 3H3V281C3KT823201 | Year 2019 | Make HYTR | Model VC2280131- | Body style OTHER |
|---|---|---|---|---|

| Title Issue Date 11-Dec-2018 | Odometer Miles 0 | Odometer Status Exempt | Fuel Type | |

Scale Weight
**9,330**   Gross Vehicle Weight Rating Code   Vehicle Color   Prior Title State   Prior Title Number

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____   Date
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____   Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____   Date
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____   Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described

*Teresa Berntsen*
Director, Department of Licensing

<div style="writing-mode: vertical"><strong>Assignment by registered owner</strong></div>

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ➧ _____ (no tenths)   Transfer date ___ / ___ / ___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer X | Signature of transferor/seller X |
|---|---|
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1753072746**

| Vehicle Identification Number (VIN) | | Year | Make | Model | Body style |
|---|---|---|---|---|---|
| **3H3V281C5KT823202** | | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION** | **USF REDDAWAY INC** |
| **500 HILLS DR STE 300** | **PO BOX 1300** |
| **BEDMINSTER NJ 07921-1538** | **TUALATIN OR 97062-1300** |

X _____

Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.                    Date

X _____

Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.                    Date

X _____

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.                    Date

X _____

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.                    Date

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*

Director, Department of Licensing

<div style="border:1px solid">

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ___/___/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

</div>

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1761502945**

| Vehicle Identification Number (VIN) 3H3V281C7KT823203 | | Year 2019 | Make HYTR | Model VC2280131- | Body style OTHER |
|---|---|---|---|---|---|
| Title Issue Date 11-Dec-2018 | Odometer Miles 0 | | Odometer Status Exempt | Fuel Type | |
| Scale Weight 9,330 | Gross Vehicle Weight Rating Code | | Vehicle Color | Prior Title State | Prior Title Number |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner PEAPACK CAPITAL CORPORATION 500 HILLS DR STE 300 BEDMINSTER NJ 07921-1538 | Registered Owner USF REDDAWAY INC PO BOX 1300 TUALATIN OR 97062-1300 |
|---|---|

X _____  Date

Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____  Date

Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____  Date

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.

X _____  Date

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

<div style="border">

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ___ / ___ / ___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer X | Signature of transferor/seller X |
|---|---|
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

</div>

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
### Title Number
### 1755703772

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C9KT823204** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____  Date
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____  Date
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)   Transfer date ___/___/___
                                                                                        Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer X | Signature of transferor/seller X |
|---|---|
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
## Vehicle Certificate of Title
**Title Number**
**1766213286**

| Vehicle Identification Number (VIN) | | Year | Make | Model | Body style |
|---|---|---|---|---|---|
| **3H3V281C0KT823205** | | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____

Signature of first legal owner releases all interest in    Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____

Signature of second legal owner releases all interest in    Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____

Signature of registered owner releases all interest in    Date
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____

Signature of registered owner releases all interest in    Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*

Director, Department of Licensing

Assignment by registered owner

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)   Transfer date ___/___/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

Signature of transferee/buyer
X _____

Signature of transferor/seller
X _____

PRINTED name of transferee/buyer

PRINTED name of transferor/seller

Address of transferee/buyer

Address of transferor/seller

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1763409909**

| Vehicle Identification Number (VIN) | | Year | Make | Model | Body style |
|---|---|---|---|---|---|
| **3H3V281C2KT823206** | | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION** | **USF REDDAWAY INC** |
| **500 HILLS DR STE 300** | **PO BOX 1300** |
| **BEDMINSTER NJ 07921-1538** | **TUALATIN OR 97062-1300** |

X _____  Date
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____  Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ___/___/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

*Assignment by registered owner* (vertical text, left margin)

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1754305319**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C4KT823207** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION** | **USF REDDAWAY INC** |
| **500 HILLS DR STE 300** | **PO BOX 1300** |
| **BEDMINSTER NJ 07921-1538** | **TUALATIN OR 97062-1300** |

X _____     Date
Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____     Date
Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____     Date
Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.

X _____     Date
Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ___/___/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



# STATE OF WASHINGTON
# Vehicle Certificate of Title
### Title Number
### 1749154461

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C6KT823208** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION** | **USF REDDAWAY INC** |
| **500 HILLS DR STE 300** | **PO BOX 1300** |
| **BEDMINSTER NJ 07921-1538** | **TUALATIN OR 97062-1300** |

**X** _____

Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.     Date

**X** _____

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.     Date

**X** _____

Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.     Date

**X** _____

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.     Date

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

Assignment by registered owner

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ➡ _____ (no tenths)   Transfer date ___/___/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| **X** | **X** |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1764854140**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C8KT823209** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION** **500 HILLS DR STE 300** **BEDMINSTER NJ 07921-1538** | **USF REDDAWAY INC** **PO BOX 1300** **TUALATIN OR 97062-1300** |

X _____ Date _____
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____ Date _____
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____ Date _____
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____ Date _____
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Borntsen*
Director, Department of Licensing

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ____/____/____
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



