## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## MOTION OF DEBTORS TO
## APPROVE PROCEDURES FOR DE MINIMIS ASSET
## TRANSACTIONS AND ABANDONMENT OF DE MINIMIS ASSETS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion:[2]

### Relief Requested

1.     The Debtors seek entry of an order (the "Order"), substantially in the form attached

hereto as **Exhibit A** authorizing the Debtors to implement expedited procedures:  (a) to use, sell,

or transfer certain assets, collections of assets, or business lines, including any rights or interests

therein (collectively, the "De Minimis Assets") outside of the ordinary course of business in any

individual transaction or series of related transactions (each, a "De Minimis Asset Transaction")

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]     A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration").  Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion, the First Day Declaration, the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 16] (the "DIP Motion"), or the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 302] (the "Interim DIP Order"), as applicable.

to a single buyer or group of related buyers with an aggregate sale price equal to or less than $5 million as calculated within the Debtors' reasonable discretion, free and clear of all liens, claims, interests, and encumbrances (collectively, the "Liens"), without the need for further Court approval and with Liens attaching to the proceeds of such use, sale, or transfer with the same validity, extent, and priority as had attached to the De Minimis Assets immediately prior to the use, sale, or transfer; (b) abandon a De Minimis Asset to the extent the cost of continuing to maintain, relocate, and/or store such De Minimis Asset outweighs any potential recovery from a future sale, as determined by the Debtors in exercise of their reasonable business judgment; (c) to pay those reasonable and necessary fees and expenses (if any) incurred in connection with the use, sale, transfer, or abandonment of De Minimis Assets, including, but not limited to, commission fees to agents, brokers, auctioneers, and liquidators with the amount of proposed commission fees to be paid to be disclosed in the Transaction Notice (as defined herein); and (d) granting related relief. For the avoidance of doubt, De Minimis Assets shall not include, without the prior approval of the Committee, the Junior DIP Lender, the B-2 Lenders, the Prepetition ABL Agent, and the United States Department of the Treasury (collectively, the "Consultation Parties"), (i) any owned or leased real estate or (ii) any owned or leased vehicles, tractors, trucks, trailers, tank trailer and other trailers, or similar vehicles and trailers, railroad cars, locomotives, stacktrains, and other rolling stock (the "Rolling Stock"); *provided* that the De Minimis Assets may include damaged or obsolete Rolling Stock that is to be sold as scrap and that Rolling Stock does not include accessories (including superstructures and racks), fork lifts, pallet jacks, dollies, or other such equipment.

### Jurisdiction and Venue

2.     The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy

Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 363, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6004, 6007, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1.

## Background

5.      On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169].  The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee").  No trustee or examiner has been appointed in these chapter 11 cases.

## De Minimis Asset Transactions

6.      As discussed in the First Day Declaration, the Debtors filed these chapter 11 cases to effectuate a sale or sales of some or all of the Debtors' assets and, in parallel, commence an orderly wind-down of the Debtors' businesses to maximize value for all stakeholders.  Through this motion, the Debtors seek approval of certain procedures that will authorize the Debtors to use, sell, swap, or transfer certain assets outside the ordinary course of business with a transaction value equal to or less than $5 million.  In addition, the Debtors seek approval of certain procedures that would govern abandonment of certain assets of little or no use to the Debtors' estates.

7.      The Debtors have a limited window of time in which they may enter into agreements or take advantage of opportunities to sell, transfer, or otherwise monetize De Minimis Assets.  The cost, delay, and publicity associated with seeking individual Court approval of each De Minimis Asset Transaction could eliminate or substantially diminish the economic benefits of the transactions.

8.      In addition, the streamlined procedures proposed in this motion to sell, use, transfer, or abandon De Minimis Assets during these chapter 11 cases will also eliminate the cost of maintaining nonessential property and will generate additional cash to fund recoveries for the Debtors' stakeholders.  Given the small value of the De Minimis Assets in relation to the magnitude of the Debtors' extensive asset portfolio and the carrying costs associated with many De Minimis Assets, it would be an inefficient use of resources to seek Court approval for individual De Minimis Asset sales or abandonments.

9.      Thus, the Debtors propose the De Minimis Asset Transaction Procedures (as defined below) and the De Minimis Asset Abandonment Procedures (as defined below) to permit the Debtors to dispose of De Minimis Assets in a cost-efficient manner and to allow more

expeditious and cost-effective review of certain De Minimis Asset Transactions by interested parties, while at the same time protecting the rights of creditors and other parties in interest.

