**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) ) | Case No. 23-11069 (CTG) |
| Debtors. | ) ) ) | (Jointly Administered) |

**APPLICATION OF THE DEBTORS TO
RETAIN ALVAREZ & MARSAL NORTH AMERICA, LLC AS
FINANCIAL ADVISORS TO DEBTORS AND DEBTORS IN POSSESSION
PURSUANT TO SECTIONS 327(A) AND 328 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this application:[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit C** (the "Order"), authorizing, but not directing the Debtors to retain Alvarez & Marsal North America, LLC together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "A&M") as financial advisors to the Debtors, effective as of the Petition Date.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"). Capitalized terms used but not immediately defined in this application have the meanings ascribed to them later in this application or in the First Day Declaration, as applicable.

**Jurisdiction and Venue**

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-2.

**Background**

5. On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169]. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee")

appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee"). No trustee or examiner has been appointed in these chapter 11 cases.

## Retention of A&M

6.  In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estates. A&M is well qualified to provide these services in light of its extensive knowledge and expertise with respect to chapter 11 proceedings.

7.  A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position, monitoring and managing cash, cash flow and supplier relationships, assessing and recommending cost reduction strategies, and designing and negotiating financial restructuring packages. *See, e.g.*, *In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO) (Bankr. D. Del. April 4, 2023); *Fast Radius, Inc.*, No. 22-11051 (JKS) (Bankr. D. Del. Nov. 7, 2022); *In re Packable Holdings, LLC f/k/a Entourage Commerce, LLC*, No. 22- 10797 (CTG) (Bankr. D. Del. Oct. 11, 2022); *In re GT Real Estate Holdings, LLC*, No. 22-10505 (KBO) (Bankr. D. Del. Jul. 18, 2022); *In re Clover Techs. Grp.*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 21, 2020); *In re Libbey Glass, Inc.*, No. 20-11439 (LSS) (Bankr. D. Del. Jun. 1, 2020); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Sept. 24, 2019); *In re Bristow Group Inc.*, No. 19-32713 (DRJ) (Bankr. D. Del. May 11, 2019); *In re Southcross Energy Partners, L.P.*, No. 19-10702 (MFW) (Bankr. D. Del. Apr. 1, 2019); *In re Imerys Talc America, Inc.*, No. 19-10289 (LSS) (Bankr. D. Del. Feb. 13, 2019).

8.  In addition, A&M is familiar with the Debtors' businesses, financial affairs, and capital structure. Since the start of A&M's current engagement on July 7, 2023, the A&M personnel providing services to the Debtors (the "A&M Professionals") have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these chapter 11 cases. Further, as more fully described in the Whittman Declaration (as defined below and attached hereto), A&M has previously provided services to the Debtors at various points in time dated back to approximately 2008 and a number of the A&M Professionals have prior experience working with the Debtors on those engagements. Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors and the unique circumstances of this case. For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases. Accordingly, the Debtors submit that the retention of A&M on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## Scope of Services

9.  The Debtors' prepetition engagement letter (the "Engagement Letter") with A&M is attached hereto as **Exhibit A**, the terms of which shall govern the Debtors' retention of A&M except as explicitly set forth herein or in any order granting this Application.

10. It is our understanding that the Debtors have chosen Ducera Partners LLC ("Ducera") to act as its investment banker. A&M will work closely with Ducera to prevent any duplication of efforts in the course of advising the Debtors.

11. Among other services, A&M will provide assistance to the Debtors with respect to managing the overall wind-down process, the chapter 11 process, and supporting the asset sale

process as well as negotiations among the debtors, their advisors and their creditors with respect to the chapter 11 cases.

12. A&M will provide such restructuring support services as A&M and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of these chapter 11 cases, including, but not limited to:

(a) assistance in the development of an initial cash flow forecast;

(b) assistance in the continued development and management of a 13-week cash flow forecast as well as assistance in the management of liquidity;

(c) assistance to the Debtors in their contingency planning efforts, including a Chapter 11 filing;

(d) assistance to the Debtors with information and analyses required pursuant to the Debtors' debtor-in-possession ("DIP") financing;

(e) assistance to the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

(f) assistance in financing issues including assistance in preparation of reports and liaison with creditors;

(g) assistance in preparing information and analysis required for asset sales and for a disclosure statement and chapter 11 plan;

(h) assistance in winding down the Debtors business operations;

(i) assistance in bankruptcy specific tax and compensation matters;

(j) report to the Board of Yellow Corporation; and

(k) other activities as approved by the Debtors' board of directors and management, and as agreed to by A&M.

13. Yellow Corporation is acting as the Foreign Representative on behalf of YRC Freight Canada Company, YRC Logistics Inc., and certain other Canadian affiliates (collectively, "Yellow Canada") in connection with Yellow Canada's application to the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") for ancillary recognition

proceedings under Part IV of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C.-36, as amended, of Canada (the "Recognition Proceedings"). At the request of the Debtors, a subsidiary of A&M, Alvarez & Marsal Canada Inc. ("A&M Canada") agreed to perform the role of, and was appointed by the Canadian Court as, Information Officer in the Recognition Proceedings, pursuant to an order of the Canadian Court granted on August 29, 2023. A&M Canada commenced its work in preparation for its role as Information Officer on July 24, 2023. On August 29, 2023, the Canadian Court granted the Initial Recognition Order and Supplemental Order, which, among other things, declared that the Chapter 11 proceeding is a "foreign main proceeding" and recognized and gave effect in Canada to relevant "first day" orders granted in the chapter 11 proceeding. As Information Officer, A&M Canada will report to the Canadian Court from time to time (including at the hearing of the initial application) on the status of the chapter 11 proceeding, the wind-down of the Debtors, the U.S. orders sought to be recognized and given effect by the Canadian Court, and any other information that may be material to the Canadian Court. A&M Canada agreed to perform the Information Officer role based on the understanding that the interests of Yellow Canada and the Debtors are aligned, and therefore A&M's role as Information Officer, and its preparation for such role, do not result in A&M Canada representing an interest adverse to the Debtors.

