**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| Debtors. | ) (Jointly Administered) |

**APPLICATION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE RETENTION AND EMPLOYMENT
OF DUCERA PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS
EFFECTIVE AS OF THE PETITION DATE, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), represent as follows in support of this application (the "Application"):[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit B** (the "Order"), pursuant to sections 105(a), 327(a), and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the retention and employment of Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC (collectively, "Ducera") as investment banker to the Debtors effective as

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"). Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration, as applicable.

of the Petition Date (defined below) in accordance with the terms and conditions set forth in the engagement letter, effective as of February 6, 2023, as amended and restated by that certain superseding engagement agreement, dated June 30, 2023 (as amended and superseded, the "Engagement Letter"), a copy of which is attached to the Order as Exhibit 1. In support of this Application, the Debtors submit the [*Declaration of Cody Kaldenberg in Support of the Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Ducera Partners LLC as Investment Banker to the Debtors Effective as of the Petition Date, and (II) Granting Related Relief*] (the "Kaldenberg Declaration"), which is attached hereto as **Exhibit A**, and incorporated herein by reference. In further support of this Application, the Debtors respectfully state as follows:

## Jurisdiction and Venue

2.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory bases for the relief requested herein are sections 105(a), 327(a), and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"),

rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-2.

## Background

5. On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169]. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee"). No trustee or examiner has been appointed in these chapter 11 cases.

6. Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in the *Declaration of Cody Leung Kaldenberg, Founding Member and Partner at Ducera Partners LLC in Support of the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Authorizing the Debtors to Use UST Cash Collateral, (V) Granting Adequate Protection, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 18] (the "Kaldenberg First Day Declaration"), which is incorporated herein by reference.

## Ducera's Qualifications

7. As set forth in the Kaldenberg Declaration, Ducera is an investment banking firm that maintains an office located at 11 Times Square, 36th Floor, New York, New York 10036.

Ducera's seasoned professionals, with roots in complex corporate finance, offer impartial and independent strategic advice to stakeholders in a broad range of transactions and industry sectors. Ducera specializes in, among other things, providing clients with leading-edge capital structure and restructuring advice and services in workout and bankruptcy situations.

8. Ducera and its professionals have extensive experience working with financially distressed companies within a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Founded in 2015, Ducera's business reorganization professionals have served as financial and strategic advisors in a number of recent in-court restructurings, including: (a) *In re Diebold Holding Co., LLC*, No. 23-90602 (DRJ) (Bankr. S.D. Tex. July 18, 2023) [Docket No. 266]; (b) *In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO) (Bankr. D. Del. May 15, 2023) [Docket No. 261]; (c) *In re Core Scientific, Inc.*, No. 22-90341 (DRJ) (Bankr. S.D. Tex. March 13, 2023) [Docket No. 675]; (d) *In re Endo Int'l plc.*, No. 22-22549 (JLG) (Bankr. S.D.N.Y. Oct. 25, 2022) [Docket No. 527]; (e) *In re GBG USA Inc.*, No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 22, 2021) [Docket No. 230]; (f) *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Mar. 16, 2021) [Docket No. 1741]; and (g) *In re Superior Energy Servs., Inc.*, No. 20-35812 (DRJ) (Bankr. S.D. Tex. Feb. 2, 2021) [Docket No. 316]. Ducera has experience in a variety of industries, providing specialized advice on matters including, but not limited to, restructurings, mergers, acquisitions, financings, capital structure advisory and chapter 11 sales.

9. As an internationally recognized advisory firm, Ducera has an excellent reputation for advising both debtors and creditors in large and complex chapter 11 cases. The Debtors believe that Ducera and its professionals are well qualified to serve as their investment banker in the Chapter 11 Cases.

## Scope of Services

10. During the Term (as defined in the Engagement Letter), Ducera shall provide financial advisory and investment banking services to the Debtors relating to the services set forth herein:[3]

(a) *General Financial Advisory and Investment Banking Services.* Ducera shall: (1) familiarize itself with the business, operations, financial condition, financial statements, business plans, forecasts, and capital structure of the Debtors; (2) assist with the evaluation of the Debtors' debt capacity and alternative capital structures in light of its projected financial performance; and (3) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated by the Engagement Letter.

