# **EXHIBIT B**

## **Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) ) ) ) ) ) ) | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | | Case No. 23-11069 (CTG) |
| Debtors. | | (Jointly Administered) |

**ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF DUCERA PARTNERS LLC AS INVESTMENT BANKER TO THE DEBTORS EFFECTIVE AS OF PETITION DATE, AND (II) GRANTING RELATED RELIEF**

Upon consideration of the application (the "<u>Application</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for entry of an order pursuant to sections 105(a), 327(a), and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2, authorizing the retention and employment of Ducera as investment banker to the Debtors in accordance with the terms and conditions set forth in the Engagement Letter dated effective as of February 6, 2023; and upon the Kaldenberg Declaration; and the Court being satisfied, based on the representations made in the Application and the Kaldenberg Declaration, that Ducera and its professionals are "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, and neither hold nor represent any interest adverse to the Debtors' estates; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District for the District of Delaware, dated February 29, 2012 (Sleet, C.J.); and

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been given, and it appearing that no other or further notice need be provided; and the Court having reviewed the Application and determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is APPROVED as set forth herein, effective as of the Petition Date.

2.      Subject to the terms of this Order, the Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, to retain and employ Ducera as their investment banker in accordance with the terms and conditions set forth in the Engagement Letter, and to pay fees and reimburse expenses to Ducera on the terms and at the times specified in the Engagement Letter.

3.      The terms of the Engagement Letter attached hereto as **Exhibit 1** are approved in all respects except as limited or modified herein.

4.      Ducera's compensation, as set forth in the Engagement Letter, including, without limitation, the Fee, and Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code.  Ducera shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of this Order and the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court.

5.      None of the fees payable to Ducera under the Engagement Letter shall constitute a "bonus" or fee enhancement under applicable law.

6.      Notwithstanding any provision to the contrary in this Order, the Application, the Engagement Letter, or the Kaldenberg Declaration, the United States Trustee for the District of Delaware (the "U.S. Trustee") shall have the right to object to Ducera's request(s) for interim and final compensation and reimbursement of expenses based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Ducera's fees under section 330 of the Bankruptcy Code.  Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Ducera's fees and reimbursement expenses.

7.      Ducera is granted a limited waiver of the information requirements relating to compensation requests to the extent requested in the Application.  Ducera shall include in its fee applications, among other things, time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in half-hour (0.5) increments, and notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, or any other guidelines regarding submission and approval of fee applications, Ducera shall be excused from keeping time in tenth-hour (0.1) increments and shall not be required to provide or conform to any schedule of hourly rates.

8.      Notwithstanding anything to the contrary in the Application or any of its attachments, no amounts shall be paid to Ducera absent an order of this Court approving a fee application filed on notice to parties in interest in the Chapter 11 Cases under the procedures set forth in any order establishing procedures for compensation and reimbursement of expenses of

professionals, provided that Ducera shall file monthly fee statements with time entries and requests for reimbursement that comply with the Local Rule 2016-2, except as otherwise expressly set forth in this Order, pursuant to the deadlines and other procedures specified for monthly fee statements set forth in any order establishing procedures for compensation and reimbursement of expenses of professionals.

9.      In the event that, during the pendency of the Chapter 11 Cases, Ducera seeks reimbursement for any attorneys' fees and expenses, the invoices and supporting time records from such attorneys shall be included in Ducera's fee applications and shall be in compliance with the Local Rule 2016-2, and shall be subject to the guidelines of the U.S. Trustee and approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code; *provided, however*, that Ducera shall only be reimbursed for any legal fees incurred in connection with the Chapter 11 Cases to the extent permitted under applicable law and the decisions of this Court.

10.     The indemnification, contribution, and reimbursement provisions of the Engagement Letter are approved, subject, during the pendency of the Chapter 11 Cases, to the following:

(a)     No Indemnified Persons (as defined in the Engagement Letter) shall be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(b)     The Debtors shall have no obligation to indemnify any Indemnified Person, or provide contribution or reimbursement to any Indemnified Person for any claim or expense to the extent that is either: (i) judicially determined (the determination having become final) to have arisen from any Indemnified Person's bad faith, gross negligence, willful misconduct, fraud, breach of

fiduciary duty, if any, or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of Ducera's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible under *In re United Artists Theater Company*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order;

(c)    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Ducera must file an application therefor in this Court, and the Debtors may not pay any such amounts to Ducera or any other Indemnified Person before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Ducera and the other Indemnified Persons for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Persons.  All parties in interest, including, for the avoidance of doubt, the United States Trustee, shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, or reimbursement; and

(d)    During the course of the Chapter 11 Cases, any limitation of liability provisions in the Engagement Letter shall have no force or effect.

11.    The provisions of the Engagement Letter whereby the Debtors waive any actual or potential conflicts of interest shall have no force or effect during the course of the Chapter 11 Cases.

12.    The Debtors and Ducera are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

13.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062, or 9014.

14.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in the Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the Chapter 11 Cases to cases under chapter 7.

