**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**APPLICATION OF THE DEBTORS FOR AUTHORITY TO
RETAIN AND EMPLOY EPIQ CORPORATE RESTRUCTURING, LLC
AS ADMINISTRATIVE ADVISOR EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this application:[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing the Debtors to employ and retain Epiq Corporate Restructuring, LLC ("Epiq") as administrative advisor ("Administrative Advisor") in the Debtors' chapter 11 cases, effective as of the Petition Date (as defined below), in accordance with the Engagement Agreement attached as Exhibit 1 (the "Engagement Agreement") to the Mailloux Declaration (as defined below and incorporated by reference herein) and (b) granting related relief.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"). Capitalized terms used but not immediately defined in this application have the meanings ascribed to them later in this application or in the First Day Declaration, as applicable.

2.      On the Petition Date, the Debtors filed an application (the "Section 156(c) Application") for an order appointing Epiq as claims and noticing agent pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, and Local Rule 2002-1(f). The Debtors believe that administration of these chapter 11 cases will require Epiq to perform duties outside the scope of services covered by the Section 156(c) Application. Accordingly, the Debtors submit this application to enable Epiq to provide services under the Engagement Agreement that are outside the scope of the services authorized to be provided to the Debtors by Epiq pursuant to the order approving the Section 156(c) Application.

3.      In support of this application, the Debtors submit the Declaration of Kate Mailloux, Senior Director of Epiq, in support of Epiq's retention as Administrative Advisor to the Debtors (the "Mailloux Declaration"), attached hereto as **Exhibit B**.

## Jurisdiction

4.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory bases for the relief requested herein are sections 327(a), 328(a), and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-1.

## Background

7. On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169]. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee"). No trustee or examiner has been appointed in these chapter 11 cases.

## Epiq's Qualifications

8. Epiq is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has substantial experience in matters of this size and complexity and has acted as administrative advisor in many large bankruptcy cases in this District and other districts nationwide. *See, e.g.*, *In re Armstrong Flooring, Inc.*, 22-10426 (MFW) (Bankr. D. Del. May 8, 2022); *In re Gulf Coast Health Care, LLC*, Case No. 21-11336 (KBO) (Bankr. D. Del. Oct 14, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC*, Case No. 21-10474; *In re RTI Holding Co., LLC*, Case No. 20-12456 (JTD) (Bankr. D. Del. Oct 7, 2020); *In re Town Sports Int'l LLC*, Case No. 20-12168, (CSS) (Bankr. D. Del. Sept. 16, 2020); *In re RGNGroup Holdings, LLC*, Case No. 20-11961 (BLS) (Bankr. D. Del. Aug. 19, 2020); *In re Tonopah Solar Energy, LLC*, Case

No. 20-11884 (KBO) (Bankr. D. Del. July 31, 2020); *In re Lucky Brand Dungarees, LLC*, Case No. 20-11768 (CSS) (Bankr. D. Del. July 6, 2020).

### **Services to Be Provided**

9. Pursuant to the Engagement Agreement, the Debtors seek to retain Epiq to provide, among other things, the following bankruptcy administration services, if and to the extent requested:

   (a) Assist with, among other things, solicitation, balloting, and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices, and institutional holders.

   (b) Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results.

   (c) Assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith.

   (d) Provide a confidential data room, if requested.

   (e) Manage and coordinate any distributions pursuant to a chapter 11 plan.

   (f) Provide such other processing, solicitation, balloting and other administrative services described in the Engagement Agreement, but not included in the Section 156(c) Application, as may be requested from time to time by the Debtors, the Court, or the Office of the Clerk of the Bankruptcy Court.

### **Epiq's Compensation**

10. The fees Epiq will charge in connection with providing services to the Debtors are set forth in the Engagement Agreement. The Debtors respectfully submit that Epiq's rates are competitive and comparable to the rates its competitors charge for similar services. Indeed, the Debtors conducted a review and competitive comparison of other firms and reviewed the rates of other firms before selecting Epiq as Administrative Advisor. The Debtors believe Epiq's rates are more than reasonable given the quality of Epiq's services and its professionals' bankruptcy

expertise. Additionally, Epiq will seek reimbursement from the Debtors for reasonable expenses in accordance with the terms of the Engagement Agreement.

11. Epiq intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in connection with the services it provides as Administrative Advisor pursuant to the Engagement Agreement. Epiq will comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in these chapter 11 cases regarding professional compensation and reimbursement of expenses.

12. The Debtors provided Epiq a retainer in the amount of $25,000. Epiq seeks to hold the retainer as security for payment of Epiq's final invoice for services rendered and expenses incurred pursuant to the Engagement Agreement.

13. Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Epiq and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

**Disinterestedness**

14. Epiq has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest identified by the Debtors. To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Mailloux Declaration, Epiq is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as

required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estate in connection with any matter on which it would be employed.

15. Epiq believes that it does not have any relationships with creditors or other parties in interest in these chapter 11 cases that would present a disqualifying conflict of interest. To the extent that Epiq discovers any connection with any interested party or enters into any new relationship with any interested party, Epiq will promptly supplement its disclosure to the Court.

### Basis for Relief

16. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

17. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

Fed. R. Bankr. P. 2014.

18. In light of the size and complexity of the Debtors' chapter 11 cases, the Debtors respectfully submit that retaining and employing Epiq pursuant to the terms of the Engagement Agreement is necessary and in the best interests of the Debtors' estate and all parties in interest in these chapter 11 cases. The Debtors also believe that the terms and conditions of the Engagement

Agreement are reasonable in light of the anticipated high volume of creditors and other parties in interest that will be involved in these chapter 11 cases.

19. Accordingly, to help manage administrative tasks with respect to the thousands of creditors and other parties that are expected to be involved in these chapter 11 cases and the complexity of such cases, the Debtors respectfully request that the Court enter an order appointing Epiq as the Administrative Advisor in these chapter 11 cases pursuant to sections 327(a), 330, and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

20. Further, in accordance with the Debtors' request, Epiq agreed to serve as Administrative Advisor on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective as of the Petition Date, so that Epiq can be compensated for services rendered before approval of the Application.  The Debtors believe that no party-in-interest will be prejudiced by granting the relief requested, effective as of the Petition Date, as proposed in the Application because Epiq has provided, and continues to provide, valuable services to the Debtors' estates during the interim period.

21. Accordingly, the Debtors respectfully request entry of the Proposed Order authorizing the Debtors to retain and employ Epiq as Administrative Advisor effective as of the Petition Date.

## Notice

22. The Debtors will provide notice of this motion to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto;

(h) the Junior DIP Agent and counsel thereto; (i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

23.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

9

      WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: August 30, 2023

*/s/ Matthew A. Doheny*
Matthew A. Doheny
Title: Chief Restructuring Officer
Yellow Corporation