**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**APPLICATION OF DEBTORS FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE RETENTION AND
EMPLOYMENT OF ERNST & YOUNG LLP AS TAX SERVICES PROVIDER
EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this application:[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing the Debtors to employ and retain Ernst & Young LLP ("EY LLP") effective as of the Petition Date (as defined herein), pursuant to the terms and conditions set forth in the master services agreement, dated August 14, 2023 (the "Master Services Agreement"), and certain statements of work, dated August 14, 2023, August 16, 2023, and August 21, 2023, between the Debtors and EY LLP (the "Statements of Work" and together with the Master Services Agreement the "Engagement Letters"), copies of which are attached as

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"). Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration, as applicable.

**Exhibit 1**, **Exhibit 2**, **Exhibit 3**, **Exhibit 4**, and **Exhibit 5** to the Carlstedt Declaration (as defined herein) and incorporated by reference herein; and (b) granting related relief. In support of this application, the Debtors submit and incorporate by reference the Declaration of Jason Carlstedt, a partner of EY LLP (the "Carlstedt Declaration"), which is attached hereto as **Exhibit B**.

### Jurisdiction and Venue

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 327(a), 328(a), and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-1.

### Background

5. On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to

Bankruptcy Rule 1015(b) [Docket No. 169]. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors [Docket No. 269] (the "<u>Committee</u>"). No trustee or examiner has been appointed in these chapter 11 cases.

### **<u>EY LLP's Qualifications</u>**

6.   EY LLP has significant qualifications and experience as an outside tax services provider. The firm's related experience is widely recognized, and it regularly provides such services to large and complex business entities. Significantly, EY LLP has extensive experience in delivering such services to debtors who have filed chapter 11 cases. *See, e.g.*, *In re Clovis Oncology Inc., et al.*, No. 2211292 (JKS) (Bankr. D. Del. Mar. 24, 2023); *In re Carestream Health, Inc., et al.*, No. 22-10778 (JKS) (Bankr. D. Del. Oct. 7, 2022); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Jan. 3, 2022); *In re EHT US1, Inc., et al.*, No. 21-10036 (CSS) (Bankr. D. Del. May 11, 2021); *In re MatlinPatterson Glob. Opportunities Partners II L.P. et al.*, No. 21-11255 (DSJ) (Bankr. S.D.N.Y. Aug. 24, 2021); *In re Alpha Entm't LLC*, No. 20-10940 (LSS) (Bankr. D. Del. July 12, 2020); *In re LBI Media, Inc. et al.*, No. 18-12655 (CSS) (Bankr. D. Del. July 8, 2019); *In re ATD Corp.*, No. 18-12221 (KJC) (Bankr. D. Del. Nov. 13, 2018); *In re Se. Grocers, LLC*, No. 18-10700 (MFW) (Bankr. D. Del. May 14, 2018); *In re Momentive Performance Materials (MPM Silicones, LLC)*, No. 14-22503 (SDD) (Bankr. S.D.N.Y. Jun. 26, 2014); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. Jun. 10, 2014); *In re Oncure Holdings, Inc.*, No. 13-11540 (LSS) (Bankr. D. Del. Jul. 23, 2014); and *In re Exide Techs.*, No. 13-11482 (KJC) (Bankr. D. Del. Dec. 17, 2013).

7. EY LLP's professionals have already provided certain prepetition services to the Debtors. In doing so, EY LLP's professionals have worked closely with the Debtors' management team and other professionals and have become well-acquainted with the Debtors' business and related matters. Accordingly, EY LLP is both well-qualified and uniquely able to provide tax services to the Debtors in these chapter 11 cases in an efficient and timely manner. The Debtors believe that EY LLP's employment is in the best interests of the Debtors, their estates, and their creditors.

