**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) ) ) | Case No. 23-11069 (CTG) |
| Debtors. | ) ) ) | (Jointly Administered) |

**OMNIBUS MOTION
OF DEBTORS SEEKING
ENTRY OF AN ORDER (I) AUTHORIZING
(A) REJECTION OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES EFFECTIVE AS OF
DATES SPECIFIED HEREIN AND (B) ABANDONMENT OF CERTAIN
PERSONAL PROPERTY, IF ANY, AND (II) GRANTING RELATED RELIEF**

> **CONTRACT COUNTERPARTIES AND LANDLORDS RECEIVING THIS OMNIBUS REJECTION MOTION SHOULD LOCATE THEIR NAMES AND CONTRACTS OR LEASES IN THE SCHEDULE OF CONTRACTS ATTACHED HERETO AS ANNEX 1 TO EXHIBIT A OR IN THE SCHEDULE OF LEASES ATTACHED HERETO AS ANNEX 2 TO EXHIBIT A**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

**Relief Requested**

1.  The Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to (i) reject certain executory contracts,

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"). Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration, as applicable.

set forth on Annex 1[3] (the "Rejected Contracts List") to **Exhibit A** attached hereto (each, a "Contract," and collectively, the "Contracts") effective as of the rejection date listed for each Contract on the Rejected Contract List (the "Contract Rejection Date"), (ii) reject certain unexpired leases, including any guaranties thereof and any amendments, modifications, or subleases thereto for nonresidential real property located at the premises (collectively, the "Premises") set forth on Annex 2[4] (the "Rejected Leases List") to **Exhibit A** attached hereto (each, a "Lease," and collectively, the "Leases") effective as of the earlier of (x) August 31, 2023 or (y) the date the Debtors have surrendered the Premises to the landlord via delivery of the keys, key codes, or alarm codes to the premises, as applicable, to the applicable lease counterparty, or, if not delivering such keys or codes, providing notice that the landlord may re-let the premises (the "Lease Rejection Date" and together with the Contract Rejection Date, the "Rejection Dates"), and (iii) abandon certain equipment, fixtures, furniture, or other personal property (the "Personal Property") that may be located at the Premises, and (b) granting related relief.

## Jurisdiction and Venue

1.  The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the

---

[3] The Debtors reserve the right to remove any Contract or to amend any Rejection Date set forth on this Rejected Contracts List attached as **Exhibit A** as Annex 1 at any time prior to the later of the Rejection Date or the date of entry of an order of the Court approving the rejection.

[4] The Debtors reserve the right to remove any Lease or to amend any Rejection Date set forth on the Rejected Leases List attached to **Exhibit A** as Annex 2 at any time prior to the later of the Rejection Date or the date of entry of an order of the Court approving the rejection.

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 365(a), and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## Background

4. On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169]. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee"). No trustee or examiner has been appointed in these chapter 11 cases.

## Contracts and Leases to Be Rejected

5. As set forth in the First Day Declaration, the Debtors commenced these chapter 11 cases to effectuate an orderly wind-down of their businesses and simultaneously market and sell some or all of their assets. Since the commencement of these chapter 11 cases, the Debtors and their advisors have worked diligently to review the Debtors' executory contracts and unexpired leases with an eye toward right-sizing their contractual and lease obligations to better align with

their postpetition wind-down objectives and reduce the administrative burden on their estates. As part of this process, the Debtors, along with their advisors, have undertaken extensive review of their executory contracts and unexpired leases of real property, including the ongoing cost of the contracts and leases and the effect on their chapter 11 objectives of rejecting such contracts and leases.

6. The Debtors have determined in their business judgment that the costs incurred under the Contracts and Leases constitute an unnecessary drain on the Debtors' limited resources and/or more cost-efficient alternatives exist. In considering their options, the Debtors, with the assistance of their advisors, evaluated the necessity and cost efficiency of the Contracts and Leases. To that end, the Debtors seek to reject the Contracts, which primarily consist of, among others, IT license agreements, supply agreements, staffing services agreements, and other operational-related agreements that the Debtors have determined are no longer needed in connection with their postpetition wind-down and sale objectives. In addition, the Debtors seek to reject the Leases, which consist of terminal leases, office space leases, and parking lot leases that the Debtors no longer require on a postpetition basis—many of which the Debtors have already exited the Premises prior to the Petition Date. The Debtors determined that the transactional costs and postpetition carrying costs associated with marketing the Contracts and Leases exceed any potential benefit that may be realized from potential assignments or subleases. Accordingly, in an effort to reduce postpetition administrative costs and in the exercise of the Debtors' business judgment, the Debtors believe that the rejection of the Contracts and Leases, as set forth on the Rejected Contracts List and Rejected Leases List, effective as of the Rejection Dates, is in the best interests of the Debtors, their estates, and all parties in interest.

