# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: September 8, 2023 at 4:00 p.m. (ET)<br>Hearing Date: September 15, 2023 at 11:30 a.m. (ET) |
| | Ref. No. 391 |

## PACCAR FINANCIAL CORP.'S RESERVATION OF RIGHTS AND RESPONSE TO DEBTORS' MOTION FOR APPROVAL OF CONTRACT AND LEASE REJECTION PROCEDURES [DKT. NO. 391]

PACCAR Financial Corp. ("PACCAR"), a current lessor of Peterbilt trucks to the above-captioned Debtors, hereby submits its Reservation of Rights and Response to the above-captioned Debtors' motion seeking, *inter alia*, approval of procedures that would govern rejection of executory contracts and unexpired leases and any related abandonment of Debtor personal property (the "Motion") [Dkt. No. 391].  In support thereof, PACCAR states as follows:

1. On August 6, 2023 (the "Petition Date"), Yellow Corporation and its debtor affiliates each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtors, while remaining in possession of their assets, are in full-scale wind down and liquidation mode in these bankruptcy cases.

3. The Motion was filed on August 31, 2023. [Dkt. No. 391.][2]

4. On or about June 29, 2018, PACCAR as lessor and YRC Enterprise Services, Inc. as

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 10990 Roe Avenue, Overland Park, Kansas 66211.

[2] The Debtors have scheduled the Motion for hearing on September 15, 2023, at 11:30 a.m., with a response deadline of September 8, 2023.

{01936535;v1 }    1

lessee entered into a Master Equipment Lease Agreement and related agreements (collectively, the "Master Lease") with respect to the leasing of PACCAR's Peterbilt trucks.[3]

5. Thereafter, as provided in the Master Lease terms and conditions, PACCAR as lessor and debtor lessees USF Holland LLC, New Penn Motor Express LLC, and USF Reddaway Inc. entered into multiple leases and related schedules (collectively, as may have been amended or extended, the "Lease Schedules"). Pursuant to the Master Lease and related Lease Schedules, PACCAR leased over 320 trucks (the "Trucks") to the Debtors.[4]

6. PACCAR, as owner, retains the titles for all of their leased Trucks.[5]

7. The respective Lease Schedules apply to specified Trucks (with identifying information, such as VIN numbers) and have varying commencement and maturity dates, as well as varying monthly payment due dates.

8. As of the Petition Date, on an aggregate per month basis, the lessee Debtors collectively were obligated to pay PACCAR approximately $627,000 in lease payments under all Lease Schedules (whether matured or not).

9. The Debtors currently are in default of their monthly payment obligations under the Master Lease and Lease Schedules. As of the Petition Date, and subject to further reconciliation, the outstanding and overdue aggregate balance owed to PACCAR was at least $174,000 (exclusive of any late charges, interest, liquidated damages, and attorneys' fees).[6]

10. Thirteen (13) of the Lease Schedules have matured either shortly before or since the

---

[3] YRC Worldwide Inc. executed guaranty documents in connection with the Master Lease.
[4] USF Holland LLC (22 lease accounts); New Penn Motor Express LLC (16 lease accounts); and USF Reddaway Inc. (11 lease accounts).
[5] In the weeks leading up to the Petition Date, the Debtors purchased several leased Trucks pursuant to the terms of the Master Lease and those applicable Lease Schedules. The Debtors also agreed with PACCAR to extend certain Lease Schedules so that those Lease Schedules did not mature as originally provided.
[6] Because the Debtors have not made any lease payments since the Petition Date, the open and overdue balance has only increased on a postpetition basis.

Petition Date, through and including September 7, 2023. An aggregate eighty-eight (88) Trucks correspond to those Lease Schedules. Additional Lease Schedules are set to mature in the coming weeks and months.

11. PACCAR has been informed its Trucks currently are sitting parked at over 80 Debtor-controlled facilities located throughout the United States. To the extent any of these facilities are leased by the Debtors, the corresponding leases for those facilities presumably could be implicated by the relief sought pursuant to the Motion.

