**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered) |

**OBJECTION OF ORANGE BATAVIA I, LLC TO MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR THE SALE OR SALES OF THE DEBTORS' ASSETS, ETC.**

Orange Batavia I, LLC, a lessor of Debtors with respect to the real property located at 2200 North Batavia, Orange, California ("Orange Batavia"), by and through its undersigned counsel, submits this limited objection to *Debtors' Motion For Entry of an Order (I)(A) Approving Bidding Procedures For the Sale or Sales of the Debtors' Assets; (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures; (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of The Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 378] (the "Sale Procedures Motion").[1]

As discussed below, while Orange Batavia does not object to Debtors' exercise of their business judgment to solicit bids to sell their Assets as part of their wind-down and liquidation process, the proposed timeline provided for the Sale Procedures Motion, including the requirement that any Sale Objection be filed only one business day after notification of Winning Bidder(s), with no clear timeline for transmission of an "Adequate Assurance Package," fails to provide a

[1] Capitalized terms not otherwise defined herein shall have the same meaning set forth in the Sale Procedures Motion.

fair process that affords Debtors' landlords with a meaningful opportunity to review, analyze and, potentially, object to the proposed assignment of their leases with Debtors. In support of this objection, Orange Batavia respectfully states as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

1. On August 6, 2023 (the "Petition Date"), each of Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [D.I. 169]. Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [D.I. 269]. No trustee or examiner has been appointed in these chapter 11 cases.

2. On August 30, 2023, Debtors filed their Sale Procedures Motion. As set forth in the Sale Procedures Motion, as part of "a full-scale wind-down of their business operations" (Sale Procedures Motion at ¶ 2), Debtors seek the authority to sell substantially all of Debtors' Assets (including leasehold interests) to potential high bidders, to be identified after a bidding and auction process, pursuant to the proposed Bidding Procedures, and to assume and assign nonresidential leases in connection therewith.

3. Debtors propose the following expedited timeline for the sale process outlined in the Bidding Procedures (*see* Sale Procedures Motion at ¶ 13):

- September 30, 2023 – deadline for submission of any "Stalking Horse Agreements"
- October 15, 2023 (a Sunday) – Bid Deadline
- October 18, 2023 – proposed date of Auction

- October 20, 2023 – Debtors file Notice of Successful Bidders
- October 23, 2023 – deadline to object to sale transaction, assumption and assignment of leases, and cure amounts (one business day after Notice of Successful Bidders)
- October 26, 2023 – Sale Hearing

4. There is no meaningful distinction in the proposed Bidding Procedures between a bid for substantially all of Debtors' Assets to a regional or national operator, one or more "large" bids (multiple real property locations in one or more states or regions, along with trucks, trailers and operational equipment), and bids for just one or two single owned or leased real property locations. Indeed, the Sale Procedures Motion states that "[t]he Debtors will consider all viable options in accordance with the Bidding Procedures before determining if selling assets will, in their business judgment, maximize value for the estate." Sale Procedures Motion at ¶ 1.

5. In addition, Debtors seek authority to designate not just one or more highest bidder(s) at the Auction as a Winning Bidder(s) but also a "Back-Up Bid" (and corresponding "Back-Up Bidder") in the event that the Winning Bidder identified after the Auction fails to timely consummate the Sale Transaction and proceed to close a transaction with the Backup Bidder <u>without further order of the Court or notice to affected counterparties</u>. *See* Sale Procedures Motion at ¶ 19 ("Designation of a Back-Up Bidder").

