**<u>EXHIBIT A</u>**

**Revised Bidding Procedures Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 22** |

**ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR THE
SALE OR SALES OF THE DEBTORS' ASSETS; (B) SCHEDULING
AUCTIONS AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF;
(C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES,
(D) SCHEDULING SALE HEARINGS AND APPROVING THE FORM AND MANNER
OF NOTICE THEREOF; (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the

Bidding Procedures attached hereto as **Exhibit 1**, (b) approving Bid Protections, (c) establishing

certain related dates and deadlines, (d) approving the form and manner of notice of the Auctions

attached hereto as **Exhibit 2** (the "Auction Notice"), (e) approving the Assumption and

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the Bidding Procedures, or the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 302] (the "Interim DIP Order," together with the Final Order (as defined therein), the "DIP Orders") or the *Interim UST Cash Collateral and Adequate Protection Order (I) Authorizing the Debtors to (A) Use UST Cash Collateral and All Other Prepetition UST Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 303] (the "Interim UST Cash Collateral Order," together with the Final UST Cash Collateral Order (as defined therein), the "UST Cash Collateral Orders"), as applicable.

Assignment Procedures, including the notices of potential assumption and proposed cure amounts attached hereto as **Exhibit 3** (the "Cure Notice"), (f) approving the form and manner of notice of the Winning Bidder(s) attached hereto as **Exhibit 4** (the "Notice of Winning Bidder"), and (g) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and upon the *Declaration of Cody Leung Kaldenberg in Support of the Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale or Sales of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief]* (the "Kaldenberg Declaration"); and the district court having jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order* of Reference from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate  and no other or further notice need or shall be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court on September [15], 2023 (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT**:[3]

1.    <u>Jurisdiction and Venue</u>.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.B.

2.    <u>Statutory and Legal Predicates</u>.    The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and Local Rules 2002-1, 6004-1, and 9006-1.C.

3.    <u>Sale Process</u>. The Debtors and their advisors engaged pre-petition and post-petition, and continue to engage with, a number of potential interested parties to solicit and develop the highest and otherwise best offers for the Assets.

4.    <u>Bidding Procedures</u>.    The Debtors have articulated good and sufficient business reasons for the Court to approve the bidding procedures attached hereto as **<u>Exhibit 1</u>** (the "<u>Bidding Procedures</u>").    The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the value of the proceeds of one or more sales (each, a "<u>Sale Transaction</u>") of all or substantially all of the Debtors' assets (the "<u>Assets</u>").    The Bidding Procedures were negotiated in good faith and at arm's-length and are reasonably designed to promote a competitive

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

and robust bidding process to generate the greatest level of interest in the Assets.    The Bidding

Procedures comply with the requirements of Local Rule 6004-1(c).

5.      <u>Stalking Horse Bidder</u>.    To the extent the Debtors select any Stalking Horse Bidder

(as defined below) with respect to the Assets (as applicable), any Bid Protections (as defined in

the Bidding Procedures) to the extent payable under any Stalking Horse Agreement (as defined

below) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the

meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code and treated as an allowed

administrative expense claim against the Debtors' estates pursuant to sections 503(b) and 507(a)(2)

of the Bankruptcy Code, in each case solely as approved in an order approving any Stalking Horse

Supplement (as defined below).

6.      <u>Auction Notice</u>.    The Auction Notice, substantially in the form attached hereto as

**<u>Exhibit 2</u>**, is reasonably calculated to provide interested parties with timely and proper notice of

the Auction(s) (if any) and Sale(s) with respect to the Assets, including, without limitation:  (a) the

date, time, and place of the Auction(s) (if any); (b) the Bidding Procedures; (c) reasonably specific

identification of the Assets to be sold pursuant to the Bidding Procedures; and (d) a description of

any Sale(s) pursuant to the Bidding Procedures as being free and clear of liens, claims,

encumbrances, and other interests (except as set forth in the applicable definitive Sale

documentation), with all such liens, claims, encumbrances, and other interests attaching with the

same validity and priority to the applicable Sale proceeds, and no other or further notice of any

Auction(s) (if any) and Sale(s) shall be required.

7.      <u>Assumption and Assignment Provisions</u>.    The Debtors have articulated good and

sufficient business reasons for the Court to approve the assumption and assignment procedures set

forth herein (the "<u>Assumption and Assignment Procedures</u>"),  which are fair, reasonable, and

appropriate.   The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

8.      <u>Notice of Winning Bidder</u>.  The Notice of Winning Bidder, substantially in the form attached hereto as **<u>Exhibit 3</u>**, is reasonably calculated to provide interested parties with timely and proper notice of any proposed Sale(s) with respect to the Assets, including, without limitation: (a) the Winning Bidder(s) for the Assets (as applicable), (b) the Back-Up Bidder(s), if applicable, (c) the key terms of the proposed Sale(s), and (d) the date, time, and place of the Sale Hearing(s) (as applicable).

9.      <u>Cure Notice</u>.  The Cure Notice, the form of which is attached hereto as **<u>Exhibit 4</u>**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein (including the Assumption and Assignment Procedures), except as expressly required herein.

10.     <u>Notice</u>.  Notice of the Motion, the proposed Bidding Procedures, the proposed Assignment and Assumption Procedures, and the Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances of the Debtors' Chapter 11 Cases, such that no other or further notice need or shall be required or provided except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

11.     The Motion is GRANTED as set forth herein.

12.     All objections to the relief granted in this order (the "Order") that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

A.      **The Bidding Procedures**

13.     The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved, are incorporated herein by reference, and shall govern the Bids and proceedings related to any Sale(s) of the Assets and the Auction(s) (if any) in all respects.   The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a "Qualified Bid," are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interests.   The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

14.     The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

15.     Subject to this Order, the Bidding Procedures, the DIP Orders, and the UST Cash Collateral Orders,[4] the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, shall have the right to, in each case with respect to any Assets being sold pursuant to the Bidding Procedures and in consultation with the Consultation Parties (as set forth in the Bidding Procedures), (a) determine which

---

[4]     Nothing contained in the Bidding Procedures or in this Bidding Procedures Order shall amend, waive, modify or extend the Milestones (as defined in the UST Cash Collateral Orders) and such Milestones shall remain in full force and effect.

Qualified Bid is the highest or otherwise best offer for the applicable Asset(s), (b) reject any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors, and (c) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.

16.     Subject to this Order, the Bidding Procedures, the DIP Orders, and the UST Cash Collateral Orders, the Debtors shall have the right, in their reasonable business judgment and in consultation with the Consultation Parties (as provided under the Bidding Procedures) and in a manner consistent with their fiduciary duties and applicable law, to modify the Bidding Procedures, including to, among other things, (a) extend or waive deadlines or other terms and conditions set forth therein, (b) adopt new rules and procedures for conducting the bidding and any Auction process, (c) if applicable, provide reasonable accommodations to a Stalking Horse Bidder, or (d) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the value of the Assets; *provided* that such extensions, waivers, new rules and procedures, accommodations and modifications (except as are consented to or otherwise approved or permitted in accordance with the Bidding Procedures) (i) do not conflict with and are not inconsistent with this Order, the Bidding Procedures, the DIP Orders, the UST Cash Collateral Orders, the Bankruptcy Code or any order of the Court, (ii) do not impair or modify, in any material respect, the rights and obligations of the Real Estate Stalking Horse Bidder under the Real Estate Stalking Horse APA or otherwise violate the Real Estate Stalking Horse APA or affect the Real Estate Stalking Horse Bidder in a manner that would reasonably be expected to have a material and adverse effect on the Real Estate Stalking Horse Bidder that is disproportionate to the Real

7

Estate Stalking Horse Bidder as compared to the effect on other Qualified Bidders for the Owned Properties subject of the Real Estate Stalking Horse APA generally, and (iii) are as promptly as practicable communicated to each Qualified Bidder or at the applicable Auction (if any).

17.     If the Debtors, in consultation with the Consultation Parties, determine not to conduct an Auction for Assets (as applicable), then the Debtors shall file a notice with the Court of such determination within one (1) business day of making such determination.

**B.     The Stalking Horse Bid and Bid Protections.**

18.     The Debtors shall be authorized, but not obligated, in an exercise of their reasonable business judgment and with the consent of the Consultation Parties, (a) to select one or more Qualified Bidders to act as stalking horse bidders in connection with any Sale Transaction (each, a "Stalking Horse Bidder," and any such bid (as applicable), each a "Stalking Horse Bid") and enter into a purchase agreement with respect to any such Sale Transaction with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder, to agree to the Bid Protections; *provided* that the aggregate of the Breakup Fee and the total Expense Reimbursements shall in no event exceed three percent (3%) of the applicable cash Purchase Price; *provided further* that all expenses to be reimbursed to the Stalking Horse Bidder from the Debtors' estates must be documented, with such documentation provided to the Debtors, the Consultation Parties (including each of their respective counsel and advisors (as set forth in the Bidding Procedures), and the U.S. Trustee, who will have a 10-day review period upon receipt of such expense documentation. If there is an objection to any portion of the expenses by such parties during that time, such disputed portion of the expenses shall not be paid until the objection is resolved consensually or

8

by the Court, with the remaining undisputed portion of the expenses paid as otherwise set forth herein.

19.     Except for a Stalking Horse Bidder to the extent of the Bid Protections provided to any such Stalking Horse Bidder (including the Real Estate Stalking Horse Bidder and Bid Protections provided thereto), no person or entity participating in the Debtors' sale process under the Bidding Procedures shall be entitled to any expense reimbursement, break-up fees, "topping" fees, termination fees, or other fees, payments, or reimbursements whatsoever in connection with any Bid, preparation thereof, or participation at the Auction(s) (if any) or generally under the Bidding Procedures; and, by submitting a Bid, such person or entity shall be deemed to have forever waived its right to request or to file with the Court any request for allowance or payment of any such expense reimbursement or fee(s), whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

20.     Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder (as required under the Bidding Procedures and/or any Stalking Horse Agreement) shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the Bidding Procedures, the applicable escrow agreement, or an order of the Court.

21.     The Debtors, in consultation with the Consultation Parties, may select a Stalking Horse Bidder (or Stalking Horse Bidders, as applicable) as the stalking horse purchaser (a "Stalking Horse") for substantially all of the Debtors' assets or any grouping or subset of the Assets.  In such instance(s), the Debtors shall file a supplement to the Motion (the "Stalking Horse Supplement") seeking approval of the same, providing no less than three (3) business days' notice of the deadline to object to the approval of the Stalking Horse Bid (including any proposed Bid

9

Protections) to (i) the U.S. Trustee, (ii) and the Consultation Parties and (iii) those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases (the "<u>Stalking Horse Notice Parties</u>") with no other or further notice regarding the Stalking Horse, the Stalking Horse Bid, or the Bid Protections being required; *provided* that any Stalking Horse Supplement will (a) set forth the identity of the Stalking Horse (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse's parent company or sponsor), (b) set forth the amount of the Stalking Horse Bid, and, if the Stalking Horse is a credit bidder, what portion of its bid is a credit bid and what portion (if any) is cash; (c) state whether the Stalking Horse has any connection to the Debtors other than those that arise from the Stalking Horse bid, (d) specify any proposed Bid Protections, (e) attach the purchase agreement finalized with the Stalking Horse or otherwise summarize the material terms thereof; and (f) set forth the deadline to object to the Stalking Horse designation and any related Bid Protections.  For the avoidance of doubt, this Order does not make any findings or grant approval of any Bid Protections, including the granting of any break-up fees; any such Bid Protections, including any break-up fees, sought in connection with any Stalking Horse Bid shall be included in and subject to the approval by the Court of the Stalking Horse Supplement and otherwise acceptable to the Consultation Parties.  For the avoidance of doubt and notwithstanding the foregoing, Court approval of the Real Estate Stalking Horse Bidder and the Real Estate Stalking Horse APA (each as defined in the Bidding Procedures) will be sought pursuant to a separate motion and order.

22.    Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse bid (including any proposed Bid Protections for such Stalking Horse Bidder) (a "<u>Stalking Horse Objection</u>") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual

bases thereof and (d) be filed with the Court and served on the Notice Parties (as defined below) within three (3) business days after the service of the Stalking Horse Supplement.

23.    If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid and in accordance with this Order and the Bidding Procedures.  If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the objection deadline, the Debtors will submit a proposed order to the Court approving the Stalking Horse Bid (including the Stalking Horse Agreement and the Bid Protections), which the Court may enter without a hearing and any further or other notice except as required herein or under the Bidding Procedures, including with respect to any Bid Protections set forth in the Stalking Horse Supplement.  For the avoidance of doubt, no determination is made in this Order with regard to authorizing any Bid Protections.  For the avoidance of doubt and notwithstanding the foregoing, Court approval of the Real Estate Stalking Horse Bidder and the Real Estate Stalking Horse APA will be sought pursuant to a separate motion and order.

C.    **Important Dates and Deadlines.**

24.    The following dates and deadlines are hereby approved:

**ROLLING STOCK TIMELINE**

| Date and Time | Event or Deadline |
|---|---|
| October 13, 2023 at 5:00 p.m. (E.T.) | Bid Deadline for Rolling Stock |
| October 18, 2023 at 10:00 a.m. (E.T.) | Auction(s) (if required) for Rolling Stock Begin |
| October 23, 2023 | Notice of Winning Bidder(s) for Rolling Stock |
| October 25, 2023 at 5:00 p.m. (E.T.) | Sale Objection Deadline for Winning Bid(s) for Rolling Stock |
| October 27, 2023 at [●] [a/p].m.] (E.T.) (subject to Court availability) | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) for Rolling Stock |

11

| Date and Time | Event or Deadline |
|---|---|
| As soon as practicable following Sale Hearing (and in no event later than November 3, 2023) | Sale Consummation for UST Rolling Stock |
| As soon as practicable following Sale Hearing[5] | Sale Consummation for B-2 Rolling Stock |

### REAL ESTATE (AND ALL OTHER ASSETS) TIMELINE

| Date and Time | Event or Deadline |
|---|---|
| November 9, 2023 at 5:00 p.m. (ET) | Bid Deadline for Non-Rolling Stock Assets (incl. Real Property Assets, Intellectual Property, and Other Assets) |
| November 27, 2023 at 2:30 p.m. (ET) | Auction(s) (if required) for Non-Rolling Stock Assets Begin |
| December 1, 2023 | Notice of Winning Bidder(s) (and Back-Up Bidder(s), as applicable) for Non-Rolling Stock Assets |
| December 8, 2023 at 5:00 p.m. (ET) | Sale Objection Deadline for Winning Bid(s) (or Back-Up Bid(s), as applicable) for Non-Rolling Stock Assets |
| December 12, 2023 at [●] [a/p].m.] (E.T.) (subject to Court availability) | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) for Non-Rolling Stock Assets |
| As soon as practicable following Sale Hearing | Sale Consummation for Non-Rolling Stock Assets |

25.     The deadline by which Bids must be ***actually received*** by the Debtors and their advisors (as set forth in the Bidding Procedures) is: (a) with respect to the Rolling Stock, **October 13, 2023 at 5:00 p.m. (prevailing Eastern Time) on** (the "Rolling Stock Bid Deadline"); and (b) with respect to the Real Property Assets, Intellectual Property, and Other Assets (each as

---

5    Consistent with the DIP Orders and the UST Cash Collateral Orders, the deadline for consummation of Sales of Assets constituting Prepetition B-2 Priority Collateral (January 3, 2024) may be extended to February 2, 2024 with the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the Prepetition UST Secured Parties (in each case not to be unreasonably withheld) and with the consent of the Junior DIP Lender in its sole discretion.  Notwithstanding the foregoing, the Debtors intend to consummate such Sale(s) as soon as practicable following the applicable Sale Hearing.

defined in the Bidding Procedures), **November 9, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Non-Rolling Stock Bid Deadline</u>," and together with the Rolling Stock Deadline, each as applicable, the "<u>Bid Deadline</u>").

26.     Each Acceptable Bidder participating at an Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to any bidding (including preparing or submitting its Bid(s)) or any Sale Transaction, as set forth in the Bidding Procedures; and the Auction, if any, shall be transcribed or otherwise recorded.

27.     The Debtors shall file with the Court notice of the identity of the Winning Bidder(s) (as applicable), the amount of the Winning Bid(s) (as applicable) and, if the Winning Bidder (as applicable) is a credit bidder, what portion of its bid is a credit bid and what portion (if any) is cash, by: (a) with respect to the Rolling Stock, **October 23, 2023**; and (b) with respect to the Non-Rolling Stock Assets, **December 1, 2023**.  If the Winning Bidder is a special purpose entity, the notice shall also identify the entity or entities that are its primary equity holders, or otherwise control, the special purpose entity.

28.     If an Auction is needed and held (a) for the Rolling Stock, such Auction shall commence on **October 18, 2023 at 10:00 a.m. (prevailing Eastern Time)** and (b) for the Non-Rolling Stock Assets, such Auction shall commence on **November 27, 2023 at 2:30 p.m. (prevailing Eastern Time)**, in each case unless otherwise rescheduled by the Debtors (with prior notice to the applicable Qualified Bidders) in consultation with the Consultation Parties.  Any Auction held will be conducted via remote video or in-person at the Debtors' election after consultation with the Consultation Parties.  The Debtors shall provide Qualified Bidders with notice of the date, time, and place of the applicable Auction (if any) no later than two (2) business days before such Auction; *provided* that such notice will be provided to Qualified Bidders no later

than five (5) business days before such Auction in the event the Auction (a) will take place in-person outside of New York City, New York, or (b) will not be conducted via remote video (or with a remote video option).  As set forth more fully in the Bidding Procedures, only Qualified Bidders shall be entitled to bid for the applicable Assets at the applicable Auction (if any).

