**EXHIBIT 2**

# FIRST AMENDMENT TO FUEL SUPPLY AGREEMENT

This First Amendment to Fuel Supply Agreement ("Amendment") is made as of June 25, 2020 between **WORLD FUEL SERVICES, INC.** ("Seller") and **YRC ENTERPRISE SERVICES, INC.** (hereinafter referred to as "Buyer").

## RECITALS

WHEREAS, Buyer and Seller entered into a Fuel Supply Agreement ("Agreement") dated June 1, 2019;

WHEREAS, Buyer and Seller wish to extend the term of the Agreement and amend the Agreement as set forth herein; and

WHEREAS, all capitalized terms herein not defined have the meaning set forth in the Agreement;

NOW, THEREFORE, for good and valuable consideration, the parties hereto agree as follows:

1. **AMENDMENTS**

    *A.*  *Correction of scrivener's error*. All instances of "World Fuel Services" in the Agreement are deleted and replaced with "World Fuel Services, Inc."

    *B.*  Section 3.4 of the Agreement is deleted in its entirety and replaced with the following: "This Agreement shall commence on the Effective Date and continue until May 31, 2021. Thereafter, the term of this Agreement shall automatically renew for successive 1 year terms unless (a) Seller gives Buyer written notice of nonrenewal at least 90 days prior to the expiration of the then-current term, or (b) Buyer gives Seller written notice of nonrenewal at least 30 days prior to the expiration of the then-current term."

    *C.*  The following is added to the Agreement as new ARTICLE 4.A: "**ARTICLE 4.A. CREDIT**.

    4.A.1. Buyer shall pay to Seller a business risk deposit of $200,000 ("BRD") within 3 business days of execution of the Amendment. Seller may apply part or all of the BRD against any and all delinquent amounts 120 days or more past due and owing Seller by Buyer, upon notice to Buyer. For any incorrect invoices, the 120 days is tolled until Buyer receives a corrected invoice. Should Seller apply all or a portion of the BRD as described in this Section, Buyer shall be obligated to replenish the BRD to the total amount of $200,000, within 3 business days. Seller shall be entitled to hold and apply the BRD as described herein until Buyer reaches a B2 ranking with Moody's Investors Services, or the date that is 180 days following the termination, expiration, or non-renewal of the Agreement, whichever is sooner; thereafter, Seller shall promptly return any and all remaining portion of the BRD to Buyer. Buyer grants to Seller a security interest in all Product purchased by Buyer under the Agreement and in the BRD. Buyer agrees that Seller may commingle the BRD with other Seller funds.

    4.A.2. Buyer shall provide to Seller a cross-corporate guaranty from an affiliated company or person that is satisfactory to Seller, in Seller's sole and absolute discretion. Such guaranty shall be in a form reasonably acceptable to Seller.

4.A.3. If Buyer fails to pay Seller any or all amounts owed when due, or if Seller, in its sole discretion, at any time and for any reason, should deem the credit or financial responsibility of Buyer to be impaired, unsatisfactory or unacceptable, or if Seller otherwise has reasonable grounds for insecurity with respect to Buyer's performance hereunder, Seller, at its sole discretion, may require Buyer to pay cash prior to any future deliveries of Products; or may require Buyer to post an irrevocable standby letter of credit or other security required by Seller. If Buyer does not provide security required by Seller under this Section, then Seller may suspend all further deliveries of Product until such security is received. If (a) any requested security is not received within the time reasonably specified by Seller; (b) Buyer fails to provide Seller such other adequate assurance of future performance reasonably requested by Seller; or (c) any past due indebtedness is not paid in full within five (5) days after a written default notice to Buyer, then Seller, without prejudice to its rights set forth in in the Agreement, may (1) immediately terminate the Agreement or suspend its obligations under the Agreement, (2) offset and recoup any amounts owing thereunder against any payments or deliveries due Buyer under the Agreement, and (3) exercise any other remedies allowed under any Agreement or pursuant to any applicable law.

4.A.4. Any provision of this Agreement that is contrary to or inconsistent with the terms set forth in this Article 4.A is expressly superseded by this Article 4.A."

*D.* Article 7.1 (Notices) of the Agreement is amended to state the following address for notice to Seller:

"World Fuel Services, Inc.
Attn: General Counsel
9800 NW 41st Street
Miami, FL 33178

(with a copy to)

World Fuel Services, Inc.
Attn: Senior Vice President, Credit & Risk
9800 NW 41st Street
Miami, FL 33178"

*E.* Article 10.1 of the Agreement is deleted in its entirety and replaced with the following: "Neither Party shall be liable to the other for failure or delay in making or accepting delivery to the extent that such failure or delay may be due to Force Majeure. "Force Majeure" shall include compliance with acts, orders, regulations, or requests of any national, federal, state or local civilian or military authority or any other persons purporting to act therefor; war (whether or not declared), embargo, civil insurrection, riots, strikes, labor difficulties; actions of the elements; natural disasters, fire, explosions, mechanical breakdowns, supply disruptions, or any other causes reasonably beyond the control of such Party, whether similar or not. Seller shall not be obligated to make up any deliveries omitted as a result of any condition of Force Majeure, except to the extent that Seller and Buyer are reconciling or balancing deliveries under an exchange or a buy/sell agreement. If either party invokes the provisions of this section, such party shall promptly provide the other party a written notice stating the underlying circumstances of the particular cause(s) of Force Majeure and the expected duration thereof. Each party shall use reasonable diligence to cure, mitigate or correct any condition of Force Majeure affecting performance by such party, provided however, that neither party shall be obligated to settle any strikes or labor disputes on terms it deems unsatisfactory. No Force Majeure

condition shall relieve Buyer of any obligation to make payments with regard to Products that have been delivered."

2.  Except as expressly amended in this Amendment, all other terms and conditions of the Agreement remain in full force and effect. To the extent there is a conflict between the provisions of the Agreement and this Amendment, the provisions of this Amendment shall control, govern and supersede over any such conflicting agreements in the Agreement or any prior amendments to the Agreement.

3.  Any facsimile copy, other copy or reproduction of a signed counterpart original of this Amendment shall be as fully effective and binding as the original signed counterpart of this Amendment. This Amendment may be executed in counterparts, each of which when signed shall constitute an original, and all of which when signed when taken together, shall constitute one Amendment. Once executed this Amendment merges with and becomes part of the Agreement.

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date first above written.

SELLER:                                              BUYER:

**WORLD FUEL SERVICES, INC.**                        **YRC ENTERPRISE SERVICES, INC.**

By: _____                      By: _____
Name: TIM BOHALL                                     Name: Jason T. Ringgenberg
Title: SVP CREDIT                                    Title: Senior Vice President