## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF CODY LEUNG KALDENBERG
IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY
OF AN ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR
THE SALE OR SALES OF THE DEBTORS' ASSETS; (B) SCHEDULING
AUCTIONS AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF;
(C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES,
(D) SCHEDULING SALE HEARINGS AND APPROVING THE FORM AND MANNER
OF NOTICE THEREOF; (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

I, Cody Leung Kaldenberg, declare under penalty of perjury:

1.       I am a founding member of and partner at Ducera Partners LLC ("Ducera"), which maintains its principal office at 11 Times Square, 36th Floor, New York, New York 10036.  Ducera is the proposed investment banker to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2.       I am authorized to submit this declaration (this "Declaration") on the Debtors' behalf in support of the relief requested in the *Motion Of the Debtors for Entry of an Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets, (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof, (C) Approving Assumption and*

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

*Assignment Procedures, and (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "Motion").[2]

### Professional Background and Qualifications

3.      Founded in 2015, Ducera is an independent investment banking advisory firm, which has extensive experience in, among other areas, providing leading-edge capital structure and restructuring advice in both in-court and out-of-court situations.  In addition to numerous out-of-court restructurings and sales, Ducera professionals have served as investment bankers to debtors, creditor groups, asset purchasers, committees, boards of directors, and trustees in a number of bankruptcy matters.  Ducera provides a broad range of corporate and financial services to its clients, including:   general corporate advice; mergers, acquisitions, and divestitures; corporate restructurings; and private placements.  Ducera provides its services worldwide from three offices located in the United States.

4.      Ducera has more than fifty professionals and is one of the leading advisors and investment bankers to debtors, secured and unsecured creditors, acquirers, and other parties in interest involved with financially troubled companies requiring complex financial restructurings, both in and outside of bankruptcy.  Ducera has represented debtors, creditors, and other constituents in some of the largest restructuring cases in the United States, including: (a) *In re*

---

[2]      Capitalized terms used but not otherwise defined shall have the meaning ascribed to them in the Motion or in the Debtors' amended proposed bidding procedures attached as Exhibit 1 to the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Therefore; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 444] (the "Bidding Procedures").

*Diebold Holding Co., LLC*, Case No. 23-90602 (DRJ) (Bankr. S.D. Tex. July 18, 2023) [Docket No. 266]; (b) *In re Virgin Orbit Holdings, Inc.*, Case No. 23-10405 (KBO) (Bankr. D. Del. May 15, 2023) [Docket No. 261]; (c) *In re Altera Infrastructure L.P.*, Case No. 22-90130 (MI) (d) *In re GBG USA Inc.*, Case No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 22, 2021) [Docket No. 230]; (e) *In re Superior Energy Servs., Inc.*, Case No. 20-35812 (DRJ) (Bankr. S.D. Tex. Feb. 2, 2021) [Docket No. 316]; (f) *In re Hornbeck Offshore Services, Inc.*, Case No. 20-32679 (DRJ); (g) *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI); (h) *In re Toys "R" Us, Inc.*, Case No. 17-34665 (KLP) (Bankr. E.D. Va. Jan. 26, 2018).

5.      I have nearly twenty years of restructuring-related investment banking experience and have worked on a broad range of restructuring advisory assignments across a variety of industry sectors.  Since joining Ducera in 2015, I have provided investment banking expertise, including with respect to marketing and sale transactions, to financially distressed companies as well as lenders and strategic investors in distressed and special situations engagements.  Prior to joining Ducera, I worked as a Director at Perella Weinberg Partners for over six years, advising companies and other stakeholders on special situation restructuring engagements, prior to which I worked as an associate at Goldman Sachs for over four years.  I earned a Bachelor of Science in Economics from the Massachusetts Institute of Technology in 2004.

6.      I have worked closely with the Debtors' management and other professionals retained by the Debtors with respect to preparing for these chapter 11 cases and have become well acquainted with the Debtors' capital structure, liquidity needs, and business operations.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Ducera team, the Debtors' management team, and the Debtors' other advisors, my review of relevant documents and information concerning the

Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge.  If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.  I am authorized to submit this Declaration on behalf of the Debtors.  I am not being specifically compensated for this testimony other than through payments received by Ducera as a professional proposed to be retained by the Debtors, subject to approval by this Court.  I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.

