IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Re: Docket Nos. 10, 178 |

**FINAL ORDER (I) AUTHORIZING
THE DEBTORS TO (A) CONTINUE TO OPERATE
THEIR CASH MANAGEMENT SYSTEMS, (B) HONOR
CERTAIN PREPETITION OBLIGATIONS RELATED THERETO,
(C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) PERFORM
INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing, but not directing, the Debtors to (i) continue to operate their Cash Management Systems and maintain their existing Bank Accounts, (ii) honor certain prepetition or postpetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue to perform the Intercompany Transactions consistent with past practice and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the district court having jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management Systems, substantially as identified on **Exhibit 1** attached hereto and as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession, *provided* that once the Debtors' existing supply of checks has been exhausted, the Debtors shall, when reordering (or with respect to checks the Debtors or their agents print themselves) require or print, as applicable, the "Debtor in Possession" legend and corresponding bankruptcy case number on all such items; (d) continue to perform Intercompany Transactions; (e) continue to use, with the same account numbers, the Debtor Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit 2** attached hereto, and need not comply with certain guidelines relating to bank accounts set forth in

the U.S. Trustee Guidelines (to the extent applicable); (f) treat the Debtor Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (g) deposit funds in and withdraw funds from the Debtor Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (h) pay any amounts owed in connection with merchant services provided by PNC Merchant Services Company, Paymentech LLC, and Chase Orbital Payment Gateway, including any prepetition amounts; and (i) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that in the case of each of (a) through (i), such action is taken in the ordinary course of business and consistent with past practice.

3. The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business consistent with past practice, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order; *provided* that the Debtors shall only instruct or request any Cash Management Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Cash Management Bank for payment after the Petition Date as authorized by an order of the Court.

4. The Cash Management Banks are authorized to debit the Debtor Bank Accounts in the ordinary course of business, consistent with past practice, without the need for further order of

this Court, for: (a) all checks drawn on the Debtor Bank Accounts that are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Debtor Bank Accounts with such Cash Management Bank prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the Cash Management Systems.

5. Any existing deposit, treasury management, and merchant services agreements between or among the Debtors, the Cash Management Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management Systems and cash management procedures in the ordinary course of business, consistent with past practice, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Final Order; *provided* that the Debtors shall provide five (5) business days' prior notice to the (a) U.S. Trustee; (b) the advisors to the Official Committee of Unsecured Creditors (the "Committee"); (c) counsel to the Junior DIP Lender; (d) counsel to the Junior DIP Agent; (e) counsel to the B-2 Lenders; (f) counsel to the B-2 Agent; (g) counsel to the Prepetition UST Tranche A Agent and Prepetition UST Tranche B Agent; and (h) counsel to the United States

Department of Treasury (collectively, the "Cash Management Notice Parties") of any material changes to the Cash Management System.

6. To the extent any of the Debtor Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is thirty days from the date of this Order, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtors or the U. S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.

7. Absent further order of this Court, the Debtors' timely compliance with section 345(b) of the Bankruptcy Code shall be excused to allow the Debtors to maintain the BNY Mellon Accounts listed on **Exhibit 2** hereto; provided that (a) the balance of the BNY Mellon Accounts shall not exceed $250,000 in the aggregate at any given time and (b) if the balance of the BNY Mellon Accounts exceeds $250,000 in the aggregate at any time during these chapter 11 cases, any amounts in excess of $250,000 shall be transferred as soon as practicable into one or more of the Debtors' accounts at a bank that is signatory to a Uniform Depository Agreement in a form prescribed by the U.S. Trustee; *provided, further*, that the Debtors shall attach to their monthly operating reports copies of the bank statement or statements from the BNY Mellon Accounts for the time period covered by such operating report.

8. For Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, to the extent not already contacted, as soon as practicable after entry of this Order the Debtors shall (a) contact each bank, (b) provide the bank with the Debtors' employer identification numbers and

(c) identify each of the Bank Accounts held at such Banks as being held by a debtor-in-possession in a bankruptcy case.

9. Subject to the terms hereof, the Debtors are authorized, but not directed, in the ordinary course of business consistent with past practice, to open any new bank account or close any existing Bank Account and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate; *provided* that the Debtors shall only open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at banks that are willing to immediately execute such an agreement.  The Debtors shall provide five (5) business days' prior notice to the Cash Management Notice Parties of the opening or closure of any Bank Account.  The relief granted in this Final Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank, in each case, pursuant to this Final Order.

10. All banks maintaining any of the Bank Accounts that are provided with notice of this Final Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue timely stop payment orders in accordance with the documents governing such Bank Accounts.

11. The Cash Management Banks are authorized, without further order of this Court, to deduct any applicable fees from the applicable Bank Accounts in the ordinary course of business consistent with past practice.

12. The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned

checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

13. Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

14. Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

15. The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in connection with the Cash Management Systems, including funding costs incurred by their non-Debtor affiliates associated with the facilitation of an orderly wind-down process, in the ordinary course of business, consistent with past practice. The Debtors shall

maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions, including Intercompany Transactions and the payment of Intercompany Claims, may be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status.  The Debtors shall (i) make such records available upon request by the Cash Management Notice Parties and (ii) provide the Cash Management Notice Parties on a monthly basis a summary of all Intercompany Transactions that occurred during the preceding month.  All postpetition payments from a Debtor to another Debtor or non-Debtors under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code and shall be accounted for in full for all purposes in these chapter 11 cases (including for purposes of calculating creditor recoveries in connection with a chapter 11 plan).

16. The Debtors are authorized, but not directed, to continue using the Credit Cards in the ordinary course of business, consistent with prepetition practices and subject to the terms and conditions of the Corporate Credit Card Program.  The Debtors are further authorized to pay prepetition and postpetition obligations outstanding with respect to the Corporate Credit Card Program and to continue to provide the Corporate Credit Card Cash Collateral to Citizens Bank with respect thereto, subject to the limitations of this Final Order and any other applicable interim and/or final orders of this Court.  Citizens Bank is authorized to apply the Corporate Credit Card Cash Collateral without further notice or Order of the Court.  Citizens Bank may rely on the representations of the Debtors with respect to its use of the Corporate Credit Card Program, and

Citizens Bank shall not have any liability to any party for relying on such representations made by the Debtors as provided for herein.

17. Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

18. Nothing contained herein shall permit the Cash Management Banks to terminate any cash management services without thirty days' prior written notice (or such other period as may be specified in any agreement between the Debtors and such Cash Management Bank) to the Debtors, the U.S. Trustee, and the Committee. Notwithstanding the foregoing, those prepetition agreements existing between the Debtors and the Cash Management Banks shall continue to govern the post-petition cash management relationship between the Debtors and the Cash Management Banks, in their capacity as Cash Management Banks, and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with the Cash Management Banks (including, for the avoidance of doubt, any rights the Cash Management Banks in their capacity as Cash Management Banks to use funds from the Bank Accounts to remedy any overdraft of another Bank Account or other cash management obligations, whether prepetition or postpetition, to the extent permitted under the applicable agreement), unless the Debtors and the Cash Management Banks agree otherwise, and any other legal rights and remedies afforded to the Cash Management Banks under applicable law shall be preserved.

19. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

20. Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount, validity or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

21. Notwithstanding anything to the contrary in this Final Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving the debtor-in-possession financing in these chapter 11 cases.

22. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

23. Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

24. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

26. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

27. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Dated: September 14th, 2023**  
**Wilmington, Delaware**    **CRAIG T. GOLDBLATT**  
    **UNITED STATES BANKRUPTCY JUDGE**