**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,1<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br>(Jointly Administered) |

**MOTION OF AFCO CREDIT CORPORATION FOR AN ORDER
GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO
<u>11 U.S.C. § 362(d) AND BANKRUPTCY RULE 4001(a)</u>**

AFCO Credit Corporation ("<u>AFCO</u>"), by and through its undersigned counsel, respectfully moves (this "<u>Motion</u>") this Court for the entry of an order, substantially in the form attached as **<u>Exhibit A</u>**, terminating the automatic stay pursuant to 11 U.S.C. § 362(d), *nunc pro tunc* to September 1, 2023, as to the Second Finance Agreement (as defined herein), to permit AFCO to cancel certain insurance policies whose unearned insurance premiums (the "<u>Unearned Premiums</u>") secure a loan that AFCO made to Yellow Corporation ("<u>Yellow</u>") for payment of those insurance policies. AFCO is not adequately protected, Yellow lacks equity in the Unearned Premiums, and the Unearned Premiums are not necessary for reorganization. Accordingly, relief from the automatic stay is appropriate. In support of this Motion, AFCO states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware (this "<u>Court</u>"), dated February 29, 2012. This is a "core" proceeding

---

1 A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

according to 28 U.S.C. § 157(b), and venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), AFCO consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory predicate for the relief requested herein is section 362(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and the relief is warranted under Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-1.

## BACKGROUND

4. On August 6, 2023 (the "Petition Date"), Yellow and certain of its affiliates (collectively, the "Debtors" and each, a "Debtor") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case").

5. Prior to the Petition Date, Yellow entered into two (2) Commercial Insurance Premium Finance Agreement – Promissory Notes: the first, dated March 30, 2023 (the "First Finance Agreement") with AFCO for its extra liability, property, and flood policies (collectively, the "First Financed Policies"); and, the second, dated June 23, 2023 (the "Second Finance Agreement" and, together with the First Finance Agreement, the "Finance Agreements") with AFCO for additional extra liability policies (the "Second Financed Policies" and, together with the First Financed Policies, the "Financed Policies").

6. Under the First Finance Agreement, a true and correct copy of which is attached as **Exhibit B**, AFCO made a loan to Yellow in the total amount of $2,781,906.00 to pay the insurance

premiums for the following Financed Policies: Policy Nos. B080121224U21; KTJ-CMB-1T61970; and NHD930526.

7. Pursuant to the First Finance Agreement, Yellow was required to make eleven (11) monthly payments in the amount of $260,357.84 to AFCO, commencing April 1, 2023, and a final eleventh (11th) payment in the amount of $260,357.84 on March 1, 2024.

8. Under the Second Finance Agreement, a true and correct copy of which is attached as **Exhibit C**, AFCO made a loan to Yellow in the total amount of $20,805,322.40 to pay the insurance premiums for the following Financed Policies: Policy Nos. XEUG71497513005; PD12428001A; P02XC00000019011; ARCGL120462023; P-001-001165984-01; C060318004; 7033962247; G74350033001; TBA62785570; 16135386; UFP006490903; CASFO200019LO202; BM00039016LI23A; EXC10000006814; B0713NAMCA2301; NAMCA2301493; WCUC52175586; WCUC5217823; WCUC52175665; and WCUC52175768.

9. Pursuant to the Second Finance Agreement, Yellow made a down payment in the amount of $2,368,415.60 and was required to make nine (9) monthly payments in the amount of $2,368,415.60 to AFCO, commencing July 1, 2023, and a final ninth (9th) payment in the amount of $2,368,415.60 on April 1, 2024.

10. The Finance Agreements are governed by the law of the State of Kansas. Under the terms of the Finance Agreements and applicable state law, Yellow granted AFCO a security interest in any and all Unearned Premiums that may become payable under the Financed Policies to secure the obligations of Yellow to AFCO under the First Finance Agreement. Additionally, Yellow irrevocably appointed AFCO as Attorney-in-Fact for Yellow with full authority to effect cancellation of the Financed Polices. Further, AFCO has the right to cancel the Financed Policies

to obtain all of the Unearned Premiums under the Financed Policies, to retain the sums due to AFCO, and to the return any excess to Yellow.

