**<u>EXHIBIT A</u>**

**Proposed Final DIP Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "DIP Motion")[2] of Yellow Corporation ("Yellow Corp") and each of its above-captioned affiliates (collectively, the "Debtors"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), seeking entry of this final order (this "Final Order") (together with the Interim Order (as defined below), the "DIP Orders") among other things:

- authorizing the Borrower (as defined below) to obtain postpetition financing (the "DIP

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Motion or the DIP Loan Documents, as applicable.

<u>Financing</u>") pursuant to a postpetition credit facility of up to $212.5 million (the "<u>DIP Facility</u>") subject to the terms and conditions set forth in the Interim Order, this Final Order, that certain Debtor-In-Possession Credit Facility Term Sheet attached to the Interim Order as <u>Exhibit 1</u> (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "<u>DIP Term Sheet</u>"),[3] that certain Debtor-In-Possession Credit Facility Agreement attached hereto as **<u>Exhibit 1</u>** (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "<u>Junior DIP Credit Agreement</u>"), and that certain Amended and Restated Credit Agreement dated as of September 11, 2019, among Yellow Corp., the other guarantors party thereto from time to time, the lenders party thereto and Alter Domus Products Corp. (as amended, restated, supplemented or otherwise modified from time to time, including pursuant to that certain Amendment No. 4 and Restated Credit Agreement attached hereto as **<u>Exhibit 2</u>** (the "<u>B-2 Amendment</u>"), the "<u>Postpetition B-2 Credit Agreement</u>"), consisting of:

(A) a junior secured, superpriority debtor in possession multi-draw term loan facility (the "<u>Junior DIP Facility</u>") by and among Yellow Corp, as borrower (in such capacity, the "<u>Borrower</u>"), the DIP Guarantors (as defined in the Junior DIP Credit Agreement), MFN Partners, L.P. (the "<u>Junior DIP Lender</u>"), and Alter Domus Products Corp., as administrative agent and collateral agent (in such capacity, together with its successors and permitted assigns, the "<u>Junior DIP Agent</u>" and, together with the Junior DIP Lender, the "<u>Junior DIP Secured Parties</u>"), consisting of (1) new money term loans (the "<u>Junior DIP Loans</u>") in an aggregate principal amount of $42.5 million, of which (in each case, subject to certain conditions set forth in the Junior DIP Credit Agreement): (x) $17,894,736.84 was made available to be drawn upon entry of the Interim Order, (y) $11,184,210.53 was made available to be drawn on the date of the Second Draw (as defined below), and (z) $13,421,052.63 will be made available to be drawn on the date of the Third Draw (as defined below); and (2) up to $70.0 million of additional new money term loans (the "<u>Additional Junior DIP Loans</u>")[4] shall be made available to be drawn, at the Debtors' request following entry of this Final Order and the Third Draw, which amount may be drawn in one or multiple draws at the Debtors' discretion; and

(B) an incremental postpetition tranche of the Facility (as defined in the Postpetition B-2 Credit Agreement) constituting a senior secured, superpriority debtor in possession multi-draw term loan facility (the "<u>Postpetition B-2 Facility</u>") subject to the terms herein and the Postpetition B-2 Credit Agreement, consisting of new money term loans (the "<u>Postpetition B-2 Term Loans</u>" and, together with the Junior

---

[3]    Subject to the Documentation Principles (as defined in the DIP Term Sheet), the DIP Term Sheet (including all terms and provisions set forth therein) has been replaced by, as applicable, the Junior DIP Credit Agreement (including all terms and provisions set forth therein) and the Postpetition B-2 Credit Agreement (including all terms and provisions set forth therein).

[4]    The Additional Junior DIP Loans (if drawn) shall be junior and subordinate (including in right of payment) in all respects to the Prepetition Liens and Adequate Protection Liens (including the UST Adequate Protection Liens) of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties.

DIP Loans, the "<u>DIP Loans</u>")[5] provided by Citadel Credit Master Fund LLC (together with any permitted assignee thereof, the "<u>Postpetition B-2 Lenders</u>" and, together with the Postpetition B-2 Agent (as defined below), the "<u>Postpetition B-2 Secured Parties</u>")[6] in an aggregate principal amount of $100.0 million of which: (i) $42,105,263.16 was made available to be drawn upon entry of the Interim Order; (ii) $26,315,789.47 was made available to be drawn subject to certain conditions set forth in the Postpetition B-2 Credit Agreement (together with the Junior DIP Loans discussed in subclause (A)(ii)(a) above, the "<u>Second Draw</u>"); and (iii) $31,578,947.37 will be made available to be drawn upon the Court's entry of this Final Order (together with the Junior DIP Loans discussed in subclause (A)(ii)(b) above, the "<u>Third Draw</u>");

- authorizing the Borrower to incur, and the DIP Guarantors (as defined in the Junior DIP Credit Agreement and, together with the Borrower, the "<u>DIP Loan Parties</u>") to jointly and severally guarantee the Junior DIP Loans and all extensions of credit, financial accommodations, reimbursement obligations, interest, fees and premiums (including, without limitation, commitment fees or premiums and administrative agency fees, costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute)) earned, due and payable under the DIP Loan Documents (as defined below) (collectively, the "<u>Junior DIP Obligations</u>"), in each case subject and subordinate to the Carve-Out (as defined below) and the Canadian Priority Charges and in accordance with the terms hereof;

- authorizing the DIP Loan Parties to jointly and severally guarantee the Postpetition B-2 Term Loans and all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including, without limitation, commitment fees or premiums (including the Make-Whole Amount (as defined in the Postpetition B-2 Credit Agreement)) and administrative agency fees, costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute)) earned, due and payable under the DIP Loan Documents to the Postpetition B-2 Secured Parties (including all "Obligations" (as defined in the Postpetition B-2 Credit Agreement), collectively, the "<u>Postpetition B-2 Obligations</u>" and, together with the Junior DIP Obligations, the "<u>DIP Obligations</u>"), in each case subject and subordinate to the Carve-Out and the Canadian Priority Charges and in accordance with the terms hereof;

- authorizing the DIP Loan Parties to execute (to the extent not previously executed), deliver and perform, as applicable, under the Junior DIP Credit Agreement, the B-2

---

[5]   The commitments under the Junior DIP Facility shall be referred to herein as the "<u>Junior DIP Commitments</u>" and the commitments under the Postpetition B-2 Facility shall be referred to herein as the "<u>Postpetition B-2 Commitments</u>." The Junior DIP Commitments and the Postpetition B-2 Commitments, together, shall be referred to herein as the "<u>DIP Commitments</u>."

[6]   The Junior DIP Lender and the Postpetition B-2 Lenders, together, shall be referred to herein as the "<u>DIP Lenders</u>." The Junior DIP Secured Parties and the Postpetition B-2 Secured Parties, together, shall be referred to herein as the "<u>DIP Secured Parties</u>."

Amendment, the Postpetition B-2 Credit Agreement, the Agency Fee Letter, and all other documents and instruments that may be reasonably requested by the Junior DIP Secured Parties or the Postpetition B-2 Secured Parties in connection with the DIP Facility (in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof, the "<u>DIP Loan Documents</u>");

- subject and subordinate to the Carve-Out and the Canadian Priority Charges and otherwise solely to the extent set forth herein, granting to the Junior DIP Agent, for the benefit of the Junior DIP Secured Parties, and the Postpetition B-2 Agent, for the benefit of the Postpetition B-2 Secured Parties, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code;

- granting to the Junior DIP Agent, for the benefit of the Junior DIP Secured Parties, and the Postpetition B-2 Agent, for the benefit of the Postpetition B-2 Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral, on the terms described herein;[7]

- authorizing the Junior DIP Agent and the Postpetition B-2 Agent to take all commercially reasonable actions to implement the terms of this Final Order;

- waiving (a) the Debtors' right to surcharge the DIP Collateral, the Prepetition B-2 Collateral, and the Prepetition ABL Collateral (each as defined below) pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

- waiving the equitable doctrine of "marshaling" and other similar doctrines (a) for the benefit of the DIP Secured Parties with respect to the DIP Collateral and the DIP Obligations, and (b) for the benefit of the Prepetition Secured Parties (as defined below) with respect to the Prepetition Collateral and the Prepetition Secured Obligations (each as defined below), as applicable, in each case subject to the Carve-Out and Canadian Priority Charges;

- authorizing the Debtors to use proceeds of the DIP Facility and Cash Collateral (as defined below) solely in accordance with the DIP Orders, the DIP Loan Documents, the Approved Budget (subject to Permitted Variances (as defined in the Junior DIP

---

[7]    "<u>DIP Collateral</u>" shall mean all tangible and intangible prepetition and postpetition property of the DIP Loan Parties (other than: (a) any lease, license or agreement or any property to the extent a grant of a security interest therein would violate or invalidate such lease, license or agreement or similar arrangement or create a right of termination in favor of any other party thereto after giving effect to the applicable anti-assignment provisions of the UCC, PPSA, Bankruptcy Code or other applicable law, other than proceeds and receivables thereof, the assignment of which is deemed effective under the UCC, PPSA, Bankruptcy Code or other applicable law, notwithstanding such prohibition; and (b) "intent to use" trademark applications ((a) and (b), collectively, "<u>Excluded Property</u>")), whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, other than the Avoidance Actions and the Carve-Out Reserves (and any amounts held therein), but including the Avoidance Proceeds, subject to paragraph 11 of this Final Order in all respects.

Credit Agreement)), and the UST Cash Collateral Orders (as defined below);

- authorizing the Debtors to pay the DIP Obligations as they become due and payable in accordance with the DIP Loan Documents;

- authorizing the Debtors to remit ABL Cash Collateral (as defined below) to the Prepetition ABL Agent as set forth in the DIP Orders and for the Prepetition ABL Agent to apply such ABL Cash Collateral to permanently reduce or cash collateralize, as applicable, the Prepetition ABL Obligations as set forth in the DIP Orders;

- subject to the restrictions set forth in the DIP Loan Documents and the DIP Orders, authorizing the Debtors to use Prepetition Collateral (including Cash Collateral) and provide adequate protection to the Prepetition Secured Parties for any aggregate diminution in value of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "Diminution in Value");[8]

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the DIP Orders and the DIP Loan Documents; and

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order.

---

[8]    The adequate protection and certain other rights and protections to be provided to the Prepetition UST Secured Parties (as defined below) are set forth in a separate Court order being entered contemporaneously with this Final Order (the "Final UST Cash Collateral Order").  As used in this Final Order, the following terms shall have the meanings given to those terms in the Final UST Cash Collateral Order: UST Cash Collateral, Interim UST Cash Collateral Order, UST Cash Collateral Orders, Prepetition UST Tranche A Credit Agreement, Prepetition UST Tranche A Loan Documents, Prepetition UST Tranche A Borrower, Prepetition UST Tranche A Guarantors, Prepetition UST Tranche A Loan Parties, BNY, Prepetition UST Tranche A Agent, Prepetition UST Tranche A Lenders, Prepetition UST Tranche A Secured Parties, Prepetition UST Tranche A Obligations, Prepetition UST Tranche B Credit Agreement, Prepetition UST Tranche B Loan Documents, Prepetition UST Loan Documents, Prepetition UST Tranche B Borrower, Prepetition UST Tranche B Guarantors, Prepetition UST Tranche B Loan Parties, Prepetition UST Tranche B Agent, Prepetition UST Agent, Prepetition UST Tranche B Lenders, Prepetition UST Lenders, Prepetition UST Tranche B Secured Parties, Prepetition UST Tranche B Obligations, Prepetition UST Secured Obligations, Prepetition UST Tranche A Liens, Prepetition UST Tranche A Permitted Senior Liens, Prepetition UST Tranche A Collateral, Prepetition UST Tranche B Liens, Prepetition UST Liens, UST Tranche B Term Priority Collateral, Prepetition UST Tranche B Permitted Senior Liens, Prepetition UST Tranche B Priority Collateral, Prepetition UST Tranche B Collateral, Prepetition UST Secured Parties, UST Tranche B Adequate Protection Liens, UST Tranche A Adequate Protection Liens, UST Adequate Protection Liens, UST Tranche B 507(b) Claims, UST Tranche A 507(b) Claims, UST 507(b) Claims, UST Tranche B Adequate Protection Fees and Expenses, UST Tranche A Adequate Protection Fees and Expenses, UST Adequate Protection Fees and Expenses, UST Tranche B Adequate Protection Obligations, UST Tranche A Adequate Protection Obligations, UST Adequate Protection Obligations, UST Adequate Protection Payments, and UST Adequate Protection.

The Court having considered the final relief requested in the DIP Motion [Docket No. 16], the exhibits attached thereto, the *Declaration of Cody Leung Kaldenberg, Founding Member of and Partner at Ducera Partners In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Authorizing the Debtors to Use UST Cash Collateral, (V) Granting Adequate Protection, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 18] (the "Kaldenberg Declaration"), the *Declaration of Brian Whittman, Managing Director of Alvarez & Marsal North America, LLC, In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Authorizing the Debtors to Use UST Cash Collateral, (V) Granting Adequate Protection, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 17] (the "Whittman Declaration"), the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), the available DIP Loan Documents, including the DIP Term Sheet, the Junior DIP Credit Agreement, the Postpetition B-2 Credit Agreement, and the B-2 Amendment, and the evidence submitted to the Court, including arguments made at the interim hearing held on August 9, 2023 (the "Interim Hearing") and the final hearing held on September 15, 2023 (the "Final Hearing"); and due and sufficient notice of the Interim Hearing and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and the Court having entered, on August 18, 2023, the *Interim Order (I) Authorizing the Debtors to (A) Obtain*

*Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 302] (the "Interim Order"); and the Final Hearing having been held and concluded; and all objections, if any, to the final relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the final relief requested in the DIP Motion is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the preservation and maximization of the value of the Debtors' assets; and it appearing that the DIP Loan Parties' entry into the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[9]**

A.       *Petition Date*.  On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

B.       *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.       *Jurisdiction and Venue*.  This Court has core jurisdiction over these cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334

---

[9]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order approving the relief sought in the DIP Motion consistent with Article III of the United States Constitution. Venue for these cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Bankruptcy Local Rules 2002-1, 4001-2, and 9013-1.

D.    *Committee Formation*.  On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") in these chapter 11 cases (the "Chapter 11 Cases") pursuant to section 1102 of the Bankruptcy Code [Docket No. 269].  As of the date hereof, the U.S. Trustee has not appointed any other statutory committee.

E.    *Notice*.  The Final Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the DIP Motion and the Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice was or shall be required under the circumstances.

F.    *Cash Collateral*.  As used herein, the term "Cash Collateral" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Prepetition Secured Parties (and the Prepetition UST Secured Parties) or DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

G.    *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest

and subject in all respects to the provisions and limitations contained in this Final Order, including, without limitation, the provisions of paragraph 19 hereof, and after consultation with their attorneys, the Debtors admit, stipulate and agree that:

(i)     *Prepetition B-2 Term Loan*.  Pursuant to that certain Amended and Restated Credit Agreement, dated as of September 11, 2019 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition B-2 Credit Agreement" and, collectively with all other agreements (including all Loan Documents (as defined therein)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition B-2 Loan Documents"), by and among (a) Yellow Corp., as borrower (in such capacity, the "Prepetition B-2 Borrower"), (b) the guarantors party thereto (together with the Prepetition B-2 Borrower, the "Prepetition B-2 Loan Parties"), (c) Alter Domus Products Corp., as administrative and collateral agent (the "Prepetition B-2 Agent"),[10] and (d) the lenders party thereto from time to time (the "Prepetition B-2 Lenders" and, together with the Prepetition B-2 Agent, the "Prepetition B-2 Secured Parties"),[11] Prepetition B-2 Loan Parties incurred and continue to incur and accrue all "Obligations" under (and as defined in) the Prepetition B-2 Credit Agreement (the "Prepetition B-2 Obligations" and, together with the Postpetition B-2 Obligations, the "B-2 Obligations") to the

---

[10]   Alter Domus Product Corp. also serves as administrative agent and collateral agent with respect to the Postpetition B-2 Facility (in such capacity, the "Postpetition B-2 Agent" and, together with the Prepetition B-2 Agent, the "B-2 Agent").

[11]   The Prepetition B-2 Lenders and the Postpetition B-2 Lenders shall be referred to herein as the "B-2 Lenders." The Prepetition B-2 Secured Parties and the Postpetition B-2 Secured Parties shall be referred to herein as the "B-2 Secured Parties."

Prepetition B-2 Secured Parties on a joint and several basis;

(ii)     *Prepetition ABL Facility*.    Pursuant to that certain Loan and Security Agreement, dated as of February 13, 2014 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition ABL Credit Agreement", collectively with all other agreements (including all Loan Documents (as defined therein)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition ABL Loan Documents", and the credit facilities evidenced thereby, collectively, the "Prepetition ABL Facility") among (a) Yellow Corp, as administrative borrower (together with the other borrowers party thereto, the "Prepetition ABL Borrowers"), (b) the guarantors party thereto (together with the Prepetition ABL Borrowers, the "Prepetition ABL Loan Parties"),[12] (c) Citizens Business Capital, a division of Citizens Asset Finance, Inc. (a subsidiary of Citizens Bank, N.A.), as agent (the "Prepetition ABL Agent" and, together with the Prepetition B-2 Agent, the "Prepetition Agents"), (d) the lenders from time to time party thereto (the "Prepetition ABL Lenders" and, together with the Prepetition B-2 Lenders, the "Prepetition Lenders"), and (e) the issuing banks from time to time party thereto (together with the Prepetition ABL Agent and the Prepetition ABL Lenders, the "Prepetition ABL Secured Parties" and, together with the Prepetition Agents, the Prepetition Lenders, and the Bank Product Providers (as defined in the Prepetition ABL Credit Agreement), the "Prepetition Secured Parties"), the Prepetition ABL Loan Parties incurred "Obligations" (as defined in the Prepetition

---

[12]    The Prepetition ABL Loan Parties and the Prepetition B-2 Loan Parties, together, shall be referred to herein as the "Prepetition Loan Parties."

ABL Credit Agreement, the "<u>Prepetition ABL Obligations</u>" and, together with the Prepetition B-2 Obligations, the "<u>Prepetition Secured Obligations</u>") to the Prepetition ABL Secured Parties on a joint and several basis;

(iii)    *Prepetition Intercreditor Agreement*.  Pursuant to (and to the extent set forth in) that certain Amended and Restated Intercreditor Agreement, dated as of July 7, 2020 (as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "<u>Prepetition Intercreditor Agreement</u>" and, together with the Prepetition B-2 Loan Documents and the Prepetition ABL Loan Documents, the "<u>Prepetition Loan Documents</u>") by and among the Prepetition ABL Agent, the Prepetition B-2 Agent, the Prepetition UST Tranche A Agent, and the Prepetition UST Tranche B Agent, the parties thereto agreed, among other things, to the relative priority of such parties' respective security interests in and rights with respect to the Prepetition Collateral (as defined below), which relative priorities are governed by and set forth in the Prepetition Intercreditor Agreement.  The Prepetition Loan Documents and the Prepetition UST Loan Documents, including the Prepetition Intercreditor Agreement, are, in each case, binding and enforceable against the parties thereto;

(iv)    *Prepetition B-2 Obligations*.  As of the Petition Date, the Prepetition B-2 Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition B-2 Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition B-2 Credit Agreement) in the aggregate principal amount of not less than $485,372,693.29, plus accrued and accruing unpaid interest thereon and any fees, exit fees (including the exit fee arising pursuant to Section 2.05(c) of the Prepetition B-2 Credit Agreement), expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees and fees of other consultants and professionals), costs,

11

charges, indemnities, and other Prepetition B-2 Obligations in each case incurred under (or reimbursable pursuant to) or secured by the Prepetition B-2 Loan Documents;

(v)     *Prepetition ABL Obligations.*  As of the Petition Date, the Prepetition ABL Loan Parties were validly, justly and lawfully indebted and liable to the Prepetition ABL Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for (x) not less than $858,520.35 in outstanding principal amount of Loans (as defined in the Prepetition ABL Credit Agreement) plus accrued and unpaid interest thereon, (y) not less than $359,288,388.60 in outstanding and undrawn Letters of Credit (as defined in the Prepetition ABL Credit Agreement) plus accrued and unpaid fees with respect thereto, and (z) any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, financial advisors' fees, and fees of other consultants and professionals), costs, charges, indemnities, and other Prepetition ABL Obligations (including, without limitation, Bank Product Debt, as defined in the Prepetition ABL Credit Agreement) in each case incurred under (or reimbursable pursuant to) or secured by the Prepetition ABL Loan Documents.  As of the Petition Date, (1) ABL Cash Collateral in an amount equal to $91,449,240.35 was being held on deposit in the Borrowing Base Cash Account (as defined in the Prepetition ABL Credit Agreement) and (2) ABL Cash Collateral in an amount equal to $3,800,000 had been pledged to the Prepetition ABL Agent as security for certain Bank Product Debt owed to Citizens Bank, N.A. and/or its affiliates (such amounts described in this sentence, collectively, the "Existing ABL Cash Collateral Deposits");

(vi)     *Validity of Prepetition Secured Obligations.*  The Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties, as applicable, enforceable in accordance with the respective terms of the relevant

documents, and no portion of the Prepetition Secured Obligations or any payment made to the Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(vii)    *Validity, Perfection and Priority of Prepetition B-2 Liens*.  As of the Petition Date, pursuant to the Prepetition B-2 Loan Documents, the Prepetition B-2 Loan Parties granted to the Prepetition B-2 Agent, for the benefit of the Prepetition B-2 Secured Parties, a security interest in and continuing lien on (the "Prepetition B-2 Liens") substantially all of their respective assets and property (other than Excluded Assets (as defined in the Prepetition B-2 Loan Documents), collectively, the "Prepetition B-2 Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the Non-UST Tranche B Term Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition B-2 Priority Collateral"),[13] subject only to any liens permitted by the

---

[13]    For the avoidance of doubt, all references to Prepetition Collateral, including Prepetition B-2 Priority Collateral, Prepetition Joint Collateral, Prepetition ABL Priority Collateral and Prepetition UST Tranche B Priority Collateral in connection with any postpetition liens or claims, including the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the 507(b) Claims, and with respect to any intercreditor priorities, rights or obligations, including under this Final Order, the DIP Loan Documents and the Prepetition Intercreditor Agreement, shall in each case include all DIP Collateral that would have constituted such Prepetition Collateral (including any Prepetition B-2 Priority Collateral, Prepetition Joint Collateral, Prepetition ABL Priority Collateral and Prepetition UST Tranche B Priority Collateral) but for the commencement of the Chapter 11 Cases, including all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as such Prepetition Collateral (including any Prepetition B-2 Priority Collateral, Prepetition Joint

13

Prepetition B-2 Loan Documents to be senior to the Prepetition B-2 Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition B-2 Permitted Senior Liens"); (ii) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the UST Tranche B Joint Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Joint Collateral"), subject only to the *pari passu* liens of the Prepetition UST Tranche B Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition UST Tranche B Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition UST Tranche B Priority Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL Priority Collateral (as defined below), subject and subordinate only to the liens of the Prepetition ABL Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition ABL Priority Collateral;

(viii)    *Validity, Perfection and Priority of Prepetition ABL Liens*.    As of the Petition Date, pursuant to the Prepetition ABL Loan Documents, the Prepetition ABL Loan Parties granted to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, a

---

Collateral, Prepetition ABL Priority Collateral and Prepetition UST Tranche B Priority Collateral), regardless of where located and notwithstanding any monetary cap in any mortgage with respect to any Prepetition Collateral.

security interest in and continuing lien on (the "Prepetition ABL Liens" and, collectively with the Prepetition B-2 Liens, Prepetition UST Tranche A Liens, and Prepetition UST Tranche B Liens, the "Prepetition Liens") substantially all of their respective assets and property (other than Excluded Assets (as defined therein)) (collectively, the "Prepetition ABL Collateral" and, collectively with the Prepetition B-2 Collateral, Prepetition UST Tranche A Collateral, and Prepetition UST Tranche B Collateral, the "Prepetition Collateral"),[14] including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), subject only to any liens permitted by the Prepetition ABL Loan Documents to be senior to the Prepetition ABL Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition ABL Permitted Senior Liens" and, collectively with the Prepetition B-2 Permitted Senior Liens, Prepetition UST Tranche A Permitted Senior Liens, and Prepetition UST Tranche B Permitted Senior Liens, the "Prepetition Permitted Senior Liens");[15] (ii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition B-2 Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition B-2 Priority Collateral; (iii) a valid,

---

[14]    The Prepetition Collateral and the DIP Collateral, together, shall be referred to herein as the "Collateral."

[15]    For the avoidance of doubt, no reference to the "Prepetition Permitted Senior Liens" shall refer to or include the Prepetition Liens.

binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and Prepetition UST Tranche B Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition Joint Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and Prepetition UST Tranche B Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition UST Tranche B Priority Collateral;

(ix)    *Waiver of Challenge*.   None of the Prepetition Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(x)    *No Control*.   None of the Prepetition Secured Parties or the DIP Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition Loan Documents or the DIP Loan Documents;

(xi)    *No Claims or Causes of Action*.   No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Parties and each of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition Secured Party that

were in existence as of the Petition Date; and

(xii)    *Release*.  Each of the Debtors and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby (a) reaffirms the releases granted pursuant to paragraph G(xii) of the Interim Order and (b) absolutely, unconditionally, and irrevocably releases and forever discharges and acquits the Prepetition Secured Parties, the DIP Secured Parties, and each of their respective Representatives (solely in their capacities as such) (collectively, the "Released Parties"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Prepetition Loan Documents, the DIP Facility, the DIP Loan Documents (including the DIP Term Sheet, the Junior DIP Credit Agreement, the Postpetition B-2 Credit Agreement, and the B-2 Amendment), the DIP Loans, the negotiation thereof, and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Final Order; *provided* that the release set forth in this section shall not release (i) any claims against or liabilities of a Released Party that a court of competent jurisdiction determines by a final non-appealable order to have directly and primarily resulted from such Released Party's bad faith, fraud, gross negligence, or willful misconduct, or (ii) any DIP Secured Party(ies) from honoring its/their obligations to the

17

Debtors under the DIP Loan Documents.

        H.     *Findings Regarding DIP Financing and Use of Cash Collateral.*

        (i)     Good and sufficient cause has been shown for the entry of this Final Order and for authorization of the DIP Loan Parties to obtain financing pursuant to the DIP Loan Documents.

        (ii)     The Debtors have demonstrated an immediate and critical need to obtain the DIP Loans and to use Prepetition Collateral (including Cash Collateral) in order to, among other things, maintain, administer, and preserve certain limited operations and maximize the value of their estates through an orderly winddown process of their businesses and a comprehensive sale process for their assets. Without the ability of the Debtors to obtain sufficient working capital and liquidity through the DIP Facility, and the continued use of Cash Collateral and other Prepetition Collateral as set forth in the DIP Orders, the Debtors would be unable to preserve and maximize the value of their estates. Accordingly, access to the DIP Loans provided under the DIP Facility and to Cash Collateral as set forth in the DIP Orders is necessary to maximize the value of the assets of the Debtors' estates to maximize the recovery to all creditors of the estates in these Chapter 11 Cases.

        (iii)     The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents. The Debtors are also unable to obtain secured credit without granting to the DIP Secured Parties the DIP Liens and the DIP Superpriority Claims (each as defined below) and incurring the Adequate Protection Obligations (as defined below) on the terms and subject to the conditions set forth in the DIP Orders and in the DIP Loan Documents.

(iv)    Based on the DIP Motion, the First Day Declaration, the Kaldenberg Declaration, the Whittman Declaration, the findings set forth in the Interim Order and this Final Order, and the record and argument presented to the Court at the Interim Hearing and the Final Hearing, the terms of the DIP Facility, the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraph 14 of this Final Order (and, with respect to the Prepetition UST Secured Parties, as provided in the Final UST Cash Collateral Order) (collectively, the "Adequate Protection"), and the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to the DIP Orders, the UST Cash Collateral Orders, and the DIP Loan Documents are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

(v)    The DIP Orders, the DIP Facility, the Adequate Protection, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured Parties, the Prepetition Secured Parties, and the Prepetition UST Secured Parties (each of whom acted in good faith in negotiating such documents), and all of the loans and other financial accommodations extended by the DIP Secured Parties and the Prepetition Secured Parties (as applicable) to the DIP Loan Parties under, in respect of, or in connection with, the DIP Facility and the DIP Loan Documents (including the granting of the Adequate Protection Liens (as defined below), the UST Adequate Protection Liens, and other adequate protections provided herein and in the UST Cash Collateral Orders), shall be deemed to have been extended by the DIP Secured Parties in good faith, as that term is used in section 364(c) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and their respective

successors and assigns) and such Prepetition Secured Parties (and their respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order, this Final Order, or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(vi)     The Prepetition Secured Parties and the DIP Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the Interim Order, this Final Order, the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, the DIP Loan Documents, and all other documents related to and all transactions contemplated by the foregoing.  Accordingly, without limitation to any other right to indemnification, the Prepetition Secured Parties and the DIP Secured Parties shall be and hereby are indemnified (as applicable) as provided in and pursuant to the terms of the DIP Loan Documents and the Prepetition Loan Documents, as applicable, including, without limitation, Section 10.05 of the Junior DIP Credit Agreement, Section 10.05 of the Prepetition B-2 Credit Agreement, and Section 15.2 of the Prepetition ABL Credit Agreement.

(vii)    The Prepetition Secured Parties are entitled to the Adequate Protection as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to the Court, the terms of the proposed Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral, including Cash Collateral.

(viii)   To the extent that their consent is required, the requisite Prepetition Secured Parties have consented or are deemed to have consented to the use of Prepetition Collateral, including Cash Collateral, and the priming of certain of the Prepetition Liens on the Prepetition Collateral by the DIP Liens, in each case on the terms set forth in the DIP Loan Documents and the DIP Orders; *provided* that nothing in the DIP Orders or the DIP Loan Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in the DIP Orders, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering Prepetition Collateral or Prepetition UST Collateral (whether senior or junior) other than as contemplated by the DIP Orders (or, as applicable, the UST Cash Collateral Orders), or (z) prejudice, limit or otherwise impair the rights of any Prepetition Secured Party or Prepetition UST Secured Party to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the DIP Loan Parties to object to such relief, are hereby preserved, subject to the terms and conditions of the Prepetition Intercreditor Agreement and this Final Order.

(ix)   The Debtors prepared and delivered to the advisors to the Junior DIP Secured Parties, the Prepetition ABL Secured Parties, the B-2 Secured Parties, and the Prepetition UST Secured Parties an initial budget (the "Initial DIP Budget"), attached to the Interim Order as **Schedule 1**.   The Initial DIP Budget reflected, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each calendar week covered thereby.   The Interim Order provided that the Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Term Sheet (subject to the Documentation Principles) and with the approval of the Junior DIP Secured Parties, the B-2 Lenders, the Prepetition ABL Agent and the

Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld).  Each subsequent budget, once approved in accordance with the DIP Loan Documents and the DIP Orders and subject to the review and approval of the Junior DIP Lender, the B-2 Lenders, the Prepetition ABL Agent, and the Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld) shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget, an "Approved Budget"); *provided,* that any modification or amendment to the Approved Budget shall be provided to counsel for the Creditors' Committee no less than three (3) business days prior to the effectiveness of such modification or amendment.  The current Approved Budget is attached hereto as **Schedule 1**.

(x)    Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

(xi)    The intercreditor and subordination provisions set forth in the DIP Orders and in the other DIP Loan Documents are essential elements of the DIP Facility and the protections granted to the parties as consideration therefor and were, pursuant to the Interim Order, made immediately and irrevocably binding and enforceable.

I.    *Immediate Entry*.  Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Absent the relief granted in this Final Order, the Debtors will be unable to access continued liquidity through the DIP Loans and Cash Collateral required to fund their estates and maximize estate value.  The DIP Facility and continued use of

Prepetition Collateral (including Cash Collateral), in accordance with this Final Order and the DIP Loan Documents, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The DIP Motion and this Final Order comply with the requirements of Bankruptcy Local Rule 4001-2.

J.      *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens*.  Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Secured Parties, or the Prepetition Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien.  For the avoidance of doubt, the right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Senior Lien, and any such right is expressly subject to the DIP Liens and the Prepetition Liens (each as defined herein).  The Prepetition Liens and the DIP Liens are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens.

K.      *Intercreditor Agreement.*  Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement shall: (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties and Prepetition UST Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims or amounts payable in respect thereof), and (iii) not be deemed to be amended, altered or modified by the terms of the DIP Orders, the UST Cash Collateral Orders, or the DIP Loan Documents, unless expressly set forth therein or herein, as applicable.

L.       Contemporaneous with the entry of this Final Order, the Court is entering the Final

UST Cash Collateral Order granting the UST Adequate Protection (as defined in the Final UST

Cash Collateral Order) on a final basis to the Prepetition UST Secured Parties.

Based upon the DIP Motion, the foregoing findings and conclusions, and the overall record

before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.       *Motion Granted*.  The DIP Motion is granted on a final basis on the terms and

conditions set forth in this Final Order.  All objections to the Final Order, to the extent not

withdrawn, waived, settled, or resolved, are hereby overruled on the merits.

2.       *Authorization of the DIP Financing and the DIP Loan Documents.*

(a)       The DIP Loan Parties were authorized by the Interim Order, and are hereby

authorized on a final basis to execute (to the extent not previously executed), deliver, enter into

and perform all of their obligations under the DIP Loan Documents and to perform such other acts

as may be necessary, appropriate or desirable in connection therewith.  The Junior DIP Credit

Agreement, the Postpetition B-2 Credit Agreement, and the B-2 Amendment were deemed, by the

Interim Order, and hereby are deemed on a final basis effective as of the Closing Date (as defined

in the DIP Term Sheet).  The Borrower was previously authorized by the Interim Order, and is

hereby authorized on a final basis to borrow up to and draw (a) $60 million (the "Initial Draw")

pursuant to the terms and conditions of the DIP Loan Documents and (b) $37.5 million (the Second

Draw) on such date that the Second Draw became available to be drawn pursuant to the terms and

provisions of the DIP Loan Documents, and the DIP Guarantors were authorized by the Interim

Order, and are hereby authorized on a final basis to guarantee the Borrower's obligations on

account of the Initial Draw and the Second Draw, subject to any limitations set forth in the DIP

Loan Documents.  The Borrower is hereby authorized on a final basis to borrow and draw (x) an incremental $45 million (the Third Draw) upon entry of this Final Order and, thereafter, at the Borrower's request and without further approval or order of this Court, (y) up to $70 million in further incremental loans (the Additional Junior DIP Loans), and the DIP Guarantors are hereby authorized on a final basis to guarantee the Borrower's DIP Obligations on account of the Third Draw and (if and to the extent drawn) the Additional Junior DIP Loans, subject to any limitations set forth in the DIP Loan Documents.  The proceeds of the DIP Loans shall be used for all purposes permitted under the DIP Loan Documents and the DIP Orders, in each case subject to and in accordance with the Approved Budget (subject to any Permitted Variances).

(b)    In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party was, by the Interim Order, and hereby is authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents, execute or record pledge and security agreements, mortgages, financing statements and other similar documents, if any, and, subject to the provisions of the DIP Orders (or the UST Cash Collateral Orders, as applicable) to pay all DIP Obligations as and when such amounts become due and payable, including fees, expenses and indemnities in connection with or that may be reasonably required, necessary, or desirable in connection with the DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the DIP Loan Documents;

(ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Loan Documents, in each case, in such form as the respective DIP Secured Parties may accept and with any such other

approvals as required by the DIP Loan Documents, it being understood that no further approval of this Court, unless expressly set forth herein, shall be required for any such amendments, waivers, consents or other modifications (or the payment of any fees, including attorneys', accountants', appraisers' and financial advisors' fees, and other expenses, charges, costs, indemnities and other like obligations in connection therewith) that do not shorten the scheduled maturity of the DIP Facility, increase the aggregate DIP Commitments, increase the rate of interest or fees payable thereunder, or release any DIP Liens.  Updates, modifications, and supplements to the Approved Budget in accordance with the DIP Orders and the DIP Loan Documents shall not require any further approval of or order of this Court, but, for the avoidance of doubt, shall be subject to review and approval by the DIP Secured Parties, the B-2 Lenders, the Prepetition ABL Agent, and the Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld) and shall be provided to the Creditors' Committee no less three (3) business days (or a soon as reasonably practicable) prior to the effectiveness of such update, modification or supplement;

(iii)    the non-refundable payment to any of the DIP Secured Parties of all principal, interest, and fees in connection with the DIP Facility, including any amendment fees, premiums, servicing fees, audit fees, liquidator fees, structuring fees, arrangement fees, administrative agent's, collateral agent's or security trustee's fees, upfront fees, closing fees, commitment premiums, exit fees, closing date fees, prepayment premium or fees (including the Make-Whole Amount), or agency fees, and any amounts due in respect of any indemnification and expense reimbursement obligations, including, without limitation, reasonable and documented fees and out-of-pocket expenses of professionals retained by, or on behalf of, any of the DIP Secured Parties (including, without limitation, those of Quinn Emanuel Urquhart & Sullivan, LLP,

Ropes & Gray LLP, Province, LLC, White & Case LLP, GrayRobinson, P.A., Holland & Knight LLP, Osler, Hoskin & Harcourt LLP, FTI Consulting, Inc., and any local legal counsel or other advisors in any foreign jurisdiction (but no more than one local legal counsel or other advisor in any foreign jurisdiction for each of the Junior DIP Lender and the Postpetition B-2 Lenders), and any other advisors of the DIP Secured Parties as permitted under the DIP Loan Documents), in each case, as provided in the DIP Loan Documents (collectively, the "DIP Fees and Expenses"), without the need to file retention or fee applications; the payment of the foregoing amounts shall be irrevocable, and was and shall be deemed to have been approved upon entry of the Interim Order or this Final Order, as applicable, whether any such obligations arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

3.     *DIP Obligations*.  Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents constituted (and, as of the date of entry of this Final Order, shall continue to constitute) legal, valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable against each DIP Loan Party and their estates in accordance with their respective terms and this Final Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").  Upon execution and delivery of the DIP Term Sheet, the DIP Obligations included (and, as of the date of entry of this Final Order, shall continue to include) all loans and

any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the DIP Loan Parties to any of the DIP Secured Parties, in such capacities, in each case, under the DIP Loan Documents and the DIP Orders, including all principal, interest, costs, fees, expenses, premiums, indemnities and other amounts.  The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations.  Except as (and solely to the extent) expressly provided herein, no obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Documents to the Junior DIP Agent, the Postpetition B-2 Agent, and/or the other DIP Secured Parties shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.    *Carve-Out.*

(a)    As used herein, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all (x) fees and expenses (the "Allowed Professional

Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee  pursuant to section 328 or 1103 of the Bankruptcy Code ("Committee Professionals," and together with the Debtor Professionals, the "Professional Persons") and (y) reasonable and documented out-of-pocket reimbursable expenses incurred by members of the Creditors' Committee, solely to the extent incurred in their capacity as such, at any time before or on the first business day following delivery by the Junior DIP Agent or the Postpetition B-2 Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first business day following delivery by the Junior DIP Agent or the Postpetition B-2 Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").[16]  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Junior DIP Agent or the Postpetition B-2 Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, the Prepetition ABL Agent and counsel thereto, counsel to the Junior DIP Agent or the Postpetition B-2 Agent (whichever did not deliver the Carve-Out Trigger Notice), and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined in the Junior DIP Credit Agreement or the Postpetition B-2 Credit Agreement, as applicable) and acceleration of the DIP Obligations under the Junior DIP Facility or the Postpetition B-2 Facility, stating that the Post-Carve-Out

---

[16]    The Post-Carve-Out Trigger Notice Cap shall be increased to $3,500,000, without further approval or order of this Court, in the event that the U.S. Trustee appoints an official committee of equity holders (with any professionals retained by such committee constituting Professional Persons as that term is used herein).

Trigger Notice Cap has been invoked.

(b)     Delivery of Weekly Fee Statements. Not later than 7:00 p.m. New York time on the third business day of each week, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided* that, within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same day received to the Junior DIP Agent, the B-2 Lenders, and the Creditors' Committee).  If any Professional Person fails to deliver a Weekly Statement within three (3) calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve-Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

(c)     Carve-Out Reserves.

30

(i)     Commencing with the week ended August 18, 2023, and on or before the Thursday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of (a) the greater of (i) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered on the immediately prior Wednesday to the Debtors, the Junior DIP Agent, and the B-2 Lenders, and (ii) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (b) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the week occurring after the most recent Calculation Date; *provided* that the amount deposited into the Funded Reserve Account each week for each applicable Professional Person pursuant to the foregoing clauses (a)-(b) shall only ever exceed the applicable amount allocated to such Professional Person set forth in the Approved Budget (x) if such Professional Person's Estimated Fees and Expenses exceed the applicable budgeted amount allocated to that Professional Person under the Approved Budget and (y) only to the extent of such difference.  The Debtors shall deposit and hold such amounts in a segregated account designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust (the "<u>Funded Reserve Account</u>") to pay such Allowed Professional Fees prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)     On the day on which a Carve-Out Trigger Notice is given by the Junior DIP Agent or the Postpetition B-2 Agent to the Debtors with a copy to counsel to the Creditors' Committee and counsel to the Prepetition ABL Agent (the "<u>Termination Declaration Date</u>"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of

such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve-Out Trigger Notice Reserve") prior to any and all other claims. On the Termination Declaration Date, the Carve-Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve-Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve-Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve-Out Trigger Notice Cap (the "Post-Carve-Out Trigger Notice Reserve" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "Carve-Out Reserves") prior to any and all other claims. All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "Pre-Carve-Out Amounts"), but not, for the avoidance of doubt, the Post-Carve-Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, subject to the priorities set forth herein and in the DIP Loan Documents, in the UST Cash Collateral Orders and in the Prepetition Intercreditor Agreement, as applicable, to pay the Junior DIP Agent and the Postpetition B-2 Agent for the benefit of the applicable DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties and the Prepetition

UST Secured Parties in accordance with their rights and priorities as set forth in the DIP Orders, the UST Cash Collateral Orders and the Prepetition Intercreditor Agreement, as applicable. All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "Post-Carve-Out Amounts"), and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, subject to the priorities set forth herein, in the DIP Loan Documents, in the UST Cash Collateral Orders and in the Prepetition Intercreditor Agreement, as applicable, to pay the Junior DIP Agent and the Postpetition B-2 Agent for the benefit of the applicable DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties and the Prepetition UST Secured Parties in accordance with their rights and priorities as set forth in the DIP Orders and the UST Cash Collateral Orders. Notwithstanding anything to the contrary in the DIP Loan Documents or the DIP Orders, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in this paragraph 4, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth in this paragraph 4, prior to making any payments to the Junior DIP Agent, the Postpetition B-2 Agent, or the Prepetition Secured Parties and the Prepetition UST Secured Parties, as applicable. Notwithstanding anything to the contrary in the DIP Loan Documents or the DIP Orders, following delivery of a Carve-Out Trigger Notice, the Junior DIP Agent, the Postpetition B-2 Agent, the Prepetition UST Agent, and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but shall have a security interest in any

residual interest in the Carve-Out Reserves, with any excess paid to the Junior DIP Agent and the Postpetition B-2 Agent for application in accordance with the DIP Loan Documents, the DIP Orders, and the UST Cash Collateral Orders. Further, notwithstanding anything to the contrary in the DIP Orders or the UST Cash Collateral Orders, (i) disbursements by the Debtors from the Carve-Out Reserves shall not constitute DIP Loans or increase or reduce the DIP Obligations, (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Initial DIP Budget, any subsequent Approved Budget, Carve-Out, Post-Carve-Out Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in the DIP Orders, the UST Cash Collateral Orders, the DIP Facility, or in any Prepetition Loan Document or Prepetition UST Loan Document, the Carve-Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens (including the UST Adequate Protection Liens), the ABL 507(b) Claims (as defined below), B-2 507(b) Claims (as defined below), UST Tranche A 507(b) Claims, UST Tranche B 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations, the Prepetition Secured Obligations, or the Prepetition UST Secured Obligations.

(d)    _Payment of Allowed Professional Fees Prior to the Termination Declaration Date_. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(e)    _No Direct Obligation To Pay Allowed Professional Fees_. None of the Junior DIP Agent, the Junior DIP Lender, the Postpetition B-2 Secured Parties, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or

34

disbursements of any Professional Person incurred in connection with these Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the Junior DIP Agent, the Junior DIP Lender, the Postpetition B-2 Secured Parties, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    <u>Payment of Carve-Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under the DIP Orders, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

(g)    <u>Reservation of Rights</u>.  Nothing in this Final Order shall be construed as a waiver of any right of the DIP Secured Parties or any of the Prepetition Secured Parties or Prepetition UST Secured Parties to object to any fee statement, interim application, or monthly application issued or filed by any Professional Persons.

5.    *Junior DIP Superpriority Claims*.  Except as provided for herein, including in paragraph 7(i) below, or in the DIP Loan Documents, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Junior DIP Obligations shall constitute allowed superpriority administrative expense claims (the "<u>Junior DIP Superpriority Claims</u>") against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in

sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations except as set forth herein), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided* that, (i) with respect to the Prepetition UST Tranche B Priority Collateral, the Prepetition Joint Collateral, and the Prepetition ABL Priority Collateral, the Junior DIP Superpriority Claims shall be junior to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens of the Prepetition UST Secured Parties (*i.e.*, the Prepetition UST Liens), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties, and the Postpetition B-2 Liens (as defined below) and the Postpetition B-2 Superpriority Claims (as defined below), in each case in respect thereof (in such order of priority as set forth herein, in the Final UST Cash Collateral Order, and in the Prepetition Intercreditor Agreement, as applicable), and (D) the Adequate Protection Liens of the Prepetition UST Secured Parties (*i.e.*, the UST Adequate Protection Liens), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof, and the 507(b) Claims of the Prepetition UST Secured Parties (*i.e.*, the UST 507(b) Claims), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof; and (ii) with respect to the Prepetition B-2 Priority Collateral, shall be junior only to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, the Postpetition B-2 Liens and the Postpetition B-2 Superpriority Claims, and (D) the B-2 Adequate Protection Liens and B-2 507(b) Claims, and otherwise shall be senior in all respects to the Prepetition ABL Secured Parties' and the Prepetition UST Secured Parties' Prepetition Liens, Adequate Protection Liens, and 507(b) Claims with respect thereto).  The Junior DIP Superpriority Claims shall be payable

36

from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding (x) the Carve-Out Reserves and amounts held therein other than the Junior DIP Secured Parties' reversionary interest therein and (y) claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions"), but including any proceeds or property recovered as a result of any Avoidance Actions (but not the Avoidance Actions themselves), whether by judgment, settlement or otherwise (the "Avoidance Proceeds")), subject to the Carve-Out, the Canadian Priority Charges, and the other liens and claims as applicable as set forth in the immediately preceding sentence, and subject in all respects to paragraph 11 of this Final Order; *provided* that no prepayment, repayment, repurchase or exchange of borrowings under the Junior DIP Facility shall occur until all B-2 Obligations have first been indefeasibly paid in full in cash and any such prepayment, repayment, repurchase or exchange shall otherwise be consistent with the priorities for liens and claims securing the Junior DIP Facility as set forth in this Final Order, including in paragraph 7(i) below, or in the DIP Loan Documents.  The Junior DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6.    *Postpetition B-2 Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, and except as provided for herein or in the DIP Loan Documents, all of the Postpetition B-2 Obligations shall constitute allowed superpriority administrative expense claims (the "Postpetition B-2 Superpriority Claims," and, together with the Junior DIP Superpriority Claims, the "DIP Superpriority Claims") against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP

37

Loan Parties now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations except to the extent set forth herein), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided* that: (i) with respect to the Prepetition UST Tranche B Priority Collateral, the Prepetition Joint Collateral, and the Prepetition ABL Priority Collateral, the Postpetition B-2 Superpriority Claims shall be junior, in the following order, to (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Prepetition Liens of the Prepetition UST Secured Parties (*i.e.*, the Prepetition UST Liens) and the Prepetition ABL Secured Parties in respect thereof (in such order of priority as set forth herein, in the Final UST Cash Collateral Order, and in the Prepetition Intercreditor Agreement, as applicable), the Adequate Protection Liens of the Prepetition UST Secured Parties (*i.e.*, the UST Adequate Protection Liens), the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof, and the 507(b) Claims of the Prepetition UST Secured Parties (*i.e.*, the UST 507(b) Claims), the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof, and shall otherwise be senior in all respects to the Junior DIP Liens and the Junior DIP Superpriority Claims; and (ii) with respect to the Prepetition B-2 Priority Collateral, the Postpetition B-2 Superpriority Claims shall be junior only, in the following order, to (A) the Carve-Out and (B) the Canadian Priority Charges, and otherwise shall be senior in all respects to the Junior DIP Superpriority Claims, the Junior DIP Liens, and the Prepetition ABL Secured Parties' and the Prepetition UST Secured Parties' Prepetition Liens, Adequate Protection Liens, and 507(b) Claims with respect thereto.  The

Postpetition B-2 Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding (x) the Carve-Out Reserves and amounts held therein other than the B-2 Secured Parties' reversionary interest therein and (y) Avoidance Actions, but including the Avoidance Proceeds), subject only to the Carve-Out and the Canadian Priority Charges, and the other liens and claims as applicable as set forth in the immediately preceding sentence, and subject in all respects to paragraph 11 of this Final Order. The Postpetition B-2 Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

7.    *Junior DIP Liens*.    As security for the Junior DIP Obligations, effective and automatically properly perfected on the date the Interim Order was entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the Junior DIP Agent of, or over, any Collateral, without any further action by the Junior DIP Secured Parties, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "Junior DIP Liens") were, by the Interim Order,[17] and are hereby granted on a final basis to the Junior DIP Agent for the benefit of the Junior DIP Secured Parties:

(a)    *Liens on Unencumbered Property*.    Except as provided for herein, including in paragraph 7(i) below, or in the DIP Loan Documents, pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in (subject and subordinate only to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges) all tangible and

---

[17]    For clarity, liens on Avoidance Proceeds were not granted by the Interim Order but are granted under and effective upon entry of this Final Order (pursuant to the terms set forth herein), including paragraph 11 of this Final Order.

intangible prepetition and postpetition property of the DIP Loan Parties, other than Excluded Property, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, was not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and also excluding the Avoidance Actions and the Carve-Out Reserves (and any amounts held therein), but including Avoidance Proceeds (collectively, the "Unencumbered Property," and such liens, the "Junior DIP Unencumbered Property Liens")), subject in all respects to paragraph 11 of this Final Order.

(b)    *Liens on DIP Proceeds Account*.    Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in the proceeds of the Junior DIP Facility in the DIP Proceeds Account, *pari passu* with the Postpetition B-2 Liens (it being understood that the Prepetition Secured Parties have no Lien on the DIP Proceeds Account).

(c)    *Junior Liens Priming Certain Prepetition Secured Parties' Liens on Prepetition B-2 Priority Collateral*.    Except as provided for herein, including in paragraph 7(i) below, or in the DIP Loan Documents, pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior priority priming security interest in and lien (subject and subordinate only to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, (3) the Prepetition B-2 Liens and the Postpetition B-2 Liens, and (4) the B-2 Adequate Protection Liens) on all Prepetition B-2 Priority Collateral, which security interest and lien on the Prepetition B-2 Priority Collateral shall prime and be senior to the Prepetition ABL Liens, the ABL Adequate Protection Liens, the Prepetition UST Tranche B Liens, the Prepetition UST Tranche A Liens, the UST Tranche B Adequate Protection Liens and the UST

40

Tranche A Adequate Protection Liens (the "Junior DIP Priming B-2 Second Liens").  For the avoidance of doubt, except as provided for herein, including in paragraph 7(i) below, or in the DIP Loan Documents, pursuant the Junior DIP Priming B-2 Second Liens shall be (A) priming and senior in all respects to the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties with respect to the Prepetition B-2 Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(d)      *Junior Liens on Prepetition ABL Priority Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior priority security interest in, and lien upon all Prepetition ABL Priority Collateral (the "Junior DIP ABL Junior Liens"), which security interest and lien shall be junior to (with respect to the Prepetition ABL Priority Collateral), in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition ABL Liens, the ABL Adequate Protection Liens, the Prepetition B-2 Liens, the B-2 Adequate Protection Liens, the Postpetition B-2 Liens, the Prepetition UST Tranche B Liens, the UST Tranche B Adequate Protection Liens, the Prepetition UST Tranche A Liens, and the UST Tranche A Adequate Protection Liens (in accordance with the relative priorities set forth herein, in the UST Cash Collateral Orders, and in the Prepetition Intercreditor Agreement, as applicable).  Notwithstanding anything herein to the contrary, the Junior DIP ABL Junior Liens shall be (A) junior in all respects to the Prepetition Liens (in accordance with the relative priorities set forth herein, in the UST Cash Collateral Orders, and in the Prepetition Intercreditor Agreement, as applicable) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST

41

Secured Parties, and junior to the Postpetition B-2 Liens, in each case on the Prepetition ABL Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(e)     *Junior Liens on Prepetition UST Tranche B Priority Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in, and lien upon all Prepetition UST Tranche B Priority Collateral (the "Junior DIP UST Tranche B Priority Collateral Junior Liens"), which security interest and lien shall be junior to (with respect to the Prepetition UST Tranche B Priority Collateral), in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties, and to the Postpetition B-2 Liens (in accordance with the relative priorities set forth herein, in the UST Cash Collateral Orders, and in the Prepetition Intercreditor Agreement, as applicable).  Notwithstanding anything herein to the contrary, the Junior DIP UST Tranche B Priority Collateral Junior Liens shall be (A) junior in all respects to the Prepetition Liens (in accordance with the relative priorities set forth herein, in the UST Cash Collateral Orders, and in the Prepetition Intercreditor Agreement, as applicable) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and also junior to the Postpetition B-2 Liens, in each case on the Prepetition UST Tranche B Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(f)      *Junior Liens on Prepetition Joint Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in, and lien upon all Prepetition Joint Collateral (the "Junior DIP Prepetition Joint Collateral Junior Liens"), which security interest and lien shall be junior to (with respect to the Prepetition Joint Collateral), in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties, and to the Postpetition B-2 Liens (in such order of priority as set forth in the Prepetition Intercreditor Agreement).  Notwithstanding anything herein to the contrary, the Junior DIP Prepetition Joint Collateral Junior Liens shall be (A) junior in all respects to the Prepetition Liens (as set forth in the Prepetition Intercreditor Agreement) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and junior to the Postpetition B-2 Liens, in each case on the Prepetition Joint Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(g)      *Liens Junior to Certain Other Liens*.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected junior security interest in, and lien upon, all tangible and intangible prepetition and postpetition property of the DIP Loan Parties that, on or as of the Petition Date, is subject to Prepetition Permitted Senior Liens, which shall be, except with respect to the Junior DIP Priming B-2 Second Liens and the Junior DIP Unencumbered Property Liens, junior and subordinate to the liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties in such order of priority as set forth in the

Prepetition Intercreditor Agreement with respect to the Prepetition Collateral.  For the avoidance of doubt, except as provided for herein (including in paragraph 7(i) below) or in the DIP Loan Documents, the Junior DIP Liens shall prime the Prepetition ABL Liens, the Prepetition UST Tranche B Liens, and the Prepetition UST Tranche A Liens with respect to the Prepetition B-2 Priority Collateral (and, for the avoidance of doubt, the Junior DIP Liens with respect to the Prepetition B-2 Priority Collateral shall only be junior to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, (3) the Postpetition B-2 Liens and the Prepetition B-2 Liens, and (4) the B-2 Adequate Protection Liens), and with respect to each of the Prepetition ABL Priority Collateral, the Prepetition UST Tranche B Priority Collateral, and the Prepetition Joint Collateral, be junior in lien priority to the Prepetition Secured Parties (including the Prepetition UST Secured Parties) (which lien priority(ies), as applicable, shall remain governed by the Prepetition Intercreditor Agreement), any Adequate Protection Liens (including any adequate protection liens of the Prepetition UST Secured Parties) and the Postpetition B-2 Liens.

(h)     *No Senior Liens.*   The Junior DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code unless otherwise provided in the DIP Loan Documents or this Final Order, and (B) unless otherwise provided for in the DIP Loan Documents or in this Final Order, any liens or security interests arising after the Petition Date (other than the Postpetition B-2 Liens and any Adequate Protection Liens of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties, as set forth herein), including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan

44

Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code unless otherwise provided for in the DIP Loan Documents or in this Final Order; *provided* that, for the avoidance of doubt, the Junior DIP Liens, unless otherwise provided herein, shall be subject and subordinate to the Prepetition Liens and the Adequate Protection Liens of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties, as applicable, and the Postpetition B-2 Liens, in each case as set forth in the foregoing paragraphs and the DIP Loan Documents; *provided*, *further*, that, for the avoidance of doubt, under the DIP Facility and this Final Order, the Junior DIP Liens shall be *pari passu* with the Postpetition B-2 Liens on the DIP Proceeds Account (it being understood that the Prepetition Secured Parties have no lien on the DIP Proceeds Account), and be senior to the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition UST Tranche B Secured Parties, and the Prepetition UST Tranche A Secured Parties (but shall be junior and subordinate to the Carve-Out, the Canadian Priority Charges, the Postpetition B-2 Liens, the Prepetition B-2 Liens, and the B-2 Adequate Protection Liens) with respect to the Prepetition B-2 Priority Collateral, as set forth herein and in the DIP Loan Documents.

(i)     *Additional Junior DIP Loans*.  Notwithstanding anything to the contrary contained herein, or in the Final UST Cash Collateral Order or the DIP Loan Documents to the contrary, the claims and liens in respect of the Additional Junior DIP Loans (if any) shall not prime any prepetition or postpetition claims or liens of the Prepetition Secured Parties, the Prepetition UST Secured Parties or the Postpetition B-2 Secured Parties and shall be junior and subordinated (including in right of payment) in all respects to the prepetition and postpetition claims and liens of the Prepetition Secured Parties, the Prepetition UST Secured Parties and the Postpetition B-2

Secured Parties, including in respect of any adequate protection claims, obligations, and liens granted under this Final Order and the Final UST Cash Collateral Order, including, without limitation, the Adequate Protection Liens, the UST Adequate Protection Liens, the Adequate Protection Obligations, the UST Adequate Protection Obligations, the 507(b) Claims, the UST 507(b) Claims, the Postpetition B-2 Liens and the Postpetition B-2 Superpriority Claims, including, for the avoidance of doubt, to the payment and enforcement rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties, which rights with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth in this Final Order and the other DIP Loan Documents.

8.    *Postpetition B-2 Liens*.  As security for the Postpetition B-2 Obligations, effective and automatically properly perfected on the date the Interim Order was entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the B-2 Agent of, or over, any Collateral, without any further action by the Postpetition B-2 Secured Parties, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "Postpetition B-2 Liens" and, together with the Junior DIP Liens, the "DIP Liens")[18] were, under the Interim Order, and are hereby on a final basis granted to the Postpetition B-2 Agent for the benefit of the Postpetition B-2 Secured Parties:

(a)    *Liens on DIP Proceeds Account*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in the DIP Proceeds Account that are

---

[18]    A summary table of the priority of the DIP Liens is set forth in **Schedule 2** hereto.  This Schedule 2 is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict or inconsistency between the summary table in Schedule 2 and this Order, the Final UST Cash Collateral Order, or the Prepetition Intercreditor Agreement, regarding the priority of the DIP Liens or any other prepetition or postpetition liens of the Prepetition Secured Parties or the Prepetition UST Secured Parties, the lien priorities set forth in this Order, the Final UST Cash Collateral Order, and in the Prepetition Intercreditor Agreement, as applicable, shall control.

*pari passu* with the Junior DIP Liens on the DIP Proceeds Account.  For purposes of this Final Order and the DIP Loan Documents, the proceeds of the Postpetition B-2 Facility in the DIP Proceeds Account shall constitute Prepetition B-2 Priority Collateral.

(b)     *Liens on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a lien on and security interest in all Unencumbered Property (other than the DIP Proceeds Account), which shall be junior only to the Junior DIP Liens on such Unencumbered Property and senior to all other Liens.

(c)     *Liens on Prepetition Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior priority priming security interest and lien (subject and subordinate only to, in the following order, (1) the Carve-Out and (2) the Canadian Priority Charges) on the Prepetition Collateral with the same priority as the Prepetition B-2 Liens on such Prepetition Collateral (as set forth in the Prepetition Intercreditor Agreement and herein), including, for the avoidance of doubt, first priority liens on all Prepetition B-2 Priority Collateral, in each case *pari passu* with the Prepetition B-2 Liens on such Prepetition Collateral, and in the case of any Prepetition B-2 Priority Collateral, also senior to the Junior DIP Liens on such Prepetition Collateral, and to the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties.

(d)     *No Senior Liens.*  The Postpetition B-2 Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code unless otherwise provided in the DIP Loan Documents or this Final Order, and (B) unless otherwise provided for in the DIP Loan Documents or in this Final Order, any liens or security

interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code unless otherwise provided for in the DIP Loan Documents or in this Final Order; *provided* that, for the avoidance of doubt, the Prepetition B-2 Liens, unless otherwise provided herein, shall be subject and subordinate to the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties with respect to the Prepetition ABL Priority Collateral and the Prepetition UST Tranche B Collateral, as applicable, to the extent set forth in the foregoing paragraphs and the DIP Loan Documents, and senior to the Junior DIP Liens; *provided*, *further*, that, for the avoidance of doubt, the Postpetition B-2 Liens shall prime and be senior to the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition UST Tranche B Secured Parties, the Prepetition UST Tranche A Secured Parties, and the Junior DIP Liens (and shall be junior and subordinate to the Carve-Out and the Canadian Priority Charges and *pari passu* with the Prepetition B-2 Liens), in each case with respect to the Prepetition B-2 Priority Collateral.

9.      *Protection of DIP Secured Parties' Rights.*

(a)      Except as and to the extent set forth in clauses (b)-(d) immediately below, to the extent any Prepetition Secured Party (or any Prepetition UST Secured Party) has possession of, or control over, any Prepetition Collateral or DIP Collateral, or has been listed as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, such Prepetition Secured Party (and any Prepetition UST Secured Party) shall be deemed to have such possession or be so listed or have such possession or control as a gratuitous

bailee and/or gratuitous agent for the benefit of the Junior DIP Secured Parties, and Postpetition B-2 Secured Parties (as applicable, and, subject to the terms and provisions of this Final Order (including clauses (b)-(d) below (such clauses, the "Senior ICA Provisions"), the DIP Loan Documents and the Prepetition Intercreditor Agreement) such Prepetition Secured Party (including any such Prepetition UST Secured Party) shall comply with the instructions of the Junior DIP Agent or the Postpetition B-2 Agent, as applicable, with respect to any of the foregoing.

(b)     So long as there are any B-2 Obligations, Postpetition B-2 Superpriority Claims or B-2 507(b) Claims outstanding and until all B-2 Obligations, Postpetition B-2 Superpriority Claims and B-2 507(b) Claims have been indefeasibly paid in full in cash, the B-2 Secured Parties shall have the exclusive right to exercise remedies with respect to the Prepetition B-2 Priority Collateral and the Junior DIP Secured Parties shall not exercise any remedies with respect to the Prepetition B-2 Priority Collateral, and the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) with respect to the Prepetition B-2 Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement as if (solely following payment in full in cash of all B-2 Obligations, Postpetition B-2 Superpriority Claims and B-2 507(b) Claims but prior to the Junior DIP Obligations being satisfied in full) the Junior DIP Agent was party thereto as a Tranche B-2 Term Agent (as defined in the Prepetition Intercreditor Agreement); *provided* that, notwithstanding the foregoing (and the Senior ICA Provisions), nothing contained herein (including the Senior ICA Provisions) shall be construed to prevent the Junior DIP Lender or the Junior DIP Agent from (i) filing a claim or statement of interest with respect to the outstanding obligations owed to it in the Chapter 11 Cases, (ii) taking any action (not adverse to the priority status of any other Prepetition Agent or any Prepetition Secured Party (including any Prepetition UST Secured Party) and not adverse to the priority status

49

of any Postpetition B-2 Secured Party, in order to create, perfect, preserve or protect (but not enforce) its lien, or (iii) filing any necessary or responsive pleadings in opposition to any motion, adversary proceeding, or other pleading filed by any person objecting to or otherwise seeking disallowance of the claim or lien of any Junior DIP Lender or the Junior DIP Agent (such actions in clauses (i) through (iii), the "Permitted Actions").

(c)    So long as there are any Prepetition ABL Obligations or ABL 507(b) Claims outstanding and until all Prepetition ABL Obligations and ABL 507(b) Claims have been, solely with respect to the Prepetition ABL Priority Collateral, indefeasibly paid in full in cash, including the cash collateralization of all issued and outstanding letters of credit, the Prepetition ABL Secured Parties shall have the exclusive right to exercise remedies with respect to the Prepetition ABL Priority Collateral and the Junior DIP Secured Parties shall not exercise any remedies (but shall be permitted to take Permitted Actions) with respect to the Prepetition ABL Priority Collateral until the Prepetition Secured Obligations and the Postpetition B-2 Obligations have been indefeasibly paid in full in cash (including the cash collateralization of all issued and outstanding letters of credit of the Prepetition ABL Secured Parties), and the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) and the Postpetition B-2 Secured Parties with respect to the Prepetition ABL Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement and this Final Order, as applicable.

(d)    So long as there are any Prepetition UST Tranche B Obligations or UST Tranche B 507(b) Claims outstanding and until all Prepetition UST Tranche B Obligations and UST Tranche B 507(b) Claims have been, solely with respect to the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, indefeasibly paid in full in cash, the Prepetition UST Tranche B Secured Parties shall have the exclusive right to exercise remedies with respect to

the Prepetition UST Tranche B Priority Collateral and the Prepetition Joint Collateral (*provided* that, with respect to the Prepetition Joint Collateral, the B-2 Secured Parties, if any B-2 Obligations or B-2 507(b) Claims remain outstanding, shall maintain their enforcement and allocation rights as set forth in the Prepetition Intercreditor Agreement) and the Junior DIP Secured Parties shall not exercise any remedies (but shall be permitted to take Permitted Actions) with respect to the Prepetition UST Tranche B Priority Collateral and the Prepetition Joint Collateral until the Prepetition Secured Obligations and the Postpetition B-2 Obligations have been indefeasibly paid in full in cash, and the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Tranche B Secured Parties) and the Postpetition B-2 Secured Parties with respect to the Prepetition Joint Collateral and the Prepetition UST Tranche B Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement and this Final Order, as applicable.

(e)

(i)     Except as otherwise set forth in this Final Order, until the B-2 Obligations are indefeasibly paid in full in cash, any proceeds of the Prepetition B-2 Priority Collateral received by any Junior DIP Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to such Prepetition B-2 Priority Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the B-2 Agent for the benefit of the B-2 Secured Parties, subject to the terms of this Final Order, the DIP Loan Documents, and the Prepetition Intercreditor Agreement, in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.

(ii)    Except as otherwise set forth in this Final Order and until the Prepetition Secured Obligations, the Prepetition UST Secured Obligations and Postpetition B-2 Obligations are indefeasibly paid in full in cash, any proceeds of Prepetition ABL Priority

Collateral, Prepetition Joint Collateral, and Prepetition UST Tranche B Priority Collateral, received by any Junior DIP Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to such DIP Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the B-2 Agent or the applicable Prepetition Agent (including the Prepetition UST Tranche B Agent) for the benefit of the applicable Prepetition Secured Parties (including Prepetition UST Tranche B Secured Parties), subject to the terms of this Final Order, the DIP Loan Documents, the UST Cash Collateral Orders and the Prepetition Intercreditor Agreement, in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The B-2 Agent and each Prepetition Agent (including the Prepetition UST Tranche B Agent), as applicable, is hereby authorized to make any such endorsements as agent for the Junior DIP Secured Parties.  This authorization is coupled with an interest and is irrevocable.

(iii)    Except as otherwise set forth in this Final Order and until the Prepetition Secured Obligations, the Prepetition UST Secured Obligations and Postpetition B-2 Obligations are indefeasibly paid in full in cash, any proceeds of Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, and Prepetition UST Tranche B Priority Collateral, received by any Junior DIP Secured Party on account of any Additional Junior DIP Loans, whether in connection with the exercise of any right or remedy (including setoff) relating to such DIP Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the B-2 Agent or the applicable Prepetition Agent (including the Prepetition UST Tranche B Agent) for the benefit of the applicable Prepetition Secured Parties (including the Prepetition UST Tranche B Secured Parties), subject to the terms of this Final Order, the DIP Loan Documents, the UST Cash Collateral Orders and the Prepetition

Intercreditor Agreement, in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The B-2 Agent and each Prepetition Agent (including the Prepetition UST Tranche B Agent), as applicable, is hereby authorized to make any such endorsements as agent for the Junior DIP Secured Parties.  This authorization is coupled with an interest and is irrevocable.

(f)      The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except (i) as otherwise permitted by the DIP Loan Documents (including the Junior DIP Credit Agreement and the Postpetition B-2 Credit Agreement) or (ii) in the case of any Prepetition ABL Priority Collateral, UST Tranche B Priority Collateral, and Prepetition Joint Collateral, pursuant to an order of the Court.

(g)      Subject to the Senior ICA Provisions, upon the occurrence and during the continuation of an Event of Default (as defined in the Junior DIP Credit Agreement) that has not been waived by the Junior DIP Lender under the applicable DIP Loan Documents and following delivery of written notice (a "Termination Notice") (which may be by e-mail) on not less than five (5) calendar days' notice (such five (5) calendar day period, the "Junior DIP Agent Remedies Notice Period") to lead restructuring counsel to the Debtors, lead restructuring counsel to the Postpetition B-2 Agent, lead restructuring counsel to each of the Prepetition Agents, lead restructuring counsel to the Creditors' Committee, counsel to the Prepetition UST Secured Parties, and the U.S. Trustee (the "Remedies Notice Parties"), the Junior DIP Agent may (and any automatic stay otherwise applicable to the Junior DIP Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this Final Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit the Junior DIP Agent to take any or all of the

following actions, at the same time or different times, unless the Court orders otherwise (*provided* that, during the Junior DIP Agent Remedies Notice Period, the Debtors, the Creditors' Committee and/or any party in interest shall be entitled to seek an emergency hearing with the Court and the rights of the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties and the Prepetition Secured Parties (including the Prepetition UST Secured Parties) are fully preserved) (*provided*, *further*, that, if a request for such hearing is made prior to the end of the Junior DIP Agent Remedies Notice Period, then the Junior DIP Agent Remedies Notice Period shall be continued until the Court hears at its earliest availability and rules with respect thereto): (a) immediately terminate and/or revoke the Debtors' right under this Final Order and any other DIP Loan Documents to use any Cash Collateral (subject to the Carve-Out and related provisions and the Canadian Priority Charges), (b) terminate the Junior DIP Facility and any DIP Loan Document as to any future liability or obligation of the Junior DIP Secured Parties but without affecting any of the Junior DIP Obligations or the Junior DIP Liens securing such Junior DIP Obligations; (c) declare all Junior DIP Obligations to be immediately due and payable; (d) deliver a Carve-Out Trigger Notice; and (e) invoke the right to charge interest at the default rate under the DIP Loan Documents.  Upon delivery of such Termination Notice by the Junior DIP Agent, without further notice or order of the Court, subject only to the last sentence of paragraph 9(h), the Junior DIP Secured Parties', the Postpetition B-2 Secured Parties' and the Prepetition Secured Parties' consent to use Cash Collateral and the Debtors' ability to borrow Additional Junior DIP Loans hereunder will automatically terminate and the Junior DIP Secured Parties will have no obligation to provide any Junior DIP Loans or other financial accommodations.  As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

      (h)      Immediately following the occurrence of an Event of Default and the

delivery of the Termination Notice, subject to the Junior DIP Agent Remedies Notice Period, the Junior DIP Secured Parties shall be authorized to, subject to the Prepetition Intercreditor Agreement, the terms and provisions set forth in this Final Order, including the Senior ICA Provisions, and the Carve-Out and related provisions and the Canadian Priority Charges: (a) freeze monies or balances in the Debtors' accounts (unless such monies constitute Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral); (b) immediately set-off any and all amounts in accounts maintained by the Debtors with, or subject to the control of, the Junior DIP Agent or the Junior DIP Secured Parties against the Junior DIP Obligations (unless such amounts constitute Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), (c) enforce any and all rights against the DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), including, without limitation, foreclosure on all or any portion of the DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), occupying the Debtors' premises, sale or disposition of the DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral); and (d) take any other actions or exercise any other rights or remedies permitted under this Final Order, the DIP Loan Documents (including the Junior DIP Credit Agreement) or applicable law (other than with respect to Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral).  If the Junior DIP Secured Parties are not prohibited by the Court from taking any enforcement action with respect to the DIP

Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), the Debtors shall cooperate with the Junior DIP Secured Parties in their efforts to enforce their security interest in the DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such Junior DIP Secured Parties from enforcing their security interests in the DIP Collateral, subject to the terms and priorities set forth in this Final Order (including paragraph 7(i) below), the UST Final Cash Collateral Order, the DIP Loan Documents and the Prepetition Intercreditor Agreement, as applicable.  During the Junior DIP Agent Remedies Notice Period, the Debtors may use the proceeds of the Junior DIP Facility to the extent drawn prior to the occurrence of an Event of Default (as defined in the Junior DIP Credit Agreement) and Cash Collateral to make payments, in each case, solely in accordance with the Approved Budget and the terms of the DIP Loan Documents and to the extent necessary to avoid immediate and irreparable harm to the Collateral and protection and preservation thereof.

(i)    Upon the occurrence and during the continuation of an Event of Default (as defined in the Postpetition B-2 Credit Agreement) that has not been waived by the B-2 Lenders under the Postpetition B-2 Credit Agreement (or any other applicable DIP Loan Document) and following delivery of a Termination Notice (which may be by e-mail) on not less than five (5) calendar days' notice (such five (5) calendar day period, the "B-2 Agent Remedies Notice Period") to the Remedies Notice Parties, and the Junior DIP Agent (and counsel thereto), the B-2 Agent may (and any automatic stay otherwise applicable to the B-2 Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this

Final Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit the B-2 Agent to take any or all of the following actions, at the same time or different times, unless the Court orders otherwise (*provided*, that, during the B-2 Agent Remedies Notice Period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court and the rights of the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties and the Prepetition Secured Parties (including the Prepetition UST Secured Parties) are fully preserved) (*provided*, *further*, that, if a request for such hearing is made prior to the end of the B-2 Agent Remedies Notice Period, then the B-2 Agent Remedies Notice Period shall be continued until the Court hears at its earliest availability and rules with respect thereto): (a) immediately terminate and/or revoke the Debtors' right under this Final Order and any other DIP Loan Documents to use any Cash Collateral (subject to the Carve-Out and related provisions and the Canadian Priority Charges), (b) terminate the Postpetition B-2 Facility and any DIP Loan Document as to any future liability or obligation of the Postpetition B-2 Secured Parties but without affecting any of the Postpetition B-2 Obligations or the Postpetition B-2 Liens securing such B-2 Obligations; (c) declare all Postpetition B-2 Obligations to be immediately due and payable; (d) deliver a Carve-Out Trigger Notice; and (e) invoke the right to charge interest at the default rate under the DIP Loan Documents.  Upon delivery of such Termination Notice by the B-2 Agent, without further notice or order of the Court, subject only to the last sentence of paragraph 9(j), the B-2 Secured Parties' consent to use Cash Collateral and the Debtors' ability to incur additional Postpetition B-2 Obligations hereunder will automatically terminate and the B-2 Secured Parties will have no obligation to provide any Postpetition B-2 Term Loans or other financial accommodations.  As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a

copy of same on the docket.

(j)     Immediately following the occurrence of an Event of Default (as defined in the Postpetition B-2 Credit Agreement) and the delivery of the Termination Notice, subject to the B-2 Agent Remedies Notice Period, the B-2 Secured Parties shall be authorized to, subject to the Prepetition Intercreditor Agreement, the terms and provisions set forth in this Final Order, and the Carve-Out and related provisions and the Canadian Priority Charges: (a) freeze monies or balances in the Debtors' accounts (unless such monies constitute Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral); (b) immediately set-off any and all amounts in accounts maintained by the Debtors with, or subject to the control of, the B-2 Agent or the B-2 Secured Parties against the B-2 Obligations (unless such amounts constitute Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), (c) enforce any and all rights against the Prepetition Collateral (other than Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), including, without limitation, foreclosure on all or any portion of the Prepetition Collateral (other than Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), occupying the Debtors' premises, sale or disposition of the Prepetition Collateral (other than Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral); and (d) take any other actions or exercise any other rights or remedies permitted under this Final Order, the DIP Loan Documents (including the Postpetition B-2 Credit Agreement) or applicable law (other than with respect to Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral).  If the B-2 Secured Parties are not prohibited by the Court from taking any enforcement action with respect to the Prepetition Collateral (other than Prepetition

ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), the Debtors shall cooperate with the B-2 Secured Parties in their efforts to enforce their security interest in the Prepetition Collateral (other than Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such B-2 Secured Parties from enforcing their security interests in the Prepetition Collateral.  During the B-2 Agent Remedies Notice Period, the Debtors may use the proceeds of the Postpetition B-2 Facility to the extent drawn prior to the occurrence of an Event of Default and Cash Collateral to make payments, in each case, solely in accordance with the Approved Budget and the terms of the DIP Loan Documents and to the extent necessary to avoid immediate and irreparable harm to the Prepetition Collateral and protection and preservation thereof.

(k)     Upon the occurrence and continuance of any of the below events, any such event being deemed an Event of Default, the Prepetition ABL Agent, on not less than five (5) calendar days' notice to the Junior DIP Secured Parties (and their counsel), the Postpetition B-2 Secured Parties (and their counsel), and the Remedies Notice Parties (such five (5) calendar day period, the "ABL Remedies Notice Period"), and unless the Court orders otherwise (*provided*, that, during the ABL Remedies Notice Period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court), may terminate its and the Prepetition ABL Secured Parties' consent to the Debtors' use of Cash Collateral constituting Prepetition ABL Priority Collateral (the date of such termination, the "Cash Collateral Termination Date"): (i) the DIP Obligations have been accelerated in accordance with the terms of the DIP Loan Documents; (ii) the filing of any motion or pleading by the Debtors, or the entry of an order on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify this

Final Order in a manner adverse to the Prepetition ABL Secured Parties without the consent of the Prepetition ABL Secured Parties; (iii) the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors; (iv) the Debtors shall attempt to invalidate, reduce or otherwise impair the Prepetition ABL Obligations; (v) the dismissal of any of the Chapter 11 Cases; (vi) the effective date of any plan of reorganization; (vii) the conversion of any of the Chapter 11 Cases to a case under chapter 7; (viii) the delivery of a Carve-Out Trigger Notice as provided in this Final Order; (ix) the failure of the Debtors to make any payments as and when required under paragraph 13(c) and paragraph 14(a)(iii) of this Final Order; (x) the Prepetition ABL Obligations shall not have been fully repaid or cash collateralized, as applicable, in accordance with the Prepetition ABL Loan Documents by the date that is four (4) months after entry of the Interim Order; (xi) the Debtors shall materially breach any of the other provisions of paragraph 13 of this Final Order; (xii) any Approved Budget shall be updated, supplemented, replaced, or otherwise modified without the prior consent of the Prepetition ABL Agent; or (xiii) at any time on or after the date that is four (4) weeks after the entry of the Interim Order, the Debtors shall breach the receipts variance covenant filed at Docket No. 330.

(l)      Immediately upon the occurrence of the Cash Collateral Termination Date, the Prepetition ABL Secured Parties shall be authorized, subject to the Prepetition Intercreditor Agreement, the terms and provisions set forth in this Final Order, and the Carve-Out and the Canadian Priority Charges, to: (a) freeze monies or balances in the Debtors' accounts which constitute proceeds of ABL Priority Collateral; (b) immediately set-off any and all amounts in accounts maintained by the Debtors to the extent such amounts constitute proceeds of ABL Priority Collateral; (c) enforce any and all rights against the DIP Collateral that constitutes proceeds of ABL Priority Collateral, including, without limitation, foreclosure on all or any portion of the DIP

Collateral constituting ABL Priority Collateral and occupying the Debtors' premises; and (d) take any other actions or exercise any other rights or remedies permitted under this Final Order, the Prepetition ABL Loan Documents or applicable law, subject to the Prepetition Intercreditor Agreement.  If the Prepetition ABL Secured Parties are permitted by the Court to take any enforcement action with respect to the ABL Priority Collateral, the Debtors shall cooperate with the Prepetition ABL Secured Parties in their efforts to enforce their security interest in the ABL Priority Collateral, and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such Prepetition ABL Secured Parties from enforcing their security interests in the ABL Priority Collateral.

(m)    No rights, protections or remedies of the DIP Secured Parties, the Prepetition Secured Parties, or the Prepetition UST Secured Parties granted by this Final Order, the Final UST Cash Collateral Order, or the DIP Loan Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

10.    *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve-Out and Canadian Priority Charges, no costs or expenses of administration of these cases or any Successor Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition B-2 Collateral, or the Prepetition ABL Collateral (in each case, including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar

principle of law, without the prior written consent of the Junior DIP Agent, the B-2 Agent, or the Prepetition ABL Agent, as applicable, and no consent shall be implied from any action, inaction or acquiescence by any of the DIP Secured Parties, the B-2 Secured Parties, or Prepetition ABL Secured Parties, and nothing contained in the DIP Orders shall be deemed to be a consent by the DIP Secured Parties, the B-2 Secured Parties, or Prepetition ABL Secured Parties to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.  Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the DIP Secured Parties (excluding the Junior DIP Secured Parties) or Prepetition Secured Parties.

11.    *No Marshaling*.  In no event shall the DIP Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the DIP Obligations.  In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or the Prepetition Secured Obligations; *provided, however,* that the DIP Secured Parties and the Prepetition Secured Parties shall use commercially reasonable efforts to first collect from Collateral other than Avoidance Proceeds if necessary to satisfy the DIP Obligations and Adequate Protection Obligations, as applicable.

12.    *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Secured Parties or Prepetition Secured Parties pursuant to the provisions of this Final Order, the DIP Loan Documents or any subsequent order of the Court were, under the Interim Order, and shall be on a final basis, subject only to the reservation of rights set out in paragraph 19 of this Final Order with respect to the Prepetition Secured Parties, irrevocable and received free and clear of any claim, charge, assessment or other liability.

13.     *Use of Cash Collateral.*

(a)     *Authorization to Use Cash Collateral.* The Debtors are hereby authorized, solely on the terms and conditions of this Final Order and (as applicable) the Final UST Cash Collateral Order, to use all Cash Collateral in accordance with the DIP Loan Documents and Approved Budget (subject to Permitted Variances).

(b)     *Proceeds of DIP Loans*. All proceeds of the DIP Loans shall be funded and held in the DIP Proceeds Account in accordance with the terms of the DIP Loan Documents, which DIP Proceeds Account shall be maintained as a segregated account by the Borrower as set forth in the DIP Loan Documents. For the avoidance of doubt, none of the DIP Proceeds Account, any funds therein constituting DIP Loans, or any proceeds of the DIP Loans (exclusive, for the avoidance of doubt, of any proceeds constituting Prepetition ABL Priority Collateral) shall constitute Prepetition ABL Priority Collateral or be subject to any terms or provisions in the DIP Orders governing ABL Cash Collateral.

(c)     *Procedures for Use of ABL Cash Collateral.*

(i)     *Delivery of ABL Cash Collateral to Prepetition ABL Agent.* Beginning on the first business day after the date that the Interim Order was entered, and on each business day thereafter following receipt of any Cash Collateral constituting Prepetition ABL Priority Collateral ("ABL Cash Collateral"), the Debtors shall, unless previously paid, (x) wire 80% of the amount of ABL Cash Collateral received on or after August 3, 2023 into the applicable Debtor's blocked account ending *8700 maintained at Citizens Bank on the first business day following receipt of the funds to the extent not already remitted (or such other account as the Prepetition ABL Agent and the Debtors may agree in writing from time to time), to the extent not wired prior to the Petition Date, or (y) otherwise deliver 80% of the ABL Cash Collateral received

63

on or after August 3, 2023 to the Prepetition ABL Agent in a manner satisfactory to the Prepetition ABL Agent (such remittance, deposit, or delivery, each a "Daily Delivery Event").  Commencing on the third business day of the week following entry of the Interim Order (and on the third business day of each week thereafter) (each, an "Eligibility Reporting Date"), the Debtors shall deliver to the Prepetition ABL Agent information on collections from the prior week (as well as, if applicable, information regarding postpetition collections from prior thereto if either (a) such information has yet to be reported or (b) such information reflects a change from prior reporting (each of (a) and (b), as applicable, the "Supplemental Reporting")) in form and detail reasonably acceptable to the Prepetition ABL Agent.  On the business day after each Eligibility Reporting Date, the Debtors shall (x) to the extent the cumulative Daily Delivery Events since August 3, 2023 (taking Supplemental Reporting into account, if applicable) resulted in delivery of less than 80% of the amount of ABL Cash Collateral received, remit to the Prepetition ABL Agent ABL Cash Collateral in an amount necessary to equal 80% of the amount of ABL Cash Collateral received on or after August 3, 2023 or (y) to the extent the cumulative Daily Delivery Events since August 3, 2023 (taking Supplemental Reporting into account, if applicable) resulted in delivery in excess of 80% of the amount of ABL Cash Collateral received, deduct from that day's Daily Delivery Event ABL Cash Collateral in an amount necessary to equal 80% of the amount of ABL Cash Collateral received on or after August 3, 2023.  The portion of such ABL Cash Collateral to remain with the Debtors in accordance with this paragraph 13(c)(i) is referred to herein as the "Available ABL Cash Collateral."  The Debtors have been permitted, under the Interim Order, and shall continue to be permitted on a final basis to access and utilize all Available ABL Cash Collateral in accordance with the Approved Budget and the terms and provisions of the DIP Orders.  For the avoidance of doubt, no portion of the Existing ABL Cash Collateral Deposits shall

be required to be remitted to the Debtors pursuant to this paragraph 13(c)(i), nor shall any portion of the Existing ABL Cash Collateral Deposits constitute Available ABL Cash Collateral.

(ii)    *ABL Cash Collateral in Prepetition ABL Agent's Possession.*  The Prepetition ABL Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any other Prepetition ABL Secured Party's possession or control which constitute Prepetition ABL Priority Collateral or proceeds thereof.

(d)    *Application of Cash Collateral to Prepetition ABL Obligations.* Notwithstanding anything to the contrary in this Final Order, except with respect to the Available ABL Cash Collateral as set forth in paragraph 13(c)(i), the Prepetition ABL Agent is authorized at any time, and from time to time, to apply all or any portion of the ABL Cash Collateral (including, without limitation, the Existing ABL Cash Collateral Deposits) now or hereafter in the Prepetition ABL Agent's or any other Prepetition ABL Secured Party's possession or control to the payment or cash collateralization, as applicable, of Prepetition ABL Obligations (including, without limitation, any accrued and unpaid ABL Adequate Protection Fees and Expenses in accordance with paragraph 18, without limiting the obligation of the DIP Loan Parties under paragraph 18 to pay such amounts directly) in accordance with the Prepetition ABL Loan Documents, and no other party in interest shall have any right to use or direct the use of such ABL Cash Collateral, except that the Debtors shall have the right to use and direct the use of Available ABL Cash Collateral. All such applications to Prepetition ABL Obligations shall be final, subject only to the right of parties in interest, including the Debtors, to seek a determination in accordance with paragraph 19 of this Final Order that such applications resulted in the payment of any unsecured prepetition claim of the Prepetition ABL Secured Parties.

(e)    *Accounts Collection Practices.*  The Debtors shall continue to maintain at all times reasonably appropriate staffing, staffing levels, and other resources with respect to Accounts billing and collections in order to maximize the Debtors' recovery of proceeds with respect to such Accounts.  The Debtors shall also provide the Prepetition ABL Agent with reasonable access to all Accounts billing and collections systems and associated staff members.

14.    *Adequate Protection of Prepetition Secured Parties.*  Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) for the aggregate Diminution in Value and as an inducement to the Prepetition Secured Parties to consent to the priming of certain of the Prepetition Liens and the use of their Cash Collateral, the Prepetition Secured Parties were, by the Interim Order, and hereby are granted on a final basis the following Adequate Protection (collectively, the "Adequate Protection Obligations"):

(a)    *Adequate Protection of Prepetition ABL Secured Parties.*

(i)    *ABL Adequate Protection Liens.*  The Prepetition ABL Agent was, by the Interim Order, and is hereby granted on a final basis, for the benefit of the Prepetition ABL Secured Parties, effective and perfected upon the date of the entry of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition ABL Secured Parties' Diminution in Value upon all of the Prepetition Collateral (the "ABL Adequate Protection Liens"): (i) in the case of the Prepetition ABL Priority Collateral, senior to all other liens, subject and subordinate to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges; (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian

66

Priority Charges, (C) the Prepetition B-2 Liens, (D) the B-2 Adequate Protection Liens, and (E) the

DIP Liens; (iii) in the case of the Prepetition UST Tranche B Collateral, subject and subordinate

to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the

Prepetition UST Tranche B Liens, (D) the UST Tranche B Adequate Protection Liens, (E) the

Prepetition B-2 Liens and the Postpetition B-2 Liens, and (F) the B-2 Adequate Protection Liens;

(iv) in the case of the Prepetition Joint Collateral, subject and subordinate to, in the following

order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Prepetition UST Tranche

B Liens, the Prepetition B-2 Liens, the Postpetition B-2 Liens, the UST Tranche B Adequate

Protection Liens, and the B-2 Adequate Protection Liens; and (iv) in the case of the Unencumbered

Property, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian

Priority Charges, and (C) the Junior DIP Unencumbered Property Liens.

> (ii)     *ABL Section 507(b) Claims*.  The Prepetition ABL Secured Parties

were, by the Interim Order, and are hereby granted on a final basis allowed superpriority

administrative expense claims against the Debtors on a joint and several basis (without the need to

file any proof of claim) on account of the Prepetition ABL Secured Parties' Diminution in Value

under section 507(b) of the Bankruptcy Code (the "ABL 507(b) Claims"), which ABL 507(b)

Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof

(excluding Avoidance Actions but including, without limitation, Avoidance Proceeds), subject in

all respects to paragraph 11 of this Final Order.  Except as otherwise provided herein, the ABL

507(b) Claims shall have priority over any and all administrative expenses and all other claims

against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without

limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the

Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other

non-consensual lien, levy or attachment; *provided*, *however*, that the ABL 507(b) Claims shall be junior in all respects to (i) the Carve-Out, (ii) the Canadian Priority Charges, and (iii) the applicable senior DIP Liens, Prepetition Liens and Adequate Protection Liens (as set forth in this Final Order).

(iii)    *Prepetition ABL Secured Parties' Interest, Fees and Expenses*.  As further adequate protection, subject to the Carve-Out and the Canadian Priority Charges, the DIP Loan Parties shall continue to make current cash payments on the first calendar day of each month of (x) interest at the Default Rate (as defined in the Prepetition ABL Credit Agreement), (y) fees with respect to Letters of Credit pursuant to Section 3.2.2 of the Prepetition ABL Credit Agreement (including any such fees that accrue at the default rate as set forth therein), and (z) other fees, in each case pursuant to, due, and payable under the terms of the Prepetition ABL Loan Documents, and shall currently pay in cash, subject to the review procedures set forth in paragraph 18 of this Final Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition ABL Secured Parties' legal and financial advisors, including, without limitation, those of Choate, Hall & Stewart LLP, Richards, Layton & Finger, PA, AlixPartners, LLP, and any local legal counsel or other advisors, consultants, and other professionals reimbursable under the Prepetition ABL Loan Documents (collectively, the "ABL Adequate Protection Fees and Expenses" and, together with the ABL Adequate Protection Liens and ABL 507(b) Claims, the "ABL Adequate Protection Obligations"); *provided, however,* that the ABL Adequate Protection Fees and Expenses shall be limited to fees and expenses incurred by such professionals on behalf of the Prepetition ABL Secured Parties with respect to the Prepetition ABL Obligations and the ABL Adequate Protection Obligations.

(iv)    *Additional Rights and Protections*.  The Debtors shall continue to deliver to the Prepetition ABL Agent and the Creditors' Committee (substantially concurrent with

delivery to the Junior DIP Agent) all financial statements, reports, certificates and related items that are required to be delivered to the Junior DIP Agent pursuant to the DIP Loan Documents. On the third (3rd) business day of each week (commencing on the first full calendar week after entry of the Interim Order), the Debtors shall deliver to the Prepetition ABL Agent and the Creditors' Committee a Borrowing Base Certificate (as defined in the Prepetition ABL Credit Agreement) as required pursuant to Section 8.1(ii) of the Prepetition ABL Credit Agreement, which shall be accompanied by customary backup reporting in form and detail reasonably acceptable to the Prepetition ABL Agent, including, without limitation, Account agings, and a roll-forward of Prepetition ABL Priority Collateral; *provided* that the first Borrowing Base Certificate of each month following entry of the Interim Order shall further include a line item for Ineligible Accounts and a breakdown of Ineligible Accounts as part of the customary backup reporting provided.  The Debtors shall make the members of their senior management and its professional advisors available for update calls at least one time per calendar week with the prepetition ABL Agent, the Creditors' Committee and their respective professional advisors, at times reasonably acceptable to the Prepetition ABL Agent and the Creditors' Committee to discuss the cases, the then-current Approved Budget, the Budget Variance Reports, the Liquidity Reports (each as defined in the Junior DIP Credit Agreement), other reporting delivered pursuant to the DIP Loan Documents, union matters, the status of any monetization strategies being pursued by the Debtors, including pursuant to the Bidding Procedures Order (as defined in the Junior DIP Credit Agreement), and any other matters (including business, operational and due diligence matters) reasonably requested by the Prepetition ABL Agent or the Creditors' Committee.

   (b)  *Adequate Protection of Prepetition B-2 Secured Parties.*

     (i)  *B-2 Adequate Protection Liens*.  The Prepetition B-2 Agent was, by

the Interim Order, and is hereby granted on a final basis, for the benefit of the Prepetition B-2

Secured Parties, effective and perfected upon the date of the entry of the Interim Order and without

the necessity of the execution of any mortgages, security agreements, pledge agreements, financing

statements or other agreements, a valid, perfected replacement security interest in and lien on

account of the Prepetition B-2 Secured Parties' Diminution in Value upon all DIP Collateral (the

"B-2 Adequate Protection Liens" and, together with the ABL Adequate Protection Liens, the

"Adequate Protection Liens"):[19] (i) in the case of the Prepetition B-2 Priority Collateral, subject

and subordinate to, in the following order, (A) the Carve-Out and (B) the Canadian Priority

Charges; (ii) in the case of the Prepetition UST Tranche B Priority Collateral, subject and

subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges,

(C) the Prepetition UST Tranche B Liens, and (D) the UST Tranche B Adequate Protection Liens;

(iii) in the case of the Prepetition Joint Collateral, subject and subordinate to, in the following

order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Postpetition B-2 Liens

and the Prepetition B-2 Liens, and *pari passu* with the Prepetition UST Tranche B Liens; (iv) in

the case of the Prepetition ABL Priority Collateral, subject and subordinate to, in the following

order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition ABL Liens, and

(D) the ABL Adequate Protection Liens; and (v) in the case of the Unencumbered Property, subject

and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges

and (C) the Junior DIP Unencumbered Property Liens.

(ii)      *B-2 Section 507(b) Claims*.   The Prepetition B-2 Secured Parties

were, by the Interim Order, and are hereby granted on a final basis allowed superpriority

---

[19]   For the avoidance of doubt, any reference herein to the "Adequate Protection Liens of the Prepetition UST Secured Parties" shall refer to the UST Adequate Protection Liens (as defined and set forth in the contemporaneously entered Final UST Cash Collateral Order).

administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition B-2 Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "B-2 507(b) Claims" and, together with the ABL 507(b) Claims, the "507(b) Claims"), which B-2 507(b) Claims shall be payable from and have recourse to all DIP Collateral, subject in all respects to paragraph 11 of this Final Order.  Except as otherwise provided herein, the B-2 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that the B-2 507(b) Claims shall be junior to (i) the Carve-Out, (ii) the Canadian Priority Charges, (iii) the B-2 Obligations, and (iv) the applicable senior DIP Liens, Prepetition Liens and Adequate Protection Liens and claims, including 507(b) Claims (as set forth in this Final Order and the Prepetition Intercreditor Agreement).

(iii)    *Prepetition B-2 Secured Parties' Interest, Fees and Expenses*.  As further adequate protection, the DIP Loan Parties shall continue to make current cash payments of (x) interest on the last business day of each month at the rate accruing since the Petition Date (which is and shall be deemed for all purposes to be the default rate set forth in Section 2.07 of the Prepetition B-2 Credit Agreement with respect to ABR Loans (as defined in the Prepetition B-2 Credit Agreement)) and (y) other fees, in each case pursuant to, due, and payable under the terms of the Prepetition B-2 Loan Documents, and shall currently pay in cash, subject to the review procedures set forth in paragraph 18 of this Final Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the current and former (former professionals

limited to those professionals set forth at (iv) below) Prepetition B-2 Secured Parties' legal and financial advisors, including, without limitation, those of (i) White & Case LLP, GrayRobinson, P.A., and Osler, Hoskin & Harcourt LLP (as counsel to the B-2 Lenders), (ii) FTI Consulting, Inc. (as financial advisor to the B-2 Lenders), (iii) Holland & Knight LLP (as counsel to the Prepetition B-2 Agent), and (iv) Cousins Law and Milbank LLP (as Canadian counsel and lead restructuring counsel, respectively, to certain former Prepetition B-2 Lenders) (*provided* that the fees and expenses of the professionals set forth in this clause (iv) shall be reimbursed only as incurred through August 15, 2023), and with respect to clauses (i) and (iii), any local legal counsel or other advisors in any foreign jurisdiction (but no more than one local legal counsel or other advisor in any foreign jurisdiction) (collectively with the B-2 Adequate Protection Liens and B-2 507(b) Claims, the "B-2 Adequate Protection Obligations"); *provided, however,* that the B-2 Adequate Protection Fees and Expenses shall be limited to fees and expenses incurred by such professionals on behalf of the Prepetition B-2 Secured Parties in connection with the Prepetition B-2 Secured Parties in their role as such.

(c)     *Adequate Protection of Prepetition UST Secured Parties.*  The Adequate Protection in favor of the Prepetition UST Secured Parties is set forth in the Interim UST Cash Collateral Order.

15.     *Maintenance of Collateral*.  The DIP Loan Parties shall continue to maintain and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Loan Documents and the DIP Loan Documents, as applicable.

16.     *Authorization to Record DIP Liens and Adequate Protection Liens.*

(a)     Without in any way limiting the validity of the automatic perfection of the DIP Liens and the Adequate Protection Liens under the terms of this Final Order and the Final

UST Cash Collateral Order, the DIP Secured Parties and the Prepetition Secured Parties were, by the Interim Order, and are hereby authorized on a final basis, but not required, to execute in the name of the DIP Loan Parties or the Prepetition Loan Parties (as applicable), as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction, or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests granted to them hereunder (the "Perfection Actions").  All such Perfection Actions shall be deemed to have been taken on the date of entry of the Interim Order.  The automatic stay was, by the Interim Order, and is on a final basis hereby modified to the extent necessary to permit the DIP Secured Parties and each Prepetition Secured Parties to take any Perfection Action.  For the avoidance of doubt, the DIP Liens and the Adequate Protection Liens were, by the Interim Order, and shall be deemed on a final basis valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order, whether or not the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties, or the Prepetition Secured Parties take such Perfection Actions, in each case, subject to the priorities set forth in this Final Order, the UST Cash Collateral Orders, and the Prepetition Intercreditor Agreement, as applicable.

(b)     A certified copy of this Final Order may, in the discretion of the Junior DIP Agent, the Postpetition B-2 Agent and each Prepetition Agent, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing and recording offices are hereby authorized to accept a certified copy of this Final Order for filing and/or recording, as applicable.

17.    *Preservation of Rights Granted Under this Final Order.*

(a)    Other than the claims and liens expressly granted or permitted by this Final

Order, including the Carve-Out and the Canadian Priority Charges, no claim or lien having a

priority superior to or *pari passu* with those granted by this Final Order shall be permitted while

any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except

as otherwise expressly provided in or permitted under this Final Order, including the provisions of

paragraph 19, the DIP Liens and the Adequate Protection Liens shall not be: (i) junior to any lien

or security interest that is avoided and preserved for the benefit of the Debtors' estates under

section 551 of the Bankruptcy Code; (ii) except as provided in the DIP Orders or the DIP Loan

Documents, subordinated to or made *pari passu* with any other lien or security interest, whether

under section 364(d) of the Bankruptcy Code or otherwise; (iii) except as provided in the DIP

Orders or the DIP Loan Documents, subordinated to or made *pari passu* with any liens arising

after the Petition Date, including, without limitation, any liens or security interests granted in favor

of any federal, state, municipal or other domestic or foreign governmental unit (including any

regulatory body), commission, board or court for any liability of the DIP Loan Parties; or

(iv) except as provided in this Final Order or the DIP Loan Documents, junior to any intercompany

liens or security interests of the DIP Loan Parties.

(b)    The occurrence and continuance of any Event of Default shall, after written

notice by the Junior DIP Agent or the B-2 Agent to the Borrower, counsel to the Borrower, the

U.S. Trustee, and lead counsel to the Creditors' Committee, constitute an event of default under

this Final Order and, upon such notice, interest, including, where applicable, default interest, shall

accrue and be payable as set forth in the Junior DIP Credit Agreement and the Postpetition B-2

Credit Agreement, as applicable.  Notwithstanding any order that may be entered dismissing any

of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting these cases to cases to a Successor Case: (A) the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Liens, the 507(b) Claims, and the Prepetition Liens shall continue in full force and effect, shall maintain their priorities as provided in this Final Order and the Final UST Cash Collateral Order, and shall remain binding on all parties in interest until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash; (B) the other rights granted by the DIP Orders, including with respect to the Carve-Out and the Canadian Priority Charges, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in the DIP Orders.

(c)　　　If any or all of the provisions of the DIP Orders are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Junior DIP Agent, the Postpetition B-2 Agent, or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, and enforceability of the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, the Carve-Out and the Canadian Priority Charges. Notwithstanding any such reversal, modification, vacatur or stay, the DIP Obligations, DIP Liens, Adequate Protection Obligations, Adequate Protection Liens, DIP Superpriority Claims, and 507(b) Claims incurred prior to the actual receipt of written notice by the Junior DIP Agent, the Postpetition B-2 Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled

to, and are hereby granted, all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code.

(d)    Except as expressly provided in the DIP Orders or in the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the DIP Orders and the DIP Loan Documents, as well as the Carve-Out and the Canadian Priority Charges, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these cases, or terminating the joint administration of these cases; (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents); or (iii) confirming a chapter 11 plan in any of the cases.  The terms and provisions of the DIP Orders and the DIP Loan Documents shall continue in full force and effect in these cases and in any Successor Cases until all DIP Obligations, Prepetition Secured Obligations, and Adequate Protection Obligations are indefeasibly paid in full in cash and the DIP Commitments have been terminated.  Any confirmation order entered in these cases shall not discharge or otherwise affect in any way the joint and several obligations of the DIP Loan Parties to the DIP Secured Parties under the DIP Facility and the DIP Loan Documents, other than after (x) the payment in full and in cash of all DIP Obligations and the termination of the DIP Commitments or (y) the occurrence of the effective date of such confirmed plan (solely in accordance with the terms of such plan).

(e)    Nothing in the DIP Orders or in the other DIP Loan Documents shall, nor shall the extension of Postpetition B-2 Term Loans or the exercise of any rights thereunder, in any way impair or otherwise effect the validity, perfection, extent or priority of the Prepetition B-2 Liens.

18.  *Payment of Fees and Expenses*.  The DIP Loan Parties were, by the Interim Order, and hereby are authorized and directed on a final basis to pay the DIP Fees and Expenses and Adequate Protection Fees and Expenses.  DIP Fees and Expenses and Adequate Protection Fees and Expenses that constitute professional fees and expenses shall not be subject to allowance or review by the Court but shall be subject to the review procedures set forth in this paragraph 18.  Professionals for the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties, and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines; however, any time that such professionals seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each such professional shall provide summary copies of its invoices (including aggregate amounts of fees and expenses and total amount of time on a per-professional basis), which are not required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, to the DIP Loan Parties, counsel to the Creditors' Committee, counsel to the Prepetition UST Secured Parties, and any other statutory committee, and the U.S. Trustee (together, the "Review Parties"); *provided, however*, that (i) the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law; *provided*, *further*, that the Review Parties reserve the right to seek reasonable, additional information regarding such invoices and time entries of any such professional and/or to challenge any assertion of privilege with respect to the same.  Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) calendar days after receipt

(the "Review Period").  If no written objection is received by 12:00 a.m. (midnight), prevailing Eastern Time, on the last date of the Review Period, the Debtors shall pay such invoices within five (5) business days.  If an objection to a professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether the invoiced amount arose or was incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the Debtors were, by the Interim Order, and are hereby on a final basis, authorized and directed to pay, on or prior to the Closing Date (as defined in the DIP Term Sheet): (i) any accrued and unpaid ABL Adequate Protection Fees and Expenses, invoices of which have been provided to lead counsel of the Debtors at least one (1) business day prior to the Closing Date and (ii) any costs, fees, expenses (including reasonable and documented legal fees and expenses) and other compensation contemplated by the DIP Orders or the DIP Loan Documents, with respect to items (i) and (ii) above, whether arising before or after the Petition Date, which costs, fees and expenses shall not be subject to the Review Period.  No attorney or advisor to any Junior DIP Secured Party, Postpetition B-2 Secured Party, or any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

19. *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon the Debtors in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases

and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or other party in interest with requisite standing has timely and properly filed an adversary proceeding or initiated a contested matter (subject to the limitations contained herein, a "Challenge Motion") (*provided* that no interested party shall be permitted to raise a defense to standing on the basis that the applicable Debtor is a Delaware limited liability company) by no later than (i) the earlier of (w) one business day before the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization, whichever occurs first, (x) as to the Creditors' Committee only, 100 calendar days after entry of the Interim Order, (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period (as defined below), the Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) 75 calendar days after entry of the Interim Order, or (B) the date that is 30 calendar days after their appointment, and (z) for all other parties in interest, 75 calendar days after entry of the Interim Order; and (ii) any such later date as (v) has been agreed to in writing (which may be by email) by the Prepetition ABL Agent with respect to the Prepetition ABL Obligations or the Prepetition ABL Liens, (w) has been agreed to in writing (which may be by email) by the Prepetition B-2 Agent with respect to the Prepetition B-2 Obligations or the Prepetition B-2 Liens, or (x) has been ordered by the Court for cause upon a motion filed and served within any applicable period or (y) has been ordered by the Court after disposition or resolution of a Challenge Motion (the time period established by the foregoing clauses (i)-(ii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, or (B) asserting or prosecuting any Avoidance Action

or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against any Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "Representatives") in connection with or related to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; *provided*, *however*, that any pleadings filed in connection with a Challenge shall comply with the Federal Rules of Bankruptcy Procedure and set forth with specificity the basis for such Challenge, and any Challenges not so raised prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no Challenge is timely and properly filed during the Challenge Period or a final non-appealable order is not entered in favor of the plaintiff in any such Challenge, then: (1) the Debtors' stipulations, admissions, agreements and releases contained in the DIP Orders shall be binding on all parties in interest; (2) the obligations of the Prepetition Loan Parties under the Prepetition Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except as provided in the Prepetition Intercreditor Agreement), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment,

recharacterization, subordination (whether equitable, contractual (other than as provided in the Prepetition Intercreditor Agreement), or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives shall be deemed forever waived, released and barred.  If any Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in the DIP Orders shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  If the Creditors' Committee files a motion seeking standing to commence a Challenge prior to the expiration of the Challenge Period in accordance with the requirements set forth in this Final Order, the Challenge Period shall be extended (solely as to the Creditors' Committee and solely as to the Challenges specifically identified in the complaint attached to such standing motion) until the earlier of (i) the date such standing motion is

withdrawn, or (ii) entry of a final, non-appealable order of the Court denying such standing motion. Nothing in the DIP Orders vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, Prepetition Secured Obligations or Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in these cases.  For the avoidance of doubt, any trustee shall, until the expiration of the Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by the trustee or any other party in interest on behalf of the Debtors' estates), be deemed to be a party (other than the Debtors) in such adversary proceeding or contested matter and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, and stipulations made by the Debtors in this Final Order.

20.    *Limitation on Use of DIP Financing Proceeds and Collateral.*  Notwithstanding any other provision of this Final Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out or the Canadian Priority Charges (unless an applicable Canadian Priority Charge is triggered), may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Secured Parties, or the Prepetition Secured Parties, or their respective Representatives (in their capacities as such), or any action purporting to do the foregoing in respect

82

of the DIP Obligations, DIP Liens, DIP Superpriority Claims, Prepetition Secured Obligations, Adequate Protection Liens, or 507(b) Claims or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Secured Obligations and/or liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under the DIP Orders, the DIP Loan Documents or the Prepetition Loan Documents in respect of the Prepetition Secured Obligations, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (*provided* that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and DIP Collateral (including Cash Collateral) may be used by the Creditors' Committee to investigate, but not to prosecute, (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties, up to an aggregate cap of no more than $350,000, *provided*, for the avoidance of doubt, that the Committee Professionals shall be entitled to seek allowance of any fees and/or expenses in excess of $350,000 incurred in connection with the foregoing pursuant to Bankruptcy Code section 503(b), *provided, further,* that the administrative expenses in respect thereof shall be subordinate in all respects to the Carve Out, the Canadian Priority Charges, the DIP Superpriority Claims, the 507(b) Claims, and any other superpriority administrative claims granted under the DIP Orders or the UST Cash Collateral Orders; (b) attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition Secured Parties' or the DIP Secured Parties', as applicable, enforcement or realization on the Prepetition Secured Obligations, Prepetition Collateral, DIP Obligations, DIP Collateral, as applicable, and the liens, claims and rights granted to such parties under the DIP Orders; (c) attempts to seek to modify any of the rights and remedies

granted to the Prepetition Secured Parties or the DIP Secured Parties under the DIP Orders, the

UST Cash Collateral Orders, the Prepetition Loan Documents or the DIP Loan Documents, as

applicable, other than in accordance with this Final Order; (d) to apply to the Court for authority

to approve superpriority claims or grant liens (other than the liens and claims permitted by the DIP

Loan Documents) or security interests in the DIP Collateral or any portion thereof that are senior

to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and

507(b) Claims; or (e) to pay or to seek to pay any amount on account of any claims arising prior

to the Petition Date unless such payments are authorized by the Court, agreed to in writing by the

DIP Lenders, and expressly permitted under the DIP Orders or under the DIP Loan Documents

(including the Approved Budget, subject to Permitted Variances), in each case unless all DIP

Obligations, Prepetition Secured Obligations, Adequate Protection Obligations, and claims,

obligations and liens granted to the DIP Secured Parties, Prepetition Secured Parties, and

Prepetition UST Secured Parties under the DIP Orders and the UST Cash Collateral Orders

(inclusive of the UST Adequate Protection Obligations and the Prepetition UST Secured

Obligations), have been indefeasibly paid in full in cash or otherwise agreed to in writing by the

DIP Secured Parties (and, for the avoidance of doubt, no accrued paid time off obligations on

account of employees terminated prior to the Petition Date shall be paid until all DIP Obligations,

Prepetition Secured Obligations, Adequate Protection Obligations, and claims, obligations and

liens granted to the DIP Secured Parties, the Prepetition Secured Parties, and the Prepetition UST

Secured Parties under this Final Order and the Final UST Cash Collateral Order (inclusive of the

UST Adequate Protection Obligations and the Prepetition UST Secured Obligations), have been

indefeasibly paid in full in cash).

      21.    *Final Order Governs*.  In the event of any inconsistency between the provisions of

this Final Order, the Interim Order, the UST Cash Collateral Orders, the DIP Loan Documents or the Prepetition Loan Documents, or the Prepetition UST Loan Documents, the provisions of this Final Order shall govern.  Any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order, the DIP Loan Documents, the Final UST Cash Collateral Order, and the Approved Budget (subject to Permitted Variances).

22.    *Binding Effect; Successors and Assigns.*  The DIP Loan Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Prepetition UST Secured Parties, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided* that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

23.    Nothing in the DIP Orders, the DIP Loan Documents, the Prepetition Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or

Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  The DIP Secured Parties and Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

24.    *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Loan Documents, to permit the use of the DIP Collateral or Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Loan Documents or Prepetition Loan Documents, as applicable, none of the DIP Secured Parties or Prepetition Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code).  Furthermore, nothing in the DIP Orders shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives.

25.    *Master Proofs of Claim.*  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or any Successor Cases, neither the Prepetition Agents, nor any other Prepetition Secured Parties shall be required to file proofs of claim in these cases or any Successor Cases in order to assert claims for payment of any of the Prepetition Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the Prepetition Loan Documents or this Final Order.  The Debtors' stipulations, admissions and acknowledgments of the claim and liens in respect of the Prepetition Secured Obligations set forth in this Final Order is deemed to constitute timely proofs of claim in respect of all indebtedness, secured status and claims arising under the Prepetition Loan Documents and this Final Order.  Nonetheless, in order to facilitate the processing of claims, each Prepetition Agent is authorized, but not directed or required, to file a master proof of claim in the Debtors' lead case *In re Yellow Corporation, et al.*, Case No. 23-11069 (CTG), on behalf of the applicable Prepetition Secured Parties (each, a "Master Proof of Claim"), which shall be deemed to have been filed against each Debtor.  The provisions of this paragraph 25 and the filing of Master Proofs of Claim, if any, are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan filed in these cases.  Any Master Proof of Claim shall not be required to include any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent.  The DIP Secured Parties shall not be required to file proofs of claim with respect to the DIP Obligations.

26.    *Insurance*.  To the extent that any Prepetition Agent is listed as a loss payee under

the insurance policies of any of the DIP Loan Parties, the Junior DIP Agent was, by the Interim

Order, and shall on a final basis, also be deemed to be a loss payee under such insurance policies

until the indefeasible payment in full of the Junior DIP Obligations (other than contingent

indemnification obligations as to which no claim has been asserted) and termination of the DIP

Commitments (subject to the terms and priorities set forth in this Final Order and the DIP Loan

Documents) and, except with respect to (i) the Prepetition ABL Priority Collateral prior to the

Prepetition ABL Obligations being indefeasibly paid in full in cash (or, as applicable, cash

collateralized), (ii) with respect to the Prepetition Joint Collateral and Prepetition UST Tranche B

Priority Collateral prior to the Prepetition UST Tranche B Obligations (and, in the case of the

Prepetition Joint Collateral, the B-2 Obligations) being indefeasibly paid in full in cash, and

(iii) with respect to the Prepetition B-2 Priority Collateral prior to the B-2 Obligations being

indefeasibly paid in full in cash, shall act in that capacity and distribute any proceeds recovered or

received in respect of such insurance policies in accordance with this Final Order; *provided* that

the liens granted in the DIP Orders shall not interfere with any rights held by a landlord to insurance

proceeds for damage to a landlord's property.

27.     *Credit Bidding*.  The Junior DIP Agent and the Junior DIP Lender have expressly

waived any right to credit bid the Junior DIP Obligations.  In each case to the extent permitted by

the Prepetition Intercreditor Agreement, (i) the Prepetition ABL Agent (on behalf, and at the

direction, of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit

Agreement) shall have the unqualified and unconditional right to credit bid, subject to section

363(k) of the Bankruptcy Code, (x) up to the full amount of the Prepetition ABL Obligations and

(y) the ABL Adequate Protection Obligations in the sale or other disposition of any assets of the

Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy

Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of ABL Priority Collateral, and (ii) the B-2 Agent (on behalf, and at the direction, of the B-2 Lenders pursuant to the Prepetition B-2 Credit Agreement and the Postpetition B-2 Credit Agreement) shall have the unqualified and unconditional right to credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the B-2 Obligations and (y) the B-2 Adequate Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of Prepetition B-2 Priority Collateral, and each Prepetition ABL Secured Party and B-2 Secured Party complying with the foregoing shall automatically be deemed a "qualified bidder" with respect to any disposition of assets by the Debtors under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code; *provided* that no party shall be permitted to credit bid for Prepetition ABL Priority Collateral until such time that the Prepetition ABL Parties have been indefeasibly paid in full in cash and all issued and outstanding letters of credit cash collateralized.  The Prepetition ABL Agent at the direction of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement and on behalf of the Prepetition ABL Lenders, and the B-2 Agent at the direction of the B-2 Lenders and on behalf of the B-2 Lenders, had, under the Interim Order, and shall on a final basis have the absolute right to assign, sell, or otherwise dispose of its right to credit bid to any acquisition entity or joint venture formed in connection with such bid.

28.    *Proceeds of Subsequent Financing.*  If the Debtors, any trustee, any examiner with

expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Case shall obtain credit or incur debt pursuant to section 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents or this Final Order at any time, then all of the cash proceeds derived from such credit or debt shall immediately be applied to satisfy the DIP Obligations in accordance with this Final Order, the DIP Loan Documents, and the Prepetition Intercreditor Agreement.

29.    *Rights Preserved*.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Secured Parties' and the Prepetition Secured Parties', as applicable, respective rights to seek any other or supplemental relief in respect of the Debtors (including, the right to seek additional or different adequate protection); (b) the rights of any of the DIP Secured Parties to seek the payment by the Debtors of post-petition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Secured Parties and the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek an injunction, (iv) oppose any request for use of Cash Collateral, (v) object to any sale of assets, or (vi) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; provided that the rights of the DIP Secured Parties and the Prepetition Secured Parties, respectively, with respect to sections (a)–(c) of this paragraph 29 shall be subject to the Prepetition Intercreditor Agreement, as applicable, and this Final Order (including the Senior ICA Provisions). Other than as expressly set forth in this Final Order, any

other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties are preserved.

30.    *No Waiver by Failure to Seek Relief.*  The failure or delay on the part of any of the DIP Secured Parties or any of the Prepetition Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Final Order, the DIP Loan Documents, the respective Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder, or otherwise.  No delay on the part of any party in the exercise of any right or remedy under this Final Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.  None of the rights or remedies of any party under this Final Order shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the party against whom such amendment, modification, suspension, or waiver is sought.  No consents required hereunder by any of the DIP Secured Parties or any of the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or any of the Prepetition Secured Parties, respectively.

31.    *Chubb Reservation of Rights.* For the avoidance of doubt, (i) to the extent ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, and together with each of their successors, "Chubb") had valid, enforceable, perfected, and non-avoidable liens and/or security interests on property of the Debtors as of the Petition Date, which liens and/or security interests were senior to the liens and/or security interests of each of the Prepetition Secured Parties (collectively, the "Chubb Liens"), the DIP Liens shall not prime the Chubb Liens; (ii) this Final Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements;

(iii) without altering or limiting any of the foregoing, none of the insurance policies issued by Chubb to or providing coverage to any of the Debtors and any rights and claims thereunder shall be nor shall constitute DIP Collateral nor shall be subject to any liens granted pursuant to the DIP Orders, and, further, the proceeds of any insurance policy issued by Chubb shall only be considered to be DIP Collateral to the extent such proceeds are payable to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy; and (iv) nothing, including the DIP Loan Documents and/or this Final Order, alters or modifies the terms and conditions of any insurance policies issued by Chubb and/or any agreements related thereto.

32.    *Provision Regarding PNC Bank, N.A. and TSC Equipment Finance*. Notwithstanding anything to the contrary set forth in this Final Order, to the extent that the leases held by PNC Bank, N.A. ("PNC") or TSC Equipment Finance LLC ("TSC") (each as successor by assignment to PNC Equipment Finance, LLC) are subsequently found to be financing arrangements rather than true leases (which PNC and TSC, in each case, dispute), nothing contained in this Final Order shall (x) result in the granting of any priming or *pari passu* liens on the equipment subject to such leases or (y) otherwise alter or impair the rights or claims of PNC and TSC, as applicable, with respect to such equipment or leases.

33.    *Provision Regarding World Fuel Services, Inc.*  World Fuel Services, Inc. ("WFS") is in possession of a $200,000 business risk deposit (the "WFS Deposit") posted in connection with a fuel supply contract entered into, effective June 1, 2019, as amended on June 25, 2020, with Debtor YRC Enterprise Services, Inc., as agent for participating affiliates, including Debtor USF Reddaway, Inc.  Notwithstanding anything herein to the contrary, WFS shall retain all of its rights to the existing WFS Deposit to the same extent and in the same priority that existed prior to the Petition Date.

34.    *Provision Regarding East West Bank and Wintrust Commercial Finance*. Notwithstanding anything to the contrary set forth in this Order or any other order granting adequate protection liens to the Debtors' prepetition lenders, to the extent that the leases held by East West Bank ("EWB") or Wintrust Commercial Finance ("Wintrust") (as successor to PNC Equipment Finance, LLC) are subsequently found to be financing arrangements rather than true leases (which EWB and Wintrust each dispute), nothing contained in this Order or any other order granting adequate protection liens to the Debtors' prepetition lenders shall (x) result in the granting of any liens that would prime or be pari passu with any liens of EWB or Wintrust on the equipment subject to the EWB leases or the Wintrust leases, as applicable, or (y) otherwise alter or impair the rights of EWB or Wintrust with respect to such equipment or the EWB leases or the Wintrust leases, as applicable, all of which are expressly reserved.

35.    *Provision Regarding Certain Taxing Authorities*.  Notwithstanding any provisions of the Motion, the Interim Orders, this Final Order, or any agreements approved hereby, the statutory liens currently held by the Texas Taxing Authorities[20] and the Treasurer of Maricopa County, Arizona (the "Maricopa County Treasurer"), or which shall arise during the course of this case pursuant to applicable non-bankruptcy law for prepetition and postpetition ad valorem taxes and/or personal property taxes (the "Tax Liens") shall neither be primed by nor subordinated to any liens granted thereby or pursuant to this Final Order to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount,

---

[20]    "Texas Taxing Authorities" means all *ad valorem* taxing jurisdictions represented by the firms of McCreary, Veselka, Bragg & Allen, PC, Linebarger, Goggan, Blair and Sampson, and Perdue Brandon Fielder Collins and Mott LLP, including but not limited to Bowie Central Appraisal District, Central Appraisal District of Taylor County, Waco Independent School District, Lubbock Central Appraisal District, Maverick County Tax Office, Bexar County, Cypress-Fairbanks Independent School District, Dallas County, City of Eagle Pass, Eagle Pass Independent School District, City of El Paso, Fort Bend County, Harris County, Hidalgo County, Irving Independent School District, Jefferson County, City of McAllen, McLennan County, City of Mesquite, Nueces County, and Tarrant County.

and extent of the claims and liens asserted by the Texas Taxing Authorities and the Maricopa County Treasurer are fully preserved.

36.    *Amendment to Milestones.*  Appendix E of the Junior DIP Credit Agreement and Appendix E of the Postpetition B-2 Credit Agreement shall each be amended so that Paragraph 1 shall state "forty-five (45) calendar days" rather than "thirty (30) calendar days."

37.    *Amendments to DIP Loan Documents.*

(a)    Section 7.15 of the Junior DIP Credit Agreement shall be replaced in its entirety with the following:  "The Borrower shall not (i) assume or reject any executory contract or unexpired lease or (ii) consent to termination or reduction of the exclusivity period to file and solicit a chapter 11 plan or fail to object to any motion seeking to terminate or reduce such exclusivity period, in each case, without the consent of the Lenders (with respect to clause (i), such consent not to unreasonably withheld) and, to the extent constituting or impacting any B-2 Priority Collateral, the B-2 Lenders (with respect to clause (i), such consent not to be unreasonably withheld)."

(b)    Section 7.15 of the Postpetition B-2 Credit Agreement shall be replaced in its entirety with the following:  "The Borrower shall not (i) assume or reject any executory contract or unexpired lease or (ii) consent to termination or reduction of the exclusivity period to file and solicit a chapter 11 plan or fail to object to any motion seeking to terminate or reduce such exclusivity period, in each case, without the consent of the Junior DIP Lenders (with respect to clause (i), such consent not to unreasonably withheld) and, to the extent constituting or impacting any B-2 Priority Collateral, the Lenders (with respect to clause (i), such consent not to be unreasonably withheld)."

38.    Section 10.05(a) of the Postpetition B-2 Credit Agreement shall be replaced in its entirety with the following: "The Borrower agrees (i) promptly following (and in any event within the period set forth in the DIP Order) written demand (including documentation reasonably supporting such request) therefor, to pay or reimburse the Administrative Agent, the Collateral Agent and the Lenders for all reasonable and documented out-of-pocket costs and expenses (including, without limitation, the documented reasonable fees and expenses of Holland & Knight LLP, FTI, White & Case LLP, GrayRobinson, P.A. and Osler, Hoskin & Harcourt LLP) incurred in connection with the preparation, negotiation and execution of the DIP Term Sheet, this Agreement and the other Loan Documents, and any amendment, waiver, consent or other modification of the provisions hereof and thereof (whether or not the transactions contemplated thereby are consummated), and the consummation and administration of the transactions contemplated hereby and thereby (including Attorney Costs which in the case of the Agents, shall be limited to Attorney Costs of one counsel to the Agents and one local counsel in each applicable jurisdiction for the Agents) and (ii) from and after the Postpetition B-2 Facility Closing Date, promptly following (and in any event within the period set forth in the DIP Order) written demand (including documentation reasonably supporting such request) therefor, to pay or reimburse the Administrative Agent, the Collateral Agent and each Lender promptly following written demand for all reasonable and documented out-of-pocket costs and expenses (including, without limitation, the documented fees and expenses of Holland & Knight LLP, FTI, White & Case LLP, GrayRobinson, P.A. and Osler, Hoskin & Harcourt LLP) incurred in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of any rights or remedies under the DIP Term Sheet, this Agreement or the other Loan Documents (including all such out-of-pocket costs and expenses incurred during any legal proceeding, including any

proceeding under any Debtor Relief Laws and including Attorney Costs).  To the extent otherwise reimbursable by the foregoing sentence of this section, the foregoing costs and expenses shall include all reasonable search, filing, recording, title insurance, survey, environmental, property condition report and zoning report charges and fees related thereto, and other reasonable and documented out of pocket expenses incurred by any Agent. The foregoing costs and expenses shall also include all recording and filing fees charged by governmental authorities to record and/or file Collateral Documents."

39.    *Effectiveness*.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

40.    *Governing Order*.  Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this Final Order, including compliance with the Approved Budget (subject to Permitted Variances) and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of any of the DIP Loan Documents and this Final Order, this Final Order shall control.

41.    *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this Final Order.

42.    *Payments Held in Trust*.

(a)    Except as expressly permitted in this Final Order or the DIP Loan Documents and except with respect to the DIP Loan Parties, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral (other than Prepetition

B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), receives any DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) or any proceeds of the DIP Collateral (other than Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) or receives any other payment with respect thereto from any other source prior to the indefeasible payment in full in cash of all Junior DIP Obligations and termination of all Junior DIP Commitments, such person or entity shall be deemed to have received, and shall hold, any such DIP Collateral or any payment on account or proceeds thereof (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) in trust for the benefit of the Junior DIP Secured Parties and shall immediately turn over such collateral or its proceeds to the Junior DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Loan Documents and this Final Order.

(b)     Except as expressly permitted in this Final Order or the DIP Loan Documents and except with respect to the DIP Loan Parties, in the event that any person or entity receives any payment on account of a security interest in any Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral, receives any Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral, or any proceeds of Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral, or receives any other payment with respect thereto from any other source prior to the indefeasible payment in full in cash of all

97

Prepetition Secured Obligations, Prepetition UST Secured Obligations, Prepetition ABL Obligations, and Postpetition B-2 Obligations and termination of all Postpetition B-2 Commitments, such person or entity shall be deemed to have received, and shall hold, any such Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral, or any payment on account or proceeds thereof in trust for the benefit of the Prepetition Secured Parties, the Prepetition UST Secured Parties, and the B-2 Secured Parties, as applicable (subject to the terms and priorities of this Final Order, the DIP Loan Documents, the UST Cash Collateral Orders, and the Prepetition Intercreditor Agreement) and shall immediately turn over such Collateral or its proceeds to the B-2 Agent, Prepetition ABL Agent, the Prepetition UST Tranche A Agent, or the Prepetition UST Tranche B Agent, as applicable, or as otherwise instructed by this Court, for application in accordance with the DIP Loan Documents, this Final Order, the UST Cash Collateral Orders, and the Prepetition Intercreditor Agreement.

43.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

44.     *No Third Party Rights*.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

45.     *Necessary Action*.  The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Final Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Final Order.

46.     *Retention of Jurisdiction.*    This Court shall retain jurisdiction to enforce the provisions of this Final Order.

## Exhibit 1

**Junior DIP Credit Agreement**

EXECUTION VERSION

JUNIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION

CREDIT AGREEMENT

dated as of

September 6, 2023

among

YELLOW CORPORATION

THE OTHER GUARANTORS PARTY HERETO FROM TIME TO TIME
THE LENDERS PARTY HERETO

and

ALTER DOMUS PRODUCTS CORP.,

as Administrative Agent and Collateral Agent

## TABLE OF CONTENTS

PAGE

### ARTICLE 1
DEFINITIONS

Section 1.01. Defined Terms ............................................................................................... 1
Section 1.02. Other Interpretive Provisions ...................................................................... 29
Section 1.03. Certifications ................................................................................................ 30
Section 1.04. Accounting Terms ........................................................................................ 30
Section 1.05. Rounding ...................................................................................................... 30
Section 1.06. References to Agreements, Laws, Etc. ......................................................... 30
Section 1.07. Times of Day ................................................................................................ 30
Section 1.08. Timing of Payment or Performance ............................................................ 30
Section 1.09. Certain Accounting Matters ......................................................................... 30
Section 1.10. Classification of Loans and Borrowings ...................................................... 31
Section 1.11. Currency Equivalents Generally .................................................................. 31
Section 1.12. Québec Matters.   . ........................................................................................ 31

### ARTICLE 2
THE CREDITS

Section 2.01. Term Loan Commitments ............................................................................. 32
Section 2.02. Loans ............................................................................................................ 33
Section 2.03. Borrowing Procedure ................................................................................... 33
Section 2.04. Evidence of Debt; Repayment of Loans ...................................................... 34
Section 2.05. Fees ............................................................................................................... 34
Section 2.06. Interest on Loans .......................................................................................... 35
Section 2.07. Default Interest ............................................................................................. 35
Section 2.08. [Reserved] .................................................................................................... 35
Section 2.09. [Reserved] .................................................................................................... 35
Section 2.10. [Reserved] .................................................................................................... 35
Section 2.11. Repayment of Term Borrowings .................................................................. 35
Section 2.12. Voluntary Prepayment; Termination or Reduction of Commitments ........... 36
Section 2.13. [Reserved] .................................................................................................... 36
Section 2.14. Pro Rata Treatment ...................................................................................... 36
Section 2.15. Sharing of Setoffs ........................................................................................ 36
Section 2.16. Payments ...................................................................................................... 37
Section 2.17. Currency Indemnity.. .................................................................................... 37

### ARTICLE 3
TAXES, INCREASED COSTS PROTECTION AND ILLEGALITY

Section 3.01. Taxes ............................................................................................................ 38
Section 3.02. [Reserved] .................................................................................................... 41
Section 3.03. Increased Cost and Reduced Return; Capital Adequacy .............................. 41
Section 3.04. [Reserved] .................................................................................................... 42
Section 3.05. Matters Applicable to all Requests for Compensation ................................. 42
Section 3.06. [Reserved] .................................................................................................... 43
Section 3.07. Survival ........................................................................................................ 43

# ARTICLE 4
### Conditions Precedent to Effectiveness and each Credit Extension

Section 4.01. All Credit Extensions ................................................................................................43
Section 4.02. Effective Date Credit Extension................................................................................43

# ARTICLE 5
### Representations and Warranties

Section 5.01. Existence, Qualification and Power; Compliance with Laws ...............................45
Section 5.02. Authorization; No Contravention...............................................................................45
Section 5.03. Governmental Authorization; Other Consents........................................................45
Section 5.04. Binding Effect ..............................................................................................................46
Section 5.05. Financial Statements ....................................................................................................46
Section 5.06. Compliance With Laws................................................................................................46
Section 5.07. Ownership of Property; Liens.....................................................................................47
Section 5.08. Environmental Matters.................................................................................................47
Section 5.09. Taxes ..............................................................................................................................47
Section 5.10. Litigation .......................................................................................................................48
Section 5.11. Subsidiaries ...................................................................................................................48
Section 5.12. Margin Regulations; Investment Company Act.......................................................48
Section 5.13. Disclosure ......................................................................................................................48
Section 5.14. ERISA Compliance ......................................................................................................49
Section 5.15. Insurance ........................................................................................................................49
Section 5.16. [Reserved] ......................................................................................................................49
Section 5.17. No Other Borrowed Money Indebtedness.................................................................49
Section 5.18. Collateral Documents...................................................................................................49
Section 5.19. Compliance with Anti-Terrorism and Corruption Laws .........................................49
Section 5.20. Real Property Permits ..................................................................................................50
Section 5.21. Secured, Super-Priority Obligations .........................................................................50
Section 5.22. Prepetition UST Joint and Priority Collateral .........................................................51
Section 5.23. Delayed Draw Term Commitment Priority ..............................................................51
Section 5.24. No Canadian Pension Plans. .......................................................................................52

# ARTICLE 6
### Affirmative Covenants

Section 6.01. Financial Statements, Reports, Etc............................................................................52
Section 6.02. Certificates; Other Information...................................................................................53
Section 6.03. Notices ...........................................................................................................................55
Section 6.04. Payment of Taxes..........................................................................................................56
Section 6.05. Preservation of Existence, Etc. ..................................................................................56
Section 6.06. Maintenance of Properties ..........................................................................................56
Section 6.07. Maintenance of Insurance ...........................................................................................56
Section 6.08. Compliance with Laws.................................................................................................57
Section 6.09. Books and Records.......................................................................................................57
Section 6.10. Inspection Rights ..........................................................................................................57
Section 6.11. Additional Collateral; Additional Guarantors .........................................................58
Section 6.12. Compliance with Environmental Laws......................................................................58
Section 6.13. Further Assurances and Post-Closing Conditions...................................................58
Section 6.14. Lender Calls; Access; Diligence Requests................................................................59
Section 6.15. Use of Proceeds and Collateral ..................................................................................60
Section 6.16. Chapter 11 Cases...........................................................................................................60

## ARTICLE 7
NEGATIVE COVENANTS

Section 7.01. Liens............................................................................................................61
Section 7.02. Investments ................................................................................................64
Section 7.03. Indebtedness ..............................................................................................65
Section 7.04. Fundamental Changes ...............................................................................67
Section 7.05. Dispositions................................................................................................67
Section 7.06. Restricted Payments...................................................................................68
Section 7.07. Organization Documents............................................................................68
Section 7.08. Transactions with Affiliates ......................................................................68
Section 7.09. Burdensome Agreements ...........................................................................69
Section 7.10. [Reserved]..................................................................................................69
Section 7.11. Budget Variance Covenants.......................................................................69
Section 7.12. Fiscal Year .................................................................................................70
Section 7.13. Prepayments, Etc. of Indebtedness ...........................................................70
Section 7.14. [Reserved]..................................................................................................70
Section 7.15. Leases and Other Executory Contracts; Exclusivity Period......................70
Section 7.16. DIP Proceeds Account; Use of Cash.........................................................70
Section 7.17. No Canadian Pension Plans. .....................................................................71

## ARTICLE 8
EVENTS OF DEFAULT AND REMEDIES

Section 8.01. Events of Default .......................................................................................71
Section 8.02. Remedies Upon Event of Default ..............................................................76
Section 8.03. [Reserved]..................................................................................................77
Section 8.04. Application of Funds...................................................................................77

## ARTICLE 9
THE ADMINISTRATIVE AGENT AND THE COLLATERAL AGENT

## ARTICLE 10
MISCELLANEOUS

Section 10.01. Notices; Electronic Communications.......................................................80
Section 10.02. Survival of Agreement .............................................................................83
Section 10.03. Binding Effect ..........................................................................................83
Section 10.04. Successors and Assigns.............................................................................83
Section 10.05. Expenses; Indemnity ................................................................................84
Section 10.06. Right of Setoff..........................................................................................86
Section 10.07. Applicable Law ........................................................................................86
Section 10.08. Waivers; Amendment ...............................................................................87
Section 10.09. Interest Rate Limitation ...........................................................................87
Section 10.10. Entire Agreement .....................................................................................87
Section 10.11. WAIVER OF JURY TRIAL.....................................................................87
Section 10.12. Severability ..............................................................................................88
Section 10.13. Counterparts.............................................................................................88
Section 10.14. Headings...................................................................................................88
Section 10.15. Jurisdiction; Consent to Service of Process ............................................88
Section 10.16. Confidentiality .........................................................................................89
Section 10.17. Reserved...................................................................................................89
Section 10.18. USA PATRIOT Act Notice ......................................................................89

Section 10.19. Collateral And Guaranty Matters ....................................................................... 89
Section 10.20. Limitation on Liability ...................................................................................... 90
Section 10.21. Payments Set Aside .......................................................................................... 90
Section 10.22. No Advisory or Fiduciary Responsibility .......................................................... 91
Section 10.23. Release ............................................................................................................. 91
Section 10.24. Process Agent .................................................................................................... 92
Section 10.25. Waiver of Immunity .......................................................................................... 92
Section 10.26. DIP Order, Prepetition ABL Intercreditor Agreement and Senior ICA Provisions
                   Control ............................................................................................................ 92
Section 10.27. Québec Security ................................................................................................ 92

## ARTICLE 11
GUARANTEE

Section 11.01. The Guarantee ................................................................................................... 93
Section 11.02. Obligations Unconditional ................................................................................ 93
Section 11.03. Certain Waivers, Etc. ........................................................................................ 94
Section 11.04. Reinstatement .................................................................................................... 94
Section 11.05. Subrogation; Subordination .............................................................................. 95
Section 11.06. Remedies ........................................................................................................... 95
Section 11.07. Instrument for the Payment of Money ............................................................... 95
Section 11.08. Continuing Guarantee ....................................................................................... 95
Section 11.09. General Limitation on Guarantee Obligations ................................................... 95
Section 11.10. Release of Guarantors ....................................................................................... 95
Section 11.11. Right of Contribution ........................................................................................ 96
Section 11.12. Additional Guarantor Waivers and Agreements ................................................ 96

## ARTICLE 12
*RESERVED*

## ARTICLE 13
SECURITY AND ADMINISTRATIVE PRIORITY

Section 13.01. [Reserved] ......................................................................................................... 97
Section 13.02. [Reserved] ......................................................................................................... 97
Section 13.03. [Reserved] ......................................................................................................... 97
Section 13.04. Collateral; Grant of Lien and Security Interest .................................................. 97
Section 13.05. Administrative Priority ...................................................................................... 98
Section 13.06. Grants, Rights and Remedies ............................................................................ 98
Section 13.07. No Filings Required .......................................................................................... 99
Section 13.08. Survival ............................................................................................................. 99

APPENDICES

A      Closing Date Commitments
B      Effective Date Commitments
C      Final Commitments
D      Delayed Draw Term Commitments
E      Chapter 11 Milestones

SCHEDULES

1.01(a)      [Reserved]
1.01(b)      Excluded Subsidiaries
1.01(c)      Real Property
1.01(d)      Pension Fund Entities
5.10      Litigation
5.11      Subsidiaries and Capitalization
5.14      [Reserved]
5.22(a)      Rolling Stock that constitutes Prepetition UST Tranche B Joint Collateral
5.22(b)      Rolling Stock that constitutes Prepetition UST Tranche B Priority Collateral
6.13(a)      [Reserved]
7.01(b)      Existing Liens
7.02(e)      Existing Investments
7.03(b)      Existing Indebtedness
7.08      Transactions with Affiliates
7.09      Certain Contractual Obligations

EXHIBITS

Exhibit A      Form of Administrative Questionnaire
Exhibit B      Interim Order
Exhibit C      Form of Request for Credit Extension
Exhibit D      UST Adequate Protection Order
Exhibit E      Form of Intercompany Note
Exhibit F      Form of Compliance Certificate
Exhibit G-1      Form of United States Tax Compliance Certificate
      (For Non-U.S. Lenders that are not Partnerships)
Exhibit G-2      Form of United States Tax Compliance Certificate
      (For Non-U.S. Lenders that are Partnerships)
Exhibit G-3      Form of United States Tax Compliance Certificate
      (For Non-U.S. Participants that are not Partnerships)
Exhibit G-4      Form of United States Tax Compliance Certificate
      (For Non-U.S. Participants that are Partnerships)
Exhibit H      [Reserved]
Exhibit I      [Reserved]
Exhibit J      Form of Term Note
Exhibit K      Form of Delayed Draw Term Note

JUNIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT, dated as of September 6, 2023 (this "**Agreement**"), among YELLOW CORPORATION, a Delaware corporation (the "**Borrower**"), the Guarantors party hereto from time to time, the Lenders (such term and each other capitalized term used but not defined in this introductory statement having the meaning given it in Article 1), and ALTER DOMUS PRODUCTS CORP., as administrative agent (in such capacity, including any permitted successor or assign thereto, the "**Administrative Agent**") and as collateral agent (in such capacity, including any permitted successor or assign thereto, the "**Collateral Agent**") for the Lenders.

WHEREAS, on August 6, 2023, (the "**Petition Date**"), the Borrower and certain of its Subsidiaries (together with the Borrower, collectively, the "**Debtors**") commenced voluntary cases under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), and the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code in order to effect a wind down of their businesses and sale of their properties to repay existing Indebtedness (including the Obligations hereunder and the B-2 Obligations) with the net proceeds thereof.

WHEREAS, the Borrower, in its capacity as "foreign representative" on behalf of the Debtors, has commenced proceedings before the Ontario Superior Court of Justice (Commercial List) in Toronto, Ontario, Canada (the "**Canadian Court**") under Part IV of the Companies' Creditors Arrangement Act (Canada), R.S.C. 1985, c. C-36, as amended (the "**CCAA**") bearing Court File No. CV-23-00704038-00CL, recognizing the Chapter 11 Cases as "foreign main proceedings" in respect of the Canadian Debtors (as defined herein) (the "**Canadian Recognition Proceedings**") and granting certain customary related relief.

WHEREAS, the Borrower has requested and the Lenders have agreed to provide a junior secured super-priority debtor-in-possession term loan facility to the Borrower (the "**Junior DIP Facility**") consisting of (i) Initial Term Loans in an aggregate committed amount of $42,500,000 and (ii) Delayed Draw Term Loans in an aggregate committed amount of $70,000,000.

WHEREAS, on August 21, 2023, the Lenders advanced the Closing Date Loans as the first installment of the Initial Term Loans to the Borrower pursuant to the terms of that certain Debtor-In-Possession Credit Facility Term Sheet (as amended, restated, amended and restated, supplemented or otherwise modified, the "**DIP Term Sheet**"), by and among the Loan Parties, the Postpetition B-2 Lenders, the Lenders, the Administrative Agent, the B-2 Agent and the Stalking Horse Purchaser (as defined therein), and the Interim Order (as defined herein). This Agreement restates and replaces the DIP Term Sheet insofar as the DIP Term Sheet relates to the Junior DIP Facility.

WHEREAS, the Guarantors have agreed to guarantee the obligations of the Borrower hereunder and the Borrower and the Guarantors have agreed to secure their respective Obligations by granting to the Collateral Agent, for the benefit of Secured Parties, a lien on substantially all of their respective assets, in accordance with the priorities provided in the DIP Order.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto covenant and agree as follows:

## ARTICLE 1
### DEFINITIONS

Section 1.01. *Defined Terms.* As used in this Agreement, the following terms shall have the meanings specified below:

"**ABR**", when used in reference to any Loan or Borrowing, refers to whether such Loan, or the Loans comprising such Borrowing, are bearing interest at a rate determined by reference to the Alternate Base Rate.

"**Acceptable Plan**" shall mean a Plan of Reorganization that, upon the consummation thereof, provides for the termination of all unused Commitments and the indefeasible payment in full of all Obligations and all B-2 Obligations in cash.

"**Administrative Agent**" shall have the meaning assigned to such term in the introductory statement to this Agreement, together with its successors and any replacement designated pursuant to Article 9 of this Agreement.

"**Administrative Agent's Office**" means the Administrative Agent's office or account as it may from time to time designate, in writing, to the Borrower and each Lender.

"**Administrative Questionnaire**" shall mean an Administrative Questionnaire in the form of Exhibit A, or such other form as may be supplied from time to time by the Administrative Agent.

"**Affiliate**" shall mean, with respect to any Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified; *provided*, that, with respect to the Borrower and its Subsidiaries, in no case shall any Governmental Authority constitute an "Affiliate".  "**Control**" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.  "**Controlling**" and "**Controlled**" have meanings correlative thereto.

"**Agency Fee Letter**" means that certain fee letter dated as of August 21, 2023, by and between Borrower and Agents, as amended, amended and restated, supplemented, waived, replaced or otherwise modified from time to time.

"**Agent Indemnitees**" shall have the meaning assigned to such term in Section 10.05(b).

"**Agents**" shall have the meaning assigned to such term in Article 9.

"**Agreement**" shall have the meaning assigned to such term in the introductory statement to this Agreement.

"**Alternate Base Rate**" shall mean, for any day, a rate per annum equal to the greatest of (a) the Prime Rate in effect on such day and (b) the Federal Funds Effective Rate in effect on such day plus 1/2 of 1%; *provided* that in no event shall the Alternate Base Rate be less than 2.00% per annum.  If the Administrative Agent shall have determined (which determination shall be conclusive absent manifest error) that it is unable to ascertain the Federal Funds Effective Rate for any reason, including the inability or failure of the Administrative Agent to obtain sufficient quotations in accordance with the terms of the definition thereof, the Alternate Base Rate shall be determined without regard to clause (b) of the preceding sentence until the circumstances giving rise to such inability no longer exist.  Any change in the Alternate Base Rate due to a change in the Prime Rate or the Federal Funds Effective Rate shall be effective on the effective date of such change in the Prime Rate or the Federal Funds Effective Rate, as the case may be.

"**Applicable Margin**" shall mean, with respect to any Delayed Draw Term Loan, a percentage per annum equal to 10.00%.

"**Approved Budget**" has the meaning assigned to such term in <u>Section 6.02(l)</u>.

"**Attorney Costs**" shall mean and shall include all reasonable and documented out-of-pocket fees, expenses and disbursements of any law firm or other external legal counsel.

"**Attributable Indebtedness**" shall mean, on any date, in respect of any Capitalized Lease of any Person, the capitalized amount thereof that would appear on a balance sheet of such Person prepared as of such date in accordance with GAAP.

"**Audited Financial Statements**" shall mean the audited consolidated balance sheets of the Borrower and its consolidated subsidiaries for the fiscal years ending December 31, 2021 and December 31, 2022 and the related consolidated statements of operations, changes in shareholders' equity and cash flows of the Borrower and its consolidated subsidiaries.

"**B-2 Agent**" means Alter Domus Products Corp., as administrative agent and collateral agent for the B-2 Lenders.

"**B-2 Indebtedness**" means each of the Prepetition B-2 Indebtedness and the Postpetition B-2 Indebtedness.

"**B-2 Lenders**" means the lenders party to the B-2 Term Loan Credit Agreement, from time to time, under and as defined in the B-2 Term Loan Credit Agreement.

"**B-2 Obligations**" means each of the Prepetition B-2 Obligations and the Postpetition B-2 Obligations.

"**B-2 Priority Collateral**" shall have the meaning assigned to the term "Non-UST Tranche B Term Priority Collateral" in the Prepetition ABL Intercreditor Agreement.

"**B-2 Secured Parties**" shall have the meaning assigned to the term "Secured Parties" in the B-2 Term Loan Credit Agreement.

"**B-2 Term Loan Credit Agreement**" means that Amended and Restated Credit Agreement, dated as of September 11, 2019, by and among Borrower, as borrower, the guarantors from time to time party thereto, the B-2 Lenders and the B-2 Agent**,** as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, including by the B-2 Term Loan Credit Agreement Amendment.

"**B-2 Term Loan Credit Agreement Amendment**" means that Amendment No. 4 to Amended and Restated Credit Agreement, dated as of the date hereof, by and among Borrower, as borrower, the guarantors from time to time party thereto, the B-2 Lenders party thereto and the B-2 Agent**,** as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

"**Bankruptcy Code**" means Title 11 of the United States Code entitled "Bankruptcy," as applicable to the Chapter 11 Cases (unless the context requires otherwise), now and hereafter in effect or any successors to such statute.

"**Bankruptcy Court**" shall have the meaning assigned to such term in the recitals to this Agreement.

"**Bidding Procedures Order**" means a final order approving procedures for one or more sales of all or substantially all of the Debtors' assets and permitting the B-2 Lenders (or the B-2 Agent on behalf of the B-2 Lenders) to credit bid the full amount of the B-2 Obligations (including, for the avoidance of doubt, the Prepetition B-2 Obligations) in form and substance in all material respects satisfactory to the Lenders.

"**Blocked Person**" shall mean any Person that is publicly identified on the most current list of "Specially Designated Nationals and Blocked Persons" published by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("**OFAC**").

"**Board**" shall mean the Board of Governors of the Federal Reserve System of the United States of America.

"**Borrower**" shall have the meaning assigned to such term in the introductory statement to this Agreement.

"**Borrower Materials**" shall have the meaning assigned to such term in Section 10.01.

"**Borrowing**" shall mean Loans of the same Class made on the same date.

"**Budget Variance Report**" shall mean a weekly variance report prepared by management of the Borrower (in consultation with the Borrower's Operational Advisor), in form and detail reasonably satisfactory to the Lenders and the B-2 Lenders, comparing for each applicable Budget Variance Test Period the actual receipts and disbursements against anticipated receipts and disbursements under the applicable Approved Budget, on a line by line and aggregate basis and in the same level of detail set forth in the Approved Budget, together with a written explanation for all material variances in any given Budget Variance Test Period and such other related information as the Lenders may reasonably request.

"**Budget Variance Test Date**" shall mean each of (a) Friday August 25, 2023, (b) Friday September 1, 2023, (c) Wednesday September 6, 2023 and (d) each Wednesday thereafter.

"**Budget Variance Test Period**" means, as of any date of determination, (a) with respect to the first Budget Variance Report delivered after the Closing Date pursuant to Section 6.02(n)(i) and the first Budget Variance Test Date occurring on Friday August 25, 2023, the period starting on the Petition Date and ending on August 18, 2023, (b) with respect to the second Budget Variance Report delivered after the Closing Date pursuant to Section 6.02(n)(i) and the Budget Variance Test Date occurring on Friday September 1, 2023, the period starting on the Petition Date and ending on August 25, 2023, (c) with respect to the third Budget Variance Report delivered after the Closing Date pursuant to Section 6.02(n)(i) and the Budget Variance Test Date occurring on Wednesday September 6, 2023, the period starting on the Petition Date and ending on September 1, 2023 and (d) with respect to each Budget Variance Report delivered pursuant to Section 6.02(n)(i) thereafter and each the Budget Variance Test Date occurring thereafter, the four-week period ending on the Friday of the week immediately preceding the applicable Budget Variance Test Date.

"**Business Day**" shall mean any day other than a Saturday, Sunday or day on which banks in New York City are authorized or required by law to close.

"**Canadian Administration Charge**" shall mean a super priority charge granted by the Canadian Court over the Canadian Collateral to secure payment of the professional fees and disbursements of the Debtors' Canadian counsel, the Information Officer and counsel to the Information Officer (in a maximum amount not to exceed CDN$700,000).

"**Canadian AML Legislation**" shall mean the *Proceeds of Crime (Money Laundering) and Terrorist Financing Act* (Canada) and other applicable anti-money laundering, anti-terrorist financing, government sanction and "know your client" laws within Canada (including any guidelines or orders thereunder).

"**Canadian Collateral**" shall mean the Collateral of the Canadian Debtors.

"**Canadian Court**" shall have the meaning assigned to such term in the recitals hereto.

"**Canadian D&O Charge**" shall mean a charge granted by the Canadian Court on the Canadian Collateral (in a maximum amount not to exceed CDN$3,500,000), securing an indemnity by the Canadian Debtors in favor of their directors and officers against any obligations or liabilities that they may incur as directors and officers of the Canadian Debtors on or after the commencement of the Canadian Recognition Proceedings, as provided for in the Canadian Supplemental Order.

"**Canadian Debtors**" shall mean YRC Freight Canada Company, YRC Logistics Inc., USF Holland International Sales Corporation and 1105481 Ontario Inc.

"**Canadian Defined Benefit Pension Plan**" shall mean each pension plan or arrangement required to be registered under Canadian federal or provincial pension standards legislation and which contains a "defined benefit provision" as defined in subsection 147.1(1) of the Income Tax Act (Canada).

"**Canadian DIP Charge**" shall mean the super priority charge granted by the Canadian Court pursuant to the Canadian Interim DIP Recognition Order in favor of the DIP Secured Parties (as defined in the DIP Order) on the Canadian Collateral, other than the Prepetition UST Tranche B Priority Collateral.

"**Canadian DIP Recognition Order**" shall mean the Canadian Interim DIP Recognition Order, unless the Canadian Final DIP Recognition Order shall have been issued by the Canadian Court, in which case it shall mean the Canadian Final DIP Recognition Order and the Canadian Interim DIP Recognition Order.

"**Canadian Dollar**" and "**CDN$**" means lawful money of Canada.

"**Canadian Final DIP Recognition Order**" shall mean an order of the Canadian Court in the Canadian Recognition Proceedings, which order shall, among other things, recognize the Final Order and shall be in form and substance satisfactory to the Lenders, and as the same may be amended, supplemented, or modified from time to time after entry thereof with the consent of the Lenders.

"**Canadian Initial Recognition Order**" shall mean the Initial Recognition Order issued by the Canadian Court on August 29, 2023 in the Canadian Recognition Proceedings, recognizing the Chapter 11 Cases as "foreign main proceedings" under Part IV of the CCAA, and granting a stay of proceedings in respect of the Borrower and the Canadian Debtors in Canada and as the same may be amended, supplemented, or modified from time to time after entry thereof with the consent of the Lenders.

"**Canadian Interim DIP Recognition Order**" shall mean the provisions of the Canadian Supplemental Order which recognize the Interim Order and grant the Canadian DIP Charge (and the related provisions in respect thereto), and as the same may be amended, supplemented, or modified from time to time after entry thereof with the consent of the Lenders.

"**Canadian Orders**" means, as applicable and as the context may require, the Canadian Initial Recognition Order, the Canadian Supplemental Order and/or the Canadian DIP Recognition Order, or such

other Orders as may be granted by the Canadian Court in the Canadian Recognition Proceedings which are, in form and substance, satisfactory to the Lenders.

"**Canadian Priority Charges**" shall mean the Canadian Administration Charge and the Canadian D&O Charge.

"**Canadian Recognition Proceedings**" shall have the meaning assigned to such term in the recitals hereto.

"**Canadian Subsidiary**" shall mean any Subsidiary that is incorporated, amalgamated, continued or otherwise organized or formed under the Laws of Canada or any province or territory thereof.

"**Canadian Supplemental Order**" shall mean the Supplemental Order issued by the Canadian Court on August 29, 2023 in the Canadian Recognition Proceedings which, among other things, grants the CCAA Charges and recognizes the Interim Order.

"**Capital Expenditures**" shall mean, for any period, the aggregate of (a) all amounts that would be reflected as additions to property, plant or equipment on a consolidated statement of cash flows of the Borrower and its Subsidiaries in accordance with GAAP and (b) the value of all assets under Capitalized Leases incurred by the Borrower and its Subsidiaries during such period.

"**Capitalized Leases**" shall mean all leases that have been or are required to be, in accordance with GAAP, recorded as capitalized leases; *provided* that, subject to <u>Section 1.11</u>, for all purposes hereunder the amount of obligations under any Capitalized Lease shall be the amount thereof accounted for as a liability in accordance with GAAP.

"**Carve-Out**" shall have the meaning assigned to such term in the DIP Order (and which Carve-Out shall include an amount up to CDN$700,000 (or such other amount as agreed by the Lenders) for the benefit of the beneficiaries of the Canadian Administration Charge, *provided* that such amount shall not be duplicative of the Canadian Administration Charge); *provided further* that, the Carve-Out post-trigger notice professional fee cap may by increased by up to $1,000,000 to include amounts for an official committee of equityholders in the event one is appointed.

"**Cash Collateral**" shall have the meaning assigned to such term in the Interim Order.

"**Cash Equivalents**" shall mean any of the following types of Investments, to the extent owned by the Borrower or any Subsidiary:

(a)        Dollars and, to the extent consistent with past practice, Canadian Dollars;

(b)        direct obligations of, or obligations the principal of and interest on which are unconditionally guaranteed by, the United States of America (or by any agency thereof to the extent such obligations are backed by the full faith and credit of the United States of America), in each case maturing within one year from the date of issuance thereof;

(c)        investments in commercial paper maturing within 270 days from the date of issuance thereof and having, at such date of acquisition, rated at least A-2 or P-2 by S&P or Moody's;

(d)        investments in demand deposits, certificates of deposit, banker's acceptances and time deposits maturing within one year from the date of acquisition thereof issued or guaranteed by or placed with, and money market deposit accounts issued or offered by, the Administrative Agent, the Prepetition

ABL Agent, the Prepetition UST Tranche A Agent, the Prepetition UST Tranche B Agent or any domestic office of any commercial bank organized under the laws of the United States of America or any State thereof that has a combined capital and surplus and undivided profits of not less than $500,000,000 and that issues (or the parent of which issues) commercial paper rated at least "Prime 1" (or the then equivalent grade) by Moody's or "A 1" (or the then equivalent grade) by S&P;

(e)        fully collateralized repurchase agreements with a term of not more than 30 days for securities described in clause (b) above and entered into with a financial institution satisfying the criteria of clause (d) above;

(f)        investments in "money market funds" within the meaning of Rule 2a-7 of the Investment Company Act of 1940, as amended, substantially all of whose assets are invested in investments of the type described in clauses (a) through (e) above; and

(g)        other short-term investments entered into in accordance with normal investment policies and practices of any Foreign Subsidiary consistent with past practices for cash management and constituting investments in governmental obligations and investment funds analogous to and having a credit risk not greater than investments of the type described in clauses (a) through (f) above.

Notwithstanding the foregoing, Cash Equivalents shall include amounts denominated in currencies other than set forth in clause (a) above; *provided* that such amounts are converted into currencies listed in clause (a) within ten Business Days following the receipt of such amounts.

"**Casualty Event**" shall mean any event that gives rise to the receipt by the Borrower or any Subsidiary of any insurance proceeds or condemnation awards in respect of any equipment, fixed assets or Real Property (including any improvements thereon) to replace or repair such equipment, fixed assets or Real Property or as compensation for such condemnation event.

"**CCAA**" shall have the meaning assigned to such term in the recitals hereto.

"**CCAA Charges**" shall mean the Canadian Administration Charge, the Canadian D&O Charge and the Canadian DIP Charge, as granted by the Canadian Court in the Canadian Recognition Proceedings.

"**Chapter 11 Cases**" shall have the meaning assigned to such term in the recitals to this Agreement.

"**Chapter 11 Milestones**" shall have the meaning assigned to such term in Section 8.01(o)(xxvii).

"**Chapter 11 Orders**" means, collectively, each order entered by the Bankruptcy Court, including the DIP Order and any cash management order, cash collateral order and adequate protection order, in each case, which shall have been reviewed in advance by the Lenders and shall be in form and substance acceptable to the Agents and the Lenders.

"**Charges**" shall have the meaning assigned to such term in Section 10.09.

"**Claim**" has the meaning assigned to such term in Section 101(5) of the Bankruptcy Code.

"**Class**" when used in reference to (a) any Loan or Borrowing, refers to whether such Loan, or the Loans comprising such Borrowing, are "Closing Date Loans", "Effective Date Loans", "Final Loans", "Initial Term Loans" or "Delayed Draw Term Loans", (b) any Commitment, refers to whether such Commitment is an "Closing Date Commitment", "Effective Date Commitment", "Final Commitment" or a

"Delayed Draw Term Commitment" and (c) any Lender, refers to whether such Lender has a Loan or Commitment with respect to a particular Class of Loans or Commitments.

"**Closing Date**" means August 21, 2023.

"**Closing Date Commitment**" means, as to each Lender, its obligations to make Closing Date Loans to the Borrower on the Closing Date, pursuant to the DIP Term Sheet and, as applicable, Section 2.01(a) in an aggregate principal amount not to exceed the amount set forth opposite such Lender's name on Appendix A under the caption "Closing Date Commitment". The aggregate amount of the Closing Date Commitments on the Closing Date, prior to the making of the Closing Date Loans, was $17,894,736.84.

"**Closing Date Loan**" means the term loan made on the Closing Date, pursuant to Section 2.01(a).

"**Code**" shall mean the Internal Revenue Code of 1986, as amended from time to time.

"**Collateral**" shall mean (a) all of the assets, property, rights and interests of the Loan Parties that are or are intended to be subject to the Liens created by or pursuant to the Collateral Documents, the DIP Order, and the Canadian DIP Recognition Order, and (b) the "Collateral" referred to in the DIP Order, in each case, except for Excluded Property. For the avoidance of doubt, and without limiting the generality of the foregoing, "Collateral" shall include (i) all property or assets of any Canadian Subsidiary of the Borrower, (ii) all claims and causes of action in connection with the any commercial tort and breach of contract claims, (iii) the proceeds of all claims and causes of action (excluding the claims and causes of actions themselves) arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 553(b), or 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable federal and/or state-law equivalents, (iv) all leasehold interests of each Loan Party, and (v) the proceeds of each of the foregoing.

"**Collateral Agent**" shall have the meaning assigned to such term in the introductory statement to this Agreement.

"**Collateral and Guarantee Requirement**" shall mean, at any time, the requirement that:

(a)        on the Closing Date, the Administrative Agent and the Collateral Agent shall have received each Collateral Document to the extent required to be delivered on the Closing Date pursuant to Section 4.02 duly executed by each Loan Party that is a party thereto;

(b)        in each case subject to the limitations and exceptions set forth in this Agreement, the Collateral Documents, the DIP Order and, in the case of the Canadian Collateral, the applicable Canadian Orders, and to any action required to be taken by the Collateral Agent or the Administrative Agent to effectuate the same, the Obligations shall have been secured by a perfected security interest in all Collateral with the priority set forth herein and in the DIP Order, the applicable Canadian Orders and the Prepetition ABL Intercreditor Agreement;

(c)        after the Closing Date, (x) each Subsidiary of the Borrower that is an Excluded Subsidiary on the Closing Date and that ceases to constitute an Excluded Subsidiary pursuant to the definition thereof shall, at the request of the Lenders (or the Administrative Agent on behalf of the Lenders) become a Guarantor and signatory to this Agreement pursuant to a joinder agreement in connection with Section 6.11 or Section 6.13 and (y) each Subsidiary of the Borrower shall deliver such collateral documents and take such perfection steps as reasonably requested by the Collateral Agent or the Lenders; and

(d)　　notwithstanding that all of the security interests described herein with respect to the Collateral shall be effective and perfected by the DIP Order (and, in the case of Canadian Collateral, the Canadian DIP Recognition Order) and without the necessity of the execution of mortgages, security agreements, pledge agreements or other agreements, the Loan Parties shall take all actions that may be necessary or desirable, or that the Lenders or the Collateral Agent may reasonably request, to maintain the validity, perfection, enforceability and priority of the security interest and Liens of the Collateral Agent in the Collateral, or to enable the Collateral Agent to protect, exercise or enforce its rights hereunder, under the DIP Order and in the Collateral (and, in the case of Canadian Collateral, the Canadian DIP Recognition Order).

"**Collateral Documents**" shall mean, collectively, the DIP Order, the Canadian DIP Recognition Order, collateral assignments, security agreements, pledge agreements, intellectual property security agreements, control agreements or other similar agreements delivered to the Administrative Agent or the Collateral Agent pursuant to Section 4.02, Section 6.11 or Section 6.13, and each of the other agreements, instruments or documents that creates or purports to create a Lien in favor of the Collateral Agent for the benefit of the Secured Parties.

"**Commitment**" shall mean, with respect to any Lender, such Lender's Initial Term Commitment or Delayed Draw Term Commitment.  The aggregate amount of the Commitments on the Closing Date, prior to the making of the Closing Date Loans, was $112,500,000.  The aggregate amount of the Commitments as of the Effective Date, prior to the making of the Effective Date Loans, is $94,605,263.16.

"**Communications**" shall have the meaning assigned to such term in Section 10.01.

"**Compliance Certificate**" shall mean a certificate substantially in the form of Exhibit F.

"**Contractual Obligation**" shall mean, as to any Person, any provision of any security issued by such Person or of any agreement, instrument or other undertaking to which such Person is a party or by which it or any of its property is bound.

"**Control**" shall have the meaning specified in the definition of "Affiliate".

"**Credit Extension**" shall mean a Borrowing.

"**Currency Due**" shall have the meaning assigned to such term in Section 2.17.

"**DDTL Exit Fee**" has the meaning provided in Section 2.05(a).

"**Debtor Relief Laws**" shall mean (i) the Bankruptcy Code of the United States; (ii) the CCAA and the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended; and (iii) all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, arrangement, rearrangement, receivership, insolvency, reorganization or similar debtor relief Laws of the United States, Canada or other applicable jurisdictions from time to time in effect and affecting the rights of creditors generally.

"**Debtors**" shall have the meaning assigned to the term in the recitals hereto.

"**Default**" shall mean any event or condition that constitutes an Event of Default or that, with the giving of any notice, the passage of any grace period, or both, without cure or waiver hereunder, would be an Event of Default.

"**Delayed Draw Term Commitment**" means, as to each Term Lender, its obligation to make a Delayed Draw Term Loan to the Borrowers pursuant to Section 2.01(b) in an aggregate amount not to exceed the amount set forth opposite such Lender's name on Appendix D hereto under the caption "Delayed Draw Term Commitment", as such amount may be adjusted from time to time in accordance with this Agreement (including Sections 2.12).  The aggregate amount of the Delayed Draw Term Commitments is $70,000,000.

"**Delayed Draw Term Lender**" means, at any time, any Lender that has a Delayed Draw Term Commitment or a Delayed Draw Term Loan at such time.

"**Delayed Draw Term Loan Availability Period**" means the earlier of (x) date as of which the Delayed Draw Term Commitment has been fully utilized in accordance with the terms of Section 2.01(b) and (y) the Maturity Date.

"**Delayed Draw Term Loan Borrowing Date**" means any date that a Delayed Draw Term Lender makes a Delayed Draw Term Loan available to the Borrower pursuant to the terms hereof.

"**Delayed Draw Term Loans**" means the term loans made by the Lenders on or after the Effective Date to the Borrowers pursuant to Section 2.01(b).

"**Delayed Draw Term Note**" shall mean a promissory note of the Borrower payable to any Delayed Draw Term Lender or its registered assigns, in substantially the form of Exhibit K hereto, evidencing the aggregate Indebtedness of the Borrower to such Delayed Draw Term Lender resulting from the Delayed Draw Term Loans made by such Delayed Draw Term Lender.

"**Deposit Account**" means a demand, time, savings, passbook or like account with a bank, savings and loan association, credit union or like organization, other than an account evidenced by a negotiable certificate of deposit.

"**DIP Order**" shall mean the Interim Order or, upon entry thereof by the Bankruptcy Court, the Final Order.

"**DIP Proceeds Account**" shall mean a deposit account in the name of, and for the account of, USF Holland, LLC maintained at JP Morgan, as account number ending with x4623, which shall constitute Collateral but not Prepetition ABL Priority Collateral, and into which proceeds of the Initial Term Loans and Delayed Draw Term Loans shall be funded and held in accordance with this Agreement.

"**DIP Term Sheet**" has the meaning provided in the recitals.

"**Discharge of ABL Obligations**" shall have the meaning assigned to such term in the Prepetition ABL Intercreditor Agreement.

"**Discharge of UST Tranche A Obligations**" shall have the meaning assigned to such term in the Prepetition ABL Intercreditor Agreement.

"**Discharge of UST Tranche B Obligations**" shall have the meaning assigned to such term in the Prepetition ABL Intercreditor Agreement.

"**Disposition**" or "**Dispose**" shall mean the sale, transfer, license, lease or other disposition (including any sale and leaseback transaction and any sale or issuance of Equity Interests in a Subsidiary)

of any property by any Person, including any sale, assignment, transfer or other disposal, with or without recourse, of any notes or accounts receivable or any rights and claims associated therewith.

"**Disqualified Equity Interests**" shall mean any Equity Interest that, by its terms (or by the terms of any security or other Equity Interests into which it is convertible or for which it is exchangeable), or upon the happening of any event or condition (a) matures or is mandatorily redeemable (other than solely for Qualified Equity Interests), pursuant to a sinking fund obligation or otherwise, (b) is redeemable at the option of the holder thereof (other than solely for Qualified Equity Interests), in whole or in part (except as a result of a change of control or asset sale so long as any rights of the holders thereof upon the occurrence of a change of control or asset sale event shall be subject to the prior repayment in full of the Loans and all other Obligations that are accrued and payable and the termination of the Commitments), (c) provides for scheduled payments of dividends in cash, or (d) is or becomes convertible into or exchangeable for Indebtedness or any other Equity Interests that would constitute Disqualified Equity Interests, in each case, prior to the date that is ninety-one (91) days after the Maturity Date; *provided* that if such Equity Interests are issued pursuant to, or in accordance with a plan for the benefit of employees of the Borrower or the Subsidiaries or by any such plan to such employees, such Equity Interests shall not constitute Disqualified Equity Interests solely because they may be required to be repurchased by the Borrower or its Subsidiaries in order to satisfy applicable statutory or regulatory obligations or as a result of such employee's termination, death or disability.

"**Dollars**" or "**$**" shall mean lawful money of the United States of America.

"**Domestic Subsidiary**" shall mean any Subsidiary that is organized under the Laws of the United States, any state thereof or the District of Columbia.

"**Effective Date Commitment**" means, as to each Lender, its obligations to make Effective Date Loans to the Borrower on the Effective Date pursuant to Section 2.01(a) in an aggregate principal amount not to exceed the amount set forth opposite such Lender's name on Appendix B under the caption "Effective Date Commitment".  The aggregate amount of the Effective Date Commitments on the Effective Date is $ 11,184,210.53.

"**Effective Date Loan**" means a term loan made on the Effective Date pursuant to Section 2.01(a).

"**Effective Date**" means the date on which the conditions specified in Section 4.02 are satisfied (or waived in accordance with Section 10.08), which date is September 6, 2023.

"**Environmental Laws**" shall mean all federal, state, provincial, territorial, local and foreign laws (including common law), treaties, regulations, rules, ordinances, codes, decrees, judgments, directives, orders (including consent orders), and agreements in each case, relating to protection of the environment, natural resources, human health and safety (with respect to exposure to hazardous or toxic substances or wastes) or the presence, Release of, or exposure to, hazardous or toxic substances or wastes, or the generation, manufacture, processing, distribution, use, treatment, storage, transport, recycling or handling of, or the arrangement for such activities with respect to, hazardous or toxic substances or wastes.

"**Environmental Liability**" shall mean all liabilities, obligations, damages, losses, claims, actions, suits, judgments, orders, fines, penalties, fees, expenses and costs (including administrative oversight costs, capital and operating costs, injunctive relief, costs associated with financial assurance, permitting or closure requirements, natural resource damages and investigation or remediation costs), whether contingent or otherwise, arising out of or relating to (a) compliance or non-compliance with any Environmental Law, (b) the generation, use, handling, transportation, storage, treatment or disposal of any Hazardous Materials, (c) exposure to any Hazardous Materials, (d) the Release of any Hazardous Materials or (e) any contract,

11

agreement or other consensual arrangement pursuant to which liability is assumed or imposed with respect to any of the foregoing.

"**Environmental Permit**" means any permit, approval, identification number, license or other authorization required under any Environmental Law.

"**Equity Interests**" shall mean, with respect to any Person, all of the shares, interests, rights, participations or other equivalents (however designated) of capital stock of (or other ownership or profit interests or units in) such Person and all of the warrants, options or other rights for the purchase, acquisition or exchange from such Person of any of the foregoing (including through convertible securities) but excluding in each case any debt security that is convertible into, or exchanged for, Equity Interests.

"**ERISA**" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time.

"**ERISA Affiliate**" shall mean any Person, any trade or business (whether or not incorporated) that, together with a Loan Party or any Subsidiary, is or, within the six year period immediately preceding the Closing Date, was treated as a single employer under Section 414(b) or (c) of the Code, or, solely for purposes of Section 302 of ERISA and Section 412 of the Code, is treated as a single employer under Section 414 of the Code.

"**ERISA Event**" shall mean (a) a Reportable Event; (b) the failure to satisfy the minimum funding standard with respect to a Pension Plan within the meaning of Sections 412 or 430 of the Code or Sections 302 or 303 of ERISA, whether or not waived (unless such failure is corrected by the final due date for the plan year for which such failure occurred), (c) a determination that a Pension Plan is, or is expected to be, in "at risk" status (as defined in Section 303(i)(4) of ERISA or Section 430(i)(4) of the Code); (d) the receipt by a Loan Party, any Subsidiary or any of their respective ERISA Affiliates of notice pursuant to Section 305(b)(3)(D) of ERISA that a Multiemployer Plan is or will be in "endangered status" or "critical status" (as defined in Section 305(b) of ERISA), or is, or is expected to be, "insolvent" (within the meaning of Section 4245 of ERISA); (e) the filing pursuant to Section 431 of the Code or Section 304 of ERISA of an application for the extension of any amortization period; (f) the failure to timely make a contribution required to be made with respect to any Pension Plan or Multiemployer Plan; (g) the filing of a notice to terminate any Pension Plan if such termination would require material additional contributions in order to be considered a standard termination within the meaning of Section 4041(b) of ERISA; (h) the filing under Section 4041(c) of ERISA of a notice of intent to terminate any Pension Plan or the termination of any Pension Plan under Section 4041(c) of ERISA; (i) the filing pursuant to Section 412(c) of the Code or Section 302(c) of ERISA of an application for a waiver of the minimum funding standard with respect to any Pension Plan; (j) the incurrence by a Loan Party, any Subsidiary or any of their respective ERISA Affiliates of any liability under Title IV of ERISA with respect to the termination of any Pension Plan; (k) the receipt by a Loan Party, any Subsidiary or any of their respective ERISA Affiliates from the PBGC or a plan administrator of any notice of an intention to terminate any Pension Plan or Pension Plans or to appoint a trustee to administer any Pension Plan under Section 4042 of ERISA; (l) the receipt by a Loan Party, any Subsidiary or any of their respective ERISA Affiliates of any notice, or the receipt by any Multiemployer Plan from a Loan Party, any Subsidiary or any of their respective ERISA Affiliates of any notice, concerning the imposition of Withdrawal Liability; (m) the occurrence of any event or condition that would reasonably be expected to result in the termination of a Pension Plan or the appointment of a trustee to administer a Pension Plan; (n) the occurrence of a nonexempt prohibited transaction (within the meaning of Section 406 of ERISA or Section 4975 of the Code) with respect to any Plan which could result in liability to a Loan Party or any Subsidiary or with respect to which a Loan Party or any Subsidiary is a "disqualified person" (as defined in Section 4975 of the Code) or a "party in interest" (as defined in Section 3(14) of ERISA); (o) the incurrence of any liability with respect to any Pension Plan or Multiemployer Plan

under Title IV of ERISA (other than premiums due and not delinquent under Section 4007 of ERISA); or (p) engagement in any transaction that could be subject to Sections 4069 or 4212(c) of ERISA or (q) the PBGC or any Multiemployer Plan indicates its intention to file an action, suit, litigation or proceeding (including in the Chapter 11 Orders) (x) contesting the Transactions, this Agreement or any of the other Loan Documents or the sale of the Collateral in accordance with the Chapter 11 Orders, (y) that materially impairs the value of any Collateral constituting real property interests and Rolling Stock of the Loan Parties or (z) that would reasonably be expected to prevent or materially delay the sale of the Collateral in accordance with the Chapter 11 Orders.

"**Event of Default**" shall have the meaning assigned to such term in Article 8.

"**Exchange Act**" shall mean the Securities Exchange Act of 1934, as amended.

"**Excluded Property**" shall have the meaning provided in the DIP Order.

"**Excluded Subsidiary**" shall mean (i) Yellow Freight Corporation, a Delaware corporation, and (ii) each Subsidiary of the Borrower listed on Schedule 1.01(b); *provided* that, if as of the end of any calendar month, (x) any such Subsidiary, individually, comprises more than 1.0% of the Borrower and its Subsidiaries' total assets or liquidity as of the end of such calendar month, such Subsidiaries shall no longer constitute Excluded Subsidiaries, and shall be required to become a Loan Party pursuant to Section 6.11 or (y) such Subsidiaries, in the aggregate, comprise more than 3.0% of the Borrower and its Subsidiaries' total assets or liquidity as of the end of such calendar month, the Borrower shall designate one or more such Subsidiaries as not being Excluded Subsidiaries as may be necessary such that the foregoing aggregate percentage limit shall not be exceeded, and any such Subsidiaries so designated shall be required to become Loan Parties pursuant to Section 6.11.

"**Exit Date**" shall mean the date on which all outstanding Obligations hereunder are paid in full in cash.

"**Facility**" shall mean the Closing Date Loans, the Effective Date Loans, the Final Loans or the Delayed Draw Term Loans, as the context may require.

"**FATCA**" shall mean Sections 1471 through 1474 of the Code, as in effect on the Closing Date (or any amended or successor version that is substantively comparable and not materially more onerous to comply with), any current or future regulations or official interpretations thereof, any agreements entered into pursuant to Section 1471(b)(1) of the Code and any fiscal or regulatory legislation, rules or practices adopted pursuant to any intergovernmental agreement, treaty or convention among Governmental Authorities entered into in connection with the implementation of the foregoing.

"**Federal Funds Effective Rate**" shall mean, for any day, the weighted average of the rates on overnight Federal funds transactions with members of the Federal Reserve System, as published on the next succeeding Business Day by the Federal Reserve Bank of New York, or, if such rate is not so published for any day that is a Business Day, the average of the quotations for the day for such transactions received by the Administrative Agent from three Federal funds brokers of recognized standing selected by it.

"**Fees**" shall have the meaning assigned to such term in Section 2.05.

"**Final Commitment**" means, as to each Lender, its obligations to make Final Loans to the Borrower pursuant to Section 2.01(a) in an aggregate principal amount not to exceed the amount set forth opposite such Lender's name on Appendix B under the caption "Final Commitment". The aggregate amount of the Final Commitments on the Closing Date is $13,400,000.

"**Final Loan**" means a term loan made on the Final Order Entry Date pursuant to Section 2.01(a).

"**Final Order**" means the final order of the Bankruptcy Court pursuant to Section 364 of the Bankruptcy Code approving the Agreement and the other Loan Documents with respect to the Loan Parties, as the same may be amended, modified or supplemented from time to time with the express written joinder or consent of the Lenders and the B-2 Lenders (and with respect to amendments, modifications or supplements that affect the rights or duties of any Agent, such Agent).

"**Final Order Entry Date**" means the date on which the Final Order shall have been entered on the docket of the Bankruptcy Court.

"**First Day Orders**" shall mean all "first day orders" with respect to the Chapter 11 Cases, including the cash management orders, in form and substance satisfactory to the Lenders (and with respect to any provisions that affect the rights or duties of any Agent, such Agent), as the same may be amended, modified or supplemented from time to time with the express written joinder or consent of the Lenders (and with respect to amendments, modifications or supplements that affect the rights or duties of any Agent, such Agent) (it being agreed that all such orders in effect as of the Effective Date are satisfactory to the Lenders and the Agents).

"**Foreign Subsidiary**" shall mean any direct or indirect Subsidiary of the Borrower which is not a Domestic Subsidiary.

"**GAAP**" shall mean generally accepted accounting principles in the United States of America, as in effect from time to time, subject to Section 1.11; *provided, however*, that if the Borrower notifies the Administrative Agent that the Borrower requests an amendment to any provision hereof to eliminate the effect of any change occurring after the Closing Date in GAAP or in the application thereof on the operation of such provision (or if the Administrative Agent notifies the Borrower that the Lenders request an amendment to any provision hereof for such purpose), regardless of whether any such notice is given before or after such change in GAAP or in the application thereof, then such provision shall be interpreted on the basis of GAAP as in effect and applied immediately before such change shall have become effective until such notice shall have been withdrawn or such provision amended in accordance herewith.

"**Governmental Authority**" shall mean any nation or government, any state, provincial, territorial or other political subdivision thereof, any agency, authority, instrumentality, regulatory body, court, administrative tribunal, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including, without limitation, the U.S. Treasury).

"**Guarantee**" shall mean, as to any Person, without duplication, (a) any obligation, contingent or otherwise, of such Person guaranteeing or having the economic effect of guaranteeing any Indebtedness or other monetary obligation payable or performable by another Person (the "**primary obligor**") in any manner, whether directly or indirectly, and including any obligation of such Person, direct or indirect, (i) to purchase or pay (or advance or supply funds for the purchase or payment of) such Indebtedness, (ii) to purchase or lease property, securities or services for the purpose of assuring the obligee in respect of such Indebtedness of the payment or performance of such Indebtedness, (iii) to maintain working capital, equity capital or any other financial statement condition or liquidity or level of income or cash flow of the primary obligor so as to enable the primary obligor to pay such Indebtedness, or (iv) entered into for the purpose of assuring in any other manner the obligee in respect of such Indebtedness of the payment or performance thereof or to protect such obligee against loss in respect thereof (in whole or in part), or (b) any Lien on any assets of such Person securing any Indebtedness of any other Person, whether or not such Indebtedness is assumed by such Person (or any right, contingent or otherwise, of any holder of such Indebtedness to obtain

14

any such Lien; *provided* that the term "Guarantee" shall not include (i) endorsements for collection or deposit, in either case in the ordinary course of business, (ii) customary and reasonable indemnity obligations in effect on the Closing Date or entered into in connection with any acquisition or disposition of assets permitted under this Agreement (other than such obligations with respect to Indebtedness) or (iii) product warranties.  The amount of any Guarantee shall be deemed to be an amount equal to the stated or determinable amount of the related primary obligation, or portion thereof, in respect of which such Guarantee is made or, if not stated or determinable, the maximum reasonably anticipated liability in respect thereof as determined by the guaranteeing Person in good faith.  The term "**Guarantee**" as a verb has a corresponding meaning.

"**Guaranteed Obligations**" shall have the meaning specified in Section 11.01.

"**Guarantors**" shall mean each Subsidiary of the Borrower as of the Petition Date (other than an Excluded Subsidiary).

"**Guaranty**" shall mean, collectively, the guaranty of the Obligations by the Guarantors pursuant to this Agreement.

"**Hazardous Materials**" shall mean (a) any petroleum products, distillates or byproducts and all other hydrocarbons, coal ash, radon gas, asbestos, urea formaldehyde foam insulation, polychlorinated biphenyls, chlorofluorocarbons and all other ozone-depleting substances and (b) any chemical, material, substance or waste that is prohibited, limited or regulated by or pursuant to any Environmental Law.

"**Hypothecary Representative**" shall have the meaning assigned to such term in Section 10.27.

"**Indebtedness**" shall mean, as to any Person at a particular time, without duplication and without reference to what constitutes indebtedness or a liability in accordance with GAAP, all of the following:

(a)    all obligations of such Person for borrowed money and all obligations of such Person evidenced by bonds, debentures, notes, loan agreements or other similar instruments;

(b)    the maximum amount (after giving effect to any prior drawings or reductions which may have been reimbursed) of all outstanding letters of credit (including standby and commercial), bankers' acceptances, bank guaranties, surety bonds, performance bonds and similar instruments issued or created by or for the account of such Person;

(c)    net obligations of such Person under any Swap Contract;

(d)    all obligations of such Person to pay the deferred purchase price of property or services;

(e)    indebtedness (excluding prepaid interest thereon) described in clauses (a) through (d) and (f) through (h) secured by a Lien on property owned or being purchased by such Person (including indebtedness arising under conditional sales or other title retention agreements and mortgage, industrial revenue bond, industrial development bond and similar financings), whether or not such indebtedness shall have been assumed by such Person or is limited in recourse;

(f)    all Attributable Indebtedness;

(g)    all obligations of such Person to purchase, redeem, retire or otherwise acquire for value any Disqualified Equity Interests (but solely to the extent required to occur on or prior to the Maturity Date (other than as a result of a change of control, asset sale or similar event)); and

(h)    to the extent not otherwise included above, all Guarantees of such Person in respect of any of the foregoing.

For all purposes hereof, the Indebtedness of any Person (i) shall include the Indebtedness of any partnership or joint venture (other than a joint venture that is itself a corporation or limited liability company) in which such Person is a general partner or joint venturer, except to the extent such Person's liability for such Indebtedness is otherwise expressly contractually limited and only to the extent such Indebtedness would be included in the calculation of Consolidated Total Debt and (ii) shall exclude (A) trade accounts payable in the ordinary course of business, (B) any earn-out obligation until such earn-out obligation has become due and payable, (C) any pension contributions or health and welfare contributions due from such Person and/or its applicable Subsidiaries to any Pension Fund Entity, (D) liabilities accrued in the ordinary course, (E) deferred revenues, liabilities associated with customer prepayments and deposits and any such obligations incurred under ERISA, and other accrued obligations (including transfer pricing), in each case incurred in the ordinary course of business, (F) operating leases, (G) customary obligations under employment agreements and deferred compensation and (H) deferred tax liabilities.  The amount of any net obligation under any Swap Contract on any date shall be deemed to be the Swap Termination Value thereof as of such date.  The amount of Indebtedness of any Person for purposes of clause (e) that is limited in recourse to the property encumbered thereby shall be deemed to be equal to the lesser of (i) the aggregate unpaid amount of such Indebtedness and (ii) the fair market value of the property encumbered thereby as determined by such Person in good faith.

"**Indemnified Taxes**" shall have the meaning assigned to such term in <u>Section 3.01(a)</u>.

"**Indemnitee**" shall have the meaning assigned to such term in <u>Section 10.05(b)</u>.

"**Information**" shall have the meaning assigned to such term in <u>Section 10.16</u>.

"**Information Officer**" shall mean the information officer appointed by the Canadian Court in the Canadian Recognition Proceedings.

"**Initial Budget**" shall mean the initial 13-week consolidated weekly operating budget of the Borrower and its Subsidiaries setting forth projected operating receipts, operating disbursements, professional fees, net operating cash flow and Liquidity for the periods described therein prepared by management of the Borrower (and in consultation with the Borrower's Operational Advisor), covering the period commencing on or about the Closing Date and attached to the Interim Order.

"**Initial Term Commitment**" shall mean, with respect to any Lender, such Lender's Closing Date Commitment, Effective Date Commitment or Final Commitment.  The aggregate amount of Initial Term Commitments on the Closing Date was $42,500,000 prior to the making of the Closing Date Loans.  The aggregate amount of Initial Term Commitments as of the Effective Date, prior to the making of the Effective Date Loans, is $24,605,263.16.

"**Initial Term Loans**" shall mean the Closing Date Loans, the Effective Date Loans and the Final Loans but not, for the avoidance of doubt, the Delayed Draw Term Loans.

"**Interim Order**" means the interim order attached hereto as <u>Exhibit B</u>, as the same may be amended, modified or supplemented from time to time with the express written joinder or consent of the Lenders (and with respect to amendments, modifications or supplements that affect the rights or duties of any Agent, such Agent).

"**Intercompany Note**" shall mean a promissory note substantially in the form of <u>Exhibit E</u>.

"**Interest Payment Date**" shall mean the last Business Day of each calendar month (commencing with Thursday, August 31, 2023).

"**Investment**" shall mean, as to any Person, any direct or indirect acquisition or investment by such Person, whether by means of (a) the purchase or other acquisition of Equity Interests or debt or other securities of another Person, (b) a loan, advance or capital contribution to, Guarantee or assumption of Indebtedness of, or purchase or other acquisition of any other debt or equity participation or interest in, another Person, including any partnership or joint venture interest in such other Person, or (c) the purchase or other acquisition (in one transaction or a series of related transactions) of all or substantially all of the property and assets or business of another Person or assets constituting a business unit, line of business or division of such Person.  For purposes of covenant compliance, (i) the amount of any Investment shall equal (A) the amount actually invested, without adjustment for subsequent increases or decreases in the value of such Investment minus, except for purposes of calculating the Cumulative Credit, (B) the aggregate amount of dividends, distributions or other payments received in cash in respect of such Investment (including by way of a sale or other disposition of such Investment) but not in excess of the original amount invested and (ii) the fair market value of any and all Investments (which for the avoidance of doubt shall include all debt, equity and other items described in the foregoing provisions of this definition) held by any Loan Party in any Guarantor that becomes an Excluded Subsidiary pursuant to clause (a) of the definition of "Excluded Subsidiary" shall be deemed to be an Investment incurred on the date such Guarantor becomes an Excluded Subsidiary pursuant to clause (a) of the definition of "Excluded Subsidiary".

"**Judgment Currency**" shall have the meaning assigned to such term in Section 2.17.

"**Junior DIP Facility**" shall have the meaning assigned to such term in the recitals hereto.

"**Laws**" shall mean, collectively, all international, foreign, federal, state, provincial, territorial and local laws (including common law), statutes, treaties, rules, guidelines, regulations, ordinances, codes and administrative or judicial precedents or authorities, including the interpretation or administration thereof by any Governmental Authority charged with the enforcement, interpretation or administration thereof, and all applicable administrative orders, directed duties, requests, licenses, authorizations and permits of, requirements, and agreements with, any Governmental Authority.

"**Lender**" shall mean each lender from time to time party hereto.  As of the Closing Date, Appendices A, B and C set forth the name of each Lender with a commitment for Initial Term Loans.  As of the Effective Date, Appendix D sets forth the name of each Lender with a commitment for Delayed Draw Term Loans.

"**Lender Indemnitees**" shall have the meaning assigned to such term in Section 10.05(b).

"**Lien**" shall mean any mortgage, deed of trust, pledge, hypothecation, collateral assignment, deemed trust, deposit arrangement, encumbrance, lien (statutory or other), charge, or preference, priority or other security interest or preferential arrangement of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any easement, right of way or other encumbrance on title to Real Property, and any Capitalized Lease or financing lease having substantially the same economic effect as any of the foregoing).

"**Liquidity**" shall mean, as of any date of determination, the sum of unrestricted cash and Cash Equivalents of the Loan Parties as of such date.

"**Liquidity Report**" shall have the meaning assigned to such term in Section 6.02(m).

"**Loan**" shall mean any Term Loan.

"**Loan Documents**" shall mean this Agreement (including, without limitation, any amendments to and consents and waivers under this Agreement), the DIP Term Sheet, the DIP Order, the Collateral Documents, the Agency Fee Letter and the Term Notes or Delayed Draw Term Notes, if any, executed and delivered pursuant to Section 2.04(e), and each amendment, restatement, supplement or other modification of any Loan Document and all instruments and documents executed at any time in connection therewith.

"**Loan Parties**" shall mean, collectively, the Borrower and each Guarantor.

"**Margin Stock**" shall have the meaning assigned to such term in Regulation U.

"**Master Agreement**" shall have the meaning specified in the definition of "**Swap Contract**".

"**Material Adverse Effect**" shall mean a (a) material adverse effect on the business, operations, assets, liabilities (actual or contingent), operating results or financial condition, profits or prospects of the Borrower and its Subsidiaries, taken as a whole; (b) material adverse effect on the ability of the Loan Parties (taken as a whole) to fully and timely perform their payment obligations under the Loan Documents to which the Borrower or any of the Loan Parties is a party; or (c) material adverse effect on the rights and remedies available to the Lenders, the Administrative Agent or the Collateral Agent under any Loan Document  (other than due to the action or inaction of any Agent or any Lender); *provided*, that "Material Adverse Effect" shall expressly exclude the effect of the filing of the Chapter 11 Cases, the events and conditions resulting from or leading up thereto, the ceasing of operations, the commencement of the Canadian Recognition Proceedings and any action required to be taken under the Loan Documents, the Chapter 11 Orders or the Canadian Orders.

"**Material Real Property**" shall mean each Real Property that is owned in fee by a Loan Party.

"**Maturity Date**" shall mean the earliest to occur of the following: (i) February 17, 2024 (the "**Scheduled Maturity Date**"); *provided* that the Scheduled Maturity Date may be extended by the Lenders to May 17, 2024, with the Debtors' consent; *provided*, *however*, that the Scheduled Maturity Date may not be extended unless and until all Obligations (as defined in the Prepetition UST Tranche A Credit Agreement) and all Obligations (as defined in the Prepetition UST Tranche B Credit Agreement) have been paid in full in cash; (ii) the effective date or the date of the substantial consummation (as defined in section 1102(2) of the Bankruptcy Code) of a Plan of Reorganization that has been confirmed by an order of the Bankruptcy Court; (iii) the date the Bankruptcy Court orders the conversion of the Chapter 11 Case of any of the Loan Parties to a liquidation under Chapter 7 of the Bankruptcy Code; (iv) the date the Bankruptcy Court orders the dismissal of the Chapter 11 Case of any of the Loan Parties; (v) the date of acceleration of the Term Loans or early termination of the Initial Term Commitments hereunder, including as a result of the occurrence of an Event of Default; (vi) the date the Canadian Court orders the appointment of a receiver, interim receiver, trustee or any similar official in respect of any of the Canadian Debtors or the Canadian Collateral (which for certainty does not include the appointment of the Information Officer); or (vii) the date that is 45 calendar days after the Petition Date if the Final Order Entry Date shall not have occurred by such date.

"**Maximum Rate**" shall have the meaning assigned to such term in Section 10.09.

"**Moody's**" shall mean Moody's Investors Service, Inc., or any successor thereto.

"**Multiemployer Plan**" shall mean any multiemployer plan as defined in Section 4001(a)(3) of ERISA subject to the provisions of Title IV of ERISA to which a Loan Party, any Subsidiary or any of their respective ERISA Affiliates is an "employer" as defined in Section 3(5) of ERISA.

"**Net Proceeds**" shall mean:

(a)        100% of the cash proceeds actually received by the Borrower or any Subsidiaries (including any cash payments received by way of deferred payment of principal pursuant to a note or installment receivable or purchase price adjustment receivable or otherwise and including casualty insurance settlements and condemnation and similar awards, but in each case only as and when received) from any Disposition or Casualty Event, net of the following:

(i)        attorneys' fees, accountants' fees, investment banking fees, survey costs, title insurance premiums, and related search and recording charges, transfer taxes, deed or mortgage recording taxes,

(ii)        required debt payments and required payments (including principal amount, premium or penalty, if any, interest, fees and expenses and other amounts) of other obligations that are secured by the applicable asset or property (other than pursuant to the Loan Documents, the Prepetition ABL Facility Documentation (other than, prior to the Discharge of ABL Obligations, in respect of ABL Priority Collateral), the Prepetition UST Tranche A Facility Documentation (other than, prior to the Discharge of UST Tranche A Obligations, in respect of the Prepetition UST Tranche A Only Collateral) and the Prepetition UST Tranche B Facility Documentation (other than, prior to the Discharge of UST Tranche B Obligations, in respect of the Prepetition UST Tranche B Priority Collateral and the Prepetition UST Tranche B Only Collateral)),

(iii)        [reserved],

(iv)        [reserved],

(v)        taxes paid or reasonably estimated to be payable as a result thereof (*provided*, that if the amount of any such estimated taxes exceeds the amount of taxes actually required to be paid in cash in respect of such Disposition or Casualty Event, the aggregate amount of such excess shall constitute Net Proceeds at the time such taxes are actually paid),

(vi)        the amount of any reasonable reserve established in accordance with GAAP against any adjustment to the sale price or any liabilities (other than any taxes deducted pursuant to clause (i) or (v) above) (x) related to any of the applicable assets and (y) retained by the Borrower or any of the Subsidiaries with respect to the assets subject to the Disposition or Casualty Event including, without limitation, liabilities related to environmental matters or against any indemnification obligations (however, the amount of any subsequent reduction of such reserve (other than in connection with a payment in respect of any such liability) shall be deemed to be Net Proceeds of such Disposition or Casualty Event occurring on the date of such reduction), and

(vii)        any funded escrow established pursuant to the documents evidencing any such sale or disposition to secure any indemnification obligations or adjustments to the purchase price associated with any such sale or disposition; and

(b)        100% of the cash proceeds from the incurrence, issuance or sale by the Borrower or any of the Subsidiaries of any Indebtedness, net of all taxes paid or reasonably estimated to be payable as a result thereof and fees (including investment banking fees and discounts), commissions, costs and other expenses,

in each case incurred in connection with such issuance or sale, *provided*, that if the amount of any estimated taxes exceeds the amount of taxes actually required to be paid in cash, the aggregate amount of such excess shall constitute Net Proceeds at the time such taxes are actually paid.

For purposes of calculating the amount of Net Proceeds, fees, commissions and other costs and expenses payable to the Borrower or the Subsidiaries shall be disregarded.

"**Obligations**" shall mean all advances to, and debts, liabilities, obligations, covenants and duties of, any Loan Party arising under any Loan Document or otherwise with respect to any Loan, whether direct or indirect (including those acquired by assumption), absolute or contingent, due or to become due, now existing or hereafter arising and including interest and fees that accrue after the commencement by or against any Loan Party of any proceeding under any Debtor Relief Laws naming such Person as the debtor in such proceeding (or would accrue but for the operation of applicable Debtor Relief Laws), regardless of whether such interest and fees are allowed or allowable claims in such proceeding.  Without limiting the generality of the foregoing, the Obligations of the Loan Parties under the Loan Documents include (a) the obligation (including guarantee obligations) to pay principal, interest, reimbursement obligations, charges, expenses, fees (including under the Agency Fee Letter, no matter when earned in accordance with the terms thereof), Attorney Costs, indemnities and other amounts payable by any Loan Party under any Loan Document and (b) the obligation of any Loan Party to reimburse any amount in respect of any of the foregoing that any Agent or Lender, in its sole discretion, may elect to pay or advance on behalf of such Loan Party.

"**OFAC**" shall have the meaning assigned to such term in the definition of "Blocked Person".

"**Official Committee**" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code.

"**Operational Advisor**" means Alvarez and Marsal or another nationally-recognized, reputable financial planning and analysis firm reasonably acceptable to the Lenders and engaged by the Borrower pursuant to an engagement letter meeting the requirements set forth in Section 6.13(c).  The term "Operational Advisor" shall include any replacement nationally-recognized, reputable financial planning and analysis firm selected by the Borrower and reasonably acceptable to the Lenders so long as the Borrower has provided to the Lenders a replacement engagement letter meeting the requirements set forth in Section 6.13(c) for such engagement letter prior to retaining such replacement Operational Advisor.

"**Organization Documents**" shall mean (a) with respect to any corporation or company, the memorandum, certificate or articles of incorporation, amalgamation, continuance or association, the bylaws and any shareholder(s) agreement applicable to such corporation or company (or equivalent or comparable constitutive documents with respect to any non-U.S. jurisdiction); (b) with respect to any limited liability company, the certificate or articles of formation or organization and operating agreement; and (c) with respect to any partnership, limited partnership, joint venture, trust or other form of business entity, the partnership, limited partnership, joint venture or other applicable agreement of formation or organization and any agreement, instrument, filing or notice with respect thereto filed in connection with its formation or organization with the applicable Governmental Authority in the jurisdiction of its formation or organization and, if applicable, any certificate or articles of formation or organization of such entity.

"**Other Taxes**" shall have the meaning assigned to such term in Section 3.01(b).

"**PBGC**" shall mean the Pension Benefit Guaranty Corporation referred to and defined in ERISA and any successor entity performing similar functions.

"**Pension Fund Entities**" shall mean those entities identified on Schedule 1.01(d) hereto.

"**Pension Plan**" shall mean any employee pension benefit plan within the meaning of Section 3(2) of ERISA (other than a Multiemployer Plan) subject to the provisions of Title IV of ERISA or Sections 412 and 430 of the Code or Sections 302 and 303 of ERISA and in respect of which a Loan Party, any Subsidiary or any of their respective ERISA Affiliates is, or if such plan were terminated would under Section 4069 of ERISA be deemed to be, or within the six year period immediately preceding the date hereof was, a "contributing sponsor" as defined in Section 4001(a)(13) of ERISA or an "employer" as defined in Section 3(5) of ERISA.

"**Petition Date**" shall have the meaning assigned to such term in the recitals to this Agreement.

"**Permits**" shall mean all necessary certificates, licenses, permits, franchises, trade names, certificates of occupancy, consents and other approvals required under applicable Laws for the operation of any Real Property.

"**Permitted Variances**" shall mean any variance from the Approved Budget which would not result in a breach of Section 7.11.

"**Permitted Variance Percentage**" shall mean:

(a)    with respect to Section 7.11(a), (i) with respect to the Budget Variance Test Period ending on August 18, 2023, 80%, (ii) with respect to the Budget Variance Test Period ending on August 25, 2023, 85%, and (iii) with respect to each Budget Variance Test Period ending thereafter, 90%; and

(b)    with respect to Sections 7.11(b) through (d), (i) with respect to the Budget Variance Test Period ending on August 18, 2023, 120%, (ii) with respect to the Budget Variance Test Period ending on August 25, 2023, 115%, and (iii) with respect to each Budget Variance Test Period ending thereafter, 110%.

"**Person**" shall mean any natural person, corporation, limited liability company, unlimited liability company, trust, joint venture, association, company, partnership, limited partnership, Governmental Authority or other entity.

"**Plan of Reorganization**" shall mean a plan of reorganization in the Chapter 11 Cases.

"**Platform**" shall have the meaning assigned to such term in Section 10.01.

"**Postpetition B-2 Indebtedness**" shall mean Indebtedness (other than Prepetition B-2 Indebtedness) of the Borrower or any Subsidiary outstanding under or secured pursuant to the Postpetition B-2 Loan Documents.

"**Postpetition B-2 Loan Documents**" means the B-2 Term Loan Credit Agreement, the "Loan Documents" under and as defined in the B-2 Term Loan Credit Agreement and all instruments and documents executed at any time in connection therewith.

"**Postpetition B-2 Loans**" means the Postpetition B-2 Obligations in respect of principal of "New Money Postpetition Loans" under, and as defined in, the B-2 Term Loan Credit Agreement and interest, expenses, fees, premium and other sums payable in respect thereof under the Postpetition B-2 Loan Documents.

"**Postpetition B-2 Obligations**" means the "Obligations" as defined in the B-2 Term Loan Credit Agreement (other than Prepetition B-2 Obligations).

"**PPSA**" means the *Personal Property Security Act*, R.S.O 1990, c. P.10; *provided* that, if perfection or the effect of perfection or non-perfection or the priority of any security interest in any Canadian Collateral is governed by (i) a Personal Property Security Act as in effect in a Canadian jurisdiction other than Ontario or (ii) the *Civil Code of Québec*, then "PPSA" means the Personal Property Security Act as in effect from time to time in such other jurisdiction or the *Civil Code of Québec*, as applicable, for purposes of the provisions hereof relating to such perfection, effect of perfection or non-perfection or priority in such Canadian Collateral.

"**Prepetition ABL Agent**" shall mean, as the context may require, Citizens Business Capital (a division of Citizens Asset Finance, Inc., a subsidiary of Citizens, N.A.), in its capacity as administrative agent under the Prepetition ABL Facility Documentation, Citizens Business Capital (a division of Citizens Asset Finance, Inc., a subsidiary of Citizens, N.A.), in its capacity as collateral agent under the Prepetition ABL Facility Documentation.

"**Prepetition ABL Credit Agreement**" shall mean that certain asset-based revolving credit agreement dated as of the February 13, 2014, among the Borrower, YRC Inc., a Delaware corporation, USF Reddaway Inc., an Oregon corporation, USF Holland LLC, a Delaware limited liability company (as successor to USF Holland, Inc., a Michigan corporation) and New Penn Motor Express, LLC, a Delaware limited liability company (as successor to New Penn Motor Express, Inc., a Pennsylvania corporation), the other subsidiaries of the Borrower party thereto, the lenders party thereto and the Prepetition ABL Agent, as amended prior to the Petition Date, provided by lenders who are third party commercial banks or other financial institutions that customarily provide asset based lending credit facilities and other financial institutions consented to by the Administrative Agent (such consent not to be unreasonably withheld or delayed).

"**Prepetition ABL Facility Documentation**" shall mean the Prepetition ABL Credit Agreement and all security agreements, guarantees, pledge agreements and other agreements or instruments executed in connection therewith and including all "Loan Documents" (as defined in the Prepetition ABL Credit Agreement) or similar term.

"**Prepetition ABL Facility Indebtedness**" shall mean Indebtedness of the Borrower or any Subsidiary outstanding under the ABL Facility Documentation, including Bank Product Debt (as defined in the Prepetition ABL Credit Agreement).

"**Prepetition ABL Facility**" shall mean the asset-based revolving credit facility made available to the Borrower and certain of its Subsidiaries pursuant to the Prepetition ABL Credit Agreement.

"**Prepetition ABL Intercreditor Agreement**" shall mean the Amended and Restated Intercreditor Agreement dated as of July 7, 2020, among the Administrative Agent and/or Collateral Agent, the Prepetition ABL Agent, the Prepetition UST Tranche A Agent, the Prepetition UST Tranche B Agent and the Loan Parties, and as the same may be further amended, restated, modified, supplemented, extended, renewed, restructured, waived or replaced from time to time.

"**Prepetition ABL Priority Collateral**" shall have the meaning assigned to the term "ABL Priority Collateral" in the Prepetition ABL Intercreditor Agreement.

"**Prepetition ABL Secured Parties**" shall have the meaning assigned to the term "ABL Secured Parties" in the Prepetition ABL Intercreditor Agreement.

"**Prepetition Agents**" shall mean, collectively, the (a) B-2 Agent, (b) Prepetition ABL Agent, (c) Prepetition UST Tranche A Agent and (d) Prepetition UST Tranche B Agent.

"**Prepetition B-2 Indebtedness**" shall mean Indebtedness of the Borrower or any Subsidiary outstanding under or secured by the Prepetition B-2 Loan Documents.

"**Prepetition B-2 Lenders**" means the "Prepetition B-2 Lenders" as defined in the B-2 Term Loan Credit Agreement.

"**Prepetition B-2 Loan Documents**" means the Prepetition B-2 Term Loan Credit Agreement, the "Loan Documents" under and as defined in the Prepetition B-2 Term Loan Credit Agreement and all instruments and documents executed at any time in connection therewith.

"**Prepetition B-2 Loans**" means the Prepetition B-2 Obligations in respect of principal of "Loans" under, and as defined in, the Prepetition B-2 Term Loan Credit Agreement and interest, expenses, fees, exit fee, premium and other sums payable in respect thereof under the Prepetition B-2 Loan Documents, in each case, prior to the effectiveness of the B-2 Term Loan Credit Agreement Amendment.

"**Prepetition B-2 Obligations**" means the "Obligations" as defined in the Prepetition B-2 Term Loan Credit Agreement.

"**Prepetition B-2 Term Loan Credit Agreement**" means that Amended and Restated Credit Agreement, dated as of September 11, 2019, by and among Borrower, as borrower, the guarantors from time to time party thereto, the B-2 Lenders and the B-2 Agent**,** as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof prior to the effectiveness of the B-2 Term Loan Credit Agreement Amendment.

"**Prepetition Facility Documentation**" shall mean, collectively, the (i) Prepetition B-2 Loan Documents, (ii) Prepetition ABL Facility Documentation, (iii) Prepetition UST Tranche A Facility Documentation and (iv) Prepetition UST Tranche B Facility Documentation.

"**Prepetition Indebtedness**" shall mean, collectively, the (i) Prepetition B-2 Indebtedness, (ii) Prepetition ABL Facility Indebtedness, (iii) Prepetition UST Tranche A Facility Indebtedness and (iv) Prepetition UST Tranche B Facility Indebtedness.

"**Prepetition Lenders**" shall mean, collectively, the (a) Prepetition B-2 Lenders, (b) Prepetition ABL Lenders, (c) Prepetition UST Tranche A Lenders and (d) Prepetition UST Tranche B Lenders.

"**Prepetition Perfection Certificate**" shall mean the Perfection Certificate as of July 7, 2023 delivered by the Borrower pursuant to the Prepetition B-2 Credit Agreement.

"**Prepetition Secured Parties**" shall mean, collectively, the (a) Prepetition Agents and (b) the Prepetition Lenders.

"**Prepetition Senior Secured Claims**" means the Claims and Liens of (a) the B-2 Lenders and B-2 Agent in respect of Prepetition B-2 Obligations, (b) the Prepetition ABL Secured Parties (*provided*, that, the DIP Proceeds Account shall constitute B-2 Priority Collateral and not Prepetition ABL Priority Collateral), and (c) the UST Secured Parties, including, in each case, their respective adequate protection Claims and Liens.

23

"**Prepetition UST Tranche A Agent**" shall mean, as the context may require, The Bank of New York Mellon, in its capacity as administrative agent and as collateral agent under the Prepetition UST Tranche A Facility Documentation, such agents collectively or any permitted successor or assignee administrative agent or collateral agent under the Prepetition UST Tranche A Facility Documentation.

"**Prepetition UST Tranche A Controlled Account**" shall have the meaning assigned to the term "UST Tranche A Controlled Account" in the Prepetition UST Tranche A Credit Agreement (as in effect as of the date hereof).

"**Prepetition UST Tranche A Credit Agreement**" shall mean that certain Prepetition UST Tranche A Term Loan Credit Agreement dated as of July 7, 2020, among the Borrower, the other subsidiaries of the Borrower party thereto, the lenders party thereto and the Prepetition UST Tranche A Agent, and as the same may have been further amended, restated, modified, supplemented, extended, renewed, restructured, refunded, replaced or refinanced from time to time prior to the Petition Date.

"**Prepetition UST Tranche A Facility Documentation**" shall mean the Prepetition UST Tranche A Credit Agreement and all security agreements, guarantees, pledge agreements and other agreements or instruments executed in connection therewith and including all "Loan Documents" (as defined in the Prepetition UST Tranche A Credit Agreement) or similar term.

"**Prepetition UST Tranche A Facility Indebtedness**" shall mean Indebtedness of the Borrower or any Subsidiary outstanding under or secured by the Prepetition UST Tranche A Facility Documentation.

"**Prepetition UST Tranche A Facility**" shall mean the credit facility made available to the Borrower pursuant to the Prepetition UST Tranche A Credit Agreement.

"**Prepetition UST Tranche A Only Collateral**" shall mean the Prepetition UST Tranche A Controlled Account and all Money (as defined in the UCC) and all cash, checks, other negotiable instruments, funds and other evidences of loan proceeds properly held therein.  As of the Closing Date, the aggregate amount held in the Prepetition UST Tranche A Controlled Account was $0.

"**Prepetition UST Tranche A Secured Parties**" shall have the meaning assigned to the term "UST Tranche A Secured Parties" in the Prepetition ABL Intercreditor Agreement.

"**Prepetition UST Tranche B Agent**" shall mean, as the context may require, The Bank of New York Mellon, in its capacity as administrative agent and as collateral agent under the Prepetition UST Tranche B Facility Documentation, such agents collectively or any permitted successor or assignee administrative agent or collateral agent under the Prepetition UST Tranche B Facility Documentation.

"**Prepetition UST Tranche B Controlled Account**" shall have the meaning assigned to the term "UST Tranche B Controlled Account" in the Prepetition UST Tranche B Credit Agreement (as in effect as of the date hereof).

"**Prepetition UST Tranche B Credit Agreement**" shall mean that certain Prepetition UST Tranche B Term Loan Credit Agreement dated as of July 7, 2020, among the Borrower, the other subsidiaries of the Borrower party thereto, the lenders party thereto and the Prepetition UST B Agent, and as the same may have been further amended, restated, modified, supplemented, extended, renewed, restructured, refunded, replaced or refinanced from time to time prior to the Petition Date.

"**Prepetition UST Tranche B Facility Documentation**" shall mean the Prepetition UST Tranche B Credit Agreement and all security agreements, guarantees, pledge agreements and other agreements or

instruments executed in connection therewith and including all "Loan Documents" (as defined in the Prepetition UST Tranche B Credit Agreement) or similar term.

"**Prepetition UST Tranche B Facility Indebtedness**" shall mean Indebtedness of the Borrower or any Subsidiary outstanding under or secured by the Prepetition UST Tranche B Facility Documentation.

"**Prepetition UST Tranche B Facility**" shall mean the credit facility made available to the Borrower pursuant to the Prepetition UST Tranche B Credit Agreement.

"**Prepetition UST Tranche B Joint Account**" shall have the meaning assigned to the term "UST Tranche B Joint Account" in the Prepetition ABL Intercreditor Agreement.

"**Prepetition UST Tranche B Joint Collateral**" shall have the meaning assigned to the term "UST Tranche B Joint Collateral" in the Prepetition ABL Intercreditor Agreement.

"**Prepetition UST Tranche B Only Collateral**" shall mean the Prepetition UST Tranche B Controlled Account and all Money (as defined in the UCC) and all cash, checks, other negotiable instruments, funds and other evidences of loan proceeds properly held therein. As of the Closing Date, the aggregate amount held in the Prepetition UST Tranche A Controlled Account was $0.

"**Prepetition UST Tranche B Priority Collateral**" shall have the meaning assigned to the term "UST Tranche B Priority Collateral" in the Prepetition ABL Intercreditor Agreement.

"**Prepetition UST Tranche B Secured Parties**" shall have the meaning assigned to the term "UST Tranche B Secured Parties" the Prepetition ABL Intercreditor Agreement.

"**Prime Rate**" shall mean, as of any day, the rate last quoted by The Wall Street Journal as the "Prime Rate" in the United States or, if The Wall Street Journal ceases to quote such rate, the highest per annum interest rate published by the Federal Reserve Board in Federal Reserve Statistical Release H.15 (519) (Selected Interest Rates) as the "bank prime loan" rate or, if such rate is no longer quoted therein, any similar rate quoted therein (as reasonably determined by the Administrative Agent) or any similar release by the Federal Reserve Board (as reasonably determined by the Administrative Agent).

"**Pro Rata Share**" shall mean, with respect to each Lender at any time a fraction (expressed as a percentage, carried out to the ninth decimal place), the numerator of which is the amount of the Commitments (or, if Commitments have been terminated, the principal amount of the Loans) under the applicable Facility or Facilities of such Lender at such time and the denominator of which is the amount of the aggregate Commitments (or, if the Commitments have been terminated, the principal amount of the Loans) under the applicable Facility or Facilities at such time.

"**Public Lender**" shall have the meaning assigned to such term in Section 10.01.

"**Qualified Equity Interests**" shall mean any Equity Interests that are not Disqualified Equity Interests.

"**Real Property**" shall mean, collectively, all right, title and interest (including any leasehold, mineral or other estate) in and to any and all parcels of or interests in real property owned or leased by any Person, whether by lease, license or other means, together with, in each case, all easements, hereditaments and appurtenances relating thereto, all improvements and appurtenant fixtures and equipment, all general intangibles, intangibles and contract rights and other property and rights incidental to the ownership, lease or operation thereof.

"**Register**" shall have the meaning assigned to such term in <u>Section 10.04(c)</u>.

"**Regulation T**" shall mean Regulation T of the Board as from time to time in effect and all official rulings and interpretations thereunder or thereof.

"**Regulation U**" shall mean Regulation U of the Board as from time to time in effect and all official rulings and interpretations thereunder or thereof.

"**Related Fund**" shall mean, with respect to any Lender that is a fund or commingled investment vehicle that invests in loans, any other fund that invests in loans and is managed or advised by the same investment advisor/manager as such Lender or by an Affiliate of such investment advisor/manager.

"**Related Parties**" shall mean, with respect to any specified Person, such Person's Affiliates and the respective directors, trustees, officers, fiduciaries, employees, agents and advisors, attorneys and representatives of such Person and such Person's Affiliates.

"**Release**" shall mean any release, spill, emission, leaking, dumping, injection, pouring, deposit, disposal, discharge, dispersal, leaching or migration into or through the environment or from, within or upon any vessel, vehicle, building, structure, facility or fixture.

"**Reportable Event**" shall mean any of the events set forth in Section 4043(c) of ERISA or the regulations issued thereunder, other than events for which the thirty (30) day notice period has been waived with respect to a Pension Plan.

"**Request for Credit Extension**" shall mean a request by the Borrower in accordance with the terms of <u>Section 2.03</u> and substantially in the form of <u>Exhibit C</u>, or such other form as shall be approved by the Administrative Agent.

"**Responsible Officer**" shall mean the chief executive officer, president, vice president, chief financial officer, treasurer, assistant treasurer, director of treasury or other similar officer of a Loan Party and, as to any document delivered on the Closing Date, any secretary or assistant secretary of such Loan Party.  Any document delivered hereunder that is signed by a Responsible Officer of a Loan Party shall be conclusively presumed by the recipient of such document to have been authorized by all necessary corporate, partnership and/or other action on the part of such Loan Party and such Responsible Officer shall be conclusively presumed by the recipient of such document to have acted on behalf of such Loan Party.

"**Restricted Payment**" shall mean (i) any dividend or other distribution (whether in cash, securities or other property) with respect to any Equity Interest of the Borrower or any Subsidiary, or any payment (whether in cash, securities or other property), including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, defeasance, acquisition, cancellation or termination of any such Equity Interest of the Borrower or any Subsidiary, or on account of any return of capital to the Borrower's or a Subsidiary's stockholders, partners or members (or the equivalent Persons thereof) and (ii) any payment to any board member of any Loan Party or any Subsidiary thereof.

"**Rolling Stock**" shall mean any vehicles, tractors, trucks, trailers, tank trailer and other trailers, or similar vehicles and trailers, railroad cars, locomotives, stacktrains and other rolling stock and accessories used on such railroad cars, locomotives or other rolling stock (including superstructures and racks).

"**S&P**" shall mean Standard & Poor's Ratings Service, or any successor thereto.

"**SEC**" shall mean the Securities and Exchange Commission or any Governmental Authority that is the successor thereto.

"**Second Day Orders**" shall mean all "second day orders" with respect to the Chapter 11 Cases in form and substance satisfactory to the Lenders (and with respect to any provisions that affect the rights or duties of any Agent, such Agent), as the same may be amended, modified or supplemented from time to time with the express written joinder or consent of the Lenders (and with respect to amendments, modifications or supplements that affect the rights or duties of any Agent, such Agent).

"**Secured Parties**" shall have the meaning assigned to such term in Section 13.04.

"**Securities Account**" as defined in the UCC or the PPSA, as applicable.

"**Securities Act**" shall mean the Securities Act of 1933, as amended.

"**Senior ICA Provisions**" means paragraphs 9(b) through 9(d) of the Interim Order and the corresponding provisions in the Final Order.

"**Specified Rolling Stock**" shall mean all Rolling Stock that does not constitute Prepetition UST Tranche B Priority Collateral.  For the avoidance of doubt, Prepetition UST Tranche B Joint Collateral shall be Specified Rolling Stock.

"**Subsidiary**" of a Person shall mean a corporation, partnership, joint venture, limited liability company or other business entity of which (i) a majority of the shares of securities or other interests having ordinary voting power for the election of directors or other governing body (other than securities or interests having such power only by reason of the happening of a contingency) are at the time beneficially owned or (ii) the management of which is otherwise Controlled, directly or indirectly, through one or more intermediaries, or both, by such Person.  Unless otherwise specified, all references herein to a "**Subsidiary**" or to "**Subsidiaries**" shall refer to a Subsidiary or Subsidiaries of the Borrower.

"**Swap Contract**" shall mean (a) any and all rate swap transactions, basis swaps, credit derivative transactions, forward rate transactions, commodity swaps, commodity options, forward commodity contracts, equity or equity index swaps or options, bond or bond price or bond index swaps or options or forward bond or forward bond price or forward bond index transactions, interest rate options, forward foreign exchange transactions, cap transactions, floor transactions, collar transactions, currency swap transactions, cross-currency rate swap transactions, currency options, spot contracts, or any other similar transactions or any combination of any of the foregoing (including any options to enter into any of the foregoing), whether or not any such transaction is governed by or subject to any master agreement, and (b) any and all transactions of any kind, and the related confirmations, which are subject to the terms and conditions of, or governed by, any form of master agreement published by the International Swaps and Derivatives Association, Inc., any International Foreign Exchange Master Agreement, or any other master agreement (any such master agreement, together with any related schedules, a "**Master Agreement**"), including any such obligations or liabilities under any Master Agreement.

"**Swap Termination Value**" shall mean, in respect of any one or more Swap Contracts, after taking into account the effect of any legally enforceable netting agreement relating to such Swap Contracts, (a) for any date on or after the date such Swap Contracts have been closed out and termination value(s) determined in accordance therewith, such termination value(s), and (b) for any date prior to the date referenced in clause (a), the amount(s) determined as the mark-to-market value(s) for such Swap Contracts, as determined based upon one or more mid-market or other readily available quotations provided by any recognized dealer in such Swap Contracts (which may include a Lender or any Affiliate of a Lender).

"**Taxes**" shall have the meaning assigned to such term in <u>Section 3.01(a)</u>.

"**Term Borrowing**" shall mean a Borrowing comprised of Term Loans.

"**Term Lender**" shall mean (i) a Lender with an Initial Term Loan Commitment or an outstanding Initial Term Loan and (ii) a Lender with a Delayed Draw Term Commitment or an outstanding Delayed Draw Term Loan.

"**Term Loans**" shall mean the Initial Term Loans or the Delayed Draw Term Loans, as the context may require.

"**Term Note**" shall mean a promissory note of the Borrower payable to any Term Lender or its registered assigns, in substantially the form of <u>Exhibit J</u> hereto, evidencing the aggregate Indebtedness of the Borrower to such Term Lender resulting from the Term Loans made by such Term Lender.

"**Threshold Amount**" shall mean $10,000,000.

"**Transaction Expenses**" shall mean any costs, fees or expenses incurred or paid by the Borrower or any of its Subsidiaries in connection with the Transactions described in clause (a) of the definition of such term.

"**Transactions**" shall mean, collectively, (a) the execution and delivery by the Loan Parties of the Loan Documents to which they are a party and the making of the Borrowings hereunder and the consummation of any other transaction in connection with the foregoing and (b) the payment of the Transaction Expenses.

"**Transferred Guarantor**" shall have the meaning specified in <u>Section 11.10</u>.

"**Treasury**" means the United States Department of the Treasury.

"**Unaudited Financial Statements**" shall mean the unaudited consolidated balance sheets and related statements of operations and cash flows of the Borrower and its consolidated Subsidiaries as at the end of and for the fiscal quarter ended March 31, 2023.

"**Unencumbered Assets**" shall have the meaning specified in <u>Section 5.21(d)</u>.

"**Uniform Commercial Code**" or "**UCC**" shall mean the Uniform Commercial Code as the same may from time to time be in effect in the State of New York or the Uniform Commercial Code (or similar code or statute) of another jurisdiction, to the extent it may be required to apply to any item or items of Collateral.

"**United States**" and "**U.S.**" mean the United States of America.

"**United States Tax Compliance Certificate**" shall have the meaning assigned to such term in <u>Section 3.01(d)</u>.

"**USA PATRIOT Act**" shall mean The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Title III of Pub. L. No. 107-56 (signed into law October 26, 2001)).

"**UST Adequate Protection Order**" means the interim order attached hereto as <u>Exhibit D</u>, as the same may be amended, modified or supplemented from time to time with the express written joinder or

consent of the Lenders (and with respect to amendments, modifications or supplements that affect the rights or duties of any Agent, such Agent) or, upon entry thereof by the Bankruptcy Court, the final order approving the interim order attached hereto as Exhibit H.

"**UST Adequate Protection Payments**" shall mean adequate protection payments expressly set forth in the UST Adequate Protection Order.

"**UST Secured Parties**" shall mean, collectively, the Prepetition UST Tranche A Secured Parties and the Prepetition UST Tranche B Secured Parties.

"**wholly owned**" shall mean, with respect to a Subsidiary of a Person, a Subsidiary of such Person all of the outstanding Equity Interests of which (other than (x) director's qualifying shares and (y) shares issued to foreign nationals to the extent required by applicable Law) are owned by such Person and/or by one or more wholly owned Subsidiaries of such Person.

"**Withdrawal Liability**" shall mean liability to a Multiemployer Plan as a result of a complete or partial withdrawal from such Multiemployer Plan, as such terms are defined in Part I of Subtitle E of Title IV of ERISA.

Section 1.02. *Other Interpretive Provisions.*  With reference to this Agreement and each other Loan Document, unless otherwise specified herein or in such other Loan Document:

(a)    The meanings of defined terms are equally applicable to the singular and plural forms of the defined terms.

(b)    (i)    The words "herein," "hereto," "hereof" and "hereunder" and words of similar import when used in any Loan Document shall refer to such Loan Document as a whole and not to any particular provision thereof.

(ii)    Article, Section, Exhibit and Schedule references are to the Loan Document in which such reference appears.

(iii)    The term "including" is by way of example and not limitation.

(c)    The term "documents" includes any and all instruments, documents, agreements, certificates, notices, reports, financial statements and other writings, however evidenced, whether in physical or electronic form.

(d)    In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including"; the words "to" and "until" each mean "to but excluding"; and the word "through" means "to and including."

(e)    The words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

(f)    All references to "knowledge" or "awareness" of any Loan Party or a Subsidiary thereof means the actual knowledge of a Responsible Officer of a Loan Party or such Subsidiary.

(g)    Section headings herein and in the other Loan Documents are included for convenience of reference only and shall not affect the interpretation of this Agreement or any other Loan Document.

(h)    The word "or" is not exclusive.

(i)    The usage of the term "written" includes electronic messages, including e-mail.

(j)    Any reference herein or in any other Loan Document to (i) a transfer, assignment, sale, disposition or transfer, or similar term, shall be deemed to apply to a division of or by a limited liability company, or an allocation of assets to a series of a limited liability company, as if it were a transfer, assignment, sale or transfer, or similar term, as applicable, to a separate Person, and (ii) a merger, consolidation, amalgamation or consolidation, or similar term, shall be deemed to apply to the unwinding of such a division or allocation, as if it were a merger, consolidation, amalgamation or consolidation or similar term, as applicable, with a separate Person.

Section 1.03.    *Certifications.*  All certifications to be made hereunder by an officer or representative of a Loan Party shall be made by such a Person in his or her capacity solely as an officer or representative of such Loan Party, on such Loan Party's behalf and not in such Person's individual capacity.

Section 1.04.    *Accounting Terms.*  All accounting terms not specifically or completely defined herein shall be construed in conformity with, and all financial data (including financial ratios and other financial calculations) required to be submitted pursuant to this Agreement shall be prepared in conformity with, GAAP, except as otherwise specifically prescribed herein or therein.

Section 1.05.    *Rounding.*  Any financial ratios required to be maintained by the Borrower pursuant to this Agreement (or required to be satisfied in order for a specific action to be permitted under this Agreement) shall be calculated by dividing the appropriate component by the other component, carrying the result to one place more than the number of places by which such ratio is expressed herein and rounding the result up or down to the nearest number (with a rounding-up if there is no nearest number).

Section 1.06.    *References to Agreements, Laws, Etc.*  Unless otherwise expressly provided herein, (a) references to Organization Documents, agreements (including the Loan Documents) and other contractual instruments shall be deemed to include all subsequent amendments, restatements, extensions, supplements, replacements, extensions, renewals, refinancings, restructurings and other modifications thereto, but only to the extent that such amendments, restatements, extensions, supplements, replacements, extensions, renewals, refinancings, restructurings and other modifications are not prohibited by hereby; and (b) references to any Law shall include all statutory and regulatory provisions consolidating, amending, replacing, supplementing or interpreting such Law.

Section 1.07.    *Times of Day.*  Unless otherwise specified, all references herein to times of day shall be references to Eastern time (daylight or standard, as applicable).

Section 1.08.    *Timing of Payment or Performance.*  Except as otherwise expressly provided herein, when the payment of any obligation or the performance of any covenant, duty or obligation is stated to be due or performance required on a day which is not a Business Day, the date of such payment or performance shall extend to the immediately succeeding Business Day.

Section 1.09.    *Certain Accounting Matters.*  Notwithstanding any other provision contained herein or in any other Loan Document, all terms of an accounting or financial nature used herein shall be construed, and all computations of amounts and ratios referred to herein shall be made, (a) without giving effect to any election under Statement of Financial Accounting Standards 159 or Accounting Standards Codification 825-10-25 (or any other Accounting Standards Codification or Financial Accounting Standard having a similar result or effect) to value any Indebtedness or other liabilities of the Borrower or any of its Subsidiaries at "fair value", as defined therein; and (b) without giving effect to any treatment of

30

Indebtedness in respect of convertible debt instruments under Accounting Standards Codification 470-20 and/or Statement of Financial Accounting Standards 150 (or any other Accounting Standards Codification or Financial Accounting Standard having a similar result or effect) to value any such Indebtedness in a reduced or bifurcated manner as described therein, and such Indebtedness shall at all times be valued at the full stated principal amount thereof.  Furthermore, unless the Borrower elects otherwise, notwithstanding any other provision contained herein or in any other Loan Document, for all purposes under this Agreement and the other Loan Documents, including negative covenants, financials covenants and component definitions, operating leases and Capitalized Leases will be deemed to be treated in a manner consistent with their current treatment under GAAP as in effect on December 31, 2018, notwithstanding any modifications or interpretive changes thereto that may occur thereafter.  For the avoidance of doubt, the principal amount of any non-interest bearing Indebtedness or other discount security constituting Indebtedness at any date shall be the principal amount thereof that would be shown on a balance sheet of the Borrower dated such date prepared in accordance with GAAP, except as expressly set forth in clauses (a) and (b) of this <u>Section 1.11</u>.

Section 1.10.  *Classification of Loans and Borrowings.*  For purposes of this Agreement, Loans may be classified and referred to by Class (e.g., a "Initial Term Loan").  Borrowings also may be classified and referred to by Class (e.g., a "Initial Term Borrowing").

Section 1.11.  *Currency Equivalents Generally*.  For purposes of determining compliance with Sections <u>7.01</u>, <u>7.02</u>, <u>7.03</u>, <u>7.05</u>, <u>7.06</u>, <u>7.08</u>, <u>7.09</u> and <u>7.13</u> with respect to any amount of Indebtedness, Lien, Asset Sale, Restricted Payment, Capital Expenditure, affiliate transaction, Contractual Obligation, prepayment of Indebtedness or Investment in a currency other than Dollars, no Default or Event of Default shall be deemed to have occurred solely as a result of changes in rates of currency exchange occurring after the time such Indebtedness or Investment is incurred (so long as such Indebtedness or Investment, at the time incurred, made or acquired, was permitted hereunder) and once incurred or made, the amount of such Indebtedness, Lien, Asset Sale, Restricted Payment, Capital Expenditure, affiliate transaction, Contractual Obligation, prepayment of Indebtedness or Investment, shall be always deemed to be at the Dollar amount on such date, regardless of later changes in currency exchange rates.

Section 1.12.  *Québec Matters.*  For purposes of any assets, liabilities or entities located in the Province of Québec and for all other purposes pursuant to which the interpretation or construction of this Agreement or any other Loan Document may be subject to the laws of the Province of Québec or a court or tribunal exercising jurisdiction in the Province of Québec, (a) "personal property" shall include "movable property", (b) "real property" or "real estate" shall include "immovable property", (c) "tangible property" shall include "corporeal property", (d) "intangible property" shall include "incorporeal property", (e) "security interest", "mortgage" and "lien" shall include a "hypothec", "right of retention", "prior claim", "reservation of ownership" and a resolutory clause, (f) all references to filing, perfection, priority, remedies, registering or recording under the Uniform Commercial Code or a PPSA shall include publication under the Civil Code of Québec, (g) all references to "perfection" of or "perfected" liens or security interest shall include a reference to an "opposable" or "set up" hypothec as against third parties, (h) any "right of offset", "right of setoff" or similar expression shall include a "right of compensation", (i) "goods" shall include "corporeal movable property" other than chattel paper, documents of title, instruments, money and securities, (j) an "agent" shall include a "mandatary", (k) "construction liens" or "mechanics, materialmen, repairmen, construction contractors or other like Liens" shall include "legal hypothecs" and "legal hypothecs in favour of persons having taken part in the construction or renovation of an immovable", (l) "joint and several" shall include "solidary", (m) "gross negligence or wilful misconduct" shall be deemed to be "intentional or gross fault", (n) "beneficial ownership" shall include "ownership on behalf of another as mandatary", (o) "easement" shall include "servitude", (p) "priority" shall include "rank" or "prior claim", as applicable (q) "survey" shall include "certificate of location and plan", (r) "state" shall include "province", (s) "fee simple title" shall include "absolute ownership" and "ownership" (including ownership

under a right of superficies), (t) "accounts" shall include "claims", (u) "legal title" shall be including "holding title on behalf of an owner as mandatary or prete-nom", (v) "ground lease" shall include "emphyteusis" or a "lease with a right of superficies, as applicable, (w) "leasehold interest" shall include "rights resulting from a lease", (x) "lease" shall include a "leasing contract" and (y) "foreclosure" shall include "the exercise of hypothecary recourse", and (z) "guarantee" and "guarantor" shall include "suretyship" and "surety", respectively. The parties hereto confirm that it is their wish that this Agreement and any other document executed in connection with the transactions contemplated herein be drawn up in the English language only and that all other documents contemplated thereunder or relating thereto, including notices, may also be drawn up in the English language only. *Les parties aux présentes confirment que c'est leur volonté que cette convention et les autres documents de crédit soient rédigés en langue anglaise seulement et que tous les documents, y compris tous avis, envisagés par cette convention et les autres documents peuvent être rédigés en langue anglaise seulement.*

## ARTICLE 2
### THE CREDITS

Section 2.01.  *Term Loan Commitments*.

(a)      (i)      Subject to the terms and conditions set forth in the DIP Order and DIP Term Sheet, each Lender made, on the Closing Date, a Closing Date Loan to the Borrower in an aggregate amount not exceeding such Lender's Closing Date Commitment pursuant to the terms of the DIP Term Sheet, and each such Closing Date Loan is now deemed made hereunder as of such date.  The aggregate amount of the Closing Date Loan made on the Closing Date and deemed made hereunder is $17,894,736.84.  The Closing Date Commitments were terminated as of the funding of the Closing Date Loan on the Closing Date.

(ii)      Subject to the terms and conditions set forth herein and in the DIP Order, each Lender severally agrees to make to the Borrower, on the Effective Date, an Effective Date Loan in an aggregate amount not to exceed the amount of such Lender's Effective Date Commitment as indicated next to such Lender's name on <u>Appendix B</u>.  The aggregate amount of the Effective Date Loan to be made on the Effective Date is $11,184,210.53.  The Effective Date Commitments shall terminate automatically immediately after the making of the Effective Date Loan on the Effective Date.

(iii)      Subject to the terms and conditions set forth herein and in the DIP Order, each Lender severally agrees to make to the Borrower, on the Final Order Entry Date, a Final Loan in an aggregate amount not to exceed the amount of such Lender's Final Commitment as indicated next to such Lender's name on <u>Appendix C</u>.  The aggregate amount of the Final Loan to be made on the Final Order Entry Date is $13,421,052.63.  The Final Commitments shall terminate automatically immediately after the making of the Final Loan on the Final Order Entry Date.

(b)      Subject to the terms and conditions set forth herein, each Delayed Draw Term Lender severally agrees to make to the Borrower at any time during the Delayed Draw Term Loan Availability Period one or more loans in an aggregate amount not to exceed the amount of such Delayed Term Lender's Delayed Draw Commitment as indicated next to such Lender's name on Appendix D (*provided*, that (x) the amount of the Delayed Draw Term Loans requested by the Borrower at any time shall not exceed the aggregate amount of unfunded Delayed Draw Term Commitments at such time and (y) no more than three (3) Borrowings of Delayed Draw Term Loans shall be permitted hereunder unless the Term Lenders holding the Delayed Draw Term Commitments otherwise consent).

(c)      The Initial Term Loans and the Delayed Draw Term Loans are sometimes referred to individually as a "Term Loan" and together as the "Term Loans".

(d)        Closing Date Loans, Effective Date Loans, Final Loans and Delayed Draw Term Loans which are repaid or prepaid may not be reborrowed.  All Term Loans and all other amounts owed hereunder and under any of Loan Document with respect to the Term Loans shall be paid in full in cash not later than the Maturity Date; *provided* that no prepayment, repayment, repurchase, or exchange of borrowings under the Junior DIP Facility shall occur until all B-2 Obligations have first been indefeasibly paid in full in cash and any such prepayment, repayment, repurchase or exchange shall otherwise be consistent with the priorities for liens and claims securing the Junior DIP Facility as set forth in the DIP Order and the Canadian DIP Recognition Order.

Section 2.02.  *Loans*.

(a)        Each Loan shall be made as part of a Borrowing consisting of Loans made by the Lenders ratably in accordance with their applicable Commitments*; provided, however*, that the failure of any Lender to make any Loan shall not in itself relieve any other Lender of its obligation to lend hereunder (it being understood, however, that no Lender shall be responsible for the failure of any other Lender to make any Loan required to be made by such other Lender).

(b)        The Borrower may only request Effective Date Loans in an aggregate principal amount not to exceed the Effective Date Commitment.  The Borrower may only request Final Loans in an aggregate principal amount not to exceed the Final Commitment.  The Borrower may only request Delayed Draw Term Loans in an aggregate principal amount not to exceed the Delayed Draw Term Commitment.

(c)        Each Borrowing of Delayed Draw Term Loans shall be comprised entirely of ABR Loans.

(d)        Each Lender shall make (i) each remaining Initial Term Loan to be made by it hereunder on the Effective Date and/or the Final Order Entry Date, as applicable, and (ii) each Delayed Draw Term Loan to be made by it hereunder on each Delayed Draw Term Loan Borrowing Date by wire transfer of immediately available funds to the Administrative Agent's Office not later than 1:00 p.m., New York City time, and upon receipt of all requested funds the Administrative Agent shall promptly credit the amounts so received to the DIP Proceeds Account.

(e)        Unless the Administrative Agent shall have received notice from a Lender prior to the date of any Borrowing that such Lender will not make available to the Administrative Agent such Lender's portion of such Borrowing, the Administrative Agent may assume that such Lender has made such portion available to the Administrative Agent on the date of such Borrowing in accordance with paragraph (d) above and the Administrative Agent may, in reliance upon such assumption, make available to the Borrower on such date a corresponding amount.  If the Administrative Agent shall have so made funds available then, to the extent that such Lender shall not have made such portion available to the Administrative Agent, such Lender and the Borrower severally agree to repay to the Administrative Agent forthwith on demand such corresponding amount together with interest thereon, for each day from the date such amount is made available to the Borrower to but excluding the date such amount is repaid to the Administrative Agent at (i) in the case of the Borrower, a rate per annum equal to the interest rate applicable at the time to the Loans comprising such Borrowing, and (ii) in the case of such Lender, a rate determined by the Administrative Agent to represent its cost of overnight or short-term funds (which determination shall be conclusive absent manifest error).  If such Lender shall repay to the Administrative Agent such corresponding amount, such amount shall constitute such Lender's Loan as part of such Borrowing for purposes of this Agreement.

Section 2.03.  *Borrowing Procedure.*  In order to request a Borrowing, the Borrower shall notify the Administrative Agent of such request in writing not later than 1:00 p.m., New York City time, two (2) Business Days before such proposed Borrowing.  Each such Request for Credit Extension shall be irrevocable (but may be conditioned upon the prepayment of indebtedness or the consummation of a

specified transaction) and shall specify the following information:  (i) the Class of Loans to be borrowed; (ii) the date of such Borrowing (which shall be a Business Day); (iii) the wire instructions for the DIP Proceeds Account to which such funds shall be delivered and (iv) the amount of such Borrowing; *provided, however*, that, notwithstanding any contrary specification in any Request for Credit Extension, each requested Borrowing shall comply with the requirements set forth in <u>Section 2.02</u> and shall be subject to satisfaction (or waiver) of the conditions precedent set forth in <u>Section 4.01</u> or <u>Section 4.02</u>, as applicable. The Administrative Agent shall promptly advise the applicable Lenders of any notice given pursuant to this <u>Section 2.03</u> (and the contents thereof), and of each Lender's portion of the requested Borrowing.

Section 2.04.  *Evidence of Debt; Repayment of Loans*.

(a)    The Borrower hereby unconditionally promises to pay to the Administrative Agent for the account of each Lender the principal amount of each Term Loan of such Lender as provided in <u>Section 2.11</u>.

(b)    Each Lender shall maintain in accordance with its usual practice an account or accounts evidencing the indebtedness of the Borrower to such Lender resulting from each Loan made by such Lender from time to time, including the amounts of principal and interest payable and paid to such Lender from time to time under this Agreement.

(c)    The Administrative Agent shall maintain accounts in which it will record (i) the amount of each Loan made hereunder and the Class thereof, (ii) the amount of any principal or interest due and payable or to become due and payable from the Borrower to each Lender hereunder and (iii) the amount of any sum received by the Administrative Agent hereunder from the Borrower or any Guarantor and each Lender's share thereof.

(d)    The entries made in the accounts maintained pursuant to paragraphs (b) and (c) above shall be prima facie evidence of the existence and amounts of the obligations therein recorded; *provided, however*, that (i) the failure of any Lender or the Administrative Agent to maintain such accounts or any error therein shall not in any manner affect the obligations of the Borrower to repay the Loans in accordance with their terms and (ii) in the event of any conflict between the accounts set forth in paragraphs (b) and (c) above, the amounts set forth in the accounts maintained pursuant to paragraph (c) shall prevail.

(e)    Any Lender may request that Loans made by it hereunder be evidenced by a Term Note or a Delayed Draw Term Note, as applicable.  In such event, the Borrower shall promptly execute and deliver to such Lender a Term Note or a Delayed Draw Term Note, as applicable, payable to such Lender. Notwithstanding any other provision of this Agreement, in the event any Lender shall request and receive a Term Note or a Delayed Draw Term Note, as applicable, the interests represented by such Term Note or Delayed Draw Term Note, as applicable, shall at all times be represented by one or more promissory notes payable to the payee named therein, unless such Term Note or Delayed Draw Term Note, as applicable, is duly cancelled.

(f)    This <u>Section 2.04</u> shall at all times be interpreted and administered in such a way that the Term Notes or the Delayed Draw Term Notes, as applicable, will be issued in "registered form" within the meaning of Treasury Regulation Section 5f.163-1(a).

Section 2.05.  *Fees*.

(a)    The Borrower agrees to pay to (i) the Agents, for their own account, the administrative agent and collateral agent  fees applicable to the Facilities payable in the amounts and at the times agreed upon between the Borrower and the Administrative Agent as set forth in the Agency Fee Letter, (ii) the

Administrative Agent, for the account of the Lenders according to each Lender's Pro Rata Share of the Initial Term Loans, a fee (the "**Closing Fee**") to be fully earned as of the Closing Date and due and payable on the Maturity Date in an amount equal to 4.00% of the aggregate amount of Initial Term Commitments as of the Closing Date prior to the making of the Closing Date Loans and (iii) the Lenders, according to such Lender's Pro Rata Share of the Delayed Draw Term Loans, an exit fee (the "**DDTL Exit Fee**"), to be earned, due and payable on the Exit Date, equal to 7.50% per annum multiplied by the aggregate amount of Delayed Draw Term Loans drawn hereunder (the fees pursuant to the foregoing subclauses (i), (ii) and (iii) of this clause (a), the "**Fees**").

(b)     All Fees shall be paid on the dates due, in immediately available funds, to the Administrative Agent; provided that the Closing Fee shall payable on the Maturity Date only if the B-2 Obligations shall have been indefeasibly paid in full in cash prior to the payment of such Closing Fee. Once paid, none of the Fees shall be refundable under any circumstances.

Section 2.06.  *Interest on Loans*.

(a)     Subject to the provisions of <u>Section 2.07</u>, (i) the Delayed Draw Term Loans shall bear interest (computed on the basis of the actual number of days elapsed over a year of 365 or 366 days, as the case may be, and calculated from and including the date of such Borrowing to but excluding the date of repayment thereof) at a rate per annum equal to the Alternate Base Rate plus the Applicable Margin and (ii) the Initial Term Loans shall bear interest at a rate per annum equal to 15.00%. For the avoidance of doubt, no date of payment shall be included in the calculation of fees or interest.

(b)     [Reserved].

(c)     Interest on each Loan shall be payable in cash on the Interest Payment Dates applicable to such Loan except as otherwise provided in this Agreement. The applicable Alternate Base Rate shall be determined by the Administrative Agent, and such determination shall be conclusive absent manifest error.

Section 2.07.  *Default Interest*.  Automatically from and after the occurrence and during the continuance of an Event of Default, the principal amount of all Loans outstanding and, to the extent permitted by applicable law, any interest payments on the Loans or any fees or other amounts owed hereunder, shall thereafter, after as well as before judgment, bear interest (including post-petition interest in any proceeding under Debtor Relief Laws) payable on written demand at a rate that is 2.0% per annum in excess of the interest rate otherwise payable hereunder with respect to the applicable Loans (or, in the case of any such fees and other amounts, at a rate which is 2.0% per annum in excess of the interest rate otherwise payable hereunder).

Section 2.08.  *[Reserved]*.

Section 2.09.  *[Reserved]*.

Section 2.10.  *[Reserved]*.

Section 2.11.  *Repayment of Term Borrowings*.  Subject to the Senior ICA Provisions and the terms and priorities set forth in the DIP Order, the Borrower shall repay to the Administrative Agent, for the ratable account of the Term Lenders on the Maturity Date, the aggregate principal amount of all Term Loans outstanding on such date, together with all accrued and unpaid interest on the principal amount to be paid (to, but excluding, the date of such payment) and all fees and expenses payable under the Loan Documents and other outstanding Obligations, after the B-2 Obligations have been indefeasibly paid in full in cash. All repayments pursuant to this <u>Section 2.11</u> shall be without premium or penalty.

Section 2.12.  *Voluntary Prepayment; Termination or Reduction of Commitments*.

(a)       Subject to the Senior ICA Provisions and the terms and priorities set forth in the DIP Order, the Borrower shall have the right at any time to prepay the Term Loans in full or in part, in each case without premium or penalty, after the B-2 Obligations have been indefeasibly paid in full in cash.  The Borrower shall provide written (email) notice to the Administrative Agent of such prepayment at least one (1) Business Day prior to the date of prepayment, before 1:00 p.m., New York City time.

(b)       Such notice of prepayment shall specify the prepayment date, shall be irrevocable and shall specify the principal amount of the Term Loans (or portion thereof) to be prepaid on the date stated therein; *provided*, *however*, that a notice of prepayment delivered by the Borrower may state that such notice is conditioned upon the consummation of a sale transaction or any other specified event, in which case such notice may be revoked by the Borrower (by notice to the Administrative Agent on or prior to the specified effective date) if such condition is not satisfied.  All prepayments under this Section 2.12 shall be without premium or penalty.  All prepayments under this Section 2.12 shall be accompanied by all accrued and unpaid interest on the principal amount to be prepaid to but excluding the date of payment and all fees, expenses and other outstanding Obligations.

(c)       The Borrower may, upon written notice to the Administrative Agent, terminate any unused Delayed Draw Term Commitments, or from time to time permanently reduce the unused Delayed Draw Term Commitments, in each case without premium or penalty.  The Borrower shall provide written (email) notice to the Administrative Agent of its election to terminate the unused Delayed Draw Term Commitments at least one (1) Business Day prior to the date of such termination, before 1:00 p.m., New York City time.

Section 2.13.  *[Reserved]*.

Section 2.14.  *Pro Rata Treatment.*  Each Borrowing, each payment or prepayment of principal of any Borrowing, each payment of interest on the Loans, each reduction of the Term Loan Commitments shall be allocated pro rata among the Lenders of the applicable Class in accordance with their respective applicable Commitments (or, if such Commitments shall have expired or been terminated, in accordance with the respective principal amounts of their outstanding Loans); *provided* that the provisions of this Section 2.14 shall not be construed to apply to any payment made by the Borrower required to be made on a non pro rata basis pursuant to and in accordance with the express terms of this Agreement as in effect as of the date of this Agreement.  Each Lender agrees that in computing such Lender's portion of any Borrowing to be made hereunder, the Administrative Agent may, in its discretion, round each Lender's percentage of such Borrowing to the next higher or lower whole Dollar amount.

Section 2.15.  *Sharing of Setoffs.*  Each Lender agrees that if it shall, through the exercise of a right of banker's lien, setoff or counterclaim against the Borrower or any other Loan Party, or pursuant to a secured claim under Section 506 of Title 11 of the United States Code or other security or interest arising from, or in lieu of, such secured claim, received by such Lender under any applicable Debtor Relief Laws or other similar law or otherwise, or by any other means, obtain payment (voluntary or involuntary) in respect of any Loan or Loans as a result of which the unpaid principal portion of its Loans shall be proportionately less than the unpaid principal portion of the Loans of any other Lender, it shall be deemed simultaneously to have purchased from such other Lender at face value, and shall promptly pay to such other Lender the purchase price for, a participation in the Loans of such other Lender, so that the aggregate unpaid principal amount of the Loans and participations in Loans held by each Lender shall be in the same proportion to the aggregate unpaid principal amount of all Loans then outstanding as the principal amount of its Loans prior to such exercise of banker's lien, setoff or counterclaim or other event was to the principal amount of all Loans outstanding prior to such exercise of banker's lien, setoff or counterclaim or other

event; *provided, however*, that (i) if any such purchase or purchases or adjustments shall be made pursuant to this Section 2.15 and the payment giving rise thereto shall thereafter be recovered, such purchase or purchases or adjustments shall be rescinded to the extent of such recovery and the purchase price or prices or adjustment restored without interest, and (ii) the provisions of this Section 2.15 shall not be construed to apply to any payment made by the Borrower pursuant to and in accordance with the express terms of this Agreement or any payment obtained by a Lender as consideration for the assignment of or sale of a participation in any of its Loans to any assignee or participant in accordance with the terms herein.  The Borrower expressly consents to the foregoing arrangements and agrees that any Lender holding a participation in a Loan deemed to have been so purchased may exercise any and all rights of banker's lien, setoff or counterclaim with respect to any and all moneys owing by the Borrower to such Lender by reason thereof as fully as if such Lender had made a Loan directly to the Borrower in the amount of such participation.

Section 2.16.  *Payments.*

(a)     The Borrower shall make each payment (including principal of or interest on any Borrowing or any Fees or other amounts due and payable) hereunder and under any other Loan Document not later than 2:00 p.m., New York City time, on the date when due in immediately available Dollars, without setoff, defense or counterclaim.  Any amounts received after such time on any date may, in the discretion of the Administrative Agent, be deemed to have been received on the next succeeding Business Day for purposes of calculating interest thereon.  Each such payment shall be made to the Administrative Agent at the Administrative Agent's Office.  Subject to the Senior ICA Provisions, the Administrative Agent shall promptly distribute to each Lender any payments received by the Administrative Agent on behalf of such Lender.

(b)     Except as otherwise expressly provided herein, whenever any payment (including principal of or interest on any Borrowing or any Fees or other amounts) hereunder or under any other Loan Document shall become due, or otherwise would occur, on a day that is not a Business Day, such payment may be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of interest or Fees, if applicable.

Section 2.17.  *Currency Indemnity.*  If, for the purposes of obtaining judgment in any court in any jurisdiction with respect to this Agreement or any other Loan Document, it becomes necessary to convert into a particular currency (the "**Judgment Currency**") any amount due under this Agreement or under any other Loan Document in any currency other than the Judgment Currency (the "**Currency Due**)**,** then conversion shall be made at the rate of exchange prevailing on the Business Day before the day on which judgment is given. For this purpose "rate of exchange" means the rate at which the Lenders are able, on the relevant date, to purchase the Currency Due with the Judgment Currency in accordance with its normal practice at its head office in New York**.** In the event that there is a change in the rate of exchange prevailing between the Business Day immediately preceding the day on which the judgment is given and the date of receipt by the Administrative Agent of the amount due, the Borrower shall, on the date of receipt by the Administrative Agent, pay such additional amounts, if any, or be entitled to receive reimbursement of such amount, if any, as may be necessary to ensure that the amount received by the Administrative Agent on such date is the amount in the Judgment Currency which when converted at the rate of exchange prevailing on the date of receipt by the Administrative Agent is the amount then due under this Agreement or such other Loan Document in the Currency Due. If the amount of the Currency Due which the Lenders are so able to purchase is less than the amount of the Currency Due originally due to it, the Borrower shall indemnify and save the Administrative Agent and the Lenders harmless from and against all loss or damage arising as a result of such deficiency. This indemnity shall constitute an obligation separate and independent from the other obligations contained in this Agreement and the other Loan Documents, shall give rise to a separate and independent cause of action, shall apply irrespective of any indulgence granted by the

Administrative Agent from time to time and shall continue in full force and effect notwithstanding any judgment or order for a liquidated sum in respect of an amount due under this Agreement or any other Loan Document or under any judgment or order.

## ARTICLE 3
### TAXES, INCREASED COSTS PROTECTION AND ILLEGALITY

Section 3.01.  *Taxes*.

(a)        Except as provided in this <u>Section 3.01</u>, any and all payments made by or on account of the Borrower or any Guarantor under any Loan Document to any Lender or Agent shall be made free and clear of and without deduction for any and all present or future taxes, duties, levies, imposts, assessments, withholdings (including backup withholding), fees or similar charges imposed by any Governmental Authority including interest, penalties and additions to tax (collectively "**Taxes**"), excluding (i) Taxes imposed on or measured by net income, however denominated, and franchise (and similar) Taxes imposed on such Lender or Agent in lieu of net income Taxes, (ii) Taxes attributable to the failure by the relevant Lender or Agent to deliver the documentation required to be delivered pursuant to clause (d) of this <u>Section 3.01</u>, (iii) Taxes imposed by a jurisdiction as a result of any connection between such Lender or Agent and such jurisdiction other than any connection arising from executing, delivering, being a party to, engaging in any transactions pursuant to, performing its obligations under, or enforcing any Loan Document, (iv) any branch profits Taxes imposed by the United States or any similar Tax imposed by any other jurisdiction in which the Borrower or any Guarantor (as appropriate) is located, (v) any U.S. federal withholding tax imposed on amounts payable hereunder pursuant to a law in effect at such time the Lender or Agent becomes a party to this Agreement or designates a new lending office, except in each case to the extent such Lender (or its assignor, if any) was entitled at the time of designation of a new lending office (or assignment) to receive additional amounts with respect to such withholding tax pursuant to this <u>Section 3.01(a)</u> and (vi) any withholding Tax imposed under FATCA (all such non-excluded Taxes imposed on such payments, being hereinafter referred to as "**Indemnified Taxes**").  If the Borrower, any Guarantor or other applicable withholding agent shall be required by any Laws to deduct or withhold any Indemnified Taxes or Other Taxes (as defined below) from or in respect of any sum payable under any Loan Document to any Agent or any Lender, (i) the sum payable by the Borrower or Guarantor shall be increased as necessary so that after making all required deductions or withholding (including deductions and withholdings applicable to additional sums payable under this <u>Section 3.01</u>), such Agent or Lender (as the case may be) receives an amount equal to the sum it would have received had no such deductions or withholdings been made, (ii) the applicable withholding agent shall make such deductions or withholdings, (iii) the applicable withholding agent shall pay the full amount deducted or withheld to the relevant Governmental Authority in accordance with applicable Laws, and (iv) within thirty (30) days after the date of such payment (or, if receipts or evidence are not available within thirty (30) days, as soon as possible thereafter), if the Borrower or any Guarantor is the applicable withholding agent, the applicable withholding agent shall furnish to such Agent or Lender (as the case may be) the original or a copy of a receipt evidencing payment thereof or other evidence acceptable to such Agent or Lender.

(b)        In addition, the Borrower agrees to pay any and all present or future stamp, court or documentary taxes and any other intangible recording taxes, or charges or levies of the same character, imposed by any Governmental Authority, which arise from any payment made under any Loan Document or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, any Loan Document (including additions to tax, penalties and interest related thereto) excluding, in each case, such amounts that result from an Agent's or Lender's transfer or assignment to or designation of a new applicable lending office or other office for receiving payments under any Loan Document (collectively, "**Assignment Taxes**") except for Assignment Taxes resulting from any assignment or

participation that is requested or required in writing by the Borrower (all such non-excluded taxes described in this Section 3.01(b) being hereinafter referred to as "**Other Taxes**").

(c)     Without duplication of Section 3.01(a) or (b), the Borrower and each Guarantor agree to indemnify each Agent and each Lender for (i) the full amount of Indemnified Taxes and Other Taxes paid by such Agent or Lender (including Indemnified Taxes and Other Taxes imposed or asserted on or attributable to amounts payable under this Section 3.01(c)) and (ii) any reasonable expenses arising therefrom or with respect thereto, *provided* such Agent or Lender, as the case may be, provides Borrower or Guarantor with a written statement thereof setting forth in reasonable detail the basis and calculation of such amounts.

(d)     Each Lender and Agent shall, at such times as are reasonably requested by the Borrower or the Administrative Agent, provide the Borrower and the Administrative Agent with any documentation prescribed by Law or reasonably requested by the Borrower or the Administrative Agent certifying as to any entitlement of such Lender or Agent to an exemption from, or reduction in, withholding tax with respect to any payments to be made to such Lender under the Loan Documents.  Each such Lender and Agent shall, whenever a lapse in time or change in circumstances renders such documentation obsolete or inaccurate in any material respect, deliver promptly to the Borrower and the Administrative Agent updated or other appropriate documentation (including any new documentation reasonably requested by the applicable withholding agent) or promptly notify the Borrower and the Administrative Agent of its inability to do so. Unless the applicable withholding agent has received forms or other documents reasonably satisfactory to it indicating that payments under any Loan Document to or for a Lender are not subject to withholding tax or are subject to such Tax at a rate reduced by an applicable tax treaty, the Borrower, the Administrative Agent or other applicable withholding agent shall withhold amounts required to be withheld by applicable Law from such payments at the applicable statutory rate.  Notwithstanding the foregoing, a Lender shall not be required to deliver any form pursuant to this clause (d) (other than such documentation set forth in Sections 3.01(d)(i), 3.01(d)(ii) and 3.01(g)) that such Lender is not legally able to deliver.  In addition, each Lender and Agent shall deliver to the Borrower and the Administrative Agent such other tax forms or other documents as shall be prescribed by applicable Law or reasonably requested by the Borrower or the Administrative Agent as will enable the Borrower or the Administrative Agent to determine whether or not such Lender or Agent is subject to backup withholding or information reporting requirements.  Without limiting the foregoing:

(i)     Each Lender and Agent that is a United States person (as defined in Section 7701(a)(30) of the Code) shall deliver to the Borrower and the Administrative Agent on or before the date on which it becomes a party to this Agreement (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent) two properly completed and duly signed executed copies of Internal Revenue Service Form W-9 certifying that such Lender or Agent (as the case may be) is exempt from federal backup withholding.

(ii)     Each Lender and Agent that is not a United States person (as defined in Section 7701(a)(30) of the Code) shall deliver to the Borrower and the Administrative Agent on or before the date on which it becomes a party to this Agreement (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent) whichever of the following is applicable:

(A)     two properly completed and duly signed executed copies of Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E (or any successor forms) claiming eligibility for the benefits of an income tax treaty to which the United States is a party, and such other documentation as required under the Code,

39

(B)     two properly completed and duly signed executed copies of Internal Revenue Service Form W-8ECI (or any successor forms) and, in the case of an Agent, a withholding certificate that satisfies the requirements of Treasury Regulation Sections 1.1441-1(b)(2)(iv) and 1.1441-1(e) (3)(v) as applicable to a U.S. branch that has agreed to be treated as a U.S. person for withholding tax purposes(C)     in the case of a Lender claiming the benefits of the exemption for portfolio interest under Section 881(c) of the Code, (A) a certificate substantially in the form of Exhibit G-1, G-2, G-3 or G-4, as applicable (any such certificate a "**United States Tax Compliance Certificate**") and (B) two properly completed and duly signed executed copies of Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E, or

(C)     to the extent a Lender is not the beneficial owner (for example, where the Lender is a partnership, or is a participant holding a participation granted by a participating Lender), Internal Revenue Service Form W-8IMY (or any successor forms) of the Lender, accompanied by an Internal Revenue Service Form W-8ECI, W-8BEN, W-8BEN-E, United States Tax Compliance Certificate, Internal Revenue Service Form W-9, Internal Revenue Service Form W-8IMY or any other required information from each beneficial owner, as applicable (*provided* that, if one or more beneficial owners are claiming the portfolio interest exemption, the United States Tax Compliance Certificate may be provided by such Lender on behalf of such beneficial owner).  Each Lender and Agent shall deliver to the Borrower and the Administrative Agent two further executed copies of any previously delivered form or certification (or any applicable successor form) on or before the date that any such form or certification expires or becomes obsolete or inaccurate and promptly after the occurrence of any event requiring a change in the most recent form previously delivered by it to the Borrower or the Administrative Agent, or promptly notify the Borrower and the Administrative Agent that it is unable to do so.  Each Lender and Agent shall promptly notify the Administrative Agent at any time it determines that it is no longer in a position to provide any previously delivered form or certification to the Borrower or the Administrative Agent.

(e)     Any Lender or Agent claiming any additional amounts payable pursuant to this Section 3.01 shall use its reasonable efforts to change the jurisdiction of its lending office (or take any other measures reasonably requested by the Borrower) if such a change or other measures would reduce any such additional amounts (or any similar amount that may thereafter accrue) and would not, in the reasonable, good faith determination of such Lender, result in any unreimbursed cost or expense or be otherwise materially disadvantageous to such Lender.

(f)     If any Lender or Agent determines, in its reasonable, good faith discretion, that it has received a refund in respect of any Taxes as to which indemnification or additional amounts have been paid to it by the Borrower pursuant to this Section 3.01 (including by payment of additional amounts pursuant to this Section 3.01) it shall promptly remit such refund to the Borrower or Guarantor, net of all out-of-pocket expenses of the Lender or Agent, as the case may be and without interest (other than any interest paid by the relevant Governmental Authority with respect to such refund net of any Taxes payable by any Agent or Lender on such interest); *provided* that the Borrower and Guarantors, upon the request of the Lender or Agent, as the case may be, agree promptly to return such refund (plus any penalties, interest or other charges imposed by the relevant Governmental Authority) to such party in the event such party is required to repay such refund to the relevant Governmental Authority.  This section shall not be construed to require the Administrative Agent or any Lender to make available its tax returns (or any other information relating to Taxes that it deems confidential) to the Borrower or any other person.

(g)     If a payment made to a Lender or Agent under any Loan Document would be subject to withholding Tax imposed by FATCA if such Lender or Agent were to fail to comply with the applicable reporting requirements of FATCA (including those contained in Section 1471(b) or 1472(b) of the Code, as applicable), such Lender or Agent shall deliver to the Borrower and the Administrative Agent at the time or times prescribed by law and at such time or times reasonably requested by the Borrower or the

Administrative Agent such documentation prescribed by applicable Law (including as prescribed by Section 1471(b)(3)(C)(i) of the Code) and such additional documentation reasonably requested by the Borrower or the Administrative Agent as may be necessary for the Borrower and the Administrative Agent to comply with their obligations under FATCA and to determine that such Lender or Agent has complied with such Lender's or Agent's obligations under FATCA or to determine the amount, if any, to deduct and withhold from such payment.  Solely for purposes of this Section 3.01(g), "FATCA" shall include any amendments made to FATCA after the date of this Agreement.

(h)    Each party's obligations under this Section 3.01 shall survive any assignment of rights by, or the replacement of, a Lender, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any Loan Document.

(i)    Each Lender shall indemnify each Agent, within 10 days following written demand therefor, for the full amount of any Indemnified Taxes and Other Taxes attributable to such Lender (but only to the extent that such Agent has not already been indemnified by the Borrower and each Guarantor for such Indemnified Taxes and Other Taxes and without limiting the obligation of the Borrower and each Guarantor to do so) that are payable or paid by such Agent in connection with any Loan Documents, and any expenses arising therefrom or with respect thereto; *provided* that such Agent provides such Lender with a written statement thereof setting forth in reasonable detail the basis and calculation of such amounts.

Section 3.02.  *[Reserved]*.

Section 3.03.  *Increased Cost and Reduced Return; Capital Adequacy*.

(a)    If any Lender reasonably determines that as a result of the introduction of or any change in or in the interpretation of any Law, in each case after the Closing Date, or such Lender's compliance therewith, there shall be any material increase in the cost to such Lender of agreeing to make or making, funding or maintaining any Loans, or a material reduction in the amount received or receivable by such Lender in connection with any of the foregoing (excluding for purposes of this Section 3.03(a) any such increased costs or reduction in amount resulting from (i) Indemnified Taxes or Other Taxes for which additional amounts are payable pursuant to Section 3.01, or any Taxes excluded from the definition of Indemnified Taxes under exception (iii) thereof to the extent such Taxes are imposed on or measured by net income or profits or are franchise taxes (imposed in lieu of the foregoing taxes) and any Taxes excluded from the definition of Indemnified Taxes under exceptions (i), (ii), (iv), (v) and (vi) thereof or (ii) reserve requirements contemplated by Section 3.03(c)) and the result of any of the foregoing shall be to increase the cost to such Lender of making or maintaining its obligations to make any Loan, or to reduce the amount of any sum received or receivable by such Lender, then from time to time within fifteen (15) days after written demand by such Lender setting forth in reasonable detail such increased costs (with a copy of such written demand to the Administrative Agent given in accordance with Section 3.05), the Borrower shall pay to such Lender such additional amounts as will compensate such Lender for such increased cost or reduction.

(b)    If any Lender determines that the introduction of any Law regarding capital adequacy or liquidity or any change therein or in the interpretation thereof, in each case after the Closing Date, or compliance by such Lender (or its lending office) therewith, has the effect of reducing the rate of return on the capital of such Lender or any entity controlling such Lender as a consequence of such Lender's obligations hereunder (taking into consideration its policies with respect to capital adequacy and liquidity and such Lender's desired return on capital), then from time to time upon written demand of such Lender setting forth in reasonable detail the charge and the calculation of such reduced rate of return (with a copy of such written demand to the Administrative Agent given in accordance with Section 3.05), the Borrower

shall pay to such Lender such additional amounts as will compensate such Lender or controlling entity for such reduction within fifteen (15) days after receipt of such written demand.

(c)     The Borrower shall pay to each Lender, as long as such Lender shall be required to comply with any reserve ratio requirement or analogous requirement of any other central banking or financial regulatory authority imposed in respect of the maintenance of the Commitments, such additional costs (expressed as a percentage per annum and rounded upwards, if necessary, to the nearest five decimal places) equal to the actual costs allocated to such Commitment or Loan by such Lender (as determined by such Lender in good faith, which determination shall be conclusive absent manifest error) which in each case shall be due and payable on each date on which interest is payable on such Loan, *provided* the Borrower shall have received at least fifteen (15) days' prior written notice (with a copy to the Administrative Agent) of such additional interest or cost from such Lender.  If a Lender fails to give written notice fifteen (15) days prior to the relevant Interest Payment Date, such additional interest or cost shall be due and payable fifteen (15) days from receipt of such written notice.

(d)     Failure or delay on the part of any Lender to demand compensation pursuant to this Section 3.03 shall not constitute a waiver of such Lender's right to demand such compensation.

(e)     If any Lender requests compensation under this Section 3.03, then such Lender will, if requested by the Borrower, use commercially reasonable efforts to designate another lending office for any Loan affected by such event; *provided* that such efforts are made on terms that, in the reasonable judgment of such Lender, cause such Lender and its lending office(s) to suffer no material economic, legal or regulatory disadvantage, and *provided further* that nothing in this Section 3.03(e) shall affect or postpone any of the Obligations of the Borrower or the rights of such Lender pursuant to Section 3.03(a), (b), (c) or (d).

Section 3.04.  *[Reserved]*.

Section 3.05.  *Matters Applicable to all Requests for Compensation*.

(a)     Any Agent or any Lender claiming compensation under this Article 3 shall deliver a certificate to the Borrower setting forth the additional amount or amounts to be paid to it hereunder which shall be conclusive in the absence of manifest error.  In determining such amount, such Agent or such Lender may use any reasonable and customary averaging and attribution methods.

(b)     With respect to any Lender's claim for compensation under Section 3.03, the Borrower shall not be required to compensate such Lender for any amount incurred more than one hundred and eighty (180) days prior to the date that such Lender notifies the Borrower of the event that gives rise to such claim; *provided* that, if the circumstance giving rise to such claim is retroactive, then such 180-day period referred to above shall be extended to include the period of retroactive effect thereof.

(c)     [Reserved].

(d)     [Reserved].

(e)     Notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines or directives thereunder or issued in connection therewith and (y) all requests, rules, guidelines or directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities, in each case pursuant to Basel III, shall be deemed to have been adopted or made after the Closing Date, regardless of the date enacted or adopted.

Section 3.06.  *[Reserved]*.

Section 3.07.  *Survival*.  All of the Borrower's obligations under this Article 3 shall survive termination of the Commitments and repayment of all other Obligations hereunder.

# ARTICLE 4
## CONDITIONS PRECEDENT TO EFFECTIVENESS AND EACH CREDIT EXTENSION

Section 4.01.  *All Credit Extensions*.  The obligation of each Lender to honor any Request for Credit Extension for a Final Loan or a Delayed Draw Term Loan, as applicable, is subject to satisfaction (or waiver by the Lenders) of the following conditions precedent:

(a)    The representations and warranties set forth in Article 5 and in each other Loan Document shall be true and correct in all material respects on and as of the date of such Credit Extension with the same effect as though made on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date; *provided*, that any such representation and warranty that is qualified by "materiality", "material adverse effect" or similar language shall be true and correct in all respects (after giving effect to such qualification therein) on and as of the date of such Credit Extension, with the same effect as though made on and as of such date or such earlier date, as applicable.

(b)    No Default or Event of Default shall exist or would result from such proposed Credit Extension from the application of the proceeds therefrom.

(c)    The Administrative Agent shall have received a Request for Credit Extension in accordance with the requirements hereof.

(d)    With respect to the Final Loans, the Final Order (i) shall be in form and substance satisfactory to the Agents and the Lenders, (ii) shall have been entered by the Bankruptcy Court within a date which is 45 days following the Petition Date, and the Borrower shall have delivered to the Administrative Agent and the Lenders a true and complete copy of such order and (iii) shall be in full force and effect and shall not have been modified or amended absent prior written consent of the Administrative Agent and the Lenders or reversed, modified, amended, stayed, vacated, appealed or subject to a stay pending appeal or otherwise challenged or subject to any challenge in any respect absent the prior written consent of the Administrative Agent and the Lenders.

(e)    With respect to any Delayed Draw Term Loan, the Prepetition Senior Secured Claims outstanding, shall not exceed, at the time of such Credit Extension, in the aggregate, $1,435,000,000.

Each Request for Credit Extension submitted by the Borrower shall be deemed to be a representation and warranty by the Borrower that the conditions specified in Sections 4.01(a) and (b) have been satisfied or waived on and as of the date of the applicable Credit Extension.

Section 4.02.  *Effective Date Credit Extension*.  The effectiveness of this Agreement and the obligation of each Lender to fund the Effective Date Loans on the Effective Date, shall be subject to satisfaction (or waiver by the Agents and the Lenders) of the following conditions precedent:

(a)    The Administrative Agent and the Lenders shall have received the following, each properly executed by a Responsible Officer of the signing Loan Party, each dated as of the Effective Date:

(i)        executed counterparts of this Agreement duly executed by the Borrower and each Guarantor;

(ii)        a Term Note executed by the Borrower in favor of each Lender that has requested a Term Note at least one Business Day in advance of the Effective Date; and

(iii)        a Request for Credit Extension duly executed by the Borrower in accordance with the requirements hereof.

(b)        The Administrative Agent shall have received a certificate executed by the Secretary (or other equivalent officer, partner or manager) of each Loan Party dated as of the Effective Date certifying:  (i) as true and correct a copy of resolutions in form and substance reasonably satisfactory to the Administrative Agent, of the board of directors (or other equivalent governing body, member or partner) of each Loan Party approving and authorizing the execution, delivery and performance by such Loan Party of this Amendment and all documents, instruments and agreements executed and/or delivered in connection herewith (if any) and of the transactions contemplated herein and therein, (ii) as true and correct and in full force and effect, without any amendment except as shown, a copy of the Organization Documents of each Loan Party and that the copies of such Loan Party's Organizational Documents delivered to Administrative Agent on such date as a part of the "secretary's certificate" delivered by such Loan Party are true, correct and complete copies of such Organizational Documents as currently in full force and effect, (iii) if available, a true and correct a copy of a good standing certificate/certificate of status for each Loan Party certified by the applicable Governmental Authority of such Loan Party's jurisdiction of incorporation, organization or formation dated a recent date prior to the date hereof, and (iv) the names and signatures of the officers of such Loan Party authorized to execute and deliver this Agreement and all documents, instruments and agreements executed and/or delivered in connection herewith (if any) on behalf of such Loan Party pursuant to the resolutions referenced in clause (i) above (and such certificate shall be countersigned by another officer of such Loan Party certifying the name, office and signature of the Secretary (or other equivalent officer, partner or manager) of such Loan Party giving such certificate).

(c)        The Administrative Agent and the Lenders shall have received a certificate from an officer of the Borrower certifying as to compliance with the conditions set forth in Sections 4.01(a) and (b).

(d)        The Administrative Agent and the Lenders shall have received all applicable fees and other amounts, earned, due and payable on or prior to the Effective Date, including, to the extent invoiced prior to the Effective Date (except as otherwise reasonably agreed by the Borrower), reimbursement or payment of all out-of-pocket expenses required to be reimbursed or paid by the Borrower hereunder or under any other Loan Document on or prior to the Effective Date.

(e)        The Interim Order (i) shall have been entered by the Bankruptcy Court and the Borrower shall have delivered to the Administrative Agent and the Lenders a true and complete copy of such order, and (ii) shall be in full force and effect and shall not (in whole or in part) have been reversed, modified, amended, stayed, appealed or vacated, or subject to stay pending appeal, or otherwise challenged or subject to any challenge, absent prior written consent of the Lenders (and with respect to any provisions that affect the rights or duties of any Agent, such Agent).

(f)        (i) No trustee, examiner, receiver or interim receiver shall have been appointed or designated with respect to the Debtors or their business, properties or assets and no motion shall be pending seeking any such relief, and (ii) no motion shall be pending seeking any other relief in the Bankruptcy Court or the Canadian Court to exercise control over Collateral with an aggregate fair market value in excess of $100,000 with respect to all such motions; *provided* that this clause (ii) shall not apply to any motion that

is being contested in good faith by the Debtors and which contest the Debtors reasonably believe will be successful.

(g)     The DIP Proceeds Account shall have been established and shall constitute Collateral but not Prepetition ABL Priority Collateral.

Solely for purposes of determining whether the conditions set forth in <u>Section 4.01</u> or <u>4.02</u> have been satisfied in respect of any Credit Extension, the Agents and each Lender party hereto shall be deemed to have consented to, approved, accepted or be reasonably satisfied with any document delivered prior to such Credit Extension or other matter (in each case, for which such consent, approval, acceptance or satisfaction is expressly required by <u>Section 4.01</u> or <u>4.02</u>, as applicable) by releasing its signature page to this Agreement.

## ARTICLE 5
### REPRESENTATIONS AND WARRANTIES

Each of the Borrower and each of the Guarantors party hereto represents and warrants to the Administrative Agent, the Collateral Agent and each of the Lenders that:

Section 5.01.  *Existence, Qualification and Power; Compliance with Laws.*  Each Loan Party and each Subsidiary (a) is a Person duly organized or formed, validly existing and in good standing (where relevant) under the Laws of the jurisdiction of its incorporation or organization, (b) has all requisite organizational power and authority to execute, deliver and perform its obligations under the Loan Documents to which it is a party and, in the case of the Borrower, to borrow hereunder, (c) is duly qualified and in good standing (where relevant) under the Laws of each jurisdiction where its ownership, lease or operation of properties or the conduct of its business requires such qualification, (d) is in compliance with all Laws, orders, writs and injunctions, and (e) has all requisite franchises, licenses, authorizations, qualifications, consents and approvals to operate its business as currently conducted; except in each case, referred to in clause (a) (other than with respect to any Loan Party), (c), (d) or (e), to the extent that failure to do so, individually or in the aggregate, would not reasonably be expected to have a Material Adverse Effect.

Section 5.02.  *Authorization; No Contravention.*   Subject to the entry by (and terms of) the Bankruptcy Court of the DIP Order and the Canadian DIP Recognition Order, as applicable, the execution, delivery and performance by each Loan Party of each Loan Document to which such Person is a party, and the consummation of the Transactions, (a) are within such Loan Party's organizational powers, (b) have been duly authorized by all necessary corporate or other organizational action, and (c) do not (i) contravene the terms of any of such Person's Organization Documents, (ii) conflict with or result in any breach or contravention of, or the creation of (or the requirement to create) any Lien under (other than as permitted by <u>Section 7.01</u>), or require any payment to be made under (x) any post-petition Indebtedness of such Person (y) any post-petition material order, injunction, writ or decree of any Governmental Authority or any arbitral award to which such Person or its property is subject; or (iii) violate any material Law; except with respect to any conflict, breach or contravention or payment (but not creation of Liens) referred to in clause (c)(ii)(x), to the extent that such violation, conflict, breach, contravention or payment, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect.

Section 5.03.  *Governmental Authorization; Other Consents.  S*ubject to the entry by (and terms of) the Bankruptcy Court of the DIP Order, and, in the case of the Canadian Collateral, the applicable Canadian Orders, no approval, consent, exemption, authorization, or other action by, or notice to, or filing with, any Governmental Authority is necessary or required in connection with (a) the execution, delivery or performance by, or enforcement against, any Loan Party of this Agreement or any other Loan Document,

or for the consummation of the Transactions, (b) the grant by any Loan Party of the Liens granted by it pursuant to the Collateral Documents, (c) the perfection or maintenance of the Liens created under the Collateral Documents (including the priority thereof) to the extent required thereunder or (d) the exercise by the Administrative Agent, the Collateral Agent or any Lender of its rights under the Loan Documents or the remedies in respect of the Collateral pursuant to the Collateral Documents, except for (i) approvals, consents, exemptions, authorizations or other actions by, or notices to, or filings necessary to perfect the Liens on the Collateral granted by the Loan Parties in favor of the Secured Parties (or release existing Liens), (ii) the approvals, consents, exemptions, authorizations, actions, notices and filings which have been duly obtained, taken, given or made and are in full force and effect (except to the extent not required to be obtained, taken, given or made or to be in full force and effect pursuant to the Collateral and Guarantee Requirement) and (iii) those approvals, consents, exemptions, authorizations or other actions, notices or filings, the failure of which to obtain or make, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect.

Section 5.04.  *Binding Effect.*  This Agreement and each other Loan Document has been duly executed and delivered by each Loan Party that is a party thereto.  Upon entry of the DIP Order (and in the case of the Canadian Collateral, the Canadian DIP Recognition Order), this Agreement and each other Loan Document constitutes a legal, valid and binding obligation of each such Loan Party, enforceable against each Loan Party that is a party thereto in accordance with its terms, except as such enforceability may be limited by Debtor Relief Laws and by general principles of equity.

Section 5.05.  *Financial Statements.*

(a)    (i)    The Audited Financial Statements fairly present in all material respects the financial condition of the Borrower and its consolidated Subsidiaries as of the dates thereof and their results of operations for the period covered thereby in accordance with GAAP consistently applied throughout the periods covered thereby, except as otherwise expressly noted therein.

(ii)    The Unaudited Financial Statements fairly present in all material respects the financial condition of the Borrower and its consolidated Subsidiaries as of the dates thereof and their results of operations for the period covered thereby in accordance with GAAP consistently applied throughout the periods covered thereby, except as otherwise expressly noted therein and the absence of footnotes.

(b)    The forecasts of income statements of the Borrower and its Subsidiaries which have been furnished to the Administrative Agent and the Lenders prior to the Closing Date have been prepared in good faith on the basis of the assumptions stated therein, which assumptions were believed to be reasonable at the time of preparation of such forecasts it being understood by the Agents and the Lenders that such projections as to future events (i) are not to be viewed as facts, (ii)(A) are subject to significant uncertainties and contingencies, which may be beyond the control of the Borrower and its Subsidiaries, (B) no assurance is given by the Borrower and its Subsidiaries that the results or forecast in any such projections will be realized and (C) the actual results may differ from the forecast results set forth in such projections and such differences may be material and (iii) are not a guarantee of performance and that actual results during the period or periods covered by any such projections may vary significantly from the projected results and such differences may be material.

Section 5.06.  *Compliance With Laws.*  Subject to the entry by (and terms of) the Bankruptcy Court of the DIP Order, neither the Borrower nor any of the Subsidiaries or any of their respective properties or assets is in violation of, nor will the continued operation of their properties and assets as currently conducted violate, any law, rule or regulation (including any zoning, building, ordinance, code or approval or any building permits) or any restrictions of record or agreements affecting any real property interest of the Borrower or any of its Subsidiaries, or is in default with respect to any judgment, writ, injunction, decree

or order of any Governmental Authority, where in each case such violation or default, individually or in the aggregate, would reasonably be expected to result in a Material Adverse Effect.

Section 5.07.  *Ownership of Property; Liens*.

(a)      Schedule 1.01(c) sets forth a true, complete and correct list of all Real Property owned (whether in fee or through a leasehold estate under any ground lease) by Borrower and the Subsidiaries as of the Effective Date.

(b)      Each of the Borrower and the Subsidiaries has good record title to, or valid leasehold interests in, or easements or other limited property interests in, all its properties and assets, free and clear of all Liens except for minor defects in title that do not materially interfere with its ability to conduct its business or to utilize such assets for their intended purposes and except where the failure to have such title or interest would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 5.08.  *Environmental Matters*.   Except as would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect:

(a)      Each Loan Party and each Subsidiary is and has been in compliance with all Environmental Laws, which includes obtaining and maintaining all Environmental Permits required under such Environmental Laws to carry on the business of the Loan Parties and the Subsidiaries;

(b)      the Loan Parties and the Subsidiaries have not received notice alleging any Environmental Liability or proposing or seeking to revoke, modify or deny the renewal of any Environmental Permit required to be held by the Loan Parties or the Subsidiaries, and neither the Loan Parties nor the Subsidiaries have become subject to any Environmental Liability;

(c)      there has been no Release, discharge or disposal of Hazardous Materials (i) on, to, at, under or from any Real Property or any vehicles or facilities owned or leased by any of the Loan Parties or the Subsidiaries, or, to the knowledge of the Borrower, formerly owned, operated or leased by any Loan Party or any Subsidiary, or (ii) arising out of the conduct of the Loan Parties or the Subsidiaries that, in the case of (i) or (ii), could reasonably be expected to require investigation, remedial activity or corrective action or cleanup by or on behalf of any Loan Party or any Subsidiary or for which any Loan Party or Subsidiary reasonably could be expected to otherwise incur any Environmental Liability; and

(d)      there are no facts, circumstances or conditions arising out of or relating to, and there are no pending or reasonably anticipated requirements under Environmental Law associated with, the operations of the Loan Parties or the Subsidiaries or any Real Property, vehicles or facilities currently or, to the knowledge of the Borrower, previously owned or leased by the Loan Parties or any Subsidiary that, in such case, are known to or would reasonably be likely to require investigation, remedial activity or corrective action or cleanup by or on behalf of any Loan Party or any Subsidiary or that are known to or would reasonably be likely to result in the Borrower or any other Loan Party or Subsidiary incurring any Environmental Liability or capital expenditures to achieve or maintain compliance with Environmental Laws.

Section 5.09.  *Taxes*.  Except as would not, either individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect: each of the Loan Parties and their Subsidiaries have timely filed all tax returns required to be filed (taking into account any extensions), and have paid all Taxes levied or imposed upon them or their properties, that are due and payable (including in their capacity as a withholding agent), except those which are being contested in good faith by appropriate proceedings

diligently conducted if such contest shall have the effect of suspending enforcement or collection of such Taxes and for which adequate reserves have been provided in accordance with GAAP.  There is no proposed Tax deficiency or assessment known to any Loan Party against any Loan Party or any Subsidiary that would, if made, individually or in the aggregate, have a Material Adverse Effect.

Section 5.10.  *Litigation*.  Except for claims, actions, suits, investigations, litigation or proceedings stayed by Section 362 of the Bankruptcy Code and as set forth on Schedule 5.10 and/or the applicable Canadian Orders, as applicable, there does not exist any action, suit, investigation, litigation or proceeding, pending or to the knowledge of the Loan Parties, threatened in writing in any court or before any arbitrator or Governmental Authority that, (x) either individually or in the aggregate, has had or would reasonably be expected to have a Material Adverse Effect with respect to the assets or property of the Loans Parties or (y) is in respect of the Loans or the Loan Documents and either individually or in the aggregate, has had or would reasonably be expected to have a Material Adverse Effect.

Section 5.11.  *Subsidiaries*.  As of the Effective Date (after giving effect to the Transactions), no Loan Party has any direct or indirect Subsidiaries other than those specifically disclosed in Schedule 5.11, and all of the outstanding Equity Interests owned by the Loan Parties (or a Subsidiary of any Loan Party) in such Subsidiaries have been validly issued and are fully paid and (if applicable) non-assessable and all Equity Interests owned by a Loan Party (or a Subsidiary of any Loan Party) in such Subsidiaries are owned free and clear of all Liens except (a) those created under the Collateral Documents or under the Prepetition ABL Facility Documentation, the Prepetition UST Tranche A Facility Documentation, the Prepetition UST Tranche B Facility Documentation, the Prepetition B-2 Loan Documents and the Postpetition B-2 Loan Documents (which Liens shall be subject to the Prepetition ABL Intercreditor Agreement, the terms and priorities set forth in the DIP Order and the Senior ICA Provisions) and (b) any other Lien that is permitted or granted under the DIP Order or permitted under Section 7.01.  As of the Effective Date, Schedule 5.11 sets forth (i) the name and jurisdiction of each Loan Party and (ii) the direct ownership interest of the Borrower and any Loan Party thereof in each such Subsidiary, including the percentage of such ownership.

Section 5.12.  *Margin Regulations; Investment Company Act*.

(a)    No Loan Party or Subsidiary is engaged nor will it engage, principally, or as one of its important activities in the business of purchasing or carrying Margin Stock, or extending credit for the purpose of purchasing or carrying Margin Stock, and no proceeds of any Borrowings will be used, whether directly or indirectly, and whether immediately, incidentally or ultimately, for any purpose that entails a violation of the provisions of the Regulations of the Board, including Regulation T, U or X.

(b)    Neither the Borrower, nor any of the Subsidiaries is or is required to be registered as an "investment company" under the Investment Company Act of 1940.

Section 5.13.  *Disclosure*.  No report, financial statement, certificate or other written information furnished by or on behalf of any Loan Party (other than projected financial information, pro forma financial information, budgets, estimates and information of a general economic or industry nature) to any Agent or any Lender about the Borrower and its Subsidiaries in connection with the transactions contemplated hereby and the negotiation of this Agreement or delivered hereunder or under any other Loan Document (as modified or supplemented by other information so furnished) when taken as a whole contains or will contain any material misstatement of fact or omits or will omit to state any material fact necessary to make the statements therein (when taken as a whole), in the light of the circumstances under which they were or will be made, not materially misleading.  With respect to projected financial information and pro forma financial information, the Borrower represents that such information was prepared in good faith based upon assumptions believed to be reasonable at the time of preparation; it being understood and agreed by the Agents and the Lenders that such projections as to future events (i) are not to be viewed as facts, (ii) are

48

subject to significant uncertainties and contingencies, which may be beyond the control of the Borrower and its Subsidiaries and (iii) are not a guarantee of performance and that actual results during the period or periods covered by any such projections may vary significantly from the projected results and such differences may be material.

Section 5.14.  *ERISA Compliance*.  Except as would not, either individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect:

(a)        Each Plan is in compliance with the applicable provisions of ERISA, the Code and other Federal or state Laws (and the regulations and published interpretations thereunder).

(b)        The Loan Parties, their Subsidiaries and their respective ERISA Affiliates may incur liability for ordinary course contributions to (and make payments in satisfaction of such liabilities) which are Multiemployer Plans.

Section 5.15.  *Insurance.*  Upon entry of the Chapter 11 Orders (and in the case of the Canadian Collateral, the applicable Canadian Orders), each of the Borrower and its Subsidiaries maintains, with financially sound and reputable insurance companies, insurance in such amounts and against such risks as are customarily maintained by companies engaged in the same or similar businesses operating in the same or similar locations; *provided*, that each of the Borrower and its Subsidiaries may self-insure to the same extent as other companies engaged in similar businesses and owning similar properties in the same general areas in which the Borrower or each such Subsidiary, as applicable, operates.

Section 5.16.  *[Reserved].*

Section 5.17.  *No Other Borrowed Money Indebtedness.*  Immediately after giving effect to the consummation of the Transactions to occur on the Closing Date the Borrower and its Subsidiaries shall have no outstanding Indebtedness for borrowed money other than (a) Indebtedness outstanding under this Agreement and the Prepetition Indebtedness and (b) Indebtedness permitted pursuant to Section 7.03.

Section 5.18.  *Collateral Documents*.  The DIP Order (and in the case of the Canadian Collateral, the Canadian DIP Recognition Order) and the Collateral Documents, on execution and delivery thereof by the parties thereto, are effective to create in favor of the Collateral Agent for the benefit of the Secured Parties, legal, valid and enforceable Liens on, and security interests in, the Collateral described therein to the extent intended to be created thereby, and the Liens created by the DIP Order and the Collateral Documents shall constitute fully perfected Liens on, and security interests in, in each case, to the extent available under the Chapter 11 Cases, all right, title and interest of the Loan Parties in such Collateral with the priority set forth herein and otherwise subject in all respects to the terms of the DIP Order and the applicable Canadian Orders. Notwithstanding anything to the contrary herein, nothing in this Section 5.18 is intended to or does conflict with or override the UST Adequate Protection Order and in the event of any inconsistencies between this Section 5.18 and the UST Adequate Protection Order, the UST Adequate Protection Order shall govern.

Section 5.19.  *Compliance with Anti-Terrorism and Corruption Laws*.

(a)        To the extent applicable, the Borrower and the Subsidiaries are in compliance, in all material respects, with (i) the Trading with the Enemy Act and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V) and any other enabling legislation or executive order relating thereto, (ii) the USA PATRIOT Act, and (iii) Canadian AML Legislation and (iv) any other similar anti-terrorism and anti-corruption legislation in other jurisdictions.

(b)    None of the Borrower or any Subsidiary nor, to the knowledge of the Borrower, any director, officer, agent, employee or controlled Affiliate of the Borrower or any Subsidiary, (i) is a Blocked Person or (ii) is currently subject to any U.S. sanctions administered or enforced by OFAC or by any Canadian Governmental Authority that is applicable to the Borrower or any Subsidiary at such time that could, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect; and none of the Borrower or any Subsidiary will use the proceeds of the Loans for the purpose of financing the activities of any Person currently subject to any U.S. sanctions administered or enforced by OFAC or any Canadian Governmental Authority that is applicable to the Borrower or any Subsidiary.

No part of the proceeds of the Loans will be used by the Borrower or any of the Subsidiaries, directly or indirectly, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended.

Section 5.20.  *Real Property Permits*.  Borrower has all Permits, all of which are in full force and effect as of the date hereof required by the applicable Governmental Authorities in connection with the ownership and operation of any Material Real Property, except to the extent that the failure to have any such Permits would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

Section 5.21.  *Secured, Super-Priority Obligations*.  On and after the Closing Date, solely with respect to the Initial Term Loans:

(a)    The Chapter 11 Cases were commenced on the Petition Date in accordance with applicable law and proper notice thereof for (x) the motions seeking approval of the Loan Documents, the DIP Order and the applicable Canadian Orders and (y) the hearings for the approval of the DIP Order and the applicable Canadian Orders were given in each case.  The Borrower has given, on a timely basis as specified in the DIP Order and the applicable Canadian Orders, all notices required to be given to all parties specified in the DIP Order and the applicable Canadian Orders.

(b)    The provisions of the Loan Documents and the DIP Order (and, in the case of the Canadian Collateral, the applicable Canadian Orders), are effective to create in favor of the Collateral Agent, for the benefit of the Secured Parties, legal, valid and perfected Liens on all right, title and interest in the Collateral, having the priority provided for herein and in the DIP Order and the applicable Canadian Orders, and enforceable against the Loan Parties, in each case, subject to the terms and conditions of the DIP Order (and, in the case of the Canadian Collateral, the applicable Canadian Orders).

(c)    Pursuant to Section 364(c)(1) of the Bankruptcy Code, all Obligations relating to or arising under the Initial Term Loans and all other obligations of the Loan Parties under the Loan Documents relating to or arising under the Initial Term Loans at all times shall be entitled to joint and several superpriority administrative expense claim status against each Debtor in the Chapter 11 Cases, which claims shall be superior to all other claims except as otherwise set forth herein and in the DIP Order, and subject to the Carve-Out and the Canadian Priority Charges pursuant to the applicable Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other applicable Canadian Orders.

(d)    Pursuant to Section 364(c)(2) of the Bankruptcy Code and DIP Order (and, in the case of the Canadian Collateral, the applicable Canadian Orders), all Obligations relating to or arising under the Initial Term Loans are secured by a first priority perfected Lien on (i) the DIP Proceeds Account and (ii) all unencumbered assets of the Loan Parties (other than Excluded Property) (now existing or hereafter acquired) and all proceeds thereof that were not subject to a perfected, non-avoidable Lien as of the Petition

Date (the "**Unencumbered Assets**"), which Lien is (i) pari passu with the Lien securing the Postpetition B-2 Indebtedness on such DIP Proceeds Account (it being understood that the Prepetition Secured Parties have no Lien on the DIP Proceeds Account) and (ii) senior to the Liens securing the Postpetition B-2 Indebtedness and the adequate protection Liens of the Prepetition Secured Parties solely on such Unencumbered Assets, in each case, subject to the Carve-Out and the Canadian Priority Charges  (in a maximum amount not to exceed CDN$4,200,000) pursuant to the applicable Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the applicable Canadian Orders.

(e)      Pursuant to Section 364(c)(3) and 364(d)(1) of the Bankruptcy Code and the DIP Order (and, in the case of the Canadian Collateral, the applicable Canadian Orders), all Obligations relating to or arising under the Initial Term Loans are secured by a Lien on the B-2 Priority Collateral that is junior to the B-2 Secured Parties' Lien on such Collateral, including any B-2 Adequate Protections Liens (as defined in the DIP Order), but senior to the Prepetition ABL Secured Parties' and UST Secured Parties' Lien on such Collateral, subject to the Carve-Out and the Canadian Priority Charges pursuant to the applicable Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other applicable Canadian Orders.

(f)      Pursuant to Section 364(c)(3) of the Bankruptcy Code and the DIP Order (and, in the case of the Canadian Collateral, the applicable Canadian Orders), all Obligations relating to or arising under the Initial Term Loans are secured by junior Liens on the Collateral securing the obligations of the Prepetition Secured Parties (other than as expressly set forth above with respect to the B-2 Priority Collateral); provided, however, that such Lien on any Canadian Collateral is also junior to the Canadian Priority Charges and, for greater certainty, the Canadian DIP Charge does not apply to the Prepetition UST Tranche B Priority Collateral.

(g)      The DIP Order and the Canadian Interim DIP Recognition Order are in full force and effect and have not been vacated, reversed, modified, amended or stayed without the prior written consent of Lenders.

(h)      The Initial Budget and each Updated Budget were prepared in good faith by the management of the Borrower (and in consultation with the Borrower's Operational Advisor), based on assumptions believed by the management of the Borrower to be reasonable at the time made and upon information believed by the management of the Borrower to have been accurate based upon the information available to the management of Borrower at the time such Initial Budget or Updated Budget was furnished.

Notwithstanding anything to the contrary herein, the provisions of this Section 5.21 shall apply only to the Obligations relating to or arising under the Initial Term Loans and all other obligations of the Loan Parties under the Loan Documents that relate to or arise under the Initial Term Loans.  The term "Obligations" or "obligations" under this Section 5.21 shall not include any "Obligations" or "obligations" relating to or arising under the Delayed Draw Term Loans.

Section 5.22.  *Prepetition UST Joint and Priority Collateral.*  As of the Effective Date, Schedule 5.22(a) lists all Rolling Stock that constitutes Prepetition UST Tranche B Joint Collateral and Schedule 5.22(b) lists all Rolling Stock that constitutes Prepetition UST Tranche B Priority Collateral.

Section 5.23.  *Delayed Draw Term Commitment Priority.*  Notwithstanding anything herein to the contrary or in the other Loan Documents or the DIP Order to the contrary, it is expressly understood and agreed that the Liens and Claims in respect of the Delayed Draw Term Commitment shall be junior and subordinated (including in right of payment) in all respects to the Liens and Claims (including any adequate protections Liens and Claims) of the Prepetition Secured Parties and to the Liens and Claims of the B-2 Lenders and B-2 Agent under the Postpetition B-2 Loan Documents, including, for the avoidance of doubt,

to the payment and enforcement of rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties and the UST Secured Parties, which rights with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth in the Postpetition B-2 Loan Documents, the Prepetition B-2 Loan Documents and the DIP Order.

Section 5.24. *No Canadian Pension Plans.*  No Loan Party maintains, sponsors, administrates, contributes to, participates in or has any obligations or any actual or contingent liability in respect of a Canadian Defined Benefit Pension Plan.

## ARTICLE 6
### AFFIRMATIVE COVENANTS

So long as any Lender shall have any Commitment hereunder or any Loan or other Obligation (other than contingent indemnification or reimbursement obligations) hereunder which is accrued or payable shall remain unpaid or unsatisfied, then from and after the Closing Date, the Borrower shall and shall (except in the case of the covenants set forth in Sections 6.01 and 6.02) cause each of the Subsidiaries to:

Section 6.01. *Financial Statements, Reports, Etc.*  In the case of the Borrower, deliver to the Administrative Agent for prompt further distribution to each Lender, within 45 days after the end of each fiscal quarter of each fiscal year of the Borrower (commencing with the fiscal quarter ended June 30, 2023), a consolidated balance sheet of the Borrower and its Subsidiaries as of the end of such fiscal quarter, and the related (x) consolidated statements of income or operations for such fiscal quarter and for the portion of the fiscal year then ended and (y) consolidated statements of cash flows for such fiscal quarter and the portion of the fiscal year then ended, setting forth in each case in comparative form the figures for the corresponding fiscal quarter of the previous fiscal year and the corresponding portion of the previous fiscal year, all in reasonable detail and certified by a Responsible Officer of the Borrower as fairly presenting in all material respects the financial condition, results of operations and cash flows of the Borrower and its Subsidiaries in accordance with GAAP, subject only to normal year-end audit adjustments and the absence of footnotes and accompanied by customary management discussion and analysis.

Notwithstanding the foregoing, the obligations in this Section 6.01 or Section 6.02(b) may be satisfied with respect to information of the Borrower and the Subsidiaries by furnishing within the time period specified in the applicable paragraph (A) the applicable financial statements of the Borrower or (B) the Borrower's Form 10-K or 10-Q, as applicable, filed with the SEC.

Documents required to be delivered pursuant to Section 6.01 or Section 6.02(b) may be delivered electronically and if so delivered, shall be deemed to have been delivered on the earliest date on which (i) Borrower posts such documents, or provides a link thereto on Borrower's website on the Internet and provides notice thereof to the Administrative Agent; (ii) such documents are posted on Borrower's behalf on IntraLinks/IntraAgency or another website, if any, to which each Lender and the Administrative Agent have access (whether a commercial, third-party website or whether sponsored by the Administrative Agent), or (iii) such financial statements and/or other documents are posted on the SEC's website on the internet at www.sec.gov; *provided* that: (i) promptly following written request by the Administrative Agent, the Borrower shall deliver paper copies of such documents to the Administrative Agent for further distribution to each Lender until a written request to cease delivering paper copies is given by the Administrative Agent and (ii) the Borrower shall notify (which may be by facsimile or electronic mail) the Administrative Agent of the posting of any such documents and provide to the Administrative Agent by electronic mail electronic versions (i.e., soft copies) of such documents.  Each Lender shall be solely responsible for timely accessing posted documents or requesting delivery of paper copies of such documents from the Administrative Agent and maintaining its copies of such documents.

Section 6.02. *Certificates; Other Information.*  Deliver to the Administrative Agent for prompt further distribution to each Lender (or, with respect to clauses (k) through (o), deliver directly to the Lenders and their advisors):

(a)    concurrently with the delivery of the financial statements referred to in <u>Sections 6.01</u> (or the date on which such delivery is required), commencing with the first fiscal quarter ended after the Closing Date, a duly completed Compliance Certificate signed by a Responsible Officer of the Borrower;

(b)    promptly after the same are publicly available, copies of all annual, regular, periodic and special reports and registration statements which the Borrower or any Subsidiary files with the SEC or with any Governmental Authority that may be substituted therefor (other than amendments to any registration statement (to the extent such registration statement, in the form it became effective, is delivered), exhibits to any registration statement and, if applicable, any registration statement on Form S-8) and in any case not otherwise required to be delivered to the Administrative Agent pursuant hereto;

(c)    promptly after the furnishing thereof, copies of any material notices received by any Loan Party or Subsidiary (other than in the ordinary course of business) or furnished to any holder of Indebtedness or debt securities of any Loan Party or of any of its Subsidiaries (including pursuant to the terms of any Prepetition Indebtedness) (and solely in the case of Indebtedness or debt securities incurred or issued prior to the Petition Date, to the extent the principal amount thereof exceeds the Threshold Amount);

(d)    together with the delivery of each Compliance Certificate pursuant to Section 6.02(a), (i) a report setting forth the information required by sections of the Prepetition Perfection Certificate describing the legal name and the jurisdiction of organization or formation of each Loan Party and the location of the chief executive office of each Loan Party or confirming that there has been no change in such information since the Closing Date or the date of the last such report, (ii) a description of each Disposition of owned Real Property and (iii) a list of each Subsidiary of the Borrower as of the date of delivery of such Compliance Certificate;

(e)    [reserved];

(f)    promptly after the written request by any Lender, all documentation and other information that such Lender reasonably requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT Act;

(g)    promptly after the receipt thereof by the Borrower or any of the Subsidiaries, a copy of any final "management letter" received by any such Person from its certified public accountants and the management's response thereto;

(h)    the proposed service list in connection with any Order or relief sought by any Loan Party from the Canadian Court;

(i)    promptly after the furnishing thereof (and in no event later than three Business Days after the delivery thereof), a copy of each borrowing base certificate delivered under the Prepetition ABL Credit Agreement;

(j)    at least two (2) days in advance of such filing or as promptly as practicable, (i) drafts of all pleadings, motions, applications, judicial information, financial information, notices, reports, orders and other documents intended to be filed by or on behalf of the Borrower or any other Loan Party with the Bankruptcy Court in the Chapter 11 Cases, or distributed by or on behalf of the Borrower or any other Loan Party to any official committee appointed in the Chapter 11 Cases and (ii) drafts of all filings, motions,

pleadings, other papers or material notices intended to be filed by or on behalf of the Borrower, in its capacity as "foreign representative" of the Debtors, or any other Loan Party with the Canadian Court in the Canadian Recognition Proceedings, including all motions for all Canadian Orders;

(k)     promptly after the occurrence thereof (and in no event later than one Business Day thereafter (or such longer period as agreed by the Lenders)), notice of any Loan Party entering into any new material agreement or incurring any new material obligation;

(l)     not later than 5:00 p.m. New York time on the third Business Day of the last full calendar week of each month (commencing with August 30, 2023) occurring after the Closing Date (the "**Updated Budget Deadline**"), a supplement to, for the first such supplement, the Initial Budget, and for each supplement thereafter, the most-recently delivered Updated Budget (each such supplement which is approved in accordance with the terms of this clause (l), an "**Updated Budget**"), prepared by management of the Borrower in consultation with the Borrower's Operational Advisor covering the 13-week period that commences with the Saturday of the calendar week that includes such Updated Budget Deadline, consistent with the form and level of details set forth in the Initial Budget.  Each Updated Budget shall be, in each case, subject to the written approval of the Lenders; *provided* that, if the Lenders shall have not provided written approval of any proposed budget supplement prior to 5:00 (New York City time) on the third Business Day after receipt thereof (the "**Budget Review Time**"), the Lenders shall be deemed to have accepted such proposed budget supplement; *provided further* that, (i) if the Lenders object in writing to any proposed budget supplement prior to the Budget Review Time, no proposed budget supplement covering the 13-week period covered by such rejected budget supplement shall become an Updated Budget until and unless the Lenders approve thereof in writing (in their sole and absolute discretion), and (ii) the prior Approved Budget shall remain in effect until such time as the Lenders so approve a revised budget supplement in accordance with the foregoing sub-clause (i).  As used herein, the "**Approved Budget**" shall mean (i) initially, the Initial Budget and (ii) thereafter, upon (and subject to) the approval (or deemed approval) of any Updated Budget by the Lenders in accordance with the foregoing procedures, such Updated Budget.

(m)     not later than 5:00 p.m. New York time, on each Business Day, a liquidity update (each, a "**Liquidity Report**"), which may be sent by email, specifying the aggregate amount of Liquidity of the Loan Parties and their Subsidiaries as of the end of business of the immediately preceding Business Day;

(n)     not later than 5:00 p.m. New York time on each Budget Variance Test Date, the following:

(i)     a Budget Variance Report for the most recently ended Budget Variance Test Period; and

(ii)     an updated budget prepared by management of the Borrower (in consultation with the Borrower's Operational Advisor) covering the 13-week period that commences with the calendar week that includes such Wednesday (*provided* that this clause (n)(ii) may be satisfied, for each week on which an Updated Budget Deadline occurs, by delivery of the Updated Budget);

(o)     not later than 5:00 p.m. New York time on the Friday of each calendar week, with information for the immediately preceding calendar week ending on a Friday (*provided*, that the Lenders confirm receipt of the following items as of Friday, August 25, 2023, and each Friday thereafter leading up to the Effective Date as required by the DIP Term Sheet and confirm such items received prior to the Effective Date were satisfactory to the Lenders), the following, in the case of clauses (i) and (iii) consistent with the form delivered prior to the Effective Date:

(i)      a written report (each, a "**Disbursement Report**") of disbursements made during the period since delivery of the last Disbursement Report (or, for the first Disbursement Report delivered hereunder, since the Petition Date), including payroll payments made by department, payments to directors, and payments to professionals;

(ii)     a written report in reasonable detail (each, a "**Sale Report**") setting out updates in the monetization strategy of the Borrower, including an update on the status of the sale of each Real Property and other assets of the Loan Parties contemplated by the Bidding Procedures Order, a description of inbound interests and outbound solicitations, and updates on the status of diligence and bids since delivery of the last Sale Report (or, for the first Sale Report delivered hereunder, since the Petition Date); *provided* that the Borrower shall be entitled to restrict and/or redact commercially sensitive information to protect the competitive sales process as determined in its good faith judgment; *provided, however*, that if any Lender is or becomes a potential bidder, the Loan Parties shall not be required to provide information to such Lender regarding the sale process that is not available to all potential bidders; and

(iii)    a list of (A) current information with respect to all accounts receivable owed to the Loan Parties, including all collections, sales, reconciliations and payments in respect thereof, and (B) current information with respect to all accounts payable owed by the Loan Parties.

Notwithstanding anything to the contrary, neither the Borrower nor any Subsidiary will be required to disclose or permit the inspection of any document, information or other matter pursuant to this Section 6.02 (i) that is subject to attorney client or similar privilege or constitutes attorney work product or (ii) in respect of which disclosure to the Administrative Agent or any Lender (or their representative or contractors) is prohibited by law or any binding agreement (to the extent not created in contemplation of such Loan Party's obligations under this Agreement).

Section 6.03.  *Notices.*  Promptly after the Borrower or any Guarantor has obtained knowledge thereof, notify the Administrative Agent (which shall provide notice to the Lenders):

(a)      of the occurrence of any Default or an Event of Default;

(b)      of any matter that has resulted or could reasonably be expected to result in a Material Adverse Effect;

(c)      of the filing or commencement of, or any written threat or written notice of intention of any person to file or commence any action, suit, litigation or proceeding, whether at law or in equity by or before any Governmental Authority, against the Borrower or any of its Subsidiaries that has a reasonable likelihood of adverse determination and such determination could reasonably be expected to result in a Material Adverse Effect and any material developments in any of the foregoing;

(d)      of any material developments in any material action, suit, litigation or proceeding, whether at law or in equity, commenced by the Borrower or any of its Subsidiaries; and

(e)      of the occurrence of any ERISA Event that, alone or together with any other ERISA Events that have occurred, could reasonably be expected to result in a Material Adverse Effect.

(f)      Each notice pursuant to this Section shall be accompanied by a written statement of a Responsible Officer of the Borrower (x) that such notice is being delivered pursuant to Section 6.03(a), (b), (c), (d) or (e) (as applicable) and (y) setting forth details of the occurrence referred to in Section 6.03(a), (b), (c), (d) or (e), as applicable, and stating what action the Borrower has taken and proposes to take with respect thereto.

Notwithstanding anything to the contrary, neither the Borrower nor any Subsidiary will be required to disclose or permit the inspection of any document, information or other matter pursuant to this Section 6.03 (i) that is subject to attorney client or similar privilege or constitutes attorney work product, or (ii) in respect of which disclosure to the Administrative Agent or any Lender (or their representative or contractors) is prohibited by law or any binding agreement (to the extent not created in contemplation of such Loan Party's obligations under this Agreement).

Section 6.04.  *Payment of Taxes.*  Promptly pay, discharge or otherwise satisfy as the same shall become due and payable in the normal conduct of its business, all its obligations and liabilities in respect of Taxes imposed upon it or upon its income or profits or in respect of its property, except, to the extent any such Tax is being contested in good faith and by appropriate proceedings for which appropriate reserves have been established in accordance with GAAP if such contest shall have the effect of suspending enforcement or collection of such Taxes or, where the failure to pay, discharge or otherwise satisfy the same would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 6.05.  *Preservation of Existence, Etc.*  (a) Preserve, renew and maintain in full force and effect its legal existence under the Laws of the jurisdiction of its organization except in a transaction permitted by Section 7.04 or Section 7.05 and (b) obtain, maintain, renew, extend and keep in full force and effect all rights, privileges (including its good standing where applicable in the relevant jurisdiction), permits, licenses and franchises necessary in the normal conduct of its business, except, in the case of clause (a) (other than with respect to the Borrower) or (b), to the extent that failure to do so would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 6.06.  *Maintenance of Properties.*  Except if the failure to do so could not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect, (a) maintain, preserve and protect all of its properties and equipment necessary in the operation of its business in satisfactory working order, repair and condition, ordinary wear and tear excepted and fire, casualty or condemnation excepted, and (b) make all necessary renewals, replacements, modifications, improvements, upgrades, extensions and additions thereof or thereto in accordance with prudent industry practice and in the normal conduct of its business.

Section 6.07.  *Maintenance of Insurance.*

(a)      *Generally*.  Maintain with financially sound and reputable insurance companies, insurance with respect to its properties and business consistent in all material respects with the insurance maintained by Borrower and/or such Subsidiaries (as applicable) as of the Closing Date, which insurance shall insure against loss or damage of the kinds customarily insured against by Persons engaged in the same or similar business, and which insurance shall be of such types and in such amounts (after giving effect to any self-insurance reasonable and customary for similarly situated Persons engaged in the same or similar businesses as the Borrower and the Subsidiaries) as are customarily carried under similar circumstances by such other Persons in such similar or same locations.

(b)      *Requirements of Insurance*.  Including as required by the Chapter 11 Orders, (A) use commercially reasonable efforts to cause, not later than 30 days after the Closing Date (or such longer period as the Lenders may agree in writing in their reasonable discretion), all insurance required pursuant to Section 6.07(a) and (d) (x) to provide (and to continue to provide at all times thereafter) that it shall not be canceled, materially modified or not renewed (i) by reason of nonpayment of premium upon not less than 10 days' prior written notice thereof by the insurer to the Administrative Agent and the Collateral Agent or (ii) for any other reason upon not less than 20 days' prior written notice thereof by the insurer to the Administrative Agent and the Collateral Agent and (y) to name the Collateral Agent as additional insured on behalf of the Secured Parties (in the case of liability insurance) or loss payee (in the case of

56

property insurance), as applicable (and to continue to so name the Collateral Agent at all times thereafter), (B) use commercially reasonable efforts to deliver, not later than 30 days after the Closing Date (or such longer period as the Administrative Agent, with the consent of the Lenders, may agree in writing in its reasonable discretion), a copy of the policy (and to the extent any such policy is cancelled or not renewed, a renewal or replacement policy) or other evidence thereof to the Administrative Agent and the Collateral Agent, or insurance certificate with respect thereto, and (C) in the case of all property insurance policies located in the United States, not later than 30 days after the Closing Date (or such longer period as the Administrative Agent may agree in writing in its reasonable discretion) cause such policies to be endorsed or otherwise amended to include a "standard" or "New York" lender's loss payable endorsement, in form and substance reasonably satisfactory to the Administrative Agent and the Collateral Agent, which endorsement shall provide that, from and after such date, if the insurance carrier shall have received written notice from the Administrative Agent or the Collateral Agent of the occurrence of an Event of Default, the insurance carrier shall pay all proceeds otherwise payable to the Borrower or the Loan Parties under such policies directly to the Collateral Agent during the continuance of such Event of Default.

(c)        *Flood Insurance*.  Following the Closing Date, the Borrower shall deliver to the Collateral Agent and the Lenders annual renewals of the flood insurance policy under the property policy or annual renewals of a force-placed flood insurance policy.

(d)        *Environmental Insurance.*  Maintain with financially sound and reputable insurance companies, a premises pollution liability portfolio insurance and storage tank third-party liability, corrective and clean-up insurance policy with respect to its properties and business for an initial three year policy period commencing on the date hereof and with limits not less than, and with terms and conditions comparable to, the limits, terms and conditions in such policies that are in effect as of the date hereof, and subject to annual renewals after such initial three year policy period, which insurance shall be reasonably satisfactory to the Lenders.  The Borrower shall purchase such insurance required under this Section 6.07(d) within 30 days following the Closing Date and provide evidence thereof to the Administrative Agent.

(e)        Notify the Administrative Agent and the Collateral Agent (for distribution to the Lenders) promptly whenever any separate insurance concurrent in form or contributing in the event of material loss with that required to be maintained under this Section 6.07 is taken out by the Borrower or another Loan Party; and promptly deliver to the Administrative Agent and the Collateral Agent a duplicate original copy of such policy or policies, or an insurance certificate with respect thereto once available.

Section 6.08.  *Compliance with Laws.*  Subject to the terms of the Orders, comply with the requirements of all Laws and all orders, writs, injunctions and decrees applicable to it or to its business or property, except if the failure to comply therewith would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 6.09.  *Books and Records.*  Maintain proper books of record and account, in which entries are made that are full, true and correct in all material respects and are in conformity with GAAP (except as noted therein) and which reflect all material financial transactions and matters involving the assets and business of the Borrower or a Subsidiary, as the case may be.

Section 6.10.  *Inspection Rights.*  Permit representatives and independent contractors of the Administrative Agent or any Lender to visit and inspect any of its properties, to examine its corporate, financial and operating records, and make copies thereof or abstracts therefrom, and to discuss its affairs, finances and accounts with its directors, officers, and independent public accountants (subject to such accountants' customary policies and procedures), all at the reasonable expense of the Borrower and subject to bona fide confidentiality obligations, limitations imposed by law and attorney-client privilege and at such reasonable times during normal business hours and as often as may be reasonably desired, upon reasonable

advance notice to the Borrower and at the expense of the Borrower at any time during normal business hours; *provided* that the Borrower shall be entitled to restrict and/or redact information in order to protect the competitive sales process as determined in its good faith judgment; *provided, further*, if any Lender is or becomes a potential bidder, the Loan Parties shall not be required to provide information to such Lender regarding the sale process that is not available to all potential bidders. The Administrative Agent and the Lenders shall give the Borrower the opportunity to participate in any discussions with the Borrower's independent public accountants.

Section 6.11. *Additional Collateral; Additional Guarantors.* At the Borrower's expense, take all reasonable actions which are necessary or reasonably requested by the Administrative Agent or the Collateral Agent to ensure that the Collateral and Guarantee Requirement continues to be satisfied, including: upon any Subsidiary that constitutes an Excluded Subsidiary on the Closing Date ceasing to be an Excluded Subsidiary, within ten (10) Business Days thereafter, or such longer period as the administrative Agent, with the consent of the Lenders (in their sole discretion), may agree, causing such Subsidiary to duly execute and deliver to the Administrative Agent or the Collateral Agent (as appropriate) joinders to this Agreement as Guarantors, a counterpart of the Intercompany Note and other security agreements and documents, in each case granting Liens required by the Collateral and Guarantee Requirement, and to take such action (including the filing of UCC or PPSA financing statements, as applicable), in each case, as may be reasonably requested by the Collateral Agent or the Lenders from time to time to maintain the validity, perfection, enforceability and priority of the security interest and Liens of the Collateral Agent in the Collateral, or to enable the Collateral Agent to protect, exercise or enforce its rights hereunder, under the DIP Order and in the Collateral (and, in the case of Canadian Collateral, the Canadian DIP Recognition Order).

Section 6.12. *Compliance with Environmental Laws.* Subject to the terms of the Chapter 11 Orders, except, in each case, to the extent that the failure to do so could not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect: (a) comply, and take all reasonable actions to cause all lessees and other Persons operating or occupying its properties to comply, with all applicable Environmental Laws and Environmental Permits; (b) obtain and renew all Environmental Permits necessary for its operations and properties; and, (c) in each case to the extent the Loan Parties or the Subsidiaries are required to do so by Environmental Laws, conduct any investigation, remedial or other corrective action necessary to address Hazardous Materials at any property or facility in accordance with applicable Environmental Laws.

Section 6.13. *Further Assurances and Post-Closing Conditions.*

(a)        [Reserved].

(b)        Promptly upon reasonable request by the Lenders, Administrative Agent or the Collateral Agent (i) correct any material defect or error that may be discovered in the execution, acknowledgment, filing or recordation of any Collateral Document or other document or instrument relating to any Collateral (including, without limitation, any defect or error related to certificates of title for vehicles and other rolling stock) as to which the Borrower reasonably agrees is a defect or error, (ii) notwithstanding that all of the security interests described herein with respect to the Collateral shall be effective and perfected by the DIP Order (and, in the case of Canadian Collateral, the Canadian DIP Recognition Order) and without the necessity of the execution of mortgages, security agreements, pledge agreements or other agreements, take all action that may be necessary or desirable to maintain the validity, perfection, enforceability and priority of the security interest and Liens of the Collateral Agent in the Collateral, or to enable the Collateral Agent to protect, exercise or enforce its rights hereunder, under the DIP Order and in the Collateral (and, in the case of Canadian Collateral, the Canadian DIP Recognition Order) and (iii) do, execute, acknowledge, deliver, record, re-record, file, re-file, register and re-register any and all such further acts, deeds,

certificates, assurances and other instruments as the Lenders, the Administrative Agent or the Collateral Agent may reasonably request from time to time in order to carry out more effectively the purposes of the Loan Documents and to cause the Collateral and Guarantee Requirement to be and remain satisfied.

(c)        At all times engage, at the cost of the Borrower, the Operational Advisor for financial planning and analysis services, including assistance in preparation of cash flow forecasting and budget variance reporting under this Agreement pursuant to an engagement letter in form and substance reasonably satisfactory to the Lenders (it being agreed that the engagement letter in effect on the Closing Date is reasonably satisfactory); *provided* that, if for any reason the Operational Advisor becomes unavailable or unable to perform its duties under this Agreement, the Borrower shall have five (5) days (or such longer timeframe as the Lenders may agree in its sole discretion) to replace the Operational Advisor in accordance with the terms of this Agreement.

Section 6.14. *Lender Calls; Access; Diligence Requests.*

(a)        The Borrower shall, and shall cause the other Loan Parties to, make the members of its senior management and its professional advisors (including the Operational Advisor) available for update calls at least once per calendar week (unless the Lenders request a lesser frequency) with the Lenders and the Lenders' respective professional advisors, at times reasonably acceptable to the Lenders to discuss the Chapter 11 Cases and the Canadian Recognition Proceedings, the then-current Approved Budget, the Budget Variance Reports, the Liquidity Reports, Sale Reports, other reporting delivered hereunder, union matters, the quantum of any obligations secured by the Canadian Priority Charges, the status of any monetization strategies being pursued by the Borrower and its Subsidiaries, including pursuant to the Bidding Procedures Order, and any other matters (including business, operational and due diligence matters) reasonably requested by the Lenders.

(b)        The Borrower shall, and shall cause the other Loan Parties to, make the members of its senior management and its professional advisors (including the Operational Advisor) available from time to time, at reasonable times, and during normal business hours, upon the reasonable request of the Lenders to provide, discuss, inform and/or confer on (i) the matters described in clause (a) above, strategic planning, cash and Liquidity management, operational and restructuring activities and other matters reasonably related thereto and (ii) if reasonably necessary, any reasonable diligence requests, which may include access to books and records (including historical information) and real property assets of the Borrower and its Subsidiaries.

(c)        The Borrower shall, and shall cause the members of its senior management and its professional advisors (including the Operational Advisor) to promptly provide such additional information regarding any of the matters described in clauses (a) and (b) above, and the business, legal, financial or corporate affairs of the Loan Parties or any of their respective Subsidiaries, including the business performance and tax and collateral due diligence of the Borrower and its Subsidiaries, as the Administrative Agent or any Lender may from time to time reasonably request.

Notwithstanding anything to the contrary, neither the Borrower nor any Subsidiary will be required to disclose any matter pursuant to this Section 6.14 (i) that is subject to attorney client or similar privilege or constitutes attorney work product, or (ii) in respect of which disclosure to the Administrative Agent or any Lender (or their representative or contractors) is prohibited by law or any binding agreement (to the extent not created in contemplation of such Loan Party's obligations under this Agreement).  Additionally, notwithstanding anything to the contrary in this <u>Section 6.14</u>, the Borrower shall be entitled to restrict and/or redact information in order to protect the competitive sales process as determined in its good faith judgment; *provided*, *further*, if any Lender is or becomes a potential bidder, the Loan Parties shall not be required to provide information to such Lender regarding the sale process that is not available to all potential bidders.

Section 6.15.  *Use of Proceeds and Collateral*.

(a)      The proceeds of the Initial Term Loans and the Delayed Draw Term Loans shall be applied in accordance with the Approved Budget (subject to Permitted Variances).  No part of the proceeds of any Loan will be used, whether directly or indirectly in any manner that causes such Loan or the application of such proceeds to violate the Regulations of the Board, including Regulation T, Regulation U and Regulation X, or any other regulation thereof, or to violate the Exchange Act;

(b)      No part of the proceeds of any Loan, the Debtors' Cash Collateral, the Collateral or the Carve-Out will be used, whether directly or indirectly:

(i)      for any purpose that is prohibited under the Bankruptcy Code, the DIP Order or the applicable Canadian Orders and not in accordance with the Approved Budget (subject to Permitted Variances);

(ii)      to finance or reimburse for expenses incurred or to be incurred, in both instances, in any way (A) any adversary action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the interests of any or all of the Secured Parties, the B-2 Secured Parties, the Prepetition Secured Parties, or their respective rights and remedies under the Loan Documents, the Postpetition B-2 Loan Documents, the DIP Order, or the Prepetition Facility Documentation; or (B) any other action which with the giving of notice or passing of time would result in an Event of Default hereunder or under the Postpetition B-2 Loan Documents;

(iii)      other than in respect to UST Adequate Protection Payments or Prepetition ABL Secured Parties as set forth in the DIP Order, for the payment of fees, expenses, interest or principal or any other payment with respect to the Prepetition ABL Facility, Prepetition UST Tranche A Credit Agreement or Prepetition UST Tranche B Credit Agreement;

(iv)      other than for payments for director fees included in and permitted by the Approved Budget, subject to the Debtors' ability to make UST Adequate Protection Payments pursuant to the UST Adequate Protection Order, to make any payment to any board member or shareholder of any Loan Party in their capacity as such; or

(v)      except as permitted by the Approved Budget (subject to Permitted Variances) to make any payment in settlement of any claim, action or proceeding without the prior written consent of the Lenders.  For the avoidance of doubt, no accrued vacation payment obligations on account of employees terminated prior to the Petition Date shall be paid until all Prepetition Indebtedness has been indefeasibly paid in full in cash.

Nothing herein shall in any way prejudice or prevent the Administrative Agent or the Lenders from objecting, for any reason, to any requests, motions, or applications made in the Bankruptcy Court or the Canadian Court, including any application of final allowances of compensation for services rendered or reimbursement of expenses incurred under Sections 105(a), 330 or 331 of the Bankruptcy Code, by any party in interest (and each such order shall preserve the Administrative Agent's and the Lenders' right to review and object to any such requests, motions or applications).

Section 6.16.  *Chapter 11 Cases and Canadian Recognition Proceedings*.

(a)      Except where such failure is cured within two (2) Business Days of the earlier of the Borrower having knowledge thereof and any written notice by the Administrative Agent (at the direction

of the Lenders), comply in all material respects with each Chapter 11 Order and the orders of the Canadian Court in the Canadian Recognition Proceedings.

(b)    Promptly provide to and discuss with the Administrative Agent and each Lender any and all information and developments in connection with (i) any proposed conveyance, sale, assignment, transfer or other disposition of all or any part of the assets of the Loan Parties or their Subsidiaries or (ii) the sale or other disposition or issuance of any Equity Interests of the Loan Parties; *provided* that the Borrower shall be entitled to restrict and/or redact commercially sensitive information to protect the competitive sales process as determined in its good faith judgment; *provided, however*, that if any Lender is or becomes a potential bidder, the Loan Parties shall not be required to provide information to such Lender regarding the sale process that is not available to all potential bidders.

(c)    [Reserved].

(d)    Timely pay all material obligations arising after the Petition Date in accordance with their terms after giving effect to any applicable grace and cure periods (including all reasonable and documented fees and out of pocket expenses of estate professionals when due in accordance with the interim compensation procedures approved in the Chapter 11 Cases) and timely pay and discharge promptly all material taxes, assessments and governmental charges or levies imposed upon any Loan Party or upon its income or profits or in respect of its property arising after the Petition Date, as well as all material lawful claims for labor, materials and supplies or otherwise arising after the Petition Date which, if unpaid, would become a Lien or charge upon such properties or any part thereof, before the same shall become in default; *provided* that the Borrower and each of its Subsidiaries shall not be required to pay and discharge or to cause to be paid and discharged any such obligation, tax, assessment, charge, levy or claim so long as (i) the validity or amount thereof shall be contested in good faith by appropriate proceedings (if the Borrower or its Subsidiaries shall have set aside on their books adequate reserves therefor) or (ii) non-payment and discharge thereof is permitted or required under the Bankruptcy Code, the CCAA, or order of the Bankruptcy Court or order of the Canadian Court.

## ARTICLE 7
### NEGATIVE COVENANTS

So long as any Lender shall have any Commitment hereunder or any Loan or other Obligation (other than contingent indemnification or reimbursement obligations) hereunder which is accrued or payable shall remain unpaid or unsatisfied, then from and after the Closing Date:

Section 7.01. *Liens.* The Borrower shall not, nor shall it permit any Subsidiary to, directly or indirectly, create, incur, assume or suffer to exist any Lien upon any of its property, assets or revenues, whether now owned or hereafter acquired, other than the following:

(a)    Liens (i) created pursuant to any Loan Document, (ii) securing any Prepetition Indebtedness and (iii) subject to the terms and conditions of the DIP Order and the applicable Canadian Orders, securing any Postpetition B-2 Indebtedness;

(b)    Liens existing immediately prior to the Petition Date and listed on Schedule 7.01(b); *provided* that the Lien does not extend to any additional property other than any replacements of such property or assets and additions and accessions thereto, after-acquired property subjected to a Lien securing Indebtedness and other obligations incurred prior to such time and which Indebtedness and other obligations are permitted hereunder that require, pursuant to their terms at such time, a pledge of after-acquired property (it being understood that such requirement shall not be permitted to apply to any property to which such requirement would not have applied but for such acquisition, or asset of the Borrower or any Subsidiary

61

and the proceeds and the products thereof and customary security deposits in respect thereof and in the case of multiple financings of equipment provided by any lender, other equipment financed by such lender);

(c)    Liens for unpaid utilities, taxes, assessments or governmental charges that are (i) not overdue for a period of more than thirty (30) days and are not otherwise delinquent, securing obligations in an amount not to exceed $500,000, or that are being contested in good faith and by appropriate actions, if adequate reserves with respect thereto are maintained on the books of the applicable Person in accordance with GAAP or (ii) otherwise not required to be paid pursuant to Section 6.04;

(d)    statutory, lease or common law Liens of landlords, sublandlords, carriers, warehousemen, mechanics, materialmen, repairmen, construction contractors or other like Liens, or other customary Liens (other than in respect of Indebtedness) in favor of landlords, in each case arising in the ordinary course of business that secure amounts not overdue for a period of more than thirty (30) days or if more than thirty (30) days overdue, that either secure obligations in an amount not to exceed $100,000, are being contested in good faith and by appropriate actions, if adequate reserves with respect thereto are maintained on the books of the applicable Person in accordance with GAAP or stayed by the Chapter 11 Cases or the Canadian Recognition Proceedings;

(e)    (i) Liens in the ordinary course of business in connection with workers' compensation, unemployment insurance and other social security legislation and (ii) Liens in the ordinary course of business securing liability for reimbursement or indemnification obligations of (including obligations in respect of letters of credit or bank guarantees for the benefit of) insurance carriers providing property, casualty or liability insurance to the Borrower or any of its Subsidiaries; *provided* that this Section 7.01(e) shall not permit liens securing letters of credit;

(f)    Liens to secure the performance of bids, trade contracts, governmental contracts and leases (in the case of each of the foregoing, other than for Indebtedness for borrowed money), statutory obligations, surety, stay, customs and appeal bonds, performance bonds and other obligations of a like nature (including those to secure health, safety and environmental obligations), in each case incurred in the ordinary course of business; *provided* that this Section 7.01(f) shall not permit liens securing letters of credit;

(g)    (i) easements, rights-of-way, restrictions (including zoning restrictions and other land use regulations), encroachments, protrusions, reservations and other similar encumbrances and minor title defects affecting Real Property that do not in the aggregate materially interfere with the ordinary conduct of the business of the Borrower and the Subsidiaries, taken as a whole and (ii) ground leases in respect of Real Property on which facilities owned or leased by the Borrower or any of the Subsidiaries are located; *provided* in the case of this clause (ii) that such ground leases do not confer rights on the counter-party(ies) thereto superior to those of the Collateral Agent in the relevant property;

(h)    Liens securing judgments not constituting an Event of Default under Section 8.01(h);

(i)    leases, licenses, subleases or sublicenses granted to others in the ordinary course of business which do not (i) interfere in any material respect with the business of the Borrower and the Subsidiaries, taken as a whole, or (ii) secure any Indebtedness;

(j)    Liens (i) in favor of customs and revenue authorities arising as a matter of Law to secure payment of customs duties in connection with the importation of goods in the ordinary course of business or (ii) on specific items of inventory or other goods and proceeds thereof of any Person securing such Person's obligations in respect of bankers' acceptances or letters of credit issued or created for the account

of such person to facilitate the purchase, shipment or storage of such inventory or such other goods in the ordinary course of business;

(k)　Liens (i) of a collection bank arising under Section 4-210 of the Uniform Commercial Code on items in the course of collection and (ii) arising in the ordinary course of business in favor of a banking or other financial institution arising as a matter of Law or under customary general terms and conditions encumbering deposits or other funds maintained with a financial institution (including the right of set-off) and that are within the general parameters customary in the banking industry or arising pursuant to the general terms and conditions of such banking institutions;

(l)　Liens consisting of an agreement to Dispose of any property in a Disposition permitted under Section 7.05, in each case, solely to the extent such Investment or Disposition, as the case may be, would have been permitted on the date of the creation of such Lien;

(m)　Liens (i) in favor of the Borrower or a Subsidiary on assets of a Subsidiary that is not a Loan Party securing Indebtedness permitted under Section 7.03 and (ii) in favor of the Borrower or any Guarantor;

(n)　any interest or title (and all encumbrances and other matters affecting such interest or title) of a lessor, sublessor, licensor or sublicensor under leases, subleases, licenses or sublicenses entered into by the Borrower or any of the Subsidiaries in the ordinary course of business; *provided*, that no such lease or sublease shall constitute a Capitalized Lease;

(o)　junior Liens relating to any Multiemployer Plan or Pension Plan;

(p)　[reserved];

(q)　[reserved];

(r)　[reserved];

(s)　[reserved]

(t)　[reserved];

(u)　Liens on insurance policies and the proceeds thereof securing the financing of the premiums with respect thereto in the ordinary course of business;

(v)　[reserved];

(w)　[reserved];

(x)　[reserved];

(y)　[reserved];

(z)　[reserved];

(aa)　[reserved];

(bb)　Liens expressly permitted to be granted pursuant to (i) the First Day Orders or Second Day Orders or (ii) pursuant to the DIP Order;

(cc)     utility and similar deposits in the ordinary course of business; and

(dd)     other Liens with respect to property or assets securing obligations other than for borrowed money of the Borrower or any Subsidiary in an aggregate principal amount not to exceed, together with all Investments made pursuant to Section 7.02(p) and Indebtedness incurred pursuant to Section 7.03(cc), $350,000 in the aggregate during the term of this Agreement; and

(ee)     the CCAA Charges.

Section 7.02.  *Investments.*  The Borrower shall not, nor shall it permit any Subsidiary to, directly or indirectly, make or hold any Investments, except:

(a)     Investments by the Borrower or any of the Subsidiaries in cash or Cash Equivalents in accordance with the Approved Budget (subject to Permitted Variances);

(b)     [reserved];

(c)     Investments (i) by and among Loan Parties and (ii) by any Loan Party in a Subsidiary that is not a Loan Party; *provided* that the aggregate amount of Investments under this clause (ii) shall not exceed $350,000 during the term of this Agreement;

(d)     Investments consisting of extensions of credit in the nature of accounts receivable or notes receivable arising from the grant of trade credit or other credits to suppliers in the ordinary course of business;

(e)     Investments existing on the Petition Date and set forth on Schedule 7.02(e);

(f)     Investments in Swap Contracts as in effect immediately prior to the Petition Date.

(g)     [reserved];

(h)     [reserved];

(i)     Investments in the ordinary course of business consisting of UCC Article 3 endorsements for collection or deposit and UCC Article 4 customary trade arrangements with customers consistent with past practices;

(j)     Investments (including debt obligations and Equity Interests) received in connection with the bankruptcy or reorganization of suppliers and customers or in settlement of delinquent obligations of, or other disputes with, customers and suppliers;

(k)     advances of payroll payments to employees (other than senior management) in the ordinary course of business;

(l)     [reserved];

(m)     [reserved];

(n)     [reserved];

(o)    Guarantees by the Borrower or any Subsidiary of operating leases (other than Capitalized Leases) or of other obligations that do not constitute Indebtedness, in each case, which leases or other obligations are entered into by the Borrower or any Guarantor in the ordinary course of business;

(p)    other Investments in an aggregate amount not to exceed, together with all Liens incurred pursuant to Section 7.01(dd) and Indebtedness incurred pursuant to Section 7.03(cc), $350,000 in the aggregate during the term of this Agreement;

(q)    make lease, utility and other similar deposits or any other advance or deposit permitted by this Agreement, in the ordinary course of business and in accordance with the Approved Budget (subject to Permitted Variances);

(r)    [reserved];

(s)    Investments in Deposit Accounts or Securities Accounts opened in the ordinary course of business;

(t)    [reserved];

(u)    [reserved]; and

(v)    Investments consisting of or resulting from (i) Indebtedness permitted under Section 7.03, (ii) Liens permitted under Section 7.01, (iii) Restricted Payments permitted under Section 7.06, (iv) Dispositions permitted by Section 7.05 and (v) fundamental changes permitted by Section 7.04; and

(w)    Investments expressly permitted to be made pursuant to (i) the First Day Orders or Second Day Orders, or (ii) the DIP Order.

Section 7.03.  *Indebtedness.*  The Borrower shall not, nor shall it permit any Subsidiary to, directly or indirectly, create, incur, assume or suffer to exist any Indebtedness, except the following:

(a)    Indebtedness of any Loan Party under (i) the Loan Documents and (ii) subject to the terms and conditions of the DIP Order, the Postpetition B-2 Loan Documents;

(b)    (i) Indebtedness existing immediately prior to the Petition Date and listed on Schedule 7.03(b) and (ii) intercompany Indebtedness outstanding on the Petition Date;

(c)    Prepetition Indebtedness; *provided* that, for the avoidance of doubt, the Borrower shall not redraw or reborrow any amounts under the Prepetition ABL Facility after the Petition Date;

(d)    [reserved];

(e)    [reserved];

(f)    Indebtedness in respect of Swap Contracts that were designed to hedge against the Borrower's or any Subsidiary's exposure to interest rates, foreign exchange rates or commodities (including fuel) pricing risks incurred not for speculative purposes;

(g)    [reserved];

(h)      Indebtedness representing deferred compensation to employees of the Borrower or any of its Subsidiaries incurred in the ordinary course of business and other obligations and liabilities arising under employee benefit plans in the ordinary course of business;

(i)      [reserved];

(j)      [reserved];

(k)      Indebtedness in respect of treasury, depository, credit card, debit card and cash management services or automated clearinghouse transfer of funds, overdraft or any similar services incurred in the ordinary course of business and in accordance with the DIP Order or any cash management order filed in connection with the Chapter 11 Cases and acceptable to the Lenders;

(l)      Indebtedness consisting of the financing of insurance premiums or take-or-pay obligations contained in supply arrangements that do not constitute Guarantees, in each case, in the ordinary course of business and in accordance with the DIP Order and the Approved Budget (subject to Permitted Variances);

(m)      [reserved];

(n)      indebtedness of the Borrower or any of its Subsidiaries to the extent outstanding immediately prior to the Petition Date in respect of letters of credit, bank guarantees, bankers' acceptances or similar instruments issued or created in the ordinary course of business and not in connection with the borrowing of money, including in respect of workers compensation claims, health, disability or other employee benefits or property, casualty or liability insurance or self-insurance or other Indebtedness incurred in the ordinary course of business with respect to reimbursement-type obligations regarding workers compensation claims;

(o)      obligations in respect of performance, bid, appeal and surety bonds and performance and completion guarantees and similar obligations provided by the Borrower or any of its Subsidiaries or obligations in respect of letters of credit, bank guarantees or similar instruments related thereto, in each case in the ordinary course of business or consistent with past practice, not in connection with the borrowing of money or Swap Contracts and as in effect immediately prior to the Petition Date;

(p)      [reserved]

(q)      [reserved];

(r)      [reserved];

(s)      [reserved];

(t)      all premiums (if any), interest (including post-petition interest and interest paid in kind), fees, expenses, charges and additional or contingent interest on obligations described in the other clauses under this Section 7.03;

(u)      [reserved];

(v)      [reserved];

(w)      [reserved];

(x)    Indebtedness in respect of taxes, assessments or governmental charges to the extent that payment thereof shall not at the time be required to be made hereunder;

(y)    [reserved];

(z)    [reserved];

(aa)    [reserved];

(bb)    Indebtedness expressly permitted to be incurred pursuant to (i) the First Day Orders or Second Day Orders, (ii) the Approved Budget (subject to Permitted Variances) or (iii) pursuant to the DIP Order;

(cc)    other Indebtedness (other than for borrowed money) of the Borrower or any of its Subsidiaries, in an aggregate principal amount not to exceed, together with all Liens incurred pursuant to Section 7.01(dd) and Investments made pursuant to Section 7.02(p), $350,000 in the aggregate during the term of this Agreement; and

(dd)    Indebtedness incurred in respect of credit cards, credit card processing services debit cards, stored value cards, purchase cards (including so-called "procurement cards" or "P-cards") or other similar cash management services, in each case, incurred in the ordinary course of business.

Without limiting the foregoing, in no event shall any Loan Party incur any additional Indebtedness, other than the Carve-Out and the Canadian Priority Charges, that (x) ranks pari passu with or senior to the Loans (except for the Postpetition B-2 Obligations) or (y) benefits from a first priority Lien under Section 364 of the Bankruptcy Code or any other Debtor Relief Law (except for the Postpetition B-2 Obligations).

Section 7.04.  *Fundamental Changes.*  The Borrower shall not, nor shall it permit any Subsidiary to, directly or indirectly, merge, dissolve, liquidate, consolidate with or into another Person, or Dispose of (whether in one transaction or in a series of related transactions) all or substantially all of its assets (whether now owned or hereafter acquired) to or in favor of any Person, except (i) with the prior written consent of the Lenders (ii) as permitted by Section 7.05 and (iii) pursuant to (A) the First Day Orders or Second Day Orders, (B) the Bidding Procedures Order, (C) the DIP Order or (D) the applicable Canadian Orders.

Section 7.05.  *Dispositions.*  The Borrower shall not, nor shall it permit any Subsidiary to, directly or indirectly, make any Disposition (including, without limitation, abandoning any assets), except:

(a)    Dispositions of cash and Cash Equivalents in accordance with the Approved Budget (subject to Permitted Variances);

(b)    Dispositions of property to the extent (i) such Disposition is for no less than the fair market value of such property, (ii) except pursuant to a credit bid by the B-2 Lenders (or the B-2 Agent on behalf of the B-2 Lenders), 100% of the proceeds thereof are in the form of cash or Cash Equivalents, (iii) [reserved] and (iv) such Disposition is in accordance with the Bidding Procedures Order;

(c)    Dispositions of property to and among Loan Parties or from a non-Loan Party to a Loan Party; *provided* that any transfer of any property by the Borrower or any Domestic Subsidiary of the Borrower to a Foreign Subsidiary of the Borrower after the Petition Date shall require the prior written consent of the Lenders;

(d)    Dispositions (including write-offs, discounts, and compromises) or discounts without recourse of accounts receivable and related assets in connection with the compromise or collection thereof in the ordinary course of business;

(e)    the unwinding of any Swap Contract or cash management agreement, in each case, in effect on the Petition Date;

(f)    the Disposition of any account receivable in connection with the collection or compromise thereof in the ordinary course of business and consistent with past practice;

(g)    the incurrence of Liens or making of Investments permitted hereunder;

(h)    transfers of property subject to Casualty Events upon the receipt (where practical) of the Net Proceeds of such Casualty Event;

(i)    Dispositions (including the abandonment thereof) of immaterial assets (i) in an aggregate amount not exceeding $250,000 during the term or (ii) subject to Chapter 11 Orders satisfactory to the Lenders; and

(j)    Dispositions (i) made in connection with the First Day Orders or Second Day Orders, (ii) made in connection with the DIP Order or the Bidding Procedures Order, (iii) made in connection with the applicable Canadian Orders, or (iv) consented to by the Lenders and, to the extent involving B-2 Priority Collateral, the B-2 Lenders.

Section 7.06.  *Restricted Payments.*  The Borrower shall not, nor shall it permit any Subsidiary to, directly or indirectly, declare or make, directly or indirectly, any Restricted Payment, except (a) each Subsidiary may make Restricted Payments to (i) the Borrower or any other Domestic Subsidiary or Canadian Subsidiary and (ii) any other Subsidiary (and, in the case of a Restricted Payment by a non-wholly owned Subsidiary, to the Borrower and any other Subsidiary and to each other owner of Equity Interests of such Subsidiary based on their relative ownership interests of the relevant class of Equity Interests), in the case of this clause (ii), solely if required to comply with this Agreement and (b) payments of directors fees included and as permitted by the Approved Budget (subject to Permitted Variances), in each case other than UST Adequate Protection Payments pursuant to the UST Adequate Protection Order.

Section 7.07.  *Organization Documents*.  Except as required by the Bankruptcy Code, the Borrower shall not, nor shall the Borrower permit any of the Subsidiaries to, amend, restate, supplement or otherwise modify, or waive any of its rights under, its Organization Documents to the extent adverse in any material respect to the Lenders (in their capacities as such).

Section 7.08.  *Transactions with Affiliates.*  The Borrower shall not, nor shall it permit any Subsidiary to, directly or indirectly, enter into any transaction of any kind with any of its Affiliates, whether or not in the ordinary course of business, other than (a) transactions between or among Loan Parties or any entity that becomes a Loan Party as a result of such transaction and transactions between or among Subsidiaries that are not Loan Parties, (b) to the extent pursuant to the Approved Budget (subject to Permitted Variances), (i) Investments made pursuant to Section 7.02 and Restricted Payments permitted under Section 7.06, (ii) customary employment, consulting and severance arrangements between the Borrower and the Subsidiaries and their respective officers and employees in the ordinary course of business and transactions pursuant employee benefit plans and similar arrangements in the ordinary course of business to the extent permitted under the DIP Order, (iii) the payment of customary fees and reasonable out of pocket costs to, and customary indemnities provided on behalf of, directors, officers, employees and consultants of the Borrower and the Subsidiaries in the ordinary course of business, (iv) transactions

pursuant to agreements in existence on the Closing Date and set forth on Schedule 7.08, (v) transactions made in connection with the First Day Orders or Second Day Orders, (vi) pursuant to the Approved Budget (subject to Permitted Variances), and (vii) transactions made pursuant to the DIP Order or otherwise permitted hereunder and under the Postpetition B-2 Loan Documents.

Section 7.09. *Burdensome Agreements.* The Borrower shall not, nor shall it permit any Subsidiary to, directly or indirectly, enter into or permit to exist any Contractual Obligation after the Closing Date (other than the Loan Documents, the Postpetition B-2 Loan Documents, pursuant to the Prepetition Indebtedness, or agreements entered into as permitted by the First Day Orders or Second Day Orders, the DIP Order or the Bidding Procedures Order, in each case, to the extent such orders are acceptable to the Lenders) that limits the ability of (a) any Subsidiary that is not a Guarantor to make Restricted Payments to the Borrower or any Guarantor or to make or repay loans or advances to or otherwise transfer assets to or make Investments in the Borrower or any Subsidiary that is a Guarantor or (b) any Loan Party to create, incur, assume or suffer to exist Liens on property of such Person to secure the Obligations; *provided* that the foregoing clauses (a) and (b) shall not apply to Contractual Obligations which exist on the Petition Date and are listed on Schedule 7.09 hereto.

Section 7.10. *[Reserved].*

Section 7.11. *Budget Variance Covenants.* Commencing with the Budget Variance Test Date occurring on Friday, August 25, 2023, and on each Budget Variance Test Date occurring thereafter, the Borrower shall not, nor shall it permit any of its Subsidiaries to, permit:

(a)    the sum of the actual aggregate cash receipts of the Borrower and its Subsidiaries (excluding proceeds of the Term Loans) for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be less than the Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Total Receipts" for such Budget Variance Test Period; or

(b)    the sum of the actual aggregate operating disbursements of the Borrower and its Subsidiaries for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Total Operating Disbursements" for such Budget Variance Test Period; or

(c)    the sum of the actual aggregate amounts paid by the Borrower and its Subsidiaries with respect to severance and accrued pre-petition wages for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line items in the Approved Budget entitled "Severance" and "Accrued Pre-Petition Wages" for such Budget Variance Test Period; or

(d)    the sum of the actual aggregate disbursements of the Borrower and its Subsidiaries with respect to lienholders and on account of taxes and other restructuring costs for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Prepetition Vendors & Taxes" for such Budget Variance Test Period.

To the extent that any Budget Variance Test Period encompasses a period that is covered in more than one Approved Budget, the applicable weeks from each applicable Approved Budget shall be utilized in making the calculations pursuant to this Section 7.11.

Section 7.12.  *Fiscal Year.*  The Borrower shall not make any change in its fiscal year or fiscal quarters (it being understood that the Borrower's fiscal year ends on December 31 of each year, and that each of the first three fiscal quarters of each fiscal year of the Borrower ends on the March 31, June 30 and September 30, respectively); *provided, however*, that the Borrower may, upon written notice to the Administrative Agent and the Lenders, change its fiscal year and fiscal quarters to any other fiscal year (and any other fiscal quarters) reasonably acceptable to the Administrative Agent and the Lenders, in which case, the Borrower and the Administrative Agent will, and are hereby authorized by the Lenders to, make any adjustments to this Agreement that are necessary to reflect such changes.

Section 7.13.  *Prepayments, Etc. of Indebtedness.*  (a)  Except as set forth in the Approved Budget (subject to Permitted Variances), the DIP Order, the applicable Canadian Orders, the Bidding Procedures Order, the First Day Order, the Second Day Order or the UST Adequate Protection Order, until the Initial Term Loans have been paid in full in cash, the Borrower shall not, nor shall it permit any Subsidiary to, directly or indirectly from proceeds of the B-2 Priority Collateral, voluntarily pay, prepay, redeem, purchase, defease or otherwise satisfy any principal, interest or other amounts, in any manner, with respect to any Prepetition ABL Facility Indebtedness, Prepetition UST Tranche A Facility Indebtedness or Prepetition UST Tranche B Facility Indebtedness or payables, other than (i) payments set forth in the Approved Budget (subject to Permitted Variances), (ii) UST Adequate Protection Payments, (iii) ABL Adequate Protection Fees and Expenses (as defined in the DIP Order), (iv) adequate protection payments for the B-2 Lenders, (v) any other payments contemplated by the DIP Order (including prepayments and repayments of the B-2 Obligations), and (vi) other payments agreed in writing by the Lenders and authorized by the Bankruptcy Court or the Canadian Court.

(b)      Except as permitted by the DIP Order, the Borrower shall not, nor shall it permit any Subsidiary to, directly or indirectly, amend, modify, change, terminate or release in any manner materially adverse to the interests of the Lenders, any term or condition of any document comprising Prepetition Facility Documentation or any Postpetition B-2 Loan Document, in each case without the prior written consent of the Lenders.

Section 7.14.  *[Reserved].*

Section 7.15.  *Leases and Other Executory Contracts; Exclusivity Period.*  The Borrower shall not (i) assume or reject any executory contract or unexpired lease or (b) consent to termination or reduction of the exclusivity period to file and solicit a Plan of Reorganization or fail to object to any motion seeking to terminate or reduce such exclusivity period, in each case, without the consent of the Lenders and, to the extent constituting or impacting any B-2 Priority Collateral, the B-2 Lenders.

Section 7.16.  *DIP Proceeds Account; Use of Cash.*  The Borrower shall maintain the DIP Proceeds Account at all times and ensure that only proceeds of Initial Term Loans, Postpetition B-2 Loans and Delayed Draw Term Loans are deposited in the DIP Proceeds Account.  The Borrower (i) shall not, nor shall it permit any Subsidiary who holds such DIP Proceeds Account, to withdraw any cash in the DIP Proceeds Account, or otherwise make any other payments during the pendency of the Chapter 11 Cases (notwithstanding the source of cash), except consistent with the Approved Budget (subject to Permitted Variances) and unless each of the following shall be true on the date of such withdrawal: (x) The representations and warranties set forth in Article 5 and in each other Loan Document shall be true and correct in all material respects on and as of the date of such Credit Extension with the same effect as though made on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date; *provided*, that any such representation and warranty that is qualified by "materiality", "material adverse effect" or similar language shall be true and correct in all respects (after giving effect to such qualification therein) on and as of the date of such Credit Extension with the same effect as though made on and as of

such date or such earlier date, as applicable, and (y) no Default or Event of Default shall exist or would result from such proposed Credit Extension or from the application of the proceeds therefrom and (ii) for the avoidance of doubt, shall not permit any cash in such DIP Proceeds Account to be subject to any zero-balance or other similar automatic sweep.  For the avoidance of doubt, none of the DIP Proceeds Account, any funds therein, or any proceeds of Initial Term Loans, Postpetition B-2 Loans or Delayed Draw Term Loans shall be subject to any terms or provisions in the DIP Order governing cash that constitutes Prepetition ABL Priority Collateral.

Section 7.17.  *No Canadian Pension Plans.*  No Loan Party shall maintain, sponsor, administer, contribute to, participate in, or have any obligations or any actual or contingent liability in respect of any Canadian Defined Benefit Pension Plan.

## ARTICLE 8
### EVENTS OF DEFAULT AND REMEDIES

Section 8.01.  *Events of Default.*  Any of the following from and after the Closing Date shall constitute an event of default (an "**Event of Default**"):

(a)     *Non-Payment.*  Any Loan Party fails to pay (i) when and as required to be paid herein or in any other Loan Document, any amount of principal of any Loan, (ii) within three (3) Business Days after the same becomes due, any interest on any Loan or (iii) within five (5) Business Days after the same becomes due, any other amount payable hereunder or with respect to any other Loan Document; or

(b)     *Specific Covenants.*  The Borrower fails to perform or observe any term, covenant or agreement contained in any of (i) Sections 6.03(a) (*provided* that the delivery of a notice of Default or Event of Default at any time will cure an Event of Default under Section 6.03(a) arising from the failure of the Borrower to timely deliver such notice of Default or Event of Default), 6.05(a) (solely with respect to the Borrower), 6.13(c), 6.14, 6.15, 6.16 or Article 7 or (ii) Section 6.01 or 6.02 and, in the case solely of this clause (ii), such failure continues for two Business Days after the earlier of (A) a Responsible Officer of the Borrower becoming aware of such default and (B) receipt by the Borrower of written notice thereof from the Administrative Agent or the Lenders; or

(c)     *Other Defaults.*  Any Loan Party fails to perform or observe any other term, covenant or agreement (not specified in Section 8.01(a) or (b) above) contained in any Loan Document on its part to be performed or observed and such failure continues for fifteen (15) days after receipt by the Borrower of written notice thereof from the Administrative Agent or the Lenders; or

(d)     *Representations and Warranties.*  Any representation, warranty, certification or statement of fact made or deemed made by or on behalf of the Borrower or any other Loan Party herein, in any other Loan Document, or in any Compliance Certificate or other document required to be delivered in connection herewith or therewith shall be incorrect or misleading in any material respect when made or deemed made; or

(e)     *Cross-Default.*  Except as a result of the events leading up to or resulting from the commencement of the Chapter 11 Cases, the ceasing of operations, the commencement of the Chapter 11 Cases, the Canadian Recognition Proceedings or entry into this Agreement and unless the payment, acceleration and/or the exercise of remedies with respect to any such Indebtedness is stayed by the Bankruptcy Court or the Canadian Court, any Loan Party or any Subsidiary (i) fails to make any payment after the applicable grace period with respect thereto, if any, (whether by scheduled maturity, required prepayment, acceleration, demand, or otherwise) in respect of any other prepetition Indebtedness (other than Indebtedness hereunder and, for the avoidance of doubt, excluding Prepetition Indebtedness) having

an outstanding aggregate principal amount of not less than the Threshold Amount or (ii) fails to observe or perform any other agreement or condition relating to any such prepetition Indebtedness, or any other event occurs (other than, with respect to Indebtedness consisting of Swap Contracts, termination events or equivalent events pursuant to the terms of such Swap Contracts and not as a result of any other default thereunder by any Loan Party), after all grace periods having expired and all required notices having been given, the effect of which default or other event is to cause, or to permit the holder or holders of such Indebtedness (or a trustee or agent on behalf of such holder or holders or beneficiary or beneficiaries) to cause, after all grace periods having expired and all required notices having been given, such prepetition Indebtedness to become due or to be repurchased, prepaid, defeased or redeemed (automatically or otherwise), or an offer to repurchase, prepay, defease or redeem such Indebtedness to be made, prior to its stated maturity; or

(f)      *[Reserved]*; or

(g)      *[Reserved]*; or

(h)      *Judgments*.   Except as a result of the events leading up to or resulting from the commencement of the Chapter 11 Cases or the Canadian Recognition Proceedings, the commencement of the Chapter 11 Cases or the Canadian Recognition Proceedings or entry into this Agreement and unless any such judgment is stayed by the Bankruptcy Court or the Canadian Court, there is entered against any Loan Party or any Subsidiary a final judgment or order for the payment of money in an aggregate amount exceeding the Threshold Amount (to the extent not covered by independent third-party insurance or indemnity as to which the insurer or third party indemnitor has been notified of such judgment or order and has not denied coverage) and such judgment or order shall not have been satisfied, vacated, discharged or stayed or bonded pending an appeal for a period of sixty (60) consecutive days; or

(i)      *Invalidity of Loan Documents*.   Any material provision of the Loan Documents, at any time after their execution and delivery and for any reason other than as expressly permitted hereunder or thereunder (including as a result of a transaction permitted under Section 7.04 or 7.05) or as a result of acts or omissions by the Administrative Agent or Collateral Agent or any Lender or the satisfaction in full of all the Obligations (other than other than contingent obligations), ceases to be in full force and effect; or any Loan Party contests in writing the validity or enforceability of any provision of any Loan Document; or any Loan Party denies in writing that it has any or further liability or obligation under any Loan Document (other than as a result of repayment in full of the Obligations), or purports in writing to revoke or rescind any Loan Document; or

(j)      *[Reserved]*; or

(k)      *Collateral Documents*.   The DIP Order, the Canadian DIP Recognition Order and the Collateral Documents after delivery thereof pursuant to Sections 4.02, 6.11 or 6.13 shall for any reason (other than pursuant to the terms hereof or thereof including as a result of a transaction permitted under Section 7.04 or 7.05) cease to create, or shall be asserted by any Loan Party not to create, a valid and perfected Lien, on and security interest in the Collateral, with the priority required herein and in the DIP Order, subject to Liens permitted under Section 7.01; or

(l)      *ERISA*.   The occurrence of an ERISA Event pursuant to clause (r) of the definition of such term that has resulted or could reasonably be expected to result in a Material Adverse Effect; or

(m)      *[Reserved]*; or

(n)      *[Reserved]*; or

(o)    *The Chapter 11 Cases.*

(i)    A Final Order shall not have been entered by the Bankruptcy Court on or before the date that is 45 days after the Petition Date, which Final Order shall be in full force and effect and shall not have been reversed, modified, amended, stayed, vacated, appealed or subject to pending appeal or otherwise challenged or subject to any challenge in any respect without prior consent of the Lenders; or

(ii)    Any Chapter 11 Cases or Canadian Recognition Proceedings shall be dismissed (or the Bankruptcy Court or Canadian Court, as applicable, shall make a ruling requiring the dismissal of any Chapter 11 Case or Canadian Recognition Proceedings), suspended or converted to a case under chapter 7 of the Bankruptcy Code, or any Loan Party shall file any pleading, application or motion requesting any such relief; or a motion shall be filed by any Loan Party for the approval of, or there shall arise, (x) any other Claim (other than a Claim of the B-2 Lenders) having priority senior to or pari passu with the claims of the Administrative Agent and Lenders under the Loan Documents or any other claim having priority over any or all administrative expenses of the kind specified in clause (b) of Section 503 or clause (b) of Section 507 of the Bankruptcy Code (other than the Carve-Out and the Canadian Priority Charges pursuant to the applicable Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders or the adequate protection obligations under the DIP Order) or (y) any Lien on the Collateral having a priority senior to or pari passu with the Liens and security interests granted to the Collateral Agent pursuant to this Agreement, the DIP Order and/or the applicable Canadian Orders (other than Liens granted under the Prepetition B-2 Loan Documents and the Postpetition B-2 Loan Documents), except as expressly provided herein and in the DIP Order, the UST Adequate Protection Order and in the applicable Canadian Orders; or

(iii)    Any Loan Party shall file a motion in the Chapter 11 Cases or the Canadian Recognition Proceedings to obtain additional or replacement financing from a party other than the Lenders or the B-2 Lenders under Section 364(d) of the Bankruptcy Code or the CCAA or to use Cash Collateral of a Lender under Section 363(c) of the Bankruptcy Code, except to the extent any such financing shall provide for the payment in full in cash of the Obligations or with the prior written consent of the Lenders; or

(iv)    Any Loan Party shall file a motion seeking, or the Bankruptcy Court or the Canadian Court shall enter, an order (A) approving payment of any pre-petition claim (or the Loan Party shall otherwise make a payment on any prepetition claim) other than (x) as provided for in (i) the First Day Orders, Second Day Orders, the UST Adequate Protection Order or the applicable Canadian Orders, (ii) the Approved Budget (subject to Permitted Variances) or (iii) the DIP Order or (y) otherwise consented to by the Lenders in writing, (B) granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code or the stay of proceedings provided for in the applicable Canadian Orders to any holder of any security interest to permit foreclosure on any assets with a fair market value in excess of $250,000; or (C) except as provided in the DIP Order, and the other adequate protections set forth in the DIP Order and the UST Adequate Protection Order, approving any settlement or other stipulation not approved by the Lenders and not included in the Approved Budget with any secured creditor of any Loan Party providing for payments as adequate protection or otherwise to such secured creditor; or

(v)    (A) Any Chapter 11 Order or order granted in the Canadian Recognition Proceedings shall be amended, supplemented, stayed, reversed, vacated or otherwise modified (or any Loan Party shall apply for authority to do so), in each case, in a manner adverse to the Lenders, without the written consent of the Lenders (or any Loan Party shall file, or otherwise support, any pleading, application or motion seeking such relief described in this clause (v)) or (B) any Chapter 11 Order or order granted in the Canadian Recognition Proceedings shall cease to be in full force and effect; or

(vi)    An order with respect to any of the Chapter 11 Cases or Canadian Recognition Proceedings shall be entered by the Bankruptcy Court or Canadian Court, as applicable, without the express prior written consent of the Lenders (and, with respect to any provisions that adversely affect the rights or duties of any Agent, such Agent) (i) to revoke, reverse, stay, modify, supplement, vacate or amend any of the DIP Order or Canadian Orders in a manner inconsistent with this Agreement, in a manner adverse to the Lenders, or that is not otherwise consented to by the Lenders (and with respect to amendments, modifications, or supplements that adversely affect the rights or duties of any Agent, such Agent); (ii) to permit any administrative expense or any claim (other than a Claim of the B-2 Lenders) (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority as to the Loan Parties equal or superior to the priority of the Loans (other than the Carve-Out and the Canadian Priority Charges pursuant to the applicable Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders)) or the adequate protection Claims (other than the Carve-Out and the Canadian Priority Charges pursuant to the applicable Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders or the administrative expense claims on account of the Junior DIP Facility); or (iii) to grant or permit the grant of a Lien on the Collateral (other than Liens granted under the Postpetition B-2 Loan Documents, as expressly provided or permitted herein and in the DIP Order, the UST Adequate Protection Order and in the applicable Canadian Orders); or

(vii)    An application for any of the orders described in subclauses (ii), (iv), (vi), (x), (xvii) and (xviii) of this clause (o) shall be made by a Person other than the Loan Parties, and such application is not contested by the Loan Parties in good faith or any Person obtains a non-appealable final order charging any of the Collateral under section 506(c) of the Bankruptcy Code against any Agent or the Lenders or obtains a final order adverse to any Agent or the Lenders; or

(viii)    The Canadian Final DIP Recognition Order shall not have been entered by the Canadian Court on or before the date that is 15 calendar days after the date on which the Final Order is entered by the Bankruptcy Court, which Canadian Final DIP Recognition Order shall be in full force and effect and shall not have been reversed, modified, amended, stayed, vacated, appealed or subject to pending appeal or otherwise challenged or subject to any challenge in any respect without prior consent of the Lenders; or

(ix)    Any of the Loan Parties shall fail to comply with the terms and conditions of any Chapter 11 Order or order granted in the Canadian Recognition Proceedings in any material respect and such failure is not cured within two (2) Business Days of the earlier of the Borrower having knowledge thereof and any written notice by the Administrative Agent (at the direction of the Lenders); or

(x)    The Bankruptcy Court shall enter an order appointing a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code, or a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in subclauses (3) and (4) of clause (a) of Section 1106 of the Bankruptcy Code) under clause (b) of Section 1106 of the Bankruptcy Code in the Chapter 11 Cases (or any Loan Party or any of its Subsidiaries or Affiliates shall file, or otherwise support, any pleading, application or motion seeking such relief described in this clause (x)); or

(xi)    The entry of an order by the Bankruptcy Court terminating or modifying the exclusive right of any Debtor to file a Plan of Reorganization pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the Lenders; or

(xii)    The Loan Parties or any of their controlled Affiliates shall support (in any such case by way of any motion, application or other pleading filed with the Bankruptcy Court or Canadian Court or any other writing to another party-in-interest executed by or on behalf of the Loan Parties or any of their Subsidiaries) any other Person's opposition of any motion made in the Bankruptcy Court or

Canadian Court by the Lenders seeking confirmation of the amount of the Lenders' claim or the validity and enforceability of the Liens in favor of the Collateral Agent; or

    (xiii)    (A) The Loan Parties or any of their Affiliates shall seek to, or shall support (in any such case by way of any motion, application or other pleading filed with the Bankruptcy Court or Canadian Court or any other writing to another party-in-interest executed by or on behalf of the Loan Parties or any of their Subsidiaries) any other Person's motion to, disallow in whole or in part the Lenders' claim in respect of the Obligations or to challenge the validity and enforceability of the Liens in favor of the Collateral Agent or contest any material provision of any Loan Document, (B) any Loan Party shall attempt to invalidate, reduce or otherwise impair the Liens or security interests of the Collateral Agent or the Lenders or to subject any Collateral to assessment pursuant to section 506(c) of the Bankruptcy Code, (C) any Liens on the Collateral securing the Obligations and/or super-priority claims shall otherwise, for any reason, cease to be valid, perfected and enforceable in all respects, (D) any action is commenced by the Loan Parties that contests the validity, perfection or enforceability of any of the Liens and security interests of the Collateral Agent or the Lenders created by the DIP Order, the applicable Canadian Orders or the Loan Documents, or (E) any material provision of any Loan Document shall cease to be effective; or

    (xiv)    Any judgments which are in the aggregate in excess of $2,500,000 as to any postpetition obligation shall be rendered against any of the Loan Parties and the enforcement thereof shall not be stayed; or

    (xv)    (A) The Loan Parties or any of their Affiliates shall file any pleading, application, motion or proceeding which results in a material impairment of the rights or interests of the Lenders or (B) entry of an order of the Bankruptcy Court or Canadian Court with respect to any pleading, application, motion or proceeding brought by any other Person which results in such a material impairment of the rights or interests of the Lenders; or

    (xvi)    Any Loan Party or any of their Affiliates shall have filed a motion seeking the entry of, or the Bankruptcy Court or Canadian Court shall have entered, an order approving a payment to any Person (whether in cash or other property or whether as adequate protection, settlement of a dispute, or otherwise) that would be materially inconsistent with the treatment of any such Person under the Approved Budget or First Day Orders or Second Day Orders, without the prior written consent of the Lenders; or

    (xvii)    Any Loan Party files or publicly announces its intention to file a Plan of Reorganization that is not an Acceptable Plan, without the prior written consent of the Lenders; or

    (xviii)    An order shall be entered by the Bankruptcy Court transferring the Chapter 11 Cases to any other court; or

    (xix)    The Canadian Court shall enter an order appointing a receiver, interim receiver, trustee or similar official in respect of any of the Canadian Debtors or Canadian Collateral (other than, for certainty, the appointment of the Information Officer); or

    (xx)    [Reserved]; or

    (xxi)    [Reserved]; or

    (xxii)    The Bidding Procedures Order is amended, supplemented or otherwise modified without the prior written consent of the Lenders; or

(xxiii)   The occurrence of a "Cash Collateral Termination Event" (or similar event) under the UST Adequate Protection Order or the DIP Order; or

(xxiv)    Any Loan Party or any of their Affiliates shall have filed a motion seeking the entry of, or the Bankruptcy Court or Canadian Court shall have entered, an order approving a payment to any person that would be inconsistent with the Approved Budget (subject to Permitted Variances); or the proceeds of any Loan shall have been expended in a manner that is not in accordance with the Approved Budget (subject to Permitted Variances); or

(xxv)   The filing of any Plan of Reorganization that does not propose to indefeasibly repay the Obligations and the B-2 Obligations in full in cash; or

(xxvi)   [Reserved]; or

(xxvii)  Failure to meet any milestone set forth on Appendix E hereto (the "**Chapter 11 Milestones**") when required, unless extended or waived in writing (which may be via email) by the Lenders.

Section 8.02.  *Remedies Upon Event of Default.*  Subject to the terms and conditions of the DIP Order, the Senior ICA Provisions, the Prepetition ABL Intercreditor Agreement and, solely in the case of Canadian Debtors, the applicable Canadian Orders, if any Event of Default occurs and is continuing the Administrative Agent may, at the request of the Lenders, take any or all of the following actions:

(i)     declare the commitment of each Lender to make Loans to be terminated, whereupon such commitments shall be terminated;

(ii)     declare the unpaid principal amount of all outstanding Loans, all interest accrued and unpaid thereon, premium and all other amounts owing or payable or accrued hereunder or under any other Loan Document to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived  (to the extent permitted by applicable law) by the Borrower and each other Loan Party; and

(iii)     exercise on behalf of itself and the Lenders all rights and remedies available to it and the Lenders under the Loan Documents or applicable Law (including, for greater certainty, seeking the appointment of a receiver).

In addition, subject to the giving of five (5) calendar days' written notice as set forth below and to the terms and conditions of the DIP Order and the Senior ICA Provisions in all respects, (i) the use by the Borrower and its Subsidiaries of Cash Collateral shall terminate and (ii) the automatic stay provided in Section 362 of the Bankruptcy Code shall be deemed automatically vacated without further action or order of the Bankruptcy Court and the Administrative Agent and the Lenders shall be entitled to exercise all of their respective rights and remedies under the Loan Documents and the DIP Order, including all rights and remedies with respect to the Collateral and the Guarantors.  In addition to the remedies set forth above, the Administrative Agent may exercise any other remedies provided for by this Agreement and the other Loan Documents in accordance with the terms hereof and thereof or any other remedies provided by the DIP Order or applicable law, subject to the Senior ICA Provisions and the terms and conditions of the DIP Order and the applicable Canadian Orders.  Notwithstanding the foregoing, any exercise of remedies is subject to the requirement of the giving of five (5) calendar days' prior written notice (which may be via e-mail) to counsel for the Loan Parties (including Canadian counsel), the Office of the U.S. Trustee, lead restructuring counsel for the B-2 Lenders, lead restructuring counsel for the B-2 Agent, counsel for the Official Committee and counsel to the Information Officer, in accordance with the terms of the DIP Order and solely in the case of the Canadian Collateral, the applicable Canadian Orders.

Section 8.03.  *[Reserved]*.

Section 8.04.  *Application of Funds*.  Subject to the terms, conditions, priorities and provisions of the DIP Order, the applicable Canadian Orders (solely in the case of Canadian Collateral, and for certainty, subject to the Canadian Priority Charges), the Senior ICA Provisions and the Prepetition ABL Intercreditor Agreement, after the exercise of remedies provided for in <u>Section 8.02</u> any amounts received on account of the Obligations shall be applied by the Administrative Agent in the following order (to the fullest extent permitted by mandatory provisions of applicable Law) (*provided* that no prepayment, repayment, repurchase, or exchange of borrowings under the Junior DIP Facility shall occur until all B-2 Obligations have first been indefeasibly paid in full in cash and any such prepayment, repayment, repurchase or exchange shall otherwise be consistent with the priorities for liens and claims securing the Junior DIP Facility as set forth in the DIP Order):

*First*, to payment of that portion of the Obligations constituting fees, indemnities, expenses and other amounts (other than principal and interest, but including Attorney Costs payable under <u>Section 10.05</u> and amounts payable under <u>Article 3</u>) payable to the Administrative Agent or the Collateral Agent in its capacity as such;

*Second*, to payment of that portion of the Obligations constituting fees, indemnities, premium and other amounts (other than principal and interest) payable to the Lenders (including Attorney Costs payable under <u>Section 10.05</u> and amounts payable under <u>Article 3</u>), ratably among them in proportion to the amounts described in this clause *Second* payable to them;

*Third*, to payment of that portion of the Obligations constituting accrued and unpaid interest on the Loans, ratably among the Secured Parties in proportion to the respective amounts described in this clause *Third* payable to them;

*Fourth*, to payment of that portion of the Obligations constituting unpaid principal of the Loans, ratably among the Secured Parties in proportion to the respective amounts described in this clause *Fourth* held by them;

*Fifth*, to the payment of all other Obligations of the Borrower that are due and payable to the Administrative Agent and the other Secured Parties on such date, ratably based upon the respective aggregate amounts of all such Obligations owing to the Administrative Agent and the other Secured Parties on such date; and

*Last*, the balance, if any, after all of the Obligations (other than contingent obligations) have been paid in full, to the Borrower or as otherwise required by Law.

## ARTICLE 9
### THE ADMINISTRATIVE AGENT AND THE COLLATERAL AGENT

Each Lender hereby irrevocably appoints the Administrative Agent and the Collateral Agent (for purposes of this Article 9, the Administrative Agent and the Collateral Agent are referred to collectively as the "**Agents**") its agent and authorizes the Agents to take such actions on its behalf and to exercise such powers as are delegated to such Agent by the terms of the Loan Documents, together with such actions and powers as are reasonably incidental or related thereto.  Without limiting the generality of the foregoing, the Agents are hereby expressly authorized to (i) execute any and all documents with respect to the Collateral and the rights of the Secured Parties with respect thereto, as contemplated by and in accordance with the provisions of this Agreement and the other Loan Documents and (ii) negotiate, enforce or settle any claim, action or proceeding affecting the Lenders in their capacity as such, at the direction of the Lenders, which

negotiation, enforcement or settlement will be binding upon each Lender. The institution serving as the Administrative Agent and/or the Collateral Agent hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not an Agent, and such bank and its Affiliates may accept deposits from, lend money to and generally engage in any kind of business with the Borrower or any Subsidiary or other Affiliate thereof as if it were not an Agent hereunder. The Agents shall not, except as expressly set forth herein and in the other Loan Documents, have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to the Borrower or any Loan Party that is communicated or obtained by the Person serving as Administrative Agent or Collateral Agent, as applicable, or any of their Affiliates in any capacity.

Neither Agent shall have any duties or obligations except those expressly set forth in the Loan Documents. Without limiting the generality of the foregoing, (a) neither Agent shall be subject to any fiduciary or other implied duties, regardless of whether an Event of Default or Default has occurred and is continuing, (b) neither Agent shall have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby that such Agent is instructed in writing to exercise by the Lenders, and (c) except as expressly set forth in the Loan Documents, neither Agent shall have any duty to disclose, nor shall it be liable for the failure to disclose, any information relating to the Borrower or any of the Subsidiaries that is communicated to or obtained by the bank serving as Administrative Agent and/or Collateral Agent or any of its Affiliates in any capacity. Neither Agent shall be liable for any action taken or not taken by it with the consent or at the request of the Lenders or in the absence of its own gross negligence or willful misconduct as determined by the final non-appealable judgment of a court of competent jurisdiction. Notwithstanding the foregoing, no action nor any omission to act, taken by either Agent at the direction of the Lenders shall constitute gross negligence or willful misconduct. Neither Agent shall be deemed to have knowledge of any Event of Default or Default unless and until written notice thereof, conspicuously labeled as a "notice of default" and specifically describing such Event of Default or Default, is given to such Agent by the Borrower or a Lender, and neither Agent shall be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with any Loan Document, (ii) the contents of any certificate, report or other document delivered thereunder or in connection therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth in any Loan Document, (iv) the validity, enforceability, effectiveness or genuineness of any Loan Document or any other agreement, instrument or document, or (v) the satisfaction of any condition set forth in Article 4 or elsewhere in any Loan Document, other than to confirm receipt of items expressly required to be delivered to such Agent.

Each Agent shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing believed by it in good faith to be genuine and to have been signed or sent by the proper Person. Each Agent may also rely upon any statement made to it orally or by telephone and believed by it in good faith to have been made by the proper Person, and shall not incur any liability for relying thereon. Each Agent may consult with legal counsel (who may be counsel for the Borrower), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

Each Agent may perform any and all its duties and exercise its rights and powers by or through any one or more sub-agents appointed by it. Each Agent and any such sub-agent may perform any and all its duties and exercise its rights and powers by or through their respective Related Parties. The exculpatory provisions of the preceding paragraphs shall apply to any such sub-agent and to the Related Parties of each Agent and any such sub-agent, and shall apply to their respective activities in connection with the arrangement of the Facilities as well as activities as Agent.

Either Agent may resign at any time by notifying the Lenders and the Borrower in writing, and either Agent may be removed at any time with or without cause by an instrument or concurrent instruments in writing delivered to the Borrower and such Agent and signed by the Lenders.  Upon any such resignation or removal, the Lenders shall have the right, without the consent of the Borrower, to appoint a successor. If no successor shall have been so appointed by the Lenders and shall have accepted such appointment within 30 days after (i) the retiring Agent gives notice of its resignation or (ii) the Lenders deliver removal instructions, then the retiring or removed Agent may, on behalf of the Lenders, appoint a successor Agent which shall be a bank with an office in New York, New York, or an Affiliate of any such bank.  If no successor Agent has been appointed pursuant to the immediately preceding, such Agent's resignation or removal shall become effective and the Lenders shall thereafter perform all the duties of such Agent hereunder and/or under any other Loan Document until such time, if any, as the Lenders appoint a successor Administrative Agent and/or Collateral Agent, as the case may be.  Upon the acceptance of its appointment as Agent hereunder by a successor, such successor shall succeed to and become vested with all the rights, powers, privileges and duties of its predecessor Agent, and its predecessor Agent shall be discharged from its duties and obligations hereunder.  The fees payable by the Borrower to a successor Agent shall be the same as those payable to its predecessor unless otherwise agreed between the Borrower and such successor. After an Agent's resignation hereunder, the provisions of this Article and Section 10.05 shall continue in effect for the benefit of such retiring Agent, its sub-agents and their respective Related Parties in respect of any actions taken or omitted to be taken by any of them while acting as Agent.

Each Lender acknowledges that it has, independently and without reliance upon the Agents or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement.  Each Lender also acknowledges that it will, independently and without reliance upon the Agents or any other Lender and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement or any other Loan Document, any related agreement or any document furnished hereunder or thereunder.

Each Lender acknowledges and agrees that Alter Domus Products Corp. or one or more of its Affiliates may (but is not obligated to) act as collateral agent or representative for the holders of B-2 Indebtedness and/or under the collateral agreements with respect thereto.  Each Lender waives any conflict of interest, now contemplated or arising hereafter, in connection therewith and agrees not to assert against Alter Domus Products Corp. or any of its Affiliates any claims, causes of action, damages or liabilities of whatever kind or nature relating thereto.

In case of the pendency of any case or proceeding under any Debtor Relief Law or other similar law or any other judicial proceeding relative to any Loan Party, the Administrative Agent (irrespective of whether the principal of any Loan shall then be due and payable as herein expressed or by declaration or otherwise and irrespective of whether the Administrative Agent shall have made any demand on the Borrower) shall be entitled and empowered (but not obligated) by intervention in such proceeding or otherwise: (a) to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of the Loans and all other Obligations that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of the Lenders and the Administrative Agent (including any claim for the reasonable compensation, expenses, disbursements and advances of the Lenders and the Administrative Agent and their respective agents and counsel and all other amounts due the Lenders, the Agents under Section 2.05, Section 3.01, and Section 10.05) allowed in such judicial proceeding; and (b) to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same; and any custodian, receiver, interim receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Lender to make such payments to the Administrative Agent and, in the event that the Administrative Agent shall consent to the making of such payments directly to the Lenders, to pay to the Agents any amount due for

79

the reasonable compensation, expenses, disbursements and advances of the Administrative Agent and its agents and counsel, and any other amounts due to the Agents under <u>Section 2.05</u> and <u>Section 10.05</u>. Nothing contained herein shall be deemed to authorize the Administrative Agent to authorize or consent to or accept or adopt on behalf of any Lender any plan of reorganization, arrangement, adjustment or composition affecting the Obligations or the rights of any Lender or to authorize the Administrative Agent to vote in respect of the claim of any Lender in any such proceeding.

The provisions of this Section shall survive the resignation or replacement of the Administrative Agent or Collateral Agent, the termination of the Loan Documents, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any Loan Document.

## ARTICLE 10
### MISCELLANEOUS

Section 10.01.  *Notices; Electronic Communications.*  Notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by email or fax, as follows:

(a)    if to the Borrower or any other Loan Party, to it at:

Yellow Corporation
Attention of Chief Financial Officer and General Counsel
10990 Roe Avenue
Overland Park, Kansas 66211
Fax No. 913-696-6116
Tel. No. 913-696-6529 or 913-696-6132
Email: Dan.Olivier@myYellow.com and Leah.Dawson@myYellow.com

With copy to:

Kirkland & Ellis LLP
Attention of Michelle Kilkenney, Esq. and Patrick Nash, Esq.
300 North LaSalle
Chicago, Illinois 60654
Fax No. 312-862-2200
Tel. No. 312-862-2487
Email: michelle.kilkenney@kirkland.com; Patrick.nash@kirkland.com

and to:

Goodmans LLP
Attention of Robert J. Chadwick and Caroline Descours
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7
Email: rchadwick@goodmans.ca; cdescours@goodmans.ca

(b)    if to the Administrative Agent, to:

Alter Domus Products Corp.
225 W. Washington Street, 9th Floor

Chicago, Illinois 60606
Attention: Legal Department – Agency, Emily Ergang Pappas and Chris Capezuti
Fax No.: 312-376-0751
Tel. No.: 312-564-5100
Email: legal_agency@alterdomus.com, emily.ergangpappas@alterdomus.com and cpcagency@alterdomus.com

With a copy to:

Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Fax No.: 312-578-6666
Tel. No.: 312-263-3600
Attention: Joshua M. Spencer
Email: joshua.spencer@hklaw.com and alterdomus@hklaw.com

(c)       if to a Lender, to it at its address (email address or fax number) set forth on Appendices A and B.

All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt if delivered by hand or overnight courier service or sent by fax or on the date three Business Days after dispatch by certified or registered mail if mailed, in each case delivered, sent or mailed (properly addressed) to such party as provided in this Section 10.01 or in accordance with the latest unrevoked direction from such party given in accordance with this Section 10.01.  As agreed to among the Borrower, the Administrative Agent and the applicable Lenders from time to time, notices and other communications may also be delivered by e-mail to the e-mail address of a representative of the applicable Person provided from time to time by such Person.

The Borrower hereby agrees, unless directed otherwise by the Lenders or Administrative Agent or unless the electronic mail address referred to below has not been provided by the Administrative Agent to the Borrower, that it will, or will cause its Subsidiaries to, provide to the Administrative Agent and/or the Lenders all information, documents and other materials that it is obligated to furnish to the Administrative Agent and/or the Lenders pursuant to the Loan Documents or to the Lenders under Article 6, including all notices, requests, financial statements, financial and other reports, certificates and other information materials, but excluding any such communication that (i) is or relates to a Request for Credit Extension or a notice pursuant to Section 2.03, (ii) relates to the payment of any principal or other amount due under this Agreement prior to the scheduled date therefor, or (iii) provides notice of any Default or Event of Default under this Agreement or any other Loan Document, (all such non-excluded communications being referred to herein collectively as "**Communications**"), by transmitting the Communications in an electronic/soft medium that is properly identified in a format reasonably acceptable to the Administrative Agent and/or the Lenders to an electronic mail address as directed by the Administrative Agent and/or the Lenders.  In addition, the Borrower agrees, and agrees to cause its Subsidiaries, to continue to provide the Communications to the Administrative Agent, the Lenders or the Lenders, as the case may be, in the manner specified in the Loan Documents but only to the extent requested by the Administrative Agent.

The Borrower hereby acknowledges that (a) the Administrative Agent will make available to the Lenders materials and/or information provided by or on behalf of the Borrower hereunder (collectively, the "**Borrower Materials**") by posting the Borrower Materials on Intralinks or another similar electronic system (the "**Platform**") and (b) certain of the Lenders may be "public-side" Lenders (i.e., Lenders that do

not wish to receive material non-public information with respect to the Borrower, its Subsidiaries or any of their respective securities) (each, a "**Public Lender**").   The Borrower hereby agrees (w) to use commercially reasonable effort to make all Borrower Materials that are to be made available to Public Lenders clearly and conspicuously "PUBLIC" which, at a minimum, shall mean that the word "PUBLIC" shall appear prominently on the first page thereof; (x) by marking Borrower Materials "PUBLIC," the Borrower shall be deemed to have authorized the Administrative Agent and the Lenders to treat such Borrower Materials as not containing any material non-public information with respect to the Borrower or any of its securities for purposes of United States federal and state securities laws (*provided*, *however*, that to the extent such Borrower Materials constitute Information, they shall be treated as set forth in Section 10.16); (y) all Borrower Materials marked "PUBLIC" are permitted to be made available through a portion of the Platform designated as "Public Investor;" and (z) the Administrative Agent shall be entitled to treat any Borrower Materials that are not marked "PUBLIC" as being suitable only for posting on a portion of the Platform not marked as "Public Investor." Notwithstanding the foregoing, the following Borrower Materials shall be marked "PUBLIC", unless the Borrower notifies the Administrative Agent promptly that any such document contains material non-public information: (1) the Loan Documents, (2) financial statements and related documentation, in each case, provided pursuant to Section 6.01 and (3) notification of changes in the terms of the Facilities.

Each Public Lender agrees to cause at least one individual at or on behalf of such Public Lender to at all times have selected the "Private Side Information" or similar designation on the content declaration screen of the Platform in order to enable such Public Lender or its delegate, in accordance with such Public Lender's compliance procedures and applicable Law, including United States Federal and state securities laws, to make reference to Communications that are not made available through the "Public Side Information" portion of the Platform and that may contain material non-public information with respect to the Borrower, its Subsidiaries or any of their respective securities for purposes of United States Federal or state securities laws.

THE PLATFORM IS PROVIDED "AS IS" AND "AS AVAILABLE".   NEITHER THE ADMINISTRATIVE AGENT NOR ANY OF ITS RELATED PARTIES WARRANTS THE ACCURACY OR COMPLETENESS OF THE COMMUNICATIONS OR THE ADEQUACY OF THE PLATFORM AND EACH EXPRESSLY DISCLAIMS LIABILITY FOR ERRORS OR OMISSIONS IN THE COMMUNICATIONS.   NO WARRANTY OF ANY KIND, EXPRESS, IMPLIED OR STATUTORY, INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT OF THIRD PARTY RIGHTS OR FREEDOM FROM VIRUSES OR OTHER CODE DEFECTS IS MADE BY THE ADMINISTRATIVE AGENT OR ANY OF ITS RELATED PARTIES IN CONNECTION WITH THE COMMUNICATIONS OR THE PLATFORM.  IN NO EVENT SHALL THE ADMINISTRATIVE AGENT OR ANY OF ITS RELATED PARTIES HAVE ANY LIABILITY TO ANY LOAN PARTY, ANY LENDER OR ANY OTHER PERSON FOR DAMAGES OF ANY KIND, WHETHER OR NOT BASED ON STRICT LIABILITY AND INCLUDING DIRECT OR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, LOSSES OR EXPENSES (WHETHER IN TORT, CONTRACT OR OTHERWISE) ARISING OUT OF ANY LOAN PARTY'S OR THE ADMINISTRATIVE AGENT'S TRANSMISSION OF COMMUNICATIONS THROUGH THE INTERNET, EXCEPT TO THE EXTENT THE LIABILITY OF ANY SUCH PERSON IS FOUND IN A FINAL NON-APPEALABLE RULING BY A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED FROM SUCH PERSON'S OR ITS RELATED PARTIES' GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR BAD FAITH, IN EACH CASE, AS DETERMINED BY THE FINAL NON-APPEALABLE JUDGMENT OF A COURT OF COMPETENT JURISDICTION.

The Administrative Agent agrees that the receipt of the Communications by the Administrative Agent at its e-mail address set forth above shall constitute effective delivery of the Communications to the

Administrative Agent for purposes of the Loan Documents.  Each Lender agrees that receipt of notice to it (as provided in the next sentence) specifying that the Communications have been posted to the Platform shall constitute effective delivery of the Communications to such Lender for purposes of the Loan Documents.  Each Lender agrees to notify the Administrative Agent in writing (including by electronic communication) from time to time of such Lender's e-mail address to which the foregoing notice may be sent by electronic transmission and that the foregoing notice may be sent to such e-mail address.

Nothing herein shall prejudice the right of the Administrative Agent or any Lender to give any notice or other communication pursuant to any Loan Document in any other manner specified in such Loan Document.

Section 10.02. *Survival of Agreement.*  All covenants, agreements, representations and warranties made by the Borrower herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Agreement or any other Loan Document shall be considered to have been relied upon by the Lenders and shall survive the making by the Lenders of the Loans, regardless of any investigation made by the Lenders or on their behalf or that any Agent or Lender may have had notice of any Default or Event of Default at the time of any Credit Extension, and shall continue in full force and effect as long as the principal of or any accrued interest on any Loan or any Fee or any other amount payable under this Agreement or any other Loan Document is outstanding and unpaid and so long as the Commitments have not been terminated.  The provisions of Section 3.01, Section 3.03 Article 9 and Section 10.05 shall remain operative and in full force and effect regardless of the expiration of the term of this Agreement, the consummation of the transactions contemplated hereby, the repayment of any of the Loans, the expiration of the Commitments, the invalidity or unenforceability of any term or provision of this Agreement or any other Loan Document, or any investigation made by or on behalf of the Administrative Agent, the Collateral Agent or any Lender.

Section 10.03. *Binding Effect.*  This Agreement shall become effective when it shall have been executed and delivered by the Borrower, each other Loan Party hereto on the Closing Date and the Administrative Agent and when the Administrative Agent shall have received counterparts hereof which, when taken together, bear the signatures of each of the other parties hereto.

Section 10.04. *Successors and Assigns.*

(a)     Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the permitted successors and assigns of such party; and all covenants, promises and agreements by or on behalf of the Borrower, the Administrative Agent, the Collateral Agent or the Lenders that are contained in this Agreement shall bind and inure to the benefit of their respective permitted successors and assigns.

(b)     The Commitments of the Lenders described herein and the Loans issued hereunder may not be assigned by the Lenders and the Lenders may not sell or grant participations in the Loans or Commitments.  No Lender shall assign or delegate any of its rights or duties hereunder without the prior written consent of the Administrative Agent and the Borrower, and any attempted assignment without such consent shall be null and void.

(c)     The Administrative Agent, acting for this purpose as a non-fiduciary agent of the Borrower, shall maintain at one of its offices a register for the recordation of the names and addresses of the Lenders, and the Commitment of, and principal amount of and the interest on the Loans owing to, each Lender pursuant to the terms hereof from time to time (the "**Register**").  The entries in the Register shall be conclusive absent manifest error and the Borrower, the Administrative Agent, the Collateral Agent and the Lenders shall treat each Person whose name is recorded in the Register pursuant to the terms hereof as a

Lender hereunder for all purposes of this Agreement, notwithstanding notice to the contrary. The Register shall be available for inspection by the Borrower, the Collateral Agent and, as to entries pertaining to it, any Lender, at any reasonable time and from time to time upon reasonable prior written notice. This <u>Section 10.04(c)</u> shall be construed so that all Loans are at all times maintained in "registered form" within the meaning of Section 163(f), 871(h)(2) and 881(c)(2) of the Code and any related Treasury regulations (or any other relevant or successor provisions of the Code or of such Treasury regulations).

(d)      The Borrower shall not assign or delegate any of its rights or duties hereunder without the prior written consent of the Administrative Agent and each Lender, and any attempted assignment without such consent shall be null and void.

Section 10.05. *Expenses; Indemnity*.

(a)      The Borrower agrees (i) promptly following (and in any event within the period set forth in the DIP Order) written demand (including documentation reasonably supporting such request) therefor, to pay or reimburse the Administrative Agent, the Collateral Agent and the Lenders for all reasonable and documented out-of-pocket costs and expenses (including the documented fees and expenses of Holland & Knight LLP, Ropes & Gray LLP and Blake, Cassels & Graydon LLP) incurred in connection with the preparation, negotiation and execution of the DIP Term Sheet, this Agreement and the other Loan Documents, and any amendment, waiver, consent or other modification of the provisions hereof and thereof (whether or not the transactions contemplated thereby are consummated), and the consummation and administration of the transactions contemplated hereby and thereby (including Attorney Costs which in the case of the Agents, shall be limited to Attorney Costs of one counsel to the Agents and one local counsel in each applicable jurisdiction for the Agents) and (ii) from and after the Closing Date, promptly following (and in any event within the period set forth in the DIP Order) written demand (including documentation reasonably supporting such request) therefor, to pay or reimburse the Administrative Agent, the Collateral Agent and each Lender promptly following written demand for all reasonable and documented out-of-pocket costs and expenses (including the documented fees and expenses of Holland & Knight LLP, Ropes & Gray LLP and Blake, Cassels & Graydon LLP) incurred in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of any rights or remedies under the DIP Term Sheet, this Agreement or the other Loan Documents (including all such out-of-pocket costs and expenses incurred during any legal proceeding, including any proceeding under any Debtor Relief Law, and including Attorney Costs). To the extent otherwise reimbursable by the foregoing sentence of this section, the foregoing costs and expenses shall include all reasonable search, filing, recording, title insurance, survey, environmental, property condition report and zoning report charges and fees related thereto, and other reasonable and documented out of pocket expenses incurred by any Agent. The foregoing costs and expenses shall also include all recording and filing fees charged by governmental authorities to record and/or file Collateral Documents.

(b)      Whether or not the transactions contemplated hereby are consummated, the Loan Parties shall, jointly and severally, indemnify and hold harmless the Administrative Agent, the Collateral Agent and their respective Affiliates, successors and permitted assigns (or the directors, officers, employees, agents, advisors and members of each of the foregoing) (each an "**Agent Indemnitee**" and collectively, the "**Agent Indemnitees**") and each Lender and their respective Affiliates, successors and permitted assigns (or the directors, officers, employees, agents, advisors and members of each of the foregoing) (each a "**Lender Indemnitee**" and collectively, the "**Lender Indemnitees**"; together with, the Agent Indemnitees, collectively the "**Indemnitees**") from and against any and all actual losses, damages, claims, liabilities and reasonable documented out-of-pocket costs and expenses (including Attorney Costs which shall be limited to Attorney Costs of one outside counsel for the Agent Indemnitees and Attorney Costs of one outside counsel for the Lender Indemnitees (and, if necessary, one local counsel in each applicable jurisdiction and, in the event of any actual or reasonably perceived conflict of interest, one additional counsel for each type

of similarly situated affected Indemnitees)) of any kind or nature whatsoever which may at any time be imposed on, incurred by or asserted against any Agent Indemnitee or Lender Indemnitee in any way relating to or arising out of or in connection with (i) the execution, delivery, enforcement, performance or administration of any Loan Document or any other agreement, letter or instrument delivered in connection with the transactions contemplated thereby or the consummation of the Transactions or the other transactions contemplated thereby, (ii) any Commitment or Loan or the use or proposed use of the proceeds therefrom, (iii) any actual or alleged presence or Release of Hazardous Materials at, on, under or from any property, vehicle or facility currently or formerly owned, leased or operated by the Loan Parties or any Subsidiary, or any other Environmental Liability related in any way to any Loan Parties or any Subsidiary, or (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory (including any investigation of, preparation for, or defense of any pending or threatened claim, investigation, litigation or proceeding) and regardless of whether any Agent Indemnitee or Lender Indemnitee is a party thereto and regardless of whether such matter is initiated by a third party or by the Borrower or any of its Affiliates or equityholders in all cases, whether or not caused by or arising, in whole or in part, out of the negligence of any such Agent Indemnitee or Lender Indemnitee; *provided* that, notwithstanding the foregoing, such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, damages, claims, liabilities and expenses resulted from (x) the gross negligence, bad faith or willful misconduct of such Indemnitee or of any affiliate, director, officer, employee, counsel, agent or attorney-in-fact of such Indemnitee, as determined by the final non-appealable judgment of a court of competent jurisdiction or (y) any dispute solely among the Indemnitees other than (1) any claim against an Indemnitee in its capacity or in fulfilling its role as Administrative Agent, Collateral Agent or similar role and (2) any claim arising out of any act or omission of the Borrower or any of its Affiliates. No Indemnitee or any other party hereto shall be liable for any damages arising from the use by others of any information or other materials obtained through IntraLinks or other similar information transmission systems in connection with this Agreement except to the extent that such damages resulted from the (A) gross negligence, bad faith or willful misconduct of such Indemnitee or of any affiliate, director, officer, employee, counsel, agent or attorney-in-fact of such Indemnitee, as determined by the final non-appealable judgment of a court of competent jurisdiction or (B) the material breach by such Indemnitee of its or any affiliate, director, officer, employee, counsel, agent or attorney-in-fact of such Indemnitee's obligations under the Loan Documents, as determined by the final non-appealable judgment of a court of competent jurisdiction. In the case of a claim, investigation, litigation or other proceeding to which the indemnity in this Section 10.05 applies, such indemnity shall be effective whether or not such claim, investigation, litigation or proceeding is brought by any Loan Party, any Subsidiary of any Loan Party, any Loan Party's directors, stockholders or creditors or other Affiliates or an Indemnitee or any other Person, whether or not any Indemnitee is otherwise a party thereto and whether or not any of the transactions contemplated hereunder or under any of the other Loan Documents are consummated. For the avoidance of doubt, this paragraph shall not apply with respect to Taxes other than any Taxes that represent losses, claims, damages, etc. arising from any non-Tax claim.

(c)    To the extent the Agent Indemnitees are not reimbursed and indemnified by the Loan Parties, and without limiting the obligation of the Loan Parties to do so, the Lenders shall indemnify and hold harmless the Agent Indemnities, based on and to the extent of such Lender's pro rata share (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought), from and against any and all losses, claims, damages, liabilities and related expenses (including Attorney Costs) of any kind or nature whatsoever which may at any time be imposed on, incurred by or asserted against any Agent Indemnitee in any way relating to or arising out of or in connection with this Agreement or any other Loan Document or in the performance by the Agents in its duties under the Loan Documents; *provided* that no Lender shall be liable for any portion of such losses, claims, damages, liabilities and related expenses resulting from any Agent Indemnitees gross negligence, bad faith or willful misconduct (as determined by a court of competent jurisdiction in a final and non-appealable decision). Without limiting the foregoing, to the extent not paid or reimbursed by the Loan Parties, each Lender shall pay or reimburse the Agent

Indemnitees based on and to the extent of such Lender's pro rata share of all reasonable and documented out-of-pocket costs and expenses reimbursable pursuant to Section 10.05, incurred in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of any rights or remedies under this Agreement or the other Loan Documents (including all such out-of-pocket costs and expenses incurred during any legal proceeding, including any proceeding under any Debtor Relief Law, and including all Attorney Costs).  For purposes hereof, if the Term Loans have been paid in full prior to such determination pursuant to the immediately preceding sentence, then each such Lender's "pro rata share" shall be determined as of the last date the Term Loans were in effect immediately prior to such payment in full.  The provisions of this Section shall survive the resignation or replacement of the Administrative Agent or Collateral Agent, the termination of the Loan Documents, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any Loan Document.

(d)      To the extent permitted by applicable Law, (i) no Loan Party shall assert, and each hereby waives, any claim against any Indemnitee and (ii) no Indemnitee shall assert, and each hereby waives, any claim against any Loan Party, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, the DIP Term Sheet, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby or thereby, the Transactions or any Loan or the use of the proceeds thereof (whether before or after the Closing Date); *provided* that the foregoing shall in no event limit the Loan Parties' indemnification obligations under clause (b) above.

(e)      The provisions of this Section 10.05 shall remain operative and in full force and effect regardless of the expiration of the term of this Agreement, the consummation of the transactions contemplated hereby, the repayment of any of the Loans, the expiration of the Commitments, the invalidity or unenforceability of any term or provision of this Agreement or any other Loan Document, or any investigation made by or on behalf of the Administrative Agent, the Collateral Agent or any Lender.

Section 10.06. *Right of Setoff.*  In addition to any rights and remedies of the Lenders provided by Law, upon the occurrence and during the continuance of any Event of Default, each Lender and its Affiliates (and the Agents, in respect of any unpaid fees, costs and expenses payable hereunder) is authorized at any time and from time to time (with the prior consent of the Administrative Agent), without prior notice to any Loan Party, any such notice being waived by each Loan Party (on its own behalf and on behalf of each of its Subsidiaries), to the fullest extent permitted by applicable Law, to set off and apply any and all deposits (general or special, time or demand, provisional or final) (other than payroll accounts, trust and tax accounts, escrow accounts, employee benefits accounts or petty cash accounts) at any time held by, and other indebtedness at any time owing by, such Lender and its Affiliates or the Collateral Agent to or for the credit or the account of the respective Loan Parties against any and all matured Obligations owing to such Lender and its Affiliates or the Collateral Agent hereunder or under any other Loan Document, now or hereafter existing, irrespective of whether or not such Agent or such Lender or Affiliate shall have made demand under this Agreement or any other Loan Document and although such Obligations may be denominated in a currency different from that of the applicable deposit or Indebtedness.  Each Lender agrees promptly to notify the Borrower and the Administrative Agent after any such set off and application made by such Lender; *provided*, that the failure to give such notice shall not affect the validity of such setoff and application.  The rights of the Administrative Agent, the Collateral Agent and each Lender under this Section 10.06 are in addition to other rights and remedies (including other rights of setoff) that the Administrative Agent, the Collateral Agent and such Lender may have at Law.

Section 10.07. *Applicable Law.*  This Agreement and the other Loan Documents shall be governed by, and construed in accordance with, the law of the State of New York, except to the extent New York law is superseded by the Bankruptcy Code.

Section 10.08.  *Waivers; Amendment*.

(a)    No failure or delay of the Administrative Agent, the Collateral Agent or any Lender in exercising any power or right hereunder or under any other Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  The rights and remedies of the Administrative Agent, the Collateral Agent and the Lenders hereunder and under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have.  No waiver of any provision of this Agreement or any other Loan Document or consent to any departure by the Borrower or any other Loan Party therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) below, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.  No notice or demand on the Borrower in any case shall entitle the Borrower to any other or further notice or demand in similar or other circumstances.

(b)    Neither this Agreement nor any other Loan Document nor any provision hereof or thereof may be waived, amended or modified except pursuant to an agreement or agreements in writing entered into by the Administrative Agent, the Borrower and the Lenders.

Section 10.09.  *Interest Rate Limitation*.  Notwithstanding anything herein to the contrary, if at any time the interest rate applicable to any Loan, together with all fees, charges and other amounts which are treated as interest on such Loan under applicable Law (collectively the "**Charges**"), shall exceed the maximum lawful rate (the "**Maximum Rate**") which may be contracted for, charged, taken, received or reserved by the Lender holding such Loan or participation in accordance with applicable Law, the rate of interest payable in respect of such Loan or participation hereunder, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate and, to the extent lawful, the interest and Charges that would have been payable in respect of such Loan or participation but were not payable as a result of the operation of this Section 10.09 shall be cumulated and the interest and Charges payable to such Lender in respect of other Loans or participations or periods shall be increased (but not above the Maximum Rate therefor) until such cumulated amount, together with interest thereon at the Federal Funds Effective Rate to the date of repayment, shall have been received by such Lender.

Section 10.10.  *Entire Agreement*.  This Agreement, the Agency Fee Letter and the other Loan Documents constitute the entire contract between the parties relative to the subject matter hereof.  Any other previous agreement among the parties with respect to the subject matter hereof is superseded by this Agreement and the other Loan Documents.  Nothing in this Agreement or in the other Loan Documents, expressed or implied, is intended to confer upon any Person (other than the parties hereto and thereto, their respective successors and assigns permitted hereunder and, to the extent expressly contemplated hereby, the Related Parties of each of the Lenders, Administrative Agent, the Collateral Agent and the Lenders) any rights, remedies, obligations or liabilities under or by reason of this Agreement or the other Loan Documents.

Section 10.11.  *WAIVER OF JURY TRIAL*.  EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS.  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN

DOCUMENTS, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS <u>SECTION 10.11</u>.

Section 10.12. *Severability.* In the event any one or more of the provisions contained in this Agreement or in any other Loan Document should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby (it being understood that the invalidity of a particular provision in a particular jurisdiction shall not in and of itself affect the validity of such provision in any other jurisdiction). The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

Section 10.13. *Counterparts.* This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original but all of which when taken together shall constitute a single contract, and shall become effective as provided in <u>Section 10.03</u>. Delivery of an executed signature page to this Agreement by facsimile or other electronic imaging transmission shall be as effective as delivery of a manually signed counterpart of this Agreement.

Section 10.14. *Headings.* Article and Section headings and the Table of Contents used herein are for convenience of reference only, are not part of this Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Agreement.

Section 10.15. *Jurisdiction; Consent to Service of Process.*

(a)     Each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the non-exclusive jurisdiction of the Bankruptcy Court or, in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, any New York State court or Federal court of the United States of America sitting in the Borough of Manhattan, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or the other Loan Documents, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in the Bankruptcy Court or, in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, such New York State or, to the extent permitted by law, such Federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b)     Each of the parties hereto hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or the other Loan Documents in the Bankruptcy Court. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(c)     Each party to this Agreement irrevocably consents to service of process in the manner provided for notices in <u>Section 10.01</u>. Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

(d)     Notwithstanding anything to the contrary herein, the Canadian Recognition Proceedings and the orders of the Canadian Court granted therein shall be subject to the exclusive jurisdiction of the Canadian Court.

Section 10.16.  *Confidentiality.*  Each of the Administrative Agent, the Collateral Agent, and the Lenders agrees to maintain the confidentiality of the Information (as defined below), except that Information may be disclosed (a) to its and its Affiliates' officers, directors, employees and agents, including accountants, financing sources, legal counsel and other advisors involved in the Transaction on a "need to know" basis (it being understood that the Persons to whom such disclosure is made will be informed of the confidential nature of such Information and instructed to keep such Information confidential), (b) to the extent requested by any regulatory authority or quasi-regulatory authority (such as the National Association of Insurance Commissioners), (c) to the extent required by applicable Laws or regulations or by any subpoena or similar legal process (and in such case, such Person shall promptly notify the Borrower of such disclosure), (d) in connection with the exercise of any remedies hereunder or under the other Loan Documents or any suit, action or proceeding relating to the enforcement of its rights hereunder or thereunder, (e) subject to an agreement containing provisions substantially the same as those of this Section 10.16, to (i) any actual or prospective assignee of or participant in any of its rights or obligations under this Agreement and the other Loan Documents or (ii) any actual or prospective counterparty (or its advisors) to any swap or derivative transaction relating to the Borrower or any Subsidiary or of their respective obligations, (f) with the prior written consent of the Borrower, (g) on a confidential basis to (x) any rating agency in connection with rating the Borrower or its Subsidiaries or the Facility or (y) the CUSIP Service Bureau or any similar agency in connection with the issuance and monitoring of CUSIP numbers with respect to the Facility, or (h) to the extent such Information becomes publicly available other than as a result of a material breach of this Section 10.16 or other confidentiality obligation owed to the Borrower or any of its Subsidiaries.  For the purposes of this Article, "**Information**" shall mean all information received from the Borrower and related to the Borrower, its business, other than any such information that was available to the Administrative Agent, the Collateral Agent or any Lender on a nonconfidential basis prior to its disclosure by the Borrower not in violation of any confidentiality or obligation owed to the Borrower and the Subsidiaries.  In addition, each Agent and each Lender may disclose the existence of this Agreement and the information about this Agreement to market data collectors, similar services providers to the lending industry, and service providers to the Agents and the Lenders in connection with the administration and management of this Agreement and the other Loan Documents.  Any Person required to maintain the confidentiality of Information as provided in this Section 10.16 shall be considered to have complied with its obligation to do so if such Person has exercised the same degree of care to maintain the confidentiality of such Information as such Person would accord its own confidential information.

Section 10.17.  *Reserved*.

Section 10.18.  *USA PATRIOT Act Notice.*  Each Lender and the Administrative Agent (for itself and not on behalf of any Lender) hereby notifies the Borrower that pursuant to the requirements of the USA PATRIOT Act, it is required to obtain, verify and record information that identifies the Borrower, which information includes the name and address of the Borrower and other information that will allow such Lender or the Administrative Agent, as applicable, to identify the Borrower in accordance with the USA PATRIOT Act.

Section 10.19.  *Collateral And Guaranty Matters*.  The Lenders irrevocably agree:

(a)  that any Lien on any property granted to or held by the Administrative Agent or the Collateral Agent under any Loan Document shall be automatically released (i) upon termination of all Commitments hereunder and payment in full of all Obligations (other than contingent obligations not yet accrued or payable), (ii) at the time the property subject to such Lien is disposed as part of or in connection with any disposition permitted hereunder or under any other Loan Document to any Person other than a Person required to grant a Lien to the Administrative Agent or the Collateral Agent under the Loan Documents, (iii) subject to Section 10.08, if the release of such Lien is approved, authorized or ratified in

writing by the Lenders, (iv) if the property subject to such Lien is owned by a Guarantor, upon release of such Guarantor from its obligations under its Guaranty pursuant to <u>Section 11.10</u>, (v) any such property constitutes Excluded Property or (vi) in accordance with the Prepetition ABL Intercreditor Agreement or any Chapter 11 Order;

(b)    [reserved]; and

(c)    that any Guarantor shall be automatically released from its obligations under the Guaranty as provided in <u>Section 11.10</u>.

Upon request by the Administrative Agent or the Collateral Agent at any time, the Lenders will confirm in writing the Administrative Agent's or the Collateral Agent's authority to release or subordinate its interest in particular types or items of property, or to release any Guarantor from its obligations under the Guaranty pursuant to this <u>Section 10.19</u>. In each case as specified in this <u>Section 10.19</u>, the Administrative Agent or the Collateral Agent will (and each Lender irrevocably authorizes the Administrative Agent and the Collateral Agent to), at the Borrower's expense, execute and deliver to the applicable Loan Party such documents as the Borrower may reasonably request to evidence the release or subordination of such item of Collateral from the assignment and security interest granted under the Collateral Documents, or to evidence the release of such Guarantor from its obligations under the Guaranty, in each case in accordance with the terms of the Loan Documents and this <u>Section 10.19</u>.

Section 10.20. *Limitation on Liability*. TO THE EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS: (A) NO INDEMNITEE SHALL BE LIABLE TO ANY PARTY FOR ANY INDIRECT, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES IN CONNECTION WITH THEIR RESPECTIVE ACTIVITIES RELATED TO THIS AGREEMENT, THE OTHER LOAN DOCUMENTS, THE TRANSACTIONS CONTEMPLATED THEREBY, THE TERM LOANS, OR OTHERWISE IN CONNECTION WITH THE FOREGOING; (B) WITHOUT LIMITING THE FOREGOING, NO INDEMNITEE SHALL BE SUBJECT TO ANY EQUITABLE REMEDY OR RELIEF, INCLUDING SPECIFIC PERFORMANCE OR INJUNCTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER LOAN DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED THEREBY; (C) NO INDEMNITEE SHALL HAVE ANY LIABILITY TO THE LOAN PARTIES, FOR DAMAGES OR OTHERWISE, ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER LOAN DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED THEREBY; AND (D) IN NO EVENT SHALL ANY INDEMNITEE'S LIABILITY TO THE LOAN PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER LOAN DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED THEREBY EXCEED ACTUAL DIRECT DAMAGES INCURRED BY THE LOAN PARTIES OF UP TO $10,000,000 IN THE AGGREGATE; *PROVIDED* THAT THE FOREGOING SHALL IN NO EVENT LIMIT THE LENDERS' INDEMNIFICATION OBLIGATIONS TO THE AGENT INDEMNITEES UNDER SECTION 10.05 OF THIS AGREEMENT; *PROVIDED FURTHER* THAT SUCH LIMITATION OF LIABILITY SHALL NOT APPLY TO LIABILITY RESULTING FROM FRAUD BY THE INDEMNITEES.

Section 10.21. *Payments Set Aside*. To the extent that any payment by or on behalf of the Borrower or any other Loan Party is made to any Agent or any Lender, or any Agent or any Lender exercises its right of setoff, and such payment or the proceeds of such setoff or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required (including pursuant to any settlement entered into by such Agent or such Lender in its discretion) to be repaid to a trustee, receiver or any other party, in connection with any proceeding under any Debtor Relief Law or otherwise, then (a) to the extent of such recovery, the obligation or part thereof originally intended to be satisfied shall, to the fullest extent possible under provisions of applicable Law, be revived and continued in full force and effect as if such payment

had not been made or such setoff had not occurred, and (b) each Lender severally agrees to pay to the Administrative Agent upon demand its applicable share of any amount so recovered from or repaid by any Agent, plus interest thereon from the date of such demand to the date such payment is made at a rate per annum equal to the applicable Federal Funds Effective Rate from time to time in effect.

Section 10.22. *No Advisory or Fiduciary Responsibility*.

(a)    In connection with all aspects of each transaction contemplated hereby, each Loan Party acknowledges and agrees, and acknowledges its Affiliates' understanding, that (i) the facilities provided for hereunder and any related arranging or other services in connection therewith (including in connection with any amendment, waiver or other modification hereof or of any other Loan Document) are an arm's-length commercial transaction between the Borrower and its Subsidiaries, on the one hand, and the Agents and the Lenders, on the other hand, and the Borrower and its Subsidiaries are capable of evaluating and understanding and understands and accepts the terms, risks and conditions of the transactions contemplated hereby and by the other Loan Documents (including any amendment, waiver or other modification hereof or thereof), (ii) the Agents, the Lenders and their respective Affiliates may be engaged in a broad range of transactions that involve interests that differ from, and may conflict with, those of the Borrower and its Affiliates, and none of the Agents or the Lenders has any obligation to disclose any of such interests by virtue of any advisory, agency or fiduciary relationship, and (iii) the Agents and the Lenders have not provided and will not provide any legal, accounting, regulatory or tax advice with respect to any of the transactions contemplated hereby (including any amendment, waiver or other modification hereof or of any other Loan Document) and the Loan Parties have consulted their own legal, accounting, regulatory and tax advisors to the extent they have deemed appropriate.

(b)    Each Loan Party acknowledges and agrees that each Lender and any of its affiliates may lend money to, invest in, and generally engage in any kind of business with, the Borrower, any of its Affiliates or any other person or entity that may do business with or own securities of any of the foregoing, all as if such Lender or Affiliate thereof were not a Lender (or an agent or any other person with any similar role under the Facilities) and without any duty to account therefor to any other Lender, the Borrower or any Affiliate of the foregoing.  Each Lender and any of its Affiliates may accept fees and other consideration from the Borrower or any of its Affiliates for services in connection with this Agreement, the Facilities, the commitment letter or otherwise without having to account for the same to any other Lender, the Borrower or any Affiliate of the foregoing.

Section 10.23. *Release*.  Each of the Loan Parties and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally, and irrevocably releases and forever discharges and acquits the Secured Parties and each of their respective Related Parties (solely in their capacities as such) (collectively, the "**Released Parties**"), from any and all liability to the Loan Parties (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Loan Documents, the Loans, the negotiation thereof, and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Agreement; provided that the release set forth in this section shall not release (i) any claims against or liabilities of a Released Party that a court of competent jurisdiction determines by a final non-appealable order to have directly and primarily resulted from such Released Party's bad faith, fraud,

gross negligence, or willful misconduct, or (ii) any Secured Party from honoring its/their obligations to the Loan Parties under the Loan Documents.

Section 10.24. *Process Agent*.  Each Guarantor irrevocably appoints Borrower, and Borrower hereby accepts such irrevocable appointment, as its agent and true and lawful attorney-in-fact in its name, place and stead to accept on behalf of such Guarantor and its Property and revenues service of copies of the summons and complaint and any other process which may be served in any such suit, action or proceeding brought in the Bankruptcy Court and/or the State of New York, and such Guarantor agrees that the failure of Borrower to give any notice of any such service of process to such Guarantor shall not impair or affect the validity of such service or, to the extent permitted by applicable law, the enforcement of any judgment based thereon.

Section 10.25. *Waiver of Immunity*.  To the extent that any Guarantor may be or become entitled to claim for itself or its property or revenues any immunity on the ground of sovereignty or the like from suit, court jurisdiction, attachment prior to judgment, attachment in aid of execution of a judgment or execution of a judgment, and to the extent that in any such jurisdiction there may be attributed such an immunity (whether or not claimed), such Guarantor hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity with respect to its obligations under this Agreement and the other Loan Documents to which it is a party.

Section 10.26. *DIP Order, Prepetition ABL Intercreditor Agreement and Senior ICA Provisions Control*.  To the fullest extent possible, the terms and provisions of this Agreement and the other Loan Documents shall be read together with the terms and provisions of the DIP Order, the Prepetition ABL Intercreditor Agreement and the Senior ICA Provisions, as applicable, so that the terms and provisions of this Agreement and the Loan Documents do not conflict with the terms and provisions of the DIP Order, the Prepetition ABL Intercreditor Agreement or the Senior ICA Provisions; *provided* that, notwithstanding the foregoing or anything herein to the contrary in this Agreement or the Loan Documents, (i) in the event of any conflict or inconsistency between the terms and provisions of this Agreement or any other Loan Document (on the one hand) and the DIP Order (on the other hand), the applicable terms and provisions of the DIP Order shall govern and control to the extent of such conflict or inconsistency, (ii) in the event of any conflict or inconsistency between the terms and provisions of this Agreement or any other Loan Document (on the one hand) and the terms and provisions of the Prepetition ABL Intercreditor Agreement (on the other hand), the applicable terms and provisions of the Prepetition ABL Intercreditor Agreement shall govern and control to the extent of such conflict or inconsistency and (iii) in the event of any conflict or inconsistency between the terms and provisions of this Agreement or any other Loan Document (on the one hand) and the Senior ICA Provisions (on the other hand), the applicable Senior ICA Provisions shall govern and control to the extent of such conflict or inconsistency; it being expressly understood and agreed that the inclusion in any Loan Document of terms and provisions or supplemental rights or remedies in favor of the Administrative Agent, Collateral Agent or Lenders not addressed in the DIP Order , the Prepetition ABL Intercreditor Agreement or the Senior ICA Provisions shall not be deemed to be in conflict with the DIP Order, the Prepetition ABL Intercreditor Agreement or the Senior ICA Provisions and all such additional terms, provisions, supplemental rights or remedies contained herein shall be given full force and effect.

Section 10.27. *Québec Security*. For the purposes of the grant of security under the laws of the Province of Quebec which may now or in the future be required to be provided by any Loan Party, the Administrative Agent is hereby irrevocably authorized and appointed by each of the Lenders hereto to act as hypothecary representative (within the meaning of Article 2692 of the Civil Code of Quebec) for all present and future Lenders (in such capacity, the "**Hypothecary Representative**") in order to hold any hypothec granted under the laws of the Province of Quebec and to exercise such rights and duties as are conferred upon the Hypothecary Representative under the relevant deed of hypothec and applicable Laws

(with the power to delegate any such rights or duties). The execution prior to the date hereof by the Administrative Agent in its capacity as the Hypothecary Representative of any deed of hypothec or other security documents made pursuant to the laws of the Province of Quebec, is hereby ratified and confirmed. Any Person who becomes a Lender or successor Administrative Agent shall be deemed to have consented to and ratified the foregoing appointment of the Administrative Agent as the Hypothecary Representative on behalf of all Secured Parties, including such Person and any Affiliate of such Person designated above as a Lender. For greater certainty, the Administrative Agent, acting as the Hypothecary Representative, shall have the same rights, powers, immunities, indemnities and exclusions from liability as are prescribed in favor of the Administrative Agent in this Agreement, which shall apply mutatis mutandis. In the event of the resignation of the Administrative Agent (which shall include its resignation as the Hypothecary Representative) and appointment of a successor Administrative Agent, such successor Administrative Agent shall also act as the Hypothecary Representative, as contemplated above.

## ARTICLE 11
### Guarantee

Section 11.01. *The Guarantee.*  Each Guarantor hereby jointly and severally with the other Guarantors guarantees, as a primary obligor and not as a surety to each Secured Party and their respective permitted successors and assigns, the prompt payment in full when due (whether at stated maturity, by required prepayment, declaration, demand, by acceleration or otherwise) of the principal of and interest (including any interest, fees, costs or charges that would accrue but for the provisions of (i) Title 11 of the United States Code after any bankruptcy or insolvency petition under Title 11 of the United States Code and (ii) any other Debtor Relief Laws, whether or not such items are allowed or allowable as a claim in any applicable proceeding) on the Loans made by the Lenders to, and the Term Notes or Delayed Draw Term Notes (if any) issued hereunder and held by each Lender of, the Borrower, and all other Obligations from time to time owing to the Secured Parties by any other Loan Party under any Loan Document strictly in accordance with the terms thereof (such obligations being herein collectively called the "**Guaranteed Obligations**").  The Guarantors hereby jointly and severally agree that if the Borrower or other Guarantor(s) shall fail to pay in full when due (whether at stated maturity, by acceleration or otherwise) any of the Guaranteed Obligations, the Guarantors will promptly pay the same in cash, without any demand or notice whatsoever, and that in the case of any extension of time of payment or renewal of any of the Guaranteed Obligations, the same will be promptly paid in full when due (whether at extended maturity, by acceleration or otherwise) in accordance with the terms of such extension or renewal.

Section 11.02. *Obligations Unconditional.*  The obligations of the Guarantors under Section 11.01 shall constitute a guaranty of payment and to the fullest extent permitted by applicable Law, are absolute, irrevocable and unconditional, joint and several, irrespective of the value, genuineness, validity, regularity or enforceability of the Guaranteed Obligations of the Borrower or any other Guarantor under this Agreement, any Term Notes or Delayed Draw Term Notes, as applicable, issued under this Agreement, or any other agreement or instrument referred to herein or therein, or any substitution, release or exchange of any other guarantee of or security for any of the Guaranteed Obligations, and, irrespective of any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge or defense of a surety or Guarantor (except for payment).  Without limiting the generality of the foregoing, it is agreed that the occurrence of any one or more of the following shall not alter or impair the liability of the Guarantors hereunder which shall remain absolute, irrevocable and unconditional under any and all circumstances as described above:

(a)    at any time or from time to time, without notice to the Guarantors, to the extent permitted by Law, the time for any performance of or compliance with any of the Guaranteed Obligations shall be extended, or such performance or compliance shall be waived;

(b)        any of the acts mentioned in any of the provisions of this Agreement, the Term Notes or the Delayed Draw Term Notes, if any, or any other agreement or instrument referred to herein or therein shall be done or omitted;

(c)        the maturity of any of the Guaranteed Obligations shall be accelerated, or any of the Guaranteed Obligations shall be amended in any respect, or any right under the Loan Documents or any other agreement or instrument referred to herein or therein shall be amended or waived in any respect or any other guarantee of any of the Guaranteed Obligations or any security therefor shall be released or exchanged in whole or in part or otherwise dealt with;

(d)        any Lien or security interest granted to, or in favor of, any Secured Party or Agent as security for any of the Guaranteed Obligations shall fail to be perfected; or

(e)        the release of any other Guarantor pursuant to Section 11.10.

Section 11.03. *Certain Waivers, Etc.*   The Guarantors hereby expressly waive (to the extent permitted by applicable Law) diligence, presentment, demand of payment, protest and, to the extent permitted by Law, all notices whatsoever, and any requirement that any Secured Party exhaust any right, power or remedy or proceed against the Borrower under this Agreement, the Term Notes or the Delayed Draw Term Notes issued hereunder, if any, or any other agreement or instrument referred to herein or therein, or against any other person under any other guarantee of, or security for, any of the Guaranteed Obligations.  The Guarantors waive, to the extent permitted by Law, any and all notice of the creation, renewal, extension, waiver, termination or accrual of any of the Guaranteed Obligations and notice of or proof of reliance by any Secured Party upon this Guarantee or acceptance of this Guarantee, and the Guaranteed Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Guarantee, and all dealings between the Borrower and the Secured Parties shall likewise be conclusively presumed to have been had or consummated in reliance upon this Guarantee. This Guarantee shall be construed as a continuing, absolute, irrevocable and unconditional guarantee of payment without regard to any right of offset with respect to the Guaranteed Obligations at any time or from time to time held by Secured Parties, and the obligations and liabilities of the Guarantors hereunder shall not be conditioned or contingent upon the pursuit by the Secured Parties or any other Person at any time of any right or remedy against the Borrower or against any other Person which may be or become liable in respect of all or any part of the Guaranteed Obligations or against any collateral security or guarantee therefor or right of offset with respect thereto.  This Guarantee shall remain in full force and effect and be binding in accordance with and to the extent of its terms upon the Guarantors and the successors and permitted assigns thereof, and shall inure to the benefit of the Secured Parties, and their respective successors and permitted assigns, notwithstanding that from time to time during the term of this Agreement there may be no Guaranteed Obligations outstanding.  Each Guarantor waives (to the extent permitted by Law) any rights and defenses that are or may become available to it by reason of §§ 2787 to 2855, inclusive, and §§ 2899 and 3433 of the California Civil Code.  As provided in Section 10.07, the provisions of this Article 11 shall be governed by, and construed in accordance with, the laws of the State of New York.  The foregoing waivers and the provisions hereinafter set forth in this Article 11 which pertain to California law are included solely out of an abundance of caution, and shall not be construed to mean that any of the above-referenced provisions of California law are in any way applicable to this Article 11, to any other provision of this Agreement or to the Obligations.

Section 11.04. *Reinstatement.*   The obligations of the Guarantors under this Article 11 shall be automatically reinstated if and to the extent that for any reason any payment by or on behalf of the Borrower or other Loan Party in respect of the Guaranteed Obligations is rescinded or must be otherwise restored by any holder of any of the Guaranteed Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise.

Section 11.05. *Subrogation; Subordination.*    Each Guarantor hereby agrees that until the indefeasible payment and satisfaction in full in cash of all Guaranteed Obligations (other than contingent obligations) and the expiration and termination of the Commitments of the Lenders under this Agreement, it shall waive any claim and shall not exercise any right or remedy, direct or indirect, arising by reason of any performance by it of its guarantee in <u>Section 11.01</u>, whether by subrogation, contribution or otherwise, against the Borrower or any other Guarantor of any of the Guaranteed Obligations or any security for any of the Guaranteed Obligations.  Any Indebtedness of any Loan Party to any Person that is not a Loan Party permitted pursuant to <u>Section 7.03(b)</u> or <u>7.03(d)</u> shall be subordinated to such Loan Party's Obligations in a manner reasonably acceptable to the Lenders.

Section 11.06. *Remedies.*    The Guarantors jointly and severally agree that, as between the Guarantors and the Lenders, the obligations of the Borrower under this Agreement, the Term Notes or the Delayed Draw Term Notes issued hereunder, if any, may be declared to be forthwith due and payable as provided in <u>Section 8.02</u> (and shall be deemed to have become automatically due and payable in the circumstances provided in <u>Section 8.02</u>) for purposes of <u>Section 11.01</u>, notwithstanding any stay, injunction or other prohibition preventing such declaration (or such obligations from becoming automatically due and payable) as against the Borrower and that, in the event of such declaration (or such obligations being deemed to have become automatically due and payable), such obligations (whether or not due and payable by the Borrower) shall forthwith become due and payable by the Guarantors for purposes of <u>Section 11.01</u>, subject to the terms and conditions of the DIP Order, the applicable Canadian Orders, the Senior ICA Provisions and the Prepetition ABL Intercreditor Agreement.

Section 11.07. *Instrument for the Payment of Money.*    Each Guarantor hereby acknowledges that the guarantee in this <u>Article 11</u> constitutes an instrument for the payment of money, and consents and agrees that any Secured Party or Agent, at its sole option, in the event of a dispute by such Guarantor in the payment of any moneys due hereunder, shall have the right to bring a motion-action under New York CPLR Section 3213.

Section 11.08. *Continuing Guarantee.*  The guarantee in this <u>Article 11</u> is a continuing guarantee of payment, and shall apply to all Guaranteed Obligations whenever arising.

Section 11.09. *General Limitation on Guarantee Obligations.*    In any action or proceeding involving any state corporate, limited partnership or limited liability company law, or any applicable state, provincial, territorial, federal or foreign bankruptcy, insolvency, reorganization or other Law affecting the rights of creditors generally, if the obligations of any Guarantor under <u>Section 11.01</u> would otherwise be held or determined to be void, voidable, invalid or unenforceable, or subordinated to the claims of any other creditors, on account of the amount of its liability under <u>Section 11.01</u>, then, notwithstanding any other provision to the contrary, the amount of such liability shall, without any further action by such Guarantor, any Loan Party or any other Person, be automatically limited and reduced to the highest amount (after giving effect to the right of contribution established in <u>Section 11.11</u>) that is valid and enforceable and not subordinated to the claims of other creditors as determined in such action or proceeding.

Section 11.10. *Release of Guarantors.*  If, in compliance with the terms and provisions of the Loan Documents, all or substantially all of the Equity Interests or property of any Guarantor are sold or otherwise transferred to a Person or Persons none of which is a Loan Party (any such Guarantor, a "**Transferred Guarantor**"), such Transferred Guarantor shall, upon the consummation of such sale or transfer or other transaction, be automatically released from its obligations under this Agreement (including under <u>Section 10.05</u> hereof) and its obligations to pledge and grant any Collateral owned by it pursuant to any Collateral Document and, in the case of a sale of all or substantially all of the Equity Interests of the Transferred Guarantor, the pledge of such Equity Interests to the Collateral Agent pursuant to the Collateral Documents shall be automatically released, and, the Collateral Agent shall take such actions as are necessary to effect

each release described in this Section 11.10 in accordance with the relevant provisions of the Collateral Documents; *provided*, that no Guarantor shall be released as provided in this paragraph if such Guarantor continues to be a guarantor in respect of any Prepetition Indebtedness.

When all Commitments hereunder have terminated, and all Loans or other Obligations hereunder which are accrued and payable have been paid or satisfied, this Agreement and the Guarantees made herein shall automatically terminate with respect to all Obligations, except with respect to Obligations that expressly survive such repayment pursuant to the terms of this Agreement.

Section 11.11. *Right of Contribution.* Each Guarantor hereby agrees that to the extent that a Guarantor shall have paid more than its proportionate share of any payment made hereunder, such Guarantor shall be entitled to seek and receive contribution from and against any other Guarantor hereunder which has not paid its proportionate share of such payment. Each Guarantor's right of contribution shall be subject to the terms and conditions of Section 11.05. The provisions of this Section 11.11 shall in no respect limit the obligations and liabilities of any Guarantor to the Administrative Agent and the Secured Parties, and each Guarantor shall remain liable to the Administrative Agent and the Secured Parties for the full amount guaranteed by such Guarantor hereunder.

Section 11.12. *Additional Guarantor Waivers and Agreements.*

(a) Each Guarantor understands and acknowledges that if the Collateral Agent or any other Secured Party forecloses judicially or nonjudicially against any real property security for the Obligations, that foreclosure could impair or destroy any ability that such Guarantor may have to seek reimbursement, contribution, or indemnification from the Borrower or others based on any right such Guarantor may have of subrogation, reimbursement, contribution, or indemnification for any amounts paid by such Guarantor under the Guaranty. Each Guarantor further understands and acknowledges that in the absence of this paragraph, such potential impairment or destruction of such Guarantor's rights, if any, may entitle such Guarantor to assert a defense to this Guaranty based on Section 580d of the California Code of Civil Procedure as interpreted in Union Bank v. Gradsky, 265 Cal. App. 2d 40 (1968). By executing this Guaranty, each Guarantor freely, irrevocably, and unconditionally: (i) waives (to the extent permitted by Law) and relinquishes that defense and agrees that such Guarantor will be fully liable under this Guaranty even though the Collateral Agent or any other Secured Party may foreclose, either by judicial foreclosure or by exercise of power of sale, any deed of trust securing the Obligations; (ii) agrees that such Guarantor will not assert that defense in any action or proceeding which the Administrative Agent, the Collateral Agent or any other Secured Party may commence to enforce this Guaranty; (iii) acknowledges and agrees that the rights and defenses waived by such Guarantor in this Guaranty include any right or defense that such Guarantor may have or be entitled to assert based upon or arising out of any one or more of §§ 580a, 580b, 580d, or 726 of the California Code of Civil Procedure or § 2848 of the California Civil Code; and (iv) acknowledges and agrees that the Secured Parties are relying on this waiver in creating the Obligations, and that this waiver is a material part of the consideration which the Secured Parties are receiving for creating the Obligations.

(b) Each Guarantor waives (to the extent permitted by Law) all rights and defenses that such Guarantor may have because any of the Obligations is secured by real property. This means, among other things: (i) the Administrative Agent, the Collateral Agent and the other Secured Parties may collect from such Guarantor without first foreclosing on any real or personal property Collateral pledged by the other Loan Parties; and (ii) if the Collateral Agent or any other Secured Party forecloses on any real property Collateral pledged by the other Loan Parties: (A) the amount of the Obligations may be reduced only by the price for which that Collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (B) the Administrative Agent, the Collateral Agent and the other Secured Parties may collect from such Guarantor even if the Secured Parties, by foreclosing on the real property Collateral, have

destroyed any right such Guarantor may have to collect from the Borrower.  This is an unconditional and irrevocable waiver of any rights and defenses such Guarantor may have because any of the Obligations is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon § 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

(c)    Each Guarantor waives (to the extent permitted by Law) any right or defense it may have at law or equity, including California Code of Civil Procedure § 580a, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure.

## ARTICLE 12
*RESERVED*


## ARTICLE 13
SECURITY AND ADMINISTRATIVE PRIORITY

Section 13.01.  *[Reserved].*

Section 13.02.  *[Reserved].*

Section 13.03.  *[Reserved].*

Section 13.04.  *Collateral; Grant of Lien and Security Interest.*

(i)    Pursuant to the DIP Order and in accordance with the terms thereof, and, in the case of the Canadian Collateral, the Canadian DIP Recognition Order, as security for the full and timely payment and performance of all of the Obligations, each of the Loan Parties hereby collaterally assigns, pledges and grants to the Collateral Agent, for the benefit of itself, the Administrative Agent, the Lenders, the Indemnitees and any other holders of the Obligations (collectively, the "**Secured Parties**"), a security interest in, and Lien on, the Collateral, which is hereby acknowledged to include all of the property, assets or interests in property or assets of such Person, of any kind or nature whatsoever, real or personal, tangible and intangible now existing or hereafter acquired or created, including all property of the "estate" (within the meaning of the Bankruptcy Code) of the Loan Parties, and all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, general intangibles, payment intangibles, intangibles, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, leases, all of the issued and outstanding Equity Interests entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and all of the issued and outstanding Equity Interests not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) of each Subsidiary of the Borrower, all of the Equity Interests of all other Persons that are not Subsidiaries directly owned by the Borrower, money, investment property, deposit accounts, all commercial tort claims and other causes of action other than Avoidance Actions, the proceeds of all Avoidance Actions (excluding for the avoidance of doubt, any claims and the causes of actions themselves), all Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions and profits of any of Collateral described above, in each case, other than Excluded Property, but including the proceeds thereof.

(ii)    The security interests and Liens in favor of the Collateral Agent in the Collateral shall be effective immediately upon the entry of the Interim Order and shall continue in effect (or be effective, if applicable) upon the entry of the Final Order and subject and subordinate only to (i) the Carve Out, (ii) solely with respect to the Canadian Collateral, the Canadian Priority Charges (in a maximum amount not to exceed CDN \$4,200,000) pursuant to the applicable Canadian Orders, and (iii) the Liens

described in the DIP Order and the Canadian DIP Recognition Order and the other applicable Canadian Orders.  For the avoidance of doubt, the security interests and Liens in favor of the Collateral Agent in the Collateral shall be junior in all respects to the Liens securing the Prepetition B-2 Obligations and the Postpetition B-2 Obligations and to any B-2 Adequate Protection Liens (as defined in the DIP Order) (other than with respect to Unencumbered Assets, on which the Liens of the Collateral Agent shall be senior to the Liens securing the Postpetition B-2 Indebtedness and the adequate protection Liens of the Prepetition Secured Parties, and the DIP Proceeds Account, on which the Liens in favor of the Collateral Agent shall be pari passu with the Lien securing the Postpetition B-2 Indebtedness on such DIP Proceeds Account (it being understood that the Prepetition Secured Parties have no Lien on the DIP Proceeds Account)).  Such Liens and security interests and their priority shall remain in effect until the Commitments shall have been terminated and all Obligations (other than contingent obligations not claimed) shall have been paid in full. Notwithstanding anything to the contrary herein, nothing in this Section 13.04(ii) is intended to or does conflict with or override the UST Adequate Protection Order and in the event of any inconsistencies between this Section 13.04(ii) and the UST Adequate Protection Order, the UST Adequate Protection Order shall govern.

(iii)    Notwithstanding anything herein to the contrary or in the other Loan Documents or the DIP Order to the contrary, it is expressly understood and agreed that the Liens and Claims in respect of the Delayed Draw Term Commitment shall be junior and subordinated (including in right of payment) in all respects to the Liens and Claims (including any adequate protections Liens and Claims) of the Prepetition Secured Parties and to the Liens and Claims of the B-2 Lenders and B-2 Agent under the Postpetition B-2 Loan Documents, including, for the avoidance of doubt, to the payment and enforcement of rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties and the UST Secured Parties, which right with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth in the Postpetition B-2 Loan Documents, the Prepetition B-2 Loan Documents and the DIP Order.  For the avoidance of doubt, the administrative expense claims of the Collateral Agent and the Secured Parties shall be junior in all respects to the administrative expenses claims of the B-2 Secured Parties in respect of the Postpetition B-2 Obligations (other than solely with respect to proceeds in the DIP Proceeds Account, with respect to which the administrative expense claims of the Collateral Agent and the Secured Parties shall be pari passu with those B-2 Secured Parties).

(iv)    [Reserved].

Section 13.05.  *Administrative Priority.*  Subject to the terms and priorities set forth in the DIP Order, each Loan Party agrees that its Obligations shall constitute allowed administrative expenses in the Chapter 11 Cases, having priority over all administrative expenses of and unsecured claims against such Person now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, subject only to prior payment of the Carve-Out and the Canadian Priority Charges pursuant to the applicable Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders, to the prior payment of the B-2 Obligations and to the other terms and conditions of the DIP Order and the applicable Canadian Orders.

Section 13.06.  *Grants, Rights and Remedies.*  The Liens and security interests granted pursuant to clause (i) of Section 13.04 and the administrative priority granted pursuant to Section 13.05 may be independently granted by the Loan Documents, the DIP Order, the applicable Canadian Orders and by other Loan Documents hereafter entered into.  Subject to Section 10.26, this Agreement, the DIP Order and such other Loan Documents supplement each other, and the grants, priorities, rights and remedies of the Administrative Agent, the Collateral Agent and the Lenders hereunder and thereunder are cumulative.

Section 13.07.  *No Filings Required.*  The Liens and security interests referred to herein shall be deemed valid and perfected by entry of the Interim Order or the Final Order, as the case may be and, in the case of the Canadian Collateral, the Canadian DIP Recognition Order.  The Collateral Agent shall not be required to file any financing statements, mortgages, notices of Lien or similar instruments in any jurisdiction or filing office, take possession or control of any Collateral, or take any other action in order to validate or perfect the Lien and security interest granted by or pursuant to this Agreement, the DIP Order, the Canadian DIP Recognition Order, or any other Loan Document.

Section 13.08.  *Survival.*  Except as provided herein, in the Canadian DIP Recognition Order and in the DIP Order, the Liens, lien priority, administrative priorities and other rights and remedies granted to the Administrative Agent and the Lenders pursuant to this Agreement, the DIP Order, the Canadian DIP Recognition Order and the other Loan Documents (specifically including, but not limited to, the existence, perfection and priority of the Liens and security interests provided herein and therein, and the administrative priority provided herein and therein) shall not be modified, altered or impaired in any manner by any other financing or extension of credit or incurrence of Indebtedness by the Loan Parties (pursuant to Section 364 of the Bankruptcy Code or otherwise), or by any dismissal or conversion of any of the Chapter 11 Cases or the Canadian Recognition Proceedings, or by any other act or omission whatsoever.  Without limitation, notwithstanding any such order, financing, extension, incurrence, dismissal, conversion, act or omission:

(i)    except to the extent of the Carve-Out and the Canadian Priority Charges pursuant to the applicable Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders, no fees, charges, disbursements, costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or the Canadian Recognition Proceedings or any conversion of the same or in any other proceedings related thereto, and no priority claims, are or will be prior to or on parity with any claim of the Administrative Agent and the Lenders against the Loan Parties in respect of any Obligation, subject, in each case, to the claims (including any adequate protection claims) of the B-2 Secured Parties and the terms of the DIP Order and the applicable Canadian Orders;

(ii)    the Liens in favor of the Collateral Agent and the Lenders set forth in <u>Section 13.04</u>, the DIP Order and the Canadian DIP Recognition Order shall constitute valid and perfected Liens and security interests, with the priority as set forth in the DIP Order (and with respect to the Canadian Collateral, with the priority as set forth in the applicable Canadian Orders), and shall be prior to all other Liens and security interests, now existing or hereafter arising, in favor of any other creditor or any other Person whatsoever (other than the Carve-Out and the Canadian Priority Charges), in each case subject to and in accordance with the DIP Order and the applicable Canadian Orders; and

(iii)    subject to the DIP Order, the Liens in favor of the Collateral Agent and the Lenders set forth herein and in the other Loan Documents, the DIP Order and the applicable Canadian Orders shall continue to be valid and perfected without the necessity that the Administrative Agent file financing statements or mortgages, take possession or control of any Collateral, or otherwise perfect its Lien under applicable non-bankruptcy law.

Notwithstanding anything to the contrary in this Agreement, the other Loan Documents or the DIP Order, it is expressly understood and agreed that (x) no prepayment, repayment, repurchase, or exchange of borrowings under the Junior DIP Facility shall occur until all B-2 Obligations have first been indefeasibly paid in full in cash and any such prepayment, repayment, repurchase or exchange shall otherwise be consistent with the priorities for liens and claims securing the Junior DIP Facility as set forth in the DIP Order and (y) the Liens and Claims in respect of the Delayed Draw Term Commitment shall be junior and subordinated (including in right of payment) in all respects to the Liens and Claims (including any adequate protections Liens and Claims) of the Prepetition Secured Parties and to the Liens and Claims of the B-2 Lenders and B-2 Agent under the Postpetition B-2 Loan Documents, including, for the avoidance of doubt,

to the payment and enforcement of rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties and the UST Secured Parties, which right with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth herein, in the Postpetition B-2 Loan Documents, the Prepetition B-2 Loan Documents and the DIP Order.

[*Signature Pages Follow*]

**APPENDIX E**
**TO JUNIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION**
**CREDIT AGREEMENT**

### Chapter 11 Milestones

1) By no later than thirty (30) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Bidding Procedures Order, in form and substance reasonably satisfactory to the Lenders.

2) By no later than fifteen (15) calendar days after the Final Order Entry Date, the Borrower, in its capacity as foreign representative on behalf of the Debtors, shall have filed a motion with the Canadian Court for the recognition of, and the Canadian Court shall have issued, the Canadian Final DIP Recognition Order.

3) By no later than forty-five (45) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Final Order, in form and substance satisfactory in all material respects to the Lenders and the Agents.

4) By no later than ninety (90) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids for the B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, Net Proceeds at least equal to $250,000,000.

5) By (A) no earlier than one-hundred twenty (120) calendar days after the Petition Date (which may be extended to one-hundred fifty (150) calendar days after the Petition Date with (i) the consent of the Prepetition ABL Agent, the B-2 Agent and the UST Secured Parties (in each case such consent not to be unreasonably withheld) and (ii) the consent of the Lenders in their sole discretion)) and (B) not later than one-hundred and fifty (150) calendar days after the Petition Date (which may be extended to one-hundred and eighty (180) calendar days after the Petition Date with (i) the consent of the Prepetition ABL Agent, the B-2 Agent and the UST Secured Parties (in each case such consent not to be unreasonably withheld) and (ii) the consent of the Lenders in their sole discretion)), the Debtors shall have consummated one or more Dispositions of all or substantially all of their assets in accordance with the Bidding Procedures Order that generates Net Proceeds in respect of the B-2 Priority Collateral equal to at least 100% of the sum of the aggregate amount of Obligations outstanding hereunder as of such date and the B-2 Obligations and shall have indefeasibly repaid both the B-2 Obligations and the Obligations outstanding hereunder in full in cash.

**EXECUTION VERSION**

**Schedule 1.01(b)**

**Excluded Subsidiaries**

1. OPK Insurance Co. Ltd.

2. YRC Logistics Asia Limited

3. PT Meridian IQ Indonesia International

4. YRC Services S. de R.L. de C.V.

5. Roadway Express, S.A. de C.V.

6. Transcontinental Lease, S. de R.L. de C.V.

7. YRC Transportation, S.A. de C.V.

**Schedule 1.01(c)**

**Owned or Ground Leased Real Property, including, Owned Locations of Inventory, Equipment and Fixtures of the Grantor**

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Buffalo, NY | 6640 Transit Road | Williamsville | NY | 14221 | New Penn Motor Express LLC | Fee-Owned |
| Harrisburg, PA | 475 Terminal Road | Camp Hill | PA | 17011 | New Penn Motor Express LLC | Fee-Owned |
| Philadelphia, PA | 2300 Garry Road | Cinnaminson | NJ | 08077 | New Penn Motor Express LLC | Fee-Owned |
| Pittsburgh, PA | 2950 Grand Avenue | Neville Island | PA | 15225 | New Penn Motor Express LLC | Fee-Owned |
| Providence, RI | 2110 Plainfield Pike | Cranston | RI | 02910 | New Penn Motor Express LLC | Fee-Owned |
| Reading, PA | 3725 Pottsville Pike | Reading | PA | 19605 | New Penn Motor Express LLC | Fee-Owned |
| Rochester, NY | 35 Transport Drive | Rochester | NY | 14623 | New Penn Motor Express LLC | Fee-Owned |
| Southington, CT | 130 Canal Street | Southington | CT | 06489 | New Penn Motor Express LLC | Fee-Owned |
| Syracuse, NY | 7173 Schuyler Road | East Syracuse | NY | 13057 | New Penn Motor Express LLC | Fee-Owned |
| Trenton, NJ | 15 Thomas J. Rhodes Industrial | Mercerville | NJ | 08619 | New Penn Motor Express LLC | Fee-Owned |
| Akron, OH | 3140 Massillon Road | Akron | OH | 44312 | USF Holland LLC | Fee-Owned |
| Atlanta, GA | 4700 Highway 42 | Ellenwood | GA | 30294 | USF Holland LLC | Fee-Owned |
| Birch Run, MI | 11740 Dixie Highway | Birch Run | MI | 48415 | USF Holland LLC | Fee-Owned |
| Buffalo, NY | 6650 Transit Road | Williamsville | NY | 14221 | USF Holland LLC | Fee-Owned |
| Charlotte, NC | 5201 Sunset Road | Charlotte | NC | 28213 | USF Holland LLC | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Chicago, IL | 8601 W 53rd Street | McCook | IL | 60525 | USF Holland LLC | Fee-Owned |
| Cleveland, OH | 10720 Memphis Avenue | Brooklyn | OH | 44144 | USF Holland LLC | Fee-Owned |
| Columbia, SC | 3705 Highway 321 | West Columbia | SC | 29172 | USF Holland LLC | Fee-Owned |
| Columbus, OH | 4800 Journal Street | Columbus | OH | 43228 | USF Holland LLC | Fee-Owned |
| Danville, IL | 72 Eastgate Drive | Danville | IL | 61832 | USF Holland LLC | Fee-Owned |
| Dayton, OH | 2700 Valley Pike | Dayton | OH | 45404 | USF Holland LLC | Fee-Owned |
| Des Moines, IA | 6144 NE 22nd Street | Des Moines | IA | 50313 | USF Holland LLC | Fee-Owned |
| Detroit, MI | 27411 Wick Road | Romulus | MI | 48174 | USF Holland LLC | Fee-Owned |
| Evansville, IN | 8901 N Kentucky Avenue | Evansville | IN | 47711 | USF Holland LLC | Fee-Owned |
| Fort Wayne, IN | 4320 Merchant Road | Fort Wayne | IN | 46818 | USF Holland LLC | Fee-Owned |
| Gaylord, MI | 1830 Calkins Road | Gaylord | MI | 49735 | USF Holland LLC | Fee-Owned |
| Huntington, OH | 95 Holland Drive | Gallipolis | OH | 45631 | USF Holland LLC | Fee-Owned |
| Indianapolis, IN | 2530 S Tibbs Avenue | Indianapolis | IN | 46241 | USF Holland LLC | Fee-Owned |
| Jackson, MI | 1059 Hurst Road | Jackson | MI | 49201 | USF Holland LLC | Fee-Owned |
| Joplin, MO | 2702 Newman Road | Joplin | MO | 64801 | USF Holland LLC | Fee-Owned |
| Kansas City, KS | 9711 State Avenue | Kansas City | KS | 66111 | USF Holland LLC | Fee-Owned |
| Knoxville, TN | 5409 N. National Drive | Knoxville | TN | 37914 | USF Holland LLC | Fee-Owned |
| Lincoln, IL | 700 NE Arch Street | Atlanta | IL | 61723 | USF Holland LLC | Fee-Owned |
| Louisville, KY | 4885 Keystone Boulevard | Jeffersonville | IN | 47130 | USF Holland LLC | Fee-Owned |
| Memphis, TN | 8100 W Sandidge Road | Olive Branch | MS | 38654 | USF Holland LLC | Fee-Owned |
| Nashville, TN | 500 Oak Bluff Lane | Goodlettsville | TN | 37072 | USF Holland LLC | Fee-Owned |
| Omaha, NE | 3219 Nebraska Avenue | Council Bluffs | IA | 51501 | USF Holland LLC | Fee-Owned |
| Owatonna, MN | 200 32nd Avenue NW | Owatonna | MN | 55060 | USF Holland LLC | Fee-Owned |
| St. Louis, MO | 24 Gateway Commerce Center Drive | Edwardsville | IL | 62025 | USF Holland LLC | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Toledo, OH | 20820 Midstar Drive | Bowling Green | OH | 43402 | USF Holland LLC | Fee-Owned |
| Wausau, WI | 501 Spring Road | Mosinee | WI | 54455 | USF Holland LLC | Fee-Owned |
| Wheeling, IL | 1100 Chaddick Drive | Wheeling | IL | 60090 | USF Holland LLC | Fee-Owned |
| Worthington, MN | 172 Industrial Parkway | Jackson | MN | 56143 | USF Holland LLC | Fee-Owned |
| Youngstown, OH | 10855 Market Street | N Lima | OH | 44452 | USF Holland LLC | Fee-Owned |
| Bakersfield, CA | 4901 Lisa Marie Court | Bakersfield | CA | 93313 | USF Reddaway Inc. | Fee-Owned |
| Burlington, WA[1] | 9501 24th Pl West | Everett | WA | 98204 | USF Reddaway Inc. | Leased Land, Fee-Owned Building |
| Fresno, CA | 4556 S Chestnut Avenue | Fresno | CA | 93725 | USF Reddaway Inc. | Fee-Owned |
| Lake Havasu City, AZ | 1951 San Juan Drive | Lake Havasu City | AZ | 86403 | USF Reddaway Inc. | Fee-Owned |
| Medford, OR | 4000 Hamrick Road | Central Point | OR | 97502 | USF Reddaway Inc. | Fee-Owned |
| Phoenix, AZ | 3045 S 43rd Avenue | Phoenix | AZ | 85009 | USF Reddaway Inc. | Fee-Owned |
| Sacramento, CA | 620 Harbor Boulevard | W Sacramento | CA | 95691 | USF Reddaway Inc. | Fee-Owned |
| Salt Lake City, UT | 4375 W 1385 S | Salt Lake City | UT | 84104 | USF Reddaway Inc. | Fee-Owned |
| Akron, OH | 1275 Ohio Ave | Copley | OH | 44321 | YRC Inc. | Fee-Owned |
| Albany, NY | 37 Frontage Road | Glenmont | NY | 12077 | YRC Inc. | Fee-Owned |
| Albuquerque, NM | 900 64th Street NW | Albuquerque | NM | 87121 | YRC Inc. | Fee-Owned |
| Alexandria, LA | 333 N 3rd Street | Alexandria | LA | 71301 | YRC Inc. | Fee-Owned |
| Atlantic City, NJ | 1641 Eden Road | Millville | NJ | 08332 | YRC Inc. | Fee-Owned |
| Augusta, GA | 4200 Wheeler Road | Martinez | GA | 30907 | YRC Inc. | Fee-Owned |
| Austin, TX | 9018 Tuscany Way | Austin | TX | 78754 | YRC Inc. | Fee-Owned |
| Baltimore, MD | 6311 E Lombard Street | Baltimore | MD | 21224 | YRC Inc. | Fee-Owned |
| Baton Rouge, LA | 956 Hwy 190 West | Port Allen | LA | 70767 | YRC Inc. | Fee-Owned |

---

[1]    The property at 9501 24th Pl West, Everett, WA 98204 is a mixture of leased land and a fee-owned building.

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Bellows Falls, VT | 17 Transport Park | Bellows Falls | VT | 05101 | YRC Inc. | Fee-Owned |
| Birmingham, AL | 3518 Industrial Pkwy | Birmingham | AL | 35217 | YRC Inc. | Fee-Owned |
| Boston, MA | 95 Concord Street | North Reading | MA | 01864 | YRC Inc. | Fee-Owned |
| Bowling Green, KY | 300 New Porter Pike | Bowling Green | KY | 42103 | YRC Inc. | Fee-Owned |
| Buffalo, NY | 66 Milens Road | Tonawanda | NY | 14150 | YRC Inc. | Fee-Owned |
| Burlington, VT | 199 Krupp Drive | Williston | VT | '05495 | YRC Inc. | Fee-Owned |
| Charleston, SC | 2243 Wren Street | Charleston | SC | 29418 | YRC Inc. | Fee-Owned |
| Chattanooga, TN | 345 Roadway Drive | Ringgold | GA | 30736 | YRC Inc. | Fee-Owned |
| Chicago Heights, IL | 2000 East Lincoln Highway | Chicago Heights | IL | 60411 | YRC Inc. | Fee-Owned |
| Chicago North, IL | 1000 Chaddick Drive | Wheeling | IL | 60090 | YRC Inc. | Fee-Owned |
| Cincinnati, OH | 10074 Princeton-Glendale Road | West Chester | OH | 45246 | YRC Inc. | Fee-Owned |
| Clarksburg, WV | 6399 Saltwell Road | Bridgeport | WV | 26330 | YRC Inc. | Fee-Owned |
| Cleveland, OH | 5250 Brecksville Road | Richfield | OH | 44286 | YRC Inc. | Fee-Owned |
| Columbia, MO | 8989 E Columbus Court | Columbia | MO | 65201 | YRC Inc. | Fee-Owned |
| Columbia, SC | 1308 Pineview Drive | Columbia | SC | 29209 | YRC Inc. | Fee-Owned |
| Columbus, OH | 5400 Fisher Road | Columbus | OH | 43228 | YRC Inc. | Fee-Owned |
| Dallas, TX | 200 North Beltline Road | Irving | TX | 75061 | YRC Inc. | Fee-Owned |
| Dayton, OH | 2801 Valley Pike | Dayton | OH | 45404 | YRC Inc. | Fee-Owned |
| Decatur, AL | 1901 Highway 20 West | Decatur | AL | 35601 | YRC Inc. | Fee-Owned |
| Detroit, MI | 22701 Van Born Road | Taylor | MI | 48180 | YRC Inc. | Fee-Owned |
| Duluth, MN | 4425 W First Street | Duluth | MN | 55807 | YRC Inc. | Fee-Owned |
| Eau Claire, WI | 3617 McIntyre Avenue | Eau Claire | WI | 54703 | YRC Inc. | Fee-Owned |
| El Paso, TX | 1330 Henry Brennan Drive | El Paso | TX | 79936 | YRC Inc. | Fee-Owned |
| Erie, PA | 3111 McCain Avenue | Erie | PA | 16510 | YRC Inc. | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Fargo, ND | 2502 7th Avenue N | Fargo | ND | 58102 | YRC Inc. | Fee-Owned |
| Fayetteville, NC | 1061 River Road | Fayetteville | NC | 28301 | YRC Inc. | Fee-Owned |
| Flagstaff, AZ | 1814 N Main Street | Flagstaff | AZ | 86004 | YRC Inc. | Fee-Owned |
| Florence, SC | 2257 S Main Street | Florence | SC | 29501 | YRC Inc. | Fee-Owned |
| Fort Myers, FL | 2635 Rockfill Road | Fort Myers | FL | 33916 | YRC Inc. | Fee-Owned |
| Fort Wayne, IN | 3513 Adams Center Road | Fort Wayne | IN | 46806 | YRC Inc. | Fee-Owned |
| Fort Worth, TX | 5501 Campus Drive | Fort Worth | TX | 76140 | YRC Inc. | Fee-Owned |
| Fresno, CA | 2440 E Church Avenue | Fresno | CA | 93706 | YRC Inc. | Fee-Owned |
| Goodland, KS | 2815 S Highway 27 | Goodland | KS | 67735 | YRC Inc. | Fee-Owned |
| Grand Junction, CO | 3207 "F" Road | Clifton | CO | 81520 | YRC Inc. | Fee-Owned |
| Grand Rapids, MI | 2180 Chicago Drive SW | Wyoming | MI | 49509 | YRC Inc. | Fee-Owned |
| Greensboro, NC | 1255 NC Highway 66 S | Kernersville | NC | 27284 | YRC Inc. | Fee-Owned |
| Hagerstown, MD | 311 East Oak Ridge Drive | Hagerstown | MD | 21740 | YRC Inc. | Fee-Owned |
| Harrisburg, PA | 100 Roadway Drive | Carlisle | PA | 17015 | YRC Inc. | Fee-Owned |
| Honolulu, HI | 94-164 Leokane Street | Waipahu | HI | 96797 | YRC Inc. | Fee-Owned |
| Indianapolis, IN | 1818 S High School Road | Indianapolis | IN | 46241 | YRC Inc. | Fee-Owned |
| Jackson, MS | 102 Carrier Boulevard | Richland | MS | 39218 | YRC Inc. | Fee-Owned |
| Jackson, TN | 88 E L Morgan Drive | Jackson | TN | 38305 | YRC Inc. | Fee-Owned |
| Jacksonville, FL | 3404 Clifford Lane | Jacksonville | FL | 32209 | YRC Inc. | Fee-Owned |
| Jacksonville, NC | 161 Center Street | Jacksonville | NC | 28540 | YRC Inc. | Fee-Owned |
| Kansas City, MO | 8724 Leeds Road | Kansas City | MO | 64129 | YRC Inc. | Fee-Owned |
| Kearney, NE | 614 Third Avenue | Kearney | NE | 68847 | YRC Inc. | Fee-Owned |
| Knoxville, TN | 1212 Hilton Road | Knoxville | TN | 37921 | YRC Inc. | Fee-Owned |
| LaGrange, GA | 677 Hudson Road | LaGrange | GA | 30240 | YRC Inc. | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|----------|----------------|------|-------|----------|------------|--------------------|
| Lansdale, PA | 750 County Line Road | Line Lexington | PA | 18932 | YRC Inc. | Fee-Owned |
| Laredo, TX | 8011 Killam Industrial Boulevard | Laredo | TX | 78045 | YRC Inc. | Fee-Owned |
| Las Vegas, NV | 5049 W Post Road | Las Vegas | NV | 89118 | YRC Inc. | Fee-Owned |
| Lexington, KY | 460 Transport Court | Lexington | KY | 40511 | YRC Inc. | Fee-Owned |
| Lima, OH | 1505 Bowman Road | Lima | OH | 45804 | YRC Inc. | Fee-Owned |
| Little Rock, AR | 4500 W 65th Street | Little Rock | AR | 72209 | YRC Inc. | Fee-Owned |
| Long Island, NY | 99 Express Street | Plainview | NY | 11803 | YRC Inc. | Fee-Owned |
| Macon, GA | 4241 Interstate Drive | Macon | GA | 31210 | YRC Inc. | Fee-Owned |
| Madison, WI | 2573 Progress Road | Madison | WI | 53716 | YRC Inc. | Fee-Owned |
| Manchester, NH | 9 Cote Lane | Bedford | NH | 03110 | YRC Inc. | Fee-Owned |
| Mason City, IA | 1514 S Pierce Avenue | Mason City | IA | 50401 | YRC Inc. | Fee-Owned |
| Maybrook, NY | 1000 Homestead Avenue | Maybrook | NY | 12543 | YRC Inc. | Fee-Owned |
| Memphis, TN | 3310 Gill Road | Memphis | TN | 38109 | YRC Inc. | Fee-Owned |
| Milwaukee, WI | 6880 S Howell Avenue | Oak Creek | WI | 53154 | YRC Inc. | Fee-Owned |
| Mobile, AL | 1111 Virginia Street | Mobile | AL | 36604 | YRC Inc. | Fee-Owned |
| Monroe, LA | 158 Parker Road | Monroe | LA | 71202 | YRC Inc. | Fee-Owned |
| Montgomery, AL | 5680 Old Hayneville Road | Montgomery | AL | 36108 | YRC Inc. | Fee-Owned |
| Nashville, TN | 7300 Centennial Boulevard | Nashville | TN | 37209 | YRC Inc. | Fee-Owned |
| New Orleans, LA | 12169 Old Gentilly Road | New Orleans | LA | 70129 | YRC Inc. | Fee-Owned |
| Nogales, AZ | 2859 W Valle Verde Drive | Nogales | AZ | 85621 | YRC Inc. | Fee-Owned |
| Norfolk, VA | 1313 Cavalier Boulevard | Chesapeake | VA | 23323 | YRC Inc. | Fee-Owned |
| Oklahoma City, OK | 8000 SW 15th Street | Oklahoma City | OK | 73128 | YRC Inc. | Fee-Owned |
| Omaha, NE | 4480 S 90th Street | Omaha | NE | 68127 | YRC Inc. | Fee-Owned |
| Oxnard, CA | 2685 Sherwin Avenue | Ventura | CA | 93003 | YRC Inc. | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Paducah, KY | 5151 Charter Oak Drive | Paducah | KY | 42001 | YRC Inc. | Fee-Owned |
| Parkersburg, WV | 300 Drag Strip Road | Belpre | OH | 45714 | YRC Inc. | Fee-Owned |
| Peoria, IL | 780 W Birchwood Street | Morton | IL | 61550 | YRC Inc. | Fee-Owned |
| Philadelphia, PA | 2627 State Road | Bensalem | PA | 19020 | YRC Inc. | Fee-Owned |
| Pontiac, MI | 1280 Joslyn Avenue | Pontiac | MI | 48340 | YRC Inc. | Fee-Owned |
| Portland, ME | 75 Eisenhower Drive | Westbrook | ME | 04092 | YRC Inc. | Fee-Owned |
| Portland, OR | 10510 N Vancouver Way | Portland | OR | 97217 | YRC Inc. | Fee-Owned |
| Providence, RI | 55 Industrial Road | Cumberland | RI | 02864 | YRC Inc. | Fee-Owned |
| Quincy, IL | 2620 N 36th Street | Quincy | IL | 62301 | YRC Inc. | Fee-Owned |
| Richmond, VA | 9600 Express Lane | Richmond | VA | 23237 | YRC Inc. | Fee-Owned |
| Rochester, NY | 1575 Emerson Street | Rochester | NY | 14606 | YRC Inc. | Fee-Owned |
| Rock Island, IL | 3700 78th Avenue West | Rock Island | IL | 61201 | YRC Inc. | Fee-Owned |
| Sacramento, CA | 3210 52nd Avenue | Sacramento | CA | 95823 | YRC Inc. | Fee-Owned |
| Salisbury, MD | 26902 Bethel Concord Road | Seaford | DE | 19973 | YRC Inc. | Fee-Owned |
| San Antonio, TX | 111 Gembler Road | San Antonio | TX | 78219 | YRC Inc. | Fee-Owned |
| Savannah, GA | 3501 Edwin Avenue | Savannah | GA | 31405 | YRC Inc. | Fee-Owned |
| Scranton, PA | 1284 S Main Road | Mountain Top | PA | 18707 | YRC Inc. | Fee-Owned |
| Sherman, TX | 211 Dorset Drive | Sherman | TX | 75092 | YRC Inc. | Fee-Owned |
| Sioux City, IA | 2425 Bridgeport Drive | Sioux City | IA | 51111 | YRC Inc. | Fee-Owned |
| Spartanburg, SC | 580 Shackelford Road | Piedmont | SC | 29673 | YRC Inc. | Fee-Owned |
| Springdale, AR | 1543 Ford Avenue | Springdale | AR | 72764 | YRC Inc. | Fee-Owned |
| Springfield, MO | 5575 E State Hwy 00 | Strafford | MO | 65757 | YRC Inc. | Fee-Owned |
| St. Louis, MO | 400 Barton Street | St. Louis | MO | 63104 | YRC Inc. | Fee-Owned |
| St. Paul, MN | 12400 Dupont Avenue S | Burnsville | MN | 55337 | YRC Inc. | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Syracuse, NY | 7138 Northern Boulevard | East Syracuse | NY | 13057 | YRC Inc. | Fee-Owned |
| Toledo, OH | 4431 South Avenue | Toledo | OH | 43615 | YRC Inc. | Fee-Owned |
| Tracy, CA | 1535 E Pescadero Avenue | Tracy | CA | 95304 | YRC Inc. | Fee-Owned |
| Tucson, AZ | 601 W Flores Street | Tucson | AZ | 85705 | YRC Inc. | Fee-Owned |
| Tupelo, MS | 2226 McCullough Boulevard | Tupelo | MS | 38801 | YRC Inc. | Fee-Owned |
| Waco, TX | 3230 Clay Avenue | Waco | TX | 76711 | YRC Inc. | Fee-Owned |
| Washington, DC | 7600 Preston Drive | Landover | MD | 20785 | YRC Inc. | Fee-Owned |
| Waterville, ME | 44 Sheridan Drive | Fairfield | ME | 04937 | YRC Inc. | Fee-Owned |
| West Palm Beach, FL | 1400 SW 30th Avenue | Boynton Beach | FL | 33426 | YRC Inc. | Fee-Owned |
| Wilmington, DE | 316 New Churchmans Road | New Castle | DE | 19720 | YRC Inc. | Fee-Owned |
| Wilmington, NC | 3511 Highway 421 N | Wilmington | NC | 28401 | YRC Inc. | Fee-Owned |
| Wilson, NC | 555 Jeffreys Road | Rocky Mount | NC | 27804 | YRC Inc. | Fee-Owned |
| Worcester, MA | 464 Hartford Turnpike | Shrewsbury | MA | 01545 | YRC Inc. | Fee-Owned |
| Youngstown, OH | 3020 Gale Drive | Hubbard | OH | 44425 | YRC Inc. | Fee-Owned |
| Oshawa, ON | 285 Blair Street | Whitby | ON | L1N 9V9 | YRC Freight Canada Company | Fee-Owned |
| Woodstock, ON | 1187 Welford Place | Woodstock | ON | N4S 7Y5 | YRC Freight Canada Company | Fee-Owned |
| Stanhope, PQ | 930 Route 147 | Dixville | PQ | J0B 3C0 | YRC Freight Canada Company | Fee-Owned |

**Schedule 1.01(d)**

**Pension Fund Entities**

- Central States, Southeast and Southwest Areas Pension Fund
- Western Conference of Teamsters Pension Trust
- I.B. of T. Union Local No. 710 Pension Fund
- Central Pennsylvania Teamsters Pension Fund
- Road Carriers Local 707 Pension Fund
- Teamsters Local 641 Pension Fund
- Teamsters Pension Trust Fund of Philadelphia and Vicinity
- Western Conference of Teamsters Supplemental Benefit Trust Fund
- Suburban Teamsters of No. IL. Pension Fund
- Freight Drivers and Helpers Local 557 Pension Fund
- Teamsters JC 83 Pension Fund
- Hagerstown Motor Carriers and Teamsters Pension Plan
- Trucking Employees of North Jersey Welfare Fund Inc. - Pension Fund
- Mid-Jersey Trucking Ind. & Teamsters Local 701 Pension Fund
- Management Labor Welfare & Pension Funds Local 1730, I.L.A.
- Employer-Teamsters Local Nos. 175/505 Pension Trust Fund
- International Association of Machinists Motor City Pension Fund
- Hawaii Truckers-Teamsters Union Pension Fund
- Southwestern Pennsylvania and Western Maryland Teamsters & Employers Pension Fund

**Schedule 5.10**

**Litigation**

1. Jack Peak v. Yellow Corporation, Thomas Joseph O'Connor III, and Darren Hawkins; Case Number 22-CV-02278-EFM, filed July 12, 2023.

2. Central States, Southeast and Southwest Areas Pension Fund; Central States Southwest and Southwest Areas Health and Welfare Fund; and Charles A Whobrey, as Trustee v. YRC Inc. and USF Holland LLC, Case No. 23-CV-4685, filed July 20, 2023.

3. Ricky Adcock, Matthew Brewer, Michael Cottrell, and Johnny Martinez v. Yellow Corporation, Case No. 323-CV-00795, filed August 2, 2023.

4. Armando Rivera v. Yellow Corporation, YRC Inc., USF Holland LLC, New Penn Motor Express LLC and USF Reddaway Inc., filed in the United States District Court for the District of Delaware on August 1, 2023.

5. Jeff Moore and Elizabeth Brook Moore v Yellow Corporation, et al., in the United States Bankruptcy Court for the District of Delaware, Chapter 11, Bankruptcy, Case No. 23-50457 filed on August 7, 2023.

6. Armando Rivera, et al. v Yellow Corporation, et al., in the United States Bankruptcy Court for the District of Delaware, Chapter 11, Bankruptcy, Case No. 23-50456 filed on August 7, 2023.

7. Roger Keef v Yellow Corporation, et al., in the United States Bankruptcy Court for the District of Delaware, Chapter 11, Bankruptcy, Case No. 23-50458 filed on August 7, 2023.

**Schedule 5.11**

**Subsidiaries and Capitalization**

| Loan Parties (as of the Effective Date) | | | |
|---|---|---|---|
| **Issuer** | **Jurisdiction of Formation** | **Issued and Outstanding Shares/Equity Interests** | **Record and Beneficial Owner** |
| Yellow Corporation | Delaware | 52,128,063 shares | Publicly traded |
| 1105481 Ontario Inc. | Ontario, Canada | 100 shares | 100% by Yellow Corporation |
| Express Lane Service, Inc. | Delaware | 100 shares | 100% by Yellow Corporation |
| Roadway LLC | Delaware | 100 units | 100% by Yellow Corporation |
| YRC Association Solutions, Inc. | Delaware | 10,000 shares | 100% by Yellow Corporation |
| YRC MORTGAGES, LLC | Delaware | 10,000 units | 100% by Yellow Corporation |
| YRC Regional Transportation, Inc. | Delaware | 1,000 shares | 100% by Yellow Corporation |
| YRC Enterprise Services, Inc. | Delaware | 1,000 shares | 100% by Yellow Corporation |
| USF Holland LLC | Delaware | 1 membership interest | 100% by Yellow Corporation |
| New Penn Motor Express LLC | Delaware | 1 membership interest | 100% by Yellow Corporation |
| YRC Inc. | Delaware | 200 shares | 100% by Roadway LLC |
| Roadway Next Day Corporation | Delaware | 100 shares | 100% by Roadway LLC |
| YRC Freight Canada Company | Nova Scotia, Canada | 100 Class B Common 7,511,100 Class A Voting Common | 100% by YRC Inc. |
| USF Holland International Sales Corporation | Nova Scotia, Canada | 1 Common Share | 100% by USF Holland LLC |
| Roadway Express International, Inc. | Delaware | 1,000 shares | 100% by YRC Inc. |

| Yellow Logistics, Inc. | Delaware | 100 shares | 100% by YRC Inc. |
| YRC LOGISTICS SERVICES, INC. | Illinois | 50 | 100% by YRC Regional Transportation, Inc. |
| YRC Logistics Inc. | Ontario, Canada | 100 shares | 100% by YRC LOGISTICS SERVICES, INC. |
| USF Bestway Inc. | Arizona | 283.4 shares | 100% by YRC Regional Transportation, Inc. |
| USF Dugan Inc. | Kansas | 1,000,000 shares | 100% by YRC Regional Transportation, Inc. |
| USF RedStar LLC | Delaware | 1 membership interest | 100% by YRC Regional Transportation, Inc. |
| USF Reddaway Inc. | Oregon | 40.5 shares | 100% by YRC Regional Transportation, Inc. |
| YRC International Investments, Inc. | Delaware | 1,000 shares | 100% by Yellow Corporation |

| Non-Loan Parties as of the Effective Date | | | |
|---|---|---|---|
| **Issuer** | **Jurisdiction of Formation** | **Issued and Outstanding Shares/Equity Interests** | **Record and Beneficial Owner** |
| OPK Insurance Co. Ltd. | Bermuda | 120,000 | 100% by Yellow Corporation |
| YRC Logistics Asia Limited | Hong Kong | 357,501,711 | 100% by Yellow Corporation |
| YRC Services S. de R.L. de C.V. | Mexico | 2 entity quotas | 100% by YRC Transportation, S.A. de C.V. |
| PT Meridian IQ Indonesia International | Indonesia | $50,000 paid in capital | 100% by YRC Logistics Asia Limited |
| Roadway Express, S.A. de C.V. | Mexico | 25,000 | 99.99% by YRC Inc. .01% by Transcontinental Lease, S. de R.L de C.V. |

| | | | |
|---|---|---|---|
| Transcontinental Lease, S. de R.L. de C.V. | Mexico | 50 | 99.99% by YRC Inc. .01% by Roadway Express International, Inc. |
| YRC Transportation, S.A. de C.V. | Mexico | 5,000 | 58.9% by YRC Inc. 41.1% by YRC Freight Canada Company |

## **Schedule 5.22(a)**

## **Rolling Stock that constitutes Prepetition UST Tranche B Joint Collateral**

As of August 28, 2023

[Attached]

| VIN | BRAND | UNIT | TYPE | TITLE STATE | REGISTRATION STATE | COLLATERAL CATEGORY | MAKE |
|-----|-------|------|------|-------------|--------------------|--------------------|------|
| 1DW1A2810FS596101 | HMES | 595000 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2812FS596102 | HMES | 595001 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2814FS596103 | HMES | 595002 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2816FS596104 | HMES | 595003 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2818FS596105 | HMES | 595004 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A281XFS596106 | HMES | 595005 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2811FS596107 | HMES | 595006 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2813FS596108 | HMES | 595007 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2815FS596109 | HMES | 595008 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2811FS596110 | HMES | 595009 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4024FS596201 | HMES | 505000 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4026FS596202 | HMES | 505001 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4028FS596203 | HMES | 505002 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A402XFS596204 | HMES | 505003 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4021FS596205 | HMES | 505004 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4023FS596206 | HMES | 505005 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4025FS596207 | HMES | 505006 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4027FS596208 | HMES | 505007 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4029FS596209 | HMES | 505008 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4025FS596210 | HMES | 505009 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4027FS596211 | HMES | 505010 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4029FS596212 | HMES | 505011 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4020FS596213 | HMES | 505012 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4022FS596214 | HMES | 505013 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4024FS596215 | HMES | 505014 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4026FS596216 | HMES | 505015 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4028FS596217 | HMES | 505016 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A402XFS596218 | HMES | 505017 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4021FS596219 | HMES | 505018 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4028FS596220 | HMES | 505019 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A402XFS596221 | HMES | 505020 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4021FS596222 | HMES | 505021 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4023FS596223 | HMES | 505022 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4025FS596224 | HMES | 505023 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4027FS596225 | HMES | 505024 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577657 | HMES | 515157 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577689 | HMES | 515189 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577829 | HMES | 515329 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577814 | HMES | 515314 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577937 | HMES | 585036 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596451 | HMES | 585121 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577500 | HMES | 515000 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577501 | HMES | 515001 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577502 | HMES | 515002 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577503 | HMES | 515003 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577504 | HMES | 515004 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577505 | HMES | 515005 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577506 | HMES | 515006 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577507 | HMES | 515007 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577508 | HMES | 515008 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577509 | HMES | 515009 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577510 | HMES | 515010 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577511 | HMES | 515011 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577512 | HMES | 515012 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577513 | HMES | 515013 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577514 | HMES | 515014 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577515 | HMES | 515015 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577516 | HMES | 515016 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577517 | HMES | 515017 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577518 | HMES | 515018 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577519 | HMES | 515019 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577520 | HMES | 515020 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577521 | HMES | 515021 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577522 | HMES | 515022 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577523 | HMES | 515023 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577524 | HMES | 515024 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577525 | HMES | 515025 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577526 | HMES | 515026 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577527 | HMES | 515027 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577528 | HMES | 515028 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577529 | HMES | 515029 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577530 | HMES | 515030 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577531 | HMES | 515031 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577532 | HMES | 515032 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5329FB577533 | HMES | 515033 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577534 | HMES | 515034 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577535 | HMES | 515035 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577536 | HMES | 515036 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577537 | HMES | 515037 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577538 | HMES | 515038 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577539 | HMES | 515039 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577540 | HMES | 515040 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577541 | HMES | 515041 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577542 | HMES | 515042 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577543 | HMES | 515043 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577544 | HMES | 515044 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577545 | HMES | 515045 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577546 | HMES | 515046 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577547 | HMES | 515047 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577548 | HMES | 515048 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577549 | HMES | 515049 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577550 | HMES | 515050 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577551 | HMES | 515051 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577552 | HMES | 515052 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577553 | HMES | 515053 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577554 | HMES | 515054 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577555 | HMES | 515055 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577556 | HMES | 515056 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577557 | HMES | 515057 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577558 | HMES | 515058 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577559 | HMES | 515059 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577560 | HMES | 515060 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577561 | HMES | 515061 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577562 | HMES | 515062 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577563 | HMES | 515063 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577564 | HMES | 515064 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577565 | HMES | 515065 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577566 | HMES | 515066 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577567 | HMES | 515067 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577568 | HMES | 515068 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577569 | HMES | 515069 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577570 | HMES | 515070 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577571 | HMES | 515071 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577572 | HMES | 515072 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577573 | HMES | 515073 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577574 | HMES | 515074 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577575 | HMES | 515075 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577576 | HMES | 515076 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577577 | HMES | 515077 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577578 | HMES | 515078 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577579 | HMES | 515079 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577580 | HMES | 515080 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577581 | HMES | 515081 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577582 | HMES | 515082 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577583 | HMES | 515083 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577584 | HMES | 515084 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577585 | HMES | 515085 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577586 | HMES | 515086 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577587 | HMES | 515087 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577588 | HMES | 515088 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577589 | HMES | 515089 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577590 | HMES | 515090 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577591 | HMES | 515091 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577592 | HMES | 515092 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577593 | HMES | 515093 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577594 | HMES | 515094 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577595 | HMES | 515095 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577596 | HMES | 515096 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577597 | HMES | 515097 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577598 | HMES | 515098 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577599 | HMES | 515099 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577600 | HMES | 515100 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577601 | HMES | 515101 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577602 | HMES | 515102 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577603 | HMES | 515103 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577604 | HMES | 515104 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577605 | HMES | 515105 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577606 | HMES | 515106 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577607 | HMES | 515107 | TRAILER | IN | IN | 2 | STOUGHTON |

| 1DW1A5323FB577608 | HMES | 515108 | TRAILER | IN | IN | 2 | STOUGHTON |
|---|---|---|---|---|---|---|---|
| 1DW1A5325FB577609 | HMES | 515109 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577610 | HMES | 515110 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577611 | HMES | 515111 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577612 | HMES | 515112 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577613 | HMES | 515113 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577614 | HMES | 515114 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577615 | HMES | 515115 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577616 | HMES | 515116 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577617 | HMES | 515117 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577618 | HMES | 515118 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577619 | HMES | 515119 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577620 | HMES | 515120 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577621 | HMES | 515121 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577622 | HMES | 515122 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577623 | HMES | 515123 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577624 | HMES | 515124 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577625 | HMES | 515125 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577626 | HMES | 515126 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577627 | HMES | 515127 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577628 | HMES | 515128 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577629 | HMES | 515129 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577630 | HMES | 515130 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577631 | HMES | 515131 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577632 | HMES | 515132 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577633 | HMES | 515133 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577634 | HMES | 515134 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577635 | HMES | 515135 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577636 | HMES | 515136 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577637 | HMES | 515137 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577638 | HMES | 515138 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577639 | HMES | 515139 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577640 | HMES | 515140 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577641 | HMES | 515141 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577642 | HMES | 515142 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577643 | HMES | 515143 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577644 | HMES | 515144 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577645 | HMES | 515145 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577646 | HMES | 515146 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577647 | HMES | 515147 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577648 | HMES | 515148 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577649 | HMES | 515149 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577650 | HMES | 515150 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577651 | HMES | 515151 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577652 | HMES | 515152 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577653 | HMES | 515153 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577654 | HMES | 515154 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577655 | HMES | 515155 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577656 | HMES | 515156 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577658 | HMES | 515158 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577659 | HMES | 515159 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577660 | HMES | 515160 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577661 | HMES | 515161 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577662 | HMES | 515162 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577663 | HMES | 515163 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577664 | HMES | 515164 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577665 | HMES | 515165 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577666 | HMES | 515166 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577667 | HMES | 515167 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577668 | HMES | 515168 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577669 | HMES | 515169 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577670 | HMES | 515170 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577671 | HMES | 515171 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577672 | HMES | 515172 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577673 | HMES | 515173 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577674 | HMES | 515174 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577675 | HMES | 515175 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577676 | HMES | 515176 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577677 | HMES | 515177 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577678 | HMES | 515178 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577679 | HMES | 515179 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577680 | HMES | 515180 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577681 | HMES | 515181 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577682 | HMES | 515182 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577683 | HMES | 515183 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5328FB577684 | HMES | 515184 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577685 | HMES | 515185 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577686 | HMES | 515186 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577687 | HMES | 515187 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577688 | HMES | 515188 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577690 | HMES | 515190 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577691 | HMES | 515191 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577692 | HMES | 515192 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577693 | HMES | 515193 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577694 | HMES | 515194 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577695 | HMES | 515195 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577696 | HMES | 515196 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577697 | HMES | 515197 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577698 | HMES | 515198 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577699 | HMES | 515199 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577700 | HMES | 515200 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577701 | HMES | 515201 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577702 | HMES | 515202 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577703 | HMES | 515203 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577704 | HMES | 515204 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577705 | HMES | 515205 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577706 | HMES | 515206 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577707 | HMES | 515207 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577708 | HMES | 515208 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577709 | HMES | 515209 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577710 | HMES | 515210 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577711 | HMES | 515211 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577712 | HMES | 515212 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577713 | HMES | 515213 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577714 | HMES | 515214 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577715 | HMES | 515215 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577716 | HMES | 515216 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577717 | HMES | 515217 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577718 | HMES | 515218 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577719 | HMES | 515219 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577720 | HMES | 515220 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577721 | HMES | 515221 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577722 | HMES | 515222 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577723 | HMES | 515223 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577724 | HMES | 515224 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577725 | HMES | 515225 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577726 | HMES | 515226 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577727 | HMES | 515227 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577728 | HMES | 515228 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577729 | HMES | 515229 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577730 | HMES | 515230 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577731 | HMES | 515231 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577732 | HMES | 515232 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577733 | HMES | 515233 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577734 | HMES | 515234 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577735 | HMES | 515235 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577736 | HMES | 515236 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577737 | HMES | 515237 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577738 | HMES | 515238 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577739 | HMES | 515239 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577740 | HMES | 515240 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577741 | HMES | 515241 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577742 | HMES | 515242 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577743 | HMES | 515243 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577744 | HMES | 515244 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577745 | HMES | 515245 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577746 | HMES | 515246 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577747 | HMES | 515247 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577748 | HMES | 515248 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577749 | HMES | 515249 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577750 | HMES | 515250 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577751 | HMES | 515251 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577752 | HMES | 515252 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577753 | HMES | 515253 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577754 | HMES | 515254 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577755 | HMES | 515255 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577756 | HMES | 515256 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577757 | HMES | 515257 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577758 | HMES | 515258 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577759 | HMES | 515259 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5329FB577760 | HMES | 515260 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577761 | HMES | 515261 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577762 | HMES | 515262 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577763 | HMES | 515263 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577764 | HMES | 515264 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577765 | HMES | 515265 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577766 | HMES | 515266 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577767 | HMES | 515267 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577768 | HMES | 515268 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577769 | HMES | 515269 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577770 | HMES | 515270 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577771 | HMES | 515271 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577772 | HMES | 515272 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577773 | HMES | 515273 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577774 | HMES | 515274 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577775 | HMES | 515275 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577776 | HMES | 515276 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577777 | HMES | 515277 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577778 | HMES | 515278 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577779 | HMES | 515279 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577780 | HMES | 515280 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577781 | HMES | 515281 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577782 | HMES | 515282 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577783 | HMES | 515283 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577784 | HMES | 515284 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577785 | HMES | 515285 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577786 | HMES | 515286 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577787 | HMES | 515287 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577788 | HMES | 515288 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577789 | HMES | 515289 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577790 | HMES | 515290 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577791 | HMES | 515291 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577792 | HMES | 515292 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577793 | HMES | 515293 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577794 | HMES | 515294 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577795 | HMES | 515295 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577796 | HMES | 515296 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577797 | HMES | 515297 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577798 | HMES | 515298 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577799 | HMES | 515299 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577800 | HMES | 515300 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577801 | HMES | 515301 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577802 | HMES | 515302 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577803 | HMES | 515303 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577804 | HMES | 515304 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577805 | HMES | 515305 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577806 | HMES | 515306 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577807 | HMES | 515307 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577808 | HMES | 515308 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577809 | HMES | 515309 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577810 | HMES | 515310 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577811 | HMES | 515311 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577812 | HMES | 515312 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577813 | HMES | 515313 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577815 | HMES | 515315 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577816 | HMES | 515316 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577817 | HMES | 515317 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577818 | HMES | 515318 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577819 | HMES | 515319 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577820 | HMES | 515320 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577821 | HMES | 515321 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577822 | HMES | 515322 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577823 | HMES | 515323 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577824 | HMES | 515324 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577825 | HMES | 515325 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577826 | HMES | 515326 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577827 | HMES | 515327 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577828 | HMES | 515328 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577830 | HMES | 515330 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577831 | HMES | 515331 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577832 | HMES | 515332 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577833 | HMES | 515333 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577834 | HMES | 515334 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577835 | HMES | 515335 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577836 | HMES | 515336 | TRAILER | IN | IN | 2 | STOUGHTON |

| 1DW1A5327FB577837 | HMES | 515337 | TRAILER | IN | IN | 2 | STOUGHTON |
|---|---|---|---|---|---|---|---|
| 1DW1A5329FB577838 | HMES | 515338 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577839 | HMES | 515339 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577840 | HMES | 515340 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577841 | HMES | 515341 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577842 | HMES | 515342 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577843 | HMES | 515343 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577844 | HMES | 515344 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577845 | HMES | 515345 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577846 | HMES | 515346 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577847 | HMES | 515347 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577848 | HMES | 515348 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577849 | HMES | 515349 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB596301 | HMES | 515350 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB596302 | HMES | 515351 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596303 | HMES | 515352 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596304 | HMES | 515353 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB596305 | HMES | 515354 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB596306 | HMES | 515355 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596307 | HMES | 515356 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596308 | HMES | 515357 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596309 | HMES | 515358 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596310 | HMES | 515359 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596311 | HMES | 515360 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596312 | HMES | 515361 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB596313 | HMES | 515362 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB596314 | HMES | 515363 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB596315 | HMES | 515364 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB596316 | HMES | 515365 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596317 | HMES | 515366 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596318 | HMES | 515367 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB596319 | HMES | 515368 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596320 | HMES | 515369 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596321 | HMES | 515370 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB596322 | HMES | 515371 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596324 | HMES | 515373 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596325 | HMES | 515374 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596326 | HMES | 515375 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB596327 | HMES | 515376 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB596328 | HMES | 515377 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB596329 | HMES | 515378 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB596330 | HMES | 515379 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB596331 | HMES | 515380 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB596332 | HMES | 515381 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB596333 | HMES | 515382 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596334 | HMES | 515383 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596335 | HMES | 515384 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB596336 | HMES | 515385 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB596337 | HMES | 515386 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596338 | HMES | 515387 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596339 | HMES | 515388 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB596340 | HMES | 515389 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596341 | HMES | 515390 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596342 | HMES | 515391 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596343 | HMES | 515392 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB596344 | HMES | 515393 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB596345 | HMES | 515394 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB596346 | HMES | 515395 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB596347 | HMES | 515396 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596348 | HMES | 515397 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596349 | HMES | 515398 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB596350 | HMES | 515399 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596351 | HMES | 515400 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596352 | HMES | 515401 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB596353 | HMES | 515402 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB596354 | HMES | 515403 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596355 | HMES | 515404 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596356 | HMES | 515405 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596357 | HMES | 515406 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB596358 | HMES | 515407 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB596359 | HMES | 515408 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596360 | HMES | 515409 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704800 | HMES | 537700 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704801 | HMES | 537701 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704802 | HMES | 537702 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5329HB704803 | HMES | 537703 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704804 | HMES | 537704 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704805 | HMES | 537705 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704806 | HMES | 537706 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704807 | HMES | 537707 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704808 | HMES | 537708 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704809 | HMES | 537709 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704810 | HMES | 537710 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704811 | HMES | 537711 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704812 | HMES | 537712 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704813 | HMES | 537713 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704814 | HMES | 537714 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704815 | HMES | 537715 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704816 | HMES | 537716 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704817 | HMES | 537717 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704818 | HMES | 537718 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704819 | HMES | 537719 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704820 | HMES | 537720 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704821 | HMES | 537721 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704822 | HMES | 537722 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704823 | HMES | 537723 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704824 | HMES | 537724 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704825 | HMES | 537725 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704826 | HMES | 537726 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704827 | HMES | 537727 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704828 | HMES | 537728 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704829 | HMES | 537729 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704830 | HMES | 537730 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704831 | HMES | 537731 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704832 | HMES | 537732 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704833 | HMES | 537733 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704834 | HMES | 537734 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704835 | HMES | 537735 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704836 | HMES | 537736 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704837 | HMES | 537737 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704838 | HMES | 537738 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704839 | HMES | 537739 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704840 | HMES | 537740 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704841 | HMES | 537741 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704842 | HMES | 537742 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704843 | HMES | 537743 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704844 | HMES | 537744 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704845 | HMES | 537745 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704846 | HMES | 537746 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704847 | HMES | 537747 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704848 | HMES | 537748 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704849 | HMES | 537749 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704850 | HMES | 537750 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704851 | HMES | 537751 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704852 | HMES | 537752 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704853 | HMES | 537753 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704854 | HMES | 537754 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704855 | HMES | 537755 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704856 | HMES | 537756 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704857 | HMES | 537757 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704858 | HMES | 537758 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704859 | HMES | 537759 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704860 | HMES | 537760 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704861 | HMES | 537761 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704862 | HMES | 537762 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704863 | HMES | 537763 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704864 | HMES | 537764 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704865 | HMES | 537765 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704866 | HMES | 537766 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704867 | HMES | 537767 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704868 | HMES | 537768 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704869 | HMES | 537769 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704870 | HMES | 537770 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704871 | HMES | 537771 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704872 | HMES | 537772 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704873 | HMES | 537773 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704874 | HMES | 537774 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704875 | HMES | 537775 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704876 | HMES | 537776 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704877 | HMES | 537777 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5327HB704878 | HMES | 537778 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704879 | HMES | 537779 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704880 | HMES | 537780 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704881 | HMES | 537781 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704882 | HMES | 537782 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704883 | HMES | 537783 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704884 | HMES | 537784 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704885 | HMES | 537785 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704886 | HMES | 537786 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704887 | HMES | 537787 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704888 | HMES | 537788 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704889 | HMES | 537789 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704890 | HMES | 537790 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704891 | HMES | 537791 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704892 | HMES | 537792 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704893 | HMES | 537793 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704894 | HMES | 537794 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704895 | HMES | 537795 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704896 | HMES | 537796 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704897 | HMES | 537797 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704898 | HMES | 537798 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704899 | HMES | 537799 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704900 | HMES | 537800 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704901 | HMES | 537801 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704902 | HMES | 537802 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704903 | HMES | 537803 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704904 | HMES | 537804 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704905 | HMES | 537805 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704906 | HMES | 537806 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704907 | HMES | 537807 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704908 | HMES | 537808 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704909 | HMES | 537809 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704910 | HMES | 537810 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704911 | HMES | 537811 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704912 | HMES | 537812 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704913 | HMES | 537813 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704914 | HMES | 537814 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704915 | HMES | 537815 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704916 | HMES | 537816 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704917 | HMES | 537817 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704918 | HMES | 537818 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704919 | HMES | 537819 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704920 | HMES | 537820 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704921 | HMES | 537821 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704922 | HMES | 537822 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704923 | HMES | 537823 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704924 | HMES | 537824 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704925 | HMES | 537825 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704926 | HMES | 537826 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704927 | HMES | 537827 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704928 | HMES | 537828 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704929 | HMES | 537829 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704930 | HMES | 537830 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704931 | HMES | 537831 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704932 | HMES | 537832 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704933 | HMES | 537833 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704934 | HMES | 537834 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704935 | HMES | 537835 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704936 | HMES | 537836 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704937 | HMES | 537837 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704938 | HMES | 537838 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704939 | HMES | 537839 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704940 | HMES | 537840 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704941 | HMES | 537841 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704942 | HMES | 537842 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704943 | HMES | 537843 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704944 | HMES | 537844 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704945 | HMES | 537845 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704946 | HMES | 537846 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704947 | HMES | 537847 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704948 | HMES | 537848 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704949 | HMES | 537849 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704950 | HMES | 537850 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704951 | HMES | 537851 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704952 | HMES | 537852 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5326HB704953 | HMES | 537853 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704954 | HMES | 537854 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704955 | HMES | 537855 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704956 | HMES | 537856 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704957 | HMES | 537857 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704958 | HMES | 537858 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704959 | HMES | 537859 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704960 | HMES | 537860 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704961 | HMES | 537861 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704962 | HMES | 537862 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704963 | HMES | 537863 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704964 | HMES | 537864 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704966 | HMES | 537866 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704967 | HMES | 537867 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704968 | HMES | 537868 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704969 | HMES | 537869 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704970 | HMES | 537870 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704971 | HMES | 537871 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704972 | HMES | 537872 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704973 | HMES | 537873 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704974 | HMES | 537874 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577901 | HMES | 585000 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577902 | HMES | 585001 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577903 | HMES | 585002 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577904 | HMES | 585003 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577905 | HMES | 585004 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577906 | HMES | 585005 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577907 | HMES | 585006 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577908 | HMES | 585007 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB577909 | HMES | 585008 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577910 | HMES | 585009 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577911 | HMES | 585010 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB577912 | HMES | 585011 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577913 | HMES | 585012 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577914 | HMES | 585013 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577915 | HMES | 585014 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577916 | HMES | 585015 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577917 | HMES | 585016 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577918 | HMES | 585017 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577919 | HMES | 585018 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577920 | HMES | 585019 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577921 | HMES | 585020 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577922 | HMES | 585021 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577923 | HMES | 585022 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577924 | HMES | 585023 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577925 | HMES | 585024 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB577926 | HMES | 585025 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577927 | HMES | 585026 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577928 | HMES | 585027 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577929 | HMES | 585028 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577930 | HMES | 585029 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577931 | HMES | 585030 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577932 | HMES | 585031 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577933 | HMES | 585032 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577934 | HMES | 585033 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577935 | HMES | 585034 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577936 | HMES | 585035 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577938 | HMES | 585037 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577939 | HMES | 585038 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577940 | HMES | 585039 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577941 | HMES | 585040 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577942 | HMES | 585041 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB577943 | HMES | 585042 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577944 | HMES | 585043 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577945 | HMES | 585044 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577946 | HMES | 585045 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577947 | HMES | 585046 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577948 | HMES | 585047 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577949 | HMES | 585048 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577950 | HMES | 585049 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577951 | HMES | 585050 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577953 | HMES | 585052 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577954 | HMES | 585053 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577955 | HMES | 585054 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577956 | HMES | 585055 | TRAILER | IN | IN | 2 | STOUGHTON |

| 1DW1A4822FB577957 | HMES | 585056 | TRAILER | IN | IN | 2 | STOUGHTON |
|---|---|---|---|---|---|---|---|
| 1DW1A4824FB577958 | HMES | 585057 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577959 | HMES | 585058 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB577960 | HMES | 585059 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577961 | HMES | 585060 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577962 | HMES | 585061 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577963 | HMES | 585062 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577964 | HMES | 585063 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577965 | HMES | 585064 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577966 | HMES | 585065 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577967 | HMES | 585066 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577968 | HMES | 585067 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577969 | HMES | 585068 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577970 | HMES | 585069 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596400 | HMES | 585070 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596401 | HMES | 585071 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596402 | HMES | 585072 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596403 | HMES | 585073 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596404 | HMES | 585074 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596405 | HMES | 585075 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596406 | HMES | 585076 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596407 | HMES | 585077 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596408 | HMES | 585078 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596409 | HMES | 585079 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596410 | HMES | 585080 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596411 | HMES | 585081 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596412 | HMES | 585082 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596413 | HMES | 585083 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596414 | HMES | 585084 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596415 | HMES | 585085 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596416 | HMES | 585086 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596417 | HMES | 585087 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596418 | HMES | 585088 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596419 | HMES | 585089 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596420 | HMES | 585090 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596421 | HMES | 585091 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596422 | HMES | 585092 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596424 | HMES | 585094 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596425 | HMES | 585095 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596426 | HMES | 585096 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596427 | HMES | 585097 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596428 | HMES | 585098 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596429 | HMES | 585099 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596430 | HMES | 585100 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596431 | HMES | 585101 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596432 | HMES | 585102 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596433 | HMES | 585103 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596434 | HMES | 585104 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596435 | HMES | 585105 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596436 | HMES | 585106 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596437 | HMES | 585107 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596438 | HMES | 585108 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596439 | HMES | 585109 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596440 | HMES | 585110 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596441 | HMES | 585111 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596442 | HMES | 585112 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596443 | HMES | 585113 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596444 | HMES | 585114 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596445 | HMES | 585115 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596446 | HMES | 585116 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596447 | HMES | 585117 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596448 | HMES | 585118 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596449 | HMES | 585119 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596450 | HMES | 585120 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596452 | HMES | 585122 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596453 | HMES | 585123 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596454 | HMES | 585124 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596455 | HMES | 585125 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596456 | HMES | 585126 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596457 | HMES | 585127 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596458 | HMES | 585128 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596459 | HMES | 585129 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596460 | HMES | 585130 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596461 | HMES | 585131 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596462 | HMES | 585132 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A4826FB596463 | HMES | 585133 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596464 | HMES | 585134 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596465 | HMES | 585135 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596466 | HMES | 585136 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596467 | HMES | 585137 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596468 | HMES | 585138 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596469 | HMES | 585139 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596470 | HMES | 585140 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596471 | HMES | 585141 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596472 | HMES | 585142 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596473 | HMES | 585143 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596474 | HMES | 585144 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596475 | HMES | 585145 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596476 | HMES | 585146 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596477 | HMES | 585147 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596478 | HMES | 585148 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596479 | HMES | 585149 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596480 | HMES | 585150 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596481 | HMES | 585151 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596482 | HMES | 585152 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596483 | HMES | 585153 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596484 | HMES | 585154 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596485 | HMES | 585155 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596486 | HMES | 585156 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596487 | HMES | 585157 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596488 | HMES | 585158 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596489 | HMES | 585159 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596490 | HMES | 585160 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596491 | HMES | 585161 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596492 | HMES | 585162 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596493 | HMES | 585163 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596494 | HMES | 585164 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596495 | HMES | 585165 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596496 | HMES | 585166 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596497 | HMES | 585167 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596498 | HMES | 585168 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596499 | HMES | 585169 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596500 | HMES | 585170 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596501 | HMES | 585171 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596502 | HMES | 585172 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596503 | HMES | 585173 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596504 | HMES | 585174 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596505 | HMES | 585175 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596506 | HMES | 585176 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596507 | HMES | 585177 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596508 | HMES | 585178 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596509 | HMES | 585179 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596510 | HMES | 585180 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596511 | HMES | 585181 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596512 | HMES | 585182 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596513 | HMES | 585183 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596514 | HMES | 585184 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596515 | HMES | 585185 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596516 | HMES | 585186 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596517 | HMES | 585187 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596518 | HMES | 585188 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596519 | HMES | 585189 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596520 | HMES | 585190 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596521 | HMES | 585191 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596522 | HMES | 585192 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596523 | HMES | 585193 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596524 | HMES | 585194 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596525 | HMES | 585195 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596526 | HMES | 585196 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596527 | HMES | 585197 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596528 | HMES | 585198 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596529 | HMES | 585199 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596530 | HMES | 585200 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596531 | HMES | 585201 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596532 | HMES | 585202 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596533 | HMES | 585203 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596534 | HMES | 585204 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596535 | HMES | 585205 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596536 | HMES | 585206 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596537 | HMES | 585207 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A4820FB596538 | HMES | 585208 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596539 | HMES | 585209 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596540 | HMES | 585210 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596541 | HMES | 585211 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596542 | HMES | 585212 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596543 | HMES | 585213 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596544 | HMES | 585214 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596545 | HMES | 585215 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596546 | HMES | 585216 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596547 | HMES | 585217 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596548 | HMES | 585218 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596549 | HMES | 585219 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596550 | HMES | 585220 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596551 | HMES | 585221 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596552 | HMES | 585222 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596553 | HMES | 585223 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596554 | HMES | 585224 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1GRAP8000GB702502 | NPME | 2492 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8002GB702503 | NPME | 2493 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8004GB702504 | NPME | 2494 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP8006GB702505 | NPME | 2495 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8008GB702506 | NPME | 2496 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP800XGB702507 | NPME | 2497 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8001GB702508 | NPME | 2498 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8003GB702509 | NPME | 2499 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP800XGB702510 | NPME | 2500 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8001GB702511 | NPME | 2501 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8003GB702512 | NPME | 2502 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8005GB702513 | NPME | 2503 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8007GB702514 | NPME | 2504 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8009GB702515 | NPME | 2505 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8000GB702516 | NPME | 2506 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702551 | NPME | 3492 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP900XGB702562 | NPME | 213503 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702583 | NPME | 213505 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702572 | NPME | 213506 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702579 | NPME | 213520 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702546 | NPME | 213521 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9005GB702534 | NPME | 213522 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9003GB702564 | NPME | 213523 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9003GB702550 | NPME | 213525 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9005GB702517 | NPME | 3458 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702518 | NPME | 3459 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702519 | NPME | 3460 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702520 | NPME | 3461 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702521 | NPME | 3462 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702522 | NPME | 3463 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702523 | NPME | 3464 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702524 | NPME | 3465 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702526 | NPME | 3467 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9008GB702527 | NPME | 3468 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP900XGB702528 | NPME | 3469 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702529 | NPME | 3470 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9008GB702530 | NPME | 3471 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702532 | NPME | 3473 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9003GB702533 | NPME | 3474 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702535 | NPME | 3476 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702536 | NPME | 3477 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702537 | NPME | 3478 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702538 | NPME | 3479 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702539 | NPME | 3480 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9000GB702540 | NPME | 3481 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702541 | NPME | 3482 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702542 | NPME | 3483 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9008GB702544 | NPME | 3485 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP900XGB702545 | NPME | 3486 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9003GB702547 | NPME | 3488 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702548 | NPME | 3489 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702549 | NPME | 3490 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702552 | NPME | 3493 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702553 | NPME | 3494 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702554 | NPME | 3495 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702555 | NPME | 3496 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702556 | NPME | 3497 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702557 | NPME | 3498 | TRAILER | IN | TN | 2 | GREAT DANE |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1GRAP9008GB702558 | NPME | 3499 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702563 | NPME | 3504 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702565 | NPME | 3506 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702567 | NPME | 3508 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702569 | NPME | 3510 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702570 | NPME | 3511 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702571 | NPME | 3512 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702573 | NPME | 3514 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702574 | NPME | 3515 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9008GB702575 | NPME | 3516 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP900XGB702576 | NPME | 3517 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702577 | NPME | 3518 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9003GB702578 | NPME | 3519 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702580 | NPME | 3521 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702584 | NPME | 3525 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702585 | NPME | 3526 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702586 | NPME | 3527 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702587 | NPME | 3528 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702588 | NPME | 3529 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9008GB702589 | NPME | 3530 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702590 | NPME | 3531 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702591 | NPME | 3532 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1JJV281D7HL987228 | YRCF | 730160 | TRAILER | IN | IN | 2 | WABASH |
| 1GRAP9008GB702561 | YRCF | 830300 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9007GB702566 | YRCF | 830301 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP900XGB702531 | YRCF | 830302 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9003GB702581 | YRCF | 830304 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702560 | YRCF | 831115 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702543 | YRCF | 831116 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702582 | YRCF | 843823 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702525 | YRCF | 843827 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702568 | YRCF | 850201 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1JJV281D1HL986818 | YRCF | 134287 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986819 | YRCF | 134288 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986820 | YRCF | 134289 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986821 | YRCF | 134290 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986822 | YRCF | 134291 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986823 | YRCF | 134292 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986824 | YRCF | 134293 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986825 | YRCF | 134294 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986826 | YRCF | 134295 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986827 | YRCF | 134296 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986828 | YRCF | 134297 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986829 | YRCF | 134298 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986830 | YRCF | 134299 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986831 | YRCF | 134300 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986832 | YRCF | 134301 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986833 | YRCF | 134302 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986834 | YRCF | 134303 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986835 | YRCF | 134304 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986836 | YRCF | 134305 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986837 | YRCF | 134306 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986838 | YRCF | 134307 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986839 | YRCF | 134308 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986840 | YRCF | 134309 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986841 | YRCF | 134310 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986842 | YRCF | 134311 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986843 | YRCF | 134312 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986844 | YRCF | 134313 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986845 | YRCF | 134314 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986846 | YRCF | 134315 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986847 | YRCF | 134316 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986848 | YRCF | 134317 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986849 | YRCF | 134318 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986850 | YRCF | 134319 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986851 | YRCF | 134320 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986852 | YRCF | 134321 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986853 | YRCF | 134322 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986854 | YRCF | 134323 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986855 | YRCF | 134324 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986856 | YRCF | 134325 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986857 | YRCF | 134326 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986858 | YRCF | 134327 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986859 | YRCF | 134328 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986860 | YRCF | 134329 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D2HL986861 | YRCF | 134330 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986862 | YRCF | 134331 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986863 | YRCF | 134332 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986864 | YRCF | 134333 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986865 | YRCF | 134334 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986866 | YRCF | 134335 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986867 | YRCF | 134336 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986868 | YRCF | 134337 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986869 | YRCF | 134338 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986870 | YRCF | 134339 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986871 | YRCF | 134340 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986873 | YRCF | 134342 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986874 | YRCF | 134343 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986875 | YRCF | 134344 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986876 | YRCF | 134345 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986877 | YRCF | 134346 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986878 | YRCF | 134347 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986879 | YRCF | 134348 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986880 | YRCF | 134349 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986881 | YRCF | 134350 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986882 | YRCF | 134351 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986883 | YRCF | 134352 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986884 | YRCF | 134353 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986885 | YRCF | 134354 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986886 | YRCF | 134355 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986887 | YRCF | 134356 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986888 | YRCF | 134357 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986889 | YRCF | 134358 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986890 | YRCF | 134359 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986891 | YRCF | 134360 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986892 | YRCF | 134361 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986893 | YRCF | 134362 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986894 | YRCF | 134363 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986895 | YRCF | 134364 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986896 | YRCF | 134365 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986897 | YRCF | 134366 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986898 | YRCF | 134367 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986899 | YRCF | 134368 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986901 | YRCF | 134370 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986902 | YRCF | 134371 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986903 | YRCF | 134372 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986904 | YRCF | 134373 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986905 | YRCF | 134374 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986906 | YRCF | 134375 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986907 | YRCF | 134376 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986908 | YRCF | 134377 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986909 | YRCF | 134378 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986910 | YRCF | 134379 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986911 | YRCF | 134380 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986912 | YRCF | 134381 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986913 | YRCF | 134382 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986914 | YRCF | 134383 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986915 | YRCF | 134384 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986916 | YRCF | 134385 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986917 | YRCF | 134386 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986918 | YRCF | 134387 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986919 | YRCF | 134388 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986920 | YRCF | 134389 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986921 | YRCF | 134390 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986922 | YRCF | 134391 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986923 | YRCF | 134392 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986924 | YRCF | 134393 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986925 | YRCF | 134394 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986926 | YRCF | 134395 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986927 | YRCF | 134396 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986928 | YRCF | 134397 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986929 | YRCF | 134398 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986930 | YRCF | 134399 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986931 | YRCF | 134400 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986932 | YRCF | 134401 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986933 | YRCF | 134402 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986934 | YRCF | 134403 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986935 | YRCF | 134404 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986936 | YRCF | 134405 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986937 | YRCF | 134406 | TRAILER | IN | IN | 2 | WABASH |

| 1JJV281D0HL986938 | YRCF | 134407 | TRAILER | IN | IN | 2 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D2HL986939 | YRCF | 134408 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986940 | YRCF | 134409 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986941 | YRCF | 134410 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986942 | YRCF | 134411 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986943 | YRCF | 134412 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986944 | YRCF | 134413 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986945 | YRCF | 134414 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986946 | YRCF | 134415 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986947 | YRCF | 134416 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986948 | YRCF | 134417 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986949 | YRCF | 134418 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986950 | YRCF | 134419 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986951 | YRCF | 134420 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986952 | YRCF | 134421 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986953 | YRCF | 134422 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986954 | YRCF | 134423 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986955 | YRCF | 134424 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986956 | YRCF | 134425 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986957 | YRCF | 134426 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986958 | YRCF | 134427 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986959 | YRCF | 134428 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986960 | YRCF | 134429 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986961 | YRCF | 134430 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986962 | YRCF | 134431 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986963 | YRCF | 134432 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986964 | YRCF | 134433 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986965 | YRCF | 134434 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986966 | YRCF | 134435 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986967 | YRCF | 134436 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986968 | YRCF | 134437 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986969 | YRCF | 134438 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986970 | YRCF | 134439 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986971 | YRCF | 134440 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987028 | YRCF | 134441 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987029 | YRCF | 134442 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987030 | YRCF | 134443 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987031 | YRCF | 134444 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987032 | YRCF | 134445 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987033 | YRCF | 134446 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987034 | YRCF | 134447 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987035 | YRCF | 134448 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987036 | YRCF | 134449 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987037 | YRCF | 134450 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987038 | YRCF | 134451 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987039 | YRCF | 134452 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987040 | YRCF | 134453 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987041 | YRCF | 134454 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987042 | YRCF | 134455 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987043 | YRCF | 134456 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987044 | YRCF | 134457 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987045 | YRCF | 134458 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987046 | YRCF | 134459 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987047 | YRCF | 134460 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987048 | YRCF | 134461 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987049 | YRCF | 134462 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987050 | YRCF | 134463 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987051 | YRCF | 134464 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987052 | YRCF | 134465 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987053 | YRCF | 134466 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986972 | YRCF | 134467 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987054 | YRCF | 134468 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987055 | YRCF | 134470 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986974 | YRCF | 134471 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987056 | YRCF | 134472 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986975 | YRCF | 134473 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987057 | YRCF | 134474 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986976 | YRCF | 134475 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987058 | YRCF | 134476 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986977 | YRCF | 134477 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987059 | YRCF | 134478 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986978 | YRCF | 134479 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987060 | YRCF | 134480 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986979 | YRCF | 134481 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987061 | YRCF | 134482 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281DXHL986980 | YRCF | 134483 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987062 | YRCF | 134484 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986981 | YRCF | 134485 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987063 | YRCF | 134486 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986982 | YRCF | 134487 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987064 | YRCF | 134488 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986983 | YRCF | 134489 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987065 | YRCF | 134490 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986984 | YRCF | 134491 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987066 | YRCF | 134492 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986985 | YRCF | 134493 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987067 | YRCF | 134494 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986986 | YRCF | 134495 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987068 | YRCF | 134496 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986987 | YRCF | 134497 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987069 | YRCF | 134498 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987070 | YRCF | 134499 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987071 | YRCF | 134500 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987072 | YRCF | 134501 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987073 | YRCF | 134502 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987074 | YRCF | 134503 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987075 | YRCF | 134504 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987076 | YRCF | 134505 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987077 | YRCF | 134506 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987078 | YRCF | 134507 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987079 | YRCF | 134508 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987080 | YRCF | 134509 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987081 | YRCF | 134510 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987082 | YRCF | 134511 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987083 | YRCF | 134512 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987084 | YRCF | 134513 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987086 | YRCF | 134515 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987087 | YRCF | 134516 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987088 | YRCF | 134517 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987089 | YRCF | 134518 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987090 | YRCF | 134519 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987091 | YRCF | 134520 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987092 | YRCF | 134521 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987093 | YRCF | 134522 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987094 | YRCF | 134523 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987095 | YRCF | 134524 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987096 | YRCF | 134525 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987097 | YRCF | 134526 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987098 | YRCF | 134527 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987099 | YRCF | 134528 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987100 | YRCF | 134529 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987101 | YRCF | 134530 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987102 | YRCF | 134531 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987103 | YRCF | 134532 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987104 | YRCF | 134533 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987105 | YRCF | 134534 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987106 | YRCF | 134535 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987107 | YRCF | 134536 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987108 | YRCF | 134537 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987109 | YRCF | 134538 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987110 | YRCF | 134539 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986988 | YRCF | 134540 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987111 | YRCF | 134541 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986989 | YRCF | 134542 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987112 | YRCF | 134543 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986990 | YRCF | 134544 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987113 | YRCF | 134545 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986991 | YRCF | 134546 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987114 | YRCF | 134547 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986992 | YRCF | 134548 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987115 | YRCF | 134549 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986993 | YRCF | 134550 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987116 | YRCF | 134551 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986994 | YRCF | 134552 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987117 | YRCF | 134553 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986995 | YRCF | 134554 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987118 | YRCF | 134555 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986996 | YRCF | 134556 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987119 | YRCF | 134557 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986997 | YRCF | 134558 | TRAILER | IN | IN | 2 | WABASH |

| 1JJV281D9HL987120 | YRCF | 134559 | TRAILER | IN | IN | 2 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D7HL986998 | YRCF | 134560 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987121 | YRCF | 134561 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986999 | YRCF | 134562 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987122 | YRCF | 134563 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987000 | YRCF | 134564 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987123 | YRCF | 134565 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987001 | YRCF | 134566 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987124 | YRCF | 134567 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987002 | YRCF | 134568 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987125 | YRCF | 134569 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987003 | YRCF | 134570 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987126 | YRCF | 134571 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987127 | YRCF | 134572 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987128 | YRCF | 134573 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987129 | YRCF | 134574 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987130 | YRCF | 134575 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987131 | YRCF | 134576 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987132 | YRCF | 134577 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987133 | YRCF | 134578 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987134 | YRCF | 134579 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987135 | YRCF | 134580 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987136 | YRCF | 134581 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987137 | YRCF | 134582 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987138 | YRCF | 134583 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987139 | YRCF | 134584 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987140 | YRCF | 134585 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987141 | YRCF | 134586 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987142 | YRCF | 134587 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987143 | YRCF | 134588 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987144 | YRCF | 134589 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987145 | YRCF | 134590 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987146 | YRCF | 134591 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987147 | YRCF | 134592 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987148 | YRCF | 134593 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987150 | YRCF | 134595 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987151 | YRCF | 134596 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987152 | YRCF | 134597 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987153 | YRCF | 134598 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987154 | YRCF | 134599 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987155 | YRCF | 134600 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987156 | YRCF | 134601 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987157 | YRCF | 134602 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987158 | YRCF | 134603 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987159 | YRCF | 134604 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987160 | YRCF | 134605 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987161 | YRCF | 134606 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987162 | YRCF | 134607 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987163 | YRCF | 134608 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987164 | YRCF | 134609 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987165 | YRCF | 134610 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987166 | YRCF | 134611 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987167 | YRCF | 134612 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987168 | YRCF | 134613 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987169 | YRCF | 134614 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987170 | YRCF | 134615 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987171 | YRCF | 134616 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987172 | YRCF | 134617 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987173 | YRCF | 134618 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987174 | YRCF | 134619 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987175 | YRCF | 134620 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987176 | YRCF | 134621 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987177 | YRCF | 134622 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987178 | YRCF | 134623 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987179 | YRCF | 134624 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987180 | YRCF | 134625 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987181 | YRCF | 134626 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987182 | YRCF | 134627 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987183 | YRCF | 134628 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987184 | YRCF | 134629 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987185 | YRCF | 134630 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987004 | YRCF | 134631 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987186 | YRCF | 134632 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987005 | YRCF | 134633 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987187 | YRCF | 134634 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D0HL987006 | YRCF | 134635 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987188 | YRCF | 134636 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987007 | YRCF | 134637 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987189 | YRCF | 134638 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987008 | YRCF | 134639 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987190 | YRCF | 134640 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987009 | YRCF | 134641 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987191 | YRCF | 134642 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987010 | YRCF | 134643 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987192 | YRCF | 134644 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987011 | YRCF | 134645 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987193 | YRCF | 134646 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987012 | YRCF | 134647 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987194 | YRCF | 134648 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987013 | YRCF | 134649 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987195 | YRCF | 134650 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987014 | YRCF | 134651 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987196 | YRCF | 134652 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987015 | YRCF | 134653 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987197 | YRCF | 134654 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987016 | YRCF | 134655 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987198 | YRCF | 134656 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987017 | YRCF | 134657 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987199 | YRCF | 134658 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987018 | YRCF | 134659 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987200 | YRCF | 134660 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987019 | YRCF | 134661 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987201 | YRCF | 134662 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987202 | YRCF | 134663 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987203 | YRCF | 134664 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987204 | YRCF | 134665 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987205 | YRCF | 134666 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987206 | YRCF | 134667 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987207 | YRCF | 134668 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987208 | YRCF | 134669 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987209 | YRCF | 134670 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987210 | YRCF | 134671 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987211 | YRCF | 134672 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987212 | YRCF | 134673 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987213 | YRCF | 134674 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987214 | YRCF | 134675 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987215 | YRCF | 134676 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987216 | YRCF | 134677 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987217 | YRCF | 134678 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987218 | YRCF | 134679 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987219 | YRCF | 134680 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987220 | YRCF | 134681 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987221 | YRCF | 134682 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987222 | YRCF | 134683 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987223 | YRCF | 134684 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987224 | YRCF | 134685 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987225 | YRCF | 134686 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987226 | YRCF | 134687 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987227 | YRCF | 134688 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987229 | YRCF | 134690 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987230 | YRCF | 134691 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987231 | YRCF | 134692 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987232 | YRCF | 134693 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987233 | YRCF | 134694 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987234 | YRCF | 134695 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987235 | YRCF | 134696 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987236 | YRCF | 134697 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987237 | YRCF | 134698 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987238 | YRCF | 134699 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987239 | YRCF | 134700 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987240 | YRCF | 134701 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987241 | YRCF | 134702 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987242 | YRCF | 134703 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987243 | YRCF | 134704 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987244 | YRCF | 134705 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987245 | YRCF | 134706 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987246 | YRCF | 134707 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987247 | YRCF | 134708 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987248 | YRCF | 134709 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987249 | YRCF | 134710 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D0HL987250 | YRCF | 134711 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987251 | YRCF | 134712 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987252 | YRCF | 134713 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987253 | YRCF | 134714 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987254 | YRCF | 134715 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987255 | YRCF | 134716 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987256 | YRCF | 134717 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987257 | YRCF | 134718 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987258 | YRCF | 134719 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987259 | YRCF | 134720 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987260 | YRCF | 134721 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987020 | YRCF | 134722 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987261 | YRCF | 134723 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987021 | YRCF | 134724 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987262 | YRCF | 134725 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987022 | YRCF | 134726 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987263 | YRCF | 134727 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987023 | YRCF | 134728 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987264 | YRCF | 134729 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987024 | YRCF | 134730 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987265 | YRCF | 134731 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987025 | YRCF | 134732 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987266 | YRCF | 134733 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987026 | YRCF | 134734 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987267 | YRCF | 134735 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987027 | YRCF | 134736 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987268 | YRCF | 134737 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987269 | YRCF | 134738 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987270 | YRCF | 134739 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987271 | YRCF | 134740 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987272 | YRCF | 134741 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987273 | YRCF | 134742 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987274 | YRCF | 134743 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987275 | YRCF | 134744 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987276 | YRCF | 134745 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987277 | YRCF | 134746 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987278 | YRCF | 134747 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987279 | YRCF | 134748 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987280 | YRCF | 134749 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987281 | YRCF | 134750 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987282 | YRCF | 134751 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987283 | YRCF | 134752 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987284 | YRCF | 134753 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987285 | YRCF | 134754 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987286 | YRCF | 134755 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987287 | YRCF | 134756 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987288 | YRCF | 134757 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987289 | YRCF | 134758 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987290 | YRCF | 134759 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987291 | YRCF | 134760 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987292 | YRCF | 134761 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987293 | YRCF | 134762 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987295 | YRCF | 134764 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987296 | YRCF | 134765 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987297 | YRCF | 134766 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987298 | YRCF | 134767 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987299 | YRCF | 134768 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987300 | YRCF | 134769 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987301 | YRCF | 134770 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987302 | YRCF | 134771 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987303 | YRCF | 134772 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987304 | YRCF | 134773 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987306 | YRCF | 134775 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987307 | YRCF | 134776 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987308 | YRCF | 134777 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987309 | YRCF | 134778 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987310 | YRCF | 134779 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987311 | YRCF | 134780 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987312 | YRCF | 134781 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987313 | YRCF | 134782 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987314 | YRCF | 134783 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987315 | YRCF | 134784 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987316 | YRCF | 134785 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987317 | YRCF | 134786 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987318 | YRCF | 134787 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281DXHL987319 | YRCF | 134788 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987320 | YRCF | 134789 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987321 | YRCF | 134790 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987322 | YRCF | 134791 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987323 | YRCF | 134792 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987324 | YRCF | 134793 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987325 | YRCF | 134794 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987326 | YRCF | 134795 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987327 | YRCF | 134796 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987328 | YRCF | 134797 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987329 | YRCF | 134798 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987330 | YRCF | 134799 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987331 | YRCF | 134800 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987332 | YRCF | 134801 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987333 | YRCF | 134802 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987335 | YRCF | 134804 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987336 | YRCF | 134805 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987337 | YRCF | 134806 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987338 | YRCF | 134807 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987339 | YRCF | 134808 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987340 | YRCF | 134809 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987341 | YRCF | 134810 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987342 | YRCF | 134811 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987343 | YRCF | 134812 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987344 | YRCF | 134813 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987345 | YRCF | 134814 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987346 | YRCF | 134815 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987347 | YRCF | 134816 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987348 | YRCF | 134817 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987349 | YRCF | 134818 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987350 | YRCF | 134819 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987351 | YRCF | 134820 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987352 | YRCF | 134821 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987353 | YRCF | 134822 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987354 | YRCF | 134823 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987355 | YRCF | 134824 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987356 | YRCF | 134825 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987357 | YRCF | 134826 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987358 | YRCF | 134827 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987359 | YRCF | 134828 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987360 | YRCF | 134829 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987361 | YRCF | 134830 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987362 | YRCF | 134831 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987363 | YRCF | 134832 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987364 | YRCF | 134833 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987365 | YRCF | 134834 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987366 | YRCF | 134835 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987367 | YRCF | 134836 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987368 | YRCF | 134837 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987369 | YRCF | 134838 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987370 | YRCF | 134839 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987371 | YRCF | 134840 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987372 | YRCF | 134841 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987373 | YRCF | 134842 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987374 | YRCF | 134843 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987375 | YRCF | 134844 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987376 | YRCF | 134845 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987377 | YRCF | 134846 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987378 | YRCF | 134847 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987379 | YRCF | 134848 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987380 | YRCF | 134849 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987381 | YRCF | 134850 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987382 | YRCF | 134851 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987383 | YRCF | 134852 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987384 | YRCF | 134853 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987385 | YRCF | 134854 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987386 | YRCF | 134855 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987387 | YRCF | 134856 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987388 | YRCF | 134857 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987389 | YRCF | 134858 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987390 | YRCF | 134859 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987391 | YRCF | 134860 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987392 | YRCF | 134861 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987394 | YRCF | 134862 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987395 | YRCF | 134863 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D6HL987396 | YRCF | 134864 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987397 | YRCF | 134865 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987398 | YRCF | 134866 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987399 | YRCF | 134867 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987400 | YRCF | 134868 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987401 | YRCF | 134869 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987402 | YRCF | 134870 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987403 | YRCF | 134871 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987404 | YRCF | 134872 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987405 | YRCF | 134873 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987406 | YRCF | 134874 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987407 | YRCF | 134875 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987408 | YRCF | 134876 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987409 | YRCF | 134877 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987410 | YRCF | 134878 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987411 | YRCF | 134879 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987412 | YRCF | 134880 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987413 | YRCF | 134881 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987414 | YRCF | 134882 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987415 | YRCF | 134883 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987416 | YRCF | 134884 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987417 | YRCF | 134885 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987418 | YRCF | 134886 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987419 | YRCF | 134887 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987420 | YRCF | 134888 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987421 | YRCF | 134889 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987422 | YRCF | 134890 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987423 | YRCF | 134891 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987424 | YRCF | 134892 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987425 | YRCF | 134893 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987426 | YRCF | 134894 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987427 | YRCF | 134895 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987428 | YRCF | 134896 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987429 | YRCF | 134897 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987430 | YRCF | 134898 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987431 | YRCF | 134899 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987432 | YRCF | 134900 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987433 | YRCF | 134901 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987434 | YRCF | 134902 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987435 | YRCF | 134903 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987436 | YRCF | 134904 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987437 | YRCF | 134905 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987438 | YRCF | 134906 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987439 | YRCF | 134907 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987440 | YRCF | 134908 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987441 | YRCF | 134909 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987442 | YRCF | 134910 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987443 | YRCF | 134911 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987444 | YRCF | 134912 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987445 | YRCF | 134913 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987446 | YRCF | 134914 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987447 | YRCF | 134915 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987448 | YRCF | 134916 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987449 | YRCF | 134917 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987450 | YRCF | 134918 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987451 | YRCF | 134919 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987452 | YRCF | 134920 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987453 | YRCF | 134921 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987454 | YRCF | 134922 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987455 | YRCF | 134923 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987456 | YRCF | 134924 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987457 | YRCF | 134925 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987458 | YRCF | 134926 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987459 | YRCF | 134927 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987460 | YRCF | 134928 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987461 | YRCF | 134929 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987462 | YRCF | 134930 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987463 | YRCF | 134931 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987464 | YRCF | 134932 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987465 | YRCF | 134933 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987466 | YRCF | 134934 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987467 | YRCF | 134935 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987468 | YRCF | 134936 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987469 | YRCF | 134937 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987470 | YRCF | 134938 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D5HL987471 | YRCF | 134939 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987472 | YRCF | 134940 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987473 | YRCF | 134941 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987474 | YRCF | 134942 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987475 | YRCF | 134943 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987476 | YRCF | 134944 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987477 | YRCF | 134945 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987479 | YRCF | 134947 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987480 | YRCF | 134948 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987481 | YRCF | 134949 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987482 | YRCF | 134950 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987484 | YRCF | 134952 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987485 | YRCF | 134953 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987486 | YRCF | 134954 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987487 | YRCF | 134955 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987488 | YRCF | 134956 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987489 | YRCF | 134957 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987490 | YRCF | 134958 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987491 | YRCF | 134959 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987492 | YRCF | 134960 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987493 | YRCF | 134961 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987494 | YRCF | 134962 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987495 | YRCF | 134963 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987496 | YRCF | 134964 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987497 | YRCF | 134965 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987498 | YRCF | 134966 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987499 | YRCF | 134967 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987500 | YRCF | 134968 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987501 | YRCF | 134969 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987502 | YRCF | 134970 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987503 | YRCF | 134971 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987504 | YRCF | 134972 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987505 | YRCF | 134973 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987506 | YRCF | 134974 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987507 | YRCF | 134975 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987508 | YRCF | 134976 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987509 | YRCF | 134977 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987510 | YRCF | 134978 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987511 | YRCF | 134979 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987512 | YRCF | 134980 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987513 | YRCF | 134981 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987514 | YRCF | 134982 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987515 | YRCF | 134983 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987516 | YRCF | 134984 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987517 | YRCF | 134985 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987518 | YRCF | 134986 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987519 | YRCF | 134987 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987520 | YRCF | 134988 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987521 | YRCF | 134989 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987522 | YRCF | 134990 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987523 | YRCF | 134991 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987524 | YRCF | 134992 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987525 | YRCF | 134993 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987526 | YRCF | 134994 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987527 | YRCF | 134995 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987528 | YRCF | 134996 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987529 | YRCF | 134997 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987530 | YRCF | 134998 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987531 | YRCF | 134999 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987532 | YRCF | 135000 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987533 | YRCF | 135001 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987534 | YRCF | 135002 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987535 | YRCF | 135003 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987536 | YRCF | 135004 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987537 | YRCF | 135005 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987538 | YRCF | 135006 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987539 | YRCF | 135007 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987540 | YRCF | 135008 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987541 | YRCF | 135009 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987542 | YRCF | 135010 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987543 | YRCF | 135011 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987544 | YRCF | 135012 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987545 | YRCF | 135013 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987546 | YRCF | 135014 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987547 | YRCF | 135015 | TRAILER | IN | IN | 2 | WABASH |

| 1JJV281D3HL987548 | YRCF | 135016 | TRAILER | IN | IN | 2 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D5HL987549 | YRCF | 135017 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987550 | YRCF | 135018 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987551 | YRCF | 135019 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987552 | YRCF | 135020 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987553 | YRCF | 135021 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987554 | YRCF | 135022 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987555 | YRCF | 135023 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987556 | YRCF | 135024 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987557 | YRCF | 135025 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987558 | YRCF | 135026 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987559 | YRCF | 135027 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987560 | YRCF | 135028 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987561 | YRCF | 135029 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987562 | YRCF | 135030 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987563 | YRCF | 135031 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987564 | YRCF | 135032 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987565 | YRCF | 135033 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987566 | YRCF | 135034 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987567 | YRCF | 135035 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987568 | YRCF | 135036 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987569 | YRCF | 135037 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987570 | YRCF | 135038 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987571 | YRCF | 135039 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987572 | YRCF | 135040 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987573 | YRCF | 135041 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987574 | YRCF | 135042 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987575 | YRCF | 135043 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987576 | YRCF | 135044 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987577 | YRCF | 135045 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987578 | YRCF | 135046 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987579 | YRCF | 135047 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987580 | YRCF | 135048 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987581 | YRCF | 135049 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987582 | YRCF | 135050 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987583 | YRCF | 135051 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987584 | YRCF | 135052 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987585 | YRCF | 135053 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987586 | YRCF | 135054 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987587 | YRCF | 135055 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987588 | YRCF | 135056 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987589 | YRCF | 135057 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987590 | YRCF | 135058 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987591 | YRCF | 135059 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987592 | YRCF | 135060 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987593 | YRCF | 135061 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987594 | YRCF | 135062 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987595 | YRCF | 135063 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987596 | YRCF | 135064 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987597 | YRCF | 135065 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987598 | YRCF | 135066 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987599 | YRCF | 135067 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987600 | YRCF | 135068 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987601 | YRCF | 135069 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987602 | YRCF | 135070 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987603 | YRCF | 135071 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987604 | YRCF | 135072 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987605 | YRCF | 135073 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987606 | YRCF | 135074 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987607 | YRCF | 135075 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987608 | YRCF | 135076 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987609 | YRCF | 135077 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987610 | YRCF | 135078 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987611 | YRCF | 135079 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987612 | YRCF | 135080 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987613 | YRCF | 135081 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987614 | YRCF | 135082 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987615 | YRCF | 135083 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987616 | YRCF | 135084 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987617 | YRCF | 135085 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987618 | YRCF | 135086 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987619 | YRCF | 135087 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987620 | YRCF | 135088 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987621 | YRCF | 135089 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987622 | YRCF | 135090 | TRAILER | IN | IN | 2 | WABASH |

| 1JJV281D2HL987623 | YRCF | 135091 | TRAILER | IN | IN | 2 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D4HL987624 | YRCF | 135092 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987625 | YRCF | 135093 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987626 | YRCF | 135094 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987627 | YRCF | 135095 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987628 | YRCF | 135096 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987629 | YRCF | 135097 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987630 | YRCF | 135098 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987631 | YRCF | 135099 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987632 | YRCF | 135100 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987633 | YRCF | 135101 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987634 | YRCF | 135102 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987635 | YRCF | 135103 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987636 | YRCF | 135104 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987637 | YRCF | 135105 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987638 | YRCF | 135106 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987639 | YRCF | 135107 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987640 | YRCF | 135108 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987641 | YRCF | 135109 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987642 | YRCF | 135110 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987643 | YRCF | 135111 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987644 | YRCF | 135112 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987645 | YRCF | 135113 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987646 | YRCF | 135114 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987647 | YRCF | 135115 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987648 | YRCF | 135116 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987649 | YRCF | 135117 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987650 | YRCF | 135118 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987651 | YRCF | 135119 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987652 | YRCF | 135120 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987653 | YRCF | 135121 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987654 | YRCF | 135122 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987655 | YRCF | 135123 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987657 | YRCF | 135125 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987658 | YRCF | 135126 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987659 | YRCF | 135127 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987660 | YRCF | 135128 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987661 | YRCF | 135129 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987662 | YRCF | 135130 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987663 | YRCF | 135131 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987664 | YRCF | 135132 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987665 | YRCF | 135133 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987666 | YRCF | 135134 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987667 | YRCF | 135135 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987668 | YRCF | 135136 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987669 | YRCF | 135137 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987670 | YRCF | 135138 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987671 | YRCF | 135139 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987672 | YRCF | 135140 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987673 | YRCF | 135141 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987674 | YRCF | 135142 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987675 | YRCF | 135143 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987676 | YRCF | 135144 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987677 | YRCF | 135145 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987678 | YRCF | 135146 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987680 | YRCF | 135148 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987681 | YRCF | 135149 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987682 | YRCF | 135150 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987683 | YRCF | 135151 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987684 | YRCF | 135152 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987685 | YRCF | 135153 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987686 | YRCF | 135154 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987687 | YRCF | 135155 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987688 | YRCF | 135156 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987689 | YRCF | 135157 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987690 | YRCF | 135158 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987691 | YRCF | 135159 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987692 | YRCF | 135160 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987693 | YRCF | 135161 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987694 | YRCF | 135162 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987695 | YRCF | 135163 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987696 | YRCF | 135164 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987697 | YRCF | 135165 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987698 | YRCF | 135166 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987699 | YRCF | 135167 | TRAILER | IN | IN | 2 | WABASH |

| 1JJV281D5HL987700 | YRCF | 135168 | TRAILER | IN | IN | 2 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D9HL987702 | YRCF | 135170 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987703 | YRCF | 135171 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987704 | YRCF | 135172 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987705 | YRCF | 135173 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987706 | YRCF | 135174 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987707 | YRCF | 135175 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987709 | YRCF | 135177 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987710 | YRCF | 135178 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987711 | YRCF | 135179 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987713 | YRCF | 135181 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987714 | YRCF | 135182 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987715 | YRCF | 135183 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987716 | YRCF | 135184 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987717 | YRCF | 135185 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987718 | YRCF | 135186 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987719 | YRCF | 135187 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987720 | YRCF | 135188 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987721 | YRCF | 135189 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987722 | YRCF | 135190 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987723 | YRCF | 135191 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987724 | YRCF | 135192 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987725 | YRCF | 135193 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987726 | YRCF | 135194 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987727 | YRCF | 135195 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987728 | YRCF | 135196 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987729 | YRCF | 135197 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987730 | YRCF | 135198 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987731 | YRCF | 135199 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987732 | YRCF | 135200 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987733 | YRCF | 135201 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987734 | YRCF | 135202 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987735 | YRCF | 135203 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987736 | YRCF | 135204 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987737 | YRCF | 135205 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987738 | YRCF | 135206 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987739 | YRCF | 135207 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987740 | YRCF | 135208 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987741 | YRCF | 135209 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987742 | YRCF | 135210 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987743 | YRCF | 135211 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987744 | YRCF | 135212 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987745 | YRCF | 135213 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987746 | YRCF | 135214 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987747 | YRCF | 135215 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987748 | YRCF | 135216 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987749 | YRCF | 135217 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987750 | YRCF | 135218 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987751 | YRCF | 135219 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987752 | YRCF | 135220 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987753 | YRCF | 135221 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987754 | YRCF | 135222 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987755 | YRCF | 135223 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987756 | YRCF | 135224 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987757 | YRCF | 135225 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987758 | YRCF | 135226 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987759 | YRCF | 135227 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987760 | YRCF | 135228 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987761 | YRCF | 135229 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987762 | YRCF | 135230 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987763 | YRCF | 135231 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987764 | YRCF | 135232 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987765 | YRCF | 135233 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987766 | YRCF | 135234 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987767 | YRCF | 135235 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987768 | YRCF | 135236 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987769 | YRCF | 135237 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987770 | YRCF | 135238 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987771 | YRCF | 135239 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987772 | YRCF | 135240 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987773 | YRCF | 135241 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987774 | YRCF | 135242 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987775 | YRCF | 135243 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987776 | YRCF | 135244 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987777 | YRCF | 135245 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D9HL987778 | YRCF | 135246 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987779 | YRCF | 135247 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987780 | YRCF | 135248 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987781 | YRCF | 135249 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987782 | YRCF | 135250 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987783 | YRCF | 135251 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987784 | YRCF | 135252 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987785 | YRCF | 135253 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987786 | YRCF | 135254 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987787 | YRCF | 135255 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987788 | YRCF | 135256 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987789 | YRCF | 135257 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987790 | YRCF | 135258 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987791 | YRCF | 135259 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987792 | YRCF | 135260 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987793 | YRCF | 135261 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987794 | YRCF | 135262 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987795 | YRCF | 135263 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987796 | YRCF | 135264 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987797 | YRCF | 135265 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987798 | YRCF | 135266 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987799 | YRCF | 135267 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987800 | YRCF | 135268 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987801 | YRCF | 135269 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987802 | YRCF | 135270 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987803 | YRCF | 135271 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987804 | YRCF | 135272 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987805 | YRCF | 135273 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987806 | YRCF | 135274 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987807 | YRCF | 135275 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987808 | YRCF | 135276 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987809 | YRCF | 135277 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987810 | YRCF | 135278 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987811 | YRCF | 135279 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987812 | YRCF | 135280 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987813 | YRCF | 135281 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987814 | YRCF | 135282 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987815 | YRCF | 135283 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987816 | YRCF | 135284 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987817 | YRCF | 135285 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987818 | YRCF | 135286 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987819 | YRCF | 135287 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987820 | YRCF | 135288 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987821 | YRCF | 135289 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987822 | YRCF | 135290 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987823 | YRCF | 135291 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987824 | YRCF | 135292 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987825 | YRCF | 135293 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987826 | YRCF | 135294 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987827 | YRCF | 135295 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987828 | YRCF | 135296 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987829 | YRCF | 135297 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987830 | YRCF | 135298 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987831 | YRCF | 135299 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987832 | YRCF | 135300 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987833 | YRCF | 135301 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987834 | YRCF | 135302 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987835 | YRCF | 135303 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987836 | YRCF | 135304 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987837 | YRCF | 135305 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987838 | YRCF | 135306 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987839 | YRCF | 135307 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987840 | YRCF | 135308 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987841 | YRCF | 135309 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987842 | YRCF | 135310 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987843 | YRCF | 135311 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987844 | YRCF | 135312 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987845 | YRCF | 135313 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987846 | YRCF | 135314 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987848 | YRCF | 135316 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987849 | YRCF | 135317 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987850 | YRCF | 135318 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987851 | YRCF | 135319 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987852 | YRCF | 135320 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987853 | YRCF | 135321 | TRAILER | IN | IN | 2 | WABASH |

| 1JJV281DXHL987854 | YRCF | 135322 | TRAILER | IN | IN | 2 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D1HL987855 | YRCF | 135323 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987856 | YRCF | 135324 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987857 | YRCF | 135325 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987858 | YRCF | 135326 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987859 | YRCF | 135327 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987860 | YRCF | 135328 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987861 | YRCF | 135329 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987862 | YRCF | 135330 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987863 | YRCF | 135331 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987864 | YRCF | 135332 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987865 | YRCF | 135333 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987866 | YRCF | 135334 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987867 | YRCF | 135335 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987868 | YRCF | 135336 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987869 | YRCF | 135337 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987870 | YRCF | 135338 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987871 | YRCF | 135339 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987872 | YRCF | 135340 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987875 | YRCF | 135341 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987876 | YRCF | 135342 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987877 | YRCF | 135343 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987878 | YRCF | 135344 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987879 | YRCF | 135345 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987880 | YRCF | 135346 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987881 | YRCF | 135347 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987882 | YRCF | 135348 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987883 | YRCF | 135349 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987884 | YRCF | 135350 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987885 | YRCF | 135351 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987886 | YRCF | 135352 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987887 | YRCF | 135353 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987888 | YRCF | 135354 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987889 | YRCF | 135355 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987890 | YRCF | 135356 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987891 | YRCF | 135357 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987892 | YRCF | 135358 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987893 | YRCF | 135359 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987894 | YRCF | 135360 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987895 | YRCF | 135361 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987896 | YRCF | 135362 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987897 | YRCF | 135363 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987898 | YRCF | 135364 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987899 | YRCF | 135365 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987900 | YRCF | 135366 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987901 | YRCF | 135367 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987903 | YRCF | 135368 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987906 | YRCF | 135369 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987907 | YRCF | 135370 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987908 | YRCF | 135371 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987909 | YRCF | 135372 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987911 | YRCF | 135373 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987912 | YRCF | 135374 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987913 | YRCF | 135375 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987914 | YRCF | 135376 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987915 | YRCF | 135377 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987916 | YRCF | 135378 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987917 | YRCF | 135379 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987919 | YRCF | 135380 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987920 | YRCF | 135381 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987921 | YRCF | 135382 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987922 | YRCF | 135383 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987923 | YRCF | 135384 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987924 | YRCF | 135385 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987925 | YRCF | 135386 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987926 | YRCF | 135387 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987929 | YRCF | 135388 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987930 | YRCF | 135389 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987931 | YRCF | 135390 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987935 | YRCF | 135391 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987943 | YRCF | 135392 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987944 | YRCF | 135393 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987945 | YRCF | 135394 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987946 | YRCF | 135395 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987949 | YRCF | 135396 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D6HL987950 | YRCF | 135397 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987951 | YRCF | 135398 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987952 | YRCF | 135399 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987953 | YRCF | 135400 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987954 | YRCF | 135401 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987955 | YRCF | 135402 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987956 | YRCF | 135403 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987957 | YRCF | 135404 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987958 | YRCF | 135405 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987959 | YRCF | 135406 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987960 | YRCF | 135407 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987961 | YRCF | 135408 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987962 | YRCF | 135409 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987963 | YRCF | 135410 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987964 | YRCF | 135411 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987965 | YRCF | 135412 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987966 | YRCF | 135413 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987967 | YRCF | 135414 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987968 | YRCF | 135415 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987969 | YRCF | 135416 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987970 | YRCF | 135417 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987972 | YRCF | 135419 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987973 | YRCF | 135420 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987974 | YRCF | 135421 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987975 | YRCF | 135422 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987976 | YRCF | 135423 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987977 | YRCF | 135424 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987978 | YRCF | 135425 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987979 | YRCF | 135426 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987980 | YRCF | 135427 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987981 | YRCF | 135428 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987982 | YRCF | 135429 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987983 | YRCF | 135430 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987984 | YRCF | 135431 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987985 | YRCF | 135432 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987986 | YRCF | 135433 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987987 | YRCF | 135434 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987988 | YRCF | 135435 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987989 | YRCF | 135436 | TRAILER | IN | IN | 2 | WABASH |

| VIN | BRAND | UNIT | TYPE | TITLE STATE | REGISTRATION STATE | COLLATERAL CATEGORY | MAKE |
|---|---|---|---|---|---|---|---|
| 3AKGGEDV4GDHC4909 | HMES | 16070 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4884 | HMES | 16078 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC4887 | HMES | 16080 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4897 | HMES | 16088 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5026 | HMES | 16113 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4936 | HMES | 16141 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4903 | HMES | 16158 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4913 | HMES | 16159 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4919 | HMES | 16193 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3825 | HMES | 17066 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3833 | HMES | 17074 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3843 | HMES | 17084 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3873 | HMES | 17114 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3878 | HMES | 17119 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3941 | HMES | 17182 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3965 | HMES | 17206 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3978 | HMES | 17219 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3989 | HMES | 17230 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4011 | HMES | 17252 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4028 | HMES | 17269 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4051 | HMES | 17292 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4057 | HMES | 17298 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4070 | HMES | 17311 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4922 | HMES | 79849 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDXGDHM6403 | HMES | 79862 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5033 | HMES | 79877 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4914 | HMES | 79939 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3976 | HMES | 79940 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4998 | HMES | 79945 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4829 | HMES | 79947 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4902 | HMES | 79952 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5036 | HMES | 79953 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5077 | HMES | 79954 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5059 | HMES | 79955 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5069 | HMES | 79980 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3813 | HMES | 89251 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4917 | HMES | 89263 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4814 | HMES | 16003 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4815 | HMES | 16004 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC4825 | HMES | 16014 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4896 | HMES | 16027 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5007 | HMES | 16033 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4875 | HMES | 16064 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4882 | HMES | 16065 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4894 | HMES | 16066 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4900 | HMES | 16068 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4908 | HMES | 16069 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5029 | HMES | 16074 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5053 | HMES | 16076 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4886 | HMES | 16079 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4877 | HMES | 16083 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4885 | HMES | 16085 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4888 | HMES | 16086 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4891 | HMES | 16087 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4991 | HMES | 16091 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4993 | HMES | 16093 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5010 | HMES | 16097 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5011 | HMES | 16098 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5012 | HMES | 16099 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5013 | HMES | 16100 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5014 | HMES | 16101 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5015 | HMES | 16102 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5016 | HMES | 16103 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5017 | HMES | 16104 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5018 | HMES | 16105 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5019 | HMES | 16106 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5020 | HMES | 16107 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5021 | HMES | 16108 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5022 | HMES | 16109 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5023 | HMES | 16110 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5024 | HMES | 16111 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5025 | HMES | 16112 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5028 | HMES | 16115 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5030 | HMES | 16116 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5045 | HMES | 16117 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5050 | HMES | 16118 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5079 | HMES | 16120 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5085 | HMES | 16121 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4881 | HMES | 16122 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4883 | HMES | 16123 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4889 | HMES | 16124 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC4890 | HMES | 16125 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4893 | HMES | 16126 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4899 | HMES | 16127 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4901 | HMES | 16128 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3AKGGEDV9GDHC4906 | HMES | 16130 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4907 | HMES | 16131 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4911 | HMES | 16133 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4918 | HMES | 16137 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4920 | HMES | 16138 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4924 | HMES | 16139 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4942 | HMES | 16142 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4946 | HMES | 16143 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4892 | HMES | 16146 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4990 | HMES | 16147 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5000 | HMES | 16150 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5003 | HMES | 16151 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5078 | HMES | 16152 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5080 | HMES | 16153 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5081 | HMES | 16154 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5082 | HMES | 16155 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4898 | HMES | 16156 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4915 | HMES | 16161 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4989 | HMES | 16162 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5005 | HMES | 16167 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5006 | HMES | 16168 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5008 | HMES | 16169 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5031 | HMES | 16170 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5032 | HMES | 16171 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5037 | HMES | 16175 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5039 | HMES | 16177 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5040 | HMES | 16178 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5043 | HMES | 16181 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5046 | HMES | 16183 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5047 | HMES | 16184 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5048 | HMES | 16185 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5049 | HMES | 16186 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5054 | HMES | 16187 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5060 | HMES | 16189 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHM6402 | HMES | 16190 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHM6404 | HMES | 16192 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4921 | HMES | 16194 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4923 | HMES | 16196 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4928 | HMES | 16198 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5064 | HMES | 16199 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4879 | HMES | 16202 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4925 | HMES | 16203 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4932 | HMES | 16204 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4934 | HMES | 16205 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4938 | HMES | 16206 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4939 | HMES | 16207 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC4940 | HMES | 16208 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5056 | HMES | 16210 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5057 | HMES | 16211 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5068 | HMES | 16213 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5074 | HMES | 16214 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5083 | HMES | 16215 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5084 | HMES | 16216 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4929 | HMES | 16217 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5055 | HMES | 16218 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4905 | HMES | 16219 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4930 | HMES | 16221 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4931 | HMES | 16222 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4935 | HMES | 16223 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC4937 | HMES | 16224 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4941 | HMES | 16225 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4944 | HMES | 16226 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4945 | HMES | 16227 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5051 | HMES | 16228 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5061 | HMES | 16229 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5062 | HMES | 16230 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5063 | HMES | 16231 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5065 | HMES | 16232 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5066 | HMES | 16233 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5067 | HMES | 16234 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5071 | HMES | 16235 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5075 | HMES | 16237 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5073 | HMES | 16238 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3759 | HMES | 17000 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3783 | HMES | 17024 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3785 | HMES | 17026 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3807 | HMES | 17048 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3809 | HMES | 17050 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3810 | HMES | 17051 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3811 | HMES | 17052 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3812 | HMES | 17053 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3814 | HMES | 17055 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3815 | HMES | 17056 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3816 | HMES | 17057 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3817 | HMES | 17058 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3818 | HMES | 17059 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3819 | HMES | 17060 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGGEDV0HLHS3821 | HMES | 17062 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3822 | HMES | 17063 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3823 | HMES | 17064 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3824 | HMES | 17065 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3826 | HMES | 17067 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3828 | HMES | 17069 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3829 | HMES | 17070 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3830 | HMES | 17071 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3831 | HMES | 17072 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3832 | HMES | 17073 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3834 | HMES | 17075 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3835 | HMES | 17076 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3836 | HMES | 17077 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3837 | HMES | 17078 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3838 | HMES | 17079 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3839 | HMES | 17080 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3840 | HMES | 17081 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3841 | HMES | 17082 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3842 | HMES | 17083 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3844 | HMES | 17085 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3846 | HMES | 17087 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3848 | HMES | 17089 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3849 | HMES | 17090 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3851 | HMES | 17092 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3855 | HMES | 17096 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3857 | HMES | 17098 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3858 | HMES | 17099 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3859 | HMES | 17100 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3860 | HMES | 17101 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3861 | HMES | 17102 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3863 | HMES | 17104 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3864 | HMES | 17105 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3865 | HMES | 17106 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3866 | HMES | 17107 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3867 | HMES | 17108 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3869 | HMES | 17110 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3871 | HMES | 17112 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3872 | HMES | 17113 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3874 | HMES | 17115 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3875 | HMES | 17116 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3876 | HMES | 17117 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3879 | HMES | 17120 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3880 | HMES | 17121 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3881 | HMES | 17122 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3882 | HMES | 17123 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3883 | HMES | 17124 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3884 | HMES | 17125 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUJGEDV7HLHS3885 | HMES | 17126 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUJGEDV9HLHS3886 | HMES | 17127 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3887 | HMES | 17128 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3888 | HMES | 17129 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3889 | HMES | 17130 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3891 | HMES | 17132 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3892 | HMES | 17133 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3893 | HMES | 17134 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3894 | HMES | 17135 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3896 | HMES | 17137 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3897 | HMES | 17138 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3898 | HMES | 17139 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3899 | HMES | 17140 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3903 | HMES | 17144 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3905 | HMES | 17146 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3907 | HMES | 17148 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3908 | HMES | 17149 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3909 | HMES | 17150 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3910 | HMES | 17151 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3911 | HMES | 17152 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3912 | HMES | 17153 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3913 | HMES | 17154 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3915 | HMES | 17156 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3916 | HMES | 17157 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3917 | HMES | 17158 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3918 | HMES | 17159 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3920 | HMES | 17161 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3922 | HMES | 17163 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3924 | HMES | 17165 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3925 | HMES | 17166 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3926 | HMES | 17167 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3927 | HMES | 17168 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3929 | HMES | 17170 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3930 | HMES | 17171 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3931 | HMES | 17172 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3932 | HMES | 17173 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3934 | HMES | 17175 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3935 | HMES | 17176 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3936 | HMES | 17177 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3937 | HMES | 17178 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGGEDV1HLHS3939 | HMES | 17179 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3938 | HMES | 17180 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3940 | HMES | 17181 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3942 | HMES | 17183 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3943 | HMES | 17184 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3944 | HMES | 17185 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3946 | HMES | 17187 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3947 | HMES | 17188 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3949 | HMES | 17190 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3950 | HMES | 17191 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3952 | HMES | 17193 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3953 | HMES | 17194 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3954 | HMES | 17195 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3955 | HMES | 17196 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3956 | HMES | 17197 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3957 | HMES | 17198 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3958 | HMES | 17199 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3960 | HMES | 17201 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3961 | HMES | 17202 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3963 | HMES | 17204 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3964 | HMES | 17205 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3966 | HMES | 17207 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3967 | HMES | 17208 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3968 | HMES | 17209 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGHLDV2HSHS3969 | HMES | 17210 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3970 | HMES | 17211 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3971 | HMES | 17212 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3972 | HMES | 17213 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3973 | HMES | 17214 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3974 | HMES | 17215 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3975 | HMES | 17216 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3979 | HMES | 17220 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3981 | HMES | 17222 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3982 | HMES | 17223 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3983 | HMES | 17224 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3984 | HMES | 17225 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3985 | HMES | 17226 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3987 | HMES | 17228 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3988 | HMES | 17229 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3990 | HMES | 17231 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3991 | HMES | 17232 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3993 | HMES | 17234 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3994 | HMES | 17235 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3995 | HMES | 17236 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3996 | HMES | 17237 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3997 | HMES | 17238 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3998 | HMES | 17239 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4000 | HMES | 17241 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4001 | HMES | 17242 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4003 | HMES | 17244 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4004 | HMES | 17245 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4005 | HMES | 17246 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4006 | HMES | 17247 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4007 | HMES | 17248 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4008 | HMES | 17249 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4009 | HMES | 17250 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4010 | HMES | 17251 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4012 | HMES | 17253 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4013 | HMES | 17254 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4014 | HMES | 17255 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4015 | HMES | 17256 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4017 | HMES | 17258 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4018 | HMES | 17259 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4019 | HMES | 17260 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4020 | HMES | 17261 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4021 | HMES | 17262 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4023 | HMES | 17264 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4024 | HMES | 17265 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4025 | HMES | 17266 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4027 | HMES | 17268 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4030 | HMES | 17271 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4031 | HMES | 17272 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4034 | HMES | 17275 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4035 | HMES | 17276 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4036 | HMES | 17277 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4037 | HMES | 17278 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4039 | HMES | 17280 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4040 | HMES | 17281 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4041 | HMES | 17282 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4042 | HMES | 17283 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4043 | HMES | 17284 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4044 | HMES | 17285 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4045 | HMES | 17286 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4046 | HMES | 17287 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS4047 | HMES | 17288 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4048 | HMES | 17289 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4049 | HMES | 17290 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGGEDV2HLHS4050 | HMES | 17291 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4052 | HMES | 17293 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4053 | HMES | 17294 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4054 | HMES | 17295 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4055 | HMES | 17296 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4056 | HMES | 17297 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4058 | HMES | 17299 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4059 | HMES | 17300 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4060 | HMES | 17301 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4061 | HMES | 17302 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4062 | HMES | 17303 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4063 | HMES | 17304 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS4064 | HMES | 17305 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4065 | HMES | 17306 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4066 | HMES | 17307 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4067 | HMES | 17308 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4071 | HMES | 17312 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4072 | HMES | 17313 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4073 | HMES | 17314 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6569 | HMES | 18000 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6571 | HMES | 18002 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6574 | HMES | 18005 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6575 | HMES | 18006 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6576 | HMES | 18007 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6577 | HMES | 18008 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6578 | HMES | 18009 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6579 | HMES | 18010 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6581 | HMES | 18012 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6582 | HMES | 18013 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6583 | HMES | 18014 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6584 | HMES | 18015 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6585 | HMES | 18016 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6586 | HMES | 18017 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6587 | HMES | 18018 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6588 | HMES | 18019 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6589 | HMES | 18020 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6590 | HMES | 18021 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6591 | HMES | 18022 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6592 | HMES | 18023 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6593 | HMES | 18024 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6594 | HMES | 18025 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6595 | HMES | 18026 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6598 | HMES | 18029 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6599 | HMES | 18030 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6600 | HMES | 18031 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6601 | HMES | 18032 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6602 | HMES | 18033 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6603 | HMES | 18034 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6604 | HMES | 18035 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6605 | HMES | 18036 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6606 | HMES | 18037 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6607 | HMES | 18038 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6608 | HMES | 18039 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6609 | HMES | 18040 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6610 | HMES | 18041 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6611 | HMES | 18042 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6612 | HMES | 18043 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6614 | HMES | 18045 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6615 | HMES | 18046 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6616 | HMES | 18047 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6617 | HMES | 18048 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6618 | HMES | 18049 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6619 | HMES | 18050 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6620 | HMES | 18051 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6621 | HMES | 18052 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6622 | HMES | 18053 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6623 | HMES | 18054 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6624 | HMES | 18055 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6625 | HMES | 18056 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6626 | HMES | 18057 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6627 | HMES | 18058 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6628 | HMES | 18059 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6629 | HMES | 18060 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6632 | HMES | 18063 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6634 | HMES | 18065 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6635 | HMES | 18066 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6636 | HMES | 18067 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6637 | HMES | 18068 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6638 | HMES | 18069 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6640 | HMES | 18071 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6641 | HMES | 18072 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6642 | HMES | 18073 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6643 | HMES | 18074 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6644 | HMES | 18075 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6645 | HMES | 18076 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6646 | HMES | 18077 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6647 | HMES | 18078 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGGEDVXJLJN6648 | HMES | 18079 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6649 | HMES | 18080 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6650 | HMES | 18081 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6651 | HMES | 18082 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6653 | HMES | 18084 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6655 | HMES | 18086 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6656 | HMES | 18087 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6657 | HMES | 18088 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6658 | HMES | 18089 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6659 | HMES | 18090 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6660 | HMES | 18091 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6661 | HMES | 18092 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6662 | HMES | 18093 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6663 | HMES | 18094 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6664 | HMES | 18095 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6665 | HMES | 18096 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6666 | HMES | 18097 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6667 | HMES | 18098 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6668 | HMES | 18099 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6669 | HMES | 18100 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6670 | HMES | 18101 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6671 | HMES | 18102 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6672 | HMES | 18103 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6673 | HMES | 18104 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6674 | HMES | 18105 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6675 | HMES | 18106 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6676 | HMES | 18107 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6677 | HMES | 18108 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6678 | HMES | 18109 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6679 | HMES | 18110 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6681 | HMES | 18112 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6683 | HMES | 18114 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6684 | HMES | 18115 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6686 | HMES | 18117 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6687 | HMES | 18118 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6690 | HMES | 18121 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6691 | HMES | 18122 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6710 | HMES | 18141 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6712 | HMES | 18143 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6714 | HMES | 18145 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1M1AW01Y1HM010161 | NPME | 1720 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y5HM010163 | NPME | 1722 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y7HM010164 | NPME | 1723 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y9HM010165 | NPME | 1724 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y2HM010167 | NPME | 1726 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y6HM010169 | NPME | 1728 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y4HM010171 | NPME | 1730 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y6HM010172 | NPME | 1731 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y8HM010173 | NPME | 1732 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01YXHM010174 | NPME | 1733 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y1HM010175 | NPME | 1734 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y3HM010176 | NPME | 1735 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y7HM010178 | NPME | 1737 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y9HM010179 | NPME | 1738 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y9HM010182 | NPME | 1741 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y0HM010183 | NPME | 1742 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y2HM010184 | NPME | 1743 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y4HM010185 | NPME | 1744 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y6HM010186 | NPME | 1745 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y8HM010187 | NPME | 1746 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01YXHM010188 | NPME | 1747 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y1HM010189 | NPME | 1748 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y6HM084223 | NPME | 131 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y1HM084226 | NPME | 134 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y3HM084227 | NPME | 135 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y3HM084230 | NPME | 138 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y5HM084231 | NPME | 139 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y9HM084233 | NPME | 141 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y0HM084234 | NPME | 142 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y2HM084235 | NPME | 143 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02YXHM084239 | NPME | 147 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y8HM084241 | NPME | 149 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y8HM084224 | NPME | 89249 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y4HM084236 | NPME | 89250 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y5HM010180 | NPME | 1739 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y7HM010181 | NPME | 1740 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y8HM010190 | NPME | 1749 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y4HM084222 | NPME | 130 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02YXHM084225 | NPME | 133 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y5HM084228 | NPME | 136 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y7HM084229 | NPME | 137 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y7HM084232 | NPME | 140 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y8HM084238 | NPME | 146 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y6HM084240 | NPME | 148 | TRACTOR | IN | IN | 2 | MACK |
| 4V4M19EG1GN962785 | REIM | 66324 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG4GN962750 | REIM | 66339 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG6GN962782 | REIM | 66358 | TRACTOR | IN | PQ | 2 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4M19EG2GN962777 | REIM | 66359 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG5GN962739 | REIM | 66360 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG8GN962833 | REIM | 66410 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG5GN962787 | REIM | 66411 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG4GN962764 | REIM | 66541 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG2GN962794 | REIM | 66647 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG0GN962809 | REIM | 66648 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EGXGN962803 | REIM | 66649 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG6GN962748 | REIM | 66664 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EGXGN962798 | REIM | 66665 | TRACTOR | ON | PQ | 2 | VOLVO |
| 4V4M19EG5GN962837 | REIM | 66985 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG7GN962788 | REIM | 67039 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG8GN962752 | REIM | 67040 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG4GN962814 | REIM | 67041 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG6GN962815 | REIM | 67042 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG3GN962836 | REIM | 67103 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG5GN962806 | REIM | 67104 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG1GN962804 | REIM | 67105 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG5GN962742 | REIM | 67106 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG8GN962749 | REIM | 67107 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG3GN962741 | REIM | 67108 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962759 | REIM | 67109 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG4GN962831 | REIM | 67119 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG6GN962762 | REIM | 67121 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962826 | REIM | 67124 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG3GN962769 | REIM | 67125 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG5GN962756 | REIM | 67126 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962776 | REIM | 67127 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG1GN962818 | REIM | 67131 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG7GN962824 | REIM | 67134 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG5GN962773 | REIM | 67143 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG1GN962799 | REIM | 67148 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG7GN962774 | REIM | 67151 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG1GN962740 | REIM | 67152 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG9GN962789 | REIM | 67153 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962812 | REIM | 67154 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG6GN962796 | REIM | 67155 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG1GN962821 | REIM | 67156 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG3GN962805 | REIM | 67158 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG9GN962825 | REIM | 67160 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG2GN962827 | REIM | 67163 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG9GN962758 | REIM | 67184 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG7GN962791 | REIM | 67185 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG5GN962823 | REIM | 67186 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG6GN962751 | REIM | 67187 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG9GN962792 | REIM | 67188 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EGXGN962767 | REIM | 67203 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG4GN962828 | REIM | 67204 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG6GN962832 | REIM | 67239 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG8GN962802 | REIM | 67240 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG3GN962786 | REIM | 67246 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EGXGN962834 | REIM | 67247 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962793 | REIM | 67249 | TRACTOR | IN | SK | 2 | VOLVO |
| 4V4M19EG2GN962830 | REIM | 67250 | TRACTOR | IN | SK | 2 | VOLVO |
| 4V4M19EG3GN962819 | REIM | 67253 | TRACTOR | IN | SK | 2 | VOLVO |
| 4V4M19EG9GN962811 | REIM | 67259 | TRACTOR | IN | SK | 2 | VOLVO |
| 4V4M19EG6GN962829 | REIM | 67260 | TRACTOR | IN | SK | 2 | VOLVO |
| 4V4M19EG8GN962816 | REIM | 67271 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG4GN962781 | REIM | 67272 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG9GN962775 | REIM | 67273 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG7GN962743 | REIM | 67275 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG4GN962747 | REIM | 67276 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG4GN962800 | REIM | 67284 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG7GN962810 | REIM | 67285 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG3GN962822 | REIM | 67299 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG6GN962801 | REIM | 67300 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG0GN962745 | REIM | 67311 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG2GN962763 | REIM | 67393 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG7GN962757 | REIM | 67406 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG9GN962744 | REIM | 67424 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG7GN962760 | REIM | 67492 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EG1GN962768 | REIM | 67493 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EG2GN962813 | REIM | 67494 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EGXGN962820 | REIM | 67495 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EG1GN962754 | REIM | 67498 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EG3GN962772 | REIM | 67531 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EGXGN962770 | REIM | 67532 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EG1GN962771 | REIM | 67547 | TRACTOR | IN | BC | 2 | VOLVO |
| 1XPBA48X0HD441869 | RETL | 67390 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441848 | RETL | 67411 | TRACTOR | IN | IN | 2 | PETERBILT |
| 4V4M19EH2EN161417 | RETL | 67648 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN2GN214565 | RETL | 67649 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4M19EH9EN161429 | RETL | 67651 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH7EN161428 | RETL | 67652 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN3GN214526 | RETL | 67655 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4M19EH7EN161400 | RETL | 781827 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH4EN161404 | RETL | 781831 | TRACTOR | IN | IN | 2 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4M19EHXEN161407 | RETL | 781834 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH1EN161411 | RETL | 781838 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH3EN161412 | RETL | 781839 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH5EN161413 | RETL | 781840 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH9EN161415 | RETL | 781842 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH0EN161416 | RETL | 781843 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH6EN161419 | RETL | 781846 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH2EN161420 | RETL | 781847 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH4EN161421 | RETL | 781848 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH6EN161422 | RETL | 781849 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH0EN161433 | RETL | 781860 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH2EN161434 | RETL | 781861 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN4GN214504 | RETL | 781922 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN214505 | RETL | 781923 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214507 | RETL | 781925 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN214508 | RETL | 781926 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214510 | RETL | 781928 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN214511 | RETL | 781929 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN214514 | RETL | 781931 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN0GN214516 | RETL | 781933 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN214523 | RETL | 781938 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214524 | RETL | 781939 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN214525 | RETL | 781940 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN214528 | RETL | 781943 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN214531 | RETL | 781946 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN9GN214532 | RETL | 781947 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN0GN214533 | RETL | 781948 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN2GN214534 | RETL | 781949 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN4GN214535 | RETL | 781950 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN214536 | RETL | 781951 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN214560 | RETL | 781954 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN214562 | RETL | 781956 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN214568 | RETL | 781962 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN214574 | RETL | 781968 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN0GN214595 | RETL | 781970 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN214598 | RETL | 781973 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN2GN214601 | RETL | 781976 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN214603 | RETL | 781978 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN214604 | RETL | 781979 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214605 | RETL | 781980 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN214608 | RETL | 781983 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN214609 | RETL | 781984 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN279615 | RETL | 781987 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN279616 | RETL | 781988 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN279617 | RETL | 781989 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN279622 | RETL | 781994 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN279623 | RETL | 781995 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4MC9EHXEN161448 | RETL | 9260 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDJAPR4GN214619 | RETL | 79804 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR9GN214616 | RETL | 79805 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR3GN214613 | RETL | 79806 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4MC9EH5EN161440 | RETL | 79918 | TRACTOR | IN | IN | 2 | VOLVO |
| 1XPBA48X1HD441878 | RETL | 82036 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X4HD441914 | RETL | 9320 | TRACTOR | IN | IN | 2 | PETERBILT |
| 3HSDGAPN9GN279624 | RETL | 67624 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4M19EH4EN161399 | RETL | 81826 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH9EN161401 | RETL | 81828 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH0EN161402 | RETL | 81829 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH2EN161403 | RETL | 81830 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH1EN161408 | RETL | 81835 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH3EN161409 | RETL | 81836 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH7EN161414 | RETL | 81841 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH4EN161418 | RETL | 81845 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH8EN161423 | RETL | 81850 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH1EN161425 | RETL | 81852 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH5EN161430 | RETL | 81857 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH9EN161432 | RETL | 81859 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH4EN161435 | RETL | 81862 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN3GN084652 | RETL | 81921 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN214506 | RETL | 81924 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN214509 | RETL | 81927 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN9GN214515 | RETL | 81932 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN9GN214530 | RETL | 81945 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN9GN214563 | RETL | 81957 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214569 | RETL | 81963 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN214575 | RETL | 81969 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN4GN214602 | RETL | 81977 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN279620 | RETL | 81992 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN279621 | RETL | 81993 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBA48X4HD441843 | RETL | 82001 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X8HD441845 | RETL | 82003 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441847 | RETL | 82005 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441850 | RETL | 82008 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441851 | RETL | 82009 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441852 | RETL | 82010 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X7HD441853 | RETL | 82011 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441854 | RETL | 82012 | TRACTOR | IN | IN | 2 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBA48X0HD441855 | RETL | 82013 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X2HD441856 | RETL | 82014 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X4HD441857 | RETL | 82015 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X6HD441858 | RETL | 82016 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X8HD441859 | RETL | 82017 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X4HD441860 | RETL | 82018 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X6HD441861 | RETL | 82019 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X8HD441862 | RETL | 82020 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48XXHD441863 | RETL | 82021 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441864 | RETL | 82022 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441865 | RETL | 82023 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441866 | RETL | 82024 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X7HD441867 | RETL | 82025 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441868 | RETL | 82026 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X7HD441870 | RETL | 82028 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441871 | RETL | 82029 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X0HD441872 | RETL | 82030 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X2HD441873 | RETL | 82031 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X4HD441874 | RETL | 82032 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X6HD441875 | RETL | 82033 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X8HD441876 | RETL | 82034 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48XXHD441877 | RETL | 82035 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441879 | RETL | 82037 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48XXHD441880 | RETL | 82038 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441881 | RETL | 82039 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441882 | RETL | 82040 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441883 | RETL | 82041 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441885 | RETL | 82043 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X0HD441886 | RETL | 82044 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X2HD441887 | RETL | 82045 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X6HD441889 | RETL | 82047 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X4HD441891 | RETL | 82049 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X6HD441892 | RETL | 82050 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X8HD441893 | RETL | 82051 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48XXHD441894 | RETL | 82052 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441895 | RETL | 82053 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441896 | RETL | 82054 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441897 | RETL | 82055 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X7HD441898 | RETL | 82056 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441899 | RETL | 82057 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441900 | RETL | 82058 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441901 | RETL | 82059 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441902 | RETL | 82060 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X7HD441903 | RETL | 82061 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441904 | RETL | 82062 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X0HD441905 | RETL | 82063 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1JD478970 | RETL | 82117 | TRACTOR | IN | IN | 2 | PETERBILT |
| 4V4MC9EH9EN161439 | RETL | 9251 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH7EN161441 | RETL | 9253 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH1EN161449 | RETL | 9261 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH8EN161450 | RETL | 9262 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EHXEN161451 | RETL | 9263 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH1EN161452 | RETL | 9264 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH3EN161453 | RETL | 9265 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH5EN161454 | RETL | 9266 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH7EN161455 | RETL | 9267 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH0EN161457 | RETL | 9269 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH0EN161460 | RETL | 9272 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDJAPR4GN084664 | RETL | 9306 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPRXGN214611 | RETL | 9307 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR1GN214612 | RETL | 9308 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR7GN214615 | RETL | 9311 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR0GN214617 | RETL | 9313 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR2GN214618 | RETL | 9314 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBD49X9HD441911 | RETL | 9317 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X2HD441913 | RETL | 9319 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X4HD442030 | RETL | 9321 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X6HD442031 | RETL | 9322 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X8HD442032 | RETL | 9323 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49XXHD442033 | RETL | 9324 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X1HD442034 | RETL | 9325 | TRACTOR | IN | IN | 2 | PETERBILT |
| 4V4M19EG2GN962746 | YRCF | 66210 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG6GN962779 | YRCF | 66212 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG8GN962783 | YRCF | 66242 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG3GN962755 | YRCF | 66243 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG4GN962778 | YRCF | 66259 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG1GN962835 | YRCF | 66265 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EGXGN962817 | YRCF | 66273 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG9GN962808 | YRCF | 66282 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG7GN962807 | YRCF | 66288 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG8GN962797 | YRCF | 66294 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG6GN962765 | YRCF | 66334 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG2GN962780 | YRCF | 66338 | TRACTOR | IN | IN | 2 | VOLVO |
| 3AKBGADV2GDHC3552 | YRCF | 66530 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 4V4M19EHXEN161424 | YRCF | 66855 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPNXGN214538 | YRCF | 66859 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN2GN214520 | YRCF | 66863 | TRACTOR | IN | IN | 2 | INTERNATIONAL |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3HSDGAPN5GN214527 | YRCF | 66865 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN214567 | YRCF | 66866 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN214599 | YRCF | 66868 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN214607 | YRCF | 66871 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN279614 | YRCF | 66872 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN279618 | YRCF | 66873 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1M1AW01Y5HM010177 | YRCF | 67057 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y4HM010168 | YRCF | 67115 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y3HM010162 | YRCF | 67116 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y6HM010155 | YRCF | 67138 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01YXHM010160 | YRCF | 67142 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y8HM010156 | YRCF | 67144 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01YXHM010157 | YRCF | 67150 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y1HM010158 | YRCF | 67157 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y0HM010166 | YRCF | 67166 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y2HM010170 | YRCF | 67330 | TRACTOR | IN | IN | 2 | MACK |
| 1XPBAP8X9JD487014 | YRCF | 67352 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X2JD486982 | YRCF | 67353 | TRACTOR | IN | IN | 2 | PETERBILT |
| 3HSDGAPN9GN214529 | YRCF | 67379 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBA48XXHD441846 | YRCF | 67380 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X2HD441842 | YRCF | 67381 | TRACTOR | IN | IN | 2 | PETERBILT |
| 3HSDGAPN3GN214610 | YRCF | 67387 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN279619 | YRCF | 67388 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBA48X6HD441844 | YRCF | 67389 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441849 | YRCF | 67410 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XKYAP8X1JJ207636 | YRCF | 67429 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XPBAP8X0JD486981 | YRCF | 67441 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X8JD487005 | YRCF | 67442 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XKYAP8X0JJ207630 | YRCF | 67450 | TRACTOR | IN | IN | 2 | KENWORTH |
| 3HSDGAPN8GN214537 | YRCF | 67456 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN214561 | YRCF | 67457 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBAP8X9JD481648 | YRCF | 67510 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XKYAP8X1JJ207622 | YRCF | 67513 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X5JJ207638 | YRCF | 67555 | TRACTOR | IN | IN | 2 | KENWORTH |
| 4V4W19EG4KN901917 | YRCF | 67584 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901926 | YRCF | 67585 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901903 | YRCF | 67612 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN6GN214519 | YRCF | 67631 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4M19EHXEN161410 | YRCF | 781837 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH3EN161426 | YRCF | 781853 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH5EN161427 | YRCF | 781854 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH7EN161431 | YRCF | 781858 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN2GN214517 | YRCF | 781934 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN4GN214518 | YRCF | 781935 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN0GN214564 | YRCF | 781958 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214572 | YRCF | 781966 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN214573 | YRCF | 781967 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN0GN214600 | YRCF | 781975 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN214606 | YRCF | 781981 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1FUGGEDV0HLHS3902 | YRCF | 67254 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS4016 | YRCF | 67263 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3773 | YRCF | 79355 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4029 | YRCF | 79440 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 4V4MC9EH4EN161459 | YRCF | 79560 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH9EN161456 | YRCF | 79561 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH2EN161458 | YRCF | 79563 | TRACTOR | IN | IN | 2 | VOLVO |
| 3AKGGEDV2GDHC5041 | YRCF | 79596 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4995 | YRCF | 79597 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4813 | YRCF | 79598 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4943 | YRCF | 79599 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4996 | YRCF | 79600 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5002 | YRCF | 79601 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4904 | YRCF | 79664 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3919 | YRCF | 79676 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3868 | YRCF | 79716 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6633 | YRCF | 79722 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3945 | YRCF | 79723 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS4002 | YRCF | 79724 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS4033 | YRCF | 79725 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5044 | YRCF | 79730 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3977 | YRCF | 79731 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4910 | YRCF | 79732 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3845 | YRCF | 79735 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3870 | YRCF | 79742 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3951 | YRCF | 79743 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3986 | YRCF | 79744 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3895 | YRCF | 79745 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3856 | YRCF | 79746 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4069 | YRCF | 79751 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3992 | YRCF | 79757 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6597 | YRCF | 79758 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3850 | YRCF | 79761 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4916 | YRCF | 79762 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3862 | YRCF | 79764 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5072 | YRCF | 79765 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5058 | YRCF | 79766 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3820 | YRCF | 79767 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGGEDVXHLHS4068 | YRCF | 79768 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4026 | YRCF | 79769 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4997 | YRCF | 79771 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4912 | YRCF | 79772 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4927 | YRCF | 79773 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3827 | YRCF | 79774 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5027 | YRCF | 79778 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4933 | YRCF | 79867 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3901 | YRCF | 79887 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4880 | YRCF | 79888 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4823 | YRCF | 79894 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3853 | YRCF | 79913 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5042 | YRCF | 79925 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4994 | YRCF | 79942 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3914 | YRCF | 79971 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5001 | YRCF | 79973 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3904 | YRCF | 79984 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1M1AW02Y6HM084237 | YRCF | 79985 | TRACTOR | IN | IN | 2 | MACK |
| 1FUGGEDVXJLJN6570 | YRCF | 79987 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5038 | YRCF | 79989 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4992 | YRCF | 89238 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4926 | YRCF | 89239 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3877 | YRCF | 89240 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3906 | YRCF | 89241 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3933 | YRCF | 89242 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3999 | YRCF | 89243 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4032 | YRCF | 89244 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3959 | YRCF | 89259 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6631 | YRCF | 89261 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3847 | YRCF | 89264 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5052 | YRCF | 89265 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5034 | YRCF | 89268 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3923 | YRCF | 89276 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1XKYAP8X8JJ207617 | YRCF | 12480 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8XXJJ207618 | YRCF | 12481 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X1JJ207619 | YRCF | 12482 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X8JJ207620 | YRCF | 12483 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8XXJJ207621 | YRCF | 12484 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X3JJ207623 | YRCF | 12486 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X7JJ207625 | YRCF | 12488 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X9JJ207626 | YRCF | 12489 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X0JJ207627 | YRCF | 12490 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X2JJ207628 | YRCF | 12491 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X4JJ207629 | YRCF | 12492 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X2JJ207631 | YRCF | 12494 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X4JJ207632 | YRCF | 12495 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X6JJ207633 | YRCF | 12496 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8XXJJ207635 | YRCF | 12498 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X3JJ207637 | YRCF | 12500 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XPBAP8XXJD486969 | YRCF | 12740 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X5JD486975 | YRCF | 12746 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X2JD486979 | YRCF | 12750 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X3JD487008 | YRCF | 12779 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X7JD487013 | YRCF | 12784 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X6JD487018 | YRCF | 12789 | TRACTOR | IN | IN | 2 | PETERBILT |
| 4V4W19EG9KN901878 | YRCF | 12971 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901879 | YRCF | 12972 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901880 | YRCF | 12973 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901881 | YRCF | 12974 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901882 | YRCF | 12975 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901883 | YRCF | 12976 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901884 | YRCF | 12977 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901885 | YRCF | 12978 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901886 | YRCF | 12979 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901887 | YRCF | 12980 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901888 | YRCF | 12981 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901889 | YRCF | 12982 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901890 | YRCF | 12983 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901891 | YRCF | 12984 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901892 | YRCF | 12985 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901893 | YRCF | 12986 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901894 | YRCF | 12987 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901895 | YRCF | 12988 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901896 | YRCF | 12989 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901897 | YRCF | 12990 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901898 | YRCF | 12991 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901899 | YRCF | 12992 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901900 | YRCF | 12993 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901901 | YRCF | 12994 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901902 | YRCF | 12995 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901904 | YRCF | 12997 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901905 | YRCF | 12998 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901906 | YRCF | 12999 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901907 | YRCF | 14000 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901908 | YRCF | 14001 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901909 | YRCF | 14002 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901910 | YRCF | 14003 | TRACTOR | IN | IN | 2 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG3KN901911 | YRCF | 14004 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901912 | YRCF | 14005 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901913 | YRCF | 14006 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901914 | YRCF | 14007 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901915 | YRCF | 14008 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901916 | YRCF | 14009 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901919 | YRCF | 14012 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901920 | YRCF | 14013 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901921 | YRCF | 14014 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901922 | YRCF | 14015 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901923 | YRCF | 14016 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901924 | YRCF | 14017 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901925 | YRCF | 14018 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901927 | YRCF | 14020 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901928 | YRCF | 14021 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901929 | YRCF | 14022 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901930 | YRCF | 14023 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901931 | YRCF | 14024 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901932 | YRCF | 14025 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901933 | YRCF | 14026 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901934 | YRCF | 14027 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901935 | YRCF | 14028 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901936 | YRCF | 14029 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901937 | YRCF | 14030 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901938 | YRCF | 14031 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901939 | YRCF | 14032 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901940 | YRCF | 14033 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901942 | YRCF | 14035 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901943 | YRCF | 14036 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901944 | YRCF | 14037 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901945 | YRCF | 14038 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901946 | YRCF | 14039 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901947 | YRCF | 14040 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901948 | YRCF | 14041 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901949 | YRCF | 14042 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901950 | YRCF | 14043 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901951 | YRCF | 14044 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901952 | YRCF | 14045 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901953 | YRCF | 14046 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901954 | YRCF | 14047 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901955 | YRCF | 14048 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901956 | YRCF | 14049 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901957 | YRCF | 14050 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901958 | YRCF | 14051 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN907601 | YRCF | 14352 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EGXGN962784 | YRCF | 47554 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG4GN962795 | YRCF | 47577 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH6EN161405 | YRCF | 81832 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN2GN214596 | YRCF | 81971 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN4GN214597 | YRCF | 81972 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBA48X7HD441884 | YRCF | 82042 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X4HD441888 | YRCF | 82046 | TRACTOR | IN | IN | 2 | PETERBILT |
| 4V4MC9EH7EN161438 | YRCF | 9250 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH6EN161446 | YRCF | 9258 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDJAPR5GN214614 | YRCF | 9310 | TRACTOR | IN | IN | 2 | INTERNATIONAL |

## **Schedule 5.22(b)**

## **Rolling Stock that constitutes Prepetition UST Tranche B Priority Collateral**

As of August 28, 2023

[Attached]

| VIN | BRAND | UNIT | TYPE | TITLE STATE | REGISTRATION STATE | COLLATERAL CATEGORY | MAKE |
|-----|-------|------|------|-------------|--------------------|--------------------|------|
| 5V8VC4011MM109091 | HMES | 521000 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013MM109092 | HMES | 521001 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015MM109093 | HMES | 521002 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017MM109094 | HMES | 521003 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019MM109095 | HMES | 521004 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010MM109096 | HMES | 521005 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012MM109097 | HMES | 521006 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014MM109098 | HMES | 521007 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016MM109099 | HMES | 521008 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019MM109100 | HMES | 521009 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010MM109101 | HMES | 521010 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012MM109102 | HMES | 521011 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014MM109103 | HMES | 521012 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016MM109104 | HMES | 521013 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018MM109105 | HMES | 521014 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XMM109106 | HMES | 521015 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203251 | HMES | 521016 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017NM203252 | HMES | 521017 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203253 | HMES | 521018 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203254 | HMES | 521019 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012NM203255 | HMES | 521020 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014NM203256 | HMES | 521021 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203257 | HMES | 521022 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203258 | HMES | 521023 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XNM203259 | HMES | 521024 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203260 | HMES | 521025 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203261 | HMES | 521026 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XNM203262 | HMES | 521027 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4011NM203263 | HMES | 521028 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013NM203264 | HMES | 521029 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203265 | HMES | 521030 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017NM203266 | HMES | 521031 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203267 | HMES | 521032 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203268 | HMES | 521033 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012NM203269 | HMES | 521034 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203270 | HMES | 521035 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203271 | HMES | 521036 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012NM203272 | HMES | 521037 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014NM203273 | HMES | 521038 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203274 | HMES | 521039 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203275 | HMES | 521040 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XNM203276 | HMES | 521041 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4011NM203277 | HMES | 521042 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013NM203278 | HMES | 521043 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203279 | HMES | 521044 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4011NM203280 | HMES | 521045 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013NM203281 | HMES | 521046 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203282 | HMES | 521047 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017NM203283 | HMES | 521048 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203284 | HMES | 521049 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203285 | HMES | 521050 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012NM203286 | HMES | 521051 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014NM203287 | HMES | 521052 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203288 | HMES | 521053 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203289 | HMES | 521054 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014NM203290 | HMES | 521055 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203291 | HMES | 521056 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203292 | HMES | 521057 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XNM203293 | HMES | 521058 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4011NM203294 | HMES | 521059 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013NM203295 | HMES | 521060 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203296 | HMES | 521061 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017NM203297 | HMES | 521062 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203298 | HMES | 521063 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203299 | HMES | 521064 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013NM203300 | HMES | 521065 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203301 | HMES | 521066 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017NM203302 | HMES | 521067 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203303 | HMES | 521068 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203304 | HMES | 521069 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012NM203305 | HMES | 521070 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014NM203306 | HMES | 521071 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203307 | HMES | 521072 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203308 | HMES | 521073 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC401XNM203309 | HMES | 521074 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203310 | HMES | 521075 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203311 | HMES | 521076 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XNM203312 | HMES | 521077 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM204692 | HMES | 530994 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM204704 | HMES | 531006 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV532D2EL795154 | HMES | 453662 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794083 | HMES | 453671 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL796207 | HMES | 453675 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL795229 | HMES | 453677 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL795477 | HMES | 453678 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795787 | HMES | 453679 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL796239 | HMES | 453680 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL796288 | HMES | 453681 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796378 | HMES | 453682 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VA4828MM109107 | HMES | 421000 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XMM109108 | HMES | 421001 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821MM109109 | HMES | 421002 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828MM109110 | HMES | 421003 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XMM109111 | HMES | 421004 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821MM109112 | HMES | 421005 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823MM109113 | HMES | 421006 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825MM109114 | HMES | 421007 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827MM109115 | HMES | 421008 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829MM109116 | HMES | 421009 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820MM109117 | HMES | 421010 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822MM109118 | HMES | 421011 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824MM109119 | HMES | 421012 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820MM109120 | HMES | 421013 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822MM109121 | HMES | 421014 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824MM109122 | HMES | 421015 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826MM109123 | HMES | 421016 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828MM109124 | HMES | 421017 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XMM109125 | HMES | 421018 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821MM109126 | HMES | 421019 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823MM109127 | HMES | 421020 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825MM109128 | HMES | 421021 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827MM109129 | HMES | 421022 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823MM109130 | HMES | 421023 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825MM109131 | HMES | 421024 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827MM109132 | HMES | 421025 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829MM109133 | HMES | 421026 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820MM109134 | HMES | 421027 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822MM109135 | HMES | 421028 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824MM109136 | HMES | 421029 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826MM109137 | HMES | 421030 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828MM109138 | HMES | 421031 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XMM109139 | HMES | 421032 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826MM109140 | HMES | 421033 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828MM109141 | HMES | 421034 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XMM109142 | HMES | 421035 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821MM109143 | HMES | 421036 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823MM109144 | HMES | 421037 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825MM109145 | HMES | 421038 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827MM109146 | HMES | 421039 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201092 | HMES | 421040 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201093 | HMES | 421041 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201094 | HMES | 421042 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201095 | HMES | 421043 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201096 | HMES | 421044 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201097 | HMES | 421045 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201098 | HMES | 421046 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201099 | HMES | 421047 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201100 | HMES | 421048 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201101 | HMES | 421049 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201102 | HMES | 421050 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201103 | HMES | 421051 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201104 | HMES | 421052 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201105 | HMES | 421053 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201106 | HMES | 421054 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201107 | HMES | 421055 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201108 | HMES | 421056 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201109 | HMES | 421057 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201110 | HMES | 421058 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201111 | HMES | 421059 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA4822NT201112 | HMES | 421060 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201113 | HMES | 421061 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201114 | HMES | 421062 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201115 | HMES | 421063 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201116 | HMES | 421064 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201117 | HMES | 421065 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201118 | HMES | 421066 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201119 | HMES | 421067 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201120 | HMES | 421068 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201121 | HMES | 421069 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201122 | HMES | 421070 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201123 | HMES | 421071 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201124 | HMES | 421072 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201126 | HMES | 421074 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201127 | HMES | 421075 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201128 | HMES | 421076 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201129 | HMES | 421077 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201130 | HMES | 421078 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201131 | HMES | 421079 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201132 | HMES | 421080 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201133 | HMES | 421081 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201134 | HMES | 421082 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201135 | HMES | 421083 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201136 | HMES | 421084 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201137 | HMES | 421085 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201138 | HMES | 421086 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201139 | HMES | 421087 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201140 | HMES | 421088 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201141 | HMES | 421089 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201142 | HMES | 421090 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201143 | HMES | 421091 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201144 | HMES | 421092 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201145 | HMES | 421093 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201146 | HMES | 421094 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201147 | HMES | 421095 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201148 | HMES | 421096 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201149 | HMES | 421097 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201150 | HMES | 421098 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201151 | HMES | 421099 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201152 | HMES | 421100 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201153 | HMES | 421101 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201154 | HMES | 421102 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201155 | HMES | 421103 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201156 | HMES | 421104 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201157 | HMES | 421105 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201158 | HMES | 421106 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201159 | HMES | 421107 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201160 | HMES | 421108 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201161 | HMES | 421109 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201162 | HMES | 421110 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201163 | HMES | 421111 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201164 | HMES | 421112 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201165 | HMES | 421113 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201166 | HMES | 421114 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201167 | HMES | 421115 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201168 | HMES | 421116 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201169 | HMES | 421117 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201170 | HMES | 421118 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201171 | HMES | 421119 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201172 | HMES | 421120 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201173 | HMES | 421121 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201174 | HMES | 421122 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201175 | HMES | 421123 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201176 | HMES | 421124 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201177 | HMES | 421125 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201178 | HMES | 421126 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201179 | HMES | 421127 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201180 | HMES | 421128 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201181 | HMES | 421129 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201182 | HMES | 421130 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201183 | HMES | 421131 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201184 | HMES | 421132 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201185 | HMES | 421133 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201186 | HMES | 421134 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201187 | HMES | 421135 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA4822NT201188 | HMES | 421136 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201189 | HMES | 421137 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201190 | HMES | 421138 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201191 | HMES | 421139 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV532D4EL793941 | HMES | 453597 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL793987 | HMES | 453598 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794488 | HMES | 453599 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794825 | HMES | 453600 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL795303 | HMES | 453601 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL796065 | HMES | 453602 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794088 | HMES | 453603 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794313 | HMES | 453604 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794703 | HMES | 453605 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794750 | HMES | 453606 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL795628 | HMES | 453607 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL755254 | HMES | 453608 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL755279 | HMES | 453609 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL755403 | HMES | 453610 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL755405 | HMES | 453611 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL755406 | HMES | 453612 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL793965 | HMES | 453613 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794010 | HMES | 453614 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794050 | HMES | 453615 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL794080 | HMES | 453616 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794121 | HMES | 453617 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794170 | HMES | 453618 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794217 | HMES | 453619 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794257 | HMES | 453620 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794283 | HMES | 453621 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL794335 | HMES | 453622 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794341 | HMES | 453623 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794382 | HMES | 453624 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794419 | HMES | 453625 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794494 | HMES | 453626 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794498 | HMES | 453627 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL794600 | HMES | 453628 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794851 | HMES | 453629 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794862 | HMES | 453630 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794950 | HMES | 453631 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794960 | HMES | 453632 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL795079 | HMES | 453633 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795218 | HMES | 453634 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795245 | HMES | 453635 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795315 | HMES | 453636 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795332 | HMES | 453637 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795338 | HMES | 453638 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL795349 | HMES | 453639 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL795382 | HMES | 453640 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795419 | HMES | 453641 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL795454 | HMES | 453642 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795458 | HMES | 453643 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795476 | HMES | 453644 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795489 | HMES | 453645 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795617 | HMES | 453646 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795729 | HMES | 453647 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795742 | HMES | 453648 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL795764 | HMES | 453649 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795930 | HMES | 453650 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796056 | HMES | 453651 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL796075 | HMES | 453652 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL796104 | HMES | 453653 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL796237 | HMES | 453654 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL796247 | HMES | 453655 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL796392 | HMES | 453656 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794019 | HMES | 453670 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795890 | HMES | 453672 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL795996 | HMES | 453673 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL796079 | HMES | 453674 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL793994 | HMES | 453676 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VA5326NM204683 | HMES | 530985 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM204689 | HMES | 530991 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM204693 | HMES | 530995 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM204694 | HMES | 530996 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM204695 | HMES | 530997 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM204700 | HMES | 531002 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC5324NM204613 | HMES | 531570 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204620 | HMES | 531577 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204671 | HMES | 531628 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211041 | HMES | 531653 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109147 | HMES | 532100 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109148 | HMES | 532101 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109149 | HMES | 532102 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109150 | HMES | 532103 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109151 | HMES | 532104 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109152 | HMES | 532105 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109153 | HMES | 532106 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109154 | HMES | 532107 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109155 | HMES | 532108 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109156 | HMES | 532109 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109157 | HMES | 532110 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109158 | HMES | 532111 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109159 | HMES | 532112 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109160 | HMES | 532113 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109161 | HMES | 532114 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109162 | HMES | 532115 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109163 | HMES | 532116 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109164 | HMES | 532117 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109165 | HMES | 532118 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109166 | HMES | 532119 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109167 | HMES | 532120 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109168 | HMES | 532121 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109169 | HMES | 532122 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109170 | HMES | 532123 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109171 | HMES | 532124 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109172 | HMES | 532125 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109173 | HMES | 532126 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109174 | HMES | 532127 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109175 | HMES | 532128 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109176 | HMES | 532129 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109177 | HMES | 532130 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109178 | HMES | 532131 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109179 | HMES | 532132 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109180 | HMES | 532133 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109181 | HMES | 532134 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109182 | HMES | 532135 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109183 | HMES | 532136 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109184 | HMES | 532137 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109185 | HMES | 532138 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109186 | HMES | 532139 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109187 | HMES | 532140 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109188 | HMES | 532141 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109189 | HMES | 532142 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109190 | HMES | 532143 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109191 | HMES | 532144 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109192 | HMES | 532145 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109193 | HMES | 532146 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109194 | HMES | 532147 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109195 | HMES | 532148 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109196 | HMES | 532149 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109197 | HMES | 532150 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109198 | HMES | 532151 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109199 | HMES | 532152 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109200 | HMES | 532153 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109201 | HMES | 532154 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109202 | HMES | 532155 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109203 | HMES | 532156 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109204 | HMES | 532157 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109205 | HMES | 532158 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109206 | HMES | 532159 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109207 | HMES | 532160 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109208 | HMES | 532161 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109209 | HMES | 532162 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109210 | HMES | 532163 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201192 | HMES | 532164 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201193 | HMES | 532165 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201194 | HMES | 532166 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201195 | HMES | 532167 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201196 | HMES | 532168 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201197 | HMES | 532169 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201198 | HMES | 532170 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VA5320NT201199 | HMES | 532171 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VA5323NT201200 | HMES | 532172 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201201 | HMES | 532173 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201202 | HMES | 532174 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201203 | HMES | 532175 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201204 | HMES | 532176 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201205 | HMES | 532177 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324XNT201206 | HMES | 532178 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201207 | HMES | 532179 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201208 | HMES | 532180 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201209 | HMES | 532181 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201210 | HMES | 532182 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201211 | HMES | 532183 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201212 | HMES | 532184 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201213 | HMES | 532185 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201214 | HMES | 532186 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201215 | HMES | 532187 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201216 | HMES | 532188 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201217 | HMES | 532189 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201218 | HMES | 532190 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201220 | HMES | 532192 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201221 | HMES | 532193 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201222 | HMES | 532194 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324XNT201223 | HMES | 532195 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201224 | HMES | 532196 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201225 | HMES | 532197 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201226 | HMES | 532198 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201227 | HMES | 532199 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201228 | HMES | 532200 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201229 | HMES | 532201 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201230 | HMES | 532202 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201231 | HMES | 532203 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201232 | HMES | 532204 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201233 | HMES | 532205 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201234 | HMES | 532206 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201235 | HMES | 532207 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201236 | HMES | 532208 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324XNT201237 | HMES | 532209 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201238 | HMES | 532210 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201239 | HMES | 532211 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324XNT201240 | HMES | 532212 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201241 | HMES | 532213 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201242 | HMES | 532214 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201243 | HMES | 532215 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201244 | HMES | 532216 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201245 | HMES | 532217 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201246 | HMES | 532218 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201247 | HMES | 532219 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201248 | HMES | 532220 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201249 | HMES | 532221 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201250 | HMES | 532222 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201251 | HMES | 532223 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201252 | HMES | 532224 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201253 | HMES | 532225 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324XNT201254 | HMES | 532226 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201255 | HMES | 532227 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201256 | HMES | 532228 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201257 | HMES | 532229 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201258 | HMES | 532230 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201259 | HMES | 532231 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201260 | HMES | 532232 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201261 | HMES | 532233 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201262 | HMES | 532234 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201263 | HMES | 532235 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201264 | HMES | 532236 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201265 | HMES | 532237 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201266 | HMES | 532238 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201267 | HMES | 532239 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324XNT201268 | HMES | 532240 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201269 | HMES | 532241 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201270 | HMES | 532242 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324XNT201271 | HMES | 532243 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201272 | HMES | 532244 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201273 | HMES | 532245 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201274 | HMES | 532246 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA5321NT201275 | HMES | 532247 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201276 | HMES | 532248 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201277 | HMES | 532249 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201278 | HMES | 532250 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201279 | HMES | 532251 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201280 | HMES | 532252 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201281 | HMES | 532253 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201282 | HMES | 532254 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201283 | HMES | 532255 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201284 | HMES | 532256 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NT201285 | HMES | 532257 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201286 | HMES | 532258 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201287 | HMES | 532259 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201288 | HMES | 532260 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201289 | HMES | 532261 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201290 | HMES | 532262 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201291 | HMES | 532263 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201292 | HMES | 532264 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211126 | HMES | 532265 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211127 | HMES | 532266 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211128 | HMES | 532267 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211129 | HMES | 532268 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211130 | HMES | 532269 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211131 | HMES | 532270 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211132 | HMES | 532271 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211133 | HMES | 532272 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211134 | HMES | 532273 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211135 | HMES | 532274 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211136 | HMES | 532275 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211137 | HMES | 532276 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211138 | HMES | 532277 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211139 | HMES | 532278 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211140 | HMES | 532279 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211141 | HMES | 532280 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211142 | HMES | 532281 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211143 | HMES | 532282 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211144 | HMES | 532283 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211145 | HMES | 532284 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211146 | HMES | 532285 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211147 | HMES | 532286 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211148 | HMES | 532287 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211149 | HMES | 532288 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211150 | HMES | 532289 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211151 | HMES | 532290 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211152 | HMES | 532291 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211153 | HMES | 532292 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211154 | HMES | 532293 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211155 | HMES | 532294 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211156 | HMES | 532295 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211157 | HMES | 532296 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211158 | HMES | 532297 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211159 | HMES | 532298 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211160 | HMES | 532299 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211161 | HMES | 532300 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211162 | HMES | 532301 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211163 | HMES | 532302 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211164 | HMES | 532303 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211165 | HMES | 532304 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211166 | HMES | 532305 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211167 | HMES | 532306 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211168 | HMES | 532307 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211169 | HMES | 532308 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211170 | HMES | 532309 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211171 | HMES | 532310 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211172 | HMES | 532311 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211173 | HMES | 532312 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211174 | HMES | 532313 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211175 | HMES | 532314 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211176 | HMES | 532315 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211177 | HMES | 532316 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211178 | HMES | 532317 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211179 | HMES | 532318 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211180 | HMES | 532319 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211181 | HMES | 532320 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211182 | HMES | 532321 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA532XNM211183 | HMES | 532322 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211184 | HMES | 532323 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211185 | HMES | 532324 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211186 | HMES | 532325 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211187 | HMES | 532326 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211188 | HMES | 532327 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211189 | HMES | 532328 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211190 | HMES | 532329 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211191 | HMES | 532330 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211192 | HMES | 532331 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211193 | HMES | 532332 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211194 | HMES | 532333 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211195 | HMES | 532334 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211196 | HMES | 532335 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211197 | HMES | 532336 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211198 | HMES | 532337 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211199 | HMES | 532338 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211200 | HMES | 532339 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211201 | HMES | 532340 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211202 | HMES | 532341 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211203 | HMES | 532342 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211204 | HMES | 532343 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211205 | HMES | 532344 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211206 | HMES | 532345 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211207 | HMES | 532346 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211208 | HMES | 532347 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211209 | HMES | 532348 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211210 | HMES | 532349 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211211 | HMES | 532350 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211212 | HMES | 532351 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211213 | HMES | 532352 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211214 | HMES | 532353 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211215 | HMES | 532354 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211216 | HMES | 532355 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211217 | HMES | 532356 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211218 | HMES | 532357 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211219 | HMES | 532358 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211220 | HMES | 532359 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211221 | HMES | 532360 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211222 | HMES | 532361 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211223 | HMES | 532362 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211224 | HMES | 532363 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211225 | HMES | 532364 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM204708 | HMES | 532365 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV532D8EL794087 | NPME | 514001 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL794448 | NPME | 514003 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL794805 | NPME | 514004 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL795213 | NPME | 514005 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795376 | NPME | 514006 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795873 | NPME | 514008 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795879 | NPME | 514009 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795925 | NPME | 514010 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796008 | NPME | 514012 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794197 | NPME | 514002 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL795597 | NPME | 514007 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL795986 | NPME | 514011 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794005 | NPME | 514013 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VA5327MM109211 | NPME | 521078 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109212 | NPME | 521079 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109213 | NPME | 521080 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109214 | NPME | 521081 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109215 | NPME | 521082 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109216 | NPME | 521083 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109217 | NPME | 521084 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109218 | NPME | 521085 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109219 | NPME | 521086 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109220 | NPME | 521087 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109221 | NPME | 521088 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109222 | NPME | 521089 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109223 | NPME | 521090 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109224 | NPME | 521091 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109225 | NPME | 521092 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109226 | NPME | 521093 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109227 | NPME | 521094 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109228 | NPME | 521095 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA5324MM109229 | NPME | 521096 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109230 | NPME | 521097 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109231 | NPME | 521098 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109232 | NPME | 521099 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109233 | NPME | 521100 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109234 | NPME | 521101 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109235 | NPME | 521102 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109236 | NPME | 521103 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109237 | NPME | 521104 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109238 | NPME | 521105 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109239 | NPME | 521106 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109240 | NPME | 521107 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109241 | NPME | 521108 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109242 | NPME | 521109 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109243 | NPME | 521110 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109244 | NPME | 521111 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109245 | NPME | 521112 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109246 | NPME | 521113 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109247 | NPME | 521114 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109248 | NPME | 521115 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109249 | NPME | 521116 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109250 | NPME | 521117 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109251 | NPME | 521118 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109252 | NPME | 521119 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109253 | NPME | 521120 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109254 | NPME | 521121 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109255 | NPME | 521122 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109256 | NPME | 521123 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109257 | NPME | 521124 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109258 | NPME | 521125 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109259 | NPME | 521126 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109260 | NPME | 521127 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109261 | NPME | 521128 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109262 | NPME | 521129 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201293 | NPME | 522000 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201294 | NPME | 522001 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201295 | NPME | 522002 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201296 | NPME | 522003 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201297 | NPME | 522004 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201298 | NPME | 522005 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201299 | NPME | 522006 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201300 | NPME | 522007 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201301 | NPME | 522008 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201302 | NPME | 522009 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201303 | NPME | 522010 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201304 | NPME | 522011 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201305 | NPME | 522012 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201306 | NPME | 522013 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201307 | NPME | 522014 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201308 | NPME | 522015 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201309 | NPME | 522016 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201310 | NPME | 522017 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201311 | NPME | 522018 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201312 | NPME | 522019 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201313 | NPME | 522020 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201314 | NPME | 522021 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201315 | NPME | 522022 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201316 | NPME | 522023 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201317 | NPME | 522024 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201318 | NPME | 522025 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201319 | NPME | 522026 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201320 | NPME | 522027 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201321 | NPME | 522028 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201322 | NPME | 522029 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201323 | NPME | 522030 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201324 | NPME | 522031 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201325 | NPME | 522032 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201326 | NPME | 522033 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201327 | NPME | 522034 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201328 | NPME | 522035 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201329 | NPME | 522036 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201330 | NPME | 522037 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201331 | NPME | 522038 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201332 | NPME | 522039 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201333 | NPME | 522040 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA532XNM201334 | NPME | 522041 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201335 | NPME | 522042 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201336 | NPME | 522043 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201337 | NPME | 522044 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201338 | NPME | 522045 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201339 | NPME | 522046 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201340 | NPME | 522047 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201341 | NPME | 522048 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201342 | NPME | 522049 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201343 | NPME | 522050 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201344 | NPME | 522051 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324XNM201345 | NPME | 522052 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201346 | NPME | 522053 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201347 | NPME | 522054 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201348 | NPME | 522055 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201349 | NPME | 522056 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201350 | NPME | 522057 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201351 | NPME | 522058 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201352 | NPME | 522059 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201353 | NPME | 522060 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201354 | NPME | 522061 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201355 | NPME | 522062 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201356 | NPME | 522063 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201357 | NPME | 522064 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201358 | NPME | 522065 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201359 | NPME | 522066 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201360 | NPME | 522067 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201361 | NPME | 522068 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201362 | NPME | 522069 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201363 | NPME | 522070 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201364 | NPME | 522071 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201365 | NPME | 522072 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201366 | NPME | 522073 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201367 | NPME | 522074 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201368 | NPME | 522075 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201369 | NPME | 522076 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201370 | NPME | 522077 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201371 | NPME | 522078 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201372 | NPME | 522079 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201373 | NPME | 522080 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201374 | NPME | 522081 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201375 | NPME | 522082 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM210996 | NPME | 522083 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM210997 | NPME | 522084 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM210998 | NPME | 522085 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM210999 | NPME | 522086 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211000 | NPME | 522087 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211001 | NPME | 522088 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211002 | NPME | 522089 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211003 | NPME | 522090 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211004 | NPME | 522091 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211005 | NPME | 522092 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211006 | NPME | 522093 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211007 | NPME | 522094 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211008 | NPME | 522095 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211009 | NPME | 522096 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211010 | NPME | 522097 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211011 | NPME | 522098 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211012 | NPME | 522099 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211013 | NPME | 522100 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211014 | NPME | 522101 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211015 | NPME | 522102 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211016 | NPME | 522103 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211017 | NPME | 522104 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211018 | NPME | 522105 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211019 | NPME | 522106 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211020 | NPME | 522107 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211021 | NPME | 522108 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211022 | NPME | 522109 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211023 | NPME | 522110 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211024 | NPME | 522111 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211025 | NPME | 522112 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328MM109339 | REIM | 850349 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5324MM109340 | REIM | 850350 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5326MM109341 | REIM | 850351 | TRAILER | ON | ON | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC5328MM109342 | REIM | 850352 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC532XMM109343 | REIM | 850353 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5321MM109344 | REIM | 850354 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5323MM109345 | REIM | 850355 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5325MM109346 | REIM | 850356 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5327MM109347 | REIM | 850357 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5329MM109348 | REIM | 850358 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5320MM109349 | REIM | 850359 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5327MM109350 | REIM | 850360 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5322NM204593 | REIM | 850361 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5324NM204594 | REIM | 850362 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5326NM204595 | REIM | 850363 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5328NM204596 | REIM | 850364 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC532XNM204597 | REIM | 850365 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5321NM204598 | REIM | 850366 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5323NM204599 | REIM | 850367 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5326NM204600 | REIM | 850368 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5328NM204601 | REIM | 850369 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC532XNM204602 | REIM | 850370 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5321NM204603 | REIM | 850371 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5323NM204604 | REIM | 850372 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5325NM204605 | REIM | 850373 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5327NM204606 | REIM | 850374 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5329NM204607 | REIM | 850375 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5320NM204608 | REIM | 850376 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VA5324MM109263 | RETL | 530955 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109264 | RETL | 530956 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109277 | RETL | 530969 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM204681 | RETL | 530983 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM204685 | RETL | 530987 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM204690 | RETL | 530992 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM204696 | RETL | 530998 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM204697 | RETL | 530999 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM204702 | RETL | 531004 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM204709 | RETL | 531011 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM204715 | RETL | 531017 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM204716 | RETL | 531018 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM204726 | RETL | 531028 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109265 | RETL | 850860 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109266 | RETL | 850861 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109267 | RETL | 850862 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109268 | RETL | 850863 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109269 | RETL | 850864 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109270 | RETL | 850865 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109271 | RETL | 850866 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109272 | RETL | 850867 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109273 | RETL | 850868 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109274 | RETL | 850869 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109275 | RETL | 850870 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109276 | RETL | 850871 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109278 | RETL | 850872 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109279 | RETL | 850873 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109280 | RETL | 850874 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109281 | RETL | 850875 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109282 | RETL | 850876 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109283 | RETL | 850877 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109284 | RETL | 850878 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109285 | RETL | 850879 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109286 | RETL | 850880 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109287 | RETL | 850881 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109288 | RETL | 850882 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109289 | RETL | 850883 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109290 | RETL | 850884 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM204686 | RETL | 850888 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM204687 | RETL | 850889 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM204688 | RETL | 850890 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM204705 | RETL | 850896 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM204706 | RETL | 850897 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM204707 | RETL | 850898 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM204710 | RETL | 850900 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM204711 | RETL | 850901 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM204712 | RETL | 850902 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM204713 | RETL | 850903 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM204714 | RETL | 850904 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM204717 | RETL | 850907 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VA532XNM204718 | RETL | 850908 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VA5321NM204719 | RETL | 850909 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM204720 | RETL | 850910 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM204721 | RETL | 850911 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM204722 | RETL | 850912 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM204723 | RETL | 850913 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM204724 | RETL | 850914 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM204725 | RETL | 850915 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM204727 | RETL | 850916 | TRAILER | IN | IN | 1 | VANGUARD |
| 3H3V281C0HT286084 | RETL | 144446 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT286123 | RETL | 144448 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286363 | RETL | 144459 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT286372 | RETL | 144461 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286380 | RETL | 144462 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286391 | RETL | 144463 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286506 | RETL | 144475 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286584 | RETL | 144481 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT286645 | RETL | 144484 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286729 | RETL | 144488 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT286739 | RETL | 144489 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT286770 | RETL | 144492 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT286820 | RETL | 144495 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286976 | RETL | 144502 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C2HT287026 | RETL | 144507 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT287045 | RETL | 144508 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT287166 | RETL | 144514 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT287214 | RETL | 144515 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT287238 | RETL | 144517 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C2HT287270 | RETL | 144518 | TRAILER | IN | IN | 1 | HYUNDAI |
| 1DW1A2816HS716860 | RETL | 144524 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HS716864 | RETL | 144526 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HS716922 | RETL | 144532 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719024 | RETL | 144537 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB719045 | RETL | 144540 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719058 | RETL | 144543 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719125 | RETL | 144545 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB719143 | RETL | 144548 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719165 | RETL | 144550 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719260 | RETL | 144556 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719262 | RETL | 144557 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB719409 | RETL | 144568 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719438 | RETL | 144570 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719513 | RETL | 144577 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719626 | RETL | 144581 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719662 | RETL | 144583 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719707 | RETL | 144589 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719852 | RETL | 144595 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719977 | RETL | 144603 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719994 | RETL | 144605 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB720013 | RETL | 144607 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB720091 | RETL | 144614 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB720117 | RETL | 144616 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB720123 | RETL | 144618 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB720259 | RETL | 144627 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB720288 | RETL | 144630 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB720310 | RETL | 144633 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB720349 | RETL | 144637 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB720360 | RETL | 144639 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB720362 | RETL | 144640 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB720393 | RETL | 144642 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719103 | RETL | 144644 | TRAILER | IN | IN | 1 | HYUNDAI |
| 1DW1A281XHB720247 | RETL | 144647 | TRAILER | IN | IN | 1 | HYUNDAI |
| 1JJV281D7NL317853 | RETL | 289349 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317854 | RETL | 289350 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317855 | RETL | 289351 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317856 | RETL | 289352 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317857 | RETL | 289353 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317858 | RETL | 289354 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317859 | RETL | 289355 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317860 | RETL | 289356 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317861 | RETL | 289357 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317862 | RETL | 289358 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317863 | RETL | 289359 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317864 | RETL | 289360 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317865 | RETL | 289361 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D5NL317866 | RETL | 289362 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317867 | RETL | 289363 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317868 | RETL | 289364 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317869 | RETL | 289365 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317870 | RETL | 289366 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317871 | RETL | 289367 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317872 | RETL | 289368 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317873 | RETL | 289369 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317874 | RETL | 289370 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317875 | RETL | 289371 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317876 | RETL | 289372 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317877 | RETL | 289373 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317878 | RETL | 289374 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317879 | RETL | 289375 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317880 | RETL | 289376 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317882 | RETL | 289378 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL317883 | RETL | 289379 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317884 | RETL | 289380 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317885 | RETL | 289381 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317886 | RETL | 289382 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317887 | RETL | 289383 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317888 | RETL | 289384 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317889 | RETL | 289385 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317890 | RETL | 289386 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317891 | RETL | 289387 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317892 | RETL | 289388 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317893 | RETL | 289389 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317894 | RETL | 289390 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317895 | RETL | 289391 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317896 | RETL | 289392 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL317897 | RETL | 289393 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317898 | RETL | 289394 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317899 | RETL | 289395 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317900 | RETL | 289396 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317901 | RETL | 289397 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL317902 | RETL | 289398 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317903 | RETL | 289399 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317904 | RETL | 289400 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317905 | RETL | 289401 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317906 | RETL | 289402 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317907 | RETL | 289403 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317908 | RETL | 289404 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317909 | RETL | 289405 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317910 | RETL | 289406 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317911 | RETL | 289407 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317912 | RETL | 289408 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317913 | RETL | 289409 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317914 | RETL | 289410 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317915 | RETL | 289411 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL317916 | RETL | 289412 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317917 | RETL | 289413 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317918 | RETL | 289414 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317919 | RETL | 289415 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317920 | RETL | 289416 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317921 | RETL | 289417 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317922 | RETL | 289418 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317923 | RETL | 289419 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317924 | RETL | 289420 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317925 | RETL | 289421 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317926 | RETL | 289422 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317927 | RETL | 289423 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317928 | RETL | 289424 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317929 | RETL | 289425 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317930 | RETL | 289426 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317931 | RETL | 289427 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL317852 | RETL | 289348 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317881 | RETL | 289377 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VA5325NM204691 | RETL | 530993 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM204699 | RETL | 531001 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM204701 | RETL | 531003 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM204682 | RETL | 850885 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM204684 | RETL | 850886 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM204698 | RETL | 850893 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM204703 | RETL | 850895 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV401D1ML309533 | YRCF | 821699 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV401D3ML309534 | YRCF | 821700 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D5ML309535 | YRCF | 821701 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7ML309536 | YRCF | 821702 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7NL309537 | YRCF | 821703 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D9NL309538 | YRCF | 821704 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D0NL309539 | YRCF | 821705 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7NL309540 | YRCF | 821706 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D9NL309541 | YRCF | 821707 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D0NL309542 | YRCF | 821708 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D2NL309543 | YRCF | 821709 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D4NL309544 | YRCF | 821710 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D6NL309545 | YRCF | 821711 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D8NL309546 | YRCF | 821712 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401DXNL309547 | YRCF | 821713 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D1NL309548 | YRCF | 821714 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D3NL309549 | YRCF | 821715 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401DXNL309550 | YRCF | 821716 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D1NL309551 | YRCF | 821717 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D3NL309552 | YRCF | 821718 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D5NL309553 | YRCF | 821719 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7NL309554 | YRCF | 821720 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D9NL309555 | YRCF | 821721 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D0NL309556 | YRCF | 821722 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D2NL309557 | YRCF | 821723 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D4NL309558 | YRCF | 821724 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D6NL309559 | YRCF | 821725 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D2NL309560 | YRCF | 821726 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D4NL309561 | YRCF | 821727 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D6NL309562 | YRCF | 821728 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D8NL309563 | YRCF | 821729 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401DXNL309564 | YRCF | 821730 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D1NL309565 | YRCF | 821731 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D3NL309566 | YRCF | 821732 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D5NL309567 | YRCF | 821733 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7NL309568 | YRCF | 821734 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D9NL309569 | YRCF | 821735 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D5NL309570 | YRCF | 821736 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7NL309571 | YRCF | 821737 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D9NL309572 | YRCF | 821738 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D0NL309573 | YRCF | 821739 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D2NL309574 | YRCF | 821740 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D4NL309575 | YRCF | 821741 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D6NL309576 | YRCF | 821742 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D8NL309577 | YRCF | 821743 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401DXNL309578 | YRCF | 821744 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D1NL309579 | YRCF | 821745 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D8NL309580 | YRCF | 821746 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VA4820NT201125 | YRCF | 843870 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV532D4CL674557 | YRCF | 850285 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7DL711716 | YRCF | 850286 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7DL711943 | YRCF | 850287 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4DL711981 | YRCF | 850288 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4DL713505 | YRCF | 850289 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5DL755018 | YRCF | 850290 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6DL755075 | YRCF | 850291 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3DL712863 | YRCF | 850302 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8AL378552 | YRCF | 850303 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8CL679437 | YRCF | 850304 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1DL711288 | YRCF | 850305 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6DL711299 | YRCF | 850306 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1DL713249 | YRCF | 850307 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL755356 | YRCF | 850313 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL755411 | YRCF | 850314 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL793922 | YRCF | 850315 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL793964 | YRCF | 850316 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL794045 | YRCF | 850317 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794128 | YRCF | 850318 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL794163 | YRCF | 850319 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794164 | YRCF | 850320 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794214 | YRCF | 850321 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794279 | YRCF | 850322 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794330 | YRCF | 850323 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL794368 | YRCF | 850324 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794378 | YRCF | 850325 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794413 | YRCF | 850326 | TRAILER | IN | IN | 1 | WABASH |

| 1JJV532DXEL794513 | YRCF | 850327 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL794516 | YRCF | 850328 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794568 | YRCF | 850329 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794573 | YRCF | 850330 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794586 | YRCF | 850331 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794601 | YRCF | 850332 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794620 | YRCF | 850333 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL794626 | YRCF | 850334 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794740 | YRCF | 850335 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL794756 | YRCF | 850336 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794784 | YRCF | 850337 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794817 | YRCF | 850338 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794845 | YRCF | 850339 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL794854 | YRCF | 850340 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL794857 | YRCF | 850341 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794964 | YRCF | 850342 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794987 | YRCF | 850343 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795370 | YRCF | 850344 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795380 | YRCF | 850345 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795395 | YRCF | 850346 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795409 | YRCF | 850347 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795534 | YRCF | 850348 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL795614 | YRCF | 850377 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795630 | YRCF | 850378 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795749 | YRCF | 850379 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795770 | YRCF | 850380 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795780 | YRCF | 850381 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL795849 | YRCF | 850382 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL795909 | YRCF | 850383 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795913 | YRCF | 850384 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795939 | YRCF | 850385 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795987 | YRCF | 850386 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795993 | YRCF | 850387 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL796022 | YRCF | 850388 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL796157 | YRCF | 850389 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL796172 | YRCF | 850390 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796252 | YRCF | 850391 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL796356 | YRCF | 850392 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL755330 | YRCF | 850404 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL794028 | YRCF | 850405 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794140 | YRCF | 850406 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794297 | YRCF | 850407 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794538 | YRCF | 850408 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL794774 | YRCF | 850409 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794839 | YRCF | 850410 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794850 | YRCF | 850411 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794942 | YRCF | 850412 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794943 | YRCF | 850413 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795076 | YRCF | 850414 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795297 | YRCF | 850415 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795374 | YRCF | 850416 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795572 | YRCF | 850417 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL795709 | YRCF | 850418 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796039 | YRCF | 850419 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796123 | YRCF | 850420 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796154 | YRCF | 850421 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL796259 | YRCF | 850422 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL793998 | YRCF | 850423 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794026 | YRCF | 850424 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VC2812MM108816 | YRCF | 141691 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108817 | YRCF | 141692 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108818 | YRCF | 141693 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108819 | YRCF | 141694 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108820 | YRCF | 141695 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108821 | YRCF | 141696 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108822 | YRCF | 141697 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108823 | YRCF | 141698 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108824 | YRCF | 141699 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108825 | YRCF | 141700 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108826 | YRCF | 141701 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108827 | YRCF | 141702 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108828 | YRCF | 141703 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108829 | YRCF | 141704 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108830 | YRCF | 141705 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108831 | YRCF | 141706 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2810MM108832 | YRCF | 141707 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108833 | YRCF | 141708 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108834 | YRCF | 141709 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108835 | YRCF | 141710 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108836 | YRCF | 141711 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108837 | YRCF | 141712 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108838 | YRCF | 141713 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108839 | YRCF | 141714 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108840 | YRCF | 141715 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108841 | YRCF | 141716 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108842 | YRCF | 141717 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108843 | YRCF | 141718 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108844 | YRCF | 141719 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108845 | YRCF | 141720 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108846 | YRCF | 141721 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108847 | YRCF | 141722 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108848 | YRCF | 141723 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108849 | YRCF | 141724 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108850 | YRCF | 141725 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108851 | YRCF | 141726 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108852 | YRCF | 141727 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108853 | YRCF | 141728 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108854 | YRCF | 141729 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108855 | YRCF | 141730 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108856 | YRCF | 141731 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108857 | YRCF | 141732 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108858 | YRCF | 141733 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108859 | YRCF | 141734 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108860 | YRCF | 141735 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108861 | YRCF | 141736 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108862 | YRCF | 141737 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108863 | YRCF | 141738 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108864 | YRCF | 141739 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108865 | YRCF | 141740 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108866 | YRCF | 141741 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108867 | YRCF | 141742 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108868 | YRCF | 141743 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108869 | YRCF | 141744 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108870 | YRCF | 141745 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108871 | YRCF | 141746 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108872 | YRCF | 141747 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108873 | YRCF | 141748 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108874 | YRCF | 141749 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108875 | YRCF | 141750 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108876 | YRCF | 141751 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108877 | YRCF | 141752 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108878 | YRCF | 141753 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108879 | YRCF | 141754 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108880 | YRCF | 141755 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108881 | YRCF | 141756 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108882 | YRCF | 141757 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108883 | YRCF | 141758 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108884 | YRCF | 141759 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108885 | YRCF | 141760 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108886 | YRCF | 141761 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108887 | YRCF | 141762 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108888 | YRCF | 141763 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108889 | YRCF | 141764 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108890 | YRCF | 141765 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108891 | YRCF | 141766 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108892 | YRCF | 141767 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108893 | YRCF | 141768 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108894 | YRCF | 141769 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108895 | YRCF | 141770 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108896 | YRCF | 141771 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108897 | YRCF | 141772 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108898 | YRCF | 141773 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108899 | YRCF | 141774 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108900 | YRCF | 141775 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108901 | YRCF | 141776 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108902 | YRCF | 141777 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108903 | YRCF | 141778 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108904 | YRCF | 141779 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108905 | YRCF | 141780 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108906 | YRCF | 141781 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2815MM108907 | YRCF | 141782 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108908 | YRCF | 141783 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108909 | YRCF | 141784 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108910 | YRCF | 141785 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108911 | YRCF | 141786 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108912 | YRCF | 141787 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108913 | YRCF | 141788 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108914 | YRCF | 141789 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108915 | YRCF | 141790 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108916 | YRCF | 141791 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108917 | YRCF | 141792 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108918 | YRCF | 141793 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108919 | YRCF | 141794 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108920 | YRCF | 141795 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108921 | YRCF | 141796 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108922 | YRCF | 141797 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108923 | YRCF | 141798 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108924 | YRCF | 141799 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108925 | YRCF | 141800 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108926 | YRCF | 141801 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108927 | YRCF | 141802 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108928 | YRCF | 141803 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108929 | YRCF | 141804 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108930 | YRCF | 141805 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108931 | YRCF | 141806 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108932 | YRCF | 141807 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108933 | YRCF | 141808 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108934 | YRCF | 141809 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108935 | YRCF | 141810 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108936 | YRCF | 141811 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108937 | YRCF | 141812 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108938 | YRCF | 141813 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108939 | YRCF | 141814 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108940 | YRCF | 141815 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108941 | YRCF | 141816 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108942 | YRCF | 141817 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108943 | YRCF | 141818 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108944 | YRCF | 141819 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108945 | YRCF | 141820 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108946 | YRCF | 141821 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108947 | YRCF | 141822 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108948 | YRCF | 141823 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108949 | YRCF | 141824 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108950 | YRCF | 141825 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108951 | YRCF | 141826 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108952 | YRCF | 141827 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108953 | YRCF | 141828 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108954 | YRCF | 141829 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108955 | YRCF | 141830 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108956 | YRCF | 141831 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108957 | YRCF | 141832 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108958 | YRCF | 141833 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108959 | YRCF | 141834 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108960 | YRCF | 141835 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108961 | YRCF | 141836 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108962 | YRCF | 141837 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108963 | YRCF | 141838 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108964 | YRCF | 141839 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108965 | YRCF | 141840 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108966 | YRCF | 141841 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108967 | YRCF | 141842 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108968 | YRCF | 141843 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108969 | YRCF | 141844 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108970 | YRCF | 141845 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108971 | YRCF | 141846 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108972 | YRCF | 141847 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108973 | YRCF | 141848 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108974 | YRCF | 141849 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108975 | YRCF | 141850 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108976 | YRCF | 141851 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108977 | YRCF | 141852 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108978 | YRCF | 141853 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108979 | YRCF | 141854 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108980 | YRCF | 141855 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108981 | YRCF | 141856 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC2818MM108982 | YRCF | 141857 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VC281XMM108983 | YRCF | 141858 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108984 | YRCF | 141859 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108985 | YRCF | 141860 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108987 | YRCF | 141862 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108988 | YRCF | 141863 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108989 | YRCF | 141864 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108990 | YRCF | 141865 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108991 | YRCF | 141866 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108992 | YRCF | 141867 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108993 | YRCF | 141868 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108994 | YRCF | 141869 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108995 | YRCF | 141870 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108996 | YRCF | 141871 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108997 | YRCF | 141872 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108998 | YRCF | 141873 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108999 | YRCF | 141874 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109000 | YRCF | 141875 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109001 | YRCF | 141876 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109002 | YRCF | 141877 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109003 | YRCF | 141878 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109004 | YRCF | 141879 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109005 | YRCF | 141880 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109006 | YRCF | 141881 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109007 | YRCF | 141882 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109008 | YRCF | 141883 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109009 | YRCF | 141884 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109010 | YRCF | 141885 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109011 | YRCF | 141886 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109012 | YRCF | 141887 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109013 | YRCF | 141888 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109014 | YRCF | 141889 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109015 | YRCF | 141890 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109016 | YRCF | 141891 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109017 | YRCF | 141892 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109018 | YRCF | 141893 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109019 | YRCF | 141894 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109020 | YRCF | 141895 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109021 | YRCF | 141896 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109022 | YRCF | 141897 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109023 | YRCF | 141898 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109024 | YRCF | 141899 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109025 | YRCF | 141900 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109026 | YRCF | 141901 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109027 | YRCF | 141902 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109028 | YRCF | 141903 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109029 | YRCF | 141904 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109030 | YRCF | 141905 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109031 | YRCF | 141906 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109032 | YRCF | 141907 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109033 | YRCF | 141908 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109034 | YRCF | 141909 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109035 | YRCF | 141910 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109036 | YRCF | 141911 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109037 | YRCF | 141912 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109038 | YRCF | 141913 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109039 | YRCF | 141914 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109040 | YRCF | 141915 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109041 | YRCF | 141916 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109042 | YRCF | 141917 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109043 | YRCF | 141918 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109044 | YRCF | 141919 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109045 | YRCF | 141920 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109046 | YRCF | 141921 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109047 | YRCF | 141922 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109048 | YRCF | 141923 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109049 | YRCF | 141924 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109050 | YRCF | 141925 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109051 | YRCF | 141926 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109052 | YRCF | 141927 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109053 | YRCF | 141928 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109054 | YRCF | 141929 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109055 | YRCF | 141930 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109056 | YRCF | 141931 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109057 | YRCF | 141932 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2812MM109058 | YRCF | 141933 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109059 | YRCF | 141934 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109060 | YRCF | 141935 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109061 | YRCF | 141936 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109062 | YRCF | 141937 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109063 | YRCF | 141938 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109064 | YRCF | 141939 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109065 | YRCF | 141940 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109066 | YRCF | 141941 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109067 | YRCF | 141942 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109068 | YRCF | 141943 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109069 | YRCF | 141944 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109070 | YRCF | 141945 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109071 | YRCF | 141946 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109072 | YRCF | 141947 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109073 | YRCF | 141948 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109074 | YRCF | 141949 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109075 | YRCF | 141950 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109076 | YRCF | 141951 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109077 | YRCF | 141952 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109078 | YRCF | 141953 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109079 | YRCF | 141954 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109080 | YRCF | 141955 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109081 | YRCF | 141956 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109082 | YRCF | 141957 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109083 | YRCF | 141958 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109084 | YRCF | 141959 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109085 | YRCF | 141960 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109086 | YRCF | 141961 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109087 | YRCF | 141962 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109088 | YRCF | 141963 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109089 | YRCF | 141964 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109090 | YRCF | 141965 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV281D3NL300712 | YRCF | 141966 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300713 | YRCF | 141967 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300714 | YRCF | 141968 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300715 | YRCF | 141969 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300716 | YRCF | 141970 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300717 | YRCF | 141971 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300718 | YRCF | 141972 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300719 | YRCF | 141973 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300720 | YRCF | 141974 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300721 | YRCF | 141975 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300722 | YRCF | 141976 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300723 | YRCF | 141977 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300724 | YRCF | 141978 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300725 | YRCF | 141979 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300726 | YRCF | 141980 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300727 | YRCF | 141981 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300728 | YRCF | 141982 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300729 | YRCF | 141983 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300730 | YRCF | 141984 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300731 | YRCF | 141985 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300732 | YRCF | 141986 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300733 | YRCF | 141987 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300734 | YRCF | 141988 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300735 | YRCF | 141989 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300736 | YRCF | 141990 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300737 | YRCF | 141991 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300738 | YRCF | 141992 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300739 | YRCF | 141993 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300740 | YRCF | 141994 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300741 | YRCF | 141995 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300742 | YRCF | 141996 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300743 | YRCF | 141997 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300744 | YRCF | 141998 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300745 | YRCF | 141999 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300746 | YRCF | 142000 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300747 | YRCF | 142001 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300748 | YRCF | 142002 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300749 | YRCF | 142003 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300750 | YRCF | 142004 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300751 | YRCF | 142005 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300752 | YRCF | 142006 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300753 | YRCF | 142007 | TRAILER | IN | IN | 1 | WABASH |

| 1JJV281D8NL300754 | YRCF | 142008 | TRAILER | IN | IN | 1 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281DXNL300755 | YRCF | 142009 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300756 | YRCF | 142010 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300757 | YRCF | 142011 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300758 | YRCF | 142012 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300759 | YRCF | 142013 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300760 | YRCF | 142014 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300761 | YRCF | 142015 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300762 | YRCF | 142016 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300763 | YRCF | 142017 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300764 | YRCF | 142018 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300765 | YRCF | 142019 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300766 | YRCF | 142020 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300767 | YRCF | 142021 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300768 | YRCF | 142022 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300769 | YRCF | 142023 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300770 | YRCF | 142024 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300771 | YRCF | 142025 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300772 | YRCF | 142026 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300773 | YRCF | 142027 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300774 | YRCF | 142028 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300775 | YRCF | 142029 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300776 | YRCF | 142030 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300777 | YRCF | 142031 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300778 | YRCF | 142032 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300779 | YRCF | 142033 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300780 | YRCF | 142034 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300781 | YRCF | 142035 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300782 | YRCF | 142036 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300783 | YRCF | 142037 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300784 | YRCF | 142038 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300785 | YRCF | 142039 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300786 | YRCF | 142040 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300787 | YRCF | 142041 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300788 | YRCF | 142042 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300789 | YRCF | 142043 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300790 | YRCF | 142044 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300791 | YRCF | 142045 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300792 | YRCF | 142046 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300793 | YRCF | 142047 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300794 | YRCF | 142048 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300795 | YRCF | 142049 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300796 | YRCF | 142050 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300797 | YRCF | 142051 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300798 | YRCF | 142052 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300799 | YRCF | 142053 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300800 | YRCF | 142054 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300801 | YRCF | 142055 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300802 | YRCF | 142056 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300803 | YRCF | 142057 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300804 | YRCF | 142058 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300805 | YRCF | 142059 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300806 | YRCF | 142060 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300807 | YRCF | 142061 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300808 | YRCF | 142062 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300809 | YRCF | 142063 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300810 | YRCF | 142064 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300811 | YRCF | 142065 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300812 | YRCF | 142066 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300813 | YRCF | 142067 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300814 | YRCF | 142068 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300815 | YRCF | 142069 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300816 | YRCF | 142070 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300817 | YRCF | 142071 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300818 | YRCF | 142072 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300819 | YRCF | 142073 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300820 | YRCF | 142074 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300821 | YRCF | 142075 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300822 | YRCF | 142076 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300823 | YRCF | 142077 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300824 | YRCF | 142078 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300825 | YRCF | 142079 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300826 | YRCF | 142080 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300827 | YRCF | 142081 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300828 | YRCF | 142082 | TRAILER | IN | IN | 1 | WABASH |

| 1JJV281D2NL300829 | YRCF | 142083 | TRAILER | IN | IN | 1 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D9NL300830 | YRCF | 142084 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300831 | YRCF | 142085 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300837 | YRCF | 142086 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300838 | YRCF | 142087 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300839 | YRCF | 142088 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300840 | YRCF | 142089 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300841 | YRCF | 142090 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300842 | YRCF | 142091 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300843 | YRCF | 142092 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300844 | YRCF | 142093 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300845 | YRCF | 142094 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300846 | YRCF | 142095 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300847 | YRCF | 142096 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300848 | YRCF | 142097 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300849 | YRCF | 142098 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300850 | YRCF | 142099 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300851 | YRCF | 142100 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300852 | YRCF | 142101 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300853 | YRCF | 142102 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300854 | YRCF | 142103 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300855 | YRCF | 142104 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300856 | YRCF | 142105 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300857 | YRCF | 142106 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300858 | YRCF | 142107 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300859 | YRCF | 142108 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300860 | YRCF | 142109 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300861 | YRCF | 142110 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300862 | YRCF | 142111 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300863 | YRCF | 142112 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300864 | YRCF | 142113 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300865 | YRCF | 142114 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300866 | YRCF | 142115 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300867 | YRCF | 142116 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300868 | YRCF | 142117 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300869 | YRCF | 142118 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300870 | YRCF | 142119 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300871 | YRCF | 142120 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300873 | YRCF | 142122 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300874 | YRCF | 142123 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300875 | YRCF | 142124 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300876 | YRCF | 142125 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300877 | YRCF | 142126 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300878 | YRCF | 142127 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300879 | YRCF | 142128 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300880 | YRCF | 142129 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300881 | YRCF | 142130 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300882 | YRCF | 142131 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300883 | YRCF | 142132 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300884 | YRCF | 142133 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300885 | YRCF | 142134 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300886 | YRCF | 142135 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300887 | YRCF | 142136 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300888 | YRCF | 142137 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300889 | YRCF | 142138 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300890 | YRCF | 142139 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300891 | YRCF | 142140 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300892 | YRCF | 142141 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300893 | YRCF | 142142 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300894 | YRCF | 142143 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300895 | YRCF | 142144 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300896 | YRCF | 142145 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300897 | YRCF | 142146 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300898 | YRCF | 142147 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300899 | YRCF | 142148 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300900 | YRCF | 142149 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300901 | YRCF | 142150 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300902 | YRCF | 142151 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300903 | YRCF | 142152 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300904 | YRCF | 142153 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300905 | YRCF | 142154 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300906 | YRCF | 142155 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300907 | YRCF | 142156 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300908 | YRCF | 142157 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300909 | YRCF | 142158 | TRAILER | IN | IN | 1 | WABASH |

| 1JJV281D7NL300910 | YRCF | 142159 | TRAILER | IN | IN | 1 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D9NL300911 | YRCF | 142160 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300912 | YRCF | 142161 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300913 | YRCF | 142162 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300914 | YRCF | 142163 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300915 | YRCF | 142164 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300916 | YRCF | 142165 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300917 | YRCF | 142166 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300918 | YRCF | 142167 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300919 | YRCF | 142168 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300920 | YRCF | 142169 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300921 | YRCF | 142170 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300922 | YRCF | 142171 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300923 | YRCF | 142172 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300924 | YRCF | 142173 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300925 | YRCF | 142174 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300926 | YRCF | 142175 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300832 | YRCF | 142176 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300833 | YRCF | 142177 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300834 | YRCF | 142178 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300835 | YRCF | 142179 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300836 | YRCF | 142180 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300927 | YRCF | 142181 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300928 | YRCF | 142182 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300929 | YRCF | 142183 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300930 | YRCF | 142184 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300931 | YRCF | 142185 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300932 | YRCF | 142186 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300933 | YRCF | 142187 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300934 | YRCF | 142188 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300935 | YRCF | 142189 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300936 | YRCF | 142190 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300937 | YRCF | 142191 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300938 | YRCF | 142192 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300939 | YRCF | 142193 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300940 | YRCF | 142194 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300941 | YRCF | 142195 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300942 | YRCF | 142196 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300943 | YRCF | 142197 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300944 | YRCF | 142198 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300945 | YRCF | 142199 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300946 | YRCF | 142200 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300947 | YRCF | 142201 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300948 | YRCF | 142202 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300950 | YRCF | 142204 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300951 | YRCF | 142205 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300952 | YRCF | 142206 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300953 | YRCF | 142207 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300954 | YRCF | 142208 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300955 | YRCF | 142209 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300956 | YRCF | 142210 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300957 | YRCF | 142211 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300958 | YRCF | 142212 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300959 | YRCF | 142213 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300960 | YRCF | 142214 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300961 | YRCF | 142215 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300962 | YRCF | 142216 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300963 | YRCF | 142217 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300964 | YRCF | 142218 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300965 | YRCF | 142219 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300966 | YRCF | 142220 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300967 | YRCF | 142221 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300968 | YRCF | 142222 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300969 | YRCF | 142223 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300970 | YRCF | 142224 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300971 | YRCF | 142225 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300972 | YRCF | 142226 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300973 | YRCF | 142227 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300974 | YRCF | 142228 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300975 | YRCF | 142229 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300976 | YRCF | 142230 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300977 | YRCF | 142231 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300978 | YRCF | 142232 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300979 | YRCF | 142233 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300980 | YRCF | 142234 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D8NL300981 | YRCF | 142235 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300982 | YRCF | 142236 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300983 | YRCF | 142237 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300984 | YRCF | 142238 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300985 | YRCF | 142239 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300986 | YRCF | 142240 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300987 | YRCF | 142241 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300988 | YRCF | 142242 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300989 | YRCF | 142243 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300990 | YRCF | 142244 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300991 | YRCF | 142245 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300992 | YRCF | 142246 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300993 | YRCF | 142247 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300994 | YRCF | 142248 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300995 | YRCF | 142249 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300996 | YRCF | 142250 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300997 | YRCF | 142251 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300998 | YRCF | 142252 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300999 | YRCF | 142253 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301000 | YRCF | 142254 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301001 | YRCF | 142255 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301002 | YRCF | 142256 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301003 | YRCF | 142257 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301004 | YRCF | 142258 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301005 | YRCF | 142259 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301006 | YRCF | 142260 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301007 | YRCF | 142261 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301008 | YRCF | 142262 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301009 | YRCF | 142263 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301010 | YRCF | 142264 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301011 | YRCF | 142265 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301012 | YRCF | 142266 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301013 | YRCF | 142267 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301014 | YRCF | 142268 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301015 | YRCF | 142269 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301016 | YRCF | 142270 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301018 | YRCF | 142271 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301019 | YRCF | 142272 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301020 | YRCF | 142273 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301021 | YRCF | 142274 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301022 | YRCF | 142275 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301023 | YRCF | 142276 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301024 | YRCF | 142277 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301025 | YRCF | 142278 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301026 | YRCF | 142279 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301027 | YRCF | 142280 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301028 | YRCF | 142281 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301029 | YRCF | 142282 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301030 | YRCF | 142283 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301031 | YRCF | 142284 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301032 | YRCF | 142285 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301033 | YRCF | 142286 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301034 | YRCF | 142287 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301035 | YRCF | 142288 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301036 | YRCF | 142289 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301037 | YRCF | 142290 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301038 | YRCF | 142291 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301039 | YRCF | 142292 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301040 | YRCF | 142293 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301041 | YRCF | 142294 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301042 | YRCF | 142295 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301043 | YRCF | 142296 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301044 | YRCF | 142297 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301045 | YRCF | 142298 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301046 | YRCF | 142299 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301047 | YRCF | 142300 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301048 | YRCF | 142301 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301049 | YRCF | 142302 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301050 | YRCF | 142303 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301051 | YRCF | 142304 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301052 | YRCF | 142305 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301054 | YRCF | 142307 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301055 | YRCF | 142308 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301056 | YRCF | 142309 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301057 | YRCF | 142310 | TRAILER | IN | IN | 1 | WABASH |

| 1JJV281D4NL301058 | YRCF | 142311 | TRAILER | IN | IN | 1 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D6NL301059 | YRCF | 142312 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301060 | YRCF | 142313 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301061 | YRCF | 142314 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301062 | YRCF | 142315 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301063 | YRCF | 142316 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301064 | YRCF | 142317 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301065 | YRCF | 142318 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301066 | YRCF | 142319 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301067 | YRCF | 142320 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301068 | YRCF | 142321 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301069 | YRCF | 142322 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301070 | YRCF | 142323 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301071 | YRCF | 142324 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301072 | YRCF | 142325 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301073 | YRCF | 142326 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301074 | YRCF | 142327 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301075 | YRCF | 142328 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301076 | YRCF | 142329 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301077 | YRCF | 142330 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301078 | YRCF | 142331 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301079 | YRCF | 142332 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301080 | YRCF | 142333 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301081 | YRCF | 142334 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301082 | YRCF | 142335 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301083 | YRCF | 142336 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301084 | YRCF | 142337 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301085 | YRCF | 142338 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301086 | YRCF | 142339 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301087 | YRCF | 142340 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301088 | YRCF | 142341 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301089 | YRCF | 142342 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301090 | YRCF | 142343 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301091 | YRCF | 142344 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301092 | YRCF | 142345 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301093 | YRCF | 142346 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301094 | YRCF | 142347 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301095 | YRCF | 142348 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301096 | YRCF | 142349 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301097 | YRCF | 142350 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301098 | YRCF | 142351 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301099 | YRCF | 142352 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301100 | YRCF | 142353 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301101 | YRCF | 142354 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301102 | YRCF | 142355 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301103 | YRCF | 142356 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301104 | YRCF | 142357 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301105 | YRCF | 142358 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301106 | YRCF | 142359 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301107 | YRCF | 142360 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301108 | YRCF | 142361 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301109 | YRCF | 142362 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301110 | YRCF | 142363 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301111 | YRCF | 142364 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301112 | YRCF | 142365 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301113 | YRCF | 142366 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301114 | YRCF | 142367 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301115 | YRCF | 142368 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301116 | YRCF | 142369 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301117 | YRCF | 142370 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301118 | YRCF | 142371 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301119 | YRCF | 142372 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301120 | YRCF | 142373 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301121 | YRCF | 142374 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301122 | YRCF | 142375 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301123 | YRCF | 142376 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301124 | YRCF | 142377 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301125 | YRCF | 142378 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301126 | YRCF | 142379 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301127 | YRCF | 142380 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301128 | YRCF | 142381 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301129 | YRCF | 142382 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301130 | YRCF | 142383 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301131 | YRCF | 142384 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301132 | YRCF | 142385 | TRAILER | IN | IN | 1 | WABASH |

| 1JJV281D3NL301133 | YRCF | 142386 | TRAILER | IN | IN | 1 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D5NL301134 | YRCF | 142387 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301135 | YRCF | 142388 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301136 | YRCF | 142389 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301137 | YRCF | 142390 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301138 | YRCF | 142391 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301139 | YRCF | 142392 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301140 | YRCF | 142393 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301141 | YRCF | 142394 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301142 | YRCF | 142395 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301143 | YRCF | 142396 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301144 | YRCF | 142397 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301145 | YRCF | 142398 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301146 | YRCF | 142399 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301147 | YRCF | 142400 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301148 | YRCF | 142401 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301149 | YRCF | 142402 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301150 | YRCF | 142403 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301151 | YRCF | 142404 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301152 | YRCF | 142405 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301153 | YRCF | 142406 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301154 | YRCF | 142407 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301155 | YRCF | 142408 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301156 | YRCF | 142409 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301157 | YRCF | 142410 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301158 | YRCF | 142411 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301159 | YRCF | 142412 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301160 | YRCF | 142413 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301161 | YRCF | 142414 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301162 | YRCF | 142415 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301163 | YRCF | 142416 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301165 | YRCF | 142418 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301166 | YRCF | 142419 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301167 | YRCF | 142420 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301168 | YRCF | 142421 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301169 | YRCF | 142422 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301170 | YRCF | 142423 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301171 | YRCF | 142424 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301172 | YRCF | 142425 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301173 | YRCF | 142426 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301174 | YRCF | 142427 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301175 | YRCF | 142428 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301176 | YRCF | 142429 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301177 | YRCF | 142430 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301178 | YRCF | 142431 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301179 | YRCF | 142432 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301180 | YRCF | 142433 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301181 | YRCF | 142434 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301182 | YRCF | 142435 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301183 | YRCF | 142436 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301184 | YRCF | 142437 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301185 | YRCF | 142438 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301186 | YRCF | 142439 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301187 | YRCF | 142440 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301188 | YRCF | 142441 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301189 | YRCF | 142442 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301190 | YRCF | 142443 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301191 | YRCF | 142444 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301192 | YRCF | 142445 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301193 | YRCF | 142446 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301194 | YRCF | 142447 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301195 | YRCF | 142448 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301196 | YRCF | 142449 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301197 | YRCF | 142450 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301198 | YRCF | 142451 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301199 | YRCF | 142452 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301200 | YRCF | 142453 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301201 | YRCF | 142454 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301202 | YRCF | 142455 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301203 | YRCF | 142456 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301204 | YRCF | 142457 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301205 | YRCF | 142458 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301206 | YRCF | 142459 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301207 | YRCF | 142460 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301208 | YRCF | 142461 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281DXNL301209 | YRCF | 142462 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301210 | YRCF | 142463 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301211 | YRCF | 142464 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301212 | YRCF | 142465 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301213 | YRCF | 142466 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301214 | YRCF | 142467 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301215 | YRCF | 142468 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301216 | YRCF | 142469 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301217 | YRCF | 142470 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301218 | YRCF | 142471 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301219 | YRCF | 142472 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301220 | YRCF | 142473 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301221 | YRCF | 142474 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301222 | YRCF | 142475 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301223 | YRCF | 142476 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301224 | YRCF | 142477 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301225 | YRCF | 142478 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301226 | YRCF | 142479 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301227 | YRCF | 142480 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301228 | YRCF | 142481 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301229 | YRCF | 142482 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301230 | YRCF | 142483 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301231 | YRCF | 142484 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301232 | YRCF | 142485 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301233 | YRCF | 142486 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301234 | YRCF | 142487 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301235 | YRCF | 142488 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301236 | YRCF | 142489 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301237 | YRCF | 142490 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VC2810NM203313 | YRCF | 142491 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203314 | YRCF | 142492 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203315 | YRCF | 142493 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203316 | YRCF | 142494 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203317 | YRCF | 142495 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203318 | YRCF | 142496 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203319 | YRCF | 142497 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203320 | YRCF | 142498 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203321 | YRCF | 142499 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203322 | YRCF | 142500 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203323 | YRCF | 142501 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203324 | YRCF | 142502 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203325 | YRCF | 142503 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203326 | YRCF | 142504 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203327 | YRCF | 142505 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203328 | YRCF | 142506 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203329 | YRCF | 142507 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203330 | YRCF | 142508 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203331 | YRCF | 142509 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203332 | YRCF | 142510 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203333 | YRCF | 142511 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203334 | YRCF | 142512 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203335 | YRCF | 142513 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203336 | YRCF | 142514 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203337 | YRCF | 142515 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203338 | YRCF | 142516 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203339 | YRCF | 142517 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203340 | YRCF | 142518 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203341 | YRCF | 142519 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203342 | YRCF | 142520 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203343 | YRCF | 142521 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203344 | YRCF | 142522 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203345 | YRCF | 142523 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203346 | YRCF | 142524 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203347 | YRCF | 142525 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203348 | YRCF | 142526 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203349 | YRCF | 142527 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203350 | YRCF | 142528 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203351 | YRCF | 142529 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203352 | YRCF | 142530 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203353 | YRCF | 142531 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203354 | YRCF | 142532 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203355 | YRCF | 142533 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203356 | YRCF | 142534 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203357 | YRCF | 142535 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203358 | YRCF | 142536 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2812NM203359 | YRCF | 142537 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203360 | YRCF | 142538 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203361 | YRCF | 142539 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203362 | YRCF | 142540 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814XNM203363 | YRCF | 142541 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203364 | YRCF | 142542 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203365 | YRCF | 142543 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203366 | YRCF | 142544 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203367 | YRCF | 142545 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203368 | YRCF | 142546 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203369 | YRCF | 142547 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203370 | YRCF | 142548 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203371 | YRCF | 142549 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203372 | YRCF | 142550 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203373 | YRCF | 142551 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203374 | YRCF | 142552 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203375 | YRCF | 142553 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203376 | YRCF | 142554 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203377 | YRCF | 142555 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203378 | YRCF | 142556 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203379 | YRCF | 142557 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203380 | YRCF | 142558 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203381 | YRCF | 142559 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203382 | YRCF | 142560 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203383 | YRCF | 142561 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203384 | YRCF | 142562 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203385 | YRCF | 142563 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203386 | YRCF | 142564 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203387 | YRCF | 142565 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203388 | YRCF | 142566 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203389 | YRCF | 142567 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203390 | YRCF | 142568 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203391 | YRCF | 142569 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203392 | YRCF | 142570 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203393 | YRCF | 142571 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203394 | YRCF | 142572 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203395 | YRCF | 142573 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203396 | YRCF | 142574 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203397 | YRCF | 142575 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203398 | YRCF | 142576 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203399 | YRCF | 142577 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203400 | YRCF | 142578 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203401 | YRCF | 142579 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203402 | YRCF | 142580 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203403 | YRCF | 142581 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203404 | YRCF | 142582 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203405 | YRCF | 142583 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203406 | YRCF | 142584 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203407 | YRCF | 142585 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203408 | YRCF | 142586 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203409 | YRCF | 142587 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203410 | YRCF | 142588 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203411 | YRCF | 142589 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203412 | YRCF | 142590 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203413 | YRCF | 142591 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203414 | YRCF | 142592 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203415 | YRCF | 142593 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203416 | YRCF | 142594 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203417 | YRCF | 142595 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203418 | YRCF | 142596 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203419 | YRCF | 142597 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203420 | YRCF | 142598 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203421 | YRCF | 142599 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203422 | YRCF | 142600 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203423 | YRCF | 142601 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203424 | YRCF | 142602 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203425 | YRCF | 142603 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203426 | YRCF | 142604 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203427 | YRCF | 142605 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203428 | YRCF | 142606 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203429 | YRCF | 142607 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203430 | YRCF | 142608 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203431 | YRCF | 142609 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203432 | YRCF | 142610 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203433 | YRCF | 142611 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2811NM203434 | YRCF | 142612 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203435 | YRCF | 142613 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203436 | YRCF | 142614 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203437 | YRCF | 142615 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203438 | YRCF | 142616 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203439 | YRCF | 142617 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203440 | YRCF | 142618 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203441 | YRCF | 142619 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203442 | YRCF | 142620 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203443 | YRCF | 142621 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203444 | YRCF | 142622 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203445 | YRCF | 142623 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203446 | YRCF | 142624 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203447 | YRCF | 142625 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203448 | YRCF | 142626 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203449 | YRCF | 142627 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203450 | YRCF | 142628 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203451 | YRCF | 142629 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203452 | YRCF | 142630 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203453 | YRCF | 142631 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203454 | YRCF | 142632 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203455 | YRCF | 142633 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203456 | YRCF | 142634 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203457 | YRCF | 142635 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203458 | YRCF | 142636 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203459 | YRCF | 142637 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203460 | YRCF | 142638 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203461 | YRCF | 142639 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203462 | YRCF | 142640 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203463 | YRCF | 142641 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203464 | YRCF | 142642 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203465 | YRCF | 142643 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203466 | YRCF | 142644 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203467 | YRCF | 142645 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203468 | YRCF | 142646 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203469 | YRCF | 142647 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203470 | YRCF | 142648 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203471 | YRCF | 142649 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203472 | YRCF | 142650 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203473 | YRCF | 142651 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203474 | YRCF | 142652 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203475 | YRCF | 142653 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203476 | YRCF | 142654 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203477 | YRCF | 142655 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203478 | YRCF | 142656 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203479 | YRCF | 142657 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203480 | YRCF | 142658 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203481 | YRCF | 142659 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203482 | YRCF | 142660 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203483 | YRCF | 142661 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203484 | YRCF | 142662 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203485 | YRCF | 142663 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203486 | YRCF | 142664 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203487 | YRCF | 142665 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203488 | YRCF | 142666 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203489 | YRCF | 142667 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203490 | YRCF | 142668 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203491 | YRCF | 142669 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203492 | YRCF | 142670 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203493 | YRCF | 142671 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203494 | YRCF | 142672 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203495 | YRCF | 142673 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203496 | YRCF | 142674 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203497 | YRCF | 142675 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203498 | YRCF | 142676 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203499 | YRCF | 142677 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203500 | YRCF | 142678 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203501 | YRCF | 142679 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203502 | YRCF | 142680 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203503 | YRCF | 142681 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203504 | YRCF | 142682 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203505 | YRCF | 142683 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203506 | YRCF | 142684 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203507 | YRCF | 142685 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203508 | YRCF | 142686 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2816NM203509 | YRCF | 142687 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203510 | YRCF | 142688 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203511 | YRCF | 142689 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203512 | YRCF | 142690 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203513 | YRCF | 142691 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203514 | YRCF | 142692 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203515 | YRCF | 142693 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203516 | YRCF | 142694 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203517 | YRCF | 142695 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203518 | YRCF | 142696 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203519 | YRCF | 142697 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203520 | YRCF | 142698 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203521 | YRCF | 142699 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203522 | YRCF | 142700 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203523 | YRCF | 142701 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203524 | YRCF | 142702 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203525 | YRCF | 142703 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203526 | YRCF | 142704 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203527 | YRCF | 142705 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203528 | YRCF | 142706 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203529 | YRCF | 142707 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203530 | YRCF | 142708 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203531 | YRCF | 142709 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203532 | YRCF | 142710 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203533 | YRCF | 142711 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203534 | YRCF | 142712 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203535 | YRCF | 142713 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203536 | YRCF | 142714 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203537 | YRCF | 142715 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203538 | YRCF | 142716 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203539 | YRCF | 142717 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203540 | YRCF | 142718 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203541 | YRCF | 142719 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203542 | YRCF | 142720 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203543 | YRCF | 142721 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203544 | YRCF | 142722 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203545 | YRCF | 142723 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203546 | YRCF | 142724 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203547 | YRCF | 142725 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203548 | YRCF | 142726 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203549 | YRCF | 142727 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203550 | YRCF | 142728 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203551 | YRCF | 142729 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203552 | YRCF | 142730 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203553 | YRCF | 142731 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203554 | YRCF | 142732 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203555 | YRCF | 142733 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203556 | YRCF | 142734 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203557 | YRCF | 142735 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203558 | YRCF | 142736 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203559 | YRCF | 142737 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203560 | YRCF | 142738 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203561 | YRCF | 142739 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203562 | YRCF | 142740 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203563 | YRCF | 142741 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203564 | YRCF | 142742 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203565 | YRCF | 142743 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203566 | YRCF | 142744 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203567 | YRCF | 142745 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203568 | YRCF | 142746 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203569 | YRCF | 142747 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203570 | YRCF | 142748 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203571 | YRCF | 142749 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203572 | YRCF | 142750 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203573 | YRCF | 142751 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203574 | YRCF | 142752 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203575 | YRCF | 142753 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203576 | YRCF | 142754 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203577 | YRCF | 142755 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203578 | YRCF | 142756 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203579 | YRCF | 142757 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203580 | YRCF | 142758 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203581 | YRCF | 142759 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203582 | YRCF | 142760 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203583 | YRCF | 142761 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC2819NM203584 | YRCF | 142762 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VC2810NM203585 | YRCF | 142763 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203586 | YRCF | 142764 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203587 | YRCF | 142765 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203588 | YRCF | 142766 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203589 | YRCF | 142767 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203590 | YRCF | 142768 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203591 | YRCF | 142769 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203592 | YRCF | 142770 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203593 | YRCF | 142771 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203594 | YRCF | 142772 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203595 | YRCF | 142773 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203596 | YRCF | 142774 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203597 | YRCF | 142775 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203598 | YRCF | 142776 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203599 | YRCF | 142777 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203600 | YRCF | 142778 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203601 | YRCF | 142779 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203602 | YRCF | 142780 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203603 | YRCF | 142781 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203604 | YRCF | 142782 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203605 | YRCF | 142783 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203606 | YRCF | 142784 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203607 | YRCF | 142785 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203608 | YRCF | 142786 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203609 | YRCF | 142787 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203610 | YRCF | 142788 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203611 | YRCF | 142789 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203612 | YRCF | 142790 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203613 | YRCF | 142791 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203614 | YRCF | 142792 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203615 | YRCF | 142793 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203616 | YRCF | 142794 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203617 | YRCF | 142795 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203618 | YRCF | 142796 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203619 | YRCF | 142797 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203620 | YRCF | 142798 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203621 | YRCF | 142799 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203622 | YRCF | 142800 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203623 | YRCF | 142801 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203624 | YRCF | 142802 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203625 | YRCF | 142803 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203626 | YRCF | 142804 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203627 | YRCF | 142805 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203628 | YRCF | 142806 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203629 | YRCF | 142807 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203630 | YRCF | 142808 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203631 | YRCF | 142809 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203632 | YRCF | 142810 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203633 | YRCF | 142811 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203634 | YRCF | 142812 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203635 | YRCF | 142813 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203636 | YRCF | 142814 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203637 | YRCF | 142815 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203638 | YRCF | 142816 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203639 | YRCF | 142817 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203640 | YRCF | 142818 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203641 | YRCF | 142819 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203642 | YRCF | 142820 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203643 | YRCF | 142821 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203644 | YRCF | 142822 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203645 | YRCF | 142823 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203646 | YRCF | 142824 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203647 | YRCF | 142825 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203648 | YRCF | 142826 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203649 | YRCF | 142827 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203650 | YRCF | 142828 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203651 | YRCF | 142829 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203652 | YRCF | 142830 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203653 | YRCF | 142831 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203654 | YRCF | 142832 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203655 | YRCF | 142833 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203656 | YRCF | 142834 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203657 | YRCF | 142835 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203658 | YRCF | 142836 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2813NM203659 | YRCF | 142837 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203660 | YRCF | 142838 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203661 | YRCF | 142839 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203662 | YRCF | 142840 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203663 | YRCF | 142841 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203664 | YRCF | 142842 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203665 | YRCF | 142843 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203666 | YRCF | 142844 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203667 | YRCF | 142845 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203668 | YRCF | 142846 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203669 | YRCF | 142847 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203670 | YRCF | 142848 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203671 | YRCF | 142849 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203672 | YRCF | 142850 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203673 | YRCF | 142851 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203674 | YRCF | 142852 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203675 | YRCF | 142853 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203676 | YRCF | 142854 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203677 | YRCF | 142855 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203678 | YRCF | 142856 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203679 | YRCF | 142857 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203680 | YRCF | 142858 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203681 | YRCF | 142859 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203682 | YRCF | 142860 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203683 | YRCF | 142861 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203684 | YRCF | 142862 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203685 | YRCF | 142863 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203686 | YRCF | 142864 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203687 | YRCF | 142865 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203688 | YRCF | 142866 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203689 | YRCF | 142867 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203690 | YRCF | 142868 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203691 | YRCF | 142869 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203692 | YRCF | 142870 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203693 | YRCF | 142871 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203694 | YRCF | 142872 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203695 | YRCF | 142873 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203696 | YRCF | 142874 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203697 | YRCF | 142875 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203698 | YRCF | 142876 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203699 | YRCF | 142877 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203700 | YRCF | 142878 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203701 | YRCF | 142879 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203702 | YRCF | 142880 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203703 | YRCF | 142881 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203704 | YRCF | 142882 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203705 | YRCF | 142883 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203706 | YRCF | 142884 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203707 | YRCF | 142885 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203708 | YRCF | 142886 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203709 | YRCF | 142887 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203710 | YRCF | 142888 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203711 | YRCF | 142889 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203712 | YRCF | 142890 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203713 | YRCF | 142891 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203714 | YRCF | 142892 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203715 | YRCF | 142893 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203716 | YRCF | 142894 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203717 | YRCF | 142895 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203718 | YRCF | 142896 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203719 | YRCF | 142897 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203720 | YRCF | 142898 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203721 | YRCF | 142899 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203722 | YRCF | 142900 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203723 | YRCF | 142901 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203724 | YRCF | 142902 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203725 | YRCF | 142903 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203726 | YRCF | 142904 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203727 | YRCF | 142905 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203728 | YRCF | 142906 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203729 | YRCF | 142907 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203730 | YRCF | 142908 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203731 | YRCF | 142909 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203732 | YRCF | 142910 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203733 | YRCF | 142911 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC2812NM203734 | YRCF | 142912 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203735 | YRCF | 142913 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203736 | YRCF | 142914 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203737 | YRCF | 142915 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203738 | YRCF | 142916 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203739 | YRCF | 142917 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203740 | YRCF | 142918 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203741 | YRCF | 142919 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203742 | YRCF | 142920 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203743 | YRCF | 142921 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203744 | YRCF | 142922 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203745 | YRCF | 142923 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203746 | YRCF | 142924 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203747 | YRCF | 142925 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203748 | YRCF | 142926 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203749 | YRCF | 142927 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203750 | YRCF | 142928 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203751 | YRCF | 142929 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203752 | YRCF | 142930 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203753 | YRCF | 142931 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203754 | YRCF | 142932 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203755 | YRCF | 142933 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203756 | YRCF | 142934 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203757 | YRCF | 142935 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203758 | YRCF | 142936 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203759 | YRCF | 142937 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203760 | YRCF | 142938 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203761 | YRCF | 142939 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203762 | YRCF | 142940 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203763 | YRCF | 142941 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203764 | YRCF | 142942 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203765 | YRCF | 142943 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203766 | YRCF | 142944 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203767 | YRCF | 142945 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203768 | YRCF | 142946 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203769 | YRCF | 142947 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203770 | YRCF | 142948 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203771 | YRCF | 142949 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203772 | YRCF | 142950 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203773 | YRCF | 142951 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203774 | YRCF | 142952 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203775 | YRCF | 142953 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203776 | YRCF | 142954 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203777 | YRCF | 142955 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203778 | YRCF | 142956 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203779 | YRCF | 142957 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203780 | YRCF | 142958 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203781 | YRCF | 142959 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203782 | YRCF | 142960 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203783 | YRCF | 142961 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203784 | YRCF | 142962 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203785 | YRCF | 142963 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203786 | YRCF | 142964 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203787 | YRCF | 142965 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203788 | YRCF | 142966 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203789 | YRCF | 142967 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203790 | YRCF | 142968 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203791 | YRCF | 142969 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203792 | YRCF | 142970 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203793 | YRCF | 142971 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203794 | YRCF | 142972 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203795 | YRCF | 142973 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203796 | YRCF | 142974 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203797 | YRCF | 142975 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203798 | YRCF | 142976 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203799 | YRCF | 142977 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203800 | YRCF | 142978 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203801 | YRCF | 142979 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203802 | YRCF | 142980 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203803 | YRCF | 142981 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203804 | YRCF | 142982 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203805 | YRCF | 142983 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203806 | YRCF | 142984 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203807 | YRCF | 142985 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203808 | YRCF | 142986 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2817NM203809 | YRCF | 142987 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203810 | YRCF | 142988 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203811 | YRCF | 142989 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203812 | YRCF | 142990 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203813 | YRCF | 142991 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203814 | YRCF | 142992 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203815 | YRCF | 142993 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203816 | YRCF | 142994 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203817 | YRCF | 142995 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203818 | YRCF | 142996 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203819 | YRCF | 142997 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203820 | YRCF | 142998 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203821 | YRCF | 142999 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203822 | YRCF | 143000 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203823 | YRCF | 143001 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203824 | YRCF | 143002 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203825 | YRCF | 143003 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203826 | YRCF | 143004 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203827 | YRCF | 143005 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203828 | YRCF | 143006 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203829 | YRCF | 143007 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203830 | YRCF | 143008 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203831 | YRCF | 143009 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203832 | YRCF | 143010 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203833 | YRCF | 143011 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203834 | YRCF | 143012 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203835 | YRCF | 143013 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203836 | YRCF | 143014 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203837 | YRCF | 143015 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203838 | YRCF | 143016 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203839 | YRCF | 143017 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203840 | YRCF | 143018 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203841 | YRCF | 143019 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203842 | YRCF | 143020 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203843 | YRCF | 143021 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203844 | YRCF | 143022 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203845 | YRCF | 143023 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203846 | YRCF | 143024 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203847 | YRCF | 143025 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203848 | YRCF | 143026 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203849 | YRCF | 143027 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203850 | YRCF | 143028 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203851 | YRCF | 143029 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203852 | YRCF | 143030 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203853 | YRCF | 143031 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203854 | YRCF | 143032 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203855 | YRCF | 143033 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203856 | YRCF | 143034 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203857 | YRCF | 143035 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203858 | YRCF | 143036 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203859 | YRCF | 143037 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203860 | YRCF | 143038 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203861 | YRCF | 143039 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203862 | YRCF | 143040 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203863 | YRCF | 143041 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203864 | YRCF | 143042 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203865 | YRCF | 143043 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203866 | YRCF | 143044 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203867 | YRCF | 143045 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203868 | YRCF | 143046 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203869 | YRCF | 143047 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203870 | YRCF | 143048 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203871 | YRCF | 143049 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203872 | YRCF | 143050 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203873 | YRCF | 143051 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203874 | YRCF | 143052 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203875 | YRCF | 143053 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203876 | YRCF | 143054 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203877 | YRCF | 143055 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203878 | YRCF | 143056 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203879 | YRCF | 143057 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203880 | YRCF | 143058 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203881 | YRCF | 143059 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203882 | YRCF | 143060 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203883 | YRCF | 143061 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC281XNM203884 | YRCF | 143062 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VC2811NM203885 | YRCF | 143063 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203886 | YRCF | 143064 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203887 | YRCF | 143065 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203888 | YRCF | 143066 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203889 | YRCF | 143067 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203890 | YRCF | 143068 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203891 | YRCF | 143069 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203892 | YRCF | 143070 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203893 | YRCF | 143071 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203894 | YRCF | 143072 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203895 | YRCF | 143073 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203896 | YRCF | 143074 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203897 | YRCF | 143075 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203898 | YRCF | 143076 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203899 | YRCF | 143077 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203900 | YRCF | 143078 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203901 | YRCF | 143079 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203902 | YRCF | 143080 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203903 | YRCF | 143081 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203904 | YRCF | 143082 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203905 | YRCF | 143083 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203906 | YRCF | 143084 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203907 | YRCF | 143085 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203908 | YRCF | 143086 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203909 | YRCF | 143087 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203910 | YRCF | 143088 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203911 | YRCF | 143089 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203912 | YRCF | 143090 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203913 | YRCF | 143091 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203914 | YRCF | 143092 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203915 | YRCF | 143093 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203916 | YRCF | 143094 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203917 | YRCF | 143095 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203918 | YRCF | 143096 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203919 | YRCF | 143097 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203920 | YRCF | 143098 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203921 | YRCF | 143099 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203922 | YRCF | 143100 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203923 | YRCF | 143101 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203924 | YRCF | 143102 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203925 | YRCF | 143103 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203926 | YRCF | 143104 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203927 | YRCF | 143105 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203928 | YRCF | 143106 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203929 | YRCF | 143107 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203930 | YRCF | 143108 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203931 | YRCF | 143109 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203932 | YRCF | 143110 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203933 | YRCF | 143111 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203934 | YRCF | 143112 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203935 | YRCF | 143113 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203936 | YRCF | 143114 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203937 | YRCF | 143115 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203938 | YRCF | 143116 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203939 | YRCF | 143117 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203940 | YRCF | 143118 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203941 | YRCF | 143119 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203942 | YRCF | 143120 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203943 | YRCF | 143121 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203944 | YRCF | 143122 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203945 | YRCF | 143123 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203946 | YRCF | 143124 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203947 | YRCF | 143125 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203948 | YRCF | 143126 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203949 | YRCF | 143127 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203950 | YRCF | 143128 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203951 | YRCF | 143129 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203952 | YRCF | 143130 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203953 | YRCF | 143131 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203954 | YRCF | 143132 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203955 | YRCF | 143133 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203956 | YRCF | 143134 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203957 | YRCF | 143135 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203958 | YRCF | 143136 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2814NM203959 | YRCF | 143137 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203960 | YRCF | 143138 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203961 | YRCF | 143139 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203962 | YRCF | 143140 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203963 | YRCF | 143141 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203964 | YRCF | 143142 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203965 | YRCF | 143143 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203966 | YRCF | 143144 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203967 | YRCF | 143145 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203968 | YRCF | 143146 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203969 | YRCF | 143147 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203970 | YRCF | 143148 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203971 | YRCF | 143149 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203972 | YRCF | 143150 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203973 | YRCF | 143151 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203974 | YRCF | 143152 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203975 | YRCF | 143153 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203976 | YRCF | 143154 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203977 | YRCF | 143155 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203978 | YRCF | 143156 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203979 | YRCF | 143157 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203980 | YRCF | 143158 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203981 | YRCF | 143159 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203982 | YRCF | 143160 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203983 | YRCF | 143161 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203984 | YRCF | 143162 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203985 | YRCF | 143163 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203986 | YRCF | 143164 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203987 | YRCF | 143165 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203988 | YRCF | 143166 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203989 | YRCF | 143167 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203990 | YRCF | 143168 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203991 | YRCF | 143169 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203992 | YRCF | 143170 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203993 | YRCF | 143171 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203994 | YRCF | 143172 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203995 | YRCF | 143173 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203996 | YRCF | 143174 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203997 | YRCF | 143175 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203998 | YRCF | 143176 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203999 | YRCF | 143177 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204000 | YRCF | 143178 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204001 | YRCF | 143179 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204002 | YRCF | 143180 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204003 | YRCF | 143181 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204004 | YRCF | 143182 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204005 | YRCF | 143183 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204006 | YRCF | 143184 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204007 | YRCF | 143185 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204008 | YRCF | 143186 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204009 | YRCF | 143187 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204010 | YRCF | 143188 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204011 | YRCF | 143189 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204012 | YRCF | 143190 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204013 | YRCF | 143191 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204014 | YRCF | 143192 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204015 | YRCF | 143193 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204016 | YRCF | 143194 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204017 | YRCF | 143195 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204018 | YRCF | 143196 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204019 | YRCF | 143197 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204020 | YRCF | 143198 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204021 | YRCF | 143199 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204022 | YRCF | 143200 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204023 | YRCF | 143201 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204024 | YRCF | 143202 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204025 | YRCF | 143203 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204026 | YRCF | 143204 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204027 | YRCF | 143205 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204028 | YRCF | 143206 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204029 | YRCF | 143207 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204030 | YRCF | 143208 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204031 | YRCF | 143209 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204032 | YRCF | 143210 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204033 | YRCF | 143211 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2811NM204034 | YRCF | 143212 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204035 | YRCF | 143213 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204036 | YRCF | 143214 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204037 | YRCF | 143215 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204038 | YRCF | 143216 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204039 | YRCF | 143217 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204040 | YRCF | 143218 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204041 | YRCF | 143219 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204042 | YRCF | 143220 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204043 | YRCF | 143221 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204044 | YRCF | 143222 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204045 | YRCF | 143223 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204046 | YRCF | 143224 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204047 | YRCF | 143225 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204048 | YRCF | 143226 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204049 | YRCF | 143227 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204050 | YRCF | 143228 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204051 | YRCF | 143229 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204052 | YRCF | 143230 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204053 | YRCF | 143231 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204054 | YRCF | 143232 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204055 | YRCF | 143233 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204056 | YRCF | 143234 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204057 | YRCF | 143235 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204059 | YRCF | 143237 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204060 | YRCF | 143238 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204061 | YRCF | 143239 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204062 | YRCF | 143240 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204063 | YRCF | 143241 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204064 | YRCF | 143242 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204065 | YRCF | 143243 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204066 | YRCF | 143244 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204067 | YRCF | 143245 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204068 | YRCF | 143246 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204069 | YRCF | 143247 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204070 | YRCF | 143248 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204071 | YRCF | 143249 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204072 | YRCF | 143250 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204073 | YRCF | 143251 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204074 | YRCF | 143252 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204075 | YRCF | 143253 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204076 | YRCF | 143254 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204077 | YRCF | 143255 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204078 | YRCF | 143256 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204079 | YRCF | 143257 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204080 | YRCF | 143258 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204081 | YRCF | 143259 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204082 | YRCF | 143260 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204083 | YRCF | 143261 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204084 | YRCF | 143262 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204085 | YRCF | 143263 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204086 | YRCF | 143264 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204087 | YRCF | 143265 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204088 | YRCF | 143266 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204089 | YRCF | 143267 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204090 | YRCF | 143268 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204091 | YRCF | 143269 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204092 | YRCF | 143270 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204093 | YRCF | 143271 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204094 | YRCF | 143272 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204095 | YRCF | 143273 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204096 | YRCF | 143274 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204097 | YRCF | 143275 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204098 | YRCF | 143276 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204099 | YRCF | 143277 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204100 | YRCF | 143278 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204101 | YRCF | 143279 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204102 | YRCF | 143280 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204103 | YRCF | 143281 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204104 | YRCF | 143282 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204105 | YRCF | 143283 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204106 | YRCF | 143284 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204107 | YRCF | 143285 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204108 | YRCF | 143286 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204109 | YRCF | 143287 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2812NM204110 | YRCF | 143288 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204111 | YRCF | 143289 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204112 | YRCF | 143290 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204113 | YRCF | 143291 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204114 | YRCF | 143292 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204115 | YRCF | 143293 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204116 | YRCF | 143294 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204117 | YRCF | 143295 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204118 | YRCF | 143296 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204119 | YRCF | 143297 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204120 | YRCF | 143298 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204121 | YRCF | 143299 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204122 | YRCF | 143300 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204123 | YRCF | 143301 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204124 | YRCF | 143302 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204125 | YRCF | 143303 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204126 | YRCF | 143304 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204127 | YRCF | 143305 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204128 | YRCF | 143306 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204129 | YRCF | 143307 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204130 | YRCF | 143308 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204131 | YRCF | 143309 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204132 | YRCF | 143310 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204133 | YRCF | 143311 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204134 | YRCF | 143312 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204135 | YRCF | 143313 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204136 | YRCF | 143314 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204137 | YRCF | 143315 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204138 | YRCF | 143316 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204139 | YRCF | 143317 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204140 | YRCF | 143318 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204141 | YRCF | 143319 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204142 | YRCF | 143320 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204143 | YRCF | 143321 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204144 | YRCF | 143322 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204145 | YRCF | 143323 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204146 | YRCF | 143324 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204147 | YRCF | 143325 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204148 | YRCF | 143326 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204149 | YRCF | 143327 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204150 | YRCF | 143328 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204151 | YRCF | 143329 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204152 | YRCF | 143330 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204153 | YRCF | 143331 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204154 | YRCF | 143332 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204155 | YRCF | 143333 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204156 | YRCF | 143334 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204157 | YRCF | 143335 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204158 | YRCF | 143336 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204159 | YRCF | 143337 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204160 | YRCF | 143338 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204161 | YRCF | 143339 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204162 | YRCF | 143340 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204163 | YRCF | 143341 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204164 | YRCF | 143342 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204165 | YRCF | 143343 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204166 | YRCF | 143344 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204167 | YRCF | 143345 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204168 | YRCF | 143346 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204169 | YRCF | 143347 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204170 | YRCF | 143348 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204171 | YRCF | 143349 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204172 | YRCF | 143350 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204173 | YRCF | 143351 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204174 | YRCF | 143352 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204175 | YRCF | 143353 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204176 | YRCF | 143354 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204177 | YRCF | 143355 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204178 | YRCF | 143356 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204179 | YRCF | 143357 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204180 | YRCF | 143358 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204181 | YRCF | 143359 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204182 | YRCF | 143360 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204183 | YRCF | 143361 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204184 | YRCF | 143362 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2810NM204185 | YRCF | 143363 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204186 | YRCF | 143364 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204187 | YRCF | 143365 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204188 | YRCF | 143366 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204189 | YRCF | 143367 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204190 | YRCF | 143368 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204191 | YRCF | 143369 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204192 | YRCF | 143370 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204193 | YRCF | 143371 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204194 | YRCF | 143372 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204195 | YRCF | 143373 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204196 | YRCF | 143374 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204197 | YRCF | 143375 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204198 | YRCF | 143376 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204199 | YRCF | 143377 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204200 | YRCF | 143378 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204201 | YRCF | 143379 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204202 | YRCF | 143380 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204203 | YRCF | 143381 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204204 | YRCF | 143382 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204205 | YRCF | 143383 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204206 | YRCF | 143384 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204207 | YRCF | 143385 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204208 | YRCF | 143386 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204209 | YRCF | 143387 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204210 | YRCF | 143388 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204211 | YRCF | 143389 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204212 | YRCF | 143390 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204213 | YRCF | 143391 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204214 | YRCF | 143392 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204215 | YRCF | 143393 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204216 | YRCF | 143394 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204217 | YRCF | 143395 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204218 | YRCF | 143396 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204219 | YRCF | 143397 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204220 | YRCF | 143398 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204221 | YRCF | 143399 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204222 | YRCF | 143400 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204223 | YRCF | 143401 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204224 | YRCF | 143402 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204225 | YRCF | 143403 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204226 | YRCF | 143404 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204227 | YRCF | 143405 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204228 | YRCF | 143406 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204229 | YRCF | 143407 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204230 | YRCF | 143408 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204231 | YRCF | 143409 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204232 | YRCF | 143410 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204233 | YRCF | 143411 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204234 | YRCF | 143412 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204235 | YRCF | 143413 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204236 | YRCF | 143414 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204237 | YRCF | 143415 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204238 | YRCF | 143416 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204239 | YRCF | 143417 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204240 | YRCF | 143418 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204241 | YRCF | 143419 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204242 | YRCF | 143420 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204243 | YRCF | 143421 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204244 | YRCF | 143422 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204245 | YRCF | 143423 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204246 | YRCF | 143424 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204247 | YRCF | 143425 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204248 | YRCF | 143426 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204249 | YRCF | 143427 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204250 | YRCF | 143428 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204251 | YRCF | 143429 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204252 | YRCF | 143430 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204253 | YRCF | 143431 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204254 | YRCF | 143432 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204255 | YRCF | 143433 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204256 | YRCF | 143434 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204257 | YRCF | 143435 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204258 | YRCF | 143436 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204259 | YRCF | 143437 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC281XNM204260 | YRCF | 143438 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204261 | YRCF | 143439 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204262 | YRCF | 143440 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204263 | YRCF | 143441 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204264 | YRCF | 143442 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204265 | YRCF | 143443 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204266 | YRCF | 143444 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204267 | YRCF | 143445 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204268 | YRCF | 143446 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204269 | YRCF | 143447 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204270 | YRCF | 143448 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204271 | YRCF | 143449 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV281D6NL301238 | YRCF | 143464 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301239 | YRCF | 143465 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301240 | YRCF | 143466 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301241 | YRCF | 143467 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301242 | YRCF | 143468 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301243 | YRCF | 143469 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301244 | YRCF | 143470 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301245 | YRCF | 143471 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301246 | YRCF | 143472 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301247 | YRCF | 143473 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301248 | YRCF | 143474 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301249 | YRCF | 143475 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301250 | YRCF | 143476 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301251 | YRCF | 143477 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301252 | YRCF | 143478 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301253 | YRCF | 143479 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301254 | YRCF | 143480 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301255 | YRCF | 143481 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301256 | YRCF | 143482 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301257 | YRCF | 143483 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301258 | YRCF | 143484 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301259 | YRCF | 143485 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301260 | YRCF | 143486 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301261 | YRCF | 143487 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301262 | YRCF | 143488 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301263 | YRCF | 143489 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301264 | YRCF | 143490 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301265 | YRCF | 143491 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301266 | YRCF | 143492 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301267 | YRCF | 143493 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301268 | YRCF | 143494 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301269 | YRCF | 143495 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301270 | YRCF | 143496 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301271 | YRCF | 143497 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301272 | YRCF | 143498 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301273 | YRCF | 143499 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301274 | YRCF | 143500 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301275 | YRCF | 143501 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301276 | YRCF | 143502 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301277 | YRCF | 143503 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301278 | YRCF | 143504 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301279 | YRCF | 143505 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301280 | YRCF | 143506 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301281 | YRCF | 143507 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301282 | YRCF | 143508 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301283 | YRCF | 143509 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301284 | YRCF | 143510 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301285 | YRCF | 143511 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301286 | YRCF | 143512 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301287 | YRCF | 143513 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301288 | YRCF | 143514 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301289 | YRCF | 143515 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301290 | YRCF | 143516 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301291 | YRCF | 143517 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301292 | YRCF | 143518 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301293 | YRCF | 143519 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301294 | YRCF | 143520 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301295 | YRCF | 143521 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301296 | YRCF | 143522 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301297 | YRCF | 143523 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301298 | YRCF | 143524 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301299 | YRCF | 143525 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301300 | YRCF | 143526 | TRAILER | IN | IN | 1 | WABASH |

| 1JJV281D9NL301301 | YRCF | 143527 | TRAILER | IN | IN | 1 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D0NL301302 | YRCF | 143528 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301303 | YRCF | 143529 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301304 | YRCF | 143530 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301305 | YRCF | 143531 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301306 | YRCF | 143532 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301307 | YRCF | 143533 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301308 | YRCF | 143534 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301309 | YRCF | 143535 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301310 | YRCF | 143536 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301311 | YRCF | 143537 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301312 | YRCF | 143538 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301313 | YRCF | 143539 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301314 | YRCF | 143540 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301315 | YRCF | 143541 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301316 | YRCF | 143542 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301317 | YRCF | 143543 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301318 | YRCF | 143544 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301319 | YRCF | 143545 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301320 | YRCF | 143546 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301321 | YRCF | 143547 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301322 | YRCF | 143548 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301323 | YRCF | 143549 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301324 | YRCF | 143550 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301325 | YRCF | 143551 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301326 | YRCF | 143552 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301327 | YRCF | 143553 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301328 | YRCF | 143554 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301329 | YRCF | 143555 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301330 | YRCF | 143556 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301331 | YRCF | 143557 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301332 | YRCF | 143558 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301333 | YRCF | 143559 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301334 | YRCF | 143560 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301335 | YRCF | 143561 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301336 | YRCF | 143562 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301337 | YRCF | 143563 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301338 | YRCF | 143564 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301339 | YRCF | 143565 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301340 | YRCF | 143566 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301341 | YRCF | 143567 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301342 | YRCF | 143568 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301343 | YRCF | 143569 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301344 | YRCF | 143570 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301345 | YRCF | 143571 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301346 | YRCF | 143572 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301347 | YRCF | 143573 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301348 | YRCF | 143574 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301349 | YRCF | 143575 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301350 | YRCF | 143576 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301351 | YRCF | 143577 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301352 | YRCF | 143578 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301353 | YRCF | 143579 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301354 | YRCF | 143580 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301355 | YRCF | 143581 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301356 | YRCF | 143582 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301357 | YRCF | 143583 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301358 | YRCF | 143584 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301359 | YRCF | 143585 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301360 | YRCF | 143586 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301361 | YRCF | 143587 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301362 | YRCF | 143588 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301363 | YRCF | 143589 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301364 | YRCF | 143590 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301365 | YRCF | 143591 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301366 | YRCF | 143592 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301367 | YRCF | 143593 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301368 | YRCF | 143594 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301369 | YRCF | 143595 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301370 | YRCF | 143596 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301371 | YRCF | 143597 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301372 | YRCF | 143598 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301373 | YRCF | 143599 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301374 | YRCF | 143600 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301375 | YRCF | 143601 | TRAILER | IN | IN | 1 | WABASH |

| 1JJV281D7NL301376 | YRCF | 143602 | TRAILER | IN | IN | 1 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D9NL301377 | YRCF | 143603 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301378 | YRCF | 143604 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301379 | YRCF | 143605 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301380 | YRCF | 143606 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301381 | YRCF | 143607 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301382 | YRCF | 143608 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301383 | YRCF | 143609 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301384 | YRCF | 143610 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301385 | YRCF | 143611 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301386 | YRCF | 143612 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301387 | YRCF | 143613 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301388 | YRCF | 143614 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301389 | YRCF | 143615 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301390 | YRCF | 143616 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301391 | YRCF | 143617 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301392 | YRCF | 143618 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301393 | YRCF | 143619 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301394 | YRCF | 143620 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301395 | YRCF | 143621 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301396 | YRCF | 143622 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301397 | YRCF | 143623 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301398 | YRCF | 143624 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301399 | YRCF | 143625 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301400 | YRCF | 143626 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301401 | YRCF | 143627 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301402 | YRCF | 143628 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301403 | YRCF | 143629 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301404 | YRCF | 143630 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301405 | YRCF | 143631 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301406 | YRCF | 143632 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301407 | YRCF | 143633 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301408 | YRCF | 143634 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301409 | YRCF | 143635 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301410 | YRCF | 143636 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301411 | YRCF | 143637 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301412 | YRCF | 143638 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301413 | YRCF | 143639 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301414 | YRCF | 143640 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301415 | YRCF | 143641 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301416 | YRCF | 143642 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301417 | YRCF | 143643 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301418 | YRCF | 143644 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301419 | YRCF | 143645 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301420 | YRCF | 143646 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301421 | YRCF | 143647 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301422 | YRCF | 143648 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301423 | YRCF | 143649 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301424 | YRCF | 143650 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301425 | YRCF | 143651 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301426 | YRCF | 143652 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301427 | YRCF | 143653 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301428 | YRCF | 143654 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301429 | YRCF | 143655 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301430 | YRCF | 143656 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301431 | YRCF | 143657 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301432 | YRCF | 143658 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301433 | YRCF | 143659 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301434 | YRCF | 143660 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301435 | YRCF | 143661 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301436 | YRCF | 143662 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301437 | YRCF | 143663 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301438 | YRCF | 143664 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301439 | YRCF | 143665 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301440 | YRCF | 143666 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301441 | YRCF | 143667 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301442 | YRCF | 143668 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301443 | YRCF | 143669 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301444 | YRCF | 143670 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301445 | YRCF | 143671 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301446 | YRCF | 143672 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301447 | YRCF | 143673 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301448 | YRCF | 143674 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301449 | YRCF | 143675 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301450 | YRCF | 143676 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D6NL301451 | YRCF | 143677 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301452 | YRCF | 143678 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301453 | YRCF | 143679 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301454 | YRCF | 143680 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301455 | YRCF | 143681 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301456 | YRCF | 143682 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301457 | YRCF | 143683 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301458 | YRCF | 143684 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301459 | YRCF | 143685 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301460 | YRCF | 143686 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301461 | YRCF | 143687 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301462 | YRCF | 143688 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301463 | YRCF | 143689 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301464 | YRCF | 143690 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301465 | YRCF | 143691 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301466 | YRCF | 143692 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301467 | YRCF | 143693 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301468 | YRCF | 143694 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301469 | YRCF | 143695 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301470 | YRCF | 143696 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301471 | YRCF | 143697 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301472 | YRCF | 143698 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301473 | YRCF | 143699 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301474 | YRCF | 143700 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301475 | YRCF | 143701 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301476 | YRCF | 143702 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301477 | YRCF | 143703 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301478 | YRCF | 143704 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301479 | YRCF | 143705 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301480 | YRCF | 143706 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301482 | YRCF | 143708 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301483 | YRCF | 143709 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301484 | YRCF | 143710 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301485 | YRCF | 143711 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301486 | YRCF | 143712 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301487 | YRCF | 143713 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301488 | YRCF | 143714 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301489 | YRCF | 143715 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301490 | YRCF | 143716 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301491 | YRCF | 143717 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301492 | YRCF | 143718 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301493 | YRCF | 143719 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301494 | YRCF | 143720 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301495 | YRCF | 143721 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301496 | YRCF | 143722 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301497 | YRCF | 143723 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301498 | YRCF | 143724 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301499 | YRCF | 143725 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301500 | YRCF | 143726 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301501 | YRCF | 143727 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301502 | YRCF | 143728 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301503 | YRCF | 143729 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301504 | YRCF | 143730 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301505 | YRCF | 143731 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301506 | YRCF | 143732 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301507 | YRCF | 143733 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301508 | YRCF | 143734 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301509 | YRCF | 143735 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301510 | YRCF | 143736 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301511 | YRCF | 143737 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301512 | YRCF | 143738 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301513 | YRCF | 143739 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301514 | YRCF | 143740 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301515 | YRCF | 143741 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301516 | YRCF | 143742 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301517 | YRCF | 143743 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301518 | YRCF | 143744 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301519 | YRCF | 143745 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301520 | YRCF | 143746 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301521 | YRCF | 143747 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301522 | YRCF | 143748 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301523 | YRCF | 143749 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301524 | YRCF | 143750 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301525 | YRCF | 143751 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301526 | YRCF | 143752 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D2NL301527 | YRCF | 143753 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301528 | YRCF | 143754 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301529 | YRCF | 143755 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301530 | YRCF | 143756 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301531 | YRCF | 143757 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301532 | YRCF | 143758 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301533 | YRCF | 143759 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301534 | YRCF | 143760 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301535 | YRCF | 143761 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301536 | YRCF | 143762 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301537 | YRCF | 143763 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301538 | YRCF | 143764 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301539 | YRCF | 143765 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301540 | YRCF | 143766 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301541 | YRCF | 143767 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301542 | YRCF | 143768 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301587 | YRCF | 143769 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301588 | YRCF | 143770 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301589 | YRCF | 143771 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301590 | YRCF | 143772 | TRAILER | IN | IN | 1 | WABASH |
| 3H3V281CXHT286013 | YRCF | 144441 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT286015 | YRCF | 144442 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT286025 | YRCF | 144443 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281CXHT286027 | YRCF | 144444 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286150 | YRCF | 144449 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286181 | YRCF | 144450 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286200 | YRCF | 144451 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286231 | YRCF | 144452 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286234 | YRCF | 144454 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT286258 | YRCF | 144455 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286277 | YRCF | 144456 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286315 | YRCF | 144457 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281CXHT286352 | YRCF | 144458 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT286401 | YRCF | 144464 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C2HT286409 | YRCF | 144465 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT286435 | YRCF | 144466 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281CXHT286447 | YRCF | 144467 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286455 | YRCF | 144469 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286456 | YRCF | 144470 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286472 | YRCF | 144471 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT286477 | YRCF | 144472 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286490 | YRCF | 144473 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT286496 | YRCF | 144474 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C2HT286510 | YRCF | 144476 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT286520 | YRCF | 144477 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286571 | YRCF | 144479 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286599 | YRCF | 144482 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT286600 | YRCF | 144483 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT286664 | YRCF | 144485 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286668 | YRCF | 144486 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT286759 | YRCF | 144490 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT286761 | YRCF | 144491 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT286776 | YRCF | 144493 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT286818 | YRCF | 144494 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT286821 | YRCF | 144496 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT286905 | YRCF | 144497 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281CXHT286917 | YRCF | 144498 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT286949 | YRCF | 144499 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT286954 | YRCF | 144500 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286957 | YRCF | 144501 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT286997 | YRCF | 144503 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT287019 | YRCF | 144505 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT287079 | YRCF | 144509 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT287098 | YRCF | 144510 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT287113 | YRCF | 144512 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C2HT287141 | YRCF | 144513 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT287225 | YRCF | 144516 | TRAILER | IN | IN | 1 | HYUNDAI |
| 1DW1A2817HS716804 | YRCF | 144519 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HS716819 | YRCF | 144520 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HS716820 | YRCF | 144521 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HS716825 | YRCF | 144522 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHS716862 | YRCF | 144525 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HS716865 | YRCF | 144527 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HS716877 | YRCF | 144529 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HS716900 | YRCF | 144530 | TRAILER | IN | IN | 1 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A2813HS716914 | YRCF | 144531 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HS716942 | YRCF | 144533 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719001 | YRCF | 144534 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719005 | YRCF | 144535 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB719006 | YRCF | 144536 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB719028 | YRCF | 144538 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719047 | YRCF | 144541 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719052 | YRCF | 144542 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719072 | YRCF | 144544 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719133 | YRCF | 144546 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719141 | YRCF | 144547 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719145 | YRCF | 144549 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719167 | YRCF | 144551 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB719174 | YRCF | 144552 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719208 | YRCF | 144553 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719212 | YRCF | 144554 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB719258 | YRCF | 144555 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB719278 | YRCF | 144558 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719279 | YRCF | 144559 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719282 | YRCF | 144560 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB719314 | YRCF | 144561 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719341 | YRCF | 144562 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719346 | YRCF | 144563 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB719356 | YRCF | 144564 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719385 | YRCF | 144565 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719400 | YRCF | 144567 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719419 | YRCF | 144569 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719447 | YRCF | 144571 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719452 | YRCF | 144572 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719456 | YRCF | 144573 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719470 | YRCF | 144574 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719481 | YRCF | 144575 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719498 | YRCF | 144576 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB719566 | YRCF | 144578 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719598 | YRCF | 144579 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719601 | YRCF | 144580 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719639 | YRCF | 144582 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719686 | YRCF | 144584 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719688 | YRCF | 144585 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719697 | YRCF | 144586 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719702 | YRCF | 144587 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719706 | YRCF | 144588 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719761 | YRCF | 144590 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719797 | YRCF | 144591 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719800 | YRCF | 144592 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719822 | YRCF | 144593 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719824 | YRCF | 144594 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719889 | YRCF | 144596 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719901 | YRCF | 144597 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719917 | YRCF | 144598 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719942 | YRCF | 144599 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719948 | YRCF | 144600 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719951 | YRCF | 144601 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719957 | YRCF | 144602 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719981 | YRCF | 144604 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB720006 | YRCF | 144606 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB720042 | YRCF | 144609 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB720051 | YRCF | 144610 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB720058 | YRCF | 144611 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB720065 | YRCF | 144612 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB720077 | YRCF | 144613 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB720098 | YRCF | 144615 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB720118 | YRCF | 144617 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB720137 | YRCF | 144619 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB720146 | YRCF | 144620 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB720150 | YRCF | 144621 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB720170 | YRCF | 144622 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB720200 | YRCF | 144623 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB720230 | YRCF | 144624 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB720232 | YRCF | 144625 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB720238 | YRCF | 144626 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB720262 | YRCF | 144628 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB720266 | YRCF | 144629 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB720296 | YRCF | 144631 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB720298 | YRCF | 144632 | TRAILER | IN | IN | 1 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A2814HB720325 | YRCF | 144634 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB720332 | YRCF | 144635 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB720347 | YRCF | 144636 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB720355 | YRCF | 144638 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB720390 | YRCF | 144641 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719848 | YRCF | 144643 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT287082 | YRCF | 144645 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT286790 | YRCF | 144646 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT287068 | YRCF | 144648 | TRAILER | IN | IN | 1 | HYUNDAI |
| 5V8VC2815PM309498 | YRCF | 144726 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326MM109291 | YRCF | 531518 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328MM109292 | YRCF | 531519 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XMM109293 | YRCF | 531520 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321MM109294 | YRCF | 531521 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323MM109295 | YRCF | 531522 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325MM109296 | YRCF | 531523 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327MM109297 | YRCF | 531524 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329MM109298 | YRCF | 531525 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320MM109299 | YRCF | 531526 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323MM109300 | YRCF | 531527 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325MM109301 | YRCF | 531528 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327MM109302 | YRCF | 531529 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329MM109303 | YRCF | 531530 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320MM109304 | YRCF | 531531 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322MM109305 | YRCF | 531532 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324MM109306 | YRCF | 531533 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326MM109307 | YRCF | 531534 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328MM109308 | YRCF | 531535 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XMM109309 | YRCF | 531536 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326MM109310 | YRCF | 531537 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328MM109311 | YRCF | 531538 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XMM109312 | YRCF | 531539 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321MM109313 | YRCF | 531540 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323MM109314 | YRCF | 531541 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325MM109315 | YRCF | 531542 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327MM109316 | YRCF | 531543 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329MM109317 | YRCF | 531544 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320MM109318 | YRCF | 531545 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322MM109319 | YRCF | 531546 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329MM109320 | YRCF | 531547 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320MM109321 | YRCF | 531548 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322MM109322 | YRCF | 531549 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324MM109323 | YRCF | 531550 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326MM109324 | YRCF | 531551 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328MM109325 | YRCF | 531552 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XMM109326 | YRCF | 531553 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321MM109327 | YRCF | 531554 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323MM109328 | YRCF | 531555 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325MM109329 | YRCF | 531556 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321MM109330 | YRCF | 531557 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323MM109331 | YRCF | 531558 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325MM109332 | YRCF | 531559 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327MM109333 | YRCF | 531560 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329MM109334 | YRCF | 531561 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320MM109335 | YRCF | 531562 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322MM109336 | YRCF | 531563 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324MM109337 | YRCF | 531564 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326MM109338 | YRCF | 531565 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204609 | YRCF | 531566 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204610 | YRCF | 531567 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204611 | YRCF | 531568 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204612 | YRCF | 531569 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204614 | YRCF | 531571 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204615 | YRCF | 531572 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204616 | YRCF | 531573 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204617 | YRCF | 531574 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204618 | YRCF | 531575 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325NM204619 | YRCF | 531576 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204621 | YRCF | 531578 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325NM204622 | YRCF | 531579 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204623 | YRCF | 531580 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204624 | YRCF | 531581 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204625 | YRCF | 531582 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204626 | YRCF | 531583 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204627 | YRCF | 531584 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC5326NM204628 | YRCF | 531585 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204629 | YRCF | 531586 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204630 | YRCF | 531587 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204631 | YRCF | 531588 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204632 | YRCF | 531589 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204633 | YRCF | 531590 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204634 | YRCF | 531591 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204635 | YRCF | 531592 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325NM204636 | YRCF | 531593 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204637 | YRCF | 531594 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204638 | YRCF | 531595 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204639 | YRCF | 531596 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204640 | YRCF | 531597 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204641 | YRCF | 531598 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204642 | YRCF | 531599 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204643 | YRCF | 531600 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204644 | YRCF | 531601 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204645 | YRCF | 531602 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204646 | YRCF | 531603 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204647 | YRCF | 531604 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204648 | YRCF | 531605 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204649 | YRCF | 531606 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204650 | YRCF | 531607 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204651 | YRCF | 531608 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204652 | YRCF | 531609 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204654 | YRCF | 531611 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204655 | YRCF | 531612 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204656 | YRCF | 531613 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204657 | YRCF | 531614 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204658 | YRCF | 531615 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204659 | YRCF | 531616 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204660 | YRCF | 531617 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204661 | YRCF | 531618 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204662 | YRCF | 531619 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204663 | YRCF | 531620 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204664 | YRCF | 531621 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204665 | YRCF | 531622 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204666 | YRCF | 531623 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325NM204667 | YRCF | 531624 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204668 | YRCF | 531625 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204669 | YRCF | 531626 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325NM204670 | YRCF | 531627 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204672 | YRCF | 531629 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204673 | YRCF | 531630 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204674 | YRCF | 531631 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204675 | YRCF | 531632 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204676 | YRCF | 531633 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204677 | YRCF | 531634 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204678 | YRCF | 531635 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204679 | YRCF | 531636 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204680 | YRCF | 531637 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211026 | YRCF | 531638 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211027 | YRCF | 531639 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211028 | YRCF | 531640 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211029 | YRCF | 531641 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211030 | YRCF | 531642 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211031 | YRCF | 531643 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211032 | YRCF | 531644 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211033 | YRCF | 531645 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211034 | YRCF | 531646 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211035 | YRCF | 531647 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211036 | YRCF | 531648 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211037 | YRCF | 531649 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211038 | YRCF | 531650 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211039 | YRCF | 531651 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211040 | YRCF | 531652 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211042 | YRCF | 531654 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211043 | YRCF | 531655 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211044 | YRCF | 531656 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211045 | YRCF | 531657 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211046 | YRCF | 531658 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211047 | YRCF | 531659 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211048 | YRCF | 531660 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211049 | YRCF | 531661 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211050 | YRCF | 531662 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA5324NM211051 | YRCF | 531663 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211052 | YRCF | 531664 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211053 | YRCF | 531665 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211054 | YRCF | 531666 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211055 | YRCF | 531667 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211056 | YRCF | 531668 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211057 | YRCF | 531669 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211058 | YRCF | 531670 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211059 | YRCF | 531671 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211060 | YRCF | 531672 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211061 | YRCF | 531673 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211062 | YRCF | 531674 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211063 | YRCF | 531675 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211064 | YRCF | 531676 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211065 | YRCF | 531677 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211066 | YRCF | 531678 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211067 | YRCF | 531679 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211068 | YRCF | 531680 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211069 | YRCF | 531681 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211070 | YRCF | 531682 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211071 | YRCF | 531683 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211072 | YRCF | 531684 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211073 | YRCF | 531685 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211074 | YRCF | 531686 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211075 | YRCF | 531687 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211076 | YRCF | 531688 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211077 | YRCF | 531689 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211078 | YRCF | 531690 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211079 | YRCF | 531691 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211080 | YRCF | 531692 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211081 | YRCF | 531693 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211082 | YRCF | 531694 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211083 | YRCF | 531695 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211084 | YRCF | 531696 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211085 | YRCF | 531697 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211086 | YRCF | 531698 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211087 | YRCF | 531699 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211088 | YRCF | 531700 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211089 | YRCF | 531701 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211090 | YRCF | 531702 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211091 | YRCF | 531703 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211092 | YRCF | 531704 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211093 | YRCF | 531705 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211094 | YRCF | 531706 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211095 | YRCF | 531707 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211096 | YRCF | 531708 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211097 | YRCF | 531709 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211098 | YRCF | 531710 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211099 | YRCF | 531711 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211100 | YRCF | 531712 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211101 | YRCF | 531713 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211102 | YRCF | 531714 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211103 | YRCF | 531715 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211104 | YRCF | 531716 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211105 | YRCF | 531717 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211106 | YRCF | 531718 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211107 | YRCF | 531719 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211108 | YRCF | 531720 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211109 | YRCF | 531721 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211110 | YRCF | 531722 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211111 | YRCF | 531723 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211112 | YRCF | 531724 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211113 | YRCF | 531725 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211114 | YRCF | 531726 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211115 | YRCF | 531727 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211116 | YRCF | 531728 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211117 | YRCF | 531729 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211118 | YRCF | 531730 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211119 | YRCF | 531731 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211120 | YRCF | 531732 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211121 | YRCF | 531733 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211122 | YRCF | 531734 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211123 | YRCF | 531735 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211124 | YRCF | 531736 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211125 | YRCF | 531737 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3H3V532C9LT557001 | YRCF | 531738 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C0LT557002 | YRCF | 531739 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C2LT557003 | YRCF | 531740 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C4LT557004 | YRCF | 531741 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C6LT557005 | YRCF | 531742 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C8LT557006 | YRCF | 531743 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532CXLT557007 | YRCF | 531744 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C1LT557008 | YRCF | 531745 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C3LT557009 | YRCF | 531746 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532CXLT557010 | YRCF | 531747 | TRAILER | IN | IN | 1 | HYUNDAI |
| 1JJV532D1EL755311 | YRCF | 531748 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL793956 | YRCF | 531749 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL793980 | YRCF | 531750 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL793986 | YRCF | 531751 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794004 | YRCF | 531752 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL793984 | YRCF | 531800 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL794996 | YRCF | 531801 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795008 | YRCF | 531802 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795324 | YRCF | 531803 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795398 | YRCF | 531804 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795685 | YRCF | 531805 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795753 | YRCF | 531806 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795894 | YRCF | 531807 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795927 | YRCF | 531808 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795963 | YRCF | 531809 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL794454 | YRCF | 531810 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794506 | YRCF | 531811 | TRAILER | IN | IN | 1 | WABASH |

| VIN | BRAND | UNIT | TYPE | TITLE STATE | REGISTRATION STATE | COLLATERAL CATEGORY | MAKE |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X6MD758682 | HMES | 21302 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758683 | HMES | 21303 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758684 | HMES | 21304 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758685 | HMES | 21305 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758686 | HMES | 21306 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758687 | HMES | 21307 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758688 | HMES | 21308 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758689 | HMES | 21309 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758690 | HMES | 21310 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758692 | HMES | 21312 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0MD758693 | HMES | 21313 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2MD758694 | HMES | 21314 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758695 | HMES | 21315 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758699 | HMES | 21319 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6MD758701 | HMES | 21321 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758702 | HMES | 21322 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758703 | HMES | 21323 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758705 | HMES | 21325 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758706 | HMES | 21326 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758707 | HMES | 21327 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758708 | HMES | 21328 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0MD758709 | HMES | 21329 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758710 | HMES | 21330 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758711 | HMES | 21331 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0MD758712 | HMES | 21332 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2MD758713 | HMES | 21333 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6MD758715 | HMES | 21335 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758717 | HMES | 21337 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758719 | HMES | 21339 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758720 | HMES | 21340 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758721 | HMES | 21341 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758722 | HMES | 21342 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758724 | HMES | 21344 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758725 | HMES | 21345 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0MD758726 | HMES | 21346 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2MD758727 | HMES | 21347 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758728 | HMES | 21348 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6MD758729 | HMES | 21349 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758731 | HMES | 21351 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6MD758732 | HMES | 21352 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758735 | HMES | 21355 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758737 | HMES | 21357 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758738 | HMES | 21358 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758739 | HMES | 21359 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758740 | HMES | 21360 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758745 | HMES | 21365 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758749 | HMES | 21369 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758681 | HMES | 21400 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758691 | HMES | 21401 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6MD758696 | HMES | 21402 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758697 | HMES | 21403 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758698 | HMES | 21404 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758700 | HMES | 21406 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758704 | HMES | 21407 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758714 | HMES | 21408 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758716 | HMES | 21409 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758718 | HMES | 21410 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758723 | HMES | 21411 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2MD758730 | HMES | 21412 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758733 | HMES | 21413 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758734 | HMES | 21419 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758736 | HMES | 21420 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758741 | HMES | 21421 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758742 | HMES | 21424 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0MD758743 | HMES | 21427 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2MD758744 | HMES | 21430 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758746 | HMES | 21431 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758747 | HMES | 21432 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758748 | HMES | 21433 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758750 | HMES | 21434 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758751 | HMES | 21435 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758752 | HMES | 21436 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758753 | HMES | 21438 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758754 | HMES | 22001 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758755 | HMES | 22002 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758756 | HMES | 22003 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758757 | HMES | 22004 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758758 | HMES | 22005 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758759 | HMES | 22006 | TRACTOR | IN | IN | 1 | PETERBILT |

| 1XPBAK9X9ND758760 | HMES | 22007 | TRACTOR | IN | IN | 1 | PETERBILT |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X0ND758761 | HMES | 22008 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758762 | HMES | 22009 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758763 | HMES | 22010 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758764 | HMES | 22011 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758765 | HMES | 22012 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758766 | HMES | 22013 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758767 | HMES | 22014 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758768 | HMES | 22015 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758769 | HMES | 22016 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758770 | HMES | 22017 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758771 | HMES | 22018 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758772 | HMES | 22019 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758773 | HMES | 22020 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758774 | HMES | 22021 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758775 | HMES | 22022 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758776 | HMES | 22023 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758777 | HMES | 22024 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758778 | HMES | 22025 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758779 | HMES | 22026 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758780 | HMES | 22027 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758781 | HMES | 22028 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758782 | HMES | 22029 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758783 | HMES | 22030 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758784 | HMES | 22031 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758785 | HMES | 22032 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758786 | HMES | 22033 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758787 | HMES | 22034 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758788 | HMES | 22035 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758789 | HMES | 22036 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758790 | HMES | 22037 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758791 | HMES | 22038 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758792 | HMES | 22039 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758793 | HMES | 22040 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758794 | HMES | 22041 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758795 | HMES | 22042 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758796 | HMES | 22043 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758797 | HMES | 22044 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758798 | HMES | 22045 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758799 | HMES | 22046 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758800 | HMES | 22047 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758801 | HMES | 22048 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758802 | HMES | 22049 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758803 | HMES | 22050 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758804 | HMES | 22051 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758805 | HMES | 22052 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758806 | HMES | 22053 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758807 | HMES | 22054 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758808 | HMES | 22055 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758809 | HMES | 22056 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758810 | HMES | 22057 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758811 | HMES | 22058 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758812 | HMES | 22059 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758813 | HMES | 22060 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758814 | HMES | 22061 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758815 | HMES | 22062 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758816 | HMES | 22063 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758817 | HMES | 22064 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758818 | HMES | 22065 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758819 | HMES | 22066 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758820 | HMES | 22067 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758821 | HMES | 22068 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758822 | HMES | 22069 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758823 | HMES | 22070 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758824 | HMES | 22071 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758825 | HMES | 22072 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758826 | HMES | 22073 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758827 | HMES | 22074 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758828 | HMES | 22075 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758829 | HMES | 22076 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758830 | HMES | 22077 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758831 | HMES | 22078 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758832 | HMES | 22079 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758834 | HMES | 22081 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758835 | HMES | 22082 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758836 | HMES | 22083 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758837 | HMES | 22084 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758838 | HMES | 22085 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758839 | HMES | 22086 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758840 | HMES | 22087 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758841 | HMES | 22088 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X0ND758842 | HMES | 22089 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758843 | HMES | 22090 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758844 | HMES | 22091 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758845 | HMES | 22092 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758846 | HMES | 22093 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758847 | HMES | 22094 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758848 | HMES | 22095 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758849 | HMES | 22096 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758850 | HMES | 22097 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758851 | HMES | 22098 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758852 | HMES | 22099 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758853 | HMES | 22100 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758854 | HMES | 22101 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758855 | HMES | 22102 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758856 | HMES | 22103 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758857 | HMES | 22104 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758858 | HMES | 22105 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758859 | HMES | 22106 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758860 | HMES | 22107 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758861 | HMES | 22108 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758862 | HMES | 22109 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758863 | HMES | 22110 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758864 | HMES | 22111 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758865 | HMES | 22112 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758866 | HMES | 22113 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758867 | HMES | 22114 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758868 | HMES | 22115 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758869 | HMES | 22116 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758870 | HMES | 22117 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758872 | HMES | 22119 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758873 | HMES | 22120 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758874 | HMES | 22121 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758875 | HMES | 22122 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758876 | HMES | 22123 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758877 | HMES | 22124 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758878 | HMES | 22125 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758879 | HMES | 22126 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758880 | HMES | 22127 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758881 | HMES | 22128 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758882 | HMES | 22129 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758883 | HMES | 22130 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758884 | HMES | 22131 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758885 | HMES | 22132 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758886 | HMES | 22133 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758887 | HMES | 22134 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758888 | HMES | 22135 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758889 | HMES | 22136 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758890 | HMES | 22137 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758891 | HMES | 22138 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758892 | HMES | 22139 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758893 | HMES | 22140 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758894 | HMES | 22141 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758895 | HMES | 22142 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758896 | HMES | 22143 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758897 | HMES | 22144 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758898 | HMES | 22145 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758899 | HMES | 22146 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758900 | HMES | 22147 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758901 | HMES | 22148 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758902 | HMES | 22149 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758903 | HMES | 22150 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758904 | HMES | 22151 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758905 | HMES | 22152 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758906 | HMES | 22153 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758907 | HMES | 22154 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758908 | HMES | 22155 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758909 | HMES | 22156 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758910 | HMES | 22157 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758911 | HMES | 22158 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758912 | HMES | 22159 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758913 | HMES | 22160 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758914 | HMES | 22161 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758915 | HMES | 22162 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758916 | HMES | 22163 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758917 | HMES | 22164 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758918 | HMES | 22165 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758919 | HMES | 22166 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758920 | HMES | 22167 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758921 | HMES | 22168 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758922 | HMES | 22169 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758923 | HMES | 22170 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X2ND758924 | HMES | 22171 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758925 | HMES | 22172 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758926 | HMES | 22173 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758927 | HMES | 22174 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758928 | HMES | 22175 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758929 | HMES | 22176 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758930 | HMES | 22177 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758931 | HMES | 22178 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758932 | HMES | 22179 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758933 | HMES | 22180 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758934 | HMES | 22181 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758935 | HMES | 22182 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758936 | HMES | 22183 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758937 | HMES | 22184 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758938 | HMES | 22185 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758939 | HMES | 22186 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758940 | HMES | 22187 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758941 | HMES | 22188 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758942 | HMES | 22189 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758943 | HMES | 22190 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758944 | HMES | 22191 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758945 | HMES | 22192 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758946 | HMES | 22193 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758947 | HMES | 22194 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758948 | HMES | 22195 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758949 | HMES | 22196 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758950 | HMES | 22197 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758951 | HMES | 22198 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758952 | HMES | 22199 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758953 | HMES | 22500 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758954 | HMES | 22501 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758955 | HMES | 22502 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758956 | HMES | 22503 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758957 | HMES | 22504 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758958 | HMES | 22505 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758959 | HMES | 22506 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758960 | HMES | 22507 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758961 | HMES | 22508 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758962 | HMES | 22509 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758963 | HMES | 22510 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758964 | HMES | 22511 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758965 | HMES | 22512 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758966 | HMES | 22513 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758967 | HMES | 22514 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758968 | HMES | 22515 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758969 | HMES | 22516 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758970 | HMES | 22517 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758971 | HMES | 22518 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758972 | HMES | 22519 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4WB9EG9NN285259 | HMES | 22520 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WB9EG5NN285260 | HMES | 22521 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WB9EG7NN285261 | HMES | 22522 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WB9EG9NN285262 | HMES | 22523 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WB9EG0NN285263 | HMES | 22524 | TRACTOR | IN | IN | 1 | VOLVO |
| 1FUGHLDV9NLMZ4985 | HMES | 22525 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ4986 | HMES | 22526 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ4987 | HMES | 22527 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ4988 | HMES | 22528 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ4989 | HMES | 22529 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ4990 | HMES | 22530 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ4991 | HMES | 22531 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ4992 | HMES | 22532 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV8NLMZ4993 | HMES | 22533 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ4994 | HMES | 22534 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ4995 | HMES | 22535 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ4996 | HMES | 22536 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ4997 | HMES | 22537 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ4998 | HMES | 22538 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV9NLMZ5000 | HMES | 22540 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ5001 | HMES | 22541 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5002 | HMES | 22542 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5003 | HMES | 22543 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5004 | HMES | 22544 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV9NLMZ5005 | HMES | 22545 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ5006 | HMES | 22546 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5007 | HMES | 22547 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5008 | HMES | 22548 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ5009 | HMES | 22549 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5010 | HMES | 22550 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5011 | HMES | 22551 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ5012 | HMES | 22552 | TRACTOR | MI | IN | 1 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGHLDV8NLMZ5013 | HMES | 22553 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ5014 | HMES | 22554 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ5015 | HMES | 22555 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5016 | HMES | 22556 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5017 | HMES | 22557 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5018 | HMES | 22558 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV9NLMZ5019 | HMES | 22559 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5020 | HMES | 22560 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5021 | HMES | 22561 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV9NLMZ5022 | HMES | 22562 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ5023 | HMES | 22563 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5024 | HMES | 22564 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5025 | HMES | 22565 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ5026 | HMES | 22566 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV8NLMZ5027 | HMES | 22567 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ5028 | HMES | 22568 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ5029 | HMES | 22569 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV8NLMZ5030 | HMES | 22570 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ5031 | HMES | 22571 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ5032 | HMES | 22572 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5033 | HMES | 22573 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5034 | HMES | 22574 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5035 | HMES | 22575 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5036 | HMES | 22576 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ5037 | HMES | 22577 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5038 | HMES | 22578 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5039 | HMES | 22579 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ5040 | HMES | 22580 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5041 | HMES | 22581 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5042 | HMES | 22582 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ5043 | HMES | 22583 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV8NLMZ5044 | HMES | 22584 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ5045 | HMES | 22585 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ5046 | HMES | 22586 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5047 | HMES | 22587 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5048 | HMES | 22588 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5049 | HMES | 22589 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5050 | HMES | 22590 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5051 | HMES | 22591 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5052 | HMES | 22592 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV9NLMZ5053 | HMES | 22593 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ5054 | HMES | 22594 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5055 | HMES | 22595 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5056 | HMES | 22596 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ5057 | HMES | 22597 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV8NLMZ5058 | HMES | 22598 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ5059 | HMES | 22599 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1XPBAK9X0ND777312 | HMES | 22600 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777313 | HMES | 22601 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777314 | HMES | 22602 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777315 | HMES | 22603 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777316 | HMES | 22604 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777317 | HMES | 22605 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777318 | HMES | 22606 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777319 | HMES | 22607 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777320 | HMES | 22608 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777321 | HMES | 22609 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777322 | HMES | 22610 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777323 | HMES | 22611 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777324 | HMES | 22612 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND777325 | HMES | 22613 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND777326 | HMES | 22614 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777327 | HMES | 22615 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777328 | HMES | 22616 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777329 | HMES | 22617 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777330 | HMES | 22618 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777331 | HMES | 22619 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777332 | HMES | 22620 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777333 | HMES | 22621 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777334 | HMES | 22622 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777335 | HMES | 22623 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777336 | HMES | 22624 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777337 | HMES | 22625 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777338 | HMES | 22626 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND777339 | HMES | 22627 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777340 | HMES | 22628 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777341 | HMES | 22629 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND777342 | HMES | 22630 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND777343 | HMES | 22631 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777344 | HMES | 22632 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777345 | HMES | 22633 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X6ND777346 | HMES | 22634 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777347 | HMES | 22635 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777348 | HMES | 22636 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777349 | HMES | 22637 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777350 | HMES | 22638 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777351 | HMES | 22639 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777352 | HMES | 22640 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777353 | HMES | 22641 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777354 | HMES | 22642 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777355 | HMES | 22643 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND777356 | HMES | 22644 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND777357 | HMES | 22645 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777358 | HMES | 22646 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777359 | HMES | 22647 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND777360 | HMES | 22648 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777361 | HMES | 22649 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777362 | HMES | 22650 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777363 | HMES | 22651 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777364 | HMES | 22652 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777365 | HMES | 22653 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777366 | HMES | 22654 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777367 | HMES | 22655 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777368 | HMES | 22656 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777369 | HMES | 22657 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777370 | HMES | 22658 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777371 | HMES | 22659 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777372 | HMES | 22660 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND777373 | HMES | 22661 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND777374 | HMES | 22662 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777375 | HMES | 22663 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777376 | HMES | 22664 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777377 | HMES | 22665 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777378 | HMES | 22666 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777379 | HMES | 22667 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777380 | HMES | 22668 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777381 | HMES | 22669 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777382 | HMES | 22670 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777383 | HMES | 22671 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791799 | HMES | 22672 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791800 | HMES | 22673 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791801 | HMES | 22674 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791802 | HMES | 22675 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791803 | HMES | 22676 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791804 | HMES | 22677 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791805 | HMES | 22678 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791806 | HMES | 22679 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791807 | HMES | 22680 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791808 | HMES | 22681 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791809 | HMES | 22682 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791810 | HMES | 22683 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791811 | HMES | 22684 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791812 | HMES | 22685 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791813 | HMES | 22686 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791814 | HMES | 22687 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791815 | HMES | 22688 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791816 | HMES | 22689 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791819 | HMES | 22692 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791820 | HMES | 22693 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791824 | HMES | 22697 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791826 | HMES | 22699 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791827 | HMES | 22700 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791828 | HMES | 22701 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791830 | HMES | 22703 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791831 | HMES | 22704 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791833 | HMES | 22706 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791836 | HMES | 22709 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791837 | HMES | 22710 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791838 | HMES | 22711 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791839 | HMES | 22712 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791840 | HMES | 22713 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791841 | HMES | 22714 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791842 | HMES | 22715 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791843 | HMES | 22716 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791844 | HMES | 22717 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791845 | HMES | 22718 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791846 | HMES | 22719 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791847 | HMES | 22720 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791848 | HMES | 22721 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791849 | HMES | 22722 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791850 | HMES | 22723 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791851 | HMES | 22724 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X3ND791852 | HMES | 22725 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791853 | HMES | 22726 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791854 | HMES | 22727 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791855 | HMES | 22728 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791857 | HMES | 22730 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791858 | HMES | 22731 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791860 | HMES | 22733 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791861 | HMES | 22734 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791863 | HMES | 22736 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791864 | HMES | 22737 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791865 | HMES | 22738 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791866 | HMES | 22739 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791868 | HMES | 22741 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791869 | HMES | 22742 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791871 | HMES | 22744 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791872 | HMES | 22745 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791873 | HMES | 22746 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791874 | HMES | 22747 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791875 | HMES | 22748 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791817 | HMES | 22801 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791818 | HMES | 22802 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791821 | HMES | 22803 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791822 | HMES | 22808 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791823 | HMES | 22813 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791825 | HMES | 22814 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791829 | HMES | 22815 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791832 | HMES | 22816 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791834 | HMES | 22818 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791835 | HMES | 22819 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791856 | HMES | 22820 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791859 | HMES | 22821 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791862 | HMES | 22822 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791867 | HMES | 22823 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791870 | HMES | 22825 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1FUGHLDV9NLMZ4999 | HMES | 22828 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1XPBAP8X6MD758552 | NPME | 1770 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758553 | NPME | 1771 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758554 | NPME | 1772 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758555 | NPME | 1773 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758556 | NPME | 1774 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758559 | NPME | 1777 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758560 | NPME | 1778 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758561 | NPME | 1779 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758562 | NPME | 1780 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758563 | NPME | 1781 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758564 | NPME | 1782 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758566 | NPME | 1784 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758567 | NPME | 1785 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758568 | NPME | 1786 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758569 | NPME | 1787 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758570 | NPME | 1788 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758575 | NPME | 1793 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758578 | NPME | 1796 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758581 | NPME | 1799 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758582 | NPME | 1800 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758586 | NPME | 1804 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758587 | NPME | 1805 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758588 | NPME | 1806 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758590 | NPME | 1808 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758594 | NPME | 1812 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758595 | NPME | 1813 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758596 | NPME | 1814 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758597 | NPME | 1815 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758601 | NPME | 1819 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758604 | NPME | 1822 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758605 | NPME | 1823 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758606 | NPME | 1824 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758608 | NPME | 1826 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758609 | NPME | 1827 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758610 | NPME | 1828 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758612 | NPME | 1830 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758613 | NPME | 1831 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758614 | NPME | 1832 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758615 | NPME | 1833 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758617 | NPME | 1835 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758618 | NPME | 1836 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758619 | NPME | 1837 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758620 | NPME | 1838 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758621 | NPME | 1839 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758622 | NPME | 1840 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758623 | NPME | 1841 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X5ND758625 | NPME | 1843 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758626 | NPME | 1844 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758628 | NPME | 1846 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758629 | NPME | 1847 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758630 | NPME | 1848 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758634 | NPME | 1852 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758635 | NPME | 1853 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758636 | NPME | 1854 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758639 | NPME | 1857 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758640 | NPME | 1858 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758642 | NPME | 1860 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758643 | NPME | 1861 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758644 | NPME | 1862 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758645 | NPME | 1863 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758646 | NPME | 1864 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758647 | NPME | 1865 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758650 | NPME | 1868 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758651 | NPME | 1869 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758652 | NPME | 1870 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758654 | NPME | 1872 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758655 | NPME | 1873 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758656 | NPME | 1874 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758657 | NPME | 1875 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758658 | NPME | 1876 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758659 | NPME | 1877 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758660 | NPME | 1878 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758661 | NPME | 1879 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758662 | NPME | 1880 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758663 | NPME | 1881 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758665 | NPME | 1883 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758667 | NPME | 1885 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758668 | NPME | 1886 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758669 | NPME | 1887 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758670 | NPME | 1888 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758671 | NPME | 1889 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758672 | NPME | 1890 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758673 | NPME | 1891 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758674 | NPME | 1892 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758676 | NPME | 1894 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758679 | NPME | 1897 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758680 | NPME | 1898 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG6NN285853 | NPME | 1900 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285854 | NPME | 1901 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285855 | NPME | 1902 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285856 | NPME | 1903 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285858 | NPME | 1905 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285859 | NPME | 1906 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285860 | NPME | 1907 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285861 | NPME | 1908 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285862 | NPME | 1909 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285863 | NPME | 1910 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285864 | NPME | 1911 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285865 | NPME | 1912 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285866 | NPME | 1913 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285867 | NPME | 1914 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285868 | NPME | 1915 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285869 | NPME | 1916 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285870 | NPME | 1917 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285871 | NPME | 1918 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285872 | NPME | 1919 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285873 | NPME | 1920 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285874 | NPME | 1921 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285875 | NPME | 1922 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285876 | NPME | 1923 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285877 | NPME | 1924 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285878 | NPME | 1925 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285879 | NPME | 1926 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285880 | NPME | 1927 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285881 | NPME | 1928 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285882 | NPME | 1929 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285883 | NPME | 1930 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285884 | NPME | 1931 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285885 | NPME | 1932 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285886 | NPME | 1933 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285887 | NPME | 1934 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285888 | NPME | 1935 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285889 | NPME | 1936 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285890 | NPME | 1937 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285891 | NPME | 1938 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285892 | NPME | 1939 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285893 | NPME | 1940 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG9NN285894 | NPME | 1941 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285895 | NPME | 1942 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285896 | NPME | 1943 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285897 | NPME | 1944 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285898 | NPME | 1945 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285899 | NPME | 1946 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285900 | NPME | 1947 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285901 | NPME | 1948 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285902 | NPME | 1949 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285903 | NPME | 1950 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285904 | NPME | 1951 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285905 | NPME | 1952 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285906 | NPME | 1953 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285907 | NPME | 1954 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285909 | NPME | 1956 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285910 | NPME | 1957 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285911 | NPME | 1958 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285912 | NPME | 1959 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285913 | NPME | 1960 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285914 | NPME | 1961 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285915 | NPME | 1962 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285916 | NPME | 1963 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285917 | NPME | 1964 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285918 | NPME | 1965 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285919 | NPME | 1966 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285920 | NPME | 1967 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285921 | NPME | 1968 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285922 | NPME | 1969 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285923 | NPME | 1970 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285924 | NPME | 1971 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285926 | NPME | 1973 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285928 | NPME | 1975 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285931 | NPME | 1978 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285932 | NPME | 1979 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285933 | NPME | 1980 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285934 | NPME | 1981 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285935 | NPME | 1982 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285936 | NPME | 1983 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285937 | NPME | 1984 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285938 | NPME | 1985 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285939 | NPME | 1986 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285940 | NPME | 1987 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285941 | NPME | 1988 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285942 | NPME | 1989 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285943 | NPME | 1990 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285944 | NPME | 1991 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285945 | NPME | 1992 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285946 | NPME | 1993 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285947 | NPME | 1994 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285948 | NPME | 1995 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285949 | NPME | 1996 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285950 | NPME | 1997 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285951 | NPME | 1998 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285952 | NPME | 1999 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285953 | NPME | 2000 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285954 | NPME | 2001 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285955 | NPME | 2002 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285957 | NPME | 2004 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285958 | NPME | 2005 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285962 | NPME | 2009 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285963 | NPME | 2010 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285964 | NPME | 2011 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285965 | NPME | 2012 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285966 | NPME | 2013 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285967 | NPME | 2014 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285968 | NPME | 2015 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285969 | NPME | 2016 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285970 | NPME | 2017 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285971 | NPME | 2018 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285972 | NPME | 2019 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285973 | NPME | 2020 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285974 | NPME | 2021 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285975 | NPME | 2022 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285976 | NPME | 2023 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285977 | NPME | 2024 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285978 | NPME | 2025 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285979 | NPME | 2026 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285980 | NPME | 2027 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285982 | NPME | 2029 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285983 | NPME | 2030 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285985 | NPME | 2032 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG5NN285987 | NPME | 2034 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285988 | NPME | 2035 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285989 | NPME | 2036 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285990 | NPME | 2037 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285991 | NPME | 2038 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285992 | NPME | 2039 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285994 | NPME | 2041 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285995 | NPME | 2042 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285997 | NPME | 2044 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285998 | NPME | 2045 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285999 | NPME | 2046 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN286000 | NPME | 2047 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN286001 | NPME | 2048 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN286002 | NPME | 2049 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN286003 | NPME | 2050 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN286004 | NPME | 2051 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN286005 | NPME | 2052 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN286006 | NPME | 2053 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN286007 | NPME | 2054 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN286008 | NPME | 2055 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN286009 | NPME | 2056 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN286010 | NPME | 2057 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN286011 | NPME | 2058 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN286012 | NPME | 2059 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN286013 | NPME | 2060 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN286014 | NPME | 2061 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN286015 | NPME | 2062 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN286016 | NPME | 2063 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN286017 | NPME | 2064 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN286018 | NPME | 2065 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN286019 | NPME | 2066 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN286020 | NPME | 2067 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN286021 | NPME | 2068 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN286022 | NPME | 2069 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN286024 | NPME | 2071 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN286025 | NPME | 2072 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN286026 | NPME | 2073 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN286027 | NPME | 2074 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN286028 | NPME | 2075 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN286029 | NPME | 2076 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308448 | NPME | 2077 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308449 | NPME | 2078 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN308450 | NPME | 2079 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308451 | NPME | 2080 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308452 | NPME | 2081 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308453 | NPME | 2082 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308454 | NPME | 2083 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN308455 | NPME | 2084 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN308456 | NPME | 2085 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308457 | NPME | 2086 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308458 | NPME | 2087 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308459 | NPME | 2088 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308460 | NPME | 2089 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308461 | NPME | 2090 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308462 | NPME | 2091 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN308464 | NPME | 2093 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308465 | NPME | 2094 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308466 | NPME | 2095 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308467 | NPME | 2096 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308468 | NPME | 2097 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN308469 | NPME | 2098 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308470 | NPME | 2099 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308484 | NPME | 2113 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308488 | NPME | 2117 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308493 | NPME | 2122 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN308494 | NPME | 2123 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308496 | NPME | 2125 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308497 | NPME | 2126 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308498 | NPME | 2127 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN308500 | NPME | 2129 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308501 | NPME | 2130 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308504 | NPME | 2133 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN308505 | NPME | 2134 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN308506 | NPME | 2135 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308507 | NPME | 2136 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308508 | NPME | 2137 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308509 | NPME | 2138 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308511 | NPME | 2140 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308512 | NPME | 2141 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN308513 | NPME | 2142 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN308514 | NPME | 2143 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG4NN308515 | NPME | 2144 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308517 | NPME | 2146 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308518 | NPME | 2147 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285852 | NPME | 2149 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN308472 | NPME | 10075 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308474 | NPME | 10077 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308475 | NPME | 10078 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN308477 | NPME | 10080 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2ONN308481 | NPME | 10084 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308482 | NPME | 10085 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308483 | NPME | 10086 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308485 | NPME | 10087 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN308486 | NPME | 10088 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN308487 | NPME | 10089 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308489 | NPME | 10090 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN308490 | NPME | 10091 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308491 | NPME | 10092 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308492 | NPME | 10093 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN308495 | NPME | 10094 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308499 | NPME | 10095 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308502 | NPME | 10096 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN286136 | NPME | 700 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN286137 | NPME | 701 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN286138 | NPME | 702 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN286139 | NPME | 703 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN286140 | NPME | 704 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN286141 | NPME | 705 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN286142 | NPME | 706 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN286143 | NPME | 707 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN286144 | NPME | 708 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN286145 | NPME | 709 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN286146 | NPME | 710 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN286147 | NPME | 711 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286148 | NPME | 712 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286149 | NPME | 713 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN286150 | NPME | 714 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286151 | NPME | 715 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286152 | NPME | 716 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN286153 | NPME | 717 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN286154 | NPME | 718 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN291456 | NPME | 719 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN291457 | NPME | 720 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN291458 | NPME | 721 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN291459 | NPME | 722 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN291460 | NPME | 723 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN291461 | NPME | 724 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN291462 | NPME | 725 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN291463 | NPME | 726 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN291464 | NPME | 727 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN291465 | NPME | 728 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN291466 | NPME | 729 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN291467 | NPME | 730 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN291468 | NPME | 731 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN291469 | NPME | 732 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN291470 | NPME | 733 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN291471 | NPME | 734 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN291472 | NPME | 735 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN291473 | NPME | 736 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN291474 | NPME | 737 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN291475 | NPME | 738 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN291476 | NPME | 739 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN291477 | NPME | 740 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN291478 | NPME | 741 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN291479 | NPME | 742 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN291480 | NPME | 743 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN291481 | NPME | 744 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN291482 | NPME | 745 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN291483 | NPME | 746 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN291484 | NPME | 747 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN291485 | NPME | 748 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN291486 | NPME | 749 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH7NN286092 | RETL | 9352 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH0NN286094 | RETL | 9354 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH4NN286096 | RETL | 9356 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH5NN286107 | RETL | 9367 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH9NN286109 | RETL | 9369 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH5NN286110 | RETL | 9370 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH9NN286112 | RETL | 9372 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH0NN286113 | RETL | 9373 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH2NN286114 | RETL | 9374 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH4NN286115 | RETL | 9375 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4WC9EH6NN286116 | RETL | 9376 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH8NN286117 | RETL | 9377 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EHXNN286118 | RETL | 9378 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH1NN286119 | RETL | 9379 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH8NN286120 | RETL | 9380 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EHXNN286121 | RETL | 9381 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH1NN286122 | RETL | 9382 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH3NN286123 | RETL | 9383 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH5NN286124 | RETL | 9384 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH7NN286125 | RETL | 9385 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH9NN286126 | RETL | 9386 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH0NN286127 | RETL | 9387 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH2NN286128 | RETL | 9388 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH4NN286129 | RETL | 9389 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH0NN286130 | RETL | 9390 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH2NN286131 | RETL | 9391 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH4NN286132 | RETL | 9392 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH6NN286133 | RETL | 9393 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH8NN286134 | RETL | 9394 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286252 | RETL | 10098 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286258 | RETL | 10099 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286269 | RETL | 10101 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXMN286155 | RETL | 82222 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1MN286156 | RETL | 82223 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3MN286157 | RETL | 82224 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5MN286158 | RETL | 82225 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7MN286159 | RETL | 82226 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3MN286160 | RETL | 82227 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5MN286161 | RETL | 82228 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7MN286162 | RETL | 82229 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9MN286163 | RETL | 82230 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0MN286164 | RETL | 82231 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2MN286165 | RETL | 82232 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4MN286166 | RETL | 82233 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6MN286167 | RETL | 82234 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8MN286168 | RETL | 82235 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXMN286169 | RETL | 82236 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6MN286170 | RETL | 82237 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8MN286171 | RETL | 82238 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXMN286172 | RETL | 82239 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X8MD758312 | RETL | 82240 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758313 | RETL | 82241 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758315 | RETL | 82243 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758316 | RETL | 82244 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758317 | RETL | 82245 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758318 | RETL | 82246 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758319 | RETL | 82247 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758320 | RETL | 82248 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758321 | RETL | 82249 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758322 | RETL | 82250 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758323 | RETL | 82251 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758325 | RETL | 82253 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758326 | RETL | 82254 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758327 | RETL | 82255 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758328 | RETL | 82256 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758329 | RETL | 82257 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758330 | RETL | 82258 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758331 | RETL | 82259 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758332 | RETL | 82260 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758333 | RETL | 82261 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758334 | RETL | 82262 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758335 | RETL | 82263 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758336 | RETL | 82264 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758337 | RETL | 82265 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758338 | RETL | 82266 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758339 | RETL | 82267 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758340 | RETL | 82268 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758341 | RETL | 82269 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758342 | RETL | 82270 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758343 | RETL | 82271 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758347 | RETL | 82275 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758349 | RETL | 82277 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758350 | RETL | 82278 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758351 | RETL | 82279 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758352 | RETL | 82280 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758353 | RETL | 82281 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758354 | RETL | 82282 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758355 | RETL | 82283 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758356 | RETL | 82284 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758357 | RETL | 82285 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758358 | RETL | 82286 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8XXND758359 | RETL | 82287 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758360 | RETL | 82288 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758361 | RETL | 82289 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758362 | RETL | 82290 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758363 | RETL | 82291 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758364 | RETL | 82292 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758365 | RETL | 82293 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758366 | RETL | 82294 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758367 | RETL | 82295 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758368 | RETL | 82296 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758369 | RETL | 82297 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758370 | RETL | 82298 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758371 | RETL | 82299 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758372 | RETL | 82300 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758373 | RETL | 82301 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758374 | RETL | 82302 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758375 | RETL | 82303 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758376 | RETL | 82304 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758377 | RETL | 82305 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758378 | RETL | 82306 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758379 | RETL | 82307 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758380 | RETL | 82308 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758381 | RETL | 82309 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758382 | RETL | 82310 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758383 | RETL | 82311 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758385 | RETL | 82313 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758386 | RETL | 82314 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758387 | RETL | 82315 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758388 | RETL | 82316 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758389 | RETL | 82317 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758390 | RETL | 82318 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758392 | RETL | 82320 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758393 | RETL | 82321 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758394 | RETL | 82322 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758395 | RETL | 82323 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758396 | RETL | 82324 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758397 | RETL | 82325 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758398 | RETL | 82326 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758399 | RETL | 82327 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758400 | RETL | 82328 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758401 | RETL | 82329 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758402 | RETL | 82330 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758403 | RETL | 82331 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758404 | RETL | 82332 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758405 | RETL | 82333 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758406 | RETL | 82334 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758410 | RETL | 82338 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758411 | RETL | 82339 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758412 | RETL | 82340 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758413 | RETL | 82341 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758414 | RETL | 82342 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758415 | RETL | 82343 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758416 | RETL | 82344 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758417 | RETL | 82345 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758418 | RETL | 82346 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758419 | RETL | 82347 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758420 | RETL | 82348 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758421 | RETL | 82349 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758422 | RETL | 82350 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758423 | RETL | 82351 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758424 | RETL | 82352 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758425 | RETL | 82353 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758426 | RETL | 82354 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758427 | RETL | 82355 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758428 | RETL | 82356 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758429 | RETL | 82357 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758430 | RETL | 82358 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758431 | RETL | 82359 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758432 | RETL | 82360 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758433 | RETL | 82361 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758434 | RETL | 82362 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758435 | RETL | 82363 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758436 | RETL | 82364 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758437 | RETL | 82365 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758439 | RETL | 82367 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758440 | RETL | 82368 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758441 | RETL | 82369 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758442 | RETL | 82370 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758444 | RETL | 82372 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758446 | RETL | 82374 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758447 | RETL | 82375 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X9ND758448 | RETL | 82376 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758449 | RETL | 82377 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758450 | RETL | 82378 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758451 | RETL | 82379 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758452 | RETL | 82380 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758453 | RETL | 82381 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758455 | RETL | 82383 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758456 | RETL | 82384 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XND758457 | RETL | 82385 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758458 | RETL | 82386 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758459 | RETL | 82387 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758460 | RETL | 82388 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758461 | RETL | 82389 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758462 | RETL | 82390 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758463 | RETL | 82391 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758464 | RETL | 82392 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758465 | RETL | 82393 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758466 | RETL | 82394 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758467 | RETL | 82395 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758468 | RETL | 82396 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758469 | RETL | 82397 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758470 | RETL | 82398 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758472 | RETL | 82400 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XND758473 | RETL | 82401 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758474 | RETL | 82402 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758475 | RETL | 82403 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758476 | RETL | 82404 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758477 | RETL | 82405 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758478 | RETL | 82406 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758480 | RETL | 82408 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758481 | RETL | 82409 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758482 | RETL | 82410 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758483 | RETL | 82411 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758484 | RETL | 82412 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758485 | RETL | 82413 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758486 | RETL | 82414 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758487 | RETL | 82415 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758488 | RETL | 82416 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758489 | RETL | 82417 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758490 | RETL | 82418 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758491 | RETL | 82419 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758492 | RETL | 82420 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758493 | RETL | 82421 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758494 | RETL | 82422 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758495 | RETL | 82423 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758496 | RETL | 82424 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758497 | RETL | 82425 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758498 | RETL | 82426 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758499 | RETL | 82427 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758500 | RETL | 82428 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758501 | RETL | 82429 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758502 | RETL | 82430 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758503 | RETL | 82431 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758506 | RETL | 82434 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758507 | RETL | 82435 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758508 | RETL | 82436 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758509 | RETL | 82437 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758510 | RETL | 82438 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758511 | RETL | 82439 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EH1MN286173 | RETL | 82440 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3MN286174 | RETL | 82441 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5MN286175 | RETL | 82442 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7MN286176 | RETL | 82443 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9MN286177 | RETL | 82444 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0MN286178 | RETL | 82445 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2MN286179 | RETL | 82446 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9MN286180 | RETL | 82447 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0MN286181 | RETL | 82448 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2MN286182 | RETL | 82449 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4MN286183 | RETL | 82450 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6MN286184 | RETL | 82451 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8MN286185 | RETL | 82452 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXMN286186 | RETL | 82453 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1MN286187 | RETL | 82454 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286188 | RETL | 82455 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286189 | RETL | 82456 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286190 | RETL | 82457 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286191 | RETL | 82458 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286196 | RETL | 82463 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286198 | RETL | 82465 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286199 | RETL | 82466 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EH9NN286200 | RETL | 82467 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286201 | RETL | 82468 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286202 | RETL | 82469 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286203 | RETL | 82470 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286204 | RETL | 82471 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286205 | RETL | 82472 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286206 | RETL | 82473 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286207 | RETL | 82474 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286208 | RETL | 82475 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286209 | RETL | 82476 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286210 | RETL | 82477 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286211 | RETL | 82478 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286212 | RETL | 82479 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286213 | RETL | 82480 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286214 | RETL | 82481 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286215 | RETL | 82482 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286216 | RETL | 82483 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286217 | RETL | 82484 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286218 | RETL | 82485 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286219 | RETL | 82486 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286220 | RETL | 82487 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286221 | RETL | 82488 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286222 | RETL | 82489 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286223 | RETL | 82490 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286224 | RETL | 82491 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286225 | RETL | 82492 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286226 | RETL | 82493 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286227 | RETL | 82494 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286228 | RETL | 82495 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286230 | RETL | 82497 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286231 | RETL | 82498 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286232 | RETL | 82499 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286233 | RETL | 82500 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286234 | RETL | 82501 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286235 | RETL | 82502 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286237 | RETL | 82504 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286239 | RETL | 82506 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286240 | RETL | 82507 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286241 | RETL | 82508 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286242 | RETL | 82509 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286243 | RETL | 82510 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286244 | RETL | 82511 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286245 | RETL | 82512 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286246 | RETL | 82513 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286247 | RETL | 82514 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286248 | RETL | 82515 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286249 | RETL | 82516 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286250 | RETL | 82517 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286251 | RETL | 82518 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286253 | RETL | 82520 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286254 | RETL | 82521 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286256 | RETL | 82523 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286257 | RETL | 82524 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286259 | RETL | 82526 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286260 | RETL | 82527 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286261 | RETL | 82528 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286262 | RETL | 82529 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286263 | RETL | 82530 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286264 | RETL | 82531 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286265 | RETL | 82532 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286266 | RETL | 82533 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286267 | RETL | 82534 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286268 | RETL | 82535 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286270 | RETL | 82537 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286271 | RETL | 82760 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286272 | RETL | 82761 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286273 | RETL | 82762 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286274 | RETL | 82763 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286275 | RETL | 82764 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286276 | RETL | 82765 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286277 | RETL | 82766 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286278 | RETL | 82767 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286279 | RETL | 82768 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286280 | RETL | 82769 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286281 | RETL | 82770 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286282 | RETL | 82771 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286283 | RETL | 82772 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286284 | RETL | 82773 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286285 | RETL | 82774 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286286 | RETL | 82775 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286287 | RETL | 82776 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EH5NN286288 | RETL | 82777 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286289 | RETL | 82778 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286290 | RETL | 82779 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286291 | RETL | 82780 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286292 | RETL | 82781 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286293 | RETL | 82782 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286294 | RETL | 82783 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286295 | RETL | 82784 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286296 | RETL | 82785 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286297 | RETL | 82786 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286298 | RETL | 82787 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286299 | RETL | 82788 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN285802 | RETL | 82790 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285803 | RETL | 82791 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN285804 | RETL | 82792 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN285805 | RETL | 82793 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN285806 | RETL | 82794 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN285807 | RETL | 82795 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN285809 | RETL | 82797 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN285810 | RETL | 82798 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN285811 | RETL | 82799 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN285812 | RETL | 82800 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN285813 | RETL | 82801 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN285814 | RETL | 82802 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN285815 | RETL | 82803 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN285816 | RETL | 82804 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285817 | RETL | 82805 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN285818 | RETL | 82806 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN285819 | RETL | 82807 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285820 | RETL | 82808 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN285821 | RETL | 82809 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN285822 | RETL | 82810 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN285823 | RETL | 82811 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN285824 | RETL | 82812 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN285825 | RETL | 82813 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN285826 | RETL | 82814 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN285827 | RETL | 82815 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN285828 | RETL | 82816 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN285829 | RETL | 82817 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN285830 | RETL | 82818 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN285831 | RETL | 82819 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN285833 | RETL | 82821 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285834 | RETL | 82822 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN285835 | RETL | 82823 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN285836 | RETL | 82824 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN285837 | RETL | 82825 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN285838 | RETL | 82826 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN285839 | RETL | 82827 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN285840 | RETL | 82828 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN285841 | RETL | 82829 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN285842 | RETL | 82830 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN285843 | RETL | 82831 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN285844 | RETL | 82832 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN285845 | RETL | 82833 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN285846 | RETL | 82834 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN285847 | RETL | 82835 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285848 | RETL | 82836 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN285850 | RETL | 82838 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285851 | RETL | 82839 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH1NN286086 | RETL | 9346 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH3NN286087 | RETL | 9347 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH5NN286088 | RETL | 9348 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH7NN286089 | RETL | 9349 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH3NN286090 | RETL | 9350 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH5NN286091 | RETL | 9351 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH9NN286093 | RETL | 9353 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH2NN286095 | RETL | 9355 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH6NN286097 | RETL | 9357 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH8NN286098 | RETL | 9358 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EHXNN286099 | RETL | 9359 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH2NN286100 | RETL | 9360 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH4NN286101 | RETL | 9361 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH6NN286102 | RETL | 9362 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH8NN286103 | RETL | 9363 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EHXNN286104 | RETL | 9364 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH1NN286105 | RETL | 9365 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH3NN286106 | RETL | 9366 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH7NN286108 | RETL | 9368 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH7NN286111 | RETL | 9371 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285857 | YRCF | 67325 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EHXNN286135 | YRCF | 79779 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X4MD758579 | YRCF | 10102 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG5NN308510 | YRCF | 10105 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X8ND758585 | YRCF | 10106 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758583 | YRCF | 10107 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758572 | YRCF | 10108 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG3NN308473 | YRCF | 10109 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X2ND758632 | YRCF | 10110 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758624 | YRCF | 10111 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758576 | YRCF | 10115 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG3NN286023 | YRCF | 10116 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN308463 | YRCF | 10117 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285927 | YRCF | 10118 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285925 | YRCF | 10119 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285996 | YRCF | 10120 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285993 | YRCF | 10121 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285908 | YRCF | 10122 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X6ND758598 | YRCF | 10123 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758584 | YRCF | 10124 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758565 | YRCF | 10125 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758599 | YRCF | 10126 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758677 | YRCF | 10127 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG5NN285956 | YRCF | 10128 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X6ND758648 | YRCF | 10129 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758633 | YRCF | 10130 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758558 | YRCF | 10131 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758557 | YRCF | 10132 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758637 | YRCF | 10133 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758603 | YRCF | 10134 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758602 | YRCF | 10135 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758607 | YRCF | 10136 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758574 | YRCF | 10137 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758573 | YRCF | 10138 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758631 | YRCF | 10139 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758649 | YRCF | 10140 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG2NN285929 | YRCF | 10141 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285986 | YRCF | 10142 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308503 | YRCF | 10143 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285961 | YRCF | 10144 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285959 | YRCF | 10145 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X3ND758591 | YRCF | 10146 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG1NN308519 | YRCF | 10147 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286236 | YRCF | 10148 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285984 | YRCF | 10149 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X3ND758641 | YRCF | 10150 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758580 | YRCF | 10151 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG9NN285930 | YRCF | 10152 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285960 | YRCF | 10153 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X5ND758589 | YRCF | 10154 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758616 | YRCF | 10155 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG0NN308480 | YRCF | 10156 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308471 | YRCF | 10157 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308476 | YRCF | 10158 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308479 | YRCF | 10159 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8XMD758571 | YRCF | 10160 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758592 | YRCF | 10161 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758593 | YRCF | 10162 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758600 | YRCF | 10163 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758611 | YRCF | 10164 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758627 | YRCF | 10165 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758653 | YRCF | 10166 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758664 | YRCF | 10167 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758666 | YRCF | 10168 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758675 | YRCF | 10169 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758678 | YRCF | 10170 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG2NN308478 | YRCF | 10171 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308516 | YRCF | 10172 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285981 | YRCF | 10173 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X3ND758638 | YRCF | 10174 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EH0NN285808 | YRCF | 10535 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X8MD758973 | YRCF | 14809 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758974 | YRCF | 14810 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758975 | YRCF | 14811 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758976 | YRCF | 14812 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758977 | YRCF | 14813 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758978 | YRCF | 14814 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758979 | YRCF | 14815 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758980 | YRCF | 14816 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758981 | YRCF | 14817 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758982 | YRCF | 14818 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758983 | YRCF | 14819 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758984 | YRCF | 14820 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X4MD758985 | YRCF | 14821 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758986 | YRCF | 14822 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758987 | YRCF | 14823 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XMD758988 | YRCF | 14824 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758989 | YRCF | 14825 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758990 | YRCF | 14826 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758991 | YRCF | 14827 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758992 | YRCF | 14828 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758993 | YRCF | 14829 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758994 | YRCF | 14830 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758995 | YRCF | 14831 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758996 | YRCF | 14832 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758997 | YRCF | 14833 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758998 | YRCF | 14834 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758999 | YRCF | 14835 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759000 | YRCF | 14836 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759001 | YRCF | 14837 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759002 | YRCF | 14838 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759003 | YRCF | 14839 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759004 | YRCF | 14840 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759005 | YRCF | 14841 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759006 | YRCF | 14842 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759007 | YRCF | 14843 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759008 | YRCF | 14844 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759009 | YRCF | 14845 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759010 | YRCF | 14846 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759011 | YRCF | 14847 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759012 | YRCF | 14848 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759013 | YRCF | 14849 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759014 | YRCF | 14850 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759015 | YRCF | 14851 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759016 | YRCF | 14852 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759017 | YRCF | 14853 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759018 | YRCF | 14854 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759019 | YRCF | 14855 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759020 | YRCF | 14856 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759021 | YRCF | 14857 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759022 | YRCF | 14858 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759023 | YRCF | 14859 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759024 | YRCF | 14860 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759025 | YRCF | 14861 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759026 | YRCF | 14862 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759027 | YRCF | 14863 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759028 | YRCF | 14864 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759029 | YRCF | 14865 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759030 | YRCF | 14866 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759031 | YRCF | 14867 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759032 | YRCF | 14868 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759033 | YRCF | 14869 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759034 | YRCF | 14870 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759035 | YRCF | 14871 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759036 | YRCF | 14872 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759037 | YRCF | 14873 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759038 | YRCF | 14874 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759039 | YRCF | 14875 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759040 | YRCF | 14876 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759041 | YRCF | 14877 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759042 | YRCF | 14878 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759043 | YRCF | 14879 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759044 | YRCF | 14880 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759045 | YRCF | 14881 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759046 | YRCF | 14882 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759047 | YRCF | 14883 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759048 | YRCF | 14884 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759049 | YRCF | 14885 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759050 | YRCF | 14886 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759051 | YRCF | 14887 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759052 | YRCF | 14888 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759053 | YRCF | 14889 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759054 | YRCF | 14890 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759055 | YRCF | 14891 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759056 | YRCF | 14892 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759057 | YRCF | 14893 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759058 | YRCF | 14894 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759059 | YRCF | 14895 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759060 | YRCF | 14896 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759061 | YRCF | 14897 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759062 | YRCF | 14898 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759063 | YRCF | 14899 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759064 | YRCF | 14900 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759065 | YRCF | 14901 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X2MD759066 | YRCF | 14902 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759067 | YRCF | 14903 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759068 | YRCF | 14904 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759069 | YRCF | 14905 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759070 | YRCF | 14906 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759071 | YRCF | 14907 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759072 | YRCF | 14908 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759073 | YRCF | 14909 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759074 | YRCF | 14910 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759075 | YRCF | 14911 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759076 | YRCF | 14912 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759077 | YRCF | 14913 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759078 | YRCF | 14914 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759079 | YRCF | 14915 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759080 | YRCF | 14916 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759081 | YRCF | 14917 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759082 | YRCF | 14918 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759083 | YRCF | 14919 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759084 | YRCF | 14920 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759085 | YRCF | 14921 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759086 | YRCF | 14922 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759087 | YRCF | 14923 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759088 | YRCF | 14924 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759089 | YRCF | 14925 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759090 | YRCF | 14926 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759091 | YRCF | 14927 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759092 | YRCF | 14928 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG0MN285264 | YRCF | 14929 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285265 | YRCF | 14930 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285267 | YRCF | 14932 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285268 | YRCF | 14933 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285269 | YRCF | 14934 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285270 | YRCF | 14935 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285271 | YRCF | 14936 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285272 | YRCF | 14937 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285273 | YRCF | 14938 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285274 | YRCF | 14939 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285275 | YRCF | 14940 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285276 | YRCF | 14941 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285277 | YRCF | 14942 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285278 | YRCF | 14943 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285279 | YRCF | 14944 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285280 | YRCF | 14945 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285281 | YRCF | 14946 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285282 | YRCF | 14947 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285283 | YRCF | 14948 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285284 | YRCF | 14949 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285285 | YRCF | 14950 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285286 | YRCF | 14951 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285287 | YRCF | 14952 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285288 | YRCF | 14953 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285289 | YRCF | 14954 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285290 | YRCF | 14955 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285291 | YRCF | 14956 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285292 | YRCF | 14957 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285293 | YRCF | 14958 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285294 | YRCF | 14959 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285295 | YRCF | 14960 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285296 | YRCF | 14961 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285297 | YRCF | 14962 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285298 | YRCF | 14963 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285299 | YRCF | 14964 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285300 | YRCF | 14965 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285301 | YRCF | 14966 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285302 | YRCF | 14967 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285303 | YRCF | 14968 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285304 | YRCF | 14969 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285305 | YRCF | 14970 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285306 | YRCF | 14971 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285307 | YRCF | 14972 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285308 | YRCF | 14973 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285309 | YRCF | 14974 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285310 | YRCF | 14975 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285311 | YRCF | 14976 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285312 | YRCF | 14977 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285313 | YRCF | 14978 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285314 | YRCF | 14979 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285315 | YRCF | 14980 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285316 | YRCF | 14981 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285317 | YRCF | 14982 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285318 | YRCF | 14983 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EGXMN285319 | YRCF | 14984 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285320 | YRCF | 14985 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285321 | YRCF | 14986 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285322 | YRCF | 14987 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285323 | YRCF | 14988 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285324 | YRCF | 14989 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285325 | YRCF | 14990 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285326 | YRCF | 14991 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285327 | YRCF | 14992 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285328 | YRCF | 14993 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285329 | YRCF | 14994 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285331 | YRCF | 14996 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285332 | YRCF | 14997 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285333 | YRCF | 14998 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285334 | YRCF | 14999 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285391 | YRCF | 15460 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285392 | YRCF | 15461 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285393 | YRCF | 15462 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285394 | YRCF | 15463 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285395 | YRCF | 15464 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285396 | YRCF | 15465 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285397 | YRCF | 15466 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285398 | YRCF | 15467 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285399 | YRCF | 15468 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285400 | YRCF | 15469 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285401 | YRCF | 15470 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285402 | YRCF | 15471 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285403 | YRCF | 15472 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285404 | YRCF | 15473 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285405 | YRCF | 15474 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285406 | YRCF | 15475 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285407 | YRCF | 15476 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285408 | YRCF | 15477 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285409 | YRCF | 15478 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285410 | YRCF | 15479 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285411 | YRCF | 15480 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285412 | YRCF | 15481 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285413 | YRCF | 15482 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285414 | YRCF | 15483 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285415 | YRCF | 15484 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285416 | YRCF | 15485 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285417 | YRCF | 15486 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285418 | YRCF | 15487 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285419 | YRCF | 15488 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285420 | YRCF | 15489 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285421 | YRCF | 15490 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285422 | YRCF | 15491 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285423 | YRCF | 15492 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285424 | YRCF | 15493 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285425 | YRCF | 15494 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285426 | YRCF | 15495 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285427 | YRCF | 15496 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285428 | YRCF | 15497 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285429 | YRCF | 15498 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285430 | YRCF | 15499 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285431 | YRCF | 15500 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285432 | YRCF | 15501 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285433 | YRCF | 15502 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285434 | YRCF | 15503 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285435 | YRCF | 15504 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285436 | YRCF | 15505 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285437 | YRCF | 15506 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285438 | YRCF | 15507 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285439 | YRCF | 15508 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285440 | YRCF | 15509 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285441 | YRCF | 15510 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285442 | YRCF | 15511 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285443 | YRCF | 15512 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285444 | YRCF | 15513 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285445 | YRCF | 15514 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285446 | YRCF | 15515 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285447 | YRCF | 15516 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285448 | YRCF | 15517 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285449 | YRCF | 15518 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285450 | YRCF | 15519 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285451 | YRCF | 15520 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285452 | YRCF | 15521 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285453 | YRCF | 15522 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285454 | YRCF | 15523 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285455 | YRCF | 15524 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285456 | YRCF | 15525 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG9NN285457 | YRCF | 15526 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285458 | YRCF | 15527 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285459 | YRCF | 15528 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285460 | YRCF | 15529 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285461 | YRCF | 15530 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285462 | YRCF | 15531 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285463 | YRCF | 15532 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285464 | YRCF | 15533 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285465 | YRCF | 15534 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285466 | YRCF | 15535 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285467 | YRCF | 15536 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285468 | YRCF | 15537 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285469 | YRCF | 15538 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285470 | YRCF | 15539 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285471 | YRCF | 15540 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285472 | YRCF | 15541 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285473 | YRCF | 15542 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285474 | YRCF | 15543 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285475 | YRCF | 15544 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285476 | YRCF | 15545 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285477 | YRCF | 15546 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285478 | YRCF | 15547 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285509 | YRCF | 15548 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285510 | YRCF | 15549 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285511 | YRCF | 15550 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285512 | YRCF | 15551 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285513 | YRCF | 15552 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285514 | YRCF | 15553 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285515 | YRCF | 15554 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285516 | YRCF | 15555 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285517 | YRCF | 15556 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285518 | YRCF | 15557 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285519 | YRCF | 15558 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285520 | YRCF | 15559 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285521 | YRCF | 15560 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285522 | YRCF | 15561 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285523 | YRCF | 15562 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285524 | YRCF | 15563 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285525 | YRCF | 15564 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285526 | YRCF | 15565 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285527 | YRCF | 15566 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285528 | YRCF | 15567 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285529 | YRCF | 15568 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285530 | YRCF | 15569 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285531 | YRCF | 15570 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285532 | YRCF | 15571 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285533 | YRCF | 15572 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285534 | YRCF | 15573 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285535 | YRCF | 15574 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285536 | YRCF | 15575 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285537 | YRCF | 15576 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285538 | YRCF | 15577 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285539 | YRCF | 15578 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285540 | YRCF | 15579 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285541 | YRCF | 15580 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285542 | YRCF | 15581 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285543 | YRCF | 15582 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285544 | YRCF | 15583 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285545 | YRCF | 15584 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285546 | YRCF | 15585 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285547 | YRCF | 15586 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285548 | YRCF | 15587 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285549 | YRCF | 15588 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285550 | YRCF | 15589 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285551 | YRCF | 15590 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285552 | YRCF | 15591 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285553 | YRCF | 15592 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285554 | YRCF | 15593 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285555 | YRCF | 15594 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285556 | YRCF | 15595 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285557 | YRCF | 15596 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285558 | YRCF | 15597 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285559 | YRCF | 15598 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285560 | YRCF | 15599 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285561 | YRCF | 15600 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285562 | YRCF | 15601 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285563 | YRCF | 15602 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285564 | YRCF | 15603 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285565 | YRCF | 15604 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285566 | YRCF | 15605 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285567 | YRCF | 15606 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG7NN285568 | YRCF | 15607 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285569 | YRCF | 15608 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285570 | YRCF | 15609 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285571 | YRCF | 15610 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285572 | YRCF | 15611 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285573 | YRCF | 15612 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285574 | YRCF | 15613 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285575 | YRCF | 15614 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285576 | YRCF | 15615 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285577 | YRCF | 15616 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285578 | YRCF | 15617 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285579 | YRCF | 15618 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285580 | YRCF | 15619 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285581 | YRCF | 15620 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285582 | YRCF | 15621 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285583 | YRCF | 15622 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285584 | YRCF | 15623 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285585 | YRCF | 15624 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285586 | YRCF | 15625 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285587 | YRCF | 15626 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285588 | YRCF | 15627 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285589 | YRCF | 15628 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285590 | YRCF | 15629 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285591 | YRCF | 15630 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285592 | YRCF | 15631 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285593 | YRCF | 15632 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285594 | YRCF | 15633 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285595 | YRCF | 15634 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285596 | YRCF | 15635 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285597 | YRCF | 15636 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285598 | YRCF | 15637 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285599 | YRCF | 15638 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285600 | YRCF | 15639 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285601 | YRCF | 15640 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285602 | YRCF | 15641 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285603 | YRCF | 15642 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285604 | YRCF | 15643 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285605 | YRCF | 15644 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285606 | YRCF | 15645 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285607 | YRCF | 15646 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285608 | YRCF | 15647 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285609 | YRCF | 15648 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285610 | YRCF | 15649 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285611 | YRCF | 15650 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285612 | YRCF | 15651 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285613 | YRCF | 15652 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285614 | YRCF | 15653 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285615 | YRCF | 15654 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285616 | YRCF | 15655 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285617 | YRCF | 15656 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285618 | YRCF | 15657 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285620 | YRCF | 15659 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285621 | YRCF | 15660 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285622 | YRCF | 15661 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285623 | YRCF | 15662 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285624 | YRCF | 15664 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285625 | YRCF | 15665 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285626 | YRCF | 15666 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285627 | YRCF | 15669 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285628 | YRCF | 15670 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285629 | YRCF | 15671 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285630 | YRCF | 15672 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285631 | YRCF | 15673 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285632 | YRCF | 15674 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285633 | YRCF | 15675 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285634 | YRCF | 15676 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285635 | YRCF | 15677 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285636 | YRCF | 15678 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285637 | YRCF | 15679 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285638 | YRCF | 15680 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285639 | YRCF | 15681 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285640 | YRCF | 15682 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285641 | YRCF | 15683 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285642 | YRCF | 15684 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285643 | YRCF | 15685 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285644 | YRCF | 15686 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285645 | YRCF | 15688 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285646 | YRCF | 15690 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285647 | YRCF | 15691 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285648 | YRCF | 15692 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285649 | YRCF | 15693 | TRACTOR | IN | IN | 1 | VOLVO |

| 4V4W19EG3NN285650 | YRCF | 15694 | TRACTOR | IN | IN | 1 | VOLVO |
|---|---|---|---|---|---|---|---|
| 4V4W19EG5NN285651 | YRCF | 15695 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285652 | YRCF | 15696 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285653 | YRCF | 15697 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285654 | YRCF | 15699 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285655 | YRCF | 15700 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285656 | YRCF | 15701 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285657 | YRCF | 15702 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285658 | YRCF | 15703 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285659 | YRCF | 15704 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285660 | YRCF | 15705 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285661 | YRCF | 15706 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285662 | YRCF | 15707 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285663 | YRCF | 15708 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285664 | YRCF | 15709 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285665 | YRCF | 15710 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285666 | YRCF | 15711 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285667 | YRCF | 15712 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285668 | YRCF | 15713 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285669 | YRCF | 15714 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285670 | YRCF | 15715 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285671 | YRCF | 15716 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285672 | YRCF | 15717 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285673 | YRCF | 15718 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285674 | YRCF | 15719 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285675 | YRCF | 15720 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285676 | YRCF | 15721 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285677 | YRCF | 15722 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285678 | YRCF | 15723 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285679 | YRCF | 15724 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285680 | YRCF | 15725 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285681 | YRCF | 15726 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285682 | YRCF | 15727 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285683 | YRCF | 15728 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285684 | YRCF | 15729 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285685 | YRCF | 15730 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285686 | YRCF | 15731 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285687 | YRCF | 15732 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285688 | YRCF | 15733 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285689 | YRCF | 15734 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285690 | YRCF | 15735 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285691 | YRCF | 15736 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285692 | YRCF | 15737 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285693 | YRCF | 15738 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285694 | YRCF | 15739 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285695 | YRCF | 15740 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285696 | YRCF | 15741 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285697 | YRCF | 15742 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285698 | YRCF | 15743 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285699 | YRCF | 15744 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285700 | YRCF | 15745 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285701 | YRCF | 15746 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285702 | YRCF | 15747 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285703 | YRCF | 15748 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285704 | YRCF | 15749 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285705 | YRCF | 15750 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285706 | YRCF | 15751 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285707 | YRCF | 15752 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285708 | YRCF | 15753 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285709 | YRCF | 15754 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285710 | YRCF | 15755 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285711 | YRCF | 15756 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285712 | YRCF | 15757 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285713 | YRCF | 15758 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285714 | YRCF | 15759 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285715 | YRCF | 15760 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285716 | YRCF | 15761 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285717 | YRCF | 15762 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285718 | YRCF | 15763 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285719 | YRCF | 15764 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285720 | YRCF | 15765 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285721 | YRCF | 15766 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285722 | YRCF | 15767 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285723 | YRCF | 15768 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285724 | YRCF | 15769 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285725 | YRCF | 15770 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285726 | YRCF | 15771 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285727 | YRCF | 15772 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285728 | YRCF | 15773 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285729 | YRCF | 15774 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285730 | YRCF | 15775 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG3NN285731 | YRCF | 15776 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285732 | YRCF | 15777 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285733 | YRCF | 15778 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285734 | YRCF | 15779 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285735 | YRCF | 15780 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285736 | YRCF | 15781 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285737 | YRCF | 15782 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285738 | YRCF | 15783 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285739 | YRCF | 15784 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285740 | YRCF | 15785 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285741 | YRCF | 15786 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285742 | YRCF | 15787 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285743 | YRCF | 15788 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285744 | YRCF | 15789 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285745 | YRCF | 15790 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285746 | YRCF | 15791 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285747 | YRCF | 15792 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285748 | YRCF | 15793 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285749 | YRCF | 15794 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285750 | YRCF | 15795 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285751 | YRCF | 15796 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285752 | YRCF | 15797 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285753 | YRCF | 15798 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285754 | YRCF | 15799 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285755 | YRCF | 15800 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285756 | YRCF | 15801 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285757 | YRCF | 15802 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285758 | YRCF | 15803 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285759 | YRCF | 15804 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285760 | YRCF | 15805 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285761 | YRCF | 15806 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285762 | YRCF | 15807 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285763 | YRCF | 15808 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285764 | YRCF | 15809 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285765 | YRCF | 15810 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285766 | YRCF | 15811 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285767 | YRCF | 15812 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285768 | YRCF | 15813 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285769 | YRCF | 15814 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285770 | YRCF | 15815 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285771 | YRCF | 15816 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285772 | YRCF | 15817 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285773 | YRCF | 15818 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285774 | YRCF | 15819 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285775 | YRCF | 15820 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285776 | YRCF | 15821 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285777 | YRCF | 15822 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285778 | YRCF | 15823 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285779 | YRCF | 15824 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285780 | YRCF | 15825 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285781 | YRCF | 15826 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285782 | YRCF | 15827 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285783 | YRCF | 15828 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285784 | YRCF | 15829 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285785 | YRCF | 15830 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285786 | YRCF | 15831 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285787 | YRCF | 15832 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285788 | YRCF | 15833 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285789 | YRCF | 15834 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285790 | YRCF | 15835 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285791 | YRCF | 15836 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285792 | YRCF | 15837 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285793 | YRCF | 15838 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285794 | YRCF | 15839 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285795 | YRCF | 15840 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285796 | YRCF | 15841 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285798 | YRCF | 15843 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285799 | YRCF | 15844 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285800 | YRCF | 15845 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285801 | YRCF | 15846 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285335 | YRCF | 15850 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285336 | YRCF | 15851 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285337 | YRCF | 15852 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285338 | YRCF | 15853 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285339 | YRCF | 15854 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285340 | YRCF | 15855 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285341 | YRCF | 15856 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285342 | YRCF | 15857 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285343 | YRCF | 15858 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285344 | YRCF | 15859 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285345 | YRCF | 15860 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG2MN285346 | YRCF | 15861 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285347 | YRCF | 15862 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285348 | YRCF | 15863 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285349 | YRCF | 15864 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285350 | YRCF | 15865 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285351 | YRCF | 15866 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285352 | YRCF | 15867 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285353 | YRCF | 15868 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285354 | YRCF | 15869 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285355 | YRCF | 15870 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285356 | YRCF | 15871 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285357 | YRCF | 15872 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285358 | YRCF | 15873 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285359 | YRCF | 15874 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285360 | YRCF | 15875 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285361 | YRCF | 15876 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285362 | YRCF | 15877 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285363 | YRCF | 15878 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285364 | YRCF | 15879 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285365 | YRCF | 15880 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285366 | YRCF | 15881 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285367 | YRCF | 15882 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285368 | YRCF | 15883 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285369 | YRCF | 15884 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285370 | YRCF | 15885 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285371 | YRCF | 15886 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285372 | YRCF | 15887 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285373 | YRCF | 15888 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285374 | YRCF | 15889 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285375 | YRCF | 15890 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285376 | YRCF | 15891 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285377 | YRCF | 15892 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285378 | YRCF | 15893 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285379 | YRCF | 15894 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285380 | YRCF | 15895 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285381 | YRCF | 15896 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285382 | YRCF | 15897 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285383 | YRCF | 15898 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285384 | YRCF | 15899 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285385 | YRCF | 15900 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285386 | YRCF | 15901 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285387 | YRCF | 15902 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285388 | YRCF | 15903 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285389 | YRCF | 15904 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285390 | YRCF | 15905 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X3ND759093 | YRCF | 15906 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759094 | YRCF | 15907 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759095 | YRCF | 15908 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759096 | YRCF | 15909 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759097 | YRCF | 15910 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759098 | YRCF | 15911 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759099 | YRCF | 15912 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759100 | YRCF | 15913 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759101 | YRCF | 15914 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759102 | YRCF | 15915 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759103 | YRCF | 15916 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759104 | YRCF | 15917 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759105 | YRCF | 15918 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759106 | YRCF | 15919 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759108 | YRCF | 15921 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759109 | YRCF | 15922 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759110 | YRCF | 15923 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759111 | YRCF | 15924 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759112 | YRCF | 15925 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759113 | YRCF | 15926 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759114 | YRCF | 15927 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759115 | YRCF | 15928 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759116 | YRCF | 15929 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759117 | YRCF | 15930 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759118 | YRCF | 15931 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759119 | YRCF | 15932 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759120 | YRCF | 15933 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759121 | YRCF | 15934 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759122 | YRCF | 15935 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759123 | YRCF | 15936 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759124 | YRCF | 15937 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759125 | YRCF | 15938 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759126 | YRCF | 15939 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759127 | YRCF | 15940 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759128 | YRCF | 15941 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759129 | YRCF | 15942 | TRACTOR | IN | IN | 1 | PETERBILT |

| 1XPBAP8X5ND759130 | YRCF | 15943 | TRACTOR | IN | IN | 1 | PETERBILT |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X7ND759131 | YRCF | 15944 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759132 | YRCF | 15945 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759133 | YRCF | 15946 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759134 | YRCF | 15947 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759135 | YRCF | 15948 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759136 | YRCF | 15949 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759137 | YRCF | 15950 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759138 | YRCF | 15951 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759139 | YRCF | 15952 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759140 | YRCF | 15953 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759141 | YRCF | 15954 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759142 | YRCF | 15955 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759143 | YRCF | 15956 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759144 | YRCF | 15957 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759145 | YRCF | 15958 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759146 | YRCF | 15959 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759147 | YRCF | 15960 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759148 | YRCF | 15961 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759149 | YRCF | 15962 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759150 | YRCF | 15963 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759151 | YRCF | 15964 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759152 | YRCF | 15965 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759153 | YRCF | 15966 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759154 | YRCF | 15967 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759155 | YRCF | 15968 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759156 | YRCF | 15969 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759157 | YRCF | 15970 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759158 | YRCF | 15971 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759159 | YRCF | 15972 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759160 | YRCF | 15973 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759161 | YRCF | 15974 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759162 | YRCF | 15975 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759163 | YRCF | 15976 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759164 | YRCF | 15977 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759165 | YRCF | 15978 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759167 | YRCF | 15980 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759168 | YRCF | 15981 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759169 | YRCF | 15982 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759170 | YRCF | 15983 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759171 | YRCF | 15984 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759172 | YRCF | 15985 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759173 | YRCF | 15986 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759174 | YRCF | 15987 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759175 | YRCF | 15988 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759177 | YRCF | 15990 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759107 | YRCF | 15992 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759166 | YRCF | 15993 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759178 | YRCF | 16701 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759179 | YRCF | 16702 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759180 | YRCF | 16703 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759181 | YRCF | 16704 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759182 | YRCF | 16705 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759183 | YRCF | 16706 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759184 | YRCF | 16707 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759185 | YRCF | 16708 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759186 | YRCF | 16709 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759187 | YRCF | 16710 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759188 | YRCF | 16711 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759189 | YRCF | 16712 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759190 | YRCF | 16713 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759191 | YRCF | 16714 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759192 | YRCF | 16715 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759193 | YRCF | 16716 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759194 | YRCF | 16717 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759195 | YRCF | 16718 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759196 | YRCF | 16719 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759197 | YRCF | 16720 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759198 | YRCF | 16721 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759199 | YRCF | 16722 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759200 | YRCF | 16723 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759201 | YRCF | 16724 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759202 | YRCF | 16725 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759203 | YRCF | 16726 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759204 | YRCF | 16727 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759205 | YRCF | 16728 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759206 | YRCF | 16729 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759207 | YRCF | 16730 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759208 | YRCF | 16731 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759209 | YRCF | 16732 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759210 | YRCF | 16733 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X5ND759211 | YRCF | 16734 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759212 | YRCF | 16735 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759213 | YRCF | 16736 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759214 | YRCF | 16737 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759215 | YRCF | 16738 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759216 | YRCF | 16739 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759217 | YRCF | 16740 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759218 | YRCF | 16741 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759219 | YRCF | 16742 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759220 | YRCF | 16743 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759221 | YRCF | 16744 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759222 | YRCF | 16745 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759223 | YRCF | 16746 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759224 | YRCF | 16747 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759225 | YRCF | 16748 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759226 | YRCF | 16749 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759227 | YRCF | 16750 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759228 | YRCF | 16751 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759229 | YRCF | 16752 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759230 | YRCF | 16753 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759231 | YRCF | 16754 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759232 | YRCF | 16755 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759233 | YRCF | 16756 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759234 | YRCF | 16757 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759235 | YRCF | 16758 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759236 | YRCF | 16759 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759237 | YRCF | 16760 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759238 | YRCF | 16761 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759239 | YRCF | 16762 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759240 | YRCF | 16763 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759241 | YRCF | 16764 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759242 | YRCF | 16765 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759243 | YRCF | 16766 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759244 | YRCF | 16767 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759245 | YRCF | 16768 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759246 | YRCF | 16769 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759247 | YRCF | 16770 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759248 | YRCF | 16771 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759249 | YRCF | 16772 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759250 | YRCF | 16773 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759251 | YRCF | 16774 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759252 | YRCF | 16775 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759253 | YRCF | 16776 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759254 | YRCF | 16777 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759255 | YRCF | 16778 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759256 | YRCF | 16779 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759257 | YRCF | 16780 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759258 | YRCF | 16781 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759259 | YRCF | 16782 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759260 | YRCF | 16783 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759261 | YRCF | 16784 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759262 | YRCF | 16785 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759263 | YRCF | 16786 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759264 | YRCF | 16787 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759265 | YRCF | 16788 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759266 | YRCF | 16789 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759267 | YRCF | 16790 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759268 | YRCF | 16791 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759269 | YRCF | 16792 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759270 | YRCF | 16793 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759271 | YRCF | 16794 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759272 | YRCF | 16795 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759273 | YRCF | 16796 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759274 | YRCF | 16797 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759275 | YRCF | 16798 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759276 | YRCF | 16799 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759277 | YRCF | 16800 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759278 | YRCF | 16801 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759279 | YRCF | 16802 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759280 | YRCF | 16803 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759281 | YRCF | 16804 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759282 | YRCF | 16805 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759283 | YRCF | 16806 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759284 | YRCF | 16807 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759285 | YRCF | 16808 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759286 | YRCF | 16809 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759287 | YRCF | 16810 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759288 | YRCF | 16811 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759289 | YRCF | 16812 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759290 | YRCF | 16813 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759291 | YRCF | 16814 | TRACTOR | IN | IN | 1 | PETERBILT |

| 1XPBAP8X9ND759292 | YRCF | 16815 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759293 | YRCF | 16816 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759294 | YRCF | 16817 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759295 | YRCF | 16818 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759296 | YRCF | 16819 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759297 | YRCF | 16820 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759298 | YRCF | 16821 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759299 | YRCF | 16822 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759300 | YRCF | 16823 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759301 | YRCF | 16824 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759302 | YRCF | 16825 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759303 | YRCF | 16826 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759304 | YRCF | 16827 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759305 | YRCF | 16828 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759306 | YRCF | 16829 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759307 | YRCF | 16830 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759308 | YRCF | 16831 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759309 | YRCF | 16832 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759310 | YRCF | 16833 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759311 | YRCF | 16834 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759312 | YRCF | 16835 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759313 | YRCF | 16836 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759314 | YRCF | 16837 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759315 | YRCF | 16838 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759316 | YRCF | 16839 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759317 | YRCF | 16840 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759318 | YRCF | 16841 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759319 | YRCF | 16842 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759320 | YRCF | 16843 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759321 | YRCF | 16844 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759322 | YRCF | 16845 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759323 | YRCF | 16846 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759324 | YRCF | 16847 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759325 | YRCF | 16848 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759326 | YRCF | 16849 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759327 | YRCF | 16850 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759328 | YRCF | 16851 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759329 | YRCF | 16852 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759330 | YRCF | 16853 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759331 | YRCF | 16854 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759332 | YRCF | 16855 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759333 | YRCF | 16856 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759334 | YRCF | 16857 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759335 | YRCF | 16858 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759336 | YRCF | 16859 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759337 | YRCF | 16860 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759338 | YRCF | 16861 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759339 | YRCF | 16862 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759340 | YRCF | 16863 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759341 | YRCF | 16864 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759342 | YRCF | 16865 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759343 | YRCF | 16866 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759344 | YRCF | 16867 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759345 | YRCF | 16868 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759346 | YRCF | 16869 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759347 | YRCF | 16870 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759348 | YRCF | 16871 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759349 | YRCF | 16872 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759350 | YRCF | 16873 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759351 | YRCF | 16874 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759352 | YRCF | 16875 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759353 | YRCF | 16876 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759354 | YRCF | 16877 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759355 | YRCF | 16878 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759356 | YRCF | 16879 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759357 | YRCF | 16880 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759358 | YRCF | 16881 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759359 | YRCF | 16882 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759360 | YRCF | 16883 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759361 | YRCF | 16884 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759362 | YRCF | 16885 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759363 | YRCF | 16886 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759364 | YRCF | 16887 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759365 | YRCF | 16888 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759366 | YRCF | 16889 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759367 | YRCF | 16890 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759368 | YRCF | 16891 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759369 | YRCF | 16892 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759370 | YRCF | 16893 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759371 | YRCF | 16894 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759372 | YRCF | 16895 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X9ND759373 | YRCF | 16896 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759374 | YRCF | 16897 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759375 | YRCF | 16898 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759376 | YRCF | 16899 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759377 | YRCF | 16900 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759378 | YRCF | 16901 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759379 | YRCF | 16902 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759380 | YRCF | 16903 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759381 | YRCF | 16904 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759382 | YRCF | 16905 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759383 | YRCF | 16906 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759384 | YRCF | 16907 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759385 | YRCF | 16908 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759386 | YRCF | 16909 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759387 | YRCF | 16910 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759388 | YRCF | 16911 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759389 | YRCF | 16912 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759390 | YRCF | 16913 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759391 | YRCF | 16914 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759392 | YRCF | 16915 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759393 | YRCF | 16916 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759394 | YRCF | 16917 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759395 | YRCF | 16918 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XND759396 | YRCF | 16919 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759397 | YRCF | 16920 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759398 | YRCF | 16921 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759399 | YRCF | 16922 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759400 | YRCF | 16923 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759401 | YRCF | 16924 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759402 | YRCF | 16925 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759403 | YRCF | 16926 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759404 | YRCF | 16927 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759405 | YRCF | 16928 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759406 | YRCF | 16929 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759407 | YRCF | 16930 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759408 | YRCF | 16931 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759409 | YRCF | 16932 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759410 | YRCF | 16933 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759411 | YRCF | 16934 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759412 | YRCF | 16935 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759413 | YRCF | 16936 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759414 | YRCF | 16937 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759416 | YRCF | 16939 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759417 | YRCF | 16940 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759418 | YRCF | 16941 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759419 | YRCF | 16942 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759420 | YRCF | 16943 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759421 | YRCF | 16944 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759422 | YRCF | 16945 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759423 | YRCF | 16946 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759424 | YRCF | 16947 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG9NN607675 | YRCF | 16948 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN607676 | YRCF | 16949 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN607677 | YRCF | 16950 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN607678 | YRCF | 16951 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN607679 | YRCF | 16952 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN607680 | YRCF | 16953 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN607681 | YRCF | 16954 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN607682 | YRCF | 16955 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN607683 | YRCF | 16956 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN607684 | YRCF | 16957 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN607685 | YRCF | 16958 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN607686 | YRCF | 16959 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN607687 | YRCF | 16960 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN607688 | YRCF | 16961 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN607689 | YRCF | 16962 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN607690 | YRCF | 16963 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN607691 | YRCF | 16964 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN607692 | YRCF | 16965 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN607693 | YRCF | 16966 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN607694 | YRCF | 16967 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN607695 | YRCF | 16968 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN607696 | YRCF | 16969 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN607697 | YRCF | 16970 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN607698 | YRCF | 16971 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285479 | YRCF | 48036 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285480 | YRCF | 48037 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285481 | YRCF | 48038 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285482 | YRCF | 48039 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285483 | YRCF | 48040 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285484 | YRCF | 48041 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG3NN285485 | YRCF | 48042 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285486 | YRCF | 48043 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285487 | YRCF | 48044 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285488 | YRCF | 48045 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285490 | YRCF | 49024 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285491 | YRCF | 49025 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285492 | YRCF | 49026 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285493 | YRCF | 49027 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285494 | YRCF | 49028 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285495 | YRCF | 49029 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285496 | YRCF | 49030 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285497 | YRCF | 49031 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285498 | YRCF | 49032 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285499 | YRCF | 49033 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285500 | YRCF | 49034 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285501 | YRCF | 49035 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285502 | YRCF | 49036 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285503 | YRCF | 49037 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285504 | YRCF | 49038 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285505 | YRCF | 49039 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285506 | YRCF | 49040 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285507 | YRCF | 49041 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285508 | YRCF | 49042 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285489 | YRCF | 49043 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X1MD758314 | YRCF | 82242 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758324 | YRCF | 82252 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758344 | YRCF | 82272 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758345 | YRCF | 82273 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758346 | YRCF | 82274 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758348 | YRCF | 82276 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758384 | YRCF | 82312 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758391 | YRCF | 82319 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758407 | YRCF | 82335 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758408 | YRCF | 82336 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758409 | YRCF | 82337 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758438 | YRCF | 82366 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758443 | YRCF | 82371 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758445 | YRCF | 82373 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758454 | YRCF | 82382 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758471 | YRCF | 82399 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758504 | YRCF | 82432 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758505 | YRCF | 82433 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EH3NN286192 | YRCF | 82459 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286193 | YRCF | 82460 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286194 | YRCF | 82461 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286195 | YRCF | 82462 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286197 | YRCF | 82464 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286229 | YRCF | 82496 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286238 | YRCF | 82505 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286255 | YRCF | 82522 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286300 | YRCF | 82789 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN285832 | YRCF | 82820 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN285849 | YRCF | 82837 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXMN286030 | YRCF | 70220 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1MN286031 | YRCF | 70221 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3MN286032 | YRCF | 70222 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5MN286033 | YRCF | 70223 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7MN286034 | YRCF | 70224 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9MN286035 | YRCF | 70225 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2MN286037 | YRCF | 70227 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4MN286038 | YRCF | 70228 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6MN286039 | YRCF | 70229 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2MN286040 | YRCF | 70230 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4MN286041 | YRCF | 70231 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6MN286042 | YRCF | 70232 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8MN286043 | YRCF | 70233 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXMN286044 | YRCF | 70234 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1MN286045 | YRCF | 70235 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3MN286046 | YRCF | 70236 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5MN286047 | YRCF | 70237 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7MN286048 | YRCF | 70238 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9MN286049 | YRCF | 70239 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN286050 | YRCF | 70240 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN286051 | YRCF | 70241 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN286052 | YRCF | 70242 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286053 | YRCF | 70243 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286054 | YRCF | 70244 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN286055 | YRCF | 70245 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN286056 | YRCF | 70246 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN286057 | YRCF | 70247 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN286058 | YRCF | 70248 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4WC9EGXNN286059 | YRCF | 70249 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN286060 | YRCF | 70250 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN286061 | YRCF | 70251 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN286062 | YRCF | 70252 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN286063 | YRCF | 70253 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN286064 | YRCF | 70254 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN286065 | YRCF | 70255 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN286066 | YRCF | 70256 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286067 | YRCF | 70257 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286068 | YRCF | 70258 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN286069 | YRCF | 70259 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286070 | YRCF | 70260 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286071 | YRCF | 70261 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN286072 | YRCF | 70262 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN286073 | YRCF | 70263 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN286074 | YRCF | 70264 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN286075 | YRCF | 70265 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN286076 | YRCF | 70266 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN286077 | YRCF | 70267 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN286078 | YRCF | 70268 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN286079 | YRCF | 70269 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN286080 | YRCF | 70270 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN286081 | YRCF | 70271 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN286082 | YRCF | 70272 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN286083 | YRCF | 70273 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286084 | YRCF | 70274 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286085 | YRCF | 70275 | TRACTOR | IN | IN | 1 | VOLVO |

## Schedule 7.01(b)

### Existing Liens

Incorporated by reference are all capitalized lease obligations provided in Schedule 7.03(b).

### New Penn Motor Express LLC

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Delaware Secretary of State | UCC 07/13/2023 | 2016 6882185 11/07/2019 | New Penn Motor Express LLC | Citizens Asset Finance, Inc. | Specified Equipment |
| Delaware Secretary of State | AMEND 07/13/2023 | 2016 7414715 11/30/2016 | New Penn Motor Express LLC | Citizens Asset Finance, Inc. | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 2021 4008711 05/24/2021 | | | Continuation. |

### USF Holland LLC

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Delaware Secretary of State | UCC 07/13/2023 | 2017 7745203 11/21/2017 | USF Holland LLC | Toyota Industries Commercial Finance, Inc. | Specified Equipment |
| Delaware Secretary of State | UCC 07/13/2023 | 2018 6785923 10/01/2018 | YRC Enterprise Services, Inc.; and USF Holland LLC | BOFI Federal Bank | Specified Equipment |
| Delaware Secretary of State | UCC 07/13/2023 | 2018 7222462 10/18/2018 | USF Holland LLC | Toyota Industries Commercial Finance, Inc. | Specified Equipment |
| Delaware Secretary of State | UCC 07/13/2023 | 2019 0051982 01/03/2019 | USF Holland LLC | Radius Bank | Specified Equipment |
| Michigan Department of State | UCC 06/30/2023 | 2012129194-0 09/11/12 | YRC, Inc. *originally filed under USF Holland LLC then amendment filed to change name to YRC, Inc. | Utica Leaseco, LLC | Specified Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Department of State, Michigan | CONT 06/30/2023 | 20170609000402-3 06/09/2017 | | | Continuation. |
| Department of State, Michigan | CONT 06/30/2023 | 20220713000867-0 07/13/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 2014148016-1 10/14/14 | USF Holland Inc. | Harbor Capital Leasing, Inc.; NewStar Commercial Lease Funding I, LLC; NewStar Equipment Finance I, LLC; and Somerset Capital Group, Ltd | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20190715000284-7 07/15/2019 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 2016102457-5 07/22/16 | USF Holland Inc. | Investors Bank | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20210716000207-2 07/16/2021 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 2016105932-6 07/29/16 | USF Holland Inc. | Investors Bank | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20210716000207-2 07/16/2021 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180102000772-0 01/02/18 | USF Holland, Inc. | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20221130000186-2 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180102000779-3 01/02/18 | USF Holland, Inc. | Nations Fund I, LLC | Specified Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Department of State, Michigan | CONT 06/30/2023 | 20221130000187-1 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180131000792-6 01/31/18 | USF Holland, LLC | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20230123000142-0 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180131000798-0 01/31/18 | USF Holland, LLC | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20230123000141-1 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180228000794-9 02/28/18 | USF Holland, LLC | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20230130000225-2 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180228000835-5 02/28/18 | USF Holland, LLC | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20230130000224-3 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20181217000485-5 12/17/2018 | USF Holland Inc. d/b/a Holland | Stoughton Trailers Acceptance Company, LLC | Specified Equipment |

## USF Reddaway Inc.

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Oregon Secretary of State | UCC 07/07/2023 | 90902020 07/21/16 | USF Reddaway Inc. | Investors Bank | Specified Equipment |
| Secretary of State, Oregon | CONT 07/07/2023 | 90902020-2 07/14/2021 | | | Continuation. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Oregon Secretary of State | UCC 07/07/2023 | 91400010 12/12/17 | USF Reddaway Inc. | GrowthFunding Equipment Finance, a Division of People's Intermountain Bank; and Continental Bank | Specified Equipment |
| Oregon Secretary of State | UCC 07/07/2023 | 91488529 03/16/18 | USF Reddaway Inc. | Les Schwab Warehouse Center, Inc. | Specified Equipment |
| Secretary of State, Oregon | CONT 07/07/2023 | 91488529-1 02/22/2023 | | | Continuation. |

## YRC Inc.

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Delaware Secretary of State | UCC 07/13/2023 | 2012 2075648 05/30/12 | YRC, Inc. | Milestone Equipment Corporation | Specified Equipment |
| Delaware Secretary of State | UCC 08/18/2023 | 20171695441 03/15/2017 | | | Continuation. |
| Delaware Secretary of State | UCC 08/18/2023 | 20223775475 05/04/2022 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2012 2922427 07/30/12 | YRC, Inc. | Nations Fund I, Inc. | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 20174833585 07/21/2017 | | | Continuation. |
| Secretary of State, Delaware | CONT 07/13/2023 | 20223775467 05/04/2022 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2012 3001106 08/03/12 | YRC, Inc. | Milestone Equipment Corporation | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 20173795108 06/09/2017 | | | Continuation. |
| Secretary of State, Delaware | CONT 07/13/2023 | 20225851464 07/13/2022 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2012 3667005 09/13/12 | YRC, Inc. | PMC Financial Services Group, LLC | Specified Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | CONT 07/13/2023 | 2017 3795090 06/09/2017 | | | Continuation. |
| Secretary of State, Delaware | CONT 07/13/2023 | 2022 5851472 07/13/2022 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2012 3592468 09/18/12 | YRC, Inc. | Utica Leaseco LLC as Collateral Agent | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 2017 3795116 06/09/2017 | | | Continuation. |
| Secretary of State, Delaware | CONT 07/13/2023 | 2022 5851456 07/13/2022 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2014 3154226 08/07/14 | YRC, Inc. | Susquehanna Commercial Finance, Inc. | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 2019 4587460 07/02/2019 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2015 3935433 09/08/15 | YRC Inc. | Somerset Capital Group, Ltd. and People's United Bank, National Association | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 2020 4694123 07/08/2020 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2015 5388763 11/16/15 | YRC Inc. | HYG Financial Services, Inc. | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 2020 5379393 08/05/2020 | | | Continuation. |
| Delaware Secretary of State | UCC-1 thru 07/17/19 | 2017 6640228 10/05/17 | YRC Inc. | HYG Financial Services, Inc. | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 6909402 06/01/12 | YRC, Inc. | Milestone Equipment Corporation | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72431898 03/15/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 118929231 05/04/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 6924781 07/31/12 | YRC, Inc. | Nations Fund I, Inc. | Specified Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Kansas | CONT 07/18/2023 | 72529030 07/21/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 118929249 05/04/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/13/2023 | 6926026 08/06/12 | YRC, Inc. | Nations Fund I, Inc. | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72499572 06/09/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 119105260 07/13/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/13/2023 | 2020 9242233 12/29/2020 | YRC, Inc. | Nations Fund I, Inc. | Specified Equipment |
| Kansas Secretary of State | UCC 07/13/2023 | 6909402 06/01/2012 | YRC, Inc. | Nations Fund I, Inc. | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72431898 03/15/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 118929231 05/04/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 6933816 09/07/12 | YRC Inc. | PMC Financial Services Group, LLC | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72499580 06/09/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 119108462 07/14/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 6936462 09/19/12 | YRC Inc. | Utica Leaseco LLC as Collateral Agent | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72499598 06/09/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 119105278 07/13/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 6999189 05/28/13 | YRC Inc. d/b/a YRC Freight | Stoughton Trailers Acceptance Company, LLC | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 114739689 03/20/2018 | | | Continuation. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Kansas Secretary of State | UCC 07/18/2023 | 7185432 10/14/15 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 7189319 11/02/15 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 7202211 01/15/16 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 72631802 12/12/17 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 119424257 12/06/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 72702223 03/14/18 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 119585115 02/15/2023 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 72702249 03/14/18 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 119585123 02/15/2023 | | | Continuation. |
| Secretary of State, Delaware | UCC 07/13/2023 | 2020 9241912 12/29/2020 | YRC Inc. | Nations Fund I, LLC | Specific listed equipment. |
| Secretary of State, Delaware | UCC 07/13/2023 | 2020 9242126 12/29/2020 | YRC Inc. | Nations Fund I, LLC | Specific listed equipment. |
| Secretary of State, Delaware | UCC 07/13/2023 | 2020 9242233 12/29/2020 | YRC Inc. | Nations Fund I, LLC | Specific listed equipment. |

<u>Fixture Filings</u>

There are zero outstanding obligations with regard to the below fixture filings with JP Morgan Chase Bank, N.A.

| DEBTOR / MORTGAGOR | SECURED PARTY / MORTGAGEE | ADDRESS | CITY | STATE | ZIP CODE | FILE NUMBER |
|---|---|---|---|---|---|---|
| YRC Inc. | JP Morgan Chase Bank, National Association | 956 Hwy 190 West | Port Allen | LA | 70767 | UCC 61-2013000708 UCC 61-2018000807 UCC 61-2009000029 |
| YRC Inc. | JP Morgan Chase Bank, National Association | 88 E L Morgan Drive | Jackson | TN | 38305 | Book T2077, Page 1237 Instrument 18009857 UCC 09001332 |

| YRC Inc. | JP Morgan Chase Bank, National Association | 1212 Hilton Road | Knoxville | TN | 37921 | Instrument: 201808270013015 <br><br> UCC 200902030047549 <br><br> Instrument: 201309230019772 |
| YRC Inc. | JP Morgan Chase Bank, National Association | 2627 State Road | Bensalem | PA | 19020 | MTG 6779-1130 <br><br> Instrument: 2011052988 |

<u>Deeds of Trust</u>

There are zero outstanding obligations with regard to the below Deeds of Trust with U.S. Bank, National Association.

| DEBTOR / MORTGAGOR | SECURED PARTY / BENEFICIARY | ADDRESS | CITY | STATE | ZIP CODE | FILE NUMBER |
|---|---|---|---|---|---|---|
| YRC Inc. | U.S. Bank, National Association | 3207 F Road, | Clifton | CO | 81520 | Bk. 5183, Pg. 867 Reception No. 2580267 |
| YRC Inc. | U.S. Bank, National Association | 614 Third Avenue | Kearney | NE | 68845 | Instrument No. 2011-5449 |

## YRC Enterprise Services, Inc.

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Delaware Secretary of State | UCC 07/13/2023 | 2017 8494637 12/22/17 | YRC Enterprise Services, Inc. | IBM Credit LLC | Specified Equipment |
| Delaware Secretary of State | UCC 07/13/2023 | 2018 6785923 10/01/18 | YRC Enterprise Services, Inc.; and USF Holland LLC | BOFI Federal Bank | Specified Equipment |
| Kansas Secretary of State | UCC 07/13/2023 | 72041705 09/09/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/13/2023 | 72051472 09/22/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Kansas Secretary of State | UCC 07/13/2023 | 72059715 10/02/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/13/2023 | 72068633 10/15/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 72085629 11/10/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 72078376 10/30/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |

## YRC Freight Canada Company

The following Liens listed below, plus such other Liens perfected by registration of PPSA financing statements (or hypothec registrations under the Register of Personal and Movable Real Rights in the Province of Quebec) in favour of any of the secured parties listed below (or their affiliates) for similar type Liens recorded in British Columbia:

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Alberta | PPSA 07/31/2023 | 20111103725 2020-NOV-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21020225190 2021-FEB-02 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21022213226 2021-FEB-22 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21031029157 2021-MAR-10 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051131925 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051134887 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051135361 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051136885 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051137343 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Alberta | PPSA 07/31/2023 | 21051137705 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051138836 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21052400340 2021-MAY-24 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21052505382 2021-MAY-25 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 23072835626 2023-JUL-28 | YRC Freight Canada Company / Yellow YRC Freight Canada Company | C. Reeves Services Ltd. | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 588245M 11NOV2020 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 746680M 2FEB2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 782957M 22FEB2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 821447M 10MAR2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963570M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963581M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963583M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963584M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963587M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963593M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963601M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| British Columbia | PPSA 07/31/2023 | 989610M 25MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 989616M 25MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 692652P 27JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 692653P 27JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 692654P 27JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 692655P 27JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693662P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693706P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693707P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693711P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693718P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693883P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693895P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693942P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694190P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694202P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694212P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| British Columbia | PPSA 07/31/2023 | 694220P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694221P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694230P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694235P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694242P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312531404 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312531200 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312530602 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312530203 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312529906 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312529205 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312528608 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312527504 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312527300 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312526907 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312526800 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312481008 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Manitoba | PPSA 07/31/2023 | 202312477108 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312476004 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312475407 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312474800 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312458103 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312457603 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312457000 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312456305 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312456208 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312456100 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312455805 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312455503 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312454507 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312454000 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312453209 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312452903 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312450102 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Manitoba | PPSA 07/31/2023 | 202312449805 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312449708 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312449104 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312449007 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312448701 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312448507 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312448000 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312447209 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312445907 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312444102 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202306703309 28APR2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202109158404 25MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202109158307 25MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108360501 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108360200 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108360005 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108359503 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Manitoba | PPSA 07/31/2023 | 202108359309 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108359201 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108358701 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202104064207 10MAR2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202102897902 22FEB2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202101805400 02FEB2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202018842108 11NOV2020 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312443807 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302103074 11-NOV-2020 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302129395 02-FEB-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302135020 22-FEB-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302141155 10-MAR-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166539 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166542 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166546 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166547 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166548 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Saskatchewan | PPSA 07/31/2023 | 302166550 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166553 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302170518 25-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302170524 25-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772749054 - 20210525 1007 1462 7076 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772749063 - 20210525 1007 1462 7077 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429473 - 20210512 1002 1462 2618 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429482 - 20210512 1002 1462 2619 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429491 - 20210512 1002 1462 2620 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429509 - 20210512 1002 1462 2621 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429518 - 20210512 1002 1462 2622 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429527 - 20210512 1002 1462 2623 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Ontario | PPSA 07/27/2023 | 772429536 - 20210512 1002 1462 2624 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 770485626 - 20210311 1003 1462 8520 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 770023179 - 20210222 1403 1462 2327 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 769625037 - 20210202 1704 1462 6641 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 767628711 - 20201112 1002 1462 9085 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 33654807 11/11/2020 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 33993957 02/02/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34067280 02/22/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34151761 03/10/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482851 05/12/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482885 05/12/2023 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482919 05/12/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482935 05/12/2023 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482950 05/12/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Nova Scotia | PPSA 07/31/2023 | 34482968 05/12/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482976 05/12/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34540518 05/25/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34540526 05/25/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Quebec | There are 9 Reservations of ownerships registered in respect of specific equipment. There are 13 Rights resulting from a lease registered in respect of specific equipment. | | | | |

**Schedule 7.02(e)**

**Existing Investments**

1.  Included by reference are all Intercompany Notes listed on Schedule 7.03(b).

2.  Included by reference are all owned Equity Interests set forth in Schedule 5.11.

3.  Shared Services Agreement, dated as of January 1, 2019, by and between YRC Freight Canada Company and YRC Inc., as in effect as of the Petition Date.

**Schedule 7.03(b)**

**Existing Indebtedness**

1. Included by reference are all liens listed on Schedule 7.01(b).

2. Certain deferred health, welfare and pension payments due July 10, 2023, July 11, 2023, July 14, 2023, July 15, 2023, and July 17, 2023, respectively, in the aggregate principal amount of $33,631,748.18.

Additional Outstanding Notes

| Maker | Payee | Principal Amount |
|---|---|---|
| Each Loan Party | Each Loan Party | N/A[2] |
| YRC Inc. | Roadway LLC | $ 500,000,000.00[3] |
| YRC Inc. | YRC Worldwide Inc. | $ 200,000,000.00[4] |
| New Penn Motor Express Inc. | Roadway LLC | $ 150,000,000.00[5] |
| YRC Logistics Asia Limited | YRC Worldwide Inc. | $ 10,203,693.27[6] |
| YRC Logistics Asia Limited | YRC Worldwide Inc. | $1,563,062.02[7] |
| YRC Freight Canada Company (f/k/a Reimer Express Lines Ltd.) | YRC Logistics Inc. | $3,674,434.39 CAD[8] |
| YRC Worldwide Inc. | YRC Freight Canada Company (f/k/a Reimer Express Lines Ltd.) | $31,000,000.00[9] |

---

[2]    That certain Intercompany Note, dated as of the Initial Funding Date, by and between each Loan Party signatory thereto, each as a note party, for the unpaid principal amount of all loans and advances or other credit extensions made by any holder to such issuer thereunder.

[3]    That certain Second Amended and Restated Promissory Note, dated as of December 10, 2013, by YRC Inc., as borrower, in favor of Roadway LLC, as lender, in the principal amount of $500,000,000.00.

[4]    That certain Second Amended and Restated Promissory Note, dated as of January 1, 2014, by YRC Inc., as borrower, in favor of YRC Worldwide Inc., as lender, in the principal amount of $200,000,000.00.

[5]    That certain Second Amended and Restated Promissory Note, dated as of December 10, 2013, by New Penn Motor Express, Inc., as borrower, in favor of Roadway LLC, as lender, in the l principal amount of $150,000,000.00.

[6]    That certain Intercompany Note, dated as of December 18, 2012, by YRC Logistics Asia Limited, as payor, in favor of YRC Worldwide Inc., as payee, in the principal amount of $10,203,693.27.

[7]    That certain Intercompany Note, dated as of September 28, 2017, by YRC Logistics Asia Limited, as issuer, in favor of YRC Worldwide Inc., as holder, in the original principal amount of $1,563,062.02.

[8]    That certain Promissory Note, dated as of August 13, 2010, by Reimer Express Lines, Ltd., as payor, in favor of YRC Logistics, Inc., as payee, in the original principal amount of $1,625,356 CAD.

[9]    That certain Amended and Restated Intercompany Note, dated as of November 1, 2013, by YRC Worldwide Inc., as payor, in favor of Reimer Express Lines Ltd., as payee, in the original principal amount of $19,000,000.

| Maker | Payee | Principal Amount |
|-------|-------|------------------|
| YRC Inc. | YRC Freight Canada Company (f/k/a Reimer Express Lines Ltd.) | $5,870,361.00 CAD[10] |
| YRC Transportation, S.A. de C.V. | Transcontinental Lease, S. de R.L. de C.V. | $1,047,718.92 Mexican Pesos |
| YRC Inc. | Transcontinental Lease, S. de R.L. de C.V. | $548,476.13 |
| YRC Inc. | Transcontinental Lease, S. de R.L. de C.V. | $3,000,000 |
| YRC Transportation, S.A. de C.V. | Transcontinental Lease, S. de R.L. de C.V. | $4,277,885.26 Mexican Pesos |

Capitalized Lease Obligations

| Grantor / Lessee | Lessor | Operating Company | Location/Description | Balance as of 7/28/23 |
|------------------|--------|-------------------|---------------------|----------------------|
| YRC Inc. | NATMI LPF Bloomington, LP | YRC | NAT #1 Bloomington - Terminal C4 | 14,444,598.06 |
| YRC Inc. | 1313 Grand Street Realty, LLC | YRC | NAT #1 Brooklyn - Terminal C4 | 6,3285,97.94 |
| YRC Inc. | NATMI National Truck Terminals, LLC | YRC | NAT #1 Chula Vista - Terminal C4 | 2,063,517.45 |
| YRC Inc.. | RLF I-C SPE, LLC | YRC | NAT #1 Denver - Terminal C4 | 4,012,613.33 |
| USF Reddaway | Prologis USLV NewCA 3, LLC | URD | NAT #1 Fontana - Terminal C4 | 8,785,050.37 |
| YRC Inc. | Prologis Targeted U.S. Logistics Fund, LP | YRC | NAT #1 Gardena - Terminal C4 | 1,446,178.54 |
| USF Reddaway | Highland Investments, LLLP | URD | NAT #1 Henderson - Terminal C4 | 3,227,742.37 |
| YRC Inc. | Realterm Nat Property Holdings, LP | YRC | NAT #1 Manassas - Terminal C4 | 879,666.12 |
| USF Reddaway | Orange Batavia I LLC | URD | NAT #1 Orange - Terminal C4 | 7,537,803.43 |
| YRC Inc. | GPT Orlando Terminal Owner LLC | YRC | NAT #1 Orlando - Terminal C4 | 836,834.38 |
| YRC Inc. | Bel Air T.T., LLC | YRC | NAT #1 San Diego - Terminal C4 | 754,303.75 |
| YRC Inc. | M4 Terminals, LLC | YRC | NAT #1 San Jose - Terminal C4 | 609,340.22 |
| USF Reddaway | M4 Terminals, LLC | URD | NAT #1 Santa Clara - Terminal C4 | 3,583,769.32 |

---

[10]    That certain Intercompany Note, dated as of December 1, 2013, by YRC Inc., as payor, in favor of Reimer Express Lines Ltd., as payee, in the original principal amount of $5,870,361.00 CAD.

| Grantor / Lessee | Lessor | Operating Company | Location/Description | Balance as of 7/28/23 |
|---|---|---|---|---|
| YRC Inc. | Prologis USLV NewCA 3, LLC | YRC | NAT #1 Seattle - Terminal C4 | 3,651,635.11 |
| USF Reddaway | NATMI National Truck Terminals, LLC | URD | NAT #1 Sparks - Terminal C4 | 1,186,281.72 |
| New Penn | NATMI National Truck Terminals, LLC | NPM | NAT #2 Billerica - Terminal C4 | 2,268,300.66 |
| YRC Inc. | Terreno Dell LLC | YRC | NAT #2 Carlstadt - Terminal C4 | 2,258,806.51 |
| YRC Inc. | Edinburgh Logistics Assets LLC | YRC | NAT #3 - Houston - Terminal C4 | 3,150,478.03 |
| YRC Inc. | Finlayson Logistics Assets LLC | YRC | NAT #3 Phoenix - Terminal C4 | 3,312,912.68 |
| YRC Inc. | Madrona Cutter, LLC and Gulsons Cutter, LLC | YRC | NAT #3 Portland - Terminal C4 | 7,061,911.27 |
| USF Reddaway | DCT Regentview Avenue, LLC | URD | NAT #4 - Downey CA v2 - Terminal C4 | 6,097,494.79 |
| YRC Inc. | DCT Eckhoff Street LLC | YRC | NAT #4 - Orange CA v2 - Terminal C4 | 1,873,631.36 |
| YRC Inc. | DCT Peoria Street LLC | YRC | NAT #4 - Sun Valley CA - Terminal C4 | 1,568,960.31 |
| YRC Inc. | GPT Deer Park Terminal Owner LLC | YRC | NAT #5 - Deer Park NY - Terminal C4 | 2,453,143.41 |
| YRC Inc. | Terreno Clawiter LLC | YRC | NAT #5 - Hayward/Oakland CA - Terminal C4 | 1,764,710.29 |
| YRC Inc. | Prologis Targeted US Logistics Fund, LP | YRC | NAT #5 - Tacoma WA - Terminal C4 | 2,947,166.03 |
| YRC Inc. | Estes Express Lines | YRC | Estes - Charlotte, NC - Terminal C4 | 3,445,839.85 |
| USF Holland | Estes Express Lines | UHL | Estes - Coon Rapids - Terminal C4 | 4,657,873.10 |
| USF Reddaway | Commerce Road Terminals LLC | URD | Estes - Eugene, OR - Terminal C4 | 1,302,066.79 |
| USF Holland | Estes Terminals LLC | UHL | Estes - Joilet - Terminal C4 | 7,556,769.61 |
| YRC Inc. | Estes Express Lines | YRC | Estes - Kearny, NJ - Terminal C4 | 6,880,413.89 |
| USF Holland | Estes Express Lines | UHL | Estes - Milwaukee - Terminal C4 | 4,740,965.27 |
| USF Reddaway | Commerce Road Terminals LLC | URD | Estes - Redmond, OR - Terminal C4 | 510,515.76 |
| USF Holland | Estes Terminals LLC | UHL | Estes - Rockford - Terminal C4 | 3,741,660.36 |
| USF Holland | Commerce Road Terminals LLC | UHL | Estes - South Bend - Terminal C4 | 4,857,922.59 |
| YRC Inc. | Estes Terminals LLC | YRC | Estes - Sparks, NV - Terminal C4 | 5,028,534.57 |
| USF Reddaway | Estes Express Lines | URD | Estes - Tacoma, WA - Terminal C4 | 5,232,369.62 |

| Grantor / Lessee | Lessor | Operating Company | Location/Description | Balance as of 7/28/23 |
|---|---|---|---|---|
| USF Reddaway | Estes Express Lines | URD | Estes - Three Forks, MT - Terminal C4 | 336,950.35 |
| USF Holland | Estes Express Lines | UHL | Estes - Tomah Monroe County - Terminal C4 | 1,151,626.38 |
| YRC Inc. | Commerce Road Terminals LLC | YRC | Estes - Wichita, KS - Terminal C4 | 1,197,901.88 |
| USF Reddaway | EXOL Properties, LLC | URD | EXOL - Boise ID - Terminal C4 | 1,007,592.06 |
| YRC Inc. | Freight Line Properties LLC | YRC | Freight Line - Salt Lake City, UT - Terminal C4 | 2,550,067.11 |
| USF Reddaway | Kestrel Crossdock LLC | URD | Kestrel Crossdock - Missoula, MT - Terminal C4 | 1,350,739.44 |
| YRC Inc. | Mad Acquisitions, LLC | YRC | Other - Roanoke, VA - Terminal C4 | 702,426.82 |
| USF Holland | RLR Investments, LLC | UHL | RLR - Appleton WI - Terminal C4 | 3,896,053.08 |
| YRC Inc. | RLR Investments, LLC | YRC | RLR - Atlanta GA - Terminal C4 | 1,966,841.38 |
| YRC Inc. | R.L. Roberts LLC | YRC | RLR - Chicago West IL - Terminal C4 | 1,696,118.61 |
| YRC Inc. | RLF Booth SPE, LLC | YRC | RLR - Kansas City, MO - Terminal C4 | 2,977,060.52 |
| New Penn | R. L. Roberts, LLC | NPM | RLR - Scranton PA - Terminal C4 | 207,659.92 |
| USF Reddaway | RLR Investments, LLC | URD | TAC - Spokane WA (URD) - Terminal C4 | 1,321,149.70 |
| YRC Inc. | Thunderbolt Management Group Inc. | YRC | Thunderbolt Colorado Springs CO - Terminal C4 | 403,800.15 |
| YRC Freight Canada Company | Acheron Land Holdings ULC | YRC Freight Canada | Other - Mississauga/Toronto Canada - Terminal C4 | 7,030,524.66 |
| YRC Inc. | Price Property and Investments LLC and Green Blue 1818 LLC | YRC | Tower - Terminal C4 | 4,133,493.50 |
| YRC Inc. | Glen EG, LLC | YRC | 5200 Building – Terminal C4 | 624,308.97 |
| New Penn | GIJV IL7 LLC | NPM | SE - Elkridge/Baltimore MD - Terminal C4 | 5,107,489.42 |
| YRC Inc. | Southeastern Freight Lines, Inc. | YRC | SE - Lubbock TX - Terminal C4 | 999,073.99 |
| New Penn | A. Duie Pyle, Inc. | NPM | SE - Maspeth - Terminal C4 | 11,820,251.17 |
| YRC Inc. | Southeastern Freight Lines, Inc. | YRC | SE - Odessa TX - Terminal C4 | 588,551.69 |
| YRC Inc. | Southeastern Freight Lines, Inc. | YRC | SE - McAllen, TX - Terminal C4 | 1,559,590.61 |
| YRC Inc.. | Southeastern Freight Lines, Inc. | YRC | SE - Miami, FL - Terminal C4 | 13,785,491.58 |

| Grantor / Lessee | Lessor | Operating Company | Location/Description | Balance as of 7/28/23 |
|---|---|---|---|---|
| YRC Inc. | Southeastern Freight Lines, Inc. | YRC | SE - Tulsa - Terminal C4 | 1,443,280.70 |
| USF Holland | Dwell Wise LP | UHL | 700 S Waverly Rd., Holland, MI – Corporate Office | 3,094,666.07 |

**Schedule 7.08**

**Transactions with Affiliates**

Included by reference are all transactions with affiliates provided for in the 10-K filed on February 9, 2023 under the section titled "Related Party Transactions", without giving effect to any amendments thereof after February 9, 2023.

**Schedule 7.09**

**Certain Contractual Obligations**

Included by reference are the contractual obligations expressly specified in the 10-Q filed on August 13, 2023 and the 10-K filed on February 9, 2023 by Yellow Corporation, in each case, as in effect on the Closing Date.

EXHIBIT A

ADMINISTRATIVE QUESTIONNAIRE

YELLOW CORPORATION

<u>Agent Information</u>
Alter Domus Products Corp.
225 W. Washington Street,
9th Floor
Chicago, Illinois 60606

<u>Agent Closing Contact</u>
Legal Department – Agency, Emily
Ergang Pappas and Chris Capezuti
Tel: 312-564-5100
Fax: 312-376-0751
E-Mail:
legal_agency@alterdomus.com,
emily.ergangpappas@alterdomus.com
and cpcagency@alterdomus.com

---

It is very important that **all** of the requested information be completed accurately and that this questionnaire be returned promptly. If your institution is sub-allocating its allocation, please fill out an administrative questionnaire for each legal entity.

---

Legal Name of Lender to appear in Documentation:

_____

Signature Block Information: _____

- Signing Credit Agreement      ☐ Yes      ☐ No

- Coming in via Assignment      ☐ Yes      ☐ No

Type of Lender: _____
(Bank, Asset Manager, Broker/Dealer, CLO/CDO; Finance Company, Hedge Fund, Insurance, Mutual Fund, Pension Fund, Other Regulated Investment Fund, Special Purpose Vehicle, Other-please specify)

Lender Parent: _____

<u>Lender Domestic Address</u>                    <u>Lender Eurodollar Address</u>

_____          _____

_____          _____
_____          _____
_____          _____

---

**Contacts/Notification Methods: Borrowings, Paydowns, Interest, Fees, etc.**

---

<u>Primary Credit Contact</u>          <u>Secondary Credit Contact</u>

Name:            _____          _____

Company:         _____          _____

Title:           _____          _____

Address:         _____          _____
                 _____          _____

Telephone:       _____          _____

Facsimile:       _____          _____

E-Mail
Address:         _____          _____

<u>Primary Operations Contact</u>          <u>Secondary Operations Contact</u>

Name:            _____          _____

Company:         _____          _____

Title:           _____          _____

Address:         _____          _____

---

**Lender's Domestic Wire Instructions**

---

Bank Name:          _____

ABA/Routing No.:    _____

Account Name:       _____

Account No.:        _____

FFC Account
Name:               _____

FFC Account No.:    _____

Attention:          _____

Reference:          _____



**Tax Documents**

## NON-U.S. LENDER INSTITUTIONS:

### *I. Non-Flow Through Entities:*

If your institution is organized outside of the United States for U.S. federal income tax purposes, and is the beneficial owner of the interest and other income it receives, you must, without limiting the obligations to deliver certain forms and documents under Section 3.01 of the Credit Agreement, complete one of the following three tax forms, as applicable to your institution: *a.) Form W-8BEN-E (Certificate of Status of Beneficial Owner), b.) Form W-8ECI (Income Effectively Connected to a U.S. Trade or Business),* or *c.) Form W-8EXP (Certificate of Foreign Government or Governmental Agency).*

A U.S. taxpayer identification number is required for any institution submitting Form W-8ECI. It is also required on Form W-8BEN-E for certain institutions claiming the benefits of a tax treaty with the U.S. Please refer to the instructions when completing the form applicable to your institution.  In addition, please be advised that U.S. tax regulations do not permit the acceptance of faxed forms.  **Two original copies of each applicable tax form must be submitted.**

### *II. Flow-Through Entities:*

If your institution is organized outside the U.S., and is classified for U.S. federal income tax purposes as either a partnership, trust, qualified or non-qualified intermediary, or other non-U.S. flow-through entity, an original *Form W-8IMY (Certificate of Foreign Intermediary, Foreign Flow-Through Entity, or Certain U.S. Branches for United States Tax Withholding)* must, without limiting the obligations to deliver certain forms and documents under Section 3.01 of the Credit Agreement, be completed by the intermediary together with a withholding statement.  Flow-through entities other than Qualified Intermediaries are required to include tax forms for each of the underlying beneficial owners.

Please refer to the instructions when completing this form.  In addition, please be advised that U.S. tax regulations do not permit the acceptance of faxed forms.  **Two original copies of each applicable tax form must be submitted.**

## U.S. LENDER INSTITUTIONS:

If your institution is incorporated or organized <u>within</u> the United States, you must complete and return *Form W-9 (Request for Taxpayer Identification Number and Certification).*  **Please be advised that you must submit an original copy Form W-9.**

***Pursuant to the Credit Agreement, the applicable tax forms and documents for your institution must be completed and returned on or prior to the date on which it becomes a party to the Credit***

---

[1]    All tax documentation subject to ongoing specialist review in all respects.

*Agreement.  Failure to provide the proper tax form when requested may subject your institution to U.S. tax withholding.*

EXHIBIT B

INTERIM ORDER

[See Attached.]

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) |
|  | ) Case No. 23-11069 (CTG) |
| Debtors. | ) |
|  | ) (Jointly Administered) |
|  | ) |

### INTERIM ORDER (I) AUTHORIZING
### THE DEBTORS TO (A) OBTAIN POSTPETITION
### FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT
### LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE
### CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN
### PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
### (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "DIP Motion")[2] of Yellow Corporation ("Yellow Corp") and each

of its above-captioned affiliates (collectively, the "Debtors"), pursuant to sections 105, 361, 362,

363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507

of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy

Code"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Local Rules"), seeking entry of this interim order (this "Interim

Order")[3] and the Final Order (as defined herein and, together with this Interim Order, the "DIP

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Motion or DIP Term Sheet (as defined herein), as applicable.

[3]   The Debtors filed a prior version of this Interim Order at Docket No. 16-1.

Orders") among other things:

- authorizing the Borrower (as defined below) to obtain postpetition financing (the "DIP Financing") pursuant to a $142.5 million postpetition credit facility (the "DIP Facility") subject to the terms and conditions set forth in this Interim Order and that certain Debtor-In-Possession Credit Facility Term Sheet attached hereto as **Exhibit 1** (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "DIP Term Sheet") consisting of:

  (A) a junior secured, superpriority debtor in possession multi-draw term loan facility (the "Junior DIP Facility") by and among Yellow Corp, as borrower (in such capacity, the "Borrower"), the DIP Guarantors (as defined in the DIP Term Sheet), MFN Partners, L.P. (together with any assigns, the "Junior DIP Lender"), and Alter Domus Products Corp., as administrative agent and collateral agent in such capacity, together with its successors and permitted assigns, the "Junior DIP Agent" and, together with the Junior DIP Lender, the "Junior DIP Secured Parties"), consisting of new money term loans (together with any drawn Junior DIP Commitments (as defined below), the "Junior DIP Loans") in an aggregate principal amount of $42.5 million, of which: (i) $17.9 million will be made available to be drawn upon entry of this Interim Order and (ii) $24.6 million will be made available to be drawn (including (a) $11.2 million on the Second Draw (as defined below) and (b) $13.4 million on the Third Draw (as defined below)) subject to certain conditions set forth in the DIP Term Sheet and, when applicable, a credit agreement governing the Junior DIP Facility on the terms set forth in the DIP Term Sheet (including the Documentation Principals (as defined therein)) (the "DIP Credit Agreement"), including the filing by the Debtors of a form of order approving bid procedures (the "Proposed Bid Procedures Order") in form and substance acceptable to the Junior DIP Lender and the B-2 Lenders;

  (B) an incremental postpetition tranche of the B-2 Facility (as defined below) constituting a senior secured, superpriority debtor in possession multi-draw term loan facility (the "Postpetition B-2 Facility"), subject to the terms herein, the DIP Term Sheet and the Prepetition B-2 Credit Agreement (as defined below), as modified by this Interim Order and the DIP Term Sheet, which will be superseded by the DIP Credit Agreement (if the Postpetition B-2 Lenders and the Debtors agree) or an amendment to the B-2 Credit Agreement (the "B-2 Amendment" and the Prepetition B-2 Credit Agreement as so modified and superseded, the "Postpetition B-2 Credit Agreement"), subject to the Documentation Principles set forth (and as defined) in the DIP Term Sheet, consisting of new money term loans (the "Postpetition B-2 Term Loans" and, together with the Junior DIP Loans, the "DIP Loans")[4] provided by  Citadel Credit Master LLC (together with any permitted assignee thereof, the "Postpetition B-2 Lenders" and, together with the

---

[4]    The commitments under the Junior DIP Facility shall be referred to herein as the "Junior DIP Commitments" and the commitments under the Postpetition B-2 Facility shall be referred to herein as the "Postpetition B-2 Commitments." The Junior DIP Commitments and the Postpetition B-2 Commitments, together, shall be referred to herein as the "DIP Commitments."

Postpetition B-Agent (as defined below), the "<u>Postpetition B-2 Secured Parties</u>") in an aggregate principal amount of $100.0 million of which: (i) $42.1 million will be made available upon entry of the Interim Order (together with the Junior DIP Loans described in subclause (A)(i) above, the "<u>Interim Draw</u>"); (ii) $26.3 million will be made available to be drawn subject to certain conditions set forth in the B-2 Amendment or DIP Credit Agreement, as applicable, including the filing by the Debtors of the Proposed Bid Procedures Order (together with the Junior DIP Loans discussed in subclause (A)(ii)(a) above, the "<u>Second Draw</u>"); and (iii) $31.6 million will be made available to be drawn upon the Court's entry of the Final Order (together with the Junior DIP Loans discussed in subclause (A)(ii)(b) above, the "<u>Third Draw</u>"); and

(C) up to $70.0 million (the "<u>Additional Junior DIP Commitments</u>")[5] shall be made available by the Junior DIP Lender, at the Debtors' request following the Third Draw, which amount may be drawn in one or multiple draws at the Debtors' discretion.[6]

- authorizing the Borrower to incur, and the DIP Guarantors (as defined in the DIP Term Sheet and, together with the Borrower, the "<u>DIP Loan Parties</u>") to jointly and severally guarantee the DIP Loans and all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including, without limitation, commitment fees or premiums and administrative agency fees, costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute) earned, due and payable under the DIP Loan Documents (as defined below) (collectively, the "<u>Junior DIP Obligations</u>"), in each case subject to the Carve-Out and the Canadian Priority Charges and in accordance with the terms hereof;

- authorizing the DIP Loan Parties to jointly and severally guarantee the Postpetition B-2 Loans and all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including, without limitation, commitment fees or premiums and administrative agency fees, costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute) earned, due and payable under the DIP Loan Documents (as defined below) to the Postpetition B-2 Secured Parties (collectively, the "<u>Postpetition B-2 Obligations</u>" and, together with the Junior DIP Obligations, the "<u>DIP Obligations</u>"), in each case subject to the Carve-Out and the Canadian Priority Charges and in accordance with the terms hereof;

---

[5]   The Additional Junior DIP Commitments (if drawn) shall be junior and subordinate (including in right of payment) in all respects to the Prepetition Liens and Adequate Protection Liens of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties.

[6]   The Junior DIP Lender and the Postpetition B-2 Lenders, together, shall be referred to herein as the "<u>DIP Lenders</u>."  The Junior DIP Secured Parties and the Postpetition B-2 Secured Parties, together, shall be referred to herein as the "<u>DIP Secured Parties</u>."

- authorizing the DIP Loan Parties to execute, deliver and perform, as applicable, under the DIP Term Sheet, the Postpetition B-2 Credit Agreement, the DIP Credit Agreement, the Postpetition B-2 Amendment (if any), the Amended and Restated Fee Letter, the Fee Letter, and all other documents and instruments that may be reasonably requested by the Junior DIP Secured Parties or Postpetition B-2 Secured Parties in connection with the DIP Facility (in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP Loan Documents");

- subject to the Carve-Out (as defined below) and the Canadian Priority Charges and otherwise solely to the extent set forth herein, granting to the Junior DIP Agent, for the benefit of the Junior DIP Secured Parties, and the Postpetition B-2 Agent, for the benefit of the Postpetition B-2 Secured Parties, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code;

- granting to the Junior DIP Agent, for the benefit of the Junior DIP Secured Parties, and the Postpetition B-2 Agent, for the benefit of the Postpetition B-2 Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral, on the terms described herein;[7]

- authorizing the Junior DIP Agent and the Postpetition B-2 Agent to take all commercially reasonable actions to implement the terms of this Interim Order;

- (a) waiving the Debtors' right to surcharge the DIP Collateral, (b) upon entry of a final order providing for such relief, waiving the Debtors' right to surcharge the B-2 Collateral or Prepetition ABL Collateral (each as defined below) pursuant to section 506(c) of the Bankruptcy Code and (c) upon entry of a final order providing for such relief any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

- (a) waiving the equitable doctrine of "marshaling" and other similar doctrines for the benefit of the DIP Secured Parties with respect to the DIP Collateral and the DIP Obligations, and (b) upon entry of a final order providing for such relief, waiving the equitable doctrine of "marshaling" and other similar doctrines for the benefit of the Prepetition Secured Parties with respect to the Prepetition Collateral and the Prepetition

---

[7] "DIP Collateral" shall mean all tangible and intangible prepetition and postpetition property of the DIP Loan Parties (other than: (a) any lease, license or agreement or any property to the extent a grant of a security interest therein would violate or invalidate such lease, license or agreement or similar arrangement or create a right of termination in favor of any other party thereto after giving effect to the applicable anti-assignment provisions of the UCC, PPSA, Bankruptcy Code or other applicable law, other than proceeds and receivables thereof, the assignment of which is deemed effective under the UCC, PPSA, Bankruptcy Code or other applicable law, notwithstanding such prohibition; and (b) "intent to use" trademark applications, (a) and (b), collectively, "Excluded Property") whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, other than the Avoidance Actions and the Carve-Out Reserves (and any amounts held therein), but including, upon and subject to entry of the Final Order, the Avoidance Proceeds (collectively, the "Unencumbered Property," and such liens, the "DIP Unencumbered Property Liens")).

Secured Obligations (each as defined below), as applicable, in each case subject to the Carve-Out and Canadian Priority Charges;

- authorizing the Debtors to use proceeds of the DIP Facility and Cash Collateral solely in accordance with the DIP Orders, the DIP Loan Documents (including the Approved Budget, subject to Permitted Variances (as defined in the DIP Term Sheet)), the Interim UST Cash Collateral Order (as defined below), and the Final UST Cash Collateral Order (as defined below);

- authorizing the Debtors to pay the DIP Obligations as they become due and payable in accordance with the DIP Loan Documents;

- authorizing the Debtors to remit ABL Cash Collateral (as defined below) to the Prepetition ABL Agent as set forth herein and for the Prepetition ABL Agent to apply such ABL Cash Collateral to permanently reduce or cash collateralize, as applicable, Prepetition ABL Obligations as set forth herein;

- subject to the restrictions set forth in the DIP Loan Documents and the DIP Orders, authorizing the Debtors to use Prepetition Collateral (including Cash Collateral) and provide adequate protection to the Prepetition Secured Parties (as defined below) for any diminution in value of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "Diminution in Value");[8]

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties to implement and

---

[8]  The adequate protection and certain other rights and protections to be provided to the Prepetition UST Secured Parties (as defined below) is set forth in a separate Court order being entered contemporaneously with this Interim Order (the "Interim UST Cash Collateral Order" and the final order approving such relief, the "Final UST Cash Collateral Order").  As used in this Interim Order, UST Cash Collateral, Prepetition UST Tranche A Credit Agreement, Prepetition UST Tranche A Loan Documents, Prepetition UST Tranche A Borrower, Prepetition UST Tranche A Guarantors, Prepetition UST Tranche A Loan Parties, BNY, Prepetition UST Tranche A Agent, Prepetition UST Tranche A Lenders, Prepetition UST Tranche A Secured Parties, Prepetition UST Tranche A Obligations, Prepetition UST Tranche B Credit Agreement, Prepetition UST Tranche B Loan Documents, Prepetition UST Loan Documents, Prepetition UST Tranche B Borrower, Prepetition UST Tranche B Guarantors, Prepetition UST Tranche B Loan Parties, Prepetition UST Tranche B Agent, Prepetition UST Agent, Prepetition UST Tranche B Lenders, Prepetition UST Lenders, Prepetition UST Tranche B Secured Parties, Prepetition UST Tranche B Obligations, Prepetition UST Secured Obligations, Prepetition UST Tranche A Liens, Prepetition UST Tranche A Permitted Senior Liens, Prepetition UST Tranche A Collateral, Prepetition UST Tranche B Liens, Prepetition UST Tranche B Priority Collateral, Prepetition UST Tranche B Permitted Senior Liens, Prepetition UST Tranche B Priority Collateral, Prepetition UST Tranche B Collateral, Prepetition UST Secured Parties, UST Tranche B Adequate Protection Liens, UST Tranche A Adequate Protection Liens, UST Adequate Protection Liens, UST Tranche B 507(b) Claims, UST Tranche A 507(b) Claims, UST 507(b) Claims, UST Tranche B Adequate Protection Fees and Expenses, UST Tranche A Adequate Protection Fees and Expenses, UST Adequate Protection Fees and Expenses, UST Tranche B Adequate Protection Obligations, UST Tranche A Adequate Protection Obligations, UST Adequate Protection Obligations, UST Adequate Protection Payments, and UST Adequate Protection shall have the meanings given to those terms in the Interim UST Cash Collateral Order.

5

effectuate the terms and provisions of the DIP Orders and the DIP Loan Documents;

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and, upon entry, the Final Order; and

- scheduling a final hearing (the "Final Hearing") to consider final approval of the DIP Facility and use of Cash Collateral on the terms of a proposed order (the "Final Order") to be posted to the docket prior to the Final Hearing.

The Court having considered the interim relief requested in the DIP Motion [Docket No. 16], the exhibits attached thereto, the *Declaration of Cody Leung Kaldenberg, Founding Member of and Partner at Ducera Partners In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Authorizing the Debtors to Use UST Cash Collateral, (V) Granting Adequate Protection, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 18] (the "Kaldenberg Declaration"), the *Declaration of Brian Whittman, Managing Director of Alvarez & Marsal North America, LLC, In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Authorizing the Debtors to Use UST Cash Collateral, (V) Granting Adequate Protection, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 17] (the "Whittman Declaration"), and the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), the available DIP Loan Documents, including the DIP Term Sheet, and the evidence submitted to the Court, including arguments made at the interim hearing held on August 9, 2023 (the "Interim Hearing"); and due and sufficient notice of the Interim Hearing, including continuations thereof,

and subsequent status conferences having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the preservation of the value of the Debtors' assets; and it appearing that the DIP Loan Parties' entry into the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[9]

A.      *Petition Date*.  On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

B.      *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      *Jurisdiction and Venue*.  This Court has core jurisdiction over these cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the*

---

[9]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

*District of Delaware*, dated February 29, 2012.  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order approving the relief sought in the DIP Motion consistent with Article III of the United States Constitution. Venue for these cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Bankruptcy Local Rules 2002-1, 4001-2, and 9013-1.

D.  *Committee Formation*.  On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") in these chapter 11 cases (the "Chapter 11 Cases") pursuant to section 1102 of the Bankruptcy Code [Docket No. 269].  As of the date hereof, the U.S. Trustee has not appointed any other statutory committee.

E.  *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the DIP Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and Bankruptcy Local Rules, and no other or further notice was or shall be required under the circumstances.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

F.  *Cash Collateral*.  As used herein, the term "Cash Collateral" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Prepetition Secured Parties (and the Prepetition UST Secured Parties) or DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

8

G. *Debtors' Stipulations*. Without prejudice to the rights of any other party in interest and subject to the provisions and limitations contained in paragraph 19 hereof, after consultation with their attorneys, the Debtors admit, stipulate and agree that:

(i) *Prepetition B-2 Term Loan*. Pursuant to that certain Amended and Restated Credit Agreement, dated as of September 11, 2019 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition B-2 Credit Agreement" and, collectively with all other agreements (including all Loan Documents (as defined therein)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition B-2 Loan Documents"), by and among (a) Yellow Corp., as borrower (in such capacity, the "Prepetition B-2 Borrower"), (b) the guarantors party thereto (the "Prepetition B-2 Guarantors" and, together with the Prepetition B-2 Borrower, the "Prepetition B-2 Loan Parties"), (c) Alter Domus Products Corp., as administrative and collateral agent (the "Prepetition B-2 Agent"),[10] and (d) the lenders party thereto from time to time (the "Prepetition B-2 Lenders" and, together with the Prepetition B-2 Agent, the "Prepetition B-2 Secured Parties"),[11] Prepetition B-2 Loan Parties incurred "Obligations" under (and as defined in) the Prepetition B-2 Credit Agreement (the "Prepetition B-2 Obligations" and, together with the Postpetition B-2 Obligations, the "B-2 Obligations") to the

---

[10] Alter Domus Product Corp. also serves as administrative agent and collateral agent with respect to the Postpetition B-2 Facility (in such capacity, the "Postpetition B-2 Agent" and, together with the Prepetition B-2 Agent, the "B-2 Agent").

[11] The Prepetition B-2 Lenders and the Postpetition B-2 Lenders shall be referred to herein as the "B-2 Lenders." The Prepetition B-2 Secured Parties and the Postpetition B-2 Secured Parties shall be referred to herein as the "B-2 Secured Parties."

Prepetition B-2 Secured Parties on a joint and several basis;

(ii)     *Prepetition ABL Facility*.   Pursuant to that certain Loan and Security Agreement, dated as of February 13, 2014 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition ABL Credit Agreement", collectively with all other agreements (including all Loan Documents (as defined therein)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition ABL Loan Documents", and the credit facilities evidenced thereby, collectively, the "Prepetition ABL Facility") among (a) Yellow Corp, as administrative borrower (together with the other borrowers party thereto, the "Prepetition ABL Borrowers"), (b) the guarantors party thereto (the "Prepetition ABL Guarantors" and, together with the Prepetition ABL Borrowers, the "Prepetition ABL Loan Parties" and, together with the Prepetition B-2 Loan Parties, the "Prepetition Loan Parties"), (c) Citizens Business Capital, a division of Citizens Asset Finance, Inc. (a subsidiary of Citizens Bank, N.A.), as agent (the "Prepetition ABL Agent" and, together with the Prepetition B-2 Agent, the "Prepetition Agents"), (d) the lenders from time to time party thereto (the "Prepetition ABL Lenders" and, together with the Prepetition B-2 Lenders, the "Prepetition Lenders"), and (e) the issuing banks from time to time party thereto (together with the Prepetition ABL Agent and the Prepetition ABL Lenders, the "Prepetition ABL Secured Parties" and, together with the Prepetition Agents, the Prepetition Lenders, and the Bank Product Providers (as defined in the Prepetition ABL Credit Agreement), the "Prepetition Secured Parties"), the Prepetition ABL Loan Parties incurred "Obligations" (as defined in the Prepetition ABL Credit Agreement, the "Prepetition ABL

10

Obligations" and, together with the Prepetition B-2 Obligations, the "<u>Prepetition Secured Obligations</u>") to the Prepetition ABL Secured Parties on a joint and several basis;

(iii) *Prepetition Intercreditor Agreement.* Pursuant to (and to the extent set forth in) that certain Amended and Restated Intercreditor Agreement, dated as of July 7, 2020 (as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "<u>Prepetition Intercreditor Agreement</u>" and, together with the Prepetition B-2 Loan Documents and the Prepetition ABL Loan Documents, the "<u>Prepetition Loan Documents</u>") by and among the Prepetition ABL Agent, the Prepetition B-2 Agent, the Prepetition UST Tranche A Agent, and the Prepetition UST Tranche B Agent, the parties thereto agreed, among other things, to the relative priority of such parties' respective security interests in the Prepetition Collateral (as defined below), which relative priorities are governed by and set forth in the Prepetition Intercreditor Agreement. The Prepetition Loan Documents and the Prepetition UST Loan Documents, including the Prepetition Intercreditor Agreement, are, in each case, binding and enforceable against the parties thereto;

(iv) *Prepetition B-2 Obligations.* As of the Petition Date, the Prepetition B-2 Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition B-2 Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition B-2 Credit Agreement) in the aggregate principal amount of not less than $485,372,693.29, plus accrued and unpaid interest thereon and any fees, exit fees (including the exit fee arising pursuant to Section 2.05(c) of the Prepetition B-2 Credit Agreement), expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees and fees of other consultants and professionals), costs, charges, indemnities, and other Prepetition B-2 Obligations in each case incurred under (or reimbursable

11

pursuant to) or secured by the Prepetition B-2 Loan Documents;

(v)     *Prepetition ABL Obligations*.  As of the Petition Date, the Prepetition ABL
Loan Parties were validly, justly and lawfully indebted and liable to the Prepetition ABL Secured
Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for
(x) not less than $858,520.35 in outstanding principal amount of Loans (as defined in the
Prepetition ABL Credit Agreement) plus accrued and unpaid interest thereon, (y) not less than
$359,288,388.60 in outstanding and undrawn Letters of Credit (as defined in the Prepetition ABL
Credit Agreement) plus accrued and unpaid fees with respect thereto, and (z) any fees, expenses
and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors'
fees, financial advisors' fees, and fees of other consultants and professionals), costs, charges,
indemnities, and other Prepetition ABL Obligations (including, without limitation, Bank Product
Debt, as defined in the Prepetition ABL Credit Agreement) in each case incurred under (or
reimbursable pursuant to) or secured by the Prepetition ABL Loan Documents.  As of the Petition
Date, (1) ABL Cash Collateral (as defined below) in an amount equal to $91,449,240.35 was being
held on deposit in the Borrowing Base Cash Account (as defined in the Prepetition ABL Credit
Agreement) and (2) ABL Cash Collateral (as defined below) in an amount equal to $3,800,000
had been pledged to the Prepetition ABL Agent as security for certain Bank Product Debt owed to
Citizens Bank, N.A. and/or its affiliates (such amounts described in this sentence, collectively,
the "Existing ABL Cash Collateral Deposits");

(vi)     *Validity of Prepetition Secured Obligations*.   The Prepetition Secured
Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan
Parties, as applicable, enforceable in accordance with the respective terms of the relevant
documents, and no portion of the Prepetition Secured Obligations or any payment made to the

12

Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(vii)     *Validity, Perfection and Priority of Prepetition B-2 Liens*.  As of the Petition Date, pursuant to the Prepetition B-2 Loan Documents, the Prepetition B-2 Loan Parties granted to the Prepetition B-2 Agent, for the benefit of the Prepetition B-2 Secured Parties, a security interest in and continuing lien on (the "Prepetition B-2 Liens") substantially all of their respective assets and property (other than Excluded Assets (as defined in the Prepetition B-2 Loan Documents), collectively, the "Prepetition B-2 Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the Non-UST Tranche B Term Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition B-2 Priority Collateral"), subject only to any liens permitted by the Prepetition B-2 Loan Documents to be senior to the Prepetition B-2 Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition B-2 Permitted Senior Liens"); (ii) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the UST Tranche B Joint Collateral (as defined

in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Joint Collateral"), subject only to the *pari passu* liens of the Prepetition UST Tranche B Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition UST Tranche B Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition UST Tranche B Priority Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL Priority Collateral (as defined below), subject and subordinate only to the liens of the Prepetition ABL Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition ABL Priority Collateral;

(viii) *Validity, Perfection and Priority of Prepetition ABL Liens*.  As of the Petition Date, pursuant to the Prepetition ABL Loan Documents, the Prepetition ABL Loan Parties granted to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, a security interest in and continuing lien on (the "Prepetition ABL Liens" and, collectively with the Prepetition B-2 Liens, Prepetition UST Tranche A Liens, and Prepetition UST Tranche B Liens, the "Prepetition Liens") substantially all of their respective assets and property (other than Excluded Assets (as defined therein)) (collectively, the "Prepetition ABL Collateral" and, collectively with the Prepetition B-2 Collateral, Prepetition UST Tranche A Collateral, and Prepetition UST Tranche B Collateral, the "Prepetition Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for

14

the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), subject only to any liens permitted by the Prepetition ABL Loan Documents to be senior to the Prepetition ABL Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition ABL Permitted Senior Liens" and, collectively with the Prepetition B-2 Permitted Senior Liens, Prepetition UST Tranche A Permitted Senior Liens, and Prepetition UST Tranche B Permitted Senior Liens, the "Prepetition Permitted Senior Liens");[12] (ii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition B-2 Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition B-2 Priority Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and Prepetition UST Tranche B Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition Joint Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and Prepetition UST Tranche B Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition UST Tranche B Priority Collateral;

---

[12] For the avoidance of doubt, no reference to the "Prepetition Permitted Senior Liens" shall refer to or include the Prepetition Liens.

(ix)    *Waiver of Challenge*.  None of the Prepetition Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(x)    *No Control*.  None of the Prepetition Secured Parties or the DIP Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition Loan Documents;

(xi)    *No Claims or Causes of Action*.  No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Parties and each of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition Secured Party that is in existence as of the Petition Date; and

(xii)    *Release*.  Effective as of the date of entry of this Interim Order and subject in all respects to paragraph 19 hereof, each of the Debtors and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Secured Parties, the DIP Secured Parties, and each of their respective Representatives (solely in their capacities as such) (collectively, the "Released Parties"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts,

16

liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Prepetition Loan Documents, the DIP Facility, the DIP Loan Documents (including the DIP Term Sheet), the DIP Loans, the negotiation thereof, and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Interim Order; *provided* that the release set forth in this section shall not release (i) any claims against or liabilities of a Released Party that a court of competent jurisdiction determines by a final non-appealable order to have directly and primarily resulted from such Released Party's bad faith, fraud, gross negligence, or willful misconduct, or (ii) any DIP Secured Party(ies) from honoring its/their obligations to the Debtors under the DIP Loan Documents.

H.      *Findings Regarding DIP Financing and Use of Cash Collateral.*

(i)      Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the DIP Loan Parties to obtain financing pursuant to the DIP Loan Documents, including the DIP Term Sheet.

(ii)      The Debtors have demonstrated an immediate and critical need to obtain the DIP Loans and to use Prepetition Collateral (including Cash Collateral) in order to, among other things, maintain, administer, and preserve certain limited operations and maximize the value of their estates through an orderly winddown process of their businesses and comprehensive sale process for their assets.  Without the ability of the Debtors to obtain sufficient working capital and

liquidity through the proposed DIP Facility and the use of Cash Collateral as set forth in this Interim Order, the Debtors, their estates, and parties-in-interest would be immediately and irreparably harmed. Accordingly the Debtors have an immediate need to obtain the DIP Loans provided under the DIP Facility and to use Cash Collateral as set forth in this Interim Order to, among other things, maximize the value of the assets of the Debtors' estates to maximize the recovery to all creditors of the estates.

(iii)    The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents, including financing secured solely by lien on property of the Debtors and their estates that is not otherwise subject to a lien or secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. The Debtors are also unable to obtain secured credit without granting to the DIP Secured Parties the DIP Liens and the DIP Superpriority Claims (each as defined below) and incurring the Adequate Protection Obligations (as defined below) on the terms and subject to the conditions set forth in this Interim Order and in the DIP Loan Documents, including the DIP Term Sheet.

(iv)    Based on the DIP Motion, the First Day Declaration, the Kaldenberg Declaration, the Whittman Declaration, and the record and argument presented to the Court at the Interim Hearing, the terms of the DIP Facility, the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraph 14 of this Interim Order and with respect to the Prepetition UST Secured Parties as provided in the Interim UST Cash Collateral Order (collectively, the "Adequate Protection"), and the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Loan

18

Documents are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

(v)     This Interim Order, the DIP Facility, the Adequate Protection, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured Parties, and the Prepetition Secured Parties (each of whom acted in good faith in negotiating such documents), and all of the loans and other financial accommodations extended by the DIP Secured Parties and the Prepetition Secured Parties (as applicable) to the DIP Loan Parties under, in respect of, or in connection with, the DIP Facility and the DIP Loan Documents (including the granting of the Adequate Protection Liens (as defined below) and other adequate protections provided herein), shall be deemed to have been extended by the DIP Secured Parties in good faith, as that term is used in section 364(c) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and their respective successors and assigns) and such Prepetition Secured Parties (and their respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(vi)     The Postpetition B-2 Lenders have agreed to provide the Postpetition B-2 Loans for the benefit of the Debtors' estates, the other Prepetition Secured Parties, all holders of administrative expense claims against the Debtors, and all other creditors in lieu of exercising their rights to immediately seek relief from the automatic stay under section 362(d) of the Bankruptcy Code with respect to the Prepetition B-2 Priority Collateral (as defined below).

(vii)     The Prepetition Secured Parties and the DIP Secured Parties have acted in

good faith and without negligence, misconduct, or violation of public policy or law, in respect of

all actions taken by them in connection with or related in any way to negotiating, implementing,

documenting, or obtaining requisite approvals of this Interim Order, the DIP Facility and the use

of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate

Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, the

DIP Loan Documents (including the DIP Term Sheet), and all other documents related to and all

transactions contemplated by the foregoing.  Accordingly, without limitation to any other right to

indemnification, the Prepetition Secured Parties and the DIP Secured Parties shall maintain their

right of indemnification (as applicable) as provided in the Prepetition Loan Documents and the

DIP Loan Documents, as applicable, including, without limitation, Section 10.05 of the Prepetition

B-2 Credit Agreement and Section 15.2 of the Prepetition ABL Credit Agreement.

(viii)    The Prepetition Secured Parties are entitled to the Adequate Protection as

and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy

Code.  Based on the DIP Motion and on the record presented to the Court, the terms of the proposed

Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise of business

judgment and constitute reasonably equivalent value and fair consideration for the use of

Prepetition Collateral, including Cash Collateral.

(ix)     To the extent that their consent is required, the requisite Prepetition Secured

Parties have consented or are deemed to have consented to the use of Prepetition Collateral,

including Cash Collateral, and the priming of certain of the Prepetition Liens on the Prepetition

Collateral by the DIP Liens, in each case on the terms set forth in the DIP Term Sheet and this

Interim Order; *provided*, that, nothing in this Interim Order or the DIP Loan Documents shall

(x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of

20

Cash Collateral other than on the terms set forth in this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering Prepetition Collateral or Prepetition UST Collateral (whether senior or junior) other than as contemplated by this Interim Order (or, as applicable, the Interim UST Cash Collateral Order), or (z) prejudice, limit or otherwise impair the rights of any Prepetition Secured Party or Prepetition UST Secured Party to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the DIP Loan Parties to object to such relief, are hereby preserved, subject to the terms and conditions of the Prepetition Intercreditor Agreement.

(x)      The Debtors have prepared and delivered to the advisors to the Junior DIP Secured Parties, the Prepetition ABL Secured Parties, the B-2 Secured Parties, and the Prepetition UST Secured Parties an initial budget (the "Initial DIP Budget"), attached hereto as **Schedule 1**. The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each calendar week covered thereby.  The Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Loan Documents and with the approval of the Junior DIP Secured Parties, the B-2 Lenders, the Prepetition ABL Agent and the Prepetition UST Secured Parties (such approval not to be unreasonably withheld).  Each subsequent budget, once otherwise approved in accordance with the DIP Loan Documents and this Interim Order and subject to review and approval of the Junior DIP Lender, the B-2 Lenders, the Prepetition ABL Agent, and the Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld) shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget, an "Approved Budget").

21

(xi)     Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, upon entry of a final order providing for such relief, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

(xii)    The intercreditor and subordination provisions herein and in the other DIP Loan Documents are essential elements of the DIP Facility and the protections granted to the parties as consideration therefor and are immediately and irrevocably binding and enforceable.

I.       *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Absent the relief granted in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Facility and continued use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and the DIP Loan Documents (including the DIP Term Sheet), are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The DIP Motion and this Interim Order comply with the requirements of Bankruptcy Local Rule 4001-2.

J.       *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens*.  Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Secured Parties, or the Prepetition Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien.  For the avoidance of doubt, the right of a seller of goods to reclaim goods under

22

section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Senior Lien, and such right is expressly subject to the DIP Liens and the Prepetition Liens (each as defined herein). The Prepetition Liens and the DIP Liens are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens.

K.   *Intercreditor Agreement.*   Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement shall: (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties and Prepetition UST Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims or amounts payable in respect thereof), and (iii) not be deemed to be amended, altered or modified by the terms of this Interim Order, the Interim UST Cash Collateral Order, or the DIP Loan Documents (including the DIP Term Sheet), unless expressly set forth therein or herein, as applicable.

L.   Contemporaneous with the entry of this Interim Order, the Court is entering the Interim UST Cash Collateral Order granting the UST Adequate Protection (as defined in the Interim UST Cash Collateral Order) to the Prepetition UST Secured Parties.

Based upon the DIP Motion, the foregoing findings and conclusions, and the overall record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.   *Motion Granted.*   The DIP Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order. All objections to the Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby overruled on the merits.

2.   *Authorization of the DIP Financing and the DIP Loan Documents.*

23

(a)     The DIP Loan Parties are hereby authorized to execute, deliver, enter into and perform all of their obligations under the DIP Loan Documents, including the DIP Term Sheet, and perform such other acts as may be necessary, appropriate or desirable in connection therewith. Once executed, the DIP Credit Agreement and the B-2 Amendment (if any) shall be deemed effective as of the Closing Date (as defined in the DIP Term Sheet).  The Borrower is hereby authorized upon entry of this Interim Order to borrow up to and draw $60 million (the "Initial Draw") pursuant to the terms and conditions of the DIP Term Sheet and the Postpetition B-2 Credit Agreement, as modified by this Interim Order and the DIP Term Sheet (including the Documentation Principles) (and, without further order or approval of this Court, the Second Draw on such date that the Second Draw becomes available pursuant to the terms and provisions of the DIP Term Sheet), and the DIP Guarantors are hereby authorized to guarantee the Borrower's obligations on account of the Initial Draw (and, if applicable, without further order or approval of this Court, the Second Draw), subject to any limitations set forth in the DIP Loan Documents, including the DIP Term Sheet.  The proceeds of the DIP Loans shall be used for all purposes permitted under the DIP Loan Documents and the Interim Order, in each case subject to and in accordance with the Approved Budget (subject to any Permitted Variances).

(b)     In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party is authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents, execute or record pledge and security agreements, mortgages, financing statements and other similar documents, if any, and, subject to the provisions of this Interim Order (or the Interim UST Cash Collateral Order, as applicable) to pay all DIP Obligations as and when such amounts become due and payable, including fees, expenses and indemnities in connection with or that may be reasonably required,

24

necessary, or desirable in connection with the DIP Financing, including, without limitation:

(i)  the execution and delivery of, and performance under, each of the DIP Loan Documents, including the DIP Term Sheet;

(ii)  the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Loan Documents, in each case, in such form as the DIP Secured Parties may accept and with any such other approvals as required by the DIP Loan Documents, it being understood that no further approval of this Court, unless expressly set forth herein, shall be required for any such amendments, waivers, consents or other modifications or the payment of any fees, including attorneys', accountants', appraisers' and financial advisors' fees, and other expenses, charges, costs, indemnities and other like obligations in connection therewith) that do not shorten the scheduled maturity of the DIP Facility, increase the aggregate DIP Commitments, increase the rate of interest or fees payable thereunder, or release any DIP Liens.  Updates, modifications, and supplements to the Approved Budget in accordance with this Interim Order and the DIP Loan Documents shall not require any further approval of this Court, but, for the avoidance of doubt, shall be subject to review and approval by the DIP Secured Parties, the B-2 Lenders, the Prepetition ABL Agent, and the Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld);

(iii)  the non-refundable payment to any of the DIP Secured Parties of all principal, interest, and fees in connection with the DIP Facility, including any amendment fees, premiums, servicing fees, audit fees, liquidator fees, structuring fees, arrangement fees, administrative agent's, collateral agent's or security trustee's fees, upfront fees, closing fees, commitment premiums, exit fees, closing date fees, prepayment premium or fees, or agency fees, and any amounts due in respect of any indemnification and expense reimbursement obligations,

25

including, without limitation, reasonable and documented fees and out-of-pocket expenses of professionals retained by, or on behalf of, any of the DIP Secured Parties (including, without limitation, those of Quinn Emanuel Urquhart & Sullivan, LLP, Ropes & Gray LLP, Province, LLC, White & Case LLP, GrayRobinson, P.A., Holland & Knight LLP, and any local legal counsel or other advisors in any foreign jurisdiction (provided no more than one local legal counsel or other advisor in any foreign jurisdiction for each of the Junior DIP Lender and the Postpetition B-2 Lenders), and any other advisors of the DIP Secured Parties as permitted under the DIP Loan Documents), in each case, as provided in the DIP Loan Documents (collectively, the "DIP Fees and Expenses"), without the need to file retention or fee applications; the payment of the foregoing amounts shall be irrevocable, and shall be deemed to have been approved upon entry of this Interim Order, whether any such obligations arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

3.    *DIP Obligations.*  Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents, including the DIP Term Sheet, shall constitute legal, valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable against each DIP Loan Party and their estates in accordance with their respective terms and this Interim Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").   Upon

execution and delivery of the DIP Term Sheet, the DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the DIP Loan Parties to any of the DIP Secured Parties, in such capacities, in each case, under the DIP Loan Documents (including the DIP Term Sheet) and this Interim Order, including all principal, interest, costs, fees, expenses, premiums, indemnities and other amounts. The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations. Except as (and solely to the extent) expressly provided herein, no obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Documents to the Junior DIP Agent, the Postpetition B-2 Agent, and/or the other DIP Secured Parties shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.    *Carve-Out.*

(a)    As used herein, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without

regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Junior DIP Agent or the Postpetition B-2 Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first business day following delivery by the Junior DIP Agent or the Postpetition B-2 Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Junior DIP Agent or the Postpetition B-2 Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, the Prepetition ABL Agent and counsel thereto, counsel to the Junior DIP Agent or the Postpetition B-2 Agent (whichever did not deliver the Carve-Out Trigger Notice), and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined in the DIP Term Sheet) and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(b)     Delivery of Weekly Fee Statements. Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following

28

entry of this Interim Order, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided*, that, within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same day received to the Junior DIP Agent and the B-2 Agent). If any Professional Person fails to deliver a Weekly Statement within three (3) calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve-Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

(c)     Carve-Out Reserves.

(i)     Commencing with the week ended August 18, 2023, and on or before the Thursday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and

29

any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of (a) the greater of (i) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered on the immediately prior Wednesday to the Debtors, the Junior DIP Agent, and the B-2 Agent, and (ii) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (b) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the week occurring after the most recent Calculation Date.  The Debtors shall deposit and hold such amounts in a segregated account designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust (the "<u>Funded Reserve Account</u>") to pay such Allowed Professional Fees prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)     On the day on which a Carve-Out Trigger Notice is given by the Junior DIP Agent or the Postpetition B-2 Agent to the Debtors with a copy to counsel to the Creditors' Committee and counsel to the Prepetition ABL Agent (the "<u>Termination Declaration Date</u>"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust to pay such then unpaid Allowed Professional Fees (the "<u>Pre-Carve-Out Trigger Notice Reserve</u>") prior to any and all other claims.  On the Termination Declaration Date, the Carve-Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve-Out Trigger Notice

Reserve, to fund a reserve in an amount equal to the Post-Carve-Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve-Out Trigger Notice Cap (the "Post-Carve-Out Trigger Notice Reserve" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "Carve-Out Reserves") prior to any and all other claims. All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "Pre-Carve-Out Amounts"), but not, for the avoidance of doubt, the Post-Carve-Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Junior DIP Agent and the Postpetition B-2 Agent for the benefit of the applicable DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties and the Prepetition UST Secured Parties in accordance with their rights and priorities as set forth in this Interim Order and the Interim UST Cash Collateral Order. All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "Post-Carve-Out Amounts"), and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Junior DIP Agent and the Postpetition B-2 Agent for the benefit of the applicable DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties and the Prepetition UST Secured Parties in accordance with their rights and priorities as set forth in this Interim Order and the Interim UST Cash Collateral Order. Notwithstanding anything to the contrary in the DIP

31

Loan Documents, or this Interim Order, if either of the Carve-Out Reserves is not funded in full in

the amounts set forth in this paragraph 4, then, any excess funds in one of the Carve-Out Reserves

following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively,

shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth in this

paragraph 4, prior to making any payments to the Junior DIP Agent, the Postpetition B-2 Agent,

or the Prepetition Secured Parties and the Prepetition UST Secured Parties, as applicable.

Notwithstanding anything to the contrary in the DIP Loan Documents or this Interim Order,

following delivery of a Carve-Out Trigger Notice, the Junior DIP Agent, the Postpetition B-2

Agent, the Prepetition UST Agent, and the Prepetition Agents shall not sweep or foreclose on cash

(including cash received as a result of the sale or other disposition of any assets) of the Debtors

until the Carve-Out Reserves have been fully funded, but shall have a security interest in any

residual interest in the Carve-Out Reserves, with any excess paid to the Junior DIP Agent and the

Postpetition B-2 Agent for application in accordance with the DIP Loan Documents, this Interim

Order, and the Interim UST Cash Collateral Order. Further, notwithstanding anything to the

contrary in this Interim Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall

not constitute Loans (as defined in the DIP Loan Documents) or increase or reduce the DIP

Obligations, (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional

Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Initial Budget, any

subsequent Approved Budget, Carve-Out, Post-Carve-Out Trigger Notice Cap, Carve-Out

Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed

Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding

anything to the contrary in this Interim Order, the DIP Facility, or in any Prepetition Loan

Document, the Carve-Out shall be senior to all liens and claims securing the DIP Facility, the

Adequate Protection Liens, the ABL 507(b) Claims (as defined below), B-2 507(b) Claims (as defined below), UST Tranche A 507(b) Claims, UST Tranche B 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(d)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(e)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the Junior DIP Agent, the Junior DIP Lender, the Postpetition B-2 Secured Parties, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Junior DIP Agent, the Junior DIP Lender, the Postpetition Secured Parties, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    <u>Payment of Carve-Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

33

(g)     Reservation of Rights.  Nothing in this Interim Order shall be construed as a waiver of any right of the DIP Secured Parties or any of the Prepetition Secured Parties to object to any fee statement, interim application, or monthly application issued or filed by any Professional Persons.

5.     *Junior DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, and except as provided for herein or in the DIP Loan Documents, all of the Junior DIP Obligations shall constitute allowed superpriority administrative expense claims (the "Junior DIP Superpriority Claims") against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties (but shall be: (i) with respect to the Prepetition UST Tranche B Priority Collateral, the Prepetition UST Tranche B Joint Collateral, and the Prepetition ABL Priority Collateral, junior to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens of the Prepetition UST Secured Parties (*i.e.*, the Prepetition UST Liens), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof of (in such order of priority as set forth herein and in the Prepetition Intercreditor Agreement), the Adequate Protection Liens of the Prepetition UST Secured Parties (*i.e.*, the UST Adequate Protection Liens), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof, and the 507(b) Claims of the Prepetition UST Secured Parties (*i.e.*, the UST 507(b) Claims), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof, and (D) the Postpetition B-2 Liens (as defined below); and (ii) with respect to the Prepetition B-2 Priority Collateral, shall be junior only to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, (D) the Postpetition B-2 Liens, and (E) the B-2 Adequate Protection Liens, and otherwise shall be senior in all respects to the Prepetition ABL Secured Parties' and the

34

Prepetition UST Secured Parties' Prepetition Liens, Adequate Protection Liens, and 507(b) Claims with respect thereto), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding (x) the Carve-Out Reserves and amounts held therein other than the DIP Secured Parties' reversionary interest therein and (y) claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions"), but including (upon entry of the Final Order) any proceeds or property recovered as a result of any Avoidance Actions (but not the Avoidance Actions themselves), whether by judgment, settlement or otherwise (the "Avoidance Proceeds")), subject only to the Carve-Out and the Canadian Priority Charges.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6. *Postpetition B-2 Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, and except as provided for herein or in the DIP Loan Documents, all of the Postpetition B-2 Obligations shall constitute allowed superpriority administrative expense claims (the "Postpetition B-2 Superpriority Claims," and, together with the Junior DIP Superpriority Claims, the "DIP Superpriority Claims") against the DIP Loan Parties on a joint and several basis

35

(without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided* that: (i) with respect to the Prepetition UST Tranche B Priority Collateral, the Prepetition UST Tranche B Joint Collateral, and the Prepetition ABL Priority Collateral, the Postpetition B-2 Superpriority Claims shall be junior, in the following order, to (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Prepetition Liens of the Prepetition UST Secured Parties (*i.e.*, the Prepetition UST Liens), the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof of (in such order of priority as set forth herein and in the Prepetition Intercreditor Agreement), the Adequate Protection Liens of the Prepetition UST Secured Parties (*i.e.*, the UST Adequate Protection Liens), the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof, and the 507(b) Claims of the Prepetition UST Secured Parties (*i.e.*, the UST 507(b) Claims), the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof; and (ii) with respect to the Prepetition B-2 Priority Collateral, the Postpetition B-2 Superpriority Claims shall be junior only, in the following order, to (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, (D) the Postpetition B-2 Liens, and (E) the B-2 Adequate Protection Liens, and otherwise shall be senior in all respects to the Prepetition ABL Secured Parties' and the Prepetition UST Secured Parties' Prepetition Liens, Adequate Protection Liens, and 507(b) Claims with respect thereto). The Postpetition B-2

Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding (x) the Carve-Out Reserves and amounts held therein other than the DIP Secured Parties' reversionary interest therein and (y) Avoidance Actions, but including (upon entry of the Final Order) the Avoidance Proceeds), subject only to the Carve-Out and the Canadian Priority Charges. The Postpetition B-2 Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

7. *Junior DIP Liens*. As security for the Junior DIP Obligations, effective and automatically properly perfected on the date this Interim Order is entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the Junior DIP Agent of, or over, any Collateral, without any further action by the Junior DIP Secured Parties, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "Junior DIP Liens") are hereby granted to the Junior DIP Agent for the benefit of the Junior DIP Secured Parties (all property identified in clauses (a) through (f) below being collectively referred to as the "Junior DIP Collateral," and, together with the Prepetition Collateral, the "Collateral"):

(a) *Liens on Unencumbered Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in (subject and subordinate only to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties, other than Excluded Property, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, was not subject to (i) a valid, perfected

37

and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date

that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy

Code, and also excluding the Avoidance Actions and the Carve-Out Reserves (and any amounts

held therein), but including (upon entry of the Final Order) Avoidance Proceeds (collectively, the

"Unencumbered Property," and such liens, the "DIP Unencumbered Property Liens")).

(b)     *Liens on DIP Proceeds Account.*  Pursuant to section 364(c)(2) of the

Bankruptcy Code, a first priority lien on and security interest in the proceeds of the Junior DIP

Facility in the DIP Proceeds Account.

(c)     *Junior Liens Priming Certain Prepetition Secured Parties' Liens on*

*Prepetition B-2 Priority Collateral.*  Pursuant to sections 364(c)(3) and 364(d)(1) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior priority priming

security interest and lien (subject and subordinate only to, in the following order, (1) the Carve-

Out, (2) the Canadian Priority Charges, (3) the Prepetition B-2 Liens, (4) the B-2 Adequate

Protection Liens, and (5) the Postpetition B-2 Liens) on the Prepetition B-2 Priority Collateral) all

tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same

nature, scope, and type as the Prepetition B-2 Priority Collateral, regardless of where located,

which security interest and lien on the Prepetition B-2 Priority Collateral shall prime and be senior

to the Prepetition ABL Liens, the ABL Adequate Protection Liens, the Prepetition UST Tranche

B Liens, the Prepetition UST Tranche A Liens, the UST Tranche B Adequate Protection Liens and

the UST Tranche A Adequate Protection Liens (the "Junior DIP Priming B-2 Second Liens").  For

the avoidance of doubt, notwithstanding anything herein to the contrary, the Junior DIP Priming

B-2 Second Liens shall be (A) priming and senior in all respects to the Prepetition Liens and the

Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST

38

Secured Parties with respect to the Prepetition B-2 Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(d)     *Junior Liens on Prepetition ABL Priority Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior priority security interest in, and lien upon (subject and subordinate in all respects to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties (in such order of priority as set forth in the Prepetition Intercreditor Agreement)), all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the Prepetition ABL Priority Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the Prepetition ABL Priority Collateral) the Prepetition ABL Liens, the ABL Adequate Protection Liens, the Prepetition B-2 Liens, the B-2 Adequate Protection Liens, the Postpetition B-2 Liens, the Prepetition UST Tranche B Liens, the UST Tranche B Adequate Protection Liens, the Prepetition UST Tranche A Liens, and the UST Tranche A Adequate Protection Liens (the "DIP ABL Junior Liens").  Notwithstanding anything herein to the contrary, the DIP ABL Junior Liens shall be (A) junior in all respects to the Prepetition Liens (as set forth in the Prepetition Intercreditor Agreement) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and junior to the Postpetition B-2 Liens, in each case on the Prepetition ABL Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section

39

551 of the Bankruptcy Code.

(e)     *Junior Liens on Prepetition UST Tranche B Priority Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in, and lien upon, (subject only to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties (in such order of priority as set forth in the Prepetition Intercreditor Agreement with respect to the Prepetition UST Tranche B Priority Collateral and the Postpetition B-2 Liens) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the Prepetition UST Tranche B Priority Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the Prepetition UST Tranche B Priority Collateral) the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties, and to the Postpetition B-2 Liens (the "Junior DIP UST Tranche B Priority Collateral Junior Liens").  Notwithstanding anything herein to the contrary, the Junior DIP UST Tranche B Priority Collateral Junior Liens shall be (A) junior in all respects to the Prepetition Liens (as set forth in the Prepetition Intercreditor Agreement) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and also junior to the Postpetition B-2 Liens, in each case on the Prepetition UST Tranche B Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the

Bankruptcy Code.

(f)      *Junior Liens on UST Tranche B Joint Collateral*.   Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in, and lien upon, (subject only to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties (in such order of priority as set forth in the Prepetition Intercreditor Agreement with respect to the UST Tranche B Joint Collateral)) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the UST Tranche B Joint Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the UST Tranche B Joint Collateral), the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties, and to the Postpetition B-2 Liens (the "<u>DIP UST Tranche B Joint Collateral Junior Liens</u>"). Notwithstanding anything herein to the contrary, the DIP UST Tranche B Joint Collateral Junior Liens shall be (A) junior in all respects to the Prepetition Liens (as set forth in the Prepetition Intercreditor Agreement) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and junior to the Postpetition B-2 Liens, in each case on the Prepetition UST Tranche B Joint Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(g)      *Liens Junior to Certain Other Liens*.   Pursuant to section 364(c)(3) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected junior security interest in, and lien upon, all tangible and intangible prepetition and postpetition property of the DIP Loan Parties that, on or as of the Petition Date, is subject to Prepetition Permitted Senior Liens, which shall be, except with respect to the Junior DIP Priming B-2 Second Liens and the DIP Unencumbered Property Liens, junior and subordinate to the liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties in such order of priority as set forth in the Prepetition Intercreditor Agreement with respect to the Prepetition Collateral. For the avoidance of doubt, the Junior DIP Liens shall prime the Prepetition ABL Liens, the Prepetition UST Tranche B Liens, and the Prepetition UST Tranche A Liens with respect to the Prepetition B-2 Priority Collateral (and, for the avoidance of doubt, the Junior DIP Liens with respect to the Prepetition B-2 Priority Collateral shall only be junior to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, (3) the Postpetition B-2 Liens, (4) the Prepetition B-2 Liens, and (5) the B-2 Adequate Protection Liens), and shall otherwise, with respect to each of the Prepetition ABL Priority Collateral, the Prepetition UST Tranche B Priority Collateral, and the Prepetition UST Tranche B Joint Collateral, be junior in lien priority to the Prepetition Secured Parties (including the Prepetition UST Secured Parties) (which lien priority(ies), as applicable, shall remain governed by the Prepetition Intercreditor Agreement) and, unless otherwise set forth herein, *pari passu* with the Postpetition B-2 Liens.

(h)     *No Senior Liens.* The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code unless otherwise provided in the DIP Loan Documents or this Interim Order, and (B) unless otherwise provided for in the DIP Loan Documents or in this Interim Order, any liens or security interests arising after the

42

Petition Date, (other than the Postpetition B-2 Liens as set forth herein), including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code unless otherwise provided for in the DIP Loan Documents or in this Interim Order; *provided*, that, for the avoidance of doubt, the Junior DIP Liens, unless otherwise provided herein, shall be subject and subordinate to the Prepetition Liens and the Adequate Protection Liens of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties, as applicable, and the Postpetition B-2 Liens, in each case as set forth in the foregoing paragraphs and the DIP Loan Documents; *provided*, *further*, that, for the avoidance of doubt, under the DIP Facility and this Interim Order, the DIP Liens shall prime all other liens on the DIP Proceeds Account, and be senior to the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition UST Tranche B Secured Parties, and the Prepetition UST Tranche A Secured Parties (but shall be junior and subordinate to the Carve-Out, the Canadian Priority Charges, the Postpetition B-2 Liens, the Prepetition B-2 Liens, and the B-2 Adequate Protection Liens) with respect to the Prepetition B-2 Priority Collateral, as set forth herein and in the DIP Loan Documents.

(i)      *Additional Junior DIP Commitment*.   Notwithstanding anything to the contrary contained herein, or in the Interim UST Cash Collateral Order or the DIP Loan Documents to the contrary, the claims and liens in respect of the Additional Junior DIP Commitment (if any) shall not prime any prepetition or postpetition claims or liens of the Prepetition Secured Parties or the Prepetition UST Secured Parties, and shall be junior and subordinated (including in right of

payment) in all respects to the prepetition and postpetition claims and liens of the Prepetition Secured Parties and the Prepetition UST Secured Parties, including in respect of any adequate protection claims and liens granted under this Interim Order and the Interim UST Cash Collateral Order, including the Adequate Protection Liens, the UST Adequate Protection Liens, the Adequate Protection Obligations, the UST Adequate Protection Obligations, the 507(b) Claims, and the UST 507(b) Claims, including, for the avoidance of doubt, to the payment and enforcement rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties, which rights with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth in this Interim Order and the other DIP Loan Documents.

8.      *Postpetition B-2 Liens*.  As security for the Postpetition B-2 Obligations, effective and automatically properly perfected on the date this Interim Order is entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the B-2 Agent of, or over, any Collateral, without any further action by the Postpetition B-2 Secured Parties, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "Postpetition B-2 Liens" and, together with the Junior DIP Liens, the "DIP Liens") are hereby granted to the Postpetition B-2 Agent for the benefit of the Postpetition B-2 Secured Parties:

(a)      *Liens on DIP Proceeds Account*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in the proceeds of the Postpetition B-2 Facility in the DIP Proceeds Account.

(b)      *Liens on Prepetition Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior priority priming security interest and lien (subject and subordinate only to, in the following order,

44

(1) the Carve-Out and (2) the Canadian Priority Charges) on the Prepetition Collateral with the same priority as the Prepetition B-2 Liens on such Prepetition Collateral (as set forth in the Prepetition Intercreditor Agreement and herein), including, for the avoidance of doubt, first priority liens on all Prepetition B-2 Priority Collateral, *pari passu* with the Prepetition B-2 Liens on such Prepetition Collateral, and senior to the Junior DIP Liens on such Prepetition Collateral, and to the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties on such Prepetition B-2 Priority Collateral.

(c)    *No Senior Liens.*  The Postpetition B-2 Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code unless otherwise provided in the DIP Loan Documents or this Interim Order, and (B) unless otherwise provided for in the DIP Loan Documents or in this Interim Order, any liens or security interests arising after the Petition Date (other than the Junior DIP Liens as and to the extent set forth herein), including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code unless otherwise provided for in the DIP Loan Documents or in this Interim Order; *provided*, that, for the avoidance of doubt, the Prepetition B-2 Liens, unless otherwise provided herein, shall be subject and subordinate to the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties with respect to the Prepetition ABL Priority Collateral and the Prepetition UST Tranche B Collateral, as applicable, to the extent set forth in the foregoing paragraphs and the DIP Loan Documents; *provided*, *further*, that, for the

45

avoidance of doubt, under the Postpetition B-2 Facility and this Interim Order, the Postpetition B-2 Liens shall prime and be senior to the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition UST Tranche B Secured Parties, the Prepetition UST Tranche A Secured Parties, and shall be senior to the Junior DIP Liens (but shall be junior and subordinate to the Carve-Out and the Canadian Priority Charges), in each case with respect to the Prepetition B-2 Priority Collateral, as set forth herein and in the DIP Loan Documents.

9.      *Protection of DIP Secured Parties' Rights.*

(a)      Except as and to the extent set forth in clauses (b)-(d) immediately below, to the extent any Prepetition Secured Party (or any Prepetition UST Secured Party) has possession of, or control over, any Prepetition Collateral or DIP Collateral, or has been listed as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, such Prepetition Secured Party (and any Prepetition UST Secured Party) shall be deemed to have such possession or be so listed or have such possession or control as a gratuitous bailee and/or gratuitous agent for the benefit of the Junior DIP Secured Parties, and such Prepetition Secured Party (including any such Prepetition UST Secured Party) shall comply with the instructions of the Junior DIP Agent with respect to any of the foregoing.

(b)      So long as there are any B-2 Obligations, Postpetition B-2 Superpriority Claims or B-2 507(b) Claims outstanding and until all B-2 Obligations, Postpetition B-2 Superpriority Claims and B-2 507(b) Claims have been indefeasibly paid in full in cash, the B-2 Secured Parties shall have the exclusive right to exercise remedies with respect to the Prepetition B-2 Priority Collateral and the Junior DIP Secured Parties shall not exercise any remedies with respect to the Prepetition B-2 Priority Collateral, and, as among the Prepetition Facilities, the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Secured

46

Parties) with respect to the Prepetition B-2 Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement as if (following payment in full in cash of all B-2 Obligations, Postpetition B-2 Superpriority Claims and B-2 507(b) Claims but prior to the DIP Obligations being satisfied in full) the Junior DIP Agent was party thereto as a Tranche B-2 Term Agent (as defined in the Prepetition Intercreditor Agreement); *provided* that, notwithstanding the foregoing (and these clauses (b)-(d)), nothing contained herein (including these clauses (b)-(d)) shall be construed to prevent the Junior DIP Lender or the Junior DIP Agent from (i) filing a claim or statement of interest with respect to the outstanding obligations owed to it in the Chapter 11 Cases, (ii) taking any action (not adverse to the priority status of any other Prepetition Agent or any Prepetition Secured Party (including any Prepetition UST Secured Party), in order to create, perfect, preserve or protect (but not enforce) its lien, or (iii) filing any necessary or responsive pleadings in opposition to any motion, adversary proceeding, or other pleading filed by any person objecting to or otherwise seeking disallowance of the claim or lien of any DIP Lender or the DIP Agent (such actions in clauses (i) through (iii), the "Permitted Actions").

(c)     So long as there are any Prepetition ABL Obligations or ABL 507(b) Claims outstanding and until all Prepetition ABL Obligations and ABL 507(b) Claims have been, solely with respect to the Prepetition ABL Priority Collateral, indefeasibly paid in full in cash, including the cash collateralization of all issued and outstanding letters of credit, the Prepetition ABL Secured Parties shall have the exclusive right to exercise remedies with respect to the Prepetition ABL Priority Collateral and the DIP Secured Parties shall not exercise any remedies (*provided*, they shall be permitted to take Permitted Actions) with respect to the Prepetition ABL Priority Collateral until the Prepetition Facilities have been indefeasibly paid in full in cash (including the cash collateralization of all issued and outstanding letters of credit of the Prepetition ABL Secured

47

Parties), and, as among the Prepetition Facilities, the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) with respect to the Prepetition ABL Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement.

(d)     So long as there are any Prepetition UST Tranche B Obligations or UST Tranche B 507(b) Claims outstanding and until all Prepetition UST Tranche B Obligations and UST Tranche B 507(b) Claims have been, solely with respect to the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, indefeasibly paid in full in cash, the Prepetition UST Tranche B Secured Parties shall have the exclusive right to exercise remedies with respect to the Prepetition UST Tranche B Priority Collateral and the Prepetition Joint Collateral (*provided*, that, with respect to the Prepetition Joint Collateral, the Prepetition B-2 Secured Parties, if any Prepetition B-2 Obligations or B-2 507(b) Claims remain outstanding, shall maintain their enforcement rights as set forth in the Prepetition Intercreditor Agreement) and the DIP Secured Parties shall not exercise any remedies (*provided*, they shall be permitted to take Permitted Actions) with respect to the Prepetition UST Tranche B Priority Collateral and the Prepetition Joint Collateral until the Prepetition Facilities have been indefeasibly paid in full in cash, and, as among the Prepetition Facilities, the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Tranche B Secured Parties) with respect to the Prepetition Joint Collateral and the Prepetition UST Tranche B Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement.

(e)     Except as set forth in clauses (b)-(d) immediately above or as otherwise set forth in this Interim Order (including paragraph 13) with respect to the Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, and Prepetition UST Tranche B Priority Collateral, any proceeds of Prepetition Collateral received by any Prepetition Secured

48

Party (including any Prepetition UST Secured Party), whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the Junior DIP Agent for the benefit of the Junior DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. The Junior DIP Agent is hereby authorized to make any such endorsements as agent for the applicable Prepetition Secured Parties (including the appliable Prepetition UST Secured Parties). This authorization is coupled with an interest and is irrevocable.

(f) The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except (i) as otherwise permitted by the DIP Loan Documents (including the DIP Term Sheet) or (ii) in the case of any Prepetition ABL Priority Collateral, UST Tranche B Priority Collateral, and UST Tranche B Joint Collateral, pursuant to an order of the Court.

(g) Upon the occurrence and during the continuation of an Event of Default that has not been waived by the Junior DIP Lender under the DIP Term Sheet (or applicable DIP Loan Documents) and following delivery of written notice (a "Termination Notice") (which may be by e-mail) on not less than five (5) calendar days' notice (such five (5) calendar day period, the "Junior DIP Agent Remedies Notice Period") to lead restructuring counsel to the Debtors, lead restructuring counsel to the Postpetition B-2 Agent, lead restructuring counsel to each of the Prepetition Agents, lead counsel to the Creditors' Committee, counsel to the Prepetition UST Secured Parties, and the U.S. Trustee (the "Remedies Notice Parties"), the Junior DIP Agent may (and any automatic stay otherwise applicable to the Junior DIP Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this

49

Interim Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit the Junior DIP Agent to take any or all of the following actions, at the same time or different times, unless the Court orders otherwise (*provided*, that, during the Junior DIP Agent Remedies Notice Period, the Debtors, the Creditors' Committee and/or any party in interest shall be entitled to seek an emergency hearing with the Court and the rights of the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties and the Prepetition Secured Parties (including the Prepetition UST Secured Parties) are fully preserved) (*provided*, *further*, that, if a request for such hearing is made prior to the end of the Junior DIP Agent Remedies Notice Period, then the Junior DIP Agent Remedies Notice Period shall be continued until the Court hears at its earliest availability and rules with respect thereto): (a) immediately terminate and/or revoke the Debtors' right under this Interim Order and any other DIP Loan Documents to use any Cash Collateral (subject to the Carve-Out and related provisions and the Canadian Priority Charges), (b) terminate the Junior DIP Facility and any DIP Loan Document as to any future liability or obligation of the Junior DIP Secured Parties but without affecting any of the Junior DIP Obligations or the Junior DIP Liens securing such Junior DIP Obligations; (c) declare all Junior DIP Obligations to be immediately due and payable; (d) deliver a Carve-Out Trigger Notice; and (e) invoke the right to charge interest at the default rate under the DIP Loan Documents. Upon delivery of such Termination Notice by the Junior DIP Agent, without further notice or order of the Court, subject only to the last sentence of paragraph 9(g), the Junior DIP Secured Parties', the Postpetition B-2 Secured Parties' and the Prepetition Secured Parties' consent to use Cash Collateral and the Debtors' ability to incur Additional Junior DIP Obligations hereunder will automatically terminate and the Junior DIP Secured Parties will have no obligation to provide any Junior DIP Loans or other financial accommodations. As soon as

50

reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

(h)     Immediately following the occurrence of an Event of Default and the delivery of the Termination Notice, subject to the Junior DIP Agent Remedies Notice Period, the Junior DIP Secured Parties shall be authorized to, subject to the Prepetition Intercreditor Agreement, the terms and provisions set forth in this Interim Order, and the Carve-Out and related provisions and the Canadian Priority Charges: (a) freeze monies or balances in the Debtors' accounts (unless such monies constitute Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral); (b) immediately set-off any and all amounts in accounts maintained by the Debtors with, or subject to the control of, the Junior DIP Agent or the Junior DIP Secured Parties against the Junior DIP Obligations (unless such amounts constitute Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), (c) enforce any and all rights against the Junior DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), including, without limitation, foreclosure on all or any portion of the Junior DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), occupying the Debtors' premises, sale or disposition of the Junior DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral); and (d) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Documents (including the DIP Term Sheet) or applicable law (other than

51

with respect to Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral). If the Junior DIP Secured Parties are not prohibited by the Court from taking any enforcement action with respect to the Junior DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), the Debtors shall cooperate with the Junior DIP Secured Parties in their efforts to enforce their security interest in the Junior DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such Junior DIP Secured Parties from enforcing their security interests in the Junior DIP Collateral. During the Junior DIP Agent Remedies Notice Period, the Debtors may use the proceeds of the Junior DIP Facility to the extent drawn prior to the occurrence of an Event of Default and Cash Collateral to make payments, in each case, solely in accordance with the Approved Budget and the terms of the DIP Loan Documents and to the extent necessary to avoid immediate and irreparable harm to the Collateral and protection and preservation thereof.

(i)     Upon the occurrence and during the continuation of an Event of Default that has not been waived by the B-2 Lenders under the DIP Term Sheet (or applicable DIP Loan Documents) and following delivery of a Termination Notice (which may be by e-mail) on not less than five (5) calendar days' notice (such five (5) calendar day period, the "B-2 Agent Remedies Notice Period") to the Remedies Notice Parties, the Junior DIP Agent, and counsel thereto, the B-2 Agent may (and any automatic stay otherwise applicable to the Junior DIP Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the

52

terms of this Interim Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit the B-2 Agent to take any or all of the following actions, at the same time or different times, unless the Court orders otherwise (*provided*, that, during the B-2 Agent Remedies Notice Period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court and the rights of the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties and the Prepetition Secured Parties (including the Prepetition UST Secured Parties) are fully preserved) (*provided*, *further*, that, if a request for such hearing is made prior to the end of the B-2 Agent Remedies Notice Period, then the B-2 Agent Remedies Notice Period shall be continued until the Court hears at its earliest availability and rules with respect thereto): (a) immediately terminate and/or revoke the Debtors' right under this Interim Order and any other DIP Loan Documents to use any Cash Collateral (subject to the Carve-Out and related provisions and the Canadian Priority Charges), (b) terminate the Postpetition B-2 Facility and any DIP Loan Document as to any future liability or obligation of the Postpetition B-2 Secured Parties but without affecting any of the Postpetition B-2 Obligations or the Postpetition B-2 Liens securing such B-2 Obligations; (c) declare all Postpetition B-2 Obligations to be immediately due and payable; (d) deliver a Carve-Out Trigger Notice; and (e) invoke the right to charge interest at the default rate under the DIP Loan Documents. Upon delivery of such Termination Notice by the B-2 Agent, without further notice or order of the Court, subject only to the last sentence of paragraph 9(j), the Junior DIP Secured Parties', the Postpetition B-2 Secured Parties' and the Prepetition Secured Parties' consent to use Cash Collateral and the Debtors' ability to incur additional Postpetition B-2 Obligations hereunder will automatically terminate and the B-2 Secured Parties will have no obligation to provide any Postpetition B-2 Loans or other financial accommodations.

As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

(j)     Immediately following the occurrence of an Event of Default and the delivery of the Termination Notice, subject to the B-2 Agent Remedies Notice Period, the B-2 Secured Parties shall be authorized to, subject to the Prepetition Intercreditor Agreement, the terms and provisions set forth in this Interim Order, and the Carve-Out and related provisions and the Canadian Priority Charges: (a) freeze monies or balances in the Debtors' accounts (unless such monies constitute Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral); (b) immediately set-off any and all amounts in accounts maintained by the Debtors with, or subject to the control of, the B-2 Agent or the B-2 Secured Parties against the B-2 Obligations (unless such amounts constitute Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), (c) enforce any and all rights against the Prepetition Collateral (other than Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), including, without limitation, foreclosure on all or any portion of the Prepetition Collateral (other than Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), occupying the Debtors' premises, sale or disposition of the Prepetition Collateral (other than Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral); and (d) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Documents (including the DIP Term Sheet) or applicable law (other than with respect to Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral).  If the B-2 Secured Parties are not prohibited by the Court from taking any

enforcement action with respect to the Prepetition Collateral (other than Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), the Debtors shall cooperate with the B-2 Secured Parties in their efforts to enforce their security interest in the Prepetition Collateral (other than Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such B-2 Secured Parties from enforcing their security interests in the Prepetition Collateral.  During the Junior DIP Agent Remedies Notice Period, the Debtors may use the proceeds of the Junior DIP Facility to the extent drawn prior to the occurrence of an Event of Default and Cash Collateral to make payments, in each case, solely in accordance with the Approved Budget and the terms of the DIP Loan Documents and to the extent necessary to avoid immediate and irreparable harm to the Prepetition Collateral and protection and preservation thereof.

(k)     Upon the occurrence and continuance of any of the below events, any such event being deemed an Event of Default, the Prepetition ABL Agent, on not less than five (5) calendar days' notice to the Junior DIP Secured Parties (and their counsel), the Postpetition B-2 Secured Parties (and their counsel), and the Remedies Notice Parties (such five (5) calendar day period, the "ABL Remedies Notice Period") and unless the Court orders otherwise (*provided*, that, during the ABL Remedies Notice Period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court), may terminate its and the Prepetition ABL Secured Parties' consent to the Debtors' use of Cash Collateral constituting Prepetition ABL Priority Collateral (the date of such termination, the "Cash Collateral Termination Date"): (i) the DIP Obligations have been accelerated in accordance with the terms of the DIP Loan Documents; (ii) the filing of any motion or pleading by the Debtors, or the entry of an order

55

on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify the Interim Order or Final Order in a manner adverse to the Prepetition ABL Secured Parties without the consent of the Prepetition ABL Secured Parties; (iii) the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors; (iv) the Debtors shall attempt to invalidate, reduce or otherwise impair the Prepetition ABL Obligations; (v) the dismissal of any of the Chapter 11 Cases; (vi) the effective date of any plan of reorganization; (vii) the conversion of any of the Chapter 11 Cases to a case under chapter 7; (viii) the delivery of a Carve-Out Trigger Notice as provided in this Interim Order; or (ix) the failure of the Debtors to make any payments as and when required under paragraph 13(c) and paragraph 14(a)(iii) of this Interim Order; (x) the Final Order (in form and substance reasonably acceptable to the Prepetition ABL Agent) shall not have been entered by the Court within forty-five (45) days of the Petition Date; (xi) the Prepetition ABL Obligations shall not have been fully repaid or cash collateralized, as applicable, in accordance with the Prepetition ABL Loan Documents by the date that is four (4) months after entry of the Interim Order; (xii) the Debtors shall materially breach any of the other provisions of paragraph 13 of this Interim Order; (xiii) any Approved Budget shall be updated, supplemented, replaced, or otherwise modified without the prior consent of the Prepetition ABL Agent; or (xiv) at any time on or after the date that is four (4) weeks after the entry of this Interim Order, the Debtors shall breach the receipts variance covenant set forth on Exhibit 2 attached hereto.

(l) Immediately upon the occurrence of the Cash Collateral Termination Date, the Prepetition ABL Secured Parties shall be authorized, subject to the Prepetition Intercreditor Agreement and the Carve-Out and the Canadian Priority Charges, to: (a) freeze monies or balances in the Debtors' accounts which constitute proceeds of ABL Priority Collateral; (b) immediately

56

set-off any and all amounts in accounts maintained by the Debtors to the extent such amounts constitute proceeds of ABL Priority Collateral; (c) enforce any and all rights against the DIP Collateral that constitutes proceeds of ABL Priority Collateral, including, without limitation, foreclosure on all or any portion of the DIP Collateral constituting ABL Priority Collateral and occupying the Debtors' premises; and (d) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the Prepetition ABL Loan Documents or applicable law, subject to the Prepetition Intercreditor Agreement.  If the Prepetition ABL Secured Parties are permitted by the Court to take any enforcement action with respect to the ABL Priority Collateral, the Debtors shall cooperate with the Prepetition ABL Secured Parties in their efforts to enforce their security interest in the ABL Priority Collateral, and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such Prepetition ABL Secured Parties from enforcing their security interests in the ABL Priority Collateral.

(m)     No rights, protections or remedies of the Junior DIP Secured Parties, the Prepetition Secured Parties, or the Prepetition UST Secured Parties granted by this Interim Order, the Interim UST Cash Collateral Order, or the DIP Loan Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

10.     *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve-Out and Canadian Priority Charges, no costs or expenses of administration of these cases or any Successor Case or any future proceeding that may result therefrom, including liquidation in

bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral and, upon entry of a final order providing for such relief, Prepetition B-2 Collateral or Prepetition ABL Collateral (in each case, including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the B-2 Agent, or the Prepetition ABL Agent, as applicable, and no consent shall be implied from any action, inaction or acquiescence by any of the DIP Secured Parties, the B-2 Secured Parties, or Prepetition ABL Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Secured Parties, the B-2 Secured Parties, or Prepetition ABL Secured Parties to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise. Further, effective upon entry of a final order providing for such relief, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the DIP Secured Parties or Prepetition Secured Parties.

11. *No Marshaling*. In no event shall the DIP Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the DIP Obligations. Effective upon entry of a final order providing for such relief, in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or the Prepetition Secured Obligations.

12. *Payments Free and Clear*. Any and all payments or proceeds remitted to the DIP Secured Parties or Prepetition Secured Parties pursuant to the provisions of this Interim Order, the DIP Loan Documents or any subsequent order of the Court shall, subject to the reservation of rights set out in paragraph 23 of this Interim Order with respect to the Prepetition Secured Parties, be irrevocable, received free and clear of any claim, charge, assessment or other liability.

13. *Use of Cash Collateral*.

(a)     *Authorization to Use Cash Collateral*. The Debtors are hereby authorized, solely on the terms and conditions of this Interim Order and the Interim UST Cash Collateral Order, to use all Cash Collateral in accordance with the DIP Loan Documents and Approved Budget (subject to Permitted Variances).

(b)     *Proceeds of DIP Loans*.  All proceeds of the DIP Loans shall be funded and held in the DIP Proceeds Account (as defined in the DIP Loan Documents) in accordance with the terms of the DIP Loan Documents, which DIP Proceeds Account shall be maintained as a segregated account by the Borrower as set forth in the DIP Loan Documents.  For the avoidance of doubt, none of the DIP Proceeds Account, any funds therein constituting DIP Loans, or any proceeds of the DIP Loans (exclusive, for the avoidance of doubt, of any proceeds constituting Prepetition ABL Priority Collateral) shall constitute Prepetition ABL Priority Collateral or be subject to any terms or provisions in this Interim Order governing ABL Cash Collateral.

(c)     *Procedures for Use of ABL Cash Collateral*.

(i)     *Delivery of ABL Cash Collateral to Prepetition ABL Agent.* Beginning on the first business day after the date that this Interim Order is entered, and on each business day thereafter following receipt of any Cash Collateral constituting Prepetition ABL Priority Collateral ("ABL Cash Collateral"), the Debtors shall, unless previously paid, (x) wire 80% of the amount of ABL Cash Collateral received on or after August 3, 2023 into the applicable Debtor's blocked account ending *8700 maintained at Citizens Bank on the first business day following receipt of the funds to the extent not already remitted (or such other account as the Prepetition ABL Agent and the Debtors may agree in writing from time to time), to the extent not wired prior to the Petition Date (it being acknowledged that the Prepetition ABL Agent received two such wires prior to the Petition Date in respect of such percentage of the ABL Cash Collateral

59

received on August 3, 2023 and a portion of the ABL Cash Collateral received on August 4, 2023, as well as received an additional wire of $16.5 million constituting ABL Cash Collateral following the Court's entry of the interim cash collateral order entered at Docket No. 181) (which such prior payments, for the avoidance of doubt, are approved and shall not be invalidated by this Interim Order), or (y) otherwise deliver 80% of the ABL Cash Collateral received on or after August 3, 2023 to the Prepetition ABL Agent in a manner satisfactory to the Prepetition ABL Agent (such remittance, deposit, or delivery, each a "Daily Delivery Event").  Commencing on the third business day of the week following entry of this Interim Order (and on the third business day of each week thereafter) (each, an "Eligibility Reporting Date"), the Debtors shall deliver to the Prepetition ABL Agent information on collections from the prior week (as well as, if applicable, information regarding postpetition collections from prior thereto if either (a) such information has yet to be reported or (b) such information reflects a change from prior reporting (each of (a) and (b), as applicable, the "Supplemental Reporting")) in form and detail reasonably acceptable to the Prepetition ABL Agent.  On the business day after each Eligibility Reporting Date, the Debtors shall (x) to the extent the cumulative Daily Delivery Events since August 3, 2023 (taking Supplemental Reporting into account, if applicable) resulted in delivery of less than 80% of the amount of ABL Cash Collateral received, remit to the Prepetition ABL Agent ABL Cash Collateral in an amount necessary to equal 80% of the amount of ABL Cash Collateral received on or after August 3, 2023 or (y) to the extent the cumulative Daily Delivery Events since August 3, 2023 (taking Supplemental Reporting into account, if applicable) resulted in delivery in excess of 80% of the amount of ABL Cash Collateral received, deduct from that day's Daily Delivery Event ABL Cash Collateral in an amount necessary to equal 80% of the amount of ABL Cash Collateral received on or after August 3, 2023.  The portion of such ABL Cash Collateral to remain with the

Debtors in accordance with this paragraph 13(c)(i) is referred to herein as the "Available ABL Cash Collateral." The Debtors shall be permitted to access and utilize all Available ABL Cash Collateral in accordance with the Approved Budget and the terms and provisions of this Interim Order. For the avoidance of doubt, no portion of the Existing ABL Cash Collateral Deposits shall be required to be remitted to the Debtors pursuant to this paragraph 13(c)(i), nor shall any portion of the Existing ABL Cash Collateral Deposits constitute Available ABL Cash Collateral.

(ii)     *ABL Cash Collateral in Prepetition ABL Agent's Possession.* The Prepetition ABL Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any other Prepetition ABL Secured Party's possession or control which constitute Prepetition ABL Priority Collateral or proceeds thereof.

(d)     *Application of Cash Collateral to Prepetition ABL Obligations.* Notwithstanding anything to the contrary in this Interim Order, except with respect to the Available ABL Cash Collateral as set forth in paragraph 13(c)(i), the Prepetition ABL Agent is authorized at any time, and from time to time, to apply all or any portion of the ABL Cash Collateral (including, without limitation, the Existing ABL Cash Collateral Deposits) now or hereafter in the Prepetition ABL Agent's or any other Prepetition ABL Secured Party's possession or control to the payment or cash collateralization, as applicable, of Prepetition ABL Obligations (including, without limitation, any accrued and unpaid ABL Adequate Protection Fees and Expenses in accordance with paragraph 18, without limiting the obligation of the DIP Loan Parties under paragraph 18 to pay such amounts directly) in accordance with the Prepetition ABL Loan Documents, and no other party in interest shall have any right to use or direct the use of such ABL Cash Collateral, except that the Debtors shall have the right to use and direct the use of Available ABL Cash Collateral.

61

All such applications to Prepetition ABL Obligations shall be final, subject only to the right of parties in interest, including the Debtors, to seek a determination in accordance with paragraph 19 of this Interim Order that such applications resulted in the payment of any unsecured prepetition claim of the Prepetition ABL Secured Parties.

(e) *Accounts Collection Practices.* The Debtors shall maintain at all times reasonably appropriate staffing, staffing levels, and other resources with respect to Accounts billing and collections in order to maximize the Debtors' recovery of proceeds with respect to such Accounts. The Debtors shall also provide the Prepetition ABL Agent with reasonable access to all Accounts billing and collections systems and associated staff members.

14. *Adequate Protection of Prepetition Secured Parties.* Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) for the aggregate Diminution in Value and as an inducement to the Prepetition Secured Parties to consent to the priming of certain of the Prepetition Liens and the use of their Cash Collateral, the Prepetition Secured Parties are granted the following Adequate Protection (collectively, the "Adequate Protection Obligations"):

(a) *Adequate Protection of Prepetition ABL Secured Parties.*

(i) *ABL Adequate Protection Liens.* The Prepetition ABL Agent is hereby granted, for the benefit of the Prepetition ABL Secured Parties, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition ABL Secured Parties' Diminution in Value upon all of the Prepetition Collateral (the "ABL Adequate Protection Liens"): (i) in the case of the Prepetition ABL Priority Collateral, senior to all other liens, subject

and subordinate to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges; (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, (D) the B-2 Adequate Protection Liens, and (E) the DIP Liens; (iii) in the case of the Prepetition UST Tranche B Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition UST Tranche B Liens, (D) the UST Tranche B Adequate Protection Liens, (E) the Prepetition B-2 Liens, and (F) the B-2 Adequate Protection Liens; (iv) in the case of the UST Tranche B Joint Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Prepetition UST Tranche B Liens, the Prepetition B-2 Liens, the UST Tranche B Adequate Protection Liens, and the B-2 Adequate Protection Liens; and (iv) in the case of the Unencumbered Property, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the DIP Unencumbered Property Liens.

(ii) *ABL Section 507(b) Claims*. The Prepetition ABL Secured Parties are hereby granted allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition ABL Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "ABL 507(b) Claims"), which ABL 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but including, without limitation, Avoidance Proceeds). Except as otherwise provided herein, the ABL 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy

63

Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that the ABL 507(b) Claims shall be junior in all respects to (i) the Carve-Out, (ii) the Canadian Priority Charges, and (iii) the applicable senior Prepetition Liens and Adequate Protection Liens (as set forth in this Interim Order).

(iii) *Prepetition ABL Secured Parties' Interest, Fees and Expenses*. As further adequate protection, subject to the Carve-Out and the Canadian Priority Charges, the DIP Loan Parties shall make current cash payments on the first calendar day of each month of (x) interest at the Default Rate (as defined in the Prepetition ABL Credit Agreement), (y) fees with respect to Letters of Credit pursuant to Section 3.2.2 of the Prepetition ABL Credit Agreement (including any such fees that accrue at the default rate as set forth therein), and (z) other fees, in each case pursuant to, due, and payable under the terms of the Prepetition ABL Loan Documents, and shall currently pay in cash, subject to the review procedures set forth in paragraph 18 of this Interim Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition ABL Secured Parties' legal and financial advisors, including, without limitation, those of Choate, Hall & Stewart LLP, Richards, Layton & Finger, PA, AlixPartners, LLP, and any local legal counsel or other advisors, consultants, and other professionals reimbursable under the Prepetition ABL Loan Documents (collectively, the "ABL Adequate Protection Fees and Expenses" and, together with the ABL Adequate Protection Liens and ABL 507(b) Claims, the "ABL Adequate Protection Obligations").

(iv) *Additional Rights and Protections*. The Debtors shall deliver to the Prepetition ABL Agent (substantially concurrent with delivery to the DIP Agent) all financial statements, reports, certificates and related items that are required to be delivered to the DIP Agent pursuant to the DIP Term Sheet and other applicable DIP Loan Documents. On the third (3rd)

64

business day of each week (commencing on the first full calendar week after entry of this Interim

Order), the Debtors shall deliver to the Prepetition ABL Agent a Borrowing Base Certificate (as

defined in the Prepetition ABL Credit Agreement) as required pursuant to Section 8.1(ii) of the

Prepetition ABL Credit Agreement, which shall be accompanied by customary backup reporting

in form and detail reasonably acceptable to the Prepetition ABL Agent, including, without

limitation, Account agings, and a roll-forward of Prepetition ABL Priority Collateral; *provided*

that the first Borrowing Base Certificate of each month following entry of this Interim Order shall

further include a line item for Ineligible Accounts and a breakdown of Ineligible Accounts as part

of the customary backup reporting provided.  The Debtors shall make the members of their senior

management and its professional advisors available for update calls at least one time per calendar

week with the prepetition ABL Agent and its respective professional advisors, at times reasonably

acceptable to the Prepetition ABL Agent to discuss the cases, the then-current Approved Budget,

the Budget Variance Reports, the Liquidity Reports (each as defined in the DIP Term Sheet), other

reporting delivered pursuant to the DIP Loan Documents, union matters, the status of any

monetization strategies being pursued by the Debtors, including pursuant to the Bidding

Procedures Order (as defined in the DIP Term Sheet), and any other matters (including business,

operational and due diligence matters) reasonably requested by the Prepetition ABL Agent.

> (b)     *Adequate Protection of Prepetition B-2 Secured Parties.*

> (i)     *B-2 Adequate Protection Liens*.  The Prepetition B-2 Agent is

hereby granted, for the benefit of the Prepetition B-2 Secured Parties, effective and perfected upon

the date of this Interim Order and without the necessity of the execution of any mortgages, security

agreements, pledge agreements, financing statements or other agreements, a valid, perfected

replacement security interest in and lien on account of the Prepetition B-2 Secured Parties'

Diminution in Value upon all of the Prepetition Collateral (the "B-2 Adequate Protection Liens" and, together with the ABL Adequate Protection Liens, the "Adequate Protection Liens"):[13] (i) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges; (ii) in the case of the Prepetition UST Tranche B Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition UST Tranche B Liens, and (D) the UST Tranche B Adequate Protection Liens; (iii) in the case of the Prepetition Joint Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Prepetition UST Tranche B Liens and the Prepetition B-2 Liens; (iv) in the case of the Prepetition ABL Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition ABL Liens, and (D) the ABL Adequate Protection Liens; and (v) in the case of the Unencumbered Property, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges and (C) the DIP Unencumbered Property Liens.

(ii)     *B-2 Section 507(b) Claims*.  The Prepetition B-2 Secured Parties are hereby granted allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition B-2 Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "B-2 507(b) Claims" and, together with the ABL 507(b) Claims, the "507(b) Claims"), which B-2 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions, but including, without limitation, Avoidance Proceeds).

---

[13]     For the avoidance of doubt, any reference herein to the "Adequate Protection Liens of the Prepetition UST Secured Parties" shall refer to the UST Adequate Protection Liens (as defined and set forth in the contemporaneously entered Interim UST Cash Collateral Order).

Except as otherwise provided herein, the B-2 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided, however*, that the B-2 507(b) Claims shall be junior to (i) the Carve-Out, (ii) the Canadian Priority Charges, and (iii) the applicable senior Prepetition Liens and Adequate Protection Liens (as set forth in this Interim Order).

(iii)     *Prepetition B-2 Secured Parties' Interest, Fees and Expenses*.  As further adequate protection, the DIP Loan Parties shall make current cash payments of (x) interest on the last business day of each month at the rate accruing since the Petition Date (which is and shall be deemed for all purposes to be the default rate set forth in Section 2.07 of the Prepetition B-2 Credit Agreement) with respect to ABR Loans (as defined in the Prepetition B-2 Credit Agreement)) and (y) other fees, in each case pursuant to, due, and payable under the terms of the Prepetition B-2 Loan Documents, and shall currently pay in cash, subject to the review procedures set forth in paragraph 18 of this Interim Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the current and former Prepetition B-2 Secured Parties' legal and financial advisors, including, without limitation, those of (i) White & Case LLP and GrayRobinson, P.A., as counsel to the B-2 Lenders (ii) Holland & Knight LLP, as counsel to the Prepetition B-2 Agent), and (iii) Cousins Law, Milbank LLP and FTI Consulting (as Canadian counsel, lead restructuring counsel and financial advisor, respectively, to certain former Prepetition B-2 Lenders) (*provided*, that, the fees and expenses of the professionals set forth in this clause (iii) shall be reimbursed only as incurred through August 15, 2023), and with respect to

67

clauses (i) and (ii), any local legal counsel or other advisors in any foreign jurisdiction (*provided*, no more than one local legal counsel or other advisor in any foreign jurisdiction) (collectively, the "B-2 Adequate Protection Fees and Expenses" and, together with the B-2 Adequate Protection Liens and B-2 507(b) Claims, the "B-2 Adequate Protection Obligations").

(c)       *Adequate Protection of Prepetition UST Secured Parties.*  The Adequate Protection in favor of the Prepetition UST Secured Parties is set forth in the Interim UST Cash Collateral Order.

15.       *Maintenance of Collateral*.  The DIP Loan Parties shall continue to maintain and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Loan Documents and the DIP Loan Documents, as applicable.

16.  *Authorization to Record DIP Liens and Adequate Protection Liens.*

(a)  Without in any way limiting the validity of the automatic perfection of the DIP Liens and the Adequate Protection Liens under the terms of this Interim Order and the Interim UST Cash Collateral Order, the DIP Secured Parties and the Prepetition Secured Parties are hereby authorized, but not required, to execute in the name of the DIP Loan Parties or the Prepetition Loan Parties (as applicable), as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction, or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests granted to them hereunder (the "Perfection Actions").  All such Perfection Actions shall be deemed to have been taken on the date of entry of this Interim Order.  The automatic stay shall be modified to the extent necessary to permit the DIP Secured Parties and each Prepetition Secured Parties to take any Perfection Action.  For the avoidance of doubt, the DIP Liens and the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order, whether or not the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties, or the Prepetition Secured Parties take such Perfection Actions.

(b)  A certified copy of this Interim Order may, in the discretion of the DIP Agent and each Prepetition Agent, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing and recording offices are hereby authorized to accept a certified copy of this Interim Order for filing and/or recording, as applicable.

69

17. *Preservation of Rights Granted Under this Interim Order.*

(a)     Other than the claims and liens expressly granted or permitted by this Interim Order, including the Carve-Out and the Canadian Priority Charges, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in or permitted under this Interim Order, including the provisions of paragraph 19, the DIP Liens and the Adequate Protection Liens shall not be: (i) junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) except as provided in this Interim Order or the DIP Loan Documents, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) except as provided in this Interim Order or the DIP Loan Documents, subordinated to or made *pari passu* with any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (iv) except as provided in this Interim Order or the DIP Loan Documents, junior to any intercompany liens or security interests of the DIP Loan Parties.

(b)     The occurrence and continuance of any Event of Default shall, after written notice by the DIP Agent to the Borrower, counsel to the Borrower, the U.S. Trustee, and lead counsel to the Creditors' Committee (if any), constitute an event of default under this Interim Order and, upon such notice, interest, including, where applicable, default interest, shall accrue and be payable as set forth in the DIP Term Sheet.  Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting

70

these cases to cases to a Successor Case: (A) the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Liens, the 507(b) Claims, and the Prepetition Liens shall continue in full force and effect, shall maintain their priorities as provided in this Interim Order and the Interim UST Cash Collateral Order, and shall remain binding on all parties in interest until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash; (B) the other rights granted by this Interim Order, including with respect to the Carve-Out and the Canadian Priority Charges, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c) If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, and enforceability of the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, and the Carve-Out and the Canadian Priority Charges. Notwithstanding any such reversal, modification, vacatur or stay, the DIP Obligations, DIP Liens, Adequate Protection Obligations, Adequate Protection Liens, DIP Superpriority Claims, and 507(b) Claims incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code.

71

(d)     Except as expressly provided in this Interim Order or in the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by this Interim Order and the DIP Loan Documents, as well as the Carve-Out and the Canadian Priority Charges, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these cases, or terminating the joint administration of these cases; (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents); or (iii) confirming a chapter 11 plan in any of the cases.  The terms and provisions of this Interim Order and the DIP Loan Documents shall continue in full force and effect in these cases and in any Successor Cases until all DIP Obligations, Prepetition Secured Obligations, and Adequate Protection Obligations are indefeasibly paid in full in cash and the DIP Commitments have been terminated.  Any confirmation order entered in these cases shall not discharge or otherwise affect in any way the joint and several obligations of the DIP Loan Parties to the DIP Secured Parties under the DIP Facility and the DIP Loan Documents, other than after (x) the payment in full and in cash of all DIP Obligations and the termination of the DIP Commitments or (y) the occurrence of the effective date of such confirmed plan (solely in accordance with the terms of such plan).

(e)     Nothing in this Interim Order or in the other DIP Loan Documents shall, nor shall the extension of Postpetition B-2 Loans or the exercise of any rights thereunder, in any way impair or otherwise effect the validity, perfection, extent or priority of the Prepetition B-2 Liens.

18.     *Payment of Fees and Expenses*.  The DIP Loan Parties are authorized and directed

to pay the DIP Fees and Expenses and Adequate Protection Fees and Expenses. DIP Fees and Expenses and Adequate Protection Fees and Expenses that constitute professional fees and expenses shall not be subject to allowance or review by the Court but shall be subject to the review procedures set forth in this paragraph 18. Professionals for the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties, and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however, any time that such professionals seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each such professional shall provide summary copies of its invoices (including aggregate amounts of fees and expenses and total amount of time on a per-professional basis), which are not required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, to the DIP Loan Parties, counsel to any statutory committee, and the U.S. Trustee (together, the "Review Parties"); *provided, however*, that (i) the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law; *provided, further*, that, the Review Parties reserve the right to seek reasonable, additional information regarding such invoices and time entries of any such professional and/or to challenge any assertion of privilege with respect to the same. Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) calendar days after receipt (the "Review Period"). If no written objection is received by 12:00 a.m. (midnight), prevailing Eastern Time, on the last date of the Review Period, the Debtors shall pay such invoices within five (5) business days. If an objection to a professional's invoice is

73

received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether the invoiced amount arose or was incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay, on or prior to the Closing Date (as defined in the DIP Term Sheet): (i) any accrued and unpaid ABL Adequate Protection Fees and Expenses, invoices of which have been provided to lead counsel of the Debtors at least one (1) business day prior to the Closing Date and (ii) any costs, fees, expenses (including reasonable and documented legal fees and expenses) and other compensation contemplated by this Interim Order or the DIP Loan Documents, with respect to items (i) and (ii) above, whether arising before or after the Petition Date, which costs, fees and expenses shall not be subject to the Review Period.  No attorney or advisor to any Junior DIP Secured Party, Postpetition B-2 Secured Party, or any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

19.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon the Debtors in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or other party in interest with

74

requisite standing has timely and properly filed an adversary proceeding or initiated a contested matter (subject to the limitations contained herein, a "<u>Challenge Motion</u>") (*provided*, no interested party shall be permitted to raise a defense to standing on the basis that the applicable Debtor is a Delaware limited liability company) by no later than (i) the earlier of (w) one business day before the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization, whichever occurs first, (x) as to the Creditors' Committee only, 75 calendar days after entry of this Interim Order, (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period (as defined below), the Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) 75 calendar days after entry of this Interim Order, or (B) the date that is 30 calendar days after their appointment, and (z) for all other parties in interest, 75 calendar days after entry of this Interim Order; and (ii) any such later date as (v) has been agreed to in writing (which may be by email) by the Prepetition ABL Agent with respect to the Prepetition ABL Obligations or the Prepetition ABL Liens, (w) has been agreed to in writing (which may be by email) by the Prepetition B-2 Agent with respect to the Prepetition B-2 Obligations or the Prepetition B-2 Liens, or (x) has been ordered by the Court for cause upon a motion filed and served within any applicable period or (y) has been ordered by the Court after disposition or resolution of a Challenge Motion (the time period established by the foregoing clauses (i)-(ii), the "<u>Challenge Period</u>"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, or (B) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "<u>Challenges</u>") against any Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial

75

advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "Representatives") in connection with or related to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; *provided*, *however*, that any pleadings filed in connection with a Challenge shall comply with the Federal Rules of Bankruptcy Procedure and set forth with specificity the basis for such Challenge, and any Challenges not so raised prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred. If no Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such Challenge, then: (1) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest; (2) the obligations of the Prepetition Loan Parties under the Prepetition Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except as provided in the Prepetition Intercreditor Agreement), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than as provided in the Prepetition Intercreditor Agreement), or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any

76

statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives shall be deemed forever waived, released and barred.  If any Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, Prepetition Secured Obligations or Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in these cases.  For the avoidance of doubt, any trustee shall, until the expiration of the Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this

paragraph (whether commenced by the trustee or any other party in interest on behalf of the Debtors' estates), be deemed to be a party (other than the Debtors) in such adversary proceeding or contested matter and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, and stipulations made by the Debtors in this Interim Order.

20.     *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out or the Canadian Priority Charges, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Secured Parties, or the Prepetition Secured Parties, or their respective Representatives (in their capacities as such), or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, Prepetition Secured Obligations, Adequate Protection Liens, or 507(b) Claims or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Secured Obligations and/or liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under the DIP Orders, the DIP Loan Documents or the Prepetition Loan Documents in respect of the Prepetition Secured Obligations, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and DIP Collateral (including Cash Collateral) may

be used by the Creditors' Committee to investigate, but not to prosecute, (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties, up to an aggregate cap of no more than $50,000 (the "Investigation Cap"), (b) attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition Secured Parties' or the DIP Secured Parties', as applicable, enforcement or realization on the Prepetition Secured Obligations, Prepetition Collateral, DIP Obligations, DIP Collateral, as applicable, and the liens, claims and rights granted to such parties under the DIP Orders; (c) attempts to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties or the DIP Secured Parties under this Interim Order, the Interim UST Cash Collateral Order, the Prepetition Loan Documents or the DIP Loan Documents, as applicable, other than in accordance with this Interim Order; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims permitted by the DIP Loan Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and 507(b) Claims; or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are authorized by the Court, agreed to in writing by the DIP Lenders, and expressly permitted under this Interim Order or under the DIP Loan Documents (including the Approved Budget, subject to Permitted Variances), in each case unless all DIP Obligations, Prepetition Secured Obligations, Adequate Protection Obligations, and claims, obligations and liens granted to the DIP Secured Parties, Prepetition Secured Parties, and Prepetition UST Secured Parties under this Interim Order and the Interim UST Cash Collateral Order (inclusive of the UST Adequate Protection Obligations and the Prepetition UST Secured Obligations)), have been indefeasibly paid in full in cash or otherwise agreed to in writing by the DIP Secured Parties (and, for the avoidance

of doubt, no accrued paid time off obligations on account of employees terminated prior to the Petition Date shall be paid until all DIP Obligations, Prepetition Secured Obligations, Adequate Protection Obligations, and claims, obligations and liens granted to the DIP Secured Parties, the Prepetition Secured Parties, and the Prepetition UST Secured Parties under this Interim Order and the Interim UST Cash Collateral Order (inclusive of the UST Adequate Protection Obligations and the Prepetition UST Secured Obligations), have been indefeasibly paid in full in cash).

21.     *Binding Effect; Successors and Assigns.*  The DIP Loan Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Prepetition UST Secured Parties, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided*, that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

22.     Nothing in this Interim Order, the DIP Loan Documents, the Prepetition Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or

Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. The DIP Secured Parties and Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

23. *Limitation of Liability*. In determining to make any loan or other extension of credit under the DIP Loan Documents, to permit the use of the DIP Collateral or Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents or Prepetition Loan Documents, as applicable, none of the DIP Secured Parties or Prepetition Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives.

81

24. *Master Proofs of Claim.* Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or any Successor Cases, neither the Prepetition Agents, nor any other Prepetition Secured Parties shall be required to file proofs of claim in these cases or any Successor Cases in order to assert claims for payment of any of the Prepetition Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the Prepetition Loan Documents or this Interim Order. The Debtors' stipulations, admissions and acknowledgments of the claim and liens in respect of the Prepetition Secured Obligations set forth in this Interim Order is deemed to constitute timely proofs of claim in respect of all indebtedness, secured status and claims arising under the Prepetition Credit Documents and this Interim Order. Nonetheless, in order to facilitate the processing of claims, each Prepetition Agent is authorized, but not directed or required, to file a master proof of claim in the Debtors' lead case *In re Yellow Corporation, et al.*, Case No. 23-11069 (CTG), on behalf of the applicable Prepetition Secured Parties (each, a "Master Proof of Claim"), which shall be deemed to have been filed against each Debtor. The provisions of this paragraph 24 and the filing of Master Proofs of Claim, if any, are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan filed in these cases. Any Master Proof of Claim shall not be required to include any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent. The DIP Secured Parties shall not be required to file proofs of claim with respect to the DIP Obligations.

25. *Insurance.* To the extent that any Prepetition Agent is listed as a loss payee under

the insurance policies of any of the DIP Loan Parties, the DIP Agent shall also be deemed to be a loss payee under such insurance policies until the indefeasible payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the DIP Commitment and, except with respect to the Prepetition ABL Priority Collateral prior to the Prepetition ABL Obligations being indefeasibly paid in full in cash (or, as applicable, cash collateralized) and with respect to the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral prior to the Prepetition UST Tranche B Obligations being indefeasibly paid in full in cash, shall act in that capacity and distribute any proceeds recovered or received in respect of such insurance policies; *provided*, that the liens granted herein shall not interfere with any rights held by a landlord to insurance proceeds for damage to a landlord's property.

26. *Credit Bidding*. The Junior DIP Agent and the Junior DIP Lender have expressly waived any right to credit bid the Junior DIP Obligations. In each case to the extent permitted by the Prepetition Intercreditor Agreement, (i) the Prepetition ABL Agent (on behalf, and at the direction, of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement) shall have the unqualified and unconditional right to credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the Prepetition ABL Obligations and (y) the ABL Adequate Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of ABL Priority Collateral, and (ii) the B-2 Agent (on behalf, and at the direction, of the B-2 Lenders pursuant to the Postpetition B-2 Credit Agreement) shall have the unqualified and unconditional right to credit bid, subject to section 363(k) of the Bankruptcy Code,

(x) up to the full amount of the B-2 Obligations and (y) the B-2 Adequate Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of Prepetition B-2 Priority Collateral, and each Prepetition ABL Secured Party and B-2 Secured Party complying with the foregoing shall automatically be deemed a "qualified bidder" with respect to any disposition of assets by the Debtors under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code; *provided*, that, no party shall be permitted to credit bid for Prepetition ABL Priority Collateral until such time that the Prepetition ABL Parties have been indefeasibly paid in full in cash and all issued and outstanding letters of credit cash collateralized.  The Prepetition ABL Agent at the direction of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement and on behalf of the Prepetition ABL Lenders, and the B-2 Agent at the direction of the B-2 Lenders and on behalf of the B-2 Lenders, shall have the absolute right to assign, sell, or otherwise dispose of its right to credit bid to any acquisition entity or joint venture formed in connection with such bid.

27.     *Proceeds of Subsequent Financing.*  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Case shall obtain credit or incur debt pursuant to section 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents or this Interim Order at any time, then all of the cash proceeds derived from such credit or debt shall immediately be applied to satisfy the DIP Obligations in accordance with this Interim Order, the DIP Loan Documents, and the Prepetition

Intercreditor Agreement.

28.     *Rights Preserved.*  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Secured Parties' and the Prepetition Secured Parties', as applicable, respective rights to seek any other or supplemental relief in respect of the Debtors (including, the right to seek additional or different adequate protection); (b) the rights of any of the DIP Secured Parties to seek the payment by the Debtors of post-petition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Secured Parties and the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek an injunction, (iv) oppose any request for use of Cash Collateral, (v) object to any sale of assets, or (vi) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; provided that the rights of the DIP Secured Parties and the Prepetition Secured Parties, respectively, with respect to sections (a)–(c) of this paragraph 26 shall be subject to the Prepetition Intercreditor Agreement, as applicable. Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties are preserved.

29.     *No Waiver by Failure to Seek Relief.*  The failure or delay on the part of any of the DIP Secured Parties or any of the Prepetition Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Loan Documents, the respective Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute

a waiver of any of their respective rights hereunder, thereunder, or otherwise. No delay on the part of any party in the exercise of any right or remedy under this Interim Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under this Interim Order shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the party against whom such amendment, modification, suspension, or waiver is sought. No consents required hereunder by any of the DIP Secured Parties or any of the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or any of the Prepetition Secured Parties, respectively.

30.     *Chubb Reservation of Rights*. For the avoidance of doubt, (i) to the extent ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, and together with each of their successors, "Chubb") had valid, enforceable, perfected, and non-avoidable liens and/or security interests on property of the Debtors as of the Petition Date, which liens and/or security interests were senior to the liens and/or security interests of each of the Prepetition Secured Parties (collectively, the "Chubb Liens"), the DIP Liens shall not prime the Chubb Liens; (ii) this Interim Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements; (iii) without altering or limiting any of the foregoing, none of the insurance policies issued by Chubb to or providing coverage to any of the Debtors and any rights and claims thereunder shall be nor shall constitute DIP Collateral nor shall be subject to any liens granted pursuant to this Interim Order, and, further, the proceeds of any insurance policy issued by Chubb shall only be considered to be DIP Collateral to the extent such proceeds are payable to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy; and (iv)

86

nothing, including the DIP Loan Documents and/or this Interim Order, alters or modifies the terms and conditions of any insurance policies issued by Chubb and/or any agreements related thereto.

31.     *Provision Regarding TSC Equipment Finance*.  Notwithstanding anything to the contrary set forth in this Order, to the extent that the leases held by TSC Equipment Finance LLC ("TSC") (as successor by assignment to PNC Equipment Finance, LLC) are subsequently found to be financing arrangements rather than true leases (which TSC disputes), nothing contained in this Order shall (x) result in the granting of any priming or pari passu liens on the equipment subject to such leases or (y) otherwise alter or impair the rights or claims of TSC with respect to such equipment or leases.

32.     *Effectiveness*.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

33.     *Governing Order*.  Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this Interim Order, including compliance with the Approved Budget (subject to Permitted Variances) and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of the DIP Loan Documents and this Interim Order, this Interim Order shall control.  For the avoidance of doubt, upon entry of this Interim Order, this Interim Order shall supersede and replace the interim cash collateral order entered at Docket No. 181, provided that any adequate protection granted therein to the respective Prepetition Secured Parties for the period from the Petition Date until the entry of this Interim Order shall survive and is hereby reaffirmed and ratified.

34.    *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this Interim Order.

35.    *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Loan Documents and except with respect to the DIP Loan Parties, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral (other than Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), receives any DIP Collateral (other than Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) or any proceeds of the DIP Collateral (other than Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of all DIP Commitments, such person or entity shall be deemed to have received, and shall hold, any such DIP Collateral or any payment on account or proceeds thereof (other than Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) in trust for the benefit of the Junior DIP Secured Parties and shall immediately turn over such collateral or its proceeds to the Junior DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Loan Documents and this Interim Order.

36.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

37.    *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct,

indirect or incidental beneficiary.

38.     *Necessary Action*.   The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Interim Order.

39.     *Retention of Jurisdiction*.   This Court shall retain jurisdiction to enforce the provisions of this Interim Order.

40.     *Final Hearing*.  A final hearing to consider the relief requested in the DIP Motion on a final basis shall be held on September 18, 2023 at 2:00 p.m. (Prevailing Eastern Time).

41.     *Objections*.  Any objections or responses to the DIP Motion shall be filed on or prior to September 11, 2023 at 4:00 p.m. (Prevailing Eastern Time).  Any party objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the Debtors, 10990 Roe Avenue, Overland Park, Kansas 66211, Attn: Matthew A. Doheny and Leah Dawson; (b) counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn.: Patrick J. Nash, Jr., P.C. and Whitney C. Fogelberg; 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith and Aaron Metviner; (b) counsel to the Junior DIP Lender, Quinn Emmanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017, Attn: Eric Winston; 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirplani; Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606, Attn: Lucas S. Smith; 1211 Avenue of the Americas, New York, NY 10036, Attn: Natasha S. Hwangpo; (c) counsel to the B-2 Lenders, White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 Attn: Scott

Greissman, Elizabeth Feld, and Andrew Zatz; (d) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane M. Leamy and Richard Schepacarter; (e) counsel to the Creditors' Committee; (f) the Prepetition ABL Agent, and counsel thereto, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Kevin Simard and Hampton Foushee; (g) the B-2 Agent and Junior DIP Agent, and counsel thereto, Holland & Knight LLP, 150 N. Riverside Plaza, Suite 2700, Chicago IL 60606, Attn. Joshua M. Spencer and Phillip W. Nelson; (h) the Prepetition UST Tranche A Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (i) the Prepetition UST Tranche B Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (j) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602, Attn: Michael Messersmith; 250 West 55th Street, New York, New York 10019, Attn: Benjamin Mintz, and 601 Massachusetts Ave., N.W., Washington, DC 20001, Attn: Rosa Evergreen, and the U.S. Department of Justice, 1100 L St NW Rm 7102, Washington, DC 20005-4035, Attn: I-Heng.Hsu and Crystal Geise; and (k) counsel to the proposed Stalking Horse Purchaser, BakerHostetler LLP, 200 S. Orange Avenue, Suite 2300, Orlando, Florida 32801, Attn: Elizabeth Green.

42.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing and to any party that has filed with this Court a request for notices in these cases.

90

**Dated: August 18th, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

## Exhibit 1

**DIP Term Sheet**

**YELLOW CORPORATION**
**DEBTOR-IN-POSSESSION CREDIT FACILITY**
**TERM SHEET**

The following is a summary of the principal terms and conditions of a $142.5 million debtor-in-possession financing facility for the Debtors (as defined below) (the "DIP Term Sheet").

This DIP Term Sheet shall be a binding agreement from and after, and subject to, the entry of the Interim Order (as defined below) with respect to the DIP Loans (as defined below) but does not purport to summarize all of the terms, conditions, representations and other provisions with respect to the Junior DIP Facility (as defined below) and the Postpetition B-2 Facility (as defined below), which will be set forth in the DIP Loan Documents (as defined below). The obligations of the Junior DIP Lender (as defined below) and the B-2 Lenders (as defined below), respectively, to provide financing pursuant to this DIP Term Sheet is conditioned upon the execution and delivery of signature pages to this DIP Term Sheet by each of the parties hereto and shall be subject to the conditions precedent and other terms and conditions set forth herein.  In the event of any conflict between this DIP Term Sheet and the terms of the DIP Order (as defined below), the terms of the DIP Order shall govern.

| Parties | **Debtors**: Yellow Corporation, a Delaware corporation ("Yellow" or the "Company") and all of its direct and indirect domestic and Canadian subsidiaries, each as debtors-in-possession (collectively, the "Debtors") in the chapter 11 cases (the "Chapter 11 Cases") commenced August 6, 2023 in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). |
|---------|---------|
| | **Borrower**: Yellow (the "Borrower"). |
| | **Guarantors**: All obligations under the DIP Facility (as defined below), this DIP Term Sheet and the other DIP Loan Documents (each as defined below) will be unconditionally guaranteed, jointly and severally, (x) with respect to the Junior DIP Facility, on a junior priority secured basis and (y) with respect to the Postpetition B-2 Facility, on a *pari passu* secured basis with the Prepetition B-2 Obligations (as defined below), in each case by each direct or indirect subsidiary of the Borrower formed in the United States and Canada which is a "Loan Party" under the B-2 Term Loan Credit Agreement (as defined below) (collectively, the "Guarantors"). |
| | The Borrower and the Guarantors are collectively referred to herein as the "Loan Parties." |
| | **Junior DIP Lender**: MFN Partners, L.P. (the "Junior DIP Lender"). |
| | **Junior DIP Agent**: Alter Domus Products Corp. or another entity designated by the Junior DIP Lender will serve as the administrative agent and collateral agent under the Junior DIP Facility (in such capacity, including any successors, the "Junior DIP Agent") and will perform duties customarily associated with such capacities.  The Junior DIP Lender together with the Junior DIP Agent shall be referred to as the "Junior DIP Secured Parties." |

| | |
|---|---|
| | **Postpetition B-2 Lender**:  Citadel Credit Master Fund LLC and any assignee thereof (the "<u>Postpetition B-2 Lender</u>" and, together with the Prepetition B-2 Lender (as defined below), the "<u>B-2 Lenders</u>").<br><br>**Postpetition B-2 Agent**: Alter Domus Products Corp. will serve as the administrative agent and collateral agent under the Postpetition B-2 Facility (in such capacity, including any successors, the "<u>B-2 Agent</u>") and will perform duties customarily associated with such capacities. The B-2 Lenders together with the B-2 Agent shall be referred to as the "<u>B-2 Secured Parties</u>." |
| **Prepetition Facilities** | <u>Prepetition Facilities</u>: The Company is party to each of:<br><br>1.    the Loan and Security Agreement, dated as of February 13, 2014 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "<u>ABL Facility</u>"), by and among Yellow, YRC Inc., USF Reddaway Inc., USF Holland LLC, and New Penn Motor Express LLC, as borrowers (the "<u>ABL Borrowers</u>"), the guarantors from time to time party thereto (together with the ABL Borrowers, the "<u>ABL Obligors</u>"), the lenders from time to time party thereto (the "<u>ABL Lenders</u>"), the issuing banks from time to time party thereto, and Citizens Business Capital, as agent (in such capacity, the "<u>ABL Agent</u>" and, together with the Prepetition ABL Lenders, Bank Providers and Issuing Banks (each as defined in the ABL Facility), the "<u>Prepetition ABL Secured Parties</u>") and any and all Obligations as defined in the ABL Facility, the "<u>Prepetition ABL Obligations</u>";<br><br>2.    the Amended and Restated Credit Agreement, dated as of September 11, 2019 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "<u>B-2 Term Loan Credit Agreement</u>", the loans thereunder, the "<u>Prepetition B-2 Loans</u>", and any and all Obligations under and as defined in the B-2 Term Loan Credit Agreement (including, without limitation, the exit fee arising pursuant to Section 2.05(c) of the B-2 Term Loan Credit Agreement), the "<u>Prepetition B-2 Obligations</u>" and together with all obligations under the Postpetition B-2 Facility, including, without limitation, all principal, interest, fees and other amounts arising in respect thereof, the "<u>B-2 Obligations</u>"), by and among Yellow, as borrower (the "<u>B-2 Borrower</u>"), the guarantors from time to time party thereto (together with the B-2 Borrower, the "<u>B-2 Obligors</u>"), the lenders from time to time party thereto (the "<u>Prepetition B-2 Lenders</u>"), and the B-2 Agent;<br><br>3.    the UST Tranche A Term Loan Credit Agreement, dated as of July 7, 2020 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "<u>UST Tranche A Credit Agreement</u>"), by and among Yellow, as borrower (the "<u>UST Tranche A Borrower</u>"), the guarantors from time to time party thereto (together with the UST Tranche A Borrower, the "<u>UST Tranche A Obligors</u>"), the lenders from time to time party thereto (the "<u>UST Tranche A Lenders</u>"), and The Bank of New York Mellon ("<u>BNYM</u>"), as administrative agent and collateral agent (in such capacities, and BNYM, in its capacities as a party to all other agreements, documents, or instruments with any or all of the Prepetition UST Tranche A Obligors entered into in connection with the transactions relating to the entry of the Prepetition UST Tranche A Credit Agreement and all related loan and security documents and/or the incurrence of the UST Tranche A Obligations (as defined in the UST Adequate Protection Order), including, without limitation, any banking arrangements in connection therewith with BNYM and/or its affiliates, the "<u>UST Tranche A Agent</u>," and, together with the UST Tranche A Lenders, the "<u>Prepetition UST</u> |

Tranche A Secured Parties") and any and all Obligations as defined in the UST Tranche A Credit Agreement, the "Prepetition UST Tranche A Obligations"); and

4.  the UST Tranche B Term Loan Credit Agreement, dated as of July 7, 2020 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "UST Tranche B Credit Agreement" and, together with the ABL Facility, B-2 Term Loan Credit Agreement, and UST Tranche A Credit Agreement, the "Prepetition Facilities"), by and among Yellow, as borrower (the "UST Tranche B Borrower"), the guarantors from time to time party thereto (together with the UST Tranche B Borrower, the "UST Tranche B Obligors" and, together with the ABL Obligors, B-2 Obligors, and UST Tranche A Obligors, the "Prepetition Obligors"), the lenders from time to time party thereto (the "UST Tranche B Lenders" and, together with the ABL Lenders, Prepetition B-2 Lenders, and UST Tranche A Lenders, the "Prepetition Lenders"), and BNYM, as administrative agent and collateral agent (in such capacities, and BNYM, in its capacities as a party to all other agreements, documents, or instruments with any or all of the Prepetition UST Tranche B Obligors entered into in connection with the transactions relating to the entry of the Prepetition UST Tranche B Credit Agreement and all related loan and security documents and/or the incurrence of the UST Tranche B Obligations (as defined in the UST Adequate Protection Order), including, without limitation, any banking arrangements in connection therewith with BNYM and/or its affiliates, the "UST Tranche B Agent", together with the UST Tranche B Lenders, the "Prepetition UST Tranche B Secured Parties", and the UST Tranche B Agent together with the ABL Agent, B-2 Agent, and UST Tranche A Agent, the "Prepetition Agents") and any and all Obligations as defined in the UST Tranche B Credit Agreement, the "Prepetition UST Tranche B Obligations").

The Prepetition Lenders and the Prepetition Agents are collectively referred to herein as the "Prepetition Secured Parties". The Prepetition Agents are parties to the Amended and Restated Intercreditor Agreement, dated as of July 7, 2020 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Intercreditor Agreement"), by and among the Prepetition Agents and acknowledged by the Prepetition Obligors.

All instruments and documents executed at any time in connection with the ABL Facility shall be referred to collectively as the "ABL Documents", all instruments and documents executed at any time in connection with the B-2 Term Loan Credit Agreement shall be referred to collectively as the "B-2 Documents", all instruments and documents executed at any time in connection with the UST Tranche A Credit Agreement shall be referred to collectively as the "UST Tranche A Documents", and all instruments and documents executed at any time in connection with the UST Tranche B Credit Agreement shall be referred to collectively as the "UST Tranche B Documents" and, together with the ABL Documents, B-2 Documents, and UST Tranche A Documents, the "Prepetition Debt Documents."

The Prepetition UST Tranche A Secured Parties and the Prepetition UST Tranche B Secured Parties are collectively referred to herein as the "UST Secured Parties". The UST Tranche A Documents and UST Tranche B Documents are collectively referred to herein as the "UST Debt Documents."

| DIP Facility | **Junior DIP Facility**:  A superpriority junior secured multi-draw term loan facility (the "Junior DIP Facility," and the loans thereunder, the "Junior DIP Loans")[1] in an aggregate principal amount of up to $42.5 million, to be made available as provided below in the section entitled "Commitments." |
|---|---|
| | **Postpetition B-2 Facility**:  A superpriority senior secured multi-draw term loan facility (the "Postpetition B-2 Facility," and the loans thereunder, the "Postpetition B-2 Loans"[2]; and the Postpetition B-2 Loans together with the Prepetition B-2 Loans, the "B-2 Loans") in an aggregate principal amount of up to $100.0 million, to be made available as provided below in the section entitled "Commitments."  The Postpetition B-2 Facility shall be governed by the B-2 Term Loan Credit Agreement as in effect on the Petition Date, as superseded, supplemented and modified by the terms of this DIP Term Sheet and the Interim Order, and all agreements, instruments and documents executed at any time in connection therewith, including either the DIP Credit Agreement (as defined below) or an amendment to the B-2 Term Loan Credit Agreement (a "Postpetition B-2 Credit Agreement Amendment," the terms of which shall be effective as of the date of the Closing Date) (in either case as may be agreed to by the B-2 Lenders, the B-2 Agent, and the Debtors), which such instruments and documents shall be referred to collectively as the "Postpetition B-2 Loan Documents." |
| | **DIP Loan Documents**: This DIP Term Sheet, the DIP Credit Agreement, the Postpetition B-2 Credit Agreement Amendment (if any), the other Postpetition B-2 Loan Documents,   the DIP Orders, the Amended and Restated Fee Letter (as defined below), the Fee Letter (as defined below), and all instruments and documents executed at any time in connection therewith, shall be referred to collectively as the "DIP Loan Documents." |
| | **DIP Loans**: Subject to the terms and conditions herein, including the restrictions on Use of Proceeds set forth below, the proceeds of the DIP Facility will be used in accordance with the terms of the Budget (subject to Permitted Variances) (as such terms are defined below), including to pay (a) (i) Professional Fees (as defined below) and other restructuring charges arising on account of the Chapter 11 Cases, including statutory fees of the United States Trustee and allowed professional fees and expenses of a Committee (as defined herein) and (ii) the Carve-Out (as defined below) and the Canadian Priority Charges,[3] (b) all professional fees and expenses |

---

[1]    For the avoidance of doubt, proceeds of the DIP Facility will be funded into a controlled segregated bank account (the "DIP Proceeds Account"), which DIP Proceeds Account (and the funds therein) shall be subject to first-priority senior security interests (x) in favor of the Junior DIP Agent with respect to proceeds of the Junior DIP Facility and (y) in favor of the B-2 Agent with respect to proceeds of the Postpetition B-2 Facility, which respective security interests shall be senior in all respects to any other liens or security interests, including any Adequate Protection Liens of the Prepetition Lenders, in such proceeds.  For the further avoidance of doubt, none of the DIP Proceeds Account, any funds therein constituting Junior DIP Loans or Postpetition B-2 Loans (as defined below), or any proceeds of the Junior DIP Loans or Postpetition B-2 Loans (exclusive of any proceeds constituting Prepetition ABL Priority Collateral) shall constitute Prepetition ABL Priority Collateral or be subject to any terms or provisions in the Interim Order governing ABL Cash Collateral.

[2]    The Junior DIP Loans and the Postpetition B-2 Loans, together, shall be referred to herein as the "DIP Loans." The Junior DIP Facility and the Postpetition B-2 Facility, together, shall be referred to herein as the "DIP Facility."

[3]    "Canadian Priority Charges" shall mean, collectively, (i) a super priority charge granted by the Canadian Court over the Canadian Debtors' Collateral to secure payment of the professional fees and disbursements of the Debtors' Canadian counsel, the Information Officer and counsel to the Information Officer (in a maximum

|  | (including legal, financial advisor, appraisal, and valuation-related fees and expenses) incurred by (x) the Junior DIP Agent and/or the Junior DIP Lender as provided under the DIP Loan Documents and (y) the B-2 Agent and/or B-2 Secured Parties as provided under the DIP Loan Documents, including those incurred in connection with the preparation, negotiation, documentation, and court approval of the DIP Facility and (c) payments as set forth in the "Adequate Protection" section below.<br><br>"Professional Fees" shall mean, to the extent allowed at any time, whether by interim or final compensation order entered by the Bankruptcy Court, all unpaid fees and expenses incurred relating to services rendered by persons or firms retained by the Loan Parties pursuant to and in accordance with sections 327, 328, 329, 330, 331, 363, or 503(b)(4) of the Bankruptcy Code (collectively, the "Debtors' Professionals"); provided that to the extent that any amount of the foregoing compensation or reimbursement is denied or reduced by a Final Order by the Bankruptcy Court or any other court of competent jurisdiction, such amount shall no longer constitute Professional Fees. |
|---|---|
| **Commitments; Funding** | The Junior DIP Loans in an aggregate principal amount of $42.5 million and the Postpetition B-2 Loans in an aggregate principal amount of $100.0 million will be made available as follows (collectively, the "Commitments"), in the case of each of 1-3 below, allocated ratably between the Junior DIP Loans and the Postpetition B-2 Loans:<br><br>1.  $60.0 million ($17.9 million of which shall be funded under the Junior DIP Facility and $42.1 million of which shall be funded under the Postpetition B-2 Facility) upon the Bankruptcy Court's entry of an interim order approving the DIP Facility and adequate protection for the Prepetition Secured Parties[4] on an interim basis (the "Interim Order") in form and substance acceptable to the Junior DIP Lender, the B-2 Lenders, the Junior DIP Agent, the B-2 Agent, and the ABL Agent, but prior to the entry of a final order approving the DIP Facility and adequate protection for the Prepetition Secured Parties on a final basis (the "Final Order" and, together with the Interim Order, the "DIP Order", as applicable).<br><br>2.  $37.5 million ($11.2 million of which shall be funded under the Junior DIP Facility and $26.3 million of which shall be funded under the Postpetition B-2 Facility) which is permitted to be borrowed on a date that is on or after (x) the date that the Debtors file a revised form of order approving revised bidding procedures for one or more sales of all or substantially all of the Debtors' assets, which shall be in form and substance reasonably |

---

amount not to exceed CDN$700,000) (the "Canadian Administrative Charge"); (ii) a charge granted by the Canadian Court on the Canadian Debtors' Collateral (in a maximum amount not to exceed CDN$3,500,000), securing an indemnity in favor of the Canadian Debtor's directors and officers against any obligations or liabilities that they may incur as directors and officers of the Canadian Debtor on or after the commencement of the Canadian Recognition Proceedings (the "Canadian Directors' Charge"); and (iii) the super priority charge granted by the Canadian Court pursuant to the Canadian DIP Recognition Order in favor of the Junior DIP Lender and B-2 Lenders on the Canadian Debtors' Collateral, other than the UST Tranche B Priority Collateral (the "Canadian DIP Charge").

[4]   For the avoidance of doubt, the interim and final UST Adequate Protection Order shall be entered by the Bankruptcy Court simultaneously with the Interim Order and the Final Order, as applicable, and shall provide for the adequate protection of the UST Secured Parties.

acceptable to the Junior DIP Lender and permitting the B-2 Lenders to credit bid the full amount of the B-2 Obligations (the "Bidding Procedures Motion"), and (y) the parties have entered into final DIP Loan Documents in accordance with the applicable Documentation Principles.

3. $45.0 million ($13.4 million of which shall be funded under the Junior DIP Facility and $31.6 million of which shall be funded under the Postpetition B-2 Facility) which is permitted to be borrowed on a date that is on or after the date that the Court has entered the Final Order.

4. Up to $70.0 million shall be made available by the Junior DIP Lender, at the Debtors' request (the "Additional Junior DIP Commitment"). To the extent drawn, Additional Junior DIP Commitment shall accrue (i) interest at ABR plus 10.0% (paid once-monthly in cash) and (ii) an exit fee of 7.50% of the amount drawn shall be earned, due, and payable upon exit (such amounts to be paid in cash). The Additional Junior DIP Commitment (x) shall be fully junior and subordinated (including in right and payment) to the claims and liens of the Prepetition B-2 Lenders and B-2 Agent, the Prepetition ABL Secured Parties, and the UST Secured Parties, including their respective adequate protection claims and liens, and to the liens and claims of the Postpetition B-2 Lenders and B-2 Agent under the Postpetition B-2 Facility, including for the avoidance of doubt, to the payment and enforcement rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties, and the UST Secured Parties, which rights with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth in this DIP Term Sheet and the DIP Order, and (y) shall be made available to be drawn provided that prepetition senior secured claims outstanding shall not exceed at the time of such draw, in the aggregate, $1.435 billion.

Amounts paid or prepaid under the Junior DIP Facility or in respect of the Additional Junior DIP Commitment, and under the Postpetition B-2 Facility may not be reborrowed.

The Junior DIP Lender shall make each Junior DIP Loan to be made by it hereunder on the respective borrowing date by wire transfer of immediately available funds to the Junior DIP Agent not later than 1:00 p.m., New York City time, and upon receipt of all requested funds the Junior DIP Agent shall promptly wire the amounts so received to the DIP Proceeds Account.

The Postpetition B-2 Lender shall make each Postpetition B-2 Loan to be made by it hereunder on the respective borrowing date by wire transfer of immediately available funds to the B-2 Agent not later than 1:00 p.m., New York City time, and upon receipt of all requested funds the B-2 DIP Agent shall promptly wire the amounts so received to the DIP Proceeds Account.

| | |
|---|---|
| **Use of Proceeds** | No portion of the Debtors' "cash collateral" (as such term is defined in section 363(a) of the Bankruptcy Code) (the "Cash Collateral"), the proceeds of the DIP Facility, the Carve-Out, or the Collateral (as defined below) may be used, whether directly or indirectly:<br><br>1.     for any purpose that is prohibited under the Bankruptcy Code, the DIP Orders and not in accordance with the Budget (subject to Permitted Variances (as defined below));<br><br>2.     to finance or reimburse for expenses incurred or to be incurred, in both instances, in any way: (i) any adversary action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the interests of any or all of the Junior DIP Secured Parties, the B-2 Secured Parties, the Prepetition Secured Parties, or their respective rights |

|  | and remedies under DIP Loan Documents, the DIP Order, or the Prepetition Debt Documents; or (ii) any other action, which with the giving of notice or passing of time, would result in an Event of Default under the DIP Loan Documents; |
|--|--|
|  | 3.    other than in respect to UST Adequate Protection Payments[5] or Prepetition ABL Secured Parties as set forth herein, for the payment of fees, expenses, interest or principal or any other payment with respect to the ABL Facility, UST Tranche A Credit Agreement, or UST Tranche B Credit Agreement; and |
|  | 4.    other than for payments for director fees included in and permitted by the Approved Budget, subject to the Debtors' ability to make UST Adequate Protection Payments pursuant to the UST Adequate Protection Order, to make any payment to any board member or shareholder of any Loan Party in their capacity as such. |
|  | except as permitted by the Budget (subject to Permitted Variances (as defined below)), to make any payment in settlement of any claim, action or proceeding without the prior written consent of the Junior DIP Lender and the B-2 Lenders. |
| **Budget** | The 13-week statement of the Loan Parties' anticipated cash receipts and disbursements for the first 13 weeks the Chapter 11 Cases, set forth on a weekly basis, including the anticipated uses of the DIP Facility for such period (the "Budget"), attached hereto as Annex 5. The Budget will be attached as an exhibit to the Interim Order and shall be in all respects satisfactory to the Junior DIP Lender, the B-2 Lenders and the Prepetition Secured Parties (including the UST Secured Parties). For the avoidance of doubt, no accrued vacation payment obligations on account of employees terminated prior to the Petition Date shall be paid until all prepetition secured debt has been indefeasibly paid in full in cash. |
| **Documentation Principles** | A credit agreement governing the terms of the Junior DIP Facility (and, if the B-2 Lenders and the Debtors agree, the Postpetition B-2 Facility) (the "DIP Credit Agreement") shall (i) be based on and consistent with the credit agreement attached as Exhibit 1 to the Filed Proposed DIP Order (as defined below) (the "Filed DIP Credit Agreement") except as otherwise set forth in this DIP Term Sheet or in the DIP Order, (ii) be subject to the Senior ICA Provisions (as defined below), (iii) reflect the junior lien on the Collateral with respect to the Junior DIP Facility (and, if applicable, the pari passu secured status of the Postpetition B-2 Facility vis-à-vis the Prepetition B-2 Obligations), (iv) be subject to negotiation in good faith within a reasonable (consistent with the term of this DIP Term Sheet) time period, (v) be reasonably satisfactory to the B-2 Lenders, the UST Secured Parties, and the ABL Agent, and (vi) be satisfactory to the Junior DIP Agent and Junior DIP Lender. The terms in this paragraph are collectively referred to herein as the "Junior DIP Documentation Principles." |

---

[5]   "UST Adequate Protection Payments" means and includes the UST Tranche A Adequate Protection Payment, the UST Tranche B Adequate Protection Payment, and the UST Adequate Protections Fees and Expenses (each as defined in the UST Adequate Protection Order). "UST Adequate Protection Order" means, with respect to the adequate protection to be provided to the UST Secured Parties, the separate order substantially in the form included with the Debtors' DIP motion at ECF No. 16-2 (and the motion at ECF No. 16 that attaches the UST Adequate Protection Order, the "Initial DIP Motion"), subject to modifications acceptable to the UST Secured Parties.

The Postpetition B-2 Credit Agreement Amendment (if any) shall (i) be based on and consistent with the B-2 Term Loan Credit Agreement as in effect on the Petition Date, except as otherwise set forth in and superseded, supplemented and modified by (x) the terms set forth in the Filed DIP Credit Agreement, (y) this DIP Term Sheet, and (z) the DIP Order (it being understood that, to the extent of any conflict between the Filed DIP Credit Agreement, this DIP Term Sheet, the DIP Credit Agreement or the DIP Order, then the DIP Term Sheet and the DIP Order shall control), (*provided that*, if the B-2 Lenders and the Debtors agree to enter into a Postpetition B-2 Credit Agreement Amendment and such Postpetition B-2 Credit Agreement Amendment is substantially consistent with the terms and provisions set forth in this DIP Term Sheet, the Filed DIP Credit Agreement, and the DIP Order, it may be entered into by the B-2 Secured Parties and the Debtors without further Court authorization), (ii) be subject to the Senior ICA Provisions (as defined below) and the Intercreditor Agreement, (iii) reflect liens on the Collateral consistent with the priorities set forth herein, including the Senior ICA Provisions, and the Intercreditor Agreement, including first priority liens on the B-2 Priority Collateral (as defined below), (iv) be subject to negotiation in good faith within a reasonable (consistent with the term of this DIP Term Sheet) time period, (v) be reasonably satisfactory to the Junior DIP Lender, the UST Secured Parties, and the ABL Agent, and (vi) be satisfactory to the B-2 Agent and the B-2 Lenders.   The terms in this paragraph, together with the Junior DIP Documentation Principles, the "Documentation Principles."

| | |
|---|---|
| **Collateral; Priority** | **Collateral**:  All property, causes of action, rights, or claims of the Loan Parties (now or hereafter acquired and all proceeds thereof) (subject to limited customary exceptions set forth in the DIP Orders (the "Excluded Property")), including (i) all property or assets of any non-U.S. Loan Parties located in Canada, (ii) all claims and causes of action in connection with any commercial tort and breach of contract claims, (iii) the proceeds of all claims and causes of action (excluding the claims and causes of action themselves) arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 553(b), or 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable federal and/or state-law equivalents, (iv) all leasehold interests of any Loan Party, and (v) the proceeds of each of the foregoing (collectively, the "Collateral").<br><br>"B-2 Priority Collateral" refers to all Non-UST Tranche B Term Priority Collateral (as defined in the Intercreditor Agreement).<br><br>**Junior DIP Facility Priority**:  All obligations of the Loan Parties to the Junior DIP Lender and the Junior DIP Agent under the DIP Loan Documents, including all loans made under the Junior DIP Facility, shall, subject in all respects to the Carve-Out and the Canadian Priority Charge, at all times:<br><br>1.     pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to joint and several superpriority administrative expense claim status against each Debtor in the Chapter 11 Cases, which claims in respect of the Junior DIP Facility shall be superior to all other claims except as otherwise set forth herein;<br><br>2.     pursuant to section 364(c)(2) of the Bankruptcy Code, have first priority and be secured by liens on (i) the Cash Collateral Account and (ii) all unencumbered assets of the Loan Parties (other than Excluded Property) (now or hereafter acquired and all proceeds thereof) that are senior to the adequate protection liens of the Prepetition Secured Parties on such unencumbered assets; |

3. pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, be secured by a lien on the B-2 Priority Collateral that is junior to the B-2 Secured Parties' lien on such collateral, but senior to the Prepetition ABL Secured Parties' and UST Secured Parties' lien on such collateral; and

4. pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by (i) junior liens on the Collateral securing the obligations of the Prepetition Secured Parties (other than as expressly set forth above with respect to the B-2 Priority Collateral) and (ii) a lien on any assets and properties of Canadian Debtors (with respect to the UST Tranche B Priority Collateral any such lien shall be junior to the UST Secured Parties' liens on such collateral) securing the indemnity obligations of the Canadian Debtors to their directors and officers in respect of obligations and liabilities that such directors and officers may incur during or prior to the Canadian Proceedings in their capacities as directors and officers (relating to the restructuring, winddown, and/or related chapter 11 proceedings, including with respect to any amount for wages or termination pay whether arising prior to or following the filing of the Canadian Proceedings) that is junior to any court-ordered charge over such assets and properties as issued or anticipated to be issued by the Canadian Court.

5. Notwithstanding anything above or herein to the contrary or in the DIP Loan Document or the DIP Orders to the contrary, it is expressly understood and agreed that the liens and claims in respect of the Additional Junior DIP Commitment shall be junior and subordinated (including in right of payment) in all respects to the liens and claims (including any adequate protection liens and claims) of the Prepetition Secured Parties and to the liens and claims of the B-2 Secured Parties under the Postpetition B-2 Facility, including, for the avoidance of doubt, to the payment and enforcement rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties, and the UST Secured Parties, which rights with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth in this DIP Term Sheet and the DIP Order.

**Postpetition B-2 Facility Priority**: All obligations of the Loan Parties to the B-2 Lender and the B-2 Agent under the Postpetition B-2 Loan Documents (in respect of the Postpetition B-2 Facility), including all loans made under the Postpetition B-2 Facility, shall, subject in all respects to the Carve-Out and the Canadian Priority Charge, at all times:

1. pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to joint and several superpriority administrative expense claim status against each Debtor in the Chapter 11 Cases, which claims in respect of the Postpetition B-2 Facility shall be superior to all other claims except as otherwise set forth herein; and

2. pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, in each case have the same priority as the B-2 Secured Parties' prepetition liens on all Collateral, as set forth in the Intercreditor Agreement and herein, including, for the avoidance of doubt, first priority liens on all B-2 Priority Collateral, pari passu with the B-2 Secured Parties' existing liens on the B-2 Priority Collateral, and senior to the Junior DIP Liens, and the liens of the Prepetition ABL Secured Parties and UST Secured Parties, on the B-2 Priority Collateral.

All of the liens described herein with respect to the assets of the Loan Parties shall be effective and perfected as of the entry date of the Interim Order (the "Interim Order Entry Date") and such other mortgages, security agreements, pledge agreements, financing statements, or other

agreements as may be reasonably required by the Junior DIP Agent, the Junior DIP Lender, the B-2 Agent and the B-2 Lenders; provided, that the Junior DIP Lender and the Postpetition B-2 Lender agree that they shall not seek real property mortgages after the date hereof. For the avoidance of doubt, the DIP Orders shall provide that the existing liens of the B-2 Secured Parties with respect to the Prepetition B-2 Obligations shall automatically extend to and be perfected with respect to the Postpetition B-2 Obligations and shall otherwise be granted, and be effective and perfected, as of the Interim Order Entry Date. Nothing in this DIP Term Sheet, the DIP Orders or the other Postpetition B-2 Loan Documents shall, nor shall the extension of any Postpetition B-2 Loans or the exercise of any rights hereunder or under any Postpetition B-2 Loan Documents, in any way impair or otherwise affect the validity, perfection, extent or priority of the prepetition liens of the B-2 Secured Parties on the B-2 Priority Collateral.

Except to the extent expressly set forth in this DIP Term Sheet and/or the DIP Loan Documents (including with respect to the Postpetition B-2 Obligations), each DIP Order shall contain provisions prohibiting each Loan Party from incurring any additional indebtedness (other than the Carve-Out and the Canadian Priority Charges) which (x) ranks *pari passu* with or senior to the DIP Loans or (y) benefits from a first priority lien under section 364 of the Bankruptcy Code.

The DIP Order and the DIP Loan Documents shall provide intercreditor provisions (the "Senior ICA Provisions") requiring the Junior DIP Agent and the Junior DIP Lender to be silent with respect to the exercise of remedies on Collateral, including the following:

(i) Until the B-2 Obligations have been indefeasibly paid in full in cash, the B-2 Secured Parties shall have the exclusive right to exercise remedies with respect to the B-2 Priority Collateral and the Junior DIP Agent and Junior DIP Lender shall not exercise any remedies with respect to the B-2 Priority Collateral.

(ii) Until the Prepetition ABL Obligations have been paid in full in cash, including the cash collateralization of all issued and outstanding letters of credit, the Prepetition ABL Secured Parties shall have the exclusive right to exercise remedies with respect to the ABL Priority Collateral and the B-2 Agent, the B-2 Lenders, the Junior DIP Agent, and the Junior DIP Lender shall not exercise any remedies with respect to the ABL Priority Collateral until the B-2 Obligations and the Prepetition Facilities shall have been paid in full in cash, including the cash collateralization of all issued and outstanding letters of credit.

(iii) Until the UST Tranche B Obligations (as defined in the UST Adequate Protection Order) have been paid in full in cash, the Prepetition UST Tranche B Secured Parties shall have the exclusive right to exercise remedies with respect to the UST Tranche B Priority Collateral (as defined in the Prepetition Intercreditor Agreement) and the UST Tranche B Joint Collateral (as defined in the Prepetition Intercreditor Agreement) (in the case of the UST Tranche B Joint Collateral, subject to the application of proceeds provision set forth in section 4.1(e) of the Intercreditor Agreement, and the Junior DIP Lender shall not exercise any remedies with respect to the UST Tranche B Priority Collateral and the UST Tranche B Joint Collateral until the B-2 Obligations and the Prepetition UST Tranche B Obligations shall have been paid in full in cash.

For the avoidance of doubt, (A) the Senior ICA Provisions shall govern the relative rights of the Junior DIP Facility, on the one hand, and the Postpetition B-2 Facility and the Prepetition Facilities, on the other hand, with respect to the exercise remedies on Collateral and (B) as among Prepetition Facilities (and the Postpetition B-2 Facility), the Senior ICA Provisions shall not override the Intercreditor Agreement.

|  | The intercreditor and subordination provisions set forth in this DIP Term Sheet and the other DIP Loan Documents, including the Senior ICA Provisions, and the Intercreditor Agreement are essential elements of the DIP Facility and the protections granted to the parties as consideration therefor and are immediately and irrevocably binding and enforceable.

Notwithstanding the foregoing or elsewhere herein, nothing contained herein shall be construed to prevent any Prepetition Agent, any Prepetition Secured Party, any B-2 Secured Party, any Junior DIP Lender or the Junior DIP Agent from (i) filing a claim or statement of interest with respect to the outstanding obligations owed to it in the Chapter 11 Cases, (ii) submitting a notice of default pursuant to the Prepetition Debt Documents or the DIP Loan Documents and accruing any applicable default interest that may be permitted thereunder, (iii) taking any action (not adverse to the priority status of any other Prepetition Agent, any Prepetition Secured Party, any B-2 Secured Party, any Junior DIP Lender or the Junior DIP Agent) in order to create, perfect, preserve or protect (but not enforce its lien), or (iv) filing any necessary or responsive pleadings in opposition to any motion, adversary proceeding or other pleading filed by any person objecting to or otherwise seeking disallowance of the claim or lien of such Prepetition Agent, any Prepetition Secured Party, any B-2 Secured Party, any Junior DIP Lender or the Junior DIP Agent. |
|---|---|
| **Carve-Out** | Carve-Out as set forth in the DIP Orders and consistent in size with the Carve-Out in the Filed Proposed DIP Order; *provided* that, the Carve-Out post-trigger notice professional fees cap may be increased by up to $1 million to include amounts for an official committee of equityholders in the event one is appointed. |
| **Adequate Protection** | As adequate protection, the Prepetition Secured Parties shall receive customary adequate protection liens and claims consistent with the Intercreditor Agreement, in each case junior to the Carve-Out and the Canadian Priority Charges. All adequate protection liens and claims of the Prepetition Secured Parties shall (x) be senior to the liens and claims securing the Junior DIP Facility and (y) have the same relative priorities with respect to the liens and claims securing the B-2 Postpetition Facility with respect to the liens and claims securing the Prepetition B-2 Loans pursuant to the Intercreditor Agreement and as provided herein; <u>provided</u>, <u>however</u>, that with respect to the B-2 Priority Collateral, the adequate protection liens and claims of the Prepetition ABL Secured Parties and Prepetition UST Tranche B Secured Parties shall be junior to the liens and claims securing the Junior DIP Facility.

Other than as modified herein, the adequate protection to be provided to the Prepetition ABL Secured Parties shall be as set forth in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed at docket number 16-1 in the Chapter 11 Cases (the "<u>Filed Proposed DIP Order</u>"); *provided* that the Approved Budget, and any subsequent updates, modifications, and supplements shall be subject to review and approval by the ABL Agent.

Other than as set forth below with respect to the sale milestones for the Prepetition B-2 Priority Collateral, the adequate protection to be provided to the UST Secured Parties shall be as set forth in the separate UST Adequate Protection Order, which Order shall be in form and substance acceptable in all material respects to the UST Secured Parties and the DIP Lender. The Budget, and any subsequent updates, modifications, and supplements shall be subject to review and approval by the UST Secured Parties. |

<table>
<tr><td></td><td>

For the avoidance of doubt, the Interim Order shall also include provisions set forth in the Final Proposed DIP Order regarding (i) the use of and application of ABL Cash Collateral (as defined in the Proposed Interim Order) in accordance with paragraph 11 of the Filed Proposed DIP Order; (ii) reporting and access rights as set forth in paragraph 12(a)(iv) of the Filed Proposed DIP Order; and (iii) compliance with paragraph 11(e) of the Filed Proposed DIP Order.

The adequate protection to be provided to the B-2 Secured Parties shall include, without limitation; (i) adequate protection liens and claims as set forth herein; (ii) interest payments in cash paid on the last Business Day of each month at the rate accruing since the Petition Date (which is and shall be deemed for all purposes to be the default rate set forth in Section 2.07 of the B-2 Term Loan Credit Agreement with respect to ABR Loans (as defined in the B-2 Term Loan Credit Agreement)); (iii) payment of all reasonable and documented prepetition and postpetition fees and expenses of the B-2 Secured Parties' legal and financial advisors as set forth in paragraph 12(b)(iii) of the Filed Proposed DIP Order, including, for the avoidance of doubt, any fees and expenses of White & Case LLP, as counsel to Citadel Credit Master Fund LLC and its affiliates; (iv) delivery by the Debtors to the B-2 Secured Parties (substantially concurrent with delivery to the Junior DIP Agent) of all Chapter 11 Cases filings, financial statements, reports, certificates, notifications, updates, and related items that are required to be delivered to the Junior DIP Agent pursuant to the Reporting Covenants attached hereto as Annex 2, including all items described in the "Additional Information Covenants" herein; (v) the Debtors shall schedule a weekly teleconference between their financial advisors and management team and the B-2 Lenders and their respective advisors (unless the B-2 Lenders request a lesser frequency); (vi) the B-2 Lenders shall have reasonable access to the Debtors' financial advisors, management team and books and records (subject to customary exceptions); (vii) the Debtors shall deliver to the B-2 Agent and the B-2 Lenders and their advisors by 5:00 pm EST on Friday of each week (commencing the first full week after the Interim Order Entry Date) with information for the immediately preceding calendar week ending on a Friday, a status update regarding the sale process contemplated by the Bankruptcy Court's final order approving procedures for one or more sales of all or substantially all of the Debtors' assets in form and substance in all material respects acceptable to the Junior DIP Lender and permitting the B-2 Lenders (or the B-2 Agent on behalf of the B-2 Lenders) to credit bid the full amount of the B-2 Obligations (the "<u>Bidding Procedures Order</u>"), including reports of inbound interest, outbound solicitation, and status of diligence and bids; *provided* that the Borrower shall be entitled to restrict and/or redact commercially sensitive information to protect the competitive sales process as determined in its good faith judgment; *provided, further,* that, solely if the B-2 Lenders become a potential bidder, the Loan Parties shall not be required to provide information to the B-2 Lenders regarding the sale process that is not available to all potential bidders; (viii) the Budget shall be satisfactory to the B-2 Lenders; (ix) the Debtors shall comply with the Approved Budget (subject to Permitted Variances) as set forth in the Filed Proposed DIP Order; and (x) except as permitted by the Budget (subject to Permitted Variances), the Debtors shall not make any payment in settlement of any claim, action or proceeding without the prior written consent of the B-2 Lenders.

</td></tr>
<tr><td>

**Cash Collateral Termination**

</td><td>

The cash collateral termination events and remedies of the Prepetition ABL Secured Parties and UST Secured Parties shall be as set forth in the Filed Proposed DIP Order and the UST Adequate Protection Order, respectively.

</td></tr>
<tr><td>

**DIP Orders**

</td><td>

The DIP Orders shall:

1.      provide that, so long as there are any B-2 Obligations outstanding and until all B-2 Obligations have been indefeasibly paid in full in cash, the Junior DIP Agent and the Junior DIP Lender shall not exercise any enforcement rights with respect to the Collateral,

</td></tr>
</table>

12

|  | and the enforcement rights with respect to the Collateral shall otherwise be consistent with the priorities for liens and claims securing the DIP Facility as set forth herein and the Senior ICA Provisions; |
|--|--|
|  | 2.      provide that, so long as there are (i) any Prepetition UST Tranche B Obligations outstanding or (ii) any Prepetition ABL Obligations (as defined in the Filed Proposed DIP Order) outstanding which have not been fully cash collateralized and until (x) all Prepetition UST Tranche B Obligations have been paid in full in cash and (y) all Prepetition ABL Obligations have been paid in full in cash or fully cash-collateralized, as applicable, the Junior DIP Secured Parties shall not exercise any enforcement rights with respect to the Collateral (other than with respect to the B-2 Collateral, subject to the foregoing paragraph), and the enforcement rights with respect to the Collateral (other than with respect to the B-2 Collateral, subject to the foregoing paragraph) shall otherwise be consistent with the priorities for liens and claims securing the DIP Facility as set forth herein and the Senior ICA Provisions; |
|  | 3.      provide that in no event shall the Junior DIP Agent, Junior DIP Lender, B-2 Secured Parties or Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral; |
|  | 4.      with respect to the Junior DIP Facility, ABL Facility, the Postpetition B-2 Facility and the B-2 Term Loan Credit Agreement, the UST Tranche A Credit Agreement and the UST Tranche B Credit Agreement, approve the Debtors' waiver of all section 506(c) claims and any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and |
|  | 5.      otherwise be in form and substance satisfactory to the Junior DIP Lender, the B-2 Lenders, the ABL Agent, and the UST Secured Parties. |
| **Closing Date** | The closing date of the DIP Facility (the "Closing Date") shall occur within three (3) Business Days (as defined below) of the Interim Order Entry Date and shall be the first Business Day on which the conditions precedent set forth in this DIP Term Sheet have been satisfied or waived by the Junior DIP Lender and the B-2 Lenders. "Business Day" shall mean any day other than a Saturday, Sunday, or day on which banks in New York City are authorized or required by law to close. |
| **Maturity** | Borrowings shall be repaid in full and in cash, and the commitments shall terminate, on the earliest to occur (the "Maturity Date") of the following: (i) February [___], 2024 (the "Scheduled Maturity Date"); provided, that the Scheduled Maturity Date may be extended by the Junior DIP Lender to May [___], 2024,[6] with the Debtors' consent; provided, however, that the Scheduled Maturity Date may not be extended unless and until all Prepetition UST Tranche A Obligations and Prepetition UST Tranche B Obligations have been paid in full in cash); (ii) the effective date or the date of the substantial consummation (as defined in section 1102(2) of the Bankruptcy Code) of a chapter 11 plan in the Chapter 11 Cases (a "Chapter 11 Plan") that has been confirmed by an order of the Bankruptcy Court (the "Plan Effective Date"); (iii) the date the Bankruptcy Court orders the conversion of the bankruptcy case of any of the Loan Parties to a liquidation under Chapter 7; (iv) the date the Bankruptcy Court orders the dismissal of the bankruptcy case of any of the Loan |

---

[6]      270 days from Closing Date.

| | |
|---|---|
| | Parties; (v) the acceleration of the loans or termination of the commitments under the DIP Facility, including as a result of the occurrence of an Event of Default; and (vi) the date that is 45 calendar days after the Petition Date if the Final Order Entry Date shall not have occurred by such date; *provided* that no prepayment, repayment, repurchase, or exchange of borrowings under the Junior DIP Facility shall occur until the B-2 Obligations have first been indefeasibly paid in full in cash and any such prepayment, repayment, repurchase, or exchange shall otherwise be consistent with the priorities for liens and claims securing the DIP Facility as set forth herein.<br><br>Any order confirming a Chapter 11 Plan shall not discharge or otherwise affect in any way the joint and several obligations of the Loan Parties to the Junior DIP Lender or the B-2 Secured Parties under the DIP Facility and the DIP Loan Documents, other than after the indefeasible payment in full and in cash to the Junior DIP Lender and the B-2 Secured Parties (subject to the priorities set forth herein) of all respective obligations under the DIP Facility and the DIP Loan Documents on or before the Plan Effective Date and the termination of the Commitments. |
| **Interest; Fees** | The interest rate, default rate, and fees (x) under the Junior DIP Facility are set forth in <u>Annex 1-A</u> hereto and that certain Fee Letter dated on or about the date hereof (the "<u>Fee Letter</u>") by and between the Borrower and Alter Domus Products Corp. and (y) under the Postpetition B-2 Facility are set forth in Annex 1-B hereto and that certain Amended and Restated Fee Letter dated on or about the date hereof (the "<u>Amended and Restated Fee Letter</u>") by and between the Borrower and Alter Domus Products Corp. |
| **Conditions Precedent** | The obligations of the Junior DIP Lender and the B-2 Lenders to make any DIP Loans shall be conditioned solely on the satisfaction or waiver of the following:<br><br><u>Interim Order/Bankruptcy Matters</u>.<br><br>1.    The Bankruptcy Court shall have entered an Interim Order that shall be in form and substance acceptable in all material respects to the Junior DIP Agent, Junior DIP Lender, B-2 Lenders, the B-2 Agent, the ABL Agent, and the UST Secured Parties, shall be in full force and effect, and shall not (in whole or in part) have been reversed, modified, amended, stayed, vacated, appealed, or subject to a stay pending appeal or otherwise challenged or subject to any challenge. The Loan Parties shall be in compliance in all material respects with the Interim Order.<br><br>2.    Entry of the UST Adequate Protection Order.<br><br>3.    All orders entered by the Bankruptcy Court pertaining to cash management and adequate protection and all other motions and documents filed or to be filed with, and submitted to, the Bankruptcy Court in connection therewith shall be in form and substance reasonably satisfactory to the Junior DIP Lender, the B-2 Lenders, and the ABL Agent.<br><br><u>Budgets and Financial Information</u>.<br><br>1.    The Junior DIP Agent, the Junior DIP Lender, the B-2 Agent, the B-2 Lenders and the Prepetition Secured Parties shall have received the Budget as of the Closing Date, which Budget shall be in form and substance satisfactory to the Junior DIP Agent, the Junior DIP Lender, the B-2 Lenders, the ABL Agent, and the UST Secured Parties; *provided*, that the Budget filed in connection with the Initial DIP Motion shall be acceptable to each of the Junior DIP Lender, the B-2 Lenders, the ABL Agent, and the UST Secured Parties. Any amendments, modifications, updates, or extensions to the Approved Budget shall |

require the express written consent of the Junior DIP Lender, the B-2 Lenders, the ABL Agent, and the UST Secured Parties.

<u>Customary Closing Documents</u>.

1.    All reasonable invoiced costs, fees, expenses (including reasonable and documented legal fees and expenses) of the Junior DIP Agent and Junior DIP Lender and the B-2 Secured Parties and other compensation required by the DIP Loan Documents and this DIP Term Sheet shall have been paid or reimbursed on or prior to the Closing Date (solely to the extent invoiced in advance thereof).

2.    The Junior DIP Lender shall be satisfied that the Loan Parties have complied with the following customary closing conditions:  (i) the delivery of corporate records and documents from public officials, secretary's certificates, and officer's certificates; and (ii) evidence of authority.  The Loan Parties and the transactions contemplated by this DIP Term Sheet shall be in compliance in all material with all applicable laws and regulations.

3.    The Loan Parties have not transferred assets or incurred any debt or obligations outside the ordinary course of business since July 7, 2023, except as disclosed to the Junior DIP Lender and B-2 Lenders in writing (which may be by email) prior to the Closing Date.

4.    The Junior DIP Agent and the B-2 Agent shall have received all documentation and other information that the Junior DIP Agent and/or the B-2 Agent reasonably requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the USA Patriot Act.

**<u>Conditions to All Loans and all Withdrawals from the DIP Proceeds Account</u>**:

With respect to all borrowings under the DIP Facility and all withdrawals from the DIP Proceeds Account:

1.    With respect to borrowings under the DIP Facility and withdrawals from the DIP Proceeds Account that occur on or after the date that is 45 days following the date on which the Chapter 11 Cases are commenced (the "<u>Petition Date</u>"), the Final Order shall be in full force and effect and shall not (in whole or in part) have been modified or amended absent written consent of the Junior DIP Lender and the B-2 Lenders or reversed, stayed, vacated, appealed, or subject to a stay pending appeal or otherwise challenged or subject to any challenge absent written consent of the Junior DIP Lender or the B-2 Lenders.

2.    The Loan Parties shall be in compliance in all material respects with each order entered in the Chapter 11 Cases, including the DIP Orders and the Cash Management Order.

3.    The Loan Parties shall be in compliance with the Budget (subject to Permitted Variances).

4.    The following statements shall be true and correct:  (i) the representations and warranties contained in the DIP Loan Documents are true and correct in all material respects (including on and as of each date the Loan Parties request to borrow DIP Loans and Postpetition B-2 Loans) as though made on and as of such date, except to the extent that any such representation or warranty expressly relates to an earlier date (in which case such representation or warranty shall be true and correct in all material respects on and as

|  | of such earlier date) and (ii) no Default or Event of Default shall have occurred and be continuing on such date. |
|---|---|
| 5. | If reasonably requested, execution and delivery by the Loan Parties of the DIP Loan Documents and promissory notes (if requested by the Junior DIP Lender or any B-2 Lender) evidencing the loans made and to be made under the Junior DIP Facility or the Postpetition B-2 Facility, as applicable. |
| 6. | The Junior DIP Agent and the B-2 Agent shall have received a borrowing notice not later than 1:00 p.m., New York City time at least one (1) Business Day prior to the borrowing. |

| **Covenants** | The covenants under the DIP Loan Documents shall be subject to the respective Documentation Principles and subject to, and based on the terms and conditions of, the DIP Orders, as applicable. Neither the DIP Credit Agreement nor the Postpetition B-2 Loan Documents shall include any "anti-hoarding" covenant or mandatory prepayment provisions. The covenants shall include:

**Additional Information Covenants**:  Additional information covenants shall apply for the benefit of the Junior DIP Lender and the B-2 Secured Parties as follows: |
|---|---|

|  | |
|---|---|
| 1. | <u>Chapter 11 Cases Filings</u>. Delivery by the Loan Parties to the Junior DIP Agent and the B-2 Lenders of copies of all pleadings, motions, applications, judicial information, financial information, and other documents filed by or on behalf of any other Loan Party with the Bankruptcy Court in the Chapter 11 Cases, or distributed by or on behalf of any Loan Party to any official committee appointed in the Chapter 11 Cases, including all motions for "first day" and "second day" relief. |
| 2. | <u>Conference Call</u>. The Loan Parties shall schedule a weekly teleconference between their financial advisors and management team and the Junior DIP Agent and Junior DIP Lender and the B-2 Secured Parties and their respective advisors (unless the Junior DIP Lender requests a lesser frequency). |
| 3. | <u>Access.</u> The Junior DIP Agent, the Junior DIP Lender and the B-2 Secured Parties shall have reasonable access to the Company's financial advisors, management team and books and records (subject to customary exceptions); provided that the Borrower shall be entitled to restrict and/or redact information to protect the competitive sales process as determined in its good faith judgment. |
| 4. | <u>Sale Process Reporting.</u>  Delivery by the Loan Parties to the Junior DIP Agent, Junior DIP Lender, B-2 Agent, and the B-2 Lenders and their respective advisors by 5:00 pm EST on Friday of each week (commencing the first full week after the Closing Date) with information for the immediately preceding calendar week ending on a Friday, a status update regarding the sale process contemplated by the Bidding Procedures Order, including reports of inbound interest, outbound solicitation, and status of diligence and bids, *provided* that the Borrower shall be entitled to restrict and/or redact commercially sensitive information to protect the competitive sales process as determined in its good faith judgment; *provided, however*, if the Junior DIP Lender and/or the B-2 Lenders is / are / become(s) a potential bidder, the Loan Parties shall not be required under the DIP Loan Documents to provide information to the Junior DIP Lender and/or B-2 Lenders, as applicable, regarding the sale process that is not available to all potential bidders. |
| 5. | <u>Reporting Frequency.</u>  Delivery by the Loan Parties to the Junior DIP Agent, Junior DIP Lender, the B-2 Agent and the B-2 Lenders and their respective advisors of a daily |

liquidity report (which may be sent by email) (to commence with the second Business Day following the Closing Date).

6. <u>Disbursements Reporting.</u>  Delivery by the Loan Parties to the Junior DIP Agent, Junior DIP Lender, the B-2 Agent, and the B-2 Lenders and their respective advisors by 5:00 pm EST on Friday of each week with information for the immediately preceding calendar week ending on a Friday (commencing the first full week after the Closing Date) an itemized list of disbursements.

7. <u>Receivables Reporting.</u>  Delivery by the Loan Parties to the Junior DIP Agent, Junior DIP Lender, B-2 Agent, and the B-2 Lenders and their respective advisors by 5:00 pm EST on Friday of each week with information for the immediately preceding calendar week ending on a Friday (commencing the first full week after the Closing Date) a list of receivables and payables.

8. <u>Agreements.</u>  Notification by the Loan Parties to the Junior DIP Lender and the B-2 Lenders and their respective advisors, within one (1) Business Day (or such longer timeframe as agreed by the Junior DIP Lender and B-2 Lenders), of any new material agreement entered into or material obligation incurred by any Loan Party.

**Affirmative Covenants**: Affirmative covenants in favor of the Junior DIP Lender and, where indicated, the B-2 Secured Parties, as follows:

1. Comply in all material respects with (x) with respect to the Junior DIP Lender and the B-2 Secured Parties, the DIP Order and (y) each other order entered by the Bankruptcy Court in the Chapter 11 Cases .

2. Upon the reasonable request of the Junior DIP Agent, Junior DIP Lender, B-2 Agent, or B-2 Lenders, access to information (including historical information) and personnel regarding strategic planning, cash, and liquidity management, and operational and restructuring activities (subject to customary exceptions); *provided* that the Borrower shall be entitled to restrict and/or redact information in order to protect the competitive sales process  as determined in its good faith judgment; *provided*, *further*, if the Junior DIP Lender and/ or the B-2 Lenders is / are / become(s) a potential bidder, the Loan Parties shall not be required under the DIP Loan Documents to provide information to the Junior DIP Lender and/or the B-2 Lenders, as applicable, regarding the sale process that is not available to all potential bidders.

3. With respect to the Junior DIP Lender, comply with the Budget as set forth on Annex 3.

4. Pay all fees and expenses of estate professionals when due in accordance with the interim compensation procedures approved in the Chapter 11 Cases.

**Negative Covenants**: Negative covenants in favor of the Junior DIP Lender and, where indicated, the B-2 Secured Parties, as follows:

1. Absent the consent of the Junior DIP Lender and, to the extent constituting or impacting any B-2 Priority Collateral, the B-2 Lenders, (a) assume or reject any executory contract or unexpired lease or (b) consent to termination or reduction of the exclusivity period to

|  | file and solicit a chapter 11 plan or fail to object to any motion seeking to terminate or reduce such exclusivity period. |
|  | 2. For the benefit of the Junior DIP Lender and the B-2 Secured Parties, modify or alter organizational documents in any material manner, except as required by the Bankruptcy Code. |
|  | 3. Assert any right of subrogation or contribution against any other Loan Party until all borrowings under the DIP Facility are indefeasibly paid in full and in cash as provided herein and the commitments are terminated. |
|  | 4. Except as set forth in the Approved Budget (subject to Permitted Variances), the DIP Orders, or the "first day" or "second day" orders, make any payment of principal or interest or otherwise on account of any prepetition indebtedness or payables, other than UST Adequate Protection Payments, the payment of ABL Adequate Protection Fees and Expenses (as defined in the Filed Proposed DIP Order), adequate protection payments for the B-2 Lenders, any other payments contemplated by the DIP Order (including repayments of the B-2 Obligations as set forth herein), and other payments agreed in writing by the Junior DIP Lender and B-2 Lenders and authorized by the Bankruptcy Court. |
|  | 5. Incur any new debt, including redrawing, and/or reborrowing the ABL Facility. |
|  | 6. For the benefit of the Junior DIP Lender and the B-2 Secured Parties, incur any new consensual liens on any assets of any Loan Party. |
|  | 7. Other than for director fees included in and as permitted by the Approved Budget (subject to Permitted Variances), subject to the Debtors' ability to make UST Adequate Protection Payments pursuant to the UST Adequate Protection Order, make any payment to any board member or shareholder of any Loan Party in their respective capacities as such. |
|  | 8. For the benefit of the Junior DIP Lender and, to the extent involving B-2 Priority Collateral, the B-2 Secured Parties, no asset sales other than (i) immaterial assets in an aggregate amount not exceeding $250,000 during the term, and (ii) in accordance with the Bidding Procedures Order, the DIP Order and other applicable "first day" or "second day" orders. |
|  | 9. Abandonment of any material assets or any similar action absent written approval of the Junior DIP Lender and the B-2 Lenders, and with respect to the Prepetition UST Tranche B Priority Collateral, the UST Secured Parties. |
| **Milestones** | The Junior DIP Facility and DIP Orders shall contain the following milestones (which will not limit or modify the milestones set forth in the UST Adequate Protection Order for the UST Tranche B Priority Collateral, except as modified in Annex 4), such milestones may be extended or waived in writing (which may be via email) by the Junior DIP Lender:[7] |

---

[7] The failure by the Debtors to meet any milestone set forth in this DIP Term Sheet, unless otherwise waived by the Junior DIP Lender, will be an Event of Default under the Junior DIP Facility and under the Postpetition B-2 Credit Agreement. The failure by the Debtors to meet any milestone set forth in this DIP Term Sheet that is also

1. No later than fifteen (15) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Interim Order and the UST Adequate Protection Order, each in form and substance satisfactory to the Junior DIP Lender, the Junior DIP Agent, the B-2 Agent, and the B-2 Lenders;

2. By no later than fifteen (15) calendar days entry of the Interim Order, the Canadian Court shall have issued the Canadian Initial Recognition Order, the Canadian Supplemental Order and the Canadian Interim DIP Recognition Order;

3. No later than thirty (30) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Bidding Procedures Order, in form and substance reasonably satisfactory to the Junior DIP Lender;

4. By no later than fifteen (15) calendar days after entry of the Final Order, the Borrower, in its capacity as foreign representative on behalf of the Debtors, shall have filed a motion with the Canadian Court for the recognition of, and the Canadian Court shall have issued, the Canadian Final DIP Recognition Order;

5. No later than forty-five (45) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Final Order, in form and substance satisfactory in all material respects to the Junior DIP Lender, the Junior DIP Agent, the B-2 Agent, and the B-2 Lenders;

6. No later than ninety (90) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids for the B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net cash proceeds of at least $250 million; and

7. No earlier than one-hundred twenty (120) calendar days after the Petition Date (which may be extended to one-hundred fifty (150) calendar days after the Petition Date with (i) the consent of the Prepetition ABL Agent, the B-2 Agent, and the UST Secured Parties (in each case such consent not to be unreasonably withheld), and (ii) the consent of the Junior DIP Lender in its sole discretion) and no later than one-hundred and fifty (150) calendar days after the Petition Date (which may be extended to one-hundred and eighty (180) calendar days after the Petition Date with (i) the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the UST Secured Parties (in each case such consent not to be unreasonably withheld), and (ii) the consent of the Junior DIP Lender in its sole discretion), the Debtors shall have consummated one or more sales of all or substantially all of their assets in accordance with the Bidding Procedures Order that generates net cash proceeds in respect of the B-2 Priority Collateral of at least 100% of outstanding obligations under the Junior DIP Facility and the B-2 Obligations and shall have indefeasibly repaid the B-2 Obligations and outstanding obligations under the Junior DIP Facility in full in cash.

---

a milestone under the UST Adequate Protection Order, unless otherwise waived by the UST Secured Parties, will be a cash collateral termination event for the UST Secured Parties under the UST Adequate Protection Order..

| | |
|---|---|
| **Representations and Warranties** | The representations and warranties of the DIP Loan Parties under the DIP Loan Documents shall be subject to the Documentation Principles and subject to, and based on the terms and conditions of, the DIP Order, as applicable. |
| **Payments; Prepayments** | The Borrower shall make each payment (including principal of or interest on any borrowing or any fees or other amounts due and payable) hereunder and under any other DIP Loan Document not later than 2:00 p.m., New York City time, on the date when due in immediately available Dollars, without setoff, defense or counterclaim. Any amounts received after such time on any date may, in the discretion of the Junior DIP Agent or the B-2 Agent, as applicable, be deemed to have been received on the next succeeding Business Day for purposes of calculating interest thereon. Each such payment shall be made to the Junior DIP Agent or the B-2 Agent. The Junior DIP Agent or the B-2 Agent shall promptly distribute to the Junior DIP Lender or each B-2 Lender any payments received by it on behalf of such Junior DIP Lender or such B-2 Lender. |
| | At any time after the B-2 Obligations have been indefeasibly paid in full in cash, the Loan Parties may, at any time, without premium or penalty, (i) repay the loans under the Junior DIP Facility and/or (ii) reduce the Junior DIP Facility commitments, in each case in full or in part; *provided*, *however*, that no repayment or prepayment of borrowings under the Junior DIP Facility shall occur until the B-2 Obligations have been indefeasibly paid in full in cash and any such repayment or prepayment shall otherwise be consistent with the priorities for liens and claims securing the Junior DIP Facility and the B-2 Obligations as set forth herein. The Loan Parties shall notify the Junior DIP Agent in writing (which may be by email) of any mandatory prepayment of the loans under the Junior DIP facility not later than 1:00 p.m., New York City time, at least one (1) Business Day prior to the date of such prepayment. |
| | The B-2 Obligations shall be non-call for 120 days from the Closing Date and par thereafter. A Make-Whole Amount (as defined below) shall be payable upon acceleration, termination, prepayment or repayment during the non-call period. |
| | "Make-Whole Amount" means, as of any date of determination, an amount equal to the aggregate amount of interest which would have otherwise been payable on the principal amount of the B-2 Obligations repaid or prepaid (or deemed repaid or prepaid in the case of an acceleration or termination of the B-2 Obligations) on such date from the date of repayment or prepayment until the date falling 120 days after the Closing Date discounted at the Treasury Rate (as defined below) plus 0.50%. |
| | "Treasury Rate" means, with respect to any repayment or prepayment of B-2 Obligations, a rate per annum (computed on the basis of actual days elapsed over a year of 360 days) equal to the rate determined by the B-2 Agent on the date falling three Business Days prior to the date of such repayment or prepayment, to be the yield expressed as a rate listed in The Wall Street Journal for United States Treasury securities most nearly equal to the period from the date of such prepayment or repayment to and including the date falling 120 days after the Closing Date. |
| **Events of Default** | The Events of Default under the DIP Loan Documents shall be subject to the Documentation Principles and subject to, and based on the terms and conditions of, the DIP Orders, subject to the following modifications with respect to the Junior DIP Facility and, where indicated, the Postpetition B-2 Facility: |

| | |
|---|---|
| | 1.   **Budget**.  The proceeds of any DIP Loans shall have been expended in a manner that is not in accordance with the Budget (subject to permitted variances set forth on Annex 3 ("Permitted Variances") with respect to disbursements). |
| | 2.   **Entry of Final Order**.  For the benefit of the Junior DIP Lender and the B-2 Secured Parties, the entry of the Final Order shall not have occurred within 45 calendar days after the Petition Date. |
| | 3.   **Prepetition Claims**.  For the benefit of the Junior DIP Lender and, with respect to (A)(iii) and (B), the B-2 Secured Parties), any Loan Party shall file a motion seeking, or the Bankruptcy Court shall enter, an order (A) approving payment of any pre-petition claim (or the Loan Party shall otherwise make a payment on any prepetition claim) other than (x) as provided for in (i) the first day orders or second day orders, (ii) the Budget (subject to Permitted Variances), or (iii) the DIP Order (including repayments of the B-2 Obligations as set forth herein) or (y) otherwise consented to by the Junior DIP Agent and Junior DIP Lender in writing, (B) granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to any holder of any security interest to permit foreclosure on any assets with a fair market value in excess of $250,000; or (C) except as provided in the DIP Order, and the other adequate protections set forth in the DIP Orders and the UST Cash Collateral Order, approving any settlement or other stipulation not approved by the Junior DIP Lender and not included in the Budget with any secured creditor of any Loan Party providing for payments as adequate protection or otherwise to such secured creditor. |
| | 4.   **Bidding Procedures Order**.  Reserved. |
| | 5.   **Sale Order**.  Reserved. |
| | 6.   **Plan**.  For the benefit of the Junior DIP Lender and the B-2 Secured Parties, the filing of any plan that does not propose to indefeasibly repay the B-2 Obligations and the obligations under the Junior DIP Facility in full in cash. |
| **Junior DIP Agent and B-2 Agent** | The Junior DIP Lender and the Junior DIP Agent and the B-2 Lenders and the B-2 Agent hereby agree to the agency provisions set forth in Annex 6 hereto, which are incorporated herein by reference. |
| **Indemnity; Expenses** | The Loan Parties shall, jointly and severally, be obligated to indemnify and hold harmless the Junior DIP Agent, the Junior DIP Lender, the B-2 Agent and the B-2 Lenders, and each of their respective affiliates, officers, directors, fiduciaries, employees, agents, advisors, attorneys, and representatives (collectively, the "Related Parties") from and against all losses, claims, liabilities, damages, and expenses (including out-of-pocket fees and disbursements of counsels) in connection with any investigation, litigation, or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Facility, the DIP Loan Documents or the transactions contemplated in this DIP Term Sheet; provided that, notwithstanding the foregoing, such indemnity shall not, as to any indemnitee, be available to the extent that such losses, damages, claims, liabilities and expenses resulted from the gross negligence, bad faith or willful misconduct of such indemnitee or of any affiliate, director, officer, employee, counsel, agent or attorney-in-fact of such indemnitee, as determined by the final non-appealable judgment of a court of competent jurisdiction. The Loan Parties shall, jointly and severally, be obligated to pay or reimburse the Junior DIP Agent, the Junior DIP Lender, the B-2 Agent and the B-2 Lenders, and each of their respective affiliates, officers, directors, fiduciaries, |

|  | employees, agents, advisors, attorneys, and representatives incurred in connection with (i) the preparation, negotiation and execution of this DIP Term Sheet and the other DIP Loan Documents, and any amendment, waiver, consent or other modification of the provisions hereof and thereof (whether or not the transactions contemplated thereby are consummated), and the consummation and administration of the transactions contemplated hereby and thereby (including out-of-pocket fees and disbursements of counsels) and (ii) the enforcement (whether through negotiations, legal proceedings or otherwise) of any rights or remedies under this DIP Term Sheet or the other DIP Loan Documents (including out-of-pocket fees and disbursements of counsels).<br><br>To the extent permitted by applicable law, no Loan Party shall assert, and each hereby waives, any claim against the Junior DIP Agent, the Junior DIP Lender, the B-2 Agent, the B-2 Lenders and their Related Parties, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this DIP Term Sheet, any other DIP Loan Document or any agreement or instrument contemplated hereby or thereby.<br><br>The provisions of this section entitled "Indemnity; Expenses" shall survive the resignation or replacement of the Junior DIP Agent or the B-2 Agent, as applicable, the termination of the DIP Loan Documents, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any DIP Loan Document. |
|---|---|
| **Credit Bidding** | The Junior DIP Lender and Junior DIP Agent expressly waive any rights to credit bid the obligations outstanding under the Junior DIP Facility. For the avoidance of doubt, the Prepetition Agents will have the rights to credit bid as set forth in the Filed Proposed DIP Order and the UST Adequate Protection Order. The B-2 Agent, upon the instruction of the B-2 Lenders, shall have the right and authority to credit bid up to the full amount of the B-2 Obligations. Any credit bid with respect to all or any portion of the ABL Priority Collateral shall require all Prepetition ABL Obligations to be paid in full in cash or cash collateralized, as applicable, upon the consummation of such credit bid. |
| **Bid Procedures / Stalking Horse Purchaser** | In connection with the DIP Facility and Bidding Procedures Order, the Debtors shall enter into an Asset Purchase Agreement (the "Stalking Horse Purchase Agreement") pursuant to which Old Dominion Freight Line, Inc., as buyer (the "Stalking Horse Purchaser"), shall purchase some or all of the Real Property constituting Non-UST Tranche B Term Priority Collateral (as defined in the Intercreditor Agreement) (the "Stalking Horse Purchase Properties") for no less than $1.5 billion (the "Stalking Horse Purchase Amount").<br><br>The Stalking Horse Purchase Agreement shall:<br>(i)    provide that the Stalking Horse Purchaser's obligation to purchase the Stalking Horse Purchase Properties pursuant to the Stalking Horse Purchase Agreement shall not be conditioned on any contingency other than title;<br>(ii)    provide that any breakup fee shall not exceed $26 million and expense reimbursement payable to the Stalking Horse Purchaser shall not exceed $2 million;<br>(iii)    include a deposit equal to 5% of the Stalking Horse Purchase Amount;<br>(iv)    a representation that the Stalking Horse Purchaser is a credit worthy entity with cash and/or financing commitments for the entire Stalking Horse Purchase Amount;<br>(v)    not include any limitation on Stalking Horse Purchaser damages;<br>(vi)    provide that the Stalking Horse Purchaser will act as a backup bidder, if applicable;<br>(vii)    provide that the Stalking Horse Purchaser shall pay any and all transfer taxes and real estate closing costs; |

| | |
|---|---|
| | (viii)    be acceptable to the Junior DIP Lender, the B-2 Lenders, and the UST Secured Parties, with such acceptance not to be unreasonably withheld; |
| | (ix)    provide that, provided it is consistent with, and not contrary to, the Debtors' fiduciary duties, closing shall occur no later than one-hundred fifty (150) calendar days after the Petition Date (which may be extended to one-hundred eighty (180) calendar days with (i) the written consent of the Prepetition ABL Agent, the B-2 Agent, and the UST Secured Parties (in each case such consent not to be unreasonably withheld), and (ii) the written consent of the Junior DIP Lender in its sole discretion); and |
| | (x)    provide that the Stalking Horse Bid shall remain effective for no less than one hundred and eighty (180) days. |
| **No Assignments or Participations** | The DIP Loan Documents shall not include rights of assignment or participation rights other than with respect to the B-2 Obligations.<br><br>The B-2 Obligations shall be freely transferable by the B-2 Lenders. |
| **Amendment and Waiver** | No provision of this DIP Term Sheet may be amended other than by an instrument in writing signed by the Borrower, Junior DIP Agent, Junior DIP Lender, B-2 Agent and the B-2 Lenders. |
| **Governing Law** | The DIP Loan Documents will provide that the Loan Parties will submit to the non-exclusive jurisdiction and venue of the Bankruptcy Court or, in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, then in any state or federal court of competent jurisdiction in the state, county, and city of New York, borough of Manhattan, and shall waive any right to trial by jury. New York law shall govern the DIP Loan Documents (other than security documents to be governed by local law, to be determined by the Junior DIP Agent or the B-2 Agent, as applicable). |
| **Release** | Releases as set forth in the Filed Proposed DIP Order and UST Adequate Protection Order. For the avoidance of doubt, the Junior DIP Lender and Junior DIP Agent and the B-2 Secured Parties shall receive releases no less favorable than those contained in the Filed Proposed DIP Order and Filed Proposed UST Cash Collateral Order. |
| **Remedies** | Subject to the Senior ICA Provisions and the Intercreditor Agreement, remedies as set forth in the Filed Proposed DIP Order and UST Adequate Protection Order; *provided* that the Prepetition Secured Parties shall have remedies consistent with, and no less favorable than, the remedies of the ABL Agent as set forth in the Filed Proposed DIP Order; *provided*, *further*, that the B-2 Secured Parties shall have remedies and the rights thereof (including, without limitation, the right to enforce against Collateral) consistent with, and no less favorable than, the remedies of the "DIP Agent" and the "DIP Secured Parties" (as defined in the Filed Proposed DIP Order) and the B-2 Agent and B-2 Secured Parties as set forth in the Filed Proposed DIP Order; and *provided, further,* that neither the Junior DIP Agent nor the Junior DIP Lender shall be permitted to exercise any remedies with respect to the B-2 Priority Collateral unless the B-2 Obligations, the Prepetition ABL Obligations, and the Prepetition UST Tranche B Obligations (as defined in the UST Adequate Protection Order) have been indefeasibly paid in full in cash (or cash collateralized, as applicable) and otherwise subject to the priorities of the liens and claims securing the DIP Facility as set forth herein. |

**[Signature Pages to Follow]**

## Annex 1-A[8]

### Junior DIP Facility

### Interest, Premiums, Fees

| | |
|---|---|
| **Interest Rate**: | All amounts outstanding under the Junior DIP Facility will bear interest 15.00% *per annum* and shall be paid in cash on the last Business Day of each month. |
| **Default Interest**: | During the continuance of an Event of Default, the Junior DIP Loans and all other outstanding obligations under the Junior DIP Facility will bear interest at an additional 2.0% *per annum* above the interest rate otherwise applicable. |
| **DIP Fee**: | As consideration for the Junior DIP Lender providing the Junior DIP Facility, the Borrower hereby agrees to pay (or cause to be paid) to the Junior DIP Agent, for the account of the Junior DIP Lender, a closing fee (the "DIP Closing Fee") in an aggregate amount equal to 4.0% of the Junior DIP Facility.  The DIP Closing Fee will be earned on the date of execution of the Junior DIP Facility. The DIP Closing Fee will be payable on the Maturity Date, only if the B-2 Obligations have first been indefeasibly paid in full in cash. |
| **Agency Fees**: | As set forth in the Fee Letter. |
| **Nature of Interest and Fees**: | Payable in cash and non-refundable under all circumstances. |

---

[8] For the avoidance of doubt, the Additional Junior DIP Commitment's interest rate and exit fee are not reflected this Annex 1-A and are otherwise reflected in the DIP Term Sheet.

### Annex 1-B

**Postpetition B-2 Facility**

**Interest, Premiums, Fees**

| | |
|---|---|
| **Interest Rate**: | All amounts outstanding under the Postpetition B-2 Facility will bear interest at the Alternate Base Rate (as defined in the B-2 Term Loan Credit Agreement) plus 8.50% *per annum* and shall be paid in cash on the last Business Day of each month. |
| **Default Interest**: | During the continuance of an Event of Default, the Postpetition B-2 Loans and all other outstanding obligations under the Postpetition B-2 Facility will bear interest at an additional 2.0% *per annum* above the interest rate otherwise applicable. |
| **Upfront Fee**: | An amount (the "Upfront Fee") equal to 4.0% of the aggregate amount of the Postpetition B-2 Facility as of the date of this DIP Term Sheet (i.e., $4.0 million). For the avoidance of doubt, the Upfront Fee will be paid-in-kind in full on the Closing Date. |
| **Agency Fees:** | As set forth in the Amended and Restated Fee Letter. |
| **Nature of Interest and Fees**: | Payable in cash (other than the Upfront Fee, which shall be paid-in-kind) and non-refundable under all circumstances. |

**Annex 2**

**Reporting Covenants[9]**

So long as the Junior DIP Lender shall have any commitment under the DIP Facility or any loan or other obligation (other than contingent indemnification or reimbursement obligations) under the DIP Loan Documents that is accrued or payable shall remain unpaid or unsatisfied, then from and after the date specified below, the Borrower shall deliver to the Junior DIP Agent for prompt further distribution to the Junior DIP Lender and its advisors:

(a)     not later than 5:00 p.m. New York time on the third business day of the last full calendar week of each month (commencing with August 30, 2023) occurring after the Closing Date (the "**Updated Budget Deadline**"), a supplement to, for the first such supplement, the Initial Budget, and for each supplement thereafter, the most-recently delivered Updated Budget (each such supplement which is approved in accordance with the terms of this clause (l), an "**Updated Budget**"), prepared by management of the Borrower in consultation with the Borrower's Operational Advisor covering the 13-week period that commences with the Saturday of the calendar week that includes such Updated Budget Deadline, consistent with the form and level of details set forth in the Initial Budget.  Each Updated Budget shall be, in each case, subject to the written approval of the Junior DIP Lender, the B-2 Lenders, the ABL Agent, and the UST Secured Parties (the "**Required Budget Approval Parties**"); provided that, if the Required Budget Approval Parties shall have not provided written approval of any proposed budget supplement prior to 5:00 (New York City time) on the third business day after receipt thereof (the "**Budget Review Time**"), the Required Budget Approval Parties shall be deemed to have accepted such proposed budget supplement; provided further that, (i) if a Required Budget Approval Party object in writing to any proposed budget supplement prior to the Budget Review Time, no proposed budget supplement covering the 13-week period covered by such rejected budget supplement shall become an Updated Budget until and unless the Required Budget Approval Parties approve thereof in writing (in their sole and absolute discretion), and (ii) the prior Approved Budget shall remain in effect until such time as the Required Budget Approval Parties so approve a revised budget supplement in accordance with the foregoing sub-clause (i).  As used herein, the "**Approved Budget**" shall mean (i) initially, the Initial Budget and (ii) thereafter, upon (and subject to) the approval (or deemed approval) of any Updated Budget by the Required Budget Approval Parties in accordance with the foregoing procedures, such Updated Budget.

(b)     not later than 5:00 p.m. New York time, on each business day (commencing with the second business day following the Closing Date), liquidity update (each, a "**Liquidity Report**"), which may be sent by email, specifying the aggregate amount of Liquidity of the Loan Parties and their Subsidiaries as of the end of business of the immediately preceding business day;

---

[9] Copies of all reporting and information provided (or required to be provided but for the Junior DIP Lender becoming a potential bidder) to the Junior DIP Agent or the Junior DIP Lender and its advisors pursuant to this Annex 2 shall also be provided concurrently to the B-2 Secured Parties, the UST Secured Parties, and each of their respective advisors.

(c)     not later than 5:00 p.m. New York time on each Budget Variance Test Date, the following:

  (i)     a Budget Variance Report for the most recently ended Budget Variance Test Period; and

  (ii)    an updated budget prepared by management of the Borrower (in consultation with the Borrower's Operational Advisor) covering the 13-week period that commences with the calendar week that includes such Wednesday (provided that this clause (c)(ii) may be satisfied, for each week on which an Updated Budget Deadline occurs, by delivery of the Updated Budget);

(d)     not later than 5:00 p.m. New York time on the Friday of each calendar week, with information for the immediately preceding calendar week ending on a Friday (commencing on Friday, August 25, 2023) the following, each in form and substance satisfactory to the Required Budget Approval Parties:

  (i)     a written report (each, a "**Disbursement Report**") of disbursements made during the period since delivery of the last Disbursement Report (or, for the first Disbursement Report delivered hereunder, since the Petition Date), including payroll payments made by department, payments to directors, and payments to professionals;

  (ii)    a written report (each, a "**Sale Report**") setting out updates in the monetization strategy of the Borrower, including an update on the status of the sale of each Real Property and other assets of the Loan Parties contemplated by the Bidding Procedures Order, a description of inbound interests and outbound solicitations, and updates on the status of diligence and bids since delivery of the last Sale Report (or, for the first Sale Report delivered hereunder, since the Petition Date); *provided, however,* if the Junior DIP Lender is / becomes a potential bidder, the Loan Parties shall not be required under the DIP Loan Documents to provide information to the Junior DIP Lender regarding the sale process that is not available to all potential bidders; and

  (iii)   a list of (A) current information with respect to all accounts receivable owed to the Loan Parties, including all collections, sales, reconciliations and payments in respect thereof, and (B) current information with respect to all accounts payable owed by the Loan Parties.

**Annex 3**

**Budget Variance Covenants**

Commencing with the Budget Variance Test Date occurring on Friday, August 25, 2023, and on each Budget Variance Test Date occurring thereafter, the Borrower shall not, nor shall it permit any of its Subsidiaries to, permit:

(a)      the sum of the actual aggregate cash receipts of the Borrower and its Subsidiaries (excluding proceeds of the Term Loans) for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be less than the Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Total Receipts" for such Budget Variance Test Period; or

(b)      the sum of the actual aggregate operating disbursements of the Borrower and its Subsidiaries for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Total Operating Disbursements" for such Budget Variance Test Period; or

(c)      the sum of the actual aggregate amounts paid by the Borrower and its Subsidiaries with respect to severance and accrued pre-petition wages for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line items in the Approved Budget entitled "Severance" and "Accrued Pre-Petition Wages" for such Budget Variance Test Period; or

(d)      the sum of the actual aggregate disbursements of the Borrower and its Subsidiaries with respect to lienholders and on account of taxes and other restructuring costs for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Prepetition Vendors & Taxes" for such Budget Variance Test Period.

To the extent that any Budget Variance Test Period encompasses a period that is covered in more than one Approved Budget, the applicable weeks from each applicable Approved Budget shall be utilized in making the calculations set forth herein.

The capitalized terms used in this DIP Term Sheet but not defined shall have the following meanings:

"<u>Budget Variance Report</u>" shall mean a weekly variance report prepared by management of the Borrower (in consultation with the Borrower's Operational Advisor), in form and detail reasonably satisfactory to the Junior DIP Lender and the B-2 Lenders, comparing for each applicable Budget Variance Test Period the actual receipts and disbursements against anticipated receipts and disbursements under the applicable Approved Budget, on a line by line and aggregate basis and in the same level of detail set forth in the Approved Budget, together with a written explanation for all material variances in any given Budget Variance Test Period and such other related information as the Required Lenders may reasonably request.

"<u>Budget Variance Test Date</u>" shall mean each of (a) Friday August 25, 2023, (b) Friday September 1, 2023, (c) Wednesday September 6, 2023 and (d) each Wednesday thereafter.

"Budget Variance Test Period" means, as of any date of determination, (a) with respect to the first Budget Variance Report delivered after the Closing Date and the first Budget Variance Test Date occurring on Friday August 25, 2023, the period starting on the Petition Date and ending on August 18, 2023, (b) with respect to the second Budget Variance Report delivered after the Closing Date and the Budget Variance Test Date occurring on Friday September 1, 2023, the period starting on the Petition Date and ending on August 25, 2023, (c) with respect to the third Budget Variance Report delivered after the Closing Date and the Budget Variance Test Date occurring on Wednesday September 6, 2023, the period starting on the Petition Date and ending on September 1, 2023 and (c) with respect to each Budget Variance Report delivered thereafter and each the Budget Variance Test Date occurring thereafter, the four-week period ending on the Friday of the week immediately preceding the applicable Budget Variance Test Date.

"Permitted Variance Percentage" shall mean:

(a)       with respect to clause (a) above, (i) with respect to the Budget Variance Test Period ending on August 18, 2023, 80%, (b) with respect to the Budget Variance Period ending on August 25, 2023, 85%, and (c) with respect to each Budget Variance Period ending thereafter, 90%;

(b)       with respect to clauses (b) through (d), (i) with respect to the Budget Variance Test Period ending on August 18, 2023, 120%, (ii) with respect to the Budget Variance Period ending on August 25, 2023, 115%, and (iii) with respect to each Budget Variance Period ending thereafter, 110%; and

(c)       with respect to clause(e), 120%.

**Annex 4**

**UST Milestones**

| Milestone | Date Listed in UST Adequate Protection Order [Docket No. 16-2] | New Date |
|---|---|---|
| 7(a)(ii): Court shall have entered the Interim DIP Order and the Interim UST Cash Collateral Order, each in form and substance reasonably satisfactory to the UST Secured Parties | No later than three (3) calendar days after the Petition Date | No later than fifteen (15) calendar days after the Petition Date |
| 7(a)(iii): The Court shall have entered the Bidding Procedures Order, in form and substance reasonably satisfactory to the UST Secured Parties | No later than ten (10) calendar days after the Petition Date | No later than thirty (30) calendar days after the Petition Date |
| 7(a)(iv): By no later than fifteen (15) calendar days after the granting of the Interim DIP Order and the Interim UST Cash Collateral Order by the Court, the Canadian Court shall have issued the Canadian Initial Recognition Order, the Canadian Supplemental Order, and the Canadian Interim DIP Recognition Order, each in form and substance reasonably satisfactory to the UST Secured Parties | No later than ten (10) calendar days after the Petition Date | Deleted portion already satisfied |
| 7(a)(v): The Court shall have entered the Final DIP Order and the Final UST Cash Collateral Order, each in form and substance satisfactory to the UST Secured Parties | No later than thirty (30) calendar days after the Petition Date | No later than forty-five (45) calendar days after the Petition Date |
| 7(a)(vi): The Borrower, in its capacity as foreign representative on behalf of the Debtors, shall have filed a motion with the Canadian Court for the recognition of, and the Canadian Court shall have issued, the Canadian Final DIP Recognition Order (capitalized terms used but not otherwise defined in this sub-paragraph (vi) shall have the meanings given to those terms in the DIP Credit Agreement), each in form and substance reasonably satisfactory to the UST Secured Parties | No later than forty (40) calendar days after the Petition Date | No later than fifteen (15) calendar days after the granting of the Final DIP Order. |
| 7(a)(vii): The Debtors shall have received unique, non-duplicative binding cash bids for the B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, Net Proceeds at least equal to $250 million (capitalized terms used but not otherwise defined in this sub-paragraph (vii) shall have the meanings | Unless otherwise waived or extended by the Required DIP Lenders pursuant to the Interim DIP Order, no later than fifty-five (55) calendar days after the Petition Date | No later than ninety (90) calendar days after the Petition Date |

| Milestone | Date Listed in UST Adequate Protection Order [Docket No. 16-2] | New Date |
|---|---|---|
| given to those terms in the DIP Credit Agreement) | | |
| 7(a)(ix): The Debtors shall have consummated Dispositions in accordance with the Bidding Procedures Order that either (i) generated Net Proceeds of B-2 Priority Collateral equal to at least 100% of the sum of the aggregate amount of Obligations outstanding as of such date or (ii) is consummated through a credit bid of the outstanding Obligations (and any other applicable obligations) in connection with sales of B-2 Priority Collateral (capitalized terms used but not otherwise defined in this sub-paragraph (ix) shall have the meanings given to those terms in the DIP Credit Agreement) | Unless otherwise waived or extended by the Required DIP Lenders pursuant to the Interim DIP Order, no later than ninety (90) calendar days after the Petition Date | No later than one-hundred and fifty (150) calendar days after the Petition Date (which may be extended to one-hundred and eighty (180) calendar days after the Petition Date with (i) the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the UST Secured Parties (in each case such consent not to be unreasonably withheld), and (ii) the consent of the Junior DIP Lender in its sole discretion). |
| 7(a)(x): The Debtors shall have received unique, non-duplicative binding cash bids for the Prepetition UST Tranche B Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net cash proceeds at least equal to $200 million | No later than fifty-five (55) calendar days after the Petition Date | No change. |
| 7(a)(xi): the debtors shall have received unique, non-duplicative binding cash bids pursuant to the Bidding Procedures Order which are not subject to any financing contingencies (but, for the avoidance of doubt, may be subject to receipt of environmental reports and/or title contingencies reasonably acceptable to buyer(s) for the Prepetition UST Tranche B Collateral) for the Prepetition UST Tranche B Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net cash proceeds at least equal to $300 million | No later than seventy (70) calendar days after the Petition Date | No change. |
| 7(a)(xii): The Debtors shall have consummated dispositions in accordance with the Bidding Procedures Order that either (i) generated net proceeds of Prepetition UST Tranche B Collateral equal to at least 100% of the sum of the aggregate amount of the Prepetition UST Tranche B Obligations outstanding as of such date or (ii) is consummated through a credit bid of the outstanding Prepetition UST Tranche B Obligations | No later than ninety (90) calendar days after the Petition Date | No change. |

* * * * *

**Annex 5**

**Budget**

**Yellow Corp and Subsidiaries**
*DIP Cash Flow Forecast*
*For Weeks Ending 8/4/23 through 10/27/23*

($ 000s)

| Filing Status: | Pre | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 8/4/2023 | 8/11/2023 | 8/18/2023 | 8/25/2023 | 9/1/2023 | 9/8/2023 | 9/15/2023 | 9/22/2023 | 9/29/2023 | 10/6/2023 | 10/13/2023 | 10/20/2023 | 10/27/2023 | | Weeks 1-13 |
| Week No. | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | | |
| Act./Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | | Fct. |
| **Total Receipts** | $ 57,366 | $ 30,000 | $ 30,000 | $ 40,000 | $ 38,803 | $ 30,237 | $ 26,000 | $ 25,583 | $ 25,000 | $ 17,279 | $ 13,645 | $ 9,990 | $ 8,280 | | $ 352,184 |
| *Operating Disbursements* | | | | | | | | | | | | | | | |
| Payroll & Related | $ 10,553 | $ 3,129 | $ 1,449 | $ 7,600 | $ 12,492 | $ 4,731 | $ 4,394 | $ 5,361 | $ 6,128 | $ 7,452 | $ 1,034 | $ 1,135 | $ 1,063 | | $ 66,522 |
| Other Opex | 34,884 | 7,615 | 1,422 | 1,401 | 6,158 | 1,047 | 5,171 | 1,051 | 6,438 | 632 | 3,443 | 538 | 639 | | 70,438 |
| **Total Operating Disbursements** | $ 45,437 | $ 10,744 | $ 2,872 | $ 9,001 | $ 18,650 | $ 5,778 | $ 9,565 | $ 6,411 | $ 12,566 | $ 8,084 | $ 4,477 | $ 1,673 | $ 1,702 | | $ 136,960 |
| Severance | - | - | - | - | 2,481 | - | - | - | - | 4,568 | - | - | - | | 7,049 |
| Professional Fees Reserve[1] | 2,905 | - | - | 15,776 | 3,353 | 2,889 | 3,089 | 2,889 | 4,139 | 2,015 | 2,015 | 2,215 | 2,015 | | 43,301 |
| Accrued Pre-Petition Wages[2] | - | 8,450 | 500 | - | - | - | - | - | - | - | - | - | - | | 8,950 |
| Adequate Assurance Utility Deposit | - | - | - | 1,600 | - | - | - | - | - | - | - | - | - | | 1,600 |
| Prepetition Vendors & Taxes | - | 500 | 750 | 6,368 | 4,273 | 2,600 | 2,601 | - | - | - | - | 1 | 136 | | 17,229 |
| **Total Restructuring** | $ 2,905 | $ 8,950 | $ 1,250 | $ 23,744 | $ 10,106 | $ 5,489 | $ 5,690 | $ 2,889 | $ 4,139 | $ 6,584 | $ 2,015 | $ 2,216 | $ 2,151 | | $ 78,128 |
| *Interest and Adequate Protection* | | | | | | | | | | | | | | | |
| ABL Interest | - | - | - | - | 2,206 | - | - | - | 469 | - | - | - | - | | 2,674 |
| DIP TL New Money Interest (MFN) | - | - | - | - | 51 | - | - | - | 412 | - | - | - | - | | 463 |
| DIP TL New Money Interest (Citadel) | - | - | - | - | 150 | - | - | - | 1,150 | - | - | - | - | | 1,301 |
| DIP TL New Money Interest (MFN Junior) | - | - | - | - | - | - | - | - | - | - | - | - | - | | - |
| TLB Interest | - | - | - | 10,938 | 1,624 | - | - | - | 6,495 | - | - | - | - | | 19,057 |
| UST Interest | - | - | - | 12,213 | - | - | 4,580 | - | - | - | 6,106 | - | - | | 22,899 |
| **Total Interest and Adequate Protection** | $ - | $ - | $ - | $ 23,151 | $ 4,031 | $ - | $ 4,580 | $ - | $ 8,526 | $ - | $ 6,106 | $ - | $ - | | $ 46,394 |
| **Total Disbursements** | $ 48,342 | $ 19,694 | $ 4,122 | $ 55,896 | $ 32,787 | $ 11,267 | $ 19,835 | $ 9,300 | $ 25,231 | $ 14,668 | $ 12,598 | $ 3,889 | $ 3,853 | | $ 261,482 |
| **Total Net Cash Flow** | $ 9,024 | $ 10,306 | $ 25,878 | $ (15,896) | $ 6,016 | $ 18,970 | $ 6,165 | $ 16,282 | $ (231) | $ 2,611 | $ 1,047 | $ 6,100 | $ 4,428 | | $ 90,702 |
| (+/-) ABL Paydown (80% of receipts) | - | (24,000) | (24,000) | (32,000) | (31,043) | (24,190) | (20,800) | (20,466) | (20,000) | (13,824) | (10,916) | (7,992) | (6,624) | | (235,854) |
| **Total Net Cash Flow Including ABL Paydown** | $ 9,024 | $ (13,694) | $ 1,878 | $ (47,896) | $ (25,026) | $ (5,220) | $ (14,635) | $ (4,184) | $ (20,231) | $ (11,212) | $ (9,869) | $ (1,891) | $ (2,197) | | $ (145,152) |
| *Unrestricted US and Canada Cash Rollforward*[3] | | | | | | | | | | | | | | | |
| Beginning Cash Balance | $ 42,780 | $ 38,855 | $ 8,661 | $ 10,539 | $ 22,643 | $ 35,117 | $ 29,897 | $ 60,262 | $ 56,078 | $ 35,847 | $ 24,635 | $ 14,766 | $ 12,875 | | $ 42,780 |
| (-) ABL Paydown (80% of receipts) | - | (24,000) | (24,000) | (32,000) | (31,043) | (24,190) | (20,800) | (20,466) | (20,000) | (13,824) | (10,916) | (7,992) | (6,624) | | (235,854) |
| (-) ABL Paydown (One-Time) | (12,949) | (16,500) | - | - | - | - | - | - | - | - | - | - | - | | (29,449) |
| (+/-) Net Cash Flow | 9,024 | 10,306 | 25,878 | (15,896) | 6,016 | 18,970 | 6,165 | 16,282 | (231) | 2,611 | 1,047 | 6,100 | 4,428 | | 90,702 |
| (+) DIP TL Proceeds[4] | - | - | - | 60,000 | 37,500 | - | 45,000 | - | - | - | - | - | - | | 142,500 |
| **Ending Cash Balance** | $ 38,855 | $ 8,661 | $ 10,539 | $ 22,643 | $ 35,117 | $ 29,897 | $ 60,262 | $ 56,078 | $ 35,847 | $ 24,635 | $ 14,766 | $ 12,875 | $ 10,678 | | $ 10,678 |
| *Net ABL Exposure*[5] | $ 275,883 | $ 234,775 | $ 207,361 | $ 175,361 | $ 144,318 | $ 120,128 | $ 99,328 | $ 78,862 | $ 58,762 | $ 44,938 | $ 34,022 | $ 26,031 | $ 19,406 | | |
| *Restricted Cash* | 90,591 | 100,693 | - | 16,992 | 41,182 | 61,982 | 82,448 | 97,448 | 111,272 | 122,188 | 130,179 | 136,804 | | | |

**Notes:**
(1) Assumes all professional fees are funded into a reserve as incurred
(2) Pre-petition salaries for ongoing employees and other benefits are included in operating disbursements
(3) Includes approximately CAD $1.9 million (translated at $0.749) and USD $0.4 million held by the Canadian debtors
(4) Assumes DIP is approved the week-ending 8/18 but funds on Monday 8/21
(5) Net ABL Exposure equal to 102% of outstanding letters of credit net of restricted cash, plus outstanding ABL borrowings

**Annex 6**

**THE ADMINISTRATIVE AGENT AND COLLATERAL AGENT/TAX PROVISIONS**

Any reference to (i) the "Administrative Agent" or "Collateral Agent" shall refer to the Junior DIP Agent or the B-2 Agent, as applicable, (ii) "Lender" shall refer to the Junior DIP Lender or the B-2 Lenders, as applicable, (iii) "Secured Parties" shall refer to the Junior DIP Secured Parties or the B-2 Secured Parties, as applicable and (iv) "Required Lenders" shall refer to Junior DIP Lender or the B-2 Lenders, as applicable. Capitalized terms used herein without definition shall have the meaning in the Debtor-in-Possession Credit Facility Term Sheet.

1.  <u>Agency Provisions</u>

    a.  Each Lender hereby irrevocably appoints the Administrative Agent and the Collateral Agent (for purposes of this <u>Section 1</u>, the Administrative Agent and the Collateral Agent are referred to collectively as the "<u>Agents</u>") its agent and authorizes the Agents to take such actions on its behalf and to exercise such powers as are delegated to such Agent by the terms of the DIP Loan Documents, together with such actions and powers as are reasonably incidental or related thereto. Without limiting the generality of the foregoing, the Agents are hereby expressly authorized to (i) execute any and all documents with respect to the Collateral and the rights of the Secured Parties with respect thereto, as contemplated by and in accordance with the provisions of the DIP Term Sheet and the other DIP Loan Documents and (ii) negotiate, enforce or settle any claim, action or proceeding affecting the Lenders in their capacity as such, at the direction of the Required Lenders, which negotiation, enforcement or settlement will be binding upon each Lender. The institution serving as the Administrative Agent and/or the Collateral Agent hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not an Agent, and such bank and its affiliates may accept deposits from, lend money to and generally engage in any kind of business with the Borrower or any Subsidiary or other affiliate thereof as if it were not an Agent hereunder. The Agents shall not, except as expressly set forth herein and in the other DIP Loan Documents, have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to the Borrower or any Loan Party that is communicated to or obtained by the person serving as Administrative Agent or Collateral Agent, as applicable, or any of their affiliates in any capacity.

    b.  Neither Agent shall have any duties or obligations except those expressly set forth in the DIP Loan Documents. Without limiting the generality of the foregoing, (a) neither Agent shall be subject to any fiduciary or other implied duties, regardless of whether an Event of Default or default has occurred and is continuing, (b) neither Agent shall have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby that such Agent is instructed in writing to exercise by the Required Lenders (or such other number or percentage of the Lenders as shall be necessary under the circumstances), and (c) except as expressly set forth in the DIP Loan Documents, neither Agent shall have any duty to disclose, nor shall it be liable for the failure to disclose, any information relating to the Borrower or any of the Subsidiaries that is communicated to or obtained by the bank serving as Administrative Agent and/or Collateral Agent or any of its affiliates in any capacity. Neither Agent shall be liable for any action taken or not taken by it with the consent or at the request of the Required Lenders (or such other number or percentage of the Lenders as shall be necessary under the circumstances) or in the absence of its own gross negligence or willful

misconduct as determined by the final non-appealable judgment of a court of competent jurisdiction.  Notwithstanding the foregoing, no action nor any omission to act, taken by either Agent at the direction of the Required Lenders (or such other number of percentage of Lenders as shall be expressly provided for herein or in the other DIP Loan Documents) shall constitute gross negligence or willful misconduct.  Neither Agent shall be deemed to have knowledge of any Event of Default or default unless and until written notice thereof, conspicuously labeled as a "notice of default" and specifically describing such Event of Default or default, is given to such Agent by the Borrower or a Lender, and neither Agent shall be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with any DIP Loan Document, (ii) the contents of any certificate, report or other document delivered thereunder or in connection therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth in any DIP Loan Document, (iv) the validity, enforceability, effectiveness or genuineness of any DIP Loan Document or any other agreement, instrument or document, or (v) the satisfaction of any condition set forth in the DIP Term Sheet or elsewhere in any DIP Loan Document, other than to confirm receipt of items expressly required to be delivered to such Agent.

c.   Each Agent shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing believed by it in good faith to be genuine and to have been signed or sent by the proper person.  Each Agent may also rely upon any statement made to it orally or by telephone and believed by it in good faith to have been made by the proper person, and shall not incur any liability for relying thereon.  Each Agent may consult with legal counsel (who may be counsel for the Borrower), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

d.   Each Agent may perform any and all its duties and exercise its rights and powers by or through any one or more sub-agents appointed by it.  Each Agent and any such sub-agent may perform any and all its duties and exercise its rights and powers by or through their respective Related Parties.  The exculpatory provisions of the preceding paragraphs shall apply to any such sub-agent and to the Related Parties of each Agent and any such sub-agent, and shall apply to their respective activities in connection with the arrangement of the facilities as well as activities as Agent.

e.   Either Agent may resign at any time by notifying the Lenders and the Borrower in writing, and either Agent may be removed at any time with or without cause by an instrument or concurrent instruments in writing delivered to the Borrower and such Agent and signed by the Required Lenders.  Upon any such resignation or removal, the Required Lenders shall have the right, without the consent of the Borrower, to appoint a successor.  If no successor shall have been so appointed by the Required Lenders and shall have accepted such appointment within 30 days after (i) the retiring Agent gives notice of its resignation or (ii) the Required Lenders delivers removal instructions, then the retiring or removed Agent may, on behalf of the Lenders, appoint a successor Agent which shall be a bank with an office in New York, New York, or an affiliate of any such bank.  If no successor Agent has been appointed pursuant to the immediately preceding, such Agent's resignation or removal shall become effective and the Required Lenders shall thereafter perform all the duties of such Agent hereunder and/or under any other DIP Loan Document until such time, if any, as the Required Lenders appoint a successor Administrative Agent and/or Collateral Agent, as the case may be.  Upon the acceptance of its appointment as Agent

hereunder by a successor, such successor shall succeed to and become vested with all the rights, powers, privileges and duties of its predecessor Agent, and its predecessor Agent shall be discharged from its duties and obligations hereunder.  The fees payable by the Borrower to a successor Agent shall be the same as those payable to its predecessor unless otherwise agreed between the Borrower and such successor.  After an Agent's resignation hereunder, the provisions of this <u>Section 1</u> and the section entitled "<u>Indemnity; Expenses</u>" in the DIP Term Sheet shall continue in effect for the benefit of such retiring Agent, its sub-agents and their respective Related Parties in respect of any actions taken or omitted to be taken by any of them while acting as Agent.

f.   Each Lender acknowledges that it has, independently and without reliance upon the Agents or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this DIP Term Sheet and the other DIP Loan Documents.  Each Lender also acknowledges that it will, independently and without reliance upon the Agents or any other Lender and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement or any other DIP Loan Document, any related agreement or any document furnished hereunder or thereunder.

g.   Each Lender acknowledges and agrees that Alter Domus Products Corp. or one or more of its affiliates may (but is not obligated to) act as collateral agent or representative for the Lenders and/or under the collateral agreements with respect thereto.  Each Lender waives any conflict of interest, now contemplated or arising hereafter, in connection therewith and agrees not to assert against Alter Domus Products Corp. or any of its affiliates any claims, causes of action, damages or liabilities of whatever kind or nature relating thereto.

h.   In case of the pendency of any case or proceeding under any insolvency or other similar law or any other judicial proceeding relative to any Loan Party, the Administrative Agent (irrespective of whether the principal of any Loan shall then be due and payable as herein expressed or by declaration or otherwise and irrespective of whether the Administrative Agent shall have made any demand on the Borrower) shall be entitled and empowered (but not obligated) by intervention in such proceeding or otherwise: (a) to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of the DIP Loans and all other obligations under the Junior DIP Facility or the B-2 Facility, as applicable, that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of the Lenders and the Administrative Agent (including any claim for the reasonable compensation, expenses, disbursements and advances of the Lenders and the Administrative Agent and their respective agents and counsel and all other amounts due the Lenders, the Agents under <u>Section 1</u> and the section entitled "<u>Indemnity; Expenses</u>" in the DIP Term Sheet ) allowed in such judicial proceeding; and (b) to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same; and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Lender to make such payments to the Administrative Agent and, in the event that the Administrative Agent shall consent to the making of such payments directly to the Lenders, to pay to the Agents any amount due for the reasonable compensation, expenses, disbursements and advances of the Administrative Agent and its agents and counsel, and any other amounts due to the Agents under <u>Section 1</u> and the section entitled "<u>Indemnity; Expenses</u>" in the DIP Term Sheet.  Nothing contained herein shall be deemed to authorize the Administrative Agent to authorize or

consent to or accept or adopt on behalf of any Lender any plan of reorganization, arrangement, adjustment or composition affecting the Junior DIP Facility or the B-2 Facility, as applicable, or the rights of any Lender or to authorize the Administrative Agent to vote in respect of the claim of any Lender in any such proceeding.

i. To the extent the Administrative Agent, Collateral Agent and their Related Parties (the "<u>Agent Indemnitees</u>") are not reimbursed and indemnified by the Loan Parties, and without limiting the obligation of the Loan Parties to do so, the Lenders shall indemnify and hold harmless the Agent Indemnitees, based on and to the extent of such Lender's pro rata share (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought), from and against any and all losses, claims, damages, liabilities and related expenses (including out-of-pocket fees and disbursements of counsels) of any kind or nature whatsoever which may at any time be imposed on, incurred by or asserted against any Agent Indemnitee in any way relating to or arising out of or in connection with this DIP Term Sheet or any other DIP Loan Document or in the performance by the Agents in its duties under the DIP Loan Documents; provided that no Lender shall be liable for any portion of such losses, claims, damages, liabilities and related expenses resulting from any Agent Indemnitees gross negligence, bad faith or willful misconduct (as determined by a court of competent jurisdiction in a final and non-appealable decision). Without limiting the foregoing, to the extent not paid or reimbursed by the Loan Parties, each Lender shall pay or reimburse the Agent Indemnitees based on and to the extent of such Lender's pro rata share of all reasonable and documented out-of-pocket costs and expenses, incurred in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of any rights or remedies under this DIP Term Sheet or the other DIP Loan Documents (including all such out-of-pocket costs and expenses incurred during any legal proceeding, including any proceeding under any debtor relief law, and including out-of-pocket fees and disbursements of counsels). For purposes hereof, if the Loans have been paid in full and the Commitments have been terminated prior to such determination pursuant to the immediately preceding sentence, then each such Lender's "pro rata share" shall be determined as of the last date the Loans and the Commitments were in effect immediately prior to such payment in full.

j. The provisions of this <u>Section 1</u> shall survive the resignation or replacement of the Administrative Agent or Collateral Agent, the termination of the DIP Loan Documents, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any DIP Loan Document.

2. <u>Taxes</u>

a. Except as provided in this <u>Section 2</u>, any and all payments made by or on account of the Borrower or any Guarantor under any DIP Loan Document to any Lender or Agent shall be made free and clear of and without deduction for any and all present or future taxes, duties, levies, imposts, assessments, withholdings (including backup withholding), fees or similar charges imposed by any governmental authority including interest, penalties and additions to tax (collectively "<u>Taxes</u>"), excluding (i) Taxes imposed on or measured by net income, however denominated, and franchise (and similar) Taxes imposed on it in lieu of net income Taxes, (ii) Taxes attributable to the failure by the relevant Lender or Agent to deliver the documentation required to be delivered pursuant to clause (d) of this <u>Section 2</u>, (iii) Taxes imposed by a jurisdiction as a result of any connection between such Lender or Agent and such jurisdiction other than any connection arising from executing, delivering, being a party to, engaging in any transactions pursuant to, performing its obligations under,

or enforcing any DIP Loan Document, (iv) any branch profits Taxes imposed by the United States or any similar Tax imposed by any other jurisdiction in which the Borrower or any Guarantor (as appropriate) is located, (v) any U.S. federal withholding tax imposed on amounts payable hereunder pursuant to a law in effect at such time the Lender or Agent becomes a party to this DIP Term Sheet and the other DIP Loan Documents, or designates a new lending office, except in each case to the extent such Lender (or its assignor, if any) was entitled at the time of designation of a new lending office (or assignment) to receive additional amounts with respect to such withholding tax pursuant to this Section 2(a) and (vi) any withholding Tax imposed under Sections 1471 through 1474 of the Internal Revenue Code of 1986 (as amended from time to time) (the "Code"), as in effect on the date hereof (or any amended or successor version that is substantively comparable and not materially more onerous to comply with), any current or future regulations or official interpretations thereof, any agreements entered into pursuant to Section 1471(b)(1) of the Code and any fiscal or regulatory legislation, rules or practices adopted pursuant to any intergovernmental agreement, treaty or convention among governmental authorities entered into in connection with the implementation of the foregoing (the "FATCA") (all such non-excluded Taxes imposed on such payments, being hereinafter referred to as "Indemnified Taxes"). If the Borrower, any Guarantor or other applicable withholding agent shall be required by any laws to deduct or withhold any Indemnified Taxes or Other Taxes (as defined below) from or in respect of any sum payable under any DIP Loan Document to any Agent or any Lender, (i) the sum payable by the Borrower or Guarantor shall be increased as necessary so that after making all required deductions or withholding, such Agent or Lender (as the case may be) receives an amount equal to the sum it would have received had no such deductions or withholdings been made, (ii) the applicable withholding agent shall make such deductions or withholdings, (iii) the applicable withholding agent shall pay the full amount deducted or withheld to the relevant governmental authority in accordance with applicable laws, and (iv) within thirty (30) days after the date of such payment (or, if receipts or evidence are not available within thirty (30) days, as soon as possible thereafter), if the Borrower or any Guarantor is the applicable withholding agent, the applicable withholding agent shall furnish to such Agent or Lender (as the case may be) the original or a copy of a receipt evidencing payment thereof or other evidence acceptable to such Agent or Lender.

b.  In addition, the Borrower agrees to pay any and all present or future stamp, court or documentary taxes and any other intangible or mortgage recording taxes, or charges or levies of the same character, imposed by any governmental authority, which arise from any payment made under any DIP Loan Document or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, any DIP Loan Document (including additions to tax, penalties and interest related thereto) [excluding, in each case, such amounts that result from an Agent or Lender's Assignment and Acceptance, grant of a Participation, transfer or assignment to or designation of a new applicable lending office or other office for receiving payments under any DIP Loan Document (collectively, "Assignment Taxes") except for Assignment Taxes resulting from assignment or participation that is requested or required in writing by the Borrower (all such non-excluded taxes described in this Section 2(b) being hereinafter referred to as "Other Taxes")].

c.  Without duplication of Section 2(a) or (b), the Borrower and each Guarantor agree to indemnify each Agent and each Lender for (i) the full amount of Indemnified Taxes and Other Taxes paid by such Agent or Lender (including Indemnified Taxes and Other Taxes imposed or asserted on or attributable to amounts payable under this Section 2(c)) and (ii)

any reasonable expenses arising therefrom or with respect thereto, *provided* such Agent or Lender, as the case may be, provides Borrower or Guarantor with a written statement thereof setting forth in reasonable detail the basis and calculation of such amounts.

d.   Each Lender and Agent shall, at such times as are reasonably requested by the Borrower or the Administrative Agent, provide the Borrower and the Administrative Agent with any documentation prescribed by law or reasonably requested by the Borrower or the Administrative Agent certifying as to any entitlement of such Lender or Agent to an exemption from, or reduction in, withholding tax with respect to any payments to be made to such Lender under the DIP Loan Documents.   Each such Lender and Agent shall, whenever a lapse in time or change in circumstances renders such documentation obsolete or inaccurate in any material respect, deliver promptly to the Borrower and the Administrative Agent updated or other appropriate documentation (including any new documentation reasonably requested by the applicable withholding agent) or promptly notify the Borrower and the Administrative Agent of its inability to do so. Unless the applicable withholding agent has received forms or other documents satisfactory to it indicating that payments under any DIP Loan Document to or for a Lender are not subject to withholding tax or are subject to such Tax at a rate reduced by an applicable tax treaty, the Borrower, the Administrative Agent or other applicable withholding agent shall withhold amounts required to be withheld by applicable law from such payments at the applicable statutory rate.   Notwithstanding the foregoing, a Lender shall not be required to deliver any form pursuant to this clause (d) (other than such documentation set forth in Sections 2(d)(i), 3(d)(ii) and 3(g)) that such Lender is not legally able to deliver.   In addition, each Lender and Agent shall deliver to the Borrower and the Administrative Agent such other tax forms or other documents as shall be prescribed by applicable law or reasonably requested by the Borrower or the Administrative Agent as will enable the Borrower or the Administrative Agent to determine whether or not such Lender or Agent is subject to backup withholding or information reporting requirements.   Without limiting the foregoing:

    i.   Each Lender and Agent that is a United States person (as defined in Section 7701(a)(30) of the Code) shall deliver to the Borrower and the Administrative Agent on or before the date on which it becomes a party to this DIP Term Sheet and the other DIP Loan Documents (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent) two properly completed and duly signed executed copies of Internal Revenue Service Form W-9 certifying that such Lender or Agent (as the case may be) is exempt from federal backup withholding.

    ii.   Each Lender and Agent that is not a United States person (as defined in Section 7701(a)(30) of the Code) shall deliver to the Borrower and the Administrative Agent on or before the date on which it becomes a party to this DIP Term Sheet and the other DIP Loan Documents (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent) whichever of the following is applicable:

        1.   two properly completed and duly signed executed copies of Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E (or any successor forms) claiming eligibility for the benefits of an income tax treaty to which the United States is a party, and such other documentation as required under the Code,

2. two properly completed and duly signed executed copies of Internal Revenue Service Form W-8ECI (or any successor forms) and, in the case of an Agent, a withholding certificate that satisfies the requirements of Treasury Regulation Sections 1.1441-1(b)(2)(iv) and 1.1441-1(e)(3)(v) as applicable to a U.S. branch that has agreed to be treated as a U.S. person for withholding tax purposes,

3. in the case of a Lender claiming the benefits of the exemption for portfolio interest under Section 881(c) of the Code, (A) a certificate substantially in the form of Exhibit G-1, G-2, G-3 or G-4, as applicable (any such certificate a "United States Tax Compliance Certificate") and (B) two properly completed and duly signed executed copies of Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E, or

4. to the extent a Lender is not the beneficial owner (for example, where the Lender is a partnership, or is a participant holding a participation granted by a participating Lender), Internal Revenue Service Form W-8IMY (or any successor forms) of the Lender, accompanied by a Form W-8ECI, W-8BEN, W-8BEN-E, United States Tax Compliance Certificate, Form W-9, Form W-8IMY or any other required information from each beneficial owner, as applicable (*provided* that, if one or more beneficial owners are claiming the portfolio interest exemption, the United States Tax Compliance Certificate may be provided by such Lender on behalf of such beneficial owner). Each Lender and Agent shall deliver to the Borrower and the Administrative Agent two further executed copies of any previously delivered form or certification (or any applicable successor form) on or before the date that any such form or certification expires or becomes obsolete or inaccurate and promptly after the occurrence of any event requiring a change in the most recent form previously delivered by it to the Borrower or the Administrative Agent, or promptly notify the Borrower and the Administrative Agent that it is unable to do so. Each Lender and Agent shall promptly notify the Administrative Agent at any time it determines that it is no longer in a position to provide any previously delivered form or certification to the Borrower or the Administrative Agent.

5. Any Lender or Agent claiming any additional amounts payable pursuant to this Section 2 shall use its reasonable efforts to change the jurisdiction of its lending office (or take any other measures reasonably requested by the Borrower) if such a change or other measures would reduce any such additional amounts (or any similar amount that may thereafter accrue) and would not, in the reasonable, good faith determination of such Lender, result in any unreimbursed cost or expense or be otherwise materially disadvantageous to such Lender.

e. If any Lender or Agent determines, in its reasonable, good faith discretion, that it has received a refund in respect of any Taxes as to which indemnification or additional amounts have been paid to it by the Borrower pursuant to this Section 2 (including by payment of additional amounts pursuant to this Section 2) it shall promptly remit such refund to the Borrower or Guarantor, net of all out-of-pocket expenses of the Lender or Agent, as the

case may be and without interest (other than any interest paid by the relevant governmental authority with respect to such refund net of any Taxes payable by any Agent or Lender on such interest); *provided* that the Borrower and Guarantors, upon the request of the Lender or Agent, as the case may be, agree promptly to return such refund (plus any penalties, interest or other charges imposed by the relevant governmental authority) to such party in the event such party is required to repay such refund to the relevant governmental authority. This section shall not be construed to require the Administrative Agent or any Lender to make available its tax returns (or any other information relating to Taxes that it deems confidential) to the Borrower or any other person.

f.     If a payment made to a Lender or Agent under any DIP Loan Document would be subject to withholding Tax imposed by FATCA if such Lender or Agent were to fail to comply with the applicable reporting requirements of FATCA (including those contained in Section 1471(b) or 1472(b) of the Code, as applicable), such Lender or Agent shall deliver to the Borrower and the Administrative Agent at the time or times prescribed by law and at such time or times reasonably requested by the Borrower or the Administrative Agent such documentation prescribed by applicable law (including as prescribed by Section 1471(b)(3)(C)(i) of the Code) and such additional documentation reasonably requested by the Borrower or the Administrative Agent as may be necessary for the Borrower and the Administrative Agent to comply with their obligations under FATCA and to determine that such Lender or Agent has complied with such Lender's or Agent's obligations under FATCA or to determine the amount, if any, to deduct and withhold from such payment. Solely for purposes of this Section 2), "FATCA" shall include any amendments made to FATCA after the date of this DIP Term Sheet and the other DIP Loan Documents.

g.     Each party's obligations under this Section 2 shall survive the resignation or replacement of the Administrative Agent or Collateral Agent, the termination of the DIP Loan Documents, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any DIP Loan Document.

h.     Each Lender shall indemnify each Agent, within 10 days following written demand therefor, for (i) the full amount of any Indemnified Taxes and Other Taxes attributable to such Lender (but only to the extent that such Agent has not already been indemnified by the Borrower and each Guarantor for such Indemnified Taxes and Other Taxes and without limiting the obligation of the Borrower and each Guarantor to do so), [and (ii) any Taxes attributable to such Lender's failure to comply with the provision of Section [____] relating to the maintenance of a Participant Register], in each case, that are payable or paid by such Agent in connection with any DIP Loan Documents, and any expenses arising therefrom or with respect thereto; *provided* that such Agent provides such lender with a written statement thereof setting forth in reasonable detail the basis and calculation of such amounts.

EXHIBIT C

FORM OF REQUEST FOR CREDIT EXTENSION

To:    Alter Domus Products Corp.
       as Administrative Agent
       225 W. Washington Street, 9th Floor
       Chicago, Illinois 60606
       Attention: Legal Department – Agency, Emily Ergang Pappas and Chris Capezuti
       Fax No.: 312-376-0751
       Tel. No.: 312-564-5100
       Email: legal_agency@alterdomus.com, emily.ergangpappas@alterdomus.com and
            cpcagency@alterdomus.com

[Date]

Ladies and Gentlemen:

      Reference is made to the Junior Secured Super-Priority Debit-In-Possession Credit Agreement, dated as of [_____ __], 2023 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), among Yellow Corporation, a Delaware corporation, the Guarantors party thereto from time to time, the Lenders party thereto from time to time and Alter Domus Products Corp., as Administrative Agent and Collateral Agent. Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Credit Agreement.

      The undersigned Borrower hereby requests a Borrowing of new Loans to be made on the terms set forth below and hereby authorizes and directs the Administrative Agent to disburse the proceeds of the Loans to the deposit account of USF Holland LLC on behalf of the Borrower:

(A)   Class of Borrowing:[1]         _____

(B)   Date of Borrowing (which is a
       Business Day):[2]           _____

(C)   Principal amount:        _____

(D)   Location and number of the deposit
       account to which proceeds of
       Borrowings are to be disbursed:[3]   _____

---

[1] Closing Date Loans, Effective Date Loans, Final Loans or Delayed Draw Term Loans.
[2]: To be Effective Date, Final Order Entry Date or the Delayed Draw Term Loan Borrowing Date.
[3] To be the Cash Collateral Account.

YELLOW CORPORATION

By: _____
     Name:
     Title:

EXHIBIT D

UST ADEQUATE PROTECTION ORDER

[See Attached.]

1. Commencing with the first Receipts Variance Test Date, and on each Receipts Variance Test Date occurring thereafter, Yellow Corp shall not, nor shall it permit any of its subsidiaries to, permit the sum of the actual aggregate cash receipts of Yellow Corp and its subsidiaries (excluding proceeds of the DIP Loans (as defined in the DIP Term Sheet)) for the Receipts Variance Test Period ending immediately prior to such Receipts Variance Test Date to be less than the Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Total Receipts" for such Receipts Variance Test Period (the "Receipts Variance Covenant").

   To the extent that any Receipts Variance Test Period encompasses a period that is covered in more than one Approved Budget, the applicable weeks from each applicable Approved Budget shall be utilized in making the calculations pursuant to the Receipts Variance Covenant.

2. Not later than 5:00 p.m. New York time on each Receipts Variance Test Date, Yellow Corp shall deliver to the Prepetition ABL Agent (i) a Receipts Variance Report for the most recently ended Receipts Variance Test Period, and (ii) an updated budget prepared by management of Yellow Corp (in consultation with Yellow Corp's Operational Advisor) covering the 13-week period that commences with the calendar week that includes such Wednesday (or Friday, as applicable).

   For purposes of the foregoing provisions:

   "Closing Date" shall have the meaning set forth in the DIP Term Sheet.

   "Operational Advisor" shall have the meaning set forth in the DIP Credit Agreement.

   "Permitted Variance Percentage" shall mean (a) with respect to the Receipts Variance Test Period ending on August 18, 2023, 80%, (b) with respect to the Receipts Variance Test Period ending on August 25, 2023, 85%, and (c) with respect to each Receipts Variance Test Period ending thereafter, 90%.

   "Receipts Variance Report" shall mean a weekly variance report prepared by management of Yellow Corp (in consultation with Yellow Corp's Operational Advisor), in form and detail reasonably satisfactory to the Prepetition ABL Agent, comparing for each applicable Receipts Variance Test Period the actual receipts and disbursements against anticipated receipts and disbursements under the applicable Approved Budget, on a line by line and aggregate basis and in the same level of detail set forth in the Approved Budget, together with a written explanation for all material variances in any given Receipts Variance Test Period and such other related information as the Required Lenders may reasonably request.

   "Receipts Variance Test Date" shall mean each of (a) Friday, August 25, 2023, (b) Friday, September 1, 2023, (c) Wednesday, September 6, 2023 and (d) each Wednesday thereafter.

   "Receipts Variance Test Period" shall mean, as of any date of determination, (a) with respect to the first Receipts Variance Report delivered after the Closing Date pursuant to paragraph 2 above and the first Receipts Variance Test Date occurring on Friday, August 25, 2023, the period starting on the Petition Date and ending on August 18, 2023, (b) with respect to the second Receipts Variance Report delivered after the Closing Date pursuant to paragraph 2 above and the Receipts Variance Test Date occurring on Friday, September 1, 2023, the period starting on the Petition Date and ending on August 25, 2023, (c) with respect to the third Receipts Variance Report delivered after the Closing Date pursuant to paragraph 2 above and the Receipts Variance Test Date occurring on Wednesday, September 6, 2023, the period starting on the Petition Date and ending on September 1, 2023 and (d) with respect to each Receipts Variance Report delivered pursuant to paragraph 2 above thereafter and each the Receipts Variance Test Date occurring thereafter, the four-week period ending on the Friday of the week immediately preceding the applicable Receipts Variance Test Date.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |

## INTERIM UST CASH COLLATERAL AND ADEQUATE PROTECTION ORDER (I) AUTHORIZING THE DEBTORS TO (A) USE UST CASH COLLATERAL AND ALL OTHER PREPETITION UST COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Yellow Corporation ("Yellow Corp") and each of its above-captioned affiliates (collectively, the "Debtors"), pursuant to sections 105, 361, 362, 363, 506 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), seeking, among other things, entry of this interim UST cash collateral and adequate protection order (this "Interim UST Cash Collateral Order")[3]

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed contemporaneously herewith, as revised from the previously filed version at Docket No. 34 [Ex. A] (the "Interim DIP Order").

[3]   The Debtors filed a prior version of this Interim UST Cash Collateral Order at Docket No. 34 [Ex. B].

and the Final UST Cash Collateral Order (as defined below and, together with this Interim UST

Cash Collateral Order, the "UST Cash Collateral Orders") among other things:

- authorizing the Debtors, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, to use the UST Cash Collateral (as defined below) and all other Prepetition UST Collateral (as defined below), in accordance with the terms of this Interim UST Cash Collateral Order, the Interim DIP Order and the Approved Budget (as defined below);

- subject and subordinate to the Carve-Out and Canadian Priority Charges (as defined in the DIP Term Sheet) and, as and to the extent applicable, the liens and claims securing the DIP Facility, to provide for the UST Adequate Protection (as defined below) of the liens and security interests of the Prepetition UST Secured Parties (as defined below), as set forth herein;

- subject and subordinate to the Carve-Out and Canadian Priority Charges, as and to the extent applicable, the liens and claims securing the DIP Facility, granting to the Prepetition UST Agent (as defined below), for the benefit of the Prepetition UST Secured Parties (as defined below), the UST Adequate Protection Liens (as defined below) and allowed superpriority administrative expense claims pursuant to sections 503(b) and 507(b) of the Bankruptcy Code;

- authorizing the Prepetition UST Secured Parties to take all commercially reasonable actions to implement the terms of this Interim UST Cash Collateral Order;

- upon entry of a final order providing such relief, waiving (a) the Debtors' right to surcharge the Prepetition UST Collateral pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

- upon entry of a final order providing such relief, waiving the equitable doctrine of "marshaling" and other similar doctrines for the benefit of the Prepetition UST Secured Parties with respect to the Prepetition UST Collateral (including the UST Cash Collateral) and the Prepetition UST Secured Obligations (each as defined below), as applicable, in each case subject to the Carve-Out and Canadian Priority Charges;

- authorizing the Debtors to use the UST Cash Collateral solely in accordance with the UST Cash Collateral Orders, the DIP Orders (as defined in the Interim DIP Order) and the Approved Budget (as defined below), subject to Permitted Variances (as defined in the DIP Term Sheet);

- subject to the restrictions set forth in the UST Cash Collateral Orders, the DIP Orders and the Approved Budget, authorizing the Debtors to use Prepetition UST Collateral and provide UST Adequate Protection (as defined below) to the Prepetition UST Secured Parties for any diminution in value of their respective interests in the applicable

Prepetition UST Collateral (including UST Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "<u>Diminution in Value</u>");

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors and the Prepetition UST Secured Parties to implement and effectuate the terms and provisions of this Interim UST Cash Collateral Order;

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim UST Cash Collateral Order and, upon entry, the Final UST Cash Collateral Order; and

- scheduling a final hearing (the "<u>Final Hearing</u>") to consider final approval of the use of Prepetition UST Collateral and UST Cash Collateral on the terms of a proposed order (the "<u>Final UST Cash Collateral Order</u>") to be posted to the docket prior to the Final Hearing.

The Court having considered the interim relief requested in the Motion [Docket No. 16], the exhibits attached thereto, the *Declaration of Cody Leung Kaldenberg, Partner of Ducera Partners In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 18] (the "<u>Kaldenberg Declaration</u>"), the *Declaration of Brian Whittman, Managing Director of Alvarez & Marsal North America, LLC, In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 17] (the "<u>Whittman Declaration</u>")*, and the Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "<u>First Day Declaration</u>"), that certain Debtor-In-Possession Credit Facility Term Sheet between the applicable Debtors and MFN Partners, L.P. (the "<u>Junior DIP Lenders</u>") and Citadel

Credit Master Fund LLC (together with any permitted assignee thereof, the <u>Postpetition B-2</u> <u>Lenders</u>") and certain of their affiliates (collectively the "<u>DIP Lenders</u>," and such term sheet, the "<u>DIP Term Sheet</u>"), and the evidence submitted and arguments made at the interim hearing to consider approval of this Interim UST Cash Collateral Order held on August 9, 2023 (the "<u>Interim</u> <u>Hearing</u>"); and due and sufficient notice of the Interim Hearing, all continuations thereof, and all subsequent status conferences having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A.      *Petition Date*.  On August 6, 2023 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

---

[4]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     *Debtors in Possession*.   The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.     *Jurisdiction and Venue*.   This Court has core jurisdiction over these cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.   Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   The Court may enter a final order approving the relief sought in the Motion consistent with Article III of the United States Constitution.   Venue for these cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Bankruptcy Local Rules 2002-1, 4001-2, and 9013-1.

D.     *Committee Formation*.   On August 16, 2023 the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in these cases at Docket No. 269 (the "Creditors' Committee").

E.     *Notice*.   The Interim Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).   Proper, timely, adequate and sufficient notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and Bankruptcy Local Rules, and no other or further notice was or shall be required under the circumstances.   The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

F.   *UST Cash Collateral*.  As used herein, the term "UST Cash Collateral" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, (a) that constitutes or will constitute "cash collateral" of any of the Prepetition UST Secured Parties within the meaning of section 363(a) of the Bankruptcy Code and (b) over which the Prepetition UST Secured Parties have liens, subject to the relative priorities of the Prepetition Secured Parties (as defined in the Interim DIP Order) and the Prepetition UST Secured Parties as set forth in the Prepetition Intercreditor Agreement (as defined below) and the Interim DIP Order.

G.   *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest and subject to the provisions and limitations contained in this Interim UST Cash Collateral Order, and after consultation with their attorneys, the Debtors admit, stipulate and agree that:

(i)   *Prepetition UST Tranche A Term Loan*.  Pursuant to that certain UST Tranche A Term Loan Credit Agreement, dated as of July 7, 2020 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition UST Tranche A Credit Agreement" and, collectively with all other agreements (including the Prepetition UST Loan Documents (as defined below)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition UST Tranche A Loan Documents"), by and among (a) Yellow Corp, as borrower (in such capacity, the "Prepetition UST Tranche A Borrower"), (b) the guarantors party thereto (the "Prepetition UST Tranche A Guarantors" and, together with the Prepetition UST Tranche A Borrower, the "Prepetition UST Tranche A Loan Parties"), (c) The Bank of New York Mellon ("BNY"), as administrative agent and collateral agent (in such capacities, and BNY, in its

capacities as a party to all other agreements, documents, or instruments with any or all of the Prepetition UST Tranche A Loan Parties entered into in connection with the transactions relating to the entry of the Prepetition UST Tranche A Loan Documents and/or the incurrence of the Prepetition UST Tranche A Obligations (as defined below), including, without limitation, any banking arrangements in connection therewith with BNY and/or its affiliates, the "<u>Prepetition UST Tranche A Agent</u>"), and (d) the lenders party thereto from time to time (the "<u>Prepetition UST Tranche A Lenders</u>" and, together with the Prepetition UST Tranche A Agent, the "<u>Prepetition UST Tranche A Secured Parties</u>"), the Prepetition UST Tranche A Loan Parties incurred "Obligations" (as defined in the Prepetition UST Tranche A Credit Agreement, the "<u>Prepetition UST Tranche A Obligations</u>") to the Prepetition UST Tranche A Secured Parties on a joint and several basis;

(ii) *Prepetition UST Tranche B Term Loan*. Pursuant to that certain UST Tranche B Term Loan Credit Agreement, dated as of July 7, 2020 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "<u>Prepetition UST Tranche B Credit Agreement</u>" and, collectively with all other agreements (including the Prepetition UST Loan Documents (as defined below)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "<u>Prepetition UST Tranche B Loan Documents</u>," and together with the Prepetition UST Tranche A Loan Documents, the "<u>Prepetition UST Loan Documents</u>"), by and among (a) Yellow Corp, as borrower (in such capacity, the "<u>Prepetition UST Tranche B Borrower</u>"), (b) the guarantors party thereto (the "<u>Prepetition UST Tranche B Guarantors</u>" and, together with the

Prepetition UST Tranche B Borrower, the "<u>Prepetition UST Tranche B Loan Parties,</u>" and together with the Prepetition UST Tranche A Loan Parties, the "<u>Prepetition UST Loan Parties</u>"), (c) BNY, as administrative agent and collateral agent (in such capacities, and BNY, in its capacities as a party to all other agreements, documents, or instruments with any or all of the Prepetition UST Tranche B Loan Parties entered into in connection with the transactions relating to the entry of the Prepetition UST Tranche B Loan Documents (as defined below) and/or the incurrence of the Prepetition UST Tranche B Obligations (as defined below), including, without limitation, any banking arrangements in connection therewith with BNY and/or its affiliates, the "<u>Prepetition UST Tranche B Agent</u>," and together with the Prepetition UST Tranche A Agent, the "<u>Prepetition UST Agent</u>"), and (d) the lenders party thereto from time to time (the "<u>Prepetition UST Tranche B Lenders</u>"[5] and, together with the Prepetition UST Tranche B Agent, the "<u>Prepetition UST Tranche B Secured Parties</u>," and together with the Prepetition UST Tranche A Secured Parties, the "<u>Prepetition UST Secured Parties</u>"), the Prepetition UST Tranche B Loan Parties incurred "Obligations" (as defined in the Prepetition UST Tranche B Credit Agreement, the "<u>Prepetition UST Tranche B Obligations</u>," and together with the UST Tranche A Obligations, the "<u>Prepetition UST Secured Obligations</u>") to the Prepetition UST Tranche B Secured Parties on a joint and several basis;

(iii)     *Prepetition Intercreditor Agreement.*  Pursuant to (and to the extent set forth in) that certain Amended and Restated Intercreditor Agreement, dated as of July 7, 2020 (as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "<u>Prepetition Intercreditor Agreement</u>") by and among the Prepetition ABL Agent, the

---

[5]     The Prepetition UST Tranche B Lenders and the Prepetition UST Tranche A Lenders shall be referred to in this Interim UST Cash Collateral Order, collectively, as the "Prepetition UST Lenders".

Prepetition B-2 Agent, the Prepetition UST Tranche A Agent and the Prepetition UST Tranche B Agent, which Prepetition Intercreditor Agreement, Prepetition UST Loan Documents, and Prepetition Loan Documents (as defined in the Interim DIP Order) are, in each case, binding and enforceable against the parties thereto, which agreed in the Prepetition Intercreditor Agreement, among other things, to the relative priority of such parties' respective security interests in the Prepetition Collateral (as defined below), which relative priorities are set forth in and governed by the Prepetition Intercreditor Agreement.

(iv)     *Prepetition UST Tranche A Obligations*.   As of the Petition Date, the Prepetition UST Tranche A Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition UST Tranche A Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition UST Tranche A Credit Agreement) in the aggregate principal amount of not less than $337,042,757.52 plus accrued and unpaid interest thereon and any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other Prepetition UST Tranche A Obligations incurred under, reimbursable pursuant to, or secured by the Prepetition UST Tranche A Loan Documents;

(v)     *Prepetition UST Tranche B Obligations*.   As of the Petition Date, the Prepetition UST Tranche B Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition UST Tranche B Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition UST Tranche B Credit Agreement) in the aggregate principal amount of not less than $399,999,769.91 plus accrued and unpaid interest thereon and any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges,

indemnities, and other Prepetition UST Tranche B Obligations incurred under, reimbursable pursuant to, or secured by the Prepetition UST Tranche B Loan Documents;

(vi) *Validity of Prepetition UST Secured Obligations*. The Prepetition UST Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition UST Loan Parties, as applicable, enforceable in accordance with the respective terms of the relevant documents, and no portion of the Prepetition UST Secured Obligations or any payment made to the Prepetition UST Secured Parties or applied to or paid on account of the Prepetition UST Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(vii) *Validity, Perfection and Priority of Prepetition UST Tranche A Liens*. As of the Petition Date, pursuant to the Prepetition UST Tranche A Loan Documents, the Prepetition UST Tranche A Loan Parties granted to the Prepetition UST Tranche A Agent, for the benefit of the Prepetition UST Tranche A Secured Parties, a security interest in and continuing lien on (the "Prepetition UST Tranche A Liens") substantially all of their respective assets and property (collectively, the "Prepetition UST Tranche A Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent, Prepetition ABL Agent, and Prepetition UST Tranche B Agent and any liens permitted by the Prepetition UST Tranche A Loan Documents to be senior to the Prepetition UST Tranche A Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable

10

on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent

to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the

"Prepetition UST Tranche A Permitted Senior Liens") on the Prepetition UST Tranche B Priority

Collateral; (ii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in

and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the liens of

the Prepetition B-2 Agent, Prepetition ABL Agent, and Prepetition UST Tranche B Agent and the

Prepetition UST Tranche A Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid,

binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on

the Prepetition B-2 Priority Collateral, subject only to the senior liens of the Prepetition B-2 Agent

and Prepetition ABL Agent, the *pari passu* liens of Prepetition UST Tranche B Agent, and the

Prepetition UST Tranche A Permitted Senior Liens on the Prepetition B-2 Priority Collateral; and

(iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and

continuing lien on the Prepetition ABL Priority Collateral, subject only to the senior liens of the

Prepetition ABL Agent and Prepetition B-2 Agent, the *pari passu* liens of the Prepetition UST

Tranche B Agent, and the Prepetition UST Tranche A Permitted Senior Liens on the Prepetition

ABL Priority Collateral;

(viii)     *Validity, Perfection and Priority of Prepetition UST Tranche B Liens.*  As

of the Petition Date, pursuant to the Prepetition UST Tranche B Loan Documents, the Prepetition

UST Tranche B Loan Parties granted to the Prepetition UST Tranche B Agent, for the benefit of

the Prepetition UST Tranche B Secured Parties, a security interest in and continuing lien on (the

"Prepetition UST Tranche B Liens," together with the Prepetition UST Tranche A Liens, the

"Prepetition UST Liens") substantially all of their respective assets and property (collectively, the

"Prepetition UST Tranche B Collateral"), including: (i) a valid, binding, properly perfected,

11

enforceable, non-avoidable first priority security interest in and continuing lien on the UST Tranche B Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition UST Tranche B Priority Collateral" and together with the Prepetition UST Tranche A Collateral and the Prepetition UST Tranche B Collateral, the "Prepetition UST Collateral"), subject and subordinate only to any liens permitted by the Prepetition UST Tranche B Loan Documents to be senior to the Prepetition UST Tranche B Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition UST Tranche B Permitted Senior Liens"); (ii) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the *pari passu* liens of the Prepetition B-2 Agent and the Prepetition UST Tranche B Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition B-2 Priority Collateral, subject and subordinate only to the senior liens of the Prepetition B-2 Agent and Prepetition ABL Agent and *pari passu* liens of Prepetition UST Tranche A Agent and the Prepetition UST Tranche B Permitted Senior Liens on the Prepetition B-2 Priority Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject only to the senior liens of the Prepetition ABL Agent and Prepetition B-2 Agent and *pari passu* liens of the

12

Prepetition UST Tranche A Agent and the Prepetition UST Tranche B Permitted Senior Liens on the Prepetition ABL Priority Collateral;

(ix) *Waiver of Challenge*. None of the Prepetition UST Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(x) *No Control*. None of the Prepetition UST Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition UST Loan Documents;

(xi) *No Claims or Causes of Action*. No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition UST Secured Parties and each of their respective UST Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition UST Secured Party that is in existence as of the Petition Date; and

(xii) *Release*. Effective as of the date of entry of this Interim UST Cash Collateral Order and subject in all respects to paragraph 12 of this Interim UST Cash Collateral Order, each of the Debtors and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases, relinquishes, waives and forever discharges and acquits the Prepetition UST Secured Parties, and each of their respective UST

13

Representatives (as defined below) solely in their capacities as such (individually, a "UST Released Party," and collectively, the "Released Parties"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Prepetition UST Secured Parties' ownership of the Debtors' stock and the Prepetition UST Loan Documents, the negotiation thereof, and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the UST Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Interim UST Cash Collateral Order; *provided*, that, the release set forth in this section shall not release any claims against or liabilities of a UST Released Party that a court of competent jurisdiction determines has resulted from such UST Released Party's bad faith, fraud, gross negligence, or willful misconduct.

H.     *Findings Regarding Use of Cash Collateral*.

(i)     Good and sufficient cause has been shown for the entry of this Interim UST Cash Collateral Order and for authorization of the Debtors to use the Prepetition UST Collateral (including UST Cash Collateral).

(ii)     The Debtors have demonstrated an immediate and critical need to use the UST Cash Collateral in order to fund the Chapter 11 Cases and maximize the value of their estates through an orderly winddown process of their businesses and a comprehensive sale process for

their assets.  Without the ability of the Debtors to obtain sufficient liquidity through the use of

UST Cash Collateral, as set forth in this Interim UST Cash Collateral Order, the Debtors, their

estates, and parties-in-interest would be immediately and irreparably harmed.  Accordingly, the

Debtors have an immediate need to use UST Cash Collateral as set forth in this Interim UST Cash

Collateral Order to, among other things, maximize the value of the assets of the Debtors' estates

to maximize the recovery to all creditors of the estates.

(iii)     Based on the Motion, the First Day Declaration, the Kaldenberg

Declaration, the Whittman Declaration, and the record and argument presented to the Court at the

Interim Hearing, the terms of the UST Adequate Protection (as defined below) granted to the

Prepetition UST Secured Parties and the terms on which the Debtors may continue to use

Prepetition UST Collateral (including UST Cash Collateral) pursuant to this Interim UST Cash

Collateral Order are consistent with the Bankruptcy Code, including section 506(b) thereof, are

fair and reasonable, and reflect the Debtors' exercise of prudent business judgment consistent with

their fiduciary duties under the circumstances.

(iv)     This Interim UST Cash Collateral Order, the UST Adequate Protection (as

defined below), and the use of the Prepetition UST Collateral (including UST Cash Collateral)

have been negotiated in good faith and at arm's length among the Debtors, the Prepetition UST

Secured Parties, the DIP Secured Parties, and the Prepetition Secured Parties (each of whom acted

in good faith in negotiating the foregoing).  The financial accommodations extended by the

Prepetition UST Secured Parties to the Debtors under, in respect of, or in connection with, the

Debtors' use of the Prepetition UST Collateral (including the UST Adequate Protection Liens (as

defined below) and other UST Adequate Protection provided herein) shall be deemed to have been

extended by the Prepetition UST Secured Parties in good faith, and such Prepetition UST Secured

Parties (and their respective successors and assigns) shall be entitled to the full protections of the Bankruptcy Code in the event that this Interim UST Cash Collateral Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(v)     The Prepetition UST Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of this Interim UST Cash Collateral Order, the Interim DIP Order, and the use of UST Cash Collateral, any challenges or objections to the use of UST Cash Collateral, and all other documents related to and all transactions contemplated by the foregoing. Accordingly, without limitation to any other right to indemnification, the Prepetition UST Secured Parties shall maintain their right to indemnification as provided in the Prepetition UST Loan Documents.

(vi)     The Prepetition UST Secured Parties are entitled to the UST Adequate Protection (as defined below) as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed UST Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Prepetition UST Collateral, including UST Cash Collateral.

(vii)     To the extent that their consent is required, the Prepetition UST Secured Parties have consented or are deemed to have consented to the Debtors' use of Prepetition UST Collateral, including UST Cash Collateral, on the terms set forth in this Interim UST Cash Collateral Order; *provided*, that, nothing in this Interim UST Cash Collateral Order, the Interim DIP Order, or the DIP Term Sheet or other DIP Documents shall (x) be construed as the affirmative

consent by the Prepetition UST Secured Parties for the use of Prepetition UST Collateral[6] and UST Cash Collateral other than on the terms set forth in this Interim UST Cash Collateral Order, (y) be construed as a consent by the Prepetition UST Secured Parties to the terms of any financing or lien encumbering Prepetition UST Collateral (whether senior or junior) other than as contemplated by this Interim UST Cash Collateral Order (or, as applicable, the Interim DIP Order), or (z) prejudice, limit, or otherwise impair the rights of the Prepetition UST Secured Parties to seek new, different, or additional adequate protection or to assert any other available right under law, and the rights of any other party in interest, including the Prepetition UST Secured Parties, are hereby preserved, subject to the terms and conditions of the Prepetition Intercreditor Agreement.

(viii)   Subject to review and approval from, among others, the Prepetition UST Secured Parties, the Debtors have prepared and delivered to the advisors to the Prepetition UST Secured Parties the Initial DIP Budget (as defined in the Interim DIP Order).  The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each calendar week covered thereby.  Subject to the review of, and approval from, among others, the Prepetition UST Secured Parties, the Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Term Sheet, the Interim DIP Order, and this Interim UST Cash Collateral Order.  Each subsequent budget, once approved in accordance with the DIP Term Sheet, the Interim DIP Order, and this Interim UST Cash Collateral Order, shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget (as approved in

---

[6]    For the avoidance of doubt, the term "Prepetition UST Collateral" as used herein refers to both prepetition and postpetition Collateral (as applicable) which secures the Prepetition UST Secured Parties' continuing Prepetition UST Tranche A Liens and continuing Prepetition UST Tranche B Liens (as applicable).

accordance with the DIP Term Sheet, the Interim DIP Order, and this Interim UST Cash Collateral Order, an "Approved Budget"). For the avoidance of doubt, the procedures by which each Approved Budget is reviewed and approved shall remain consistent with the terms of the review and approval process provided for in this Interim UST Cash Collateral and the Interim DIP Order even after such time as the DIP Obligations are paid and satisfied in full if the UST Adequate Protection Obligations have not been paid and satisfied in full, but the review and approval process will only require the approval of the Prepetition UST Secured Parties (with the approval rights of the Prepetition ABL Secured Parties as set forth in the Interim DIP Order remaining in effect to the extent the Prepetition ABL Obligations have not been paid and satisfied in full) if the DIP Obligations have been paid and satisfied in full.

(ix)   Upon entry of a final order providing for such relief, each of the Prepetition UST Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition UST Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition UST Collateral.

I.    *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim UST Cash Collateral Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Absent the ability of the Debtors to use UST Cash Collateral, the Debtors' estates will be immediately and irreparably harmed.  Continued use of Prepetition UST Collateral (including UST Cash Collateral), in accordance with this Interim UST Cash Collateral Order and the Approved Budget, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The Motion and this Interim UST Cash Collateral Order comply with the requirements of Bankruptcy Local Rule 4001-2.

18

J.     *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens.*   Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.   Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors or the Prepetition UST Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien.   For the avoidance of doubt, the right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Senior Lien, and such right is expressly subject to the Postpetition B-2 Liens, the Junior DIP Liens, and the Prepetition Liens, including the Prepetition UST Liens.   The Prepetition UST Liens are continuing liens and the Prepetition UST Collateral is and will continue to be encumbered by such liens.

K.     *Intercreditor Agreement.*   Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement shall (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties and the Prepetition UST Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims or amounts payable in respect thereof), and (iii) not be deemed to be amended, altered, or modified by the terms of this Interim UST Cash Collateral Order, the Interim DIP Order, or the DIP Documents (including the DIP Term Sheet), unless expressly set forth herein or therein, respectively.

L.     *Interim DIP Order.*   Contemporaneous with the entry of this Interim UST Cash Collateral Order, the Court is entering the Interim DIP Order authorizing the Debtors to, among other things, incur postpetition debt, grant adequate protection liens and superpriority

19

administrative claims to the Prepetition Secured Parties in connection with the incurrence of such debt, and access and utilize Available ABL Cash Collateral (as defined in the Interim DIP Order). This Interim UST Cash Collateral Order has been entered separately, but contemporaneously, with the Interim DIP Order, at the Prepetition UST Secured Parties' request to the Debtors for this separate and standalone Interim UST Cash Collateral Order. In the event of any inconsistency between the UST Cash Collateral Orders and the DIP Orders, the DIP Orders shall control.

Based upon the Motion, the foregoing findings and conclusions, and the overall record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Granted*.  The Motion is granted on an interim basis on the terms and conditions set forth in this Interim UST Cash Collateral Order.  All objections to the Interim UST Cash Collateral Order to the extent not withdrawn, waived, settled, or resolved are hereby overruled on the merits.

2.      *Protection of the DIP Lenders' and Prepetition UST Secured Parties' Rights.*[7]

(a)      Immediately upon delivery by the DIP Secured Parties to the Debtors of a Termination Notice or Carve-Out Trigger Notice, the Prepetition UST Secured Parties' consent to the Debtors' use of UST Cash Collateral shall be deemed automatically withdrawn and terminated.

(b)      Upon the occurrence and continuance of any of the below events (each, a "UST Cash Collateral Termination Event," and any such event being deemed a "UST Event of Default"), the Prepetition UST Agent (at the direction of the Prepetition UST Secured Parties), on not less than five (5) calendar days' notice to the DIP Agent and the Remedies Notice Parties (as

---

[7]      The Prepetition UST Secured Parties' required approvals and consents set forth in this Interim UST Cash Collateral Order shall be binding and applicable without regard to whether such approvals or consents are set forth in the Interim DIP Order or in the DIP Term Sheet or other DIP Documents.

defined in the Interim DIP Order) (such five (5) calendar day period, the "Prepetition UST Remedies Notice Period"), and unless the Court orders otherwise (*provided*, that, during such period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court (and, *provided*, *further*, that, if a request for such hearing is made prior to the end of the Prepetition UST Remedies Notice Period, then the Prepetition UST Remedies Notice Period shall be continued until the Court hears and rules with respect thereto) may terminate and/or revoke its and the Prepetition UST Secured Parties' consent to the Debtors' use of UST Cash Collateral (subject to the Carve-Out and related provisions, including Canadian Priority Charges) by delivering a termination notice (the "UST Cash Collateral Termination Notice") to the DIP Agent and the Remedies Notice Parties (as defined in the Interim DIP Order): (i) the filing of any motion or pleading by the Debtors, or the entry of an order on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify the Interim UST Cash Collateral Order or Final UST Cash Collateral Order in a manner materially adverse to the Prepetition UST Secured Parties without the consent of the Prepetition UST Secured Parties; (ii) the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors; (iii) the Debtors shall attempt to invalidate, reduce or otherwise impair the Prepetition UST Secured Obligations; (iv) the dismissal of any of the Chapter 11 Cases; (v) the effective date of any plan of reorganization; (vi) the conversion of any of the Chapter 11 Cases to a case under chapter 7; (vii) the Debtors' failure to timely satisfy any of the Milestones (as defined below) (subject to extensions as provided herein) or otherwise materially comply with any of the terms of this Interim UST Cash Collateral Order; (viii) the Debtors' failure to materially comply with any of the terms of the Interim DIP Order in a manner that adversely affects the Prepetition UST Secured Parties; (ix) the Debtors' failure to maintain required insurance for the

Prepetition UST Collateral; (x) the Debtors' failure to pay timely the UST Adequate Protection Fees and Expenses and the UST Adequate Protection Payments under this Interim UST Cash Collateral Order; (xi) the DIP Secured Parties and the DIP Loan Parties amend or modify the DIP Term Sheet or the DIP Credit Agreement, or the DIP Secured Parties waive any rights held by such parties thereunder, in a manner that materially and adversely affects the Prepetition UST Secured Parties without having obtained the written consent of the Prepetition UST Secured Parties to do so; (xii) the Final UST Cash Collateral Order (in form and substance acceptable to the Prepetition UST Secured Parties) shall not have been entered by this Court within forty-five (45) days of the Petition Date; (xiii) an Approved Budget shall be updated, supplemented, replaced, or otherwise modified in a manner not reasonably acceptable to the Prepetition UST Secured Parties; (xiv) the Debtors make a payment or take an action that is not in material compliance with the Approved Budget that was approved and consented to by the Prepetition UST Secured Parties in accordance with this Interim UST Cash Collateral Order; or (xv) the DIP Loan Documents are not consistent with the DIP Term Sheet and the DIP Orders or are otherwise not reasonably acceptable to the Prepetition UST Secured Parties or are updated, supplemented, amended, replaced or otherwise modified in a manner that adversely affects the Prepetition UST Secured Parties without having obtained the written consent of the Prepetition UST Secured Parties to do so.

(c)     Subject to the terms of the Prepetition Intercreditor Agreement, the Interim DIP Order, the Carve-Out, and the Canadian Priority Charges, following delivery of a Termination Notice, delivery of a Carve-Out Trigger Notice, or the occurrence and continuance of a UST Event of Default and delivery of a UST Cash Collateral Termination Notice, but prior to exercising the remedies set forth in this sentence below or any other remedies (other than those set forth below in sub-paragraph (d)), the Prepetition UST Secured Parties shall be required to file a motion with

the Court seeking emergency relief (the "UST Stay Relief Motion") to be heard on not less than five (5) calendar days' notice to the Remedies Notice Parties (as defined in the Interim DIP Order) (which may run concurrently with the Prepetition UST Agent Remedies Notice Period) for a further order of the Court fashioning any appropriate remedy, including modifying the automatic stay in the Chapter 11 Cases to permit the Prepetition UST Secured Parties to, subject in all respects to the Prepetition Intercreditor Agreement, the DIP Orders, and the Carve-Out and related provisions (including the Canadian Priority Charges): (a) freeze monies or balances in the Debtors' accounts provided such monies constitute Prepetition UST Collateral; (b) immediately set-off any and all amounts in accounts maintained by the Debtors with the Prepetition UST Agent or the Prepetition UST Secured Parties against the UST Adequate Protection Obligations, (c) enforce any and all available rights against the Prepetition UST Collateral including, without limitation, foreclosing on all or any portion of such collateral, occupying the Debtors' premises, and selling or disposing of such collateral; and (d) take any other actions or exercise any other rights or remedies with respect to the Prepetition UST Collateral permitted under this Interim UST Cash Collateral Order, the Interim DIP Order, the DIP Documents, or applicable law; *provided*, that, for the avoidance of doubt, the Prepetition UST Secured Parties may not take any of the foregoing actions with respect to Prepetition B-2 Priority Collateral until all B-2 Obligations are paid in full in cash.  If the Prepetition UST Secured Parties are permitted and authorized by the Court to take any enforcement action with respect to the Prepetition UST Collateral following the hearing on the UST Stay Relief Motion, the Debtors shall cooperate with the Prepetition UST Secured Parties in their efforts to enforce their security interest in the Prepetition UST Collateral, and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such Prepetition UST Secured Parties from enforcing their security interests in such collateral.

Until such time that the UST Stay Relief Motion has been adjudicated by the Court, the Debtors may use UST Cash Collateral to fund operations and other activities, actions, and payments, in each case in accordance with the Approved Budget, for the purpose of avoiding immediate and irreparable harm to the estates.

(d)     No rights, protections or remedies of the Prepetition UST Secured Parties granted by this Interim UST Cash Collateral Order shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use UST Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use UST Cash Collateral; (iii) the terms of any other order or stipulation related to the Debtors' continued use of UST Cash Collateral or the provision of adequate protection to any party; or (iv) the termination of the DIP Facility; *provided*, any inconsistency between this Interim UST Cash Collateral Order and the Interim DIP Order and/or the Prepetition Intercreditor Agreement shall be resolved by reference to the Interim DIP Order and/or the Prepetition Intercreditor Agreement, as applicable.

3.     *Limitation on Charging Expenses Against Collateral*.  Upon entry of a final order providing for such relief, except to the extent of the Carve-Out and Canadian Priority Charges, no costs or expenses of administration of these Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the Prepetition UST Collateral (including UST Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition UST Agent, and no consent shall be implied from any action, inaction or acquiescence by any of the Prepetition UST Secured Parties, and nothing contained in this Interim UST Cash Collateral Order shall be

deemed to be a consent by the Prepetition UST Secured Parties to any charge, lien, assessment or claims against the Prepetition UST Collateral under section 506(c) of the Bankruptcy Code or otherwise. Further, subject to and effective upon entry of a final order providing for such relief, in no event shall the "equities of the case" exception under section 552(b) of the Bankruptcy Code apply to the Prepetition UST Secured Parties.

4. *No Marshaling*. Effective upon entry of a final order providing for such relief, in no event shall the Prepetition UST Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition UST Collateral or the Prepetition UST Secured Obligations, as applicable.

5. *Payments Free and Clear*. Any and all payments or proceeds remitted to the Prepetition UST Secured Parties pursuant to the provisions of the DIP Documents or this Interim UST Cash Collateral Order or any subsequent order of the Court shall, subject to the reservation of rights set forth below in paragraph 11 of this Interim UST Cash Collateral Order with respect to the Prepetition UST Secured Parties, be irrevocable, received free and clear of any claim, charge, assessment or other liability.

6. *Use of UST Cash Collateral*. The Prepetition UST Secured Parties have consented to, and the Debtors are hereby authorized, solely on the terms and conditions of this Interim UST Cash Collateral Order, to use all Prepetition UST Collateral (including UST Cash Collateral) in accordance with the Approved Budget, subject to Permitted Variances (as defined in the DIP Term Sheet).

7. *Adequate Protection of Prepetition UST Secured Parties*. Pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition UST Collateral (including UST Cash Collateral) for the aggregate Diminution

in Value and as an inducement to the Prepetition UST Secured Parties to consent to priming of the Prepetition UST Tranche A Liens and Prepetition UST Tranche B Liens, in each case solely in the Prepetition B-2 Priority Collateral, and the use of their UST Cash Collateral, the Prepetition UST Secured Parties are granted the following adequate protection (collectively, the "UST Adequate Protection"):

(a)     *Milestone Adequate Protection of the Prepetition UST Secured Parties.* As adequate protection for the Debtors' use of UST Cash Collateral, the Debtors shall meet timely the following milestones (the "Milestones"):

(i)     No later than twelve (12) calendar days after the Petition Date, the Court shall have entered the Interim DIP Order and the Interim UST Cash Collateral Order, each in form and substance satisfactory to the Prepetition UST Secured Parties;

(ii)     No later than thirty (30) calendar days after the Petition Date, the Court shall have entered the Bidding Procedures Order, in form and substance reasonably satisfactory to the Prepetition UST Secured Parties;

(iii)     No later than fifteen (15) calendar days after the granting of the Interim DIP Order and the Interim UST Cash Collateral Order by the Court, the Canadian Court shall have issued the Canadian Initial Recognition Order, the Canadian Supplemental Order, and the Canadian Interim DIP Recognition Order, each in form and substance reasonably satisfactory to the Prepetition UST Secured Parties.[8]

---

[8]     Capitalized terms used but not otherwise defined in this sub-paragraph (iii) shall have the meanings given to those terms in the DIP Term Sheet or other DIP Loan Documents.

(iv)     No later than forty-five (45) calendar days after the Petition Date, the Court shall have entered the Final DIP Order and the Final UST Cash Collateral Order, each in form and substance satisfactory to the Prepetition UST Secured Parties;

(v)     No later than fifteen (15) calendar days after the Court's granting of the Final DIP Order, the Borrower, in its capacity as foreign representative on behalf of the Debtors, shall have filed a motion with the Canadian Court for the recognition of, and the Canadian Court shall have issued, the Canadian Final DIP Recognition Order (capitalized terms used but not otherwise defined in this sub-paragraph (v) shall have the meanings given to those terms in the DIP Term Sheet or other DIP Documents), each in form and substance reasonably satisfactory to the Prepetition UST Secured Parties;

(vi)     No later than ninety (90) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids for the Prepetition B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net proceeds at least equal to $250 million;

(vii)     No later than one-hundred (100) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids pursuant to the Bidding Procedures Order which are not subject to any financing contingencies (but, for the avoidance of doubt, may be subject to receipt of environmental reports and/or title contingencies reasonably acceptable to buyer(s)) for the Prepetition B-2 Priority Collateral) for Prepetition B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net proceeds at least equal to $450 million;

(viii)     No later than one-hundred-and-fifty (150) calendar days after the Petition Date (which may be extended to one-hundred-and-eighty (180) calendar days after the

Petition Date with the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the Prepetition UST Secured Parties (in each case not to be unreasonably withheld) and with the consent of the Junior DIP Lender in its sole discretion, the Debtors shall have consummated Dispositions in accordance with the Bidding Procedures Order that either (i) generated net proceeds of Prepetition B-2 Priority Collateral equal to at least 100% of the sum of the aggregate amount of DIP Obligations and Prepetition B-2 Obligations (each as defined in the Interim DIP Order) outstanding as of such date or (ii) is consummated through a credit bid of the outstanding DIP Obligations and Prepetition B-2 Obligations (and any other applicable obligations) in connection with sales of Prepetition B-2 Priority Collateral (capitalized terms used but not otherwise defined in this sub-paragraph (viii) shall have the meanings given to those terms in the DIP Term Sheet or other DIP Documents);

(ix)     No later than fifty-five (55) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids for the Prepetition UST Tranche B Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net cash proceeds at least equal to $200 million;

(x)     No later than seventy (70) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids pursuant to the Bidding Procedures Order which are not subject to any financing contingencies (but, for the avoidance of doubt, may be subject to receipt of environmental reports and/or title contingencies reasonably acceptable to buyer(s)) for the Prepetition UST Tranche B Collateral) for the Prepetition UST Tranche B Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net cash proceeds at least equal to $300 million;

(xi) No later than ninety (90) calendar days after the Petition Date, the Debtors shall have consummated dispositions in accordance with the Bidding Procedures Order that either (i) generated net proceeds of Prepetition UST Tranche B Collateral equal to at least 100% of the sum of the aggregate amount of the Prepetition UST Tranche B Obligations outstanding as of such date or (ii) is consummated through a credit bid of the outstanding Prepetition UST Tranche B Obligations.

(b) *Reporting to the Prepetition UST Secured Parties*. The Debtors shall deliver to the Prepetition UST Secured Parties (substantially concurrent with delivery to the DIP Agent and the Prepetition ABL Agent as required by the DIP Documents) all financial statements, reports, certificates and related items that are required to be delivered to the DIP Agent or the Prepetition ABL Agent pursuant to the DIP Term Sheet and/or the Interim DIP Order (collectively, the "Reporting Requirements"); *provided*, that, to the extent it would violate applicable securities laws, the Prepetition UST Secured Parties shall refrain, and are prohibited, from trading in the Debtors' stock upon receipt of any information, materials, or reporting whatsoever constituting material non-public information provided to the Prepetition UST Secured Parties and their counsel and advisors pursuant to the Reporting Requirements and this paragraph. Additionally, the Debtors shall make the members of their senior management and its professional advisors available for update calls at least one time per calendar week with the Prepetition UST Secured Parties and their respective professional advisors, at times reasonably acceptable to the Prepetition UST Secured Parties to discuss the cases, the then-current Approved Budget, the Budget Variance Reports, the Liquidity Reports (each as defined in the DIP Term Sheet), other reporting delivered pursuant to the DIP Term Sheet, the other DIP Documents, and/or the Interim DIP Order, union matters, the status of any monetization strategies being pursued by the Debtors, including pursuant

to the Bidding Procedures Order (as defined in the DIP Term Sheet), and any other matters (including business, operational and due diligence matters) reasonably requested by the Prepetition UST Secured Parties.

(c)     *Adequate Protection of Prepetition UST Tranche B Secured Parties*.

(i)     *UST Tranche B Adequate Protection Liens*.  The Prepetition UST Tranche B Agent is hereby granted, for the benefit of the Prepetition UST Tranche B Secured Parties, effective and perfected upon the date of this Interim UST Cash Collateral Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition UST Tranche B Secured Parties' Diminution in Value upon all of the DIP Collateral (the "UST Tranche B Adequate Protection Liens"): (i) in the case of the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, subject solely to the Carve-Out and the Canadian Priority Charges, and (in the case of the Prepetition Joint Collateral) *pari passu* with the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens; (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens with respect thereto, (D) the Junior DIP Liens with respect thereto, (E) the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, and *pari passu* with the UST Tranche A Adequate Protection Liens (as defined below); (iii) in the case of the Prepetition ABL Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, (D) the Prepetition Liens, Adequate Protection Liens,

and Postpetition B-2 Liens with respect thereto, and *pari passu* with the UST Tranche A Adequate

Protection Liens; and (iv) in the case of the Unencumbered Property (as defined in the Interim DIP

Order), subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian

Priority Charges, (C) the Junior DIP Liens, (D) the Postpetition B-2 Liens, (E) the Prepetition

Liens and Adequate Protection Liens of the Prepetition B-2 Secured Parties, (F) the Prepetition

Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, and (G) *pari passu*

with the Prepetition UST Tranche A Secured Parties.

(ii)     *UST Tranche B Section 507(b) Claims*.   The Prepetition UST

Tranche B Secured Parties are hereby granted allowed superpriority administrative expense claims

against the Debtors on a joint and several basis (without the need to file any proof of claim) on

account of the Prepetition UST Tranche B Secured Parties' Diminution in Value under section

507(b) of the Bankruptcy Code (the "UST Tranche B 507(b) Claims"), which UST Tranche B

507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds

thereof (excluding Avoidance Actions but including, without limitation, Avoidance Proceeds).

Except as and to the extent otherwise provided herein, the UST Tranche B 507(b) Claims shall

have priority over any and all administrative expenses and all other claims against the Debtors now

existing or hereafter arising, of any kind whatsoever, including, without limitation, all

administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy

Code, whether or not such claims may become secured by a judgment lien or other non-consensual

lien, levy or attachment; *provided*, *however*, that (i) the UST Tranche B 507(b) Claims shall be in

all cases junior to the Carve-Out and the Canadian Priority Charges; (ii) the UST Tranche B 507(b)

Claims shall be senior to the DIP Superpriority Claims other than as set forth herein or in the DIP

Documents; (iii) with respect to the Prepetition ABL Priority Collateral, the UST Tranche B 507(b)

Claims shall be *pari passu* with the UST Tranche A 507(b) claims, and junior to, in the following order, (A) the ABL 507(b) Claims and (B) the B-2 507(b) Claims; (iv) with respect to the Prepetition UST Tranche B Priority Collateral, the UST Tranche B 507(b) Claims shall be senior to, in the following order, (A) the B-2 507(b) Claims, (B) the ABL 507(b) Claims, (C) the UST Tranche A 507(b) Claims (as defined below), and (D) the DIP Superpriority Claims; (v) with respect to the UST Tranche B Joint Collateral, the UST Tranche B 507(b) Claims shall be *pari passu* with the B-2 507(B) Claims and senior to, in the following order, (A) the ABL 507(b) Claims, (B) the UST Tranche A 507(b) Claims, and (C) the DIP Superpriority Claims; and (vi) with respect to the Prepetition B-2 Priority Collateral, the UST Tranche B 507(b) Claims shall be *pari passu* with the UST Tranche A 507(b) claims and junior to, in the following order, (A) the B-2 507(b) Claims, (B) the DIP Superpriority Claims, and (C) the ABL 507(b) Claims.

(iii)　　*Prepetition and Postpetition UST Tranche B Secured Parties' Fees and Expenses.* As further adequate protection, subject to the Carve-Out and Canadian Priority Charges, the DIP Loan Parties shall currently pay monthly in cash, subject to the procedures set forth in paragraph 11 of this Interim UST Cash Collateral Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition UST Agent itself and the Prepetition UST Tranche B Secured Parties' legal and financial advisors, including, without limitation, those of Arnold & Porter Kaye Scholer LLP, Houlihan Lokey Capital, Inc., Hogan Lovells US LLP, and a local and a foreign counsel in each relevant jurisdiction retained by each of the Prepetition UST Tranche B Secured Parties (collectively, the "UST Tranche B Adequate Protection Fees and Expenses").

(iv)　　*UST Tranche B Adequate Protection Payments.* As further adequate protection, the DIP Loan Parties shall pay monthly interest payments under the UST Tranche B

32

Credit Agreement on or before the tenth (10th) calendar day of each month, beginning August 2023 (promptly upon entry of the Interim DIP Order for any unpaid interest) and continuing thereafter (to the extent remaining payable) through the effective date of the Debtors' chapter 11 plan, payable to the Prepetition UST Secured Parties at the Default Rate (as defined in the Prepetition UST Tranche B Credit Agreement) in cash (the "UST Tranche B Adequate Protection Payment" and, together with the Debtors' obligations to meet the Milestones, the Reporting Requirements, UST Tranche B Adequate Protection Liens and UST Tranche B 507(b) Claims, and the UST Tranche B Adequate Protection Fees and Expenses, the "UST Tranche B Adequate Protection Obligations"); *provided*, that, in the event any portion of such payments are not allowed under section 506(b) of the Bankruptcy Code, the Debtors and all other parties in interest reserve all rights to seek to disgorge or recharacterize such non-allowable interest payments as the payment of principal.

(v)     Notwithstanding anything to the contrary contained herein, or in the Interim DIP Order or the DIP Documents to the contrary, the claims and liens in respect of the Additional Junior DIP Commitment shall not prime any claims or liens of the UST Secured Parties and shall be junior in all respects to the claims and liens of the UST Secured Parties, including in respect of any adequate protection claims and liens granted under this Interim Cash Collateral Order, including the UST Tranche B Adequate Protection Liens and the Tranche B Adequate Protection Obligations.

(d)     *Adequate Protection of Prepetition UST Tranche A Secured Parties*.

(i)     *UST Tranche A Adequate Protection Liens*.  The Prepetition UST Tranche A Agent is hereby granted, for the benefit of the Prepetition UST Tranche A Secured Parties, effective and perfected upon the date of this Interim UST Cash Collateral Order and

without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition UST Tranche A Secured Parties' Diminution in Value upon all of the DIP Collateral (the "UST Tranche A Adequate Protection Liens" and together with the UST Tranche B Adequate Protection Liens, the "UST Adequate Protection Liens"): (i) in the case of the Prepetition ABL Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, (D) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens with respect thereto, and *pari passu* with the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties with respect thereto; (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens with respect thereto, (D) the Junior DIP Liens with respect thereto, (E) the Prepetition and the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, and *pari passu* with the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties with respect thereto; (iii) in the case of the Prepetition UST Tranche B Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties with respect thereto, (D) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens with respect thereto, and (E) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto; (iv) in the case of the Prepetition Joint Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian

34

Priority Charges, (C) the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties and the Prepetition B-2 Secured Parties (including their Postpetition B-2 Liens) with respect thereto, and (D) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto; and (v) in the case of the Unencumbered Property, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Junior DIP Liens, (D) the Postpetition B-2 Liens, and (E) the Prepetition Liens and Adequate Protection Liens of the Prepetition B-2 Secured Parties, (F) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, and (G) *pari passu* with the Prepetition UST Tranche B Secured Parties.

(ii) *UST Tranche A Section 507(b) Claims*. The Prepetition UST Tranche A Secured Parties are hereby granted allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition UST Tranche A Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "UST Tranche A 507(b) Claims," and together with the UST Tranche B 507(b) Claims, the "UST 507(b) Claims") which UST Tranche A 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but including, without limitation, Avoidance Proceeds). Except as otherwise provided herein, the UST Tranche A 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that (i) the UST Tranche A 507(b) Claims shall be in all cases junior to the Carve-Out

and the Canadian Priority Charges; (ii) the UST Tranche A 507(b) Claims shall be senior to the DIP Superpriority Claims except as set forth herein or in the DIP Documents; (iii) with respect to the Prepetition ABL Priority Collateral, the UST Tranche A 507(b) Claims shall be *pari passu* with the UST Tranche B 507(b) claims and junior to, in the following order, (A) the ABL 507(b) Claims and (B) the B-2 507(b) Claims; (iv) with respect to the Prepetition Joint Collateral, the UST Tranche A 507(b) Claims shall be junior to, in the following order, (A) the UST Tranche B 507(b) Claims and the B-2 507(b) Claims and (B) the ABL 507(b) Claims; (v) with respect to the Prepetition UST Tranche B Priority Collateral, the UST Tranche A 507(b) Claims shall be junior to, in the following order, (A) the UST Tranche B 507(b) Claims, (B) the B-2 507(b) Claims, and (C) the ABL 507(b) Claims; and (vi) with respect to the Prepetition B-2 Priority Collateral, the UST Tranche A 507(b) Claims shall be shall be *pari passu* with the UST Tranche B 507(b) claims and junior to, in the following order, (A) the B-2 507(b) Claims, (B) the DIP Superpriority Claims, and (C) the ABL 507(b) Claims.

(iii)     *Prepetition and Postpetition UST Tranche A Secured Parties' Fees and Expenses*.  As further adequate protection, the DIP Loan Parties shall currently pay monthly in cash, subject to the review procedures set forth in paragraph 11 of this Interim UST Cash Collateral Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition UST Tranche A Agent itself and the Prepetition UST Tranche A Secured Parties' legal and financial advisors, including, without limitation, those of Arnold & Porter Kaye Scholer LLP, Houlihan Lokey Capital, Inc., Hogan Lovells US LLP, and a local and a foreign counsel in each relevant jurisdiction retained by each of the Prepetition UST Tranche A Secured Parties (collectively, the "UST Tranche A Adequate Protection Fees and Expenses," and

together with the UST Tranche B Adequate Protection Fees and Expenses, the "UST Adequate Protection Fees and Expenses").

(iv)    *UST Tranche A Adequate Protection Payments.* As further adequate protection, the DIP Loan Parties shall pay monthly interest payments under the Prepetition UST Tranche A Credit Agreement on or before the tenth (10th) calendar day of each month, beginning August 2023 (promptly upon entry of the Interim DIP Order) and continuing thereafter through the effective date of the Debtors' chapter 11 plan, payable to the Prepetition UST Secured Parties at the Default Rate (as defined in the Prepetition UST Tranche A Credit Agreement) in cash (the "UST Tranche A Adequate Protection Payment" and, together with the Debtors' obligations to meet the Milestones, the Reporting Requirements, UST Tranche A Adequate Protection Liens, UST Tranche A 507(b) Claims, the UST Tranche A Adequate Protection Fees and Expenses, the "UST Tranche A Adequate Protection Obligations" and together with the UST Tranche B Adequate Protection Obligations, the "UST Adequate Protection Obligations"); *provided*, that, in the event any portion of such payments are not allowed under section 506(b) of the Bankruptcy Code, the Debtors and all other parties in interest reserve all rights to seek to disgorge or recharacterize such non-allowable interest payments as the payment of principal.

(v)    Notwithstanding anything to the contrary contained herein, or in the Interim DIP Order or the DIP Documents to the contrary, the claims and liens in respect of the Additional Junior DIP Commitment shall not prime any claims or liens of the UST Secured Parties and shall be junior in all respects to the claims and liens of the UST Secured Parties, including in respect of any adequate protection claims and liens granted under this Interim Cash Collateral Order, including the UST Adequate Protection Liens and the UST Adequate Protection Obligations.

8. *Maintenance of Collateral*. The Prepetition UST Loan Parties shall continue to maintain and insure the Prepetition UST Collateral in amounts and for the risks, and by the entities, as required under the Prepetition UST Loan Documents.

9. *Authorization to Record UST Adequate Protection Liens*.

(a) Without in any way limiting the validity of the automatic perfection of the UST Adequate Protection Liens under the terms of this Interim UST Cash Collateral Order, the Prepetition UST Secured Parties are hereby authorized, but not required, to execute in the name of the Prepetition UST Loan Parties, as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction, or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests granted to them hereunder (the "UST Perfection Actions"). All such UST Perfection Actions shall be deemed to have been taken on the date of entry of this Interim UST Cash Collateral Order. The automatic stay shall be modified to the extent necessary to permit the Prepetition UST Secured Parties to take any UST Perfection Action. For the avoidance of doubt, the UST Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim UST Cash Collateral Order, whether or not the Prepetition UST Secured Parties take such UST Perfection Actions.

(b) A certified copy of this Interim UST Cash Collateral Order may, in the discretion of the Prepetition UST Agent, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments,

and all filing and recording offices are hereby authorized to accept a certified copy of this Interim UST Cash Collateral Order for filing and/or recording, as applicable.

10.     *Preservation of Rights Granted Under this Interim UST Cash Collateral Order*.

(a)     Other than the claims and liens expressly granted or permitted by this Interim UST Cash Collateral Order and the Interim DIP Order, including the Carve-Out, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim UST Cash Collateral Order shall be permitted while any of the UST Adequate Protection Obligations remain outstanding, and, except as and to the extent otherwise expressly provided in or permitted under this Interim UST Cash Collateral Order, including the provisions of paragraph 12, the UST Adequate Protection Liens shall not be: (i) junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Prepetition UST Loan Parties; or (iv) junior to any intercompany liens or security interests of the Prepetition UST Loan Parties.

(b)     Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting the Chapter 11 Cases to Successor Cases: (A) the UST Adequate Protection Liens, the UST 507(b) Claims, and the Prepetition UST Liens shall continue in full force and effect, shall maintain their priorities as provided in this Interim UST Cash Collateral Order and the Interim DIP Order (subject to the

Prepetition Intercreditor Agreement) and shall remain binding on all parties in interest until all UST Adequate Protection Obligations shall have been indefeasibly paid and satisfied in full (other than the Prepetition UST Liens, which shall continue in full force and effect until the indefeasible payment or satisfaction in full of the Prepetition UST Secured Obligations); (B) the other rights granted by this Interim UST Cash Collateral Order, including with respect to the Carve-Out and the Canadian Priority Charges, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim UST Cash Collateral Order.

(c)     If any or all of the provisions of this Interim UST Cash Collateral Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any UST Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition UST Agent, its counsel, and the Prepetition UST Secured Parties, and their counsel, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, and enforceability of the Prepetition UST Liens, the UST Adequate Protection Liens, the UST 507(b) Claims, the Carve-Out, and the Canadian Priority Charges.  Notwithstanding any such reversal, modification, vacatur or stay, the UST Adequate Protection Obligations, UST Adequate Protection Liens, and UST 507(b) Claims incurred prior to the actual receipt of written notice by the Prepetition UST Agent of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim UST Cash Collateral Order, and the Prepetition UST Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under section 363(m) of the Bankruptcy Code.

(d)    Except as and to the extent expressly provided in this Interim UST Cash Collateral Order, the UST Adequate Protection Liens, the UST 507(b) Claims, and all other rights and remedies of the Prepetition UST Secured Parties granted by this Interim UST Cash Collateral Order, as well as the Carve-Out and the Canadian Priority Charges, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these Chapter 11 Cases, or terminating the joint administration of these Chapter 11 Cases; (ii) approving the sale of any DIP Collateral or Prepetition UST Collateral pursuant to section 363(b) of the Bankruptcy Code; or (iii) confirming a chapter 11 plan in any of the Chapter 11 Cases.  The terms and provisions of this Interim UST Cash Collateral Order shall continue in full force and effect in these Chapter 11 Cases and in any Successor Cases until all UST Adequate Protection Obligations are indefeasibly satisfied and paid in full in cash.  Any confirmation order entered in these Chapter 11 Cases shall not discharge or otherwise affect in any way the joint and several obligations of the Prepetition UST Loan Parties to the Prepetition UST Secured Parties, other than after (x) the satisfaction and payment in full and in cash of all UST Adequate Protection Obligations or (y) the occurrence of the effective date of such confirmed plan (solely in accordance with the terms of such plan).

11.    *Payment of Fees and Expenses*.

(a)    Subject to the review procedures set forth in this paragraph 11, payment of the UST Adequate Protection Fees and Expenses (which procedures shall apply solely with respect to such UST Adequate Protection Fees and Expenses that constitute professional fees and expenses) shall not be subject to allowance or review by the Court and the Prepetition UST Loan Parties are authorized and directed to pay monthly the UST Adequate Protection Fees and Expenses of the Prepetition UST Agent and the professionals and financial advisors retained by,

or on behalf of, any of the Prepetition UST Secured Parties (including, without limitation, those

of Arnold & Porter Kaye Scholer LLP, Houlihan Lokey Capital, Inc., Hogan Lovells US LLP, and

a local and a foreign counsel retained in each relevant jurisdiction by each Prepetition UST Secured

Party, without the need to file retention or fee applications; *provided*, that, the Houlihan

Restructuring Fee (as defined below) shall be subject to entry of the Final UST Cash Collateral

Order.

        (b)     For the avoidance of doubt, and notwithstanding anything herein to the

contrary, (i) Houlihan Lokey Capital, Inc. is a party to that certain Financial Agency Agreement,

dated October 24, 2022 (the "Financial Agency Agreement"), and the UST Adequate Protection

Fees and Expenses shall include any fees and expenses that become earned, due, and payable to

Houlihan Lokey Capital, Inc. thereunder, including (subject to entry of the Final UST Cash

Collateral Order) the Restructuring Fee (as defined in the Financial Agency Agreement, the

"Houlihan Restructuring Fee")[9]; and (ii) in the event of a Cash Collateral Termination Event under

this Interim UST Cash Collateral Order or a Termination Event under the Interim DIP Order, the

UST Adequate Protection Fees and Expenses, including without limitation, the Houlihan

Restructuring Fee, shall remain due and payable (whether such amounts were incurred before or

after the Petition Date and whether such amounts were incurred or accrued before or after such

Cash Collateral Termination Event or Termination Event) pursuant to the terms of this Interim

UST Cash Collateral Order.

---

[9]    The Houlihan Restructuring Fee is set forth in the Financial Agency Agreement as follows: "If [Houlihan Lokey Capital, Inc.] receives written notice from Treasury to engage with an issuer on a financial restructuring of [the Debtors'] obligation to the Treasury, then upon the completion of the financial restructuring [Houlihan Lokey Capital, Inc.] will receive a fee equal to seventy-five basis points (0.75%) of the principal amount of the claim held by Treasury of the [Debtors] capped at $7,500,000."

(c)     The Prepetition UST Agent and the professionals for the Prepetition UST Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however, any time that such professionals seek payment of fees and out-of-pocket expenses from the Debtors prior to confirmation of a chapter 11 plan, each such professional shall provide summary copies of its invoices (including aggregate amounts of fees and expenses and total amount of time on a per-professional basis), which are not required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, to the Debtors and their counsel, the DIP Lenders, Prepetition UST Loan Parties and their counsel, counsel to any statutory committee (including the Creditors' Committee), and the U.S. Trustee (each, a "UST Review Party," and collectively, the "UST Review Parties"); *provided, however*, that (i) the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law; *provided*, *further*, that the UST Review Parties reserve the right to seek additional information regarding such invoices and time entries of any such professional and/or to challenge any assertion of privilege with respect to the same.  Any objections raised by any UST Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) calendar days after receipt (the "UST Review Period").  If no written objection is received by 11:59 p.m., prevailing Eastern Time, on the last date of the UST Review Period, the Debtors shall pay such invoices within five (5) business days.  If an objection to a professional's invoice is received within the UST Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether

43

the invoiced amount arose or was incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. The Prepetition UST Agent and attorneys and advisors to any Prepetition UST Secured Party shall not be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(d) Notwithstanding the foregoing, the Debtors are authorized and directed to pay to the Prepetition UST Agent and the Prepetition UST Secured Parties' professionals and financial advisors (as provided herein), on or prior to the Closing Date (as defined in the DIP Term Sheet) any accrued and unpaid UST Adequate Protection Fees and Expenses (including reasonable and documented legal fees and expenses), invoices of which have been provided to lead counsel and financial advisor for the Debtors at least one (1) business day prior to the Closing Date, whether arising before or after the Petition Date, which costs, fees and expenses shall not be subject to the UST Review Period. The UST Prepetition Agent and attorneys and advisors to the Prepetition UST Secured Parties shall not be required to file an application seeking compensation for any services or reimbursement of expenses with the Court.

12.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements, and releases contained in this Interim UST Cash Collateral Order shall be binding upon the Debtors in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements, and releases contained in this Interim UST Cash Collateral Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a)

such committee or other party in interest with requisite standing has timely filed an adversary proceeding or initiated a contested matter (subject to the limitations contained herein, a "UST Challenge Motion") (*provided*, that, no interested party shall be permitted to raise a defense to standing on the basis that the applicable Debtor is a Delaware limited liability company) by no later than (i) the earlier of (w) one business day before the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization, whichever occurs first, (x) as to the Creditors' Committee only, 75 calendar days after entry of this Interim UST Cash Collateral Order, (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the UST Challenge Period (as defined below), the UST Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) 75 calendar days from entry of this Interim UST Cash Collateral Order, or (B) the date that is 30 calendar days after their appointment, and (z) for all other parties in interest, 75 calendar days from entry of this Interim UST Cash Collateral Order; and (ii) any such later date as (x) has been agreed to in writing (which may be by email) by the Prepetition UST Secured Parties, or (y) has been ordered by the Court for cause upon a UST Challenge Motion filed and served within any applicable period or has been ordered by the Court after disposition or resolution of a UST Challenge Motion (the time period established by the foregoing clauses (i)-(ii), the "UST Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition UST Secured Obligations or the Prepetition UST Liens, or (B) asserting or prosecuting any UST Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "UST Challenges") against any Prepetition UST Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and

other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "UST Representatives") in connection with or related to the Prepetition UST Secured Parties' ownership of the Debtors' stock, the Prepetition UST Loan Documents, the Prepetition UST Secured Obligations, the Prepetition UST Liens, or the Prepetition UST Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such UST Challenge; *provided*, *however*, that any pleadings filed in connection with a UST Challenge shall comply with the Federal Rules of Bankruptcy Procedure and set forth with specificity the basis for such UST Challenge and any UST Challenges not so raised prior to the expiration of the UST Challenge Period shall be deemed forever waived, released and barred. If no UST Challenge is timely and properly filed during the UST Challenge Period or the Court does not rule in favor of the plaintiff in any such UST Challenge, then: (1) the Debtors' stipulations, admissions, agreements and releases contained in this Interim UST Cash Collateral Order shall be binding on all parties in interest; (2) the obligations of the Prepetition UST Loan Parties under the Prepetition UST Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except as and to the extent provided in the Prepetition Intercreditor Agreement), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these Chapter 11 Cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than as provided in the Prepetition Intercreditor Agreement), or otherwise), disallowance, impairment, counterclaim,

cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their UST Representatives shall be deemed forever waived, released and barred. If any UST Challenge is timely filed during the UST Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim UST Cash Collateral Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such UST Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim UST Cash Collateral Order vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any UST Challenges with respect to the Prepetition UST Loan Documents, Prepetition UST Secured Obligations or Prepetition UST Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of

reorganization in these cases.  For the avoidance of doubt, any chapter 7 or chapter 11 trustee shall, until the expiration of the UST Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by the chapter 7 or chapter 11 trustee or any other party in interest on behalf of the Debtors' estates), be deemed to be a party (other than the Debtors) in such adversary proceeding or contested matter and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, and stipulations made by the Debtors in this Interim UST Cash Collateral Order.

13.     *Limitation on Use of UST Cash Collateral*.  The limitation on the use of DIP Financing proceeds and collateral described in paragraph 20 of the Interim DIP Order shall apply to the Debtors' use of the Prepetition UST Collateral (including UST Cash Collateral), including after termination of the DIP Facility.

14.     *Binding Effect; Successors and Assigns*.  The provisions of this Interim UST Cash Collateral Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided*, that, the Prepetition UST Secured Parties shall have no obligation to permit the use of the Prepetition UST Collateral and UST Cash Collateral by, or

to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

15. *Limitation of Liability*.

(a)     Nothing in this Interim UST Cash Collateral Order, the Interim DIP Order, the DIP Term Sheet or other DIP Documents, the Prepetition Loan Documents, the Prepetition UST Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any Prepetition UST Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. The Prepetition UST Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

(b)     In determining to permit the use of the Prepetition UST Collateral (including UST Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim UST Cash Collateral Order or Prepetition UST Loan Documents, as applicable, none of the Prepetition UST Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the

49

United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Interim UST Cash Collateral Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition UST Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives (as defined in the Interim DIP Order).

16.    *Master Proofs of Claim.*   Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or any Successor Cases, neither the Prepetition UST Agent, nor any other Prepetition UST Secured Parties shall be required to file proofs of claim in these Chapter 11 Cases or any Successor Cases in order to assert claims for payment of any of the Prepetition UST Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the Prepetition UST Loan Documents or this Interim UST Cash Collateral Order. The Debtors' stipulations, admissions and acknowledgments of the claim and liens in respect of the Prepetition UST Secured Obligations set forth in this Interim UST Cash Collateral Order is deemed to constitute timely proofs of claim in respect of all indebtedness, secured status and claims arising under the Prepetition UST Credit Documents and this Interim UST Cash Collateral Order. Nonetheless, in order to facilitate the processing of claims, the Prepetition UST Agent is authorized, but not directed or required, to file a master proof of claim in the Debtors' lead case *In re Yellow Corporation*, *et al.*, Case No. 23-11069 (CTG), on behalf of the applicable Prepetition UST Secured Parties (each, a "Master Proof of Claim"), which shall be deemed to have been filed against each Debtor. The provisions of this paragraph and the filing of Master Proofs of Claim, if any, are intended solely for the purpose of administrative convenience and shall not affect the right

of each Prepetition UST Secured Party (or its successors in interest) to vote separately on any plan filed in these cases.  Any Master Proof of Claim shall not be required to include any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition UST Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition UST Agent.

17.    *Credit Bidding*.  To the extent permitted by the Prepetition Intercreditor Agreement, the Prepetition UST Agent, or any assignee or designee of the Prepetition UST Agent, at the direction of the Prepetition UST Lenders pursuant to the Prepetition UST Credit Agreements and on behalf of the Prepetition UST Lenders, shall have the unqualified and unconditional right to credit bid up to the full amount of the Prepetition UST Secured Obligations (subject, for the avoidance of doubt, to section 363(k) of the Bankruptcy Code) in any sale of any of the Debtors' assets, including pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; *provided*, that, (i) no party shall be permitted to credit bid for Prepetition ABL Priority Collateral until such time that the Prepetition ABL Secured Parties have been paid in full or cash collateralized (as applicable) and (ii) no party shall be permitted to credit bid for Prepetition B-2 Priority Collateral until such time that the B-2 Obligations have been paid in full.  The Prepetition UST Agent at the direction of the Prepetition UST Lenders pursuant to the Prepetition UST Credit Agreements and on behalf of the Prepetition UST Lenders, shall have the absolute right to assign, sell, or otherwise dispose of its right to credit bid in connection with any credit bid by or on behalf of the Prepetition UST Tranche Secured Parties to any acquisition entity or joint venture formed in connection with such bid.

18. *Effectiveness.* Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim UST Cash Collateral Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim UST Cash Collateral Order.

19. *Governing Order.* Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to, in the case of the Debtors' usage of the UST Cash Collateral, this Interim UST Cash Collateral Order (including the Interim DIP Order in the event of any inconsistency therewith), including compliance with the Approved Budget (subject to Permitted Variances (as defined in the DIP Term Sheet)) and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of the Motion and this Interim UST Cash Collateral Order, regarding UST Cash Collateral, this Interim UST Cash Collateral Order shall control; *provided*, that the Interim DIP Order shall control any inconsistencies between the Interim DIP Order and this Interim UST Cash Collateral Order; *provided*, *further*, that, the Carve Out (as set forth in the Interim DIP Order) and any provision related to the Canadian Priority Charges are incorporated herein by reference and shall survive any expiration or termination of the DIP Term Sheet to the extent Prepetition UST Secured Obligations remain outstanding. For the avoidance of doubt, upon entry of this Interim UST Cash Collateral Order, this Interim UST Cash Collateral Order shall supersede and replace (along with the Interim DIP Order) the Interim Cash Collateral Order entered at Docket No. 181 in all respects.

20.     *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this Interim UST Cash Collateral Order.

21.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

22.     *No Third Party Rights*.  Except as and to the extent explicitly provided for herein, this Interim UST Cash Collateral Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

23.     *Necessary Action*.  The Debtors and the Prepetition UST Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim UST Cash Collateral Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Interim UST Cash Collateral Order.

24.     *Retention of Jurisdiction*.  This Court shall retain jurisdiction to enforce the provisions of this Interim UST Cash Collateral Order.

25.     *Final Hearing*.  A final hearing to consider the relief requested in the Motion on a final basis shall be held on September 18, 2023 at 2:00 p.m. (Prevailing Eastern Time).

26.     *Objections*.  Any objections or responses to the Motion pertaining to the proposed relief contained herein shall be filed on or prior to September 11, 2023 at 4:00 p.m. (Prevailing Eastern Time).  Any party objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the Debtors, 10990 Roe Avenue, Overland Park, Kansas 66211, Attn: Matthew A. Doheny and Leah Dawson; (b) counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654,

Attn.: Patrick J. Nash, Jr., P.C. and Whitney C. Fogelberg; 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith and Aaron Metviner; (b) counsel to the Junior DIP Lender, Quinn Emmanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017, Attn: Eric Winston; 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirplani; Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606, Attn: Lucas S. Smith; 1211 Avenue of the Americas, New York, New York 10036, Attn: Natasha S. Hwangpo; (c) counsel to the B-2 Lenders, White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 Attn: Scott Greissman, Elizabeth Feld, and Andrew Zatz; (d) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane M. Leamy and Richard Schepacarter; (e) counsel to the Creditors' Committee; (f) the Prepetition ABL Agent, and counsel thereto, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Kevin Simard and Hampton Foushee; (g) the Prepetition B-2 Agent, and counsel thereto, Holland & Knight LLP, 150 N. Riverside Plaza, Suite 2700, Chicago IL 60606, Attn. Joshua M. Spencer and Phillip W. Nelson; (h) the Prepetition UST Tranche A Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (i) the Prepetition UST Tranche B Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (j) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602, Attn: Michael Messersmith, 250 West 55th Street, New York, New York 10019, Attn: Benjamin Mintz, and 601 Massachusetts Ave., N.W., Washington, DC 20001, Attn: Rosa Evergreen, and the U.S. Department of Justice, 1100 L St NW Rm 7102, Washington, DC 20005-4035, Attn: I-Heng.Hsu

and Crystal Geise; and (k) counsel to the proposed Stalking Horse Purchaser, BakerHostetler LLP, 200 S. Orange Avenue, Suite 2300, Orlando, Florida 32801, Attn: Elizabeth Green.

27.     The Debtors shall promptly serve copies of this Interim UST Cash Collateral Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing and to any party that has filed with this Court a request for notices in these cases.

Dated: August 18th, 2023
Wilmington, Delaware

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT E

FORM OF INTERCOMPANY NOTE

[Under Separate Cover]

EXHIBIT F

FORM OF COMPLIANCE CERTIFICATE[1]

Reference is made to the Junior Secured Super-Priority Debtor-In-Possession Credit Agreement, dated as of [_____ ___], 2023 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), among Yellow Corporation, a Delaware corporation, the Guarantors party thereto from time to time, the Lenders party thereto from time to time and Alter Domus Products Corp., as Administrative Agent and Collateral Agent. Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Credit Agreement.

Pursuant to Section 6.01 and 6.02 of the Credit Agreement, the undersigned, solely in his/her capacity as a Responsible Officer of the Borrower, certifies as follows:

1.    Attached hereto as Exhibit A is the consolidated balance sheet of the Borrower and its Subsidiaries as of the fiscal quarter ended [    ] and the related (i) consolidated statements of income or operations for such fiscal quarter and for the portion of the fiscal year then ended and (ii) consolidated statements of cash flows for such fiscal quarter and the portion of the fiscal year then ended, setting forth in each case in comparative form the figures for the corresponding fiscal quarter of the previous fiscal year and the corresponding portion of the previous fiscal year, all in reasonable detail. These present fairly in all material respects the financial condition, results of operations and cash flows of the Borrower and its Subsidiaries in accordance with GAAP, subject only to normal year-end audit adjustments and the absence of footnotes. Also attached hereto as Exhibit A are customary management discussion and analysis.

2. Attached hereto as Exhibit B is the information about Net Proceeds received in the above described quarterly period and the application thereof (other than Net Proceeds not exceeding $150,000 in the aggregate after the Closing Date (and for the avoidance of doubt, not including accounts receivable information)).

3. To my knowledge, except as otherwise disclosed to the Administrative Agent pursuant to the Credit Agreement, no Default or Event of Default has occurred.  [If unable to provide the foregoing certification, describe in reasonable detail the reasons therefor and circumstances thereof and any action taken or proposed to be taken with respect thereto on Annex A attached hereto.]

---

[1] To the extent of any conflict with the terms of the Credit Agreement, the Credit Agreement terms shall control.

IN WITNESS WHEREOF, the undersigned, solely in his/her capacity as a Responsible Officer of Yellow Corporation, has executed this certificate for and on behalf of Yellow Corporation and has caused this certificate to be delivered this _____ day of _____, 202[_].

YELLOW CORPORATION

By: _____
    Name:
    Title:

EXHIBIT G-1

FORM OF
UNITED STATES TAX COMPLIANCE CERTIFICATE
(For Non-U.S. Lenders That Are Not Partnerships or Pass-Thru Entities For U.S. Federal Income Tax Purposes)

Reference is made to the Junior Secured Super-Priority Debtor-In-Possession Credit Agreement, dated as of [_____ __], 2023 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), among Yellow Corporation, a Delaware corporation, the Guarantors party thereto from time to time, the Lenders party thereto from time to time and Alter Domus Products Corp., as Administrative Agent and Collateral Agent. Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Credit Agreement.

Pursuant to the provisions of Section 3.01(d) of the Credit Agreement, the undersigned hereby certifies that (i) it is the sole record and beneficial owner of the Loan(s) (as well as any Term Note(s) evidencing such Loan(s)) in respect of which it is providing this certificate, (ii) it is not a "bank" as such term is used in Section 881(c)(3)(A) of the Internal Revenue Code of 1986, as amended, (the "**Code**"), (iii) it is not a "10-percent shareholder" of the Borrower within the meaning of Code Section 871(h)(3)(B), (iv) it is not a "controlled foreign corporation" within the meaning of Section 881(c)(3)(C) of the Code and (v) no payments in connection with the Loan Documents are effectively connected with the undersigned's conduct of a U.S. trade or business.

The undersigned has furnished the Administrative Agent and the Borrower with a certificate of its non-U.S. person status on Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E.  By executing this certificate, the undersigned agrees that (1) if the information provided on this certificate changes, or if a lapse in time or change in circumstance renders the information on this certificate obsolete, expired or inaccurate in any material respect, the undersigned shall promptly so inform the Borrower and the Administrative Agent in writing and deliver promptly to the Borrower and the Administrative Agent an updated certificate or other appropriate documentation (including any new documentation reasonably requested by the Borrower or Administrative Agent) or promptly notify the Borrower and Administrative Agent in writing of its inability to do so, and (2) the undersigned shall furnish the Borrower and the Administrative Agent a properly completed and currently effective certificate in either the calendar year in which payment is to be made by the Borrower or the Administrative Agent to the undersigned, or in either of the two calendar years preceding such payment.

[Signature Page Follows]

[Lender]

By: _____
           Name:
           Title:

[Address]

Dated: _____, 20[ ]

EXHIBIT G-2

FORM OF
UNITED STATES TAX COMPLIANCE CERTIFICATE
(For Non-U.S. Lenders That Are Partnerships or Pass-Thru Entities For U.S. Federal Income Tax Purposes)

Reference is made to the Junior Secured Super-Priority Debtor-In-Possession Credit Agreement, dated as of [_____  __], 2023 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), among Yellow Corporation, a Delaware corporation, the Guarantors party thereto from time to time, the Lenders party thereto from time to time and Alter Domus Products Corp., as Administrative Agent and Collateral Agent. Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Credit Agreement.

Pursuant to the provisions of Section 3.01(d) of the Credit Agreement, the undersigned hereby certifies that (i) it is the sole record owner of the Loan(s) (as well as any Term Note(s) evidencing such Loan(s)) in respect of which it is providing this certificate, (ii) its direct or indirect partners/members are the sole beneficial owners of such Loan(s) (as well as any Term Note(s) evidencing such Loan(s)), (iii) neither the undersigned nor any of its direct or indirect partners/members is a "bank" within the meaning of Section 881(c)(3)(A) of the Internal Revenue Code of 1986, as amended, (the "**Code**"), (iv) none of its direct or indirect partners/members is a "10-percent shareholder" of the Borrower within the meaning of Code Section 871(h)(3)(B), (v) none of its direct or indirect partners/members is a "controlled foreign corporation" related to the Borrower within the meaning of Section 881(c)(3)(C) of the Code and (vi) no payments in connection with the Loan Documents are effectively connected with the undersigned's conduct of a U.S. trade or business.

The undersigned has furnished the Administrative Agent and the Borrower with Internal Revenue Service Form W-8IMY accompanied by an Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E from each of its direct or indirect partners/members claiming the portfolio interest exemption, *provided* that, for the avoidance of doubt, the foregoing shall not limit the obligation of the undersigned to provide, in the case of a partner/member not claiming the portfolio interest exemption, an Internal Revenue Service Form W-8ECI, Internal Revenue Service Form W-9 or Internal Revenue Service Form W-8IMY (including appropriate underlying certificates from each interest holder of such partner/member), in each case establishing such direct or indirect partner/member's any available exemption from U.S. federal withholding tax. By executing this certificate, the undersigned agrees that (1) if the information provided on this certificate changes, or if a lapse in time or change in circumstance renders the information on this certificate obsolete, expired or inaccurate in any material respect, the undersigned shall promptly so inform the Borrower and the Administrative Agent and deliver promptly to the Borrower and the Administrative Agent an updated certificate or other appropriate documentation (including any new documentation reasonably requested by the Borrower or the Administrative Agent) or promptly notify the Borrower and Administrative Agent in writing of its inability to do so, and (2) the undersigned shall have at all times furnished the Borrower and the Administrative Agent in writing with a properly completed and currently effective certificate in either the calendar year in which each payment is to be made to the undersigned, or in either of the two calendar years preceding such payments.

[Signature Page Follows]

[Lender]

By: _____
     Name:
     Title:

[Address]

Dated: _____, 20[ ]

EXHIBIT G-3

FORM OF
UNITED STATES TAX COMPLIANCE CERTIFICATE
(For Non-U.S. Participants That Are Not Partnerships or Pass-Thru Entities For U.S. Federal
Income Tax Purposes)

Reference is made to the Junior Secured Super-Priority Debtor-In-Possession Credit Agreement, dated as of [_____  __], 2023 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), among Yellow Corporation, a Delaware corporation, the Guarantors party thereto from time to time, the Lenders party thereto from time to time and Alter Domus Products Corp., as Administrative Agent and Collateral Agent. Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Credit Agreement.

Pursuant to the provisions of Section 3.01(d) and Section 10.04(f) of the Credit Agreement, the undersigned hereby certifies that (i) it is the sole record and beneficial owner of the participation in respect of which it is providing this certificate, (ii) it is not a "bank" within the meaning of Section 881(c)(3)(A) of the Internal Revenue Code of 1986, as amended, (the "**Code**"), (iii) it is not a "10-percent shareholder" of the Borrower within the meaning of Code Section 871(h)(3)(B), (iv) it is not a "controlled foreign corporation" related to the Borrower within the meaning of Section 881(c)(3)(C) of the Code and (v) no payments in connection with the Loan Documents are effectively connected with the undersigned's conduct of a U.S. trade or business.

The undersigned has furnished its participating non-U.S. Lender with a certificate of its non-U.S. person status on Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E.  By executing this certificate, the undersigned agrees that (1) if the information provided on this certificate changes, or if a lapse in time or change in circumstance renders the information on this certificate obsolete, expired or inaccurate in any material respect, the undersigned shall promptly so inform such non-U.S. Lender in writing and deliver promptly to the Borrower and the Administrative Agent an updated certificate or other appropriate documentation (including any new documentation reasonably requested by the Borrower or Administrative Agent) or promptly notify the Borrower and Administrative Agent in writing of its inability to do so, and (2) the undersigned shall have at all times furnished such Non-U.S. Lender with a properly completed and currently effective certificate in either the calendar year in which each payment is to be made to the undersigned, or in either of the two calendar years preceding such payments.

[Signature Page Follows]

[Lender]

By: _____

     Name:
     Title:

[Address]

Dated: _____, 20[ ]

EXHIBIT G-4

FORM OF
UNITED STATES TAX COMPLIANCE CERTIFICATE
(For Non-U.S. Participants That Are Partnerships or Pass-Thru Entities For U.S. Federal Income Tax Purposes)

Reference is made to the Junior Secured Super-Priority Debtor-In-Possession Credit Agreement, dated as of [_____  __], 2023 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), among Yellow Corporation, a Delaware corporation, the Guarantors party thereto from time to time, the Lenders party thereto from time to time and Alter Domus Products Corp., as Administrative Agent and Collateral Agent. Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Credit Agreement.

Pursuant to the provisions of Section 3.01(d) and Section 10.04(f) of the Credit Agreement, the undersigned hereby certifies that (i) it is the sole record owner of the participation in respect of which it is providing this certificate, (ii) its direct or indirect partners/members are the sole beneficial owners of such participation, (iii) neither the undersigned nor any of its direct or indirect partners/members is a "bank" within the meaning of Section 881(c)(3)(A) of the Internal Revenue Code of 1986, as amended, (the "**Code**"), (iv) none of its direct or indirect partners/members is a "10-percent shareholder" of the Borrower within the meaning of Code Section 871(h)(3)(B), (v) none of its partners/members is a "controlled foreign corporation" related to the Borrower within the meaning of Section 881(c)(3)(C) of the Code and (vi) no payments in connection with the Loan Documents are effectively connected with the undersigned's conduct of a U.S. trade or business.

The undersigned has furnished its participating non-U.S. Lender with Internal Revenue Service Form W-8IMY accompanied by an Internal Revenue Service Form W-8BEN or Internal Revenue Service W-8BEN-E from each of its direct or indirect partners/members claiming the portfolio interest exemption, *provided* that, for the avoidance of doubt, the foregoing shall not limit the obligation of the undersigned to provide, in the case of a partner/member not claiming the portfolio interest exemption, an Internal Revenue Service Form W-8ECI, Internal Revenue Service Form W-9 or Internal Revenue Service Form W-8IMY (including appropriate underlying certificates from each interest holder of such partner/member), in each case establishing such direct or indirect partner/member's any available exemption from U.S. federal withholding tax.  By executing this certificate, the undersigned agrees that (1) if the information provided on this certificate changes, the under-signed shall promptly so inform such non-U.S. Lender in writing and (2) the undersigned shall have at all times furnished such non-U.S. Lender with a properly completed and currently effective certificate in either the calendar year in which each payment is to be made to the under-signed, or in either of the two calendar years preceding such payments.

[Signature Page Follows]

[Lender]

By: _____

Name:
Title:

[Address]

Dated: _____, 20[ ]

EXHIBIT H

[RESERVED]

EXHIBIT I

[RESERVED]

EXHIBIT J

## FORM OF TERM NOTE

[New York, New York]

[Date]

FOR VALUE RECEIVED, the undersigned, Yellow Corporation, a Delaware corporation (the "Borrower"), hereby promises to pay to the Lender set forth above (the "Lender"), in lawful money of the United States of America in immediately available funds at the office of the Administrative Agent (such term, and each other capitalized term used but not defined herein, having the meaning assigned to it in the Junior Secured Super-Priority Debtor-In-Possession Credit Agreement, dated as of [_____ __], 2023 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), among Yellow Corporation, a Delaware corporation, the Guarantors party thereto from time to time, the Lenders party thereto from time to time and Alter Domus Products Corp., as Administrative Agent and Collateral Agent) (i) on the dates set forth in the Credit Agreement, the principal amounts set forth in the Credit Agreement with respect to Term Loans made by the Lender to Borrower pursuant to the Credit Agreement and (ii) on each Interest Payment Date, interest at the rate or rates per annum as provided in the Credit Agreement on the unpaid principal amount of all Term Loans made by the Lender to the Borrower pursuant to the Credit Agreement.

The Borrower promises to pay interest, on written demand, on any overdue principal and, to the extent permitted by law, overdue interest from their due dates at the rate or rates provided in the Credit Agreement.

The Borrower hereby waives (to the extent permitted by applicable law) diligence, presentment, demand, protest and notice of any kind whatsoever. Subject to the terms of the Credit Agreement, including Section 8.02 thereof, nonexercise by the holder hereof of any of its rights hereunder in any particular instance shall not constitute a waiver thereof in that or any subsequent instance.

All borrowings evidenced by this note and all payments and prepayments of the principal hereof and interest hereon and the respective dates thereof shall be endorsed by the holder hereof on the schedule attached hereto and made a part hereof or on a continuation thereof which shall be attached hereto and made a part hereof, or otherwise recorded by such holder in its internal records; provided, however, that the failure of the holder hereof to make such a notation or any error in such notation shall not affect the obligations of the Borrower under this note.

This note is one of the Term Notes referred to in the Credit Agreement that, among other things, contains provisions for the acceleration of the maturity hereof upon the happening of certain events, for optional and mandatory prepayment of the principal hereof prior to the maturity hereof and for the amendment or waiver of certain provisions of the Credit Agreement, all upon the terms and conditions therein specified.

**THIS NOTE MAY NOT BE TRANSFERRED EXCEPT IN COMPLIANCE WITH THE TERMS OF THE CREDIT AGREEMENT.**

**EXCEPT TO THE EXTENT SUPERSEDED BY THE BANKRUPTCY COURT, THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF TO THE EXTENT SUCH PRINCIPLES WOULD CAUSE THE APPLICATION OF THE LAW OF ANOTHER STATE.**

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Term Note to be duly executed by their respective authorized officers as of the day and year first above written.

YELLOW CORPORATION

By: _____
          Name:
          Title:

LOANS AND PAYMENTS

| Date | Amount of Loan | Maturity Date | Payments of Principal/Interest | Principal Balance of Note | Name of Person Making the Notation |
|---|---|---|---|---|---|
| | | | | | |

EXHIBIT K

FORM OF DELAYED DRAW TERM NOTE

[New York, New York]

[Date]

FOR VALUE RECEIVED, the undersigned, Yellow Corporation, a Delaware corporation (the "Borrower"), hereby promises to pay to the Lender set forth above (the "Lender"), in lawful money of the United States of America in immediately available funds at the office of the Administrative Agent (such term, and each other capitalized term used but not defined herein, having the meaning assigned to it in the Junior Secured Super-Priority Debtor-In-Possession Credit Agreement, dated as of [_____ __], 2023 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), among Yellow Corporation, a Delaware corporation, the Guarantors party thereto from time to time, the Lenders party thereto from time to time and Alter Domus Products Corp., as Administrative Agent and Collateral Agent) (i) on the dates set forth in the Credit Agreement, the principal amounts set forth in the Credit Agreement with respect to Delayed Draw Term Loans made by the Lender to Borrower pursuant to the Credit Agreement and (ii) on each Interest Payment Date, interest at the rate or rates per annum as provided in the Credit Agreement on the unpaid principal amount of all Delayed Draw Term Loans made by the Lender to the Borrower pursuant to the Credit Agreement.

The Borrower promises to pay interest, on written demand, on any overdue principal and, to the extent permitted by law, overdue interest from their due dates at the rate or rates provided in the Credit Agreement.

The Borrower hereby waives (to the extent permitted by applicable law) diligence, presentment, demand, protest and notice of any kind whatsoever.  Subject to the terms of the Credit Agreement, including Section 8.02 thereof, nonexercise by the holder hereof of any of its rights hereunder in any particular instance shall not constitute a waiver thereof in that or any subsequent instance.

All borrowings evidenced by this note and all payments and prepayments of the principal hereof and interest hereon and the respective dates thereof shall be endorsed by the holder hereof on the schedule attached hereto and made a part hereof or on a continuation thereof which shall be attached hereto and made a part hereof, or otherwise recorded by such holder in its internal records; provided, however, that the failure of the holder hereof to make such a notation or any error in such notation shall not affect the obligations of the Borrower under this note.

This note is one of the Delayed Draw Term Notes referred to in the Credit Agreement that, among other things, contains provisions for the acceleration of the maturity hereof upon the happening of certain events, for optional and mandatory prepayment of the principal hereof prior to the maturity hereof and for the amendment or waiver of certain provisions of the Credit Agreement, all upon the terms and conditions therein specified.

**THIS NOTE MAY NOT BE TRANSFERRED EXCEPT IN COMPLIANCE WITH THE TERMS OF THE CREDIT AGREEMENT.**

**EXCEPT TO THE EXTENT SUPERSEDED BY THE BANKRUPTCY COURT, THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF TO THE EXTENT SUCH PRINCIPLES WOULD CAUSE THE APPLICATION OF THE LAW OF ANOTHER STATE.**

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Delayed Draw Term Note to be duly executed by their respective authorized officers as of the day and year first above written.

YELLOW CORPORATION

By: _____
       Name:
       Title:

LOANS AND PAYMENTS

| Date | Amount of Loan | Maturity Date | Payments of Principal/Interest | Principal Balance of Note | Name of Person Making the Notation |
|------|----------------|---------------|-------------------------------|--------------------------|-------------------------------------|
|      |                |               |                               |                          |                                     |

## Exhibit 2

**B-2 Amendment**

AMENDMENT NO. 4

Dated as of September 6, 2023

To

AMENDED AND RESTATED CREDIT AGREEMENT

Dated as of September 11, 2019

THIS AMENDMENT NO. 4 (this "Amendment") is dated as of September 6, 2023 by and among Yellow Corporation (the "Borrower"), the other Guarantors party to the Credit Agreement, the financial institutions listed on the signature pages hereof and Alter Domus Products Corp. (formerly known as Cortland Products Corp.), as administrative agent and collateral agent (the "Administrative Agent"), under that certain Amended and Restated Credit Agreement dated as of September 11, 2019 by and among the Borrower, the Guarantors party thereto from time to time, the Lenders and the Administrative Agent (as (a) amended by (i) Amendment No. 1 to Amended and Restated Credit Agreement dated as of April 7, 2020, (ii) Amendment No. 2 to Amended and Restated Credit Agreement dated as of July 7, 2020, (iii) Amendment No. 3 to Amended and Restated Credit Agreement as of July 7, 2023 and (b) further amended, amended and restated, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"). Capitalized terms used herein and not otherwise defined herein shall have the respective meanings given to them in the Credit Agreement, as amended hereby;

WHEREAS, the Borrower and the Guarantors have requested that the Lenders amend the Credit Agreement on the terms more fully set forth herein; and

WHEREAS, the Lenders party hereto constituting all of the existing Lenders party to the Credit Agreement as of the date hereof (the "Existing Lenders") and the Administrative Agent have agreed to make the amendments described herein pursuant to this Amendment on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises set forth above, the terms and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower, the Guarantors party hereto and the Existing Lenders and the Administrative Agent have agreed to enter into this Amendment.

**Section 1.    Amendments to Credit Agreement**. Effective as of the date of satisfaction or waiver of the conditions precedent set forth in Section 2 below (the "Amendment No. 4 Effective Date"), (a) the Credit Agreement is hereby amended to delete the stricken text (indicated textually in the same manner as the following example: stricken text) and to add the double-underlined text (indicated textually in the same manner as the following example: double-underlined text) as set forth in the pages of the Credit Agreement attached as Exhibit A hereto, (b) the Schedules to the Credit Agreement are hereby amended and restated in their entirety as set forth in Exhibit B attached hereto, (c) Exhibit D to the Credit Agreement is hereby amended and restated in its entirety as set forth in Exhibit C attached hereto, (d) Exhibit H to the Credit Agreement is hereby amended and restated in its entirety as set forth in Exhibit D attached hereto, and (e) Exhibit K to the Credit Agreement shall be deleted in its entirety.

**Section 2.     Conditions of Effectiveness**.  The effectiveness of this Amendment on the Amendment No. 4 Effective Date is subject to the satisfaction (or waiver by each of the Existing Lenders) of the following conditions precedent:

(a)     the Administrative Agent shall have received counterparts of this Amendment duly executed by the Borrower, the Guarantors party hereto and each of the Existing Lenders and acknowledged by the Administrative Agent;

(b)     each Lender shall have received a Term Note executed by the Borrower in favor of such Lender that has requested a Term Note at least one Business Day in advance of the Amendment No. 4 Effective Date;

(c)     the Administrative Agent shall have received a Request for Credit Extension duly executed by the Borrower in accordance with the requirements set forth in the Credit Agreement (after giving effect to this Amendment);

(d)     the Administrative Agent shall have received a copy of the Junior DIP Credit Agreement, executed by the parties thereto, in form and substance reasonably satisfactory to the Administrative Agent and the Existing Lenders;

(e)     the Administrative Agent shall have received an executed copy of the FTI Engagement Letter, in form and substance reasonably satisfactory to the Existing Lenders;

(f)     the Borrower shall have paid all invoiced expenses of the Administrative Agent and the Existing Lenders (including, without limitation, all previously invoiced, reasonable, out-of-pocket expenses of the Administrative Agent (including, to the extent invoiced, reasonable attorneys' fees and expenses of Holland & Knight LLP, White & Case LLP, GrayRobinson, P.A. and Osler, Hoskin & Harcourt LLP, in each case to the extent reimbursable under the terms of the Credit Agreement, as amended hereby);

(g)     receipt by the Administrative Agent of a certificate executed by the Secretary (or other equivalent officer, partner or manager) of each Loan Party dated as of the Amendment No. 4 Effective Date certifying:  (i) as true and correct a copy of resolutions in form and substance reasonably satisfactory to the Administrative Agent, of the board of directors (or other equivalent governing body, member or partner) of each Loan Party approving and authorizing the execution, delivery and performance by such Loan Party of this Amendment and all documents, instruments and agreements executed and/or delivered in connection herewith (if any) and of the transactions contemplated herein and therein, (ii) as true and correct and in full force and effect, without any amendment except as shown, a copy of the Organization Documents of each Loan Party and that the copies of such Loan Party's Organizational Documents delivered to Administrative Agent on such date as a part of the "secretary's certificate" delivered by such Loan Party are true, correct and complete copies of such Organizational Documents as currently in full force and effect, (iii) if available, a true and correct a copy of a good standing certificate/certificate of status for each Loan Party certified by the applicable Governmental Authority of such Loan Party's jurisdiction of incorporation, organization or formation dated a recent date prior to the date hereof, and (iv) the names and signatures of the officers of such Loan Party authorized to execute and deliver this Amendment and all documents, instruments and agreements executed and/or delivered in connection herewith (if any) on behalf of such Loan Party pursuant to the resolutions referenced in clause (i) above (and such certificate shall be countersigned by another officer of such Loan Party certifying the name, office and signature of the Secretary (or other equivalent officer, partner or manager) of such Loan Party giving such certificate);

(h)     the Interim Order (i) shall have been entered by the Bankruptcy Court and the Borrower shall have delivered to the Administrative Agent and the Lenders a true and complete copy of such order, and (ii) shall be in full force and effect and shall not (in whole or in part) have been reversed, modified, amended, stayed, appealed or vacated, or subject to stay pending appeal, or otherwise challenged or subject

2

to any challenge, absent prior written consent of the Lenders (and with respect to any provisions that affect the rights or duties of the Administrative Agent, the Administrative Agent);

(i)        (i) no trustee, examiner, receiver or interim shall have been appointed or designated with respect to the Debtors or their business, properties or assets and no motion shall be pending seeking any such relief, and (ii) no motion shall be pending seeking any other relief in the Bankruptcy Court or the Canadian Court to exercise control over Collateral with an aggregate fair market value in excess of $100,000 with respect to all such motions; provided that this clause (ii) shall not apply to any motion that is being contested in good faith by the Debtors and which contest the Debtors reasonably believe will be successful; and

(j)        the DIP Proceeds Account shall have been established and shall constitute Collateral but not Prepetition ABL Priority Collateral.

**Section 3.        Representations and Warranties of the Borrower**.  Each of the Borrower and each of the Guarantors party hereto hereby represents and warrants as follows as of the Amendment No. 4 Effective Date:

(a)        This Amendment has been duly authorized, executed and delivered by the Borrower and each Guarantor and, upon entry of the DIP Order (and, in the case of the Canadian Collateral, the Canadian Orders), this Amendment and the Credit Agreement, as modified hereby, constitute legal, valid and binding obligations of the Borrower and the Guarantors and are enforceable against the Borrower and the Guarantors in accordance with their terms, except as such enforceability may be limited by Debtor Relief Laws and by general principles of equity.

(b)        As of the date hereof, the representations and warranties of the Borrowers and the Guarantors set forth in the Credit Agreement, as modified hereby, and the Loan Documents, are true and correct in all material respects on and as of the date hereof, except to the extent such representations and warranties expressly relate to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date; provided, that any such representation and warranty that is qualified by "materiality", "material adverse effect" or similar language shall be true and correct in all respects (after giving effect to such qualification therein) on and as of the date hereof with the same effect as though made on and as of such date or such earlier date, as applicable.

**Section 4.        Reference to and Effect on the Credit Agreement**.

(a)        Upon the effectiveness hereof, each reference to the Credit Agreement in the Credit Agreement or any other Loan Document shall mean and be a reference to the Credit Agreement as modified hereby.  This Amendment shall constitute a Loan Document.

(b)        Except as specifically set forth above, the Credit Agreement and all other documents, instruments and agreements executed and/or delivered in connection therewith shall remain in full force and effect and are hereby ratified and confirmed.

(c)        Other than as set forth herein, the execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any right, power or remedy of the Administrative Agent or the Lenders, nor constitute a waiver of any provision of the Credit Agreement, the Loan Documents or any other documents, instruments and agreements executed and/or delivered in connection therewith.

**Section 5.        Acknowledgements**.  By executing this Amendment, each of the Loan Parties (a) consents to this Amendment and the performance by the Borrower and each of the other Loan Parties of their obligations hereunder, (b) acknowledges that notwithstanding the execution and delivery of this Amendment, the obligations of each of the Loan Parties under each of the Collateral Documents and each

of the other Loan Documents to which such Loan Party is a party, are not impaired or affected and each such Collateral Document and each such other Loan Document continues in full force and effect, (c) affirms and ratifies as of the date hereof, its Obligations under the Credit Agreement as expanded or amended hereby and confirms the benefits of the pledges set forth in each Collateral Document to the extent it is a party thereto, (d) confirms as of the date hereof that its Obligations under the Credit Agreement as expanded or amended hereby constitute "Secured Obligations" (as defined in the Collateral Documents) and (e) confirms as of the date hereof that the Secured Obligations shall remain in full force and effect, and such Secured Obligations shall continue to be entitled to the benefits of the grant set forth in the Collateral Documents. Each Guarantor (a) confirms as of the date hereof its Guaranteed Obligations under the Credit Agreement, (b) confirms as of the date hereof that the Guaranteed Obligations under the Credit Agreement as expanded or amended hereby are entitled to the benefits of the guarantee set forth in Article 11 of the Credit Agreement and (c) confirms as of the date hereof that the Obligations under the Credit Agreement as expanded or amended hereby constitute "Guaranteed Obligations". Each Loan Party, by its execution of this Amendment, hereby confirms as of the date hereof that the Guaranteed Obligations shall remain in full force and effect. Each party hereto hereby confirms that Defaults and Events of Default exist under the Loan Documents as in effect prior to this Amendment and upon effectiveness of this Amendment such existing Defaults and Events of Default shall continue to exist for purposes of the Loan Documents executed in connection with the Postpetition B-2 Facility. Each party hereto further acknowledges that the 2.00% default rate contemplated by Section 2.07 of the Prepetition B-2 Term Loan Credit Agreement shall continue to accrue and be payable with respect to the Prepetition Term Loans in accordance with the Credit Agreement (as amended by this Amendment) and the DIP Order but that no Lender or Agent may take any action or exercise any other rights or remedies with respect to the Existing Defaults (as defined in the Credit Agreement as amended by this Amendment) and acknowledges that any representations, warranties or covenants made in the Credit Agreement as amended by this Amendment are being made without taking into account the Existing Defaults (as defined in the Credit Agreement as amended by this Amendment).

Section 6.        **No Novation or Mutual Departure**.  The Borrower expressly acknowledges and agrees that there has not been, and this Amendment does not constitute or establish, a novation with respect to the Credit Agreement or any other Loan Document, or a mutual departure from the strict terms, provisions, and conditions thereof, other than with respect to the amendments contained in <u>Section 1</u> hereof.

Section 7.        **Release**.  Each of the Loan Parties and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally, and irrevocably releases and forever discharges and acquits the Secured Parties and each of their respective Related Parties (solely in their capacities as such) (collectively, the "Released Parties"), from any and all liability to the Loan Parties (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Loan Documents, the New Money Postpetition Term Loans, the negotiation thereof, and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Amendment provided that the release set forth in this section shall not release (i) any claims against or liabilities of a Released Party that a court of competent jurisdiction determines by a final non-appealable order to have directly and primarily resulted from such Released Party's bad faith, fraud, gross negligence, or willful misconduct, or (ii) any Secured Party from honoring its/their obligations to the Loan Parties under the Loan Documents.

Section 8.        **Governing Law**.  This Amendment shall be construed in accordance with and governed by the law of the State of New York.

**Section 9.**    **Headings**.    Section headings in this Amendment are included herein for convenience of reference only and shall not constitute a part of this Amendment for any other purpose.

**Section 10.**    **Counterparts**.    This Amendment may be executed by one or more of the parties hereto on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.    Signatures delivered by facsimile or PDF shall have the same force and effect as manual signatures delivered in person.

[Signature Pages Follow]

**EXHIBIT A TO AMENDMENT NO. 3~~4~~**

**Amended and Restated Credit Agreement dated as of September 11, 2019 as Conformed Through:**
**Amendment No. 1 dated as of April 7, 2020**
**Amendment No. 2 dated as of July 7, 2020**
**Amendment No. 3 and Limited Waiver dated as of July 7, 2023**
**Amendment No. 4 dated as of September 6, 2023**

AMENDED AND RESTATED CREDIT AGREEMENT

dated as of

September 11, 2019

among

YELLOW CORPORATION
(formerly known as YRC Worldwide Inc.),

THE OTHER GUARANTORS PARTY HERETO FROM TIME TO TIME
THE LENDERS PARTY HERETO

and

ALTER DOMUS PRODUCTS CORP.,

as Administrative Agent and Collateral Agent

**TABLE OF CONTENTS**

P̲AGE

## *ARTICLE 1*
### *Definitions*

Section 1.01. Defined Terms ..................................................................... ~~1~~2

Section 1.02. Other Interpretive Provisions .................................. ~~53~~30

Section 1.03. Certifications ..................................................................... ~~54~~31

Section 1.04. Accounting Terms .......................................................... ~~54~~31

Section 1.05. Rounding ........................................................................... ~~55~~31

Section 1.06. References to Agreements, Laws, Etc .................... ~~55~~31

Section 1.07. Times of Day .................................................................... ~~55~~31

Section 1.08. Timing of Payment or Performance ........................ ~~55~~31

~~Section 1.09. Cumulative Credit Transactions~~ ............................... ~~55~~

~~Section 1.10. Pro Forma Calculations~~ ............................................... ~~55~~

Section ~~1.11.~~ 1.09 Certain Accounting Matters ........................... ~~57~~32

Section ~~1.12.~~ 1.10 Classification of Loans and Borrowings ...... ~~57~~32

Section ~~1.13.~~ 1.11 Currency Equivalents Generally .................... ~~57~~32

Section ~~1.14.~~ 1.12 Effect of Amendment and Restatement ...... ~~58~~32

Section 1.13    Québec Matters ....................................................... 33

## *ARTICLE 2*
### *The Credits*

Section 2.01. ~~Tranche B-2~~ Term Loan Commitments .................. ~~58~~33

Section 2.02. Loans .................................................................................. ~~58~~34

Section 2.03. Borrowing Procedure ................................................... ~~59~~35

Section 2.04. Evidence of Debt; Repayment of Loans .................. ~~60~~35

Section 2.05. Fees ..................................................................................... ~~61~~36

Section 2.06. Interest on Loans ........................................................... ~~61~~36

Section 2.07. Default Interest ............................................................. ~~62~~36

Section 2.08. ~~Alternate Rate of Interest~~ [Reserved] .................... ~~62~~37

Section 2.09. ~~Termination and Reduction of Commitments~~ [Reserved] ........... ~~63~~37

Section 2.10. ~~Conversion and Continuation of Borrowings~~ [Reserved] ......... ~~63~~37

Section 2.11. Repayment of New Money Postpetition Term ~~Borrowings~~Loans .... ~~64~~37

Section 2.12. Voluntary Prepayment ................................................. ~~65~~37

Section 2.13. ~~Mandatory Prepayments~~ [Reserved] ....................... ~~66~~37

Section 2.14. Pro Rata Treatment ...................................................... ~~69~~37

Section 2.15. Sharing of Setoffs .......................................................... ~~70~~37

Section 2.16. Payments ........................................................................... ~~70~~38

Section 2.17. ~~[Reserved]~~ Call Protection ........................................ ~~71~~38

Section 2.18. ~~Refinancing Amendments~~ Currency Indemnity ...... ~~71~~39

~~Section 2.19. Extensions of Term Loans~~ ........................................... ~~72~~

## *ARTICLE 3*
### *Taxes, Increased Costs Protection and Illegality*

Section 3.01. Taxes .................................................................................. ~~74~~40

Section 3.02. ~~Illegality~~ [Reserved] ..................................................... ~~78~~43

Section 3.03. Increased Cost and Reduced Return; Capital Adequacy; Reserves on SOFR Loans ............................................................................................. 7843

Section 3.04. [Reserved] ................................................................................................ 8044

Section 3.05. Matters Applicable to all Requests for Compensation ........................... 8044

Section 3.06. Replacement of Lenders under Certain Circumstances .......................... 8145

Section 3.07. Survival .................................................................................................... 8345

## ARTICLE 4
### Conditions Precedent to each Credit EXTENSIONSExtension

Section 4.01. All Credit Extensions .............................................................................. 8345

Section 4.02. First Credit Extension ............................................................................. 84

## ARTICLE 5
### Representations and Warranties

Section 5.01. Existence, Qualification and Power; Compliance with Laws .................. 8646

Section 5.02. Authorization; No Contravention ........................................................... 8746

Section 5.03. Governmental Authorization; Other Consents ....................................... 8747

Section 5.04. Binding Effect ......................................................................................... 8747

Section 5.05. Financial Statements; No Material Adverse Effect ................................ 8747

Section 5.06. Compliance With Laws ........................................................................... 8848

Section 5.07. Ownership of Property; Liens ................................................................. 8848

Section 5.08. Environmental Matters ........................................................................... 8948

Section 5.09. Taxes ....................................................................................................... 9049

Section 5.10. ERISA Compliance Litigation ............................................................... 9049

Section 5.11. Subsidiaries ............................................................................................. 9049

Section 5.12. Margin Regulations; Investment Company Act ..................................... 9049

Section 5.13. Disclosure ................................................................................................ 9150

Section 5.14. Labor Matters ERISA Compliance ........................................................ 9150

Section 5.15. Insurance .................................................................................................. 9150

Section 5.16. Solvency [Reserved] ............................................................................... 9250

Section 5.17. No Other Borrowed Money Indebtedness .............................................. 9250

Section 5.18. Collateral Documents ............................................................................. 9250

Section 5.19. Compliance with Anti-Terrorism and Corruption Laws ........................ 9451

Section 5.20. Real Property Permits .............................................................................. 51

Section 5.21. Secured, Super-Priority Obligations ....................................................... 51

Section 5.22. Prepetition UST Joint and Priority Collateral ........................................ 53

Section 5.23. No Canadian Pension Plans .................................................................... 53

## ARTICLE 6
### Affirmative Covenants

Section 6.01. Financial Statements, Reports, Etc ......................................................... 9553

Section 6.02. Certificates; Other Information .............................................................. 9654

Section 6.03. Notices .................................................................................................... 9856

Section 6.04. Payment of Taxes ................................................................................... 9957

Section 6.05. Preservation of Existence, Etc ............................................................... 9957

Section 6.06. Maintenance of Properties ...................................................................... 9957

Section 6.07. Maintenance of Insurance ...................................................................... 9957

Section 6.08. Compliance with Laws ........................................................................... 10159

Section 6.09.   Books and Records ........................................................................ ~~101~~59

Section 6.10.   Inspection Rights .......................................................................... ~~101~~59

Section 6.11.   Additional Collateral; Additional Guarantors ............................... ~~101~~59

Section 6.12.   Compliance with Environmental Laws ........................................... ~~103~~59

Section 6.13.   Further Assurances and Post-Closing Conditions ......................... ~~103~~60

Section 6.14.   ~~[Reserved]~~ *Lender Calls* ................................................................. ~~104~~60

~~Section 6.15. Maintenance of Ratings~~ .................................................................. ~~104~~

Section ~~6.16.~~ *6.15* Use of Proceeds *and Collateral* ............................................. ~~104~~61

~~Section 6.17. 2020 Financial Plan~~ ....................................................................... ~~104~~

Section 6.16    *Chapter 11 Cases and Canadian Recognition Proceedings.* ........................ 62

### ARTICLE 7
### Negative Covenants

Section 7.01.   Liens .......................................................................................... ~~104~~63

Section 7.02.   Investments ................................................................................ ~~108~~65

Section 7.03.   ~~Indebtedness~~ *[Reserved]* ............................................................. ~~112~~67

Section 7.04.   Fundamental Changes ................................................................ ~~115~~67

Section 7.05.   Dispositions ................................................................................ ~~117~~67

Section 7.06.   Restricted Payments ................................................................... ~~120~~68

Section 7.07.   ~~Change in Nature of Business;~~ Organization Documents ................ ~~121~~68

Section 7.08.   Transactions with Affiliates ........................................................ ~~122~~68

Section 7.09.   Burdensome Agreements ............................................................ ~~122~~68

~~Section 7.10. Financial Covenant~~ ....................................................................... ~~123~~

Section ~~7.11.~~ *7.10* [Reserved]~~.~~ ......................................................................... ~~123~~68

Section 7.11    *Budget Variance Covenants* .......................................................... 68

Section 7.12.   Fiscal Year ................................................................................. ~~123~~69

Section 7.13.   Prepayments, Etc. of Indebtedness ............................................. ~~124~~69

Section 7.14    *[Reserved]* ................................................................................. 70

Section 7.15    *Leases and Other Executory Contracts; Exclusivity Period.* ............. 70

Section 7.16    *DIP Proceeds Account; Use of Cash* ............................................. 70

Section 7.17    *No Canadian Pension Plans* .......................................................... 70

### ARTICLE 8
### Events of Default and Remedies

Section 8.01.   Events of Default ......................................................................... ~~125~~71

Section 8.02.   Remedies Upon Event of Default .................................................. ~~128~~76

Section 8.03.   ~~Exclusion of Immaterial Subsidiaries~~ *[Reserved]* .......................... ~~129~~77

Section 8.04.   Application of Funds .................................................................... ~~129~~77

### ARTICLE 9
### The Administrative Agent and the Collateral Agent

### ARTICLE 10
### Miscellaneous

Section 10.01.  Notices; Electronic Communications ............................................ ~~133~~80

Section 10.02.  Survival of Agreement ................................................................. ~~137~~83

Section 10.03.  Binding Effect ............................................................................ ~~137~~84

Section 10.04.  Successors and Assigns ............................................................. ~~137~~84

Section 10.05.  Expenses; Indemnity .................................................................. ~~142~~87

Section 10.06– Right of Setoff ........................................................................... ~~145~~90
Section 10.07– Applicable Law .......................................................................... ~~145~~90
Section 10.08– Waivers; Amendment ................................................................. ~~146~~90
Section 10.09– Interest Rate Limitation ............................................................. ~~148~~91
Section 10.10– Entire Agreement ....................................................................... ~~148~~91
Section 10.11– WAIVER OF JURY TRIAL ........................................................ ~~148~~91
Section 10.12– Severability ............................................................................... ~~149~~91
Section 10.13– Counterparts .............................................................................. ~~149~~92
Section 10.14– Headings .................................................................................... ~~149~~92
Section 10.15– Jurisdiction; Consent to Service of Process .............................. ~~149~~92
Section 10.16– Confidentiality ........................................................................... ~~150~~92
Section 10.17– ~~Lender Action~~ _[Reserved]_ ........................................................ ~~150~~93
Section 10.18– USA PATRIOT Act Notice ........................................................ ~~151~~93
Section 10.19– Collateral And Guaranty Matters .............................................. ~~151~~93
Section 10.20– Limitation on Liability ............................................................... ~~152~~94
Section 10.21– Payments Set Aside .................................................................... ~~152~~94
Section 10.22– No Advisory or Fiduciary Responsibility ................................... ~~152~~94
Section 10.23– ~~Intercreditor Agreements~~ _Release_ .............................................. ~~153~~95
_Section 10.24_  _Process Agent_ ........................................................................... 95
_Section 10.25_  _Waiver of Immunity_ .................................................................. 96
_Section 10.26_  _DIP Order, Prepetition ABL Intercreditor Agreement and Senior ICA_
_Provisions Control_ ........................................................................... 96
_Section 10.27_  _Québec Security_ ......................................................................... 96

### ARTICLE 11
#### Guarantee

Section 11.01– The Guarantee ............................................................................ ~~155~~97
Section 11.02– Obligations Unconditional .......................................................... ~~155~~97
Section 11.03– Certain Waivers, _Etc._ ................................................................. ~~156~~98
Section 11.04– Reinstatement ............................................................................. ~~156~~98
Section 11.05– Subrogation; Subordination ........................................................ ~~157~~98
Section 11.06– Remedies .................................................................................... ~~157~~98
Section 11.07– Instrument for the Payment of Money ....................................... ~~157~~99
Section 11.08– Continuing Guarantee ................................................................ ~~157~~99
Section 11.09– General Limitation on Guarantee Obligations ........................... ~~157~~99
Section 11.10– Release of Guarantors ................................................................ ~~157~~99
Section 11.11– Right of Contribution ................................................................. ~~158~~99
Section 11.12– Additional Guarantor Waivers and Agreements ......................... ~~158~~100

### ARTICLE 12
#### Reserved

### ARTICLE 13
#### Security and Administrative Priority

_Section 13.01_  _Obligations relating to Prepetition Loans_ ................................. 101
_Section 13.02_  _Acknowledgement of Security Interests_ .................................... 101
_Section 13.03_  _Binding Effect of Documents_ .................................................... 101
_Section 13.04_  _Collateral; Grant of Lien and Security Interest_ ......................... 101

*Section 13.05*  *Administrative Priority* ........................................................................................*103*
*Section 13.06*  *Grants, Rights and Remedies* ..............................................................................*103*
*Section 13.07*  *No Filings Required* .............................................................................................*103*
*Section 13.08*  *Survival* ...................................................................................................................*103*

APPENDICES
A        Initial Postpetition Commitments
B        Second Postpetition Commitments
C        Final Postpetition Commitments
D        Prepetition Term Loan Amount
E        Chapter 11 Milestones

SCHEDULES
1.01(a)  -   Excluded Real Property
1.01(b)      GuarantorsExcluded Subsidiaries
1.01(c)      Mortgaged PropertiesReal Property
1.01(d)      Pension Fund Entities
2.01         Lenders and Commitments
4.02(b)      Local Counsel Opinions
5.10(b)      Multiemployer PlansLitigation
5.11         Subsidiaries and Other Equity InterestsCapitalization
5.22         Prepetition UST Priority and Joint Collateral
5.14         Labor Matters
6.13(a)      Post Closing Schedule
7.01(b)      Existing Liens
7.02(e)      Existing Investments
7.03(b)      Existing Indebtedness
7.05(a)      Amendment No. 3 Real Properties Under Contract
7.05(b)      Amendment No. 3 Additional Real Properties
7.08         Transactions with Affiliates
7.09         Certain Contractual Obligations


EXHIBITS

Exhibit A       Form of Administrative Questionnaire
Exhibit B       Form of Assignment and Acceptance
Exhibit C       Form of Request for Credit Extension
Exhibit D       [Reserved]Interim Order
Exhibit E       Form of Intercompany Note
Exhibit F       Form of Compliance Certificate
Exhibit G-1     Form of United States Tax Compliance Certificate
                (For Non-U.S. Lenders that are not Partnerships)
Exhibit G-2     Form of United States Tax Compliance Certificate
                (For Non-U.S. Lenders that are Partnerships)
Exhibit G-3     Form of United States Tax Compliance Certificate
                (For Non-U.S. Participants that are not Partnerships)
Exhibit G-4     Form of United States Tax Compliance Certificate
                (For Non-U.S. Participants that are Partnerships)
Exhibit H       Form of Solvency CertificateUST Adequate Protection Order
Exhibit I       [Reserved]
Exhibit J       Form of Term Note
Exhibit K       Auction Procedures

*[Link-to-previous setting changed from on in original to off in modified.].*

4873-9780-1580

i

AMENDED AND RESTATED CREDIT AGREEMENT, dated as of September 11, 2019 (as amended by Amendment No. 1, Amendment No. 2 ~~and~~, Amendment No. 3~~,~~ and Amendment No. 4) (this "**Agreement**"), among YELLOW CORPORATION (formerly known as YRC Worldwide Inc.), a Delaware corporation (the "**Borrower**"), the Guarantors party hereto from time to time, the Lenders (such term and each other capitalized term used but not defined in this introductory statement having the meaning given it in Article 1), and ALTER DOMUS PRODUCTS CORP. (formerly known as CORTLAND PRODUCTS CORP.), as administrative agent (in such capacity, including any permitted successor or assign thereto, the "**Administrative Agent**") and as collateral agent (in such capacity, including any permitted successor or assign thereto, the "**Collateral Agent**") for the Lenders.

WHEREAS, the Borrower, the financial institutions party thereto and Credit Suisse AG, Cayman Islands Branch, as predecessor Administrative Agent and predecessor Collateral Agent, ~~are~~were parties to a Credit Agreement dated as of February 13, 2014 (as ~~amendment~~ amended, supplemented and modified and in effect on ~~the Restatement Effective Date, the "Existing~~September 11, 2019, the "**Original** Credit Agreement**").

WHEREAS, as of September 11, 2019, the Original Credit Agreement was amended and restated pursuant to an Amended and Restated Credit Agreement dated as of September 11, 2019 (as subsequently amended by Amendment No. 1, Amendment No. 2 and Amendment No. 3 and as in effect prior to the effectiveness of the DIP Term Sheet (as defined below), the "**Prepetition B-2 Term Loan Credit Agreement**").

WHEREAS, on August 6, 2023 (the "**Petition Date**"), the Borrower and certain of its Subsidiaries (together with the Borrower, collectively, the "**Debtors**") commenced voluntary cases under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), and the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code in order to effect a wind down of their businesses and sale of their properties to repay existing Indebtedness (including the Obligations hereunder and the Junior DIP Obligations) with the net proceeds thereof.

WHEREAS, the Borrower, in its capacity as "foreign representative" on behalf of the Debtors, commenced proceedings before the Ontario Superior Court of Justice (Commercial List) in Toronto, Ontario, Canada (the "**Canadian Court**") under Part IV of the Companies' Creditors Arrangement Act (Canada), R.S.C. 1985, c. C-36, as amended (the "**CCAA**") bearing Court File No. CV-23-00704038-00CL, recognizing the Chapter 11 Cases as "foreign main proceedings" in respect of the Canadian Debtors (as defined herein) (the "**Canadian Recognition Proceedings**") and granting certain customary related relief.

WHEREAS, ~~(i)~~the Borrower has requested ~~that the Tranche B-2 Term Lenders (as defined below) make, and the Tranche B-2 Term~~and the Lenders have agreed to ~~make subject to the conditions set forth herein, the Tranche B-2 Term Loans the proceeds of which shall be used to refinance the Term Loans outstanding under the Existing Credit Agreement in full (the "Refinancing Transaction"), for working capital and other corporate purposes and (ii) in connection with the Refinancing Transaction, the Borrower and the other Loan Parties and the Tranche B-2 Term Lenders, have agreed to amend and restate the Existing Credit Agreement in its entirety pursuant to this Agreement (the "Restatement").~~provide a senior secured super-priority debtor-in-possession term loan facility to the Borrower (the "**Postpetition B-2 Facility**") consisting of New Money Postpetition Term Loans in an aggregate committed amount of $100,000,000.

WHEREAS, on August 21, 2023, the Lenders advanced the Initial Postpetition Loan as the first installment of the New Money Postpetition Loans to the Borrower pursuant to the terms of that certain

Debtor-In-Possession Credit Facility Term Sheet (as amended, restated, amended and restated, supplemented or otherwise modified, the "**DIP Term Sheet**"), by and among the Loan Parties, the Lenders, the Junior DIP Lenders, the Administrative Agent, the Junior DIP Agent and the Stalking Horse Purchaser (as defined therein), and the Interim Order (as defined herein). This Agreement restates and replaces the DIP Term Sheet insofar as the DIP Term Sheet relates to the Postpetition B-2 Facility.

WHEREAS, the Guarantors have agreed to guarantee the obligations of the Borrower hereunder and the Borrower and the Guarantors have agreed to secure their respective Obligations by granting to the Collateral Agent, for the benefit of Secured Parties, a lien on substantially all of their respective assets, in accordance with the priorities provided in the DIP Order.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the parties hereto agree that the ~~Existing~~Prepetition B-2 Term Loan Credit Agreement shall be amended and restated in its entirety to read as follows:

# ARTICLE 1
Definitions

Section 1.01 ~~Section 1.01.~~ *Defined Terms*. As used in this Agreement, the following terms shall have the meanings specified below:

~~"**ABL Agent**" shall mean, as the context may require, Citizens Business Capital (a division of Citizens Asset Finance, Inc., a subsidiary of Citizens, N.A.), in its capacity as administrative agent under the ABL Facility Documentation, Citizens Business Capital (a division of Citizens Asset Finance, Inc., a subsidiary of Citizens, N.A.), in its capacity as collateral agent under the ABL Facility Documentation, such agents collectively or any permitted successor or assignee administrative agent or collateral agent under the ABL Facility Documentation.~~

~~"**ABL Credit Agreement**" shall mean that certain asset-based revolving credit agreement dated as of the Original Closing Date, among the Borrower, YRC Inc., a Delaware corporation, USF Reddaway Inc., an Oregon corporation, USF Holland LLC, a Delaware limited liability company (as successor to USF Holland, Inc., a Michigan corporation) and New Penn Motor Express, LLC, a Delaware limited liability company (as successor to New Penn Motor Express, Inc., a Pennsylvania corporation), the other subsidiaries of the Borrower party thereto, the lenders party thereto and the ABL Agent, as amended by that certain Amendment No. 1, dated September 23, 2015, Amendment No. 2, dated June 28, 2016, Amendment No. 3 and Limited Consent, dated January 30, 2018, Amendment No. 4, dated February 12, 2019, Amendment No. 5, dated September 11, 2019, Amendment No. 6, dated July 7, 2020 and Amendment No. 7, dated October 31, 2022, and as the same may be further amended, restated, modified, supplemented, extended, renewed, restructured, refunded, replaced or refinanced from time to time in one or more agreements (in each case with the same or new lenders, institutional investors or agents and resulting in a financing that constitutes (or that would constitute if incurred as a new financing) a Permitted Refinancing of the ABL Facility Indebtedness), including any agreement extending the maturity thereof or otherwise restructuring all or any portion of the Indebtedness thereunder or increasing the amount loaned or issued thereunder or altering the maturity thereof), in each case as and to the extent permitted by this Agreement and, if applicable, the ABL Intercreditor Agreement; *provided* that any such amendment, restatement, modification supplement, extension, renewal, restructuring, refunding, replacement or refinancing shall be permitted hereunder only if all commitments thereunder are provided by lenders who are third party commercial banks or other financial institutions that customarily provide asset-based lending credit facilities and other financial institutions consented to by the Administrative Agent (such consent not to be unreasonably withheld or delayed).~~

"ABL Facility" shall mean the asset-based revolving credit facility made available to the Borrower and certain of its Subsidiaries pursuant to the ABL Credit Agreement.

"ABL Facility Documentation" shall mean the ABL Credit Agreement and all security agreements, guarantees, pledge agreements and other agreements or instruments executed in connection therewith and including all "Loan Documents" (as defined in the ABL Credit Agreement) or similar term.

"ABL Facility Indebtedness" shall mean Indebtedness of the Borrower or any Restricted Subsidiary outstanding under the ABL Facility Documentation, including Bank Product Debt (as defined in the ABL Credit Agreement).

"ABL Intercreditor Agreement" shall mean the Amended and Restated Intercreditor Agreement dated as of July 7, 2020, among the Administrative Agent and/or Collateral Agent, the ABL Agent, the UST Tranche A Agent, the UST Tranche B Agent and the Loan Parties, and as the same may be further amended, restated, modified, supplemented, extended, renewed, restructured, waived or replaced from time to time.

"ABL Priority Collateral" shall have the meaning assigned to such term in the ABL Intercreditor Agreement.

"ABL Secured Parties" shall have the meaning assigned to such term in the ABL Intercreditor Agreement.

"ABR", when used in reference to any Loan or Borrowing, refers to whether such Loan, or the Loans comprising such Borrowing, are bearing interest at a rate determined by reference to the Alternate Base Rate.

"Acceptable Plan" shall mean a Plan of Reorganization that, upon the consummation thereof, provides for the termination of all unused Commitments and the indefeasible payment in full of all Obligations and all Junior DIP Obligations in cash.

"Additional Lender" shall mean, with respect to any Refinancing Amendment or in respect of any bank, financial institution or investor not theretofor a Lender that agrees to provide an Other Term Loan pursuant thereto, *provided* that the Administrative Agent shall have consented (not to be unreasonably withheld, conditioned or delayed) to such bank, financial institution or investor as would be required under Section 10.04(b) for an assignment of Loans to such bank, financial institution or investor.

"Adjusted Term SOFR" shall mean, for purposes of any calculation, an interest rate per annum equal to (a) Term SOFR plus (b) (i) in the case of an Interest Period of one month's duration, 0.11448% (11.448 basis points), (ii) in the case of an Interest Period of three months' duration, 0.26161% (26.161 basis points), and (iii) in the case of an Interest Period of six months' duration, 0.42826% (42.826 basis points); *provided* that, if Adjusted Term SOFR determined as provided above shall ever be less than the Floor, then Adjusted Term SOFR shall be deemed to be the Floor.

"Administrative Agent" shall have the meaning assigned to such term in the introductory statement to this Agreement, together with its successors and any replacement designated pursuant to Article 9 of this Agreement.

~~"**Administrative Agent Fee Letter**" means that certain fee letter dated as of the date hereof, by and between Borrower and Administrative Agent, as amended, amended and restated, supplemented, waived, replaced or otherwise modified from time to time.~~

"**Administrative Agent's Office**" means the Administrative Agent's office or account as it may from time to time designate, in writing, to the Borrower and each Lender.

"**Administrative Questionnaire**" shall mean an Administrative Questionnaire in the form of Exhibit A, or such other form as may be supplied from time to time by the Administrative Agent ~~and approved by the Borrower (such approval not to be unreasonably withheld, conditioned or delayed)~~.

"**Affiliate**" shall mean, with respect to any Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified; provided, that, with respect to the Borrower and its Subsidiaries, in no case shall any Governmental Authority constitute an "Affiliate".   "**Control**" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.   "**Controlling**" and "**Controlled**" have meanings correlative thereto.

"**Agency Fee Letter**" means that certain fee letter dated as of August 21, 2023, by and between Borrower and Agents, as amended, amended and restated, supplemented, waived, replaced or otherwise modified from time to time.

"**Agent Indemnitees**" shall have the meaning assigned to such term in Section 10.05(b).

"**Agents**" shall have the meaning assigned to such term in Article 9.

"**Agreement**" shall have the meaning assigned to such term in the introductory statement to this Agreement.

"**Alternate Base Rate**" shall mean, for any day, a rate per annum equal to the greatest of (a) the Prime Rate in effect on such day, and (b) the Federal Funds Effective Rate in effect on such day plus 1/2 of 1% ~~and (c) the Adjusted Term SOFR Rate for a one month Interest Period on such day (or if such day is not a Business Day, the immediately preceding Business Day) plus 1.00~~%; provided that in no event shall the Alternate Base Rate be less than 2.00% per annum. If the Administrative Agent shall have determined (which determination shall be conclusive absent manifest error) that it is unable to ascertain the Federal Funds Effective Rate for any reason, including the inability or failure of the Administrative Agent to obtain sufficient quotations in accordance with the terms of the definition thereof, the Alternate Base Rate shall be determined without regard to clause (b) of the preceding sentence until the circumstances giving rise to such inability no longer exist.  Any change in the Alternate Base Rate due to a change in the Prime Rate, or the Federal Funds Effective Rate ~~or the Adjusted Term SOFR Rate~~ shall be effective on the effective date of such change in the Prime Rate, or the Federal Funds Effective Rate ~~or the Adjusted Term SOFR Rate~~, as the case may be.

~~"**Alternate Base Rate Term SOFR Determination Day**" has the meaning specified in the definition of "Term SOFR".~~

"**Amendment No. 1**" means that certain Amendment No. 1 to Amended and Restated Credit Agreement, dated as of the Amendment No. 1 Effective Date, by and among the Borrower, the "Guarantors" referred to on the signature pages thereto, the Administrative Agent and the Lenders party thereto.

"**Amendment No. 1 Effective Date**" means the date on which the conditions set forth in Section 2 of the Amendment No. 1 were satisfied, which date was April 7, 2020.

"**Amendment No. 2**" means that certain Amendment No. 2 to Amended and Restated Credit Agreement, dated as of the Amendment No. 2 Effective Date, by and among the Borrower, the "Guarantors" referred to on the signature pages thereto, the Administrative Agent and the Lenders party thereto.

"**Amendment No. 2 Effective Date**" means the date on which the conditions set forth in Section 2 of the Amendment No. 2 were satisfied, which date was July 7, 2020.

~~"**Amendment No. 2 Transactions**" shall mean, collectively, (a) the negotiation, execution and delivery by the Loan Parties of Amendment No. 2 and the Loan Documents delivered in connection therewith, (b) the negotiation, execution and delivery of the UST Tranche A Facility Documentation and incurrence of UST Tranche A Facility Indebtedness, (c) the negotiation, execution and delivery of the UST Tranche B Facility Documentation and incurrence of UST Tranche B Facility Indebtedness, (d) the negotiation, execution and delivery by the Borrower and the Subsidiaries party thereto of amendments to the ABL Facility Documentation in connection with~~ the matters described in clauses (a) through (c) and effecting certain other amendments in connection therewith, (e) the Treasury Equity Issuance and the negotiation, execution and delivery of the Treasury Equity Documents and (f) the payment of fees, costs and expenses in connection with the foregoing.

"**Amendment No. 3**" shall mean that certain Amendment No. 3 and Limited Waiver to Amended and Restated Credit Agreement, dated as of the Amendment No. 3 ~~Closing~~Effective Date, by and among the Borrower, the "Guarantors" referred to on the signature pages thereto, the Administrative Agent and the Lenders party thereto.

"**Amendment No. 3 ~~Closing~~Effective Date**" shall mean the date on which the conditions set forth in Section 3 of the Amendment No. 3 were satisfied, which date was July 7, 2023.

"**Amendment No. 4**" means that certain Amendment No. 4 to Amended and Restated Credit Agreement, dated as of the Amendment No. 4 Effective Date, by and among the Borrower, the "Guarantors" referred to on the signature pages thereto, the Administrative Agent and the Lenders party thereto.

"**Amendment No. ~~3~~4 Effective Date**" shall mean ~~June 30~~the date on which the conditions set forth in Section 2 of Amendment No. 4 were satisfied, which date was September 6, 2023.

~~"**Apollo**" means, collectively, Apollo Capital Management, L.P. and one or more funds and/or accounts managed by its affiliates.~~

~~"**Applicable ECF Percentage**" shall mean, for any Excess Cash Flow Period, (a) 75% if the Total Leverage Ratio as of the last day of such Excess Cash Flow Period is greater than 3.25:1.00, (b) 50% if the Total Leverage Ratio as of the last day of such Excess Cash Flow Period is less than or equal to 3.25:1.00 and greater than 3.00:1.00, (c) 25% if the Total Leverage Ratio as of the last day of such Excess Cash Flow Period is less than or equal to 3.00:1.00 but is greater than 2.50:1.00, and (d) 0% if the Total Leverage Ratio as of the last day of such Excess Cash Flow Period is less than or equal to 2.50:1.00.~~

"**Applicable Margin**" shall mean, (a) with respect to any New Money Postpetition Term Loan, a percentage per annum equal to, ~~(a) until delivery of financial statements and Compliance Certificate for the fiscal quarter ending September 30, 2019 pursuant to Sections 6.01(b) and 6.02(a), (i) 7.50% per annum for SOFR Term Loans and (ii) 6.50% per annum for ABR Term Loans; and (b) thereafter, the~~

~~percentages per annum set forth in the table below, based upon Consolidated EBITDA for the most recent Test Period as set forth in the most recent Compliance Certificate received by the Administrative Agent pursuant to Section 6.02(a).~~ 8.50%, and (b) with respect to any Prepetition Term Loan, a percentage per annum equal to 6.50% plus the 2.00% default rate contemplated by Section 2.07 of the Prepetition B-2 Term Loan Credit Agreement.

| ~~Pricing Level~~ | ~~Consolidated EBITDA~~ | ~~ABR Term Loans~~ | ~~SOFR Term Loans~~ |
|---|---|---|---|
| ~~I~~ | ~~≤ $400,000,000~~ | ~~6.50%~~ | ~~7.50%~~ |
| ~~II~~ | ~~> $400,000,000~~ | ~~5.50%~~ | ~~6.50%~~ |

~~Any increase or decrease in the Applicable Margin resulting from a change in Consolidated EBITDA shall become effective as of the first Business Day immediately following the date a Compliance Certificate is delivered pursuant to Section 6.02(a).~~

~~In addition, at any time an Event of Default exists as a result of the Borrower failing to deliver the applicable Compliance Certificate, at the option of the Lenders having more than 50% of the sum of the outstanding Term Loans, Consolidated EBITDA shall be deemed to be in Pricing Level I solely for the purposes of determining the Applicable Margin (but only for so long as such failure continues, after which such ratio and the Pricing Level shall be determined based on Consolidated EBITDA as set forth in the most recently delivered Compliance Certificate).~~

~~In the event that any financial statement or compliance certificate delivered pursuant to Sections 6.01 or 6.02 is inaccurate (and this Agreement remains in effect when such inaccuracy is discovered), and such inaccuracy, if corrected, would have led to the application of a higher Applicable Margin for any period (an "**Applicable Period**") than the Applicable Margin applied for such Applicable Period, then (i) the Borrower shall promptly upon obtaining knowledge of such inaccuracy deliver to the Administrative Agent a corrected financial statement and a corrected compliance certificate for such Applicable Period, (ii) the Applicable Margin shall be determined based on the corrected financial statement and corrected compliance certificate for such Applicable Period and (iii) the Borrower shall promptly pay to the Administrative Agent (for the account of the Lenders during the Applicable Period or their successors and assigns) the accrued additional interest owing as a result of such increased Applicable Margin for such Applicable Period. This paragraph shall not limit the rights of the Administrative Agent or the Lenders with respect to Section 2.07 hereof. No Default or Event of Default shall arise or exist as a result of the initial non payment of such amounts so long as the Borrower complies with this paragraph.~~

"**Approved Budget**" has the meaning assigned to such term in Section 6.02(l).

"**Assignment and Acceptance**" shall mean an assignment and acceptance entered into by a Lender and an Eligible Assignee, and accepted by the Administrative Agent, in the form of Exhibit B or such other form as shall be approved by the Administrative Agent ~~and the Borrower (such approval of the Borrower shall not be unreasonably withheld, conditioned or delayed)~~.

"**Attorney Costs**" shall mean and shall include all reasonable and documented out-of-pocket fees, expenses and disbursements of any law firm or other external legal counsel.

"**Attributable Indebtedness**" shall mean, on any date, in respect of any Capitalized Lease of any Person, the capitalized amount thereof that would appear on a balance sheet of such Person prepared as of such date in accordance with GAAP.

"**Auction Procedures**" shall mean the auction procedures with respect to non-pro rata assignments of Term Loans pursuant to Section 10.04(k) set forth in Exhibit K hereto.

"**Audited Financial Statements**" shall mean the audited consolidated balance sheets of the Borrower and its consolidated subsidiaries for the fiscal years ending December 31, ~~2018~~2021 and December 31, ~~2017~~2022 and the related consolidated statements of operations, changes in shareholders' equity and cash flows of the Borrower and its consolidated subsidiaries.

"**Benchmark**" shall mean, initially, the Term SOFR Reference Rate; provided, that if a Benchmark Transition Event has occurred with respect to the Term SOFR Reference Rate or the then-current Benchmark, then "Benchmark" shall mean the applicable Benchmark Replacement to the extent that such Benchmark Replacement has replaced such prior benchmark rate pursuant to Section 2.08.

"**B-2 Priority Collateral**" shall have the meaning assigned to the term "Non-UST Tranche B Term Priority Collateral" in the Prepetition ABL Intercreditor Agreement.

"**Bankruptcy Code**" means Title 11 of the United States Code entitled "Bankruptcy," as applicable to the Chapter 11 Cases (unless the context requires otherwise), now and hereafter in effect or any successors to such statute.

"**Bankruptcy Court**" shall have the meaning assigned to such term in the recitals to this Agreement.

"**Benchmark Replacement**" shall mean the first alternative set forth in the order below that can be determined by the Administrative Agent for the applicable Benchmark Replacement Date,

"**Bidding Procedures Order**" means a final order approving procedures for one or more sales of all or substantially all of the Debtors' assets and permitting the Lenders (or the Agents on behalf of the Lenders) to credit bid the full amount of the Obligations (including, for the avoidance of doubt, the Obligations in respect of the Prepetition Term Loans) in form and substance in all material respects satisfactory to the Junior DIP Lenders.

(a) the sum of (i) Daily Simple SOFR plus (ii) 0.11448% (11.448 basis points);

(b) the sum of: (i) the alternate benchmark rate that has been selected by the Administrative Agent and the Borrower giving due consideration to (A) any selection or recommendation of a replacement benchmark rate or the mechanism for determining such a rate by the Relevant Governmental Body and (B) any evolving or then-prevailing market convention for determining a benchmark rate as a replacement to the then-current Benchmark for Dollar-denominated syndicated credit facilities and (ii) the related Benchmark Replacement Adjustment.

If the Benchmark Replacement as determined pursuant to clause (a) or (b) above would be less than the Floor, the Benchmark Replacement will be deemed to be the Floor.

"**Benchmark Replacement Adjustment**" shall mean, with respect to any replacement of the then-current Benchmark with an Unadjusted Benchmark Replacement, the spread adjustment, or method for calculating or determining such spread adjustment, (which may be a positive or negative value or zero) that has been selected by the Administrative Agent and the Borrower giving due consideration to (a) any selection or recommendation of a spread adjustment, or method for calculating or determining such spread adjustment, for the replacement of such Benchmark with the applicable Unadjusted Benchmark Replacement by the Relevant Governmental Body or (b) any evolving or then-prevailing market convention for determining a spread adjustment, or method for calculating or determining such

spread adjustment, for the replacement of such Benchmark with the applicable Unadjusted Benchmark Replacement for Dollar-denominated syndicated credit facilities at such time.

"**Benchmark Replacement Date**" shall mean the earlier to occur of the following events with respect to the then-current Benchmark:

(a)    in the case of clause (a) or (b) of the definition of "Benchmark Transition Event," the later of (a) the date of the public statement or publication of information referenced therein and (b) the date on which the administrator of such Benchmark (or the published component used in the calculation thereof) permanently or indefinitely ceases to provide all Available Tenors of such Benchmark (or such component thereof); or

(b)    in the case of clause (c) of the definition of "Benchmark Transition Event," the first date on which such Benchmark (or the published component used in the calculation thereof) has been determined and announced by or on behalf of the administrator of such Benchmark (or such component thereof) or the regulatory supervisor for the administrator of such Benchmark (or such component thereof) to be non-representative or non-compliant with or non-aligned with the International Organization of Securities Commissions (IOSCO) Principles for Financial Benchmarks; provided, that such non-representativeness, non-compliance or non-alignment will be determined by reference to the most recent statement or publication referenced in such clause (c) and even if any Available Tenor of such Benchmark (or such component thereof) continues to be provided on such date.

For the avoidance of doubt, the "Benchmark Replacement Date" will be deemed to have occurred in the case of clause (a) or (b) with respect to any Benchmark upon the occurrence of the applicable event or events set forth therein with respect to all then-current Available Tenors of such Benchmark (or the published component used in the calculation thereof).

"**Benchmark Transition Event**" shall mean the occurrence of one or more of the following events with respect to the then-current Benchmark:

(a)    a public statement or publication of information by or on behalf of the administrator of such Benchmark (or the published component used in the calculation thereof) announcing that such administrator has ceased or will cease to provide all Available Tenors of such Benchmark (or such component thereof), permanently or indefinitely, provided that, at the time of such statement or publication, there is no successor administrator that will continue to provide any Available Tenor of such Benchmark (or such component thereof);

(b)    a public statement or publication of information by the regulatory supervisor for the administrator of such Benchmark (or the published component used in the calculation thereof), the relevant Governmental Authority, an insolvency official with jurisdiction over the administrator for such Benchmark (or such component), a resolution authority with jurisdiction over the administrator for such Benchmark (or such component) or a court or an entity with similar insolvency or resolution authority over the administrator for such Benchmark (or such component), which states that the administrator of such Benchmark (or such component) has ceased or will cease to provide all Available Tenors of such Benchmark (or such component thereof) permanently or indefinitely, provided that, at the time of such statement or publication, there is no successor administrator that will continue to provide any Available Tenor of such Benchmark (or such component thereof); or

(c)    a public statement or publication of information by or on behalf of the administrator of such Benchmark (or the published component used in the calculation thereof) or the regulatory supervisor for the administrator of such Benchmark (or such component thereof) announcing that all Available Tenors of such Benchmark (or such component thereof) are not, or as of a specified future date

~~will not be, representative or in compliance with or aligned with the International Organization of Securities Commissions (IOSCO) Principles for Financial Benchmarks.~~

~~For the avoidance of doubt, a "Benchmark Transition Event" will be deemed to have occurred with respect to any Benchmark if a public statement or publication of information set forth above has occurred with respect to each then-current Available Tenor of such Benchmark (or the published component used in the calculation thereof).~~

~~"**Benchmark Unavailability Period**" shall mean the period (if any) (x) beginning at the time that such Benchmark Replacement Date has occurred if, at such time, no Benchmark Replacement has replaced the then-current Benchmark for all purposes hereunder and under any Loan Document in accordance with the Section 2.08 and (y) ending at the time that a Benchmark Replacement has replaced the then-current Benchmark for all purposes hereunder and under any Loan Document pursuant to the Section 2.08.~~

"**Blocked Person**" shall mean any Person that is publicly identified on the most current list of "Specially Designated Nationals and Blocked Persons" published by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("**OFAC**").

"**Board**" shall mean the Board of Governors of the Federal Reserve System of the United States of America.

~~"**Board Meeting**" as defined in Section 6.18.~~

~~"**Board Observer**" as defined in Section 6.18.~~

"**Borrower**" shall have the meaning assigned to such term in the introductory statement to this Agreement.

"**Borrower Materials**" shall have the meaning assigned to such term in <u>Section 10.01</u>.

"**Borrowing**" shall mean Loans of the same Class ~~and Type~~ made~~, converted or continued~~ on the same date ~~and, in the case of SOFR Loans, as to which a single Interest Period is in effect~~.

"**Budget Variance Report**" shall mean a weekly variance report prepared by management of the Borrower (~~and after the Operational Advisor Appointment Date,~~ in consultation with the Borrower's Operational Advisor), in form and detail reasonably satisfactory to the ~~Required~~<u>Lenders and the Junior DIP</u> Lenders, comparing for each applicable Budget Variance Test Period the actual ~~results~~<u>receipts and disbursements</u> against anticipated ~~results~~<u>receipts and disbursements</u> under the applicable Approved Budget, on a ~~line by line~~<u>line by line</u> and aggregate basis and in the same level of detail set forth in the Approved Budget~~(s)~~, together with a written explanation for all material variances in any given Budget Variance Test Period and such other related information as the ~~Required~~ Lenders may reasonably request.

"**Budget Variance Test Date**" shall mean ~~the Wednesday of each calendar week~~<u>each of (a) Friday August 25, 2023, (b) Friday September 1, 2023, (c) Wednesday September 6, 2023 and (d) each Wednesday thereafter</u>.

"**Budget Variance Test Period**" ~~shall mean~~<u>means</u>, as of any date of determination ~~under this Agreement, the most recent period as of such date of seven (7) consecutive days ending on a Friday for which a, (a) with respect to the first~~ Budget Variance Report ~~has been~~ delivered ~~(or was required to have been delivered)~~<u>after the Postpetition B-2 Facility Closing Date</u> pursuant to <u>Section 6.02(n)(i)</u>. ~~and the~~

first Budget Variance Test Date occurring on Friday August 25, 2023, the period starting on the Petition Date and ending on August 18, 2023, (b) with respect to the second Budget Variance Report delivered after the Postpetition B-2 Facility Closing Date pursuant to Section 6.02(n)(i) and the Budget Variance Test Date occurring on Friday September 1, 2023, the period starting on the Petition Date and ending on August 25, 2023, (c) with respect to the third Budget Variance Report delivered after the Postpetition B-2 Facility Closing Date pursuant to Section 6.02(n)(i) and the Budget Variance Test Date occurring on Wednesday September 6, 2023, the period starting on the Petition Date and ending on September 1, 2023 and (d) with respect to each Budget Variance Report delivered pursuant to Section 6.02(n)(i) thereafter and each the Budget Variance Test Date occurring thereafter, the four-week period ending on the Friday of the week immediately preceding the applicable Budget Variance Test Date.

"**Business Day**" shall mean any day other than a Saturday, Sunday or day on which banks in New York City are authorized or required by law to close; ~~provided, however~~, that when used in connection with a SOFR Loan, the term "**Business Day**" shall also exclude any day that is not a U.S. Government Securities Business Day.

"**Call Date**" shall have the meaning assigned to such term in Section 2.17.

"**Canadian Administration Charge**" shall mean a super priority charge granted by the Canadian Court over the Canadian Collateral to secure payment of the professional fees and disbursements of the Debtors' Canadian counsel, the Information Officer and counsel to the Information Officer (in a maximum amount not to exceed CDN$700,000).

"**Canadian AML Legislation**" shall mean the Proceeds of Crime (Money Laundering) and Terrorist Financing Act (Canada) and other applicable anti-money laundering, anti-terrorist financing, government sanction and "know your client" laws within Canada (including any guidelines or orders thereunder).

"**Canadian Collateral**" shall mean the Collateral of the Canadian Debtors.

"**Canadian Court**" shall have the meaning assigned to such term in the recitals hereto.

"**Canadian D&O Charge**" shall mean a charge granted by the Canadian Court on the Canadian Collateral (in a maximum amount not to exceed CDN$3,500,000), securing an indemnity by the Canadian Debtors in favor of their directors and officers against any obligations or liabilities that they may incur as directors and officers of the Canadian Debtors on or after the commencement of the Canadian Recognition Proceedings, as provided for in the Canadian Supplemental Order.

"**Canadian Debtors**" shall mean YRC Freight Canada Company, YRC Logistics Inc., USF Holland International Sales Corporation and 1105481 Ontario Inc.

"**Canadian Defined Benefit Pension Plan**" shall mean each pension plan or arrangement required to be registered under Canadian federal or provincial pension standards legislation and which contains a "defined benefit provision" as defined in subsection 147.1(1) of the Income Tax Act (Canada).

"**Canadian DIP Charge**" shall mean the super priority charge granted by the Canadian Court pursuant to the Canadian DIP Recognition Order in favor of the DIP Secured Parties (as defined in the DIP Order) on the Canadian Collateral, other than the Prepetition UST Tranche B Priority Collateral.

"**Canadian DIP Recognition Order**" shall mean the Canadian Interim DIP Recognition Order, unless the Canadian Final DIP Recognition Order shall have been issued by the Canadian Court, in which case it shall mean the Canadian Final DIP Recognition Order and the Canadian Interim DIP Recognition Order.

"**Canadian Dollar**" and "**CDN$**" means lawful money of Canada.

"**Canadian Final DIP Recognition Order**" shall mean an order of the Canadian Court in the Canadian Recognition Proceedings, which order shall, among other things, recognize the Final Order and shall be in form and substance satisfactory to the Lenders and the Junior DIP Lenders, and as the same may be amended, supplemented, or modified from time to time after entry thereof with the consent of the Lenders and the Junior DIP Lenders.

"**Canadian Initial Recognition Order**" shall mean the Initial Recognition Order of the Canadian Court granted on August 29, 2023, which, among other things, recognized the Chapter 11 Cases as "foreign main proceedings" under Part IV of the CCAA, and granted a stay of proceedings in respect of the Canadian Debtors and the Borrower in Canada, as the same may be amended, supplemented, or modified from time to time after entry thereof with the consent of the Lenders and the Junior DIP Lenders.

"**Canadian Interim DIP Recognition Order**" shall mean the Supplemental Order of the Canadian Court granted on August 29, 2023 in the Canadian Recognition Proceedings, which, among other things, recognized the Interim Order and granted the Canadian DIP Charge subject to the Canadian Priority Charges, as the same may be amended, supplemented, or modified from time to time after entry thereof with the consent of the Lenders and the Junior DIP Lenders.

"**Canadian Orders**" means, as applicable and as the context may require, the Canadian Initial Recognition Order, the Canadian DIP Recognition Order and/or the Canadian Supplemental Order, or such other orders as may be granted by the Canadian Court in the Canadian Recognition Proceedings in form and substance satisfactory to the Lenders, whichever is then applicable or collectively.

"**Canadian Priority Charges**" shall mean the Canadian Administration Charge and the Canadian D&O Charge.

"**Canadian Recognition Proceedings**" shall have the meaning assigned to such term in the recitals hereto.

"**Canadian Subsidiary**" shall mean any Subsidiary that is incorporated, amalgamated, continued or otherwise organized or formed under the Laws of Canada or any ~~state or~~ province or territory thereof.

"**Canadian Supplemental Order**" shall mean the Supplemental Order of the Canadian Court granted on August 29, 2023 in the Canadian Recognition Proceedings, which order, among other things, granted the CCAA Charges and recognized the Interim Order and granted such additional relief as is customary in the proceedings under Part IV of the CCAA, as the same may be amended, supplemented, or modified from time to time after entry thereof with the consent of the Lenders and the Junior DIP Lenders.

"**Capital Expenditures**" shall mean, for any period, the aggregate of (a) all amounts that would be reflected as additions to property, plant or equipment on a consolidated statement of cash flows of the Borrower and its ~~Restricted~~ Subsidiaries in accordance with GAAP and (b) the value of all assets under Capitalized Leases incurred by the Borrower and its ~~Restricted~~ Subsidiaries during such period.

"**Capitalized Leases**" shall mean all leases that have been or are required to be, in accordance with GAAP, recorded as capitalized leases; *provided* that, subject to Section 1.11, for all purposes hereunder the amount of obligations under any Capitalized Lease shall be the amount thereof accounted for as a liability in accordance with GAAP.

"~~**Cash Collateral Account**~~" ~~shall mean a blocked account at a commercial bank reasonably satisfactory to the Required Lenders and the Administrative Agent, in the name of the Administrative~~

Agent and under the sole dominion and control of the Administrative Agent, and otherwise established in a manner reasonably satisfactory to the Administrative Agent.

"**Carve-Out**" shall have the meaning assigned to such term in the DIP Order (and which Carve-Out shall include an amount up to CDN$700,000 (or such other amount as agreed by the Lenders) for the benefit of the beneficiaries of the Canadian Administration Charge, *provided* that such amount shall not be duplicative of the Canadian Administration Charge); *provided further* that, the Carve-Out post-trigger notice professional fee cap may be increased by up to $1,000,000 to include amounts for an official committee of equityholders in the event one is appointed.

"**Cash Collateral**" shall have the meaning assigned to such term in the Interim Order.

"**Cash Equivalents**" shall mean any of the following types of Investments, to the extent owned by the Borrower or any Restricted Subsidiary:

(a)    Dollars and, to the extent consistent with past practice, Canadian Dollars;

(b)    direct obligations of, or obligations the principal of and interest on which are unconditionally guaranteed by, the United States of America (or by any agency thereof to the extent such obligations are backed by the full faith and credit of the United States of America), in each case maturing within one year from the date of issuance thereof;

(c)    investments in commercial paper maturing within 270 days from the date of issuance thereof and having, at such date of acquisition, rated at least A-2 or P-2 by S&P or Moody's;

(d)    investments in demand deposits, certificates of deposit, banker's acceptances and time deposits maturing within one year from the date of acquisition thereof issued or guaranteed by or placed with, and money market deposit accounts issued or offered by, the Administrative Agent, the Prepetition ABL Agent, the Prepetition UST Tranche A Agent, the Prepetition UST Tranche B Agent or any domestic office of any commercial bank organized under the laws of the United States of America or any State thereof that has a combined capital and surplus and undivided profits of not less than $500,000,000 and that issues (or the parent of which issues) commercial paper rated at least "Prime 1" (or the then equivalent grade) by Moody's or "A 1" (or the then equivalent grade) by S&P;

(e)    fully collateralized repurchase agreements with a term of not more than 30 days for securities described in clause (b) above and entered into with a financial institution satisfying the criteria of clause (d) above;

(f)    investments in "money market funds" within the meaning of Rule 2a-7 of the Investment Company Act of 1940, as amended, substantially all of whose assets are invested in investments of the type described in clauses (a) through (e) above; and

(g)    other short-term investments entered into in accordance with normal investment policies and practices of any Foreign Subsidiary consistent with past practices for cash management and constituting investments in governmental obligations and investment funds analogous to and having a credit risk not greater than investments of the type described in clauses (a) through (f) above.

Notwithstanding the foregoing, Cash Equivalents shall include amounts denominated in currencies other than set forth in clause (a) above; *provided* that such amounts are converted into currencies listed in clause (a) within ten Business Days following the receipt of such amounts.

"**Cash Interest Portion**" shall have the meaning assigned to such term in Section 2.06(d).

"**Casualty Event**" shall mean any event that gives rise to the receipt by the Borrower or any Restricted Subsidiary of any insurance proceeds or condemnation awards in respect of any equipment, fixed assets or Real Property (including any improvements thereon) to replace or repair such equipment, fixed assets or Real Property or as compensation for such condemnation event.

"**CCAA**" shall have the meaning assigned to such term in the recitals hereto.

"**CCAA Charges**" shall mean the Canadian Administration Charge, the Canadian D&O Charge and the Canadian DIP Charge, as granted by the Canadian Court.

"**Chapter 11 Cases**" shall have the meaning assigned to such term in the recitals to this Agreement.

"**Chapter 11 Milestones**" shall have the meaning assigned to such term in Section 8.01(o)(xxvii).

"**Chapter 11 Orders**" means, collectively, each order entered by the Bankruptcy Court, including the DIP Order and any cash management order, cash collateral order and adequate protection order, in each case, which shall have been reviewed in advance by the Lenders and the Junior DIP Lenders and shall be in form and substance acceptable to the Agents, the Lenders, the Junior DIP Agent and the Junior DIP Lenders.

"**Change of Control**" shall mean:

(a)    the acquisition of ownership, directly or indirectly, beneficially or of record, by any Person or group (within the meaning of the Securities Exchange Act of 1934 and the rules of the Securities and Exchange Commission thereunder as in effect on the date hereof), in each case, other than the United States federal government or any other Governmental Authority on behalf thereof (or, in each case, any agent, trustee or other Person on behalf thereof, including, for the avoidance of doubt, any voting trust and the trustee thereof created to hold the Equity Interests for the benefit of the United States federal government or any other Governmental Authority), of Equity Interests representing more than 35% of the aggregate ordinary voting power represented by the issued and outstanding Equity Interests of the Borrower;

(b)    occupation of a majority of the seats (other than vacant seats) on the board of directors of the Borrower by Persons who were neither (i) nominated or approved by the board of directors of the Borrower nor (ii) appointed by directors so nominated or approved; or

(c)    a "**change of control**" (or similar event) shall occur under (i) the ABL Facility Documentation or any Permitted Refinancing thereof or (ii) any other Indebtedness for borrowed money, with an aggregate principal amount (in the case of this clause (ii)) in excess of the Threshold Amount.

provided, that, notwithstanding anything in this definition to the contrary, in no event shall the Amendment No. 2 Transactions constitute a Change of Control.

"**Charges**" shall have the meaning assigned to such term in Section 10.09.

"**Claim**" has the meaning assigned to such term in Section 101(5) of the Bankruptcy Code.

"**Class**" when used in reference to (a) any Loan or Borrowing, refers to whether such Loan, or the Loans comprising such Borrowing, are ~~Tranche B-2 Term Loans, Other Term Loans or Extended Term Loans~~"Initial Postpetition Loans", "Second Postpetition Loans", "Final Postpetition Loans", "New Money Postpetition Term Loans" or "Prepetition Term Loans", (b) any Commitment, refers to whether such Commitment is ~~a Term Loan Commitment, Other Term Loan Commitment (and, in the case of an Other Term Loan Commitment, the Class of Term Loans to which such commitment relates), or a commitment in respect of Term Loans to be made pursuant to an Extension Offer~~an "Initial Postpetition Commitment", a "Second Postpetition Commitment" or a "Final Postpetition Commitment" and (c) any Lender, refers to whether such Lender has a Loan or Commitment with respect to a particular Class of Loans or Commitments. ~~Other Term Loan Commitments, Other Term Loans and Extended Term Loans that have different terms and conditions, and each tranche of Extended Term Loans, shall be construed to be in different Classes.~~

"**Code**" shall mean the Internal Revenue Code of 1986, as amended from time to time.

~~"**Collateral**" shall mean all the "**Collateral**" as defined in any Collateral Document and shall also include the Mortgaged Properties.~~

"**Collateral**" shall mean (a) all of the assets, property, rights and interests of the Loan Parties that are or are intended to be subject to the Liens created by or pursuant to the Collateral Documents, the DIP Order, the Canadian DIP Recognition Order and the Canadian Supplemental Order, and (b) the "Collateral" and "DIP Collateral" referred to in the DIP Order, in each case, except for Excluded Property. For the avoidance of doubt, and without limiting the generality of the foregoing, "Collateral" shall include (i) all property or assets of any Canadian Subsidiary of the Borrower, (ii) all claims and causes of action in connection with any commercial tort and breach of contract claims, (iii) the proceeds of all claims and causes of action (excluding the claims and causes of actions themselves) arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 553(b), or 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable federal and/or state-law equivalents, (iv) all leasehold interests of each Loan Party, and (v) the proceeds of each of the foregoing.

"**Collateral Agent**" shall have the meaning assigned to such term in the introductory statement to this Agreement.

"**Collateral and Guarantee Requirement**" shall mean, at any time, the requirement that:

(a)    on the ~~Restatement~~Amendment No. 4 Effective Date, the Administrative Agent and the Collateral Agent shall have received each Collateral Document to the extent required to be delivered on the ~~Restatement~~Amendment No. 4 Effective Date pursuant to Section ~~4.02(d), subject to the limitations and exceptions of this Agreement,~~2 of Amendment No. 4 duly executed by each Loan Party that is a party thereto;

(b)    in each case subject to the limitations and exceptions set forth in this Agreement ~~and~~, the Collateral Documents, the DIP Order and, in the case of the Canadian Collateral, the DIP Order and the Canadian Orders, and to any action required to be taken by the Collateral Agent or the Administrative Agent to effectuate the same, the Obligations shall have been secured by~~:~~ a perfected security interest in all Collateral with the priority set forth herein and in the DIP Order, the Canadian Orders and the Prepetition ABL Intercreditor Agreement;

~~(i)    a perfected second priority security interest (subject to Liens permitted by Section 7.01) in all personal property of the Borrower and each Guarantor consisting of all accounts~~

receivable, cash and Cash Equivalents, deposit accounts (other than First Lien Term Priority Accounts and UST Tranche B Joint Accounts) and supporting obligations and books and records related to the foregoing and, in each case, proceeds thereof;

(ii)     a perfected first priority pledge (subject to Liens permitted by Section 7.01) of all Equity Interests directly held by the Borrower or any Guarantor;

(iii)    with respect to each Material Real Property, (1) a first priority mortgage, deed of trust or deed to secure debt (as applicable) (subject to Liens permitted by Section 7.01) on such Material Real Property pursuant to Mortgages that satisfy the requirements of clause (c)(i) below and (2) a perfected first priority security interest (subject to Liens permitted by Section 7.01) in all personal property relating to such Material Real Property and all fixtures thereon, provided, that, to the extent the opinion delivered to Collateral Agent confirms that the filing of the applicable Mortgage itself perfects Collateral Agent's first priority security interest in such fixtures, no separate fixture filing shall be required; and

(iv)    within one hundred twenty (120) days following the repayment in full of the CDA First Lien Obligations (or, if the proviso to this clause (iv) applies, the date the Requisite CDA Consent is obtained, as applicable), a first priority mortgage, deed of trust or deed to secure debt (as applicable) on each Pension Real Property (such mortgage, deed of trust or deed, a "**Pension Property Mortgage**") pursuant to Mortgages that satisfy the requirements of clause (c)(i) below (subject to Liens permitted by Section 7.01) and a perfected first priority security interest (subject to Liens permitted by Section 7.01) in all personal property relating to such Pension Real Property and all fixtures thereon; *provided* that to the extent such Pension Property Mortgage is prohibited under the terms of the Contribution Deferral Agreement (as in effect as of the date hereof), the Loan Parties shall use commercially reasonable efforts to obtain the necessary consents under the Contribution Deferral Agreement to permit such Pension Property Mortgage (the "Requisite CDA Consent") and if after using such commercially reasonable efforts, such consent is not obtained, the Loan Parties shall not be required to deliver such Pension Property Mortgage until all obligations under the Contribution Deferral Agreement to the extent permitted under Section 7.03(u) shall have been paid in full;

(v)     subject to clause (vi) below, a perfected first priority security interest (subject to Liens permitted by Section 7.01) in substantially all other personal property (other than UST Tranche B Priority Accounts (as defined in the ABL Intercreditor Agreement)) of the Borrower and each Guarantor, including First Lien Term Priority Accounts, UST Tranche B Joint Accounts, investment property, contracts, patents, copyrights, trademarks and other general intangibles (subject to a license in favor of the ABL Agent and/or the UST Tranche A Agent and/or the UST Tranche B Agent, as applicable, to use intellectual property, subject to the ABL Intercreditor Agreement), commercial tort claims, letter of credit rights, intercompany notes and proceeds of the foregoing; and

(vi)    (1) a perfected first priority security interest (subject to Liens permitted by Section 7.01) in all UST Tranche B Joint Collateral and (2) a perfected second priority security interest in all UST Tranche B Priority Collateral (subject to Liens permitted by Section 7.01);

(c)     subject to the limitations and exceptions set forth in this Agreement and the Collateral Documents, to the extent a security interest in and mortgage lien on any Material Real Property (or, solely with respect to clause (b)(iv) above, any Pension Real Property) is required under Section 4.02, 6.11 or 6.13 (together with any Material Real Property that is subject to a Mortgage on the Restatement

Effective Date pursuant to clause (b)(iii) above, each, a "**Mortgaged Property**"), the Administrative Agent and after the Postpetition B-2 Facility Closing Date, (x) each Subsidiary of the Borrower that is an Excluded Subsidiary on the Postpetition B-2 Facility Closing Date and that ceases to constitute an Excluded Subsidiary pursuant to the definition thereof shall, at the request of the Lenders (or the Administrative Agent on behalf of the Lenders) become a Guarantor and signatory to this Agreement pursuant to a joinder agreement in connection with Section 6.11 or Section 6.13 and (y) each Subsidiary of the Borrower shall deliver such collateral documents and take such perfection steps as reasonably requested by the Collateral Agent shall have received: or the Lenders; and

(d)    notwithstanding that all of the security interests described herein with respect to the Collateral shall be effective and perfected by the DIP Order (and, in the case of Canadian Collateral, the Canadian Orders) and without the necessity of the execution of mortgages, security agreements, pledge agreements or other agreements, the Loan Parties shall take all actions that may be necessary or desirable, or that the Lenders or the Collateral Agent may reasonably request, to maintain the validity, perfection, enforceability and priority of the security interest and Liens of the Collateral Agent in the Collateral, or to enable the Collateral Agent to protect, exercise or enforce its rights hereunder, under the DIP Order (and, in the case of Canadian Collateral, the Canadian Orders) and in the Collateral.

(i)    counterparts of a Mortgage with respect to such Real Property duly executed and delivered by the record owner of such property in form suitable for filing or recording in all filing or recording offices that the Collateral Agent may reasonably deem necessary or desirable in order to create a valid and subsisting perfected Lien on the property and/or rights described therein in favor of the Collateral Agent for the benefit of the Secured Parties, and evidence that all filing and recording taxes and fees have been paid or otherwise provided for in a manner reasonably satisfactory to the Collateral Agent and the Required Lenders (it being understood that if a mortgage tax will be owed on the entire amount of the indebtedness evidenced hereby, then the amount secured by the Mortgage shall be limited to 120% (or, in the case of Real Property located in the state of New York, 100%) of the fair market value of the property at the time the Mortgage is entered into if such limitation results in such mortgage tax being calculated based upon such fair market value);

(ii)    fully-paid policies of title insurance (or marked-up title insurance commitments having the effect of policies of title insurance) with respect to such Material Real Property issued by the Title Company or another nationally recognized title insurance company reasonably acceptable to the Collateral Agent in form and in an amount reasonably acceptable to the Collateral Agent (not to exceed 100% of the fair market value of such Material Real Property (or interest therein, as applicable) covered thereby), insuring the Mortgages to be valid, subsisting Liens on the property described therein, free and clear of all Liens other than Liens permitted pursuant to Section 7.01 (such policies, "**Mortgage Policies**"), each of which shall (A) to the extent reasonably necessary, include such reinsurance arrangements (with provisions for direct access, if reasonably necessary) as shall be reasonably acceptable to the Collateral Agent, (B) contain a "tie-in" or "cluster" endorsement, if available under applicable law (i.e., policies which insure against losses regardless of location or allocated value of the insured property up to a stated maximum coverage amount), (C) have been supplemented by such endorsements (or where such endorsements are not available, customary opinions of special counsel, architects or other professionals reasonably acceptable to the Collateral Agent and the Required Lenders) as shall be reasonably requested by the Collateral Agent or the Required Lenders (including endorsements on matters relating to usury, first loss, last dollar, zoning, contiguity, revolving credit (if available after the applicable

Loan Party uses commercially reasonable efforts), doing business, public road access, variable rate, environmental lien, subdivision, mortgage recording tax, separate tax lot and so-called comprehensive coverage over covenants and restrictions);

(iii)    either (1) an American Land Title Association/National Society for Professional Surveyors (ALTA/NSPS) form of survey for which all charges have been paid, dated a date, containing a certification and otherwise being in form and substance reasonably satisfactory to the Collateral Agent (a "**Survey**") or (2) such documentation ("**Other Survey Documentation**") as may be required by the Title Company to omit the standard survey exception to coverage under the Mortgage Policy with respect to such Material Real Property and issue affirmative endorsements reasonably requested by the Collateral Agent, including "same as" survey and comprehensive endorsements;

(iv)    a customary legal opinion, addressed to the Collateral Agent and the Secured Parties with respect to the Mortgage on such Material Real Property; provided, however, with respect to any Material Real Property as of the Restatement Effective Date, Borrower shall only be required to deliver a legal opinion if such Material Real Property is located in a Required Opinion State; and

(v)    in order to comply with the Flood Laws, the following documents: (A) a completed standard "life of loan" flood hazard determination form (a "**Flood Determination Form**"); (B) if any of the material improvement(s) to the improved Material Real Property is located in a special flood hazard area, a notification thereof to the Borrower ("**Borrower Notice**") and, if applicable, notification to the Borrower that flood insurance coverage under the National Flood Insurance Program ("**NFIP**") is not available because the community in which the property is located does not participate in the NFIP; (C) documentation evidencing the Borrower's receipt of the Borrower Notice (e.g., a countersigned Borrower Notice or return receipt of certified U.S. Mail or overnight delivery); and (D) if the Borrower Notice is required to be given and flood insurance is available in the community in which such Material Real Property is located, a copy of one of the following: the flood insurance policy, the Borrower's application for a flood insurance policy plus proof of premium payment, a declaration page confirming that flood insurance has been issued or such other evidence of flood insurance reasonably satisfactory to the Required Lenders, Administrative Agent and the Collateral Agent (any of the foregoing being "**Evidence of Flood Insurance**")(the foregoing, collectively, the "**Mortgage Policy Conditions**");

(d)    after the Restatement Effective Date, each Restricted Subsidiary of the Borrower that is not an Excluded Subsidiary shall become a Guarantor and signatory to this Agreement pursuant to a joinder agreement in accordance with Section 6.11 or 6.13; *provided* that, notwithstanding the foregoing provisions, any Subsidiary of the Borrower that would otherwise constitute an Excluded Subsidiary that Guarantees any ABL Facility Indebtedness, any UST Tranche A Facility Indebtedness, any UST Tranche B Facility Indebtedness, any Junior Financing, Permitted Additional Debt, or any Permitted Refinancing of any Indebtedness thereof, or that is a borrower under the ABL Facility (or any Permitted Refinancing thereof), the UST Tranche A Facility (or any Permitted Refinancing thereof) or the UST Tranche B Facility (or any Permitted Refinancing thereof) shall be a Guarantor hereunder for so long as it Guarantees such Indebtedness (or is a borrower with respect thereto); and

(e)     after the Restatement Effective Date, YRC Freight Canada Company and Reimer Holding B.V. shall become a Guarantor and signatory to this Agreement pursuant to a joinder agreement in accordance with, and take the other actions specified in, Schedule 6.13(a).

Notwithstanding the foregoing provisions of this definition or anything in this Agreement or any other Loan Document to the contrary:

(A)     the foregoing definition shall not require, unless otherwise stated in this clause (A), the creation or perfection of pledges of, security interests in, Mortgages on, the obtaining of title insurance with respect to or the taking of any other actions with respect to: (i) any fee owned Real Property that is not Material Real Property (other than Pension Property Mortgages solely to the extent required to be delivered pursuant to clause (b)(iv) of this definition) and any Leasehold Property (it being understood there shall be no requirement to obtain any landlord waivers, estoppels or collateral access letters), (ii) motor vehicles (other than tractors, trucks, trailers and other rolling stock) consisting of an employee or light vehicle and other assets subject to certificates of title with an individual fair market value of less than $40,000, *provided* that the aggregate fair market value of all assets excluded from the Collateral and Guarantee Requirement pursuant to this sub-clause (ii) of this clause (A), together with the aggregate book value of all assets excluded from the Collateral and Guarantee Requirement pursuant to sub-clause (xiv) of this clause (A), shall not exceed $5,000,000 in the aggregate at any time outstanding, (iii) letter of credit rights (other than to the extent consisting of supporting obligations that can be perfected solely by the filing of a UCC financing statement) of an amount less than $5,000,000 and commercial tort claims where the amount of damages claimed by the applicable Loan Party is less than $5,000,000, (iv) any governmental licenses or state or local franchises, charters and authorizations, to the extent security interests in such licenses, franchises, charters or authorizations are prohibited or restricted thereby (except to the extent such prohibition or restriction is rendered ineffective under the UCC or other applicable law), (v) Collateral in which pledges or security interests are prohibited or restricted by applicable law or require the consent of any governmental authority or third party, which consent has not been obtained, (vi) Margin Stock, (vii) Equity Interests in a bona fide joint venture formed after the Restatement Effective Date with any Person that is not an Affiliate of any Loan Party (but only to the extent that the organizational documents of such Subsidiaries or agreements with other equity holders prohibit or restrict the pledge thereof without the consent of the other equity holders under restrictions that are enforceable under the UCC or other applicable law and such consent has not been obtained), (viii) Equity Interests of (or held as assets by) Immaterial Subsidiaries, or captive insurance Subsidiaries, (ix) any lease, license or agreement or any property to the extent a grant of a security interest therein would violate or invalidate such lease, license or agreement or similar arrangement or create a right of termination in favor of any other party thereto after giving effect to the applicable anti-assignment provisions of the UCC or other applicable law, other than proceeds and receivables thereof, the assignment of which is deemed effective under the UCC or other applicable law, notwithstanding such prohibition, (x) any assets or rights subject to a purchase money security interest, Capitalized Lease or similar arrangement, other than in each case, the UST Tranche B Priority Collateral and UST Tranche B Joint Collateral, (xi) Treasury-Only Collateral, (xii) any assets to the extent a security interest in such assets could result in adverse Tax consequences as reasonably determined by the Borrower, in consultation with the Administrative Agent (provided that the Borrower shall give notice of such determination to the Required Lenders and, at the request of the Required Lenders, shall consult with the Required Lenders), (xiii) any intent-to-use trademark application prior to the filing of a "Statement of Use" or "Amendment to Allege Use" with respect thereto, to the extent, if any, that, and solely during the period, if any, in which, the grant of a security interest therein would impair the validity or enforceability of such intent-to-use trademark application under applicable Federal law, (xiv) any equipment or other collateral with a net book value in an aggregate amount not to exceed $5,000,000 for all such equipment or other collateral (other than to the extent consisting of supporting obligations that can be perfected solely by the filing of a UCC financing statement); *provided* that the aggregate fair market value of all

assets excluded from the Collateral and Guarantee Requirement pursuant to this sub-clause (xiv), together with the aggregate net book value of all assets excluded from the Collateral and Guarantee Requirement pursuant to sub-clause (ii) of this clause (A), shall not exceed $5,000,000 in the aggregate at any time outstanding, and (xv) other assets not specifically included in the Collateral in circumstances where the cost of obtaining a security interest in such assets exceeds the practical benefit to the Lenders afforded thereby as reasonably determined by the Administrative Agent in consultation with the Borrower.

(B)    (i) the foregoing definition shall not require perfection by "**control**" except with respect to (1) Equity Interests or Indebtedness represented or evidenced by certificates or instruments and (2) deposit accounts and security accounts (which are required to be subject to Control Agreements pursuant to Section 3.04 of the Security Agreement), other than Excluded Accounts; (ii) perfection by possession or control shall not be required with respect to (x) any intercompany notes in an aggregate principal amount not to exceed $5,000,000 and (y) any other notes or other evidence of Indebtedness in an aggregate principal amount not to exceed $5,000,000; (iii) except in the case of (A) Canadian Subsidiaries, (B) Dutch Subsidiaries and (C) other Foreign Subsidiaries that are not Excluded Foreign Subsidiaries, no actions in any non-U.S. jurisdiction or required by the laws of any non-U.S. jurisdiction shall be required in order to create any security interests in assets located or titled outside of the United States (including the Equity Interests of any Foreign Subsidiary) or to perfect such security interests (it being understood that there shall be no security agreements or pledge agreements governed under the laws of any non-U.S. jurisdiction); and (iv) except to the extent that perfection and priority may be achieved (w) by the filing of a financing statement under the Uniform Commercial Code with respect to the Borrower or a Guarantor, (x) with respect to Real Property and the recordation of Mortgages in respect thereof, as contemplated by clauses (b)(iii) and (c) above, (y) with respect to Equity Interests or Indebtedness, by the delivery of certificates or instruments representing or evidencing such Equity Interests or Indebtedness along with appropriate undated instruments of transfer executed in blank or (z) by notation of liens on certificate of title, the Loan Documents shall not contain any requirements as to perfection or priority with respect to any assets or property described in clause (A) above and this clause (B);

(C)    the Collateral Agent in its reasonable discretion may grant extensions of time for the creation or perfection of security interests in, and Mortgages on, or obtaining of title insurance or taking of other actions with respect to, particular assets (including extensions beyond the Restatement Effective Date) or any other compliance with the requirements of this definition (or any similar requirements set forth herein or in any other Loan Documents) where it reasonably determines, in consultation with the Borrower, that such creation or perfection of security interests or Mortgages, or such obtaining of title insurance or taking of other actions, or any other compliance with the requirements of this definition cannot be accomplished without undue delay, burden or expense by the time or times at which such act would otherwise be required by this Agreement or any Collateral Documents; *provided* that the Collateral Agent shall have received on or prior to the Restatement Effective Date, (i) UCC financing statements in appropriate form for filing under the UCC in the jurisdiction of incorporation or organization of each Loan Party, (ii) any certificates or instruments representing or evidencing Equity Interests of each direct wholly owned Subsidiary of the Borrower or any Guarantor, in each case accompanied by undated instruments of transfer and stock powers endorsed in blank and (iii) Mortgages and Mortgage Policies for each Material Real Property; and

(D)    Liens required to be granted from time to time pursuant to the Collateral and Guarantee Requirement shall be subject to the exceptions and limitations set forth in this Agreement and the Collateral Documents.

"**Collateral Documents**" shall mean, collectively, the DIP Order, the Canadian DIP Recognition Order, the Security Agreement, each of the Mortgages, collateral assignments, security agreements, pledge agreements, intellectual property security agreements, ~~Control Agreements~~control agreements or other similar agreements delivered to the Administrative Agent or the Collateral Agent pursuant to the Existing Loan Documents, Section ~~4.02~~2 of Amendment No. 4, Section 6.11 or Section 6.13, and each of the other agreements, instruments or documents that creates or purports to create a Lien in favor of the Collateral Agent for the benefit of the Secured Parties and the Prepetition ABL Intercreditor Agreement.

"**Commitment**" shall mean, with respect to any Lender, such Lender's ~~Term Loan~~Initial Postpetition Commitment ~~(including pursuant to any Refinancing Amendment or Extension Amendment)~~, Second Postpetition Commitment and Final Postpetition Commitment. The aggregate amount of the Commitments immediately prior to the making of the Initial Postpetition Loans was $100,000,000.

~~"**Common stock**" means the common stock, par value $0.01 per share, of Borrower.~~

"**Communications**" shall have the meaning assigned to such term in Section 10.01.

"**Compliance Certificate**" shall mean a certificate substantially in the form of Exhibit F.

~~"**Compton Sale**" shall mean (i) the sale by USF Reddaway Inc. of the Real Property located at 575 E Weber Avenue, Compton, California 90222 to UTSI Finance, Inc., as buyer, for a purchase price of $80,000,000, (ii) the payment by Chicago Title Insurance Company directly to the Administrative Agent of all Net Proceeds therefrom, which Net Proceeds shall be in an aggregate amount not less than $73,000,000, and (iii) the application of all such Net Proceeds to prepay the Term Loans in accordance with Section 2.13(a)(ii) without giving effect to any thresholds or reinvestment rights, in each case, on or prior to the date that is four (4) Business Days after the Amendment No. 3 Closing Date (or such later date as may be agreed in writing by the Required Lenders in their sole and absolute discretion (which may be via e-mail)).~~

~~"**Conforming Changes**" shall mean, with respect to either the use or administration of Adjusted Term SOFR or any other Benchmark or the use, administration, adoption or implementation of any Benchmark Replacement any technical, administrative or operational changes (including changes to the definition of "Base Rate," the definition of "Business Day," the definition of "U.S. Government Securities Business Day," the definition of "Interest Period," timing and frequency of determining rates and making payments of interest, timing of borrowing requests or prepayment, conversion or continuation notices, length of lookback periods, the applicability of breakage provisions, and other technical, administrative or operational matters) that the Administrative Agent (in consultation with the Borrower) decides may be appropriate to reflect the adoption and implementation of such Benchmark Replacement and to permit the administration thereof by the Administrative Agent in a manner substantially consistent with market practice (or, if the Administrative Agent decides that adoption of any portion of such market practice is not administratively feasible or if the Administrative Agent (in consultation with the Borrower) determines that no market practice for the administration of such Benchmark Replacement exists, in such other manner of administration as the Administrative Agent decides is reasonably necessary in connection with the administration of~~ this Agreement and the other Loan Documents).

~~"**Consolidated EBITDA**" shall mean, for any period, the Consolidated Net Income for such period, plus:~~

(a)    without duplication and to the extent deducted (and not added back or excluded) in arriving at such Consolidated Net Income (other than clauses (viii) or (xi)), the sum of the following amounts for such period with respect to Borrower and its Restricted Subsidiaries:

(i) total interest expense determined in accordance with GAAP and, to the extent not reflected in such total interest expense, any expenses or losses on hedging obligations or other derivative instruments entered into for the purpose of hedging interest rate risk, net of interest income and gains on such hedging obligations or other derivative obligations, letter of credit fees, costs of surety bonds in connection with financing activities and any bank fees and financing fees (including commitment, underwriting, funding, "rollover" and similar fees and commissions, discounts, yields and other fees, charges and amounts incurred in connection with the issuance or incurrence of Indebtedness and all commissions, discounts and other fees and charges owed with respect to letters of credit and bankers' acceptance financing and net costs under Swap Contracts entered into for the purpose of hedging interest or commodity rate risk) and annual agency, unused line, facility or similar fees paid under definitive documentation related to Indebtedness (whether amortized or immediately expensed),

(ii) provision for taxes based on income, profits or capital gains of the Borrower and the Restricted Subsidiaries, including, without limitation, federal, state, local, franchise and similar taxes and foreign withholding taxes paid or accrued during such period,

(iii) depreciation and amortization,

(iv) extraordinary, unusual or non-recurring charges, expenses or losses, *provided* that the aggregate amount added to "Consolidated EBITDA" pursuant to this clause (a)(iv) in any period, together with the aggregate amount added to Consolidated EBITDA pursuant to clause (a)(vi) of the definition of "Consolidated EBITDA", shall not exceed in the aggregate 10.0% of Consolidated EBITDA for such period (as calculated prior to giving effect to any such adjustments),

(v) non-cash expenses, charges and losses (including reserves, impairment charges or asset write-offs, write-offs of deferred financing fees, losses from investments recorded using the equity method, purchase accounting adjustments and stock-based awards compensation expense), in each case other than (A) any non-cash charge representing amortization of a prepaid cash item that was paid and not expensed in a prior period and (B) any non-cash charge relating to write-offs, write-downs or reserves with respect to accounts receivable in the normal course or inventory; *provided* that if any of the non-cash charges referred to in this clause (v) represents an accrual or reserve for potential cash items in any future period, (1) the Borrower may determine not to add back such non-cash charge in the current period and (2) to the extent the Borrower does decide to add back such non-cash charge, the cash payment in respect thereof in such future period shall be subtracted from Consolidated EBITDA in such future period to the extent paid,

(vi) restructuring costs and charges, integration costs, retention, recruiting, relocation and signing bonuses and expenses, and severance costs (including, for the avoidance of doubt, any bonuses payable in connection with the IBT Transactions); *provided* that the aggregate amount added to "Consolidated EBITDA" pursuant to this clause (a)(vi) in any period, together with the aggregate amount added to Consolidated EBITDA pursuant to clause (a)(iv) of the definition of "Consolidated EBITDA", shall not exceed in the aggregate 10.0% of Consolidated EBITDA for such period (as calculated prior to giving effect to any such adjustments),

(vii) Transaction Expenses, and any fees, costs and expenses in connection with any amendment, negotiation, modification, restatement, waiver, forbearance or other transaction in connection with the Amendment No. 2 Transactions *provided* that the aggregate amount added to "Consolidated EBITDA" pursuant to this clause (a)(vii) with respect to the Amendment No. 2 Transactions shall not exceed $20,000,000,

(viii) pro forma cost savings for acquisitions (including the commencement of activities constituting such business), material dispositions (including the termination or discontinuance of activities constituting such business) of business entities or properties or assets, constituting a division or line of business of any business entity, division or line of business that is the subject of any such acquisition or disposition and operational changes and operational initiatives (collectively, "**Cost Savings**"), scheduled to be executed and realized (in the good faith determination of a Senior Financial Officer of the Borrower) in connection with any such transaction permitted hereunder, net of the amount of actual Cost Savings realized from such actions during such period; *provided* that (A) such Cost Savings are factually supportable and specifically identified, (B) such Cost Savings are scheduled to be executed and realized within twelve (12) months after the consummation of such transaction, (C) the Administrative Agent and the Required Lenders shall have received a certificate of a Senior Financial Officer of the Borrower, certifying the foregoing requirements and accompanied by a reasonably detailed statement or schedule of such Cost Savings; (D) the actions responsible for any expected Cost Savings are actually taken within twelve (12) months of the consummation of the relevant transaction, (E) any projected Cost Savings in respect of actions which are not actually taken within such twelve (12) month period or have not been realized within such (12) month period may no longer be added back in calculating Consolidated EBITDA pursuant to this clause (viii) for the applicable periods, (F) such Cost Savings are not duplicative of any other adjustments to Consolidated EBITDA pursuant to this definition and (G) the aggregate amount added to Consolidated EBITDA pursuant to this clause (a)(viii) in any period, together with the aggregate amount of all adjustments pursuant to Section 1.10(e), shall not exceed in the aggregate 5.0% of Consolidated EBITDA for such period (as calculated prior to giving effect to any such adjustments),

(ix) [reserved],

(x) other transaction specific accruals, costs, charges, fees and expenses (including legal, tax, structuring and other costs and expenses) related to the Transactions, acquisitions, investments, restricted payments, dispositions or issuances, amendments, waivers or modifications of debt or equity (whether or not consummated) reasonably expected to be permitted under this Agreement or the consummation of which would result in the repayment in full of the Obligations (other than unasserted contingent indemnity and reimbursement obligations) (it being understood and agreed that this clause (a)(x) shall not permit adjustments of the type specified in clauses (a)(iv), (vi) or (viii)),

(xi) to the extent not already included in Consolidated Net Income, proceeds of business interruption insurance (other than business interruption insurance relating to COVID-19 (or any related virus) or any related events) received or reasonably expected to be received within 365 days after the end of such period; *provided* that any such expected proceeds that are not actually received in such 365-day period shall be deducted from Consolidated EBITDA in the fiscal quarter immediately following such 365-day period,

(xii) charges, losses or expenses to the extent indemnified or insured or reimbursed or reasonably expected to be indemnified, insured or reimbursed by a third party within 365 days

after the end of such period; *provided* that any such expected amounts that are not actually received in such 365 day period shall be deducted from Consolidated EBITDA in the fiscal quarter immediately following such 365 day period,

(xiii) the amount of any minority interest expense attributable to minority interests of third parties in the positive income of any non-wholly owned Restricted Subsidiary,

(xiv) any net loss from disposed, abandoned or discontinued operations,

(xv) [reserved],

(xvi) net realized losses under any Swap Contract or embedded derivatives that require similar accounting treatment and the application of Accounting Standard Codification Topic 815 and related pronouncements,

(xvii) the cumulative effect of a change in accounting principles,

(xviii) realized non-cash foreign exchange losses resulting from the impact of foreign currency changes on the valuation of assets or liabilities on the balance sheet of the Borrower and its Restricted Subsidiaries,

(xix) any losses attributable to Dispositions of Real Property,

less (b) without duplication and to the extent included in arriving at such Consolidated Net Income, (i) non-cash gains (excluding any non-cash gain to the extent it represents the reversal of an accrual or reserve for a potential cash item that reduced Consolidated EBITDA in any prior period) and all other non-cash items of income for such period, (ii) any gains and income from investments recorded using the equity method, (iii) extraordinary, unusual or non-recurring gains, (iv) non-cash gains representing adjustments to pension assets, (v) any gains attributable to Dispositions of Real Property and (vi) any gains arising out of transactions of the types described in clauses (a)(xii), (xiii), (xiv), (xv) and (xvi) above; *provided* that, for the avoidance of doubt, any gain representing the reversal of any non-cash charge referred to in clause (a)(v)(B) for a prior period shall be added (together with, without duplication, any amounts received in respect thereof to the extent not increasing Consolidated Net Income) to Consolidated EBITDA in any subsequent period to such extent so reversed (or received).

Notwithstanding the foregoing, Consolidated Net Income and Consolidated EBITDA shall be calculated to exclude any amounts otherwise increasing or included in Consolidated Net Income and/or Consolidated EBITDA relating to (x) business interruption insurance relating to COVID-19 (or any related virus) or any related events or (y) any assistance programs provided by Governmental Agencies (or the equivalent).

"**Consolidated Net Income**" shall mean, with reference to any period, the net income (or loss) of the Borrower and its Subsidiaries for such period determined on a consolidated basis in accordance with GAAP on a consolidated basis (without duplication) for such period (without deduction for minority interests); *provided* that in determining Consolidated Net Income, (a) the net income of any other Person which is not a Subsidiary of the Borrower or is accounted for by the Borrower by the equity method of accounting shall be included only to the extent of the payment of cash dividends or cash distributions by such other Person to the Borrower or a Guarantor that could be made during such period; *provided, however,* that for purposes of calculating the Cumulative Credit for purposes of Section 7.06(e)(y), such income shall only be included (directly or indirectly) to the extent such cash dividends or other cash distributions are actually received from such other Person by the Borrower or a Guarantor, (b) the net

income of any Subsidiary of the Borrower shall be excluded to the extent that the declaration or payment of cash dividends or similar cash distributions by that Subsidiary of that net income is not at the date of determination permitted by operation of its charter or any agreement, instrument or law applicable to such Subsidiary (other than (i) restrictions that have been waived or otherwise released, (ii) restrictions pursuant to the Loan Documents, the ABL Facility Documentation, the UST Tranche A Facility Documentation, the UST Tranche B Facility Documentation, the Treasury Equity Documents and (iii) restrictions arising pursuant to an agreement or instrument if the encumbrances and restrictions contained in any such agreement or instrument taken as a whole are not materially less favorable to the Secured Parties than the encumbrances and restrictions contained in the Loan Documents (as determined by the Borrower in good faith)), and (c) the income or loss of any Person accrued prior to the date it becomes a Subsidiary or is merged into or consolidated with the Borrower or any Subsidiary or the date that such Person's assets are acquired by the Borrower or any Subsidiary shall be excluded.

"Consolidated Total Assets" shall mean the total assets of the Borrower and its Restricted Subsidiaries, determined on a consolidated basis in accordance with GAAP, as shown on the consolidated balance sheet of the Borrower for the most recently completed fiscal quarter for which financial statements have been delivered pursuant to Section 6.01(a) or (b).

"Consolidated Total Debt" shall mean, as of any date of determination, the aggregate principal amount of Indebtedness of the Borrower and its Restricted Subsidiaries (on a consolidated basis) outstanding on such date, in an amount that would be reflected on a balance sheet prepared as of such date on a consolidated basis in accordance with GAAP as long as such amount is no less than the aggregate face amount of such Indebtedness on such date, consisting of Indebtedness for borrowed money, Attributable Indebtedness or purchase money Indebtedness, debt obligations evidenced by bonds, debentures, promissory notes, loan agreements or similar instruments, and all Guarantees of any of the foregoing; *provided* that (i) Consolidated Total Debt shall not include Indebtedness in respect of letters of credit, bankers' acceptances and other similar contingent obligations, except to the extent of unreimbursed amounts thereunder, and (ii) Consolidated Total Debt shall not include obligations under Swap Contracts permitted hereunder.

"Consolidated Working Capital" shall mean, with respect to the Borrower and its Restricted Subsidiaries on a consolidated basis at any date of determination, Current Assets at such date of determination minus Current Liabilities at such date of determination; provided, that, increases or decreases in Consolidated Working Capital shall be calculated without regard to any changes in Current Assets or Current Liabilities as a result of (a) any reclassification in accordance with GAAP of assets or liabilities, as applicable, between current and noncurrent or (b) the effects of purchase accounting.

"**Contractual Obligation**" shall mean, as to any Person, any provision of any security issued by such Person or of any agreement, instrument or other undertaking to which such Person is a party or by which it or any of its property is bound.

"Contribution Deferral Agreement" means that certain Second Amended and Restated Contribution Deferral Agreement, dated as of January 31, 2014, by and between YRC Inc., USF Holland LLC (f/k/a USF Holland Inc.), New Penn Motor Express LLC (f/k/a New Penn Motor Express, Inc.), USF Reddaway Inc., certain other of the Subsidiaries of the Borrower, the Trustees for the Central States, Southeast and Southwest Areas Pension Fund, the Pension Fund Entities and each other pension fund from time to time party thereto and Wilmington Trust Company, all as the same may be amended, amended and restated, restated, supplemented or otherwise modified in accordance with the terms hereof.

"**Control**" shall have the meaning specified in the definition of "Affiliate".

"**Control Agreement**" means an agreement, in form and substance reasonably satisfactory to the Required Lenders, which provides for the Collateral Agent to have "control" (for purposes of this definition, as defined in Section 9-104 of the UCC of the State of New York or Section 8-106 of the UCC of the State of New York, as applicable) of Cash Collateral Accounts, Deposit Accounts or Securities Accounts, as applicable.

"**Credit Agreement Refinancing Indebtedness**" shall mean Permitted Additional Debt or Indebtedness incurred pursuant to a Refinancing Amendment, in each case, issued, incurred or otherwise obtained (including by means of the extension or renewal of existing Indebtedness) in exchange for, or to extend, renew, replace, restructure or refinance, in whole or part, existing Term Loans (including any successive Credit Agreement Refinancing Indebtedness) ("**Refinanced Debt**"); *provided* that (i) such extending, renewing, replacing, restructuring or refinancing Indebtedness is in an original aggregate principal amount (or accreted value, if applicable) not greater than the aggregate principal amount (or accreted value, if applicable) of the Refinanced Debt, except by an amount equal to accrued but unpaid interest, premiums and fees payable by the terms of such Indebtedness and reasonable fees, expenses, original issue discount and upfront fees incurred in connection with such exchange, modification, refinancing, refunding, renewal, restructuring, replacement or extension, (ii) such Refinanced Debt shall be repaid, defeased or satisfied and discharged with 100% of the Net Proceeds of the applicable Credit Agreement Refinancing Indebtedness and all accrued, due and payable interest, fees and premiums (if any) in connection therewith shall be paid promptly upon receipt of the proceeds of such Credit Agreement Refinancing Indebtedness, (iii) such Indebtedness does not have an earlier maturity and has a Weighted Average Life to Maturity equal to or greater than the Refinanced Debt; and (iv) and, in the case of any high yield notes constituting Credit Agreement Refinancing Indebtedness, such Indebtedness will not have mandatory prepayment provisions (other than related to customary asset sale and change of control and similar offers and AHYDO "catch-up" payments) that would result in mandatory prepayment of such Indebtedness prior to the Refinanced Debt.

"**Credit Extension**" shall mean a Borrowing.

"**Currency Due**" shall have the meaning assigned to such term in Section 2.18.

"**Cumulative Credit**" shall mean, at any date, an amount, not less than zero in the aggregate, determined on a cumulative basis equal to, without duplication:

(a) the Cumulative Retained Excess Cash Flow Amount at such time, plus

(b) the cumulative amount of cash and Cash Equivalent proceeds from the sale of Equity Interests of the Borrower or of any direct or indirect parent of the Borrower after the Restatement Effective Date to the extent Not Otherwise Applied, plus

(c) the aggregate amount of Declined Proceeds at such time that have been retained by the Borrower in accordance with Section 2.13(d), plus

(d) to the extent not already included in the Cumulative Retained Excess Cash Flow Amount, an amount equal to any returns in cash and Cash Equivalents (including dividends, interest, distributions, returns of principal, profits on sale, repayments, income and similar amounts) actually received by the Borrower or any Restricted Subsidiary after the Restatement Effective Date in respect of any Investments made pursuant to Section 7.02(p)(y), and *provided* in each case that such amount does not exceed the amount of the original Investment made pursuant to Section 7.02(p)(y); minus

(e) any amount of the Cumulative Credit used to make Investments pursuant to Section

7.02(p)(y) after the Restatement Effective Date and prior to such time, minus

(f) any amount of the Cumulative Credit used to pay dividends or make distributions or other Restricted Payments pursuant to Section 7.06(d)(ii) or Section 7.06(e)(y) after the Restatement Effective Date and prior to such time, minus

(g) any amount of the Cumulative Credit used to make payments or distributions in respect of Permitted Additional Debt or Junior Financing (or any Permitted Refinancing thereof) pursuant to Section 7.13(a)(vi) after the Restatement Effective Date and prior to such time.

Notwithstanding anything to the contrary in this Agreement, during the Specified Amendment No. 1 Period and from and after the Amendment No. 3 Effective Date, the Cumulative Credit shall be unavailable for use under this Agreement and shall be disregarded in any calculation of or reference to any other term or provision herein.

"**Cumulative Retained Excess Cash Flow Amount**" shall mean, at any date, an amount, not less than zero in any fiscal year, determined on a cumulative basis equal to the aggregate cumulative sum of the Retained Percentage of Excess Cash Flow for all Excess Cash Flow Periods ending after the Restatement Effective Date and prior to such date; *provided*, that for purposes of Section 7.06(e)(y), (a) the Cumulative Retained Excess Cash Flow Amount shall only be available if the Total Leverage Ratio at the time of the making of such Investment, Restricted Payment or prepayment, redemption, purchase, defeasance or other payment, as the case may be, calculated on a Pro Forma Basis, is less than or equal to 3.75 to 1.00 and (b) the Cumulative Retained Excess Cash Flow Amount shall be reduced by the amount of Excess Cash Flow attributable to Foreign Subsidiaries to the extent and for so long as such Excess Cash Flow is excluded from Excess Cash Flow prepayments pursuant to Section 2.13(f).

"**Current Assets**" shall mean, with respect to the Borrower and the Restricted Subsidiaries on a consolidated basis at any date of determination, all assets that would, in accordance with GAAP, be classified on a consolidated balance sheet of the Borrower and its Restricted Subsidiaries as current assets at such date of determination, other than (a) cash and Cash Equivalents, (b) amounts related to current or deferred Taxes based on income or profits, (c) assets held for sale, (d) loans (permitted) to third parties, (e) pension assets, (f) deferred bank fees, and (g) derivative financial instruments.

"**Current Liabilities**" shall mean, with respect to the Borrower and the Restricted Subsidiaries on a consolidated basis at any date of determination, all liabilities that would, in accordance with GAAP, be classified on a consolidated balance sheet of the Borrower and its Restricted Subsidiaries as current liabilities at such date of determination, other than, without duplication (and to the extent otherwise included therein) (a) the current portion of any Indebtedness, (b) accruals of interest expense (excluding interest expense that is past due and unpaid), (c) accruals for current or deferred Taxes based on income or profits, (d) accruals of any costs or expenses related to restructuring reserves, (e) the current portion of pension liabilities and (f) revolving loans, swing line loans and letter of credit obligations under the ABL Facility or any other revolving credit facility.

"**Custodial Administration Agreement**" shall mean the Amended and Restated Custodial Administration Agreement, dated as of the Restatement Effective DateJuly 9, 2020, by and among the Borrower, the Subsidiaries from time to time parties thereto, VINtek, Inc., as custodial administrator, the Collateral Agent, as administrative and collateral agent for the benefit of the Secured Parties, the ABL Agent, as administrative and collateral agent for the benefit of the ABL Secured Parties, the UST Tranche A Agent, as administrative and collateral agent for the benefit of the UST Tranche A Secured Parties, the UST Tranche B Agent, as administrative and collateral agent for the benefit of the UST Tranche B Secured Parties and the Collateral Agent, as collateral agent for the benefit of the Secured

Parties, the UST Tranche A Secured Parties, the UST Tranche B Secured Parties and the ABL Secured Parties.

"~~Daily Simple SOFR~~" ~~shall mean, for any day, SOFR, with the conventions for this rate (which will include a lookback) being established by the Administrative Agent acting at the direction of the Required Lenders in accordance with the conventions for this rate selected or recommended by the Relevant Governmental Body for determining "Daily Simple SOFR" for syndicated business loans; provided, that if the Administrative Agent decides that any such convention is not administratively feasible for the Administrative Agent, then the Administrative Agent may establish another convention in its reasonable discretion in consultation with the Borrower.~~

"**Debtor Relief Laws**" shall mean (i) the Bankruptcy Code of the United States ~~and~~; (ii) the CCAA and the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended; and (iii) all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, arrangement, rearrangement, receivership, insolvency, reorganization or similar debtor relief Laws of the United States, Canada or other applicable jurisdictions from time to time in effect and affecting the rights of creditors generally.

"~~Declined Proceeds~~Debtors" shall have the meaning assigned to ~~such~~the term in ~~Section 2.13(d)~~the recitals hereto.

"**Default**" shall mean any event or condition that constitutes an Event of Default or that, with the giving of any notice, the passage of any grace period, or both, without cure or waiver hereunder, would be an Event of Default.

"**Deposit Account**" means a demand, time, savings, passbook or like account with a bank, savings and loan association, credit union or like organization, other than an account evidenced by a negotiable certificate of deposit.

"**DIP Order**" shall mean the Interim Order or, upon entry thereof by the Bankruptcy Court, the Final Order.

"**DIP Proceeds Account**" shall mean a deposit account in the name of, and for the account of, USF Holland, LLC maintained at JP Morgan, as account number ending with x4623, which shall constitute Collateral but not Prepetition ABL Priority Collateral, and into which proceeds of the New Money Postpetition Term Loans and loans issued under the Junior DIP Facility shall be funded and held in accordance with this Agreement.

"**DIP Term Sheet**" has the meaning provided in the recitals.

"**Discharge of ABL Obligations**" shall have the meaning assigned to such term in the Prepetition ABL Intercreditor Agreement.

"**Discharge of UST Tranche A Obligations**" shall have the meaning assigned to such term in the Prepetition ABL Intercreditor Agreement.

"**Discharge of UST Tranche B Obligations**" shall have the meaning assigned to such term in the Prepetition ABL Intercreditor Agreement.

"**Disposition**" or "**Dispose**" shall mean the sale, transfer, license, lease or other disposition (including any sale and leaseback transaction and any sale or issuance of Equity Interests in a ~~Restricted~~ Subsidiary) of any property by any Person, including any sale, assignment, transfer or other disposal,

with or without recourse, of any notes or accounts receivable or any rights and claims associated therewith.

"**Disqualified Equity Interests**" shall mean any Equity Interest that, by its terms (or by the terms of any security or other Equity Interests into which it is convertible or for which it is exchangeable), or upon the happening of any event or condition (a) matures or is mandatorily redeemable (other than solely for Qualified Equity Interests), pursuant to a sinking fund obligation or otherwise, (b) is redeemable at the option of the holder thereof (other than solely for Qualified Equity Interests), in whole or in part (except as a result of a change of control or asset sale so long as any rights of the holders thereof upon the occurrence of a change of control or asset sale event shall be subject to the prior repayment in full of the Loans and all other Obligations that are accrued and payable and the termination of the Commitments), (c) provides for scheduled payments of dividends in cash, or (d) is or becomes convertible into or exchangeable for Indebtedness or any other Equity Interests that would constitute Disqualified Equity Interests, in each case, prior to the date that is ninety-one (91) days after the ~~then Latest~~ Maturity Date; *provided* that if such Equity Interests are issued pursuant to, or in accordance with a plan for the benefit of employees of the Borrower or the ~~Restricted~~ Subsidiaries or by any such plan to such employees, such Equity Interests shall not constitute Disqualified Equity Interests solely because they may be required to be repurchased by the Borrower or its ~~Restricted~~ Subsidiaries in order to satisfy applicable statutory or regulatory obligations or as a result of such employee's termination, death or disability.

"**Dollars**" or "**$**" shall mean lawful money of the United States of America.

"**Domestic Subsidiary**" shall mean any Subsidiary that is organized under the Laws of the United States, any state thereof or the District of Columbia.

~~"**Dutch Auction**" shall mean an auction conducted by the Borrower in order to purchase Term Loans as contemplated by Section 10.04(k), in accordance in all material respects with the procedures set forth in Exhibit K.~~

~~"**Dutch Subsidiary**" shall mean any Subsidiary that is organized under the Laws of the Netherlands or any state or province thereof.~~

"**Eligible Assignee**" shall mean (i) a Lender, (ii) an Affiliate of a Lender, (iii) a Related Fund of a Lender, and (iv) any other Person (other than a natural person) ~~approved by the Administrative Agent~~; *provided* that, notwithstanding the foregoing, "**Eligible Assignee**" shall not include the Borrower or any other Controlled Affiliate of the Borrower ~~(it being understood that assignments to the Borrower may only be made pursuant to Section 10.04(k))~~.

"**Environmental Laws**" shall mean all federal, state, <u>provincial, territorial,</u> local and foreign laws (including common law), treaties, regulations, rules, ordinances, codes, decrees, judgments, directives, orders (including consent orders), and agreements in each case, relating to protection of the environment, natural resources, human health and safety (with respect to exposure to hazardous or toxic substances or wastes) or the presence, Release of, or exposure to, hazardous or toxic substances or wastes, or the generation, manufacture, processing, distribution, use, treatment, storage, transport, recycling or handling of, or the arrangement for such activities with respect to, hazardous or toxic substances or wastes.

"**Environmental Liability**" shall mean all liabilities, obligations, damages, losses, claims, actions, suits, judgments, orders, fines, penalties, fees, expenses and costs (including administrative oversight costs, capital and operating costs, injunctive relief, costs associated with financial assurance,

permitting or closure requirements, natural resource damages and investigation or remediation costs), whether contingent or otherwise, arising out of or relating to (a) compliance or non-compliance with any Environmental Law, (b) the generation, use, handling, transportation, storage, treatment or disposal of any Hazardous Materials, (c) exposure to any Hazardous Materials, (d) the Release of any Hazardous Materials or (e) any contract, agreement or other consensual arrangement pursuant to which liability is assumed or imposed with respect to any of the foregoing.

"**Environmental Permit**" means any permit, approval, identification number, license or other authorization required under any Environmental Law.

"**Equity Interests**" shall mean, with respect to any Person, all of the shares, interests, rights, participations or other equivalents (however designated) of capital stock of (or other ownership or profit interests or units in) such Person and all of the warrants, options or other rights for the purchase, acquisition or exchange from such Person of any of the foregoing (including through convertible securities) but excluding in each case any debt security that is convertible into, or exchanged for, Equity Interests.

"**ERISA**" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time.

"**ERISA Affiliate**" shall mean any Person, any trade or business (whether or not incorporated) that, together with a Loan Party or any ~~Restricted~~ Subsidiary, is or, within the ~~six years~~six-year period immediately preceding the ~~Original~~Postpetition B-2 Facility Closing Date, was treated as a single employer under Section 414(b) or (c) of the Code, or, solely for purposes of Section 302 of ERISA and Section 412 of the Code, is treated as a single employer under Section 414 of the Code.

"**ERISA Event**" shall mean (a) a Reportable Event; (b) the failure to satisfy the minimum funding standard with respect to a Pension Plan within the meaning of Sections 412 or 430 of the Code or Sections 302 or 303 of ERISA, whether or not waived (unless such failure is corrected by the final due date for the plan year for which such failure occurred), (c) a determination that a Pension Plan is, or is expected to be, in "at risk" status (as defined in Section 303(i)(4) of ERISA or Section 430(i)(4) of the Code); (d) the receipt by a Loan Party, any ~~Restricted~~ Subsidiary or any of their respective ERISA Affiliates of notice pursuant to Section 305(b)(3)(D) of ERISA that a Multiemployer Plan is or will be in "endangered status" or "critical status" (as defined in Section 305(b) of ERISA), or is, or is expected to be, "insolvent" (within the meaning of Section 4245 of ERISA); (e) the filing pursuant to Section 431 of the Code or Section 304 of ERISA of an application for the extension of any amortization period; (f) the failure to timely make a contribution required to be made with respect to any Pension Plan or Multiemployer Plan; (g) the filing of a notice to terminate any Pension Plan if such termination would require material additional contributions in order to be considered a standard termination within the meaning of Section 4041(b) of ERISA; (h) the filing under Section 4041(c) of ERISA of a notice of intent to terminate any Pension Plan or the termination of any Pension Plan under Section 4041(c) of ERISA; (i) the filing pursuant to Section 412(c) of the Code or Section 302(c) of ERISA of an application for a waiver of the minimum funding standard with respect to any Pension Plan; (j) the incurrence by a Loan Party, any ~~Restricted~~ Subsidiary or any of their respective ERISA Affiliates of any liability under Title IV of ERISA with respect to the termination of any Pension Plan; (k) the receipt by a Loan Party, any ~~Restricted~~ Subsidiary or any of their respective ERISA Affiliates from the PBGC or a plan administrator of any notice of an intention to terminate any Pension Plan or Pension Plans or to appoint a trustee to administer any Pension Plan under Section 4042 of ERISA; (l) the receipt by a Loan Party, any ~~Restricted~~ Subsidiary or any of their respective ERISA Affiliates of any notice, or the receipt by any Multiemployer Plan from a Loan Party, any ~~Restricted~~ Subsidiary or any of their respective ERISA Affiliates of any notice, concerning the imposition of Withdrawal Liability; (m) the occurrence of

any event or condition that would reasonably be expected to result in the termination of a Pension Plan or the appointment of a trustee to administer a Pension Plan; (~~o~~n) the occurrence of a nonexempt prohibited transaction (within the meaning of Section 406 of ERISA or Section 4975 of the Code) with respect to any Plan which could result in liability to a Loan Party or any ~~Restricted~~ Subsidiary or with respect to which a Loan Party or any ~~Restricted~~ Subsidiary is a "disqualified person" (as defined in Section 4975 of the Code) or a "party in interest" (as defined in Section 3(14) of ERISA); (~~p~~o) the incurrence of any liability with respect to any Pension Plan or Multiemployer Plan under Title IV of ERISA (other than premiums due and not delinquent under Section 4007 of ERISA); ~~or~~ (~~q~~p) engagement in any transaction that could be subject to Sections 4069 or 4212(c) of ERISA~~.~~; or (q) the PBGC or any Multiemployer Plan indicates its intention to file an action, suit, litigation or proceeding (including in the Chapter 11 Orders) (x) contesting the Transactions, this Agreement or any of the other Loan Documents or the sale of the Collateral in accordance with the Chapter 11 Orders, (y) that materially impairs the value of any Collateral constituting real property interests and Rolling Stock of the Loan Parties or (z) that would reasonably be expected to prevent or materially delay the sale of the Collateral in accordance with the Chapter 11 Orders.

"**Event of Default**" shall have the meaning assigned to such term in Article 8.

~~"**Excess Cash Flow**" shall mean, for any period, an amount equal to:~~

~~(a) the sum, without duplication, of:~~

~~(i)      Consolidated Net Income for such period,~~

~~(ii)     an amount equal to the amount of all non-cash charges to the extent deducted in arriving at such Consolidated Net Income,~~

~~(iii)    decreases in Consolidated Working Capital for such period (other than any such decreases arising from acquisitions or dispositions by the Borrower and its Restricted Subsidiaries completed during such period),~~

~~(iv)     cash receipts in respect of Swap Contracts during such period to the extent such receipts were not otherwise included in arriving at such Consolidated Net Income,~~

~~(v)      the amount of tax expense deducted in determining Consolidated Net Income for such period to the extent it exceeds the amount of cash taxes paid in such period,~~

~~(vi)     an amount equal to the aggregate~~ net non-cash loss on Dispositions by the Borrower and its Restricted Subsidiaries during such period (other than Dispositions in the ordinary course of business) to the extent deducted in arriving at such Consolidated Net Income,

~~minus~~

~~(b) the sum, without duplication, of:~~

~~(i)      an amount equal to the amount of all non-cash credits included in arriving at such Consolidated Net Income,~~

~~(ii)     the amount of Capital Expenditures made in cash during such period (or committed to be made within 90 days after the end of such period) to the extent financed with Internally Generated Cash,~~

(iii)    the aggregate amount of payments made in cash during such period (or committed to be paid in cash within 90 days after the end of such period) (other than Capital Expenditures) and capitalized in accordance with GAAP to the extent financed with Internally Generated Cash,

(iv)    the aggregate amount of all principal payments of Indebtedness of the Borrower and its Restricted Subsidiaries during such period, in each case to the extent financed with Internally Generated Cash (including (A) the principal component of payments in respect of Capitalized Leases and (B) voluntary prepayments or buybacks of Term Loans made pursuant to Section 10.04(k) (in an amount equal to the discounted amount actually paid in respect of the principal amount of such Term Loans), but excluding (W) all voluntary prepayments of Term Loans (other than voluntary prepayments made pursuant to Section 10.04(k)), (X) all prepayments of Indebtedness on the Restatement Effective Date in connection with the Refinancing Transactions, (Y) all prepayments, redemptions or repurchases in respect of (i) Permitted Junior Priority Additional Debt (or any Permitted Refinancing thereof), except to the extent permitted under Section 7.13(a) and (ii) Junior Financing, except to the extent permitted under Section 7.13(a) and (Z) all prepayments of loans under the ABL Facility or any other revolving credit facility made during such period unless there is a corresponding permanent commitment reduction in connection therewith (it being agreed that any amount excluded pursuant to clause (W), (X), (Y) or (Z) may not be deducted under any other clause of this definition),

(v)    an amount equal to the aggregate net non-cash gain on Dispositions by the Borrower and its Restricted Subsidiaries during such period (other than Dispositions in the ordinary course of business) to the extent included in arriving at such Consolidated Net Income,

(vi)    increases in Consolidated Working Capital for such period (other than any such increases arising from acquisitions or dispositions by the Borrower and its Restricted Subsidiaries during such period),

(vii)    cash payments by the Borrower and its Restricted Subsidiaries during such period in respect of long-term liabilities of the Borrower and its Restricted Subsidiaries other than Indebtedness and that were made with Internally Generated Cash and were not deducted or were excluded in calculating Consolidated Net Income,

(viii)    the amount of Investments and acquisitions made during such period (or committed to be made within 90 days after the end of such period) in cash pursuant to Section 7.02 (other than Section 7.02(a) or (c)) (net of the cash return on any such Investments received during such period, except to the extent such return was included in the determination of Consolidated Net Income) to the extent that such Investments and acquisitions were not expensed and were financed with Internally Generated Cash,

(ix)    the amount of cash taxes paid in such period (or reasonably expected to be paid within 90 days of the end of such period) to the extent they exceed the amount of tax expense deducted in determining Consolidated Net Income for such period (which amounts shall be included in the calculation of Excess Cash Flow for the period in which they are expensed),

(x)    cash expenditures in respect of Swap Contracts during such fiscal year to the extent such expenditures were not deducted or were excluded in arriving at such Consolidated Net Income, and

(xi)    the aggregate amount of Restricted Payments made in cash permitted by Section 7.06(d)(i) during such period (or committed to be made or paid in cash within the next 90 days after the end of such period).

Notwithstanding anything in the definition of any term used in the definition of Excess Cash Flow to the contrary, (i) all components of Excess Cash Flow shall be computed for the Borrower and its Restricted Subsidiaries on a consolidated basis and (ii) for purposes of calculating Excess Cash Flow for any period with respect to each Permitted Acquisition or other Investment of all or substantially all of the assets of another Person or business line permitted hereby consummated during such Excess Cash Flow Period and for the purposes of calculating Consolidated Working Capital, the (A) total assets of a target of such Permitted Acquisition or other Investment of all or substantially all of the assets of another Person or business line permitted hereby (other than cash and Cash Equivalents), as calculated as at the date of consummation of the applicable Permitted Acquisition or other Investment of all or substantially all of the assets of another Person or business line permitted hereby, which may properly be classified as current assets on a consolidated balance sheet of Borrower and its Restricted Subsidiaries in accordance with GAAP (assuming, for the purpose of this clause (A), that such Permitted Acquisition or other Investment of all or substantially all of the assets of another Person or business line permitted hereby has been consummated) and (B) the total liabilities of Borrower and its Restricted Subsidiaries, as calculated as at the date of consummation of the applicable Permitted Acquisition or other Investment of all or substantially all of the assets of another Person or business line permitted hereby, which may properly be classified as current liabilities (other than the current portion of any long term liabilities and accrued interest thereon) on a consolidated balance sheet of Borrower and its Restricted Subsidiaries in accordance with GAAP (assuming, for the purpose of this clause (B), that such Permitted Acquisition or other Investment of all or substantially all of the assets of another Person or business line permitted hereby has been consummated), shall, in the case of both immediately preceding clauses (A) and (B), be calculated as the difference between the Consolidated Working Capital at the end of the applicable period from the date of consummation of the Permitted Acquisition or other Investment of all or substantially all of the assets of another Person or business line permitted hereby. To the extent any amounts that are committed to be made or paid or are reasonably expected to be paid as permitted by clause (b) of the definition of Excess Cash Flow in respect of any period, such amounts shall not be deducted again for purposes of calculating Excess Cash Flow for the period in which such amounts are actually paid.

"**Excess Cash Flow Period**" shall mean each fiscal year of the Borrower commencing with the fiscal year ending December 31, 2019, but in all cases for purposes of calculating the Cumulative Retained Excess Cash Flow Amount shall only include such fiscal years for which financial statements and a Compliance Certificate have been delivered in accordance with Sections 6.01(a) and 6.02(a), respectively, and for which any prepayments required by Section 2.13(a)(i) (if any) have been made (it being understood that the Retained Percentage of Excess Cash Flow for any Excess Cash Flow Period shall be included in the Cumulative Retained Excess Cash Flow Amount regardless of whether a prepayment is required by Section 2.13(a)(i), except to the extent that a prepayment is not made in reliance on Section 2.13(f), in which case the Cumulative Retained Excess Cash Flow Amount shall be reduced by the Retained Percentage of the Excess Cash Flow for which the Applicable ECF Percentage has not been applied to make a prepayment pursuant to Section 2.13(a)(i)).

"**Exchange Act**" shall mean the Securities Exchange Act of 1934, as amended.

"**Excluded Account**" means (i) any Deposit Account specifically and exclusively used for payroll, payroll taxes and other employee wage and benefit payments to or for the benefit of Loan Parties' salaried employees, (ii) any petty cash account to the extent the balance therein does not exceed (x) $1,000,000 in the aggregate for more than five (5) Business Days, and/or (y) $5,000,000 in the aggregate for more than one (1) Business Day, (iii) any zero balance account, (iv) any account specifically and exclusively used to maintain cash collateral required pursuant to the ABL Credit

~~Agreement, (v) any escrow account, (vi) the UST Tranche A Controlled Account and (vii) the UST Tranche B Controlled Account.~~

"**Excluded Property**" shall have the meaning provided in the DIP Order.

"**Excluded** ~~Foreign~~ **Subsidiary**" shall mean ~~any Foreign Subsidiary (other than any Canadian Subsidiary or Dutch Subsidiary) of the Borrower that does not individually have total assets or revenues (for the period of four fiscal quarters most recently ended) that exceed 3.0% of the Borrower's total assets or revenues as of the end of each fiscal quarter (in the case of revenues, for the period of four fiscal quarters ending on such date); provided that the aggregate amount of assets or revenues (for the period of four fiscal quarters most recently ended) of such Subsidiaries shall not at any time exceed 7.0% of the Borrower's~~ (i) Yellow Freight Corporation, a Delaware corporation, and (ii) each Subsidiary of the Borrower listed on Schedule 1.01(b); provided that, if as of the end of any calendar month, (x) any such Subsidiary, individually, comprises more than 1.0% of the Borrower and its Subsidiaries' total assets or ~~revenues~~liquidity as of the end of ~~each fiscal quarter (in the case of revenues, for the period of four fiscal quarters ending on such date); provided~~ further that if, as of the date the financial statements for any fiscal quarter of the Borrower are delivered or required to be delivered hereunder, the consolidated assets or revenues of all Excluded Foreign Subsidiaries shall have, as of the last day of such fiscal quarter, exceeded the limits set forth above, then within sixty (60) days (or such later date as agreed by the Administrative Agent and the Required Lenders in their reasonable discretion) after the date such financial statements are so delivered (or so required to be delivered)~~such calendar month, such Subsidiaries shall no longer constitute Excluded Subsidiaries, and shall be required to become a Loan Party pursuant to Section 6.11 or (y) such Subsidiaries, in the aggregate, comprise more than 3.0% of the Borrower and its Subsidiaries' total assets or liquidity as of the end of such calendar month, the Borrower shall ~~cause~~designate one or more ~~Foreign~~such Subsidiaries ~~to comply with Section 6.11 such that, as a result thereof, the consolidated assets and revenues of all Excluded Foreign Subsidiaries do not exceed such limits. For the avoidance of doubt, no Canadian Subsidiary or Dutch Subsidiary shall constitute an Excluded Foreign Subsidiary.~~as not being Excluded Subsidiaries as may be necessary such that the foregoing aggregate percentage limit shall not be exceeded, and any such Subsidiaries so designated shall be required to become Loan Parties pursuant to Section 6.11.

~~"**Excluded Property**" shall have the meaning assigned to such term in the Security Agreement.~~

"~~**Excluded Real Property**~~**Existing Defaults**" shall mean ~~any Real Property set forth on Schedule 1.01(a)~~all Defaults or Events of Default in existence on or prior to the Postpetition B-2 Facility Closing Date.

~~"**Excluded Subsidiary**" shall mean (a) any bona fide joint venture formed after the Restatement Effective Date with any Person that is not an Affiliate of any Loan Party, (b) any Immaterial Subsidiary, (c) any Subsidiary that is prohibited by applicable Law whether or not existing on the Restatement Effective Date or Contractual Obligations existing on the Restatement Effective Date (or, in the case of any newly acquired Subsidiary, in existence at the time of acquisition but not entered into in contemplation thereof) from Guaranteeing the Obligations or if Guaranteeing the Obligations would require governmental (including regulatory) consent, approval, license or authorization (unless such contractual obligation is waived or otherwise removed or such consent, approval, license or authorization has been obtained), (d) any other Subsidiary with respect to which, in the reasonable judgment of the Administrative Agent (at the direction of the Required Lenders), in consultation with the Borrower, the burden or cost or other consequences (other than adverse tax consequences) of providing a Guarantee of the Obligations shall be excessive in view of the benefits to be obtained by the Lenders therefrom, (e) any other Subsidiary with respect to which, in the reasonable judgment of the Borrower, the tax consequences of providing a Guarantee could be adverse in consultation the Administrative Agent~~

~~(provided that the Borrower shall give notice of such determination to the Required Lenders and, at the request of the Required Lenders, shall consult with the Required Lenders), (f) any Excluded Foreign Subsidiary of the Borrower, and (g) any captive insurance company or non-profit Subsidiary; provided that no Person shall be an Excluded Subsidiary to the extent it guarantees or pledges any of its assets to secure, directly or indirectly, any other Indebtedness of any Loan Party in excess of the Threshold Amount; provided, further, that in the event that any Excluded Subsidiary guarantees or otherwise becomes an obligor under any Indebtedness, the aggregate principal amount of which exceeds the Threshold Amount, then such Excluded Subsidiary shall, notwithstanding the foregoing, no longer constitute an Excluded Subsidiary, and shall become a Loan Party hereunder. If any Guarantor becomes an Excluded Subsidiary pursuant to clause (a) of the definition of Excluded Subsidiary, such Guarantor shall only be permitted to be released from its Guarantee so long as the fair market value of any and all Investments then held by the Loan Parties in such Person are permitted as an Investment under Section 7.02(e)(iii) and Section 7.02(p) at the time such Person becomes an Excluded Subsidiary pursuant to clause (a) of the definition of "Excluded Subsidiary".~~

~~"**Existing Credit Agreement**" shall have the meaning assigned to such term in the recitals.~~

~~"**Existing Eurodollar Term Loans**" shall have the meaning assigned to such term in Amendment No. 3.~~

"**Existing Loan Documents**" shall have the meaning assigned to such term in Section ~~1.14~~1.12.

~~"**Exit Fee**" shall have the meaning assigned to such term in Section 2.05(e).~~

~~"**Extended Term Loans**" shall have the meaning assigned to such term in Section 2.19(a).~~

~~"**Extension**" shall have the meaning assigned to such term in Section 2.19(a).~~

~~"**Extension Amendment**" shall have the meaning assigned to such term in Section 2.19(e).~~

~~"**Extension Offer**" shall have the meaning assigned to such term in Section 2.19(a).~~

"**Facility**" shall mean the ~~Tranche B-2~~Prepetition Term Loans, the ~~Extended Term~~Initial Postpetition Loans, the Second Postpetition Loans or the ~~Other Term~~Final Postpetition Loans, as the context may require.

"**FATCA**" shall mean Sections 1471 through 1474 of the Code, as in effect on the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date (or any amended or successor version that is substantively comparable and not materially more onerous to comply with), any current or future regulations or official interpretations thereof, any agreements entered into pursuant to Section 1471(b)(1) of the Code and any fiscal or regulatory legislation, rules or practices adopted pursuant to any intergovernmental agreement, treaty or convention among Governmental Authorities entered into in connection with the implementation of the foregoing.

"**Federal Funds Effective Rate**" shall mean, for any day, the weighted average of the rates on overnight Federal funds transactions with members of the Federal Reserve System, as published on the next succeeding Business Day by the Federal Reserve Bank of New York, or, if such rate is not so published for any day that is a Business Day, the average of the quotations for the day for such transactions received by the Administrative Agent from three Federal funds brokers of recognized standing selected by it.

"~~**Fee Letter**~~" ~~shall mean the Fee Letter dated as of the Restatement Effective Date by and between the Borrower and Apollo.~~

"**Fees**" shall have the meaning assigned to such term in <u>Section 2.05</u>.

"**Final Order**" means the final order of the Bankruptcy Court pursuant to Section 364 of the Bankruptcy Code approving the Agreement and the other Loan Documents with respect to the Loan Parties, in form and substance satisfactory to the Lenders (and with respect to any provisions that affect the rights or duties of any Agent, such Agent) as the same may be amended, modified or supplemented from time to time with the express written joinder or consent of the Lenders and the Junior DIP Lenders (and with respect to amendments, modifications or supplements that affect the rights or duties of any Agent, such Agent).

"**Final Order Entry Date**" means the date on which the Final Order shall have been entered on the docket of the Bankruptcy Court.

"**Final Postpetition Commitment**" means, as to each Lender, its obligations to make Final Postpetition Loans to the Borrower pursuant to Section 2.01(b) in an aggregate principal amount not to exceed the amount set forth opposite such Lender's name on Appendix C under the caption "Final Postpetition Commitment." The aggregate amount of the Final Postpetition Commitments on the Postpetition B-2 Facility Closing Date was $31,578,947.37.

"~~**First Lien Term Priority Accounts**~~" ~~shall have the meaning assigned to the term "Non UST Tranche B Priority Accounts" in the ABL Intercreditor Agreement.~~

"~~**First Lien Term Priority Collateral**~~" ~~shall have the meaning assigned to the term "Non UST Tranche B Term Priority Collateral" in the ABL Intercreditor Agreement.~~

"~~**Flood Laws**~~" ~~shall mean the National Flood Insurance Reform Act of 1994 and related legislation (including the regulations of the Board).~~

"~~**Floor**~~" ~~shall mean the rate per annum of interest equal to one percent (1.00%).~~

"~~**Forecast Date**~~" ~~shall have the meaning assigned to such term in Amendment No. 1.~~

"~~**Foreign Disposition**~~" ~~shall have the meaning set forth in~~**Final Postpetition Loan**" means a term loan made on or after the Final Order Entry Date pursuant to Section ~~2.13~~2.02(~~b~~c).

"**First Day Orders**" shall mean all "first day orders" with respect to the Chapter 11 Cases, including the cash management orders, in form and substance satisfactory to the Lenders (and with respect to any provisions that affect the rights or duties of any Agent, such Agent), as the same may be amended, modified or supplemented from time to time with the express written joinder or consent of the Lenders (and with respect to amendments, modifications or supplements that affect the rights or duties of any Agent, such Agent) (it being agreed that all such orders in effect as of the Amendment No. 4 Effective Date are satisfactory to the Lenders and the Agents).

"**Foreign Subsidiary**" shall mean any direct or indirect Subsidiary of the Borrower which is not a Domestic Subsidiary.

"**FTI**" means FTI Consulting, Inc.

"**FTI Engagement Letter**" means the engagement letter dated August 31, 2023, whereby the Debtors agree to pay the fees and expenses of FTI, as financial advisor to certain Lenders.

"**GAAP**" shall mean generally accepted accounting principles in the United States of America, as in effect from time to time, subject to Section 1.11; *provided, however*, that if the Borrower notifies the Administrative Agent that the Borrower requests an amendment to any provision hereof to eliminate the effect of any change occurring after the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date in GAAP or in the application thereof on the operation of such provision (or if the Administrative Agent notifies the Borrower that the ~~Required~~ Lenders request an amendment to any provision hereof for such purpose), regardless of whether any such notice is given before or after such change in GAAP or in the application thereof, then such provision shall be interpreted on the basis of GAAP as in effect and applied immediately before such change shall have become effective until such notice shall have been withdrawn or such provision amended in accordance herewith.

"**Governmental Authority**" shall mean any nation or government, any state, provincial, territorial or other political subdivision thereof, any agency, authority, instrumentality, regulatory body, court, administrative tribunal, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including, without limitation, the U.S. Treasury).

"**Granting Lender**" shall have the meaning assigned to such term in Section 10.04(i).

"**Guarantee**" shall mean, as to any Person, without duplication, (a) any obligation, contingent or otherwise, of such Person guaranteeing or having the economic effect of guaranteeing any Indebtedness or other monetary obligation payable or performable by another Person (the "**primary obligor**") in any manner, whether directly or indirectly, and including any obligation of such Person, direct or indirect, (i) to purchase or pay (or advance or supply funds for the purchase or payment of) such Indebtedness, (ii) to purchase or lease property, securities or services for the purpose of assuring the obligee in respect of such Indebtedness of the payment or performance of such Indebtedness, (iii) to maintain working capital, equity capital or any other financial statement condition or liquidity or level of income or cash flow of the primary obligor so as to enable the primary obligor to pay such Indebtedness, or (iv) entered into for the purpose of assuring in any other manner the obligee in respect of such Indebtedness of the payment or performance thereof or to protect such obligee against loss in respect thereof (in whole or in part), or (b) any Lien on any assets of such Person securing any Indebtedness of any other Person, whether or not such Indebtedness is assumed by such Person (or any right, contingent or otherwise, of any holder of such Indebtedness to obtain any such Lien); *provided* that the term "Guarantee" shall not include (i) endorsements for collection or deposit, in either case in the ordinary course of business, (ii) customary and reasonable indemnity obligations in effect on the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date or entered into in connection with any acquisition or disposition of assets permitted under this Agreement (other than such obligations with respect to Indebtedness) or (iii) product warranties. The amount of any Guarantee shall be deemed to be an amount equal to the stated or determinable amount of the related primary obligation, or portion thereof, in respect of which such Guarantee is made or, if not stated or determinable, the maximum reasonably anticipated liability in respect thereof as determined by the guaranteeing Person in good faith.  The term "**Guarantee**" as a verb has a corresponding meaning.

"**Guaranteed Obligations**" shall have the meaning specified in Section 11.01.

"~~**Guarantors**~~" ~~shall mean (i) each Domestic Subsidiary of the Borrower as of the Restatement Effective Date (other than an Excluded Subsidiary), (ii) each Canadian Subsidiary and Dutch Subsidiary of the Borrower that issues a Guarantee of the Obligations after the Restatement Effective Date pursuant~~

~~to Schedule 6.13(a) and (iii) each Subsidiary that issues a Guarantee of the Obligations after the Restatement Effective Date pursuant to Section 6.11 (which Section 6.11, for the avoidance of doubt, does not require that any Excluded Subsidiary provide such a Guarantee) or otherwise. For avoidance of doubt, the Borrower may cause any Restricted Subsidiary that is not (and is not required to be) a Guarantor to Guarantee the Obligations by causing such Restricted Subsidiary to execute a joinder to this Agreement in form and substance reasonably satisfactory to the Administrative Agent, and any such Restricted Subsidiary shall be treated as a Guarantor hereunder for all purposes (each such Subsidiary, an "Electing Guarantor") and may also cause the Guaranty of any such Electing Guarantor, and any Liens securing such Guaranty, to be released upon providing written notice to the Administrative Agent and the Collateral Agent that such Electing Guarantor shall be treated as an Excluded Subsidiary to the extent consistent with the definition of Excluded Subsidiary. The Guarantors as of the Restatement Effective Date are (A) set forth on Schedule 1.01(b) and (B) not Electing Guarantors.~~

"**Guarantors**" shall mean each Subsidiary of the Borrower as of the Petition Date (other than an Excluded Subsidiary).

"**Guaranty**" shall mean, collectively, the guaranty of the Obligations by the Guarantors pursuant to this Agreement.

"**Hazardous Materials**" shall mean (a) any petroleum products, distillates or byproducts and all other hydrocarbons, coal ash, radon gas, asbestos, urea formaldehyde foam insulation, polychlorinated biphenyls, chlorofluorocarbons and all other ozone-depleting substances and (b) any chemical, material, substance or waste that is prohibited, limited or regulated by or pursuant to any Environmental Law.

"~~**IBT**" shall mean the International Brotherhood of Teamsters~~**Hypothecary Representative**" shall have the meaning assigned to such term in Section 10.27.

"~~**IBT Agreement**" shall mean that certain National Master Freight Agreement, effective April 1, 2019, among the IBT, YRC Inc. (formerly, Yellow Transportation, Inc. and Roadway Express, Inc.), USF Holland LLC and New Penn Motor Express LLC, as amended, restated, modified, supplemented, extended, renewed or replaced from time to time.~~

"~~**IBT Extension Agreement**" shall mean that certain Extension of the Agreement for the Restructuring of the YRC Worldwide Inc. Operating Companies, by and among YRC Inc., USF Holland, Inc., New Penn Motor Express, Inc., USF Reddaway and the Teamsters National Freight Industry Negotiating Committee of the IBT.~~

"~~**IBT Transactions**" shall mean the modification and extension through March 31, 2024 or any date thereafter, including pursuant to a subsequent modification, extension, approval and ratification, of the IBT Agreement, and the approval and ratification of the IBT Extension Agreement by the members of the IBT in accordance in all material respects with all applicable laws, rules, regulations and other requirements relating thereto.~~

"~~**Immaterial Subsidiary**" shall mean any Subsidiary of the Borrower that does not individually have total assets or revenues (for the period of four fiscal quarters most recently ended) that exceed 1.0% of the Borrower's total assets or revenues as of the end of each fiscal quarter (in the case of revenues, for the period of four fiscal quarters ending on such date); provided that the aggregate amount of assets or revenues (for the period of four fiscal quarters most recently ended) of such Subsidiaries shall not at any time exceed 2.5% of the Borrower's total assets or revenues as of the end of each fiscal quarter (in the case of revenues, for the period of four fiscal quarters ending on such date); provided further that if, as of the date the financial statements for any fiscal quarter of the Borrower are delivered or required to be~~

~~delivered hereunder, the consolidated assets or revenues of all Restricted Subsidiaries so designated by the Borrower as "Immaterial Subsidiaries" shall have, as of the last day of such fiscal quarter, exceeded the limits set forth above, then within 10 Business Days (or such later date as agreed by the Administrative Agent and the Required Lenders in their reasonable discretion) after the date such financial statements are so delivered (or so required to be delivered), the Borrower shall redesignate one or more Immaterial Subsidiaries, in each case in a written notice to the Required Lenders and Administrative Agent, such that, as a result thereof, the consolidated assets and revenues of all Restricted Subsidiaries that are still designated as "Immaterial Subsidiaries" do not exceed such limits. Upon any such Restricted Subsidiary ceasing to be an Immaterial Subsidiary pursuant to the preceding sentence, such Restricted Subsidiary, to the extent not otherwise qualifying as an Excluded Subsidiary, shall comply with Section 6.11, to the extent applicable.~~

"**Indebtedness**" shall mean, as to any Person at a particular time, without duplication and without reference to what constitutes indebtedness or a liability in accordance with GAAP, all of the following:

(a)    all obligations of such Person for borrowed money and all obligations of such Person evidenced by bonds, debentures, notes, loan agreements or other similar instruments;

(b)    the maximum amount (after giving effect to any prior drawings or reductions which may have been reimbursed) of all outstanding letters of credit (including standby and commercial), bankers' acceptances, bank guaranties, surety bonds, performance bonds and similar instruments issued or created by or for the account of such Person;

(c)    net obligations of such Person under any Swap Contract;

(d)    all obligations of such Person to pay the deferred purchase price of property or services;

(e)    indebtedness (excluding prepaid interest thereon) described in clauses (a) through (d) and (f) through (h) secured by a Lien on property owned or being purchased by such Person (including indebtedness arising under conditional sales or other title retention agreements and mortgage, industrial revenue bond, industrial development bond and similar financings), whether or not such indebtedness shall have been assumed by such Person or is limited in recourse;

(f)    all Attributable Indebtedness;

(g)    all obligations of such Person to purchase, redeem, retire or otherwise acquire for value any Disqualified Equity Interests (but solely to the extent required to occur on or prior to the ~~Latest~~ Maturity Date (other than as a result of a change of control, asset sale or similar event)); and

(h)    to the extent not otherwise included above, all Guarantees of such Person in respect of any of the foregoing.

For all purposes hereof, the Indebtedness of any Person (i) shall include the Indebtedness of any partnership or joint venture (other than a joint venture that is itself a corporation or limited liability company) in which such Person is a general partner or joint venturer, except to the extent such Person's liability for such Indebtedness is otherwise expressly contractually limited and only to the extent such Indebtedness would be included in the calculation of Consolidated Total Debt and (ii) shall exclude (A) trade accounts payable in the ordinary course of business, (B) any earn-out obligation until such earn-out obligation has become due and payable, (C) any ~~current and undeferred~~ pension contributions or health and welfare contributions due from such Person and/or its applicable Subsidiaries to any Pension Fund

Entity, (D) liabilities accrued in the ordinary course, (E) deferred revenues, liabilities associated with customer prepayments and deposits and any such obligations incurred under ERISA, and other accrued obligations (including transfer pricing), in each case incurred in the ordinary course of business, (F) operating leases, (G) customary obligations under employment agreements and deferred compensation and (H) deferred tax liabilities.  The amount of any net obligation under any Swap Contract on any date shall be deemed to be the Swap Termination Value thereof as of such date.  The amount of Indebtedness of any Person for purposes of clause (e) that is limited in recourse to the property encumbered thereby shall be deemed to be equal to the lesser of (i) the aggregate unpaid amount of such Indebtedness and (ii) the fair market value of the property encumbered thereby as determined by such Person in good faith.

"**Indemnified Taxes**" shall have the meaning assigned to such term in Section 3.01(a).

"**Indemnitee**" shall have the meaning assigned to such term in Section 10.05(b).

"**Information**" shall have the meaning assigned to such term in Section 10.16.

"**Information Officer**" shall mean the information officer appointed by the Canadian Court in the Canadian Recognition Proceedings.

"**Initial Budget**" shall mean the initial 13-week consolidated weekly operating budget of the Borrower and its Subsidiaries setting forth projected operating receipts, ~~vendor~~operating disbursements, professional fees, net operating cash flow and Liquidity for the periods described therein prepared by management of the Borrower (and in consultation with the Borrower's Operational Advisor), covering the period commencing on or about the ~~Amendment No. 3 Effective~~Postpetition B-2 Facility Closing Date ~~in form~~ and ~~substance acceptable~~attached to the ~~Required Lenders~~Interim Order.

"**Initial Postpetition Commitment**" means, as to each Lender, its obligations to make Initial Postpetition Loans to the Borrower on the Postpetition B-2 Facility Closing Date pursuant to the DIP Term Sheet in an aggregate principal amount not to exceed the amount set forth opposite such Lender's name on Appendix A under the caption "Initial Postpetition Commitment". The aggregate amount of the Initial Postpetition Commitments immediately prior to the making of the Initial Postpetition Loans on the Postpetition B-2 Facility Closing Date was $42,105,263.16.

"**Initial Postpetition Loan**" means a term loan made on the Postpetition B-2 Facility Closing Date pursuant to Section 2.01(b).

"**Interim Order**" means the interim order attached hereto as Exhibit D, as the same may be amended, modified or supplemented from time to time with the express written joinder or consent of the Lenders (and with respect to amendments, modifications or supplements that affect the rights or duties of any Agent, such Agent).

"**Intercompany Note**" shall mean a promissory note substantially in the form of Exhibit E.

"**Interest Payment Date**" shall mean the last Business Day of each calendar month (commencing with Thursday, August 31, 2023).

"**Intellectual Property Security Agreement**" shall have the meaning assigned to ~~such~~the term "Grant of Security Interest" in the Security Agreement.

~~"**Intercompany Note**" shall mean (i) for existing promissory notes as of the Restatement Effective Date, each promissory note (or amended and restated promissory note) with subordination~~

language reasonably acceptable to the Required Lenders and (ii) for promissory notes issued after the Restatement Effective Date, a promissory note substantially in the form of Exhibit E.

"**Intercreditor Agreement**" shall include all permitted intercreditor agreements (including the ABL Intercreditor Agreement and any Junior Lien Intercreditor Agreement).

"**Interest Payment Date**" shall mean (a) with respect to any ABR Loan, the last Business Day of each March, June, September and December, and (b) with respect to any SOFR Loan, the last day of the Interest Period applicable to the Borrowing of which such Loan is a part and, in the case of a SOFR Borrowing with an Interest Period of more than three months' duration, each day that would have been an Interest Payment Date had successive Interest Periods of three months' duration been applicable to such Borrowing.

"**Interest Period**" shall mean, with respect to any SOFR Borrowing, the period commencing on the date of such Borrowing and ending on the numerically corresponding day (or, if there is no numerically corresponding day, on the last Business Day) in the calendar month that is 1, 3 or 6 months thereafter, as the Borrower may elect; *provided, however*, that (a) if any Interest Period would end on a day other than a Business Day, such Interest Period shall be extended to the next succeeding Business Day unless such next succeeding Business Day would fall in the next calendar month, in which case such Interest Period shall end on the next preceding Business Day, (b) any Interest Period that begins on the last Business Day of a calendar month (or on a day for which there is no numerically corresponding day in the calendar month at the end of such Interest Period) shall end on the last Business Day of the calendar month at the end of such Interest Period and (c) no Interest Period for any Loan shall extend beyond the maturity date of such Loan.  Interest shall accrue from and including the first day of an Interest Period to but excluding the last day of such Interest Period. For purposes hereof, the date of a Borrowing initially shall be the date on which such Borrowing is made and thereafter shall be the effective date of the most recent conversion or continuation of such Borrowing.

"**Internally Generated Cash**" shall mean cash resulting from operations of the Borrower and the Restricted Subsidiaries and not constituting (x) proceeds of the issuance of (or contributions in respect of) Equity Interests, (y) proceeds of Dispositions (other than in the ordinary course of business) and Casualty Events or (z) proceeds of the incurrence of Indebtedness.

"**Investment**" shall mean, as to any Person, any direct or indirect acquisition or investment by such Person, whether by means of (a) the purchase or other acquisition of Equity Interests or debt or other securities of another Person, (b) a loan, advance or capital contribution to, Guarantee or assumption of Indebtedness of, or purchase or other acquisition of any other debt or equity participation or interest in, another Person, including any partnership or joint venture interest in such other Person, or (c) the purchase or other acquisition (in one transaction or a series of related transactions) of all or substantially all of the property and assets or business of another Person or assets constituting a business unit, line of business or division of such Person.  For purposes of covenant compliance, (i) the amount of any Investment shall equal (A) the amount actually invested, without adjustment for subsequent increases or decreases in the value of such Investment <u>minus</u>, except for purposes of calculating the Cumulative Credit, (B) the aggregate amount of dividends, distributions or other payments received in cash in respect of such Investment (including by way of a sale or other disposition of such Investment) but not in excess of the original amount invested and (ii) the fair market value of any and all Investments (which for the avoidance of doubt shall include all debt, equity and other items described in the foregoing provisions of this definition) held by any Loan Party in any Guarantor that becomes an Excluded Subsidiary pursuant to clause (a) of the definition of "Excluded Subsidiary" shall be deemed to be an Investment incurred on

the date such Guarantor becomes an Excluded Subsidiary pursuant to clause (a) of the definition of "Excluded Subsidiary".

"~~**Junior Financing**" shall mean any unsecured Indebtedness incurred by the Borrower or a Guarantor in the form of one or more series of unsecured notes or loans having an outstanding aggregate principal amount of not less than the Threshold Amount and any Subordinated Indebtedness (for greater certainty, not including the ABL Facility Indebtedness, the UST Tranche A Facility Indebtedness or the UST Tranche B Facility Indebtedness).~~

"~~**Junior Financing Documentation**" shall mean any documentation governing any Junior Financing~~**Judgment Currency**" shall have the meaning assigned to such term in Section 2.18.

"**Junior DIP Agent**" means Alter Domus Products Corp., as administrative agent and collateral agent for the Junior DIP Lenders.

"**Junior** ~~Lien Intercreditor~~**DIP Credit** Agreement" ~~shall mean a "junior lien" intercreditor agreement among the Collateral Agent and one or more Junior Lien Representatives for holders of Permitted Junior Priority Additional Debt, in form and substance reasonably satisfactory to the Required~~means the Junior Secured Super-Priority Debtor-in-Possession Credit Agreement, dated as of September 6, 2023, between the Borrower, the guarantors party thereto from time to time, the Junior DIP Lenders and the ~~Borrower~~Junior DIP Agent.

"~~**Junior Lien Representative**" shall mean, with respect to any series of Permitted Junior Priority Additional Debt, the trustee, administrative agent, collateral agent, security agent or similar agent under the indenture or agreement pursuant to which such Indebtedness is issued, incurred or otherwise obtained, as the case may be, and each of their successors in such capacities.~~

"~~**Latest Maturity Date**" shall mean, at any date of determination, the latest maturity or expiration date applicable to any Loan hereunder at such time, including the latest maturity or expiration date of any Tranche B-2 Term Loan, any Other Term Loan or any Extended Term Loan, in each case as extended in accordance with this Agreement from time to time.~~

"**Junior DIP Facility**" means that certain junior secured superpriority term loan credit facility between certain of the Debtors as borrowers and guarantors and MFN Partners, L.P. as lender, providing initial term loan commitments of $42,500,000 and a delayed draw commitment of $70,000,000, as set forth in the Junior DIP Credit Agreement.

"**Junior DIP Lenders**" means the lenders party to the Junior DIP Credit Agreement, from time to time, under and as defined in the Junior DIP Credit Agreement.

"**Junior DIP Liens**" means all Liens on and security interests in the Collateral created in favor of the Junior DIP Agent, for the benefit of the Junior DIP Secured Parties, pursuant to the provisions of the Junior DIP Loan Documents and the DIP Order (and, in the case of the Canadian Collateral, the Canadian Orders).

"**Junior DIP Loan Documents**" means the Junior DIP Credit Agreement, the "Loan Documents" under and as defined in the Junior DIP Credit Agreement and all instruments and documents executed at any time in connection therewith.

"**Junior DIP Obligations**" means the "Obligations" under (and as defined in) the Junior DIP Credit Agreement.

"**Junior DIP Secured Parties**" shall have the meaning assigned to the term "Secured Parties" in the Junior DIP Credit Agreement.

"**Junior DIP Superpriority Claims**" shall have the meaning assigned to such term in the DIP Order.

"**Laws**" shall mean, collectively, all international, foreign, federal, state, provincial, territorial and local laws (including common law), statutes, treaties, rules, guidelines, regulations, ordinances, codes and administrative or judicial precedents or authorities, including the interpretation or administration thereof by any Governmental Authority charged with the enforcement, interpretation or administration thereof, and all applicable administrative orders, directed duties, requests, licenses, authorizations and permits of, requirements, and agreements with, any Governmental Authority.

"~~**Leasehold Property**~~" ~~shall mean any leasehold interest of any Loan Party as lessee under any lease of Real Property.~~

"**Lender**" shall mean each lender from time to time party hereto.  ~~For avoidance of doubt, each Additional Lender is a Lender to the extent any such Person has executed and delivered a Refinancing Amendment, as the case may be, and to the extent such Refinancing Amendment shall have become effective in accordance with the terms hereof and thereof.  As of the Restatement Effective Date, Schedule 2.01~~As of the Postpetition B-2 Facility Closing Date, Appendices A, B and C set forth the name of each Lender with (or which, prior to the making of the relevant New Money Postpetition Term Loans, had) a commitment for New Money Postpetition Term Loans and Appendix D sets forth the name of each Lender who holds Prepetition Term Loans in accordance with Section 2.01(a).

"**Lender Indemnitees**" shall have the meaning assigned to such term in Section 10.05(b).

"**Lien**" shall mean any mortgage, deed of trust, pledge, hypothecation, collateral assignment, deemed trust, deposit arrangement, encumbrance, lien (statutory or other), charge, or preference, priority or other security interest or preferential arrangement of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any easement, right of way or other encumbrance on title to Real Property, and any Capitalized Lease or financing lease having substantially the same economic effect as any of the foregoing).

"**Liquidity**" shall mean, as of any date of determination, the sum of ~~(A)~~ unrestricted cash and Cash Equivalents of the Loan Parties as of such date ~~held in deposit and securities accounts covered by Control Agreements in favor of the Collateral Agent (plus, (i) cash and Cash Equivalents in Deposit Accounts specifically and exclusively used for payroll, payroll taxes and other employee wage and benefit payments to or for the benefit of the Loan Parties' salaried employees and (ii) cash and Cash Equivalents applied by the Loan Parties for cash deposits in connection with trade contracts, in an aggregate amount for clauses (i) and (ii) not to exceed $7,500,000 as of such date) and (B) the aggregate amount of "Availability" under the ABL Credit Agreement (as such term is defined in the ABL Credit Agreement as in effect as of the Amendment No. 3 Effective Date and without giving effect to proviso in such definition) so long the conditions for utilizing have been satisfied (including compliance with any borrowing base thereunder) other than with respect to the delivery of a borrowing request or similar funding notice, which the Borrower is permitted to deliver.  For the avoidance of doubt, Liquidity shall~~

not include cash and Cash Equivalents held in the UST Tranche A Controlled Account or the UST Tranche B Controlled Account.

"**Liquidity Report**" shall have the meaning assigned to such term in Section 6.02(m).

"**Loan**" shall mean any Term Loan.

"**Loan Documents**" shall mean this Agreement (including, without limitation, any amendments to and consents and waivers under this Agreement), the DIP Term Sheet, the DIP Order, the Collateral Documents, the Custodial Administration Agreement, the Agency Fee Letter, the Administrative Fee Letter, each Refinancing Amendment, each Extension Offer and each amendment of any Loan Document in connection therewith, and the Term Notes, if any, executed and delivered pursuant to Section 2.04(e) and each amendment, restatement, supplement or other modification of any Loan Document and all instruments and documents executed at any time in connection therewith.

"**Loan Parties**" shall mean, collectively, the Borrower and each Guarantor.

"**Make-Whole Amount**" means, as of any date of determination, an amount equal to the aggregate amount of interest which would have otherwise been payable on the principal amount of the Obligations repaid or prepaid (or deemed repaid or prepaid in the case of an acceleration or termination of the Obligations) on such date from the date of repayment or prepayment until the Call Date discounted at the Treasury Rate plus 0.50%.

"**Margin Stock**" shall have the meaning assigned to such term in Regulation U.

"**Master Agreement**" shall have the meaning specified in the definition of "**Swap Contract**".

"**Material Adverse Effect**" shall mean a (a) material adverse effect on the business, operations, assets, liabilities (actual or contingent), operating results or financial condition, profits or prospects of the Borrower and its Restricted Subsidiaries, taken as a whole; (b) material adverse effect on the ability of the Loan Parties (taken as a whole) to fully and timely perform their payment obligations under the Loan Documents to which the Borrower or any of the Loan Parties is a party; or (c) material adverse effect on the rights and remedies available to the Lenders, the Administrative Agent or the Collateral Agent under any Loan Document (other than due to the action or inaction of any Agent or any Lender); *provided*, that with respect to the foregoing clause (a), the impacts of COVID-19 on the business, operations, assets, liabilities (actual or contingent), operating results or financial condition of Borrower and its Restricted Subsidiaries, taken as a whole, will be disregarded. "Material Adverse Effect" shall expressly exclude the effect of the filing of the Chapter 11 Cases, the events and conditions resulting from or leading up thereto, the ceasing of operations, the commencement of the Canadian Recognition Proceedings and any action required to be taken under the Loan Documents, the Chapter 11 Orders or the Canadian Orders.

"**Material Real Property**" shall mean each Real Property that is (i) owned in fee by a Loan Party, (ii) located in the United States and (iii) not an Excluded Real Property.

"**Maturity Date**" shall mean, (i) with respect to the Tranche B-2 Term Loans, June 30 the earliest to occur of the following: (i) February 17, 2024 (the "Original Term LoanScheduled Maturity Date"), (ii) with respect to any tranche of Extended Term Loans, the final maturity date as specified in the applicable Extension Offer accepted by the respective Lender or Lenders and (iii) with respect to any Other Term Loans, the final maturity date as specified in the applicable Refinancing Amendment; *provided* that if any such day is not a Business Day, the applicable Maturity Date shall be the Business Day immediately succeeding; provided that the Scheduled Maturity Date may be extended by the Junior

DIP Lenders to May 17, 2024, with the Debtors' consent; *provided*, however, that the Scheduled Maturity Date may not be extended unless and until all Obligations (as defined in the Prepetition UST Tranche A Credit Agreement) and all Obligations (as defined in the Prepetition UST Tranche B Credit Agreement) have been paid in full in cash; (ii) the effective date or the date of the substantial consummation (as defined in section 1102(2) of the Bankruptcy Code) of a Plan of Reorganization that has been confirmed by an order of the Bankruptcy Court; (iii) the date the Bankruptcy Court orders the conversion of the Chapter 11 Case of any of the Loan Parties to a liquidation under Chapter 7 of the Bankruptcy Code; (iv) the date the Bankruptcy Court orders the dismissal of the Chapter 11 Case of any of the Loan Parties; (v) the date of acceleration of the Term Loans or early termination of the Commitments hereunder, including as a result of the occurrence of an Event of Default (other than the Existing Defaults); (vi) the date the Canadian Court orders the appointment of a receiver, interim receiver, trustee or any similar official in respect of any of the Canadian Debtors or the Canadian Collateral (which for certainty does not include the appointment of the Information Officer); or (vii) the date that is 45 calendar days after the Petition Date if the Final Order Entry Date shall not have occurred by such ~~day~~date.

"**Maximum Rate**" shall have the meaning assigned to such term in Section 10.09.

~~"**Minimum Extension Condition**" shall have the meaning assigned to such term in Section 2.19(b).~~

~~"**MNPI**" shall mean material information concerning the Borrower, Subsidiary or Controlled Affiliate of any of the foregoing or their securities that has not been disseminated in a manner making it available to investors generally, within the meaning of Regulation FD under the Securities Act and the Exchange Act. For purposes of this definition, "material information" means information concerning the Borrower, the Subsidiaries or any Controlled Affiliate of any of the foregoing or any of their securities that could reasonably be expected to be material for purposes of the United States Federal and State securities laws and, where applicable, foreign securities laws.~~

"**Moody's**" shall mean Moody's Investors Service, Inc., or any successor thereto.

~~"**Mortgage Policies**" shall have the meaning specified in the definition of "Collateral and Guarantee Requirement."~~

~~"**Mortgaged Property**" shall have the meaning specified in the definition of "Collateral and Guarantee Requirement." The Mortgaged Properties as of the Restatement Effective Date are set forth on Schedule 1.01(c).~~

"**Mortgages**" shall mean, collectively, the mortgages, deeds of trust, trust deeds, hypothecs deeds to secure debt and similar instruments by the Loan Parties in favor or for the benefit of the Collateral Agent on behalf of the Secured Parties creating and evidencing a Lien on a ~~Mortgaged~~Real Property in form and substance reasonably satisfactory to the ~~Required~~ Lenders, the Collateral Agent and the Borrower~~, and any other mortgages executed and delivered pursuant to Section 4.02, 6.11 or 6.13~~; *provided, that*, the Agents and the Lenders agree that no additional Mortgages shall be required or executed following the Petition Date.

"**Multiemployer Plan**" shall mean any multiemployer plan as defined in Section 4001(a)(3) of ERISA subject to the provisions of Title IV of ERISA to which a Loan Party, any ~~Restricted~~ Subsidiary or any of their respective ERISA Affiliates is an "employer" as defined in Section 3(5) of ERISA.

"~~**Net Equity Proceeds**" shall mean 50% of the cash proceeds from the issuance or sale by the Borrower (or contributions in respect) of any Equity Interests issued after the Restatement Effective Date, net of all taxes paid or reasonably estimated to be payable as a result thereof and fees (including investment banking fees and discounts), commissions, costs and other expenses, in each case incurred in connection with such issuance or sale, provided, that, if the amount of any estimated taxes exceeds the amount of taxes actually required to be paid in cash, the aggregate amount of such excess shall constitute Net Proceeds at the time such taxes are actually paid.~~

"**Net Proceeds**" shall mean:

(a)      100% of the cash proceeds actually received by the Borrower or any ~~Restricted~~ Subsidiaries (including any cash payments received by way of deferred payment of principal pursuant to a note or installment receivable or purchase price adjustment receivable or otherwise and including casualty insurance settlements and condemnation and similar awards, but in each case only as and when received) from any Disposition or Casualty Event, net of the following:

(i)      attorneys' fees, accountants' fees, investment banking fees, survey costs, title insurance premiums, and related search and recording charges, transfer taxes, deed or mortgage recording taxes,

(ii)      required debt payments and required payments (including principal amount, premium or penalty, if any, interest, fees and expenses and other amounts) of other obligations that are secured by the applicable asset or property (other than pursuant to the Loan Documents, the Prepetition ABL Facility Documentation (other than, prior to the Discharge of ABL Obligations, in respect of ABL Priority Collateral), the Prepetition UST Tranche A Facility Documentation~~,~~ (other than, prior to the Discharge of UST Tranche A Obligations, in respect of the Prepetition UST Tranche A Only Collateral)~~,~~ and the Prepetition UST Tranche B Facility Documentation~~,~~ (other than, prior to the Discharge of UST Tranche B Obligations, in respect of the Prepetition UST Tranche B Priority Collateral and the Prepetition UST Tranche B Only Collateral ~~or any Permitted Junior Priority Additional Debt~~),

(iii)      [reserved],

(iv)      ~~in the case of any Disposition or Casualty Event by a non-wholly owned Restricted Subsidiary, the pro rata portion of the Net Proceeds thereof (calculated without regard to this clause (iv)) attributable to minority interests and not available for distribution to or for the account of the Borrower or a wholly owned Restricted Subsidiary as a result thereof,~~[reserved],

(v)      taxes paid or reasonably estimated to be payable as a result thereof (provided, that if the amount of any such estimated taxes exceeds the amount of taxes actually required to be paid in cash in respect of such Disposition or Casualty Event, the aggregate amount of such excess shall constitute Net Proceeds at the time such taxes are actually paid),

(vi)      the amount of any reasonable reserve established in accordance with GAAP against any adjustment to the sale price or any liabilities (other than any taxes deducted pursuant to clause (i) or (v) above) (x) related to any of the applicable assets and (y) retained by the Borrower or any of the ~~Restricted~~ Subsidiaries with respect to the assets subject to the Disposition or Casualty Event including, without limitation, liabilities related to environmental matters or against any indemnification obligations (however, the amount of any subsequent reduction of such reserve (other than in connection with a payment in respect of any such liability) shall be deemed to be Net Proceeds of such Disposition or Casualty Event occurring on the date of such reduction), and

(vii)    any funded escrow established pursuant to the documents evidencing any such sale or disposition to secure any indemnification obligations or adjustments to the purchase price associated with any such sale or disposition; and

~~*provided,* that if no Event of Default exists such proceeds, other than Real Property Disposition Proceeds, may be applied by the Borrower or any Restricted Subsidiary to acquire, maintain, develop, construct, improve, upgrade or repair assets useful in the business of the Borrower or its Restricted Subsidiaries or to make Permitted Acquisitions or any acquisition permitted hereunder of all or substantially all the assets of, or all the Equity Interests (other than directors' qualifying shares) in, a Person or division or line of business of a Person (or any subsequent investment made in a Person, division or line of business previously acquired) that in each case become Collateral (or, in the case of the acquisition of the Equity Interests of a Person, such Person becomes a Loan Party under the Loan Documents), in each case within 270 days of such receipt, and such portion of such proceeds shall not constitute Net Proceeds except to the extent not, within 270 days of such receipt, so used or contractually committed with a third party to be so used (it being understood that if any portion of such proceeds are not so used within such 270 day period but within such 270 day period are contractually committed with a third party to be used, then upon the termination of such contract or if such Net Proceeds are not so used within the later of such 270 day period and 180 days from the entry into such contractual commitment, such remaining portion shall constitute Net Proceeds as of the date of such termination or expiry without giving effect to this proviso; it being understood that such proceeds shall constitute Net Proceeds if there is a Specified Default at the time of a proposed reinvestment unless such proposed reinvestment is made pursuant to a binding commitment with a third party entered into at a time when no Specified Default was continuing); *provided, further* that, (i) except with respect to (I) Real Property Disposition Proceeds and (II) at any time during the Amendment No. 1 Specified Period, any other Net Proceeds, no proceeds realized in a single transaction or series of related transactions shall constitute Net Proceeds unless the aggregate net proceeds exceeds $7,500,000 in any fiscal year, commencing upon the expiration of the Amendment No. 1 Specified Period (and thereafter only net cash proceeds in excess of such amount shall constitute Net Proceeds under this clause (a)), *provided* that this clause (i) shall no longer apply from and after the Amendment No. 3 Effective Date, (ii) during the Specified Rolling Stock Prepayment Period, all Net Proceeds from any Disposition of Specified Rolling Stock in excess of the Specified Rolling Stock Reinvestment Threshold in any fiscal year shall be applied to prepay the Term Loans in accordance with Section 2.13(a)(ii) without giving effect to any thresholds (other than such Specified Rolling Stock Reinvestment Threshold) or reinvestment rights, and (iii) pending reinvestment in accordance with this proviso, (A) proceeds from the Disposition of Rolling Stock constituting First Lien Term Priority Collateral shall, not later than the date that is five (5) Business Days after the end of the calendar month in which such Disposition is made, be deposited and maintained in a First Lien Term Priority Account and (B) proceeds from the Disposition of UST Tranche B Joint Collateral shall, not later than the date that is five (5) Business Days after the end of the calendar month in which such Disposition is made, be deposited in and maintained in a UST Tranche B Joint Account, and~~

(b)    100% of the cash proceeds from the incurrence, issuance or sale by the Borrower or any of the ~~Restricted~~ Subsidiaries of any Indebtedness, net of all taxes paid or reasonably estimated to be payable as a result thereof and fees (including investment banking fees and discounts), commissions, costs and other expenses, in each case incurred in connection with such issuance or sale, *provided*, that if the amount of any estimated taxes exceeds the amount of taxes actually required to be paid in cash, the aggregate amount of such excess shall constitute Net Proceeds at the time such taxes are actually paid.

For purposes of calculating the amount of Net Proceeds, fees, commissions and other costs and expenses payable to the Borrower or the ~~Restricted~~ Subsidiaries shall be disregarded.

"**New Money Postpetition Term Loans**" shall mean the Initial Postpetition Loans, the Second Postpetition Loans and the Final Postpetition Loans (and, for the avoidance of doubt, shall exclude the Prepetition Term Loans).

"**Non-Consenting Lender**" has the meaning set forth in Section 3.06(b).

"**Not Otherwise Applied**" shall mean, with reference to any amount of net proceeds of any transaction or event, that such amount (a) was not required to be applied to prepay the Loans pursuant to Section 2.13(a) and (b) was not previously applied in determining the permissibility of a transaction under the Loan Documents where such permissibility was (or may have been) pursuant to Section 7.02(p)(y), Section 7.03(ee), Section 7.06(e)(y) or 7.13(a)(vi).

"**Obligations**" shall mean all advances to, and debts, liabilities, obligations, covenants and duties of, any Loan Party arising under any Loan Document or otherwise with respect to any Loan, whether direct or indirect (including those acquired by assumption), absolute or contingent, due or to become due, now existing or hereafter arising and including interest and fees that accrue after the commencement by or against any Loan Party of any proceeding under any Debtor Relief Laws naming such Person as the debtor in such proceeding (or would accrue but for the operation of applicable Debtor Relief Laws), regardless of whether such interest and fees are allowed or allowable claims in such proceeding. Without limiting the generality of the foregoing, the Obligations of the Loan Parties under the Loan Documents include (a) the obligation (including guarantee obligations) to pay principal, interest, reimbursement obligations, charges, expenses, fees (including under the Agency Fee Letter, no matter when earned in accordance with the terms thereof), the Make-Whole Amount, Attorney Costs, indemnities and other amounts payable by any Loan Party under any Loan Document and (b) the obligation of any Loan Party to reimburse any amount in respect of any of the foregoing that any Agent or Lender, in its sole discretion, may elect to pay or advance on behalf of such Loan Party.

"**OFAC**" shall have the meaning assigned to such term in the definition of "Blocked Person".

"**Official Committee**" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code.

"**Operational Advisor**" means Alvarez and Marsal or another nationally-recognized, reputable financial planning and analysis firm reasonably acceptable to the Required Lenders and engaged by the Borrower pursuant to an engagement letter meeting the requirements set forth in Section 6.13(c). The term "Operational Advisor" shall include any replacement nationally-recognized, reputable financial planning and analysis firm selected by the Borrower and reasonably acceptable to the Required Lenders so long as the Borrower has provided to the Required Lenders a replacement engagement letter meeting the requirements set forth in Section 6.13(c) for such engagement letter prior to retaining such replacement Operational Advisor.

"**Organization Documents**" shall mean (a) with respect to any corporation or company, the memorandum, certificate or articles of incorporation and, amalgamation, continuance or association, the bylaws and any shareholder(s) agreement applicable to such corporation or company (or equivalent or comparable constitutive documents with respect to any non-U.S. jurisdiction); (b) with respect to any limited liability company, the certificate or articles of formation or organization and operating agreement; and (c) with respect to any partnership, limited partnership, joint venture, trust or other form of business entity, the partnership, limited partnership, joint venture or other applicable agreement of formation or organization and any agreement, instrument, filing or notice with respect thereto filed in connection with its formation or organization with the applicable Governmental Authority in the

jurisdiction of its formation or organization and, if applicable, any certificate or articles of formation or organization of such entity.

"**Original Closing Date**" shall mean February 13, 2014.

"**Original** ~~Term Loan Maturity Date~~Credit Agreement" shall have the meaning assigned to such term in the ~~definition of "Maturity Date"~~recitals to this Agreement.

"**Other Survey Documentation**" shall have the meaning specified in the definition of "Collateral and Guarantee Requirement".

"**Other Taxes**" shall have the meaning assigned to such term in Section 3.01(b).

"**Other Term Loan Commitments**" shall mean one or more Classes of term loan commitments hereunder that result from a Refinancing Amendment entered into after the Restatement Effective Date.

"**Other Term Loans**" shall mean one or more Classes of Term Loans that result from a Refinancing Amendment entered into after the Restatement Effective Date.

"**Participant Register**" shall have the meaning assigned to such term in Section 10.04(f).

"**PBGC**" shall mean the Pension Benefit Guaranty Corporation referred to and defined in ERISA and any successor entity performing similar functions.

"**Pension Fund Entities**" shall mean those entities identified on Schedule 1.01(d) hereto.

"**Pension Plan**" shall mean any employee pension benefit plan within the meaning of Section 3(2) of ERISA (other than a Multiemployer Plan) subject to the provisions of Title IV of ERISA or Sections 412 and 430 of the Code or Sections 302 and 303 of ERISA and in respect of which a Loan Party, any Subsidiary or any of their respective ERISA Affiliates is, or if such plan were terminated would under Section 4069 of ERISA be deemed to be, or within the six year period immediately preceding the date hereof was, a "contributing sponsor" as defined in Section 4001(a)(13) of ERISA or an "employer" as defined in Section 3(5) of ERISA.

"**Pension Contribution Cap**" means, as of any date of determination, (i) for any such date of determination occurring from and after the Restatement Effective Date and on or prior to the first anniversary of the Restatement Effective Date, $150,000,000, (ii) for any such date of determination occurring after the first anniversary of the Restatement Effective Date but on or prior to the second anniversary of the Restatement Effective Date, $153,000,000, (iii) for any such date of determination occurring after the second anniversary of the Restatement Effective Date but on or prior to the third anniversary of the Restatement Effective Date, $156,060,000, (iv) for any such date of determination occurring after the third anniversary of the Restatement Effective Date but on or prior to the fourth anniversary of the Restatement Effective Date, $159,181,200 and (v) for any such date of determination occurring thereafter, $162,364,824.

"**Pension Real Property**" shall mean any Real Property which secured the obligations of the Borrower under the Contribution Deferral Agreement on a first lien basis on the Restatement Effective Date, as set forth on Schedule 1.01(a).

"~~Perfection Certificate~~" shall mean a certificate substantially in the form of Exhibit II to the Security Agreement or any other form reasonably approved by the Collateral Agent and the Borrower, as the same shall be supplemented from time to time.

"~~Periodic Term SOFR Determination~~Petition Date" shall have the meaning ~~specified in the definition of "Term SOFR"~~assigned to such term in the recitals to this Agreement.

"**Permits**" shall mean all necessary certificates, licenses, permits, franchises, trade names, certificates of occupancy, consents and other approvals required under applicable Laws for the operation of any Real Property.

"**Permitted Variances**" shall mean any variance from the Approved Budget which would not result in a breach of Section 7.11.

"**Permitted Variance Percentage**" shall mean:

(a)    with respect to Section 7.11(a), (i) with respect to the Budget Variance Test Period ending on August 18, 2023, 80%, (ii) with respect to the Budget Variance Test Period ending on August 25, 2023, 85%, and (iii) with respect to each Budget Variance Test Period ending thereafter, 90%; and

(b)    with respect to Sections 7.11(b) through (d), (i) with respect to the Budget Variance Test Period ending on August 18, 2023, 120%, (ii) with respect to the Budget Variance Test Period ending on August 25, 2023, 115%, and (iii) with respect to each Budget Variance Test Period ending thereafter, 110%.

"**Person**" shall mean any natural person, corporation, limited liability company, unlimited liability company, trust, joint venture, association, company, partnership, limited partnership, Governmental Authority or other entity.

"**Plan of Reorganization**" shall mean a plan of reorganization in the Chapter 11 Cases.

"~~Permitted Acquisition~~Platform" shall have the meaning assigned to such term in Section ~~7.02(h)~~10.01.

"~~Permitted Acquisition Provisions~~Postpetition B-2 Facility" shall have the meaning assigned to ~~such~~the term in ~~Section 2.17(e)~~the recitals hereto.

"~~Permitted Additional Debt~~" shall mean Indebtedness incurred by the Borrower or any Guarantor, which Indebtedness may be (x) in the form of one or more series of notes or in the form of bank loans and, in either case, secured by the Collateral on a junior basis to the Obligations ("~~Permitted Junior Priority Additional Debt~~") or (y) in the form of one or more series of notes or in the form of bank loans and unsecured; *provided* that (i) such Indebtedness is not at any time guaranteed by any Subsidiaries other than Subsidiaries that are Guarantors, (ii) the other terms and conditions of such Indebtedness (excluding pricing, fees, rate floors and optional prepayment or redemption terms), if different from the Term Loans, are customary market terms for Indebtedness of such type but in no event shall such terms and conditions (taken as a whole) be materially more restrictive to the Borrower and its Subsidiaries than the terms and conditions hereof (*provided*, that the financial maintenance covenant on the then outstanding Term Loans shall be amended to provide the Lenders the benefit of any financial maintenance covenant of such Permitted Additional Debt that is in addition to or more restrictive in any material manner than the financial maintenance covenant on the then outstanding Term Loans) (*provided* that a certificate of a Responsible Officer delivered to the Administrative Agent at least five Business

Days prior to the incurrence of such Indebtedness (or such shorter period as the Administrative Agent with the consent of the Required Lenders may agree in their sole discretion), together with a reasonably detailed description of the material terms and conditions of such Indebtedness or drafts of the documentation relating thereto, stating that the Borrower has determined in good faith that such terms and conditions satisfy the requirement of this clause (ii) shall be conclusive evidence that such terms and conditions satisfy such requirement unless the Administrative Agent or the Required Lenders notify the Borrower within such five Business Day period (or such shorter period as the Administrative Agent with the consent of the Required Lenders may agree in its sole discretion) that it disagrees with such determination (including a reasonable description of the basis upon which it disagrees)), (iii) [reserved], (iv) no Default shall exist immediately prior to or after giving effect to such incurrence subject to the Permitted Acquisition Provisions (if applicable) and (v) if such Indebtedness is Permitted Additional Debt that is secured, a Junior Representative acting on behalf of the holders of such Indebtedness shall have become party to or otherwise subject to the provisions of the Junior Lien Intercreditor Agreement. Permitted Additional Debt will include any Registered Equivalent Notes issued in exchange therefor.

"**Postpetition B-2 Facility Closing Date**" means the date on which the applicable conditions specified in the DIP Term Sheet were first satisfied and the Initial Postpetition Loans were made, which date is August 21, 2023.

"**Postpetition B-2 Superpriority Claims**" shall have the meaning assigned to such term in Section 13.05.

"**PPSA**" means the *Personal Property Security Act*, R.S.O 1990, c. P.10; provided that, if perfection or the effect of perfection or the priority of any security interest in any Canadian Collateral is governed by (i) a Personal Property Security Act as in effect in a Canadian jurisdiction other than Ontario or (ii) the *Civil Code of Québec*, then "PPSA" means the Personal Property Security Act as in effect from time to time in such other jurisdiction or the *Civil Code of Québec*, as applicable, for purposes of the provisions hereof relating to such perfection, effect of perfection or non-perfection or priority in such Canadian Collateral.

"**Prepetition ABL Agent**" shall mean, as the context may require, Citizens Business Capital (a division of Citizens Asset Finance, Inc., a subsidiary of Citizens, N.A.), in its capacity as administrative agent under the Prepetition ABL Facility Documentation, Citizens Business Capital (a division of Citizens Asset Finance, Inc., a subsidiary of Citizens, N.A.), in its capacity as collateral agent under the Prepetition ABL Facility Documentation.

"**Prepetition ABL Credit Agreement**" shall mean that certain asset-based revolving credit agreement dated as of the February 13, 2014, among the Borrower, YRC Inc., a Delaware corporation, USF Reddaway Inc., an Oregon corporation, USF Holland LLC, a Delaware limited liability company (as successor to USF Holland, Inc., a Michigan corporation) and New Penn Motor Express, LLC, a Delaware limited liability company (as successor to New Penn Motor Express, Inc., a Pennsylvania corporation), the other subsidiaries of the Borrower party thereto, the lenders party thereto and the Prepetition ABL Agent, as amended prior to the Petition Date, provided by lenders who are third party commercial banks or other financial institutions that customarily provide asset based lending credit facilities and other financial institutions consented to by the Administrative Agent (such consent not to be unreasonably withheld or delayed).

"**Prepetition ABL Facility Documentation**" shall mean the Prepetition ABL Credit Agreement and all security agreements, guarantees, pledge agreements and other agreements or instruments executed

in connection therewith and including all "Loan Documents" (as defined in the Prepetition ABL Credit Agreement) or similar term.

"**Prepetition ABL Facility Indebtedness**" shall mean Indebtedness of the Borrower or any Subsidiary outstanding under the ABL Facility Documentation, including Bank Product Debt (as defined in the Prepetition ABL Credit Agreement).

"**Prepetition ABL Facility**" shall mean the asset-based revolving credit facility made available to the Borrower and certain of its Subsidiaries pursuant to the Prepetition ABL Credit Agreement.

"**Prepetition ABL Intercreditor Agreement**" shall mean the Amended and Restated Intercreditor Agreement dated as of July 7, 2020, among the Administrative Agent and/or Collateral Agent, the Prepetition ABL Agent, the Prepetition UST Tranche A Agent, the Prepetition UST Tranche B Agent and the Loan Parties, and as the same may be further amended, restated, modified, supplemented, extended, renewed, restructured, waived or replaced from time to time.

"**Prepetition ABL Priority Collateral**" shall have the meaning assigned to the term "ABL Priority Collateral" in the Prepetition ABL Intercreditor Agreement.

"~~Permitted Junior Priority Additional Debt~~**Prepetition ABL Secured Parties**" shall have the meaning assigned to ~~such~~the term ~~in the definition of "Permitted Additional Debt"~~"ABL Secured Parties" in the Prepetition ABL Intercreditor Agreement.

"**Prepetition Agents**" shall mean, collectively, the (a) Agents, (b) Prepetition ABL Agent, (c) Prepetition UST Tranche A Agent and (d) Prepetition UST Tranche B Agent.

"**Prepetition B-2 Lenders**" means the lenders that were party to this Agreement prior to the Postpetition B-2 Facility Closing Date and that provided or otherwise held Prepetition Term Loans prior to the Postpetition B-2 Facility Closing Date.

~~"**Permitted Refinancing**" shall mean, with respect to any Person, any modification, refinancing, refunding, renewal, replacement or extension of any Indebtedness of such Person; *provided* that (a) the original aggregate principal amount (or accreted value, if applicable) does not exceed the aggregate principal amount (or accreted value, if applicable) of the Indebtedness so modified, refinanced, refunded, renewed, replaced or extended except (i) by an amount equal to accrued but unpaid interest, premiums and fees payable by the terms of such Indebtedness and reasonable fees, expenses, original issue discount and upfront fees incurred in connection with such modification, refinancing, refunding, renewal, replacement or extension and (ii) by an amount equal to any existing available commitments unutilized thereunder, (b) other than with respect to a Permitted Refinancing in respect of Indebtedness permitted pursuant to Section 7.03(e), the Indebtedness resulting from such modification, refinancing, refunding, renewal, replacement or extension has a final maturity date equal to or later than the final maturity date of, and has a Weighted Average Life to Maturity equal to or greater than the Weighted Average Life to Maturity of, the Indebtedness being modified, refinanced, refunded, renewed, replaced or extended, (c) other than with respect to a Permitted Refinancing in respect of Indebtedness permitted pursuant to Section 7.03(e), at the time thereof, no Event of Default shall have occurred and be continuing, (d) if such Indebtedness being modified, refinanced, refunded, renewed, replaced or extended is Indebtedness permitted pursuant to Section 7.03(b), 7.03(p) or 7.03(q), or is otherwise a Junior Financing, (i) to the extent such Indebtedness being modified, refinanced, refunded, renewed, replaced or extended is subordinated in right of payment or in lien priority to the Obligations, the Indebtedness resulting from such modification, refinancing, refunding, renewal, replacement or extension is subordinated in right of payment or in lien priority, as applicable, to the Obligations on terms (taken as a whole) (x) at least as~~

~~favorable to the Lenders as those contained in the documentation governing the Indebtedness being modified, refinanced, refunded, renewed, replaced or extended (*provided* that a certificate of a Responsible Officer delivered to the Administrative Agent at least five Business Days prior to the incurrence of such Indebtedness (or such shorter period as the Administrative Agent with the consent of the Required Lenders may agree in its sole discretion), together with a reasonably detailed description of the material terms and conditions of such Indebtedness or drafts of the documentation relating thereto, stating that the Borrower has determined in good faith that such terms and conditions satisfy the foregoing requirement shall be conclusive evidence that such terms and conditions satisfy the foregoing requirement unless the Administrative Agent or the Required Lenders notify the Borrower within such five Business Day period that it disagrees with such determination (including a reasonable description of the basis upon which it disagrees)) or (y) otherwise reasonably acceptable to the Required Lenders)), and (ii) the obligors (including any guarantors) in respect of the Indebtedness resulting from such modification, refinancing, refunding, renewal, replacement or extension shall not include any Person other than the obligors (including any guarantors) of the Indebtedness being modified, refinanced, refunded, renewed, replaced or extended unless otherwise permitted hereby, (e) in the case of any Permitted Refinancing in respect of the ABL Facility, such Permitted Refinancing is a revolving working capital facility and is secured only by all or any portion of the collateral securing the ABL Facility (but not by any other assets) pursuant to one or more security agreements subject, in the case of assets constituting (or required to constitute) Collateral, to the ABL Intercreditor Agreement, (f) in the case of any Credit Agreement Refinancing Indebtedness, the Permitted Refinancing shall constitute Credit Agreement Refinancing Indebtedness, (g) in the case of any Permitted Refinancing in respect of UST Tranche A Facility Indebtedness, such Permitted Refinancing is secured only by all or any portion of the collateral securing the UST Tranche A Facility Indebtedness (but not by any other assets) and is subject to the ABL Intercreditor Agreement as "UST Tranche A Obligations", (h) in the case of any Permitted Refinancing in respect of the UST Tranche B Facility Indebtedness, such Permitted Refinancing is secured only by all or any portion of the collateral securing the UST Tranche B Facility Indebtedness (but not by any other assets) and is subject to the ABL Intercreditor Agreement as "UST Tranche B Obligations" and (i) to the extent such Indebtedness being modified, refinanced, refunded, renewed, replaced or extended is unsecured, the Indebtedness resulting from such modification, refinancing, refunding, renewal, replacement or extension must be unsecured. When used with respect to any specified Indebtedness, "**Permitted Refinancing**" shall mean the Indebtedness incurred to effectuate a Permitted Refinancing of such specified Indebtedness.~~

~~"**Permitted Repricing Amendment**" shall have the meaning set forth in Section 10.08(b).~~

~~"**Person**" shall mean any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, Governmental Authority or other entity.~~

"~~PIK Interest~~**Prepetition B-2 Term Loan Credit Agreement**" shall have the meaning assigned to ~~such~~that term in ~~Section 2.06(d)~~the recitals to this Agreement.

"**Prepetition Facility Documentation**" shall mean, collectively, the (i) the Loan Documents, (ii) the Prepetition ABL Facility Documentation, (iii) the Prepetition UST Tranche A Facility Documentation and (iv) the Prepetition UST Tranche B Facility Documentation.

"**Prepetition Indebtedness**" shall mean, collectively, the (i) Obligations in respect of the Prepetition Term Loans, (ii) Prepetition ABL Facility Indebtedness, (iii) Prepetition UST Tranche A Facility Indebtedness and (iv) Prepetition UST Tranche B Facility Indebtedness.

"**Prepetition Lenders**" shall mean, collectively, the (a) Prepetition B-2 Lenders, (b) Prepetition ABL Lenders, (c) Prepetition UST Tranche A Lenders and (d) Prepetition UST Tranche B Lenders.

"**Prepetition Perfection Certificate**" shall mean the Perfection Certificate as of July 7, 2023, delivered by the Borrower pursuant to the Prepetition B-2 Term Loan Credit Agreement.

"**Prepetition Secured Parties**" shall mean, collectively, the (a) Prepetition Agents and (b) the Prepetition Lenders.

"**Prepetition Term Loans**" means all Obligations outstanding under this Agreement prior to the effectiveness of the DIP Term Sheet and funding of the Initial Postpetition Loans on the Postpetition B-2 Facility Closing Date, including the term loans made pursuant to Section 2.01(a).

"**Prepetition UST Tranche A Agent**" shall mean, as the context may require, The Bank of New York Mellon, in its capacity as administrative agent and as collateral agent under the Prepetition UST Tranche A Facility Documentation, such agents collectively or any permitted successor or assignee administrative agent or collateral agent under the Prepetition UST Tranche A Facility Documentation.

"**Prepetition UST Tranche A Controlled Account**" shall have the meaning assigned to the term "UST Tranche A Controlled Account" in the Prepetition UST Tranche A Credit Agreement (as in effect as of the date hereof).

"**Prepetition UST Tranche A Credit Agreement**" shall mean that certain Prepetition UST Tranche A Term Loan Credit Agreement dated as of July 7, 2020, among the Borrower, the other subsidiaries of the Borrower party thereto, the lenders party thereto and the Prepetition UST Tranche A Agent, and as the same may have been further amended, restated, modified, supplemented, extended, renewed, restructured, refunded, replaced or refinanced from time to time prior to the Petition Date.

"**Prepetition UST Tranche A Facility Documentation**" shall mean the Prepetition UST Tranche A Credit Agreement and all security agreements, guarantees, pledge agreements and other agreements or instruments executed in connection therewith and including all "Loan Documents" (as defined in the Prepetition UST Tranche A Credit Agreement) or similar term.

"**Prepetition UST Tranche A Facility Indebtedness**" shall mean Indebtedness of the Borrower or any Subsidiary outstanding under or secured by the Prepetition UST Tranche A Facility Documentation.

"**Prepetition UST Tranche A Facility**" shall mean the credit facility made available to the Borrower pursuant to the Prepetition UST Tranche A Credit Agreement.

"**Prepetition UST Tranche A Only Collateral**" shall mean the Prepetition UST Tranche A Controlled Account and all Money (as defined in the UCC) and all cash, checks, other negotiable instruments, funds and other evidences of loan proceeds properly held therein.  As of the Postpetition B-2 Facility Closing Date, the aggregate amount held in the Prepetition UST Tranche A Controlled Account was $0.

"**Prepetition UST Tranche A Secured Parties**" shall have the meaning assigned to the term "UST Tranche A Secured Parties" in the Prepetition ABL Intercreditor Agreement.

"**Prepetition UST Tranche B Agent**" shall mean, as the context may require, The Bank of New York Mellon, in its capacity as administrative agent and as collateral agent under the Prepetition UST

Tranche B Facility Documentation, such agents collectively or any permitted successor or assignee administrative agent or collateral agent under the Prepetition UST Tranche B Facility Documentation.

"**Prepetition UST Tranche B Controlled Account**" shall have the meaning assigned to the term "UST Tranche B Controlled Account" in the Prepetition UST Tranche B Credit Agreement (as in effect as of the date hereof).

"**Prepetition UST Tranche B Credit Agreement**" shall mean that certain Prepetition UST Tranche B Term Loan Credit Agreement dated as of July 7, 2020, among the Borrower, the other subsidiaries of the Borrower party thereto, the lenders party thereto and the Prepetition UST B Agent, and as the same may have been further amended, restated, modified, supplemented, extended, renewed, restructured, refunded, replaced or refinanced from time to time prior to the Petition Date.

"**Prepetition UST Tranche B Facility Documentation**" shall mean the Prepetition UST Tranche B Credit Agreement and all security agreements, guarantees, pledge agreements and other agreements or instruments executed in connection therewith and including all "Loan Documents" (as defined in the Prepetition UST Tranche B Credit Agreement) or similar term.

"**Prepetition UST Tranche B Facility Indebtedness**" shall mean Indebtedness of the Borrower or any Subsidiary outstanding under or secured by the Prepetition UST Tranche B Facility Documentation.

"**Prepetition UST Tranche B Facility**" shall mean the credit facility made available to the Borrower pursuant to the Prepetition UST Tranche B Credit Agreement.

"**Prepetition UST Tranche B Joint Account**" shall have the meaning assigned to the term "UST Tranche B Joint Account" in the Prepetition ABL Intercreditor Agreement.

"~~PIK Period~~**Prepetition UST Tranche B Joint Collateral**" shall have the meaning assigned to ~~such~~the term ~~in Section 2.06(d)~~"UST Tranche B Joint Collateral" in the Prepetition ABL Intercreditor Agreement.

"~~Plan" shall mean any employee pension benefit plan within the meaning of Section 3(2) of ERISA (other than a Multiemployer Plan) subject to the provisions of Title IV of ERISA or Sections 412 and 430 of the Code or Sections 302 and 303 of ERISA and in respect of which a Loan Party, any Restricted Subsidiary or any of their respective ERISA Affiliates is, or if such plan were terminated would under Section 4069 of ERISA be deemed to be, or within the six year period immediately preceding the date hereof was, a "contributing sponsor" as defined in Section 4001(a)(13) of ERISA or an "employer" as defined in Section 3(5) of ERISA.~~

"**Prepetition UST Tranche B Only Collateral**" shall mean the Prepetition UST Tranche B Controlled Account and all Money (as defined in the UCC) and all cash, checks, other negotiable instruments, funds and other evidences of loan proceeds properly held therein.  As of the Postpetition B-2 Facility Closing Date, the aggregate amount held in the Prepetition UST Tranche A Controlled Account was $0.

"~~Platform~~**Prepetition UST Tranche B Priority Collateral**" shall have the meaning assigned to ~~such~~the term ~~in Section 10.01~~"UST Tranche B Priority Collateral" in the Prepetition ABL Intercreditor Agreement.

"~~**Prepayment Premium**~~**Prepetition UST Tranche B Secured Parties**" shall have the meaning assigned to ~~such~~the term ~~in  Section 2.12(d)~~"UST Tranche B Secured Parties" the Prepetition ABL Intercreditor Agreement.

"**Prime Rate**" shall mean, as of any day, the rate last quoted by The Wall Street Journal as the "Prime Rate" in the United States or, if The Wall Street Journal ceases to quote such rate, the highest per annum interest rate published by the Federal Reserve Board in Federal Reserve Statistical Release H.15 (519) (Selected Interest Rates) as the "bank prime loan" rate or, if such rate is no longer quoted therein, any similar rate quoted therein (as reasonably determined by the Administrative Agent) or any similar release by the Federal Reserve Board (as reasonably determined by the Administrative Agent).

~~"**Pro Forma Basis**" shall mean, with respect to compliance with any test or covenant or calculation of any ratio hereunder, the determination or calculation of such test, covenant or ratio (including in connection with Specified Transactions) in accordance with Section 1.10.~~

"**Pro Rata Share**" shall mean, with respect to each Lender at any time a fraction (expressed as a percentage, carried out to the ninth decimal place), the numerator of which is the amount of the Commitments (or, if Commitments have been terminated, the principal amount of the Loans) under the applicable Facility or Facilities of such Lender at such time and the denominator of which is the amount of the aggregate Commitments (or, if the Commitments have been terminated, the principal amount of the Loans) under the applicable Facility or Facilities at such time.

~~"**Projections**" shall have the meaning set forth in Section 6.01(c).~~

"**Public Lender**" shall have the meaning assigned to such term in Section 10.01.

"**Qualified Equity Interests**" shall mean any Equity Interests that are not Disqualified Equity Interests.

"**Real Property**" shall mean, collectively, all right, title and interest (including any leasehold, mineral or other estate) in and to any and all parcels of or interests in real property owned or leased by any Person, whether by lease, license or other means, together with, in each case, all easements, hereditaments and appurtenances relating thereto, all improvements and appurtenant fixtures and equipment, all general intangibles, intangibles and contract rights and other property and rights incidental to the ownership, lease or operation thereof.

~~"**Real Property Disposition Proceeds**" shall mean any Net Proceeds realized from a Disposition of, or Sale and Leaseback Transaction with respect to, any Real Property, including, for the avoidance of doubt, (i) any Pension Real Property in each case, consummated on or after the Restatement Effective Date and (ii) any Specified Amendment No. 3 Real Property, in each case, consummated on or after the Amendment No. 3 Effective Date (other than, in each case, leases of Real Property entered into in the ordinary course of business (excluding Sale and Leaseback Transactions)).~~

~~"**Refinanced Debt**" shall have the meaning specified in the definition of "Credit Agreement Refinancing Indebtedness".~~

~~"**Refinancing Amendment**" shall mean an amendment to this Agreement executed by each of (a) the Borrower, (b) the Administrative Agent, (c) each Additional Lender that will make an Other Term Loan pursuant to such Refinancing Amendment and (d) each existing Lender that agrees to provide any~~

portion of the Credit Agreement Refinancing Indebtedness being incurred pursuant thereto, in accordance with Section 2.18.

"**Refinancing Transaction**" shall have the meaning assigned to such term in the recitals

"**Register**" shall have the meaning assigned to such term in Section 10.04(d).

"**Registered Equivalent Notes**" shall mean, with respect to any notes originally issued in a Rule 144A or other private placement transaction under the Securities Act of 1933, substantially identical notes (having the same Guarantees) issued in a dollar for dollar exchange therefor pursuant to an exchange offer registered with the SEC.

"**Regulation T**" shall mean Regulation T of the Board as from time to time in effect and all official rulings and interpretations thereunder or thereof.

"**Regulation U**" shall mean Regulation U of the Board as from time to time in effect and all official rulings and interpretations thereunder or thereof.

"**Rejection Notice**" shall have the meaning assigned to such term in Section 2.13(d).

"**Related Fund**" shall mean, with respect to any Lender that is a fund or commingled investment vehicle that invests in loans, any other fund that invests in loans and is managed or advised by the same investment advisor/manager as such Lender or by an Affiliate of such investment advisor/manager.

"**Related Parties**" shall mean, with respect to any specified Person, such Person's Affiliates and the respective directors, trustees, officers, fiduciaries, employees, agents and advisors, attorneys and representatives of such Person and such Person's Affiliates.

"**Release**" shall mean any release, spill, emission, leaking, dumping, injection, pouring, deposit, disposal, discharge, dispersal, leaching or migration into or through the environment or from, within or upon any vessel, vehicle, building, structure, facility or fixture.

"**Reportable Event**" shall mean any of the events set forth in Section 4043(c) of ERISA or the regulations issued thereunder, other than events for which the thirty (30) day notice period has been waived with respect to a Pension Plan.

"**Request for Credit Extension**" shall mean a request by the Borrower in accordance with the terms of Section 2.03 and substantially in the form of Exhibit C, or such other form as shall be approved by the Administrative Agent.

"**Required Class Lenders**" shall mean, as of any date of determination, Lenders of a Class having more than 50% of the sum of the outstanding Loans and unused Commitments of the applicable Class.

"**Required Lenders**" shall mean, at any time, Lenders having Loans and unused Term Loan Commitments representing more than 50% of the sum of all Loans outstanding and unused Term Loan Commitments at such time.

"**Required Opinion State**" shall mean each of the following states: Pennsylvania, California, Ohio, New York, Illinois, New Jersey, Texas, Michigan, Tennessee, North Carolina, Oregon, Georgia, Maryland, Indiana, Missouri, Wisconsin, South Carolina, Nevada, Minnesota and Utah.

"**Responsible Officer**" shall mean the chief executive officer, president, vice president, chief financial officer, treasurer, assistant treasurer, director of treasury or other similar officer of a Loan Party and, as to any document delivered on the ~~Restatement~~Postpetition B-2 Facility Closing Date or the Amendment No. 4 Effective Date, any secretary or assistant secretary of such Loan Party.  Any document delivered hereunder that is signed by a Responsible Officer of a Loan Party shall be conclusively presumed by the recipient of such document to have been authorized by all necessary corporate, partnership and/or other action on the part of such Loan Party and such Responsible Officer shall be conclusively presumed by the recipient of such document to have acted on behalf of such Loan Party.

"~~**Restatement Effective Date**~~" ~~means the date on which the conditions specified in Section 4.02 are satisfied (or waived in accordance with Article 9), which date is September 11, 2019.~~

"**Restricted Payment**" shall mean (i) any dividend or other distribution (whether in cash, securities or other property) with respect to any Equity Interest of the Borrower or any ~~Restricted~~ Subsidiary, or any payment (whether in cash, securities or other property), including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, defeasance, acquisition, cancellation or termination of any such Equity Interest of the Borrower or any ~~Restricted~~ Subsidiary, or on account of any return of capital to the Borrower's or a ~~Restricted~~ Subsidiary's stockholders, partners or members (or the equivalent Persons thereof) and (ii) any payment to any board member of any Loan Party or any Subsidiary thereof.

"~~**Restricted Subsidiary**~~" ~~shall mean each Subsidiary of the Borrower.~~

"~~**Retained Percentage**~~" ~~shall mean, with respect to any Excess Cash Flow Period (a) 100% minus (b) the Applicable ECF Percentage with respect to such Excess Cash Flow Period.~~

"**Rolling Stock**" shall mean any vehicles, tractors, trucks, trailers, tank trailer and other trailers, or similar vehicles and trailers, railroad cars, locomotives, stacktrains and other rolling stock and accessories used on such railroad cars, locomotives or other rolling stock (including superstructures and racks).

"**S&P**" shall mean Standard & Poor's Ratings Service, or any successor thereto.

"~~**Sale and Leaseback Transaction**~~" ~~shall mean any arrangement, directly or indirectly, whereby a seller or transferor shall sell or otherwise transfer any real or personal property and then or thereafter lease, or repurchase under an extended purchase contract, conditional sales or other title retention agreement, the same property.~~

"**SEC**" shall mean the Securities and Exchange Commission or any Governmental Authority that is the successor thereto.

"**Second Day Orders**" shall mean all "second day orders" with respect to the Chapter 11 Cases in form and substance satisfactory to the Lenders (and with respect to any provisions that affect the rights or duties of any Agent, such Agent), as the same may be amended, modified or supplemented from time to time with the express written joinder or consent of the Lenders (and with respect to amendments, modifications or supplements that affect the rights or duties of any Agent, such Agent).

"**Second Postpetition Commitment**" means, as to each Lender, its obligations to make Second Postpetition Loans to the Borrower pursuant to Section 2.01(b) in an aggregate principal amount not to exceed the amount set forth opposite such Lender's name on Appendix B under the caption "Second Postpetition Commitment."  The aggregate amount of the Second Postpetition Commitments immediately

prior to the making of the Second Postpetition Loans on the Amendment No. 4 Effective Date is $26,315,789.47.

"**Second Postpetition Loan**" means a term loan made pursuant to Section 2.02(b).

"**Secured Parties**" ~~shall have the meaning assigned to such term in the Security Agreement~~means the Agents, the Lenders, the Indemnitees and any other holders of the Obligations.

"**Securities Account**" as defined in the UCC or the PPSA, as applicable.

~~"**Securities Act**" shall mean the Securities Act of 1933, as amended.~~

"**Security Agreement**" shall mean, except as the context may otherwise require, both (a) the Amended and Restated Security Agreement dated as of ~~the Restatement Effective Date~~July 9, 2020 among the Borrower, the Guarantors party thereto and the Collateral Agent and (b) the Amended and Restated Security and Collateral Agency Agreement, dated as of ~~the date hereof~~July 9, 2020, among the Collateral Agent, as collateral agent and term loan representative, the ABL Agent, as ABL representative, the UST Tranche A Agent, as collateral agent and treasury tranche A representative and the UST Tranche B Agent, as collateral agent and treasury tranche B representative and the Borrower and the other Loan Parties party thereto, as each of the same may be further amended, restated, modified, supplemented, extended, renewed, restructured or replaced.

"**Security Agreement Supplement**" shall have the meaning specified in the Security Agreement.

"**Senior ICA Provisions**" means paragraphs 9(b) through 9(d) of the Interim Order and the corresponding provisions in the Final Order.

~~"**Senior Financial Officer**" of any Person shall mean the chief financial officer, principal accounting officer, treasurer, controller or other similar officer of such Person.~~

~~"**Single Employer Plans**" shall mean the Roadway LLC Pension Plan, the Yellow Corporation Pension Plan and the YRC Retiree Pension Plan or any other Plans sponsored or maintained by the Borrower or any Restricted Subsidiary.~~

~~"**SOFR**" shall mean a per annum rate equal to the secured overnight financing rate as administered by the Federal Reserve Bank of New York (or a successor administrator of the secured overnight financing rate).~~

~~"**SOFR Administrator**" shall mean the Federal Reserve Bank of New York (or a successor administrator of the secured overnight financing rate).~~

~~"**SOFR Loan**" shall mean any Loan bearing interest at a rate determined by reference to Adjusted Term SOFR (other than pursuant to clause (c) of the definition of Alternate Base Rate).~~

~~"**Specified Amendment No. 1 Period**" shall mean the period commencing on the Amendment No. 1 Effective Date and ending on the first date after for which Consolidated EBITDA for a Test Period ending on the last day of a fiscal quarter ending on or after June 30, 2022 is greater than $200,000,000 and the Borrower shall have delivered a Compliance Certificate to the Administrative Agent showing such calculation in reasonable detail.~~

~~"**Specified Amendment No. 3 Real Properties**" shall mean each Real Property listed on Schedule 7.05(a) and Schedule 7.05(b).~~

~~"**Specified Default**" shall mean an Event of Default under Section 8.01(a), (f) or (g).~~

"**Specified Rolling Stock**" shall mean all Rolling Stock that does not constitute <u>Prepetition</u> UST Tranche B Priority Collateral.  For the avoidance of doubt, <u>Prepetition</u> UST Tranche B Joint Collateral shall be Specified Rolling Stock.

~~"**Specified Rolling Stock Prepayment Period**" means the period commencing on the Amendment No. 2 Effective Date and ending on the first date after for which Consolidated EBITDA for a Test Period ending on the last day of a fiscal quarter ending on or after September 30, 2020 is greater than $200,000,000 and the Borrower shall have delivered a Compliance Certificate to the Administrative Agent showing such calculation in reasonable detail.~~

~~"**Specified Rolling Stock Reinvestment Threshold**" means, with respect to Dispositions of Specified Rolling Stock in any fiscal year, the first $500,000 of Net Proceeds received by the Borrower and its Subsidiaries with respect to such Dispositions in such fiscal year to the extent such Net Proceeds are reinvested in accordance with the proviso to clause (a) of the definition of "Net Proceeds".~~

~~"**Specified Transaction**" shall mean any Investment that results in a Person becoming a Restricted Subsidiary, any Permitted Acquisition, any Disposition that results in a Restricted Subsidiary ceasing to be a Subsidiary of the Borrower, any Investment constituting an acquisition of assets constituting a business unit, line of business or division of another Person or any Disposition of a business unit, line of business or division of the Borrower or a Restricted Subsidiary, in each case consummated after the Restatement Effective Date and whether by merger, consolidation, amalgamation or otherwise, and any incurrence or repayment of Indebtedness or Restricted Payment, in each case, that by the terms of this Agreement requires a financial ratio or test to be calculated on a "Pro Forma Basis".~~

"**SPV**" shall have the meaning assigned to such term in <u>Section 10.04(i)</u>.

~~"**Subordinated Indebtedness**" shall mean any Indebtedness that is, or is required to be, subordinated in right of payment to the Obligations (for greater certainty, not including the ABL Facility Indebtedness, the UST Tranche A Facility Indebtedness and the UST Tranche B Facility Indebtedness).~~

"**Subsidiary**" of a Person shall mean a corporation, partnership, joint venture, limited liability company or other business entity of which (i) a majority of the shares of securities or other interests having ordinary voting power for the election of directors or other governing body (other than securities or interests having such power only by reason of the happening of a contingency) are at the time beneficially owned or (ii) the management of which is otherwise Controlled, directly or indirectly, through one or more intermediaries, or both, by such Person.  Unless otherwise specified, all references herein to a "**Subsidiary**" or to "**Subsidiaries**" shall refer to a Subsidiary or Subsidiaries of the Borrower.

~~"**Succession Agreement**" means that certain Successor Agent Agreement dated as of the Restatement Effective Date, among Cortland Products Corp., as successor agent, Credit Suisse AG, as retiring agent, the Borrower and the Tranche B-2 Term Lenders.~~

~~"**Successor Borrower**" shall have the meaning specified in Section 7.04(d).~~

~~"**Survey**" shall have the meaning assigned to such term in the definition of "Collateral and Guarantee Requirement".~~

"**Swap Contract**" shall mean (a) any and all rate swap transactions, basis swaps, credit derivative transactions, forward rate transactions, commodity swaps, commodity options, forward commodity contracts, equity or equity index swaps or options, bond or bond price or bond index swaps or options or forward bond or forward bond price or forward bond index transactions, interest rate options, forward foreign exchange transactions, cap transactions, floor transactions, collar transactions, currency swap transactions, cross-currency rate swap transactions, currency options, spot contracts, or any other similar transactions or any combination of any of the foregoing (including any options to enter into any of the foregoing), whether or not any such transaction is governed by or subject to any master agreement, and (b) any and all transactions of any kind, and the related confirmations, which are subject to the terms and conditions of, or governed by, any form of master agreement published by the International Swaps and Derivatives Association, Inc., any International Foreign Exchange Master Agreement, or any other master agreement (any such master agreement, together with any related schedules, a "**Master Agreement**"), including any such obligations or liabilities under any Master Agreement.

"**Swap Termination Value**" shall mean, in respect of any one or more Swap Contracts, after taking into account the effect of any legally enforceable netting agreement relating to such Swap Contracts, (a) for any date on or after the date such Swap Contracts have been closed out and termination value(s) determined in accordance therewith, such termination value(s), and (b) for any date prior to the date referenced in clause (a), the amount(s) determined as the mark-to-market value(s) for such Swap Contracts, as determined based upon one or more mid-market or other readily available quotations provided by any recognized dealer in such Swap Contracts (which may include a Lender or any Affiliate of a Lender).

"**Taxes**" shall have the meaning assigned to such term in Section 3.01(a).

"**Term Borrowing**" shall mean a Borrowing comprised of Term Loans.

"**Term Lender**" shall mean a Lender with a Term Loan Commitment or an outstanding Term Loan.

~~"**Term Loan Commitment**" shall mean the Tranche B-2 Term Loan Commitment.~~

"**Term Loans**" shall mean the ~~Tranche B-2~~New Money Postpetition Term Loans and the Prepetition Term Loans, ~~Extended Term Loans and Other Term Loans~~as the context may require.

"**Term Note**" shall mean a promissory note of the Borrower payable to any Term Lender or its registered assigns, in substantially the form of Exhibit J hereto, evidencing the aggregate Indebtedness of the Borrower to such Term Lender resulting from the Term Loans made by such Term Lender.

~~"**Term Priority Collateral**" shall have the meaning assigned to such term in the ABL Intercreditor Agreement.~~

~~"**Term SOFR**" shall mean,~~

~~(a) for any calculation with respect to a SOFR Loans, the Term SOFR Reference Rate for a tenor comparable to the applicable Interest Period on the day (such day, the "**Periodic Term SOFR Determination Day**") that is two (2) U.S. Government Securities Business Days prior to the first day of such Interest Period, as such rate is published by the Term SOFR Administrator; provided, however, that if, as of 5:00 p.m. (New York City time) on any Periodic Term SOFR Determination Day, the Term SOFR Reference Rate for the applicable tenor has not been published by the Term SOFR Administrator and a Benchmark Replacement Date with~~

respect to the Term SOFR Reference Rate has not occurred, then Term SOFR will be the Term SOFR Reference Rate for such tenor as published by the Term SOFR Administrator on the first preceding U.S. Government Securities Business Day for which such Term SOFR Reference Rate for such tenor was published by the Term SOFR Administrator so long as such first preceding U.S. Government Securities Business Day is not more than three (3) U.S. Government Securities Business Days prior to such Periodic Term SOFR Determination Day; and

(b) for any calculation with respect to ABR Loans on any day, the Term SOFR Reference Rate for a tenor of one month on the day (such day, the "**Alternate Base Rate Term SOFR Determination Day**") that is two (2) U.S. Government Securities Business Days prior to such day, as such rate is published by the Term SOFR Administrator; provided, however, that if, as of 5:00 p.m. (New York City time) on any Alternate Base Rate Term SOFR Determination Day, the Term SOFR Reference Rate for the applicable tenor has not been published by the Term SOFR Administrator and a Benchmark Replacement Date with respect to the Term SOFR Reference Rate has not occurred, then Term SOFR will be the Term SOFR Reference Rate for such tenor as published by the Term SOFR Administrator on the first preceding U.S. Government Securities Business Day for which such Term SOFR Reference Rate for such tenor was published by the Term SOFR Administrator so long as such first preceding U.S. Government Securities Business Day is not more than three (3) U.S. Government Securities Business Days prior to such Base Rate SOFR Determination Day;

*provided, further*, that if Term SOFR determined as provided above (including pursuant to the proviso under clause (a) or clause (b) above) shall ever be less than the Floor, then Term SOFR shall be deemed to be the Floor.

"**Term SOFR Administrator**" shall mean CME Group Benchmark Administration Limited (CBA) (or a successor administrator of the Term SOFR Reference Rate selected by the Administrative Agent in its reasonable discretion).

ARTICLE 1     "**Term SOFR Reference Rate**" shall mean the forward-looking term rate based on SOFR.

"**Test Period**" shall mean, for any date of determination under this Agreement, the most recent period as of such date of four consecutive fiscal quarters of the Borrower for which financial statements have been delivered (or were required to have been delivered) pursuant to Section 6.01(a) or 6.01(b), as applicable, or, prior to the first such requirement, the four fiscal quarter period ended June 30, 2019.

"**Threshold Amount**" shall mean $30,000,00010,000,000.

"**Title Company**" shall mean Chicago Title Insurance Company.

"**Total Leverage Ratio**" shall mean, as of any date, the ratio of (a) Consolidated Total Debt as of such date to (b) Consolidated EBITDA for the Test Period applicable as of such date.

"**tranche**" shall have the meaning assigned to such term in Section 2.19(a).

"**Tranche B-2 Term Lender**" shall mean a Lender with a Tranche B-2 Term Loan Commitment or an outstanding Tranche B-2 Term Loan.

"**Tranche B-2 Term Loan Commitment**" shall mean, with respect to each Lender, the commitment, if any, of such Lender to make a Tranche B-2 Term Loan hereunder, expressed as an

amount representing the maximum principal amount of the Tranche B-2 Term Loan to be made by such Lender hereunder. The initial aggregate amount of the Tranche B-2 Term Loan Commitments as of the Restatement Effective Date is $600,000,000.

"**Tranche B-2 Term Loans**" shall mean the term loans made by the Lenders on the Restatement Effective Date to the Borrower pursuant to Section 2.01(b). For the avoidance of doubt, a Term Loan shall no longer be a "Tranche B-2 Term Loan" when it shall have become an "Extended Term Loan".

"**Transaction Expenses**" shall mean any costs, fees or expenses incurred or paid by the Borrower or any of its Subsidiaries in connection with the Transactions, this Agreement and the other Loan Documents; *provided* that the amount of Transaction Expenses attributable to clause (b described in clause (a) of the definition of Transactions shall not exceed $250,000such term.

"**Transactions**" shall mean, collectively, (a) the execution and delivery by the Loan Parties of the Loan Documents to which they are a party and the making of the Borrowings hereunder on the Restatement Effective Date, (b) the execution and delivery by the Borrower and the Subsidiaries party thereto of an amendment to the ABL Facility Documentationand the consummation of any other transaction in connection with the matters described in clause (a), (c) the Refinancing Transactionsforegoing and (db) the payment of the Transaction Expenses.

"**Transferred Guarantor**" shall have the meaning specified in theSection 11.10.

"**Treasury**" means the United States Department of the Treasury.

"**Treasury Rate**" means, with respect to any repayment or prepayment of Obligations, a rate per annum (computed on the basis of actual days elapsed over a year of 360 days) equal to the rate determined by the Administrative Agent on the date falling three Business Days prior to the date of such repayment or prepayment, to be the yield expressed as a rate listed in The Wall Street Journal for United States Treasury securities most nearly equal to the period from the date of such prepayment or repayment to and including the Call Date.

"**Treasury Equity**" means the 15,943,753 shares of Common Stock of the Borrower issued and delivered pursuant to the UST Tranche A Credit Agreement and the UST Tranche B Credit Agreement, directly or indirectly, to the United States federal government or any Governmental Authority on behalf thereof (including, in each case, any agent, trust or Person on behalf thereof, including, for the avoidance of doubt, any voting trust and the trustee thereof created to hold the Treasury Equity for the benefit of the United States federal government or any other Governmental Authority).

"**Treasury Equity Documents**" means (i) the Share Issuance Agreement, dated as of June 30, 2020, between the Borrower and the Treasury, (ii) the Voting Trust Agreement, by and among the Borrower, Treasury and the trustee thereunder to be entered into on or before the Treasury Equity Issuance and (iii) the Registration Rights Agreement, by and between the Borrower and Treasury to be entered into on or before the Treasury Equity Issuance.

"**Treasury Equity Issuance**" shall mean the issuance of Treasury Equity in connection with the Amendment No. 2 Transactions.

"**Treasury Only Collateral**" shall mean, collectively, the UST Tranche A Only Collateral and the UST Tranche B Only Collateral.

"**Type**", when used in respect of any Loan or Borrowing, shall refer to the Rate by reference to which interest on such Loan or on the Loans comprising such Borrowing is determined. For purposes hereof, the term "**Rate**" shall mean Adjusted Term SOFR and the Alternate Base Rate.

"**Unaudited Financial Statements**" shall mean the unaudited consolidated balance sheets and related statements of operations and cash flows of the Borrower and its consolidated Subsidiaries as at the end of and for the fiscal quarter ended June 30March 31, 20192023).

"**Unencumbered Assets**" shall have the meaning specified in Section 5.21(d).

"**Uniform Commercial Code**" or "**UCC**" shall mean the Uniform Commercial Code as the same may from time to time be in effect in the State of New York or the Uniform Commercial Code (or similar code or statute) of another jurisdiction, to the extent it may be required to apply to any item or items of Collateral.

"**United States**" and "**U.S.**" mean the United States of America.

"**United States Tax Compliance Certificate**" shall have the meaning assigned to such term in Section 3.01(d).

"**U.S. Government Securities Business Day**" shall mean any day except for (i) a Saturday, (ii) a Sunday or (iii) a day on which the Securities Industry and Financial Markets Association recommends that the fixed income departments of its members be closed for the entire day for purposes of trading in United States government securities.

"**USA PATRIOT Act**" shall mean The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Title III of Pub. L. No. 107-56 (signed into law October 26, 2001)).

"**UST Adequate Protection Order**" means the interim order attached hereto as Exhibit H, as the same may be amended, modified or supplemented from time to time with the express written joinder or consent of the Lenders (and with respect to amendments, modifications or supplements that affect the rights or duties of any Agent, such Agent) or, upon entry thereof by the Bankruptcy Court, the final order approving the interim order attached hereto as Exhibit H.

"**UST Tranche A Agent**" shall mean, as the context may require, The Bank of New York Mellon, in its capacity as administrative agent and as collateral agent under the UST Tranche A Facility Documentation, such agents collectively or any permitted successor or assignee administrative agent or collateral agent under the UST Tranche A Facility Documentation.

"**UST Tranche A Controlled Account**" shall have the meaning assigned to such term in the UST Tranche A Credit Agreement (as in effect as of the date hereof).

"**UST Tranche A Credit Agreement**" shall mean that certain UST Tranche A Term Loan Credit Agreement dated as of the Amendment No. 2 Effective Date, among the Borrower, the other subsidiaries of the Borrower party thereto, the lenders party thereto and the Tranche A Treasury Agent, and as the same may be further amended, restated, modified, supplemented, extended, renewed, restructured, refunded, replaced or refinanced from time to time in one or more agreements (in each case with the same or new lenders, institutional investors or agents and resulting in a financing that constitutes (or that would constitute if incurred as a new financing) a Permitted Refinancing of the UST Tranche A Facility Indebtedness), including any agreement extending the maturity thereof or otherwise restructuring all or

any portion of the Indebtedness thereunder or increasing the amount loaned or issued thereunder or altering the maturity thereof), in each case as and to the extent permitted by this Agreement and, as applicable, the ABL Intercreditor Agreement and the Junior Lien Intercreditor Agreement.

"**UST ~~Tranche A Facility~~Adequate Protection Payments**" shall mean ~~the credit facility made available to the Borrower pursuant to the UST Tranche A Credit Agreement~~adequate protection payments expressly set forth in the UST Adequate Protection Order.

"**UST ~~Tranche A Facility Documentation~~Secured Parties**" shall mean, collectively, the Prepetition UST Tranche A ~~Credit Agreement and all security agreements, guarantees, pledge agreements and other agreements or instruments executed in connection therewith and including all "Loan Documents" (as defined in the~~Secured Parties and the Prepetition UST Tranche A ~~Credit Agreement) or similar term~~B Secured Parties.

"~~**UST Tranche A Facility Indebtedness**" shall mean Indebtedness of the Borrower or any Restricted Subsidiary outstanding under or secured by the UST Tranche A Facility Documentation, and in each case, all Permitted Refinancings thereof.~~

"~~**UST Tranche A Only Collateral**" shall mean the UST Tranche A Controlled Account and all Money (as defined in the UCC) and all cash, checks, other negotiable instruments, funds and other evidences of loan proceeds properly held therein.~~

"~~**UST Tranche A Secured Parties**" shall have the meaning assigned to such term in the ABL Intercreditor Agreement.~~

"~~**UST Tranche B Agent**" shall mean, as the context may require, The Bank of New York Mellon, in its capacity as administrative agent and as collateral agent under the UST Tranche B Facility Documentation, such agents collectively or any permitted successor or assignee administrative agent or collateral agent under the UST Tranche B Facility Documentation.~~

"~~**UST Tranche B Controlled Account**" shall have the meaning assigned to such term in the UST Tranche B Credit Agreement (as in effect as of the date hereof).~~

"~~**UST Tranche B Credit Agreement**" shall mean that certain UST Tranche B Term Loan Credit Agreement dated as of the Amendment No. 2 Effective Date, among the Borrower, the other subsidiaries of the Borrower party thereto, the lenders party thereto and the Tranche B Treasury Agent, and as the same may be further amended, restated, modified, supplemented, extended, renewed, restructured, refunded, replaced or refinanced from time to time in one or more agreements (in each case with the same or new lenders, institutional investors or agents and resulting in a financing that constitutes (or that would constitute if incurred as a new financing) a Permitted Refinancing of the UST Tranche B Facility Indebtedness), including any agreement extending the maturity thereof or otherwise restructuring all or any portion of the Indebtedness thereunder or increasing the amount loaned or issued thereunder or altering the maturity thereof), in each case as and to the extent permitted by this Agreement and, as applicable, the ABL Intercreditor Agreement and the Junior Lien Intercreditor Agreement.~~

"~~**UST Tranche B Facility**" shall mean the credit facility made available to the Borrower pursuant to the UST Tranche B Credit Agreement.~~

"~~**UST Tranche B Facility Documentation**" shall mean the UST Tranche B Credit Agreement and all security agreements, guarantees, pledge agreements and other agreements or instruments executed~~

~~in connection therewith and including all "Loan Documents" (as defined in the UST Tranche B Credit Agreement) or similar term.~~

~~"**UST Tranche B Facility Indebtedness**" shall mean Indebtedness of the Borrower or any Restricted Subsidiary outstanding under or secured by the UST Tranche B Facility Documentation, and in each case, all Permitted Refinancings thereof.~~

~~"**UST Tranche B Joint Collateral**" shall have the meaning assigned to such term in the ABL Intercreditor Agreement.~~

~~"**UST Tranche B Joint Account**" shall have the meaning assigned to such term in the ABL Intercreditor Agreement.~~

~~"**UST Tranche B Only Collateral**" shall mean the UST Tranche B Controlled Account and all Money (as defined in the UCC) and all cash, checks, other negotiable instruments, funds and other evidences of loan proceeds properly held therein.~~

~~"**UST Tranche B Priority Collateral**" shall have the meaning assigned to such term in the ABL Intercreditor Agreement.~~

~~"**UST Tranche B Secured Parties**" shall have the meaning assigned to such term in the ABL Intercreditor Agreement.~~

~~"**Weighted Average Life to Maturity**" shall mean, when applied to any Indebtedness at any date, the number of years obtained by dividing: (i) the sum of the products obtained by multiplying (a) the amount of each then remaining scheduled installment, sinking fund, serial maturity or other required scheduled payments of principal, including payment at final scheduled maturity, in respect thereof, by (b) the number of years (calculated to the nearest one-twelfth) that will elapse between such date and the making of such payment; by (ii) the then outstanding principal amount of such Indebtedness; *provided*, that for purposes of determining the Weighted Average Life to Maturity of any Refinanced Debt or any Indebtedness that is being modified, refinanced, refunded, renewed, replaced, restructured or extended (the "**Applicable Indebtedness**"), the effects of any amortization of or prepayments made on such Applicable Indebtedness prior to the date of the applicable modification, refinancing, restructuring, refunding, renewal, replacement or extension shall be disregarded.~~

"**wholly owned**" shall mean, with respect to a Subsidiary of a Person, a Subsidiary of such Person all of the outstanding Equity Interests of which (other than (x) director's qualifying shares and (y) shares issued to foreign nationals to the extent required by applicable Law) are owned by such Person and/or by one or more wholly owned Subsidiaries of such Person.

"**Withdrawal Liability**" shall mean liability to a Multiemployer Plan as a result of a complete or partial withdrawal from such Multiemployer Plan, as such terms are defined in Part I of Subtitle E of Title IV of ERISA.

Section 1.02    ~~Section 1.02.~~    *Other Interpretive Provisions.*  With reference to this Agreement and each other Loan Document, unless otherwise specified herein or in such other Loan Document:

(a)    The meanings of defined terms are equally applicable to the singular and plural forms of the defined terms.

(b)    (i) The words "herein," "hereto," "hereof" and "hereunder" and words of similar import when used in any Loan Document shall refer to such Loan Document as a whole and not to any particular provision thereof.

(ii)    Article, Section, Exhibit and Schedule references are to the Loan Document in which such reference appears.

(iii)    The term "including" is by way of example and not limitation.

(c)    The term "documents" includes any and all instruments, documents, agreements, certificates, notices, reports, financial statements and other writings, however evidenced, whether in physical or electronic form.

(d)    In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including"; the words "to" and "until" each mean "to but excluding"; and the word "through" means "to and including."

(e)    The words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

(f)    All references to "knowledge" or "awareness" of any Loan Party or a ~~Restricted~~ Subsidiary thereof means the actual knowledge of a Responsible Officer of a Loan Party or such ~~Restricted~~ Subsidiary.

(g)    Section headings herein and in the other Loan Documents are included for convenience of reference only and shall not affect the interpretation of this Agreement or any other Loan Document.

(h)    The word "or" is not exclusive.

~~(i) For purposes of determining compliance with any one of Sections 7.01, 7.02, 7.03, 7.05, 7.06, 7.08, 7.09 and 7.13, in the event that any Lien, Investment, Indebtedness, Disposition, Restricted Payment, affiliate transaction, Contractual Obligation or prepayment of Indebtedness meets the criteria of more than one of the categories of transactions permitted pursuant to any clause of such Section, such transaction (or portion thereof) at any time shall be permitted under one or more of such clauses as determined by the Borrower (and the Borrower shall be entitled to redesignate use of any such clauses from time to time) in its sole discretion at such time; provided that the Borrower shall not be permitted to subsequently reclassify any Lien, Investment, Indebtedness, Disposition, Restricted Payment, affiliate transaction, Contractual Obligation or prepayment of Indebtedness as having been incurred under a Non-Fixed Basket if such Lien, Investment, Indebtedness, Disposition, Restricted Payment, affiliate transaction, Contractual Obligation or prepayment of Indebtedness was originally incurred under a Fixed Basket or any other Basket that is not a Non-Fixed Basket.  For all purposes hereunder, (x) "Fixed Basket" shall mean any Basket that is subject to a fixed dollar limit and (y) "Non-Fixed Basket" shall mean any Basket that is subject to compliance with a financial ratio or test (including Total Net Leverage Ratio) or based on a percentage of Consolidated EBITDA or total assets.~~

(i)    ~~(j)~~ The usage of the term "written" includes electronic messages, including e-mail.

(j)    ~~(k)~~ Any reference herein or in any other Loan Document to (i) a transfer, assignment, sale, disposition or transfer, or similar term, shall be deemed to apply to a division of or by a limited liability company, or an allocation of assets to a series of a limited liability company, as if it were a

transfer, assignment, sale or transfer, or similar term, as applicable, to a separate Person, and (ii) a merger, consolidation, amalgamation or consolidation, or similar term, shall be deemed to apply to the unwinding of such a division or allocation, as if it were a merger, consolidation, amalgamation or consolidation or similar term, as applicable, with a separate Person.

Section 1.03    ~~Section 1.03.~~ *Certifications.*  All certifications to be made hereunder by an officer or representative of a Loan Party shall be made by such a Person in his or her capacity solely as an officer or representative of such Loan Party, on such Loan Party's behalf and not in such Person's individual capacity.

Section 1.04    ~~Section 1.04.~~ *Accounting Terms.*  All accounting terms not specifically or completely defined herein shall be construed in conformity with, and all financial data (including financial ratios and other financial calculations) required to be submitted pursuant to this Agreement shall be prepared in conformity with, GAAP, except as otherwise specifically prescribed herein or therein.

Section 1.05    ~~Section 1.05.~~ *Rounding.*  Any financial ratios required to be maintained by the Borrower pursuant to this Agreement (or required to be satisfied in order for a specific action to be permitted under this Agreement) shall be calculated by dividing the appropriate component by the other component, carrying the result to one place more than the number of places by which such ratio is expressed herein and rounding the result up or down to the nearest number (with a rounding-up if there is no nearest number).

Section 1.06    ~~Section 1.06.~~ *References to Agreements, Laws, Etc.*  Unless otherwise expressly provided herein, (a) references to Organization Documents, agreements (including the Loan Documents) and other contractual instruments shall be deemed to include all subsequent amendments, restatements, extensions, supplements, replacements, extensions, renewals, refinancings, restructurings and other modifications thereto, but only to the extent that such amendments, restatements, extensions, supplements, replacements, extensions, renewals, refinancings, restructurings and other modifications are not prohibited by hereby; and (b) references to any Law shall include all statutory and regulatory provisions consolidating, amending, replacing, supplementing or interpreting such Law.

Section 1.07    ~~Section 1.07.~~ *Times of Day.*  Unless otherwise specified, all references herein to times of day shall be references to Eastern time (daylight or standard, as applicable).

Section 1.08    ~~Section 1.08.~~ *Timing of Payment or Performance.*  Except as otherwise expressly provided herein, when the payment of any obligation or the performance of any covenant, duty or obligation is stated to be due or performance required on a day which is not a Business Day, the date of such payment ~~(other than as described in the definition of Interest Period)~~ or performance shall extend to the immediately succeeding Business Day.

~~Section 1.09.  *Cumulative Credit Transactions.*  If more than one action occurs on any given date the permissibility of the taking of which is determined hereunder by reference to the amount of the Cumulative Credit immediately prior to the taking of such action, the permissibility of the taking of each such action shall be determined independently and in no event may any two or more such actions be treated as occurring simultaneously.~~

~~Section 1.10.  *Pro Forma Calculations.*~~

~~(a) Notwithstanding anything to the contrary herein, the Total Leverage Ratio shall be calculated in the manner prescribed by this Section 1.10; *provided* that, notwithstanding anything to the contrary in~~

clauses (b), (c) or (d) of this Section 1.10, when calculating the Total Leverage Ratio for purposes of the Applicable ECF Percentage of Excess Cash Flow, the events described in this Section 1.10 that occurred subsequent to the end of the applicable Test Period shall not be given pro forma effect (provided, further, that the foregoing limitation will not be constituted to limit the deductibility of any amounts that are committed to be made or paid or are reasonably expected to be paid in the calculation of Excess Cash Flow for any period as provided for in the definition of Excess Cash Flow).

(b) For purposes of calculating the Total Leverage Ratio, Specified Transactions (and the incurrence or repayment of any Indebtedness in connection therewith) that have been made (i) during the applicable Test Period or (ii) subsequent to such Test Period and prior to or simultaneously with the event for which the calculation of any such ratio is made shall be calculated on a *pro forma* basis assuming that all such Specified Transactions (and any increase or decrease in Consolidated EBITDA and the component financial definitions used therein attributable to any Specified Transaction) had occurred on the first day of the applicable Test Period. If since the beginning of any applicable Test Period any Person that subsequently became a Restricted Subsidiary or was merged, amalgamated or consolidated with or into the Borrower or any of its Restricted Subsidiaries since the beginning of such Test Period shall have made any Specified Transaction that would have required adjustment pursuant to this Section 1.10, then the Total Leverage Ratio shall be calculated to give *pro forma* effect thereto in accordance with this Section 1.10.

(c) Whenever *pro forma* effect is to be given to a Specified Transaction, the *pro forma* calculations shall be made in good faith by a Senior Financial Officer of the Borrower and may include, for the avoidance of doubt, Cost Savings to the extent permitted by, and subject to the requirements of, clause (a)(viii) of the definition of "Consolidated EBITDA". Notwithstanding the foregoing, all *pro forma* adjustments under this clause (c) shall not, taken together with those added pursuant to clause (a)(viii) of the definition of "Consolidated EBITDA", increase *pro forma* Consolidated EBITDA by more than 5% for any Test Period (calculated prior to giving effect to any addback pursuant to this clause (c) or clause (a)(viii) of the definition of "Consolidated EBITDA").

(d) In the event that the Borrower or any Restricted Subsidiary incurs (including by assumption or guarantees) or repays (including by redemption, repayment, retirement or extinguishment) any Indebtedness included in the calculations of the Total Leverage Ratio (other than Indebtedness incurred or repaid under any revolving credit facility in the ordinary course of business for working capital purposes and not incurred in reliance on Section 7.03(t)), (i) during the applicable Test Period or (ii) subsequent to the end of the applicable Test Period and prior to or simultaneously with the event for which the calculation of any such ratio is made, then the Total Leverage Ratio shall be calculated giving *pro forma* effect to such incurrence or repayment of Indebtedness, to the extent required, as if the same had occurred on the last day of the applicable Test Period of the Total Leverage Ratio. Interest on a Capitalized Lease shall be deemed to accrue at an interest rate reasonably determined by a responsible financial or accounting officer of the Borrower to be the rate of interest implicit in such Capitalized Lease in accordance with GAAP. Interest on Indebtedness that may optionally be determined at an interest rate based upon a factor of a prime or similar rate, a London interbank offered rate, or other rate, shall be determined to have been based upon the rate actually chosen, or if none, then based upon such optional rate chosen as the Borrower or Restricted Subsidiary may designate.

(e) Whenever any provision of this Agreement requires the Borrower to have a Total Leverage Ratio on a Pro Forma Basis in connection with any action to be taken by the Borrower hereunder, the Borrower shall deliver to the Administrative Agent a certificate of a Responsible Officer setting forth in reasonable detail the calculations demonstrating such compliance or such Total Leverage Ratio.

Section 1.09    ~~Section 1.11.~~ *Certain Accounting Matters.*  Notwithstanding any other provision contained herein or in any other Loan Document, all terms of an accounting or financial nature used herein shall be construed, and all computations of amounts and ratios referred to herein shall be made, (a) without giving effect to any election under Statement of Financial Accounting Standards 159 or Accounting Standards Codification 825-10-25 (or any other Accounting Standards Codification or Financial Accounting Standard having a similar result or effect) to value any Indebtedness or other liabilities of the Borrower or any of its ~~Restricted~~ Subsidiaries at "fair value", as defined therein; and (b) without giving effect to any treatment of Indebtedness in respect of convertible debt instruments under Accounting Standards Codification 470-20 and/or Statement of Financial Accounting Standards 150 (or any other Accounting Standards Codification or Financial Accounting Standard having a similar result or effect) to value any such Indebtedness in a reduced or bifurcated manner as described therein, and such Indebtedness shall at all times be valued at the full stated principal amount thereof. Furthermore, unless the Borrower elects otherwise, notwithstanding any other provision contained herein or in any other Loan Document, for all purposes under this Agreement and the other Loan Documents, including negative covenants, financials covenants and component definitions, operating leases and Capitalized Leases will be deemed to be treated in a manner consistent with their current treatment under GAAP as in effect on December 31, 2018, notwithstanding any modifications or interpretive changes thereto that may occur thereafter.  For the avoidance of doubt, the principal amount of any non-interest bearing Indebtedness or other discount security constituting Indebtedness at any date shall be the principal amount thereof that would be shown on a balance sheet of the Borrower dated such date prepared in accordance with GAAP, except as expressly set forth in clauses (a) and (b) of this <u>Section 1.11</u>.

Section 1.10    ~~Section 1.12.~~ *Classification of Loans and Borrowings.*  For purposes of this Agreement, Loans may be classified and referred to by Class (e.g., ~~a "Tranche B-2 Term Loan") or by Type (e.g., a "SOFR Loan") or by Class and Type (e.g., a "SOFR Term~~an "Initial Postpetition Loan"). Borrowings also may be classified and referred to by Class (e.g., ~~a "Term Borrowing") or by Type (e.g., a "SOFR Borrowing") or by Class and Type (e.g., a "SOFR Term~~an "Initial Postpetition Borrowing").

Section 1.11    ~~Section 1.13.~~ *Currency Equivalents Generally~~.~~*

(a)~~.~~  For purposes of determining compliance with <u>Sections 7.01</u>, <u>7.02</u>, ~~7.03,~~ <u>7.05</u>, <u>7.06</u>, <u>7.08</u>, <u>7.09</u> and <u>7.13</u> with respect to any amount of Indebtedness, Lien, Asset Sale, Restricted Payment, Capital Expenditure, affiliate transaction, Contractual Obligation, prepayment of Indebtedness or Investment in a currency other than Dollars, no Default or Event of Default shall be deemed to have occurred solely as a result of changes in rates of currency exchange occurring after the time such Indebtedness or Investment is incurred (so long as such Indebtedness or Investment, at the time incurred, made or acquired, was permitted hereunder) and once incurred or made, the amount of such Indebtedness, Lien, Asset Sale, Restricted Payment, Capital Expenditure, affiliate transaction, Contractual Obligation, prepayment of Indebtedness or Investment, shall be always deemed to be at the Dollar amount on such date, regardless of later changes in currency exchange rates.

~~(b) For purposes of determining the Total Leverage Ratio, amounts denominated in a currency other than Dollars will be converted to Dollars at the currency exchange rates used in preparing the Borrower's financial statements corresponding to the Test Period with respect to the applicable date of determination and will, in the case of Indebtedness, reflect the currency translation effects, determined in accordance with GAAP, of Swap Contracts permitted hereunder for currency exchange risks with respect to the applicable currency in effect on the date of determination of the Dollar equivalent of such Indebtedness.~~

Section 1.12    ~~Section 1.14.~~ *Effect of Amendment and Restatement.*  On the ~~Restatement~~Amendment No. 4 Effective Date, the ~~Existing~~Prepetition B-2 Term Loan Credit Agreement

shall be amended and restated in its entirety in the form hereof. The parties hereto acknowledge and agree that, subject to the DIP Order and except as modified by the DIP Term Sheet (prior to the date hereof) and in this Agreement and the other Loan Documents delivered on the Restatement Effective Date, the Existing, the Prepetition B-2 Term Loan Credit Agreement and all Loan Documents thereunder (collectively, together with the ExistingOriginal Credit Agreement, the "**Existing Loan Documents**") are hereby reaffirmed, ratified and confirmed on behalf of the parties hereto and thereto on the date hereofAmendment No. 4 Effective Date, and the Obligations thereunder shall be amended and completely restated hereby, but this Agreement shall not constitute a novation, extinguishment or substitution of such Obligations or in any way impair the Liens created pursuant to the Existing Loan Documents or affect the perfection or priority thereof, all of which are hereby reaffirmed, ratified and confirmed as of the Amendment No. 4 Effective Date. Each party hereto hereby confirms that the Existing Defaults exist under the Loan Documents as in effect prior to the date of Amendment No. 4 and upon the effectiveness of Amendment No. 4 such Existing Defaults continue to exist for purposes of the Loan Documents executed in connection with the Postpetition B-2 Facility. The parties hereto acknowledge that the 2.00% default rate contemplated by Section 2.07 of the Prepetition B-2 Term Loan Credit Agreement shall continue to accrue and be payable in accordance with this Agreement and the DIP Order with respect to the Prepetition Term Loans but that no Lender or Agent may take any action or exercise any other rights or remedies with respect to the Existing Defaults and acknowledge that any representations, warranties or covenants made herein on and following the Amendment No. 4 Effective Date are being made without taking into account the Existing Defaults. Amendment No. 4 also restates and replaces the DIP Term Sheet insofar as the DIP Term Sheet relates to the Postpetition B-2 Facility.

Section 1.13    *Québec Matters*.    For purposes of any assets, liabilities or entities located in the Province of Québec and for all other purposes pursuant to which the interpretation or construction of this Agreement or any other Loan Document may be subject to the laws of the Province of Québec or a court or tribunal exercising jurisdiction in the Province of Québec, (a) "personal property" shall include "movable property", (b) "real property" or "real estate" shall include "immovable property", (c) "tangible property" shall include "corporeal property", (d) "intangible property" shall include "incorporeal property", (e) "security interest", "mortgage" and "lien" shall include a "hypothec", "right of retention", "prior claim", "reservation of ownership" and a resolutory clause, (f) all references to filing, perfection, priority, remedies, registering or recording under the Uniform Commercial Code or a PPSA shall include publication under the Civil Code of Québec, (g) all references to "perfection" of or "perfected" liens or security interest shall include a reference to an "opposable" or "set up" hypothec as against third parties, (h) any "right of offset", "right of setoff" or similar expression shall include a "right of compensation", (i) "goods" shall include "corporeal movable property" other than chattel paper, documents of title, instruments, money and securities, (j) an "agent" shall include a "mandatary", (k) "construction liens" or "mechanics, materialmen, repairmen, construction contractors or other like Liens" shall include "legal hypothecs" and "legal hypothecs in favour of persons having taken part in the construction or renovation of an immovable", (l) "joint and several" shall include "solidary", (m) "gross negligence or wilful misconduct" shall be deemed to be "intentional or gross fault", (n) "beneficial ownership" shall include "ownership on behalf of another as mandatary", (o) "easement" shall include "servitude", (p) "priority" shall include "rank" or "prior claim", as applicable (q) "survey" shall include "certificate of location and plan", (r) "state" shall include "province", (s) "fee simple title" shall include "absolute ownership" and "ownership" (including ownership under a right of superficies), (t) "accounts" shall include "claims", (u) "legal title" shall be including "holding title on behalf of an owner as mandatary or prete-nom", (v) "ground lease" shall include "emphyteusis" or a "lease with a right of superficies, as applicable, (w) "leasehold interest" shall include "rights resulting from a lease", (x) "lease" shall include a "leasing contract" and (y) "foreclosure" shall include "the exercise of hypothecary recourse", and (z) "guarantee" and "guarantor" shall include "suretyship" and "surety", respectively. The parties hereto confirm that it is their wish that this Agreement and any other document executed in connection with the transactions contemplated herein be drawn up in the English language only and that all other documents contemplated

thereunder or relating thereto, including notices, may also be drawn up in the English language only. *Les parties aux présentes confirment que c'est leur volonté que cette convention et les autres documents de crédit soient rédigés en langue anglaise seulement et que tous les documents, y compris tous avis, envisagés par cette convention et les autres documents peuvent être rédigés en langue anglaise seulement.*

# ARTICLE 2
## The Credits

Section 2.01    ~~Section 2.01.~~  ~~*Tranche B-2*~~ *Term Loan Commitments*.

~~(a) [Reserved].~~

(a)    Subject to the terms and conditions set forth in the Prepetition B-2 Term Loan Credit Agreement, each Prepetition B-2 Lender party to the Prepetition B-2 Term Loan Credit Agreement at such time severally and not jointly made, on September 11, 2019, certain Term Loans to the Borrower. The aggregate principal amount of the Prepetition Term Loans as of the Postpetition B-2 Facility Closing Date was $485,372,693.29 and is allocated among the Lenders in the aggregate principal amount set forth opposite each Lender's name on Appendix D under the caption "Prepetition Term Loan Amount." The Prepetition Loans were automatically accelerated with effect on and from the Petition Date in accordance with Section 8.02 of the Prepetition B-2 Term Loan Credit Agreement.

(b)    Subject to the terms and conditions ~~and relying upon the representations and warranties~~ set forth in the DIP Term Sheet (if applicable) or herein and in the DIP Order, each ~~Tranche B-2 Term~~ Lender ~~agrees,~~ severally and not jointly~~,~~ agrees to make ~~a Tranche B-2 Term,~~ on the applicable borrowing date, a Loan to the Borrower ~~on the Restatement Effective Date in a principal~~in an aggregate amount not to exceed ~~its Tranche B-2 Term Loan Commitment.  Amounts repaid or prepaid in respect of Tranche B-2 Term Loan may not be reborrowed.~~such Lender's Commitment.  The Borrower may make only three (3) Borrowings under the Commitments that shall be, (a) in the case of the Initial Postpetition Commitments, one Borrowing which was made on the Postpetition B-2 Facility Closing Date under the terms and conditions of the DIP Term Sheet and the DIP Order in an aggregate principal amount equal to $42,105,263.16 plus $4,000,000 on account of the Arrangement Fee pursuant to Section 2.05(a), (b) in the case of the Second Postpetition Commitments, as set forth in Section 2.02(b), and (c) in the case of the Final Postpetition Commitments, as set forth in Section 2.02(c).  The Initial Postpetition Loans were made on the Postpetition B-2 Facility Closing Date pursuant to the terms and conditions of the DIP Term Sheet and the DIP Order and the Initial Postpetition Commitments automatically reduced to zero as of such date. The Second Postpetition Commitments shall reduce automatically on a dollar for dollar basis immediately after the making of the Second Postpetition Loans.  The Final Postpetition Commitments shall reduce automatically on a dollar for dollar basis immediately after the making of the Final Postpetition Loans.

(c)    The Prepetition Term Loans and the New Money Postpetition Term Loans are sometimes referred to individually as a "Term Loan" and together as the "Term Loans."

(d)    Prepetition Term Loans, Initial Postpetition Loans, Second Postpetition Loans and Final Postpetition Loans which are repaid or prepaid may not be reborrowed.  All New Money Postpetition Term Loans and all other amounts owed hereunder and under any other Loan Document with respect to the New Money Postpetition Term Loans shall be paid in full in cash not later than the Maturity Date.

Section 2.02    ~~Section 2.02.~~  ~~*Loans*~~.

(a)     Each ~~New Money Postpetition Term~~ Loan shall be made as part of a Borrowing consisting of ~~New Money Postpetition Term~~ Loans made by the Lenders ratably in accordance with their applicable Commitments; *provided, however*, that the failure of any Lender to make any ~~New Money Postpetition Term~~ Loan shall not in itself relieve any other Lender of its obligation to lend hereunder (it being understood, however, that no Lender shall be responsible for the failure of any other Lender to make any Loan required to be made by such other Lender). ~~The Loans comprising any Borrowing shall be in an aggregate principal amount that is (i) an integral multiple of $1,000,000 and not less than $5,000,000 (except, with respect to any Other Term Loans, to the extent otherwise provided in the applicable Refinancing Amendment) or (ii) equal to the remaining available balance of the applicable Commitments.~~

~~(b) Subject to Sections 2.08 and 3.02 each Borrowing shall be comprised entirely of ABR Loans or SOFR Loans as the Borrower may request pursuant to Section 2.03. Each Lender may at its option make any SOFR Loan by causing any domestic or foreign branch or Affiliate of such Lender to make such Loan; provided that any exercise of such option shall not affect the obligation of the Borrower to repay such Loan to such Lender in accordance with the terms of this Agreement. Borrowings of more than one Type may be outstanding at the same time; provided, however, that the Borrower shall not be entitled to request any Borrowing that, if made, would result in more than five SOFR Borrowings outstanding hereunder at any time plus up to an additional 3 Interest Periods in respect of each (i) [reserved], (ii) Extended Term Loans and (iii) Other Term Loans, provided that the total number of such additional Interest Periods does not exceed 15 at any one time. For purposes of the foregoing, Borrowings having different Interest Periods, regardless of whether they commence on the same date, shall be considered separate Borrowings.~~

(b)     Subject to the terms and conditions set forth herein and in the DIP Order, the Borrower may request Second Postpetition Loans on or after the Amendment No. 4 Effective Date, in an aggregate amount not to exceed $26,315,789.47.

(c)     Subject to the terms and conditions set forth herein and in the DIP Order, the Borrower may request Final Postpetition Loans on or after the Final Order Entry Date, in an aggregate amount not to exceed $31,578,947.37.

(d)     Each Borrowing shall be comprised entirely of ABR Loans.

(e)     ~~(c)~~ Each Lender shall make each ~~Tranche B-2~~ New Money Postpetition Term Loan to be made by it hereunder on ~~the Restatement Effective~~ or after the Postpetition B-2 Facility Closing Date by wire transfer of immediately available funds to the Administrative Agent's Office not later than 1:00 p.m., New York City time, and upon receipt of all requested funds the Administrative Agent shall promptly credit the amounts so received to ~~an account designated by the Borrower in the applicable Request for Credit Extension~~ the DIP Proceeds Account.

(f)     ~~(d)~~ Unless the Administrative Agent shall have received notice from a Lender prior to the date of any Borrowing that such Lender will not make available to the Administrative Agent such Lender's portion of such Borrowing, the Administrative Agent may assume that such Lender has made such portion available to the Administrative Agent on the date of such Borrowing in accordance with paragraph (~~c~~e) above and the Administrative Agent may, in reliance upon such assumption, make available to the Borrower on such date a corresponding amount. If the Administrative Agent shall have so made funds available then, to the extent that such Lender shall not have made such portion available to the Administrative Agent, such Lender and the Borrower severally agree to repay to the Administrative Agent forthwith on demand such corresponding amount together with interest thereon, for each day from the date such amount is made available to the Borrower to but excluding the date such amount is repaid

to the Administrative Agent at (i) in the case of the Borrower, a rate per annum equal to the interest rate applicable at the time to the Loans comprising such Borrowing, and (ii) in the case of such Lender, a rate determined by the Administrative Agent to represent its cost of overnight or short-term funds (which determination shall be conclusive absent manifest error).  If such Lender shall repay to the Administrative Agent such corresponding amount, such amount shall constitute such Lender's Loan as part of such Borrowing for purposes of this Agreement.

Section 2.03    ~~Section 2.03.~~  *Borrowing Procedure*.  In order to request a Borrowing, the Borrower shall notify the Administrative Agent of such request in writing ~~(a) in the case of a SOFR Borrowing,~~ not later than 1:00 p.m., New York City time, ~~three~~two (2) Business Days before ~~a proposed Borrowing (or, in the case of the extension of credit on the Restatement Effective Date, prior to the proposed Borrowing), and (b) in the case of an ABR Borrowing, not later than 1:00 p.m., New York City time, one Business Day before a~~such proposed Borrowing.  Each such Request for Credit Extension shall be irrevocable (but may be conditioned upon the prepayment of indebtedness or the consummation of a specified transaction) and shall specify the following information:  (i) the Class of Loans to be borrowed ~~and whether such Borrowing is to be a SOFR Borrowing or an ABR Borrowing~~; (ii) the date of such Borrowing (which shall be a Business Day); (iii) the ~~number and location of the account to which funds are to be disbursed;~~wire instructions for the DIP Proceeds Account to which such funds shall be delivered and (iv) the amount of such Borrowing~~; and (v) if such Borrowing is to be a SOFR Borrowing, the Interest Period with respect thereto~~; *provided, however*, that, notwithstanding any contrary specification in any Request for Credit Extension, each requested Borrowing shall comply with the requirements set forth in Section 2.02~~.  If no election as to the Type of Borrowing is specified in any such notice, then the requested Borrowing shall be an ABR Borrowing.  If no Interest Period with respect to any SOFR Borrowing is specified in any such notice, then the Borrower shall be deemed to have selected an Interest Period of one month's duration~~ and shall be subject to satisfaction (or waiver) of the conditions precedent set forth in Section 4.01.  The Administrative Agent shall promptly advise the applicable Lenders of any notice given pursuant to this Section 2.03 (and the contents thereof), and of each Lender's portion of the requested Borrowing.

Section 2.04    ~~Section 2.04.~~  *Evidence of Debt; Repayment of Loans*.

(a)    The Borrower hereby unconditionally promises to pay to the Administrative Agent for the account of each Lender the principal amount of each Term Loan of such Lender as provided in Section 2.11 ~~(or, in the case of Extended Term Loans or Other Term Loans, as provided for in the applicable Extension Offer, Refinancing Amendment or other governing documentation)~~.

(b)    Each Lender shall maintain in accordance with its usual practice an account or accounts evidencing the indebtedness of the Borrower to such Lender resulting from each Loan made by such Lender from time to time, including the amounts of principal and interest payable and paid to such Lender from time to time under this Agreement.

(c)    The Administrative Agent shall maintain accounts in which it will record (i) the amount of each Loan made hereunder~~,~~ and the Class ~~and Type ~~thereof~~and, if applicable, the Interest Period applicable thereto~~, (ii) the amount of any principal or interest due and payable or to become due and payable from the Borrower to each Lender hereunder and (iii) the amount of any sum received by the Administrative Agent hereunder from the Borrower or any Guarantor and each Lender's share thereof.

(d)    The entries made in the accounts maintained pursuant to paragraphs (b) and (c) above shall be prima facie evidence of the existence and amounts of the obligations therein recorded; *provided, however*, that (i) the failure of any Lender or the Administrative Agent to maintain such accounts or any error therein shall not in any manner affect the obligations of the Borrower to repay the Loans in

accordance with their terms and (ii) in the event of any conflict between the accounts set forth in paragraphs (b) and (c) above, the amounts set forth in the accounts maintained pursuant to paragraph (c) shall prevail.

(e)     Any Lender may request that Loans made by it hereunder be evidenced by a Term Note. In such event, the Borrower shall promptly execute and deliver to such Lender a Term Note payable to such Lender and its registered assigns in accordance with Section 10.04.  Notwithstanding any other provision of this Agreement, in the event any Lender shall request and receive a Term Note, the interests represented by such Term Note shall at all times (including after any assignment of all or part of such interests pursuant to Section 10.04) be represented by one or more promissory notes payable to the payee named therein or its registered assigns, unless such Term Note is duly cancelled.

(f)     This Section 2.04 shall at all times be interpreted and administered in such a way that the Term Notes will be issued in "registered form" within the meaning of Treasury Regulation Section 5f.163-1(a).

Section 2.05     Section 2.05. *Fees*.

(a)     The Borrower agrees to pay the Administrative Agent, for the account of the Lenders, an arrangement fee (the "**Arrangement Fee**") in an amount of equal to 4.00% of the aggregate amount of the Commitments immediately prior to the making of the Initial Postpetition Loans (i.e., $4,000,000). The Arrangement Fee was fully earned and due and payable on the Postpetition B-2 Facility Closing Date and was paid in kind (in lieu of payment in cash) and such amount is deemed added to the principal amount of the outstanding Initial Postpetition Loan extended by the Lenders as of the Postpetition B-2 Facility Closing Date.

(b)     (a) The Borrower agrees to pay to the Administrative AgentAgents, for itstheir own account, the administrative agent and collateral agent fees applicable to the Facilities payable in the amounts and at the times agreed upon between the Borrower and the Administrative Agent as set forth in the Administrative AgentAgency Fee Letter (the fees pursuant to Section 2.05(a) and this Section 2.05(b), collectively, the "**Fees**"). All Fees pursuant to this Section 2.05(b) shall be paid on the dates due in immediately available funds.

(c)     (b) All Fees shall be paid on the dates due, in immediately available funds, to the Administrative Agent. Once paid, none of the Fees shall be refundable under any circumstances.

(c) The Borrower agrees to pay to the Administrative Agent, for the ratable account of each Tranche B-2 Term Lender, an exit fee in an aggregate amount equal to 2.00% of the aggregate principal amount of the Tranche B-2 Term Loans outstanding as of the Amendment No. 3 Effective Date (the "**Exit Fee**"), which Exit Fee shall be earned in full and shall be due on the Amendment No. 3 Effective Date but shall be payable in cash on the earliest to occur of (x) the Maturity Date, (y) the termination, conversion and/or repayment or prepayment of the Tranche B-2 Term Loans in full (including after or as a result of an Event of Default or acceleration of the Tranche B-2 Term Loans) of the Tranche B-2 Term Loans, and (z) any acceleration of the Tranche B-2 Term Loans, including as a result of any insolvency, liquidation or other similar event with respect to any Loan Party or its Subsidiaries; *provided* that, so long as no Event of Default is continuing at such time, in the event of a repayment or prepayment of the Tranche B-2 Term Loans in full with the proceeds of a new financing facility prior to September 30, 2023, the Exit Fee shall be reduced to 1.00% of the aggregate principal amount of the Tranche B-2 Term Loans outstanding as of the Amendment No. 3 Effective Date. Without limiting the generality of the foregoing, it is understood and agreed that if the Tranche B-2 Term Loans are accelerated or otherwise become due prior to their maturity date, in each case, in respect of any Event of Default (including upon

the occurrence of a bankruptcy or insolvency event (including the acceleration of claims by operation of law)), the Exit Fee applicable with respect to a voluntary prepayment of the Tranche B-2 Term Loans will also be payable on the date of such acceleration or such other prior due date as though the Tranche B-2 Term Loans were voluntarily prepaid as of such date and shall constitute part of the Obligations, in view of the impracticability and extreme difficulty of ascertaining actual damages and by mutual agreement of the parties as to a reasonable calculation of each Term Lender's loss as a result thereof. Any exit fee payable above shall be presumed to be the liquidated damages sustained by each Term Lender and the Borrower agrees that it is reasonable under the circumstances currently existing. THE BORROWER EXPRESSLY WAIVES (TO THE FULLEST EXTENT IT MAY LAWFULLY DO SO) THE PROVISIONS OF ANY PRESENT OR FUTURE STATUTE OR LAW THAT PROHIBITS OR MAY PROHIBIT THE COLLECTION OF THE EXIT FEE IN CONNECTION WITH ANY SUCH ACCELERATION. The Borrower expressly agrees (to the fullest extent it may lawfully do so) that: (A) the Exit Fee is reasonable and is the product of an arm's length transaction between sophisticated business people, ably represented by counsel; (B) the Exit Fee shall be payable notwithstanding the then prevailing market rates at the time payment is made; (C) there has been a course of conduct between the Term Lenders and the Borrower giving specific consideration in this transaction for such agreement to pay the Exit Fee; and (D) the Borrower shall be estopped hereafter from claiming differently than as agreed to in this paragraph.

Section 2.06   ~~Section 2.06.~~ *Interest on Loans*.

(a)   Subject to the provisions of Section 2.07, the Loans ~~comprising each ABR Borrowing~~ shall bear interest (computed on the basis of the actual number of days elapsed over a year of 365 or 366 days, as the case may be, and calculated from and including the date of such Borrowing to but excluding the date of repayment thereof) at a rate per annum equal to the Alternate Base Rate plus the Applicable Margin.  For the avoidance of doubt, no date of payment shall be included in the calculation of fees or interest.

(b)   ~~Subject to the provisions of Section 2.07, the Loans comprising each SOFR Borrowing shall bear interest (computed on the basis of the actual number of days elapsed over a year of 360 days) at a rate per annum equal to Adjusted Term SOFR for the Interest Period in effect for such Borrowing plus the Applicable Margin.~~[Reserved].

(c)   Interest on each Loan shall be payable in cash on the Interest Payment Dates applicable to such Loan except as otherwise provided in this Agreement.  The applicable Alternate Base Rate ~~or Adjusted Term SOFR for each Interest Period or day within an Interest Period, as the case may be,~~ shall be determined by the Administrative Agent, and such determination shall be conclusive absent manifest error.

~~(d) Notwithstanding anything to the contrary in this Section 2.06,~~

~~(i)   on the Amendment No. 1 Effective Date and each Interest Payment Date during the PIK Period, the Borrower shall pay a portion of the interest due on each such date in cash in an amount equal to interest at a rate per annum equal to one percent (1%) (the "**Cash Interest Portion**"); and~~

~~(ii)   all accrued but unpaid interest as of the Amendment No. 1 Effective Date (including all accrued and unpaid interest during the Interest Period that commenced on December 31, 2019 and ending on March 31, 2020) and all interest payable on each Interest Payment Date~~

during the PIK Period (other than the Cash Interest Portion which is due and payable on each such Interest Payment Date) accruing during the period commencing on the Amendment No. 1 Effective Date and ending on June 30, 2020 (such period, the "**PIK Period**"), with respect to any ABR Term Loan or SOFR Term Loan, shall be payable in kind, with such interest amount being automatically added to, and made part of, the outstanding principal amount of Loans in the case of (x) accrued but unpaid interest as of the Amendment No. 1 Effective Date, on the Amendment No. 1 Effective Date, and (y) interest payable on each Interest Payment Date during the PIK Period, on such date (all interest payable in kind pursuant to this Agreement, "**PIK Interest**"); *provided* that with respect to any such payment of PIK Interest pursuant to this clause (d), the then Applicable Margin in respect of such accrued and unpaid interest shall be increased by an additional amount of basis points such that the all-in interest rate for each such Borrowing, inclusive of Adjusted Term SOFR for such Interest Period then in effect or the Alternate Base Rate, as applicable, is equal to thirteen percent (13.00%) per annum, which increase shall also be paid in the form of PIK Interest.

Unless the context otherwise requires, for all purposes under this Agreement, references to the "principal" and the "principal amount" of any Term Loans include any increase in the principal amount thereof due to the addition of PIK Interest thereto pursuant to this clause (d).  All interest payable after June 30, 2020 shall be payable in cash.

Section 2.07    Section 2.07.  *Default Interest.*  Automatically from and after the occurrence and during the continuance of an Event of Default under Section 8.01(a), (f) or (g) or at the election of the Required Lenders during the continuance of any other Event of Default,(excluding the Existing Defaults), the principal amount of all New Money Postpetition Term Loans outstanding and, to the extent permitted by applicable law, any interest payments on the New Money Postpetition Term Loans or any fees or other amounts owed hereunder, shall thereafter, after as well as before judgment, bear interest (including post-petition interest in any proceeding under Debtor Relief Laws) payable on written demand at a rate that is 2.0% per annum in excess of the interest rate otherwise payable hereunder with respect to the applicable New Money Postpetition Term Loans (or, in the case of any such fees and other amounts, at a rate which is 2.0% per annum in excess of the interest rate otherwise payable hereunder for ABR Loans); *provided* that in the case of SOFR Term Loans, upon the expiration of the Interest Period in effect at the time any such increase in interest rate is effective, if such SOFR Loans shall become ABR Loans in accordance with Section 2.10(e), such Loans shall thereafter bear interest payable upon written demand at a rate which is 2.0% per annum in excess of the interest rate otherwise payable hereunder for ABR Loans.).

Section 2.08    Section 2.08.  *Alternate Rate of Interest*[Reserved].

Subject to clauses (b), (c), (d), (e) and (f) of this Section 2.08:

(i)    if the Administrative Agent reasonably determines (which determination shall be conclusive absent manifest error) prior to the commencement of any Interest Period for a SOFR Loan, that adequate and reasonable means do not exist for ascertaining the Adjusted Term SOFR or the

Term SOFR (including because the Term SOFR Reference Rate is not available or published on a current basis) for such Interest Period; or

(ii)    the Administrative Agent is advised by the Required Lenders that prior to the commencement of any Interest Period for a SOFR Loan, the Adjusted Term SOFR for such Interest Period will not adequately and fairly reflect the cost to such Lenders of making or maintaining their Loans (or its Loan) included in such Loan for such Interest Period;

then the Administrative Agent shall give notice thereof to the Borrower and the Lenders in accordance with Section 10.01 as promptly as practicable thereafter and, until the Administrative Agent notifies the Borrower and the Lenders that the circumstances giving rise to such notice no longer exist, any notice of conversion or continuation that requests the conversion of any Loans to or continuation of any Loans as, a SOFR Loan shall be ineffective. Furthermore, if any SOFR Loan is outstanding on the date of the Borrower's receipt of the notice from the Administrative Agent referred to in this Section 2.08(a), then until (x) the Administrative Agent notifies the Borrower and the Lenders that the circumstances giving rise to such notice no longer exist and (y) the Borrower delivers a new notice of conversion or continuation in accordance with the terms of Section 2.10, any SOFR Loans shall on the last day of the Interest Period applicable to such Loan (or the next succeeding Business Day if such day is not a Business Day), be converted by the Administrative Agent to, and shall constitute, ABR Loans.

(b)    Benchmark Replacement. Notwithstanding anything to the contrary herein or in any other Loan Document, if a Benchmark Transition Event and its related Benchmark Replacement Date have occurred prior to any setting of the then current Benchmark, then (A) if a Benchmark Replacement is determined in accordance with clause (a) of the definition of "Benchmark Replacement" for such Benchmark Replacement Date, such Benchmark Replacement will replace such Benchmark for all purposes hereunder and under any Loan Document in respect of such Benchmark setting and subsequent Benchmark settings without any amendment to, or further action or consent of any other party to, this Agreement or any other Loan Document and (B) if a Benchmark Replacement is determined in accordance with clause (b) of the definition of "Benchmark Replacement" for such Benchmark Replacement Date, such Benchmark Replacement will replace such Benchmark for all purposes hereunder and under any Loan Document in respect of any Benchmark setting at or after 5:00 p.m. (New York City time) on the fifth (5th) Business Day after the date notice of such Benchmark Replacement is provided to the Lenders without any amendment to, or further action or consent of any other party to, this Agreement or any other Loan Document so long as the Administrative Agent has not received, by such time, written notice of objection to such Benchmark Replacement from Lenders comprising the Required Lenders. If the Benchmark Replacement is Daily Simple SOFR, all interest payments will be payable on a quarterly basis unless the Administrative Agent and the Borrower elect monthly payments.

(c)    Benchmark Replacement Conforming Changes. Notwithstanding anything to the contrary herein or in any other Loan Document, in connection with the use, administration, adoption or implementation of a Benchmark Replacement, the Administrative Agent will have the right in consultation with the Borrower to make Conforming Changes from time to time and, notwithstanding anything to the contrary herein or in any other Loan Document, any amendments implementing such Conforming Changes will become effective without any further action or consent of any other party to this Agreement or any other Loan Document.

(d)    Notice; Standards for Decisions and Determinations. The Administrative Agent will promptly notify the Borrower and the Lenders of (A) the implementation of any Benchmark Replacement and (B) the effectiveness of any Conforming Changes in connection with the use,

administration, adoption or implementation of a Benchmark Replacement. The Administrative Agent will promptly notify the Borrower of (A) the removal or reinstatement of any tenor of a Benchmark pursuant to this Section 2.08 and (B) the commencement of any Benchmark Unavailability Period. Any determination, decision or election that may be made by the Administrative Agent or, if applicable, the Borrower or any Lender (or group of Lenders) pursuant to this Section 2.08, including any determination with respect to a tenor, rate or adjustment or of the occurrence or non-occurrence of an event, circumstance or date and any decision to take or refrain from taking any action or any selection, will be conclusive and binding absent manifest error and may be made in its or their sole discretion and without consent from any other party to this Agreement or any other Loan Document, except, in each case, as expressly required pursuant to this Section 2.08.

(e)    Unavailability of Tenor of Benchmark. At any time (including in connection with the implementation of a Benchmark Replacement) (A) if the then-current Benchmark is a term rate (including the Term SOFR Reference Rate) and either (1) any tenor for such Benchmark is not displayed on a screen or other information service that publishes such rate from time to time as selected by the Administrative Agent in its reasonable discretion in consultation with Borrower or (2) the administrator of such Benchmark or the regulatory supervisor for the administrator of such Benchmark has provided a public statement or publication of information announcing that any tenor for such Benchmark is not or will not be representative or in compliance with or aligned with the International Organization of Securities Commissions (IOSCO) Principles for Financial Benchmarks, then the Administrative Agent in consultation with the Borrower may modify the definition of "Interest Period" (or any similar or analogous definition) for any Benchmark settings at or after such time to remove such unavailable, non-representative, non-compliant or non-aligned tenor and (B) if a tenor that was removed pursuant to clause (A) above either (1) is subsequently displayed on a screen or information service for a Benchmark (including a Benchmark Replacement) or (2) is not or will not be representative or in compliance with or aligned with the International Organization of Securities Commissions (IOSCO) Principles for Financial Benchmarks for a Benchmark (including a Benchmark Replacement), then the Administrative Agent in consultation with the Borrower may modify the definition of "Interest Period" (or any similar or analogous definition) for all Benchmark settings at or after such time to reinstate such previously removed tenor.

(f)    Benchmark Unavailability Period.  Upon the Borrower's receipt of notice of the commencement of a Benchmark Unavailability Period, the Borrower may revoke any pending request for a SOFR Loan, or conversion to or continuation of SOFR Loans to be made, converted or continued during any Benchmark Unavailability Period and, failing that, the Borrower will be deemed to have converted any such request in respect of a SOFR Loan into a request for a Borrowing of or conversion to ABR Loans in the amount specified therein and any outstanding affected SOFR Loans will be deemed to have converted into ABR Loans at the end of the applicable Interest Period.  During a Benchmark Unavailability Period or at any time that a tenor for the then-current Benchmark is not an Available Tenor, the component of Base Rate, based upon the then-current Benchmark or such tenor for such Benchmark, as applicable, will not be used in any determination of Base Rate.

Section 2.09    Section 2.09. *Termination and Reduction of Commitments*[Reserved].

(a) The Term Loan Commitment for the Tranche B-2 Term Loan in effect on the Restatement Effective Date shall automatically terminate upon the making of the Tranche B-2 Term Loans on the Restatement Effective Date.

(b) Upon at least one Business Days' prior irrevocable written or fax notice to the Administrative Agent, the Borrower may at any time in whole permanently terminate, or from time to time in part

permanently reduce, any Class of unfunded Term Loan Commitments; *provided, however*, that each partial reduction of any Class of Term Loan Commitments shall be in an integral multiple of $1,000,000 and in a minimum amount of $1,000,000; *provided* further that, a notice of termination of the Commitments of any Class delivered by the Borrower may state that such notice is conditioned upon the consummation of an acquisition or sale transaction or upon the effectiveness of other credit facilities or the receipt of proceeds from the issuance of other Indebtedness or any other specified event, in which case such notice may be revoked by the Borrower (by notice to the Administrative Agent on or prior to the specified effective date) if such condition is not satisfied.

(c) Each reduction in the Term Loan Commitments hereunder shall be made ratably among the Lenders in accordance with their respective applicable Commitments.

Section 2.10    Section 2.10.  *Conversion and Continuation of Borrowings* [*Reserved*].

.  The Borrower shall have the right at any time upon prior irrevocable written notice to the Administrative Agent (a) not later than 1:00 p.m., New York City time, one Business Day prior to the day of any conversion, to convert any SOFR Borrowing into an ABR Borrowing, (b) not later than 1:00 p.m., New York City time, three Business Days prior to conversion or continuation, to convert any ABR Borrowing into a SOFR Borrowing or to continue any SOFR Borrowing as a SOFR Borrowing for an additional Interest Period, and (c) not later than 1:00 p.m., New York City time, three Business Days prior to conversion, to convert the Interest Period with respect to any SOFR Borrowing to another permissible Interest Period, subject in each case to the following:

(i) [reserved];

(ii) each conversion or continuation shall be made pro rata among the Lenders in accordance with the respective principal amounts of the Loans comprising the converted or continued Borrowing;

(iii) if less than all the outstanding principal amount of any Borrowing shall be converted or continued, then each resulting Borrowing shall satisfy the limitations specified in Sections 2.02(a) and 2.02(b) regarding the principal amount and maximum number of Borrowings of the relevant Type;

(b) each conversion shall be effected by each Lender and the Administrative Agent by recording for the account of such Lender the new Loan of such Lender resulting from such conversion and reducing the Loan (or portion thereof) of such Lender being converted by an equivalent principal amount; accrued interest on any SOFR Loan (or portion thereof) being converted shall be paid by the Borrower at the time of conversion;

(c) any portion of a Borrowing maturing or required to be repaid in less than one month may not be converted into or continued as a SOFR Borrowing, unless agreed by all applicable Lenders;

(d) any portion of a SOFR Borrowing that cannot be converted into or continued as a SOFR Borrowing by reason of the immediately preceding clause shall be automatically converted at the end of the Interest Period in effect for such Borrowing into an ABR Borrowing; and

(e) upon notice to the Borrower from the Administrative Agent given at the request of the Required Lenders, after the occurrence and during the continuance of an Event of Default, no outstanding Loan may be converted into, or continued as, a SOFR Loan.

~~Each such Request for Credit Extension shall (except as set forth herein) be irrevocable and shall refer to this Agreement and specify (i) the identity and amount of the Borrowing that the Borrower requests be converted or continued, (ii) whether such Borrowing is to be converted to or continued as a SOFR Borrowing or an ABR Borrowing, (iii) if such Request for Credit Extension requests a conversion, the date of such conversion (which shall be a Business Day) and (iv) if such Borrowing is to be converted to or continued as a SOFR Borrowing, the Interest Period with respect thereto. If no Interest Period is specified in any such Request for Credit Extension with respect to any conversion to or continuation as a SOFR Borrowing, the Borrower shall be deemed to have selected an Interest Period of one month's duration. The Administrative Agent shall promptly advise the Lenders of any Request for Credit Extension and of each Lender's portion of any converted or continued Borrowing. If the Borrower shall not have given a Request for Credit Extension in accordance with this~~ Section 2.10 ~~to continue any Borrowing into a subsequent Interest Period (and shall not otherwise have given notice in accordance with this~~ Section 2.10 ~~to convert such Borrowing), such Borrowing shall, at the end of the Interest Period applicable thereto (unless repaid pursuant to the terms hereof), automatically be converted into an ABR Borrowing.~~

Section 2.11 ~~Section 2.11.~~ *Repayment of New Money Postpetition Term ~~Borrowings~~Loans*~~.~~

~~(a) .~~ The Borrower shall repay to the Administrative Agent, for the ratable account of the ~~applicable Term~~ Lenders on the Maturity Date ~~for such Tranche B-2 Term Loans~~, the aggregate principal amount of ~~such Tranche B-2~~all New Money Postpetition Term Loans outstanding on such date, together ~~in each case~~ with all accrued and unpaid interest on the principal amount to be paid (to, but excluding, the date of such payment. ~~Upon the conversion of Tranche B-2 Term Loans to Extended Term Loans or the refinancing of Tranche B-2 Term Loans with Credit Agreement Refinancing Indebtedness, all scheduled amortization payments, if any, shall be reduced ratably by the aggregate principal amount of the Tranche B-2 Term Loans so converted, refinanced or replaced. The Borrower shall repay Extended Term Loans and Other Term Loans in such amounts and on such date or dates as shall be specified therefor in the applicable Extension Offer, Refinancing Amendment or other governing documentation.~~

~~(b) )~~ and all fees and expenses payable under the Loan Documents and other outstanding Obligations. ~~To the extent not previously paid, all Term Loans (including, for avoidance of doubt, Term Loans that are not Tranche B-2 Term Loans) shall be~~ due and payable on the applicable Maturity Date, together with accrued and unpaid interest on the principal amount to be paid to but excluding the date of payment.

~~(c)~~All repayments on the Maturity Date pursuant to this Section 2.11 shall be ~~subject to Section 2.05(e), but shall otherwise be~~ without premium or penalty.

Section 2.12 ~~Section 2.12.~~ *Voluntary Prepayment*.

(a) ~~The~~Subject to Section 2.17, the Borrower shall have the right at any time ~~and from time to time~~ to prepay ~~any Borrowing, in whole~~the Term Loans in full or in part, upon ~~at least three Business Days' prior~~ written (email) notice ~~in~~to the ~~case of SOFR Loans, or written (email) notice~~Administrative Agent at least one (1) Business Day prior to the date of prepayment ~~in the case of ABR Loans, to the Administrative Agent,~~ before 1:00 p.m., New York City time~~; *provided, however*, that each partial prepayment shall be in an amount that is an integral multiple of $1,000,000 and not less than $2,500,000~~.

~~(b) Except as may otherwise be set forth in any Extension Offer or any Refinancing Amendment, voluntary prepayments of Term Loans pursuant to this~~ Section 2.12 ~~shall be applied ratably to each Class of Term Loans then outstanding.~~

(b) ~~(c)   Each~~Such notice of prepayment shall specify the prepayment date, shall be irrevocable and shall specify the principal amount of ~~each Borrowing~~the Term Loans (or portion thereof) to be prepaid ~~shall be irrevocable and shall commit the Borrower to prepay such Borrowing by the amount stated therein~~ on the date stated therein; provided, however, that a notice of prepayment delivered by the Borrower may state that such notice is conditioned upon the consummation of ~~an acquisition or~~a sale transaction ~~or upon the effectiveness of other credit facilities or the receipt of proceeds from the issuance of other Indebtedness~~ or any other specified event, in which case such notice may be revoked by the Borrower (by notice to the Administrative Agent on or prior to the specified effective date) if such condition is not satisfied.  All prepayments under this Section 2.12 shall be ~~subject to Section 2.12(d) (to the extent applicable) and Section 2.05(e) but otherwise without premium or penalty.  All prepayments under this Section 2.12 shall be~~ accompanied by all accrued and unpaid interest on the principal amount to be prepaid to but excluding the date of payment and all fees, expenses and other outstanding Obligations.

~~(d) In the event that, (i) the Borrower voluntarily prepays any Tranche B-2 Term Loans, (ii) the Borrower makes any mandatory prepayment of the Tranche B-2 Term Loans pursuant to Sections 2.13(a)(ii), 2.13(a)(iii), 2.13(a)(iv) or 2.13(a)(v), (iii) a Term Lender is deemed a Non-Consenting Lender and must assign its Tranche B-2 Term Loans pursuant to Section 3.06(a) or (iv) the Tranche B-2 Term Loans are accelerated, then in each case, the Borrower shall pay to the Administrative Agent on the date of such prepayment, assignment or acceleration, for the ratable account of each applicable Term Lender, a prepayment premium equal to (x) 3% of the aggregate amount of the applicable Tranche B-2 Term Loans being prepaid, accelerated or assigned if such prepayment, acceleration or assignment occurs after the Restatement Effective Date but prior to the first anniversary of the Restatement Effective Date, (y) 2% of the aggregate amount of the applicable Tranche B-2 Term Loans being prepaid, accelerated or assigned if such prepayment or assignment occurs on or after the first but prior to the second anniversary of the Restatement Effective Date and (z) 1% of the aggregate amount of the applicable Tranche B-2 Term Loans being prepaid, accelerated or assigned if such prepayment, acceleration or assignment occurs on or after the second but prior to the third anniversary of the Restatement Effective Date (the foregoing premiums, the "**Prepayment Premium**"); provided that (A) for the avoidance of doubt, no Prepayment Premium shall be payable on or following the third anniversary of the Restatement Effective Date and (B) the Prepayment Premium shall not apply to mandatory prepayments of the Tranche B-2 Term Loans pursuant to Section 2.13(a)(ii) that do not exceed $100,000,000 in the aggregate during the term of this Agreement.  Without limiting the generality of the foregoing, it is understood and agreed that if the Tranche B-2 Term Loans are accelerated or otherwise become due prior to their maturity date, in each case, in respect of any Event of Default (including upon the occurrence of a bankruptcy or insolvency event (including the acceleration of claims by operation of law)), the Prepayment Premium applicable with respect to a voluntary prepayment of the Tranche B-2 Term Loans will also be due and payable on the date of such acceleration or such other prior due date as though the Tranche B-2 Term Loans were voluntarily prepaid as of such date and shall constitute part of the Obligations, in view of the impracticability and extreme difficulty of ascertaining actual damages and by mutual agreement of the parties as to a reasonable calculation of each Term Lender's loss as a result thereof.  Any premium payable above shall be presumed to be the liquidated damages sustained by each Term Lender and the Borrower agrees that it is reasonable under the circumstances currently existing.  THE BORROWER EXPRESSLY WAIVES (TO THE FULLEST EXTENT IT MAY LAWFULLY DO SO) THE PROVISIONS OF ANY PRESENT OR FUTURE STATUTE OR LAW THAT PROHIBITS OR MAY PROHIBIT THE COLLECTION OF THE PREPAYMENT PREMIUM IN CONNECTION WITH ANY SUCH ACCELERATION. The Borrower expressly agrees (to the fullest extent it may lawfully do so) that: (A) the Prepayment Premium is reasonable and is the product of an arm's length transaction between sophisticated business people, ably represented by counsel; (B) the Prepayment Premium shall be payable notwithstanding the then prevailing market rates at the time payment is made; (C) there has been a course of conduct between the Term Lenders and the Borrower giving specific consideration in~~

this transaction for such agreement to pay the Prepayment Premium; and (D) the Borrower shall be estopped hereafter from claiming differently than as agreed to in this paragraph.

Section 2.13    ~~Section 2.13.~~ *~~Mandatory Prepayments~~*[Reserved].

~~(a) (i) Within five (5) Business Days after the earlier of (x) 90 days after the end of each Excess Cash Flow Period and (y) the date on which financial statements have been delivered pursuant to Section 6.01(a) (commencing with the Excess Cash Flow Period ended December 31, 2019) and the related Compliance Certificate has been delivered pursuant to Section 6.02(a), the Borrower shall cause to be prepaid an aggregate amount of Term Loans in an amount equal to (A) the Applicable ECF Percentage of Excess Cash Flow, if any, for the Excess Cash Flow Period covered or required to have been covered by such financial statements minus (B) the sum of (1) all voluntary prepayments of principal of Term Loans (including the amount of cash used to make all debt buybacks and repurchases pursuant to Section 10.04(k)), and (2) all voluntary prepayments of loans under the ABL Facility during such fiscal year to the extent accompanied by a corresponding permanent reduction in the commitments under the ABL Facility and, in the case of each of the immediately preceding clauses (1) and (2), to the extent such prepayments are funded with Internally Generated Cash; *provided* that, the amount of prepayment required under this Section 2.13(a)(i) shall be reduced to the extent (but only to the extent) that (x) after giving effect to such prepayment, the sum of (a) the maximum aggregate amount available to be drawn under the ABL Credit Agreement that would not result in a Financial Covenant Trigger Period under the ABL Facility (or any similar term under any replacement ABL Facility) plus (b) the aggregate amount of cash and Cash Equivalents of the Borrower and its Restricted Subsidiaries (other than any cash or Cash Equivalents appearing on the consolidated balance sheet of the Borrower as "restricted" (or with a like designation)) would be less than $200,000,000 and (y) the Borrower shall have delivered to the Administrative Agent a certificate of a Responsible Officer certifying as to the foregoing. Notwithstanding anything to the contrary contained herein, the Borrower shall not be obligated to make any such prepayments described in this Section 2.13(a)(i) (and no Default or Event of Default shall arise as a result of such nonpayment) to the extent such payment would otherwise constitute a violation or breach of the ABL Credit Agreement in respect of minimum liquidity requirements (as in effect on the date hereof in respect of such restriction, or as otherwise modified, supplemented or amended in a manner not adverse to the Lenders).~~

~~(ii)    If (1) the Borrower or any Restricted Subsidiary Disposes of any Real Property (including any Specified Amendment No. 3 Real Property), Rolling Stock or Disposes of any other property or assets pursuant to Section 7.05 (j), (l) or (t) or under any transaction that would be prohibited by Section 7.05 (other than (w) so long as the ABL Credit Agreement is in effect, any Disposition of ABL Priority Collateral, (x) so long as the UST Tranche B Credit Agreement is in effect, any Disposition of UST Tranche B Priority Collateral or UST Tranche B Only Collateral, (y) so long as the UST Tranche A Credit Agreement is in effect, any Disposition of UST Tranche A Only Collateral, and (z) leases of Real Property entered into in the ordinary course of business (excluding Sale and Leaseback Transactions)), or (2) any Casualty Event occurs, which results in the realization or receipt by the Borrower or a Restricted Subsidiary of Net Proceeds, the Borrower shall cause to be prepaid on or prior to the date which is ten (10) Business Days after the date of the realization or receipt by the Borrower or any Restricted Subsidiary of such Net Proceeds an aggregate principal amount of Term Loans in an amount equal to 100% of the Net Proceeds (or, in the case of any Disposition of, or Sale and Leaseback Transaction, with respect to Real Property, 100% of the Real~~

Property Disposition Proceeds) realized or received. Notwithstanding the foregoing, (i) solely with respect to Dispositions of UST Tranche B Joint Collateral, Net Proceeds of Dispositions of UST Tranche B Joint Collateral shall be applied as follows: (A) an amount equal to 33% of such Net Proceeds shall be applied to the prepayment of the Term Loans (and applied ratably to each Class of Term Loans then outstanding) in accordance with this Section 2.13(a)(ii) and (B) an amount equal to 67% of such Net Proceeds shall be applied to the prepayment of the UST Tranche B Facility Indebtedness, in each case, during the Specified Rolling Stock Prepayment Period without giving effect to any thresholds (except for the Specified Rolling Stock Reinvestment Threshold referred to in clause (ii) of the proviso to clause (a) of the definition of Net Proceeds) or reinvestment rights, and (ii) solely with respect to Dispositions of Specified Rolling Stock, prepayments of the Term Loans required pursuant to this Section 2.13(a)(ii) from the Net Proceeds of such Disposition of Specified Rolling Stock shall be made not later than the date that is five (5) Business Days after the end of the calendar month in which such Disposition of Specified Rolling Stock is made; *provided* that, in each case, the Borrower shall comply with the requirements set forth in the definition of "Net Proceeds", including the requirements regarding application of such proceeds and, as required, deposit and maintenance of such proceeds in the specified accounts. Notwithstanding anything else herein to the contrary, in the case of the Compton Sale, the Borrower and its Subsidiaries shall cause the Net Proceeds therefrom to be funded directly to the Administrative Agent on the date such sale is consummated for application to prepay the Term Loans in accordance with this Section 2.13(a)(ii).

(iii)    If the Borrower or any Restricted Subsidiary incurs or issues any Indebtedness after the Restatement Effective Date (other than Indebtedness permitted under Section 7.03 (other than any Credit Agreement Refinancing Indebtedness)), the Borrower shall cause to be prepaid an aggregate principal amount of Term Loans in an amount equal to 100% of all Net Proceeds received therefrom on or prior to the date which is five (5) Business Days after (or, in the case of Credit Agreement Refinancing Indebtedness, one Business Day after) the receipt by the Borrower or such Restricted Subsidiary of such Net Proceeds.

(iv)    If the Borrower issues any Subordinated Indebtedness after the Restatement Effective Date, the Borrower shall cause to be prepaid an aggregate principal amount of Term Loans in an amount equal to 33% of all Net Proceeds received therefrom on or prior to the date which is five (5) Business Days after the receipt by the Borrower of such Net Proceeds.

(v)    If the Borrower issues any Equity Interests (excluding, for the avoidance of doubt, any Treasury Equity) after the Amendment No. 2 Effective Date, the Borrower shall cause to be prepaid an aggregate principal amount of Term Loans in an amount equal to 50% of all Net Equity Proceeds received therefrom on or prior to the date which is five (5) Business Days after the receipt by the Borrower of such Net Equity Proceeds; *provided*, that the Borrower shall only be required to apply up to $30,000,000 in the aggregate of Net Equity Proceeds pursuant to this Section 2.13(a)(v).

(b) Except as may otherwise be set forth in any Extension Offer, any Refinancing Amendment, any Permitted Repricing Amendment or any other governing documentation, each prepayment of Term Loans pursuant to Section 2.13(a) shall be applied ratably to each Class of Term Loans then outstanding; *provided*, that any prepayment of Term Loans pursuant to the parenthetical in Section 2.13(a)(iii) shall be applied solely to each applicable Class of Refinanced Debt.

(c) With respect to each Class of Term Loans, each prepayment pursuant to Section 2.13(a) shall be paid to the Lenders in accordance with their respective Pro Rata Shares, subject to Section 2.13(d). For the avoidance of doubt, this Section 2.13(c) is applicable to any prepayment made with the Net Proceeds of Credit Agreement Refinancing Indebtedness.

(d) The Borrower shall notify the Administrative Agent in writing of any mandatory prepayment of Term Loans required to be made pursuant to Section 2.13(a) by 1:00 p.m., New York City time, least three (3) Business Days prior to the date of such prepayment. Each such notice shall specify the date of such prepayment and provide a reasonably detailed calculation of the amount of such estimated prepayment. The Administrative Agent will promptly notify each applicable Lender of the contents of the Borrower's prepayment notice and of such Lender's Pro Rata Share or other applicable share of the prepayment. Each Term Lender may reject all of its Pro Rata Share or other applicable share of any mandatory prepayment (such declined amounts, the "**Declined Proceeds**") of Term Loans required to be made pursuant to Section 2.13(a) by providing written notice (each, a "**Rejection Notice**") to the Administrative Agent and the Borrower no later than 5:00 p.m., New York City time, one Business Day prior to after the date of such prepayment; *provided* that, for the avoidance of doubt, no Lender may reject any prepayment made with proceeds of Credit Agreement Refinancing Indebtedness. If a Term Lender fails to deliver a Rejection Notice to the Administrative Agent within the time frame specified above, any such failure will be deemed an acceptance of the total amount of such mandatory prepayment of Term Loans unless the Borrower and the Administrative Agent, with the consent of the Required Lenders, agree to an extension of time for such failure to be corrected. Any Declined Proceeds shall be retained by the Borrower.

(e) *Funding Losses, Etc*. All prepayments under this Section 2.13 shall be accompanied by accrued and unpaid interest on the principal amount to be prepaid to but excluding the date of payment. All prepayments under Section 2.13(a)(iii) shall be subject to Section 2.12(d) (to the extent applicable) and Section 2.05(c). Notwithstanding any of the other provisions of Section 2.13(a), so long as no Event of Default shall have occurred and be continuing, if any prepayment of SOFR Loans is required to be made under Section 2.13(a) prior to the last day of the Interest Period therefor, the Borrower may, in its sole discretion, deposit the amount of any such prepayment otherwise required to be made thereunder (including accrued interest to the last day of such Interest Period) into a Cash Collateral Account until the last day of such Interest Period, at which time the Administrative Agent shall be authorized (without any further action by or notice to or from the Borrower or any other Loan Party) to apply such amount to the prepayment of such Loans in accordance with this Section 2.13. Upon the occurrence and during the continuance of any Event of Default, the Administrative Agent shall also be authorized (without any further action by or notice to or from the Borrower or any other Loan Party) to apply such amount to the prepayment of the outstanding Loans in accordance with Section 2.13(a).

(f) *Foreign Dispositions; Foreign Excess Cash Flow*. Notwithstanding any other provisions of this Section 2.13, (A) to the extent that any or all of the Net Proceeds of any Disposition by a Foreign Subsidiary ("**Foreign Disposition**") or Excess Cash Flow attributable to Foreign Subsidiaries are (x) prohibited or delayed by applicable local law or (y) restricted by applicable organizational or constitutive documents or any agreement, from being repatriated to the United States, in each case the portion of such Net Proceeds or Excess Cash Flow so affected will not be required to be applied to repay Term Loans at the times provided in this Section 2.13 but may be retained by the applicable Foreign Subsidiary (the

~~Borrower hereby agreeing to use reasonable efforts (as determined in the Borrower's reasonable business judgment) to otherwise cause the applicable Foreign Subsidiary to within one year following the date on which the respective payment would otherwise have been required, promptly take all actions reasonably required by the applicable local law, applicable organizational or constitutive document impediment to permit such repatriation), and if within one year following the date on which the respective payment would otherwise have been required, such repatriation of any of such affected Net Proceeds or Excess Cash Flow is permitted under the applicable local law, applicable organizational or constitutive document impediment, such repatriation will be promptly effected and such repatriated Net Proceeds or Excess Cash Flow will be promptly (and in any event not later than 5 Business Days after such repatriation could be made) applied (net of additional taxes, costs and expenses payable or reserved against as a result thereof) (whether or not repatriation actually occurs)  to the repayment of the Term Loans pursuant to this Section 2.13 and (B) to the extent that the Borrower has determined in good faith that repatriation of any of or all the Net Proceeds of any Foreign Disposition or Foreign Subsidiary Excess Cash Flow could cause adverse tax consequences to the Borrower, such Net Proceeds or Excess Cash Flow so affected may be retained by the applicable Foreign Subsidiary. The non-application of any prepayment amounts as a consequence of the foregoing provisions will not, for the avoidance of doubt, constitute a Default or an Event of Default.~~

Section 2.14    ~~Section 2.14.~~  *Pro Rata Treatment.*  ~~Except as required under Section 3.02, each~~Each Borrowing, each payment or prepayment of principal of any Borrowing, each payment of interest on the Loans, each reduction of the Term Loan Commitments ~~and each conversion of any Borrowing to or continuation of any Borrowing as a Borrowing of any Type~~ shall be allocated pro rata among the Lenders of the applicable Class in accordance with their respective applicable Commitments (or, if such Commitments shall have expired or been terminated, in accordance with the respective principal amounts of their outstanding Loans); *provided* that the provisions of this Section 2.14 shall not be construed to apply to any payment made by the Borrower <u>required to be made on a non pro rata basis</u> pursuant to and in accordance with the express terms <u>of this Agreement as in effect as of the date</u> of this Agreement.  Each Lender agrees that in computing such Lender's portion of any Borrowing to be made hereunder, the Administrative Agent may, in its discretion, round each Lender's percentage of such Borrowing to the next higher or lower whole Dollar amount.

Section 2.15    ~~Section 2.15.~~  *Sharing of Setoffs.*  Each Lender agrees that if it shall, through the exercise of a right of banker's lien, setoff or counterclaim against the Borrower or any other Loan Party, or pursuant to a secured claim under Section 506 of Title 11 of the United States Code or other security or interest arising from, or in lieu of, such secured claim, received by such Lender under any applicable ~~bankruptcy, insolvency or~~<u>Debtor Relief Laws or</u> other similar law or otherwise, or by any other means, obtain payment (voluntary or involuntary) in respect of any Loan or Loans as a result of which the unpaid principal portion of its Loans shall be proportionately less than the unpaid principal portion of the Loans of any other Lender, it shall be deemed simultaneously to have purchased from such other Lender at face value, and shall promptly pay to such other Lender the purchase price for, a participation in the Loans of such other Lender, so that the aggregate unpaid principal amount of the Loans and participations in Loans held by each Lender shall be in the same proportion to the aggregate unpaid principal amount of all Loans then outstanding as the principal amount of its Loans prior to such exercise of banker's lien, setoff or counterclaim or other event was to the principal amount of all Loans outstanding prior to such exercise of banker's lien, setoff or counterclaim or other event; *provided, however,* that (i) if any such purchase or purchases or adjustments shall be made pursuant to this Section 2.15 and the payment giving rise thereto shall thereafter be recovered, such purchase or purchases or adjustments shall be rescinded to the extent of such recovery and the purchase price or prices or adjustment restored without interest, and (ii) the provisions of this Section 2.15 shall not be construed to apply to any payment made by the Borrower pursuant to and in accordance with the express terms of this Agreement or any payment obtained by a Lender as consideration for the assignment of or sale of a participation in any of its Loans

to any assignee or participant, other than to the Borrower as to which the provisions of this Section 2.15 shall apply (*provided*, that if the applicable payment, assignment, sale or participation to the Borrower is expressly permitted under Section 10.04, the provisions of this Section 2.15 shall not be construed to apply).  The Borrower expressly consents to the foregoing arrangements and agrees that any Lender holding a participation in a Loan deemed to have been so purchased may exercise any and all rights of banker's lien, setoff or counterclaim with respect to any and all moneys owing by the Borrower to such Lender by reason thereof as fully as if such Lender had made a Loan directly to the Borrower in the amount of such participation. For the avoidance of doubt, neither this Section nor Section 2.14 shall limit the ability of the Borrower to (i) purchase and retire Term Loans pursuant to an open market purchase or a  Dutch Auction or (ii) pay principal, fees, premiums and interest with respect to Other Term Loans following the effectiveness of any Refinancing Amendment or any Extension Offer, as applicable, on a basis different from the Loans of such Class that will continue to be held by Lenders that were not Extending Lenders or Lenders pursuant to such Refinancing Amendment, as applicable.

Section 2.16    Section 2.16.  *Payments*.

(a)    The Borrower shall make each payment (including principal of or interest on any Borrowing or any Fees or other amounts due and payable) hereunder and under any other Loan Document not later than 2:00 p.m., New York City time, on the date when due in immediately available Dollars, without setoff, defense or counterclaim. Any amounts received after such time on any date may, in the discretion of the Administrative Agent, be deemed to have been received on the next succeeding Business Day for purposes of calculating interest thereon.  Each such payment shall be made to the Administrative Agent at the Administrative Agent's Office.  The Administrative Agent shall promptly distribute to each Lender any payments received by the Administrative Agent on behalf of such Lender.

(b)    Except as otherwise expressly provided herein, whenever any payment (including principal of or interest on any Borrowing or any Fees or other amounts) hereunder or under any other Loan Document shall become due, or otherwise would occur, on a day that is not a Business Day, such payment may be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of interest or Fees, if applicable.

Section 2.17    Section 2.17.   *[Reserved]*Call Protection.

(i)    Upon (a) any prepayment of Loans pursuant to Sections 2.12 or any other prepayment or repayment of the Loans, or (b) the termination of the Commitments (except for the automatic termination of Commitments upon the making of Loans as described in Section 2.01(b)) and/or acceleration of the Loans and other Obligations pursuant to Article 8 hereto, in each case, prior to December 19, 2023 (the "**Call Date**"), the Borrower shall owe the Administrative Agent, for the benefit of the Lenders in accordance with their respective Pro Rata Shares, the Make-Whole Amount.

(ii)    The Borrower acknowledges, and the parties hereto agree, that the Make-Whole Amount payable pursuant to this Section 2.17 shall be presumed to be the liquidated damages sustained by the Lenders as the result of the early repayment or prepayment of the Obligations or the termination of the Commitments (and not unmatured interest or a penalty) and the Borrower agrees that it is reasonable under the circumstances currently existing. The Borrower EXPRESSLY WAIVES (TO THE FULLEST EXTENT THEY MAY LAWFULLY DO SO) THE PROVISIONS OF ANY PRESENT OR FUTURE STATUTE OR LAW THAT PROHIBITS OR MAY PROHIBIT THE COLLECTION OF THE MAKE-WHOLE AMOUNT IN CONNECTION WITH ACCELERATION. Each of the Administrative Agent and Lenders and the other parties expressly agree (to the fullest extent they

may lawfully do so) that (A) the Make-Whole Amount is reasonable and the product of an arm's length transaction between sophisticated business people, ably represented by counsel, (B) the Make-Whole Amount shall be payable notwithstanding the then prevailing market rates at the time payment or repayment is made, (C) there has been a course of conduct between the Administrative Agent, the Lenders, and the Borrower giving specific consideration in this transaction for such agreement to pay the Make-Whole Amount, (D) the Borrower shall be estopped hereafter from claiming differently than as agreed to in this Section 2.17, (E) its agreement to pay the Make-Whole Amount is a material inducement to the Lenders to provide the Commitments and the Loans, and (F) the Make-Whole Amount represents a good faith, reasonable estimate and calculation of the lost profits or damages of the Lenders and that it would be impractical and extremely difficult to ascertain the actual amount of damages to the Lenders or profits lost by the Lenders as a result of any event giving rise to an obligation to pay the Make-Whole Amount. In the event of a direct conflict between the priority provisions of this Section 2.17 and other provisions contained in any other Loan Document, it is the intention of the parties hereto that such priority provisions in such documents shall be read together and construed, to the fullest extent possible, to be in concert with each other. In the event of any actual, irreconcilable conflict that cannot be resolved as aforesaid, the terms and provisions of this Section 2.17 shall control and govern.

Section 2.18   ~~Section  2.18.    Refinancing  Amendments~~Currency Indemnity.   If, for the purposes of obtaining judgment in any court in any jurisdiction with respect to this Agreement or any other Loan Document, it becomes necessary to convert into a particular currency (the "**Judgment Currency")** any amount due under this Agreement or under any Loan Document in any currency other than the Judgment Currency (the "**Currency Due"),** then conversion shall be made at the rate of exchange prevailing on the Business Day before the day on which judgment is given. For this purpose "rate of exchange" means the rate at which the Lenders are able, on the relevant date, to purchase the Currency Due with the Judgment Currency. In the event that there is a change in the rate of exchange prevailing between the Business Day immediately preceding the day on which the judgment is given and the date of receipt by the Administrative Agent of the amount due, the Borrower shall, on the date of receipt by the Administrative Agent, pay such additional amounts, if any, or be entitled to receive reimbursement of such amount, if any, as may be necessary to ensure that the amount received by the Administrative Agent on such date is the amount in the Judgment Currency which when converted at the rate of exchange prevailing on the date of receipt by the Administrative Agent is the amount then due under this Agreement or such other Loan Document in the Currency Due. If the amount of the Currency Due which the Lenders are able to purchase is less than the amount of the Currency Due originally due to it, the Borrower shall indemnify and save the Administrative Agent and the Lenders harmless from and against all loss or damage arising as a result of such deficiency. This indemnity shall constitute an obligation separate and independent from the other obligations contained in this Agreement and the other Loan Documents, shall give rise to a separate and independent cause of action, shall apply irrespective of any indulgence granted by the Administrative Agent from time to time and shall continue in full force and effect notwithstanding any judgment or order for a liquidated sum in respect of an amount due under this Agreement or any other Loan Document or under any judgment or order.

~~.~~

~~(a)     At any time after the Restatement Effective Date, the Borrower may obtain, from any Lender or any Additional Lender, Credit Agreement Refinancing Indebtedness (other than Permitted Additional Debt) in respect of all or any portion of the Term Loans then outstanding under this Agreement, in the form of Other Term Loans or Other Term Loan Commitments pursuant to a Refinancing Amendment; *provided* that (A) such Credit Agreement Refinancing Indebtedness will rank pari passu in right of payment and of security with the other Loans and~~

Commitments hereunder, (B) such Credit Agreement Refinancing Indebtedness will have such pricing, fees, interest, premiums and optional prepayment terms as may be agreed by the Borrower and the Lenders thereof (*provided*, that such Credit Agreement Refinancing Indebtedness may participate on a pro rata basis or on a less than pro rata basis (but not on a greater than pro rata basis) in any voluntary or mandatory prepayments hereunder, as specified in the applicable Refinancing Amendment), (C) such Credit Agreement Refinancing Indebtedness will have a maturity date later than the maturity date of, and will have a Weighted Average Life to Maturity that is not shorter than, the Refinanced Debt, (D) the covenants, events of default and guarantees of such Credit Agreement Refinancing Indebtedness, if not consistent with the terms of the Tranche B-2 Term Loans, shall be on customary market terms for Indebtedness of such type (as determined by the Borrower in good faith) ((*provided*, that the financial maintenance covenant on the then outstanding Term Loans shall be amended to provide the Lenders the benefit of any financial maintenance covenant of such Credit Agreement Refinancing Indebtedness that is in addition to or more restrictive in any material manner than the financial maintenance covenant on the then outstanding Term Loans)), (E) the proceeds of such Credit Agreement Refinancing Indebtedness shall be applied, substantially concurrently with the incurrence thereof, to the prepayment of outstanding Term Loans being so refinanced and (F) other than in the case of Credit Agreement Refinancing Indebtedness the proceeds of which are applied to pay all outstanding Term Loans and other Obligations in full in cash, the Borrower shall have obtained the consent of the Required Lenders.  The effectiveness of any Refinancing Amendment shall be subject to the satisfaction (or waiver) on the date thereof of each of the conditions set forth in Section 4.01 (and for purposes thereof the incurrence of the Credit Agreement Refinancing Indebtedness shall be deemed to be a Request for Credit Extension) and, to the extent reasonably requested by the Administrative Agent and the Required Lenders, receipt by the Administrative Agent of customary legal opinions, board resolutions, officers' certificates and a solvency certification or representation, in each case materially consistent with those delivered on the Restatement Effective Date under Section 4.02 (other than changes to such legal opinions resulting from a change in law, change in fact or change to counsel's form of opinion reasonably satisfactory to the Administrative Agent), and customary reaffirmation agreements.  Each Class of Credit Agreement Refinancing Indebtedness incurred under this Section 2.18(a) shall be in an aggregate principal amount that is (x) not less than $40,000,000 and (y) an integral multiple of $1,000,000 in excess thereof.  The Administrative Agent shall promptly notify each Lender as to the effectiveness of each Refinancing Amendment.

(b)    Each of the parties hereto hereby agrees that this Agreement and the other Loan Documents may be amended pursuant to a Refinancing Amendment, without the consent of any other Lenders, to the extent (but only to the extent) necessary to (i) reflect the existence and terms of the Credit Agreement Refinancing Indebtedness incurred pursuant thereto and (ii) effect such other amendments to this Agreement and the other Loan Documents as may be necessary or appropriate, in the reasonable opinion of the Administrative Agent and the Borrower, to effect the provisions of this Section 2.18, and the Required Lenders hereby expressly authorize the Administrative Agent to enter into any such Refinancing Amendment.  Without limiting the foregoing, in connection with any Refinancing Amendment, the respective Loan Parties shall (at their expense) amend (and the Collateral Agent is hereby directed to amend) any Mortgage that has a maturity date prior to the Latest Maturity Date after giving effect to such Refinancing Amendment so that such maturity date is extended to the then Latest Maturity Date (or such later date as may be advised by local counsel to the Collateral Agent).

(c)    This Section 2.18 shall supersede any provisions in Section 2.14, 2.15 or 10.08 to the contrary.

Section 2.19.  *Extensions of Term Loans*.

(a)    Notwithstanding anything to the contrary in this Agreement, pursuant to one or more offers (each, an "**Extension Offer**") made from time to time by the Borrower to all Lenders of a Class of Term Loans with a like Maturity Date on a pro rata basis (based on the aggregate outstanding principal amount of the respective Term Loans of such Class with the same Maturity Date) and on the same terms to each such Lender, the Borrower may from time to time with the consent of any Lender that shall have accepted such offer extend the maturity date of any Term Loans and otherwise modify the terms of such Term Loans of such Lender pursuant to the terms of the relevant Extension Offer (including, without limitation, by increasing the interest rate or fees payable in respect of such Term Loans and/or modifying the amortization schedule in respect of such Term Loans) (each, an "**Extension**", and each group of Term Loans as so extended, as well as the group of original Term Loans not so extended, being a "**tranche**"; any Extended Term Loans shall constitute a separate tranche of Term Loans from the tranche of Term Loans from which they were converted and a separate Class of Term Loans), so long as the following terms are satisfied (or waived):  (i) no Event of Default shall exist at the time the notice in respect of an Extension Offer is delivered to the Lenders, and no Event of Default shall exist immediately prior to or after giving effect to the effectiveness of any Extended Term Loans, (ii) except as to interest rates, fees, amortization, final maturity date, premium, AHYDO "catch up" payments, required prepayment dates and participation in prepayments (which shall, subject to immediately succeeding clauses (iii), (iv) and (v), be determined by the Borrower and set forth in the relevant Extension Offer), the Term Loans of any Term Lender extended pursuant to any Extension ("**Extended Term Loans**") shall have the same terms and conditions that are substantially identical to, or less favorable to the lenders or investors providing such Extended Term Loans as the tranche of Term Loans subject to such Extension Offer, (iii) the final maturity date of any Extended Term Loans shall be no earlier than the then Latest Maturity Date and the amortization schedule, if any, applicable to Term Loans for periods prior to the then applicable Latest Maturity Date may not be increased, (iv) the Weighted Average Life to Maturity of any Extended Term Loans shall be no shorter than the remaining Weighted Average Life to Maturity of the Term Loans extended thereby, (v) any Extended Term Loans may participate on a pro rata basis or on a less than pro rata basis (but not on a greater than pro rata basis) in any voluntary or mandatory prepayments hereunder, as specified in the applicable Extension Offer, (vi) if the aggregate principal amount of Term Loans (calculated on the face amount thereof) in respect of which Term Lenders shall have accepted the relevant Extension Offer shall exceed the maximum aggregate principal amount of Term Loans offered to be extended by the Borrower pursuant to such Extension Offer, then the Term Loans of such Term Lenders shall be extended ratably up to such maximum amount based on the respective principal amounts (but not to exceed actual holdings of record) with respect to which such Term Lenders have accepted such Extension Offer, (vii) all documentation in respect of such Extension shall be consistent with the foregoing, and (viii) any applicable Minimum Extension Condition shall be satisfied unless waived by the Borrower.

(b)    With respect to all Extensions consummated by the Borrower pursuant to this Section 2.19, (i) such Extensions shall not constitute voluntary or mandatory payments or prepayments for purposes of Section 2.12, 2.13 or 2.15 and (ii) no Extension Offer is required to be in any minimum amount or any minimum increment, *provided* that the Borrower may at its election specify as a condition (a "**Minimum Extension Condition**") to consummating any such Extension that a minimum amount (to be determined and specified in the relevant Extension Offer in the Borrower's sole discretion and may be waived by the Borrower) of Term Loans of any or all applicable Classes be tendered.  The Administrative Agent and the Lenders hereby consent to the Extensions and the other transactions contemplated by this Section 2.19 (including, for the avoidance of doubt, payment of any interest, fees or premium in respect of any Extended Term

~~Loans on such terms as may be set forth in the relevant Extension Offer) and hereby waive the requirements of any provision of this Agreement (including, without limitation, Sections 2.12, 2.13, 2.14 and 2.15) or any other Loan Document that may otherwise prohibit any such Extension or any other transaction contemplated by this Section 2.19.~~

~~(c)     Each of the parties hereto hereby (A) agrees that this Agreement and the other Loan Documents may be amended to give effect to each Extension (an "**Extension Amendment**"), without the consent of any other Lenders, to the extent (but only to the extent) necessary to (i) reflect the existence and terms of the Extended Term Loans incurred pursuant thereto, (ii) modify the scheduled repayments set forth in Section 2.11 with respect to any Class of Term Loans subject to an Extension to reflect a reduction in the principal amount of the Term Loans thereunder in an amount equal to the aggregate principal amount of the Extended Term Loans amended pursuant to the applicable Extension (with such amount to be applied ratably to reduce scheduled repayments of such Term Loans required pursuant to Section 2.11), (iii) modify the prepayments set forth in Sections 2.12 and 2.13 to reflect the existence of the Extended Term Loans and the application of prepayments with respect thereto, and (iv) effect such other amendments to this Agreement and the other Loan Documents as may be necessary or appropriate, in the reasonable opinion of the Administrative Agent and the Borrower, to effect the provisions of this Section 2.19, and the Required Lenders hereby expressly and irrevocably, for the benefit of all parties hereto, authorize the Administrative Agent to enter into any such Extension Amendment and (B) consent to the transactions contemplated by this Section 2.19 (including, for the avoidance of doubt, payment of interest, fees or premiums in respect of any Extended Term Loans on such terms as may be set forth in the relevant Extension Amendment). Without limiting the foregoing, in connection with any Extension, the respective Loan Parties shall (at their expense) amend (and the Collateral Agent is hereby directed to amend) any Mortgage that has a maturity date prior to the then Latest Maturity Date so that such maturity date is extended to the Latest Maturity Date after giving effect to such Extension (or such later date as may be advised by local counsel to the Collateral Agent).~~

~~(d)     In connection with any Extension, the Borrower shall provide the Administrative Agent at least five (5) Business Days' (or such shorter period as may reasonably be agreed by the Administrative Agent at the direction of the Required Lenders) prior written notice thereof, and shall agree to such procedures, if any, as may be established by, or acceptable to, the Administrative Agent, in each case acting reasonably to accomplish the purposes of this Section 2.19.~~

~~(e)     This Section 2.19 shall supersede any provisions in Section 2.14, 2.15 or 10.08 to the contrary.~~

# ARTICLE 3

TAXES, INCREASED COSTS PROTECTION AND ILLEGALITY

Section 3.01      ~~Section 3.01.~~ *Taxes*.

(a)     Except as provided in this Section 3.01, any and all payments made by or on account of the Borrower or any Guarantor under any Loan Document to any Lender or Agent shall be made free and clear of and without deduction for any and all present or future taxes, duties, levies, imposts, assessments, withholdings (including backup withholding), fees or similar charges imposed by any Governmental Authority including interest, penalties and additions to tax (collectively "**Taxes**"), excluding (i) Taxes imposed on or measured by net income, however denominated, and franchise (and similar) Taxes imposed on ~~it~~such Lender or Agent in lieu of net income Taxes, (ii) Taxes attributable to

the failure by the relevant Lender or Agent to deliver the documentation required to be delivered pursuant to clause (d) of this Section 3.01, (iii) Taxes imposed by a jurisdiction as a result of any connection between such Lender or Agent and such jurisdiction other than any connection arising from executing, delivering, being a party to, engaging in any transactions pursuant to, performing its obligations under, or enforcing any Loan Document, (iv) any branch profits Taxes imposed by the United States or any similar Tax imposed by any other jurisdiction in which the Borrower or any Guarantor (as appropriate) is located, (v) any U.S. federal withholding tax imposed on amounts payable hereunder pursuant to a law in effect at such time the Lender or Agent becomes a party to this Agreement (other than pursuant to an assignment request by the Borrower under Section 3.06), or designates a new lending office, except in each case to the extent such Lender (or its assignor, if any) was entitled at the time of designation of a new lending office (or assignment) to receive additional amounts with respect to such withholding tax pursuant to this Section 3.01(a) and (vi) any withholding Tax imposed under FATCA (all such non-excluded Taxes imposed on such payments, being hereinafter referred to as "**Indemnified Taxes**").  If the Borrower, any Guarantor or other applicable withholding agent shall be required by any Laws to deduct or withhold any Indemnified Taxes or Other Taxes (as defined below) from or in respect of any sum payable under any Loan Document to any Agent or any Lender, (i) the sum payable by the Borrower or Guarantor shall be increased as necessary so that after making all required deductions or withholding (including deductions and withholdings applicable to additional sums payable under this Section 3.01), such Agent or Lender (as the case may be) receives an amount equal to the sum it would have received had no such deductions or withholdings been made, (ii) the applicable withholding agent shall make such deductions or withholdings, (iii) the applicable withholding agent shall pay the full amount deducted or withheld to the relevant Governmental Authority in accordance with applicable Laws, and (iv) within thirty (30) days after the date of such payment (or, if receipts or evidence are not available within thirty (30) days, as soon as possible thereafter), if the Borrower or any Guarantor is the applicable withholding agent, the applicable withholding agent shall furnish to such Agent or Lender (as the case may be) the original or a copy of a receipt evidencing payment thereof or other evidence acceptable to such Agent or Lender.

(b)     In addition, the Borrower agrees to pay any and all present or future stamp, court or documentary taxes and any other ~~excise, property,~~ intangible ~~or mortgage~~ recording taxes, or charges or levies of the same character, imposed by any Governmental Authority, which arise from any payment made under any Loan Document or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, any Loan Document (including additions to tax, penalties and interest related thereto) excluding, in each case, such amounts that result from an Agent or Lender's Assignment and Acceptance, grant of a Participation, transfer or assignment to or designation of a new applicable lending office or other office for receiving payments under any Loan Document (collectively, "**Assignment Taxes**") except for Assignment Taxes resulting from any assignment or participation that is requested or required in writing by the Borrower (all such non-excluded taxes described in this Section 3.01(b) being hereinafter referred to as "**Other Taxes**").

(c)     Without duplication of Section 3.01(a) or (b), the Borrower and each Guarantor agree to indemnify each Agent and each Lender for (i) the full amount of Indemnified Taxes and Other Taxes paid by such Agent or Lender (including Indemnified Taxes and Other Taxes imposed or asserted on or attributable to amounts payable under this Section 3.01(c)) and (ii) any reasonable expenses arising therefrom or with respect thereto, *provided* such Agent or Lender, as the case may be, provides Borrower or Guarantor with a written statement thereof setting forth in reasonable detail the basis and calculation of such amounts.

(d)     Each Lender and Agent shall, at such times as are reasonably requested by the Borrower or the Administrative Agent, provide the Borrower and the Administrative Agent with any documentation prescribed by Law or reasonably requested by the Borrower or the Administrative Agent certifying as to

any entitlement of such Lender or Agent to an exemption from, or reduction in, withholding tax with respect to any payments to be made to such Lender under the Loan Documents.  Each such Lender and Agent shall, whenever a lapse in time or change in circumstances renders such documentation obsolete or inaccurate in any material respect, deliver promptly to the Borrower and the Administrative Agent updated or other appropriate documentation (including any new documentation reasonably requested by the applicable withholding agent) or promptly notify the Borrower and the Administrative Agent of its inability to do so. Unless the applicable withholding agent has received forms or other documents reasonably satisfactory to it indicating that payments under any Loan Document to or for a Lender are not subject to withholding tax or are subject to such Tax at a rate reduced by an applicable tax treaty, the Borrower, the Administrative Agent or other applicable withholding agent shall withhold amounts required to be withheld by applicable Law from such payments at the applicable statutory rate. Notwithstanding the foregoing, a Lender shall not be required to deliver any form pursuant to this clause (d) (other than such documentation set forth in Sections 3.01(d)(i), 3.01(d)(ii) and 3.01(g)) that such Lender is not legally able to deliver.  In addition, each Lender and Agent shall deliver to the Borrower and the Administrative Agent such other tax forms or other documents as shall be prescribed by applicable Law or reasonably requested by the Borrower or the Administrative Agent as will enable the Borrower or the Administrative Agent to determine whether or not such Lender or Agent is subject to backup withholding or information reporting requirements.  Without limiting the foregoing:

(i)     Each Lender and Agent that is a United States person (as defined in Section 7701(a)(30) of the Code) shall deliver to the Borrower and the Administrative Agent on or before the date on which it becomes a party to this Agreement (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent) two properly completed and duly signed executed copies of Internal Revenue Service Form W-9 certifying that such Lender or Agent (as the case may be) is exempt from federal backup withholding.

(ii)    Each Lender and Agent that is not a United States person (as defined in Section 7701(a)(30) of the Code) shall deliver to the Borrower and the Administrative Agent on or before the date on which it becomes a party to this Agreement (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent) whichever of the following is applicable:

(A)    two properly completed and duly signed executed copies of Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E (or any successor forms) claiming eligibility for the benefits of an income tax treaty to which the United States is a party, and such other documentation as required under the Code,

(B)    two properly completed and duly signed executed copies of Internal Revenue Service Form W-8ECI (or any successor forms) and, in the case of an Agent, a withholding certificate that satisfies the requirements of Treasury Regulation Sections 1.1441-1(b)(2)(iv) and 1.1441-1(e)(3)(v) as applicable to a U.S. branch that has agreed to be treated as a U.S. person for withholding tax purposes.

(C)    in the case of a Lender claiming the benefits of the exemption for portfolio interest under Section 881(c) of the Code, (A) a certificate substantially in the form of Exhibit G-1, G-2, G-3 or G-4, as applicable (any such certificate a "**United States Tax Compliance Certificate**") and (B) two properly completed and duly signed executed copies of Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E, or

(DC)    to the extent a Lender is not the beneficial owner (for example, where the Lender is a partnership, or is a participant holding a participation granted by a participating Lender), Internal Revenue Service Form W-8IMY (or any successor forms) of the Lender, accompanied by aan Internal Revenue

Service Form W-8ECI, W-8BEN, W-8BEN-E, United States Tax Compliance Certificate, Internal Revenue Service Form W-9, Internal Revenue Service Form W-8IMY or any other required information from each beneficial owner, as applicable (*provided* that, if one or more beneficial owners are claiming the portfolio interest exemption, the United States Tax Compliance Certificate may be provided by such Lender on behalf of such beneficial owner). Each Lender and Agent shall deliver to the Borrower and the Administrative Agent two further executed copies of any previously delivered form or certification (or any applicable successor form) on or before the date that any such form or certification expires or becomes obsolete or inaccurate and promptly after the occurrence of any event requiring a change in the most recent form previously delivered by it to the Borrower or the Administrative Agent, or promptly notify the Borrower and the Administrative Agent that it is unable to do so. Each Lender and Agent shall promptly notify the Administrative Agent at any time it determines that it is no longer in a position to provide any previously delivered form or certification to the Borrower or the Administrative Agent.

(e)     Any Lender or Agent claiming any additional amounts payable pursuant to this Section 3.01 shall use its reasonable efforts to change the jurisdiction of its lending office (or take any other measures reasonably requested by the Borrower) if such a change or other measures would reduce any such additional amounts (or any similar amount that may thereafter accrue) and would not, in the reasonable, good faith determination of such Lender, result in any unreimbursed cost or expense or be otherwise materially disadvantageous to such Lender.

(f)     If any Lender or Agent determines, in its reasonable, good faith discretion, that it has received a refund in respect of any Taxes as to which indemnification or additional amounts have been paid to it by the Borrower pursuant to this Section 3.01 (including by payment of additional amounts pursuant to this Section 3.01) it shall promptly remit such refund to the Borrower or Guarantor, net of all out-of-pocket expenses of the Lender or Agent, as the case may be and without interest (other than any interest paid by the relevant Governmental Authority with respect to such refund net of any Taxes payable by any Agent or Lender on such interest); *provided* that the Borrower and Guarantors, upon the request of the Lender or Agent, as the case may be, agree promptly to return such refund (plus any penalties, interest or other charges imposed by the relevant Governmental Authority) to such party in the event such party is required to repay such refund to the relevant Governmental Authority. This section shall not be construed to require the Administrative Agent or any Lender to make available its tax returns (or any other information relating to Taxes that it deems confidential) to the Borrower or any other person.

(g)     If a payment made to a Lender or Agent under any Loan Document would be subject to withholding Tax imposed by FATCA if such Lender or Agent were to fail to comply with the applicable reporting requirements of FATCA (including those contained in Section 1471(b) or 1472(b) of the Code, as applicable), such Lender or Agent shall deliver to the Borrower and the Administrative Agent at the time or times prescribed by law and at such time or times reasonably requested by the Borrower or the Administrative Agent such documentation prescribed by applicable Law (including as prescribed by Section 1471(b)(3)(C)(i) of the Code) and such additional documentation reasonably requested by the Borrower or the Administrative Agent as may be necessary for the Borrower and the Administrative Agent to comply with their obligations under FATCA and to determine that such Lender or Agent has complied with such Lender's or Agent's obligations under FATCA or to determine the amount, if any, to deduct and withhold from such payment. Solely for purposes of this Section 3.01(hg), "FATCA" shall include any amendments made to FATCA after the date of this Agreement.

(h)     Each party's obligations under this Section 3.01 shall survive any assignment of rights by, or the replacement of, a Lender, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any Loan Document.

(i)    Each Lender shall indemnify each Agent, within 10 days following written demand therefor, for (i) the full amount of any Indemnified Taxes and Other Taxes attributable to such Lender (but only to the extent that such Agent has not already been indemnified by the Borrower and each Guarantor for such Indemnified Taxes and Other Taxes and without limiting the obligation of the Borrower and each Guarantor to do so), and (ii) any Taxes attributable to such Lender's failure to comply with the provision of Section 10.04(f) relating to the maintenance of a Participant Register, in each case, that are payable or paid by such Agent in connection with any Loan Documents, and any expenses arising therefrom or with respect thereto; *provided* that such Agent provides such ~~lender~~Lender with a written statement thereof setting forth in reasonable detail the basis and calculation of such amounts.

Section 3.02    ~~Section 3.02.  *Illegality*~~*[Reserved]*.  ~~If any Law has made it unlawful, or that any Governmental Authority has asserted that it is unlawful, for any Lender or its applicable lending office to make, maintain or fund SOFR Loans, or to determine or charge interest rates based upon SOFR, then, on notice thereof by such Lender to the Borrower through the Administrative Agent, any obligation of such Lender to make or continue SOFR Loans or to convert ABR Loans to SOFR Loans shall be suspended until such Lender notifies the Administrative Agent and the Borrower that the circumstances giving rise to such determination no longer exist.  Upon receipt of such notice, the Borrower shall promptly following written demand from such Lender (with a copy to the Administrative Agent), prepay or, if applicable, convert all applicable SOFR Loans of such Lender to ABR Loans, either on the last day of the Interest Period therefor, if such Lender may lawfully continue to maintain such SOFR Loans to such day, or promptly, if such Lender may not lawfully continue to maintain such SOFR Loans.  Upon any such prepayment or conversion, the Borrower shall also pay accrued interest on the amount so prepaid or converted and all amounts due.  Each Lender agrees to designate a different lending office if such designation will avoid the need for such notice and will not, in the good faith judgment of such Lender, otherwise be materially disadvantageous to such Lender.~~

~~.~~

Section 3.03    ~~Section 3.03.~~  *Increased Cost and Reduced Return; Capital Adequacy~~; Reserves on SOFR Loans~~*.

(a)    If any Lender reasonably determines that as a result of the introduction of or any change in or in the interpretation of any Law, in each case after the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date, or such Lender's compliance therewith, there shall be any material increase in the cost to such Lender of agreeing to make or making, funding or maintaining any ~~SOFR~~ Loans, or a material reduction in the amount received or receivable by such Lender in connection with any of the foregoing (excluding for purposes of this Section 3.03(a) any such increased costs or reduction in amount resulting from (i) Indemnified Taxes or Other Taxes for which additional amounts are payable pursuant to Section 3.01, or any Taxes excluded from the definition of Indemnified Taxes under exception (iii) thereof to the extent such Taxes are imposed on or measured by net income or profits or are franchise taxes (imposed in lieu of the foregoing taxes) and any Taxes excluded from the definition of Indemnified Taxes under exceptions (i), (ii), (iv), (v) and (vi) thereof or (ii) reserve requirements contemplated by Section 3.03(c) ~~or reflected in Adjusted Term SOFR~~) and the result of any of the foregoing shall be to increase the cost to such Lender of making or maintaining ~~any SOFR Loan (or of maintaining~~ its obligations to make any Loan~~)~~, or to reduce the amount of any sum received or receivable by such Lender, then from time to time within fifteen (15) days after written demand by such Lender setting forth in reasonable detail such increased costs (with a copy of such written demand to the Administrative Agent given in accordance with Section 3.05), the Borrower shall pay to such Lender such additional amounts as will compensate such Lender for such increased cost or reduction.

(b)    If any Lender determines that the introduction of any Law regarding capital adequacy or liquidity or any change therein or in the interpretation thereof, in each case after the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date, or compliance by such Lender (or its lending office) therewith, has the effect of reducing the rate of return on the capital of such Lender or any entity controlling such Lender as a consequence of such Lender's obligations hereunder (taking into consideration its policies with respect to capital adequacy and liquidity and such Lender's desired return on capital), then from time to time upon written demand of such Lender setting forth in reasonable detail the charge and the calculation of such reduced rate of return (with a copy of such written demand to the Administrative Agent given in accordance with Section 3.05), the Borrower shall pay to such Lender such additional amounts as will compensate such Lender or controlling entity for such reduction within fifteen (15) days after receipt of such written demand.

(c)    ~~Except to the extent already reflected in Adjusted Term SOFR, the~~The Borrower shall pay to each Lender, as long as such Lender shall be required to comply with any reserve ratio requirement or analogous requirement of any other central banking or financial regulatory authority imposed in respect of the maintenance of the Commitments ~~or the funding of any SOFR Loans of the Borrower~~, such additional costs (expressed as a percentage per annum and rounded upwards, if necessary, to the nearest five decimal places) equal to the actual costs allocated to such Commitment or Loan by such Lender (as determined by such Lender in good faith, which determination shall be conclusive absent manifest error) which in each case shall be due and payable on each date on which interest is payable on such Loan, *provided* the Borrower shall have received at least fifteen (15) days' prior written notice (with a copy to the Administrative Agent) of such additional interest or cost from such Lender.  If a Lender fails to give written notice fifteen (15) days prior to the relevant Interest Payment Date, such additional interest or cost shall be due and payable fifteen (15) days from receipt of such written notice.

(d)    Failure or delay on the part of any Lender to demand compensation pursuant to this Section 3.03 shall not constitute a waiver of such Lender's right to demand such compensation.

(e)    If any Lender requests compensation under this Section 3.03, then such Lender will, if requested by the Borrower, use commercially reasonable efforts to designate another lending office for any Loan affected by such event; *provided* that such efforts are made on terms that, in the reasonable judgment of such Lender, cause such Lender and its lending office(s) to suffer no material economic, legal or regulatory disadvantage, and *provided further* that nothing in this Section 3.03(e) shall affect or postpone any of the Obligations of the Borrower or the rights of such Lender pursuant to Section 3.03(a), (b), (c) or (d).

Section 3.04    ~~Section 3.04.~~  *[Reserved]*.

Section 3.05    ~~Section 3.05.~~  *Matters Applicable to all Requests for Compensation*.

(a)    Any Agent or any Lender claiming compensation under this Article 3 shall deliver a certificate to the Borrower setting forth the additional amount or amounts to be paid to it hereunder which shall be conclusive in the absence of manifest error.  In determining such amount, such Agent or such Lender may use any reasonable and customary averaging and attribution methods.

(b)    With respect to any Lender's claim for compensation under Section ~~3.02 or~~ 3.03, the Borrower shall not be required to compensate such Lender for any amount incurred more than one hundred and eighty (180) days prior to the date that such Lender notifies the Borrower of the event that gives rise to such claim; *provided* that, if the circumstance giving rise to such claim is retroactive, then such 180-day period referred to above shall be extended to include the period of retroactive effect

thereof. ~~If any Lender requests compensation by the Borrower under Section 3.03, the Borrower may, by notice to such Lender (with a copy to the Administrative Agent), suspend the obligation of such Lender to make or continue from one Interest Period to another any applicable SOFR Loan, or, if applicable, to convert ABR Loans into SOFR Loans, until the event or condition giving rise to such request ceases to be in effect (in which case the provisions of Section 3.05(e) shall be applicable); *provided* that such suspension shall not affect the right of such Lender to receive the compensation so requested.~~

(c)    [Reserved].

(d)    [Reserved].

~~(c) If the obligation of any Lender to make or continue any SOFR Loan, or to convert ABR Loans into SOFR Loans shall be suspended pursuant to Section 3.05(b) hereof, such Lender's applicable SOFR Loans shall be automatically converted into ABR Loans (or, if such conversion is not possible, repaid) on the last day(s) of the then current Interest Period(s) for such SOFR Loans (or, in the case of an immediate conversion required by Section 3.02, on such earlier date as required by Law) and, unless and until such Lender gives notice as provided below that the circumstances specified in Section 3.02 or 3.03 hereof that gave rise to such conversion no longer exist:~~

~~(i) to the extent that such Lender's SOFR Loans have been so converted, all payments and prepayments of principal that would otherwise be applied to such Lender's applicable SOFR Loans shall be applied instead to its ABR Loans; and~~

~~(ii) all Loans that would otherwise be made or continued from one Interest Period to another by such Lender as SOFR Loans shall be made or continued instead as ABR Loans (if possible), and all ABR Loans of such Lender that would otherwise be converted into SOFR Loans shall remain as ABR Loans.~~

~~(d) If any Lender gives notice to the Borrower (with a copy to the Administrative Agent) that the circumstances specified in Section 3.02 or 3.03 hereof that gave rise to the conversion of any of such Lender's SOFR Loans pursuant to this Section 3.05 no longer exist (which such Lender agrees to do promptly upon such circumstances ceasing to exist) at a time when SOFR Loans made by other Lenders under the applicable Facility are outstanding, if applicable, such Lender's ABR Loans shall be automatically converted, on the first day(s) of the next succeeding Interest Period(s) for such outstanding SOFR Loans, to the extent necessary so that, after giving effect thereto, all Loans held by the Lenders holding SOFR Loans under such Facility and by such Lender are held pro rata (as to principal amounts, interest rate basis, and Interest Periods) in accordance with their respective Commitments for the applicable Facility.~~

(e)    Notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines or directives thereunder or issued in connection therewith and (y) all requests, rules, guidelines or directives promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities, in each case pursuant to Basel III, shall be deemed to have been adopted or made after the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date, regardless of the date enacted or adopted.

Section 3.06    ~~Section 3.06.~~ *Replacement of Lenders under Certain Circumstances*

~~.~~

(a)  If at any time (i) the Borrower becomes obligated to pay additional amounts or indemnity payments described in Section 3.01 or 3.03 as a result of any condition described in such Sections or ~~any Lender ceases to make any SOFR Loans as a result of any condition described in Section 3.02 or Section 3.03 or (ii) any Lender becomes a Non-Consenting Lender,~~ (ii) [reserved], then the Borrower may, on prior written notice to the Administrative Agent and such Lender, (x) replace such Lender by causing such Lender to (and such Lender shall be obligated to) assign pursuant to Section 10.04(b) (unless otherwise agreed, with the assignment fee to be paid by the Borrower in such instance) (it being understood that any such assignment shall become effective only in accordance with Section 10.04(e)), all of its rights and obligations under this Agreement ~~(in respect of any applicable Facility only in the case of clause (i) or, with respect to a Class vote, clause (ii))~~ to one or more Eligible Assignees; *provided* that neither the Administrative Agent nor any Lender shall have any obligation to the Borrower to find a replacement Lender or other such Person; and *provided further* that (A) in the case of any such assignment resulting from a claim for compensation under Section 3.03 or payments required to be made pursuant to Section 3.01, such assignment will result in a reduction in such compensation or payments and (B) ~~in the case of any such assignment resulting from a Lender becoming a Non-Consenting Lender, the applicable Eligible Assignees shall have agreed to, and shall be sufficient (together with all other consenting Lenders) to cause the adoption of, the applicable departure, waiver or amendment of the Loan Documents~~[reserved]; or (y) terminate the Commitment of such Lender and repay all Obligations of the Borrower owing to such Lender relating to the Loans and participations held by such Lender as of such termination date; ~~*provided* that in the case of any such termination of a Non-Consenting Lender, such termination shall be sufficient (together with all other consenting Lenders) to cause the adoption of the applicable departure, waiver or amendment of the Loan Documents and such termination shall be in respect of any applicable Facility only in the case of clause (i) or, with respect to a Class vote, clause (ii).~~.

~~(b) In the event that (i) the Borrower or the Administrative Agent has requested that the Lenders consent to a departure or waiver of any provisions of the Loan Documents or agree to any amendment thereto, (ii) the consent, waiver or amendment in question requires the agreement of each Lender, each directly and adversely affected Lender, each Lender with respect to a certain Class of Loans or each directly and adversely affected Lender with respect to a certain Class of Loans, in each case in accordance with Section 10.08, and (iii) the Required Lenders (or, in the case of a consent, waiver or amendment involving all Lenders or all directly and adversely affected Lenders of a certain Class, the Required Class Lenders) have agreed to such consent, waiver or amendment, then any Lender who does not agree to such consent, waiver or amendment shall be deemed a "Non-Consenting Lender."~~

(b)  [Reserved].

(c)  Any Lender being replaced pursuant to Section 3.06(a) above shall (i) execute and deliver an Assignment and Acceptance with respect to such Lender's applicable Commitment and outstanding Loans, and (ii) deliver any Term Notes evidencing such Loans to the Borrower or Administrative Agent.  Pursuant to such Assignment and Acceptance, (A) the assignee Lender shall acquire all or a portion, as the case may be, of the assigning Lender's outstanding Loans, (B) all obligations of the Borrower owing to the assigning Lender relating to the Loans and participations so assigned shall be paid in full by the assignee Lender to such assigning Lender concurrently with such Assignment and Acceptance and (C) upon such payment and, if so requested by the assignee Lender, delivery to the assignee Lender of the appropriate Term Note executed by the Borrower, the assignee Lender shall become a Lender hereunder and the assigning Lender shall cease to constitute a Lender hereunder with respect to such assigned Loans, Commitments and participations, except with respect to indemnification provisions under this Agreement, which shall survive as to such assigning Lender.  ~~In connection with any such replacement, if any such Non-Consenting Lender does not execute and deliver to the Administrative Agent a duly executed Assignment and Acceptance reflecting such replacement~~

~~within five (5) Business Days of the date on which the assignee Lender executes and delivers such Assignment and Acceptance to such Non-Consenting Lender, then such Non-Consenting Lender shall be deemed to have executed and delivered such Assignment and Acceptance without any action on the part of the Non-Consenting Lender.~~

(d)    Notwithstanding anything to the contrary contained above, the Lender that acts as the Administrative Agent may not be replaced hereunder except in accordance with Article 9.

Section 3.07    ~~Section 3.07.~~    *Survival*.  All of the Borrower's obligations under this Article 3 shall survive termination of the Commitments and repayment of all other Obligations hereunder.

# ARTICLE 4
## CONDITIONS PRECEDENT TO each CREDIT ~~EXTENSIONS~~EXTENSION

Section 4.01    ~~Section 4.01.~~    *All Credit Extensions.*  The obligation of each Lender to honor any Request for Credit Extension ~~(other than a Request for Credit Extension requesting only a conversion of Loans to the other Type, or a continuation of SOFR Loans),~~ is subject to satisfaction (or waiver by the Lenders) of the following conditions precedent:

(a)    The representations and warranties set forth in Article 5 and in each other Loan Document shall be true and correct in all material respects on and as of the date of such Credit Extension with the same effect as though made on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date; *provided*, that any such representation and warranty that is qualified by "materiality", "material adverse effect" or similar language shall be true and correct in all respects (after giving effect to such qualification therein) on and as of the date of such Credit Extension, with the same effect as though made on and as of such date or such earlier date, as applicable.

(b)    No Default or Event of Default (other than the Existing Defaults) shall exist or would result from such proposed Credit Extension or from the application of the proceeds therefrom.

(c)    The Administrative Agent shall have received a Request for Credit Extension in accordance with the requirements hereof.

~~(d) The Collateral and Guarantee Requirement shall have been satisfied in all material respects with respect to each Material Real Property and, without duplication, each Pension Real Property.~~

(d)    With respect to the Final Postpetition Loans, the Final Order (i) shall be in form and substance satisfactory to the Agents and the Lenders, (ii) shall have been entered by the Bankruptcy Court within a date which is 45 days following the Petition Date, and the Borrower shall have delivered to the Administrative Agent and the Lenders a true and complete copy of such order and (iii) shall be in full force and effect and shall not have been modified or amended absent prior written consent of the Agents and the Lenders or reversed, modified, amended, stayed, vacated, appealed or subject to a stay pending appeal or otherwise challenged or subject to any challenge in any respect absent the prior written consent of the Agents and the Lenders.

Each Request for Credit Extension ~~(other than a Request for Credit Extension requesting only a conversion of Loans to the other Type, or a continuation of SOFR Loans)~~ submitted by the Borrower shall be deemed to be a representation and warranty by the Borrower that the conditions

specified in Sections 4.01 (a) and (b) have been satisfied or waived on and as of the date of the applicable Credit Extension.

Section 4.02.  *First Credit Extension.*  The amendment and restatement of the Existing Credit Agreement provided for hereby and the obligation of each Tranche B-2 Term Lender to make Tranche B-2 Term Loans, shall be subject to satisfaction (or waiver) of the following conditions precedent:

(a) The Administrative Agent and the Required Lenders shall have received the following, each properly executed by a Responsible Officer of the signing Loan Party, each dated as of the Restatement Effective Date:

(i) executed counterparts of this Agreement duly executed by the Borrower and each Guarantor;

(ii) a Term Note executed by the Borrower in favor of each Lender that has requested a Term Note at least two Business Days in advance of the Restatement Effective Date;

(iii) the Security Agreement duly executed by the parties thereto; and

(iv) the Fee Letter and the Administrative Fee Letter duly executed by the respective parties thereto.

(b) The Administrative Agent and the Required Lenders shall have received, on behalf of themselves, the Collateral Agent and the Lenders, an opinion of (i) Kirkland & Ellis LLP, counsel for the Loan Parties, and (ii) from each local counsel for the Loan Parties listed on Schedule 4.02(b), in each case, dated the Restatement Effective Date and addressed to the Administrative Agent, the Collateral Agent and the Lenders and in customary form and substance, and the Borrower hereby requests such counsel to deliver such opinions.

(c) The Administrative Agent and the Required Lenders shall have received (i) a copy of the certificate or articles of incorporation or organization or certificate of formation, including all amendments thereto, of each Loan Party, certified, if applicable, as of a recent date by the Secretary of State of the state of its organization, and a certificate as to the good standing (to the extent applicable) of each Loan Party as of a recent date, from such Secretary of State or similar Governmental Authority; (ii) a certificate of the Secretary or Assistant Secretary of each Loan Party dated the Restatement Effective Date and certifying (A) that attached thereto is a true and complete copy of the by-laws or operating (or limited liability company) agreement of such Loan Party as in effect on the Restatement Effective Date and at all times since a date prior to the date of the resolutions described in clause (B) below, (B) that attached thereto is a true and complete copy of resolutions duly adopted by the board of directors (or equivalent governing body) of such Loan Party authorizing the execution, delivery and performance of the Loan Documents to which such Loan Party is a party and, in the case of the Borrower, the borrowings hereunder, and that such resolutions have not been modified, rescinded or amended and are in full force and effect, (C) that the certificate or articles of incorporation or organization or certificate of formation of such Loan Party have not been amended since the date of the last amendment thereto shown on the certificate of good standing furnished pursuant to clause (i) above, (D) as to the incumbency and specimen signature of each officer executing any Loan Document or any other document delivered in connection herewith on behalf of such Loan Party on the Restatement Effective Date, and (E) as to the absence of any proceeding for the dissolution or liquidation of such Loan Party; and (iii) a certificate of another officer as to the incumbency and specimen signature of the Secretary or Assistant Secretary executing the certificate pursuant to clause (ii) above.

(d) (i) The Administrative Agent and the Required Lenders shall have received the results of (x) searches of the Uniform Commercial Code filings (or equivalent filings) and (y) judgment and tax lien searches, made with respect to each Loan Party in the states or other jurisdictions of formation of such Loan Party and with respect to such other locations and names listed on the Perfection Certificate, together with copies of the financing statements (or similar documents) disclosed by such search and (ii) each of the Security Agreement, the Custodial Administration Agreement and the Intellectual Property Security Agreement shall have been duly executed and delivered by each Loan Party that is to be a party thereto, together with (x) certificates, if any, representing the Equity Interests pledged by the Borrower and the Guarantors accompanied by undated stock powers executed in blank and (y) documents and instruments to be recorded or filed that the Administrative Agent may deem, subject to Section 6.13 reasonably necessary to satisfy the Collateral and Guarantee Requirement.

(e) The Collateral and Guarantee Requirement shall have been satisfied in all material respects with respect to each Material Real Property.

(f) [Reserved].

(g) The Succession Agreement shall have been duly executed and delivered by the parties thereto and actions required to assign the Collateral to the Collateral Agent shall have been consummated.

(h) Prior to or substantially concurrently with the funding of the Loans on the Restatement Effective Date, (i) the IBT Agreement shall be in full force and effect, and (ii) the Refinancing Transaction shall have been consummated and the Administrative Agent shall have received evidence thereof reasonably satisfactory to the Administrative Agent.  Immediately after giving effect to the Refinancing Transaction and the other transactions contemplated hereby, the Borrower and the Subsidiaries shall have outstanding no Indebtedness for borrowed money other than (i) Indebtedness outstanding under this Agreement, (ii) the ABL Facility Indebtedness, and (iii) Indebtedness permitted pursuant to Section 7.03.

(i) The Administrative Agent and the Required Lenders shall have received a solvency certificate, substantially in the form set forth in Exhibit H, from the chief financial officer or chief accounting officer or other officer with equivalent duties of the Borrower, or in lieu thereof at the option of the Borrower, an opinion of a nationally recognized valuation firm as to the solvency (on a consolidated basis) of the Borrower and its Subsidiaries as of the Restatement Effective Date.

(j) The ABL Credit Agreement shall have been amended pursuant to an amendment agreement, in form and substance reasonably satisfactory to the Required Lenders, to permit the Transactions.

(k) The Administrative Agent and the Required Lenders shall have received all documentation and other information about the Borrower and the Guarantors required under applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT Act, including without limitation, a duly executed W-9 tax form (or such other applicable IRS tax form) of the Borrower, that has been reasonably requested in writing at least five Business Days prior to the Restatement Effective Date.

(l) The Administrative Agent and the Required Lenders shall have received a certificate from an officer of the Borrower certifying that since December 31, 2018, there has not occurred any Material Adverse Effect.

(m) The Administrative Agent and the Required Lenders shall have received all applicable fees and other amounts due and payable on or prior to the Restatement Effective Date, including, to the extent

~~invoiced at least three Business Days prior to the Restatement Effective Date (except as otherwise reasonably agreed by the Borrower), reimbursement or payment of all out-of-pocket expenses required to be reimbursed or paid by the Borrower hereunder or under any other Loan Document on or prior to the Restatement Effective Date.~~

~~(n) To the extent required by~~ ~~Section 6.07,~~ ~~the Administrative Agent shall have received evidence that the insurance required by~~ ~~Section 6.07~~ ~~is in effect, together with endorsements naming the Administrative Agent, for the benefit of the Secured Parties, as additional insured and loss payee thereunder.~~

~~Solely for purposes of determining whether the conditions set forth in Section 4.01 or 4.02 have been satisfied in respect of any Credit Extension, the Agents and each Lender party hereto shall be deemed to have consented to, approved, accepted or be reasonably satisfied with any document delivered prior to such Credit Extension or other matter (in each case, for which such consent, approval, acceptance or satisfaction is expressly required by Section 4.01 or 4.02, as applicable) by releasing its signature page to this Agreement or to an Assignment and Acceptance, as the case may be.~~

## ARTICLE 5
### REPRESENTATIONS AND WARRANTIES

Each of the Borrower and each of the Guarantors party hereto represents and warrants to the Administrative Agent, the Collateral Agent and each of the Lenders that:

Section 5.01   ~~Section 5.01.~~  *Existence, Qualification and Power; Compliance with Laws.*  Each Loan Party and each ~~Restricted~~ Subsidiary (a) is a Person duly organized or formed, validly existing and in good standing (where relevant) under the Laws of the jurisdiction of its incorporation or organization, (b) has all requisite organizational power and authority to execute, deliver and perform its obligations under the Loan Documents to which it is a party and, in the case of the Borrower, to borrow hereunder, (c) is duly qualified and in good standing (where relevant) under the Laws of each jurisdiction where its ownership, lease or operation of properties or the conduct of its business requires such qualification, (d) is in compliance with all Laws, orders, writs and injunctions, and (e) has all requisite franchises, licenses, authorizations, qualifications, consents and approvals to operate its business as currently conducted; except in each case, referred to in clause (a) (other than with respect to any Loan Party), (c), (d) or (e), to the extent that failure to do so, individually or in the aggregate, would not reasonably be expected to have a Material Adverse Effect.

Section 5.02   ~~Section 5.02.~~  *Authorization; No Contravention.*  ~~The~~ Subject to the entry by (and terms of) the Bankruptcy Court of the DIP Order and the Canadian Orders, as applicable, the execution, delivery and performance by each Loan Party of each Loan Document to which such Person is a party, and the consummation of the Transactions, (a) are within such Loan Party's organizational powers, (b) have been duly authorized by all necessary corporate or other organizational action, and (c) do not (i) contravene the terms of any of such Person's Organization Documents, (ii) conflict with or result in any breach or contravention of, or the creation of (or the requirement to create) any Lien under (other than as permitted by Section 7.01), or require any payment to be made under (x) any post-petition Indebtedness of such Person ~~in excess of the Threshold Amount or~~ (y) any post-petition material order, injunction, writ or decree of any Governmental Authority or any arbitral award to which such Person or its property is subject; or (iii) violate any material Law; except with respect to any conflict, breach or contravention or payment (but not creation of Liens) referred to in clause (c)(ii)(x), to the extent that such violation,

conflict, breach, contravention or payment, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect.

Section 5.03    ~~Section 5.03.~~ *Governmental Authorization; Other Consents.* ~~No~~ Subject to the entry by the Bankruptcy Court of (and terms of) the DIP Order, and, in the case of the Canadian Collateral, the DIP Order and the Canadian Orders, no approval, consent, exemption, authorization, or other action by, or notice to, or filing with, any Governmental Authority is necessary or required in connection with (a) the execution, delivery or performance by, or enforcement against, any Loan Party of this Agreement or any other Loan Document, or for the consummation of the Transactions, (b) the grant by any Loan Party of the Liens granted by it pursuant to the Collateral Documents, (c) the perfection or maintenance of the Liens created under the Collateral Documents (including the priority thereof) to the extent required thereunder or (d) the exercise by the Administrative Agent, the Collateral Agent or any Lender of its rights under the Loan Documents or the remedies in respect of the Collateral pursuant to the Collateral Documents, except for (i) approvals, consents, exemptions, authorizations or other actions by, or notices to, or filings necessary to perfect the Liens on the Collateral granted by the Loan Parties in favor of the Secured Parties (or release existing Liens), (ii) the approvals, consents, exemptions, authorizations, actions, notices and filings which have been duly obtained, taken, given or made and are in full force and effect (except to the extent not required to be obtained, taken, given or made or to be in full force and effect pursuant to the Collateral and Guarantee Requirement) and (iii) those approvals, consents, exemptions, authorizations or other actions, notices or filings, the failure of which to obtain or make, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect.

Section 5.04    ~~Section 5.04.~~ *Binding Effect.* This Agreement and each other Loan Document has been duly executed and delivered by each Loan Party that is a party thereto. ~~This~~Upon entry of the DIP Order (and in the case of the Canadian Collateral, the DIP Order and the Canadian Orders), this Agreement and each other Loan Document constitutes a legal, valid and binding obligation of each such Loan Party, enforceable against each Loan Party that is a party thereto in accordance with its terms, except as such enforceability may be limited by Debtor Relief Laws and by general principles of equity.

Section 5.05    ~~Section 5.05.~~ *Financial Statements~~; No Material Adverse Effect~~.*

(a)    (i) The Audited Financial Statements fairly present in all material respects the financial condition of the Borrower and its consolidated Subsidiaries as of the dates thereof and their results of operations for the period covered thereby in accordance with GAAP consistently applied throughout the periods covered thereby, except as otherwise expressly noted therein.

(ii)    The Unaudited Financial Statements fairly present in all material respects the financial condition of the Borrower and its consolidated Subsidiaries as of the dates thereof and their results of operations for the period covered thereby in accordance with GAAP consistently applied throughout the periods covered thereby, except as otherwise expressly noted therein and the absence of footnotes.

(b)    The forecasts of income statements of the Borrower and its Subsidiaries which have been furnished to the Administrative Agent and the ~~Required~~ Lenders prior to the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date have been prepared in good faith on the basis of the assumptions stated therein, which assumptions were believed to be reasonable at the time of preparation of such forecasts it being understood by the Agents and the Lenders that such projections as to future events (i) are not to be viewed as facts, (ii)(A) are subject to significant uncertainties and contingencies, which may be beyond the control of the Borrower and its ~~Restricted~~ Subsidiaries, (B) no assurance is given by the Borrower and its ~~Restricted~~ Subsidiaries that the results or forecast in any such projections

will be realized and (C) the actual results may differ from the forecast results set forth in such projections and such differences may be material and (iii) are not a guarantee of performance and that actual results during the period or periods covered by any such projections may vary significantly from the projected results and such differences may be material.

(c) Since December 31, 2018, there has been no event or circumstance, either individually or in the aggregate, that has had or would reasonably be expected to have a Material Adverse Effect.

Section 5.06    Section 5.06.    *Compliance With Laws*.    NeitherSubject to the entry by (and terms of) the Bankruptcy Court of the DIP Order, neither the Borrower nor any of the Restricted Subsidiaries or any of their respective properties or assets is in violation of, nor will the continued operation of their properties and assets as currently conducted violate, any law, rule or regulation (including any zoning, building, ordinance, code or approval or any building permits) or any restrictions of record or agreements affecting the Mortgaged Propertyany real property interest of the Borrower or any of its Subsidiaries, or is in default with respect to any judgment, writ, injunction, decree or order of any Governmental Authority, where in each case such violation or default, individually or in the aggregate, would reasonably be expected to result in a Material Adverse Effect.

Section 5.07    Section 5.07.    *Ownership of Property; Liens*.

(a)    Schedule 1.01(c) sets forth a true, complete and correct list of all Real Property owned (whether in fee or through a leasehold estate under any ground lease) by Borrower and the Restricted Subsidiaries as of the RestatementAmendment No. 4 Effective Date.

(b)    Each of the Borrower and the Restricted Subsidiaries has good record title to, or valid leasehold interests in, or easements or other limited property interests in, all its properties and assets (including all Mortgaged Property material to its business), free and clear of all Liens except for minor defects in title that do not materially interfere with its ability to conduct its business or to utilize such assets for their intended purposes and except where the failure to have such title or interest would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

(c) As of the Restatement Effective Date, Schedule 9 to the Perfection Certificate dated the Restatement Effective Date contains a true and complete list of each Material Real Property owned by the Borrower each other Loan Party and its Restricted Subsidiaries.

(d) As of the Restatement Effective Date, except as otherwise disclosed in writing to the Collateral Agent and the Required Lenders, no Mortgage encumbers improved Mortgaged Property that is located in an area that has been identified by the Secretary of Housing and Urban Development as an area having special flood hazards within the meaning of the Flood Laws unless Evidence of Flood Insurance has been delivered to the Collateral Agent.

Section 5.08    Section 5.08.    *Environmental Matters*.    Except as would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect:

(a)    Each Loan Party and each Restricted Subsidiary is and has been in compliance with all Environmental Laws, which includes obtaining and maintaining all Environmental Permits required under such Environmental Laws to carry on the business of the Loan Parties and the Restricted Subsidiaries;

(b)    the Loan Parties and the Restricted Subsidiaries have not received notice alleging any Environmental Liability or proposing or seeking to revoke, modify or deny the renewal of any

Environmental Permit required to be held by the Loan Parties or the ~~Restricted~~ Subsidiaries, and neither the Loan Parties nor the ~~Restricted~~ Subsidiaries have become subject to any Environmental Liability;

(c)     there has been no Release, discharge or disposal of Hazardous Materials (i) on, to, at, under or from any Real Property or any vehicles or facilities owned or leased by any of the Loan Parties or the ~~Restricted~~ Subsidiaries, or, to the knowledge of the Borrower, formerly owned, operated or leased by any Loan Party or any ~~Restricted~~ Subsidiary, or (ii) arising out of the conduct of the Loan Parties or the ~~Restricted~~ Subsidiaries that, in the case of (i) or (ii), could reasonably be expected to require investigation, remedial activity or corrective action or cleanup by or on behalf of any Loan Party or any ~~Restricted~~ Subsidiary or for which any Loan Party or ~~Restricted~~ Subsidiary reasonably could be expected to otherwise incur any Environmental Liability; and

(d)     there are no facts, circumstances or conditions arising out of or relating to, and there are no pending or reasonably anticipated requirements under Environmental Law associated with, the operations of the Loan Parties or the ~~Restricted~~ Subsidiaries or any Real Property, vehicles or facilities currently or, to the knowledge of the Borrower, previously owned or leased by the Loan Parties or any ~~Restricted~~ Subsidiary that, in such case, are known to or would reasonably be likely to require investigation, remedial activity or corrective action or cleanup by or on behalf of any Loan Party or any ~~Restricted~~ Subsidiary or that are known to or would reasonably be likely to result in the Borrower or any other Loan Party or ~~Restricted~~ Subsidiary incurring any Environmental Liability or capital expenditures to achieve or maintain compliance with Environmental Laws.

Section 5.09     ~~Section 5.09.~~     *Taxes*.  Except as would not, either individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect: each of the Loan Parties and their ~~Restricted~~ Subsidiaries have timely filed all tax returns required to be filed (taking into account any extensions), and have paid all Taxes levied or imposed upon them or their properties, that are due and payable (including in their capacity as a withholding agent), except those which are being contested in good faith by appropriate proceedings diligently conducted if such contest shall have the effect of suspending enforcement or collection of such Taxes and for which adequate reserves have been provided in accordance with GAAP.  There is no proposed Tax deficiency or assessment known to any Loan Party against any Loan Party or any ~~Restricted~~ Subsidiary that would, if made, individually or in the aggregate, have a Material Adverse Effect.

Section 5.10     ~~Section 5.10.~~     *ERISA Compliance*Litigation. Except for claims, actions, suits, investigations, litigation or proceedings stayed by Section 362 of the Bankruptcy Code and as set forth on Schedule 5.10 and/or the Canadian Orders, as applicable, there does not exist any action, suit, investigation, litigation or proceeding, pending or to the knowledge of the Loan Parties, threatened in writing in any court or before any arbitrator or Governmental Authority that, (x) either individually or in the aggregate, has had or would reasonably be expected to have a Material Adverse Effect with respect to the assets or property of the Loans Parties or (y) is in respect of the Loans or the Loan Documents and either individually or in the aggregate, has had or would reasonably be expected to have a Material Adverse Effect.

~~.~~

~~Except as would not, either individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect:~~

~~(a) Each Plan is in compliance with the applicable provisions of ERISA, the Code and other Federal or state Laws (and the regulations and published interpretations thereunder).~~

(b) The Loan Parties, their Restricted Subsidiaries and their respective ERISA Affiliates may incur liability for ordinary course contributions to (and make payments in satisfaction of such liabilities) plans listed on Schedule 5.10(b), which are Multiemployer Plans.

(c) No ERISA Event has occurred.

Section 5.11    Section 5.11.    *Subsidiaries.*  As of the RestatementAmendment No. 4 Effective Date (after giving effect to the Transactions), no Loan Party has any direct or indirect Restricted Subsidiaries other than those specifically disclosed in Schedule 5.11, and all of the outstanding Equity Interests owned by the Loan Parties (or a Restricted Subsidiary of any Loan Party) in such Subsidiaries have been validly issued and are fully paid and (if applicable) non-assessable and all Equity Interests owned by a Loan Party (or a Restricted Subsidiary of any Loan Party) in such Subsidiaries are owned free and clear of all Liens except (a) those created under the Collateral Documents or under the Prepetition ABL Facility Documentation, the Prepetition UST Tranche A Facility Documentation and, the Prepetition UST Tranche B Facility Documentation and the Junior DIP Loan Documents (which Liens shall be subject to the Prepetition ABL Intercreditor Agreement, the terms and priorities set forth in the DIP Order and the Senior ICA Provisions) and (b) any other Lien that is permitted or granted under the DIP Order or permitted under Section 7.01.  As of the RestatementAmendment No. 4 Effective Date, (i) Section 2(c) of the Perfection Certificate sets forthSchedule 5.11 sets forth (i) the name and jurisdiction of each Loan Party and (ii) Schedule 5 to the Perfection Certificate sets forth the direct ownership interest of the Borrower and any Loan Party thereof in each such Subsidiary, including the percentage of such ownership.

Section 5.12    Section 5.12.    *Margin Regulations; Investment Company Act.*

(a)    No Loan Party or Restricted Subsidiary is engaged nor will it engage, principally, or as one of its important activities in the business of purchasing or carrying Margin Stock, or extending credit for the purpose of purchasing or carrying Margin Stock, and no proceeds of any Borrowings will be used, whether directly or indirectly, and whether immediately, incidentally or ultimately, for any purpose that entails a violation of the provisions of the Regulations of the Board, including Regulation T, U or X.

(b)    Neither the Borrower, nor any of the Restricted Subsidiaries is or is required to be registered as an "investment company" under the Investment Company Act of 1940.

Section 5.13    Section 5.13.    *Disclosure.*  No report, financial statement, certificate or other written information furnished by or on behalf of any Loan Party (other than projected financial information, pro forma financial information, budgets, estimates  and information of a general economic or industry nature) to any Agent or any Lender about the Borrower and its Subsidiaries in connection with the transactions contemplated hereby and the negotiation of this Agreement or delivered hereunder or under any other Loan Document (as modified or supplemented by other information so furnished) when taken as a whole contains or will contain any material misstatement of fact or omits or will omit to state any material fact necessary to make the statements therein (when taken as a whole), in the light of the circumstances under which they were or will be made, not materially misleading.  With respect to projected financial information and pro forma financial information, the Borrower represents that such information was prepared in good faith based upon assumptions believed to be reasonable at the time of preparation; it being understood and agreed by the Agents and the Lenders that such projections as to future events (i) are not to be viewed as facts, (ii) are subject to significant uncertainties and contingencies, which may be beyond the control of the Borrower and its Restricted Subsidiaries and (iii) are not a guarantee of performance and that actual results during the period or periods covered by any such projections may vary significantly from the projected results and such differences may be material.

Section 5.14    ~~Section 5.14.~~    *~~Labor Matters~~ERISA Compliance.* Except as would not, either individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect:

(a)    Each Plan is in compliance with the applicable provisions of ERISA, the Code and other Federal or state Laws (and the regulations and published interpretations thereunder).

(b)    The Loan Parties, their Subsidiaries and their respective ERISA Affiliates may incur liability for ordinary course contributions to (and make payments in satisfaction of such liabilities) which are Multiemployer Plans.

~~.~~

~~(a)    Except as, in the aggregate, would not reasonably be expected to result in a Material Adverse Effect:  (i) there are no strikes or other labor disputes against the Borrower or any of its Restricted Subsidiaries pending or, to the knowledge of the Borrower, threatened in writing; (ii) hours worked by and payment made to employees of the Borrower or any of its Restricted Subsidiaries have not been in violation of the Fair Labor Standards Act or any other applicable Law dealing with such matters; and (iii) all payments due from the Borrower or any of its Restricted Subsidiaries on account of employee health and welfare insurance have been paid or accrued as a liability on the books of the relevant party.  Except as disclosed on~~ ~~Schedule 5.14~~~~, as of the Restatement Effective Date no Loan Party is a party to or bound by any collective bargaining agreement or, with respect to any Foreign Subsidiary, any similar agreement.   To the knowledge of any Loan Party, the consummation of the transactions contemplated by the Loan Documents will not give rise to any right of termination or right of renegotiation on the part of any union under any collective bargaining agreement to which any Loan Party is bound to the extent that such would be reasonably be expected to result in a Material Adverse Effect.~~

~~(b)    (i) The IBT Agreement is in full force and effect and (ii) other than as contemplated by the IBT Transactions, the IBT Agreement has not been amended, waived or otherwise modified in any respect materially adverse to the Borrower and its Subsidiaries (taken as a whole). For purposes of this Section 5.14(b), it is understood that the resolution in the ordinary course of business of an employee grievance seeking to enforce the IBT Agreement terms will not be deemed to constitute an amendment, waiver or other modification to the IBT Agreement.~~

Section 5.15    ~~Section 5.15.~~ *Insurance.* ~~Each~~Upon entry of the Chapter 11 Orders (and in the case of the Canadian Collateral, the DIP Order and the Canadian Orders), each of the Borrower and its Subsidiaries maintains, with financially sound and reputable insurance companies, insurance in such amounts and against such risks as are customarily maintained by companies engaged in the same or similar businesses operating in the same or similar locations; *provided*, that each of the Borrower and its Subsidiaries may self-insure to the same extent as other companies engaged in similar businesses and owning similar properties in the same general areas in which the Borrower or each such Subsidiary, as applicable, operates.

Section 5.16    ~~Section 5.16.~~    *~~Solvency~~[Reserved]*.  ~~Immediately after giving effect to the consummation of the Transactions to occur on the Restatement Effective Date, including the making of the Loans under this Agreement, and immediately after giving effect to the application of the proceeds of such Loans, on the Restatement Effective Date (a) the fair value of the assets of the Borrower and its Subsidiaries, on a consolidated basis (on a going concern basis), exceeds, on a consolidated basis, their debts and liabilities, subordinated, contingent or otherwise; (b) the present fair saleable value of the property of the Borrower and its Subsidiaries, on a consolidated basis, is greater than the amount that will be required to pay the probable liability, on a consolidated basis, of their debts and other liabilities,~~

~~subordinated, contingent or otherwise, as such debts and other liabilities become absolute and matured in the ordinary course of business; (c) the Borrower and its Subsidiaries, on a consolidated basis, are able to pay their debts and liabilities, subordinated, contingent or otherwise, as such liabilities become absolute and matured; and (d) the Borrower and its Subsidiaries, on a consolidated basis, are not engaged in, and are not about to engage in, business for which they have unreasonably small capital. For purposes of this Section 5.16, the amount of any contingent liability at any time shall be computed as the amount that would reasonably be expected to become an actual and matured liability in the ordinary course of business.~~

<u>.</u>

    <u>Section 5.17</u>    ~~Section 5.17.~~  *No Other Borrowed Money Indebtedness.*    Immediately after giving effect to the consummation of the Transactions to occur on the ~~Restatement~~<u>Amendment No. 4</u> Effective Date the Borrower and its Subsidiaries shall have <u>no</u> outstanding ~~no~~ Indebtedness for borrowed money other than (a) Indebtedness outstanding under this Agreement, ~~(b) the ABL Facility Indebtedness, (c) Indebtedness set forth on Schedule 7.03(b) and (d)~~ <u>and the Prepetition Indebtedness and (b)</u> Indebtedness permitted pursuant to Section 7.03 <u>of the Junior DIP Credit Agreement</u>.

    <u>Section 5.18</u>    ~~Section 5.18.~~  *Collateral Documents~~.~~*

~~(a)~~ *~~Valid Liens.~~*  ~~The~~<u>. The DIP Order (and in the case of the Canadian Collateral, the DIP Order and the Canadian Orders) and the</u> Collateral Documents ~~are,~~ ~~or~~ on execution and delivery thereof by the parties thereto ~~will be,~~<u>, are</u> effective to create in favor of the Collateral Agent for the benefit of the Secured Parties, legal, valid and enforceable Liens on, and security interests in, the Collateral described therein to the extent intended to be created thereby, ~~except as the enforceability thereof may be limited by bankruptcy, insolvency or similar laws affecting creditors' rights generally and subject to general principles of equity and (i) when financing statements and other filings in appropriate form are filed in the offices specified in Section 2 of the Perfection Certificate (and payments of all fees) and (ii) upon the taking of possession or control by the Collateral Agent of such Collateral with respect to which a security interest may be perfected only by possession or control (which possession or control shall be given to the Collateral Agent to the extent possession or control by the Collateral Agent is required by the Security Agreement), and (iii) upon the notating of the Lien of the Collateral Agent on all certificates of title in respect of any Collateral,~~<u>and</u> the Liens created by the <u>DIP Order and the</u> Collateral Documents ~~(other than the Mortgages)~~ shall constitute fully perfected Liens on, and security interests in, <u>in each case, to the extent available under the Chapter 11 Cases,</u> all right, title and interest of the ~~grantors~~<u>Loan Parties</u> in such Collateral~~, in each case prior and superior in right to any other Person, other than Liens permitted by Section 7.01 (other than Liens securing Permitted Junior Priority Additional Debt or any Permitted Refinancing thereof and Liens securing ABL Facility Indebtedness, UST Tranche A Facility Indebtedness and UST Tranche B Facility Indebtedness or, in each case, a Permitted Refinancing thereof, that are intended to be junior to the Liens of the Collateral Documents)~~<u>. with the priority set forth herein and otherwise subject in all respects to the terms of the DIP Order and the Canadian Orders.</u> <u>Notwithstanding anything to the contrary herein, nothing in this Section 5.18 is intended to or does conflict with or override the UST Adequate Protection Order and in the event of any inconsistencies between this Section 5.18 and the UST Adequate Protection Order, the UST Adequate Protection Order shall govern.</u>

~~(b)~~ *~~PTO Filing; Copyright Office Filing.~~*  ~~When the Security Agreement or a short form thereof is properly filed (and payments of all fees) in the United States Patent and Trademark Office and the United States Copyright Office, to the extent such filings may perfect such interests, the Liens created by such Security Agreement shall constitute fully perfected Liens on, and security interests in, all right, title and interest of the grantors thereunder in Patents and Trademarks (each as defined in the Security~~

Agreement) registered or applied for with the United States Patent and Trademark Office or Copyrights (as defined in such Security Agreement) registered or applied for with the United States Copyright Office, as the case may be, in each case prior and superior in right to any other Person, other than Liens permitted by Section 7.01 (other than Liens securing Permitted Junior Priority Additional Debt or any Permitted Refinancing thereof and Liens securing ABL Facility Indebtedness, UST Tranche A Facility Indebtedness and UST Tranche B Facility Indebtedness or, in each case, a Permitted Refinancing thereof, that are intended to be junior to the Liens of the Collateral Documents) (it being understood that subsequent recordings in the United States Patent and Trademark Office and the United States Copyright Office may be necessary to establish a Lien on registered Patents, Trademarks and Copyrights acquired by the grantors thereof after the Restatement Effective Date).

(c) *Mortgages*. Upon recording thereof in the appropriate recording office (and payments of all applicable fees), each Mortgage is effective to create, in favor of the Collateral Agent, for its benefit and the benefit of the Secured Parties, legal, valid and enforceable (except as the enforceability thereof may be limited by bankruptcy, insolvency or similar laws affecting creditors' rights generally and subject to general principles of equity) perfected Liens on, and a security interest in, all of the Loan Parties' right, title and interest in and to the Mortgaged Property thereunder and the proceeds thereof, subject only to Liens permitted hereunder, and when such Mortgage is filed in the offices specified in the local counsel opinion delivered with respect thereto in accordance with the provisions of Sections 6.11 and 6.13, such Mortgage shall constitute a fully perfected Lien on, and security interest in, all right, title and interest of the Loan Party to such Mortgage in the Mortgaged Property described therein and the proceeds thereof, in each case prior and superior in right to any other Person, other than Liens permitted by Section 7.01.

(d) *Rolling Stock*. Upon the recording thereof on the applicable certificate of title (and filing of financing statements and payment of applicable fees, which shall be for the account of the Borrower), the notation of the Administrative Agent's lien on any rolling stock or other goods subject to a certificate of title is effective to create, in favor of the Collateral Agent, for its benefit and the benefit of the Secured Parties, legal, valid and enforceable (except as the enforceability thereof may be limited by bankruptcy, insolvency or similar laws affecting creditors' rights generally and subject to general principles of equity) perfected Liens on, and a security interest in, all of the Loan Parties' right, title and interest in and to such Collateral and the proceeds thereof, subject only to Liens permitted hereunder, in each case prior and superior in right to any other Person, other than Liens permitted by Section 7.01.

Notwithstanding anything herein (including this Section 5.18 or Section 5.04) or in any other Loan Document to the contrary, neither the Borrower nor any other Loan Party makes any representation or warranty as to (A) [reserved], (B) the pledge or creation of any security interest, or the effects of perfection or non-perfection, the priority or the enforceability of any pledge of or security interest to the extent such pledge, security interest, perfection or priority is not required pursuant to the Collateral and Guarantee Requirement or (C) on the Restatement Effective Date and until required pursuant to Section 4.02(d) or Section 6.13, the pledge or creation of any security interest, or the effects of perfection or non-perfection, the priority or enforceability of any pledge or security interest to the extent not required on the Restatement Effective Date pursuant to Section 4.02(d).

Section 5.19   Section 5.19.   *Compliance with Anti-Terrorism and Corruption Laws*.

(a)   To the extent applicable, the Borrower and the Restricted Subsidiaries are in compliance, in all material respects, with (i) the Trading with the Enemy Act and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V) and any other enabling legislation or executive order relating thereto, and (ii) the USA PATRIOT Act, (iii) Canadian

AML Legislation and (iv) any other similar anti-terrorism and anti-corruption legislation in other jurisdictions.

(b)    None of the Borrower or any ~~Restricted~~ Subsidiary nor, to the knowledge of the Borrower, any director, officer, agent, employee or controlled Affiliate of the Borrower or any ~~Restricted~~ Subsidiary, (i) is a Blocked Person or (ii) is currently subject to any U.S. sanctions administered or enforced by OFAC or by any Canadian Governmental Authority that is applicable to the Borrower or any Subsidiary at such time that could, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect; and none of the Borrower or any ~~Restricted~~ Subsidiary will use the proceeds of the Loans for the purpose of financing the activities of any Person currently subject to any U.S. sanctions administered or enforced by OFAC or any Canadian Governmental Authority that is applicable to the Borrower or any Subsidiary.

No part of the proceeds of the Loans will be used by the Borrower or any of the ~~Restricted~~ Subsidiaries, directly or indirectly, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended.

Section 5.20    ~~Section 5.20.~~ *Real Property Permits.*  Borrower has all Permits, all of which are in full force and effect as of the date hereof required by the applicable Governmental Authorities in connection with the ownership and operation of any Material Real Property, except to the extent that the failure to have any such Permits would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

## ~~ARTICLE 6~~

Section 5.21    *Secured, Super-Priority Obligations.* On and after the Postpetition B-2 Facility Closing Date, solely with respect to the New Money Postpetition Term Loans:

(a)    The Chapter 11 Cases were commenced on the Petition Date in accordance with applicable law and proper notice thereof for (x) the motions seeking approval of the Loan Documents, the DIP Order and the applicable Canadian Orders and (y) the hearings for the approval of the DIP Order and the applicable Canadian Orders were given in each case. The Borrower has given, on a timely basis as specified in the DIP Order and the applicable Canadian Orders, all notices required to be given to all parties specified in the DIP Order and the applicable Canadian Orders.

(b)    The provisions of the Loan Documents and the DIP Order (and, in the case of the Canadian Collateral, the DIP Order and the applicable Canadian Orders), are effective to create in favor of the Collateral Agent, for the benefit of the Secured Parties, legal, valid and perfected Liens on and security interests in all right, title and interest in the Collateral (the "**Postpetition B-2 Liens**"), having the priority provided for herein and in the DIP Order and the applicable Canadian Orders, and enforceable against the Loan Parties, in each case, subject to the terms and conditions of the DIP Order (and, in the case of the Canadian Collateral, the DIP Order and the Canadian Orders).

(c)    Pursuant to Section 364(c)(1) of the Bankruptcy Code and the DIP Order (and, in the case of the Canadian Collateral, the DIP Order and the Canadian Orders), all Obligations relating to or arising under the New Money Postpetition Term Loans and all other obligations relating to or arising under the New Money Postpetition Term Loans of the Loan Parties under the Loan Documents at all times shall constitute allowed super-priority administrative expense claims in the Chapter 11 Cases having priority over all other costs and expenses of the kinds specified in, or ordered pursuant to,

Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1114 or any other provision of the Bankruptcy Code or otherwise, and shall at all times be senior in lien and payment priority to the rights of the Junior DIP Superpriority Claims (except with respect to Unencumbered Assets, with respect to which the Postpetition B-2 Superpriority Claims will be junior to the Junior DIP Superpriority Claims, and the DIP Proceeds Account, with respect to which the Postpetition B-2 Superpriority Claims shall be pari passu with the Junior DIP Superpriority Claims), the rights of the Loan Parties, the estates of Loan Parties, and any successor trustee or estate representative in the Chapter 11 Cases or any subsequent proceeding or case under the Bankruptcy Code, subject to the Carve-Out and the Canadian Priority Charges pursuant to the Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders.

(d)     Pursuant to Section 364(c)(2) of the Bankruptcy Code and DIP Order (and, in the case of the Canadian Collateral, the DIP Order and the Canadian Orders), all Obligations relating to or arising under the New Money Postpetition Term Loans are secured by a perfected Lien on (i) the DIP Proceeds Account and (ii) all unencumbered assets of the Loan Parties (other than Excluded Property) (now existing or hereafter acquired) and all proceeds thereof that were not subject to a perfected, non-avoidable Lien as of the Petition Date (the "**Unencumbered Assets**"), which Lien is (i) pari passu with the Lien securing the Junior DIP Obligations on such DIP Proceeds Account (it being understood that the Prepetition Secured Parties have no Lien on the DIP Proceeds Account) and (ii) junior to the Liens securing the Junior DIP Obligations on such Unencumbered Assets, in each case, subject to the Carve-Out, the Canadian Priority Charges pursuant to the Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders and the Junior DIP Liens.

(e)     Pursuant to Section 364(c)(3) and 364(d)(1) of the Bankruptcy Code and the DIP Order (and, in the case of the Canadian Collateral, the DIP Order and the Canadian Orders), all Obligations relating to or arising under the New Money Postpetition Term Loans are secured by a first priority perfected Lien on all B-2 Priority Collateral of the Loan Parties (now existing or hereafter acquired) and all proceeds thereof, subject to the Carve-Out and the Canadian Priority Charges pursuant to the Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders and pari passu with the Prepetition B-2 Liens and the B-2 Adequate Protection Liens (as defined in the DIP Order). For the avoidance of doubt, the Postpetition B-2 Liens on the B-2 Priority Collateral share (but are senior in priority to) the Prepetition UST Liens and the Prepetition ABL Liens, in each case on the B-2 Priority Collateral.

(f)     Pursuant to Section 364(c)(3) of the Bankruptcy Code and the DIP Order (and, in the case of the Canadian Collateral, the DIP Order and the Canadian Orders), the Postpetition B-2 Liens shall be subject and junior to (i) the Prepetition ABL Facility Indebtedness (prior to the Discharge of ABL Obligations), in the case of Prepetition ABL Priority Collateral, (ii) the Prepetition UST Tranche B Facility Indebtedness (prior to the Discharge of UST Tranche B Obligations), in the case of Prepetition UST Tranche B Priority Collateral and Prepetition UST Tranche B Joint Collateral, (iii) the Carve-Out, (iv) the Canadian Priority Charges pursuant to the Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders, and (v) any valid, perfected and unavoidable Liens in existence on the Postpetition B-2 Facility Closing Date on such assets of the Loan Parties that pursuant to the terms of the DIP Order are senior in priority to the Postpetition B-2 Liens.

(g)     The DIP Order and the Canadian DIP Recognition Order are in full force and effect and have not been vacated, reversed, modified, amended or stayed without the prior written consent of the Lenders.

(h)     The Initial Budget and each Updated Budget were prepared in good faith by the management of the Borrower (and in consultation with the Borrower's Operational Advisor), based on assumptions believed by the management of the Borrower to be reasonable at the time made and upon

information believed by the management of the Borrower to have been accurate based upon the information available to the management of Borrower at the time such Initial Budget or Updated Budget was furnished.

Section 5.22    *Prepetition UST Joint and Priority Collateral.* As of the Amendment No. 4 Effective Date, Schedule 5.22(a) lists all Rolling Stock that constitutes Prepetition UST Tranche B Joint Collateral and Schedule 5.22(b) lists all Rolling Stock that constitutes Prepetition UST Tranche B Priority Collateral.

Section 5.23    *No Canadian Pension Plans.* No Loan Party maintains, sponsors, administrates, contributes to, participates in or has any obligations or any actual or contingent liability in respect of a Canadian Defined Benefit Pension Plan.

## ARTICLE 6

### AFFIRMATIVE COVENANTS

So long as any Lender shall have any Commitment hereunder or any Loan or other Obligation (other than contingent indemnification or reimbursement obligations) hereunder which is accrued or payable shall remain unpaid or unsatisfied, then from and after the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date, the Borrower shall and shall (except in the case of the covenants set forth in Sections 6.01, and 6.02~~, 6.03 and 6.15~~) cause each of the ~~Restricted~~ Subsidiaries to:

Section 6.01    ~~Section 6.01.~~ *Financial Statements, Reports, Etc.*  In the case of the Borrower, deliver to the Administrative Agent for prompt further distribution to each Lender~~:~~

~~(a)~~, within 90 days after the end of each fiscal year of the Borrower (beginning with the fiscal year ending December 31, 2019), a consolidated balance sheet of the Borrower and its Subsidiaries as at the end of such fiscal year, and the related consolidated statements of operations, changes in shareholders' equity and cash flows for such fiscal year, setting forth in each case in comparative form the figures for the previous fiscal year, all in reasonable detail and prepared in accordance with GAAP, audited and accompanied by a report and opinion of KPMG LLP, any other independent registered public accounting firm of nationally recognized standing or any other independent registered public accounting firm approved by the Administrative Agent and the Required Lenders (such approval not to be unreasonably withheld, conditioned or delayed), which report and opinion (i) shall be prepared in accordance with generally accepted auditing standards, (ii) shall not be subject to qualifications or exceptions as to the scope of such audit, (iii) shall be without a "going concern" disclosure or like qualification or exception (other than with respect to, or disclosure or an exception or qualification solely resulting from, (x) the impending maturity of any Indebtedness, (y) any prospective or actual default under any financial covenant or (z) the impact of COVID-19 on the business of the Borrower and its Subsidiaries) and (iv) shall be accompanied with customary management discussion and analysis;

~~(b)~~ within 45 days after the end of each ~~of the first three (3)~~ fiscal ~~quarters~~quarter of each fiscal year of the Borrower (commencing with the fiscal quarter ended ~~September~~June 30, ~~2019~~2023), a consolidated balance sheet of the Borrower and its Subsidiaries as at~~of~~ the end of such fiscal quarter, and the related (x) consolidated statements of income or operations for such fiscal quarter and for the portion of the fiscal year then ended and (y) consolidated statements of cash flows for such fiscal quarter and the portion of the fiscal year then ended, setting forth in each case in comparative form the figures for the corresponding fiscal quarter of the previous fiscal year and the corresponding portion of the previous fiscal year, all in reasonable detail and certified by a Responsible Officer of the Borrower as fairly presenting in all material respects the financial condition, results of operations and cash flows of the Borrower and its Subsidiaries in accordance with GAAP, subject only to normal year-end audit

adjustments and the absence of footnotes and accompanied by customary management discussion and analysis; and.

(c)  within 90 days after the end of each fiscal year (commencing with the fiscal year ending December 31, 2019) of the Borrower, a reasonably detailed consolidated budget for the following fiscal year on a quarterly basis (including a projected consolidated balance sheet of the Borrower and its Subsidiaries as of the end of the following fiscal year, the related consolidated statements of projected cash flows and projected income and a summary of the material underlying assumptions applicable thereto) (collectively, the "Projections"), which Projections shall in each case be accompanied by a certificate of a Responsible Officer stating that such Projections have been prepared in good faith on the basis of the assumptions stated therein, which assumptions were believed to be reasonable at the time of preparation of such Projections, it being understood by the Agents and the Lenders that such projections as to future events (i) are not to be viewed as facts, (ii)(A) are subject to significant uncertainties and contingencies, which may be beyond the control of the Borrower and its Restricted Subsidiaries, (B) no assurance is given by the Borrower and its Restricted Subsidiaries that the results or forecast in any such projections will be realized and (C) the actual results may differ from the forecast results set forth in such projections and such differences may be material and (iii) are not a guarantee of performance and that actual results during the period or periods covered by any such projections may vary significantly from the projected results and such differences may be material.

Notwithstanding the foregoing, the obligations in paragraphs (a) and (b) of this Section 6.01 or Section 6.02(b) may be satisfied with respect to information of the Borrower and the Subsidiaries by furnishing within the time period specified in the applicable paragraph (A) the applicable financial statements of the Borrower or (B) the Borrower's Form 10-K or 10-Q, as applicable, filed with the SEC; provided that, with respect to clauses (A) and (B), to the extent such information is in lieu of information required to be provided under Section 6.01(a), such materials are accompanied by a report and opinion of KPMG LLP, any other independent registered public accounting firm of nationally recognized standing or any other independent registered public accounting firm approved by the Administrative Agent and the Required Lenders (such approval not to be unreasonably withheld, conditioned or delayed), which report and opinion (i) shall be prepared in accordance with generally accepted auditing standards, (ii) shall not be subject to qualifications or exceptions as to the scope of such audit and (iii) shall be without a "going concern" disclosure or like qualification or exception (other than with respect to, or disclosure or an exception or qualification solely resulting from, (A) the impending maturity of any Indebtedness, (B) any prospective or actual default under any financial covenant or (C) the impact of COVID-19 on the business of the Borrower and its Subsidiaries)..

Documents required to be delivered pursuant to Section 6.01(a), (b), (c) and (d)  or Section 6.02(b) or (c) may be delivered electronically and if so delivered, shall be deemed to have been delivered on the earliest date on which (i) Borrower posts such documents, or provides a link thereto on Borrower's website on the Internet and provides notice thereof to the Administrative Agent; (ii) such documents are posted on Borrower's behalf on IntraLinks/IntraAgency or another website, if any, to which each Lender and the Administrative Agent have access (whether a commercial, third-party website or whether sponsored by the Administrative Agent), or (iii) such financial statements and/or other documents are posted are posted on the SEC's website on the internet at www.sec.gov; provided that:  (i) promptly following written request by the Administrative Agent, the Borrower shall deliver paper copies of such documents to the Administrative Agent for further distribution to each Lender until a written request to cease delivering paper copies is given by the Administrative Agent and (ii) the Borrower shall notify (which may be by facsimile or electronic mail) the Administrative Agent of the posting of any such documents and provide to the Administrative Agent by electronic mail electronic versions (i.e., soft copies) of such documents.  Each Lender shall be solely responsible for timely accessing posted documents or requesting delivery of paper copies of such documents from the Administrative Agent and

maintaining its copies of such documents. ~~Notwithstanding anything contained herein, in every instance the Borrower shall be required to provide paper copies of the Compliance Certificates required by Section 6.02(a) to the Administrative Agent; *provided*, however, that if such Compliance Certificate is first delivered by electronic means, the date of such delivery by electronic means shall constitute the date of delivery for purposes of compliance with Section 6.02(a).~~

Section 6.02    ~~Section 6.02.~~    *Certificates; Other Information.*    Deliver to the Administrative Agent for prompt further distribution to each Lender (or, with respect to clauses (~~1~~k) through (o), deliver directly to the Lenders and their advisors):

~~(a) no later than five (5) Business Days after the delivery of the financial statements referred to in Sections 6.01(a) and 6.01(b) (or the date on which such delivery is required), commencing with the first full fiscal quarter completed after the Restatement Effective Date, a duly completed Compliance Certificate signed by a Responsible Officer of the Borrower; it being understood that , if applicable for such period of delivery, such Compliance Certificate shall include (i) information about Net Proceeds received in the period for individual amounts greater than $5,000,000 and set forth statements of the Borrower's intention regarding the use of any portion of such Net Proceeds to acquire, maintain, develop, construct, improve, upgrade or repair assets useful in the business of the Borrower or its Restricted Subsidiaries or to make Permitted Acquisitions or any acquisition permitted hereunder of all or substantially all the assets of, or all the Equity Interests (other than directors qualifying shares) in a Person, division or line of business previously acquired) and (ii) calculations setting forth in reasonable detail the amount of any Cumulative Credit available at the beginning of the applicable period and at the end of such period and the amount and application of any Cumulative Credit during such period (it being understood that the Borrower has the right to reallocate usage of the Cumulative Credit in accordance with Section 1.02(i) from time to time);~~

(a)    concurrently with the delivery of the financial statements referred to in Sections 6.01 (or the date on which such delivery is required), commencing with the first fiscal quarter ended after the Postpetition B-2 Facility Closing Date, a duly completed Compliance Certificate signed by a Responsible Officer of the Borrower;

(b)    promptly after the same are publicly available, copies of all annual, regular, periodic and special reports and registration statements which the Borrower or any ~~Restricted~~ Subsidiary files with the SEC or with any Governmental Authority that may be substituted therefor (other than amendments to any registration statement (to the extent such registration statement, in the form it became effective, is delivered), exhibits to any registration statement and, if applicable, any registration statement on Form S-8) and in any case not otherwise required to be delivered to the Administrative Agent pursuant hereto;

(c)    ~~(i)~~ promptly after the furnishing thereof, copies of any material notices ~~of default~~ received by any Loan Party or ~~Restricted~~ Subsidiary (other than in the ordinary course of business) or furnished to any holder of Indebtedness or debt securities of any Loan Party or or of any of its ~~Restricted~~ Subsidiaries (including pursuant to the terms of ~~the ABL Facility Documentation, the UST Tranche A Facility Documentation, UST Tranche B Facility Documentation,~~ any Junior Financing Documentation, ~~any Permitted Additional Debt or any Permitted Refinancing of any thereof, in each case in a~~ any Prepetition Indebtedness) (and solely in the case of Indebtedness or debt securities incurred or issued prior to the Petition Date, to the extent the principal amount ~~in excess of~~thereof exceeds the Threshold Amount ~~and not otherwise required to be furnished to the Lenders pursuant to any clause of this Section 6.02, (ii) promptly after the execution thereof, copies of any amendments, modifications or waivers to the ABL Facility Documentation, the UST Tranche A Facility Documentation or UST Tranche B Facility Documentation, (iii) promptly after delivery thereof, copies of each "Approved CapEx Plan" and~~

~~"CapEx Plan" under (and as defined in) the UST Tranche B Credit Agreement, and (iv) promptly after the execution thereof, copies of the Treasury Equity Documents;~~);

(d)    together with the delivery of each Compliance Certificate pursuant to Section 6.02(a), (i) ~~in the case of annual Compliance Certificates only,~~ a report setting forth the information required by sections of the Prepetition Perfection Certificate describing the legal name and the jurisdiction of organization or formation of each Loan Party and the location of the chief executive office of each Loan Party or confirming that there has been no change in such information since the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date or the date of the last such report, (ii) a description of each ~~(x) event, condition or circumstance during the last fiscal quarter covered by such Compliance Certificate requiring a mandatory prepayment under Section 2.13(a) and (y)~~ Disposition of owned Real Property ~~on which sits a trucking terminal and adjacent/vacant land located nearby~~ and (iii) a list of each Subsidiary of the Borrower ~~that identifies each Subsidiary as a Loan Party or a non-Loan Party~~ as of the date of delivery of such Compliance Certificate;

~~(e)  promptly, such additional information regarding the business, legal, financial or corporate affairs of the Loan Parties or any of their respective Restricted Subsidiaries, including the business performance and tax and collateral due diligence of the Borrower and its Restricted Subsidiaries, as the Administrative Agent or any Lender through the Administrative Agent may from time to time reasonably request;~~

(e)    [reserved];

(f)    promptly after the written request by any Lender, all documentation and other information that such Lender reasonably requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT Act;

(g)    promptly after the receipt thereof by the Borrower or any of the ~~Restricted~~ Subsidiaries, a copy of any final "management letter" received by any such Person from its certified public accountants and the management's response thereto;

~~(h) promptly following any request therefor by the Administrative Agent or any Lender, copies of (i) any material documents described in Section 101(k) of ERISA that any Loan Party may request with respect to any Multiemployer Plan and (ii) any material notices described in Section 101(l) of ERISA that any Loan Party may request with respect to any Plan or Multiemployer Plan, provided that if any Loan Party has not requested such material documents or material notices from the administrator or sponsor of the applicable Plan or Multiemployer Plan, such Loan Party shall make a request for such material documents or material notices from the such administrator or sponsor at the earliest date on which such Loan Party determines that it is commercially reasonable to so request in order to avoid the occurrence of an event that could reasonably be expected to result in a material liability, and shall provide copies of such material documents and material notices promptly after receipt thereof;~~

(h)    the proposed service list in connection with any Order or relief sought by any Loan Party from the Canadian Court;

(i)    promptly after the furnishing thereof (and in no event later than three Business Days after the delivery thereof), a copy of each borrowing base certificate delivered under the Prepetition ABL Credit Agreement;

~~(j) commencing as of the Amendment No. 2 Effective Date and promptly after the written request by the Administrative Agent or any Lender, (i) such reasonably available information with respect to purchases of Rolling Stock exceeding $5,000,000 after the Amendment No. 2 Effective Date as the Administrative Agent or such Lender shall request, (ii) all invoices, receipts, agreements or other information detailing or otherwise relating to any Disposition by any Loan Party of Rolling Stock of such Loan Party, which Disposition or series of Dispositions, in each case, results in at least $250,000 of aggregate Net Proceeds during any 12 month period, and (iii) any "Request for Disbursement" or similar notice as defined in and delivered in connection with the UST Tranche A Facility and/or the UST Tranche B Facility;~~

(j)      at least two (2) days in advance of such filing or as promptly as practicable, (i) drafts of all pleadings, motions, applications, judicial information, financial information, notices, reports, orders and other documents intended to be filed by or on behalf of the Borrower or any other Loan Party with the Bankruptcy Court in the Chapter 11 Cases, or distributed by or on behalf of the Borrower or any other Loan Party to any official committee appointed in the Chapter 11 Cases and (ii) drafts of all filings, motions, pleadings, other papers or material notices intended to be filed by or on behalf of the Borrower, in its capacity as "foreign representative" of the Debtors, or any other Loan Party with the Canadian Court in the Canadian Recognition Proceedings, including all motions for all Canadian Orders;

(k)      ~~together with the delivery of each Compliance Certificate pursuant to Section 6.02(a), the Borrower shall promptly deliver to the Administrative Agent or such Lender a list of its Rolling Stock specifying whether such Rolling Stock is (A) First Lien Term Priority Collateral, (B) UST Tranche B Joint Collateral or (C) UST Tranche B Priority Collateral and shall provide such information as the Administrative Agent or any Lender may request to verify such designation of Rolling Stock;~~promptly after the occurrence thereof (and in no event later than one Business Day thereafter (or such longer period as agreed by the Lenders)), notice of any Loan Party entering into any new material agreement or incurring any new material obligation;

(l)      not later than 5:00 p.m. New York time on the third Business Day of the last full calendar week of each month (commencing with ~~July 26~~August 30, 2023) occurring after the ~~Amendment No. 3~~Postpetition B-2 Facility Closing Date (the "**Updated Budget Deadline**"), ~~the Borrower shall deliver to the Required Lenders~~ a supplement to, for the first such supplement, the Initial Budget, and for each supplement thereafter, the most-recently delivered Updated Budget (each such supplement which is approved in accordance with the terms of this clause (l), an "**Updated Budget**"), prepared by management of the Borrower in consultation with the Borrower's Operational Advisor covering the 13-week period that commences with the Saturday of the calendar week that includes such Updated Budget Deadline, consistent with the form and level of details set forth in the Initial Budget. Each Updated Budget shall be, in each case, subject to the written approval of the ~~Required~~ Lenders ~~(in their sole discretion)~~; provided that, if the ~~Required~~ Lenders shall have not provided written approval of any proposed budget supplement prior to 5:00 (New York City time) on the third Business Day after receipt thereof (the "**Budget Review Time**"), the ~~Required~~ Lenders shall be deemed to have accepted such proposed budget supplement; provided further that, (i) if the ~~Required~~ Lenders object in writing to any proposed budget supplement prior to the Budget Review Time, no proposed budget supplement covering the 13-week period covered by such rejected budget supplement shall become an Updated Budget until and unless the ~~Required~~ Lenders approve thereof in writing (in their sole and absolute discretion), and (ii) the prior Approved Budget shall remain in effect until such time as the ~~Required~~ Lenders so approve a revised budget supplement in accordance with the foregoing sub-clause (i). ~~Upon~~ As used herein, the "**Approved Budget**" shall mean (i) initially, the Initial Budget and (ii) thereafter, upon (and subject to) the approval (or deemed approval) of any Updated Budget by the ~~Required~~ Lenders

in ~~their sole discretion in~~ accordance with the foregoing procedures, such Updated Budget ~~shall constitute the "**Approved Budget**."~~.

(m)      ~~prior to~~not later than 5:00 p.m. New York time, on ~~the Wednesday of every week (commencing with Wednesday, July 12, 2023) the Borrower shall deliver to the Lenders~~each Business Day, a liquidity ~~report~~update (each, a "**Liquidity Report**") ~~certified by a Senior Financial Officer of the Borrower (A) certifying as to compliance with the covenant set forth in Section 7.11(a) at all times during the immediately preceding week and (B) setting forth,~~ which may be sent by email, specifying the aggregate amount of Liquidity ~~(as defined below)~~ of the Loan Parties and their Subsidiaries as of the ~~last Business Day of~~end of business of the immediately preceding ~~week and a comparison of the amount set forth on the prior delivered Liquidity Report~~Business Day;

(n)      not later than ~~5.00 p.m~~5:00 p.m. New York time on ~~the Wednesday of every week (commencing with Wednesday, July 12, 2023), the Borrower shall deliver to the Lenders the~~each Budget Variance Test Date, the following:

(i)      a Budget Variance Report for the most recently ended Budget Variance Test Period; and

(ii)      an updated budget prepared by management of the Borrower (~~and after the Operational Advisor Appointment Date,~~ in consultation with the Borrower's Operational Advisor) covering the 13-week period that commences with the calendar week that includes such Wednesday (provided that this clause (n)(ii) may be satisfied, for each week on which an Updated Budget Deadline occurs, by delivery of the Updated Budget);

~~(o) not later than 5.00 p.m. New York time on the tenth (10ᵗʰ) Business Day of each calendar month (commencing with July 17, 2023), the Borrower shall deliver to the Lenders a report in a form reasonably acceptable to the Required Lenders, that describes, in reasonable detail, the following key performance indicators with respect to the Borrower and its Subsidiaries for the calendar month most recently ended; provided that the HNRY Logistics business segment shall be excluded for all purposes of calculating such key performance indicators: (i) number of miles traveled by units of the Borrower and its Subsidiaries, (ii) revenue generating miles traveled by units of the Borrower and its Subsidiaries, (iii) number of miles of third-party transportation purchased by the Borrower and its Subsidiaries, (iv) average length of haul, (v) number of tons transported, (vi) number of gallons of fuel consumed, (vii) number of hours worked by hourly and other wage earning employees, (viii) revenue earned per hundredweight, excluding fuel surcharge and (ix) revenue earned per hundredweight, including the fuel surcharge.~~

(o)      not later than 5:00 p.m. New York time on the Friday of each calendar week, with information for the immediately preceding calendar week ending on a Friday (*provided*, that the Lenders confirm receipt of the following items as of Friday, August 25, 2023, and each Friday thereafter leading up to the Amendment No. 4 Effective Date as required by the DIP Term Sheet and confirm such items received prior to the Amendment No. 4 Effective Date were satisfactory to the Lenders), the following, in the case of clauses (i) and (iii) consistent with the form delivered prior to the Amendment No. 4 Effective Date:

(i)      a written report (each, a "**Disbursement Report**") of disbursements made during the period since delivery of the last Disbursement Report (or, for the first Disbursement Report delivered hereunder, since the Petition Date), including payroll payments made by department, payments to directors, and payments to professionals;

(ii)    a written report in reasonable detail (each, a "**Sale Report**") setting out updates in the monetization strategy of the Borrower, including an update on the status of the sale of each Real Property and other  assets of the Loan Parties contemplated by the Bidding Procedures Order, a description of  inbound interests and outbound solicitations, and updates on the status of diligence and bids since delivery of the last Sale Report (or, for the first Sale Report delivered hereunder, since the Petition Date); *provided* that the Borrower shall be entitled to restrict and/or redact commercially sensitive information to protect the competitive sales process as determined in its good faith judgment; provided, however, that if any Lender is or becomes a potential bidder, the Loan Parties shall not be required to provide information to such Lender regarding the sale process that is not available to all potential bidders; and

(iii)    a list of (A) current information with respect to all accounts receivable owed to the Loan Parties, including all collections, sales, reconciliations and payments in respect thereof, and (B) current information with respect to all accounts payable owed by the Loan Parties.

Notwithstanding anything to the contrary, neither the Borrower nor any ~~Restricted~~ Subsidiary will be required to disclose or permit the inspection ~~or discussion~~ of~~,~~ any document, information or other matter ~~(i) that~~ pursuant to this Section 6.02 (i) that is subject to attorney client or similar privilege or constitutes ~~trade secrets or proprietary information,~~attorney work product. or (ii) in respect of which disclosure to the Administrative Agent or any Lender (or their ~~representatives~~representative or contractors) is prohibited by law or any binding agreement (to the extent not created in contemplation of such Loan Party's obligations under this ~~Section 6.02), or (iii) that is subject to attorney client or similar privilege or constitutes attorney work product~~Agreement).

Section 6.03    ~~Section  6.03.~~—*Notices.*  Promptly after the Borrower or any Guarantor has obtained knowledge thereof, notify the Administrative Agent (which shall provide notice to the Lenders):

(a)    of the occurrence of any Default or an Event of Default (other than an Existing Default);

(b)    of any matter that has resulted or could reasonably be expected to result in a Material Adverse Effect;

(c)    of the filing or commencement of, or any written threat or written notice of intention of any person to file or commence any action, suit, litigation or proceeding, whether at law or in equity by or before any Governmental Authority, against the Borrower or any of its ~~Restricted~~ Subsidiaries that has a reasonable likelihood of adverse determination and such determination could reasonably be expected to result in a Material Adverse Effect and any material developments in any of the foregoing;

(d)    of any material developments in any material action, suit, litigation or proceeding, whether at law or in equity, commenced by the Borrower or any of its Subsidiaries; and

(e)    of the occurrence of any ERISA Event ~~following the Restatement Effective Date~~ that, alone or together with any other ERISA Events that have occurred ~~following the Restatement Effective Date~~, could reasonably be expected to result in a Material Adverse Effect.

(f)    Each notice pursuant to this Section shall be accompanied by a written statement of a Responsible Officer of the Borrower (x) that such notice is being delivered pursuant to Section 6.03(a), (b), (c), (d)  or (e) (as applicable) and (y) setting forth details of the occurrence referred to in Section 6.03(a), (b), (c), (d) or (e), as applicable, and stating what action the Borrower has taken and proposes to take with respect thereto.

Notwithstanding anything to the contrary, neither the Borrower nor any ~~Restricted~~ Subsidiary will be required to disclose or permit the inspection ~~or discussion~~ of~~,~~ any document, information or other matter ~~(i) that~~ pursuant to this Section 6.03 (i) that is subject to attorney client or similar privilege or constitutes ~~trade secrets or proprietary information,~~ attorney work product, or (ii) in respect of which disclosure to the Administrative Agent or any Lender (or their ~~representatives~~ representative or contractors) is prohibited by law or any binding agreement (to the extent not created in contemplation of such Loan Party's obligations under this ~~Section 6.03), or (iii) that is subject to attorney client or similar privilege or constitutes attorney work product~~ Agreement).

Section 6.04    ~~Section 6.04.~~   *Payment of Taxes.*  Promptly pay, discharge or otherwise satisfy as the same shall become due and payable in the normal conduct of its business, all its obligations and liabilities in respect of Taxes imposed upon it or upon its income or profits or in respect of its property, except, to the extent any such Tax is being contested in good faith and by appropriate proceedings for which appropriate reserves have been established in accordance with GAAP if such contest shall have the effect of suspending enforcement or collection of such Taxes or, where the failure to pay, discharge or otherwise satisfy the same would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 6.05    ~~Section 6.05.~~   *Preservation of Existence, Etc.*  (a) Preserve, renew and maintain in full force and effect its legal existence under the Laws of the jurisdiction of its organization except in a transaction permitted by Section 7.04 or Section 7.05 and (b) obtain, maintain, renew, extend and keep in full force and effect all rights, privileges (including its good standing where applicable in the relevant jurisdiction), permits, licenses and franchises necessary ~~or desirable~~ in the normal conduct of its business, except, in the case of clause (a) (other than with respect to the Borrower) or (b), to the extent that failure to do so would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 6.06    ~~Section 6.06.~~   *Maintenance of Properties.*  Except if the failure to do so could not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect, (a) maintain, preserve and protect all of its properties and equipment necessary in the operation of its business in satisfactory working order, repair and condition, ordinary wear and tear excepted and fire, casualty or condemnation excepted, and (b) make all necessary renewals, replacements, modifications, improvements, upgrades, extensions and additions thereof or thereto in accordance with prudent industry practice and in the normal conduct of its business.

Section 6.07    ~~Section 6.07.~~   *Maintenance of Insurance.*

(a)    *Generally.*    Maintain with financially sound and reputable insurance companies, insurance with respect to its properties and business consistent in all material respects with the insurance maintained by Borrower and/or such ~~Restricted~~ Subsidiaries (as applicable) as of the ~~Restatement Effective~~ Postpetition B-2 Facility Closing Date, which insurance shall insure against loss or damage of the kinds customarily insured against by Persons engaged in the same or similar business, and which insurance shall be of such types and in such amounts (after giving effect to any self-insurance reasonable and customary for similarly situated Persons engaged in the same or similar businesses as the Borrower and the ~~Restricted~~ Subsidiaries) as are customarily carried under similar circumstances by such other Persons in such similar or same locations.

(b)    *Requirements of Insurance.*    ~~(A) Use~~ Including as required by the Chapter 11 Orders, (A) use commercially reasonable efforts to cause, not later than 30 days after the ~~Restatement Effective~~ Postpetition B-2 Facility Closing Date (or such longer period as the ~~Required~~ Lenders may agree in writing in their reasonable discretion), all insurance required pursuant to Section 6.07(a) and (d)

(x) to provide (and to continue to provide at all times thereafter) that it shall not be canceled, materially modified or not renewed (i) by reason of nonpayment of premium upon not less than 10 days' prior written notice thereof by the insurer to the Administrative Agent and the Collateral Agent or (ii) for any other reason upon not less than 20 days' prior written notice thereof by the insurer to the Administrative Agent and the Collateral Agent and (y) ~~subject to the terms, conditions and provisions of the ABL Intercreditor Agreement~~ to name the Collateral Agent as additional insured on behalf of the Secured Parties (in the case of liability insurance) or loss payee (in the case of property insurance), as applicable (and to continue to so name the Collateral Agent at all times thereafter), (B) use commercially reasonable efforts to deliver, not later than 30 days after the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date (or such longer period as the Administrative Agent, with the consent of the ~~Required~~ Lenders, may agree in writing in its reasonable discretion), a copy of the policy (and to the extent any such policy is cancelled or not renewed, a renewal or replacement policy) or other evidence thereof to the Administrative Agent and the Collateral Agent, or insurance certificate with respect thereto, and (C) in the case of all property insurance policies located in the United States, not later than 30 days after the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date (or such longer period as the Administrative Agent may agree in writing in its reasonable discretion) cause such policies to be endorsed or otherwise amended to include a "standard" or "New York" lender's loss payable endorsement, in form and substance reasonably satisfactory to the Administrative Agent and the Collateral Agent, which endorsement shall provide that, from and after such date, if the insurance carrier shall have received written notice from the Administrative Agent or the Collateral Agent of the occurrence of an Event of Default (other than the Existing Defaults), the insurance carrier shall pay all proceeds otherwise payable to the Borrower or the Loan Parties under such policies directly to the Collateral Agent during the continuance of such Event of Default.

(c)      *Flood Insurance*.  Following the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date, the Borrower shall deliver to the Collateral Agent and the ~~Required~~ Lenders annual renewals of the flood insurance policy under the property policy or annual renewals of a force-placed flood insurance policy.

(d)      *Environmental Insurance.*  Maintain with financially sound and reputable insurance companies, a premises pollution  liability portfolio insurance and storage tank third-party liability, corrective and clean-up insurance policy with respect to its properties and business for an initial three year policy period commencing on the ~~date hereof~~Amendment No. 4 Effective Date and with limits not less than, and with terms and conditions comparable to, the limits, terms and conditions in such policies that are in effect as of the date hereof, and subject to annual renewals after such initial three year policy period, which insurance shall be reasonably satisfactory to the ~~Required~~ Lenders.  The Borrower shall purchase such insurance required under this Section 6.07(d) within 30 days following the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date and provide evidence thereof to the Administrative Agent.

(e)      Notify the Administrative Agent and the Collateral Agent (for distribution to the Lenders) promptly whenever any separate insurance concurrent in form or contributing in the event of material loss with that required to be maintained under this Section 6.07 is taken out by the Borrower or another Loan Party; and promptly deliver to the Administrative Agent and the Collateral Agent a duplicate original copy of such policy or policies, or an insurance certificate with respect thereto once available.

Section 6.08      ~~Section 6.08.~~  *Compliance with Laws.*  ~~Comply~~Subject to the terms of the Chapter 11 Orders and the Canadian Orders, comply with the requirements of all Laws and all orders, writs, injunctions and decrees applicable to it or to its business or property, except if the failure to

comply therewith would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 6.09    ~~Section 6.09.~~ *Books and Records.*  Maintain proper books of record and account, in which entries are made that are full, true and correct in all material respects and are in conformity with GAAP (except as noted therein) and which reflect all material financial transactions and matters involving the assets and business of the Borrower or a ~~Restricted~~ Subsidiary, as the case may be.

Section 6.10    ~~Section  6.10.~~ *Inspection Rights.*  Permit representatives and independent contractors of the Administrative Agent or any Lender to visit and inspect any of its properties, to examine its corporate, financial and operating records, and make copies thereof or abstracts therefrom, and to discuss its affairs, finances and accounts with its directors, officers, and independent public accountants (subject to such accountants' customary policies and procedures), all at the reasonable expense of the Borrower and subject to *bona fide* confidentiality obligations, limitations imposed by law and attorney-client privilege and at such reasonable times during normal business hours and as often as may be reasonably desired, upon reasonable advance notice to the Borrower~~; *provided* that, excluding any such visits and inspections during the continuation of an Event of Default, (x) only the Administrative Agent may exercise rights of the Administrative Agent and the Lenders under this Section 6.10 and (y) the Administrative Agent shall not exercise such rights more often than one time during any calendar year; *provided further* that when an Event of Default exists, the Administrative Agent or any Lender (or any of their respective representatives or independent contractors) may do any of the foregoing~~ and at the expense of the Borrower at any time during normal business hours ~~and upon reasonable advance notice~~; *provided* that the Borrower shall be entitled to restrict and/or redact information in order to protect the competitive sales process as determined in its good faith judgment; provided, further, if any Lender is or becomes a potential bidder, the Loan Parties shall not be required to provide information to such Lender regarding the sale process that is not available to all potential bidders.  The Administrative Agent and the Lenders shall give the Borrower the opportunity to participate in any discussions with the Borrower's independent public accountants.

Section 6.11    ~~Section 6.11.~~ *Additional Collateral; Additional Guarantors.~~  Subject to the terms, conditions and provisions of each Intercreditor Agreement, at the Borrower's expense, take all reasonable actions which are necessary or reasonably requested by the Administrative Agent or the Collateral Agent to ensure that the Collateral and Guarantee Requirement continues to be satisfied, including:~~*

~~(a) Upon (x) the formation or acquisition of any new direct or indirect Subsidiary (in each case, other than an Excluded Subsidiary) by the Borrower or (y) any Subsidiary that is an Excluded Subsidiary ceasing to be an Excluded Subsidiary:~~

~~(i) within 60 days after such formation, acquisition, designation or other event, or such longer period as the Administrative Agent, with the consent of the Required Lenders (not to be unreasonably withheld, delayed, conditioned or denied), may agree in writing in its reasonable discretion:~~

~~(A)~~ .  At the Borrower's expense, take all reasonable actions which are necessary or reasonably requested by the Administrative Agent or the Collateral Agent to ensure that the Collateral and Guarantee Requirement continues to be satisfied, including: upon any Subsidiary that constitutes an Excluded Subsidiary on the Postpetition B-2 Facility Closing Date ceasing to be an Excluded Subsidiary, within ten (10) Business Days thereafter, or such longer period as the administrative agent, with the consent of the Lenders (in their sole discretion), may agree, causing ~~each~~ such Subsidiary to duly execute and deliver to the Administrative Agent or the Collateral Agent (as appropriate) joinders to this Agreement as

Guarantors, ~~a supplement to the~~ Security Agreement ~~Supplements, Intellectual Property Security Agreements~~ in the form attached thereto, a counterpart of the Intercompany Note and other security agreements and documents ~~(including, (I) with respect to any Foreign Subsidiary, local law security agreements and documents in each case consistent with market practice, and (II) with respect to such Mortgages, the documents listed in Section 6.13(b)), as reasonably requested by the Required Lenders and in form and substance reasonably satisfactory to the Required Lenders, Administrative Agent and the Borrower (consistent with the Mortgages (if any), Security Agreement, Intellectual Property Security Agreements and other security agreements in effect on the Restatement Effective Date)~~, in each case granting Liens required by the Collateral and Guarantee Requirement~~;~~, and to take such action (including the filing of UCC or PPSA financing statements, as applicable), in each case, as may be reasonably requested by the Collateral Agent or the Lenders from time to time to maintain the validity, perfection, enforceability and priority of the security interest and Liens of the Collateral Agent in the Collateral, or to enable the Collateral Agent to protect, exercise or enforce its rights hereunder, under the DIP Order (and, in the case of Canadian Collateral, the Canadian Orders) and in the Collateral.  The Agents and the Lenders agree that, following the Petition Date, no additional Mortgages or supplements to the Security Agreement shall be delivered or required.

~~(B)     causing each such Subsidiary (and the parent of each such  Subsidiary that is a Loan Party) to deliver to the Collateral Agent any and all certificates representing Equity Interests (to the extent certificated) and intercompany notes (to the extent certificated) that are required to be pledged pursuant to the Collateral and Guarantee Requirement, accompanied by undated stock powers or other appropriate instruments of transfer executed in blank;~~

~~(C)     taking and causing each such Restricted Subsidiary and each direct or indirect parent of such Restricted Subsidiary to take whatever action (including the recording of Mortgages, the filing of UCC financing statements and the delivery of stock and membership interest certificates) as may be necessary in the reasonable opinion of the Collateral Agent to vest in the Collateral Agent (or in any representative of the Collateral Agent designated by it) valid and perfected Liens to the extent required by the Collateral and Guarantee Requirement, and to otherwise comply with the requirements of the Collateral and Guarantee Requirement;~~

~~(ii) if reasonably requested by the Required Lenders, Administrative Agent or the Collateral Agent, within 45 days after such request (or such longer period as the Administrative Agent may agree in writing in its reasonable discretion), delivering to the Administrative Agent a signed copy of an opinion, addressed to the Administrative Agent and the Lenders, of counsel for the Loan Parties as to such matters set forth in this Section 6.11(a) as the Administrative Agent and the Required Lenders may reasonably request; and~~

~~(iii) promptly after the reasonable request therefor by~~ the Administrative Agent or Collateral Agent, ~~delivering to the Collateral Agent with respect to each Material Real Property, any existing surveys, title reports, abstracts or environmental assessment reports, to the extent available and in the possession or control of the Borrower; provided, however, that there shall be no obligation to deliver to the Collateral Agent any existing environmental assessment report whose disclosure to the Collateral Agent would require the consent of a Person other than the Borrower or one of its Subsidiaries, and where, despite the commercially reasonable efforts of the Borrower to obtain such consent, such consent cannot be obtained.~~

~~(b) if reasonably requested by the Required Lenders, Administrative Agent or the Collateral Agent, within 60 days after such request (or such longer period as the Administrative Agent may agree in writing in its reasonable discretion), delivering to the Collateral Agent any other items necessary from time to time to satisfy the Collateral and Guarantee Requirement with respect to the validity, perfection,~~

~~existence and priority of security interests with respect to property of any Guarantor acquired after the Restatement Effective Date and subject to the Collateral and Guarantee Requirement, but not specifically covered by the preceding clauses (i), (ii) or (iii) or clause (e) below.~~

~~(e) not later than 120 days after (i) the acquisition by any Loan Party of Material Real Property or (ii) the release of any first lien security interest on any Real Property securing the obligations under the Contribution Deferral Agreement, in each case, that is required to be provided as Collateral pursuant to the Collateral and Guarantee Requirement (or such longer period as the Administrative Agent, with the consent of the Required Lenders, may agree in writing in its reasonable discretion), which Material Real Property would not be automatically subject to another Lien pursuant to pre-existing Collateral Documents, causing such property to be subject to a Lien in favor of the Collateral Agent for the benefit of the Secured Parties and taking, or causing the relevant Loan Party to take, such actions as shall be necessary or reasonably requested by the Required Lenders, Administrative Agent or the Collateral Agent to grant and perfect or record such Lien, in each case to the extent required by, and subject to the limitations and exceptions of, the Collateral and Guarantee Requirement and to otherwise comply with the requirements of the Collateral and Guarantee Requirement.~~

Section 6.12   ~~Section 6.12.~~ *Compliance with Environmental Laws.* ~~Except~~Subject to the terms of the Chapter 11 Orders, except, in each case, to the extent that the failure to do so could not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect: (a) comply, and take all reasonable actions to cause all lessees and other Persons operating or occupying its properties to comply, with all applicable Environmental Laws and Environmental Permits; (b) obtain and renew all Environmental Permits necessary for its operations and properties; and, (c) in each case to the extent the Loan Parties or the ~~Restricted~~ Subsidiaries are required to do so by Environmental Laws, conduct any investigation, remedial or other corrective action necessary to address Hazardous Materials at any property or facility in accordance with applicable Environmental Laws.

Section 6.13   ~~Section 6.13.~~ *Further Assurances and Post-Closing Conditions; Amendment No. 3 Conditions Subsequent.*

~~(a) Within the time periods after the Restatement Effective Date set forth in Schedule 6.13(a), deliver each Collateral Document set forth on Schedule 6.13(a), duly executed by each Loan Party thereto, together with all documents and instruments required to perfect the security interest of the Collateral Agent in the Collateral free of any other pledges, security interests or mortgages, except Liens expressly permitted hereunder, to the extent required pursuant to the Collateral and Guarantee Requirement.~~

(a)   [Reserved].

(b)   Promptly upon reasonable request by the ~~Required~~ Lenders, Administrative Agent or the Collateral Agent (i) correct any material defect or error that may be discovered in the execution, acknowledgment, filing or recordation of any Collateral Document or other document or instrument relating to any Collateral (including, without limitation, any defect or error related to certificates of title for vehicles and other rolling stock) as to which the Borrower reasonably agrees is a defect or error, ~~and~~ (ii) ~~subject to the terms~~notwithstanding that all of the security interests described herein with respect to the Collateral shall be effective and perfected by the DIP Order (and, in the case of Canadian Collateral, the DIP Order and the applicable Canadian Orders) and without the necessity of the execution of mortgages, security agreements, pledge agreements or other agreements, take all action that may be necessary or desirable to maintain the validity, perfection, enforceability and priority of the security interest and Liens of the Collateral ~~Documents,~~Agent in the Collateral, or to enable the Collateral Agent to protect, exercise or enforce its rights hereunder, under the DIP Order and in the Collateral and (iii) do,

execute, acknowledge, deliver, record, re-record, file, re-file, register and re-register any and all such further acts, deeds, certificates, assurances and other instruments as the ~~Required~~ Lenders, the Administrative Agent or the Collateral Agent may reasonably request from time to time in order to carry out more effectively the purposes of the Loan Documents and to cause the Collateral and Guarantee Requirement to be and remain satisfied. If the ~~Required~~ Lenders, the Administrative Agent or the Collateral Agent reasonably determines that it is required by applicable Law to have appraisals prepared in respect of any Material Real Property of any Loan Party subject to a Mortgage, the Borrower shall cooperate with the ~~Required~~ Lenders, Administrative Agent and/or Collateral Agent, as applicable, in obtaining such appraisals and shall pay all reasonable out-of-pocket costs and expenses relating thereto.

~~(c)  In connection with Amendment No. 3, each of the Loan Parties shall satisfy the requirements set forth below prior to the dates set forth below:~~

(c)    ~~(i)  on or prior to July 12, 2023 (or such later date as may be agreed in writing by the Required Lenders in their sole and absolute discretion (which may be via e-mail)) (the "**Operational Advisor Appointment Date**"), the Borrower shall appoint an Operational Advisor and deliver to the Required Lenders a duly executed copy of the engagement letter with respect to such Operational Advisor, which letter shall be in form and substance reasonably satisfactory to the Required Lenders. From and after the Operational Advisor Appointment Date, the Borrower shall continue~~At all times engage, at the cost of the Borrower, the Operational Advisor for financial planning and analysis services, including assistance in preparation of cash flow forecasting and budget variance reporting under this Agreement pursuant to an engagement letter in form and substance reasonably satisfactory to the Lenders (it being agreed that the engagement letter in effect on the Postpetition B-2 Facility Closing Date is reasonably satisfactory); provided that, if for any reason the Operational Advisor becomes unavailable or unable to perform its duties under this Agreement, the Borrower shall have ~~seven~~five (~~7~~5) days (or such longer timeframe as the ~~Required~~ Lenders may agree in its sole discretion) to replace the Operational Advisor in accordance with the terms of this Agreement~~;~~.

~~(ii)  on or prior to July 21, 2023 (or such later date as may be agreed in writing by the Required Lenders in their sole and absolute discretion (which may be via e-mail)), the Loan Parties shall have delivered to the Administrative Agent and the Required Lenders a Perfection Certificate, dated as of the Amendment No. 3 Closing Date, duly executed by a Responsible Officer of the Borrower, which shall include or be accompanied by, with respect to any Rolling Stock of any Loan Party, such information as the Required Lenders may reasonably request, including the type/make of such Rolling Stock and the state in which such Rolling Stock is registered; and~~

~~(iii)  on or prior to two (2) Business Days prior to consummation of the Compton Sale (and in any event, not later than the second (2nd) Business Day after the Amendment No. 3 Closing Date (or such shorter timeframe as agreed in writing by the Required Lenders in their sole and absolute discretion (which may be via e-mail)), the Loan Parties shall have provided to the Required Lenders reasonably satisfactory evidence of delivery by USF Reddaway Inc. to Chicago Title Insurance Company of an irrevocable letter of direction or settlement statement, as applicable, instructing it to wire all Net Proceeds of the Compton Sale to a deposit account designated by the Administrative Agent, for application to the prepayment of the Term Loans, which irrevocable direction letter or settlement statement, as applicable, shall be in form and substance satisfactory to the Required Lenders and the Administrative Agent (in their respective sole discretions).~~

Section 6.14    ~~Section 6.14.~~ *Lender Calls*; Access; Diligence Requests.

(a)    —The Borrower shall (i) cause, and shall cause the other Loan Parties to, make the members of its senior management and its professional advisors (including the Operational Advisor (after the Operational Advisor Appointment Date) to be) available for an update call with the Lenders each calls at least once per calendar week and (ii) provide for an update call, each month, unless the Lenders request a lesser frequency) with the Lenders and senior management of the Borrower with appropriate expertise, in each case of the clauses (i) and (ii) the Lenders' respective professional advisors, at times reasonably acceptable to the Required Lenders and, in the case of clause (i), the Operational Advisor and, in the case of clause (ii) the Borrower, to discuss the then current Chapter 11 Cases and the Canadian Recognition Proceedings, the then-current Approved Budget, the Budget Variance Reports, the Liquidity Reports, Sale Reports, other reporting delivered pursuant to Section 6.02 hereunder, union matters, the quantum of any obligations secured by the Canadian Priority Charges, the status of any monetization strategies being pursued by the Borrower and its Subsidiaries, including an update on the status of the sale of each Specified Amendment No. 3 Real Property, pursuant to the Bidding Procedures Order, and any other matters (including business, operational and due diligence matters) reasonably requested by the Lenders.

(b)    The Borrower shall, and shall cause the other Loan Parties to, make the members of its senior management and its professional advisors (including the Operational Advisor) available from time to time, at reasonable times, and during normal business hours, upon the reasonable request of the Lenders to provide, discuss, inform and/or confer on (i) the matters described in clause (a) above, strategic planning, cash and Liquidity management, operational and restructuring activities and other matters reasonably related thereto and (ii) if reasonably necessary, any reasonable diligence requests, which may include access to books and records (including historical information) and real property assets of the Borrower and its Subsidiaries.

(c)    The Borrower shall, and shall cause the members of its senior management and its professional advisors (including the Operational Advisor) to promptly provide such additional information regarding any of the matters described in clauses (a) and (b) above, and the business, legal, financial or corporate affairs of the Loan Parties or any of their respective Subsidiaries, including the business performance and tax and collateral due diligence of the Borrower and its Subsidiaries, as the Administrative Agent or any Lender may from time to time reasonably request.

Notwithstanding anything to the contrary, neither the Borrower nor any Subsidiary will be required to disclose or discuss any matter pursuant to this Section 6.14 (i) that is subject to attorney client or similar privilege or constitutes trade secrets or proprietary information, attorney work product, or (ii) in respect of which disclosure to the Administrative Agent or any Lender (or their representatives representative or contractors) is prohibited by law or any binding agreement (to the extent not created in contemplation of such Loan Party's obligations under this Section 6.14), or (iii) that is subject to attorney client or similar privilege or constitutes attorney work product. Agreement). Additionally, notwithstanding anything to the contrary in this Section 6.14, the Borrower shall be entitled to restrict and/or redact information in order to protect the competitive sales process as determined in its good faith judgment; provided, further, if any Lender is or becomes a potential bidder, the Loan Parties shall not be required to provide information to such Lender regarding the sale process that is not available to all potential bidders.

Section 6.15.    *Maintenance of Ratings.*  In the case of the Borrower, use commercially reasonable efforts to maintain a public corporate rating from S&P and a public corporate family rating from Moody's, in each case in respect of the Borrower.

Section 6.15    ~~Section  6.16.~~   *Use of Proceeds and Collateral*.  ~~The  Borrower  shall  use  the proceeds of the Term Loans borrowed on the Restatement Effective Date to fund the Transactions on the Restatement Effective Date, to pay Transaction Expenses and for general corporate purposes.~~

.

(a)    The proceeds of the New Money Postpetition Term Loans shall be applied in accordance with the Approved Budget (subject to Permitted Variances).  No part of the proceeds of any Loan will be used, whether directly or indirectly in any manner that causes such Loan or the application of such proceeds to violate the Regulations of the Board, including Regulation T, Regulation U and Regulation X, or any other regulation thereof, or to violate the Exchange Act;

(b)    No part of the proceeds of any Loan, the Debtors' Cash Collateral, the Collateral or the Carve-Out will be used, whether directly or indirectly:

(i)    for any purpose that is prohibited under the Bankruptcy Code, the DIP Order or the Canadian Orders and not in accordance with the Approved Budget (subject to Permitted Variances);

(ii)    to finance or reimburse for expenses incurred or to be incurred, in both instances, in any way (A) any adversary action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the interests of any or all of the Secured Parties, the Junior DIP Secured Parties, the Prepetition Secured Parties, or their respective rights and remedies under the Loan Documents, the Junior DIP Loan Documents, the DIP Order, or the Prepetition Facility Documentation; or (B) any other action which with the giving of notice or passing of time would result in an Event of Default hereunder or under the Junior DIP Loan Documents;

(iii)    other than in respect to UST Adequate Protection Payments or Prepetition ABL Secured Parties as set forth in the DIP Order, for the payment of fees, expenses, interest or principal or any other payment with respect to the Prepetition ABL Facility, Prepetition UST Tranche A Credit Agreement or Prepetition UST Tranche B Credit Agreement;

(iv)    other than for payments for director fees included in and permitted by the Approved Budget, subject to the Debtors' ability to make UST Adequate Protection Payments pursuant to the UST Adequate Protection Order, to make any payment to any board member or shareholder of any Loan Party in their capacity as such; or

(v)    except as permitted by the Approved Budget (subject to Permitted Variances) to make any payment in settlement of any claim, action or proceeding without the prior written consent of the Lenders and the Junior DIP Lenders. For the avoidance of doubt, no accrued vacation payment obligations on account of employees terminated prior to the Petition Date shall be paid until all Prepetition Indebtedness has been indefeasibly paid in full in cash.

Nothing herein shall in any way prejudice or prevent the Administrative Agent or the Lenders from objecting, for any reason, to any requests, motions, or applications made in the Bankruptcy Court or the Canadian Court, including any application of final allowances of compensation for services rendered or reimbursement of expenses incurred under Sections 105(a), 330 or 331 of the Bankruptcy Code, by any party in interest (and each such order shall preserve the Administrative Agent's and the Lenders' right to review and object to any such requests, motions or applications).

**Section 6.16** *Chapter 11 Cases and Canadian Recognition Proceedings.* ~~2020 Financial Plan~~

~~. From and after the Amendment No. 1 Effective Date, the Borrower shall use its commercially reasonable efforts to achieve the aggregate amount of cost savings and other operational initiatives set forth in the updated consolidated budget for the fiscal year ending December 31, 2020 delivered to the Required Lenders on March 28, 2020.~~

~~Section 6.18. *Board Observer Rights.* The Loan Parties shall allow one representative designated by, from time to time, in writing by the Required Lenders to attend and participate solely as a non-voting observer in all meetings of the board of directors (or other similar body) and any committee of the board of directors (or other similar body) of the Loan Parties (each such meeting, a "**Board Meeting**"; and such representative, a "**Board Observer**"); *provided*, that the obligation of the Loan Parties to permit a Board Observer as set forth in this Section 6.18 shall terminate automatically if the Lenders as of the Amendment No. 3 Closing Date no longer constitute Required Lenders. Each Loan Party shall, or shall cause its Subsidiary to, as the case may be, (i) give the Board Observer notice of all Board Meetings at the same time and in the same manner as such notice is furnished to the members of the board of directors (or other similar body) or committee of the board of directors (or other similar body) of such Loan Party or such subsidiary, (ii) subject to the terms of this Section 6.18, provide to the Board Observer all written notices, documents and information (including proposed written consents) furnished to the members of the board of directors (or other similar body) or committee of the board of directors (or other similar body) of such Loan Party or such subsidiary at the same time and in the same manner furnished to such members, (iii) permit the Board Observer to participate by telephone in each Board Meeting, (iv) provide the Board Observer copies of the minutes of all Board Meetings at the time such minutes are furnished to the members of the board of directors (or other similar body) or committee of the board of directors (or other similar body) of such Loan Party or such subsidiary, (v) cause regularly scheduled Board Meetings of the Borrower to be held at least once per calendar quarter and (vi) provide the Board Observer with copies of all written consents duly passed by the board of directors (or other similar body) or committee of the board of directors (or other similar body) of such Loan Party or such subsidiary. Borrower shall reimburse the Board Observer for all reasonable and documented out-of-pocket expenses incurred in connection with the Board Observer's attendance at the Board Meetings. Each Loan Party shall, and shall cause its Subsidiaries to, indemnify the Board Observer solely in its capacity as the Board Observer (*provided* that, notwithstanding the foregoing, such indemnity shall not be available to the extent that any losses, damages, claims, liabilities and expenses resulted from (x) the gross negligence, bad faith or willful misconduct of the Board Observer or of any affiliate, director, officer, employee, counsel, agent or attorney in-fact of such Board Observer, as determined by the final non-appealable judgment of a court of competent jurisdiction, (y) any dispute solely among the Board Observer, the Lenders or of any affiliate, director, officer, employee, counsel, agent or attorney-in-fact thereof arising as a result of the Board Observer Rights set forth in this Section 6.18 other than any claim arising out of any act or omission of the Borrower or any of its Affiliates or (z) the material breach by the Board Observer or of any affiliate, director, officer, employee, counsel, agent or attorney-in-fact of such Board Observer of its obligations under this Section 6.18, as determined by the final non-appealable judgment of a court of competent jurisdiction. The Board Observer, the minutes, the written consents and all non-public information delivered to the Board Observer pursuant to this Section 6.18 and the proceedings of the board of directors (or other similar body) and any committee of the board of directors (or other similar body) of the Loan Parties, shall be subject to the confidentiality provisions of Section 10.16, except that the Board Observer may disclose information and materials to the Lenders and their respective directors, officers, managers, employees, legal counsel and financial advisors on a "need to know" basis solely in connection with the transactions contemplated hereby (it being understood that the Persons to whom such disclosure is made will be informed of the confidential nature of such Information and instructed to keep such Information confidential). Notwithstanding the forgoing, the Borrower shall~~

be entitled to exclude the Board Observer from any portion of any meeting or from receiving any portion of the materials distributed to the members of the board of directors (or similar governing body) to the extent if and to the extent the Borrower reasonably believes in good faith in the exercise of its reasonable business judgment that the Board Observer's presence at or participation in such meeting (or any portion thereof) or receipt of such materials may (i) affect the attorney/client or similar privilege of any Loan Party and their legal advisors, (ii) adversely affect the Borrower or any of its Subsidiaries under applicable Law, (iii) conflict with confidentiality obligations of Borrower or any of its Subsidiaries to third parties, including Governmental Authorities (so long as such restriction exists or has been negotiated in good faith by the Borrower and not for the purpose of excluding or limiting the Board Observer) or (iv) give rise to a conflict of interest, including as to any discussion and/or materials relating to (I) an actual or potential transaction with a Lender or any Affiliate thereof or other matter in which any Lender or any Affiliate thereof may be involved (including as to discussions or materials regarding this Agreement and the other Loan) or (II) the strategy, negotiating positions or similar matters relating to the relationship of Borrower or any of its subsidiaries or Affiliates, on the one hand, with the Lenders or any of their Affiliates.

Section 6.19.    *Amendment No. 3 Real Property Dispositions*.    The Loan Parties shall use commercially reasonable efforts, and shall cause their respective Subsidiaries to use commercially reasonable efforts (in each case, in the exercise of such commercially reasonable efforts, taking into account the timing of the consummation of the Borrower's consolidation plan), to sell each Specified Amendment No. 3 Real Property to a bona fide third party for fair market value and for gross consideration at least equal to the amount identified to or by the Lenders, as applicable, as of the Amendment No. 3 Effective Date (it being understood and agreed that 100% of the Net Proceeds of each such shall be applied to the prepayment of the Term Loans in accordance with Section 2.13(a)(ii) without giving effect to any thresholds or reinvestment rights).

(a)    Except where such failure is cured within two (2) Business Days of the earlier of the Borrower having knowledge thereof and any written notice by the Administrative Agent (at the direction of the Lenders), comply in all material respects with each Chapter 11 Order and the orders of the Canadian Court in the Canadian Recognition Proceedings.

(b)    Promptly provide to and discuss with the Administrative Agent and each Lender any and all information and developments in connection with (i) any proposed conveyance, sale, assignment, transfer or other disposition of all or any part of the assets of the Loan Parties or their Subsidiaries or (ii) the sale or other disposition or issuance of any Equity Interests of the Loan Parties, provided that the Borrower shall be entitled to restrict and/or redact commercially sensitive information to protect the competitive sales process as determined in its good faith judgment; provided, however, that if any Lender is or becomes a potential bidder, the Loan Parties shall not be required to provide information to such Lender regarding the sale process that is not available to all potential bidders.

(c)    [Reserved].

(d)    Timely pay all material obligations arising after the Petition Date in accordance with their terms after giving effect to any applicable grace and cure periods (including all reasonable and documented fees and out of pocket expenses of estate professionals when due in accordance with the interim compensation procedures approved in the Chapter 11 Cases) and timely pay and discharge promptly all material taxes, assessments and governmental charges or levies imposed upon any Loan Party or upon its income or profits or in respect of its property arising after the Petition Date, as well as all material lawful claims for labor, materials and supplies or otherwise arising after the Petition Date which, if unpaid, would become a Lien or charge upon such properties or any part thereof, before the same shall become in default; provided that the Borrower and each of its Subsidiaries shall not be

required to pay and discharge or to cause to be paid and discharged any such obligation, tax, assessment, charge, levy or claim so long as (i) the validity or amount thereof shall be contested in good faith by appropriate proceedings (if the Borrower or its Subsidiaries shall have set aside on their books adequate reserves therefor) or (ii) non-payment and discharge thereof is permitted or required under the Bankruptcy Code, the CCAA, or order of the Bankruptcy Court or order of the Canadian Court.

# ARTICLE 7
## NEGATIVE COVENANTS

So long as any Lender shall have any Commitment hereunder or any Loan or other Obligation (other than contingent indemnification or reimbursement obligations) hereunder which is accrued or payable shall remain unpaid or unsatisfied, then from and after the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date:

Section 7.01 ~~Section 7.01.~~ *Liens.* The Borrower shall not, nor shall it permit any ~~Restricted~~ Subsidiary to, directly or indirectly, create, incur, assume or suffer to exist any Lien upon any of its property, assets or revenues, whether now owned or hereafter acquired, other than the following:

(a) Liens (i) created pursuant to any Loan Document, (ii) securing any Prepetition Indebtedness and (iii) subject to the terms and conditions of the DIP Order and the Canadian Orders, securing any Junior DIP Obligations;

(b) Liens existing ~~or contemplated on the Restatement Effective~~immediately prior to the Petition Date and listed on Schedule 7.01(b); *provided* that~~, (i)~~ the Lien does not extend to any additional property other than any replacements of such property or assets and additions and accessions thereto, after-acquired property subjected to a Lien securing Indebtedness and other obligations incurred prior to such time and which Indebtedness and other obligations are permitted hereunder that require, pursuant to their terms at such time, a pledge of after-acquired property (it being understood that such requirement shall not be permitted to apply to any property to which such requirement would not have applied but for such acquisition, or asset of the Borrower or any ~~Restricted~~ Subsidiary and the proceeds and the products thereof and customary security deposits in respect thereof and in the case of multiple financings of equipment provided by any lender, other equipment financed by such lender)~~, and (ii) such Lien does not secure any obligation (including unused commitments) other than those it secured on the Restatement Effective Date or, to the extent constituting Indebtedness, any Permitted Refinancing of the Indebtedness secured thereby on the Restatement Effective Date and any extensions, renewals, restructurings, refinancings and replacements thereof;~~;

(c) Liens for unpaid utilities, taxes, assessments or governmental charges that are (i) not overdue for a period of more than thirty (30) days and are not otherwise delinquent, securing obligations in an amount not to exceed $500,000, or that are being contested in good faith and by appropriate actions, if adequate reserves with respect thereto are maintained on the books of the applicable Person in accordance with GAAP or (ii) otherwise not required to be paid pursuant to Section 6.04;

(d) ~~Statutory~~statutory, lease or common law Liens of landlords, sublandlords, carriers, warehousemen, mechanics, materialmen, repairmen, construction contractors or other like Liens, or other customary Liens (other than in respect of Indebtedness) in favor of landlords, in each case arising in the ordinary course of business that secure amounts not overdue for a period of more than thirty (30) days or if more than thirty (30) days overdue, that either secure obligations in an amount not to exceed $~~1,000,000 or~~100,000, are being contested in good faith and by appropriate actions, if adequate reserves

with respect thereto are maintained on the books of the applicable Person in accordance with GAAP or stayed by the Chapter 11 Cases or the Canadian Recognition Proceedings;

(e)    (i) Liens in the ordinary course of business in connection with workers' compensation, unemployment insurance and other social security legislation (other than any Lien imposed pursuant to Section 430(k) of the Code or Section 303(k) of ERISA or a violation of Section 436 of the Code) and (ii) Liens in the ordinary course of business securing liability for reimbursement or indemnification obligations of (including obligations in respect of letters of credit or bank guarantees for the benefit of) insurance carriers providing property, casualty or liability insurance to the Borrower or any of its Restricted Subsidiaries;, *provided* that this Section 7.01(e) shall not permit liens securing letters of credit;

(f)    Liens to secure the performance of bids, trade contracts, governmental contracts and leases (in the case of each of the foregoing, other than for Indebtedness for borrowed money), statutory obligations, surety, stay, customs and appeal bonds, performance bonds and other obligations of a like nature (including those to secure health, safety and environmental obligations), in each case incurred in the ordinary course of business; *provided* that this Section 7.01(f) shall not permit liens securing letters of credit;

(g)    (i) easements, rights-of-way, restrictions (including zoning restrictions and other land use regulations), encroachments, protrusions, reservations and other similar encumbrances and minor title defects affecting Real Property that do not in the aggregate materially interfere with the ordinary conduct of the business of the Borrower and the Restricted Subsidiaries, taken as a whole and (ii) ground leases in respect of Real Property on which facilities owned or leased by the Borrower or any of the Restricted Subsidiaries are located; *provided* in the case of this clause (ii) that such ground leases do not confer rights on the counter-party(ies) thereto superior to those of the Collateral Agent in the relevant property;

(h)    Liens securing judgments not constituting an Event of Default under Section 8.01(h);

(i)    leases, licenses, subleases or sublicenses granted to others in the ordinary course of business which do not (i) interfere in any material respect with the business of the Borrower and the Restricted Subsidiaries, taken as a whole, or (ii) secure any Indebtedness;

(j)    Liens (i) in favor of customs and revenue authorities arising as a matter of Law to secure payment of customs duties in connection with the importation of goods in the ordinary course of business or (ii) on specific items of inventory or other goods and proceeds thereof of any Person securing such Person's obligations in respect of bankers' acceptances or letters of credit issued or created for the account of such person to facilitate the purchase, shipment or storage of such inventory or such other goods in the ordinary course of business;

(k)    Liens (i) of a collection bank arising under Section 4-210 of the Uniform Commercial Code on items in the course of collection and (ii) arising in the ordinary course of business in favor of a banking or other financial institution arising as a matter of Law or under customary general terms and conditions encumbering deposits or other funds maintained with a financial institution (including the right of set-off) and that are within the general parameters customary in the banking industry or arising pursuant to the general terms and conditions of such banking institutions;

(l)    Liens (i) on cash earnest money deposits or other cash advances in favor of the seller of any property to be acquired in an Investment permitted pursuant to Sections 7.02(e), (h), (l), (p), (r) or (v), in each case to be applied against the purchase price for such Investment, and (ii) consisting of an agreement to Dispose of any property in a Disposition permitted under Section 7.05, in each case, solely

to the extent such Investment or Disposition, as the case may be, would have been permitted on the date of the creation of such Lien;

(m)    Liens (i) in favor of the Borrower or a ~~Restricted~~ Subsidiary on assets of a ~~Restricted~~ Subsidiary that is not a Loan Party securing Indebtedness permitted under Section 7.03 of the Junior DIP Credit Agreement and (ii) in favor of the Borrower or any Guarantor;

(n)    any interest or title (and all encumbrances and other matters affecting such interest or title) of a lessor, sublessor, licensor or sublicensor under leases, subleases, licenses or sublicenses entered into by the Borrower or any of the ~~Restricted~~ Subsidiaries in the ordinary course of business; *provided*, that no such lease or sublease shall constitute a Capitalized Lease;

(o)    junior Liens ~~deemed to exist in connection with Investments in repurchase agreements permitted under Section 7.02(a)~~ relating to any Multiemployer Plan or Pension Plan;

(p)    [reserved];

(q)    [reserved];

(r)    [reserved];

(s)    [reserved]

~~(p) Liens encumbering reasonable customary initial deposits and margin deposits and similar Liens attaching to commodity accounts or other brokerage accounts incurred in the ordinary course of business and not for speculative purposes;~~

~~(q) Liens (including any interest or title (and all encumbrances and other matters affecting such interest or title) of a lessor or sublessor under Capitalized Leases) securing Indebtedness constituting Capital Leases and purchase money security interests permitted under Section 7.03(e) or Section 7.03(ff); provided that (i) such Liens are created within 270 days of the acquisition, construction, repair, lease or improvement, as applicable, of the property subject to such Liens, (ii) such Liens do not at any time encumber property (except for replacements, additions and accessions to such property) other than the property financed by such Indebtedness and the proceeds and products thereof and customary security deposits, and (iii) such Liens do not at any time extend to or cover any assets (except for replacements, additions and accessions to such assets) other than the assets subject to Capitalized Leases and the proceeds and products thereof and customary security deposits; provided that individual financings of equipment provided by one lender may be cross collateralized to other financings of equipment provided by such lender;~~

~~(r) Liens on property (i) of any Foreign Subsidiary that is not a Loan Party and (ii) that does not constitute Collateral, which Liens secure Indebtedness of the applicable Foreign Subsidiary that is not a Loan Party permitted under Section 7.03;~~

~~(s) Liens existing on property at the time of its acquisition or existing on the property of any Person at the time such Person becomes a Restricted Subsidiary, in each case after the Restatement Effective Date; provided that (i) such Lien was not created in contemplation of such acquisition or such Person becoming a Restricted Subsidiary, (ii) such Lien does not extend to or cover any other assets or property (other than the proceeds or products thereof and other than after acquired property subjected to a Lien securing Indebtedness and other obligations incurred prior to such time and which Indebtedness and other obligations are permitted hereunder that require, pursuant to their terms at such time, a pledge~~

~~of after-acquired property, it being understood that such requirement shall not be permitted to apply to any property to which such requirement would not have applied but for such acquisition), and (iii) the Indebtedness secured thereby is permitted under~~ ~~Section 7.03~~:

(t)    ~~Liens arising from precautionary Uniform Commercial Code financing statements or similar filings~~[reserved];

(u)    Liens on insurance policies and the proceeds thereof securing the financing of the premiums with respect thereto in the ordinary course of business;

(v)    [reserved];

(w)    [reserved];

(x)    [reserved];

~~(v) Liens on the Collateral and, with respect to clauses (B) and (C) below, Treasury Only Collateral, securing Indebtedness permitted under Section 7.03(o) or other obligations otherwise secured pursuant to or in connection with the documents governing such Indebtedness; *provided* that (A) in the case of Indebtedness permitted pursuant to Section 7.03(o)(x) and all other obligations otherwise secured pursuant to or in connection with the documents governing such Indebtedness, the representative in respect thereof shall have entered into the ABL Intercreditor Agreement as the ABL Agent, on behalf of the holders of such Indebtedness, and such Indebtedness and other obligations shall at all times be subject to the ABL Intercreditor Agreement as "ABL Obligations"; (B) in the case of Indebtedness and all other obligations permitted pursuant to Section 7.03(o)(y) or other obligations otherwise secured pursuant to or in connection with the documents governing such Indebtedness, the representative in respect thereof shall have entered into the ABL Intercreditor Agreement as the UST Tranche A Term Agent, on behalf of the holders of such Indebtedness, and such Indebtedness and other obligations shall at all times be subject to the ABL Intercreditor Agreement as "UST Tranche A Obligations"; and (C) in the case of Indebtedness or other obligations permitted pursuant to Section 7.03(o)(z) and all other obligations otherwise secured pursuant to or in connection with the documents governing such Indebtedness, the representative in respect thereof shall have entered into the ABL Intercreditor Agreement as the UST Tranche B Term Agent, on behalf of the holders of such Indebtedness, and such Indebtedness and other obligations shall at all times be subject to the ABL Intercreditor Agreement as "UST Tranche B Obligations";~~

~~(w) Liens on the Collateral securing Credit Agreement Refinancing Indebtedness that is Permitted Junior Priority Additional Debt and any Permitted Refinancing of the foregoing; *provided*, that any such Liens are secured on a junior lien basis to the Liens securing the Obligations pursuant to, and subject at all times to, the Junior Lien Intercreditor Agreement;~~

~~(x) Liens on the Equity Interests of any joint venture entity of the Borrower consisting of a transfer restriction, purchase option, call or similar right of a third party joint venture partner;~~

(y)    [reserved];

(z)    [reserved];

(aa)    [reserved];

(bb)    Liens ~~(i) arising out of conditional sale, title retention, consignment or similar arrangements for the sale of goods or (ii) encumbering deposits made to secure obligations arising from~~

~~contractual or warranty requirements~~expressly permitted to be granted pursuant to (i) the First Day Orders or Second Day Orders or (ii) pursuant to the DIP Order;

(cc)   ~~Utility~~utility and similar deposits in the ordinary course of business; and

~~(dd) [reserved];~~

~~(ee) Liens related to Sale and Leaseback Transactions in an aggregate amount of $25,000,000; *provided that*, as of and after the Amendment No. 3 Effective Date, this clause (ee) shall be unavailable for use under this Agreement and the dollar amount specified in this clause (ee) shall be $0; and~~

(dd)   ~~(ff)~~ other Liens with respect to property or assets securing obligations other than for borrowed money of the Borrower or any ~~Restricted~~ Subsidiary in an aggregate principal amount ~~outstanding at any time~~ not to exceed ~~$5,000,000; *provided* that such Liens do not secure Indebtedness for borrowed money and are not incurred in respect of any pension obligations of the Borrower or any of its Restricted Subsidiaries.~~, together with all Investments made pursuant to Section 7.02(p) and Indebtedness incurred pursuant to Section 7.03(cc) of the Junior DIP Credit Agreement, $350,000 in the aggregate during the term of this Agreement; and

(ee)   the CCAA Charges.

Section 7.02   ~~Section 7.02.~~  *Investments.*  The Borrower shall not, nor shall it permit any ~~Restricted~~ Subsidiary to, directly or indirectly, make or hold any Investments, except:

(a)   Investments by the Borrower or any of the ~~Restricted~~ Subsidiaries in cash or Cash Equivalents in accordance with the Approved Budget (subject to Permitted Variances);

~~(b) loans or advances to officers, directors and employees of any Loan Party or any of its Restricted Subsidiaries (i) for reasonable and customary business-related travel, entertainment, relocation and analogous ordinary business purposes, in each case, consistent with past practice (including pursuant to use of any credit cards, credit card processing services, debit cards, stored value cards, purchase cards (including so-called "procurement cards" or "P-cards") or other similar cash management services), (ii) in connection with such Person's purchase of Equity Interests of the Borrower and (iii) for any other corporate purposes not described in the foregoing clauses (i) and (ii); *provided* that the aggregate principal amount of loans and advances outstanding at any time under this Section 7.02(b)(ii) and (iii) shall not exceed $2,000,000;~~

(b)   [reserved];

(c)   Investments (i) by ~~the Borrower or any Restricted Subsidiary in any Loan Party (or any newly formed wholly owned Restricted Subsidiary that is not an Excluded Subsidiary and is to become a Loan Party in accordance with Section 6.11), (ii) by any Restricted Subsidiary that is not a Loan Party in any other Restricted Subsidiary that is not a Loan Party and (iii~~and among Loan Parties and (ii) by any Loan Party in a ~~Restricted~~ Subsidiary that is not a Loan Party; *provided*~~,~~ that the aggregate amount of Investments ~~at any time outstanding~~ under this clause (~~iii~~ii) shall not exceed ~~as of and after the Amendment No. 3 Effective Date, $5,000,000~~$350,000 during the term of this Agreement;

(d)   Investments consisting of extensions of credit in the nature of accounts receivable or notes receivable arising from the grant of trade credit or other credits to suppliers in the ordinary course of business;

~~(e) Investments (i) existing or contemplated on the Restatement Effective Date and set forth on Schedule 7.02(e) (including unused commitments) and any modification, replacement, renewal or extension thereof and (ii) existing on the Restatement Effective Date by the Borrower or any other Restricted Subsidiary in any Restricted Subsidiary and any modification, replacement, renewal or extension thereof; *provided*, that in the case of clause (i) and clause (ii) the amount of the original Investment is not increased except by the terms of such original Investment as set forth on Schedule 7.02(e) or as otherwise permitted by this Section 7.02 (and in such case made in reliance on the other paragraph of this Section 7.02 so permitting such modification, replacement, renewal or extension thereof);~~

(e)    Investments existing on the Petition Date and set forth on Schedule 7.02(e);

(f)    Investments in Swap Contracts ~~permitted under Section 7.03;~~ as in effect immediately prior to the Petition Date.

(g)    [reserved];

(h)    [reserved];

~~(g) promissory notes and other non-cash consideration received in connection with Dispositions permitted by Section 7.05;~~

~~(h) any acquisition by the Borrower or any Restricted Subsidiary of all or substantially all the assets of, or all the Equity Interests (other than directors' qualifying shares, shares issued to foreign nationals as required by applicable law or any options for Equity Interests that cannot, as a matter of law, be cancelled, redeemed or otherwise extinguished without the express agreement of the holder thereof at or prior to acquisition) in, a Person or division, business unit or line of business of a Person (or any subsequent investment made in a Person, division, business unit or line of business previously acquired in a Permitted Acquisition), in each case in a single transaction or series of related transactions, if (i) no Event of Default shall have occurred and be continuing or would result therefrom at the time of entering in the agreement to consummate such acquisition; (ii) all transactions related thereto shall be consummated in all material respects in accordance with applicable Laws; (iii) as of the most recently ended fiscal quarter for which financial statements of the Borrower and the target are available, (A) the Borrower and the Restricted Subsidiaries shall be in compliance, on a Pro Forma Basis, with the covenant set forth in Section 7.10 and (B) the Total Leverage Ratio, on a Pro Forma Basis, for the Test Period most recently ended shall not be greater than 3.00:1.00, in each case, after giving effect to such acquisition or investment and any related transactions; (iv) any acquired or newly formed Restricted Subsidiary shall not be liable for any Indebtedness except for Indebtedness otherwise permitted by Section 7.03; (v) to the extent required by the Collateral and Guarantee Requirement, (A) the property, assets and businesses acquired in such purchase or other acquisition shall constitute Collateral and (B) any such newly created or acquired Subsidiary (other than an Excluded Subsidiary) shall become a Guarantor, in each case, to the extent required by and in accordance with Section 6.11; (vi) the businesses acquired in such purchase or other acquisition shall be in compliance with Section 7.07; and (vii) the Borrower shall have delivered to the Administrative Agent a certificate of a Responsible Officer of the Borrower certifying that the conditions set forth in the preceding clauses (i) through (v) have been satisfied (any such acquisition, a **"Permitted Acquisition"**); *provided* that the aggregate amount of Investments made by Loan Parties pursuant to this Section 7.02(h) in assets that are not (or do not become) owned by a Loan Party or in Equity Interests in Persons that do not become Loan Parties upon consummation of such Permitted Acquisition shall not exceed $15,000,000 at any time outstanding; *provided, further*, that notwithstanding anything to the contrary, as of and after the Amendment No. 3 Effective Date, this clause (h) shall be unavailable under this Agreement and no Permitted Acquisitions~~

~~may be made (and Permitted Acquisitions shall be disregarded in any reference in any other term or provision herein);~~

(i)        Investments in the ordinary course of business consisting of UCC Article 3 endorsements for collection or deposit and UCC Article 4 customary trade arrangements with customers consistent with past practices;

(j)        Investments (including debt obligations and Equity Interests) received in connection with the bankruptcy or reorganization of suppliers and customers or in settlement of delinquent obligations of, or other disputes with, customers and suppliers;

(k)        advances of payroll payments to employees (other than senior management) in the ordinary course of business;

(l)        [reserved];

(m)        [reserved];

(n)        [reserved];

~~(l) Investments to the extent that payment for such Investments is made with Equity Interests (other than Disqualified Equity Interests) of the Borrower or the Net Proceeds received from the issuance thereof;~~

~~(m) Investments of a Restricted Subsidiary acquired after the Restatement Effective Date pursuant to a Permitted Acquisition or of a corporation merged or amalgamated or consolidated into the Borrower or merged, amalgamated or consolidated with a Restricted Subsidiary, in each case in accordance with this Section 7.02 and Section 7.04 after the Restatement Effective Date, to the extent that such Investments were not made in contemplation of or in connection with such acquisition, merger, amalgamation or consolidation and were in existence on the date of such acquisition, merger or consolidation;~~

~~(n) Investments made by any Restricted Subsidiary that is not a Loan Party to the extent such Investments are financed with the proceeds received by such Restricted Subsidiary from an Investment in such Restricted Subsidiary made pursuant to Section 7.02(e)(iii) or Section 7.02(p);~~

(o)        Guarantees by the Borrower or any ~~Restricted~~ Subsidiary of operating leases (other than Capitalized Leases) or of other obligations that do not constitute Indebtedness, in each case, which leases or other obligations are entered into by the Borrower or any Guarantor in the ordinary course of business;

~~(p) other Investments (not including Permitted Acquisitions) in an aggregate amount outstanding pursuant to this clause (p) at any time not to exceed (x) together with (I) the aggregate amount of Restricted Payments made under sub-clause (x) of Section 7.06(e) and (II) the aggregate amount of prepayments, redemptions, purchases, defeasances and other payments made pursuant to sub-clause (x) of Section 7.13(a)(vi), $5,000,000 plus, (y) the portion, if any, of the Cumulative Credit on the date of such election that the Borrower elects to apply to this subclause (y); provided, that with respect to any Investment made pursuant to this Section 7.02(p), (A) no Event of Default shall have occurred and be continuing or would result from the making of any such Investment and (B) with respect to Investments made in reliance on this subclause (y) (i) other than Investments made in Restricted Subsidiaries organized under the laws of Canada or Mexico or, in each case, any political subdivision thereof, on a Pro Forma Basis after giving effect thereto the Total Leverage Ratio is equal to or less than 2.00:1.00 or~~

(ii) with respect to Investments in Restricted Subsidiaries organized under the laws of Canada or Mexico or, in each case, any political subdivision thereof, on a Pro Forma Basis after giving effect thereto the Total Leverage Ratio is equal to or less than 4.00:1.00;

(p)    other Investments in an aggregate amount not to exceed, together with all Liens incurred pursuant to Section 7.01(dd) and Indebtedness incurred pursuant to Section 7.03(cc) of the Junior DIP Credit Agreement, $350,000 in the aggregate during the term of this Agreement;

(q)    (i) make lease, utility and other similar deposits or any other advance or deposit permitted by this Agreement, in the ordinary course of business or (ii) make prepayments and deposits to suppliers in the ordinary course of business and in accordance with the Approved Budget (subject to Permitted Variances);

(r)    to the extent constituting Investments, capital expenditures otherwise permitted under this Agreement [reserved];

(s)    Investments in deposit accounts or securities accounts Deposit Accounts or Securities Accounts opened in the ordinary course of business;

(t)    repurchase, retirement or repayment of any Indebtedness to the extent not otherwise prohibited by this Agreement, including, without limitation, acquisitions of Term Loans pursuant to Section 10.04 [reserved];

(u)    [reserved]; and

(v)    Investments consisting of or resulting from (i) Indebtedness permitted under Section 7.03 of the Junior DIP Credit Agreement, (ii) Liens permitted under Section 7.01, (iii) Restricted Payments permitted under Section 7.06, (iv) Dispositions permitted by Section 7.05 and (v) fundamental changes permitted by Section 7.04; and

(w)    Investments solely to the extent such Investments reflect an increase in the value of Investments otherwise permitted under this Section 7.02; expressly permitted to be made pursuant to (i) the First Day Orders or Second Day Orders, or (ii) the DIP Order.

(x) loans and advances to Borrower in lieu of, and not in excess of the amount of (after giving effect to any other such loans or advances or Restricted Payments in respect thereof), Restricted Payments to the extent permitted to be made in accordance with Section 7.06 (other than Section 7.06(i)); and

(y) Guarantee obligations of the Borrower or any Restricted Subsidiary in respect of letters of support, guarantees or similar obligations issued, made or incurred for the benefit of any Restricted Subsidiary of the Borrower to the extent required by law or in connection with any statutory filing or the delivery of audit opinions performed in jurisdictions other than within the United States.

Section 7.03    Section 7.03.  *Indebtedness* [Reserved].

.  The Borrower shall not, nor shall it permit any Restricted Subsidiary to, directly or indirectly, create, incur, assume or suffer to exist any Indebtedness, except:

(a) Indebtedness of any Loan Party under the Loan Documents;

(b) (i) Indebtedness outstanding on the Restatement Effective Date and listed on Schedule 7.03(b) and any Permitted Refinancing thereof and (ii) intercompany Indebtedness outstanding on the Restatement Effective Date and any Permitted Refinancing thereof; *provided*, that (x) any intercompany Indebtedness shall be evidenced by an Intercompany Note and (y) any intercompany Indebtedness of any Loan Party owed to any Person that is not a Loan Party shall be unsecured and subordinated to the Obligations pursuant to the subordination provisions reasonably acceptable to the Required Lenders;

(c) Guarantees by the Borrower and any Restricted Subsidiary in respect of Indebtedness of the Borrower or any Restricted Subsidiary of the Borrower otherwise permitted hereunder; *provided* that (i) no Guarantee by any Restricted Subsidiary of any ABL Facility Indebtedness, any UST Tranche A Facility Indebtedness, any UST Tranche B Facility Indebtedness, any Junior Financing, any Permitted Additional Debt or any Permitted Refinancing of any of the foregoing shall be permitted unless such guaranteeing party shall have also provided a Guarantee of the Obligations on the terms set forth herein (*provided further* that, clause (i) shall not apply in the case of a Guarantee by any Foreign Subsidiary that is not a Loan Party of any Indebtedness of another Foreign Subsidiary that is not a Loan Party), and (ii) if the Indebtedness being Guaranteed is Junior Financing that is, or is required by this Agreement to be, Subordinated Indebtedness, such Guarantee shall be subordinated to the Guarantee of the Obligations on terms (taken as a whole) at least as favorable to the Lenders as those contained in the subordination of such Junior Financing;

(d) Indebtedness (other than Indebtedness permitted under Section 7.03(b)) of the Borrower or any Restricted Subsidiary owing to any Loan Party or any other Restricted Subsidiary (or consisting of a Guaranty on behalf of any Loan Party or any other Restricted Subsidiary) to the extent constituting an Investment permitted by Section 7.02 (other than clause (v) thereof); *provided* that (x) all such Indebtedness shall be evidenced by an Intercompany Note and (y) all such Indebtedness of any Loan Party owed to any Person that is not a Loan Party shall be unsecured and subordinated to the Obligations pursuant to the subordination provisions reasonably acceptable to the Required Lenders;

(e) Attributable Indebtedness and other Indebtedness of the Borrower or any Restricted Subsidiary (including Capitalized Leases) financing an acquisition, construction, repair, replacement, lease or improvement of a fixed or capital asset incurred prior to or within 270 days after the acquisition, lease or improvement of the applicable asset in an aggregate amount (together with any Permitted Refinancings thereof) not to exceed $25,000,000 at any time outstanding;

(f) Indebtedness in respect of Swap Contracts designed to hedge against the Borrower's or any Restricted Subsidiary's exposure to interest rates, foreign exchange rates or commodities (including fuel) pricing risks incurred not for speculative purposes;

(g) Indebtedness of the Borrower or any Restricted Subsidiary assumed in connection with any Permitted Acquisition or other Investment permitted hereunder, *provided*, that (w) such Indebtedness is not incurred in contemplation of such Permitted Acquisition or Investment, and any Permitted Refinancing thereof, (x) such Indebtedness and all Indebtedness resulting from a Permitted Refinancing thereof is unsecured (except for Liens permitted by Section 7.01(s)), and (y) both immediately prior and after giving effect thereto, (1) no Event of Default shall exist or result therefrom, and (2) immediately after giving effect to the related Permitted Acquisition or Investment and the assumption of Indebtedness, the Total Leverage Ratio, on a Pro Forma Basis, for the Test Period most recently ended shall not be greater than 3.00:1.00;

(h) Indebtedness representing deferred compensation to employees of the Borrower or any of its Restricted Subsidiaries incurred in the ordinary course of business and other obligations and liabilities arising under employee benefit plans in the ordinary course of business;

(i) Indebtedness consisting of unsecured promissory notes issued by the Borrower or any of its Restricted Subsidiaries to current or former officers, managers, consultants, directors and employees, their respective estates, spouses or former spouses to finance the purchase or redemption of Equity Interests of the Borrower permitted by Section 7.06;

(j) Indebtedness incurred by the Borrower or any of its Restricted Subsidiaries in a Permitted Acquisition, any other Investment expressly permitted hereunder or any Disposition expressly permitted hereunder, in each case, constituting indemnification obligations or obligations in respect of purchase price (including earnouts and holdbacks) or other similar adjustments;

(k) Indebtedness in respect of treasury, depository, credit card, debit card and cash management services or automated clearinghouse transfer of funds, overdraft or any similar services incurred in the ordinary course of business or any similar cash management services relating or secured pursuant to the ABL Facility and any hedges related to the ABL Facility;

(l) Indebtedness consisting of the financing of insurance premiums or take-or-pay obligations contained in supply arrangements that do not constitute Guarantees, in each case, in the ordinary course of business;

(m) Indebtedness incurred by the Borrower or any of its Restricted Subsidiaries in respect of letters of credit, bank guarantees, bankers' acceptances or similar instruments issued or created in the ordinary course of business and not in connection with the borrowing of money, including in respect of workers compensation claims, health, disability or other employee benefits or property, casualty or liability insurance or self insurance or other Indebtedness incurred in the ordinary course of business with respect to reimbursement-type obligations regarding workers compensation claims;

(n) obligations in respect of performance, bid, appeal and surety bonds and performance and completion guarantees and similar obligations provided by the Borrower or any of its Restricted Subsidiaries or obligations in respect of letters of credit, bank guarantees or similar instruments related thereto, in each case in the ordinary course of business or consistent with past practice and not in connection with the borrowing of money or Swap Contracts;

(o) (x) (i) ABL Facility Indebtedness and (ii) any Permitted Refinancing thereof, in each case, of the Loan Parties; *provided* that the aggregate principal amount outstanding at any time of all such Indebtedness under clauses (i) and (ii) of this Section 7.03(o)(x) shall not exceed $500,000,000, (y) (i) UST Tranche A Facility Indebtedness and (ii) any Permitted Refinancing thereof, in each case, of the Loan Parties; and (z) (i) UST Tranche B Facility Indebtedness and (ii) any Permitted Refinancing thereof, in each case, of the Loan Parties, *provided* that the aggregate principal amount outstanding (excluding interest paid-in-kind or otherwise capitalized to principal) at any time of all such Indebtedness under clauses (i) and (ii) of this Section 7.03(o)(z) shall not exceed $400,000,000; *provided* that the aggregate principal amount outstanding (excluding interest paid-in-kind or otherwise capitalized to principal) at any time of all such Indebtedness under Section 7.03(o)(y) and Section 7.03(o)(z), on a combined basis, shall not exceed $700,000,000;

(p) [reserved]

(q)  (i) Credit Agreement Refinancing Indebtedness (other than any Credit Agreement Refinancing Indebtedness incurred pursuant to a Refinancing Amendment) and (ii) any Permitted Refinancing thereof;

(r) [reserved];

(s) [reserved];

(t) all premiums (if any), interest (including post-petition interest and interest paid in kind), fees, expenses, charges and additional or contingent interest on obligations described in clauses (a) through (q) above and (u) through (ff) below;

(u) [reserved];

(v) [reserved];

(w) [reserved];

(x)  Indebtedness in respect of taxes, assessments or governmental charges to the extent that payment thereof shall not at the time be required to be made hereunder;

(y) [reserved];

(z) [reserved];

(aa)  Indebtedness in respect of Sale and Leaseback Transactions in an amount not to exceed $25,000,000 at any time outstanding; *provided* that as of and after the Amendment No. 3 Effective Date, this clause (aa) shall be unavailable for use under this Agreement and the dollar amount specified in this clause (aa) shall be $0;

(bb) Indebtedness in respect of Investments not prohibited by Section 7.02 (other than clause (v) thereof);

(cc) [reserved];

(dd) Indebtedness incurred in respect of credit cards, credit card processing services, debit cards, stored value cards, purchase cards (including so called "procurement cards" or "P cards") or other similar cash management services, in each case, incurred in the ordinary course of business consistent with past practice;

(ee) [reserved];

(ff)  other Indebtedness of the Borrower or any of its Restricted Subsidiaries, in an aggregate principal amount at any time outstanding not to exceed $30,000,000; *provided* that the aggregate principal amount of Indebtedness of Restricted Subsidiaries that are not Guarantors permitted under this Section 7.03(ff) at any time outstanding shall not exceed $5,000,000; and

(gg)  obligations, charges or liabilities incurred in the ordinary course of business (and not representing Indebtedness for borrowed money) outstanding as of the Amendment No. 2 Effective Date and identified to the Lenders in the schedule delivered to the Lenders on July 5, 2020.

Section 7.04    ~~Section 7.04.~~ *Fundamental Changes.* The Borrower shall not, nor shall it permit any ~~Restricted~~ Subsidiary to, directly or indirectly, merge, dissolve, liquidate, consolidate with or into another Person, or Dispose of (whether in one transaction or in a series of related transactions) all or substantially all of its assets (whether now owned or hereafter acquired) to or in favor of any Person, except ~~that~~ (i) with the prior written consent of the Lenders (ii) as permitted by Section 7.05 and (iii) pursuant to (A) the First Day Orders or Second Day Orders, (B) the Bidding Procedures Order, (C) the DIP Order or (D) the Canadian Orders.

~~(a)  any Restricted Subsidiary may merge, amalgamate or consolidate with (i) the Borrower (including a merger, the purpose of which is to reorganize the Borrower into a new jurisdiction); *provided* that (w) no Event of Default exists or would result therefrom, (x) the Borrower shall be the continuing or surviving Person, (y) such transaction does not result in the Borrower ceasing to be organized under the laws of the United States, any State thereof or the District of Columbia and (z) such transaction does not have an adverse effect in any material respect on the perfection or priority of the Liens granted under the Collateral Documents or (ii) one or more other Restricted Subsidiaries; *provided*, in the case of this clause (ii), that when such transaction involves a Loan Party, a Loan Party shall be the continuing or surviving Person except to the extent otherwise constituting an Investment permitted by Section 7.02;~~

~~(b)  (i) any Restricted Subsidiary that is not a Loan Party may merge, amalgamate or consolidate with or into any other Restricted Subsidiary that is not a Loan Party and (ii) any Restricted Subsidiary may liquidate or dissolve or change its legal form if the Borrower determines in good faith that such action is in the best interest of the Borrower and the Restricted Subsidiaries and is not disadvantageous to the Lenders in any material respect (it being understood that (other than a transaction constituting a permitted Investment under Section 7.02 or involving an Excluded Subsidiary) in the case of any liquidation or dissolution of a Guarantor, such Guarantor shall transfer its assets to a Loan Party, and in the case of any change in legal form, a Restricted Subsidiary that is a Guarantor will remain a Guarantor and such transaction shall not have an adverse effect on the perfection or priority of the Liens granted under the Collateral Documents);~~

~~(c)  any Restricted Subsidiary may Dispose of all or substantially all of its assets (upon voluntary liquidation or otherwise) to the Borrower or to another Restricted Subsidiary; *provided* that if the transferor in such a transaction is a Guarantor, then (i) the transferee must be a Guarantor or the Borrower or (ii) to the extent constituting an Investment, such Investment must be a permitted Investment in or Indebtedness of a Restricted Subsidiary which is not a Loan Party in accordance with Sections 7.02 and 7.03, respectively;~~

~~(d)  so long as no Event of Default exists or would result therefrom, the Borrower may merge with any other Person; *provided* that (i) the Borrower shall be the continuing or surviving corporation or (ii) if the Person formed by or surviving any such merger or consolidation is not the Borrower (any such Person, the "**Successor Borrower**"), (A) the Successor Borrower shall be an entity organized or existing under the Laws of the United States, any state thereof or the District of Columbia and such transaction shall not have an adverse effect in any material respect on the perfection or priority of the Liens granted under the Collateral Documents, (B) the Successor Borrower shall expressly assume all the obligations of the Borrower under this Agreement and the other Loan Documents to which the Borrower is a party pursuant to a supplement hereto or thereto in form reasonably satisfactory to the Administrative Agent and the Borrower, (C) each Guarantor, unless it is the other party to such merger or consolidation, shall have confirmed that its Guarantee shall apply to the Successor Borrower's obligations under the Loan Documents, (D) each Guarantor, unless it is the other party to such merger or consolidation, shall have by a supplement to the Security Agreement and other applicable Collateral Documents confirmed that the collateral granted by it to secure its obligations thereunder shall apply to secure its and the Successor~~

Borrower's obligations under the Loan Documents, (E) if reasonably requested by the Collateral Agent, each mortgagor of a Mortgaged Property, unless it is the other party to such merger or consolidation, shall have by an amendment to or restatement of the applicable Mortgage (or other instrument reasonably satisfactory to the Collateral Agent) confirmed that the collateral granted by it to secure its obligations thereunder shall apply to secure its and the Successor Borrower's obligations under the Loan Documents, and (F) the Borrower shall have delivered to the Administrative Agent an officer's certificate and an opinion, each stating that such merger or consolidation and such supplement to this Agreement or any Collateral Document comply with this Agreement; *provided further*, that if the foregoing are satisfied (or waived), the Successor Borrower will succeed to, and be substituted for, the Borrower under this Agreement; *provided further* that the Borrower agrees to provide any documentation and other information about the Successor Borrower as shall have been reasonably requested in writing by any Lender through the Administrative Agent that is required by regulatory authorities or under applicable "know your customer" and anti-money laundering rules and regulations, including without limitation the USA Patriot Act;

(e) any Restricted Subsidiary may merge, amalgamate or consolidate with any other Person (other than the Borrower) in order to effect an Investment permitted pursuant to Section 7.02; *provided* that either (x) the continuing or surviving Person shall be a Restricted Subsidiary, which together with each of its Restricted Subsidiaries, shall have complied with the requirements of Section 6.11 to the extent required pursuant to the Collateral and Guarantee Requirement or (y) the transaction shall otherwise constitute a permitted Investment;

(f) any Restricted Subsidiary may effect a merger, dissolution, liquidation or consolidation, the purpose of which is to effect a Disposition permitted pursuant to Section 7.05; and

(g) any Restricted Subsidiary may Dispose of all or substantially all of its assets (upon voluntary liquidation or otherwise) to the extent that such Disposition (or series of related Dispositions) is not prohibited under Section 7.05.

Section 7.05    ~~Section 7.05.~~   *Dispositions.*   The Borrower shall not, nor shall it permit any ~~Restricted~~ Subsidiary to, directly or indirectly, make any Disposition (including, without limitation, abandoning any assets) in respect of B-2 Priority Collateral, except:

(a) ~~(i) Dispositions (including abandonment) of obsolete or worn out property, whether now owned or hereafter acquired, in the ordinary course of business, (ii) Dispositions (including abandonment) in the ordinary course of business of surplus property or property no longer used or useful in the conduct of the business of the Borrower or any of the Restricted Subsidiaries, (iii) Dispositions of immaterial assets (considered in the aggregate) in the ordinary course of business and (iv) Dispositions to landlords of improvements made to leased real property pursuant to customary terms of leases entered into in the ordinary course of business;~~

(a)    Dispositions of cash and Cash Equivalents in accordance with the Approved Budget (subject to Permitted Variances);

(b)    Dispositions of property to the extent ~~that~~ (i) such ~~property or an interest therein is exchanged for credit against the purchase price of similar replacement property, (ii) the proceeds of such Disposition are promptly applied to the purchase price of such replacement property, or (iii) such property is swapped in exchange for services or other assets of comparable or greater value or usefulness to the business of the Borrower and the Subsidiaries as  whole, as determined in good faith by the management of the Borrower;~~ Disposition is for no less than the fair market value of such property, (ii) except pursuant to a credit bid by the Lenders (or the Administrative Agent on behalf of the Lenders),

100% of the proceeds thereof are in the form of cash or Cash Equivalents, (iii) [reserved] and (iv) such Disposition is in accordance with the Bidding Procedures Order;

(c)      Dispositions of property to and among Loan Parties or from a non-Loan Party to a Loan Party; *provided* that any transfer of any property by the Borrower or any ~~Restricted~~Domestic Subsidiary~~;~~ ~~*provided* that if the transferor of such property is a Loan Party (i) the transferee thereof must be a Loan Party and if such property constitutes Collateral, it shall continue to constitute Collateral after such Disposition or (ii) if such transaction constitutes an Investment, such transaction is permitted under Section 7.02;~~ of the Borrower to a Foreign Subsidiary of the Borrower after the Petition Date shall require the prior written consent of the Lenders;

~~(d) Dispositions of cash and Cash Equivalents;~~

~~(e) leases, subleases, licenses, sublicenses (including the provision of software under an open source license) or any abandonment thereof, in each case (i) in the ordinary course of business and (ii) without interfering in any material respect with the business of the Borrower or any of its Restricted Subsidiaries;~~

~~(f) transfers of property subject to Casualty Events upon the receipt (where practical) of the Net Proceeds of such Casualty Event;~~

(d)      ~~(g)~~ Dispositions (including write-offs, discounts, and compromises ~~in clause (b) above~~) or discounts without recourse of accounts receivable and related assets in connection with the compromise or collection thereof in the ordinary course of business;

~~(h) [reserved];~~

~~(i) [reserved];~~

~~(j) Dispositions of Investments in joint ventures or other non-wholly owned Subsidiaries to the extent required by, or made pursuant to, customary buy/sell arrangements between the joint venture parties set forth in joint venture arrangements and similar binding arrangements;~~

(e)      ~~(k)~~ the unwinding of any Swap Contract or cash management agreement, in each case, in effect on the Petition Date;

~~(l) Dispositions of property not otherwise permitted under this Section 7.05; *provided* that (i) at the time of such Disposition (other than any such Disposition made pursuant to a legally binding commitment entered into at a time when no Event of Default exists), no Event of Default shall exist or would result from such Disposition, (ii) any prepayment required to be made in connection with the receipt of Net Proceeds in respect of such Disposition pursuant to Section 2.13 shall be made in accordance therewith, (iii) the Borrower or any of the Restricted Subsidiaries shall receive not less than 75% of the consideration for such Disposition in the form of cash or Cash Equivalents (in each case, free and clear of all Liens at the time received, other than nonconsensual Liens permitted by Section 7.01 and Liens permitted by Section 7.01(a), (c), (d), (f), (i), (j), (k), (l), (o), (p), (v), (w), (z), (aa), (bb), (cc) and (ee), (iv) any portion of the consideration for such Disposition that is not in the form of cash or Cash Equivalents shall become Collateral, (v) this Section 7.05(l) shall not permit the Disposition of all or substantially all of the assets of the Borrower and its Subsidiaries (taken as a whole), and (vi) from and after the Amendment No. 3 Effective Date (A) no Dispositions shall be permitted under this Section 7.05(l) except for Dispositions of Specified Amendment No. 3 Real Properties to the extent (x) the buyer therefor is a bona fide third party and (y) the Disposition of such Real Property shall be made for gross~~

consideration not less than the amount specified for such Specified Amendment No. 3 Real Properties to or by the Required Lenders (as applicable) as of the Amendment No. 3 Effective Date (subject in each case, to customary purchase price adjustments and working capital adjustments) and (B) 100% of the Net Proceeds of each Disposition permitted under the foregoing clause (vi)(A) shall be applied to the prepayment of the Term Loans in accordance with Section 2.13(a)(ii) without giving effect to any thresholds or reinvestment rights;

(f)    (m) the Disposition of an any account receivable in connection with the collection or compromise thereof in the ordinary course of business or and consistent with past practice;

(n) [reserved];

(o) dispositions from and after the Restatement Effective Date of non-core or obsolete assets acquired in connection with any Permitted Acquisition or other permitted Investments; *provided* that, from and after the Amendment No. 3 Effective Date, no Dispositions shall be permitted under this clause (o);

(g)    (p) the incurrence of Liens or making of Investments permitted hereunder;

(h)    transfers of property subject to Casualty Events upon the receipt (where practical) of the Net Proceeds of such Casualty Event;

(i)    Dispositions (including the abandonment thereof) of immaterial assets (i) in an aggregate amount not exceeding $250,000 during the term or (ii) subject to Chapter 11 Orders satisfactory to the Lenders; and

(j)    Dispositions (i) made in connection with the First Day Orders or Second Day Orders, (ii) made in connection with the DIP Order or the Bidding Procedures Order, (iii) made in connection with the Canadian Orders, or (iv) consented to by the Junior DIP Lenders and, to the extent involving B-2 Priority Collateral, the Lenders.

(q) sales or dispositions of Equity Interests of any Subsidiary (other than the Borrower) in order to qualify members of the governing body of such Subsidiary if required by applicable law;

(r) [reserved];

(s) Restricted Payments made pursuant to Section 7.06;

(t) Sale and Leaseback Transactions in an aggregate principal amount not to exceed $25,000,000 during the term of this Agreement; *provided* that, from and after the Amendment No. 3 Effective Date, this clause (t) shall be unavailable for use under this Agreement and the dollar amount specified in the clause (t) shall be $0; and

(u) other Dispositions consented to by the Required Lenders in their sole discretion.

*provided* that any Disposition of any property pursuant to this Section 7.05 (except pursuant to Sections 7.05(a), (c), (e), (f), (g), (i), (j), (k), (m), (o), (p), (q), (r) and (s) and except for Dispositions from a Loan Party to any other Loan Party) shall be for no less than the fair market value of such property at the time of such Disposition.  To the extent any Collateral is Disposed of as expressly permitted by this Section 7.05 to any Person other than a Loan Party, such Collateral shall be automatically sold free and clear of the Liens created by the Loan Documents, and, if requested by the Borrower, upon the certification delivered to the Administrative Agent by the Borrower that such Disposition is permitted by

~~this Agreement, the Administrative Agent or the Collateral Agent, as applicable, shall be authorized to take, and shall take, any actions reasonably requested by the Borrower in order to effect the foregoing (at the Borrower's expense) and/or to expressly subordinate any Lien in favor of the Collateral Agent on such Collateral that is disposed of.~~

~~Notwithstanding anything herein to the contrary in this Agreement, (i) as of and after the Amendment No. 3 Effective Date, the Borrower shall not, nor shall it permit any Restricted Subsidiary to, directly or indirectly, make any Disposition of Real Property (other than (a) Dispositions of Specified Amendment No. 3 Real Properties pursuant to Section 7.05(l), (b) leases of Real Property entered into in the ordinary course of business (excluding Sale and Leaseback Transactions) and (c) transfers of property subject to condemnation and Casualty Events), (ii) after the Amendment No. 2 Effective Date, the Borrower shall not, nor shall it permit any Restricted Subsidiary to, Dispose of Specified Rolling Stock with an aggregate fair market value in excess of $5,000,000 in any fiscal year without the prior consent of the Required Lenders, (iii) any Disposition of Rolling Stock shall be for no less than the fair market value of such property at the time of such Disposition, and (iv) during the Specified Rolling Stock Prepayment Period, all Net Proceeds from any Disposition of Specified Rolling Stock in excess of the Specified Rolling Stock Reinvestment Threshold in any fiscal year shall be applied to prepay the Term Loans in accordance with Section 2.13(a)(ii).~~

Section 7.06    ~~Section 7.06.~~ *Restricted Payments.*  The Borrower shall not, nor shall it permit any ~~Restricted~~ Subsidiary to, directly or indirectly, declare or make, directly or indirectly, any Restricted Payment, except~~:~~

~~(a)~~ (a) each ~~Restricted~~ Subsidiary may make Restricted Payments to (i) the Borrower or any other ~~Restricted~~ Domestic Subsidiary or Canadian Subsidiary and (ii) any other Subsidiary (and, in the case of a Restricted Payment by a non-wholly owned ~~Restricted~~ Subsidiary, to the Borrower and any other ~~Restricted~~ Subsidiary and to each other owner of Equity Interests of such ~~Restricted~~ Subsidiary based on their relative ownership interests of the relevant class of Equity Interests)~~;~~, in the case of this clause (ii), solely if required to comply with this Agreement and (b) payments of directors fees included and as permitted by the Approved Budget (subject to Permitted Variances), in each case other than UST Adequate Protection Payments pursuant to the UST Adequate Protection Order.

~~(b) the Borrower and each Restricted Subsidiary may declare and make dividend payments or other Restricted Payments payable solely in the Equity Interests (other than Disqualified Equity Interests unless such Disqualified Equity Interests would be permitted by Section 7.03) of such Person;~~

~~(c) (i) repurchases of Equity Interests in the Borrower deemed to occur upon the exercise of stock options or warrants or the settlement or vesting of other equity awards if such Equity Interests represent a portion of the exercise price of such options or warrants, (ii) cash payments in lieu of the issuance of fractional shares in connection with the exercise of stock options, warrants or other securities convertible into or exchangeable for Equity Interests of the Borrower or (iii) Restricted Payments made in respect of any other transaction involving fractional shares; provided, however, that any such cash payment shall not be for the purpose of evading the limitations of this Agreement;~~

~~(d) the Borrower may pay for the repurchase, retirement or other acquisition or retirement for value of Equity Interests of the Borrower held by any present or former employee, officer, director or consultant of the Borrower or any Restricted Subsidiary or equity based awards held by such Persons, in each case, upon the death, disability, retirement or termination of employment of any such Person or pursuant to any employee or director equity plan, employee or director stock option plan or any other employee or director benefit plan or any agreement (including any stock subscription or shareholder agreement) with any employee, director, officer or consultant of the Borrower or any Restricted~~

Subsidiary; *provided,* that the aggregate amount of Restricted Payments made pursuant to this clause (d) shall not exceed (i) $7,500,000 in any fiscal year plus (ii) the then applicable Cumulative Credit plus (iii) the proceeds of any key man insurance policies; *provided*, *further,* that to the extent that the aggregate amount of Restricted Payments made by the Borrower and the Restricted Subsidiaries pursuant to this clause (d) in any fiscal year is less than the amount set forth above, 100% of the amount of such difference may be carried forward and used to make such Restricted Payments pursuant to this clause (d) in the next two succeeding fiscal years (*provided*, that any such amount carried forward shall be deemed to be used to make such Restricted Payments in any fiscal year after the amount set forth above for such fiscal year shall be deemed to be used to make such Restricted Payments for such fiscal year);

(e) the Borrower may make Restricted Payments in an aggregate amount not to exceed (x) together with (I) the aggregate amount of Investments made under sub-clause (x) of Section 7.02(p) and (II) the aggregate amount of prepayments, redemptions, purchases, defeasances and other payments made pursuant to sub-clause (x) of Section 7.13(a)(vi), $5,000,000, plus (y) the portion, if any, of the Cumulative Credit on such date that the Borrower elects to apply to this subclause (y); *provided* that (A) with respect to any Restricted Payment made pursuant to this Section 7.06(e), (1) no Event of Default has occurred and is continuing or would result therefrom and (2) on a Pro Forma Basis after giving effect thereto the Total Leverage Ratio is equal to or less than 2.00:1.00, and (B) no Restricted Payments shall be permitted under this clause (e) from and after the Amendment No. 3 Effective Date;

(f) [reserved];

(g) [reserved];

(h) the Restricted Subsidiaries may make a Restricted Payment in connection with the acquisition of additional Equity Interests in any Restricted Subsidiary from minority shareholders (in accordance with Section 7.08, if applicable);

(i) Restricted Payments made (i) in respect of working capital adjustments or purchase price adjustments pursuant to any Permitted Acquisition or other permitted Investments (other than pursuant to Section 7.02(x)) and (ii) to satisfy indemnity and other similar obligations under the Permitted Acquisitions or other permitted Investments; *provided* that no Restricted Payments shall be permitted under this clause from and after the Amendment No. 3 Effective Date;

(j) [reserved]; and

(k) Restricted Payments in respect of transactions related to (i) fundamental changes permitted under Section 7.04 and (ii) Investments permitted under Section 7.02 (other than clause (v) thereof).

Section 7.07   Section 7.07.  *Change in Nature of Business;* *Organization Documents*.

(a) The Borrower shall not, nor shall the Borrower permit any of the Restricted Subsidiaries to, directly or indirectly, engage in any material line of business substantially different from those lines of business conducted by the Borrower and the Restricted Subsidiaries on the Restatement Effective Date or any business reasonably related, complementary, synergistic or ancillary thereto or reasonable extensions thereof.

(b) The.  Except as required by the Bankruptcy Code, the Borrower shall not, nor shall the Borrower permit any of the Restricted Subsidiaries to, amend, restate, supplement or otherwise modify to, or waive

of any of its rights under, its Organization Documents to the extent ~~any of the foregoing could reasonably be expected to be~~adverse in any material ~~and adverse~~respect to the Lenders (in their capacities as such).

Section 7.08    ~~Section 7.08.~~ *Transactions with Affiliates*.  The Borrower shall not, nor shall it permit any ~~Restricted~~ Subsidiary to, directly or indirectly, enter into any transaction of any kind with any of its Affiliates, whether or not in the ordinary course of business, other than (a) transactions between or among Loan Parties or any entity that becomes a Loan Party as a result of such transaction and transactions between or among ~~Restricted~~ Subsidiaries that are not Loan Parties, (b) ~~on terms (taken as a whole) substantially not less favorable to the Borrower in any material respect or such Restricted Subsidiary as would be obtainable by the Borrower or such Restricted Subsidiary at the time in a comparable arm's length transaction with a Person other than an Affiliate, (c) the Transactions and the payment of fees and expenses (including Transaction Expenses) as part of or in connection with the Transactions, (d) the issuance of Equity Interests or equity based awards to any officer, director, employee or consultant of the Borrower or any of its Restricted Subsidiaries in the ordinary course of business, (e~~to the extent pursuant to the Approved Budget (subject to Permitted Variances), (i) Investments made pursuant to Section 7.02~~, Indebtedness incurred pursuant to Section 7.03~~ and Restricted Payments permitted under Section 7.06, (f~~ii~~) customary employment, consulting and severance arrangements between the Borrower and the ~~Restricted~~ Subsidiaries and their respective officers and employees in the ordinary course of business and transactions pursuant ~~to stock option plans and~~ employee benefit plans and similar arrangements in the ordinary course of business to the extent permitted under the DIP Order, (h~~iii~~) the payment of customary fees and reasonable out of pocket costs to, and customary indemnities provided on behalf of, directors, officers, employees and consultants of the Borrower and the ~~Restricted~~ Subsidiaries in the ordinary course of business, ~~(i) [reserved], (j) transactions pursuant to registration rights agreements and similar arrangements, (k) transactions in which the Borrower or any Restricted Subsidiary, as the case may be, delivers to the Administrative Agent and the Required Lenders a letter from an independent financial advisor stating that such transaction is fair to the Borrower or such Restricted Subsidiary from a financial point of view or meets the requirements of clause (b) of this Section 7.08 and (l~~iv~~)~~ transactions pursuant to agreements in existence on the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date and set forth on Schedule 7.08 ~~or any amendment thereto to the extent such an amendment (taken as a whole) is not adverse to the Lenders in any material respect.~~, (v) transactions made in connection with the First Day Orders or Second Day Orders, (vi) pursuant to the Approved Budget (subject to Permitted Variances), and (vii) transactions made pursuant to the DIP Order or otherwise permitted hereunder and under the Junior DIP Loan Documents.

Section 7.09    ~~Section 7.09.~~ *Burdensome Agreements*.  The Borrower shall not, nor shall it permit any ~~Restricted~~ Subsidiary to, directly or indirectly, enter into or permit to exist any Contractual Obligation ~~(other than (i) this Agreement or any other Loan Document, (ii) any ABL Facility Documentation, (iii) any UST Tranche A Facility Documentation, (iv) any UST Tranche B Facility Documentation, (v) any documents governing Credit Agreement Refinancing Indebtedness or a Permitted Refinancing of (ii) (v) or (vi) any Treasury Equity Documents or documents governing Treasury Equity~~after the Postpetition B-2 Facility Closing Date (other than the Loan Documents, the Junior DIP Loan Documents, pursuant to the Prepetition Indebtedness, or agreements  entered into as permitted by the First Day Orders or Second Day Orders, the DIP Order or the Bidding Procedures Order, in each case, to the extent such orders are acceptable to the Lenders) that limits the ability of (a) any ~~Restricted~~ Subsidiary that is not a Guarantor to make Restricted Payments to the Borrower or any Guarantor or to make or repay loans or advances to or otherwise transfer assets to or make Investments in the Borrower or any ~~Restricted~~ Subsidiary that is a Guarantor or (b) any Loan Party to create, incur, assume or suffer to exist Liens on property of such Person to secure the Obligations; provided that the foregoing clauses (a) and (b) shall not apply to Contractual Obligations which ~~(i) (x)~~ exist on the ~~Restatement Effective~~Petition Date and ~~(to the extent not otherwise permitted by this Section 7.09)~~ are listed on Schedule 7.09 hereto

and (y) to the extent Contractual Obligations permitted by clause (x) are set forth in an agreement evidencing Indebtedness, are set forth in any agreement evidencing any permitted modification, replacement, renewal, extension or refinancing of such Indebtedness so long as such modification, replacement, renewal, extension or refinancing does not expand the scope of such Contractual Obligation in any material respect (as determined in good faith by the Borrower), (ii) are binding on a Restricted Subsidiary at the time such Restricted Subsidiary first becomes a Restricted Subsidiary, so long as such Contractual Obligations were not entered into in contemplation of such Person becoming a Restricted Subsidiary, (iii) represent Indebtedness of a Restricted Subsidiary which is not a Loan Party which is permitted by Section 7.03, (iv) arise in connection with any Disposition permitted by Section 7.04 or 7.05 and relate solely to the assets or Person subject to such Disposition, (v) are customary provisions in joint venture agreements and other similar agreements applicable to joint ventures or other non-wholly owned Subsidiaries permitted under Section 7.02 and applicable solely to such joint venture or other non-wholly owned Subsidiaries and are entered into in the ordinary course of business, (vi) are negative pledges and restrictions on Liens in favor of any holder of Indebtedness (other than any Junior Financing) permitted under Section 7.03(e) or (g) but solely to the extent any negative pledge relates to the property financed by such Indebtedness, (vii) are customary restrictions in leases, subleases, licenses or asset sale agreements otherwise permitted hereby so long as such restrictions relate only to the assets subject thereto, (viii) comprise restrictions imposed by any agreement governing secured Indebtedness permitted pursuant to Section 7.03 to the extent that such restrictions apply only to the property or assets securing such Indebtedness, (ix) are customary provisions restricting subletting or assignment of any lease governing a leasehold interest of the Borrower or any Restricted Subsidiary entered into in the ordinary course of business, (x) are customary provisions restricting assignment of any agreement entered into in the ordinary course of business, (xi) are customary restrictions contained in the ABL Facility Documentation, (xii) arise in connection with cash or other deposits permitted under Sections 7.01 and 7.02 and limited to such cash or deposit, or (xiii) comprise restrictions imposed by any agreement governing Indebtedness entered into on or after the Restatement Effective Date and permitted under Section 7.03 if the restrictions contained in any such agreement taken as a whole (a) are not materially less favorable to the Secured Parties than the encumbrances and restrictions contained in the Loan Documents (as determined by the Borrower) or (b) either (I) the Borrower determines at the time of entry into such agreement or instrument that such encumbrances or restrictions will not adversely affect, in any material respect, the Borrower's ability to make principal or interest payments required hereunder or (II) such encumbrance or restriction applies only during the continuance of a default relating to such agreement or instrument..

Section 7.10    ~~Section 7.10.~~ *Financial Covenant*[Reserved]. The Borrower shall not permit Consolidated EBITDA for any Test Period, commencing with the Test Period ending as of the end of the fiscal quarter ending December 31, 2021, to be less than the amount set forth for such Test Period, below:

| Test Period Ending | Minimum EBITDA |
|---|---|
| December 31, 2021 | $100,000,000 |
| March 31, 2022 | $150,000,000 |
| June 30, 2022 and the last day of each Fiscal Quarter thereafter | $200,000,000 |

.

Section 7.11    ~~Section 7.11.  *Minimum Liquidity;* ~~ *Budget Variance Covenants.* ~~(a)        As    of and after the Amendment No. 3 Closing Date, the Borrower shall not permit Liquidity at any time to be less than $35,000,000.~~

~~(b)~~    .    Commencing with the Budget Variance Test Date occurring on ~~Wednesday, July 12~~Friday, August 25, 2023, and on each Budget Variance Test Date occurring thereafter, the Borrower shall not, nor shall it permit any of its Subsidiaries to, permit:

(~~i~~a)    ~~permit~~ the sum of the actual aggregate cash receipts of the Borrower and its Subsidiaries (excluding proceeds of the Term Loans) for the Budget Variance Test Period ending ~~on~~immediately prior to such Budget Variance Test Date ~~(excluding (A) proceeds of any loans made under the ABL Facility and (B) proceeds of Term Priority Collateral) to be less than 20% of the forecasted cash receipts~~to be less than the Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Total Receipts" for such Budget Variance Test Period~~ in the applicable Approved Budget; *provided,* that to the extent the receipts of the Borrower and its Subsidiaries exceed the forecasted cash receipts for any such Budget Variance Test Period, such incremental receipts for a given week may be carried forward to successive weekly periods for as long as the then effective Approved Budget is in effect and prior to the replacement thereof by an Updated Budget in accordance with Section 6.02(l) and counted as receipts solely during such period for purposes of this Section 7.11(b)(i); or~~; or

(~~ii~~b)    ~~permit~~ the sum of the actual aggregate operating disbursements of the Borrower and its Subsidiaries for ~~such~~the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than ~~20% of the forecasted aggregate operating disbursements~~Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Total Operating Disbursements" for such Budget Variance Test Period~~ in the applicable Approved Budget (the "**Disbursement Budget Covenant**"); *provided,* the Disbursement Budget Covenant (for purposes of actual operating disbursements and forecasted operating disbursements in the applicable Approved Budget, in each case, for the applicable Budget Variance Test Period) shall exclude any extraordinary, unusual or non-recurring (x) disbursements or (y) deferrals of disbursements, in each case, as agreed by the Borrower and the Required Lenders in writing (which may be via e-mail) on or prior the Amendment No. 3 Closing Date, and as may be agreed by the Borrower and the Required Lenders in writing (which may be via e-mail)  from time to time after the Amendment No. 3 Closing Date.~~; or

(c)    the sum of the actual aggregate amounts paid by the Borrower and its Subsidiaries with respect to severance and accrued pre-petition wages for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line items in the Approved Budget entitled "Severance" and "Accrued Pre-Petition Wages" for such Budget Variance Test Period; or

(d)    the sum of the actual aggregate disbursements of the Borrower and its Subsidiaries with respect to lienholders and on account of taxes and other restructuring costs for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Prepetition Vendors & Taxes" for such Budget Variance Test Period.

To the extent that any Budget Variance Test Period encompasses a period that is covered in more than one Approved Budget, the applicable weeks from each applicable Approved Budget shall be utilized in making the calculations pursuant to this Section 7.11~~(b)~~.

Section 7.12    ~~Section 7.12.~~ *Fiscal Year.* The Borrower shall not make any change in its fiscal year or fiscal quarters (it being understood that the Borrower's fiscal year ends on December 31 of each year, and that each of the first three fiscal quarters of each fiscal year of the Borrower ends on the March 31, June 30 and September 30, respectively); *provided, however*, that the Borrower may, upon written notice to the Administrative Agent and the ~~Required~~ Lenders, change its fiscal year and fiscal quarters to any other fiscal year (and any other fiscal quarters) reasonably acceptable to the Administrative Agent and the ~~Required~~ Lenders, in which case, the Borrower and the Administrative Agent will, and are hereby authorized by the Lenders to, make any adjustments to this Agreement that are necessary to reflect such changes.

Section 7.13    ~~Section 7.13.~~ *Prepayments, Etc. of Indebtedness.*

(a)    ~~The~~Except as set forth in the Approved Budget (subject to Permitted Variances), the DIP Order, the Canadian Orders, the Bidding Procedures Order, the First Day Order, the Second Day Order or the UST Adequate Protection Order, the Borrower shall not, nor shall it permit any ~~Restricted~~ Subsidiary to, directly or indirectly from proceeds on the B-2 Priority Collateral, voluntarily pay, prepay, redeem, purchase, defease or otherwise satisfy ~~prior to the scheduled maturity thereof in any manner (it being understood that neither payments of regularly scheduled interest in cash, nor any payments of regularly scheduled principal amounts shall be permitted prior to the scheduled maturity date thereof) (x) any Permitted Additional Debt (or any Permitted Refinancing thereof), the UST Tranche A Facility Indebtedness (or any Permitted Refinancing thereof) or the UST Tranche B Facility Indebtedness (or any Permitted Refinancing thereof) or (y) any Junior Financing that constitutes Subordinated Indebtedness (or any Permitted Refinancing thereof), or make any payment in violation of any subordination terms of any Junior Financing Documentation, if any, except (i) any Permitted Refinancing permitted in respect thereof (including any Permitted Refinancing set forth in Section 7.03(u) hereof), (ii) the conversion of any Permitted Additional Debt (or any Permitted Refinancing thereof), the~~any principal, interest or other amounts, in any manner, with respect to any Prepetition ABL Facility Indebtedness, Prepetition UST Tranche A Facility Indebtedness or ~~the~~Prepetition UST Tranche B Facility Indebtedness or ~~Junior Financing that constitutes Subordinated Indebtedness (or any Permitted Refinancing thereof) to Equity Interests (other than Disqualified Equity Interests) of the Borrower, (iii) the prepayment of Indebtedness of the Borrower or any Restricted Subsidiary to the Borrower or any Restricted Subsidiary to the extent not prohibited by applicable subordination provisions, (iv) prepayments, redemptions, purchases, defeasances and other payments or satisfaction from the proceeds of equity issuances by the Borrower, (v) AHYDO "catch-up" payments, (vi) prepayments, redemptions, purchases, defeasances and other payments in respect of Permitted Additional Debt (or any Permitted Refinancing thereof), and Junior Financings that constitutes Subordinated Indebtedness (or any Permitted Refinancing thereof) prior to their scheduled maturity in an aggregate amount not to exceed (x) together with (I) the aggregate amount of Investments made under sub-clause (x) of Section 7.02(p) and (II) the aggregate amount of Restricted Payments made pursuant to sub-clause (x) of Section 7.06(e), $5,000,000, *plus* (y) the portion, if any, of the Cumulative Credit on such date that the Borrower elects to apply to this subclause (y), *provided* that (A) no prepayment, redemption, purchase, defeasance or other payment shall be made pursuant to this clause (vi) if an Event of Default has occurred and is continuing or would result therefrom, and (B) no prepayments, redemptions, purchases, defeasances and other payments in respect of Permitted Additional Debt shall be permitted under this clause (vi) until the Specified Amendment No. 1 Period shall have ended, (vii) with respect to the UST Tranche A Facility Indebtedness and the UST Tranche B Facility Indebtedness, payments of regularly scheduled interest in cash and in kind shall be permitted, (viii) with respect to the UST Tranche A Facility Indebtedness and to the extent required under the UST Tranche A Credit Agreement (as in effect on the Amendment No. 2 Effective Date), payments from proceeds of the Disposition of UST Tranche A Only Collateral shall be permitted, and (ix) with respect to the UST Tranche B Facility Indebtedness and to the extent required under the UST Tranche B Credit Agreement (as in effect on the Amendment No. 2 Effective Date), payments from proceeds of the Disposition of~~

~~UST Tranche B Priority Collateral, UST Tranche B Joint Collateral (in the case of UST Tranche B Joint Collateral, in accordance with clause (i) of the last sentence of Section 2.13(a)(ii)) and UST Tranche B Only Collateral shall be permitted.  For greater certainty, nothing in this Section 7.13(a) or elsewhere in this Agreement shall limit or restrict the ability of the Borrower or any Restricted Subsidiary to prepay, redeem, purchase, defease or otherwise satisfy prior to the scheduled maturity thereof any ABL Facility Indebtedness or other obligations also secured pursuant to the ABL Credit Agreement.~~payables, other than (i) payments set forth in the Approved Budget (subject to Permitted Variances), (ii) UST Adequate Protection Payments, (iii) ABL Adequate Protection Fees and Expenses (as defined in the DIP Order), (iv) adequate protection payments for the Lenders, (v) any other payments contemplated by the DIP Order (including prepayments and repayments of the Obligations), and (vi) other payments agreed in writing by the Lenders and authorized by the Bankruptcy Court or the Canadian Court.

(b)     ~~(i) The~~Except as permitted by the DIP Order, the Borrower shall not, nor shall it permit any ~~Restricted~~ Subsidiary to, directly or indirectly, amend, modify, change, terminate or release in any manner materially adverse to the interests of the Lenders, any term or condition of any ~~Junior Financing~~document comprising Prepetition Facility Documentation or ~~the documentation governing any Permitted Additional Debt (or any Permitted Refinancing thereof) if the effect thereof would be to cause such Junior Financing or Permitted Additional Debt to no longer constitute Junior Financing or Permitted Additional Debt, as the case may be,~~any Junior DIP Loan Documents, in each case without the prior written consent of the ~~Required Lenders (which consent shall not be unreasonably withheld, conditioned or delayed); *provided*, that none of the ABL Facility Indebtedness, UST Tranche A Facility Indebtedness or UST Tranche B Facility Indebtedness shall be subject to this clause (b) unless expressly designated as Permitted Junior Priority Additional Debt.~~Lenders.

~~(ii) The Borrower shall not, nor shall it permit any Restricted Subsidiary to, directly or indirectly, amend, modify, change, terminate or release in any manner materially adverse to the interests of the Lenders any term or condition of the UST Tranche A Facility Indebtedness or the UST Tranche B Facility Indebtedness (it being understood and agreed that any amendment to reduce the commitments for the UST Tranche A Facility under the UST Tranche A Facility Credit Agreement to an amount less than $300,000,000 and any amendment to increase the commitments for the UST Tranche B Facility under the UST Tranche B Credit Agreement to an amount in excess of $400,000,000 shall be deemed to be materially adverse to the interests of the Lenders).~~

(c)     Notwithstanding anything to the contrary in this Agreement, the other Loan Documents, the Junior DIP Loan Documents or the DIP Order, it is expressly understood and agreed that no prepayment, repayment, repurchase, or exchange of borrowings under the Junior DIP Facility shall occur until all of the Obligations have first been indefeasibly paid in full in cash and any such prepayment, repayment, repurchase or exchange shall otherwise be consistent with the priorities for liens and claims securing the Junior DIP Facility as set forth in the DIP Order.

Section 7.14     ~~Section 7.14.  *Prepayments, Etc. of Single-Employer Plans*~~[Reserved].

Section 7.15     *Leases and Other Executory Contracts; Exclusivity Period*.  The Borrower shall not~~, except to the extent required by ERISA or other applicable Law, make any early lump sum payment to satisfy any liability under any Single-Employer Plan, in each case, directly from the cash or Cash Equivalents of the Borrower or the Restricted Subsidiaries (including, for the avoidance of doubt, the proceeds of any borrowing under the ABL Facility).~~ (i) assume or reject any executory contract or unexpired lease or (ii) consent to termination or reduction of the exclusivity period to file and solicit a

Plan of Reorganization or fail to object to any motion seeking to terminate or reduce such exclusivity period, in each case, without the consent of the Junior DIP Lenders and, to the extent constituting or impacting any B-2 Priority Collateral, the Lenders.

Section 7.16    *DIP Proceeds Account; Use of Cash.*  The Borrower shall maintain the DIP Proceeds Account at all times and ensure that only proceeds of New Money Postpetition Term Loans and loans issued under the Junior DIP Facility are deposited in the DIP Proceeds Account.  The Borrower (i) shall not, nor shall it permit any Subsidiary who holds such DIP Proceeds Account, to withdraw any cash in the DIP Proceeds Account, or otherwise make any other payments during the pendency of the Chapter 11 Cases (notwithstanding the source of cash), except consistent with the Approved Budget (subject to Permitted Variances) and unless each of the following shall be true on the date of such withdrawal: (x) The representations and warranties set forth in Article 5 and in each other Loan Document shall be true and correct in all material respects on and as of the date of such Credit Extension with the same effect as though made on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date; provided, that any such representation and warranty that is qualified by "materiality", "material adverse effect" or similar language shall be true and correct in all respects (after giving effect to such qualification therein) on and as of the date of such Credit Extension with the same effect as though made on and as of such date or such earlier date, as applicable, and (y) no Default or Event of Default (other than an Existing Default) shall exist or would result from such proposed Credit Extension or from the application of the proceeds therefrom and (ii) for the avoidance of doubt, shall not permit any cash in such DIP Proceeds Account to be subject to any zero-balance or other similar automatic sweep. For the avoidance of doubt, none of the DIP Proceeds Account, any funds therein, or any proceeds of New Money Postpetition Term Loans or loans issued under the Junior DIP Facility shall be subject to any terms or provisions in the DIP Order governing cash that constitutes Prepetition ABL Priority Collateral.

Section 7.17    *No Canadian Pension Plans.*  No Loan Party shall maintain, sponsor, administer, contribute to, participate in, or have any obligations or any actual or contingent liability in respect of any Canadian Defined Benefit Pension Plan.

# ARTICLE 8
## EVENTS OF DEFAULT AND REMEDIES

Section 8.01    ~~Section 8.01.~~ *Events of Default.*  ~~Any~~Each of the following ~~from and after the Restatement Effective Date~~ shall constitute an event of default (an "**Event of Default**"):

(a)    *Non-Payment.*  Any Loan Party fails to pay (i) when and as required to be paid herein or in any other Loan Document, any amount of principal of any Loan, (ii) within ~~five~~three (~~5~~3) Business Days after the same becomes due, any interest on any Loan~~,~~ or (iii) within ~~ten~~five (~~10~~5) ~~days~~Business Days after the same becomes due, any other amount payable hereunder or with respect to any other Loan Document; or

(b)    *Specific Covenants.*  The Borrower fails to perform or observe any term, covenant or agreement contained in any of (i) Sections 6.03(a) (*provided* that the delivery of a notice of Default or Event of Default at any time will cure an Event of Default under Section 6.03(a) arising from the failure of the Borrower to timely deliver such notice of Default or Event of Default), 6.05(a) (solely with respect to the Borrower), 6.13(c)~~(ii), 6.13(c)(iii)~~, 6.14, 6.15, 6.16 or Article 7 ~~or (ii) Sections 6.01(a), 6.01(b), 6.02(l), 6.02(m), 6.02(n), 6.02(o), Section 6.13(c)(i) or 6.18~~(other than Section 7.11) or (ii) Section 6.01 or 6.02 and, in the case solely of this clause (ii), such failure continues for two Business Days after the

earlier of (A) ~~an~~a Responsible Officer of the Borrower becoming aware of such default ~~or~~and (B) receipt by the Borrower of written notice thereof from the Administrative Agent or the ~~Required~~ Lenders; or

(c)     *Other Defaults.*  Any Loan Party fails to perform or observe any other term, covenant or agreement (not specified in Section 8.01(a) or (b) above) contained in any Loan Document on its part to be performed or observed (other than pursuant to Section 7.11) and such failure continues for ~~thirty~~fifteen (~~30~~15) days after receipt by the Borrower of written notice thereof from the Administrative Agent or the ~~Required~~ Lenders; or

(d)     *Representations and Warranties.*   Any representation, warranty, certification or statement of fact made or deemed made by or on behalf of the Borrower or any other Loan Party herein, in any other Loan Document, or in any Compliance Certificate or other document required to be delivered in connection herewith or therewith shall be incorrect or misleading in any material respect when made or deemed made; or

~~(e) *Cross Default.*~~

(e)           (A)        Any *Cross-Default.*   Except as a result of the events leading up to or resulting from the commencement of the Chapter 11 Cases, the ceasing of operations, the commencement of the Chapter 11 Cases, the Canadian Recognition Proceedings or entry into this Agreement and unless the payment, acceleration and/or the exercise of remedies with respect to any such Indebtedness is stayed by the Bankruptcy Court or the Canadian Court, any Loan Party or any ~~Restricted~~ Subsidiary (i) fails to make any payment after the applicable grace period with respect thereto, if any, (whether by scheduled maturity, required prepayment, acceleration, demand, or otherwise) in respect of any other prepetition Indebtedness (other than Indebtedness hereunder and, for the avoidance of doubt, excluding Prepetition Indebtedness) having an outstanding aggregate principal amount of not less than the Threshold Amount or (ii) fails to observe or perform any other agreement or condition relating to any such prepetition Indebtedness, or any other event occurs (other than, with respect to Indebtedness consisting of Swap Contracts, termination events or equivalent events pursuant to the terms of such Swap Contracts and not as a result of any other default thereunder by any Loan Party), after all grace periods having expired and all required notices having been given, the effect of which default or other event is to cause, or to permit the holder or holders of such Indebtedness (or a trustee or agent on behalf of such holder or holders or beneficiary or beneficiaries) to cause, after all grace periods having expired and all required notices having been given, such prepetition Indebtedness to become due or to be repurchased, prepaid, defeased or redeemed (automatically or otherwise), or an offer to repurchase, prepay, defease or redeem such Indebtedness to be made, prior to its stated maturity; ~~*provided* that any such failure or the occurrence of any such other event referred to in subclause (ii) relating to Indebtedness under the ABL Credit Agreement or any Permitted Refinancing thereof shall not constitute an Event of Default under this Section 8.01(e) until the earlier of (x) thirty days after the expiration of all grace periods relating to such failure or occurrence under the ABL Credit Agreement and (y) any acceleration of the ABL Obligations (as defined in the ABL Intercreditor Agreement) outstanding under the ABL Credit Agreement, whether automatic or otherwise; *provided* further that this clause (e)(ii) shall not apply to (I) secured Indebtedness that becomes due as a result of the voluntary sale or transfer of the property or assets securing such Indebtedness, (II) Indebtedness which is convertible into Equity Interest and converts to Equity Interests in accordance with its terms or (III) any breach or default that (X) is remedied by the Borrower or the applicable Restricted Subsidiary or (Y) waived (including in the form of amendment) by the requisite holders of the applicable item of Indebtedness, in either case, prior to the acceleration of all the Loans pursuant to this Section 8.01; or~~or

~~(B)        the UST Tranche A Term Agent or the Lenders under (and as defined in) under UST Tranche A Facility Documentation shall fail to honor request for borrowing or~~

~~release of proceeds from UST Tranche A Controlled Account in each case in excess of $25,000,000 and such failure continues for ten (10) Business Days; or~~

~~(C)      the UST Tranche B Term Agent or the Lenders under (and as defined in) under UST Tranche B Facility Documentation shall fail to honor request for borrowing or release of proceeds from UST Tranche B Controlled Account in each case in excess of $25,000,000 and such failure continues for ten (10) Business Days; or~~

~~(f) *Insolvency Proceedings, Etc.*   Any Loan Party or any Restricted Subsidiary institutes or consents to the institution of any voluntary or involuntary proceeding under any Debtor Relief Law, or makes a general assignment for the benefit of creditors; or applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator, administrator, administrative receiver or similar officer for it or for all or substantially all of its property; or any receiver, trustee, custodian, conservator, liquidator, rehabilitator, administrator, administrative receiver or similar officer is appointed without the application or consent of such Person and the appointment continues undischarged or unstayed for sixty (60) consecutive calendar days; or any proceeding under any Debtor Relief Law relating to any such Person or to all or substantially all of its property is instituted without the consent of such Person and continues undismissed or unstayed for sixty (60) consecutive calendar days, or an order for relief is entered in any such proceeding; or~~

~~(g) *Inability to Pay Debts; Attachment.*   Any Loan Party or any Restricted Subsidiary becomes generally unable or admits in writing its general inability or fails generally to pay its debts as they become due, or any writ or warrant of attachment or execution or similar process is issued or levied against all or substantially all of the property of the Borrower and the Restricted Subsidiaries, taken as a whole, and is not released, vacated or fully bonded within sixty (60) consecutive days after its issue or levy; or~~

(f)      *[Reserved]*; or

(g)      *[Reserved]*; or

(h)      *Judgments*.   ~~There~~Except as a result of the events leading up to or resulting from the commencement of the Chapter 11 Cases or the Canadian Recognition Proceedings, the commencement of the Chapter 11 Cases or the Canadian Recognition Proceedings or entry into this Agreement and unless any such judgment is stayed by the Bankruptcy Court or the Canadian Court, there is entered against any Loan Party or any ~~Restricted~~ Subsidiary a final judgment or order for the payment of money in an aggregate amount exceeding the Threshold Amount (to the extent not covered by independent third-party insurance or indemnity as to which the insurer or third party indemnitor has been notified of such judgment or order and has not denied coverage) and such judgment or order shall not have been satisfied, vacated, discharged or stayed or bonded pending an appeal for a period of sixty (60) consecutive days; or

(i)      *Invalidity of Loan Documents*.   Any material provision of the Loan Documents, at any time after their execution and delivery and for any reason other than as expressly permitted hereunder or thereunder (including as a result of a transaction permitted under Section 7.04 or 7.05) or as a result of acts or omissions by the Administrative Agent or Collateral Agent or any Lender or the satisfaction in full of all the Obligations (other than other than contingent obligations), ceases to be in full force and effect; or any Loan Party contests in writing the validity or enforceability of any provision of any Loan Document; or any Loan Party denies in writing that it has any or further liability or obligation under any Loan Document (other than as a result of repayment in full of the Obligations), or purports in writing to revoke or rescind any Loan Document; or

(j)    ~~*Change of Control.*~~  ~~There occurs any Change of Control~~*[Reserved]*; or

(k)    *Collateral Documents*.    The <u>DIP Order, the Canadian Orders and the</u> Collateral Documents after delivery thereof pursuant to <u>Sections 4.02</u>, <u>6.11</u> or <u>6.13</u> shall for any reason (other than pursuant to the terms hereof or thereof including as a result of a transaction permitted under <u>Section 7.04</u> or <u>7.05</u>) cease to create, or shall be asserted by any Loan Party not to create, a valid and perfected Lien, ~~with the priority required by the Collateral Documents~~ on and security interest in <u>the</u> Collateral ~~purported to be covered thereby with an aggregate value equal to or greater than $25,000,000~~<u>, with the priority required herein and in the DIP Order</u>, subject to Liens permitted under <u>Section 7.01</u>~~, (i) except to the extent that any such perfection or priority is not required pursuant to the Collateral and Guarantee Requirement or results from the failure of the Administrative Agent or the Collateral Agent to maintain possession or control of certificates representing securities, other collateral requiring possession or control, or motor vehicle certificates of title (or notation thereon) pledged under the Collateral Documents, in each case actually delivered to it, or to file Uniform Commercial Code financing statements or continuation statements or any Collateral Documents and (ii) except as to Collateral consisting of Real Property to the extent that such losses are covered by a lender's title insurance policy and such insurer has not denied coverage; or~~<u>; or</u>

~~(l)    *ERISA.*  (i) An ERISA Event that occurs after the Restatement Effective Date and that, alone or together with any other ERISA Events that have occurred after the Restatement Effective Date, has resulted or could reasonably be expected to result in liability of a Loan Party, any Restricted Subsidiary or any of their respective ERISA Affiliates in an aggregate amount at any particular time that~~ ~~would reasonably be expected to have a Material Adverse Effect~~~~, or (ii) a Loan Party, any Restricted Subsidiary or any of their respective ERISA Affiliates fails to pay when due, after the expiration of any applicable grace period, any installment payment with respect to its Withdrawal Liability under Section 4201 of ERISA under a Multiemployer Plan in an aggregate amount, that, alone or together with any other such failures to pay, has resulted or would reasonably be expected to result in a Material Adverse Effect; or (iii) as of any date, a Loan Party, any Restricted Subsidiary or any of their respective ERISA Affiliates (x) shall have made contributions to any Multiemployer Plan during the immediately preceding twelve month period ending on such date that exceed in value in the aggregate among all such Persons the Pension Contribution Cap for such period or (y) is projected or reasonably expected (in each case by the Borrower in good faith) to make contributions to any Multiemployer Plan in the next twelve month period that exceed in the aggregate among all such Persons the Pension Contribution Cap for such period (*provided* that such Pension Contribution Cap may be exceeded solely to facilitate a compromise, settlement, rearrangement or other restructuring of liabilities under such Multiemployer Plan with the consent of the Required Lenders (such consent not to be unreasonably withheld, delayed or conditioned or denied)); *provided* that this clause (iii) shall not apply if on the applicable date of determination Consolidated EBITDA for the most recent Test Period ending prior to such date of determination as set forth in the most recent Compliance Certificate received by the Administrative Agent pursuant to Section 6.02(a) on or prior to such date of determination exceeds $400,000,000; or~~

<u>(l)    *ERISA.* The occurrence of an ERISA Event pursuant to clause (r) of the definition of such term that has resulted or could reasonably be expected to result in a Material Adverse Effect; or</u>

~~(m) *Junior Financing Documentation.* (i) Any of the Obligations of~~ ~~the Loan Parties under the Loan Documents for any reason shall cease to be, or shall be asserted by any Loan Party not to be, "Senior Indebtedness" (or any comparable term) or "Senior Secured Financing" (or any comparable term) under, and as defined in, any Junior Financing Documentation in respect of any Junior Financing that is, or is required by this Agreement to be, Subordinated Indebtedness or (ii) the subordination provisions set forth in any Junior Financing Documentation in respect of any Junior Financing that is, or is required by this Agreement to be, Subordinated Indebtedness shall, in whole or in part, cease to be, or~~

shall be asserted by any Loan Party not to be, effective or legally valid, binding and enforceable against the holders of any such Junior Financing, if applicable (other than as a result of acts or omissions by the Administrative Agent or Collateral Agent or the satisfaction in full of all the Obligations (other than contingent obligations)); or

(n) *IBT Agreement*.  The IBT Agreement shall be declared invalid or illegal, shall be terminated, or shall no longer be in full force and effect; or

(o) *Compton Sale*.    The Borrower and its Subsidiaries shall not have consummated the Compton Sale for a purchase price of $80,000,000 and prepaid the Tranche B-2 Term Loans with the Net Proceeds thereof (which Net Proceeds shall be in an aggregate amount not less than $73,000,000) on or prior to the date that is four (4) Business Days after the Amendment No. 3 Closing Date (or such later date as may be agreed in writing by the Required Lenders in their sole and absolute discretion (which may be via e-mail)).

(m)　　*[Reserved]*; or

(n)　　*[Reserved]*; or

(o)　　*The Chapter 11 Cases*.

(i)　　A Final Order shall not have been entered by the Bankruptcy Court on or before the date that is 45 days after the Petition Date, which Final Order shall be in full force and effect and shall not have been reversed, modified, amended, stayed, vacated, appealed or subject to pending appeal or otherwise challenged or subject to any challenge in any respect without prior consent of the Lenders; or

(ii)　　Any Chapter 11 Cases or Canadian Recognition Proceedings shall be dismissed (or the Bankruptcy Court or Canadian Court, as applicable, shall make a ruling requiring the dismissal of any Chapter 11 Case or Canadian Recognition Proceedings), suspended or converted to a case under chapter 7 of the Bankruptcy Code, or any Loan Party shall file any pleading, application or motion requesting any such relief; or a motion shall be filed by any Loan Party for the approval of, or there shall arise, (x) any other Claim (other than a Claim of the Junior DIP Lenders solely with respect to Unencumbered Assets) having priority senior to or pari passu with the claims of the Administrative Agent and Lenders under the Loan Documents or any other claim having priority over any or all administrative expenses of the kind specified in clause (b) of Section 503 or clause (b) of Section 507 of the Bankruptcy Code (other than the Carve-Out and the Canadian Priority Charges pursuant to the Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders or the adequate protection obligations under the DIP Order) or (y) any Lien on the Collateral having a priority senior to or pari passu with the Liens and security interests granted to the Collateral Agent pursuant to this Agreement, the DIP Order and/or the applicable Canadian Orders (other than Liens granted under the Junior DIP Loan Documents solely with respect to Unencumbered Assets), except as expressly permitted herein and in the DIP Order, the UST Adequate Protection Order and in the Canadian Orders; or

(iii)　　Any Loan Party shall file a motion in the Chapter 11 Cases or the Canadian Recognition Proceedings to obtain additional or replacement financing from a party other than the Lenders or the Junior DIP Lenders under Section 364(d) of the Bankruptcy Code or the CCAA or to use Cash Collateral of a Lender under Section 363(c) of the Bankruptcy Code,

except to the extent any such financing shall provide for the payment in full in cash of the Obligations or with the prior written consent of the Lenders; or

(iv)    Any Loan Party shall file a motion seeking, or the Bankruptcy Court or the Canadian Court shall enter, an order (A) approving payment of any pre-petition claim (or the Loan Party shall otherwise make a payment on any prepetition claim) other than (x) as provided for in (i) the First Day Orders, Second Day Orders, the UST Adequate Protection Order or the Canadian Orders, (ii) the Approved Budget (subject to Permitted Variances) or (iii) the DIP Order or (y) otherwise consented to by the Lenders in writing, (B) granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code or the stay of proceedings provided for in the Canadian Orders to any holder of any security interest to permit foreclosure on any assets with a fair market value in excess of $250,000; or (C) [reserved]; or

(v)    (A) Any Chapter 11 Order or order granted in the Canadian Recognition Proceedings shall be amended, supplemented, stayed, reversed, vacated or otherwise modified (or any Loan Party shall apply for authority to do so), in each case, in a manner adverse to the Lenders, without the written consent of the Lenders (or any Loan Party shall file, or otherwise support, any pleading, application or motion seeking such relief described in this clause (v)) or (B) any Chapter 11 Order or order granted in the Canadian Recognition Proceedings shall cease to be in full force and effect; or

(vi)    An order with respect to any of the Chapter 11 Cases or Canadian Recognition Proceedings shall be entered by the Bankruptcy Court or Canadian Court, as applicable, without the express prior written consent of the Lenders (and, with respect to any provisions that adversely affect the rights or duties of any Agent, such Agent) (i) to revoke, reverse, stay, modify, supplement, vacate or amend any of the DIP Order or Canadian Orders  in a manner inconsistent with this Agreement, in a manner adverse to the Lenders, or that is not otherwise consented to by the Lenders (and with respect to amendments, modifications, or supplements that adversely affect the rights or duties of any Agent, such Agent); (ii) to permit any administrative expense or any claim (other than a Claim of the Junior DIP Lenders solely with respect to Unencumbered Assets) (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority as to the Loan Parties equal or superior to the priority of the Loans (other than the Carve-Out and the Canadian Priority Charges pursuant to the Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders)) or the adequate protection Claims (other than the Carve-Out and the Canadian Priority Charges pursuant to the Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders or the administrative expense claims on account of the Postpetition B-2 Facility); or (iii) to grant or permit the grant of a Lien on the Collateral (other than Liens granted under the Junior DIP Loan Documents, as expressly provided or permitted herein and in the DIP Order, the UST Adequate Protection Order and in the Canadian Orders); or

(vii)    An application for any of the orders described in subclauses (ii), (iv), (vi), (x), (xvii) and (xviii) of this clause (o) shall be made by a Person other than the Loan Parties, and such application is not contested by the Loan Parties in good faith or any Person obtains a non-appealable final order charging any of the Collateral under section 506(c) of the Bankruptcy Code against any Agent or the Lenders or obtains a final order adverse to any Agent or the Lenders; or

(viii)    The Canadian Final DIP Recognition Order shall not have been entered by the Canadian Court on or before the date that is 15 calendar days after the date on which the Final Order is entered by the Bankruptcy Court, which Canadian Final DIP Recognition Order shall be

in full force and effect and shall not have been reversed, modified, amended, stayed, vacated, appealed or subject to pending appeal or otherwise challenged or subject to challenge in any respect without prior consent of the Lenders; or

(ix)    Any of the Loan Parties shall fail to comply with the terms and conditions of any Chapter 11 Order or order granted in the Canadian Recognition Proceedings in any material respect and such failure is not cured within two (2) Business Days of the earlier of the Borrower having knowledge thereof and any written notice by the Administrative Agent (at the direction of the Lenders); or

(x)    The Bankruptcy Court shall enter an order appointing a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code, or a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in subclauses (3) and (4) of clause (a) of Section 1106 of the Bankruptcy Code) under clause (b) of Section 1106 of the Bankruptcy Code in the Chapter 11 Cases (or any Loan Party or any of its Subsidiaries or Affiliates shall file, or otherwise support, any pleading, application or motion seeking such relief described in this clause (x)); or

(xi)    The entry of an order by the Bankruptcy Court terminating or modifying the exclusive right of any Debtor to file a Plan of Reorganization pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the Lenders; or

(xii)    The Loan Parties or any of their controlled Affiliates shall support (in any such case by way of any motion, application or other pleading filed with the Bankruptcy Court or Canadian Court or any other writing to another party-in-interest executed by or on behalf of the Loan Parties or any of their Subsidiaries) any other Person's opposition of any motion made in the Bankruptcy Court or Canadian Court by the Lenders seeking confirmation of the amount of the Lenders' claim or the validity and enforceability of the Liens in favor of the Collateral Agent; or

(xiii)    (A) The Loan Parties or any of their Affiliates shall seek to, or shall support (in any such case by way of any motion, application or other pleading filed with the Bankruptcy Court or Canadian Court or any other writing to another party-in-interest executed by or on behalf of the Loan Parties or any of their Subsidiaries) any other Person's motion to, disallow in whole or in part the Lenders' claim in respect of the Obligations or to challenge the validity and enforceability of the Liens in favor of the Collateral Agent or contest any material provision of any Loan Document, (B) any Loan Party shall attempt to invalidate, reduce or otherwise impair the Liens or security interests of the Collateral Agent or the Lenders or to subject any Collateral to assessment pursuant to section 506(c) of the Bankruptcy Code, (C) any Liens on the Collateral securing the Obligations and/or super-priority claims shall otherwise, for any reason, cease to be valid, perfected and enforceable in all respects, (D) any action is commenced by the Loan Parties that contests the validity, perfection or enforceability of any of the Liens and security interests of the Collateral Agent or the Lenders created by the DIP Order, the applicable Canadian Orders or the Loan Documents, or (E) any material provision of any Loan Document shall cease to be effective; or

(xiv)    Any judgments which are in the aggregate in excess of $2,500,000 as to any postpetition obligation shall be rendered against any of the Loan Parties and the enforcement thereof shall not be stayed; or

(xv)    (A) The Loan Parties or any of their Affiliates shall file any pleading, application, motion or proceeding which results in a material impairment of the rights or interests of the Lenders or (B) entry of an order of the Bankruptcy Court or Canadian Court with respect to any pleading, application, motion or proceeding brought by any other Person which results in such a material impairment of the rights or interests of the Lenders; or

(xvi)    Any Loan Party or any of their Affiliates shall have filed a motion seeking the entry of, or the Bankruptcy Court or Canadian Court shall have entered, an order approving a payment to any Person (whether in cash or other property or whether as adequate protection, settlement of a dispute, or otherwise) that would be materially inconsistent with the treatment of any such Person under the Approved Budget or First Day Orders or Second Day Orders, without the prior written consent of the Lenders; or

(xvii)    Any Loan Party files or publicly announces its intention to file a Plan of Reorganization that is not an Acceptable Plan, without the prior written consent of the Lenders; or

(xviii)    An order shall be entered by the Bankruptcy Court transferring the Chapter 11 Cases to any other court; or

(xix)    The Canadian Court shall enter an order appointing a receiver, interim receiver, trustee or similar official in respect of any of the Canadian Debtors or Canadian Collateral (other than, for certainty, the appointment of the Information Officer); or

(xx)    [Reserved]; or

(xxi)    [Reserved]; or

(xxii)    The Bidding Procedures Order is amended, supplemented or otherwise modified so as to prevent or otherwise hinder the Lenders (or the Agents on behalf of the Lenders) from credit bidding the full amount of the Obligations (including, for the avoidance of doubt, the Obligations in respect of the Prepetition Term Loans) without the prior written consent of the Lenders; or

(xxiii)    The occurrence of a "Cash Collateral Termination Event" or "Event of Default" (or similar event) under the UST Adequate Protection Order or the DIP Order; or

(xxiv)    Any Loan Party or any of their Affiliates shall have filed a motion seeking the entry of, or the Bankruptcy Court or Canadian Court shall have entered, an order approving a payment to any person that would be inconsistent with the Approved Budget (subject to Permitted Variances); or the proceeds of any Loan shall have been expended in a manner that is not in accordance with the Approved Budget (subject to Permitted Variances); or

(xxv)    The filing of any Plan of Reorganization that does not propose to indefeasibly repay the Obligations and the Junior DIP Obligations in full in cash; or

(xxvi)    [Reserved]; or

(xxvii)    Failure to meet any milestone set forth on Appendix E hereto (the "**Chapter 11 Milestones**") when required, unless extended or waived in writing (which may be via email) by the Junior DIP Lenders.

Section 8.02    ~~Section 8.02.   *Remedies Upon Event of Default*.  If any Event of Default occurs and is continuing the Administrative Agent may, and at the request of the Required Lenders shall, take any or all of the following actions:~~

.  Subject to the terms and conditions of the DIP Order, the Senior ICA Provisions, the Prepetition ABL Intercreditor Agreement and, solely in the case of Canadian Debtors, the Canadian Orders, if any Event of Default (other than the Existing Defaults) occurs and is continuing the Administrative Agent may, at the request of the Lenders, take any or all of the following actions:

(i)    declare the commitment of each Lender to make Loans to be terminated, whereupon such commitments shall be terminated;

(ii)    declare the unpaid principal amount of all outstanding Loans, all interest accrued and unpaid thereon, premium ~~(including the Prepayment Premium)~~ and all other amounts owing or payable or accrued hereunder or under any other Loan Document to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived (to the extent permitted by applicable law) by the Borrower and each other Loan Party; and

(iii)    ~~subject to the terms, conditions and provisions of any Intercreditor Agreement,~~ exercise on behalf of itself and the Lenders all rights and remedies available to it and the Lenders under the Loan Documents or applicable Law~~;~~ (including, for greater certainty, seeking the appointment of a receiver).

~~*provided* that upon the occurrence of an actual or deemed entry of an order for relief with respect to the Borrower under the Bankruptcy Code of the United States, the obligation of each Lender to make Loans shall automatically terminate, the unpaid principal amount of all outstanding Loans and all interest, premium (including the Prepayment Premium) and other amounts as aforesaid shall automatically become due and payable, in each case without further act of the Administrative Agent or any Lender, and without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived (to the extent permitted by applicable law) by the Borrower and each other Loan Party.~~

In addition, subject to the giving of five (5) calendar days' written notice as set forth below and to the terms and conditions of the DIP Order and the Senior ICA Provisions in all respects, (i) the use by the Borrower and its Subsidiaries of Cash Collateral shall terminate and (ii) the automatic stay provided in Section 362 of the Bankruptcy Code shall be deemed automatically vacated without further action or order of the Bankruptcy Court and the Administrative Agent and the Lenders shall be entitled to exercise all of their respective rights and remedies under the Loan Documents and the DIP Order, including all rights and remedies with respect to the Collateral and the Guarantors. In addition to the remedies set forth above, the Administrative Agent may exercise any other remedies provided for by this Agreement and the other Loan Documents in accordance with the terms hereof and thereof or any other remedies provided by the DIP Order or applicable law, subject to the Senior ICA Provisions and the terms and conditions of the DIP Order and the Canadian Orders. Notwithstanding the foregoing, any exercise of remedies is subject to the requirement of the giving of five (5) calendar days' prior written notice (which may be via e-mail) to counsel for the Loan Parties (including Canadian counsel), the Office of the U.S. Trustee, lead restructuring counsel for the Junior DIP Lenders, lead restructuring counsel for the Junior DIP Agent, counsel for the Official Committee and counsel to the Information Officer, in accordance with the terms of the DIP Order and, solely in the case of the Canadian Collateral, the terms of the DIP Order and the Canadian Orders.

Section 8.03    ~~Section 8.03.   *Exclusion of Immaterial Subsidiaries*~~*[Reserved]*.   ~~Solely for the purpose of determining whether a Default or an Event of Default has occurred under clause (f) or (g) of Section 8.01, any reference in any such clause to any Restricted Subsidiary or Loan Party shall be deemed not to include any Restricted Subsidiary affected by any event or circumstances referred to in any such clause that was, as of the last day of the most recent completed fiscal quarter of the Borrower, an Immaterial Subsidiary.~~

~~.~~

Section 8.04    ~~Section 8.04.   *Application of Funds*~~.   Subject to <u>the final sentence of Section 13.08 and</u> the terms, conditions<u>, priorities</u> and provisions of ~~each~~<u>the DIP Order, the Canadian Orders (solely in the case of Canadian Collateral, and for certainty, subject to the Canadian Priority Charges), the Senior ICA Provisions and the Prepetition ABL</u> Intercreditor Agreement, after the exercise of remedies provided for in Section 8.02 ~~(or after the Loans have automatically become immediately due and payable as set forth in the proviso to Section 8.02)~~, any amounts received on account of the Obligations shall be applied by the Administrative Agent in the following order (to the fullest extent permitted by mandatory provisions of applicable Law):

*First*, to payment of that portion of the Obligations constituting fees, indemnities, expenses and other amounts (other than principal and interest, but including Attorney Costs payable under Section 10.05 and amounts payable under Article 3) payable to the Administrative Agent or the Collateral Agent in its capacity as such;

*Second*, to payment of that portion of the Obligations constituting fees, indemnities, premium ~~(including the Prepayment Premium)~~ and other amounts (other than principal and interest) payable to the Lenders (including Attorney Costs payable under Section 10.05 and amounts payable under Article 3), ratably among them in proportion to the amounts described in this clause *Second* payable to them;

*Third*, to payment of that portion of the Obligations constituting accrued and unpaid interest on the Loans, ratably among the Secured Parties in proportion to the respective amounts described in this clause *Third* payable to them;

*Fourth*, to payment of that portion of the Obligations constituting unpaid principal of the Loans, ratably among the Secured Parties in proportion to the respective amounts described in this clause *Fourth* held by them;

*Fifth*, to the payment of all other Obligations of the Borrower that are due and payable to the Administrative Agent and the other Secured Parties on such date, ratably based upon the respective aggregate amounts of all such Obligations owing to the Administrative Agent and the other Secured Parties on such date; and

*Last*, the balance, if any, after all of the Obligations (other than contingent obligations) have been paid in full, to the Borrower or as otherwise required by Law.

# ARTICLE 9
### THE ADMINISTRATIVE AGENT AND THE COLLATERAL AGENT

Each Lender hereby irrevocably appoints the Administrative Agent and the Collateral Agent (for purposes of this Article 9, the Administrative Agent and the Collateral Agent are referred to collectively as the "**Agents**") its agent and authorizes the Agents to take such actions on its behalf and to exercise

such powers as are delegated to such Agent by the terms of the Loan Documents, together with such actions and powers as are reasonably incidental or related thereto.  Without limiting the generality of the foregoing, the Agents are hereby expressly authorized to (i) execute any and all documents ~~(including releases)~~ with respect to the Collateral and the rights of the Secured Parties with respect thereto, as contemplated by and in accordance with the provisions of this Agreement and the ~~Collateral Documents (including, for the avoidance of doubt, (x) the ABL Intercreditor Agreement, including any amendment or supplement expressly contemplated thereby and (y) upon the incurrence of any Permitted Junior Priority Additional Debt, the Junior Lien Intercreditor Agreement)~~other Loan Documents and (ii) negotiate, enforce or settle any claim, action or proceeding affecting the Lenders in their capacity as such, at the direction of the ~~Required~~ Lenders, which negotiation, enforcement or settlement will be binding upon each Lender.

The institution serving as the Administrative Agent and/or the Collateral Agent hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not an Agent, and such bank and its Affiliates may accept deposits from, lend money to and generally engage in any kind of business with the Borrower or any Subsidiary or other Affiliate thereof as if it were not an Agent hereunder.  The Agents shall not, except as expressly set forth herein and in the other Loan Documents, have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to the Borrower or any Loan Party that is communicated or obtained by the Person serving as Administrative Agent or Collateral Agent, as applicable, or any of their Affiliates in any capacity.

Neither Agent shall have any duties or obligations except those expressly set forth in the Loan Documents.  Without limiting the generality of the foregoing, (a) neither Agent shall be subject to any fiduciary or other implied duties, regardless of whether ~~a~~an Event of Default or Default has occurred and is continuing, (b) neither Agent shall have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby that such Agent is instructed in writing to exercise by the ~~Required Lenders (or such other number or percentage of the Lenders as shall be necessary under the circumstances as provided in Section 10.08)~~Lenders, and (c) except as expressly set forth in the Loan Documents, neither Agent shall have any duty to disclose, nor shall it be liable for the failure to disclose, any information relating to the Borrower or any of the Subsidiaries that is communicated to or obtained by the bank serving as Administrative Agent and/or Collateral Agent or any of its Affiliates in any capacity.  Neither Agent shall be liable for any action taken or not taken by it with the consent or at the request of the ~~Required Lenders (or such other number or percentage of the Lenders as shall be necessary under the circumstances as provided in Section 10.08)~~Lenders or in the absence of its own gross negligence or willful misconduct as determined by the final non-appealable judgment of a court of competent jurisdiction.  Notwithstanding the foregoing, no action nor any omission to act, taken by either Agent at the direction of the ~~Required Lenders (or such other number of percentage of Lenders as shall be expressly provided for herein or in the other Loan Documents)~~Lenders shall constitute gross negligence or willful misconduct. Neither Agent shall be deemed to have knowledge of any Event of Default or Default unless and until written notice thereof, conspicuously labeled as a "notice of default" and specifically describing such Event of Default or Default, is given to such Agent by the Borrower or a Lender, and neither Agent shall be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with any Loan Document, (ii) the contents of any certificate, report or other document delivered thereunder or in connection therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth in any Loan Document, (iv) the validity, enforceability, effectiveness or genuineness of any Loan Document or any other agreement, instrument or document, or (v) the satisfaction of any condition set forth in Article 4 or elsewhere in any Loan Document, other than to confirm receipt of items expressly required to be delivered to such Agent.

Each Agent shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing believed by it in good faith to be genuine and to have been signed or sent by the proper Person. Each Agent may also rely upon any statement made to it orally or by telephone and believed by it in good faith to have been made by the proper Person, and shall not incur any liability for relying thereon. Each Agent may consult with legal counsel (who may be counsel for the Borrower), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

Each Agent may perform any and all its duties and exercise its rights and powers by or through any one or more sub-agents appointed by it. Each Agent and any such sub-agent may perform any and all its duties and exercise its rights and powers by or through their respective Related Parties. The exculpatory provisions of the preceding paragraphs shall apply to any such sub-agent and to the Related Parties of each Agent and any such sub-agent, and shall apply to their respective activities in connection with the arrangement of the Facilities as well as activities as Agent.

Either Agent may resign at any time by notifying the Lenders and the Borrower in writing, and either Agent may be removed at any time with or without cause by an instrument or concurrent instruments in writing delivered to the Borrower and such Agent and signed by the ~~Required~~ Lenders. Upon any such resignation or removal, the ~~Required~~ Lenders shall have the right, ~~with~~without the consent of the Borrower ~~(which consent shall not be required during the continuance of an Event of Default under Sections 8.01(a), (f) or (g))~~, to appoint a successor. If no successor shall have been so appointed by the ~~Required Lenders (with the consent of the Borrower (which consent shall not be required during the continuance of an Event of Default under Sections 8.01(a), (f) or (g)))~~Lenders and shall have accepted such appointment within 30 days after (i) the retiring Agent gives notice of its resignation or (ii) the ~~Required~~ Lenders ~~delivers~~deliver removal instructions, then the retiring or removed Agent may, on behalf of the Lenders ~~(with the consent of the Borrower (which consent shall not be required during the continuance of an Event of Default under Sections 8.01(a), (f) or (g)))~~, appoint a successor Agent which shall be a bank with an office in New York, New York, or an Affiliate of any such bank. If no successor Agent has been appointed pursuant to the immediately preceding, such Agent's resignation or removal shall become effective and the ~~Required~~ Lenders shall thereafter perform all the duties of such Agent hereunder and/or under any other Loan Document until such time, if any, as the ~~Required Lenders (with the consent of the Borrower (which consent shall not be required during the continuance of an Event of Default under Sections 8.01(a), (f) or (g)))~~Lenders appoint a successor Administrative Agent and/or Collateral Agent, as the case may be. Upon the acceptance of its appointment as Agent hereunder by a successor, such successor shall succeed to and become vested with all the rights, powers, privileges and duties of its predecessor Agent, and its predecessor Agent shall be discharged from its duties and obligations hereunder. The fees payable by the Borrower to a successor Agent shall be the same as those payable to its predecessor unless otherwise agreed between the Borrower and such successor. After an Agent's resignation hereunder, the provisions of this Article and Section 10.05 shall continue in effect for the benefit of such retiring Agent, its sub-agents and their respective Related Parties in respect of any actions taken or omitted to be taken by any of them while acting as Agent.

Each Lender acknowledges that it has, independently and without reliance upon the Agents or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement. Each Lender also acknowledges that it will, independently and without reliance upon the Agents or any other Lender and based on such documents and information as it shall from time to time deem appropriate, continue to make its own

decisions in taking or not taking action under or based upon this Agreement or any other Loan Document, any related agreement or any document furnished hereunder or thereunder.

Each Lender acknowledges and agrees that Alter Domus Products Corp. or one or more of its Affiliates may (but is not obligated to) act as collateral agent or representative for the holders of ~~ABL Facility~~Prepetition Indebtedness, ~~UST Tranche A Facility Indebtedness, UST Tranche B Facility Indebtedness, Permitted Junior Priority Additional Debt, any Extended Term Loan or any Permitted Refinancing thereof~~ and/or Junior DIP Obligations and/or under the collateral agreements with respect thereto ~~and/or under the ABL Intercreditor Agreement or the Junior Lien Intercreditor Agreement~~. Each Lender waives any conflict of interest, now contemplated or arising hereafter, in connection therewith and agrees not to assert against Alter Domus Products Corp. or any of its Affiliates any claims, causes of action, damages or liabilities of whatever kind or nature relating thereto.

In case of the pendency of any case or proceeding under any ~~insolvency~~Debtor Relief Laws or other similar law or any other judicial proceeding relative to any Loan Party, the Administrative Agent (irrespective of whether the principal of any Loan shall then be due and payable as herein expressed or by declaration or otherwise and irrespective of whether the Administrative Agent shall have made any demand on the Borrower) shall be entitled and empowered (but not obligated) by intervention in such proceeding or otherwise to: (a) to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of the Loans and all other Obligations that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of the Lenders and the Administrative Agent (including any claim for the reasonable compensation, expenses, disbursements and advances of the Lenders and the Administrative Agent and their respective agents and counsel and all other amounts due the Lenders, the Agents under <u>Section 2.05</u>, <u>Section 3.01</u>, and <u>Section 10.05</u>) allowed in such judicial proceeding; and (b) to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same; and any custodian, receiver, interim receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Lender to make such payments to the Administrative Agent and, in the event that the Administrative Agent shall consent to the making of such payments directly to the Lenders, to pay to the Agents any amount due for the reasonable compensation, expenses, disbursements and advances of the Administrative Agent and its agents and counsel, and any other amounts due to the Agents under <u>Section 2.05</u> and <u>Section 10.05</u>. Nothing contained herein shall be deemed to authorize the Administrative Agent to authorize or consent to or accept or adopt on behalf of any Lender any plan of reorganization, arrangement, adjustment or composition affecting the Obligations or the rights of any Lender or to authorize the Administrative Agent to vote in respect of the claim of any Lender in any such proceeding.

The Lenders hereby irrevocably authorize the Administrative Agent (or its designee), at the direction of the ~~Required~~ Lenders, to credit bid all or any portion of the Obligations (including accepting some or all of the Collateral in satisfaction of some or all of the Obligations pursuant to a deed in lieu of foreclosure or otherwise) and in such manner purchase (either directly or through one or more acquisition vehicles) all or any portion of the Collateral (a) at any sale thereof conducted under the provisions of the Bankruptcy Code of the United States, including under Sections 363, 1123 or 1129 of the Bankruptcy Code of the United States, the CCAA,  or any similar laws in any other jurisdictions to which a Loan Party is subject, (b) at any other sale or foreclosure or acceptance of collateral in lieu of debt conducted by (or with the consent or at the direction of) the Administrative Agent (whether by judicial action or otherwise) in accordance with any amounts owed to the Agents shall be entitled to be, and shall be, credit bid on a ratable basis (with Obligations with respect to contingent or unliquidated claims receiving contingent interests in the acquired assets on a ratable basis that would vest upon the liquidation of such claims in an amount proportional to the liquidated portion of the contingent claim amount used in allocating the contingent interests) in the asset or assets so purchased (or in the stock or debt instruments

of the acquisition vehicle or vehicles that are used to consummate such purchase). In connection with any such bid (i) the Administrative Agent shall be authorized to form one or more acquisition vehicles to make a bid, (ii) to adopt documents providing for the governance of the acquisition vehicle or vehicles (provided, that, any actions by the Administrative Agent with respect to such acquisition vehicle or vehicles, including any disposition of the assets or stock thereof shall be governed, directly or indirectly, by the vote of the ~~Required~~ Lenders, irrespective of the termination of this Agreement, (iii) the Administrative Agent shall be authorized to assign the relevant Obligations to any such acquisition vehicle pro rata by the Lenders, as a result of which each of the Lenders shall be deemed to have received a pro rata portion of any stock and/or debt instruments issued by such an acquisition vehicle on account of the assignment of the Obligations to be credit bid, all without the need for the Administrative Agent or acquisition vehicle to take any further action, and (iv) to the extent that Obligations that are assigned to an acquisition vehicle are not used to acquire Collateral for any reason (as a result of another bid being higher or better, because the amount of Obligations assigned to the acquisition vehicle exceeds the amount of debt credit bid by the acquisition vehicle or otherwise), such Obligations shall automatically be reassigned to the each Lenders pro rata and the stock and/or debt instruments issued by any acquisition vehicle on account of the Obligations that had been assigned to the acquisition vehicle shall automatically be cancelled, without the need for the Administrative Agent or any acquisition vehicle to take any further action.

The provisions of this Section shall survive the resignation or replacement of the Administrative Agent or Collateral Agent, the termination of the Loan Documents, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any Loan Document.

## ARTICLE 10
### Miscellaneous

Section 10.01    ~~Section   10.01.~~ *Notices; Electronic Communications.*    Notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by email or fax, as follows:

(a)                                     if to the Borrower or any other Loan Party, to it at:

Yellow Corporation
Attention of Chief Financial Officer and General Counsel
10990 Roe Avenue
Overland Park, Kansas 66211
Fax No. 913-696-6116
Tel. No. ~~913-696-6529 or 913-696-6132~~913-696-6529 or 913-696-6132
~~Email:       stephanie.fisher@yrcw~~Email:       Dan.Olivier@myYellow.com       and
~~jim.fry@yrcw~~Leah.Dawson@myYellow.com

With copy to:

Kirkland & Ellis LLP
Attention of Michelle Kilkenney, Esq. and Patrick Nash, Esq.
300 North LaSalle
Chicago, Illinois 60654
Fax No. 312-862-2200
Tel. No. ~~312-862-2487~~ 312-862-2487
~~Email: michelle~~Email: michelle.kilkenney@kirkland.com; Patrick.nash@kirkland.com

and to:

Goodmans LLP
Attention of Robert J. Chadwick and Caroline Descours
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7
Email: rchadwick@goodmans.ca; cdescours@goodmans.ca

(b)         if to the Administrative Agent, to:

Alter Domus Products Corp.
225 W. Washington Street, 9th Floor
Chicago, Illinois 60606
Attention: Legal Department ~~and Lisa Schutz~~ – Agency, Emily Ergang Pappas and Chris Capezuti
Fax No.: 312-376-0751
Tel. No.: 312-564-5100
Email:  ~~legal~~legal_agency@alterdomus.com, emily.ergangpappas@alterdomus.com and cpcagency@alterdomus.com ~~and lisa.schutz@alterdomus.com~~


With a copy to:

Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Fax No.~~: 312-578-6666~~: 312-578-6666
~~Tel~~            Tel. No.: 312-263-3600
Attention: ~~Joshua M. Spencer~~Joshua M. Spencer
~~Email~~            Email: joshua.spencer@hklaw.com and alterdomus@hklaw.com

(c)    if to a Lender, to it at its address (email address or fax number) set forth on ~~Schedule 2.01~~Appendices A, B, C or D or in the Assignment and Acceptance ~~or Refinancing Amendment~~ pursuant to which such Lender shall have become a party hereto.

All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt if delivered by hand or overnight courier service or sent by fax or on the date three Business Days after dispatch by certified or registered mail if mailed, in each case delivered, sent or mailed (properly addressed) to such party as provided in this Section 10.01 or in accordance with the latest unrevoked direction from such party given in accordance with this Section 10.01.  As agreed to among the Borrower, the Administrative Agent and the applicable Lenders from time to time, notices and other communications may also be delivered by e-mail to the e-mail address of a representative of the applicable Person provided from time to time by such Person.

The Borrower hereby agrees, unless directed otherwise by the ~~Required~~ Lenders or Administrative Agent or unless the electronic mail address referred to below has not been provided by the Administrative Agent to the Borrower, that it will, or will cause its ~~Restricted~~ Subsidiaries to, provide to the Administrative Agent and/or the ~~Required~~ Lenders all information, documents and other materials that it is obligated to furnish to the Administrative Agent and/or the ~~Required~~ Lenders pursuant to the

Loan Documents or to the Lenders under Article 6, including all notices, requests, financial statements, financial and other reports, certificates and other information materials, but excluding any such communication that (i) is or relates to a Request for Credit Extension or a notice pursuant to Section 2.102.03, (ii) relates to the payment of any principal or other amount due under this Agreement prior to the scheduled date therefor, or (iii) provides notice of any Default or Event of Default under this Agreement or any other Loan Document, (all such non-excluded communications being referred to herein collectively as "**Communications**"), by transmitting the Communications in an electronic/soft medium that is properly identified in a format reasonably acceptable to the Administrative Agent and/or the Required Lenders to an electronic mail address as directed by the Administrative Agent and/or the Required Lenders.  In addition, the Borrower agrees, and agrees to cause its Restricted Subsidiaries, to continue to provide the Communications to the Administrative Agent, the Required Lenders or the Lenders, as the case may be, in the manner specified in the Loan Documents but only to the extent requested by the Administrative Agent.

The Borrower hereby acknowledges that (a) the Administrative Agent will make available to the Lenders materials and/or information provided by or on behalf of the Borrower hereunder (collectively, the "**Borrower Materials**") by posting the Borrower Materials on Intralinks or another similar electronic system (the "**Platform**") and (b) certain of the Lenders may be "public-side" Lenders (i.e., Lenders that do not wish to receive material non-public information with respect to the Borrower, its Restricted Subsidiaries or any of their respective securities) (each, a "**Public Lender**").  The Borrower hereby agrees (w) to use commercially reasonable effort to make all Borrower Materials that are to be made available to Public Lenders clearly and conspicuously "PUBLIC" which, at a minimum, shall mean that the word "PUBLIC" shall appear prominently on the first page thereof; (x) by marking Borrower Materials "PUBLIC," the Borrower shall be deemed to have authorized the Administrative Agent and the Lenders to treat such Borrower Materials as not containing any material non-public information with respect to the Borrower or any of its securities for purposes of United States federal and state securities laws (provided, however, that to the extent such Borrower Materials constitute Information, they shall be treated as set forth in Section 10.16); (y) all Borrower Materials marked "PUBLIC" are permitted to be made available through a portion of the Platform designated as "Public Investor;" and (z) the Administrative Agent shall be entitled to treat any Borrower Materials that are not marked "PUBLIC" as being suitable only for posting on a portion of the Platform not marked as "Public Investor." Notwithstanding the foregoing, the following Borrower Materials shall be marked "PUBLIC," unless the Borrower notifies the Administrative Agent promptly that any such document contains material non-public information: (1) the Loan Documents, (2) financial statements and related documentation, in each case, provided pursuant to Section 6.01(a) or 6.01(b) and (3) notification of changes in the terms of the Facilities.

Each Public Lender agrees to cause at least one individual at or on behalf of such Public Lender to at all times have selected the "Private Side Information" or similar designation on the content declaration screen of the Platform in order to enable such Public Lender or its delegate, in accordance with such Public Lender's compliance procedures and applicable Law, including United States Federal and state securities laws, to make reference to Communications that are not made available through the "Public Side Information" portion of the Platform and that may contain material non-public information with respect to the Borrower, its Restricted Subsidiaries or any of their respective securities for purposes of United States Federal or state securities laws.

THE PLATFORM IS PROVIDED "AS IS" AND "AS AVAILABLE".  NEITHER THE ADMINISTRATIVE AGENT NOR ANY OF ITS RELATED PARTIES WARRANTS THE ACCURACY OR COMPLETENESS OF THE COMMUNICATIONS OR THE ADEQUACY OF THE PLATFORM AND EACH EXPRESSLY DISCLAIMS LIABILITY FOR ERRORS OR OMISSIONS IN THE COMMUNICATIONS.  NO WARRANTY OF ANY KIND, EXPRESS, IMPLIED OR

STATUTORY, INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT OF THIRD PARTY RIGHTS OR FREEDOM FROM VIRUSES OR OTHER CODE DEFECTS IS MADE BY THE ADMINISTRATIVE AGENT OR ANY OF ITS RELATED PARTIES IN CONNECTION WITH THE COMMUNICATIONS OR THE PLATFORM.   IN NO EVENT SHALL THE ADMINISTRATIVE AGENT OR ANY OF ITS RELATED PARTIES HAVE ANY LIABILITY TO ANY LOAN PARTY, ANY LENDER OR ANY OTHER PERSON FOR DAMAGES OF ANY KIND, WHETHER OR NOT BASED ON STRICT LIABILITY AND INCLUDING DIRECT OR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, LOSSES OR EXPENSES (WHETHER IN TORT, CONTRACT OR OTHERWISE) ARISING OUT OF ANY LOAN PARTY'S OR THE ADMINISTRATIVE AGENT'S TRANSMISSION OF COMMUNICATIONS THROUGH THE INTERNET, EXCEPT TO THE EXTENT THE LIABILITY OF ANY SUCH PERSON IS FOUND IN A FINAL NON-APPEALABLE RULING BY A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED FROM SUCH PERSON'S OR ITS RELATED PARTIES' GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR BAD FAITH, IN EACH CASE, AS DETERMINED BY THE FINAL NON-APPEALABLE JUDGMENT OF A COURT OF COMPETENT JURISDICTION.

The Administrative Agent agrees that the receipt of the Communications by the Administrative Agent at its e-mail address set forth above shall constitute effective delivery of the Communications to the Administrative Agent for purposes of the Loan Documents.  Each Lender agrees that receipt of notice to it (as provided in the next sentence) specifying that the Communications have been posted to the Platform shall constitute effective delivery of the Communications to such Lender for purposes of the Loan Documents.  Each Lender agrees to notify the Administrative Agent in writing (including by electronic communication) from time to time of such Lender's e-mail address to which the foregoing notice may be sent by electronic transmission and that the foregoing notice may be sent to such e-mail address.

Nothing herein shall prejudice the right of the Administrative Agent or any Lender to give any notice or other communication pursuant to any Loan Document in any other manner specified in such Loan Document.

Section 10.02   ~~Section  10.02.~~   *Survival of Agreement.*    All covenants, agreements, representations and warranties made by the Borrower herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Agreement or any other Loan Document shall be considered to have been relied upon by the Lenders and shall survive the making by the Lenders of the Loans, regardless of any investigation made by the Lenders or on their behalf or that any Agent or Lender may have had notice of any Default or Event of Default at the time of any Credit Extension, and shall continue in full force and effect as long as the principal of or any accrued interest on any Loan or any Fee or any other amount payable under this Agreement or any other Loan Document is outstanding and unpaid and so long as the Commitments have not been terminated.   The provisions of ~~Sections~~Section 3.01, Section 3.03 Article 9 and Section 10.05 shall remain operative and in full force and effect regardless of the expiration of the term of this Agreement, the consummation of the transactions contemplated hereby, the repayment of any of the Loans, the expiration of the Commitments, the invalidity or unenforceability of any term or provision of this Agreement or any other Loan Document, or any investigation made by or on behalf of the Administrative Agent, the Collateral Agent or any Lender.

Section 10.03   ~~Section  10.03.~~  *Binding Effect.*  This Agreement shall become effective when it shall have been executed and delivered by the Borrower, each other Loan Party ~~party~~ hereto on the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date and the Administrative Agent and when the

Administrative Agent shall have received counterparts hereof which, when taken together, bear the signatures of each of the other parties hereto.

Section 10.04    ~~Section 10.04.~~  *Successors and Assigns*.

(a)    Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the permitted successors and assigns of such party; and all covenants, promises and agreements by or on behalf of the Borrower, the Administrative Agent, the Collateral Agent or the Lenders that are contained in this Agreement shall bind and inure to the benefit of their respective permitted successors and assigns.

(b)    Each Lender may assign to one or more Eligible Assignees all or a portion of its interests, rights and obligations under this Agreement (including all or a portion of the Loans at the time owing to it)~~, with the prior written consent of the Administrative Agent (not to be unreasonably withheld, conditioned or delayed)~~; *provided, however*, (i) the amount of the Commitment or Loans of the assigning Lender subject to each such assignment (determined as of the date the Assignment and Acceptance with respect to such assignment is delivered to the Administrative Agent) shall be in an integral multiple of, and not less than, $1,000,000 (or, if less, the entire remaining amount of such Lender's Commitment or Loans of the relevant Class) unless the Administrative Agent otherwise agrees; *provided* that simultaneous assignments by two or more Related Funds shall be combined for purposes of determining whether the minimum assignment requirement is met, (ii) the parties to each assignment shall (A) execute and deliver to the Administrative Agent an Assignment and Acceptance via an electronic settlement system acceptable to the Administrative Agent or (B) if previously agreed with the Administrative Agent, manually execute and deliver to the Administrative Agent an Assignment and Acceptance, and, in each case, shall pay to the Administrative Agent a processing and recordation fee of $3,500; *provided* that (x) simultaneous assignments by two or more Related Funds shall require the payment of a single processing and recordation fee of $3,500 and (y) such processing and recordation fee may be waived or reduced in the sole discretion of the Administrative Agent and (iii) the assignee, if it shall not be a Lender, shall deliver to the Administrative Agent an Administrative Questionnaire (in which the assignee shall designate one or more credit contacts to whom all Lender-level information (which may contain material non-public information about the Loan Parties and their Related Parties or their respective securities) will be made available and who may receive such information in accordance with the assignee's compliance procedures and applicable Laws, including Federal and state securities laws), all documentation and other information reasonably determined by the Administrative Agent to be required by applicable regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT Act, and all applicable tax forms (including such documentation required under Section 3.01(d)). Upon acceptance and recording pursuant to paragraph (e) of this Section 10.04, from and after the effective date specified in each Assignment and Acceptance, (A) the assignee thereunder shall be a party hereto and, to the extent of the interest assigned by such Assignment and Acceptance, have the rights and obligations of a Lender under this Agreement and (B)  the assigning Lender thereunder shall, to the extent of the interest assigned by such Assignment and Acceptance, be released from its obligations under this Agreement (and, in the case of an Assignment and Acceptance covering all or the remaining portion of an assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto but shall continue to be entitled to the benefits of Sections 3.01, 3.03 and 10.05).  Upon request and the surrender by the assigning Lender of its Term Note (if any), the Borrower (at its expense) shall execute and deliver a Term Note to the assignee Lender.

(c)    By executing and delivering an Assignment and Acceptance, the assigning Lender thereunder and the assignee thereunder shall be deemed to confirm to and agree with each other and the other parties hereto as follows: (i) such assigning Lender warrants that it is the legal and beneficial owner

of the interest being assigned thereby free and clear of any adverse claim and the outstanding balances of its Term Loans without giving effect to assignments thereof which have not become effective, are as set forth in such Assignment and Acceptance; (ii) except as set forth in (i) above, such assigning Lender makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with this Agreement, or the execution, legality, validity, enforceability, genuineness, sufficiency or value of this Agreement, any other Loan Document or any other instrument or document furnished pursuant hereto, or the financial condition of the Borrower or any Subsidiary or the performance or observance by the Borrower or any Subsidiary of any of its obligations under this Agreement, any other Loan Document or any other instrument or document furnished pursuant hereto; (iii) such assignee represents and warrants that it is an Eligible Assignee legally authorized to enter into such Assignment and Acceptance; (iv) such assignee confirms that it has received a copy of this Agreement and the other Loan Documents, together with copies of the most recent financial statements referred to in Section 5.05 or delivered pursuant to Section 6.01 and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into such Assignment and Acceptance; (v) such assignee will independently and without reliance upon the Administrative Agent, the Collateral Agent, such assigning Lender or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement; (vi) such assignee appoints and authorizes the Administrative Agent and the Collateral Agent to take such action as agent on its behalf and to exercise such powers under this Agreement and the other Loan Documents as are delegated to the Administrative Agent and the Collateral Agent, respectively, by the terms hereof or thereof, together with such powers as are reasonably incidental or related thereto; and (vii) such assignee agrees that it will perform in accordance with their terms all the obligations which by the terms of this Agreement are required to be performed by it as a Lender.

(d)    The Administrative Agent, acting for this purpose as a non-fiduciary agent of the Borrower, shall maintain at one of its offices a copy of each Assignment and Acceptance delivered to it and a register for the recordation of the names and addresses of the Lenders, and the Commitment of, and principal amount of and the interest on the Loans owing to, each Lender pursuant to the terms hereof from time to time (the "**Register**").  The entries in the Register shall be conclusive absent manifest error and the Borrower, the Administrative Agent, the Collateral Agent and the Lenders shall treat each Person whose name is recorded in the Register pursuant to the terms hereof as a Lender hereunder for all purposes of this Agreement, notwithstanding notice to the contrary.  The Register shall be available for inspection by the Borrower, the Collateral Agent and, as to entries pertaining to it, any Lender, at any reasonable time and from time to time upon reasonable prior written notice.  This Section 10.04(d) shall be construed so that all Loans are at all times maintained in "registered form" within the meaning of Section 163(f), 871(h)(2) and 881(c)(2) of the Code and any related Treasury regulations (or any other relevant or successor provisions of the Code or of such Treasury regulations).

(e)    Upon its receipt of, and consent to, a duly completed Assignment and Acceptance executed by an assigning Lender and an assignee, an Administrative Questionnaire completed in respect of the assignee (unless the assignee shall already be a Lender hereunder), the processing and recordation fee referred to in paragraph (b) above, if applicable, and the written consent of the Administrative Agent and, if required, the Borrower, to such assignment, and "know your customer" information requested by the Administrative Agent, and any applicable tax forms (including such documentation required under Section 3.01(d)), the Administrative Agent shall promptly (i) accept such Assignment and Acceptance and (ii) record the information contained therein in the Register. No assignment shall be effective unless it has been recorded in the Register as provided in this paragraph (e).

(f)    Each Lender may without the consent of the Borrower or the Administrative Agent sell participations to one or more banks or other Persons in all or a portion of its rights and obligations under

this Agreement (including all or a portion of its Commitment and the Loans owing to it); *provided, however*, that (i) such Lender's obligations under this Agreement shall remain unchanged, (ii) such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, (iii) the participating banks or other Persons shall be entitled to the benefit of the cost protection provisions contained in Sections 3.01 and 3.03 (subject to the requirements and limitations therein, including the requirements under Section 3.01(d) (it being understood that the documentation required under Section 3.01(d) shall be delivered to the participating Lender)) to the same extent as if they were Lenders (but with respect to any particular participant, to no greater extent than the Lender that sold the participation to such participant and only if such participant has complied with the requirements of such provisions as if it were a Lender) and (iv) the Borrower, the Administrative Agent and the Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement, and such Lender shall retain the sole right to enforce the obligations of the Borrower relating to the Loans and to approve any amendment, modification or waiver of (or consent under) any provision of this Agreement or any other Loan Document (*provided* that the agreement or instrument pursuant to which such Lender has sold a participation may provide that such Lender shall not agree to the following amendments without the consent of such participating bank or Person hereunder: amendments, modifications or waivers decreasing any fees payable to such participating bank or Person hereunder or the amount of principal of or the rate at which interest is payable on the Loans in which such participating bank has an interest; extending any scheduled principal payment date or scheduled date fixed for the payment of interest on the Loans in which such participating bank or Person has an interest; increasing or extending the Commitments in which such participating bank or Person has an interest; releasing all or substantially all of the Guarantors (other than in connection with the sale of any such Guarantor in a transaction permitted by Section 7.05) releasing all or substantially all of the Collateral or the ~~First Lien Term~~B-2 Priority Collateral or reductions in the voting thresholds; or modifying the pro rata requirements of Section ~~2.13(b), Section 2.13(c) or Section~~ 2.14, in each case, which directly and adversely affects such participants; *provided*, *further*, that, notwithstanding the foregoing, only the consent of the ~~Required~~ Lenders shall be required in respect of any amendment, modification or waiver of (i) the payment of default interest, or (ii) the occurrence of a default or an Event of Default~~, (iii) the mandatory prepayment requirements of Section 2.13 or (iv) the payment or receipt of the fee or premium pursuant to Section 2.12(d))~~.. To the extent permitted by law, each participating bank or other Person also shall be entitled to the benefits of Section 10.06 as though it were a Lender, *provided* such participating bank or other Person agrees to be subject to Section 2.15 as though it were a Lender. Each Lender that sells a participation or exercises its option under section 10.04(i) with respect to an SPV shall, acting solely for this purpose as a non-fiduciary agent of the Borrower, maintain a register on which it enters the name and address of each participant and SPV (other than any SPV that is treated as a disregarded entity of the Granting Lender for U.S. federal income tax purposes) and the principal amounts (and interest thereon) of each participant's interest in the Loans or other Obligations under this Agreement (the "**Participant Register**"); *provided* that no Lender shall have any obligation to disclose all or any portion of the Participant Register (including the identity of any Participant or SPV or any information relating to a Participant's or a SPV's interest in any commitments, loans, letters of credit or its other obligations under any Loan Document) to any Person except to the extent that such disclosure is necessary in connection with a Tax audit or other proceeding to establish that such commitment, loan, letter of credit or other obligation is in registered form under United States Treasury Regulations Section 5f.103-1(c) and proposed United States Treasury Regulations Section 1.163-5(b) (or any amended or successor version). The entries in the Participant Register shall be conclusive absent manifest error, and the Borrower, the Lenders and each Agent shall treat each Person whose name is recorded in the Participant Register as the owner of such participation for all purposes of this Agreement, notwithstanding notice to the contrary.

(g)    Any Lender or participant may, in connection with any assignment or participation or proposed assignment or participation pursuant to this Section 10.04, disclose to the assignee or

participant or proposed assignee or participant any information relating to the Borrower furnished to such Lender by or on behalf of the Borrower; *provided* that (except during the arrangement by the ~~Required~~ Lenders when customary confidentiality arrangements shall apply), prior to any such disclosure of Information, each such assignee or participant or proposed assignee or participant shall execute an agreement whereby such assignee or participant shall agree to preserve the confidentiality of such confidential information on terms no less restrictive in any material respect than those applicable to the Lenders pursuant to Section 10.16 for the benefit of (and enforceable by) the Borrower.

(h)     Any Lender may at any time assign all or any portion of its rights under this Agreement to secure extensions of credit to such Lender or in support of obligations owed by such Lender; *provided* that no such assignment shall release a Lender from any of its obligations hereunder or substitute any such assignee for such Lender as a party hereto.

(i)     Notwithstanding anything to the contrary contained herein, any Lender (a "**Granting Lender**") may grant to a special purpose funding vehicle (an "**SPV**"), identified as such in writing from time to time by the Granting Lender to the Administrative Agent and the Borrower, the option to provide to the Borrower all or any part of any Loan that such Granting Lender would otherwise be obligated to make to the Borrower pursuant to this Agreement; *provided* that (i) nothing herein shall constitute a commitment by any SPV to make any Loan, (ii) if an SPV elects not to exercise such option or otherwise fails to provide all or any part of such Loan, the Granting Lender shall be obligated to make such Loan pursuant to the terms hereof, and (iii) the Granting Lender shall for all purposes remain the Lender hereunder. The making of a Loan by an SPV hereunder shall utilize the Commitment of the Granting Lender to the same extent, and as if, such Loan were made by such Granting Lender. Each party hereto hereby agrees that no SPV shall be liable for any indemnity or similar payment obligation under this Agreement (all liability for which shall remain with the Granting Lender). In furtherance of the foregoing, each party hereto hereby agrees (which agreement shall survive the termination of this Agreement) that, prior to the date that is one year and one day after the payment in full of all outstanding commercial paper or other senior indebtedness of any SPV, it will not institute against, or join any other Person in instituting against, such SPV any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings under the laws of the United States or any State thereof. In addition, notwithstanding anything to the contrary contained in this Section 10.04, any SPV may (i) with notice to, but without the prior written consent of, the Borrower and the Administrative Agent and without paying any processing fee therefor, assign all or a portion of its interests in any Loans to the Granting Lender or to any financial institutions (consented to by the Borrower and Administrative Agent) providing liquidity and/or credit support to or for the account of such SPV to support the funding or maintenance of Loans, and (ii) disclose on a confidential basis any non-public information relating to its Loans to any rating agency, commercial paper dealer or provider of any surety, guarantee or credit or liquidity enhancement to such SPV.

(j)     The Borrower ~~(except as expressly permitted by clause (ii) of Section 7.04(d))~~ shall not assign or delegate any of its rights or duties hereunder without the prior written consent of the Administrative Agent and each Lender, and any attempted assignment without such consent shall be null and void.

~~(k) So long as no Event of Default has occurred or is continuing or would result therefrom, any Lender may, at any time, assign all or a portion of its rights and obligations under this Agreement in respect of its Term Loans to the Borrower or any of its Subsidiaries, subject to the following limitations and other provisions:~~

~~(i) such assignment shall be made pursuant to (A) an open-market transaction on a non pro rata basis or (B) a Dutch Auction open to all Lenders of the applicable Class of Term~~

Loans on a pro rata basis in accordance with the Auction Procedures (it being agreed that none of the Borrower or any other Restricted Subsidiary shall have any obligation to make any representation as to the absence of MNPI in connection therewith and such assignment shall be made pursuant to the form of Assignment and Acceptance, which shall contain customary "big boy" assurance by the assignor Lender to the effect that it is a sophisticated investor and is willing to proceed with the assignment);

(ii) the Borrower will not be entitled to receive, and will not receive, information provided solely to Lenders by the Administrative Agent or any Lender and will not be permitted to attend or participate in, and will not attend or participate in, meetings or conference calls attended solely by the Lenders and the Administrative Agent;

(iii) [reserved];

(iv) the aggregate principal amount of Term Loans purchased by the Borrower may not exceed 20% of the aggregate principal amount of all Tranche B-2 Term Loans as of the Restatement Effective Date plus the aggregate amount of all Credit Agreement Refinancing Indebtedness incurred after the Restatement Effective Date;

(v) any Term Loans purchased by the Borrower shall be automatically and permanently cancelled immediately upon acquisition by the Borrower;

(vi) notwithstanding anything to the contrary contained herein (including in the definitions of "Consolidated Net Income" and "Consolidated EBITDA") any non-cash gains in respect of "cancellation of indebtedness" resulting from the cancellation of any Term Loans purchased by the Borrower shall be excluded from the determination of Consolidated Net Income and Consolidated EBITDA; and

(vii) the purchase and cancellation of Term Loans pursuant to this Section 10.04(k) shall not constitute a voluntary or mandatory prepayment for purposes of Section 2.12 or 2.13.

Section 10.05    Section 10.05.    *Expenses; Indemnity.*

(a)    The Borrower agrees (i) promptly following (and in any event within thirty (30) days of the period set forth in the DIP Order) written demand (including documentation reasonably supporting such request) therefor, to pay or reimburse the Administrative Agent, the Collateral Agent and Apollo the Lenders for all reasonable and documented out-of-pocket costs and expenses (including, without limitation, the documented reasonable fees and expenses of Holland & Knight LLP, FTI, White & Case LLP, GrayRobinson, P.A., Osler, Hoskin & Harcourt LLP and Vedder Price P.C. (with respect to Vedder Price P.C., in an amount not to exceed $350,000 (or such greater amount as the Borrower and the Lenders may agree in writing) in the aggregate)) incurred in connection with the preparation, negotiation and execution of the DIP Term Sheet, this Agreement and the other Loan Documents, and any amendment, waiver, consent or other modification of the provisions hereof and thereof (whether or not the transactions contemplated thereby are consummated), and the consummation and administration of the transactions contemplated hereby and thereby (including Attorney Costs which in the case of the Agents, shall be limited to Attorney Costs of one counsel to the Agents, and one counsel to the Lenders (and one local counsel in each applicable jurisdiction for each group and, in the event of any actual or reasonably perceived conflict of interest, one additional counsel of each type to similarly situated parties) the Agents) and (ii) from and after the Restatement Effective Postpetition B-2 Facility Closing Date, promptly following (and in any event within thirty (30) days of the period set forth in the DIP Order) written demand (including documentation reasonably supporting such request) therefor, to pay or

reimburse the Administrative Agent, the Collateral Agent~~, Apollo~~ and each Lender promptly following written demand for all reasonable and documented out-of-pocket costs and expenses (including, without limitation, the documented fees and expenses of Holland & Knight LLP, FTI, White & Case LLP, GrayRobinson, P.A., Osler, Hoskin & Harcourt LLP and Vedder Price P.C. (with respect to Vedder Price P.C., in an amount not to exceed $350,000 (or such greater amount as the Borrower and the Lenders may agree in writing) in the aggregate)) incurred in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of any rights or remedies under the DIP Term Sheet, this Agreement or the other Loan Documents (including all such out-of-pocket costs and expenses incurred during any legal proceeding, including any proceeding under any Debtor Relief ~~Law,~~Laws and including ~~all respective~~ Attorney Costs ~~which shall be limited to Attorney Costs of one counsel to the Agents and one counsel to the Lenders (and one local counsel in each applicable jurisdiction for each group and, in the event of any actual or reasonably perceived conflict of interest, one additional counsel of each type to similarly situated parties~~)).  To the extent otherwise reimbursable by the foregoing sentence of this section, the foregoing costs and expenses shall include all reasonable search, filing, recording, title insurance, survey, environmental, property condition report and zoning report charges and fees related thereto, and other reasonable and documented out of pocket expenses incurred by any Agent. The foregoing costs and expenses shall also include all ~~mortgage recording,~~ recording and filing fees charged by governmental authorities to record and/or file Collateral Documents~~.~~

(b)   Whether or not the transactions contemplated hereby are consummated, the Loan Parties shall, jointly and severally, indemnify and hold harmless the Administrative Agent, the Collateral Agent and their respective Affiliates, successors and permitted assigns (~~or~~and the directors, officers, employees, agents, advisors and members of each of the foregoing) (each an "**Agent Indemnitee**" and collectively, the "**Agent Indemnitees**") and each Lender and their respective Affiliates, successors and permitted assigns (~~or~~and the directors, officers, employees, agents, advisors and members of each of the foregoing) (each a "Lender Indemnitee" and collectively, the "**Lender Indemnitees**"; together with, the Agent Indemnitees, collectively the "**Indemnitees**") from and against any and all actual losses, damages, claims, liabilities and reasonable documented out-of-pocket costs and expenses (including Attorney Costs which shall be limited to Attorney Costs of one outside counsel for the Agent Indemnitees and Attorney Costs of one outside counsel for the Lender Indemnitees (and, if necessary, one local counsel in each applicable jurisdiction and, in the event of any actual or reasonably perceived conflict of interest, one additional counsel for each type of similarly situated affected Indemnitees)) of any kind or nature whatsoever which may at any time be imposed on, incurred by or asserted against any Agent Indemnitee or Lender Indemnitee in any way relating to or arising out of or in connection with (i) the execution, delivery, enforcement, performance or administration of any Loan Document or any other agreement, letter or instrument delivered in connection with the transactions contemplated thereby or the consummation of the Transactions or the other transactions contemplated thereby, (ii) any Commitment or Loan or the use or proposed use of the proceeds therefrom, (iii) any actual or alleged presence or Release of Hazardous Materials at, on, under or from any property, vehicle or facility currently or formerly owned, leased or operated by the Loan Parties or any Subsidiary, or any other Environmental Liability related in any way to any Loan Parties or any Subsidiary, or (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory (including any investigation of, preparation for, or defense of any pending or threatened claim, investigation, litigation or proceeding) and regardless of whether any Agent Indemnitee or Lender Indemnitee is a party thereto and regardless of whether such matter is initiated by a third party or by the Borrower or any of its Affiliates or equityholders in all cases, whether or not caused by or arising, in whole or in part, out of the negligence of any such  Agent Indemnitee or Lender Indemnitee; provided that, notwithstanding the foregoing, such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, damages, claims, liabilities and expenses resulted from (x) the gross negligence, bad faith or willful misconduct of such Indemnitee or of any affiliate, director, officer, employee, counsel, agent or attorney-in-fact of such Indemnitee, as determined by the final

non-appealable judgment of a court of competent jurisdiction, or (y) any dispute solely among the Indemnitees other than (1) any claim against an Indemnitee in its capacity or in fulfilling its role as Administrative Agent, Collateral Agent or similar role and (2) any claim arising out of any act or omission of the Borrower or any of its Affiliates or (z) the material breach by such Indemnitee of its obligations under the Loan Documents (or any related party), as determined by the final non-appealable judgment of a court of competent jurisdiction. . No Indemnitee or any other party hereto shall be liable for any damages arising from the use by others of any information or other materials obtained through IntraLinks or other similar information transmission systems in connection with this Agreement except to the extent that such damages resulted from the (A) gross negligence, bad faith or willful misconduct of such Indemnitee or of any affiliate, director, officer, employee, counsel, agent or attorney-in-fact of such Indemnitee, as determined by the final non-appealable judgment of a court of competent jurisdiction or (B) the material breach by such Indemnitee of its or of any affiliate, director, officer, employee, counsel, agent or attorney-in-fact of such Indemnitee's obligations under the Loan Documents, as determined by the final non-appealable judgment of a court of competent jurisdiction. In the case of a claim, investigation, litigation or other proceeding to which the indemnity in this Section 10.05 applies, such indemnity shall be effective whether or not such claim, investigation, litigation or proceeding is brought by any Loan Party, any Subsidiary of any Loan Party, any Loan Party's directors, stockholders or creditors or other Affiliates or an Indemnitee or any other Person, whether or not any Indemnitee is otherwise a party thereto and whether or not any of the transactions contemplated hereunder or under any of the other Loan Documents are consummated. For the avoidance of doubt, this paragraph shall not apply with respect to Taxes other than any Taxes that represent losses, claims, damages, etc. arising from any non-Tax claim.

(c)    To the extent that any Loan Party fails to pay any amount required to be paid by them to the Administrative Agent or the Collateral Agent under paragraph (a) or (b) of this Section within the timeframe specified therein, each Lender severally agrees to indemnify and reimburse, and pay to the Administrative Agent or the Collateral Agent such the Agent Indemnitees are not reimbursed and indemnified by the Loan Parties, and without limiting the obligation of the Loan Parties to do so, the Lenders shall indemnify and hold harmless the Agent Indemnities, based on and to the extent of such Lender's pro rata share (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought) of such unpaid amount; provided that the unreimbursed expense or indemnified loss, claim, damage, liability or related expense, as the case may be, was incurred by or asserted against the Administrative Agent or the Collateral Agent in its capacity as such, from and against any and all losses, claims, damages, liabilities and related expenses (including Attorney Costs) of any kind or nature whatsoever which may at any time be imposed on, incurred by or asserted against any Agent Indemnitee in any way relating to or arising out of or in connection with this Agreement or any other Loan Document or in the performance by the Agents in its duties under the Loan Documents; provided that no Lender shall be liable for any portion of such losses, claims, damages, liabilities and related expenses resulting from any Agent Indemnitees gross negligence, bad faith or willful misconduct (as determined by a court of competent jurisdiction in a final and non-appealable decision). Without limiting the foregoing, to the extent not paid or reimbursed by the Loan Parties, each Lender shall pay or reimburse the Agent Indemnitees based on and to the extent of such Lender's pro rata share of all reasonable and documented out-of-pocket costs and expenses reimbursable pursuant to Section 10.05, incurred in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of any rights or remedies under this Agreement or the other Loan Documents (including all such out-of-pocket costs and expenses incurred during any legal proceeding, including any proceeding under any Debtor Relief Laws, and including all Attorney Costs). For purposes hereof, if the Term Loans have been paid in full prior to such determination pursuant to the immediately preceding sentence, then each such Lender's "pro rata share" shall be determined as of the last date the Term Loans were in effect immediately prior to such payment in full. The provisions of this Section shall survive the resignation or replacement of the Administrative

Agent or Collateral Agent, the termination of the Loan Documents, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any Loan Document.

(d)    ~~(e)~~ To the extent permitted by applicable Law, (i) no Loan Party shall assert, and each hereby waives, any claim against any Indemnitee and (ii) no Indemnitee shall assert, and each hereby waives, any claim against any Loan Party, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, the DIP Term Sheet, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby or thereby, the Transactions or any Loan or the use of the proceeds thereof (whether before or after the ~~Restatement Effective~~Postpetition B-2 Facility Closing Date); *provided* that the foregoing shall in no event limit the ~~Borrower's~~Loan Parties' indemnification obligations under clause (b) above.

(e)    ~~(d)~~ The provisions of this <u>Section 10.05</u> shall remain operative and in full force and effect regardless of the expiration of the term of this Agreement, the consummation of the transactions contemplated hereby, the repayment of any of the Loans, the expiration of the Commitments, the invalidity or unenforceability of any term or provision of this Agreement or any other Loan Document, or any investigation made by or on behalf of the Administrative Agent, the Collateral Agent or any Lender. ~~All amounts due under this Section 10.05 shall be payable within 30 days after written demand therefor (including documentation reasonably supporting such request).~~

Section 10.06    ~~Section 10.06.~~ *Right of Setoff.*  In addition to any rights and remedies of the Lenders provided by Law, upon the occurrence and during the continuance of any Event of Default~~,~~ (other than an Existing Default), each Lender and its Affiliates (and the Agents, in respect of any unpaid fees, costs and expenses payable hereunder) is authorized at any time and from time to time (with the prior consent of the Administrative Agent), without prior notice to any Loan Party, any such notice being waived by each Loan Party (on its own behalf and on behalf of each of its Subsidiaries), to the fullest extent permitted by applicable Law, to set off and apply any and all deposits (general or special, time or demand, provisional or final) (other than payroll accounts, trust and tax accounts, escrow accounts, employee benefits accounts or petty cash accounts) at any time held by, and other indebtedness at any time owing by, such Lender and its Affiliates or the Collateral Agent to or for the credit or the account of the respective Loan Parties against any and all matured Obligations owing to such Lender and its Affiliates or the Collateral Agent hereunder or under any other Loan Document, now or hereafter existing, irrespective of whether or not such Agent or such Lender or Affiliate shall have made demand under this Agreement or any other Loan Document and although such Obligations may be denominated in a currency different from that of the applicable deposit or Indebtedness. Each Lender agrees promptly to notify the Borrower and the Administrative Agent after any such set off and application made by such Lender; *provided*, that the failure to give such notice shall not affect the validity of such setoff and application.  The rights of the Administrative Agent, the Collateral Agent and each Lender under this <u>Section 10.06</u> are in addition to other rights and remedies (including other rights of setoff) that the Administrative Agent, the Collateral Agent and such Lender may have at Law.

Section 10.07    ~~Section 10.07.~~ *Applicable Law.*  ~~THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS (OTHER THAN AS EXPRESSLY SET FORTH IN OTHER LOAN DOCUMENTS) SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.~~

.  This Agreement and the other Loan Documents shall be governed by, and construed in accordance with, the law of the State of New York, except to the extent New York law is superseded by the Bankruptcy Code.

Section 10.08 ~~Section 10.08.~~ *Waivers; Amendment.*

(a)    No failure or delay of the Administrative Agent, the Collateral Agent or any Lender in exercising any power or right hereunder or under any other Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  The rights and remedies of the Administrative Agent, the Collateral Agent and the Lenders hereunder and under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have.  No waiver of any provision of this Agreement or any other Loan Document or consent to any departure by the Borrower or any other Loan Party therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) below, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.  No notice or demand on the Borrower in any case shall entitle the Borrower to any other or further notice or demand in similar or other circumstances.

(b)    Neither this Agreement nor any other Loan Document nor any provision hereof or thereof may be waived, amended or modified except pursuant to an agreement or agreements in writing entered into by the Administrative Agent, the Borrower and the Lenders.

~~(b) Except as provided in Section 2.18, with respect to any Refinancing Amendment, in Section 2.19 with respect to an Extension Offer or as otherwise provided herein or in a Loan Document, neither this Agreement nor any other Loan Document nor any provision hereof or thereof may be waived, amended or modified except (x) in the case of this Agreement, pursuant to an agreement or agreements in writing entered into by the Borrower and the Required Lenders and (y) in the case of any other Loan Document, pursuant to an agreement or agreements in writing entered into by each party thereto with the consent of the Required Lenders  (*provided*, that amendments to the ABL Intercreditor Agreement shall require the agreement of the Loan Parties (or any of them) only to the extent required pursuant to the terms thereof; *provided, however*, that no such agreement shall (i) decrease the principal amount of, or extend the maturity of or any scheduled principal payment date or date for the payment of any fee or any interest on any Loan, or waive or excuse any such payment or any part thereof (other than with respect to any default interest), or decrease the amount of any fee or the rate of interest on any Loan (other than with respect to any default interest), without the prior written consent of each Lender directly and adversely affected thereby (it being understood that (x) the waiver of (or amendment to the terms of) any mandatory prepayment of the Loans shall not constitute a postponement of any date scheduled for the payment of principal or interest, (y) any change to the definition of "Consolidated EBITDA" or in the component definitions thereof shall not constitute a reduction or forgiveness in any rate of interest pursuant to this clause (i), (ii) increase or extend the Commitment of any Lender without the prior written consent of such Lender (it being understood that a waiver of any condition precedent or of any Default or Event of Default, mandatory prepayment or mandatory reduction of the Commitments shall not constitute an extension or increase of any Commitment of any Lender), (iii) amend or modify the pro rata requirements of Section 2.13(b), Section 2.13(c) or Section 2.14, the provisions of Section 10.04(j) or the provisions of this Section or release all or substantially all of the Guarantors (other than in connection with the sale of such Guarantors in a transaction permitted by Sections 7.04 or 7.05) or all or substantially all of the Collateral (other than as permitted hereby), without the prior written consent of each Lender directly and adversely affected thereby (or, in the case of Section 10.04(j), each Lender), (iv) change the provisions of any Loan Document in a manner that by its terms materially and adversely affects the rights of Lenders holding Loans of one Class differently from the rights of Lenders holding Loans of any other Class without the prior written consent of the Required Class Lenders with respect to each materially and adversely affected Class, (v) modify the protections afforded to an SPV pursuant to the provisions of Section 10.04(i) without the written consent of such SPV (vi) reduce the percentage contained in the definition of the term "Required Lenders" without the prior written consent of each~~

Lender (it being understood that, with the consent of the Required Lenders (if such consent is otherwise required), additional extensions of credit pursuant to this Agreement may be included in the determination of the Required Lenders on substantially the same basis as the Term Loan Commitments on the Restatement Effective Date) or (vii) modify the definition of "Required Class Lenders" without the consent of the Required Class Lenders with respect to each Class of Loans or Commitments; *provided further* that (w) no Lender consent is required to effect a Refinancing Amendment or an Extension (except as expressly provided in 2.18 or 2.19, as applicable) or to effect any amendment expressly contemplated by Section 7.12, (x) [reserved], (y) modifications to Section 2.14, 2.15 or any other provision requiring pro rata payments or sharing of payments in connection with (I) any buy back of Term Loans by the Borrower pursuant to Section 10.04(k) or pursuant to any similar program that may in the future be permitted hereunder, (II) [reserved] or (III) any Extension, shall only require approval (to the extent any such approval is otherwise required) of the Lenders participating and (z) no Lender consent other than the consent of the Required Lenders is required to effect any amendment or supplement to the ABL Intercreditor Agreement or the Junior Lien Intercreditor Agreement (I) that the Administrative Agent is otherwise authorized to enter into with only the consent of the Required Lenders by Section 10.23, (II) that is for the purpose of adding the holders of Permitted Junior Priority Additional Debt, (or a Junior Representative with respect thereto) as parties thereto, as expressly contemplated by the Junior Lien Intercreditor Agreement (it being understood that any such amendment or supplement may make such other changes to the applicable intercreditor agreement as, in the good faith determination of the Administrative Agent, are required to effectuate the foregoing and *provided*, that such other changes are not adverse, in any material respect, to the interests of the Lenders) or (III) that is expressly contemplated by Section 5.2(e) or the second paragraph of Section 7.4 of the ABL Intercreditor Agreement (or the comparable provisions, if any, of the Junior Lien Intercreditor Agreement); *provided further* that no such agreement shall amend, modify or otherwise adversely affect the rights or duties of the Administrative Agent or the Collateral Agent hereunder or under any other Loan Document without the prior written consent of the Required Lenders, Administrative Agent or the Collateral Agent, as applicable.

Notwithstanding any other language to the contrary contained herein, with respect to any amendment, waiver or modification to which the Administrative Agent's consent is not required, the parties agree to deliver to the Administrative Agent a copy of each such amendment, waiver or modification; provided that, (i) no party shall be liable for its failure to comply with this sentence and (ii) the Administrative Agent shall not be bound by any such amendment unless and until it has received a copy thereof.

(c) Notwithstanding the foregoing, this Agreement and any other Loan Document may be amended solely with the consent of the Administrative Agent, the Required Lenders and the Borrower without the need to obtain the consent of any other Lender if such amendment is delivered in order to if such amendment is delivered in order to correct or cure (x) ambiguities, errors, omissions, defects, (y) to effect administrative changes of a technical or immaterial nature or (z) incorrect cross references or similar inaccuracies in this Agreement or the applicable Loan Document. This Agreement, guarantees, collateral documents, security documents, intercreditor agreements, and related documents executed in connection with this Agreement may be in a form reasonably determined by the Administrative Agent or Collateral Agent, as applicable, and may be amended, modified, terminated or waived, and consent to any departure therefrom may be given, without the consent of any Lender if such amendment, modification, waiver or consent is given in order to (x) comply with local law or advice of counsel or (y) cause such guarantee, collateral document, security document or related document to be consistent with this Agreement and the other Loan Documents. The Borrower, the Required Lenders and the Administrative Agent may, without the consent of any other Lender, effect amendments to this Agreement and the other

~~Loan Documents as may be necessary in the reasonable opinion of the Borrower, the Required Lenders and the Administrative Agent to effect the provisions of Section 2.05, Section 2.17, Section 2.18 and Section 2.19.  Notwithstanding anything to the contrary contained herein, such amendment shall become effective without any further consent of any other party to such Loan Document.~~

Section 10.09    ~~Section 10.09.~~ *Interest Rate Limitation.*  Notwithstanding anything herein to the contrary, if at any time the interest rate applicable to any Loan, together with all fees, charges and other amounts which are treated as interest on such Loan under applicable Law (collectively the "**Charges**"), shall exceed the maximum lawful rate (the "**Maximum Rate**") which may be contracted for, charged, taken, received or reserved by the Lender holding such Loan or participation in accordance with applicable Law, the rate of interest payable in respect of such Loan or participation hereunder, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate and, to the extent lawful, the interest and Charges that would have been payable in respect of such Loan or participation but were not payable as a result of the operation of this Section 10.09 shall be cumulated and the interest and Charges payable to such Lender in respect of other Loans or participations or periods shall be increased (but not above the Maximum Rate therefor) until such cumulated amount, together with interest thereon at the Federal Funds Effective Rate to the date of repayment, shall have been received by such Lender.

Section 10.10    ~~Section 10.10.~~ *Entire Agreement.*  This Agreement, the Agency Fee Letter and the other Loan Documents constitute the entire contract between the parties relative to the subject matter hereof.  Any other previous agreement among the parties with respect to the subject matter hereof is superseded by this Agreement and the other Loan Documents.  Nothing in this Agreement or in the other Loan Documents, expressed or implied, is intended to confer upon any Person (other than the parties hereto and thereto, their respective successors and assigns permitted hereunder and, to the extent expressly contemplated hereby, the Related Parties of each of the ~~Required~~ Lenders, Administrative Agent, the Collateral Agent and the Lenders) any rights, remedies, obligations or liabilities under or by reason of this Agreement or the other Loan Documents.

Section 10.11    ~~Section 10.11.~~ *WAIVER OF JURY TRIAL.*  EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS.  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 10.11.

Section 10.12    ~~Section 10.12.~~ *Severability.*  In the event any one or more of the provisions contained in this Agreement or in any other Loan Document should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby (it being understood that the invalidity of a particular provision in a particular jurisdiction shall not in and of itself affect the validity of such provision in any other jurisdiction).  The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

Section 10.13    ~~Section 10.13.~~    *Counterparts.*  This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original but all of which when taken together shall constitute a single contract, and shall become effective as provided in Section 10.03.  Delivery of an executed signature page to this Agreement by facsimile or other electronic imaging transmission shall be as effective as delivery of a manually signed counterpart of this Agreement.

Section 10.14    ~~Section 10.14.~~    *Headings.*  Article and Section headings and the Table of Contents used herein are for convenience of reference only, are not part of this Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Agreement.

Section 10.15    ~~Section 10.15.~~    *Jurisdiction; Consent to Service of Process.*

(a)    Each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the ~~exclusive~~non-exclusive jurisdiction of the Bankruptcy Court or, in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, any New York State court or Federal court of the United States of America sitting in the Borough of Manhattan, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or the other Loan Documents, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in the Bankruptcy Court or, in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, such New York State or, to the extent permitted by law, ~~in~~ such Federal court.  Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b)    Each of the parties hereto hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or the other Loan Documents in ~~any New York State or Federal court.~~the Bankruptcy Court.  Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(c)    Each party to this Agreement irrevocably consents to service of process in the manner provided for notices in Section 10.01.  Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

(d)    Notwithstanding anything to the contrary herein, the Canadian Recognition Proceedings and the orders of the Canadian Court granted therein shall be subject to the exclusive jurisdiction of the Canadian Court.

Section 10.16    ~~Section 10.16.~~    *Confidentiality.*  Each of the Administrative Agent, the Collateral Agent, and the Lenders ~~and after designation thereof in accordance with Section 6.18, the Board Observer~~ agrees to maintain the confidentiality of the Information (as defined below), except that Information may be disclosed (a) to its and its Affiliates' officers, directors, employees and agents, including accountants, financing sources, legal counsel and other advisors involved in the Transaction on a "need to know" basis (it being understood that the Persons to whom such disclosure is made will be informed of the confidential nature of such Information and instructed to keep such Information confidential), (b) to the extent requested by any regulatory authority or quasi-regulatory authority (such as the National Association of Insurance Commissioners), (c) to the extent required by applicable Laws or regulations or by any subpoena or similar legal process (and in such case, such Person shall promptly

notify the Borrower of such disclosure), (d) in connection with the exercise of any remedies hereunder or under the other Loan Documents or any suit, action or proceeding relating to the enforcement of its rights hereunder or thereunder, (e) subject to an agreement containing provisions substantially the same as those of this Section 10.16, to (i) any actual or prospective assignee of or participant in any of its rights or obligations under this Agreement and the other Loan Documents  or (ii) any actual or prospective counterparty (or its advisors) to any swap or derivative transaction relating to the Borrower or any Subsidiary or ~~any~~ of their respective obligations, (f) with the prior written consent of the Borrower, (g) on a confidential basis to (x) any rating agency in connection with rating the Borrower or its Subsidiaries or the Facility or (y) the CUSIP Service Bureau or any similar agency in connection with the issuance and monitoring of CUSIP numbers with respect to the Facility, or (h) to the extent such Information becomes publicly available other than as a result of a material breach of this Section 10.16 or other confidentiality obligation owed to the Borrower or any of its Subsidiaries.  For the purposes of this Article, "**Information**" shall mean all information received from the Borrower and related to the Borrower, its business, other than any such information that was available to the Administrative Agent, the Collateral Agent or any Lender on a nonconfidential basis prior to its disclosure by the Borrower not in violation of any confidentiality or obligation owed to the Borrower and the Subsidiaries.  In addition, each Agent and each Lender may disclose the existence of this Agreement and the information about this Agreement to market data collectors, similar services providers to the lending industry, and service providers to the Agents and the Lenders in connection with the administration and management of this Agreement and the other Loan Documents.  Any Person required to maintain the confidentiality of Information as provided in this Section 10.16 shall be considered to have complied with its obligation to do so if such Person has exercised the same degree of care to maintain the confidentiality of such Information as such Person would accord its own confidential information. ~~None of the Borrower and its Subsidiaries or their respective Affiliates or their and their Affiliates' respective representatives shall make any public announcement or filing, whether or not relating to this Agreement, which names any Lender or the investment advisor or manager of any Lender without the prior written approval such Lender except solely to the extent including such name in such announcement or filing is required by applicable Law.~~

Section 10.17    ~~Section 10.17.  *Lender Action*~~*[Reserved]*~~.  Each Lender agrees that it shall not take or institute any actions or proceedings, judicial or otherwise, for any right or remedy against any Loan Party or any other obligor under any of the Loan Documents (including the exercise of any right of setoff, rights on account of any banker's lien or similar claim or other rights of self help), or institute any actions or proceedings, or otherwise commence any remedial procedures, with respect to any Collateral or any other property of any such Loan Party, unless expressly provided for herein or in any other Loan Document, without the prior written consent of the Administrative Agent (which shall be given at the direction of the Required Lender).~~

.

Section 10.18    ~~Section 10.18.~~*USA PATRIOT Act Notice*.  Each Lender and the Administrative Agent (for itself and not on behalf of any Lender) hereby notifies the Borrower that pursuant to the requirements of the USA PATRIOT Act, it is required to obtain, verify and record information that identifies the Borrower, which information includes the name and address of the Borrower and other information that will allow such Lender or the Administrative Agent, as applicable, to identify the Borrower in accordance with the USA PATRIOT Act.

Section 10.19    ~~Section 10.19.~~*Collateral And Guaranty Matters*.  The Lenders irrevocably agree:

(a)    that any Lien on any property granted to or held by the Administrative Agent or the Collateral Agent under any Loan Document shall be automatically released (i) upon termination of all Commitments hereunder and payment in full of all Obligations (other than contingent obligations not yet accrued or payable), (ii) at the time the property subject to such Lien is disposed as part of or in connection with any disposition permitted hereunder or under any other Loan Document to any Person other than a Person required to grant a Lien to the Administrative Agent or the Collateral Agent under the Loan Documents (or, if such transferee is a Person required to grant a Lien to the Administrative Agent or the Collateral Agent on such asset, at the option of the applicable Loan Party, such Lien on such asset may still be released in connection with the transfer so long as (x) the transferee grants a new Lien to the Administrative Agent or Collateral Agent on such asset substantially concurrently with the transfer of such asset, (y) the transfer is between parties organized under the laws of different jurisdictions and at least one of such parties is a Foreign Subsidiary and (z) the priority of the new Lien is the same as that of the original Lien), (iii) subject to Section 10.08, if the release of such Lien is approved, authorized or ratified in writing by the Required Lenders, (iv) if the property subject to such Lien is owned by a Guarantor, upon release of such Guarantor from its obligations under its Guaranty pursuant to Section 11.10, (v) any such property constitutes Excluded Property or (vi) in accordance with anythe Prepetition ABL Intercreditor Agreement or any Chapter 11 Order;

(b)    to release or subordinate any Lien on any property granted to or held by the Administrative Agent or the Collateral Agent under any Loan Document to the holder of any Lien on such property that is permitted by Sections 7.01(b), 7.01(g), 7.01(q) or 7.01(s) (in the case of Section 7.01(s), to the extent required by the terms of the obligations secured by such Liens); and[reserved]; and

(c)    that any Guarantor shall be automatically released from its obligations under the Guaranty as provided in Section 11.10.

Upon request by the Administrative Agent or the Collateral Agent at any time, the Required Lenders will confirm in writing the Administrative Agent's or the Collateral Agent's authority to release or subordinate its interest in particular types or items of property, or to release any Guarantor from its obligations under the Guaranty pursuant to this Section 10.19. In each case as specified in this Section 10.19, the Administrative Agent or the Collateral Agent will (and each Lender irrevocably authorizes the Administrative Agent and the Collateral Agent to), at the Borrower's expense, execute and deliver to the applicable Loan Party such documents as the Borrower may reasonably request to evidence the release or subordination of such item of Collateral from the assignment and security interest granted under the Collateral Documents, or to evidence the release of such Guarantor from its obligations under the Guaranty, in each case in accordance with the terms of the Loan Documents and this Section 10.19.

Section 10.20    Section 10.20. *Limitation on Liability*. TO THE EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS: (A) NO INDEMNITEE SHALL BE LIABLE TO ANY PARTY FOR ANY INDIRECT, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES IN CONNECTION WITH THEIR RESPECTIVE ACTIVITIES RELATED TO THIS AGREEMENT, THE OTHER LOAN DOCUMENTS, THE TRANSACTIONS CONTEMPLATED THEREBY, THE TERM LOANS, OR OTHERWISE IN CONNECTION WITH THE FOREGOING; (B) WITHOUT LIMITING THE FOREGOING, NO INDEMNITEE SHALL BE SUBJECT TO ANY EQUITABLE REMEDY OR RELIEF, INCLUDING SPECIFIC PERFORMANCE OR INJUNCTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER LOAN DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED THEREBY; (C) NO INDEMNITEE SHALL HAVE ANY LIABILITY TO THE LOAN PARTIES, FOR DAMAGES OR OTHERWISE, ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER LOAN DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED THEREBY UNTIL THE AMENDMENT NO. 1 EFFECTIVE

DATE HAS OCCURRED; AND (D) IN NO EVENT SHALL ANY INDEMNITEE'S LIABILITY TO THE LOAN PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE OTHER LOAN DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED THEREBY EXCEED ACTUAL DIRECT DAMAGES INCURRED BY THE LOAN PARTIES OF UP TO $10,000,000 IN THE AGGREGATE; PROVIDED THAT THE FOREGOING SHALL IN NO EVENT LIMIT THE LENDERS' INDEMNIFICATION OBLIGATIONS TO THE AGENT INDEMNITEES UNDER SECTION 10.05 OF THIS AGREEMENT; PROVIDED FURTHER THAT SUCH LIMITATION OF LIABILITY SHALL NOT APPLY TO LIABILITY RESULTING FROM FRAUD BY THE INDEMNITEES.

Section 10.21 ~~Section 10.21.~~ *Payments Set Aside.*  To the extent that any payment by or on behalf of the Borrower or any other Loan Party is made to any Agent or any Lender, or any Agent or any Lender exercises its right of setoff, and such payment or the proceeds of such setoff or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required (including pursuant to any settlement entered into by such Agent or such Lender in its discretion) to be repaid to a trustee, receiver or any other party, in connection with any proceeding under any Debtor Relief Law or otherwise, then (a) to the extent of such recovery, the obligation or part thereof originally intended to be satisfied shall, to the fullest extent possible under provisions of applicable Law, be revived and continued in full force and effect as if such payment had not been made or such setoff had not occurred, and (b) each Lender severally agrees to pay to the Administrative Agent upon demand its applicable share of any amount so recovered from or repaid by any Agent, plus interest thereon from the date of such demand to the date such payment is made at a rate per annum equal to the applicable Federal Funds Effective Rate from time to time in effect.

Section 10.22 ~~Section 10.22.~~ *No Advisory or Fiduciary Responsibility.*

(a)    In connection with all aspects of each transaction contemplated hereby, each Loan Party acknowledges and agrees, and acknowledges its Affiliates' understanding, that (i) the facilities provided for hereunder and any related arranging or other services in connection therewith (including in connection with any amendment, waiver or other modification hereof or of any other Loan Document) are an arm's-length commercial transaction between the Borrower and its Subsidiaries, on the one hand, and the Agents and the Lenders, on the other hand, and the Borrower and its Subsidiaries are capable of evaluating and understanding and understands and accepts the terms, risks and conditions of the transactions contemplated hereby and by the other Loan Documents (including any amendment, waiver or other modification hereof or thereof), (ii) the Agents, the Lenders and their respective Affiliates may be engaged in a broad range of transactions that involve interests that differ from, and may conflict with, those of the Borrower and its Affiliates, and none of the Agents or the Lenders has any obligation to disclose any of such interests by virtue of any advisory, agency or fiduciary relationship, and (iii) the Agents and the Lenders have not provided and will not provide any legal, accounting, regulatory or tax advice with respect to any of the transactions contemplated hereby (including any amendment, waiver or other modification hereof or of any other Loan Document) and the Loan Parties have consulted their own legal, accounting, regulatory and tax advisors to the extent they have deemed appropriate.

(b)    Each Loan Party acknowledges and agrees that each Lender and any of its affiliates may lend money to, invest in, and generally engage in any kind of business with, the Borrower, any of its Affiliates or any other person or entity that may do business with or own securities of any of the foregoing, all as if such Lender or Affiliate thereof were not a Lender (or an agent or any other person with any similar role under the Facilities) and without any duty to account therefor to any other Lender, the Borrower or any Affiliate of the foregoing. Each Lender and any of its Affiliates may accept fees and other consideration from the Borrower or any of its Affiliates for services in connection with this

Agreement, the Facilities, the commitment letter or otherwise without having to account for the same to any other Lender, the Borrower or any Affiliate of the foregoing.

Section 10.23    ~~Section 10.23. *Intercreditor Agreements*~~Release.

(a)  The Administrative Agent is authorized to become a party to the ABL Intercreditor Agreement (and enter into the ABL Intercreditor Agreement in respect of any Permitted Refinancing of ABL Facility Indebtedness), and each of the parties hereto acknowledges that it has received a copy of the ABL Intercreditor Agreement and that the ABL Intercreditor Agreement is binding upon it.  Each Lender (a) hereby consents to the subordination of the Liens on the ABL Priority Collateral securing the Obligations on the terms set forth in the ABL Intercreditor Agreement, (b) hereby agrees that it will be bound by and will take no actions contrary to the provisions of the ABL Intercreditor Agreement and (c) hereby authorizes and instructs the Administrative Agent to enter into the ABL Intercreditor Agreement and any amendments or supplements expressly contemplated thereby, and to subject the Liens on the ABL Priority Collateral securing the Obligations to the provisions of the ABL Intercreditor Agreement.  The foregoing provisions are intended as an inducement to the ABL Secured Parties to extend credit to the borrowers under the ABL Credit Agreement and such ABL Secured Parties are intended third party beneficiaries of such provisions and the provisions of the ABL Intercreditor Agreement.

(b) The Administrative Agent is authorized to enter into the Junior Lien Intercreditor Agreement, and each of the parties hereto acknowledges that each such agreement shall be binding upon it.  Each Lender (a) hereby consents to the intercreditor agreements in respect of the Collateral securing the Obligations on the terms set forth in the Junior Lien Intercreditor Agreement, (b) hereby agrees that it will be bound by and will take no actions contrary to the provisions of the Junior Lien Intercreditor Agreement and (c) hereby authorizes and instructs the Administrative Agent to enter into the Junior Lien Intercreditor Agreement and, without the further consent, direction or other action of any Lender, to enter into any amendments or supplements thereto, in each case solely if the form of the agreement as so amended or supplemented would constitute the Junior Lien Intercreditor Agreement, as applicable, if being entered into as an original agreement.  The foregoing provisions are intended as an inducement to the parties providing any Permitted Junior Priority Additional Debt to extend credit to the borrowers thereof and such parties are intended third-party beneficiaries of such provisions and the provisions of the Junior Lien Intercreditor Agreement.

(c)  The extent of any conflict between the Loan Documents, on the one hand, and the ABL Intercreditor Agreement or other intercreditor agreement contemplated by this Section 10.23, on the other hand, such intercreditor agreement shall control.

.  Each of the Loan Parties and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally, and irrevocably releases and forever discharges and acquits the Secured Parties and each of their respective Related Parties (solely in their capacities as such) (collectively, the "**Released Parties**"), from any and all liability to the Loan Parties (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Loan Documents, the Loans, the negotiation thereof, and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Agreement; provided that the release set forth in this section shall not release (i)

any claims against or liabilities of a Released Party that a court of competent jurisdiction determines by a final non-appealable order to have directly and primarily resulted from such Released Party's bad faith, fraud, gross negligence, or willful misconduct, or (ii) any Secured Party from honoring its/their obligations to the Loan Parties under the Loan Documents.

Section 10.24    *Process Agent*.  Each Guarantor irrevocably appoints Borrower, and Borrower hereby accepts such irrevocable appointment, as its agent and true and lawful attorney-in-fact in its name, place and stead to accept on behalf of such Guarantor and its Property and revenues service of copies of the summons and complaint and any other process which may be served in any such suit, action or proceeding brought in the Bankruptcy Court and/or the State of New York, and such Guarantor agrees that the failure of Borrower to give any notice of any such service of process to such Guarantor shall not impair or affect the validity of such service or, to the extent permitted by applicable law, the enforcement of any judgment based thereon.

Section 10.25    *Waiver of Immunity*.  To the extent that any Guarantor may be or become entitled to claim for itself or its property or revenues any immunity on the ground of sovereignty or the like from suit, court jurisdiction, attachment prior to judgment, attachment in aid of execution of a judgment or execution of a judgment, and to the extent that in any such jurisdiction there may be attributed such an immunity (whether or not claimed), such Guarantor hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity with respect to its obligations under this Agreement and the other Loan Documents to which it is a party.

Section 10.26    *DIP Order, Prepetition ABL Intercreditor Agreement and Senior ICA Provisions Control*.  To the fullest extent possible, the terms and provisions of this Agreement and the other Loan Documents shall be read together with the terms and provisions of the DIP Order, the Prepetition ABL Intercreditor Agreement and the Senior ICA Provisions, as applicable, so that the terms and provisions of this Agreement and the Loan Documents do not conflict with the terms and provisions of the DIP Order, the Prepetition ABL Intercreditor Agreement or the Senior ICA Provisions; provided that, notwithstanding the foregoing or anything herein to the contrary in this Agreement or the Loan Documents, (i) in the event of any conflict or inconsistency between the terms and provisions of this Agreement or any other Loan Document (on the one hand) and the DIP Order (on the other hand), the applicable terms and provisions of the DIP Order shall govern and control to the extent of such conflict or inconsistency, (ii) in the event of any conflict or inconsistency between the terms and provisions of this Agreement or any other Loan Document (on the one hand) and the terms and provisions of the Prepetition ABL Intercreditor Agreement (on the other hand), the applicable terms and provisions of the Prepetition ABL Intercreditor Agreement shall govern and control to the extent of such conflict or inconsistency and (iii) in the event of any conflict or inconsistency between the terms and provisions of this Agreement or any other Loan Document (on the one hand) and the Senior ICA Provisions (on the other hand), the applicable Senior ICA Provisions shall govern and control to the extent of such conflict or inconsistency; it being expressly understood and agreed that the inclusion in any Loan Document of terms and provisions or supplemental rights or remedies in favor of the Administrative Agent, Collateral Agent or Lenders not directly or indirectly addressed in the DIP Order, the Prepetition ABL Intercreditor Agreement or the Senior ICA Provisions shall not be deemed to be in conflict with the DIP Order, the Prepetition ABL Intercreditor Agreement or the Senior ICA Provisions and all such additional terms, provisions, supplemental rights or remedies contained herein shall be given full force and effect.

Section 10.27    *Québec Security*. For the purposes of the grant of security under the laws of the Province of Quebec which may now or in the future be required to be provided by any Loan Party, the Collateral Agent is hereby irrevocably authorized and appointed by each of the Lenders hereto to act as hypothecary representative (within the meaning of Article 2692 of the Civil Code of Quebec) for all present and future Secured Parties (in such capacity, the "**Hypothecary Representative**") in order to

hold any hypothec granted under the laws of the Province of Quebec and to exercise such rights and duties as are conferred upon the Hypothecary Representative under the relevant deed of hypothec and applicable Laws (with the power to delegate any such rights or duties). The execution prior to the date hereof by the Collateral Agent in its capacity as the Hypothecary Representative of any deed of hypothec or other security documents made pursuant to the laws of the Province of Quebec, is hereby ratified and confirmed. Any Person who becomes a Lender or successor Collateral Agent shall be deemed to have consented to and ratified the foregoing appointment of the Collateral Agent as the Hypothecary Representative on behalf of all Secured Parties, including such Person and any Affiliate of such Person designated above as a Lender. For greater certainty, the Collateral Agent, acting as the Hypothecary Representative, shall have the same rights, powers, immunities, indemnities and exclusions from liability as are prescribed in favor of the Collateral Agent in this Agreement, which shall apply mutatis mutandis. In the event of the resignation of the Collateral Agent (which shall include its resignation as the Hypothecary Representative) and appointment of a successor Collateral Agent, such successor Collateral Agent shall also act as the Hypothecary Representative, as contemplated above and shall, without any further act or formality, become the successor Hypothecary Representative under any then existing deed of hypothec.

# ARTICLE 11
## GUARANTEE

Section 11.01    ~~Section 11.01.~~  *The Guarantee.*  Each Guarantor hereby jointly and severally with the other Guarantors guarantees, as a primary obligor and not as a surety to each Secured Party and their respective permitted successors and assigns, the prompt payment in full when due (whether at stated maturity, by required prepayment, declaration, demand, by acceleration or otherwise) of the principal of and interest (including any interest, fees, costs or charges that would accrue but for the provisions of (i) Title 11 of the United States Code after any bankruptcy or insolvency petition under Title 11 of the United States Code and (ii) any other Debtor Relief Laws, whether or not such items are allowed or allowable as a claim in any applicable proceeding) on the Loans made by the Lenders to, and the Term Notes (if any) issued hereunder and held by each Lender of, the Borrower, and all other Obligations from time to time owing to the Secured Parties by any other Loan Party under any Loan Document strictly in accordance with the terms thereof (such obligations being herein collectively called the "**Guaranteed Obligations**").  The Guarantors hereby jointly and severally agree that if the Borrower or other Guarantor(s) shall fail to pay in full when due (whether at stated maturity, by acceleration or otherwise) any of the Guaranteed Obligations, the Guarantors will promptly pay the same in cash, without any demand or notice whatsoever, and that in the case of any extension of time of payment or renewal of any of the Guaranteed Obligations, the same will be promptly paid in full when due (whether at extended maturity, by acceleration or otherwise) in accordance with the terms of such extension or renewal.

Section 11.02    ~~Section 11.02.~~  *Obligations Unconditional.*  The obligations of the Guarantors under Section 11.01 shall constitute a guaranty of payment and to the fullest extent permitted by applicable Law, are absolute, irrevocable and unconditional, joint and several, irrespective of the value, genuineness, validity, regularity or enforceability of the Guaranteed Obligations of the Borrower or any other Guarantor under this Agreement, any Term Notes issued under this Agreement, or any other agreement or instrument referred to herein or therein, or any substitution, release or exchange of any other guarantee of or security for any of the Guaranteed Obligations, and, irrespective of any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge or defense of a surety or Guarantor (except for payment).  Without limiting the generality of the foregoing, it is agreed that the occurrence of any one or more of the following shall not alter or impair the liability of the

Guarantors hereunder which shall remain absolute, irrevocable and unconditional under any and all circumstances as described above:

(a)     at any time or from time to time, without notice to the Guarantors, to the extent permitted by Law, the time for any performance of or compliance with any of the Guaranteed Obligations shall be extended, or such performance or compliance shall be waived;

(b)     any of the acts mentioned in any of the provisions of this Agreement or the Term Notes, if any, or any other agreement or instrument referred to herein or therein shall be done or omitted;

(c)     the maturity of any of the Guaranteed Obligations shall be accelerated, or any of the Guaranteed Obligations shall be amended in any respect, or any right under the Loan Documents or any other agreement or instrument referred to herein or therein shall be amended or waived in any respect or any other guarantee of any of the Guaranteed Obligations or any security therefor shall be released or exchanged in whole or in part or otherwise dealt with;

(d)     any Lien or security interest granted to, or in favor of, any Secured Party or Agent as security for any of the Guaranteed Obligations shall fail to be perfected; or

(e)     the release of any other Guarantor pursuant to Section 11.10.

Section 11.03   Section 11.03.   *Certain Waivers. Etc. Etc.*   The Guarantors hereby expressly waive (to the extent permitted by applicable Law) diligence, presentment, demand of payment, protest and, to the extent permitted by Law, all notices whatsoever, and any requirement that any Secured Party exhaust any right, power or remedy or proceed against the Borrower under this Agreement or the Term Notes issued hereunder, if any, or any other agreement or instrument referred to herein or therein, or against any other person under any other guarantee of, or security for, any of the Guaranteed Obligations. The Guarantors waive, to the extent permitted by Law, any and all notice of the creation, renewal, extension, waiver, termination or accrual of any of the Guaranteed Obligations and notice of or proof of reliance by any Secured Party upon this Guarantee or acceptance of this Guarantee, and the Guaranteed Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Guarantee, and all dealings between the Borrower and the Secured Parties shall likewise be conclusively presumed to have been had or consummated in reliance upon this Guarantee. This Guarantee shall be construed as a continuing, absolute, irrevocable and unconditional guarantee of payment without regard to any right of offset with respect to the Guaranteed Obligations at any time or from time to time held by Secured Parties, and the obligations and liabilities of the Guarantors hereunder shall not be conditioned or contingent upon the pursuit by the Secured Parties or any other Person at any time of any right or remedy against the Borrower or against any other Person which may be or become liable in respect of all or any part of the Guaranteed Obligations or against any collateral security or guarantee therefor or right of offset with respect thereto. This Guarantee shall remain in full force and effect and be binding in accordance with and to the extent of its terms upon the Guarantors and the successors and permitted assigns thereof, and shall inure to the benefit of the Secured Parties, and their respective successors and permitted assigns, notwithstanding that from time to time during the term of this Agreement there may be no Guaranteed Obligations outstanding. Each Guarantor waives (to the extent permitted by Law) any rights and defenses that are or may become available to it by reason of §§ 2787 to 2855, inclusive, and §§ 2899 and 3433 of the California Civil Code. As provided in Section 10.07, the provisions of this Article 11 shall be governed by, and construed in accordance with, the laws of the State of New York. The foregoing waivers and the provisions hereinafter set forth in this Article 11 which pertain to California law are included solely out of an abundance of caution, and shall not be

construed to mean that any of the above-referenced provisions of California law are in any way applicable to this Article 11, to any other provision of this Agreement or to the Obligations.

Section 11.04 ~~Section 11.04.~~ *Reinstatement.*  The obligations of the Guarantors under this Article 11 shall be automatically reinstated if and to the extent that for any reason any payment by or on behalf of the Borrower or other Loan Party in respect of the Guaranteed Obligations is rescinded or must be otherwise restored by any holder of any of the Guaranteed Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise.

Section 11.05 ~~Section 11.05.~~ *Subrogation; Subordination.*  Each Guarantor hereby agrees that until the indefeasible payment and satisfaction in full in cash of all Guaranteed Obligations (other than contingent obligations) and the expiration and termination of the Commitments of the Lenders under this Agreement, it shall waive any claim and shall not exercise any right or remedy, direct or indirect, arising by reason of any performance by it of its guarantee in Section 11.01, whether by subrogation, contribution or otherwise, against the Borrower or any other Guarantor of any of the Guaranteed Obligations or any security for any of the Guaranteed Obligations.  Any Indebtedness of any Loan Party to any Person that is not a Loan Party ~~permitted pursuant to Section 7.03(b) or 7.03(d)~~ shall be subordinated to such Loan Party's Obligations in ~~ana~~ manner reasonably acceptable to the ~~Required~~ Lenders.

Section 11.06 ~~Section 11.06.~~ *Remedies.*  The Guarantors jointly and severally agree that, as between the Guarantors and the Lenders, the obligations of the Borrower under this Agreement and the Term Notes issued hereunder, if any, may be declared to be forthwith due and payable as provided in Section 8.02 (and shall be deemed to have become automatically due and payable in the circumstances provided in Section 8.02) for purposes of Section 11.01, notwithstanding any stay, injunction or other prohibition preventing such declaration (or such obligations from becoming automatically due and payable) as against the Borrower and that, in the event of such declaration (or such obligations being deemed to have become automatically due and payable), such obligations (whether or not due and payable by the Borrower) shall forthwith become due and payable by the Guarantors for purposes of Section 11.01, subject to the terms and conditions of the DIP Order, the Canadian Orders, the Senior ICA Provisions and the Prepetition ABL Intercreditor Agreement.

Section 11.07 ~~Section 11.07.~~ *Instrument for the Payment of Money.*  Each Guarantor hereby acknowledges that the guarantee in this Article 11 constitutes an instrument for the payment of money, and consents and agrees that any Secured Party or Agent, at its sole option, in the event of a dispute by such Guarantor in the payment of any moneys due hereunder, shall have the right to bring a motion-action under New York CPLR Section 3213.

Section 11.08 ~~Section 11.08.~~ *Continuing Guarantee.*  The guarantee in this Article 11 is a continuing guarantee of payment, and shall apply to all Guaranteed Obligations whenever arising.

Section 11.09 ~~Section 11.09.~~ *General Limitation on Guarantee Obligations.*  In any action or proceeding involving any state corporate, limited partnership or limited liability company law, or any applicable state, provincial, territorial, federal or foreign bankruptcy, insolvency, reorganization or other Law affecting the rights of creditors generally, if the obligations of any Guarantor under Section 11.01 would otherwise be held or determined to be void, voidable, invalid or unenforceable, or subordinated to the claims of any other creditors, on account of the amount of its liability under Section 11.01, then, notwithstanding any other provision to the contrary, the amount of such liability shall, without any further action by such Guarantor, any Loan Party or any other Person, be automatically limited and reduced to the highest amount (after giving effect to the right of contribution established in Section

11.11) that is valid and enforceable and not subordinated to the claims of other creditors as determined in such action or proceeding.

Section 11.10    ~~Section 11.10.~~    *Release of Guarantors.*  If, in compliance with the terms and provisions of the Loan Documents, ~~(i)~~ all or substantially all of the Equity Interests or property of any Guarantor are sold or otherwise transferred to a Person or Persons none of which is a Loan Party ~~or (ii) any Guarantor becomes an Excluded Subsidiary~~ (any such Guarantor, ~~and any Guarantor referred to in clause (i),~~ a "**Transferred Guarantor**"), such Transferred Guarantor shall, upon ~~(x)~~ the consummation of such sale or transfer or other transaction ~~or (y) becoming an Excluded Subsidiary pursuant to clause (e) of the definition thereof~~, be automatically released from its obligations under this Agreement (including under Section 10.05 hereof) and its obligations to pledge and grant any Collateral owned by it pursuant to any Collateral Document and, in the case of a sale of all or substantially all of the Equity Interests of the Transferred Guarantor, the pledge of such Equity Interests to the Collateral Agent pursuant to the Collateral Documents shall be automatically released, and, the Collateral Agent shall take such actions as are necessary to effect each release described in this Section 11.10 in accordance with the relevant provisions of the Collateral Documents; *provided*, that no Guarantor shall be released as provided in this paragraph if such Guarantor continues to be a guarantor in respect of any Prepetition Indebtedness ~~incurred pursuant to Section 7.03(o), any Permitted Additional Debt, any Junior Financing, any UST Tranche A Facility Indebtedness, UST Tranche B Facility Indebtedness or any Permitted Refinancing of any of the foregoing.  Notwithstanding anything herein to the contrary, if any Guarantor becomes an Excluded Subsidiary pursuant to clause (a) of the definition of Excluded Subsidiary, such Guarantor shall only be permitted to be released from its Guarantee so long as the fair market value of any and all Investments then held by the Loan Parties in such Person are permitted as an Investment under Section 7.02(c)(iii) and Section 7.02(p) at the time such Person becomes an Excluded Subsidiary pursuant to clause (a) of the definition of "Excluded Subsidiary".~~.

When all Commitments hereunder have terminated, and all Loans or other Obligations hereunder which are accrued and payable have been paid or satisfied, this Agreement and the Guarantees made herein shall automatically terminate with respect to all Obligations, except with respect to Obligations that expressly survive such repayment pursuant to the terms of this Agreement.

Section 11.11    ~~Section 11.11.~~    *Right of Contribution.*  Each Guarantor hereby agrees that to the extent that a Guarantor shall have paid more than its proportionate share of any payment made hereunder, such Guarantor shall be entitled to seek and receive contribution from and against any other Guarantor hereunder which has not paid its proportionate share of such payment.  Each Guarantor's right of contribution shall be subject to the terms and conditions of Section 11.05.  The provisions of this Section 11.11 shall in no respect limit the obligations and liabilities of any Guarantor to the Administrative Agent and the Secured Parties, and each Guarantor shall remain liable to the Administrative Agent and the Secured Parties for the full amount guaranteed by such Guarantor hereunder.

Section 11.12    ~~Section 11.12.~~    *Additional Guarantor Waivers and Agreements.*

(a)    Each Guarantor understands and acknowledges that if the Collateral Agent or any other Secured Party forecloses judicially or nonjudicially against any real property security for the Obligations, that foreclosure could impair or destroy any ability that such Guarantor may have to seek reimbursement, contribution, or indemnification from the Borrower or others based on any right such Guarantor may have of subrogation, reimbursement, contribution, or indemnification for any amounts paid by such Guarantor under the Guaranty.  Each Guarantor further understands and acknowledges that in the absence of this paragraph, such potential impairment or destruction of such Guarantor's rights, if any, may entitle such Guarantor to assert a defense to this Guaranty based on Section 580d of the California Code of Civil Procedure as interpreted in Union Bank v. Gradsky, 265 Cal. App. 2d 40 (1968).  By executing this

Guaranty, each Guarantor freely, irrevocably, and unconditionally:  (i) waives (to the extent permitted by Law) and relinquishes that defense and agrees that such Guarantor will be fully liable under this Guaranty even though the Collateral Agent or any other Secured Party may foreclose, either by judicial foreclosure or by exercise of power of sale, any deed of trust securing the Obligations; (ii) agrees that such Guarantor will not assert that defense in any action or proceeding which the Administrative Agent, the Collateral Agent or any other Secured Party may commence to enforce this Guaranty; (iii) acknowledges and agrees that the rights and defenses waived by such Guarantor in this Guaranty include any right or defense that such Guarantor may have or be entitled to assert based upon or arising out of any one or more of §§ 580a, 580b, 580d, or 726 of the California Code of Civil Procedure or § 2848 of the California Civil Code; and (iv) acknowledges and agrees that the Secured Parties are relying on this waiver in creating the Obligations, and that this waiver is a material part of the consideration which the Secured Parties are receiving for creating the Obligations.

(b)     Each Guarantor waives (to the extent permitted by Law) all rights and defenses that such Guarantor may have because any of the Obligations is secured by real property.  This means, among other things:  (i) the Administrative Agent, the Collateral Agent and the other Secured Parties may collect from such Guarantor without first foreclosing on any real or personal property Collateral pledged by the other Loan Parties; and (ii) if the Collateral Agent or any other Secured Party forecloses on any real property Collateral pledged by the other Loan Parties: (A) the amount of the Obligations may be reduced only by the price for which that Collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (B) the Administrative Agent, the Collateral Agent and the other Secured Parties may collect from such Guarantor even if the Secured Parties, by foreclosing on the real property Collateral, have destroyed any right such Guarantor may have to collect from the Borrower.  This is an unconditional and irrevocable waiver of any rights and defenses such Guarantor may have because any of the Obligations is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon § 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

(c)     Each Guarantor waives (to the extent permitted by Law) any right or defense it may have at law or equity, including California Code of Civil Procedure § 580a, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure.

## ARTICLE 12
### CARES ACT REQUIREMENTS RESERVED

## ARTICLE 13
### SECURITY AND ADMINISTRATIVE PRIORITY

Section 13.01    *Obligations relating to Prepetition Loans.*  Each of the Loan Parties hereby acknowledges, confirms and agrees that each of them are each indebted to the Administrative Agent and the Lenders for the Obligations relating to the Prepetition Loans, in an aggregate principal amount, as of the Petition Date, of not less than $485,372,693.29 plus the exit fee referred to in Section 2.05(c) of the Prepetition B-2 Term Loan Credit Agreement in an aggregate amount of $9,707,453.87, plus accrued and unpaid interest, as of the Petition Date, of not less than $6,504,005.15, plus fees, costs, expenses, charges and disbursements incurred in connection therewith (including attorneys' fees), indemnities, reimbursement obligations and other charges now or hereafter owed by the Borrower and its Subsidiaries (including the Loan Parties) to the Administrative Agent and the Lenders pursuant to the terms of the Prepetition B-2 Term Loan Credit Agreement, all of which are unconditionally owing by the Borrower

and its Subsidiaries (including the Loan Parties) to the Administrative Agent and the Lenders, without offset, defense or counterclaim of any kind, nature and description whatsoever.

Section 13.02   ~~Section 12.01.   *CARES Act Compliance*~~*Acknowledgement of Security Interests.* ~~The Borrower and its controlled Affiliates are in material compliance, and will at all times comply in all material respects, with all applicable material requirements under Title IV of the CARES Act, including any applicable material requirements pertaining to the Borrower's eligibility to receive the loans under the UST Tranche A Credit Agreement and the UST Tranche B Credit Agreement, respectively (such loans, for purposes of this Article 12, the "**UST Loans**").  The Borrower will provide any information requested by the Lenders to assess the compliance by the Borrower and its controlled Affiliates with the applicable material requirements under Title IV of the CARES Act or the Borrower's eligibility to receive the Loan under the CARES Act.~~

.   Each of the Loan Parties hereby acknowledges, confirms and agrees (and hereby agrees that it will not dispute, challenge or otherwise contest) that, as of the Petition Date, (i) the Administrative Agent and the Lenders have valid, enforceable and perfected first priority and senior liens (subject only to Liens permitted under Section 7.01 of the Prepetition B-2 Term Loan Credit Agreement) upon and security interests in all of the Collateral (as defined in the Prepetition B-2 Term Loan Credit Agreement) granted pursuant to the Existing Loan Documents and the other "Collateral Documents" (as defined in the Existing Loan Documents) as in effect on the Petition Date to secure all of the Obligations (as defined in the Prepetition B-2 Term Loan Credit Agreement) and (ii) such Liens are not subject to avoidance, set off, counterclaim, recharacterization, reduction, disallowance, impairment or subordination (whether contractual, equitable or otherwise) or other challenge pursuant to Debtor Relief Law or applicable non-bankruptcy law.

Section 13.03   ~~Section 12.02.   *Dividends and Buybacks*~~*Binding Effect of Documents*.

Each of the Loan Parties hereby acknowledges, confirms and agrees (and hereby agrees that it will not dispute, challenge or otherwise contest) that (i) each of the Loan Documents and the other "Collateral Documents" (as defined in the Loan Documents) to which it is a party is in full force and effect as of the date hereof, (ii) the agreements and obligations of the Borrower and each of its Subsidiaries contained in the Loan Documents and the other "Collateral Documents" (as defined in the Loan Documents) constitute the legal, valid and binding obligations of each of the Borrower and its Subsidiaries enforceable against each of them in accordance with their respective terms, except as such enforceability may be limited by Debtor Relief Laws and by general principles of equity, and neither the Borrower nor any of its Subsidiaries has any valid defense, offset or counterclaim to the enforcement of such obligations and (iii) subject to the DIP Order, the Administrative Agent and the Lenders are and shall be entitled to all of the rights, remedies and benefits provided for in the Loan Documents and the other "Collateral Documents" (as defined in the Loan Documents), except to the extent clauses (ii) and (iii) above are subject to the automatic stay under the Bankruptcy Code upon commencement of the Chapter 11 Cases and the stay of proceedings pursuant to the applicable Canadian Orders in the Canadian Recognition Proceedings.

Section 13.04   *Collateral; Grant of Lien and Security Interest*~~Until the date that is 12 months after the date on which the UST Loans are no longer outstanding, neither the Borrower nor any of its Affiliates (other than an Affiliate that is a natural person) shall, in any transaction, purchase an equity security of the Borrower or of any direct or indirect parent company of the Borrower, in either case, is listed on a national securities exchange, except to the extent required under a contractual obligation in effect as of the date of enactment of the CARES Act.~~

(b)  Until  the  date  that  is  12  months  after  the  date  on  which  the  UST  Loans  are  no  longer outstanding, the Borrower shall not pay dividends, or make any other capital distributions, with respect to the common stock of the Borrower.

Section 12.03.  *Maintenance of Employment Levels.*  Until September 30, 2020, the Borrower shall maintain its employment levels as of March 24, 2020, to the extent practicable, and in any case shall not reduce its employment levels by more than ten (10) percent from the levels on March 24, 2020.

Section 12.04.  United States Business.   The Borrower is created or organized in the United States or under the laws of the United States and has significant operations in and a majority of its employees based in the United States.

Section 12.05.  *Limitations on Certain Compensation*.

(a) Beginning  on  the  Effective  Date  and  ending  on  the  date  that  is  one  year  after  the  date  on which  the  UST  Loans  are  no  longer  outstanding,  the  Borrower  shall  not  pay  any  of  the  Borrower's Corporate Officers or Employees whose Total Compensation exceeded $425,000 in calendar year 2019 or the Subsequent Reference Period (other than an Employee whose compensation is determined through an existing collective bargaining agreement entered into before March 1, 2020):

(i) Total Compensation which exceeds, during any 12 consecutive months of the period beginning on the Effective Date, and ending on the date that is one year after the date on which the UST Loans are no longer outstanding, the Total Compensation the Corporate Officer or Employee received in calendar year 2019 or the Subsequent Reference Period; or

(ii) Severance Pay or Other Benefits in connection with a termination of employment with the Borrower which exceed twice the maximum Total Compensation received by such Corporate Officer or Employee in calendar year 2019 or the Subsequent Reference Period.

(b) Beginning on the Effective Date, and ending on the date that is one year after the date on which  the  UST  Loans  are  no  longer  outstanding,  the  Borrower  shall  not  pay  any  of  the  Borrower's Corporate Officers or Employees whose Total Compensation exceeded $3,000,000 in calendar year 2019 or the Subsequent Reference Period Total Compensation in excess of the sum of:

(i) $3,000,000; and

(ii) 50  percent  of  the  excess  over  $3,000,000  of  the  Total  Compensation  received  by such Corporate Officer or Employee in calendar year 2019 or the Subsequent Reference Period.

(c) For  purposes  of  determining  applicable  amounts  under  this  clause  (5)  with  respect  to  any Corporate  Officer  or  Employee  who  was  employed  by  the  Borrower   for  less  than  all  of  calendar  year 2019, the amount of Total Compensation in calendar year 2019 shall mean such Corporate Officer's or Employee's Total Compensation on an annualized basis.

(i)     Pursuant to the DIP Order and in accordance with the terms thereof, and, in the case of the  Canadian  Collateral,  the  DIP  Order  and  the  Canadian  Orders,  as  security  for  the  full  and  timely payment and performance of all Obligations in respect of the Postpetition B-2 Facility (including the New Money Postpetition Term Loans and the Commitments) as provided herein and in the DIP Order, each  of  the  Loan  Parties  hereby  collaterally  assigns,  pledges  and  grants  to  the  Collateral  Agent,  for  the benefit  of  the  Secured  Parties  who  hold  such  Obligations,  a  security  interest  in,  and  Lien  on,  the Collateral, which is hereby acknowledged to include all of the property, assets or interests in property or

assets of such Person, of any kind or nature whatsoever, real or personal, tangible and intangible now existing or hereafter acquired or created, including all property of the "estate" (within the meaning of the Bankruptcy Code) of the Loan Parties, and all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, general intangibles, payment intangibles, intangibles, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, leases, all of the issued and outstanding Equity Interests entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and all of the issued and outstanding Equity Interests not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) of each Subsidiary of the Borrower, all of the Equity Interests of all other Persons that are not Subsidiaries directly owned by the Borrower, money, investment property, deposit accounts, all commercial tort claims and other causes of action other than Avoidance Actions, the proceeds of all Avoidance Actions (excluding for the avoidance of doubt, any claims and the causes of actions themselves), all Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions and profits of any of Collateral described above, in each case, other than Excluded Property, but including the proceeds thereof. No limitation in any Collateral Document (including, without limitation, any limitation on recoveries or other equivalent cap in any Mortgage) shall constitute a limitation with respect to any of the foregoing security interests or Liens.

(ii)    The security interests and Liens in favor of the Collateral Agent in the Collateral described in paragraph (i) above shall be effective immediately upon the entry of the Interim Order and shall continue in effect (or be effective, if applicable) upon the entry of the Final Order and subject and subordinate only to (i) the Carve-Out, (ii) solely with respect to the Canadian Collateral, the Canadian Priority Charges (in a maximum amount not to exceed CDN$4,200,000) pursuant to the Canadian Orders, and (iii) with respect to any Prepetition ABL Priority Collateral, Prepetition UST Tranche B Priority Collateral or Prepetition UST Tranche B Joint Collateral, the terms (including subordination terms) and conditions set forth in the Interim Order and the Prepetition ABL Intercreditor Agreement. Such Liens and security interests and their priority shall remain in effect until the Commitments shall have been terminated and all Obligations in respect of the B-2 Facility (other than contingent obligations not claimed) shall have been paid in full. For the avoidance of doubt, the security interests and Liens in favor of the Collateral Agent in the Collateral shall be senior in all respects to the Junior DIP Liens (other than with respect to Unencumbered Assets, on which the Junior DIP Liens shall be senior, and the DIP Proceeds Account, on which the Junior DIP Liens solely with respect to proceeds of the Junior DIP Facility shall have first priority). Notwithstanding anything to the contrary herein, nothing in this Section 13.04(ii) is intended to or does conflict with or override the UST Adequate Protection Order and in the event of any inconsistencies between this Section 13.04(ii) and the UST Adequate Protection Order, the UST Adequate Protection Order shall govern.

(iii)    Notwithstanding anything herein to the contrary (A) all proceeds received by the Administrative Agent and the Lenders from the Collateral subject to the Liens granted in this Section 13.04 and in the DIP Order and each other Loan Document shall be, upon the occurrence and during the continuation of an Event of Default (other than an Existing Default), subject to the terms (including priority and subordination terms) and conditions set forth in the DIP Order and, in the case of the Canadian Collateral, the DIP Order and the Canadian Orders, and the Prepetition ABL Intercreditor Agreement, and subject and subordinate to the prior payment of the Carve-Out and the Canadian Priority Charges (in a maximum amount not to exceed CDN$4,200,000) pursuant to the DIP Order and the Canadian Orders, and (B) no Person entitled to the Carve-Out shall be entitled to sell or otherwise dispose of any Collateral, and without limiting such Person's right solely to receive proceeds of a sale up to the amount of the Carve-Out, owed to such Person, such Person shall not seek or object to the sale or other disposition of any Collateral.

(iv)      [Reserved].

Section 13.05    *Administrative Priority.*    Subject to the terms and priorities set forth in the DIP Order, each Loan Party agrees that its Obligations in respect of the Postpetition B-2 Facility (including the New Money Postpetition Term Loans and the Commitments) as provided herein and in the DIP Order and the B-2 Adequate Protection Obligations (as defined in the DIP Order) shall constitute allowed administrative expenses in the Chapter 11 Cases, having priority over all administrative expenses of and unsecured claims against such Person now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code (the "**Postpetition B-2 Superpriority Claims**"), subject only to prior payment of the Carve-Out and the Canadian Priority Charges pursuant to the Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders and the terms and conditions of the DIP Order and the Canadian Orders. The Postpetition B-2 Superpriority Claims shall be senior in all respects to the Junior DIP Superpriority Claims (other than with respect to proceeds of the loans issued under the Junior DIP Facility in the DIP Proceeds Account, with respect to which the Junior DIP Superpriority Claims shall be senior).

Section 13.06    *Grants, Rights and Remedies.*    The Liens and security interests granted pursuant to clause (i) of Section 13.04 and the administrative priority granted pursuant to Section 13.05 may be independently granted by the Loan Documents, the DIP Order, the applicable Canadian Orders and by other Loan Documents hereafter entered into.  Subject to Section 10.26, this Agreement, the DIP Order and such other Loan Documents supplement each other, and the grants, priorities, rights and remedies of the Administrative Agent, the Collateral Agent and the Lenders hereunder and thereunder are cumulative.

Section 13.07    *No Filings Required.*    The Liens and security interests referred to herein shall be deemed valid and perfected by entry of the Interim Order or the Final Order, as the case may be, and, in the case of the Canadian Collateral, by entry of the DIP Order and the Canadian Orders.  The Collateral Agent shall not be required to file any financing statements, mortgages, notices of Lien or similar instruments in any jurisdiction or filing office, take possession or control of any Collateral, or take any other action in order to validate or perfect the Lien and security interest granted by or pursuant to this Agreement, the DIP Order, the Canadian Orders, or any other Loan Document.

Section 13.08    ~~Section 12.06.~~  *~~Additional Defined Terms~~Survival.*    Except as provided herein, in the Canadian Orders and in the DIP Order, the Liens, lien priority, administrative priorities and other rights and remedies granted to the Administrative Agent and the Lenders pursuant to this Agreement, the DIP Order, the Canadian Orders and the other Loan Documents (specifically including, but not limited to, the existence, perfection and priority of the Liens and security interests provided herein and therein, and the administrative priority provided herein and therein) shall not be modified, altered or impaired in any manner by any other financing or extension of credit or incurrence of Indebtedness by the Loan Parties (pursuant to Section 364 of the Bankruptcy Code or otherwise), or by any dismissal or conversion of any of the Chapter 11 Cases or the Canadian Recognition Proceedings, or by any other act or omission whatsoever.  Without limitation, notwithstanding any such order, financing, extension, incurrence, dismissal, conversion, act or omission:

(i)      except to the extent of (a) the Carve-Out and (b) the Canadian Priority Charges (in a maximum amount not to exceed CDN$4,200,000) pursuant to the Canadian Orders to the extent set forth in the Canadian DIP Recognition Order and the other Canadian Orders, no fees, charges, disbursements, costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or the Canadian Recognition Proceedings or any conversion of the same or in any other proceedings related thereto, and no priority claims, are or will be prior to or on parity with any claim of the Administrative

Agent and the Lenders against the Loan Parties in respect of any Obligation (except with respect to Liens of the Junior DIP Lenders solely with respect to Unencumbered Assets and the DIP Proceeds Account), subject, in each case, to the terms of the DIP Order and the Canadian Orders;

(ii)    the Liens in favor of the Collateral Agent and the Lenders set forth in Section 13.04, the DIP Order and the Canadian Orders shall constitute valid and perfected Liens and security interests with the priority as set forth in the DIP Order (and with respect to the Canadian Collateral, with the priority as set forth in the DIP Order and the Canadian Orders), and shall be prior to all other Liens and security interests, now existing or hereafter arising, in favor of any other creditor or any other Person whatsoever (other than the Carve-Out and the Canadian Priority Charges), in each case subject to and in accordance with the DIP Order and the Canadian Orders; and

(iii)    subject to the DIP Order, the Liens in favor of the Collateral Agent and the Lenders set forth herein and in the other Loan Documents, the DIP Order and the Canadian Orders shall continue to be valid and perfected without the necessity that the Administrative Agent file financing statements or mortgages, take possession or control of any Collateral, or otherwise perfect its Lien under applicable non-bankruptcy law.

Notwithstanding anything to the contrary in this Agreement, the other Loan Documents or the DIP Order, it is expressly understood and agreed that no prepayment, repayment, repurchase, or exchange of Obligations in respect of the Prepetition Term Loans shall occur until all Obligations in respect of the Postpetition B-2 Facility (other than contingent obligations not claimed) have first been indefeasibly paid in full in cash.

. As used in this Article 12, the following terms have the meanings specified below:

"**Benefits**" means, without duplication of any amounts counted as Salary or Wages, pension expenses (including company retirement or 401(k) plan contributions and direct annuity payments) in respect of Employees, all expenses for accident, sickness, hospital, and death benefits to Employees, and the cost of insurance (or self-insured costs) to provide such benefits; any Severance Pay or Other Benefits payable to Employees pursuant to a bona fide voluntary early retirement program or voluntary furlough; and any other similar expenses paid by the Borrower for the benefit of Employees, including other fringe benefit expenses (such as those relating to travel, meals, lodging, trade memberships, dues and registrations, tools or uniforms, moving and relocation costs, education, medical and recreational programs, and company contributions for group accident, health or life insurance) but excluding any Federal, state, or local payroll taxes paid by the Borrower.

"**Cares Act**" means the Coronavirus Aid, Relief, and Economic Security Act of 2020.

"**Corporate Officer**" means, with respect to the Borrower, its president; any vice president in charge of a principal business unit, division, or function (such as sales, administration or finance); any other officer who performs a policy-making function; or any other person who performs similar policy-making functions for the Borrower. Executive officers of subsidiaries or parents of the Borrower may be deemed Corporate Officers of the Borrower if they perform such policy-making functions for the Borrower.

"**Employee**" has the meaning given to the term in section 2 of the National Labor Relations Act (29 U.S.C. 152 and includes any individual employed by an employer subject to the Railway Labor Act (45 U.S.C. 151 et seq.) and for the avoidance of doubt includes all individuals who are employed by the Borrower who are not Corporate Officers.

"**Salary**" means, without duplication of any amounts counted as Benefits, a predetermined regular payment, typically paid on a weekly or less frequent basis but which may be expressed as an hourly, weekly, annual or other rate, as well as cost of living differentials, vacation time, paid time off, sick leave, and overtime pay, paid by the Borrower to its Employees, but excluding any Federal, state, or local payroll taxes paid by the Borrower.

"**Severance Pay or Other Benefits**" means any severance payment or other similar benefits, including cash payments, health care benefits, perquisites, the enhancement or acceleration of the payment or vesting of any payment or benefit or any other in-kind benefit payable (whether in lump sum or over time, including after March 24, 2022) by the Borrower to a Corporate Officer or Employee in connection with any termination of such Corporate Officer's or Employee's employment (including, without limitation, resignation, severance, retirement, or constructive termination), which shall be determined and calculated in respect of any Employee or Corporate Officer of the Borrower in the manner prescribed in 17 CFR 229.402(j) (without regard to its limitation to the five most highly compensated executives and using the actual date of termination of employment rather than the last business day of the Borrower's last completed fiscal year as the trigger event).

"**Subsequent Reference Period**" means (i) for a Corporate Officer or Employee whose employment with the Borrower or an Affiliate started during 2019 or later, the 12 month period starting from the end of the month in which the officer or employee commenced employment, if such officer's or employee's total compensation exceeds $425,000 (or $3,000,000) during such period and (ii) for a Corporate Officer or Employee whose Total Compensation first exceeds $425,000 during a 12 month period ending after 2019, the 12 month period starting from the end of the month in which the Corporate Officer's or Employee's Total Compensation first exceeded $425,000 (or $3,000,000).

"**Total Compensation**" means Salary, bonuses, awards of stock and other financial benefits provided by the Borrower to a Corporate Officer or Employee of the Borrower.

"**Wage**" means, without duplication of any amounts counted as Benefits, a payment, typically paid on an hourly, daily, or piecework basis, including cost of living differentials, vacation, paid time off, sick leave, and overtime pay, paid by the Borrower to its Employees, but excluding any Federal, state, or local payroll taxes paid by the Borrower.

*[Different first page link-to-previous setting changed from off in original to on in modified.].*

## APPENDIX E
## TO AMENDED AND RESTATED CREDIT AGREEMENT

### Chapter 11 Milestones

1) By no later than thirty (30) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Bidding Procedures Order, in form and substance reasonably satisfactory to the Junior DIP Lenders.

2) By no later than fifteen (15) calendar days after the Final Order Entry Date, the Borrower, in its capacity as foreign representative on behalf of the Debtors, shall have filed a motion with the Canadian Court for the recognition of, and the Canadian Court shall have issued, the Canadian Final DIP Recognition Order.

3) By no later than forty-five (45) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Final Order, in form and substance satisfactory in all material respects to the Lenders, the Agents, the Junior DIP Lenders and the Junior DIP Agent.

4) By no later than ninety (90) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids for the B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, Net Proceeds at least equal to $250,000,000.

5) By (A) no earlier than one-hundred twenty (120) calendar days after the Petition Date (which may be extended to one-hundred fifty (150) calendar days after the Petition Date with (i) the consent of the Prepetition ABL Agent, the Administrative Agent and the UST Secured Parties (in each case such consent not to be unreasonably withheld) and (ii) the consent of the Junior DIP Lenders in their sole discretion) and (B) not later than one-hundred and fifty (150) calendar days after the Petition Date (which may be extended to one-hundred and eighty (180) calendar days after the Petition Date with (i) the consent of the Prepetition ABL Agent, the Administrative Agent and the UST Secured Parties (in each case such consent not to be unreasonably withheld) and (ii) the consent of the Junior DIP Lenders in their sole discretion), the Debtors shall have consummated one or more Dispositions of all or substantially all of their assets in accordance with the Bidding Procedures Order that generates Net Proceeds in respect of the B-2 Priority Collateral equal to at least 100% of the sum of the aggregate amount of Obligations outstanding hereunder as of such date and the Junior DIP Obligations and shall have indefeasibly repaid both the Junior DIP Obligations and the Obligations outstanding hereunder in full in cash.

*[Different first page link-to-previous setting changed from off in original to on in modified.].*

4873-9780-1580

Exhibit B
to
Amended and Restated Credit Agreement

Amendment No. 4

**<u>Schedules to Amended and Restated Credit Agreement</u>**

[Attached]

**Schedule 1.01(b)**

**Excluded Subsidiaries**

1. OPK Insurance Co. Ltd.

2. YRC Logistics Asia Limited

3. PT Meridian IQ Indonesia International

4. YRC Services S. de R.L. de C.V.

5. Roadway Express, S.A. de C.V.

6. Transcontinental Lease, S. de R.L. de C.V.

7. YRC Transportation, S.A. de C.V.

**Schedule 1.01(c)**

**Owned or Ground Leased Real Property, including, Owned Locations of Inventory, Equipment and Fixtures of the Grantor**

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Buffalo, NY | 6640 Transit Road | Williamsville | NY | 14221 | New Penn Motor Express LLC | Fee-Owned |
| Harrisburg, PA | 475 Terminal Road | Camp Hill | PA | 17011 | New Penn Motor Express LLC | Fee-Owned |
| Philadelphia, PA | 2300 Garry Road | Cinnaminson | NJ | 08077 | New Penn Motor Express LLC | Fee-Owned |
| Pittsburgh, PA | 2950 Grand Avenue | Neville Island | PA | 15225 | New Penn Motor Express LLC | Fee-Owned |
| Providence, RI | 2110 Plainfield Pike | Cranston | RI | 02910 | New Penn Motor Express LLC | Fee-Owned |
| Reading, PA | 3725 Pottsville Pike | Reading | PA | 19605 | New Penn Motor Express LLC | Fee-Owned |
| Rochester, NY | 35 Transport Drive | Rochester | NY | 14623 | New Penn Motor Express LLC | Fee-Owned |
| Southington, CT | 130 Canal Street | Southington | CT | 06489 | New Penn Motor Express LLC | Fee-Owned |
| Syracuse, NY | 7173 Schuyler Road | East Syracuse | NY | 13057 | New Penn Motor Express LLC | Fee-Owned |
| Trenton, NJ | 15 Thomas J. Rhodes Industrial | Mercerville | NJ | 08619 | New Penn Motor Express LLC | Fee-Owned |
| Akron, OH | 3140 Massillon Road | Akron | OH | 44312 | USF Holland LLC | Fee-Owned |
| Atlanta, GA | 4700 Highway 42 | Ellenwood | GA | 30294 | USF Holland LLC | Fee-Owned |
| Birch Run, MI | 11740 Dixie Highway | Birch Run | MI | 48415 | USF Holland LLC | Fee-Owned |
| Buffalo, NY | 6650 Transit Road | Williamsville | NY | 14221 | USF Holland LLC | Fee-Owned |
| Charlotte, NC | 5201 Sunset Road | Charlotte | NC | 28213 | USF Holland LLC | Fee-Owned |
| Chicago, IL | 8601 W 53rd Street | McCook | IL | 60525 | USF Holland LLC | Fee-Owned |
| Cleveland, OH | 10720 Memphis Avenue | Brooklyn | OH | 44144 | USF Holland LLC | Fee-Owned |
| Columbia, SC | 3705 Highway 321 | West Columbia | SC | 29172 | USF Holland LLC | Fee-Owned |
| Columbus, OH | 4800 Journal Street | Columbus | OH | 43228 | USF Holland LLC | Fee-Owned |
| Danville, IL | 72 Eastgate Drive | Danville | IL | 61832 | USF Holland LLC | Fee-Owned |
| Dayton, OH | 2700 Valley Pike | Dayton | OH | 45404 | USF Holland LLC | Fee-Owned |
| Des Moines, IA | 6144 NE 22nd Street | Des Moines | IA | 50313 | USF Holland LLC | Fee-Owned |
| Detroit, MI | 27411 Wick Road | Romulus | MI | 48174 | USF Holland LLC | Fee-Owned |
| Evansville, IN | 8901 N Kentucky Avenue | Evansville | IN | 47711 | USF Holland LLC | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Fort Wayne, IN | 4320 Merchant Road | Fort Wayne | IN | 46818 | USF Holland LLC | Fee-Owned |
| Gaylord, MI | 1830 Calkins Road | Gaylord | MI | 49735 | USF Holland LLC | Fee-Owned |
| Huntington, OH | 95 Holland Drive | Gallipolis | OH | 45631 | USF Holland LLC | Fee-Owned |
| Indianapolis, IN | 2530 S Tibbs Avenue | Indianapolis | IN | 46241 | USF Holland LLC | Fee-Owned |
| Jackson, MI | 1059 Hurst Road | Jackson | MI | 49201 | USF Holland LLC | Fee-Owned |
| Joplin, MO | 2702 Newman Road | Joplin | MO | 64801 | USF Holland LLC | Fee-Owned |
| Kansas City, KS | 9711 State Avenue | Kansas City | KS | 66111 | USF Holland LLC | Fee-Owned |
| Knoxville, TN | 5409 N. National Drive | Knoxville | TN | 37914 | USF Holland LLC | Fee-Owned |
| Lincoln, IL | 700 NE Arch Street | Atlanta | IL | 61723 | USF Holland LLC | Fee-Owned |
| Louisville, KY | 4885 Keystone Boulevard | Jeffersonville | IN | 47130 | USF Holland LLC | Fee-Owned |
| Memphis, TN | 8100 W Sandidge Road | Olive Branch | MS | 38654 | USF Holland LLC | Fee-Owned |
| Nashville, TN | 500 Oak Bluff Lane | Goodlettsville | TN | 37072 | USF Holland LLC | Fee-Owned |
| Omaha, NE | 3219 Nebraska Avenue | Council Bluffs | IA | 51501 | USF Holland LLC | Fee-Owned |
| Owatonna, MN | 200 32nd Avenue NW | Owatonna | MN | 55060 | USF Holland LLC | Fee-Owned |
| St. Louis, MO | 24 Gateway Commerce Center Drive | Edwardsville | IL | 62025 | USF Holland LLC | Fee-Owned |
| Toledo, OH | 20820 Midstar Drive | Bowling Green | OH | 43402 | USF Holland LLC | Fee-Owned |
| Wausau, WI | 501 Spring Road | Mosinee | WI | 54455 | USF Holland LLC | Fee-Owned |
| Wheeling, IL | 1100 Chaddick Drive | Wheeling | IL | 60090 | USF Holland LLC | Fee-Owned |
| Worthington, MN | 172 Industrial Parkway | Jackson | MN | 56143 | USF Holland LLC | Fee-Owned |
| Youngstown, OH | 10855 Market Street | N Lima | OH | 44452 | USF Holland LLC | Fee-Owned |
| Bakersfield, CA | 4901 Lisa Marie Court | Bakersfield | CA | 93313 | USF Reddaway Inc. | Fee-Owned |
| Burlington, WA[1] | 9501 24th Pl West | Everett | WA | 98204 | USF Reddaway Inc. | Leased Land, Fee-Owned Building |
| Fresno, CA | 4556 S Chestnut Avenue | Fresno | CA | 93725 | USF Reddaway Inc. | Fee-Owned |

---

[1]    The property at 9501 24th Pl West, Everett, WA 98204 is a mixture of leased land and a fee-owned building.

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Lake Havasu City, AZ | 1951 San Juan Drive | Lake Havasu City | AZ | 86403 | USF Reddaway Inc. | Fee-Owned |
| Medford, OR | 4000 Hamrick Road | Central Point | OR | 97502 | USF Reddaway Inc. | Fee-Owned |
| Phoenix, AZ | 3045 S 43rd Avenue | Phoenix | AZ | 85009 | USF Reddaway Inc. | Fee-Owned |
| Sacramento, CA | 620 Harbor Boulevard | W Sacramento | CA | 95691 | USF Reddaway Inc. | Fee-Owned |
| Salt Lake City, UT | 4375 W 1385 S | Salt Lake City | UT | 84104 | USF Reddaway Inc. | Fee-Owned |
| Akron, OH | 1275 Ohio Ave | Copley | OH | 44321 | YRC Inc. | Fee-Owned |
| Albany, NY | 37 Frontage Road | Glenmont | NY | 12077 | YRC Inc. | Fee-Owned |
| Albuquerque, NM | 900 64th Street NW | Albuquerque | NM | 87121 | YRC Inc. | Fee-Owned |
| Alexandria, LA | 333 N 3rd Street | Alexandria | LA | 71301 | YRC Inc. | Fee-Owned |
| Atlantic City, NJ | 1641 Eden Road | Millville | NJ | 08332 | YRC Inc. | Fee-Owned |
| Augusta, GA | 4200 Wheeler Road | Martinez | GA | 30907 | YRC Inc. | Fee-Owned |
| Austin, TX | 9018 Tuscany Way | Austin | TX | 78754 | YRC Inc. | Fee-Owned |
| Baltimore, MD | 6311 E Lombard Street | Baltimore | MD | 21224 | YRC Inc. | Fee-Owned |
| Baton Rouge, LA | 956 Hwy 190 West | Port Allen | LA | 70767 | YRC Inc. | Fee-Owned |
| Bellows Falls, VT | 17 Transport Park | Bellows Falls | VT | 05101 | YRC Inc. | Fee-Owned |
| Birmingham, AL | 3518 Industrial Pkwy | Birmingham | AL | 35217 | YRC Inc. | Fee-Owned |
| Boston, MA | 95 Concord Street | North Reading | MA | 01864 | YRC Inc. | Fee-Owned |
| Bowling Green, KY | 300 New Porter Pike | Bowling Green | KY | 42103 | YRC Inc. | Fee-Owned |
| Buffalo, NY | 66 Milens Road | Tonawanda | NY | 14150 | YRC Inc. | Fee-Owned |
| Burlington, VT | 199 Krupp Drive | Williston | VT | '05495 | YRC Inc. | Fee-Owned |
| Charleston, SC | 2243 Wren Street | Charleston | SC | 29418 | YRC Inc. | Fee-Owned |
| Chattanooga, TN | 345 Roadway Drive | Ringgold | GA | 30736 | YRC Inc. | Fee-Owned |
| Chicago Heights, IL | 2000 East Lincoln Highway | Chicago Heights | IL | 60411 | YRC Inc. | Fee-Owned |
| Chicago North, IL | 1000 Chaddick Drive | Wheeling | IL | 60090 | YRC Inc. | Fee-Owned |
| Cincinnati, OH | 10074 Princeton-Glendale Road | West Chester | OH | 45246 | YRC Inc. | Fee-Owned |
| Clarksburg, WV | 6399 Saltwell Road | Bridgeport | WV | 26330 | YRC Inc. | Fee-Owned |
| Cleveland, OH | 5250 Brecksville Road | Richfield | OH | 44286 | YRC Inc. | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Columbia, MO | 8989 E Columbus Court | Columbia | MO | 65201 | YRC Inc. | Fee-Owned |
| Columbia, SC | 1308 Pineview Drive | Columbia | SC | 29209 | YRC Inc. | Fee-Owned |
| Columbus, OH | 5400 Fisher Road | Columbus | OH | 43228 | YRC Inc. | Fee-Owned |
| Dallas, TX | 200 North Beltline Road | Irving | TX | 75061 | YRC Inc. | Fee-Owned |
| Dayton, OH | 2801 Valley Pike | Dayton | OH | 45404 | YRC Inc. | Fee-Owned |
| Decatur, AL | 1901 Highway 20 West | Decatur | AL | 35601 | YRC Inc. | Fee-Owned |
| Detroit, MI | 22701 Van Born Road | Taylor | MI | 48180 | YRC Inc. | Fee-Owned |
| Duluth, MN | 4425 W First Street | Duluth | MN | 55807 | YRC Inc. | Fee-Owned |
| Eau Claire, WI | 3617 McIntyre Avenue | Eau Claire | WI | 54703 | YRC Inc. | Fee-Owned |
| El Paso, TX | 1330 Henry Brennan Drive | El Paso | TX | 79936 | YRC Inc. | Fee-Owned |
| Erie, PA | 3111 McCain Avenue | Erie | PA | 16510 | YRC Inc. | Fee-Owned |
| Fargo, ND | 2502 7th Avenue N | Fargo | ND | 58102 | YRC Inc. | Fee-Owned |
| Fayetteville, NC | 1061 River Road | Fayetteville | NC | 28301 | YRC Inc. | Fee-Owned |
| Flagstaff, AZ | 1814 N Main Street | Flagstaff | AZ | 86004 | YRC Inc. | Fee-Owned |
| Florence, SC | 2257 S Main Street | Florence | SC | 29501 | YRC Inc. | Fee-Owned |
| Fort Myers, FL | 2635 Rockfill Road | Fort Myers | FL | 33916 | YRC Inc. | Fee-Owned |
| Fort Wayne, IN | 3513 Adams Center Road | Fort Wayne | IN | 46806 | YRC Inc. | Fee-Owned |
| Fort Worth, TX | 5501 Campus Drive | Fort Worth | TX | 76140 | YRC Inc. | Fee-Owned |
| Fresno, CA | 2440 E Church Avenue | Fresno | CA | 93706 | YRC Inc. | Fee-Owned |
| Goodland, KS | 2815 S Highway 27 | Goodland | KS | 67735 | YRC Inc. | Fee-Owned |
| Grand Junction, CO | 3207 "F" Road | Clifton | CO | 81520 | YRC Inc. | Fee-Owned |
| Grand Rapids, MI | 2180 Chicago Drive SW | Wyoming | MI | 49509 | YRC Inc. | Fee-Owned |
| Greensboro, NC | 1255 NC Highway 66 S | Kernersville | NC | 27284 | YRC Inc. | Fee-Owned |
| Hagerstown, MD | 311 East Oak Ridge Drive | Hagerstown | MD | 21740 | YRC Inc. | Fee-Owned |
| Harrisburg, PA | 100 Roadway Drive | Carlisle | PA | 17015 | YRC Inc. | Fee-Owned |
| Honolulu, HI | 94-164 Leokane Street | Waipahu | HI | 96797 | YRC Inc. | Fee-Owned |
| Indianapolis, IN | 1818 S High School Road | Indianapolis | IN | 46241 | YRC Inc. | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Jackson, MS | 102 Carrier Boulevard | Richland | MS | 39218 | YRC Inc. | Fee-Owned |
| Jackson, TN | 88 E L Morgan Drive | Jackson | TN | 38305 | YRC Inc. | Fee-Owned |
| Jacksonville, FL | 3404 Clifford Lane | Jacksonville | FL | 32209 | YRC Inc. | Fee-Owned |
| Jacksonville, NC | 161 Center Street | Jacksonville | NC | 28540 | YRC Inc. | Fee-Owned |
| Kansas City, MO | 8724 Leeds Road | Kansas City | MO | 64129 | YRC Inc. | Fee-Owned |
| Kearney, NE | 614 Third Avenue | Kearney | NE | 68847 | YRC Inc. | Fee-Owned |
| Knoxville, TN | 1212 Hilton Road | Knoxville | TN | 37921 | YRC Inc. | Fee-Owned |
| LaGrange, GA | 677 Hudson Road | LaGrange | GA | 30240 | YRC Inc. | Fee-Owned |
| Lansdale, PA | 750 County Line Road | Line Lexington | PA | 18932 | YRC Inc. | Fee-Owned |
| Laredo, TX | 8011 Killam Industrial Boulevard | Laredo | TX | 78045 | YRC Inc. | Fee-Owned |
| Las Vegas, NV | 5049 W Post Road | Las Vegas | NV | 89118 | YRC Inc. | Fee-Owned |
| Lexington, KY | 460 Transport Court | Lexington | KY | 40511 | YRC Inc. | Fee-Owned |
| Lima, OH | 1505 Bowman Road | Lima | OH | 45804 | YRC Inc. | Fee-Owned |
| Little Rock, AR | 4500 W 65th Street | Little Rock | AR | 72209 | YRC Inc. | Fee-Owned |
| Long Island, NY | 99 Express Street | Plainview | NY | 11803 | YRC Inc. | Fee-Owned |
| Macon, GA | 4241 Interstate Drive | Macon | GA | 31210 | YRC Inc. | Fee-Owned |
| Madison, WI | 2573 Progress Road | Madison | WI | 53716 | YRC Inc. | Fee-Owned |
| Manchester, NH | 9 Cote Lane | Bedford | NH | 03110 | YRC Inc. | Fee-Owned |
| Mason City, IA | 1514 S Pierce Avenue | Mason City | IA | 50401 | YRC Inc. | Fee-Owned |
| Maybrook, NY | 1000 Homestead Avenue | Maybrook | NY | 12543 | YRC Inc. | Fee-Owned |
| Memphis, TN | 3310 Gill Road | Memphis | TN | 38109 | YRC Inc. | Fee-Owned |
| Milwaukee, WI | 6880 S Howell Avenue | Oak Creek | WI | 53154 | YRC Inc. | Fee-Owned |
| Mobile, AL | 1111 Virginia Street | Mobile | AL | 36604 | YRC Inc. | Fee-Owned |
| Monroe, LA | 158 Parker Road | Monroe | LA | 71202 | YRC Inc. | Fee-Owned |
| Montgomery, AL | 5680 Old Hayneville Road | Montgomery | AL | 36108 | YRC Inc. | Fee-Owned |
| Nashville, TN | 7300 Centennial Boulevard | Nashville | TN | 37209 | YRC Inc. | Fee-Owned |
| New Orleans, LA | 12169 Old Gentilly Road | New Orleans | LA | 70129 | YRC Inc. | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| Nogales, AZ | 2859 W Valle Verde Drive | Nogales | AZ | 85621 | YRC Inc. | Fee-Owned |
| Norfolk, VA | 1313 Cavalier Boulevard | Chesapeake | VA | 23323 | YRC Inc. | Fee-Owned |
| Oklahoma City, OK | 8000 SW 15th Street | Oklahoma City | OK | 73128 | YRC Inc. | Fee-Owned |
| Omaha, NE | 4480 S 90th Street | Omaha | NE | 68127 | YRC Inc. | Fee-Owned |
| Oxnard, CA | 2685 Sherwin Avenue | Ventura | CA | 93003 | YRC Inc. | Fee-Owned |
| Paducah, KY | 5151 Charter Oak Drive | Paducah | KY | 42001 | YRC Inc. | Fee-Owned |
| Parkersburg, WV | 300 Drag Strip Road | Belpre | OH | 45714 | YRC Inc. | Fee-Owned |
| Peoria, IL | 780 W Birchwood Street | Morton | IL | 61550 | YRC Inc. | Fee-Owned |
| Philadelphia, PA | 2627 State Road | Bensalem | PA | 19020 | YRC Inc. | Fee-Owned |
| Pontiac, MI | 1280 Joslyn Avenue | Pontiac | MI | 48340 | YRC Inc. | Fee-Owned |
| Portland, ME | 75 Eisenhower Drive | Westbrook | ME | 04092 | YRC Inc. | Fee-Owned |
| Portland, OR | 10510 N Vancouver Way | Portland | OR | 97217 | YRC Inc. | Fee-Owned |
| Providence, RI | 55 Industrial Road | Cumberland | RI | 02864 | YRC Inc. | Fee-Owned |
| Quincy, IL | 2620 N 36th Street | Quincy | IL | 62301 | YRC Inc. | Fee-Owned |
| Richmond, VA | 9600 Express Lane | Richmond | VA | 23237 | YRC Inc. | Fee-Owned |
| Rochester, NY | 1575 Emerson Street | Rochester | NY | 14606 | YRC Inc. | Fee-Owned |
| Rock Island, IL | 3700 78th Avenue West | Rock Island | IL | 61201 | YRC Inc. | Fee-Owned |
| Sacramento, CA | 3210 52nd Avenue | Sacramento | CA | 95823 | YRC Inc. | Fee-Owned |
| Salisbury, MD | 26902 Bethel Concord Road | Seaford | DE | 19973 | YRC Inc. | Fee-Owned |
| San Antonio, TX | 111 Gembler Road | San Antonio | TX | 78219 | YRC Inc. | Fee-Owned |
| Savannah, GA | 3501 Edwin Avenue | Savannah | GA | 31405 | YRC Inc. | Fee-Owned |
| Scranton, PA | 1284 S Main Road | Mountain Top | PA | 18707 | YRC Inc. | Fee-Owned |
| Sherman, TX | 211 Dorset Drive | Sherman | TX | 75092 | YRC Inc. | Fee-Owned |
| Sioux City, IA | 2425 Bridgeport Drive | Sioux City | IA | 51111 | YRC Inc. | Fee-Owned |
| Spartanburg, SC | 580 Shackelford Road | Piedmont | SC | 29673 | YRC Inc. | Fee-Owned |
| Springdale, AR | 1543 Ford Avenue | Springdale | AR | 72764 | YRC Inc. | Fee-Owned |
| Springfield, MO | 5575 E State Hwy 00 | Strafford | MO | 65757 | YRC Inc. | Fee-Owned |

| Location | Street Address | City | State | Zip Code | Loan Party | Fee-Owned / Leased |
|---|---|---|---|---|---|---|
| St. Louis, MO | 400 Barton Street | St. Louis | MO | 63104 | YRC Inc. | Fee-Owned |
| St. Paul, MN | 12400 Dupont Avenue S | Burnsville | MN | 55337 | YRC Inc. | Fee-Owned |
| Syracuse, NY | 7138 Northern Boulevard | East Syracuse | NY | 13057 | YRC Inc. | Fee-Owned |
| Toledo, OH | 4431 South Avenue | Toledo | OH | 43615 | YRC Inc. | Fee-Owned |
| Tracy, CA | 1535 E Pescadero Avenue | Tracy | CA | 95304 | YRC Inc. | Fee-Owned |
| Tucson, AZ | 601 W Flores Street | Tucson | AZ | 85705 | YRC Inc. | Fee-Owned |
| Tupelo, MS | 2226 McCullough Boulevard | Tupelo | MS | 38801 | YRC Inc. | Fee-Owned |
| Waco, TX | 3230 Clay Avenue | Waco | TX | 76711 | YRC Inc. | Fee-Owned |
| Washington, DC | 7600 Preston Drive | Landover | MD | 20785 | YRC Inc. | Fee-Owned |
| Waterville, ME | 44 Sheridan Drive | Fairfield | ME | 04937 | YRC Inc. | Fee-Owned |
| West Palm Beach, FL | 1400 SW 30th Avenue | Boynton Beach | FL | 33426 | YRC Inc. | Fee-Owned |
| Wilmington, DE | 316 New Churchmans Road | New Castle | DE | 19720 | YRC Inc. | Fee-Owned |
| Wilmington, NC | 3511 Highway 421 N | Wilmington | NC | 28401 | YRC Inc. | Fee-Owned |
| Wilson, NC | 555 Jeffreys Road | Rocky Mount | NC | 27804 | YRC Inc. | Fee-Owned |
| Worcester, MA | 464 Hartford Turnpike | Shrewsbury | MA | 01545 | YRC Inc. | Fee-Owned |
| Youngstown, OH | 3020 Gale Drive | Hubbard | OH | 44425 | YRC Inc. | Fee-Owned |
| Oshawa, ON | 285 Blair Street | Whitby | ON | L1N 9V9 | YRC Freight Canada Company | Fee-Owned |
| Woodstock, ON | 1187 Welford Place | Woodstock | ON | N4S 7Y5 | YRC Freight Canada Company | Fee-Owned |
| Stanhope, PQ | 930 Route 147 | Dixville | PQ | J0B 3C0 | YRC Freight Canada Company | Fee-Owned |

**Schedule 1.01(d)**

**Pension Fund Entities**

- Central States, Southeast and Southwest Areas Pension Fund
- Western Conference of Teamsters Pension Trust
- I.B. of T. Union Local No. 710 Pension Fund
- Central Pennsylvania Teamsters Pension Fund
- Road Carriers Local 707 Pension Fund
- Teamsters Local 641 Pension Fund
- Teamsters Pension Trust Fund of Philadelphia and Vicinity
- Western Conference of Teamsters Supplemental Benefit Trust Fund
- Suburban Teamsters of No. IL. Pension Fund
- Freight Drivers and Helpers Local 557 Pension Fund
- Teamsters JC 83 Pension Fund
- Hagerstown Motor Carriers and Teamsters Pension Plan
- Trucking Employees of North Jersey Welfare Fund Inc. - Pension Fund
- Mid-Jersey Trucking Ind. & Teamsters Local 701 Pension Fund
- Management Labor Welfare & Pension Funds Local 1730, I.L.A.
- Employer-Teamsters Local Nos. 175/505 Pension Trust Fund
- International Association of Machinists Motor City Pension Fund
- Hawaii Truckers-Teamsters Union Pension Fund
- Southwestern Pennsylvania and Western Maryland Teamsters & Employers Pension Fund

## Schedule 5.10

### Litigation

1. Jack Peak v. Yellow Corporation, Thomas Joseph O'Connor III, and Darren Hawkins; Case Number 22-CV-02278-EFM, filed July 12, 2023.

2. Central States, Southeast and Southwest Areas Pension Fund; Central States Southwest and Southwest Areas Health and Welfare Fund; and Charles A Whobrey, as Trustee v. YRC Inc. and USF Holland LLC, Case No. 23-CV-4685, filed July 20, 2023.

3. Ricky Adcock, Matthew Brewer, Michael Cottrell, and Johnny Martinez v. Yellow Corporation, Case No. 323-CV-00795, filed August 2, 2023.

4. Armando Rivera v. Yellow Corporation, YRC Inc., USF Holland LLC, New Penn Motor Express LLC and USF Reddaway Inc., filed in the United States District Court for the District of Delaware on August 1, 2023.

5. Jeff Moore and Elizabeth Brook Moore v Yellow Corporation, et al., in the United States Bankruptcy Court for the District of Delaware, Chapter 11, Bankruptcy, Case No. 23-50457 filed on August 7, 2023.

6. Armando Rivera, et al. v Yellow Corporation, et al., in the United States Bankruptcy Court for the District of Delaware, Chapter 11, Bankruptcy, Case No. 23-50456 filed on August 7, 2023.

7. Roger Keef v Yellow Corporation, et al., in the United States Bankruptcy Court for the District of Delaware, Chapter 11, Bankruptcy, Case No. 23-50458 filed on August 7, 2023.

**Schedule 5.11**

**Subsidiaries and Capitalization**

| Loan Parties (as of the Effective Date) | | | |
|---|---|---|---|
| **Issuer** | **Jurisdiction of Formation** | **Issued and Outstanding Shares/Equity Interests** | **Record and Beneficial Owner** |
| Yellow Corporation | Delaware | 52,128,063 shares | Publicly traded |
| 1105481 Ontario Inc. | Ontario, Canada | 100 shares | 100% by Yellow Corporation |
| Express Lane Service, Inc. | Delaware | 100 shares | 100% by Yellow Corporation |
| Roadway LLC | Delaware | 100 units | 100% by Yellow Corporation |
| YRC Association Solutions, Inc. | Delaware | 10,000 shares | 100% by Yellow Corporation |
| YRC MORTGAGES, LLC | Delaware | 10,000 units | 100% by Yellow Corporation |
| YRC Regional Transportation, Inc. | Delaware | 1,000 shares | 100% by Yellow Corporation |
| YRC Enterprise Services, Inc. | Delaware | 1,000 shares | 100% by Yellow Corporation |
| USF Holland LLC | Delaware | 1 membership interest | 100% by Yellow Corporation |
| New Penn Motor Express LLC | Delaware | 1 membership interest | 100% by Yellow Corporation |
| YRC Inc. | Delaware | 200 shares | 100% by Roadway LLC |
| Roadway Next Day Corporation | Delaware | 100 shares | 100% by Roadway LLC |
| YRC Freight Canada Company | Nova Scotia, Canada | 100 Class B Common 7,511,100 Class A Voting Common | 100% by YRC Inc. |
| USF Holland International Sales Corporation | Nova Scotia, Canada | 1 Common Share | 100% by USF Holland LLC |
| Roadway Express International, Inc. | Delaware | 1,000 shares | 100% by YRC Inc. |
| Yellow Logistics, Inc. | Delaware | 100 shares | 100% by YRC Inc. |

| | | | |
|---|---|---|---|
| YRC LOGISTICS SERVICES, INC. | Illinois | 50 | 100% by YRC Regional Transportation, Inc. |
| YRC Logistics Inc. | Ontario, Canada | 100 shares | 100% by YRC LOGISTICS SERVICES, INC. |
| USF Bestway Inc. | Arizona | 283.4 shares | 100% by YRC Regional Transportation, Inc. |
| USF Dugan Inc. | Kansas | 1,000,000 shares | 100% by YRC Regional Transportation, Inc. |
| USF RedStar LLC | Delaware | 1 membership interest | 100% by YRC Regional Transportation, Inc. |
| USF Reddaway Inc. | Oregon | 40.5 shares | 100% by YRC Regional Transportation, Inc. |
| YRC International Investments, Inc. | Delaware | 1,000 shares | 100% by Yellow Corporation |

| Non-Loan Parties as of the Effective Date | | | |
|---|---|---|---|
| **Issuer** | **Jurisdiction of Formation** | **Issued and Outstanding Shares/Equity Interests** | **Record and Beneficial Owner** |
| OPK Insurance Co. Ltd. | Bermuda | 120,000 | 100% by Yellow Corporation |
| YRC Logistics Asia Limited | Hong Kong | 357,501,711 | 100% by Yellow Corporation |
| YRC Services S. de R.L. de C.V. | Mexico | 2 entity quotas | 100% by YRC Transportation, S.A. de C.V. |
| PT Meridian IQ Indonesia International | Indonesia | $50,000 paid in capital | 100% by YRC Logistics Asia Limited |
| Roadway Express, S.A. de C.V. | Mexico | 25,000 | 99.99% by YRC Inc. .01% by Transcontinental Lease, S. de R.L de C.V. |
| Transcontinental Lease, S. de R.L. de C.V. | Mexico | 50 | 99.99% by YRC Inc. .01% by Roadway Express International, Inc. |

| YRC Transportation, S.A. de C.V. | Mexico | 5,000 | 58.9% by YRC Inc. 41.1% by YRC Freight Canada Company |
|---|---|---|---|

## Schedule 5.22(a)

## Rolling Stock that constitutes Prepetition UST Tranche B Joint Collateral

As of August 28, 2023

[Attached]

| CATEGORY | TYPE |
|----------|------|
| 1 | UST Tranche B Priority Collateral |
| 2 | UST Tranche B Joint Collateral |

| CODE | OPCO |
|------|------|
| HMES | USF Holland LLC |
| NPME | New Penn Motor Express LLC |
| REIM | YRC Freight Canada Company |
| RETL | USF Reddaway Inc. |
| YRCF | YRC Inc. (d/b/a/ YRC Freight) |

| VIN | BRAND | UNIT | TYPE | TITLE STATE | REGISTRATION STATE | COLLATERAL CATEGORY | MAKE |
|-----|-------|------|------|-------------|--------------------|--------------------|------|
| 3AKGGEDV4GDHC4909 | HMES | 16070 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4884 | HMES | 16078 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC4887 | HMES | 16080 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4897 | HMES | 16088 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5026 | HMES | 16113 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4936 | HMES | 16141 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4903 | HMES | 16158 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4913 | HMES | 16159 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4919 | HMES | 16193 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3825 | HMES | 17066 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3833 | HMES | 17074 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3843 | HMES | 17084 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3873 | HMES | 17114 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3878 | HMES | 17119 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3941 | HMES | 17182 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3965 | HMES | 17206 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3978 | HMES | 17219 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3989 | HMES | 17230 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4011 | HMES | 17252 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4028 | HMES | 17269 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4051 | HMES | 17292 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4057 | HMES | 17298 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4070 | HMES | 17311 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4922 | HMES | 79849 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHM6403 | HMES | 79862 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5033 | HMES | 79877 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4914 | HMES | 79939 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3976 | HMES | 79940 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4998 | HMES | 79945 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4829 | HMES | 79947 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4902 | HMES | 79952 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5036 | HMES | 79953 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5077 | HMES | 79954 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5059 | HMES | 79955 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5069 | HMES | 79980 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3813 | HMES | 89251 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4917 | HMES | 89263 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4814 | HMES | 16003 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4815 | HMES | 16004 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC4825 | HMES | 16014 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4896 | HMES | 16027 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5007 | HMES | 16033 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4875 | HMES | 16064 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4882 | HMES | 16065 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4894 | HMES | 16066 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4900 | HMES | 16068 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4908 | HMES | 16069 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5029 | HMES | 16074 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5053 | HMES | 16076 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4886 | HMES | 16079 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4877 | HMES | 16083 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4885 | HMES | 16085 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4888 | HMES | 16086 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4891 | HMES | 16087 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4991 | HMES | 16091 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4993 | HMES | 16093 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5010 | HMES | 16097 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5011 | HMES | 16098 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5012 | HMES | 16099 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5013 | HMES | 16100 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5014 | HMES | 16101 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5015 | HMES | 16102 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5016 | HMES | 16103 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5017 | HMES | 16104 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5018 | HMES | 16105 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5019 | HMES | 16106 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5020 | HMES | 16107 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5021 | HMES | 16108 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5022 | HMES | 16109 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5023 | HMES | 16110 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5024 | HMES | 16111 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5025 | HMES | 16112 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5028 | HMES | 16115 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5030 | HMES | 16116 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5045 | HMES | 16117 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5050 | HMES | 16118 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5079 | HMES | 16120 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5085 | HMES | 16121 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4881 | HMES | 16122 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4883 | HMES | 16123 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4889 | HMES | 16124 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC4890 | HMES | 16125 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4893 | HMES | 16126 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4899 | HMES | 16127 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4901 | HMES | 16128 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3AKGGEDV9GDHC4906 | HMES | 16130 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4907 | HMES | 16131 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4911 | HMES | 16133 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4918 | HMES | 16137 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4920 | HMES | 16138 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4924 | HMES | 16139 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4942 | HMES | 16142 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4946 | HMES | 16143 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4892 | HMES | 16146 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4990 | HMES | 16147 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5000 | HMES | 16150 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5003 | HMES | 16151 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5078 | HMES | 16152 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5080 | HMES | 16153 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5081 | HMES | 16154 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5082 | HMES | 16155 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4898 | HMES | 16156 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4915 | HMES | 16161 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4989 | HMES | 16162 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5005 | HMES | 16167 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5006 | HMES | 16168 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5008 | HMES | 16169 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5031 | HMES | 16170 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5032 | HMES | 16171 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5037 | HMES | 16175 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5039 | HMES | 16177 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5040 | HMES | 16178 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5043 | HMES | 16181 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5046 | HMES | 16183 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5047 | HMES | 16184 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5048 | HMES | 16185 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5049 | HMES | 16186 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5054 | HMES | 16187 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5060 | HMES | 16189 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHM6402 | HMES | 16190 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHM6404 | HMES | 16192 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4921 | HMES | 16194 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4923 | HMES | 16196 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4928 | HMES | 16198 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5064 | HMES | 16199 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4879 | HMES | 16202 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4925 | HMES | 16203 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4932 | HMES | 16204 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4934 | HMES | 16205 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4938 | HMES | 16206 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4939 | HMES | 16207 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC4940 | HMES | 16208 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5056 | HMES | 16210 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5057 | HMES | 16211 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5068 | HMES | 16213 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC5074 | HMES | 16214 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5083 | HMES | 16215 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5084 | HMES | 16216 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4929 | HMES | 16217 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5055 | HMES | 16218 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC4905 | HMES | 16219 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4930 | HMES | 16221 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4931 | HMES | 16222 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4935 | HMES | 16223 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC4937 | HMES | 16224 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4941 | HMES | 16225 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4944 | HMES | 16226 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC4945 | HMES | 16227 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5051 | HMES | 16228 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5061 | HMES | 16229 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC5062 | HMES | 16230 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5063 | HMES | 16231 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5065 | HMES | 16232 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5066 | HMES | 16233 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV9GDHC5067 | HMES | 16234 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC5071 | HMES | 16235 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5075 | HMES | 16237 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5073 | HMES | 16238 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3759 | HMES | 17000 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3783 | HMES | 17024 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3785 | HMES | 17026 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3807 | HMES | 17048 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3809 | HMES | 17050 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3810 | HMES | 17051 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3811 | HMES | 17052 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3812 | HMES | 17053 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3814 | HMES | 17055 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3815 | HMES | 17056 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3816 | HMES | 17057 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3817 | HMES | 17058 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3818 | HMES | 17059 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3819 | HMES | 17060 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGGEDV0HLHS3821 | HMES | 17062 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3822 | HMES | 17063 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3823 | HMES | 17064 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3824 | HMES | 17065 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3826 | HMES | 17067 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3828 | HMES | 17069 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3829 | HMES | 17070 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3830 | HMES | 17071 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3831 | HMES | 17072 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3832 | HMES | 17073 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3834 | HMES | 17075 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3835 | HMES | 17076 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3836 | HMES | 17077 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3837 | HMES | 17078 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3838 | HMES | 17079 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3839 | HMES | 17080 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3840 | HMES | 17081 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3841 | HMES | 17082 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3842 | HMES | 17083 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3844 | HMES | 17085 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3846 | HMES | 17087 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3848 | HMES | 17089 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3849 | HMES | 17090 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3851 | HMES | 17092 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3855 | HMES | 17096 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3857 | HMES | 17098 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3858 | HMES | 17099 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3859 | HMES | 17100 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3860 | HMES | 17101 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3861 | HMES | 17102 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3863 | HMES | 17104 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3864 | HMES | 17105 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3865 | HMES | 17106 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3866 | HMES | 17107 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3867 | HMES | 17108 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3869 | HMES | 17110 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3871 | HMES | 17112 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3872 | HMES | 17113 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3874 | HMES | 17115 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3875 | HMES | 17116 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3876 | HMES | 17117 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3879 | HMES | 17120 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3880 | HMES | 17121 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3881 | HMES | 17122 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3882 | HMES | 17123 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3883 | HMES | 17124 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3884 | HMES | 17125 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUJGEDV7HLHS3885 | HMES | 17126 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUJGEDV9HLHS3886 | HMES | 17127 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3887 | HMES | 17128 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3888 | HMES | 17129 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3889 | HMES | 17130 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3891 | HMES | 17132 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3892 | HMES | 17133 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3893 | HMES | 17134 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3894 | HMES | 17135 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3896 | HMES | 17137 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3897 | HMES | 17138 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3898 | HMES | 17139 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3899 | HMES | 17140 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3903 | HMES | 17144 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3905 | HMES | 17146 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3907 | HMES | 17148 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3908 | HMES | 17149 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3909 | HMES | 17150 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3910 | HMES | 17151 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3911 | HMES | 17152 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3912 | HMES | 17153 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3913 | HMES | 17154 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3915 | HMES | 17156 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3916 | HMES | 17157 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3917 | HMES | 17158 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3918 | HMES | 17159 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3920 | HMES | 17161 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3922 | HMES | 17163 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3924 | HMES | 17165 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3925 | HMES | 17166 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3926 | HMES | 17167 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3927 | HMES | 17168 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3929 | HMES | 17170 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3930 | HMES | 17171 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3931 | HMES | 17172 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3932 | HMES | 17173 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3934 | HMES | 17175 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3935 | HMES | 17176 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3936 | HMES | 17177 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3937 | HMES | 17178 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGGEDV1HLHS3939 | HMES | 17179 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3938 | HMES | 17180 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3940 | HMES | 17181 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3942 | HMES | 17183 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3943 | HMES | 17184 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3944 | HMES | 17185 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3946 | HMES | 17187 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3947 | HMES | 17188 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3949 | HMES | 17190 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3950 | HMES | 17191 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3952 | HMES | 17193 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3953 | HMES | 17194 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3954 | HMES | 17195 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3955 | HMES | 17196 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3956 | HMES | 17197 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3957 | HMES | 17198 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3958 | HMES | 17199 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3960 | HMES | 17201 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3961 | HMES | 17202 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3963 | HMES | 17204 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3964 | HMES | 17205 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3966 | HMES | 17207 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3967 | HMES | 17208 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3968 | HMES | 17209 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGHLDV2HSHS3969 | HMES | 17210 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3970 | HMES | 17211 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3971 | HMES | 17212 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3972 | HMES | 17213 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3973 | HMES | 17214 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3974 | HMES | 17215 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3975 | HMES | 17216 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3979 | HMES | 17220 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3981 | HMES | 17222 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3982 | HMES | 17223 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3983 | HMES | 17224 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3984 | HMES | 17225 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3985 | HMES | 17226 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3987 | HMES | 17228 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3988 | HMES | 17229 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3990 | HMES | 17231 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3991 | HMES | 17232 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3993 | HMES | 17234 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3994 | HMES | 17235 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3995 | HMES | 17236 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3996 | HMES | 17237 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3997 | HMES | 17238 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS3998 | HMES | 17239 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4000 | HMES | 17241 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4001 | HMES | 17242 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4003 | HMES | 17244 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4004 | HMES | 17245 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4005 | HMES | 17246 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4006 | HMES | 17247 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4007 | HMES | 17248 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4008 | HMES | 17249 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4009 | HMES | 17250 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4010 | HMES | 17251 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4012 | HMES | 17253 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4013 | HMES | 17254 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4014 | HMES | 17255 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4015 | HMES | 17256 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4017 | HMES | 17258 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4018 | HMES | 17259 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4019 | HMES | 17260 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4020 | HMES | 17261 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4021 | HMES | 17262 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4023 | HMES | 17264 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4024 | HMES | 17265 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4025 | HMES | 17266 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4030 | HMES | 17268 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4030 | HMES | 17271 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4031 | HMES | 17272 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4034 | HMES | 17275 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4035 | HMES | 17276 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4036 | HMES | 17277 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4037 | HMES | 17278 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4039 | HMES | 17280 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4040 | HMES | 17281 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4041 | HMES | 17282 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4042 | HMES | 17283 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4043 | HMES | 17284 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4044 | HMES | 17285 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4045 | HMES | 17286 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4046 | HMES | 17287 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS4047 | HMES | 17288 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4048 | HMES | 17289 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4049 | HMES | 17290 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGGEDV2HLHS4050 | HMES | 17291 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4052 | HMES | 17293 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4053 | HMES | 17294 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4054 | HMES | 17295 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4055 | HMES | 17296 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4056 | HMES | 17297 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4058 | HMES | 17299 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4059 | HMES | 17300 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4060 | HMES | 17301 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS4061 | HMES | 17302 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS4062 | HMES | 17303 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4063 | HMES | 17304 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS4064 | HMES | 17305 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS4065 | HMES | 17306 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6HLHS4066 | HMES | 17307 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS4067 | HMES | 17308 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS4071 | HMES | 17312 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4072 | HMES | 17313 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS4073 | HMES | 17314 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6569 | HMES | 18000 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6571 | HMES | 18002 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6574 | HMES | 18005 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6575 | HMES | 18006 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6576 | HMES | 18007 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6577 | HMES | 18008 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6578 | HMES | 18009 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6579 | HMES | 18010 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6581 | HMES | 18012 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6582 | HMES | 18013 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6583 | HMES | 18014 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6584 | HMES | 18015 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6585 | HMES | 18016 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6586 | HMES | 18017 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6587 | HMES | 18018 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6588 | HMES | 18019 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6589 | HMES | 18020 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6590 | HMES | 18021 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6591 | HMES | 18022 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6592 | HMES | 18023 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6593 | HMES | 18024 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6594 | HMES | 18025 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6595 | HMES | 18026 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6598 | HMES | 18029 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6599 | HMES | 18030 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6600 | HMES | 18031 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6601 | HMES | 18032 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6602 | HMES | 18033 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6603 | HMES | 18034 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6604 | HMES | 18035 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6605 | HMES | 18036 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6606 | HMES | 18037 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6607 | HMES | 18038 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6608 | HMES | 18039 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6609 | HMES | 18040 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6610 | HMES | 18041 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6611 | HMES | 18042 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6612 | HMES | 18043 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6614 | HMES | 18045 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6615 | HMES | 18046 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6616 | HMES | 18047 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6617 | HMES | 18048 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6618 | HMES | 18049 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6619 | HMES | 18050 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6620 | HMES | 18051 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6621 | HMES | 18052 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6622 | HMES | 18053 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6623 | HMES | 18054 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6624 | HMES | 18055 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6625 | HMES | 18056 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6626 | HMES | 18057 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6627 | HMES | 18058 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6628 | HMES | 18059 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6629 | HMES | 18060 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6632 | HMES | 18063 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6634 | HMES | 18065 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6635 | HMES | 18066 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6636 | HMES | 18067 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6637 | HMES | 18068 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6638 | HMES | 18069 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6640 | HMES | 18071 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6641 | HMES | 18072 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6642 | HMES | 18073 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6643 | HMES | 18074 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6644 | HMES | 18075 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6645 | HMES | 18076 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6646 | HMES | 18077 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6647 | HMES | 18078 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGGEDVXJLJN6648 | HMES | 18079 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6649 | HMES | 18080 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6650 | HMES | 18081 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6651 | HMES | 18082 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6653 | HMES | 18084 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6655 | HMES | 18086 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6656 | HMES | 18087 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6657 | HMES | 18088 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6658 | HMES | 18089 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6659 | HMES | 18090 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6660 | HMES | 18091 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6661 | HMES | 18092 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6662 | HMES | 18093 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6663 | HMES | 18094 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6664 | HMES | 18095 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6665 | HMES | 18096 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6666 | HMES | 18097 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6667 | HMES | 18098 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6668 | HMES | 18099 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6669 | HMES | 18100 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6670 | HMES | 18101 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5JLJN6671 | HMES | 18102 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6672 | HMES | 18103 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6673 | HMES | 18104 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6674 | HMES | 18105 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2JLJN6675 | HMES | 18106 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6676 | HMES | 18107 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV6JLJN6677 | HMES | 18108 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6678 | HMES | 18109 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXJLJN6679 | HMES | 18110 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6681 | HMES | 18112 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1JLJN6683 | HMES | 18114 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3JLJN6684 | HMES | 18115 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7JLJN6686 | HMES | 18117 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6687 | HMES | 18118 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9JLJN6690 | HMES | 18121 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6691 | HMES | 18122 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0JLJN6710 | HMES | 18141 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6712 | HMES | 18143 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6714 | HMES | 18145 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1M1AW01Y1HM010161 | NPME | 1720 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y5HM010163 | NPME | 1722 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y7HM010164 | NPME | 1723 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y9HM010165 | NPME | 1724 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y2HM010167 | NPME | 1726 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y6HM010169 | NPME | 1728 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y4HM010171 | NPME | 1730 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y6HM010172 | NPME | 1731 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y8HM010173 | NPME | 1732 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01YXHM010174 | NPME | 1733 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y1HM010175 | NPME | 1734 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y3HM010176 | NPME | 1735 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y7HM010178 | NPME | 1737 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y9HM010179 | NPME | 1738 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y9HM010182 | NPME | 1741 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y0HM010183 | NPME | 1742 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y2HM010184 | NPME | 1743 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y4HM010185 | NPME | 1744 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y6HM010186 | NPME | 1745 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y8HM010187 | NPME | 1746 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01YXHM010188 | NPME | 1747 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y1HM010189 | NPME | 1748 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y6HM084223 | NPME | 131 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y1HM084226 | NPME | 134 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y3HM084227 | NPME | 135 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y3HM084230 | NPME | 138 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y5HM084231 | NPME | 139 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y9HM084233 | NPME | 141 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y0HM084234 | NPME | 142 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y2HM084235 | NPME | 143 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02YXHM084239 | NPME | 147 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y8HM084241 | NPME | 149 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y8HM084224 | NPME | 89249 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y4HM084236 | NPME | 89250 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y5HM010180 | NPME | 1739 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y7HM010181 | NPME | 1740 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y8HM010190 | NPME | 1749 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y4HM084222 | NPME | 130 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02YXHM084225 | NPME | 133 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y5HM084228 | NPME | 136 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y7HM084229 | NPME | 137 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y7HM084232 | NPME | 140 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y8HM084238 | NPME | 146 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW02Y6HM084240 | NPME | 148 | TRACTOR | IN | IN | 2 | MACK |
| 4V4M19EG1GN962785 | REIM | 66324 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG4GN962750 | REIM | 66339 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG6GN962782 | REIM | 66358 | TRACTOR | IN | PQ | 2 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4M19EG2GN962777 | REIM | 66359 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG5GN962739 | REIM | 66360 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG8GN962833 | REIM | 66410 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG5GN962787 | REIM | 66411 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG4GN962764 | REIM | 66541 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG2GN962794 | REIM | 66647 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG0GN962809 | REIM | 66648 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EGXGN962803 | REIM | 66649 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG6GN962748 | REIM | 66664 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EGXGN962798 | REIM | 66665 | TRACTOR | ON | PQ | 2 | VOLVO |
| 4V4M19EG5GN962837 | REIM | 66985 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG7GN962788 | REIM | 67039 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG8GN962752 | REIM | 67040 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG4GN962814 | REIM | 67041 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG6GN962815 | REIM | 67042 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG3GN962836 | REIM | 67103 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG5GN962806 | REIM | 67104 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG1GN962804 | REIM | 67105 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG5GN962742 | REIM | 67106 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG8GN962749 | REIM | 67107 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG3GN962741 | REIM | 67108 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962759 | REIM | 67109 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG4GN962831 | REIM | 67119 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962762 | REIM | 67121 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962826 | REIM | 67124 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG3GN962769 | REIM | 67125 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG5GN962756 | REIM | 67126 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962776 | REIM | 67127 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG1GN962818 | REIM | 67131 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG7GN962824 | REIM | 67134 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG5GN962773 | REIM | 67143 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG1GN962799 | REIM | 67148 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG7GN962774 | REIM | 67151 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG1GN962740 | REIM | 67152 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG9GN962789 | REIM | 67153 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962812 | REIM | 67154 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG6GN962796 | REIM | 67155 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG1GN962821 | REIM | 67156 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG3GN962805 | REIM | 67158 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG9GN962825 | REIM | 67160 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG2GN962827 | REIM | 67163 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG9GN962758 | REIM | 67184 | TRACTOR | IN | PQ | 2 | VOLVO |
| 4V4M19EG7GN962791 | REIM | 67185 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG5GN962823 | REIM | 67186 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG6GN962751 | REIM | 67187 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG9GN962792 | REIM | 67188 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EGXGN962767 | REIM | 67203 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG4GN962828 | REIM | 67204 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG6GN962832 | REIM | 67239 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG8GN962802 | REIM | 67240 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG3GN962786 | REIM | 67246 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EGXGN962834 | REIM | 67247 | TRACTOR | IN | ON | 2 | VOLVO |
| 4V4M19EG0GN962793 | REIM | 67249 | TRACTOR | IN | SK | 2 | VOLVO |
| 4V4M19EG2GN962830 | REIM | 67250 | TRACTOR | IN | SK | 2 | VOLVO |
| 4V4M19EG3GN962819 | REIM | 67253 | TRACTOR | IN | SK | 2 | VOLVO |
| 4V4M19EG9GN962811 | REIM | 67259 | TRACTOR | IN | SK | 2 | VOLVO |
| 4V4M19EG6GN962829 | REIM | 67260 | TRACTOR | IN | SK | 2 | VOLVO |
| 4V4M19EG8GN962816 | REIM | 67271 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG4GN962781 | REIM | 67272 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG9GN962775 | REIM | 67273 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG7GN962743 | REIM | 67275 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG4GN962747 | REIM | 67276 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG4GN962800 | REIM | 67284 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG7GN962810 | REIM | 67285 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG3GN962822 | REIM | 67299 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG6GN962801 | REIM | 67300 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG0GN962745 | REIM | 67311 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG2GN962763 | REIM | 67393 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG7GN962757 | REIM | 67406 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG9GN962744 | REIM | 67424 | TRACTOR | IN | AB | 2 | VOLVO |
| 4V4M19EG7GN962760 | REIM | 67492 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EG1GN962768 | REIM | 67493 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EG2GN962813 | REIM | 67494 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EGXGN962820 | REIM | 67495 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EG1GN962754 | REIM | 67498 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EG3GN962772 | REIM | 67531 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EGXGN962770 | REIM | 67532 | TRACTOR | IN | BC | 2 | VOLVO |
| 4V4M19EG1GN962771 | REIM | 67547 | TRACTOR | IN | BC | 2 | VOLVO |
| 1XPBA48X0HD441869 | RETL | 67390 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441848 | RETL | 67411 | TRACTOR | IN | IN | 2 | PETERBILT |
| 4V4M19EH2EN161417 | RETL | 67648 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN2GN214565 | RETL | 67649 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4M19EH9EN161429 | RETL | 67651 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH7EN161428 | RETL | 67652 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN3GN214526 | RETL | 67655 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4M19EH7EN161400 | RETL | 781827 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH4EN161404 | RETL | 781831 | TRACTOR | IN | IN | 2 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4M19EHXEN161407 | RETL | 781834 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH1EN161411 | RETL | 781838 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH3EN161412 | RETL | 781839 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH5EN161413 | RETL | 781840 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH9EN161415 | RETL | 781842 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH0EN161416 | RETL | 781843 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH6EN161419 | RETL | 781846 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH2EN161420 | RETL | 781847 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH4EN161421 | RETL | 781848 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH6EN161422 | RETL | 781849 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH0EN161433 | RETL | 781860 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH2EN161434 | RETL | 781861 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN4GN214504 | RETL | 781922 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN214505 | RETL | 781923 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214507 | RETL | 781925 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN214508 | RETL | 781926 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214510 | RETL | 781928 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN214511 | RETL | 781929 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN214514 | RETL | 781931 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN0GN214516 | RETL | 781933 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN214523 | RETL | 781938 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214524 | RETL | 781939 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN214525 | RETL | 781940 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN214528 | RETL | 781943 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN214531 | RETL | 781946 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN9GN214532 | RETL | 781947 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN0GN214533 | RETL | 781948 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN2GN214534 | RETL | 781949 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN4GN214535 | RETL | 781950 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN214536 | RETL | 781951 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN214560 | RETL | 781954 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN214562 | RETL | 781956 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN214568 | RETL | 781962 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN9GN214574 | RETL | 781968 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN0GN214595 | RETL | 781970 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN214598 | RETL | 781973 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN2GN214601 | RETL | 781976 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN214603 | RETL | 781978 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN214604 | RETL | 781979 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214605 | RETL | 781980 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN214608 | RETL | 781983 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN214609 | RETL | 781984 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN279615 | RETL | 781987 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN279616 | RETL | 781988 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN279617 | RETL | 781989 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN279622 | RETL | 781994 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN7GN279623 | RETL | 781995 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4MC9EHXEN161448 | RETL | 9260 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDJAPR4GN214619 | RETL | 79804 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR9GN214616 | RETL | 79805 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR3GN214613 | RETL | 79806 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4MC9EH5EN161440 | RETL | 79918 | TRACTOR | IN | IN | 2 | VOLVO |
| 1XPBA48X1HD441878 | RETL | 82036 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X4HD441914 | RETL | 9320 | TRACTOR | IN | IN | 2 | PETERBILT |
| 3HSDGAPN9GN279624 | RETL | 67624 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4M19EH4EN161399 | RETL | 81826 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH6EN161401 | RETL | 81828 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH0EN161402 | RETL | 81829 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH2EN161403 | RETL | 81830 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH1EN161408 | RETL | 81835 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH3EN161409 | RETL | 81836 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH7EN161414 | RETL | 81841 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH4EN161418 | RETL | 81845 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH8EN161423 | RETL | 81850 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH1EN161425 | RETL | 81852 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH5EN161430 | RETL | 81857 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH9EN161432 | RETL | 81859 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH4EN161435 | RETL | 81862 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN3GN084652 | RETL | 81921 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN214506 | RETL | 81924 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN214509 | RETL | 81927 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN9GN214515 | RETL | 81932 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN214530 | RETL | 81945 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN9GN214563 | RETL | 81957 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214569 | RETL | 81963 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN214575 | RETL | 81969 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN4GN214602 | RETL | 81977 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN279620 | RETL | 81992 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN279621 | RETL | 81993 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBA48X4HD441843 | RETL | 82001 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X8HD441845 | RETL | 82003 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441847 | RETL | 82005 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441850 | RETL | 82008 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441851 | RETL | 82009 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441852 | RETL | 82010 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X7HD441853 | RETL | 82011 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441854 | RETL | 82012 | TRACTOR | IN | IN | 2 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBA48X0HD441855 | RETL | 82013 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X2HD441856 | RETL | 82014 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X4HD441857 | RETL | 82015 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X6HD441858 | RETL | 82016 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X8HD441859 | RETL | 82017 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X4HD441860 | RETL | 82018 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X6HD441861 | RETL | 82019 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X8HD441862 | RETL | 82020 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48XXHD441863 | RETL | 82021 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441864 | RETL | 82022 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441865 | RETL | 82023 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441866 | RETL | 82024 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X7HD441867 | RETL | 82025 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441868 | RETL | 82026 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X7HD441870 | RETL | 82028 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441871 | RETL | 82029 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X0HD441872 | RETL | 82030 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X2HD441873 | RETL | 82031 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X4HD441874 | RETL | 82032 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X6HD441875 | RETL | 82033 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X8HD441876 | RETL | 82034 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48XXHD441877 | RETL | 82035 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441879 | RETL | 82037 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48XXHD441880 | RETL | 82038 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441881 | RETL | 82039 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441882 | RETL | 82040 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441883 | RETL | 82041 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441885 | RETL | 82043 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X0HD441886 | RETL | 82044 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X2HD441887 | RETL | 82045 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X6HD441889 | RETL | 82047 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X4HD441891 | RETL | 82049 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X6HD441892 | RETL | 82050 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X8HD441893 | RETL | 82051 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48XXHD441894 | RETL | 82052 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441895 | RETL | 82053 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441896 | RETL | 82054 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441897 | RETL | 82055 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X7HD441898 | RETL | 82056 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441899 | RETL | 82057 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1HD441900 | RETL | 82058 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X3HD441901 | RETL | 82059 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441902 | RETL | 82060 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X7HD441903 | RETL | 82061 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X9HD441904 | RETL | 82062 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X0HD441905 | RETL | 82063 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X1JD478970 | RETL | 82117 | TRACTOR | IN | IN | 2 | PETERBILT |
| 4V4MC9EH9EN161439 | RETL | 9251 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH7EN161441 | RETL | 9253 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH1EN161449 | RETL | 9261 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH8EN161450 | RETL | 9262 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EHXEN161451 | RETL | 9263 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH1EN161452 | RETL | 9264 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH3EN161453 | RETL | 9265 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH5EN161454 | RETL | 9266 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH7EN161455 | RETL | 9267 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH0EN161457 | RETL | 9269 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9E0EN161460 | RETL | 9272 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDJAPR4GN084664 | RETL | 9306 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPRXGN214611 | RETL | 9307 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR1GN214612 | RETL | 9308 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR7GN214615 | RETL | 9311 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR0GN214617 | RETL | 9313 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDJAPR2GN214618 | RETL | 9314 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBD49X9HD441911 | RETL | 9317 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X2HD441913 | RETL | 9319 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X4HD442030 | RETL | 9321 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X6HD442031 | RETL | 9322 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X8HD442032 | RETL | 9323 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49XXHD442033 | RETL | 9324 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBD49X1HD442034 | RETL | 9325 | TRACTOR | IN | IN | 2 | PETERBILT |
| 4V4M19EG2GN962746 | YRCF | 66210 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG6GN962779 | YRCF | 66212 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG8GN962783 | YRCF | 66242 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG3GN962755 | YRCF | 66243 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG4GN962778 | YRCF | 66259 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG1GN962835 | YRCF | 66265 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EGXGN962817 | YRCF | 66273 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG9GN962808 | YRCF | 66282 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG7GN962807 | YRCF | 66288 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG8GN962797 | YRCF | 66294 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG6GN962765 | YRCF | 66334 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG2GN962780 | YRCF | 66338 | TRACTOR | IN | IN | 2 | VOLVO |
| 3AKBGADV2GDHC3552 | YRCF | 66530 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 4V4M19EHXEN161424 | YRCF | 66855 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPNXGN214538 | YRCF | 66859 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN2GN214520 | YRCF | 66863 | TRACTOR | IN | IN | 2 | INTERNATIONAL |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3HSDGAPN5GN214527 | YRCF | 66865 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN214567 | YRCF | 66866 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN8GN214599 | YRCF | 66868 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN214607 | YRCF | 66871 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN6GN279614 | YRCF | 66872 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN3GN279618 | YRCF | 66873 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1M1AW01Y5HM010177 | YRCF | 67057 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y4HM010168 | YRCF | 67115 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y3HM010162 | YRCF | 67116 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y6HM010155 | YRCF | 67138 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01YXHM010160 | YRCF | 67142 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y8HM010156 | YRCF | 67144 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01YXHM010157 | YRCF | 67150 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y1HM010158 | YRCF | 67157 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y0HM010166 | YRCF | 67166 | TRACTOR | IN | IN | 2 | MACK |
| 1M1AW01Y2HM010170 | YRCF | 67330 | TRACTOR | MI | IN | 2 | MACK |
| 1XPBAP8X9JD487014 | YRCF | 67352 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X2JD486982 | YRCF | 67353 | TRACTOR | IN | IN | 2 | PETERBILT |
| 3HSDGAPN9GN214529 | YRCF | 67379 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBA48XXHD441846 | YRCF | 67380 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X2HD441842 | YRCF | 67381 | TRACTOR | IN | IN | 2 | PETERBILT |
| 3HSDGAPN3GN214610 | YRCF | 67387 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN279619 | YRCF | 67388 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBA48X6HD441844 | YRCF | 67389 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X5HD441849 | YRCF | 67410 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XKYAP8X1JJ207636 | YRCF | 67429 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XPBAP8X0JD486981 | YRCF | 67441 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X8JD487005 | YRCF | 67442 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XKYAP8X0JJ207630 | YRCF | 67450 | TRACTOR | IN | IN | 2 | KENWORTH |
| 3HSDGAPN8GN214537 | YRCF | 67456 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN5GN214561 | YRCF | 67457 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBAP8X9JD481648 | YRCF | 67510 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XKYAP8X1JJ207622 | YRCF | 67513 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X5JJ207638 | YRCF | 67555 | TRACTOR | IN | IN | 2 | KENWORTH |
| 4V4W19EG4KN901917 | YRCF | 67584 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901926 | YRCF | 67585 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901903 | YRCF | 67612 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN6GN214519 | YRCF | 67631 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 4V4M19EHXEN161410 | YRCF | 781837 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH3EN161426 | YRCF | 781853 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH5EN161427 | YRCF | 781854 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH7EN161431 | YRCF | 781858 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN2GN214517 | YRCF | 781934 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN4GN214518 | YRCF | 781935 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN0GN214564 | YRCF | 781958 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPNXGN214572 | YRCF | 781966 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN214573 | YRCF | 781967 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN0GN214600 | YRCF | 781975 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN1GN214606 | YRCF | 781981 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1FUGGED0HLHS3902 | YRCF | 67254 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS4016 | YRCF | 67263 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3773 | YRCF | 79355 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4029 | YRCF | 79440 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 4V4MC9EH4EN161459 | YRCF | 79560 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH9EN161456 | YRCF | 79561 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH2EN161458 | YRCF | 79563 | TRACTOR | IN | IN | 2 | VOLVO |
| 3AKGGEDV2GDHC5041 | YRCF | 79596 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4995 | YRCF | 79597 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC4813 | YRCF | 79598 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4943 | YRCF | 79599 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC4996 | YRCF | 79600 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV3GDHC5002 | YRCF | 79601 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4904 | YRCF | 79664 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGED0HLHS3919 | YRCF | 79676 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3868 | YRCF | 79716 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6633 | YRCF | 79722 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3945 | YRCF | 79723 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS4002 | YRCF | 79724 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS4033 | YRCF | 79725 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5044 | YRCF | 79730 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3977 | YRCF | 79731 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV0GDHC4910 | YRCF | 79732 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3845 | YRCF | 79735 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3870 | YRCF | 79742 | TRACTOR | MI | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3951 | YRCF | 79743 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDVXHLHS3986 | YRCF | 79744 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3895 | YRCF | 79745 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3856 | YRCF | 79746 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS4069 | YRCF | 79751 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3992 | YRCF | 79757 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8JLJN6597 | YRCF | 79758 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3850 | YRCF | 79761 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4916 | YRCF | 79762 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV3HLHS3862 | YRCF | 79764 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5072 | YRCF | 79765 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5058 | YRCF | 79766 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3820 | YRCF | 79767 | TRACTOR | IN | IN | 2 | FREIGHTLINER |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1FUGGEDVXHLHS4068 | YRCF | 79768 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS4026 | YRCF | 79769 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4997 | YRCF | 79771 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4912 | YRCF | 79772 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4927 | YRCF | 79773 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV1HLHS3827 | YRCF | 79774 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV8GDHC5027 | YRCF | 79778 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC4933 | YRCF | 79867 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV9HLHS3901 | YRCF | 79887 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4880 | YRCF | 79888 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC4823 | YRCF | 79894 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV2HLHS3853 | YRCF | 79913 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC5042 | YRCF | 79925 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDVXGDHC4994 | YRCF | 79942 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3914 | YRCF | 79971 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV1GDHC5001 | YRCF | 79973 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4HLHS3904 | YRCF | 79984 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1M1AW02Y6HM084237 | YRCF | 79985 | TRACTOR | IN | IN | 2 | MACK |
| 1FUGGEDVXJLJN6570 | YRCF | 79987 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV2GDHC5038 | YRCF | 79989 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV6GDHC4992 | YRCF | 89238 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV4GDHC4926 | YRCF | 89239 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV5HLHS3877 | YRCF | 89240 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3906 | YRCF | 89241 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS3933 | YRCF | 89242 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3999 | YRCF | 89243 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV0HLHS4032 | YRCF | 89244 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3959 | YRCF | 89259 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV4JLJN6631 | YRCF | 89261 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV7HLHS3847 | YRCF | 89264 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV7GDHC5052 | YRCF | 89265 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 3AKGGEDV5GDHC5034 | YRCF | 89268 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1FUGGEDV8HLHS3923 | YRCF | 89276 | TRACTOR | IN | IN | 2 | FREIGHTLINER |
| 1XKYAP8X8JJ207617 | YRCF | 12480 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8XXJJ207618 | YRCF | 12481 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X1JJ207619 | YRCF | 12482 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X8JJ207620 | YRCF | 12483 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8XXJJ207621 | YRCF | 12484 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X3JJ207623 | YRCF | 12486 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X7JJ207625 | YRCF | 12488 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X9JJ207626 | YRCF | 12489 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X0JJ207627 | YRCF | 12490 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X2JJ207628 | YRCF | 12491 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X4JJ207629 | YRCF | 12492 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X2JJ207631 | YRCF | 12494 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X4JJ207632 | YRCF | 12495 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X6JJ207633 | YRCF | 12496 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8XXJJ207635 | YRCF | 12498 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XKYAP8X3JJ207637 | YRCF | 12500 | TRACTOR | IN | IN | 2 | KENWORTH |
| 1XPBAP8XXJD486969 | YRCF | 12740 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X5JD486975 | YRCF | 12746 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X2JD486979 | YRCF | 12750 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X3JD487008 | YRCF | 12779 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X7JD487013 | YRCF | 12784 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBAP8X6JD487018 | YRCF | 12789 | TRACTOR | IN | IN | 2 | PETERBILT |
| 4V4W19EG5KN901878 | YRCF | 12971 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901879 | YRCF | 12972 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901880 | YRCF | 12973 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901881 | YRCF | 12974 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901882 | YRCF | 12975 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901883 | YRCF | 12976 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901884 | YRCF | 12977 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901885 | YRCF | 12978 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901886 | YRCF | 12979 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901887 | YRCF | 12980 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901888 | YRCF | 12981 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901889 | YRCF | 12982 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901890 | YRCF | 12983 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901891 | YRCF | 12984 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901892 | YRCF | 12985 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901893 | YRCF | 12986 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901894 | YRCF | 12987 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901895 | YRCF | 12988 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901896 | YRCF | 12989 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901897 | YRCF | 12990 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901898 | YRCF | 12991 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901899 | YRCF | 12992 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901900 | YRCF | 12993 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901901 | YRCF | 12994 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901902 | YRCF | 12995 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901904 | YRCF | 12997 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901905 | YRCF | 12998 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901906 | YRCF | 12999 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901907 | YRCF | 14000 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901908 | YRCF | 14001 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901909 | YRCF | 14002 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901910 | YRCF | 14003 | TRACTOR | IN | IN | 2 | VOLVO |

| 4V4W19EG3KN901911 | YRCF | 14004 | TRACTOR | IN | IN | 2 | VOLVO |
|---|---|---|---|---|---|---|---|
| 4V4W19EG5KN901912 | YRCF | 14005 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901913 | YRCF | 14006 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901914 | YRCF | 14007 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901915 | YRCF | 14008 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901916 | YRCF | 14009 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901919 | YRCF | 14012 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901920 | YRCF | 14013 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901921 | YRCF | 14014 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901922 | YRCF | 14015 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901923 | YRCF | 14016 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901924 | YRCF | 14017 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901925 | YRCF | 14018 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901927 | YRCF | 14020 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901928 | YRCF | 14021 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901929 | YRCF | 14022 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901930 | YRCF | 14023 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901931 | YRCF | 14024 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901932 | YRCF | 14025 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901933 | YRCF | 14026 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901934 | YRCF | 14027 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901935 | YRCF | 14028 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901936 | YRCF | 14029 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901937 | YRCF | 14030 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901938 | YRCF | 14031 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901939 | YRCF | 14032 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901940 | YRCF | 14033 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901942 | YRCF | 14035 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901943 | YRCF | 14036 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901944 | YRCF | 14037 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG9KN901945 | YRCF | 14038 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG0KN901946 | YRCF | 14039 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901947 | YRCF | 14040 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901948 | YRCF | 14041 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901949 | YRCF | 14042 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG2KN901950 | YRCF | 14043 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG4KN901951 | YRCF | 14044 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG6KN901952 | YRCF | 14045 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG8KN901953 | YRCF | 14046 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EGXKN901954 | YRCF | 14047 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG1KN901955 | YRCF | 14048 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG3KN901956 | YRCF | 14049 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG5KN901957 | YRCF | 14050 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN901958 | YRCF | 14051 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4W19EG7KN907601 | YRCF | 14352 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EGXGN962784 | YRCF | 47554 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EG4GN962795 | YRCF | 47577 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4M19EH6EN161405 | YRCF | 81832 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDGAPN2GN214596 | YRCF | 81971 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 3HSDGAPN4GN214597 | YRCF | 81972 | TRACTOR | IN | IN | 2 | INTERNATIONAL |
| 1XPBA48X7HD441884 | YRCF | 82042 | TRACTOR | IN | IN | 2 | PETERBILT |
| 1XPBA48X4HD441888 | YRCF | 82046 | TRACTOR | IN | IN | 2 | PETERBILT |
| 4V4MC9EH7EN161438 | YRCF | 9250 | TRACTOR | IN | IN | 2 | VOLVO |
| 4V4MC9EH6EN161446 | YRCF | 9258 | TRACTOR | IN | IN | 2 | VOLVO |
| 3HSDJAPR5GN214614 | YRCF | 9310 | TRACTOR | IN | IN | 2 | INTERNATIONAL |

| VIN | BRAND | UNIT | TYPE | TITLE STATE | REGISTRATION STATE | COLLATERAL CATEGORY | MAKE |
|-----|-------|------|------|-------------|--------------------|--------------------|------|
| 1DW1A2810FS596101 | HMES | 595000 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2812FS596102 | HMES | 595001 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2814FS596103 | HMES | 595002 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2816FS596104 | HMES | 595003 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2818FS596105 | HMES | 595004 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A281XFS596106 | HMES | 595005 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2811FS596107 | HMES | 595006 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2813FS596108 | HMES | 595007 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2815FS596109 | HMES | 595008 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A2811FS596110 | HMES | 595009 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4024FS596201 | HMES | 505000 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4026FS596202 | HMES | 505001 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4028FS596203 | HMES | 505002 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A402XFS596204 | HMES | 505003 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4021FS596205 | HMES | 505004 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4023FS596206 | HMES | 505005 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4025FS596207 | HMES | 505006 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4027FS596208 | HMES | 505007 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4029FS596209 | HMES | 505008 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4025FS596210 | HMES | 505009 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4027FS596211 | HMES | 505010 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4029FS596212 | HMES | 505011 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4020FS596213 | HMES | 505012 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4022FS596214 | HMES | 505013 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4024FS596215 | HMES | 505014 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4026FS596216 | HMES | 505015 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4028FS596217 | HMES | 505016 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A402XFS596218 | HMES | 505017 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4021FS596219 | HMES | 505018 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4028FS596220 | HMES | 505019 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A402XFS596221 | HMES | 505020 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4021FS596222 | HMES | 505021 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4023FS596223 | HMES | 505022 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4025FS596224 | HMES | 505023 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4027FS596225 | HMES | 505024 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577657 | HMES | 515157 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577689 | HMES | 515189 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577829 | HMES | 515329 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577814 | HMES | 515314 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577937 | HMES | 585036 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596451 | HMES | 585121 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577500 | HMES | 515000 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577501 | HMES | 515001 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577502 | HMES | 515002 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577503 | HMES | 515003 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577504 | HMES | 515004 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577505 | HMES | 515005 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577506 | HMES | 515006 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577507 | HMES | 515007 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577508 | HMES | 515008 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577509 | HMES | 515009 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577510 | HMES | 515010 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577511 | HMES | 515011 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577512 | HMES | 515012 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577513 | HMES | 515013 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577514 | HMES | 515014 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577515 | HMES | 515015 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577516 | HMES | 515016 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577517 | HMES | 515017 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577518 | HMES | 515018 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577519 | HMES | 515019 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577520 | HMES | 515020 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577521 | HMES | 515021 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577522 | HMES | 515022 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577523 | HMES | 515023 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577524 | HMES | 515024 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577525 | HMES | 515025 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577526 | HMES | 515026 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577527 | HMES | 515027 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577528 | HMES | 515028 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577529 | HMES | 515029 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577530 | HMES | 515030 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577531 | HMES | 515031 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577532 | HMES | 515032 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5329FB577533 | HMES | 515033 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577534 | HMES | 515034 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577535 | HMES | 515035 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577536 | HMES | 515036 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577537 | HMES | 515037 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577538 | HMES | 515038 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577539 | HMES | 515039 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577540 | HMES | 515040 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577541 | HMES | 515041 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577542 | HMES | 515042 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577543 | HMES | 515043 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577544 | HMES | 515044 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577545 | HMES | 515045 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577546 | HMES | 515046 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577547 | HMES | 515047 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577548 | HMES | 515048 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577549 | HMES | 515049 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577550 | HMES | 515050 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577551 | HMES | 515051 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577552 | HMES | 515052 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577553 | HMES | 515053 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577554 | HMES | 515054 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577555 | HMES | 515055 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577556 | HMES | 515056 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577557 | HMES | 515057 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577558 | HMES | 515058 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577559 | HMES | 515059 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577560 | HMES | 515060 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577561 | HMES | 515061 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577562 | HMES | 515062 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577563 | HMES | 515063 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577564 | HMES | 515064 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577565 | HMES | 515065 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577566 | HMES | 515066 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577567 | HMES | 515067 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577568 | HMES | 515068 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577569 | HMES | 515069 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577570 | HMES | 515070 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577571 | HMES | 515071 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577572 | HMES | 515072 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577573 | HMES | 515073 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577574 | HMES | 515074 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577575 | HMES | 515075 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577576 | HMES | 515076 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577577 | HMES | 515077 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577578 | HMES | 515078 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577579 | HMES | 515079 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577580 | HMES | 515080 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577581 | HMES | 515081 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577582 | HMES | 515082 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577583 | HMES | 515083 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577584 | HMES | 515084 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577585 | HMES | 515085 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577586 | HMES | 515086 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577587 | HMES | 515087 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577588 | HMES | 515088 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577589 | HMES | 515089 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577590 | HMES | 515090 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577591 | HMES | 515091 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577592 | HMES | 515092 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577593 | HMES | 515093 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577594 | HMES | 515094 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577595 | HMES | 515095 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577596 | HMES | 515096 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577597 | HMES | 515097 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577598 | HMES | 515098 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577599 | HMES | 515099 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577600 | HMES | 515100 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577601 | HMES | 515101 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577602 | HMES | 515102 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577603 | HMES | 515103 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577604 | HMES | 515104 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577605 | HMES | 515105 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577606 | HMES | 515106 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577607 | HMES | 515107 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5323FB577608 | HMES | 515108 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577609 | HMES | 515109 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577610 | HMES | 515110 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577611 | HMES | 515111 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577612 | HMES | 515112 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577613 | HMES | 515113 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577614 | HMES | 515114 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577615 | HMES | 515115 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577616 | HMES | 515116 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577617 | HMES | 515117 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577618 | HMES | 515118 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577619 | HMES | 515119 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577620 | HMES | 515120 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577621 | HMES | 515121 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577622 | HMES | 515122 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577623 | HMES | 515123 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577624 | HMES | 515124 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577625 | HMES | 515125 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577626 | HMES | 515126 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577627 | HMES | 515127 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577628 | HMES | 515128 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577629 | HMES | 515129 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577630 | HMES | 515130 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577631 | HMES | 515131 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577632 | HMES | 515132 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577633 | HMES | 515133 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577634 | HMES | 515134 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577635 | HMES | 515135 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577636 | HMES | 515136 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577637 | HMES | 515137 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577638 | HMES | 515138 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577639 | HMES | 515139 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577640 | HMES | 515140 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577641 | HMES | 515141 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577642 | HMES | 515142 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577643 | HMES | 515143 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577644 | HMES | 515144 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577645 | HMES | 515145 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577646 | HMES | 515146 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577647 | HMES | 515147 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577648 | HMES | 515148 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577649 | HMES | 515149 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577650 | HMES | 515150 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577651 | HMES | 515151 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577652 | HMES | 515152 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577653 | HMES | 515153 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577654 | HMES | 515154 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577655 | HMES | 515155 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577656 | HMES | 515156 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577658 | HMES | 515158 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577659 | HMES | 515159 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577660 | HMES | 515160 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577661 | HMES | 515161 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577662 | HMES | 515162 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577663 | HMES | 515163 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577664 | HMES | 515164 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577665 | HMES | 515165 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577666 | HMES | 515166 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577667 | HMES | 515167 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577668 | HMES | 515168 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577669 | HMES | 515169 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577670 | HMES | 515170 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577671 | HMES | 515171 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577672 | HMES | 515172 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577673 | HMES | 515173 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577674 | HMES | 515174 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577675 | HMES | 515175 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577676 | HMES | 515176 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577677 | HMES | 515177 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577678 | HMES | 515178 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577679 | HMES | 515179 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577680 | HMES | 515180 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577681 | HMES | 515181 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577682 | HMES | 515182 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577683 | HMES | 515183 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5328FB577684 | HMES | 515184 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577685 | HMES | 515185 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577686 | HMES | 515186 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577687 | HMES | 515187 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577688 | HMES | 515188 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577690 | HMES | 515190 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577691 | HMES | 515191 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577692 | HMES | 515192 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577693 | HMES | 515193 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577694 | HMES | 515194 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577695 | HMES | 515195 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577696 | HMES | 515196 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577697 | HMES | 515197 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577698 | HMES | 515198 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577699 | HMES | 515199 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577700 | HMES | 515200 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577701 | HMES | 515201 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577702 | HMES | 515202 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577703 | HMES | 515203 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577704 | HMES | 515204 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577705 | HMES | 515205 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577706 | HMES | 515206 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577707 | HMES | 515207 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577708 | HMES | 515208 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577709 | HMES | 515209 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577710 | HMES | 515210 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577711 | HMES | 515211 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577712 | HMES | 515212 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577713 | HMES | 515213 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577714 | HMES | 515214 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577715 | HMES | 515215 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577716 | HMES | 515216 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577717 | HMES | 515217 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577718 | HMES | 515218 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577719 | HMES | 515219 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577720 | HMES | 515220 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577721 | HMES | 515221 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577722 | HMES | 515222 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577723 | HMES | 515223 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577724 | HMES | 515224 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577725 | HMES | 515225 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577726 | HMES | 515226 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577727 | HMES | 515227 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577728 | HMES | 515228 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577729 | HMES | 515229 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577730 | HMES | 515230 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577731 | HMES | 515231 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577732 | HMES | 515232 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577733 | HMES | 515233 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577734 | HMES | 515234 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577735 | HMES | 515235 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577736 | HMES | 515236 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577737 | HMES | 515237 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577738 | HMES | 515238 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577739 | HMES | 515239 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577740 | HMES | 515240 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577741 | HMES | 515241 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577742 | HMES | 515242 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577743 | HMES | 515243 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577744 | HMES | 515244 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577745 | HMES | 515245 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577746 | HMES | 515246 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577747 | HMES | 515247 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577748 | HMES | 515248 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577749 | HMES | 515249 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577750 | HMES | 515250 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577751 | HMES | 515251 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577752 | HMES | 515252 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577753 | HMES | 515253 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577754 | HMES | 515254 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577755 | HMES | 515255 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577756 | HMES | 515256 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577757 | HMES | 515257 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577758 | HMES | 515258 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577759 | HMES | 515259 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5329FB577760 | HMES | 515260 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577761 | HMES | 515261 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577762 | HMES | 515262 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577763 | HMES | 515263 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577764 | HMES | 515264 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577765 | HMES | 515265 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577766 | HMES | 515266 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577767 | HMES | 515267 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577768 | HMES | 515268 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577769 | HMES | 515269 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577770 | HMES | 515270 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577771 | HMES | 515271 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577772 | HMES | 515272 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577773 | HMES | 515273 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577774 | HMES | 515274 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577775 | HMES | 515275 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577776 | HMES | 515276 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577777 | HMES | 515277 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577778 | HMES | 515278 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577779 | HMES | 515279 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577780 | HMES | 515280 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577781 | HMES | 515281 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577782 | HMES | 515282 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577783 | HMES | 515283 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577784 | HMES | 515284 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577785 | HMES | 515285 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577786 | HMES | 515286 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577787 | HMES | 515287 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577788 | HMES | 515288 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577789 | HMES | 515289 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577790 | HMES | 515290 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577791 | HMES | 515291 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577792 | HMES | 515292 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577793 | HMES | 515293 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577794 | HMES | 515294 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577795 | HMES | 515295 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577796 | HMES | 515296 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577797 | HMES | 515297 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577798 | HMES | 515298 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577799 | HMES | 515299 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577800 | HMES | 515300 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577801 | HMES | 515301 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577802 | HMES | 515302 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577803 | HMES | 515303 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577804 | HMES | 515304 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577805 | HMES | 515305 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577806 | HMES | 515306 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577807 | HMES | 515307 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577808 | HMES | 515308 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577809 | HMES | 515309 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577810 | HMES | 515310 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577811 | HMES | 515311 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577812 | HMES | 515312 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577813 | HMES | 515313 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577815 | HMES | 515315 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577816 | HMES | 515316 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577817 | HMES | 515317 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577818 | HMES | 515318 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577819 | HMES | 515319 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577820 | HMES | 515320 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577821 | HMES | 515321 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577822 | HMES | 515322 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577823 | HMES | 515323 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577824 | HMES | 515324 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577825 | HMES | 515325 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577826 | HMES | 515326 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577827 | HMES | 515327 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577828 | HMES | 515328 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577830 | HMES | 515330 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577831 | HMES | 515331 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577832 | HMES | 515332 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577833 | HMES | 515333 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577834 | HMES | 515334 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577835 | HMES | 515335 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB577836 | HMES | 515336 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5327FB577837 | HMES | 515337 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577838 | HMES | 515338 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577839 | HMES | 515339 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB577840 | HMES | 515340 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB577841 | HMES | 515341 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB577842 | HMES | 515342 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB577843 | HMES | 515343 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB577844 | HMES | 515344 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB577845 | HMES | 515345 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB577846 | HMES | 515346 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB577847 | HMES | 515347 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB577848 | HMES | 515348 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB577849 | HMES | 515349 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB596301 | HMES | 515350 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB596302 | HMES | 515351 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596303 | HMES | 515352 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596304 | HMES | 515353 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB596305 | HMES | 515354 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB596306 | HMES | 515355 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596307 | HMES | 515356 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596308 | HMES | 515357 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596309 | HMES | 515358 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596310 | HMES | 515359 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596311 | HMES | 515360 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596312 | HMES | 515361 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB596313 | HMES | 515362 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB596314 | HMES | 515363 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB596315 | HMES | 515364 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB596316 | HMES | 515365 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596317 | HMES | 515366 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596318 | HMES | 515367 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB596319 | HMES | 515368 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596320 | HMES | 515369 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596321 | HMES | 515370 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB596322 | HMES | 515371 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596324 | HMES | 515373 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596325 | HMES | 515374 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596326 | HMES | 515375 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB596327 | HMES | 515376 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB596328 | HMES | 515377 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB596329 | HMES | 515378 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB596330 | HMES | 515379 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB596331 | HMES | 515380 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB596332 | HMES | 515381 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB596333 | HMES | 515382 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596334 | HMES | 515383 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596335 | HMES | 515384 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB596336 | HMES | 515385 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB596337 | HMES | 515386 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596338 | HMES | 515387 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596339 | HMES | 515388 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB596340 | HMES | 515389 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596341 | HMES | 515390 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596342 | HMES | 515391 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596343 | HMES | 515392 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB596344 | HMES | 515393 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB596345 | HMES | 515394 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326FB596346 | HMES | 515395 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB596347 | HMES | 515396 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596348 | HMES | 515397 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596349 | HMES | 515398 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328FB596350 | HMES | 515399 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XFB596351 | HMES | 515400 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321FB596352 | HMES | 515401 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323FB596353 | HMES | 515402 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325FB596354 | HMES | 515403 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327FB596355 | HMES | 515404 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329FB596356 | HMES | 515405 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596357 | HMES | 515406 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322FB596358 | HMES | 515407 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324FB596359 | HMES | 515408 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320FB596360 | HMES | 515409 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704800 | HMES | 537700 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704801 | HMES | 537701 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704802 | HMES | 537702 | TRAILER | IN | IN | 2 | STOUGHTON |

| 1DW1A5329HB704803 | HMES | 537703 | TRAILER | IN | IN | 2 | STOUGHTON |
|---|---|---|---|---|---|---|---|
| 1DW1A5320HB704804 | HMES | 537704 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704805 | HMES | 537705 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704806 | HMES | 537706 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704807 | HMES | 537707 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704808 | HMES | 537708 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704809 | HMES | 537709 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704810 | HMES | 537710 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704811 | HMES | 537711 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704812 | HMES | 537712 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704813 | HMES | 537713 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704814 | HMES | 537714 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704815 | HMES | 537715 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704816 | HMES | 537716 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704817 | HMES | 537717 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704818 | HMES | 537718 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704819 | HMES | 537719 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704820 | HMES | 537720 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704821 | HMES | 537721 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704822 | HMES | 537722 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704823 | HMES | 537723 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704824 | HMES | 537724 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704825 | HMES | 537725 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704826 | HMES | 537726 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704827 | HMES | 537727 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704828 | HMES | 537728 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704829 | HMES | 537729 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704830 | HMES | 537730 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704831 | HMES | 537731 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704832 | HMES | 537732 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704833 | HMES | 537733 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704834 | HMES | 537734 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704835 | HMES | 537735 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704836 | HMES | 537736 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704837 | HMES | 537737 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704838 | HMES | 537738 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704839 | HMES | 537739 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704840 | HMES | 537740 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704841 | HMES | 537741 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704842 | HMES | 537742 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704843 | HMES | 537743 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704844 | HMES | 537744 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704845 | HMES | 537745 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704846 | HMES | 537746 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704847 | HMES | 537747 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704848 | HMES | 537748 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704849 | HMES | 537749 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704850 | HMES | 537750 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704851 | HMES | 537751 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704852 | HMES | 537752 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704853 | HMES | 537753 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704854 | HMES | 537754 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704855 | HMES | 537755 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704856 | HMES | 537756 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704857 | HMES | 537757 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704858 | HMES | 537758 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704859 | HMES | 537759 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704860 | HMES | 537760 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704861 | HMES | 537761 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704862 | HMES | 537762 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704863 | HMES | 537763 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704864 | HMES | 537764 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704865 | HMES | 537765 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704866 | HMES | 537766 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704867 | HMES | 537767 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704868 | HMES | 537768 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704869 | HMES | 537769 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704870 | HMES | 537770 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704871 | HMES | 537771 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704872 | HMES | 537772 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704873 | HMES | 537773 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704874 | HMES | 537774 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704875 | HMES | 537775 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704876 | HMES | 537776 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704877 | HMES | 537777 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A5327HB704878 | HMES | 537778 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704879 | HMES | 537779 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704880 | HMES | 537780 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704881 | HMES | 537781 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704882 | HMES | 537782 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704883 | HMES | 537783 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704884 | HMES | 537784 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704885 | HMES | 537785 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704886 | HMES | 537786 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704887 | HMES | 537787 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704888 | HMES | 537788 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704889 | HMES | 537789 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704890 | HMES | 537790 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704891 | HMES | 537791 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704892 | HMES | 537792 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704893 | HMES | 537793 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704894 | HMES | 537794 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704895 | HMES | 537795 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704896 | HMES | 537796 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704897 | HMES | 537797 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704898 | HMES | 537798 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704899 | HMES | 537799 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704900 | HMES | 537800 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704901 | HMES | 537801 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704902 | HMES | 537802 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704903 | HMES | 537803 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704904 | HMES | 537804 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704905 | HMES | 537805 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704906 | HMES | 537806 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704907 | HMES | 537807 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704908 | HMES | 537808 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704909 | HMES | 537809 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704910 | HMES | 537810 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704911 | HMES | 537811 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704912 | HMES | 537812 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704913 | HMES | 537813 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704914 | HMES | 537814 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704915 | HMES | 537815 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704916 | HMES | 537816 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704917 | HMES | 537817 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704918 | HMES | 537818 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704919 | HMES | 537819 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704920 | HMES | 537820 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704921 | HMES | 537821 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704922 | HMES | 537822 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704923 | HMES | 537823 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704924 | HMES | 537824 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704925 | HMES | 537825 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704926 | HMES | 537826 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704927 | HMES | 537827 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704928 | HMES | 537828 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704929 | HMES | 537829 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704930 | HMES | 537830 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704931 | HMES | 537831 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704932 | HMES | 537832 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704933 | HMES | 537833 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704934 | HMES | 537834 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704935 | HMES | 537835 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704936 | HMES | 537836 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704937 | HMES | 537837 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704938 | HMES | 537838 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704939 | HMES | 537839 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704940 | HMES | 537840 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704941 | HMES | 537841 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704942 | HMES | 537842 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704943 | HMES | 537843 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704944 | HMES | 537844 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704945 | HMES | 537845 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704946 | HMES | 537846 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704947 | HMES | 537847 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704948 | HMES | 537848 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704949 | HMES | 537849 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704950 | HMES | 537850 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5322HB704951 | HMES | 537851 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704952 | HMES | 537852 | TRAILER | IN | IN | 2 | STOUGHTON |

| 1DW1A5326HB704953 | HMES | 537853 | TRAILER | IN | IN | 2 | STOUGHTON |
|---|---|---|---|---|---|---|---|
| 1DW1A5328HB704954 | HMES | 537854 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704955 | HMES | 537855 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704956 | HMES | 537856 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704957 | HMES | 537857 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704958 | HMES | 537858 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704959 | HMES | 537859 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704960 | HMES | 537860 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5325HB704961 | HMES | 537861 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5327HB704962 | HMES | 537862 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5329HB704963 | HMES | 537863 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5320HB704964 | HMES | 537864 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5324HB704966 | HMES | 537866 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704967 | HMES | 537867 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704968 | HMES | 537868 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704969 | HMES | 537869 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5326HB704970 | HMES | 537870 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5328HB704971 | HMES | 537871 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A532XHB704972 | HMES | 537872 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5321HB704973 | HMES | 537873 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A5323HB704974 | HMES | 537874 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577901 | HMES | 585000 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577902 | HMES | 585001 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577903 | HMES | 585002 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577904 | HMES | 585003 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577905 | HMES | 585004 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577906 | HMES | 585005 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577907 | HMES | 585006 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577908 | HMES | 585007 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB577909 | HMES | 585008 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577910 | HMES | 585009 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577911 | HMES | 585010 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB577912 | HMES | 585011 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577913 | HMES | 585012 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577914 | HMES | 585013 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577915 | HMES | 585014 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577916 | HMES | 585015 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577917 | HMES | 585016 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577918 | HMES | 585017 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577919 | HMES | 585018 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577920 | HMES | 585019 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577921 | HMES | 585020 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577922 | HMES | 585021 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577923 | HMES | 585022 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577924 | HMES | 585023 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577925 | HMES | 585024 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB577926 | HMES | 585025 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577927 | HMES | 585026 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577928 | HMES | 585027 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577929 | HMES | 585028 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577930 | HMES | 585029 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577931 | HMES | 585030 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577932 | HMES | 585031 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577933 | HMES | 585032 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577934 | HMES | 585033 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577935 | HMES | 585034 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577936 | HMES | 585035 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577938 | HMES | 585037 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577939 | HMES | 585038 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577940 | HMES | 585039 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577941 | HMES | 585040 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577942 | HMES | 585041 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB577943 | HMES | 585042 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577944 | HMES | 585043 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577945 | HMES | 585044 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577946 | HMES | 585045 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577947 | HMES | 585046 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577948 | HMES | 585047 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577949 | HMES | 585048 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577950 | HMES | 585049 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577951 | HMES | 585050 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577953 | HMES | 585052 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577954 | HMES | 585053 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577955 | HMES | 585054 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB577956 | HMES | 585055 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A4822FB577957 | HMES | 585056 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577958 | HMES | 585057 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577959 | HMES | 585058 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB577960 | HMES | 585059 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB577961 | HMES | 585060 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB577962 | HMES | 585061 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB577963 | HMES | 585062 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB577964 | HMES | 585063 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB577965 | HMES | 585064 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB577966 | HMES | 585065 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577967 | HMES | 585066 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB577968 | HMES | 585067 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB577969 | HMES | 585068 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB577970 | HMES | 585069 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596400 | HMES | 585070 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596401 | HMES | 585071 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596402 | HMES | 585072 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596403 | HMES | 585073 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596404 | HMES | 585074 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596405 | HMES | 585075 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596406 | HMES | 585076 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596407 | HMES | 585077 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596408 | HMES | 585078 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596409 | HMES | 585079 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596410 | HMES | 585080 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596411 | HMES | 585081 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596412 | HMES | 585082 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596413 | HMES | 585083 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596414 | HMES | 585084 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596415 | HMES | 585085 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596416 | HMES | 585086 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596417 | HMES | 585087 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596418 | HMES | 585088 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596419 | HMES | 585089 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596420 | HMES | 585090 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596421 | HMES | 585091 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596422 | HMES | 585092 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596424 | HMES | 585094 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596425 | HMES | 585095 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596426 | HMES | 585096 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596427 | HMES | 585097 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596428 | HMES | 585098 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596429 | HMES | 585099 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596430 | HMES | 585100 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596431 | HMES | 585101 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596432 | HMES | 585102 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596433 | HMES | 585103 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596434 | HMES | 585104 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596435 | HMES | 585105 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596436 | HMES | 585106 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596437 | HMES | 585107 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596438 | HMES | 585108 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596439 | HMES | 585109 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596440 | HMES | 585110 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596441 | HMES | 585111 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596442 | HMES | 585112 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596443 | HMES | 585113 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596444 | HMES | 585114 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596445 | HMES | 585115 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596446 | HMES | 585116 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596447 | HMES | 585117 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596448 | HMES | 585118 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596449 | HMES | 585119 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596450 | HMES | 585120 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596452 | HMES | 585122 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596453 | HMES | 585123 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596454 | HMES | 585124 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596455 | HMES | 585125 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596456 | HMES | 585126 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596457 | HMES | 585127 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596458 | HMES | 585128 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596459 | HMES | 585129 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596460 | HMES | 585130 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596461 | HMES | 585131 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596462 | HMES | 585132 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A4826FB596463 | HMES | 585133 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596464 | HMES | 585134 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596465 | HMES | 585135 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596466 | HMES | 585136 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596467 | HMES | 585137 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596468 | HMES | 585138 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596469 | HMES | 585139 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596470 | HMES | 585140 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596471 | HMES | 585141 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596472 | HMES | 585142 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596473 | HMES | 585143 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596474 | HMES | 585144 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596475 | HMES | 585145 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596476 | HMES | 585146 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596477 | HMES | 585147 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596478 | HMES | 585148 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596479 | HMES | 585149 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596480 | HMES | 585150 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596481 | HMES | 585151 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596482 | HMES | 585152 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596483 | HMES | 585153 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596484 | HMES | 585154 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596485 | HMES | 585155 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596486 | HMES | 585156 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596487 | HMES | 585157 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596488 | HMES | 585158 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596489 | HMES | 585159 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596490 | HMES | 585160 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596491 | HMES | 585161 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596492 | HMES | 585162 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596493 | HMES | 585163 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596494 | HMES | 585164 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596495 | HMES | 585165 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596496 | HMES | 585166 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596497 | HMES | 585167 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596498 | HMES | 585168 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596499 | HMES | 585169 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596500 | HMES | 585170 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596501 | HMES | 585171 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596502 | HMES | 585172 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596503 | HMES | 585173 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596504 | HMES | 585174 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596505 | HMES | 585175 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596506 | HMES | 585176 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596507 | HMES | 585177 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596508 | HMES | 585178 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596509 | HMES | 585179 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596510 | HMES | 585180 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596511 | HMES | 585181 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596512 | HMES | 585182 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596513 | HMES | 585183 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596514 | HMES | 585184 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596515 | HMES | 585185 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596516 | HMES | 585186 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596517 | HMES | 585187 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596518 | HMES | 585188 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596519 | HMES | 585189 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596520 | HMES | 585190 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596521 | HMES | 585191 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596522 | HMES | 585192 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596523 | HMES | 585193 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596524 | HMES | 585194 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596525 | HMES | 585195 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596526 | HMES | 585196 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596527 | HMES | 585197 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596528 | HMES | 585198 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596529 | HMES | 585199 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596530 | HMES | 585200 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596531 | HMES | 585201 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596532 | HMES | 585202 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596533 | HMES | 585203 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596534 | HMES | 585204 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596535 | HMES | 585205 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596536 | HMES | 585206 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596537 | HMES | 585207 | TRAILER | IN | IN | 2 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A4820FB596538 | HMES | 585208 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596539 | HMES | 585209 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596540 | HMES | 585210 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4820FB596541 | HMES | 585211 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4822FB596542 | HMES | 585212 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4824FB596543 | HMES | 585213 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4826FB596544 | HMES | 585214 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4828FB596545 | HMES | 585215 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A482XFB596546 | HMES | 585216 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596547 | HMES | 585217 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596548 | HMES | 585218 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596549 | HMES | 585219 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4821FB596550 | HMES | 585220 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4823FB596551 | HMES | 585221 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4825FB596552 | HMES | 585222 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4827FB596553 | HMES | 585223 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1DW1A4829FB596554 | HMES | 585224 | TRAILER | IN | IN | 2 | STOUGHTON |
| 1GRAP8000GB702502 | NPME | 2492 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8002GB702503 | NPME | 2493 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8004GB702504 | NPME | 2494 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP8006GB702505 | NPME | 2495 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8008GB702506 | NPME | 2496 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP800XGB702507 | NPME | 2497 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8001GB702508 | NPME | 2498 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8003GB702509 | NPME | 2499 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP800XGB702510 | NPME | 2500 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8001GB702511 | NPME | 2501 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8003GB702512 | NPME | 2502 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8005GB702513 | NPME | 2503 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8007GB702514 | NPME | 2504 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8009GB702515 | NPME | 2505 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP8000GB702516 | NPME | 2506 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702551 | NPME | 3492 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP900XGB702562 | NPME | 213503 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702583 | NPME | 213505 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702572 | NPME | 213506 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702579 | NPME | 213520 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702546 | NPME | 213521 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9005GB702534 | NPME | 213522 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9003GB702564 | NPME | 213523 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9003GB702550 | NPME | 213525 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9005GB702517 | NPME | 3458 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702518 | NPME | 3459 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702519 | NPME | 3460 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702520 | NPME | 3461 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702521 | NPME | 3462 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702522 | NPME | 3463 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702523 | NPME | 3464 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702524 | NPME | 3465 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702526 | NPME | 3467 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9008GB702527 | NPME | 3468 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP900XGB702528 | NPME | 3469 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702529 | NPME | 3470 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9008GB702530 | NPME | 3471 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702532 | NPME | 3473 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9003GB702533 | NPME | 3474 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702535 | NPME | 3476 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702536 | NPME | 3477 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702537 | NPME | 3478 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702538 | NPME | 3479 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702539 | NPME | 3480 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9000GB702540 | NPME | 3481 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702541 | NPME | 3482 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702542 | NPME | 3483 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9008GB702544 | NPME | 3485 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP900XGB702545 | NPME | 3486 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9003GB702547 | NPME | 3488 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702548 | NPME | 3489 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702549 | NPME | 3490 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9007GB702552 | NPME | 3493 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702553 | NPME | 3494 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702554 | NPME | 3495 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702555 | NPME | 3496 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702556 | NPME | 3497 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702557 | NPME | 3498 | TRAILER | IN | TN | 2 | GREAT DANE |

| 1GRAP9008GB702558 | NPME | 3499 | TRAILER | IN | TN | 2 | GREAT DANE |
|---|---|---|---|---|---|---|---|
| 1GRAP9001GB702563 | NPME | 3504 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702565 | NPME | 3506 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702567 | NPME | 3508 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702569 | NPME | 3510 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702570 | NPME | 3511 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702571 | NPME | 3512 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702573 | NPME | 3514 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702574 | NPME | 3515 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9008GB702575 | NPME | 3516 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP900XGB702576 | NPME | 3517 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702577 | NPME | 3518 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9003GB702578 | NPME | 3519 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9001GB702580 | NPME | 3521 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9009GB702584 | NPME | 3525 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702585 | NPME | 3526 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9002GB702586 | NPME | 3527 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702587 | NPME | 3528 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702588 | NPME | 3529 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9008GB702589 | NPME | 3530 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702590 | NPME | 3531 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702591 | NPME | 3532 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1JJV281D7HL987228 | YRCF | 730160 | TRAILER | IN | IN | 2 | WABASH |
| 1GRAP9008GB702561 | YRCF | 830300 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9007GB702566 | YRCF | 830301 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP900XGB702531 | YRCF | 830302 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1GRAP9003GB702581 | YRCF | 830304 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702560 | YRCF | 831115 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9006GB702543 | YRCF | 831116 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9005GB702582 | YRCF | 843823 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9004GB702525 | YRCF | 843827 | TRAILER | IN | TN | 2 | GREAT DANE |
| 1GRAP9000GB702568 | YRCF | 850201 | TRAILER | IN | IN | 2 | GREAT DANE |
| 1JJV281D1HL986818 | YRCF | 134287 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986819 | YRCF | 134288 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986820 | YRCF | 134289 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986821 | YRCF | 134290 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986822 | YRCF | 134291 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986823 | YRCF | 134292 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986824 | YRCF | 134293 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986825 | YRCF | 134294 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986826 | YRCF | 134295 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986827 | YRCF | 134296 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986828 | YRCF | 134297 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986829 | YRCF | 134298 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986830 | YRCF | 134299 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986831 | YRCF | 134300 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986832 | YRCF | 134301 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986833 | YRCF | 134302 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986834 | YRCF | 134303 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986835 | YRCF | 134304 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986836 | YRCF | 134305 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986837 | YRCF | 134306 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986838 | YRCF | 134307 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986839 | YRCF | 134308 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986840 | YRCF | 134309 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986841 | YRCF | 134310 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986842 | YRCF | 134311 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986843 | YRCF | 134312 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986844 | YRCF | 134313 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986845 | YRCF | 134314 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986846 | YRCF | 134315 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986847 | YRCF | 134316 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986848 | YRCF | 134317 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986849 | YRCF | 134318 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986850 | YRCF | 134319 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986851 | YRCF | 134320 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986852 | YRCF | 134321 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986853 | YRCF | 134322 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986854 | YRCF | 134323 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986855 | YRCF | 134324 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986856 | YRCF | 134325 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986857 | YRCF | 134326 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986858 | YRCF | 134327 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986859 | YRCF | 134328 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986860 | YRCF | 134329 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D2HL986861 | YRCF | 134330 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986862 | YRCF | 134331 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986863 | YRCF | 134332 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986864 | YRCF | 134333 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986865 | YRCF | 134334 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986866 | YRCF | 134335 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986867 | YRCF | 134336 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986868 | YRCF | 134337 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986869 | YRCF | 134338 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986870 | YRCF | 134339 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986871 | YRCF | 134340 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986873 | YRCF | 134342 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986874 | YRCF | 134343 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986875 | YRCF | 134344 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986876 | YRCF | 134345 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986877 | YRCF | 134346 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986878 | YRCF | 134347 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986879 | YRCF | 134348 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986880 | YRCF | 134349 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986881 | YRCF | 134350 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986882 | YRCF | 134351 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986883 | YRCF | 134352 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986884 | YRCF | 134353 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986885 | YRCF | 134354 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986886 | YRCF | 134355 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986887 | YRCF | 134356 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986888 | YRCF | 134357 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986889 | YRCF | 134358 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986890 | YRCF | 134359 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986891 | YRCF | 134360 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986892 | YRCF | 134361 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986893 | YRCF | 134362 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986894 | YRCF | 134363 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986895 | YRCF | 134364 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986896 | YRCF | 134365 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986897 | YRCF | 134366 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986898 | YRCF | 134367 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986899 | YRCF | 134368 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986901 | YRCF | 134370 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986902 | YRCF | 134371 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986903 | YRCF | 134372 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986904 | YRCF | 134373 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986905 | YRCF | 134374 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986906 | YRCF | 134375 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986907 | YRCF | 134376 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986908 | YRCF | 134377 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986909 | YRCF | 134378 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986910 | YRCF | 134379 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986911 | YRCF | 134380 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986912 | YRCF | 134381 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986913 | YRCF | 134382 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986914 | YRCF | 134383 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986915 | YRCF | 134384 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986916 | YRCF | 134385 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986917 | YRCF | 134386 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986918 | YRCF | 134387 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986919 | YRCF | 134388 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986920 | YRCF | 134389 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986921 | YRCF | 134390 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986922 | YRCF | 134391 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986923 | YRCF | 134392 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986924 | YRCF | 134393 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986925 | YRCF | 134394 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986926 | YRCF | 134395 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986927 | YRCF | 134396 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986928 | YRCF | 134397 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986929 | YRCF | 134398 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986930 | YRCF | 134399 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986931 | YRCF | 134400 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986932 | YRCF | 134401 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986933 | YRCF | 134402 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986934 | YRCF | 134403 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986935 | YRCF | 134404 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986936 | YRCF | 134405 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986937 | YRCF | 134406 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D0HL986938 | YRCF | 134407 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986939 | YRCF | 134408 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986940 | YRCF | 134409 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986941 | YRCF | 134410 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986942 | YRCF | 134411 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986943 | YRCF | 134412 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986944 | YRCF | 134413 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986945 | YRCF | 134414 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986946 | YRCF | 134415 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986947 | YRCF | 134416 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986948 | YRCF | 134417 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986949 | YRCF | 134418 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986950 | YRCF | 134419 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986951 | YRCF | 134420 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986952 | YRCF | 134421 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986953 | YRCF | 134422 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986954 | YRCF | 134423 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986955 | YRCF | 134424 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986956 | YRCF | 134425 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986957 | YRCF | 134426 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986958 | YRCF | 134427 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986959 | YRCF | 134428 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986960 | YRCF | 134429 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986961 | YRCF | 134430 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986962 | YRCF | 134431 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986963 | YRCF | 134432 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986964 | YRCF | 134433 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986965 | YRCF | 134434 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986966 | YRCF | 134435 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986967 | YRCF | 134436 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986968 | YRCF | 134437 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986969 | YRCF | 134438 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986970 | YRCF | 134439 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986971 | YRCF | 134440 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987028 | YRCF | 134441 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987029 | YRCF | 134442 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987030 | YRCF | 134443 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987031 | YRCF | 134444 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987032 | YRCF | 134445 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987033 | YRCF | 134446 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987034 | YRCF | 134447 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987035 | YRCF | 134448 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987036 | YRCF | 134449 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987037 | YRCF | 134450 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987038 | YRCF | 134451 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987039 | YRCF | 134452 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987040 | YRCF | 134453 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987041 | YRCF | 134454 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987042 | YRCF | 134455 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987043 | YRCF | 134456 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987044 | YRCF | 134457 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987045 | YRCF | 134458 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987046 | YRCF | 134459 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987047 | YRCF | 134460 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987048 | YRCF | 134461 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987049 | YRCF | 134462 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987050 | YRCF | 134463 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987051 | YRCF | 134464 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987052 | YRCF | 134465 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987053 | YRCF | 134466 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986972 | YRCF | 134467 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987054 | YRCF | 134468 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987055 | YRCF | 134470 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986974 | YRCF | 134471 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987056 | YRCF | 134472 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986975 | YRCF | 134473 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987057 | YRCF | 134474 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986976 | YRCF | 134475 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987058 | YRCF | 134476 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986977 | YRCF | 134477 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987059 | YRCF | 134478 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986978 | YRCF | 134479 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987060 | YRCF | 134480 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986979 | YRCF | 134481 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987061 | YRCF | 134482 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281DXHL986980 | YRCF | 134483 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987062 | YRCF | 134484 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986981 | YRCF | 134485 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987063 | YRCF | 134486 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986982 | YRCF | 134487 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987064 | YRCF | 134488 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986983 | YRCF | 134489 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987065 | YRCF | 134490 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL986984 | YRCF | 134491 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987066 | YRCF | 134492 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986985 | YRCF | 134493 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987067 | YRCF | 134494 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL986986 | YRCF | 134495 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987068 | YRCF | 134496 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986987 | YRCF | 134497 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987069 | YRCF | 134498 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987070 | YRCF | 134499 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987071 | YRCF | 134500 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987072 | YRCF | 134501 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987073 | YRCF | 134502 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987074 | YRCF | 134503 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987075 | YRCF | 134504 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987076 | YRCF | 134505 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987077 | YRCF | 134506 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987078 | YRCF | 134507 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987079 | YRCF | 134508 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987080 | YRCF | 134509 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987081 | YRCF | 134510 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987082 | YRCF | 134511 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987083 | YRCF | 134512 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987084 | YRCF | 134513 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987086 | YRCF | 134515 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987087 | YRCF | 134516 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987088 | YRCF | 134517 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987089 | YRCF | 134518 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987090 | YRCF | 134519 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987091 | YRCF | 134520 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987092 | YRCF | 134521 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987093 | YRCF | 134522 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987094 | YRCF | 134523 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987095 | YRCF | 134524 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987096 | YRCF | 134525 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987097 | YRCF | 134526 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987098 | YRCF | 134527 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987099 | YRCF | 134528 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987100 | YRCF | 134529 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987101 | YRCF | 134530 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987102 | YRCF | 134531 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987103 | YRCF | 134532 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987104 | YRCF | 134533 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987105 | YRCF | 134534 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987106 | YRCF | 134535 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987107 | YRCF | 134536 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987108 | YRCF | 134537 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987109 | YRCF | 134538 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987110 | YRCF | 134539 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986988 | YRCF | 134540 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987111 | YRCF | 134541 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986989 | YRCF | 134542 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987112 | YRCF | 134543 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL986990 | YRCF | 134544 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987113 | YRCF | 134545 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL986991 | YRCF | 134546 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987114 | YRCF | 134547 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL986992 | YRCF | 134548 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987115 | YRCF | 134549 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL986993 | YRCF | 134550 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987116 | YRCF | 134551 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL986994 | YRCF | 134552 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987117 | YRCF | 134553 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL986995 | YRCF | 134554 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987118 | YRCF | 134555 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL986996 | YRCF | 134556 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987119 | YRCF | 134557 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL986997 | YRCF | 134558 | TRAILER | IN | IN | 2 | WABASH |

| 1JJV281D9HL987120 | YRCF | 134559 | TRAILER | IN | IN | 2 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D7HL986998 | YRCF | 134560 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987121 | YRCF | 134561 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL986999 | YRCF | 134562 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987122 | YRCF | 134563 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987000 | YRCF | 134564 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987123 | YRCF | 134565 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987001 | YRCF | 134566 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987124 | YRCF | 134567 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987002 | YRCF | 134568 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987125 | YRCF | 134569 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987003 | YRCF | 134570 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987126 | YRCF | 134571 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987127 | YRCF | 134572 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987128 | YRCF | 134573 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987129 | YRCF | 134574 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987130 | YRCF | 134575 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987131 | YRCF | 134576 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987132 | YRCF | 134577 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987133 | YRCF | 134578 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987134 | YRCF | 134579 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987135 | YRCF | 134580 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987136 | YRCF | 134581 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987137 | YRCF | 134582 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987138 | YRCF | 134583 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987139 | YRCF | 134584 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987140 | YRCF | 134585 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987141 | YRCF | 134586 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987142 | YRCF | 134587 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987143 | YRCF | 134588 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987144 | YRCF | 134589 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987145 | YRCF | 134590 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987146 | YRCF | 134591 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987147 | YRCF | 134592 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987148 | YRCF | 134593 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987150 | YRCF | 134595 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987151 | YRCF | 134596 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987152 | YRCF | 134597 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987153 | YRCF | 134598 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987154 | YRCF | 134599 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987155 | YRCF | 134600 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987156 | YRCF | 134601 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987157 | YRCF | 134602 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987158 | YRCF | 134603 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987159 | YRCF | 134604 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987160 | YRCF | 134605 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987161 | YRCF | 134606 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987162 | YRCF | 134607 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987163 | YRCF | 134608 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987164 | YRCF | 134609 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987165 | YRCF | 134610 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987166 | YRCF | 134611 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987167 | YRCF | 134612 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987168 | YRCF | 134613 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987169 | YRCF | 134614 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987170 | YRCF | 134615 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987171 | YRCF | 134616 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987172 | YRCF | 134617 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987173 | YRCF | 134618 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987174 | YRCF | 134619 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987175 | YRCF | 134620 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987176 | YRCF | 134621 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987177 | YRCF | 134622 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987178 | YRCF | 134623 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987179 | YRCF | 134624 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987180 | YRCF | 134625 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987181 | YRCF | 134626 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987182 | YRCF | 134627 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987183 | YRCF | 134628 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987184 | YRCF | 134629 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987185 | YRCF | 134630 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987004 | YRCF | 134631 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987186 | YRCF | 134632 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987005 | YRCF | 134633 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987187 | YRCF | 134634 | TRAILER | IN | IN | 2 | WABASH |

| 1JJV281D0HL987006 | YRCF | 134635 | TRAILER | IN | IN | 2 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281DXHL987188 | YRCF | 134636 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987007 | YRCF | 134637 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987189 | YRCF | 134638 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987008 | YRCF | 134639 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987190 | YRCF | 134640 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987009 | YRCF | 134641 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987191 | YRCF | 134642 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987010 | YRCF | 134643 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987192 | YRCF | 134644 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987011 | YRCF | 134645 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987193 | YRCF | 134646 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987012 | YRCF | 134647 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987194 | YRCF | 134648 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987013 | YRCF | 134649 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987195 | YRCF | 134650 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987014 | YRCF | 134651 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987196 | YRCF | 134652 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987015 | YRCF | 134653 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987197 | YRCF | 134654 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987016 | YRCF | 134655 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987198 | YRCF | 134656 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987017 | YRCF | 134657 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987199 | YRCF | 134658 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987018 | YRCF | 134659 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987200 | YRCF | 134660 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987019 | YRCF | 134661 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987201 | YRCF | 134662 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987202 | YRCF | 134663 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987203 | YRCF | 134664 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987204 | YRCF | 134665 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987205 | YRCF | 134666 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987206 | YRCF | 134667 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987207 | YRCF | 134668 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987208 | YRCF | 134669 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987209 | YRCF | 134670 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987210 | YRCF | 134671 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987211 | YRCF | 134672 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987212 | YRCF | 134673 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987213 | YRCF | 134674 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987214 | YRCF | 134675 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987215 | YRCF | 134676 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987216 | YRCF | 134677 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987217 | YRCF | 134678 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987218 | YRCF | 134679 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987219 | YRCF | 134680 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987220 | YRCF | 134681 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987221 | YRCF | 134682 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987222 | YRCF | 134683 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987223 | YRCF | 134684 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987224 | YRCF | 134685 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987225 | YRCF | 134686 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987226 | YRCF | 134687 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987227 | YRCF | 134688 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987229 | YRCF | 134690 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987230 | YRCF | 134691 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987231 | YRCF | 134692 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987232 | YRCF | 134693 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987233 | YRCF | 134694 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987234 | YRCF | 134695 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987235 | YRCF | 134696 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987236 | YRCF | 134697 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987237 | YRCF | 134698 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987238 | YRCF | 134699 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987239 | YRCF | 134700 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987240 | YRCF | 134701 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987241 | YRCF | 134702 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987242 | YRCF | 134703 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987243 | YRCF | 134704 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987244 | YRCF | 134705 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987245 | YRCF | 134706 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987246 | YRCF | 134707 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987247 | YRCF | 134708 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987248 | YRCF | 134709 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987249 | YRCF | 134710 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D0HL987250 | YRCF | 134711 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987251 | YRCF | 134712 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987252 | YRCF | 134713 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987253 | YRCF | 134714 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987254 | YRCF | 134715 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987255 | YRCF | 134716 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987256 | YRCF | 134717 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987257 | YRCF | 134718 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987258 | YRCF | 134719 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987259 | YRCF | 134720 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987260 | YRCF | 134721 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987020 | YRCF | 134722 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987261 | YRCF | 134723 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987021 | YRCF | 134724 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987262 | YRCF | 134725 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987022 | YRCF | 134726 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987263 | YRCF | 134727 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987023 | YRCF | 134728 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987264 | YRCF | 134729 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987024 | YRCF | 134730 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987265 | YRCF | 134731 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987025 | YRCF | 134732 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987266 | YRCF | 134733 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987026 | YRCF | 134734 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987267 | YRCF | 134735 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987027 | YRCF | 134736 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987268 | YRCF | 134737 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987269 | YRCF | 134738 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987270 | YRCF | 134739 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987271 | YRCF | 134740 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987272 | YRCF | 134741 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987273 | YRCF | 134742 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987274 | YRCF | 134743 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987275 | YRCF | 134744 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987276 | YRCF | 134745 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987277 | YRCF | 134746 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987278 | YRCF | 134747 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987279 | YRCF | 134748 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987280 | YRCF | 134749 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987281 | YRCF | 134750 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987282 | YRCF | 134751 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987283 | YRCF | 134752 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987284 | YRCF | 134753 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987285 | YRCF | 134754 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987286 | YRCF | 134755 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987287 | YRCF | 134756 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987288 | YRCF | 134757 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987289 | YRCF | 134758 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987290 | YRCF | 134759 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987291 | YRCF | 134760 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987292 | YRCF | 134761 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987293 | YRCF | 134762 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987295 | YRCF | 134764 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987296 | YRCF | 134765 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987297 | YRCF | 134766 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987298 | YRCF | 134767 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987299 | YRCF | 134768 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987300 | YRCF | 134769 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987301 | YRCF | 134770 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987302 | YRCF | 134771 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987303 | YRCF | 134772 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987304 | YRCF | 134773 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987306 | YRCF | 134775 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987307 | YRCF | 134776 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987308 | YRCF | 134777 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987309 | YRCF | 134778 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987310 | YRCF | 134779 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987311 | YRCF | 134780 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987312 | YRCF | 134781 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987313 | YRCF | 134782 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987314 | YRCF | 134783 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987315 | YRCF | 134784 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987316 | YRCF | 134785 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987317 | YRCF | 134786 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987318 | YRCF | 134787 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281DXHL987319 | YRCF | 134788 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987320 | YRCF | 134789 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987321 | YRCF | 134790 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987322 | YRCF | 134791 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987323 | YRCF | 134792 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987324 | YRCF | 134793 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987325 | YRCF | 134794 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987326 | YRCF | 134795 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987327 | YRCF | 134796 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987328 | YRCF | 134797 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987329 | YRCF | 134798 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987330 | YRCF | 134799 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987331 | YRCF | 134800 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987332 | YRCF | 134801 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987333 | YRCF | 134802 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987335 | YRCF | 134804 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987336 | YRCF | 134805 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987337 | YRCF | 134806 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987338 | YRCF | 134807 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987339 | YRCF | 134808 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987340 | YRCF | 134809 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987341 | YRCF | 134810 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987342 | YRCF | 134811 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987343 | YRCF | 134812 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987344 | YRCF | 134813 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987345 | YRCF | 134814 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987346 | YRCF | 134815 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987347 | YRCF | 134816 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987348 | YRCF | 134817 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987349 | YRCF | 134818 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987350 | YRCF | 134819 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987351 | YRCF | 134820 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987352 | YRCF | 134821 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987353 | YRCF | 134822 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987354 | YRCF | 134823 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987355 | YRCF | 134824 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987356 | YRCF | 134825 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987357 | YRCF | 134826 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987358 | YRCF | 134827 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987359 | YRCF | 134828 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987360 | YRCF | 134829 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987361 | YRCF | 134830 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987362 | YRCF | 134831 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987363 | YRCF | 134832 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987364 | YRCF | 134833 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987365 | YRCF | 134834 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987366 | YRCF | 134835 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987367 | YRCF | 134836 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987368 | YRCF | 134837 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987369 | YRCF | 134838 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987370 | YRCF | 134839 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987371 | YRCF | 134840 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987372 | YRCF | 134841 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987373 | YRCF | 134842 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987374 | YRCF | 134843 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987375 | YRCF | 134844 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987376 | YRCF | 134845 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987377 | YRCF | 134846 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987378 | YRCF | 134847 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987379 | YRCF | 134848 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987380 | YRCF | 134849 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987381 | YRCF | 134850 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987382 | YRCF | 134851 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987383 | YRCF | 134852 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987384 | YRCF | 134853 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987385 | YRCF | 134854 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987386 | YRCF | 134855 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987387 | YRCF | 134856 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987388 | YRCF | 134857 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987389 | YRCF | 134858 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987390 | YRCF | 134859 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987391 | YRCF | 134860 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987392 | YRCF | 134861 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987394 | YRCF | 134862 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987395 | YRCF | 134863 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D6HL987396 | YRCF | 134864 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987397 | YRCF | 134865 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987398 | YRCF | 134866 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987399 | YRCF | 134867 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987400 | YRCF | 134868 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987401 | YRCF | 134869 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987402 | YRCF | 134870 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987403 | YRCF | 134871 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987404 | YRCF | 134872 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987405 | YRCF | 134873 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987406 | YRCF | 134874 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987407 | YRCF | 134875 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987408 | YRCF | 134876 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987409 | YRCF | 134877 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987410 | YRCF | 134878 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987411 | YRCF | 134879 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987412 | YRCF | 134880 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987413 | YRCF | 134881 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987414 | YRCF | 134882 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987415 | YRCF | 134883 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987416 | YRCF | 134884 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987417 | YRCF | 134885 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987418 | YRCF | 134886 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987419 | YRCF | 134887 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987420 | YRCF | 134888 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987421 | YRCF | 134889 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987422 | YRCF | 134890 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987423 | YRCF | 134891 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987424 | YRCF | 134892 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987425 | YRCF | 134893 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987426 | YRCF | 134894 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987427 | YRCF | 134895 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987428 | YRCF | 134896 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987429 | YRCF | 134897 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987430 | YRCF | 134898 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987431 | YRCF | 134899 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987432 | YRCF | 134900 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987433 | YRCF | 134901 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987434 | YRCF | 134902 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987435 | YRCF | 134903 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987436 | YRCF | 134904 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987437 | YRCF | 134905 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987438 | YRCF | 134906 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987439 | YRCF | 134907 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987440 | YRCF | 134908 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987441 | YRCF | 134909 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987442 | YRCF | 134910 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987443 | YRCF | 134911 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987444 | YRCF | 134912 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987445 | YRCF | 134913 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987446 | YRCF | 134914 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987447 | YRCF | 134915 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987448 | YRCF | 134916 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987449 | YRCF | 134917 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987450 | YRCF | 134918 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987451 | YRCF | 134919 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987452 | YRCF | 134920 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987453 | YRCF | 134921 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987454 | YRCF | 134922 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987455 | YRCF | 134923 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987456 | YRCF | 134924 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987457 | YRCF | 134925 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987458 | YRCF | 134926 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987459 | YRCF | 134927 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987460 | YRCF | 134928 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987461 | YRCF | 134929 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987462 | YRCF | 134930 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987463 | YRCF | 134931 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987464 | YRCF | 134932 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987465 | YRCF | 134933 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987466 | YRCF | 134934 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987467 | YRCF | 134935 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987468 | YRCF | 134936 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987469 | YRCF | 134937 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987470 | YRCF | 134938 | TRAILER | IN | IN | 2 | WABASH |

| 1JJV281D5HL987471 | YRCF | 134939 | TRAILER | IN | IN | 2 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D7HL987472 | YRCF | 134940 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987473 | YRCF | 134941 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987474 | YRCF | 134942 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987475 | YRCF | 134943 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987476 | YRCF | 134944 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987477 | YRCF | 134945 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987479 | YRCF | 134947 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987480 | YRCF | 134948 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987481 | YRCF | 134949 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987482 | YRCF | 134950 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987484 | YRCF | 134952 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987485 | YRCF | 134953 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987486 | YRCF | 134954 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987487 | YRCF | 134955 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987488 | YRCF | 134956 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987489 | YRCF | 134957 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987490 | YRCF | 134958 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987491 | YRCF | 134959 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987492 | YRCF | 134960 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987493 | YRCF | 134961 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987494 | YRCF | 134962 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987495 | YRCF | 134963 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987496 | YRCF | 134964 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987497 | YRCF | 134965 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987498 | YRCF | 134966 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987499 | YRCF | 134967 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987500 | YRCF | 134968 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987501 | YRCF | 134969 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987502 | YRCF | 134970 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987503 | YRCF | 134971 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987504 | YRCF | 134972 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987505 | YRCF | 134973 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987506 | YRCF | 134974 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987507 | YRCF | 134975 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987508 | YRCF | 134976 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987509 | YRCF | 134977 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987510 | YRCF | 134978 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987511 | YRCF | 134979 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987512 | YRCF | 134980 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987513 | YRCF | 134981 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987514 | YRCF | 134982 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987515 | YRCF | 134983 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987516 | YRCF | 134984 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987517 | YRCF | 134985 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987518 | YRCF | 134986 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987519 | YRCF | 134987 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987520 | YRCF | 134988 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987521 | YRCF | 134989 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987522 | YRCF | 134990 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987523 | YRCF | 134991 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987524 | YRCF | 134992 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987525 | YRCF | 134993 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987526 | YRCF | 134994 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987527 | YRCF | 134995 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987528 | YRCF | 134996 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987529 | YRCF | 134997 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987530 | YRCF | 134998 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987531 | YRCF | 134999 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987532 | YRCF | 135000 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987533 | YRCF | 135001 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987534 | YRCF | 135002 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987535 | YRCF | 135003 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987536 | YRCF | 135004 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987537 | YRCF | 135005 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987538 | YRCF | 135006 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987539 | YRCF | 135007 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987540 | YRCF | 135008 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987541 | YRCF | 135009 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987542 | YRCF | 135010 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987543 | YRCF | 135011 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987544 | YRCF | 135012 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987545 | YRCF | 135013 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987546 | YRCF | 135014 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987547 | YRCF | 135015 | TRAILER | IN | IN | 2 | WABASH |

| 1JJV281D3HL987548 | YRCF | 135016 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987549 | YRCF | 135017 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987550 | YRCF | 135018 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987551 | YRCF | 135019 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987552 | YRCF | 135020 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987553 | YRCF | 135021 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987554 | YRCF | 135022 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987555 | YRCF | 135023 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987556 | YRCF | 135024 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987557 | YRCF | 135025 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987558 | YRCF | 135026 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987559 | YRCF | 135027 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987560 | YRCF | 135028 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987561 | YRCF | 135029 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987562 | YRCF | 135030 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987563 | YRCF | 135031 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987564 | YRCF | 135032 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987565 | YRCF | 135033 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987566 | YRCF | 135034 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987567 | YRCF | 135035 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987568 | YRCF | 135036 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987569 | YRCF | 135037 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987570 | YRCF | 135038 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987571 | YRCF | 135039 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987572 | YRCF | 135040 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987573 | YRCF | 135041 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987574 | YRCF | 135042 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987575 | YRCF | 135043 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987576 | YRCF | 135044 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987577 | YRCF | 135045 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987578 | YRCF | 135046 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987579 | YRCF | 135047 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987580 | YRCF | 135048 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987581 | YRCF | 135049 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987582 | YRCF | 135050 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987583 | YRCF | 135051 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987584 | YRCF | 135052 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987585 | YRCF | 135053 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987586 | YRCF | 135054 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987587 | YRCF | 135055 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987588 | YRCF | 135056 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987589 | YRCF | 135057 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987590 | YRCF | 135058 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987591 | YRCF | 135059 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987592 | YRCF | 135060 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987593 | YRCF | 135061 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987594 | YRCF | 135062 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987595 | YRCF | 135063 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987596 | YRCF | 135064 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987597 | YRCF | 135065 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987598 | YRCF | 135066 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987599 | YRCF | 135067 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987600 | YRCF | 135068 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987601 | YRCF | 135069 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987602 | YRCF | 135070 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987603 | YRCF | 135071 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987604 | YRCF | 135072 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987605 | YRCF | 135073 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987606 | YRCF | 135074 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987607 | YRCF | 135075 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987608 | YRCF | 135076 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987609 | YRCF | 135077 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987610 | YRCF | 135078 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987611 | YRCF | 135079 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987612 | YRCF | 135080 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987613 | YRCF | 135081 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987614 | YRCF | 135082 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987615 | YRCF | 135083 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987616 | YRCF | 135084 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987617 | YRCF | 135085 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987618 | YRCF | 135086 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987619 | YRCF | 135087 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987620 | YRCF | 135088 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987621 | YRCF | 135089 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987622 | YRCF | 135090 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D2HL987623 | YRCF | 135091 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987624 | YRCF | 135092 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987625 | YRCF | 135093 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987626 | YRCF | 135094 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987627 | YRCF | 135095 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987628 | YRCF | 135096 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987629 | YRCF | 135097 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987630 | YRCF | 135098 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987631 | YRCF | 135099 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987632 | YRCF | 135100 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987633 | YRCF | 135101 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987634 | YRCF | 135102 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987635 | YRCF | 135103 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987636 | YRCF | 135104 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987637 | YRCF | 135105 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987638 | YRCF | 135106 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987639 | YRCF | 135107 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987640 | YRCF | 135108 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987641 | YRCF | 135109 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987642 | YRCF | 135110 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987643 | YRCF | 135111 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987644 | YRCF | 135112 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987645 | YRCF | 135113 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987646 | YRCF | 135114 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987647 | YRCF | 135115 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987648 | YRCF | 135116 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987649 | YRCF | 135117 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987650 | YRCF | 135118 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987651 | YRCF | 135119 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987652 | YRCF | 135120 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987653 | YRCF | 135121 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987654 | YRCF | 135122 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987655 | YRCF | 135123 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987657 | YRCF | 135125 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987658 | YRCF | 135126 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987659 | YRCF | 135127 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987660 | YRCF | 135128 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987661 | YRCF | 135129 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987662 | YRCF | 135130 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987663 | YRCF | 135131 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987664 | YRCF | 135132 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987665 | YRCF | 135133 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987666 | YRCF | 135134 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987667 | YRCF | 135135 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987668 | YRCF | 135136 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987669 | YRCF | 135137 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987670 | YRCF | 135138 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987671 | YRCF | 135139 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987672 | YRCF | 135140 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987673 | YRCF | 135141 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987674 | YRCF | 135142 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987675 | YRCF | 135143 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987676 | YRCF | 135144 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987677 | YRCF | 135145 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987678 | YRCF | 135146 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987680 | YRCF | 135148 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987681 | YRCF | 135149 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987682 | YRCF | 135150 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987683 | YRCF | 135151 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987684 | YRCF | 135152 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987685 | YRCF | 135153 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987686 | YRCF | 135154 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987687 | YRCF | 135155 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987688 | YRCF | 135156 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987689 | YRCF | 135157 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987690 | YRCF | 135158 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987691 | YRCF | 135159 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987692 | YRCF | 135160 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987693 | YRCF | 135161 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987694 | YRCF | 135162 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987695 | YRCF | 135163 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987696 | YRCF | 135164 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987697 | YRCF | 135165 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987698 | YRCF | 135166 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987699 | YRCF | 135167 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D5HL987700 | YRCF | 135168 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987702 | YRCF | 135170 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987703 | YRCF | 135171 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987704 | YRCF | 135172 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987705 | YRCF | 135173 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987706 | YRCF | 135174 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987707 | YRCF | 135175 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987709 | YRCF | 135177 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987710 | YRCF | 135178 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987711 | YRCF | 135179 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987713 | YRCF | 135181 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987714 | YRCF | 135182 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987715 | YRCF | 135183 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987716 | YRCF | 135184 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987717 | YRCF | 135185 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987718 | YRCF | 135186 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987719 | YRCF | 135187 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987720 | YRCF | 135188 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987721 | YRCF | 135189 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987722 | YRCF | 135190 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987723 | YRCF | 135191 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987724 | YRCF | 135192 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987725 | YRCF | 135193 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987726 | YRCF | 135194 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987727 | YRCF | 135195 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987728 | YRCF | 135196 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987729 | YRCF | 135197 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987730 | YRCF | 135198 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987731 | YRCF | 135199 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987732 | YRCF | 135200 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987733 | YRCF | 135201 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987734 | YRCF | 135202 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987735 | YRCF | 135203 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987736 | YRCF | 135204 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987737 | YRCF | 135205 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987738 | YRCF | 135206 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987739 | YRCF | 135207 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987740 | YRCF | 135208 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987741 | YRCF | 135209 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987742 | YRCF | 135210 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987743 | YRCF | 135211 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987744 | YRCF | 135212 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987745 | YRCF | 135213 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987746 | YRCF | 135214 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987747 | YRCF | 135215 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987748 | YRCF | 135216 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987749 | YRCF | 135217 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987750 | YRCF | 135218 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987751 | YRCF | 135219 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987752 | YRCF | 135220 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987753 | YRCF | 135221 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987754 | YRCF | 135222 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987755 | YRCF | 135223 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987756 | YRCF | 135224 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987757 | YRCF | 135225 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987758 | YRCF | 135226 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987759 | YRCF | 135227 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987760 | YRCF | 135228 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987761 | YRCF | 135229 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987762 | YRCF | 135230 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987763 | YRCF | 135231 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987764 | YRCF | 135232 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987765 | YRCF | 135233 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987766 | YRCF | 135234 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987767 | YRCF | 135235 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987768 | YRCF | 135236 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987769 | YRCF | 135237 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987770 | YRCF | 135238 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987771 | YRCF | 135239 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987772 | YRCF | 135240 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987773 | YRCF | 135241 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987774 | YRCF | 135242 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987775 | YRCF | 135243 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987776 | YRCF | 135244 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987777 | YRCF | 135245 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D9HL987778 | YRCF | 135246 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987779 | YRCF | 135247 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987780 | YRCF | 135248 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987781 | YRCF | 135249 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987782 | YRCF | 135250 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987783 | YRCF | 135251 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987784 | YRCF | 135252 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987785 | YRCF | 135253 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987786 | YRCF | 135254 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987787 | YRCF | 135255 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987788 | YRCF | 135256 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987789 | YRCF | 135257 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987790 | YRCF | 135258 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987791 | YRCF | 135259 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987792 | YRCF | 135260 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987793 | YRCF | 135261 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987794 | YRCF | 135262 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987795 | YRCF | 135263 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987796 | YRCF | 135264 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987797 | YRCF | 135265 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987798 | YRCF | 135266 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987799 | YRCF | 135267 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987800 | YRCF | 135268 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987801 | YRCF | 135269 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987802 | YRCF | 135270 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987803 | YRCF | 135271 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987804 | YRCF | 135272 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987805 | YRCF | 135273 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987806 | YRCF | 135274 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987807 | YRCF | 135275 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987808 | YRCF | 135276 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987809 | YRCF | 135277 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987810 | YRCF | 135278 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987811 | YRCF | 135279 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987812 | YRCF | 135280 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987813 | YRCF | 135281 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987814 | YRCF | 135282 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987815 | YRCF | 135283 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987816 | YRCF | 135284 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987817 | YRCF | 135285 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987818 | YRCF | 135286 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987819 | YRCF | 135287 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987820 | YRCF | 135288 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987821 | YRCF | 135289 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987822 | YRCF | 135290 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987823 | YRCF | 135291 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987824 | YRCF | 135292 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987825 | YRCF | 135293 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987826 | YRCF | 135294 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987827 | YRCF | 135295 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987828 | YRCF | 135296 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987829 | YRCF | 135297 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987830 | YRCF | 135298 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987831 | YRCF | 135299 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987832 | YRCF | 135300 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987833 | YRCF | 135301 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987834 | YRCF | 135302 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987835 | YRCF | 135303 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987836 | YRCF | 135304 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987837 | YRCF | 135305 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987838 | YRCF | 135306 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987839 | YRCF | 135307 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987840 | YRCF | 135308 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987841 | YRCF | 135309 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987842 | YRCF | 135310 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987843 | YRCF | 135311 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987844 | YRCF | 135312 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987845 | YRCF | 135313 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987846 | YRCF | 135314 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987848 | YRCF | 135316 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987849 | YRCF | 135317 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987850 | YRCF | 135318 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987851 | YRCF | 135319 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987852 | YRCF | 135320 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987853 | YRCF | 135321 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281DXHL987854 | YRCF | 135322 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987855 | YRCF | 135323 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987856 | YRCF | 135324 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987857 | YRCF | 135325 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987858 | YRCF | 135326 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987859 | YRCF | 135327 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987860 | YRCF | 135328 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987861 | YRCF | 135329 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987862 | YRCF | 135330 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987863 | YRCF | 135331 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987864 | YRCF | 135332 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987865 | YRCF | 135333 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987866 | YRCF | 135334 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987867 | YRCF | 135335 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987868 | YRCF | 135336 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987869 | YRCF | 135337 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987870 | YRCF | 135338 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987871 | YRCF | 135339 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987872 | YRCF | 135340 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987875 | YRCF | 135341 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987876 | YRCF | 135342 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987877 | YRCF | 135343 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987878 | YRCF | 135344 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987879 | YRCF | 135345 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987880 | YRCF | 135346 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987881 | YRCF | 135347 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987882 | YRCF | 135348 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987883 | YRCF | 135349 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987884 | YRCF | 135350 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987885 | YRCF | 135351 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987886 | YRCF | 135352 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987887 | YRCF | 135353 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987888 | YRCF | 135354 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987889 | YRCF | 135355 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987890 | YRCF | 135356 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987891 | YRCF | 135357 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987892 | YRCF | 135358 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987893 | YRCF | 135359 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987894 | YRCF | 135360 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987895 | YRCF | 135361 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987896 | YRCF | 135362 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987897 | YRCF | 135363 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987898 | YRCF | 135364 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987899 | YRCF | 135365 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987900 | YRCF | 135366 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987901 | YRCF | 135367 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987903 | YRCF | 135368 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987906 | YRCF | 135369 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987907 | YRCF | 135370 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987908 | YRCF | 135371 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987909 | YRCF | 135372 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987911 | YRCF | 135373 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987912 | YRCF | 135374 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987913 | YRCF | 135375 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987914 | YRCF | 135376 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987915 | YRCF | 135377 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987916 | YRCF | 135378 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987917 | YRCF | 135379 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987919 | YRCF | 135380 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987920 | YRCF | 135381 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987921 | YRCF | 135382 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987922 | YRCF | 135383 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987923 | YRCF | 135384 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987924 | YRCF | 135385 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987925 | YRCF | 135386 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987926 | YRCF | 135387 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987929 | YRCF | 135388 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987930 | YRCF | 135389 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987931 | YRCF | 135390 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987935 | YRCF | 135391 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987943 | YRCF | 135392 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987944 | YRCF | 135393 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987945 | YRCF | 135394 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987946 | YRCF | 135395 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987949 | YRCF | 135396 | TRAILER | IN | IN | 2 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D6HL987950 | YRCF | 135397 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987951 | YRCF | 135398 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987952 | YRCF | 135399 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987953 | YRCF | 135400 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987954 | YRCF | 135401 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987955 | YRCF | 135402 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987956 | YRCF | 135403 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987957 | YRCF | 135404 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987958 | YRCF | 135405 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987959 | YRCF | 135406 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987960 | YRCF | 135407 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987961 | YRCF | 135408 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987962 | YRCF | 135409 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987963 | YRCF | 135410 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987964 | YRCF | 135411 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987965 | YRCF | 135412 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987966 | YRCF | 135413 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987967 | YRCF | 135414 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987968 | YRCF | 135415 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987969 | YRCF | 135416 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987970 | YRCF | 135417 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987972 | YRCF | 135419 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987973 | YRCF | 135420 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987974 | YRCF | 135421 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987975 | YRCF | 135422 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D2HL987976 | YRCF | 135423 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987977 | YRCF | 135424 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987978 | YRCF | 135425 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987979 | YRCF | 135426 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D4HL987980 | YRCF | 135427 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D6HL987981 | YRCF | 135428 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D8HL987982 | YRCF | 135429 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281DXHL987983 | YRCF | 135430 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D1HL987984 | YRCF | 135431 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D3HL987985 | YRCF | 135432 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D5HL987986 | YRCF | 135433 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D7HL987987 | YRCF | 135434 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D9HL987988 | YRCF | 135435 | TRAILER | IN | IN | 2 | WABASH |
| 1JJV281D0HL987989 | YRCF | 135436 | TRAILER | IN | IN | 2 | WABASH |

## **Schedule 5.22(b)**

### **Rolling Stock that constitutes Prepetition UST Tranche B Priority Collateral**

As of August 28, 2023

[Attached]

| CATEGORY | TYPE |
| --- | --- |
| 1 | UST Tranche B Priority Collateral |
| 2 | UST Tranche B Joint Collateral |

| CODE | OPCO |
| --- | --- |
| HMES | USF Holland LLC |
| NPME | New Penn Motor Express LLC |
| REIM | YRC Freight Canada Company |
| RETL | USF Reddaway Inc. |
| YRCF | YRC Inc. (d/b/a/ YRC Freight) |

| VIN | BRAND | UNIT | TYPE | TITLE STATE | REGISTRATION STATE | COLLATERAL CATEGORY | MAKE |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X6MD758682 | HMES | 21302 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758683 | HMES | 21303 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758684 | HMES | 21304 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758685 | HMES | 21305 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758686 | HMES | 21306 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758687 | HMES | 21307 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758688 | HMES | 21308 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758689 | HMES | 21309 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758690 | HMES | 21310 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758692 | HMES | 21312 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0MD758693 | HMES | 21313 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2MD758694 | HMES | 21314 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758695 | HMES | 21315 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758699 | HMES | 21319 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6MD758701 | HMES | 21321 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758702 | HMES | 21322 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758703 | HMES | 21323 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758705 | HMES | 21325 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758706 | HMES | 21326 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758707 | HMES | 21327 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758708 | HMES | 21328 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0MD758709 | HMES | 21329 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758710 | HMES | 21330 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758711 | HMES | 21331 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0MD758712 | HMES | 21332 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2MD758713 | HMES | 21333 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6MD758715 | HMES | 21335 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758717 | HMES | 21337 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758719 | HMES | 21339 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758720 | HMES | 21340 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758721 | HMES | 21341 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758722 | HMES | 21342 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758724 | HMES | 21344 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758725 | HMES | 21345 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0MD758726 | HMES | 21346 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2MD758727 | HMES | 21347 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758728 | HMES | 21348 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6MD758729 | HMES | 21349 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758731 | HMES | 21351 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6MD758732 | HMES | 21352 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758735 | HMES | 21355 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758737 | HMES | 21357 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758738 | HMES | 21358 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758739 | HMES | 21359 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758740 | HMES | 21360 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758745 | HMES | 21365 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758749 | HMES | 21369 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758681 | HMES | 21400 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758691 | HMES | 21401 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6MD758696 | HMES | 21402 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758697 | HMES | 21403 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758698 | HMES | 21404 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758700 | HMES | 21406 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758704 | HMES | 21407 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758714 | HMES | 21408 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758716 | HMES | 21409 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758718 | HMES | 21410 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5MD758723 | HMES | 21411 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2MD758730 | HMES | 21412 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758733 | HMES | 21413 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758734 | HMES | 21419 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758736 | HMES | 21420 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7MD758741 | HMES | 21421 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9MD758742 | HMES | 21424 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0MD758743 | HMES | 21427 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2MD758744 | HMES | 21430 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4MD758746 | HMES | 21431 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758747 | HMES | 21432 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758748 | HMES | 21433 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8MD758750 | HMES | 21434 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXMD758751 | HMES | 21435 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1MD758752 | HMES | 21436 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3MD758753 | HMES | 21438 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758754 | HMES | 22001 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758755 | HMES | 22002 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758756 | HMES | 22003 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758757 | HMES | 22004 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758758 | HMES | 22005 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758759 | HMES | 22006 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X9ND758760 | HMES | 22007 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758761 | HMES | 22008 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758762 | HMES | 22009 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758763 | HMES | 22010 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758764 | HMES | 22011 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758765 | HMES | 22012 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758766 | HMES | 22013 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758767 | HMES | 22014 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758768 | HMES | 22015 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758769 | HMES | 22016 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758770 | HMES | 22017 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758771 | HMES | 22018 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758772 | HMES | 22019 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758773 | HMES | 22020 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758774 | HMES | 22021 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758775 | HMES | 22022 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758776 | HMES | 22023 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758777 | HMES | 22024 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758778 | HMES | 22025 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758779 | HMES | 22026 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758780 | HMES | 22027 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758781 | HMES | 22028 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758782 | HMES | 22029 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758783 | HMES | 22030 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758784 | HMES | 22031 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758785 | HMES | 22032 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758786 | HMES | 22033 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758787 | HMES | 22034 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758788 | HMES | 22035 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758789 | HMES | 22036 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758790 | HMES | 22037 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758791 | HMES | 22038 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758792 | HMES | 22039 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758793 | HMES | 22040 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758794 | HMES | 22041 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758795 | HMES | 22042 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758796 | HMES | 22043 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758797 | HMES | 22044 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758798 | HMES | 22045 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758799 | HMES | 22046 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758800 | HMES | 22047 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758801 | HMES | 22048 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758802 | HMES | 22049 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758803 | HMES | 22050 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758804 | HMES | 22051 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758805 | HMES | 22052 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758806 | HMES | 22053 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758807 | HMES | 22054 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758808 | HMES | 22055 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758809 | HMES | 22056 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758810 | HMES | 22057 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758811 | HMES | 22058 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758812 | HMES | 22059 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758813 | HMES | 22060 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758814 | HMES | 22061 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758815 | HMES | 22062 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758816 | HMES | 22063 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758817 | HMES | 22064 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758818 | HMES | 22065 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758819 | HMES | 22066 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758820 | HMES | 22067 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758821 | HMES | 22068 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758822 | HMES | 22069 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758823 | HMES | 22070 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758824 | HMES | 22071 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758825 | HMES | 22072 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758826 | HMES | 22073 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758827 | HMES | 22074 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758828 | HMES | 22075 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758829 | HMES | 22076 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758830 | HMES | 22077 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758831 | HMES | 22078 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758832 | HMES | 22079 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758834 | HMES | 22081 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758835 | HMES | 22082 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758836 | HMES | 22083 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758837 | HMES | 22084 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758838 | HMES | 22085 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758839 | HMES | 22086 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758840 | HMES | 22087 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758841 | HMES | 22088 | TRACTOR | IN | IN | 1 | PETERBILT |

| 1XPBAK9X0ND758842 | HMES | 22089 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758843 | HMES | 22090 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758844 | HMES | 22091 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758845 | HMES | 22092 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758846 | HMES | 22093 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758847 | HMES | 22094 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758848 | HMES | 22095 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758849 | HMES | 22096 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758850 | HMES | 22097 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758851 | HMES | 22098 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758852 | HMES | 22099 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758853 | HMES | 22100 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758854 | HMES | 22101 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758855 | HMES | 22102 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758856 | HMES | 22103 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758857 | HMES | 22104 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758858 | HMES | 22105 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758859 | HMES | 22106 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758860 | HMES | 22107 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758861 | HMES | 22108 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758862 | HMES | 22109 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758863 | HMES | 22110 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758864 | HMES | 22111 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758865 | HMES | 22112 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758866 | HMES | 22113 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758867 | HMES | 22114 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758868 | HMES | 22115 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758869 | HMES | 22116 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758870 | HMES | 22117 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758872 | HMES | 22119 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758873 | HMES | 22120 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758874 | HMES | 22121 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758875 | HMES | 22122 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758876 | HMES | 22123 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758877 | HMES | 22124 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758878 | HMES | 22125 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758879 | HMES | 22126 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758880 | HMES | 22127 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758881 | HMES | 22128 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758882 | HMES | 22129 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758883 | HMES | 22130 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758884 | HMES | 22131 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758885 | HMES | 22132 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758886 | HMES | 22133 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758887 | HMES | 22134 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758888 | HMES | 22135 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758889 | HMES | 22136 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758890 | HMES | 22137 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758891 | HMES | 22138 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758892 | HMES | 22139 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758893 | HMES | 22140 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758894 | HMES | 22141 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758895 | HMES | 22142 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758896 | HMES | 22143 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758897 | HMES | 22144 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758898 | HMES | 22145 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758899 | HMES | 22146 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758900 | HMES | 22147 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758901 | HMES | 22148 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758902 | HMES | 22149 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758903 | HMES | 22150 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758904 | HMES | 22151 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758905 | HMES | 22152 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758906 | HMES | 22153 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758907 | HMES | 22154 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758908 | HMES | 22155 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758909 | HMES | 22156 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758910 | HMES | 22157 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758911 | HMES | 22158 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758912 | HMES | 22159 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758913 | HMES | 22160 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758914 | HMES | 22161 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758915 | HMES | 22162 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758916 | HMES | 22163 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758917 | HMES | 22164 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758918 | HMES | 22165 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758919 | HMES | 22166 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758920 | HMES | 22167 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758921 | HMES | 22168 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758922 | HMES | 22169 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758923 | HMES | 22170 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X2ND758924 | HMES | 22171 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758925 | HMES | 22172 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758926 | HMES | 22173 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758927 | HMES | 22174 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758928 | HMES | 22175 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758929 | HMES | 22176 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758930 | HMES | 22177 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758931 | HMES | 22178 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758932 | HMES | 22179 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758933 | HMES | 22180 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758934 | HMES | 22181 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758935 | HMES | 22182 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758936 | HMES | 22183 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758937 | HMES | 22184 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758938 | HMES | 22185 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758939 | HMES | 22186 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758940 | HMES | 22187 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758941 | HMES | 22188 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758942 | HMES | 22189 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758943 | HMES | 22190 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758944 | HMES | 22191 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758945 | HMES | 22192 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758946 | HMES | 22193 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758947 | HMES | 22194 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758948 | HMES | 22195 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758949 | HMES | 22196 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758950 | HMES | 22197 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758951 | HMES | 22198 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758952 | HMES | 22199 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758953 | HMES | 22500 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758954 | HMES | 22501 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758955 | HMES | 22502 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND758956 | HMES | 22503 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758957 | HMES | 22504 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758958 | HMES | 22505 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND758959 | HMES | 22506 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND758960 | HMES | 22507 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND758961 | HMES | 22508 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758962 | HMES | 22509 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND758963 | HMES | 22510 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND758964 | HMES | 22511 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND758965 | HMES | 22512 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND758966 | HMES | 22513 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758967 | HMES | 22514 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758968 | HMES | 22515 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758969 | HMES | 22516 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND758970 | HMES | 22517 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND758971 | HMES | 22518 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND758972 | HMES | 22519 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4WB9EG9NN285259 | HMES | 22520 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WB9EG5NN285260 | HMES | 22521 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WB9EG7NN285261 | HMES | 22522 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WB9EG9NN285262 | HMES | 22523 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WB9EG0NN285263 | HMES | 22524 | TRACTOR | IN | IN | 1 | VOLVO |
| 1FUGHLDV9NLMZ4985 | HMES | 22525 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ4986 | HMES | 22526 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ4987 | HMES | 22527 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ4988 | HMES | 22528 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ4989 | HMES | 22529 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ4990 | HMES | 22530 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ4991 | HMES | 22531 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ4992 | HMES | 22532 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV8NLMZ4993 | HMES | 22533 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ4994 | HMES | 22534 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ4995 | HMES | 22535 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ4996 | HMES | 22536 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ4997 | HMES | 22537 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ4998 | HMES | 22538 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV9NLMZ5000 | HMES | 22540 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ5001 | HMES | 22541 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5002 | HMES | 22542 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5003 | HMES | 22543 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5004 | HMES | 22544 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV9NLMZ5005 | HMES | 22545 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ5006 | HMES | 22546 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5007 | HMES | 22547 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5008 | HMES | 22548 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ5009 | HMES | 22549 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5010 | HMES | 22550 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5011 | HMES | 22551 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ5012 | HMES | 22552 | TRACTOR | MI | IN | 1 | FREIGHTLINER |

| 1FUGHLDV8NLMZ5013 | HMES | 22553 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
|---|---|---|---|---|---|---|---|
| 1FUGHLDVXNLMZ5014 | HMES | 22554 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ5015 | HMES | 22555 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5016 | HMES | 22556 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5017 | HMES | 22557 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5018 | HMES | 22558 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV9NLMZ5019 | HMES | 22559 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5020 | HMES | 22560 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5021 | HMES | 22561 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV9NLMZ5022 | HMES | 22562 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ5023 | HMES | 22563 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5024 | HMES | 22564 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5025 | HMES | 22565 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ5026 | HMES | 22566 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV8NLMZ5027 | HMES | 22567 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ5028 | HMES | 22568 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ5029 | HMES | 22569 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV8NLMZ5030 | HMES | 22570 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ5031 | HMES | 22571 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ5032 | HMES | 22572 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5033 | HMES | 22573 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5034 | HMES | 22574 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5035 | HMES | 22575 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5036 | HMES | 22576 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ5037 | HMES | 22577 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5038 | HMES | 22578 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5039 | HMES | 22579 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ5040 | HMES | 22580 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5041 | HMES | 22581 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5042 | HMES | 22582 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ5043 | HMES | 22583 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV8NLMZ5044 | HMES | 22584 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ5045 | HMES | 22585 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV1NLMZ5046 | HMES | 22586 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5047 | HMES | 22587 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV5NLMZ5048 | HMES | 22588 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5049 | HMES | 22589 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5050 | HMES | 22590 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV3NLMZ5051 | HMES | 22591 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV7NLMZ5052 | HMES | 22592 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV9NLMZ5053 | HMES | 22593 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV0NLMZ5054 | HMES | 22594 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV2NLMZ5055 | HMES | 22595 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV4NLMZ5056 | HMES | 22596 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV6NLMZ5057 | HMES | 22597 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDV8NLMZ5058 | HMES | 22598 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1FUGHLDVXNLMZ5059 | HMES | 22599 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1XPBAK9X0ND777312 | HMES | 22600 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777313 | HMES | 22601 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777314 | HMES | 22602 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777315 | HMES | 22603 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777316 | HMES | 22604 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777317 | HMES | 22605 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777318 | HMES | 22606 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777319 | HMES | 22607 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777320 | HMES | 22608 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777321 | HMES | 22609 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777322 | HMES | 22610 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777323 | HMES | 22611 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777324 | HMES | 22612 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND777325 | HMES | 22613 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND777326 | HMES | 22614 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777327 | HMES | 22615 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777328 | HMES | 22616 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777329 | HMES | 22617 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777330 | HMES | 22618 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777331 | HMES | 22619 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777332 | HMES | 22620 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777333 | HMES | 22621 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777334 | HMES | 22622 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777335 | HMES | 22623 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777336 | HMES | 22624 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777337 | HMES | 22625 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777338 | HMES | 22626 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND777339 | HMES | 22627 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777340 | HMES | 22628 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777341 | HMES | 22629 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND777342 | HMES | 22630 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND777343 | HMES | 22631 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777344 | HMES | 22632 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777345 | HMES | 22633 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X6ND777346 | HMES | 22634 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777347 | HMES | 22635 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777348 | HMES | 22636 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777349 | HMES | 22637 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777350 | HMES | 22638 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777351 | HMES | 22639 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777352 | HMES | 22640 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777353 | HMES | 22641 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777354 | HMES | 22642 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777355 | HMES | 22643 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND777356 | HMES | 22644 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND777357 | HMES | 22645 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777358 | HMES | 22646 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777359 | HMES | 22647 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND777360 | HMES | 22648 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777361 | HMES | 22649 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777362 | HMES | 22650 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777363 | HMES | 22651 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777364 | HMES | 22652 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777365 | HMES | 22653 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777366 | HMES | 22654 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777367 | HMES | 22655 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777368 | HMES | 22656 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777369 | HMES | 22657 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND777370 | HMES | 22658 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND777371 | HMES | 22659 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND777372 | HMES | 22660 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND777373 | HMES | 22661 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND777374 | HMES | 22662 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND777375 | HMES | 22663 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND777376 | HMES | 22664 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777377 | HMES | 22665 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777378 | HMES | 22666 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777379 | HMES | 22667 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND777380 | HMES | 22668 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND777381 | HMES | 22669 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND777382 | HMES | 22670 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND777383 | HMES | 22671 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791799 | HMES | 22672 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791800 | HMES | 22673 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791801 | HMES | 22674 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791802 | HMES | 22675 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791803 | HMES | 22676 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791804 | HMES | 22677 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791805 | HMES | 22678 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791806 | HMES | 22679 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791807 | HMES | 22680 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791808 | HMES | 22681 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791809 | HMES | 22682 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791810 | HMES | 22683 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791811 | HMES | 22684 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791812 | HMES | 22685 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791813 | HMES | 22686 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791814 | HMES | 22687 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791815 | HMES | 22688 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791816 | HMES | 22689 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791819 | HMES | 22692 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791820 | HMES | 22693 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791824 | HMES | 22697 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791826 | HMES | 22699 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791827 | HMES | 22700 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791828 | HMES | 22701 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791830 | HMES | 22703 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791831 | HMES | 22704 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791833 | HMES | 22706 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791836 | HMES | 22709 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791837 | HMES | 22710 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791838 | HMES | 22711 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791839 | HMES | 22712 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791840 | HMES | 22713 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791841 | HMES | 22714 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791842 | HMES | 22715 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791843 | HMES | 22716 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791844 | HMES | 22717 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791845 | HMES | 22718 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791846 | HMES | 22719 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791847 | HMES | 22720 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791848 | HMES | 22721 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791849 | HMES | 22722 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791850 | HMES | 22723 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791851 | HMES | 22724 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAK9X3ND791852 | HMES | 22725 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791853 | HMES | 22726 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791854 | HMES | 22727 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791855 | HMES | 22728 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791857 | HMES | 22730 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791858 | HMES | 22731 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791860 | HMES | 22733 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791861 | HMES | 22734 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791863 | HMES | 22736 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9XXND791864 | HMES | 22737 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791865 | HMES | 22738 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791866 | HMES | 22739 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791868 | HMES | 22741 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791869 | HMES | 22742 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791871 | HMES | 22744 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X9ND791872 | HMES | 22745 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791873 | HMES | 22746 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X2ND791874 | HMES | 22747 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X4ND791875 | HMES | 22748 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791817 | HMES | 22801 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791818 | HMES | 22802 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791821 | HMES | 22803 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791822 | HMES | 22808 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X7ND791823 | HMES | 22813 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791825 | HMES | 22814 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791829 | HMES | 22815 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X8ND791832 | HMES | 22816 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X1ND791834 | HMES | 22818 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X3ND791835 | HMES | 22819 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X0ND791856 | HMES | 22820 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791859 | HMES | 22821 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X6ND791862 | HMES | 22822 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791867 | HMES | 22823 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAK9X5ND791870 | HMES | 22825 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1FUGHLDV9NLMZ4999 | HMES | 22828 | TRACTOR | MI | IN | 1 | FREIGHTLINER |
| 1XPBAP8X6MD758552 | NPME | 1770 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758553 | NPME | 1771 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758554 | NPME | 1772 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758555 | NPME | 1773 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758556 | NPME | 1774 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758559 | NPME | 1777 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758560 | NPME | 1778 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758561 | NPME | 1779 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758562 | NPME | 1780 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758563 | NPME | 1781 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758564 | NPME | 1782 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758566 | NPME | 1784 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758567 | NPME | 1785 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758568 | NPME | 1786 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758569 | NPME | 1787 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758570 | NPME | 1788 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758575 | NPME | 1793 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758578 | NPME | 1796 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758581 | NPME | 1799 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758582 | NPME | 1800 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758586 | NPME | 1804 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758587 | NPME | 1805 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758588 | NPME | 1806 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758590 | NPME | 1808 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758594 | NPME | 1812 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758595 | NPME | 1813 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758596 | NPME | 1814 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758597 | NPME | 1815 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758601 | NPME | 1819 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758604 | NPME | 1822 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758605 | NPME | 1823 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758606 | NPME | 1824 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758608 | NPME | 1826 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758609 | NPME | 1827 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758610 | NPME | 1828 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758612 | NPME | 1830 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758613 | NPME | 1831 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758614 | NPME | 1832 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758615 | NPME | 1833 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758617 | NPME | 1835 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758618 | NPME | 1836 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758619 | NPME | 1837 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758620 | NPME | 1838 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758621 | NPME | 1839 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758622 | NPME | 1840 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758623 | NPME | 1841 | TRACTOR | IN | IN | 1 | PETERBILT |

| 1XPBAP8X5ND758625 | NPME | 1843 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758626 | NPME | 1844 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758628 | NPME | 1846 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758629 | NPME | 1847 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758630 | NPME | 1848 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758634 | NPME | 1852 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758635 | NPME | 1853 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758636 | NPME | 1854 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758639 | NPME | 1857 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758640 | NPME | 1858 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758642 | NPME | 1860 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758643 | NPME | 1861 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758644 | NPME | 1862 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758645 | NPME | 1863 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758646 | NPME | 1864 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758647 | NPME | 1865 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758650 | NPME | 1868 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758651 | NPME | 1869 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758652 | NPME | 1870 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758654 | NPME | 1872 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758655 | NPME | 1873 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758656 | NPME | 1874 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758657 | NPME | 1875 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758658 | NPME | 1876 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758659 | NPME | 1877 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758660 | NPME | 1878 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758661 | NPME | 1879 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758662 | NPME | 1880 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758663 | NPME | 1881 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758665 | NPME | 1883 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758667 | NPME | 1885 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758668 | NPME | 1886 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758669 | NPME | 1887 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758670 | NPME | 1888 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758671 | NPME | 1889 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758672 | NPME | 1890 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758673 | NPME | 1891 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758674 | NPME | 1892 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758676 | NPME | 1894 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758679 | NPME | 1897 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758680 | NPME | 1898 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG6NN285853 | NPME | 1900 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285854 | NPME | 1901 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285855 | NPME | 1902 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285856 | NPME | 1903 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285858 | NPME | 1905 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285859 | NPME | 1906 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285860 | NPME | 1907 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285861 | NPME | 1908 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285862 | NPME | 1909 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285863 | NPME | 1910 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285864 | NPME | 1911 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285865 | NPME | 1912 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285866 | NPME | 1913 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285867 | NPME | 1914 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285868 | NPME | 1915 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285869 | NPME | 1916 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285870 | NPME | 1917 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285871 | NPME | 1918 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285872 | NPME | 1919 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285873 | NPME | 1920 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285874 | NPME | 1921 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285875 | NPME | 1922 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285876 | NPME | 1923 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285877 | NPME | 1924 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285878 | NPME | 1925 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285879 | NPME | 1926 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285880 | NPME | 1927 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285881 | NPME | 1928 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285882 | NPME | 1929 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285883 | NPME | 1930 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285884 | NPME | 1931 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285885 | NPME | 1932 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285886 | NPME | 1933 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285887 | NPME | 1934 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285888 | NPME | 1935 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285889 | NPME | 1936 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285890 | NPME | 1937 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285891 | NPME | 1938 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285892 | NPME | 1939 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285893 | NPME | 1940 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG9NN285894 | NPME | 1941 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285895 | NPME | 1942 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285896 | NPME | 1943 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285897 | NPME | 1944 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285898 | NPME | 1945 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285899 | NPME | 1946 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285900 | NPME | 1947 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285901 | NPME | 1948 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285902 | NPME | 1949 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285903 | NPME | 1950 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285904 | NPME | 1951 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285905 | NPME | 1952 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285906 | NPME | 1953 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285907 | NPME | 1954 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285909 | NPME | 1956 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285910 | NPME | 1957 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285911 | NPME | 1958 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285912 | NPME | 1959 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285913 | NPME | 1960 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285914 | NPME | 1961 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285915 | NPME | 1962 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285916 | NPME | 1963 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285917 | NPME | 1964 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285918 | NPME | 1965 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285919 | NPME | 1966 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285920 | NPME | 1967 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285921 | NPME | 1968 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285922 | NPME | 1969 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285923 | NPME | 1970 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285924 | NPME | 1971 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285926 | NPME | 1973 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285928 | NPME | 1975 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285931 | NPME | 1978 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285932 | NPME | 1979 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285933 | NPME | 1980 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285934 | NPME | 1981 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285935 | NPME | 1982 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285936 | NPME | 1983 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285937 | NPME | 1984 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285938 | NPME | 1985 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285939 | NPME | 1986 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285940 | NPME | 1987 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285941 | NPME | 1988 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285942 | NPME | 1989 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285943 | NPME | 1990 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285944 | NPME | 1991 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285945 | NPME | 1992 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285946 | NPME | 1993 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285947 | NPME | 1994 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285948 | NPME | 1995 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285949 | NPME | 1996 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285950 | NPME | 1997 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285951 | NPME | 1998 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285952 | NPME | 1999 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285953 | NPME | 2000 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285954 | NPME | 2001 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285955 | NPME | 2002 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285957 | NPME | 2004 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285958 | NPME | 2005 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285962 | NPME | 2009 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285963 | NPME | 2010 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285964 | NPME | 2011 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285965 | NPME | 2012 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285966 | NPME | 2013 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285967 | NPME | 2014 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285968 | NPME | 2015 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285969 | NPME | 2016 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285970 | NPME | 2017 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285971 | NPME | 2018 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285972 | NPME | 2019 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285973 | NPME | 2020 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285974 | NPME | 2021 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285975 | NPME | 2022 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285976 | NPME | 2023 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285977 | NPME | 2024 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285978 | NPME | 2025 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285979 | NPME | 2026 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285980 | NPME | 2027 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285982 | NPME | 2029 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285983 | NPME | 2030 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285985 | NPME | 2032 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG5NN285987 | NPME | 2034 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285988 | NPME | 2035 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285989 | NPME | 2036 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285990 | NPME | 2037 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285991 | NPME | 2038 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285992 | NPME | 2039 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285994 | NPME | 2041 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285995 | NPME | 2042 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285997 | NPME | 2044 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285998 | NPME | 2045 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285999 | NPME | 2046 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN286000 | NPME | 2047 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN286001 | NPME | 2048 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN286002 | NPME | 2049 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN286003 | NPME | 2050 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN286004 | NPME | 2051 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN286005 | NPME | 2052 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN286006 | NPME | 2053 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN286007 | NPME | 2054 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN286008 | NPME | 2055 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN286009 | NPME | 2056 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN286010 | NPME | 2057 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN286011 | NPME | 2058 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN286012 | NPME | 2059 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN286013 | NPME | 2060 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN286014 | NPME | 2061 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN286015 | NPME | 2062 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN286016 | NPME | 2063 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN286017 | NPME | 2064 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN286018 | NPME | 2065 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN286019 | NPME | 2066 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN286020 | NPME | 2067 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN286021 | NPME | 2068 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN286022 | NPME | 2069 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN286024 | NPME | 2071 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN286025 | NPME | 2072 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN286026 | NPME | 2073 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN286027 | NPME | 2074 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN286028 | NPME | 2075 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN286029 | NPME | 2076 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308448 | NPME | 2077 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308449 | NPME | 2078 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN308450 | NPME | 2079 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308451 | NPME | 2080 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308452 | NPME | 2081 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308453 | NPME | 2082 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308454 | NPME | 2083 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN308455 | NPME | 2084 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN308456 | NPME | 2085 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308457 | NPME | 2086 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308458 | NPME | 2087 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308459 | NPME | 2088 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308460 | NPME | 2089 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308461 | NPME | 2090 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308462 | NPME | 2091 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN308464 | NPME | 2093 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308465 | NPME | 2094 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308466 | NPME | 2095 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308467 | NPME | 2096 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308468 | NPME | 2097 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN308469 | NPME | 2098 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308470 | NPME | 2099 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308484 | NPME | 2113 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308488 | NPME | 2117 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308493 | NPME | 2122 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN308494 | NPME | 2123 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308496 | NPME | 2125 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308497 | NPME | 2126 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308498 | NPME | 2127 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN308500 | NPME | 2129 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308501 | NPME | 2130 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308504 | NPME | 2133 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN308505 | NPME | 2134 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN308506 | NPME | 2135 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308507 | NPME | 2136 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308508 | NPME | 2137 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308509 | NPME | 2138 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308511 | NPME | 2140 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308512 | NPME | 2141 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN308513 | NPME | 2142 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN308514 | NPME | 2143 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG4NN308515 | NPME | 2144 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308517 | NPME | 2146 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308518 | NPME | 2147 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285852 | NPME | 2149 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN308472 | NPME | 10075 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308474 | NPME | 10077 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308475 | NPME | 10078 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN308477 | NPME | 10080 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN308481 | NPME | 10084 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308482 | NPME | 10085 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308483 | NPME | 10086 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308485 | NPME | 10087 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN308486 | NPME | 10088 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN308487 | NPME | 10089 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308489 | NPME | 10090 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN308490 | NPME | 10091 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN308491 | NPME | 10092 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN308492 | NPME | 10093 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN308495 | NPME | 10094 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308499 | NPME | 10095 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308502 | NPME | 10096 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN286136 | NPME | 700 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN286137 | NPME | 701 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN286138 | NPME | 702 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN286139 | NPME | 703 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN286140 | NPME | 704 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN286141 | NPME | 705 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN286142 | NPME | 706 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN286143 | NPME | 707 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN286144 | NPME | 708 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN286145 | NPME | 709 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN286146 | NPME | 710 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN286147 | NPME | 711 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286148 | NPME | 712 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286149 | NPME | 713 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN286150 | NPME | 714 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286151 | NPME | 715 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286152 | NPME | 716 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN286153 | NPME | 717 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN286154 | NPME | 718 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN291456 | NPME | 719 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN291457 | NPME | 720 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN291458 | NPME | 721 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN291459 | NPME | 722 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN291460 | NPME | 723 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN291461 | NPME | 724 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN291462 | NPME | 725 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN291463 | NPME | 726 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN291464 | NPME | 727 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN291465 | NPME | 728 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN291466 | NPME | 729 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN291467 | NPME | 730 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN291468 | NPME | 731 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN291469 | NPME | 732 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN291470 | NPME | 733 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN291471 | NPME | 734 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN291472 | NPME | 735 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN291473 | NPME | 736 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN291474 | NPME | 737 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN291475 | NPME | 738 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN291476 | NPME | 739 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN291477 | NPME | 740 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN291478 | NPME | 741 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN291479 | NPME | 742 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN291480 | NPME | 743 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN291481 | NPME | 744 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN291482 | NPME | 745 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN291483 | NPME | 746 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN291484 | NPME | 747 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN291485 | NPME | 748 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN291486 | NPME | 749 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH7NN286092 | RETL | 9352 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH0NN286094 | RETL | 9354 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH4NN286096 | RETL | 9356 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH5NN286107 | RETL | 9367 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH9NN286109 | RETL | 9369 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH5NN286110 | RETL | 9370 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH9NN286112 | RETL | 9372 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH0NN286113 | RETL | 9373 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH2NN286114 | RETL | 9374 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH4NN286115 | RETL | 9375 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4WC9EH6NN286116 | RETL | 9376 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH8NN286117 | RETL | 9377 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EHXNN286118 | RETL | 9378 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH1NN286119 | RETL | 9379 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH8NN286120 | RETL | 9380 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EHXNN286121 | RETL | 9381 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH1NN286122 | RETL | 9382 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH3NN286123 | RETL | 9383 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH5NN286124 | RETL | 9384 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH7NN286125 | RETL | 9385 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH9NN286126 | RETL | 9386 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH0NN286127 | RETL | 9387 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH2NN286128 | RETL | 9388 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH4NN286129 | RETL | 9389 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH0NN286130 | RETL | 9390 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH2NN286131 | RETL | 9391 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH4NN286132 | RETL | 9392 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH6NN286133 | RETL | 9393 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH8NN286134 | RETL | 9394 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286252 | RETL | 10098 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286258 | RETL | 10099 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286269 | RETL | 10101 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXMN286155 | RETL | 82222 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1MN286156 | RETL | 82223 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3MN286157 | RETL | 82224 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5MN286158 | RETL | 82225 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7MN286159 | RETL | 82226 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3MN286160 | RETL | 82227 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5MN286161 | RETL | 82228 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7MN286162 | RETL | 82229 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9MN286163 | RETL | 82230 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0MN286164 | RETL | 82231 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2MN286165 | RETL | 82232 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4MN286166 | RETL | 82233 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6MN286167 | RETL | 82234 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8MN286168 | RETL | 82235 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXMN286169 | RETL | 82236 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6MN286170 | RETL | 82237 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8MN286171 | RETL | 82238 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXMN286172 | RETL | 82239 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X8MD758312 | RETL | 82240 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758313 | RETL | 82241 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758315 | RETL | 82243 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758316 | RETL | 82244 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758317 | RETL | 82245 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758318 | RETL | 82246 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758319 | RETL | 82247 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758320 | RETL | 82248 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758321 | RETL | 82249 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758322 | RETL | 82250 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758323 | RETL | 82251 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758325 | RETL | 82253 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758326 | RETL | 82254 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758327 | RETL | 82255 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758328 | RETL | 82256 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758329 | RETL | 82257 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758330 | RETL | 82258 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758331 | RETL | 82259 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758332 | RETL | 82260 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758333 | RETL | 82261 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758334 | RETL | 82262 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758335 | RETL | 82263 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758336 | RETL | 82264 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758337 | RETL | 82265 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758338 | RETL | 82266 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758339 | RETL | 82267 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758340 | RETL | 82268 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758341 | RETL | 82269 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758342 | RETL | 82270 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758343 | RETL | 82271 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758347 | RETL | 82275 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758349 | RETL | 82277 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758350 | RETL | 82278 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758351 | RETL | 82279 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758352 | RETL | 82280 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758353 | RETL | 82281 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758354 | RETL | 82282 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758355 | RETL | 82283 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD758356 | RETL | 82284 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758357 | RETL | 82285 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758358 | RETL | 82286 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8XXND758359 | RETL | 82287 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758360 | RETL | 82288 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758361 | RETL | 82289 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758362 | RETL | 82290 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758363 | RETL | 82291 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758364 | RETL | 82292 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758365 | RETL | 82293 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758366 | RETL | 82294 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758367 | RETL | 82295 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758368 | RETL | 82296 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758369 | RETL | 82297 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758370 | RETL | 82298 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758371 | RETL | 82299 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758372 | RETL | 82300 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758373 | RETL | 82301 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758374 | RETL | 82302 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758375 | RETL | 82303 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758376 | RETL | 82304 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758377 | RETL | 82305 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758378 | RETL | 82306 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758379 | RETL | 82307 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758380 | RETL | 82308 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758381 | RETL | 82309 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758382 | RETL | 82310 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758383 | RETL | 82311 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758385 | RETL | 82313 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758386 | RETL | 82314 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758387 | RETL | 82315 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758388 | RETL | 82316 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758389 | RETL | 82317 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758390 | RETL | 82318 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758392 | RETL | 82320 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758393 | RETL | 82321 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758394 | RETL | 82322 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758395 | RETL | 82323 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758396 | RETL | 82324 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758397 | RETL | 82325 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758398 | RETL | 82326 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758399 | RETL | 82327 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758400 | RETL | 82328 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758401 | RETL | 82329 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758402 | RETL | 82330 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758403 | RETL | 82331 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758404 | RETL | 82332 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758405 | RETL | 82333 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758406 | RETL | 82334 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758410 | RETL | 82338 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758411 | RETL | 82339 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758412 | RETL | 82340 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758413 | RETL | 82341 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758414 | RETL | 82342 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758415 | RETL | 82343 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758416 | RETL | 82344 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758417 | RETL | 82345 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758418 | RETL | 82346 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758419 | RETL | 82347 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758420 | RETL | 82348 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758421 | RETL | 82349 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758422 | RETL | 82350 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758423 | RETL | 82351 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758424 | RETL | 82352 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758425 | RETL | 82353 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758426 | RETL | 82354 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758427 | RETL | 82355 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758428 | RETL | 82356 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758429 | RETL | 82357 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758430 | RETL | 82358 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758431 | RETL | 82359 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758432 | RETL | 82360 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758433 | RETL | 82361 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758434 | RETL | 82362 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758435 | RETL | 82363 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758436 | RETL | 82364 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758437 | RETL | 82365 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758439 | RETL | 82367 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758440 | RETL | 82368 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758441 | RETL | 82369 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758442 | RETL | 82370 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758444 | RETL | 82372 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758446 | RETL | 82374 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758447 | RETL | 82375 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X9ND758448 | RETL | 82376 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758449 | RETL | 82377 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758450 | RETL | 82378 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758451 | RETL | 82379 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758452 | RETL | 82380 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758453 | RETL | 82381 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758455 | RETL | 82383 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758456 | RETL | 82384 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XND758457 | RETL | 82385 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758458 | RETL | 82386 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758459 | RETL | 82387 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758460 | RETL | 82388 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758461 | RETL | 82389 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758462 | RETL | 82390 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758463 | RETL | 82391 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758464 | RETL | 82392 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758465 | RETL | 82393 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758466 | RETL | 82394 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758467 | RETL | 82395 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758468 | RETL | 82396 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758469 | RETL | 82397 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758470 | RETL | 82398 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758472 | RETL | 82400 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XND758473 | RETL | 82401 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758474 | RETL | 82402 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758475 | RETL | 82403 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758476 | RETL | 82404 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758477 | RETL | 82405 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758478 | RETL | 82406 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758480 | RETL | 82408 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758481 | RETL | 82409 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758482 | RETL | 82410 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758483 | RETL | 82411 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758484 | RETL | 82412 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758485 | RETL | 82413 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758486 | RETL | 82414 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758487 | RETL | 82415 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758488 | RETL | 82416 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758489 | RETL | 82417 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758490 | RETL | 82418 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758491 | RETL | 82419 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758492 | RETL | 82420 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758493 | RETL | 82421 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758494 | RETL | 82422 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758495 | RETL | 82423 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758496 | RETL | 82424 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758497 | RETL | 82425 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758498 | RETL | 82426 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758499 | RETL | 82427 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758500 | RETL | 82428 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758501 | RETL | 82429 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758502 | RETL | 82430 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758503 | RETL | 82431 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758506 | RETL | 82434 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758507 | RETL | 82435 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758508 | RETL | 82436 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758509 | RETL | 82437 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758510 | RETL | 82438 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758511 | RETL | 82439 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EH1MN286173 | RETL | 82440 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3MN286174 | RETL | 82441 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5MN286175 | RETL | 82442 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7MN286176 | RETL | 82443 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9MN286177 | RETL | 82444 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0MN286178 | RETL | 82445 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2MN286179 | RETL | 82446 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9MN286180 | RETL | 82447 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0MN286181 | RETL | 82448 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2MN286182 | RETL | 82449 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4MN286183 | RETL | 82450 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6MN286184 | RETL | 82451 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8MN286185 | RETL | 82452 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXMN286186 | RETL | 82453 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1MN286187 | RETL | 82454 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286188 | RETL | 82455 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286189 | RETL | 82456 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286190 | RETL | 82457 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286191 | RETL | 82458 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286196 | RETL | 82463 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286198 | RETL | 82465 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286199 | RETL | 82466 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EH9NN286200 | RETL | 82467 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286201 | RETL | 82468 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286202 | RETL | 82469 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286203 | RETL | 82470 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286204 | RETL | 82471 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286205 | RETL | 82472 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286206 | RETL | 82473 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286207 | RETL | 82474 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286208 | RETL | 82475 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286209 | RETL | 82476 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286210 | RETL | 82477 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286211 | RETL | 82478 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286212 | RETL | 82479 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286213 | RETL | 82480 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286214 | RETL | 82481 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286215 | RETL | 82482 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286216 | RETL | 82483 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286217 | RETL | 82484 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286218 | RETL | 82485 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286219 | RETL | 82486 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286220 | RETL | 82487 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286221 | RETL | 82488 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286222 | RETL | 82489 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286223 | RETL | 82490 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286224 | RETL | 82491 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286225 | RETL | 82492 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286226 | RETL | 82493 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286227 | RETL | 82494 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286228 | RETL | 82495 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286230 | RETL | 82497 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286231 | RETL | 82498 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286232 | RETL | 82499 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286233 | RETL | 82500 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286234 | RETL | 82501 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286235 | RETL | 82502 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286237 | RETL | 82504 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286239 | RETL | 82506 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286240 | RETL | 82507 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286241 | RETL | 82508 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286242 | RETL | 82509 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286243 | RETL | 82510 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286244 | RETL | 82511 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286245 | RETL | 82512 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286246 | RETL | 82513 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286247 | RETL | 82514 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286248 | RETL | 82515 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286249 | RETL | 82516 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286250 | RETL | 82517 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286251 | RETL | 82518 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286253 | RETL | 82520 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286254 | RETL | 82521 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286256 | RETL | 82523 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286257 | RETL | 82524 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286259 | RETL | 82526 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286260 | RETL | 82527 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286261 | RETL | 82528 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286262 | RETL | 82529 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286263 | RETL | 82530 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286264 | RETL | 82531 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286265 | RETL | 82532 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286266 | RETL | 82533 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286267 | RETL | 82534 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286268 | RETL | 82535 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286270 | RETL | 82537 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286271 | RETL | 82760 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286272 | RETL | 82761 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286273 | RETL | 82762 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286274 | RETL | 82763 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286275 | RETL | 82764 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286276 | RETL | 82765 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286277 | RETL | 82766 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286278 | RETL | 82767 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286279 | RETL | 82768 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286280 | RETL | 82769 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286281 | RETL | 82770 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286282 | RETL | 82771 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286283 | RETL | 82772 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286284 | RETL | 82773 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286285 | RETL | 82774 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286286 | RETL | 82775 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286287 | RETL | 82776 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EH5NN286288 | RETL | 82777 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286289 | RETL | 82778 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN286290 | RETL | 82779 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286291 | RETL | 82780 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286292 | RETL | 82781 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286293 | RETL | 82782 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286294 | RETL | 82783 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286295 | RETL | 82784 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN286296 | RETL | 82785 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN286297 | RETL | 82786 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286298 | RETL | 82787 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN286299 | RETL | 82788 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN285802 | RETL | 82790 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285803 | RETL | 82791 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN285804 | RETL | 82792 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN285805 | RETL | 82793 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN285806 | RETL | 82794 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN285807 | RETL | 82795 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN285809 | RETL | 82797 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN285810 | RETL | 82798 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN285811 | RETL | 82799 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN285812 | RETL | 82800 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN285813 | RETL | 82801 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN285814 | RETL | 82802 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN285815 | RETL | 82803 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN285816 | RETL | 82804 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285817 | RETL | 82805 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN285818 | RETL | 82806 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN285819 | RETL | 82807 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285820 | RETL | 82808 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN285821 | RETL | 82809 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN285822 | RETL | 82810 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN285823 | RETL | 82811 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN285824 | RETL | 82812 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN285825 | RETL | 82813 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN285826 | RETL | 82814 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN285827 | RETL | 82815 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN285828 | RETL | 82816 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN285829 | RETL | 82817 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN285830 | RETL | 82818 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN285831 | RETL | 82819 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN285833 | RETL | 82821 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285834 | RETL | 82822 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN285835 | RETL | 82823 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN285836 | RETL | 82824 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN285837 | RETL | 82825 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN285838 | RETL | 82826 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN285839 | RETL | 82827 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN285840 | RETL | 82828 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN285841 | RETL | 82829 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN285842 | RETL | 82830 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN285843 | RETL | 82831 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH4NN285844 | RETL | 82832 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH6NN285845 | RETL | 82833 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN285846 | RETL | 82834 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN285847 | RETL | 82835 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285848 | RETL | 82836 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EHXNN285850 | RETL | 82838 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN285851 | RETL | 82839 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH1NN286086 | RETL | 9346 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH3NN286087 | RETL | 9347 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH5NN286088 | RETL | 9348 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH7NN286089 | RETL | 9349 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH3NN286090 | RETL | 9350 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH5NN286091 | RETL | 9351 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH9NN286093 | RETL | 9353 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH2NN286095 | RETL | 9355 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH6NN286097 | RETL | 9357 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH8NN286098 | RETL | 9358 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EHXNN286099 | RETL | 9359 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH2NN286100 | RETL | 9360 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH4NN286101 | RETL | 9361 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH6NN286102 | RETL | 9362 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH8NN286103 | RETL | 9363 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EHXNN286104 | RETL | 9364 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH1NN286105 | RETL | 9365 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH3NN286106 | RETL | 9366 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH7NN286108 | RETL | 9368 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EH7NN286111 | RETL | 9371 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285857 | YRCF | 67325 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EHXNN286135 | YRCF | 79779 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X4MD758579 | YRCF | 10102 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG5NN308510 | YRCF | 10105 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X8ND758585 | YRCF | 10106 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758583 | YRCF | 10107 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758572 | YRCF | 10108 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG3NN308473 | YRCF | 10109 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X2ND758632 | YRCF | 10110 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758624 | YRCF | 10111 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758576 | YRCF | 10115 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG3NN286023 | YRCF | 10116 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN308463 | YRCF | 10117 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285927 | YRCF | 10118 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285925 | YRCF | 10119 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285996 | YRCF | 10120 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285993 | YRCF | 10121 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285908 | YRCF | 10122 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X6ND758598 | YRCF | 10123 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758584 | YRCF | 10124 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758565 | YRCF | 10125 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758599 | YRCF | 10126 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND758677 | YRCF | 10127 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG5NN285956 | YRCF | 10128 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X6ND758648 | YRCF | 10129 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758633 | YRCF | 10130 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758558 | YRCF | 10131 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758557 | YRCF | 10132 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND758637 | YRCF | 10133 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758603 | YRCF | 10134 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758602 | YRCF | 10135 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758607 | YRCF | 10136 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758574 | YRCF | 10137 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758573 | YRCF | 10138 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758631 | YRCF | 10139 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758649 | YRCF | 10140 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG2NN285929 | YRCF | 10141 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285986 | YRCF | 10142 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN308503 | YRCF | 10143 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285961 | YRCF | 10144 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285959 | YRCF | 10145 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X3ND758591 | YRCF | 10146 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG1NN308519 | YRCF | 10147 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN286236 | YRCF | 10148 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285984 | YRCF | 10149 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X3ND758641 | YRCF | 10150 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758580 | YRCF | 10151 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG9NN285930 | YRCF | 10152 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285960 | YRCF | 10153 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X5ND758589 | YRCF | 10154 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758616 | YRCF | 10155 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG0NN308480 | YRCF | 10156 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN308471 | YRCF | 10157 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN308476 | YRCF | 10158 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN308479 | YRCF | 10159 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8XXMD758571 | YRCF | 10160 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758592 | YRCF | 10161 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND758593 | YRCF | 10162 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND758600 | YRCF | 10163 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND758611 | YRCF | 10164 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758627 | YRCF | 10165 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758653 | YRCF | 10166 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758664 | YRCF | 10167 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758666 | YRCF | 10168 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758675 | YRCF | 10169 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758678 | YRCF | 10170 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG2NN308478 | YRCF | 10171 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN308516 | YRCF | 10172 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285981 | YRCF | 10173 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X3ND758638 | YRCF | 10174 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EH0NN285808 | YRCF | 10535 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X8MD758973 | YRCF | 14809 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758974 | YRCF | 14810 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758975 | YRCF | 14811 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758976 | YRCF | 14812 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758977 | YRCF | 14813 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758978 | YRCF | 14814 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758979 | YRCF | 14815 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758980 | YRCF | 14816 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758981 | YRCF | 14817 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758982 | YRCF | 14818 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758983 | YRCF | 14819 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758984 | YRCF | 14820 | TRACTOR | IN | IN | 1 | PETERBILT |

| 1XPBAP8X4MD758985 | YRCF | 14821 | TRACTOR | IN | IN | 1 | PETERBILT |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X6MD758986 | YRCF | 14822 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758987 | YRCF | 14823 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XMD758988 | YRCF | 14824 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758989 | YRCF | 14825 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD758990 | YRCF | 14826 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758991 | YRCF | 14827 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758992 | YRCF | 14828 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758993 | YRCF | 14829 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD758994 | YRCF | 14830 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758995 | YRCF | 14831 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD758996 | YRCF | 14832 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD758997 | YRCF | 14833 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD758998 | YRCF | 14834 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758999 | YRCF | 14835 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759000 | YRCF | 14836 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759001 | YRCF | 14837 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759002 | YRCF | 14838 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759003 | YRCF | 14839 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759004 | YRCF | 14840 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759005 | YRCF | 14841 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759006 | YRCF | 14842 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759007 | YRCF | 14843 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759008 | YRCF | 14844 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759009 | YRCF | 14845 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759010 | YRCF | 14846 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759011 | YRCF | 14847 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759012 | YRCF | 14848 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759013 | YRCF | 14849 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759014 | YRCF | 14850 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759015 | YRCF | 14851 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759016 | YRCF | 14852 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759017 | YRCF | 14853 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759018 | YRCF | 14854 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759019 | YRCF | 14855 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759020 | YRCF | 14856 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759021 | YRCF | 14857 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759022 | YRCF | 14858 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759023 | YRCF | 14859 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759024 | YRCF | 14860 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759025 | YRCF | 14861 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759026 | YRCF | 14862 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759027 | YRCF | 14863 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759028 | YRCF | 14864 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759029 | YRCF | 14865 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759030 | YRCF | 14866 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759031 | YRCF | 14867 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759032 | YRCF | 14868 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759033 | YRCF | 14869 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759034 | YRCF | 14870 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759035 | YRCF | 14871 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759036 | YRCF | 14872 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759037 | YRCF | 14873 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759038 | YRCF | 14874 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759039 | YRCF | 14875 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759040 | YRCF | 14876 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759041 | YRCF | 14877 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759042 | YRCF | 14878 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759043 | YRCF | 14879 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759044 | YRCF | 14880 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759045 | YRCF | 14881 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759046 | YRCF | 14882 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759047 | YRCF | 14883 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759048 | YRCF | 14884 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759049 | YRCF | 14885 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759050 | YRCF | 14886 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759051 | YRCF | 14887 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759052 | YRCF | 14888 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759053 | YRCF | 14889 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759054 | YRCF | 14890 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759055 | YRCF | 14891 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759056 | YRCF | 14892 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759057 | YRCF | 14893 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759058 | YRCF | 14894 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759059 | YRCF | 14895 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759060 | YRCF | 14896 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759061 | YRCF | 14897 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759062 | YRCF | 14898 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759063 | YRCF | 14899 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759064 | YRCF | 14900 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759065 | YRCF | 14901 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X2MD759066 | YRCF | 14902 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759067 | YRCF | 14903 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759068 | YRCF | 14904 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759069 | YRCF | 14905 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759070 | YRCF | 14906 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759071 | YRCF | 14907 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759072 | YRCF | 14908 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759073 | YRCF | 14909 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759074 | YRCF | 14910 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759075 | YRCF | 14911 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5MD759076 | YRCF | 14912 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759077 | YRCF | 14913 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759078 | YRCF | 14914 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759079 | YRCF | 14915 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD759080 | YRCF | 14916 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9MD759081 | YRCF | 14917 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0MD759082 | YRCF | 14918 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2MD759083 | YRCF | 14919 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD759084 | YRCF | 14920 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6MD759085 | YRCF | 14921 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8MD759086 | YRCF | 14922 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759087 | YRCF | 14923 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759088 | YRCF | 14924 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759089 | YRCF | 14925 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD759090 | YRCF | 14926 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD759091 | YRCF | 14927 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD759092 | YRCF | 14928 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG0MN285264 | YRCF | 14929 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285265 | YRCF | 14930 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285267 | YRCF | 14932 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285268 | YRCF | 14933 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285269 | YRCF | 14934 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285270 | YRCF | 14935 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285271 | YRCF | 14936 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285272 | YRCF | 14937 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285273 | YRCF | 14938 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285274 | YRCF | 14939 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285275 | YRCF | 14940 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285276 | YRCF | 14941 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285277 | YRCF | 14942 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285278 | YRCF | 14943 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285279 | YRCF | 14944 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285280 | YRCF | 14945 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285281 | YRCF | 14946 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285282 | YRCF | 14947 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285283 | YRCF | 14948 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285284 | YRCF | 14949 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285285 | YRCF | 14950 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285286 | YRCF | 14951 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285287 | YRCF | 14952 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285288 | YRCF | 14953 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285289 | YRCF | 14954 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285290 | YRCF | 14955 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285291 | YRCF | 14956 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285292 | YRCF | 14957 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285293 | YRCF | 14958 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285294 | YRCF | 14959 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285295 | YRCF | 14960 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285296 | YRCF | 14961 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285297 | YRCF | 14962 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285298 | YRCF | 14963 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285299 | YRCF | 14964 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285300 | YRCF | 14965 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285301 | YRCF | 14966 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285302 | YRCF | 14967 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285303 | YRCF | 14968 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285304 | YRCF | 14969 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285305 | YRCF | 14970 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285306 | YRCF | 14971 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285307 | YRCF | 14972 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285308 | YRCF | 14973 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285309 | YRCF | 14974 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285310 | YRCF | 14975 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285311 | YRCF | 14976 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285312 | YRCF | 14977 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285313 | YRCF | 14978 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285314 | YRCF | 14979 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285315 | YRCF | 14980 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285316 | YRCF | 14981 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285317 | YRCF | 14982 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285318 | YRCF | 14983 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EGXMN285319 | YRCF | 14984 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285320 | YRCF | 14985 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285321 | YRCF | 14986 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285322 | YRCF | 14987 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285323 | YRCF | 14988 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285324 | YRCF | 14989 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285325 | YRCF | 14990 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285326 | YRCF | 14991 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285327 | YRCF | 14992 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285328 | YRCF | 14993 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285329 | YRCF | 14994 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285331 | YRCF | 14996 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285332 | YRCF | 14997 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285333 | YRCF | 14998 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285334 | YRCF | 14999 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285391 | YRCF | 15460 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285392 | YRCF | 15461 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285393 | YRCF | 15462 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285394 | YRCF | 15463 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285395 | YRCF | 15464 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285396 | YRCF | 15465 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285397 | YRCF | 15466 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285398 | YRCF | 15467 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285399 | YRCF | 15468 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285400 | YRCF | 15469 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285401 | YRCF | 15470 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285402 | YRCF | 15471 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285403 | YRCF | 15472 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285404 | YRCF | 15473 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285405 | YRCF | 15474 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285406 | YRCF | 15475 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285407 | YRCF | 15476 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285408 | YRCF | 15477 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285409 | YRCF | 15478 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285410 | YRCF | 15479 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285411 | YRCF | 15480 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285412 | YRCF | 15481 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285413 | YRCF | 15482 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285414 | YRCF | 15483 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285415 | YRCF | 15484 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285416 | YRCF | 15485 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285417 | YRCF | 15486 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285418 | YRCF | 15487 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285419 | YRCF | 15488 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285420 | YRCF | 15489 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285421 | YRCF | 15490 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285422 | YRCF | 15491 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285423 | YRCF | 15492 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285424 | YRCF | 15493 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285425 | YRCF | 15494 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285426 | YRCF | 15495 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285427 | YRCF | 15496 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285428 | YRCF | 15497 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285429 | YRCF | 15498 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285430 | YRCF | 15499 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285431 | YRCF | 15500 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285432 | YRCF | 15501 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285433 | YRCF | 15502 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285434 | YRCF | 15503 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285435 | YRCF | 15504 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285436 | YRCF | 15505 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285437 | YRCF | 15506 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285438 | YRCF | 15507 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285439 | YRCF | 15508 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285440 | YRCF | 15509 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285441 | YRCF | 15510 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285442 | YRCF | 15511 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285443 | YRCF | 15512 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285444 | YRCF | 15513 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285445 | YRCF | 15514 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285446 | YRCF | 15515 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285447 | YRCF | 15516 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285448 | YRCF | 15517 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285449 | YRCF | 15518 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285450 | YRCF | 15519 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285451 | YRCF | 15520 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285452 | YRCF | 15521 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285453 | YRCF | 15522 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285454 | YRCF | 15523 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285455 | YRCF | 15524 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285456 | YRCF | 15525 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG9NN285457 | YRCF | 15526 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285458 | YRCF | 15527 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285459 | YRCF | 15528 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285460 | YRCF | 15529 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285461 | YRCF | 15530 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285462 | YRCF | 15531 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285463 | YRCF | 15532 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285464 | YRCF | 15533 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285465 | YRCF | 15534 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285466 | YRCF | 15535 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285467 | YRCF | 15536 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285468 | YRCF | 15537 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285469 | YRCF | 15538 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285470 | YRCF | 15539 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285471 | YRCF | 15540 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285472 | YRCF | 15541 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285473 | YRCF | 15542 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285474 | YRCF | 15543 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285475 | YRCF | 15544 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285476 | YRCF | 15545 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285477 | YRCF | 15546 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285478 | YRCF | 15547 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285509 | YRCF | 15548 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285510 | YRCF | 15549 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285511 | YRCF | 15550 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285512 | YRCF | 15551 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285513 | YRCF | 15552 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285514 | YRCF | 15553 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285515 | YRCF | 15554 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285516 | YRCF | 15555 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285517 | YRCF | 15556 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285518 | YRCF | 15557 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285519 | YRCF | 15558 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285520 | YRCF | 15559 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285521 | YRCF | 15560 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285522 | YRCF | 15561 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285523 | YRCF | 15562 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285524 | YRCF | 15563 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285525 | YRCF | 15564 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285526 | YRCF | 15565 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285527 | YRCF | 15566 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285528 | YRCF | 15567 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285529 | YRCF | 15568 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285530 | YRCF | 15569 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285531 | YRCF | 15570 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285532 | YRCF | 15571 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285533 | YRCF | 15572 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285534 | YRCF | 15573 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285535 | YRCF | 15574 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285536 | YRCF | 15575 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285537 | YRCF | 15576 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285538 | YRCF | 15577 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285539 | YRCF | 15578 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285540 | YRCF | 15579 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285541 | YRCF | 15580 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285542 | YRCF | 15581 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285543 | YRCF | 15582 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285544 | YRCF | 15583 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285545 | YRCF | 15584 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285546 | YRCF | 15585 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285547 | YRCF | 15586 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285548 | YRCF | 15587 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285549 | YRCF | 15588 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285550 | YRCF | 15589 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285551 | YRCF | 15590 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285552 | YRCF | 15591 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285553 | YRCF | 15592 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285554 | YRCF | 15593 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285555 | YRCF | 15594 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285556 | YRCF | 15595 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285557 | YRCF | 15596 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285558 | YRCF | 15597 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285559 | YRCF | 15598 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285560 | YRCF | 15599 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285561 | YRCF | 15600 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285562 | YRCF | 15601 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285563 | YRCF | 15602 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285564 | YRCF | 15603 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285565 | YRCF | 15604 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285566 | YRCF | 15605 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285567 | YRCF | 15606 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG7NN285568 | YRCF | 15607 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285569 | YRCF | 15608 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285570 | YRCF | 15609 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285571 | YRCF | 15610 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285572 | YRCF | 15611 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285573 | YRCF | 15612 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285574 | YRCF | 15613 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285575 | YRCF | 15614 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285576 | YRCF | 15615 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285577 | YRCF | 15616 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285578 | YRCF | 15617 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285579 | YRCF | 15618 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285580 | YRCF | 15619 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285581 | YRCF | 15620 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285582 | YRCF | 15621 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285583 | YRCF | 15622 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285584 | YRCF | 15623 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285585 | YRCF | 15624 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285586 | YRCF | 15625 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285587 | YRCF | 15626 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285588 | YRCF | 15627 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285589 | YRCF | 15628 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285590 | YRCF | 15629 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285591 | YRCF | 15630 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285592 | YRCF | 15631 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285593 | YRCF | 15632 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285594 | YRCF | 15633 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285595 | YRCF | 15634 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285596 | YRCF | 15635 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285597 | YRCF | 15636 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285598 | YRCF | 15637 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285599 | YRCF | 15638 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285600 | YRCF | 15639 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285601 | YRCF | 15640 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285602 | YRCF | 15641 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285603 | YRCF | 15642 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285604 | YRCF | 15643 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285605 | YRCF | 15644 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285606 | YRCF | 15645 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285607 | YRCF | 15646 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285608 | YRCF | 15647 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285609 | YRCF | 15648 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285610 | YRCF | 15649 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285611 | YRCF | 15650 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285612 | YRCF | 15651 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285613 | YRCF | 15652 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285614 | YRCF | 15653 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285615 | YRCF | 15654 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285616 | YRCF | 15655 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285617 | YRCF | 15656 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285618 | YRCF | 15657 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285620 | YRCF | 15659 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285621 | YRCF | 15660 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285622 | YRCF | 15661 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285623 | YRCF | 15662 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285624 | YRCF | 15664 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285625 | YRCF | 15665 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285626 | YRCF | 15666 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285627 | YRCF | 15669 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285628 | YRCF | 15670 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285629 | YRCF | 15671 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285630 | YRCF | 15672 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285631 | YRCF | 15673 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285632 | YRCF | 15674 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285633 | YRCF | 15675 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285634 | YRCF | 15676 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285635 | YRCF | 15677 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285636 | YRCF | 15678 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285637 | YRCF | 15679 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285638 | YRCF | 15680 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285639 | YRCF | 15681 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285640 | YRCF | 15682 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285641 | YRCF | 15683 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285642 | YRCF | 15684 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285643 | YRCF | 15685 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285644 | YRCF | 15686 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285645 | YRCF | 15688 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285646 | YRCF | 15690 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285647 | YRCF | 15691 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285648 | YRCF | 15692 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285649 | YRCF | 15693 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG3NN285650 | YRCF | 15694 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285651 | YRCF | 15695 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285652 | YRCF | 15696 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285653 | YRCF | 15697 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285654 | YRCF | 15699 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285655 | YRCF | 15700 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285656 | YRCF | 15701 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285657 | YRCF | 15702 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285658 | YRCF | 15703 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285659 | YRCF | 15704 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285660 | YRCF | 15705 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285661 | YRCF | 15706 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285662 | YRCF | 15707 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285663 | YRCF | 15708 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285664 | YRCF | 15709 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285665 | YRCF | 15710 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285666 | YRCF | 15711 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285667 | YRCF | 15712 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285668 | YRCF | 15713 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285669 | YRCF | 15714 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285670 | YRCF | 15715 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285671 | YRCF | 15716 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285672 | YRCF | 15717 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285673 | YRCF | 15718 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285674 | YRCF | 15719 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285675 | YRCF | 15720 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285676 | YRCF | 15721 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285677 | YRCF | 15722 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285678 | YRCF | 15723 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285679 | YRCF | 15724 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285680 | YRCF | 15725 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285681 | YRCF | 15726 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285682 | YRCF | 15727 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285683 | YRCF | 15728 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285684 | YRCF | 15729 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285685 | YRCF | 15730 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285686 | YRCF | 15731 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285687 | YRCF | 15732 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285688 | YRCF | 15733 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285689 | YRCF | 15734 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285690 | YRCF | 15735 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285691 | YRCF | 15736 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285692 | YRCF | 15737 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285693 | YRCF | 15738 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285694 | YRCF | 15739 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285695 | YRCF | 15740 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285696 | YRCF | 15741 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285697 | YRCF | 15742 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285698 | YRCF | 15743 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285699 | YRCF | 15744 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285700 | YRCF | 15745 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285701 | YRCF | 15746 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285702 | YRCF | 15747 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285703 | YRCF | 15748 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285704 | YRCF | 15749 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285705 | YRCF | 15750 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285706 | YRCF | 15751 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285707 | YRCF | 15752 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285708 | YRCF | 15753 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285709 | YRCF | 15754 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285710 | YRCF | 15755 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285711 | YRCF | 15756 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285712 | YRCF | 15757 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285713 | YRCF | 15758 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285714 | YRCF | 15759 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285715 | YRCF | 15760 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285716 | YRCF | 15761 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285717 | YRCF | 15762 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285718 | YRCF | 15763 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285719 | YRCF | 15764 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285720 | YRCF | 15765 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285721 | YRCF | 15766 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285722 | YRCF | 15767 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285723 | YRCF | 15768 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285724 | YRCF | 15769 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285725 | YRCF | 15770 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285726 | YRCF | 15771 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285727 | YRCF | 15772 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285728 | YRCF | 15773 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285729 | YRCF | 15774 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285730 | YRCF | 15775 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG3NN285731 | YRCF | 15776 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285732 | YRCF | 15777 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285733 | YRCF | 15778 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285734 | YRCF | 15779 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285735 | YRCF | 15780 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285736 | YRCF | 15781 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285737 | YRCF | 15782 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285738 | YRCF | 15783 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285739 | YRCF | 15784 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285740 | YRCF | 15785 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285741 | YRCF | 15786 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285742 | YRCF | 15787 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285743 | YRCF | 15788 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285744 | YRCF | 15789 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285745 | YRCF | 15790 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285746 | YRCF | 15791 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285747 | YRCF | 15792 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285748 | YRCF | 15793 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285749 | YRCF | 15794 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285750 | YRCF | 15795 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285751 | YRCF | 15796 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285752 | YRCF | 15797 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285753 | YRCF | 15798 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285754 | YRCF | 15799 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285755 | YRCF | 15800 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285756 | YRCF | 15801 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285757 | YRCF | 15802 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285758 | YRCF | 15803 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285759 | YRCF | 15804 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285760 | YRCF | 15805 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285761 | YRCF | 15806 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285762 | YRCF | 15807 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285763 | YRCF | 15808 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285764 | YRCF | 15809 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285765 | YRCF | 15810 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285766 | YRCF | 15811 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285767 | YRCF | 15812 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285768 | YRCF | 15813 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285769 | YRCF | 15814 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285770 | YRCF | 15815 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285771 | YRCF | 15816 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285772 | YRCF | 15817 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285773 | YRCF | 15818 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285774 | YRCF | 15819 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285775 | YRCF | 15820 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285776 | YRCF | 15821 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285777 | YRCF | 15822 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285778 | YRCF | 15823 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285779 | YRCF | 15824 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285780 | YRCF | 15825 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285781 | YRCF | 15826 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285782 | YRCF | 15827 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285783 | YRCF | 15828 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285784 | YRCF | 15829 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285785 | YRCF | 15830 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285786 | YRCF | 15831 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285787 | YRCF | 15832 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285788 | YRCF | 15833 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285789 | YRCF | 15834 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285790 | YRCF | 15835 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285791 | YRCF | 15836 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285792 | YRCF | 15837 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285793 | YRCF | 15838 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285794 | YRCF | 15839 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285795 | YRCF | 15840 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285796 | YRCF | 15841 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285798 | YRCF | 15843 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285799 | YRCF | 15844 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285800 | YRCF | 15845 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285801 | YRCF | 15846 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285335 | YRCF | 15850 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285336 | YRCF | 15851 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285337 | YRCF | 15852 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285338 | YRCF | 15853 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285339 | YRCF | 15854 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285340 | YRCF | 15855 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285341 | YRCF | 15856 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285342 | YRCF | 15857 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285343 | YRCF | 15858 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285344 | YRCF | 15859 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285345 | YRCF | 15860 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG2MN285346 | YRCF | 15861 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285347 | YRCF | 15862 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285348 | YRCF | 15863 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285349 | YRCF | 15864 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285350 | YRCF | 15865 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285351 | YRCF | 15866 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285352 | YRCF | 15867 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285353 | YRCF | 15868 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285354 | YRCF | 15869 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285355 | YRCF | 15870 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285356 | YRCF | 15871 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285357 | YRCF | 15872 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285358 | YRCF | 15873 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285359 | YRCF | 15874 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285360 | YRCF | 15875 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285361 | YRCF | 15876 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285362 | YRCF | 15877 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285363 | YRCF | 15878 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285364 | YRCF | 15879 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285365 | YRCF | 15880 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285366 | YRCF | 15881 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285367 | YRCF | 15882 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285368 | YRCF | 15883 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285369 | YRCF | 15884 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXMN285370 | YRCF | 15885 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285371 | YRCF | 15886 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285372 | YRCF | 15887 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285373 | YRCF | 15888 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285374 | YRCF | 15889 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285375 | YRCF | 15890 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0MN285376 | YRCF | 15891 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285377 | YRCF | 15892 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285378 | YRCF | 15893 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285379 | YRCF | 15894 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2MN285380 | YRCF | 15895 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4MN285381 | YRCF | 15896 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6MN285382 | YRCF | 15897 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8MN285383 | YRCF | 15898 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285384 | YRCF | 15899 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1MN285385 | YRCF | 15900 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3MN285386 | YRCF | 15901 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285387 | YRCF | 15902 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7MN285388 | YRCF | 15903 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9MN285389 | YRCF | 15904 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5MN285390 | YRCF | 15905 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X3ND759093 | YRCF | 15906 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759094 | YRCF | 15907 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759095 | YRCF | 15908 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759096 | YRCF | 15909 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759097 | YRCF | 15910 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759098 | YRCF | 15911 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759099 | YRCF | 15912 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759100 | YRCF | 15913 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759101 | YRCF | 15914 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759102 | YRCF | 15915 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759103 | YRCF | 15916 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759104 | YRCF | 15917 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759105 | YRCF | 15918 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759106 | YRCF | 15919 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759108 | YRCF | 15921 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759109 | YRCF | 15922 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759110 | YRCF | 15923 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759111 | YRCF | 15924 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759112 | YRCF | 15925 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759113 | YRCF | 15926 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759114 | YRCF | 15927 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759115 | YRCF | 15928 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759116 | YRCF | 15929 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759117 | YRCF | 15930 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759118 | YRCF | 15931 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759119 | YRCF | 15932 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759120 | YRCF | 15933 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759121 | YRCF | 15934 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759122 | YRCF | 15935 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759123 | YRCF | 15936 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759124 | YRCF | 15937 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759125 | YRCF | 15938 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759126 | YRCF | 15939 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759127 | YRCF | 15940 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759128 | YRCF | 15941 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759129 | YRCF | 15942 | TRACTOR | IN | IN | 1 | PETERBILT |

| 1XPBAP8X5ND759130 | YRCF | 15943 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759131 | YRCF | 15944 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759132 | YRCF | 15945 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759133 | YRCF | 15946 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759134 | YRCF | 15947 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759135 | YRCF | 15948 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759136 | YRCF | 15949 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759137 | YRCF | 15950 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XND759138 | YRCF | 15951 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759139 | YRCF | 15952 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759140 | YRCF | 15953 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759141 | YRCF | 15954 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759142 | YRCF | 15955 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759143 | YRCF | 15956 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759144 | YRCF | 15957 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759145 | YRCF | 15958 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759146 | YRCF | 15959 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759147 | YRCF | 15960 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759148 | YRCF | 15961 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759149 | YRCF | 15962 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759150 | YRCF | 15963 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759151 | YRCF | 15964 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759152 | YRCF | 15965 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759153 | YRCF | 15966 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759154 | YRCF | 15967 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759155 | YRCF | 15968 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759156 | YRCF | 15969 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759157 | YRCF | 15970 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759158 | YRCF | 15971 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759159 | YRCF | 15972 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759160 | YRCF | 15973 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759161 | YRCF | 15974 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759162 | YRCF | 15975 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759163 | YRCF | 15976 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759164 | YRCF | 15977 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759165 | YRCF | 15978 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759167 | YRCF | 15980 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759168 | YRCF | 15981 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759169 | YRCF | 15982 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759170 | YRCF | 15983 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759171 | YRCF | 15984 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759172 | YRCF | 15985 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759173 | YRCF | 15986 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759174 | YRCF | 15987 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759175 | YRCF | 15988 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759177 | YRCF | 15990 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759107 | YRCF | 15992 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759166 | YRCF | 15993 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759178 | YRCF | 16701 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759179 | YRCF | 16702 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759180 | YRCF | 16703 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759181 | YRCF | 16704 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759182 | YRCF | 16705 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759183 | YRCF | 16706 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759184 | YRCF | 16707 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759185 | YRCF | 16708 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759186 | YRCF | 16709 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759187 | YRCF | 16710 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759188 | YRCF | 16711 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759189 | YRCF | 16712 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759190 | YRCF | 16713 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759191 | YRCF | 16714 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759192 | YRCF | 16715 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759193 | YRCF | 16716 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759194 | YRCF | 16717 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759195 | YRCF | 16718 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759196 | YRCF | 16719 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759197 | YRCF | 16720 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759198 | YRCF | 16721 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759199 | YRCF | 16722 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759200 | YRCF | 16723 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759201 | YRCF | 16724 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759202 | YRCF | 16725 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759203 | YRCF | 16726 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759204 | YRCF | 16727 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759205 | YRCF | 16728 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759206 | YRCF | 16729 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759207 | YRCF | 16730 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759208 | YRCF | 16731 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759209 | YRCF | 16732 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759210 | YRCF | 16733 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X5ND759211 | YRCF | 16734 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759212 | YRCF | 16735 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759213 | YRCF | 16736 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759214 | YRCF | 16737 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759215 | YRCF | 16738 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759216 | YRCF | 16739 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759217 | YRCF | 16740 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759218 | YRCF | 16741 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759219 | YRCF | 16742 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759220 | YRCF | 16743 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759221 | YRCF | 16744 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759222 | YRCF | 16745 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759223 | YRCF | 16746 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759224 | YRCF | 16747 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759225 | YRCF | 16748 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759226 | YRCF | 16749 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759227 | YRCF | 16750 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759228 | YRCF | 16751 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759229 | YRCF | 16752 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759230 | YRCF | 16753 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759231 | YRCF | 16754 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759232 | YRCF | 16755 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759233 | YRCF | 16756 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759234 | YRCF | 16757 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759235 | YRCF | 16758 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759236 | YRCF | 16759 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759237 | YRCF | 16760 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759238 | YRCF | 16761 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759239 | YRCF | 16762 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759240 | YRCF | 16763 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759241 | YRCF | 16764 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759242 | YRCF | 16765 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759243 | YRCF | 16766 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759244 | YRCF | 16767 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759245 | YRCF | 16768 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759246 | YRCF | 16769 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759247 | YRCF | 16770 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759248 | YRCF | 16771 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759249 | YRCF | 16772 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759250 | YRCF | 16773 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759251 | YRCF | 16774 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759252 | YRCF | 16775 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759253 | YRCF | 16776 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759254 | YRCF | 16777 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759255 | YRCF | 16778 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759256 | YRCF | 16779 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759257 | YRCF | 16780 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759258 | YRCF | 16781 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759259 | YRCF | 16782 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759260 | YRCF | 16783 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759261 | YRCF | 16784 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759262 | YRCF | 16785 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759263 | YRCF | 16786 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759264 | YRCF | 16787 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759265 | YRCF | 16788 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759266 | YRCF | 16789 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759267 | YRCF | 16790 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759268 | YRCF | 16791 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759269 | YRCF | 16792 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759270 | YRCF | 16793 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759271 | YRCF | 16794 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759272 | YRCF | 16795 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759273 | YRCF | 16796 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759274 | YRCF | 16797 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759275 | YRCF | 16798 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759276 | YRCF | 16799 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759277 | YRCF | 16800 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759278 | YRCF | 16801 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759279 | YRCF | 16802 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759280 | YRCF | 16803 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759281 | YRCF | 16804 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759282 | YRCF | 16805 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759283 | YRCF | 16806 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759284 | YRCF | 16807 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759285 | YRCF | 16808 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759286 | YRCF | 16809 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759287 | YRCF | 16810 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759288 | YRCF | 16811 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759289 | YRCF | 16812 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759290 | YRCF | 16813 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759291 | YRCF | 16814 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X9ND759292 | YRCF | 16815 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759293 | YRCF | 16816 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759294 | YRCF | 16817 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759295 | YRCF | 16818 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759296 | YRCF | 16819 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759297 | YRCF | 16820 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759298 | YRCF | 16821 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759299 | YRCF | 16822 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759300 | YRCF | 16823 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759301 | YRCF | 16824 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759302 | YRCF | 16825 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759303 | YRCF | 16826 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759304 | YRCF | 16827 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759305 | YRCF | 16828 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759306 | YRCF | 16829 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759307 | YRCF | 16830 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759308 | YRCF | 16831 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759309 | YRCF | 16832 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759310 | YRCF | 16833 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759311 | YRCF | 16834 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759312 | YRCF | 16835 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759313 | YRCF | 16836 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759314 | YRCF | 16837 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759315 | YRCF | 16838 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759316 | YRCF | 16839 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759317 | YRCF | 16840 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759318 | YRCF | 16841 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759319 | YRCF | 16842 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759320 | YRCF | 16843 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759321 | YRCF | 16844 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759322 | YRCF | 16845 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759323 | YRCF | 16846 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759324 | YRCF | 16847 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759325 | YRCF | 16848 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759326 | YRCF | 16849 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759327 | YRCF | 16850 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759328 | YRCF | 16851 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759329 | YRCF | 16852 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759330 | YRCF | 16853 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759331 | YRCF | 16854 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759332 | YRCF | 16855 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759333 | YRCF | 16856 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759334 | YRCF | 16857 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759335 | YRCF | 16858 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759336 | YRCF | 16859 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759337 | YRCF | 16860 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759338 | YRCF | 16861 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759339 | YRCF | 16862 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759340 | YRCF | 16863 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759341 | YRCF | 16864 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759342 | YRCF | 16865 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759343 | YRCF | 16866 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759344 | YRCF | 16867 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759345 | YRCF | 16868 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759346 | YRCF | 16869 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759347 | YRCF | 16870 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759348 | YRCF | 16871 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759349 | YRCF | 16872 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759350 | YRCF | 16873 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759351 | YRCF | 16874 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759352 | YRCF | 16875 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759353 | YRCF | 16876 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759354 | YRCF | 16877 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759355 | YRCF | 16878 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759356 | YRCF | 16879 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759357 | YRCF | 16880 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759358 | YRCF | 16881 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759359 | YRCF | 16882 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759360 | YRCF | 16883 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759361 | YRCF | 16884 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759362 | YRCF | 16885 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759363 | YRCF | 16886 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759364 | YRCF | 16887 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759365 | YRCF | 16888 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759366 | YRCF | 16889 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759367 | YRCF | 16890 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759368 | YRCF | 16891 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759369 | YRCF | 16892 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759370 | YRCF | 16893 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759371 | YRCF | 16894 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759372 | YRCF | 16895 | TRACTOR | IN | IN | 1 | PETERBILT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1XPBAP8X9ND759373 | YRCF | 16896 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759374 | YRCF | 16897 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759375 | YRCF | 16898 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759376 | YRCF | 16899 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759377 | YRCF | 16900 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759378 | YRCF | 16901 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759379 | YRCF | 16902 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759380 | YRCF | 16903 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759381 | YRCF | 16904 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759382 | YRCF | 16905 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759383 | YRCF | 16906 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759384 | YRCF | 16907 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759385 | YRCF | 16908 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759386 | YRCF | 16909 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759387 | YRCF | 16910 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759388 | YRCF | 16911 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759389 | YRCF | 16912 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759390 | YRCF | 16913 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759391 | YRCF | 16914 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759392 | YRCF | 16915 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759393 | YRCF | 16916 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759394 | YRCF | 16917 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759395 | YRCF | 16918 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XND759396 | YRCF | 16919 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759397 | YRCF | 16920 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759398 | YRCF | 16921 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759399 | YRCF | 16922 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759400 | YRCF | 16923 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND759401 | YRCF | 16924 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759402 | YRCF | 16925 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759403 | YRCF | 16926 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759404 | YRCF | 16927 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759405 | YRCF | 16928 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759406 | YRCF | 16929 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759407 | YRCF | 16930 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759408 | YRCF | 16931 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759409 | YRCF | 16932 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759410 | YRCF | 16933 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X2ND759411 | YRCF | 16934 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND759412 | YRCF | 16935 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND759413 | YRCF | 16936 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND759414 | YRCF | 16937 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1ND759416 | YRCF | 16939 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759417 | YRCF | 16940 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759418 | YRCF | 16941 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759419 | YRCF | 16942 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND759420 | YRCF | 16943 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X5ND759421 | YRCF | 16944 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7ND759422 | YRCF | 16945 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND759423 | YRCF | 16946 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X0ND759424 | YRCF | 16947 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EG9NN607675 | YRCF | 16948 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN607676 | YRCF | 16949 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN607677 | YRCF | 16950 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN607678 | YRCF | 16951 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN607679 | YRCF | 16952 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN607680 | YRCF | 16953 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN607681 | YRCF | 16954 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN607682 | YRCF | 16955 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN607683 | YRCF | 16956 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN607684 | YRCF | 16957 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN607685 | YRCF | 16958 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN607686 | YRCF | 16959 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN607687 | YRCF | 16960 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN607688 | YRCF | 16961 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN607689 | YRCF | 16962 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN607690 | YRCF | 16963 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN607691 | YRCF | 16964 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN607692 | YRCF | 16965 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN607693 | YRCF | 16966 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN607694 | YRCF | 16967 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN607695 | YRCF | 16968 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN607696 | YRCF | 16969 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN607697 | YRCF | 16970 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN607698 | YRCF | 16971 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285479 | YRCF | 48036 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285480 | YRCF | 48037 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285481 | YRCF | 48038 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285482 | YRCF | 48039 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285483 | YRCF | 48040 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285484 | YRCF | 48041 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4W19EG3NN285485 | YRCF | 48042 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285486 | YRCF | 48043 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285487 | YRCF | 48044 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285488 | YRCF | 48045 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285490 | YRCF | 49024 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285491 | YRCF | 49025 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285492 | YRCF | 49026 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG2NN285493 | YRCF | 49027 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG4NN285494 | YRCF | 49028 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285495 | YRCF | 49029 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285496 | YRCF | 49030 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285497 | YRCF | 49031 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285498 | YRCF | 49032 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285499 | YRCF | 49033 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG6NN285500 | YRCF | 49034 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG8NN285501 | YRCF | 49035 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EGXNN285502 | YRCF | 49036 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG1NN285503 | YRCF | 49037 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG3NN285504 | YRCF | 49038 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG5NN285505 | YRCF | 49039 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG7NN285506 | YRCF | 49040 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG9NN285507 | YRCF | 49041 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285508 | YRCF | 49042 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EG0NN285489 | YRCF | 49043 | TRACTOR | IN | IN | 1 | VOLVO |
| 1XPBAP8X1MD758314 | YRCF | 82242 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4MD758324 | YRCF | 82252 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXMD758344 | YRCF | 82272 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X1MD758345 | YRCF | 82273 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3MD758346 | YRCF | 82274 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X7MD758348 | YRCF | 82276 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X9ND758384 | YRCF | 82312 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758391 | YRCF | 82319 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758407 | YRCF | 82335 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X8ND758408 | YRCF | 82336 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758409 | YRCF | 82337 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758438 | YRCF | 82366 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8XXND758443 | YRCF | 82371 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X3ND758445 | YRCF | 82373 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758454 | YRCF | 82382 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758471 | YRCF | 82399 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X4ND758504 | YRCF | 82432 | TRACTOR | IN | IN | 1 | PETERBILT |
| 1XPBAP8X6ND758505 | YRCF | 82433 | TRACTOR | IN | IN | 1 | PETERBILT |
| 4V4W19EH3NN286192 | YRCF | 82459 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH5NN286193 | YRCF | 82460 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH7NN286194 | YRCF | 82461 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH9NN286195 | YRCF | 82462 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286197 | YRCF | 82464 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH0NN286229 | YRCF | 82496 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286238 | YRCF | 82505 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH1NN286255 | YRCF | 82522 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH2NN286300 | YRCF | 82789 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH8NN285832 | YRCF | 82820 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4W19EH3NN285849 | YRCF | 82837 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXMN286030 | YRCF | 70220 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1MN286031 | YRCF | 70221 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3MN286032 | YRCF | 70222 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5MN286033 | YRCF | 70223 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7MN286034 | YRCF | 70224 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9MN286035 | YRCF | 70225 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2MN286037 | YRCF | 70227 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4MN286038 | YRCF | 70228 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6MN286039 | YRCF | 70229 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2MN286040 | YRCF | 70230 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4MN286041 | YRCF | 70231 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6MN286042 | YRCF | 70232 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8MN286043 | YRCF | 70233 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXMN286044 | YRCF | 70234 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1MN286045 | YRCF | 70235 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3MN286046 | YRCF | 70236 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5MN286047 | YRCF | 70237 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7MN286048 | YRCF | 70238 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9MN286049 | YRCF | 70239 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN286050 | YRCF | 70240 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN286051 | YRCF | 70241 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN286052 | YRCF | 70242 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286053 | YRCF | 70243 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286054 | YRCF | 70244 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN286055 | YRCF | 70245 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN286056 | YRCF | 70246 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN286057 | YRCF | 70247 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN286058 | YRCF | 70248 | TRACTOR | IN | IN | 1 | VOLVO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4V4WC9EGXNN286059 | YRCF | 70249 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN286060 | YRCF | 70250 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN286061 | YRCF | 70251 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN286062 | YRCF | 70252 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN286063 | YRCF | 70253 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN286064 | YRCF | 70254 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN286065 | YRCF | 70255 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN286066 | YRCF | 70256 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286067 | YRCF | 70257 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286068 | YRCF | 70258 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN286069 | YRCF | 70259 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286070 | YRCF | 70260 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286071 | YRCF | 70261 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG2NN286072 | YRCF | 70262 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG4NN286073 | YRCF | 70263 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG6NN286074 | YRCF | 70264 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG8NN286075 | YRCF | 70265 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EGXNN286076 | YRCF | 70266 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN286077 | YRCF | 70267 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN286078 | YRCF | 70268 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN286079 | YRCF | 70269 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG1NN286080 | YRCF | 70270 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG3NN286081 | YRCF | 70271 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG5NN286082 | YRCF | 70272 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG7NN286083 | YRCF | 70273 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG9NN286084 | YRCF | 70274 | TRACTOR | IN | IN | 1 | VOLVO |
| 4V4WC9EG0NN286085 | YRCF | 70275 | TRACTOR | IN | IN | 1 | VOLVO |

| VIN | BRAND | UNIT | TYPE | TITLE STATE | REGISTRATION STATE | COLLATERAL CATEGORY | MAKE |
|---|---|---|---|---|---|---|---|
| 5V8VC4011MM109091 | HMES | 521000 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013MM109092 | HMES | 521001 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015MM109093 | HMES | 521002 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017MM109094 | HMES | 521003 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019MM109095 | HMES | 521004 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010MM109096 | HMES | 521005 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012MM109097 | HMES | 521006 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014MM109098 | HMES | 521007 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016MM109099 | HMES | 521008 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019MM109100 | HMES | 521009 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010MM109101 | HMES | 521010 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012MM109102 | HMES | 521011 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014MM109103 | HMES | 521012 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016MM109104 | HMES | 521013 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018MM109105 | HMES | 521014 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XMM109106 | HMES | 521015 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203251 | HMES | 521016 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017NM203252 | HMES | 521017 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203253 | HMES | 521018 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203254 | HMES | 521019 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012NM203255 | HMES | 521020 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014NM203256 | HMES | 521021 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203257 | HMES | 521022 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203258 | HMES | 521023 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XNM203259 | HMES | 521024 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203260 | HMES | 521025 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203261 | HMES | 521026 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XNM203262 | HMES | 521027 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4011NM203263 | HMES | 521028 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013NM203264 | HMES | 521029 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203265 | HMES | 521030 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017NM203266 | HMES | 521031 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203267 | HMES | 521032 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203268 | HMES | 521033 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012NM203269 | HMES | 521034 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203270 | HMES | 521035 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203271 | HMES | 521036 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012NM203272 | HMES | 521037 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014NM203273 | HMES | 521038 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203274 | HMES | 521039 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203275 | HMES | 521040 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XNM203276 | HMES | 521041 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4011NM203277 | HMES | 521042 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013NM203278 | HMES | 521043 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203279 | HMES | 521044 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4011NM203280 | HMES | 521045 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013NM203281 | HMES | 521046 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203282 | HMES | 521047 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017NM203283 | HMES | 521048 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203284 | HMES | 521049 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203285 | HMES | 521050 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012NM203286 | HMES | 521051 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014NM203287 | HMES | 521052 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203288 | HMES | 521053 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203289 | HMES | 521054 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014NM203290 | HMES | 521055 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203291 | HMES | 521056 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203292 | HMES | 521057 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XNM203293 | HMES | 521058 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4011NM203294 | HMES | 521059 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013NM203295 | HMES | 521060 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203296 | HMES | 521061 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017NM203297 | HMES | 521062 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203298 | HMES | 521063 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203299 | HMES | 521064 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4013NM203300 | HMES | 521065 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4015NM203301 | HMES | 521066 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4017NM203302 | HMES | 521067 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4019NM203303 | HMES | 521068 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4010NM203304 | HMES | 521069 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4012NM203305 | HMES | 521070 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4014NM203306 | HMES | 521071 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203307 | HMES | 521072 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203308 | HMES | 521073 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC401XNM203309 | HMES | 521074 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4016NM203310 | HMES | 521075 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC4018NM203311 | HMES | 521076 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC401XNM203312 | HMES | 521077 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM204692 | HMES | 530994 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM204704 | HMES | 531006 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV532D2EL795154 | HMES | 453662 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794083 | HMES | 453671 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL796207 | HMES | 453675 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL795229 | HMES | 453677 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL795477 | HMES | 453678 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795787 | HMES | 453679 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL796239 | HMES | 453680 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL796288 | HMES | 453681 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796378 | HMES | 453682 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VA4828MM109107 | HMES | 421000 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XMM109108 | HMES | 421001 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821MM109109 | HMES | 421002 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828MM109110 | HMES | 421003 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XMM109111 | HMES | 421004 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821MM109112 | HMES | 421005 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823MM109113 | HMES | 421006 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825MM109114 | HMES | 421007 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827MM109115 | HMES | 421008 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829MM109116 | HMES | 421009 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820MM109117 | HMES | 421010 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822MM109118 | HMES | 421011 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824MM109119 | HMES | 421012 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820MM109120 | HMES | 421013 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822MM109121 | HMES | 421014 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824MM109122 | HMES | 421015 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826MM109123 | HMES | 421016 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828MM109124 | HMES | 421017 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XMM109125 | HMES | 421018 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821MM109126 | HMES | 421019 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823MM109127 | HMES | 421020 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825MM109128 | HMES | 421021 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827MM109129 | HMES | 421022 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823MM109130 | HMES | 421023 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825MM109131 | HMES | 421024 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827MM109132 | HMES | 421025 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829MM109133 | HMES | 421026 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820MM109134 | HMES | 421027 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822MM109135 | HMES | 421028 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824MM109136 | HMES | 421029 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826MM109137 | HMES | 421030 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828MM109138 | HMES | 421031 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XMM109139 | HMES | 421032 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826MM109140 | HMES | 421033 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828MM109141 | HMES | 421034 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XMM109142 | HMES | 421035 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821MM109143 | HMES | 421036 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823MM109144 | HMES | 421037 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825MM109145 | HMES | 421038 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827MM109146 | HMES | 421039 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201092 | HMES | 421040 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201093 | HMES | 421041 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201094 | HMES | 421042 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201095 | HMES | 421043 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201096 | HMES | 421044 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201097 | HMES | 421045 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201098 | HMES | 421046 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201099 | HMES | 421047 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201100 | HMES | 421048 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201101 | HMES | 421049 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201102 | HMES | 421050 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201103 | HMES | 421051 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201104 | HMES | 421052 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201105 | HMES | 421053 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201106 | HMES | 421054 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201107 | HMES | 421055 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201108 | HMES | 421056 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201109 | HMES | 421057 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201110 | HMES | 421058 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201111 | HMES | 421059 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA4822NT201112 | HMES | 421060 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201113 | HMES | 421061 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201114 | HMES | 421062 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201115 | HMES | 421063 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201116 | HMES | 421064 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201117 | HMES | 421065 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201118 | HMES | 421066 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201119 | HMES | 421067 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201120 | HMES | 421068 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201121 | HMES | 421069 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201122 | HMES | 421070 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201123 | HMES | 421071 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201124 | HMES | 421072 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201126 | HMES | 421074 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201127 | HMES | 421075 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201128 | HMES | 421076 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201129 | HMES | 421077 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201130 | HMES | 421078 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201131 | HMES | 421079 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201132 | HMES | 421080 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201133 | HMES | 421081 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201134 | HMES | 421082 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201135 | HMES | 421083 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201136 | HMES | 421084 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201137 | HMES | 421085 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201138 | HMES | 421086 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201139 | HMES | 421087 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201140 | HMES | 421088 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201141 | HMES | 421089 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201142 | HMES | 421090 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201143 | HMES | 421091 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201144 | HMES | 421092 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201145 | HMES | 421093 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201146 | HMES | 421094 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201147 | HMES | 421095 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201148 | HMES | 421096 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201149 | HMES | 421097 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201150 | HMES | 421098 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201151 | HMES | 421099 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201152 | HMES | 421100 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201153 | HMES | 421101 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201154 | HMES | 421102 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201155 | HMES | 421103 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201156 | HMES | 421104 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201157 | HMES | 421105 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201158 | HMES | 421106 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201159 | HMES | 421107 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201160 | HMES | 421108 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201161 | HMES | 421109 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201162 | HMES | 421110 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201163 | HMES | 421111 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201164 | HMES | 421112 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201165 | HMES | 421113 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201166 | HMES | 421114 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201167 | HMES | 421115 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201168 | HMES | 421116 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201169 | HMES | 421117 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201170 | HMES | 421118 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201171 | HMES | 421119 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201172 | HMES | 421120 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201173 | HMES | 421121 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201174 | HMES | 421122 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201175 | HMES | 421123 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4826NT201176 | HMES | 421124 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201177 | HMES | 421125 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201178 | HMES | 421126 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201179 | HMES | 421127 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4828NT201180 | HMES | 421128 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA482XNT201181 | HMES | 421129 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4821NT201182 | HMES | 421130 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4823NT201183 | HMES | 421131 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4825NT201184 | HMES | 421132 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4827NT201185 | HMES | 421133 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4829NT201186 | HMES | 421134 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201187 | HMES | 421135 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA4822NT201188 | HMES | 421136 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4824NT201189 | HMES | 421137 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4820NT201190 | HMES | 421138 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA4822NT201191 | HMES | 421139 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV532D4EL793941 | HMES | 453597 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL793987 | HMES | 453598 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794488 | HMES | 453599 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794825 | HMES | 453600 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL795303 | HMES | 453601 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL796065 | HMES | 453602 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794088 | HMES | 453603 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794313 | HMES | 453604 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794703 | HMES | 453605 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794750 | HMES | 453606 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL795628 | HMES | 453607 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL755254 | HMES | 453608 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL755279 | HMES | 453609 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL755403 | HMES | 453610 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL755405 | HMES | 453611 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL755406 | HMES | 453612 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL793965 | HMES | 453613 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794010 | HMES | 453614 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794050 | HMES | 453615 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL794080 | HMES | 453616 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794121 | HMES | 453617 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794170 | HMES | 453618 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794217 | HMES | 453619 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794257 | HMES | 453620 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794283 | HMES | 453621 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL794335 | HMES | 453622 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794341 | HMES | 453623 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794382 | HMES | 453624 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794419 | HMES | 453625 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794494 | HMES | 453626 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794498 | HMES | 453627 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL794600 | HMES | 453628 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794851 | HMES | 453629 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794862 | HMES | 453630 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794950 | HMES | 453631 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794960 | HMES | 453632 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL795079 | HMES | 453633 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795218 | HMES | 453634 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795245 | HMES | 453635 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795315 | HMES | 453636 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795332 | HMES | 453637 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795338 | HMES | 453638 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL795349 | HMES | 453639 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL795382 | HMES | 453640 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795419 | HMES | 453641 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL795454 | HMES | 453642 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795458 | HMES | 453643 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795476 | HMES | 453644 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795489 | HMES | 453645 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795617 | HMES | 453646 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795729 | HMES | 453647 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795742 | HMES | 453648 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL795764 | HMES | 453649 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795930 | HMES | 453650 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796056 | HMES | 453651 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL796075 | HMES | 453652 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL796104 | HMES | 453653 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL796237 | HMES | 453654 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL796247 | HMES | 453655 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL796392 | HMES | 453656 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794019 | HMES | 453670 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795890 | HMES | 453672 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL795996 | HMES | 453673 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL796079 | HMES | 453674 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL793994 | HMES | 453676 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VA5326NM204683 | HMES | 530985 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM204689 | HMES | 530991 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM204693 | HMES | 530995 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM204694 | HMES | 530996 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM204695 | HMES | 530997 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM204700 | HMES | 531002 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC5324NM204613 | HMES | 531570 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204620 | HMES | 531577 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204671 | HMES | 531628 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211041 | HMES | 531653 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109147 | HMES | 532100 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109148 | HMES | 532101 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109149 | HMES | 532102 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109150 | HMES | 532103 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109151 | HMES | 532104 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109152 | HMES | 532105 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109153 | HMES | 532106 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109154 | HMES | 532107 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109155 | HMES | 532108 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109156 | HMES | 532109 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109157 | HMES | 532110 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109158 | HMES | 532111 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109159 | HMES | 532112 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109160 | HMES | 532113 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109161 | HMES | 532114 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109162 | HMES | 532115 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109163 | HMES | 532116 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109164 | HMES | 532117 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109165 | HMES | 532118 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109166 | HMES | 532119 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109167 | HMES | 532120 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109168 | HMES | 532121 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109169 | HMES | 532122 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109170 | HMES | 532123 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109171 | HMES | 532124 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109172 | HMES | 532125 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109173 | HMES | 532126 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109174 | HMES | 532127 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109175 | HMES | 532128 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109176 | HMES | 532129 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109177 | HMES | 532130 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109178 | HMES | 532131 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109179 | HMES | 532132 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109180 | HMES | 532133 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109181 | HMES | 532134 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109182 | HMES | 532135 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109183 | HMES | 532136 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109184 | HMES | 532137 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109185 | HMES | 532138 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109186 | HMES | 532139 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109187 | HMES | 532140 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109188 | HMES | 532141 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109189 | HMES | 532142 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109190 | HMES | 532143 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109191 | HMES | 532144 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109192 | HMES | 532145 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109193 | HMES | 532146 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109194 | HMES | 532147 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109195 | HMES | 532148 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109196 | HMES | 532149 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109197 | HMES | 532150 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109198 | HMES | 532151 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109199 | HMES | 532152 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109200 | HMES | 532153 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109201 | HMES | 532154 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109202 | HMES | 532155 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109203 | HMES | 532156 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109204 | HMES | 532157 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109205 | HMES | 532158 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109206 | HMES | 532159 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109207 | HMES | 532160 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109208 | HMES | 532161 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109209 | HMES | 532162 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109210 | HMES | 532163 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201192 | HMES | 532164 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201193 | HMES | 532165 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201194 | HMES | 532166 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201195 | HMES | 532167 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201196 | HMES | 532168 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201197 | HMES | 532169 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201198 | HMES | 532170 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA5320NT201199 | HMES | 532171 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201200 | HMES | 532172 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201201 | HMES | 532173 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201202 | HMES | 532174 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201203 | HMES | 532175 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201204 | HMES | 532176 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201205 | HMES | 532177 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NT201206 | HMES | 532178 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201207 | HMES | 532179 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201208 | HMES | 532180 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201209 | HMES | 532181 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201210 | HMES | 532182 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201211 | HMES | 532183 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201212 | HMES | 532184 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201213 | HMES | 532185 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201214 | HMES | 532186 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201215 | HMES | 532187 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201216 | HMES | 532188 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201217 | HMES | 532189 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201218 | HMES | 532190 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201220 | HMES | 532192 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201221 | HMES | 532193 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201222 | HMES | 532194 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NT201223 | HMES | 532195 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201224 | HMES | 532196 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201225 | HMES | 532197 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201226 | HMES | 532198 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201227 | HMES | 532199 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201228 | HMES | 532200 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201229 | HMES | 532201 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201230 | HMES | 532202 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201231 | HMES | 532203 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201232 | HMES | 532204 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201233 | HMES | 532205 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201234 | HMES | 532206 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201235 | HMES | 532207 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201236 | HMES | 532208 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NT201237 | HMES | 532209 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201238 | HMES | 532210 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201239 | HMES | 532211 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NT201240 | HMES | 532212 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201241 | HMES | 532213 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201242 | HMES | 532214 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201243 | HMES | 532215 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201244 | HMES | 532216 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201245 | HMES | 532217 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201246 | HMES | 532218 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201247 | HMES | 532219 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201248 | HMES | 532220 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201249 | HMES | 532221 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201250 | HMES | 532222 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201251 | HMES | 532223 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201252 | HMES | 532224 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201253 | HMES | 532225 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NT201254 | HMES | 532226 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201255 | HMES | 532227 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201256 | HMES | 532228 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201257 | HMES | 532229 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201258 | HMES | 532230 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201259 | HMES | 532231 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201260 | HMES | 532232 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201261 | HMES | 532233 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201262 | HMES | 532234 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201263 | HMES | 532235 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201264 | HMES | 532236 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201265 | HMES | 532237 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201266 | HMES | 532238 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201267 | HMES | 532239 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NT201268 | HMES | 532240 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201269 | HMES | 532241 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201270 | HMES | 532242 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NT201271 | HMES | 532243 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201272 | HMES | 532244 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201273 | HMES | 532245 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201274 | HMES | 532246 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA5321NT201275 | HMES | 532247 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NT201276 | HMES | 532248 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201277 | HMES | 532249 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201278 | HMES | 532250 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201279 | HMES | 532251 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NT201280 | HMES | 532252 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NT201281 | HMES | 532253 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NT201282 | HMES | 532254 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NT201283 | HMES | 532255 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NT201284 | HMES | 532256 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NT201285 | HMES | 532257 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NT201286 | HMES | 532258 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201287 | HMES | 532259 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201288 | HMES | 532260 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201289 | HMES | 532261 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NT201290 | HMES | 532262 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNT201291 | HMES | 532263 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NT201292 | HMES | 532264 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211126 | HMES | 532265 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211127 | HMES | 532266 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211128 | HMES | 532267 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211129 | HMES | 532268 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211130 | HMES | 532269 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211131 | HMES | 532270 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211132 | HMES | 532271 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211133 | HMES | 532272 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211134 | HMES | 532273 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211135 | HMES | 532274 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211136 | HMES | 532275 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211137 | HMES | 532276 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211138 | HMES | 532277 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211139 | HMES | 532278 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211140 | HMES | 532279 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211141 | HMES | 532280 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211142 | HMES | 532281 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211143 | HMES | 532282 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211144 | HMES | 532283 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211145 | HMES | 532284 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211146 | HMES | 532285 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211147 | HMES | 532286 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211148 | HMES | 532287 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211149 | HMES | 532288 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211150 | HMES | 532289 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211151 | HMES | 532290 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211152 | HMES | 532291 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211153 | HMES | 532292 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211154 | HMES | 532293 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211155 | HMES | 532294 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211156 | HMES | 532295 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211157 | HMES | 532296 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211158 | HMES | 532297 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211159 | HMES | 532298 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211160 | HMES | 532299 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211161 | HMES | 532300 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211162 | HMES | 532301 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211163 | HMES | 532302 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211164 | HMES | 532303 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211165 | HMES | 532304 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211166 | HMES | 532305 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211167 | HMES | 532306 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211168 | HMES | 532307 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211169 | HMES | 532308 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211170 | HMES | 532309 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211171 | HMES | 532310 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211172 | HMES | 532311 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211173 | HMES | 532312 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211174 | HMES | 532313 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211175 | HMES | 532314 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211176 | HMES | 532315 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211177 | HMES | 532316 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211178 | HMES | 532317 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211179 | HMES | 532318 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211180 | HMES | 532319 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211181 | HMES | 532320 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211182 | HMES | 532321 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VA532XNM211183 | HMES | 532322 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VA5321NM211184 | HMES | 532323 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211185 | HMES | 532324 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211186 | HMES | 532325 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211187 | HMES | 532326 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211188 | HMES | 532327 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211189 | HMES | 532328 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211190 | HMES | 532329 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211191 | HMES | 532330 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211192 | HMES | 532331 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211193 | HMES | 532332 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211194 | HMES | 532333 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211195 | HMES | 532334 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211196 | HMES | 532335 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211197 | HMES | 532336 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211198 | HMES | 532337 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211199 | HMES | 532338 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211200 | HMES | 532339 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211201 | HMES | 532340 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211202 | HMES | 532341 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211203 | HMES | 532342 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211204 | HMES | 532343 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211205 | HMES | 532344 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211206 | HMES | 532345 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211207 | HMES | 532346 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211208 | HMES | 532347 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211209 | HMES | 532348 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211210 | HMES | 532349 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211211 | HMES | 532350 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211212 | HMES | 532351 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211213 | HMES | 532352 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211214 | HMES | 532353 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211215 | HMES | 532354 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211216 | HMES | 532355 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211217 | HMES | 532356 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211218 | HMES | 532357 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211219 | HMES | 532358 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211220 | HMES | 532359 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211221 | HMES | 532360 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211222 | HMES | 532361 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211223 | HMES | 532362 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211224 | HMES | 532363 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211225 | HMES | 532364 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM204708 | HMES | 532365 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV532D8EL794087 | NPME | 514001 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL794448 | NPME | 514003 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL794805 | NPME | 514004 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL795213 | NPME | 514005 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795376 | NPME | 514006 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795873 | NPME | 514008 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795879 | NPME | 514009 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795925 | NPME | 514010 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796008 | NPME | 514012 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794197 | NPME | 514002 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL795597 | NPME | 514007 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL795986 | NPME | 514011 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794005 | NPME | 514013 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VA5327MM109211 | NPME | 521078 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109212 | NPME | 521079 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109213 | NPME | 521080 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109214 | NPME | 521081 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109215 | NPME | 521082 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109216 | NPME | 521083 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109217 | NPME | 521084 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109218 | NPME | 521085 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109219 | NPME | 521086 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109220 | NPME | 521087 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109221 | NPME | 521088 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109222 | NPME | 521089 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109223 | NPME | 521090 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109224 | NPME | 521091 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109225 | NPME | 521092 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109226 | NPME | 521093 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109227 | NPME | 521094 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109228 | NPME | 521095 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA5324MM109229 | NPME | 521096 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109230 | NPME | 521097 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109231 | NPME | 521098 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109232 | NPME | 521099 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109233 | NPME | 521100 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109234 | NPME | 521101 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109235 | NPME | 521102 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109236 | NPME | 521103 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109237 | NPME | 521104 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109238 | NPME | 521105 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109239 | NPME | 521106 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109240 | NPME | 521107 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109241 | NPME | 521108 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109242 | NPME | 521109 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109243 | NPME | 521110 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109244 | NPME | 521111 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109245 | NPME | 521112 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109246 | NPME | 521113 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109247 | NPME | 521114 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109248 | NPME | 521115 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109249 | NPME | 521116 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109250 | NPME | 521117 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109251 | NPME | 521118 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109252 | NPME | 521119 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109253 | NPME | 521120 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109254 | NPME | 521121 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109255 | NPME | 521122 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109256 | NPME | 521123 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109257 | NPME | 521124 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109258 | NPME | 521125 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109259 | NPME | 521126 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109260 | NPME | 521127 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109261 | NPME | 521128 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109262 | NPME | 521129 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201293 | NPME | 522000 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201294 | NPME | 522001 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201295 | NPME | 522002 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201296 | NPME | 522003 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201297 | NPME | 522004 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201298 | NPME | 522005 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201299 | NPME | 522006 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201300 | NPME | 522007 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201301 | NPME | 522008 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201302 | NPME | 522009 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201303 | NPME | 522010 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201304 | NPME | 522011 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201305 | NPME | 522012 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201306 | NPME | 522013 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201307 | NPME | 522014 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201308 | NPME | 522015 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201309 | NPME | 522016 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201310 | NPME | 522017 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201311 | NPME | 522018 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201312 | NPME | 522019 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201313 | NPME | 522020 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201314 | NPME | 522021 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201315 | NPME | 522022 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201316 | NPME | 522023 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201317 | NPME | 522024 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201318 | NPME | 522025 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201319 | NPME | 522026 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201320 | NPME | 522027 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201321 | NPME | 522028 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201322 | NPME | 522029 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201323 | NPME | 522030 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201324 | NPME | 522031 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201325 | NPME | 522032 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201326 | NPME | 522033 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201327 | NPME | 522034 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201328 | NPME | 522035 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201329 | NPME | 522036 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201330 | NPME | 522037 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201331 | NPME | 522038 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201332 | NPME | 522039 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201333 | NPME | 522040 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA532XNM201334 | NPME | 522041 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201335 | NPME | 522042 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201336 | NPME | 522043 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201337 | NPME | 522044 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201338 | NPME | 522045 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201339 | NPME | 522046 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201340 | NPME | 522047 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201341 | NPME | 522048 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201342 | NPME | 522049 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201343 | NPME | 522050 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201344 | NPME | 522051 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324XNM201345 | NPME | 522052 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201346 | NPME | 522053 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201347 | NPME | 522054 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201348 | NPME | 522055 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201349 | NPME | 522056 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201350 | NPME | 522057 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201351 | NPME | 522058 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201352 | NPME | 522059 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201353 | NPME | 522060 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201354 | NPME | 522061 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201355 | NPME | 522062 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201356 | NPME | 522063 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201357 | NPME | 522064 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201358 | NPME | 522065 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201359 | NPME | 522066 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201360 | NPME | 522067 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201361 | NPME | 522068 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM201362 | NPME | 522069 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM201363 | NPME | 522070 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM201364 | NPME | 522071 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM201365 | NPME | 522072 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM201366 | NPME | 522073 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201367 | NPME | 522074 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201368 | NPME | 522075 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201369 | NPME | 522076 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM201370 | NPME | 522077 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM201371 | NPME | 522078 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM201372 | NPME | 522079 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM201373 | NPME | 522080 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM201374 | NPME | 522081 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM201375 | NPME | 522082 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM210996 | NPME | 522083 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM210997 | NPME | 522084 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM210998 | NPME | 522085 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM210999 | NPME | 522086 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211000 | NPME | 522087 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211001 | NPME | 522088 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211002 | NPME | 522089 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211003 | NPME | 522090 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211004 | NPME | 522091 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211005 | NPME | 522092 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211006 | NPME | 522093 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211007 | NPME | 522094 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211008 | NPME | 522095 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211009 | NPME | 522096 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211010 | NPME | 522097 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211011 | NPME | 522098 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211012 | NPME | 522099 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211013 | NPME | 522100 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211014 | NPME | 522101 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211015 | NPME | 522102 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211016 | NPME | 522103 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211017 | NPME | 522104 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211018 | NPME | 522105 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211019 | NPME | 522106 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211020 | NPME | 522107 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211021 | NPME | 522108 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211022 | NPME | 522109 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211023 | NPME | 522110 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211024 | NPME | 522111 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211025 | NPME | 522112 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328MM109339 | REIM | 850349 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5324MM109340 | REIM | 850350 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5326MM109341 | REIM | 850351 | TRAILER | ON | ON | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC5328MM109342 | REIM | 850352 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC532XMM109343 | REIM | 850353 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5321MM109344 | REIM | 850354 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5323MM109345 | REIM | 850355 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5325MM109346 | REIM | 850356 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5327MM109347 | REIM | 850357 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5329MM109348 | REIM | 850358 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5320MM109349 | REIM | 850359 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5327MM109350 | REIM | 850360 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5322NM204593 | REIM | 850361 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5324NM204594 | REIM | 850362 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5326NM204595 | REIM | 850363 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5328NM204596 | REIM | 850364 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC532XNM204597 | REIM | 850365 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5321NM204598 | REIM | 850366 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5323NM204599 | REIM | 850367 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5326NM204600 | REIM | 850368 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5328NM204601 | REIM | 850369 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC532XNM204602 | REIM | 850370 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5321NM204603 | REIM | 850371 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5323NM204604 | REIM | 850372 | TRAILER | IN | ON | 1 | VANGUARD |
| 5V8VC5325NM204605 | REIM | 850373 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5327NM204606 | REIM | 850374 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5329NM204607 | REIM | 850375 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VC5320NM204608 | REIM | 850376 | TRAILER | ON | ON | 1 | VANGUARD |
| 5V8VA5324MM109263 | RETL | 530955 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109264 | RETL | 530956 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109277 | RETL | 530969 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM204681 | RETL | 530983 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM204685 | RETL | 530987 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM204690 | RETL | 530992 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM204696 | RETL | 530998 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM204697 | RETL | 530999 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM204702 | RETL | 531004 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM204709 | RETL | 531011 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM204715 | RETL | 531017 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM204716 | RETL | 531018 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM204726 | RETL | 531028 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109265 | RETL | 850860 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109266 | RETL | 850861 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109267 | RETL | 850862 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109268 | RETL | 850863 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109269 | RETL | 850864 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109270 | RETL | 850865 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109271 | RETL | 850866 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109272 | RETL | 850867 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109273 | RETL | 850868 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109274 | RETL | 850869 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109275 | RETL | 850870 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322MM109276 | RETL | 850871 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109278 | RETL | 850872 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109279 | RETL | 850873 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324MM109280 | RETL | 850874 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326MM109281 | RETL | 850875 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328MM109282 | RETL | 850876 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XMM109283 | RETL | 850877 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321MM109284 | RETL | 850878 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323MM109285 | RETL | 850879 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325MM109286 | RETL | 850880 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109287 | RETL | 850881 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329MM109288 | RETL | 850882 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320MM109289 | RETL | 850883 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327MM109290 | RETL | 850884 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM204686 | RETL | 850888 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM204687 | RETL | 850889 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM204688 | RETL | 850890 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM204705 | RETL | 850896 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM204706 | RETL | 850897 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM204707 | RETL | 850898 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM204710 | RETL | 850900 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM204711 | RETL | 850901 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM204712 | RETL | 850902 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM204713 | RETL | 850903 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM204714 | RETL | 850904 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM204717 | RETL | 850907 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA532XNM204718 | RETL | 850908 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM204719 | RETL | 850909 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM204720 | RETL | 850910 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM204721 | RETL | 850911 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM204722 | RETL | 850912 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM204723 | RETL | 850913 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM204724 | RETL | 850914 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM204725 | RETL | 850915 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM204727 | RETL | 850916 | TRAILER | IN | IN | 1 | VANGUARD |
| 3H3V281C0HT286084 | RETL | 144446 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT286123 | RETL | 144448 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286363 | RETL | 144459 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT286372 | RETL | 144461 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286380 | RETL | 144462 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286391 | RETL | 144463 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286506 | RETL | 144475 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286584 | RETL | 144481 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT286645 | RETL | 144484 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286729 | RETL | 144488 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT286739 | RETL | 144489 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT286770 | RETL | 144492 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT286820 | RETL | 144495 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286976 | RETL | 144502 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C2HT287026 | RETL | 144507 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT287045 | RETL | 144508 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT287166 | RETL | 144514 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT287214 | RETL | 144515 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT287238 | RETL | 144517 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C2HT287270 | RETL | 144518 | TRAILER | IN | IN | 1 | HYUNDAI |
| 1DW1A2816HS716860 | RETL | 144524 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HS716864 | RETL | 144526 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HS716922 | RETL | 144532 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719024 | RETL | 144537 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB719045 | RETL | 144540 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719058 | RETL | 144543 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719125 | RETL | 144545 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB719143 | RETL | 144548 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719165 | RETL | 144550 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719260 | RETL | 144556 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719262 | RETL | 144557 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB719409 | RETL | 144568 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719438 | RETL | 144570 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719513 | RETL | 144577 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719626 | RETL | 144581 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719662 | RETL | 144583 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719707 | RETL | 144589 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719852 | RETL | 144595 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719977 | RETL | 144603 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719994 | RETL | 144605 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB720013 | RETL | 144607 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB720091 | RETL | 144614 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB720117 | RETL | 144616 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB720123 | RETL | 144618 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB720259 | RETL | 144627 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB720288 | RETL | 144630 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB720310 | RETL | 144633 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB720349 | RETL | 144637 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB720360 | RETL | 144639 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB720362 | RETL | 144640 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB720393 | RETL | 144642 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719103 | RETL | 144644 | TRAILER | IN | IN | 1 | HYUNDAI |
| 1DW1A281XHB720247 | RETL | 144647 | TRAILER | IN | IN | 1 | HYUNDAI |
| 1JJV281D7NL317853 | RETL | 289349 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317854 | RETL | 289350 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317855 | RETL | 289351 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317856 | RETL | 289352 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317857 | RETL | 289353 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317858 | RETL | 289354 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317859 | RETL | 289355 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317860 | RETL | 289356 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317861 | RETL | 289357 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317862 | RETL | 289358 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317863 | RETL | 289359 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317864 | RETL | 289360 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317865 | RETL | 289361 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D5NL317866 | RETL | 289362 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317867 | RETL | 289363 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317868 | RETL | 289364 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317869 | RETL | 289365 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317870 | RETL | 289366 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317871 | RETL | 289367 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317872 | RETL | 289368 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317873 | RETL | 289369 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317874 | RETL | 289370 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317875 | RETL | 289371 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317876 | RETL | 289372 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317877 | RETL | 289373 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317878 | RETL | 289374 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317879 | RETL | 289375 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317880 | RETL | 289376 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317882 | RETL | 289378 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL317883 | RETL | 289379 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317884 | RETL | 289380 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317885 | RETL | 289381 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317886 | RETL | 289382 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317887 | RETL | 289383 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317888 | RETL | 289384 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317889 | RETL | 289385 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317890 | RETL | 289386 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317891 | RETL | 289387 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317892 | RETL | 289388 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317893 | RETL | 289389 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317894 | RETL | 289390 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317895 | RETL | 289391 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317896 | RETL | 289392 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL317897 | RETL | 289393 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317898 | RETL | 289394 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317899 | RETL | 289395 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317900 | RETL | 289396 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317901 | RETL | 289397 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL317902 | RETL | 289398 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317903 | RETL | 289399 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317904 | RETL | 289400 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317905 | RETL | 289401 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317906 | RETL | 289402 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317907 | RETL | 289403 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317908 | RETL | 289404 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317909 | RETL | 289405 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317910 | RETL | 289406 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317911 | RETL | 289407 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317912 | RETL | 289408 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317913 | RETL | 289409 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317914 | RETL | 289410 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317915 | RETL | 289411 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL317916 | RETL | 289412 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317917 | RETL | 289413 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317918 | RETL | 289414 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317919 | RETL | 289415 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL317920 | RETL | 289416 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL317921 | RETL | 289417 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL317922 | RETL | 289418 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL317923 | RETL | 289419 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL317924 | RETL | 289420 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL317925 | RETL | 289421 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL317926 | RETL | 289422 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317927 | RETL | 289423 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317928 | RETL | 289424 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL317929 | RETL | 289425 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL317930 | RETL | 289426 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317931 | RETL | 289427 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL317852 | RETL | 289348 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL317881 | RETL | 289377 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VA5325NM204691 | RETL | 530993 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM204699 | RETL | 531001 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM204701 | RETL | 531003 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM204682 | RETL | 850885 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM204684 | RETL | 850886 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM204698 | RETL | 850893 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM204703 | RETL | 850895 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV401D1ML309533 | YRCF | 821699 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV401D3ML309534 | YRCF | 821700 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D5ML309535 | YRCF | 821701 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7ML309536 | YRCF | 821702 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7NL309537 | YRCF | 821703 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D9NL309538 | YRCF | 821704 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D0NL309539 | YRCF | 821705 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7NL309540 | YRCF | 821706 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D9NL309541 | YRCF | 821707 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D0NL309542 | YRCF | 821708 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D2NL309543 | YRCF | 821709 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D4NL309544 | YRCF | 821710 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D6NL309545 | YRCF | 821711 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D8NL309546 | YRCF | 821712 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401DXNL309547 | YRCF | 821713 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D1NL309548 | YRCF | 821714 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D3NL309549 | YRCF | 821715 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401DXNL309550 | YRCF | 821716 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D1NL309551 | YRCF | 821717 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D3NL309552 | YRCF | 821718 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D5NL309553 | YRCF | 821719 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7NL309554 | YRCF | 821720 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D9NL309555 | YRCF | 821721 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D0NL309556 | YRCF | 821722 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D2NL309557 | YRCF | 821723 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D4NL309558 | YRCF | 821724 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D6NL309559 | YRCF | 821725 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D2NL309560 | YRCF | 821726 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D4NL309561 | YRCF | 821727 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D6NL309562 | YRCF | 821728 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D8NL309563 | YRCF | 821729 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401DXNL309564 | YRCF | 821730 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D1NL309565 | YRCF | 821731 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D3NL309566 | YRCF | 821732 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D5NL309567 | YRCF | 821733 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7NL309568 | YRCF | 821734 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D9NL309569 | YRCF | 821735 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D5NL309570 | YRCF | 821736 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D7NL309571 | YRCF | 821737 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D9NL309572 | YRCF | 821738 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D0NL309573 | YRCF | 821739 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D2NL309574 | YRCF | 821740 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D4NL309575 | YRCF | 821741 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D6NL309576 | YRCF | 821742 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D8NL309577 | YRCF | 821743 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401DXNL309578 | YRCF | 821744 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D1NL309579 | YRCF | 821745 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV401D8NL309580 | YRCF | 821746 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VA4820NT201125 | YRCF | 843870 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV532D4CL674557 | YRCF | 850285 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7DL711716 | YRCF | 850286 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7DL711943 | YRCF | 850287 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4DL711981 | YRCF | 850288 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4DL713505 | YRCF | 850289 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5DL755018 | YRCF | 850290 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6DL755075 | YRCF | 850291 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3DL712863 | YRCF | 850302 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8AL378552 | YRCF | 850303 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8CL679437 | YRCF | 850304 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1DL711288 | YRCF | 850305 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6DL711299 | YRCF | 850306 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1DL713249 | YRCF | 850307 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL755356 | YRCF | 850313 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL755411 | YRCF | 850314 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL793922 | YRCF | 850315 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL793964 | YRCF | 850316 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL794045 | YRCF | 850317 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794128 | YRCF | 850318 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL794163 | YRCF | 850319 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794164 | YRCF | 850320 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794214 | YRCF | 850321 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794279 | YRCF | 850322 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794330 | YRCF | 850323 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL794368 | YRCF | 850324 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794378 | YRCF | 850325 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794413 | YRCF | 850326 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV532DXEL794513 | YRCF | 850327 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL794516 | YRCF | 850328 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794568 | YRCF | 850329 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794573 | YRCF | 850330 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794586 | YRCF | 850331 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794601 | YRCF | 850332 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794620 | YRCF | 850333 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL794626 | YRCF | 850334 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794740 | YRCF | 850335 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL794756 | YRCF | 850336 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794784 | YRCF | 850337 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794817 | YRCF | 850338 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794845 | YRCF | 850339 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL794854 | YRCF | 850340 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL794857 | YRCF | 850341 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794964 | YRCF | 850342 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794987 | YRCF | 850343 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795370 | YRCF | 850344 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795380 | YRCF | 850345 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795395 | YRCF | 850346 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795409 | YRCF | 850347 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795534 | YRCF | 850348 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL795614 | YRCF | 850377 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795630 | YRCF | 850378 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795749 | YRCF | 850379 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795770 | YRCF | 850380 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795780 | YRCF | 850381 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL795849 | YRCF | 850382 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL795909 | YRCF | 850383 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795913 | YRCF | 850384 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795939 | YRCF | 850385 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795987 | YRCF | 850386 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795993 | YRCF | 850387 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL796022 | YRCF | 850388 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL796157 | YRCF | 850389 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL796172 | YRCF | 850390 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796252 | YRCF | 850391 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL796356 | YRCF | 850392 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL755330 | YRCF | 850404 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL794028 | YRCF | 850405 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794140 | YRCF | 850406 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL794297 | YRCF | 850407 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL794538 | YRCF | 850408 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL794774 | YRCF | 850409 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL794839 | YRCF | 850410 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL794850 | YRCF | 850411 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794942 | YRCF | 850412 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794943 | YRCF | 850413 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795076 | YRCF | 850414 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795297 | YRCF | 850415 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D5EL795374 | YRCF | 850416 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795572 | YRCF | 850417 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL795709 | YRCF | 850418 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796039 | YRCF | 850419 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796123 | YRCF | 850420 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D7EL796154 | YRCF | 850421 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL796259 | YRCF | 850422 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL793998 | YRCF | 850423 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532DXEL794026 | YRCF | 850424 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VC2812MM108816 | YRCF | 141691 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108817 | YRCF | 141692 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108818 | YRCF | 141693 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108819 | YRCF | 141694 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108820 | YRCF | 141695 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108821 | YRCF | 141696 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108822 | YRCF | 141697 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108823 | YRCF | 141698 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108824 | YRCF | 141699 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108825 | YRCF | 141700 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108826 | YRCF | 141701 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108827 | YRCF | 141702 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108828 | YRCF | 141703 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108829 | YRCF | 141704 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108830 | YRCF | 141705 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108831 | YRCF | 141706 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2810MM108832 | YRCF | 141707 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108833 | YRCF | 141708 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108834 | YRCF | 141709 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108835 | YRCF | 141710 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108836 | YRCF | 141711 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108837 | YRCF | 141712 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108838 | YRCF | 141713 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108839 | YRCF | 141714 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108840 | YRCF | 141715 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108841 | YRCF | 141716 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108842 | YRCF | 141717 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108843 | YRCF | 141718 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108844 | YRCF | 141719 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108845 | YRCF | 141720 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108846 | YRCF | 141721 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108847 | YRCF | 141722 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108848 | YRCF | 141723 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108849 | YRCF | 141724 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108850 | YRCF | 141725 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108851 | YRCF | 141726 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108852 | YRCF | 141727 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108853 | YRCF | 141728 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108854 | YRCF | 141729 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108855 | YRCF | 141730 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108856 | YRCF | 141731 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108857 | YRCF | 141732 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108858 | YRCF | 141733 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108859 | YRCF | 141734 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108860 | YRCF | 141735 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108861 | YRCF | 141736 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108862 | YRCF | 141737 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108863 | YRCF | 141738 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108864 | YRCF | 141739 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108865 | YRCF | 141740 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108866 | YRCF | 141741 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108867 | YRCF | 141742 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108868 | YRCF | 141743 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108869 | YRCF | 141744 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108870 | YRCF | 141745 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108871 | YRCF | 141746 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108872 | YRCF | 141747 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108873 | YRCF | 141748 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108874 | YRCF | 141749 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108875 | YRCF | 141750 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108876 | YRCF | 141751 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108877 | YRCF | 141752 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108878 | YRCF | 141753 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108879 | YRCF | 141754 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108880 | YRCF | 141755 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108881 | YRCF | 141756 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108882 | YRCF | 141757 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108883 | YRCF | 141758 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108884 | YRCF | 141759 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108885 | YRCF | 141760 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108886 | YRCF | 141761 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108887 | YRCF | 141762 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108888 | YRCF | 141763 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108889 | YRCF | 141764 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108890 | YRCF | 141765 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108891 | YRCF | 141766 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108892 | YRCF | 141767 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108893 | YRCF | 141768 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108894 | YRCF | 141769 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108895 | YRCF | 141770 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108896 | YRCF | 141771 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108897 | YRCF | 141772 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108898 | YRCF | 141773 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108899 | YRCF | 141774 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108900 | YRCF | 141775 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108901 | YRCF | 141776 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108902 | YRCF | 141777 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108903 | YRCF | 141778 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108904 | YRCF | 141779 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108905 | YRCF | 141780 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108906 | YRCF | 141781 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2815MM108907 | YRCF | 141782 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108908 | YRCF | 141783 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108909 | YRCF | 141784 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108910 | YRCF | 141785 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108911 | YRCF | 141786 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108912 | YRCF | 141787 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108913 | YRCF | 141788 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108914 | YRCF | 141789 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108915 | YRCF | 141790 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108916 | YRCF | 141791 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108917 | YRCF | 141792 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108918 | YRCF | 141793 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108919 | YRCF | 141794 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108920 | YRCF | 141795 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108921 | YRCF | 141796 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108922 | YRCF | 141797 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108923 | YRCF | 141798 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108924 | YRCF | 141799 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108925 | YRCF | 141800 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108926 | YRCF | 141801 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108927 | YRCF | 141802 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108928 | YRCF | 141803 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108929 | YRCF | 141804 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108930 | YRCF | 141805 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108931 | YRCF | 141806 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108932 | YRCF | 141807 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108933 | YRCF | 141808 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108934 | YRCF | 141809 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108935 | YRCF | 141810 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108936 | YRCF | 141811 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108937 | YRCF | 141812 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108938 | YRCF | 141813 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108939 | YRCF | 141814 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108940 | YRCF | 141815 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108941 | YRCF | 141816 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108942 | YRCF | 141817 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108943 | YRCF | 141818 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108944 | YRCF | 141819 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108945 | YRCF | 141820 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108946 | YRCF | 141821 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108947 | YRCF | 141822 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108948 | YRCF | 141823 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108949 | YRCF | 141824 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108950 | YRCF | 141825 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108951 | YRCF | 141826 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108952 | YRCF | 141827 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108953 | YRCF | 141828 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108954 | YRCF | 141829 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108955 | YRCF | 141830 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108956 | YRCF | 141831 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108957 | YRCF | 141832 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108958 | YRCF | 141833 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108959 | YRCF | 141834 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108960 | YRCF | 141835 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108961 | YRCF | 141836 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108962 | YRCF | 141837 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108963 | YRCF | 141838 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108964 | YRCF | 141839 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108965 | YRCF | 141840 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108966 | YRCF | 141841 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108967 | YRCF | 141842 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108968 | YRCF | 141843 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108969 | YRCF | 141844 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108970 | YRCF | 141845 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108971 | YRCF | 141846 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM108972 | YRCF | 141847 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108973 | YRCF | 141848 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108974 | YRCF | 141849 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108975 | YRCF | 141850 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108976 | YRCF | 141851 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108977 | YRCF | 141852 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108978 | YRCF | 141853 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108979 | YRCF | 141854 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108980 | YRCF | 141855 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108981 | YRCF | 141856 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2818MM108982 | YRCF | 141857 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108983 | YRCF | 141858 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108984 | YRCF | 141859 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108985 | YRCF | 141860 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108987 | YRCF | 141862 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108988 | YRCF | 141863 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108989 | YRCF | 141864 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM108990 | YRCF | 141865 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM108991 | YRCF | 141866 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM108992 | YRCF | 141867 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM108993 | YRCF | 141868 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM108994 | YRCF | 141869 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM108995 | YRCF | 141870 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM108996 | YRCF | 141871 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM108997 | YRCF | 141872 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM108998 | YRCF | 141873 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM108999 | YRCF | 141874 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109000 | YRCF | 141875 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109001 | YRCF | 141876 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109002 | YRCF | 141877 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109003 | YRCF | 141878 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109004 | YRCF | 141879 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109005 | YRCF | 141880 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109006 | YRCF | 141881 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109007 | YRCF | 141882 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109008 | YRCF | 141883 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109009 | YRCF | 141884 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109010 | YRCF | 141885 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109011 | YRCF | 141886 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109012 | YRCF | 141887 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109013 | YRCF | 141888 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109014 | YRCF | 141889 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109015 | YRCF | 141890 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109016 | YRCF | 141891 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109017 | YRCF | 141892 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109018 | YRCF | 141893 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109019 | YRCF | 141894 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109020 | YRCF | 141895 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109021 | YRCF | 141896 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109022 | YRCF | 141897 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109023 | YRCF | 141898 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109024 | YRCF | 141899 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109025 | YRCF | 141900 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109026 | YRCF | 141901 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109027 | YRCF | 141902 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109028 | YRCF | 141903 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109029 | YRCF | 141904 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109030 | YRCF | 141905 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109031 | YRCF | 141906 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109032 | YRCF | 141907 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109033 | YRCF | 141908 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109034 | YRCF | 141909 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109035 | YRCF | 141910 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109036 | YRCF | 141911 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109037 | YRCF | 141912 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109038 | YRCF | 141913 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109039 | YRCF | 141914 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109040 | YRCF | 141915 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109041 | YRCF | 141916 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109042 | YRCF | 141917 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109043 | YRCF | 141918 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109044 | YRCF | 141919 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109045 | YRCF | 141920 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109046 | YRCF | 141921 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109047 | YRCF | 141922 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109048 | YRCF | 141923 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109049 | YRCF | 141924 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109050 | YRCF | 141925 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109051 | YRCF | 141926 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109052 | YRCF | 141927 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109053 | YRCF | 141928 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109054 | YRCF | 141929 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109055 | YRCF | 141930 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109056 | YRCF | 141931 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109057 | YRCF | 141932 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC2812MM109058 | YRCF | 141933 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109059 | YRCF | 141934 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109060 | YRCF | 141935 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109061 | YRCF | 141936 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109062 | YRCF | 141937 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109063 | YRCF | 141938 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109064 | YRCF | 141939 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109065 | YRCF | 141940 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109066 | YRCF | 141941 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109067 | YRCF | 141942 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109068 | YRCF | 141943 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109069 | YRCF | 141944 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109070 | YRCF | 141945 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109071 | YRCF | 141946 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109072 | YRCF | 141947 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109073 | YRCF | 141948 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109074 | YRCF | 141949 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109075 | YRCF | 141950 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814MM109076 | YRCF | 141951 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109077 | YRCF | 141952 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109078 | YRCF | 141953 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109079 | YRCF | 141954 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816MM109080 | YRCF | 141955 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818MM109081 | YRCF | 141956 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XMM109082 | YRCF | 141957 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811MM109083 | YRCF | 141958 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813MM109084 | YRCF | 141959 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815MM109085 | YRCF | 141960 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817MM109086 | YRCF | 141961 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109087 | YRCF | 141962 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810MM109088 | YRCF | 141963 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812MM109089 | YRCF | 141964 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819MM109090 | YRCF | 141965 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV281D3NL300712 | YRCF | 141966 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300713 | YRCF | 141967 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300714 | YRCF | 141968 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300715 | YRCF | 141969 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300716 | YRCF | 141970 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300717 | YRCF | 141971 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300718 | YRCF | 141972 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300719 | YRCF | 141973 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300720 | YRCF | 141974 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300721 | YRCF | 141975 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300722 | YRCF | 141976 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300723 | YRCF | 141977 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300724 | YRCF | 141978 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300725 | YRCF | 141979 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300726 | YRCF | 141980 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300727 | YRCF | 141981 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300728 | YRCF | 141982 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300729 | YRCF | 141983 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300730 | YRCF | 141984 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300731 | YRCF | 141985 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300732 | YRCF | 141986 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300733 | YRCF | 141987 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300734 | YRCF | 141988 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300735 | YRCF | 141989 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300736 | YRCF | 141990 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300737 | YRCF | 141991 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300738 | YRCF | 141992 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300739 | YRCF | 141993 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300740 | YRCF | 141994 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300741 | YRCF | 141995 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300742 | YRCF | 141996 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300743 | YRCF | 141997 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300744 | YRCF | 141998 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300745 | YRCF | 141999 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300746 | YRCF | 142000 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300747 | YRCF | 142001 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300748 | YRCF | 142002 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300749 | YRCF | 142003 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300750 | YRCF | 142004 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300751 | YRCF | 142005 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300752 | YRCF | 142006 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300753 | YRCF | 142007 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D8NL300754 | YRCF | 142008 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300755 | YRCF | 142009 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300756 | YRCF | 142010 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300757 | YRCF | 142011 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300758 | YRCF | 142012 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300759 | YRCF | 142013 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300760 | YRCF | 142014 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300761 | YRCF | 142015 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300762 | YRCF | 142016 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300763 | YRCF | 142017 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300764 | YRCF | 142018 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300765 | YRCF | 142019 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300766 | YRCF | 142020 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300767 | YRCF | 142021 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300768 | YRCF | 142022 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300769 | YRCF | 142023 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300770 | YRCF | 142024 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300771 | YRCF | 142025 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300772 | YRCF | 142026 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300773 | YRCF | 142027 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300774 | YRCF | 142028 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300775 | YRCF | 142029 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300776 | YRCF | 142030 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300777 | YRCF | 142031 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300778 | YRCF | 142032 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300779 | YRCF | 142033 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300780 | YRCF | 142034 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300781 | YRCF | 142035 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300782 | YRCF | 142036 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300783 | YRCF | 142037 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300784 | YRCF | 142038 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300785 | YRCF | 142039 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300786 | YRCF | 142040 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300787 | YRCF | 142041 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300788 | YRCF | 142042 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300789 | YRCF | 142043 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300790 | YRCF | 142044 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300791 | YRCF | 142045 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300792 | YRCF | 142046 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300793 | YRCF | 142047 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300794 | YRCF | 142048 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300795 | YRCF | 142049 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300796 | YRCF | 142050 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300797 | YRCF | 142051 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300798 | YRCF | 142052 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300799 | YRCF | 142053 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300800 | YRCF | 142054 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300801 | YRCF | 142055 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300802 | YRCF | 142056 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300803 | YRCF | 142057 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300804 | YRCF | 142058 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300805 | YRCF | 142059 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300806 | YRCF | 142060 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300807 | YRCF | 142061 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300808 | YRCF | 142062 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300809 | YRCF | 142063 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300810 | YRCF | 142064 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300811 | YRCF | 142065 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300812 | YRCF | 142066 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300813 | YRCF | 142067 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300814 | YRCF | 142068 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300815 | YRCF | 142069 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300816 | YRCF | 142070 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300817 | YRCF | 142071 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300818 | YRCF | 142072 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300819 | YRCF | 142073 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300820 | YRCF | 142074 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300821 | YRCF | 142075 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300822 | YRCF | 142076 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300823 | YRCF | 142077 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300824 | YRCF | 142078 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300825 | YRCF | 142079 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300826 | YRCF | 142080 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300827 | YRCF | 142081 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300828 | YRCF | 142082 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D2NL300829 | YRCF | 142083 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300830 | YRCF | 142084 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300831 | YRCF | 142085 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300837 | YRCF | 142086 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300838 | YRCF | 142087 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300839 | YRCF | 142088 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300840 | YRCF | 142089 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300841 | YRCF | 142090 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300842 | YRCF | 142091 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300843 | YRCF | 142092 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300844 | YRCF | 142093 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300845 | YRCF | 142094 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300846 | YRCF | 142095 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300847 | YRCF | 142096 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300848 | YRCF | 142097 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300849 | YRCF | 142098 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300850 | YRCF | 142099 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300851 | YRCF | 142100 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300852 | YRCF | 142101 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300853 | YRCF | 142102 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300854 | YRCF | 142103 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300855 | YRCF | 142104 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300856 | YRCF | 142105 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300857 | YRCF | 142106 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300858 | YRCF | 142107 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300859 | YRCF | 142108 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300860 | YRCF | 142109 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300861 | YRCF | 142110 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300862 | YRCF | 142111 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300863 | YRCF | 142112 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300864 | YRCF | 142113 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300865 | YRCF | 142114 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300866 | YRCF | 142115 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300867 | YRCF | 142116 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300868 | YRCF | 142117 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300869 | YRCF | 142118 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300870 | YRCF | 142119 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300871 | YRCF | 142120 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300873 | YRCF | 142122 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300874 | YRCF | 142123 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300875 | YRCF | 142124 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300876 | YRCF | 142125 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300877 | YRCF | 142126 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300878 | YRCF | 142127 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300879 | YRCF | 142128 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300880 | YRCF | 142129 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300881 | YRCF | 142130 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300882 | YRCF | 142131 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300883 | YRCF | 142132 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300884 | YRCF | 142133 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300885 | YRCF | 142134 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300886 | YRCF | 142135 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300887 | YRCF | 142136 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300888 | YRCF | 142137 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300889 | YRCF | 142138 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300890 | YRCF | 142139 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300891 | YRCF | 142140 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300892 | YRCF | 142141 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300893 | YRCF | 142142 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300894 | YRCF | 142143 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300895 | YRCF | 142144 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300896 | YRCF | 142145 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300897 | YRCF | 142146 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300898 | YRCF | 142147 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300899 | YRCF | 142148 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300900 | YRCF | 142149 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300901 | YRCF | 142150 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300902 | YRCF | 142151 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300903 | YRCF | 142152 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300904 | YRCF | 142153 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300905 | YRCF | 142154 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300906 | YRCF | 142155 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300907 | YRCF | 142156 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300908 | YRCF | 142157 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300909 | YRCF | 142158 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D7NL300910 | YRCF | 142159 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300911 | YRCF | 142160 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300912 | YRCF | 142161 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300913 | YRCF | 142162 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300914 | YRCF | 142163 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300915 | YRCF | 142164 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300916 | YRCF | 142165 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300917 | YRCF | 142166 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300918 | YRCF | 142167 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300919 | YRCF | 142168 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300920 | YRCF | 142169 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300921 | YRCF | 142170 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300922 | YRCF | 142171 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300923 | YRCF | 142172 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300924 | YRCF | 142173 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300925 | YRCF | 142174 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300926 | YRCF | 142175 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300832 | YRCF | 142176 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300833 | YRCF | 142177 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300834 | YRCF | 142178 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300835 | YRCF | 142179 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300836 | YRCF | 142180 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300927 | YRCF | 142181 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300928 | YRCF | 142182 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300929 | YRCF | 142183 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300930 | YRCF | 142184 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300931 | YRCF | 142185 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300932 | YRCF | 142186 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300933 | YRCF | 142187 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300934 | YRCF | 142188 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300935 | YRCF | 142189 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300936 | YRCF | 142190 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300937 | YRCF | 142191 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300938 | YRCF | 142192 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300939 | YRCF | 142193 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300940 | YRCF | 142194 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300941 | YRCF | 142195 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300942 | YRCF | 142196 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300943 | YRCF | 142197 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300944 | YRCF | 142198 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300945 | YRCF | 142199 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300946 | YRCF | 142200 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300947 | YRCF | 142201 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300948 | YRCF | 142202 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300950 | YRCF | 142204 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300951 | YRCF | 142205 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300952 | YRCF | 142206 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300953 | YRCF | 142207 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300954 | YRCF | 142208 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300955 | YRCF | 142209 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300956 | YRCF | 142210 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300957 | YRCF | 142211 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300958 | YRCF | 142212 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300959 | YRCF | 142213 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300960 | YRCF | 142214 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300961 | YRCF | 142215 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300962 | YRCF | 142216 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300963 | YRCF | 142217 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300964 | YRCF | 142218 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300965 | YRCF | 142219 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300966 | YRCF | 142220 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300967 | YRCF | 142221 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300968 | YRCF | 142222 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300969 | YRCF | 142223 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300970 | YRCF | 142224 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300971 | YRCF | 142225 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300972 | YRCF | 142226 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300973 | YRCF | 142227 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300974 | YRCF | 142228 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300975 | YRCF | 142229 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300976 | YRCF | 142230 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300977 | YRCF | 142231 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300978 | YRCF | 142232 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300979 | YRCF | 142233 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300980 | YRCF | 142234 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D8NL300981 | YRCF | 142235 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300982 | YRCF | 142236 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300983 | YRCF | 142237 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300984 | YRCF | 142238 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300985 | YRCF | 142239 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL300986 | YRCF | 142240 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300987 | YRCF | 142241 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300988 | YRCF | 142242 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300989 | YRCF | 142243 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL300990 | YRCF | 142244 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL300991 | YRCF | 142245 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL300992 | YRCF | 142246 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL300993 | YRCF | 142247 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL300994 | YRCF | 142248 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL300995 | YRCF | 142249 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL300996 | YRCF | 142250 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL300997 | YRCF | 142251 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL300998 | YRCF | 142252 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL300999 | YRCF | 142253 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301000 | YRCF | 142254 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301001 | YRCF | 142255 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301002 | YRCF | 142256 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301003 | YRCF | 142257 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301004 | YRCF | 142258 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301005 | YRCF | 142259 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301006 | YRCF | 142260 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301007 | YRCF | 142261 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301008 | YRCF | 142262 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301009 | YRCF | 142263 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301010 | YRCF | 142264 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301011 | YRCF | 142265 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301012 | YRCF | 142266 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301013 | YRCF | 142267 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301014 | YRCF | 142268 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301015 | YRCF | 142269 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301016 | YRCF | 142270 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301018 | YRCF | 142271 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301019 | YRCF | 142272 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301020 | YRCF | 142273 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301021 | YRCF | 142274 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301022 | YRCF | 142275 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301023 | YRCF | 142276 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301024 | YRCF | 142277 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301025 | YRCF | 142278 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301026 | YRCF | 142279 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301027 | YRCF | 142280 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301028 | YRCF | 142281 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301029 | YRCF | 142282 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301030 | YRCF | 142283 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301031 | YRCF | 142284 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301032 | YRCF | 142285 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301033 | YRCF | 142286 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301034 | YRCF | 142287 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301035 | YRCF | 142288 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301036 | YRCF | 142289 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301037 | YRCF | 142290 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301038 | YRCF | 142291 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301039 | YRCF | 142292 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301040 | YRCF | 142293 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301041 | YRCF | 142294 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301042 | YRCF | 142295 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301043 | YRCF | 142296 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301044 | YRCF | 142297 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301045 | YRCF | 142298 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301046 | YRCF | 142299 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301047 | YRCF | 142300 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301048 | YRCF | 142301 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301049 | YRCF | 142302 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301050 | YRCF | 142303 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301051 | YRCF | 142304 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301052 | YRCF | 142305 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301054 | YRCF | 142307 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301055 | YRCF | 142308 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301056 | YRCF | 142309 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301057 | YRCF | 142310 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D4NL301058 | YRCF | 142311 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301059 | YRCF | 142312 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301060 | YRCF | 142313 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301061 | YRCF | 142314 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301062 | YRCF | 142315 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301063 | YRCF | 142316 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301064 | YRCF | 142317 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301065 | YRCF | 142318 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301066 | YRCF | 142319 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301067 | YRCF | 142320 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301068 | YRCF | 142321 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301069 | YRCF | 142322 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301070 | YRCF | 142323 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301071 | YRCF | 142324 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301072 | YRCF | 142325 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301073 | YRCF | 142326 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301074 | YRCF | 142327 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301075 | YRCF | 142328 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301076 | YRCF | 142329 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301077 | YRCF | 142330 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301078 | YRCF | 142331 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301079 | YRCF | 142332 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301080 | YRCF | 142333 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301081 | YRCF | 142334 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301082 | YRCF | 142335 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301083 | YRCF | 142336 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301084 | YRCF | 142337 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301085 | YRCF | 142338 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301086 | YRCF | 142339 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301087 | YRCF | 142340 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301088 | YRCF | 142341 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301089 | YRCF | 142342 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301090 | YRCF | 142343 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301091 | YRCF | 142344 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301092 | YRCF | 142345 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301093 | YRCF | 142346 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301094 | YRCF | 142347 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301095 | YRCF | 142348 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301096 | YRCF | 142349 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301097 | YRCF | 142350 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301098 | YRCF | 142351 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301099 | YRCF | 142352 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301100 | YRCF | 142353 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301101 | YRCF | 142354 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301102 | YRCF | 142355 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301103 | YRCF | 142356 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301104 | YRCF | 142357 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301105 | YRCF | 142358 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301106 | YRCF | 142359 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301107 | YRCF | 142360 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301108 | YRCF | 142361 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301109 | YRCF | 142362 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301110 | YRCF | 142363 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301111 | YRCF | 142364 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301112 | YRCF | 142365 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301113 | YRCF | 142366 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301114 | YRCF | 142367 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301115 | YRCF | 142368 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301116 | YRCF | 142369 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301117 | YRCF | 142370 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301118 | YRCF | 142371 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301119 | YRCF | 142372 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301120 | YRCF | 142373 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301121 | YRCF | 142374 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301122 | YRCF | 142375 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301123 | YRCF | 142376 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301124 | YRCF | 142377 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301125 | YRCF | 142378 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301126 | YRCF | 142379 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301127 | YRCF | 142380 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301128 | YRCF | 142381 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301129 | YRCF | 142382 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301130 | YRCF | 142383 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301131 | YRCF | 142384 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301132 | YRCF | 142385 | TRAILER | IN | IN | 1 | WABASH |

| 1JJV281D3NL301133 | YRCF | 142386 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301134 | YRCF | 142387 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301135 | YRCF | 142388 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301136 | YRCF | 142389 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301137 | YRCF | 142390 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301138 | YRCF | 142391 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301139 | YRCF | 142392 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301140 | YRCF | 142393 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301141 | YRCF | 142394 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301142 | YRCF | 142395 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301143 | YRCF | 142396 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301144 | YRCF | 142397 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301145 | YRCF | 142398 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301146 | YRCF | 142399 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301147 | YRCF | 142400 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301148 | YRCF | 142401 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301149 | YRCF | 142402 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301150 | YRCF | 142403 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301151 | YRCF | 142404 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301152 | YRCF | 142405 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301153 | YRCF | 142406 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301154 | YRCF | 142407 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301155 | YRCF | 142408 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301156 | YRCF | 142409 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301157 | YRCF | 142410 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301158 | YRCF | 142411 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301159 | YRCF | 142412 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301160 | YRCF | 142413 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301161 | YRCF | 142414 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301162 | YRCF | 142415 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301163 | YRCF | 142416 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301165 | YRCF | 142418 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301166 | YRCF | 142419 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301167 | YRCF | 142420 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301168 | YRCF | 142421 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301169 | YRCF | 142422 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301170 | YRCF | 142423 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301171 | YRCF | 142424 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301172 | YRCF | 142425 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301173 | YRCF | 142426 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301174 | YRCF | 142427 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301175 | YRCF | 142428 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301176 | YRCF | 142429 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301177 | YRCF | 142430 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301178 | YRCF | 142431 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301179 | YRCF | 142432 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301180 | YRCF | 142433 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301181 | YRCF | 142434 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301182 | YRCF | 142435 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301183 | YRCF | 142436 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301184 | YRCF | 142437 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301185 | YRCF | 142438 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301186 | YRCF | 142439 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301187 | YRCF | 142440 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301188 | YRCF | 142441 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301189 | YRCF | 142442 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301190 | YRCF | 142443 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301191 | YRCF | 142444 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301192 | YRCF | 142445 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301193 | YRCF | 142446 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301194 | YRCF | 142447 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301195 | YRCF | 142448 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301196 | YRCF | 142449 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301197 | YRCF | 142450 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301198 | YRCF | 142451 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301199 | YRCF | 142452 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301200 | YRCF | 142453 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301201 | YRCF | 142454 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301202 | YRCF | 142455 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301203 | YRCF | 142456 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301204 | YRCF | 142457 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301205 | YRCF | 142458 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301206 | YRCF | 142459 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301207 | YRCF | 142460 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301208 | YRCF | 142461 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281DXNL301209 | YRCF | 142462 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301210 | YRCF | 142463 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301211 | YRCF | 142464 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301212 | YRCF | 142465 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301213 | YRCF | 142466 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301214 | YRCF | 142467 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301215 | YRCF | 142468 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301216 | YRCF | 142469 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301217 | YRCF | 142470 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301218 | YRCF | 142471 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301219 | YRCF | 142472 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301220 | YRCF | 142473 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301221 | YRCF | 142474 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301222 | YRCF | 142475 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301223 | YRCF | 142476 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301224 | YRCF | 142477 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301225 | YRCF | 142478 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301226 | YRCF | 142479 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301227 | YRCF | 142480 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301228 | YRCF | 142481 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301229 | YRCF | 142482 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301230 | YRCF | 142483 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301231 | YRCF | 142484 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301232 | YRCF | 142485 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301233 | YRCF | 142486 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301234 | YRCF | 142487 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301235 | YRCF | 142488 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301236 | YRCF | 142489 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301237 | YRCF | 142490 | TRAILER | IN | IN | 1 | WABASH |
| 5V8VC2810NM203313 | YRCF | 142491 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203314 | YRCF | 142492 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203315 | YRCF | 142493 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203316 | YRCF | 142494 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203317 | YRCF | 142495 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203318 | YRCF | 142496 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203319 | YRCF | 142497 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203320 | YRCF | 142498 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203321 | YRCF | 142499 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203322 | YRCF | 142500 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203323 | YRCF | 142501 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203324 | YRCF | 142502 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203325 | YRCF | 142503 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203326 | YRCF | 142504 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203327 | YRCF | 142505 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203328 | YRCF | 142506 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203329 | YRCF | 142507 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203330 | YRCF | 142508 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203331 | YRCF | 142509 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203332 | YRCF | 142510 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203333 | YRCF | 142511 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203334 | YRCF | 142512 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203335 | YRCF | 142513 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203336 | YRCF | 142514 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203337 | YRCF | 142515 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203338 | YRCF | 142516 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203339 | YRCF | 142517 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203340 | YRCF | 142518 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203341 | YRCF | 142519 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203342 | YRCF | 142520 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203343 | YRCF | 142521 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203344 | YRCF | 142522 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203345 | YRCF | 142523 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203346 | YRCF | 142524 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203347 | YRCF | 142525 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203348 | YRCF | 142526 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203349 | YRCF | 142527 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203350 | YRCF | 142528 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203351 | YRCF | 142529 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203352 | YRCF | 142530 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203353 | YRCF | 142531 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203354 | YRCF | 142532 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203355 | YRCF | 142533 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203356 | YRCF | 142534 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203357 | YRCF | 142535 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203358 | YRCF | 142536 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC2812NM203359 | YRCF | 142537 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203360 | YRCF | 142538 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203361 | YRCF | 142539 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203362 | YRCF | 142540 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203363 | YRCF | 142541 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203364 | YRCF | 142542 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203365 | YRCF | 142543 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203366 | YRCF | 142544 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203367 | YRCF | 142545 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203368 | YRCF | 142546 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203369 | YRCF | 142547 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203370 | YRCF | 142548 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203371 | YRCF | 142549 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203372 | YRCF | 142550 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203373 | YRCF | 142551 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203374 | YRCF | 142552 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203375 | YRCF | 142553 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203376 | YRCF | 142554 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203377 | YRCF | 142555 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203378 | YRCF | 142556 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203379 | YRCF | 142557 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203380 | YRCF | 142558 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203381 | YRCF | 142559 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203382 | YRCF | 142560 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203383 | YRCF | 142561 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203384 | YRCF | 142562 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203385 | YRCF | 142563 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203386 | YRCF | 142564 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203387 | YRCF | 142565 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203388 | YRCF | 142566 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203389 | YRCF | 142567 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203390 | YRCF | 142568 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203391 | YRCF | 142569 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203392 | YRCF | 142570 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203393 | YRCF | 142571 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203394 | YRCF | 142572 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203395 | YRCF | 142573 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203396 | YRCF | 142574 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203397 | YRCF | 142575 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203398 | YRCF | 142576 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203399 | YRCF | 142577 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203400 | YRCF | 142578 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203401 | YRCF | 142579 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203402 | YRCF | 142580 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203403 | YRCF | 142581 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203404 | YRCF | 142582 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203405 | YRCF | 142583 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203406 | YRCF | 142584 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203407 | YRCF | 142585 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203408 | YRCF | 142586 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203409 | YRCF | 142587 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203410 | YRCF | 142588 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203411 | YRCF | 142589 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203412 | YRCF | 142590 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203413 | YRCF | 142591 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203414 | YRCF | 142592 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203415 | YRCF | 142593 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203416 | YRCF | 142594 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203417 | YRCF | 142595 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203418 | YRCF | 142596 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203419 | YRCF | 142597 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203420 | YRCF | 142598 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203421 | YRCF | 142599 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203422 | YRCF | 142600 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203423 | YRCF | 142601 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203424 | YRCF | 142602 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203425 | YRCF | 142603 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203426 | YRCF | 142604 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203427 | YRCF | 142605 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203428 | YRCF | 142606 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203429 | YRCF | 142607 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203430 | YRCF | 142608 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203431 | YRCF | 142609 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203432 | YRCF | 142610 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203433 | YRCF | 142611 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2811NM203434 | YRCF | 142612 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203435 | YRCF | 142613 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203436 | YRCF | 142614 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203437 | YRCF | 142615 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203438 | YRCF | 142616 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203439 | YRCF | 142617 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203440 | YRCF | 142618 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203441 | YRCF | 142619 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203442 | YRCF | 142620 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203443 | YRCF | 142621 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203444 | YRCF | 142622 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203445 | YRCF | 142623 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203446 | YRCF | 142624 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203447 | YRCF | 142625 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203448 | YRCF | 142626 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203449 | YRCF | 142627 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203450 | YRCF | 142628 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203451 | YRCF | 142629 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203452 | YRCF | 142630 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203453 | YRCF | 142631 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203454 | YRCF | 142632 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203455 | YRCF | 142633 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203456 | YRCF | 142634 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203457 | YRCF | 142635 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203458 | YRCF | 142636 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203459 | YRCF | 142637 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203460 | YRCF | 142638 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203461 | YRCF | 142639 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203462 | YRCF | 142640 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203463 | YRCF | 142641 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203464 | YRCF | 142642 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203465 | YRCF | 142643 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203466 | YRCF | 142644 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203467 | YRCF | 142645 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203468 | YRCF | 142646 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203469 | YRCF | 142647 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203470 | YRCF | 142648 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203471 | YRCF | 142649 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203472 | YRCF | 142650 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203473 | YRCF | 142651 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203474 | YRCF | 142652 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203475 | YRCF | 142653 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203476 | YRCF | 142654 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203477 | YRCF | 142655 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203478 | YRCF | 142656 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203479 | YRCF | 142657 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203480 | YRCF | 142658 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203481 | YRCF | 142659 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203482 | YRCF | 142660 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203483 | YRCF | 142661 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203484 | YRCF | 142662 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203485 | YRCF | 142663 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203486 | YRCF | 142664 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203487 | YRCF | 142665 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203488 | YRCF | 142666 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203489 | YRCF | 142667 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203490 | YRCF | 142668 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203491 | YRCF | 142669 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203492 | YRCF | 142670 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203493 | YRCF | 142671 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203494 | YRCF | 142672 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203495 | YRCF | 142673 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203496 | YRCF | 142674 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203497 | YRCF | 142675 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203498 | YRCF | 142676 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203499 | YRCF | 142677 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203500 | YRCF | 142678 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203501 | YRCF | 142679 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203502 | YRCF | 142680 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203503 | YRCF | 142681 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203504 | YRCF | 142682 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203505 | YRCF | 142683 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203506 | YRCF | 142684 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203507 | YRCF | 142685 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203508 | YRCF | 142686 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2816NM203509 | YRCF | 142687 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203510 | YRCF | 142688 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203511 | YRCF | 142689 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203512 | YRCF | 142690 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203513 | YRCF | 142691 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203514 | YRCF | 142692 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203515 | YRCF | 142693 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203516 | YRCF | 142694 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203517 | YRCF | 142695 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203518 | YRCF | 142696 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203519 | YRCF | 142697 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203520 | YRCF | 142698 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203521 | YRCF | 142699 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203522 | YRCF | 142700 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203523 | YRCF | 142701 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203524 | YRCF | 142702 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203525 | YRCF | 142703 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203526 | YRCF | 142704 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203527 | YRCF | 142705 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203528 | YRCF | 142706 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203529 | YRCF | 142707 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203530 | YRCF | 142708 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203531 | YRCF | 142709 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203532 | YRCF | 142710 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203533 | YRCF | 142711 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203534 | YRCF | 142712 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203535 | YRCF | 142713 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203536 | YRCF | 142714 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203537 | YRCF | 142715 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203538 | YRCF | 142716 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203539 | YRCF | 142717 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203540 | YRCF | 142718 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203541 | YRCF | 142719 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203542 | YRCF | 142720 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203543 | YRCF | 142721 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203544 | YRCF | 142722 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203545 | YRCF | 142723 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203546 | YRCF | 142724 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203547 | YRCF | 142725 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203548 | YRCF | 142726 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203549 | YRCF | 142727 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203550 | YRCF | 142728 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203551 | YRCF | 142729 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203552 | YRCF | 142730 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203553 | YRCF | 142731 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203554 | YRCF | 142732 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203555 | YRCF | 142733 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203556 | YRCF | 142734 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203557 | YRCF | 142735 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203558 | YRCF | 142736 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203559 | YRCF | 142737 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203560 | YRCF | 142738 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203561 | YRCF | 142739 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203562 | YRCF | 142740 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203563 | YRCF | 142741 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203564 | YRCF | 142742 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203565 | YRCF | 142743 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203566 | YRCF | 142744 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203567 | YRCF | 142745 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203568 | YRCF | 142746 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203569 | YRCF | 142747 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203570 | YRCF | 142748 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203571 | YRCF | 142749 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203572 | YRCF | 142750 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203573 | YRCF | 142751 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203574 | YRCF | 142752 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203575 | YRCF | 142753 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203576 | YRCF | 142754 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203577 | YRCF | 142755 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203578 | YRCF | 142756 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203579 | YRCF | 142757 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203580 | YRCF | 142758 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203581 | YRCF | 142759 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203582 | YRCF | 142760 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203583 | YRCF | 142761 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2819NM203584 | YRCF | 142762 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203585 | YRCF | 142763 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203586 | YRCF | 142764 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203587 | YRCF | 142765 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203588 | YRCF | 142766 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203589 | YRCF | 142767 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203590 | YRCF | 142768 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203591 | YRCF | 142769 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203592 | YRCF | 142770 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203593 | YRCF | 142771 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203594 | YRCF | 142772 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203595 | YRCF | 142773 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203596 | YRCF | 142774 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203597 | YRCF | 142775 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203598 | YRCF | 142776 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203599 | YRCF | 142777 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203600 | YRCF | 142778 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203601 | YRCF | 142779 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203602 | YRCF | 142780 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203603 | YRCF | 142781 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203604 | YRCF | 142782 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203605 | YRCF | 142783 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203606 | YRCF | 142784 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203607 | YRCF | 142785 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203608 | YRCF | 142786 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203609 | YRCF | 142787 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203610 | YRCF | 142788 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203611 | YRCF | 142789 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203612 | YRCF | 142790 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203613 | YRCF | 142791 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203614 | YRCF | 142792 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203615 | YRCF | 142793 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203616 | YRCF | 142794 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203617 | YRCF | 142795 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203618 | YRCF | 142796 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203619 | YRCF | 142797 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203620 | YRCF | 142798 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203621 | YRCF | 142799 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203622 | YRCF | 142800 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203623 | YRCF | 142801 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203624 | YRCF | 142802 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203625 | YRCF | 142803 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203626 | YRCF | 142804 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203627 | YRCF | 142805 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203628 | YRCF | 142806 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203629 | YRCF | 142807 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203630 | YRCF | 142808 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203631 | YRCF | 142809 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203632 | YRCF | 142810 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203633 | YRCF | 142811 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203634 | YRCF | 142812 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203635 | YRCF | 142813 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203636 | YRCF | 142814 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203637 | YRCF | 142815 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203638 | YRCF | 142816 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203639 | YRCF | 142817 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203640 | YRCF | 142818 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203641 | YRCF | 142819 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203642 | YRCF | 142820 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203643 | YRCF | 142821 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203644 | YRCF | 142822 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203645 | YRCF | 142823 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203646 | YRCF | 142824 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203647 | YRCF | 142825 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203648 | YRCF | 142826 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203649 | YRCF | 142827 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203650 | YRCF | 142828 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203651 | YRCF | 142829 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203652 | YRCF | 142830 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203653 | YRCF | 142831 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203654 | YRCF | 142832 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203655 | YRCF | 142833 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203656 | YRCF | 142834 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203657 | YRCF | 142835 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203658 | YRCF | 142836 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC2813NM203659 | YRCF | 142837 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VC281XNM203660 | YRCF | 142838 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203661 | YRCF | 142839 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203662 | YRCF | 142840 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203663 | YRCF | 142841 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203664 | YRCF | 142842 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203665 | YRCF | 142843 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203666 | YRCF | 142844 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203667 | YRCF | 142845 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203668 | YRCF | 142846 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203669 | YRCF | 142847 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203670 | YRCF | 142848 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203671 | YRCF | 142849 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203672 | YRCF | 142850 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203673 | YRCF | 142851 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203674 | YRCF | 142852 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203675 | YRCF | 142853 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203676 | YRCF | 142854 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203677 | YRCF | 142855 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203678 | YRCF | 142856 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203679 | YRCF | 142857 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203680 | YRCF | 142858 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203681 | YRCF | 142859 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203682 | YRCF | 142860 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203683 | YRCF | 142861 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203684 | YRCF | 142862 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203685 | YRCF | 142863 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203686 | YRCF | 142864 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203687 | YRCF | 142865 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203688 | YRCF | 142866 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203689 | YRCF | 142867 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203690 | YRCF | 142868 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203691 | YRCF | 142869 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203692 | YRCF | 142870 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203693 | YRCF | 142871 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203694 | YRCF | 142872 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203695 | YRCF | 142873 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203696 | YRCF | 142874 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203697 | YRCF | 142875 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203698 | YRCF | 142876 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203699 | YRCF | 142877 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203700 | YRCF | 142878 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203701 | YRCF | 142879 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203702 | YRCF | 142880 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203703 | YRCF | 142881 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203704 | YRCF | 142882 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203705 | YRCF | 142883 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203706 | YRCF | 142884 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203707 | YRCF | 142885 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203708 | YRCF | 142886 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203709 | YRCF | 142887 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203710 | YRCF | 142888 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203711 | YRCF | 142889 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203712 | YRCF | 142890 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203713 | YRCF | 142891 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203714 | YRCF | 142892 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203715 | YRCF | 142893 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203716 | YRCF | 142894 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203717 | YRCF | 142895 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203718 | YRCF | 142896 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203719 | YRCF | 142897 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203720 | YRCF | 142898 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203721 | YRCF | 142899 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203722 | YRCF | 142900 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203723 | YRCF | 142901 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203724 | YRCF | 142902 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203725 | YRCF | 142903 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203726 | YRCF | 142904 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203727 | YRCF | 142905 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203728 | YRCF | 142906 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203729 | YRCF | 142907 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203730 | YRCF | 142908 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203731 | YRCF | 142909 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203732 | YRCF | 142910 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203733 | YRCF | 142911 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC2812NM203734 | YRCF | 142912 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VC2814NM203735 | YRCF | 142913 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203736 | YRCF | 142914 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203737 | YRCF | 142915 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203738 | YRCF | 142916 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203739 | YRCF | 142917 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203740 | YRCF | 142918 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203741 | YRCF | 142919 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203742 | YRCF | 142920 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203743 | YRCF | 142921 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203744 | YRCF | 142922 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203745 | YRCF | 142923 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203746 | YRCF | 142924 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203747 | YRCF | 142925 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203748 | YRCF | 142926 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203749 | YRCF | 142927 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203750 | YRCF | 142928 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203751 | YRCF | 142929 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203752 | YRCF | 142930 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203753 | YRCF | 142931 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203754 | YRCF | 142932 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203755 | YRCF | 142933 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203756 | YRCF | 142934 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203757 | YRCF | 142935 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203758 | YRCF | 142936 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203759 | YRCF | 142937 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203760 | YRCF | 142938 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203761 | YRCF | 142939 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203762 | YRCF | 142940 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203763 | YRCF | 142941 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203764 | YRCF | 142942 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203765 | YRCF | 142943 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203766 | YRCF | 142944 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203767 | YRCF | 142945 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203768 | YRCF | 142946 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203769 | YRCF | 142947 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203770 | YRCF | 142948 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203771 | YRCF | 142949 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203772 | YRCF | 142950 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203773 | YRCF | 142951 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203774 | YRCF | 142952 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203775 | YRCF | 142953 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203776 | YRCF | 142954 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203777 | YRCF | 142955 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203778 | YRCF | 142956 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203779 | YRCF | 142957 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203780 | YRCF | 142958 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203781 | YRCF | 142959 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203782 | YRCF | 142960 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203783 | YRCF | 142961 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203784 | YRCF | 142962 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203785 | YRCF | 142963 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203786 | YRCF | 142964 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203787 | YRCF | 142965 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203788 | YRCF | 142966 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203789 | YRCF | 142967 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203790 | YRCF | 142968 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203791 | YRCF | 142969 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203792 | YRCF | 142970 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203793 | YRCF | 142971 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203794 | YRCF | 142972 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203795 | YRCF | 142973 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203796 | YRCF | 142974 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203797 | YRCF | 142975 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203798 | YRCF | 142976 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203799 | YRCF | 142977 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203800 | YRCF | 142978 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203801 | YRCF | 142979 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203802 | YRCF | 142980 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203803 | YRCF | 142981 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203804 | YRCF | 142982 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203805 | YRCF | 142983 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203806 | YRCF | 142984 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203807 | YRCF | 142985 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203808 | YRCF | 142986 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2817NM203809 | YRCF | 142987 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203810 | YRCF | 142988 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203811 | YRCF | 142989 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203812 | YRCF | 142990 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203813 | YRCF | 142991 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203814 | YRCF | 142992 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203815 | YRCF | 142993 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203816 | YRCF | 142994 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203817 | YRCF | 142995 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203818 | YRCF | 142996 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203819 | YRCF | 142997 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203820 | YRCF | 142998 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203821 | YRCF | 142999 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203822 | YRCF | 143000 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203823 | YRCF | 143001 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203824 | YRCF | 143002 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203825 | YRCF | 143003 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203826 | YRCF | 143004 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203827 | YRCF | 143005 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203828 | YRCF | 143006 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203829 | YRCF | 143007 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203830 | YRCF | 143008 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203831 | YRCF | 143009 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203832 | YRCF | 143010 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203833 | YRCF | 143011 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203834 | YRCF | 143012 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203835 | YRCF | 143013 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203836 | YRCF | 143014 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203837 | YRCF | 143015 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203838 | YRCF | 143016 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203839 | YRCF | 143017 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203840 | YRCF | 143018 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203841 | YRCF | 143019 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203842 | YRCF | 143020 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203843 | YRCF | 143021 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203844 | YRCF | 143022 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203845 | YRCF | 143023 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203846 | YRCF | 143024 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203847 | YRCF | 143025 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203848 | YRCF | 143026 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203849 | YRCF | 143027 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203850 | YRCF | 143028 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203851 | YRCF | 143029 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203852 | YRCF | 143030 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203853 | YRCF | 143031 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203854 | YRCF | 143032 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203855 | YRCF | 143033 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203856 | YRCF | 143034 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203857 | YRCF | 143035 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203858 | YRCF | 143036 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203859 | YRCF | 143037 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203860 | YRCF | 143038 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203861 | YRCF | 143039 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203862 | YRCF | 143040 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203863 | YRCF | 143041 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203864 | YRCF | 143042 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203865 | YRCF | 143043 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203866 | YRCF | 143044 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203867 | YRCF | 143045 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203868 | YRCF | 143046 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203869 | YRCF | 143047 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203870 | YRCF | 143048 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203871 | YRCF | 143049 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203872 | YRCF | 143050 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203873 | YRCF | 143051 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203874 | YRCF | 143052 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203875 | YRCF | 143053 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203876 | YRCF | 143054 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203877 | YRCF | 143055 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203878 | YRCF | 143056 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203879 | YRCF | 143057 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203880 | YRCF | 143058 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203881 | YRCF | 143059 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203882 | YRCF | 143060 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203883 | YRCF | 143061 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC281XNM203884 | YRCF | 143062 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VC2811NM203885 | YRCF | 143063 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203886 | YRCF | 143064 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203887 | YRCF | 143065 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203888 | YRCF | 143066 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203889 | YRCF | 143067 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203890 | YRCF | 143068 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203891 | YRCF | 143069 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203892 | YRCF | 143070 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203893 | YRCF | 143071 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203894 | YRCF | 143072 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203895 | YRCF | 143073 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203896 | YRCF | 143074 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203897 | YRCF | 143075 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203898 | YRCF | 143076 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203899 | YRCF | 143077 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203900 | YRCF | 143078 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203901 | YRCF | 143079 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203902 | YRCF | 143080 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203903 | YRCF | 143081 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203904 | YRCF | 143082 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203905 | YRCF | 143083 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203906 | YRCF | 143084 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203907 | YRCF | 143085 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203908 | YRCF | 143086 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203909 | YRCF | 143087 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203910 | YRCF | 143088 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203911 | YRCF | 143089 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203912 | YRCF | 143090 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203913 | YRCF | 143091 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203914 | YRCF | 143092 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203915 | YRCF | 143093 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203916 | YRCF | 143094 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203917 | YRCF | 143095 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203918 | YRCF | 143096 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203919 | YRCF | 143097 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203920 | YRCF | 143098 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203921 | YRCF | 143099 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203922 | YRCF | 143100 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203923 | YRCF | 143101 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203924 | YRCF | 143102 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203925 | YRCF | 143103 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203926 | YRCF | 143104 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203927 | YRCF | 143105 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203928 | YRCF | 143106 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203929 | YRCF | 143107 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203930 | YRCF | 143108 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203931 | YRCF | 143109 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203932 | YRCF | 143110 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203933 | YRCF | 143111 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203934 | YRCF | 143112 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203935 | YRCF | 143113 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203936 | YRCF | 143114 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203937 | YRCF | 143115 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203938 | YRCF | 143116 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203939 | YRCF | 143117 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203940 | YRCF | 143118 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203941 | YRCF | 143119 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203942 | YRCF | 143120 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203943 | YRCF | 143121 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203944 | YRCF | 143122 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203945 | YRCF | 143123 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203946 | YRCF | 143124 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203947 | YRCF | 143125 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203948 | YRCF | 143126 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203949 | YRCF | 143127 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203950 | YRCF | 143128 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203951 | YRCF | 143129 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203952 | YRCF | 143130 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203953 | YRCF | 143131 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203954 | YRCF | 143132 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203955 | YRCF | 143133 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203956 | YRCF | 143134 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203957 | YRCF | 143135 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203958 | YRCF | 143136 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC2814NM203959 | YRCF | 143137 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VC2810NM203960 | YRCF | 143138 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203961 | YRCF | 143139 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203962 | YRCF | 143140 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203963 | YRCF | 143141 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203964 | YRCF | 143142 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203965 | YRCF | 143143 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203966 | YRCF | 143144 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203967 | YRCF | 143145 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203968 | YRCF | 143146 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203969 | YRCF | 143147 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203970 | YRCF | 143148 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203971 | YRCF | 143149 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203972 | YRCF | 143150 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203973 | YRCF | 143151 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203974 | YRCF | 143152 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203975 | YRCF | 143153 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203976 | YRCF | 143154 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203977 | YRCF | 143155 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203978 | YRCF | 143156 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203979 | YRCF | 143157 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203980 | YRCF | 143158 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203981 | YRCF | 143159 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203982 | YRCF | 143160 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203983 | YRCF | 143161 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203984 | YRCF | 143162 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203985 | YRCF | 143163 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM203986 | YRCF | 143164 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203987 | YRCF | 143165 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203988 | YRCF | 143166 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203989 | YRCF | 143167 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM203990 | YRCF | 143168 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM203991 | YRCF | 143169 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM203992 | YRCF | 143170 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM203993 | YRCF | 143171 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM203994 | YRCF | 143172 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM203995 | YRCF | 143173 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM203996 | YRCF | 143174 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM203997 | YRCF | 143175 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM203998 | YRCF | 143176 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM203999 | YRCF | 143177 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204000 | YRCF | 143178 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204001 | YRCF | 143179 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204002 | YRCF | 143180 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204003 | YRCF | 143181 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204004 | YRCF | 143182 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204005 | YRCF | 143183 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204006 | YRCF | 143184 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204007 | YRCF | 143185 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204008 | YRCF | 143186 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204009 | YRCF | 143187 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204010 | YRCF | 143188 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204011 | YRCF | 143189 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204012 | YRCF | 143190 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204013 | YRCF | 143191 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204014 | YRCF | 143192 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204015 | YRCF | 143193 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204016 | YRCF | 143194 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204017 | YRCF | 143195 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204018 | YRCF | 143196 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204019 | YRCF | 143197 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204020 | YRCF | 143198 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204021 | YRCF | 143199 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204022 | YRCF | 143200 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204023 | YRCF | 143201 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204024 | YRCF | 143202 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204025 | YRCF | 143203 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204026 | YRCF | 143204 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204027 | YRCF | 143205 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204028 | YRCF | 143206 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204029 | YRCF | 143207 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204030 | YRCF | 143208 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204031 | YRCF | 143209 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204032 | YRCF | 143210 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204033 | YRCF | 143211 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC2811NM204034 | YRCF | 143212 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VC2813NM204035 | YRCF | 143213 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204036 | YRCF | 143214 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204037 | YRCF | 143215 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204038 | YRCF | 143216 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204039 | YRCF | 143217 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204040 | YRCF | 143218 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204041 | YRCF | 143219 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204042 | YRCF | 143220 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204043 | YRCF | 143221 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814XNM204044 | YRCF | 143222 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204045 | YRCF | 143223 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204046 | YRCF | 143224 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204047 | YRCF | 143225 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204048 | YRCF | 143226 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204049 | YRCF | 143227 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204050 | YRCF | 143228 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204051 | YRCF | 143229 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204052 | YRCF | 143230 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204053 | YRCF | 143231 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204054 | YRCF | 143232 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204055 | YRCF | 143233 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204056 | YRCF | 143234 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204057 | YRCF | 143235 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204059 | YRCF | 143237 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204060 | YRCF | 143238 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814XNM204061 | YRCF | 143239 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204062 | YRCF | 143240 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204063 | YRCF | 143241 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204064 | YRCF | 143242 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204065 | YRCF | 143243 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204066 | YRCF | 143244 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204067 | YRCF | 143245 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204068 | YRCF | 143246 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204069 | YRCF | 143247 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204070 | YRCF | 143248 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204071 | YRCF | 143249 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204072 | YRCF | 143250 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204073 | YRCF | 143251 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204074 | YRCF | 143252 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814XNM204075 | YRCF | 143253 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204076 | YRCF | 143254 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204077 | YRCF | 143255 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204078 | YRCF | 143256 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204079 | YRCF | 143257 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204080 | YRCF | 143258 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204081 | YRCF | 143259 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204082 | YRCF | 143260 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204083 | YRCF | 143261 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204084 | YRCF | 143262 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204085 | YRCF | 143263 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204086 | YRCF | 143264 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204087 | YRCF | 143265 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204088 | YRCF | 143266 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204089 | YRCF | 143267 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204090 | YRCF | 143268 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204091 | YRCF | 143269 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204092 | YRCF | 143270 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204093 | YRCF | 143271 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204094 | YRCF | 143272 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204095 | YRCF | 143273 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204096 | YRCF | 143274 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204097 | YRCF | 143275 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204098 | YRCF | 143276 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204099 | YRCF | 143277 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204100 | YRCF | 143278 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204101 | YRCF | 143279 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204102 | YRCF | 143280 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204103 | YRCF | 143281 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204104 | YRCF | 143282 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204105 | YRCF | 143283 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204106 | YRCF | 143284 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204107 | YRCF | 143285 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204108 | YRCF | 143286 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204109 | YRCF | 143287 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2812NM204110 | YRCF | 143288 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204111 | YRCF | 143289 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204112 | YRCF | 143290 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204113 | YRCF | 143291 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204114 | YRCF | 143292 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204115 | YRCF | 143293 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204116 | YRCF | 143294 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204117 | YRCF | 143295 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204118 | YRCF | 143296 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204119 | YRCF | 143297 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204120 | YRCF | 143298 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204121 | YRCF | 143299 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204122 | YRCF | 143300 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204123 | YRCF | 143301 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204124 | YRCF | 143302 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204125 | YRCF | 143303 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204126 | YRCF | 143304 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204127 | YRCF | 143305 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204128 | YRCF | 143306 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204129 | YRCF | 143307 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204130 | YRCF | 143308 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204131 | YRCF | 143309 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204132 | YRCF | 143310 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204133 | YRCF | 143311 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204134 | YRCF | 143312 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204135 | YRCF | 143313 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204136 | YRCF | 143314 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204137 | YRCF | 143315 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204138 | YRCF | 143316 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204139 | YRCF | 143317 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204140 | YRCF | 143318 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204141 | YRCF | 143319 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204142 | YRCF | 143320 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204143 | YRCF | 143321 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204144 | YRCF | 143322 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204145 | YRCF | 143323 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204146 | YRCF | 143324 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204147 | YRCF | 143325 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204148 | YRCF | 143326 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204149 | YRCF | 143327 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204150 | YRCF | 143328 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204151 | YRCF | 143329 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204152 | YRCF | 143330 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204153 | YRCF | 143331 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204154 | YRCF | 143332 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204155 | YRCF | 143333 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204156 | YRCF | 143334 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204157 | YRCF | 143335 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204158 | YRCF | 143336 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204159 | YRCF | 143337 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204160 | YRCF | 143338 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204161 | YRCF | 143339 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204162 | YRCF | 143340 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204163 | YRCF | 143341 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204164 | YRCF | 143342 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204165 | YRCF | 143343 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204166 | YRCF | 143344 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204167 | YRCF | 143345 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204168 | YRCF | 143346 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204169 | YRCF | 143347 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204170 | YRCF | 143348 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204171 | YRCF | 143349 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204172 | YRCF | 143350 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204173 | YRCF | 143351 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204174 | YRCF | 143352 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204175 | YRCF | 143353 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204176 | YRCF | 143354 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204177 | YRCF | 143355 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204178 | YRCF | 143356 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204179 | YRCF | 143357 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204180 | YRCF | 143358 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204181 | YRCF | 143359 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204182 | YRCF | 143360 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204183 | YRCF | 143361 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204184 | YRCF | 143362 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC2810NM204185 | YRCF | 143363 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204186 | YRCF | 143364 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204187 | YRCF | 143365 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204188 | YRCF | 143366 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204189 | YRCF | 143367 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204190 | YRCF | 143368 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204191 | YRCF | 143369 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204192 | YRCF | 143370 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204193 | YRCF | 143371 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204194 | YRCF | 143372 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204195 | YRCF | 143373 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204196 | YRCF | 143374 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204197 | YRCF | 143375 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204198 | YRCF | 143376 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204199 | YRCF | 143377 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204200 | YRCF | 143378 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204201 | YRCF | 143379 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204202 | YRCF | 143380 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204203 | YRCF | 143381 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204204 | YRCF | 143382 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204205 | YRCF | 143383 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204206 | YRCF | 143384 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204207 | YRCF | 143385 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204208 | YRCF | 143386 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204209 | YRCF | 143387 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204210 | YRCF | 143388 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204211 | YRCF | 143389 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204212 | YRCF | 143390 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204213 | YRCF | 143391 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204214 | YRCF | 143392 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204215 | YRCF | 143393 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204216 | YRCF | 143394 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204217 | YRCF | 143395 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204218 | YRCF | 143396 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204219 | YRCF | 143397 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204220 | YRCF | 143398 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204221 | YRCF | 143399 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204222 | YRCF | 143400 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204223 | YRCF | 143401 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204224 | YRCF | 143402 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204225 | YRCF | 143403 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204226 | YRCF | 143404 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204227 | YRCF | 143405 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204228 | YRCF | 143406 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204229 | YRCF | 143407 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204230 | YRCF | 143408 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204231 | YRCF | 143409 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204232 | YRCF | 143410 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204233 | YRCF | 143411 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204234 | YRCF | 143412 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204235 | YRCF | 143413 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204236 | YRCF | 143414 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204237 | YRCF | 143415 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204238 | YRCF | 143416 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204239 | YRCF | 143417 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204240 | YRCF | 143418 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204241 | YRCF | 143419 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204242 | YRCF | 143420 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204243 | YRCF | 143421 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204244 | YRCF | 143422 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204245 | YRCF | 143423 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204246 | YRCF | 143424 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204247 | YRCF | 143425 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204248 | YRCF | 143426 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204249 | YRCF | 143427 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204250 | YRCF | 143428 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204251 | YRCF | 143429 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204252 | YRCF | 143430 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204253 | YRCF | 143431 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204254 | YRCF | 143432 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204255 | YRCF | 143433 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2818NM204256 | YRCF | 143434 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC281XNM204257 | YRCF | 143435 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204258 | YRCF | 143436 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204259 | YRCF | 143437 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VC281XNM204260 | YRCF | 143438 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2811NM204261 | YRCF | 143439 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2813NM204262 | YRCF | 143440 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2815NM204263 | YRCF | 143441 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2817NM204264 | YRCF | 143442 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2819NM204265 | YRCF | 143443 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2810NM204266 | YRCF | 143444 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204267 | YRCF | 143445 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204268 | YRCF | 143446 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2816NM204269 | YRCF | 143447 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2812NM204270 | YRCF | 143448 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC2814NM204271 | YRCF | 143449 | TRAILER | IN | IN | 1 | VANGUARD |
| 1JJV281D6NL301238 | YRCF | 143464 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301239 | YRCF | 143465 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301240 | YRCF | 143466 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301241 | YRCF | 143467 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301242 | YRCF | 143468 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301243 | YRCF | 143469 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301244 | YRCF | 143470 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301245 | YRCF | 143471 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301246 | YRCF | 143472 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301247 | YRCF | 143473 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301248 | YRCF | 143474 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301249 | YRCF | 143475 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301250 | YRCF | 143476 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301251 | YRCF | 143477 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301252 | YRCF | 143478 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301253 | YRCF | 143479 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301254 | YRCF | 143480 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301255 | YRCF | 143481 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301256 | YRCF | 143482 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301257 | YRCF | 143483 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301258 | YRCF | 143484 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301259 | YRCF | 143485 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301260 | YRCF | 143486 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301261 | YRCF | 143487 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301262 | YRCF | 143488 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301263 | YRCF | 143489 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301264 | YRCF | 143490 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301265 | YRCF | 143491 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301266 | YRCF | 143492 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301267 | YRCF | 143493 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301268 | YRCF | 143494 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301269 | YRCF | 143495 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301270 | YRCF | 143496 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301271 | YRCF | 143497 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301272 | YRCF | 143498 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301273 | YRCF | 143499 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301274 | YRCF | 143500 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301275 | YRCF | 143501 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301276 | YRCF | 143502 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301277 | YRCF | 143503 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301278 | YRCF | 143504 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301279 | YRCF | 143505 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301280 | YRCF | 143506 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301281 | YRCF | 143507 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301282 | YRCF | 143508 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301283 | YRCF | 143509 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301284 | YRCF | 143510 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301285 | YRCF | 143511 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301286 | YRCF | 143512 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301287 | YRCF | 143513 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301288 | YRCF | 143514 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301289 | YRCF | 143515 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301290 | YRCF | 143516 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301291 | YRCF | 143517 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301292 | YRCF | 143518 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301293 | YRCF | 143519 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301294 | YRCF | 143520 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301295 | YRCF | 143521 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301296 | YRCF | 143522 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301297 | YRCF | 143523 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301298 | YRCF | 143524 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301299 | YRCF | 143525 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301300 | YRCF | 143526 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D9NL301301 | YRCF | 143527 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301302 | YRCF | 143528 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301303 | YRCF | 143529 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301304 | YRCF | 143530 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301305 | YRCF | 143531 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301306 | YRCF | 143532 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301307 | YRCF | 143533 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301308 | YRCF | 143534 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301309 | YRCF | 143535 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301310 | YRCF | 143536 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301311 | YRCF | 143537 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301312 | YRCF | 143538 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301313 | YRCF | 143539 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301314 | YRCF | 143540 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301315 | YRCF | 143541 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301316 | YRCF | 143542 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301317 | YRCF | 143543 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301318 | YRCF | 143544 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301319 | YRCF | 143545 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301320 | YRCF | 143546 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301321 | YRCF | 143547 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301322 | YRCF | 143548 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301323 | YRCF | 143549 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301324 | YRCF | 143550 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301325 | YRCF | 143551 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301326 | YRCF | 143552 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301327 | YRCF | 143553 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301328 | YRCF | 143554 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301329 | YRCF | 143555 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301330 | YRCF | 143556 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301331 | YRCF | 143557 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301332 | YRCF | 143558 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301333 | YRCF | 143559 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301334 | YRCF | 143560 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301335 | YRCF | 143561 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301336 | YRCF | 143562 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301337 | YRCF | 143563 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301338 | YRCF | 143564 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301339 | YRCF | 143565 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301340 | YRCF | 143566 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301341 | YRCF | 143567 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301342 | YRCF | 143568 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301343 | YRCF | 143569 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301344 | YRCF | 143570 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301345 | YRCF | 143571 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301346 | YRCF | 143572 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301347 | YRCF | 143573 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301348 | YRCF | 143574 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301349 | YRCF | 143575 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301350 | YRCF | 143576 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301351 | YRCF | 143577 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301352 | YRCF | 143578 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301353 | YRCF | 143579 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301354 | YRCF | 143580 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301355 | YRCF | 143581 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301356 | YRCF | 143582 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301357 | YRCF | 143583 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301358 | YRCF | 143584 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301359 | YRCF | 143585 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301360 | YRCF | 143586 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301361 | YRCF | 143587 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301362 | YRCF | 143588 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301363 | YRCF | 143589 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301364 | YRCF | 143590 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301365 | YRCF | 143591 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301366 | YRCF | 143592 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301367 | YRCF | 143593 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301368 | YRCF | 143594 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301369 | YRCF | 143595 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301370 | YRCF | 143596 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301371 | YRCF | 143597 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301372 | YRCF | 143598 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301373 | YRCF | 143599 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301374 | YRCF | 143600 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301375 | YRCF | 143601 | TRAILER | IN | IN | 1 | WABASH |

| 1JJV281D7NL301376 | YRCF | 143602 | TRAILER | IN | IN | 1 | WABASH |
|---|---|---|---|---|---|---|---|
| 1JJV281D9NL301377 | YRCF | 143603 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301378 | YRCF | 143604 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301379 | YRCF | 143605 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301380 | YRCF | 143606 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301381 | YRCF | 143607 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301382 | YRCF | 143608 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301383 | YRCF | 143609 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301384 | YRCF | 143610 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301385 | YRCF | 143611 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301386 | YRCF | 143612 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301387 | YRCF | 143613 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301388 | YRCF | 143614 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301389 | YRCF | 143615 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301390 | YRCF | 143616 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301391 | YRCF | 143617 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301392 | YRCF | 143618 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301393 | YRCF | 143619 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301394 | YRCF | 143620 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301395 | YRCF | 143621 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301396 | YRCF | 143622 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301397 | YRCF | 143623 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301398 | YRCF | 143624 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301399 | YRCF | 143625 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301400 | YRCF | 143626 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301401 | YRCF | 143627 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301402 | YRCF | 143628 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301403 | YRCF | 143629 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301404 | YRCF | 143630 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301405 | YRCF | 143631 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301406 | YRCF | 143632 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301407 | YRCF | 143633 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301408 | YRCF | 143634 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301409 | YRCF | 143635 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301410 | YRCF | 143636 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301411 | YRCF | 143637 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301412 | YRCF | 143638 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301413 | YRCF | 143639 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301414 | YRCF | 143640 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301415 | YRCF | 143641 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301416 | YRCF | 143642 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301417 | YRCF | 143643 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301418 | YRCF | 143644 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301419 | YRCF | 143645 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301420 | YRCF | 143646 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301421 | YRCF | 143647 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301422 | YRCF | 143648 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301423 | YRCF | 143649 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301424 | YRCF | 143650 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301425 | YRCF | 143651 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301426 | YRCF | 143652 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301427 | YRCF | 143653 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301428 | YRCF | 143654 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301429 | YRCF | 143655 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301430 | YRCF | 143656 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301431 | YRCF | 143657 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301432 | YRCF | 143658 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301433 | YRCF | 143659 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301434 | YRCF | 143660 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301435 | YRCF | 143661 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301436 | YRCF | 143662 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301437 | YRCF | 143663 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301438 | YRCF | 143664 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301439 | YRCF | 143665 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301440 | YRCF | 143666 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301441 | YRCF | 143667 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301442 | YRCF | 143668 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301443 | YRCF | 143669 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301444 | YRCF | 143670 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301445 | YRCF | 143671 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301446 | YRCF | 143672 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301447 | YRCF | 143673 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301448 | YRCF | 143674 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301449 | YRCF | 143675 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301450 | YRCF | 143676 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D6NL301451 | YRCF | 143677 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301452 | YRCF | 143678 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301453 | YRCF | 143679 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301454 | YRCF | 143680 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301455 | YRCF | 143681 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301456 | YRCF | 143682 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301457 | YRCF | 143683 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301458 | YRCF | 143684 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301459 | YRCF | 143685 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301460 | YRCF | 143686 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301461 | YRCF | 143687 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301462 | YRCF | 143688 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301463 | YRCF | 143689 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301464 | YRCF | 143690 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301465 | YRCF | 143691 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301466 | YRCF | 143692 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301467 | YRCF | 143693 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301468 | YRCF | 143694 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301469 | YRCF | 143695 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301470 | YRCF | 143696 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301471 | YRCF | 143697 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301472 | YRCF | 143698 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301473 | YRCF | 143699 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301474 | YRCF | 143700 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301475 | YRCF | 143701 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301476 | YRCF | 143702 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301477 | YRCF | 143703 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301478 | YRCF | 143704 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301479 | YRCF | 143705 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301480 | YRCF | 143706 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301482 | YRCF | 143708 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301483 | YRCF | 143709 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301484 | YRCF | 143710 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301485 | YRCF | 143711 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301486 | YRCF | 143712 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301487 | YRCF | 143713 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301488 | YRCF | 143714 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301489 | YRCF | 143715 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301490 | YRCF | 143716 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301491 | YRCF | 143717 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301492 | YRCF | 143718 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301493 | YRCF | 143719 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301494 | YRCF | 143720 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301495 | YRCF | 143721 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301496 | YRCF | 143722 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301497 | YRCF | 143723 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301498 | YRCF | 143724 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301499 | YRCF | 143725 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301500 | YRCF | 143726 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301501 | YRCF | 143727 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301502 | YRCF | 143728 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301503 | YRCF | 143729 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301504 | YRCF | 143730 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301505 | YRCF | 143731 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301506 | YRCF | 143732 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301507 | YRCF | 143733 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301508 | YRCF | 143734 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301509 | YRCF | 143735 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301510 | YRCF | 143736 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301511 | YRCF | 143737 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301512 | YRCF | 143738 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301513 | YRCF | 143739 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301514 | YRCF | 143740 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301515 | YRCF | 143741 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301516 | YRCF | 143742 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301517 | YRCF | 143743 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301518 | YRCF | 143744 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301519 | YRCF | 143745 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301520 | YRCF | 143746 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301521 | YRCF | 143747 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301522 | YRCF | 143748 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301523 | YRCF | 143749 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301524 | YRCF | 143750 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301525 | YRCF | 143751 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301526 | YRCF | 143752 | TRAILER | IN | IN | 1 | WABASH |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1JJV281D2NL301527 | YRCF | 143753 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301528 | YRCF | 143754 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301529 | YRCF | 143755 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301530 | YRCF | 143756 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D4NL301531 | YRCF | 143757 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D6NL301532 | YRCF | 143758 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D8NL301533 | YRCF | 143759 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281DXNL301534 | YRCF | 143760 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D1NL301535 | YRCF | 143761 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D3NL301536 | YRCF | 143762 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301537 | YRCF | 143763 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301538 | YRCF | 143764 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301539 | YRCF | 143765 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D5NL301540 | YRCF | 143766 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D7NL301541 | YRCF | 143767 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301542 | YRCF | 143768 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301587 | YRCF | 143769 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D0NL301588 | YRCF | 143770 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D2NL301589 | YRCF | 143771 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV281D9NL301590 | YRCF | 143772 | TRAILER | IN | IN | 1 | WABASH |
| 3H3V281CXHT286013 | YRCF | 144441 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT286015 | YRCF | 144442 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C6HT286025 | YRCF | 144443 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281CXHT286027 | YRCF | 144444 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286150 | YRCF | 144449 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286181 | YRCF | 144450 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286200 | YRCF | 144451 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286231 | YRCF | 144452 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286234 | YRCF | 144454 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT286258 | YRCF | 144455 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286277 | YRCF | 144456 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286315 | YRCF | 144457 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281CXHT286352 | YRCF | 144458 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT286401 | YRCF | 144464 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C2HT286409 | YRCF | 144465 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT286435 | YRCF | 144466 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281CXHT286447 | YRCF | 144467 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286455 | YRCF | 144469 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286456 | YRCF | 144470 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C9HT286472 | YRCF | 144471 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT286477 | YRCF | 144472 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286490 | YRCF | 144473 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT286496 | YRCF | 144474 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C2HT286510 | YRCF | 144476 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT286520 | YRCF | 144477 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286571 | YRCF | 144479 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286599 | YRCF | 144482 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT286600 | YRCF | 144483 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT286664 | YRCF | 144485 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C4HT286668 | YRCF | 144486 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT286759 | YRCF | 144490 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT286761 | YRCF | 144491 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT286776 | YRCF | 144493 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT286818 | YRCF | 144494 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT286821 | YRCF | 144496 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C3HT286905 | YRCF | 144497 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281CXHT286917 | YRCF | 144498 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT286949 | YRCF | 144499 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT286954 | YRCF | 144500 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C0HT286957 | YRCF | 144501 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT286997 | YRCF | 144503 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT287019 | YRCF | 144505 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT287079 | YRCF | 144509 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C5HT287098 | YRCF | 144510 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT287113 | YRCF | 144512 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C2HT287141 | YRCF | 144513 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C8HT287225 | YRCF | 144516 | TRAILER | IN | IN | 1 | HYUNDAI |
| 1DW1A2817HS716804 | YRCF | 144519 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HS716819 | YRCF | 144520 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HS716820 | YRCF | 144521 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HS716825 | YRCF | 144522 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHS716862 | YRCF | 144525 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HS716865 | YRCF | 144527 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HS716877 | YRCF | 144529 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HS716900 | YRCF | 144530 | TRAILER | IN | IN | 1 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A2813HS716914 | YRCF | 144531 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HS716942 | YRCF | 144533 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719001 | YRCF | 144534 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719005 | YRCF | 144535 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB719006 | YRCF | 144536 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB719028 | YRCF | 144538 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719047 | YRCF | 144541 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719052 | YRCF | 144542 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719072 | YRCF | 144544 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719133 | YRCF | 144546 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719141 | YRCF | 144547 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719145 | YRCF | 144549 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719167 | YRCF | 144551 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB719174 | YRCF | 144552 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719208 | YRCF | 144553 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719212 | YRCF | 144554 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB719258 | YRCF | 144555 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB719278 | YRCF | 144558 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719279 | YRCF | 144559 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719282 | YRCF | 144560 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB719314 | YRCF | 144561 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719341 | YRCF | 144562 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719346 | YRCF | 144563 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB719356 | YRCF | 144564 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719385 | YRCF | 144565 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719400 | YRCF | 144567 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719419 | YRCF | 144569 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719447 | YRCF | 144571 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719452 | YRCF | 144572 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719456 | YRCF | 144573 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719470 | YRCF | 144574 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719481 | YRCF | 144575 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719498 | YRCF | 144576 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB719566 | YRCF | 144578 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719598 | YRCF | 144579 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719601 | YRCF | 144580 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719639 | YRCF | 144582 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719686 | YRCF | 144584 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719688 | YRCF | 144585 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719697 | YRCF | 144586 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719702 | YRCF | 144587 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719706 | YRCF | 144588 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB719761 | YRCF | 144590 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB719797 | YRCF | 144591 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719800 | YRCF | 144592 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719822 | YRCF | 144593 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB719824 | YRCF | 144594 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719889 | YRCF | 144596 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719901 | YRCF | 144597 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719917 | YRCF | 144598 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB719942 | YRCF | 144599 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719948 | YRCF | 144600 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB719951 | YRCF | 144601 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB719957 | YRCF | 144602 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB719981 | YRCF | 144604 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB720006 | YRCF | 144606 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB720042 | YRCF | 144609 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB720051 | YRCF | 144610 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2817HB720058 | YRCF | 144611 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB720065 | YRCF | 144612 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2810HB720077 | YRCF | 144613 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB720098 | YRCF | 144615 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A281XHB720118 | YRCF | 144617 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB720137 | YRCF | 144619 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB720146 | YRCF | 144620 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB720150 | YRCF | 144621 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB720170 | YRCF | 144622 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB720200 | YRCF | 144623 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB720230 | YRCF | 144624 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2818HB720232 | YRCF | 144625 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB720238 | YRCF | 144626 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2816HB720262 | YRCF | 144628 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB720266 | YRCF | 144629 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB720296 | YRCF | 144631 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2815HB720298 | YRCF | 144632 | TRAILER | IN | IN | 1 | STOUGHTON |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1DW1A2814HB720325 | YRCF | 144634 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2811HB720332 | YRCF | 144635 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2813HB720347 | YRCF | 144636 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2812HB720355 | YRCF | 144638 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2814HB720390 | YRCF | 144641 | TRAILER | IN | IN | 1 | STOUGHTON |
| 1DW1A2819HB719848 | YRCF | 144643 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT287082 | YRCF | 144645 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C1HT286790 | YRCF | 144646 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V281C7HT287068 | YRCF | 144648 | TRAILER | IN | IN | 1 | HYUNDAI |
| 5V8VC2815PM309498 | YRCF | 144726 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326MM109291 | YRCF | 531518 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328MM109292 | YRCF | 531519 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XMM109293 | YRCF | 531520 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321MM109294 | YRCF | 531521 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323MM109295 | YRCF | 531522 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325MM109296 | YRCF | 531523 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327MM109297 | YRCF | 531524 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329MM109298 | YRCF | 531525 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320MM109299 | YRCF | 531526 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323MM109300 | YRCF | 531527 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325MM109301 | YRCF | 531528 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327MM109302 | YRCF | 531529 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329MM109303 | YRCF | 531530 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320MM109304 | YRCF | 531531 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322MM109305 | YRCF | 531532 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324MM109306 | YRCF | 531533 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326MM109307 | YRCF | 531534 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328MM109308 | YRCF | 531535 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XMM109309 | YRCF | 531536 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326MM109310 | YRCF | 531537 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328MM109311 | YRCF | 531538 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XMM109312 | YRCF | 531539 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321MM109313 | YRCF | 531540 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323MM109314 | YRCF | 531541 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325MM109315 | YRCF | 531542 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327MM109316 | YRCF | 531543 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329MM109317 | YRCF | 531544 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320MM109318 | YRCF | 531545 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322MM109319 | YRCF | 531546 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329MM109320 | YRCF | 531547 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320MM109321 | YRCF | 531548 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322MM109322 | YRCF | 531549 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324MM109323 | YRCF | 531550 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326MM109324 | YRCF | 531551 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328MM109325 | YRCF | 531552 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XMM109326 | YRCF | 531553 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321MM109327 | YRCF | 531554 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323MM109328 | YRCF | 531555 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325MM109329 | YRCF | 531556 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321MM109330 | YRCF | 531557 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323MM109331 | YRCF | 531558 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325MM109332 | YRCF | 531559 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327MM109333 | YRCF | 531560 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329MM109334 | YRCF | 531561 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320MM109335 | YRCF | 531562 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322MM109336 | YRCF | 531563 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324MM109337 | YRCF | 531564 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326MM109338 | YRCF | 531565 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204609 | YRCF | 531566 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204610 | YRCF | 531567 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204611 | YRCF | 531568 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204612 | YRCF | 531569 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204614 | YRCF | 531571 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204615 | YRCF | 531572 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204616 | YRCF | 531573 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204617 | YRCF | 531574 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204618 | YRCF | 531575 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325NM204619 | YRCF | 531576 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204621 | YRCF | 531578 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325NM204622 | YRCF | 531579 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204623 | YRCF | 531580 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204624 | YRCF | 531581 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204625 | YRCF | 531582 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204626 | YRCF | 531583 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204627 | YRCF | 531584 | TRAILER | IN | IN | 1 | VANGUARD |

| 5V8VC5326NM204628 | YRCF | 531585 | TRAILER | IN | IN | 1 | VANGUARD |
|---|---|---|---|---|---|---|---|
| 5V8VC5328NM204629 | YRCF | 531586 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324XM204630 | YRCF | 531587 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204631 | YRCF | 531588 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204632 | YRCF | 531589 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204633 | YRCF | 531590 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204634 | YRCF | 531591 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204635 | YRCF | 531592 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325NM204636 | YRCF | 531593 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204637 | YRCF | 531594 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204638 | YRCF | 531595 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204639 | YRCF | 531596 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204640 | YRCF | 531597 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204641 | YRCF | 531598 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204642 | YRCF | 531599 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204643 | YRCF | 531600 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204644 | YRCF | 531601 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204645 | YRCF | 531602 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204646 | YRCF | 531603 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204647 | YRCF | 531604 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204648 | YRCF | 531605 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204649 | YRCF | 531606 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204650 | YRCF | 531607 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204651 | YRCF | 531608 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204652 | YRCF | 531609 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204654 | YRCF | 531611 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204655 | YRCF | 531612 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204656 | YRCF | 531613 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204657 | YRCF | 531614 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204658 | YRCF | 531615 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204659 | YRCF | 531616 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204660 | YRCF | 531617 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204661 | YRCF | 531618 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204662 | YRCF | 531619 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204663 | YRCF | 531620 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204664 | YRCF | 531621 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204665 | YRCF | 531622 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5323NM204666 | YRCF | 531623 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325NM204667 | YRCF | 531624 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5327NM204668 | YRCF | 531625 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204669 | YRCF | 531626 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5325NM204670 | YRCF | 531627 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5329NM204672 | YRCF | 531629 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5320NM204673 | YRCF | 531630 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5322NM204674 | YRCF | 531631 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5324NM204675 | YRCF | 531632 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5326NM204676 | YRCF | 531633 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204677 | YRCF | 531634 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC532XNM204678 | YRCF | 531635 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5321NM204679 | YRCF | 531636 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VC5328NM204680 | YRCF | 531637 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211026 | YRCF | 531638 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211027 | YRCF | 531639 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211028 | YRCF | 531640 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211029 | YRCF | 531641 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211030 | YRCF | 531642 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211031 | YRCF | 531643 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211032 | YRCF | 531644 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211033 | YRCF | 531645 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211034 | YRCF | 531646 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211035 | YRCF | 531647 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211036 | YRCF | 531648 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211037 | YRCF | 531649 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211038 | YRCF | 531650 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211039 | YRCF | 531651 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211040 | YRCF | 531652 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211042 | YRCF | 531654 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211043 | YRCF | 531655 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211044 | YRCF | 531656 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211045 | YRCF | 531657 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211046 | YRCF | 531658 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211047 | YRCF | 531659 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211048 | YRCF | 531660 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211049 | YRCF | 531661 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211050 | YRCF | 531662 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5V8VA5324NM211051 | YRCF | 531663 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211052 | YRCF | 531664 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211053 | YRCF | 531665 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211054 | YRCF | 531666 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211055 | YRCF | 531667 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211056 | YRCF | 531668 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211057 | YRCF | 531669 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211058 | YRCF | 531670 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211059 | YRCF | 531671 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211060 | YRCF | 531672 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211061 | YRCF | 531673 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211062 | YRCF | 531674 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211063 | YRCF | 531675 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211064 | YRCF | 531676 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211065 | YRCF | 531677 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211066 | YRCF | 531678 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211067 | YRCF | 531679 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211068 | YRCF | 531680 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211069 | YRCF | 531681 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211070 | YRCF | 531682 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211071 | YRCF | 531683 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211072 | YRCF | 531684 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211073 | YRCF | 531685 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211074 | YRCF | 531686 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211075 | YRCF | 531687 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211076 | YRCF | 531688 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211077 | YRCF | 531689 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211078 | YRCF | 531690 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211079 | YRCF | 531691 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211080 | YRCF | 531692 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211081 | YRCF | 531693 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211082 | YRCF | 531694 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211083 | YRCF | 531695 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211084 | YRCF | 531696 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211085 | YRCF | 531697 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211086 | YRCF | 531698 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211087 | YRCF | 531699 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211088 | YRCF | 531700 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211089 | YRCF | 531701 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211090 | YRCF | 531702 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211091 | YRCF | 531703 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211092 | YRCF | 531704 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211093 | YRCF | 531705 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211094 | YRCF | 531706 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211095 | YRCF | 531707 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211096 | YRCF | 531708 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211097 | YRCF | 531709 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211098 | YRCF | 531710 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211099 | YRCF | 531711 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211100 | YRCF | 531712 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211101 | YRCF | 531713 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211102 | YRCF | 531714 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211103 | YRCF | 531715 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211104 | YRCF | 531716 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211105 | YRCF | 531717 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211106 | YRCF | 531718 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211107 | YRCF | 531719 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211108 | YRCF | 531720 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211109 | YRCF | 531721 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211110 | YRCF | 531722 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211111 | YRCF | 531723 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5329NM211112 | YRCF | 531724 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5320NM211113 | YRCF | 531725 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5322NM211114 | YRCF | 531726 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5324NM211115 | YRCF | 531727 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5326NM211116 | YRCF | 531728 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211117 | YRCF | 531729 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211118 | YRCF | 531730 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211119 | YRCF | 531731 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5328NM211120 | YRCF | 531732 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA532XNM211121 | YRCF | 531733 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5321NM211122 | YRCF | 531734 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5323NM211123 | YRCF | 531735 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5325NM211124 | YRCF | 531736 | TRAILER | IN | IN | 1 | VANGUARD |
| 5V8VA5327NM211125 | YRCF | 531737 | TRAILER | IN | IN | 1 | VANGUARD |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3H3V532C9LT557001 | YRCF | 531738 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C0LT557002 | YRCF | 531739 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C2LT557003 | YRCF | 531740 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C4LT557004 | YRCF | 531741 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C6LT557005 | YRCF | 531742 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C8LT557006 | YRCF | 531743 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532CXLT557007 | YRCF | 531744 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C1LT557008 | YRCF | 531745 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532C3LT557009 | YRCF | 531746 | TRAILER | IN | IN | 1 | HYUNDAI |
| 3H3V532CXLT557010 | YRCF | 531747 | TRAILER | IN | IN | 1 | HYUNDAI |
| 1JJV532D1EL755311 | YRCF | 531748 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D6EL793956 | YRCF | 531749 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D3EL793980 | YRCF | 531750 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D4EL793986 | YRCF | 531751 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL794004 | YRCF | 531752 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL793984 | YRCF | 531800 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL794996 | YRCF | 531801 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795008 | YRCF | 531802 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D1EL795324 | YRCF | 531803 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D8EL795398 | YRCF | 531804 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D0EL795685 | YRCF | 531805 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795753 | YRCF | 531806 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795894 | YRCF | 531807 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL795927 | YRCF | 531808 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL795963 | YRCF | 531809 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D9EL794454 | YRCF | 531810 | TRAILER | IN | IN | 1 | WABASH |
| 1JJV532D2EL794506 | YRCF | 531811 | TRAILER | IN | IN | 1 | WABASH |

## Schedule 7.01(b)

## Existing Liens

### New Penn Motor Express LLC

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Delaware Secretary of State | UCC 07/13/2023 | 2016 6882185 11/07/2019 | New Penn Motor Express LLC | Citizens Asset Finance, Inc. | Specified Equipment |
| Delaware Secretary of State | AMEND 07/13/2023 | 2016 7414715 11/30/2016 | New Penn Motor Express LLC | Citizens Asset Finance, Inc. | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 2021 4008711 05/24/2021 | | | Continuation. |

### USF Holland LLC

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Delaware Secretary of State | UCC 07/13/2023 | 2017 7745203 11/21/2017 | USF Holland LLC | Toyota Industries Commercial Finance, Inc. | Specified Equipment |
| Delaware Secretary of State | UCC 07/13/2023 | 2018 6785923 10/01/2018 | YRC Enterprise Services, Inc.; and USF Holland LLC | BOFI Federal Bank | Specified Equipment |
| Delaware Secretary of State | UCC 07/13/2023 | 2018 7222462 10/18/2018 | USF Holland LLC | Toyota Industries Commercial Finance, Inc. | Specified Equipment |
| Delaware Secretary of State | UCC 07/13/2023 | 2019 0051982 01/03/2019 | USF Holland LLC | Radius Bank | Specified Equipment |
| Michigan Department of State | UCC 06/30/2023 | 2012129194-0 09/11/12 | YRC, Inc. *originally filed under USF Holland LLC then amendment filed to change name to YRC, Inc. | Utica Leaseco, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20170609000402-3 06/09/2017 | | | Continuation. |
| Department of State, Michigan | CONT 06/30/2023 | 20220713000867-0 07/13/2022 | | | Continuation. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Michigan Department of State | UCC 06/30/2023 | 2014148016-1 10/14/14 | USF Holland Inc. | Harbor Capital Leasing, Inc.; NewStar Commercial Lease Funding I, LLC; NewStar Equipment Finance I, LLC; and Somerset Capital Group, Ltd | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20190715000284-7 07/15/2019 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 2016102457-5 07/22/16 | USF Holland Inc. | Investors Bank | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20210716000207-2 07/16/2021 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 2016105932-6 07/29/16 | USF Holland Inc. | Investors Bank | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20210716000207-2 07/16/2021 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180102000772-0 01/02/18 | USF Holland, Inc. | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20221130000186-2 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180102000779-3 01/02/18 | USF Holland, Inc. | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20221130000187-1 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180131000792-6 01/31/18 | USF Holland, LLC | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20230123000142-0 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180131000798-0 01/31/18 | USF Holland, LLC | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20230123000141-1 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180228000794-9 02/28/18 | USF Holland, LLC | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20230130000225-2 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20180228000835-5 02/28/18 | USF Holland, LLC | Nations Fund I, LLC | Specified Equipment |
| Department of State, Michigan | CONT 06/30/2023 | 20230130000224-3 11/30/2022 | | | Continuation. |
| Michigan Department of State | UCC 06/30/2023 | 20181217000485-5 12/17/2018 | USF Holland Inc. d/b/a Holland | Stoughton Trailers Acceptance Company, LLC | Specified Equipment |

**USF Reddaway Inc.**

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Oregon | UCC 07/07/2023 | 89759879 06/18/2013 | USF REDDAWAY INC. D/B/A REDDAWAY<br><br>7720 S.W. MOHAWK ST, BUILDING H TULATIN, OR 97062 | STOUGHTON TRAILERS ACCEPTANCE COMPANY, LLC<br><br>416 S. ACADEMY STREET STOUGHTON, WI 53589 | List of specific equipment. |
| Secretary of State, Oregon | CONT 07/07/2023 | 89759879-1 04/26/2018 | | | Continuation. |
| Oregon Secretary of State | UCC 07/07/2023 | 90322835 12/23/14 | USF Reddaway Inc. | Harbor Capital Leasing, Inc.; NewStar Commercial Lease Funding I, LLC; Wintrust Equipment Finance, a division of Wintrust Asset Finance Inc.; Somerset Capital Group, Ltd | Specified Equipment |
| Secretary of State, Oregon | CONT 07/07/2023 | 90322835-7 12/02/2019 | | | Continuation. |
| Oregon Secretary of State | UCC 07/07/2023 | 90902020 07/21/16 | USF Reddaway Inc. | Investors Bank | Specified Equipment |
| Secretary of State, Oregon | CONT 07/07/2023 | 90902020-2 07/14/2021 | | | Continuation. |
| Oregon Secretary of State | UCC 07/07/2023 | 91400010 12/12/17 | USF Reddaway Inc. | GrowthFunding Equipment Finance, a Division of People's Intermountain Bank; and Continental Bank | Specified Equipment |
| Oregon Secretary of State | UCC 07/07/2023 | 91488529 03/16/18 | USF Reddaway Inc. | Les Schwab Warehouse Center, Inc. | Specified Equipment |
| Secretary of State, Oregon | CONT 07/07/2023 | 91488529-1 02/22/2023 | | | Continuation. |

## YRC Inc.

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Delaware Secretary of State | UCC 07/13/2023 | 2012 2075648 05/30/12 | YRC, Inc. | Milestone Equipment Corporation | Specified Equipment |
| Delaware Secretary of State | UCC 08/18/2023 | 20171695441 03/15/2017 | | | Continuation. |
| Delaware Secretary of State | UCC 08/18/2023 | 20223775475 05/04/2022 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2012 2922427 07/30/12 | YRC, Inc. | Nations Fund I, Inc. | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 20174833585 07/21/2017 | | | Continuation. |
| Secretary of State, Delaware | CONT 07/13/2023 | 20223775467 05/04/2022 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2012 3001106 08/03/12 | YRC, Inc. | Milestone Equipment Corporation | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 20173795108 06/09/2017 | | | Continuation. |
| Secretary of State, Delaware | CONT 07/13/2023 | 20225851464 07/13/2022 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2012 3667005 09/13/12 | YRC, Inc. | PMC Financial Services Group, LLC | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 2017 3795090 06/09/2017 | | | Continuation. |
| Secretary of State, Delaware | CONT 07/13/2023 | 2022 5851472 07/13/2022 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2012 3592468 09/18/12 | YRC, Inc. | Utica Leaseco LLC as Collateral Agent | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 2017 3795116 06/09/2017 | | | Continuation. |
| Secretary of State, Delaware | CONT 07/13/2023 | 2022 5851456 07/13/2022 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2014 3154226 08/07/14 | YRC, Inc. | Susquehanna Commercial Finance, Inc. | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 2019 4587460 07/02/2019 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2015 3935433 09/08/15 | YRC Inc. | Somerset Capital Group, Ltd. and People's United Bank, National Association | Specified Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Delaware | CONT 07/13/2023 | 2020 4694123 07/08/2020 | | | Continuation. |
| Delaware Secretary of State | UCC 07/13/2023 | 2015 5388763 11/16/15 | YRC Inc. | HYG Financial Services, Inc. | Specified Equipment |
| Secretary of State, Delaware | CONT 07/13/2023 | 2020 5379393 08/05/2020 | | | Continuation. |
| Delaware Secretary of State | UCC-1 thru 07/17/19 | 2017 6640228 10/05/17 | YRC Inc. | HYG Financial Services, Inc. | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 6909402 06/01/12 | YRC, Inc. | Milestone Equipment Corporation | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72431898 03/15/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 118929231 05/04/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 6924781 07/31/12 | YRC, Inc. | Nations Fund I, Inc. | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72529030 07/21/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 118929249 05/04/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/13/2023 | 6926026 08/06/12 | YRC, Inc. | Nations Fund I, Inc. | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72499572 06/09/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 119105260 07/13/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/13/2023 | 2020 9242233 12/29/2020 | YRC, Inc. | Nations Fund I, Inc. | Specified Equipment |
| Kansas Secretary of State | UCC 07/13/2023 | 6909402 06/01/2012 | YRC, Inc. | Nations Fund I, Inc. | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72431898 03/15/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 118929231 05/04/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 6933816 09/07/12 | YRC Inc. | PMC Financial Services Group, LLC | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72499580 06/09/2017 | | | Continuation. |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Secretary of State, Kansas | CONT 07/18/2023 | 119108462 07/14/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 6936462 09/19/12 | YRC Inc. | Utica Leaseco LLC as Collateral Agent | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 72499598 06/09/2017 | | | Continuation. |
| Secretary of State, Kansas | CONT 07/18/2023 | 119105278 07/13/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 6999189 05/28/13 | YRC Inc. d/b/a YRC Freight | Stoughton Trailers Acceptance Company, LLC | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 114739689 03/20/2018 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 7185432 10/14/15 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 7189319 11/02/15 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 7202211 01/15/16 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 72631802 12/12/17 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 119424257 12/06/2022 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 72702223 03/14/18 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 119585115 02/15/2023 | | | Continuation. |
| Kansas Secretary of State | UCC 07/18/2023 | 72702249 03/14/18 | YRC Inc. | Nations Fund I, LLC | Specified Equipment |
| Secretary of State, Kansas | CONT 07/18/2023 | 119585123 02/15/2023 | | | Continuation. |
| Secretary of State, Delaware | UCC 07/13/2023 | 2020 9241912 12/29/2020 | YRC Inc. | Nations Fund I, LLC | Specific listed equipment. |
| Secretary of State, Delaware | UCC 07/13/2023 | 2020 9242126 12/29/2020 | YRC Inc. | Nations Fund I, LLC | Specific listed equipment. |
| Secretary of State, Delaware | UCC 07/13/2023 | 2020 9242233 12/29/2020 | YRC Inc. | Nations Fund I, LLC | Specific listed equipment. |

Fixture Filings

There are zero outstanding obligations with regard to the below fixture filings with JP Morgan Chase Bank, N.A.

| DEBTOR / MORTGAGOR | SECURED PARTY / MORTGAGEE | ADDRESS | CITY | STATE | ZIP CODE | FILE NUMBER |
|---|---|---|---|---|---|---|
| YRC Inc. | JP Morgan Chase Bank, National Association | 956 Hwy 190 West | Port Allen | LA | 70767 | UCC 61-2013000708 UCC 61-2018000807 UCC 61-2009000029 |
| YRC Inc. | JP Morgan Chase Bank, National Association | 88 E L Morgan Drive | Jackson | TN | 38305 | Book T2077, Page 1237 Instrument 18009857 UCC 09001332 |
| YRC Inc. | JP Morgan Chase Bank, National Association | 1212 Hilton Road | Knoxville | TN | 37921 | Instrument: 201808270013015 UCC 200902030047549 Instrument: 201309230019772 |
| YRC Inc. | JP Morgan Chase Bank, National Association | 2627 State Road | Bensalem | PA | 19020 | MTG 6779-1130 Instrument: 2011052988 |

<u>Deeds of Trust</u>

There are zero outstanding obligations with regard to the below Deeds of Trust with U.S. Bank, National Association.

| DEBTOR / MORTGAGOR | SECURED PARTY / BENEFICIARY | ADDRESS | CITY | STATE | ZIP CODE | FILE NUMBER |
|---|---|---|---|---|---|---|
| YRC Inc. | U.S. Bank, National Association | 3207 F Road, | Clifton | CO | 81520 | Bk. 5183, Pg. 867 Reception No. 2580267 |
| YRC Inc. | U.S. Bank, National Association | 614 Third Avenue | Kearney | NE | 68845 | Instrument No. 2011-5449 |

## YRC Enterprise Services, Inc.

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Delaware Secretary of State | UCC 07/13/2023 | 2017 8494637 12/22/17 | YRC Enterprise Services, Inc. | IBM Credit LLC | Specified Equipment |
| Delaware Secretary of State | UCC 07/13/2023 | 2018 6785923 10/01/18 | YRC Enterprise Services, Inc.; and USF Holland LLC | BOFI Federal Bank | Specified Equipment |
| Kansas Secretary of State | UCC 07/13/2023 | 72041705 09/09/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/13/2023 | 72051472 09/22/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/13/2023 | 72059715 10/02/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/13/2023 | 72068633 10/15/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Kansas Secretary of State | UCC 07/18/2023 | 72085629 11/10/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |
| Kansas Secretary of State | UCC 07/18/2023 | 72078376 10/30/15 | YRC Enterprise Services, Inc. | Nations Fund I, LLC | Specified Equipment |

## YRC Freight Canada Company

The following Liens listed below, plus such other Liens perfected by registration of PPSA financing statements (or hypothec registrations under the Register of Personal and Movable Real Rights in the Province of Quebec) in favour of any of the secured parties listed below (or their affiliates) for similar type Liens recorded in British Columbia:

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Alberta | PPSA 07/31/2023 | 20111103725 2020-NOV-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21020225190 2021-FEB-02 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21022213226 2021-FEB-22 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21031029157 2021-MAR-10 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051131925 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051134887 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051135361 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051136885 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051137343 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051137705 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21051138836 2021-MAY-11 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21052400340 2021-MAY-24 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 21052505382 2021-MAY-25 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Alberta | PPSA 07/31/2023 | 23072835626 2023-JUL-28 | YRC Freight Canada Company / Yellow YRC Freight Canada Company | C. Reeves Services Ltd. | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 588245M 11NOV2020 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 746680M 2FEB2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| British Columbia | PPSA 07/31/2023 | 782957M 22FEB2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 821447M 10MAR2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963570M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963581M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963583M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963584M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963587M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963593M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 963601M 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 989610M 25MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 989616M 25MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc | Specific Equipment |
| British Columbia | PPSA 07/31/2023 | 692652P 27JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 692653P 27JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 692654P 27JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 692655P 27JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693662P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693706P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693707P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693711P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693718P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693883P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693895P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 693942P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694190P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| British Columbia | PPSA 07/31/2023 | 694202P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694212P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694220P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694221P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694230P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694235P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| British Columbia | PPSA 07/31/2023 | 694242P 28JUL2023 | YRC Freight Canada Company | Burnaby Dieseltech Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312531404 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312531200 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312530602 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312530203 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312529906 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312529205 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312528608 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312527504 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312527300 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312526907 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312526800 31JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312481008 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312477108 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Manitoba | PPSA 07/31/2023 | 202312476004 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312475407 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312474800 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312458103 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312457603 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312457000 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312456305 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312456208 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312456100 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312455805 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312455503 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312454507 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312454000 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312453209 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312452903 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312450102 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312449805 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312449708 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312449104 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Manitoba | PPSA 07/31/2023 | 202312449007 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312448701 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312448507 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312448000 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312447209 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312445907 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202312444102 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202306703309 28APR2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202109158404 25MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202109158307 25MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108360501 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108360200 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108360005 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108359503 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108359309 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108359201 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202108358701 12MAY2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202104064207 10MAR2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202102897902 22FEB2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202101805400 02FEB2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Manitoba | PPSA 07/31/2023 | 202018842108 11NOV2020 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Manitoba | PPSA 07/31/2023 | 202312443807 28JUL2023 | YRC Freight Canada Company | Maxim Transportation Services Inc. | Repairs to specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302103074 11-NOV-2020 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302129395 02-FEB-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302135020 22-FEB-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302141155 10-MAR-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166539 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166542 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166546 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166547 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166548 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166550 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302166553 12-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302170518 25-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Saskatchewan | PPSA 07/31/2023 | 302170524 25-MAY-2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772749054 - 20210525 1007 1462 7076 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772749063 - 20210525 1007 1462 7077 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429473 - 20210512 1002 1462 2618 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429482 - 20210512 1002 1462 2619 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429491 - 20210512 1002 1462 2620 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429509 - 20210512 1002 1462 2621 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Ontario | PPSA 07/27/2023 | 772429518 - 20210512 1002 1462 2622 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429527 - 20210512 1002 1462 2623 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 772429536 - 20210512 1002 1462 2624 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 770485626 - 20210311 1003 1462 8520 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 770023179 - 20210222 1403 1462 2327 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 769625037 - 20210202 1704 1462 6641 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Ontario | PPSA 07/27/2023 | 767628711 - 20201112 1002 1462 9085 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Equipment, Other, Motor Vehicle Included<br><br>Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 33654807 11/11/2020 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 33993957 02/02/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34067280 02/22/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34151761 03/10/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482851 05/12/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482885 05/12/2023 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482919 05/12/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482935 05/12/2023 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482950 05/12/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482968 05/12/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34482976 05/12/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |

| JURISDICTION | FILING TYPE/ SEARCHED THRU | FILE NUMBER/ FILE DATE | DEBTOR | SECURED PARTY | COLLATERAL DESCRIPTION |
|---|---|---|---|---|---|
| Nova Scotia | PPSA 07/31/2023 | 34540518 05/25/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Nova Scotia | PPSA 07/31/2023 | 34540526 05/25/2021 | YRC Freight Canada Company | Penske Truck Leasing Canada Inc. | Specific Equipment |
| Quebec | There are 9 Reservations of ownerships registered in respect of specific equipment. There are 13 Rights resulting from a lease registered in respect of specific equipment. | | | | |

**Schedule 7.02(e)**

**Existing Investments**

8.  Included by reference are all owned Equity Interests set forth in <u>Schedule 5.11</u>.

9.  Shared Services Agreement, dated as of January 1, 2019, by and between YRC Freight Canada Company and YRC Inc., as in effect as of the Petition Date.

**Schedule 7.08**

**Transactions with Affiliates**

Included by reference are all transactions with affiliates provided for in the 10-K filed on February 9, 2023 under the section titled "Related Party Transactions", without giving effect to any amendments thereof after February 9, 2023.

**Schedule 7.09**

**Certain Contractual Obligations**

Included by reference are the contractual obligations expressly specified in the 10-Q filed on August 13, 2023 and the 10-K filed on February 9, 2023 by Yellow Corporation, in each case, as in effect on the Closing Date.

Exhibit C
to
Amended and Restated Credit Agreement

Amendment No. 4

**Exhibit D to Amended and Restated Credit Agreement**

[Attached]

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**INTERIM ORDER (I) AUTHORIZING
THE DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT
LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE
CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "DIP Motion")[2] of Yellow Corporation ("Yellow Corp") and each

of its above-captioned affiliates (collectively, the "Debtors"), pursuant to sections 105, 361, 362,

363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507

of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy

Code"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Local Rules"), seeking entry of this interim order (this "Interim

Order")[3] and the Final Order (as defined herein and, together with this Interim Order, the "DIP

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Motion or DIP Term Sheet (as defined herein), as applicable.

[3]   The Debtors filed a prior version of this Interim Order at Docket No. 16-1.

Orders") among other things:

- authorizing the Borrower (as defined below) to obtain postpetition financing (the "DIP Financing") pursuant to a $142.5 million postpetition credit facility (the "DIP Facility") subject to the terms and conditions set forth in this Interim Order and that certain Debtor-In-Possession Credit Facility Term Sheet attached hereto as **Exhibit 1** (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "DIP Term Sheet") consisting of:

  (A) a junior secured, superpriority debtor in possession multi-draw term loan facility (the "Junior DIP Facility") by and among Yellow Corp, as borrower (in such capacity, the "Borrower"), the DIP Guarantors (as defined in the DIP Term Sheet), MFN Partners, L.P. (together with any assigns, the "Junior DIP Lender"), and Alter Domus Products Corp., as administrative agent and collateral agent in such capacity, together with its successors and permitted assigns, the "Junior DIP Agent" and, together with the Junior DIP Lender, the "Junior DIP Secured Parties"), consisting of new money term loans (together with any drawn Junior DIP Commitments (as defined below), the "Junior DIP Loans") in an aggregate principal amount of $42.5 million, of which: (i) $17.9 million will be made available to be drawn upon entry of this Interim Order and (ii) $24.6 million will be made available to be drawn (including (a) $11.2 million on the Second Draw (as defined below) and (b) $13.4 million on the Third Draw (as defined below)) subject to certain conditions set forth in the DIP Term Sheet and, when applicable, a credit agreement governing the Junior DIP Facility on the terms set forth in the DIP Term Sheet (including the Documentation Principals (as defined therein)) (the "DIP Credit Agreement"), including the filing by the Debtors of a form of order approving bid procedures (the "Proposed Bid Procedures Order") in form and substance acceptable to the Junior DIP Lender and the B-2 Lenders;

  (B) an incremental postpetition tranche of the B-2 Facility (as defined below) constituting a senior secured, superpriority debtor in possession multi-draw term loan facility (the "Postpetition B-2 Facility"), subject to the terms herein, the DIP Term Sheet and the Prepetition B-2 Credit Agreement (as defined below), as modified by this Interim Order and the DIP Term Sheet, which will be superseded by the DIP Credit Agreement (if the Postpetition B-2 Lenders and the Debtors agree) or an amendment to the B-2 Credit Agreement (the "B-2 Amendment" and the Prepetition B-2 Credit Agreement as so modified and superseded, the "Postpetition B-2 Credit Agreement"), subject to the Documentation Principles set forth (and as defined) in the DIP Term Sheet, consisting of new money term loans (the "Postpetition B-2 Term Loans" and, together with the Junior DIP Loans, the "DIP Loans")[4] provided by Citadel Credit Master LLC (together with any permitted assignee thereof, the "Postpetition B-2 Lenders" and, together with the

---

[4] The commitments under the Junior DIP Facility shall be referred to herein as the "Junior DIP Commitments" and the commitments under the Postpetition B-2 Facility shall be referred to herein as the "Postpetition B-2 Commitments." The Junior DIP Commitments and the Postpetition B-2 Commitments, together, shall be referred to herein as the "DIP Commitments."

Postpetition B-Agent (as defined below), the "<u>Postpetition B-2 Secured Parties</u>") in an aggregate principal amount of $100.0 million of which: (i) $42.1 million will be made available upon entry of the Interim Order (together with the Junior DIP Loans described in subclause (A)(i) above, the "<u>Interim Draw</u>"); (ii) $26.3 million will be made available to be drawn subject to certain conditions set forth in the B-2 Amendment or DIP Credit Agreement, as applicable, including the filing by the Debtors of the Proposed Bid Procedures Order (together with the Junior DIP Loans discussed in subclause (A)(ii)(a) above, the "<u>Second Draw</u>"); and (iii) $31.6 million will be made available to be drawn upon the Court's entry of the Final Order (together with the Junior DIP Loans discussed in subclause (A)(ii)(b) above, the "<u>Third Draw</u>"); and

(C) up to $70.0 million (the "<u>Additional Junior DIP Commitments</u>")[5] shall be made available by the Junior DIP Lender, at the Debtors' request following the Third Draw, which amount may be drawn in one or multiple draws at the Debtors' discretion.[6]

- authorizing the Borrower to incur, and the DIP Guarantors (as defined in the DIP Term Sheet and, together with the Borrower, the "<u>DIP Loan Parties</u>") to jointly and severally guarantee the DIP Loans and all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including, without limitation, commitment fees or premiums and administrative agency fees, costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute) earned, due and payable under the DIP Loan Documents (as defined below) (collectively, the "<u>Junior DIP Obligations</u>"), in each case subject to the Carve-Out and the Canadian Priority Charges and in accordance with the terms hereof;

- authorizing the DIP Loan Parties to jointly and severally guarantee the Postpetition B-2 Loans and all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including, without limitation, commitment fees or premiums and administrative agency fees, costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute) earned, due and payable under the DIP Loan Documents (as defined below) to the Postpetition B-2 Secured Parties (collectively, the "<u>Postpetition B-2 Obligations</u>" and, together with the Junior DIP Obligations, the "<u>DIP Obligations</u>"), in each case subject to the Carve-Out and the Canadian Priority Charges and in accordance with the terms hereof;

---

[5]  The Additional Junior DIP Commitments (if drawn) shall be junior and subordinate (including in right of payment) in all respects to the Prepetition Liens and Adequate Protection Liens of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties.

[6]  The Junior DIP Lender and the Postpetition B-2 Lenders, together, shall be referred to herein as the "<u>DIP Lenders</u>."  The Junior DIP Secured Parties and the Postpetition B-2 Secured Parties, together, shall be referred to herein as the "<u>DIP Secured Parties</u>."

- authorizing the DIP Loan Parties to execute, deliver and perform, as applicable, under the DIP Term Sheet, the Postpetition B-2 Credit Agreement, the DIP Credit Agreement, the Postpetition B-2 Amendment (if any), the Amended and Restated Fee Letter, the Fee Letter, and all other documents and instruments that may be reasonably requested by the Junior DIP Secured Parties or Postpetition B-2 Secured Parties in connection with the DIP Facility (in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof, the "<u>DIP Loan Documents</u>");

- subject to the Carve-Out (as defined below) and the Canadian Priority Charges and otherwise solely to the extent set forth herein, granting to the Junior DIP Agent, for the benefit of the Junior DIP Secured Parties, and the Postpetition B-2 Agent, for the benefit of the Postpetition B-2 Secured Parties, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code;

- granting to the Junior DIP Agent, for the benefit of the Junior DIP Secured Parties, and the Postpetition B-2 Agent, for the benefit of the Postpetition B-2 Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral, on the terms described herein;[7]

- authorizing the Junior DIP Agent and the Postpetition B-2 Agent to take all commercially reasonable actions to implement the terms of this Interim Order;

- (a) waiving the Debtors' right to surcharge the DIP Collateral, (b) upon entry of a final order providing for such relief, waiving the Debtors' right to surcharge the B-2 Collateral or Prepetition ABL Collateral (each as defined below) pursuant to section 506(c) of the Bankruptcy Code and (c) upon entry of a final order providing for such relief any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

- (a) waiving the equitable doctrine of "marshaling" and other similar doctrines for the benefit of the DIP Secured Parties with respect to the DIP Collateral and the DIP Obligations, and (b) upon entry of a final order providing for such relief, waiving the equitable doctrine of "marshaling" and other similar doctrines for the benefit of the Prepetition Secured Parties with respect to the Prepetition Collateral and the Prepetition

---

[7] "<u>DIP Collateral</u>" shall mean all tangible and intangible prepetition and postpetition property of the DIP Loan Parties (other than: (a) any lease, license or agreement or any property to the extent a grant of a security interest therein would violate or invalidate such lease, license or agreement or similar arrangement or create a right of termination in favor of any other party thereto after giving effect to the applicable anti-assignment provisions of the UCC, PPSA, Bankruptcy Code or other applicable law, other than proceeds and receivables thereof, the assignment of which is deemed effective under the UCC, PPSA, Bankruptcy Code or other applicable law, notwithstanding such prohibition; and (b) "intent to use" trademark applications, (a) and (b), collectively, "<u>Excluded Property</u>") whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, other than the Avoidance Actions and the Carve-Out Reserves (and any amounts held therein), but including, upon and subject to entry of the Final Order, the Avoidance Proceeds (collectively, the "<u>Unencumbered Property</u>," and such liens, the "<u>DIP Unencumbered Property Liens</u>")).

Secured Obligations (each as defined below), as applicable, in each case subject to the Carve-Out and Canadian Priority Charges;

- authorizing the Debtors to use proceeds of the DIP Facility and Cash Collateral solely in accordance with the DIP Orders, the DIP Loan Documents (including the Approved Budget, subject to Permitted Variances (as defined in the DIP Term Sheet)), the Interim UST Cash Collateral Order (as defined below), and the Final UST Cash Collateral Order (as defined below);

- authorizing the Debtors to pay the DIP Obligations as they become due and payable in accordance with the DIP Loan Documents;

- authorizing the Debtors to remit ABL Cash Collateral (as defined below) to the Prepetition ABL Agent as set forth herein and for the Prepetition ABL Agent to apply such ABL Cash Collateral to permanently reduce or cash collateralize, as applicable, Prepetition ABL Obligations as set forth herein;

- subject to the restrictions set forth in the DIP Loan Documents and the DIP Orders, authorizing the Debtors to use Prepetition Collateral (including Cash Collateral) and provide adequate protection to the Prepetition Secured Parties (as defined below) for any diminution in value of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "Diminution in Value");[8]

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties to implement and

---

[8] The adequate protection and certain other rights and protections to be provided to the Prepetition UST Secured Parties (as defined below) is set forth in a separate Court order being entered contemporaneously with this Interim Order (the "Interim UST Cash Collateral Order" and the final order approving such relief, the "Final UST Cash Collateral Order"). As used in this Interim Order, UST Cash Collateral, Prepetition UST Tranche A Credit Agreement, Prepetition UST Tranche A Loan Documents, Prepetition UST Tranche A Borrower, Prepetition UST Tranche A Guarantors, Prepetition UST Tranche A Loan Parties, BNY, Prepetition UST Tranche A Agent, Prepetition UST Tranche A Lenders, Prepetition UST Tranche A Secured Parties, Prepetition UST Tranche A Obligations, Prepetition UST Tranche B Credit Agreement, Prepetition UST Tranche B Loan Documents, Prepetition UST Loan Documents, Prepetition UST Tranche B Borrower, Prepetition UST Tranche B Guarantors, Prepetition UST Tranche B Loan Parties, Prepetition UST Tranche B Agent, Prepetition UST Agent, Prepetition UST Tranche B Lenders, Prepetition UST Lenders, Prepetition UST Tranche B Secured Parties, Prepetition UST Tranche B Obligations, Prepetition UST Secured Obligations, Prepetition UST Tranche A Liens, Prepetition UST Tranche A Permitted Senior Liens, Prepetition UST Tranche A Collateral, Prepetition UST Tranche B Liens, Prepetition UST Liens, Prepetition UST Tranche B Term Priority Collateral, Prepetition UST Tranche B Permitted Senior Liens, Prepetition UST Tranche B Priority Collateral, Prepetition UST Tranche B Collateral, Prepetition UST Secured Parties, UST Tranche B Adequate Protection Liens, UST Tranche A Adequate Protection Liens, UST Adequate Protection Liens, UST Tranche B 507(b) Claims, UST Tranche A 507(b) Claims, UST 507(b) Claims, UST Tranche B Adequate Protection Fees and Expenses, UST Tranche A Adequate Protection Fees and Expenses, UST Adequate Protection Fees and Expenses, UST Tranche B Adequate Protection Obligations, UST Tranche A Adequate Protection Obligations, UST Adequate Protection Obligations, UST Adequate Protection Payments, and UST Adequate Protection shall have the meanings given to those terms in the Interim UST Cash Collateral Order.

effectuate the terms and provisions of the DIP Orders and the DIP Loan Documents;

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and, upon entry, the Final Order; and

- scheduling a final hearing (the "Final Hearing") to consider final approval of the DIP Facility and use of Cash Collateral on the terms of a proposed order (the "Final Order") to be posted to the docket prior to the Final Hearing.

The Court having considered the interim relief requested in the DIP Motion [Docket No. 16], the exhibits attached thereto, the *Declaration of Cody Leung Kaldenberg, Founding Member of and Partner at Ducera Partners In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Authorizing the Debtors to Use UST Cash Collateral, (V) Granting Adequate Protection, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 18] (the "Kaldenberg Declaration"), the *Declaration of Brian Whittman, Managing Director of Alvarez & Marsal North America, LLC, In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Authorizing the Debtors to Use UST Cash Collateral, (V) Granting Adequate Protection, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 17] (the "Whittman Declaration"), and the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), the available DIP Loan Documents, including the DIP Term Sheet, and the evidence submitted to the Court, including arguments made at the interim hearing held on August 9, 2023 (the "Interim Hearing"); and due and sufficient notice of the Interim Hearing, including continuations thereof,

and subsequent status conferences having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the preservation of the value of the Debtors' assets; and it appearing that the DIP Loan Parties' entry into the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[9]

A. *Petition Date*.  On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

B. *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C. *Jurisdiction and Venue*.  This Court has core jurisdiction over these cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the*

---

[9]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

*District of Delaware*, dated February 29, 2012. Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order approving the relief sought in the DIP Motion consistent with Article III of the United States Constitution. Venue for these cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Bankruptcy Local Rules 2002-1, 4001-2, and 9013-1.

D. *Committee Formation*. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") in these chapter 11 cases (the "Chapter 11 Cases") pursuant to section 1102 of the Bankruptcy Code [Docket No. 269]. As of the date hereof, the U.S. Trustee has not appointed any other statutory committee.

E. *Notice*. The Interim Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). Proper, timely, adequate and sufficient notice of the DIP Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and Bankruptcy Local Rules, and no other or further notice was or shall be required under the circumstances. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

F. *Cash Collateral*. As used herein, the term "Cash Collateral" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Prepetition Secured Parties (and the Prepetition UST Secured Parties) or DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

8

G. *Debtors' Stipulations*. Without prejudice to the rights of any other party in interest and subject to the provisions and limitations contained in paragraph 19 hereof, after consultation with their attorneys, the Debtors admit, stipulate and agree that:

(i) *Prepetition B-2 Term Loan*. Pursuant to that certain Amended and Restated Credit Agreement, dated as of September 11, 2019 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition B-2 Credit Agreement" and, collectively with all other agreements (including all Loan Documents (as defined therein)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition B-2 Loan Documents"), by and among (a) Yellow Corp., as borrower (in such capacity, the "Prepetition B-2 Borrower"), (b) the guarantors party thereto (the "Prepetition B-2 Guarantors" and, together with the Prepetition B-2 Borrower, the "Prepetition B-2 Loan Parties"), (c) Alter Domus Products Corp., as administrative and collateral agent (the "Prepetition B-2 Agent"),[10] and (d) the lenders party thereto from time to time (the "Prepetition B-2 Lenders" and, together with the Prepetition B-2 Agent, the "Prepetition B-2 Secured Parties"),[11] Prepetition B-2 Loan Parties incurred "Obligations" under (and as defined in) the Prepetition B-2 Credit Agreement (the "Prepetition B-2 Obligations" and, together with the Postpetition B-2 Obligations, the "B-2 Obligations") to the

---

[10] Alter Domus Product Corp. also serves as administrative agent and collateral agent with respect to the Postpetition B-2 Facility (in such capacity, the "Postpetition B-2 Agent" and, together with the Prepetition B-2 Agent, the "B-2 Agent").

[11] The Prepetition B-2 Lenders and the Postpetition B-2 Lenders shall be referred to herein as the "B-2 Lenders." The Prepetition B-2 Secured Parties and the Postpetition B-2 Secured Parties shall be referred to herein as the "B-2 Secured Parties."

Prepetition B-2 Secured Parties on a joint and several basis;

(ii)    *Prepetition ABL Facility*.   Pursuant to that certain Loan and Security Agreement, dated as of February 13, 2014 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition ABL Credit Agreement", collectively with all other agreements (including all Loan Documents (as defined therein)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition ABL Loan Documents", and the credit facilities evidenced thereby, collectively, the "Prepetition ABL Facility") among (a) Yellow Corp, as administrative borrower (together with the other borrowers party thereto, the "Prepetition ABL Borrowers"), (b) the guarantors party thereto (the "Prepetition ABL Guarantors" and, together with the Prepetition ABL Borrowers, the "Prepetition ABL Loan Parties" and, together with the Prepetition B-2 Loan Parties, the "Prepetition Loan Parties"), (c) Citizens Business Capital, a division of Citizens Asset Finance, Inc. (a subsidiary of Citizens Bank, N.A.), as agent (the "Prepetition ABL Agent" and, together with the Prepetition B-2 Agent, the "Prepetition Agents"), (d) the lenders from time to time party thereto (the "Prepetition ABL Lenders" and, together with the Prepetition B-2 Lenders, the "Prepetition Lenders"), and (e) the issuing banks from time to time party thereto (together with the Prepetition ABL Agent and the Prepetition ABL Lenders, the "Prepetition ABL Secured Parties" and, together with the Prepetition Agents, the Prepetition Lenders, and the Bank Product Providers (as defined in the Prepetition ABL Credit Agreement), the "Prepetition Secured Parties"), the Prepetition ABL Loan Parties incurred "Obligations" (as defined in the Prepetition ABL Credit Agreement, the "Prepetition ABL

10

Obligations" and, together with the Prepetition B-2 Obligations, the "<u>Prepetition Secured Obligations</u>") to the Prepetition ABL Secured Parties on a joint and several basis;

(iii)     *Prepetition Intercreditor Agreement.*  Pursuant to (and to the extent set forth in) that certain Amended and Restated Intercreditor Agreement, dated as of July 7, 2020 (as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "<u>Prepetition Intercreditor Agreement</u>" and, together with the Prepetition B-2 Loan Documents and the Prepetition ABL Loan Documents, the "<u>Prepetition Loan Documents</u>") by and among the Prepetition ABL Agent, the Prepetition B-2 Agent, the Prepetition UST Tranche A Agent, and the Prepetition UST Tranche B Agent, the parties thereto agreed, among other things, to the relative priority of such parties' respective security interests in the Prepetition Collateral (as defined below), which relative priorities are governed by and set forth in the Prepetition Intercreditor Agreement.  The Prepetition Loan Documents and the Prepetition UST Loan Documents, including the Prepetition Intercreditor Agreement, are, in each case, binding and enforceable against the parties thereto;

(iv)     *Prepetition B-2 Obligations.*  As of the Petition Date, the Prepetition B-2 Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition B-2 Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition B-2 Credit Agreement) in the aggregate principal amount of not less than $485,372,693.29, plus accrued and unpaid interest thereon and any fees, exit fees (including the exit fee arising pursuant to Section 2.05(c) of the Prepetition B-2 Credit Agreement), expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees and fees of other consultants and professionals), costs, charges, indemnities, and other Prepetition B-2 Obligations in each case incurred under (or reimbursable

11

pursuant to) or secured by the Prepetition B-2 Loan Documents;

(v) *Prepetition ABL Obligations*. As of the Petition Date, the Prepetition ABL Loan Parties were validly, justly and lawfully indebted and liable to the Prepetition ABL Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for (x) not less than $858,520.35 in outstanding principal amount of Loans (as defined in the Prepetition ABL Credit Agreement) plus accrued and unpaid interest thereon, (y) not less than $359,288,388.60 in outstanding and undrawn Letters of Credit (as defined in the Prepetition ABL Credit Agreement) plus accrued and unpaid fees with respect thereto, and (z) any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, financial advisors' fees, and fees of other consultants and professionals), costs, charges, indemnities, and other Prepetition ABL Obligations (including, without limitation, Bank Product Debt, as defined in the Prepetition ABL Credit Agreement) in each case incurred under (or reimbursable pursuant to) or secured by the Prepetition ABL Loan Documents. As of the Petition Date, (1) ABL Cash Collateral (as defined below) in an amount equal to $91,449,240.35 was being held on deposit in the Borrowing Base Cash Account (as defined in the Prepetition ABL Credit Agreement) and (2) ABL Cash Collateral (as defined below) in an amount equal to $3,800,000 had been pledged to the Prepetition ABL Agent as security for certain Bank Product Debt owed to Citizens Bank, N.A. and/or its affiliates (such amounts described in this sentence, collectively, the "Existing ABL Cash Collateral Deposits");

(vi) *Validity of Prepetition Secured Obligations*. The Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties, as applicable, enforceable in accordance with the respective terms of the relevant documents, and no portion of the Prepetition Secured Obligations or any payment made to the

12

Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(vii)    *Validity, Perfection and Priority of Prepetition B-2 Liens*.  As of the Petition Date, pursuant to the Prepetition B-2 Loan Documents, the Prepetition B-2 Loan Parties granted to the Prepetition B-2 Agent, for the benefit of the Prepetition B-2 Secured Parties, a security interest in and continuing lien on (the "Prepetition B-2 Liens") substantially all of their respective assets and property (other than Excluded Assets (as defined in the Prepetition B-2 Loan Documents), collectively, the "Prepetition B-2 Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the Non-UST Tranche B Term Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition B-2 Priority Collateral"), subject only to any liens permitted by the Prepetition B-2 Loan Documents to be senior to the Prepetition B-2 Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition B-2 Permitted Senior Liens"); (ii) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the UST Tranche B Joint Collateral (as defined

13

in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Joint Collateral"), subject only to the *pari passu* liens of the Prepetition UST Tranche B Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition UST Tranche B Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition UST Tranche B Priority Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL Priority Collateral (as defined below), subject and subordinate only to the liens of the Prepetition ABL Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition ABL Priority Collateral;

(viii) *Validity, Perfection and Priority of Prepetition ABL Liens.* As of the Petition Date, pursuant to the Prepetition ABL Loan Documents, the Prepetition ABL Loan Parties granted to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, a security interest in and continuing lien on (the "Prepetition ABL Liens" and, collectively with the Prepetition B-2 Liens, Prepetition UST Tranche A Liens, and Prepetition UST Tranche B Liens, the "Prepetition Liens") substantially all of their respective assets and property (other than Excluded Assets (as defined therein)) (collectively, the "Prepetition ABL Collateral" and, collectively with the Prepetition B-2 Collateral, Prepetition UST Tranche A Collateral, and Prepetition UST Tranche B Collateral, the "Prepetition Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for

14

the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), subject only to any liens permitted by the Prepetition ABL Loan Documents to be senior to the Prepetition ABL Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition ABL Permitted Senior Liens" and, collectively with the Prepetition B-2 Permitted Senior Liens, Prepetition UST Tranche A Permitted Senior Liens, and Prepetition UST Tranche B Permitted Senior Liens, the "Prepetition Permitted Senior Liens");[12] (ii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition B-2 Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition B-2 Priority Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and Prepetition UST Tranche B Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition Joint Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and Prepetition UST Tranche B Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition UST Tranche B Priority Collateral;

---

[12] For the avoidance of doubt, no reference to the "Prepetition Permitted Senior Liens" shall refer to or include the Prepetition Liens.

(ix)     *Waiver of Challenge*.  None of the Prepetition Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(x)     *No Control*.  None of the Prepetition Secured Parties or the DIP Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition Loan Documents;

(xi)     *No Claims or Causes of Action*.  No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Parties and each of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition Secured Party that is in existence as of the Petition Date; and

(xii)     *Release*.  Effective as of the date of entry of this Interim Order and subject in all respects to paragraph 19 hereof, each of the Debtors and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Secured Parties, the DIP Secured Parties, and each of their respective Representatives (solely in their capacities as such) (collectively, the "Released Parties"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts,

16

liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Prepetition Loan Documents, the DIP Facility, the DIP Loan Documents (including the DIP Term Sheet), the DIP Loans, the negotiation thereof, and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Interim Order; *provided* that the release set forth in this section shall not release (i) any claims against or liabilities of a Released Party that a court of competent jurisdiction determines by a final non-appealable order to have directly and primarily resulted from such Released Party's bad faith, fraud, gross negligence, or willful misconduct, or (ii) any DIP Secured Party(ies) from honoring its/their obligations to the Debtors under the DIP Loan Documents.

H.    *Findings Regarding DIP Financing and Use of Cash Collateral.*

(i)    Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the DIP Loan Parties to obtain financing pursuant to the DIP Loan Documents, including the DIP Term Sheet.

(ii)    The Debtors have demonstrated an immediate and critical need to obtain the DIP Loans and to use Prepetition Collateral (including Cash Collateral) in order to, among other things, maintain, administer, and preserve certain limited operations and maximize the value of their estates through an orderly winddown process of their businesses and comprehensive sale process for their assets.  Without the ability of the Debtors to obtain sufficient working capital and

17

liquidity through the proposed DIP Facility and the use of Cash Collateral as set forth in this Interim Order, the Debtors, their estates, and parties-in-interest would be immediately and irreparably harmed. Accordingly the Debtors have an immediate need to obtain the DIP Loans provided under the DIP Facility and to use Cash Collateral as set forth in this Interim Order to, among other things, maximize the value of the assets of the Debtors' estates to maximize the recovery to all creditors of the estates.

(iii)    The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents, including financing secured solely by lien on property of the Debtors and their estates that is not otherwise subject to a lien or secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. The Debtors are also unable to obtain secured credit without granting to the DIP Secured Parties the DIP Liens and the DIP Superpriority Claims (each as defined below) and incurring the Adequate Protection Obligations (as defined below) on the terms and subject to the conditions set forth in this Interim Order and in the DIP Loan Documents, including the DIP Term Sheet.

(iv)    Based on the DIP Motion, the First Day Declaration, the Kaldenberg Declaration, the Whittman Declaration, and the record and argument presented to the Court at the Interim Hearing, the terms of the DIP Facility, the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraph 14 of this Interim Order and with respect to the Prepetition UST Secured Parties as provided in the Interim UST Cash Collateral Order (collectively, the "Adequate Protection"), and the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Loan

18

Documents are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

(v)     This Interim Order, the DIP Facility, the Adequate Protection, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured Parties, and the Prepetition Secured Parties (each of whom acted in good faith in negotiating such documents), and all of the loans and other financial accommodations extended by the DIP Secured Parties and the Prepetition Secured Parties (as applicable) to the DIP Loan Parties under, in respect of, or in connection with, the DIP Facility and the DIP Loan Documents (including the granting of the Adequate Protection Liens (as defined below) and other adequate protections provided herein), shall be deemed to have been extended by the DIP Secured Parties in good faith, as that term is used in section 364(c) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and their respective successors and assigns) and such Prepetition Secured Parties (and their respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(vi)     The Postpetition B-2 Lenders have agreed to provide the Postpetition B-2 Loans for the benefit of the Debtors' estates, the other Prepetition Secured Parties, all holders of administrative expense claims against the Debtors, and all other creditors in lieu of exercising their rights to immediately seek relief from the automatic stay under section 362(d) of the Bankruptcy Code with respect to the Prepetition B-2 Priority Collateral (as defined below).

(vii)     The Prepetition Secured Parties and the DIP Secured Parties have acted in

good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of this Interim Order, the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, the DIP Loan Documents (including the DIP Term Sheet), and all other documents related to and all transactions contemplated by the foregoing. Accordingly, without limitation to any other right to indemnification, the Prepetition Secured Parties and the DIP Secured Parties shall maintain their right of indemnification (as applicable) as provided in the Prepetition Loan Documents and the DIP Loan Documents, as applicable, including, without limitation, Section 10.05 of the Prepetition B-2 Credit Agreement and Section 15.2 of the Prepetition ABL Credit Agreement.

(viii)   The Prepetition Secured Parties are entitled to the Adequate Protection as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the DIP Motion and on the record presented to the Court, the terms of the proposed Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral, including Cash Collateral.

(ix)   To the extent that their consent is required, the requisite Prepetition Secured Parties have consented or are deemed to have consented to the use of Prepetition Collateral, including Cash Collateral, and the priming of certain of the Prepetition Liens on the Prepetition Collateral by the DIP Liens, in each case on the terms set forth in the DIP Term Sheet and this Interim Order; *provided*, that, nothing in this Interim Order or the DIP Loan Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of

20

Cash Collateral other than on the terms set forth in this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering Prepetition Collateral or Prepetition UST Collateral (whether senior or junior) other than as contemplated by this Interim Order (or, as applicable, the Interim UST Cash Collateral Order), or (z) prejudice, limit or otherwise impair the rights of any Prepetition Secured Party or Prepetition UST Secured Party to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the DIP Loan Parties to object to such relief, are hereby preserved, subject to the terms and conditions of the Prepetition Intercreditor Agreement.

(x)     The Debtors have prepared and delivered to the advisors to the Junior DIP Secured Parties, the Prepetition ABL Secured Parties, the B-2 Secured Parties, and the Prepetition UST Secured Parties an initial budget (the "Initial DIP Budget"), attached hereto as **Schedule 1**. The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each calendar week covered thereby.   The Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Loan Documents and with the approval of the Junior DIP Secured Parties, the B-2 Lenders, the Prepetition ABL Agent and the Prepetition UST Secured Parties (such approval not to be unreasonably withheld).   Each subsequent budget, once otherwise approved in accordance with the DIP Loan Documents and this Interim Order and subject to review and approval of the Junior DIP Lender, the B-2 Lenders, the Prepetition ABL Agent, and the Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld) shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget, an "Approved Budget").

(xi)    Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, upon entry of a final order providing for such relief, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

(xii)   The intercreditor and subordination provisions herein and in the other DIP Loan Documents are essential elements of the DIP Facility and the protections granted to the parties as consideration therefor and are immediately and irrevocably binding and enforceable.

I.    *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Absent the relief granted in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Facility and continued use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and the DIP Loan Documents (including the DIP Term Sheet), are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The DIP Motion and this Interim Order comply with the requirements of Bankruptcy Local Rule 4001-2.

J.    *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens*.  Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Secured Parties, or the Prepetition Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien.  For the avoidance of doubt, the right of a seller of goods to reclaim goods under

22

section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Senior Lien, and such right is expressly subject to the DIP Liens and the Prepetition Liens (each as defined herein). The Prepetition Liens and the DIP Liens are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens.

K.     *Intercreditor Agreement.*  Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement shall: (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties and Prepetition UST Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims or amounts payable in respect thereof), and (iii) not be deemed to be amended, altered or modified by the terms of this Interim Order, the Interim UST Cash Collateral Order, or the DIP Loan Documents (including the DIP Term Sheet), unless expressly set forth therein or herein, as applicable.

L.     Contemporaneous with the entry of this Interim Order, the Court is entering the Interim UST Cash Collateral Order granting the UST Adequate Protection (as defined in the Interim UST Cash Collateral Order) to the Prepetition UST Secured Parties.

Based upon the DIP Motion, the foregoing findings and conclusions, and the overall record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     *Motion Granted.*  The DIP Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order.  All objections to the Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby overruled on the merits.

2.     *Authorization of the DIP Financing and the DIP Loan Documents.*

(a)     The DIP Loan Parties are hereby authorized to execute, deliver, enter into and perform all of their obligations under the DIP Loan Documents, including the DIP Term Sheet, and perform such other acts as may be necessary, appropriate or desirable in connection therewith. Once executed, the DIP Credit Agreement and the B-2 Amendment (if any) shall be deemed effective as of the Closing Date (as defined in the DIP Term Sheet).  The Borrower is hereby authorized upon entry of this Interim Order to borrow up to and draw $60 million (the "Initial Draw") pursuant to the terms and conditions of the DIP Term Sheet and the Postpetition B-2 Credit Agreement, as modified by this Interim Order and the DIP Term Sheet (including the Documentation Principles) (and, without further order or approval of this Court, the Second Draw on such date that the Second Draw becomes available pursuant to the terms and provisions of the DIP Term Sheet), and the DIP Guarantors are hereby authorized to guarantee the Borrower's obligations on account of the Initial Draw (and, if applicable, without further order or approval of this Court, the Second Draw), subject to any limitations set forth in the DIP Loan Documents, including the DIP Term Sheet.  The proceeds of the DIP Loans shall be used for all purposes permitted under the DIP Loan Documents and the Interim Order, in each case subject to and in accordance with the Approved Budget (subject to any Permitted Variances).

(b)     In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party is authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents, execute or record pledge and security agreements, mortgages, financing statements and other similar documents, if any, and, subject to the provisions of this Interim Order (or the Interim UST Cash Collateral Order, as applicable) to pay all DIP Obligations as and when such amounts become due and payable, including fees, expenses and indemnities in connection with or that may be reasonably required,

necessary, or desirable in connection with the DIP Financing, including, without limitation:

(i)      the execution and delivery of, and performance under, each of the DIP Loan Documents, including the DIP Term Sheet;

(ii)     the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Loan Documents, in each case, in such form as the DIP Secured Parties may accept and with any such other approvals as required by the DIP Loan Documents, it being understood that no further approval of this Court, unless expressly set forth herein, shall be required for any such amendments, waivers, consents or other modifications or the payment of any fees, including attorneys', accountants', appraisers' and financial advisors' fees, and other expenses, charges, costs, indemnities and other like obligations in connection therewith) that do not shorten the scheduled maturity of the DIP Facility, increase the aggregate DIP Commitments, increase the rate of interest or fees payable thereunder, or release any DIP Liens.  Updates, modifications, and supplements to the Approved Budget in accordance with this Interim Order and the DIP Loan Documents shall not require any further approval of this Court, but, for the avoidance of doubt, shall be subject to review and approval by the DIP Secured Parties, the B-2 Lenders, the Prepetition ABL Agent, and the Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld);

(iii)    the non-refundable payment to any of the DIP Secured Parties of all principal, interest, and fees in connection with the DIP Facility, including any amendment fees, premiums, servicing fees, audit fees, liquidator fees, structuring fees, arrangement fees, administrative agent's, collateral agent's or security trustee's fees, upfront fees, closing fees, commitment premiums, exit fees, closing date fees, prepayment premium or fees, or agency fees, and any amounts due in respect of any indemnification and expense reimbursement obligations,

including, without limitation, reasonable and documented fees and out-of-pocket expenses of professionals retained by, or on behalf of, any of the DIP Secured Parties (including, without limitation, those of Quinn Emanuel Urquhart & Sullivan, LLP, Ropes & Gray LLP, Province, LLC, White & Case LLP, GrayRobinson, P.A., Holland & Knight LLP, and any local legal counsel or other advisors in any foreign jurisdiction (provided no more than one local legal counsel or other advisor in any foreign jurisdiction for each of the Junior DIP Lender and the Postpetition B-2 Lenders), and any other advisors of the DIP Secured Parties as permitted under the DIP Loan Documents), in each case, as provided in the DIP Loan Documents (collectively, the "DIP Fees and Expenses"), without the need to file retention or fee applications; the payment of the foregoing amounts shall be irrevocable, and shall be deemed to have been approved upon entry of this Interim Order, whether any such obligations arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

3. *DIP Obligations*. Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents, including the DIP Term Sheet, shall constitute legal, valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable against each DIP Loan Party and their estates in accordance with their respective terms and this Interim Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon

execution and delivery of the DIP Term Sheet, the DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the DIP Loan Parties to any of the DIP Secured Parties, in such capacities, in each case, under the DIP Loan Documents (including the DIP Term Sheet) and this Interim Order, including all principal, interest, costs, fees, expenses, premiums, indemnities and other amounts. The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations. Except as (and solely to the extent) expressly provided herein, no obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Documents to the Junior DIP Agent, the Postpetition B-2 Agent, and/or the other DIP Secured Parties shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4. *Carve-Out.*

(a)     As used herein, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without

27

regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Junior DIP Agent or the Postpetition B-2 Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first business day following delivery by the Junior DIP Agent or the Postpetition B-2 Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Junior DIP Agent or the Postpetition B-2 Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, the Prepetition ABL Agent and counsel thereto, counsel to the Junior DIP Agent or the Postpetition B-2 Agent (whichever did not deliver the Carve-Out Trigger Notice), and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined in the DIP Term Sheet) and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(b)  Delivery of Weekly Fee Statements. Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following

entry of this Interim Order, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided*, that, within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same day received to the Junior DIP Agent and the B-2 Agent). If any Professional Person fails to deliver a Weekly Statement within three (3) calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve-Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

(c)     Carve-Out Reserves.

(i)     Commencing with the week ended August 18, 2023, and on or before the Thursday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and

any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of (a) the greater of (i) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered on the immediately prior Wednesday to the Debtors, the Junior DIP Agent, and the B-2 Agent, and (ii) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (b) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the week occurring after the most recent Calculation Date.  The Debtors shall deposit and hold such amounts in a segregated account designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust (the "<u>Funded Reserve Account</u>") to pay such Allowed Professional Fees prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)     On the day on which a Carve-Out Trigger Notice is given by the Junior DIP Agent or the Postpetition B-2 Agent to the Debtors with a copy to counsel to the Creditors' Committee and counsel to the Prepetition ABL Agent (the "<u>Termination Declaration Date</u>"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust to pay such then unpaid Allowed Professional Fees (the "<u>Pre-Carve-Out Trigger Notice Reserve</u>") prior to any and all other claims.  On the Termination Declaration Date, the Carve-Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve-Out Trigger Notice

Reserve, to fund a reserve in an amount equal to the Post-Carve-Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve-Out Trigger Notice Cap (the "Post-Carve-Out Trigger Notice Reserve" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "Carve-Out Reserves") prior to any and all other claims. All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "Pre-Carve-Out Amounts"), but not, for the avoidance of doubt, the Post-Carve-Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Junior DIP Agent and the Postpetition B-2 Agent for the benefit of the applicable DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties and the Prepetition UST Secured Parties in accordance with their rights and priorities as set forth in this Interim Order and the Interim UST Cash Collateral Order. All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "Post-Carve-Out Amounts"), and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Junior DIP Agent and the Postpetition B-2 Agent for the benefit of the applicable DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties and the Prepetition UST Secured Parties in accordance with their rights and priorities as set forth in this Interim Order and the Interim UST Cash Collateral Order. Notwithstanding anything to the contrary in the DIP

31

Loan Documents, or this Interim Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in this paragraph 4, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth in this paragraph 4, prior to making any payments to the Junior DIP Agent, the Postpetition B-2 Agent, or the Prepetition Secured Parties and the Prepetition UST Secured Parties, as applicable. Notwithstanding anything to the contrary in the DIP Loan Documents or this Interim Order, following delivery of a Carve-Out Trigger Notice, the Junior DIP Agent, the Postpetition B-2 Agent, the Prepetition UST Agent, and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve-Out Reserves, with any excess paid to the Junior DIP Agent and the Postpetition B-2 Agent for application in accordance with the DIP Loan Documents, this Interim Order, and the Interim UST Cash Collateral Order. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall not constitute Loans (as defined in the DIP Loan Documents) or increase or reduce the DIP Obligations, (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Initial Budget, any subsequent Approved Budget, Carve-Out, Post-Carve-Out Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Facility, or in any Prepetition Loan Document, the Carve-Out shall be senior to all liens and claims securing the DIP Facility, the

32

Adequate Protection Liens, the ABL 507(b) Claims (as defined below), B-2 507(b) Claims (as defined below), UST Tranche A 507(b) Claims, UST Tranche B 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(d)      <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(e)      <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the Junior DIP Agent, the Junior DIP Lender, the Postpetition B-2 Secured Parties, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Junior DIP Agent, the Junior DIP Lender, the Postpetition Secured Parties, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)      <u>Payment of Carve-Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

33

      (g)    <u>Reservation of Rights</u>.  Nothing in this Interim Order shall be construed as a waiver of any right of the DIP Secured Parties or any of the Prepetition Secured Parties to object to any fee statement, interim application, or monthly application issued or filed by any Professional Persons.

      5.    *Junior DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, and except as provided for herein or in the DIP Loan Documents, all of the Junior DIP Obligations shall constitute allowed superpriority administrative expense claims (the "<u>Junior DIP Superpriority Claims</u>") against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties (but shall be: (i) with respect to the Prepetition UST Tranche B Priority Collateral, the Prepetition UST Tranche B Joint Collateral, and the Prepetition ABL Priority Collateral, junior to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens of the Prepetition UST Secured Parties (*i.e.*, the Prepetition UST Liens), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof of (in such order of priority as set forth herein and in the Prepetition Intercreditor Agreement), the Adequate Protection Liens of the Prepetition UST Secured Parties (*i.e.*, the UST Adequate Protection Liens), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof, and the 507(b) Claims of the Prepetition UST Secured Parties (*i.e.*, the UST 507(b) Claims), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof, and (D) the Postpetition B-2 Liens (as defined below); and (ii) with respect to the Prepetition B-2 Priority Collateral, shall be junior only to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, (D) the Postpetition B-2 Liens, and (E) the B-2 Adequate Protection Liens, and otherwise shall be senior in all respects to the Prepetition ABL Secured Parties' and the

Prepetition UST Secured Parties' Prepetition Liens, Adequate Protection Liens, and 507(b) Claims with respect thereto), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding (x) the Carve-Out Reserves and amounts held therein other than the DIP Secured Parties' reversionary interest therein and (y) claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions"), but including (upon entry of the Final Order) any proceeds or property recovered as a result of any Avoidance Actions (but not the Avoidance Actions themselves), whether by judgment, settlement or otherwise (the "Avoidance Proceeds")), subject only to the Carve-Out and the Canadian Priority Charges.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6.     *Postpetition B-2 Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, and except as provided for herein or in the DIP Loan Documents, all of the Postpetition B-2 Obligations shall constitute allowed superpriority administrative expense claims (the "Postpetition B-2 Superpriority Claims," and, together with the Junior DIP Superpriority Claims, the "DIP Superpriority Claims") against the DIP Loan Parties on a joint and several basis

35

(without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided* that: (i) with respect to the Prepetition UST Tranche B Priority Collateral, the Prepetition UST Tranche B Joint Collateral, and the Prepetition ABL Priority Collateral, the Postpetition B-2 Superpriority Claims shall be junior, in the following order, to (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Prepetition Liens of the Prepetition UST Secured Parties (*i.e.*, the Prepetition UST Liens), the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof of (in such order of priority as set forth herein and in the Prepetition Intercreditor Agreement), the Adequate Protection Liens of the Prepetition UST Secured Parties (*i.e.*, the UST Adequate Protection Liens), the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof, and the 507(b) Claims of the Prepetition UST Secured Parties (*i.e.*, the UST 507(b) Claims), the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof; and (ii) with respect to the Prepetition B-2 Priority Collateral, the Postpetition B-2 Superpriority Claims shall be junior only, in the following order, to (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, (D) the Postpetition B-2 Liens, and (E) the B-2 Adequate Protection Liens, and otherwise shall be senior in all respects to the Prepetition ABL Secured Parties' and the Prepetition UST Secured Parties' Prepetition Liens, Adequate Protection Liens, and 507(b) Claims with respect thereto). The Postpetition B-2

Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding (x) the Carve-Out Reserves and amounts held therein other than the DIP Secured Parties' reversionary interest therein and (y) Avoidance Actions, but including (upon entry of the Final Order) the Avoidance Proceeds), subject only to the Carve-Out and the Canadian Priority Charges. The Postpetition B-2 Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

7. *Junior DIP Liens*. As security for the Junior DIP Obligations, effective and automatically properly perfected on the date this Interim Order is entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the Junior DIP Agent of, or over, any Collateral, without any further action by the Junior DIP Secured Parties, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "Junior DIP Liens") are hereby granted to the Junior DIP Agent for the benefit of the Junior DIP Secured Parties (all property identified in clauses (a) through (f) below being collectively referred to as the "Junior DIP Collateral," and, together with the Prepetition Collateral, the "Collateral"):

(a) *Liens on Unencumbered Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in (subject and subordinate only to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties, other than Excluded Property, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, was not subject to (i) a valid, perfected

37

and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date

that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy

Code, and also excluding the Avoidance Actions and the Carve-Out Reserves (and any amounts

held therein), but including (upon entry of the Final Order) Avoidance Proceeds (collectively, the

"Unencumbered Property," and such liens, the "DIP Unencumbered Property Liens")).

(b)     *Liens on DIP Proceeds Account.*  Pursuant to section 364(c)(2) of the

Bankruptcy Code, a first priority lien on and security interest in the proceeds of the Junior DIP

Facility in the DIP Proceeds Account.

(c)     *Junior Liens Priming Certain Prepetition Secured Parties' Liens on*

*Prepetition B-2 Priority Collateral.*  Pursuant to sections 364(c)(3) and 364(d)(1) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior priority priming

security interest and lien (subject and subordinate only to, in the following order, (1) the Carve-

Out, (2) the Canadian Priority Charges, (3) the Prepetition B-2 Liens, (4) the B-2 Adequate

Protection Liens, and (5) the Postpetition B-2 Liens) on the Prepetition B-2 Priority Collateral) all

tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same

nature, scope, and type as the Prepetition B-2 Priority Collateral, regardless of where located,

which security interest and lien on the Prepetition B-2 Priority Collateral shall prime and be senior

to the Prepetition ABL Liens, the ABL Adequate Protection Liens, the Prepetition UST Tranche

B Liens, the Prepetition UST Tranche A Liens, the UST Tranche B Adequate Protection Liens and

the UST Tranche A Adequate Protection Liens (the "Junior DIP Priming B-2 Second Liens").  For

the avoidance of doubt, notwithstanding anything herein to the contrary, the Junior DIP Priming

B-2 Second Liens shall be (A) priming and senior in all respects to the Prepetition Liens and the

Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST

38

Secured Parties with respect to the Prepetition B-2 Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(d)     *Junior Liens on Prepetition ABL Priority Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior priority security interest in, and lien upon (subject and subordinate in all respects to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties (in such order of priority as set forth in the Prepetition Intercreditor Agreement)), all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the Prepetition ABL Priority Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the Prepetition ABL Priority Collateral) the Prepetition ABL Liens, the ABL Adequate Protection Liens, the Prepetition B-2 Liens, the B-2 Adequate Protection Liens, the Postpetition B-2 Liens, the Prepetition UST Tranche B Liens, the UST Tranche B Adequate Protection Liens, the Prepetition UST Tranche A Liens, and the UST Tranche A Adequate Protection Liens (the "DIP ABL Junior Liens").  Notwithstanding anything herein to the contrary, the DIP ABL Junior Liens shall be (A) junior in all respects to the Prepetition Liens (as set forth in the Prepetition Intercreditor Agreement) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and junior to the Postpetition B-2 Liens, in each case on the Prepetition ABL Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section

551 of the Bankruptcy Code.

(e) *Junior Liens on Prepetition UST Tranche B Priority Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in, and lien upon, (subject only to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties (in such order of priority as set forth in the Prepetition Intercreditor Agreement with respect to the Prepetition UST Tranche B Priority Collateral and the Postpetition B-2 Liens) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the Prepetition UST Tranche B Priority Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the Prepetition UST Tranche B Priority Collateral) the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties, and to the Postpetition B-2 Liens (the "Junior DIP UST Tranche B Priority Collateral Junior Liens").  Notwithstanding anything herein to the contrary, the Junior DIP UST Tranche B Priority Collateral Junior Liens shall be (A) junior in all respects to the Prepetition Liens (as set forth in the Prepetition Intercreditor Agreement) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and also junior to the Postpetition B-2 Liens, in each case on the Prepetition UST Tranche B Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the

Bankruptcy Code.

(f)     *Junior Liens on UST Tranche B Joint Collateral.*  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in, and lien upon, (subject only to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties (in such order of priority as set forth in the Prepetition Intercreditor Agreement with respect to the UST Tranche B Joint Collateral)) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the UST Tranche B Joint Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the UST Tranche B Joint Collateral), the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties, and to the Postpetition B-2 Liens (the "DIP UST Tranche B Joint Collateral Junior Liens"). Notwithstanding anything herein to the contrary, the DIP UST Tranche B Joint Collateral Junior Liens shall be (A) junior in all respects to the Prepetition Liens (as set forth in the Prepetition Intercreditor Agreement) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and junior to the Postpetition B-2 Liens, in each case on the Prepetition UST Tranche B Joint Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(g)     *Liens Junior to Certain Other Liens.*  Pursuant to section 364(c)(3) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected junior security interest in, and lien upon, all tangible and intangible prepetition and postpetition property of the DIP Loan Parties that, on or as of the Petition Date, is subject to Prepetition Permitted Senior Liens, which shall be, except with respect to the Junior DIP Priming B-2 Second Liens and the DIP Unencumbered Property Liens, junior and subordinate to the liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties in such order of priority as set forth in the Prepetition Intercreditor Agreement with respect to the Prepetition Collateral.  For the avoidance of doubt, the Junior DIP Liens shall prime the Prepetition ABL Liens, the Prepetition UST Tranche B Liens, and the Prepetition UST Tranche A Liens with respect to the Prepetition B-2 Priority Collateral (and, for the avoidance of doubt, the Junior DIP Liens with respect to the Prepetition B-2 Priority Collateral shall only be junior to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, (3) the Postpetition B-2 Liens, (4) the Prepetition B-2  Liens, and (5) the B-2 Adequate Protection Liens), and shall otherwise, with respect to each of the Prepetition ABL Priority Collateral, the Prepetition UST Tranche B Priority Collateral, and the Prepetition UST Tranche B Joint Collateral, be junior in lien priority to the Prepetition Secured Parties (including the Prepetition UST Secured Parties) (which lien priority(ies), as applicable, shall remain governed by the Prepetition Intercreditor Agreement) and, unless otherwise set forth herein, *pari passu* with the Postpetition B-2 Liens.

(h)    *No Senior Liens.*  The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code unless otherwise provided in the DIP Loan Documents or this Interim Order, and (B) unless otherwise provided for in the DIP Loan Documents or in this Interim Order, any liens or security interests arising after the

42

Petition Date, (other than the Postpetition B-2 Liens as set forth herein), including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code unless otherwise provided for in the DIP Loan Documents or in this Interim Order; *provided*, that, for the avoidance of doubt, the Junior DIP Liens, unless otherwise provided herein, shall be subject and subordinate to the Prepetition Liens and the Adequate Protection Liens of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties, as applicable, and the Postpetition B-2 Liens, in each case as set forth in the foregoing paragraphs and the DIP Loan Documents; *provided*, *further*, that, for the avoidance of doubt, under the DIP Facility and this Interim Order, the DIP Liens shall prime all other liens on the DIP Proceeds Account, and be senior to the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition UST Tranche B Secured Parties, and the Prepetition UST Tranche A Secured Parties (but shall be junior and subordinate to the Carve-Out, the Canadian Priority Charges, the Postpetition B-2 Liens, the Prepetition B-2 Liens, and the B-2 Adequate Protection Liens) with respect to the Prepetition B-2 Priority Collateral, as set forth herein and in the DIP Loan Documents.

(i) *Additional Junior DIP Commitment*. Notwithstanding anything to the contrary contained herein, or in the Interim UST Cash Collateral Order or the DIP Loan Documents to the contrary, the claims and liens in respect of the Additional Junior DIP Commitment (if any) shall not prime any prepetition or postpetition claims or liens of the Prepetition Secured Parties or the Prepetition UST Secured Parties, and shall be junior and subordinated (including in right of

43

payment) in all respects to the prepetition and postpetition claims and liens of the Prepetition Secured Parties and the Prepetition UST Secured Parties, including in respect of any adequate protection claims and liens granted under this Interim Order and the Interim UST Cash Collateral Order, including the Adequate Protection Liens, the UST Adequate Protection Liens, the Adequate Protection Obligations, the UST Adequate Protection Obligations, the 507(b) Claims, and the UST 507(b) Claims, including, for the avoidance of doubt, to the payment and enforcement rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties, which rights with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth in this Interim Order and the other DIP Loan Documents.

8.     *Postpetition B-2 Liens*.  As security for the Postpetition B-2 Obligations, effective and automatically properly perfected on the date this Interim Order is entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the B-2 Agent of, or over, any Collateral, without any further action by the Postpetition B-2 Secured Parties, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "Postpetition B-2 Liens" and, together with the Junior DIP Liens, the "DIP Liens") are hereby granted to the Postpetition B-2 Agent for the benefit of the Postpetition B-2 Secured Parties:

(a)     *Liens on DIP Proceeds Account*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in the proceeds of the Postpetition B-2 Facility in the DIP Proceeds Account.

(b)     *Liens on Prepetition Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior priority priming security interest and lien (subject and subordinate only to, in the following order,

44

(1) the Carve-Out and (2) the Canadian Priority Charges) on the Prepetition Collateral with the same priority as the Prepetition B-2 Liens on such Prepetition Collateral (as set forth in the Prepetition Intercreditor Agreement and herein), including, for the avoidance of doubt, first priority liens on all Prepetition B-2 Priority Collateral, *pari passu* with the Prepetition B-2 Liens on such Prepetition Collateral, and senior to the Junior DIP Liens on such Prepetition Collateral, and to the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties on such Prepetition B-2 Priority Collateral.

(c)    *No Senior Liens.*  The Postpetition B-2 Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code unless otherwise provided in the DIP Loan Documents or this Interim Order, and (B) unless otherwise provided for in the DIP Loan Documents or in this Interim Order, any liens or security interests arising after the Petition Date (other than the Junior DIP Liens as and to the extent set forth herein), including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code unless otherwise provided for in the DIP Loan Documents or in this Interim Order; *provided*, that, for the avoidance of doubt, the Prepetition B-2 Liens, unless otherwise provided herein, shall be subject and subordinate to the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties with respect to the Prepetition ABL Priority Collateral and the Prepetition UST Tranche B Collateral, as applicable, to the extent set forth in the foregoing paragraphs and the DIP Loan Documents; *provided*, *further*, that, for the

45

avoidance of doubt, under the Postpetition B-2 Facility and this Interim Order, the Postpetition B-2 Liens shall prime and be senior to the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition UST Tranche B Secured Parties, the Prepetition UST Tranche A Secured Parties, and shall be senior to the Junior DIP Liens (but shall be junior and subordinate to the Carve-Out and the Canadian Priority Charges), in each case with respect to the Prepetition B-2 Priority Collateral, as set forth herein and in the DIP Loan Documents.

9.      *Protection of DIP Secured Parties' Rights.*

(a)      Except as and to the extent set forth in clauses (b)-(d) immediately below, to the extent any Prepetition Secured Party (or any Prepetition UST Secured Party) has possession of, or control over, any Prepetition Collateral or DIP Collateral, or has been listed as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, such Prepetition Secured Party (and any Prepetition UST Secured Party) shall be deemed to have such possession or be so listed or have such possession or control as a gratuitous bailee and/or gratuitous agent for the benefit of the Junior DIP Secured Parties, and such Prepetition Secured Party (including any such Prepetition UST Secured Party) shall comply with the instructions of the Junior DIP Agent with respect to any of the foregoing.

(b)      So long as there are any B-2 Obligations, Postpetition B-2 Superpriority Claims or B-2 507(b) Claims outstanding and until all B-2 Obligations, Postpetition B-2 Superpriority Claims and B-2 507(b) Claims have been indefeasibly paid in full in cash, the B-2 Secured Parties shall have the exclusive right to exercise remedies with respect to the Prepetition B-2 Priority Collateral and the Junior DIP Secured Parties shall not exercise any remedies with respect to the Prepetition B-2 Priority Collateral, and, as among the Prepetition Facilities, the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Secured

46

Parties) with respect to the Prepetition B-2 Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement as if (following payment in full in cash of all B-2 Obligations, Postpetition B-2 Superpriority Claims and B-2 507(b) Claims but prior to the DIP Obligations being satisfied in full) the Junior DIP Agent was party thereto as a Tranche B-2 Term Agent (as defined in the Prepetition Intercreditor Agreement); *provided* that, notwithstanding the foregoing (and these clauses (b)-(d)), nothing contained herein (including these clauses (b)-(d)) shall be construed to prevent the Junior DIP Lender or the Junior DIP Agent from (i) filing a claim or statement of interest with respect to the outstanding obligations owed to it in the Chapter 11 Cases, (ii) taking any action (not adverse to the priority status of any other Prepetition Agent or any Prepetition Secured Party (including any Prepetition UST Secured Party), in order to create, perfect, preserve or protect (but not enforce) its lien, or (iii) filing any necessary or responsive pleadings in opposition to any motion, adversary proceeding, or other pleading filed by any person objecting to or otherwise seeking disallowance of the claim or lien of any DIP Lender or the DIP Agent (such actions in clauses (i) through (iii), the "Permitted Actions").

(c)     So long as there are any Prepetition ABL Obligations or ABL 507(b) Claims outstanding and until all Prepetition ABL Obligations and ABL 507(b) Claims have been, solely with respect to the Prepetition ABL Priority Collateral, indefeasibly paid in full in cash, including the cash collateralization of all issued and outstanding letters of credit, the Prepetition ABL Secured Parties shall have the exclusive right to exercise remedies with respect to the Prepetition ABL Priority Collateral and the DIP Secured Parties shall not exercise any remedies (*provided*, they shall be permitted to take Permitted Actions) with respect to the Prepetition ABL Priority Collateral until the Prepetition Facilities have been indefeasibly paid in full in cash (including the cash collateralization of all issued and outstanding letters of credit of the Prepetition ABL Secured

47

Parties), and, as among the Prepetition Facilities, the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) with respect to the Prepetition ABL Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement.

(d)     So long as there are any Prepetition UST Tranche B Obligations or UST Tranche B 507(b) Claims outstanding and until all Prepetition UST Tranche B Obligations and UST Tranche B 507(b) Claims have been, solely with respect to the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, indefeasibly paid in full in cash, the Prepetition UST Tranche B Secured Parties shall have the exclusive right to exercise remedies with respect to the Prepetition UST Tranche B Priority Collateral and the Prepetition Joint Collateral (*provided*, that, with respect to the Prepetition Joint Collateral, the Prepetition B-2 Secured Parties, if any Prepetition B-2 Obligations or B-2 507(b) Claims remain outstanding, shall maintain their enforcement rights as set forth in the Prepetition Intercreditor Agreement) and the DIP Secured Parties shall not exercise any remedies (*provided*, they shall be permitted to take Permitted Actions) with respect to the Prepetition UST Tranche B Priority Collateral and the Prepetition Joint Collateral until the Prepetition Facilities have been indefeasibly paid in full in cash, and, as among the Prepetition Facilities, the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Tranche B Secured Parties) with respect to the Prepetition Joint Collateral and the Prepetition UST Tranche B Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement.

(e)     Except as set forth in clauses (b)-(d) immediately above or as otherwise set forth in this Interim Order (including paragraph 13) with respect to the Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, and Prepetition UST Tranche B Priority Collateral, any proceeds of Prepetition Collateral received by any Prepetition Secured

Party (including any Prepetition UST Secured Party), whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the Junior DIP Agent for the benefit of the Junior DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. The Junior DIP Agent is hereby authorized to make any such endorsements as agent for the applicable Prepetition Secured Parties (including the appliable Prepetition UST Secured Parties). This authorization is coupled with an interest and is irrevocable.

(f)     The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except (i) as otherwise permitted by the DIP Loan Documents (including the DIP Term Sheet) or (ii) in the case of any Prepetition ABL Priority Collateral, UST Tranche B Priority Collateral, and UST Tranche B Joint Collateral, pursuant to an order of the Court.

(g)     Upon the occurrence and during the continuation of an Event of Default that has not been waived by the Junior DIP Lender under the DIP Term Sheet (or applicable DIP Loan Documents) and following delivery of written notice (a "Termination Notice") (which may be by e-mail) on not less than five (5) calendar days' notice (such five (5) calendar day period, the "Junior DIP Agent Remedies Notice Period") to lead restructuring counsel to the Debtors, lead restructuring counsel to the Postpetition B-2 Agent, lead restructuring counsel to each of the Prepetition Agents, lead counsel to the Creditors' Committee, counsel to the Prepetition UST Secured Parties, and the U.S. Trustee (the "Remedies Notice Parties"), the Junior DIP Agent may (and any automatic stay otherwise applicable to the Junior DIP Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this

49

Interim Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit the Junior DIP Agent to take any or all of the following actions, at the same time or different times, unless the Court orders otherwise (*provided*, that, during the Junior DIP Agent Remedies Notice Period, the Debtors, the Creditors' Committee and/or any party in interest shall be entitled to seek an emergency hearing with the Court and the rights of the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties and the Prepetition Secured Parties (including the Prepetition UST Secured Parties) are fully preserved) (*provided*, *further*, that, if a request for such hearing is made prior to the end of the Junior DIP Agent Remedies Notice Period, then the Junior DIP Agent Remedies Notice Period shall be continued until the Court hears at its earliest availability and rules with respect thereto): (a) immediately terminate and/or revoke the Debtors' right under this Interim Order and any other DIP Loan Documents to use any Cash Collateral (subject to the Carve-Out and related provisions and the Canadian Priority Charges), (b) terminate the Junior DIP Facility and any DIP Loan Document as to any future liability or obligation of the Junior DIP Secured Parties but without affecting any of the Junior DIP Obligations or the Junior DIP Liens securing such Junior DIP Obligations; (c) declare all Junior DIP Obligations to be immediately due and payable; (d) deliver a Carve-Out Trigger Notice; and (e) invoke the right to charge interest at the default rate under the DIP Loan Documents. Upon delivery of such Termination Notice by the Junior DIP Agent, without further notice or order of the Court, subject only to the last sentence of paragraph 9(g), the Junior DIP Secured Parties', the Postpetition B-2 Secured Parties' and the Prepetition Secured Parties' consent to use Cash Collateral and the Debtors' ability to incur Additional Junior DIP Obligations hereunder will automatically terminate and the Junior DIP Secured Parties will have no obligation to provide any Junior DIP Loans or other financial accommodations. As soon as

50

reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

(h)     Immediately following the occurrence of an Event of Default and the delivery of the Termination Notice, subject to the Junior DIP Agent Remedies Notice Period, the Junior DIP Secured Parties shall be authorized to, subject to the Prepetition Intercreditor Agreement, the terms and provisions set forth in this Interim Order, and the Carve-Out and related provisions and the Canadian Priority Charges: (a) freeze monies or balances in the Debtors' accounts (unless such monies constitute Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral); (b) immediately set-off any and all amounts in accounts maintained by the Debtors with, or subject to the control of, the Junior DIP Agent or the Junior DIP Secured Parties against the Junior DIP Obligations (unless such amounts constitute Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), (c) enforce any and all rights against the Junior DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), including, without limitation, foreclosure on all or any portion of the Junior DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), occupying the Debtors' premises, sale or disposition of the Junior DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral); and (d) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Documents (including the DIP Term Sheet) or applicable law (other than

51

with respect to Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral). If the Junior DIP Secured Parties are not prohibited by the Court from taking any enforcement action with respect to the Junior DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), the Debtors shall cooperate with the Junior DIP Secured Parties in their efforts to enforce their security interest in the Junior DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such Junior DIP Secured Parties from enforcing their security interests in the Junior DIP Collateral. During the Junior DIP Agent Remedies Notice Period, the Debtors may use the proceeds of the Junior DIP Facility to the extent drawn prior to the occurrence of an Event of Default and Cash Collateral to make payments, in each case, solely in accordance with the Approved Budget and the terms of the DIP Loan Documents and to the extent necessary to avoid immediate and irreparable harm to the Collateral and protection and preservation thereof.

(i)     Upon the occurrence and during the continuation of an Event of Default that has not been waived by the B-2 Lenders under the DIP Term Sheet (or applicable DIP Loan Documents) and following delivery of a Termination Notice (which may be by e-mail) on not less than five (5) calendar days' notice (such five (5) calendar day period, the "B-2 Agent Remedies Notice Period") to the Remedies Notice Parties, the Junior DIP Agent, and counsel thereto, the B-2 Agent may (and any automatic stay otherwise applicable to the Junior DIP Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the

52

terms of this Interim Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit the B-2 Agent to take any or all of the following actions, at the same time or different times, unless the Court orders otherwise (*provided*, that, during the B-2 Agent Remedies Notice Period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court and the rights of the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties and the Prepetition Secured Parties (including the Prepetition UST Secured Parties) are fully preserved) (*provided*, *further*, that, if a request for such hearing is made prior to the end of the B-2 Agent Remedies Notice Period, then the B-2 Agent Remedies Notice Period shall be continued until the Court hears at its earliest availability and rules with respect thereto): (a) immediately terminate and/or revoke the Debtors' right under this Interim Order and any other DIP Loan Documents to use any Cash Collateral (subject to the Carve-Out and related provisions and the Canadian Priority Charges), (b) terminate the Postpetition B-2 Facility and any DIP Loan Document as to any future liability or obligation of the Postpetition B-2 Secured Parties but without affecting any of the Postpetition B-2 Obligations or the Postpetition B-2 Liens securing such B-2 Obligations; (c) declare all Postpetition B-2 Obligations to be immediately due and payable; (d) deliver a Carve-Out Trigger Notice; and (e) invoke the right to charge interest at the default rate under the DIP Loan Documents.  Upon delivery of such Termination Notice by the B-2 Agent, without further notice or order of the Court, subject only to the last sentence of paragraph 9(j), the Junior DIP Secured Parties', the Postpetition B-2 Secured Parties' and the Prepetition Secured Parties' consent to use Cash Collateral and the Debtors' ability to incur additional Postpetition B-2 Obligations hereunder will automatically terminate and the B-2 Secured Parties will have no obligation to provide any Postpetition B-2 Loans or other financial accommodations.

As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

(j)     Immediately following the occurrence of an Event of Default and the delivery of the Termination Notice, subject to the B-2 Agent Remedies Notice Period, the B-2 Secured Parties shall be authorized to, subject to the Prepetition Intercreditor Agreement, the terms and provisions set forth in this Interim Order, and the Carve-Out and related provisions and the Canadian Priority Charges: (a) freeze monies or balances in the Debtors' accounts (unless such monies constitute Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral); (b) immediately set-off any and all amounts in accounts maintained by the Debtors with, or subject to the control of, the B-2 Agent or the B-2 Secured Parties against the B-2 Obligations (unless such amounts constitute Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), (c) enforce any and all rights against the Prepetition Collateral (other than Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), including, without limitation, foreclosure on all or any portion of the Prepetition Collateral (other than Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), occupying the Debtors' premises, sale or disposition of the Prepetition Collateral (other than Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral); and (d) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Documents (including the DIP Term Sheet) or applicable law (other than with respect to Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral).  If the B-2 Secured Parties are not prohibited by the Court from taking any

enforcement action with respect to the Prepetition Collateral (other than Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), the Debtors shall cooperate with the B-2 Secured Parties in their efforts to enforce their security interest in the Prepetition Collateral (other than Prepetition ABL Priority Collateral, UST Tranche B Joint Collateral, or Prepetition UST Tranche B Priority Collateral), and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such B-2 Secured Parties from enforcing their security interests in the Prepetition Collateral. During the Junior DIP Agent Remedies Notice Period, the Debtors may use the proceeds of the Junior DIP Facility to the extent drawn prior to the occurrence of an Event of Default and Cash Collateral to make payments, in each case, solely in accordance with the Approved Budget and the terms of the DIP Loan Documents and to the extent necessary to avoid immediate and irreparable harm to the Prepetition Collateral and protection and preservation thereof.

(k)     Upon the occurrence and continuance of any of the below events, any such event being deemed an Event of Default, the Prepetition ABL Agent, on not less than five (5) calendar days' notice to the Junior DIP Secured Parties (and their counsel), the Postpetition B-2 Secured Parties (and their counsel), and the Remedies Notice Parties (such five (5) calendar day period, the "ABL Remedies Notice Period") and unless the Court orders otherwise (*provided*, that, during the ABL Remedies Notice Period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court), may terminate its and the Prepetition ABL Secured Parties' consent to the Debtors' use of Cash Collateral constituting Prepetition ABL Priority Collateral (the date of such termination, the "Cash Collateral Termination Date"): (i) the DIP Obligations have been accelerated in accordance with the terms of the DIP Loan Documents; (ii) the filing of any motion or pleading by the Debtors, or the entry of an order

on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify the Interim Order or Final Order in a manner adverse to the Prepetition ABL Secured Parties without the consent of the Prepetition ABL Secured Parties; (iii) the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors; (iv) the Debtors shall attempt to invalidate, reduce or otherwise impair the Prepetition ABL Obligations; (v) the dismissal of any of the Chapter 11 Cases; (vi) the effective date of any plan of reorganization; (vii) the conversion of any of the Chapter 11 Cases to a case under chapter 7; (viii) the delivery of a Carve-Out Trigger Notice as provided in this Interim Order; or (ix) the failure of the Debtors to make any payments as and when required under paragraph 13(c) and paragraph 14(a)(iii) of this Interim Order; (x) the Final Order (in form and substance reasonably acceptable to the Prepetition ABL Agent) shall not have been entered by the Court within forty-five (45) days of the Petition Date; (xi) the Prepetition ABL Obligations shall not have been fully repaid or cash collateralized, as applicable, in accordance with the Prepetition ABL Loan Documents by the date that is four (4) months after entry of the Interim Order; (xii) the Debtors shall materially breach any of the other provisions of paragraph 13 of this Interim Order; (xiii) any Approved Budget shall be updated, supplemented, replaced, or otherwise modified without the prior consent of the Prepetition ABL Agent; or (xiv) at any time on or after the date that is four (4) weeks after the entry of this Interim Order, the Debtors shall breach the receipts variance covenant set forth on <u>Exhibit 2</u> attached hereto.

(l)     Immediately upon the occurrence of the Cash Collateral Termination Date, the Prepetition ABL Secured Parties shall be authorized, subject to the Prepetition Intercreditor Agreement and the Carve-Out and the Canadian Priority Charges, to: (a) freeze monies or balances in the Debtors' accounts which constitute proceeds of ABL Priority Collateral; (b) immediately

set-off any and all amounts in accounts maintained by the Debtors to the extent such amounts constitute proceeds of ABL Priority Collateral; (c) enforce any and all rights against the DIP Collateral that constitutes proceeds of ABL Priority Collateral, including, without limitation, foreclosure on all or any portion of the DIP Collateral constituting ABL Priority Collateral and occupying the Debtors' premises; and (d) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the Prepetition ABL Loan Documents or applicable law, subject to the Prepetition Intercreditor Agreement. If the Prepetition ABL Secured Parties are permitted by the Court to take any enforcement action with respect to the ABL Priority Collateral, the Debtors shall cooperate with the Prepetition ABL Secured Parties in their efforts to enforce their security interest in the ABL Priority Collateral, and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such Prepetition ABL Secured Parties from enforcing their security interests in the ABL Priority Collateral.

(m)  No rights, protections or remedies of the Junior DIP Secured Parties, the Prepetition Secured Parties, or the Prepetition UST Secured Parties granted by this Interim Order, the Interim UST Cash Collateral Order, or the DIP Loan Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

10.  *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Carve-Out and Canadian Priority Charges, no costs or expenses of administration of these cases or any Successor Case or any future proceeding that may result therefrom, including liquidation in

bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral and, upon entry of a final order providing for such relief, Prepetition B-2 Collateral or Prepetition ABL Collateral (in each case, including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the B-2 Agent, or the Prepetition ABL Agent, as applicable, and no consent shall be implied from any action, inaction or acquiescence by any of the DIP Secured Parties, the B-2 Secured Parties, or Prepetition ABL Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Secured Parties, the B-2 Secured Parties, or Prepetition ABL Secured Parties to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.  Further, effective upon entry of a final order providing for such relief, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the DIP Secured Parties or Prepetition Secured Parties.

11.     *No Marshaling*.  In no event shall the DIP Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the DIP Obligations.  Effective upon entry of a final order providing for such relief, in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or the Prepetition Secured Obligations.

12.     *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Secured Parties or Prepetition Secured Parties pursuant to the provisions of this Interim Order, the DIP Loan Documents or any subsequent order of the Court shall, subject to the reservation of rights set out in paragraph 23 of this Interim Order with respect to the Prepetition Secured Parties, be irrevocable, received free and clear of any claim, charge, assessment or other liability.

13.     *Use of Cash Collateral*.

(a)  *Authorization to Use Cash Collateral*. The Debtors are hereby authorized, solely on the terms and conditions of this Interim Order and the Interim UST Cash Collateral Order, to use all Cash Collateral in accordance with the DIP Loan Documents and Approved Budget (subject to Permitted Variances).

(b)  *Proceeds of DIP Loans*.  All proceeds of the DIP Loans shall be funded and held in the DIP Proceeds Account (as defined in the DIP Loan Documents) in accordance with the terms of the DIP Loan Documents, which DIP Proceeds Account shall be maintained as a segregated account by the Borrower as set forth in the DIP Loan Documents.  For the avoidance of doubt, none of the DIP Proceeds Account, any funds therein constituting DIP Loans, or any proceeds of the DIP Loans (exclusive, for the avoidance of doubt, of any proceeds constituting Prepetition ABL Priority Collateral) shall constitute Prepetition ABL Priority Collateral or be subject to any terms or provisions in this Interim Order governing ABL Cash Collateral.

(c)  *Procedures for Use of ABL Cash Collateral*.

(i)  *Delivery of ABL Cash Collateral to Prepetition ABL Agent.* Beginning on the first business day after the date that this Interim Order is entered, and on each business day thereafter following receipt of any Cash Collateral constituting Prepetition ABL Priority Collateral ("ABL Cash Collateral"), the Debtors shall, unless previously paid, (x) wire 80% of the amount of ABL Cash Collateral received on or after August 3, 2023 into the applicable Debtor's blocked account ending *8700 maintained at Citizens Bank on the first business day following receipt of the funds to the extent not already remitted (or such other account as the Prepetition ABL Agent and the Debtors may agree in writing from time to time), to the extent not wired prior to the Petition Date (it being acknowledged that the Prepetition ABL Agent received two such wires prior to the Petition Date in respect of such percentage of the ABL Cash Collateral

received on August 3, 2023 and a portion of the ABL Cash Collateral received on August 4, 2023,
as well as received an additional wire of $16.5 million constituting ABL Cash Collateral following
the Court's entry of the interim cash collateral order entered at Docket No. 181) (which such prior
payments, for the avoidance of doubt, are approved and shall not be invalidated by this Interim
Order), or (y) otherwise deliver 80% of the ABL Cash Collateral received on or after August 3,
2023 to the Prepetition ABL Agent in a manner satisfactory to the Prepetition ABL Agent (such
remittance, deposit, or delivery, each a "_Daily Delivery Event_").  Commencing on the third
business day of the week following entry of this Interim Order (and on the third business day of
each week thereafter) (each, an "_Eligibility Reporting Date_"), the Debtors shall deliver to the
Prepetition ABL Agent information on collections from the prior week (as well as, if applicable,
information regarding postpetition collections from prior thereto if either (a) such information has
yet to be reported or (b) such information reflects a change from prior reporting (each of (a) and
(b), as applicable, the "_Supplemental Reporting_")) in form and detail reasonably acceptable to the
Prepetition ABL Agent.  On the business day after each Eligibility Reporting Date, the Debtors
shall (x) to the extent the cumulative Daily Delivery Events since August 3, 2023 (taking
Supplemental Reporting into account, if applicable) resulted in delivery of less than 80% of the
amount of ABL Cash Collateral received, remit to the Prepetition ABL Agent ABL Cash Collateral
in an amount necessary to equal 80% of the amount of ABL Cash Collateral received on or after
August 3, 2023 or (y) to the extent the cumulative Daily Delivery Events since August 3, 2023
(taking Supplemental Reporting into account, if applicable) resulted in delivery in excess of 80%
of the amount of ABL Cash Collateral received, deduct from that day's Daily Delivery Event ABL
Cash Collateral in an amount necessary to equal 80% of the amount of ABL Cash Collateral
received on or after August 3, 2023.  The portion of such ABL Cash Collateral to remain with the

Debtors in accordance with this paragraph 13(c)(i) is referred to herein as the "Available ABL Cash Collateral." The Debtors shall be permitted to access and utilize all Available ABL Cash Collateral in accordance with the Approved Budget and the terms and provisions of this Interim Order. For the avoidance of doubt, no portion of the Existing ABL Cash Collateral Deposits shall be required to be remitted to the Debtors pursuant to this paragraph 13(c)(i), nor shall any portion of the Existing ABL Cash Collateral Deposits constitute Available ABL Cash Collateral.

(ii) *ABL Cash Collateral in Prepetition ABL Agent's Possession.* The Prepetition ABL Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any other Prepetition ABL Secured Party's possession or control which constitute Prepetition ABL Priority Collateral or proceeds thereof.

(d) *Application of Cash Collateral to Prepetition ABL Obligations.* Notwithstanding anything to the contrary in this Interim Order, except with respect to the Available ABL Cash Collateral as set forth in paragraph 13(c)(i), the Prepetition ABL Agent is authorized at any time, and from time to time, to apply all or any portion of the ABL Cash Collateral (including, without limitation, the Existing ABL Cash Collateral Deposits) now or hereafter in the Prepetition ABL Agent's or any other Prepetition ABL Secured Party's possession or control to the payment or cash collateralization, as applicable, of Prepetition ABL Obligations (including, without limitation, any accrued and unpaid ABL Adequate Protection Fees and Expenses in accordance with paragraph 18, without limiting the obligation of the DIP Loan Parties under paragraph 18 to pay such amounts directly) in accordance with the Prepetition ABL Loan Documents, and no other party in interest shall have any right to use or direct the use of such ABL Cash Collateral, except that the Debtors shall have the right to use and direct the use of Available ABL Cash Collateral.

61

All such applications to Prepetition ABL Obligations shall be final, subject only to the right of parties in interest, including the Debtors, to seek a determination in accordance with paragraph 19 of this Interim Order that such applications resulted in the payment of any unsecured prepetition claim of the Prepetition ABL Secured Parties.

(e)     *Accounts Collection Practices.*   The Debtors shall maintain at all times reasonably appropriate staffing, staffing levels, and other resources with respect to Accounts billing and collections in order to maximize the Debtors' recovery of proceeds with respect to such Accounts.  The Debtors shall also provide the Prepetition ABL Agent with reasonable access to all Accounts billing and collections systems and associated staff members.

14.     *Adequate Protection of Prepetition Secured Parties.*  Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) for the aggregate Diminution in Value and as an inducement to the Prepetition Secured Parties to consent to the priming of certain of the Prepetition Liens and the use of their Cash Collateral, the Prepetition Secured Parties are granted the following Adequate Protection (collectively, the "Adequate Protection Obligations"):

(a)     *Adequate Protection of Prepetition ABL Secured Parties.*

(i)     *ABL Adequate Protection Liens.*  The Prepetition ABL Agent is hereby granted, for the benefit of the Prepetition ABL Secured Parties, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition ABL Secured Parties' Diminution in Value upon all of the Prepetition Collateral (the "ABL Adequate Protection Liens"): (i) in the case of the Prepetition ABL Priority Collateral, senior to all other liens, subject

and subordinate to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges; (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, (D) the B-2 Adequate Protection Liens, and (E) the DIP Liens; (iii) in the case of the Prepetition UST Tranche B Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition UST Tranche B Liens, (D) the UST Tranche B Adequate Protection Liens, (E) the Prepetition B-2 Liens, and (F) the B-2 Adequate Protection Liens; (iv) in the case of the UST Tranche B Joint Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Prepetition UST Tranche B Liens, the Prepetition B-2 Liens, the UST Tranche B Adequate Protection Liens, and the B-2 Adequate Protection Liens; and (iv) in the case of the Unencumbered Property, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the DIP Unencumbered Property Liens.

(ii) *ABL Section 507(b) Claims*. The Prepetition ABL Secured Parties are hereby granted allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition ABL Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "ABL 507(b) Claims"), which ABL 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but including, without limitation, Avoidance Proceeds). Except as otherwise provided herein, the ABL 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy

Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that the ABL 507(b) Claims shall be junior in all respects to (i) the Carve-Out, (ii) the Canadian Priority Charges, and (iii) the applicable senior Prepetition Liens and Adequate Protection Liens (as set forth in this Interim Order).

(iii) *Prepetition ABL Secured Parties' Interest, Fees and Expenses*. As further adequate protection, subject to the Carve-Out and the Canadian Priority Charges, the DIP Loan Parties shall make current cash payments on the first calendar day of each month of (x) interest at the Default Rate (as defined in the Prepetition ABL Credit Agreement), (y) fees with respect to Letters of Credit pursuant to Section 3.2.2 of the Prepetition ABL Credit Agreement (including any such fees that accrue at the default rate as set forth therein), and (z) other fees, in each case pursuant to, due, and payable under the terms of the Prepetition ABL Loan Documents, and shall currently pay in cash, subject to the review procedures set forth in paragraph 18 of this Interim Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition ABL Secured Parties' legal and financial advisors, including, without limitation, those of Choate, Hall & Stewart LLP, Richards, Layton & Finger, PA, AlixPartners, LLP, and any local legal counsel or other advisors, consultants, and other professionals reimbursable under the Prepetition ABL Loan Documents (collectively, the "ABL Adequate Protection Fees and Expenses" and, together with the ABL Adequate Protection Liens and ABL 507(b) Claims, the "ABL Adequate Protection Obligations").

(iv) *Additional Rights and Protections*. The Debtors shall deliver to the Prepetition ABL Agent (substantially concurrent with delivery to the DIP Agent) all financial statements, reports, certificates and related items that are required to be delivered to the DIP Agent pursuant to the DIP Term Sheet and other applicable DIP Loan Documents. On the third (3rd)

business day of each week (commencing on the first full calendar week after entry of this Interim Order), the Debtors shall deliver to the Prepetition ABL Agent a Borrowing Base Certificate (as defined in the Prepetition ABL Credit Agreement) as required pursuant to Section 8.1(ii) of the Prepetition ABL Credit Agreement, which shall be accompanied by customary backup reporting in form and detail reasonably acceptable to the Prepetition ABL Agent, including, without limitation, Account agings, and a roll-forward of Prepetition ABL Priority Collateral; *provided* that the first Borrowing Base Certificate of each month following entry of this Interim Order shall further include a line item for Ineligible Accounts and a breakdown of Ineligible Accounts as part of the customary backup reporting provided. The Debtors shall make the members of their senior management and its professional advisors available for update calls at least one time per calendar week with the prepetition ABL Agent and its respective professional advisors, at times reasonably acceptable to the Prepetition ABL Agent to discuss the cases, the then-current Approved Budget, the Budget Variance Reports, the Liquidity Reports (each as defined in the DIP Term Sheet), other reporting delivered pursuant to the DIP Loan Documents, union matters, the status of any monetization strategies being pursued by the Debtors, including pursuant to the Bidding Procedures Order (as defined in the DIP Term Sheet), and any other matters (including business, operational and due diligence matters) reasonably requested by the Prepetition ABL Agent.

(b)     *Adequate Protection of Prepetition B-2 Secured Parties.*

(i)     *B-2 Adequate Protection Liens*. The Prepetition B-2 Agent is hereby granted, for the benefit of the Prepetition B-2 Secured Parties, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition B-2 Secured Parties'

Diminution in Value upon all of the Prepetition Collateral (the "B-2 Adequate Protection Liens" and, together with the ABL Adequate Protection Liens, the "Adequate Protection Liens"):[13] (i) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges; (ii) in the case of the Prepetition UST Tranche B Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition UST Tranche B Liens, and (D) the UST Tranche B Adequate Protection Liens; (iii) in the case of the Prepetition Joint Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Prepetition UST Tranche B Liens and the Prepetition B-2 Liens; (iv) in the case of the Prepetition ABL Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition ABL Liens, and (D) the ABL Adequate Protection Liens; and (v) in the case of the Unencumbered Property, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges and (C) the DIP Unencumbered Property Liens.

(ii)      *B-2 Section 507(b) Claims*.  The Prepetition B-2 Secured Parties are hereby granted allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition B-2 Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "B-2 507(b) Claims" and, together with the ABL 507(b) Claims, the "507(b) Claims"), which B-2 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions, but including, without limitation, Avoidance Proceeds).

---

[13]   For the avoidance of doubt, any reference herein to the "Adequate Protection Liens of the Prepetition UST Secured Parties" shall refer to the UST Adequate Protection Liens (as defined and set forth in the contemporaneously entered Interim UST Cash Collateral Order).

Except as otherwise provided herein, the B-2 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that the B-2 507(b) Claims shall be junior to (i) the Carve-Out, (ii) the Canadian Priority Charges, and (iii) the applicable senior Prepetition Liens and Adequate Protection Liens (as set forth in this Interim Order).

        (iii)     *Prepetition B-2 Secured Parties' Interest, Fees and Expenses*.  As further adequate protection, the DIP Loan Parties shall make current cash payments of (x) interest on the last business day of each month at the rate accruing since the Petition Date (which is and shall be deemed for all purposes to be the default rate set forth in Section 2.07 of the Prepetition B-2 Credit Agreement) with respect to ABR Loans (as defined in the Prepetition B-2 Credit Agreement)) and (y) other fees, in each case pursuant to, due, and payable under the terms of the Prepetition B-2 Loan Documents, and shall currently pay in cash, subject to the review procedures set forth in paragraph 18 of this Interim Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the current and former Prepetition B-2 Secured Parties' legal and financial advisors, including, without limitation, those of (i) White & Case LLP and GrayRobinson, P.A., as counsel to the B-2 Lenders (ii) Holland & Knight LLP, as counsel to the Prepetition B-2 Agent), and (iii) Cousins Law, Milbank LLP and FTI Consulting (as Canadian counsel, lead restructuring counsel and financial advisor, respectively, to certain former Prepetition B-2 Lenders) (*provided*, that, the fees and expenses of the professionals set forth in this clause (iii) shall be reimbursed only as incurred through August 15, 2023), and with respect to

67

clauses (i) and (ii), any local legal counsel or other advisors in any foreign jurisdiction (*provided*, no more than one local legal counsel or other advisor in any foreign jurisdiction) (collectively, the "B-2 Adequate Protection Fees and Expenses" and, together with the B-2 Adequate Protection Liens and B-2 507(b) Claims, the "B-2 Adequate Protection Obligations").

(c)     *Adequate Protection of Prepetition UST Secured Parties.*   The Adequate Protection in favor of the Prepetition UST Secured Parties is set forth in the Interim UST Cash Collateral Order.

15.     *Maintenance of Collateral*.   The DIP Loan Parties shall continue to maintain and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Loan Documents and the DIP Loan Documents, as applicable.

16. *Authorization to Record DIP Liens and Adequate Protection Liens.*

(a) Without in any way limiting the validity of the automatic perfection of the DIP Liens and the Adequate Protection Liens under the terms of this Interim Order and the Interim UST Cash Collateral Order, the DIP Secured Parties and the Prepetition Secured Parties are hereby authorized, but not required, to execute in the name of the DIP Loan Parties or the Prepetition Loan Parties (as applicable), as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction, or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests granted to them hereunder (the "Perfection Actions"). All such Perfection Actions shall be deemed to have been taken on the date of entry of this Interim Order. The automatic stay shall be modified to the extent necessary to permit the DIP Secured Parties and each Prepetition Secured Parties to take any Perfection Action. For the avoidance of doubt, the DIP Liens and the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order, whether or not the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties, or the Prepetition Secured Parties take such Perfection Actions.

(b) A certified copy of this Interim Order may, in the discretion of the DIP Agent and each Prepetition Agent, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing and recording offices are hereby authorized to accept a certified copy of this Interim Order for filing and/or recording, as applicable.

17.     *Preservation of Rights Granted Under this Interim Order.*

(a)     Other than the claims and liens expressly granted or permitted by this Interim Order, including the Carve-Out and the Canadian Priority Charges, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in or permitted under this Interim Order, including the provisions of paragraph 19, the DIP Liens and the Adequate Protection Liens shall not be: (i) junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) except as provided in this Interim Order or the DIP Loan Documents, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) except as provided in this Interim Order or the DIP Loan Documents, subordinated to or made *pari passu* with any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (iv) except as provided in this Interim Order or the DIP Loan Documents, junior to any intercompany liens or security interests of the DIP Loan Parties.

(b)     The occurrence and continuance of any Event of Default shall, after written notice by the DIP Agent to the Borrower, counsel to the Borrower, the U.S. Trustee, and lead counsel to the Creditors' Committee (if any), constitute an event of default under this Interim Order and, upon such notice, interest, including, where applicable, default interest, shall accrue and be payable as set forth in the DIP Term Sheet.  Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting

these cases to cases to a Successor Case: (A) the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Liens, the 507(b) Claims, and the Prepetition Liens shall continue in full force and effect, shall maintain their priorities as provided in this Interim Order and the Interim UST Cash Collateral Order, and shall remain binding on all parties in interest until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash; (B) the other rights granted by this Interim Order, including with respect to the Carve-Out and the Canadian Priority Charges, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, and enforceability of the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, and the Carve-Out and the Canadian Priority Charges.  Notwithstanding any such reversal, modification, vacatur or stay, the DIP Obligations, DIP Liens, Adequate Protection Obligations, Adequate Protection Liens, DIP Superpriority Claims, and 507(b) Claims incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code.

71

(d)     Except as expressly provided in this Interim Order or in the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by this Interim Order and the DIP Loan Documents, as well as the Carve-Out and the Canadian Priority Charges, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these cases, or terminating the joint administration of these cases; (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents); or (iii) confirming a chapter 11 plan in any of the cases.  The terms and provisions of this Interim Order and the DIP Loan Documents shall continue in full force and effect in these cases and in any Successor Cases until all DIP Obligations, Prepetition Secured Obligations, and Adequate Protection Obligations are indefeasibly paid in full in cash and the DIP Commitments have been terminated.  Any confirmation order entered in these cases shall not discharge or otherwise affect in any way the joint and several obligations of the DIP Loan Parties to the DIP Secured Parties under the DIP Facility and the DIP Loan Documents, other than after (x) the payment in full and in cash of all DIP Obligations and the termination of the DIP Commitments or (y) the occurrence of the effective date of such confirmed plan (solely in accordance with the terms of such plan).

(e)     Nothing in this Interim Order or in the other DIP Loan Documents shall, nor shall the extension of Postpetition B-2 Loans or the exercise of any rights thereunder, in any way impair or otherwise effect the validity, perfection, extent or priority of the Prepetition B-2 Liens.

18.     *Payment of Fees and Expenses*.  The DIP Loan Parties are authorized and directed

to pay the DIP Fees and Expenses and Adequate Protection Fees and Expenses. DIP Fees and Expenses and Adequate Protection Fees and Expenses that constitute professional fees and expenses shall not be subject to allowance or review by the Court but shall be subject to the review procedures set forth in this paragraph 18. Professionals for the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties, and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however, any time that such professionals seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each such professional shall provide summary copies of its invoices (including aggregate amounts of fees and expenses and total amount of time on a per-professional basis), which are not required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, to the DIP Loan Parties, counsel to any statutory committee, and the U.S. Trustee (together, the "Review Parties"); *provided, however*, that (i) the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law; *provided*, *further*, that, the Review Parties reserve the right to seek reasonable, additional information regarding such invoices and time entries of any such professional and/or to challenge any assertion of privilege with respect to the same. Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) calendar days after receipt (the "Review Period"). If no written objection is received by 12:00 a.m. (midnight), prevailing Eastern Time, on the last date of the Review Period, the Debtors shall pay such invoices within five (5) business days. If an objection to a professional's invoice is

received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether the invoiced amount arose or was incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the Debtors are authorized and directed to pay, on or prior to the Closing Date (as defined in the DIP Term Sheet): (i) any accrued and unpaid ABL Adequate Protection Fees and Expenses, invoices of which have been provided to lead counsel of the Debtors at least one (1) business day prior to the Closing Date and (ii) any costs, fees, expenses (including reasonable and documented legal fees and expenses) and other compensation contemplated by this Interim Order or the DIP Loan Documents, with respect to items (i) and (ii) above, whether arising before or after the Petition Date, which costs, fees and expenses shall not be subject to the Review Period. No attorney or advisor to any Junior DIP Secured Party, Postpetition B-2 Secured Party, or any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

19. *Effect of Stipulations on Third Parties*. The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon the Debtors in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or other party in interest with

74

requisite standing has timely and properly filed an adversary proceeding or initiated a contested

matter (subject to the limitations contained herein, a "Challenge Motion") (*provided*, no interested

party shall be permitted to raise a defense to standing on the basis that the applicable Debtor is a

Delaware limited liability company) by no later than (i) the earlier of (w) one business day before

the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of

reorganization, whichever occurs first, (x) as to the Creditors' Committee only, 75 calendar days

after entry of this Interim Order, (y) if a chapter 7 or a chapter 11 trustee is appointed or elected

prior to the end of the Challenge Period (as defined below), the Challenge Period solely for any

such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) 75

calendar days after entry of this Interim Order, or (B) the date that is 30 calendar days after their

appointment, and (z) for all other parties in interest, 75 calendar days after entry of this Interim

Order; and (ii) any such later date as (v) has been agreed to in writing (which may be by email) by

the Prepetition ABL Agent with respect to the Prepetition ABL Obligations or the Prepetition ABL

Liens, (w) has been agreed to in writing (which may be by email) by the Prepetition B-2 Agent

with respect to the Prepetition B-2 Obligations or the Prepetition B-2 Liens, or (x) has been ordered

by the Court for cause upon a motion filed and served within any applicable period or (y) has been

ordered by the Court after disposition or resolution of a Challenge Motion (the time period

established by the foregoing clauses (i)-(ii), the "Challenge Period"), (A) objecting to or

challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition

Secured Obligations or the Prepetition Liens, or (B) asserting or prosecuting any Avoidance Action

or any other claims, counterclaims or causes of action, objections, contests or defenses

(collectively, the "Challenges") against any Prepetition Secured Parties or their respective

subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial

advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "Representatives") in connection with or related to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; *provided*, *however*, that any pleadings filed in connection with a Challenge shall comply with the Federal Rules of Bankruptcy Procedure and set forth with specificity the basis for such Challenge, and any Challenges not so raised prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred. If no Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such Challenge, then: (1) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest; (2) the obligations of the Prepetition Loan Parties under the Prepetition Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except as provided in the Prepetition Intercreditor Agreement), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than as provided in the Prepetition Intercreditor Agreement), or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any

76

statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives shall be deemed forever waived, released and barred. If any Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, Prepetition Secured Obligations or Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in these cases. For the avoidance of doubt, any trustee shall, until the expiration of the Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this

paragraph (whether commenced by the trustee or any other party in interest on behalf of the Debtors' estates), be deemed to be a party (other than the Debtors) in such adversary proceeding or contested matter and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, and stipulations made by the Debtors in this Interim Order.

20.     *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out or the Canadian Priority Charges, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Secured Parties, or the Prepetition Secured Parties, or their respective Representatives (in their capacities as such), or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, Prepetition Secured Obligations, Adequate Protection Liens, or 507(b) Claims or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Secured Obligations and/or liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under the DIP Orders, the DIP Loan Documents or the Prepetition Loan Documents in respect of the Prepetition Secured Obligations, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and DIP Collateral (including Cash Collateral) may

be used by the Creditors' Committee to investigate, but not to prosecute, (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties, up to an aggregate cap of no more than $50,000 (the "Investigation Cap"), (b) attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition Secured Parties' or the DIP Secured Parties', as applicable, enforcement or realization on the Prepetition Secured Obligations, Prepetition Collateral, DIP Obligations, DIP Collateral, as applicable, and the liens, claims and rights granted to such parties under the DIP Orders; (c) attempts to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties or the DIP Secured Parties under this Interim Order, the Interim UST Cash Collateral Order, the Prepetition Loan Documents or the DIP Loan Documents, as applicable, other than in accordance with this Interim Order; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims permitted by the DIP Loan Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and 507(b) Claims; or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are authorized by the Court, agreed to in writing by the DIP Lenders, and expressly permitted under this Interim Order or under the DIP Loan Documents (including the Approved Budget, subject to Permitted Variances), in each case unless all DIP Obligations, Prepetition Secured Obligations, Adequate Protection Obligations, and claims, obligations and liens granted to the DIP Secured Parties, Prepetition Secured Parties, and Prepetition UST Secured Parties under this Interim Order and the Interim UST Cash Collateral Order (inclusive of the UST Adequate Protection Obligations and the Prepetition UST Secured Obligations)), have been indefeasibly paid in full in cash or otherwise agreed to in writing by the DIP Secured Parties (and, for the avoidance

of doubt, no accrued paid time off obligations on account of employees terminated prior to the Petition Date shall be paid until all DIP Obligations, Prepetition Secured Obligations, Adequate Protection Obligations, and claims, obligations and liens granted to the DIP Secured Parties, the Prepetition Secured Parties, and the Prepetition UST Secured Parties under this Interim Order and the Interim UST Cash Collateral Order (inclusive of the UST Adequate Protection Obligations and the Prepetition UST Secured Obligations), have been indefeasibly paid in full in cash).

21.    *Binding Effect; Successors and Assigns.*   The DIP Loan Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Prepetition UST Secured Parties, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided*, that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

22.    Nothing in this Interim Order, the DIP Loan Documents, the Prepetition Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or

Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. The DIP Secured Parties and Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

23. *Limitation of Liability*. In determining to make any loan or other extension of credit under the DIP Loan Documents, to permit the use of the DIP Collateral or Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents or Prepetition Loan Documents, as applicable, none of the DIP Secured Parties or Prepetition Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives.

81

24.     *Master Proofs of Claim.*   Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or any Successor Cases, neither the Prepetition Agents, nor any other Prepetition Secured Parties shall be required to file proofs of claim in these cases or any Successor Cases in order to assert claims for payment of any of the Prepetition Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the Prepetition Loan Documents or this Interim Order.  The Debtors' stipulations, admissions and acknowledgments of the claim and liens in respect of the Prepetition Secured Obligations set forth in this Interim Order is deemed to constitute timely proofs of claim in respect of all indebtedness, secured status and claims arising under the Prepetition Credit Documents and this Interim Order.  Nonetheless, in order to facilitate the processing of claims, each Prepetition Agent is authorized, but not directed or required, to file a master proof of claim in the Debtors' lead case *In re Yellow Corporation, et al.*, Case No. 23-11069 (CTG), on behalf of the applicable Prepetition Secured Parties (each, a "Master Proof of Claim"), which shall be deemed to have been filed against each Debtor.  The provisions of this paragraph 24 and the filing of Master Proofs of Claim, if any, are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan filed in these cases.  Any Master Proof of Claim shall not be required to include any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent.  The DIP Secured Parties shall not be required to file proofs of claim with respect to the DIP Obligations.

25.     *Insurance*.   To the extent that any Prepetition Agent is listed as a loss payee under

the insurance policies of any of the DIP Loan Parties, the DIP Agent shall also be deemed to be a loss payee under such insurance policies until the indefeasible payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the DIP Commitment and, except with respect to the Prepetition ABL Priority Collateral prior to the Prepetition ABL Obligations being indefeasibly paid in full in cash (or, as applicable, cash collateralized) and with respect to the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral prior to the Prepetition UST Tranche B Obligations being indefeasibly paid in full in cash, shall act in that capacity and distribute any proceeds recovered or received in respect of such insurance policies; *provided*, that the liens granted herein shall not interfere with any rights held by a landlord to insurance proceeds for damage to a landlord's property.

26. *Credit Bidding*. The Junior DIP Agent and the Junior DIP Lender have expressly waived any right to credit bid the Junior DIP Obligations. In each case to the extent permitted by the Prepetition Intercreditor Agreement, (i) the Prepetition ABL Agent (on behalf, and at the direction, of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement) shall have the unqualified and unconditional right to credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the Prepetition ABL Obligations and (y) the ABL Adequate Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of ABL Priority Collateral, and (ii) the B-2 Agent (on behalf, and at the direction, of the B-2 Lenders pursuant to the Postpetition B-2 Credit Agreement) shall have the unqualified and unconditional right to credit bid, subject to section 363(k) of the Bankruptcy Code,

(x) up to the full amount of the B-2 Obligations and (y) the B-2 Adequate Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of Prepetition B-2 Priority Collateral, and each Prepetition ABL Secured Party and B-2 Secured Party complying with the foregoing shall automatically be deemed a "qualified bidder" with respect to any disposition of assets by the Debtors under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code; *provided*, that, no party shall be permitted to credit bid for Prepetition ABL Priority Collateral until such time that the Prepetition ABL Parties have been indefeasibly paid in full in cash and all issued and outstanding letters of credit cash collateralized. The Prepetition ABL Agent at the direction of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement and on behalf of the Prepetition ABL Lenders, and the B-2 Agent at the direction of the B-2 Lenders and on behalf of the B-2 Lenders, shall have the absolute right to assign, sell, or otherwise dispose of its right to credit bid to any acquisition entity or joint venture formed in connection with such bid.

27.     *Proceeds of Subsequent Financing.*  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Case shall obtain credit or incur debt pursuant to section 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents or this Interim Order at any time, then all of the cash proceeds derived from such credit or debt shall immediately be applied to satisfy the DIP Obligations in accordance with this Interim Order, the DIP Loan Documents, and the Prepetition

Intercreditor Agreement.

28.     *Rights Preserved*.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Secured Parties' and the Prepetition Secured Parties', as applicable, respective rights to seek any other or supplemental relief in respect of the Debtors (including, the right to seek additional or different adequate protection); (b) the rights of any of the DIP Secured Parties to seek the payment by the Debtors of post-petition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Secured Parties and the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek an injunction, (iv) oppose any request for use of Cash Collateral, (v) object to any sale of assets, or (vi) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; provided that the rights of the DIP Secured Parties and the Prepetition Secured Parties, respectively, with respect to sections (a)–(c) of this paragraph 26 shall be subject to the Prepetition Intercreditor Agreement, as applicable. Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties are preserved.

29.     *No Waiver by Failure to Seek Relief*.  The failure or delay on the part of any of the DIP Secured Parties or any of the Prepetition Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Loan Documents, the respective Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute

a waiver of any of their respective rights hereunder, thereunder, or otherwise. No delay on the part of any party in the exercise of any right or remedy under this Interim Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under this Interim Order shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the party against whom such amendment, modification, suspension, or waiver is sought. No consents required hereunder by any of the DIP Secured Parties or any of the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or any of the Prepetition Secured Parties, respectively.

30. *Chubb Reservation of Rights*. For the avoidance of doubt, (i) to the extent ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, and together with each of their successors, "Chubb") had valid, enforceable, perfected, and non-avoidable liens and/or security interests on property of the Debtors as of the Petition Date, which liens and/or security interests were senior to the liens and/or security interests of each of the Prepetition Secured Parties (collectively, the "Chubb Liens"), the DIP Liens shall not prime the Chubb Liens; (ii) this Interim Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements; (iii) without altering or limiting any of the foregoing, none of the insurance policies issued by Chubb to or providing coverage to any of the Debtors and any rights and claims thereunder shall be nor shall constitute DIP Collateral nor shall be subject to any liens granted pursuant to this Interim Order, and, further, the proceeds of any insurance policy issued by Chubb shall only be considered to be DIP Collateral to the extent such proceeds are payable to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy; and (iv)

nothing, including the DIP Loan Documents and/or this Interim Order, alters or modifies the terms and conditions of any insurance policies issued by Chubb and/or any agreements related thereto.

31.    *Provision Regarding TSC Equipment Finance*.  Notwithstanding anything to the contrary set forth in this Order, to the extent that the leases held by TSC Equipment Finance LLC ("TSC") (as successor by assignment to PNC Equipment Finance, LLC) are subsequently found to be financing arrangements rather than true leases (which TSC disputes), nothing contained in this Order shall (x) result in the granting of any priming or pari passu liens on the equipment subject to such leases or (y) otherwise alter or impair the rights or claims of TSC with respect to such equipment or leases.

32.    *Effectiveness*.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

33.    *Governing Order*.  Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this Interim Order, including compliance with the Approved Budget (subject to Permitted Variances) and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of the DIP Loan Documents and this Interim Order, this Interim Order shall control.  For the avoidance of doubt, upon entry of this Interim Order, this Interim Order shall supersede and replace the interim cash collateral order entered at Docket No. 181, provided that any adequate protection granted therein to the respective Prepetition Secured Parties for the period from the Petition Date until the entry of this Interim Order shall survive and is hereby reaffirmed and ratified.

34.    *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this Interim Order.

35.    *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Loan Documents and except with respect to the DIP Loan Parties, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral (other than Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), receives any DIP Collateral (other than Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) or any proceeds of the DIP Collateral (other than Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of all DIP Commitments, such person or entity shall be deemed to have received, and shall hold, any such DIP Collateral or any payment on account or proceeds thereof (other than Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) in trust for the benefit of the Junior DIP Secured Parties and shall immediately turn over such collateral or its proceeds to the Junior DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Loan Documents and this Interim Order.

36.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

37.    *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct,

indirect or incidental beneficiary.

38.    *Necessary Action*.  The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Interim Order.

39.    *Retention of Jurisdiction*.  This Court shall retain jurisdiction to enforce the provisions of this Interim Order.

40.    *Final Hearing*.  A final hearing to consider the relief requested in the DIP Motion on a final basis shall be held on September 18, 2023 at 2:00 p.m. (Prevailing Eastern Time).

41.    *Objections*.  Any objections or responses to the DIP Motion shall be filed on or prior to September 11, 2023 at 4:00 p.m. (Prevailing Eastern Time).  Any party objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the Debtors, 10990 Roe Avenue, Overland Park, Kansas 66211, Attn: Matthew A. Doheny and Leah Dawson; (b) counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn.: Patrick J. Nash, Jr., P.C. and Whitney C. Fogelberg; 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith and Aaron Metviner; (b) counsel to the Junior DIP Lender, Quinn Emmanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017, Attn: Eric Winston; 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirplani; Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606, Attn: Lucas S. Smith; 1211 Avenue of the Americas, New York, NY 10036, Attn: Natasha S. Hwangpo; (c) counsel to the B-2 Lenders, White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 Attn: Scott

Greissman, Elizabeth Feld, and Andrew Zatz; (d) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane M. Leamy and Richard Schepacarter; (e) counsel to the Creditors' Committee; (f) the Prepetition ABL Agent, and counsel thereto, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Kevin Simard and Hampton Foushee; (g) the B-2 Agent and Junior DIP Agent, and counsel thereto, Holland & Knight LLP, 150 N. Riverside Plaza, Suite 2700, Chicago IL 60606, Attn. Joshua M. Spencer and Phillip W. Nelson; (h) the Prepetition UST Tranche A Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (i) the Prepetition UST Tranche B Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (j) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602, Attn: Michael Messersmith; 250 West 55th Street, New York, New York 10019, Attn: Benjamin Mintz, and 601 Massachusetts Ave., N.W., Washington, DC 20001, Attn: Rosa Evergreen, and the U.S. Department of Justice, 1100 L St NW Rm 7102, Washington, DC 20005-4035, Attn: I-Heng.Hsu and Crystal Geise; and (k) counsel to the proposed Stalking Horse Purchaser, BakerHostetler LLP, 200 S. Orange Avenue, Suite 2300, Orlando, Florida 32801, Attn: Elizabeth Green.

42. The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing and to any party that has filed with this Court a request for notices in these cases.

90

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: August 18th, 2023**
**Wilmington, Delaware**

## <u>Exhibit 1</u>

### DIP Term Sheet

EXECUTION VERSION

**YELLOW CORPORATION**
**DEBTOR-IN-POSSESSION CREDIT FACILITY**
**TERM SHEET**

| | |
|---|---|
| The following is a summary of the principal terms and conditions of a $142.5 million debtor-in-possession financing facility for the Debtors (as defined below) (the "<u>DIP Term Sheet</u>").<br><br>This DIP Term Sheet shall be a binding agreement from and after, and subject to, the entry of the Interim Order (as defined below) with respect to the DIP Loans (as defined below) but does not purport to summarize all of the terms, conditions, representations and other provisions with respect to the Junior DIP Facility (as defined below) and the Postpetition B-2 Facility (as defined below), which will be set forth in the DIP Loan Documents (as defined below). The obligations of the Junior DIP Lender (as defined below) and the B-2 Lenders (as defined below), respectively, to provide financing pursuant to this DIP Term Sheet is conditioned upon the execution and delivery of signature pages to this DIP Term Sheet by each of the parties hereto and shall be subject to the conditions precedent and other terms and conditions set forth herein.  In the event of any conflict between this DIP Term Sheet and the terms of the DIP Order (as defined below), the terms of the DIP Order shall govern. | |

| | |
|---|---|
| **Parties** | **<u>Debtors</u>**: Yellow Corporation, a Delaware corporation ("<u>Yellow</u>" or the "<u>Company</u>") and all of its direct and indirect domestic and Canadian subsidiaries, each as debtors-in-possession (collectively, the "<u>Debtors</u>") in the chapter 11 cases (the "<u>Chapter 11 Cases</u>") commenced August 6, 2023 in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").<br><br>**<u>Borrower</u>**: Yellow (the "<u>Borrower</u>").<br><br>**<u>Guarantors</u>**: All obligations under the DIP Facility (as defined below), this DIP Term Sheet and the other DIP Loan Documents (each as defined below) will be unconditionally guaranteed, jointly and severally, (x) with respect to the Junior DIP Facility, on a junior priority secured basis and (y) with respect to the Postpetition B-2 Facility, on a *pari passu* secured basis with the Prepetition B-2 Obligations (as defined below), in each case by each direct or indirect subsidiary of the Borrower formed in the United States and Canada which is a "Loan Party" under the B-2 Term Loan Credit Agreement (as defined below) (collectively, the "<u>Guarantors</u>").<br><br>The Borrower and the Guarantors are collectively referred to herein as the "<u>Loan Parties</u>."<br><br>**<u>Junior DIP Lender</u>**: MFN Partners, L.P. (the "<u>Junior DIP Lender</u>").<br><br>**<u>Junior DIP Agent</u>**: Alter Domus Products Corp. or another entity designated by the Junior DIP Lender will serve as the administrative agent and collateral agent under the Junior DIP Facility (in such capacity, including any successors, the "<u>Junior DIP Agent</u>") and will perform duties customarily associated with such capacities.  The Junior DIP Lender together with the Junior DIP Agent shall be referred to as the "<u>Junior DIP Secured Parties</u>." |

| | |
|---|---|
| | **Postpetition B-2 Lender**:  Citadel Credit Master Fund LLC and any assignee thereof (the "Postpetition B-2 Lender" and, together with the Prepetition B-2 Lender (as defined below), the "B-2 Lenders").<br><br>**Postpetition B-2 Agent**: Alter Domus Products Corp. will serve as the administrative agent and collateral agent under the Postpetition B-2 Facility (in such capacity, including any successors, the "B-2 Agent") and will perform duties customarily associated with such capacities. The B-2 Lenders together with the B-2 Agent shall be referred to as the "B-2 Secured Parties." |
| **Prepetition Facilities** | **Prepetition Facilities**: The Company is party to each of:<br><br>1.  the Loan and Security Agreement, dated as of February 13, 2014 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "ABL Facility"), by and among Yellow, YRC Inc., USF Reddaway Inc., USF Holland LLC, and New Penn Motor Express LLC, as borrowers (the "ABL Borrowers"), the guarantors from time to time party thereto (together with the ABL Borrowers, the "ABL Obligors"), the lenders from time to time party thereto (the "ABL Lenders"), the issuing banks from time to time party thereto, and Citizens Business Capital, as agent (in such capacity, the "ABL Agent" and, together with the Prepetition ABL Lenders, Bank Providers and Issuing Banks (each as defined in the ABL Facility), the "Prepetition ABL Secured Parties") and any and all Obligations as defined in the ABL Facility, the "Prepetition ABL Obligations";<br><br>2.  the Amended and Restated Credit Agreement, dated as of September 11, 2019 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "B-2 Term Loan Credit Agreement", the loans thereunder, the "Prepetition B-2 Loans", and any and all Obligations under and as defined in the B-2 Term Loan Credit Agreement (including, without limitation, the exit fee arising pursuant to Section 2.05(c) of the B-2 Term Loan Credit Agreement), the "Prepetition B-2 Obligations" and together with all obligations under the Postpetition B-2 Facility, including, without limitation, all principal, interest, fees and other amounts arising in respect thereof, the "B-2 Obligations"), by and among Yellow, as borrower (the "B-2 Borrower"), the guarantors from time to time party thereto (together with the B-2 Borrower, the "B-2 Obligors"), the lenders from time to time party thereto (the "Prepetition B-2 Lenders"), and the B-2 Agent;<br><br>3.  the UST Tranche A Term Loan Credit Agreement, dated as of July 7, 2020 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "UST Tranche A Credit Agreement"), by and among Yellow, as borrower (the "UST Tranche A Borrower"), the guarantors from time to time party thereto (together with the UST Tranche A Borrower, the "UST Tranche A Obligors"), the lenders from time to time party thereto (the "UST Tranche A Lenders"), and The Bank of New York Mellon ("BNYM"), as administrative agent and collateral agent (in such capacities, and BNYM, in its capacities as a party to all other agreements, documents, or instruments with any or all of the Prepetition UST Tranche A Obligors entered into in connection with the transactions relating to the entry of the Prepetition UST Tranche A Credit Agreement and all related loan and security documents and/or the incurrence of the UST Tranche A Obligations (as defined in the UST Adequate Protection Order), including, without limitation, any banking arrangements in connection therewith with BNYM and/or its affiliates, the "UST Tranche A Agent," and, together with the UST Tranche A Lenders, the "Prepetition UST |

Tranche A Secured Parties") and any and all Obligations as defined in the UST Tranche A Credit Agreement, the "Prepetition UST Tranche A Obligations"); and

4.    the UST Tranche B Term Loan Credit Agreement, dated as of July 7, 2020 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "UST Tranche B Credit Agreement" and, together with the ABL Facility, B-2 Term Loan Credit Agreement, and UST Tranche A Credit Agreement, the "Prepetition Facilities"), by and among Yellow, as borrower (the "UST Tranche B Borrower"), the guarantors from time to time party thereto (together with the UST Tranche B Borrower, the "UST Tranche B Obligors" and, together with the ABL Obligors,  B-2 Obligors, and UST Tranche A Obligors, the "Prepetition Obligors"), the lenders from time to time party thereto (the "UST Tranche B Lenders" and, together with the ABL Lenders, Prepetition B-2 Lenders, and UST Tranche A Lenders, the "Prepetition Lenders"), and BNYM, as administrative agent and collateral agent (in such capacities, and BNYM, in its capacities as a party to all other agreements, documents, or instruments with any or all of the Prepetition UST Tranche B Obligors entered into in connection with the transactions relating to the entry of the Prepetition UST Tranche B Credit Agreement and all related loan and security documents and/or the incurrence of the UST Tranche B Obligations (as defined in the UST Adequate Protection Order), including, without limitation, any banking arrangements in connection therewith with BNYM and/or its affiliates, the "UST Tranche B Agent", together with the UST Tranche B Lenders, the "Prepetition UST Tranche B Secured Parties", and the UST Tranche B Agent together with the ABL Agent, B-2 Agent, and UST Tranche A Agent, the "Prepetition Agents") and any and all Obligations as defined in the UST Tranche B Credit Agreement, the "Prepetition UST Tranche B Obligations").

The Prepetition Lenders and the Prepetition Agents are collectively referred to herein as the "Prepetition Secured Parties".  The Prepetition Agents are parties to the Amended and Restated Intercreditor Agreement, dated as of July 7, 2020 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Intercreditor Agreement"), by and among the Prepetition Agents and acknowledged by the Prepetition Obligors.

All instruments and documents executed at any time in connection with the ABL Facility shall be referred to collectively as the "ABL Documents", all instruments and documents executed at any time in connection with the B-2 Term Loan Credit Agreement shall be referred to collectively as the "B-2 Documents", all instruments and documents executed at any time in connection with the UST Tranche A Credit Agreement shall be referred to collectively as the "UST Tranche A Documents", and all instruments and documents executed at any time in connection with the UST Tranche B Credit Agreement shall be referred to collectively as the "UST Tranche B Documents" and, together with the ABL Documents, B-2 Documents, and UST Tranche A Documents, the "Prepetition Debt Documents."

The Prepetition UST Tranche A Secured Parties and the Prepetition UST Tranche B Secured Parties are collectively referred to herein as the "UST Secured Parties".  The UST Tranche A Documents and UST Tranche B Documents are collectively referred to herein as the "UST Debt Documents."

| **DIP Facility** | **Junior DIP Facility**: A superpriority junior secured multi-draw term loan facility (the "<u>Junior DIP Facility</u>," and the loans thereunder, the "<u>Junior DIP Loans</u>")[1] in an aggregate principal amount of up to $42.5 million, to be made available as provided below in the section entitled "Commitments." |
| --- | --- |
| | **Postpetition B-2 Facility**: A superpriority senior secured multi-draw term loan facility (the "<u>Postpetition B-2 Facility</u>," and the loans thereunder, the "<u>Postpetition B-2 Loans</u>"[2]; and the Postpetition B-2 Loans together with the Prepetition B-2 Loans, the "<u>B-2 Loans</u>") in an aggregate principal amount of up to $100.0 million, to be made available below in the section entitled "Commitments." The Postpetition B-2 Facility shall be governed by the B-2 Term Loan Credit Agreement as in effect on the Petition Date, as superseded, supplemented and modified by the terms of this DIP Term Sheet and the Interim Order, and all agreements, instruments and documents executed at any time in connection therewith, including either the DIP Credit Agreement (as defined below) or an amendment to the B-2 Term Loan Credit Agreement (a "<u>Postpetition B-2 Credit Agreement Amendment</u>," the terms of which shall be effective as of the date of the Closing Date) (in either case as may be agreed to by the B-2 Lenders, the B-2 Agent, and the Debtors), which such instruments and documents shall be referred to collectively as the "<u>Postpetition B-2 Loan Documents</u>." |
| | **DIP Loan Documents**: This DIP Term Sheet, the DIP Credit Agreement, the Postpetition B-2 Credit Agreement Amendment (if any), the other Postpetition B-2 Loan Documents, the DIP Orders, the Amended and Restated Fee Letter (as defined below), the Fee Letter (as defined below), and all instruments and documents executed at any time in connection therewith, shall be referred to collectively as the "<u>DIP Loan Documents</u>." |
| | **DIP Loans**: Subject to the terms and conditions herein, including the restrictions on Use of Proceeds set forth below, the proceeds of the DIP Facility will be used in accordance with the terms of the Budget (subject to Permitted Variances) (as such terms are defined below), including to pay (a) (i) Professional Fees (as defined below) and other restructuring charges arising on account of the Chapter 11 Cases, including statutory fees of the United States Trustee and allowed professional fees and expenses of a Committee (as defined herein) and (ii) the Carve-Out (as defined below) and the Canadian Priority Charges,[3] (b) all professional fees and expenses |

---

[1] For the avoidance of doubt, proceeds of the DIP Facility will be funded into a controlled segregated bank account (the "<u>DIP Proceeds Account</u>"), which DIP Proceeds Account (and the funds therein) shall be subject to first-priority senior security interests (x) in favor of the Junior DIP Agent with respect to proceeds of the Junior DIP Facility and (y) in favor of the B-2 Agent with respect to proceeds of the Postpetition B-2 Facility, which respective security interests shall be senior in all respects to any other liens or security interests, including any Adequate Protection Liens of the Prepetition Lenders, in such proceeds. For the further avoidance of doubt, none of the DIP Proceeds Account, any funds therein constituting Junior DIP Loans or Postpetition B-2 Loans (as defined below), or any proceeds of the Junior DIP Loans or Postpetition B-2 Loans (exclusive of any proceeds constituting Prepetition ABL Priority Collateral) shall constitute Prepetition ABL Priority Collateral or be subject to any terms or provisions in the Interim Order governing ABL Cash Collateral.

[2] The Junior DIP Loans and the Postpetition B-2 Loans, together, shall be referred to herein as the "<u>DIP Loans</u>." The Junior DIP Facility and the Postpetition B-2 Facility, together, shall be referred to herein as the "<u>DIP Facility</u>."

[3] "<u>Canadian Priority Charges</u>" shall mean, collectively, (i) a super priority charge granted by the Canadian Court over the Canadian Debtors' Collateral to secure payment of the professional fees and disbursements of the Debtors' Canadian counsel, the Information Officer and counsel to the Information Officer (in a maximum

|  | (including legal, financial advisor, appraisal, and valuation-related fees and expenses) incurred by (x) the Junior DIP Agent and/or the Junior DIP Lender as provided under the DIP Loan Documents and (y) the B-2 Agent and/or B-2 Secured Parties as provided under the DIP Loan Documents, including those incurred in connection with the preparation, negotiation, documentation, and court approval of the DIP Facility and (c) payments as set forth in the "Adequate Protection" section below.<br><br>"Professional Fees" shall mean, to the extent allowed at any time, whether by interim or final compensation order entered by the Bankruptcy Court, all unpaid fees and expenses incurred relating to services rendered by persons or firms retained by the Loan Parties pursuant to and in accordance with sections 327, 328, 329, 330, 331, 363, or 503(b)(4) of the Bankruptcy Code (collectively, the "Debtors' Professionals"); provided that to the extent that any amount of the foregoing compensation or reimbursement is denied or reduced by a Final Order by the Bankruptcy Court or any other court of competent jurisdiction, such amount shall no longer constitute Professional Fees. |
|---|---|
| **Commitments; Funding** | The Junior DIP Loans in an aggregate principal amount of $42.5 million and the Postpetition B-2 Loans in an aggregate principal amount of $100.0 million will be made available as follows (collectively, the "Commitments"), in the case of each of 1-3 below, allocated ratably between the Junior DIP Loans and the Postpetition B-2 Loans:<br><br>1. $60.0 million ($17.9 million of which shall be funded under the Junior DIP Facility and $42.1 million of which shall be funded under the Postpetition B-2 Facility) upon the Bankruptcy Court's entry of an interim order approving the DIP Facility and adequate protection for the Prepetition Secured Parties[4] on an interim basis (the "Interim Order") in form and substance acceptable to the Junior DIP Lender, the B-2 Lenders, the Junior DIP Agent, the B-2 Agent, and the ABL Agent, but prior to the entry of a final order approving the DIP Facility and adequate protection for the Prepetition Secured Parties on a final basis (the "Final Order" and, together with the Interim Order, the "DIP Order", as applicable).<br><br>2. $37.5 million ($11.2 million of which shall be funded under the Junior DIP Facility and $26.3 million of which shall be funded under the Postpetition B-2 Facility) which is permitted to be borrowed on a date that is on or after (x) the date that the Debtors file a revised form of order approving revised bidding procedures for one or more sales of all or substantially all of the Debtors' assets, which shall be in form and substance reasonably |

---

amount not to exceed CDN$700,000) (the "Canadian Administrative Charge"); (ii) a charge granted by the Canadian Court on the Canadian Debtors' Collateral (in a maximum amount not to exceed CDN$3,500,000), securing an indemnity in favor of the Canadian Debtor's directors and officers against any obligations or liabilities that they may incur as directors and officers of the Canadian Debtor on or after the commencement of the Canadian Recognition Proceedings (the "Canadian Directors' Charge"); and (iii) the super priority charge granted by the Canadian Court pursuant to the Canadian DIP Recognition Order in favor of the Junior DIP Lender and B-2 Lenders on the Canadian Debtors' Collateral, other than the UST Tranche B Priority Collateral (the "Canadian DIP Charge").

[4]  For the avoidance of doubt, the interim and final UST Adequate Protection Order shall be entered by the Bankruptcy Court simultaneously with the Interim Order and the Final Order, as applicable, and shall provide for the adequate protection of the UST Secured Parties.

acceptable to the Junior DIP Lender and permitting the B-2 Lenders to credit bid the full amount of the B-2 Obligations (the "Bidding Procedures Motion"), and (y) the parties have entered into final DIP Loan Documents in accordance with the applicable Documentation Principles.

3. $45.0 million ($13.4 million of which shall be funded under the Junior DIP Facility and $31.6 million of which shall be funded under the Postpetition B-2 Facility) which is permitted to be borrowed on a date that is on or after the date that the Court has entered the Final Order.

4. Up to $70.0 million shall be made available by the Junior DIP Lender, at the Debtors' request (the "Additional Junior DIP Commitment"). To the extent drawn, Additional Junior DIP Commitment shall accrue (i) interest at ABR plus 10.0% (paid once-monthly in cash) and (ii) an exit fee of 7.50% of the amount drawn shall be earned, due, and payable upon exit (such amounts to be paid in cash). The Additional Junior DIP Commitment (x) shall be fully junior and subordinated (including in right and payment) to the claims and liens of the Prepetition B-2 Lenders and B-2 Agent, the Prepetition ABL Secured Parties, and the UST Secured Parties, including their respective adequate protection claims and liens, and to the liens and claims of the Postpetition B-2 Lenders and B-2 Agent under the Postpetition B-2 Facility, including for the avoidance of doubt, to the payment and enforcement rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties, and the UST Secured Parties, which rights with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth in this DIP Term Sheet and the DIP Order, and (y) shall be made available to be drawn provided that prepetition senior secured claims outstanding shall not exceed at the time of such draw, in the aggregate, $1.435 billion.

Amounts paid or prepaid under the Junior DIP Facility or in respect of the Additional Junior DIP Commitment, and under the Postpetition B-2 Facility may not be reborrowed.

The Junior DIP Lender shall make each Junior DIP Loan to be made by it hereunder on the respective borrowing date by wire transfer of immediately available funds to the Junior DIP Agent not later than 1:00 p.m., New York City time, and upon receipt of all requested funds the Junior DIP Agent shall promptly wire the amounts so received to the DIP Proceeds Account.

The Postpetition B-2 Lender shall make each Postpetition B-2 Loan to be made by it hereunder on the respective borrowing date by wire transfer of immediately available funds to the B-2 Agent not later than 1:00 p.m., New York City time, and upon receipt of all requested funds the B-2 DIP Agent shall promptly wire the amounts so received to the DIP Proceeds Account.

| Use of Proceeds | No portion of the Debtors' "cash collateral" (as such term is defined in section 363(a) of the Bankruptcy Code) (the "Cash Collateral"), the proceeds of the DIP Facility, the Carve-Out, or the Collateral (as defined below) may be used, whether directly or indirectly: |

1. for any purpose that is prohibited under the Bankruptcy Code, the DIP Orders and not in accordance with the Budget (subject to Permitted Variances (as defined below));

2. to finance or reimburse for expenses incurred or to be incurred, in both instances, in any way: (i) any adversary action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the interests of any or all of the Junior DIP Secured Parties, the B-2 Secured Parties, the Prepetition Secured Parties, or their respective rights

| | and remedies under DIP Loan Documents, the DIP Order, or the Prepetition Debt Documents; or (ii) any other action, which with the giving of notice or passing of time, would result in an Event of Default under the DIP Loan Documents; |
|---|---|
| | 3. other than in respect to UST Adequate Protection Payments[5] or Prepetition ABL Secured Parties as set forth herein, for the payment of fees, expenses, interest or principal or any other payment with respect to the ABL Facility, UST Tranche A Credit Agreement, or UST Tranche B Credit Agreement; and |
| | 4. other than for payments for director fees included in and permitted by the Approved Budget, subject to the Debtors' ability to make UST Adequate Protection Payments pursuant to the UST Adequate Protection Order, to make any payment to any board member or shareholder of any Loan Party in their capacity as such. |
| | except as permitted by the Budget (subject to Permitted Variances (as defined below)), to make any payment in settlement of any claim, action or proceeding without the prior written consent of the Junior DIP Lender and the B-2 Lenders. |
| **Budget** | The 13-week statement of the Loan Parties' anticipated cash receipts and disbursements for the first 13 weeks the Chapter 11 Cases, set forth on a weekly basis, including the anticipated uses of the DIP Facility for such period (the "Budget"), attached hereto as Annex 5. The Budget will be attached as an exhibit to the Interim Order and shall be in all respects satisfactory to the Junior DIP Lender, the B-2 Lenders and the Prepetition Secured Parties (including the UST Secured Parties). For the avoidance of doubt, no accrued vacation payment obligations on account of employees terminated prior to the Petition Date shall be paid until all prepetition secured debt has been indefeasibly paid in full in cash. |
| **Documentation Principles** | A credit agreement governing the terms of the Junior DIP Facility (and, if the B-2 Lenders and the Debtors agree, the Postpetition B-2 Facility) (the "DIP Credit Agreement") shall (i) be based on and consistent with the credit agreement attached as Exhibit 1 to the Filed Proposed DIP Order (as defined below) (the "Filed DIP Credit Agreement") except as otherwise set forth in this DIP Term Sheet or in the DIP Order, (ii) be subject to the Senior ICA Provisions (as defined below), (iii) reflect the junior lien on the Collateral with respect to the Junior DIP Facility (and, if applicable, the pari passu secured status of the Postpetition B-2 Facility vis-à-vis the Prepetition B-2 Obligations), (iv) be subject to negotiation in good faith within a reasonable (consistent with the term of this DIP Term Sheet) time period, (v) be reasonably satisfactory to the B-2 Lenders, the UST Secured Parties, and the ABL Agent, and (vi) be satisfactory to the Junior DIP Agent and Junior DIP Lender. The terms in this paragraph are collectively referred to herein as the "Junior DIP Documentation Principles." |

---

[5] "UST Adequate Protection Payments" means and includes the UST Tranche A Adequate Protection Payment, the UST Tranche B Adequate Protection Payment, and the UST Adequate Protections Fees and Expenses (each as defined in the UST Adequate Protection Order). "UST Adequate Protection Order" means, with respect to the adequate protection to be provided to the UST Secured Parties, the separate order substantially in the form included with the Debtors' DIP motion at ECF No. 16-2 (and the motion at ECF No. 16 that attaches the UST Adequate Protection Order, the "Initial DIP Motion"), subject to modifications acceptable to the UST Secured Parties.

The Postpetition B-2 Credit Agreement Amendment (if any) shall (i) be based on and consistent with the B-2 Term Loan Credit Agreement as in effect on the Petition Date, except as otherwise set forth in and superseded, supplemented and modified by (x) the terms set forth in the Filed DIP Credit Agreement, (y) this DIP Term Sheet, and (z) the DIP Order (it being understood that, to the extent of any conflict between the Filed DIP Credit Agreement, this DIP Term Sheet, the DIP Credit Agreement or the DIP Order, then the DIP Term Sheet and the DIP Order shall control), (*provided that*, if the B-2 Lenders and the Debtors agree to enter into a Postpetition B-2 Credit Agreement Amendment and such Postpetition B-2 Credit Agreement Amendment is substantially consistent with the terms and provisions set forth in this DIP Term Sheet, the Filed DIP Credit Agreement, and the DIP Order, it may be entered into by the B-2 Secured Parties and the Debtors without further Court authorization), (ii) be subject to the Senior ICA Provisions (as defined below) and the Intercreditor Agreement, (iii) reflect liens on the Collateral consistent with the priorities set forth herein, including the Senior ICA Provisions, and the Intercreditor Agreement, including first priority liens on the B-2 Priority Collateral (as defined below), (iv) be subject to negotiation in good faith within a reasonable (consistent with the term of this DIP Term Sheet) time period, (v) be reasonably satisfactory to the Junior DIP Lender, the UST Secured Parties, and the ABL Agent, and (vi) be satisfactory to the B-2 Agent and the B-2 Lenders. The terms in this paragraph, together with the Junior DIP Documentation Principles, the "Documentation Principles."

| | |
|---|---|
| **Collateral; Priority** | **Collateral**: All property, causes of action, rights, or claims of the Loan Parties (now or hereafter acquired and all proceeds thereof) (subject to limited customary exceptions set forth in the DIP Orders (the "Excluded Property")), including (i) all property or assets of any non-U.S. Loan Parties located in Canada, (ii) all claims and causes of action in connection with any commercial tort and breach of contract claims, (iii) the proceeds of all claims and causes of action (excluding the claims and causes of action themselves) arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 553(b), or 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable federal and/or state-law equivalents, (iv) all leasehold interests of any Loan Party, and (v) the proceeds of each of the foregoing (collectively, the "Collateral").<br><br>"B-2 Priority Collateral" refers to all Non-UST Tranche B Term Priority Collateral (as defined in the Intercreditor Agreement).<br><br>**Junior DIP Facility Priority**: All obligations of the Loan Parties to the Junior DIP Lender and the Junior DIP Agent under the DIP Loan Documents, including all loans made under the Junior DIP Facility, shall, subject in all respects to the Carve-Out and the Canadian Priority Charge, at all times:<br><br>1.      pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to joint and several superpriority administrative expense claim status against each Debtor in the Chapter 11 Cases, which claims in respect of the Junior DIP Facility shall be superior to all other claims except as otherwise set forth herein;<br><br>2.      pursuant to section 364(c)(2) of the Bankruptcy Code, have first priority and be secured by liens on (i) the Cash Collateral Account and (ii) all unencumbered assets of the Loan Parties (other than Excluded Property) (now or hereafter acquired and all proceeds thereof) that are senior to the adequate protection liens of the Prepetition Secured Parties on such unencumbered assets; |

3.      pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, be secured by a lien on the B-2 Priority Collateral that is junior to the B-2 Secured Parties' lien on such collateral, but senior to the Prepetition ABL Secured Parties' and UST Secured Parties' lien on such collateral; and

4.      pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by (i) junior liens on the Collateral securing the obligations of the Prepetition Secured Parties (other than as expressly set forth above with respect to the B-2 Priority Collateral) and (ii) a lien on any assets and properties of Canadian Debtors (with respect to the UST Tranche B Priority Collateral any such lien shall be junior to the UST Secured Parties' liens on such collateral) securing the indemnity obligations of the Canadian Debtors to their directors and officers in respect of obligations and liabilities that such directors and officers may incur during or prior to the Canadian Proceedings in their capacities as directors and officers (relating to the restructuring, winddown, and/or related chapter 11 proceedings, including with respect to any amount for wages or termination pay whether arising prior to or following the filing of the Canadian Proceedings) that is junior to any court-ordered charge over such assets and properties as issued or anticipated to be issued by the Canadian Court.

5.      Notwithstanding anything above or herein to the contrary or in the DIP Loan Document or the DIP Orders to the contrary, it is expressly understood and agreed that the liens and claims in respect of the Additional Junior DIP Commitment shall be junior and subordinated (including in right of payment) in all respects to the liens and claims (including any adequate protection liens and claims) of the Prepetition Secured Parties and to the liens and claims of the B-2 Secured Parties under the Postpetition B-2 Facility, including, for the avoidance of doubt, to the payment and enforcement rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties, and the UST Secured Parties, which rights with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth in this DIP Term Sheet and the DIP Order.

**Postpetition B-2 Facility Priority**: All obligations of the Loan Parties to the B-2 Lender and the B-2 Agent under the Postpetition B-2 Loan Documents (in respect of the Postpetition B-2 Facility), including all loans made under the Postpetition B-2 Facility, shall, subject in all respects to the Carve-Out and the Canadian Priority Charge, at all times:

1.      pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to joint and several superpriority administrative expense claim status against each Debtor in the Chapter 11 Cases, which claims in respect of the Postpetition B-2 Facility shall be superior to all other claims except as otherwise set forth herein; and

2.      pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, in each case have the same priority as the B-2 Secured Parties' prepetition liens on all Collateral, as set forth in the Intercreditor Agreement and herein, including, for the avoidance of doubt, first priority liens on all B-2 Priority Collateral, pari passu with the B-2 Secured Parties' existing liens on the B-2 Priority Collateral, and senior to the Junior DIP Liens, and the liens of the Prepetition ABL Secured Parties and UST Secured Parties, on the B-2 Priority Collateral.

All of the liens described herein with respect to the assets of the Loan Parties shall be effective and perfected as of the entry date of the Interim Order (the "<u>Interim Order Entry Date</u>") and such other mortgages, security agreements, pledge agreements, financing statements, or other

agreements as may be reasonably required by the Junior DIP Agent, the Junior DIP Lender, the B-2 Agent and the B-2 Lenders; provided, that the Junior DIP Lender and the Postpetition B-2 Lender agree that they shall not seek real property mortgages after the date hereof. For the avoidance of doubt, the DIP Orders shall provide that the existing liens of the B-2 Secured Parties with respect to the Prepetition B-2 Obligations shall automatically extend to and be perfected with respect to the Postpetition B-2 Obligations and shall otherwise be granted, and be effective and perfected, as of the Interim Order Entry Date. Nothing in this DIP Term Sheet, the DIP Orders or the other Postpetition B-2 Loan Documents shall, nor shall the extension of any Postpetition B-2 Loans or the exercise of any rights hereunder or under any Postpetition B-2 Loan Documents, in any way impair or otherwise affect the validity, perfection, extent or priority of the prepetition liens of the B-2 Secured Parties on the B-2 Priority Collateral.

Except to the extent expressly set forth in this DIP Term Sheet and/or the DIP Loan Documents (including with respect to the Postpetition B-2 Obligations), each DIP Order shall contain provisions prohibiting each Loan Party from incurring any additional indebtedness (other than the Carve-Out and the Canadian Priority Charges) which (x) ranks *pari passu* with or senior to the DIP Loans or (y) benefits from a first priority lien under section 364 of the Bankruptcy Code.

The DIP Order and the DIP Loan Documents shall provide intercreditor provisions (the "Senior ICA Provisions") requiring the Junior DIP Agent and the Junior DIP Lender to be silent with respect to the exercise of remedies on Collateral, including the following:

(i) Until the B-2 Obligations have been indefeasibly paid in full in cash, the B-2 Secured Parties shall have the exclusive right to exercise remedies with respect to the B-2 Priority Collateral and the Junior DIP Agent and Junior DIP Lender shall not exercise any remedies with respect to the B-2 Priority Collateral.

(ii) Until the Prepetition ABL Obligations have been paid in full in cash, including the cash collateralization of all issued and outstanding letters of credit, the Prepetition ABL Secured Parties shall have the exclusive right to exercise remedies with respect to the ABL Priority Collateral and the B-2 Agent, the B-2 Lenders, the Junior DIP Agent, and the Junior DIP Lender shall not exercise any remedies with respect to the ABL Priority Collateral until the B-2 Obligations and the Prepetition Facilities shall have been paid in full in cash, including the cash collateralization of all issued and outstanding letters of credit.

(iii) Until the UST Tranche B Obligations (as defined in the UST Adequate Protection Order) have been paid in full in cash, the Prepetition UST Tranche B Secured Parties shall have the exclusive right to exercise remedies with respect to the UST Tranche B Priority Collateral (as defined in the Prepetition Intercreditor Agreement) and the UST Tranche B Joint Collateral (as defined in the Prepetition Intercreditor Agreement) (in the case of the UST Tranche B Joint Collateral, subject to the application of proceeds provision set forth in section 4.1(e) of the Intercreditor Agreement, and the Junior DIP Lender shall not exercise any remedies with respect to the UST Tranche B Priority Collateral and the UST Tranche B Joint Collateral until the B-2 Obligations and the Prepetition UST Tranche B Obligations shall have been paid in full in cash.

For the avoidance of doubt, (A) the Senior ICA Provisions shall govern the relative rights of the Junior DIP Facility, on the one hand, and the Postpetition B-2 Facility and the Prepetition Facilities, on the other hand, with respect to the exercise remedies on Collateral and (B) as among Prepetition Facilities (and the Postpetition B-2 Facility), the Senior ICA Provisions shall not override the Intercreditor Agreement.

| | |
|---|---|
| | The intercreditor and subordination provisions set forth in this DIP Term Sheet and the other DIP Loan Documents, including the Senior ICA Provisions, and the Intercreditor Agreement are essential elements of the DIP Facility and the protections granted to the parties as consideration therefor and are immediately and irrevocably binding and enforceable.<br><br>Notwithstanding the foregoing or elsewhere herein, nothing contained herein shall be construed to prevent any Prepetition Agent, any Prepetition Secured Party, any B-2 Secured Party, any Junior DIP Lender or the Junior DIP Agent from (i) filing a claim or statement of interest with respect to the outstanding obligations owed to it in the Chapter 11 Cases, (ii) submitting a notice of default pursuant to the Prepetition Debt Documents or the DIP Loan Documents and accruing any applicable default interest that may be permitted thereunder, (iii) taking any action (not adverse to the priority status of any other Prepetition Agent, any Prepetition Secured Party, any B-2 Secured Party, any Junior DIP Lender or the Junior DIP Agent) in order to create, perfect, preserve or protect (but not enforce its lien), or (iv) filing any necessary or responsive pleadings in opposition to any motion, adversary proceeding or other pleading filed by any person objecting to or otherwise seeking disallowance of the claim or lien of such Prepetition Agent, any Prepetition Secured Party, any B-2 Secured Party, any Junior DIP Lender or the Junior DIP Agent. |
| **Carve-Out** | Carve-Out as set forth in the DIP Orders and consistent in size with the Carve-Out in the Filed Proposed DIP Order; *provided* that, the Carve-Out post-trigger notice professional fees cap may be increased by up to $1 million to include amounts for an official committee of equityholders in the event one is appointed. |
| **Adequate Protection** | As adequate protection, the Prepetition Secured Parties shall receive customary adequate protection liens and claims consistent with the Intercreditor Agreement, in each case junior to the Carve-Out and the Canadian Priority Charges.  All adequate protection liens and claims of the Prepetition Secured Parties shall (x) be senior to the liens and claims securing the Junior DIP Facility and (y) have the same relative priorities with respect to the liens and claims securing the B-2 Postpetition Facility with respect to the liens and claims securing the Prepetition B-2 Loans pursuant to the Intercreditor Agreement and as provided herein; <u>provided</u>, <u>however</u>, that with respect to the B-2 Priority Collateral, the adequate protection liens and claims of the Prepetition ABL Secured Parties and Prepetition UST Tranche B Secured Parties shall be junior to the liens and claims securing the Junior DIP Facility.<br><br>Other than as modified herein, the adequate protection to be provided to the Prepetition ABL Secured Parties shall be as set forth in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed at docket number 16-1 in the Chapter 11 Cases (the "<u>Filed Proposed DIP Order</u>"); *provided* that the Approved Budget, and any subsequent updates, modifications, and supplements shall be subject to review and approval by the ABL Agent.<br><br>Other than as set forth below with respect to the sale milestones for the Prepetition B-2 Priority Collateral, the adequate protection to be provided to the UST Secured Parties shall be as set forth in the separate UST Adequate Protection Order, which Order shall be in form and substance acceptable in all material respects to the UST Secured Parties and the DIP Lender.  The Budget, and any subsequent updates, modifications, and supplements shall be subject to review and approval by the UST Secured Parties. |

| | |
|---|---|
| | For the avoidance of doubt, the Interim Order shall also include provisions set forth in the Final Proposed DIP Order regarding (i) the use of and application of ABL Cash Collateral (as defined in the Proposed Interim Order) in accordance with paragraph 11 of the Filed Proposed DIP Order; (ii) reporting and access rights as set forth in paragraph 12(a)(iv) of the Filed Proposed DIP Order; and (iii) compliance with paragraph 11(e) of the Filed Proposed DIP Order. |
| | The adequate protection to be provided to the B-2 Secured Parties shall include, without limitation; (i) adequate protection liens and claims as set forth herein; (ii) interest payments in cash paid on the last Business Day of each month at the rate accruing since the Petition Date (which is and shall be deemed for all purposes to be the default rate set forth in Section 2.07 of the B-2 Term Loan Credit Agreement with respect to ABR Loans (as defined in the B-2 Term Loan Credit Agreement)); (iii) payment of all reasonable and documented prepetition and postpetition fees and expenses of the B-2 Secured Parties' legal and financial advisors as set forth in paragraph 12(b)(iii) of the Filed Proposed DIP Order, including, for the avoidance of doubt, any fees and expenses of White & Case LLP, as counsel to Citadel Credit Master Fund LLC and its affiliates; (iv) delivery by the Debtors to the B-2 Secured Parties (substantially concurrent with delivery to the Junior DIP Agent) of all Chapter 11 Cases filings, financial statements, reports, certificates, notifications, updates, and related items that are required to be delivered to the Junior DIP Agent pursuant to the Reporting Covenants attached hereto as Annex 2, including all items described in the "Additional Information Covenants" herein; (v) the Debtors shall schedule a weekly teleconference between their financial advisors and management team and the B-2 Lenders and their respective advisors (unless the B-2 Lenders request a lesser frequency); (vi) the B-2 Lenders shall have reasonable access to the Debtors' financial advisors, management team and books and records (subject to customary exceptions); (vii) the Debtors shall deliver to the B-2 Agent and the B-2 Lenders and their advisors by 5:00 pm EST on Friday of each week (commencing the first full week after the Interim Order Entry Date) with information for the immediately preceding calendar week ending on a Friday, a status update regarding the sale process contemplated by the Bankruptcy Court's final order approving procedures for one or more sales of all or substantially all of the Debtors' assets in form and substance in all material respects acceptable to the Junior DIP Lender and permitting the B-2 Lenders (or the B-2 Agent on behalf of the B-2 Lenders) to credit bid the full amount of the B-2 Obligations (the "Bidding Procedures Order"), including reports of inbound interest, outbound solicitation, and status of diligence and bids; *provided* that the Borrower shall be entitled to restrict and/or redact commercially sensitive information to protect the competitive sales process as determined in its good faith judgment; *provided, further,* that, solely if the B-2 Lenders become a potential bidder, the Loan Parties shall not be required to provide information to the B-2 Lenders regarding the sale process that is not available to all potential bidders; (viii) the Budget shall be satisfactory to the B-2 Lenders; (ix) the Debtors shall comply with the Approved Budget (subject to Permitted Variances) as set forth in the Filed Proposed DIP Order; and (x) except as permitted by the Budget (subject to Permitted Variances), the Debtors shall not make any payment in settlement of any claim, action or proceeding without the prior written consent of the B-2 Lenders. |
| **Cash Collateral Termination** | The cash collateral termination events and remedies of the Prepetition ABL Secured Parties and UST Secured Parties shall be as set forth in the Filed Proposed DIP Order and the UST Adequate Protection Order, respectively. |
| **DIP Orders** | The DIP Orders shall:<br><br>1.  provide that, so long as there are any B-2 Obligations outstanding and until all B-2 Obligations have been indefeasibly paid in full in cash, the Junior DIP Agent and the Junior DIP Lender shall not exercise any enforcement rights with respect to the Collateral, |

|  | and the enforcement rights with respect to the Collateral shall otherwise be consistent with the priorities for liens and claims securing the DIP Facility as set forth herein and the Senior ICA Provisions; |
|  | 2. provide that, so long as there are (i) any Prepetition UST Tranche B Obligations outstanding or (ii) any Prepetition ABL Obligations (as defined in the Filed Proposed DIP Order) outstanding which have not been fully cash collateralized and until (x) all Prepetition UST Tranche B Obligations have been paid in full in cash and (y) all Prepetition ABL Obligations have been paid in full in cash or fully cash-collateralized, as applicable, the Junior DIP Secured Parties shall not exercise any enforcement rights with respect to the Collateral (other than with respect to the B-2 Collateral, subject to the foregoing paragraph), and the enforcement rights with respect to the Collateral (other than with respect to the B-2 Collateral, subject to the foregoing paragraph) shall otherwise be consistent with the priorities for liens and claims securing the DIP Facility as set forth herein and the Senior ICA Provisions; |
|  | 3. provide that in no event shall the Junior DIP Agent, Junior DIP Lender, B-2 Secured Parties or Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral; |
|  | 4. with respect to the Junior DIP Facility, ABL Facility, the Postpetition B-2 Facility and the B-2 Term Loan Credit Agreement and the UST Tranche A Credit Agreement and the UST Tranche B Credit Agreement, approve the Debtors' waiver of all section 506(c) claims and any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and |
|  | 5. otherwise be in form and substance satisfactory to the Junior DIP Lender, the B-2 Lenders, the ABL Agent, and the UST Secured Parties. |
| **Closing Date** | The closing date of the DIP Facility (the "Closing Date") shall occur within three (3) Business Days (as defined below) of the Interim Order Entry Date and shall be the first Business Day on which the conditions precedent set forth in this DIP Term Sheet have been satisfied or waived by the Junior DIP Lender and the B-2 Lenders. "Business Day" shall mean any day other than a Saturday, Sunday, or day on which banks in New York City are authorized or required by law to close. |
| **Maturity** | Borrowings shall be repaid in full and in cash, and the commitments shall terminate, on the earliest to occur (the "Maturity Date") of the following: (i) February [___], 2024 (the "Scheduled Maturity Date"); provided, that the Scheduled Maturity Date may be extended by the Junior DIP Lender to May [___], 2024,[6] with the Debtors' consent; provided, however, that the Scheduled Maturity Date may not be extended unless and until all Prepetition UST Tranche A Obligations and Prepetition UST Tranche B Obligations have been paid in full in cash); (ii) the effective date or the date of the substantial consummation (as defined in section 1102(2) of the Bankruptcy Code) of a chapter 11 plan in the Chapter 11 Cases (a "Chapter 11 Plan") that has been confirmed by an order of the Bankruptcy Court (the "Plan Effective Date"); (iii) the date the Bankruptcy Court orders the conversion of the bankruptcy case of any of the Loan Parties to a liquidation under Chapter 7; (iv) the date the Bankruptcy Court orders the dismissal of the bankruptcy case of any of the Loan |

---

[6]   270 days from Closing Date.

| | |
|---|---|
| | Parties; (v) the acceleration of the loans or termination of the commitments under the DIP Facility, including as a result of the occurrence of an Event of Default; and (vi) the date that is 45 calendar days after the Petition Date if the Final Order Entry Date shall not have occurred by such date; *provided* that no prepayment, repayment, repurchase, or exchange of borrowings under the Junior DIP Facility shall occur until the B-2 Obligations have first been indefeasibly paid in full in cash and any such prepayment, repayment, repurchase, or exchange shall otherwise be consistent with the priorities for liens and claims securing the DIP Facility as set forth herein.<br><br>Any order confirming a Chapter 11 Plan shall not discharge or otherwise affect in any way the joint and several obligations of the Loan Parties to the Junior DIP Lender or the B-2 Secured Parties under the DIP Facility and the DIP Loan Documents, other than after the indefeasible payment in full and in cash to the Junior DIP Lender and the B-2 Secured Parties (subject to the priorities set forth herein) of all respective obligations under the DIP Facility and the DIP Loan Documents on or before the Plan Effective Date and the termination of the Commitments. |
| **Interest; Fees** | The interest rate, default rate, and fees (x) under the Junior DIP Facility are set forth in <u>Annex 1-A</u> hereto and that certain Fee Letter dated on or about the date hereof (the "<u>Fee Letter</u>") by and between the Borrower and Alter Domus Products Corp. and (y) under the Postpetition B-2 Facility are set forth in Annex 1-B hereto and that certain Amended and Restated Fee Letter dated on or about the date hereof (the "<u>Amended and Restated Fee Letter</u>") by and between the Borrower and Alter Domus Products Corp. |
| **Conditions Precedent** | The obligations of the Junior DIP Lender and the B-2 Lenders to make any DIP Loans shall be conditioned solely on the satisfaction or waiver of the following:<br><br><u>Interim Order/Bankruptcy Matters</u>.<br><br>1.    The Bankruptcy Court shall have entered an Interim Order that shall be in form and substance acceptable in all material respects to the Junior DIP Agent, Junior DIP Lender, B-2 Lenders, the B-2 Agent, the ABL Agent, and the UST Secured Parties, shall be in full force and effect, and shall not (in whole or in part) have been reversed, modified, amended, stayed, vacated, appealed, or subject to a stay pending appeal or otherwise challenged or subject to any challenge. The Loan Parties shall be in compliance in all material respects with the Interim Order.<br><br>2.    Entry of the UST Adequate Protection Order.<br><br>3.    All orders entered by the Bankruptcy Court pertaining to cash management and adequate protection and all other motions and documents filed or to be filed with, and submitted to, the Bankruptcy Court in connection therewith shall be in form and substance reasonably satisfactory to the Junior DIP Lender, the B-2 Lenders, and the ABL Agent.<br><br><u>Budgets and Financial Information</u>.<br><br>1.    The Junior DIP Agent, the Junior DIP Lender, the B-2 Agent, the B-2 Lenders and the Prepetition Secured Parties shall have received the Budget as of the Closing Date, which Budget shall be in form and substance satisfactory to the Junior DIP Agent, the Junior DIP Lender, the B-2 Lenders, the ABL Agent, and the UST Secured Parties; *provided*, that the Budget filed in connection with the Initial DIP Motion shall be acceptable to each of the Junior DIP Lender, the B-2 Lenders, the ABL Agent, and the UST Secured Parties. Any amendments, modifications, updates, or extensions to the Approved Budget shall |

require the express written consent of the Junior DIP Lender, the B-2 Lenders, the ABL Agent, and the UST Secured Parties.

Customary Closing Documents.

1.    All reasonable invoiced costs, fees, expenses (including reasonable and documented legal fees and expenses) of the Junior DIP Agent and Junior DIP Lender and the B-2 Secured Parties and other compensation required by the DIP Loan Documents and this DIP Term Sheet shall have been paid or reimbursed on or prior to the Closing Date (solely to the extent invoiced in advance thereof).

2.    The Junior DIP Lender shall be satisfied that the Loan Parties have complied with the following customary closing conditions:  (i) the delivery of corporate records and documents from public officials, secretary's certificates, and officer's certificates; and (ii) evidence of authority.  The Loan Parties and the transactions contemplated by this DIP Term Sheet shall be in compliance in all material with all applicable laws and regulations.

3.    The Loan Parties have not transferred assets or incurred any debt or obligations outside the ordinary course of business since July 7, 2023, except as disclosed to the Junior DIP Lender and B-2 Lenders in writing (which may be by email) prior to the Closing Date.

4.    The Junior DIP Agent and the B-2 Agent shall have received all documentation and other information that the Junior DIP Agent and/or the B-2 Agent reasonably requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the USA Patriot Act.

**Conditions to All Loans and all Withdrawals from the DIP Proceeds Account**:

With respect to all borrowings under the DIP Facility and all withdrawals from the DIP Proceeds Account:

1.    With respect to borrowings under the DIP Facility and withdrawals from the DIP Proceeds Account that occur on or after the date that is 45 days following the date on which the Chapter 11 Cases are commenced (the "Petition Date"), the Final Order shall be in full force and effect and shall not (in whole or in part) have been modified or amended absent written consent of the Junior DIP Lender and the B-2 Lenders or reversed, stayed, vacated, appealed, or subject to a stay pending appeal or otherwise challenged or subject to any challenge absent written consent of the Junior DIP Lender or the B-2 Lenders.

2.    The Loan Parties shall be in compliance in all material respects with each order entered in the Chapter 11 Cases, including the DIP Orders and the Cash Management Order.

3.    The Loan Parties shall be in compliance with the Budget (subject to Permitted Variances).

4.    The following statements shall be true and correct:  (i) the representations and warranties contained in the DIP Loan Documents are true and correct in all material respects (including on and as of each date the Loan Parties request to borrow DIP Loans and Postpetition B-2 Loans) as though made on and as of such date, except to the extent that any such representation or warranty expressly relates to an earlier date (in which case such representation or warranty shall be true and correct in all material respects on and as

<table>
<tr><td></td><td>

of such earlier date) and (ii) no Default or Event of Default shall have occurred and be continuing on such date.

5.    If reasonably requested, execution and delivery by the Loan Parties of the DIP Loan Documents and promissory notes (if requested by the Junior DIP Lender or any B-2 Lender) evidencing the loans made and to be made under the Junior DIP Facility or the Postpetition B-2 Facility, as applicable.

6.    The Junior DIP Agent and the B-2 Agent shall have received a borrowing notice not later than 1:00 p.m., New York City time at least one (1) Business Day prior to the borrowing.

</td></tr>
<tr><td>**Covenants**</td><td>

The covenants under the DIP Loan Documents shall be subject to the respective Documentation Principles and subject to, and based on the terms and conditions of, the DIP Orders, as applicable. Neither the DIP Credit Agreement nor the Postpetition B-2 Loan Documents shall include any "anti-hoarding" covenant or mandatory prepayment provisions. The covenants shall include:

**Additional Information Covenants**: Additional information covenants shall apply for the benefit of the Junior DIP Lender and the B-2 Secured Parties as follows:

1.    <u>Chapter 11 Cases Filings</u>. Delivery by the Loan Parties to the Junior DIP Agent and the B-2 Lenders of copies of all pleadings, motions, applications, judicial information, financial information, and other documents filed by or on behalf of any other Loan Party with the Bankruptcy Court in the Chapter 11 Cases, or distributed by or on behalf of any Loan Party to any official committee appointed in the Chapter 11 Cases, including all motions for "first day" and "second day" relief.

2.    <u>Conference Call</u>. The Loan Parties shall schedule a weekly teleconference between their financial advisors and management team and the Junior DIP Agent and Junior DIP Lender and the B-2 Secured Parties and their respective advisors (unless the Junior DIP Lender requests a lesser frequency).

3.    <u>Access.</u> The Junior DIP Agent, the Junior DIP Lender and the B-2 Secured Parties shall have reasonable access to the Company's financial advisors, management team and books and records (subject to customary exceptions); provided that the Borrower shall be entitled to restrict and/or redact information to protect the competitive sales process as determined in its good faith judgment.

4.    <u>Sale Process Reporting.</u> Delivery by the Loan Parties to the Junior DIP Agent, Junior DIP Lender, B-2 Agent, and the B-2 Lenders and their respective advisors by 5:00 pm EST on Friday of each week (commencing the first full week after the Closing Date) with information for the immediately preceding calendar week ending on a Friday, a status update regarding the sale process contemplated by the Bidding Procedures Order, including reports of inbound interest, outbound solicitation, and status of diligence and bids, *provided* that the Borrower shall be entitled to restrict and/or redact commercially sensitive information to protect the competitive sales process as determined in its good faith judgment; *provided, however*, if the Junior DIP Lender and/or the B-2 Lenders is / are / become(s) a potential bidder, the Loan Parties shall not be required under the DIP Loan Documents to provide information to the Junior DIP Lender and/or B-2 Lenders, as applicable, regarding the sale process that is not available to all potential bidders.

5.    <u>Reporting Frequency.</u> Delivery by the Loan Parties to the Junior DIP Agent, Junior DIP Lender, the B-2 Agent and the B-2 Lenders and their respective advisors of a daily

</td></tr>
</table>

liquidity report (which may be sent by email) (to commence with the second Business Day following the Closing Date).

6.  Disbursements Reporting. Delivery by the Loan Parties to the Junior DIP Agent, Junior DIP Lender, the B-2 Agent, and the B-2 Lenders and their respective advisors by 5:00 pm EST on Friday of each week with information for the immediately preceding calendar week ending on a Friday (commencing the first full week after the Closing Date) an itemized list of disbursements.

7.  Receivables Reporting. Delivery by the Loan Parties to the Junior DIP Agent, Junior DIP Lender, B-2 Agent, and the B-2 Lenders and their respective advisors by 5:00 pm EST on Friday of each week with information for the immediately preceding calendar week ending on a Friday (commencing the first full week after the Closing Date) a list of receivables and payables.

8.  Agreements. Notification by the Loan Parties to the Junior DIP Lender and the B-2 Lenders and their respective advisors, within one (1) Business Day (or such longer timeframe as agreed by the Junior DIP Lender and B-2 Lenders), of any new material agreement entered into or material obligation incurred by any Loan Party.

**Affirmative Covenants**: Affirmative covenants in favor of the Junior DIP Lender and, where indicated, the B-2 Secured Parties, as follows:

1.  Comply in all material respects with (x) with respect to the Junior DIP Lender and the B-2 Secured Parties, the DIP Order and (y) each other order entered by the Bankruptcy Court in the Chapter 11 Cases .

2.  Upon the reasonable request of the Junior DIP Agent, Junior DIP Lender, B-2 Agent, or B-2 Lenders, access to information (including historical information) and personnel regarding strategic planning, cash, and liquidity management, and operational and restructuring activities (subject to customary exceptions); *provided* that the Borrower shall be entitled to restrict and/or redact information in order to protect the competitive sales process  as determined in its good faith judgment; *provided*, *further*, if the Junior DIP Lender and/ or the B-2 Lenders is / are / become(s) a potential bidder, the Loan Parties shall not be required under the DIP Loan Documents to provide information to the Junior DIP Lender and/or the B-2 Lenders, as applicable, regarding the sale process that is not available to all potential bidders.

3.  With respect to the Junior DIP Lender, comply with the Budget as set forth on Annex 3.

4.  Pay all fees and expenses of estate professionals when due in accordance with the interim compensation procedures approved in the Chapter 11 Cases.

**Negative Covenants**: Negative covenants in favor of the Junior DIP Lender and, where indicated, the B-2 Secured Parties, as follows:

1.  Absent the consent of the Junior DIP Lender and, to the extent constituting or impacting any B-2 Priority Collateral, the B-2 Lenders, (a) assume or reject any executory contract or unexpired lease or (b) consent to termination or reduction of the exclusivity period to

file and solicit a chapter 11 plan or fail to object to any motion seeking to terminate or reduce such exclusivity period.

2. For the benefit of the Junior DIP Lender and the B-2 Secured Parties, modify or alter organizational documents in any material manner, except as required by the Bankruptcy Code.

3. Assert any right of subrogation or contribution against any other Loan Party until all borrowings under the DIP Facility are indefeasibly paid in full and in cash as provided herein and the commitments are terminated.

4. Except as set forth in the Approved Budget (subject to Permitted Variances), the DIP Orders, or the "first day" or "second day" orders, make any payment of principal or interest or otherwise on account of any prepetition indebtedness or payables, other than UST Adequate Protection Payments, the payment of ABL Adequate Protection Fees and Expenses (as defined in the Filed Proposed DIP Order), adequate protection payments for the B-2 Lenders, any other payments contemplated by the DIP Order (including repayments of the B-2 Obligations as set forth herein), and other payments agreed in writing by the Junior DIP Lender and B-2 Lenders and authorized by the Bankruptcy Court.

5. Incur any new debt, including redrawing, and/or reborrowing the ABL Facility.

6. For the benefit of the Junior DIP Lender and the B-2 Secured Parties, incur any new consensual liens on any assets of any Loan Party.

7. Other than for director fees included in and as permitted by the Approved Budget (subject to Permitted Variances), subject to the Debtors' ability to make UST Adequate Protection Payments pursuant to the UST Adequate Protection Order, make any payment to any board member or shareholder of any Loan Party in their respective capacities as such.

8. For the benefit of the Junior DIP Lender and, to the extent involving B-2 Priority Collateral, the B-2 Secured Parties, no asset sales other than (i) immaterial assets in an aggregate amount not exceeding $250,000 during the term, and (ii) in accordance with the Bidding Procedures Order, the DIP Order and other applicable "first day" or "second day" orders.

9. Abandonment of any material assets or any similar action absent written approval of the Junior DIP Lender and the B-2 Lenders, and with respect to the Prepetition UST Tranche B Priority Collateral, the UST Secured Parties.

| | |
|---|---|
| **Milestones** | The Junior DIP Facility and DIP Orders shall contain the following milestones (which will not limit or modify the milestones set forth in the UST Adequate Protection Order for the UST Tranche B Priority Collateral, except as modified in Annex 4), such milestones may be extended or waived in writing (which may be via email) by the Junior DIP Lender:[7] |

---

[7] The failure by the Debtors to meet any milestone set forth in this DIP Term Sheet, unless otherwise waived by the Junior DIP Lender, will be an Event of Default under the Junior DIP Facility and under the Postpetition B-2 Credit Agreement. The failure by the Debtors to meet any milestone set forth in this DIP Term Sheet that is also

18

1. No later than fifteen (15) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Interim Order and the UST Adequate Protection Order, each in form and substance satisfactory to the Junior DIP Lender, the Junior DIP Agent, the B-2 Agent, and the B-2 Lenders;

2. By no later than fifteen (15) calendar days entry of the Interim Order, the Canadian Court shall have issued the Canadian Initial Recognition Order, the Canadian Supplemental Order and the Canadian Interim DIP Recognition Order;

3. No later than thirty (30) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Bidding Procedures Order, in form and substance reasonably satisfactory to the Junior DIP Lender;

4. By no later than fifteen (15) calendar days after entry of the Final Order, the Borrower, in its capacity as foreign representative on behalf of the Debtors, shall have filed a motion with the Canadian Court for the recognition of, and the Canadian Court shall have issued, the Canadian Final DIP Recognition Order;

5. No later than forty-five (45) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Final Order, in form and substance satisfactory in all material respects to the Junior DIP Lender, the Junior DIP Agent, the B-2 Agent, and the B-2 Lenders;

6. No later than ninety (90) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids for the B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net cash proceeds of at least $250 million; and

7. No earlier than one-hundred twenty (120) calendar days after the Petition Date (which may be extended to one-hundred fifty (150) calendar days after the Petition Date with (i) the consent of the Prepetition ABL Agent, the B-2 Agent, and the UST Secured Parties (in each case such consent not to be unreasonably withheld), and (ii) the consent of the Junior DIP Lender in its sole discretion) and no later than one-hundred and fifty (150) calendar days after the Petition Date (which may be extended to one-hundred and eighty (180) calendar days after the Petition Date with (i) the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the UST Secured Parties (in each case such consent not to be unreasonably withheld), and (ii) the consent of the Junior DIP Lender in its sole discretion), the Debtors shall have consummated one or more sales of all or substantially all of their assets in accordance with the Bidding Procedures Order that generates net cash proceeds in respect of the B-2 Priority Collateral of at least 100% of outstanding obligations under the Junior DIP Facility and the B-2 Obligations and shall have indefeasibly repaid the B-2 Obligations and outstanding obligations under the Junior DIP Facility in full in cash.

---

a milestone under the UST Adequate Protection Order, unless otherwise waived by the UST Secured Parties, will be a cash collateral termination event for the UST Secured Parties under the UST Adequate Protection Order..

| | |
|---|---|
| **Representations and Warranties** | The representations and warranties of the DIP Loan Parties under the DIP Loan Documents shall be subject to the Documentation Principles and subject to, and based on the terms and conditions of, the DIP Order, as applicable. |
| **Payments; Prepayments** | The Borrower shall make each payment (including principal of or interest on any borrowing or any fees or other amounts due and payable) hereunder and under any other DIP Loan Document not later than 2:00 p.m., New York City time, on the date when due in immediately available Dollars, without setoff, defense or counterclaim. Any amounts received after such time on any date may, in the discretion of the Junior DIP Agent or the B-2 Agent, as applicable, be deemed to have been received on the next succeeding Business Day for purposes of calculating interest thereon. Each such payment shall be made to the Junior DIP Agent or the B-2 Agent. The Junior DIP Agent or the B-2 Agent shall promptly distribute to the Junior DIP Lender or each B-2 Lender any payments received by it on behalf of such Junior DIP Lender or such B-2 Lender.

At any time after the B-2 Obligations have been indefeasibly paid in full in cash, the Loan Parties may, at any time, without premium or penalty, (i) repay the loans under the Junior DIP Facility and/or (ii) reduce the Junior DIP Facility commitments, in each case in full or in part; *provided, however*, that no repayment or prepayment of borrowings under the Junior DIP Facility shall occur until the B-2 Obligations have been indefeasibly paid in full in cash and any such repayment or prepayment shall otherwise be consistent with the priorities for liens and claims securing the Junior DIP Facility and the B-2 Obligations as set forth herein. The Loan Parties shall notify the Junior DIP Agent in writing (which may be by email) of any mandatory prepayment of the loans under the Junior DIP facility not later than 1:00 p.m., New York City time, at least one (1) Business Day prior to the date of such prepayment.

The B-2 Obligations shall be non-call for 120 days from the Closing Date and par thereafter. A Make-Whole Amount (as defined below) shall be payable upon acceleration, termination, prepayment or repayment during the non-call period.

"Make-Whole Amount" means, as of any date of determination, an amount equal to the aggregate amount of interest which would have otherwise been payable on the principal amount of the B-2 Obligations repaid or prepaid (or deemed repaid or prepaid in the case of an acceleration or termination of the B-2 Obligations) on such date from the date of repayment or prepayment until the date falling 120 days after the Closing Date discounted at the Treasury Rate (as defined below) plus 0.50%.

"Treasury Rate" means, with respect to any repayment or prepayment of B-2 Obligations, a rate per annum (computed on the basis of actual days elapsed over a year of 360 days) equal to the rate determined by the B-2 Agent on the date falling three Business Days prior to the date of such repayment or prepayment, to be the yield expressed as a rate listed in The Wall Street Journal for United States Treasury securities most nearly equal to the period from the date of such prepayment or repayment to and including the date falling 120 days after the Closing Date. |
| **Events of Default** | The Events of Default under the DIP Loan Documents shall be subject to the Documentation Principles and subject to, and based on the terms and conditions of, the DIP Orders, subject to the following modifications with respect to the Junior DIP Facility and, where indicated, the Postpetition B-2 Facility: |

| | |
|---|---|
| | 1. **Budget**. The proceeds of any DIP Loans shall have been expended in a manner that is not in accordance with the Budget (subject to permitted variances set forth on Annex 3 ("Permitted Variances") with respect to disbursements). |
| | 2. **Entry of Final Order**. For the benefit of the Junior DIP Lender and the B-2 Secured Parties, the entry of the Final Order shall not have occurred within 45 calendar days after the Petition Date. |
| | 3. **Prepetition Claims**. For the benefit of the Junior DIP Lender and, with respect to (A)(iii) and (B), the B-2 Secured Parties), any Loan Party shall file a motion seeking, or the Bankruptcy Court shall enter, an order (A) approving payment of any pre-petition claim (or the Loan Party shall otherwise make a payment on any prepetition claim) other than (x) as provided for in (i) the first day orders or second day orders, (ii) the Budget (subject to Permitted Variances), or (iii) the DIP Order (including repayments of the B-2 Obligations as set forth herein) or (y) otherwise consented to by the Junior DIP Agent and Junior DIP Lender in writing, (B) granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to any holder of any security interest to permit foreclosure on any assets with a fair market value in excess of $250,000; or (C) except as provided in the DIP Order, and the other adequate protections set forth in the DIP Orders and the UST Cash Collateral Order, approving any settlement or other stipulation not approved by the Junior DIP Lender and not included in the Budget with any secured creditor of any Loan Party providing for payments as adequate protection or otherwise to such secured creditor. |
| | 4. **Bidding Procedures Order**. Reserved. |
| | 5. **Sale Order**. Reserved. |
| | 6. **Plan**. For the benefit of the Junior DIP Lender and the B-2 Secured Parties, the filing of any plan that does not propose to indefeasibly repay the B-2 Obligations and the obligations under the Junior DIP Facility in full in cash. |
| **Junior DIP Agent and B-2 Agent** | The Junior DIP Lender and the Junior DIP Agent and the B-2 Lenders and the B-2 Agent hereby agree to the agency provisions set forth in Annex 6 hereto, which are incorporated herein by reference. |
| **Indemnity; Expenses** | The Loan Parties shall, jointly and severally, be obligated to indemnify and hold harmless the Junior DIP Agent, the Junior DIP Lender, the B-2 Agent and the B-2 Lenders, and each of their respective affiliates, officers, directors, fiduciaries, employees, agents, advisors, attorneys, and representatives (collectively, the "Related Parties") from and against all losses, claims, liabilities, damages, and expenses (including out-of-pocket fees and disbursements of counsels) in connection with any investigation, litigation, or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Facility, the DIP Loan Documents or the transactions contemplated in this DIP Term Sheet; provided that, notwithstanding the foregoing, such indemnity shall not, as to any indemnitee, be available to the extent that such losses, damages, claims, liabilities and expenses resulted from the gross negligence, bad faith or willful misconduct of such indemnitee or of any affiliate, director, officer, employee, counsel, agent or attorney-in-fact of such indemnitee, as determined by the final non-appealable judgment of a court of competent jurisdiction. The Loan Parties shall, jointly and severally, be obligated to pay or reimburse the Junior DIP Agent, the Junior DIP Lender, the B-2 Agent and the B-2 Lenders, and each of their respective affiliates, officers, directors, fiduciaries, |

21

<table>
<tr>
<td></td>
<td>employees, agents, advisors, attorneys, and representatives incurred in connection with (i) the preparation, negotiation and execution of this DIP Term Sheet and the other DIP Loan Documents, and any amendment, waiver, consent or other modification of the provisions hereof and thereof (whether or not the transactions contemplated thereby are consummated), and the consummation and administration of the transactions contemplated hereby and thereby (including out-of-pocket fees and disbursements of counsels) and (ii) the enforcement (whether through negotiations, legal proceedings or otherwise) of any rights or remedies under this DIP Term Sheet or the other DIP Loan Documents (including out-of-pocket fees and disbursements of counsels).<br><br>To the extent permitted by applicable law, no Loan Party shall assert, and each hereby waives, any claim against the Junior DIP Agent, the Junior DIP Lender, the B-2 Agent, the B-2 Lenders and their Related Parties, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this DIP Term Sheet, any other DIP Loan Document or any agreement or instrument contemplated hereby or thereby.<br><br>The provisions of this section entitled "Indemnity; Expenses" shall survive the resignation or replacement of the Junior DIP Agent or the B-2 Agent, as applicable, the termination of the DIP Loan Documents, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any DIP Loan Document.</td>
</tr>
<tr>
<td><strong>Credit Bidding</strong></td>
<td>The Junior DIP Lender and Junior DIP Agent expressly waive any rights to credit bid the obligations outstanding under the Junior DIP Facility. For the avoidance of doubt, the Prepetition Agents will have the rights to credit bid as set forth in the Filed Proposed DIP Order and the UST Adequate Protection Order. The B-2 Agent, upon the instruction of the B-2 Lenders, shall have the right and authority to credit bid up to the full amount of the B-2 Obligations. Any credit bid with respect to all or any portion of the ABL Priority Collateral shall require all Prepetition ABL Obligations to be paid in full in cash or cash collateralized, as applicable, upon the consummation of such credit bid.</td>
</tr>
<tr>
<td><strong>Bid Procedures / Stalking Horse Purchaser</strong></td>
<td>In connection with the DIP Facility and Bidding Procedures Order, the Debtors shall enter into an Asset Purchase Agreement (the "<u>Stalking Horse Purchase Agreement</u>") pursuant to which Old Dominion Freight Line, Inc., as buyer (the "<u>Stalking Horse Purchaser</u>"), shall purchase some or all of the Real Property constituting Non-UST Tranche B Term Priority Collateral (as defined in the Intercreditor Agreement) (the "<u>Stalking Horse Purchase Properties</u>") for no less than $1.5 billion (the "<u>Stalking Horse Purchase Amount</u>").<br><br>The Stalking Horse Purchase Agreement shall:<br>(i)    provide that the Stalking Horse Purchaser's obligation to purchase the Stalking Horse Purchase Properties pursuant to the Stalking Horse Purchase Agreement shall not be conditioned on any contingency other than title;<br>(ii)    provide that any breakup fee shall not exceed $26 million and expense reimbursement payable to the Stalking Horse Purchaser shall not exceed $2 million;<br>(iii)    include a deposit equal to 5% of the Stalking Horse Purchase Amount;<br>(iv)    a representation that the Stalking Horse Purchaser is a credit worthy entity with cash and/or financing commitments for the entire Stalking Horse Purchase Amount;<br>(v)    not include any limitation on Stalking Horse Purchaser damages;<br>(vi)    provide that the Stalking Horse Purchaser will act as a backup bidder, if applicable;<br>(vii)    provide that the Stalking Horse Purchaser shall pay any and all transfer taxes and real estate closing costs;</td>
</tr>
</table>

| | |
|---|---|
| | (viii)   be acceptable to the Junior DIP Lender, the B-2 Lenders, and the UST Secured Parties, with such acceptance not to be unreasonably withheld;<br><br>(ix)   provide that, provided it is consistent with, and not contrary to, the Debtors' fiduciary duties, closing shall occur no later than one-hundred fifty (150) calendar days after the Petition Date (which may be extended to one-hundred eighty (180) calendar days with (i) the written consent of the Prepetition ABL Agent, the B-2 Agent, and the UST Secured Parties (in each case such consent not to be unreasonably withheld), and (ii) the written consent of the Junior DIP Lender in its sole discretion); and<br><br>(x)   provide that the Stalking Horse Bid shall remain effective for no less than one hundred and eighty (180) days. |
| **No Assignments or Participations** | The DIP Loan Documents shall not include rights of assignment or participation rights other than with respect to the B-2 Obligations.<br><br>The B-2 Obligations shall be freely transferable by the B-2 Lenders. |
| **Amendment and Waiver** | No provision of this DIP Term Sheet may be amended other than by an instrument in writing signed by the Borrower, Junior DIP Agent, Junior DIP Lender, B-2 Agent and the B-2 Lenders. |
| **Governing Law** | The DIP Loan Documents will provide that the Loan Parties will submit to the non-exclusive jurisdiction and venue of the Bankruptcy Court or, in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, then in any state or federal court of competent jurisdiction in the state, county, and city of New York, borough of Manhattan, and shall waive any right to trial by jury. New York law shall govern the DIP Loan Documents (other than security documents to be governed by local law, to be determined by the Junior DIP Agent or the B-2 Agent, as applicable). |
| **Release** | Releases as set forth in the Filed Proposed DIP Order and UST Adequate Protection Order. For the avoidance of doubt, the Junior DIP Lender and Junior DIP Agent and the B-2 Secured Parties shall receive releases no less favorable than those contained in the Filed Proposed DIP Order and Filed Proposed UST Cash Collateral Order. |
| **Remedies** | Subject to the Senior ICA Provisions and the Intercreditor Agreement, remedies as set forth in the Filed Proposed DIP Order and UST Adequate Protection Order; *provided* that the Prepetition Secured Parties shall have remedies consistent with, and no less favorable than, the remedies of the ABL Agent as set forth in the Filed Proposed DIP Order; *provided*, *further*, that the B-2 Secured Parties shall have remedies and the rights thereof (including, without limitation, the right to enforce against Collateral) consistent with, and no less favorable than, the remedies of the "DIP Agent" and the "DIP Secured Parties" (as defined in the Filed Proposed DIP Order) and the B-2 Agent and B-2 Secured Parties as set forth in the Filed Proposed DIP Order; and *provided, further,* that neither the Junior DIP Agent nor the Junior DIP Lender shall be permitted to exercise any remedies with respect to the B-2 Priority Collateral unless the B-2 Obligations, the Prepetition ABL Obligations, and the Prepetition UST Tranche B Obligations (as defined in the UST Adequate Protection Order) have been indefeasibly paid in full in cash (or cash collateralized, as applicable) and otherwise subject to the priorities of the liens and claims securing the DIP Facility as set forth herein. |

**[Signature Pages to Follow]**

### Annex 1-A[8]

**Junior DIP Facility**

**Interest, Premiums, Fees**

**Interest Rate**:

All amounts outstanding under the Junior DIP Facility will bear interest 15.00% *per annum* and shall be paid in cash on the last Business Day of each month.

**Default Interest**:

During the continuance of an Event of Default, the Junior DIP Loans and all other outstanding obligations under the Junior DIP Facility will bear interest at an additional 2.0% *per annum* above the interest rate otherwise applicable.

**DIP Fee**:

As consideration for the Junior DIP Lender providing the Junior DIP Facility, the Borrower hereby agrees to pay (or cause to be paid) to the Junior DIP Agent, for the account of the Junior DIP Lender, a closing fee (the "DIP Closing Fee") in an aggregate amount equal to 4.0% of the Junior DIP Facility. The DIP Closing Fee will be earned on the date of execution of the Junior DIP Facility. The DIP Closing Fee will be payable on the Maturity Date, only if the B-2 Obligations have first been indefeasibly paid in full in cash.

**Agency Fees:**

As set forth in the Fee Letter.

**Nature of Interest and Fees**:

Payable in cash and non-refundable under all circumstances.

---

[8] For the avoidance of doubt, the Additional Junior DIP Commitment's interest rate and exit fee are not reflected this Annex 1-A and are otherwise reflected in the DIP Term Sheet.

## Annex 1-B

### Postpetition B-2 Facility

### Interest, Premiums, Fees

**Interest Rate**:

All amounts outstanding under the Postpetition B-2 Facility will bear interest at the Alternate Base Rate (as defined in the B-2 Term Loan Credit Agreement) plus 8.50% *per annum* and shall be paid in cash on the last Business Day of each month.

**Default Interest**:

During the continuance of an Event of Default, the Postpetition B-2 Loans and all other outstanding obligations under the Postpetition B-2 Facility will bear interest at an additional 2.0% *per annum* above the interest rate otherwise applicable.

**Upfront Fee**:

An amount (the "Upfront Fee") equal to 4.0% of the aggregate amount of the Postpetition B-2 Facility as of the date of this DIP Term Sheet (i.e., $4.0 million). For the avoidance of doubt, the Upfront Fee will be paid-in-kind in full on the Closing Date.

**Agency Fees:**

As set forth in the Amended and Restated Fee Letter.

**Nature of Interest and Fees**:

Payable in cash (other than the Upfront Fee, which shall be paid-in-kind) and non-refundable under all circumstances.

**Annex 2**

**Reporting Covenants[9]**

So long as the Junior DIP Lender shall have any commitment under the DIP Facility or any loan or other obligation (other than contingent indemnification or reimbursement obligations) under the DIP Loan Documents that is accrued or payable shall remain unpaid or unsatisfied, then from and after the date specified below, the Borrower shall deliver to the Junior DIP Agent for prompt further distribution to the Junior DIP Lender and its advisors:

(a)     not later than 5:00 p.m. New York time on the third business day of the last full calendar week of each month (commencing with August 30, 2023) occurring after the Closing Date (the "**Updated Budget Deadline**"), a supplement to, for the first such supplement, the Initial Budget, and for each supplement thereafter, the most-recently delivered Updated Budget (each such supplement which is approved in accordance with the terms of this clause (l), an "**Updated Budget**"), prepared by management of the Borrower in consultation with the Borrower's Operational Advisor covering the 13-week period that commences with the Saturday of the calendar week that includes such Updated Budget Deadline, consistent with the form and level of details set forth in the Initial Budget.  Each Updated Budget shall be, in each case, subject to the written approval of the Junior DIP Lender, the B-2 Lenders, the ABL Agent, and the UST Secured Parties (the "**Required Budget Approval Parties**"); provided that, if the Required Budget Approval Parties shall have not provided written approval of any proposed budget supplement prior to 5:00 (New York City time) on the third business day after receipt thereof (the "**Budget Review Time**"), the Required Budget Approval Parties shall be deemed to have accepted such proposed budget supplement; provided further that, (i) if a Required Budget Approval Party object in writing to any proposed budget supplement prior to the Budget Review Time, no proposed budget supplement covering the 13-week period covered by such rejected budget supplement shall become an Updated Budget until and unless the Required Budget Approval Parties approve thereof in writing (in their sole and absolute discretion), and (ii) the prior Approved Budget shall remain in effect until such time as the Required Budget Approval Parties so approve a revised budget supplement in accordance with the foregoing sub-clause (i).  As used herein, the "**Approved Budget**" shall mean (i) initially, the Initial Budget and (ii) thereafter, upon (and subject to) the approval (or deemed approval) of any Updated Budget by the Required Budget Approval Parties in accordance with the foregoing procedures, such Updated Budget.

(b)     not later than 5:00 p.m. New York time, on each business day (commencing with the second business day following the Closing Date), liquidity update (each, a "**Liquidity Report**"), which may be sent by email, specifying the aggregate amount of Liquidity of the Loan Parties and their Subsidiaries as of the end of business of the immediately preceding business day;

---

[9] Copies of all reporting and information provided (or required to be provided but for the Junior DIP Lender becoming a potential bidder) to the Junior DIP Agent or the Junior DIP Lender and its advisors pursuant to this Annex 2 shall also be provided concurrently to the B-2 Secured Parties, the UST Secured Parties, and each of their respective advisors.

(c)     not later than 5:00 p.m. New York time on each Budget Variance Test Date, the following:

    (i)     a Budget Variance Report for the most recently ended Budget Variance Test Period; and

    (ii)    an updated budget prepared by management of the Borrower (in consultation with the Borrower's Operational Advisor) covering the 13-week period that commences with the calendar week that includes such Wednesday (provided that this clause (c)(ii) may be satisfied, for each week on which an Updated Budget Deadline occurs, by delivery of the Updated Budget);

(d)     not later than 5:00 p.m. New York time on the Friday of each calendar week, with information for the immediately preceding calendar week ending on a Friday (commencing on Friday, August 25, 2023) the following, each in form and substance satisfactory to the Required Budget Approval Parties:

    (i)     a written report (each, a "**Disbursement Report**") of disbursements made during the period since delivery of the last Disbursement Report (or, for the first Disbursement Report delivered hereunder, since the Petition Date), including payroll payments made by department, payments to directors, and payments to professionals;

    (ii)    a written report (each, a "**Sale Report**") setting out updates in the monetization strategy of the Borrower, including an update on the status of the sale of each Real Property and other assets of the Loan Parties contemplated by the Bidding Procedures Order, a description of inbound interests and outbound solicitations, and updates on the status of diligence and bids since delivery of the last Sale Report (or, for the first Sale Report delivered hereunder, since the Petition Date); *provided, however,* if the Junior DIP Lender is / becomes a potential bidder, the Loan Parties shall not be required under the DIP Loan Documents to provide information to the Junior DIP Lender regarding the sale process that is not available to all potential bidders; and

    (iii)   a list of (A) current information with respect to all accounts receivable owed to the Loan Parties, including all collections, sales, reconciliations and payments in respect thereof, and (B) current information with respect to all accounts payable owed by the Loan Parties.

**Annex 3**

**Budget Variance Covenants**

Commencing with the Budget Variance Test Date occurring on Friday, August 25, 2023, and on each Budget Variance Test Date occurring thereafter, the Borrower shall not, nor shall it permit any of its Subsidiaries to, permit:

(a)  the sum of the actual aggregate cash receipts of the Borrower and its Subsidiaries (excluding proceeds of the Term Loans) for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be less than the Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Total Receipts" for such Budget Variance Test Period; or

(b)  the sum of the actual aggregate operating disbursements of the Borrower and its Subsidiaries for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Total Operating Disbursements" for such Budget Variance Test Period; or

(c)  the sum of the actual aggregate amounts paid by the Borrower and its Subsidiaries with respect to severance and accrued pre-petition wages for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line items in the Approved Budget entitled "Severance" and "Accrued Pre-Petition Wages" for such Budget Variance Test Period; or

(d)  the sum of the actual aggregate disbursements of the Borrower and its Subsidiaries with respect to lienholders and on account of taxes and other restructuring costs for the Budget Variance Test Period ending immediately prior to such Budget Variance Test Date to be greater than Permitted Variance Percentage of the aggregate amount set forth for the line item in the Approved Budget entitled "Prepetition Vendors & Taxes" for such Budget Variance Test Period.

To the extent that any Budget Variance Test Period encompasses a period that is covered in more than one Approved Budget, the applicable weeks from each applicable Approved Budget shall be utilized in making the calculations set forth herein.

The capitalized terms used in this DIP Term Sheet but not defined shall have the following meanings:

"Budget Variance Report" shall mean a weekly variance report prepared by management of the Borrower (in consultation with the Borrower's Operational Advisor), in form and detail reasonably satisfactory to the Junior DIP Lender and the B-2 Lenders, comparing for each applicable Budget Variance Test Period the actual receipts and disbursements against anticipated receipts and disbursements under the applicable Approved Budget, on a line by line and aggregate basis and in the same level of detail set forth in the Approved Budget, together with a written explanation for all material variances in any given Budget Variance Test Period and such other related information as the Required Lenders may reasonably request.

"Budget Variance Test Date" shall mean each of (a) Friday August 25, 2023, (b) Friday September 1, 2023, (c) Wednesday September 6, 2023 and (d) each Wednesday thereafter.

"Budget Variance Test Period" means, as of any date of determination, (a) with respect to the first Budget Variance Report delivered after the Closing Date and the first Budget Variance Test Date occurring on Friday August 25, 2023, the period starting on the Petition Date and ending on August 18, 2023, (b) with respect to the second Budget Variance Report delivered after the Closing Date and the Budget Variance Test Date occurring on Friday September 1, 2023, the period starting on the Petition Date and ending on August 25, 2023, (c) with respect to the third Budget Variance Report delivered after the Closing Date and the Budget Variance Test Date occurring on Wednesday September 6, 2023, the period starting on the Petition Date and ending on September 1, 2023 and (c) with respect to each Budget Variance Report delivered thereafter and each the Budget Variance Test Date occurring thereafter, the four-week period ending on the Friday of the week immediately preceding the applicable Budget Variance Test Date.

"Permitted Variance Percentage" shall mean:

(a)     with respect to clause (a) above, (i) with respect to the Budget Variance Test Period ending on August 18, 2023, 80%, (b) with respect to the Budget Variance Period ending on August 25, 2023, 85%, and (c) with respect to each Budget Variance Period ending thereafter, 90%;

(b)     with respect to clauses (b) through (d), (i) with respect to the Budget Variance Test Period ending on August 18, 2023, 120%, (ii) with respect to the Budget Variance Period ending on August 25, 2023, 115%, and (iii) with respect to each Budget Variance Period ending thereafter, 110%; and

(c)     with respect to clause(e), 120%.

Annex 4

**UST Milestones**

| Milestone | Date Listed in UST Adequate Protection Order [Docket No. 16-2] | New Date |
|---|---|---|
| 7(a)(ii): Court shall have entered the Interim DIP Order and the Interim UST Cash Collateral Order, each in form and substance reasonably satisfactory to the UST Secured Parties | No later than three (3) calendar days after the Petition Date | No later than fifteen (15) calendar days after the Petition Date |
| 7(a)(iii): The Court shall have entered the Bidding Procedures Order, in form and substance reasonably satisfactory to the UST Secured Parties | No later than ten (10) calendar days after the Petition Date | No later than thirty (30) calendar days after the Petition Date |
| 7(a)(iv): By no later than fifteen (15) calendar days after the granting of the Interim DIP Order and the Interim UST Cash Collateral Order by the Court, the Canadian Court shall have issued the Canadian Initial Recognition Order, the Canadian Supplemental Order, and the Canadian Interim DIP Recognition Order, each in form and substance reasonably satisfactory to the UST Secured Parties | No later than ten (10) calendar days after the Petition Date | Deleted portion already satisfied |
| 7(a)(v): The Court shall have entered the Final DIP Order and the Final UST Cash Collateral Order, each in form and substance satisfactory to the UST Secured Parties | No later than thirty (30) calendar days after the Petition Date | No later than forty-five (45) calendar days after the Petition Date |
| 7(a)(vi): The Borrower, in its capacity as foreign representative on behalf of the Debtors, shall have filed a motion with the Canadian Court for the recognition of, and the Canadian Court shall have issued, the Canadian Final DIP Recognition Order (capitalized terms used but not otherwise defined in this sub-paragraph (vi) shall have the meanings given to those terms in the DIP Credit Agreement), each in form and substance reasonably satisfactory to the UST Secured Parties | No later than forty (40) calendar days after the Petition Date | No later than fifteen (15) calendar days after the granting of the Final DIP Order. |
| 7(a)(vii): The Debtors shall have received unique, non-duplicative binding cash bids for the B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, Net Proceeds at least equal to $250 million (capitalized terms used but not otherwise defined in this sub-paragraph (vii) shall have the meanings | Unless otherwise waived or extended by the Required DIP Lenders pursuant to the Interim DIP Order, no later than fifty-five (55) calendar days after the Petition Date | No later than ninety (90) calendar days after the Petition Date |

| Milestone | Date Listed in UST Adequate Protection Order [Docket No. 16-2] | New Date |
|---|---|---|
| given to those terms in the DIP Credit Agreement) | | |
| 7(a)(ix):  The Debtors shall have consummated Dispositions in accordance with the Bidding Procedures Order that either (i) generated Net Proceeds of B-2 Priority Collateral equal to at least 100% of the sum of the aggregate amount of Obligations outstanding as of such date or (ii) is consummated through a credit bid of the outstanding Obligations (and any other applicable obligations) in connection with sales of B-2 Priority Collateral (capitalized terms used but not otherwise defined in this sub-paragraph (ix) shall have the meanings given to those terms in the DIP Credit Agreement) | Unless otherwise waived or extended by the Required DIP Lenders pursuant to the Interim DIP Order, no later than ninety (90) calendar days after the Petition Date | No later than one-hundred and fifty (150) calendar days after the Petition Date (which may be extended to one-hundred and eighty (180) calendar days after the Petition Date with (i) the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the UST Secured Parties (in each case such consent not to be unreasonably withheld), and (ii) the consent of the Junior DIP Lender in its sole discretion). |
| 7(a)(x):  The Debtors shall have received unique, non-duplicative binding cash bids for the Prepetition UST Tranche B Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net cash proceeds at least equal to $200 million | No later than fifty-five (55) calendar days after the Petition Date | No change. |
| 7(a)(xi):  the debtors shall have received unique, non-duplicative binding cash bids pursuant to the Bidding Procedures Order which are not subject to any financing contingencies (but, for the avoidance of doubt, may be subject to receipt of environmental reports and/or title contingencies reasonably acceptable to buyer(s) for the Prepetition UST Tranche B Collateral) for the Prepetition UST Tranche B Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net cash proceeds at least equal to $300 million | No later than seventy (70) calendar days after the Petition Date | No change. |
| 7(a)(xii):  The Debtors shall have consummated dispositions in accordance with the Bidding Procedures Order that either (i) generated net proceeds of Prepetition UST Tranche B Collateral equal to at least 100% of the sum of the aggregate amount of the Prepetition UST Tranche B Obligations outstanding as of such date or (ii) is consummated through a credit bid of the outstanding Prepetition UST Tranche B Obligations | No later than ninety (90) calendar days after the Petition Date | No change. |

* * * * *

**Annex 5**

**Budget**

**Yellow Corp and Subsidiaries**
DIP Cash Flow Forecast
*For Weeks Ending 8/4/23 through 10/27/23*

($ 000s)

| | | Pre | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | Filing Status: | 8/4/2023 | 8/11/2023 | 8/18/2023 | 8/25/2023 | 9/1/2023 | 9/8/2023 | 9/15/2023 | 9/22/2023 | 9/29/2023 | 10/6/2023 | 10/13/2023 | 10/20/2023 | 10/27/2023 | | Weeks 1-13 |
| Week No. | | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | | |
| Act./Fct. | | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | | Fct. |
| **Total Receipts** | | $ 57,366 | $ 30,000 | $ 30,000 | $ 40,000 | $ 38,803 | $ 30,237 | $ 26,000 | $ 25,583 | $ 25,000 | $ 17,279 | $ 13,645 | $ 9,990 | $ 8,280 | | $ 352,184 |
| *Operating Disbursements* | | | | | | | | | | | | | | | | |
| Payroll & Related | | $ 10,553 | 3,129 | 1,449 | 7,600 | 12,492 | 4,731 | 4,394 | 5,361 | 6,128 | 7,452 | 1,034 | 1,135 | 1,063 | | 66,522 |
| Other Opex | | 34,884 | 7,615 | 1,422 | 1,401 | 6,158 | 1,047 | 5,171 | 1,051 | 6,438 | 632 | 3,443 | 538 | 639 | | 70,438 |
| **Total Operating Disbursements** | | $ 45,437 | 10,744 | 2,872 | 9,001 | 18,650 | 5,778 | 9,565 | 6,411 | 12,566 | 8,084 | 4,477 | 1,673 | 1,702 | | 136,960 |
| Severance | | - | - | - | - | 2,481 | - | - | - | - | 4,568 | - | - | - | | 7,049 |
| Professional Fees Reserve[1] | | 2,905 | - | - | 15,776 | 3,353 | 2,889 | 3,089 | 2,889 | 4,139 | 2,015 | 2,015 | 2,215 | 2,015 | | 43,301 |
| Accrued Pre-Petition Wages[2] | | - | 8,450 | 500 | - | - | - | - | - | - | - | - | - | - | | 8,950 |
| Adequate Assurance Utility Deposit | | - | - | - | 1,600 | - | - | - | - | - | - | - | - | - | | 1,600 |
| Prepetition Vendors & Taxes | | - | 500 | 750 | 6,368 | 4,273 | 2,600 | 2,601 | - | - | - | - | 1 | 136 | | 17,229 |
| **Total Restructuring** | | $ 2,905 | 8,950 | 1,250 | 23,744 | 10,106 | 5,489 | 5,690 | 2,889 | 4,139 | 6,584 | 2,015 | 2,216 | 2,151 | | 78,128 |
| *Interest and Adequate Protection* | | | | | | | | | | | | | | | | |
| ABL Interest | | - | - | - | - | 2,206 | - | - | - | 469 | - | - | - | - | | 2,674 |
| DIP TL New Money Interest (MFN) | | - | - | - | - | 51 | - | - | - | 412 | - | - | - | - | | 463 |
| DIP TL New Money Interest (Citadel) | | - | - | - | - | 150 | - | - | - | 1,150 | - | - | - | - | | 1,301 |
| DIP TL New Money Interest (MFN Junior) | | - | - | - | - | - | - | - | - | - | - | - | - | - | | - |
| TLB Interest | | - | - | - | 10,938 | 1,624 | - | - | - | 6,495 | - | - | - | - | | 19,057 |
| UST Interest | | - | - | - | 12,213 | - | - | 4,580 | - | - | - | 6,106 | - | - | | 22,899 |
| **Total Interest and Adequate Protection** | | $ - | $ - | $ - | $ 23,151 | $ 4,031 | $ - | $ 4,580 | $ - | $ 8,526 | $ - | $ 6,106 | $ - | $ - | | $ 46,394 |
| **Total Net Cash Flow** | | $ 9,024 | 10,306 | 25,878 | (15,896) | 6,016 | 18,970 | 6,165 | 16,282 | (231) | 2,611 | 1,047 | 6,100 | 4,428 | | 90,702 |
| (+/-) ABL Paydown (80% of receipts) | | - | (24,000) | (24,000) | (32,000) | (31,043) | (24,190) | (20,800) | (20,466) | (20,000) | (13,824) | (10,916) | (7,992) | (6,624) | | (235,854) |
| **Total Net Cash Flow Including ABL Paydown** | | $ 9,024 | (13,694) | 1,878 | (47,896) | (25,026) | (5,220) | (14,635) | (4,184) | (20,231) | (11,212) | (9,869) | (1,891) | (2,197) | | (145,152) |
| ***Unrestricted US and Canada Cash Rollforward[3]*** | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | | 42,780 | 38,855 | 8,661 | 10,539 | 22,643 | 35,117 | 29,897 | 60,262 | 56,078 | 35,847 | 24,635 | 14,766 | 12,875 | | 42,780 |
| (-) ABL Paydown (80% of receipts) | | - | (24,000) | (24,000) | (32,000) | (31,043) | (24,190) | (20,800) | (20,466) | (20,000) | (13,824) | (10,916) | (7,992) | (6,624) | | (235,854) |
| (-) ABL Paydown (One-Time) | | (12,949) | (16,500) | - | - | - | - | - | - | - | - | - | - | - | | (29,449) |
| (+/-) Net Cash Flow | | 9,024 | 10,306 | 25,878 | (15,896) | 6,016 | 18,970 | 6,165 | 16,282 | (231) | 2,611 | 1,047 | 6,100 | 4,428 | | 90,702 |
| (+) DIP TL Proceeds[4] | | - | - | - | 60,000 | 37,500 | - | 45,000 | - | - | - | - | - | - | | 142,500 |
| Ending Cash Balance | | $ 38,855 | 8,661 | 10,539 | 22,643 | 35,117 | 29,897 | 60,262 | 56,078 | 35,847 | 24,635 | 14,766 | 12,875 | 10,678 | | 10,678 |
| Net ABL Exposure[5] | | $ 275,883 | $ 234,775 | $ 207,361 | $ 175,361 | $ 144,318 | $ 120,128 | $ 99,328 | $ 78,862 | $ 58,762 | $ 44,938 | $ 34,022 | $ 26,031 | $ 19,406 | | |
| Restricted Cash | | 90,591 | 100,693 | - | - | 16,992 | 41,182 | 61,982 | 82,448 | 97,448 | 111,272 | 122,188 | 130,179 | 136,804 | | |

*Notes:*
*(1) Assumes all professional fees are funded into a reserve as incurred*
*(2) Pre-petition salaries for ongoing employees and other benefits are included in operating disbursements*
*(3) Includes approximately CAD $1.9 million (translated at $0.749) and USD $0.4 million held by the Canadian debtors*
*(4) Assumes DIP is approved the week-ending 8/18 but funds on Monday 8/21*
*(5) Net ABL Exposure equal to 102% of outstanding letters of credit net of restricted cash, plus outstanding ABL borrowings*

**Annex 6**

**THE ADMINISTRATIVE AGENT AND COLLATERAL AGENT/TAX PROVISIONS**

Any reference to (i) the "Administrative Agent" or "Collateral Agent" shall refer to the Junior DIP Agent or the B-2 Agent, as applicable, (ii) "Lender" shall refer to the Junior DIP Lender or the B-2 Lenders, as applicable, (iii) "Secured Parties" shall refer to the Junior DIP Secured Parties or the B-2 Secured Parties, as applicable and (iv) "Required Lenders" shall refer to Junior DIP Lender or the B-2 Lenders, as applicable. Capitalized terms used herein without definition shall have the meaning in the Debtor-in-Possession Credit Facility Term Sheet.

1. <u>Agency Provisions</u>

   a. Each Lender hereby irrevocably appoints the Administrative Agent and the Collateral Agent (for purposes of this <u>Section 1</u>, the Administrative Agent and the Collateral Agent are referred to collectively as the "<u>Agents</u>") its agent and authorizes the Agents to take such actions on its behalf and to exercise such powers as are delegated to such Agent by the terms of the DIP Loan Documents, together with such actions and powers as are reasonably incidental or related thereto. Without limiting the generality of the foregoing, the Agents are hereby expressly authorized to (i) execute any and all documents with respect to the Collateral and the rights of the Secured Parties with respect thereto, as contemplated by and in accordance with the provisions of the DIP Term Sheet and the other DIP Loan Documents and (ii) negotiate, enforce or settle any claim, action or proceeding affecting the Lenders in their capacity as such, at the direction of the Required Lenders, which negotiation, enforcement or settlement will be binding upon each Lender. The institution serving as the Administrative Agent and/or the Collateral Agent hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not an Agent, and such bank and its affiliates may accept deposits from, lend money to and generally engage in any kind of business with the Borrower or any Subsidiary or other affiliate thereof as if it were not an Agent hereunder. The Agents shall not, except as expressly set forth herein and in the other DIP Loan Documents, have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to the Borrower or any Loan Party that is communicated to or obtained by the person serving as Administrative Agent or Collateral Agent, as applicable, or any of their affiliates in any capacity.

   b. Neither Agent shall have any duties or obligations except those expressly set forth in the DIP Loan Documents. Without limiting the generality of the foregoing, (a) neither Agent shall be subject to any fiduciary or other implied duties, regardless of whether an Event of Default or default has occurred and is continuing, (b) neither Agent shall have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby that such Agent is instructed in writing to exercise by the Required Lenders (or such other number or percentage of the Lenders as shall be necessary under the circumstances), and (c) except as expressly set forth in the DIP Loan Documents, neither Agent shall have any duty to disclose, nor shall it be liable for the failure to disclose, any information relating to the Borrower or any of the Subsidiaries that is communicated to or obtained by the bank serving as Administrative Agent and/or Collateral Agent or any of its affiliates in any capacity. Neither Agent shall be liable for any action taken or not taken by it with the consent or at the request of the Required Lenders (or such other number or percentage of the Lenders as shall be necessary under the circumstances) or in the absence of its own gross negligence or willful

misconduct as determined by the final non-appealable judgment of a court of competent jurisdiction. Notwithstanding the foregoing, no action nor any omission to act, taken by either Agent at the direction of the Required Lenders (or such other number of percentage of Lenders as shall be expressly provided for herein or in the other DIP Loan Documents) shall constitute gross negligence or willful misconduct. Neither Agent shall be deemed to have knowledge of any Event of Default or default unless and until written notice thereof, conspicuously labeled as a "notice of default" and specifically describing such Event of Default or default, is given to such Agent by the Borrower or a Lender, and neither Agent shall be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with any DIP Loan Document, (ii) the contents of any certificate, report or other document delivered thereunder or in connection therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth in any DIP Loan Document, (iv) the validity, enforceability, effectiveness or genuineness of any DIP Loan Document or any other agreement, instrument or document, or (v) the satisfaction of any condition set forth in the DIP Term Sheet or elsewhere in any DIP Loan Document, other than to confirm receipt of items expressly required to be delivered to such Agent.

c.  Each Agent shall be entitled to rely upon, and shall not incur any liability for relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing believed by it in good faith to be genuine and to have been signed or sent by the proper person. Each Agent may also rely upon any statement made to it orally or by telephone and believed by it in good faith to have been made by the proper person, and shall not incur any liability for relying thereon. Each Agent may consult with legal counsel (who may be counsel for the Borrower), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts.

d.  Each Agent may perform any and all its duties and exercise its rights and powers by or through any one or more sub-agents appointed by it. Each Agent and any such sub-agent may perform any and all its duties and exercise its rights and powers by or through their respective Related Parties. The exculpatory provisions of the preceding paragraphs shall apply to any such sub-agent and to the Related Parties of each Agent and any such sub-agent, and shall apply to their respective activities in connection with the arrangement of the facilities as well as activities as Agent.

e.  Either Agent may resign at any time by notifying the Lenders and the Borrower in writing, and either Agent may be removed at any time with or without cause by an instrument or concurrent instruments in writing delivered to the Borrower and such Agent and signed by the Required Lenders. Upon any such resignation or removal, the Required Lenders shall have the right, without the consent of the Borrower, to appoint a successor. If no successor shall have been so appointed by the Required Lenders and shall have accepted such appointment within 30 days after (i) the retiring Agent gives notice of its resignation or (ii) the Required Lenders delivers removal instructions, then the retiring or removed Agent may, on behalf of the Lenders, appoint a successor Agent which shall be a bank with an office in New York, New York, or an affiliate of any such bank. If no successor Agent has been appointed pursuant to the immediately preceding, such Agent's resignation or removal shall become effective and the Required Lenders shall thereafter perform all the duties of such Agent hereunder and/or under any other DIP Loan Document until such time, if any, as the Required Lenders appoint a successor Administrative Agent and/or Collateral Agent, as the case may be. Upon the acceptance of its appointment as Agent

hereunder by a successor, such successor shall succeed to and become vested with all the rights, powers, privileges and duties of its predecessor Agent, and its predecessor Agent shall be discharged from its duties and obligations hereunder. The fees payable by the Borrower to a successor Agent shall be the same as those payable to its predecessor unless otherwise agreed between the Borrower and such successor. After an Agent's resignation hereunder, the provisions of this <u>Section 1</u> and the section entitled "<u>Indemnity; Expenses</u>" in the DIP Term Sheet shall continue in effect for the benefit of such retiring Agent, its sub-agents and their respective Related Parties in respect of any actions taken or omitted to be taken by any of them while acting as Agent.

f.   Each Lender acknowledges that it has, independently and without reliance upon the Agents or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this DIP Term Sheet and the other DIP Loan Documents. Each Lender also acknowledges that it will, independently and without reliance upon the Agents or any other Lender and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement or any other DIP Loan Document, any related agreement or any document furnished hereunder or thereunder.

g.   Each Lender acknowledges and agrees that Alter Domus Products Corp. or one or more of its affiliates may (but is not obligated to) act as collateral agent or representative for the Lenders and/or under the collateral agreements with respect thereto. Each Lender waives any conflict of interest, now contemplated or arising hereafter, in connection therewith and agrees not to assert against Alter Domus Products Corp. or any of its affiliates any claims, causes of action, damages or liabilities of whatever kind or nature relating thereto.

h.   In case of the pendency of any case or proceeding under any insolvency or other similar law or any other judicial proceeding relative to any Loan Party, the Administrative Agent (irrespective of whether the principal of any Loan shall then be due and payable as herein expressed or by declaration or otherwise and irrespective of whether the Administrative Agent shall have made any demand on the Borrower) shall be entitled and empowered (but not obligated) by intervention in such proceeding or otherwise: (a) to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of the DIP Loans and all other obligations under the Junior DIP Facility or the B-2 Facility, as applicable, that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of the Lenders and the Administrative Agent (including any claim for the reasonable compensation, expenses, disbursements and advances of the Lenders and the Administrative Agent and their respective agents and counsel and all other amounts due the Lenders, the Agents under <u>Section 1</u> and the section entitled "<u>Indemnity; Expenses</u>" in the DIP Term Sheet ) allowed in such judicial proceeding; and (b) to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same; and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Lender to make such payments to the Administrative Agent and, in the event that the Administrative Agent shall consent to the making of such payments directly to the Lenders, to pay to the Agents any amount due for the reasonable compensation, expenses, disbursements and advances of the Administrative Agent and its agents and counsel, and any other amounts due to the Agents under <u>Section 1</u> and the section entitled "<u>Indemnity; Expenses</u>" in the DIP Term Sheet. Nothing contained herein shall be deemed to authorize the Administrative Agent to authorize or

consent to or accept or adopt on behalf of any Lender any plan of reorganization, arrangement, adjustment or composition affecting the Junior DIP Facility or the B-2 Facility, as applicable, or the rights of any Lender or to authorize the Administrative Agent to vote in respect of the claim of any Lender in any such proceeding.

i.   To the extent the Administrative Agent, Collateral Agent and their Related Parties (the "Agent Indemnitees") are not reimbursed and indemnified by the Loan Parties, and without limiting the obligation of the Loan Parties to do so, the Lenders shall indemnify and hold harmless the Agent Indemnitees, based on and to the extent of such Lender's pro rata share (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought), from and against any and all losses, claims, damages, liabilities and related expenses (including out-of-pocket fees and disbursements of counsels) of any kind or nature whatsoever which may at any time be imposed on, incurred by or asserted against any Agent Indemnitee in any way relating to or arising out of or in connection with this DIP Term Sheet or any other DIP Loan Document or in the performance by the Agents in its duties under the DIP Loan Documents; provided that no Lender shall be liable for any portion of such losses, claims, damages, liabilities and related expenses resulting from any Agent Indemnitees gross negligence, bad faith or willful misconduct (as determined by a court of competent jurisdiction in a final and non-appealable decision). Without limiting the foregoing, to the extent not paid or reimbursed by the Loan Parties, each Lender shall pay or reimburse the Agent Indemnitees based on and to the extent of such Lender's pro rata share of all reasonable and documented out-of-pocket costs and expenses, incurred in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of any rights or remedies under this DIP Term Sheet or the other DIP Loan Documents (including all such out-of-pocket costs and expenses incurred during any legal proceeding, including any proceeding under any debtor relief law, and including out-of-pocket fees and disbursements of counsels). For purposes hereof, if the Loans have been paid in full and the Commitments have been terminated prior to such determination pursuant to the immediately preceding sentence, then each such Lender's "pro rata share" shall be determined as of the last date the Loans and the Commitments were in effect immediately prior to such payment in full.

j.   The provisions of this Section 1 shall survive the resignation or replacement of the Administrative Agent or Collateral Agent, the termination of the DIP Loan Documents, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any DIP Loan Document.

2.  Taxes

a.   Except as provided in this Section 2, any and all payments made by or on account of the Borrower or any Guarantor under any DIP Loan Document to any Lender or Agent shall be made free and clear of and without deduction for any and all present or future taxes, duties, levies, imposts, assessments, withholdings (including backup withholding), fees or similar charges imposed by any governmental authority including interest, penalties and additions to tax (collectively "Taxes"), excluding (i) Taxes imposed on or measured by net income, however denominated, and franchise (and similar) Taxes imposed on it in lieu of net income Taxes, (ii) Taxes attributable to the failure by the relevant Lender or Agent to deliver the documentation required to be delivered pursuant to clause (d) of this Section 2, (iii) Taxes imposed by a jurisdiction as a result of any connection between such Lender or Agent and such jurisdiction other than any connection arising from executing, delivering, being a party to, engaging in any transactions pursuant to, performing its obligations under,

or enforcing any DIP Loan Document, (iv) any branch profits Taxes imposed by the United States or any similar Tax imposed by any other jurisdiction in which the Borrower or any Guarantor (as appropriate) is located, (v) any U.S. federal withholding tax imposed on amounts payable hereunder pursuant to a law in effect at such time the Lender or Agent becomes a party to this DIP Term Sheet and the other DIP Loan Documents, or designates a new lending office, except in each case to the extent such Lender (or its assignor, if any) was entitled at the time of designation of a new lending office (or assignment) to receive additional amounts with respect to such withholding tax pursuant to this <u>Section 2(a)</u> and (vi) any withholding Tax imposed under Sections 1471 through 1474 of the Internal Revenue Code of 1986 (as amended from time to time) (the "<u>Code</u>"), as in effect on the date hereof (or any amended or successor version that is substantively comparable and not materially more onerous to comply with), any current or future regulations or official interpretations thereof, any agreements entered into pursuant to Section 1471(b)(1) of the Code and any fiscal or regulatory legislation, rules or practices adopted pursuant to any intergovernmental agreement, treaty or convention among governmental authorities entered into in connection with the implementation of the foregoing (the "<u>FATCA</u>") (all such non-excluded Taxes imposed on such payments, being hereinafter referred to as "<u>Indemnified Taxes</u>").  If the Borrower, any Guarantor or other applicable withholding agent shall be required by any laws to deduct or withhold any Indemnified Taxes or Other Taxes (as defined below) from or in respect of any sum payable under any DIP Loan Document to any Agent or any Lender, (i) the sum payable by the Borrower or Guarantor shall be increased as necessary so that after making all required deductions or withholding, such Agent or Lender (as the case may be) receives an amount equal to the sum it would have received had no such deductions or withholdings been made, (ii) the applicable withholding agent shall make such deductions or withholdings, (iii) the applicable withholding agent shall pay the full amount deducted or withheld to the relevant governmental authority in accordance with applicable laws, and (iv) within thirty (30) days after the date of such payment (or, if receipts or evidence are not available within thirty (30) days, as soon as possible thereafter), if the Borrower or any Guarantor is the applicable withholding agent, the applicable withholding agent shall furnish to such Agent or Lender (as the case may be) the original or a copy of a receipt evidencing payment thereof or other evidence acceptable to such Agent or Lender.

b.  In addition, the Borrower agrees to pay any and all present or future stamp, court or documentary taxes and any other intangible or mortgage recording taxes, or charges or levies of the same character, imposed by any governmental authority, which arise from any payment made under any DIP Loan Document or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, any DIP Loan Document (including additions to tax, penalties and interest related thereto) [excluding, in each case, such amounts that result from an Agent or Lender's Assignment and Acceptance, grant of a Participation, transfer or assignment to or designation of a new applicable lending office or other office for receiving payments under any DIP Loan Document (collectively, "<u>Assignment Taxes</u>") except for Assignment Taxes resulting from assignment or participation that is requested or required in writing by the Borrower (all such non-excluded taxes described in this <u>Section 2(b)</u> being hereinafter referred to as "Other Taxes")].

c.  Without duplication of <u>Section 2(a)</u> or <u>(b)</u>, the Borrower and each Guarantor agree to indemnify each Agent and each Lender for (i) the full amount of Indemnified Taxes and Other Taxes paid by such Agent or Lender (including Indemnified Taxes and Other Taxes imposed or asserted on or attributable to amounts payable under this <u>Section 2(c)</u>) and (ii)

any reasonable expenses arising therefrom or with respect thereto, *provided* such Agent or Lender, as the case may be, provides Borrower or Guarantor with a written statement thereof setting forth in reasonable detail the basis and calculation of such amounts.

d. Each Lender and Agent shall, at such times as are reasonably requested by the Borrower or the Administrative Agent, provide the Borrower and the Administrative Agent with any documentation prescribed by law or reasonably requested by the Borrower or the Administrative Agent certifying as to any entitlement of such Lender or Agent to an exemption from, or reduction in, withholding tax with respect to any payments to be made to such Lender under the DIP Loan Documents. Each such Lender and Agent shall, whenever a lapse in time or change in circumstances renders such documentation obsolete or inaccurate in any material respect, deliver promptly to the Borrower and the Administrative Agent updated or other appropriate documentation (including any new documentation reasonably requested by the applicable withholding agent) or promptly notify the Borrower and the Administrative Agent of its inability to do so. Unless the applicable withholding agent has received forms or other documents satisfactory to it indicating that payments under any DIP Loan Document to or for a Lender are not subject to withholding tax or are subject to such Tax at a rate reduced by an applicable tax treaty, the Borrower, the Administrative Agent or other applicable withholding agent shall withhold amounts required to be withheld by applicable law from such payments at the applicable statutory rate. Notwithstanding the foregoing, a Lender shall not be required to deliver any form pursuant to this clause (d) (other than such documentation set forth in Sections 2(d)(i), 3(d)(ii) and 3(g)) that such Lender is not legally able to deliver. In addition, each Lender and Agent shall deliver to the Borrower and the Administrative Agent such other tax forms or other documents as shall be prescribed by applicable law or reasonably requested by the Borrower or the Administrative Agent as will enable the Borrower or the Administrative Agent to determine whether or not such Lender or Agent is subject to backup withholding or information reporting requirements. Without limiting the foregoing:

   i. Each Lender and Agent that is a United States person (as defined in Section 7701(a)(30) of the Code) shall deliver to the Borrower and the Administrative Agent on or before the date on which it becomes a party to this DIP Term Sheet and the other DIP Loan Documents (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent) two properly completed and duly signed executed copies of Internal Revenue Service Form W-9 certifying that such Lender or Agent (as the case may be) is exempt from federal backup withholding.

   ii. Each Lender and Agent that is not a United States person (as defined in Section 7701(a)(30) of the Code) shall deliver to the Borrower and the Administrative Agent on or before the date on which it becomes a party to this DIP Term Sheet and the other DIP Loan Documents (and from time to time thereafter upon the reasonable request of the Borrower or the Administrative Agent) whichever of the following is applicable:

      1. two properly completed and duly signed executed copies of Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E (or any successor forms) claiming eligibility for the benefits of an income tax treaty to which the United States is a party, and such other documentation as required under the Code,

2. two properly completed and duly signed executed copies of Internal Revenue Service Form W-8ECI (or any successor forms) and, in the case of an Agent, a withholding certificate that satisfies the requirements of Treasury Regulation Sections 1.1441-1(b)(2)(iv) and 1.1441-1(e)(3)(v) as applicable to a U.S. branch that has agreed to be treated as a U.S. person for withholding tax purposes,

3. in the case of a Lender claiming the benefits of the exemption for portfolio interest under Section 881(c) of the Code, (A) a certificate substantially in the form of <u>Exhibit G-1</u>, <u>G-2</u>, <u>G-3</u> or <u>G-4</u>, as applicable (any such certificate a "<u>United States Tax Compliance Certificate</u>") and (B) two properly completed and duly signed executed copies of Internal Revenue Service Form W-8BEN or Internal Revenue Service Form W-8BEN-E, or

4. to the extent a Lender is not the beneficial owner (for example, where the Lender is a partnership, or is a participant holding a participation granted by a participating Lender), Internal Revenue Service Form W-8IMY (or any successor forms) of the Lender, accompanied by a Form W-8ECI, W-8BEN, W-8BEN-E, United States Tax Compliance Certificate, Form W-9, Form W-8IMY or any other required information from each beneficial owner, as applicable (*provided* that, if one or more beneficial owners are claiming the portfolio interest exemption, the United States Tax Compliance Certificate may be provided by such Lender on behalf of such beneficial owner). Each Lender and Agent shall deliver to the Borrower and the Administrative Agent two further executed copies of any previously delivered form or certification (or any applicable successor form) on or before the date that any such form or certification expires or becomes obsolete or inaccurate and promptly after the occurrence of any event requiring a change in the most recent form previously delivered by it to the Borrower or the Administrative Agent, or promptly notify the Borrower and the Administrative Agent that it is unable to do so. Each Lender and Agent shall promptly notify the Administrative Agent at any time it determines that it is no longer in a position to provide any previously delivered form or certification to the Borrower or the Administrative Agent.

5. Any Lender or Agent claiming any additional amounts payable pursuant to this <u>Section 2</u> shall use its reasonable efforts to change the jurisdiction of its lending office (or take any other measures reasonably requested by the Borrower) if such a change or other measures would reduce any such additional amounts (or any similar amount that may thereafter accrue) and would not, in the reasonable, good faith determination of such Lender, result in any unreimbursed cost or expense or be otherwise materially disadvantageous to such Lender.

e.  If any Lender or Agent determines, in its reasonable, good faith discretion, that it has received a refund in respect of any Taxes as to which indemnification or additional amounts have been paid to it by the Borrower pursuant to this <u>Section 2</u> (including by payment of additional amounts pursuant to this <u>Section 2</u>) it shall promptly remit such refund to the Borrower or Guarantor, net of all out-of-pocket expenses of the Lender or Agent, as the

case may be and without interest (other than any interest paid by the relevant governmental authority with respect to such refund net of any Taxes payable by any Agent or Lender on such interest); *provided* that the Borrower and Guarantors, upon the request of the Lender or Agent, as the case may be, agree promptly to return such refund (plus any penalties, interest or other charges imposed by the relevant governmental authority) to such party in the event such party is required to repay such refund to the relevant governmental authority. This section shall not be construed to require the Administrative Agent or any Lender to make available its tax returns (or any other information relating to Taxes that it deems confidential) to the Borrower or any other person.

f.   If a payment made to a Lender or Agent under any DIP Loan Document would be subject to withholding Tax imposed by FATCA if such Lender or Agent were to fail to comply with the applicable reporting requirements of FATCA (including those contained in Section 1471(b) or 1472(b) of the Code, as applicable), such Lender or Agent shall deliver to the Borrower and the Administrative Agent at the time or times prescribed by law and at such time or times reasonably requested by the Borrower or the Administrative Agent such documentation prescribed by applicable law (including as prescribed by Section 1471(b)(3)(C)(i) of the Code) and such additional documentation reasonably requested by the Borrower or the Administrative Agent as may be necessary for the Borrower and the Administrative Agent to comply with their obligations under FATCA and to determine that such Lender or Agent has complied with such Lender's or Agent's obligations under FATCA or to determine the amount, if any, to deduct and withhold from such payment. Solely for purposes of this Section 2), "FATCA" shall include any amendments made to FATCA after the date of this DIP Term Sheet and the other DIP Loan Documents.

g.   Each party's obligations under this Section 2 shall survive the resignation or replacement of the Administrative Agent or Collateral Agent, the termination of the DIP Loan Documents, the termination of the Commitments and the repayment, satisfaction or discharge of all obligations under any DIP Loan Document.

h.   Each Lender shall indemnify each Agent, within 10 days following written demand therefor, for (i) the full amount of any Indemnified Taxes and Other Taxes attributable to such Lender (but only to the extent that such Agent has not already been indemnified by the Borrower and each Guarantor for such Indemnified Taxes and Other Taxes and without limiting the obligation of the Borrower and each Guarantor to do so), [and (ii) any Taxes attributable to such Lender's failure to comply with the provision of Section [____] relating to the maintenance of a Participant Register], in each case, that are payable or paid by such Agent in connection with any DIP Loan Documents, and any expenses arising therefrom or with respect thereto; *provided* that such Agent provides such lender with a written statement thereof setting forth in reasonable detail the basis and calculation of such amounts.

Exhibit D
to
Amended and Restated Credit Agreement

Amendment No. 4

**<u>Exhibit H to Amended and Restated Credit Agreement</u>**

[Attached]

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## INTERIM UST CASH COLLATERAL AND ADEQUATE PROTECTION ORDER (I) AUTHORIZING THE DEBTORS TO (A) USE UST CASH COLLATERAL AND ALL OTHER PREPETITION UST COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Yellow Corporation ("Yellow Corp") and each of its above-captioned affiliates (collectively, the "Debtors"), pursuant to sections 105, 361, 362, 363, 506 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), seeking, among other things, entry of this interim UST cash collateral and adequate protection order (this "Interim UST Cash Collateral Order")[3]

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed contemporaneously herewith, as revised from the previously filed version at Docket No. 34 [Ex. A] (the "Interim DIP Order").

[3] The Debtors filed a prior version of this Interim UST Cash Collateral Order at Docket No. 34 [Ex. B].

and the Final UST Cash Collateral Order (as defined below and, together with this Interim UST

Cash Collateral Order, the "UST Cash Collateral Orders") among other things:

- authorizing the Debtors, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, to use the UST Cash Collateral (as defined below) and all other Prepetition UST Collateral (as defined below), in accordance with the terms of this Interim UST Cash Collateral Order, the Interim DIP Order and the Approved Budget (as defined below);

- subject and subordinate to the Carve-Out and Canadian Priority Charges (as defined in the DIP Term Sheet) and, as and to the extent applicable, the liens and claims securing the DIP Facility, to provide for the UST Adequate Protection (as defined below) of the liens and security interests of the Prepetition UST Secured Parties (as defined below), as set forth herein;

- subject and subordinate to the Carve-Out and Canadian Priority Charges, as and to the extent applicable, the liens and claims securing the DIP Facility, granting to the Prepetition UST Agent (as defined below), for the benefit of the Prepetition UST Secured Parties (as defined below), the UST Adequate Protection Liens (as defined below) and allowed superpriority administrative expense claims pursuant to sections 503(b) and 507(b) of the Bankruptcy Code;

- authorizing the Prepetition UST Secured Parties to take all commercially reasonable actions to implement the terms of this Interim UST Cash Collateral Order;

- upon entry of a final order providing such relief, waiving (a) the Debtors' right to surcharge the Prepetition UST Collateral pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

- upon entry of a final order providing such relief, waiving the equitable doctrine of "marshaling" and other similar doctrines for the benefit of the Prepetition UST Secured Parties with respect to the Prepetition UST Collateral (including the UST Cash Collateral) and the Prepetition UST Secured Obligations (each as defined below), as applicable, in each case subject to the Carve-Out and Canadian Priority Charges;

- authorizing the Debtors to use the UST Cash Collateral solely in accordance with the UST Cash Collateral Orders, the DIP Orders (as defined in the Interim DIP Order) and the Approved Budget (as defined below), subject to Permitted Variances (as defined in the DIP Term Sheet);

- subject to the restrictions set forth in the UST Cash Collateral Orders, the DIP Orders and the Approved Budget, authorizing the Debtors to use Prepetition UST Collateral and provide UST Adequate Protection (as defined below) to the Prepetition UST Secured Parties for any diminution in value of their respective interests in the applicable

Prepetition UST Collateral (including UST Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "Diminution in Value");

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors and the Prepetition UST Secured Parties to implement and effectuate the terms and provisions of this Interim UST Cash Collateral Order;

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim UST Cash Collateral Order and, upon entry, the Final UST Cash Collateral Order; and

- scheduling a final hearing (the "Final Hearing") to consider final approval of the use of Prepetition UST Collateral and UST Cash Collateral on the terms of a proposed order (the "Final UST Cash Collateral Order") to be posted to the docket prior to the Final Hearing.

The Court having considered the interim relief requested in the Motion [Docket No. 16], the exhibits attached thereto, the *Declaration of Cody Leung Kaldenberg, Partner of Ducera Partners In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 18] (the "Kaldenberg Declaration"), the *Declaration of Brian Whittman, Managing Director of Alvarez & Marsal North America, LLC, In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 17] (the "Whittman Declaration")*, and the Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), that certain Debtor-In-Possession Credit Facility Term Sheet between the applicable Debtors and MFN Partners, L.P. (the "Junior DIP Lenders") and Citadel

Credit Master Fund LLC (together with any permitted assignee thereof, the <u>Postpetition B-2</u> <u>Lenders</u>") and certain of their affiliates (collectively the "<u>DIP Lenders</u>," and such term sheet, the "<u>DIP Term Sheet</u>"), and the evidence submitted and arguments made at the interim hearing to consider approval of this Interim UST Cash Collateral Order held on August 9, 2023 (the "<u>Interim</u> <u>Hearing</u>"); and due and sufficient notice of the Interim Hearing, all continuations thereof, and all subsequent status conferences having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A.       *Petition Date*.  On August 6, 2023 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

---

[4]       The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C. *Jurisdiction and Venue*.  This Court has core jurisdiction over these cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order approving the relief sought in the Motion consistent with Article III of the United States Constitution.  Venue for these cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Bankruptcy Local Rules 2002-1, 4001-2, and 9013-1.

D. *Committee Formation*.  On August 16, 2023 the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in these cases at Docket No. 269 (the "Creditors' Committee").

E. *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and Bankruptcy Local Rules, and no other or further notice was or shall be required under the circumstances.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

F.     *UST Cash Collateral*.  As used herein, the term "UST Cash Collateral" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, (a) that constitutes or will constitute "cash collateral" of any of the Prepetition UST Secured Parties within the meaning of section 363(a) of the Bankruptcy Code and (b) over which the Prepetition UST Secured Parties have liens, subject to the relative priorities of the Prepetition Secured Parties (as defined in the Interim DIP Order) and the Prepetition UST Secured Parties as set forth in the Prepetition Intercreditor Agreement (as defined below) and the Interim DIP Order.

G.     *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest and subject to the provisions and limitations contained in this Interim UST Cash Collateral Order, and after consultation with their attorneys, the Debtors admit, stipulate and agree that:

(i)     *Prepetition UST Tranche A Term Loan*.  Pursuant to that certain UST Tranche A Term Loan Credit Agreement, dated as of July 7, 2020 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition UST Tranche A Credit Agreement" and, collectively with all other agreements (including the Prepetition UST Loan Documents (as defined below)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition UST Tranche A Loan Documents"), by and among (a) Yellow Corp, as borrower (in such capacity, the "Prepetition UST Tranche A Borrower"), (b) the guarantors party thereto (the "Prepetition UST Tranche A Guarantors" and, together with the Prepetition UST Tranche A Borrower, the "Prepetition UST Tranche A Loan Parties"), (c) The Bank of New York Mellon ("BNY"), as administrative agent and collateral agent (in such capacities, and BNY, in its

6

capacities as a party to all other agreements, documents, or instruments with any or all of the Prepetition UST Tranche A Loan Parties entered into in connection with the transactions relating to the entry of the Prepetition UST Tranche A Loan Documents and/or the incurrence of the Prepetition UST Tranche A Obligations (as defined below), including, without limitation, any banking arrangements in connection therewith with BNY and/or its affiliates, the "Prepetition UST Tranche A Agent"), and (d) the lenders party thereto from time to time (the "Prepetition UST Tranche A Lenders" and, together with the Prepetition UST Tranche A Agent, the "Prepetition UST Tranche A Secured Parties"), the Prepetition UST Tranche A Loan Parties incurred "Obligations" (as defined in the Prepetition UST Tranche A Credit Agreement, the "Prepetition UST Tranche A Obligations") to the Prepetition UST Tranche A Secured Parties on a joint and several basis;

(ii)     *Prepetition UST Tranche B Term Loan*.    Pursuant to that certain UST Tranche B Term Loan Credit Agreement, dated as of July 7, 2020 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition UST Tranche B Credit Agreement" and, collectively with all other agreements (including the Prepetition UST Loan Documents (as defined below)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition UST Tranche B Loan Documents," and together with the Prepetition UST Tranche A Loan Documents, the "Prepetition UST Loan Documents"), by and among (a) Yellow Corp, as borrower (in such capacity, the "Prepetition UST Tranche B Borrower"), (b) the guarantors party thereto (the "Prepetition UST Tranche B Guarantors" and, together with the

Prepetition UST Tranche B Borrower, the "Prepetition UST Tranche B Loan Parties," and together with the Prepetition UST Tranche A Loan Parties, the "Prepetition UST Loan Parties"), (c) BNY, as administrative agent and collateral agent (in such capacities, and BNY, in its capacities as a party to all other agreements, documents, or instruments with any or all of the Prepetition UST Tranche B Loan Parties entered into in connection with the transactions relating to the entry of the Prepetition UST Tranche B Loan Documents (as defined below) and/or the incurrence of the Prepetition UST Tranche B Obligations (as defined below), including, without limitation, any banking arrangements in connection therewith with BNY and/or its affiliates, the "Prepetition UST Tranche B Agent," and together with the Prepetition UST Tranche A Agent, the "Prepetition UST Agent"), and (d) the lenders party thereto from time to time (the "Prepetition UST Tranche B Lenders"[5] and, together with the Prepetition UST Tranche B Agent, the "Prepetition UST Tranche B Secured Parties," and together with the Prepetition UST Tranche A Secured Parties, the "Prepetition UST Secured Parties"), the Prepetition UST Tranche B Loan Parties incurred "Obligations" (as defined in the Prepetition UST Tranche B Credit Agreement, the "Prepetition UST Tranche B Obligations," and together with the UST Tranche A Obligations, the "Prepetition UST Secured Obligations") to the Prepetition UST Tranche B Secured Parties on a joint and several basis;

(iii)     *Prepetition Intercreditor Agreement.*  Pursuant to (and to the extent set forth in) that certain Amended and Restated Intercreditor Agreement, dated as of July 7, 2020 (as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Intercreditor Agreement") by and among the Prepetition ABL Agent, the

---

[5]     The Prepetition UST Tranche B Lenders and the Prepetition UST Tranche A Lenders shall be referred to in this Interim UST Cash Collateral Order, collectively, as the "Prepetition UST Lenders".

Prepetition B-2 Agent, the Prepetition UST Tranche A Agent and the Prepetition UST Tranche B Agent, which Prepetition Intercreditor Agreement, Prepetition UST Loan Documents, and Prepetition Loan Documents (as defined in the Interim DIP Order) are, in each case, binding and enforceable against the parties thereto, which agreed in the Prepetition Intercreditor Agreement, among other things, to the relative priority of such parties' respective security interests in the Prepetition Collateral (as defined below), which relative priorities are set forth in and governed by the Prepetition Intercreditor Agreement.

(iv)    *Prepetition UST Tranche A Obligations*.    As of the Petition Date, the Prepetition UST Tranche A Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition UST Tranche A Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition UST Tranche A Credit Agreement) in the aggregate principal amount of not less than $337,042,757.52 plus accrued and unpaid interest thereon and any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other Prepetition UST Tranche A Obligations incurred under, reimbursable pursuant to, or secured by the Prepetition UST Tranche A Loan Documents;

(v)    *Prepetition UST Tranche B Obligations*.    As of the Petition Date, the Prepetition UST Tranche B Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition UST Tranche B Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition UST Tranche B Credit Agreement) in the aggregate principal amount of not less than $399,999,769.91 plus accrued and unpaid interest thereon and any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges,

indemnities, and other Prepetition UST Tranche B Obligations incurred under, reimbursable pursuant to, or secured by the Prepetition UST Tranche B Loan Documents;

(vi)     *Validity of Prepetition UST Secured Obligations*.  The Prepetition UST Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition UST Loan Parties, as applicable, enforceable in accordance with the respective terms of the relevant documents, and no portion of the Prepetition UST Secured Obligations or any payment made to the Prepetition UST Secured Parties or applied to or paid on account of the Prepetition UST Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(vii)    *Validity, Perfection and Priority of Prepetition UST Tranche A Liens*.  As of the Petition Date, pursuant to the Prepetition UST Tranche A Loan Documents, the Prepetition UST Tranche A Loan Parties granted to the Prepetition UST Tranche A Agent, for the benefit of the Prepetition UST Tranche A Secured Parties, a security interest in and continuing lien on (the "Prepetition UST Tranche A Liens") substantially all of their respective assets and property (collectively, the "Prepetition UST Tranche A Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent, Prepetition ABL Agent, and Prepetition UST Tranche B Agent and any liens permitted by the Prepetition UST Tranche A Loan Documents to be senior to the Prepetition UST Tranche A Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable

10

on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition UST Tranche A Permitted Senior Liens") on the Prepetition UST Tranche B Priority Collateral; (ii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent, Prepetition ABL Agent, and Prepetition UST Tranche B Agent and the Prepetition UST Tranche A Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition B-2 Priority Collateral, subject only to the senior liens of the Prepetition B-2 Agent and Prepetition ABL Agent, the *pari passu* liens of Prepetition UST Tranche B Agent, and the Prepetition UST Tranche A Permitted Senior Liens on the Prepetition B-2 Priority Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject only to the senior liens of the Prepetition ABL Agent and Prepetition B-2 Agent, the *pari passu* liens of the Prepetition UST Tranche B Agent, and the Prepetition UST Tranche A Permitted Senior Liens on the Prepetition ABL Priority Collateral;

(viii)    *Validity, Perfection and Priority of Prepetition UST Tranche B Liens.*  As of the Petition Date, pursuant to the Prepetition UST Tranche B Loan Documents, the Prepetition UST Tranche B Loan Parties granted to the Prepetition UST Tranche B Agent, for the benefit of the Prepetition UST Tranche B Secured Parties, a security interest in and continuing lien on (the "Prepetition UST Tranche B Liens," together with the Prepetition UST Tranche A Liens, the "Prepetition UST Liens") substantially all of their respective assets and property (collectively, the "Prepetition UST Tranche B Collateral"), including: (i) a valid, binding, properly perfected,

11

enforceable, non-avoidable first priority security interest in and continuing lien on the UST Tranche B Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition UST Tranche B Priority Collateral" and together with the Prepetition UST Tranche A Collateral and the Prepetition UST Tranche B Collateral, the "Prepetition UST Collateral"), subject and subordinate only to any liens permitted by the Prepetition UST Tranche B Loan Documents to be senior to the Prepetition UST Tranche B Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition UST Tranche B Permitted Senior Liens"); (ii) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the *pari passu* liens of the Prepetition B-2 Agent and the Prepetition UST Tranche B Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition B-2 Priority Collateral, subject and subordinate only to the senior liens of the Prepetition B-2 Agent and Prepetition ABL Agent and *pari passu* liens of Prepetition UST Tranche A Agent and the Prepetition UST Tranche B Permitted Senior Liens on the Prepetition B-2 Priority Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject only to the senior liens of the Prepetition ABL Agent and Prepetition B-2 Agent and *pari passu* liens of the

Prepetition UST Tranche A Agent and the Prepetition UST Tranche B Permitted Senior Liens on the Prepetition ABL Priority Collateral;

(ix) *Waiver of Challenge*. None of the Prepetition UST Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(x) *No Control*. None of the Prepetition UST Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition UST Loan Documents;

(xi) *No Claims or Causes of Action*. No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition UST Secured Parties and each of their respective UST Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition UST Secured Party that is in existence as of the Petition Date; and

(xii) *Release*. Effective as of the date of entry of this Interim UST Cash Collateral Order and subject in all respects to paragraph 12 of this Interim UST Cash Collateral Order, each of the Debtors and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases, relinquishes, waives and forever discharges and acquits the Prepetition UST Secured Parties, and each of their respective UST

13

Representatives (as defined below) solely in their capacities as such (individually, a "UST Released Party," and collectively, the "Released Parties"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Prepetition UST Secured Parties' ownership of the Debtors' stock and the Prepetition UST Loan Documents, the negotiation thereof, and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the UST Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Interim UST Cash Collateral Order; *provided*, that, the release set forth in this section shall not release any claims against or liabilities of a UST Released Party that a court of competent jurisdiction determines has resulted from such UST Released Party's bad faith, fraud, gross negligence, or willful misconduct.

H.     *Findings Regarding Use of Cash Collateral.*

(i)     Good and sufficient cause has been shown for the entry of this Interim UST Cash Collateral Order and for authorization of the Debtors to use the Prepetition UST Collateral (including UST Cash Collateral).

(ii)     The Debtors have demonstrated an immediate and critical need to use the UST Cash Collateral in order to fund the Chapter 11 Cases and maximize the value of their estates through an orderly winddown process of their businesses and a comprehensive sale process for

their assets. Without the ability of the Debtors to obtain sufficient liquidity through the use of UST Cash Collateral, as set forth in this Interim UST Cash Collateral Order, the Debtors, their estates, and parties-in-interest would be immediately and irreparably harmed. Accordingly, the Debtors have an immediate need to use UST Cash Collateral as set forth in this Interim UST Cash Collateral Order to, among other things, maximize the value of the assets of the Debtors' estates to maximize the recovery to all creditors of the estates.

(iii)    Based on the Motion, the First Day Declaration, the Kaldenberg Declaration, the Whittman Declaration, and the record and argument presented to the Court at the Interim Hearing, the terms of the UST Adequate Protection (as defined below) granted to the Prepetition UST Secured Parties and the terms on which the Debtors may continue to use Prepetition UST Collateral (including UST Cash Collateral) pursuant to this Interim UST Cash Collateral Order are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

(iv)    This Interim UST Cash Collateral Order, the UST Adequate Protection (as defined below), and the use of the Prepetition UST Collateral (including UST Cash Collateral) have been negotiated in good faith and at arm's length among the Debtors, the Prepetition UST Secured Parties, the DIP Secured Parties, and the Prepetition Secured Parties (each of whom acted in good faith in negotiating the foregoing). The financial accommodations extended by the Prepetition UST Secured Parties to the Debtors under, in respect of, or in connection with, the Debtors' use of the Prepetition UST Collateral (including the UST Adequate Protection Liens (as defined below) and other UST Adequate Protection provided herein) shall be deemed to have been extended by the Prepetition UST Secured Parties in good faith, and such Prepetition UST Secured

Parties (and their respective successors and assigns) shall be entitled to the full protections of the Bankruptcy Code in the event that this Interim UST Cash Collateral Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(v)     The Prepetition UST Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of this Interim UST Cash Collateral Order, the Interim DIP Order, and the use of UST Cash Collateral, any challenges or objections to the use of UST Cash Collateral, and all other documents related to and all transactions contemplated by the foregoing. Accordingly, without limitation to any other right to indemnification, the Prepetition UST Secured Parties shall maintain their right to indemnification as provided in the Prepetition UST Loan Documents.

(vi)    The Prepetition UST Secured Parties are entitled to the UST Adequate Protection (as defined below) as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed UST Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Prepetition UST Collateral, including UST Cash Collateral.

(vii)   To the extent that their consent is required, the Prepetition UST Secured Parties have consented or are deemed to have consented to the Debtors' use of Prepetition UST Collateral, including UST Cash Collateral, on the terms set forth in this Interim UST Cash Collateral Order; *provided*, that, nothing in this Interim UST Cash Collateral Order, the Interim DIP Order, or the DIP Term Sheet or other DIP Documents shall (x) be construed as the affirmative

consent by the Prepetition UST Secured Parties for the use of Prepetition UST Collateral[6] and UST Cash Collateral other than on the terms set forth in this Interim UST Cash Collateral Order, (y) be construed as a consent by the Prepetition UST Secured Parties to the terms of any financing or lien encumbering Prepetition UST Collateral (whether senior or junior) other than as contemplated by this Interim UST Cash Collateral Order (or, as applicable, the Interim DIP Order), or (z) prejudice, limit, or otherwise impair the rights of the Prepetition UST Secured Parties to seek new, different, or additional adequate protection or to assert any other available right under law, and the rights of any other party in interest, including the Prepetition UST Secured Parties, are hereby preserved, subject to the terms and conditions of the Prepetition Intercreditor Agreement.

(viii)   Subject to review and approval from, among others, the Prepetition UST Secured Parties, the Debtors have prepared and delivered to the advisors to the Prepetition UST Secured Parties the Initial DIP Budget (as defined in the Interim DIP Order).  The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each calendar week covered thereby.  Subject to the review of, and approval from, among others, the Prepetition UST Secured Parties, the Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Term Sheet, the Interim DIP Order, and this Interim UST Cash Collateral Order.  Each subsequent budget, once approved in accordance with the DIP Term Sheet, the Interim DIP Order, and this Interim UST Cash Collateral Order, shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget (as approved in

---

[6]   For the avoidance of doubt, the term "Prepetition UST Collateral" as used herein refers to both prepetition and postpetition Collateral (as applicable) which secures the Prepetition UST Secured Parties' continuing Prepetition UST Tranche A Liens and continuing Prepetition UST Tranche B Liens (as applicable).

accordance with the DIP Term Sheet, the Interim DIP Order, and this Interim UST Cash Collateral Order, an "Approved Budget"). For the avoidance of doubt, the procedures by which each Approved Budget is reviewed and approved shall remain consistent with the terms of the review and approval process provided for in this Interim UST Cash Collateral and the Interim DIP Order even after such time as the DIP Obligations are paid and satisfied in full if the UST Adequate Protection Obligations have not been paid and satisfied in full, but the review and approval process will only require the approval of the Prepetition UST Secured Parties (with the approval rights of the Prepetition ABL Secured Parties as set forth in the Interim DIP Order remaining in effect to the extent the Prepetition ABL Obligations have not been paid and satisfied in full) if the DIP Obligations have been paid and satisfied in full.

(ix)    Upon entry of a final order providing for such relief, each of the Prepetition UST Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition UST Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition UST Collateral.

I.    *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim UST Cash Collateral Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Absent the ability of the Debtors to use UST Cash Collateral, the Debtors' estates will be immediately and irreparably harmed.  Continued use of Prepetition UST Collateral (including UST Cash Collateral), in accordance with this Interim UST Cash Collateral Order and the Approved Budget, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The Motion and this Interim UST Cash Collateral Order comply with the requirements of Bankruptcy Local Rule 4001-2.

J.     *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens.*  Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors or the Prepetition UST Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien.  For the avoidance of doubt, the right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Senior Lien, and such right is expressly subject to the Postpetition B-2 Liens, the Junior DIP Liens, and the Prepetition Liens, including the Prepetition UST Liens.  The Prepetition UST Liens are continuing liens and the Prepetition UST Collateral is and will continue to be encumbered by such liens.

K.     *Intercreditor Agreement.*  Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement shall (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties and the Prepetition UST Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims or amounts payable in respect thereof), and (iii) not be deemed to be amended, altered, or modified by the terms of this Interim UST Cash Collateral Order, the Interim DIP Order, or the DIP Documents (including the DIP Term Sheet), unless expressly set forth herein or therein, respectively.

L.     *Interim DIP Order.* Contemporaneous with the entry of this Interim UST Cash Collateral Order, the Court is entering the Interim DIP Order authorizing the Debtors to, among other things, incur postpetition debt, grant adequate protection liens and superpriority

administrative claims to the Prepetition Secured Parties in connection with the incurrence of such

debt, and access and utilize Available ABL Cash Collateral (as defined in the Interim DIP Order).

This Interim UST Cash Collateral Order has been entered separately, but contemporaneously, with

the Interim DIP Order, at the Prepetition UST Secured Parties' request to the Debtors for this

separate and standalone Interim UST Cash Collateral Order.  In the event of any inconsistency

between the UST Cash Collateral Orders and the DIP Orders, the DIP Orders shall control.

Based upon the Motion, the foregoing findings and conclusions, and the overall record

before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted*.   The Motion is granted on an interim basis on the terms and

conditions set forth in this Interim UST Cash Collateral Order.  All objections to the Interim UST

Cash Collateral Order to the extent not withdrawn, waived, settled, or resolved are hereby

overruled on the merits.

2.    *Protection of the DIP Lenders' and Prepetition UST Secured Parties' Rights.*[7]

(a)    Immediately upon delivery by the DIP Secured Parties to the Debtors of a

Termination Notice or Carve-Out Trigger Notice, the Prepetition UST Secured Parties' consent to

the Debtors' use of UST Cash Collateral shall be deemed automatically withdrawn and terminated.

(b)    Upon the occurrence and continuance of any of the below events (each, a

"UST Cash Collateral Termination Event," and any such event being deemed a "UST Event of

Default"), the Prepetition UST Agent (at the direction of the Prepetition UST Secured Parties), on

not less than five (5) calendar days' notice to the DIP Agent and the Remedies Notice Parties (as

---

[7]    The Prepetition UST Secured Parties' required approvals and consents set forth in this Interim UST Cash
Collateral Order shall be binding and applicable without regard to whether such approvals or consents are set
forth in the Interim DIP Order or in the DIP Term Sheet or other DIP Documents.

defined in the Interim DIP Order) (such five (5) calendar day period, the "<u>Prepetition UST Remedies Notice Period</u>"), and unless the Court orders otherwise (*provided*, that, during such period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court (and, *provided*, *further*, that, if a request for such hearing is made prior to the end of the Prepetition UST Remedies Notice Period, then the Prepetition UST Remedies Notice Period shall be continued until the Court hears and rules with respect thereto) may terminate and/or revoke its and the Prepetition UST Secured Parties' consent to the Debtors' use of UST Cash Collateral (subject to the Carve-Out and related provisions, including Canadian Priority Charges) by delivering a termination notice (the "<u>UST Cash Collateral Termination Notice</u>") to the DIP Agent and the Remedies Notice Parties (as defined in the Interim DIP Order): (i) the filing of any motion or pleading by the Debtors, or the entry of an order on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify the Interim UST Cash Collateral Order or Final UST Cash Collateral Order in a manner materially adverse to the Prepetition UST Secured Parties without the consent of the Prepetition UST Secured Parties; (ii) the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors; (iii) the Debtors shall attempt to invalidate, reduce or otherwise impair the Prepetition UST Secured Obligations; (iv) the dismissal of any of the Chapter 11 Cases; (v) the effective date of any plan of reorganization; (vi) the conversion of any of the Chapter 11 Cases to a case under chapter 7; (vii) the Debtors' failure to timely satisfy any of the Milestones (as defined below) (subject to extensions as provided herein) or otherwise materially comply with any of the terms of this Interim UST Cash Collateral Order; (viii) the Debtors' failure to materially comply with any of the terms of the Interim DIP Order in a manner that adversely affects the Prepetition UST Secured Parties; (ix) the Debtors' failure to maintain required insurance for the

Prepetition UST Collateral; (x) the Debtors' failure to pay timely the UST Adequate Protection Fees and Expenses and the UST Adequate Protection Payments under this Interim UST Cash Collateral Order; (xi) the DIP Secured Parties and the DIP Loan Parties amend or modify the DIP Term Sheet or the DIP Credit Agreement, or the DIP Secured Parties waive any rights held by such parties thereunder, in a manner that materially and adversely affects the Prepetition UST Secured Parties without having obtained the written consent of the Prepetition UST Secured Parties to do so; (xii) the Final UST Cash Collateral Order (in form and substance acceptable to the Prepetition UST Secured Parties) shall not have been entered by this Court within forty-five (45) days of the Petition Date; (xiii) an Approved Budget shall be updated, supplemented, replaced, or otherwise modified in a manner not reasonably acceptable to the Prepetition UST Secured Parties; (xiv) the Debtors make a payment or take an action that is not in material compliance with the Approved Budget that was approved and consented to by the Prepetition UST Secured Parties in accordance with this Interim UST Cash Collateral Order; or (xv) the DIP Loan Documents are not consistent with the DIP Term Sheet and the DIP Orders or are otherwise not reasonably acceptable to the Prepetition UST Secured Parties or are updated, supplemented, amended, replaced or otherwise modified in a manner that adversely affects the Prepetition UST Secured Parties without having obtained the written consent of the Prepetition UST Secured Parties to do so.

(c)    Subject to the terms of the Prepetition Intercreditor Agreement, the Interim DIP Order, the Carve-Out, and the Canadian Priority Charges, following delivery of a Termination Notice, delivery of a Carve-Out Trigger Notice, or the occurrence and continuance of a UST Event of Default and delivery of a UST Cash Collateral Termination Notice, but prior to exercising the remedies set forth in this sentence below or any other remedies (other than those set forth below in sub-paragraph (d)), the Prepetition UST Secured Parties shall be required to file a motion with

the Court seeking emergency relief (the "UST Stay Relief Motion") to be heard on not less than five (5) calendar days' notice to the Remedies Notice Parties (as defined in the Interim DIP Order) (which may run concurrently with the Prepetition UST Agent Remedies Notice Period) for a further order of the Court fashioning any appropriate remedy, including modifying the automatic stay in the Chapter 11 Cases to permit the Prepetition UST Secured Parties to, subject in all respects to the Prepetition Intercreditor Agreement, the DIP Orders, and the Carve-Out and related provisions (including the Canadian Priority Charges): (a) freeze monies or balances in the Debtors' accounts provided such monies constitute Prepetition UST Collateral; (b) immediately set-off any and all amounts in accounts maintained by the Debtors with the Prepetition UST Agent or the Prepetition UST Secured Parties against the UST Adequate Protection Obligations, (c) enforce any and all available rights against the Prepetition UST Collateral including, without limitation, foreclosing on all or any portion of such collateral, occupying the Debtors' premises, and selling or disposing of such collateral; and (d) take any other actions or exercise any other rights or remedies with respect to the Prepetition UST Collateral permitted under this Interim UST Cash Collateral Order, the Interim DIP Order, the DIP Documents, or applicable law; *provided*, that, for the avoidance of doubt, the Prepetition UST Secured Parties may not take any of the foregoing actions with respect to Prepetition B-2 Priority Collateral until all B-2 Obligations are paid in full in cash. If the Prepetition UST Secured Parties are permitted and authorized by the Court to take any enforcement action with respect to the Prepetition UST Collateral following the hearing on the UST Stay Relief Motion, the Debtors shall cooperate with the Prepetition UST Secured Parties in their efforts to enforce their security interest in the Prepetition UST Collateral, and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such Prepetition UST Secured Parties from enforcing their security interests in such collateral.

Until such time that the UST Stay Relief Motion has been adjudicated by the Court, the Debtors may use UST Cash Collateral to fund operations and other activities, actions, and payments, in each case in accordance with the Approved Budget, for the purpose of avoiding immediate and irreparable harm to the estates.

(d)     No rights, protections or remedies of the Prepetition UST Secured Parties granted by this Interim UST Cash Collateral Order shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use UST Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use UST Cash Collateral; (iii) the terms of any other order or stipulation related to the Debtors' continued use of UST Cash Collateral or the provision of adequate protection to any party; or (iv) the termination of the DIP Facility; *provided*, any inconsistency between this Interim UST Cash Collateral Order and the Interim DIP Order and/or the Prepetition Intercreditor Agreement shall be resolved by reference to the Interim DIP Order and/or the Prepetition Intercreditor Agreement, as applicable.

3.      *Limitation on Charging Expenses Against Collateral*.  Upon entry of a final order providing for such relief, except to the extent of the Carve-Out and Canadian Priority Charges, no costs or expenses of administration of these Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the Prepetition UST Collateral (including UST Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition UST Agent, and no consent shall be implied from any action, inaction or acquiescence by any of the Prepetition UST Secured Parties, and nothing contained in this Interim UST Cash Collateral Order shall be

deemed to be a consent by the Prepetition UST Secured Parties to any charge, lien, assessment or claims against the Prepetition UST Collateral under section 506(c) of the Bankruptcy Code or otherwise. Further, subject to and effective upon entry of a final order providing for such relief, in no event shall the "equities of the case" exception under section 552(b) of the Bankruptcy Code apply to the Prepetition UST Secured Parties.

4. *No Marshaling*. Effective upon entry of a final order providing for such relief, in no event shall the Prepetition UST Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition UST Collateral or the Prepetition UST Secured Obligations, as applicable.

5. *Payments Free and Clear*. Any and all payments or proceeds remitted to the Prepetition UST Secured Parties pursuant to the provisions of the DIP Documents or this Interim UST Cash Collateral Order or any subsequent order of the Court shall, subject to the reservation of rights set forth below in paragraph 11 of this Interim UST Cash Collateral Order with respect to the Prepetition UST Secured Parties, be irrevocable, received free and clear of any claim, charge, assessment or other liability.

6. *Use of UST Cash Collateral*. The Prepetition UST Secured Parties have consented to, and the Debtors are hereby authorized, solely on the terms and conditions of this Interim UST Cash Collateral Order, to use all Prepetition UST Collateral (including UST Cash Collateral) in accordance with the Approved Budget, subject to Permitted Variances (as defined in the DIP Term Sheet).

7. *Adequate Protection of Prepetition UST Secured Parties*. Pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition UST Collateral (including UST Cash Collateral) for the aggregate Diminution

in Value and as an inducement to the Prepetition UST Secured Parties to consent to priming of the Prepetition UST Tranche A Liens and Prepetition UST Tranche B Liens, in each case solely in the Prepetition B-2 Priority Collateral, and the use of their UST Cash Collateral, the Prepetition UST Secured Parties are granted the following adequate protection (collectively, the "UST Adequate Protection"):

(a)     *Milestone Adequate Protection of the Prepetition UST Secured Parties.* As adequate protection for the Debtors' use of UST Cash Collateral, the Debtors shall meet timely the following milestones (the "Milestones"):

(i)     No later than twelve (12) calendar days after the Petition Date, the Court shall have entered the Interim DIP Order and the Interim UST Cash Collateral Order, each in form and substance satisfactory to the Prepetition UST Secured Parties;

(ii)     No later than thirty (30) calendar days after the Petition Date, the Court shall have entered the Bidding Procedures Order, in form and substance reasonably satisfactory to the Prepetition UST Secured Parties;

(iii)     No later than fifteen (15) calendar days after the granting of the Interim DIP Order and the Interim UST Cash Collateral Order by the Court, the Canadian Court shall have issued the Canadian Initial Recognition Order, the Canadian Supplemental Order, and the Canadian Interim DIP Recognition Order, each in form and substance reasonably satisfactory to the Prepetition UST Secured Parties.[8]

---

[8]     Capitalized terms used but not otherwise defined in this sub-paragraph (iii) shall have the meanings given to those terms in the DIP Term Sheet or other DIP Loan Documents.

(iv)     No later than forty-five (45) calendar days after the Petition Date, the Court shall have entered the Final DIP Order and the Final UST Cash Collateral Order, each in form and substance satisfactory to the Prepetition UST Secured Parties;

(v)     No later than fifteen (15) calendar days after the Court's granting of the Final DIP Order, the Borrower, in its capacity as foreign representative on behalf of the Debtors, shall have filed a motion with the Canadian Court for the recognition of, and the Canadian Court shall have issued, the Canadian Final DIP Recognition Order (capitalized terms used but not otherwise defined in this sub-paragraph (v) shall have the meanings given to those terms in the DIP Term Sheet or other DIP Documents), each in form and substance reasonably satisfactory to the Prepetition UST Secured Parties;

(vi)     No later than ninety (90) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids for the Prepetition B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net proceeds at least equal to $250 million;

(vii)     No later than one-hundred (100) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids pursuant to the Bidding Procedures Order which are not subject to any financing contingencies (but, for the avoidance of doubt, may be subject to receipt of environmental reports and/or title contingencies reasonably acceptable to buyer(s)) for the Prepetition B-2 Priority Collateral) for Prepetition B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net proceeds at least equal to $450 million;

(viii)     No later than one-hundred-and-fifty (150) calendar days after the Petition Date (which may be extended to one-hundred-and-eighty (180) calendar days after the

Petition Date with the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the Prepetition UST Secured Parties (in each case not to be unreasonably withheld) and with the consent of the Junior DIP Lender in its sole discretion, the Debtors shall have consummated Dispositions in accordance with the Bidding Procedures Order that either (i) generated net proceeds of Prepetition B-2 Priority Collateral equal to at least 100% of the sum of the aggregate amount of DIP Obligations and Prepetition B-2 Obligations (each as defined in the Interim DIP Order) outstanding as of such date or (ii) is consummated through a credit bid of the outstanding DIP Obligations and Prepetition B-2 Obligations (and any other applicable obligations) in connection with sales of Prepetition B-2 Priority Collateral (capitalized terms used but not otherwise defined in this sub-paragraph (viii) shall have the meanings given to those terms in the DIP Term Sheet or other DIP Documents);

(ix)    No later than fifty-five (55) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids for the Prepetition UST Tranche B Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net cash proceeds at least equal to $200 million;

(x)    No later than seventy (70) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids pursuant to the Bidding Procedures Order which are not subject to any financing contingencies (but, for the avoidance of doubt, may be subject to receipt of environmental reports and/or title contingencies reasonably acceptable to buyer(s)) for the Prepetition UST Tranche B Collateral) for the Prepetition UST Tranche B Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net cash proceeds at least equal to $300 million;

(xi)     No later than ninety (90) calendar days after the Petition Date, the Debtors shall have consummated dispositions in accordance with the Bidding Procedures Order that either (i) generated net proceeds of Prepetition UST Tranche B Collateral equal to at least 100% of the sum of the aggregate amount of the Prepetition UST Tranche B Obligations outstanding as of such date or (ii) is consummated through a credit bid of the outstanding Prepetition UST Tranche B Obligations.

(b)     *Reporting to the Prepetition UST Secured Parties.*  The Debtors shall deliver to the Prepetition UST Secured Parties (substantially concurrent with delivery to the DIP Agent and the Prepetition ABL Agent as required by the DIP Documents) all financial statements, reports, certificates and related items that are required to be delivered to the DIP Agent or the Prepetition ABL Agent pursuant to the DIP Term Sheet and/or the Interim DIP Order (collectively, the "Reporting Requirements"); *provided*, that, to the extent it would violate applicable securities laws, the Prepetition UST Secured Parties shall refrain, and are prohibited, from trading in the Debtors' stock upon receipt of any information, materials, or reporting whatsoever constituting material non-public information provided to the Prepetition UST Secured Parties and their counsel and advisors pursuant to the Reporting Requirements and this paragraph.  Additionally, the Debtors shall make the members of their senior management and its professional advisors available for update calls at least one time per calendar week with the Prepetition UST Secured Parties and their respective professional advisors, at times reasonably acceptable to the Prepetition UST Secured Parties to discuss the cases, the then-current Approved Budget, the Budget Variance Reports, the Liquidity Reports (each as defined in the DIP Term Sheet), other reporting delivered pursuant to the DIP Term Sheet, the other DIP Documents, and/or the Interim DIP Order, union matters, the status of any monetization strategies being pursued by the Debtors, including pursuant

to the Bidding Procedures Order (as defined in the DIP Term Sheet), and any other matters (including business, operational and due diligence matters) reasonably requested by the Prepetition UST Secured Parties.

       (c)    *Adequate Protection of Prepetition UST Tranche B Secured Parties*.

       (i)    *UST Tranche B Adequate Protection Liens*.  The Prepetition UST Tranche B Agent is hereby granted, for the benefit of the Prepetition UST Tranche B Secured Parties, effective and perfected upon the date of this Interim UST Cash Collateral Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition UST Tranche B Secured Parties' Diminution in Value upon all of the DIP Collateral (the "UST Tranche B Adequate Protection Liens"): (i) in the case of the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, subject solely to the Carve-Out and the Canadian Priority Charges, and (in the case of the Prepetition Joint Collateral) *pari passu* with the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens; (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens with respect thereto, (D) the Junior DIP Liens with respect thereto, (E) the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, and *pari passu* with the UST Tranche A Adequate Protection Liens (as defined below); (iii) in the case of the Prepetition ABL Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, (D) the Prepetition Liens, Adequate Protection Liens,

and Postpetition B-2 Liens with respect thereto, and *pari passu* with the UST Tranche A Adequate

Protection Liens; and (iv) in the case of the Unencumbered Property (as defined in the Interim DIP

Order), subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian

Priority Charges, (C) the Junior DIP Liens, (D) the Postpetition B-2 Liens, (E) the Prepetition

Liens and Adequate Protection Liens of the Prepetition B-2 Secured Parties, (F) the Prepetition

Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, and (G) *pari passu*

with the Prepetition UST Tranche A Secured Parties.

(ii)    *UST Tranche B Section 507(b) Claims*.    The Prepetition UST

Tranche B Secured Parties are hereby granted allowed superpriority administrative expense claims

against the Debtors on a joint and several basis (without the need to file any proof of claim) on

account of the Prepetition UST Tranche B Secured Parties' Diminution in Value under section

507(b) of the Bankruptcy Code (the "UST Tranche B 507(b) Claims"), which UST Tranche B

507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds

thereof (excluding Avoidance Actions but including, without limitation, Avoidance Proceeds).

Except as and to the extent otherwise provided herein, the UST Tranche B 507(b) Claims shall

have priority over any and all administrative expenses and all other claims against the Debtors now

existing or hereafter arising, of any kind whatsoever, including, without limitation, all

administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy

Code, whether or not such claims may become secured by a judgment lien or other non-consensual

lien, levy or attachment; *provided*, *however*, that (i) the UST Tranche B 507(b) Claims shall be in

all cases junior to the Carve-Out and the Canadian Priority Charges; (ii) the UST Tranche B 507(b)

Claims shall be senior to the DIP Superpriority Claims other than as set forth herein or in the DIP

Documents; (iii) with respect to the Prepetition ABL Priority Collateral, the UST Tranche B 507(b)

Claims shall be *pari passu* with the UST Tranche A 507(b) claims, and junior to, in the following order, (A) the ABL 507(b) Claims and (B) the B-2 507(b) Claims; (iv) with respect to the Prepetition UST Tranche B Priority Collateral, the UST Tranche B 507(b) Claims shall be senior to, in the following order, (A) the B-2 507(b) Claims, (B) the ABL 507(b) Claims, (C) the UST Tranche A 507(b) Claims (as defined below), and (D) the DIP Superpriority Claims; (v) with respect to the UST Tranche B Joint Collateral, the UST Tranche B 507(b) Claims shall be *pari passu* with the B-2 507(B) Claims and senior to, in the following order, (A) the ABL 507(b) Claims, (B) the UST Tranche A 507(b) Claims, and (C) the DIP Superpriority Claims; and (vi) with respect to the Prepetition B-2 Priority Collateral, the UST Tranche B 507(b) Claims shall be *pari passu* with the UST Tranche A 507(b) claims and junior to, in the following order, (A) the B-2 507(b) Claims, (B) the DIP Superpriority Claims, and (C) the ABL 507(b) Claims.

(iii)    *Prepetition and Postpetition UST Tranche B Secured Parties' Fees and Expenses*.  As further adequate protection, subject to the Carve-Out and Canadian Priority Charges, the DIP Loan Parties shall currently pay monthly in cash, subject to the procedures set forth in paragraph 11 of this Interim UST Cash Collateral Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition UST Agent itself and the Prepetition UST Tranche B Secured Parties' legal and financial advisors, including, without limitation, those of Arnold & Porter Kaye Scholer LLP, Houlihan Lokey Capital, Inc., Hogan Lovells US LLP, and a local and a foreign counsel in each relevant jurisdiction retained by each of the Prepetition UST Tranche B Secured Parties (collectively, the "UST Tranche B Adequate Protection Fees and Expenses").

(iv)    *UST Tranche B Adequate Protection Payments.* As further adequate protection, the DIP Loan Parties shall pay monthly interest payments under the UST Tranche B

32

Credit Agreement on or before the tenth (10th) calendar day of each month, beginning August 2023 (promptly upon entry of the Interim DIP Order for any unpaid interest) and continuing thereafter (to the extent remaining payable) through the effective date of the Debtors' chapter 11 plan, payable to the Prepetition UST Secured Parties at the Default Rate (as defined in the Prepetition UST Tranche B Credit Agreement) in cash (the "UST Tranche B Adequate Protection Payment" and, together with the Debtors' obligations to meet the Milestones, the Reporting Requirements, UST Tranche B Adequate Protection Liens and UST Tranche B 507(b) Claims, and the UST Tranche B Adequate Protection Fees and Expenses, the "UST Tranche B Adequate Protection Obligations"); *provided*, that, in the event any portion of such payments are not allowed under section 506(b) of the Bankruptcy Code, the Debtors and all other parties in interest reserve all rights to seek to disgorge or recharacterize such non-allowable interest payments as the payment of principal.

(v)     Notwithstanding anything to the contrary contained herein, or in the Interim DIP Order or the DIP Documents to the contrary, the claims and liens in respect of the Additional Junior DIP Commitment shall not prime any claims or liens of the UST Secured Parties and shall be junior in all respects to the claims and liens of the UST Secured Parties, including in respect of any adequate protection claims and liens granted under this Interim Cash Collateral Order, including the UST Tranche B Adequate Protection Liens and the Tranche B Adequate Protection Obligations.

(d)     *Adequate Protection of Prepetition UST Tranche A Secured Parties*.

(i)     *UST Tranche A Adequate Protection Liens*.  The Prepetition UST Tranche A Agent is hereby granted, for the benefit of the Prepetition UST Tranche A Secured Parties, effective and perfected upon the date of this Interim UST Cash Collateral Order and

without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition UST Tranche A Secured Parties' Diminution in Value upon all of the DIP Collateral (the "UST Tranche A Adequate Protection Liens" and together with the UST Tranche B Adequate Protection Liens, the "UST Adequate Protection Liens"): (i) in the case of the Prepetition ABL Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, (D) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens with respect thereto, and *pari passu* with the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties with respect thereto; (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens with respect thereto, (D) the Junior DIP Liens with respect thereto, (E) the Prepetition and the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, and *pari passu* with the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties with respect thereto; (iii) in the case of the Prepetition UST Tranche B Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties with respect thereto, (D) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens with respect thereto, and (E) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto; (iv) in the case of the Prepetition Joint Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian

Priority Charges, (C) the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties and the Prepetition B-2 Secured Parties (including their Postpetition B-2 Liens) with respect thereto, and (D) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto; and (v) in the case of the Unencumbered Property, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Junior DIP Liens, (D) the Postpetition B-2 Liens, and (E) the Prepetition Liens and Adequate Protection Liens of the Prepetition B-2 Secured Parties, (F) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, and (G) *pari passu* with the Prepetition UST Tranche B Secured Parties.

(ii)  *UST Tranche A Section 507(b) Claims*. The Prepetition UST Tranche A Secured Parties are hereby granted allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition UST Tranche A Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "UST Tranche A 507(b) Claims," and together with the UST Tranche B 507(b) Claims, the "UST 507(b) Claims") which UST Tranche A 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but including, without limitation, Avoidance Proceeds). Except as otherwise provided herein, the UST Tranche A 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that (i) the UST Tranche A 507(b) Claims shall be in all cases junior to the Carve-Out

and the Canadian Priority Charges; (ii) the UST Tranche A 507(b) Claims shall be senior to the DIP Superpriority Claims except as set forth herein or in the DIP Documents; (iii) with respect to the Prepetition ABL Priority Collateral, the UST Tranche A 507(b) Claims shall be *pari passu* with the UST Tranche B 507(b) claims and junior to, in the following order, (A) the ABL 507(b) Claims and (B) the B-2 507(b) Claims; (iv) with respect to the Prepetition Joint Collateral, the UST Tranche A 507(b) Claims shall be junior to, in the following order, (A) the UST Tranche B 507(b) Claims and the B-2 507(b) Claims and (B) the ABL 507(b) Claims; (v) with respect to the Prepetition UST Tranche B Priority Collateral, the UST Tranche A 507(b) Claims shall be junior to, in the following order, (A) the UST Tranche B 507(b) Claims, (B) the B-2 507(b) Claims, and (C) the ABL 507(b) Claims; and (vi) with respect to the Prepetition B-2 Priority Collateral, the UST Tranche A 507(b) Claims shall be shall be *pari passu* with the UST Tranche B 507(b) claims and junior to, in the following order, (A) the B-2 507(b) Claims, (B) the DIP Superpriority Claims, and (C) the ABL 507(b) Claims.

> (iii)    *Prepetition and Postpetition UST Tranche A Secured Parties' Fees and Expenses*.  As further adequate protection, the DIP Loan Parties shall currently pay monthly in cash, subject to the review procedures set forth in paragraph 11 of this Interim UST Cash Collateral Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition UST Tranche A Agent itself and the Prepetition UST Tranche A Secured Parties' legal and financial advisors, including, without limitation, those of Arnold & Porter Kaye Scholer LLP, Houlihan Lokey Capital, Inc., Hogan Lovells US LLP, and a local and a foreign counsel in each relevant jurisdiction retained by each of the Prepetition UST Tranche A Secured Parties (collectively, the "UST Tranche A Adequate Protection Fees and Expenses," and

together with the UST Tranche B Adequate Protection Fees and Expenses, the "UST Adequate Protection Fees and Expenses").

(iv)    *UST Tranche A Adequate Protection Payments*. As further adequate protection, the DIP Loan Parties shall pay monthly interest payments under the Prepetition UST Tranche A Credit Agreement on or before the tenth (10th) calendar day of each month, beginning August 2023 (promptly upon entry of the Interim DIP Order) and continuing thereafter through the effective date of the Debtors' chapter 11 plan, payable to the Prepetition UST Secured Parties at the Default Rate (as defined in the Prepetition UST Tranche A Credit Agreement) in cash (the "UST Tranche A Adequate Protection Payment" and, together with the Debtors' obligations to meet the Milestones, the Reporting Requirements, UST Tranche A Adequate Protection Liens, UST Tranche A 507(b) Claims, the UST Tranche A Adequate Protection Fees and Expenses, the "UST Tranche A Adequate Protection Obligations" and together with the UST Tranche B Adequate Protection Obligations, the "UST Adequate Protection Obligations"); *provided*, that, in the event any portion of such payments are not allowed under section 506(b) of the Bankruptcy Code, the Debtors and all other parties in interest reserve all rights to seek to disgorge or recharacterize such non-allowable interest payments as the payment of principal.

(v)    Notwithstanding anything to the contrary contained herein, or in the Interim DIP Order or the DIP Documents to the contrary, the claims and liens in respect of the Additional Junior DIP Commitment shall not prime any claims or liens of the UST Secured Parties and shall be junior in all respects to the claims and liens of the UST Secured Parties, including in respect of any adequate protection claims and liens granted under this Interim Cash Collateral Order, including the UST Adequate Protection Liens and the UST Adequate Protection Obligations.

8.     *Maintenance of Collateral*.  The Prepetition UST Loan Parties shall continue to maintain and insure the Prepetition UST Collateral in amounts and for the risks, and by the entities, as required under the Prepetition UST Loan Documents.

9.     *Authorization to Record UST Adequate Protection Liens*.

(a)     Without in any way limiting the validity of the automatic perfection of the UST Adequate Protection Liens under the terms of this Interim UST Cash Collateral Order, the Prepetition UST Secured Parties are hereby authorized, but not required, to execute in the name of the Prepetition UST Loan Parties, as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction, or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests granted to them hereunder (the "UST Perfection Actions").  All such UST Perfection Actions shall be deemed to have been taken on the date of entry of this Interim UST Cash Collateral Order.  The automatic stay shall be modified to the extent necessary to permit the Prepetition UST Secured Parties to take any UST Perfection Action.  For the avoidance of doubt, the UST Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim UST Cash Collateral Order, whether or not the Prepetition UST Secured Parties take such UST Perfection Actions.

(b)     A certified copy of this Interim UST Cash Collateral Order may, in the discretion of the Prepetition UST Agent, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments,

and all filing and recording offices are hereby authorized to accept a certified copy of this Interim

UST Cash Collateral Order for filing and/or recording, as applicable.

10. *Preservation of Rights Granted Under this Interim UST Cash Collateral Order.*

(a) Other than the claims and liens expressly granted or permitted by this

Interim UST Cash Collateral Order and the Interim DIP Order, including the Carve-Out, no claim

or lien having a priority superior to or *pari passu* with those granted by this Interim UST Cash

Collateral Order shall be permitted while any of the UST Adequate Protection Obligations remain

outstanding, and, except as and to the extent otherwise expressly provided in or permitted under

this Interim UST Cash Collateral Order, including the provisions of paragraph 12, the UST

Adequate Protection Liens shall not be: (i) junior to any lien or security interest that is avoided and

preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii)

subordinated to or made *pari passu* with any other lien or security interest, whether under section

364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any

liens arising after the Petition Date including, without limitation, any liens or security interests

granted in favor of any federal, state, municipal or other domestic or foreign governmental unit

(including any regulatory body), commission, board or court for any liability of the Prepetition

UST Loan Parties; or (iv) junior to any intercompany liens or security interests of the Prepetition

UST Loan Parties.

(b) Notwithstanding any order that may be entered dismissing any of the

Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting the Chapter 11 Cases

to Successor Cases: (A) the UST Adequate Protection Liens, the UST 507(b) Claims, and the

Prepetition UST Liens shall continue in full force and effect, shall maintain their priorities as

provided in this Interim UST Cash Collateral Order and the Interim DIP Order (subject to the

Prepetition Intercreditor Agreement) and shall remain binding on all parties in interest until all UST Adequate Protection Obligations shall have been indefeasibly paid and satisfied in full (other than the Prepetition UST Liens, which shall continue in full force and effect until the indefeasible payment or satisfaction in full of the Prepetition UST Secured Obligations); (B) the other rights granted by this Interim UST Cash Collateral Order, including with respect to the Carve-Out and the Canadian Priority Charges, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim UST Cash Collateral Order.

(c)     If any or all of the provisions of this Interim UST Cash Collateral Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any UST Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition UST Agent, its counsel, and the Prepetition UST Secured Parties, and their counsel, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, and enforceability of the Prepetition UST Liens, the UST Adequate Protection Liens, the UST 507(b) Claims, the Carve-Out, and the Canadian Priority Charges. Notwithstanding any such reversal, modification, vacatur or stay, the UST Adequate Protection Obligations, UST Adequate Protection Liens, and UST 507(b) Claims incurred prior to the actual receipt of written notice by the Prepetition UST Agent of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim UST Cash Collateral Order, and the Prepetition UST Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under section 363(m) of the Bankruptcy Code.

(d)     Except as and to the extent expressly provided in this Interim UST Cash Collateral Order, the UST Adequate Protection Liens, the UST 507(b) Claims, and all other rights and remedies of the Prepetition UST Secured Parties granted by this Interim UST Cash Collateral Order, as well as the Carve-Out and the Canadian Priority Charges, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these Chapter 11 Cases, or terminating the joint administration of these Chapter 11 Cases; (ii) approving the sale of any DIP Collateral or Prepetition UST Collateral pursuant to section 363(b) of the Bankruptcy Code; or (iii) confirming a chapter 11 plan in any of the Chapter 11 Cases.  The terms and provisions of this Interim UST Cash Collateral Order shall continue in full force and effect in these Chapter 11 Cases and in any Successor Cases until all UST Adequate Protection Obligations are indefeasibly satisfied and paid in full in cash.  Any confirmation order entered in these Chapter 11 Cases shall not discharge or otherwise affect in any way the joint and several obligations of the Prepetition UST Loan Parties to the Prepetition UST Secured Parties, other than after (x) the satisfaction and payment in full and in cash of all UST Adequate Protection Obligations or (y) the occurrence of the effective date of such confirmed plan (solely in accordance with the terms of such plan).

11.     *Payment of Fees and Expenses*.

(a)     Subject to the review procedures set forth in this paragraph 11, payment of the UST Adequate Protection Fees and Expenses (which procedures shall apply solely with respect to such UST Adequate Protection Fees and Expenses that constitute professional fees and expenses) shall not be subject to allowance or review by the Court and the Prepetition UST Loan Parties are authorized and directed to pay monthly the UST Adequate Protection Fees and Expenses of the Prepetition UST Agent and the professionals and financial advisors retained by,

or on behalf of, any of the Prepetition UST Secured Parties (including, without limitation, those

of Arnold & Porter Kaye Scholer LLP, Houlihan Lokey Capital, Inc., Hogan Lovells US LLP, and

a local and a foreign counsel retained in each relevant jurisdiction by each Prepetition UST Secured

Party, without the need to file retention or fee applications; *provided*, that, the Houlihan

Restructuring Fee (as defined below) shall be subject to entry of the Final UST Cash Collateral

Order.

(b)     For the avoidance of doubt, and notwithstanding anything herein to the

contrary, (i) Houlihan Lokey Capital, Inc. is a party to that certain Financial Agency Agreement,

dated October 24, 2022 (the "Financial Agency Agreement"), and the UST Adequate Protection

Fees and Expenses shall include any fees and expenses that become earned, due, and payable to

Houlihan Lokey Capital, Inc. thereunder, including (subject to entry of the Final UST Cash

Collateral Order) the Restructuring Fee (as defined in the Financial Agency Agreement, the

"Houlihan Restructuring Fee")[9]; and (ii) in the event of a Cash Collateral Termination Event under

this Interim UST Cash Collateral Order or a Termination Event under the Interim DIP Order, the

UST Adequate Protection Fees and Expenses, including without limitation, the Houlihan

Restructuring Fee, shall remain due and payable (whether such amounts were incurred before or

after the Petition Date and whether such amounts were incurred or accrued before or after such

Cash Collateral Termination Event or Termination Event) pursuant to the terms of this Interim

UST Cash Collateral Order.

---

[9]     The Houlihan Restructuring Fee is set forth in the Financial Agency Agreement as follows: "If [Houlihan Lokey Capital, Inc.] receives written notice from Treasury to engage with an issuer on a financial restructuring of [the Debtors'] obligation to the Treasury, then upon the completion of the financial restructuring [Houlihan Lokey Capital, Inc.] will receive a fee equal to seventy-five basis points (0.75%) of the principal amount of the claim held by Treasury of the [Debtors] capped at $7,500,000."

(c)     The Prepetition UST Agent and the professionals for the Prepetition UST Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however, any time that such professionals seek payment of fees and out-of-pocket expenses from the Debtors prior to confirmation of a chapter 11 plan, each such professional shall provide summary copies of its invoices (including aggregate amounts of fees and expenses and total amount of time on a per-professional basis), which are not required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, to the Debtors and their counsel, the DIP Lenders, Prepetition UST Loan Parties and their counsel, counsel to any statutory committee (including the Creditors' Committee), and the U.S. Trustee (each, a "UST Review Party," and collectively, the "UST Review Parties"); *provided, however*, that (i) the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law; *provided*, *further*, that the UST Review Parties reserve the right to seek additional information regarding such invoices and time entries of any such professional and/or to challenge any assertion of privilege with respect to the same.  Any objections raised by any UST Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) calendar days after receipt (the "UST Review Period").  If no written objection is received by 11:59 p.m., prevailing Eastern Time, on the last date of the UST Review Period, the Debtors shall pay such invoices within five (5) business days.  If an objection to a professional's invoice is received within the UST Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether

the invoiced amount arose or was incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. The Prepetition UST Agent and attorneys and advisors to any Prepetition UST Secured Party shall not be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(d)     Notwithstanding the foregoing, the Debtors are authorized and directed to pay to the Prepetition UST Agent and the Prepetition UST Secured Parties' professionals and financial advisors (as provided herein), on or prior to the Closing Date (as defined in the DIP Term Sheet) any accrued and unpaid UST Adequate Protection Fees and Expenses (including reasonable and documented legal fees and expenses), invoices of which have been provided to lead counsel and financial advisor for the Debtors at least one (1) business day prior to the Closing Date, whether arising before or after the Petition Date, which costs, fees and expenses shall not be subject to the UST Review Period. The UST Prepetition Agent and attorneys and advisors to the Prepetition UST Secured Parties shall not be required to file an application seeking compensation for any services or reimbursement of expenses with the Court.

12.     *Effect of Stipulations on Third Parties*. The Debtors' stipulations, admissions, agreements, and releases contained in this Interim UST Cash Collateral Order shall be binding upon the Debtors in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements, and releases contained in this Interim UST Cash Collateral Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a)

such committee or other party in interest with requisite standing has timely filed an adversary proceeding or initiated a contested matter (subject to the limitations contained herein, a "UST Challenge Motion") (*provided*, that, no interested party shall be permitted to raise a defense to standing on the basis that the applicable Debtor is a Delaware limited liability company) by no later than (i) the earlier of (w) one business day before the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization, whichever occurs first, (x) as to the Creditors' Committee only, 75 calendar days after entry of this Interim UST Cash Collateral Order, (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the UST Challenge Period (as defined below), the UST Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) 75 calendar days from entry of this Interim UST Cash Collateral Order, or (B) the date that is 30 calendar days after their appointment, and (z) for all other parties in interest, 75 calendar days from entry of this Interim UST Cash Collateral Order; and (ii) any such later date as (x) has been agreed to in writing (which may be by email) by the Prepetition UST Secured Parties, or (y) has been ordered by the Court for cause upon a UST Challenge Motion filed and served within any applicable period or has been ordered by the Court after disposition or resolution of a UST Challenge Motion (the time period established by the foregoing clauses (i)-(ii), the "UST Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition UST Secured Obligations or the Prepetition UST Liens, or (B) asserting or prosecuting any UST Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "UST Challenges") against any Prepetition UST Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and

other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "UST Representatives") in connection with or related to the Prepetition UST Secured Parties' ownership of the Debtors' stock, the Prepetition UST Loan Documents, the Prepetition UST Secured Obligations, the Prepetition UST Liens, or the Prepetition UST Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such UST Challenge; *provided*, *however*, that any pleadings filed in connection with a UST Challenge shall comply with the Federal Rules of Bankruptcy Procedure and set forth with specificity the basis for such UST Challenge and any UST Challenges not so raised prior to the expiration of the UST Challenge Period shall be deemed forever waived, released and barred. If no UST Challenge is timely and properly filed during the UST Challenge Period or the Court does not rule in favor of the plaintiff in any such UST Challenge, then: (1) the Debtors' stipulations, admissions, agreements and releases contained in this Interim UST Cash Collateral Order shall be binding on all parties in interest; (2) the obligations of the Prepetition UST Loan Parties under the Prepetition UST Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except as and to the extent provided in the Prepetition Intercreditor Agreement), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these Chapter 11 Cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than as provided in the Prepetition Intercreditor Agreement), or otherwise), disallowance, impairment, counterclaim,

cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their UST Representatives shall be deemed forever waived, released and barred. If any UST Challenge is timely filed during the UST Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim UST Cash Collateral Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such UST Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim UST Cash Collateral Order vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any UST Challenges with respect to the Prepetition UST Loan Documents, Prepetition UST Secured Obligations or Prepetition UST Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of

reorganization in these cases.  For the avoidance of doubt, any chapter 7 or chapter 11 trustee shall, until the expiration of the UST Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by the chapter 7 or chapter 11 trustee or any other party in interest on behalf of the Debtors' estates), be deemed to be a party (other than the Debtors) in such adversary proceeding or contested matter and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, and stipulations made by the Debtors in this Interim UST Cash Collateral Order.

13.      *Limitation on Use of UST Cash Collateral*.   The limitation on the use of DIP Financing proceeds and collateral described in paragraph 20 of the Interim DIP Order shall apply to the Debtors' use of the Prepetition UST Collateral (including UST Cash Collateral), including after termination of the DIP Facility.

14.      *Binding Effect; Successors and Assigns*.   The provisions of this Interim UST Cash Collateral Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided*, that, the Prepetition UST Secured Parties shall have no obligation to permit the use of the Prepetition UST Collateral and UST Cash Collateral by, or

to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

15. *Limitation of Liability*.

(a) Nothing in this Interim UST Cash Collateral Order, the Interim DIP Order, the DIP Term Sheet or other DIP Documents, the Prepetition Loan Documents, the Prepetition UST Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any Prepetition UST Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. The Prepetition UST Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

(b) In determining to permit the use of the Prepetition UST Collateral (including UST Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim UST Cash Collateral Order or Prepetition UST Loan Documents, as applicable, none of the Prepetition UST Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the

United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code).  Furthermore, nothing in this Interim UST Cash Collateral Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition UST Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives (as defined in the Interim DIP Order).

16.    *Master Proofs of Claim.*  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or any Successor Cases, neither the Prepetition UST Agent, nor any other Prepetition UST Secured Parties shall be required to file proofs of claim in these Chapter 11 Cases or any Successor Cases in order to assert claims for payment of any of the Prepetition UST Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the Prepetition UST Loan Documents or this Interim UST Cash Collateral Order.  The Debtors' stipulations, admissions and acknowledgments of the claim and liens in respect of the Prepetition UST Secured Obligations set forth in this Interim UST Cash Collateral Order is deemed to constitute timely proofs of claim in respect of all indebtedness, secured status and claims arising under the Prepetition UST Credit Documents and this Interim UST Cash Collateral Order.  Nonetheless, in order to facilitate the processing of claims, the Prepetition UST Agent is authorized, but not directed or required, to file a master proof of claim in the Debtors' lead case *In re Yellow Corporation*, *et al.*, Case No. 23-11069 (CTG), on behalf of the applicable Prepetition UST Secured Parties (each, a "Master Proof of Claim"), which shall be deemed to have been filed against each Debtor.  The provisions of this paragraph and the filing of Master Proofs of Claim, if any, are intended solely for the purpose of administrative convenience and shall not affect the right

of each Prepetition UST Secured Party (or its successors in interest) to vote separately on any plan filed in these cases. Any Master Proof of Claim shall not be required to include any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition UST Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition UST Agent.

17. *Credit Bidding.* To the extent permitted by the Prepetition Intercreditor Agreement, the Prepetition UST Agent, or any assignee or designee of the Prepetition UST Agent, at the direction of the Prepetition UST Lenders pursuant to the Prepetition UST Credit Agreements and on behalf of the Prepetition UST Lenders, shall have the unqualified and unconditional right to credit bid up to the full amount of the Prepetition UST Secured Obligations (subject, for the avoidance of doubt, to section 363(k) of the Bankruptcy Code) in any sale of any of the Debtors' assets, including pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; *provided*, that, (i) no party shall be permitted to credit bid for Prepetition ABL Priority Collateral until such time that the Prepetition ABL Secured Parties have been paid in full or cash collateralized (as applicable) and (ii) no party shall be permitted to credit bid for Prepetition B-2 Priority Collateral until such time that the B-2 Obligations have been paid in full. The Prepetition UST Agent at the direction of the Prepetition UST Lenders pursuant to the Prepetition UST Credit Agreements and on behalf of the Prepetition UST Lenders, shall have the absolute right to assign, sell, or otherwise dispose of its right to credit bid in connection with any credit bid by or on behalf of the Prepetition UST Tranche Secured Parties to any acquisition entity or joint venture formed in connection with such bid.

18. *Effectiveness.*  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim UST Cash Collateral Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim UST Cash Collateral Order.

19. *Governing Order.*  Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to, in the case of the Debtors' usage of the UST Cash Collateral, this Interim UST Cash Collateral Order (including the Interim DIP Order in the event of any inconsistency therewith), including compliance with the Approved Budget (subject to Permitted Variances (as defined in the DIP Term Sheet)) and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of the Motion and this Interim UST Cash Collateral Order, regarding UST Cash Collateral, this Interim UST Cash Collateral Order shall control; *provided*, that the Interim DIP Order shall control any inconsistencies between the Interim DIP Order and this Interim UST Cash Collateral Order; *provided*, *further*, that, the Carve Out (as set forth in the Interim DIP Order) and any provision related to the Canadian Priority Charges are incorporated herein by reference and shall survive any expiration or termination of the DIP Term Sheet to the extent Prepetition UST Secured Obligations remain outstanding.  For the avoidance of doubt, upon entry of this Interim UST Cash Collateral Order, this Interim UST Cash Collateral Order shall supersede and replace (along with the Interim DIP Order) the Interim Cash Collateral Order entered at Docket No. 181 in all respects.

20.  *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this Interim UST Cash Collateral Order.

21.  *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

22.  *No Third Party Rights*.  Except as and to the extent explicitly provided for herein, this Interim UST Cash Collateral Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

23.  *Necessary Action*.  The Debtors and the Prepetition UST Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim UST Cash Collateral Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Interim UST Cash Collateral Order.

24.  *Retention of Jurisdiction*.  This Court shall retain jurisdiction to enforce the provisions of this Interim UST Cash Collateral Order.

25.  *Final Hearing*.  A final hearing to consider the relief requested in the Motion on a final basis shall be held on September 18, 2023 at 2:00 p.m. (Prevailing Eastern Time).

26.  *Objections*.  Any objections or responses to the Motion pertaining to the proposed relief contained herein shall be filed on or prior to September 11, 2023 at 4:00 p.m. (Prevailing Eastern Time).  Any party objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the Debtors, 10990 Roe Avenue, Overland Park, Kansas 66211, Attn: Matthew A. Doheny and Leah Dawson; (b) counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654,

Attn.: Patrick J. Nash, Jr., P.C. and Whitney C. Fogelberg; 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith and Aaron Metviner; (b) counsel to the Junior DIP Lender, Quinn Emmanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017, Attn: Eric Winston; 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirplani; Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606, Attn: Lucas S. Smith; 1211 Avenue of the Americas, New York, NY 10036, Attn: Natasha S. Hwangpo; (c) counsel to the B-2 Lenders, White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 Attn: Scott Greissman, Elizabeth Feld, and Andrew Zatz; (d) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane M. Leamy and Richard Schepacarter; (e) counsel to the Creditors' Committee; (f) the Prepetition ABL Agent, and counsel thereto, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Kevin Simard and Hampton Foushee; (g) the Prepetition B-2 Agent, and counsel thereto, Holland & Knight LLP, 150 N. Riverside Plaza, Suite 2700, Chicago IL 60606, Attn. Joshua M. Spencer and Phillip W. Nelson; (h) the Prepetition UST Tranche A Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (i) the Prepetition UST Tranche B Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (j) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602, Attn: Michael Messersmith, 250 West 55th Street, New York, New York 10019, Attn: Benjamin Mintz, and 601 Massachusetts Ave., N.W., Washington, DC 20001, Attn: Rosa Evergreen, and the U.S. Department of Justice, 1100 L St NW Rm 7102, Washington, DC 20005-4035, Attn: I-Heng.Hsu

and Crystal Geise; and (k) counsel to the proposed Stalking Horse Purchaser, BakerHostetler LLP, 200 S. Orange Avenue, Suite 2300, Orlando, Florida 32801, Attn: Elizabeth Green.

27.     The Debtors shall promptly serve copies of this Interim UST Cash Collateral Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing and to any party that has filed with this Court a request for notices in these cases.

**Dated: August 18th, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

## Schedule 1

**Approved Budget**

**Yellow Corp and Subsidiaries**
*DIP Cash Flow Forecast*
*For Weeks Ending 8/4/23 through 10/27/23*

($ 000s)

| Filing Status: | Pre | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 8/4/2023 | 8/11/2023 | 8/18/2023 | 8/25/2023 | 9/1/2023 | 9/8/2023 | 9/15/2023 | 9/22/2023 | 9/29/2023 | 10/6/2023 | 10/13/2023 | 10/20/2023 | 10/27/2023 | |
| Week No. | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | Weeks 1-13 |
| Act./Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. | Fct. |
| **Total Receipts** | $ 57,366 | $ 30,000 | $ 30,000 | $ 40,000 | $ 38,803 | $ 30,237 | $ 26,000 | $ 25,583 | $ 25,000 | $ 17,279 | $ 13,645 | $ 9,990 | $ 8,280 | $ 352,184 |
| *Operating Disbursements* | | | | | | | | | | | | | | |
| Payroll & Related | $ 10,553 | $ 3,129 | $ 1,449 | $ 7,600 | $ 12,492 | $ 4,731 | $ 4,394 | $ 5,361 | $ 6,128 | $ 7,452 | $ 1,034 | $ 1,135 | $ 1,063 | $ 66,522 |
| Other Opex | 34,884 | 7,615 | 1,422 | 1,401 | 6,158 | 1,047 | 5,171 | 1,051 | 6,438 | 632 | 3,443 | 538 | 639 | 70,438 |
| **Total Operating Disbursements** | $ 45,437 | $ 10,744 | $ 2,872 | $ 9,001 | $ 18,650 | $ 5,778 | $ 9,565 | $ 6,411 | $ 12,566 | $ 8,084 | $ 4,477 | $ 1,673 | $ 1,702 | $ 136,960 |
| Severance | - | - | - | - | 2,481 | - | - | - | - | 4,568 | - | - | - | 7,049 |
| Professional Fees Reserve[1] | 2,905 | - | - | 15,776 | 3,353 | 2,889 | 3,089 | 2,889 | 4,139 | 2,015 | 2,015 | 2,215 | 2,015 | 43,301 |
| Accrued Pre-Petition Wages[2] | - | 8,450 | 500 | - | - | - | - | - | - | - | - | - | - | 8,950 |
| Adequate Assurance Utility Deposit | - | - | - | 1,600 | - | - | - | - | - | - | - | - | - | 1,600 |
| Prepetition Vendors & Taxes | - | 500 | 750 | 6,368 | 4,273 | 2,600 | 2,601 | - | - | - | - | 1 | 136 | 17,229 |
| **Total Restructuring** | $ 2,905 | $ 8,950 | $ 1,250 | $ 23,744 | $ 10,106 | $ 5,489 | $ 5,690 | $ 2,889 | $ 4,139 | $ 6,584 | $ 2,015 | $ 2,216 | $ 2,151 | $ 78,128 |
| *Interest and Adequate Protection* | | | | | | | | | | | | | | |
| ABL Interest | - | - | - | - | 2,206 | - | - | - | 469 | - | - | - | - | 2,674 |
| DIP TL New Money Interest (MFN) | - | - | - | - | 51 | - | - | - | 412 | - | - | - | - | 463 |
| DIP TL New Money Interest (Citadel) | - | - | - | - | 150 | - | - | - | 1,150 | - | - | - | - | 1,301 |
| DIP TL New Money Interest (MFN Junior) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TLB Interest | - | - | - | 10,938 | 1,624 | - | - | - | 6,495 | - | - | - | - | 19,057 |
| UST Interest | - | - | - | 12,213 | - | - | 4,580 | - | - | - | 6,106 | - | - | 22,899 |
| **Total Interest and Adequate Protection** | $ - | $ - | $ - | $ 23,151 | $ 4,031 | $ - | $ 4,580 | $ - | $ 8,526 | $ - | $ 6,106 | $ - | $ - | $ 46,394 |
| **Total Disbursements** | $ 48,342 | $ 19,694 | $ 4,122 | $ 55,896 | $ 32,787 | $ 11,267 | $ 19,835 | $ 9,300 | $ 25,231 | $ 14,668 | $ 12,598 | $ 3,889 | $ 3,853 | $ 261,482 |
| **Total Net Flow** | $ 9,024 | $ 10,306 | $ 25,878 | $ (15,896) | $ 6,016 | $ 18,970 | $ 6,165 | $ 16,282 | $ (231) | $ 2,611 | $ 1,047 | $ 6,100 | $ 4,428 | $ 90,702 |
| (+/-) ABL Paydown (80% of receipts) | - | (24,000) | (24,000) | (32,000) | (31,043) | (24,190) | (20,800) | (20,466) | (20,000) | (13,824) | (10,916) | (7,992) | (6,624) | (235,854) |
| **Total Net Cash Flow Including ABL Paydown** | $ 9,024 | $ (13,694) | $ 1,878 | $ (47,896) | $ (25,026) | $ (5,220) | $ (14,635) | $ (4,184) | $ (20,231) | $ (11,212) | $ (9,869) | $ (1,891) | $ (2,197) | $ (145,152) |
| ***Unrestricted US and Canada Cash Rollforward[3]*** | | | | | | | | | | | | | | |
| Beginning Cash Balance | $ 42,780 | $ 38,855 | $ 8,661 | $ 10,539 | $ 22,643 | $ 35,117 | $ 29,897 | $ 60,262 | $ 56,078 | $ 35,847 | $ 24,635 | $ 14,766 | $ 12,875 | $ 42,780 |
| (-) ABL Paydown (80% of receipts) | - | (24,000) | (24,000) | (32,000) | (31,043) | (24,190) | (20,800) | (20,466) | (20,000) | (13,824) | (10,916) | (7,992) | (6,624) | (235,854) |
| (-) ABL Paydown (One-Time) | (12,949) | (16,500) | - | - | - | - | - | - | - | - | - | - | - | (29,449) |
| (+/-) Net Cash Flow | 9,024 | 10,306 | 25,878 | (15,896) | 6,016 | 18,970 | 6,165 | 16,282 | (231) | 2,611 | 1,047 | 6,100 | 4,428 | 90,702 |
| (+) DIP TL Proceeds[4] | - | - | - | 60,000 | 37,500 | - | 45,000 | - | - | - | - | - | - | 142,500 |
| **Ending Cash Balance** | $ 38,855 | $ 8,661 | $ 10,539 | $ 22,643 | $ 35,117 | $ 29,897 | $ 60,262 | $ 56,078 | $ 35,847 | $ 24,635 | $ 14,766 | $ 12,875 | $ 10,678 | $ 10,678 |
| *Net ABL Exposure[5]* | $ 275,883 | $ 234,775 | $ 207,361 | $ 175,361 | $ 144,318 | $ 120,128 | $ 99,328 | $ 78,862 | $ 58,762 | $ 44,938 | $ 34,022 | $ 26,031 | $ 19,406 | |
| *Restricted Cash* | 90,591 | 100,693 | - | - | 16,992 | 41,182 | 61,982 | 82,448 | 97,448 | 111,272 | 122,188 | 130,179 | 136,804 | |

*Notes:*
*(1) Assumes all professional fees are funded into a reserve as incurred*
*(2) Pre-petition salaries for ongoing employees and other benefits are included in operating disbursements*
*(3) Includes approximately CAD $1.9 million (translated at $0.749) and USD $0.4 million held by the Canadian debtors*
*(4) Assumes DIP is approved the week-ending 8/18 but funds on Monday 8/21*
*(5) Net ABL Exposure equal to 102% of outstanding letters of credit net of restricted cash, plus outstanding ABL borrowings*

**Schedule 2[21]**

**DIP Lien Priority Summary**

| | Prepetition ABL Priority Collateral | Prepetition B-2 Priority Collateral | UST Tranche B Priority Collateral | Prepetition Joint Collateral | Unencumbered Property |
|---|---|---|---|---|---|
| **First** | Prepetition ABL Liens (and related Adequate Protection Liens) | Postpetition B-2 Liens and Prepetition B-2 Liens (and related Adequate Protection Liens) | Prepetition UST Tranche B Liens (and related Adequate Protection Liens) | Postpetition B-2 Liens and Prepetition B-2 Liens (and related Adequate Protection Liens) (33%) / UST Tranche B Liens (and related Adequate Protection Liens) (67%) | Junior DIP Unencumbered Property Liens |
| **Second** | Prepetition B-2 Liens and Postpetition B-2 Liens (and related Adequate Protection Liens) | Junior DIP Liens | Prepetition B-2 Liens and Postpetition B-2 Liens (and related Adequate Protection Liens) | Prepetition ABL Liens (and related Adequate Protection Liens) | Postpetition B-2 Liens |
| **Third** | Prepetition UST Tranche A Liens and Prepetition UST Tranche B Liens (*pari passu*) (and related Adequate Protection Liens) | Prepetition ABL Liens (and related Adequate Protection Liens) | Prepetition ABL Liens (and related Adequate Protection Liens) | Prepetition UST Tranche A Liens (and related Adequate Protection Liens) | Adequate Protection Liens with respect to the Prepetition B-2 Liens and Prepetition ABL Liens (*pari passu*) |
| **Fourth** | Junior DIP Liens | Prepetition UST Tranche A Liens and Prepetition UST Tranche B Liens (*pari passu*) (and related Adequate Protection Liens) | Prepetition UST Tranche A Liens (and related Adequate Protection Liens) | Junior DIP Liens | Adequate Protection Liens with respect to the Prepetition UST Tranche A Liens and Prepetition UST Tranche B Liens (*pari passu*) |
| **Fifth** | Additional Junior DIP Liens | Additional Junior DIP Liens | Junior DIP Liens | Additional Junior DIP Liens | Additional Junior DIP Liens |
| **Sixth** | | | Additional Junior DIP Liens | | |

---

[21] This Schedule 2 is provided for the convenience of the Court and parties in interest. To the extent there is any conflict or inconsistency between the summary table in Schedule 2 and the Final Order, the Final UST Cash Collateral Order, or the Prepetition Intercreditor Agreement, regarding the priority of the DIP Liens or any other prepetition or postpetition liens of the Prepetition Secured Parties or the Prepetition UST Secured Parties, the lien priorities set forth in the Final Order, the Final UST Cash Collateral Order, and in the Prepetition Intercreditor Agreement, as applicable, shall control.