# EXHIBIT B

## Redline

DOCS_DE:244829.1 96859/001

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**~~INTERIM~~FINAL ORDER (I) AUTHORIZING
THE DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT
LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE
CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
AND (IV) ~~SCHEDULING A FINAL HEARING, AND (V)~~ GRANTING RELATED
RELIEF**

Upon the motion (the "<u>DIP Motion</u>")[2] of Yellow Corporation ("<u>Yellow Corp</u>") and each

of its above-captioned affiliates (collectively, the "<u>Debtors</u>"), pursuant to sections 105, 361, 362,

363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and

507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the

"<u>Bankruptcy Code</u>"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "<u>Bankruptcy Local Rules</u>"), seeking entry of this ~~interim~~final order

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors'
principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street,
Suite 400, Overland Park, Kansas 66211.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Motion
or the DIP ~~Term Sheet (as defined herein)~~Loan Documents, as applicable.

(this "~~Interim~~Final Order")³~~and the Final~~ (together with the Interim Order (as defined ~~herein and, together with this Interim Order~~below), the "DIP Orders") among other things:

- authorizing the Borrower (as defined below) to obtain postpetition financing (the "DIP Financing") pursuant to a ~~$142.5 million~~ postpetition credit facility of up to $212.5 million (the "DIP Facility") subject to the terms and conditions set forth in ~~this~~the Interim Order ~~and~~, this Final Order, that certain Debtor-In-Possession Credit Facility Term Sheet attached ~~hereto~~to the Interim Order as Exhibit 1 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "DIP Term Sheet")³ that certain Debtor-In-Possession Credit Facility Agreement attached hereto as **Exhibit 1** (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "Junior DIP Credit Agreement"), and that certain Amended and Restated Credit Agreement dated as of September 11, 2019, among Yellow Corp., the other guarantors party thereto from time to time, the lenders party thereto and Alter Domus Products Corp. (as amended, restated, supplemented or otherwise modified from time to time, including pursuant to that certain Amendment No. 4 and Restated Credit Agreement attached hereto as **Exhibit 2** (the "B-2 Amendment"), the "Postpetition B-2 Credit Agreement"), consisting of:

    (A) a junior secured, superpriority debtor in possession multi-draw term loan facility (the "Junior DIP Facility") by and among Yellow Corp, as borrower (in such capacity, the "Borrower"), the DIP Guarantors (as defined in the Junior DIP ~~Term Sheet~~Credit Agreement), MFN Partners, L.P. (~~together with any assigns,~~ the "Junior DIP Lender"), and Alter Domus Products Corp., as administrative agent and collateral agent (in such capacity, together with its successors and permitted assigns, the "Junior DIP Agent" and, together with the Junior DIP Lender, the "Junior DIP Secured Parties), consisting of (1) new money term loans (~~together with any drawn Junior DIP Commitments (as defined below),~~ the "Junior DIP Loans") in an aggregate principal amount of $42.5 million, of which:~~ (i) $17.9 million will be~~ (in each case, subject to certain conditions set forth in the Junior DIP Credit Agreement): (x) $17,894,736.84 was made available to be drawn upon entry of ~~this~~the Interim Order ~~and~~, (~~ii~~y) $~~24.6 million will be~~11,184,210.53 was made available to be drawn (~~including (a) $11.2 million on~~on the date of the Second Draw (as defined below)~~,~~ and (b~~z~~) $~~13.4 million on~~13,421,052.63 will be made available to be drawn on the date of the Third Draw (as defined below)~~)~~ ~~subject to certain conditions set forth in the DIP Term Sheet and, when applicable, a credit agreement governing the Junior DIP Facility on the terms set~~

---

³ ~~The Debtors filed a prior version of this Interim Order at Docket No. 16-1.~~

³ Subject to the Documentation Principles (as defined in the DIP Term Sheet), the DIP Term Sheet (including all terms and provisions set forth therein) has been replaced by, as applicable, the Junior DIP Credit Agreement (including all terms and provisions set forth therein) and the Postpetition B-2 Credit Agreement (including all terms and provisions set forth therein).

forth in the DIP Term Sheet (including the Documentation Principals (as defined therein)) (the "DIP Credit Agreement"), including the filing by the Debtors of a form of order approving bid procedures (the "Proposed Bid Procedures Order") in form and substance acceptable to the Junior DIP Lender and the B-2 Lenders; ; and (2) up to $70.0 million of additional new money term loans (the "Additional Junior DIP Loans")[4] shall be made available to be drawn, at the Debtors' request following entry of this Final Order and the Third Draw, which amount may be drawn in one or multiple draws at the Debtors' discretion; and

(B) an incremental postpetition tranche of the B-2 Facility (as defined belowin the Postpetition B-2 Credit Agreement) constituting a senior secured, superpriority debtor in possession multi-draw term loan facility (the "Postpetition B-2 Facility"), subject to the terms herein, the DIP Term Sheet and the Prepetition B-2 Credit Agreement (as defined below), as modified by this Interim Order and the DIP Term Sheet, which will be superseded by the DIP Credit Agreement (if the Postpetition B-2 Lenders and the Debtors agree) or an amendment to the B-2 Credit Agreement (the "B-2 Amendment" and the Prepetition B-2 Credit Agreement as so modified and superseded, the "and the Postpetition B-2 Credit Agreement"), subject to the Documentation Principles set forth (and as defined) in the DIP Term Sheet, consisting of new money term loans (the "Postpetition B-2 Term Loans" and, together with the Junior DIP Loans, the "DIP Loans")[45] provided by   Citadel Credit Master Fund LLC (together with any permitted assignee thereof, the "Postpetition B-2 Lenders" and, together with the Postpetition B-2 B-Agent (as defined below), the "Postpetition B-2 Secured Parties")[6] in an aggregate principal amount of $100.0 million of which: (i) $42,105,263.16 million will bewas made available to be drawn upon entry of the Interim Order (together with the Junior DIP Loans described in subclause (A)(i) above, the "Interim Draw"); (ii) $26.3 million will be; (ii) $26,315,789.47 was made available to be drawn subject to certain conditions set forth in the Postpetition B-2 Amendment or DIP Credit Agreement, as applicable, including the filing by the Debtors of the Proposed Bid Procedures Order (together with the Junior DIP Loans discussed in subclause (A)(ii)(a) above, the "Second Draw"); and (iii) $31.6 million31,578,947.37 will be made available to be drawn upon the

---

[4] The Additional Junior DIP Loans (if drawn) shall be junior and subordinate (including in right of payment) in all respects to the Prepetition Liens and Adequate Protection Liens (including the UST Adequate Protection Liens) of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties.

[45] The commitments under the Junior DIP Facility shall be referred to herein as the "Junior DIP Commitments" and the commitments under the Postpetition B-2 Facility shall be referred to herein as the "Postpetition B-2 Commitments." The Junior DIP Commitments and the Postpetition B-2 Commitments, together, shall be referred to herein as the "DIP Commitments."

[6] The Junior DIP Lender and the Postpetition B-2 Lenders, together, shall be referred to herein as the "DIP Lenders." The Junior DIP Secured Parties and the Postpetition B-2 Secured Parties, together, shall be referred to herein as the "DIP Secured Parties."

Court's entry of ~~the~~this Final Order (together with the Junior DIP Loans discussed in subclause (A)(ii)(b) above, the "Third Draw"); ~~and~~

~~(C) up to $70.0 million (the "Additional Junior DIP Commitments")⁵shall be made available by the Junior DIP Lender, at the Debtors' request following the Third Draw, which amount may be drawn in one or multiple draws at the Debtors' discretion.⁶~~

- authorizing the Borrower to incur, and the DIP Guarantors (as defined in the Junior DIP ~~Term Sheet~~Credit Agreement and, together with the Borrower, the "DIP Loan Parties") to jointly and severally guarantee the Junior DIP Loans and all extensions of credit, financial accommodations, reimbursement obligations, interest, fees and premiums (including, without limitation, commitment fees or premiums and administrative agency fees, costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute)) earned, due and payable under the DIP Loan Documents (as defined below) (collectively, the "Junior DIP Obligations"), in each case subject and subordinate to the Carve-Out (as defined below) and the Canadian Priority Charges and in accordance with the terms hereof;

- authorizing the DIP Loan Parties to jointly and severally guarantee the Postpetition B-2 Term Loans and all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including, without limitation, commitment fees or premiums (including the Make-Whole Amount (as defined in the Postpetition B-2 Credit Agreement)) and administrative agency fees, costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute)) earned, due and payable under the DIP Loan Documents ~~(as defined below)~~ to the Postpetition B-2 Secured Parties (including all "Obligations" (as defined in the Postpetition B-2 Credit Agreement), collectively, the "Postpetition B-2 Obligations" and, together with the Junior DIP Obligations, the "DIP Obligations"), in each case subject and subordinate to the Carve-Out and the Canadian Priority Charges and in accordance with the terms hereof;

- authorizing the DIP Loan Parties to execute (to the extent not previously executed), deliver and perform, as applicable, under the Junior DIP ~~Term Sheet, the~~Credit Agreement, the B-2 Amendment, the Postpetition B-2 Credit Agreement, the ~~DIP Credit Agreement, the Postpetition B-2 Amendment (if any), the Amended and~~

---

⁵ ~~The Additional Junior DIP Commitments (if drawn) shall be junior and subordinate (including in right of payment) in all respects to the Prepetition Liens and Adequate Protection Liens of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties.~~

⁶ ~~The Junior DIP Lender and the Postpetition B-2 Lenders, together, shall be referred to herein as the "DIP Lenders." The Junior DIP Secured Parties and the Postpetition B-2 Secured Parties, together, shall be referred to herein as the "DIP Secured Parties."~~

~~Restated Fee Letter, the~~Agency Fee Letter, and all other documents and instruments that may be reasonably requested by the Junior DIP Secured Parties or the Postpetition B-2 Secured Parties in connection with the DIP Facility (in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP Loan Documents");

- subject and subordinate to the Carve-Out ~~(as defined below)~~ and the Canadian Priority Charges and otherwise solely to the extent set forth herein, granting to the Junior DIP Agent, for the benefit of the Junior DIP Secured Parties, and the Postpetition B-2 Agent, for the benefit of the Postpetition B-2 Secured Parties, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code;

- granting to the Junior DIP Agent, for the benefit of the Junior DIP Secured Parties, and the Postpetition B-2 Agent, for the benefit of the Postpetition B-2 Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral, on the terms described herein;[7]

- authorizing the Junior DIP Agent and the Postpetition B-2 Agent to take all commercially reasonable actions to implement the terms of this ~~Interim~~Final Order;

- waiving (a) ~~(a) waiving~~ the Debtors' right to surcharge the DIP Collateral, ~~(b) upon entry of a final order providing for such relief, waiving the Debtors' right to surcharge the~~the Prepetition B-2 Collateral ~~or~~, and the Prepetition ABL Collateral (each as defined below) pursuant to section 506(c) of the Bankruptcy Code and (~~e~~b) ~~upon entry of a final order providing for such relief~~ any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

- ~~(a)~~ waiving the equitable doctrine of "marshaling" and other similar doctrines (a) for the benefit of the DIP Secured Parties with respect to the DIP Collateral and the DIP Obligations, and (b) ~~upon entry of a final order providing for such relief, waiving the equitable doctrine of "marshaling" and other similar doctrines~~ for the benefit of the Prepetition Secured Parties (as defined below) with respect to the Prepetition

---

[7]    "DIP Collateral" shall mean all tangible and intangible prepetition and postpetition property of the DIP Loan Parties (other than: (a) any lease, license or agreement or any property to the extent a grant of a security interest therein would violate or invalidate such lease, license or agreement or similar arrangement or create a right of termination in favor of any other party thereto after giving effect to the applicable anti-assignment provisions of the UCC, PPSA, Bankruptcy Code or other applicable law, other than proceeds and receivables thereof, the assignment of which is deemed effective under the UCC, PPSA, Bankruptcy Code or other applicable law, notwithstanding such prohibition; and (b) "intent to use" trademark applications~~,~~ ((a) and (b), collectively, "Excluded Property")~~)~~, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, other than the Avoidance Actions and the Carve-Out Reserves (and any amounts held therein), but including ~~upon and subject to entry of the Final Order,~~ the Avoidance Proceeds ~~(collectively, the "Unencumbered Property," and such liens, the "DIP Unencumbered Property Liens"))~~, subject to paragraph 11 of this Final Order in all respects.

Collateral and the Prepetition Secured Obligations (each as defined below), as applicable, in each case subject to the Carve-Out and Canadian Priority Charges;

- authorizing the Debtors to use proceeds of the DIP Facility and Cash Collateral (as defined below) solely in accordance with the DIP Orders, the DIP Loan Documents (including, the Approved Budget, (subject to Permitted Variances (as defined in the Junior DIP Term Sheet)), the Interim UST Cash Collateral Order (as defined below), and the FinalCredit Agreement)), and the UST Cash Collateral Orders (as defined below);

- authorizing the Debtors to pay the DIP Obligations as they become due and payable in accordance with the DIP Loan Documents;

- authorizing the Debtors to remit ABL Cash Collateral (as defined below) to the Prepetition ABL Agent as set forth hereinin the DIP Orders and for the Prepetition ABL Agent to apply such ABL Cash Collateral to permanently reduce or cash collateralize, as applicable, the Prepetition ABL Obligations as set forth hereinin the DIP Orders;

- subject to the restrictions set forth in the DIP Loan Documents and the DIP Orders, authorizing the Debtors to use Prepetition Collateral (including Cash Collateral) and provide adequate protection to the Prepetition Secured Parties (as defined below) for any aggregate diminution in value of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "Diminution in Value");[8]

---

[8]    The adequate protection and certain other rights and protections to be provided to the Prepetition UST Secured Parties (as defined below) isare set forth in a separate Court order being entered contemporaneously with this InterimFinal Order (the "Interim UST Cash Collateral Order" and the final order approving such relief, the "Final UST Cash Collateral Order"). As used in this InterimFinal Order, the following terms shall have the meanings given to those terms in the Final UST Cash Collateral Order: UST Cash Collateral, Interim UST Cash Collateral Order, UST Cash Collateral Orders, Prepetition UST Tranche A Credit Agreement, Prepetition UST Tranche A Loan Documents, Prepetition UST Tranche A Borrower, Prepetition UST Tranche A Guarantors, Prepetition UST Tranche A Loan Parties, BNY, Prepetition UST Tranche A Agent, Prepetition UST Tranche A Lenders, Prepetition UST Tranche A Secured Parties, Prepetition UST Tranche A Obligations, Prepetition UST Tranche B Credit Agreement, Prepetition UST Tranche B Loan Documents, Prepetition UST Loan Documents, Prepetition UST Tranche B Borrower, Prepetition UST Tranche B Guarantors, Prepetition UST Tranche B Loan Parties, Prepetition UST Tranche B Agent, Prepetition UST Agent, Prepetition UST Tranche B Lenders, Prepetition UST Lenders, Prepetition UST Tranche B Secured Parties, Prepetition UST Tranche B Obligations, Prepetition UST Secured Obligations, Prepetition UST Tranche A Liens, Prepetition UST Tranche A Permitted Senior Liens, Prepetition UST Tranche A Collateral, Prepetition UST Tranche B Liens, Prepetition UST Liens, UST Tranche B Term Priority Collateral, Prepetition UST Tranche B Permitted Senior Liens, Prepetition UST Tranche B Priority Collateral, Prepetition UST Tranche B Collateral, Prepetition UST Secured Parties, UST Tranche B Adequate Protection Liens, UST Tranche A Adequate Protection Liens, UST Adequate Protection Liens, UST Tranche B 507(b) Claims, UST Tranche A 507(b) Claims, UST 507(b) Claims, UST Tranche B Adequate Protection Fees and Expenses, UST Tranche A Adequate Protection Fees and Expenses, UST Tranche A Adequate Protection Fees and Expenses, UST Tranche B Adequate Protection Obligations, UST Tranche A Adequate Protection Obligations, UST Adequate Protection Obligations, UST Adequate Protection Payments, and UST Adequate Protection shall have the meanings given

6

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the DIP Orders and the DIP Loan Documents; and

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this ~~Interim Order and, upon entry, the~~ Final Order~~; and~~.

- ~~scheduling a final hearing (the "Final Hearing") to consider final approval of the DIP Facility and use of Cash Collateral on the terms of a proposed order (the "Final Order") to be posted to the docket prior to the Final Hearing.~~

The Court having considered the ~~interim~~final relief requested in the DIP Motion [Docket No. 16], the exhibits attached thereto, the *Declaration of Cody Leung Kaldenberg, Founding Member of and Partner at Ducera Partners In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Authorizing the Debtors to Use UST Cash Collateral, (V) Granting Adequate Protection, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 18] (the "Kaldenberg Declaration"), the *Declaration of Brian Whittman, Managing Director of Alvarez & Marsal North America, LLC, In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Authorizing the Debtors to Use UST Cash Collateral, (V) Granting Adequate Protection, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 17]

---

~~to those terms in the Interim UST Cash Collateral Order.~~

(the "Whittman Declaration"), and the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), the available DIP Loan Documents, including the DIP Term Sheet, and the Junior DIP Credit Agreement, the Postpetition B-2 Credit Agreement, and the B-2 Amendment, and the evidence submitted to the Court, including arguments made at the interim hearing held on August 9, 2023 (the "Interim Hearing") and the final hearing held on September 15, 2023 (the "Final Hearing"); and due and sufficient notice of the Interim Hearing, including continuations thereof, and subsequent status conferences and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and the InterimCourt having entered, on August 18, 2023, the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 302] (the "Interim Order"); and the Final Hearing having been held and concluded; and all objections, if any, to the interimfinal relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interimfinal relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the preservation and maximization of the value of the Debtors' assets; and it appearing that the DIP Loan Parties' entry into the DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

8

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[9]

A.      *Petition Date.*  On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

B.      *Debtors in Possession.*  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      *Jurisdiction and Venue.*  This Court has core jurisdiction over these cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order approving the relief sought in the DIP Motion consistent with Article III of the United States Constitution.  Venue for these cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Bankruptcy Local Rules 2002-1, 4001-2, and 9013-1.

D.      *Committee Formation.*  On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors

---

[9]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(the "Creditors' Committee") in these chapter 11 cases (the "Chapter 11 Cases") pursuant to section 1102 of the Bankruptcy Code [Docket No. 269].  As of the date hereof, the U.S. Trustee has not appointed any other statutory committee.

