## **EXHIBIT A**

**Proposed Final UST Cash Collateral Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

## FINAL UST CASH COLLATERAL AND ADEQUATE PROTECTION ORDER (I) AUTHORIZING THE DEBTORS TO USE UST CASH COLLATERAL AND ALL OTHER PREPETITION UST COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "<u>Motion</u>")[2] of Yellow Corporation ("<u>Yellow Corp</u>") and each of its above-captioned affiliates (collectively, the "<u>Debtors</u>"), pursuant to sections 105, 361, 362, 363, 506 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "<u>Bankruptcy Code</u>"), rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Local Rules</u>"), seeking, among other things, entry of this final UST cash collateral and adequate protection order (this "<u>Final UST Cash Collateral Order</u>") and the

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* entered contemporaneously herewith (the "<u>Final DIP Order</u>").

Interim UST Cash Collateral Order (as defined below) (together, the "UST Cash Collateral

Orders") among other things:

- authorizing the Debtors, pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, to use the UST Cash Collateral (as defined below) and all other Prepetition UST Collateral (as defined below), in accordance with the terms of the DIP Orders, the UST Cash Collateral Orders, and the Approved Budget (as defined below);

- subject and subordinate to the Carve-Out and the Canadian Priority Charges (as defined in the DIP Term Sheet) and, as and to the extent applicable, the liens and claims securing the DIP Facility, to provide for the UST Adequate Protection (as defined below) of the liens and security interests of the Prepetition UST Secured Parties (as defined below), as set forth herein;

- subject and subordinate to the Carve-Out and the Canadian Priority Charges, as and to the extent applicable, the liens and claims securing the DIP Facility, granting to the Prepetition UST Agent (as defined below), for the benefit of the Prepetition UST Secured Parties (as defined below), the UST Adequate Protection Liens (as defined below) and allowed superpriority administrative expense claims pursuant to sections 503(b) and 507(b) of the Bankruptcy Code;

- authorizing the Prepetition UST Secured Parties to take all commercially reasonable actions to implement the terms of this Final UST Cash Collateral Order;

- waiving (a) the Debtors' right to surcharge the Prepetition UST Collateral pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

- waiving the equitable doctrine of "marshaling" and other similar doctrines for the benefit of the Prepetition UST Secured Parties with respect to the Prepetition UST Collateral (including the UST Cash Collateral) and the Prepetition UST Secured Obligations (each as defined below), as applicable, in each case subject to the Carve-Out and the Canadian Priority Charges;

- authorizing the Debtors to use the UST Cash Collateral solely in accordance with the UST Cash Collateral Orders, the DIP Orders (as defined in the Final DIP Order) and the Approved Budget (as defined below), subject to Permitted Variances (as defined in the Junior DIP Credit Agreement);

- subject to the restrictions set forth in the UST Cash Collateral Orders, the DIP Orders and the Approved Budget, authorizing the Debtors to use Prepetition UST Collateral and provide UST Adequate Protection (as defined below) to the Prepetition UST Secured Parties for the aggregate diminution in value of their respective interests in the applicable Prepetition UST Collateral (including UST Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "Diminution in Value");

2

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors and the Prepetition UST Secured Parties to implement and effectuate the terms and provisions of this Final UST Cash Collateral Order; and

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final UST Cash Collateral Order.

The Court having considered the final relief requested in the Motion [Docket No. 16], the exhibits attached thereto, the *Declaration of Cody Leung Kaldenberg, Partner of Ducera Partners In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 18] (the "Kaldenberg Declaration"), the *Declaration of Brian Whittman, Managing Director of Alvarez & Marsal North America, LLC, In Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 17] (the "Whittman Declaration")*,* and *the Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"), that certain Debtor-In-Possession Credit Facility Term Sheet between the applicable Debtors and MFN Partners, L.P. (the "Junior DIP Lender") and Citadel Credit Master Fund LLC (together with any permitted assignee thereof, the "Postpetition B-2 Lenders") and certain of their affiliates (collectively the "DIP Lenders," and such term sheet (attached to the Interim DIP Order as Exhibit 1), the "DIP Term Sheet"), the other available DIP Loan Documents (including the Junior DIP Credit Agreement, the Postpetition B-2

Credit Agreement, and the B-2 Amendment (each as defined in the Final DIP Order)), and the evidence submitted and arguments made at the interim hearing to consider approval of the Interim UST Cash Collateral Order held on August 9, 2023 (the "Interim Hearing") and at the final hearing to consider approval of of the Final UST Cash Collateral Order held on September 15, 2023 (the "Final Hearing"); and due and sufficient notice of the Interim Hearing and the Final Hearing, all continuations thereof, and all subsequent status conferences having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and the Interim Hearing and the Final Hearing having been held and concluded; and the Court having entered, on August 18, 2023, the *Interim UST Cash Collateral and Adequate Protection Order (I) Authorizing the Debtors to (A) Use UST Cash Collateral and All Other Prepetition UST Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 303] (the "Interim UST Cash Collateral Order"); and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the final relief requested in the Motion is in the best interests of the Debtors and their estates and essential for the preservation and maximization of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.      *Petition Date*.  On August 6, 2023 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

B.      *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      *Jurisdiction and Venue*.  This Court has core jurisdiction over these cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order approving the relief sought in the Motion consistent with Article III of the United States Constitution.  Venue for these cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Bankruptcy Local Rules 2002-1, 4001-2, and 9013-1.

D.      *Committee Formation*.  On August 16, 2023 the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors in these cases at Docket No. 269 (the "<u>Creditors' Committee</u>") pursuant to section 1102 of the Bankruptcy Code.  As of the date hereof, the U.S. Trustee has not appointed any other statutory committees.

E.      *Notice*.  The Final Hearing was held pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the Motion and the Final Hearing has been

provided in accordance with the Bankruptcy Code, Bankruptcy Rules and Bankruptcy Local Rules, and no other or further notice was or shall be required under the circumstances.

F.    *UST Cash Collateral*.  As used herein, the term "UST Cash Collateral" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, (a) that constitutes or will constitute "cash collateral" of any of the Prepetition UST Secured Parties (as defined below) within the meaning of section 363(a) of the Bankruptcy Code and (b) over which the Prepetition UST Secured Parties have liens, subject to the relative priorities of the Prepetition Secured Parties (as defined in the Final DIP Order) and the Prepetition UST Secured Parties as set forth in the Prepetition Intercreditor Agreement (as defined below) and the Final DIP Order.

G.    *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest and subject in all respects to the provisions and limitations contained in this Final UST Cash Collateral Order, including, without limitation, the provisions of paragraph 12 hereof, and after consultation with their attorneys, the Debtors admit, stipulate and agree that:

(i)    *Prepetition UST Tranche A Term Loan*.  Pursuant to that certain UST Tranche A Term Loan Credit Agreement, dated as of July 7, 2020 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition UST Tranche A Credit Agreement" and, collectively with all other agreements (including the Prepetition UST Loan Documents (as defined below)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition UST Tranche A Loan Documents"), by and among (a) Yellow Corp, as borrower (in such capacity, the "Prepetition UST Tranche A Borrower"), (b) the guarantors party

6

thereto (the "Prepetition UST Tranche A Guarantors" and, together with the Prepetition UST Tranche A Borrower, the "Prepetition UST Tranche A Loan Parties"), (c) The Bank of New York Mellon ("BNY"), as administrative agent and collateral agent (in such capacities, and BNY, in its capacities as a party to all other agreements, documents, or instruments with any or all of the Prepetition UST Tranche A Loan Parties entered into in connection with the transactions relating to the entry of the Prepetition UST Tranche A Loan Documents and/or the incurrence of the Prepetition UST Tranche A Obligations (as defined below), including, without limitation, any banking arrangements in connection therewith with BNY and/or its affiliates, the "Prepetition UST Tranche A Agent"), and (d) the lenders party thereto from time to time (the "Prepetition UST Tranche A Lenders" and, together with the Prepetition UST Tranche A Agent, the "Prepetition UST Tranche A Secured Parties"), the Prepetition UST Tranche A Loan Parties incurred and continue to incur and accrue all "Obligations" (as defined in the Prepetition UST Tranche A Credit Agreement, the "Prepetition UST Tranche A Obligations") to the Prepetition UST Tranche A Secured Parties on a joint and several basis;

(ii)     *Prepetition UST Tranche B Term Loan*.   Pursuant to that certain UST Tranche B Term Loan Credit Agreement, dated as of July 7, 2020 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition UST Tranche B Credit Agreement" and, collectively with all other agreements (including the Prepetition UST Loan Documents (as defined below)), documents, and instruments executed or delivered in connection therewith, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, and fee letters, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition UST Tranche B Loan Documents," and together with the Prepetition UST

7

Tranche A Loan Documents, the "Prepetition UST Loan Documents"), by and among (a) Yellow Corp, as borrower (in such capacity, the "Prepetition UST Tranche B Borrower"), (b) the guarantors party thereto (the "Prepetition UST Tranche B Guarantors" and, together with the Prepetition UST Tranche B Borrower, the "Prepetition UST Tranche B Loan Parties," and together with the Prepetition UST Tranche A Loan Parties, the "Prepetition UST Loan Parties"), (c) BNY, as administrative agent and collateral agent (in such capacities, and BNY, in its capacities as a party to all other agreements, documents, or instruments with any or all of the Prepetition UST Tranche B Loan Parties entered into in connection with the transactions relating to the entry of the Prepetition UST Tranche B Loan Documents (as defined below) and/or the incurrence of the Prepetition UST Tranche B Obligations (as defined below), including, without limitation, any banking arrangements in connection therewith with BNY and/or its affiliates, the "Prepetition UST Tranche B Agent," and together with the Prepetition UST Tranche A Agent, the "Prepetition UST Agent"), and (d) the lenders party thereto from time to time (the "Prepetition UST Tranche B Lenders"[4] and, together with the Prepetition UST Tranche B Agent, the "Prepetition UST Tranche B Secured Parties," and together with the Prepetition UST Tranche A Secured Parties, the "Prepetition UST Secured Parties"), the Prepetition UST Tranche B Loan Parties incurred "Obligations" (as defined in the Prepetition UST Tranche B Credit Agreement, the "Prepetition UST Tranche B Obligations," and together with the UST Tranche A Obligations, the "Prepetition UST Secured Obligations") to the Prepetition UST Tranche B Secured Parties on a joint and several basis;

---

[4]    The Prepetition UST Tranche B Lenders and the Prepetition UST Tranche A Lenders shall be referred to in this Final UST Cash Collateral Order, collectively, as the "Prepetition UST Lenders".

