## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 22** |

**ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR THE
SALE OR SALES OF THE DEBTORS' ASSETS; (B) SCHEDULING
AUCTIONS AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF;
(C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES,
(D) SCHEDULING SALE HEARINGS AND APPROVING THE FORM AND MANNER
OF NOTICE THEREOF; (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the

Bidding Procedures attached hereto as **Exhibit 1**, (b) approving Bid Protections, (c) establishing

certain related dates and deadlines, (d) approving the form and manner of notice of the Auctions

attached hereto as **Exhibit 2** (the "Auction Notice"), (e) approving the Assumption and

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the Bidding Procedures, or the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 302] (the "Interim DIP Order," together with the Final Order (as defined therein), the "DIP Orders") or the *Interim UST Cash Collateral and Adequate Protection Order (I) Authorizing the Debtors to (A) Use UST Cash Collateral and All Other Prepetition UST Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 303] (the "Interim UST Cash Collateral Order," together with the Final UST Cash Collateral Order (as defined therein), the "UST Cash Collateral Orders"), as applicable.

Assignment Procedures, including the notices of potential assumption and proposed cure amounts attached hereto as **Exhibit 3** (the "Cure Notice"), (f) approving the form and manner of notice of the Winning Bidder(s) attached hereto as **Exhibit 4** (the "Notice of Winning Bidder"), and (g) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and upon the *Declaration of Cody Leung Kaldenberg in Support of the Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale or Sales of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief*] (the "Kaldenberg Declaration"); and the district court having jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order* of Reference from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate  and no other or further notice need or shall be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court on September [15], 2023 (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT**:[3]

1.    <u>Jurisdiction and Venue</u>.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.B.

2.    <u>Statutory and Legal Predicates</u>.    The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and Local Rules 2002-1, 6004-1, and 9006-1.C.

3.    <u>Sale Process</u>. The Debtors and their advisors engaged pre-petition and post-petition, and continue to engage with, a number of potential interested parties to solicit and develop the highest and otherwise best offers for the Assets.

4.    <u>Bidding Procedures</u>.   The Debtors have articulated good and sufficient business reasons for the Court to approve the bidding procedures attached hereto as **Exhibit 1** (the "<u>Bidding Procedures</u>").    The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the value of the proceeds of one or more sales (each, a "<u>Sale Transaction</u>") of all or substantially all of the Debtors' assets (the "<u>Assets</u>").    The Bidding Procedures were negotiated in good faith and at arm's-length and are reasonably designed to promote a competitive

---

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

and robust bidding process to generate the greatest level of interest in the Assets.    The Bidding

Procedures comply with the requirements of Local Rule 6004-1(c).

5.    <u>Stalking Horse Bidder</u>.  To the extent the Debtors select any Stalking Horse Bidder

(as defined below) with respect to the Assets (as applicable), any Bid Protections (as defined in

the Bidding Procedures) to the extent payable under any Stalking Horse Agreement (as defined

below) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the

meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code and treated as an allowed

administrative expense claim against the Debtors' estates pursuant to sections 503(b) and 507(a)(2)

of the Bankruptcy Code, in each case solely as approved in an order approving any Stalking Horse

Supplement (as defined below).

6.    <u>Auction Notice</u>.    The Auction Notice, substantially in the form attached hereto as

**<u>Exhibit 2</u>**, is reasonably calculated to provide interested parties with timely and proper notice of

the Auction(s) (if any) and Sale(s) with respect to the Assets, including, without limitation:  (a) the

date, time, and place of the Auction(s) (if any); (b) the Bidding Procedures; (c) reasonably specific

identification of the Assets to be sold pursuant to the Bidding Procedures; and (d) a description of

any Sale(s) pursuant to the Bidding Procedures as being free and clear of liens, claims,

encumbrances, and other interests (except as set forth in the applicable definitive Sale

documentation), with all such liens, claims, encumbrances, and other interests attaching with the

same validity and priority to the applicable Sale proceeds, and no other or further notice of any

Auction(s) (if any) and Sale(s) shall be required.

7.    <u>Assumption and Assignment Provisions</u>.  The Debtors have articulated good and

sufficient business reasons for the Court to approve the assumption and assignment procedures set

forth herein (the "<u>Assumption and Assignment Procedures</u>"),  which are fair, reasonable, and

4

appropriate.   The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

8.        Multnomah County, Oregon asserts it is the holder of first priority secured lien claims against the Assets subject to its liens pursuant to ORS 311.405(9)(a) for all ad valorem personal and real property taxes imposed on such Assets.

