**EXHIBIT 1**

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES

On August 6, 2023 (the "Petition Date"), Yellow Corporation and the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

Thereafter, on September [●], 2023, the Court entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (C) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "Bidding Procedures Order"), by which the Court approved the bidding procedures set forth herein (these "Bidding Procedures").[2]

On August 8, 2023, Yellow Corporation (in such capacity, the "Foreign Representative") commenced a proceeding (the "Canadian Recognition Proceedings") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") seeking recognition of the Chapter 11 Cases and certain other relief which was granted by the CCAA Court on August 29, 2023 pursuant to Part IV of the *Companies' Creditors Arrangement Act* R.S.C. 1985, c. C 36, as amended (the

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    Unless otherwise specified herein, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order and its respective motion filed at Docket. No. 22 (the "Bidding Procedures Motion") or the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 302] (the "Interim DIP Order" and together with the final order approving such relief, the "DIP Orders") or the Interim UST Cash Collateral Order (as defined in the Interim DIP Order) (together with the final order approving such relief, the "UST Cash Collateral Orders"), as applicable.

"CCAA"). Alvarez & Marsal Canada Inc. was appointed information officer in the Canadian Recognition Proceedings (in such capacity, the "Information Officer").

Thereafter, on September [●], 2023, the Canadian Court granted an Order (the "Bidding Procedures Recognition Order") by which the Canadian Court recognized the Bidding Procedures Order and these Bidding Procedures.

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing and sale process (including pursuant to one or more Auctions (as defined below), if any) for the sale or sales (each, a "Sale")[3] of all or substantially all of the Debtors' assets (collectively, the "Assets"), through one or more transactions (each, a "Sale Transaction"), which Sale Transaction(s) may be effectuated through a Sale or Sales pursuant to section 363 of the Bankruptcy Code, and which Sale Transaction(s) may contemplate the Sale or Sales of one or more of the following Assets (and/or the assumption and assignment of leases, as applicable):

- any owned or leased vehicles, tractors, trucks, trailers, tank trailer and other trailers, or similar vehicles and trailers, railroad cars, locomotives, stacktrains and other rolling stock and accessories used on such railroad cars, locomotives or other rolling stock (including superstructures and racks) (collectively, the "Rolling Stock");[4]

- any owned or leased real estate of the Debtors, including (a) the Debtors' 174 owned properties (the "Owned Properties") and (b) any sale-leaseback equity, pursuant to capital lease agreements through which the Debtors lease 149 facilities (the "Leased Properties" and together with the Owned Properties, the "Real Estate" or the "Real Property Assets");

- any owned or licensed intellectual property, including any customer lists, trademarks, copyrights, domain names, or other similar intellectual property (collectively, the "Intellectual Property"); and

- any inventory, spare parts, supplies, accounts receivable, or other Assets not constituting Rolling Stock, Real Property Assets, or Intellectual Property (collectively,

---

[3]  Upon any Sale of Assets located in Canada or otherwise held by Debtors domiciled in Canada (collectively, the "Canadian Assets"), such Sale of Assets shall be subject to recognition of the Sale Order(s) in the Canadian Court through an order of the Canadian Court (such order, a "Canadian Sale Recognition Order"), which shall be a condition to closing such Sale(s). With respect to Sale(s) of Canadian Assets, the Foreign Representative will seek a Canadian Sale Recognition Order as soon as practicable following the applicable Sale Hearing (subject to the availability of the Canadian Court).

[4]  Rolling Stock constituting (a) Prepetition UST Tranche B Priority Collateral or Prepetition Joint Collateral shall be referred to herein as "UST Rolling Stock" and (b) Prepetition B-2 Priority Collateral shall be referred to herein as "B-2 Rolling Stock." For the avoidance of doubt, Rolling Stock that is leased by the Debtors shall not be sold pursuant to the Bid Procedures absent (i) the Debtors' purchase of said Rolling Stock prior to or as part of the Sale Transaction and/or (ii) a separate and further agreement reached with the owner of said Rolling Stock; *provided* that the lease documents evidencing the Debtors' lease(s) of Rolling Stock remain subject to potential assumption and assignment in accordance with the applicable provisions of the Bankruptcy Code, assuming compliance with said provisions, including the requirements set forth in section 365 of the Bankruptcy Code.

the "Other Assets," and together with the Real Property Assets and the Intellectual Property, the "Non-Rolling Stock Assets").[5]

Subject to the terms of these Bidding Procedures, a Potential Bidder (as defined below) may bid on the Assets (i) in individual lots, (ii) as a collective whole, or (iii) in any combination.

The ability of the Debtors to undertake and consummate any Sale of the Assets shall be subject to competitive bidding as set forth in these Bidding Procedures and approval of any Sale by the Court (and, if applicable, recognition of the applicable Sale Order by the Canadian Court). In addition to any Stalking Horse Bid (as defined below) for any or all of the Assets, the Debtors will consider bids for any or all of the Assets (including any combinations of Assets) in a single bid from a single bidder or in multiple bids from multiple bidders. Any bid for less than all of the Assets, even if such bid is the highest or otherwise best bid for such Asset(s), is and will be subject to higher or otherwise better bids on packages of Assets that may include such Asset(s). Similarly, any bid for all of the Assets is and will be subject to bids on individual Assets or packages of Assets that constitute, in the aggregate, higher or otherwise better bids for such Assets.

The Debtors, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties (as defined below), may elect to exclude any Assets from the Bidding Procedures and to sell such Assets pursuant to either a private or public sale, subject to Court approval, including, without limitation, pursuant to (as applicable) that certain *Order Approving Procedures for De Minimis Asset Transactions and Abandonment of De Minimis Assets* [Docket No. [●] (the "De Minimis Asset Sale Order"); *provided*, however, that, at any time prior to the termination of the Real Estate Stalking Horse APA, the Debtors shall not exclude Assets contained in the Real Estate Stalking Horse APA absent the prior written consent of the Real Estate Stalking Horse Bidder. The Debtors may determine in their discretion, following consultation with the Consultation Parties, whether to proceed with a Sale of any Asset (including packages of Assets) pursuant to these Bidding Procedures; *provided*, however, that the Debtors will advance the Real Estate Stalking Horse Bid to a Sale Transaction in good faith, subject to the Bidding Procedures; *provided further* that the Real Estate Stalking Horse Bid shall be subject to higher or otherwise better Bids (including combinations of Bids, as applicable).

To the extent that the Bidding Procedures require the Debtors to consult with any Consultation Party in connection with making a determination or taking any action under these Bidding Procedures, the Debtors shall do so in a regular and timely manner prior to making such determination or taking such action.

---

[5]   Any reference herein to "Non-Real Property Assets" shall mean, collectively, (a) the Rolling Stock, (b) the Intellectual Property, and (c) the Other Assets.

1. **KEY DATES AND DEADLINES**

### ROLLING STOCK TIMELINE

| Date and Time | Event or Deadline |
|---|---|
| October 11, 2023 | Cure Notice Deadline for Leased Rolling Stock[6] |
| October 13, 2023 at 5:00 p.m. (E.T.) | Bid Deadline for Rolling Stock[7] |
| October 18, 2023 at 10:00 a.m. (E.T.)[8] | Auction(s) (if required) for Rolling Stock Begin |
| October 23, 2023 | Notice of Winning Bidder(s) for Rolling Stock |
| October 25, 2023 at 5:00 p.m. (E.T.) | Sale Objection and Cure Objection Deadline for Winning Bid(s) for Rolling Stock |
| October 27, 2023 at [●] [a/p].m.] (E.T.) (subject to Court availability) | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) for Rolling Stock |
| As soon as practicable following Sale Hearing (and in no event later than November 3, 2023) | Sale Consummation for UST Rolling Stock |
| As soon as practicable following Sale Hearing | Sale Consummation for B-2 Rolling Stock |

### REAL ESTATE (AND ALL OTHER ASSETS) TIMELINE

| Date and Time | Event or Deadline |
|---|---|
| October 26, 2023 | Cure Notice Deadline for Leased Properties |
| November 9, 2023 at 5:00 p.m. (ET) | Bid Deadline for Non-Rolling Stock Assets (incl. Real Property Assets, Intellectual Property, and Other Assets) |
| November 9, 2023 at 5:00 p.m. (ET) | Cure Objection Deadline for Leased Properties |

---

[6]    To the extent a Bid includes Assigned Contracts that are not leased Rolling Stock or Leased Properties, the Debtors shall supplement the Cure Notice with Cure Costs for such Assigned Contracts within two (2) business days of such Bid becoming a Qualified Bid.

[7]    Nothing contained in these Bidding Procedures or in the Bidding Procedures Order shall amend, waive, modify or extend the Milestones (as defined in the UST Cash Collateral Orders) and such Milestones shall remain in full force and effect.

[8]    The Debtors reserve the right to modify the date(s) of any Auction(s) in consultation with the Consultation Parties.

| Date and Time | Event or Deadline |
|---|---|
| November 28, 2023 at 9:00 a.m. (ET) | Auction(s) (if required) for Non-Rolling Stock Assets Begin[9] |
| December 1, 2023 | Notice of Winning Bidder(s) (and Back-Up Bidder(s), as applicable) for Non-Rolling Stock Assets |
| December 8, 2023 at 5:00 p.m. (ET) | Sale Objection and Adequate Assurance Objection Deadline for Winning Bid(s) (or Back-Up Bid(s), as applicable) for Non-Rolling Stock Assets |
| December 12, 2023 at [●] [a/p].m.] (E.T.) (subject to Court availability) | Sale Hearing as to Winning Bid(s) (or Back-Up Bid(s), as applicable) for Non-Rolling Stock Assets |
| As soon as practicable following Sale Hearing[10] | Sale Consummation for Non-Rolling Stock Assets |

## 2.    SUBMISSIONS TO THE DEBTORS; CONSULTATION PARTIES

All submissions to the Debtors required or permitted to be made under these Bidding Procedures must be directed to each of the following persons or entities unless otherwise provided:

2.1.    Debtors:  Yellow Corporation, 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211, Attn.: Matthew A. Doheny (Chief Restructuring Officer) and Leah K. Dawson (General Counsel).

2.2.    Debtors' Proposed Counsel:  (i) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois, 60654, Attn.: Patrick J. Nash Jr., P.C. (patrick.nash@kirkland.com), David Seligman P.C. (david.seligman@kirkland.com), Steve Toth (steve.toth@kirkland.com), and Whitney Fogelberg (whitney.fogelberg@kirkland.com) and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Allyson B. Smith (allyson.smith@kirkland.com) and Aaron Metviner (aaron.metviner@kirkland.com); and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, PO Box 8705, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns

---

[9]    The Debtors reserve the right, in consultation with the Consultation Parties, to conduct separate Auction(s) (if needed) for the Intellectual Property and the Other Assets (apart from the Auction (if needed) for the Real Property Assets).  Any such details will be communicated in advance to Qualified Bidders of the applicable Assets.

[10]    Consistent with the DIP Orders and the UST Cash Collateral Orders, the deadline for consummation of Sales of Assets constituting Prepetition B-2 Priority Collateral (January 3, 2024) may be extended to February 2, 2024 with the consent of the Prepetition ABL Agent, the Prepetition B-2 Agent, and the Prepetition UST Secured Parties (in each case not to be unreasonably withheld) and with the consent of the Junior DIP Lender in its sole discretion.  Notwithstanding the foregoing, the Debtors intend to consummate such Sale(s) as soon as practicable following the applicable Sale Hearing.

(tcairns@pszjlaw.com), Peter J. Keane (pkeane@pszjlaw.com), and Edward Corma (ecorma@pszjlaw.com).

2.3.  <u>Debtors' Proposed Investment Banker</u>: Ducera Partners LLC, 11 Times Square, 36th Floor, New York, New York 10036, Attn: Cody Kaldenberg (ckaldenberg@ducerapartners.com) and Jon Cremeans (jcremeans@ducerapartners.com)

2.4.  <u>Debtors' Proposed Financial Advisor</u>: Alvarez & Marsal North America, LLC, Brian Whittman (BWhittman@alvarezandmarsal.com) and Michael Leto (mleto@alvarezandmarsal.com).

2.5.  <u>Creditors' Committee's Proposed Counsel</u>: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Philip C. Dublin, Meredith A. Lahaie, Kevin Zuzolo Stephen B. Kuhn, and Akin Gump Strauss Hauer & Feld LLP, 2001 K St NW, Washington DC 20006, Attn: Erica D. McGrady (YellowAkinAuctionTeam@akingump.com)

2.6.  <u>Creditors' Committee's Proposed Investment Banker</u>: Miller Buckfire, 787 7th Avenue, 5th Floor, New York, NY 10019, Attn: John D'Amico (john.damico@millerbuckfire.com), Yoon Song (yoon.song@millerbuckfire.com), and Alexander Rohan (alex.rohan@millerbuckfire.com).

2.7.  <u>Creditors' Committee's Proposed Financial Advisor</u>: Huron Consulting Group, 100 High Street, Suite 2301, Boston, MA 02110, Attn: Timothy J. Martin (tmartin@hcg.com), Mike Gluhanich (mgluhanich@hcg.com).

