**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, et al., | ) Case No.:  23-11069 (CTG) |
| | ) Administratively consolidated |
| | ) |
| Debtors. | ) Hearing Date: October 23, |
| | ) 2023 at 10:00 a.m. (ET) |
| | ) |
| | ) Objection due: October 2, 2023 |
| | ) |

**MOTION OF TSC EQUIPMENT FINANCE, LLC**
**A) TO COMPEL DEBTOR YRC, INC. TO ASSUME OR REJECT**
**EQUIPMENT LEASE COVERING APPROXIMATELY**
**246 WABASH DURAPLATE PUP TRAILERS; B)**
**FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO**
**11 U.S.C. § 362(d) TO PERMIT MOVANT TO EXERCISE RIGHTS**
**AND ENFORCE REMEDIES AGAINST DEBTOR YRC, INC.**
**WITH RESPECT TO EQUIPMENT LEASE AND TRAILERS; AND (C) TO WAIVE**
**THE 14-DAY STAY OF ENFORCEMENT PURSUANT TO F.R.B.P. 4001(a)(3)**

TSC Equipment Finance, LLC ("Movant") respectfully submits this motion seeking to compel Debtor YRC, Inc. ("Debtor") to assume or reject an equipment lease covering approximately 246 Wabash Duraplate Pup trailers (the "Trailers") by October 26, 2023. If the Debtor does not assume the lease by the Deadline (as defined herein), Movant respectfully requests relief from the automatic stay to permit Movant to exercise rights and enforce remedies with respect to the lease and Trailers and a waiver of the 14-day stay of enforcement pursuant to Federal Bankruptcy Rule 4001(a)(3).

## I.    BACKGROUND

1.    On August 6, 2023 (the "Petition Date"), the Debtor filed a petition in this Court seeking relief under chapter 11 of the United States Bankruptcy Code. On the Petition Date, and continuing on August 7, 2023, twenty-three (23) of the Debtor's affiliated companies also filed

chapter 11 bankruptcy petitions in this Court. The cases of the Debtor and the affiliates were administratively consolidated.

2.      The bankruptcy cases were commenced to effectuate an orderly winddown of the Debtors' businesses.[1]

3.      On or about March 16, 2016, the Debtor and Element Financial Corp. (the "Original Lessor") entered into a Master Lease Agreement (the "Master Lease").[2] In connection with the Master Lease, the Debtor entered into two lease schedules, denominated as schedule 26[3] and schedule 29[4] (the "Lease Schedules"). Pursuant to a Master Assignment Agreement dated October 30, 2018, the Master Lease and the Lease Schedules (collectively, the "Lease")[5] were assigned to Movant and Movant also purchased the Trailers covered by the Lease Schedules. As a result, Movant is the owner of the Trailers and the lessor of the Lease.

4.      The initial Lease term, and number of Trailers covered by the Lease Schedules, is as follows:

| Schedule | Initial term expires | Number of Trailers |
|:---:|:---:|:---:|
| 26 | November 1, 2023 | 211 |
| 29 | December 1, 2023 | 35 |

---

[1]     ECF No. 14, paragraph 19
[2]     Exhibit 1
[3]     Exhibit 2
[4]     Exhibit 3
[5]     For the avoidance of doubt, the term "Lease" as used in this motion is limited to Movant's rights under the Master Lease and Schedules 26 and 29 and does not extend to any other portion of the Master Lease or schedules which have not been assigned to Movant.

2

5.      The Debtor is in default of the Lease because, among other things, it has not paid

sums already due for August and September 2023 and, it appears, the Debtor likely does not have

the desire to make future payments.

6.      While the Lease included certain rights to extend the Lease term and/or to buyout

the Trailers for an agreed upon price, the Debtor failed to exercise these rights within the deadlines

set forth in the Lease.[6]

## II.    <u>RELIEF REQUESTED</u>

7.      Movant respectfully requests the entry of an order pursuant to 11 U.S.C. § 365(d)(2)

and Fed. R. Bankr. P. Rule 6006(b) compelling the Debtor to have filed a motion to assume or

reject the Lease by October 23, 2023 (the "Deadline").  The Deadline is the October omnibus

hearing date before this Court and is five (5) days after the conclusion of the proposed auction date

for the Debtor's "Rolling Stock".[7]  This Deadline should afford the Debtor and ample time to

determine whether they wish to attempt to assume the Lease as part of the sale process.[8]

8.      If the Debtor has not filed a motion to assume or reject the Lease by the Deadline,

the Movant respectfully requests relief from the automatic stay to permit it to exercise all rights

and enforce all remedies available to Movant under the Lease or applicable law. Without

limitation, the Movant seeks relief from the stay to permit the Movant to: a) issue one or more

notices of default to the Debtor; b) take all actions and effectuate all remedies permitted by the

Lease or applicable law including: i) apply the security deposits to the balance due; ii) terminate

---

[6]      Exhibit 2.

