# EXHIBIT 1



<div align="right">

MASTER LEASE AGREEMENT
AGREEMENT NO.: *137542*

</div>

This MASTER LEASE AGREEMENT ("Master Agreement") made as of March *16*, 2016, between Element Financial Corp., a Delaware corporation, having a corporate office at 655 Business Center Drive, Horsham, PA 19044 ("Lessor") and YRC Enterprise Services, Inc. a Delaware corporation, as an agent for and on behalf of the applicable Affiliates, having its chief executive offices at 10990 Roe Avenue, Overland Park, KS 66211 ("Lessee").

1.    LEASE
(a) On the terms and conditions of this Master Agreement, Lessor shall lease to Lessee, and Lessee shall hire from Lessor, the Items of personal property described in the Schedule(s) (collectively the "Equipment", and individually an "Item") which shall incorporate this Master Agreement. Subject to Section 16(a)(viii), each Schedule shall constitute a separate and independent lease and contractual obligation of Lessee. The term "Lease" shall refer to an individual Schedule that incorporates this Master Agreement. In the event of a conflict between this Master Agreement and any Schedule, the language of the Schedule shall prevail. The Lease shall be effective upon execution by Lessor at its offices.

(b) AFFILIATES. Lessee or any subsidiary corporation, or any affiliate corporation or business entity that is controlled or owned by, or is under common control or ownership with Lessee and which is identified on Exhibit A attached hereto (each a "Lessee Affiliate") is authorized to enter into Schedules as the named "Lessee" therein with Lessor. The terms and conditions stated in this Master Agreement shall apply and be incorporated by reference in any Schedule with the Lessee Affiliate, which shall be deemed to be the "Lessee" thereunder, subject to the Schedule containing additional terms and conditions as applicable. By written agreement the parties hereto can authorize additional Lessee Affiliates pursuant to further amendment to Exhibit A. Lessee agrees that Lessor shall be entitled to deal exclusively with each Lessee Affiliate in connection with each applicable Lease and Lessor shall have no obligation to obtain approvals from, or provide notices to, Lessee with respect to any Lease with a Lessee Affiliate.

Lessor understands and agrees Lessor shall enter into separate and independent leases with Lessee Affiliates and that Lessee does not guarantee the performance of Lessee Affiliates, shall not be deemed a co-obligor under any lease, and shall not be jointly or severally liable for the fulfillment of any lessee obligations or any Lessee Affiliate. YRC Enterprise Services, Inc. have no right or interest in any Lease between a Lessee Affiliate and Lessor or the Equipment leased thereunder.

(c) GUARANTY. Lessee shall unconditionally guarantee to Lessor and any applicable Assignee the full and prompt payment, observance and performance when due of all obligations of any Lessee Affiliate arising under any Schedule pursuant to a Guaranty in form and substance attached hereto as Exhibit B.

2    ACCEPTANCE OF EQUIPMENT; TERM
The Equipment is to be delivered to the location specified in the applicable Schedule. The Equipment shall be deemed to have been accepted by Lessee for all purposes under the Lease upon Lessee's execution of a Delivery and Acceptance Certificate the ("Acceptance Date"). Lessor shall not be liable or responsible for any failure or delay in the delivery of the Equipment to Lessee for whatever reason. The Base Term shall commence on the first day of the month following the Acceptance Date (the "Base Term Commencement Date"). The Base Term of the Lease shall begin on the Base Term Commencement Date, and shall, subject to Section 19(b), end on the last day of the last month of the Base Term.

3.    RENTAL
(a) The rental amount payable to Lessor by Lessee for the Equipment will be as set forth on the Schedule ("Base Monthly Rental"). As rent for Equipment, Lessee shall pay Lessor in immediately available funds and in advance on the Base Term Commencement Date (or the first business day thereafter, if the Base Term Commencement Date is not a business day) and on the first business day of each calendar month during the Base Term of the Lease the Base Monthly Rental, and upon receipt of an invoice, an amount equal to 1/30th of the Base Monthly Rental for each Item times the number of days which will elapse from the Acceptance Date to the Base Term Commencement Date of the Lease. Each remittance from Lessee to Lessor shall contain information as to the Lease for which payment is made.

(b) If any rent or other amount payable hereunder shall not be paid within five (5) days of the date when due, Lessee shall pay as an administrative and late charge an amount equal to ten percent (10%) of the amount of any such overdue payment. In addition, Lessee shall pay overdue interest on any delinquent payment or other amounts due under the

Lease (by reason of acceleration or otherwise) at the rate of 1.5% per month, from the date such payment was due until payment is received by Lessor, or if such rate shall exceed the maximum rate of interest allowed by law, then at such maximum rate.   SUBJECT TO THE PROVISIONS OF SECTION 19(b), THIS IS A NON-CANCELABLE, NON-TERMINABLE LEASE OF EQUIPMENT FOR THE ENTIRE LEASE TERM AS PROVIDED IN EACH SCHEDULE HERETO.

4.   TAXES
Lessee shall immediately reimburse Lessor for (or pay directly, but only if instructed by Lessor) all taxes, fees, and assessments that may be imposed by any taxing authority on the Equipment, on its purchase, ownership, delivery, possession, operation, rental, return to Lessor or its purchase by Lessee (collectively Taxes); provided, however, that Lessee shall not be liable for any such Taxes (whether imposed by the United States of America or by any other domestic or foreign taxing authority) imposed on or measured by Lessor's net income or tax preference items. Lessee's obligation includes, but is not limited to, the obligation to pay all license and registration fees, recycling fees, and all sales, use, personal property, recordation and other taxes and governmental charges, together with any penalties, fines and interest thereon, that may be imposed during the Term of the applicable Schedule, including a fee—not to exceed $100 for each property tax return filed each year unless otherwise agreed in any Schedule—for the set-up, revisions, reporting, filing and payment of any taxes due hereunder or in connection with the Equipment  Lessor shall report and file any and all Taxes and shall invoice Lessee for same. Lessee shall promptly reimburse Lessor for all Taxes and hold Lessor harmless with respect to any non-payment thereof  Lessee shall not be liable for any penalties or interest for the late payment of any Taxes if Lessor did not give Lessee timely notice thereof.

5.   NET LEASE
The Lease is a net lease, it being the intention of the parties that all costs, expenses and liabilities associated with the Equipment or its lease shall be borne by Lessee.  Lessee's agreement to pay all obligations under the Lease, including but not limited to Base Monthly Rental, is absolute and unconditional  and such agreement is for the benefit of Lessor and its Assignee(s)  Lessee's obligations shall not be subject to any abatement, deferment, reduction, setoff, defense, counterclaim or recoupment for any reason whatsoever.  Except as may be otherwise expressly provided in the Lease, it shall not terminate, nor shall the obligations of Lessee be affected by reason of any defect in or damage to, or any loss or destruction of, or obsolescence of, the Equipment or any Item from any cause whatsoever, or the interference with its use by any private person, corporation or governmental authority, or as a result of any war, riot, insurrection or an Act of God.  It is the express intention of Lessor and Lessee that all rent and other sums payable by Lessee under the Lease shall be, and continue to be, payable in all events throughout the term of the Lease  The Lease shall be binding upon the Lessee, its successors and permitted assigns and shall inure to the benefit of Lessor and its Assignee(s).

6.   INSTALLATION, RETURN AND USE OF EQUIPMENT
(a)  Upon delivery of the Equipment to Lessee, Lessee shall pay all transportation, installation, rigging, packing and insurance charges with respect to the Equipment.  In the case of a sale and leaseback transaction, Lessee shall, upon the request of Lessor, certify the date the Equipment was first put into use  Lessee will provide the required electric current and a suitable place of installation for the Equipment with all appropriate facilities as specified by the manufacturer.  No cards, tapes, disks, data cells or other input/output and storage media may be used by Lessee to operate any item unless it meets the specifications of the manufacturer

(b)  Provided that no Event of Default shall have occurred, Lessee shall  at all times during the term of the Lease, be entitled to unlimited use of the Equipment  Lessee will at all times keep the Equipment in its sole possession and control.  Lessee shall provide Lessor with the location of any Item of Equipment within two business days after Lessor's request therefor  Lessee will materially comply with all laws, regulations and ordinances, and all applicable requirements of the manufacturer of the Equipment that apply to the physical possession, use, operation, condition, and maintenance of the Equipment  Lessee agrees to obtain all material permits and licenses necessary for the operation of the Equipment.

