## Exhibit 1

**Stipulation**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| YELLOW CORPORATION, *et al.*[1] | ) | Case No. 23-11069 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**JOINT STIPULATION**
**BY AND AMONG THE DEBTORS AND**
**PACCAR FINANCIAL CORP. (I) GRANTING RELIEF FROM**
**THE AUTOMATIC STAY AND (II) REJECTING CERTAIN LEASE AGREEMENTS**

This joint stipulation ("Stipulation") is made and entered into by and among (a) YRC Enterprise Services Inc. and the other debtors in possession in the above-captioned chapter 11 cases (the "Debtors")[2], and (b) PACCAR Financial Corp. ("PACCAR" and together with the Debtors, the "Parties").  The Parties hereby stipulate and agree as follows:

**RECITALS**

WHEREAS, on August 6, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").  The Debtors' chapter 11 cases are being jointly administered for procedural purposes.  The Debtors are managing

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration").

their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, Debtor YRC Enterprise Services, Inc. as lessee and PACCAR as lessor entered into a master lease agreement, dated June 29, 2018 (the "Master Lease"), and thereafter in connection therewith, PACCAR and Debtors USF Holland LLC, New Penn Motor Express LLC, and USF Reddaway Inc. entered into 49 schedules, collectively, with various commencement dates (collectively, the "Lease Schedules", and, together with the Master Lease, the "Lease Agreement") for lease of 322 vehicles from PACCAR (the "Equipment").  A copy of the Master Lease, as well as a listing of the Equipment, is attached hereto as **Schedule A**.

WHEREAS, certain of the aforementioned Lease Schedules have already matured and certain other Lease Schedules will be maturing in the coming weeks and months;

WHEREAS, the Debtors have notified PACCAR that the Debtors do not intend to assume or assign the Lease Agreement in connection with the Debtors' chapter 11 cases;

WHEREAS, PACCAR has indicated to the Debtors its desire to retrieve and take possession of and dispose of the Equipment;

WHEREAS, the Debtors have determined that it is in the best interests of their estates and creditors to permit PACCAR to retrieve and take possession of the Equipment, effective as of the date of entry of an Order of this Court approving this Stipulation;

WHEREAS, the Debtors have determined that it is in the best interests of their estates and creditors to reject the Master Lease and Lease Schedules, effective as of the date of entry of an Order of this Court approving this Stipulation, to the extent necessary;

WHEREAS, PACCAR has agreed to such rejections, to the extent necessary; and

WHEREAS, the Debtors consent to lift the automatic stay imposed by section 362 of the Bankruptcy Code on the terms and conditions set forth in this Stipulation for the exclusive

purposes of allowing PACCAR to retrieve and take possession of the Equipment, to dispose of the Equipment, and, to the extent required by the Lease Agreement or applicable law, to apply the proceeds of said disposition to Debtors' indebtedness under the Lease Agreement, all without further notice or order of the Court.

THEREFORE, IT IS HEREBY STIPULATED AND AGREED, AND UPON APPROVAL BY THE BANKRUPTCY COURT OF THIS STIPULATION, IT IS SO ORDERED as follows:

1.      The above recitals are incorporated by reference into this Stipulation with the same force and effect as if fully set forth hereinafter.

2.      The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified solely for the purpose of permitting PACCAR, its agents or assigns to retrieve and take possession of the Equipment from the Debtors' owned premises, any other location leased by the Debtors, or any other location where the Equipment may be located, to dispose of the Equipment, and, to the extent required by the Lease Agreement or applicable law, to apply the proceeds of said disposition to Debtors' indebtedness under the Lease Agreement, all without further notice or order of the Court.  Nothing herein shall be construed to require PACCAR to take possession of any Equipment which, in its discretion, PACCAR deems to be damaged, destroyed or otherwise inoperable.  If PACCAR exercises its discretion not to take possession of any such Equipment it deems to be damaged, destroyed or otherwise inoperable, PACCAR will release the title certificate(s) to said Equipment to the Debtors.

3.      Each of the Parties shall use commercially reasonable efforts to cooperate and coordinate with respect to the logistics of PACCAR's retrieval and repossession of the Equipment.

4.      To the extent necessary, the Master Lease and Lease Schedules are hereby deemed to be rejected as of the date of entry of an Order of the Court approving this Stipulation, and PACCAR consents to such rejection.  Any PACCAR claim for rejection damages shall constitute

a prepetition general unsecured claim in the Debtors' chapter 11 cases and PACCAR shall be required to file a proof of claim by the date set forth in an applicable order of the Court setting a bar date for the filing of proofs of claim or as otherwise set forth in a confirmed chapter 11 plan.

5.      Each of the Parties to this Stipulation represents and warrants it is duly authorized to enter into and be bound by this Stipulation.

6.      PACCAR may incur costs, fees (including attorneys' fees), expenses, or charges associated with taking possession of the Equipment or otherwise entering into and performing under this Stipulation, including but not limited to towing, storage, repairs, or disposal costs, and PACCAR agrees it shall not seek to recover any such fees and/or costs from the Debtors or their estates as an administrative claim.  Nothing herein shall be construed as a waiver or limitation of (a) PACCAR's rights to seek recovery or reimbursement of any such fees and costs, including without limitation as a component of any general unsecured rejection damages proof(s) of claim, or (b) any party in interest's right to object to any rejection damages claim asserted by PACCAR.

7.      Neither this Stipulation, nor any terms contained herein shall be offered in evidence in any legal proceeding or administrative proceeding among or between the Parties, other than as may be necessary: (a) to obtain approval of and/or to enforce this Stipulation, (b) to seek damages or injunctive relief in connection therewith, or (c) to prove that the automatic stay has been modified in accordance with the terms of this Stipulation.

8.      This Stipulation is subject to the approval of the Court and shall be effective upon entry of a Court order approving this Stipulation (the "Order").  The Parties hereby consent to the entry of the Order and waive any right to notice or hearing on the approval of the Stipulation.

9.      The Court retains exclusive jurisdiction with respect to any disputes arising from or other actions to interpret, administer, or enforce the terms and provisions of this Stipulation.

**STIPULATED AND AGREED TO THIS 3rd DAY OF OCTOBER 2023:**

Dated: October 3, 2023
Wilmington, Delaware

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:          ljones@pszjlaw.com
                tcairns@pszjlaw.com
                pkeane@pszjlaw.com
                ecorma@pszjlaw.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
Whitney Fogelberg (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                david.seligman@kirkland.com
                whitney.fogelberg@kirkland.com

-and-

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in
Possession*

*/s/ Michael D. DeBaecke*
Michael D. DeBaecke (Bar # 3186 )
**ASHBY & GEDDES, P.A.**
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19801
(302) 654-1888
MDebaecke@ashbygeddes.com

*Counsel to PACCAR Financial Corp.*

## <u>SCHEDULE A</u>

**Master Lease and Equipment**

DocuSign Envelope ID: 46BB7F28-3E08-4589-943A-BEF3D5451358



# PACCAR FINANCIAL

EQUIPMENT LEASE AGREEMENT

LESSOR: **PACCAR Financial Corp.**
PO Box 1518
Bellevue, Washington 98009

LEASE Dated: 6/29/2018
LESSEE Name: YRC Enterprise Services, Inc. A Delaware Corporation
Place of Business: 10990 Roe Avenue
Overland Park, KS 66211

Mailing Address: 10990 Roe Avenue Overland Park, KS 66211

## TERMS AND CONDITIONS

1. **LEASE:** The above-named Lessor hereby leases to the above named Lessee (including each and every Lessee jointly and severally if there are more than one Lessee) and Lessee hereby leases from Lessor, subject to the terms and conditions hereof and the terms and conditions of any Schedules executed by Lessee and Lessor which reference this Equipment Lease Agreement ("Agreement"), the personal property described in each such Schedule, together with all present and future attachments, accessories, replacement parts, additions (including bodies) and all proceeds thereof, collectively referred to as the "Equipment."

Lessee or any subsidiary corporation, or any affiliate corporation or business entity that is controlled or owned by, or is under common control or ownership with Lessee and which is identified on Exhibit A attached hereto (each, a "**Lessee Affiliate**") is authorized to enter into Schedules as the named "Lessee" therein with Lessor. The terms and conditions stated in this Master Agreement shall apply to, and be incorporated by reference in, any Schedule with the Lessee Affiliate, which shall be deemed to be the "Lessee" thereunder, subject to the Schedule containing additional terms and conditions as applicable. By written agreement the parties hereto can authorize additional Lessee Affiliates pursuant to further amendment to Exhibit A. YRC Enterprise Services, Inc. agrees that Lessor shall be entitled to deal exclusively with each applicable Lessee Affiliate in connection with each Lease Schedule and Lessor shall have no obligation to obtain approvals from, or provide notices to, YRC Enterprise Services, Inc. with respect to any Lease Schedule with a Lessee Affiliate. Lessor understands and agrees Lessor shall enter into separate and independent leases with Lessee Affiliates and that YRC Enterprise Services, Inc. does not guarantee the performance of Lessee Affiliates, shall not be deemed a co-obligor under any Lease, and shall not be jointly or severally liable for the fulfillment of any lease obligations of any Lessee Affiliate. YRC Enterprise Services, Inc. will have no right or interest in any Lease between a Lessee Affiliate and Lessor or in the Equipment leased thereunder

2. **EFFECTIVE DATE:** The terms and conditions hereof and the obligations and liabilities of Lessor and Lessee hereunder shall become effective on the date of Lessor's acceptance of this Agreement ("Effective Date"), even if no Equipment is specified in a Schedule at that time, or if Equipment is so specified but has not yet been delivered to and accepted by Lessee.

3. **SCHEDULES AND ACCEPTANCE CERTIFICATES:** The items of Equipment subject to this Agreement are those vehicles delivered to PACCAR Financial Corp. in accordance with the Sales Order attached to this Agreement as Attachment A. Each item of Equipment subject to this Agreement shall be described in a Schedule, in the form attached hereto. More than one item may be set forth on a Schedule, and more than one Schedule may be included under this Agreement. When Equipment is set forth on a Schedule signed by both Lessor and Lessee, such Schedule is an integral part of this Agreement and the rights and duties of Lessor and Lessee with regard to that Equipment are governed by this Agreement and such Schedule. In the event of any inconsistency between this Agreement and any Schedule, the terms of such Schedule shall control as to the Equipment listed on such Schedule. When Equipment is delivered to Lessee by Lessor, Lessee shall immediately inspect the Equipment for compliance with the requirements of this Agreement and the relevant Schedule. If the Equipment is acceptable to Lessee, Lessee shall sign and deliver to Lessor an Acceptance Certificate in the form attached hereto. However, if Lessee retains possession of the Equipment for more than 5 days for any reason, or if Lessee makes any use of the Equipment to any extent or for any reason, then the Equipment shall be deemed accepted for this Agreement as fully as if Lessee signed the Acceptance Certificate, even if a signed Certificate is not delivered to Lessor.