# STATE OF WASHINGTON
# Vehicle Certificate of Title

### Title Number
**1742848789**

| Vehicle Identification Number (VIN) **3H3V281C4KT823210** | Year **2019** | Make **HYTR** | Model **VC2280131-** | Body style **OTHER** |
|---|---|---|---|---|

| Title Issue Date **11-Dec-2018** | Odometer Miles **0** | Odometer Status **Exempt** | Fuel Type | |

| Scale Weight **9,330** | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____    Date
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____    Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____    Date
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____    Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

<div style="writing-mode: vertical">Assignment by registered owner</div>

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ____ / ____ / ____
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer X | Signature of transferor/seller X |
|---|---|
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1757058205**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C6KT823211** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION** | **USF REDDAWAY INC** |
| **500 HILLS DR STE 300** | **PO BOX 1300** |
| **BEDMINSTER NJ 07921-1538** | **TUALATIN OR 97062-1300** |

X _____
Signature of first legal owner releases all interest in      Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____
Signature of registered owner releases all interest in      Date
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____
Signature of second legal owner releases all interest in      Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____
Signature of registered owner releases all interest in      Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)   Transfer date ___ / ___ / ___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

Signature of transferee/buyer
X _____

Signature of transferor/seller
X _____

PRINTED name of transferee/buyer

PRINTED name of transferor/seller

Address of transferee/buyer

Address of transferor/seller

TD-420-002 (R/7/18)



## STATE OF WASHINGTON
# Vehicle Certificate of Title
**Title Number**
**1726283717**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C8KT823212** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type |
|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____
Signature of first legal owner releases all interest in          Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____
Signature of registered owner releases all interest in          Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____
Signature of second legal owner releases all interest in          Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____
Signature of registered owner releases all interest in          Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Borntsen*
Director, Department of Licensing

<div style="writing-mode: vertical">Assignment by registered owner</div>

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)   Transfer date ____/____/____
                                                                Odometer reading in miles

*This reading is (check one):* ☐the actual mileage of the vehicle ☐in excess of its mechanic limits ☐not the actual mileage.

Signature of transferee/buyer
X _____

Signature of transferor/seller
X _____

PRINTED name of transferee/buyer

PRINTED name of transferor/seller

Address of transferee/buyer

Address of transferor/seller

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1769504080**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281CXKT823213** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION** | **USF REDDAWAY INC** |
| **500 HILLS DR STE 300** | **PO BOX 1300** |
| **BEDMINSTER NJ 07921-1538** | **TUALATIN OR 97062-1300** |

X _____ Date
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____ Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____ Date
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____ Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ➡ _____ (no tenths)  Transfer date____/____/____
Odometer reading in miles

*This reading is (check one):* ☐the actual mileage of the vehicle ☐in excess of its mechanic limits ☐not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

Assignment by registered owner

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1766012799**

| Vehicle Identification Number (VIN) **3H3V281C1KT823214** | Year **2019** | Make **HYTR** | Model **VC2280131-** | Body style **OTHER** |
|---|---|---|---|---|

| Title Issue Date **11-Dec-2018** | Odometer Miles **0** | Odometer Status **Exempt** | Fuel Type | |

| Scale Weight **9,330** | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____    Date
Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____    Date
Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____    Date
Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.

X _____    Date
Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

Assignment by registered owner

*I certify, to the best of my knowledge, the odometer reading is:* ➡ _____ (no tenths)  Transfer date ___/___/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer X | Signature of transferor/seller X |
|---|---|
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



# STATE OF WASHINGTON
## Vehicle Certificate of Title

**Title Number**
**1763503050**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C3KT823215** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____ Date
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____ Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____ Date
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____ Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

Assignment by registered owner

I certify, to the best of my knowledge, the odometer reading is: ▶ _____ (no tenths)  Transfer date ____ / ____ / ____
Odometer reading in miles

This reading is (check one): ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

Signature of transferee/buyer
X

Signature of transferor/seller
X

PRINTED name of transferee/buyer

PRINTED name of transferor/seller

Address of transferee/buyer

Address of transferor/seller

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
Title Number
**1747909063**

| Vehicle Identification Number (VIN)<br>**3H3V281C5KT823216** | Year<br>**2019** | Make<br>**HYTR** | Model<br>**VC2280131-** | Body style<br>**OTHER** |
|---|---|---|---|---|

| Title Issue Date<br>**11-Dec-2018** | Odometer Miles<br>**0** | Odometer Status<br>**Exempt** | Fuel Type | |
|---|---|---|---|---|

| Scale Weight<br>**9,330** | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.
**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.
**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____  Date
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____  Date
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described

*Teresa Berntsen*
Director, Department of Licensing

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

I certify, to the best of my knowledge, the odometer reading is: ▶ _____ (no tenths)   Transfer date ____ / ____ / ____
Odometer reading in miles

This reading is (check one): ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer<br>X | Signature of transferor/seller<br>X |
|---|---|
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
## Vehicle Certificate of Title
**Title Number**
**1744393001**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C7KT823217** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION**<br>**500 HILLS DR STE 300**<br>**BEDMINSTER NJ 07921-1538** | **USF REDDAWAY INC**<br>**PO BOX 1300**<br>**TUALATIN OR 97062-1300** |