### De Minimis Asset Transaction Procedures

10.     The Debtors propose to use, sell, swap, or transfer each of the De Minimis Assets on the best terms available, taking into consideration the exigencies and circumstances in each such transaction under the following procedures (the "De Minimis Asset Transaction Procedures"):

    a.    With regard to the uses, sales, investments, or transfers of De Minimis Assets in any individual transaction or series of related transactions to or from a single buyer or seller or group of related buyers or sellers with a total transaction value as calculated within the Debtors' reasonable discretion, less than or equal to $5 million:

        i.    the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment and after consultation with the Consultation Parties that such transactions are in the best interest of the estates, without further order of the Court, subject to the procedures set forth herein;

        ii.    any such transactions shall be, without need for any action by any party, final and fully authorized by the Court and may be, as provided in the documentation governing the applicable transaction, final and free and clear of all Liens with such Liens attaching only to the proceeds of such transactions with the same validity, extent, and priority as immediately prior to the transaction;

        iii.    the Debtors shall give written notice of such transaction substantially in the form attached hereto as **Exhibit B** (each notice, a "Transaction Notice") to (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as proposed counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto; (i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the

Treasury; and (o) any known affected creditor(s) (including their counsel, if known) asserting a Lien on the relevant De Minimis Assets, if known (each, a "Transaction Notice Party" and collectively, the "Transaction Notice Parties"), after which the Transaction Notice Parties shall have seven (7) calendar days to object to such sale (the **"Initial Objection Period"**);

iv.     the content of the notice sent to the Transaction Notice Parties for the applicable sale of De Minimis Assets shall consist of, as may be applicable and to the extent such information is readily available: (a) identification of the De Minimis Assets being used, sold, or transferred; (b) identification of the serial number and VIN for the De Minimis Assets being used, sold, or transferred; (c) identification of the Debtor entity selling the De Minimis Assets; (d) identification of the purchaser of the De Minimis Assets; (e) the purchase price; (f) the estimated book value and appraised value for the De Minimis Assets being sold or transferred as reflected in the Debtors' books and records; (g) the marketing or sales process, including any commissions to be paid to third parties in connection with the sale, if applicable; and (h) any other significant terms of the use, sale, or transfer;[3]

v.      if the terms of a proposed sale or transfer are materially amended after transmittal of the Transaction Notice but prior to the applicable deadline of any Transaction Notice Parties' right to object to such sale of the De Minimis Assets, the Debtors will send a revised Transaction Notice (the "Amended Transaction Notice") to the Transaction Notice Parties, after which the Transaction Notice Parties shall have (a) the number of days remaining in the Initial Objection Period plus (b) an additional three (3) business days, to object to such sale (the "Amended Objection Period");

vi.     any objections to any such transaction must (a) be in writing; (b) set forth the name of the objecting party; (c) provide the basis for the objection and the specific grounds therefor; (d) be filed electronically with the Court; and (e) be served on (i) the Debtors, Yellow Corporation, 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211, Attn.: General Counsel; (ii) proposed counsel to the Debtors, (A) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, 60654, Attn.: Whitney Fogelberg (whitney.fogelberg@kirkland.com) and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith (allyson.smith@kirkland.com) and (B) proposed co-counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, PO Box 8705, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns (tcairns@pszjlaw.com), Peter J. Keane (pkeane@pszjlaw.com), and Edward Corma (ecorma@pszjlaw.com); (iii) the Office of United States Trustee for the

---

[3]   The information may be provided in summary form or by attaching the applicable contract or contracts to the Transaction Notice.

District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Jane Leamy (jane.m.leamy@usdoj.gov) and Richard Shepacarter (richard.shepacarter@usdoj.gov); and (iv) proposed counsel to the Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036-6745 US, Attn.: Philip C. Dublin (pdublin@akingump.com), Meredith A. Lahaie (mlahaie@akingump.com), and Kevin Zuzolo (kzuzolo@akingump.com) and (B) proposed co-counsel to the Committee, Benesch Friedlander Coplan & Aronoff LLP, 1313 North Market Street, Suite 1201, Wilmington, DE, 19801, Attn.: Jennifer R. Hoover (jhoover@beneschlaw.com) and Kevin M. Capuzzi (kcapuzzi@beneschlaw.com), so as to be received on or before the Initial Objection Period or the Amended Objection Period, as applicable (collectively, the "<u>Transaction Notice Period</u>");