14. Prior to and leading up to the Petition Date, A&M's affiliate, Alvarez & Marsal Tax, LLC ("A&M TAX") provided compensation and benefits consulting to the Debtors pursuant to a separate "Statement of Work" under A&M's engagement agreement. A&M, A&M TAX, and the Debtors have agreed that from and after the Petition Date, during the terms of these chapter 11 cases, such compensation and benefits services will be provided by A&M utilizing A&M TAX personnel under the terms of the Engagement Letter and not pursuant to such other agreement.

## A&M's Disinterestedness

15. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Declaration of Brian Whittman (the "<u>Whittman Declaration</u>"), attached hereto as **Exhibit B**, A&M: (a) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

16. Accordingly, the Debtors believe that A&M is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

17. In addition, as set forth in the Whittman Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

## Terms of Retention

18. Subject to approval by the Court, the Debtors propose to employ and retain A&M to serve as the Debtors' financial advisor on the terms and conditions set forth in the Engagement Letter and this application.

19. <u>Compensation</u>. In accordance with the terms of the Engagement Letter, A&M will be paid by the Company for the services of the A&M Professionals at their customary hourly billing rates which shall be subject to the following ranges:

| Position | Hourly Rate |
|---|---|
| Managing Directors | $1,025 – 1,375 |
| Directors | $775 – 975 |
| Analysts / Associates | $425 – 775 |

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

7

20.     In addition, A&M will be reimbursed for the reasonable out-of-pocket expenses of the A&M Professionals incurred in connection with this assignment, such as travel, lodging, third-party duplications, messenger, and telephone charges. In addition, A&M shall be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the preparation and approval of this application. All fees and expenses due to A&M will be billed in accordance with any interim compensation orders entered by this Court and the relevant sections of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

21.     <u>Indemnification</u>.  As a material part of the consideration for which the A&M Professionals have agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions attached to the Engagement Letter. Notwithstanding the foregoing, the Debtors and A&M have agreed to modify such provisions as follows during the pendency of these chapter 11 cases:

(a)     A&M shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefore are approved by the Court;

(b)     the Debtors shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from A&M's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of A&M contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&M's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which A&M should not receive indemnity, contribution, or reimbursement under the terms of the Agreement as modified by this Order; and

(c)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, A&M believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors'

indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this application), including without limitation the advancement of defense costs, A&M must file an application therefore in this Court, and the Debtors may not pay any such amounts to A&M before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by A&M for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify A&M. All parties in interest shall retain the right to object to any demand by A&M for indemnification, contribution, or reimbursement.

### Fees and Reporting

22.    The Debtors understand that A&M intends to apply to the Court for allowance of compensation and reimbursement of expenses for its restructuring advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, and guidelines established by the United States Trustee.

23.    A&M received $1,400,000 as a retainer in connection with preparing for and conducting the filing of these Chapter 11 cases, as described in the Engagement Letter. In the ninety days prior to the Petition Date, A&M received retainers and payments totaling $3,049,724 in the aggregate for services performed for the Debtors. A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first interim fee application for post-petition services and expenses to be rendered or incurred for or on behalf of the Debtors. The unapplied residual retainer, which is estimated to total approximately $350,000, will be held in a segregated non-interest-bearing account (which may hold other A&M and A&M affiliate client retainers), separate from the general account to which A&M will direct payment of ongoing fees and expenses until the end of these chapter 11 cases and applied to A&M's finally approved fees in these proceedings.

24.     Given the numerous issues that A&M may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

### Basis for Relief

25.     The Debtors submit that the retention of A&M under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).  Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person who:

(a)     is not a creditor, an equity security holder, or an insider;

(b)     is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(c)     does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.  11 U.S.C. § 101(14).

26.     Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).  A&M's prepetition relationship with the Debtors is therefore not an impediment to A&M's retention as the Debtors' postpetition financial advisor.

27.    Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . ." 11 U.S.C. § 328(a).  The Debtors submit that the terms and conditions of A&M's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in line with the terms and conditions typical for engagements of this size and character.  Since the Debtors will require substantial assistance with their chapter 11 process, it is reasonable for the Debtors to seek to employ and retain A&M to serve as their financial advisor on the terms and conditions set forth herein.

28.    Based upon the foregoing, the Debtors submit that the retention of A&M, on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted.

## Notice

29.    The Debtors will provide notice of this application to:  (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as proposed counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto;(i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

30.     No prior request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit C**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  August 30, 2023                                                Respectfully submitted,

                                                                     */s/ Matthew A. Doheny*
                                                                      Name: Matthew A. Doheny
                                                                      Title:   Chief Restructuring Officer
                                                                               Yellow Corporation