(b) *Financing Services.*[4] Ducera shall: (1) provide financial advice to the Debtors in connection with the structure and effectuation of a Financing, identify potential Investors and, at the Debtors' request, contact and solicit such Investors; and (2) assist with the arrangement of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing; *provided, however*, it is understood that nothing contained in the Engagement Letter shall constitute an express or implied commitment by Ducera to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.

(c) *Sale Services.*[5] If requested by the Debtors, Ducera shall: (1) provide financial advice to the Debtors in structuring, evaluating and effectuating a

---

[3] To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

[4] The term "Financing" is defined in the Engagement Letter as follows: "[A] private issuance, sale, or placement of the equity, equity-linked, preferred equity, including warrants or hybrid capital, convertible debt, financing instruments, obligations, or debt (including, but not limited to, revolving credit and asset backed lending facilities, and debtor-in-possession financing and any amendment or extension of the Company's existing debt or equity as of the date hereof) of the Company with one or more lenders and/or investors, acceptable to the Company (each such lender or investor, an "Investor")."

[5] The term "Sale" is defined in the Engagement Letter as follows: "[A]ny transaction or series of transactions (other than a Restructuring) involving: (a) an acquisition, merger, consolidation or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with, or acquired by, another non-affiliated company; (b) the acquisition, directly or indirectly, by a non-affiliated buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act or 1934, as amended) of equity interests or options, or any combination hereof, constituting a majority of the then-outstanding stock of the Company or possessing a majority of the then-outstanding voting power of the Company ("Voting Stock"); (c) any other purchase or acquisition, directly or indirectly, by a non-affiliated buyer or buyers or a majority of

   Sale, identify potential counterparties and, at the Debtors' written (email to be sufficient) request, contact and solicit potential acquirers; and (2) assist with the arrangement and execution of a Sale, including identifying potential buyers or parties in interest, assisting in the due diligence process, and negotiating the terms of any proposed Sale.

 (d) *Restructuring Services*.[6] If requested by the Debtors, Ducera shall: (1) analyze various Restructuring scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the Restructuring; (2) provide strategic advice with regard to restructuring or refinancing the Debtors' Existing Obligations;[7] (3) provide financial advice and assistance to the Debtors in developing a Restructuring; (4) in connection therewith, provide financial advice and assistance to the Debtors in structuring any new securities to be issued under a Restructuring; and (5) assist the Debtors and/or participate in negotiations with entities or groups affected by the Restructuring.

## No Duplication of Services

11. Ducera understands that the Debtors have retained, and may retain, additional professionals during the term of the engagement and will use its reasonable efforts to work cooperatively with such professionals to integrate any respective work conducted by the

---

the assets or Voting Stock of the Company; or (d) the formation of a joint venture partnership or similar entity with the Company or direct investment in the Company for the purposes of effecting a transfer of a majority of the Voting Stock of the Company to a third party, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, or any similar transaction."

[6] The term "Restructuring" is defined in the Engagement Letter as follows: "[A]ny restructuring, reorganization, modification, rescheduling and/or recapitalization (other than a Sale) (whether or not pursuant to one or more proceedings voluntarily or involuntarily commenced under chapters 7 or 11 of title 11 of the United States Code, 11 U.S.C. 101–1532 (as amended, the "Bankruptcy Code") or any cases converted thereto (the "Bankruptcy Cases" and the court having jurisdiction over such cases, the "Bankruptcy Court")) of the Company's Existing Obligations (as defined herein) that is achieved through, without limitation: (a) a solicitation of material waivers and consents from the holders of Existing Obligations; (b) rescheduling of the maturities of Existing Obligations; (c) a material change in interest rates, repurchase, settlement, repayment, or forgiveness of Existing Obligations; (d) a material amendment to the Existing Obligations; (e) conversion of Existing Obligations into equity; (f) an exchange offer, or an amend-and-extend involving the issuance of new loans and/or securities in exchange for Existing Obligations (including, for the avoidance of doubt, any general forbearance granted by holders of Existing Obligations); (g) a sale of all, or a material portion, of the Company's assets pursuant to §363 of the Bankruptcy Code (a "363 Sale"); or (h) other similar transaction or series of transactions."