15.     To the extent that this Order is inconsistent with the Engagement Letter, the terms of this Order shall govern.

16.     The Court retains jurisdiction over any and all matters arising from or related to the implementation of this Order.

## **EXHIBIT 1**

### **Engagement Letter**

# Ducera

Ducera Partners LLC
11 Times Square
36th Floor
New York, NY 10036

p (212) 671-9700

DuceraPartners.com

June 30, 2023

**Confidential**

Yellow Corporation
501 Commerce Street
Suite 1120
Nashville, Tennessee 37203

Ladies and Gentlemen:

This amended and restated engagement letter (this "**Superseding Agreement**") confirms the understanding and agreement between Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC ("**Ducera**"), and Yellow Corporation ("**Yellow**"), as set forth herein. For purposes of this Superseding Agreement, Yellow Corporation and its controlled affiliates and subsidiaries shall be referred to herein collectively as, the "**Company**." This Superseding Agreement also confirms the agreement of the Company to perform its obligations, and make applicable acknowledgements, as expressly set forth herein.[1]

**Section 1.    Scope of Engagement and Services**.  During the Term (as defined in **Section 8**), Ducera shall provide financial advisory and investment banking services to the Company relating to the services set forth herein:

(a)    *General Financial Advisory and Investment Banking Services*.  Ducera shall: (1) familiarize ourselves with the business, operations, financial condition, financial statements, business plans, forecasts, and capital structure of the Company; (2) assist with the evaluation of the Company's debt capacity and alternative capital structures in light of its projected financial performance; and (3) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated by this Agreement.

(b)    *Financing Services*.[2]  Ducera shall: (1) provide financial advice to the Company in connection with the structure and effectuation of a Financing, identify potential Investors and, at the Company's request, contact and solicit such Investors; and (2) assist with the arrangement of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing; *provided*, *however*, it is

---

[1]    The advisory services and compensation arrangements set forth in this Superseding Agreement amends and restates in its entirety any and all prior agreements between the Company and Ducera; *provided, however,* that **Annex A** of the Engagement Letter, dated February 6, 2023 (the "**Original Engagement Letter**"), shall continue to be in full force and effect.

[2]    For purposes of this Superseding Agreement, the term "**Financing**" shall mean a private issuance, sale, or placement of the equity, equity-linked, preferred equity, including warrants or hybrid capital, convertible debt, financing instruments, obligations, or debt (including, but not limited to, revolving credit and asset backed lending facilities, and debtor-in-possession financing and any amendment or extension of the Company's existing debt or equity as of the date hereof) of the Company with one or more lenders and/or investors, acceptable to the Company (each such lender or investor, an "**Investor**").

understood that nothing contained herein shall constitute an express or implied commitment by Ducera to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.

(c)    *Sale Services*.[3]  If requested by the Company, Ducera shall: (1) provide financial advice to the Company in structuring, evaluating and effectuating a Sale, identify potential counterparties and, at the Company's written (email to be sufficient) request, contact and solicit potential acquirers; and, assist with the arrangement and execution of a Sale, including identifying potential buyers or parties in interest, assisting in the due diligence process, and negotiating the terms of any proposed Sale.

(d)    *Restructuring Services*.[4]  If requested by the Company, Ducera shall: (1) analyze various Restructuring scenarios and the potential impact of these scenarios on the value of the Company and the recoveries of those stakeholders impacted by the Restructuring; (2) provide strategic advice with regard to restructuring or refinancing the Company's Existing Obligations;[5] (3) provide financial advice and assistance to the Company in developing a Restructuring; (4) in connection therewith, provide financial advice and assistance to the Company in structuring any

---

[3]      For purposes of this Superseding Agreement, the term "**Sale**" shall mean any transaction or series of transactions (other than a Restructuring) involving: (a) an acquisition, merger, consolidation or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with, or acquired by, another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act or 1934, as amended) of equity interests or options, or any combination hereof, constituting a majority of the then-outstanding stock of the Company or possessing a majority of the then-outstanding voting power of the Company ("**Voting Stock**"); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers or a material portion of the assets or Voting Stock of the Company; or (d) the formation of a joint venture partnership or similar entity with the Company or direct investment in the Company for the purposes of effecting a transfer of a majority of the Voting Stock of the Company to a third party, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, a tender offer, or any similar transaction.

[4]      For purposes of this Superseding Agreement, the term "**Restructuring**" shall mean any restructuring, reorganization, modification, rescheduling and/or recapitalization (other than a Sale) (whether or not pursuant to one or more proceedings voluntarily or involuntarily commenced under chapters 7 or 11 of title 11 of the United States Code, 11 U.S.C. 101–1532 (as amended, the "**Bankruptcy Code**") or any cases converted thereto (the "**Bankruptcy Cases**" and the court having jurisdiction over such cases, the "**Bankruptcy Court**")) of the Company's Existing Obligations (as defined herein) that is achieved through, without limitation: (a) a solicitation of material waivers and consents from the holders of Existing Obligations; (b) rescheduling of the maturities of Existing Obligations; (c) a material change in interest rates, repurchase, settlement, repayment, or forgiveness of Existing Obligations; (d) a material amendment to the Existing Obligations; (e) conversion of Existing Obligations into equity; (f) an exchange offer, or an amend-and-extend involving the issuance of new loans and/or securities in exchange for Existing Obligations (including, for the avoidance of doubt, any general forbearance granted by holders of Existing Obligations); (g) a sale of all, or a material portion, of the Company's assets pursuant to §363 of the Bankruptcy Code (a "**363 Sale**"); or (h) other similar transaction or series of transactions.