### Services to be Provided

8. As set forth in detail in the Engagement Letters, EY LLP has agreed to provide (i) certain bankruptcy tax advisory services (the "Bankruptcy Tax Services"), (ii) tax compliance services (the "Tax Compliance Services"), (iii) international and domestic transfer pricing services (the "Transfer Pricing Services"), and (iv) certain advisory services related to the *Employee Retention Credit for Employers Subject to Closure Due to Covid-19* (the "ERC Services"), to the Debtors in connection with these chapter 11 cases upon approval of the Court, a summary of which is set forth below and fully described in the Engagement Letters:[3]

(a) Bankruptcy Tax Services:

- Advise Debtors' personnel in developing an understanding of the tax issues and options related to Debtors' chapter 11 filing, taking into account Debtors' specific facts and circumstances, for US federal and state & local purposes.

- Advise on the federal and state & local income tax consequences of proposed chapter 11 plans including, if necessary, assisting in the preparation of IRS ruling requests regarding the tax consequences of alternative chapter 11 plan structures and tax opinions.

---

[3] The summaries of certain terms of the Engagement Letters herein are qualified in their entirety by reference to the provisions of such Engagement Letters. To the extent there is any discrepancy between the summaries contained in this application and the terms of the Engagement Letters, the terms of the Engagement Letters shall control. Unless otherwise defined, capitalized terms used in these summaries shall have the meanings ascribed to them in the Engagement Letters.

4

- Understand and advise on the tax implication of a chapter 11 plan and/or restructuring alternatives that Debtors are evaluating with existing creditors that may result in a change in the equity, capitalization and/or ownership of the shares of Debtors and its assets.

- Gather information, prepare section 382 calculations and apply the appropriate federal and state & local tax law to historic information regarding changes in the ownership of Debtors' stock to indicate whether any of the shifts in stock ownership may have caused an ownership change that will restrict the use of tax attributes (such as net operating loss, capital loss, credit carry forwards, and built in losses) and the amount of any such limitation.

- Prepare tax calculations for Debtors' review and apply the appropriate federal and state & local tax law to determine the amount of tax attribute reduction related to debt cancellation income and modeling of tax consequences of such reduction.

- Update the draft tax basis balance sheets and draft computations of stock basis as of certain relevant dates for purposes of analyzing the tax consequences of alternative chapter 11 plan structures.

- Analyze federal and state & local tax treatment of the costs and fees incurred by the Debtors in connection with the bankruptcy proceedings, including tax return disclosure and presentation.

- Analyze federal and state & local tax treatment of interest and financing costs related to debt subject to automatic stay, and new debt incurred, including tax return disclosure and presentation.

- Analyze federal and state & local tax consequences of restructuring and rationalization of inter-company accounts, and upon written request, we will analyze tax impacts of transfer pricing and related cash management.

- Analyze federal and state & local tax consequences of restructuring in the U.S. or internationally during bankruptcy, including tax return disclosure and presentation.

- Analyze federal and state & local tax consequences of potential bad debt and worthless stock deductions, including tax return disclosure and presentation.

- Analyze federal and state & local tax consequences of employee benefit plans, as requested in writing.

- Advise Debtor personnel on the accounting and tax aspects of the bankruptcy tax process and procedure lifecycle, the typical tax issues, options and opportunities related to a Chapter 11 filing, the typical impact of a Chapter 11 filing on a corporate tax department's operations, and leading practices for addressing such impact areas while operating in bankruptcy.

- Assist with various tax, compliance, audit, notices, tax account registration/deregistration, business licensing, tax accrual or tax working capital analysis and voluntary disclosure issues arising in the ordinary course of business while in bankruptcy, including (if or as applicable) but not limited to: federal or state & local income/franchise tax, sales and use tax, value added taxes, property tax, employment taxes, and severance tax.

- Scope, assist and advise on the potential for seeking tax refunds, including but not limited to: federal or state & local income/franchise tax, sales and use tax, value added taxes, property tax, employment taxes, severance tax, excise tax, credit & incentive agreements, annual reports, business licenses, other miscellaneous taxes or regulatory fees and unclaimed property. Any findings-based fee services to claim and secure tax refunds identified will be subject to a separate Statement of Work mutually agreed to by the parties.