**Personal Property to Be Abandoned**

7. To the extent that any Personal Property is located at the Premises, the Debtors have evaluated such remaining Personal Property at the Premises to determine whether (a) the Personal Property is of inconsequential value or (b) the cost of removing and storing the Personal Property for future use, marketing, or sale exceeds its value to the Debtors' estates. Because the Debtors plan to shut down or have already shut down all operations at the Premises, the Personal Property, if any, will no longer be necessary for the administration of the Debtors' estates.

8. Accordingly, to reduce postpetition administrative costs and, in the exercise of the Debtors' sound business judgment, the Debtors believe that the abandonment of Personal Property that may be located at each of the Premises, if any, is appropriate and in the best interests of the Debtors, their estates, and their creditors.

**Basis for Relief**

I. **Rejection of the Contracts and Leases Is a Sound Exercise of the Debtors' Business Judgement.**

9. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." The decision to reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (Bankr. D. Del. 1995). Application of the business judgment standard requires a court to approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See Lubrizol Enters., Inc. v. Richmond Metal Finishes*, 756 F.2d 1043,

5

1047 (4th Cir. 1985).  Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citation omitted).

10. Rejection of a contract or unexpired lease is appropriate where such rejection would benefit the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989).  Upon finding that a debtor has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a). *See In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed*, 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

11. Rejection of the Contracts and Leases is well within the Debtors' business judgment and is in the best interest of their estates.  As set forth above, the Debtors commenced these chapter 11 cases to effectuate an orderly wind-down of their business operations and undertake one or more sale processes for some or all of their assets.  As an integral component of their efforts to preserve and maximize the value of their estates and reduce their potential administrative costs in these chapter 11 cases by, among other things, eliminating unnecessary costs, the Debtors have determined, in their business judgment, that the Contracts and Leases are burdensome and provide no economic value to their estates.  The Contracts and Leases are unnecessary to the Debtors' go-forward chapter 11 objectives and, if not rejected, could potentially be a drain on the Debtors' estates and a hindrance to their chapter 11 efforts.  Any continued expense in maintaining the

Leases would likely outweigh, if not eclipse, any benefit in attempting to identify a potential acquirer of the Leases and unnecessarily deplete assets of the Debtors' estates, to the detriment of creditors.  In contrast, rejection of the Leases will represent a monthly cost savings to the Debtors' estates moving forward.

II.  **Rejection of the Contracts and Leases Effective as of the Rejection Dates Is Appropriate.**

12.  Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively.  *See In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection of [leases] to apply retroactively").  Courts have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to entry of an order authorizing such rejection where the balance of equities favors such relief.  *See In re Thinking Machs. Corp.*, 67 F.3d 1021, 1028–29 (1st Cir. 1995) (stating that "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively"); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *CCI Wireless*, 297 B.R. at 140 (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, No. 03-6419, at *3 (S.D.N.Y. Nov. 15, 2002) ("We cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); *see also In re At Home Corp.*,

7

392 F.3d 1064, 1065–66 (9th Cir. 2004) (holding "that a bankruptcy court may approve retroactively the rejection of an unexpired nonresidential lease"); *see also TW, Inc. v. Angelastro (In re TW, Inc.)*, No. 03-10785, at *2 (D. Del. Jan. 14, 2004) (upholding bankruptcy court ruling denying rejection of leases *nunc pro tunc* to the petition date when the debtor had not surrendered possession prior to the petition date).

13. In this instance, the balance of equities favors rejection of the Contracts and Leases effective as of the Rejection Dates. Without such relief, the Debtors will incur unnecessary administrative expenses related to the Contracts and Leases—agreements that do not provide a net benefit to the Debtors' estates. With respect to the Leases, the landlords of the Leases will not be unduly prejudiced if the rejection is deemed effective as of the Lease Rejection Date. Possession of the Premises will be delivered to each respective landlord, along with an unequivocal and irrevocable statement of surrender and abandonment of the Premises. Further, by this motion, the landlords and counterparties to the Contracts and, where applicable, their respective counsel are receiving notice of the Debtors' intention to reject the Contracts and Leases. Indeed, the Debtors have sought the relief requested as soon as reasonably practicable in these chapter 11 cases. Accordingly, failure to approve rejection effective as of the applicable Rejection Dates would result in the Debtors incurring unnecessary administrative costs associated with the Leases. In light of the foregoing, the balance of equities favors approving rejection retroactive to the Rejection Dates.

14. Courts in this jurisdiction have approved relief similar to that requested herein. *See, e.g.*, *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 19, 2023) (authorizing rejection of unexpired leases effective as of the petition date); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (same); *In re Town Sports International, LLC*,

No. 20-12168 (CSS) (Bankr. D. Del. Oct. 16, 2020) (authorizing rejection of unexpired leases effective as of the rejection date); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Apr. 15, 2020) (same); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Sep. 19, 2019) (authorizing rejection of unexpired leases and executory contracts).