12. To date, the Debtors on a postpetition basis have not sought to (a) reject the Master Lease or any of the related (unmatured) Lease Schedules or (b) purchase any of the Trucks subject to matured Lease Schedules.

**DEBTORS' PROPOSED CONTRACT REJECTION PROCEDURES**

13. By the Motion, the Debtors, *inter alia*, seek entry of an order approving proposed contract and lease rejection procedures. Those proposed procedures are described in the Motion itself and are set forth in the proposed order attached to the Motion.

14. The proposed contract rejection procedures contemplate rejection of, among other types of contracts, leases of nonresidential real property (hereafter, "Real Property Leases"). (*See* Motion, ¶¶8(a), 8(c), 8(d).) As for when a proposed rejection of a Real Property Lease would become effective, the Debtors state as follows:

> If no objection to the rejection of any Contract is timely filed, each Contract listed in the applicable Rejection Notice shall be rejected as of the Rejection Date set forth in the Rejection Notice or such other date as the Debtors and the counterparty or counterparties to such Contract(s) agree; provided that the effective date of a rejection of a nonresidential real property lease shall not occur until the later of (i) the date the Debtors file and serve a Rejection Notice for such lease, (ii) the Rejection Date set forth in the Rejection Notice, and (iii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord

may rekey the leased premises.

(Motion, ¶8(d); *see also* ¶17 ("Additionally, in the case of unexpired leases of nonresidential real property, the Debtors will likely vacate the premises before or upon serving the Rejection Notice, thereby allowing the counterparties to take possession of and relet the property promptly."))

15. PACCAR is not a party to any Real Property Leases. But, the PACCAR Trucks may be located at properties subject to Real Property Leases that, in turn, could be rejected under the proposed rejection procedures.[7] If so, rejection of such Real Property Leases (and the Debtors' corresponding vacation of the subject premises) potentially could have an adverse impact on PACCAR and its ability to access and retrieve Trucks, as necessary. The Debtors should provide how they propose to avoid occurrence of such scenario and language should be added to the proposed rejection procedures to protect against any such prejudice.

16. Any approved contract rejection procedures (and any actual rejection) should not operate to prejudice the rights of third parties such as PACCAR whose property leased by the Debtors may be located on property subject to a Real Property Lease the Debtors seek to reject. Notwithstanding any rejection of the underlying Real Property Lease, PACCAR potentially could require access rights to the subject location(s) in order to access its property (the Trucks), including without limitation if and when the Master Lease and related unmatured Lease Schedules are slated for rejection.[8]

17. By the Motion, the Debtors also seek authority to potentially abandon personal property located at premises subject to Real Property Leases. (Motion, ¶¶1, 8(g), 16, 22.) The Debtors certainly may choose to abandon their own personal property. But it should be made clear in any

---

[7] PACCAR lacks current visibility as to whether any of its Trucks are located at Debtor locations subject to any Real Property Leases. PACCAR remains willing to work with the Debtors on these issues.

[8] PACCAR has worked with the Debtors on a process for inspecting its Trucks. To inspect Trucks, PACCAR agents and representatives will travel to locations identified by the Debtors.

approval order (and any related rejection notice) that no property belonging to third parties such as PACCAR also will be deemed abandoned to a property owner as a result of any rejection of contracts, including Real Property Leases.

18. PACCAR does not waive and expressly reserves all rights, claims, remedies, defenses, and interests available under the Master Lease, related Lease Schedules, and otherwise under applicable law.

WHEREFORE, PACCAR respectfully requests that any order approving the Motion be modified so it is consistent with the above.

| | |
|---|---|
| Dated: September 7, 2023 | **ASHBY & GEDDES, P.A.** |
| | */s/ Michael D. DeBaecke* |
| | Michael D. DeBaecke (No. 3186) |
| | 500 Delaware Avenue, 8th Floor |
| | Wilmington, Delaware 19899-1150 |
| | Tel: (302) 654-1888 |
| | Email: mdebaecke@ashbygeddes.com |
| | |
| | *Counsel to PACCAR Financial Corp.* |