## II. <u>DEBTORS' PROPOSED PROCEDURES NEED TO BE SUBSTANTIALLY MODIFIED TO PROVIDE AN ORDERLY AND FAIR PROCESS</u>

6. Following a lengthy and "robust" marketing process commenced prior to the Petition Date (Sale Procedures Motion at ¶ 11), Debtors now propose a hyper-accelerated sale schedule, with a Bid Deadline on a Sunday (October 15), filing and service of Notice(s) of Winning Bidder a late as Friday, October 20, with an objection deadline the following Monday, October 23 at 5 p.m. Eastern Time (2:00 p.m. Pacific Time for Debtors' West Coast landlords), giving affected

landlords only a single business day to respond. This proposed schedule is full of artificial deadlines that are apparently designed to maximize Debtors' opportunity to market its Assets while depriving affected landlords, such as Orange Batavia, of a meaningful opportunity to review and analyze prospective assignments of their real property leases. Debtors ignore the feasibility and logistics of conducting the Auction of literally hundreds of Debtors' leases starting on Wednesday, October 18, 2023 (with no assurance that the Auction will conclude in one or two business days), with a potential mix of larger multi-Asset bid "packages" and "one offs," with a contested evidentiary hearing with the prospect of multiple objections to multiple bids, all requiring the presentation of live witness testimony and other evidence on a single day. There appears to be no business justification for the potential procedural chaos that could result from the "stacking" of multiple bids and objections, with multiple issues being presented, in a single hearing. Debtors also ignore the fact that many of these potential witnesses will be travelling from distant states. Debtors assert that this proposed schedule "balances a thorough marketing process to maximize value with the need to proceed expeditiously, as required under the Debtors' postpetition financing." Sale Procedures Motion at ¶ 14. Yet the proposed schedule fails to contemplate due process, or balance the interests of affected landlords in this process and the legitimate exercise of their rights and remedies under Bankruptcy Code section 365.

7. The accelerated process is exacerbated by Debtors' failure to clearly provide for the prompt transmission of information relevant to the determination of adequate assurance of future performance by a proposed assignee, as required by Bankruptcy Code section 365(b)(1)(C) and (f)(2)(B). While the Bidding Procedures require that each Bid for an unexpired lease be accompanied by an "Adequate Assurance Package" (i.e., audited and unaudited financial statements, tax returns, bank account statements, a description of the business to be conducted at

the premises) (Sale Procedures Motion at ¶ 19 ("Bid Requirements" at § J)), there is no clear procedure for if and when such Adequate Assurance Package is actually to be transmitted to affected landlords (i.e., before or after the Auction), how such Adequate Assurance Package will be transmitted (e-mail, overnight delivery, etc.), and by whom (Debtors, a Qualified Bidder, or Winning Bidder). If such Adequate Assurance Packages are not transmitted until after the Auction, or at the same time as filing of a Notice of a Winning Bidder, there is a risk that an affected landlord will not even receive such information in advance of the Sale Objection Deadline. Further, the Bidding Procedures do not require that any proposed "Transaction Documents" (Sale Procedures Motion at ¶ 19 ("Transaction Documents" at §D)) be provided to affected landlords, even though such agreements could contain terms that might be objectionable to affected landlords or contrary to Bankruptcy Code section 365.

8. It is well-established that a debtor bears the burden of presentation of a lease for assumption and assignment and the ultimate burden of proof that all requirements for assumption and assignment have been met. *In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Memphis-Fridays Associates*, 88 B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309-10 (5th Cir. 1985); *In re Airlift International Inc.*, 761 F.2d 1503, 1508 (11th Cir. 1985). Adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default. 11 U.S.C. § 365(b)(1)(A) and (C). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

9. The initial burden of presentation as to adequate assurance falls upon the debtor. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that "Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest*, 868 F.2d at 1080. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.*, 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989). Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.*, 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986).