29.    Objections to the proposed order(s) approving any Winning Bid(s) (or Back-Up Bid(s), as applicable) (each, a "Sale Order," and such objections, "Sale Objections") must be made on or before: (a) in the case of the Rolling Stock, **October 25, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the, "Rolling Stock Sale Objection Deadline"); and (b) in the case of the Non-Rolling Stock Assets, **December 8, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the "Non-Rolling Stock Sale Objection Deadline," and together with the Rolling Stock Sale Objection Deadline, each as applicable, the "Sale Objection Deadline").  All Sale Objections must:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the Sale Objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** no later than the applicable Sale Objection Deadline by the following parties (the "Notice Parties"):

| Proposed Co-Counsel to the Debtors[6] | Proposed Co-Counsel to the Debtors |
|---|---|
| Kirkland & Ellis LLP<br>601 Lexington Ave<br>New York, New York 10022<br>Allyson B. Smith (allyson.smith@kirkland.com)<br>Aaron Metviner (aaron.metviner@kirkland.com)<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Patrick J. Nash Jr., P.C. (patrick.nash@kirkland.com)<br>David Seligman P.C. (david.seligman@kirkland.com)<br>Steve Toth (steve.toth@kirkland.com)<br>Whitney Fogelberg (whitney.fogelberg@kirkland.com) | Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor, PO Box 8705<br>Wilmington, Delaware 19801<br>Laura Davis Jones (ljones@pszjlaw.com)<br>Timothy P. Cairns (tcairns@pszjlaw.com)<br>Peter J. Keane (pkeane@pszjlaw.com)<br>Edward Corma (ecorma@pszjlaw.com) |
| **Counsel to the Junior DIP Lender** | **The Prepetition UST Lenders and Counsel Thereto** |
| Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Susheel Kirplani<br>(susheelkirpalani@quinnemanuel.com)<br><br>Quinn Emmanuel Urquhart & Sullivan, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA 90017<br>Eric Winston (ericwinston@quinnemanuel.com)<br><br>Ropes & Gray LLP<br>191 North Wacker Drive, 32nd Floor<br>Chicago, IL 60606<br>Lucas S. Smith (Luke.Smith@ropesgray.com)<br><br>Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, NY 10036<br>Natasha S. Hwangpo<br>(Natasha.Hwangpo@ropesgray.com) | Arnold & Porter Kaye Scholer LLP<br>70 West Madison Street, Suite 4200<br>Chicago, Illinois 60602<br>Michael Messersmith<br>(Michael.Messersmith@arnoldporter.com)<br><br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, New York 10019<br>Benjamin Mintz (Benjamin.Mintz@arnoldporter.com)<br><br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Ave., N.W.<br>Washington, DC 20001,<br>Rosa Evergreen (Rosa.Evergreen@arnoldporter.com)<br><br>The U.S. Department of the Treasury<br>1100 L St NW Rm 7102<br>Washington, DC 20005-4035<br>I Heng.Hsu (I-Heng.Hsu@usdoj.gov)<br>Crystal Geise (Crystal.Geise@usdoj.gov) |
| **Counsel to the B-2 Lenders** | **Counsel to the Prepetition ABL Agent** |
| White & Case LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Scott Greissman (sgreissman@whitecase.com)<br>Elizabeth Feld (efeld@whitecase.com)<br>Andrew Zatz (azatz@whitecase.com) | Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Kevin Simard (ksimard@choate.com)<br>Hampton Foushee (hfoushee@choate.com) |

---

6    Sale Objections regarding Canadian Assets shall also be served upon the Debtors' Canadian counsel, Goodmans LLP, Bay Adelaide Centre – West Tower, 333 Bay Street, Suite 3400, Toronto, ON M5H 2S7 (Attn: Robert Chadwick (rchadwick@goodmans.ca) and Caroline Descours (cdescours@goodmans.ca)).

| Counsel to the B-2 Agent and the Junior DIP Agent | Counsel to the Prepetition UST Agent |
|---|---|
| Holland & Knight LLP<br>150 N. Riverside Plaza, Suite 2700<br>Chicago IL 60606<br>Joshua M. Spencer (Joshua.Spencer@hklaw.com)<br>Phillip W. Nelson (Phillip.Nelson@hklaw.com) | Hogan Lovells US LLP<br>390 Madison Avenue<br>New York, New York 10017<br>Ronald J. Silverman<br>(ronald.silverman@hoganlovells.com)<br>Christopher R. Bryant<br>(chris.bryant@hoganlovells.com) |
| **Counsel to the Creditors' Committee** | **Office of the United States Trustee (Region 3)** |
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park, Bank of America Tower<br>New York, NY 10036-6745 US<br>Philip C. Dublin (pdublin@akingump.com)<br>Meredith A. Lahaie (mlahaie@akingump.com)<br>Stephen B. Kuhn (skuhn@akingump.com)<br>Kevin Zuzolo (kzuzolo@akingump.com)<br><br>Benesch Friedlander Coplan & Aronoff LLP<br>1313 North Market Street, Suite 1201,<br>Wilmington, DE, 19801,<br>Jennifer R. Hoover (jhoover@beneschlaw.com)<br>Kevin M. Capuzzi (kcapuzzi@beneschlaw.com) | The Office of the United States Trustee<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Jane Leamy (jane.m.leamy@usdoj.gov)<br>Richard Schepacarter<br>(richard.schepacarter@usdoj.gov) |

30.     If any party fails to timely file with the Court and serve a Sale Objection by the applicable Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to any Sale Transaction(s), such party shall be barred from asserting, at the applicable Sale Hearing (as defined below) or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of the applicable Sale Transaction(s), including the transfer of the applicable Asset(s) to the applicable Winning Bidder(s) free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such Sale Transaction(s) for purposes of section 363(f) of the Bankruptcy Code.

31.     The Court will hold a hearing to consider approval of the Sale Transaction(s) contemplated by each Winning Bid (or Back-Up Bid(s)).  With respect to any Winning Bid(s) (or Back-Up Bid(s)) (a) for the Rolling Stock, the hearing will be held on **October 27, 2023 at [_]:[_]**

[a./p.]m. **(prevailing Eastern Time)** and (b) for the Non-Rolling Stock Assets, the hearing will be held on **December 12, 2023 at [\_]:[\_] [a./p.]m. (prevailing Eastern Time)** (each, as applicable, the "Sale Hearing"). The applicable Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

**E.     Credit Bidding**

32.     Subject to the terms and conditions of the DIP Orders and the UST Cash Collateral Orders, any bidder holding a perfected security interest in any of the Assets (excluding the Junior DIP Secured Parties) may seek to credit bid all or a portion of such bidder's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "Credit Bid"); *provided* that such Credit Bid shall comply with the terms of the Bidding Procedures.

33.     The Junior DIP Agent and the Junior DIP Lender have expressly waived any right to credit bid the Junior DIP Obligations (including the Additional Junior DIP Loans (if any are drawn)). In each case to the extent permitted by the Prepetition Intercreditor Agreement, but subject in all respects to the challenge period as set forth in the DIP Orders, (i) the Prepetition ABL Agent (on behalf, and at the direction, of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement) shall have the right to credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the Prepetition ABL Obligations and (y) the ABL Adequate Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of ABL Priority Collateral, (ii) the B-2 Agent (on behalf, and at the direction, of the B-2 Lenders pursuant to the Postpetition B-2 Credit Agreement) shall have the unqualified and unconditional right to credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the B-2

17

Obligations and (y) the B-2 Adequate Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of Prepetition B-2 Priority Collateral, and (iii) the Prepetition UST Agent, or any assignee or designee of the Prepetition UST Agent, at the direction of the Prepetition UST Lenders pursuant to the Prepetition UST Credit Agreements and on behalf of the Prepetition UST Lenders, shall have the unqualified and unconditional right to credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the Prepetition UST Secured Obligations and (y) the UST Adequate Protection Obligations, in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding, and each Prepetition ABL Secured Party, B-2 Secured Party, and Prepetition UST Secured Party complying with the foregoing shall automatically be deemed a "qualified bidder" (and Acceptable Bidder (as defined in the Bidding Procedures)) with respect to any disposition of assets by the Debtors under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code; *provided*, that, no party shall be permitted to credit bid for Prepetition ABL Priority Collateral until such time that the Prepetition ABL Parties have been indefeasibly paid in full in cash (or cash collateralized (as applicable). The Prepetition ABL Agent at the direction of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement and on behalf of the Prepetition ABL Lenders, the B-2 Agent at the direction of the B-2 Lenders and on behalf of the B-2 Lenders, and the Prepetition UST Agent at the direction of the Prepetition UST Lenders and on behalf of the

18

Prepetition UST Lenders shall have the absolute right to assign, sell, or otherwise dispose of its right to credit bid to any acquisition entity or joint venture formed in connection with such bid.

**G.    Notice of Sale Transaction**

34.    The Auction Notice, substantially in the form attached to this Order as **Exhibit 2**, is approved with respect to any Auction which may be held under the Bidding Procedures.  Within three (3) business days of the entry of this Order, the Debtors shall cause the Auction Notice, the Motion, this Order, and all of this Order's exhibits and schedules to be served upon parties in interest and posted on the Debtors' restructuring webpage at https://dm.epiq11.com/YellowCorporation (or such other applicable URL) (the "Case Webpage").

35.    Within three (3) business days after entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall place a publication version of the Auction Notice for one day in *The New York Times* (national edition) and *The Globe and Mail*, and post it onto the Case Webpage.  Such notice shall be deemed sufficient and proper notice of the Bidding Procedures, the Sale(s) and the Auction(s) (if any) with respect to known interested parties and no other or further notice shall be required.

36.    Within two (2) business days after the conclusion of the applicable Auction (if any), or as soon as reasonably practicable thereafter and in accordance with the Bidding Procedures, the Debtors will file on the docket the Notice of Winning Bidder substantially in the form attached to this Order as **Exhibit 4**.

**H.    Assumption and Assignment Procedures.**

37.    The Assumption/Assignment Procedures below are hereby approved in all respects and shall be the procedures by which the Debtors will notify any counterparties (the "Contract Counterparties") to executory contracts and unexpired leases with the Debtors (the "Contracts")

19

of proposed cure amounts in the event the Debtors determine to assume and assign such Contracts in connection with any Sale Transaction. Nothing in this Order shall be deemed to limit the Debtors' ability to negotiate partial assumption and/or assumption and assignment of Contracts with Contract Counterparties on a consensual basis.

a.  **Cure Notice**. No later than fourteen (14) days prior to the Cure Objection Deadline, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notices, attached hereto as **Exhibit 3**, on the Contract Counterparties, and post the Cure Notice to the case website https://dm.epiq11.com/YellowCorporation.

b.  **Content of Cure Notice**. The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information: (i) a list of the applicable Contracts that may be assumed or assumed and assigned in connection with the Sale (the "Assigned Contracts," and each individually, an "Assigned Contract"); (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimates of the proposed amount necessary to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Costs"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Winning Bid.

c.  **Cure Objections**. Cure Objections, if any, to a Cure Notice must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; *provided* that the Debtors may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

d.  **Effects of Filing a Cure Objection**. A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Sale Order.

e.  **Dispute Resolution**. Any Cure Objection to the assumption or assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed upon by the

parties or fixed by the Court. To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the Winning Bidder's reasonable discretion. To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Winning Bidder, pending a resolution of the Cure Objection after notice and a hearing. If a Cure Objection is not satisfactorily resolved, the Winning Bidder may determine that such Contract should not be assumed and assigned, in which case the Winning Bidder will not be responsible for any Cure Costs in respect of such contract. Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Costs (any such objection, a "Cure Dispute"), the applicable Assigned Contract may be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

f.    **Supplemental Cure Notice**. If the Debtors discover Contracts inadvertently omitted from the Cure Notice or the Winning Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the Sale, the Debtors may, after consultation with the Winning Bidder, at any time before the closing of the Sale supplement the Cure Notice with previously omitted Contracts or modify a previously filed Cure Notice, including by modifying the previously stated Cure Costs associated with any Contracts (the "Supplemental Cure Notice").

g.    **Objection to the Supplemental Cure Notice**. Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "Supplemental Cure Objection") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs, if any, modified by the Supplemental Cure Notice. All Supplemental Cure Objections must: (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 5:00 p.m. (prevailing Eastern Time) on the date that is twenty-one (21) days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

h.    **Dispute Resolution of Supplemental Cure Objection**. If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant Contracts. If there is no such objection, then the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice. Notwithstanding the foregoing, if a Supplemental Cure Objection relates solely to a Cure Dispute, the applicable Assigned Contract may

DOCS_DE:244751.1 96859/001

be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

## I.    Miscellaneous.

38.    All persons and entities that participate in the applicable Auction (if any) or bidding for any Asset(s) during the sale process under the Bidding Procedures shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the applicable Auction(s) (if any) or any other relief requested in the Motion or granted in this Order, (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

39.    The Debtors are authorized to take all steps and pay all amounts necessary or appropriate to implement the relief granted in this Order.

40.    This Order shall be binding on the Debtors and its successors and assigns, including any chapter 7 or chapter 11 trustee or other fiducially appointed for the estates of the Debtors.

41.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42.    To the extent any provisions of this Order are inconsistent with the Motion, the terms of this Order shall control.  To the extent any provisions of this Order are inconsistent with the Bidding Procedures, the terms of this Order shall control.

43.     Nothing contained in the Motion or this Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Order), is intended as or shall be construed or deemed to be:  (a) an admission as to the amount, validity or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

44.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

45.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

46.     The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

47.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

48.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

DOCS_DE:244751.1 96859/001

**EXHIBIT 1**

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES

On August 6, 2023 (the "Petition Date"), Yellow Corporation and the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

Thereafter, on September [●], 2023, the Court entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (C) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "Bidding Procedures Order"), by which the Court approved the bidding procedures set forth herein (these "Bidding Procedures").[2]

On August 8, 2023, Yellow Corporation (in such capacity, the "Foreign Representative") commenced a proceeding (the "Canadian Recognition Proceedings") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") seeking recognition of the Chapter 11 Cases and certain other relief which was granted by the CCAA Court on August 29, 2023 pursuant to Part IV of the *Companies' Creditors Arrangement Act* R.S.C. 1985, c. C 36, as amended (the

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    Unless otherwise specified herein, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order and its respective motion filed at Docket. No. 22 (the "Bidding Procedures Motion") or the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 302] (the "Interim DIP Order" and together with the final order approving such relief, the "DIP Orders") or the Interim UST Cash Collateral Order (as defined in the Interim DIP Order) (together with the final order approving such relief, the "UST Cash Collateral Orders"), as applicable.

"<u>CCAA</u>"). Alvarez & Marsal Canada Inc. was appointed information officer in the Canadian Recognition Proceedings (in such capacity, the "<u>Information Officer</u>").

Thereafter, on September [●], 2023, the Canadian Court granted an Order (the "<u>Bidding Procedures Recognition Order</u>") by which the Canadian Court recognized the Bidding Procedures Order and these Bidding Procedures.

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing and sale process (including pursuant to one or more Auctions (as defined below), if any) for the sale or sales (each, a "<u>Sale</u>")[3] of all or substantially all of the Debtors' assets (collectively, the "<u>Assets</u>"), through one or more transactions (each, a "<u>Sale Transaction</u>"), which Sale Transaction(s) may be effectuated through a Sale or Sales pursuant to section 363 of the Bankruptcy Code, and which Sale Transaction(s) may contemplate the Sale or Sales of one or more of the following Assets (and/or the assumption and assignment of leases, as applicable):

- any owned or leased vehicles, tractors, trucks, trailers, tank trailer and other trailers, or similar vehicles and trailers, railroad cars, locomotives, stacktrains and other rolling stock and accessories used on such railroad cars, locomotives or other rolling stock (including superstructures and racks) (collectively, the "<u>Rolling Stock</u>");[4]

- any owned or leased real estate of the Debtors, including (a) the Debtors' 174 owned properties (the "<u>Owned Properties</u>") and (b) any sale-leaseback equity, pursuant to capital lease agreements through which the Debtors lease 149 facilities (the "<u>Leased Properties</u>" and together with the Owned Properties, the "<u>Real Estate</u>" or the "<u>Real Property Assets</u>");

- any owned or licensed intellectual property, including any customer lists, trademarks, copyrights, domain names, or other similar intellectual property (collectively, the "<u>Intellectual Property</u>"); and

- any inventory, spare parts, supplies, accounts receivable, or other Assets not constituting Rolling Stock, Real Property Assets, or Intellectual Property (collectively,

---

[3]   Upon any Sale of Assets located in Canada or otherwise held by Debtors domiciled in Canada (collectively, the "<u>Canadian Assets</u>"), such Sale of Assets shall be subject to recognition of the Sale Order(s) in the Canadian Court through an order of the Canadian Court (such order, a "<u>Canadian Sale Recognition Order</u>"), which shall be a condition to closing such Sale(s).  With respect to Sale(s) of Canadian Assets, the Foreign Representative will seek a Canadian Sale Recognition Order as soon as practicable following the applicable Sale Hearing (subject to the availability of the Canadian Court).

[4]   Rolling Stock constituting (a) Prepetition UST Tranche B Priority Collateral or Prepetition Joint Collateral shall be referred to herein as "<u>UST Rolling Stock</u>" and (b) Prepetition B-2 Priority Collateral shall be referred to herein as "<u>B-2 Rolling Stock</u>."

the "Other Assets," and together with the Real Property Assets and the Intellectual Property, the "Non-Rolling Stock Assets").[5]

Subject to the terms of these Bidding Procedures, a Potential Bidder (as defined below) may bid on the Assets (i) in individual lots, (ii) as a collective whole, or (iii) in any combination.

The ability of the Debtors to undertake and consummate any Sale of the Assets shall be subject to competitive bidding as set forth in these Bidding Procedures and approval of any Sale by the Court (and, if applicable, recognition of the applicable Sale Order by the Canadian Court). In addition to any Stalking Horse Bid (as defined below) for any or all of the Assets, the Debtors will consider bids for any or all of the Assets (including any combinations of Assets) in a single bid from a single bidder or in multiple bids from multiple bidders. Any bid for less than all of the Assets, even if such bid is the highest or otherwise best bid for such Asset(s), is and will be subject to higher or otherwise better bids on packages of Assets that may include such Asset(s). Similarly, any bid for all of the Assets is and will be subject to bids on individual Assets or packages of Assets that constitute, in the aggregate, higher or otherwise better bids for such Assets.