### **Marketing Process**

7.      As more fully described in the First Day Declaration, in the weeks leading up to the Petition Date, to preserve liquidity, the Debtors made the decision to defer payment of certain contractual contributions to the Central States Health and Welfare Fund and the Central States Pension Fund.  In response, the Union issued a 72-hour strike notice to the Debtors.  Following the public threat of a strike by the Union, the Debtors' individual shipments declined precipitously, resulting in the evaporation of the majority of the Debtors' business over the course of just four days.  As a result, the Debtors were forced to take the first steps towards implementing a full-scale wind-down and ceasing most, if not all, operations.  As part of this process, Ducera began preparations for a marketing process for the Debtors' assets, including developing marketing materials and identifying potential buyers for the Debtors' assets.

8.      On July 31, Ducera commenced a process, which remains ongoing today, to market the Debtors' Assets, including Real Property Assets and Rolling Stock, among other Assets.  As part of this process, Ducera has contacted over 500 interested parties that were considered likely participants in a sale process of the Debtors' Assets and provided such parties with the marketing materials.  Prior to the Petition Date, Ducera began collecting and organizing diligence materials for inclusion in a virtual data room, access to which has been provided to over 300 interested

4

parties that executed confidentiality agreements with the Debtors.  While Ducera is continuing to broadly market the Assets, to date, the process has generated over 120 indications of interest across the Debtors' various Assets.

9.       In parallel with the marketing process, Ducera has worked with the Debtors and their other advisors to develop the proposed Bidding Procedures to maximize the value of the Debtors' estates in these chapter 11 cases. The revised Bidding Procedures were developed following several weeks of marketing the Assets and discussions with interested parties. The timelines contained in the Bidding Procedures have been informed by feedback received during the marketing process to best position the Debtors to maximize the value of their assets.

## The Bidding Procedures

10.      As set forth in the Motion, the Debtors are seeking approval of the Bidding Procedures to establish a clear and transparent process for the solicitation, receipt, and evaluation of Bids on a Court-approved timeline that allows the Debtors to timely consummate a Sale or Sales of their Assets.  There has been substantial interest from strategic and financial buyers for the Debtors' Assets since the marketing process was commenced in July.  The Debtors and Ducera are continuing their efforts to market all or a portion of the Assets and, if appropriate and value-maximizing, enter into an agreement with a Stalking Horse Bidder.  The Debtors are committed to achieving the highest or otherwise best Bid (or combination of Bids) for the Debtors' Assets by marketing those Assets pursuant to the proposed Bidding Procedures, and, if necessary, conducting Auctions for such Assets.

DOCS_DE:244779.1 96859/001

11.    I have reviewed the Bidding Procedures.    Generally speaking, the Bidding Procedures establish :[3]

- the opportunity to conduct due diligence by Potential Bidders;

- the deadlines and requirements for submitting competing Bids and the method and criteria by which such competing Bids are deemed to be "Qualified Bids" sufficient to trigger the Auction(s) (if required), including the terms and conditions that must be satisfied and the deadline that must be met by any Acceptable Bidder to be considered a "Qualified Bidder" and to participate in the Auction(s);

- the manner in which Qualified Bids will be evaluated by the Debtors;

- the conditions for having the Auction(s) and procedures for conducting the Auction(s), if any;

- the terms of the Bid Protections that may be proposed to a potential Stalking Horse Bidder (if any); and

- various other matters relating to the Debtors' sale process generally, including the designation of Back-Up Bids, return of any good faith deposits, and certain reservations of rights.

12.    The Bidding Procedures propose the following key dates and deadlines with respect to the sale of the Rolling Stock:

| Date and Time | Event or Deadline |
|---|---|
| October 13, 2023 at 5:00 p.m. (E.T.) | Bid Deadline for Rolling Stock |
| October 18, 2023 at 10:00 a.m. (E.T.) | Auction(s) (if required) for Rolling Stock Begin |
| October 23, 2023 | Notice of Winning Bidder(s) for Rolling Stock |
| October 25, 2023 at 5:00 p.m. (E.T.) | Sale Objection Deadline for Winning Bid(s) for Rolling Stock |
| October 27, 2023 at [●] [[a/p].m.] (E.T.) (subject to Court availability) | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) for Rolling Stock |
| As soon as practicable following Sale Hearing (and in no event later than November 3, 2023) | Sale Consummation for UST Rolling Stock |