11. As of the date of this Motion, the Debtors have made six (6) monthly payments under the First Finance Agreement and the down payment and one (1) monthly payment under the Second Finance Agreement.

12. Prior to the Petition Date, the Debtors made four (4) monthly payments to AFCO under the First Finance Agreement in the amount of $260,357.84 and the down payment under the Second Finance Agreement in the amount of $2,368,415.60.

13. The two postpetition payment was authorized by this Court pursuant to the *Interim* and *Second Interim Order (I) Authorizing the Debtors to (A) maintain Insurance Coverage Entered into Prepetition and Pay Related Prepetition Obligations and (B) Renew, Supplement, Modify, or Purchase Insurance Coverage, (II) Approving Continuation of the Surety Bond Program, and (III) Granting Related Relief* (together, the "Interim Insurance Payment Orders") [D.I.s 174 and 311]. Pursuant to the Interim Insurance Payment Orders, authorized the Debtors to pay any and all prepetition or postpetition insurance obligations.  *See* Interim Insurance Payment Orders, ¶ 4.

14. Following entry of the Interim Insurance Payment Orders, the Debtors made the August 2023 monthly payments under the Finance Agreements and the September 2023 monthly payment under the First Finance Agreement to AFCO, in the aggregate amount of amount of $2,889,131.28. The next payment under the Second Finance Agreement was due on September 1, 2023, in the aggregate amount of $2,368,415.60, which, upon information and belief, AFCO understands neither Yellow nor any of the other Debtors will be paying.

15. Further, on information and belief, AFCO understand that the Debtors will not be making any further payment under the Second Finance Agreement going forward.  The Debtors

have represented that they will continue making payments to AFCO pursuant to the terms of the First Finance Agreement to keep in place the policies financed thereunder.

16. As of the filing of this Motion, Yellow has failed to make the final September 2023 monthly payments to AFCO under the Second Finance Agreement. The total amount due and owing to AFCO under the Second Finance Agreement is at least $16,432,150.24. The amount of AFCO's interest in the Unearned Premiums decreases every day, as funds are applied daily to the premiums of the Financed Policies as they become due. The Debtors' failure to fulfill their obligations under the Finance Agreements necessitates the relief sought herein.

## RELIEF REQUESTED

17. For the reasons set forth below, AFCO respectfully moves this Court for entry of an order, substantially in the form attached as **Exhibit A**, terminating the automatic stay *nunc pro tunc* to September 1, 2023, as to the Second Finance Agreement, for the purpose of permitting AFCO to (i) cancel the Financed Policies under the Second Finance Agreement and (ii) collect the Unearned Premiums and apply such Unearned Premiums to the outstanding indebtedness owed under its Second Finance Agreement with Yellow. AFCO has discussed this Motion with counsel to the Debtors and is working towards an agreed resolution, however, understands the Debtors have not affirmatively consented to the relief sought herein.

## BASIS FOR RELIEF

**I.  AFCO Is Entitled To Adequate Protection For Its Security Interest In The Unearned Premiums.**

18. AFCO is a secured creditor with a first priority security interest in the Unearned Premiums, which it perfected upon entering into the Finance Agreements and funding the Financed Policies. *See* Kan. Stat. Ann. § 40-2613 ("No filing of the premium finance agreement shall be

necessary to perfect the validity of such agreement as a secured transaction as against creditors, subsequent purchasers, pledgees, encumbrances, successors or assigns.").