E.    *Notice*.    The ~~Interim~~Final Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the DIP Motion and the ~~Interim~~Final Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice was or shall be required under the circumstances. ~~The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.~~

F.    *Cash Collateral*.  As used herein, the term "Cash Collateral" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Prepetition Secured Parties (and the Prepetition UST Secured Parties) or DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

G.    *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest and subject in all respects to the provisions and limitations contained in this Final Order, including, without limitation, the provisions of paragraph 19 hereof, and after consultation with their attorneys, the Debtors admit, stipulate and agree that:

(i)    *Prepetition B-2 Term Loan*.  Pursuant to that certain Amended and Restated Credit Agreement, dated as of September 11, 2019 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition B-2 Credit Agreement" and, collectively with all other agreements (including all Loan Documents (as defined therein)), documents, and instruments executed or delivered in connection therewith, including, without

limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "<u>Prepetition B-2 Loan Documents</u>"), by and among (a) Yellow Corp., as borrower (in such capacity, the "<u>Prepetition B-2 Borrower</u>"), (b) the guarantors party thereto (~~the "Prepetition B-2 Guarantors" and,~~ together with the Prepetition B-2 Borrower, the "<u>Prepetition B-2 Loan Parties</u>"), (c) Alter Domus Products Corp., as administrative and collateral agent (the "<u>Prepetition B-2 Agent</u>"),[10] and (d) the lenders party thereto from time to time (the "<u>Prepetition B-2 Lenders</u>" and, together with the Prepetition B-2 Agent, the "<u>Prepetition B-2 Secured Parties</u>"),[11] Prepetition B-2 Loan Parties incurred <u>and continue to incur and accrue all</u> "Obligations" under (and as defined in) the Prepetition B-2 Credit Agreement (the "<u>Prepetition B-2 Obligations</u>" and, together with the Postpetition B-2 Obligations, the "<u>B-2 Obligations</u>") to the Prepetition B-2 Secured Parties on a joint and several basis;

(ii)     *Prepetition ABL Facility.*   Pursuant to that certain Loan and Security Agreement, dated as of February 13, 2014 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "<u>Prepetition ABL Credit Agreement</u>", collectively with all other agreements (including all Loan Documents (as defined therein)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing

---

[10]   Alter Domus Product Corp. also serves as administrative agent and collateral agent with respect to the Postpetition B-2 Facility (in such capacity, the "<u>Postpetition B-2 Agent</u>" and, together with the Prepetition B-2 Agent, the "<u>B-2 Agent</u>").

[11]   The Prepetition B-2 Lenders and the Postpetition B-2 Lenders shall be referred to herein as the "<u>B-2 Lenders</u>." The Prepetition B-2 Secured Parties and the Postpetition B-2 Secured Parties shall be referred to herein as the "<u>B-2 Secured Parties</u>."

statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition ABL Loan Documents", and the credit facilities evidenced thereby, collectively, the "Prepetition ABL Facility") among (a) Yellow Corp, as administrative borrower (together with the other borrowers party thereto, the "Prepetition ABL Borrowers"), (b) the guarantors party thereto (the "Prepetition ABL Guarantors" and, together with the Prepetition ABL Borrowers, the "Prepetition ABL Loan Parties" and, together with the Prepetition B-2 Loan Parties, the "Prepetition Loan Parties"),[12] (c) Citizens Business Capital, a division of Citizens Asset Finance, Inc. (a subsidiary of Citizens Bank, N.A.), as agent (the "Prepetition ABL Agent" and, together with the Prepetition B-2 Agent, the "Prepetition Agents"), (d) the lenders from time to time party thereto (the "Prepetition ABL Lenders" and, together with the Prepetition B-2 Lenders, the "Prepetition Lenders"), and (e) the issuing banks from time to time party thereto (together with the Prepetition ABL Agent and the Prepetition ABL Lenders, the "Prepetition ABL Secured Parties" and, together with the Prepetition Agents, the Prepetition Lenders, and the Bank Product Providers (as defined in the Prepetition ABL Credit Agreement), the "Prepetition Secured Parties"), the Prepetition ABL Loan Parties incurred "Obligations" (as defined in the Prepetition ABL Credit Agreement, the "Prepetition ABL Obligations" and, together with the Prepetition B-2 Obligations, the "Prepetition Secured Obligations") to the Prepetition ABL Secured Parties on a joint and several basis;

(iii) *Prepetition Intercreditor Agreement.*  Pursuant to (and to the extent set forth in) that certain Amended and Restated Intercreditor Agreement, dated as of July 7, 2020

---

[12] The Prepetition ABL Loan Parties and the Prepetition B-2 Loan Parties, together, shall be referred to herein as the "Prepetition Loan Parties."

(as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Intercreditor Agreement" and, together with the Prepetition B-2 Loan Documents and the Prepetition ABL Loan Documents, the "Prepetition Loan Documents") by and among the Prepetition ABL Agent, the Prepetition B-2 Agent, the Prepetition UST Tranche A Agent, and the Prepetition UST Tranche B Agent, the parties thereto agreed, among other things, to the relative priority of such parties' respective security interests in and rights with respect to the Prepetition Collateral (as defined below), which relative priorities are governed by and set forth in the Prepetition Intercreditor Agreement.  The Prepetition Loan Documents and the Prepetition UST Loan Documents, including the Prepetition Intercreditor Agreement, are, in each case, binding and enforceable against the parties thereto;

(iv)     *Prepetition B-2 Obligations*.  As of the Petition Date, the Prepetition B-2 Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition B-2 Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition B-2 Credit Agreement) in the aggregate principal amount of not less than $485,372,693.29, plus accrued and accruing unpaid interest thereon and any fees, exit fees (including the exit fee arising pursuant to Section 2.05(c) of the Prepetition B-2 Credit Agreement), expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees and fees of other consultants and professionals), costs, charges, indemnities, and other Prepetition B-2 Obligations in each case incurred under (or reimbursable pursuant to) or secured by the Prepetition B-2 Loan Documents;

(v)     *Prepetition ABL Obligations*.  As of the Petition Date, the Prepetition ABL Loan Parties were validly, justly and lawfully indebted and liable to the Prepetition ABL Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind,

for (x) not less than $858,520.35 in outstanding principal amount of Loans (as defined in the Prepetition ABL Credit Agreement) plus accrued and unpaid interest thereon, (y) not less than $359,288,388.60 in outstanding and undrawn Letters of Credit (as defined in the Prepetition ABL Credit Agreement) plus accrued and unpaid fees with respect thereto, and (z) any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, financial advisors' fees, and fees of other consultants and professionals), costs, charges, indemnities, and other Prepetition ABL Obligations (including, without limitation, Bank Product Debt, as defined in the Prepetition ABL Credit Agreement) in each case incurred under (or reimbursable pursuant to) or secured by the Prepetition ABL Loan Documents.  As of the Petition Date, (1) ABL Cash Collateral ~~(as defined below)~~ in an amount equal to $91,449,240.35 was being held on deposit in the Borrowing Base Cash Account (as defined in the Prepetition ABL Credit Agreement) and (2) ABL Cash Collateral ~~(as defined below)~~ in an amount equal to $3,800,000 had been pledged to the Prepetition ABL Agent as security for certain Bank Product Debt owed to Citizens Bank, N.A. and/or its affiliates (such amounts described in this sentence, collectively, the "Existing ABL Cash Collateral Deposits");

(vi)    *Validity of Prepetition Secured Obligations*.    The Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties, as applicable, enforceable in accordance with the respective terms of the relevant documents, and no portion of the Prepetition Secured Obligations or any payment made to the Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance

14

actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(vii)    *Validity, Perfection and Priority of Prepetition B-2 Liens*.  As of the Petition Date, pursuant to the Prepetition B-2 Loan Documents, the Prepetition B-2 Loan Parties granted to the Prepetition B-2 Agent, for the benefit of the Prepetition B-2 Secured Parties, a security interest in and continuing lien on (the "Prepetition B-2 Liens") substantially all of their respective assets and property (other than Excluded Assets (as defined in the Prepetition B-2 Loan Documents), collectively, the "Prepetition B-2 Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the Non-UST Tranche B Term Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition B-2 Priority Collateral"),[13] subject only to any liens permitted by the Prepetition B-2 Loan Documents to be senior to the Prepetition B-2 Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to

---

[13]    For the avoidance of doubt, all references to Prepetition Collateral, including Prepetition B-2 Priority Collateral, Prepetition Joint Collateral, Prepetition ABL Priority Collateral and Prepetition UST Tranche B Priority Collateral in connection with any postpetition liens or claims, including the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the 507(b) Claims, and with respect to any intercreditor priorities, rights or obligations, including under this Final Order, the DIP Loan Documents and the Prepetition Intercreditor Agreement, shall in each case include all DIP Collateral that would have constituted such Prepetition Collateral (including any Prepetition B-2 Priority Collateral, Prepetition Joint Collateral, Prepetition ABL Priority Collateral and Prepetition UST Tranche B Priority Collateral) but for the commencement of the Chapter 11 Cases, including all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as such Prepetition Collateral (including any Prepetition B-2 Priority Collateral, Prepetition Joint Collateral, Prepetition ABL Priority Collateral and Prepetition UST Tranche B Priority Collateral), regardless of where located and notwithstanding any monetary cap in any mortgage with respect to any Prepetition Collateral.

the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition B-2 Permitted Senior Liens"); (ii) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the UST Tranche B Joint Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Joint Collateral"), subject only to the *pari passu* liens of the Prepetition UST Tranche B Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition UST Tranche B Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition UST Tranche B Priority Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL Priority Collateral (as defined below), subject and subordinate only to the liens of the Prepetition ABL Agent and the Prepetition B-2 Permitted Senior Liens on the Prepetition ABL Priority Collateral;

(viii)   *Validity, Perfection and Priority of Prepetition ABL Liens*.   As of the Petition Date, pursuant to the Prepetition ABL Loan Documents, the Prepetition ABL Loan Parties granted to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, a security interest in and continuing lien on (the "Prepetition ABL Liens" and, collectively with the Prepetition B-2 Liens, Prepetition UST Tranche A Liens, and Prepetition UST Tranche B Liens, the "Prepetition Liens") substantially all of their respective assets and property (other than Excluded Assets (as defined therein)) (collectively, the "Prepetition ABL

16

Collateral" and, collectively with the Prepetition B-2 Collateral, Prepetition UST Tranche A Collateral, and Prepetition UST Tranche B Collateral, the "Prepetition Collateral"),[14] including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), subject only to any liens permitted by the Prepetition ABL Loan Documents to be senior to the Prepetition ABL Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition ABL Permitted Senior Liens" and, collectively with the Prepetition B-2 Permitted Senior Liens, Prepetition UST Tranche A Permitted Senior Liens, and Prepetition UST Tranche B Permitted Senior Liens, the "Prepetition Permitted Senior Liens");[12][15] (ii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition B-2 Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition B-2 Priority Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and Prepetition UST Tranche B Agent and the Prepetition

---

[14]  The Prepetition Collateral and the DIP Collateral, together, shall be referred to herein as the "Collateral."

[12][15]  For the avoidance of doubt, no reference to the "Prepetition Permitted Senior Liens" shall refer to or include the Prepetition Liens.

ABL Permitted Senior Liens on the Prepetition Joint Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent and Prepetition UST Tranche B Agent and the Prepetition ABL Permitted Senior Liens on the Prepetition UST Tranche B Priority Collateral;

(ix)    *Waiver of Challenge*.  None of the Prepetition Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(x)    *No Control*.  None of the Prepetition Secured Parties or the DIP Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition Loan Documents or the DIP Loan Documents;

(xi)    *No Claims or Causes of Action*.  No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Parties and each of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition Secured Party that is~~is~~were in existence as of the Petition Date; and

(xii)    *Release*.  ~~Effective as of the date of entry of this Interim Order and subject in all respects to paragraph 19 hereof, each of~~Each of the Debtors and each of their estates, on its

own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby (a) reaffirms the releases granted pursuant to paragraph G(xii) of the Interim Order and (b) absolutely, unconditionally, and irrevocably releases and forever discharges and acquits the Prepetition Secured Parties, the DIP Secured Parties, and each of their respective Representatives (solely in their capacities as such) (collectively, the "Released Parties"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Prepetition Loan Documents, the DIP Facility, the DIP Loan Documents (including the DIP Term Sheet, the Junior DIP Credit Agreement, the Postpetition B-2 Credit Agreement, and the B-2 Amendment), the DIP Loans, the negotiation thereof, and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this ~~Interim~~Final Order; *provided* that the release set forth in this section shall not release (i) any claims against or liabilities of a Released Party that a court of competent jurisdiction determines by a final non-appealable order to have directly and primarily resulted from such Released Party's bad faith, fraud, gross negligence, or willful misconduct, or (ii) any DIP Secured Party(ies) from honoring its/their obligations to the Debtors under the DIP Loan Documents.

H. *Findings Regarding DIP Financing and Use of Cash Collateral.*

(i)    Good and sufficient cause has been shown for the entry of this ~~Interim~~Final Order and for authorization of the DIP Loan Parties to obtain financing pursuant to the DIP Loan Documents~~, including the DIP Term Sheet~~.

(ii)    The Debtors have demonstrated an immediate and critical need to obtain the DIP Loans and to use Prepetition Collateral (including Cash Collateral) in order to, among other things, maintain, administer, and preserve certain limited operations and maximize the value of their estates through an orderly winddown process of their businesses and a comprehensive sale process for their assets.  Without the ability of the Debtors to obtain sufficient working capital and liquidity through the ~~proposed~~ DIP Facility, and the continued use of Cash Collateral and other Prepetition Collateral as set forth in ~~this Interim~~the DIP Orders, the Debtors, would be unable to preserve and maximize the value of their estates~~, and parties in interest would be immediately and irreparably harmed~~.  Accordingly ~~the Debtors have an immediate need to obtain the~~ access to the DIP Loans provided under the DIP Facility and to ~~use~~ Cash Collateral as set forth in ~~this Interim Order to, among other things,~~the DIP Orders is necessary to maximize the value of the assets of the Debtors' estates to maximize the recovery to all creditors of the estates in these Chapter 11 Cases.

(iii)    The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents~~, including financing secured solely by lien on property of the Debtors and their estates that is not otherwise subject to a lien or secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien~~.  The Debtors are also unable to obtain secured

credit without granting to the DIP Secured Parties the DIP Liens and the DIP Superpriority Claims (each as defined below) and incurring the Adequate Protection Obligations (as defined below) on the terms and subject to the conditions set forth in ~~this Interim~~the DIP Orders and in the DIP Loan Documents~~, including the DIP Term Sheet~~.

   (iv) Based on the DIP Motion, the First Day Declaration, the Kaldenberg Declaration, the Whittman Declaration, the findings set forth in the Interim Order and this Final Order, and the record and argument presented to the Court at the Interim Hearing and the Final Hearing, the terms of the DIP Facility, the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraph 14 of this ~~Interim~~Final Order (and, with respect to the Prepetition UST Secured Parties, as provided in the ~~Interim~~Final UST Cash Collateral Order) (collectively, the "Adequate Protection"), and the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to ~~this Interim~~the DIP Orders, the UST Cash Collateral Orders, and the DIP Loan Documents are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

   (v) ~~This Interim~~The DIP Orders, the DIP Facility, the Adequate Protection, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured Parties, ~~and~~ the Prepetition Secured Parties, and the Prepetition UST Secured Parties (each of whom acted in good faith in negotiating such documents), and all of the loans and other financial accommodations extended by the DIP Secured Parties and the Prepetition Secured Parties (as applicable) to the DIP Loan Parties under, in respect of, or in connection with, the DIP Facility

and the DIP Loan Documents (including the granting of the Adequate Protection Liens (as defined below), the UST Adequate Protection Liens, and other adequate protections provided herein and in the UST Cash Collateral Orders), shall be deemed to have been extended by the DIP Secured Parties in good faith, as that term is used in section 364(c) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and their respective successors and assigns) and such Prepetition Secured Parties (and their respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this the Interim Order, this Final Order, or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(vi) The Postpetition B-2 Lenders have agreed to provide the Postpetition B-2 Loans for the benefit of the Debtors' estates, the other Prepetition Secured Parties, all holders of administrative expense claims against the Debtors, and all other creditors in lieu of exercising their rights to immediately seek relief from the automatic stay under section 362(d) of the Bankruptcy Code with respect to the Prepetition B-2 Priority Collateral (as defined below).

(vi) (vii) The Prepetition Secured Parties and the DIP Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of this the Interim Order, this Final Order, the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, the DIP Loan Documents (including the DIP Term Sheet), and all other documents related to and all transactions contemplated by the foregoing. Accordingly, without limitation to any other right to indemnification, the Prepetition Secured Parties and the

DIP Secured Parties shall ~~maintain their right of indemnification~~be and hereby are indemnified (as applicable) as provided in ~~the Prepetition Loan Documents and~~and pursuant to the terms of the DIP Loan Documents and the Prepetition Loan Documents, as applicable, including, without limitation, Section 10.05 of the Junior DIP Credit Agreement, Section 10.05 of the Prepetition B-2 Credit Agreement, and Section 15.2 of the Prepetition ABL Credit Agreement.

(vii)   ~~(viii)~~ The Prepetition Secured Parties are entitled to the Adequate Protection as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to the Court, the terms of the proposed Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral, including Cash Collateral.

(viii)   ~~(ix)~~ To the extent that their consent is required, the requisite Prepetition Secured Parties have consented or are deemed to have consented to the use of Prepetition Collateral, including Cash Collateral, and the priming of certain of the Prepetition Liens on the Prepetition Collateral by the DIP Liens, in each case on the terms set forth in the DIP ~~Term Sheet and this Interim~~Loan Documents and the DIP Orders; *provided*~~,~~ that~~,~~ nothing in ~~this Interim~~the DIP Orders or the DIP Loan Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in ~~this Interim~~the DIP Orders, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering Prepetition Collateral or Prepetition UST Collateral (whether senior or junior) other than as contemplated by ~~this Interim~~the DIP Orders (or, as applicable, the ~~Interim~~ UST Cash Collateral Orders), or (z) prejudice, limit or otherwise impair the rights of any Prepetition Secured Party or Prepetition UST Secured Party to seek new,

23

different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the DIP Loan Parties to object to such relief, are hereby preserved, subject to the terms and conditions of the Prepetition Intercreditor Agreement and this Final Order.

(ix)    (x)  The Debtors have prepared and delivered to the advisors to the Junior DIP Secured Parties, the Prepetition ABL Secured Parties, the B-2 Secured Parties, and the Prepetition UST Secured Parties an initial budget (the "Initial DIP Budget"), attached heretoto the Interim Order as **Schedule 1**.  The Initial DIP Budget reflectsed, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each calendar week covered thereby.  The Interim Order provided that the Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP LoanTerm Sheet (subject to the Documentsation Principles) and with the approval of the Junior DIP Secured Parties, the B-2 Lenders, the Prepetition ABL Agent and the Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld).  Each subsequent budget, once otherwise approved in accordance with the DIP Loan Documents and this Interimthe DIP Orders and subject to the review and approval of the Junior DIP Lender, the B-2 Lenders, the Prepetition ABL Agent, and the Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld) shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget, an "Approved Budget").; *provided,* that any modification or amendment to the Approved Budget shall be provided to counsel for the Creditors' Committee no less than three (3) business days prior to the

effectiveness of such modification or amendment.  The current Approved Budget is attached hereto as **Schedule 1**.

(x)    (xi) Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, upon entry of a final order providing for such relief, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral.

(xi)    (xii) The intercreditor and subordination provisions herein set forth in the DIP Orders and in the other DIP Loan Documents are essential elements of the DIP Facility and the protections granted to the parties as consideration therefor and are were, pursuant to the Interim Order, made immediately and irrevocably binding and enforceable.