(iii)    *Prepetition Intercreditor Agreement.*  Pursuant to (and to the extent set forth in) that certain Amended and Restated Intercreditor Agreement, dated as of July 7, 2020 (as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Intercreditor Agreement") by and among the Prepetition ABL Agent, the Prepetition B-2 Agent, the Prepetition UST Tranche A Agent and the Prepetition UST Tranche B Agent, which Prepetition Intercreditor Agreement, Prepetition UST Loan Documents, and Prepetition Loan Documents (as defined in the Final DIP Order) are, in each case, binding and enforceable against the parties thereto, which agreed in the Prepetition Intercreditor Agreement, among other things, to the relative priority of such parties' respective security interests in the Prepetition Collateral (as defined below), which relative priorities are set forth in and governed by the Prepetition Intercreditor Agreement.

(iv)    *Prepetition UST Tranche A Obligations.*  As of the Petition Date, the Prepetition UST Tranche A Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition UST Tranche A Secured Parties, without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition UST Tranche A Credit Agreement) in the aggregate principal amount of not less than $337,042,757.52 plus accrued and accruing unpaid interest thereon and any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other Prepetition UST Tranche A Obligations incurred under, reimbursable pursuant to, or secured by the Prepetition UST Tranche A Loan Documents;

(v)    *Prepetition UST Tranche B Obligations.*  As of the Petition Date, the Prepetition UST Tranche B Loan Parties were validly, justly, and lawfully indebted and liable to the Prepetition UST Tranche B Secured Parties, without defense, challenge, objection, claim,

counterclaim, or offset of any kind, for Loans (as defined in the Prepetition UST Tranche B Credit Agreement) in the aggregate principal amount of not less than $399,999,769.91 plus accrued and accruing unpaid interest thereon and any fees, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other Prepetition UST Tranche B Obligations incurred under, reimbursable pursuant to, or secured by the Prepetition UST Tranche B Loan Documents;

(vi)    *Validity of Prepetition UST Secured Obligations*.  The Prepetition UST Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition UST Loan Parties, as applicable, enforceable in accordance with the respective terms of the relevant documents, and no portion of the Prepetition UST Secured Obligations or any payment made to the Prepetition UST Secured Parties or applied to or paid on account of the Prepetition UST Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(vii)    *Validity, Perfection and Priority of Prepetition UST Tranche A Liens*.  As of the Petition Date, pursuant to the Prepetition UST Tranche A Loan Documents, the Prepetition UST Tranche A Loan Parties granted to the Prepetition UST Tranche A Agent, for the benefit of the Prepetition UST Tranche A Secured Parties, a security interest in and continuing lien on (the "Prepetition UST Tranche A Liens") substantially all of their respective assets and property (collectively, the "Prepetition UST Tranche A Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition

UST Tranche B Priority Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent, Prepetition ABL Agent, and Prepetition UST Tranche B Agent and any liens permitted by the Prepetition UST Tranche A Loan Documents to be senior to the Prepetition UST Tranche A Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition UST Tranche A Permitted Senior Liens") on the Prepetition UST Tranche B Priority Collateral; (ii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the liens of the Prepetition B-2 Agent, Prepetition ABL Agent, and Prepetition UST Tranche B Agent and the Prepetition UST Tranche A Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition B-2 Priority Collateral, subject only to the senior liens of the Prepetition B-2 Agent and Prepetition ABL Agent, the *pari passu* liens of Prepetition UST Tranche B Agent, and the Prepetition UST Tranche A Permitted Senior Liens on the Prepetition B-2 Priority Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject only to the senior liens of the Prepetition ABL Agent and Prepetition B-2 Agent, the *pari passu* liens of the Prepetition UST Tranche B Agent, and the Prepetition UST Tranche A Permitted Senior Liens on the Prepetition ABL Priority Collateral;

(viii)    *Validity, Perfection and Priority of Prepetition UST Tranche B Liens.*  As of the Petition Date, pursuant to the Prepetition UST Tranche B Loan Documents, the Prepetition UST Tranche B Loan Parties granted to the Prepetition UST Tranche B Agent, for the benefit of

the Prepetition UST Tranche B Secured Parties, a security interest in and continuing lien on (the "Prepetition UST Tranche B Liens," together with the Prepetition UST Tranche A Liens, the "Prepetition UST Liens") substantially all of their respective assets and property (collectively, the "Prepetition UST Tranche B Collateral"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the UST Tranche B Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition UST Tranche B Priority Collateral" and together with the Prepetition UST Tranche A Collateral and the Prepetition UST Tranche B Collateral, the "Prepetition UST Collateral"), subject and subordinate only to any liens permitted by the Prepetition UST Tranche B Loan Documents to be senior to the Prepetition UST Tranche B Liens, solely to the extent that such permitted liens are (a) valid, perfected, and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "Prepetition UST Tranche B Permitted Senior Liens"); (ii) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the Prepetition Joint Collateral, subject and subordinate only to the *pari passu* liens of the Prepetition B-2 Agent and the Prepetition UST Tranche B Permitted Senior Liens on the Prepetition Joint Collateral; (iii) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition B-2 Priority Collateral, subject and subordinate only to the senior liens of the Prepetition B-2 Agent and Prepetition ABL Agent and *pari passu* liens of Prepetition UST Tranche A Agent and the Prepetition UST Tranche B Permitted Senior Liens on the Prepetition B-2 Priority

12

Collateral; and (iv) a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL Priority Collateral, subject only to the senior liens of the Prepetition ABL Agent and Prepetition B-2 Agent and *pari passu* liens of the Prepetition UST Tranche A Agent and the Prepetition UST Tranche B Permitted Senior Liens on the Prepetition ABL Priority Collateral;

(ix)    *Waiver of Challenge*.  None of the Prepetition UST Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(x)    *No Control*.  None of the Prepetition UST Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted, or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition UST Loan Documents;

(xi)    *No Claims or Causes of Action*.  No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition UST Secured Parties and each of their respective UST Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition UST Secured Party that were in existence as of the Petition Date; and

(xii)    *Release*.  Each of the Debtors and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby (a) reaffirms the releases granted pursuant to paragraph G(xii) of

13

the Interim UST Cash Collateral Order and (b) absolutely, unconditionally and irrevocably releases, relinquishes, waives and forever discharges and acquits the Prepetition UST Secured Parties, and each of their respective UST Representatives (as defined below) solely in their capacities as such (individually, a "UST Released Party," and collectively, the "UST Released Parties"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the Prepetition UST Secured Parties' ownership of the Debtors' stock and the Prepetition UST Loan Documents, the negotiation thereof, and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the UST Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Final UST Cash Collateral Order; *provided*, that, the release set forth in this section shall not release any claims against or liabilities of a UST Released Party that a court of competent jurisdiction determines has resulted from such UST Released Party's bad faith, fraud, gross negligence, or willful misconduct.

      H.     *Findings Regarding Use of UST Cash Collateral.*

      (i)     Good and sufficient cause has been shown for the entry of this Final UST Cash Collateral Order and for authorization of the Debtors to use the Prepetition UST Collateral (including UST Cash Collateral).

(ii)     The Debtors have demonstrated a continued immediate and critical need to use the UST Cash Collateral in order to fund the Chapter 11 Cases and maximize the value of their estates through the continuation of an orderly winddown process of their businesses and a comprehensive sale process for their assets.  Without the ability of the Debtors to access sufficient liquidity through the continued use of UST Cash Collateral, as set forth in this Final UST Cash Collateral Order, the Debtors, their estates, and parties-in-interest would be unable to preserve and maximize the value of their estates.  Accordingly, access to the UST Cash Collateral as set forth in this Final UST Cash Collateral Order is necessary to maximize the value of the assets of the Debtors' estates to maximize the recovery to all creditors of the estates.

(iii)     Based on the Motion, the First Day Declaration, the Kaldenberg Declaration, the Whittman Declaration, the findings set forth in the Interim UST Cash Collateral Order and this Final UST Cash Collateral Order, and the record and argument presented to the Court at the Interim Hearing and the Final Hearing, the terms of the UST Adequate Protection (as defined below) granted to the Prepetition UST Secured Parties and the terms on which the Debtors may continue to use Prepetition UST Collateral (including UST Cash Collateral) pursuant to this Final UST Cash Collateral Order are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

(iv)     The UST Cash Collateral Orders, the UST Adequate Protection (as defined below), and the use of the Prepetition UST Collateral (including UST Cash Collateral) have been negotiated in good faith and at arm's length among the Debtors, the Prepetition UST Secured Parties, the DIP Secured Parties, and the Prepetition Secured Parties (each of whom acted in good faith in negotiating the foregoing).  The financial accommodations extended by the Prepetition

15

UST Secured Parties to the Debtors under, in respect of, or in connection with the Debtors' use of the Prepetition UST Collateral (including the UST Adequate Protection Liens (as defined below) and all other UST Adequate Protection provided herein) shall be deemed to have been extended by the Prepetition UST Secured Parties in good faith, and such Prepetition UST Secured Parties (and their respective successors and assigns) were, by the Interim UST Cash Collateral Order, and hereby shall on a final basis be, entitled to the full protections of the Bankruptcy Code in the event that the Interim UST Cash Collateral Order, this Final UST Cash Collateral Order, or any provision thereof or hereof is vacated, reversed or modified, on appeal or otherwise.

(v)     The Prepetition UST Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the UST Cash Collateral Orders, the DIP Orders, and the use of UST Cash Collateral, any challenges or objections to the use of UST Cash Collateral, and all other documents related to and all transactions contemplated by the foregoing. Accordingly, without limitation to any other right to indemnification, the Prepetition UST Secured Parties (which, by the Interim UST Cash Collateral Order, retained and maintained their right to indemnification under the Prepetition UST Loan Documents) shall be and hereby are on a final basis indemnified as provided in and pursuant to the terms and provisions of the Prepetition UST Loan Documents.