9.        Notice of Winning Bidder.  The Notice of Winning Bidder, substantially in the form attached hereto as **Exhibit 3**, is reasonably calculated to provide interested parties with timely and proper notice of any proposed Sale(s) with respect to the Assets, including, without limitation: (a) the Winning Bidder(s) for the Assets (as applicable), (b) the Back-Up Bidder(s), if applicable, (c) the key terms of the proposed Sale(s), and (d) the date, time, and place of the Sale Hearing(s) (as applicable).

10.       Cure Notice.  The  Cure Notice, the form of which is attached hereto as **Exhibit 4**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein (including the Assumption and Assignment Procedures), except as expressly required herein.

11.       Notice.  Notice of the Motion, the proposed Bidding Procedures, the proposed Assignment and Assumption Procedures, and the Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances of the Debtors' Chapter 11 Cases, such that no other or further notice need or shall be required or provided except as set forth in the Bidding

5

Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

12.    The Motion is GRANTED as set forth herein.

13.    All objections to the relief granted in this order (the "Order") that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**A.    The Bidding Procedures**

14.    The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved, are incorporated herein by reference, and shall govern the Bids and proceedings related to any Sale(s) of the Assets and the Auction(s) (if any) in all respects.   The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a "Qualified Bid," are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interests.   The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

15.    The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

16.    Subject to this Order, the Bidding Procedures, the DIP Orders, and the UST Cash Collateral Orders,[4] the Debtors, in the exercise of their reasonable business judgment and in a

---

[4]    Nothing contained in the Bidding Procedures or in this Bidding Procedures Order shall amend, waive, modify or extend the Milestones (as defined in the UST Cash Collateral Orders) and such Milestones shall remain in full force and effect.

6

manner consistent with their fiduciary duties and applicable law, shall have the right to, in each case with respect to any Assets being sold pursuant to the Bidding Procedures and in consultation with the Consultation Parties (as set forth in the Bidding Procedures), (a) determine which Qualified Bid is the highest or otherwise best offer for the applicable Asset(s), (b) reject any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors, and (c) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.  For the avoidance of doubt, Rolling Stock that is leased by the Debtors shall not be sold pursuant to the Bidding Procedures absent (z) the Debtors' purchase of said Rolling Stock prior to or as part of a Sale Transaction and/or (y) a separate and further agreement reached with the owner of said Rolling Stock; *provided* that the lease documents evidencing the Debtors' lease(s) of Rolling Stock remain subject to potential assumption and assignment in accordance with the applicable provisions of the Bankruptcy Code, assuming compliance with said provisions, including the requirements set forth in section 365 of the Bankruptcy Code.

17.     Subject to this Order, the Bidding Procedures, the DIP Orders, and the UST Cash Collateral Orders, the Debtors shall have the right, in their reasonable business judgment and in consultation with the Consultation Parties (as provided under the Bidding Procedures) and in a manner consistent with their fiduciary duties and applicable law, to modify the Bidding Procedures, including to, among other things, (a) extend or waive deadlines or other terms and conditions set forth therein, (b) adopt new rules and procedures for conducting the bidding and any Auction process, (c) if applicable, provide reasonable accommodations to a Stalking Horse Bidder, or (d) otherwise modify the Bidding Procedures to further promote competitive bidding for and

7

maximizing the value of the Assets; *provided* that such extensions, waivers, new rules and procedures, accommodations and modifications (except as are consented to or otherwise approved or permitted in accordance with the Bidding Procedures) (i) do not conflict with and are not inconsistent with this Order, the Bidding Procedures, the DIP Orders, the UST Cash Collateral Orders, the Bankruptcy Code or any order of the Court, (ii) do not impair or modify, in any material respect, the rights and obligations of the Real Estate Stalking Horse Bidder under the Real Estate Stalking Horse APA or otherwise violate the Real Estate Stalking Horse APA or affect the Real Estate Stalking Horse Bidder in a manner that would reasonably be expected to have a material and adverse effect on the Real Estate Stalking Horse Bidder that is disproportionate to the Real Estate Stalking Horse Bidder as compared to the effect on other Qualified Bidders for the Owned Properties subject of the Real Estate Stalking Horse APA generally, and (iii) are as promptly as practicable communicated to each Qualified Bidder or at the applicable Auction (if any).

18.     If the Debtors, in consultation with the Consultation Parties, determine not to conduct an Auction for Assets (as applicable), then the Debtors shall file a notice with the Court of such determination within one (1) business day of making such determination.