2.8.  <u>Information Officer and Debtors' Proposed Canadian Counsel</u>: (*Submissions Required For Canadian Assets Only*): Alvarez & Marsal Canada Inc., Royal Bank Plaza, South Tower 200 Bay Street, Suite 2900, P.O. Box 22 Toronto, ON M5J 2J1 Attn: Al Hutchens (ahutchens@alvarezandmarsal.com) and Joshua Nevsky (jnevsky@alvarezandmarsal.com); Goodmans LLP, Bay Adelaide Centre – West Tower, 333 Bay Street, Suite 3400, Toronto, ON M5H 2S7, Attn: Robert Chadwick (rchadwick@goodmans.ca) and Caroline Descours (cdescours@goodmans.ca)).

The "<u>Consultation Parties</u>" are (A) the Junior DIP Lender, (B) the B-2 Lenders, (C) the Prepetition ABL Agent, (D) the Prepetition UST Secured Parties, and (E) the Creditors' Committee; *provided* that to the extent that any Consultation Party, including any Prepetition Agent (including the Prepetition UST Agent), the Junior DIP Agent, the B-2 Agent, or any member of the Creditors' Committee submits (or indicates its intent to submit) a bid, including a credit bid,[11] for any Assets in connection with these Bidding Procedures and for any potential Sale Transaction, or is a participant in any active or prospective Bid with respect to any Asset(s), such applicable Consultation Party shall immediately no longer be a Consultation Party unless and until

---

[11]  Pursuant to the DIP Orders and the DIP Loan Documents, the Junior DIP Lender and the Junior DIP Agent have waived any right to credit bid for the Assets under these Bidding Procedures or otherwise.

such party unequivocally revokes its Bid and waives its right to continue in the bidding process;[12] *provided further* that, immediately upon any Consultation Party's secured debt (as applicable) being paid in full in cash, such Consultation Party shall no longer be a Consultation Party under the Bidding Procedures. Materials and information provided by the Debtors or their advisors to the advisors to any Consultation Party may be shared with such Consultation Party, subject in all respects to these Bidding Procedures, the Bidding Procedures Order, and the respective confidentiality agreement entered into by and among or otherwise agreed to between each such Consultation Party and the Debtors.

The Debtors shall consult with the Consultation Parties in good faith regarding the sale process for the Assets and provide to the Consultation Parties and their advisors regular reports concerning the sale process, including parties contacted, buyer feedback, copies of letters of intent, drafts of definitive agreements, updates regarding purchase proposals, and any diligence and other information reasonably requested by the Consultation Parties.

## 3. POTENTIAL BIDDERS & ACCEPTABLE BIDDERS

To participate in the bidding process for any Asset(s) as set forth in these Bidding Procedures, or to otherwise be considered as a purchaser of Assets or for any other purpose under these Bidding Procedures, a person or entity interested in consummating any Sale Transaction (a "Potential Bidder") must deliver (or have previously delivered) to the Debtors and each of the Debtors' advisors (as listed above) the following documents and information (unless the Debtors, in their reasonable business judgment after consultation with the Consultation Parties, choose to waive any of the requirements set forth in this Section 3 for any Potential Bidder):

3.1.    a statement and factual support demonstrating, to the Debtors' satisfaction, that the Potential Bidder: (a) has a *bona fide* interest in purchasing any or all of the Assets, (b) is able to submit a Qualified Bid (as defined below) by no later than the applicable Bid Deadline (as defined below), and (c) has the financial ability to timely consummate its proposed Sale Transaction in accordance with these Bidding Procedures;

3.2.    a description of any and all connections the Potential Bidder (including its affiliates and any related persons) have to the Debtors, any current or former directors and officers of the Debtors, the Debtors' non-Debtor affiliates, and the Debtors' primary creditors as identified by the Debtors;

3.3.    an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement");

---

[12]   If a member of the Creditors' Committee submits a Bid or otherwise is a participant with respect to any active or prospective Bid, the Creditors' Committee shall remain a Consultation Party; *provided* that such bidding member shall be excluded from all discussions, deliberations, or participation of the Creditors' Committee as a Consultation Party and precluded from receiving or reviewing information or documentation not otherwise available to all Acceptable Bidders.

3.4.     the identification of the Potential Bidder and any principals and representatives thereof (including counsel), including by identifying those principals and representatives who are authorized by the Potential Bidder to appear and act on such Potential Bidder's behalf for all purposes under these Bidding Procedures regarding the Potential Bidder's contemplated Sale Transaction;

3.5.     an optional non-binding written indication of interest specifying, with respect to any proposed Sale Transaction, (a) the identity of the Asset(s) to be acquired, (b) the amount and type of consideration to be offered, and (c) any other material terms to be included in a bid by such Potential Bidder; and

3.6.     any other information or documentation that the Debtors reasonably request.

The Debtors will provide copies of materials delivered by any Potential Bidder to each Consultation Party, regardless of whether received prior or subsequent to the date of the Court's entry of these Bidding Procedures, as promptly as practicable upon receipt by the Debtors and/or their advisors of such materials.

The Debtors, in their reasonable business judgment, following consultation with the Consultation Parties, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documentation (including an executed Confidentiality Agreement) and information so that such Potential Bidder may proceed to conduct due diligence and submit a Bid (as defined herein) (such Potential Bidder, an "Acceptable Bidder").  Any Potential Bidder must promptly provide the Debtors and their advisors with any additional required or reasonably requested documentation or information.

**4.     DUE DILIGENCE**

The Debtors, with their advisors, have established an electronic data room or rooms (the "Data Room") concerning the Assets that provides diligence materials, including the collective bargaining agreements to which the Debtors are party and other information, to allow Acceptable Bidders to submit a Qualified Bid (as defined below) and to seek and obtain financing commitments for any proposed Sale Transaction by an Acceptable Bidder.

Only Acceptable Bidders (who, for the avoidance of doubt, have executed a Confidentiality Agreement) shall be eligible to receive due diligence information and access to the Data Room and to any additional non-public information regarding the Debtors and the Assets.  Subject to the other terms herein, the Debtors may, but shall not be required to, provide to each Acceptable Bidder reasonable due diligence information, as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall use commercially reasonable efforts to post substantially all written due diligence provided to any Acceptable Bidder to the Data Room.

The due diligence period for any Stalking Horse Bidder (as defined below) will end prior to execution of the applicable Stalking Horse Agreement, unless otherwise agreed pursuant to the applicable Stalking Horse Agreement.  For all Acceptable Bidders other than any Stalking Horse Bidder, the due diligence period will end on the applicable Bid Deadline.  The Debtors may, in their reasonable business judgment and after consultation with the Consultation Parties, but shall

have no obligation to, furnish any additional due diligence information to any person following the applicable Bid Deadline. For the avoidance of doubt, any Stalking Horse Bidder shall retain access to the Data Room and shall receive any such additional information as is made available to all other Acceptable Bidders for the applicable Assets, notwithstanding the execution of a Stalking Horse Agreement with respect to such Assets.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale(s) to any person except to an Acceptable Bidder or to such Acceptable Bidder's duly authorized representatives subject to the applicable Confidentiality Agreement. The Debtors and their advisors shall use commercially reasonable efforts to coordinate with respect to all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' reasonable business judgment and after consultation with the Consultation Parties, have not established, or who have raised significant doubt, that such Acceptable Bidder intends in good faith to, or has the capacity (financial and otherwise) to, timely consummate the applicable proposed Sale Transaction in accordance with these Bidding Procedures.

Subject to the other terms of these Bidding Procedures, neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets, liabilities of the Debtors, or the Sale(s) and proposed Sale Transaction(s) if and to the extent doing so would (1) violate any law to which the Debtors are subject, including any privacy law, (2) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party, (3) violate any legally-binding obligation of any Debtor with respect to confidentiality, non-disclosure or privacy, or (4) jeopardize protections afforded to any Debtor under the attorney-client privilege or the attorney work product doctrine (*provided* that in the case of each of the foregoing clauses (1) through (4), the Debtors shall use commercially reasonable efforts to (x) provide such reasonably requested access as can be provided (or otherwise convey such reasonably requested information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law and (y) provide such information in a manner without violating such privilege, doctrine, contract, obligation, or law).

The Debtors reserve the right to withhold any diligence materials that the Debtors determine in good faith and in the exercise of their reasonable business judgment are sensitive or otherwise not appropriate for disclosure. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.

**All due diligence requests directed to the Debtors must be directed to: yellow@ducerapartners.com.**

**Each Potential Bidder or Acceptable Bidder shall comply with all reasonable requests by the Debtors or the Debtors' advisors with respect to information, documentation, and due diligence access regarding such Potential Bidder or Acceptable Bidder, as applicable, and its contemplated Sale Transaction.**

5.      **BID REQUIREMENTS.**

Any proposal, solicitation, or offer to consummate a Sale Transaction (each, a "Bid") must be submitted to the Debtors and their advisors (as set forth above) in writing and must satisfy, as determined by the Debtors in consultation with the Consultation Parties, the following requirements (collectively, the "Bid Requirements"):

5.1.    **Proposed Sale Transaction.** Each Bid must clearly propose a Sale Transaction as to the Asset(s) sought to be acquired. Each Bid must specify (1) which of the Assets are to be included in the proposed Sale Transaction (the "Acquired Assets") and (2) to the extent such Bid is for substantially all of the Assets, which Assets are to be excluded from the proposed Sale Transaction (the "Excluded Assets") as well as the disposition of any liabilities or obligations of the Debtors.

5.1.1.    **Assets Other Than Real Property Assets.** With respect to all non-Real Property Assets (*i.e.*, Rolling Stock, Intellectual Property, and Other Assets (each as defined above), a Bid may offer to purchase all or substantially all of the Debtors' non-Real Property Assets, only a portion of the non-Real Property Assets, or any combination of such Assets.

5.1.2.    **Real Property Assets.** A Bid for Real Property Assets must be on a property-by-property basis by submission of, as applicable, either or both of Bid Form A (for Owned Properties), which is attached hereto as **Exhibit A** and Bid Form B (for Leased Properties), which is attached hereto as **Exhibit B** (each, a "Real Property Bid"); *provided* that any landlord bidding on a Leased Property related to a property which such landlord owns (in such capacity, a "Qualified Landlord Bidder")[13] shall also provide with its Bid an executed form of the lease termination agreement that may not deviate substantially from the terms of the form lease termination agreement, substantially in the form attached hereto as **Exhibit C**, marked to show any proposed revisions, which are acceptable to the Debtors in consultation with the Consultation Parties. Each Qualified Landlord Bidder which timely submits a Bid shall be deemed a Qualified Bidder. Additionally, as part of such submission, Acceptable Bidders may indicate up to five (5) packages of Real Property Assets (each, a "Package Indication"), for which such Acceptable Bidder would be willing to pay a premium over the sum of the individual Real Property Bids for the individual Real Property Assets included in such Package Indication (each, a "Package Real Property Bid"). The Package Real Property Bid must indicate the percentage premium above the sum of the applicable individual Real Property Bids. For the avoidance of doubt, the Real Estate Stalking Horse Bid[14]

---

[13]    For the avoidance of doubt, a landlord shall only be a Qualified Landlord Bidder with respect to Leased Properties in which the landlord has a property interest. Any landlord bidding on a Leased Property in which the landlord does not have a property interest is not a Qualified Landlord Bidder in such capacity.

[14]    The "Real Estate Stalking Horse Bid" means the proposed transaction under the asset purchase agreement by and between the Debtors and Estes Express Lines (the "Real Estate Stalking Horse Bidder"), dated September 11, 2023, and such purchase agreement, the "Real Estate Stalking Horse APA").

shall not be required to allocate Purchase Price on a property-by-property basis; *provided* that any subsequent Overbid by the Real Estate Stalking Horse Bidder during the Auction shall be required to allocate Purchase Price on a property-by-property basis.

5.2. **Purchase Price.** Each Bid must clearly specify a purchase price, including and identifying separately any Cash and non-Cash components in US dollars (the "Purchase Price"). A Bid that contemplates a Sale for less than all of the Assets but includes multiple segments or groups of Assets must contain sufficient information as to allow the Debtors to determine an allocation of value among each segment or group of Assets (including, as applicable, by allocating the Purchase Price among each of the Assets that the bidder intends to acquire). If the Debtors select a Stalking Horse Bidder (as defined below) for such Assets, then such Purchase Price must exceed such Stalking Horse Bid (as defined below) by at least the aggregate sum of (1) the Bid Protections (as defined below), if any, for such assets, and (2) such additional amount as determined by the Debtors in their reasonable business judgment after consultation with the Consultation Parties.