[7]      The Debtor's bidding procedures motion contemplates inclusion of both leased and owned "rolling stock" in its sale process.  Movant asserts that the Debtor cannot "sell" property that it does not own pursuant to Section 363(b) of the Bankruptcy Code and reserves the right to object to the sale on such grounds.

[8]      Movant does not concede that the Lease is assumable and reserves all rights and objections relating to any request to assume the Lease.

the Lease or any of the Lease Schedules; iii) require the Debtor to assemble the Trailers for pick

up at the Debtor's sole expense; and iv) repossesses the Trailers and sell them.

**III.    ARGUMENT**

        **A.    The Debtor should be compelled to assume or reject the Lease.**

    9.    Section 365(d)(2) of the Bankruptcy Code provides the Court, on request of any

party to a lease, with the power to compel a debtor to assume or reject the lease within a specified

period of time. 11 U.S.C. §365(d)(2)("… the court, on the request of any party to such contract or

lease, may order the trustee to determine within a specified period of time whether to assume or

reject such contract").

    10.    "Congress intended this provision to 'prevent parties in contractual or lease

relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate.'"

*Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992).

    11.    Although the Bankruptcy Code provides chapter 11 debtors with a "breathing

space" within which to determine whether a particular executory contract should be assumed or

rejected, the "breathing space . . . is not without limits." *In re Enron Corp.*, 279 B.R. 695, 702

(Bankr. S.D.N.Y. 2002). The limit placed on the time for the debtor's assumption and rejection

decision is "reasonableness." *See, e.g., Dallas-Fort Worth Regional Airport Bd. v. Braniff Airways,*

*Inc.*, 26 B.R. 628, 636 (N.D. Tex. 1982).

    12.    The determination of what constitutes a reasonable time to assume or reject a

particular executory contract is within the bankruptcy court's discretion and must be decided in

light of the particular facts of each case. *See, e.g., S. St. Seaport L.P. v. Burger Boys, Inc. (In re*

*Burger Boys, Inc.*), 94 F.3d 755, 760 (2d Cir. 1996); *Theatre Holding Corp. v. Mauro (In re*

4

*Theatre Holding Corp.*), 681 F.2d 102, 105 (2d Cir. 1982); *In re Adelphia Commc'ns Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003).

13.    In deciding whether to accelerate a debtor's decision to assume or reject, a court must balance the interests of the contracting party against the interests of the debtor and its estate. *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001).

14.    The balance of the interests in this case strongly favors requiring the Debtor to promptly assume or reject the Lease.

<h3 align="center">Movant's interest</h3>

15.    The Movant has a substantial interest because the Debtor is in default of the Lease because it has not paid all pre-petition lease payments and has now missed the September Lease payment.

16.    From a post-petition perspective, Movant is entitled to be paid on a current basis during this bankruptcy case. 11 U.S.C. § 365(d)(5)("The trustee shall timely perform all of the obligations of the debtor . . .first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired leases of personal property . . .until such lease is assumed or rejected…").

17.    The Debtor has now defaulted on post-petition Lease payments and it is unlikely that the Debtor will make post-petition payments because, as explained in more detail in this motion, the Lease would appear to have little value in a sale. Among other things, the Trailers represent an immaterial portion of the Debtors' fleet, and the remaining Lease term is very short.

18.    In addition to payment defaults, given the inherently mobile nature of the Trailers, the Debtor is required to provide location reports upon request, which it has failed to do despite multiple requests.  Debtor's failure to provide such reports is an additional default, and raises

numerous concerns, including without limitation, that: (i) the Debtor does not know where the Trailers are located; and (ii) the Trailers are not being maintained or secured.

19. The Movant also has an interest in protecting the value of the Trailers which may depreciate in value from use or damage while the Debtor decides to assume or reject the Lease.

**Debtor has no material interest**

20. The Debtor has no material interest in the Lease or the Trailers. Movant's ability to protect the Trailers – which it owns – has been materially prejudiced by Debtor's ongoing breaches of its contractual obligations.

21. The Trailers represent an immaterial portion of the Debtors' fleet, and Debtors have represented to the Court that they no longer wish to operate, such that the Trailers are not necessary for reorganization.