(c)  Lessee shall not without the prior written consent of Lessor, affix or install any accessory, feature, equipment or device to the Equipment or make any improvement, upgrade, modification, alteration or addition to the Equipment (any such accessory, feature, equipment, device or improvement, upgrade, modification, alteration or addition affixed or installed is an "Improvement") unless permitted by the manufacturer or required by law  Title to all Improvements shall, without further act, upon the making, affixing or installation of such Improvement, vest solely in Lessor, except such Improvements as may be readily removed without causing material damage to the Equipment and without in any way affecting or impairing the originally intended function, value or use of the Equipment.  Provided the Equipment is returned to Lessor in the condition required by the Lease, title to the Improvement shall vest in the Lessee upon removal.  Any Improvement not removed from the Equipment prior to return shall at Lessor's option remain the property of Lessor.

During the term of the Lease and any renewal term, Lessee shall cause all Improvements to be maintained, at Lessee's expense, In accordance with the requirements of Section 7   Unless otherwise agreed to by Lessor, upon the expiration or earlier termination of the term of the Lease, any Improvement shall be de-installed and removed from the Equipment, at Lessee's expense.  If the Improvement is removed, the Equipment shall be restored to its unmodified condition.

In the event an Improvement is provided to Lessee by a party other than Lessor, Lessee shall cause such party to execute and deliver to Lessor such documents as shall be reasonably necessary t  p tect the Interest  of Lessor and any Assignee In the Equipment, this Master Agreement and any Schedule.

(d) Subject to Section 19(b), Lessee shall, at the termination of the Lease, at its expense, cause the Equipment to be decontaminated and remove all proprietary data from any and all memory storage devices from the Equipment, in accordance with manufacturer specifications and all applicable laws, rules and regulations, if any (and provide to Lessor documentation verifying such decontamination and proprietary data removal), de-install, pack and return the Equipment to Lessor at such location within the continental United States as shall be designated by Lessor in the same operating order, repair, condition and appearance as of the date the Equipment was Installed (or delivered to Lessee), reasonable wear and tear excepted.  Until the return of the Equipment to Lessor, Lessee shall be obligated to pay the Base Monthly Rental and all other sums due under the Lease.  Upon redelivery to Lessor, Lessee shall arrange and pay for such repairs (if any) as are necessary for the Equipment to be returned In the condition required hereunder.

## 7.   MAINTENANCE AND REPAIRS

Lessee upon request shall furnish Lessor with a copy of the maintenance records   During the term of the Lease, Lessee shall, at its expense, keep the Equipment In good working order, repair, appearance and condition and make all necessary adjustments, repairs and replacements, all of which shall become the property of Lessor.  Lessee shall not use or permit the use of the Equipment for any purpose for which, the Equipment Is not designed or intended

## 8.   OWNERSHIP, LIENS AND INSPECTIONS

(a) Lessee shall keep the Equipment free from any marking or labeling which indicate a claim of ownership by Lessee or any party other than Lessor and its Assignee(s), and shall affix and maintain tags, decals or plates furnished by Lessor on the Equipment indicating ownership and title to the Equipment in Lessor or Its Assignee(s).  Upon reasonable notice to Lessee, Lessor or Its agents shall have access to the Equipment and Lessee's books and records with respect to the Lease and the Equipment at reasonable times for the purpose of inspection and for any other purposes contemplated by the Lease, subject to the reasonable security requirements of Lessee.

(b) Lessee has no interest In the Equipment except as expressly set forth in the Lease, and that interest is a lease-hold Interest  Lessor and Lessee agree, and Lessee represents for the benefit of Lessor and its Assignee(s) that the Lease is Intended to be a "finance lease" and not a "lease Intended as security" as those terms are used in the Uniform Commercial Code ("UCC"); and that the Lease Is intended to be a "true lease" as the term Is commonly used under the Internal Revenue Code of 1986, as amended

(c)  Lessee hereby irrevocably authorizes Lessor to file and record, to fi e and record such UCC financing statement(s), amendments thereto and other l en recordation documents with respect to the Equipment subject to any Lease and/or any other collateral for Lessee's obligations under such Lease, ratifies such authorization and appointment with respect to any UCC financing statements or amendments thereto prior to the date of such Lease and to do all acts or things necessary to protect Lessor's title and nterest in such Equipment and under such Lease. Lessee hereby covenants and agrees that it shall not file any corrective or termination statement with respect to any UCC financing statements recorded by or for the benefit of Lessor with respect to any Equipment without Lessor's prior written consent  In order to secure the payment and performance in full of all of Lessee's obligations under each Lease, Lessee hereby grants to Lessor a security interest in all of the following in which Lessee may now or hereafter have rights. (i) Equipment subject to all Leases, and (ii) any and all property of Lessee now or hereafter in the possession or control of Lessor, together with all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins), and all proceeds of the foregoing, including goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (collectively, the "Collateral").

(d)  LESSEE SHALL KEEP THE LEASE, THE EQUIPMENT AND ANY IMPROVEMENTS FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES OF WHATSOEVER KIND (EXCEPT THOSE CREATED BY LESSOR) AND LESSEE SHALL NOT ASSIGN THE LEASE OR ANY OF ITS RIGHTS UNDER THE LEASE OR SUBLEASE ANY OF THE EQUIPMENT OR GRANT ANY RIGHTS TO THE EQUIPMENT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR. No permitted assignment or sublease shall relieve Lessee of any of its obligations under the Lease and Lessee agrees to pay all costs and expenses Lessor may incur in connection with such sublease or assignment.

3

9.    DISCLAIMER OF WARRANTIES

(a) LESSOR LEASES THE EQUIPMENT "AS IS," AND BEING NEITHER THE MANUFACTURER OF THE EQUIPMENT NOR THE AGENT OF EITHER THE MANUFACTURER OR SELLER, LESSOR DISCLAIMS ANY REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE CONDITION OR PERFORMANCE OF THE EQUIPMENT, ITS MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR WITH RESPECT TO PATENT INFRINGEMENTS OR THE LIKE. LESSOR SHALL HAVE NO LIABILITY TO LESSEE OR ANY OTHER PERSON FOR ANY CLAIM LOSS OR DAMAGE OF ANY KIND OR NATURE WHATSOEVER, NOR SHALL THERE BE ANY ABATEMENT OF RENTAL FOR ANY REASON INCLUDING CLAIMS ARISING OUT OF OR IN CONNECTION WITH (i) THE DEFICIENCY OR INADEQUACY OF THE EQUIPMENT FOR ANY PURPOSE, WHETHER OR NOT KNOWN OR DISCLOSED TO LESSOR, (ii) ANY DEFICIENCY OR DEFECT IN THE EQUIPMENT, (iii) THE USE OR PERFORMANCE OF THE EQUIPMENT, OR (iv) ANY LOSS OF BUSINESS OR OTHER CONSEQUENTIAL LOSS OR DAMAGE, WHETHER OR NOT RESULTING FROM ANY OF THE FOREGOING.

(b) For the term of the Lease, Lessor assigns to Lessee (to the extent possible), and Lessee may have the benefit of, any and all manufacturer's warranties, service agreements and patent indemnities, if any, with respect to the Equipment; provided, however, that Lessee's sole remedy for the breach of any such warranty, indemnification or service agreement shall be against the manufacturer of the Equipment and not against Lessor, nor shall any such breach have any effect whatsoever on the rights and obligations of Lessor or Lessee with respect to the Lease and Lessor shall reasonably cooperate with Lessee's requests so that Lessee may realize the benefits of such representations and warranties and indemnifications.

(c) NO REPRESENTATIONS OR WARRANTIES OF THE MANUFACTURER OR DISTRIBUTOR OF THE EQUIPMENT, OR ANY OTHER THIRD PARTY, CAN BIND LESSOR, AND LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR SHALL HAVE NO OBLIGATIONS WITH RESPECT TO THE EQUIPMENT EXCEPT AS SPECIFICALLY SET FORTH HEREIN OR OTHER DOCUMENT EXECUTED BY LESSOR.