4. **LESSOR'S TITLE:** The Equipment is and shall at all times remain personal property. No right, title or interest in or to the Equipment shall pass to Lessee, except for Lessee's rights to possession, quiet enjoyment and use of the Equipment subject to the terms and conditions of this Agreement and for so long as Lessee is not in default of this Agreement. Title to the Equipment will at all times remain in Lessor's name and Lessee will at all times, at its own cost and expense, protect and defend the title of Lessor from and against all claims, liens, encumbrances and legal processes of creditors of Lessee or of others claiming by or through Lessee, and keep the Equipment free and clear from all such claims, liens, encumbrances and processes. Lessee acknowledges and agrees that Lessor is the owner of the Equipment for Federal income tax purposes.

5. **REGISTRATION AND OTHER FILINGS:** Each item of Equipment shall be registered and the certificate of ownership and/or the certificate of registration shall be issued with such person or persons as Lessor may designate shown as the legal owner, registered owner, first lien holder and/or the user or operator. Lessee acknowledges that the certificates of ownership and/or registration will be completed as required by applicable law and as required to protect Lessor's interests in the Equipment, and Lessee agrees that nothing contained on any such certificate shall expand or otherwise affect the rights of Lessee in the Equipment as set forth herein. Lessee

shall be solely responsible for the costs and expenses associated with applying for and obtaining all such certificates. Lessee shall also be solely responsible for the costs and expenses of, and shall take whatever actions are necessary, to renew and maintain such certificates of ownership and registration and to avoid suspension or revocation of such certificates. In the event that a new certificate of ownership or registration is required, such certificates shall be obtained in the same manner and subject to the same requirements as set forth above. In the event that the Lessor deems it advisable at any time to prepare or file additional notices, filings or other documents (for example: UCC-1s or another form of financing statement) in order to protect its interests in and to the Equipment, Lessee shall cooperate fully with Lessor and shall sign each such document and hereby irrevocably consents to and authorizes Lessor to act as Lessee's attorney-in-fact to sign each and every such document in Lessee's name, place and stead, with as much force and effect as if Lessee had itself manually signed such document. Lessee will use the USDOT number issued to Lessee by the U.S. Department of Transportation for registration purposes.

6. **IDENTIFICATION OF EQUIPMENT AND RIGHT OF INSPECTION:** Upon Lessor's request, Lessee shall, at Lessee's own expense, permanently affix to the Equipment in a conspicuous place such labels, signs or other devices as Lessor may require identifying Lessor as the owner and Lessor of the Equipment. Lessor shall have the right to inspect the Equipment at all reasonable times and from time to time upon giving Lessee at least 48 hours' prior notice.

7. **DISCLAIMER OF WARRANTY AND LIMITATION OF LIABILITY:** Lessee acknowledges and agrees that each item of Equipment listed on any Schedule has been selected by Lessee for inclusion in this Agreement based solely upon Lessee's own judgment and without reliance upon any representations or warranties by Lessor. Lessor is not the designer, manufacturer, distributor or seller of the Equipment leased hereunder, and LESSOR MAKES NO REPRESENTATIONS AND SPECIFICALLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR INTENDED USE. LESSOR SHALL HAVE NO LIABILITY TO LESSEE FOR ANY CLAIM, LOSS OR DAMAGE CAUSED OR ALLEGED TO BE CAUSED DIRECTLY, INDIRECTLY, INCIDENTALLY OR CONSEQUENTIALLY BY THE EQUIPMENT, BY ANY INADEQUACY THEREOF OR DEFECT OR DEFICIENCY THEREIN, OR BY ANY INCIDENT WHATSOEVER THEREWITH, WHETHER ARISING IN TORT, STRICT LIABILITY, NEGLIGENCE, CONTRACT OR OTHERWISE, OR IN ANY WAY RELATED TO OR ARISING FROM THIS AGREEMENT. During the term of the lease of each item of Equipment, Lessor hereby assigns to Lessee all of the rights and benefits of any warranties made by the manufacturer or seller of such Equipment, and Lessor further agrees to exercise for the benefit of Lessee any such rights and benefits which cannot be assigned.

8. **TERMS AND RENTALS:** The lease term ("Term") for each item of Equipment shall be as specified in the applicable Schedule. Lessee agrees to pay Lessor rental payments for each item of Equipment ("Rental Payments"), including any advance rental payments, in accordance with the payment schedule specified in such Schedule.

9. **SECURITY DEPOSIT:** Intentionally deleted.

10. **PLACE OF PAYMENT AND OBLIGATION TO PAY:** All Rental Payments are payable without notice or demand at Lessor's address as set forth herein or at such other address as Lessor may specify in writing from time to time. Unless otherwise specifically provided herein, Lessee's obligation to pay the Rental Payments and all other amounts due or to become due hereunder shall be absolute and unconditional under all circumstances, regardless of (a) any claim, counterclaim, set-off, recoupment, defense or other right which Lessee may have or claim to have for any reason against Lessor, the manufacturer or seller of the Equipment, or any third party, or (b) any interruption in or cessation of Lessee's use or possession of the Equipment for any reason whatsoever.

11. **DELINQUENCY CHARGES:** For each Rental Payment or other sum due hereunder which is not paid within ten (10) days after it is due (and provided Lessor has notified Lessee by telephone, mail or e-mail of the delinquency), Lessee agrees to pay Lessor a delinquency charge calculated thereon at the greater of (a) the rate of one and one half percent (1 ½%) per month for the period of delinquency or (b) 5% of such Rental Payment or other sum due hereunder, provided that such delinquency charge shall not be in excess of the maximum amount permitted by law without creation of a defense or imposition of a penalty.

**Page 1 of 4**

CAT. NO. 4052 LDM (10/2016)



# PACCAR
# FINANCIAL

EQUIPMENT LEASE AGREEMENT

**12. MODIFICATION OF EQUIPMENT AND ASSIGNMENT:** Lessee shall not modify (other than Approved Modifications, as defined in Section 14), assign, transfer or sublet the Equipment, this Agreement or Lessee's interests hereunder without Lessor's prior written consent (which may be withheld in Lessor's reasonable discretion), nor shall Lessee's interests hereunder inure to the benefit of any trustee, receiver, creditor or successor of Lessee or of its property, whether or not in bankruptcy, by operation of law, or otherwise. This Agreement and all amounts due hereunder may be assigned at any time by Lessor without Lessee's consent. Upon notice of any assignment from Lessor or its assignee, Lessee shall make all payments coming due thereafter to the assignee without offset, counterclaim or defense of any kind. LESSEE FURTHER AGREES THAT LESSOR MAY, WITHOUT NOTICE TO OR CONSENT OF LESSEE, SELL OR GRANT A SECURITY INTEREST IN THE EQUIPMENT AND, IN SUCH EVENT, LESSEE'S RIGHTS IN AND TO THE EQUIPMENT SHALL BE SUBJECT AND SUBORDINATE TO THE INTEREST AND RIGHTS, INCLUDING THE RIGHT OF POSSESSION, OF ANY SUCH PURCHASER OR HOLDER OF A SECURITY INTEREST IN THE EQUIPMENT. Lessor manages certain of its assets through a like-kind exchange program. In connection therewith, notice is hereby given that the rights, but not the obligations, of Lessor to purchase and sell the assets contained herein have been assigned to PFC Exchange, LLC pursuant to an agreement between Lessor and PFC Exchange, LLC.

**13. LESSEE'S GENERAL DUTIES:** Lessee agrees, at its own cost and expense: (a) to use the Equipment in a careful and prudent manner in the regular course of Lessee's business and to permit only qualified personnel to use the Equipment; (b) to comply in all material respects with all applicable laws, rules and regulations relating to the possession, use or maintenance of the Equipment; (c) to comply in all material respects with any published instructions, procedures or specifications of the manufacturer of the Equipment and of the party selling the Equipment to Lessor; (d) to comply in all material respects with all of the terms and conditions of each and every insurance policy covering the Equipment; (e) to obtain any and all certificates, permits or licenses required or permitted by law with respect to the Equipment, subject to Lessor's reasonable instructions; and (f) to furnish Lessor promptly with any financial information or other information which Lessor may reasonably request from time to time (provided, the obligation to furnish financial information shall be deemed satisfied as long as YRC Worldwide Inc. guarantees the obligations of each Lessee and Lessee Affiliate under each Schedule to this Agreement and files Forms 10-K and 10-Q with the Securities and Exchange Commission within the time frames required by law).

**14. MAINTENANCE AND REPAIR:** Lessee shall, at its own cost and expense, keep the Equipment in operating condition, repair and appearance and to comply in all material respects with all of the manufacturer's recommended procedures in this regard. In addition, Lessee shall maintain the Equipment in compliance with all applicable federal, state and local safety, environmental and other rules and regulations. Lessee shall furnish, at its own expense, all necessary fuel, lubricants, grease, antifreeze, tires, tubes and all other replacement parts and supplies necessary for maintenance and lawful operation of the Equipment. Lessee shall not alter or modify the Equipment in any manner that adversely affects its value. All parts installed and any modifications and alterations made in the course of the ordinary maintenance and repair of the Equipment shall become the property of Lessor and shall remain the property of Lessor upon termination of this Agreement unless otherwise provided herein. Notwithstanding the foregoing, Lessee may install in the Equipment Lessee's standard safety, security and operational equipment and modifications (the "Approved Modifications"). The Approved Modifications shall not become the property of Lessor and may be removed by Lessee upon or prior to the Termination of this Agreement. Lessee shall repair any damage to the Equipment caused by the removal of the Approved Modifications.