X _____  Date

Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____  Date

Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____  Date

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____  Date

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

*Teresa Bornham*
Director, Department of Licensing

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ➡ _____ (no tenths)  Transfer date ___ / ___ / ___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

*Assignment by registered owner*

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
## Vehicle Certificate of Title
**Title Number**
**1751965701**

| Vehicle Identification Number (VIN)<br>**3H3V281C9KT823218** | Year<br>**2019** | Make<br>**HYTR** | Model<br>**VC2280131-** | Body style<br>**OTHER** |
|---|---|---|---|---|

| Title Issue Date<br>**11-Dec-2018** | Odometer Miles<br>**0** | Odometer Status<br>**Exempt** | Fuel Type | |
|---|---|---|---|---|

| Scale Weight<br>**9,330** | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner<br>**PEAPACK CAPITAL CORPORATION**<br>**500 HILLS DR STE 300**<br>**BEDMINSTER NJ 07921-1538** | Registered Owner<br>**USF REDDAWAY INC**<br>**PO BOX 1300**<br>**TUALATIN OR 97062-1300** |
|---|---|

X _____  Date

Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date

Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date

Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____  Date

Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*

Director, Department of Licensing

---

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ___/___/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer<br>X | Signature of transferor/seller<br>X |
|---|---|
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



## STATE OF WASHINGTON
# Vehicle Certificate of Title
### Title Number
### 1762364953

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C0KT823219** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION**<br>**500 HILLS DR STE 300**<br>**BEDMINSTER NJ 07921-1538** | **USF REDDAWAY INC**<br>**PO BOX 1300**<br>**TUALATIN OR 97062-1300** |

X_____ Date

Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X_____ Date

Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X_____ Date

Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X_____ Date

Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

---

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date \_\_\_\_/\_\_\_\_/\_\_\_\_
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer<br>X | Signature of transferor/seller<br>X |
|---|---|
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



## STATE OF WASHINGTON
# Vehicle Certificate of Title
**Title Number**
**1727499201**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C7KT823220** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION**<br>**500 HILLS DR STE 300**<br>**BEDMINSTER NJ 07921-1538** | **USF REDDAWAY INC**<br>**PO BOX 1300**<br>**TUALATIN OR 97062-1300** |

**X** _____ Date

Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

**X** _____ Date

Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

**X** _____ Date

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.

**X** _____ Date

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

*Teresa Berntsen*
Director, Department of Licensing

### Assignment by registered owner

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ➡ _____ (no tenths)   Transfer date ___/___/___

Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| **X** | **X** |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1755364090**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C9KT823221** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION**<br>**500 HILLS DR STE 300**<br>**BEDMINSTER NJ 07921-1538** | **USF REDDAWAY INC**<br>**PO BOX 1300**<br>**TUALATIN OR 97062-1300** |

X _____  Date

Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____  Date

Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____  Date

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.

X _____  Date

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*

Director, Department of Licensing

## Assignment by registered owner

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ➧ _____ (no tenths)  Transfer date ____/____/____
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
## Vehicle Certificate of Title
Title Number
**1754653731**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C0KT823222** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION** | **USF REDDAWAY INC** |
| **500 HILLS DR STE 300** | **PO BOX 1300** |
| **BEDMINSTER NJ 07921-1538** | **TUALATIN OR 97062-1300** |

X _____  Date

Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date

Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date

Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____  Date

Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

*Teresa Borntson*

Director, Department of Licensing

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ___/___/___

Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
Title Number
**1738179006**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C2KT823223** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____  Date
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____  Date
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____  Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ___/___/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



# STATE OF WASHINGTON
## Vehicle Certificate of Title
### Title Number
**1770510405**

| Vehicle Identification Number (VIN) **3H3V281C4KT823224** | Year **2019** | Make **HYTR** | Model **VC2280131-** | Body style **OTHER** |
|---|---|---|---|---|

Title Issue Date **11-Dec-2018**  Odometer Miles **0**  Odometer Status **Exempt**  Fuel Type

Scale Weight **9,330**  Gross Vehicle Weight Rating Code  Vehicle Color  Prior Title State  Prior Title Number

Comments **19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____ Date
Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____ Date
Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.