vii.    if no written objections are filed by the Transaction Notice Parties after the expiration of the applicable Transaction Notice Period or if such objections are withdrawn, the Debtors are authorized to consummate such transaction immediately;

viii.    if a written objection is received by a Transaction Notice Party within the Transaction Notice Period that cannot be resolved, the objection will be deemed a request for a hearing on the objection at the next scheduled hearing, subject to adjournment by the Debtors, and the relevant De Minimis Asset(s) shall only be sold upon withdrawal of such written objection, submission of a consensual form of order resolving the objection as between the Debtors and the objecting party, or further order of the Court specifically approving the sale or transfer of the De Minimis Asset(s); and

ix.    good faith purchasers of assets pursuant to these De Minimis Asset Transaction Procedures shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

11.    To the extent that De Minimis Assets cannot be sold at a price greater than the cost of liquidating such asset, including the cost of continuing to hold such asset, that is no longer needed for the Debtors' operations, the Debtors seek authority to abandon De Minimis Assets with a value of $250,000 or less (after taking into account the greater of net book value and appraised value (to the extent readily available)) in accordance with the following procedures (the "<u>De Minimis Asset Abandonment Procedures</u>"):

a.    For De Minimis Assets that the Debtors believe, as calculated within the Debtors' reasonable discretion and after consultation with the Consultation Parties, the cost

7

of continuing to maintain, relocate, and/or store such De Minimis Assets outweighs any potential recovery from a future sale, subject to the following notice procedures:

i.    the Debtors shall give written notice of the abandonment substantially in the form attached hereto as **Exhibit C** (each notice, an "Abandonment Notice") to the Transaction Notice Parties;

ii.    the Abandonment Notice shall contain, as may be applicable and solely to the extent such information is readily available: (a) an identification and description of, in reasonable detail, the De Minimis Assets to be abandoned, including the estimated book value and appraised value of the assets being abandoned as reflected in the Debtors' books and records; (b) identification of the serial number and VIN for the De Minimis Assets being abandoned; (c) the identification of the Debtor entity that directly owns the De Minimis Assets; (d) any commissions or disposal costs to be paid to third parties in connection with the abandonment thereof; (e) acquisition cost and date; (f) the Debtors' reasons for such abandonment; and (g) any fees or similar expenses to be paid in connection with such abandonment, if applicable;[4]

iii.    any objections to the abandonment of any De Minimis Asset must:  (a) be in writing; (b) set forth the name of the objecting party; (c) provide the basis for the objection and the specific grounds therefor; (d) be filed electronically with the Court; and (e) be served on (i) the Debtors, Yellow Corporation, 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211, Attn.:  General Counsel; (ii) proposed counsel to the Debtors, (A) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, 60654, Attn.: Whitney Fogelberg (whitney.fogelberg@kirkland.com) and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Allyson B. Smith (allyson.smith@kirkland.com) and (B) proposed co-counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, PO Box 8705, Wilmington, Delaware 19801, Attn:  Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns (tcairns@pszjlaw.com), Peter J. Keane (pkeane@pszjlaw.com), and Edward Corma (ecorma@pszjlaw.com); (iii) the Office of United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.:  Jane Leamy (jane.m.leamy@usdoj.gov) and Richard Shepacarter (richard.shepacarter@usdoj.gov); and (iv) proposed counsel to the Committee, (A) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036-6745 US, Attn.: Philip C. Dublin (pdublin@akingump.com), Meredith A. Lahaie (mlahaie@akingump.com), and Kevin Zuzolo (kzuzolo@akingump.com) and (B) proposed co-counsel to the Committee, Benesch Friedlander

---

[4]    The information may be provided in summary form or by attaching the applicable contract or contracts to the Abandonment Notice.