[7] The term "Existing Obligations" is defined in the Engagement Letter as follows: "[T]he material outstanding indebtedness of the Company including, but not limited to, bank debt, bond debt, asset back lending facilities, term loans, credit facilities, trade claims, leases (both on and off-balance sheet), pension obligations, litigation-related claims and obligations, other on and off-balance sheet indebtedness, workers' compensation claims and obligations, and other liabilities."

professionals on behalf of the Debtors. The services that Ducera will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the services will not duplicate but, rather, will complement, the services that other professionals will be providing to the Debtors in the Chapter 11 Cases. Ducera will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

## Professional Compensation

12. Investment bankers such as Ducera do not typically charge for their services on an hourly basis. Instead, they customarily charge periodic retainer fees plus additional fees that are contingent upon the occurrence of a specified type of transaction. The compensation arrangements that have been negotiated between Ducera and the Debtors are highly beneficial to the Debtors as they provide certainty and proper inducement for Ducera to act expeditiously and prudently with respect to the matters for which it will be employed. The Debtors are seeking to retain Ducera under section 328(a) of the Bankruptcy Code, thus the Debtors believe that Ducera's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code, and does not constitute a "bonus" or fee enhancement under applicable law.

13. In consideration of the services to be provided by Ducera, and as more fully described in the Engagement Letter, subject to the Court's approval, the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, the Debtors have agreed to pay Ducera the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure"), which may be summarized as follows:[8]

---

[8] Capitalized terms used but not defined in this Paragraph 13 shall have the meaning given to them in the Engagement Letter.

(a) *Retainer and Monthly Advisory Fee*: for services rendered in accordance with subparagraph 10(a) of this Application:

    (1) a one-time nonrefundable fee of $500,000, which shall be earned, due, and payable upon execution of the Engagement Letter and shall be credited against the Financing Fee as set forth therein (the "Retainer Fee"); *plus*,

    (2) commencing as of June 1, 2023, the Debtors shall pay Ducera a non-refundable monthly cash fee of $200,000, due and payable on the first day of each and every month during the Term (as defined in the Engagement Letter) (the "Monthly Advisory Fee").

(b) *Financing Fee*: for services rendered in accordance with subparagraph 10(b) of this Application, a financing fee, which shall be earned, due, and payable upon (and subject to the occurrence of) the closing of a Financing (the "Financing Fee"). The Financing Fee shall be:

    (1) 1.0% of the face amount of senior secured debt (including, but not limited to, revolving credit and asset backed lending facilities) Raised;[9]

    (2) 3.0% of the face amount of any unsecured and junior secured debt Raised; and

    (3) 5.0% of any equity capital, convertible, or hybrid capital, including warrants, or similar contingent equity securities Raised.

(c) *Transaction Fee*: for services rendered in accordance with subparagraph 10(c) and subparagraph 10(d) of this Application, a transaction fee, which shall be due and payable upon consummation of a Sale or a Restructuring

---

[9] The term "Raised" is defined in the Engagement Letter as follows: "[T]he total amount committed by an Investor on the closing date of such Financing, in each case on terms acceptable to the Company, irrespective as to whether or not the Company draws any or all of the amount committed by an Investor, and whether or not the Company applies such amounts to finance any of its obligations or a transaction. *For illustrative purposes*, in connection with any revolving credit or asset backed lending facilities, all fees set forth in Section 2 shall be calculated based on the total amount of the facility, including any letters of credit, irrespective as to whether the Company is permitted immediately to draw upon the full amount of facility, including any borrowing base, at the time of commitment."

(the "Transaction Fee").[10] The Transaction Fee shall be calculated as the greater of:[11]

(1) In the event of a Restructuring, a fee of $15,000,000 due and payable upon consummation of a Restructuring; and

(2) In the event of a Sale, including through a 363 Sale, a fee equal to the Transaction Value multiplied by the Applicable Fee percentage reflected in the chart below:[12]

---

[10] As set forth in the Engagement Letter, a "Restructuring shall be deemed to have been consummated upon: (a) the closing of the applicable transaction by which the Existing Obligations of the Company are to be restructured or refinanced; or (b) in the case of a Court approved Restructuring, the date that the applicable Chapter 11 plan of reorganization becomes effective in accordance with the terms and conditions thereof; *provided*, that if the Restructuring is to be completed, in whole or in part, through a public exchange offer, pre-arranged or prepackaged Restructuring, or a 363 sale process (as defined herein): (i) 50% of the Restructuring Fee shall be earned and shall be payable upon obtaining support (e.g. via a term sheet, restructuring support agreement or other agreement in principle documenting they key terms of such prearranged Plan) from one or more of the Company's key creditor classes that is sufficient to justify launching such exchange offer or filing such pre-arranged or pre-packaged Restructuring; and (ii) the remainder of such fees shall be earned and shall be payable upon consummation of the Restructuring; *provided*, *further*, that in the event that Ducera is paid a Restructuring Fee in connection with a prearranged or pre-packaged Restructuring, and such a Restructuring is not thereafter consummated, then such fee previously paid to Ducera may be credited by the Company against any subsequent fee hereunder that becomes payable by the Company to Ducera or, if such crediting does not equal 100% of the pre-paid portion of the Restructuring Fee, then such fee shall be returned to the Company upon the termination of the [Engagement Letter]."