[5]      For purposes of this Superseding Agreement, the term "**Existing Obligations**" shall mean the material outstanding indebtedness of the Company including, but not limited to, bank debt, bond debt, asset back lending facilities, term loans, credit facilities, trade claims, leases (both on and off-balance sheet), pension obligations, litigation-related claims and obligations, other on and off-balance sheet indebtedness, workers' compensation claims and obligations, and other liabilities.

new securities to be issued under a Restructuring; and (5) assist the Company and/or participate in negotiations with entities or groups affected by the Restructuring.

        (e)    *Generally*. The Company and Ducera acknowledge and agree that the Company is under no obligation to consummate a Financing, a Sale, or a Restructuring as set forth herein and, in the event the Company is unable or unwilling to do so, the Company shall have no obligation or liability (other than the Terms and Conditions set forth in **Annex A**) to Ducera. *Notwithstanding anything contained in this Agreement to the contrary*, Ducera shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity, or to provide any fairness, valuation, or solvency opinions, or to make any independent evaluation or appraisal of any assets or liabilities of the Company or any other party. Ducera makes no representations or warranties about the Company's ability to (1) successfully improve its operations, (2) maintain or secure sufficient liquidity to operate its business, or (3) successfully complete a Financing, a Sale, or a Restructuring. Ducera is retained under this Agreement solely to provide advice and services regarding the transactions contemplated by this Agreement. Ducera's engagement does not encompass providing "crisis management." The advisory services and compensation arrangements set forth in this Agreement do not encompass other investment banking services, transactions or other specific services not set forth in this Agreement that have been, or may be, undertaken by Ducera at the request of the Company. The terms and conditions of any such investment banking services, including compensation and arrangements related thereto, would be set forth in a separate written letter agreement between Ducera and the Company.

        **Section 2.**    **Compensation**. Subject to **Section 8**, in consideration of Ducera's services as set forth in **Section 1**, Yellow agrees to pay Ducera:

        (a)    For services rendered in accordance with **Section 1(a)**,

            (1).    a one-time non-refundable fee of $500,000, which shall be earned, due, and payable upon execution of this Agreement and shall be credited against the Financing Fee as set forth herein (the "**Retainer Fee**"); *plus*,[6]

            (2).    commencing as of June 1, 2023, the Company shall pay Ducera a non-refundable monthly cash fee of $200,000, due and payable on the first day of each and every month during the Term (as defined herein)("**Monthly Advisory Fee**").

        (b)    For services rendered in accordance with **Section 1(b)**, a financing fee, which shall be earned, due, and payable upon (and subject to the occurrence of) the closing of a Financing (the "**Financing Fee**"). The Financing Fee shall be:

---

[6]    For purposes of this Superseding Agreement, the Company and Ducera acknowledge and agree that the Retainer Fee was paid upon consummation of the Original Engagement Letter.

3

(1).    1.0% of the face amount of senior secured debt (including, but not limited to, revolving credit and asset backed lending facilities) Raised;[7]

(2).    3.0% of the face amount of any unsecured and junior secured debt Raised; and

(3).    5.0% of any equity capital, convertible, or hybrid capital, including warrants, or similar contingent equity securities Raised.

(c)    For services rendered in accordance with **Section 1(c)** and **Section 1(d)**, a transaction fee, which shall be due and payable upon consummation of a Sale or a Restructuring (the "**Transaction Fee**").[8]  The Transaction Fee shall be calculated as the greater of:

(1)    In the event of a Restructuring, a fee of $15,000,000 due and payable upon consummation of a Restructuring; and

(2)    In the event of a Sale, including through a 363 Sale, a fee equal to the Transaction Value multiplied by the Applicable Fee percentage reflected in the chart below: [9]

---

[7]    For purposes of this Superseding Agreement, the term "**Raised**" shall mean the total amount committed by an Investor on the closing date of such Financing, in each case on terms acceptable to the Company, irrespective as to whether or not the Company draws any or all of the amount committed by an Investor, and whether or not the Company applies such amounts to finance any of its obligations or a transaction. *For illustrative purposes*, in connection with any revolving credit or asset backed lending facilities, all fees set forth in **Section 2** shall be calculated based on the total amount of the facility, including any letters of credit, irrespective as to whether the Company is permitted immediately to draw upon the full amount of facility, including any borrowing base, at the time of commitment.