- Provide documentation, as appropriate or necessary, of tax matters, tax analysis, opinions, recommendations, conclusions and correspondence for any proposed restructuring alternative, bankruptcy tax issue, audit or claim resolution issues, or other tax matter described above.

(b) <u>Tax Compliance Services:</u>

- Provide tax compliance services to the Debtors for the tax year ending December 31, 2022, and provision assistance for the 2023 tax year.

- Prepare Debtors' US federal, state, local, Canadian, and Puerto Rican income returns, franchise returns, and related estimated tax calculations (2023 estimates) and extensions.

- Provide general tax consulting services in tax specialty practices including federal, international, state, and local taxes.

- Prepare the appropriate Forms 3115, Changes of Accounting Methods, for changes that are required as part of normal operations.

- Prepare certain information and summaries for Debtors' personnel use in its 2023 quarterly and annual tax accounting computations.

- Coordinate and handle administrative examinations/audits by U.S. federal, state, local, Canadian, and Puerto Rican taxing authorities.

- Prepare Forms 990 and K-120 for Yellow Freight System Employees' Club.

- Prepare Form 1120-F and foreign bank account reporting requirements.

- Prepare amended tax returns (federal, state, and local) as necessary as part of finalized Revenue Agent Reports or carryback.

6

- Prepare estimated excise tax payments and tax filings for foreign insurance premiums.

- Provide Debtors with copies of, or reports compiled from, workpapers for each tax return prepared by EY LLP.

- Provide business license and annual report compliance services for filings due between September 1, 2023, and December 31, 2023.

(c) Transfer Pricing Services:

- Perform an analysis of the Debtors' international intercompany transactions involving the various affiliates.

- Advise on whether the intercompany transactions analysis, in conjunction with previous transfer pricing reports prepared by EY LLP, is in compliance with reasonableness requirements of applicable law for the purposes of avoiding potential transfer pricing penalties for FY 2022.

- Provide the Debtors with updated FY 2023 memorandums with a financial update in the FY 2023 memorandums using comparable company searches with the same methods selected in the FY 2021 Domestic Transfer Pricing Memos for various pre-existing domestic intercompany transactions.

(d) ERC Services:

- Assist in the analytics, quantification and documentation of the impact of the COVID-19 pandemic on Eligible Employers and qualified wages paid in 2020.

- Request the information from the Debtors necessary for the Debtors to claim and substantiate the ERC in 2020.

- Conduct more detailed interviews of key personnel (e.g., operations, human resources, etc.) familiar with the impact of the COVID-19 pandemic on the Debtor's operations, as necessary.

- Survey employees of the Debtor-selected employee groups for purposes of documenting when services were or were not performed as it relates to the ERC for the agreed upon time frame, as necessary.

- Review, advise the Debtors, and document potential ERC eligibility by employee based on the information obtained from the Debtors.

- Assist the Debtors in tracking wages from the date of initial impact through projected end date and calculate the ERC.

- Provide support to prepare necessary forms and supporting documentation related to claiming the ERC and provide such information for the Debtors' review and approval prior to claiming the ERC.

- Work directly with the Debtors and/or, upon authorization, payroll provider to review filing of Forms 941-X.

- Prepare written federal tax advice, which will include a summary of applicable facts and assumptions; qualification of the Debtors' potential eligibility under the CARES Act, CAA and ARPA; ERC calculations with related methodology; and a summary of recommended documentation to assist the Debtors in substantiating employer eligibility and Qualified Wages for each location.

9. EY LLP's performance of the Services is critical to the Debtors' ongoing efforts to successfully achieve their chapter 11 objectives and preserve and maximize the value of their estates. As a result, the Debtors submit that EY LLP is well-qualified and best suited to perform the Services.