**III.   This Abandonment of Personal Property Is Appropriate.**

15.   The Debtors have satisfied the standard set forth in section 554(a) of the Bankruptcy Code, granting them authority to abandon the Personal Property. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts generally give a debtor in possession great deference to its decision to abandon property. *See*, *e.g.*, *In re Vel Rey Props., Inc.*, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless certain property is harmful to the public, once a debtor has shown that it is burdensome or of inconsequential value to the estate, a court should approve the abandonment. *Id.*

16.   Before deciding to abandon the Personal Property, if any, the Debtors will determine whether the costs of moving and storing such Personal Property outweigh any benefit to the Debtors' estates. Further, any efforts by the Debtors to move or market the Personal Property could unnecessarily delay the Debtors' surrender of the Premises and the rejection of the Leases. Accordingly, it is in the best interests of the Debtors and their estates for the Debtors to abandon Personal Property located on the Premises. The Debtors request that the abandonment of the Personal Property be effective as of the Lease Rejection Date.

17.   Courts in this jurisdiction have approved relief similar to the relief requested herein. *See*, *e.g.*, *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 19, 2023) (authorizing, but not directing, the debtors to abandon personal property that may be located at the

debtors' leased premises that are subject to a rejected lease); *In re Highpoint Resources Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. March 31, 2021) (same); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Apr. 15, 2020) (same); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (same).[5]

18. In light of the foregoing facts and circumstances, rejection of the Contracts and Leases under section 365(a) of the Bankruptcy Code is a sound exercise of the Debtors' business judgment and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors. The balance of equities supports granting rejection of the Contracts and Leases effective retroactive to the Rejection Dates. Finally, the Debtors' abandonment of certain Personal Property may and should be authorized because any Personal Property that the Debtors do not remove in advance of surrender and choose to abandon will be burdensome or of inconsequential value to the Debtors' estates.

### The Requirements of Bankruptcy Rule 6006(f) Are Satisfied

19. Bankruptcy Rule 6006(f) establishes requirements for a motion to reject multiple executory contracts or unexpired leases that are not between the same parties. Bankruptcy Rule 6006(f) states, in part, that such a motion shall:

    (a) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

    (b) list parties alphabetically and identify the corresponding contract or lease;

    (c) specify the terms, including the curing of defaults, for each requested assumption or assignment;

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

DOCS_DE:244544.1 96859/001

(d) specify the terms, including the identity of each assignee and the adequate

(e) assurance of future performance by each assignee, for each requested assignment;

(f) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

(g) be limited to no more than 100 executory contracts or unexpired leases.

20. The Debtors have satisfied the requirements of Bankruptcy Rule 6006(f)(1)-(5), but exceed the numerosity requirement of Bankruptcy Rule 6006(f)(6). The Motion seeks to reject approximately 96 Contracts and 37 Leases. The Debtors submit that a waiver of the numerosity requirement of Bankruptcy Rule 6006(f)(6) is appropriate and justified in this case. First, as described herein, the Debtors have no use of any of the Contracts or Leases, and must immediately reject all Contracts or Leases effective as of the Rejection Dates to prevent any accrual of administrative claims. To the extent a waiver is not provided, the Debtors would needlessly expend further resources simply to prepare and file additional duplicative omnibus rejection motions. Second, where possible, the Debtors have previously communicated their intent to reject the Contracts or Leases with the counterparties in advance of filing this motion, including making property available for retrieval by the counterparties. Third, the many of Contracts or Leases listed herein have already been terminated and are included to provide rejection only to the extent certain provisions in the previous agreements can be deemed executory. Finally, the Debtors will immediately provide notice to all counterparties of the proposed rejection upon the scheduling of a hearing, and will work with such counterparties to resolve any objections prior to the hearing. The Debtors do not anticipate any prejudice to counterparties to the Contracts and Leases merely because the number of rejected Contracts and Leases exceeds 100.

**Reservation of Rights**

21.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) other than as set forth herein and on the Rejected Contracts List and Rejected Leases List; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

**Notice**

22.     The Debtors will provide notice of this motion to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto; (i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent, and counsel thereto; (n) the United States Department of Justice and

Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; (o) the counterparties to the Contracts and Leases; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated:  August 31, 2023
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436)<br>Timothy P. Cairns (DE Bar No. 4228)<br>Peter J. Keane (DE Bar No. 5503)<br>Edward Corma (DE Bar No. 6718)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19801<br>Telephone: (302) 652-4100<br>Facsimile: (302) 652-4400<br>Email: ljones@pszjlaw.com<br>tcairns@pszjlaw.com<br>pkeane@pszjlaw.com<br>ecorma@pszjlaw.com | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)<br>David Seligman, P.C. (admitted *pro hac vice*)<br>Whitney Fogelberg (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>Email: patrick.nash@kirkland.com<br>david.seligman@kirkland.com<br>whitney.fogelberg@kirkland.com<br><br>-and-<br><br>Allyson B. Smith (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>Email: allyson.smith@kirkland.com<br><br>*Proposed Co-Counsel for the Debtors and Debtors in Possession* |