10. In its consideration of the setting of applicable deadlines, the Court should leave adequate time for landlords to receive necessary information, prepare and present objections, if necessary, and arrange for witnesses to appear at any contested Sale Hearing, thus affording landlords the protections of Section 365 of the Bankruptcy Code. This review and analysis would not only be limited to the financial wherewithal and operating experience of a proposed assignee, but could also involve complex issues such as potential environmental liability at Debtors' terminal facilities. The schedule should be adjusted to provide landlords with a <u>minimum of five (5) business days</u> to review and analyze the Adequate Assurance Package before an objection is due.[2]

---

[2] By way of comparison, the sale and bidding procedures recently approved in *In re Bed Bath & Beyond, Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. 2023) [D.I. 422], another liquidating chapter 11 case involving the proposed assignments of a significant number of leases, affected landlords has at least 10 calendar days to review the notice of successful bidder and adequate assurance information before any deadline for response.

Landlords cannot be assured that the evidence of adequate assurance of future performance provided by a Winning or Back-Up Bidder in the first instance will be complete. Accordingly, any schedule must provide an opportunity for follow-up requests for further information and potentially even expedited discovery. There is no such opportunity provided by the Sale Procedures Motion, undercutting the heightened protections afforded landlords by 11 U.S.C. § 365. *See, e.g.*, *In re Trak Auto Corporation*, 277 B.R. 655, 665-66 (Bankr. E.D. Va. 2002) (The legislative history of 1984 amendments to Section 365 "indicates that Congress sought to provide special protections to lessors of a debtor."). While the Sale Procedures Motion asserts, in conclusory terms, that the proposed procedures "provide the Court and interested parties with ample opportunity to evaluate and, if necessary, challenge the ability of the Winning Bidders . . . to provide adequate assurance of future performance" (Sale Procedures Motion at ¶ 72), an examination of the proposed Bidding Procedures and Sale Hearing timeline demonstrates otherwise.

11. The Due Process Clause of the United States Constitution applies to proceedings under the Bankruptcy Code. *See, e.g.*, *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985). "The fundamental requisites of due process consist of notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Turney v. Federal Deposit Ins. Corp.*, 18 F.3d 865, 868 (10th Cir. 1994); *see also In re Nextwave Personal Commc'ns, Inc.*, 244 B.R. 253, 264 (Bankr. S.D.N.Y. 2000) ("The Bankruptcy Code requires, as an element of fairness and due process, notice, a hearing and court approval before actions impacting vital interests may be taken.").

12. The proposed Bidding Procedures and schedule need to be modified to provide affected landlords with adequate notice of proposed assignees of Debtors' leases and a meaningful

opportunity to review and respond to evidence of adequate assurance of future performance in connection with the assumption and assignment of such leases under Bankruptcy Code section 365. This could be accomplished by, among other things, (a) advancing the date of the Auction so as to permit additional time for review and analysis of Winning Bidder(s) prior to any Sale Objection Deadline, (b) scheduling the Sale Hearing for a date later than October 26, 2023, (c) extending the briefing and hearing schedule so as to permit objections to proposed assumption and assignment of leases to be filed as late as one or two days prior to any Sale Hearing, (d) allowing landlords and other creditors to attend the Auction to accelerate the flow of information,[3] and (e) requiring service of the Adequate Assurance Package sufficiently in advance of the Sale Hearing so as to provide meaningful review and analysis and the opportunity for discovery, if necessary.

## III. LANDLORDS SHOULD HAVE THE OPPORTUNITY TO BID TO TERMINATE THEIR LEASES

13. While Debtors asserts that the Bidding Procedures "provide interested parties with sufficient opportunity to participate in any sale transaction(s)" (Sale Procedures Motion at ¶ 14), the Sale Procedures Motion conspicuously fails to provide for procedures for landlords to submit bids to terminate their leases with Debtors. If Debtors truly intend to "maximize value for all stakeholders" (Sale Procedures Motion at ¶ 1), there is no legitimate reason for such exclusion. As in other major chapter 11 cases involving a large number of leased locations, landlords should be permitted to bid on their own leases, without a minimum bid, provision for a deposit, or other pre-qualifications in order to become a Qualified Bidder. *See, e.g.*, *In re TSA WD Holdings, Inc.*

---

[3] In this regard, the proposed Bidding Procedures are contrary to Local Bankruptcy Rule 6004-1(c)(ii)(C), which provides that a sale procedures order should generally "[s]tate that the auction will be conducted openly and all creditors will be permitted to attend." Debtors have offered no justification for any departure from this Local Bankruptcy Rule.