The Debtors, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties (as defined below), may elect to exclude any Assets from the Bidding Procedures and to sell such Assets pursuant to either a private or public sale, subject to Court approval, including, without limitation, pursuant to (as applicable) that certain *Order Approving Procedures for De Minimis Asset Transactions and Abandonment of De Minimis Assets* [Docket No. [●] (the "De Minimis Asset Sale Order"); *provided*, however, that, at any time prior to the termination of the Real Estate Stalking Horse APA, the Debtors shall not exclude Assets contained in the Real Estate Stalking Horse APA absent the prior written consent of the Real Estate Stalking Horse Bidder. The Debtors may determine in their discretion, following consultation with the Consultation Parties, whether to proceed with a Sale of any Asset (including packages of Assets) pursuant to these Bidding Procedures; *provided*, however, that the Debtors will advance the Real Estate Stalking Horse Bid to a Sale Transaction in good faith, subject to the Bidding Procedures; *provided further* that the Real Estate Stalking Horse Bid shall be subject to higher or otherwise better Bids (including combinations of Bids, as applicable).

To the extent that the Bidding Procedures require the Debtors to consult with any Consultation Party in connection with making a determination or taking any action under these Bidding Procedures, the Debtors shall do so in a regular and timely manner prior to making such determination or taking such action.

---

[5] Any reference herein to "Non-Real Property Assets" shall mean, collectively, (a) the Rolling Stock, (b) the Intellectual Property, and (c) the Other Assets.

## 1.  KEY DATES AND DEADLINES

### ROLLING STOCK TIMELINE

| Date and Time | Event or Deadline |
|---|---|
| October 13, 2023 at 5:00 p.m. (E.T.) | Bid Deadline for Rolling Stock[6] |
| October 18, 2023 at 10:00 a.m. (E.T.)[7] | Auction(s) (if required) for Rolling Stock Begin |
| October 23, 2023 | Notice of Winning Bidder(s) for Rolling Stock |
| October 25, 2023 at 5:00 p.m. (E.T.) | Sale Objection Deadline for Winning Bid(s) for Rolling Stock |
| October 27, 2023 at [●] [a/p].m.] (E.T.) (subject to Court availability) | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) for Rolling Stock |
| As soon as practicable following Sale Hearing (and in no event later than November 3, 2023) | Sale Consummation for UST Rolling Stock |
| As soon as practicable following Sale Hearing | Sale Consummation for B-2 Rolling Stock |

### REAL ESTATE (AND ALL OTHER ASSETS) TIMELINE

| Date and Time | Event or Deadline |
|---|---|
| November 9, 2023 at 5:00 p.m. (ET) | Bid Deadline for Non-Rolling Stock Assets (incl. Real Property Assets, Intellectual Property, and Other Assets) |
| November 27, 2023 at 2:30 p.m. (ET) | Auction(s) (if required) for Non-Rolling Stock Assets Begin[8] |
| December 1, 2023 | Notice of Winning Bidder(s) (and Back-Up Bidder(s), as applicable) for Non-Rolling Stock Assets |

---

[6]     Nothing contained in these Bidding Procedures or in the Bidding Procedures Order shall amend, waive, modify or extend the Milestones (as defined in the UST Cash Collateral Orders) and such Milestones shall remain in full force and effect.

[7]     The Debtors reserve the right to modify the date(s) of any Auction(s) in consultation with the Consultation Parties.

[8]     The Debtors reserve the right, in consultation with the Consultation Parties, to conduct separate Auction(s) (if needed) for the Intellectual Property and the Other Assets (apart from the Auction (if needed) for the Real Property Assets).  Any such details will be communicated in advance to Qualified Bidders of the applicable Assets.

4

| Date and Time | Event or Deadline |
|---|---|
| December 8, 2023 at 5:00 p.m. (ET) | Sale Objection Deadline for Winning Bid(s) (or Back-Up Bid(s), as applicable) for Non-Rolling Stock Assets |
| December 12, 2023 at [●] [a/p].m.] (E.T.) (subject to Court availability) | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) for Non-Rolling Stock Assets |
| As soon as practicable following Sale Hearing[9] | Sale Consummation for Non-Rolling Stock Assets |

2.    **SUBMISSIONS TO THE DEBTORS; CONSULTATION PARTIES**

All submissions to the Debtors required or permitted to be made under these Bidding Procedures must be directed to each of the following persons or entities unless otherwise provided:

2.1.    <u>Debtors</u>:  Yellow Corporation, 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211, Attn.: Matthew A. Doheny (Chief Restructuring Officer) and Leah K. Dawson (General Counsel).

2.2.    <u>Debtors' Proposed Counsel</u>:  (i) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, 60654, Attn.: Patrick J. Nash Jr., P.C. (patrick.nash@kirkland.com), David Seligman P.C. (david.seligman@kirkland.com), Steve Toth (steve.toth@kirkland.com), and Whitney Fogelberg (whitney.fogelberg@kirkland.com) and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith (allyson.smith@kirkland.com) and Aaron Metviner (aaron.metviner@kirkland.com); and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, PO Box 8705, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns (tcairns@pszjlaw.com), Peter J. Keane (pkeane@pszjlaw.com), and Edward Corma (ecorma@pszjlaw.com).

2.3.    <u>Debtors' Proposed Investment Banker</u>: Ducera Partners LLC, 11 Times Square, 36th Floor, New York, New York 10036**,** Attn: Cody Kaldenberg (ckaldenberg@ducerapartners.com) and Jon Cremeans (jcremeans@ducerapartners.com).

---

[9]    Consistent with the DIP Orders and the UST Cash Collateral Orders, the deadline for consummation of Sales of Assets constituting Prepetition B-2 Priority Collateral (January 3, 2024) may be extended to February 2, 2024 with the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the Prepetition UST Secured Parties (in each case not to be unreasonably withheld) and with the consent of the Junior DIP Lender in its sole discretion.  Notwithstanding the foregoing, the Debtors intend to consummate such Sale(s) as soon as practicable following the applicable Sale Hearing.

2.4.   <u>Debtors' Proposed Financial Advisor</u>:  Alvarez & Marsal North America, LLC, Brian Whittman (BWhittman@alvarezandmarsal.com) and Michael Leto (mleto@alvarezandmarsal.com).

2.5.   <u>Creditors' Committee's Proposed Counsel</u>: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Philip C. Dublin, (pdublin@akingump.com), Meredith A. Lahaie, (mlahaie@akingump.com), Kevin Zuzolo (kzuzolo@akingump.com), Stephen B. Kuhn (skuhn@akingump.com) and Akin Gump Strauss Hauer & Feld LLP, 2001 K St NW, Washington DC 20006, Attn: Erica D. McGrady (emcgrady@akingump.com).

2.6.   <u>Creditors' Committee's Proposed Investment Banker</u>: Miller Buckfire, 787 7th Avenue, 5th Floor, New York, NY 10019, Attn: John D'Amico (john.damico@millerbuckfire.com), Yoon Song (yoon.song@millerbuckfire.com), and Alexander Rohan (alex.rohan@millerbuckfire.com).

2.7.   <u>Creditors' Committee's Proposed Financial Advisor</u>: Huron Consulting Group, 100 High Street, Suite 2301, Boston, MA 02110, Attn: Timothy J. Martin (tmartin@hcg.com), Mike Gluhanich (mgluhanich@hcg.com).

2.8.   <u>Information Officer and Debtors' Proposed Canadian Counsel</u>: (*Submissions Required For Canadian Assets Only*): Alvarez & Marsal Canada Inc., Royal Bank Plaza, South Tower 200 Bay Street, Suite 2900, P.O. Box 22 Toronto, ON M5J 2J1 Attn: Al Hutchens (ahutchens@alvarezandmarsal.com) and Joshua Nevsky (jnevsky@alvarezandmarsal.com); Goodmans LLP, Bay Adelaide Centre – West Tower, 333 Bay Street, Suite 3400, Toronto, ON M5H 2S7, Attn: Robert Chadwick (rchadwick@goodmans.ca) and Caroline Descours (cdescours@goodmans.ca)).

The "<u>Consultation Parties</u>" are (A) the Junior DIP Lender, (B) the B-2 Lenders, (C) the Prepetition ABL Agent, (D) the Prepetition UST Secured Parties, and (E) the Creditors' Committee; *provided* that to the extent that any Consultation Party, including any Prepetition Agent (including the Prepetition UST Agent), the Junior DIP Agent, the B-2 Agent, or any member of the Creditors' Committee submits (or indicates its intent to submit) a bid, including a credit bid,[10] for any Assets in connection with these Bidding Procedures and for any potential Sale Transaction, or is a participant in any active or prospective Bid with respect to any Asset(s), such applicable Consultation Party shall immediately no longer be a Consultation Party unless and until such party unequivocally revokes its Bid and waives its right to continue in the bidding process;[11] *provided further* that, immediately upon any Consultation Party's secured debt (as applicable)

---

[10]   Pursuant to the DIP Orders and the DIP Loan Documents, the Junior DIP Lender and the Junior DIP Agent have waived any right to credit bid for the Assets under these Bidding Procedures or otherwise.

[11]   If a member of the Creditors' Committee submits a Bid or otherwise is a participant with respect to any active or prospective Bid, the Creditors' Committee shall remain a Consultation Party; *provided* that such bidding member shall be excluded from all discussions, deliberations, or participation of the Creditors' Committee as a Consultation Party and precluded from receiving or reviewing information or documentation not otherwise available to all Acceptable Bidders.

being paid in full in cash, such Consultation Party shall no longer be a Consultation Party under the Bidding Procedures. Materials and information provided by the Debtors or their advisors to the advisors to any Consultation Party may be shared with such Consultation Party, subject in all respects to these Bidding Procedures, the Bidding Procedures Order, and the respective confidentiality agreement entered into by and among or otherwise agreed to between each such Consultation Party and the Debtors.

The Debtors shall consult with the Consultation Parties in good faith regarding the sale process for the Assets and provide to the Consultation Parties and their advisors regular reports concerning the sale process, including parties contacted, buyer feedback, copies of letters of intent, drafts of definitive agreements, updates regarding purchase proposals, and any diligence and other information reasonably requested by the Consultation Parties.

## 3.    POTENTIAL BIDDERS & ACCEPTABLE BIDDERS

To participate in the bidding process for any Asset(s) as set forth in these Bidding Procedures, or to otherwise be considered as a purchaser of Assets or for any other purpose under these Bidding Procedures, a person or entity interested in consummating any Sale Transaction (a "Potential Bidder") must deliver (or have previously delivered) to the Debtors and each of the Debtors' advisors (as listed above) the following documents and information (unless the Debtors, in their reasonable business judgment after consultation with the Consultation Parties, choose to waive any of the requirements set forth in this Section 3 for any Potential Bidder):

3.1.    a statement and factual support demonstrating, to the Debtors' satisfaction, that the Potential Bidder: (a) has a *bona fide* interest in purchasing any or all of the Assets, (b) is able to submit a Qualified Bid (as defined below) by no later than the applicable Bid Deadline (as defined below), and (c) has the financial ability to timely consummate its proposed Sale Transaction in accordance with these Bidding Procedures;

3.2.    a description of any and all connections the Potential Bidder (including its affiliates and any related persons) have to the Debtors, any current or former directors and officers of the Debtors, the Debtors' non-Debtor affiliates, and the Debtors' primary creditors as identified by the Debtors;

3.3.    an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement");

3.4.    the identification of the Potential Bidder and any principals and representatives thereof (including counsel), including by identifying those principals and representatives who are authorized by the Potential Bidder to appear and act on such Potential Bidder's behalf for all purposes under these Bidding Procedures regarding the Potential Bidder's contemplated Sale Transaction;

3.5.    an optional non-binding written indication of interest specifying, with respect to any proposed Sale Transaction, (a) the identity of the Asset(s) to be acquired, (b)

the amount and type of consideration to be offered, and (c) any other material terms to be included in a bid by such Potential Bidder; and

3.6.    any other information or documentation that the Debtors reasonably request.

The Debtors will provide copies of materials delivered by any Potential Bidder to each Consultation Party, regardless of whether received prior or subsequent to the date of the Court's entry of these Bidding Procedures, as promptly as practicable upon receipt by the Debtors and/or their advisors of such materials.

The Debtors, in their reasonable business judgment, following consultation with the Consultation Parties, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documentation (including an executed Confidentiality Agreement) and information so that such Potential Bidder may proceed to conduct due diligence and submit a Bid (as defined herein) (such Potential Bidder, an "Acceptable Bidder").  Any Potential Bidder must promptly provide the Debtors and their advisors with any additional required or reasonably requested documentation or information.

## 4.    DUE DILIGENCE

The Debtors, with their advisors, have established an electronic data room or rooms (the "Data Room") concerning the Assets that provides diligence materials, including the collective bargaining agreements to which the Debtors are party and other information, to allow Acceptable Bidders to submit a Qualified Bid (as defined below) and to seek and obtain financing commitments for any proposed Sale Transaction by an Acceptable Bidder.

Only Acceptable Bidders (who, for the avoidance of doubt, have executed a Confidentiality Agreement) shall be eligible to receive due diligence information and access to the Data Room and to any additional non-public information regarding the Debtors and the Assets.  Subject to the other terms herein, the Debtors may, but shall not be required to, provide to each Acceptable Bidder reasonable due diligence information, as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall use commercially reasonable efforts to post substantially all written due diligence provided to any Acceptable Bidder to the Data Room.

The due diligence period for any Stalking Horse Bidder (as defined below) will end prior to execution of the applicable Stalking Horse Agreement, unless otherwise agreed pursuant to the applicable Stalking Horse Agreement.  For all Acceptable Bidders other than any Stalking Horse Bidder, the due diligence period will end on the applicable Bid Deadline.  The Debtors may, in their reasonable business judgment and after consultation with the Consultation Parties, but shall have no obligation to, furnish any additional due diligence information to any person following the applicable Bid Deadline.  For the avoidance of doubt, any Stalking Horse Bidder shall retain access to the Data Room and shall receive any such additional information as is made available to all other Acceptable Bidders for the applicable Assets, notwithstanding the execution of a Stalking Horse Agreement with respect to such Assets.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale(s) to any person except to an Acceptable Bidder or to such Acceptable

DOCS_DE:244750.1 96859/001

Bidder's duly authorized representatives subject to the applicable Confidentiality Agreement.  The Debtors and their advisors shall use commercially reasonable efforts to coordinate with respect to all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' reasonable business judgment and after consultation with the Consultation Parties, have not established, or who have raised significant doubt, that such Acceptable Bidder intends in good faith to, or has the capacity (financial and otherwise) to, timely consummate the applicable proposed Sale Transaction in accordance with these Bidding Procedures.

Subject to the other terms of these Bidding Procedures, neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets, liabilities of the Debtors, or the Sale(s) and proposed Sale Transaction(s) if and to the extent doing so would (1) violate any law to which the Debtors are subject, including any privacy law, (2) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party, (3) violate any legally-binding obligation of any Debtor with respect to confidentiality, non-disclosure or privacy, or (4) jeopardize protections afforded to any Debtor under the attorney-client privilege or the attorney work product doctrine (*provided* that in the case of each of the foregoing clauses (1) through (4), the Debtors shall use commercially reasonable efforts to (x) provide such reasonably requested access as can be provided (or otherwise convey such reasonably requested information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law and (y) provide such information in a manner without violating such privilege, doctrine, contract, obligation, or law).

The Debtors reserve the right to withhold any diligence materials that the Debtors determine in good faith and in the exercise of their reasonable business judgment are sensitive or otherwise not appropriate for disclosure.  Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

**All due diligence requests directed to the Debtors must be directed to: yellow@ducerapartners.com.**

**Each Potential Bidder or Acceptable Bidder shall comply with all reasonable requests by the Debtors or the Debtors' advisors with respect to information, documentation, and due diligence access regarding such Potential Bidder or Acceptable Bidder, as applicable, and its contemplated Sale Transaction.**

**5.      BID REQUIREMENTS.**

Any proposal, solicitation, or offer to consummate a Sale Transaction (each, a "Bid") must be submitted to the Debtors and their advisors (as set forth above) in writing and must satisfy, as determined by the Debtors in consultation with the Consultation Parties, the following requirements (collectively, the "Bid Requirements"):

5.1.    **Proposed Sale Transaction.** Each Bid must clearly propose a Sale Transaction as to the Asset(s) sought to be acquired.  Each Bid must specify (1) which of the Assets

9

are to be included in the proposed Sale Transaction (the "<u>Acquired Assets</u>") and (2) to the extent such Bid is for substantially all of the Assets, which Assets are to be excluded from the proposed Sale Transaction (the "<u>Excluded Assets</u>") as well as the disposition of any liabilities or obligations of the Debtors.

5.1.1.  **Assets Other Than Real Property Assets.**  With respect to all non-Real Property Assets (*i.e.*, Rolling Stock, Intellectual Property, and Other Assets (each as defined above), a Bid may offer to purchase all or substantially all of the Debtors' non-Real Property Assets, only a portion of the non-Real Property Assets, or any combination of such Assets.

5.1.2.  **Real Property Assets.**  A Bid for Real Property Assets must be on a property-by-property basis by submission of, as applicable, either or both of Bid Form A (for Owned Properties), which is attached hereto as **Exhibit A** and Bid Form B (for Leased Properties), which is attached hereto as **Exhibit B** (each, a "<u>Real Property Bid</u>").  Additionally, as part of such submission, Acceptable Bidders may indicate up to five (5) packages of Real Property Assets (each, a "<u>Package Indication</u>"), for which such Acceptable Bidder would be willing to pay a premium over the sum of the individual Real Property Bids for the individual Real Property Assets included in such Package Indication (each, a "<u>Package Real Property Bid</u>").  The Package Real Property Bid must indicate the percentage premium above the sum of the applicable individual Real Property Bids.  For the avoidance of doubt, the Real Estate Stalking Horse Bid[12] shall not be required to allocate Purchase Price on a property-by-property basis; *provided* that any subsequent Overbid by the Real Estate Stalking Horse Bidder during the Auction shall be required to allocate Purchase Price on a property-by-property basis.