---

[3]    This summary is qualified in its entirety by the Bidding Procedures.  To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

DOCS_DE:244779.1 96859/001

| Date and Time | Event or Deadline |
|---|---|
| As soon as practicable following Sale Hearing | Sale Consummation for B-2 Rolling Stock |

13.     In addition, the Bidding Procedures propose the following key dates and deadlines with respect to the sale of the Real Estate (and all other Assets):

| Date and Time | Event or Deadline |
|---|---|
| November 9, 2023 at 5:00 p.m. (ET) | Bid Deadline for Non-Rolling Stock Assets (incl. Real Property Assets, Intellectual Property, and Other Assets) |
| November 27, 2023 at 2:30 p.m. (ET) | Auction(s) (if required) for Non-Rolling Stock Assets Begin |
| December 1, 2023 | Notice of Winning Bidder(s) (and Back-Up Bidder(s), as applicable) for Non-Rolling Stock Assets |
| December 8, 2023 at 5:00 p.m. (ET) | Sale Objection Deadline for Winning Bid(s) (or Back-Up Bid(s), as applicable) for Non-Rolling Stock Assets |
| December 12, 2023 at [●] [[a/p].m.] (E.T.) (subject to Court availability) | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) for Non-Rolling Stock Assets |
| As soon as practicable following Sale Hearing | Sale Consummation for Non-Rolling Stock Assets |

14.     Based on my experience, I believe that the Bidding Procedures are designed to maximize the value received for the Assets by facilitating a fair and competitive bidding process where potential bidders are encouraged to participate and submit competing Bids within the specified time frame for the applicable Assets.  As described in the Motion, the proposed Bid Deadline for Rolling Stock requires Bids for the purchase of the Rolling Stock to be submitted no later than **October 13, 2023 at 5:00 p.m. (prevailing Eastern Time)**.  Additionally, the proposed Bid Deadline for the Non-Rolling Stock Assets (including the Real Property Assets, the Intellectual Property, and the Other Assets (each as defined in the Bidding Procedures)) requires

7

Bids to be submitted no later than **November 9, 2023 at 5:00 p.m. (prevailing Eastern Time)**. These bid deadlines thus provide parties with approximately four to eight weeks, respectively, from the filing of the Bidding Procedures to obtain information (to the extent not already obtained) and formulate and submit a timely competing Bid to purchase some or all of the Assets.

15.     Accordingly, I am confident that the Bidding Procedures and the other relief requested in the Motion, including setting a schedule for the Auction(s) (if necessary), represent the best chance for the Debtors to realize the maximum value for their Assets.

16.     Given the significant buyer outreach conducted to date, the significant publicity surrounding the Debtors' prepetition shutdown and these chapter 11 cases, and the timeline proposed by the Debtors pursuant to their proposed Bidding Procedures, it is my view, based on my experience and in light of the circumstances, that the proposed postpetition sale process set forth in the Bidding Procedures is reasonable and appropriate under the circumstances. The Bidding Procedures seek to strike a balance between the Debtors' interests in consummating the Sale Transactions on a reasonable timeline and preserving the opportunity to attract the highest or otherwise best offer(s) for the Assets. I believe that the proposed Bidding Procedures provide for substantial flexibility with respect to the structure of any Sale Transaction, and the Bidding Procedures are the best path to garner interest in the Assets and maximize value for all stakeholders. At the Auctions (if required), as set forth in the proposed Bidding Procedures, the Debtors will have an opportunity to consider all competing offers and select the offers (including combinations thereof) that they deem to be the highest or otherwise best offer(s) for the Assets.

## Conclusion

17.     Accordingly, for all the foregoing reasons, I believe that the Bidding Procedures and the sale timeline:  (a) will encourage competitive bidding for the Debtors' Assets; (b) are generally consistent with other procedures previously approved in chapter 11 cases of similar size

8

and complexity; and (c) are appropriate under the circumstances.   Given the details described above and based on my experience as a restructuring professional and involvement in other sale transactions, I believe that the Bidding Procedures are appropriate and should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing declaration are true and correct to the best of my knowledge, information, and belief.

Dated:  September 13, 2023

*/s/ Cody Leung Kaldenberg*
Cody Leung Kaldenberg
Partner
Ducera Partners LLC