19.  Courts uniformly have held that a creditor such as AFCO need not file a UCC financing statement to perfect its security interest in unearned premiums; rather, a security interest in unearned premiums attaches and is perfected upon the execution of the security agreement or the funding of the policy. *See, e.g.*, *In re St. James Inc.*, 402 B.R. 209, 215 (Bankr. E.D. Mich. 2009) (noting that under section 500.1512, the security interest attached and was perfected when finance agreements were made and loans made thereunder were funded); *In re Alabama Aircraft Indus., Inc.*, No. 11-10452(PJW), 2013 WL 6332688, at *3 (Bankr. D. Del. Dec. 5, 2013) (discussing "secured status" of premium finance company); *Am. Bank, FSB v. Cornerstone Community Bank*, 903 F. Supp. 568, 575 (E.D. Tenn. 2012) ("Nonetheless, the vast majority of courts which have addressed whether the insurance exclusion provision of Article 9 applies to transactions in the premium finance insurance company context have found the insurance exclusion provision prohibits the application of Article 9 to any transaction stemming from a premium financing company insurance transaction or any transaction involving collateral consisting of unearned insurance premiums within that context."); *In re Barton Indus.*, 104 F.3d 1241, 1246 (10th Cir. 1997) ("Article 9 of the [UCC] does not directly apply in this case because the security interests were 'in or under [a] policy of insurance' . . . [w]here the [UCC] is inapplicable, security interest disputes may be resolved by reference to [ ] existing statutes and pre-code case law"); *In re Expressco, Inc.*, 99 B.R. 395, 396 (Bankr. M.D. Tenn. 1989) (noting the exclusion "expressly excludes transactions related to insurance from the operation of Article 9" and "applies to insurance premium financing agreements); *see also In re JII Liquidating, Inc.*, 344 B.R. 875, 882-884 (Bankr. N.D. Ill. 2006) (stating that cases have uniformly held that Article 9 of

the UCC does not apply to a security interest in unearned insurance premiums); *In re Teligent Inc.*, 377 B.R. 39, 44 (Bankr. S.D.N.Y. 2005) (same, applying New York and Virginia law).

**II.     AFCO's Interest In The Unearned Premiums Is Not Adequately Protected.**

20.     Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such property in interest[.]"  11 U.S.C. § 362(d)(1).  Where adequate protection is lacking, the court "shall" grant relief from the automatic stay.  *See* 11 U.S.C. § 362(d); *In re Phoenix Steel Corp.*, 39 B.R. 218, 234 (D. Del. 1984) (granting relief from automatic stay where there was "no equity cushion or offer of substitute collateral in sufficient amount").

21.     The Debtors have the burden of proving the absence of "cause" for relief from the automatic stay.  *See In re Aardvark, Inc.*, 1997 WL 129346, at *4 (D. Del. Mar. 4, 1997) (quoting *In re Phoenix Pipe & Tube, L.P.*, 154 B.R. 197, 198 (Bankr. E.D. Pa. 1993)); *In re White*, 2004 WL 825847, at *2 (Bankr. D. Colo. Mar. 12, 2004); 11 U.S.C. § 362(g).  Here, the Debtors cannot meet their burden of proving the absence of "cause" because AFCO's interest in the Unearned Premiums is not adequately protected due to Yellow's post-petition payment defaults.  *See JII Liquidating*, 344 B.R. at 890 (terminating the automatic stay because the creditor "has not received any adequate protection for its security interest in the unearned premiums.").

22.     AFCO further lacks adequate protection for its security interest in the Unearned Premiums under Section 362(d)(1) because the Unearned Premiums are decreasing as funds are applied by the insurers to premiums of the Financed Policies.  Accordingly, the value of AFCO's interest in its collateral, the Unearned Premiums, is decreasing every day due to the use of the Unearned Premiums on Yellow's behalf.  As such, good cause exists to terminate the automatic stay, *nunc pro tunc* to September 1, 2023, as to the Finance Agreements.  The failure to grant the requested relief *nunc pro tunc* will cause unnecessary cost (or loss of collateral) to AFCO, thereby

increasing AFCO's claim (including administrative expenses) against the Debtors' estates or reducing the amount of any surplus proceeds.

### III. The Debtors Have No Equity In The Financed Policies Or Unearned Premiums And They Are Not Necessary To An Effective Reorganization.

23. Section 362(d)(2) of the Bankruptcy Code provides that relief from stay may also be granted where a debtor does not have any equity in the property in question and such property is not necessary to an effective reorganization. 11 U.S.C. §362(d)(2).