I.    *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Final Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Absent the relief granted in this Interim Final Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the will be unable to access continued liquidity through the DIP Loans and Cash Collateral required to fund their estates and maximize estate value.  The DIP Facility and continued use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Final Order and the DIP Loan Documents (including the DIP Term Sheet), are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The DIP Motion and this Interim Final Order comply with the requirements of Bankruptcy Local Rule 4001-2.

J.    *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens*.  Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Senior

25

Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Secured Parties, or the Prepetition Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien.  For the avoidance of doubt, the right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Senior Lien, and any such right is expressly subject to the DIP Liens and the Prepetition Liens (each as defined herein).  The Prepetition Liens and the DIP Liens are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens.

K.     *Intercreditor Agreement.*  Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement shall: (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties and Prepetition UST Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims or amounts payable in respect thereof), and (iii) not be deemed to be amended, altered or modified by the terms of this Interimthe DIP Orders, the Interim UST Cash Collateral Orders, or the DIP Loan Documents (including the DIP Term Sheet), unless expressly set forth therein or herein, as applicable.

L.     Contemporaneous with the entry of this InterimFinal Order, the Court is entering the InterimFinal UST Cash Collateral Order granting the UST Adequate Protection (as defined in the InterimFinal UST Cash Collateral Order) on a final basis to the Prepetition UST Secured Parties.

Based upon the DIP Motion, the foregoing findings and conclusions, and the overall

record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted*.  The DIP Motion is granted on ~~an interim~~a final basis on the terms and conditions set forth in this ~~Interim~~Final Order.  All objections to the ~~Interim~~Final Order, to the extent not withdrawn, waived, settled, or resolved, are hereby overruled on the merits.

2.    *Authorization of the DIP Financing and the DIP Loan Documents.*

      (a)    The DIP Loan Parties were authorized by the Interim Order, and are hereby authorized on a final basis to execute (to the extent not previously executed), deliver, enter into and perform all of their obligations under the DIP Loan Documents~~, including the DIP Term Sheet,~~ and to perform such other acts as may be necessary, appropriate or desirable in connection therewith.  ~~Once executed, the~~The Junior DIP Credit Agreement, the Postpetition B-2 Credit Agreement, and the B-2 Amendment ~~(if any) shall be deemed~~were deemed, by the Interim Order, and hereby are deemed on a final basis effective as of the Closing Date (as defined in the DIP Term Sheet).  The Borrower was previously authorized by the Interim Order, and is hereby authorized ~~upon entry of this Interim Order~~on a final basis to borrow up to and draw (a) $60 million (the "Initial Draw") pursuant to the terms and conditions of the DIP ~~Term Sheet and the Postpetition B-2 Credit Agreement, as modified by this Interim Order and the DIP Term Sheet (including the Documentation Principles) (and, without further order or approval of this Court,~~ Loan Documents and (b) $37.5 million (the Second Draw) on such date that the Second Draw becoames available to be drawn pursuant to the terms and provisions of the DIP ~~Term Sheet)~~Loan Documents, and the DIP Guarantors were authorized by the Interim Order, and are

hereby authorized on a final basis to guarantee the Borrower's obligations on account of the Initial Draw (and, if applicable, without further order or approval of this Court, the Second Draw), subject to any limitations set forth in the DIP Loan Documents, including the DIP Term Sheet.  The Borrower is hereby authorized on a final basis to borrow and draw (x) an incremental $45 million (the Third Draw) upon entry of this Final Order and, thereafter, at the Borrower's request and without further approval or order of this Court, (y) up to $70 million in further incremental loans (the Additional Junior DIP Loans), and the DIP Guarantors are hereby authorized on a final basis to guarantee the Borrower's DIP Obligations on account of the Third Draw and (if and to the extent drawn) the Additional Junior DIP Loans, subject to any limitations set forth in the DIP Loan Documents.  The proceeds of the DIP Loans shall be used for all purposes permitted under the DIP Loan Documents and the InterimDIP Orders, in each case subject to and in accordance with the Approved Budget (subject to any Permitted Variances).

(b)     In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party was, by the Interim Order, and hereby is authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents, execute or record pledge and security agreements, mortgages, financing statements and other similar documents, if any, and, subject to the provisions of this Interimthe DIP Orders (or the Interim UST Cash Collateral Orders, as applicable) to pay all DIP Obligations as and when such amounts become due and payable, including fees, expenses and indemnities in connection with or that may be reasonably required, necessary, or desirable in connection with the DIP Financing, including, without limitation:

(i)     the execution and delivery of, and performance under, each of the DIP Loan Documents, including the DIP Term Sheet;

(ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Loan Documents, in each case, in such form as the respective DIP Secured Parties may accept and with any such other approvals as required by the DIP Loan Documents, it being understood that no further approval of this Court, unless expressly set forth herein, shall be required for any such amendments, waivers, consents or other modifications (or the payment of any fees, including attorneys', accountants', appraisers' and financial advisors' fees, and other expenses, charges, costs, indemnities and other like obligations in connection therewith) that do not shorten the scheduled maturity of the DIP Facility, increase the aggregate DIP Commitments, increase the rate of interest or fees payable thereunder, or release any DIP Liens.  Updates, modifications, and supplements to the Approved Budget in accordance with this Interim the DIP Orders and the DIP Loan Documents shall not require any further approval of or order of this Court, but, for the avoidance of doubt, shall be subject to review and approval by the DIP Secured Parties, the B-2 Lenders, the Prepetition ABL Agent, and the Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld) and shall be provided to the Creditors' Committee no less three (3) business days (or a soon as reasonably practicable) prior to the effectiveness of such update, modification or supplement;

(iii)    the non-refundable payment to any of the DIP Secured Parties of all principal, interest, and fees in connection with the DIP Facility, including any amendment fees, premiums, servicing fees, audit fees, liquidator fees, structuring fees, arrangement fees, administrative agent's, collateral agent's or security trustee's fees, upfront fees, closing fees, commitment premiums, exit fees, closing date fees, prepayment premium or fees (including the Make-Whole Amount), or agency fees, and any amounts due in respect of any indemnification

29

and expense reimbursement obligations, including, without limitation, reasonable and documented fees and out-of-pocket expenses of professionals retained by, or on behalf of, any of the DIP Secured Parties (including, without limitation, those of Quinn Emanuel Urquhart & Sullivan, LLP, Ropes & Gray LLP, Province, LLC, White & Case LLP, GrayRobinson, P.A., Holland & Knight LLP, Osler, Hoskin & Harcourt LLP, FTI Consulting, Inc., and any local legal counsel or other advisors in any foreign jurisdiction (providedbut no more than one local legal counsel or other advisor in any foreign jurisdiction for each of the Junior DIP Lender and the Postpetition B-2 Lenders), and any other advisors of the DIP Secured Parties as permitted under the DIP Loan Documents), in each case, as provided in the DIP Loan Documents (collectively, the "DIP Fees and Expenses"), without the need to file retention or fee applications; the payment of the foregoing amounts shall be irrevocable, and was and shall be deemed to have been approved upon entry of thisthe Interim Order or this Final Order, as applicable, whether any such obligations arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

3.    *DIP Obligations*.  Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents, including the DIP Term Sheet, shall constituted (and, as of the date of entry of this Final Order, shall continue to constitute) legal, valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable against each DIP Loan Party and their estates in accordance with their respective terms and this InterimFinal Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the

Bankruptcy Code upon conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").  Upon execution and delivery of the DIP Term Sheet, the DIP Obligations shallincluded (and, as of the date of entry of this Final Order, shall continue to include) all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the DIP Loan Parties to any of the DIP Secured Parties, in such capacities, in each case, under the DIP Loan Documents (includingand the DIP Term Sheet) and this Interim Orders, including all principal, interest, costs, fees, expenses, premiums, indemnities and other amounts.  The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations.  Except as (and solely to the extent) expressly provided herein, no obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Documents to the Junior DIP Agent, the Postpetition B-2 Agent, and/or the other DIP Secured Parties shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.    *Carve-Out.*

(a)    As used herein, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to

31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all ~~unpaid~~(x) fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code ("Committee Professionals," and together with the Debtor Professionals, the "Professional Persons") and (y) reasonable and documented out-of-pocket reimbursable expenses incurred by members of the Creditors' Committee, solely to the extent incurred in their capacity as such, at any time before or on the first business day following delivery by the Junior DIP Agent or the Postpetition B-2 Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first business day following delivery by the Junior DIP Agent or the Postpetition B-2 Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").[16]  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Junior DIP Agent or the Postpetition B-2 Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, the Prepetition ABL Agent and counsel thereto, counsel to the Junior DIP Agent or the

---

[16]  The Post-Carve-Out Trigger Notice Cap shall be increased to $3,500,000, without further approval or order of this Court, in the event that the U.S. Trustee appoints an official committee of equity holders (with any professionals retained by such committee constituting Professional Persons as that term is used herein).

Postpetition B-2 Agent (whichever did not deliver the Carve-Out Trigger Notice), and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined in the Junior DIP ~~Term Sheet~~Credit Agreement or the Postpetition B-2 Credit Agreement, as applicable) and acceleration of the DIP Obligations under the Junior DIP Facility or the Postpetition B-2 Facility, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

   (b) *Delivery of Weekly Fee Statements*. Not later than 7:00 p.m. New York time on the third business day of each week ~~starting with the first full calendar week following entry of this Interim Order~~, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided*~~,~~ that, within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same day received to the Junior DIP Agent ~~and,~~ the B-2 ~~Agent~~Lenders, and the Creditors' Committee).  If any Professional Person fails to deliver a Weekly Statement within three (3) calendar days after such

33

Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve-Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

(c)     <u>Carve-Out Reserves</u>.

(i)     Commencing with the week ended August 18, 2023, and on or before the Thursday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of (a) the greater of (i) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered on the immediately prior Wednesday to the Debtors, the Junior DIP Agent, and the B-2 ~~Agent~~<u>Lenders</u>, and (ii) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (b) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the week occurring after the most recent Calculation Date<u>; *provided* that the amount deposited into the Funded Reserve Account each week for each applicable Professional Person pursuant to the foregoing clauses (a)-(b) shall only ever exceed the applicable amount allocated to such Professional Person set forth in the Approved Budget (x) if such Professional Person's Estimated Fees and Expenses exceed the applicable budgeted amount allocated to that Professional Person under the Approved Budget and (y) only to the extent of such difference</u>. The Debtors shall deposit and hold such amounts in a segregated account designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust (the

"Funded Reserve Account") to pay such Allowed Professional Fees prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)     On the day on which a Carve-Out Trigger Notice is given by the Junior DIP Agent or the Postpetition B-2 Agent to the Debtors with a copy to counsel to the Creditors' Committee and counsel to the Prepetition ABL Agent (the "Termination Declaration Date"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve-Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, the Carve-Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve-Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve-Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account designated by and subject to the control of the Junior DIP Agent and the Postpetition B-2 Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve-Out Trigger Notice Cap (the "Post-Carve-Out Trigger Notice Reserve" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "Carve-Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above

35

(the "Pre-Carve-Out Amounts"), but not, for the avoidance of doubt, the Post-Carve-Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, subject to ~~pay~~ ~~the Junior DIP Agent and the Postpetition B-2 Agent for the benefit of the applicable DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties and the Prepetition UST Secured Parties in accordance with their rights and priorities as set forth in~~ ~~this Interim Order and the Interim UST Cash Collateral Order.  All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "Post-Carve-Out Amounts"), and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero,~~ priorities set forth herein and in the DIP Loan Documents, in the UST Cash Collateral Orders and in the Prepetition Intercreditor Agreement, as applicable, to pay the Junior DIP Agent and the Postpetition B-2 Agent for the benefit of the applicable DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties and the Prepetition UST Secured Parties in accordance with their rights and priorities as set forth in ~~this Interim Order and the Interim~~ the DIP Orders, the UST Cash Collateral Order s and the Prepetition Intercreditor Agreement, as applicable.  All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "Post-Carve-Out Amounts"), and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, subject to the priorities set forth herein, in the DIP Loan Documents, in the UST Cash Collateral Orders and in the Prepetition Intercreditor Agreement, as applicable, to pay the Junior DIP Agent

and the Postpetition B-2 Agent for the benefit of the applicable DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties and the Prepetition UST Secured Parties in accordance with their rights and priorities as set forth in the DIP Orders and the UST Cash Collateral Orders.  Notwithstanding anything to the contrary in the DIP Loan Documents, or this Interimthe DIP Orders, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in this paragraph 4, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth in this paragraph 4, prior to making any payments to the Junior DIP Agent, the Postpetition B-2 Agent, or the Prepetition Secured Parties and the Prepetition UST Secured Parties, as applicable.  Notwithstanding anything to the contrary in the DIP Loan Documents or this Interimthe DIP Orders, following delivery of a Carve-Out Trigger Notice, the Junior DIP Agent, the Postpetition B-2 Agent, the Prepetition UST Agent, and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve-Out Reserves, with any excess paid to the Junior DIP Agent and the Postpetition B-2 Agent for application in accordance with the DIP Loan Documents, this Interimthe DIP Orders, and the Interim UST Cash Collateral Orders.  Further, notwithstanding anything to the contrary in this Interimthe DIP Orders or the UST Cash Collateral Orders, (i) disbursements by the Debtors from the Carve-Out Reserves shall not constitute DIP Loans (as defined in the DIP Loan Documents) or increase or reduce the DIP Obligations, (ii) the failure of the Carve-Out Reserves to satisfy in full the

Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Initial DIP Budget, any subsequent Approved Budget, Carve-Out, Post-Carve-Out Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in ~~this Interim~~the DIP Order~~s~~, the UST Cash Collateral Orders, the DIP Facility, or in any Prepetition Loan Document or Prepetition UST Loan Document, the Carve-Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, (including the UST Adequate Protection Liens), the ABL 507(b) Claims (as defined below), B-2 507(b) Claims (as defined below), UST Tranche A 507(b) Claims, UST Tranche B 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations ~~or~~, the Prepetition Secured Obligations, or the Prepetition UST Secured Obligations.

(d)    Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(e)    No Direct Obligation To Pay Allowed Professional Fees.  None of the Junior DIP Agent, the Junior DIP Lender, the Postpetition B-2 Secured Parties, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this ~~Interim~~Final Order or otherwise shall be construed to obligate the Junior DIP Agent, the Junior DIP Lender, the Postpetition B-2 Secured Parties, or the Prepetition Secured Parties, in any way, to pay

compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)  <u>Payment of Carve-Out On or After the Termination Declaration Date</u>. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under ~~this Interim~~<u>the DIP</u> Orders, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

(g)  <u>Reservation of Rights</u>.  Nothing in this ~~Interim~~<u>Final</u> Order shall be construed as a waiver of any right of the DIP Secured Parties or any of the Prepetition Secured <u>Parties or Prepetition UST Secured</u> Parties to object to any fee statement, interim application, or monthly application issued or filed by any Professional Persons.

5.  *Junior DIP Superpriority Claims*.  <u>Except as provided for herein, including in paragraph 7(i) below, or in the DIP Loan Documents, P</u>~~p~~ursuant to section 364(c)(1) of the Bankruptcy Code, ~~and except as provided for herein or in the DIP Loan Documents,~~ all of the Junior DIP Obligations shall constitute allowed superpriority administrative expense claims (the "<u>Junior DIP Superpriority Claims</u>") against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties ~~(but shall be: (i) with respect to the Prepetition UST Tranche B Priority Collateral, the Prepetition UST Tranche B Joint Collateral, and the Prepetition ABL Priority Collateral, junior to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens of the Prepetition UST Secured Parties (i.e., the Prepetition UST Liens), the~~

39

Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties ~~in respect thereof of~~ (in such order of priority as set forth herein and in the Prepetition Intercreditor Agreement), the Adequate Protection Liens of the Prepetition UST Secured Parties (*i.e.*, the UST Adequate Protection Liens), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof, and the 507(b) Claims of the Prepetition UST Secured Parties (*i.e.*, the UST 507(b) Claims), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof, and (D) the Postpetition B-2 Liens (as defined below); and (ii) with respect to the Prepetition B-2 Priority Collateral, shall be junior only to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, (D) the Postpetition B-2 Liens, and (E) the B-2 Adequate Protection Liens, and otherwise shall be senior in all respects to the Prepetition ABL Secured Parties' and the Prepetition UST Secured Parties' Prepetition Liens, Adequate Protection Liens, and 507(b) Claims with respect thereto), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations except as set forth herein), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. ~~The~~; *provided* that, (i) with respect to the Prepetition UST Tranche B Priority Collateral, the Prepetition Joint Collateral, and the Prepetition ABL Priority Collateral, the Junior DIP Superpriority Claims shall be junior to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens of the Prepetition UST Secured Parties (*i.e.*, the Prepetition UST Liens), the Prepetition ABL Secured Parties and the Prepetition

B-2 Secured Parties, and the Postpetition B-2 Liens (as defined below) and the Postpetition B-2 Superpriority Claims (as defined below), in each case in respect thereof (in such order of priority as set forth herein, in the Final UST Cash Collateral Order, and in the Prepetition Intercreditor Agreement, as applicable), and (D) the Adequate Protection Liens of the Prepetition UST Secured Parties (*i.e.*, the UST Adequate Protection Liens), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof, and the 507(b) Claims of the Prepetition UST Secured Parties (*i.e.*, the UST 507(b) Claims), the Prepetition ABL Secured Parties and the Prepetition B-2 Secured Parties in respect thereof; and (ii) with respect to the Prepetition B-2 Priority Collateral, shall be junior only to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, the Postpetition B-2 Liens and the Postpetition B-2 Superpriority Claims, and (D) the B-2 Adequate Protection Liens and B-2 507(b) Claims, and otherwise shall be senior in all respects to the Prepetition ABL Secured Parties' and the Prepetition UST Secured Parties' Prepetition Liens, Adequate Protection Liens, and 507(b) Claims with respect thereto).  The Junior DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding (x) the Carve-Out Reserves and amounts held therein other than the Junior DIP Secured Parties' reversionary interest therein and (y) claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions"), but including (upon entry of the Final Order) any proceeds or property recovered as a result of any Avoidance Actions (but not the Avoidance Actions themselves), whether by judgment, settlement or otherwise (the "Avoidance Proceeds")), subject only to the Carve-Out and, the Canadian Priority Charges.  The, and the other liens and claims as applicable as set

41

forth in the immediately preceding sentence, and subject in all respects to paragraph 11 of this Final Order; *provided* that no prepayment, repayment, repurchase or exchange of borrowings under the Junior DIP Facility shall occur until all B-2 Obligations have first been indefeasibly paid in full in cash and any such prepayment, repayment, repurchase or exchange shall otherwise be consistent with the priorities for liens and claims securing the Junior DIP Facility as set forth in this Final Order, including in paragraph 7(i) below, or in the DIP Loan Documents.  The Junior DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this ~~Interim~~Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6.     *Postpetition B-2 Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, and except as provided for herein or in the DIP Loan Documents, all of the Postpetition B-2 Obligations shall constitute allowed superpriority administrative expense claims (the "Postpetition B-2 Superpriority Claims," and, together with the Junior DIP Superpriority Claims, the "DIP Superpriority Claims") against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations except to the extent set forth herein), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided* that: (i) with respect to the Prepetition UST Tranche B Priority Collateral, the Prepetition ~~UST Tranche B~~ Joint