(vi)     The Prepetition UST Secured Parties were, by the Interim UST Cash Collateral Order, and hereby shall be on a final basis, entitled to the UST Adequate Protection (as defined below) as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed UST Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise

of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Prepetition UST Collateral, including UST Cash Collateral.

(vii)    To the extent that their consent is required, the Prepetition UST Secured Parties had, under the Interim UST Cash Collateral Order, and hereby have on a final basis consented to, or are deemed on a final basis to have consented to, the Debtors' use of Prepetition UST Collateral, including UST Cash Collateral, on the terms set forth in the UST Cash Collateral Orders; *provided*, that, nothing in the UST Cash Collateral Orders, the DIP Orders, or the DIP Loan Documents shall (x) be construed as the affirmative consent by the Prepetition UST Secured Parties for the use of Prepetition UST Collateral[5] and UST Cash Collateral other than on the terms set forth in this Final UST Cash Collateral Order, (y) be construed as a consent by the Prepetition UST Secured Parties to the terms of any financing or lien encumbering Prepetition UST Collateral (whether senior or junior) other than as contemplated by this Final UST Cash Collateral Order (or, as applicable, the Final DIP Order), or (z) prejudice, limit, or otherwise impair the rights of the Prepetition UST Secured Parties to seek new, different, or additional adequate protection or to assert any other available right under law, and the rights of any other party in interest, including the Prepetition UST Secured Parties, were, by the Interim UST Cash Collateral Order, and are

---

[5]    For the avoidance of doubt, the term "<u>Prepetition UST Collateral</u>," including Prepetition UST Tranche A Collateral and Prepetition UST Tranche B Collateral in connection with any postpetition liens or claims, including the UST Adequate Protection Liens, the UST 507(b) Claims, the UST Adequate Protection Fees and Expenses, and the UST Adequate Protection Payments, and with respect to any intercreditor priorities, rights or obligations, including under this Final UST Cash Collateral Order, the Final DIP Order, the DIP Loan Documents, and the Prepetition Intercreditor Agreement, shall in each case include all Collateral that would have constituted such Prepetition UST Collateral (including any Prepetition UST Tranche A Collateral and Prepetition UST Tranche B Collateral) but for the commencement of the Chapter 11 Cases, including all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as such Prepetition UST Collateral (including any Prepetition UST Tranche A Collateral and Prepetition UST Tranche B Collateral), regardless of where located and notwithstanding any monetary cap in any mortgage with respect to any Prepetition UST Collateral.

hereby on a final basis preserved, subject to the terms and conditions of the Prepetition Intercreditor Agreement.

(viii)    The Debtors prepared and delivered to the advisors to the Prepetition UST Secured Parties the Initial DIP Budget (as defined in the DIP Orders). The Initial DIP Budget reflected, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each calendar week covered thereby. The Interim DIP Order provided that, subject to the review of, and approval from, among others, the Prepetition UST Secured Parties (such approval not to be unreasonably withheld), the Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Loan Documents, the DIP Orders, and the UST Cash Collateral Orders. Each subsequent budget,[6] once approved in accordance with the DIP Loan Documents, the DIP Orders, and the UST Cash Collateral Orders, shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget (as approved in accordance with the DIP Loan Documents, the DIP Orders, and the UST Cash Collateral Orders, an "Approved Budget"); *provided*, however, that any modification or amendment to the Approved Budget shall be provided to counsel for the Creditors' Committee no less than three (3) business days prior to the effectiveness of such modification or amendment. For the avoidance of doubt, the procedures by which each Approved Budget is reviewed and approved shall remain consistent with the terms of the review and approval process provided for in this Final UST Cash Collateral and the Final DIP Order even after such time as the DIP Obligations are paid and satisfied in full if the UST Adequate

---

[6]    For the avoidance of doubt, each subsequent budget shall be subject to the review of, and approval from, among others, the Prepetition UST Secured Parties (such approval of the Prepetition UST Secured Parties not to be unreasonably withheld).

Protection Obligations have not been paid and satisfied in full, but the review and approval process will only require the approval of the Prepetition UST Secured Parties (with the approval rights of the Prepetition ABL Secured Parties as set forth in the DIP Orders remaining in effect to the extent the Prepetition ABL Obligations have not been paid and satisfied in full) if the DIP Obligations have been paid and satisfied in full.

(ix)    Each of the Prepetition UST Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition UST Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition UST Collateral.

I.    *Immediate Entry*.   Sufficient cause exists for immediate entry of this Final UST Cash Collateral Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).   Absent the ability of the Debtors to continue to access and use UST Cash Collateral, the Debtors will be hindered from maximizing estate value.   Continued access and use of Prepetition UST Collateral (including UST Cash Collateral), in accordance with this Final UST Cash Collateral Order and the Approved Budget, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.   The Motion and this Final UST Cash Collateral Order comply with the requirements of Bankruptcy Local Rule 4001-2.

J.    *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens*.   Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.   Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the Creditors' Committee, or the Prepetition UST Secured Parties, to challenge the validity, priority,

19

enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien.  For the avoidance of doubt, the right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Senior Lien, and such right is expressly subject to the Postpetition B-2 Liens, the Junior DIP Liens, and the Prepetition Liens, including the Prepetition UST Liens.  The Prepetition UST Liens are continuing liens and the Prepetition UST Collateral is and will continue to be encumbered by such liens.

K.      *Intercreditor Agreement.*  Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement shall (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties and the Prepetition UST Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims or amounts payable in respect thereof), and (iii) not be deemed to be amended, altered, or modified by the terms of this Final UST Cash Collateral Order, the Final DIP Order, or the DIP Loan Documents, unless expressly set forth herein or therein, respectively.

L.      *Final DIP Order.* Contemporaneous with the entry of this Final UST Cash Collateral Order, the Court is entering the Final DIP Order authorizing the Debtors to, among other things, incur postpetition debt, grant adequate protection liens and superpriority administrative claims to the Prepetition Secured Parties in connection with the incurrence of such debt, and access and utilize Available ABL Cash Collateral (as defined in the Final DIP Order), in each case on a final basis.    This Final UST Cash Collateral Order has been entered separately, but contemporaneously, with the Final DIP Order, at the Prepetition UST Secured Parties' request to the Debtors for this separate and standalone Final UST Cash Collateral Order.  In the event of any

inconsistency between the UST Cash Collateral Orders and the DIP Orders, the DIP Orders shall control.

Based upon the Motion, the foregoing findings and conclusions, and the overall record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Granted*.  The Motion is granted on a final basis on the terms and conditions set forth in this Final UST Cash Collateral Order.  All objections to this Final UST Cash Collateral Order, to the extent not withdrawn, waived, settled, or resolved, are hereby overruled on the merits.

2.      *Protection of the DIP Lenders' and Prepetition UST Secured Parties' Rights.*[7]

(a)      Immediately upon delivery by the DIP Secured Parties to the Debtors of a Termination Notice or Carve-Out Trigger Notice, the Prepetition UST Secured Parties' consent to the Debtors' use of UST Cash Collateral shall be deemed automatically withdrawn and terminated.

(b)      Upon the occurrence and continuance of any of the below events (each, a "UST Cash Collateral Termination Event," and any such event being deemed a "UST Event of Default"), the Prepetition UST Agent (at the direction of the Prepetition UST Secured Parties), on not less than five (5) calendar days' notice to the DIP Agent and the Remedies Notice Parties (as defined in the Final DIP Order) (such five (5) calendar day period, the "Prepetition UST Remedies Notice Period"), and unless the Court orders otherwise (*provided*, that, during such period, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court (and, *provided*, *further*, that, if a request for such hearing is made prior to the end of the Prepetition UST Remedies Notice Period, then the Prepetition UST

---

[7]      The Prepetition UST Secured Parties' required approvals and consents set forth in this Final UST Cash Collateral Order shall be binding and applicable without regard to whether such approvals or consents are set forth in the DIP Orders or in the DIP Loan Documents.

Remedies Notice Period shall be continued until the Court hears and rules with respect thereto)) may terminate and/or revoke its and the Prepetition UST Secured Parties' consent to the Debtors' use of UST Cash Collateral (subject to the Carve-Out and related provisions, including Canadian Priority Charges) by delivering a termination notice (the "UST Cash Collateral Termination Notice") to the DIP Agent and the Remedies Notice Parties (as defined in the Final DIP Order): (i) the filing of any motion or pleading by the Debtors, or the entry of an order on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify the Interim UST Cash Collateral Order or this Final UST Cash Collateral Order in a manner materially adverse to the Prepetition UST Secured Parties without the consent of the Prepetition UST Secured Parties; (ii) the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors; (iii) the Debtors shall attempt to invalidate, reduce, or otherwise impair the Prepetition UST Secured Obligations; (iv) the dismissal of any of the Chapter 11 Cases; (v) the effective date of any plan of reorganization; (vi) the conversion of any of the Chapter 11 Cases to a case under chapter 7; (vii) the Debtors' failure to timely satisfy any of the Milestones (as defined below) (subject to extensions as provided herein) or otherwise materially comply with any of the terms of this Final UST Cash Collateral Order; (viii) the Debtors' failure to materially comply with any of the terms of the Final DIP Order in a manner that adversely affects the Prepetition UST Secured Parties; (ix) the Debtors' failure to maintain required insurance for the Prepetition UST Collateral; (x) the Debtors' failure to pay timely the UST Adequate Protection Fees and Expenses and the UST Adequate Protection Payments under this Final UST Cash Collateral Order; (xi) the DIP Secured Parties and the DIP Loan Parties amend or modify the DIP Term Sheet, the Junior DIP Credit Agreement, or the Postpetition B-2 Credit Agreement, or the DIP Secured Parties waive any rights held by such parties thereunder, in a manner that materially

22

and adversely affects the Prepetition UST Secured Parties without having obtained the written consent of the Prepetition UST Secured Parties to do so; (xii) an Approved Budget shall be updated, supplemented, replaced, or otherwise modified in a manner not reasonably acceptable to the Prepetition UST Secured Parties; (xiii) the Debtors make a payment or take an action that is not in material compliance with the Approved Budget that was approved and consented to by the Prepetition UST Secured Parties in accordance with this Final UST Cash Collateral Order; or (xv) the DIP Loan Documents are not consistent with the DIP Term Sheet and the DIP Orders or are otherwise not reasonably acceptable to the Prepetition UST Secured Parties or are updated, supplemented, amended, replaced or otherwise modified in a manner that adversely affects the Prepetition UST Secured Parties without having obtained the written consent of the Prepetition UST Secured Parties to do so.