**B.      The Stalking Horse Bid and Bid Protections.**

19.     The Debtors shall be authorized, but not obligated, in an exercise of their reasonable business judgment and with the consent of the Consultation Parties, (a) to select one or more Qualified Bidders to act as stalking horse bidders in connection with any Sale Transaction (each, a "Stalking Horse Bidder," and any such bid (as applicable), each a "Stalking Horse Bid") and enter into a purchase agreement with respect to any such Sale Transaction with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder, to agree to the Bid Protections;

8

*provided* that the aggregate of the Breakup Fee and the total Expense Reimbursements shall in no event exceed three percent (3%) of the applicable cash Purchase Price; *provided further* that all expenses to be reimbursed to the Stalking Horse Bidder from the Debtors' estates must be documented, with such documentation provided to the Debtors, the Consultation Parties (including each of their respective counsel and advisors (as set forth in the Bidding Procedures), and the U.S. Trustee, who will have a 10-day review period upon receipt of such expense documentation. If there is an objection to any portion of the expenses by such parties during that time, such disputed portion of the expenses shall not be paid until the objection is resolved consensually or by the Court, with the remaining undisputed portion of the expenses paid as otherwise set forth herein.

20.     Except for a Stalking Horse Bidder to the extent of the Bid Protections provided to any such Stalking Horse Bidder (including the Real Estate Stalking Horse Bidder and Bid Protections provided thereto), no person or entity participating in the Debtors' sale process under the Bidding Procedures shall be entitled to any expense reimbursement, break-up fees, "topping" fees, termination fees, or other fees, payments, or reimbursements whatsoever in connection with any Bid, preparation thereof, or participation at the Auction(s) (if any) or generally under the Bidding Procedures; and, by submitting a Bid, such person or entity shall be deemed to have forever waived its right to request or to file with the Court any request for allowance or payment of any such expense reimbursement or fee(s), whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

21.     Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder (as required under the Bidding Procedures and/or any Stalking Horse Agreement) shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy

estates unless and until released from escrow to the Debtors pursuant to the terms of the Bidding Procedures, the applicable escrow agreement, or an order of the Court.

22.     The Debtors, in consultation with the Consultation Parties, may select a Stalking Horse Bidder (or Stalking Horse Bidders, as applicable) as the stalking horse purchaser (a "Stalking Horse") for substantially all of the Debtors' assets or any grouping or subset of the Assets.  In such instance(s), the Debtors shall file a supplement to the Motion (the "Stalking Horse Supplement") seeking approval of the same, providing no less than three (3) business days' notice of the deadline to object to the approval of the Stalking Horse Bid (including any proposed Bid Protections) to (i) the U.S. Trustee, (ii) and the Consultation Parties and (iii) those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases (the "Stalking Horse Notice Parties") with no other or further notice regarding the Stalking Horse, the Stalking Horse Bid, or the Bid Protections being required; *provided* that any Stalking Horse Supplement will (a) set forth the identity of the Stalking Horse (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse's parent company or sponsor), (b) set forth the amount of the Stalking Horse Bid, and, if the Stalking Horse is a credit bidder, what portion of its bid is a credit bid and what portion (if any) is cash; (c) state whether the Stalking Horse has any connection to the Debtors other than those that arise from the Stalking Horse bid, (d) specify any proposed Bid Protections, (e) attach the purchase agreement finalized with the Stalking Horse or otherwise summarize the material terms thereof; and (f) set forth the deadline to object to the Stalking Horse designation and any related Bid Protections.  For the avoidance of doubt, this Order does not make any findings or grant approval of any Bid Protections, including the granting of any break-up fees; any such Bid Protections, including any break-up fees, sought in connection with any Stalking Horse Bid shall be included in and subject

to the approval by the Court of the Stalking Horse Supplement and otherwise acceptable to the Consultation Parties.  For the avoidance of doubt and notwithstanding the foregoing, Court approval of the Real Estate Stalking Horse Bidder and the Real Estate Stalking Horse APA (each as defined in the Bidding Procedures) will be sought pursuant to a separate motion and order.

23.     Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse bid (including any proposed Bid Protections for such Stalking Horse Bidder) (a "<u>Stalking Horse Objection</u>") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof and (d) be filed with the Court and served on the Notice Parties (as defined below) within three (3) business days after the service of the Stalking Horse Supplement.