5.3. **Deposit.** Each Bid other than a credit bid must be accompanied by a Cash deposit equal to ten percent (10%) (for non-Real Property Assets) or five percent (5%) (for Real Property Assets) of the applicable aggregate Purchase Price (the "Deposit"), to be held in one or more escrow accounts on terms acceptable to the Debtors and the Consultation Parties; *provided* that a Qualified Landlord Bidder must only tender a Deposit with respect to cash amounts bid in excess of such Qualified Landlord Bidder's undisputed Cure Costs that are credited against its Bid for Leased Property in which it has a property interest; *provided*, *however*, that the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may elect to waive or modify the requirement of a Deposit on a case-by-case basis. For the avoidance of doubt, to the extent the Purchase Price of a Bid is increased, at any time or from time to time, whether prior to commencement of the applicable Auction (if any) or during the applicable Auction (if any), the amount of the Deposit shall automatically increase accordingly (*i.e.*, to become equal to 10% (for non-Real Property Assets) or 5% (for Real Property Assets) of any increased Purchased Price) and the corresponding bidder will promptly pay into escrow the amount of such increase, and in any event within one (1) business day, following such increase. Without limiting the foregoing, if a Purchase Price is increased in order to make a bid into a Qualified Bid, the Debtors may, in consultation with the Consultation Parties, condition participation of the applicable bidder at the applicable Auction (if any) on such bidder paying the then full amount of the Deposit into escrow prior to the commencement of such Auction or such participation.

5.4. **Transaction Documents.** Each Bid must be accompanied by an executed purchase agreement or lease termination agreement, as applicable, with respect to the proposed Sale Transaction, including the exhibits, schedules, and ancillary agreements related thereto and any other related material documents integral to such Bid and such Sale Transaction. In addition, (1) the executed purchase

agreement or lease termination agreement accompanying such bidder's Bid must be further accompanied by a redline copy marked to reflect any amendments or modifications to the form purchase agreement or form lease termination agreement provided by the Debtors and (2) if one or more Stalking Horse Bidders have been designated for the applicable Assets, the executed purchase agreement accompanying such bidder's Bid must be further accompanied by a redline copy marked against each applicable Stalking Horse Agreement.

5.5.   **Back-Up Bidder Commitment.**  Each Bid must include a written commitment by the applicable Acceptable Bidder to serve as a Back-Up Bidder in the event that such Acceptable Bidder's Bid is not selected as the Winning Bid for the applicable Asset(s), subject to the terms of any applicable Stalking Horse Bid.

5.6.   **Proof of Financial Ability to Perform.**  Each Bid must include written evidence that the Debtors reasonably conclude, in consultation with the Consultation Parties, demonstrates that the bidder has the necessary financial ability to timely close the proposed Sale Transaction in accordance with these Bidding Procedures; *provided* that a Qualified Landlord Bidder need not submit evidence of adequate financial resource to the extent that such Qualified Landlord Bidder submits a Bid solely based on the credit for undisputed Cure Costs in connection with its Bid for Leased Property in which it has a property interest.  Such information must include the following:

5.6.1.   contact names, telephone numbers, and email addresses for verification of financing sources;

5.6.2.   evidence of the bidder's internal financing resources and, if applicable, proof of fully executed and effective financing commitments with limited conditionality customary for transactions of the proposed Sale Transaction's type from one or more reputable financing sources in an aggregate amount equal to the Cash portion of such Bid (including, if applicable, the payment of cure amounts), in each case, as are required to timely close the Sale Transaction;

5.6.3.   a description of the bidder's pro forma capital structure; and

5.6.4.   any other financial disclosure or credit-quality support information or enhancement requested by the Debtors demonstrating that such bidder has the ability to timely close the proposed Sale Transaction in accordance with these Bidding Procedures.

5.7.   **Contingencies; No Financing or Diligence Outs.**  Each Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

5.8.   **Identity.**  Each Bid must fully disclose the identity of each person or entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the bidder) and the complete terms

of any such participation.  Each Bid must also include contact information (including mailing address, email address, and telephone number) for the specific person(s), entity(ies), and counsel whom the Debtors (and their advisors) should contact regarding such Bid.

5.9.    **Authorization.**  Each Bid must contain evidence acceptable to the Debtors, in consultation with the Consultation Parties, that the bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Sale Transaction contemplated by such Bid.

5.10.   **Contracts, Leases and Employees.**  Each Bid must identify each and every executory contract and unexpired lease to be assumed and assigned in connection with the proposed Sale Transaction (collectively, the "Assigned Contracts").  Each Bid must indicate whether (and to what extent) it proposes to assume any portion of the Debtors' collective bargaining agreements.  Each Bid must also indicate whether and to what extent it proposes to assume obligations and/or liabilities to multiemployer pension plans and/or health plans, including but not limited to whether and to what extent the Bid proposes participation in such pension and health plans. Similarly, each Bid must indicate the impact on employees (if any), including the actual or potential elimination of (and/or reduction in value of) any employee benefits.  Each Bid must also be accompanied by adequate assurance of future performance under all Assigned Contracts, which shall include: (i) audited and unaudited financial statements, (ii) tax returns, (iii) bank account statements, (iv) a description of the business to be conducted at the Leased Property(ies) (if applicable) or with respect to such Assigned Contract(s) (as applicable), and (v) any such other documentation or information as the Debtors may request (the foregoing clauses (i)-(v), and/or such other documentation and information satisfactory to the Debtors to demonstrate an Acceptable Bidder's adequate assurance of future performance, collectively, the "Adequate Assurance Package"). The Adequate Assurance Package must be submitted to the Debtors and their advisors at the time of the Bid's submission in its own compiled PDF document. Any requests made by the Debtors or their advisors thereafter for further or supplemental information or documentation must be promptly provided to the Debtors and their advisors.

5.11.   **As-Is, Where-Is.**  Each Bid must include a written acknowledgement and representation that:  (1) the bidder has had an opportunity to conduct any and all due diligence regarding the proposed Sale Transaction prior to making its offer (and no further due diligence is or shall be required); (2) the bidder has relied solely upon its own independent review, investigation, or inspection of any documents in making its Bid; (3) except as may be set forth in Definitive Sale Documents (as defined below) concerning such Bid, the bidder did not rely, and is not relying upon, any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or their advisors or other representatives or any other party in interest regarding the proposed Sale Transaction, the completeness of any information

13

provided in connection therewith or with the applicable Asset(s) or the applicable Auction, if any, or otherwise; and (4) the bidder did not engage in any collusive conduct whatsoever in preparing and submitting its Bid in accordance with these Bidding Procedures and acted at all times and in all respects in good faith in submitting its Bid to the Debtors.

5.12.   **No Break-Up Fee.**  Each Bid must expressly state and acknowledge that such bidder shall not be entitled to, and shall not at any time or under any circumstance seek, any transaction break-up fee, termination fee, expense reimbursement, working fee, or similar type of payment; *provided* that the Debtors are authorized in their discretion and subject to Section 7 of these Bidding Procedures, to offer Bid Protections (as defined below) to one or more Stalking Horse Bidders, in accordance with these Bidding Procedures and the Bidding Procedures Order; *provided further* that each Bid must expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code or the payment of any broker fees or other fees and costs whatsoever in connection with bidding for any of the Assets and/or otherwise participating in the applicable Auction(s) (if any) or the sale process contemplated by these Bidding Procedures.

5.13.   **Transition Services.**  Each Bid must state or otherwise estimate the types of transition services, if any, that the Acceptable Bidder would require of and/or provide to the Debtors in connection with the proposed Sale Transaction, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Acceptable Bidder's Bid were to be selected as the Winning Bid for the applicable Asset(s), and shall include such Acceptable Bidder's commitment to funding any such costs and expenses incurred by the Debtors related to any such transition services.

5.14.   **Indication of Interest.**  To the extent an Acceptable Bidder provided a non-binding indication of interest pursuant to Section 3.5 of these Bidding Procedures, each Bid submitted by such Acceptable Bidder must describe any deviations of the Bid from such Acceptable Bidder's indication of interest, if any.

5.15.   **Commitment to Close.**  Each Bid must include a commitment to close the proposed Sale Transaction as soon as practicable, and in any event within the timeline contemplated by these Bidding Procedures, and must state the expected date of (and timeline and any milestones to) closing of the proposed Sale Transaction.

5.16.   **Irrevocable Bid**.  Each Bid must contain a statement by the applicable bidder acknowledging and agreeing that such Bid and each of its provisions is binding upon the bidder and irrevocable in all respects.

5.17.   **Compliance with Bidding Procedures**.  Each Bid must contain a covenant that the applicable bidder will comply in all respects with the terms of these Bidding Procedures and the Bidding Procedures Order.

5.18. **Combination Bids.**  For Bids that contemplate a purchase of multiple categories of non-Real Property Assets, *e.g.*, Bids for Assets constituting some combination of Rolling Stock, Intellectual Property, and/or Other Assets (each as defined above), each Bid must specify: (i) allocation of the Purchase Price to each category of Assets; (ii) allocation of the Purchase Price across each individual Real Property Asset included in the Bid; and (iii) whether the Bid is made on an "all or none" basis in the event that the Potential Bidder is outbid for certain Assets contemplated in the Bid.  Any Bids for more than one Real Property Asset shall comply with Section 5.1.2 of these Bidding Procedures.

By submitting a Bid, each bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures in all respects and to refrain from (A) submitting a Bid after conclusion of the applicable Auction (if any) or (B) seeking to reopen the applicable Auction (if any) once closed.  **The submission of a Bid shall constitute a <u>binding and irrevocable</u> offer (a) for the Winning Bidder, until consummation of the proposed Sale Transaction, (b) for the Back-Up Bidder (if any), as provided in these Bidding Procedures, including Section 12 hereof, and (c) for any bidder other than the Winning Bidder and Back-Up Bidder, until two (2) business days after entry of the Court's order approving the Winning Bid and (if applicable) the Back-Up Bid for the applicable Assets (each, as applicable, a "<u>Sale Order</u>"),[15] and each Bid must include a written acknowledgment and representation to such effect.**

**For the avoidance of doubt, the Debtors may disclose the terms of any Bid that requires modification and/or termination of any collective bargaining agreements or related agreements with any union to such union; *provided* that such union has executed a confidentiality agreement with the Debtors.**

---

[15] Upon any Sale of Canadian Assets, the Foreign Representative will seek recognition of the applicable Sale Order(s) in the Canadian Court, which recognition shall be a condition to closing such Sale(s), as soon as practicable after the Court's entry of the applicable Sale Order(s) (subject to the availability of the Canadian Court).

6.      **NO COMMUNICATIONS AMONG BIDDERS WITHOUT DEBTORS' CONSENT.**

Potential Bidders and/or Acceptable Bidders may communicate with each other for purposes of joining Bids and/or creating consortium bids with (and only with) the prior written consent of the Debtors in consultation with the Consultation Parties; otherwise, there shall be no communications whatsoever between or among Potential Bidders and/or Acceptable Bidders until and unless the Debtors, following consultation with the Consultation Parties, have in writing authorized such communications to occur.  The Debtors may facilitate communications between Potential Bidders and/or Acceptable Bidders for the purposes of potentially joining Bids, and no Potential Bidder, Acceptable Bidder, or  party in interest shall be permitted to object to any such communications or joining of bids.  The Debtors reserve the right, following consultation with the Consultation Parties, to disqualify from participation in these Bidding Procedures any Potential Bidders or Acceptable Bidders that have had communications between or among themselves without first obtaining the prior written authorization of the Debtors' advisors.

7.      **STALKING HORSE BIDDER(S).**[16]

The Debtors are and shall be authorized, but not obligated, in an exercise of their reasonable business judgment, and upon consent of the Consultation Parties, to:  (A) select one or more Acceptable Bidders to act as stalking horse bidders in connection with any Sale Transaction (each, a "Stalking Horse Bidder," and such Acceptable Bidder's Bid, a "Stalking Horse Bid") and enter into a purchase agreement with respect to such proposed Sale Transaction with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (B) in connection with any Stalking Horse Agreement and in recognition of such Stalking Horse Bidder's expenditure of time, energy, and resources, the Debtors may, with the consent of the Consultation Parties, determine to (i) provide a breakup fee (other than with respect to a Stalking Horse Bidder that is a Secured Party (as defined herein)) (the "Breakup Fee") and/or (ii)  reimburse such Stalking Horse Bidder's reasonable and documented out-of-pocket fees and expenses (including attorney's fees and expenses) actually incurred in connection with the preparation and negotiation of the Stalking Horse Agreement and on the terms specified in the applicable Stalking Horse Agreement (the "Expense Reimbursement," and together with the Breakup Fee, the "Bid Protections"); *provided* that, with respect to any Stalking Horse Agreement, the aggregate of the Breakup Fee and the total Expense Reimbursements shall in no event exceed three percent (3%) of the applicable cash Purchase Price; *provided further* that, for the avoidance of doubt, the consent of the Consultation Parties shall be required with respect to Bid Protections for any Stalking Horse Bid, whether such Stalking Horse Agreement is entered into prior to or subsequent to the date an order is entered by the Court approving these Bidding Procedures.  To the extent the Bid Protections do not otherwise comply with these Bidding Procedures, the Debtors reserve the right to seek Court approval of such Bid Protections.