22. Because the Debtor is in default and has not timely elected to extend the schedules or exercised its buyout rights and cannot even fulfill its contractual obligations to notify the Movant of such basic information as the current location(s) of the Trailers, it is unlikely that the Debtor will be able to monetize the schedules through a sale process consummated before the end of the terms.

23. As a result, balancing the interests favors requiring the Debtor to formally file a motion to assume or reject the Lease by the Deadline.

**B.     Relief from the automatic stay should be granted for cause.**

24. To the extent the Debtor does not formally seek to assume the Lease by the Deadline, the Movant requests relief from the automatic stay to permit it to exercise all rights and enforce all remedies available to Movant under the Lease or applicable law including the rights to terminate the Lease and repossess the Trailers.

6

25.      Under § 362(d)(1), stay relief may be granted for "cause," and although "cause" is not defined by the Bankruptcy Code, courts in this district have traditionally looked to a three-part balancing test to determine whether cause exists. *In re AP Orangevale, LLC*, Case No. 23-10687 (CTG) (Bankr. D. Del. Aug. 08, 2023).

26.      The test focuses on whether relief from stay would prejudice the estate, the balance of hardships if relief is granted, and the Movant's likelihood of success on the merits in the non-bankruptcy forum. *Id*. The test involves consideration of the totality of the circumstances and the "analysis ultimately boils down to a common-sense judgment about whether it makes good sense to have the case proceed in the court where it was pending as opposed to being heard by the bankruptcy court." *Id*.

27.      Notwithstanding this three-part test, some courts have employed a bright line rule to find cause for relief from the stay when a lease is in significant default. *In re Future Growth Enters., Inc.*, 61 B.R. 469, 472 (Bankr.E.D.Pa.1986).

28.      In addition, a debtor's inability to assume a lease constitutes "cause" for relief from the automatic stay. *In re G.S.V.C. Restaurant Corp.*, 10 Bankr. 300 (S.D.N.Y. 1980); *Newton v. Palmer (In re Newton)*, 2019 Us Dist Lexis 44684, 2019 WL 1254560, *5 (D.N.J. Mar. 19, 2019); see also, *In re W. Electronics Inc.*, 852 F.2d 79, 83-84 (3d Cir. 1988) (movant entitled to relief from the stay when a debtor is unable to assume an executory contract).

**There is no prejudice to the estate**

29.      There is no prejudice to the Debtor by granting relief to the Movant if the Lease is not subject to a motion to assume by the Deadline. The Trailers represent a small fraction[9] of the

---

[9]      246/42,000=0.59%

Debtors' 42,000 trailer fleet.[10] Debtor is no longer operational and does not plan to resume operations, and as such, do not need the Trailers to reorganize.

30.     The Lease also has little, if any, value to the Debtors' estates in a sale. Schedule 26 expires on November 1, 2023 and schedule 29 expires on December 1, 2023.[11] The Debtor has missed its deadlines to either (i) extend the schedules or (ii) exercise its buyout rights to the Trailers.[12]

31.     As a result of the expiration of schedules and lack of extension and/or buyout rights it is unlikely that an assumption and assignment of the Lease through a sale process will yield any value to the Debtor's estate. This is particularly true given the Trailers represent an immaterial portion of the Debtors' fleet.

32.     The Debtor will not be injured or prejudiced by the termination of the Lease and sale of the Trailers. Each of the Lease Schedules includes a true-up[13] which, in the absence of the Debtor's default, preserves any upside value for the Debtor upon the sale of the Trailers by the Movant.[14] If the sale proceeds exceed an agreed amount, known as the TRAC Amount[15], and if the Debtor were not in default, the Movant would be required to pay the net proceeds exceeding the TRAC Amount to the Debtor.[16] Accordingly, the repossession and sale of the Trailers by the Movant may help preserve any value above the TRAC Amount for the Debtor's bankruptcy estate.

**Balance of hardships**

---

[10]     ECF No. 14, paragraph 42
[11]     Exhibits 2 and 3
[12]     Exhibit 1, section 19(b)
[13]     Exhibits 2 and 3; section 10(d)
[14]     Exhibits 2 and 3; section 10(d)
[15]     The TRAC Amount represents 40% of the cost of the Trailers.
[16]     Exhibits 2 and 3; section 10(d)

33.     Given the absence of any prejudice to the Debtor or the estate, the balance of hardships strongly favors granting relief from the automatic stay to Movant. In sum, the Debtor is in both payment and non-payment default as discussed above, has missed its deadlines to extend the terms or exercise buyout rights, the remaining lease terms expire within a matter of a few months, and the Debtor has informed the Court that it has ceased operations, such that it does not need the Trailers to reorganize.  Accordingly, Movant is entitled to relief from stay for cause, such that it can exercise all remedies including repossession. There is no reason to deny Movant of these contractually agreed upon rights, and doing so will simply cause needless harm to Movant without any potential upside to the bankruptcy estate.