10.    ASSIGNMENT

(a) Lessee acknowledges and understands that Lessor may assign to a successor, financing lender and/or purchaser (the "Assignee"), all or any part of the Lessor's right, title and interest in and to the Lease and the Equipment and Lessee hereby consents to such assignment(s)   In the event of an assignment, lessor will notify lessee of assignment as soon as reasonably practical. In the event Lessor transfers or assigns, or retransfers or reassigns, to an Assignee all or part of Lessor's interest in the Lease, the Equipment or any sums payable under the Lease (including any extension rentals, purchase sums or new schedule rentals which may become due at the end of the Base Term), whether as collateral security for loans or advances made or to be made to Lessor by such Assignee or otherwise, Lessee covenants that, upon receipt of notice of any such transfer or assignment and instructions from Lessor,

(i) Lessee shall, if so instructed, pay and perform its obligations under the Lease to the Assignee (or to any other party designated by Assignee), and shall not assign the Lease or any of its rights under the Lease or permit the Lease to be amended, modified, or terminated without the prior written consent of Assignee, and

(ii) Lessee's obligations under the Lease with respect to Assignee shall be absolute and unconditional and not be subject to any abatement, reduction, recoupment, defense, offset or counterclaim for any reason, alleged or proven, including, but not limited to, defect in the Equipment, the condition, design, operation or fitness for use of the Equipment or any loss or destruction or obsolescence of the Equipment or any part, the prohibition of or other restrictions against Lessee's use of the Equipment, the interference with such use by any person or entity, any failure by Lessor to perform any of its obligations contained in the Lease, any insolvency or bankruptcy of Lessor, or for any other cause; and

(iii) Lessee shall, upon request of Lessor, submit documents and certificates as may be reasonably required by Assignee to secure and complete such transfer or assignment, including but not limited to the documents set forth in Section 15(c) of this Master Agreement.

(iv) Lessee shall deliver to Assignee copies of any notices which are required under the Lease to be sent to Lessor; and

(v) Lessee shall, if requested, restate to Assignee the representations, warranties and covenants contained in the Lease (upon which Lessee acknowledges Assignee may rely) and shall make such other representations, warranties and covenants to Assignee as may be reasonably required to give effect to the assignment.

(b) Lessor shall not make an assignment or transfer to any Assignee who shall not agree that, so long as Lessee is not in default under the Lease, such Assignee shall take no action to interfere with Lessee's quiet enjoyment and use of the Equipment in accordance with the terms of the Lease   No such assignment or conveyance shall relieve Lessor of its

4

obligations under the Lease and Lessee agrees it shall not look to any Assignee to perform any of Lessor's obligations under the Lease. No such assignment shall increase Lessee's obligations nor decrease Lessee's rights hereunder.

## 11.   QUIET ENJOYMENT

Lessor covenants that so long as no Event of Default exists and is continuing under a Lease, Lessor shall take no action to interfere with Lessee's possession and use of the Equipment subject to and in accordance with the provisions of the
i -

## 12.   INDEMNIFICATION

Except for the sole and gross negligence or willful misconduct of Lessor or Assignee, Lessee shall and does agree to indemnify, protect, defend, save and keep harmless Lessor and its Assignee(s) from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, or expenses of any kind and nature whatsoever, including but not limited to attorneys' fees (including without limitation attorneys' fees in connection with the enforcement of this indemnification) which may be imposed upon, incurred by or asserted against Lessor or its Assignee(s) in any way relating to or arising out of the lease, possession, use, condition, operation, accident in connection with the Equipment (including, without limitation, those claims for any damages to any person or property, any costs associated with, or any fines caused by violation of any Environmental Laws to the extent caused by Lessee's acts or omissions under the Lease). Lessor's and its Assignee's rights arising from this Section shall survive the expiration or other termination of the Lease. Nothing in this Section shall limit or waive any right of Lessee or Lessor to proceed against the manufacturer of the Equipment.

## 13.   RISK OF LOSS

(a) As between Lessee and Lessor, Lessee assumes and shall bear the entire risk of loss and damage, whether or not insured against, of the Equipment from any and every cause whatsoever, and damage caused by the Equipment to the environment, any person or property, from the earlier of (i) the date such risk of loss shifts from the vendor or supplier of the Equipment, or (ii) the date the Equipment is delivered to Lessee and Lessee shall retain such risk of loss and damage until returned to Lessor or its designee in the required condition.

(b) In the event of loss or damage of any kind to any Item, Lessee shall use all reasonable efforts to place the Item in good repair, condition and working order within one hundred eighty (180) days of such loss or damage, unless such Item has been irreparably damaged, in which case Lessee shall, within sixty (60) days of the Lessee's determination of irreparable loss, make its election to either pay Lessor the Stipulated Loss Value for the irreparably damaged Item or replace the irreparably damaged Item, all as provided in this Section. The "Stipulated Loss Value" for any item of Equipment will be as provided in the applicable Schedule. To the extent that the Item is damaged but not irreparably damaged and if Lessee is entitled to obtain proceeds from such insurance for the repair of the Item, Lessee (provided no Event of Default has occurred and is continuing under the Lease) may arrange for the disbursement of such proceeds to the manufacturer or other entity approved by Lessor to perform the repairs to pay the cost of repair. However, Lessee's obligation to timely repair the damaged Item is not contingent upon receipt of such insurance proceeds.

(c) In the event that Lessee elects to pay Lessor the Stipulated Loss Value for the irreparably damaged Item, Lessee shall (i) pay such amount (computed as of the first day of the month following the determination of the irreparable damage by the Lessor) to Lessor on the first day of the month following the election by Lessee as provided in (b) above, (ii) pay all Base Monthly Rental for the Item up to and including the date that the Stipulated Loss Value is paid to Lessor. Upon Lessee's payment of the Stipulated Loss Value with respect to an Item, Lessor shall convey all of its right, title and interest in and to such Item to Lessee (or the applicable insurance company, as applicable) and Lessor shall execute and deliver to Lessee all certificates, agreements or other documents reasonably requested by Lessee to effect or give notice of such transfer.  If not all the Equipment with respect to a schedule is irreparably damaged, the Value for Calculation of Stipulated Loss Value ("Value") as set forth on the Schedule for the irreparably damaged Item shall be multiplied by the applicable Stipulated Loss Value percentage to compute the Stipulated Loss Value for such irreparably damaged Item, and the Base Monthly Rental for the undamaged Equipment with respect to a schedule remaining due (after payment of the Stipulated Loss Value for the irreparably damaged Item) shall be that amount resulting from multiplying the original Base Monthly Rental by the ratio of the Value of the undamaged Equipment divided by the Value for all the Equipment prior to the damage.

(d) If Lessee elects to replace the irreparably damaged Item, Lessee shall continue all payments under the Lease without interruption, as if no such damage, loss or destruction had occurred, and shall replace such irreparably damaged Item, paying all such costs, associated with the replacement, and Lessee shall be entitled to insurance proceeds thereof. Lessee shall effect the replacement by replacing the irreparably damaged Item with a "Replacement Item" so that Lessor has good, marketable and unencumbered title to such Replacement Item.  The Replacement Item shall have a fair market value equal to or greater than the Item replaced, and anticipated to have a fair market value at the expiration of the Base Term equal to the fair market value that the replaced Item would have had at the end of the Base Term, and be the same type and of at least equal capacity to the Item for which the replacement is being made.  Upon delivery, such

5

Replacement Item shall become subject to all of the terms and conditions of the Lease and, for the avoidance of doubt, ownership of such Replacement Item shall immediately vest in Lessor free and clear of all claims, liens and encumbrances  Lessee shall execute all instruments or documents necessary to effect the foregoing.

(e) For purposes of this Section 13, the term "fair market value" shall mean the price of the Equipment delivered and installed at Lessee's location that would be obtained in an arm's-length transaction between an informed and willing buyer lessee in an arm's-length transaction between an informed and willing seller lessor under no compulsion to sell or lease. If Lessor and Lessee are unable to agree upon fair market value, such value shall be determined, at Lessee's expense, in accordance with the foregoing definition, by three independent appraisers  one to be appointed by Lessee, one to be appointed by Lessor and the third to be appointed by the first two

## 14. INSURANCE

Lessee, at its own expense, shall procure and maintain the following insurance protecting the respective interests of Lessee and Lessor (i) all risk property insurance for damage to or destruction of the equipment, in an amount not *less* than the actual cash value of the  equipment, naming Lessor as lender loss payee, (ii) liability insurance coverage for bodily injury and property damage with a minimum limit $2,000,000 combined single limit, naming Lessor as an additional insured to the extent of Lessee's indemnity obligations herein.  Lessee shall furnish Lessor with a certificate of insurance evidencing the issuance of a policy or policies in at least the minimum amounts required  Each such policy shall be in such form and with such insurers as may reasonably be satisfactory to Lessor. Lessee may self-insure as to the all risk property insurance required under this Lease pursuant to Lessee's standard self-insurance program.  The all-risk property insurance shall provide for a lender's loss payable endorsement in favor of Lessor and any Assignee, that no cancellation or material modification of such insurance shall be effective without thirty days prior written notice to Lessor and that, in respect of the interests of Lessor and any Assignee, no such insurance policy shall be invalidated by any action or inaction on the part of Lessee  The Equipment shall at all times be insured as required under applicable State law.