**15. INSURANCE:** Lessee agrees to keep the Equipment continuously insured against comprehensive and collision damage. The amount of insurance shall be the **actual cash value** of the Equipment. The insurance policy must include in Lessee's standard form, a lender's loss payable endorsement naming Lessor as a loss payee under the policy. Lessee shall also obtain automobile liability coverage from an insurance company with an AM Best rating of A- or better. The policy shall provide the limits of liability the Lessee is required to carry by the Federal Department of Transportation ("DOT") or the governing State Department of Transportation if the Lessee is not subject to regulation under the DOT or $1,000,000, whichever is greater. The liability policy shall provide coverage in the United States, its territories & possessions, Puerto Rico and Canada. The policy must provide, in Lessee's standard form that Lessor is an additional insured under the policy. If the Lessee is required to carry $5,000,000 limits of liability, the automobile liability insurance must include pollution liability coverage for sudden and accidental occurrence within these limits. The terms of the pollution liability coverage must be substantially in the form of those provided by Insurance Services Office Form CA 9948. The policy must also include an MCS 90 filing. The policy must be primary to all other insurance. Lessee shall be solely responsible for any deductibles, self-insured retentions, or any other payment obligation under the policies of insurance required under this provision. If the Equipment is lost or damaged, any and all insurance proceeds shall be paid as provided in Section 17 of this Agreement. Lessee shall deliver to Lessor proof of insurance coverage **as required under this Agreement**. Lessee shall be solely liable for any losses which occur because no insurance has been obtained or the coverage of the insurance which has been obtained is incomplete, even if Lessor has reviewed the insurance coverage.

**16. TAXES AND CHARGES:** On and after the Effective Date, Lessee agrees to pay promptly to the appropriate governmental agency or, upon Lessor's request, to Lessor, all taxes, assessments, levies, duties, payment of all tolls, any fines for toll evasion, and other governmental charges (including any penalties and interest and any fees for titling or registration) levied or assessed against Lessee, Lessor or the Equipment, upon or with

respect to this Agreement or the purchase, use, operation, leasing, ownership, value, return or other disposition of the Equipment, or the rent, earnings or receipts arising therefrom, exclusive, however, of any taxes based on Lessor's net income and exclusive of any sales taxes paid by Lessor with respect to its initial purchase of the Equipment which have already been included in the cost of the Equipment under the applicable Schedule. If requested by Lessor, Lessee agrees to prepare on behalf of Lessor and in a form satisfactory to Lessor all requested tax returns and reports concerning the Equipment, to file such returns and reports with all appropriate governmental agencies on or before the due date therefor, and to mail a copy thereof to Lessor concurrently with such filing. Lessee further agrees to keep or cause to be kept and made available to Lessor any and all necessary records relevant to the use of the Equipment and pertaining to the aforesaid taxes, assessments and other governmental charges. The obligations arising under this Section shall survive payment of all other obligations under this Agreement and the termination of this Agreement.

**17. LOSS OR DESTRUCTION OF EQUIPMENT:** Lessee assumes the risk of direct and consequential loss and damage to the Equipment. Except as provided in this Section, no loss or damage to the Equipment or any part thereof shall release or impair any obligations of Lessee under this Agreement. Furthermore while the Equipment is in transit and throughout the duration of this Agreement including while the Equipment is in the possession of a third party, so long as Lessee has an insurable interest therein, Lessee agrees to assume the entire risk of the Equipment cost of any partial, complete or constructive loss with respect to the Equipment from any cause whatsoever including theft, loss, damage, destruction or governmental taking, whether or not such loss is covered by insurance or caused by any default or neglect of Lessee. Lessee agrees to give Lessor prompt notice of any total loss of any Equipment. All physical damage insurance proceeds shall be payable directly to Lessor. If any of the Equipment is lost, destroyed, damaged beyond repair, or taken by governmental action, then within 90 days of the loss, destruction, accident or taking, Lessee will (1) either replace the Equipment with like-kind Equipment, free and clear of any liens or rights of other parties, acceptable to Lessor or Lessor's assignee and continue to pay all rentals without interruption as they come due, or (2) promptly pay to Lessor the casualty value as shown in the Casualty and Termination Value Schedule ("Casualty Value") attached hereto, as of the date of payment thereof, plus all accrued and unpaid Rental Payments and other amounts then due and remaining unpaid. Following payment of any Casualty Value, and if no Event of Default has occurred and remains continuing, Lessor will then: (a) transfer to Lessee or insurance carrier (whichever party has paid the Casualty Value to Lessor) Lessor's rights to such Equipment "as is," "where is" and with all defects, without recourse and without representation or warranty, express or implied, other than a warranty that the Equipment is free and clear of any liens created by Lessor; and (b) remit to Lessee any physical damage insurance proceeds arising out of such loss in excess of the amount of the Casualty Value, if any. Lessee shall determine in the exercise of its reasonable judgment whether the Equipment is damaged beyond repair. In the event of damage or loss, which does not result in damage beyond repair or a total loss of the Equipment or any item thereof, Lessee shall cause the affected Equipment to be restored to the condition required by the terms of this Agreement. Upon completion of such repair and after supplying Lessor with satisfactory evidence thereof (and provided no Event of Default has occurred and remains continuing), Lessee shall be entitled to receive any insurance proceeds or other recovery to which Lessor would otherwise be entitled in connection with such loss up to the amount expended by Lessee in making the repair. Lessor shall not be obligated to undertake by litigation or otherwise the collection of any claim against any person for loss of, damage to, or government agency taking of the Equipment.

**18. RETURN TO LESSOR:** Upon the expiration of the Term for any Equipment, Lessee shall return, at Lessee's sole expense, such Equipment to Lessor at such place within the continental United States as is designated by Lessor at that time and in the same condition as when received by Lessee, except only reasonable wear and tear resulting from the normal and customary use thereof. However, if any Schedule to this Agreement contains specific requirements for the condition of the Equipment upon its return to Lessor the Equipment must satisfy such requirements. Lessee shall pay to Lessor on demand, as additional rental hereunder, the cost of any repairs necessary to place the Equipment in the condition required by this Agreement at that time.

Until the Equipment is returned to the Lessor after the expiration of the Term or any end of Term purchase option price is paid in full, Lessee agrees to continue to pay Rental Payments in the same amount as in effect at the end of the Term ("Holdover Liability"). Lessor's right to recover Holdover Liability is in addition to any other right or remedy provided in this Agreement and shall in no way limit or impair Lessor's rights and remedies hereunder, including, without limitation, Lessor's absolute right to possession of the Equipment upon default or at the end of the Term.

**19. FAIR MARKET VALUE PURCHASE OPTION:** Provided Lessee shall have fully complied with all of the terms and conditions of this Agreement, the Lessee shall have the option at the end of the Term for each item of Equipment, to purchase such Equipment for its Fair Market Value on an "AS IS, WHERE IS" basis without any warranty by Lessor. This option must be exercised by written notice to the Lessor, not earlier than one hundred twenty (120) days prior to nor later than sixty (60) days prior to the end of the Term for each item of Equipment. The "Fair Market Value" shall be determined by mutual agreement of the Lessor and Lessee; provided that, if Lessor and Lessee are unable to agree upon the Fair Market Value of the Equipment within thirty (30) days after receipt by the Lessor of the Lessee's election to exercise the purchase option, the Fair Market Value shall be determined by an appraiser selected by the Lessor. Lessee acknowledges and agrees that the Lessor may select, as appraiser, the party that sold the Equipment to Lessor. The cost of such appraisal shall be borne by Lessee. If the purchase option set forth herein is exercised, the Fair Market Value purchase price shall be paid in full to Lessor at the end of the Term for such Equipment.



**PACCAR**
**FINANCIAL**

EQUIPMENT LEASE AGREEMENT

20. **TERMINAL RENTAL ADJUSTMENT CLAUSE OR MODIFIED TERMINAL RENTAL ADJUSTMENT CLAUSE:** If Lessee so elects by executing a Terminal Rental Adjustment Clause ("TRAC") Supplement or Modified Terminal Rental Adjustment Clause ("MOD-TRAC") Supplement in the form attached hereto with regard to one or more items of Equipment, then there shall be a terminal rental adjustment for such Equipment as further specified in such Supplement. If this Agreement is terminated with respect to any item of Equipment covered by a TRAC or MOD-TRAC Supplement for any reason other than expiration of the Term, then this Section shall not apply and Lessee's rights and obligations shall be governed by the other Sections hereof.

21. **PERFORMANCE OF OBLIGATIONS OF LESSEE BY LESSOR:** If Lessee fails to perform duly and promptly any of its obligations under this Agreement, Lessor may perform the same, but shall not be obligated to do so, to protect the interests of Lessor, Lessee or both, and any cost, liability or expense (including reasonable attorney's fees) incurred by Lessor in such performance shall be paid to Lessor by Lessee upon demand as additional rent for the Equipment.

22. **GENERAL INDEMNITY:** Lessee assumes liability for and agrees to indemnify, defend and hold Lessor, its agents, employees, successors and assigns harmless from any and all actions, suits, liabilities, obligations and claims of every nature (including, without limitation, those arising from contract, strict or absolute liability in tort, negligence, or any other cause) and from any and all damages, awards, penalties, fines, forfeitures, settlements, interest and attorney's fees awarded to any person whomsoever and regardless of the reason, which directly or indirectly results from or relates to the delivery, purchase, sale, ownership, leasing, use, possession, operation, condition (including, without limitation, latent or other defects, whether or not discoverable), repossession, recovery, return, disablement or storage of the Equipment. The amount to be paid Lessor by Lessee hereunder shall include the amount, if any, necessary to reimburse Lessor for any taxes (including Federal income tax), which Lessor is required to pay in respect of the amounts received under this Section, including any interest, penalties and additions to tax. For the purposes of this Section, the term Lessor shall include the affiliated taxpayer group, within the meaning of Section 1504 of the Internal Revenue Code as amended ("Code") of which Lessor is a member. Lessee's indemnities and liabilities under this Section shall continue in full force and effect, notwithstanding the expiration or termination of this Agreement for any reason. Notwithstanding any other provision of this Agreement, Lessee's indemnity obligations shall not apply to any damages, awards, penalties, fines, forfeitures, settlements, interest and attorney's fees to the extent they are incurred by Lessor as a result of gross negligence or intentional misconduct on the part of Lessor, or its employees, agents, affiliates, or contractors.

Upon request of Lessor, Lessee shall assume the defense of any and all demands, claims, actions, suits and all other proceedings against Lessor for which indemnity is provided herein and, Lessee shall allow Lessor to participate in the defense thereof. At Lessor's option, Lessor may assume the defense of the matter, including selection of counsel, but this shall not relieve or reduce Lessee's obligations to indemnify Lessor as set forth herein.