X _____ Date
Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____ Date
Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

*Teresa Boynton*
Director, Department of Licensing

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* _____ (no tenths)  Transfer date ___/___/___
Odometer reading in miles

This reading is (check one): ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

Signature of transferee/buyer X _____
Signature of transferor/seller X _____

PRINTED name of transferee/buyer
PRINTED name of transferor/seller

Address of transferee/buyer
Address of transferor/seller

TD-420-002 (R/7/18)



### STATE OF WASHINGTON
## Vehicle Certificate of Title

**Title Number**
**1754358429**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C6KT823225** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type |
|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION**<br>**500 HILLS DR STE 300**<br>**BEDMINSTER NJ 07921-1538** | **USF REDDAWAY INC**<br>**PO BOX 1300**<br>**TUALATIN OR 97062-1300** |

X _____ Date
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____ Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____ Date
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____ Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ____/____/____
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

*(left margin: Assignment by registered owner)*

TD-420-002 (R/7/18)



## STATE OF WASHINGTON
## Vehicle Certificate of Title
### Title Number
### 1766407933

| Vehicle Identification Number (VIN) | | Year | Make | Model | Body style |
|---|---|---|---|---|---|
| **3H3V281C8KT823226** | | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC.**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____   Date
Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____   Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____   Date
Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____   Date
Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

*Teresa Berntsen*

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

Director, Department of Licensing

Assignment by registered owner

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ➡ _____ (no tenths)  Transfer date ___/___/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1744497477**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281CXKT823227** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC.**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____ Date _____
Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____ Date _____
Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.

X _____ Date _____
Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____ Date _____
Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

*Teresa Berntsen*
Director, Department of Licensing

Assignment by registered owner

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

I certify, to the best of my knowledge, the odometer reading is: ▶ _____ (no tenths)  Transfer date ___/___/___
Odometer reading in miles

This reading is (check one): ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
Title Number
**1747546329**

| Vehicle Identification Number (VIN) **3H3V281C1KT823228** | Year **2019** | Make **HYTR** | Model **VC2280131-** | Body style **OTHER** |
|---|---|---|---|---|

| Title Issue Date **11-Dec-2018** | Odometer Miles **0** | Odometer Status **Exempt** | Fuel Type | |

| Scale Weight **9,330** | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner **PEAPACK CAPITAL CORPORATION** **500 HILLS DR STE 300** **BEDMINSTER NJ 07921-1538** | Registered Owner **USF REDDAWAY INC.** **PO BOX 1300** **TUALATIN OR 97062-1300** |
|---|---|

**X** _____  Date ____

Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

**X** _____  Date ____

Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

**X** _____  Date ____

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.

**X** _____  Date ____

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

*Teresa Berntsen*

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

Director, Department of Licensing

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ➡ _____ (no tenths)  Transfer date ___/___/___

Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer **X** | Signature of transferor/seller **X** |
|---|---|
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

Assignment by registered owner

TD-420-002 (R/7/18)



**STATE OF WASHINGTON**
# Vehicle Certificate of Title
**Title Number**
**1746698180**

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| **3H3V281C3KT823229** | **2019** | **HYTR** | **VC2280131-** | **OTHER** |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| **11-Dec-2018** | **0** | **Exempt** | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| **9,330** | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

Legal Owner
**PEAPACK CAPITAL CORPORATION**
**500 HILLS DR STE 300**
**BEDMINSTER NJ 07921-1538**

Registered Owner
**USF REDDAWAY INC.**
**PO BOX 1300**
**TUALATIN OR 97062-1300**

X _____   Date

Signature of first legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____   Date

Signature of second legal owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

X _____   Date

Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature and title.

X _____   Date

Signature of registered owner releases all interest in
the vehicle described above. If signing for a business,
include business name, signature, and title.

*Teresa Berntsen*

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

Director, Department of Licensing

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)   Transfer date ___/___/___
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

Assignment by registered owner

TD-420-002 (R/7/18)



## STATE OF WASHINGTON
## Vehicle Certificate of Title
### Title Number
### 1764059912

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| 3H3V281CXKT823230 | 2019 | HYTR | VC2280131- | OTHER |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type | |
|---|---|---|---|---|
| 11-Dec-2018 | 0 | Exempt | | |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| 9,330 | | | | |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner | Registered Owner |
|---|---|
| **PEAPACK CAPITAL CORPORATION** | **USF REDDAWAY INC.** |
| **500 HILLS DR STE 300** | **PO BOX 1300** |
| **BEDMINSTER NJ 07921-1538** | **TUALATIN OR 97062-1300** |

X _____ Date _____

Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____ Date _____

Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____ Date _____

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature and title.

X _____ Date _____

Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons named hereon as registered owners and legal owners of the vehicle described.

*Teresa Bornstein*

Director, Department of Licensing

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date ___/___/___

Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle ☐ in excess of its mechanic limits ☐ not the actual mileage.

| Signature of transferee/buyer | Signature of transferor/seller |
|---|---|
| X | X |
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

*Assignment by registered owner*

TD-420-002 (R/7/18)



# STATE OF WASHINGTON
# Vehicle Certificate of Title
### Title Number
### 1748261908

| Vehicle Identification Number (VIN) **3H3V281C1KT823231** | Year **2019** | Make **HYTR** | Model **VC2280131-** | Body style **OTHER** |
|---|---|---|---|---|

| Title Issue Date **11-Dec-2018** | Odometer Miles **0** | Odometer Status **Exempt** | Fuel Type | |

| Scale Weight **9,330** | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |

Comments
**19904/2018**

Brands

Sale price $ _____

Date of sale _____

**Buyer:** You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

**Legal Owner:** To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

**Seller:** You must complete a Report of Sale and file it with the Department of Licensing **within 5 business days** of the sale. File at **dol.wa.gov** or at any vehicle licensing office or county auditor.

| Legal Owner **PEAPACK CAPITAL CORPORATION** **500 HILLS DR STE 300** **BEDMINSTER NJ 07921-1538** | Registered Owner **USF REDDAWAY INC.** **PO BOX 1300** **TUALATIN OR 97062-1300** |
|---|---|

**X** _____

Signature of first legal owner releases all interest in    Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

**X** _____

Signature of registered owner releases all interest in    Date
the vehicle described above. If signing for a business,
include business name, signature and title.