Coplan & Aronoff LLP, 1313 North Market Street, Suite 1201, Wilmington, DE, 19801, Attn.: Jennifer R. Hoover (jhoover@beneschlaw.com) and Kevin M. Capuzzi (kcapuzzi@beneschlaw.com), so as to be received on or before 4:00 p.m., prevailing Eastern Time on the seventh (7th) calendar day after receipt of such Abandonment Notice (the "Abandonment Objection Deadline");

iv.    if no written objections from any of the Transaction Notice Parties are filed with the Court on or before the Abandonment Objection Deadline, then the Debtors are authorized to immediately proceed with the abandonment; and

v.    if a written objection from any Transaction Notice Party is filed with the Court on or before the Abandonment Objection Deadline, the objection will be deemed a request for a hearing on the objection at the next scheduled hearing, subject to adjournment by the Debtors, and the relevant De Minimis Asset(s) shall only be abandoned upon withdrawal of such written objection, submission of a consensual form of order resolving the objection as between the Debtors, or further order of the Court specifically approving the abandonment or transfer of the De Minimis Asset(s).

12.    Additionally, the Debtors shall provide a written report to the Court, the United States Trustee, counsel to the Junior DIP Lender, counsel to the Junior DIP Agent, counsel to the United States Department of the Treasury, counsel to the B-2 Lenders, counsel to the ABL Agent, counsel to the Committee, and those parties requesting notice pursuant to Bankruptcy Rule 2002, no later than 30 days after the end of each calendar month, concerning any De Minimis Asset Transactions consummated during the preceding calendar month pursuant hereto, including the names of the purchasing parties and the types and amounts of the transactions, and any De Minimis Assets abandoned during the preceding calendar month pursuant hereto.

13.    The Debtors possess fuel, tires, spare parts, office furniture, computer equipment, and other such miscellaneous assets that would not be expected to be part of the sales process laid out in the bidding procedures.  The cost of individually noticing such sales and the time involved would be a significant impediment to value.  Time is also of the essence with some of these assets, especially to the extent these assets are stored in locations where the Debtors intend to either reject the underlying leases or sell the properties.

14.     The Debtors submit that the establishment of the foregoing procedures is desirable and in the best interests of the Debtors' estates, their creditors, and other parties in interest in these chapter 11 cases.  The use, sale, transfer, or abandonment of the De Minimis Assets will generate additional value and help preserve existing value for the benefit of the Debtors' estates and all parties in interest.  These procedures will promote an efficient administration of these chapter 11 cases, make De Minimis Asset Transactions cost effective, and expedite the use, sale, or transfer of more valuable assets in a manner that will provide the most benefit to the Debtors' estates and creditors.

## Basis for Relief

**II.     The De Minimis Asset Transaction Procedures Are Appropriate Under Section 363(b) of the Bankruptcy Code.**

15.     Section 363(b)(l) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(l).  Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (approval of section 363(b) sale is appropriate if good business reasons exist for such sale); *see also In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991); *In re Trans World Airlines, Inc.*, Case No. 01-00056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

16.     The Debtors submit that the De Minimis Asset Transaction Procedures reflect a reasonable exercise of their business judgment.  Courts generally will accord significant deference to a debtor's business judgment to use or sell assets outside the ordinary course of business. *See In re WA. Mallory Co., Inc.*, 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the case law.").  Requiring the Debtors to file a motion with the Court each time the Debtors seek to dispose of relatively insignificant, non-core assets would distract from their restructuring efforts and force the Debtors to incur unnecessary costs that would reduce whatever value might be realized from the sale, use, or transfer of De Minimis Assets.  In addition, the De Minimis Asset Transaction Procedures afford those creditors with an interest in the De Minimis Assets the opportunity to object to their use, sale, or transfer and obtain a hearing if necessary, and the relief requested will not apply to sales of De Minimis Assets to "insiders," as that term is defined in section 101(31) of the Bankruptcy Code.

## III.    The De Minimis Asset Transaction Procedures Are Appropriate Under Section 363(f) of the Bankruptcy Code.

17.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if:  (a) applicable nonbankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).

18.    The Debtors propose to sell or transfer the De Minimis Assets in a commercially reasonable manner and expect that the value of the proceeds from such sales or transfers will fairly reflect the value of the property sold.  The Debtors further propose that any party holding a Lien on De Minimis Assets sold or transferred pursuant to this motion shall have a corresponding security interest (in the same order of priority, with the same validity, force, and effect that such Lien-holder had prior to the sale, subject to any claims and defenses the Debtors may possess with respect thereto) in the proceeds of such sale or transfer.  Moreover, the Debtors propose that no objection to the entry of the Order approving this motion along with no timely objection under the De Minimis Asset Transaction Procedures, as applicable, in each case following the provision of notice, be deemed "consent" to any sales or transfers pursuant to the Order within the meaning of section 363(f)(2) of the Bankruptcy Code.  As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales or transfers free and clear of Liens.