[11] For the avoidance of doubt, in the context of a 363 Sale, Ducera will not separately earn a Restructuring Fee on any plan of reorganization under the Bankruptcy Code that simply distributes proceeds from such 363 Sale.

[12] The term "Transaction Value" is defined in the Engagement Letter as follows: "(a) all cash paid or payable to the Company or its shareholders (or holders of executive equity awards ("Awards")) by the purchaser in the Sale (including indemnity and net working capital escrow amounts); (b) the fair market value of all notes, securities and other property issued or delivered or to be issued or delivered to the Company or its shareholders (including holders of Awards) by the purchaser in the Sale; (c) liabilities, including all indebtedness for borrowed money of the Company or its Subsidiaries, pension liabilities, non-ordinary course guarantees, plus any amount required to be shown on a consolidated balance sheet of the Company as of the most recent quarterly consolidated balance sheet date for capitalized leases, in all cases provided that such liabilities, indebtedness or capital leases are still outstanding as of the closing date of the Sale and directly or indirectly assumed, refinanced, extinguished or consolidated by the purchaser; (d) amounts paid or payable to the Company's direct or indirect security holders and management under consulting, non-compete or similar agreements; (e) if the Sale includes the disposition of assets, the value of net current assets of the business that is the target of the Sale that are not sold in the Sale; (f) the amount of any extraordinary dividends or distributions paid to the Company's shareholders (including Awards) in connection with or contemplated by the Sale; and (g) if the Sale takes the form of a recapitalization, restructuring or similar transaction, the fair market value of equity securities retained, directly or indirectly, by the Company's shareholders (including Awards) upon consummation of such a Sale (such securities and all securities received by such shareholders being deemed to have been paid to such security holders in such a Sale). For purposes of computing Transaction Value hereunder, non-cash consideration will be valued as follows: (x) publicly traded securities will be valued at the average of their closing prices (as reported in *The Wall Street Journal* or other reputable source reasonably designated by Ducera if *The Wall Street Journal* does not publish such closing prices) for the five trading days prior to the closing of a Sale, (y) options will be valued using the treasury stock method without giving effect to tax implications, and (z) the value of any cash held at the Company,

| Transaction Value Component | Applicable Fee % for Transaction Value Component[13] |
|---|---|
| Transaction Value of less than $200 million | 2.000% |
| Transaction Value between $200 million and $300 million | 1.650% |
| Transaction Value between $300 million and $400 million | 1.500% |
| Transaction Value between $400 million and $500 million | 1.400% |
| Transaction Value between $500 million and $600 million | 1.300% |
| Transaction Value between $600 million and $700 million | 1.200% |
| Transaction Value between $700 million and $800 million | 1.150% |
| Transaction Value between $800 million and $900 million | 1.100% |
| Transaction Value between $900 million and $1.0 billion | 1.050% |
| Transaction Value between $1.0 billion and $1.25 billion | 1.000% |
| Transaction Value between $1.25 billion and $1.5 billion | 0.925% |
| Transaction Value between $1.5 billion and $1.75 billion | 0.850% |
| Transaction Value between $1.75 billion and $2.0 billion | 0.775% |
| Transaction Value in excess of $2.0 billion | 0.700% |

(d) *Discount*: the Debtors shall receive a discount of $100,000, per month against the greater of the Transaction Fee and the Financing Fee for each month commencing after payment of the sixth (6) Monthly Advisory Fee

---

the value of all installment or any contingent payments to be made to the Company or its shareholders in a Sale (including Awards) or non-cash consideration will be determined in good faith by and between Ducera and the Company."

[13] *For illustrative purposes only*, if the Debtors were to sell three (3) assets (Asset A for $100 million, Asset B for $350 million, and Asset C for $500 million) as part of an in-court Restructuring, the fee in accordance with subparagraph 10(c)(2) would be $13.75 million, calculated as follows (a) $2 million (2% of $100 million), (b) $5.25 million ($350 million at 1.50%), (c) $6.5 million ($500 million at 1.3%).