[8]    For purposes of this Superseding Agreement, a Restructuring shall be deemed to have been consummated upon: (a) the closing of the applicable transaction by which the Existing Obligations of the Company are to be restructured or refinanced; or (b) in the case of a Court approved Restructuring, the date that the applicable Chapter 11 plan of reorganization becomes effective in accordance with the terms and conditions thereof; *provided*, that if the Restructuring is to be completed, in whole or in part, through a public exchange offer, pre-arranged or pre-packaged Restructuring, or a 363 sale process (as defined herein): (i) 50% of the Restructuring Fee shall be earned and shall be payable upon obtaining support (e.g. via a term sheet, restructuring support agreement or other agreement in principle documenting they key terms of such prearranged Plan) from one or more of the Company's key creditor classes that is sufficient to justify launching such exchange offer or filing such pre-arranged or pre-packaged Restructuring; and (ii) the remainder of such fees shall be earned and shall be payable upon consummation of the Restructuring; *provided*, *further*, that in the event that Ducera is paid a Restructuring Fee in connection with a pre-arranged or pre-packaged Restructuring, and such a Restructuring is not thereafter consummated, then such fee previously paid to Ducera may be credited by the Company against any subsequent fee hereunder that becomes payable by the Company to Ducera or, if such crediting does not equal 100% of the pre-paid portion of the Restructuring Fee, then such fee shall be returned to the Company upon the termination of the Superseding Agreement.

[9]    For purposes of this Superseding Agreement, the term "**Transaction Value**" shall mean (a) all cash paid or payable to the Company or its shareholders (or holders of executive equity awards ("**Awards**")) by the purchaser in the Sale (including indemnity and net working capital escrow amounts); (b) the fair market value of all notes, securities and other property issued or delivered or to be issued or delivered to the Company or its shareholders (including holders of Awards) by the purchaser in the Sale; (c) liabilities, including all indebtedness for borrowed

4

| Transaction Value Component | Applicable Fee % for Transaction Value Component[10] |
| --- | --- |
| Transaction Value of less than $200 million | 2.000% |
| Transaction Value between $200 million and $300 million | 1.650% |
| Transaction Value between $300 million and $400 million | 1.500% |
| Transaction Value between $400 million and $500 million | 1.400% |
| Transaction Value between $500 million and $600 million | 1.300% |
| Transaction Value between $600 million and $700 million | 1.200% |
| Transaction Value between $700 million and $800 million | 1.150% |
| Transaction Value between $800 million and $900 million | 1.100% |
| Transaction Value between $900 million and $1.0 billion | 1.050% |
| Transaction Value between $1.0 billion and $1.25 billion | 1.000% |
| Transaction Value between $1.25 billion and $1.50 billion | 0.925% |
| Transaction Value between $1.5 billion and $1.75 billion | 0.850% |
| Transaction Value between $1.75 billion and $2.0 billion | 0.775% |
| Transaction Value in excess of $2.0 billion | 0.700% |

---

money of the Company or its Subsidiaries, pension liabilities, non-ordinary course guarantees, plus any amount required to be shown on a consolidated balance sheet of the Company as of the most recent quarterly consolidated balance sheet date for capitalized leases, in all cases provided that such liabilities, indebtedness or capital leases are still outstanding as of the closing date of the Sale and directly or indirectly assumed, refinanced, extinguished or consolidated by the purchaser; (d) amounts paid or payable to the Company's direct or indirect security holders and management under consulting, non-compete or similar agreements; (e) if the Sale includes the disposition of assets, the value of net current assets of the business that is the target of the Sale that are not sold in the Sale; (f) the amount of any extraordinary dividends or distributions paid to the Company's shareholders (including Awards) in connection with or contemplated by the Sale; and (g) if the Sale takes the form of a recapitalization, restructuring or similar transaction, the fair market value of equity securities retained, directly or indirectly, by the Company's shareholders (including Awards) upon consummation of such a Sale (such securities and all securities received by such shareholders being deemed to have been paid to such security holders in such a Sale). For purposes of computing Transaction Value hereunder, non-cash consideration will be valued as follows: (x) publicly traded securities will be valued at the average of their closing prices (as reported in *The Wall Street Journal* or other reputable source reasonably designated by Ducera if *The Wall Street Journal* does not publish such closing prices) for the five trading days prior to the closing of a Sale, (y) options will be valued using the treasury stock method without giving effect to tax implications, and (z) the value of any cash held at the Company, the value of all installment or any contingent payments to be made to the Company or its shareholders in a Sale (including Awards) or non-cash consideration will be determined in good faith by and between Ducera and the Company.

[10]     *For illustrative purposes only*, if the Company were to sell three (3) assets (Asset A for $100 million, Asset B for $350 million, and Asset C for $500 million) as part of an in-court Restructuring, the fee in accordance with **Section 2(c)(2)** would be $13.75 million, calculated as follows (a) $2 million (2% of $100 million), (b) $5.25 million ($350 million at 1.50%), (c) $6.5 million ($500 million at 1.3%).

(d)    The Company shall receive a discount of $100,000 per month against the greater of the Transaction Fee and the Financing Fee, for each month commencing after payment of the sixth (6) Monthly Advisory Fee (the "**Ducera Discount**"); *provided*, *however*, that: (a) the Ducera Discount shall only apply if any and all outstanding invoices for Monthly Advisory Fees have been paid before, or in connection with, the consummation of a Transaction, Sale or Financing; (b) that no Monthly Advisory Fee shall be credited more than once; and (c) in no event shall the aggregate fees be reduced below zero.