**Efforts to Avoid Duplication of Services**

10. All of the Services will be appropriately directed by the Debtors in an effort to avoid duplication of services among the other professionals retained in these chapter 11 cases. The Debtors believe that the Services will complement, and will not be duplicative of, any services provided by the Debtors' other professionals.

**Professional Compensation**

11. EY LLP intends to charge the Debtors for their services as follows:

(a) Bankruptcy Tax Services:

- EY LLP will charge the Debtors for Bankruptcy Tax Services based on the time that EY LLP professionals spend performing such services, billed at the following hourly rates for each level of professional:

| Level | Hourly Rate |
|---|---|
| Partner/Principal | $1,450 |
| Managing Director | $1,350 |

| | |
|---|---:|
| Senior Manager | $1,050 |
| Manager | $950 |
| Senior | $660 |
| Staff | $440 |

(b) <u>Tax Compliance Services</u>:

- EY LLP will charge a total fee of $1,700,000 for the Tax Compliance Services. $850,000 of this fee has previously been paid, with $850,000 remaining to be invoiced.

- The fees for additional compliance services will be based on the actual time that EY LLP's professionals spend performing them, billed at the following rates:

| Level | Hourly Rate |
|---|---:|
| Partner/Managing Director | $800 |
| Senior Manager | $700 |
| Manager | $600 |
| Senior | $500 |
| Staff | $400 |
| Client Service Associate | $300 |

(c) <u>Transfer Pricing Services</u>:

- EY LLP will charge a total fee of $91,670 for the Transfer Pricing Services. $84,500 of this fee has previously been paid, with $9,270 remaining to be invoiced.

(d) <u>ERC Services</u>:

- EY LLP will charge the Debtors for ERC Services based on the time that EY LLP professionals spend performing such services, billed at the following hourly rates for each level of professional:

| Level | Hourly Rate |
|---|---|

9

| | |
|---|---|
| Partner/Managing Director | $825 |
| Executive Director | $775 |
| Senior Manager | $725 |
| Manager | $625 |
| Senior | $450 |
| Staff | $275 |

12. EY LLP's fees are exclusive of taxes or similar charges, as well as customs, duties, or tariffs imposed in respect of the Services, all of which the Debtors shall pay (other than taxes imposed on EY LLP's income generally).

13. In addition to the fees set forth above, the Debtors have agreed to reimburse EY LLP for any expenses directly incurred in connection with EY LLP's retention in these chapter 11 cases and the performance of the Services set forth in the Engagement Letters, including all potential value-added taxes, sales taxes, and other indirect taxes. EY LLP's direct expenses include reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations, and other expenses, including any taxes and related administrative costs that result from billing arrangements that are requested by the Debtors.

14. During the ninety days before the Petition Date, the Debtors paid approximately $877,000 to EY LLP.

15. As of the Petition Date, EY LLP was not owed any money by the Debtors in respect of services provided by EY LLP either prior to or following the Petition Date.

16. If EY LLP is requested or authorized by the Debtors, or is required by government regulation, subpoena, or other legal process, to produce its documents or personnel as witnesses with respect to the Services or the Engagement Letters, the Debtors agreed, so long as EY LLP is

not a party to the proceeding in which the information is sought, to reimburse EY LLP for its professional time and expenses, as well as the fees and expenses of EY LLP's counsel, incurred in responding to such requests.

17. EY LLP may receive rebates in connection with certain purchases that are used to reduce charges that EY LLP would otherwise pass on to its clients.

18. EY LLP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable U.S. Trustee guidelines, and any other applicable procedures and orders of the Court, on an hourly basis.

## Certain Provisions of the Engagement Letters

19. EY LLP's provision of Services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letters. Included among the terms and conditions set forth in the general terms and conditions of the Engagement Letters are dispute resolution provisions substantially similar to the following:

> Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Client or its subsidiaries or of EY) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first

11

to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures as set forth in Appendix 1 to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon Client, EY and any all successors and assigns thereof.