(formerly *In re Sports Authority Holdings, Inc.*), Case No. 16-10527 (MFW) (Bankr. D. Del.) [D.I. 1186]; *In re RS Legacy Corp.*, Case No. 15-10197 (BLS) (Bankr. D. Del.) [D.I. 457].

## IV. THE PROPOSED PROCEDURES FOR APPROVAL OF BACK-UP BIDS SHOULD NOT BE APPROVED

14. The Sale Procedures Motion further seeks to grant Debtors the authority, in the event that a Winning Bidder fails to consummate an approved transaction following the Sale Hearing and entry of the Sale Order, to designate one or more Back-Up Bidders as the Successful Bidder and proceed to close on the Back-Up Bid for one or more Real Estate Assets and "*as soon as commercially reasonable without further order of the Bankruptcy Court* . . . " and with no process for an affected landlord to object. *See* Sale Procedures Motion at ¶ 19 ("Designation of a Back-Up Bidder") (emphasis added). Are Debtors proposing that affected landlords, including Orange Batavia and others, review and analyze financial information regarding all Back-Up Bidders and prepare objections to each and every one prior to the Sale Hearing (on the hyper-accelerated schedule proposed), and present evidence with respect to such objections, with the Court rendering what are effectively advisory opinions regarding the adequacy of the showing of adequate assurance of future performance as multiple competing bidders? There is absolutely no authority permitting Debtors to proceed with the assumption and assignment of leases and executory contracts without notice or judicial scrutiny of the successful purchaser-assignee, in complete defiance of the procedures and protections provided to lessors and contract parties under Bankruptcy Code section 365. Should a Successful Bidder fail to close, Debtors should request a status conference, at which time an appropriate briefing and hearing schedule with respect to the Back-Up Bid can be established. Such a procedure has been employed in other large chapter 11 cases involving the assignments of real property leases. *See, e.g.*, *Order Under Bankruptcy Code Sections 105, 363, and 365 (I) Approving Bidding and Auction Procedures For The Sale of*

*Unexpired Nonresidential Real Property Leases, etc*. [D.I. 2242] in *In re Circuit City Stores, Inc*., Case No. 08-35653-KRH (Bankr. E.D. Va.) at ¶ 15.

## V. AN ADVANCE WAIVER OF THE STAY UNDER BANKRUPTCY RULE 6004(h) AND 6006(d) IS INAPPROPRIATE

15. Debtors' Sale Procedures Motion seeks an advance waiver of the fourteen (14)-day stay provided by Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure following entry of any Sale Order. Sale Procedures Motion at ¶¶ 73-75. Such an advance blanket waiver is unjustified and inappropriate.

16. Rule 6006(d) provides that:

> [a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise.

Fed. R. Bankr. P. 6006(d). The 1999 Advisory Committee Note to Rule 6006(d) provides:

> [s]ubdivision (d) is added to provide sufficient time for a party to request a stay pending appeal of an order authorizing the assignment of an executory contract or unexpired lease under § 365(f) of the Code before the assignment is consummated . . . . The court may, in its discretion, order that Rule 6006(d) is not applicable so that the executory contract or unexpired lease may be assigned immediately in accordance with the order entered by the court. Alternatively, the court may order that the stay under Rule 6006(d) is for a fixed period less than 10 [now 14] days.