5.2.  **Purchase Price.**  Each Bid must clearly specify a purchase price, including and identifying separately any Cash and non-Cash components in US dollars (the "<u>Purchase Price</u>").  A Bid that contemplates a Sale for less than all of the Assets but includes multiple segments or groups of Assets must contain sufficient information as to allow the Debtors to determine an allocation of value among each segment or group of Assets (including, as applicable, by allocating the Purchase Price among each of the Assets that the bidder intends to acquire).  If the Debtors select a Stalking Horse Bidder (as defined below) for such Assets, then such Purchase Price must exceed such Stalking Horse Bid (as defined below) by at least the aggregate sum of (1) the Bid Protections (as defined below), if any, for such assets, and (2) such additional amount as determined by the Debtors in their reasonable business judgment after consultation with the Consultation Parties.

5.3.  **Deposit.**  Each Bid other than a credit bid must be accompanied by a Cash deposit equal to ten percent (10%) (for non-Real Property Assets) or five percent (5%) (for Real Property Assets) of the applicable aggregate Purchase Price (the "<u>Deposit</u>"),

---

[12]  The "<u>Real Estate Stalking Horse Bid</u>" means the proposed transaction under the asset purchase agreement by and between the Debtors and Estes Express Lines  (the "<u>Real Estate Stalking Horse Bidder</u>"), dated September [●], 2023, and such purchase agreement, the "<u>Real Estate Stalking Horse APA</u>").

to be held in one or more escrow accounts on terms acceptable to the Debtors and the Consultation Parties; *provided*, *however*, that the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may elect to waive or modify the requirement of a Deposit on a case-by-case basis.  For the avoidance of doubt, to the extent the Purchase Price of a Bid is increased, at any time or from time to time, whether prior to commencement of the applicable Auction (if any) or during the applicable Auction (if any), the amount of the Deposit shall automatically increase accordingly (*i.e.*, to become equal to 10% (for non-Real Property Assets) or 5% (for Real Property Assets) of any increased Purchased Price) and the corresponding bidder will promptly pay into escrow the amount of such increase, and in any event within one (1) business day, following such increase.  Without limiting the foregoing, if a Purchase Price is increased in order to make a bid into a Qualified Bid, the Debtors may, in consultation with the Consultation Parties, condition participation of the applicable bidder at the applicable Auction (if any) on such bidder paying the then full amount of the Deposit into escrow prior to the commencement of such Auction or such participation.

5.4.    **Transaction Documents.**  Each Bid must be accompanied by an executed purchase agreement with respect to the proposed Sale Transaction, including the exhibits, schedules, and ancillary agreements related thereto and any other related material documents integral to such Bid and such Sale Transaction.  In addition, (1) the executed purchase agreement accompanying such bidder's Bid must be further accompanied by a redline copy marked to reflect any amendments or modifications to the form purchase agreement provided by the Debtors and (2) if one or more Stalking Horse Bidders have been designated for the applicable Assets, the executed purchase agreement accompanying such bidder's Bid must be further accompanied by a redline copy marked against each applicable Stalking Horse Agreement.

5.5.    **Back-Up Bidder Commitment.**  Each Bid must include a written commitment by the applicable Acceptable Bidder to serve as a Back-Up Bidder in the event that such Acceptable Bidder's Bid is not selected as the Winning Bid for the applicable Asset(s), subject to the terms of any applicable Stalking Horse Bid.

5.6.    **Proof of Financial Ability to Perform.**  Each Bid must include written evidence that the Debtors reasonably conclude, in consultation with the Consultation Parties, demonstrates that the bidder has the necessary financial ability to timely close the proposed Sale Transaction in accordance with these Bidding Procedures.  Such information must include the following:

5.6.1.    contact names, telephone numbers, and email addresses for verification of financing sources;

5.6.2.    evidence of the bidder's internal financing resources and, if applicable, proof of fully executed and effective financing commitments with limited conditionality customary for transactions of the proposed Sale

11

Transaction's type from one or more reputable financing sources in an aggregate amount equal to the Cash portion of such Bid (including, if applicable, the payment of cure amounts), in each case, as are required to timely close the Sale Transaction;

5.6.3.  a description of the bidder's pro forma capital structure; and

5.6.4.  any other financial disclosure or credit-quality support information or enhancement requested by the Debtors demonstrating that such bidder has the ability to timely close the proposed Sale Transaction in accordance with these Bidding Procedures.

5.7.    **Contingencies; No Financing or Diligence Outs.**  Each Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

5.8.    **Identity.**  Each Bid must fully disclose the identity of each person or entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the bidder) and the complete terms of any such participation.  Each Bid must also include contact information (including mailing address, email address, and telephone number) for the specific person(s), entity(ies), and counsel whom the Debtors (and their advisors) should contact regarding such Bid.

5.9.    **Authorization.**  Each Bid must contain evidence acceptable to the Debtors, in consultation with the Consultation Parties, that the bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Sale Transaction contemplated by such Bid.

5.10.   **Contracts, Leases and Employees.**  Each Bid must identify each and every executory contract and unexpired lease to be assumed and assigned in connection with the proposed Sale Transaction (collectively, the "Assigned Contracts").  Each Bid must indicate whether (and to what extent) it proposes to assume any portion of the Debtors' collective bargaining agreements.  Each Bid must also indicate whether and to what extent it proposes to assume obligations and/or liabilities to multiemployer pension plans and/or health plans, including but not limited to whether and to what extent the Bid proposes participation in such pension and health plans. Similarly, each Bid must indicate the impact on employees (if any), including the actual or potential elimination of (and/or reduction in value of) any employee benefits.  Each Bid must also be accompanied by adequate assurance of future performance under all Assigned Contracts, which shall include: (i) audited and unaudited financial statements, (ii) tax returns, (iii) bank account statements, (iv) a description of the business to be conducted at the Leased Property(ies) (if applicable) or with respect to such Assigned Contract(s) (as applicable), and (v) any such other documentation or information as the Debtors may request (the foregoing clauses (i)-(v), and/or such other documentation and information

12

satisfactory to the Debtors to demonstrate an Acceptable Bidder's adequate assurance of future performance, collectively, the "<u>Adequate Assurance Package</u>"). The Adequate Assurance Package must be submitted to the Debtors and their advisors at the time of the Bid's submission in its own compiled PDF document. Any requests made by the Debtors or their advisors thereafter for further or supplemental information or documentation must be promptly provided to the Debtors and their advisors.

5.11.   **<u>As-Is, Where-Is</u>.**   Each Bid must include a written acknowledgement and representation that: (1) the bidder has had an opportunity to conduct any and all due diligence regarding the proposed Sale Transaction prior to making its offer (and no further due diligence is or shall be required); (2) the bidder has relied solely upon its own independent review, investigation, or inspection of any documents in making its Bid; (3) except as may be set forth in Definitive Sale Documents (as defined below) concerning such Bid, the bidder did not rely, and is not relying upon, any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or their advisors or other representatives or any other party in interest regarding the proposed Sale Transaction, the completeness of any information provided in connection therewith or with the applicable Asset(s) or the applicable Auction, if any, or otherwise; and (4) the bidder did not engage in any collusive conduct whatsoever in preparing and submitting its Bid in accordance with these Bidding Procedures and acted at all times and in all respects in good faith in submitting its Bid to the Debtors.

5.12.   **<u>No Break-Up Fee</u>.**   Each Bid must expressly state and acknowledge that such bidder shall not be entitled to, and shall not at any time or under any circumstance seek, any transaction break-up fee, termination fee, expense reimbursement, working fee, or similar type of payment; *provided* that the Debtors are authorized in their discretion and subject to Section 7 of these Bidding Procedures, to offer Bid Protections (as defined below) to one or more Stalking Horse Bidders, in accordance with these Bidding Procedures and the Bidding Procedures Order; *provided further* that each Bid must expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code or the payment of any broker fees or other fees and costs whatsoever in connection with bidding for any of the Assets and/or otherwise participating in the applicable Auction(s) (if any) or the sale process contemplated by these Bidding Procedures.

5.13.   **<u>Transition Services</u>.**   Each Bid must state or otherwise estimate the types of transition services, if any, that the Acceptable Bidder would require of and/or provide to the Debtors in connection with the proposed Sale Transaction, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Acceptable Bidder's Bid were to be selected as the Winning Bid for the applicable Asset(s), and shall include such Acceptable Bidder's commitment to funding any such costs and expenses incurred by the Debtors related to any such transition services.

5.14.  **Indication of Interest.**  To the extent an Acceptable Bidder provided a non-binding indication of interest pursuant to Section 3.5 of these Bidding Procedures, each Bid submitted by such Acceptable Bidder must describe any deviations of the Bid from such Acceptable Bidder's indication of interest, if any.

5.15.  **Commitment to Close.**  Each Bid must include a commitment to close the proposed Sale Transaction as soon as practicable, and in any event within the timeline contemplated by these Bidding Procedures, and must state the expected date of (and timeline and any milestones to) closing of the proposed Sale Transaction.

5.16.  **Irrevocable Bid**.  Each Bid must contain a statement by the applicable bidder acknowledging and agreeing that such Bid and each of its provisions is binding upon the bidder and irrevocable in all respects.

5.17.  **Compliance with Bidding Procedures**.  Each Bid must contain a covenant that the applicable bidder will comply in all respects with the terms of these Bidding Procedures and the Bidding Procedures Order.

5.18.  **Combination Bids.**  For Bids that contemplate a purchase of multiple categories of non-Real Property Assets, *e.g.*, Bids for Assets constituting some combination of Rolling Stock, Intellectual Property, and/or Other Assets (each as defined above), each Bid must specify: (i) allocation of the Purchase Price to each category of Assets; (ii) allocation of the Purchase Price across each individual Real Property Asset included in the Bid; and (iii) whether the Bid is made on an "all or none" basis in the event that the Potential Bidder is outbid for certain Assets contemplated in the Bid.  Any Bids for more than one Real Property Asset shall comply with Section 5.1.2 of these Bidding Procedures.

By submitting a Bid, each bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures in all respects and to refrain from (A) submitting a Bid after conclusion of the applicable Auction (if any) or (B) seeking to reopen the applicable Auction (if any) once closed.  **The submission of a Bid shall constitute a binding and irrevocable offer (a) for the Winning Bidder, until consummation of the proposed Sale Transaction, (b) for the Back-Up Bidder (if any), as provided in these Bidding Procedures, including Section 12 hereof, and (c) for any bidder other than the Winning Bidder and Back-Up Bidder, until two (2) business days after entry of the Court's order approving the Winning Bid and (if applicable) the Back-Up Bid for the applicable Assets (each, as applicable, a "Sale Order"),[13] and each Bid must include a written acknowledgment and representation to such effect.**

---

[13]  Upon any Sale of Canadian Assets, the Foreign Representative will seek recognition of the applicable Sale Order(s) in the Canadian Court, which recognition shall be a condition to closing such Sale(s), as soon as practicable after the Court's entry of the applicable Sale Order(s) (subject to the availability of the Canadian Court).

14

**For the avoidance of doubt, the Debtors may disclose the terms of any Bid that requires modification and/or termination of any collective bargaining agreements or related agreements with any union to such union;** *provided* **that such union has executed a confidentiality agreement with the Debtors.**

6.      **NO COMMUNICATIONS AMONG BIDDERS WITHOUT DEBTORS' CONSENT.**

Potential Bidders and/or Acceptable Bidders may communicate with each other for purposes of joining Bids and/or creating consortium bids with (and only with) the prior written consent of the Debtors in consultation with the Consultation Parties; otherwise, there shall be no communications whatsoever between or among Potential Bidders and/or Acceptable Bidders until and unless the Debtors, following consultation with the Consultation Parties, have in writing authorized such communications to occur.  The Debtors may facilitate communications between Potential Bidders and/or Acceptable Bidders for the purposes of potentially joining Bids, and no Potential Bidder, Acceptable Bidder, or  party in interest shall be permitted to object to any such communications or joining of bids.  The Debtors reserve the right, following consultation with the Consultation Parties, to disqualify from participation in these Bidding Procedures any Potential Bidders or Acceptable Bidders that have had communications between or among themselves without first obtaining the prior written authorization of the Debtors' advisors.

7.      **STALKING HORSE BIDDER(S).**[14]

The Debtors are and shall be authorized, but not obligated, in an exercise of their reasonable business judgment, and upon consent of the Consultation Parties, to:  (A) select one or more Acceptable Bidders to act as stalking horse bidders in connection with any Sale Transaction (each, a "Stalking Horse Bidder," and such Acceptable Bidder's Bid, a "Stalking Horse Bid") and enter into a purchase agreement with respect to such proposed Sale Transaction with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (B) in connection with any Stalking Horse Agreement and in recognition of such Stalking Horse Bidder's expenditure of time, energy, and resources, the Debtors may, with the consent of the Consultation Parties, determine to (i) provide a breakup fee (other than with respect to a Stalking Horse Bidder that is a Secured Party (as defined herein)) (the "Breakup Fee") and/or (ii) reimburse such Stalking Horse Bidder's reasonable and documented out-of-pocket fees and expenses (including attorney's fees and expenses) actually incurred in connection with the preparation and negotiation of the Stalking Horse Agreement and on the terms specified in the applicable Stalking Horse Agreement (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections"); *provided* that, with respect to any Stalking Horse Agreement, the aggregate of the Breakup Fee and the total Expense Reimbursements shall in no event exceed three percent (3%) of the applicable cash Purchase Price; *provided further* that, for the avoidance of doubt, the consent of the Consultation Parties shall be required with respect to Bid Protections for any Stalking Horse Bid, whether such Stalking Horse Agreement is entered into prior to or subsequent to the date an order is entered by the Court approving these Bidding Procedures.  To the extent the Bid

---

[14]    For the avoidance of doubt, approval of the Real Estate Stalking Horse Bidder Bid Protections will be sought pursuant to a separate motion and order and not subject to this Section 7.

Protections do not otherwise comply with these Bidding Procedures, the Debtors reserve the right to seek Court approval of such Bid Protections.

No later than one (1) business day after selecting a Stalking Horse Bidder (or Stalking Horse Bidders as applicable)), or as soon as reasonably practicable thereafter, the Debtors shall file with the Court and serve a notice that (A) identifies the Stalking Horse Bidder and the material terms of the applicable Stalking Horse Bid, including the Purchase Price and the Assets to which such Stalking Horse Bid relates; and (B) attaches a copy of the corresponding Stalking Horse Agreement.

## 8.    BID DEADLINES.

Any Bid must be transmitted via email (in .pdf or similar format) to the Debtors and their advisors (as specified in Section 2 hereof) so as to be ***actually received***: (i) for the Rolling Stock, on or before **October 13, 2023 at 5:00 p.m. (prevailing Eastern Time)**; and (ii) for all other Assets (including Real Property Assets), on or before **November 9, 2023 at 5:00 p.m. (prevailing Eastern Time)** (each, as applicable, the "Bid Deadline").

## 9.    QUALIFIED BIDS & QUALIFIED BIDDERS.

A Bid is a "Qualified Bid" if the Debtors, in the Debtors' reasonable business judgment and in consultation with the Consultation Parties, determine that such Bid (A) satisfies the Bid Requirements set forth above; (B) solely with regard to the Rolling Stock, is for an amount equal to or greater than $5,000,000.00 in the aggregate; (C) with regard to any Real Property Assets, is for an amount greater than $1,000,000 in the aggregate (or an applicable Reserve Price (as defined below) for individual Real Property Assets)[15]; (D) with regard to any other Assets, is for an amount equal to or greater than $5,000,000 in the aggregate; and (E) is reasonably likely, in the Debtors' judgment, in consultation with the Consultation Parties, to be consummated if selected as the Winning Bid (or Back-Up Bid, as applicable) (as defined below) for the applicable Asset(s) on the timeline contemplated by these Bidding Procedures; *provided* that any Stalking Horse Bid shall constitute and be deemed a Qualified Bid. For the avoidance of doubt, any Stalking Horse Bid shall be, and shall remain, a Qualified Bid notwithstanding any additional requirements imposed

---

[15]    On or before the Bid Deadline for Non-Rolling Stock Assets, the Debtors shall, in their reasonable business judgment and in consultation with the Consultation Parties, establish a reserve price (each, a "Reserve Price") for each Real Property Asset. The Reserve Price(s) (if established) shall be based on, among other things, the indications of interest, relevant appraisals, and other factors. A Bid will not qualify to participate in any Auction for a specific Real Property Asset if such Bid does not exceed the Reserve Price (as applicable). For each Real Property Asset receiving one or more Bids by the Bid Deadline in excess of the Reserve Price, the Debtors may, in consultation with the Consultation Parties, either accept the highest such Bid (a "Pre-Auction Winning Bid") or conduct an Auction for such Real Property Asset. The Debtors, in consultation with the Consultation Parties, may elect to offer or not to offer Package Real Property Bids at an Auction. Only individual Real Property Bids in excess of the applicable Reserve Price will qualify a Bidder to participate in the Auction for the applicable Real Property Asset. If the Debtors, after consultation with the Consultation Parties, accept a Pre-Auction Winning Bid, such Real Property Asset shall be removed from the Auction and the Debtors shall file a motion seeking approval of such Pre-Auction Winning Bid. Notwithstanding the foregoing, if the Debtors execute the Real Estate Stalking Horse APA, there shall be no pre-auction process relating to the Real Property Assets subject to the Real Estate Stalking Horse APA.

by subsequent amendments or modifications to these Bidding Procedures or the corresponding Bidding Procedures Order.

An Acceptable Bidder that submits a Qualified Bid shall be a "<u>Qualified Bidder</u>" with respect to the Asset(s) to which such Qualified Bid relates.

As soon as reasonably practicable after the applicable Bid Deadline, the Debtors will, after consultation with the Consultation Parties, notify each Acceptable Bidder whether such party is a Qualified Bidder and shall as promptly as practicable following the applicable Bid Deadline provide the Consultation Parties' counsel with a copy of each Qualified Bid. If an Acceptable Bidder's Bid is determined not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit (if any) on the date that is three (3) business days after such determination.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the date set for the applicable Auction(s) (if any), the Debtors may, in consultation with the Consultation Parties, discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors following consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in the Bidding Procedures; *provided* that any Qualified Bid may be improved at the applicable Auction (if any) as set forth herein. Any improved Qualified Bid must continue to comply in all respects with the requirements for Qualified Bids as set forth in these Bidding Procedures.