24. "A secured creditor seeking relief from the stay under section 362(d)(2) must show (1) the amount of its claim; (2) that its claim is secured by a valid, perfected lien in property of the estate; and (3) that the debtor lacks equity in the property." *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 322 (Bankr. S.D.N.Y. 2001); *see also In re Continental Airlines*, 134 B.R. 536, 542 (Bankr. D. Del. 1991).

25. As discussed, above, AFCO is a secured creditor with a valid, perfected lien. The total amount due and owing to AFCO under the Second Finance Agreement is at least $16,432,150.24 and, on information and belief, the value of the Unearned Premiums, as of the date of this Motion, is not more than $12,309,132.73. Accordingly, the Debtors lack equity in the Unearned Premiums related to the Second Finance Agreement.

26. Further, the Debtors cannot satisfy their burden of proving that the Financed Policies and Unearned Premiums are necessary for reorganization as Yellow and the Debtors are not operating and, ultimately, seeking to winddown their operations and liquidate all assets through this Bankruptcy Case. S*ee In re Mullock*, 404 B.R. 800, 805 (Bankr. E.D. Pa. 2009); *In re Diversified Energy Ventures*, 11 B.R. 712, 717 (Bankr. W.D. Pa. 2004). This burden requires proof that "the property is essential for an effective reorganization that is in prospect." *In re Swedeland Devel. Group, Inc.*, 16 F.3d 552, 567 (3d Cir. 1994) (citing *United Savings Ass'n of*

*Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988)); *see also In re Bovino*, 496 B.R. 492, 507 (Bankr. N.D. Ill. 2013) ("To prevent stay from being lifted based upon its lack of equity in property securing the moving creditor's claim, debtor must show that reorganization is impossible without this property, and that it can propose a feasible plan within a reasonable time.").

27. Because the Debtors' failed to remit payment timely to maintain the Second Finance Agreement and have ceased operations and are liquidating their assets, the policies financed by the Second Finance Agreement and Unearned Premiums are not necessary for an effective reorganization. Therefore, relief from the automatic stay is warranted. Alternatively, AFCO is entitled to other adequate protection under section 361 of the Bankruptcy Code sufficient to ensure the value of AFCO's secured position as of the commencement of this Bankruptcy Case.

28. To the extent the recovered Unearned Premiums exceed the indebtedness owed under the Finance Agreements, AFCO would turn over the recovered Unearned Premiums to the Debtors for the benefit of the Debtors' estates and creditors.

## **WAIVER OF BANKRUPTCY RULE 4001(a)(3)**

29. Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).

30. Because the value of AFCO's collateral is decreasing every day, AFCO would be prejudiced by a delay in the effectiveness of an order granting stay relief. Accordingly, AFCO respectfully requests that this Court grant such relief effective immediately.

## **NOTICE**

31. Notice of this Motion will be provided to: (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; and (iii) those parties entitled to receive

notice pursuant to Bankruptcy Rule 2002.  AFCO submits that no other or further notice is necessary or required.

**NO PRIOR REQUEST**

32. No prior request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, AFCO respectfully requests that the Court enter the proposed order, substantially in the form attached as **Exhibit A**, (i) granting the Motion; (ii) terminating the automatic stay, *nunc pro tunc* to September 1, 2023, as to the Second Finance Agreement, to allow AFCO to exercise its rights and remedies under applicable non-bankruptcy law in connection with the Second Finance Agreement and the Financed Policies, including cancelling the Second Finances Policies under the Second Finance Agreement effective as of September 1, 2023, recovering the Unearned Premiums, and applying the Unearned Premiums to the indebtedness owed under the Second Finance Agreement; (iii) waiving the fourteen-day waiting period described in Bankruptcy Rule 4001(a)(3); (iv) waiving all notice and waiting periods under the Second Finance Agreement and other applicable law; and (v) granting such additional relief to AFCO as is appropriate.

Dated: September 14, 2023
      Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: /s/ *Mark W. Eckard*
    Mark W. Eckard (No. 4542)
    1201 North Market Street, Suite 1500
    Wilmington, DE 19801
    Telephone: (302) 778-7500
    Facsimile: (302) 778-7575
    E-mail: meckard@reedsmith.com

*Counsel to AFCO Credit Corporation*