Collateral, and the Prepetition ABL Priority Collateral, the Postpetition B-2 Superpriority Claims shall be junior, in the following order, to (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Prepetition Liens of the Prepetition UST Secured Parties (*i.e.*, the Prepetition UST Liens), and the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof of (in such order of priority as set forth herein, in the Final UST Cash Collateral Order, and in the Prepetition Intercreditor Agreement, as applicable), the Adequate Protection Liens of the Prepetition UST Secured Parties (*i.e.*, the UST Adequate Protection Liens), the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof, and the 507(b) Claims of the Prepetition UST Secured Parties (*i.e.*, the UST 507(b) Claims), the Prepetition ABL Secured Parties, and the Prepetition B-2 Secured Parties in respect thereof, and shall otherwise be senior in all respects to the Junior DIP Liens and the Junior DIP Superpriority Claims; and (ii) with respect to the Prepetition B-2 Priority Collateral, the Postpetition B-2 Superpriority Claims shall be junior only, in the following order, to (A) the Carve-Out, and (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, (D) the Postpetition B-2 Liens, and (E) the B-2 Adequate Protection Liens, and otherwise shall be senior in all respects to the Junior DIP Superpriority Claims, the Junior DIP Liens, and the Prepetition ABL Secured Parties' and the Prepetition UST Secured Parties' Prepetition Liens, Adequate Protection Liens, and 507(b) Claims with respect thereto).  The Postpetition B-2 Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding (x) the Carve-Out Reserves and amounts held therein other than the DIPB-2 Secured Parties' reversionary interest therein and (y) Avoidance Actions, but including (upon entry of the Final Order) the Avoidance Proceeds), subject only to the Carve-Out and the Canadian Priority Charges, and the other liens and claims as applicable as set forth in the

immediately preceding sentence, and subject in all respects to paragraph 11 of this Final Order. The Postpetition B-2 Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this ~~Interim~~Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

7.    *Junior DIP Liens*.    As security for the Junior DIP Obligations, effective and automatically properly perfected on the date ~~this~~the Interim Order ~~is~~was entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the Junior DIP Agent of, or over, any Collateral, without any further action by the Junior DIP Secured Parties, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "Junior DIP Liens") were, by the Interim Order,[17] and are hereby granted on a final basis to the Junior DIP Agent for the benefit of the Junior DIP Secured Parties ~~(all property identified in clauses (a) through (f) below being collectively referred to as the "Junior DIP Collateral," and, together with the Prepetition Collateral, the "Collateral")~~:

(a)    *Liens on Unencumbered Property*.    Except as provided for herein, including in paragraph 7(i) below, or in the DIP Loan Documents, ~~P~~pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in (subject and subordinate only to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties, other than Excluded Property, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, was not subject

---

[17]    For clarity, liens on Avoidance Proceeds were not granted by the Interim Order but are granted under and effective upon entry of this Final Order (pursuant to the terms set forth herein), including paragraph 11 of this Final Order.

to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and also excluding the Avoidance Actions and the Carve-Out Reserves (and any amounts held therein), but including (upon entry of the Final Order) Avoidance Proceeds (collectively, the "Unencumbered Property," and such liens, the "Junior DIP Unencumbered Property Liens")), subject in all respects to paragraph 11 of this Final Order.

(b)  *Liens on DIP Proceeds Account*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in the proceeds of the Junior DIP Facility in the DIP Proceeds Account, *pari passu with the Postpetition B-2 Liens (it being understood that the Prepetition Secured Parties have no Lien on the DIP Proceeds Account)*.

(c)  *Junior Liens Priming Certain Prepetition Secured Parties' Liens on Prepetition B-2 Priority Collateral*.  Except as provided for herein, including in paragraph 7(i) below, or in the DIP Loan Documents, Ppursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior priority priming security interest in and lien (subject and subordinate only to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, (3) the Prepetition B-2 Liens, and the Postpetition B-2 Liens, and (4) the B-2 Adequate Protection Liens, and (5) the Postpetition B-2 Liens) on the) on all Prepetition B-2 Priority Collateral) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the Prepetition B-2 Priority Collateral, regardless of where located, which security interest and lien on the Prepetition B-2 Priority Collateral shall prime and be senior to the Prepetition ABL Liens, the ABL Adequate Protection Liens, the Prepetition UST Tranche B Liens, the Prepetition UST Tranche A Liens, the UST Tranche B Adequate Protection Liens and the UST Tranche A

Adequate Protection Liens (the "Junior DIP Priming B-2 Second Liens").  For the avoidance of doubt, ~~notwithstanding~~ ~~anything herein to the contrary,~~ except as provided for herein, including in paragraph 7(i) below, or in the DIP Loan Documents, pursuant the Junior DIP Priming B-2 Second Liens shall be (A) priming and senior in all respects to the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties with respect to the Prepetition B-2 Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(d)      *Junior Liens on Prepetition ABL Priority Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior priority security interest in, and lien upon ~~(subject and subordinate in all respects to~~ all Prepetition ABL Priority Collateral (the "Junior DIP ABL Junior Liens"), which security interest and lien shall be junior to (with respect to the Prepetition ABL Priority Collateral), in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) ~~the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties (in such order of priority as set forth in the Prepetition Intercreditor Agreement)), all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the Prepetition ABL Priority Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the Prepetition ABL Priority Collateral)~~ the Prepetition ABL Liens, the ABL Adequate Protection Liens, the Prepetition B-2 Liens, the B-2 Adequate Protection Liens, the Postpetition B-2 Liens, the Prepetition UST Tranche B Liens, the UST Tranche B Adequate Protection Liens, the

Prepetition UST Tranche A Liens, and the UST Tranche A Adequate Protection Liens (the "DIP ABL Junior Liens"in accordance with the relative priorities set forth herein, in the UST Cash Collateral Orders, and in the Prepetition Intercreditor Agreement, as applicable). Notwithstanding anything herein to the contrary, the Junior DIP ABL Junior Liens shall be (A) junior in all respects to the Prepetition Liens (asin accordance with the relative priorities set forth herein, in the UST Cash Collateral Orders, and in the Prepetition Intercreditor Agreement), as applicable) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and junior to the Postpetition B-2 Liens, in each case on the Prepetition ABL Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(e)     *Junior Liens on Prepetition UST Tranche B Priority Collateral.*  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in, and lien upon, (subject only to all Prepetition UST Tranche B Priority Collateral (the "Junior DIP UST Tranche B Priority Collateral Junior Liens"), which security interest and lien shall be junior to (with respect to the Prepetition UST Tranche B Priority Collateral), in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties (in such order of priority as set forth in the Prepetition Intercreditor Agreement with respect to the Prepetition UST Tranche B Priority Collateral and the Postpetition B-2 Liens) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature,

47

scope, and type as the Prepetition UST Tranche B Priority Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the Prepetition UST Tranche B Priority Collateral) the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties, and to the Postpetition B-2 Liens (the "Junior DIP UST Tranche B Priority in accordance with the relative priorities set forth herein, in the UST Cash Collateral Junior Liens" Orders, and in the Prepetition Intercreditor Agreement, as applicable).  Notwithstanding anything herein to the contrary, the Junior DIP UST Tranche B Priority Collateral Junior Liens shall be (A) junior in all respects to the Prepetition Liens (as in accordance with the relative priorities set forth herein, in the UST Cash Collateral Orders, and in the Prepetition Intercreditor Agreement), as applicable) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and also junior to the Postpetition B-2 Liens, in each case on the Prepetition UST Tranche B Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(f)     *Junior Liens on ~~UST Tranche B~~Prepetition Joint Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in, and lien upon~~, (subject only to~~ all Prepetition Joint Collateral (the "Junior DIP Prepetition Joint Collateral Junior Liens"), which security interest and lien shall be junior to (with respect to the Prepetition Joint Collateral), in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, and (3) the Prepetition

Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties, and to the Postpetition B-2 Liens (in such order of priority as set forth in the Prepetition Intercreditor Agreement with respect to the UST Tranche B Joint Collateral)) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the UST Tranche B Joint Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the UST Tranche B Joint Collateral), the Prepetition Liens and the Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties, the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Tranche A Secured Parties, and to the Postpetition B-2 Liens (the "DIP UST Tranche B Joint Collateral Junior Liens"). Notwithstanding anything herein to the contrary, the Junior DIP UST Tranche B Prepetition Joint Collateral Junior Liens shall be (A) junior in all respects to the Prepetition Liens (as set forth in the Prepetition Intercreditor Agreement) and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition B-2 Secured Parties, and the Prepetition UST Secured Parties, and junior to the Postpetition B-2 Liens, in each case on the Prepetition UST Tranche B Joint Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(g)     *Liens Junior to Certain Other Liens.*  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected junior security interest in, and lien upon, all tangible and intangible prepetition and postpetition property of the DIP Loan Parties that, on or as of the Petition Date, is subject to Prepetition Permitted Senior

Liens, which shall be, except with respect to the Junior DIP Priming B-2 Second Liens and the Junior DIP Unencumbered Property Liens, junior and subordinate to the liens of the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties in such order of priority as set forth in the Prepetition Intercreditor Agreement with respect to the Prepetition Collateral.  For the avoidance of doubt, except as provided for herein (including in paragraph 7(i) below) or in the DIP Loan Documents, the Junior DIP Liens shall prime the Prepetition ABL Liens, the Prepetition UST Tranche B Liens, and the Prepetition UST Tranche A Liens with respect to the Prepetition B-2 Priority Collateral (and, for the avoidance of doubt, the Junior DIP Liens with respect to the Prepetition B-2 Priority Collateral shall only be junior to, in the following order, (1) the Carve-Out, (2) the Canadian Priority Charges, (3) the Postpetition B-2 Liens, (4) and the Prepetition B-2  Liens, and (5 4) the B-2 Adequate Protection Liens), and shall otherwise, with respect to each of the Prepetition ABL Priority Collateral, the Prepetition UST Tranche B Priority Collateral, and the Prepetition UST Tranche B Joint Collateral, be junior in lien priority to the Prepetition Secured Parties (including the Prepetition UST Secured Parties) (which lien priority(ies), as applicable, shall remain governed by the Prepetition Intercreditor Agreement) and, unless otherwise set forth herein, *pari passu* with, any Adequate Protection Liens (including any adequate protection liens of the Prepetition UST Secured Parties) and the Postpetition B-2 Liens.

(h)    *No Senior Liens.*    The Junior DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code unless otherwise provided in the DIP Loan Documents or this Interim Final Order, and (B) unless otherwise provided for in the DIP Loan Documents or in this Interim Final Order, any liens

or security interests arising after the Petition Date, (other than the Postpetition B-2 Liens and any Adequate Protection Liens of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties and the Prepetition UST Secured Parties, as set forth herein), including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code unless otherwise provided for in the DIP Loan Documents or in this InterimFinal Order; *provided*, that, for the avoidance of doubt, the Junior DIP Liens, unless otherwise provided herein, shall be subject and subordinate to the Prepetition Liens and the Adequate Protection Liens of the Prepetition B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties, as applicable, and the Postpetition B-2 Liens, in each case as set forth in the foregoing paragraphs and the DIP Loan Documents; *provided*, *further*, that, for the avoidance of doubt, under the DIP Facility and this InterimFinal Order, the Junior DIP Liens shall prime all otherbe *pari passu* with the Postpetition B-2 lLiens on the DIP Proceeds Account (it being understood that the Prepetition Secured Parties have no lien on the DIP Proceeds Account), and be senior to the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, the Prepetition UST Tranche B Secured Parties, and the Prepetition UST Tranche A Secured Parties (but shall be junior and subordinate to the Carve-Out, the Canadian Priority Charges, the Postpetition B-2 Liens, the Prepetition B-2 Liens, and the B-2 Adequate Protection Liens) with respect to the Prepetition B-2 Priority Collateral, as set forth herein and in the DIP Loan Documents.

(i)    *Additional Junior DIP CommitmentLoans*.  Notwithstanding anything to the contrary contained herein, or in the InterimFinal UST Cash Collateral Order or the DIP Loan

Documents to the contrary, the claims and liens in respect of the Additional Junior DIP ~~Commitment~~Loans (if any) shall not prime any prepetition or postpetition claims or liens of the Prepetition Secured Parties ~~or,~~ the Prepetition UST Secured Parties, or the Postpetition B-2 Secured Parties and shall be junior and subordinated (including in right of payment) in all respects to the prepetition and postpetition claims and liens of the Prepetition Secured Parties ~~and,~~ the Prepetition UST Secured Parties and the Postpetition B-2 Secured Parties, including in respect of any adequate protection claims, obligations, and liens granted under this ~~Interim~~Final Order and the ~~Interim~~Final UST Cash Collateral Order, including, without limitation, the Adequate Protection Liens, the UST Adequate Protection Liens, the Adequate Protection Obligations, the UST Adequate Protection Obligations, the 507(b) Claims, ~~and~~ the UST 507(b) Claims, the Postpetition B-2 Liens and the Postpetition B-2 Superpriority Claims, including, for the avoidance of doubt, to the payment and enforcement rights of each of the B-2 Secured Parties, the Prepetition ABL Secured Parties, and the Prepetition UST Secured Parties, which rights with respect to the B-2 Secured Parties shall be consistent with and no less favorable than those set forth in this ~~Interim~~Final Order and the other DIP Loan Documents.

8.    *Postpetition B-2 Liens*.  As security for the Postpetition B-2 Obligations, effective and automatically properly perfected on the date ~~this~~the Interim Order ~~is~~was entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the B-2 Agent of, or over, any Collateral, without any further action by the Postpetition B-2 Secured Parties, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "Postpetition B-2 Liens" and, together with the Junior DIP Liens, the "DIP Liens")[18] were, under the Interim Order, and are

---

[18]    A summary table of the priority of the DIP Liens is set forth in **Schedule 2** hereto.  This Schedule 2 is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict or inconsistency

hereby on a final basis granted to the Postpetition B-2 Agent for the benefit of the Postpetition B-2 Secured Parties:

(a)   *Liens on DIP Proceeds Account.*  Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in the DIP Proceeds Account that are *pari passu* with the Junior DIP Liens on the DIP Proceeds Account.  For purposes of this Final Order and the DIP Loan Documents, the proceeds of the Postpetition B-2 Facility in the DIP Proceeds Account shall constitute Prepetition B-2 Priority Collateral.

(b)   *Liens on Unencumbered Property.*  Pursuant to section 364(c)(2) of the Bankruptcy Code, a lien on and security interest in all Unencumbered Property (other than the DIP Proceeds Account), which shall be junior only to the Junior DIP Liens on such Unencumbered Property and senior to all other Liens.

(c)   (b) *Liens on Prepetition Collateral.*  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior priority priming security interest and lien (subject and subordinate only to, in the following order, (1) the Carve-Out and (2) the Canadian Priority Charges) on the Prepetition Collateral with the same priority as the Prepetition B-2 Liens on such Prepetition Collateral (as set forth in the Prepetition Intercreditor Agreement and herein), including, for the avoidance of doubt, first priority liens on all Prepetition B-2 Priority Collateral, in each case *pari passu* with the Prepetition B-2 Liens on such Prepetition Collateral, and in the case of any Prepetition B-2

for the convenience of the Court and parties in interest.  To the extent there is any conflict or inconsistency between the summary table in Schedule 2 and this Order, the Final UST Cash Collateral Order, or the Prepetition Intercreditor Agreement, regarding the priority of the DIP Liens or any other prepetition or postpetition liens of the Prepetition Secured Parties or the Prepetition UST Secured Parties, the lien priorities set forth in this Order, the Final UST Cash Collateral Order, and in the Prepetition Intercreditor Agreement, as applicable, shall control.

Priority Collateral, also senior to the Junior DIP Liens on such Prepetition Collateral, and to the

Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties and the

Prepetition UST Secured Parties on such Prepetition B-2 Priority Collateral.

        (d)    (c) *No Senior Liens.*  The Postpetition B-2 Liens shall not be (i) subject or

subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and

preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy

Code unless otherwise provided in the DIP Loan Documents or this InterimFinal Order, and (B)

unless otherwise provided for in the DIP Loan Documents or in this InterimFinal Order, any liens

or security interests arising after the Petition Date (other than the Junior DIP Liens as and to the

extent set forth herein), including, without limitation, any liens or security interests granted in

favor of any federal, state, municipal or other governmental unit (including any regulatory body),

commission, board or court for any liability of the DIP Loan Parties; or (ii) subordinated to or

made *pari passu* with any other lien or security interest under section 363 or 364 of the

Bankruptcy Code unless otherwise provided for in the DIP Loan Documents or in this

InterimFinal Order; *provided*, that, for the avoidance of doubt, the Prepetition B-2 Liens, unless

otherwise provided herein, shall be subject and subordinate to the Prepetition Liens and the

Adequate Protection Liens of the Prepetition ABL Secured Parties and the Prepetition UST

Secured Parties with respect to the Prepetition ABL Priority Collateral and the Prepetition UST

Tranche B Collateral, as applicable, to the extent set forth in the foregoing paragraphs and the

DIP Loan Documents, and senior to the Junior DIP Liens; *provided*, *further*, that, for the

avoidance of doubt, under the Postpetition B--2 Facility and this Interim Order, the Postpetition

B-2 Liens shall prime and be senior to the Prepetition Liens and Adequate Protection Liens of

the Prepetition ABL Secured Parties, the Prepetition UST Tranche B Secured Parties, the

Prepetition UST Tranche A Secured Parties, and ~~shall be senior to~~ the Junior DIP Liens (~~but~~and shall be junior and subordinate to the Carve-Out and the Canadian Priority Charges _and pari passu_ with the Prepetition B-2 Liens), in each case with respect to the Prepetition B--2 Priority Collateral~~, as set forth herein and in the DIP Loan Documents~~.

9.      *Protection of DIP Secured Parties' Rights.*

(a)      Except as and to the extent set forth in clauses (b)-(d) immediately below, to the extent any Prepetition Secured Party (or any Prepetition UST Secured Party) has possession of, or control over, any Prepetition Collateral or DIP Collateral, or has been listed as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, such Prepetition Secured Party (and any Prepetition UST Secured Party) shall be deemed to have such possession or be so listed or have such possession or control as a gratuitous bailee and/or gratuitous agent for the benefit of the Junior DIP Secured Parties, and Postpetition B-2 Secured Parties (as applicable, and, subject to the terms and provisions of this Final Order (including clauses (b)-(d) below (such clauses, the "Senior ICA Provisions"), the DIP Loan Documents and the Prepetition Intercreditor Agreement) such Prepetition Secured Party (including any such Prepetition UST Secured Party) shall comply with the instructions of the Junior DIP Agent or the Postpetition B-2 Agent, as applicable, with respect to any of the foregoing.