(c)    Subject to the terms of the Prepetition Intercreditor Agreement, the DIP Orders, the Carve-Out, and the Canadian Priority Charges, following delivery of a Termination Notice, delivery of a Carve-Out Trigger Notice, or the occurrence and continuance of a UST Event of Default and delivery of a UST Cash Collateral Termination Notice, but prior to exercising the remedies set forth in this sentence below or any other remedies (other than those set forth below in sub-paragraph (d)), the Prepetition UST Secured Parties shall be required to file a motion with the Court seeking emergency relief (the "UST Stay Relief Motion") to be heard on not less than five (5) calendar days' notice to the Remedies Notice Parties (as defined in the Final DIP Order) (which may run concurrently with the Prepetition UST Agent Remedies Notice Period) for a further order of the Court fashioning any appropriate remedy, including modifying the automatic stay in the Chapter 11 Cases to permit the Prepetition UST Secured Parties to, subject in all respects to the Prepetition Intercreditor Agreement, the DIP Orders, and the Carve-Out and related

23

provisions (including the Canadian Priority Charges): (a) freeze monies or balances in the Debtors'
accounts provided such monies constitute Prepetition UST Collateral; (b) immediately set-off any
and all amounts in accounts maintained by the Debtors with the Prepetition UST Agent or the
Prepetition UST Secured Parties against the UST Adequate Protection Obligations, (c) enforce any
and all available rights against the Prepetition UST Collateral including, without limitation,
foreclosing on all or any portion of such collateral, occupying the Debtors' premises, and selling
or disposing of such collateral; and (d) take any other actions or exercise any other rights or
remedies with respect to the Prepetition UST Collateral permitted under this Final UST Cash
Collateral Order, the Final DIP Order, the DIP Loan Documents, or applicable law; *provided*, that,
for the avoidance of doubt, the Prepetition UST Secured Parties may not take any of the foregoing
actions with respect to Prepetition B-2 Priority Collateral until all B-2 Obligations are paid in full
in cash.  If the Prepetition UST Secured Parties are permitted and authorized by the Court to take
any enforcement action with respect to the Prepetition UST Collateral following the hearing on
the UST Stay Relief Motion, the Debtors shall cooperate with the Prepetition UST Secured Parties
in their efforts to enforce their security interest in the Prepetition UST Collateral, and shall not
take or direct any entity to take any action designed or intended to hinder or restrict in any respect
such Prepetition UST Secured Parties from enforcing their security interests in such collateral.
Until such time that the UST Stay Relief Motion has been adjudicated by the Court, the Debtors
may use UST Cash Collateral to fund operations and other activities, actions, and payments, in
each case in accordance with the Approved Budget, for the purpose of avoiding immediate and
irreparable harm to the estates and the Debtors' assets and the preservation thereof.

        (d)     No rights, protections or remedies of the Prepetition UST Secured Parties
granted by this Final UST Cash Collateral Order shall be limited, modified or impaired in any way

by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use UST Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use UST Cash Collateral; (iii) the terms of any other order or stipulation related to the Debtors' continued use of UST Cash Collateral or the provision of adequate protection to any party; or (iv) the termination of the DIP Facility; *provided*, any inconsistency between the UST Cash Collateral Orders and the DIP Orders and/or the Prepetition Intercreditor Agreement shall be resolved by reference to the DIP Orders and/or the Prepetition Intercreditor Agreement, as applicable.

3.    *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Carve-Out and the Canadian Priority Charges, no costs or expenses of administration of these Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the Prepetition UST Collateral (including UST Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition UST Agent, and no consent shall be implied from any action, inaction or acquiescence by any of the Prepetition UST Secured Parties, and nothing contained in this Final UST Cash Collateral Order shall be deemed to be a consent by the Prepetition UST Secured Parties to any charge, lien, assessment or claims against the Prepetition UST Collateral under section 506(c) of the Bankruptcy Code or otherwise.  Further, in no event shall the "equities of the case" exception under section 552(b) of the Bankruptcy Code apply to the Prepetition UST Secured Parties.

4.    *No Marshaling.*  In no event shall the Prepetition UST Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar

doctrine with respect to the Prepetition UST Collateral or the Prepetition UST Secured Obligations, as applicable; *provided*, however, that the Prepetition UST Secured Parties and the Prepetition Secured Parties shall use commercially reasonable efforts to first collect from Collateral other than Avoidance Proceeds if necessary to satisfy the Prepetition UST Secured Obligations and the UST Adequate Protection Obligations, as applicable.

5.      *Payments Free and Clear.*   Any and all payments or proceeds remitted to the Prepetition UST Secured Parties pursuant to the provisions of the DIP Loan Documents, the DIP Orders, or the UST Cash Collateral Orders or any subsequent order of the Court were, by the Interim UST Cash Collateral Order, and shall be on a final basis, subject to the provisions of paragraph 7(c)(iv), the reservation of rights set forth below in paragraph 11 and the provisions of paragraph 12 of this Final UST Cash Collateral Order with respect to the Prepetition UST Secured Parties, irrevocable, received free and clear of any claim, charge, assessment or other liability.

6.      *Use of UST Cash Collateral.*   The Prepetition UST Secured Parties have consented to, and the Debtors were, by the Interim UST Cash Collateral Order, and are hereby authorized to on a final basis, solely on the terms and conditions of this Final UST Cash Collateral Order, to use all Prepetition UST Collateral (including UST Cash Collateral) in accordance with the Approved Budget, subject to Permitted Variances (as defined in the Junior DIP Credit Agreement).

7.      *Adequate Protection of Prepetition UST Secured Parties.*   Pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition UST Collateral (including UST Cash Collateral) for the aggregate Diminution in Value and as an inducement to the Prepetition UST Secured Parties to consent to priming of the Prepetition UST Tranche A Liens and Prepetition UST Tranche B Liens, in each case solely in the Prepetition B-2 Priority Collateral, and the use of their UST Cash Collateral, the Prepetition UST

Secured Parties are granted the following adequate protection (collectively, the "UST Adequate Protection"):

    (a)    *Milestone Adequate Protection of the Prepetition UST Secured Parties.* As adequate protection for the Debtors' use of UST Cash Collateral, the Debtors shall meet timely the following milestones (the "Milestones"):

    (i)    No later than forty-five (45) calendar days after the Petition Date, the Court shall have entered the Bidding Procedures Order, in form and substance reasonably satisfactory to the Prepetition UST Secured Parties;

    (ii)    No later than fifteen (15) calendar days after the granting of the Interim DIP Order and the Interim UST Cash Collateral Order by the Court, the Canadian Court shall have issued the Canadian Initial Recognition Order and the Canadian Supplemental Order, each in form and substance reasonably satisfactory to the Prepetition UST Secured Parties.[8]

    (iii)    No later than forty-five (45) calendar days after the Petition Date, the Court shall have entered the Final DIP Order and the Final UST Cash Collateral Order, each in form and substance satisfactory to the Prepetition UST Secured Parties;

    (iv)    No later than fifteen (15) calendar days after the Court's granting of the Final DIP Order, the Borrower, in its capacity as foreign representative on behalf of the Debtors, shall have filed a motion with the Canadian Court for the recognition of, and the Canadian Court shall have issued, the Canadian Final DIP Recognition Order (capitalized terms used but not otherwise defined in this sub-paragraph (iv) shall have the meanings given to those terms in the

---

[8] Capitalized terms used but not otherwise defined in this sub-paragraph (ii) shall have the meanings given to those terms in the DIP Term Sheet or other DIP Loan Documents.

DOCS_DE:244851.1 96859/001

DIP Term Sheet or the DIP Loan Documents), each in form and substance reasonably satisfactory to the Prepetition UST Secured Parties;

(v)    No later than ninety (90) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids for the Prepetition B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net proceeds at least equal to $250 million;

(vi)    No later than one-hundred (100) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids pursuant to the Bidding Procedures Order which are not subject to any financing contingencies (but, for the avoidance of doubt, may be subject to receipt of environmental reports and/or title contingencies reasonably acceptable to buyer(s)) for the Prepetition B-2 Priority Collateral) for Prepetition B-2 Priority Collateral pursuant to the Bidding Procedures Order that would generate, in the aggregate, net proceeds at least equal to $450 million;

(vii)    No later than one-hundred-and-fifty (150) calendar days after the Petition Date (which may be extended to one-hundred-and-eighty (180) calendar days after the Petition Date with the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the Prepetition UST Secured Parties (in each case not to be unreasonably withheld)) and with the consent of the Junior DIP Lender in its sole discretion, the Debtors shall have consummated Dispositions in accordance with the Bidding Procedures Order that either (i) generated net proceeds of Prepetition B-2 Priority Collateral equal to at least 100% of the sum of the aggregate amount of DIP Obligations and Prepetition B-2 Obligations (each as defined in the Interim DIP Order) outstanding as of such date or (ii) is consummated through a credit bid of the outstanding DIP Obligations and Prepetition B-2 Obligations (and any other applicable obligations) in

28

connection with sales of Prepetition B-2 Priority Collateral (capitalized terms used but not otherwise defined in this sub-paragraph (vii) shall have the meanings given to those terms in the DIP Term Sheet or other DIP Loan Documents);

(viii)    No later than seventy (70) calendar days after the Petition Date, the Debtors shall have received unique, non-duplicative binding cash bids pursuant to the Bidding Procedures Order which are not subject to any financing contingencies (but, for the avoidance of doubt, may be subject to receipt of environmental reports and/or title contingencies reasonably acceptable to buyer(s)) for the Prepetition UST Tranche B Priority Collateral) for the Prepetition UST Tranche B Priority Collateral pursuant to the Bidding Procedures Order; *provided* that the Debtors have conducted the sale process in respect of the Prepetition UST Tranche B Priority Collateral in material compliance with the Bidding Procedures (as defined in the Bidding Procedures Order) approved by the Bidding Procedures Order.