24.     If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid and in accordance with this Order and the Bidding Procedures.  If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the objection deadline, the Debtors will submit a proposed order to the Court approving the Stalking Horse Bid (including the Stalking Horse Agreement and the Bid Protections), which the Court may enter without a hearing and any further or other notice except as required herein or under the Bidding Procedures, including with respect to any Bid Protections set forth in the Stalking Horse Supplement.  For the avoidance of doubt, no determination is made in this Order with regard to authorizing any Bid Protections.  For the avoidance of doubt and notwithstanding the foregoing, Court approval of the Real Estate Stalking Horse Bidder and the Real Estate Stalking Horse APA will be sought pursuant to a separate motion and order.

**C.     Important Dates and Deadlines.**

25.     The following dates and deadlines are hereby approved:

### ROLLING STOCK TIMELINE

| Date and Time | Event or Deadline |
|---|---|
| October 11, 2023 | Cure Notice Deadline for Rolling Stock |
| October 13, 2023 at 5:00 p.m. (E.T.) | Bid Deadline for Rolling Stock |
| October 18, 2023 at 10:00 a.m. (E.T.) | Auction(s) (if required) for Rolling Stock Begin |
| October 23, 2023 | Notice of Winning Bidder(s) for Rolling Stock |
| October 25, 2023 at 5:00 p.m. (E.T.) | Sale Objection Deadline and Cure Objection Deadline for Winning Bid(s) for Rolling Stock |
| October 27, 2023 at [●] [a/p].m.] (E.T.) (subject to Court availability) | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) for Rolling Stock |
| As soon as practicable following Sale Hearing (and in no event later than November 3, 2023) | Sale Consummation for UST Rolling Stock |
| As soon as practicable following Sale Hearing[5] | Sale Consummation for B-2 Rolling Stock |

### REAL ESTATE (AND ALL OTHER ASSETS) TIMELINE

| Date and Time | Event or Deadline |
|---|---|
| October 26, 2023 | Cure Notice Deadline for Non-Rolling Stock Assets |
| November 9, 2023 at 5:00 p.m. (ET) | Bid Deadline for Non-Rolling Stock Assets (incl. Real Property Assets, Intellectual Property, and Other Assets) |
| November 9, 2023 at 5:00 p.m. (ET) | Cure Objection Deadline for Leased Properties |
| November 28, 2023 at 9:00 a.m. (ET) | Auction(s) (if required) for Non-Rolling Stock Assets Begin |
| December 1, 2023 | Notice of Winning Bidder(s) (and Back-Up Bidder(s), as applicable) for Non-Rolling Stock Assets |

---

[5] Consistent with the DIP Orders and the UST Cash Collateral Orders, the deadline for consummation of Sales of Assets constituting Prepetition B-2 Priority Collateral (January 3, 2024) may be extended to February 2, 2024 with the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the Prepetition UST Secured Parties (in each case not to be unreasonably withheld) and with the consent of the Junior DIP Lender in its sole discretion. Notwithstanding the foregoing, the Debtors intend to consummate such Sale(s) as soon as practicable following the applicable Sale Hearing.

| Date and Time | Event or Deadline |
|---|---|
| December 8, 2023 at 5:00 p.m. (ET) | Sale Objection Deadline and Adequate Assurance Objection Deadline for Winning Bid(s) (or Back-Up Bid(s), as applicable) for Non-Rolling Stock Assets |
| December 12, 2023 at [●] [a/p].m.] (E.T.) (subject to Court availability) | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) for Non-Rolling Stock Assets |
| As soon as practicable following Sale Hearing | Sale Consummation for Non-Rolling Stock Assets |

26.     The deadline by which Bids must be ***actually received*** by the Debtors and their advisors (as set forth in the Bidding Procedures) is: (a) with respect to the Rolling Stock, **October 13, 2023 at 5:00 p.m. (prevailing Eastern Time) on** (the "Rolling Stock Bid Deadline"); and (b) with respect to the Real Property Assets, Intellectual Property, and Other Assets (each as defined in the Bidding Procedures), **November 9, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the "Non-Rolling Stock Bid Deadline," and together with the Rolling Stock Deadline, each as applicable, the "Bid Deadline").

27.     Each Acceptable Bidder participating at an Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to any bidding (including preparing or submitting its Bid(s)) or any Sale Transaction, as set forth in the Bidding Procedures; and the Auction, if any, shall be transcribed or otherwise recorded.