No later than one (1) business day after selecting a Stalking Horse Bidder (or Stalking Horse Bidders (as applicable)), or as soon as reasonably practicable thereafter, the Debtors shall file with the Court and serve a notice that (A) identifies the Stalking Horse Bidder and the material

---

[16]     For the avoidance of doubt, approval of the Real Estate Stalking Horse Bidder Bid Protections will be sought pursuant to a separate motion and order and not subject to this Section 7.

terms of the applicable Stalking Horse Bid, including the Purchase Price and the Assets to which such Stalking Horse Bid relates; and (B) attaches a copy of the corresponding Stalking Horse Agreement.

## 8.   BID DEADLINES.

Any Bid must be transmitted via email (in .pdf or similar format) to the Debtors and their advisors (as specified in Section 2 hereof) so as to be ***actually received***: (i) for the Rolling Stock, on or before **October 13, 2023 at 5:00 p.m. (prevailing Eastern Time)**; and (ii) for all other Assets (including Real Property Assets), on or before **November 9, 2023 at 5:00 p.m. (prevailing Eastern Time)** (each, as applicable, the "Bid Deadline").

## 9.   QUALIFIED BIDS & QUALIFIED BIDDERS.

A Bid is a "Qualified Bid" if the Debtors, in the Debtors' reasonable business judgment and in consultation with the Consultation Parties, determine that such Bid (A) satisfies the Bid Requirements set forth above; (B) solely with regard to the Rolling Stock, is for an amount equal to or greater than $5,000,000.00 in the aggregate; (C) with regard to any Real Property Assets, is for an amount greater than $1,000,000 in the aggregate (or an applicable Reserve Price (as defined below) for individual Real Property Assets)[17]; (D) with regard to any other Assets, is for an amount equal to or greater than $5,000,000 in the aggregate; and (E) is reasonably likely, in the Debtors' judgment, in consultation with the Consultation Parties, to be consummated if selected as the Winning Bid (or Back-Up Bid, as applicable) (as defined below) for the applicable Asset(s) on the timeline contemplated by these Bidding Procedures; *provided* that any Stalking Horse Bid shall constitute and be deemed a Qualified Bid.  For the avoidance of doubt, any Stalking Horse Bid shall be, and shall remain, a Qualified Bid notwithstanding any additional requirements imposed by subsequent amendments or modifications to these Bidding Procedures or the corresponding Bidding Procedures Order.

An Acceptable Bidder that submits a Qualified Bid shall be a "Qualified Bidder" with respect to the Asset(s) to which such Qualified Bid relates.

---

[17]   On or before the Bid Deadline for Non-Rolling Stock Assets, the Debtors shall, in their reasonable business judgment and in consultation with the Consultation Parties, establish a reserve price (each, a "Reserve Price") for each Real Property Asset.  The Reserve Price(s) (if established) shall be based on, among other things, the indications of interest, relevant appraisals, and other factors.  A Bid will not qualify to participate in any Auction for a specific Real Property Asset if such Bid does not exceed the Reserve Price (as applicable).  For each Real Property Asset receiving one or more Bids by the Bid Deadline in excess of the Reserve Price, the Debtors may, in consultation with the Consultation Parties, either accept the highest such Bid (a "Pre-Auction Winning Bid") or conduct an Auction for such Real Property Asset.  The Debtors, in consultation with the Consultation Parties, may elect to offer or not to offer Package Real Property Bids at an Auction.  Only individual Real Property Bids in excess of the applicable Reserve Price will qualify a Bidder to participate in the Auction for the applicable Real Property Asset.  If the Debtors, after consultation with the Consultation Parties, accept a Pre-Auction Winning Bid, such Real Property Asset shall be removed from the Auction and the Debtors shall file a motion seeking approval of such Pre-Auction Winning Bid.  Notwithstanding the foregoing, if the Debtors execute the Real Estate Stalking Horse APA, there shall be no pre-auction process relating to the Real Property Assets subject to the Real Estate Stalking Horse APA.

As soon as reasonably practicable after the applicable Bid Deadline, the Debtors will, after consultation with the Consultation Parties, notify each Acceptable Bidder whether such party is a Qualified Bidder and shall as promptly as practicable following the applicable Bid Deadline provide the Consultation Parties' counsel with a copy of each Qualified Bid.  If an Acceptable Bidder's Bid is determined not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit (if any) on the date that is three (3) business days after such determination.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the date set for the applicable Auction(s) (if any), the Debtors may, in consultation with the Consultation Parties, discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the prior written consent of the Debtors following consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in the Bidding Procedures; *provided* that any Qualified Bid may be improved at the applicable Auction (if any) as set forth herein.  Any improved Qualified Bid must continue to comply in all respects with the requirements for Qualified Bids as set forth in these Bidding Procedures.

Notwithstanding anything in these Bidding Procedures to the contrary, the Debtors, in consultation with the Consultation Parties, reserve the right to work with (A) Potential Bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the applicable Bid Deadline and (B) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the applicable Auction (if any).  The Debtors, in consultation with the Consultation Parties, reserve the right to cooperate with any Acceptable Bidder to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors, in consultation with the Consultation Parties, may accept a single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder, and their Bid a single Qualified Bid, for purposes of the applicable Auction (if any)).

## 10.    RIGHT TO CREDIT BID.

Subject to the terms and conditions set forth in the DIP Orders and the UST Cash Collateral Orders, any Qualified Bidder that has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Party"), except the Junior DIP Secured Parties, shall be entitled to credit bid all or a portion of the face value of such Secured Party's claims against the Debtors toward the Purchase Price specified in such Qualified Bidder's Bid; *provided* that a Secured Party (except the Junior DIP Secured Parties) shall be entitled to credit bid its claim(s) only with respect to Assets that are subject to a valid and perfected first priority lien in favor of such Secured Party as to such claim(s).  Notwithstanding anything to the contrary herein, but subject to the terms and conditions set forth in the DIP Orders and the UST Cash Collateral Orders, each of the Prepetition Agents (including the Prepetition UST Agent) and the B-2 Agent may, subject to section 363(k) of the Bankruptcy Code, submit a credit bid of all or any portion of the aggregate amount of their respective secured claims, including any post-petition financing claims.  The Junior DIP Lender and the Junior DIP Agent have expressly waived under the DIP Orders any right to credit bid the obligations outstanding under the Junior DIP Facility.

For the avoidance of doubt, a landlord holding a property interest in a Leased Property that submits a timely Bid for such Leased Property may receive a credit for all or a portion of such landlord's applicable, undisputed Cure Costs in connection with such Bid and shall indicate its desire to do so when submitting its Bid. The Debtors estimate that a Qualified Landlord Bidder's credit on account of such undisputed Cure Costs, if any, would be in an amount of approximately one month's rent under the applicable lease.

The rights and defenses of the Debtors and any other party in interest with respect to whether any assertion that any liens, claims, encumbrances, or interests, if any, will attach to the proceeds of the Sale Transaction(s) are expressly preserved.

## 11. AUCTION(S).

If the Debtors receive two or more Qualified Bids with respect to the same Asset(s), the Debtors may, in consultation with the Consultation Parties, conduct an auction (each, an "Auction") to determine the Winning Bidder (or Back-Up Bidder, as applicable) with respect to such Asset(s). In such event, the Debtors will (A) notify all Qualified Bidders of the highest or otherwise best Qualified Bid with respect to the applicable Asset(s), as determined by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties (each such Qualified Bid, a "Baseline Bid") and (B) provide copies of the documents setting forth the terms of the Baseline Bid(s) to all Qualified Bidders with respect to such Assets, in each case, as soon as reasonably practicable after the applicable Bid Deadline and in any event prior to the commencement of the applicable Auction for such Assets. The Debtors' determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, deem relevant to the value of the Qualified Bid to the Debtors' estates and any related regulatory or other requirements.

If the Debtors, in consultation with the Consultation Parties, determine that they have received no Qualified Bids with respect to any particular Asset(s) other than any Stalking Horse Bid(s) or they have received only a single Qualified Bid with respect to such Asset(s), then the Auction with respect to such Asset(s) will not occur, and the Stalking Horse Bid(s) or the Qualified Bid, as applicable, will be deemed to be the Winning Bid(s) for the Asset(s) to which such Stalking Horse Bid(s) or Qualified Bid(s), as applicable, relates. If fewer than two Qualified Bids are received by the applicable Bid Deadline with respect to any portion of the Assets, the Debtors shall not conduct an Auction with respect to such Asset(s). In either event, if the Debtors make such a determination, the Debtors will file a notice with the Court within one (1) business day of making such determination or as soon as practicable thereafter; *provided* that the foregoing is subject to the Debtors' receipt and review of any higher or otherwise better Bids on larger packages of Assets that may include such Asset(s).

If the Debtors receive two or more Qualified Bids for all or any portion of the Rolling Stock and determine to hold an Auction, the Auction with respect to such Rolling Stock shall commence on **October 18, 2023 at 10 a.m. (E.T.)**, via remote video and/or in person at the Debtors' election in consultation with the Consultation Parties. If the Debtors receive two or more Qualified Bids for any of the remaining Assets and determine to hold an Auction, the Auction with respect to such other Assets shall commence on **November 28, 2023 at 9:00 a.m. (ET)**, via remote video and/or

in-person at the Debtors' election in consultation with the Consultation Parties. Any Auction shall be conducted in a timely fashion according to the procedures set forth in Section 11(i)-(vii) of these Bidding Procedures (the "Auction Procedures").

## AUCTION PROCEDURES

**(i)**    **The Debtors Shall Conduct the Auction(s); General Provisions.** The Debtors, with the assistance of their advisors, shall direct and preside over any Auction and shall consult with the Consultation Parties throughout the Auction process. At the commencement of any Auction, the Debtors, in consultation with the Consultation Parties, (1) may announce procedural and related rules governing such Auction, including time periods available to all Qualified Bidders to submit any successive Bid(s); and (2) shall describe the terms of any Baseline Bid for the Assets being sold in such Auction. Only incremental Bids that comply with the terms set forth in Section 11(ii) of these Bidding Procedures shall be considered "Overbids." Overbids shall be made and input into the written record, *provided* that all material terms of each round's winning Overbid shall be fully disclosed to all other Qualified Bidders or announced at the Auction (as applicable). The Debtors, in consultation with the Consultation Parties, shall determine in their reasonable business judgment whether an incremental Bid is an Overbid with respect to the applicable Assets. The Debtors shall maintain a written transcript of all Bids made and announced at such Auction (if any), including the Baseline Bid, all Overbids, and the Winning Bid (or Back-Up Bid, as applicable) (as defined below).

Only Qualified Bidders for the Assets being sold are eligible to participate in the Auction (if any), subject to other limitations as may be reasonably imposed by the Debtors, in consultation with the Consultation Parties, in accordance with these Bidding Procedures. Qualified Bidders participating in the Auction (if any) must appear in person at the Auction (if any) if held in-person, or through a duly authorized representative. Such Auction(s) (if any) will be conducted openly and all creditors may be permitted to attend; *provided* that the Debtors may, in consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder or creditor at the Auction (if any). The Consultation Parties and their advisors, and any other creditor of the Debtors, may attend the Auction; *provided*, *however*, that any creditor that is not a Consultation Party (or a Consultation Party's counsel or advisor) wishing to attend the Auction may do so by contacting, no later than three (3) business days prior to the start of the applicable Auction (if any), the Debtors' advisors.

The Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the Sale Transaction contemplated by its proposal and any further information that the Debtors believe is necessary to clarify and evaluate any Bid made by a Qualified Bidder during the applicable Auction (if any).

The Debtors may, subject to Section 16 of these Bidding Procedures, announce at the Auction (if any) modified or additional procedures for conducting the Auction or otherwise modify these Bidding Procedures.

(ii) **Terms of Overbids.**  Each Overbid must comply in all respects with the following terms:

(a) <u>Minimum Overbid Increment</u>.  At the commencement of the initial solicitation of Overbids for the Assets being sold in any such Auction, the Debtors, in consultation with the Consultation Parties, shall announce the minimum increment by which any Overbid for such applicable Assets must exceed the applicable Baseline Bid.  At the commencement of each subsequent round of solicitation of Overbids for such applicable Assets, the Debtors shall announce the minimum increment by which any such Overbid must exceed the Prevailing Highest Bid (as defined below) at such time. The Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, announce increases or reductions to the applicable minimum Overbid increment at any time during the Auction (if any).  Any Overbid made by a Stalking Horse Bidder shall be deemed to have been made in an amount equal to the Overbid plus, if applicable, the Bid Protections, to the extent provided in the applicable Stalking Horse Agreement.

(b) <u>Conclusion of Each Overbid Round</u>.  Upon the solicitation of each round of Overbids for the Assets being sold in any such Auction, the Debtors may announce a deadline by which time any such Overbids must be submitted to the Debtors (an "<u>Overbid Round Deadline</u>"); *provided* that the Debtors, in their reasonable business judgment and after consultation with the Consultation Parties, may extend any Overbid Round Deadline.