### Likelihood of success on the merits

34.     Movant has a high likelihood of success on the merits. The Lease unambiguously requires the Debtor to timely pay all sums due to Movant and provide location reports.[17] There is no legitimate dispute that the Debtor has not paid the sums which became due to the Movant prior to the Petition Date or provided location reports. Failure of the Debtor to timely fulfill these contractual obligations entitles Movant to send a notice of default.[18]

35.     The Lease also entitles Movant to exercise all remedies available to it under the Lease and applicable law which include application of the security deposit towards the amount due, termination of the Lease and repossession of the Trailers.[19]

---

[17]     Exhibit 1, section 3
[18]     Exhibit 1, section 16
[19]     Exhibit 1, section 16.  Movant is presently holding $74,708.10 on deposit which is equivalent to the last month's payment under the Lease.  It is Movant's position that it is it is entitled to exercise recoupment rights against this amount on deposit.  Without waiving any rights to assert the deposit is subject to recoupment, Movant requests that it be granted relief from the automatic stay to offset the deposit against the amounts due under the Lease.

36.     From a practical perspective the Debtor will not be able to assume and assign the Lease in a sale transaction due to the aforementioned expiring lease terms and lack of extension and/or buyout rights. *In re W. Electronics Inc.*, 852 F.2d 79, 83-84 (3d Cir. 1988) (movant entitled to relief from the stay when a debtor is unable to assume an executory contract).

37.     In short, the totality of the circumstances requires Movant be granted relief from the automatic stay, for cause, so Movant may exercise all rights and remedies available to Movant under the Lease and applicable law, including repossession of the Trailers.[20]

### Waiver of 14-day stay of enforcement

38.     Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure provides that an order granting a motion for relief from an automatic stay is stayed until the expiration of 14 days after the entry of the order unless the court orders otherwise. F.R.B.P. 4001(a)(3).

39.     Movant respectfully submits that cause exists to waive the 14-day stay of enforcement under the present facts.   Movant has not been paid on the Lease for several months. In addition, the location and condition of the Trailers is unknown.  With each passing day, Movant is exposed to additional risk of loss.  Movant requests that the order granting relief from the automatic stay become effective immediately and not be subject to any stay so that Movant may promptly seek to protect its interests in the Trailers.

WHEREFORE, Movant respectfully requests the Debtor be compelled to formally seek to assume or reject the Lease on or before the Deadline. If the Debtor does not do so, Movant

---

[20]     Even if the requested relief is granted, Movant is willing to engage in a dialogue with the Debtor concerning a possible cooperative liquidation of the Trailers as part of a bankruptcy sale.  Relief from stay should be granted nonetheless, however, for the reasons set forth in the Motion.  The absence of such relief will unfairly put the Movant "in limbo" with respect to its Trailers, which will only increase its potential for losses-losses which the estate may not be able to pay.  Given Debtor's selected bankruptcy strategy, there is no doubt that the ultimate outcome for the Trailers is a liquidation; the only real question is who will control the liquidation.  For the reasons set forth above, Movant should be entitled to determine the process by which its property is liquidated, which might include a bankruptcy sale.

respectfully requests it be granted relief from the automatic stay to permit Movant to exercise all

rights and enforce all remedies available to Movant under the Lease and applicable law including,

without limitation, to:  a) issue one or more notices of default to the Debtor; b) to take all actions

and effectuate all remedies permitted by the Lease or applicable law including: i) apply the security

deposits to the balance due; ii) terminate the Lease or any of the Lease Schedules; iii) repossesses

the Trailers and sell them.

**BUCHANAN INGERSOLL & ROONEY PC**

Date:  September 15, 2023
      Wilmington, Delaware

/s/ Kody M. Sparks
Geoffrey G. Grivner, Esq. (#4711)
Kody M. Sparks, Esq. (#6464)
500 Delaware Avenue, Suite 720
Wilmington, DE 19801
Tel: (302) 552-4200
Fax: (302) 552-4295
*geoffrey.grivner@bipc.com*
*kody.sparks@bipc.com*

**OF COUNSEL:**

Timothy P. Palmer, Esq. (*pro hac vice*)
PA Bar I.D. No. 86165
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Ste. 200
Pittsburgh, PA 15219
Tel: (412) 562-8800
*timothy.palmer@bipc.com*

*Attorneys for TSC Equipment Finance LLC*