## 15. REPRESENTATIONS AND WARRANTIES OF LESSEE; FINANCIAL STATEMENTS

(a) Lessee represents and warrants to Lessor and its Assignee(s) (i) that the execution, delivery and performance of this Master Agreement and the Lease was duly authorized and that upon execution of this Master Agreement and the Lease by Lessee and Lessor, this Master Agreement and the Lease will be in full force and effect and constitute a valid legal and binding obligation of Lessee, and enforceable against Lessee in accordance with their respective terms; (ii) the Equipment is accurately described in the Lease and all documents of Lessee relating to the Lease; (iii) that Lessee is in good standing in the jurisdiction of its incorporation and/or organization and if required by law, in any jurisdiction in which any of the Equipment is located, (iv) that no consent or approval of, giving of notice to, registration with, or taking of any other action in respect of, any state, federal or other government authority or agency is required with respect to the execution, delivery and performance by the Lessee of this Master Agreement or the Lease or, if any such approval, notice, registration or action is required, it has been obtained, (v) that the entering into and performance of this Master Agreement and the Lease will not violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's Articles of Incorporation, Bylaws, Articles of Organization and/or Operating Agreements or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest or other encumbrance upon any assets of Lessee or upon the Equipment pursuant to any instrument to which Lessee is a party or by which it or its property may be bound, (vi) there are no actions, suits or proceedings pending, or to the knowledge of Lessee, threatened, before any court or administrative agency, arbitrator or governmental body which will, if determined adversely to Lessee, materially adversely affect its ability to perform its obligations under the Lease or any related agreement to which it is a party; (vii) that aside from this Master Agreement and the Lease there are no additional agreements between Lessee and Lessor relating to the Equipment, and (viii) that any and all financial statements and other information with respect to Lessee supplied to Lessor at the time of execution of the Lease and any amendment, are true and complete in all material respects  The foregoing representations and warranties shall survive the execution and delivery of the Lease and any amendments hereto and shall upon the written request of Lessor, be made to Lessor's Assignee(s).

(b)  Prior to Lessor's acceptance of a Lease, and for the duration of the Term thereof, Lessee shall promptly provide Lessor comparative audited financial statements of for the most current annual period and financial statements certified by Lessee's Chief Financial Officer for the interim reporting periods. Lessee will be deemed to have complied with this covenant when the 10-K and 10-Q reports for YRC Worldwide Inc. are filed with the Securities Exchange Commission and available to the public at www.sec.gov  Lessor's obligations to perform under any Lease is subject to the condition that the financial statements furnished to Lessor by Lessee present the financial condition and results of operations of Lessee and its affiliated corporations and/or companies, if any, and any guarantor of Lessee's obligations under any Lease, as of the date of such financial statements, and that since the date of such statements there have been no material adverse changes in the assets or liabilities, the financial condition or other condition.  Lessee shall also provide Lessor with such other statements concerning the Lease and the condition of the Equipment as Lessor may from time to time request.

6

(c) Upon Lessor's request, Lessee shall, with respect to each Lease, deliver to Lessor (i) a certificate of a secretarial officer of Lessee certifying the bylaw, resolution (specific or general) or corporate action authorizing the transactions contemplated in the Lease; (ii) an incumbency certificate certifying that the person signing this Master Agreement and the Lease holds the office the person purports to hold and has authority to sign on behalf of Lessee, (iii) an agreement with Lessor's Assignee with regard to any assignment as required by Section 10; (iv) the pu[illegible] has sold or assigned its interest in the Equipment to Lessor; and (v) a Delivery and Acceptance Certificate duly executed by Lessee. Failure by Lessee to deliver any of these documents when due shall operate, at Lessor's option to delay the Base Term Commencement Date, or to increase the Base Monthly Rental to recover costs incurred by Lessor consequent to the delay or the termination of the Lease as provided in Section 16.

16. DEFAULT, REMEDIES

(a) The following shall be deemed "Events of Default" under the Lease.

(i) Lessee fails to pay any installment of rent or other charge or amount due under the Lease when the same becomes due and payable and such failure continues for five (5) days after its due date; or

(ii) Except as expressly permitted in the Lease, Lessee attempts to remove, sell, encumber, assign or sublease or fails to insure any of the Equipment, or fails to deliver any documents required of Lessee under the Lease; or

(iii) Any representation or warranty made by Lessee or Guarantor in the Lease or any document supplied in connection with the Lease or any financial statement is materially misleading or materially inaccurate; or

(iv) Lessee fails to observe or perform any of the other obligations required to be observed by Lessee under the Lease and such failure continues uncured for thirty (30) days after notice from Lessor; or

(v) Lessee or Guarantor ceases doing business as a going concern, makes an assignment for the benefit of creditors; admits in writing its inability to pay its debts as they become due; files a voluntary petition in bankruptcy; is adjudicated a bankrupt or an insolvent; files a petition seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation or files an answer admitting or fails to deny the material allegations of a petition filed against it in any such proceeding; consents to or acquiesces in the appointment of a trustee, receiver, or liquidator for it or of all or any substantial part of its assets or properties, or if it or its trustee, receiver, liquidator or shareholders shall take any action to effect its dissolution or liquidation; or

(vi) If within ninety (90) days after the commencement of any proceedings against Lessee or Guarantor seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings shall not have been dismissed, or if within ninety (90) days after the appointment (with or without Lessee's or Guarantor's consent) of any trustee, receiver or liquidator of it or all of or any substantial part of its respective assets and properties, such appointment shall not be vacated; or

(vii) there shall occur a substantial change in ownership of the outstanding stock of Lessee or any Guarantor or a substantial change in Lessee's or any Guarantor's board of directors, members or partners; or

(viii) Lessee or Lessee Affiliate shall be in default of any other Schedule executed and held at such time by Lessor or its Assignees; or

(ix) Lessee or any Lessee Affiliate ceases to be a wholly-owned subsidiary of YRC Worldwide Inc., but only to the extent it causes a Material Adverse Effect (for purposes of this sub-paragraph, a "Material Adverse Effect" means a material adverse effect, as reasonably determined by Lessor, on the ability of YRC Worldwide Inc., Lessee, and Lessee Affiliates (taken as a whole) to fully and timely perform their payment obligations under this Master Lease Agreement or any Lease); or

(x) Lessee or Lessee Affiliate shall default in any payment or other material obligation to any other lender and such lender has accelerated the debt in accordance with its terms in amount in excess of $25,000,000.00, but only to the extent such default remains uncured.

(b) Lessee shall immediately notify Lessor of the occurrence of an Event of Default. Upon the happening of any Event of Default, Lessor may declare the Lessee to be in default. Upon a declaration of default, Lessor may immediately apply the Security Deposits (as defined and set forth in Section 18) to any one or more of the obligations of Lessee to Lessor, including unpaid rent, fees, costs, charges, expenses and/or the Stipulated Loss Value or as otherwise