23. **TAX INDEMNITY:** Lessee acknowledges that the Lessor is the owner of the Equipment for Federal income tax purposes and that Lessor intends to take the accelerated cost recovery deductions ("ACRS Deductions") as provided by Section 168 of the Code. Accordingly, Lessee agrees that at all times during the term of this Agreement, Lessee shall not take any action, fail to take any action, assert any claim or make any representation which results, or may result, in the loss to Lessor of ACRS Deductions. In the event that the ACRS Deductions are lost, reduced or delayed due to any act or omission by Lessee, Lessee agrees to promptly pay to Lessor, as additional rent, an amount such that the portion remaining after deduction of all taxes required to be paid by Lessor in respect to the receipt of such amount (including Federal income tax) shall fully compensate Lessor for the loss, reduction or delay of the ACRS Deductions, including any interest, penalties and additions to tax. Lessor shall have no obligation to contest, beyond the level of an Internal Revenue Service auditing agent, any recapture, disallowance, elimination, reduction or disqualification caused by any act or omission of the Lessee. Lessee also acknowledges that there is a possibility that, after the execution of any Schedule to this Agreement, the Code, or any regulations promulgated thereunder, might be amended or changed so as to deprive Lessor of the right to claim all or part of the ACRS Deductions, or to change the time period over which the Equipment must be depreciated, or in some other manner change Lessor's after-tax margin with respect to this Agreement ("Tax Benefits"). In the event that the Lessor's Tax Benefits increase or are impaired due to an amendment or change to the Code or any regulations promulgated thereunder after the execution of any Schedule, the rent payable by Lessee shall be increased or decreased over the remaining term of this Agreement such that Lessor's after-tax margin (after consideration of all taxes, including Federal income tax) with respect to this Agreement is maintained. Lessor shall have no obligation to contest any impairment of Tax Benefits due to an amendment or change to the Code or any regulations promulgated thereunder. For the purposes of this Section, the term Lessor shall include the affiliated taxpayer group, within the meaning of Section 1504 of the Code, of which Lessor is a member. Lessee's indemnities and liabilities under this Section shall continue in full force and effect notwithstanding the expiration or termination of this Agreement for any reason.

Lessee acknowledges that the percentages set forth in the Casualty and Termination Schedules attached hereto have been computed on the assumption that Lessor shall be entitled to the Tax Benefits as allowed under the present Code.

Accordingly, in the event Rental Payments are adjusted as provided in the immediately preceding paragraph, the percentages set forth in the schedules shall be revised as may be necessary in the reasonable opinion of Lessor so that the amount payable by Lessee in the event of a casualty loss or termination shall be sufficient to maintain Lessor's net after-tax margin at the same level that would have been available to the Lessor upon payment of the Casualty.

Value or Termination Value had the Tax Benefits been allowed in the manner permitted under the present Code. The revised schedule shall be utilized to calculate any payment of Casualty Value or Termination Value paid after the liability of Lessee hereunder shall become fixed regardless of the date of such casualty or other occurrence. Further, with respect to any previous payment of Casualty Value or Termination Value under the lease by the Lessee, the Lessee shall pay to Lessor the additional amount, in excess of the amount actually paid, that the Lessee would have been required to pay had the liability of Lessee become fixed prior to the date of the original payment, or Lessee shall be entitled to reimbursement from the amount actually paid to Lessor to the extent of any increased Tax Benefits realized by Lessor due to any changes in the present Code. For purposes of each Schedule, the term "present Code" shall mean the Code in effect as of the date of such Schedule.

24. **DEFAULT:** Time is of the essence under this Agreement. The occurrence of any of the following events shall be deemed a default hereunder or under any Schedule to the extent that any such default is not cured within ten (10) days of the event of default (each, an "Event of Default"): (a) Lessee's failure to pay when due the full amount of any payments required hereunder, including, without limitation, rents or additional rents, delinquency and late charges, interest, taxes, insurance, the costs of maintenance or repairs, amounts due for indemnification, the Casualty or Termination Values (if applicable) or any other amounts; (b) Lessee's failure to perform any action or other obligation required by the terms hereof to be performed by Lessee; (c) any attempt by Lessee to remove, sell, transfer, sublease, encumber, or otherwise transfer, dispose or part with possession of the Equipment without Lessor's prior written consent; (d) the Lessee admits to making a fraudulent statement or it is determined by a judicial or administrative proceeding the Lessee has made a fraudulent statement or statements to induce the Lessor to extend credit in connection with this Agreement; (e) Lessee's death, dissolution, or other termination of existence; (f) Lessee's becoming insolvent or becoming the subject of a petition in bankruptcy, either voluntarily or involuntarily, or Lessee's making an assignment for the benefit of creditors, or being named or subjected to a suit for the appointment of a receiver; (g) seizure of or levy upon any Equipment leased hereunder by reason of any legal or governmental process directed against Lessee; or (h) any merger of the Lessee with or into any person, or any sale, conveyance, transfer, lease or disposition (whether in one transaction or a series of transactions) of all or substantially all of the Lessee's assets without the prior approval of Lessor (provided, that a merger with or sale to a person controlled by, under common control with or controlling Lessee in which the successor entity agrees to be bound by the terms of the Lease shall not require the approval of Lessor).

25. **TERMINATION VALUE:** Lessor and Lessee hereby agree that the amount set forth under the appropriate entry of the termination value section of the Casualty and Termination Value Schedule attached hereto ("Termination Value") represents the amount necessary to compensate Lessor for any breach by Lessee of its obligation to make future Rental Payments under this Agreement with regard to the items of Equipment shown on such Schedule. In the event of Lessee's breach of its Rental Payment obligation, Lessee agrees to pay Lessor the Termination Value (determined by reference to the most recent Rental Payment date shown thereon) as liquidated damages and not as a penalty. The Termination Value does not include, and Lessee shall remain liable for and shall immediately pay to Lessor, all other amounts due under this Agreement (except for the future Rental Payments), including but not limited to past due Rental Payments, delinquency and late charges, taxes, insurance, costs of maintenance and repair, and any amounts due under the indemnification provisions hereof.

26. **REMEDIES:** In the event of any default by Lessee under this Agreement, Lessor shall have all of the rights and remedies permitted at law and in equity. The rights and remedies available to Lessor may vary with the law of the applicable jurisdiction, and Lessee acknowledges and agrees that Lessor shall be entitled to exercise any and all available rights and remedies in any combination or sequence not expressly prohibited by law. Lessee hereby agrees and consents to any rights or remedies which are available to Lessor as if Lessee has so agreed or consented. Unless prohibited by applicable law, Lessor's available rights and remedies in the event of a default by Lessee include, without limitation: (a) without terminating this Agreement, request Lessee to assemble any or all of the Equipment, to make the same available to Lessor at a reasonable place designated by Lessor, and to put Lessor in possession thereof; (b) without terminating this Agreement, immediately and without legal proceedings or notice to Lessee enter Lessee's premises, take possession of, remove and retain any or all of the Equipment or render the same unusable; (c) without terminating this Agreement, declare the Termination Value and all other sums payable hereunder immediately due and payable; (d) without notice to Lessee, terminate the Agreement as to any or all of the Equipment leased hereunder, but such termination shall not release Lessee from the liabilities and obligations arising from such breach; and (e) sell or otherwise dispose of any or all of the Equipment at private or public sale, or re-lease any or all of the same on such terms and conditions as Lessor deems appropriate. In the event that Lessor repossesses, re-leases, sells or otherwise disposes of the Equipment, any net proceeds of such action which are attributable to Lessee's interest in the Equipment under this Agreement shall

**Page 3 of 4**

DocuSign Envelope ID: 46BB7F28-3E08-4589-943A-BEF3D5451358


**PACCAR**
FINANCIAL

EQUIPMENT LEASE AGREEMENT

be applied against Lessee's obligations hereunder. Unless otherwise required by applicable law, any remaining net proceeds shall belong solely to Lessor. Lessee shall be liable for any amounts due to Lessor hereunder after application of the net proceeds as set forth above. The net proceeds shall be determined by deducting from the gross sales proceeds, or from the net present value of the proceeds of a re-lease, any applicable sales, use and excise taxes, and sales or other fees or commissions actually paid to any party (including the party who sold the Equipment to Lessor) who helps Lessor sell or otherwise dispose of the Equipment, and Lessor's expenses of locating, repossessing, repairing, preparing and disposing of the Equipment, including attorney's fees.

Lessee hereby expressly waives any rights it may have to possession of the Equipment after default and all claims it may have for damages or injuries suffered through or loss caused by any repossession, sale or other disposition of the Equipment hereunder. Lessee agrees that any property other than Equipment which is in or upon the Equipment at the time of repossession may be taken and held without liability until its return is requested by Lessee. Lessee hereby acknowledges and agrees that any applicable standard of commercial reasonableness will be satisfied if the Lessor sells or otherwise disposes of the Equipment by any method which is customarily used for similar Equipment, or which Lessor has used or would use for similar Equipment owned solely by Lessor, even if Lessee believes or proves that a different method of disposition would have been more beneficial for Lessee. Unless otherwise required by law, any requirement of reasonable notice regarding the re-lease, sale or other disposition of the Equipment which Lessor may be obligated to give will be met if such notice is mailed to Lessee at its address shown herein at least ten (10) days before the time of such re-lease, sale or other disposition. Nothing herein contained shall require Lessor to re-lease, sell or otherwise dispose of the Equipment.

27. **NOTICES:** All notices relating hereto shall be either delivered in person to an officer of Lessor or Lessee, or be sent by certified mail, return receipt requested, to Lessor or Lessee at its address as shown on the face hereof or to the last known address of the recipient.

28. **LIMITATIONS ON USE:** Lessee shall not operate the Equipment outside of the United States, its territories & possessions, Puerto Rico and Canada.

29. **WAIVER OF JURY TRIAL:**    EXCEPT AS OTHERWISE PROVIDED BY APPLICABLE LAW, EACH OF LESSOR AND LESSEE WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, BETWEEN LESSOR AND LESSEE ARISING OUT OF, CONNECTED WITH, RELATED TO OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS AGREEMENT OR OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION THEREWITH OR THE TRANSACTIONS RELATED THERETO. LESSOR AND LESSEE HEREBY AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY AND THAT EITHER PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE WAIVER OF THE PARTIES HERETO OF THEIR RIGHT TO TRIAL BY JURY.