**X** _____

Signature of second legal owner releases all interest in    Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

**X** _____

Signature of registered owner releases all interest in    Date
the vehicle described above. If signing for a business,
include business name, signature, and title.

*Teresa Berntsen*

I certify that the records of the Department of Licensing show the persons
named hereon as registered owners and legal owners of the vehicle described.

Director, Department of Licensing

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 10 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

*I certify, to the best of my knowledge, the odometer reading is:* ▶ _____ (no tenths)  Transfer date____/____/____
Odometer reading in miles

*This reading is (check one):* ☐ the actual mileage of the vehicle  ☐ in excess of its mechanic limits  ☐ not the actual mileage.

| Signature of transferee/buyer **X** | Signature of transferor/seller **X** |
|---|---|
| PRINTED name of transferee/buyer | PRINTED name of transferor/seller |
| Address of transferee/buyer | Address of transferor/seller |

*Assignment by registered owner*

TD-420-002 (R/7/18)

# EXHIBIT F

<u>Guaranty</u>

THIS GUARANTY is made and effective as of August 25, 2017 by YRC WORLDWIDE INC., a Delaware corporation, having an address for purposes of notices hereunder at 10990 Roe Avenue, Overland Park, KS 66211 (attention: YRCW Treasury Department) (the "Guarantor") to Peapack Capital Corporation, a New Jersey corporation, having an address for purposes of notices hereunder at 500 Hills Drive, Bedminster, NJ 07921-0700 (the "Lessor") on behalf of YRC Enterprises Services, Inc., a Delaware corporation, having its chief executive offices at 10990 Roe Avenue, Overland Park, KS 66211 ("YRC Enterprises"), USF HOLLAND INC., a Michigan corporation, having its chief executive offices at 750 E. 40th Street, Holland, MI 49423 ("Holland"), USF REDDAWAY, INC., an Oregon corporation having its chief executive offices at 7720 SW Mohawk St., Bldg. H, Tualatin, Oregon, 97062 ("Reddaway"), YRC INC., a Delaware corporation having its chief executive offices at 10990 Roe Avenue, Overland Park, KS 66211 ("YRC Freight"), and NEW PENN MOTOR EXPRESS, INC., a Pennsylvania corporation having its chief executive offices at 625 South Fifth Avenue, Lebanon, Pennsylvania 17042 ("New Penn"). YRC Enterprises, Holland, Reddaway, YRC Freight, and New Penn are each individually referred to as a "Lessee" and collectively as "Lessees."

R E C I T A L S :

WHEREAS, Lessor and YRC Enterprise have or intend to enter into Master Lease Agreement dated as of August 25, 2017, including all riders, exhibits, amendments, supplements or other attachments now or hereafter executed in connection therewith (collectively, the "Master Agreement"). In connection with the Master Agreement, Lessor and Lessees have or intend to enter into one or more Schedules (the "Schedule" or "Schedules") for the purpose of leasing equipment and other property listed thereon. Each Schedule shall incorporate the terms and conditions of the Master Agreement and shall constitute a separate and independent "Lease" for the equipment and other property listed thereon (collectively, the "Equipment").

WHEREAS, Lessor is unwilling to enter into one or more Leases with Lessees without Guarantor's unconditional guarantee of all of Lessees' obligations under each Lease; and

WHEREAS, by Lessor's execution of each Lease, Guarantor will receive reasonably equivalent value for this Guaranty; and

WHEREAS, in consideration of benefits to accrue to Guarantor by Lessor's execution of each Lease, Guarantor is willing to induce Lessor to enter into one or more Leases and to enter into this Guaranty.

NOW, THEREFORE, in consideration of the foregoing and as an inducement to Lessor to enter into one or more Leases with Lessees, Guarantor hereby unconditionally guarantees Lessees' performance of all of its obligations under each Lease and hereby represents, warrants and agrees as follows:

1.      Guarantor hereby absolutely, unconditionally and irrevocably guarantees Lessees will fully and promptly pay any payment of rent or other amount due under a Lease, including without

limitation any payment resulting from Lessees' breach or non-performance thereof. Guarantor agrees that this is an irrevocable, continuing guaranty and that Guarantor shall perform its obligations hereunder notwithstanding any renewal, extension, modification, increase or discharge of any of Lessees' obligations under the Lease.

2.      Guarantor represents and warrants to Lessor that all information concerning Guarantor furnished to Lessor is true and correct in all material respects.