IV.    **Sales or Other Divestitures of De Minimis Assets Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

19.    Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a purchaser who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.  *See* 11 U.S.C. § 363(m).  "Although the Bankruptcy Code does not define the meaning of 'good-faith purchaser,' most courts have adopted a traditional equitable definition:  one who purchases the assets for value, in good faith and without notice of adverse claims." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal citations omitted).  The Third Circuit has held that "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [a purchaser's] conduct in the course of the sale

12

proceedings." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted). Typically, the misconduct that would destroy a purchaser's good faith status involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 56 (7th Cir. 1983) (emphasis omitted) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor to section 363(m)). The Debtors submit that any agreement that results in the sale or divestiture of De Minimis Assets will be an arm's-length transaction entitled to the protections of section 363(m).

## V.    The De Minimis Asset Abandonment Procedures Are Appropriate Under Section 554(a).

20.    Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The Debtors expect to take commercially reasonable steps under the circumstances to sell De Minimis Assets not needed in their operations. The costs associated with sales of certain De Minimis Assets, however, may exceed any possible proceeds thereof. The inability to consummate a commercially reasonable sale of De Minimis Assets would indicate that these Assets have no meaningful monetary value to the Debtors' estates. Further, the costs of storing and maintaining such De Minimis Assets may burden the Debtors' estates so abandonment of such De Minimis Assets pursuant to the Abandonment Procedures is in the best interest of the Debtors' estates. Accordingly, the Debtors contend that, in such circumstances, the abandonment of De Minimis Assets pursuant to the Abandonment Procedures is in the best interest of the Debtors' estates.

13

## VI.     This Court and Others Have Approved Similar Procedures.

21.     In light of the demonstrable benefits of streamlined procedures to sell and abandon De Minimis Assets and the legal justifications described above, courts in this Circuit and others have approved procedures similar to the De Minimis Asset Transaction Procedures in large chapter 11 cases.   *See, e.g.*, *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Feb. 13, 2023) (authorizing sales of de minimis assets up to $5 million); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. July 16, 2020) (authorizing sales and abandonment up to $4.5 million); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Dec. 6, 2019) (authorizing sales up to $2.5 million and abandonment up to $1.5 million); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Jun. 3, 2014) (authorizing sales up to $5 million); *In re Flying J, Inc.*, No. 08-13384 (MFW) (Bankr. D. Del. Feb. 19, 2009) (same); *see also In re Sears Holdings Corp.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2018) (authorizing sales up to $15 million).[5]

22.     As courts in this District and others have recognized, the usual process of obtaining Court approval of each De Minimis Asset Transaction:   (a) would impose unnecessary administrative burdens on the Court and usurp valuable Court time at hearings; (b) would create costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying transactions; and (c) will hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time—especially as the Debtors continue to wind down operations.   On the other hand, the De Minimis Asset Transaction Procedures and the De Minimis Asset Abandonment Procedures will monetize otherwise unusable assets, protect the

---

[5]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

Debtors against the possible declining value of certain De Minimis Assets, save the Debtors interim holding or storage costs, eliminate certain administrative costs, and expedite the sale of De Minimis Assets for the benefit of the Debtors' estates.  By obtaining relief to expedite the sale of De Minimis Assets, the Debtors can capitalize on value rather than delay the sale of De Minimis Assets to the final phases of these chapter 11 cases.  Accordingly, the Court should approve the proposed De Minimis Asset Transaction Procedures and the De Minimis Asset Abandonment Procedures.

### Reservation of Rights

23.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

DOCS_DE:244494.1 96859/001

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

24.      To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **Notice**

25.      The Debtors will provide notice of this motion to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as proposed counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto; (i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  In light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

26.      No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

16

WHEREFORE, the Debtors respectfully requests that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  August 29, 2023
Wilmington, Delaware

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:      (302) 652-4100
Facsimile:       (302) 652-4400
Email:             ljones@pszjlaw.com
                       tcairns@pszjlaw.com
                       pkeane@pszjlaw.com
                       ecorma@pszjlaw.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
Whitney Fogelberg (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:             patrick.nash@kirkland.com
                       david.seligman@kirkland.com
                       whitney.fogelberg@kirkland.com

-and-

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:             allyson.smith@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*