(the "Ducera Discount"); *provided, however*, that: (i) the Ducera Discount shall only apply if any and all outstanding invoices for Monthly Advisory Fees have been paid before, or in connection with, the consummation of a Transaction, Sale or Financing; (ii) that no Monthly Advisory Fee shall be credited more than once; and (iii) in no event shall the aggregate fees be reduced below zero.

(e) *Expenses and Payments*: in addition to the fees set forth in this Paragraph 13, the Debtors agree upon request to promptly reimburse Ducera for its reasonable and documented out-of-pocket expenses, including, but not limited to, travel and transportation expenses, third party research and telecommunication expenses, printing costs, courier and other shipping and mailing costs and, in the case of advisors, limited to the reasonable expenses of Ducera's one external legal counsel, any other professional advisors approved by the Debtors, and other reasonable and documented out of pocket expenses incurred in connection with Ducera's engagement or the performance of services hereunder or any other assignments undertaken by Ducera at the Debtors' request; *provided, however*, that this subparagraph 13(e) shall in no way affect the Debtors' obligations as set forth in Annex A of the Engagement Letter. All payments due under this Application shall be made in U.S. dollars in immediately available funds, free and clear of any set off, claim, and applicable taxes (with appropriate gross up for any taxes withheld).

14. The Debtors and Ducera acknowledge and agree that the Debtors are under no obligation to consummate a Financing, a Sale, or a Restructuring as set forth herein and, in the event the Debtors are unable or unwilling to do so, the Debtors shall have no obligation or liability (other than the Terms and Conditions set forth in Annex A of the Engagement Letter) to Ducera. The Debtors and Ducera further acknowledge and agree that: (a) hours worked, (b) the results achieved and (c) the ultimate benefit to the Debtors of the work performed, in each case, in connection with this engagement, may be variable, and that the Debtors and Ducera have taken such factors into account in setting the fees hereunder. To the extent further services are requested by the Debtors, the Debtors and Ducera acknowledge and agree to negotiate in good faith a reasonable scope of services and fee structure in connection with any such further services provided by Ducera, depending on the size, scope, and nature of the services to be provided.

15. Ducera will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in the Chapter 11 Cases.

**The Fee and Expense Structure is Appropriate and Reasonable**

16. The Debtors believe that the Fee and Expense Structure summarized above and described more fully in the Engagement Letter is comparable to compensation arrangements entered into by Ducera and other comparable firms rendering similar services under similar circumstances and is reasonable, market-based and merited by Ducera's expertise. The Fee and Expense Structure is designed to compensate Ducera fairly for its work and to cover customary expenses.

17. The Fee and Expense Structure summarized above and described more fully in the Engagement Letter is consistent with Ducera's normal and customary billing practices for comparably sized and complex cases and transactions, both in- and out-of-court, involving the services to be provided in connection with the Chapter 11 Cases.

18. Other than as set forth in this Application or in the Engagement Letter, there is no proposed arrangement between the Debtors and Ducera for compensation to be paid in the Chapter 11 Cases. Ducera has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

19. Ducera is not a creditor of the Debtors' estates and has been fully paid by the Debtors for all prepetition services rendered by Ducera to the Debtors.

**Record Keeping and Applications for Compensation**

20. The Debtors respectfully request that Ducera's professionals only be required to maintain records (in summary format) of the services rendered to the Debtors, including (a) summary descriptions of those services, (b) the approximate time expended in providing those services in half-hour (0.5) increments and (c) the identity of the professionals who provided those

services. Consistent with industry practice, investment banking firms—including Ducera—do not maintain time records on a "project category" basis similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Pursuant to Local Rule 2016-2(h), Ducera should be excused from compliance with such information requirements set forth in Local Rule 2016-2(d) with respect to Ducera's professional fees only. Rather, the Debtors ask that Ducera should be required only to maintain time records in half-hour (0.5) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

21. The Debtors further respectfully request that Ducera's professionals not be required to keep time records on a "project category" basis, and that its non-investment banking professionals and personnel in administrative departments not be required to maintain time records. To the extent that Ducera would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court modify such requirements.

22. Ducera will file its own fee applications for its respective fees and expenses and, in connection therewith, Ducera will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services in accordance with its past practice. Ducera will present such records to the Court in its fee applications. Ducera's applications for compensation and expense reimbursement will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with Local Rule 2016-2(e) and any applicable procedures established by the Court.