(e)    The Company and Ducera acknowledge and agree that the Company is under no obligation to consummate a Financing as set forth herein and, in the event the Company is unable or unwilling to do so, the Company shall have no obligation or liability (other than the Terms and Conditions set forth in **Annex A**) to Ducera.  The Company and Ducera further acknowledge and agree that: (1) hours worked, (2) the results achieved, and (3) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Ducera have taken such factors into account in setting the fees hereunder.  To the extent further services are requested by the Company, the Company and Ducera acknowledge and agree to negotiate in good faith a reasonable scope of services and fee structure in connection with any such further services provided by Ducera, depending on the size, scope, and nature of the services to be provided.

Section 3.    **Expenses and Payments**.  In addition to the fees set forth in **Section 2**, the Company agrees upon request to promptly reimburse Ducera for its reasonable and documented out-of-pocket expenses, including, but not limited to, travel and transportation expenses, third party research and telecommunication expenses, printing costs, courier and other shipping and mailing costs and, in the case of advisors, limited to the reasonable expenses of Ducera's one external legal counsel, any other professional advisors approved by Yellow, and other reasonable and documented out of pocket expenses incurred in connection with Ducera's engagement or the performance of services hereunder or any other assignments undertaken by Ducera at the Company's request; *provided*, *however*, that this **Section 3** shall in no way affect the Company's obligations as set forth in **Annex A** hereto.  All payments due under this Superseding Agreement (including under **Section 2** and **Section 3** hereof) shall be made in U.S. dollars in immediately available funds, free and clear of any set off, claim, and applicable taxes (with appropriate gross up for any taxes withheld).

Section 4.    **Information and Announcements**.

(a)    Ducera's advice hereunder is intended solely for the benefit and use of the Company, its affiliates and its counsel, and for the use by the Board and the Company (including its officers and employees, in their respective capacities as directors, officers and employees of the Company and not in their individual capacities) and its affiliates, and such advice may not be used or relied upon for any other purpose or by any other person, including any security holder (in its capacity as such), any other employee or creditor of the Company.  No advice rendered by Ducera, whether formal or informal, may be disclosed or described, in whole or in part, or otherwise publicly referred to, without Ducera's prior written consent (which consent may not be unreasonably withheld, conditioned, denied or delayed), *except*: (1) to the Company's affiliates and other professional advisors (who may not further disclose such information or use it in any

way other than in connection with the services contemplated by this Superseding Agreement); or (2) as Legally Required.[11]   In addition, the terms of this Superseding Agreement may not be publicly disclosed or described, in whole or in part, without Ducera's prior written consent (which consent may not be unreasonably withheld, conditioned, denied or delayed), *except*: (i) to the Company's affiliates and other professional advisors (who may not further disclose such information or use it in any way other than in connection with the services or transactions contemplated by this Superseding Agreement; (ii) as Legally Required or (iii) in connection with the Company enforcing its rights and remedies hereunder.   The Company shall be solely responsible for the accuracy and completeness of, and Ducera shall have no liability with respect to, any materials required to be disclosed by the Company to third parties or submitted by, or at the direction of, the Company to any regulatory authorities in connection with any services contemplated by this Superseding Agreement.

(b)     The Company shall make reasonable efforts to provide Ducera with (1) all customary and reasonably available information and data relating to the Company as Ducera may reasonably request for the purposes of rendering the services set forth in **Section 1**; (2) reasonable access to the Company's officers, directors, employees, counsel, accountants, and consultants solely for the purpose of carrying out the services set forth in **Section 1**; and (3) all assistance reasonably necessary to Ducera's performance under this Superseding Agreement.  The Company recognizes and confirms that in performing its services hereunder, Ducera shall: (x) be entitled to rely without investigation upon all available information, including information supplied to it by or on behalf of the Company (including any public disclosures), any counterparty or their respective officers, directors, employees, accountants, counsel and other representatives; (y) not be responsible for the accuracy or completeness of, or have any obligations to verify, such information received from the Company and its advisors or from potential investors, whether or not Ducera makes any independent verification thereof; and (z) be entitled to assume, without investigation, that any and all projections (financial or otherwise) provided to Ducera pursuant hereto will have been prepared in good faith and will be based upon assumptions that are, in the Company's business judgment, reasonable.   Ducera will not conduct any appraisal of assets or liabilities of any party to a transaction or evaluate the solvency thereof under any state or federal bankruptcy, insolvency, or similar law. The Company further represents and warrants to Ducera that all written information (other than estimates, projections, budgets, forward looking statements, and general market or industry data) made available to Ducera by you pursuant hereto (when taken as hole and as supplemented) will (i) to the best of the Company's knowledge, be complete and correct in all material respects and (ii) will not contain any untrue statement of material fact or, to the best of the Company's knowledge, omit to state a material fact necessary to make the statements therein, considering the circumstances under which they were made, not misleading.