20. The Engagement Letters may be terminated by EY LLP or the Debtors in accordance with their terms, but in any event the Engagement Letters will expire upon the effective date of the Debtors' confirmed chapter 11 plan, or the liquidation of the Debtors' assets under chapter 11 or 7 of title 11 of the Bankruptcy Code, or otherwise. Notwithstanding such termination, however, the Debtors' estates will remain obligated to pay all accrued fees and expenses as of the effective date of such termination. Moreover, certain other terms of the Engagement Letters will continue (either indefinitely or for a specified period of time) following termination.

### EY LLP's Disinterestedness

21. To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Carlstedt Declaration, EY LLP: (a) does not hold or represent an interest adverse to the Debtors or their estates; and (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code. To the extent that EY LLP discovers any new relevant facts or relationships bearing on the matters described herein during the period of its retention, EY LLP will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### Basis for Relief

**A.**  **The Bankruptcy Code Permits the Employment and Retention of EY LLP on the Terms of the Engagement Letters.**

22. Section 327(a) of the Bankruptcy Code authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are

disinterested persons." 11 U.S.C. § 327(a). For the reasons discussed above and in the Carlstedt Declaration, EY LLP satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.

23. Additionally, section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including tax services providers, on more flexible terms that reflect the nature of their services and market conditions.

24. The Debtors respectfully submit that the terms and conditions of the Engagement Letters are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code given the numerous issues that EY LLP may be required to address in the performance of the Services and the market prices for EY LLP's services for engagements of this nature.

25. As set forth above, EY LLP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

**B.    The Indemnification Provision in the Engagement Letters Is Appropriate.**

26. The Debtors and EY LLP believe that the indemnification provision in the Engagement Letters, as modified by the Order, is customary and reasonable for tax engagements both out-of-court and in chapter 11 cases. *See United Artists Theatre Co. v. Walton (In re United*

*Artists Theatre Co.*), 315 F.3d 217, 234 (3d Cir. 2003) (finding indemnification agreement between debtor and financial adviser reasonable under section 328 of the Bankruptcy Code). Accordingly, the Debtors respectfully submit that the terms of the indemnification provision are reasonable and customary and should be approved.

    **C.**    **The Retention of EY LLP Is Critical to the Debtors' Success.**

27.    Denial of the relief requested herein will deprive the Debtors of the assistance of a skilled tax services provider in these chapter 11 cases. Moreover, since EY LLP has already provided services to the Debtors, a denial of EY LLP's employment would result in an unjust disadvantage to the Debtors and all parties in interest because of EY LLP's understanding of the Debtors' business. Indeed, if the Debtors were forced to engage a new tax services provider who lacks a thorough understanding of the Debtors' businesses, such change would mandate the commitment of significant and costly resources to educate a replacement.

28.    In addition, the Debtors submit that the employment and retention of EY LLP effective as of the Petition Date is warranted by the circumstances of these chapter 11 cases. The Third Circuit has ruled that a bankruptcy court may grant an application of employment and retention effective as of the Petition Date where the services performed by the applicant "were necessary under the circumstances." *In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986). Factors such as "whether the applicant was under time pressure to begin service" and absence of prejudice favor the granting of such an application. *Id.* The Debtors respectfully submit that EY LLP's Services "were necessary under the circumstances" since they have been critical to the Debtors' efforts to undertake these chapter 11 cases. Further, the Debtors believe that no party in interest can be prejudiced by the employment and retention of EY LLP effective as of the Petition Date because EY LLP's Services have benefited, and will continue to benefit, the Debtors' estates as a whole.

29. Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Debtors to retain and employ EY LLP in these chapter 11 cases on the terms described in the Engagement Letters.

## Notice

30. The Debtors will provide notice of this motion to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto;(i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent, and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; (o) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

31. No prior request for the relief sought in this application has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated: August 30, 2023  /s/ Matthew A. Doheny
Wilmington, Delaware  Name:  Matthew A. Doheny
                      Title:  Chief Restructuring Officer, Yellow Corporation