17. The Rule 6006(d) stay provides a short period of time that "is often needed and essential to an objecting party intending to appeal because if the assignment is closed in the absence of a stay, then any appeal by the objecting party may well be moot." *Collier on Bankruptcy* ¶ 6006.04, at 6006-19 (LexisNexis 16th ed. 2017); *see also In re Quanalyze Oil & Gas Corp.*, 250 B.R. 83, 92 (Bankr. W.D. Tex. 2000) (in reviewing a similar provision in former Rule 6004(g) [now Rule 6006(h)] observing that "[a] party seeking to obtain appellate review of just such a sale

should not find its efforts frustrated by a 'quick closing' that renders an appeal moot.") *Collier* further observes that:

> [I]f an objection has been filed and is being overruled, the court should eliminate or reduce the 14-day stay period *only upon a showing that there is a sufficient business need to close the assignment within the 14-day period and that the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected.* If the objecting party informs the court that it intends to appeal and seek a stay, then the stay period should not be reduced to less than an amount of time sufficient to allow the objecting party to seek a stay, unless the court determines that the need to proceed sooner outweighs the objecting party's interests.

*Collier on Bankruptcy* ¶ 6006.04, at 6006-19 to 20 (emphasis added).

18. There is a possibility that an appeal of any ruling on one or more issues may be warranted under the circumstances, particularly under the hyper-accelerated schedule proposed here. Preclusion of the stay provided by Rules 6004 and 6006 to allow a landlord a meaningful opportunity to appeal, particularly in an expedited process, undermines the protections afforded landlords by Section 365. Here, (a) the Federal Rules of Bankruptcy Procedure presumptively favor the 14-day stay, (b) Rules 6004 and 6006 were expressly adopted to allow objecting parties time to appeal, (c) the conclusory assertion that "[t]o maximize the value received for the assets, the Debtors seek to close the Sale Transactions as soon as possible after the Sale Hearing" (Sale Procedures Motion at ¶ 75) is not sufficient grounds to abrogate landlords' due process protections and the right to appeal without the appeal effectively being rendered moot. Debtors have not demonstrated, or even suggested, sufficient "cause" to justify the extraordinary remedy of a blanket waiver of the stay provided by Rules 6004 and 6006 at this stage of the proceedings.

19. This Court should deny Debtors' request for any <u>advance</u> waiver of the fourteen-day period under Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

## VI. RESERVATION OF RIGHTS

Orange Batavia reserves the right to make such other and further objections to Debtors' Sale Procedures Motion as may be appropriate based upon any new information provided by Debtors or upon any different relief requested by Debtors and to object to the proposed assignment of its lease with Debtors following selection of a Winning Bidder.

## VII. JOINDER

To the extent not inconsistent with the foregoing, Orange Batavia joins in the objections to Debtors' Sale Procedures Motion filed by Debtors' other landlords, the Official Committee of Unsecured Creditors, and the U.S. Trustee.

## VIII. CONCLUSION

Accordingly, any order approving the Sale Procedures Motion should modify the proposed Auction and Sale Hearing timeline to provide for a fair process that affords landlords with a meaningful opportunity to review, analyze and, potentially, object to the proposed assignment of their leases with Debtors.

Dated: September 8, 2023
Wilmington Delaware

Respectfully submitted,

*/s/ Laurel D. Roglen*

Leslie C. Heilman (DE 4716)
Laurel D. Roglen (DE 5759)
Nicholas J. Brannick (DE 5721)
Margaret A. Vesper (DE 6995)
BALLARD SPAHR LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel: (302) 252-4465
Fax: (302) 252-4466
Email: heilmanl@ballardspahr.com
roglenl@ballardpshar.com
brannickn@ballardspahr.com
vesperm@ballardspahr.com

and

Michael S. Greger, Esquire (*pro hac vice* to be submitted)
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Tel: (949) 553-1313
Fax: (949) 553-8354
Email: mgreger@allenmatkins.com

and

Ivan M. Gold, Esquire (admitted *pro hac vice*)
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone: (415) 837-1515
Facsimile: (415) 837-1516
E-mail: igold@allenmatkins.com

*Attorneys for Orange Batavia I, LLC*