Notwithstanding anything in these Bidding Procedures to the contrary, the Debtors, in consultation with the Consultation Parties, reserve the right to work with (A) Potential Bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the applicable Bid Deadline and (B) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the applicable Auction (if any). The Debtors, in consultation with the Consultation Parties, reserve the right to cooperate with any Acceptable Bidder to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors, in consultation with the Consultation Parties, may accept a single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder, and their Bid a single Qualified Bid, for purposes of the applicable Auction (if any)).

## 10.    RIGHT TO CREDIT BID.

Subject to the terms and conditions set forth in the DIP Orders and the UST Cash Collateral Orders, any Qualified Bidder that has a valid and perfected lien on any Assets of the Debtors' estates (a "<u>Secured Party</u>"), except the Junior DIP Secured Parties, shall be entitled to credit bid all or a portion of the face value of such Secured Party's claims against the Debtors toward the Purchase Price specified in such Qualified Bidder's Bid; *provided* that a Secured Party (except the Junior DIP Secured Parties) shall be entitled to credit bid its claim(s) only with respect to Assets that are subject to a valid and perfected first priority lien in favor of such Secured Party as to such claim(s). Notwithstanding anything to the contrary herein, but subject to the terms and conditions set forth in the DIP Orders and the UST Cash Collateral Orders, each of the Prepetition

Agents (including the Prepetition UST Agent) and the B-2 Agent may, subject to section 363(k) of the Bankruptcy Code, submit a credit bid of all or any portion of the aggregate amount of their respective secured claims, including any post-petition financing claims.  The Junior DIP Lender and the Junior DIP Agent have expressly waived under the DIP Orders any right to credit bid the obligations outstanding under the Junior DIP Facility.

The rights and defenses of the Debtors and any other party in interest with respect to whether any assertion that any liens, claims, encumbrances, or interests, if any, will attach to the proceeds of the Sale Transaction(s) are expressly preserved.

## 11.    AUCTION(S).

If the Debtors receive two or more Qualified Bids with respect to the same Asset(s), the Debtors may, in consultation with the Consultation Parties, conduct an auction (each, an "Auction") to determine the Winning Bidder (or Back-Up Bidder, as applicable) with respect to such Asset(s).  In such event, the Debtors will (A) notify all Qualified Bidders of the highest or otherwise best Qualified Bid with respect to the applicable Asset(s), as determined by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties (each such Qualified Bid, a "Baseline Bid") and (B) provide copies of the documents setting forth the terms of the Baseline Bid(s) to all Qualified Bidders with respect to such Assets, in each case, as soon as reasonably practicable after the applicable Bid Deadline and in any event prior to the commencement of the applicable Auction for such Assets.  The Debtors' determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, deem relevant to the value of the Qualified Bid to the Debtors' estates and any related regulatory or other requirements.

If the Debtors, in consultation with the Consultation Parties, determine that they have received no Qualified Bids with respect to any particular Asset(s) other than any Stalking Horse Bid(s) or they have received only a single Qualified Bid with respect to such Asset(s), then the Auction with respect to such Asset(s) will not occur, and the Stalking Horse Bid(s) or the Qualified Bid, as applicable, will be deemed to be the Winning Bid(s) for the Asset(s) to which such Stalking Horse Bid(s) or Qualified Bid(s), as applicable, relates.  If fewer than two Qualified Bids are received by the applicable Bid Deadline with respect to any portion of the Assets, the Debtors shall not conduct an Auction with respect to such Asset(s).  In either event, if the Debtors make such a determination, the Debtors will file a notice with the Court within one (1) business day of making such determination or as soon as practicable thereafter; *provided* that the foregoing is subject to the Debtors' receipt and review of any higher or otherwise better Bids on larger packages of Assets that may include such Asset(s).

If the Debtors receive two or more Qualified Bids for all or any portion of the Rolling Stock and determine to hold an Auction, the Auction with respect to such Rolling Stock shall commence on **October 18, 2023 at 10 a.m. (E.T.),** via remote video and/or in person at the Debtors' election in consultation with the Consultation Parties.  If the Debtors receive two or more Qualified Bids for any of the remaining Assets and determine to hold an Auction, the Auction with respect to such other Assets shall commence on **November 27, 2023 at 2:30 p.m. (ET)**, via remote video and/or in-person at the Debtors' election in consultation with the Consultation Parties.  Any Auction shall

18

be conducted in a timely fashion according to the procedures set forth in Section 11(i)-(vii) of these Bidding Procedures (the "Auction Procedures").

## AUCTION PROCEDURES

(i)    **The Debtors Shall Conduct the Auction(s); General Provisions.** The Debtors, with the assistance of their advisors, shall direct and preside over any Auction and shall consult with the Consultation Parties throughout the Auction process. At the commencement of any Auction, the Debtors, in consultation with the Consultation Parties, (1) may announce procedural and related rules governing such Auction, including time periods available to all Qualified Bidders to submit any successive Bid(s); and (2) shall describe the terms of any Baseline Bid for the Assets being sold in such Auction. Only incremental Bids that comply with the terms set forth in Section 11(ii) of these Bidding Procedures shall be considered "Overbids." Overbids shall be made and input into the written record, *provided* that all material terms of each round's winning Overbid shall be fully disclosed to all other Qualified Bidders or announced at the Auction (as applicable). The Debtors, in consultation with the Consultation Parties, shall determine in their reasonable business judgment whether an incremental Bid is an Overbid with respect to the applicable Assets. The Debtors shall maintain a written transcript of all Bids made and announced at such Auction (if any), including the Baseline Bid, all Overbids, and the Winning Bid (or Back-Up Bid, as applicable) (as defined below).

Only Qualified Bidders for the Assets being sold are eligible to participate in the Auction (if any), subject to other limitations as may be reasonably imposed by the Debtors, in consultation with the Consultation Parties, in accordance with these Bidding Procedures. Qualified Bidders participating in the Auction (if any) must appear in person at the Auction (if any) if held in-person, or through a duly authorized representative. Such Auction(s) (if any) will be conducted openly and all creditors may be permitted to attend; *provided* that the Debtors may, in consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder or creditor at the Auction (if any). The Consultation Parties and their advisors, and any other creditor of the Debtors, may attend the Auction; *provided, however*, that any creditor that is not a Consultation Party (or a Consultation Party's counsel or advisor) wishing to attend the Auction may do so by contacting, no later than three (3) business days prior to the start of the applicable Auction (if any), the Debtors' advisors.

The Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the Sale Transaction contemplated by its proposal and any further information that the Debtors believe is necessary to clarify and evaluate any Bid made by a Qualified Bidder during the applicable Auction (if any).

The Debtors may, subject to Section 16 of these Bidding Procedures, announce at the Auction (if any) modified or additional procedures for conducting the Auction or otherwise modify these Bidding Procedures.

(ii)     **Terms of Overbids.**  Each Overbid must comply in all respects with the following terms:

(a)     <u>Minimum Overbid Increment</u>.  At the commencement of the initial solicitation of Overbids for the Assets being sold in any such Auction, the Debtors, in consultation with the Consultation Parties, shall announce the minimum increment by which any Overbid for such applicable Assets must exceed the applicable Baseline Bid.  At the commencement of each subsequent round of solicitation of Overbids for such applicable Assets, the Debtors shall announce the minimum increment by which any such Overbid must exceed the Prevailing Highest Bid (as defined below) at such time. The Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, announce increases or reductions to the applicable minimum Overbid increment at any time during the Auction (if any).  Any Overbid made by a Stalking Horse Bidder shall be deemed to have been made in an amount equal to the Overbid plus, if applicable, the Bid Protections, to the extent provided in the applicable Stalking Horse Agreement.

(b)     <u>Conclusion of Each Overbid Round</u>.  Upon the solicitation of each round of Overbids for the Assets being sold in any such Auction, the Debtors may announce a deadline by which time any such Overbids must be submitted to the Debtors (an "<u>Overbid Round Deadline</u>"); *provided* that the Debtors, in their reasonable business judgment and after consultation with the Consultation Parties, may extend any Overbid Round Deadline.

(c)     <u>Overbid Alterations</u>.  An Overbid for the Assets being sold in any such Auction may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' reasonable business judgment and after consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

(d)     <u>Announcing Highest Bid</u>.  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors, in consultation with the Consultation Parties, have identified an Overbid with respect to such Assets being sold as being higher or otherwise better than, in the initial Overbid round, the Baseline Bid or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all applicable Qualified Bidders the material terms of any new Overbid for such applicable

20

Assets designated by the Debtors as the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid.

(iii)    **Consideration of Overbids.**  The Debtors reserve the right, in their reasonable business judgment and in consultation with the Consultation Parties, to adjourn the Auction (if any) one or more times, to, among other things (1) facilitate discussions between the Debtors and Qualified Bidders, (2) allow Qualified Bidders the opportunity to consider how they wish to proceed, and (3) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence, documentation, or information as the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal financing resources or has received sufficient and sufficiently unconditional external financing commitments to timely consummate the proposed Sale Transaction(s) at the prevailing Overbid amount for such Assets.

(iv)    **No Round-Skipping.**  To remain eligible to participate in the Auction (if any), in each round of bidding, each Qualified Bidder, except the Qualified Bidder that submitted the Prevailing Highest Bid, must submit an Overbid for the Assets being sold with respect to such round of bidding.  To the extent a Qualified Bidder that did not submit the Prevailing Highest Bid fails to submit an Overbid for the applicable Assets with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction (if any); *provided* the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may permit a bidder that has been disqualified to take part in the Auction (if any) solely to the extent a Qualified Bidder that has not been disqualified has agreed (after receiving express permission from the Debtors upon consultation with the Consultation Parties) to permit such disqualified bidder to join such Qualified Bidder in its next-round Bid as an additional purchaser party or debt or equity financing source.

(v)    **Last Bidder Out**.  Prior to the commencement of each Overbid round for any Auction, the Debtors reserve the right to announce (including in consultation with the Consultation Parties with respect to the first such applicable Overbid round announcement) that either: (a) such Overbid round will be a "Last Bidder Out" round, during which the Acceptable Bidder with the lowest Overbid for that Auction will not be permitted to participate in the subsequent Overbid round(s) for that Auction; or (b) the following two Overbid rounds will be "Last Bidder Out" rounds, such that any Acceptable Bidder with the lowest Overbid in each of those two consecutive rounds will not be permitted to participate in the subsequent Overbid round(s) for that Auction.  For the avoidance of doubt, any Acceptable Bidder submitting the lowest Overbid for a Real Property Asset shall not be excluded from participating in any other Auction for which it is not the lowest Overbid.

(vi)    **Closing the Auction.**  The Auction (if any) shall continue until there is only one Qualified Bid for a particular group of Assets that the Debtors determine, in their reasonable business judgment and in consultation with the Consultation Parties, to

21

be the highest or otherwise best Qualified Bid for the applicable Assets. Such Qualified Bid shall be designated the "<u>Winning Bid</u>" (or Back-Up Bid, as applicable, and the Qualified Bidder who submitted the Winning Bid, the "<u>Winning Bidder</u>") with respect to its proposed Acquired Assets, at which time the Auction (if any) with respect to such Asset(s) shall be closed pending entry of the applicable Sale Order; *provided* that (1) such Auction (if any) shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction (if any) to the then Prevailing Highest Bid; and (2) the Debtors' designation of a Qualified Bid as a Winning Bid (or Back-Up Bid, as applicable) shall be subject to and conditioned on finalization of definitive documentation and the Court's approval of such Winning Bid (or Back-Up Bid, as applicable), applicable regulatory and third-party approvals, and the timely consummation of the Sale Transaction contemplated thereby. As soon as reasonably practicable after the designation of a Winning Bid (or Back-Up Bid, as applicable), the Debtors, in consultation with the Consultation Parties, shall finalize definitive documentation to implement the terms of such Winning Bid (or Back-Up Bid, as applicable) and cause such definitive documentation to be filed with the Court.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors, in consultation with the Consultation Parties, may consider the following factors in addition to any other factors that the Debtors, in consultation with the Consultation Parties, deem appropriate: (a) the amount and nature of the total consideration, which includes, but is not limited to, assumed liabilities related to the assets being sold (*e.g.*, administrative liabilities, cure payments), and the amount of executory contracts and leased locations being assumed; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the Sale Transaction contemplated by the Bid; and (d) the tax consequences of such Qualified Bid; and (e) the value and/or costs or other liabilities of any unsold Asset(s).

For the avoidance of doubt, the Debtors, in consultation with the Consultation Parties, may determine to select more than one Winning Bid and more than one Winning Bidder (and/or more than one Back-Up Bid and more than one Back-Up Bidder, in which event such Back-Up Bids may provide for groupings of Assets that are different from the groupings of Assets reflected in the Winning Bid(s)) for separate portions of the Assets.

(vii)    <u>**No Collusion; Good Faith Offer.**</u>  Each Qualified Bidder participating at the Auction (if any) will be required to confirm on the record at the Auction (if any) that (1) such Qualified Bidder has not engaged in any collusion with respect to the bidding process (2) such Qualified Bidders' Qualified Bid is a good faith and irrevocable offer and such Qualified Bidder intends to consummate the Sale Transaction contemplated by its Qualified Bid if such Qualified Bid is the Winning Bid (or Back-Up Bid, as applicable) with respect to the applicable Acquired Assets, and (3) such Qualified Bid will serve as the Back-Up Bid (as defined below).

(viii)  **Rejection of Bids.**  The Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may reject, at any time before entry of an order of the Court approving a Winning Bid (or Back-Up Bid, as applicable), any Bid that the Debtors determine, after consultation with the Consultation Parties, is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code and/or these Bidding Procedures, or (3) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

(ix)  **Unsold Assets.**  The Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may conduct a process for the sale of any unsold Assets not included in any Winning Bid(s).

## 12.   DESIGNATION OF A BACK-UP BIDDER.

If for any reason a Winning Bidder with respect to particular Assets fails to consummate the Winning Bid for a particular set of Assets within the time permitted after the entry of the Sale Order approving the Sale to the Winning Bidder, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid for such Assets (each, a "Back-Up Bidder"), as determined by the Debtors after consultation with the Consultation Parties, at the conclusion of the Auction with respect to such Assets (if any) and announced at that time to all the Qualified Bidders participating therein and as set forth in the Sale Order, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the Sale Transaction pursuant to such Bid as soon as is commercially reasonable without further order of the Bankruptcy Court (or Canadian Court (as applicable)) upon at least twenty-four (24) hours advance notice, which notice will be filed with the Court (and the Canadian Court (as applicable)).

Upon designation of any Back-Up Bidder at the Auction (if any), its Back-Up Bid must remain open and irrevocable until the earlier of (i) the closing of the transactions contemplated by the Winning Bid notwithstanding any outside date set forth in such Back-Up Bidder's proposed purchase agreement or the chapter 11 plan and (ii) the date that is four (4) months following the conclusion of the applicable Auction (if any).  In the case of any Back-Up Bid to a Stalking Horse Bid (if any), such Back-Up Bid must remain open and irrevocable through any outside date set forth in the applicable Stalking Horse Agreement.

## 13.   FIDUCIARY OUT.

Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or its board of directors, board of managers, or similar governing body to take any action or to refrain from taking any action with respect to any Sale Transaction or these Bidding Procedures solely to the extent such Debtor or governing body determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, until the entry of the applicable Sale Order, the

Debtors and their respective directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to: (A) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Assets (each, an "Alternate Proposal"); (B) provide access to non-public information concerning the Debtors and the Assets to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (C) maintain or continue discussions or negotiations with respect to any Alternate Proposal; (D) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of any Alternate Proposal; and (E) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

## 14.     "AS IS, WHERE IS".

Consummation of any Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted and agreed to by the Debtors, in consultation with the Consultation Parties, in the executed definitive written documentation for the applicable Sale Transaction (the "Definitive Sale Documents").   Unless otherwise specifically accepted and agreed to by the Debtors in the Definitive Sale Documents, all of the Debtors' right, title, and interest in and to the Asset or Assets disposed of in any applicable Sale Transaction will be transferred to the Winning Bidder (or Back-Up Bidder, as applicable) free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) of the Bankruptcy Code.

By submitting a Bid, each bidder will be deemed to acknowledge and represent that it (A) has had an opportunity to conduct adequate due diligence regarding the Debtors and the proposed Sale Transaction prior to making its Bid and no further due diligence is or shall be required, (B) has relied solely on its own independent review, investigation, and inspection of any document, including executory contracts and unexpired leases, in making its Bid, and (C) did not rely on or receive from any person or entity (including any of the Debtors or their advisors or other representatives) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the proposed Sale Transaction or the completeness of any information provided in connection with the proposed Sale Transaction or the Auction (if any), except as may be set forth in the Definitive Sale Documents.

## 15.     COMMISSIONS.

The Debtors shall be under no obligation whatsoever to pay any commissions, fees, or expenses to any bidder's agent, advisor, or broker.  Any and all commissions, fees, or expenses for any such agents, advisors, or brokers shall be paid by the applicable bidder at such bidder's discretion.  In no case shall any commissions, fees, or expenses for any bidder's agent, advisor, or broker be deducted from any proceeds derived from any Sale of the Assets.  This Section 15 shall not apply to any Bid Protections that become payable pursuant to the terms of a Stalking Horse Agreement.