(b)      So long as there are any B-2 Obligations, Postpetition B-2 Superpriority Claims or B-2 507(b) Claims outstanding and until all B-2 Obligations, Postpetition B-2 Superpriority Claims and B-2 507(b) Claims have been indefeasibly paid in full in cash, the B-2 Secured Parties shall have the exclusive right to exercise remedies with respect to the Prepetition B-2 Priority Collateral and the Junior DIP Secured Parties shall not exercise any remedies with

respect to the Prepetition B-2 Priority Collateral, and, ~~as among the Prepetition Facilities,~~ the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) with respect to the Prepetition B-2 Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement as if (solely following payment in full in cash of all B-2 Obligations, Postpetition B-2 Superpriority Claims and B-2 507(b) Claims but prior to the Junior DIP Obligations being satisfied in full) the Junior DIP Agent was party thereto as a Tranche B-2 Term Agent (as defined in the Prepetition Intercreditor Agreement); *provided* that, notwithstanding the foregoing (and ~~these clauses (b) (d)~~the Senior ICA Provisions), nothing contained herein (including ~~these clauses (b) (d)~~the Senior ICA Provisions) shall be construed to prevent the Junior DIP Lender or the Junior DIP Agent from (i) filing a claim or statement of interest with respect to the outstanding obligations owed to it in the Chapter 11 Cases, (ii) taking any action (not adverse to the priority status of any other Prepetition Agent or any Prepetition Secured Party (including any Prepetition UST Secured Party) and not adverse to the priority status of any Postpetition B-2 Secured Party, in order to create, perfect, preserve or protect (but not enforce) its lien, or (iii) filing any necessary or responsive pleadings in opposition to any motion, adversary proceeding, or other pleading filed by any person objecting to or otherwise seeking disallowance of the claim or lien of any Junior DIP Lender or the Junior DIP Agent (such actions in clauses (i) through (iii), the "Permitted Actions").

(c)     So long as there are any Prepetition ABL Obligations or ABL 507(b) Claims outstanding and until all Prepetition ABL Obligations and ABL 507(b) Claims have been, solely with respect to the Prepetition ABL Priority Collateral, indefeasibly paid in full in cash, including the cash collateralization of all issued and outstanding letters of credit, the Prepetition ABL Secured Parties shall have the exclusive right to exercise remedies with respect

56

to the Prepetition ABL Priority Collateral and the Junior DIP Secured Parties shall not exercise any remedies (*provided, they*but shall be permitted to take Permitted Actions) with respect to the Prepetition ABL Priority Collateral until the Prepetition FacilitiesSecured Obligations and the Postpetition B-2 Obligations have been indefeasibly paid in full in cash (including the cash collateralization of all issued and outstanding letters of credit of the Prepetition ABL Secured Parties), and, as among the Prepetition Facilities, the enforcement rights of the Prepetition Secured Parties (including the Prepetition UST Secured Parties) and the Postpetition B-2 Secured Parties with respect to the Prepetition ABL Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement and this Final Order, as applicable.

(d)     So long as there are any Prepetition UST Tranche B Obligations or UST Tranche B 507(b) Claims outstanding and until all Prepetition UST Tranche B Obligations and UST Tranche B 507(b) Claims have been, solely with respect to the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, indefeasibly paid in full in cash, the Prepetition UST Tranche B Secured Parties shall have the exclusive right to exercise remedies with respect to the Prepetition UST Tranche B Priority Collateral and the Prepetition Joint Collateral (*provided,* that, with respect to the Prepetition Joint Collateral, the Prepetition B-2 Secured Parties, if any Prepetition B-2 Obligations or B-2 507(b) Claims remain outstanding, shall maintain their enforcement and allocation rights as set forth in the Prepetition Intercreditor Agreement) and the Junior DIP Secured Parties shall not exercise any remedies (*provided, they*but shall be permitted to take Permitted Actions) with respect to the Prepetition UST Tranche B Priority Collateral and the Prepetition Joint Collateral until the Prepetition FacilitiesSecured Obligations and the Postpetition B-2 Obligations have been indefeasibly paid in full in cash, and, as among the Prepetition Facilities, the enforcement rights of the Prepetition

Secured Parties (including the Prepetition UST Tranche B Secured Parties) and the Postpetition B-2 Secured Parties with respect to the Prepetition Joint Collateral and the Prepetition UST Tranche B Priority Collateral shall be subject to the terms of the Prepetition Intercreditor Agreement and this Final Order, as applicable.

(e)

(i)    Except as otherwise set forth in this Final Order, until the B-2 Obligations are indefeasibly paid in full in cash, any proceeds of the Prepetition B-2 Priority Collateral received by any Junior DIP Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to such Prepetition B-2 Priority Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the B-2 Agent for the benefit of the B-2 Secured Parties, subject to the terms of this Final Order, the DIP Loan Documents, and the Prepetition Intercreditor Agreement, in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.

(ii)    Except as otherwise set forth in this Final Order and until the Prepetition Secured Obligations, the Prepetition UST Secured Obligations and Postpetition B-2 Obligations are indefeasibly paid in full in cash, any proceeds of Prepetition ABL Priority Collateral, Prepetition Joint Collateral, and Prepetition UST Tranche B Priority Collateral, received by any Junior DIP Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to such DIP Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the B-2 Agent or the applicable Prepetition Agent (including the Prepetition UST Tranche B Agent) for the benefit of the applicable Prepetition Secured Parties (including Prepetition UST Tranche B Secured Parties), subject to the terms of this Final Order, the DIP Loan Documents, the UST Cash Collateral

Orders and the Prepetition Intercreditor Agreement, in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. The B-2 Agent and each Prepetition Agent (including the Prepetition UST Tranche B Agent), as applicable, is hereby authorized to make any such endorsements as agent for the Junior DIP Secured Parties. This authorization is coupled with an interest and is irrevocable.

(iii)      (e) Except as set forth in clauses (b) (d) immediately above or as otherwise set forth in this Interim Order (including paragraph 13) with respect to the Final Order and until the Prepetition Secured Obligations, the Prepetition UST Secured Obligations and Postpetition B-2 Obligations are indefeasibly paid in full in cash, any proceeds of Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, and Prepetition UST Tranche B Priority Collateral, any proceeds of Prepetition Collateral received by any Prepetition Junior DIP Secured Party (including any Prepetition UST Secured Party) on account of any Additional Junior DIP Loans, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition such DIP Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the Junior DIP Agent B-2 Agent or the applicable Prepetition Agent (including the Prepetition UST Tranche B Agent) for the benefit of the Junior DIP applicable Prepetition Secured Parties (including the Prepetition UST Tranche B Secured Parties), subject to the terms of this Final Order, the DIP Loan Documents, the UST Cash Collateral Orders and the Prepetition Intercreditor Agreement, in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. The Junior DIP Agent B-2 Agent and each Prepetition Agent (including the Prepetition UST Tranche B Agent), as applicable, is hereby authorized to make any such endorsements as agent for the applicable Prepetition Junior DIP Secured Parties

59

(including the appliable Prepetition UST Secured Parties).  This authorization is coupled with an interest and is irrevocable.

(f)     The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except (i) as otherwise permitted by the DIP Loan Documents (including the Junior DIP Term SheetCredit Agreement and the Postpetition B-2 Credit Agreement) or (ii) in the case of any Prepetition ABL Priority Collateral, UST Tranche B Priority Collateral, and UST Tranche BPrepetition Joint Collateral, pursuant to an order of the Court.

(g)     Subject to the Senior ICA Provisions, Uupon the occurrence and during the continuation of an Event of Default (as defined in the Junior DIP Credit Agreement) that has not been waived by the Junior DIP Lender under the DIP Term Sheet (orapplicable DIP Loan Documents) and following delivery of written notice (a "Termination Notice") (which may be by e-mail) on not less than five (5) calendar days' notice (such five (5) calendar day period, the "Junior DIP Agent Remedies Notice Period") to lead restructuring counsel to the Debtors, lead restructuring counsel to the Postpetition B-2 Agent, lead restructuring counsel to each of the Prepetition Agents, lead restructuring counsel to the Creditors' Committee, counsel to the Prepetition UST Secured Parties, and the U.S. Trustee (the "Remedies Notice Parties"), the Junior DIP Agent may (and any automatic stay otherwise applicable to the Junior DIP Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this InterimFinal Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit the Junior DIP Agent to take any or all of the following actions, at the same time or different times, unless the Court orders otherwise (provided, that, during the Junior DIP Agent Remedies

Notice Period, the Debtors, the Creditors' Committee and/or any party in interest shall be entitled to seek an emergency hearing with the Court and the rights of the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties and the Prepetition Secured Parties (including the Prepetition UST Secured Parties) are fully preserved) (*provided*, *further*, that, if a request for such hearing is made prior to the end of the Junior DIP Agent Remedies Notice Period, then the Junior DIP Agent Remedies Notice Period shall be continued until the Court hears at its earliest availability and rules with respect thereto): (a) immediately terminate and/or revoke the Debtors' right under this ~~Interim~~Final Order and any other DIP Loan Documents to use any Cash Collateral (subject to the Carve-Out and related provisions and the Canadian Priority Charges), (b) terminate the Junior DIP Facility and any DIP Loan Document as to any future liability or obligation of the Junior DIP Secured Parties but without affecting any of the Junior DIP Obligations or the Junior DIP Liens securing such Junior DIP Obligations; (c) declare all Junior DIP Obligations to be immediately due and payable; (d) deliver a Carve-Out Trigger Notice; and (e) invoke the right to charge interest at the default rate under the DIP Loan Documents.  Upon delivery of such Termination Notice by the Junior DIP Agent, without further notice or order of the Court, subject only to the last sentence of paragraph 9(~~g~~h), the Junior DIP Secured Parties', the Postpetition B-2 Secured Parties' and the Prepetition Secured Parties' consent to use Cash Collateral and the Debtors' ability to ~~incur~~borrow Additional Junior DIP ~~Obligations~~Loans hereunder will automatically terminate and the Junior DIP Secured Parties will have no obligation to provide any Junior DIP Loans or other financial accommodations.  As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

(h)     Immediately following the occurrence of an Event of Default and the delivery of the Termination Notice, subject to the Junior DIP Agent Remedies Notice Period, the

Junior DIP Secured Parties shall be authorized to, subject to the Prepetition Intercreditor Agreement, the terms and provisions set forth in this ~~Interim~~Final Order, including the Senior ICA Provisions, and the Carve-Out and related provisions and the Canadian Priority Charges: (a) freeze monies or balances in the Debtors' accounts (unless such monies constitute Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral); (b) immediately set-off any and all amounts in accounts maintained by the Debtors with, or subject to the control of, the Junior DIP Agent or the Junior DIP Secured Parties against the Junior DIP Obligations (unless such amounts constitute Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), (c) enforce any and all rights against the ~~Junior~~ DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), including, without limitation, foreclosure on all or any portion of the ~~Junior~~ DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), occupying the Debtors' premises, sale or disposition of the ~~Junior~~ DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral); and (d) take any other actions or exercise any other rights or remedies permitted under this ~~Interim~~Final Order, the DIP Loan Documents (including the Junior DIP ~~Term Sheet~~Credit Agreement) or applicable law (other than with respect to Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral).  If the Junior DIP Secured Parties are not prohibited by the

Court from taking any enforcement action with respect to the ~~Junior~~ DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), the Debtors shall cooperate with the Junior DIP Secured Parties in their efforts to enforce their security interest in the ~~Junior~~ DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such Junior DIP Secured Parties from enforcing their security interests in the ~~Junior~~ DIP Collateral, subject to the terms and priorities set forth in this Final Order (including paragraph 7(i) below), the UST Final Cash Collateral Order, the DIP Loan Documents and the Prepetition Intercreditor Agreement, as applicable. During the Junior DIP Agent Remedies Notice Period, the Debtors may use the proceeds of the Junior DIP Facility to the extent drawn prior to the occurrence of an Event of Default (as defined in the Junior DIP Credit Agreement) and Cash Collateral to make payments, in each case, solely in accordance with the Approved Budget and the terms of the DIP Loan Documents and to the extent necessary to avoid immediate and irreparable harm to the Collateral and protection and preservation thereof.

(i)    Upon the occurrence and during the continuation of an Event of Default (as defined in the Postpetition B-2 Credit Agreement) that has not been waived by the B-2 Lenders under the ~~DIP Term Sheet (or~~Postpetition B-2 Credit Agreement (or any other applicable DIP Loan Document~~s~~) and following delivery of a Termination Notice (which may be by e-mail) on not less than five (5) calendar days' notice (such five (5) calendar day period, the "B-2 Agent Remedies Notice Period") to the Remedies Notice Parties, and the Junior DIP Agent~~,~~

(and counsel thereto), the B-2 Agent may (and any automatic stay otherwise applicable to the ~~Junior DIP~~B-2 Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this ~~Interim~~Final Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit the B-2 Agent to take any or all of the following actions, at the same time or different times, unless the Court orders otherwise (*provided*, that, during the B-2 Agent Remedies Notice Period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court and the rights of the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties and the Prepetition Secured Parties (including the Prepetition UST Secured Parties) are fully preserved) (*provided*, *further*, that, if a request for such hearing is made prior to the end of the B-2 Agent Remedies Notice Period, then the B-2 Agent Remedies Notice Period shall be continued until the Court hears at its earliest availability and rules with respect thereto): (a) immediately terminate and/or revoke the Debtors' right under this ~~Interim~~Final Order and any other DIP Loan Documents to use any Cash Collateral (subject to the Carve-Out and related provisions and the Canadian Priority Charges), (b) terminate the Postpetition B-2 Facility and any DIP Loan Document as to any future liability or obligation of the Postpetition B-2 Secured Parties but without affecting any of the Postpetition B-2 Obligations or the Postpetition B-2 Liens securing such B-2 Obligations; (c) declare all Postpetition B-2 Obligations to be immediately due and payable; (d) deliver a Carve-Out Trigger Notice; and (e) invoke the right to charge interest at the default rate under the DIP Loan Documents.  Upon delivery of such Termination Notice by the B-2 Agent, without further notice or order of the Court, subject only to the last sentence of paragraph 9(j), the ~~Junior DIP Secured Parties', the Postpetition B-2 Secured Parties' and the Prepetition~~B-2 Secured Parties' consent to

use Cash Collateral and the Debtors' ability to incur additional Postpetition B-2 Obligations hereunder will automatically terminate and the B-2 Secured Parties will have no obligation to provide any Postpetition B-2 Term Loans or other financial accommodations.  As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

(j)    Immediately following the occurrence of an Event of Default (as defined in the Postpetition B-2 Credit Agreement) and the delivery of the Termination Notice, subject to the B-2 Agent Remedies Notice Period, the B-2 Secured Parties shall be authorized to, subject to the Prepetition Intercreditor Agreement, the terms and provisions set forth in this ~~Interim~~Final Order, and the Carve-Out and related provisions and the Canadian Priority Charges: (a) freeze monies or balances in the Debtors' accounts (unless such monies constitute Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral); (b) immediately set-off any and all amounts in accounts maintained by the Debtors with, or subject to the control of, the B-2 Agent or the B-2 Secured Parties against the B-2 Obligations (unless such amounts constitute Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), (c) enforce any and all rights against the Prepetition Collateral (other than Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), including, without limitation, foreclosure on all or any portion of the Prepetition Collateral (other than Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), occupying the Debtors' premises, sale or disposition of the Prepetition Collateral (other than Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral);

and (d) take any other actions or exercise any other rights or remedies permitted under this ~~Interim~~Final Order, the DIP Loan Documents (including the ~~DIP Term Sheet~~Postpetition B-2 Credit Agreement) or applicable law (other than with respect to Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral).   If the B-2 Secured Parties are not prohibited by the Court from taking any enforcement action with respect to the Prepetition Collateral (other than Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), the Debtors shall cooperate with the B-2 Secured Parties in their efforts to enforce their security interest in the Prepetition Collateral (other than Prepetition ABL Priority Collateral, ~~UST Tranche B~~Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such B-2 Secured Parties from enforcing their security interests in the Prepetition Collateral.   During the ~~Junior DIP~~B-2 Agent Remedies Notice Period, the Debtors may use the proceeds of the ~~Junior DIP~~Postpetition B-2 Facility to the extent drawn prior to the occurrence of an Event of Default and Cash Collateral to make payments, in each case, solely in accordance with the Approved Budget and the terms of the DIP Loan Documents and to the extent necessary to avoid immediate and irreparable harm to the Prepetition Collateral and protection and preservation thereof.

(k)    Upon the occurrence and continuance of any of the below events, any such event being deemed an Event of Default, the Prepetition ABL Agent, on not less than five (5) calendar days' notice to the Junior DIP Secured Parties (and their counsel), the Postpetition B-2 Secured Parties (and their counsel), and the Remedies Notice Parties (such five (5) calendar day period, the "ABL Remedies Notice Period"), and unless the Court orders otherwise (*provided*,

that, during the ABL Remedies Notice Period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court), may terminate its and the Prepetition ABL Secured Parties' consent to the Debtors' use of Cash Collateral constituting Prepetition ABL Priority Collateral (the date of such termination, the "Cash Collateral Termination Date"): (i) the DIP Obligations have been accelerated in accordance with the terms of the DIP Loan Documents; (ii) the filing of any motion or pleading by the Debtors, or the entry of an order on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify the Interim Order orthis Final Order in a manner adverse to the Prepetition ABL Secured Parties without the consent of the Prepetition ABL Secured Parties; (iii) the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors; (iv) the Debtors shall attempt to invalidate, reduce or otherwise impair the Prepetition ABL Obligations; (v) the dismissal of any of the Chapter 11 Cases; (vi) the effective date of any plan of reorganization; (vii) the conversion of any of the Chapter 11 Cases to a case under chapter 7; (viii) the delivery of a Carve-Out Trigger Notice as provided in this InterimFinal Order; or (ix) the failure of the Debtors to make any payments as and when required under paragraph 13(c) and paragraph 14(a)(iii) of this InterimFinal Order; (x) the Final Order (in form and substance reasonably acceptable to the Prepetition ABL Agent) shall not have been entered by the Court within forty-five (45) days of the Petition Date; (xi) the Prepetition ABLPrepetition ABL Obligations shall not have been fully repaid or cash collateralized, as applicable, in accordance with the Prepetition ABL Loan Documents by the date that is four (4) months after entry of the Interim Order; (xiii) the Debtors shall materially breach any of the other provisions of paragraph 13 of this InterimFinal Order; (xiiii) any Approved Budget shall be updated, supplemented, replaced, or otherwise modified without the prior consent of the Prepetition ABL

Agent; or (xiv xiii) at any time on or after the date that is four (4) weeks after the entry of this the Interim Order, the Debtors shall breach the receipts variance covenant set forth on Exhibit 2 attached hereto filed at Docket No. 330.

(l)   Immediately upon the occurrence of the Cash Collateral Termination Date, the Prepetition ABL Secured Parties shall be authorized, subject to the Prepetition Intercreditor Agreement and, the terms and provisions set forth in this Final Order, and the Carve-Out and the Canadian Priority Charges, to: (a) freeze monies or balances in the Debtors' accounts which constitute proceeds of ABL Priority Collateral; (b) immediately set-off any and all amounts in accounts maintained by the Debtors to the extent such amounts constitute proceeds of ABL Priority Collateral; (c) enforce any and all rights against the DIP Collateral that constitutes proceeds of ABL Priority Collateral, including, without limitation, foreclosure on all or any portion of the DIP Collateral constituting ABL Priority Collateral and occupying the Debtors' premises; and (d) take any other actions or exercise any other rights or remedies permitted under this Interim Final Order, the Prepetition ABL Loan Documents or applicable law, subject to the Prepetition Intercreditor Agreement.  If the Prepetition ABL Secured Parties are permitted by the Court to take any enforcement action with respect to the ABL Priority Collateral, the Debtors shall cooperate with the Prepetition ABL Secured Parties in their efforts to enforce their security interest in the ABL Priority Collateral, and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such Prepetition ABL Secured Parties from enforcing their security interests in the ABL Priority Collateral.