(ix)    No later than ninety (90) calendar days after the Petition Date, the Debtors shall have consummated dispositions in accordance with the Bidding Procedures Order that either (i) generated net proceeds of Prepetition UST Tranche B Priority Collateral equal to at least 100% of the sum of the aggregate amount of the Prepetition UST Tranche B Obligations outstanding as of such date or (ii) is consummated through a credit bid of the outstanding Prepetition UST Tranche B Obligations; *provided*, that, if the sale(s) of assets constituting Prepetition UST Tranche B Priority Collateral are timely consummated in accordance with the foregoing but do not generate sufficient proceeds to satisfy the foregoing provision (i), such date shall be extended to one-hundred-and-fifty (150) calendar days after the Petition Date with respect to the amount of any remaining Prepetition UST Tranche B Obligations outstanding after such date; *provided*, *further*, that such date may be extended to one-hundred-and-eighty (180) calendar

days after the Petition Date with the consent of the Prepetition ABL Agent, the Prepetition B-2

Agent, and the Prepetition UST Secured Parties (in each case not to be unreasonably withheld)

and with the consent of the Junior DIP Lender in its sole discretion.

(b)    *Reporting to the Prepetition UST Secured Parties*.    The Debtors shall

continue to deliver to the Prepetition UST Secured Parties (substantially concurrent with delivery

to the DIP Agent, the Prepetition ABL Agent, and the Creditors' Committee as required by the

DIP Loan Documents) all financial statements, reports, certificates, and related items that are

required to be delivered to the DIP Agent or the Prepetition ABL Agent pursuant to the DIP Loan

Documents and/or the DIP Orders (collectively, the "Reporting Requirements"); *provided*, that, to

the extent it would violate applicable securities laws, the Prepetition UST Secured Parties shall

have, under the Interim UST Cash Collateral Order, and shall hereby on a final basis continue to,

refrain, and were, by the Interim UST Cash Collateral Order, prohibited, and hereby on a final

basis shall remain prohibited, from trading in the Debtors' stock upon receipt of any information,

materials, or reporting whatsoever constituting material non-public information provided to the

Prepetition UST Secured Parties and their counsel and advisors pursuant to the Reporting

Requirements and this paragraph.    Additionally, the Debtors shall continue to make the members

of their senior management and its professional advisors available for update calls at least one time

per calendar week with the Prepetition UST Secured Parties and their respective professional

advisors, at times reasonably acceptable to the Prepetition UST Secured Parties to discuss the

cases, the then-current Approved Budget, the Budget Variance Reports, the Liquidity Reports

(each as defined in the DIP Term Sheet), other reporting delivered pursuant to DIP Loan

Documents, and/or the DIP Orders, union matters, the status of any monetization strategies being

pursued by the Debtors, including pursuant to the Bidding Procedures Order (as defined in the DIP

Term Sheet), and any other matters (including business, operational and due diligence matters) reasonably requested by the Prepetition UST Secured Parties.

(c)     *Adequate Protection of Prepetition UST Tranche B Secured Parties.*

(i)     *UST Tranche B Adequate Protection Liens.*  The Prepetition UST Tranche B Agent was, by the Interim UST Cash Collateral Order, and is hereby granted on a final basis, for the benefit of the Prepetition UST Tranche B Secured Parties, effective and perfected upon the date of the entry of the Interim UST Cash Collateral Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition UST Tranche B Secured Parties' Diminution in Value upon all of the DIP Collateral (the "UST Tranche B Adequate Protection Liens"): (i) in the case of the Prepetition Joint Collateral and Prepetition UST Tranche B Priority Collateral, subject solely to the Carve-Out and the Canadian Priority Charges, and (in the case of the Prepetition Joint Collateral) *pari passu* with the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens of the B-2 Secured Parties; (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens of the B-2 Secured Parties with respect thereto, (D) the Junior DIP Liens with respect thereto, (E) the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, and *pari passu* with the UST Tranche A Adequate Protection Liens (as defined below); (iii) in the case of the Prepetition ABL Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens and the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, (D) the Prepetition

31

Liens, Adequate Protection Liens, and Postpetition B-2 Liens of the B-2 Secured Parties with respect thereto, and *pari passu* with the UST Tranche A Adequate Protection Liens; and (iv) in the case of the Unencumbered Property (as defined in the Final DIP Order) (other than the DIP Proceeds Account (as defined in the Final DIP Order), on which the UST Tranche B Secured Parties and the UST Tranche A Secured Parties have no Lien), subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Junior DIP Liens, (D) the Postpetition B-2 Liens, (E) the Prepetition Liens and Adequate Protection Liens of the Prepetition B-2 Secured Parties, (F) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, and (G) *pari passu* with the Prepetition UST Tranche A Secured Parties.

(ii)     *UST Tranche B Section 507(b) Claims*.   The Prepetition UST Tranche B Secured Parties were, by the Interim UST Cash Collateral Order, and are hereby on a final basis granted allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition UST Tranche B Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "UST Tranche B 507(b) Claims"), which UST Tranche B 507(b) Claims, were, by the Interim UST Cash Collateral Order, and hereby shall be on a final basis payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but including, subject in all respects to paragraph 4 of this Final UST Cash Collateral Order, Avoidance Proceeds).  Except as and to the extent otherwise provided herein, the UST Tranche B 507(b) Claims shall have priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the

32

Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that (i) the UST Tranche B 507(b) Claims shall be in all cases junior to the Carve-Out and the Canadian Priority Charges; (ii) with respect to the Prepetition ABL Priority Collateral, the UST Tranche B 507(b) Claims shall be *pari passu* with the UST Tranche A 507(b) claims, the Prepetition UST Tranche A Obligations and the Prepetition UST Tranche B Obligations, and junior to, in the following order, (A) the ABL 507(b) Claims and the Prepetition ABL Obligations and (B) the B-2 507(b) Claims, the Prepetition B-2 Obligations and the Postpetition B-2 Superpriority Claims; (iii) with respect to the Prepetition UST Tranche B Priority Collateral, the UST Tranche B 507(b) Claims shall be senior to, in the following order, (A) the B-2 507(b) Claims, the Prepetition B-2 Obligations and the Postpetition B-2 Superpriority Claims, (B) the ABL 507(b) Claims and the Prepetition ABL Obligations, (C) the UST Tranche A 507(b) Claims (as defined below) and the Prepetition UST Tranche A Obligations, and (D) the Junior DIP Superpriority Claims; (iv) with respect to the Prepetition Joint Collateral, the UST Tranche B 507(b) Claims shall be *pari passu* with the B-2 507(B) Claims, the Prepetition B-2 Obligations and the Postpetition B-2 Superpriority Claims and senior to, in the following order, (A) the ABL 507(b) Claims and the Prepetition ABL Obligations, (B) the UST Tranche A 507(b) Claims and the Prepetition UST Tranche A Obligations, and (C) the Junior DIP Superpriority Claims; and (v) with respect to the Prepetition B-2 Priority Collateral, the UST Tranche B 507(b) Claims shall be *pari passu* with the UST Tranche A 507(b) claims and junior to, in the following order, (A) the B-2 507(b) Claims, the Prepetition B-2 Obligations and the Postpetition B-2 Superpriority Claims, (B) the Junior DIP Superpriority Claims (excluding, for the avoidance of doubt, on account of the Additional Junior DIP Loans (if any are drawn)), and (C) the ABL 507(b) Claims and the Prepetition ABL Obligations; and (vi) with respect to Unencumbered

33

Property, the UST Tranche B 507(b) Claims shall be junior to (A) the Junior DIP Superpriority Claims, (B) the Postpetition B-2 Superpriority Claim, and (C) the B-2 507(b) Claims and ABL 507(b) Claims, and shall be *pari passu* with the UST Tranche A 507(b) Claims.

(iii)    *Prepetition and Postpetition UST Tranche B Secured Parties' Fees and Expenses.*  As further adequate protection, subject to the Carve-Out and the Canadian Priority Charges, the DIP Loan Parties shall continue to currently pay monthly in cash, subject to the procedures set forth in paragraph 11 of this Final UST Cash Collateral Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition UST Agent itself and the Prepetition UST Tranche B Secured Parties' legal and financial advisors, consisting of Arnold & Porter Kaye Scholer LLP, Houlihan Lokey Capital, Inc. (limited to the Houlihan Restructuring Fee as set forth herein), Hogan Lovells US LLP, and a local and foreign counsel in each relevant jurisdiction retained by each of the Prepetition UST Tranche B Secured Parties, including McCarthy Tétrault LLP and Borden Ladner Gervais LLP (as Canadian counsel to the Prepetition UST Lenders and the Prepetition UST Agent, respectively) (collectively, the "UST Tranche B Adequate Protection Fees and Expenses"); *provided*, however, that the UST Tranche B Adequate Protection Fees and Expenses shall be limited to fees and expenses incurred by such professionals on behalf of the Prepetition UST Tranche B Secured Parties in their capacity as such and by the Prepetition UST Agent itself and without duplication of the UST Tranche A Adequate Protection Fees and Expenses (as defined below).

(iv)    *UST Tranche B Adequate Protection Payments.* As further adequate protection, the DIP Loan Parties shall continue to pay monthly interest payments under the UST Tranche B Credit Agreement on or before the tenth (10th) calendar day of each month, beginning August 2023 and continuing thereafter (to the extent remaining payable) through the effective date

of the Debtors' chapter 11 plan, payable to the Prepetition UST Secured Parties at the Default Rate (as defined in the Prepetition UST Tranche B Credit Agreement) in cash (the "UST Tranche B Adequate Protection Payment" and, together with the Debtors' obligations to meet the Milestones, the Reporting Requirements, UST Tranche B Adequate Protection Liens and UST Tranche B 507(b) Claims, and the UST Tranche B Adequate Protection Fees and Expenses, the "UST Tranche B Adequate Protection Obligations"); *provided*, that, in the event any portion of such payments are not allowed under section 506(b) of the Bankruptcy Code, the Debtors and all other parties in interest reserved, under the Interim UST Cash Collateral Order, and continue hereby to reserve all rights to seek to disgorge or recharacterize such non-allowable interest payments as the payment of principal.