28.     The Debtors shall file with the Court notice of the identity of the Winning Bidder(s) (as applicable), the amount of the Winning Bid(s) (as applicable) and, if the Winning Bidder (as applicable) is a credit bidder, what portion of its bid is a credit bid and what portion (if any) is cash, by: (a) with respect to the Rolling Stock, **October 23, 2023**; and (b) with respect to the Non-Rolling Stock Assets, **December 1, 2023**.  If the Winning Bidder is a special purpose entity, the

notice shall also identify the entity or entities that are its primary equity holders, or otherwise control, the special purpose entity.

29.     If an Auction is needed and held (a) for the Rolling Stock, such Auction shall commence on **October 18, 2023 at 10:00 a.m. (prevailing Eastern Time)** and (b) for the Non-Rolling Stock Assets, such Auction shall commence on **November 28, 2023 at 9:00 a.m. (prevailing Eastern Time)**, in each case unless otherwise rescheduled by the Debtors (with prior notice to the applicable Qualified Bidders) in consultation with the Consultation Parties.  Any Auction held will be conducted via remote video or in-person at the Debtors' election after consultation with the Consultation Parties.  The Debtors shall provide Qualified Bidders with notice of the date, time, and place of the applicable Auction (if any) no later than two (2) business days before such Auction; *provided* that such notice will be provided to Qualified Bidders no later than five (5) business days before such Auction in the event the Auction (a) will take place in-person outside of New York City, New York, or (b) will not be conducted via remote video (or with a remote video option).  As set forth more fully in the Bidding Procedures, only Qualified Bidders shall be entitled to bid for the applicable Assets at the applicable Auction (if any).

30.     Objections to the proposed order(s) approving any Winning Bid(s) (and/or designation of a Back-Up Bid(s), as applicable) (each, a "Sale Order," and such objections, "Sale Objections") must be made on or before: (a) in the case of the Rolling Stock, **October 25, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the, "Rolling Stock Sale Objection Deadline"); and (b) in the case of the Non-Rolling Stock Assets, **December 8, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the "Non-Rolling Stock Sale Objection Deadline," and together with the Rolling Stock Sale Objection Deadline, each as applicable, the "Sale Objection Deadline").  All Sale Objections must:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the

Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the Sale Objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be **_actually received_** no later than the applicable Sale Objection Deadline by the following parties (the "Notice Parties"):

| Proposed Co-Counsel to the Debtors[6] | Proposed Co-Counsel to the Debtors |
|---|---|
| Kirkland & Ellis LLP<br>601 Lexington Ave<br>New York, New York 10022<br>Allyson B. Smith (allyson.smith@kirkland.com)<br>Aaron Metviner (aaron.metviner@kirkland.com)<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Patrick J. Nash Jr., P.C. (patrick.nash@kirkland.com)<br>David Seligman P.C. (david.seligman@kirkland.com)<br>Steve Toth (steve.toth@kirkland.com)<br>Whitney Fogelberg (whitney.fogelberg@kirkland.com) | Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor, PO Box 8705<br>Wilmington, Delaware 19801<br>Laura Davis Jones (ljones@pszjlaw.com)<br>Timothy P. Cairns (tcairns@pszjlaw.com)<br>Peter J. Keane (pkeane@pszjlaw.com)<br>Edward Corma (ecorma@pszjlaw.com) |
| **Counsel to the Junior DIP Lender** | **The Prepetition UST Lenders and Counsel Thereto** |
| Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Susheel Kirplani<br>(susheelkirpalani@quinnemanuel.com)<br><br>Quinn Emmanuel Urquhart & Sullivan, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA 90017<br>Eric Winston (ericwinston@quinnemanuel.com)<br><br>Ropes & Gray LLP<br>191 North Wacker Drive, 32nd Floor<br>Chicago, IL 60606<br>Lucas S. Smith (Luke.Smith@ropesgray.com)<br><br>Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, NY 10036<br>Natasha S. Hwangpo<br>(Natasha.Hwangpo@ropesgray.com) | Arnold & Porter Kaye Scholer LLP<br>70 West Madison Street, Suite 4200<br>Chicago, Illinois 60602<br>Michael Messersmith<br>(Michael.Messersmith@arnoldporter.com)<br><br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, New York 10019<br>Benjamin Mintz (Benjamin.Mintz@arnoldporter.com)<br><br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Ave., N.W.<br>Washington, DC 20001,<br>Rosa Evergreen (Rosa.Evergreen@arnoldporter.com)<br><br>The U.S. Department of the Treasury<br>1100 L St NW Rm 7102<br>Washington, DC 20005-4035<br>I Heng.Hsu (I-Heng.Hsu@usdoj.gov)<br>Crystal Geise (Crystal.Geise@usdoj.gov) |
| **Counsel to the B-2 Lenders** | **Counsel to the Prepetition ABL Agent** |