(c) <u>Overbid Alterations</u>.  An Overbid for the Assets being sold in any such Auction may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' reasonable business judgment and after consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

(d) <u>Announcing Highest Bid</u>.  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors, in consultation with the Consultation Parties, have identified an Overbid with respect to such Assets being sold as being higher or otherwise better than, in the initial Overbid round, the Baseline Bid or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all applicable Qualified Bidders the material terms of any new Overbid for such applicable

Assets designated by the Debtors as the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid.

(iii)    **Consideration of Overbids.**  The Debtors reserve the right, in their reasonable business judgment and in consultation with the Consultation Parties, to adjourn the Auction (if any) one or more times, to, among other things (1) facilitate discussions between the Debtors and Qualified Bidders, (2) allow Qualified Bidders the opportunity to consider how they wish to proceed, and (3) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence, documentation, or information as the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal financing resources or has received sufficient and sufficiently unconditional external financing commitments to timely consummate the proposed Sale Transaction(s) at the prevailing Overbid amount for such Assets.

(iv)    **No Round-Skipping.**  To remain eligible to participate in the Auction (if any), in each round of bidding, each Qualified Bidder, except the Qualified Bidder that submitted the Prevailing Highest Bid, must submit an Overbid for the Assets being sold with respect to such round of bidding.  To the extent a Qualified Bidder that did not submit the Prevailing Highest Bid fails to submit an Overbid for the applicable Assets with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction (if any); *provided* the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may permit a bidder that has been disqualified to take part in the Auction (if any) solely to the extent a Qualified Bidder that has not been disqualified has agreed (after receiving express permission from the Debtors upon consultation with the Consultation Parties) to permit such disqualified bidder to join such Qualified Bidder in its next-round Bid as an additional purchaser party or debt or equity financing source.

(v)    **Last Bidder Out**.  Prior to the commencement of each Overbid round for any Auction, the Debtors reserve the right to announce (including in consultation with the Consultation Parties with respect to the first such applicable Overbid round announcement) that either: (a) such Overbid round will be a "Last Bidder Out" round, during which the Acceptable Bidder with the lowest Overbid for that Auction will not be permitted to participate in the subsequent Overbid round(s) for that Auction; or (b) the following two Overbid rounds will be "Last Bidder Out" rounds, such that any Acceptable Bidder with the lowest Overbid in each of those two consecutive rounds will not be permitted to participate in the subsequent Overbid round(s) for that Auction.  For the avoidance of doubt, any Acceptable Bidder submitting the lowest Overbid for a Real Property Asset shall not be excluded from participating in any other Auction for which it is not the lowest Overbid.

(vi)    **Closing the Auction.**  The Auction (if any) shall continue until there is only one Qualified Bid for a particular group of Assets that the Debtors determine, in their reasonable business judgment and in consultation with the Consultation Parties, to

be the highest or otherwise best Qualified Bid for the applicable Assets.  Such Qualified Bid shall be designated the "<u>Winning Bid</u>" (or Back-Up Bid, as applicable, and the Qualified Bidder who submitted the Winning Bid, the "<u>Winning Bidder</u>") with respect to its proposed Acquired Assets, at which time the Auction (if any) with respect to such Asset(s) shall be closed pending entry of the applicable Sale Order; *provided* that (1) such Auction (if any) shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction (if any) to the then Prevailing Highest Bid; and (2) the Debtors' designation of a Qualified Bid as a Winning Bid (or Back-Up Bid, as applicable) shall be subject to and conditioned on finalization of definitive documentation and the Court's approval of such Winning Bid (or Back-Up Bid, as applicable), applicable regulatory and third-party approvals, and the timely consummation of the Sale Transaction contemplated thereby.  As soon as reasonably practicable after the designation of a Winning Bid (or Back-Up Bid, as applicable), the Debtors, in consultation with the Consultation Parties, shall finalize definitive documentation to implement the terms of such Winning Bid (or Back-Up Bid, as applicable) and cause such definitive documentation to be filed with the Court.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors, in consultation with the Consultation Parties, may consider the following factors in addition to any other factors that the Debtors, in consultation with the Consultation Parties, deem appropriate: (a) the amount and nature of the total consideration, which includes, but is not limited to, assumed liabilities related to the assets being sold (*e.g.*, administrative liabilities, cure payments), and the amount of executory contracts and leased locations being assumed; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the Sale Transaction contemplated by the Bid; and (d) the tax consequences of such Qualified Bid; and (e) the value and/or costs or other liabilities of any unsold Asset(s).

For the avoidance of doubt, the Debtors, in consultation with the Consultation Parties, may determine to select more than one Winning Bid and more than one Winning Bidder (and/or more than one Back-Up Bid and more than one Back-Up Bidder, in which event such Back-Up Bids may provide for groupings of Assets that are different from the groupings of Assets reflected in the Winning Bid(s)) for separate portions of the Assets.

(vii) **<u>No Collusion; Good Faith Offer.</u>**  Each Qualified Bidder participating at the Auction (if any) will be required to confirm on the record at the Auction (if any) that (1) such Qualified Bidder has not engaged in any collusion with respect to the bidding process (2) such Qualified Bidders' Qualified Bid is a good faith and irrevocable offer and such Qualified Bidder intends to consummate the Sale Transaction contemplated by its Qualified Bid if such Qualified Bid is the Winning Bid (or Back-Up Bid, as applicable) with respect to the applicable Acquired Assets, and (3) such Qualified Bid will serve as the Back-Up Bid (as defined below).

(viii) **Rejection of Bids.** The Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may reject, at any time before entry of an order of the Court approving a Winning Bid (or Back-Up Bid, as applicable), any Bid that the Debtors determine, after consultation with the Consultation Parties, is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code and/or these Bidding Procedures, or (3) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

(ix) **Unsold Assets.** The Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may conduct a process for the sale of any unsold Assets not included in any Winning Bid(s).

## 12.    DESIGNATION OF A BACK-UP BIDDER.

If for any reason a Winning Bidder with respect to particular Assets fails to consummate the Winning Bid for a particular set of Assets within the time permitted after the entry of the Sale Order approving the Sale to the Winning Bidder, then the Qualified Bidder or Qualified Bidders with the next-highest or otherwise second-best Bid for such Assets (each, a "Back-Up Bidder"), as determined by the Debtors after consultation with the Consultation Parties, at the conclusion of the Auction with respect to such Assets (if any) and announced at that time to all the Qualified Bidders participating therein and as set forth in the Sale Order, will automatically be deemed to have submitted the highest or otherwise best Bid or Bids (each, a "Back-Up Bid"), and the Debtors will be authorized, but not required, to consummate the Sale Transaction pursuant to such Bid as soon as is commercially reasonable without further order of the Bankruptcy Court (or Canadian Court (as applicable)) upon filing a notice with the Court (and the Canadian Court (as applicable)) providing for a three (3) business days period to object to such sale.

Upon designation of any Back-Up Bidder at the Auction (if any), its Back-Up Bid must remain open and irrevocable until the earlier of (i) the closing of the transactions contemplated by the Winning Bid notwithstanding any outside date set forth in such Back-Up Bidder's proposed purchase agreement or the chapter 11 plan and (ii) the date that is four (4) months following the conclusion of the applicable Auction (if any). In the case of any Back-Up Bid to a Stalking Horse Bid (if any), such Back-Up Bid must remain open and irrevocable through any outside date set forth in the applicable Stalking Horse Agreement.

## 13.    FIDUCIARY OUT.

Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or its board of directors, board of managers, or similar governing body to take any action or to refrain from taking any action with respect to any Sale Transaction or these Bidding Procedures solely to the extent such Debtor or governing body determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, until the entry of the applicable Sale Order, the

Debtors and their respective directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to: (A) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Assets (each, an "Alternate Proposal"); (B) provide access to non-public information concerning the Debtors and the Assets to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (C) maintain or continue discussions or negotiations with respect to any Alternate Proposal; (D) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of any Alternate Proposal; and (E) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

14.    **"AS IS, WHERE IS".**

Consummation of any Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted and agreed to by the Debtors, in consultation with the Consultation Parties, in the executed definitive written documentation for the applicable Sale Transaction (the "Definitive Sale Documents"). Unless otherwise specifically accepted and agreed to by the Debtors in the Definitive Sale Documents, all of the Debtors' right, title, and interest in and to the Asset or Assets disposed of in any applicable Sale Transaction will be transferred to the Winning Bidder (or Back-Up Bidder, as applicable) free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) of the Bankruptcy Code.

By submitting a Bid, each bidder will be deemed to acknowledge and represent that it (A) has had an opportunity to conduct adequate due diligence regarding the Debtors and the proposed Sale Transaction prior to making its Bid and no further due diligence is or shall be required, (B) has relied solely on its own independent review, investigation, and inspection of any document, including executory contracts and unexpired leases, in making its Bid, and (C) did not rely on or receive from any person or entity (including any of the Debtors or their advisors or other representatives) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the proposed Sale Transaction or the completeness of any information provided in connection with the proposed Sale Transaction or the Auction (if any), except as may be set forth in the Definitive Sale Documents.

15.    **COMMISSIONS.**

The Debtors shall be under no obligation whatsoever to pay any commissions, fees, or expenses to any bidder's agent, advisor, or broker. Any and all commissions, fees, or expenses for any such agents, advisors, or brokers shall be paid by the applicable bidder at such bidder's discretion. In no case shall any commissions, fees, or expenses for any bidder's agent, advisor, or broker be deducted from any proceeds derived from any Sale of the Assets. This Section 15 shall not apply to any Bid Protections that become payable pursuant to the terms of a Stalking Horse Agreement.

16.     **RESERVATION OF RIGHTS.**

The Debtors shall be entitled to modify these Bidding Procedures in their reasonable business judgment in consultation with the Consultation Parties in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction (if any), additional customary terms and conditions on a Sale Transaction, including:  (A) extending the deadlines set forth in these Bidding Procedures; (B) adjourning the Auction at the Auction; (C) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if any); (D) canceling the Auction; and (E) rejecting any or all Bids or Qualified Bids for any Assets; *provided, however*, that notwithstanding anything herein to the contrary, the Debtors shall not amend or modify these Bidding Procedures or the bidding process (i) to reduce or otherwise modify their obligations hereunder to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court, (ii) to limit or modify the terms and agreements set forth in the DIP Loan Documents or the UST Cash Collateral Orders in a manner that adversely affects the Prepetition Secured Parties, the Prepetition UST Secured Parties, the Junior DIP Secured Parties, and the Postpetition B-2 Secured Parties, in each case without the prior written consent of such adversely affected party(ies), to be granted or withheld in each of their discretion, or (iii) to impair or modify, in any material respect, the rights and obligations of the Real Estate Stalking Horse Bidder under the Real Estate Stalking Horse APA or otherwise violate the Real Estate Stalking Horse APA or affect the Real Estate Stalking Horse Bidder in a manner that would reasonably be expected to have a material and adverse effect on the Real Estate Stalking Horse Bidder that is disproportionate to the Real Estate Stalking Horse Bidder as compared to the effect on other Qualified Bidders for the Owned Properties subject of the Real Estate Stalking Horse APA generally.  All such modifications and additional rules will be communicated to each of the Consultation Parties and Qualified Bidders; *provided* that to the extent such modifications occur at the applicable Auction (if any), disclosure of such modifications will be limited to those parties in attendance at such Auction.

17.     **CONSENT TO JURISDICTION.**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court (and, if applicable, the Canadian Court) and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of these Bidding Procedures.

18.     **SALE HEARING.**

The Court shall hold one or more hearings to consider approval of the Winning Bid(s) (and Back-Up Bid(s), as applicable) and the Sale Transaction(s) contemplated thereby (each, a "Sale Hearing").

If the Winning Bid(s) (and Back-Up Bid(s), as applicable) and the Sale Transaction(s) contemplated thereby contemplate the Sale(s) of Canadian Assets, the Foreign Representative shall apply to the Canadian Court for a Canadian Sale Recognition Order as soon as practicable following the applicable Sale Hearing and entry of the applicable Sale Order.

**The Sale Hearing for the Rolling Stock shall be held on October 27, 2023, and the Sale Hearing for all other Assets (including the Real Property Assets) shall be held on December 12, 2023, in each case subject to the availability of the Court. The Sale Hearings may, in each case, be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending written notice to all Qualified Bidders and Consultation Parties prior to, or by making an announcement at, the Sale Hearing(s), or in the alternative by filing a revised agenda with the Court after consultation with the Consultation Parties. No further notice of any such continuance will be required to be provided to any bidder or other party.**

19.    **RETURN OF DEPOSIT.**

Any Deposits provided by Qualified Bidders shall be held in one or more escrow accounts on terms acceptable to the Debtors. Any such Deposits will be returned to Qualified Bidders that are not Winning Bidders (or Back-Up Bidders, as applicable) on the date that is three business days after the Auction (if any). Any Deposit provided by a Winning Bidder (or Back-Up Bidder, as applicable) shall be applied to the Purchase Price of the applicable Sale Transaction at closing. Any Deposit provided by a Back-Up Bidder shall be returned to such Back-Up Bidder on the date that is three (3) business days following the date on which its Back-Up Bid is no longer required to be held open and irrevocable pursuant to section 12 of these Bidding Procedures.