provided for in any Schedule to this Master Agreement   The application of the Security Deposits shall not be in lieu of, but shall be in addition to all other remedies available to Lessor under the Master Agreement and applicable law. Lessee authorizes Lessor at any time thereafter, with or without terminating the Lease, to enter any premises where the Equipment may be and take possession of the Equipment. Lessee shall, upon such declaration of default, without further demand, immediately pay Lessor an amount which is equal to (i) any unpaid amount due on or before Lessor declared the Lease to be in default, plus (ii) as liquidated damages for loss of a bargain and not as a penalty, an amount equal to the Stipulated Loss Value for the Equipment computed as of the date the last Base Monthly Rental payment was due prior to the date Lessor declared the Lease to be in default, together with interest, as provided herein, plus (iii) all attorney and court costs incurred by Lessor relating to the enforcement of its rights under the Lease. After an Event of Default, at the request of Lessor and to the extent requested by Lessor, Lessee shall immediately comply with the provisions of Section 6(d) and Lessor may sell the Equipment at private or public sale, in bulk or in parcels, with or without notice, without having the Equipment present at the place of sale; or Lessor may lease, otherwise dispose of or keep idle all or part of the Equipment, subject, however, to its obligation to mitigate damages. The proceeds of sale, lease or other disposition, if any, of the Equipment shall be applied. (1) to all Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of the Equipment including actual attorney fees; then (2) to the extent not previously paid by Lessee, to pay Lessor the Stipulated Loss Value for the Equipment and all other sums owed by Lessee under the Lease, including any unpaid rent which accrued to the date Lessor declared the Lease to be in default and indemnities then remaining unpaid under the Lease; then (3) to reimburse to Lessee Stipulated Loss Value previously paid by Lessee as liquidated damages; and (4) any surplus shall be retained by Lessor.  Lessee shall pay any deficiency in (1) and (2) immediately.  If Lessee breaches Section 19(l) of this Master Agreement with regard to Software (as hereinafter defined), Lessee shall be liable to Lessor for injunctive and other equitable relief  The exercise of any of the foregoing remedies by Lessor shall not constitute a termination of the Lease unless Lessor so notifies Lessee in writing.  Lessor may also proceed by appropriate court action, either at law or in equity to enforce performance by Lessee of the applicable covenants of the Lease or to recover damages for the breach of the Lease.

Upon the happening of an Event of Default by Lessee with regard to Software under Section 19(l) of this Lease, Lessor may elect any of the following remedies: (i) by notice to Lessee, declare any License agreement with respect to Software terminated, in which event the right and License of Lessee to use the Software shall immediately terminate and Lessee shall thereupon cease all use of the Software and return all copies thereof to Lessor or original Licensor;  (ii) have access to and disable the Software by any means deemed necessary by Lessor, for which purposes Lessee hereby expressly consents to such access and disablement, promises to take no action that would prevent or interfere with Lessor's ability to perform such access and disablement, and waives and releases any and all claims that it has or might otherwise have for any and all losses, damages, expenses, or other detriment that it might suffer as a result of such access and disablement.  Lessee agrees that the detriment that Lessor will suffer as a result of a breach by Lessee of the obligations contained in this Master Agreement cannot be adequately compensated by monetary damages, and therefore Lessor shall be entitled to injunctive and other equitable relief to enforce the provisions of this paragraph  LESSEE AGREES THAT LESSOR SHALL HAVE NO DUTY TO MITIGATE LESSOR'S DAMAGES UNDER ANY SCHEDULE BY TAKING LEGAL ACTION TO RECOVER THE SOFTWARE FROM LESSEE OR ANY THIRD PARTY, OR TO DISPOSE OF THE SOFTWARE BY SALE, RE-LEASE OR OTHERWISE.

(c) The waiver by Lessor of any breach of any obligation of Lessee shall not be deemed a waiver of any future breach of the same or any other obligation.  The subsequent acceptance of rental payments under the Lease by Lessor shall not be deemed a waiver of any such prior existing breach at the time of acceptance of such rental payments  The rights afforded Lessor under Section 16 shall be cumulative and concurrent and shall be in addition to every other right or remedy provided for the Lease or now or later existing in law (including as appropriate all the rights of a secured party or lessor under the Uniform Commercial Code) or in equity and Lessor's exercise or attempted exercise of such rights or remedies shall not preclude the simultaneous or later exercise of any or all other rights or remedies.

(d) In the event Lessee shall fail to perform any of its obligations under the Lease, then Lessor may perform the same, but shall not be obligated to do so, at the cost and expense of Lessee.  In any such event, Lessee shall promptly reimburse Lessor for any such costs and expenses incurred by Lessor.

(e) In the event Lessor believes that the Equipment under a Lease is in danger of misuse, abuse or confiscation, Lessor shall have the right, in its sole discretion, to declare the entire indebtedness under such Lease immediately due and payable.

17.    LESSOR'S TAX BENEFITS
Lessee acknowledges that Lessor shall be entitled to claim all tax benefits, credits and deductions related to the Equipment for federal income tax purposes including, without limitation: (i) deductions on Lessor's cost of the Equipment for each of its tax years during the term of the Lease under any method of depreciation or other cost recovery formula permitted by the Internal Revenue Code of 1986, as amended (hereinafter called the "Code"), and (ii) interest

deductions as permitted by the Code on the aggregate interest paid to any Assignee (hereinafter collectively "Lessor's Tax Benefits"). Lessee agrees to take no action inconsistent (including the voluntary substitution of Equipment) with the foregoing. Lessee hereby indemnifies Lessor and its Assignee(s) from and against (a) any loss, disallowance, unavailability or recapture of Lessor's Tax Benefits resulting from any Event of Default, including replacement of the Equipment, plus (b) all interest, penalties, costs, (including actual attorney fees), or additions to tax resulting from such loss, disallowance, unavailability or recapture. In addition, Lessee hereby indemnifies Lessor and its Assignee(s) from and against the loss or delay in the recovery of Lessor's Tax Benefits as a result of the Equipment being used outside the United States and shall reimburse Lessor and its Assignee(s) for any taxes including income taxes that are assessed and/or incurred in Canada as a result of the Equipment being used Canada.

## 18.    SECURITY DEPOSIT
Lessor acknowledges receipt of the security deposit(s) identified on each of the Schedules to this Master Agreement or otherwise provided to Lessor (the "Security Deposits"). Lessee hereby grants to Lessor a security interest in each of the Security Deposits, to secure all obligations of Lessee under this Master Agreement and all Schedules hereto, including but not limited to, all payment obligations and all other obligations of Lessee to Lessor for which Lessee is now or may in the future become liable. Lessee authorizes Lessor to file all financing statements, amendments to financing statements and other documents as may be required, if any, with any public filing agency in any jurisdiction, to advise of Lessor's interest in the Security Deposits. Lessee agrees to execute such additional documents or instruments as may be deemed advisable or necessary by Lessor in order to maintain and continue such security interest. Upon the execution of the Base Term with respect to a Lease and the return of the Equipment relating thereto, the Security Deposit with respect to such Lease shall be released and returned to Lessee

## 19.    GENERAL
(a) The Lease shall be deemed to have been made and delivered in the State of New York and shall be governed in all respects by the laws of such State  LESSEE AGREES TO SUBMIT TO THE JURISDICTION OF THE STATE AND/OR FEDERAL COURTS IN THE STATE OF NEW YORK IN ALL MATTERS RELATING TO THE LEASE, THE EQUIPMENT, AND THE CONDUCT OF THE RELATIONSHIP BETWEEN LESSOR AND LESSEE  THE PARTIES HERETO AGREE THAT IN THE EVENT OF AN ALLEGED BREACH OF THIS MASTER AGREEMENT OR ANY DOCUMENTS RELATING THERETO BY EITHER PARTY, OR ANY CONTROVERSIES ARISE BETWEEN THE PARTIES RELATING TO THIS MASTER AGREEMENT OR ANY DOCUMENTS RELATING THERETO, SUCH CONTROVERSIES SHALL BE TRIED BY A JUDGE ALONE BEFORE THE FEDERAL OR STATE COURTS IN NEW YORK  THE PARTIES, HAVING HAD THE OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL OF THEIR OWN CHOOSING, HEREBY KNOWINGLY AND VOLUNTARILY CONSENT TO NEW YORK JURISDICTION AS SET FORTH HEREIN AND WAIVE THEIR RIGHTS TO A TRIAL BY JURY IN ANY MATTER RELATING TO THIS MASTER AGREEMENT OR ANY DOCUMENTS RELATED THERETO

(b) Provided no Event of Default has occurred and is continuing, and provided no Event of Default or event which with the giving of notice or lapse of time, or both, would constitute an Event of Default has occurred and is continuing, upon the completion of the Base Term of any Schedule and provided no Schedule provides otherwise, Lessee shall, upon giving ninety (90) days prior written notice to Lessor by certified mail, elect one of the following options. (i) purchase all, but not less than all, of the items of Equipment on the applicable Schedule for a price to be agreed upon by both Lessor or any applicable Assignee and Lessee, (ii) extend the Schedule for all, but not less than all, of the items of Equipment on the applicable Schedule for an additional twelve (12) months at the Base Monthly Rental then in effect or (iii) return all, but not less than all of the items of Equipment on the applicable Schedule to Lessor at Lessee's expense to a destination within the Continental United States as directed by Lessor, provided that for option (iii) to apply, Lessee shall have paid all late charges, interest, taxes, penalties due under the Lease.  With respect to option (i) both Lessor and Lessee shall have absolute and sole discretion regarding the terms and conditions of the agreement to the purchase price of the Equipment.  At the conclusion of option (ii) above or if Lessee fails to provide Lessor with notice of its election to return all items of Equipment via certified mail at least 90 days prior to the expiration of the Base Term, the Lease shall continue for successive one (1) month renewals at the payment specified on the respective Schedule until either Lessee or Lessor provides the other party with at least ninety (90) days written notice of their desire to terminate the Lease.