30. **MISCELLANEOUS:** This Agreement constitutes the entire understanding of the parties and supersedes any and all prior understandings or agreements, oral or written between and among the parties respecting the within subject matter. This Agreement shall be binding upon the successors, assigns and legal representatives of the parties hereto. This Agreement may not be modified unless in a writing signed by both parties. No provision of the Agreement may be waived unless in a writing signed by the party to be bound by the waiver, and the waiver of any default shall not be or be deemed to be a waiver of any other of subsequent default. The provisions of this Agreement are severable, and if a court of competent jurisdiction determines that any of them are unenforceable in accordance with their terms, the court may modify, sever or divide such provisions as necessary to enforce those provisions to the extent they may be found to be reasonable and to enforce all remaining provisions. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and such counterparts shall together constitute but one agreement. In the event of litigation concerning this Agreement, the prevailing party shall be entitled to recover its costs and expenses, including reasonable attorney's fees.

---

The lessee of this heavy-duty tractor understands that when using a heavy-duty tractor to pull a 53-foot or longer box-type trailer on a highway within California, the heavy-duty tractor must be compliant with sections 95300 - 96311, title 17, California Code of Regulations, and that it is the responsibility of the lessee to ensure this heavy-duty tractor is compliant. The regulations may require this heavy-duty tractor to have low rolling resistance tires that are U.S. Environmental Protection Agency (U.S. EPA) Verified SmartWay Technologies prior to current or future use in California, or may entirely prohibit use of this tractor in California if it is a model year 2011 or later tractor and is not a U.S. EPA Certified SmartWay Tractor.

The lessee of this box-type trailer understands that when using a heavy-duty tractor to pull a 53-foot or longer box-type trailer on a highway within California, the box-type trailer must be compliant with sections 95300 - 95311, title 17, California Code of Regulations, and that it is the responsibility of the lessee to ensure this box-type trailer is compliant. The regulations may require this trailer to have low rolling resistance tires and aerodynamic technologies that are U.S. Environmental Protection Agency Verified SmartWay Technologies prior to current or future use in California.

---

**ALL TERMS AND CONDITIONS OF THIS AGREEMENT ARE A PART HEREOF AND ARE BINDING UPON THE PARTIES HERETO.**

LESSEE ACKNOWLEDGES THAT LESSEE HAS RECEIVED A TRUE COPY OF THIS AGREEMENT, LESSEE HAS READ IT AND IT WAS COMPLETELY FILLED IN BEFORE LESSEE SIGNED IT.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. A photocopy or electronic signed copy of any such counterpart shall have the same force and effect as an original (ink) signature.

| ACCEPTED BY: **PACCAR Financial Corp.** | LESSEE: **YRC Enterprise Services, Inc. A Delaware Corporation** |
|---|---|
| BY: *Barbara Coccia* DocuSigned by: 6A1B9EAC01C54C6... | BY: *Mark Boehmer* DocuSigned by: 785D727341E946E... Mark D. Boehmer |
| TITLE: Area Admin Mgr | TITLE: Vice President |
| ADDRESS: 1700 Woodbrook Street Denton, TX 76205 | ADDRESS: 10990 Roe Avenue Overland Park, KS 66211 |
| DATE: 6/29/2018 | DATE: 6/29/2018 |

CAT. NO. 4052 LDM (10/2016)

# Exhibit A to Equipment Lease Agreement

This Exhibit A is attached to and incorporated into that certain Equipment Lease Agreement between PACCAR Financial Corp. and YRC Enterprise Services, Inc. dated June 29, 2018 (the "**Lease Agreement**").

Lessee Affiliates
USF Reddaway Inc., an Oregon corporation
YRC Inc., a Delaware corporation
New Penn Motor Express LLC, a Delaware limited liability company
USF Holland LLC, a Delaware limited liability company

Each of the above-named Lessee Affiliates is authorized to enter into, as Lessee, Schedules which reference and incorporate the terms and conditions of the Lease Agreement. By written agreement the parties hereto can authorize additional Lessee Affiliates pursuant to amendment of this Exhibit A.

This Exhibit A may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. A photocopy or electronic copy of any such signed counterpart shall have the same force and effect as an original (ink) signature.

IN WITNESS WHEREOF, the parties, intending to be legally bound hereby, have duly executed this Exhibit A to be effective as of the date of the Lease Agreement.

**PACCAR FINANCIAL CORP.**                    **YRC ENTERPRISE SERVICES, INC.**

_____              _____
(Signature)                                   (Signature)

_____              _____
(Name/Title)                                  (Name/Title)

DocuSign Envelope ID: BA624D87-1444-42E4-B646-E35319E18BCC



**EQUIPMENT LEASE AGREEMENT**
**SCHEDULE B: RETURN CONDITIONS FOR TRUCKS AND TRACTORS**

This Schedule is attached to and incorporated into the Equipment Lease Agreement ("Agreement") dated June 29, 2018 between **PACCAR Financial Corp.** ("Lessor") and **YRC Enterprise Services, Inc. a Delaware Corporation** ("Lessee"), relating to the leasing of certain equipment described in the Description of Equipment section of Schedule A of the Agreement. Capitalized terms used herein and not otherwise defined have the meanings set forth in the Agreement.

Lessee agrees that it shall return each item of Equipment to Lessor satisfying the following specific requirements:

### Engine

1. Engine must be original engine delivered in truck. *(This requirement will not apply to an engine returned that is rebuilt or replaced under a warranty program.)*

2. Engine must operate at a minimum of 80% of the original manufacturer's rated horsepower after allowing for driveline losses and as verified by a chassis dynamometer test.

3. Engine must be mechanically sound and within the manufacturer's specifications with regard to oil pressure, coolant temperature and pressure, and fuel and rail pressures. There must be no compression in the cooling system.

4. Engine must have no oil or coolant leaks and fluids must be free from contamination.

5. ECM must retain mileage information and be cleared of all passwords.

6. All emission components, including but not limited to, Diesel Particulate Filters, Exhaust Gas Recirculation (EGR) valves, EGR coolers, Selective Catalytic Reduction (SCR) Systems must function properly and pass industry test and inspection.

   When equipped, all model year 2008 and newer trucks must be returned with a fully functional Diesel Particulate Filter (DPF) capable of regeneration at normal factory intervals, together with documentation or receipt showing that it has been *serviced in accordance with the manufacturers recommended guidelines*.

7. Air to air must be free of damage and leaks.

8. Batteries, starter, alternator and other ignition system components must be in sound condition. Batteries must be original CCA rating, cases intact with no dead cells and capable of starting the truck unassisted.

9. Air conditioning compressor must be operational. System must be free from defect, and blow cold air.

### Drivetrain

1. Clutch, transmission and front and rear axles must be roadworthy and free from defects with no visible bends, cracks or fluid leaks. The clutch and clutch brake must be in adjustment or must be replaced if it cannot be adjusted to within acceptable tolerances.

2. The driveline must be free of noise, vibration and excessive free-play in u-joints.

3. No wheel or pinion seals are to be leaking.

### Brakes

1. Brake linings are to be no less than *3/8* inch on front and rear axles and pass DOT standards.

2. Brake drums must be free from breaks or cracks and cannot be worn in excess of 1/16 inch groove, and pass DOT standards.

### Tires

1. Steer:  Virgin tires with matching make, model, and size having a minimum tread depth of 12/32". Tires of consistent design, construction and quality and with an equal or better Rolling Resistance Rating (lower Crr) as those originally delivered on the equipment.

2. Drive:  Matched new recap tires with minimum tread depth of *16/32" (50%)*. Tires must be first-time caps (multi-run casings are not allowed, casings must not be over 7 years old), and tires need to be of consistent design, construction and quality.

3. Drive: Identically matched block/lug type tread on all drive tires. Trailer tires are not allowed on any position, front or rear axles.

CAT. NO. 7617 LDM (6/2014)     DISTRIBUTION: ORIGINAL - AREA OFFICE; COPIES - CORPORATE; LESSEE; DEALER

DocuSign Envelope ID: BA624D87-1444-42E4-B646-E35319E18BCC



**EQUIPMENT LEASE AGREEMENT**
**SCHEDULE B: RETURN CONDITIONS FOR TRUCKS AND TRACTORS**

4.  Tires must have sound casings free of cuts, bulges or gouges and there must be no irregular tread wear (dishing, cupping, edging, feathered, etc.)

### Frame

1.  Frame rails, cross members, fifth wheel, cab mounts/supports, spring/air suspension hangers and other structural systems must be free from cracks, improper welds and defects, and excessive rust.

2.  All pins and bushings must be free of play and within DOT published tolerances.

3.  Frames that have been stretched, improperly repaired, welded or otherwise altered are not acceptable.

### Cab / Sleeper / Body

1.  Paint and/or body damage must not exceed $250.00 total per damaged item including, but not limited to, the bumper, grill, fuel tanks, fairings, dents, rust damage, etc.

2.  All decals, permits, unit numbers, and other customer ID must be removed (including truck bodies) and done so in such a manner as to not damage the paint. Scratches to the paint as a result of the de-ID process will be considered paint damage as defined above.

3.  All standard and optional equipment such as the radio and power accessories must be intact and fully operational. Auxiliary equipment (such as APUs and Smartstarts) must be mechanically sound and function as designed. If they have been removed, all alterations must be repaired to original equipment standards.

4.  Upholstery must have no tears or open seams. Holes (burns, punctures, etc.) through the fabric (padding exposed) must be repaired or replaced.

5.  There must be no scratched, broken, chipped, or cracked glass (windshield, windows, or mirrors), and no "bull's-eyes". Glass may be repaired in lieu of replacement if the repair is not visible to the naked eye.

6.  Dash panels and interior trim pieces must not be missing and must be free from holes, cracks, and breaks.

7.  All instruments, gauges, and control panels must be in operating condition with no missing knobs or switches and no broken glass.

8.  All attached body equipment with hydraulic components must be in good working order and free of fluid leaks.

### General

1.  Equipment shall be maintained as prescribed and recommended by the manufacturer.

2.  Equipment shall be returned with the same original specifications, attachments, etc. as when the units were originally leased to the customer.

3.  Upon surrender of Equipment, Lessee shall return to Lessor registration certificates, federal highway use tax receipts (Form 2290) paid in full, and maintenance repair records.

4.  Any unit that has been wrecked must be declared at the onset of the return process and any wreck damage is subject to reappraisal.

5.  Units must pass Federal DOT inspection and be able to go into service without repair.

6.  Lessor reserves the right to reject any unit(s) that has/have not been repaired in accordance with acceptable standards of workmanship.