3.      This Guaranty shall apply to all Schedules executed in connection with the Master Agreement, including, without limitation, any and all future Schedules entered into after the making and execution of this Guaranty. Neither Lessor nor Lessee shall be required to notify Guarantor of any Lessee's execution of each such Schedule before, at the time of, or after it is executed and delivered.

4.      Guarantor waives notice of acceptance hereof, presentment, demand, protest and notice of nonpayment or protest as to any Lease; any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against any Lessee or any other person directly or contingently liable for the obligations guaranteed hereunder; or against or with respect to any Lessee's property (including without limitation, any property that may collateralize its obligations to Lessor), arising from the existence or performance of this Guaranty; all exemptions , all demands and notices required by law, notice of dishonor and any other notice otherwise required with respect to any Lessee's failure to perform under any Lease; all setoffs and counterclaims; and any duty on Lessor's part (should such duty exist) to disclose to Guarantor any matter, fact or item related to the business operations or condition (financial or otherwise) of Lessees or their affiliates or property, whether now or hereafter known by Lessor. Guarantor also waives any defense or disability available to Lessees that might save or release them from liability including, without limitation, defect in or unenforceability of any Lease. No delay on the part of Lessor in exercising any rights under this Guaranty or failure to exercise the same shall operate as a waiver of such rights. No modification or waiver of the provisions of this Guaranty shall be effective unless in writing signed by Lessor, and no such waiver shall be applicable and effective except in the specific instance for which it is given.

5.      In accordance with the provisions of the Master Agreement, without causing a release of Guarantor from its obligations hereunder, and without being required to notify Guarantor of any of the following modifications made, Lessor shall be authorized to:

      a.  renew, extend (including extensions beyond the original term of any Lease), modify, release, increase or discharge any obligations of any Lessee, its customers, or co-guarantors (whether hereunder or under a separate instrument) or of any other party at any time directly or contingently liable for the payment of Lessee's obligations under any Lease;

      b.  accept partial payments of any Lessee's obligations under any Lease;

      c.  accept new or additional documents, instruments or agreements relating to or in

substitution of any Lessee's obligations under any Lease;

d. settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of any Lessee's obligations under any Lease, the Equipment and/or any security therefor in any manner;

e. consent to the transfer or return of the Equipment, and take and hold additional security or guaranties for any Lessee's obligations under any Lease;

f. amend, exchange, release or waive any security or guaranty (other than this Guaranty); or

g. bid and purchase at any sale of the Equipment or other security, and direct the order and manner of sale.

6. Guarantor hereby represents and warrants that this Guaranty has been duly authorized and approved by all necessary corporate action. Guarantor acknowledges that its obligations hereunder are separate and independent of Lessees' obligations under any Lease. Guarantor hereby waives any right to require Lessor to proceed first against any Lessee, against the Equipment or against any additional security under any Lease, or to pursue any other remedy available to it under the Lease or under applicable law.

7. If any payment applied to Lessee's obligations is thereafter set aside, recovered, rescinded or required to be returned for any reason (including on account of a preference in the bankruptcy of Lessee), the obligation to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence notwithstanding such application, and this Guaranty shall be enforceable as to such obligation as fully as if such application had never been made.

8. Guarantor agrees to pay all costs, expenses and legal fees paid or incurred by Lessor in connection with enforcing any obligation of any Lessee and this Guaranty.

9. Guarantor agrees that this Guaranty shall be governed by and construed in accordance with the laws of the State of New York and that jurisdiction for any dispute shall be in the New York federal courts. Guarantor agrees that it shall reimburse Lessor for all costs and expenses incurred by Lessor in connection with the enforcement of this Guaranty, including without limitation court costs and actual attorney's fees. THE PARTIES HERETO AGREE THAT IN THE EVENT OF AN ALLEGED BREACH OF THIS GUARANTY OR ANY DOCUMENTS RELATING THERETO BY EITHER PARTY, OR ANY CONTROVERSIES ARISE BETWEEN THE PARTIES RELATING TO THIS GUARANTY OR ANY DOCUMENTS RELATING THERETO, SUCH CONTROVERSIES SHALL BE TRIED BY A JUDGE ALONE BEFORE THE FEDERAL COURTS IN NEW YORK, NEW YORK. THE PARTIES, HAVING HAD THE OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL OF THEIR OWN CHOOSING, HEREBY KNOWINGLY AND VOLUNTARILY CONSENT TO NEW YORK JURISDICTION AS SET FORTH HEREIN AND WAIVE THEIR RIGHTS TO A TRIAL BY JURY IN ANY MATTER RELATING TO THIS GUARANTY OR ANY DOCUMENTS RELATED THERETO.

10. Nothing shall discharge or satisfy Guarantor's obligations hereunder except the full payment, performance and observance of all of each Lessee's obligations under each Lease. In connection with the assignment of a Lease, Lessor may assign this Guaranty to a successor, assignee, financing lender and/or purchaser without notice to or the consent of Guarantor. This Guaranty shall be binding upon the Guarantor, its successors and assigns and shall inure to the benefit of Lessor, its successors and assigns, including any successor assignees.