**Indemnification**

23. The Annex A to the Engagement Letter provides for indemnification and limitation of liability ("Indemnification Provisions") with respect to Ducera and its professionals relating to the above summarized services which are reasonable and necessary under the circumstances.

24. Consistent with the practice in this jurisdiction, the Debtors request that the Court approve the Indemnification Provisions reflected in Annex A to the Engagement Letter, subject to the following:

(a) No Indemnified Persons (as defined in the Engagement Letter) shall be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(b) The Debtors shall have no obligation to indemnify any Indemnified Person, or provide contribution or reimbursement to any Indemnified Person for any claim or expense to the extent that is either: (i) judicially determined (the determination having become final) to have arisen from any Indemnified Person's bad faith, gross negligence, willful misconduct, fraud, breach of fiduciary duty, if any, or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of Ducera's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible under *In re United Artists Theater Company*, 315 F. 3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by the Order;

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and reimbursement obligations under the Engagement Letter (as modified by the Order), including, without limitation, the advancement of defense costs, Ducera must file an application therefor in the Court, and the Debtors may not pay any such amounts to Ducera or any other Indemnified Person before the entry of an order by the Court approving the payment. This subparagraph (c) is intended only to specify the period of

        time under which the Court shall have jurisdiction over any request for fees and expenses by Ducera and the other Indemnified Persons for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Persons. All parties in interest, including, for the avoidance of doubt, the United States Trustee for the District of Delaware (the "U.S. Trustee"), shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, or reimbursement; and

    (d)    During the course of the Chapter 11 Cases, any limitation of liability provisions in the Engagement Letter shall have no force or effect.

25.    The Debtors and Ducera believe that the Indemnification Provisions contained in the Engagement Letter are customary and reasonable for financial and investment advisory engagements, both in- and out-of-court, and, as modified by the Order, reflect customary qualifications and limitations on indemnification provisions.

26.    The terms and conditions of the Engagement Letter were negotiated by the Debtors and Ducera at arm's length and in good faith. The Debtors respectfully submit that the Indemnification Provisions and other provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Ducera's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors.

## Basis for Relief

27.    The Debtors seek authority to retain and employ Ducera as their investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out [their] duties under this title." *See* 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy

Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." *See* 11 U.S.C. § 1107(b).

28.    In addition, the Debtors seek approval of the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." *See* 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial and transaction advisors, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted).  Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.  *See, e.g.*, *In re Sequential Brands Group, Inc.*, No. 21-11194 (JTD) (Bankr. D. Del. Oct. 4, 2021); *In re Chaparral Energy, Inc.*, No. 16-11144 (LSS) (Bankr. D. Del. June 10, 2016); *In re Energy & Exp. Partners, Inc.*, No. 15-44931 (RFN) (Bankr. N.D. Tex. Feb. 8, 2016).

29.    Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a). This change makes clear that the Debtors are able to retain a professional on a fixed or percentage fee basis, with bankruptcy court approval.

30. Accordingly, the Debtors believe that Ducera's retention on the terms and conditions proposed herein is appropriate.

### Ducera's Disinterestedness

31. As noted above, Ducera has provided prepetition financial and restructuring services to the Debtors. During the 90-day period prior to the commencement of the Chapter 11 Cases, Ducera received $622,888.71 from the Debtors for services performed and expenses incurred prior to the Petition Date. Specifically, according to the Debtors' books and records, the Debtors paid Ducera: (a) the Monthly Advisory Fees in the amount of $600,000.00 and (b) reimbursement of expenses in the amount of $22,888.71.

32. To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Kaldenberg Declaration: (a) Ducera is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors' estates; and (b) Ducera has no connection to the Debtors, their creditors, the Office of the U.S. Trustee, or other parties in interest in the Chapter 11 Cases.

33. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Ducera's retention are discovered or arise, Ducera will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

**Notice**

34.     The Debtors will provide notice of this motion to:  (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto; (i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent, and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  In light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

35.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of an Order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested herein, and such other and further relief as the Court deems appropriate under the circumstances.

Dated:  August 30, 2023
        Wilmington, Delaware

YELLOW CORPORATION, *et al.*,

/s/ *Matthew A. Doheny*
Yellow Corporation
Chief Restructuring Officer