---

[11]     For purposes of this Superseding Agreement, the term "**Legally Required**" shall mean as requested or required by law, judicial authority, regulation, rule, legal process, governmental agency or other regulatory authority (including, without limitation, any stock exchange or self-regulatory organization), action, investigation or proceeding (including, without limitation, as part of any interrogatory, court order, subpoena, administrative proceeding, civil investigatory demand, in each case whether oral or written, or any other legal or regulatory process).

(c)     Ducera shall keep confidential any non-public information of the Company and its affiliates made available to Ducera pursuant to, and in accordance with, the terms of the Confidentiality Agreement, dated November 21, 2022, between the Company and Ducera (as amended, modified, or supplemented from time to time, the "**Confidentiality Agreement**").

Section 5.     **Terms and Conditions**.  Because Ducera will be acting as an independent contractor to the Company in connection with this Superseding Agreement, and in consideration of the benefits that the Company shall receive from Ducera's advice, the Company and Ducera agree to the Terms and Conditions contained in **Annex A** (the "**Terms and Conditions**"), which **Annex A** is incorporated by reference into this Superseding Agreement and is an integral part hereof.

Section 6.     **Acknowledgements and Waivers**.

(a)     The Company acknowledges and agrees that Ducera has been retained solely to act as financial advisor in accordance with **Section 1** and that no fiduciary or agency relationship between the Company and Ducera has been created in respect of any transaction or Ducera's engagement hereunder, regardless of whether Ducera has advised or is advising the Company on other matters.  In connection with the engagement, Ducera is acting as an independent contractor, with obligations owing solely to the Company and not in any other capacity.  Except as expressly contemplated by the Terms and Conditions set forth in **Annex A**, neither the engagement nor this Superseding Agreement is intended to confer rights upon any persons not a party hereto (including security holders, employees, or creditors of the Company).

(b)     This Superseding Agreement shall be binding upon and inure to the benefit of the Company, Ducera, and their respective successors and assigns.  No party hereto may assign or delegate any of its rights or obligations without the prior written consent of the other parties, such consent not to be unreasonably withheld.  If any term, provision, covenant, or restriction herein (including the Terms and Conditions as set forth in **Annex A**) is held by a final non-appealable judgment of a court of competent jurisdiction to be invalid, void, or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be modified or invalidated.

(c)     Ducera and its affiliates and certain of their respective members, officers, managers, directors, and employees, as well as certain funds in which they may have financial interests, may from time to time acquire, hold, or make direct or indirect investments in, or otherwise finance, a wide variety of companies, including parties that may constitute counterparties to the Company.  In the event that Ducera becomes aware of any direct material investment or financing arrangement in a counterparty to a proposed transaction of Ducera or any of its employees on the coverage team (excluding any funds managed by third parties which are not known to have accumulated significant positions in securities issued by such counterparties), Ducera shall promptly inform the Company of such investment or financing arrangement.  Further, Ducera agrees that it will use any information received from the Company solely for the purposes of this engagement, and not for any other purpose.

(d)    Subject to **Section 6(c)**, the Company acknowledges and agrees that Ducera and its affiliates may be engaged in a broad range of transactions involving interests that differ from those of the Company, and that Ducera has no obligation to disclose such interests and transactions to the Company.  The Company waives, to the fullest extent permitted by law, any claims it may have based on any actual or potential conflicts of interest that may arise or result from Ducera's engagement by the Company hereunder, or any claims it may have against Ducera for breach of fiduciary duty or alleged breach of fiduciary duty and agrees that Ducera shall have no liability (whether direct or indirect) to the Company in respect of such a fiduciary duty claim or to any person asserting a fiduciary duty claim on behalf of or in right of the Company, including the Company's security holders, employees, or creditors in each case, arising during the Term. The Company understands that Ducera is not undertaking to provide any legal, regulatory, compliance, accounting, or tax advice in connection with the engagement, and that Ducera's role in any due diligence will be limited solely to performing such review as it deems advisable to support its own analysis and shall not be on behalf of or for the benefit of the Company.

(e)    To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each entity or person that engages Ducera's services.  Pursuant to such requirements, Ducera may from time-to-time request copies of documents that would be necessary to comply with the foregoing federal law.  The Company further acknowledges and agrees, in accordance with 31 CFR § 1010.230 and, to the extent applicable and as Legally Required, to complete the Certification Regarding Beneficial Owners of Legal Entity Customers in connection with the execution of this Superseding Agreement.

**Section 7.    Governing Law; Submission to Jurisdiction; Waiver of Jury Trial**.  All aspects of the relationship created by this Superseding Agreement and any other agreements relating to Ducera's engagement, shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein and, in connection therewith, the parties hereto consent to the exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County or the United States District Court for the Southern District of New York and agree to venue in such courts.  *Notwithstanding the foregoing,* solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim relating to or arising out of Ducera's engagement is brought by or against any Indemnified Person.  DUCERA AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ON BEHALF OF ITS SECURITY HOLDERS AND CREDITORS) EACH HEREBY AGREES TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR DUCERA'S ENGAGEMENT.