DOCS_DE:244750.1 96859/001

## 16.    RESERVATION OF RIGHTS.

The Debtors shall be entitled to modify these Bidding Procedures in their reasonable business judgment in consultation with the Consultation Parties in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction (if any), additional customary terms and conditions on a Sale Transaction, including:  (A) extending the deadlines set forth in these Bidding Procedures; (B) adjourning the Auction at the Auction; (C) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if any); (D) canceling the Auction; and (E) rejecting any or all Bids or Qualified Bids for any Assets; *provided*, *however*, that notwithstanding anything herein to the contrary, the Debtors shall not amend or modify these Bidding Procedures or the bidding process (i) to reduce or otherwise modify their obligations hereunder to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court, (ii) to limit or modify the terms and agreements set forth in the DIP Loan Documents or the UST Cash Collateral Orders in a manner that adversely affects the Prepetition Secured Parties, the Prepetition UST Secured Parties, the Junior DIP Secured Parties, and the Postpetition B-2 Secured Parties, in each case without the prior written consent of such adversely affected party(ies), to be granted or withheld in each of their discretion, or (iii) to impair or modify, in any material respect, the rights and obligations of the Real Estate Stalking Horse Bidder under the Real Estate Stalking Horse APA or otherwise violate the Real Estate Stalking Horse APA or affect the Real Estate Stalking Horse Bidder in a manner that would reasonably be expected to have a material and adverse effect on the Real Estate Stalking Horse Bidder that is disproportionate to the Real Estate Stalking Horse Bidder as compared to the effect on other Qualified Bidders for the Owned Properties subject of the Real Estate Stalking Horse APA generally.  All such modifications and additional rules will be communicated to each of the Consultation Parties and Qualified Bidders; *provided* that to the extent such modifications occur at the applicable Auction (if any), disclosure of such modifications will be limited to those parties in attendance at such Auction.

## 17.    CONSENT TO JURISDICTION.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court (and, if applicable, the Canadian Court) and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of these Bidding Procedures.

## 18.    SALE HEARING.

The Court shall hold one or more hearings to consider approval of the Winning Bid(s) (and Back-Up Bid(s), as applicable) and the Sale Transaction(s) contemplated thereby (each, a "Sale Hearing").

If the Winning Bid(s) (and Back-Up Bid(s), as applicable) and the Sale Transaction(s) contemplated thereby contemplate the Sale(s) of Canadian Assets, the Foreign Representative shall apply to the Canadian Court for a Canadian Sale Recognition Order as soon as practicable following the applicable Sale Hearing and entry of the applicable Sale Order.

**The Sale Hearing for the Rolling Stock shall be held on October 27, 2023, and the Sale Hearing for all other Assets (including the Real Property Assets) shall be held on December 12, 2023, in each case subject to the availability of the Court. The Sale Hearings may, in each case, be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending written notice to all Qualified Bidders and Consultation Parties prior to, or by making an announcement at, the Sale Hearing(s), or in the alternative by filing a revised agenda with the Court after consultation with the Consultation Parties. No further notice of any such continuance will be required to be provided to any bidder or other party.**

## 19.     RETURN OF DEPOSIT.

Any Deposits provided by Qualified Bidders shall be held in one or more escrow accounts on terms acceptable to the Debtors. Any such Deposits will be returned to Qualified Bidders that are not Winning Bidders (or Back-Up Bidders, as applicable) on the date that is three business days after the Auction (if any). Any Deposit provided by a Winning Bidder (or Back-Up Bidder, as applicable) shall be applied to the Purchase Price of the applicable Sale Transaction at closing. Any Deposit provided by a Back-Up Bidder shall be returned to such Back-Up Bidder on the date that is three (3) business days following the date on which its Back-Up Bid is no longer required to be held open and irrevocable pursuant to section 12 of these Bidding Procedures.

If a Winning Bidder (or Back-Up Bidder, as applicable) fails to consummate the Sale Transaction contemplated by its Winning Bid (or Back-Up Bid, as applicable) because of a breach by such Winning Bidder (or Back-Up Bidder, as applicable), the Debtors will not have any obligation to return any Deposit provided by such Winning Bidder (or Back-Up Bidder, as applicable), which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates.

**<u>Exhibit A</u>**

**Bid Form A**

Exhibit A
Owned Properties

| | | | | | Indicate % Premium --> | - | - | - | - | - | - |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Aggregate Offer Price** | | | | | $- | $- | $- | $- | $- | $- | $- |
| | | | | | **Offer Price by** | | | | | | |
| Number | Property Name | Address | City | State | Property | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 |
| Y421 | Birmingham, AL | 3518 Industrial Parkway | Birmingham | AL | | | | | | | |
| Y409 | Decatur, AL | 1901 Highway 20 West | Decatur | AL | | | | | | | |
| Y429 | Mobile, AL | 1111 Virginia Street | Mobile | AL | | | | | | | |
| Y415 | Montgomery, AL | 5680 Old Hayneville Road | Montgomery | AL | | | | | | | |
| Y580 | Little Rock, AR | 4500 W 65th Street | Little Rock | AR | | | | | | | |
| Y581 | Springdale, AR | 1543 Ford Avenue | Springdale | AR | | | | | | | |
| R858 | Lake Havasu City, AZ | 1951 San Juan Drive | Lake Havasu City | AZ | | | | | | | |
| R871 | Phoenix, AZ | 3045 S 43rd Avenue | Phoenix | AZ | | | | | | | |
| Y835 | Flagstaff, AZ | 1814 N Main Street | Flagstaff | AZ | | | | | | | |
| Y845 | Nogales, AZ | 2859 W Valle Verde Drive | Nogales | AZ | | | | | | | |
| Y842 | Tucson, AZ | 601 W Flores Street | Tucson | AZ | | | | | | | |
| R600 | Bakersfield, CA | 4901 Lisa Marie Court | Bakersfield | CA | | | | | | | |
| R519 | Fresno, CA | 4556 S Chestnut Avenue | Fresno | CA | | | | | | | |
| R790 | Sacramento, CA | 620 Harbor Boulevard | W Sacramento | CA | | | | | | | |
| Y814 | Fresno, CA | 2440 E Church Avenue | Fresno | CA | | | | | | | |
| Y625 | Oxnard, CA | 2685 Sherwin Avenue | Ventura | CA | | | | | | | |
| Y809 | Sacramento, CA | 3210 52nd Avenue | Sacramento | CA | | | | | | | |
| Y813 | Tracy, CA | 1535 E Pescadero Avenue | Tracy | CA | | | | | | | |
| Y894 | Grand Junction, CO | 3207 "F" Road | Clifton | CO | | | | | | | |
| N139 | Southington, CT | 130 Canal Street | Southington | CT | | | | | | | |
| Y177 | Salisbury, MD | 26902 Bethel Concord Road | Seaford | DE | | | | | | | |
| Y184 | Wilmington, DE | 316 New Churchmans Road | New Castle | DE | | | | | | | |
| Y728 | Fort Myers, FL | 2635 Rockfill Road | Fort Myers | FL | | | | | | | |
| Y730 | Jacksonville, FL | 3404 Clifford Lane | Jacksonville | FL | | | | | | | |
| Y757 | West Palm Beach, FL | 1400 SW 30th Avenue | Boynton Beach | FL | | | | | | | |
| H403 | Atlanta, GA | 4700 Highway 42 | Ellenwood | GA | | | | | | | |
| Y684 | Augusta, GA | 4200 Wheeler Road | Martinez | GA | | | | | | | |
| Y433 | Chattanooga, TN | 345 Roadway Drive | Ringgold | GA | | | | | | | |
| Y412 | LaGrange, GA | 677 Hudson Road | LaGrange | GA | | | | | | | |
| Y414 | Macon, GA | 4241 Interstate Drive | Macon | GA | | | | | | | |
| Y685 | Savannah, GA | 3501 Edwin Avenue | Savannah | GA | | | | | | | |
| Y800 | Honolulu, HI | 94-164 Leokane Street | Waipahu | HI | | | | | | | |
| H375 | Des Moines, IA | 6144 NE 22nd Street | Des Moines | IA | | | | | | | |
| H397 | Omaha, NE | 3219 Nebraska Avenue | Council Bluffs | IA | | | | | | | |
| Y389 | Mason City, IA | 1514 S Pierce Avenue | Mason City | IA | | | | | | | |
| Y860 | Sioux City, IA | 2425 Bridgeport Drive | Sioux City | IA | | | | | | | |
| H320 | Chicago, IL | 8601 W 53rd Street | McCook | IL | | | | | | | |
| H337 | Danville, IL | 72 Eastgate Drive | Danville | IL | | | | | | | |
| H368 | Lincoln, IL | 700 NE Arch Street | Atlanta | IL | | | | | | | |
| H419 | St. Louis, MO | 24 Gateway Commerce | Edwardsville | IL | | | | | | | |
| H323 | Wheeling, IL | 1100 Chaddick Drive | Wheeling | IL | | | | | | | |
| Y309 | Chicago Heights, IL | 2000 East Lincoln Highway | Chicago Heights | IL | | | | | | | |
| Y303 | Chicago North, IL | 1000 Chaddick Drive | Wheeling | IL | | | | | | | |
| Y314 | Peoria, IL | 780 W Birchwood Street | Morton | IL | | | | | | | |
| Y344 | Quincy, IL | 2620 N 36th Street | Quincy | IL | | | | | | | |
| Y371 | Rock Island, IL | 3700 78th Avenue West | Rock Island | IL | | | | | | | |
| H322 | Evansville, IN | 8901 N Kentucky Avenue | Evansville | IN | | | | | | | |
| H341 | Fort Wayne, IN | 4320 Merchant Road | Fort Wayne | IN | | | | | | | |
| H357 | Indianapolis, IN | 2530 S Tibbs Avenue | Indianapolis | IN | | | | | | | |
| H244 | Louisville, KY | 4885 Keystone Boulevard | Jeffersonville | IN | | | | | | | |
| Y246 | Fort Wayne, IN | 3513 Adams Center Road | Fort Wayne | IN | | | | | | | |
| Y324 | Indianapolis, IN | 1818 S High School Road | Indianapolis | IN | | | | | | | |
| H364 | Kansas City, KS | 9711 State Avenue | Kansas City | KS | | | | | | | |
| Y202 | Bowling Green, KY | 300 New Porter Pike | Bowling Green | KY | | | | | | | |
| Y245 | Lexington, KY | 460 Transport Court | Lexington | KY | | | | | | | |
| Y348 | Paducah, KY | 5151 Charter Oak Drive | Paducah | KY | | | | | | | |
| Y404 | Alexandria, LA | 333 N 3rd Street | Alexandria | LA | | | | | | | |
| Y473 | Baton Rouge, LA | 956 Hwy 190 West | Port Allen | LA | | | | | | | |
| Y480 | Monroe, LA | 158 Parker Road | Monroe | LA | | | | | | | |

Exhibit A
Owned Properties

| | | | | | Indicate % Premium --> | - | - | - | - | - | - |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Aggregate Offer Price | | | | | $- $- $- $- $- $- $- | | | | | | |
| | | | | | Offer Price by | | | | | | |
| Number | Property Name | Address | City | State | Property | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 |
| Y471 | New Orleans, LA | 12169 Old Gentilly Road | New Orleans | LA | | | | | | | |
| Y100 | Boston, MA | 95 Concord Street | North Reading | MA | | | | | | | |
| Y186 | Worcester, MA | 464 Hartford Turnpike | Shrewsbury | MA | | | | | | | |
| Y155 | Baltimore, MD | 6311 E Lombard Street | Baltimore | MD | | | | | | | |
| Y153 | Hagerstown, MD | 311 East Oak Ridge Drive | Hagerstown | MD | | | | | | | |
| Y183 | Washington, DC | 7600 Preston Drive | Landover | MD | | | | | | | |
| Y154 | Portland, ME | 75 Eisenhower Drive | Westbrook | ME | | | | | | | |
| Y191 | Waterville, ME | 44 Sheridan Drive | Fairfield | ME | | | | | | | |
| H263 | Birch Run, MI | 11740 Dixie Highway | Birch Run | MI | | | | | | | |
| H262 | Detroit, MI | 27411 Wick Road | Romulus | MI | | | | | | | |
| H288 | Gaylord, MI | 1830 Calkins Road | Gaylord | MI | | | | | | | |
| H358 | Jackson, MI | 1059 Hurst Road | Jackson | MI | | | | | | | |
| Y261 | Detroit, MI | 22701 Van Born Road | Taylor | MI | | | | | | | |
| Y272 | Grand Rapids, MI | 2180 Chicago Drive SW | Wyoming | MI | | | | | | | |
| Y223 | Pontiac, MI | 1280 Joslyn Avenue | Pontiac | MI | | | | | | | |
| H388 | Owatonna, MN | 200 32nd Avenue NW | Owatonna | MN | | | | | | | |
| H340 | Worthington, MN | 172 Industrial Parkway | Jackson | MN | | | | | | | |
| Y370 | Duluth, MN | 4425 W First Street | Duluth | MN | | | | | | | |
| Y347 | St. Paul, MN | 12400 Dupont Avenue S | Burnsville | MN | | | | | | | |
| H548 | Joplin, MO | 2702 Newman Road | Joplin | MO | | | | | | | |
| Y343 | Columbia, MO | 8989 E Columbus Court | Columbia | MO | | | | | | | |
| Y547 | Springfield, MO | 5575 E State Hwy 00 | Strafford | MO | | | | | | | |
| Y621 | St. Louis, MO | 400 Barton Street | St. Louis | MO | | | | | | | |
| Y385 | Memphis, TN | 8100 W Sandidge Road | Olive Branch | MS | | | | | | | |
| Y455 | Jackson, MS | 102 Carrier Boulevard | Richland | MS | | | | | | | |
| Y462 | Tupelo, MS | 2226 McCullough Boulevard | Tupelo | MS | | | | | | | |
| H329 | Charlotte, NC | 5201 Sunset Road | Charlotte | NC | | | | | | | |
| Y679 | Fayetteville, NC | 1061 River Road | Fayetteville | NC | | | | | | | |
| Y671 | Greensboro, NC | 1255 NC Highway 66 S | Kernersville | NC | | | | | | | |
| Y656 | Jacksonville, NC | 161 Center Street | Jacksonville | NC | | | | | | | |
| Y623 | Wilmington, NC | 3511 Highway 421 N | Wilmington | NC | | | | | | | |
| Y650 | Wilson, NC | 555 Jeffreys Road | Rocky Mount | NC | | | | | | | |
| Y864 | Fargo, ND | 2502 7th Avenue N | Fargo | ND | | | | | | | |
| Y863 | Kearney, NE | 614 Third Avenue | Kearney | NE | | | | | | | |
| Y381 | Omaha, NE | 4480 S 90th Street | Omaha | NE | | | | | | | |
| Y140 | Manchester, NH | 9 Cote Lane | Bedford | NH | | | | | | | |
| N114 | Philadelphia, PA | 2300 Garry Road | Cinnaminson | NJ | | | | | | | |
| N124 | Trenton, NJ | 15 Thomas J. Rhodes Industrial | Mercerville | NJ | | | | | | | |
| Y165 | Atlantic City, NJ | 1641 Eden Road | Millville | NJ | | | | | | | |
| Y859 | Albuquerque, NM | 900 64th Street NW | Albuquerque | NM | | | | | | | |
| Y878 | Las Vegas, NV | 5049 W Post Road | Las Vegas | NV | | | | | | | |
| N130 | Buffalo, NY | 6640 Transit Road | Williamsville | NY | | | | | | | |
| N119 | Rochester, NY | 35 Transport Drive | Rochester | NY | | | | | | | |
| N118 | Syracuse, NY | 7173 Schuyler Road | East Syracuse | NY | | | | | | | |
| H634 | Buffalo, NY | 6650 Transit Road | Williamsville | NY | | | | | | | |
| Y104 | Albany, NY | 37 Frontage Road | Glenmont | NY | | | | | | | |
| Y205 | Buffalo, NY | 66 Milens Road | Tonawanda | NY | | | | | | | |
| Y132 | Long Island, NY | 99 Express Street | Plainview | NY | | | | | | | |
| Y123 | Maybrook, NY | 1000 Homestead Avenue | Maybrook | NY | | | | | | | |
| Y256 | Rochester, NY | 1575 Emerson Street | Rochester | NY | | | | | | | |
| Y266 | Syracuse, NY | 7138 Northern Boulevard | East Syracuse | NY | | | | | | | |
| H208 | Akron, OH | 3140 Massillon Road | Akron | OH | | | | | | | |
| H332 | Cleveland, OH | 10720 Memphis Avenue | Brooklyn | OH | | | | | | | |
| H330 | Columbus, OH | 4800 Journal Street | Columbus | OH | | | | | | | |
| H339 | Dayton, OH | 2700 Valley Pike | Dayton | OH | | | | | | | |
| H290 | Huntington, OH | 95 Holland Drive | Gallipolis | OH | | | | | | | |
| H425 | Toledo, OH | 20820 Midstar Drive | Bowling Green | OH | | | | | | | |
| H346 | Youngstown, OH | 10855 Market Street | N Lima | OH | | | | | | | |
| Y211 | Akron, OH | 1275 Ohio Ave | Copley | OH | | | | | | | |