(m)   No rights, protections or remedies of the Junior DIP Secured Parties, the Prepetition Secured Parties, or the Prepetition UST Secured Parties granted by this Interim Final Order, the Interim Final UST Cash Collateral Order, or the DIP Loan Documents shall be limited,

68

modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

10.     *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Carve-Out and Canadian Priority Charges, no costs or expenses of administration of these cases or any Successor Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral ~~and,~~ ~~upon entry of a final order providing for such relief,~~the Prepetition B~~-~~2 Collateral, or the Prepetition ABL Collateral (in each case, including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Junior DIP Agent, the B-2 Agent, or the Prepetition ABL Agent, as applicable, and no consent shall be implied from any action, inaction or acquiescence by any of the DIP Secured Parties, the B-2 Secured Parties, or Prepetition ABL Secured Parties, and nothing contained in ~~this Interim~~the DIP Order~~s~~ shall be deemed to be a consent by the DIP Secured Parties, the B-2 Secured Parties, or Prepetition ABL Secured Parties to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.  Further, ~~effective upon entry of a final order providing for such relief,~~ in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the DIP Secured Parties (excluding the Junior DIP Secured Parties) or Prepetition Secured Parties.

11.     *No Marshaling.*  In no event shall the DIP Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or

the DIP Obligations. ~~Effective upon entry of a final order providing for such relief, in~~In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or the Prepetition Secured Obligations~~.~~; *provided, however,* that the DIP Secured Parties and the Prepetition Secured Parties shall use commercially reasonable efforts to first collect from Collateral other than Avoidance Proceeds if necessary to satisfy the DIP Obligations and Adequate Protection Obligations, as applicable.

12.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Secured Parties or Prepetition Secured Parties pursuant to the provisions of this ~~Interim~~Final Order, the DIP Loan Documents or any subsequent order of the Court were, under the Interim Order, and shall be on a final basis, subject only to the reservation of rights set out in paragraph ~~23~~19 of this ~~Interim~~Final Order with respect to the Prepetition Secured Parties, ~~be~~ irrevocable~~,~~ and received free and clear of any claim, charge, assessment or other liability.

13.     *Use of Cash Collateral.*

        (a)     *Authorization to Use Cash Collateral.* The Debtors are hereby authorized, solely on the terms and conditions of this ~~Interim~~Final Order and (as applicable) the ~~Interim~~Final UST Cash Collateral Order, to use all Cash Collateral in accordance with the DIP Loan Documents and Approved Budget (subject to Permitted Variances).

        (b)     *Proceeds of DIP Loans.*  All proceeds of the DIP Loans shall be funded and held in the DIP Proceeds Account ~~(as defined in the DIP Loan Documents)~~ in accordance with the terms of the DIP Loan Documents, which DIP Proceeds Account shall be maintained as a segregated account by the Borrower as set forth in the DIP Loan Documents.  For the avoidance of doubt, none of the DIP Proceeds Account, any funds therein constituting DIP Loans, or any proceeds of the DIP Loans (exclusive, for the avoidance of doubt, of any proceeds

constituting Prepetition ABL Priority Collateral) shall constitute Prepetition ABL Priority Collateral or be subject to any terms or provisions in ~~this Interim~~the DIP Order~~s~~ governing ABL Cash Collateral.

      (c)    *Procedures for Use of ABL Cash Collateral.*

      (i)    *Delivery of ABL Cash Collateral to Prepetition ABL Agent.*
Beginning on the first business day after the date that ~~this~~the Interim Order ~~is~~was entered, and on each business day thereafter following receipt of any Cash Collateral constituting Prepetition ABL Priority Collateral ("ABL Cash Collateral"), the Debtors shall, unless previously paid, (x) wire 80% of the amount of ABL Cash Collateral received on or after August 3, 2023 into the applicable Debtor's blocked account ending *8700 maintained at Citizens Bank on the first business day following receipt of the funds to the extent not already remitted (or such other account as the Prepetition ABL Agent and the Debtors may agree in writing from time to time), to the extent not wired prior to the Petition Date ~~(it being acknowledged that the Prepetition ABL Agent received two such wires prior to the Petition Date in respect of such percentage of the ABL Cash Collateral received on August 3, 2023 and a portion of the ABL Cash Collateral received on August 4, 2023, as well as received an additional wire of $16.5 million constituting ABL Cash Collateral following the Court's entry of the interim cash collateral order entered at Docket No. 181) (which such prior payments, for the avoidance of doubt, are approved and shall not be invalidated by this Interim Order)~~, or (y) otherwise deliver 80% of the ABL Cash Collateral received on or after August 3, 2023 to the Prepetition ABL Agent in a manner satisfactory to the Prepetition ABL Agent (such remittance, deposit, or delivery, each a "Daily Delivery Event").  Commencing on the third business day of the week following entry of ~~this~~the Interim Order (and on the third business day of each week thereafter) (each, an "Eligibility

Reporting Date"), the Debtors shall deliver to the Prepetition ABL Agent information on collections from the prior week (as well as, if applicable, information regarding postpetition collections from prior thereto if either (a) such information has yet to be reported or (b) such information reflects a change from prior reporting (each of (a) and (b), as applicable, the "Supplemental Reporting")) in form and detail reasonably acceptable to the Prepetition ABL Agent.  On the business day after each Eligibility Reporting Date, the Debtors shall (x) to the extent the cumulative Daily Delivery Events since August 3, 2023 (taking Supplemental Reporting into account, if applicable) resulted in delivery of less than 80% of the amount of ABL Cash Collateral received, remit to the Prepetition ABL Agent ABL Cash Collateral in an amount necessary to equal 80% of the amount of ABL Cash Collateral received on or after August 3, 2023 or (y) to the extent the cumulative Daily Delivery Events since August 3, 2023 (taking Supplemental Reporting into account, if applicable) resulted in delivery in excess of 80% of the amount of ABL Cash Collateral received, deduct from that day's Daily Delivery Event ABL Cash Collateral in an amount necessary to equal 80% of the amount of ABL Cash Collateral received on or after August 3, 2023.  The portion of such ABL Cash Collateral to remain with the Debtors in accordance with this paragraph 13(c)(i) is referred to herein as the "Available ABL Cash Collateral."  The Debtors ~~shall~~have been permitted, under the Interim Order, and shall continue to be permitted on a final basis to access and utilize all Available ABL Cash Collateral in accordance with the Approved Budget and the terms and provisions of ~~this Interim~~the DIP Orders.  For the avoidance of doubt, no portion of the Existing ABL Cash Collateral Deposits shall be required to be remitted to the Debtors pursuant to this paragraph 13(c)(i), nor shall any portion of the Existing ABL Cash Collateral Deposits constitute Available ABL Cash Collateral.

   (ii) *ABL Cash Collateral in Prepetition ABL Agent's Possession.*  The

Prepetition ABL Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any other Prepetition ABL Secured Party's possession or control which constitute Prepetition ABL Priority Collateral or proceeds thereof.

(d)     *Application of Cash Collateral to Prepetition ABL Obligations*. Notwithstanding anything to the contrary in this ~~Interim~~Final Order, except with respect to the Available ABL Cash Collateral as set forth in paragraph 13(c)(i), the Prepetition ABL Agent is authorized at any time, and from time to time, to apply all or any portion of the ABL Cash Collateral (including, without limitation, the Existing ABL Cash Collateral Deposits) now or hereafter in the Prepetition ABL Agent's or any other Prepetition ABL Secured Party's possession or control to the payment or cash collateralization, as applicable, of Prepetition ABL Obligations (including, without limitation, any accrued and unpaid ABL Adequate Protection Fees and Expenses in accordance with paragraph 18, without limiting the obligation of the DIP Loan Parties under paragraph 18 to pay such amounts directly) in accordance with the Prepetition ABL Loan Documents, and no other party in interest shall have any right to use or direct the use of such ABL Cash Collateral, except that the Debtors shall have the right to use and direct the use of Available ABL Cash Collateral.  All such applications to Prepetition ABL Obligations shall be final, subject only to the right of parties in interest, including the Debtors, to seek a determination in accordance with paragraph 19 of this ~~Interim~~Final Order that such applications resulted in the payment of any unsecured prepetition claim of the Prepetition ABL Secured Parties.

(e)     *Accounts Collection Practices.*  The Debtors shall continue to maintain at all times reasonably appropriate staffing, staffing levels, and other resources with respect to

Accounts billing and collections in order to maximize the Debtors' recovery of proceeds with respect to such Accounts.  The Debtors shall also provide the Prepetition ABL Agent with reasonable access to all Accounts billing and collections systems and associated staff members.

14.    *Adequate Protection of Prepetition Secured Parties*.  Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) for the aggregate Diminution in Value and as an inducement to the Prepetition Secured Parties to consent to the priming of certain of the Prepetition Liens and the use of their Cash Collateral, the Prepetition Secured Parties were, by the Interim Order, and hereby are granted on a final basis the following Adequate Protection (collectively, the "Adequate Protection Obligations"):

(a)    *Adequate Protection of Prepetition ABL Secured Parties*.

(i)    *ABL Adequate Protection Liens*.  The Prepetition ABL Agent was, by the Interim Order, and is hereby granted on a final basis, for the benefit of the Prepetition ABL Secured Parties, effective and perfected upon the date of thisthe entry of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition ABL Secured Parties' Diminution in Value upon all of the Prepetition Collateral (the "ABL Adequate Protection Liens"): (i) in the case of the Prepetition ABL Priority Collateral, senior to all other liens, subject and subordinate to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges; (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition B-2 Liens, (D) the B-2 Adequate Protection Liens, and (E) the DIP Liens; (iii) in the case of the Prepetition UST

74

Tranche B Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition UST Tranche B Liens, (D) the UST Tranche B Adequate Protection Liens, (E) the Prepetition B-2 Liens and the Postpetition B-2 Liens, and (F) the B-2 Adequate Protection Liens; (iv) in the case of the ~~UST Tranche B~~Prepetition Joint Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Prepetition UST Tranche B Liens, the Prepetition B-2 Liens, the Postpetition B-2 Liens, the UST Tranche B Adequate Protection Liens, and the B-2 Adequate Protection Liens; and (iv) in the case of the Unencumbered Property, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the Junior DIP Unencumbered Property Liens.

(ii)    *ABL Section 507(b) Claims*.  The Prepetition ABL Secured Parties were, by the Interim Order, and are hereby granted on a final basis allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition ABL Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "ABL 507(b) Claims"), which ABL 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but including, without limitation, Avoidance Proceeds), subject in all respects to paragraph 11 of this Final Order.  Except as otherwise provided herein, the ABL 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that the ABL 507(b)

Claims shall be junior in all respects to (i) the Carve-Out, (ii) the Canadian Priority Charges, and (iii) the applicable senior DIP Liens, Prepetition Liens and Adequate Protection Liens (as set forth in this ~~Interim~~Final Order).

   (iii) *Prepetition ABL Secured Parties' Interest, Fees and Expenses*. As further adequate protection, subject to the Carve-Out and the Canadian Priority Charges, the DIP Loan Parties shall continue to make current cash payments on the first calendar day of each month of (x) interest at the Default Rate (as defined in the Prepetition ABL Credit Agreement), (y) fees with respect to Letters of Credit pursuant to Section 3.2.2 of the Prepetition ABL Credit Agreement (including any such fees that accrue at the default rate as set forth therein), and (z) other fees, in each case pursuant to, due, and payable under the terms of the Prepetition ABL Loan Documents, and shall currently pay in cash, subject to the review procedures set forth in paragraph 18 of this ~~Interim~~Final Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition ABL Secured Parties' legal and financial advisors, including, without limitation, those of Choate, Hall & Stewart LLP, Richards, Layton & Finger, PA, AlixPartners, LLP, and any local legal counsel or other advisors, consultants, and other professionals reimbursable under the Prepetition ABL Loan Documents (collectively, the "ABL Adequate Protection Fees and Expenses" and, together with the ABL Adequate Protection Liens and ABL 507(b) Claims, the "ABL Adequate Protection Obligations").; *provided, however,* that the ABL Adequate Protection Fees and Expenses shall be limited to fees and expenses incurred by such professionals on behalf of the Prepetition ABL Secured Parties with respect to the Prepetition ABL Obligations and the ABL Adequate Protection Obligations.

   (iv) *Additional Rights and Protections*. The Debtors shall continue to

deliver to the Prepetition ABL Agent and the Creditors' Committee (substantially concurrent with delivery to the Junior DIP Agent) all financial statements, reports, certificates and related items that are required to be delivered to the Junior DIP Agent pursuant to the DIP Term Sheet and other applicable DIP Loan Documents.  On the third (3rd) business day of each week (commencing on the first full calendar week after entry of thisthe Interim Order), the Debtors shall deliver to the Prepetition ABL Agent and the Creditors' Committee a Borrowing Base Certificate (as defined in the Prepetition ABL Credit Agreement) as required pursuant to Section 8.1(ii) of the Prepetition ABL Credit Agreement, which shall be accompanied by customary backup reporting in form and detail reasonably acceptable to the Prepetition ABL Agent, including, without limitation, Account agings, and a roll-forward of Prepetition ABL Priority Collateral; *provided* that the first Borrowing Base Certificate of each month following entry of thisthe Interim Order shall further include a line item for Ineligible Accounts and a breakdown of Ineligible Accounts as part of the customary backup reporting provided.  The Debtors shall make the members of their senior management and its professional advisors available for update calls at least one time per calendar week with the prepetition ABL Agent and its, the Creditors' Committee and their respective professional advisors, at times reasonably acceptable to the Prepetition ABL Agent and the Creditors' Committee to discuss the cases, the then-current Approved Budget, the Budget Variance Reports, the Liquidity Reports (each as defined in the Junior DIP Term SheetCredit Agreement), other reporting delivered pursuant to the DIP Loan Documents, union matters, the status of any monetization strategies being pursued by the Debtors, including pursuant to the Bidding Procedures Order (as defined in the Junior DIP Term SheetCredit Agreement), and any other matters (including business, operational and due diligence matters) reasonably requested by the Prepetition ABL Agent or the Creditors'

Committee.

    (b)    *Adequate Protection of Prepetition B-2 Secured Parties.*

    (i)    *B-2 Adequate Protection Liens.*  The Prepetition B-2 Agent was, by the Interim Order, and is hereby granted on a final basis, for the benefit of the Prepetition B-2 Secured Parties, effective and perfected upon the date of ~~this~~the entry of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition B-2 Secured Parties' Diminution in Value upon all ~~of the Prepetition~~DIP Collateral (the "B-2 Adequate Protection Liens" and, together with the ABL Adequate Protection Liens, the "Adequate Protection Liens"):~~13~~19 (i) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out and (B) the Canadian Priority Charges; (ii) in the case of the Prepetition UST Tranche B Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition UST Tranche B Liens, and (D) the UST Tranche B Adequate Protection Liens; (iii) in the case of the Prepetition Joint Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, and (C) the P~~reost~~petition ~~UST Tranche~~ B-2 Liens and the Prepetition B-2 Liens, and *pari passu* with the Prepetition UST Tranche B Liens; (iv) in the case of the Prepetition ABL Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition ABL Liens, and (D) the ABL Adequate Protection Liens; and (v) in the case of the Unencumbered Property, subject and subordinate to, in the following order, (A)

---

~~13~~19 For the avoidance of doubt, any reference herein to the "Adequate Protection Liens of the Prepetition UST Secured Parties" shall refer to the UST Adequate Protection Liens (as defined and set forth in the contemporaneously entered ~~Interim~~Final UST Cash Collateral Order).

the Carve-Out, (B) the Canadian Priority Charges and (C) the Junior DIP Unencumbered Property Liens.

(ii)     *B-2 Section 507(b) Claims*.  The Prepetition B-2 Secured Parties were, by the Interim Order, and are hereby granted on a final basis allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition B-2 Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "B-2 507(b) Claims" and, together with the ABL 507(b) Claims, the "507(b) Claims"), which B-2 507(b) Claims shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions, but including, without limitation, Avoidance Proceeds), subject in all respects to paragraph 11 of this Final Order.  Except as otherwise provided herein, the B-2 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that the B-2 507(b) Claims shall be junior to (i) the Carve-Out, (ii) the Canadian Priority Charges, and (iii) the B-2 Obligations, and (iv) the applicable senior DIP Liens, Prepetition Liens and Adequate Protection Liens and claims, including 507(b) Claims (as set forth in this InterimFinal Order and the Prepetition Intercreditor Agreement).

(iii)     *Prepetition B-2 Secured Parties' Interest, Fees and Expenses*.  As further adequate protection, the DIP Loan Parties shall continue to make current cash payments of (x) interest on the last business day of each month at the rate accruing since the Petition Date (which is and shall be deemed for all purposes to be the default rate set forth in Section 2.07 of

the Prepetition B-2 Credit Agreement) with respect to ABR Loans (as defined in the Prepetition B-2 Credit Agreement)) and (y) other fees, in each case pursuant to, due, and payable under the terms of the Prepetition B-2 Loan Documents, and shall currently pay in cash, subject to the review procedures set forth in paragraph 18 of this ~~Interim~~Final Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the current and former (former professionals limited to those professionals set forth at (iv) below) Prepetition B-2 Secured Parties' legal and financial advisors, including, without limitation, those of (i) White & Case LLP ~~and~~, GrayRobinson, P.A., and Osler, Hoskin & Harcourt LLP (as counsel to the B-2 Lenders), (ii) FTI Consulting, Inc. (as financial advisor to the B-2 Lenders), (iii) Holland & Knight LLP, (as counsel to the Prepetition B-2 Agent), and (~~iii~~iv) Cousins Law, and Milbank LLP ~~and FTI Consulting~~ (as Canadian counsel, and lead restructuring counsel ~~and financial advisor~~, respectively, to certain former Prepetition B-2 Lenders) (*provided,* that, the fees and expenses of the professionals set forth in this clause (~~iii~~iv) shall be reimbursed only as incurred through August 15, 2023), and with respect to clauses (i) and (ii), any local legal counsel or other advisors in any foreign jurisdiction (*~~provided,~~*but no more than one local legal counsel or other advisor in any foreign jurisdiction) (collectively, ~~the "B-2 Adequate Protection Fees and Expenses" and, together~~ with the B-2 Adequate Protection Liens and B-2 507(b) Claims, the "B-2 Adequate Protection Obligations")~~.~~; *provided, however,* that the B-2 Adequate Protection Fees and Expenses shall be limited to fees and expenses incurred by such professionals on behalf of the Prepetition B-2 Secured Parties in connection with the Prepetition B-2 Secured Parties in their role as such.

(c)    *Adequate Protection of Prepetition UST Secured Parties.*  The Adequate Protection in favor of the Prepetition UST Secured Parties is set forth in the Interim UST Cash

Collateral Order.