(v)     Notwithstanding anything to the contrary contained herein, or in the DIP Orders or in the DIP Loan Documents to the contrary, the claims and liens in respect of the Additional Junior DIP Loans (as defined in the Final DIP Order) shall not prime any claims or liens of the Prepetition UST Secured Parties and shall be junior in all respects to the claims and liens of the Prepetition UST Secured Parties, including in respect of any adequate protection claims and liens granted under this Final UST Cash Collateral Order, including, without limitation, the UST Adequate Protection Liens (as defined below), the UST 507(b) Claims (as defined below), and the UST Adequate Protection Obligations (as defined below).

(d)     *Adequate Protection of Prepetition UST Tranche A Secured Parties*.

(i)     *UST Tranche A Adequate Protection Liens*.  The Prepetition UST Tranche A Agent was, under the Interim UST Cash Collateral Order, and is hereby granted on a final basis, for the benefit of the Prepetition UST Tranche A Secured Parties, effective and perfected upon the date of the Interim UST Cash Collateral Order and without the necessity of the

35

execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition UST Tranche A Secured Parties' Diminution in Value upon all of the DIP Collateral (the "UST Tranche A Adequate Protection Liens" and together with the UST Tranche B Adequate Protection Liens, the "UST Adequate Protection Liens"): (i) in the case of the Prepetition ABL Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, (D) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens of the B-2 Secured Parties with respect thereto, and *pari passu* with the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties with respect thereto; (ii) in the case of the Prepetition B-2 Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens of the B-2 Secured Parties with respect thereto, (D) the Junior DIP Liens with respect thereto (excluding, for the avoidance of doubt, on account of the Additional Junior DIP Loans (if any are drawn)), (E) the Prepetition and the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto, and *pari passu* with the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties with respect thereto; (iii) in the case of the Prepetition UST Tranche B Priority Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties with respect thereto, (D) the Prepetition Liens, Adequate Protection Liens, and Postpetition B-2 Liens of the B-2 Secured Parties with respect thereto, and (E) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL

36

Secured Parties with respect thereto; (iv) in the case of the Prepetition Joint Collateral, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Prepetition Liens and Adequate Protection Liens of the Prepetition UST Tranche B Secured Parties and the Prepetition B-2 Secured Parties (including the B-2 Secured Parties' Postpetition B-2 Liens) with respect thereto, and (D) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties with respect thereto; and (v) in the case of the Unencumbered Property, subject and subordinate to, in the following order, (A) the Carve-Out, (B) the Canadian Priority Charges, (C) the Junior DIP Liens (excluding on account of Additional Junior DIP Loans), (D) the Postpetition B-2 Liens, and (E) the Prepetition Liens and Adequate Protection Liens of the Prepetition B-2 Secured Parties, (F) the Prepetition Liens and Adequate Protection Liens of the Prepetition ABL Secured Parties, and (G) *pari passu* with the Prepetition UST Tranche B Secured Parties.

(ii)     *UST Tranche A Section 507(b) Claims*.  The Prepetition UST Tranche A Secured Parties were, under the Interim UST Cash Collateral Order, and are hereby on a final basis granted allowed superpriority administrative expense claims against the Debtors on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition UST Tranche A Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "UST Tranche A 507(b) Claims," and together with the UST Tranche B 507(b) Claims, the "UST 507(b) Claims"), which UST Tranche A 507(b) Claims were, by the Interim UST Cash Collateral Order, and hereby shall on a final basis be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but including, subject in all respects to paragraph 4 of this Final UST Cash Collateral Order, Avoidance Proceeds).  Except as otherwise provided herein, the UST Tranche A 507(b) Claims shall have priority over any and all

administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; *provided*, *however*, that (i) the UST Tranche A 507(b) Claims shall be in all cases junior to the Carve-Out and the Canadian Priority Charges; (ii) with respect to the Prepetition ABL Priority Collateral, the UST Tranche A 507(b) Claims shall be *pari passu* with the Prepetition UST Tranche A Obligations, the UST Tranche B 507(b) Claims and the Prepetition UST Tranche B Obligations and junior to, in the following order, (A) the ABL 507(b) Claims and the Prepetition ABL Obligations and (B) the B-2 507(b) Claims, the Prepetition B-2 Obligations and the Postpetition B-2 Superpriority Claims; (iii) with respect to the Prepetition Joint Collateral, the UST Tranche A 507(b) Claims shall be junior to, in the following order, (A) the UST Tranche B 507(b) Claims, the Prepetition UST Tranche B Obligations, the B-2 507(b) Claims, the Prepetition B-2 Obligations and the Postpetition B-2 Superpriority Claims and (B) the ABL 507(b) Claims and the Prepetition ABL Obligations; (iv) with respect to the Prepetition UST Tranche B Priority Collateral, the UST Tranche A 507(b) Claims shall be junior to, in the following order, (A) the UST Tranche B 507(b) Claims and the Prepetition UST Tranche B Obligations, (B) the B-2 507(b) Claims, the Prepetition B-2 Obligations and the Postpetition B-2 Superpriority Claims and (C) the ABL 507(b) Claims and the Prepetition ABL Obligations; (v) with respect to the Prepetition B-2 Priority Collateral, the UST Tranche A 507(b) Claims shall be shall be *pari passu* with the Prepetition UST Tranche A Obligations, the UST Tranche B 507(b) Claims and the Prepetition UST Tranche B Obligations and junior to, in the following order, (A) the B-2 507(b) Claims, the Prepetition B-2 Obligations and the Postpetition B-2 Superpriority Claims, (B) the Junior DIP

Superpriority Claims, and (C) the ABL 507(b) Claims and the Prepetition ABL Obligations; and (vi) with respect to Unencumbered Property, the UST Tranche A 507(b) Claims shall be junior to (A) the Junior DIP Superpriority Claims, (B) the Postpetition B-2 Superpriority Claim, and (C) the B-2 507(b) Claims and ABL 507(b) Claims, and shall be *pari passu* with the UST Tranche B 507(b) Claims.

(iii)    *Prepetition and Postpetition UST Tranche A Secured Parties' Fees and Expenses*.  As further adequate protection, the DIP Loan Parties shall continue to currently pay monthly in cash, subject to the review procedures set forth in paragraph 11 of this Final UST Cash Collateral Order, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition UST Tranche A Agent itself and the Prepetition UST Tranche A Secured Parties' legal and financial advisors, consisting of Arnold & Porter Kaye Scholer LLP, Houlihan Lokey Capital, Inc. (limited to the Houlihan Restructuring Fee as described herein), Hogan Lovells US LLP, and a local and foreign counsel in each relevant jurisdiction retained by each of the Prepetition UST Tranche A Secured Parties, including McCarthy Tétrault LLP and Borden Ladner Gervais LLP (collectively, the "UST Tranche A Adequate Protection Fees and Expenses" and, together with the UST Tranche B Adequate Protection Fees and Expenses, the "UST Adequate Protection Fees and Expenses"); *provided*, however, that the UST Tranche A Adequate Protection Fees and Expenses shall be limited to fees and expenses incurred by such professionals on behalf of the Prepetition UST Tranche A Secured Parties in their capacity as such and by the Prepetition UST Tranche A Agent itself and without duplication of the UST Tranche B Adequate Protection Fees and Expenses.

(iv)    *UST Tranche A Adequate Protection Payments.* As further adequate protection, the DIP Loan Parties shall continue to pay monthly interest payments under the

Prepetition UST Tranche A Credit Agreement on or before the tenth (10th) calendar day of each month, beginning August 2023 and continuing thereafter through the effective date of the Debtors' chapter 11 plan, payable to the Prepetition UST Secured Parties at the Default Rate (as defined in the Prepetition UST Tranche A Credit Agreement) in cash (the "UST Tranche A Adequate Protection Payment" and, together with the Debtors' obligations to meet the Milestones, the Reporting Requirements, UST Tranche A Adequate Protection Liens, UST Tranche A 507(b) Claims, the UST Tranche A Adequate Protection Fees and Expenses, the "UST Tranche A Adequate Protection Obligations" and together with the UST Tranche B Adequate Protection Obligations, the "UST Adequate Protection Obligations"); *provided*, that, in the event any portion of such payments are not allowed under section 506(b) of the Bankruptcy Code, the Debtors and all other parties in interest reserved, under the Interim UST Cash Collateral Order, and continue to reserve on a final basis hereby all rights to seek to disgorge or recharacterize such non-allowable interest payments as the payment of principal.

(v)     Notwithstanding anything to the contrary contained herein, or in the DIP Orders or the DIP Loan Documents to the contrary, the claims and liens in respect of the Additional Junior DIP Commitment shall not prime any claims or liens of the Prepetition UST Secured Parties and shall be junior in all respects to the claims and liens of the Prepetition UST Secured Parties, including in respect of any adequate protection claims and liens granted under this Final UST Cash Collateral Order, including the UST Adequate Protection Liens, the UST 507(b) Claims, and the UST Adequate Protection Obligations.

8.     *Maintenance of Collateral*.  The Prepetition UST Loan Parties shall continue to maintain and insure the Prepetition UST Collateral in amounts and for the risks, and by the entities, as required under the Prepetition UST Loan Documents.

9.    *Authorization to Record UST Adequate Protection Liens*.

(a)    Without in any way limiting the validity of the automatic perfection of the UST Adequate Protection Liens under the terms of this Final UST Cash Collateral Order, the Prepetition UST Secured Parties were, by the Interim UST Cash Collateral Order, and are hereby on a final basis authorized, but not required, to execute in the name of the Prepetition UST Loan Parties, as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction, or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests granted to them hereunder (the "UST Perfection Actions").  All such UST Perfection Actions shall be deemed to have been taken on the date of entry of the Interim UST Cash Collateral Order.  The automatic stay shall be modified to the extent necessary to permit the Prepetition UST Secured Parties to take any UST Perfection Action.  For the avoidance of doubt, the UST Adequate Protection Liens were, under the Interim UST Cash Collateral Order, and shall hereby on a final basis be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim UST Cash Collateral Order, whether or not the Prepetition UST Secured Parties take such UST Perfection Actions.