---

6    Sale Objections regarding Canadian Assets shall also be served upon the Debtors' Canadian counsel, Goodmans LLP, Bay Adelaide Centre – West Tower, 333 Bay Street, Suite 3400, Toronto, ON M5H 2S7 (Attn: Robert Chadwick (rchadwick@goodmans.ca) and Caroline Descours (cdescours@goodmans.ca)).

| White & Case LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Scott Greissman (sgreissman@whitecase.com)<br>Elizabeth Feld (efeld@whitecase.com)<br>Andrew Zatz (azatz@whitecase.com) | Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Kevin Simard (ksimard@choate.com)<br>Hampton Foushee (hfoushee@choate.com) |
|---|---|
| **Counsel to the B-2 Agent and the Junior DIP Agent** | **Counsel to the Prepetition UST Agent** |
| Holland & Knight LLP<br>150 N. Riverside Plaza, Suite 2700<br>Chicago IL 60606<br>Joshua M. Spencer (Joshua.Spencer@hklaw.com)<br>Phillip W. Nelson (Phillip.Nelson@hklaw.com) | Hogan Lovells US LLP<br>390 Madison Avenue<br>New York, New York 10017<br>Ronald J. Silverman<br>(ronald.silverman@hoganlovells.com)<br>Christopher R. Bryant<br>(chris.bryant@hoganlovells.com) |
| **Counsel to the Creditors' Committee** | **Office of the United States Trustee (Region 3)** |
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park, Bank of America Tower<br>New York, NY 10036-6745 US<br>Philip C. Dublin (pdublin@akingump.com)<br>Meredith A. Lahaie (mlahaie@akingump.com)<br>Stephen B. Kuhn (skuhn@akingump.com)<br>Kevin Zuzolo (kzuzolo@akingump.com)<br><br>Benesch Friedlander Coplan & Aronoff LLP<br>1313 North Market Street, Suite 1201,<br>Wilmington, DE, 19801,<br>Jennifer R. Hoover (jhoover@beneschlaw.com)<br>Kevin M. Capuzzi (kcapuzzi@beneschlaw.com) | The Office of the United States Trustee<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Jane Leamy (jane.m.leamy@usdoj.gov)<br>Richard Schepacarter<br>(richard.schepacarter@usdoj.gov) |

31.     If any party fails to timely file with the Court and serve a Sale Objection by the applicable Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to any Sale Transaction(s), such party shall be barred from asserting, at the applicable Sale Hearing (as defined below) or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of the applicable Sale Transaction(s), including the transfer of the applicable Asset(s) to the applicable Winning Bidder(s) free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such Sale Transaction(s) for purposes of section 363(f) of the Bankruptcy Code.

32.     The Court will hold a hearing to consider approval of the Sale Transaction(s) contemplated by each Winning Bid (or Back-Up Bid(s)).  With respect to any Winning Bid(s) (or Back-Up Bid(s)) (a) for the Rolling Stock, the hearing will be held on **October 27, 2023 at [_]:[_] [a./p.]m**. **(prevailing Eastern Time)** and (b) for the Non-Rolling Stock Assets, the hearing will be held on **December 12, 2023 at [_]:[_] [a./p.]m**. **(prevailing Eastern Time)** (each, as applicable, the "Sale Hearing").  The applicable Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

**E.     Credit Bidding**

33.     Subject to the terms and conditions of the DIP Orders and the UST Cash Collateral Orders, any bidder holding a perfected security interest in any of the Assets (excluding the Junior DIP Secured Parties) may seek to credit bid all or a portion of such bidder's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "Credit Bid"); *provided* that such Credit Bid shall comply with the terms of the Bidding Procedures.  For the avoidance of doubt, a landlord holding a property interest in a Leased Property that submits a timely Bid for such Leased Property may receive a credit for all or a portion of such landlord's applicable, undisputed Cure Costs (as defined herein) in connection with such Bid.