If a Winning Bidder (or Back-Up Bidder, as applicable) fails to consummate the Sale Transaction contemplated by its Winning Bid (or Back-Up Bid, as applicable) because of a breach by such Winning Bidder (or Back-Up Bidder, as applicable), the Debtors will not have any obligation to return any Deposit provided by such Winning Bidder (or Back-Up Bidder, as applicable), which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates.

## **Exhibit A**

**Bid Form A**

**Exhibit A**
Owned Properties

| Aggregate Offer Price | | | | | | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | $- | $- | $- | $- | $- | $- |
| | | | | | Indicate % Premium --> | | | | | | |
| Number | Property Name | Address | City | State | Offer Price by Property | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 |
| Y421 | Birmingham, AL | 3518 Industrial Parkway | Birmingham | AL | | | | | | | |
| Y409 | Decatur, AL | 1901 Highway 20 West | Decatur | AL | | | | | | | |
| Y429 | Mobile, AL | 1111 Virginia Street | Mobile | AL | | | | | | | |
| Y415 | Montgomery, AL | 5680 Old Hayneville Road | Montgomery | AL | | | | | | | |
| Y580 | Little Rock, AR | 4500 N 65th Street | Little Rock | AR | | | | | | | |
| Y581 | Springdale, AR | 1543 Ford Avenue | Springdale | AR | | | | | | | |
| R858 | Lake Havasu City, AZ | 1951 San Juan Drive | Lake Havasu City | AZ | | | | | | | |
| R871 | Phoenix, AZ | 3045 S 43rd Avenue | Phoenix | AZ | | | | | | | |
| Y835 | Flagstaff, AZ | 1814 N Main Street | Flagstaff | AZ | | | | | | | |
| Y845 | Nogales, AZ | 2859 W Valle Verde Drive | Nogales | AZ | | | | | | | |
| Y842 | Tucson, AZ | 601 W Flores Street | Tucson | AZ | | | | | | | |
| R600 | Bakersfield, CA | 4901 Lisa Marie Court | Bakersfield | CA | | | | | | | |
| R519 | Fresno, CA | 4556 S Chestnut Avenue | Fresno | CA | | | | | | | |
| R790 | Sacramento, CA | 620 Harbor Boulevard | W Sacramento | CA | | | | | | | |
| Y814 | Fresno, CA | 2440 E Church Avenue | Fresno | CA | | | | | | | |
| Y625 | Oxnard, CA | 2685 Sherwin Avenue | Ventura | CA | | | | | | | |
| Y809 | Sacramento, CA | 3210 52nd Avenue | Sacramento | CA | | | | | | | |
| Y813 | Tracy, CA | 1535 E Pescadero Avenue | Tracy | CA | | | | | | | |
| Y894 | Grand Junction, CO | 3207 "F" Road | Clifton | CO | | | | | | | |
| N139 | Southington, CT | 130 Canal Street | Southington | CT | | | | | | | |
| Y177 | Salisbury, MD | 26902 Bethel Concord Road | Seaford | DE | | | | | | | |
| Y184 | Wilmington, DE | 316 New Churchmans Road | New Castle | DE | | | | | | | |
| Y728 | Fort Myers, FL | 2635 Rockfill Road | Fort Myers | FL | | | | | | | |
| Y730 | Jacksonville, FL | 3404 Clifford Lane | Jacksonville | FL | | | | | | | |
| Y757 | West Palm Beach, FL | 1430 SW 30th Avenue | Boynton Beach | FL | | | | | | | |
| H403 | Atlanta, GA | 4700 Highway 42 | Ellenwood | GA | | | | | | | |
| Y684 | Augusta, GA | 4200 Wheeler Road | Martinez | GA | | | | | | | |
| Y433 | Chattanooga, TN | 345 Roadway Drive | Ringgold | GA | | | | | | | |
| Y412 | LaGrange, GA | 677 Hudson Road | LaGrange | GA | | | | | | | |
| Y414 | Macon, GA | 4241 Interstate Drive | Macon | GA | | | | | | | |
| Y685 | Savannah, GA | 3501 Elklin Avenue | Savannah | GA | | | | | | | |
| Y800 | Honolulu, HI | 94-164 Leokane Street | Waipahu | HI | | | | | | | |
| H375 | Des Moines, IA | 6144 NE 22nd Street | Des Moines | IA | | | | | | | |
| H397 | Omaha, NE | 3219 Nebraska Avenue | Council Bluffs | IA | | | | | | | |
| Y389 | Mason City, IA | 1514 S Pierce Avenue | Mason City | IA | | | | | | | |
| Y860 | Sioux City, IA | 2425 Bridgeport Drive | Sioux City | IA | | | | | | | |
| H320 | Chicago, IL | 8601 W 53rd Street | McCook | IL | | | | | | | |
| H337 | Danville, IL | 72 Eastgate Drive | Danville | IL | | | | | | | |
| H368 | Lincoln, IL | 700 NE Arch Street | Atlanta | IL | | | | | | | |
| H419 | St. Louis, MO | 24 Gateway Commerce | Edwardsville | IL | | | | | | | |
| Y323 | Wheeling, IL | 1100 Chaddick Drive | Wheeling | IL | | | | | | | |
| Y309 | Chicago Heights, IL | 2000 East Lincoln Highway | Chicago Heights | IL | | | | | | | |
| Y303 | Chicago North, IL | 1000 Chaddick Drive | Wheeling | IL | | | | | | | |
| Y314 | Peoria, IL | 780 W Birchwood Street | Morton | IL | | | | | | | |
| Y344 | Quincy, IL | 2620 N 36th Street | Quincy | IL | | | | | | | |
| Y371 | Rock Island, IL | 3700 78th Avenue West | Rock Island | IL | | | | | | | |
| H322 | Evansville, IN | 8901 N Kentucky Avenue | Evansville | IN | | | | | | | |
| H341 | Fort Wayne, IN | 4320 Meridian Road | Fort Wayne | IN | | | | | | | |
| H357 | Indianapolis, IN | 2530 S Tibbs Avenue | Indianapolis | IN | | | | | | | |
| H244 | Louisville, KY | 4885 Keystone Boulevard | Jeffersonville | IN | | | | | | | |
| Y246 | Fort Wayne, IN | 3513 Adams Center Road | Fort Wayne | IN | | | | | | | |
| Y324 | Indianapolis, IN | 1818 S High School Road | Indianapolis | IN | | | | | | | |
| H364 | Kansas City, KS | 9711 State Avenue | Kansas City | KS | | | | | | | |
| Y202 | Bowling Green, KY | 300 New Porter Pike | Bowling Green | KY | | | | | | | |
| Y245 | Lexington, KY | 460 Transport Court | Lexington | KY | | | | | | | |
| Y348 | Paducah, KY | 5151 Charter Oak Drive | Paducah | KY | | | | | | | |
| Y404 | Alexandria, LA | 333 N 3rd Street | Alexandria | LA | | | | | | | |
| Y473 | Baton Rouge, LA | 956 Hwy 190 West | Port Allen | LA | | | | | | | |
| Y460 | Monroe, LA | 158 Parker Road | Monroe | LA | | | | | | | |

**Exhibit A**
Owned Properties

| Aggregate Offer Price | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| | | | | | Indicate % Premium --> | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Number | Property Name | Address | City | State | Offer Price by Property | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 |
| Y471 | New Orleans, LA | 12169 Old Gentilly Road | New Orleans | LA | | | | | | | |
| Y100 | Boston, MA | 95 Concord Street | North Reading | MA | | | | | | | |
| Y186 | Worcester, MA | 464 Hartford Turnpike | Shrewsbury | MA | | | | | | | |
| Y155 | Baltimore, MD | 6311 E Lombard Street | Baltimore | MD | | | | | | | |
| Y153 | Hagerstown, MD | 311 East Oak Ridge Drive | Hagerstown | MD | | | | | | | |
| Y183 | Washington, DC | 7600 Preston Drive | Landover | MD | | | | | | | |
| Y154 | Portland, ME | 75 Eisenhower Drive | Westbrook | ME | | | | | | | |
| Y191 | Waterville, ME | 44 Sheridan Drive | Fairfield | ME | | | | | | | |
| H263 | Birch Run, MI | 11740 Dixie Highway | Birch Run | MI | | | | | | | |
| H262 | Detroit, MI | 27411 Wick Road | Romulus | MI | | | | | | | |
| H288 | Gaylord, MI | 1830 Calkins Road | Gaylord | MI | | | | | | | |
| H358 | Jackson, MI | 1059 Hurst Road | Jackson | MI | | | | | | | |
| Y261 | Detroit, MI | 2270 Van Born Road | Taylor | MI | | | | | | | |
| Y272 | Grand Rapids, MI | 2180 Chicago Drive SW | Wyoming | MI | | | | | | | |
| Y223 | Pontiac, MI | 1280 Joslyn Avenue | Pontiac | MI | | | | | | | |
| H388 | Owatonna, MN | 200 32nd Avenue NW | Owatonna | MN | | | | | | | |
| H340 | Worthington, MN | 172 Industrial Parkway | Jackson | MN | | | | | | | |
| Y370 | Duluth, MN | 4425 W First Street | Duluth | MN | | | | | | | |
| Y347 | St. Paul, MN | 12400 Dupont Avenue S | Burnsville | MN | | | | | | | |
| H548 | Joplin, MO | 2702 Newman Road | Joplin | MO | | | | | | | |
| Y343 | Columbia, MO | 8989 E Columbus Court | Columbia | MO | | | | | | | |
| Y547 | Springfield, MO | 5575 E State Hwy 00 | Strafford | MO | | | | | | | |
| Y621 | St. Louis, MO | 400 Barton Street | St. Louis | MO | | | | | | | |
| H385 | Memphis, TN | 8100 W Sandidge Road | Olive Branch | MS | | | | | | | |
| Y456 | Jackson, MS | 102 Carter Boulevard | Richland | MS | | | | | | | |
| Y462 | Tupelo, MS | 2226 McCullough Boulevard | Tupelo | MS | | | | | | | |
| H329 | Charlotte, NC | 5201 Sunset Road | Charlotte | NC | | | | | | | |
| Y679 | Fayetteville, NC | 1061 River Road | Fayetteville | NC | | | | | | | |
| Y671 | Greensboro, NC | 1255 NC Highway 66 S | Kernersville | NC | | | | | | | |
| Y656 | Jacksonville, NC | 161 Center Street | Jacksonville | NC | | | | | | | |
| Y623 | Wilmington, NC | 3511 Highway 421 N | Wilmington | NC | | | | | | | |
| Y650 | Wilson, NC | 555 Jeffreys Road | Rocky Mount | NC | | | | | | | |
| Y664 | Fargo, ND | 2502 7th Avenue N | Fargo | ND | | | | | | | |
| Y863 | Kearney, NE | 614 Third Avenue | Kearney | NE | | | | | | | |
| Y381 | Omaha, NE | 4480 S 90th Street | Omaha | NE | | | | | | | |
| Y140 | Manchester, NH | 9 Cote Lane | Bedford | NH | | | | | | | |
| N114 | Philadelphia, PA | 2300 Gerry Road | Cinnaminson | NJ | | | | | | | |
| N124 | Trenton, NJ | 15 Thomas J. Rhodes Industrial | Mercerville | NJ | | | | | | | |
| Y165 | Atlantic City, NJ | 1641 Eden Road | Millville | NJ | | | | | | | |
| Y859 | Albuquerque, NM | 900 64th Street NW | Albuquerque | NM | | | | | | | |
| Y878 | Las Vegas, NV | 5049 W Post Road | Las Vegas | NV | | | | | | | |
| N110 | Buffalo, NY | 6640 Transit Road | Williamsville | NY | | | | | | | |
| N119 | Rochester, NY | 35 Transport Drive | Rochester | NY | | | | | | | |
| N118 | Syracuse, NY | 7173 Schuyler Road | East Syracuse | NY | | | | | | | |
| H634 | Buffalo, NY | 6650 Transit Road | Williamsville | NY | | | | | | | |
| Y104 | Albany, NY | 37 Frontage Road | Glenmont | NY | | | | | | | |
| Y205 | Buffalo, NY | 66 Mikens Road | Tonawanda | NY | | | | | | | |
| Y132 | Long Island, NY | 99 Express Street | Plainview | NY | | | | | | | |
| Y123 | Maybrook, NY | 1000 Homestead Avenue | Maybrook | NY | | | | | | | |
| Y256 | Rochester, NY | 1575 Emerson Street | Rochester | NY | | | | | | | |
| Y266 | Syracuse, NY | 7138 Northern Boulevard | East Syracuse | NY | | | | | | | |
| H208 | Akron, OH | 3140 Massillon Road | Akron | OH | | | | | | | |
| H332 | Cleveland, OH | 10720 Memphis Avenue | Brooklyn | OH | | | | | | | |
| H330 | Columbus, OH | 4800 Journal Street | Columbus | OH | | | | | | | |
| H339 | Dayton, OH | 2700 Valley Pike | Dayton | OH | | | | | | | |
| H290 | Huntington, OH | 95 Holland Drive | Gallipolis | OH | | | | | | | |
| H425 | Toledo, OH | 20820 Midstar Drive | Bowling Green | OH | | | | | | | |
| H346 | Youngstown, OH | 10855 Market Street | N Lima | OH | | | | | | | |
| Y211 | Akron, OH | 1275 Ohio Ave | Copley | OH | | | | | | | |