(c) This Master Agreement and the Lease constitute the entire and only agreement between Lessee and Lessor with respect to the lease of the Equipment, and the parties have only those rights and have incurred only those obligations as specifically set forth herein.  The covenants, conditions, terms and provisions may not be waived or modified orally and shall supersede all previous proposals, both oral and written, negotiations, representations, commitments or agreements between the parties.  The Lease may not be amended or discharged except by a subsequent written agreement entered into by duly authorized representatives of Lessor and Lessee  A photocopy or facsimile or scanned reproduction of an original signature of a party to this Agreement shall bind that party to the terms, conditions and covenants of the Agreement as if it were the original.

9

(d) All notices, consents or requests desired or required to be given under the Lease shall be in writing and shall be delivered in person or sent by certified mail, return, receipt requested, or by courier service to the address of the other party set forth in the Introduction of this Master Agreement or to such other address as such party shall have designated by proper notice.

(e) Each Schedule shall be executed with one original. To the extent, if any, that a Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code) a security interest in the Schedule may only be perfected through the transfer or possession of the Schedule marked "Original". This Master Agreement, in the form of a photocopy, is Exhibit A to the Schedule and is not chattel paper by itself

(f) Section headings are for convenience only and shall not be construed as part of the Lease

(g) It is expressly understood that all of the Equipment shall be and remain personal property, notwithstanding the manner in which the same may be attached or affixed to realty, and, upon Lessor's request, Lessee shall secure from its mortgagee, landlord or owner of the premises a waiver in form and substance reasonably satisfactory to Lessor.

(h) Prior to the delivery of any Item, the obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of: labor disturbances, including strikes and lockouts; acts of God, fires; storms; accidents; failure to deliver any Item; governmental regulations or interferences or any cause whatsoever not within the sole control of Lessor.

(i) Lessee hereby acknowledges and agrees that it has had a full and fair opportunity to read each of the terms and conditions of this Master Agreement, specifically Sections 2, 16 and 19, and that Lessee fully understands the terms and conditions herein, having had the opportunity to consult with an attorney of its own choosing prior to executing this Master Agreement and any related documents.

(j) Any provision of this Master Agreement or any Schedule prohibited by or unlawful or unenforceable under any applicable law of any jurisdiction shall be ineffective as to such jurisdiction without invalidating the remaining provisions of this Master Agreement and such Schedule

(k) In the event the Equipment includes software (which Lessee agrees shall include all documentation, later versions, updates, upgrades, and modifications) (herein "Software"), the following shall apply: (i) Lessee shall possess and use the Software in accordance with the terms and conditions of any license agreement ("License") entered into with the owner/vendor of such Software and shall not breach the License (at Lessor's request, Lessee shall provide a complete copy of the License to Lessor); (ii) Lessee agrees that Lessor shall have an interest in the License and Software arising out of its payment of the price thereof and is an assignee or third party beneficiary of the License; (iii) as due consideration of Lessor's payment of the License and Software and for providing the Software to Lessee at a lease rate (as opposed to a debt rate), Lessee agrees that Lessor is leasing (and not financing) the Software to Lessee; (iv) except for the original price paid by Lessor, Lessee shall, at its own expense, pay promptly when due all servicing fees, maintenance fees update and upgrade costs, modification cost, and all other costs and expenses relating to the Software and maintain the License in effect during the term of the Lease; and (v) the Software shall be deemed Equipment for all purposes under the Lease.

(l) The parties agree that this is a "Finance Lease" as defined by section 2A-103(g) of the Uniform Commercial Code ("UCC") Lessee acknowledges either (a) that Lessee has reviewed and approved any written Supply Contract (as defined by UCC 2-A-103(y)) covering the Equipment purchased from the Supplier (as defined by UCC 2A-103(x)) thereof for lease to Lessee or (b) that Lessor has informed or advised Lessee, in writing, either previously or by this Lease of the following. (i) the identity of the Supplier, (ii) that the Lessee may have rights under the Supply Contract; and (iii) that the Lessee may contact the Supplier for a description of any such rights Lessee may have under the Supply Contract.

Lessee hereby waives any and all rights and remedies granted to Lessee by Sections 303 and 508 through 522 of Articles 2A of the Uniform Commercial Code (although no such waiver shall constitute a waiver of any of Lessee's rights or remedies against the manufacturer of the Equipment).

(m) The parties acknowledge that serial numbers and/or other identifiable information for one or more Items may be unavailable prior to execution of the applicable Schedule. In the event a Schedule fails to indicate serial numbers or other identifiable information or incorrectly identifies serial numbers or other identifiable information, for one or more Items after execution of the applicable Schedule, Lessee and Lessor shall amend the applicable Schedule to insert or correct serial numbers or other identifiable information therein.

(n) Lessee hereby authorizes and appoints Lessor and Lessor's agents and assigns as Lessee's attorney-in-fact to execute acknowledgement letters and other documents required to be executed by Lessee to effect any underwriting or perfect any security interest with regard to a Schedule after the occurrence and during the continuation of an Event of Default.

ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ ͺ

LESSOR:

Element Financial Corp.

By: _____

Name: Edvard Arnow

Title: VP, Credit

LESSEE

YRC Enterprise Services, Inc.

By: _____

Name. Mark D Bochmo

Title: Vice President

11

FORM OF SCHEDULE

SCHEDULE NO. _    _

SCHEDULE NO. ____ dated ____ ____, 201_ (the "Schedule") between Element Financial Corp (the "Lessor") and YRC Inc., d/b/a YRC Freight (the "Lessee") incorporates by reference the terms and conditions of Master Lease Agreement dated March 16, 2015 between Lessor and YRC Enterprise Services, Inc (the "Master Agreement") and constitutes a separate lease between Lessor and Lessee  The Schedule and Master Agreement as incorporated therein are hereinafter referred to collectively, as the "Lease". All capitalized terms used herein but not defined herein shall have the same meanings ascribed to them in the Master Agreement.

1.  Equipment: _____

The Equipment shall be more fully and completely described in a Delivery and Acceptance Certificate, which shall later be executed by Lessee in connection with the Schedule. Upon Lessee's execution thereof, this section shall be automatically amended to include all equipment and property described in the Delivery and Acceptance Certificate.

2.  Equipment Location: _____

Upon Lessee's execution of a Delivery and Acceptance Certificate in connection with this Schedule, this section shall be automatically amended to include any additional locations specified in the Delivery and Acceptance Certificate.

3.  Total Equipment Cost  $_____

4  Base Term:          ____ Months

5  Base Monthly Rental:  $_____ (plus applicable sales/use tax)

6.  Deposit:          $_____ applied to the last Base Monthly Rental (plus applicable sales/use tax) Lessee shall pay the *last* Base Monthly Rental in advance upon the execution of this Schedule  Lessee acknowledges and agrees that, notwithstanding anything to the contrary herein, this payment is non-refundable to Lessee under any circumstances, including, without limitation, any termination of this Lease for any reason prior to the end of its scheduled term. This payment shall be deemed earned by Lessor, and upon receipt by Lessor, shall immediately be applied to satisfy Lessee's obligation to make the last Base Monthly Rental.