7.  Vehicles must have a minimum of thirty (30) gallons of fuel at the time they are surrendered to the designated turn-in location.

CAT. NO. 7617 LDM (6/2014)          DISTRIBUTION: ORIGINAL - AREA OFFICE; COPIES - CORPORATE; LESSEE; DEALER

DocuSign Envelope ID: BA624D87-1444-42E4-B646-E35319E18BCC



## PACCAR FINANCIAL

### EQUIPMENT LEASE AGREEMENT
### SCHEDULE B: RETURN CONDITIONS FOR TRUCKS AND TRACTORS

Lessee shall assemble and make each item of Equipment available for inspection in a condition satisfying the foregoing specific requirements no later than thirty (30) days after expiration of the Agreement. Beginning on the thirty-first (31st) day from and after the expiration of the Agreement, Lessee shall pay to Lessor, as liquidated damages and not as a penalty, an amount equal to the daily equivalent of 1/20th of the scheduled Rental Payment in effect immediately prior to the expiration of the Agreement for such item of Equipment. Lessee shall also be responsible for the cost of any repairs necessary to place the Equipment in the conditions required by the Agreement, including reimbursement to the Lessor for any expenses incurred by Lessor associated with non-compliance with the Agreement.

Maximum mileage: Lessee agrees that each item of Equipment will be operated a maximum of 480,000 miles within the 48-month Lease, prorated at a rate of 10,000 miles monthly.


If miles actually operated during the period are more than the miles specified above, Lessee shall upon receipt of Lessor's invoice promptly pay to Lessor an amount equal to the difference between the number of operated during the period(s) multiplied by the over-miles rate specified below.

The over-miles rate shall be $0.0700 per mile.

| LESSOR:<br>**PACCAR Financial Corp.** | LESSEE:<br>**USF Holland, Inc.** |
|---|---|
| BY: *Beth Farstad*<br>—DocuSigned by:—<br>A313F0BC4B4047C... | BY: *Mark Boehmer*<br>—DocuSigned by:—<br>Mark D. Boehmer 705D727341E946E... |
| TITLE:   Sr. Contract Administrator | TITLE:   Vice President |
| DATE:   May 3,2019 | DATE:   May 3,2019 |

CAT. NO. 7617 LDM  (6/2014)      DISTRIBUTION: ORIGINAL - AREA OFFICE; COPIES - CORPORATE; LESSEE; DEALER

Yellow Corporation

*DRAFT - SUBJECT TO MATERIAL REVISION*

*PACCAR Financial - Leased Vehicle Locations*

| Number | VIN Number | Lease Acct | Terminal | Location | Additional Notes |
|--------|-----------|-----------|----------|----------|-----------------|
| 1 | 1XPBAK9X0LD656180 | 2259 | 386 | | |
| 2 | 1XPBAK9X2LD656214 | 854 | 419 | | |
| 3 | 1XPBAK9X0LD656213 | 854 | 366 | | |
| 4 | 1XPBAK9X5LD656210 | 854 | 263 | | |
| 5 | 1XPBAK9X5LD656191 | 854 | 671 | | |
| 6 | 1XPBAK9X7LD656189 | 854 | 311 | | |
| 7 | 1XPBAK9X1LD656186 | 854 | 634 | | |
| 8 | 1XPBAK9XXLD656185 | 854 | 424 | | |
| 9 | 1XPBAK9X2LD656181 | 854 | n/a | Third Party - to be confirmed | |
| 10 | 1XPBAK9X2LD656231 | 3353 | 332 | | |
| 11 | 1XPBAK9X0LD656230 | 3353 | n/a | Third Party - to be confirmed | |
| 12 | 1XPBAK9X4LD656229 | 3353 | 357 | | |
| 13 | 1XPBAK9X2LD656228 | 3353 | 358 | | |
| 14 | 1XPBAK9X0LD656227 | 3353 | 357 | | |
| 15 | 1XPBAK9XXLD656221 | 3353 | 358 | | |
| 16 | 1XPBAK9X1LD656219 | 3353 | 345 | | |
| 17 | 1XPBAK9X4LD656215 | 3353 | 360 | | |
| 18 | 1XPBAK9X7LD656208 | 3353 | 358 | | |
| 19 | 1XPBAK9X5LD656207 | 3353 | 433 | | |
| 20 | 1XPBAK9X3LD656206 | 3353 | 311 | | |
| 21 | 1XPBAK9XXLD656199 | 3353 | 371 | | |
| 22 | 1XPBAK9X2LD656195 | 3353 | 428 | | |
| 23 | 1XPBAK9X0LD656194 | 3353 | 322 | | |
| 24 | 1XPBAK9X7LD656192 | 3353 | 320 | | |
| 25 | 1XPBAK9X5LD656190 | 3353 | 436 | | |
| 26 | 1XPBAK9X3LD656188 | 3353 | 319 | | |
| 27 | 1XPBAK9X3LD656187 | 3353 | n/a | Third Party - to be confirmed | |
| 28 | 1XPBAK9X5LD656184 | 3353 | 357 | 2530 S Tibbs Avenue , Indianapolis , 46241 | *Accident - legal hold  1* |
| 29 | 1XPBAK9X4LD656182 | 3353 | 331 | | |
| 30 | 1XPBAK9XXLD656235 | 8048 | 360 | | |
| 31 | 1XPBAK9X8LD656234 | 8048 | 290 | | |
| 32 | 1XPBAK9X6LD656233 | 8048 | 357 | | |
| 33 | 1XPBAK9X8LD656220 | 8048 | 319 | | |
| 34 | 1XPBAK9X2LD656200 | 8048 | 323 | | |
| 35 | 1XPBAK9X8LD656198 | 8048 | 350 | | |
| 36 | 1XPBAK9X6LD656216 | 8048 | 360 | 3801 Mound Road , Joliet, IL 60436 | *Accident - legal hold  2* |
| 37 | 1XPBAK9X9LD656209 | 8048 | 244 | | |
| 38 | 1XPBAK9X6LD656197 | 8048 | 425 | | |
| 39 | 1XPBAK9X4LD656196 | 8048 | 350 | | |
| 40 | 1XPBAK9X9LD656193 | 8048 | 386 | | |
| 41 | 1XPBAK9X6LD656183 | 8048 | n/a | Third Party - to be confirmed | |
| 42 | 1XPBAK9X6LD656202 | 9897 | 350 | | |
| 43 | 1XPBAK9X4LD656201 | 9897 | n/a | Third Party - to be confirmed | |
| 44 | 1XPBAK9X8LD656279 | 3147 | 331 | | |
| 45 | 1XPBAK9X1LD656253 | 3147 | 350 | | |
| 46 | 1XPBAK9X0LD656244 | 3147 | 357 | | |
| 47 | 1XPBAK9X0LD656243 | 3147 | 396 | | |
| 48 | 1XPBAK9X3LD656237 | 3147 | 360 | | |
| 49 | 1XPBAK9X1LD656236 | 3147 | n/a | Third Party - to be confirmed | |
| 50 | 1XPBAK9X9LD656226 | 3147 | 311 | | |
| 51 | 1XPBAK9X7LD656225 | 3147 | 311 | | |
| 52 | 1XPBAK9X5LD656224 | 3147 | 320 | | |
| 53 | 1XPBAK9X3LD656223 | 3147 | 424 | | |
| 54 | 1XPBAK9X1LD656222 | 3147 | 320 | | |
| 55 | 1XPBAK9X9LD656212 | 3147 | 419 | 24 Gateway Commerce Center Dr , Edwardsville , 62025 | *Accident - legal hold  3* |
| 56 | 1XPBAK9X7LD656211 | 3147 | 331 | | |
| 57 | 1XPBAK9X1LD656205 | 3147 | 320 | | |
| 58 | 1XPBAK9XXLD656204 | 3147 | 360 | | |
| 59 | 1XPBAK9X8LD656203 | 3147 | 682 | | |
| 60 | 1XPBAK9X2LD656245 | 4723 | 358 | | |
| 61 | 1XPBAK9X7LD656242 | 4723 | 358 | | |
| 62 | 1XPBAK9X5LD656241 | 4723 | 368 | | |
| 63 | 1XPBAK9X3LD656240 | 4723 | 425 | | |
| 64 | 1XPBAK9X7LD656239 | 4723 | 244 | | |
| 65 | 1XPBAK9X5LD656238 | 4723 | 330 | | |
| 66 | 1XPBAK9XXLD656218 | 4723 | 360 | | |
| 67 | 1XPBAK9X8LD656217 | 4723 | 548 | | |
| 68 | 1XPBAK9XXLD656252 | 7676 | 350 | | |
| 69 | 1XPBAK9X8LD656251 | 7676 | 360 | | |
| 70 | 1XPBAK9X6LD656250 | 7676 | 366 | | |
| 71 | 1XPBAK9XXLD656249 | 7676 | 360 | | |
| 72 | 1XPBAK9X8LD656248 | 7676 | 421 | | |
| 73 | 1XPBAK9X6LD656247 | 7676 | n/a | Third Party - to be confirmed | |
| 74 | 1XPBAK9X4LD656246 | 7676 | 357 | | |
| 75 | 1XPBAK9X2LD656259 | 3401 | 350 | | |
| 76 | 1XPBAK9X0LD656258 | 3401 | 357 | | |
| 77 | 1XPBAK9X0LD656257 | 3401 | 360 | | |
| 78 | 1XPBAK9X7LD656256 | 3401 | 350 | | |
| 79 | 1XPBAK9X5LD656255 | 3401 | 409 | | |
| 80 | 1XPBAK9X3LD656254 | 3401 | 350 | | |
| 81 | 1XPBAK9X1LD656270 | 7097 | 323 | | |
| 82 | 1XPBAK9X5LD656269 | 7097 | 357 | | |