11. In providing this Guaranty, the Guarantor has not relied on any explicit or implicit representations, warranties, covenants or agreements whether made orally or in writing.

12. The covenants, conditions, terms and provisions of this Guaranty may not be waived or modified orally and shall supersede all previous, representations, commitments or agreements between the parties. In the event that any provision of this Guaranty shall be held to be invalid or unenforceable, the remaining provisions shall continue in full force and effect.

GUARANTOR:

YRC WORLDWIDE INC.

By: _____

Name: Mark Brehmer

Title: VP & Treasurer

3661904.1

4

# EXHIBIT G

<u>Guaranty</u>

THIS GUARANTY is made and effective as of February 4, 2021 by Yellow Corporation, a Delaware corporation, having an address for purposes of notices hereunder at 501 Commerce St., Suite 1120, Nashville, TN 37203 (attention: Yellow Corporation, Treasury Department) (the "Guarantor") to Peapack Capital Corporation, a New Jersey corporation, having an address for purposes of notices hereunder at 500 Hills Drive, Bedminster, NJ 07921-0700 (the "Lessor") on behalf of YRC Enterprise Services, Inc., a Delaware corporation, having its chief executive offices at 11500 Outlook St., Suite 400, Overland Park, KS 66211 ("YRC Enterprise"), USF HOLLAND LLC, a Delaware Limited Liability Company, having its chief executive offices at 700 S. Waverly Rd., Holland, MI 49423-9121 ("Holland"), USF REDDAWAY INC., an Oregon corporation having its chief executive offices at 7720 SW Mohawk St., Bldg. H, Tualatin, Oregon, 97062 ("Reddaway"), YRC INC., d/b/a YRC Freight a Delaware corporation having its chief executive offices at 11500 Outlook St., Suite 400, Overland Park, KS 66211 ("YRC Freight"), and NEW PENN MOTOR EXPRESS LLC., a Delaware Limited Liability Company having its chief executive offices at 11500 Outlook St., Suite 400, Overland Park, KS 66211 ("New Penn"). YRC Enterprise, Holland, Reddaway, YRC Freight, and New Penn are each individually referred to as a "Lessee" and collectively as "Lessees."

R E C I T A L S:

WHEREAS, Lessor and YRC Enterprise have or intend to enter into Master Lease Agreement dated as of August 25, 2017, including all riders, exhibits, amendments, supplements or other attachments now or hereafter executed in connection therewith (collectively, the "Master Agreement"). In connection with the Master Agreement, Lessor and Lessees have or intend to enter into one or more Schedules (the "Schedule" or "Schedules") for the purpose of leasing equipment and other property listed thereon. Each Schedule shall incorporate the terms and conditions of the Master Agreement and shall constitute a separate and independent "Lease" for the equipment and other property listed thereon (collectively, the "Equipment").

WHEREAS, Lessor is unwilling to enter into one or more Leases with Lessees without Guarantor's unconditional guarantee of all of Lessees' obligations under each Lease; and

WHEREAS, by Lessor's execution of each Lease, Guarantor will receive reasonably equivalent value for this Guaranty; and

WHEREAS, in consideration of benefits to accrue to Guarantor by Lessor's execution of each Lease, Guarantor is willing to induce Lessor to enter into one or more Leases and to enter into this Guaranty.

NOW, THEREFORE, in consideration of the foregoing and as an inducement to Lessor to enter into one or more Leases with Lessees, Guarantor hereby unconditionally guarantees Lessees' performance of all of its obligations under each Lease and hereby represents, warrants and agrees as follows:

1.    Guarantor hereby absolutely, unconditionally and irrevocably guarantees Lessees will fully

and promptly pay any payment of rent or other amount due under a Lease, including without limitation any payment resulting from Lessees' breach or non-performance thereof. Guarantor agrees that this is an irrevocable, continuing guaranty and that Guarantor shall perform its obligations hereunder notwithstanding any renewal, extension, modification, increase or discharge of any of Lessees' obligations under the Lease.

2.      Guarantor represents and warrants to Lessor that all information concerning Guarantor furnished to Lessor is true and correct in all material respects.

3.      This Guaranty shall apply to all Schedules executed in connection with the Master Agreement, including, without limitation, any and all future Schedules entered into after the making and execution of this Guaranty. Neither Lessor nor Lessee shall be required to notify Guarantor of any Lessee's execution of each such Schedule before, at the time of, or after it is executed and delivered.