**Section 8.    Termination**.

(a)    Ducera's engagement hereunder shall commence on the date hereof and shall continue until the earlier of: (1) termination by either party hereto upon ten (10) business days' prior written notice to the other party; and (2) consummation of a Financing, a Sale, or a Restructuring (the "**Term**").

(b)     In the event of any termination of Ducera's engagement hereunder, any fees set forth in **Section 2** paid or due to be paid for services rendered prior to termination shall remain the property of Ducera.  No termination of Ducera's engagement hereunder shall affect the Company's obligations pursuant to the Terms and Conditions or its obligations to reimburse Ducera for fees and expenses, payable or incurred in accordance with **Section 2** and/or **Section 3** prior to the termination of this Superseding Agreement, and the Terms and Conditions set forth in **Annex A** shall survive any termination of this Superseding Agreement.

(c)     In the event of any termination of Ducera's engagement hereunder (other than (1) by Ducera for any reason; or (2) by the Company based on actions taken, or failures to act, by Ducera, which actions (x) remain unremediated by Ducera within ten (10) business days after written notice from the Company of its intention to terminate this Superseding Agreement on the basis of such actions or failure to act and specifying in reasonable detail the basis for such termination; and (y) materially or adversely impacts the Company), Ducera shall continue to be entitled to the full amount of the fees set forth in **Section 2** in the event that at any time prior to the expiration of Tail Period (as defined herein), the Company consummates a Financing, a Sale, or a Restructuring.[12]

Section 9.    **Entire Agreement; Amendments**.    This Superseding Agreement, including **Annex A**, constitutes the entire agreement between Ducera and the Company with respect to the engagement and supersedes all other oral and written representations, understandings or agreements relating to this engagement.  No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

*          *          *

**[SIGNATURE PAGE FOLLOWS]**

---

[12]    For purposes of this Superseding Agreement, the term "**Tail Period**" shall mean any time prior to the expiration of twelve (12) months after any such termination.

10

We are pleased to accept the engagement and look forward to working with you.  Please confirm your agreement with the foregoing (including the attached Terms and Conditions) by signing each of the enclosed copies of this Superseding Agreement and returning to us one fully signed copy.

Very truly yours,

**DUCERA PARTNERS LLC** *and, where appropriate, its affiliates, including Ducera Securities LLC*

By: _____
Name: Cody L. Kaldenberg
Title: Partner

January 3,

Accepted, Agreed, and Effective as of ~~June 30~~, 2023:

**YELLOW CORPORATION** *and all direct and indirect subsidiaries and their respective affiliates*

By: _____
Name: Darren D. Hawkins
Title: Chief Executive Officer

By: _____
Name: Daniel L. Olivier
Title: Chief Financial Office

11

## TERMS AND CONDITIONS – ANNEX A

In further consideration of the engagement Ducera Partners LLC and its affiliates including, where appropriate, Ducera Securities LLC (collectively, "**Ducera**") to render corporate finance and other investment banking advisory services to Yellow Corporation (collectively with its subsidiaries and controlled affiliates, the "**Company**") pursuant to the Superseding Agreement to which these Terms and Conditions are attached, the Company and Ducera hereby agree that these Terms and Conditions shall be incorporated by reference into the Superseding Agreement and shall form an integral part thereof.  Capitalized terms used but not defined herein shall have the same meanings specified in the Superseding Agreement and any references to this Superseding Agreement or the engagement shall mean the Superseding Agreement together with these Terms and Conditions.

A.      In consideration of the benefits that the Company will receive from Ducera's advice, the Company agrees to indemnify and hold harmless Ducera, its affiliates, the respective members, managers, directors, officers, partners, agents and employees of Ducera and its affiliates, and any person controlling Ducera and its affiliates (collectively, "**Indemnified Persons**") from and against, and the Company agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its controlled affiliates, security holders or creditors (in their respective capacities as such) for, any actual losses, claims, expenses (limited in the case of an advisor to the reasonable attorneys' fees of one outside counsel), damages or liabilities (including actions or proceedings in respect thereof) (collectively, "**Losses**"):

1.      Related to or arising out of (a) the Company's actions or failures to act (including statements or omissions made or information provided by the Company or its agents) in connection with the engagement; or (b) actions or failures to act by an Indemnified Person in connection with this engagement with the Company's consent, or otherwise in reasonable reliance on the Company's direction, actions, or failures to act in each case in connection with the engagement; or,

2.      Otherwise related to or arising out of the engagement, Ducera's performance thereof or any other services Ducera is asked to provide to the Company pursuant to this Superseding Agreement (in each case, including activities prior to the date hereof), _except_ that this **Annex A(A)** shall not apply to any Losses (nor shall the limitation of liability above apply) due to a material breach of this Superseding Agreement or the Confidentiality Superseding Agreement or to the extent that they are finally determined by a court of competent jurisdiction to have resulted from the bad faith, willful misconduct, or gross negligence of an Indemnified Person or any of their officers, directors, employees, accountants, counsel and other representatives.