Exhibit A
Owned Properties

| | | | | | Aggregate Offer Price | $- | $- | $- | $- | $- | $- | $- |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | *Indicate % Premium -->* | - | - | - | - | - | - | - |
| Number | Property Name | Address | City | State | Offer Price by Property | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 | |
| Y216 | Cincinnati, OH | 10074 Princeton-Glendale Road | Cincinnati | OH | | | | | | | | |
| Y218 | Cleveland, OH | 5250 Brecksville Road | Richfield | OH | | | | | | | | |
| Y857 | Columbus, OH | 5400 Fisher Road | Columbus | OH | | | | | | | | |
| Y243 | Dayton, OH | 2801 Valley Pike | Dayton | OH | | | | | | | | |
| Y250 | Lima, OH | 1505 Bowman Road | Lima | OH | | | | | | | | |
| Y290 | Parkersburg, WV | 300 Drag Strip Road | Belpre | OH | | | | | | | | |
| Y251 | Toledo, OH | 4431 South Avenue | Toledo | OH | | | | | | | | |
| Y212 | Youngstown, OH | 3020 Gale Drive | Hubbard | OH | | | | | | | | |
| Y531 | Oklahoma City, OK | 8000 SW 15th Street | Oklahoma City | OK | | | | | | | | |
| Y240 | Oshawa, ON | 285 Blair Street | Oshawa | ON | | | | | | | | |
| Y289 | Woodstock, ON | 1187 Welford Place | Woodstock | ON | | | | | | | | |
| R849 | Medford, OR | 4000 Hamrick Road | Central Point | OR | | | | | | | | |
| Y635 | Portland, OR | 10510 N Vancouver Way | Portland | OR | | | | | | | | |
| N103 | Harrisburg, PA | 475 Terminal Road | Camp Hill | PA | | | | | | | | |
| N128 | Pittsburgh, PA | 2950 Grand Avenue | Neville Island | PA | | | | | | | | |
| N102 | Reading, PA | 3725 Pottsville Pike | Reading | PA | | | | | | | | |
| Y232 | Erie, PA | 3111 McCain Avenue | Erie | PA | | | | | | | | |
| Y135 | Harrisburg, PA | 100 Roadway Drive | Carlisle | PA | | | | | | | | |
| Y143 | Lansdale, PA | 750 County Line Road | Line Lexington | PA | | | | | | | | |
| Y152 | Philadelphia, PA | 2627 State Road | Bensalem | PA | | | | | | | | |
| Y178 | Scranton, PA | 1284 S Main Road | Mountain Top | PA | | | | | | | | |
| Y275 | Stanhope, PQ | 930 Route 147 | Stanhope | PQ | | | | | | | | |
| N105 | Providence, RI | 2110 Plainfield Pike | Cranston | RI | | | | | | | | |
| Y108 | Providence, RI | 55 Industrial Road | Cumberland | RI | | | | | | | | |
| H328 | Columbia, SC | 3705 Highway 321 | West Columbia | SC | | | | | | | | |
| H688 | Charleston, SC | 2243 Wren Street | Charleston | SC | | | | | | | | |
| Y683 | Columbia, SC | 1308 Pineview Drive | Columbia | SC | | | | | | | | |
| Y695 | Florence, SC | 2257 S Main Street | Florence | SC | | | | | | | | |
| Y682 | Spartanburg, SC | 580 Shackelford Road | Piedmont | SC | | | | | | | | |
| H366 | Knoxville, TN | 5409 National Avenue | Knoxville | TN | | | | | | | | |
| H395 | Nashville, TN | 500 Oak Bluff Lane | Goodlettsville | TN | | | | | | | | |
| Y435 | Jackson, TN | 88 E L Morgan Drive | Jackson | TN | | | | | | | | |
| Y432 | Knoxville, TN | 1212 Hilton Road | Knoxville | TN | | | | | | | | |
| Y431 | Memphis, TN | 3310 Gill Road | Memphis | TN | | | | | | | | |
| Y422 | Nashville, TN | 7300 Centennial Boulevard | Nashville | TN | | | | | | | | |
| Y522 | Austin, TX | 9018 Tuscany Way | Austin | TX | | | | | | | | |
| Y511 | Dallas, TX | 200 North Beltline Road | Irving | TX | | | | | | | | |
| Y851 | El Paso, TX | 1330 Henry Brennan Drive | El Paso | TX | | | | | | | | |
| Y525 | Fort Worth, TX | 5501 Campus Drive | Fort Worth | TX | | | | | | | | |
| Y557 | Laredo, TX | 8011 Killam Industrial Boulevard | Laredo | TX | | | | | | | | |
| Y555 | San Antonio, TX | 111 Gembler Road | San Antonio | TX | | | | | | | | |
| Y515 | Sherman, TX | 211 Dorset Drive | Sherman | TX | | | | | | | | |
| Y574 | Waco, TX | 3230 Clay Avenue | Waco | TX | | | | | | | | |
| R527 | Salt Lake City, UT | 4375 W 1385 S | Salt Lake City | UT | | | | | | | | |
| Y615 | Norfolk, VA | 1313 Cavalier Boulevard | Chesapeake | VA | | | | | | | | |
| Y172 | Richmond, VA | 9600 Express Lane | Richmond | VA | | | | | | | | |
| Y180 | Bellows Falls, VT | 17 Transport Park | Bellows Falls | VT | | | | | | | | |
| Y188 | Burlington, VT | 199 Krupp Drive | Williston | VT | | | | | | | | |
| H428 | Wausau, WI | 501 Spring Road | Mosinee | WI | | | | | | | | |
| Y336 | Eau Claire, WI | 3617 McIntyre Avenue | Eau Claire | WI | | | | | | | | |
| Y394 | Madison, WI | 2573 Progress Road | Madison | WI | | | | | | | | |
| Y313 | Milwaukee, WI | 6880 S Howell Avenue | Oak Creek | WI | | | | | | | | |
| Y220 | Clarksburg, WV | 6399 Saltwell Road | Bridgeport | WV | | | | | | | | |
| R524 | Burlington, WA[1] | 9501 24th Place West | Everett | WA | | | | | | | | |
| | Goodland, KS | 2815 S Highway 27 | Goodland | KS | | | | | | | | |
| | Kansas City, MO | 8724 Leeds Road | Kansas City | MO | | | | | | | | |

Notes:
(1) Burlington, WA property is subject to a land lease; however, building is owned

**Exhibit B**

**Bid Form B**

**Exhibit B**
Leased Properties

| | | | | | Aggregate Offer Price | $- | $- | $- | $- | $- | $- | $- |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | | | | | Indicate % Premium --> | - | - | - | - | - | - | - |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Number** | **Property Name** | **Address** | **City** | **State** | **Offer Price by Property** | **Package 1** | **Package 2** | **Package 3** | **Package 3** | **Package 4** | **Package 5** | |
| Y626 | Calgary, AB | 75 Dufferin Place SE | Calgary | AB | | | | | | | | |
| Y627 | Edmonton, AB | 16060 128 Avenue | Edmonton | AB | | | | | | | | |
| Y841 | Phoenix, AZ | 2021 S 51st Avenue | Phoenix | AZ | | | | | | | | |
| Y899 | Vancouver, BC | 3985 Still Creek Avenue | Burnaby | BC | | | | | | | | |
| Y813 | Merced, CA | 841 W M. L. King, Jr. Way | Merced | CA | | | | | | | | |
| Y641 | San Diego, CA | 9525 Padgett Street | San Diego | CA | | | | | | | | |
| Y896 | Orange, CA | 700 N Eckhoff Street | Orange | CA | | | | | | | | |
| Y661 | Sun Valley, CA | 11266 & 11300 Peoria Street | Sun Valley | CA | | | | | | | | |
| R517 | Los Angeles, CA | 11937 Regentview Avenue | Downey | CA | | | | | | | | |
| R866 | Visalia, CA | 1619 North Plaza Drive | Visalia | CA | | | | | | | | |
| R512 | Redding, CA | 2065B Alexander Avenue | Anderson | CA | | | | | | | | |
| Y840 | Calexico, CA | 2451 Portico Boulevard | Calexico | CA | | | | | | | | |
| Y820 | Adelanto, CA | 17401 Adelanto Road | Adelanto | CA | | | | | | | | |
| R390 | San Jose, CA | 751 Nuttman Avenue | Santa Clara | CA | | | | | | | | |
| Y830 | Bloomington, CA | 18298 Slover Avenue | Bloomington | CA | | | | | | | | |
| Y808 | Chula Vista, CA | 6930 Cactus Court | San Diego | CA | | | | | | | | |
| R575 | Orange, CA | 2200 N Batavia Street | Orange | CA | | | | | | | | |
| Y805 | Santa Rosa, CA | 270 Dutton Avenue | Santa Rosa | CA | | | | | | | | |
| Y847 | Gardena, CA | 15400 S Main Street | Gardena | CA | | | | | | | | |
| R829 | Fontana, CA | 10661 Etiwanda Avenue | Fontana | CA | | | | | | | | |
| Y811 | San Francisco, CA | 499 Valley Drive | Brisbane | CA | | | | | | | | |
| R535 | Eureka, CA | 1100 W Del Norte Street | Eureka | CA | | | | | | | | |
| Y833 | Pomona, CA | 1130 South  Reservoir Street | Pomona | CA | | | | | | | | |
| Y783 | Pico Rivera, CA | 9933 Beverly Boulevard | Pico Rivera | CA | | | | | | | | |
| R834 | Santa Maria, CA | 223 East  Roemer Way | Santa Maria | CA | | | | | | | | |
| Y889 | Oakland, CA | 25555 Clawiter Road | Hayward | CA | | | | | | | | |
| YOVH | San Jose, CA | 1700 Montague Expressway | San Jose | CA | | | | | | | | |
| Y891 | Colorado Springs, CO | 4810 Northpark Drive | Colorado Springs | CO | | | | | | | | |
| R589 | Denver, CO | 9900 E 102nd Avenue | Commerce City | CO | | | | | | | | |
| R831 | Grand Junction, CO | 1547 Independent Avenue, Unit 1 | Grand Junction | CO | | | | | | | | |
| Y890 | Denver, CO | 14700 Smith Road | Aurora | CO | | | | | | | | |
| Y145 | Middletown, CT | 177 W Johnson Ave | Cheshire | CT | | | | | | | | |
| Y714 | Ocala, FL | 410 SW 52nd Avenue | Ocala | FL | | | | | | | | |
| Y423 | Orlando, FL | 1265 LaQuinta Drive | Orlando | FL | | | | | | | | |
| Y754 | Tampa, FL | 9801 Palm River Rd | Tampa | FL | | | | | | | | |
| Y740 | Miami, FL | 11301 NW 134th Street | Miami | FL | | | | | | | | |
| Y401 | Athens, GA | 175 Horace Head Road | Jefferson | GA | | | | | | | | |
| Y402 | Atlanta, GA | 1892 Airport Industrial Park Drive | Marietta | GA | | | | | | | | |
| Y411 | South Atlanta, GA | 3934 Thurman Road | Conley | GA | | | | | | | | |
| Y705 | Valdosta, GA | 1250 Sunset Drive | Thomasville | GA | | | | | | | | |
| R815 | Boise, ID | 1405 N Olive Avenue | Meridian | ID | | | | | | | | |
| R630 | Pocatello, ID | 14299 W US Highway 30 | Pocatello | ID | | | | | | | | |
| R660 | Twin Falls, ID | 304 6th Avenue W | Twin Falls | ID | | | | | | | | |
| Y318 | Bolingbrook, IL | 260 E Old Chicago Drive | Bolingbrook | IL | | | | | | | | |
| H360 | Joliet, IL | 3801 Mound Road | Joliet | IL | | | | | | | | |
| H319 | Rockford, IL | 1751 New Milford School Road | Rockford | IL | | | | | | | | |
| Y304 | Chicago West, IL | 2100 Rochester Drive | Montgomery | IL | | | | | | | | |
| Y355 | Decatur, IL | 3910 E. Harrison Ave | Decatur | IL | | | | | | | | |
| H311 | South Bend, IN | 5550 W Cleveland Road Ext | South Bend | IN | | | | | | | | |
| Y356 | Terre Haute, IN | 4900 N 13th Street | Terre Haute | IN | | | | | | | | |
| Y312 | South Bend, IN | 1415 S Olive Street | South Bend | IN | | | | | | | | |
| Y569 | Wichita, KS | 4931 South Hydraulic Avenue | Wichita | KS | | | | | | | | |
| Y367 | Salina, KS | 505 Graves Boulevard | Salina | KS | | | | | | | | |
| Y352 | Topeka, KS | 1621 NW Saline Street | Topeka | KS | | | | | | | | |
| Y548 | Baxter Springs, KS | 2600 Powell Road | Baxter Springs | KS | | | | | | | | |
| Y510 | Shreveport, LA | 1333 N Market Street | Shreveport | LA | | | | | | | | |
| N133 | Springfield, MA | 241B Bliss Street | West Springfield | MA | | | | | | | | |
| N109 | Boston, MA | 28 Sterling Road | North Billerica | MA | | | | | | | | |
| Y479 | Winnipeg, MB | 1400 Inkster Boulevard | Winnipeg | MB | | | | | | | | |

**Exhibit B**
Leased Properties

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aggregate Offer Price | | | | | $- | $- | $- | $- | $- | $- | $- | $- |
| | | | | Indicate % Premium --> | - | - | | | | | | |
| | | | | Offer Price by | | | | | | | | |
| Number | Property Name | Address | City | State | Property | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 | |
| N113 | Baltimore, MD | 6351 S Hanover Road | Elkridge | MD | | | | | | | | |
| Y230 | Iron Mountain, MI | 1001 Stephenson Street | Norway | MI | | | | | | | | |
| H350 | Grand Rapids, MI | 10151 South Division Avenue | Wayland | MI | | | | | | | | |
| H424 | Minneapolis, MN | 11220 Xeon Street NW | Coon Rapids | MN | | | | | | | | |
| Y346 | St. Cloud, MN | 8125 Old Highway Road North | St. Cloud | MN | | | | | | | | |
| H345 | Sikeston, MO | 830 Highway AA | Miner | MO | | | | | | | | |
| Y326 | Kansas City, MO | 3500 Booth Avenue | Kansas City | MO | | | | | | | | |
| R559 | Billings, MT | 833 Mellowney Lane | Billings | MT | | | | | | | | |
| R610 | Great Falls, MT | 4169 N Park Trail | Great Falls | MT | | | | | | | | |
| Y604 | Butte, MT | 122005 W Browns Gulch Road | Butte | MT | | | | | | | | |
| R633 | Missoula, MT | 7180 Kestrel Drive | Missoula | MT | | | | | | | | |
| Y616 | Raleigh, NC | 3215 US Highway 70 | Durham | NC | | | | | | | | |
| Y653 | Charlotte, NC | 11010 Reames Road | Charlotte | NC | | | | | | | | |
| H622 | Raleigh, NC | 1305 Kirkland Rd | Raleigh | NC | | | | | | | | |
| Y408 | Minot, ND | 720 64th SE | Minot | ND | | | | | | | | |
| Y602 | Bismarck, ND | 1955 Hancock Drive | Bismarck | ND | | | | | | | | |
| Y804 | Bridgeport, NE | 9971 U.S. Hwy 26 | Bridgeport | NE | | | | | | | | |
| Y122 | South Plainfield, NJ | 445 Hollywood Avenue | South Plainfield | NJ | | | | | | | | |
| Y111 | Kearny, NJ | 72 Second Street | Kearny | NJ | | | | | | | | |
| Y112 | Trenton, NJ | 49 Thomas J. Rhodes Industrial Park | Trenton | NJ | | | | | | | | |
| Y126 | Carlstadt, NJ | 700 Dell Road | Carlstadt | NJ | | | | | | | | |
| R507 | Elko, NV | 143 Main Street | Elko | NV | | | | | | | | |
| Y819 | Reno, NV | 1650 Kleppe Lane | Sparks | NV | | | | | | | | |
| R760 | Reno, NV | 1875 Industrial Way | Sparks | NV | | | | | | | | |
| ROVH1 | Las Vegas, NV | 4650 E Cheyenne Road | Las Vegas | NV | | | | | | | | |
| Y187 | Brooklyn, NY | 1313 Grand Street | Brooklyn | NY | | | | | | | | |
| N107 | Maspeth, NY | 58-60 Page Place | Maspeth | NY | | | | | | | | |
| Y150 | Mount Vernon, NY | 12 Dock Street | Mount Vernon | NY | | | | | | | | |
| Y237 | Plattsburgh, NY | 182 Kelly Road | Plattsburgh | NY | | | | | | | | |
| Y198 | Elmira, NY | 1620 Grand Central Avenue | Elmira | NY | | | | | | | | |
| Y116 | Deer Park, NY | 50 Burt Drive | Deer Park | NY | | | | | | | | |
| Y532 | Tulsa, OK | 14549 E Admiral Place | Tulsa | OK | | | | | | | | |
| Y249 | Ottawa, ON | 888 Belfast Road, Suite 210 | Ottawa | ON | | | | | | | | |
| Y268 | Toronto, ON | 6130 Netherhart Road | Mississauga | ON | | | | | | | | |
| Y258 | St. Catharines, ON | 281 Queenston Road | Niagara-On-The-Lake | ON | | | | | | | | |
| R506 | Eugene, OR | 3500 W First Street | Eugene | OR | | | | | | | | |
| R810 | Bend, OR | 1701 SW First Street | Redmond | OR | | | | | | | | |
| R836 | La Grande, OR | 1419 Jefferson Avenue | La Grande | OR | | | | | | | | |
| Y875 | Portland, OR | 6845 N Cutter Circle | Portland | OR | | | | | | | | |
| R509 | Roseburg, OR | 1899 SE Stephens Street | Roseburg | OR | | | | | | | | |
| N138 | Milton, PA | 3570 Broadway Road | Milton | PA | | | | | | | | |
| Y213 | Pittsburgh, PA | 70 Graham Street | McKees Rocks | PA | | | | | | | | |
| N121 | Altoona, PA | 200 Cayuga Avenue | Altoona | PA | | | | | | | | |
| Y201 | Bedford, PA | 198 Innovation Drive | Bedford | PA | | | | | | | | |
| N141 | Scranton, PA | 1212 O'Neil Highway | Dunmore | PA | | | | | | | | |
| Y203 | DuBois, PA | 116 Satterlee Road | DuBois | PA | | | | | | | | |
| Y158 | Allentown, PA | 2527 Brodhead Road | Bethlehem | PA | | | | | | | | |
| Y160 | Montreal, PQ | 1725 Chemin Saint Francois | Dorval | PQ | | | | | | | | |
| Y700 | San Juan, PR | State Road #165, KM 2.4 | Guaynabo | PR | | | | | | | | |
| Y182 | Sherbrooke, PQ | 5945 Chemin Saint-Elie | Sherbrooke | QC | | | | | | | | |
| Y668 | Watertown, SD | 2615 Lockheed Avenue | Watertown | SD | | | | | | | | |
| Y614 | Rapid City, SD | 900 E Omaha Street | Rapid City | SD | | | | | | | | |
| Y861 | Sioux Falls, SD | 3401 North 1st Avenue | Sioux Falls | SD | | | | | | | | |
| Y566 | Saskatoon, SK | 717 Cynthia Street | Saskatoon | SK | | | | | | | | |
| Y565 | Regina, SK | 920 Mackay Street | Regina | SK | | | | | | | | |
| Y644 | Kingsport, TN | 280 Humbolt Lane | Greeneville | TN | | | | | | | | |
| Y852 | Abilene, TX | 1201 China Street | Abilene, TX | TX | | | | | | | | |
| Y572 | Texarkana, TX | 8101 N Stateline Avenue | Texarkana | TX | | | | | | | | |
| Y521 | Houston, TX | 9415 Wallisville Road | Houston | TX | | | | | | | | |