15.    *Maintenance of Collateral*.  The DIP Loan Parties shall continue to maintain and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Loan Documents and the DIP Loan Documents, as applicable.

16.    *Authorization to Record DIP Liens and Adequate Protection Liens.*

(a)    Without in any way limiting the validity of the automatic perfection of the DIP Liens and the Adequate Protection Liens under the terms of this ~~Interim~~Final Order and the ~~Interim~~Final UST Cash Collateral Order, the DIP Secured Parties and the Prepetition Secured Parties were, by the Interim Order, and are hereby authorized on a final basis, but not required, to execute in the name of the DIP Loan Parties or the Prepetition Loan Parties (as applicable), as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction, or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests granted to them hereunder (the "Perfection Actions").  All such Perfection Actions shall be deemed to have been taken on the date of entry of ~~this~~the Interim Order.  The automatic stay ~~shall be~~was, by the Interim Order, and is on a final basis hereby modified to the extent necessary to permit the DIP Secured Parties and each Prepetition Secured Parties to take any Perfection Action.  For the avoidance of doubt, the DIP Liens and the Adequate Protection Liens were, by the Interim Order, and shall be deemed on a final basis valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of ~~this~~the Interim Order,

whether or not the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties, or the Prepetition Secured Parties take such Perfection Actions, in each case, subject to the priorities set forth in this Final Order, the UST Cash Collateral Orders, and the Prepetition Intercreditor Agreement, as applicable.

(b)    A certified copy of this ~~Interim~~Final Order may, in the discretion of the Junior DIP Agent, the Postpetition B-2 Agent and each Prepetition Agent, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing and recording offices are hereby authorized to accept a certified copy of this ~~Interim~~Final Order for filing and/or recording, as applicable.

17.    *Preservation of Rights Granted Under this ~~Interim~~Final Order.*

(a)    Other than the claims and liens expressly granted or permitted by this ~~Interim~~Final Order, including the Carve-Out and the Canadian Priority Charges, no claim or lien having a priority superior to or *pari passu* with those granted by this ~~Interim~~Final Order shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in or permitted under this ~~Interim~~Final Order, including the provisions of paragraph 19, the DIP Liens and the Adequate Protection Liens shall not be: (i) junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) except as provided in ~~this Interim~~the DIP Order~~s~~ or the DIP Loan Documents, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) except as provided in ~~this Interim~~the DIP Order~~s~~ or the DIP Loan Documents, subordinated to or made *pari passu* with any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal

82

or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (iv) except as provided in this ~~Interim~~Final Order or the DIP Loan Documents, junior to any intercompany liens or security interests of the DIP Loan Parties.

(b)     The occurrence and continuance of any Event of Default shall, after written notice by the Junior DIP Agent or the B-2 Agent to the Borrower, counsel to the Borrower, the U.S. Trustee, and lead counsel to the Creditors' Committee ~~(if any)~~, constitute an event of default under this ~~Interim~~Final Order and, upon such notice, interest, including, where applicable, default interest, shall accrue and be payable as set forth in the Junior DIP ~~Term Sheet~~Credit Agreement and the Postpetition B-2 Credit Agreement, as applicable. Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting these cases to cases to a Successor Case: (A) the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Liens, the 507(b) Claims, and the Prepetition Liens shall continue in full force and effect, shall maintain their priorities as provided in this ~~Interim~~Final Order and the ~~Interim~~Final UST Cash Collateral Order, and shall remain binding on all parties in interest until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash; (B) the other rights granted by ~~this Interim~~the DIP Orders, including with respect to the Carve-Out and the Canadian Priority Charges, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in ~~this Interim~~the DIP Orders.

(c)     If any or all of the provisions of ~~this Interim~~the DIP Orders are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not

83

affect (i) the validity, priority, or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Junior DIP Agent or, the Postpetition B-2 Agent, or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, and enforceability of the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, and the Carve-Out and the Canadian Priority Charges.  Notwithstanding any such reversal, modification, vacatur or stay, the DIP Obligations, DIP Liens, Adequate Protection Obligations, Adequate Protection Liens, DIP Superpriority Claims, and 507(b) Claims incurred prior to the actual receipt of written notice by the Junior DIP Agent, the Postpetition B-2 Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this InterimFinal Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code.

(d)     Except as expressly provided in this Interimthe DIP Orders or in the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by this Interimthe DIP Orders and the DIP Loan Documents, as well as the Carve-Out and the Canadian Priority Charges, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these cases, or terminating the joint administration of these cases; (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents); or (iii) confirming a chapter 11 plan in any of the cases.  The terms and provisions of this Interimthe DIP Orders and the DIP Loan Documents shall continue

in full force and effect in these cases and in any Successor Cases until all DIP Obligations, Prepetition Secured Obligations, and Adequate Protection Obligations are indefeasibly paid in full in cash and the DIP Commitments have been terminated.  Any confirmation order entered in these cases shall not discharge or otherwise affect in any way the joint and several obligations of the DIP Loan Parties to the DIP Secured Parties under the DIP Facility and the DIP Loan Documents, other than after (x) the payment in full and in cash of all DIP Obligations and the termination of the DIP Commitments or (y) the occurrence of the effective date of such confirmed plan (solely in accordance with the terms of such plan).

(e)      Nothing in ~~this Interim~~the DIP Order~~s~~ or in the other DIP Loan Documents shall, nor shall the extension of Postpetition B-2 Term Loans or the exercise of any rights thereunder, in any way impair or otherwise effect the validity, perfection, extent or priority of the Prepetition B-2 Liens.

18.      *Payment of Fees and Expenses*.  The DIP Loan Parties were, by the Interim Order, and hereby are authorized and directed on a final basis to pay the DIP Fees and Expenses and Adequate Protection Fees and Expenses.  DIP Fees and Expenses and Adequate Protection Fees and Expenses that constitute professional fees and expenses shall not be subject to allowance or review by the Court but shall be subject to the review procedures set forth in this paragraph 18. Professionals for the Junior DIP Secured Parties, the Postpetition B-2 Secured Parties, and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines~~;~~; however, any time that such professionals seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each such professional shall provide summary copies of its invoices (including aggregate amounts of fees and expenses and total amount of time on a per-professional basis), which are not required to contain time detail and which may be redacted

or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, to the DIP Loan Parties, counsel to ~~any~~the Creditors' Committee, counsel to the Prepetition UST Secured Parties, and any other statutory committee, and the U.S. Trustee (together, the "Review Parties"); *provided, however*, that (i) the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law; *provided*, *further*, that~~,~~ the Review Parties reserve the right to seek reasonable, additional information regarding such invoices and time entries of any such professional and/or to challenge any assertion of privilege with respect to the same.  Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) calendar days after receipt (the "Review Period").  If no written objection is received by 12:00 a.m. (midnight), prevailing Eastern Time, on the last date of the Review Period, the Debtors shall pay such invoices within five (5) business days.  If an objection to a professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether the invoiced amount arose or was incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Notwithstanding the foregoing, the Debtors ~~are~~were, by the Interim Order, and are hereby on a final basis, authorized and directed to pay, on or prior to the Closing Date (as defined in the DIP Term Sheet): (i) any accrued and unpaid ABL Adequate Protection Fees and Expenses, invoices of which have been provided to lead counsel of the Debtors at least

one (1) business day prior to the Closing Date and (ii) any costs, fees, expenses (including reasonable and documented legal fees and expenses) and other compensation contemplated by this Interimthe DIP Orders or the DIP Loan Documents, with respect to items (i) and (ii) above, whether arising before or after the Petition Date, which costs, fees and expenses shall not be subject to the Review Period.  No attorney or advisor to any Junior DIP Secured Party, Postpetition B-2 Secured Party, or any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

19.    *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this InterimFinal Order shall be binding upon the Debtors in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this InterimFinal Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or other party in interest with requisite standing has timely and properly filed an adversary proceeding or initiated a contested matter (subject to the limitations contained herein, a "Challenge Motion") (*provided,* that no interested party shall be permitted to raise a defense to standing on the basis that the applicable Debtor is a Delaware limited liability company) by no later than (i) the earlier of (w) one business day before the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization, whichever occurs first, (x) as to the Creditors' Committee only, 75100 calendar days after entry of thisthe Interim Order, (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period (as defined below), the

Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) 75 calendar days after entry of ~~this~~the Interim Order, or (B) the date that is 30 calendar days after their appointment, and (z) for all other parties in interest, 75 calendar days after entry of ~~this~~the Interim Order; and (ii) any such later date as (v) has been agreed to in writing (which may be by email) by the Prepetition ABL Agent with respect to the Prepetition ABL Obligations or the Prepetition ABL Liens, (w) has been agreed to in writing (which may be by email) by the Prepetition B-2 Agent with respect to the Prepetition B-2 Obligations or the Prepetition B-2 Liens, or (x) has been ordered by the Court for cause upon a motion filed and served within any applicable period or (y) has been ordered by the Court after disposition or resolution of a Challenge Motion (the time period established by the foregoing clauses (i)-(ii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, or (B) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against any Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "Representatives") in connection with or related to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; *provided*, *however*, that any pleadings filed in connection with a Challenge shall comply with the Federal Rules of Bankruptcy Procedure and set forth with specificity the basis

for such Challenge, and any Challenges not so raised prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no Challenge is timely and properly filed during the Challenge Period or ~~the Court does not rule~~a final non-appealable order is not entered in favor of the plaintiff in any such Challenge, then: (1) the Debtors' stipulations, admissions, agreements and releases contained in ~~this Interim~~the DIP Orders shall be binding on all parties in interest; (2) the obligations of the Prepetition Loan Parties under the Prepetition Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except as provided in the Prepetition Intercreditor Agreement), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than as provided in the Prepetition Intercreditor Agreement), or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory

committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives shall be deemed forever waived, released and barred.  If any Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in ~~this Interim~~the DIP Orders shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  ~~Nothing in this Interim~~If the Creditors' Committee files a motion seeking standing to commence a Challenge prior to the expiration of the Challenge Period in accordance with the requirements set forth in this Final Order, the Challenge Period shall be extended (solely as to the Creditors' Committee and solely as to the Challenges specifically identified in the complaint attached to such standing motion) until the earlier of (i) the date such standing motion is withdrawn, or (ii) entry of a final, non-appealable order of the Court denying such standing motion.  Nothing in the DIP Orders vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, Prepetition Secured Obligations or Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in these cases.  For the avoidance of doubt, any trustee shall, until the expiration of the Challenge Period, and thereafter for the

duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by the trustee or any other party in interest on behalf of the Debtors' estates), be deemed to be a party (other than the Debtors) in such adversary proceeding or contested matter and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, and stipulations made by the Debtors in this ~~Interim~~Final Order.

20.      *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding any other provision of this ~~Interim~~Final Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out or the Canadian Priority Charges~~,~~ (unless an applicable Canadian Priority Charge is triggered), may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Secured Parties, or the Prepetition Secured Parties, or their respective Representatives (in their capacities as such), or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, Prepetition Secured Obligations, Adequate Protection Liens, or 507(b) Claims or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Secured Obligations and/or liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under the DIP Orders, the DIP Loan Documents or the Prepetition Loan Documents in respect of the Prepetition Secured Obligations, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550 or 552 of

the Bankruptcy Code, applicable non-bankruptcy law or otherwise (*provided* that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and DIP Collateral (including Cash Collateral) may be used by the Creditors' Committee to investigate, but not to prosecute, (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties, up to an aggregate cap of no more than $~3~50,000 ~(the "Investigation Cap"), (~*, provided,* for the avoidance of doubt, that the Committee Professionals shall be entitled to seek allowance of any fees and/or expenses in excess of $350,000 incurred in connection with the foregoing pursuant to Bankruptcy Code section 503(b), *provided, further,* that the administrative expenses in respect thereof shall be subordinate in all respects to the Carve Out, the Canadian Priority Charges, the DIP Superpriority Claims, the 507(b) Claims, and any other superpriority administrative claims granted under the DIP Orders or the UST Cash Collateral Orders; (b) attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition Secured Parties' or the DIP Secured Parties', as applicable, enforcement or realization on the Prepetition Secured Obligations, Prepetition Collateral, DIP Obligations, DIP Collateral, as applicable, and the liens, claims and rights granted to such parties under the DIP Orders; (c) attempts to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties or the DIP Secured Parties under ~this Interim~the DIP Order~s~, the ~Interim~ UST Cash Collateral Order~s~, the Prepetition Loan Documents or the DIP Loan Documents, as applicable, other than in accordance with this ~Interim~Final Order; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims permitted by the DIP Loan Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and 507(b) Claims; or (e) to pay or to seek to

pay any amount on account of any claims arising prior to the Petition Date unless such payments are authorized by the Court, agreed to in writing by the DIP Lenders, and expressly permitted under ~~this Interim~~the DIP Orders or under the DIP Loan Documents (including the Approved Budget, subject to Permitted Variances), in each case unless all DIP Obligations, Prepetition Secured Obligations, Adequate Protection Obligations, and claims, obligations and liens granted to the DIP Secured Parties, Prepetition Secured Parties, and Prepetition UST Secured Parties under ~~this Interim~~the DIP Orders and the ~~Interim~~ UST Cash Collateral Orders (inclusive of the UST Adequate Protection Obligations and the Prepetition UST Secured Obligations)~~)~~, have been indefeasibly paid in full in cash or otherwise agreed to in writing by the DIP Secured Parties (and, for the avoidance of doubt, no accrued paid time off obligations on account of employees terminated prior to the Petition Date shall be paid until all DIP Obligations, Prepetition Secured Obligations, Adequate Protection Obligations, and claims, obligations and liens granted to the DIP Secured Parties, the Prepetition Secured Parties, and the Prepetition UST Secured Parties under this ~~Interim~~Final Order and the ~~Interim~~Final UST Cash Collateral Order (inclusive of the UST Adequate Protection Obligations and the Prepetition UST Secured Obligations), have been indefeasibly paid in full in cash).

21.     *Final Order Governs*.  In the event of any inconsistency between the provisions of this Final Order, the Interim Order, the UST Cash Collateral Orders, the DIP Loan Documents or the Prepetition Loan Documents, or the Prepetition UST Loan Documents, the provisions of this Final Order shall govern.  Any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order, the DIP Loan Documents, the Final UST Cash Collateral Order, and the Approved Budget (subject to Permitted Variances).

22.    21. *Binding Effect; Successors and Assigns*.  The DIP Loan Documents and the provisions of this ~~Interim~~Final Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Prepetition UST Secured Parties, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided*, that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

23.    22. Nothing in ~~this Interim~~the DIP Order~~s~~, the DIP Loan Documents, the Prepetition Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  The DIP Secured Parties and Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or

default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

24.    ~~23.~~ *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Loan Documents, to permit the use of the DIP Collateral or Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this ~~Interim~~Final Order or the DIP Loan Documents or Prepetition Loan Documents, as applicable, none of the DIP Secured Parties or Prepetition Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code).  Furthermore, nothing in ~~this Interim~~the DIP Order~~s~~ shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives.

25.    ~~24.~~ *Master Proofs of Claim*.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or any Successor Cases, neither the Prepetition Agents, nor any other Prepetition Secured Parties shall be required to file proofs of claim in these cases or any Successor Cases in order to assert claims for payment

of any of the Prepetition Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the Prepetition Loan Documents or this ~~Interim~~Final Order. The Debtors' stipulations, admissions and acknowledgments of the claim and liens in respect of the Prepetition Secured Obligations set forth in this ~~Interim~~Final Order is deemed to constitute timely proofs of claim in respect of all indebtedness, secured status and claims arising under the Prepetition ~~Credit~~Loan Documents and this ~~Interim~~Final Order. Nonetheless, in order to facilitate the processing of claims, each Prepetition Agent is authorized, but not directed or required, to file a master proof of claim in the Debtors' lead case *In re Yellow Corporation, et al*., Case No. 23-11069 (CTG), on behalf of the applicable Prepetition Secured Parties (each, a "<u>Master Proof of Claim</u>"), which shall be deemed to have been filed against each Debtor. The provisions of this paragraph 2~~4~~5 and the filing of Master Proofs of Claim, if any, are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan filed in these cases. Any Master Proof of Claim shall not be required to include any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent. The DIP Secured Parties shall not be required to file proofs of claim with respect to the DIP Obligations.

26.    ~~25.~~ *Insurance*. To the extent that any Prepetition Agent is listed as a loss payee under the insurance policies of any of the DIP Loan Parties, the <u>Junior </u>DIP Agent <u>was, by the Interim Order, and </u>shall <u>on a final basis, </u>also be deemed to be a loss payee under such insurance policies until the indefeasible payment in full of the <u>Junior </u>DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination

of the DIP Commitments (subject to the terms and priorities set forth in this Final Order and the DIP Loan Documents) and, except with respect to (i) the Prepetition ABL Priority Collateral prior to the Prepetition ABL Obligations being indefeasibly paid in full in cash (or, as applicable, cash collateralized) and, (ii) with respect to the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral prior to the Prepetition UST Tranche B Obligations (and, in the case of the Prepetition Joint Collateral, the B-2 Obligations) being indefeasibly paid in full in cash, and (iii) with respect to the Prepetition B-2 Priority Collateral prior to the B-2 Obligations being indefeasibly paid in full in cash, shall act in that capacity and distribute any proceeds recovered or received in respect of such insurance policies in accordance with this Final Order; *provided,* that the liens granted herein in the DIP Orders shall not interfere with any rights held by a landlord to insurance proceeds for damage to a landlord's property.

27. 26. *Credit Bidding*. The Junior DIP Agent and the Junior DIP Lender have expressly waived any right to credit bid the Junior DIP Obligations. In each case to the extent permitted by the Prepetition Intercreditor Agreement, (i) the Prepetition ABL Agent (on behalf, and at the direction, of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement) shall have the unqualified and unconditional right to credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the Prepetition ABL Obligations and (y) the ABL Adequate Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of ABL Priority Collateral, and (ii) the B-2 Agent (on behalf, and at the direction, of the B-2 Lenders pursuant to the Prepetition B-2 Credit Agreement and the Postpetition B-2 Credit Agreement) shall have the unqualified and unconditional right to

credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the B-2 Obligations and (y) the B-2 Adequate Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of Prepetition B-2 Priority Collateral, and each Prepetition ABL Secured Party and B-2 Secured Party complying with the foregoing shall automatically be deemed a "qualified bidder" with respect to any disposition of assets by the Debtors under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code; *provided,* that, no party shall be permitted to credit bid for Prepetition ABL Priority Collateral until such time that the Prepetition ABL Parties have been indefeasibly paid in full in cash and all issued and outstanding letters of credit cash collateralized.  The Prepetition ABL Agent at the direction of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement and on behalf of the Prepetition ABL Lenders, and the B-2 Agent at the direction of the B-2 Lenders and on behalf of the B-2 Lenders, had, under the Interim Order, and shall on a final basis have the absolute right to assign, sell, or otherwise dispose of its right to credit bid to any acquisition entity or joint venture formed in connection with such bid.