(b)    A certified copy of this Final UST Cash Collateral Order may, in the discretion of the Prepetition UST Agent, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing and recording offices are hereby authorized to accept a certified copy of this Final UST Cash Collateral Order for filing and/or recording, as applicable.

10.     *Preservation of Rights Granted Under this Final UST Cash Collateral Order.*

(a)     Other than the claims and liens expressly granted or permitted by the UST Cash Collateral Orders and the DIP Orders, including the Carve-Out, no claim or lien having a priority superior to or *pari passu* with those granted by this Final UST Cash Collateral Order shall be permitted while any of the UST Adequate Protection Obligations remain outstanding, and, except as and to the extent otherwise expressly provided in or permitted under this Final UST Cash Collateral Order, including the provisions of paragraph 12 herein, the UST Adequate Protection Liens shall not be: (i) junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Prepetition UST Loan Parties; or (iv) junior to any intercompany liens or security interests of the Prepetition UST Loan Parties.

(b)     Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting the Chapter 11 Cases to Successor Cases: (A) the UST Adequate Protection Liens, the UST 507(b) Claims, and the Prepetition UST Liens shall continue in full force and effect, shall maintain their priorities as provided in this Final UST Cash Collateral Order and the Final DIP Order (subject to the Prepetition Intercreditor Agreement) and shall remain binding on all parties in interest until all UST Adequate Protection Obligations shall have been indefeasibly paid and satisfied in full (other than the Prepetition UST Liens, which shall continue in full force and effect until the indefeasible

payment or satisfaction in full of the Prepetition UST Secured Obligations); (B) the other rights granted by this Final UST Cash Collateral Order, including with respect to the Carve-Out and the Canadian Priority Charges, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final UST Cash Collateral Order.

(c)    If any or all of the provisions of this Final UST Cash Collateral Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any UST Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition UST Agent, its counsel, and the Prepetition UST Secured Parties, and their counsel, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, and enforceability of the Prepetition UST Liens, the UST Adequate Protection Liens, the UST 507(b) Claims, the Carve-Out, and the Canadian Priority Charges.  Notwithstanding any such reversal, modification, vacatur or stay, the UST Adequate Protection Obligations, UST Adequate Protection Liens, and UST 507(b) Claims incurred prior to the actual receipt of written notice by the Prepetition UST Agent of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Final UST Cash Collateral Order, and the Prepetition UST Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under section 363(m) of the Bankruptcy Code.

(d)    Except as and to the extent expressly provided in this Final UST Cash Collateral Order, the UST Adequate Protection Liens, the UST 507(b) Claims, and all other rights and remedies of the Prepetition UST Secured Parties granted by this Final UST Cash Collateral Order, as well as the Carve-Out and the Canadian Priority Charges, shall survive, and shall not be

43

modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these Chapter 11 Cases, or terminating the joint administration of these Chapter 11 Cases; (ii) approving the sale of any DIP Collateral or Prepetition UST Collateral pursuant to section 363(b) of the Bankruptcy Code; or (iii) confirming a chapter 11 plan in any of the Chapter 11 Cases.  The terms and provisions of this Final UST Cash Collateral Order shall continue in full force and effect in these Chapter 11 Cases and in any Successor Cases until all UST Adequate Protection Obligations are indefeasibly satisfied and paid in full in cash.  Any confirmation order entered in these Chapter 11 Cases shall not discharge or otherwise affect in any way the joint and several obligations of the Prepetition UST Loan Parties to the Prepetition UST Secured Parties, other than after (x) the satisfaction and payment in full and in cash of all UST Adequate Protection Obligations or (y) the occurrence of the effective date of such confirmed plan (solely in accordance with the terms of such plan).

11.    *Payment of Fees and Expenses*.

(a)    Subject to the review procedures set forth in this paragraph 11, payment of the UST Adequate Protection Fees and Expenses (which procedures shall apply solely with respect to such UST Adequate Protection Fees and Expenses that constitute professional fees and expenses) shall not be subject to allowance or review by the Court and the Prepetition UST Loan Parties are authorized and directed to pay monthly the UST Adequate Protection Fees and Expenses of the Prepetition UST Agent and the counsel retained by, or on behalf of, any of the Prepetition UST Secured Parties, consisting of Arnold & Porter Kaye Scholer LLP, Hogan Lovells US LLP, and a local and foreign counsel in each relevant jurisdiction retained by each of the Prepetition UST Secured Parties, including McCarthy Tétrault LLP and Borden Ladner Gervais LLP, without the need to file retention or fee applications; *provided*, that, the Houlihan

44

Restructuring Fee (as defined below) shall be payable solely upon the satisfaction in full, in cash, of the claims of the Prepetition UST Secured Parties by the Debtors.

(b)     For the avoidance of doubt, and notwithstanding anything herein to the contrary, (i) Houlihan Lokey Capital, Inc. is a party to that certain Financial Agency Agreement, dated October 24, 2022 (the "Financial Agency Agreement"), and the UST Adequate Protection Fees and Expenses shall include the Restructuring Fee (as defined in the Financial Agency Agreement, the "Houlihan Restructuring Fee")[9]; *provided* that, for the avoidance of doubt, the amount of fees and expenses to be paid by the Debtors to Houlihan shall in no event exceed $5,527,818.96 (the "Houlihan Fee Cap") and (ii) in the event of a Cash Collateral Termination Event under this Final UST Cash Collateral Order or a Termination Event under the Final DIP Order, the UST Adequate Protection Fees and Expenses, including the Houlihan Restructuring Fee up to the Houlihan Fee Cap, shall remain due and payable (whether such amounts were incurred before or after the Petition Date and whether such amounts were incurred or accrued before or after such Cash Collateral Termination Event or Termination Event) pursuant to the terms of this Final UST Cash Collateral Order.

(c)     The Prepetition UST Agent and the professionals for the Prepetition UST Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines; however, any time that such professionals seek payment of fees and out-of-pocket expenses from the Debtors prior to confirmation of a chapter 11 plan, each such professional shall provide summary copies of its invoices (including aggregate amounts of fees and expenses and total amount of time on a

---

[9]     The Houlihan Restructuring Fee is set forth in the Financial Agency Agreement as follows: "If [Houlihan Lokey Capital, Inc.] receives written notice from Treasury to engage with an issuer on a financial restructuring of [the Debtors'] obligation to the Treasury, then upon the completion of the financial restructuring [Houlihan Lokey Capital, Inc.] will receive a fee equal to seventy-five basis points (0.75%) of the principal amount of the claim held by Treasury of the [Debtors] capped at $7,500,000."

per-professional basis), which are not required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, to the Debtors and their counsel, the DIP Lenders, Prepetition UST Loan Parties and their counsel, counsel to any statutory committee (including the Creditors' Committee), and the U.S. Trustee (each, a "<u>UST Review Party</u>," and collectively, the "<u>UST Review Parties</u>"); *provided, however*, that (i) the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law; *provided*, *further*, that, the UST Review Parties reserved, under the Interim UST Cash Collateral Order, and hereby on a final basis reserve the right to seek additional information regarding such invoices and time entries of any such professional and/or to challenge any assertion of privilege with respect to the same.  Any objections raised by any UST Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) calendar days after receipt (the "<u>UST Review Period</u>").  If no written objection is received by 11:59 p.m., prevailing Eastern Time, on the last date of the UST Review Period, the Debtors shall pay such invoices within five (5) business days.  If an objection to a professional's invoice is received within the UST Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether the invoiced amount arose or was incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  The Prepetition UST Agent and attorneys and advisors to any Prepetition

UST Secured Party shall not be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(d)    Notwithstanding the foregoing, and without limiting any other UST Adequate Protection, the Debtors are hereby authorized and directed to pay (to the extent such amounts remain unpaid as of the entry of this Final UST Cash Collateral Order) to the Prepetition UST Agent and the Prepetition UST Secured Parties' professionals and financial advisors (as provided herein) any accrued and accruing unpaid UST Adequate Protection Fees and Expenses (including reasonable and documented legal fees and expenses), invoices of which were provided to lead counsel and financial advisor for the Debtors at least one (1) business day prior to the Closing Date, whether arising before or after the Petition Date, which costs, fees and expenses shall not be subject to the UST Review Period.  The UST Prepetition Agent and attorneys and advisors to the Prepetition UST Secured Parties were not, by the Interim UST Cash Collateral Order, and hereby on a final basis shall not be required to file an application seeking compensation for any services or reimbursement of expenses with the Court.

12.    *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements, and releases contained in this Final UST Cash Collateral Order shall be binding upon the Debtors in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements, and releases contained in this Final UST Cash Collateral Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or other party in interest with requisite standing has timely filed an adversary proceeding or

initiated a contested matter (subject to the limitations contained herein, a "UST Challenge Motion") (*provided*, that, no interested party shall be permitted to raise a defense to standing on the basis that the applicable Debtor is a Delaware limited liability company) by no later than (i) the earlier of (w) one business day before the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization, whichever occurs first, (x) as to the Creditors' Committee only, 100 calendar days after entry of the Interim UST Cash Collateral Order, (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the UST Challenge Period (as defined below), the UST Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) 75 calendar days from entry of the Interim UST Cash Collateral Order, or (B) the date that is 30 calendar days after their appointment, and (z) for all other parties in interest, 75 calendar days from entry of the Interim UST Cash Collateral Order; and (ii) any such later date as (x) has been agreed to in writing (which may be by email) by the Prepetition UST Secured Parties, or (y) has been ordered by the Court for cause upon a UST Challenge Motion filed and served within any applicable period or has been ordered by the Court after disposition or resolution of a UST Challenge Motion (the time period established by the foregoing clauses (i)-(ii), the "UST Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition UST Secured Obligations or the Prepetition UST Liens, or (B) asserting or prosecuting any UST Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "UST Challenges") against any Prepetition UST Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their