34.     The Junior DIP Agent and the Junior DIP Lender have expressly waived any right to credit bid the Junior DIP Obligations (including the Additional Junior DIP Loans (if any are drawn)). In each case to the extent permitted by the Prepetition Intercreditor Agreement, but subject in all respects to the challenge period as set forth in the DIP Orders, (i) the Prepetition ABL Agent (on behalf, and at the direction, of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement) shall have the right to credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the Prepetition ABL Obligations and (y) the ABL Adequate

17

Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of ABL Priority Collateral, (ii) the B-2 Agent (on behalf, and at the direction, of the B-2 Lenders pursuant to the Postpetition B-2 Credit Agreement) shall have the unqualified and unconditional right to credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the B-2 Obligations and (y) the B-2 Adequate Protection Obligations in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding of Prepetition B-2 Priority Collateral, and (iii) the Prepetition UST Agent, or any assignee or designee of the Prepetition UST Agent, at the direction of the Prepetition UST Lenders pursuant to the Prepetition UST Credit Agreements and on behalf of the Prepetition UST Lenders, shall have the unqualified and unconditional right to credit bid, subject to section 363(k) of the Bankruptcy Code, (x) up to the full amount of the Prepetition UST Secured Obligations and (y) the UST Adequate Protection Obligations, in the sale or other disposition of any assets of the Debtors, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code, in each case, pursuant to a plan of reorganization or liquidation or by a chapter 7 trustee in a chapter 7 proceeding, and each Prepetition ABL Secured Party, B-2 Secured Party, and Prepetition UST Secured Party complying with the foregoing shall automatically be deemed a "qualified bidder" (and Acceptable Bidder (as defined in the Bidding Procedures)) with respect to any disposition of assets by the Debtors under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code;

*provided*, that, no party shall be permitted to credit bid for Prepetition ABL Priority Collateral until such time that the Prepetition ABL Parties have been indefeasibly paid in full in cash (or cash collateralized (as applicable).  The Prepetition ABL Agent at the direction of the requisite Prepetition ABL Lenders pursuant to the Prepetition ABL Credit Agreement and on behalf of the Prepetition ABL Lenders, the B-2 Agent at the direction of the B-2 Lenders and on behalf of the B-2 Lenders, and the Prepetition UST Agent at the direction of the Prepetition UST Lenders and on behalf of the Prepetition UST Lenders shall have the absolute right to assign, sell, or otherwise dispose of its right to credit bid to any acquisition entity or joint venture formed in connection with such bid.

**G.     Notice of Sale Transaction**

35.     The Auction Notice, substantially in the form attached to this Order as **Exhibit 2**, is approved with respect to any Auction which may be held under the Bidding Procedures.  Within three (3) business days of the entry of this Order, the Debtors shall cause the Auction Notice, the Motion, this Order, and all of this Order's exhibits and schedules to be served upon parties in interest and posted on the Debtors' restructuring webpage at https://dm.epiq11.com/YellowCorporation (or such other applicable URL) (the "Case Webpage").

36.     Within three (3) business days after entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall place a publication version of the Auction Notice for one day in *The New York Times* (national edition) and *The Globe and Mail*, and post it onto the Case Webpage.  Such notice shall be deemed sufficient and proper notice of the Bidding Procedures, the Sale(s) and the Auction(s) (if any) with respect to known interested parties and no other or further notice shall be required.

37.     Within two (2) business days after the conclusion of the applicable Auction (if any), or as soon as reasonably practicable thereafter and in accordance with the Bidding Procedures, the

Debtors will file on the docket the Notice of Winning Bidder substantially in the form attached to this Order as **Exhibit 4**.

**H.      Assumption and Assignment Procedures.**

38.      The Assumption/Assignment Procedures below are hereby approved in all respects and shall be the procedures by which the Debtors will notify any counterparties (the "Contract Counterparties") to executory contracts and unexpired leases with the Debtors (the "Contracts") of proposed cure amounts in the event the Debtors determine to assume and assign such Contracts in connection with any Sale Transaction.  Within (2) business days after completion of the applicable Auction, or as soon as practicable, to the extent the Debtors seek to assume and assign an executory contract and/or unexpired lease, the Debtors will provide via first class mail and/or email (to the extent email is reasonably known) information of all proposed forms of adequate assurance of future performance they have received from each Winning Bidder and Back-up Bidder, as applicable, to Contract Counterparties and their counsel, if known.  Requests by contract or lease counterparties to receive adequate assurance information via e-mail may be made to Debtors' counsel at: YellowAssignedContracts@kirkland.com.