**Exhibit A**
Owned Properties

| Aggregate Offer Price | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Indicate % Premium --> | $- | $- | $- | $- | $- | $- |
| Number | Property Name | Address | City | State | Offer Price by Property | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 |
| Y216 | Cincinnati, OH | 10074 Princeton-Glendale Road | Cincinnati | OH | | | | | | | |
| Y218 | Cleveland, OH | 5250 Brecksville Road | Richfield | OH | | | | | | | |
| Y857 | Columbus, OH | 5400 Fisher Road | Columbus | OH | | | | | | | |
| Y243 | Dayton, OH | 2801 Valley Pike | Dayton | OH | | | | | | | |
| Y250 | Lima, OH | 1505 Bowman Road | Lima | OH | | | | | | | |
| Y290 | Parkersburg, WV | 300 Drag Strip Road | Belpre | OH | | | | | | | |
| Y251 | Toledo, OH | 4431 South Avenue | Toledo | OH | | | | | | | |
| Y212 | Youngstown, OH | 3020 Salt Drive | Hubbard | OH | | | | | | | |
| Y531 | Oklahoma City, OK | 8000 SW 15th Street | Oklahoma City | OK | | | | | | | |
| Y240 | Oshawa, ON | 285 Blair Street | Oshawa | ON | | | | | | | |
| Y289 | Woodstock, ON | 1187 Welford Place | Woodstock | ON | | | | | | | |
| R849 | Medford, OR | 4000 Hamrick Road | Central Point | OR | | | | | | | |
| Y635 | Portland, OR | 10510 N Vancouver Way | Portland | OR | | | | | | | |
| N103 | Harrisburg, PA | 475 Terminal Road | Camp Hill | PA | | | | | | | |
| N128 | Pittsburgh, PA | 2950 Grand Avenue | Neville Island | PA | | | | | | | |
| N102 | Reading, PA | 3725 Pottsville Pike | Reading | PA | | | | | | | |
| Y232 | Erie, PA | 3111 McCain Avenue | Erie | PA | | | | | | | |
| Y135 | Harrisburg, PA | 100 Roadway Drive | Carlisle | PA | | | | | | | |
| Y143 | Lansdale, PA | 750 County Line Road | Line Lexington | PA | | | | | | | |
| Y152 | Philadelphia, PA | 2627 State Road | Bensalem | PA | | | | | | | |
| Y178 | Scranton, PA | 1284 S Main Road | Mountain Top | PA | | | | | | | |
| Y275 | Stanhope, PQ | 930 Route 147 | Stanhope | PQ | | | | | | | |
| N105 | Providence, RI | 2110 Plainfield Pike | Cranston | RI | | | | | | | |
| Y108 | Providence, RI | 55 Industrial Road | Cumberland | RI | | | | | | | |
| H328 | Columbia, SC | 3705 Highway 321 | West Columbia | SC | | | | | | | |
| Y688 | Charleston, SC | 2243 Wren Street | Charleston | SC | | | | | | | |
| Y683 | Columbia, SC | 1308 Pineview Drive | Columbia | SC | | | | | | | |
| Y695 | Florence, SC | 2257 S Main Street | Florence | SC | | | | | | | |
| Y682 | Spartanburg, SC | 580 Shackleford Road | Piedmont | SC | | | | | | | |
| H306 | Knoxville, TN | 5409 National Avenue | Knoxville | TN | | | | | | | |
| H395 | Nashville, TN | 500 Oak Bluff Lane | Goodlettsville | TN | | | | | | | |
| Y435 | Jackson, TN | 88 E L Morgan Drive | Jackson | TN | | | | | | | |
| Y432 | Knoxville, TN | 1212 Hilton Road | Knoxville | TN | | | | | | | |
| Y431 | Memphis, TN | 3310 Gill Road | Memphis | TN | | | | | | | |
| Y422 | Nashville, TN | 7300 Centennial Boulevard | Nashville | TN | | | | | | | |
| Y522 | Austin, TX | 9018 Tuscany Way | Austin | TX | | | | | | | |
| Y511 | Dallas, TX | 200 North Beltline Road | Irving | TX | | | | | | | |
| Y851 | El Paso, TX | 1330 Henry Brennan Drive | El Paso | TX | | | | | | | |
| Y525 | Fort Worth, TX | 5501 Campus Drive | Fort Worth | TX | | | | | | | |
| Y557 | Laredo, TX | 8011 Killam Industrial Boulevard | Laredo | TX | | | | | | | |
| Y555 | San Antonio, TX | 111 Gembler Road | San Antonio | TX | | | | | | | |
| Y615 | Sherman, TX | 211 Dorset Drive | Sherman | TX | | | | | | | |
| Y574 | Waco, TX | 3230 Clay Avenue | Waco | TX | | | | | | | |
| R527 | Salt Lake City, UT | 4375 W 1385 S | Salt Lake City | UT | | | | | | | |
| Y615 | Norfolk, VA | 1313 Cavalier Boulevard | Chesapeake | VA | | | | | | | |
| Y172 | Richmond, VA | 9600 Express Lane | Richmond | VA | | | | | | | |
| Y180 | Bellows Falls, VT | 17 Transport Park | Bellows Falls | VT | | | | | | | |
| Y838 | Burlington, VT | 199 Kopp Drive | Williston | VT | | | | | | | |
| H428 | Wausau, WI | 501 Spring Road | Mosinee | WI | | | | | | | |
| Y336 | Eau Claire, WI | 3617 McIntyre Avenue | Eau Claire | WI | | | | | | | |
| Y394 | Madison, WI | 2573 Progress Road | Madison | WI | | | | | | | |
| Y313 | Milwaukee, WI | 6880 S Howell Avenue | Oak Creek | WI | | | | | | | |
| Y220 | Clarksburg, WV | 6399 Saltwell Road | Bridgeport | WV | | | | | | | |
| H448 | Burlington, WA(1) | 9501 24th Place West | Everett | WA | | | | | | | |
| R524 | Goodland, KS | 2815 S Highway 27 | Goodland | KS | | | | | | | |
| | Kansas City, MO | 8724 Leeds Road | Kansas City | MO | | | | | | | |

**Notes:**
(1) Burlington, WA property is subject to a land lease; however, building is owned

**<u>Exhibit B</u>**

**Bid Form B**

**Exhibit B**
Leased Properties

| Aggregate Offer Price | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | $- | $- | $- | $- | $- |
| | | | | | Indicate % Premium --> | | | | | | |
| | | | | | Offer Price by | | | | | | |
| Number | Property Name | Address | City | State | Property | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 |
| | | | | | $- | $- | $- | $- | $- | $- | $- |
| Y626 | Calgary, AB | 75 Dufferin Place SE | Calgary | AB | | | | | | | |
| A1627 | Edmonton, AB | 16060 128 Avenue | Edmonton | AB | | | | | | | |
| Y841 | Phoenix, AZ | 2021 S 51st Avenue | Phoenix | AZ | | | | | | | |
| Y899 | Vancouver, BC | 3985 Still Creek Avenue | Burnaby | BC | | | | | | | |
| Y813 | Merced, CA | 841 W M. L. King, Jr. Way | Merced | CA | | | | | | | |
| Y641 | San Diego, CA | 9525 Padgett Street | San Diego | CA | | | | | | | |
| Y896 | Orange, CA | 700 N Eckhoff Street | Orange | CA | | | | | | | |
| Y661 | Sun Valley, CA | 11266 & 11300 Peoria Street | Sun Valley | CA | | | | | | | |
| R517 | Los Angeles, CA | 11937 Regentview Avenue | Downey | CA | | | | | | | |
| R866 | Visalia, CA | 1619 North Plaza Drive | Visalia | CA | | | | | | | |
| R512 | Redding, CA | 20658 Alexander Avenue | Anderson | CA | | | | | | | |
| Y940 | Calexico, CA | 2451 Portico Boulevard | Calexico | CA | | | | | | | |
| Y260 | Adelanto, CA | 17401 Adelanto Road | Adelanto | CA | | | | | | | |
| R390 | San Jose, CA | 751 Nuttman Avenue | Santa Clara | CA | | | | | | | |
| Y830 | Bloomington, CA | 18298 Slover Avenue | Bloomington | CA | | | | | | | |
| Y808 | Chula Vista, CA | 6930 Cactus Court | San Diego | CA | | | | | | | |
| R575 | Orange, CA | 2200 N Batavia Street | Orange | CA | | | | | | | |
| Y805 | Santa Rosa, CA | 270 Dutton Avenue | Santa Rosa | CA | | | | | | | |
| Y547 | Gardena, CA | 15400 S Main Street | Gardena | CA | | | | | | | |
| R829 | Fontana, CA | 10661 Etiwanda Avenue | Fontana | CA | | | | | | | |
| Y811 | San Francisco, CA | 499 Valley Drive | Brisbane | CA | | | | | | | |
| R535 | Eureka, CA | 1100 W Del Norte Street | Eureka | CA | | | | | | | |
| Y833 | Pomona, CA | 1130 South Reservoir Street | Pomona | CA | | | | | | | |
| R783 | Pico Rivera, CA | 9933 Beverly Boulevard | Pico Rivera | CA | | | | | | | |
| R834 | Santa Maria, CA | 223 East Roemer Way | Santa Maria | CA | | | | | | | |
| Y889 | Oakland, CA | 25555 Clawiter Road | Hayward | CA | | | | | | | |
| YOVH | San Jose, CA | 1700 Montague Expressway | San Jose | CA | | | | | | | |
| Y891 | Colorado Springs, CO | 4810 Northpark Drive | Colorado Springs | CO | | | | | | | |
| R589 | Denver, CO | 9900 E 102nd Avenue | Commerce City | CO | | | | | | | |
| R831 | Grand Junction, CO | 1547 Independent Avenue, Unit 1 | Grand Junction | CO | | | | | | | |
| Y690 | Denver, CO | 14700 Smith Road | Aurora | CO | | | | | | | |
| Y145 | Middletown, CT | 177 W Johnson Ave | Cheshire | CT | | | | | | | |
| Y714 | Ocala, FL | 410 SW 52nd Avenue | Ocala | FL | | | | | | | |
| Y423 | Orlando, FL | 1265 LaQuinta Drive | Orlando | FL | | | | | | | |
| Y754 | Tampa, FL | 9801 Palm River Rd | Tampa | FL | | | | | | | |
| Y740 | Miami, FL | 11301 NW 134th Street | Miami | FL | | | | | | | |
| Y401 | Athens, GA | 175 Horace Head Road | Jefferson | GA | | | | | | | |
| Y402 | Atlanta, GA | 1892 Airport Industrial Park Drive | Marietta | GA | | | | | | | |
| Y411 | South Atlanta, GA | 3934 Thurman Road | Conley | GA | | | | | | | |
| Y705 | Valdosta, GA | 1250 Sunset Drive | Thomasville | GA | | | | | | | |
| R815 | Boise, ID | 1405 N Olive Avenue | Meridian | ID | | | | | | | |
| R630 | Pocatello, ID | 14299 W US Highway 30 | Pocatello | ID | | | | | | | |
| R660 | Twin Falls, ID | 304 6th Avenue W | Twin Falls | ID | | | | | | | |
| Y318 | Bolingbrook, IL | 260 E Old Chicago Drive | Bolingbrook | IL | | | | | | | |
| H360 | Joliet, IL | 3801 Mound Road | Joliet | IL | | | | | | | |
| H319 | Rockford, IL | 1751 New Milford School Road | Rockford | IL | | | | | | | |
| Y304 | Chicago West, IL | 2100 Rochester Drive | Montgomery | IL | | | | | | | |
| Y355 | Decatur, IL | 3910 E Harrison Ave | Decatur | IL | | | | | | | |
| H311 | South Bend, IN | 5550 W Cleveland Road Ext | South Bend | IN | | | | | | | |
| Y356 | Terre Haute, IN | 4900 N 13th Street | Terre Haute | IN | | | | | | | |
| Y312 | South Bend, IN | 1415 S Olive Street | South Bend | IN | | | | | | | |
| Y569 | Wichita, KS | 4931 South Hydraulic Avenue | Wichita | KS | | | | | | | |
| Y367 | Salina, KS | 505 Graves Boulevard | Salina | KS | | | | | | | |
| Y352 | Topeka, KS | 1621 NW Saline Street | Topeka | KS | | | | | | | |
| Y548 | Baxter Springs, KS | 2600 Powell Road | Baxter Springs | KS | | | | | | | |
| Y510 | Shreveport, LA | 1333 N Market Street | Shreveport | LA | | | | | | | |
| N133 | Springfield, MA | 241B Bliss Street | West Springfield | MA | | | | | | | |
| N109 | Boston, MA | 28 Sterling Road | North Billerica | MA | | | | | | | |
| Y479 | Winnipeg, MB | 1400 Inkster Boulevard | Winnipeg | MB | | | | | | | |