7  Base Lease Rate Factor:          _____

8.  Stipulated Loss Value:          _____

9.  Special Terms:

a.  Authorization for Electronic Payments:  Lessee hereby agrees to originate base monthly lease payments to Lessor or its assigns via Automated Clearinghouse (ACH) from Lessee's account maintained with its financial institution.  Lessor may charge a fee of $50 00 for any payment returned due to non-sufficient funds, or if less, the maximum amount permitted by law.

b  Guaranty:  Notwithstanding anything to the contrary herein, the parties acknowledge and agree that this Lease is guaranteed by YRC Worldwide, Inc

c.  Titled Equipment.  The Equipment contains one or more titled vehicles or trailers ("Titled Equipment"). The Titled Equipment shall be used in Lessee's business in accordance with all applicable governmental and insurer titling requirements and limitations. Title to the Titled Equipment  shall at all times remain in Lessor, or Lessor's assigns. In the event Lessor elects to title the Titled Equipment, Lessee hereby grants to Lessor a power of attorney in Lessee's name, to apply for a certificate of title for any Equipment that is required to be titled under the laws of any jurisdiction where the Equipment is or may be used and/or to transfer title thereto upon the exercise by Lessor of its remedies upon an Event of Default by Lessee under the Lease  Lessee hereby agrees to provide a Power of Attorney, in a form satisfactory to Lessor, upon Lessor's request. If Lessee fails to perform or comply with any of its agreements with respect to titling of Equipment, Lessor may perform or comply with such agreements in its own name or in Lessee's name as attorney-in-fact and the amount of any payments and expenses of Lessor incurred in connection with such performance or compliance, together with interest thereon at

the rate of 1 5% per month from the date Lessor made such payments or payments or incurred such expenses until payment is received by Lessor, or if such rate shall exceed the maximum rate of interest allowed by law, then at such maximum rate, shall be deemed rent payable by Lessee upon demand.

Notwithstanding the above provisions and anything contrary contained in the Master Agreement, the following provisions shall apply to the Equipment:

1) Lessee shall, at Lessee's own expense, register, title and license the Equipment in the manner prescribed by Lessor as required by the applicable government or regulatory agency(ies). Lessee will do whatever may be necessary to have a statement of the interest of any assignee of Lessor in the Titled Equipment noted on any certificate of title relating to the Titled Equipment and will deliver said certificate to Lessor. In event Lessor registers, titles and/or licenses the Titled Equipment, Lessee shall immediately reimburse Lessor for all expenses relating thereto.

   Lessee shall pay or provide for payment of all operating expenses of all Equipment, including without limitation, gasoline, oil, anti-freeze, servicing, repairs, storage, towing and fine.

2) Lessee shall require any operator of the Equipment to be properly licensed, trained and able to perform the functions necessary for safe operation. Lessee hereby covenants that it shall not permit its employees, representatives or agents to use any Equipment for illegal purposes, including, without limitation, the transportation of illegal drugs, firearms or explosives.

3) Lessee shall be responsible for all fees, traffic summonses, penalties and fines that may be imposed due to the use of the Equipment.

4) Lessee shall provide to Lessor any documentation pertaining to any Equipment as Lessor may, from time to time, reasonably request. Including but not limited to the location, mileage and condition of any or all Equipment.

d.  End of Base Term Options·  The following provisions shall be added to Section 19(b)·
    As soon as practicable following Lessor's receipt of the written notice of Lessee's exercise of its purchase option or renewal option, Lessor and Lessee shall consult for the purpose of determining the fair market sales value or the fair market rental value, as the case may be, of the Equipment as of the end of the Base Term hereof (or, if applicable the Renewal Term), and any values agreed upon in writing shall constitute such fair market sales value or fair market rental value of the Equipment for purposes hereof If Lessor and Lessee fail to agree upon such value prior to sixty (60) days before the expiration of the Base Term hereof (or, if applicable, the Renewal Term), either party may request that such values be determined by the Appraisal Procedure as set forth herein. Lessee agrees to pay all costs and expenses of all appraisers required in connection with the Appraisal Procedure. For all purposes hereof, fair market sales value and fair market rental value shall be determined on the basis of, and shall equal in value, the amount which would be obtained in an arm's length transaction between an informed and willing buyer or lessee (other than a scrap dealer) and an informed and willing seller or lessor under no compulsion to sell or lease, and in such determination, costs of removal of the Equipment from its then location shall not be a deduction from such fair market sales value, and it shall be assumed (whether or not the same be true) that the Equipment has been maintained in accordance with the provisions of the Lease and would have been returned to Lessor in compliance with the requirements of the Lease The procedure for determining the fair market sales value or the fair market rental value of the Equipment (the "Appraisal Procedure") In the event that Lessor and Lessee request the Appraisal Procedure shall be as follows· The parties shall consult for the purpose of appointing by mutual agreement a recognized certified independent appraiser of favorable reputation and having substantial experience in appraising equipment similar to the Equipment (the "Appraiser") If no such Appraiser is so appointed within ten (10) business days after such notice is given, each party shall appoint an Appraiser within fifteen (15) business days after such notice is given, and the two Appraisers so appointed shall within twenty (20) business days after such notice is given appoint a third Appraiser Each Appraiser appointed pursuant to the foregoing procedure shall be instructed to determine, within forty-five (45) days after appointment, the fair market sales value or the fair market rental value, as the case may be, of the Equipment If the parties shall have appointed a single Appraiser, the determination of value by each Appraiser shall be final. If three Appraisers shall be appointed, the values determined by the three Appraisers shall be averaged, and, unless such average shall equal the value determined by the middle appraisal (in which event such average shall be controlling), the appraisal that differs the most shall be excluded, the remaining two determinations shall be averaged and such average shall be final.

e   Mobile Equipment   Notwithstanding anything to the contrary in the Master Agreement, Lessor acknowledges that the Equipment is mobile and may be moved to additional locations in the continental United States so long as Lessee keeps the Equipment in its sole possession and control and, upon Lessor's request, shall promptly provide Lessor the then current location of the Equipment   Lessee's failure to promptly provide such location to Lessor shall also constitute an Event of Default under the Lease, for which Lessor shall be permitted to exercise any of its remedies therein   Notwithstanding the foregoing provisions, Lessee is permitted to use the Equipment on an intermittent basis in Canada.  Use of the Equipment on an intermittent basis means that (a) the Equipment will not be domiciled or garaged in Canada, but will only be used in Canada for the purposes of making deliveries or pick ups, and (b) the predominant use of each unit of Equipment will be in the United States (meaning that each unit of Equipment will be used greater than 75% of the time in any calendar year in the United States)   At Lessor's request, Lessee shall provide Lessor with documentation reasonably satisfactory to Lessor evidencing Lessee's compliance with the foregoing provisions.

10.  Without limiting the obligations of Lessee under the Lease, Lessee shall, at its expense, do the following.

a.   Lessee shall ensure that all Vehicles and their operations conform to all applicable local, state, and federal laws, health and safety guidelines.  No Equipment shall be used to transport hazardous waste except in appropriate containers and in full compliance with applicable laws and regulations.   Upon return, the Equipment will be complete and operational with all components as originally supplied and will have passed U S Department of Transportation or appropriate regulatory agency requirements for operation If applicable, an inspection sticker or certificate will be furnished to Lessor verifying compliance with any regulatory requirements.  Lessee shall satisfy all legal and regulatory conditions necessary for Lessor to sell or lease the Equipment to a third party   Lessee will keep all licenses and operating certificates required for operation of the Equipment current during the Lease Term

b   Upon return, the Equipment and its components shall meet all of their applicable manufacturer's specifications for performance under full rated loads.  In addition, the Equipment must be maintained throughout the Lease Term and returned upon the expiration or termination thereof in accordance with all of the following conditions:

   i   Tires   All tires shall be matched on each item of the Equipment by the same type and tread design, original size, and manufacturer, and have a minimum of 12/32 inch of remaining tread depth. All front tires shall be original casings, rear tires may be either casings or recapped casings   All tires shall be free of flat or bald spots, cupping, dry rot, cuts and exposed cords.