Yellow Corporation

*PACCAR Financial - Leased Vehicle Locations*

*DRAFT - SUBJECT TO MATERIAL REVISION*

| Number | VIN Number | Lease Acct | Terminal | Location | Additional Notes |
|---|---|---|---|---|---|
| 83 | 1XPBAK9X3LD656268 | 7097 | 262 | | |
| 84 | 1XPBAK9X1LD656267 | 7097 | 364 | | |
| 85 | 1XPBAK9XXLD656266 | 7097 | 262 | | |
| 86 | 1XPBAK9X8LD656265 | 7097 | 366 | | |
| 87 | 1XPBAK9X6LD656264 | 7097 | 262 | | |
| 88 | 1XPBAK9X4LD656263 | 7097 | 262 | | |
| 89 | 1XPBAK9X2LD656262 | 7097 | 357 | 2530 S Tibbs Avenue , Indianapolis , 46241 | *Accident - legal hold  4* |
| 90 | 1XPBAK9X0LD656261 | 7097 | 262 | | |
| 91 | 1XPBAK9X5LD656272 | 7295 | 622 | | |
| 92 | 1XPBAK9X3LD656271 | 7295 | n/a | Third Party - 1120 W Mallory Ave Milwaukee, WI | *Coon's Truck and Trailer* |
| 93 | 1XPBAK9X9LD656260 | 7295 | 332 | | |
| 94 | 1XPBAK9X9LD656273 | 9895 | n/a | Third Party - to be confirmed | |
| 95 | 1XPBAK9X0LD656289 | 9895 | 421 | | |
| 96 | 1XPBAK9X9LD656288 | 9895 | 366 | | |
| 97 | 1XPBAK9X7LD656287 | 9895 | 328 | | |
| 98 | 1XPBAK9X5LD656286 | 9895 | 208 | | |
| 99 | 1XPBAK9X3LD656285 | 9895 | 368 | | |
| 100 | 1XPBAK9X1LD656284 | 9895 | 208 | | |
| 101 | 1XPBAK9XXLD656283 | 9895 | n/a | Third Party - to be confirmed | |
| 102 | 1XPBAK9X8LD656282 | 9895 | n/a | Third Party - to be confirmed | |
| 103 | 1XPBAK9X6LD656281 | 9895 | 208 | | |
| 104 | 1XPBAK9X4LD656280 | 9895 | 263 | | |
| 105 | 1XPBAK9X9LD656278 | 9895 | 263 | | |
| 106 | 1XPBAK9X4LD656277 | 9895 | n/a | Third Party - to be confirmed | |
| 107 | 1XPBAK9X2LD656276 | 9895 | 385 | | |
| 108 | 1XPBAK9X0LD656275 | 9895 | 357 | | |
| 109 | 1XPBAK9X9LD656274 | 9895 | 357 | | |
| 110 | 1XPBAK9X7LD656273 | 9895 | n/a | Third Party - 1120 W Mallory Ave Milwaukee, WI | *Coon's Truck and Trailer* |
| 111 | 1XPBAK9X8LD656301 | 1354 | 397 | | |
| 112 | 1XPBAK9X6LD656300 | 1354 | 339 | | |
| 113 | 1XPBAK9X9LD656299 | 1354 | 358 | | |
| 114 | 1XPBAK9X1LD656298 | 1354 | 424 | | |
| 115 | 1XPBAK9XXLD656297 | 1354 | 311 | | |
| 116 | 1XPBAK9X6LD656295 | 1354 | 332 | | |
| 117 | 1XPBAK9X2LD656293 | 1354 | 331 | | |
| 118 | 1XPBAK9X0LD656292 | 1354 | 331 | | |
| 119 | 1XPBAK9X0LD656308 | 4457 | 311 | | |
| 120 | 1XPBAK9X9LD656307 | 4457 | 339 | | |
| 121 | 1XPBAK9XXLD656302 | 4457 | n/a | Third Party - to be confirmed | |
| 122 | 1XPBAK9X8LD656296 | 4457 | 332 | | |
| 123 | 1XPBAK9X4LD656294 | 4457 | 332 | | |
| 124 | 1XPBAK9X7LD656290 | 4457 | 421 | | |
| 125 | 1XPBAK9X8LD656329 | 7419 | 331 | | |
| 126 | 1XPBAK9X6LD656328 | 7419 | 357 | | |
| 127 | 1XPBAK9X1LD656317 | 7419 | 360 | 3801 Mound Road , Joliet, IL 60436 | *Accident - legal hold  5* |
| 128 | 1XPBAK9XXLD656316 | 7419 | 245 | | |
| 129 | 1XPBAK9X8LD656315 | 7419 | 323 | | |
| 130 | 1XPBAK9X6LD656314 | 7419 | 358 | | |
| 131 | 1XPBAK9X4LD656313 | 7419 | 368 | | |
| 132 | 1XPBAK9X2LD656312 | 7419 | n/a | Third Party - to be confirmed | |
| 133 | 1XPBAK9X0LD656311 | 7419 | 329 | | |
| 134 | 1XPBAK9X9LD656310 | 7419 | 357 | | |
| 135 | 1XPBAK9X2LD656309 | 7419 | 339 | | |
| 136 | 1XPBAK9X7LD656306 | 7419 | 360 | 3801 Mound Road , Joliet, IL 60436 | *Accident - legal hold  6* |
| 137 | 1XPBAK9X5LD656305 | 7419 | 332 | | |
| 138 | 1XPBAK9X3LD656304 | 7419 | n/a | Third Party - to be confirmed | |
| 139 | 1XPBAK9X1LD656303 | 7419 | 332 | | |
| 140 | 1XPBAK9X7LD656368 | 470 | 262 | | |
| 141 | 1XPBAK9X5LD656367 | 470 | 244 | | |
| 142 | 1XPBAK9X4LD656327 | 470 | 357 | | |
| 143 | 1XPBAK9X2LD656326 | 470 | 329 | | |
| 144 | 1XPBAK9X0LD656325 | 470 | 385 | | |
| 145 | 1XPBAK9X7LD656322 | 470 | 329 | | |
| 146 | 1XPBAK9X5LD656322 | 470 | 329 | | |
| 147 | 1XPBAK9X3LD656321 | 470 | n/a | Third Party - 1120 W Mallory Ave Milwaukee, WI | *Coon's Truck and Trailer* |
| 148 | 1XPBAK9X1LD656320 | 470 | 364 | | |
| 149 | 1XPBAK9X5LD656319 | 5610 | 329 | | |
| 150 | 1XPBAK9X3LD656366 | 5610 | 366 | | |
| 151 | 1XPBAK9X8LD656363 | 5610 | 366 | | |
| 152 | 1XPBAK9X4LD656344 | 5610 | 330 | | |
| 153 | 1XPBAK9X2LD656343 | 5610 | 339 | | |
| 154 | 1XPBAK9X0LD656342 | 5610 | 419 | | |
| 155 | 1XPBAK9X9LD656341 | 5610 | 319 | | |
| 156 | 1XPBAK9X1LD656379 | 8820 | 424 | | |
| 157 | 1XPBAK9X8LD656377 | 8820 | 366 | | |
| 158 | 1XPBAK9X4LD656375 | 8820 | 245 | | |
| 159 | 1XPBAK9X2LD656374 | 8820 | 409 | | |
| 160 | 1XPBAK9X0LD656373 | 8820 | 357 | | |
| 161 | 1XPBAK9X9LD656372 | 8820 | 682 | | |
| 162 | 1XPBAK9X1LD656365 | 8820 | n/a | Third Party - to be confirmed | |
| 163 | 1XPBAK9XXLD656364 | 8820 | n/a | Third Party - to be confirmed | |
| 164 | 1XPBAK9X6LD656362 | 8820 | 332 | | |

Yellow Corporation                                                          *DRAFT - SUBJECT TO MATERIAL REVISION*