4.      Guarantor waives notice of acceptance hereof, presentment, demand, protest and notice of nonpayment or protest as to any Lease; any and all rights of subrogation, reimbursement, indemnity, exoneration, contribution or any other claim which the Guarantor may now or hereafter have against any Lessee or any other person directly or contingently liable for the obligations guaranteed hereunder; or against or with respect to any Lessee's property (including without limitation, any property that may collateralize its obligations to Lessor), arising from the existence or performance of this Guaranty; all exemptions , all demands and notices required by law, notice of dishonor and any other notice otherwise required with respect to any Lessee's failure to perform under any Lease; all setoffs and counterclaims; and any duty on Lessor's part (should such duty exist) to disclose to Guarantor any matter, fact or item related to the business operations or condition (financial or otherwise) of Lessees or their affiliates or property, whether now or hereafter known by Lessor. Guarantor also waives any defense or disability available to Lessees that might save or release them from liability including, without limitation, defect in or unenforceability of any Lease. No delay on the part of Lessor in exercising any rights under this Guaranty or failure to exercise the same shall operate as a waiver of such rights. No modification or waiver of the provisions of this Guaranty shall be effective unless in writing signed by Lessor, and no such waiver shall be applicable and effective except in the specific instance for which it is given.

5.      In accordance with the provisions of the Master Agreement, without causing a release of Guarantor from its obligations hereunder, and without being required to notify Guarantor of any of the following modifications made, Lessor shall be authorized to:

    a. renew, extend (including extensions beyond the original term of any Lease), modify, release, increase or discharge any obligations of any Lessee, its customers, or co-guarantors (whether hereunder or under a separate instrument) or of any other party at any time directly or contingently liable for the payment of Lessee's obligations under any Lease;

    b. accept partial payments of any Lessee's obligations under any Lease;

2

    c.   accept new or additional documents, instruments or agreements relating to or in substitution of any Lessee's obligations under any Lease;

    d.   settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of any Lessee's obligations under any Lease, the Equipment and/or any security therefor in any manner;

    e.   consent to the transfer or return of the Equipment, and take and hold additional security or guaranties for any Lessee's obligations under any Lease;

    f.   amend, exchange, release or waive any security or guaranty (other than this Guaranty); or

    g.   bid and purchase at any sale of the Equipment or other security, and direct the order and manner of sale.

6.    Guarantor hereby represents and warrants that this Guaranty has been duly authorized and approved by all necessary corporate action. Guarantor acknowledges that its obligations hereunder are separate and independent of Lessees' obligations under any Lease. Guarantor hereby waives any right to require Lessor to proceed first against any Lessee, against the Equipment or against any additional security under any Lease, or to pursue any other remedy available to it under the Lease or under applicable law.

7.    If any payment applied to Lessee's obligations is thereafter set aside, recovered, rescinded or required to be returned for any reason (including on account of a preference in the bankruptcy of Lessee), the obligation to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence notwithstanding such application, and this Guaranty shall be enforceable as to such obligation as fully as if such application had never been made.

8.    Guarantor agrees to pay all costs, expenses and legal fees paid or incurred by Lessor in connection with enforcing any obligation of any Lessee and this Guaranty.

9.    Guarantor agrees that this Guaranty shall be governed by and construed in accordance with the laws of the State of New York and that jurisdiction for any dispute shall be in the New York federal courts. Guarantor agrees that it shall reimburse Lessor for all costs and expenses incurred by Lessor in connection with the enforcement of this Guaranty, including without limitation court costs and actual attorney's fees. THE PARTIES HERETO AGREE THAT IN THE EVENT OF AN ALLEGED BREACH OF THIS GUARANTY OR ANY DOCUMENTS RELATING THERETO BY EITHER PARTY, OR ANY CONTROVERSIES ARISE BETWEEN THE PARTIES RELATING TO THIS GUARANTY OR ANY DOCUMENTS RELATING THERETO, SUCH CONTROVERSIES SHALL BE TRIED BY A JUDGE ALONE BEFORE THE FEDERAL COURTS IN NEW YORK, NEW YORK. THE PARTIES, HAVING HAD THE OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL OF THEIR OWN CHOOSING, HEREBY KNOWINGLY AND VOLUNTARILY CONSENT TO NEW YORK JURISDICTION AS SET FORTH HEREIN AND WAIVE THEIR RIGHTS TO A TRIAL BY JURY IN ANY MATTER RELATING TO THIS GUARANTY OR ANY

DOCUMENTS RELATED THERETO.

10.     Nothing shall discharge or satisfy Guarantor's obligations hereunder except the full payment, performance and observance of all of each Lessee's obligations under each Lease.  In connection with the assignment of a Lease, Lessor may assign this Guaranty to a successor, assignee, financing lender and/or purchaser without notice to or the consent of Guarantor. This Guaranty shall be binding upon the Guarantor, its successors and assigns and shall inure to the benefit of Lessor, its successors and assigns, including any successor assignees.

11.     In providing this Guaranty, the Guarantor has not relied on any explicit or implicit representations, warranties, covenants or agreements whether made orally or in writing.

12.     The covenants, conditions, terms and provisions of this Guaranty may not be waived or modified orally and shall supersede all previous, representations, commitments or agreements between the parties. In the event that any provision of this Guaranty shall be held to be invalid or unenforceable, the remaining provisions shall continue in full force and effect.

GUARANTOR:

YELLOW CORPORATION

By:  _____

Name: Anthony P. Carreño

Title: Senior Vice President, Treasury

3661904.1

4