B.      If such indemnification is for any reason not available (other than pursuant to situations covered by **Annex A(A)(2)**), or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses involved in such proportion as is appropriate to

reflect the Relative Economic Interests (as defined herein) of the Company, on the one hand, and of Ducera, on the other hand, with respect to the engagement; or, if such allocation is determined by a court of competent jurisdiction to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company on the one hand, and of Ducera on the other hand; *provided*, *however*, that, to the extent permitted by applicable law, the Indemnified Persons shall not be responsible for Losses which in the aggregate exceed the amount of all fees actually received by Ducera from the Company in connection with the engagement.

C.      The "**Relative Economic Interests**" of the Company, on the one hand, and Ducera, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received or proposed to be received by the Company and its security holders, as the case may be, pursuant to the transaction(s) contemplated by the engagement, whether or not consummated, bears to (2) all fees actually received by Ducera in connection with the engagement. Without limiting the generality of the foregoing, in no event shall the Company have any liability to any Indemnified Person nor shall any Indemnified Person have any liability to the Company or any of its affiliates or security holders (in their respective capacities as such), in each case, for any consequential, special, exemplary or punitive damages arising out of the engagement or the performance thereof (other than such damages which the Company is required to pay to a third party).

D.      If any Indemnified Person becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person, including security holders of the Company, in connection with or as a result of the engagement, the Company also agrees to reimburse such Indemnified Persons for their reasonable and documented expenses (including, without limitation, reasonable and documented legal fees and other costs and out-of-pocket expenses incurred in connection with investigating, preparing for and responding to third-party subpoenas or enforcing the engagement by one set of counsel and local counsel, as applicable, which, in the case of advisors, is limited to the reasonable expenses of Ducera's one external legal counsel,) as such expenses are incurred; and, *provided further*, that such party receiving reimbursement of expenses shall return any such reimbursements in the event that a court of competent jurisdiction finally determines that indemnification is unavailable in connection with situations covered by the exception set forth in **Annex A(A)(2)**.

E.      Ducera shall not be liable for any settlement of any claim, action, suit, investigation or proceeding effected without its respective consent, if such consent is required. The Company will not, without Ducera's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any claim, action, suit, investigation or proceeding in respect of which it is foreseeable that indemnification may be sought hereunder, whether or not an Indemnified Person is a party thereto, unless such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from any liabilities arising out of such claim, action, suit, investigation or proceeding. The Company will not permit any settlement or compromise to include, or consent to the entry of any judgment that includes, a statement as to, or an admission of fault, culpability, or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed).

F.      The Company's obligations pursuant to these Terms and Conditions shall inure to the benefit of any successors, assigns, heirs, and personal representatives of each Indemnified Person and are in addition to any rights that each Indemnified Person may have at common law or otherwise.  Prior to entering into any agreement or arrangement with respect to, or effecting, any extraordinary transaction that is reasonably likely to impair the Company's ability to meet its current and potential future obligations pursuant to these Terms and Conditions, the Company will notify Ducera in writing thereof and, if requested by Ducera, shall use commercially reasonable efforts to arrange alternative means of providing for the obligations of the Company set forth herein upon terms and conditions reasonably satisfactory to Ducera.  For the avoidance of doubt, the preceding sentence shall not trigger any further obligation on the part of the Company in any transaction in which the Company's obligations under the engagement are assumed by a successor company by operation of law, including through merger.

G.      Reasonably promptly after receipt by an Indemnified Person of notice of its involvement in any action, claim, suit, investigation or proceeding, Ducera shall, if a claim for indemnification in respect thereof is to be made against the Company under these Terms and Conditions, notify the Company of such involvement to the extent permitted by applicable laws and regulations.  Failure by Ducera to so notify the Company, if permitted by applicable laws and regulations, shall relieve the Company from the obligations to indemnify or otherwise to Ducera under these Terms and Conditions only to the extent that the Company suffers actual and material prejudice as a result of such failure.  If any Indemnified Person shall be subject to any action or proceeding brought by a third party that is also brought against the Company, the Company, following its acknowledgment of its obligation to indemnify such Indemnified Person, shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Person.  Upon assumption by the Company of the defense of any such action or proceeding, the Indemnified Person shall have the right to participate in such action or proceeding and to retain its own counsel, but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Person in connection with the defense thereof unless: (1) the Company has agreed in writing to pay such fees and expenses; (2) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Person in a timely manner; or (3) the Indemnified Person shall have been advised by counsel that there are actual or potential conflicting interests between the Company and the Indemnified Person, including situations in which there are one or more legal defenses available to the Indemnified Person that are different from or additional to those available to the Company; *provided, however*, that the Company shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Persons including Ducera, *except* to the extent that local counsel, in addition to its regular counsel, is required in order to effectively defend against such action or proceeding and *except* as may be required pursuant to **Annex A(G)(3)**.

H.      The obligations of the parties hereto pursuant to these Terms and Conditions shall survive any expiration or Term of the Superseding Agreement or Ducera's engagement hereunder.