**Exhibit B**
Leased Properties

| Aggregate Offer Price | | | | | $- | $- | $- | $- | $- | $- | $- |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | *Indicate % Premium -->* | - | - | - | - | - | - |
| Number | Property Name | Address | City | State | Offer Price by Property | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 |
| Y551 | Corpus Christi, TX | 322 Hereford Road | Corpus Christi | TX | | | | | | | |
| Y558 | Eagle Pass, TX | 1013 Carleton Drive | Eagle Pass | TX | | | | | | | |
| Y556 | McAllen, TX | 3500 N McColl Road | McAllen | TX | | | | | | | |
| Y854 | Lubbock, TX | 1317 E 38th Street | Lubbock | TX | | | | | | | |
| Y508 | Garland, TX | 12340 E Northwest Highway | Garland | TX | | | | | | | |
| Y853 | Midland, TX | 3924 South County Road 1290 | Odessa | TX | | | | | | | |
| Y881 | Salt Lake City, UT | 2410 S 2700 W | Salt Lake City | UT | | | | | | | |
| Y865 | St. George, UT | 625 N 1400 East | St. George | UT | | | | | | | |
| R527 | Salt Lake City, UT | 695 W 1700 S, Building 7 | Logan | UT | | | | | | | |
| Y617 | Roanoke, VA | 1665 Seibel Drive NE | Roanoke | VA | | | | | | | |
| Y647 | Staunton, VA | 53 Expo Road | Fishersville | VA | | | | | | | |
| Y149 | Manassas, VA | 10451 Colonel Court | Manassas | VA | | | | | | | |
| Y868 | Pasco, WA | 4905 N Railroad Avenue | Pasco | WA | | | | | | | |
| R880 | Tacoma, WA | 802 E 11th Street | Tacoma | WA | | | | | | | |
| R870 | Yakima, WA | 1928-C Rudkin Road | Union Gap | WA | | | | | | | |
| R554 | Wenatchee, WA | 5537 Enterprise Drive | E Wenatchee | WA | | | | | | | |
| Y873 | Tacoma, WA | 2807 70th Avenue East | Fife | WA | | | | | | | |
| Y642 | Seattle, WA | 12855 48th Avenue South | Tukwila | WA | | | | | | | |
| R915 | Spokane, WA | 3901 East Broadway | Spokane | WA | | | | | | | |
| ROVH2 | Seattle, WA | 19604 84th Avenue South | Kent | WA | | | | | | | |
| H386 | Milwaukee, WI | 6161 South 6th Street | Milwaukee | WI | | | | | | | |
| H396 | Tomah, WI | 400 Holland Street | Tomah | WI | | | | | | | |
| H349 | Appleton, WI | 2843 County Road II | Neenah | WI | | | | | | | |
| Y292 | Charleston, WV | 2201 6th Avenue | Charleston | WV | | | | | | | |
| Y629 | Casper, WY | 62 Copper Avenue | Evansville | WY | | | | | | | |
| Y607 | Cheyenne, WY | 101 Lexington Avenue, Suite 4 | Cheyenne | WY | | | | | | | |
| R560 | Buffalo, WY | 94 US Highway 16 East | Buffalo | WY | | | | | | | |

**EXHIBIT 2**

**Auction Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## NOTICE OF AUCTIONS FOR THE SALE OF THE DEBTORS' ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On September [●], 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to market and conduct an auction or auctions (if any) (each, an "Auction," and collectively the "Auctions") to sell the Assets free and clear of liens, claims, and other interests (except as may be set forth in the applicable definitive Sale documentation), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the applicable Sale proceeds. The Auction(s) (if any) will be governed by the bidding procedures approved pursuant to the Order and attached to the Order as Exhibit 1 thereto (the "Bidding Procedures").

Copies of the Order, the Bidding Procedures, and other documents related thereto, are available upon visiting the Debtors' restructuring website at https://dm.epiq11.com/YellowCorporation.

**Any person or entity who wishes to participate in the Auction(s) must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures. The Bid Deadline for the Rolling Stock (as defined in the Bidding Procedures) is October 13, 2023 at 5:00 p.m. (prevailing Eastern Time) and for the Non-Rolling Stock Assets (*e.g.*, Real Property Assets, Intellectual Property, and Other Assets (each as defined in the Bidding Procedures) is November 9, 2023 at 5:00 p.m. (prevailing Eastern Time).**

The Debtors intend to conduct one or more Auctions (if required) at which Auction(s) (if any) they will consider Qualified Bids (as defined in the Bidding Procedures) submitted to the Debtors and their advisors, by and pursuant to the Bidding Procedures and as set forth in the Order. With respect to the Assets

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Bidding Procedures, as applicable.

constituting Rolling Stock (as defined in the Bidding Procedures), the Debtors intend to commence the Auction (if required) on **October 18, 2023, at 10 a.m. (prevailing Eastern Time)**, either in-person or by videoconference or such other form of remote communication established by the Debtors (to be communicated to Qualified Bidders in advance); and, with respect to the Assets constituting Non-Rolling Stock Assets (*e.g.*, Real Property Assets, Intellectual Property, and Other Assets (each as defined in the Bidding Procedures)), the Debtors intend to commence the Auction (if required) on **November 27, 2023 at 2:30 p.m. (prevailing Eastern Time)** either in-person or by videoconference or such other form of remote communication established by the Debtors (to be communicated to Qualified Bidders in advance).

The Sale Hearing to consider approval of the Sale(s) of Assets constituting Rolling Stock to the Winning Bidder(s) at the applicable Auction will be held before the Honorable Craig T. Goldblatt, at the Court, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Courtroom #7, Wilmington, Delaware 19801, on **October 27, 2023, at [●] [a/p].m. (prevailing Eastern Time)**. The Sale Objection Deadline to object to the Winning Bid(s) (and Back Up Bid(s), as applicable) with respect to the Rolling Stock is **October 25, 2023 at 5:00 p.m. (prevailing Eastern Time)**.

The Sale Hearing to consider approval of the Sale(s) of the Assets constituting Non-Rolling Stock Assets (*e.g.*, Real Property Assets, Intellectual Property, and Other Assets) to the Winning Bidder(s) at the applicable Auction will be held before the Honorable Craig T. Goldblatt, at the Court, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Courtroom #7, Wilmington, Delaware 19801, on **December 12, 2023, at [●] [a/p].m. (prevailing Eastern Time)**. The Sale Objection Deadline to object to the Winning Bid(s) (and Back Up Bid(s), as applicable) with respect to the Non-Rolling Stock Assets is **December 8, 2023 at 5:00 p.m. (prevailing Eastern Time)**.[3]

The Debtors reserve the right to modify the Bidding Procedures in consultation with the Consultation Parties in accordance with the Bidding Procedures and the Order.

All requests directed to the Debtors in connection with the foregoing, or for further information regarding the Bidding Procedures and participation therein, or for further information regarding the Assets, must be directed to: yellow@ducerapartners.com. All Potential Bidders (as defined in the Bidding Procedures) are instructed to review the Bidding Procedures in consultation with counsel.

---

[3] Upon any Sale of Assets located in Canada or otherwise held by Debtors domiciled in Canada (collectively, the "Canadian Assets"), the Foreign Representative will seek recognition of the applicable Sale Order(s) of the Canadian Assets in the Canadian Court, which recognition shall be a condition to closing such Sale(s), as soon as practicable after the Court's entry of the applicable Sale Order(s) (subject to the availability of the Canadian Court). Further information and documentation (including pleadings) regarding the Canadian Assets can be accessed at https://www.alvarezandmarsal.com/YRCFreightCanada.

**<u>EXHIBIT 3</u>**

**Notice of Winning Bidder**

DOCS_DE:244751.1 96859/001

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**NOTICE OF WINNING BIDDER AND**
**BACK-UP BIDDER FOR CERTAIN OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On September [●], 2023, United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct a marketing and auction process for the sale or sales (each, a "Sale") of substantially all of the Debtors' assets (the "Assets") through one or more sale transactions (each, a "Sale Transaction").

On **October 18, 2023 at 10 a.m. (prevailing Eastern Time)**, pursuant to the Order, the Debtors commenced the Auction with respect to certain Assets (constituting Rolling Stock (as defined in the Bidding Procedures)) either in-person or by videoconference or such other form of remote communication established by the Debtors.

At the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, selected the following Winning Bidder and Back-Up Bidder with respect to the Assets subject to the applicable Auction.

| Asset(s) | Winning Bidder | Back-Up Bidder | Proposed Bid Protections | Key Terms of Proposed Sale |
|---|---|---|---|---|
|  |  |  |  |  |

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Motion, or the Bidding Procedures, as applicable.

The Sale Hearing to consider approval of the Sale of the above-listed Assets to the Winning Bidder(s) at the Auction referenced above will be held before the Honorable Craig T. Goldblatt, at the Court, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Courtroom #7, Wilmington, Delaware 19801, on **October 27, 2023, at [●] [a/p].m. (prevailing Eastern Time)**.

At the Sale Hearing, the Debtors will seek the Court's approval of the Winning Bid(s) and Back-Up Bid(s) (if any) for the applicable Assets.  Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale(s) for the applicable Assets, and there will be no further bidding at the Sale Hearing.  If a Winning Bidder cannot or refuses to consummate the applicable Sale Transaction following entry of the applicable Sale Order because of the breach or failure on the part of the Winning Bidder, the Back-Up Bidder (if any) shall be deemed the new Winning Bidder and the Debtors shall be authorized, but not required, to close the applicable Sale Transaction(s) with such Back-Up Bidder(s) on the terms and provisions of such applicable Back-Up Bid(s) without further order of the Court or notice necessary to any party.

This notice is subject to the terms and conditions of the Motion and the Order, with such Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents, including the Bidding Procedures, in their entirety.  Parties interested in receiving additional or other information regarding the proposed Sale(s), proposed Sale Transaction(s), or other disposition of the applicable Assets may make a written request to Epiq Corporate Restructuring, LLC ("Epiq") (the notice and claims agent retained in these chapter 11 cases) or by calling (866)-641-1076.

Copies of the Motion, the Order, the Bidding Procedures, this notice, and any other related documents are available:  (a) upon request to Epiq by calling (866)-641-1076; (b) by visiting the Debtors' restructuring website at https://dm.epiq11.com/YellowCorporation; or (c) for a fee via PACER by visiting https://pacer.uscourts.gov.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[3] | ) | Case No. 23-11069 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE OF WINNING BIDDER AND
BACK-UP BIDDER FOR CERTAIN OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On September [●], 2023, United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. [●]] (the "Order"),[4] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct a marketing and auction process for the sale or sales (each, a "Sale") of substantially all of the Debtors' assets (the "Assets") through one or more sale transactions (each, a "Sale Transaction").

On **November 27, 2023 at 2:30 p.m. (prevailing Eastern Time)**, pursuant to the Order, the Debtors commenced the Auction with respect to certain Assets (constituting Non-Rolling Stock Assets (as defined in the Bidding Procedures)) either in-person or by videoconference or such other form of remote communication established by the Debtors.

At the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, selected the following Winning Bidder and Back-Up Bidder with respect to the Assets subject to the applicable Auction.

| Asset(s) | Winning Bidder | Back-Up Bidder | Proposed Bid Protections | Key Terms of Proposed Sale |
|---|---|---|---|---|
| | | | | |

---

[3]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[4]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Motion, or the Bidding Procedures, as applicable.

The Sale Hearing to consider approval of the Sale of the above-listed Assets to the Winning Bidder(s) at the Auction referenced above will be held before the Honorable Craig T. Goldblatt, at the Court, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Courtroom #7, Wilmington, Delaware 19801, on **December 12, 2023, at [●] [a/p].m. (prevailing Eastern Time)**.

At the Sale Hearing, the Debtors will seek the Court's approval of the Winning Bid(s) and Back-Up Bid(s) (if any) for the applicable Assets. Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale(s) for the applicable Assets, and there will be no further bidding at the Sale Hearing. If a Winning Bidder cannot or refuses to consummate the applicable Sale Transaction following entry of the applicable Sale Order because of the breach or failure on the part of the Winning Bidder, the Back-Up Bidder (if any) shall be deemed the new Winning Bidder and the Debtors shall be authorized, but not required, to close the applicable Sale Transaction(s) with such Back-Up Bidder(s) on the terms and provisions of such applicable Back-Up Bid(s) without further order of the Court or notice necessary to any party.

This notice is subject to the terms and conditions of the Motion and the Order, with such Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents, including the Bidding Procedures, in their entirety. Parties interested in receiving additional or other information regarding the proposed Sale(s), proposed Sale Transaction(s), or other disposition of the applicable Assets may make a written request to Epiq Corporate Restructuring, LLC ("Epiq") (the notice and claims agent retained in these chapter 11 cases) or by calling (866)-641-1076.

Copies of the Motion, the Order, the Bidding Procedures, this notice, and any other related documents are available: (a) upon request to Epiq by calling (866)-641-1076; (b) by visiting the Debtors' restructuring website at https://dm.epiq11.com/YellowCorporation; or (c) for a fee via PACER by visiting https://pacer.uscourts.gov.

**<u>EXHIBIT 4</u>**

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE OF POTENTIAL ASSUMPTION OR
ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS OR LEASES**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On September [●], 2023, United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. [●]] (the "Order"),[2] by which the Court approved procedures for the assumption or assumption and assignment of executory contracts and unexpired leases and granted related relief, as set forth in the Order.

Pursuant to the Order and by this notice (this "Cure Notice"), the Debtors hereby notify you that they have determined, in the exercise of their reasonable business judgment, that each executory contract or unexpired lease set forth on **Schedule 1** attached hereto (the "Potential Assumption List") may be assumed (and, if applicable, assigned) effective as of the date (the "Assumption Date") set forth in **Schedule 1** or such other date as the Debtors and the counterparty or counterparties to such executory contracts or unexpired leases may agree.

The Debtors believe that the party to which each applicable executory contract or unexpired lease may be assigned has the financial wherewithal to meet all future obligations under such contract or lease and the Debtors will, at the request of the applicable counterparty, use commercially reasonable efforts to provide evidence thereof to such applicable counterparty (and their counsel, if known) thereby demonstrating that the assignee of the contract or lease has the ability to comply with the requirements of adequate assurance of future performance.

Parties objecting to the proposed assumption and assignment (including a Winning Bidder's proposed form of adequate assurance of future performance) must file and serve a written objection (each, a "Cure Objection") so that such objection is filed with the Court and **actually received by the following**

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Motion, as applicable.

**parties no later than [●], 2023, at 5:00 p.m. (prevailing Eastern Time)** with respect to the Auction for the Bids (the "Cure Objection Deadline"):  (a) the Debtors, Yellow Corporation, 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211, Attn.: General Counsel; (b) proposed counsel to the Debtors (i) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, 60654, Attn.: Whitney Fogelberg (whitney.fogelberg@kirkland.com) (ii) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith (allyson.smith@kirkland.com) and Aaron Metviner (aaron.metviner@kirkland.com); and (iii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, PO Box 8705, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns (tcairns@pszjlaw.com), Peter J. Keane (pkeane@pszjlaw.com), and Edward Corma (ecorma@pszjlaw.com); (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Jane Leamy (jane.m.leamy@usdoj.gov) and Richard Schepacarter (richard.schepacarter); (d) counsel to the Creditors' Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036-6745 US, Attn: Philip C. Dublin (pdublin@akingump.com), Meredith A. Lahaie (mlahaie@akingump.com), Stephen B. Kuhn (skuhn@akingump.com), and Kevin Zuzolo (kzuzolo@akingump.com); (e) counsel to the Junior DIP Lender, Quinn Emmanuel Urquhart & Sullivan, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017, Attn: Eric Winston (ericwinston@quinnemanuel.com); 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirplani (susheelkirpalani@quinnemanuel.com); Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606, Attn: Lucas S. Smith (Luke.Smith@ropesgray.com); 1211 Avenue of the Americas, New York, NY 10036, Attn: Natasha S. Hwangpo (Natasha.Hwangpo@ropesgray.com); (f) counsel to the Junior DIP Agent, Holland & Knight LLP, 50 N. Riverside Plaza, Suite 2700, Chicago IL 60606, Attn. Joshua M. Spencer (Joshua.Spencer@hklaw.com) and Phillip W. Nelson (Phillip.Nelson@hklaw.com); (g) counsel to the B-2 Lenders, White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 Attn: Scott Greissman (sgreissman@whitecase.com), Elizabeth Feld (efeld@whitecase.com), and Andrew Zatz (azatz@whitecase.com); (h) counsel to the Prepetition ABL Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Kevin Simard (ksimard@choate.com) and Hampton Foushee (hfoushee@choate.com); (i) counsel to the B-2 Agent, Holland & Knight LLP, 50 N. Riverside Plaza, Suite 2700, Chicago IL 60606, Attn. Joshua M. Spencer (Joshua.Spencer@hklaw.com) and Phillip W. Nelson (Phillip.Nelson@hklaw.com); (j) counsel to the Prepetition UST Tranche A Agent, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (k) counsel to the Prepetition UST Tranche B Agent, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman (ronald.silverman@hoganlovells.com) and Christopher R. Bryant (chris.bryant@hoganlovells.com); and (l) counsel to the United States Department of the Treasury, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602, Attn: Michael Messersmith (michael.messersmith@arnoldporter.com), 250 West 55th Street, New York, New York 10019, Attn: Benjamin Mintz (benjamin.mintz@arnoldporter.com), and 601 Massachusetts Ave., N.W., Washington, DC 20001, Attn: Rosa Evergreen (rosa.evergreen@arnoldporter.com).

Absent a Cure Objection being timely filed, the assumption of each executory contract or unexpired lease may become effective on the Assumption Date set forth in **Schedule 1**, or such other date as the Debtors and the counterparty or counterparties to such executory contract or unexpired lease may agree.

If an objection is timely filed and not withdrawn or resolved, such objection will be heard at the Sale Hearing or such other date and time as agreed to by the Debtors and the objecting party or ordered by the Court.  If such objection is overruled or withdrawn, the applicable executory contract or unexpired lease shall be assumed as of the Assumption Date set forth in **Schedule 1** or such other date as the Debtors and the counterparty or counterparties to such executory contract unexpired lease may agree.

## Schedule I

**Potential Assumption List**