28.    27. *Proceeds of Subsequent Financing.*  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Case shall obtain credit or incur debt pursuant to section 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents or this InterimFinal Order at any time, then all of the cash proceeds derived from such credit or debt shall immediately be applied to

satisfy the DIP Obligations in accordance with this ~~Interim~~Final Order, the DIP Loan Documents, and the Prepetition Intercreditor Agreement.

29. ~~28.~~ *Rights Preserved*. Notwithstanding anything herein to the contrary, the entry of this ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Secured Parties' and the Prepetition Secured Parties', as applicable, respective rights to seek any other or supplemental relief in respect of the Debtors (including, the right to seek additional or different adequate protection); (b) the rights of any of the DIP Secured Parties to seek the payment by the Debtors of post-petition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Secured Parties and the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek an injunction, (iv) oppose any request for use of Cash Collateral, (v) object to any sale of assets, or (vi) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; provided that the rights of the DIP Secured Parties and the Prepetition Secured Parties, respectively, with respect to sections (a)–(c) of this paragraph 2~~6~~9 shall be subject to the Prepetition Intercreditor Agreement, as applicable, and this Final Order (including the Senior ICA Provisions). Other than as expressly set forth in this ~~Interim~~Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties are preserved.

30. ~~29.~~ *No Waiver by Failure to Seek Relief*. The failure or delay on the part of any of the DIP Secured Parties or any of the Prepetition Secured Parties to seek relief or otherwise

exercise their respective rights and remedies under this ~~Interim~~Final Order, the DIP Loan Documents, the respective Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder, or otherwise. No delay on the part of any party in the exercise of any right or remedy under this ~~Interim~~Final Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.  None of the rights or remedies of any party under this ~~Interim~~Final Order shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the party against whom such amendment, modification, suspension, or waiver is sought.  No consents required hereunder by any of the DIP Secured Parties or any of the Prepetition Secured Parties shall be implied by any inaction or acquiescence by any of the DIP Secured Parties or any of the Prepetition Secured Parties, respectively.

31. ~~30.~~ *Chubb Reservation of Rights*. For the avoidance of doubt, (i) to the extent ACE American Insurance Company and/or any of its U.S.-based affiliates (collectively, and together with each of their successors, "Chubb") had valid, enforceable, perfected, and non-avoidable liens and/or security interests on property of the Debtors as of the Petition Date, which liens and/or security interests were senior to the liens and/or security interests of each of the Prepetition Secured Parties (collectively, the "Chubb Liens"), the DIP Liens shall not prime the Chubb Liens; (ii) this ~~Interim~~Final Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements; (iii) without altering or limiting any of the foregoing, none of the insurance policies issued by Chubb to or providing coverage to any of the Debtors and any rights and claims thereunder shall be nor shall constitute DIP Collateral nor shall be

subject to any liens granted pursuant to ~~this Interim~~the DIP Orders, and, further, the proceeds of any insurance policy issued by Chubb shall only be considered to be DIP Collateral to the extent such proceeds are payable to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy; and (iv) nothing, including the DIP Loan Documents and/or this ~~Interim~~Final Order, alters or modifies the terms and conditions of any insurance policies issued by Chubb and/or any agreements related thereto.

32. ~~31.~~ *Provision Regarding PNC Bank, N.A. and TSC Equipment Finance.* Notwithstanding anything to the contrary set forth in this Final Order, to the extent that the leases held by PNC Bank, N.A. ("PNC") or TSC Equipment Finance LLC ("TSC") (each as successor by assignment to PNC Equipment Finance, LLC) are subsequently found to be financing arrangements rather than true leases (which PNC and TSC, in each case, disputes), nothing contained in this Final Order shall (x) result in the granting of any priming or *pari passu* liens on the equipment subject to such leases or (y) otherwise alter or impair the rights or claims of PNC and TSC, as applicable, with respect to such equipment or leases.

33. *Provision Regarding World Fuel Services, Inc.* World Fuel Services, Inc. ("WFS") is in possession of a $200,000 business risk deposit (the "WFS Deposit") posted in connection with a fuel supply contract entered into, effective June 1, 2019, as amended on June 25, 2020, with Debtor YRC Enterprise Services, Inc., as agent for participating affiliates, including Debtor USF Reddaway, Inc. Notwithstanding anything herein to the contrary, WFS shall retain all of its rights to the existing WFS Deposit to the same extent and in the same priority that existed prior to the Petition Date.

34. *Provision Regarding East West Bank and Wintrust Commercial Finance.* Notwithstanding anything to the contrary set forth in this Order or any other order granting

adequate protection liens to the Debtors' prepetition lenders, to the extent that the leases held by East West Bank ("EWB") or Wintrust Commercial Finance ("Wintrust") (as successor to PNC Equipment Finance, LLC) are subsequently found to be financing arrangements rather than true leases (which EWB and Wintrust each dispute), nothing contained in this Order or any other order granting adequate protection liens to the Debtors' prepetition lenders shall (x) result in the granting of any liens that would prime or be pari passu with any liens of EWB or Wintrust on the equipment subject to the EWB leases or the Wintrust leases, as applicable, or (y) otherwise alter or impair the rights of EWB or Wintrust with respect to such equipment or the EWB leases or the Wintrust leases, as applicable, all of which are expressly reserved.

35.    *Provision Regarding Certain Taxing Authorities*.  Notwithstanding any provisions of the Motion, the Interim Orders, this Final Order, or any agreements approved hereby, the statutory liens currently held by the Texas Taxing Authorities[20] and the Treasurer of Maricopa County, Arizona (the "Maricopa County Treasurer"), or which shall arise during the course of this case pursuant to applicable non-bankruptcy law for prepetition and postpetition ad valorem taxes and/or personal property taxes (the "Tax Liens") shall neither be primed by nor subordinated to any liens granted thereby or pursuant to this Final Order to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities and the Maricopa County Treasurer are fully preserved.

---

[20]    "Texas Taxing Authorities" means all *ad valorem* taxing jurisdictions represented by the firms of McCreary, Veselka, Bragg & Allen, PC, Linebarger, Goggan, Blair and Sampson, and Perdue Brandon Fielder Collins and Mott LLP, including but not limited to Bowie Central Appraisal District, Central Appraisal District of Taylor County, Waco Independent School District, Lubbock Central Appraisal District, Maverick County Tax Office, Bexar County, Cypress-Fairbanks Independent School District, Dallas County, City of Eagle Pass, Eagle Pass Independent School District, City of El Paso, Fort Bend County, Harris County, Hidalgo County, Irving Independent School District, Jefferson County, City of McAllen, McLennan County, City of Mesquite, Nueces County, and Tarrant County.

36.     *Amendment to Milestones.*  Appendix E of the Junior DIP Credit Agreement and Appendix E of the Postpetition B-2 Credit Agreement shall each be amended so that Paragraph 1 shall state "forty-five (45) calendar days" rather than "thirty (30) calendar days."

37.     *Amendments to DIP Loan Documents.*

(a)     Section 7.15 of the Junior DIP Credit Agreement shall be replaced in its entirety with the following:  "The Borrower shall not (i) assume or reject any executory contract or unexpired lease or (ii) consent to termination or reduction of the exclusivity period to file and solicit a chapter 11 plan or fail to object to any motion seeking to terminate or reduce such exclusivity period, in each case, without the consent of the Lenders (with respect to clause (i), such consent not to unreasonably withheld) and, to the extent constituting or impacting any B-2 Priority Collateral, the B-2 Lenders (with respect to clause (i), such consent not to be unreasonably withheld)."

(b)     Section 7.15 of the Postpetition B-2 Credit Agreement shall be replaced in its entirety with the following:  "The Borrower shall not (i) assume or reject any executory contract or unexpired lease or (ii) consent to termination or reduction of the exclusivity period to file and solicit a chapter 11 plan or fail to object to any motion seeking to terminate or reduce such exclusivity period, in each case, without the consent of the Junior DIP Lenders (with respect to clause (i), such consent not to unreasonably withheld) and, to the extent constituting or impacting any B-2 Priority Collateral, the Lenders (with respect to clause (i), such consent not to be unreasonably withheld)."

38.     Section 10.05(a) of the Postpetition B-2 Credit Agreement shall be replaced in its entirety with the following: "The Borrower agrees (i) promptly following (and in any event within the period set forth in the DIP Order) written demand (including documentation

reasonably supporting such request) therefor, to pay or reimburse the Administrative Agent, the Collateral Agent and the Lenders for all reasonable and documented out-of-pocket costs and expenses (including, without limitation, the documented reasonable fees and expenses of Holland & Knight LLP, FTI, White & Case LLP, GrayRobinson, P.A. and Osler, Hoskin & Harcourt LLP) incurred in connection with the preparation, negotiation and execution of the DIP Term Sheet, this Agreement and the other Loan Documents, and any amendment, waiver, consent or other modification of the provisions hereof and thereof (whether or not the transactions contemplated thereby are consummated), and the consummation and administration of the transactions contemplated hereby and thereby (including Attorney Costs which in the case of the Agents, shall be limited to Attorney Costs of one counsel to the Agents and one local counsel in each applicable jurisdiction for the Agents) and (ii) from and after the Postpetition B-2 Facility Closing Date, promptly following (and in any event within the period set forth in the DIP Order) written demand (including documentation reasonably supporting such request) therefor, to pay or reimburse the Administrative Agent, the Collateral Agent and each Lender promptly following written demand for all reasonable and documented out-of-pocket costs and expenses (including, without limitation, the documented fees and expenses of Holland & Knight LLP, FTI, White & Case LLP, GrayRobinson, P.A. and Osler, Hoskin & Harcourt LLP) incurred in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of any rights or remedies under the DIP Term Sheet, this Agreement or the other Loan Documents (including all such out-of-pocket costs and expenses incurred during any legal proceeding, including any proceeding under any Debtor Relief Laws and including Attorney Costs). To the extent otherwise reimbursable by the foregoing sentence of this section, the foregoing costs and expenses shall include all reasonable search, filing, recording, title

insurance, survey, environmental, property condition report and zoning report charges and fees related thereto, and other reasonable and documented out of pocket expenses incurred by any Agent. The foregoing costs and expenses shall also include all recording and filing fees charged by governmental authorities to record and/or file Collateral Documents."

39.   ~~32.~~ *Effectiveness*.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Interim~~Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this ~~Interim~~Final Order.

40.   ~~33.~~ *Governing Order*.   Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this ~~Interim~~Final Order, including compliance with the Approved Budget (subject to Permitted Variances) and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of any of the DIP Loan Documents and this ~~Interim~~Final Order, this ~~Interim~~Final Order shall control. ~~For the avoidance of doubt, upon entry of this Interim Order, this Interim Order shall supersede and replace the interim cash collateral order entered at Docket No. 181, provided that any adequate protection granted therein to the respective Prepetition Secured Parties for the period from the Petition Date until the entry of this Interim Order shall survive and is hereby reaffirmed and ratified.~~

41.   ~~34.~~ *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this ~~Interim~~Final Order.

42.   ~~35.~~ *Payments Held in Trust*.

(a)    Except as expressly permitted in this ~~Interim~~Final Order or the DIP Loan Documents and except with respect to the DIP Loan Parties, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral), receives any DIP Collateral (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) or any proceeds of the DIP Collateral (other than Prepetition B-2 Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) or receives any other payment with respect thereto from any other source prior to the indefeasible payment in full in cash of all Junior DIP Obligations and termination of all Junior DIP Commitments, such person or entity shall be deemed to have received, and shall hold, any such DIP Collateral or any payment on account or proceeds thereof (other than Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral) in trust for the benefit of the Junior DIP Secured Parties and shall immediately turn over such collateral or its proceeds to the Junior DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Loan Documents and this ~~Interim~~Final Order.

(b)    Except as expressly permitted in this Final Order or the DIP Loan Documents and except with respect to the DIP Loan Parties, in the event that any person or entity receives any payment on account of a security interest in any Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral, receives any Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral, or any

106

proceeds of Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral, or receives any other payment with respect thereto from any other source prior to the indefeasible payment in full in cash of all Prepetition Secured Obligations, Prepetition UST Secured Obligations, Prepetition ABL Obligations, and Postpetition B-2 Obligations and termination of all Postpetition B-2 Commitments, such person or entity shall be deemed to have received, and shall hold, any such Prepetition B-2 Priority Collateral, Prepetition ABL Priority Collateral, Prepetition Joint Collateral, or Prepetition UST Tranche B Priority Collateral, or any payment on account or proceeds thereof in trust for the benefit of the Prepetition Secured Parties, the Prepetition UST Secured Parties, and the B-2 Secured Parties, as applicable (subject to the terms and priorities of this Final Order, the DIP Loan Documents, the UST Cash Collateral Orders, and the Prepetition Intercreditor Agreement) and shall immediately turn over such Collateral or its proceeds to the B-2 Agent, Prepetition ABL Agent, the Prepetition UST Tranche A Agent, or the Prepetition UST Tranche B Agent, as applicable, or as otherwise instructed by this Court, for application in accordance with the DIP Loan Documents, this Final Order, the UST Cash Collateral Orders, and the Prepetition Intercreditor Agreement.

43. 36. *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

44. 37. *No Third Party Rights*.  Except as explicitly provided for herein, this InterimFinal Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

45. 38. *Necessary Action*.  The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to

107

implement the terms of this ~~Interim~~Final Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this ~~Interim~~Final Order.

46.    ~~39.~~ *Retention of Jurisdiction*.  This Court shall retain jurisdiction to enforce the provisions of this ~~Interim~~Final Order.

~~40.~~ *~~Final Hearing~~*~~.  A final hearing to consider the relief requested in the DIP Motion on a final basis shall be held on [_____], 2023 at [__:__] [a.m.] [p.m.] (Prevailing Eastern Time).~~

~~41.~~ *~~Objections~~*~~.  Any objections or responses to the DIP Motion shall be filed on or prior to [_____], 2023 at 4:00 p.m. (Prevailing Eastern Time).  Any party objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the Debtors, 10990 Roe Avenue, Overland Park, Kansas 66211, Attn: Matthew A. Doheny and Leah Dawson; (b) counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn.: Patrick J. Nash, Jr., P.C. and Whitney C. Fogelberg; 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith and Aaron Metviner; (b) counsel to the Junior DIP Lender, Quinn Emmanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017, Attn: Eric Winston; 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirplani; Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606, Attn: Lucas S. Smith; 1211 Avenue of the Americas, New York, NY 10036, Attn: Natasha S. Hwangpo; (c) counsel to the B-2 Lenders, White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 Attn: Scott Greissman, Elizabeth Feld, and Andrew Zatz; (d) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn:~~

Jane M. Leamy and Richard Schepacarter; (e) counsel to the Creditors' Committee; (f) the Prepetition ABL Agent, and counsel thereto, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Kevin Simard and Hampton Foushee; (g) the B-2 Agent and Junior DIP Agent, and counsel thereto, Holland & Knight LLP, 150 N. Riverside Plaza, Suite 2700, Chicago IL 60606, Attn. Joshua M. Spencer and Phillip W. Nelson; (h) the Prepetition UST Tranche A Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (i) the Prepetition UST Tranche B Agent, and counsel thereto, Hogan Lovells US LLP, 390 Madison Avenue, New York, New York 10017, Attn: Ronald J. Silverman and Christopher R. Bryant; (j) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602, Attn: Michael Messersmith; 250 West 55th Street, New York, New York 10019, Attn: Benjamin Mintz, and 601 Massachusetts Ave., N.W., Washington, DC 20001, Attn: Rosa Evergreen, and the U.S. Department of Justice, 1100 L St NW Rm 7102, Washington, DC 20005-4035, Attn: I-Heng.Hsu and Crystal Geise; and (k) counsel to the proposed Stalking Horse Purchaser, BakerHostetler LLP, 200 S. Orange Avenue, Suite 2300, Orlando, Florida 32801, Attn: Elizabeth Green.

42. The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing and to any party that has filed with this Court a request for notices in these cases.

**Exhibit 1**

**Junior** DIP ~~Term Sheet~~**Credit Agreement**

**Exhibit 2**

**B-2 Amendment**

**Schedule 1**

**Approved Budget**

**Schedule 2**[21]

**DIP Lien Priority Summary**

| | **Prepetition ABL Priority Collateral** | **Prepetition B-2 Priority Collateral** | **UST Tranche B Priority Collateral** | **Prepetition Joint Collateral** | **Unencumbered Property** |
|---|---|---|---|---|---|
| **First** | Prepetition ABL Liens (and related Adequate Protection Liens) | Postpetition B-2 Tranche B Liens and Prepetition B-2 Liens (and related Adequate Protection Liens) | Prepetition UST Tranche B Liens (and related Adequate Protection Liens) | Postpetition B-2 Liens and Prepetition B-2 Liens (and related Adequate Protection Liens) (33%) / UST Tranche B Liens (and related Adequate Protection Liens) (67%) | Junior DIP Unencumbered Property Liens |
| **Second** | Prepetition B-2 Liens and Postpetition B-2 Liens (and related Adequate Protection Liens) | Junior DIP Liens | Prepetition B-2 Liens and Postpetition B-2 Liens (and related Adequate Protection Liens) | Prepetition ABL Liens (and related Adequate Protection Liens) | Postpetition B-2 Liens |
| **Third** | Prepetition UST Tranche A Liens and Prepetition UST Tranche B Liens (*pari passu*) (and related Adequate Protection Liens) | Prepetition ABL Liens (and related Adequate Protection Liens) | Prepetition ABL Liens (and related Adequate Protection Liens) | Prepetition UST Tranche A Liens (and related Adequate Protection Liens) | Adequate Protection Liens with respect to the Prepetition B-2 Liens and Prepetition ABL Liens (*pari passu*) |
| **Fourth** | Junior DIP Liens | Prepetition UST Tranche A Liens and Prepetition UST Tranche B Liens (*pari passu*) (and related Adequate Protection Liens) | Prepetition UST Tranche A Liens (and related Adequate Protection Liens) | Junior DIP Liens | Adequate Protection Liens with respect to the Prepetition UST Tranche A Liens and Prepetition UST Tranche B Liens (*pari passu*) |
| **Fifth** | Additional Junior DIP Liens | Additional Junior DIP Liens | Junior DIP Liens | Additional Junior DIP Liens | Additional Junior DIP Liens |
| **Sixth** | | | Additional Junior DIP Liens | | |

---

[21] This Schedule 2 is provided for the convenience of the Court and parties in interest. To the extent there is any conflict or inconsistency between the summary table in Schedule 2 and the Final Order, the Final UST Cash Collateral Order, or the Prepetition Intercreditor Agreement, regarding the priority of the DIP Liens or any other prepetition or postpetition liens of the Prepetition Secured Parties or the Prepetition UST Secured Parties, the lien priorities set forth in the Final Order, the Final UST Cash Collateral Order, and in the Prepetition Intercreditor Agreement, as applicable, shall control.

| Summary report: Litera Compare for Word 11.3.1.3 Document comparison done on 9/14/2023 11:41:10 PM | |
|---|---|
| **Style name:** Color (Kirkland Default) | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://dms.kirkland.com/LEGAL/99224955/8 | |
| **Modified filename:** Yellow - Final DIP Order [Filing Version 9.14.23]_(99463063_7).docx | |
| **Changes:** | |
| Add | 853 |
| Delete | 594 |
| Move From | 46 |
| Move To | 46 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 1540 |