48

respective capacity as such (collectively, the "UST Representatives") in connection with or related to the Prepetition UST Secured Parties' ownership of the Debtors' stock, the Prepetition UST Loan Documents, the Prepetition UST Secured Obligations, the Prepetition UST Liens, or the Prepetition UST Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such UST Challenge; *provided*, *however*, that any pleadings filed in connection with a UST Challenge shall comply with the Federal Rules of Bankruptcy Procedure and set forth with specificity the basis for such UST Challenge and any UST Challenges not so raised prior to the expiration of the UST Challenge Period shall be deemed forever waived, released and barred. If no UST Challenge is timely and properly filed during the UST Challenge Period or the final non-appealable order is not entered in favor of the plaintiff in any such UST Challenge, then: (1) the Debtors' stipulations, admissions, agreements and releases contained in this Final UST Cash Collateral Order shall be binding on all parties in interest; (2) the obligations of the Prepetition UST Loan Parties under the Prepetition UST Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except as and to the extent provided in the Prepetition Intercreditor Agreement), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these Chapter 11 Cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than as provided in the Prepetition Intercreditor Agreement), or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation

49

by any person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their UST Representatives shall be deemed forever waived, released and barred.  If any UST Challenge is timely filed during the UST Challenge Period, the stipulations, admissions, agreements and releases contained in this Final  UST Cash Collateral Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such UST Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  If the Creditors' Committee files a motion seeking standing to commence a UST Challenge prior to the expiration of the UST Challenge Period in accordance with the requirements set forth in this Final UST Cash Collateral Order, the UST Challenge Period shall be extended (solely as to the Creditors' Committee and solely as to the UST Challenges specifically identified in the complaint attached to such standing motion) until the earlier of (i) the date such standing motion is withdrawn, or (ii) entry of a final non-appealable order of the Court denying such standing motion.  Nothing in this Final UST Cash Collateral Order vests or confers on any person or entity (each as defined in the

Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any UST Challenges with respect to the Prepetition UST Loan Documents, Prepetition UST Secured Obligations or Prepetition UST Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in these cases.  For the avoidance of doubt, any chapter 7 or chapter 11 trustee shall, until the expiration of the UST Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by the chapter 7 or chapter 11 trustee or any other party in interest on behalf of the Debtors' estates), be deemed to be a party (other than the Debtors) in such adversary proceeding or contested matter and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, and stipulations made by the Debtors in this Final UST Cash Collateral Order.

13.    *Limitation on Use of UST Cash Collateral*.  The limitation on the use of DIP Financing proceeds and collateral described in paragraph 20 of the Final DIP Order shall apply to the Debtors' use of the Prepetition UST Collateral (including UST Cash Collateral), including after termination of the DIP Facility.

14.    *Actions Taken Pursuant to the Interim Cash Collateral Orders*.  Except as specifically amended, superseded, or modified hereby, (i) the provisions of the Interim UST Cash Collateral Order and any actions taken by the Debtors and the Prepetition UST Secured Parties in accordance therewith shall remain in effect and are hereby ratified by this Final UST Cash Collateral Order, and (ii) any adequate protection granted to the Prepetition UST Secured Parties

under either the Interim UST Cash Collateral Order or the order entered at Docket No. 181 shall survive and are hereby reaffirmed and ratified.

15.    *Binding Effect; Successors and Assigns*.  The provisions of this Final UST Cash Collateral Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided*, that, the Prepetition UST Secured Parties shall have no obligation to permit the use of the Prepetition UST Collateral and UST Cash Collateral by, or to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

16.    *Limitation of Liability*.

(a)    Nothing in the UST Cash Collateral Orders, the DIP Orders, the DIP Term Sheet, the Junior DIP Credit Agreement, the Postpetition B-2 Credit Agreement, or other DIP Loan Documents, the Prepetition Loan Documents, the Prepetition UST Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any Prepetition UST Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. The Prepetition UST Secured

Parties were not, by the Interim UST Cash Collateral order, and hereby on a final basis shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

(b)    In determining to permit the use of the Prepetition UST Collateral (including UST Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Final UST Cash Collateral Order or Prepetition UST Loan Documents, as applicable, none of the Prepetition UST Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Final UST Cash Collateral Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition UST Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives (as defined in the Final DIP Order).

17.    *Master Proofs of Claim*.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or any Successor Cases, neither the Prepetition UST Agent, nor any other Prepetition UST Secured Parties shall be required

53

to file proofs of claim in these Chapter 11 Cases or any Successor Cases in order to assert claims for payment of any of the Prepetition UST Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the Prepetition UST Loan Documents or this Final UST Cash Collateral Order.  The Debtors' stipulations, admissions and acknowledgments of the claim and liens in respect of the Prepetition UST Secured Obligations set forth in this Final UST Cash Collateral Order is deemed to constitute timely proofs of claim in respect of all indebtedness, secured status and claims arising under the Prepetition UST Credit Documents and this Final UST Cash Collateral Order.  Nonetheless, in order to facilitate the processing of claims, the Prepetition UST Agent was, under the Interim UST Cash Collateral Order, and is hereby on a final basis authorized, but not directed or required, to file a master proof of claim in the Debtors' lead case *In re Yellow Corporation*, *et al*., Case No. 23-11069 (CTG), on behalf of the applicable Prepetition UST Secured Parties (each, a "Master Proof of Claim"), which shall be deemed to have been filed against each Debtor.  The provisions of this paragraph and the filing of Master Proofs of Claim, if any, are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition UST Secured Party (or its successors in interest) to vote separately on any plan filed in these cases.  Any Master Proof of Claim shall not be required to include any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition UST Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition UST Agent.

18.    *Credit Bidding*.  To the extent permitted by the Prepetition Intercreditor Agreement, the Prepetition UST Agent, or any assignee or designee of the Prepetition UST Agent, at the direction of the Prepetition UST Lenders pursuant to the Prepetition UST Credit Agreements and

on behalf of the Prepetition UST Lenders, had, under the Interim UST Cash Collateral Order, and hereby shall have on a final basis the unqualified and unconditional right to credit bid up to the full amount of the Prepetition UST Secured Obligations and the UST Adequate Protection Obligations (subject, for the avoidance of doubt, to section 363(k) of the Bankruptcy Code) in any sale of any of the Debtors' assets, including pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; *provided*, that, (i) no party shall be permitted to credit bid for Prepetition ABL Priority Collateral until such time that the Prepetition ABL Secured Parties have been paid in full or cash collateralized (as applicable) and (ii) no party shall be permitted to credit bid for Prepetition B-2 Priority Collateral until such time that the B-2 Obligations have been paid in full.  The Prepetition UST Agent at the direction of the Prepetition UST Lenders pursuant to the Prepetition UST Credit Agreements and on behalf of the Prepetition UST Lenders, had, under the Interim UST Cash Collateral Order, and hereby on a final basis shall have the absolute right to assign, sell, or otherwise dispose of its right to credit bid in connection with any credit bid by or on behalf of the Prepetition UST Tranche Secured Parties to any acquisition entity or joint venture formed in connection with such bid.

19.    *Provision Regarding Certain Taxing Authorities.*  Notwithstanding any provisions of the Motion, the Interim UST Cash Collateral Order, this Final UST Cash Collateral Order, or any agreements approved hereby, the statutory liens currently held by the Texas Taxing Authorities[10] and the Treasurer of Maricopa County, Arizona (the "Maricopa County Treasurer"),

---

[10]    "Texas Taxing Authorities" means all *ad valorem* taxing jurisdictions represented by the firms of McCreary, Veselka, Bragg & Allen, PC, Linebarger, Goggan, Blair and Sampson, and Perdue Brandon Fielder Collins and Mott LLP, including but not limited to Bowie Central Appraisal District, Central Appraisal District of Taylor County, Waco Independent School District, Lubbock Central Appraisal District, Maverick County Tax Office,

or which shall arise during the course of this case pursuant to applicable non-bankruptcy law for prepetition and postpetition ad valorem taxes and/or personal property taxes (the "Tax Liens") shall neither be primed by nor subordinated to any liens granted thereby or pursuant to this Final UST Cash Collateral Order to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities and the Maricopa County Treasurer are fully preserved.

20.     *Effectiveness.*  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final UST Cash Collateral Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final UST Cash Collateral Order.

21.     *Governing Order.*  Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to, in the case of the Debtors' usage of the Prepetition UST Collateral (including UST Cash Collateral), this Final UST Cash Collateral Order (including the Final DIP Order in the event of any inconsistency therewith), including compliance with the Approved Budget (subject to Permitted Variances (as defined in the DIP Term Sheet)) and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of the Motion and this Final UST Cash Collateral Order, regarding Prepetition UST Collateral (including UST Cash

---

Bexar County, Cypress-Fairbanks Independent School District, Dallas County, City of Eagle Pass, Eagle Pass Independent School District, City of El Paso, Fort Bend County, Harris County, Hidalgo County, Irving Independent School District, Jefferson County, City of McAllen, McLennan County, City of Mesquite, Nueces County, and Tarrant County.

Collateral), this Final UST Cash Collateral Order shall control; *provided*, that the Final DIP Order shall control any inconsistencies between the Final DIP Order and this Final UST Cash Collateral Order; *provided*, *further*, that, the Carve Out (as set forth in the DIP Orders) and any provision related to the Canadian Priority Charges were incorporated into the Interim UST Cash Collateral Order and are incorporated into this Final UST Cash Collateral Order by reference and shall survive any expiration or termination of the DIP Term Sheet and other DIP Loan Documents to the extent Prepetition UST Secured Obligations remain outstanding.

22.    *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this Final UST Cash Collateral Order.

23.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

24.    *No Third Party Rights*.  Except as and to the extent explicitly provided for herein, this Final UST Cash Collateral Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

25.    *Necessary Action*.  The Debtors and the Prepetition UST Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Final UST Cash Collateral Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Final UST Cash Collateral Order.

26.    *No Waiver by Failure to Seek Relief.* The failure or delay on the part of any of the Prepetition UST Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Final UST Cash Collateral Order, the Final DIP Order, the Prepetition UST

Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder, or otherwise. No delay on the part of any party in the exercise of any right or remedy under this Final UST Cash Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under this Final UST Cash Collateral Order shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the party against whom such amendment, modification, suspension, or waiver is sought. No consents required hereunder by any of the Prepetition UST Secured Parties shall be implied by any inaction or acquiescence by any of the Prepetition UST Secured Parties.

27.    *Retention of Jurisdiction*.    This Court shall retain jurisdiction to enforce the provisions of this Final UST Cash Collateral Order.