39.      Nothing in this Order shall be deemed to limit the Debtors' ability to negotiate partial assumption and/or assumption and assignment of Contracts with Contract Counterparties on a consensual basis.

    a.      **Cure Notice**.  No later than fourteen (14) days prior to the Cure Objection Deadline for the Rolling Stock Assets and no later than fourteen (14) days prior to the Qualified Bid Deadline for the Non-Rolling Stock Assets, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notices, attached hereto as **Exhibit 3**, on the Contract Counterparties, and post the Cure Notice to the case website https://dm.epiq11.com/YellowCorporation.

    b.      **Content of Cure Notice**.  The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information:  (i) a list of the

applicable Contracts that may be assumed or assumed and assigned in connection with the Sale (the "Assigned Contracts," and each individually, an "Assigned Contract"); (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimates of the proposed amount necessary to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Costs"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that the deadline by which any Contract Counterparty to an Assigned Contract with respect to a Leased Property must file an objection to the proposed adequate assurance shall be **December 8, 2023 at 5:00 p.m. (ET)**; *provided*, *further*, that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Winning Bid.

c.    **Cure Objections**.  Cure Objections, if any, to a Cure Notice must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; *provided* that the Debtors may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

d.    **Effects of Filing a Cure Objection**.  A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in the Sale Order.

e.    **Dispute Resolution**.  Any Cure Objection to the assumption or assumption and assignment of an Assigned Contract or Cure Costs that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.  To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the Winning Bidder's reasonable discretion.  To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Winning Bidder, pending a resolution of the Cure Objection after notice and a hearing.  If a Cure Objection is not satisfactorily resolved, the Winning Bidder may determine that such Contract should not be assumed and assigned, in which case the Winning Bidder will not be responsible for any Cure Costs in respect of such contract.  Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Costs (any such objection, a "Cure Dispute"), the applicable Assigned Contract may be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower

amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

f.  **Supplemental Cure Notice**.  If the Debtors discover Contracts inadvertently omitted from the Cure Notice or the Winning Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the Sale, the Debtors may, after consultation with the Winning Bidder, at any time before the closing of the Sale supplement the Cure Notice with previously omitted Contracts or modify a previously filed Cure Notice, including by modifying the previously stated Cure Costs associated with any Contracts (the "Supplemental Cure Notice").

g.  **Objection to the Supplemental Cure Notice**.  Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection (a "Supplemental Cure Objection") only if such objection is to the proposed assumption or assumption and assignment of the applicable Contracts or the proposed Cure Costs, if any, modified by the Supplemental Cure Notice.  All Supplemental Cure Objections must: (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required, if any; (ii) include appropriate documentation in support thereof; and (iii) be filed no later than 5:00 p.m. (prevailing Eastern Time) on the date that is twenty-one (21) days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice.

h.  **Dispute Resolution of Supplemental Cure Objection**.  If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Costs, if any, and approve the assumption of the relevant Contracts.  If there is no such objection, then the Debtors shall obtain an order of this Court fixing the Cure Costs and approving the assumption of any Contract listed on a Supplemental Cure Notice.  Notwithstanding the foregoing, if a Supplemental Cure Objection relates solely to a Cure Dispute, the applicable Assigned Contract may be assumed by the Debtors and assigned to the Winning Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

## I.  **Miscellaneous.**

40.  Peapack Capital Corporation ("PCC") owns certain of the Rolling Stock, which it leases to the Debtors.  The Debtors and PCC are currently negotiating return of the PCC Rolling Stock, but out of an abundance of caution, all rights of PCC with respect to the sale of any PCC

Rolling Stock are expressly reserved to the extent such return is not effectuated. The Debtors acknowledge that absent a further written agreement with PPC they are not intending to sell the Equipment.

41.     All persons and entities that participate in the applicable Auction (if any) or bidding for any Asset(s) during the sale process under the Bidding Procedures shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the applicable Auction(s) (if any) or any other relief requested in the Motion or granted in this Order, (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

42.     The Debtors are authorized to take all steps and pay all amounts necessary or appropriate to implement the relief granted in this Order.

43.     This Order shall be binding on the Debtors and its successors and assigns, including any chapter 7 or chapter 11 trustee or other fiducially appointed for the estates of the Debtors.

44.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

45.     To the extent any provisions of this Order are inconsistent with the Motion, the terms of this Order shall control. To the extent any provisions of this Order are inconsistent with the Bidding Procedures, the terms of this Order shall control.

46. Nothing contained in the Motion or this Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount, validity or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

47. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

48. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

49. The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

DOCS_DE:244843.1 96859/001

50.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

51.    This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: September 15th, 2023          CRAIG T. GOLDBLATT
Wilmington, Delaware                 UNITED STATES BANKRUPTCY JUDGE

25