**Exhibit B**
Leased Properties

Aggregate Offer Price

| Number | Property Name | Address | City | State | Offer Price by Property | Package 1 | Package 2 | Package 3 | Package 4 | Package 5 |
|---|---|---|---|---|---|---|---|---|---|---|
| N113 | Baltimore, MD | 6351 S Hanover Road | Elkridge | MD | | | | | | |
| Y2320 | Iron Mountain, MI | 1001 Stephenson Street | Norway | MI | | | | | | |
| H350 | Grand Rapids, MI | 10151 South Division Avenue | Wayland | MI | | | | | | |
| H424 | Minneapolis, MN | 11220 Xeon Street NW | Coon Rapids | MN | | | | | | |
| Y346 | St. Cloud, MN | 8125 Old Highway Road North | St. Cloud | MN | | | | | | |
| H345 | Sikeston, MO | 830 Highway AA | Miner | MO | | | | | | |
| Y326 | Kansas City, MO | 3500 Booth Avenue | Kansas City | MO | | | | | | |
| R3559 | Billings, MT | 833 Mellowney Lane | Billings | MT | | | | | | |
| R610 | Great Falls, MT | 4169 N Park Trail | Great Falls | MT | | | | | | |
| Y604 | Butte, MT | 122005 W Browns Gulch Road | Butte | MT | | | | | | |
| R633 | Missoula, MT | 7180 Kestrel Drive | Missoula | MT | | | | | | |
| Y616 | Raleigh, NC | 3215 US Highway 70 | Durham | NC | | | | | | |
| Y653 | Charlotte, NC | 11010 Reames Road | Charlotte | NC | | | | | | |
| H622 | Raleigh, NC | 1305 Kirkland Rd | Raleigh | NC | | | | | | |
| Y408 | Minot, ND | 720 64th SE | Minot | ND | | | | | | |
| Y602 | Bismarck, ND | 1955 Hancock Drive | Bismarck | ND | | | | | | |
| Y804 | Bridgeport, NE | 9971 U.S. Hwy 26 | Bridgeport | NE | | | | | | |
| Y122 | South Plainfield, NJ | 445 Hollywood Avenue | South Plainfield | NJ | | | | | | |
| Y111 | Kearny, NJ | 72 Second Street | Kearny | NJ | | | | | | |
| Y112 | Trenton, NJ | 49 Thomas J. Rhodes Industrial Park | Trenton | NJ | | | | | | |
| Y126 | Carlstadt, NJ | 700 Dell Road | Carlstadt | NJ | | | | | | |
| R607 | Elko, NV | 143 Main Street | Elko | NV | | | | | | |
| Y819 | Reno, NV | 1650 Kleppe Lane | Sparks | NV | | | | | | |
| R700 | Reno, NV | 1875 Industrial Way | Reno | NV | | | | | | |
| R10/OH | Las Vegas, NV | 4650 E Cheyenne Road | Las Vegas | NV | | | | | | |
| Y187 | Brooklyn, NY | 1313 Grand Street | Brooklyn | NY | | | | | | |
| N107 | Maspeth, NY | 58-60 Page Place | Maspeth | NY | | | | | | |
| Y150 | Mount Vernon, NY | 12 Dock Street | Mount Vernon | NY | | | | | | |
| Y237 | Plattsburgh, NY | 182 Kelly Road | Plattsburgh | NY | | | | | | |
| Y198 | Elmira, NY | 1620 Grand Central Avenue | Elmira | NY | | | | | | |
| Y116 | Deer Park, NY | 50 Bur Drive | Deer Park | NY | | | | | | |
| Y532 | Tulsa, OK | 14549 E Admiral Place | Tulsa | OK | | | | | | |
| Y249 | Ottawa, ON | 888 Belfast Road, Suite 210 | Ottawa | ON | | | | | | |
| Y268 | Toronto, ON | 6130 Netherhart Road | Mississauga | ON | | | | | | |
| Y258 | St. Catharines, ON | 281 Queenston Road | Niagara-On-The-Lake | ON | | | | | | |
| R2656 | Eugene, OR | 3500 W First Street | Eugene | OR | | | | | | |
| R810 | Bend, OR | 1701 SW First Street | Redmond | OR | | | | | | |
| R836 | La Grande, OR | 1419 Jefferson Avenue | La Grande | OR | | | | | | |
| Y875 | Portland, OR | 6845 N Cutter Circle | Portland | OR | | | | | | |
| R509 | Roseburg, OR | 1899 SE Stephens Street | Roseburg | OR | | | | | | |
| N138 | Milton, PA | 3570 Broadway Road | Milton | PA | | | | | | |
| Y213 | Pittsburgh, PA | 70 Graham Street | McKees Rocks | PA | | | | | | |
| N121 | Altoona, PA | 200 Cayuga Avenue | Altoona | PA | | | | | | |
| Y201 | Bedford, PA | 198 Innovation Drive | Bedford | PA | | | | | | |
| N141 | Scranton, PA | 1212 O'Neil Highway | Dunmore | PA | | | | | | |
| Y203 | DuBois, PA | 116 Satferlee Road | DuBois | PA | | | | | | |
| Y158 | Allentown, PA | 2527 Brodhead Road | Bethlehem | PA | | | | | | |
| Y670 | Montreal, PQ | 1725 Chemin Saint Francois | Dorval | PQ | | | | | | |
| Y700 | San Juan, PR | State Road #165, KM 2.4 | Guaynabo | PR | | | | | | |
| Y182 | Sherbrooke, PQ | 5945 Chemin Saint-Elie | Sherbrooke | QC | | | | | | |
| Y668 | Watertown, SD | 2615 Lockheed Avenue | Watertown | SD | | | | | | |
| Y614 | Rapid City, SD | 900 E Omaha Street | Rapid City | SD | | | | | | |
| Y801 | Sioux Falls, SD | 3401 North 1st Avenue | Sioux Falls | SD | | | | | | |
| Y566 | Saskatoon, SK | 717 Cynthia Street | Saskatoon | SK | | | | | | |
| Y565 | Regina, SK | 920 Mackay Street | Regina | SK | | | | | | |
| Y644 | Kingsport, TN | 280 Humbolt Lane | Greeneville | TN | | | | | | |
| Y852 | Abilene, TX | 1201 China Street | Abilene, TX | TX | | | | | | |
| Y572 | Texarkana, TX | 8101 N Stateline Avenue | Texarkana | TX | | | | | | |
| Y521 | Houston, TX | 9415 Wallisville Road | Houston | TX | | | | | | |

**Exhibit B**
Leased Properties

**Aggregate Offer Price**

| Number | Property Name | Address | City | State | Offer Price by Property *Indicate % Premium -->* | Package 1 | Package 2 | Package 3 | Package 3 | Package 4 | Package 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | - | - | - | - | - | - |
| | | | | | $- | $- | $- | $- | $- | $- | $- |
| Y551 | Corpus Christi, TX | 322 Hereford Road | Corpus Christi | TX | | | | | | | |
| Y558 | Eagle Pass, TX | 1013 Carleton Drive | Eagle Pass | TX | | | | | | | |
| Y556 | McAllen, TX | 3500 N McColl Road | McAllen | TX | | | | | | | |
| Y854 | Lubbock, TX | 1317 E 38th Street | Lubbock | TX | | | | | | | |
| Y508 | Garland, TX | 12340 E Northwest Highway | Garland | TX | | | | | | | |
| Y853 | Midland, TX | 3924 South County Road 1290 | Odessa | TX | | | | | | | |
| Y881 | Salt Lake City, UT | 2410 S 2700 W | Salt Lake City | UT | | | | | | | |
| Y865 | St. George, UT | 625 N 1400 East | St. George | UT | | | | | | | |
| R527 | Salt Lake City, UT | 695 W 1700 S, Building 7 | Logan | UT | | | | | | | |
| Y617 | Roanoke, VA | 1665 Seibel Drive NE | Roanoke | VA | | | | | | | |
| Y647 | Staunton, VA | 53 Expo Road | Fishersville | VA | | | | | | | |
| Y149 | Manassas, VA | 10451 Colonel  Court | Manassas | VA | | | | | | | |
| Y868 | Pasco, WA | 4905 N Railroad Avenue | Pasco | WA | | | | | | | |
| R880 | Tacoma, WA | 802 E 11th Street | Tacoma | WA | | | | | | | |
| Y870 | Yakima, WA | 1928-C Rudkin Road | Union Gap | WA | | | | | | | |
| R554 | Wenatchee, WA | 5537 Enterprise Drive | E Wenatchee | WA | | | | | | | |
| Y873 | Tacoma, WA | 2807 70th Avenue East | Fife | WA | | | | | | | |
| Y642 | Seattle, WA | 12855 48th Avenue South | Tukwila | WA | | | | | | | |
| R915 | Spokane, WA | 3901 East Broadway | Spokane | WA | | | | | | | |
| ROVH2 | Seattle, WA | 19004 84th Avenue South | Kent | WA | | | | | | | |
| H386 | Milwaukee, WI | 6161 South 6th Street | Milwaukee | WI | | | | | | | |
| H396 | Tomah, WI | 400 Holland Street | Tomah | WI | | | | | | | |
| H349 | Appleton, WI | 2843 County Road II | Neenah | WI | | | | | | | |
| Y292 | Charleston, WV | 2201 8th Avenue | Charleston | WV | | | | | | | |
| Y629 | Casper, WY | 62 Copper Avenue | Evansville | WY | | | | | | | |
| Y607 | Cheyenne, WY | 101 Lexington Avenue, Suite 4 | Cheyenne | WY | | | | | | | |
| R560 | Buffalo, WY | 94 US Highway 16 East | Buffalo | WY | | | | | | | |

**<u>Exhibit C</u>**

**Form of Lease Termination Agreement**

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (this "Agreement") is made as of this ___ day of _____, 2023 by and between _____ ("Landlord") and _____ ("Tenant").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated _____ (as amended or modified from time to time, the "Lease"), covering certain premises located at _____ (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, Landlord and Tenant desire to enter into this Agreement to, among other things, restore Landlord's possession of the Premises as of the Termination Date (as hereinafter defined), release each other of all further obligations under the Lease, and enable Landlord to dispose of any remaining equipment of Tenant at the Premises in its sole and absolute discretion;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals.  The Recitals are incorporated herein as if set forth at length.

2.      Lease Termination.  The Lease is terminated effective _____ (the "Termination Date").

3.      Consideration.  On the Termination Date, Landlord shall pay to Tenant $ _____ (the "Termination Fee").

4.      Landlord Release of Tenant.  For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities solely as those entities have rights under the Lease, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, but solely as they exist or may

exist under the Lease any and all claims evidenced by the Lease. For the avoidance of doubt, this release shall not affect any obligations of Tenant other than those arising under or in connection with the Leases.

5.      <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, solely as they arise under or relate to the Lease, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease.

6.      [As further consideration for the release provided in Sections 4 or 5 hereto, as applicable, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.][1]

7.      Each party hereby agrees, represents and warrants to the other that it realizes and acknowledges that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and each party further agrees, represents and warrants to the other that this Agreement has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the other party from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Tenant has delivered possession of the Premises to Landlord;

(b)      Tenant has delivered to Landlord the keys and access codes to the Premises;

---

[1] Note to Draft: Add for leases governed by California law.

(c)      An order has been entered by the Bankruptcy Court approving the entirety of this Agreement; and

(d)      Landlord has delivered the Termination Fee to Tenant.

9.      <u>Furniture, Fixtures and Equipment</u>.  Any furniture, fixtures and equipment owned by Tenant (collectively, "<u>FF&E</u>") remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to Tenant or any entity.

10.      <u>Authority to Settle</u>.  Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.      <u>Entire Agreement</u>.  This Agreement, including the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement, and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.      <u>Advice of Counsel</u>.  Each of the parties to this Agreement respectively represents and warrants to the other party that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no party is relying on any representation or statement made by any other Party or any person representing such other party.

13.      <u>Attorneys' Fees</u>.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.      <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document.  Further, each of the parties to this Agreement agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.      <u>Governing Law.</u>  This Agreement shall be governed by and construed under the laws of the State of [State of governing law of the subject lease], without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>.  Each party to this Agreement  consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  Each party to this Agreement hereby irrevocably waive any objection on the grounds of venue, forum non-conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  Each party to this Agreement  further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>Miscellaneous</u>.

(a)    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b)    This Agreement and each of its provisions are binding upon and shall inure to the benefit of Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c)    Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d)    Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e)    The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, Landlord and Tenant have duly executed this Agreement as of the date and year first written above.

**[LANDLORD]**

By:_____

Print Name:_____

Its:_____

**[TENANT]**

By:_____

Print Name:_____

Its:_____