   ii.   General Condition   The Equipment must be able to pass Federal Highway Administration Inspection. The Equipment shall be structurally sound with no material structural or mechanical damage, in good overall appearance, clean with no missing or damaged parts, ordinary wear and tear excepted   The Equipment shall be free of any material rust and corrosion   No glass shall be broken or cracked, no upholstery shall have any cuts or burns and there shall be no physical damage to exterior or interior materials, other than from normal use, that exceeds $250 in the aggregate to repair and no physical damage from accidents   Upon return, windows shall be wind and water tight and doors shall operate properly without excessive force.  Upon return, the Equipment shall be completely de-identified, including but not limited to all commercial logos, advertising, graffiti, Lessee insignia and lettering   The de-identified surfaces shall be repaired and refinished in such a way that the area blends in with the remainder of the item's overall appearance   Manufacturer's identity plates and markings shall not be removed or obscured

   iii.   Documents and Records   Written records of scheduled and other maintenance and repair work done shall be kept, dated, and signed by the appropriate authority.  A service history or log will be maintained during the Lease Term, in English, and a copy provided to Lessor upon request during the Lease Term, or at the expiration or other termination (by acceleration or otherwise) of the Lease  All maintenance records, maintenance record jackets, repair jackets, repair orders, license plates, registration certificates and all other similar documents, in their entirety, must be returned to Lessor

iv    Brakes   Brake drums and linings shall not be cracked and shall not exceed manufacturer's recommended wear limits.  Brake linings shall have a minimum of 3/8 inch of remaining wear on each lining

v.    Maintenance   Lessee shall follow the manufacturer's recommended maintenance and service schedule, to the extent required to validate any warranty  at Lessee's sole cost and expense. Any maintenance or repair work shall comply with the guidelines and procedures as specified by the manufacturers of the Equipment or each component of the Equipment.  Lessee will use only original manufacturer's approved replacement parts and components in the performance of any maintenance and repair of the Equipment.  Lessee will at all times maintain the Equipment in good operational condition and appearance, and shall not discriminate in such maintenance between owned or leased Equipment.

vi    During the Lease term and until the Equipment has been returned to, and accepted by, Lessor in the condition required by the Lease, Lessee shall procure and maintain insurance in such amounts and with such coverage's, and upon such terms and with such companies as Lessor may approve, at Lessee's expense. Notwithstanding the foregoing, Lessee may self-insure as to any all risk property insurance required under this Lease (including the Master Agreement) pursuant to Lessee's standard self-insurance program.  The Equipment shall at all times be insured as required under the applicable State law.

All other terms and conditions of the Master Agreement shall remain in full force and effect without change

The undersigned Lessee acknowledges that this Schedule authorizes the Lessor or its agents or assignee(s) to sign, execute and file on its behalf any and all necessary documents, including UCC financing statements and other filings and recordings, to make public this lease transaction   The parties intend this transaction to be a true lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this Schedule is not a true lease but is in the nature of a sale, consignment, or other transaction, the parties intend and the Lessee hereby grants a continuing security interest in the Equipment from the date of this Schedule to secure the payment of all Lessee's indebtedness to Lessor.

IN THE EVENT OF ANY CONFLICT BETWEEN THE PROVISIONS OF THE DELIVERY AND ACCEPTANCE CERTIFICATE AND THIS SCHEDULE, THE DELIVERY AND ACCEPTANCE CERTIFICATE SHALL PREVAIL.

THIS SCHEDULE TOGETHER WITH THE MASTER AGREEMENT, THE DELIVERY AND ACCEPTANCE CERTIFICATE, ANY ADDITIONAL PROVISION(S) REFERRED TO IN ITEMS 8 & 9, AND ANY ADDENDA OR RIDERS EXECUTED BY LESSOR AND LESSEE WHICH REFERENCES THIS SCHEDULE CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT

LESSOR.

Element Financial Corp.

By:

Name'

Title.


LESSEE:

YRC Enterprise Services, Inc.

By

Name:

Title:

AMENDMENT #02

Financier (Lender/ Lessor):    Wabash National Financial Services  fka ECN Financial LLC fka Element
                               Financial Corp. (the "Lessor")
Obligor (Borrower/ Lessee):    YRC Inc., d/b/a YRC Freight (the "Lessee")
Agreement #.                   137542 and all schedules


      This Amendment ("Amendment") is made a part of and amends the Agreement # described above ("Agreements") by and between the above described Financier ("Financier") and the above described Obligor ("Obligor")  Unless otherwise defined, capitalized terms shall have the definition set forth in the Agreement

      NOW, THEREFORE, for good and valuable consideration, intending to be legally bound and pursuant to the terms and conditions of the Agreements, it is hereby agreed as follows.

      Exhibit A to Master Lease Agreement LIST OF LESSEE AFFILIATES: shall be changed from "USF Holland Inc." to USF Holland LLC", and "New Penn Motor Express, Inc." to "New Penn Motor Express LLC"


      It is expressly agreed by the parties that this Amendment is supplemental to the Agreements which is by reference made a part hereof and all the terms and conditions and provisions thereof unless specifically modified herein, are to apply to this Amendment and are made a part of this Amendment as though they were expressly rewritten  To the extent of any inconsistency between the terms of this Amendment and the terms of the Agreement, the terms of this Amendment shall control

      IN WITNESS WHEROF, the parties have caused this Amendment to be executed on the dates set forth below

      A photocopy, facsimile, scanned copy or other electronic copy of this document shall be accepted as a legal binding agreement


Financier  Wabash National Financial Services          Obligor. YRC Inc , d/b/a YRC Freight
fka ECN Financial LLC fka Element Financial Corp.

By _____                         By. _____
(Signature)                                            (Signature)
                                                       Mark Boehmer
(Name)                                                 (Name)
                                                       Vice President & Treasurer
(Title)                                                (Title)
                                                       2/28/18
(Date)                                                 (Date)

EXHIBIT A
TO
MASTER LEASE AGREEMENT

LIST OF LESSEE AFFILIATES

1. YRC Inc , d/b/a YRC Freight
2. USF Holland Inc
3. USF Reddaway Inc
4. New Penn Motor Express, Inc

TITLED EQUIPMENT ADDENDUM

Lessor                    Wabash National Financial Services
Lessee:                   YRC Inc., d/b/a YRC Freight
Agreement #·              137542 and all Schedules

WHEREAS, Lessor and the above described Lessee have determined that it is to their mutual benefit to make certain changes to the above described Agreement # with Lessor ("Lease Agreement") All terms and conditions of the Lease Agreement not inconsistent with this Addendum shall be and remain in full force and effect

1      NOW, THEREFORE, for good and valuable consideration, intending to be legally bound and pursuant to the Terms and Conditions of the Lease Agreement, it is hereby agreed as follows· Lessee agrees to title the Vehicle as follows

| Owner on Title | Wabash National Financial Services<br>655 Business Center Drive<br>Horsham, PA 19044 |
|---|---|
| Secured Party/ 1ˢᵗ Lienholder on Title | n/a |
| Registration to | Lessee |

2      Lessee agrees that its Dealer will title and register the vehicle at the Lessee's expense  In the event that the Dealer cannot title and register the vehicle, the titling and registration will be performed by the Lessor or its assigns and the Lessee shall pay Lessor a titling fee as established by Lessor as well as all tax, titling and registration fees  Lessee agrees that it or its Dealer will provide to Lessor any original title documentation to the vehicle  Lessee or its Dealer shall provide such title documentation to the Lessor within 15 days of Lessee's or its Dealer's receipt of such title documentation from the appropriate titling authority  Lessee's or its Dealer's failure to provide Lessor with title documentation to the vehicle in a timely fashion shall be deemed an Event of Default  In the Event of Default, Lessor may exercise any and all remedies as set forth in the Terms and Conditions of the Lease Agreement ("Remedies")

3      Lessee shall be responsible for maintaining records showing the location of each piece of Equipment listed under the Lease Agreement  Upon written request, Lessee shall provide Lessor with written proof of vehicle location  Failure to do so shall constitute an Event of Default of the Lease Agreement and Lessor may exercise the Remedies

4      Lessee shall pay all fines due to overload, overlength, overweight, lack of plate  or permits, speeding and any other charges which may be imposed or assessed in respect to the vehicles and/or Lessee's use thereof  These provisions shall survive the expiration or other termination of this Lease

In the event of any conflict, inconsistency or incongruity between the provision  of this Addendum and any of the provisions of the Lease Agreement, the provisions of this Addendum shall in all respects govern and control

IN WITNESS WHEREOF  the parties have caused this Addendum to be executed on the dates set forth below  A photocopy, facsimile, scanned or other electronic copy of this document shall be accepted as a legal binding agreement

Lessor: Wabash National Financial Services
fka ECN Financial LLC fka Element Financial Corp

By _____
(Signature)

Ed Re, ~i~
(Name)

Director of Truck
(Title)

7/29/17
(Date)

Lessee· YRC Inc., d/b/a YRC Freight

By _____
(Signature)

MARK D. BOEHMER
(Name)

VICE PRESIDENT & TREASURER
(Title)

9/29/17
(Date)

6014-3LS V20170112