*PACCAR Financial - Leased Vehicle Locations*

| Number | VIN Number | Lease Acct | Terminal | Location | Additional Notes |
|---|---|---|---|---|---|
| 165 | 1XPBAK9X4LD656361 | 8820 | 332 | | |
| 166 | 1XPBAK9X2LD656360 | 8820 | 330 | | |
| 167 | 1XPBAK9X3LD656335 | 8820 | 332 | | |
| 168 | 1XPBAK9XXLD656333 | 8820 | 350 | | |
| 169 | 1XPBAK9X8LD656332 | 8820 | 350 | | |
| 170 | 1XPBAK9X6LD656331 | 8820 | 262 | | |
| 171 | 1XPBAK9X4LD656330 | 8820 | 425 | | |
| 172 | 1XPBAK9X9LD656324 | 8820 | 345 | | |
| 173 | 1XPBAK9X3LD656318 | 8820 | 360 | | |
| 174 | 1XPBAK9X7LD656371 | 3275 | 331 | | |
| 175 | 1XPBAK9X9LD656369 | 3275 | 339 | | |
| 176 | 1XPBAK9X4LD656358 | 3275 | 339 | | |
| 177 | 1XPBAK9X5LD656353 | 3275 | 357 | | |
| 178 | 1XPBAK9X3LD656352 | 3275 | 322 | | |
| 179 | 1XPBAK9X1LD656351 | 3275 | 331 | | |
| 180 | 1XPBAK9X7LD656340 | 3275 | 331 | | |
| 181 | 1XPBAK9X0LD656339 | 3275 | 386 | | |
| 182 | 1XPBAK9X9LD656338 | 3275 | 403 | | |
| 183 | 1XPBAK9X7LD656337 | 3275 | n/a | Third Party - to be confirmed | |
| 184 | 1XPBAK9X5LD656336 | 3275 | 433 | | |
| 185 | 1XPBAK9X1LD656334 | 3275 | 357 | | |
| 186 | 1XPBAK9X1LD677426 | 3929 | 364 | | |
| 187 | 1XPBAK9XXLD677425 | 3929 | 403 | | |
| 188 | 1XPBAK9X8LD677424 | 3929 | 421 | | |
| 189 | 1XPBAK9X6LD677423 | 3929 | 395 | | |
| 190 | 1XPBAK9X4LD677419 | 3929 | 395 | | |
| 191 | 1XPBAK9X0LD677417 | 3929 | 330 | | |
| 192 | 1XPBAK9XXLD656378 | 3929 | 208 | | |
| 193 | 1XPBAK9X2LD656357 | 3929 | 419 | | |
| 194 | 1XPBAK9X7LD656354 | 3929 | n/a | Third Party - 1120 W Mallory Ave Milwaukee, WI | *Coon's Truck and Trailer* |
| 195 | 1XPBAK9X1LD656348 | 3929 | 337 | | |
| 196 | 1XPBAK9XXLD656347 | 3929 | 357 | | |
| 197 | 1XPBAK9X8LD656346 | 3929 | n/a | Third Party - to be confirmed | |
| 198 | 1XPBAK9XXLD691566 | 5429 | 371 | | |
| 199 | 1XPBAK9X8LD691565 | 5429 | 360 | | |
| 200 | 1XPBAK9X6LD691564 | 5429 | 320 | | |
| 201 | 1XPBAK9X4LD691563 | 5429 | n/a | Third Party - to be confirmed | |
| 202 | 1XPBAK9X2LD691562 | 5429 | n/a | Third Party - to be confirmed | |
| 203 | 1XPBAK9X0LD691561 | 5429 | n/a | Third Party - to be confirmed | |
| 204 | 1XPBAK9X9LD691560 | 5429 | 350 | | |
| 205 | 1XPBAK9X3LD677427 | 5429 | 416 | | |
| 206 | 1XPBAK9X4LD677422 | 5429 | 436 | | |
| 207 | 1XPBAK9X0LD677420 | 5429 | n/a | Third Party - 1120 W Mallory Ave Milwaukee, WI | *Coon's Truck and Trailer* |
| 208 | 1XPBAK9X2LD677418 | 5429 | n/a | Third Party - to be confirmed | |
| 209 | 1XPBAK9X9LD677416 | 5429 | n/a | Third Party - to be confirmed | |
| 210 | 1XPBAK9X6LD656376 | 5429 | 330 | | |
| 211 | 1XPBAK9X5LD656370 | 5429 | 345 | | |
| 212 | 1XPBAK9X6LD656359 | 5429 | n/a | Third Party - to be confirmed | |
| 213 | 1XPBAK9X0LD656356 | 5429 | 322 | | |
| 214 | 1XPBAK9X9LD656355 | 5429 | 323 | | |
| 215 | 1XPBAK9XXLD656350 | 5429 | 332 | | |
| 216 | 1XPBAK9X3LD656349 | 5429 | 350 | | |
| 217 | 1XPBDK9X6LD691569 | 7805 | 371 | | |
| 218 | 1XPBAK9X3LD691568 | 7805 | 360 | | |
| 219 | 1XPBAK9X1LD691567 | 7805 | 360 | | |
| 220 | 1XPBAK9X2LD691559 | 7805 | 671 | | |
| 221 | 1XPBAK9X0LD691558 | 7805 | 425 | | |
| 222 | 1XPBAK9X9LD691557 | 7805 | 425 | | |
| 223 | 1XPBAK9X7LD691556 | 7805 | 682 | | |
| 224 | 1XPBAK9X5LD691555 | 7805 | 682 | | |
| 225 | 1XPBAK9X3LD691554 | 7805 | 419 | | |
| 226 | 1XPBAK9X1LD691553 | 7805 | n/a | Third Party - to be confirmed | |
| 227 | 1XPBAK9XXLD691552 | 7805 | 357 | | |
| 228 | 1XPBAK9X8LD691551 | 7805 | 350 | | |
| 229 | 1XPBAK9X6LD691550 | 7805 | 357 | | |
| 230 | 1XPBAK9X2LD677435 | 7805 | n/a | Third Party - to be confirmed | |
| 231 | 1XPBAK9X0LD677434 | 7805 | 331 | | |
| 232 | 1XPBAK9X9LD677433 | 7805 | 290 | | |
| 233 | 1XPBAK9X7LD677432 | 7805 | 322 | | |
| 234 | 1XPBAK9X5LD677431 | 7805 | 345 | | |
| 235 | 1XPBAK9X3LD677430 | 7805 | 350 | | |
| 236 | 1XPBAK9X7LD677429 | 7805 | 386 | | |
| 237 | 1XPBAK9X5LD677428 | 7805 | n/a | Third Party - to be confirmed | |
| 238 | 1XPBAK9X2LD677421 | 7805 | 395 | | |
| 239 | 1XPBAK8X8LD661029 | 946 | 124 | | |
| 240 | 1XPBAK8XXLD661033 | 4673 | n/a | Third Party - to be confirmed | |
| 241 | 1XPBAK8X6LD661032 | 4673 | 113 | | |
| 242 | 1XPBAK8X6LD661031 | 4673 | 124 | | |
| 243 | 1XPBAK8X5LD661036 | 4673 | 113 | | |
| 244 | 1XPBAK8X1LD661034 | 4673 | 118 | | |
| 245 | 1XPBAK8X9LD661041 | 7841 | 124 | | |
| 246 | 1XPBAK8X9LD661038 | 7841 | 102 | | |

**Yellow Corporation**
*PACCAR Financial - Leased Vehicle Locations*                                              *DRAFT - SUBJECT TO MATERIAL REVISION*

| Number | VIN Number | Lease Acct | Terminal | Location | Additional Notes |
|---|---|---|---|---|---|
| 247 | 1XPBAK8X7LD661040 | 7841 | 103 | | |
| 248 | 1XPBAK8X4LD661030 | 7841 | 133 | | |
| 249 | 1XPBAK8X3LD661035 | 7841 | 105 | | |
| 250 | 1XPBAK8X0LD661039 | 7841 | 130 | | |
| 251 | 1XPBAK8X7LD661037 | 9789 | 130 | | |
| 252 | 1XPBAK8X2LD661043 | 9789 | 130 | | |
| 253 | 1XPBAK8X0LD661042 | 9789 | 124 | | |
| 254 | 2NP2HM7X9LM674563 | 4837 | 107 | | |
| 255 | 2NP2HM7X0LM674564 | 4837 | 107 | | |
| 256 | 2NP2HM7X5LM674558 | 7970 | 105 | | |
| 257 | 2NP2HM7X3LM674557 | 7970 | 105 | | |
| 258 | 2NP2HM7X5LM674561 | 7988 | 106 | | |
| 259 | 2NP2HM7X6LM674553 | 8028 | 107 | | |
| 260 | 2NP2HM7X4LM674566 | 8028 | 107 | | |
| 261 | 2NP2HM7XXLM674555 | 3838 | 107 | | |
| 262 | 2NP2HM7X8LM674554 | 3838 | 107 | | |
| 263 | 2NP2HM7X7LM674562 | 3861 | 105 | | |
| 264 | 2NP2HM7X6LM674567 | 3903 | 128 | | |
| 265 | 2NP2HM7X3LM674560 | 4067 | 105 | | |
| 266 | 2NP2HM7X8LM674568 | 4091 | 114 | | |
| 267 | 2NP2HM7X1LM674556 | 1302 | 105 | | |
| 268 | 2NP2HM7X7LM674559 | 1351 | 109 | | |
| 269 | 2NP2HM7X4LM674552 | 1377 | 107 | | |
| 270 | 2NP2HM7X2LM674565 | 1377 | 107 | | |
| 271 | 1XPBA48X9LD658572 | 3650 | 815 | | |
| 272 | 1XPBA48X5LD658584 | 9145 | 915 | | |
| 273 | 1XPBA48XXLD658578 | 9145 | 501 | | |
| 274 | 1XPBD49X5LD658686 | 9160 | 527 | | |
| 275 | 1XPBD49X3LD658685 | 9160 | 527 | | |
| 276 | 1XPBD49XXLD658683 | 424 | 815 | | |
| 277 | 1XPBD49X6LD658681 | 424 | 527 | | |
| 278 | 1XPBD49X4LD658680 | 424 | 527 | | |
| 279 | 1XPBD49X6LD658678 | 424 | 589 | | |
| 280 | 1XPBD49X1LD658684 | 2578 | 527 | | |
| 281 | 1XPBD49X8LD658682 | 2578 | 589 | | |
| 282 | 1XPBD49X8LD658679 | 2578 | 878 | | |
| 283 | 1XPBA48X2LD658588 | 4590 | 868 | | |
| 284 | 1XPBA48X3LD658583 | 4590 | 866 | | |
| 285 | 1XPBA48X1LD658582 | 4590 | 915 | | |
| 286 | 1XPBA48X8LD658580 | 4590 | 575 | | |
| 287 | 1XPBA48X8LD658577 | 4590 | 915 | | |
| 288 | 1XPBA48X6LD658576 | 4590 | 878 | | |
| 289 | 1XPBA48X2LD658574 | 4590 | 878 | | |
| 290 | 1XPBA48X3LD658602 | 7601 | 849 | | |
| 291 | 1XPBA48X1LD658601 | 7601 | 849 | | |
| 292 | 1XPBA48XXLD658600 | 7601 | 878 | | |
| 293 | 1XPBA48X7LD658599 | 7601 | 849 | | |
| 294 | 1XPBA48X5LD658598 | 7601 | 519 | | |
| 295 | 1XPBA48X3LD658597 | 7601 | 517 | | |
| 296 | 1XPBA48X1LD658596 | 7601 | 517 | | |
| 297 | 1XPBA48XXLD658595 | 7601 | 527 | | |
| 298 | 1XPBA48X8LD658594 | 7601 | 829 | | |
| 299 | 1XPBA48X4LD658592 | 7601 | 915 | | |
| 300 | 1XPBA48X2LD658591 | 7601 | 519 | | |
| 301 | 1XPBA48X4LD658589 | 7601 | 849 | | |
| 302 | 1XPBA48X9LD658586 | 7601 | 849 | | |
| 303 | 1XPBA48X7LD658585 | 7601 | 519 | | |
| 304 | 1XPBA48X2LD658607 | 3518 | 783 | | |
| 305 | 1XPBA48X0LD658606 | 3518 | 829 | | |
| 306 | 1XPBA48X9LD658605 | 3518 | 830 | | |
| 307 | 1XPBA48X7LD658604 | 3518 | 847 | | |
| 308 | 1XPBA48X5LD658603 | 3518 | 524 | | |
| 309 | 1XPBA48X6LD658612 | 1586 | 813 | | |
| 310 | 1XPBA48X2LD658610 | 1586 | 519 | | |
| 311 | 1XPBA48X6LD658609 | 1586 | 813 | | |
| 312 | 1XPBA48X5LD658617 | 5793 | 633 | | |
| 313 | 1XPBA48X3LD658616 | 5793 | 512 | | |
| 314 | 1XPBA48X1LD658615 | 5793 | 829 | | |
| 315 | 1XPBA48XXLD658614 | 5793 | 915 | | |
| 316 | 1XPBA48X8LD658613 | 5793 | 829 | | |
| 317 | 1XPBA48X4LD658611 | 5793 | 630 | | |
| 318 | 1XPBA48X4LD658608 | 5793 | 501 | | |
| 319 | 1XPBA48X7LD658621 | 553 | 813 | 1535 E Pescadero Avenue , Tracy , 95304 | *Accident - legal hold  7* |
| 320 | 1XPBA48X5LD658620 | 553 | 878 | | |
| 321 | 1XPBA48X9LD658619 | 553 | 836 | | |
| 322 | 1XPBA48X7LD658618 | 553 | 849 | | |

