**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) ) ) | Case No. 23-11069-CTG |
| Debtors. | ) ) ) | Jointly Administered |
| | ) ) | Objection Deadline: 10/16/23 at 4:00 p.m.<br>Hearing Date: 10/23/23 at 10:00 a.m. |

**MOTION OF DONNA LEE DAUGHERTY**
**FOR ORDER PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY**
**CODE, BANKRUPTCY RULE 4001 AND LOCAL BANKRUPTCY RULE**
**4001-1 MODIFYING THE AUTOMATIC STAY TO ALLOW**
**CONTINUATION OF WRONGFUL DEATH LITIGATION**

Donna Daugherty, individually and as administratrix of the estate of her late husband, Norman Eugene Daugherty, is the plaintiff in a wrongful death action pending against YRC, Inc. ("YRC") in the United States District Court for the Northern District of Georgia (the "Wrongful Death Litigation"). Ms. Daugherty, by and through her attorneys, brings this motion (the "Motion") pursuant to section 362(d) of Title 11, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 4001-1 for an order modifying the automatic stay to allow the Wrongful Death Litigation against YRC, Inc. to continue in the United States District Court for the Northern District of Georgia.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

{00036889. }

**Preliminary Statement**

1.  Abundant and compelling grounds exist to modify the automatic stay to permit the Wrongful Death Litigation to proceed. Pursuant to 28 U.S.C. § 157, this Court may not determine and liquidate the Plaintiff's claims. Accordingly, her claims must be tried elsewhere. A quick review of the balance of harms between Ms. Daugherty and the Debtors demonstrates that allowing the litigation to proceed in Federal District Court as scheduled is the appropriate and correct result.

2.  Ms. Daugherty commenced litigation more than three years ago, and fact and expert discovery in the Wrongful Death Litigation are fully complete. All *Daubert* and dispositive pre-trial motions have been filed and fully briefed. The case is ready to proceed to trial. Forcing Ms. Daugherty to wait now, when the trial is on the doorstep, would cause substantial prejudice and harm to her and be a waste of precious time, money, and judicial resources. More importantly, the Debtors have substantial and multiple layers of liability insurance in place to cover personal injury and wrongful death cases, such as Ms. Daugherty's case, that arise from the operation of their trucking businesses. Indeed, the Debtors sought and have obtained approval from this Court to continue to pay the premiums for all such coverage. The insurance coverage available to the Debtors is available to compensate the Plaintiff for the pre-petition losses caused by the negligence of Debtor YRC.

3.  In contrast, the Debtors would suffer little prejudice if the stay were modified. The Debtors have substantial insurance coverage. Based on information and belief, the Debtors' insurance company has been paying for the Debtors' trial counsel's legal fees in defending the Wrongful Death Litigation and will continue to pay such trial counsel to direct the defense at trial or settlement discussions. None of the witnesses deposed by the Plaintiff were members of

the Debtors' senior management who may be responsible for the orderly liquidation of the Debtors' assets. Thus, permitting the action to proceed against the Debtors in Federal District Court will not disrupt the Debtors' liquidation and nor will it impose material costs on the Debtors' estates. For these reasons, the Court should modify the automatic stay to permit the Plaintiff to liquidate her claims against YRC in the Federal District Court in which her case is currently pending.

## STATEMENT OF FACTS

**The Collision**

4.   On March 25, 2020, at approximately 3:20 PM YRC employee Larry Ingram crashed a loaded YRC tandem tractor trailer rig into the rear of Norman Eugene Daugherty's stopped Toyota Corolla in rush hour traffic on US Interstate Highway 85 North, in Gwinnett County, Georgia. In the seconds leading up to the collision, YRC's driver was tailgating a vehicle in front of him and accelerating blindly at 100% throttle. Traffic ahead of the accelerating tandem rig had come to a stop. The vehicle in front of the YRC rig moved to the left and avoided the stopped traffic. The YRC truck crashed into Mr. Daugherty's stationary car. The force of the collision destroyed Mr. Daugherty's vehicle, set off a chain reaction and scattered cars across the interstate highway. Mr. Daugherty was fatally injured in the collision and died of his injuries on April 12, 2020. Dorr Decl. ¶ 4.

**The Daugherty Litigation**

5. Soon after the collision, Ms. Daugherty brought an action in the State Court of Gwinnett County, Georgia against YRC, its employee Larry Ingram and Luis Burgos, the driver of the first vehicle in the line of stopped traffic and demanded a jury trial. She voluntarily dismissed that action after completion of extensive fact and expert discovery. Dorr Decl. ¶ 5, Ex. C, D.

6. On March 29, 2022, Ms. Daugherty filed this action in the Superior Court of Gwinnett County, Georgia and demanded a jury trial. On May 5, 2022, YRC removed the action to the United States District Court for the Northern District of Georgia, on the basis of diversity. Fact and expert discovery are complete. Mr. Burgos, who is believed to have left the United States and returned to Colombia, has been dismissed. All *Daubert* and dispositive motions have been filed and fully briefed. The case is ready to proceed to trial. Dorr Decl. ¶ 6, Ex. E, F, G, H, I.

7. The Debtors' employees deposed during discovery were truck drivers, low level supervisors or similar low-level employees. None are members of senior management involved in the Debtors' financial affairs, and it is highly improbable that the Debtors' witnesses are or will be involved in the liquidation described in the Debtors' first day papers. YRC has since terminated the employees who were deposed. Plaintiffs do not expect to require any live testimony from any of the Debtors' current employees at trial. Dorr Decl. ¶ 10.

8. Upon information and belief, based on the Debtors' regulatory filings and motions practice in this proceeding, the Debtors have $6 million in primary liability coverage and multiple layers of excess liability insurance and umbrella coverage for the claims asserted in the Daugherty Litigation. Dorr Decl. ¶ 11, Ex. L; Doc. 6, Motion of Debtors for Entry of Interim

and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance Coverage Entered into Prepetition and Pay Related Prepetition Obligations and (B) Renew, Supplement, Modify, or Purchase Insurance Coverage, (II) Approving Continuation of the Surety Bond Program, and (III) Granting Related Relief.

9. On August 10, 2023, YRC filed a Notice of Filing Bankruptcy and Stay in the Wrongful Death Litigation, because of which, the Wrongful Death Litigation has been stayed. Dorr Decl. ¶ 9, Ex. J, K.

**The Bankruptcy Proceedings**

10. On August 6. 2023, the Debtors filed their petitions under Chapter 11 of the Bankruptcy Code.

## JURISDICTION

11. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this Motion is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G).

## ARGUMENT

**THE COURT SHOULD MODIFY THE AUTOMATIC STAY
TO ALLOW THE WRONGFUL DEATH LITIGATION TO PROCEED TO JUDGMENT**

12. The statutory predicates for the relief requested herein are sections 362(a) and (d) of the Bankruptcy Code. The Court should enter an order modifying the automatic stay pursuant to section 362(d) of the Bankruptcy Code allowing the Wrongful Death Litigation to proceed to final judgment against Debtor YRC for several reasons. First, this Court may not determine and liquidate the personal injury and wrongful death claims that are at the heart of the Wrongful Death Litigation. Moreover, if the Court does not modify the automatic stay, Ms. Daugherty will needlessly be forced to wait indefinitely to proceed with the Wrongful Death Litigation against

YRC. Judicial efficiency will be served if the Federal District Court is permitted to resolve the litigation and the balance of hardships mandates that the trial proceed in the Federal District Court now rather than later. Discovery is complete and the case is ready for trial. Finally, permitting the Wrongful Death Litigation to proceed will have minimal impact on the Debtors and their estates. None of the members of senior management who are involved in the Debtors' financial affairs are expected to testify at trial, and on information and belief the Debtors have insurance coverage for the full amount of any judgment against them. These facts mandate modification of the automatic stay to permit the Wrongful Death Litigation to proceed against YRC.

A.    **Standards for Modification of the Automatic Stay**

13.    Section 362(d) of the Bankruptcy Code provides that the automatic stay shall be modified for "cause." 11 U.S.C. § 362(d)(1). Courts in this district generally apply a three-prong balancing test to determine whether cause exists to grant relief from the automatic stay, considering: (1) whether any great prejudice to either the chapter 11 estate or the debtor will result from continuation of the civil suit, (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor and (3) the probability of the creditor prevailing on the merits. In re Cooke, 2007 WL 2102689 (Bankr. D. Del. July 13, 2007) (lifting stay to allow chancery court action to proceed); Izzarelli v. Rexene (In re Rexene Prods. Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992) (finding the plaintiffs were entitled to relief from stay in order to prosecute class action against debtor because discovery was nearly complete and both parties were ready for trial).

14.    Other Delaware courts have cited with approval the Second Circuit's multi-factor "Sonnax" test. In re The SCO Group, Inc., 2007 WL 4224407, at *3 (Bankr. D. Del. Nov. 27,

2007) (finding cause to lift the stay because the district court case was ready for trial and both parties had already spent all the necessary time and resources in preparation); Cooke, 2007 WL 2102689, at *l. The Sonnax factors require a court to consider (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceedings; and (12) impact of the stay on other parties and the balance of the harms. SCO Group, 2007 WL 4224407, at *3 (citing Sonnax Indus., Inc. v. TRI Component Products Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2nd Cir. 1990)); see also In re Godt, 282 B.R. 577, 585 (E.D.N.Y. 2002) (affirming bankruptcy court decision to lift stay to allow malpractice actions to proceed against chapter 7 debtor); In re Larkham, 31 B.R. 273, 276 (Bankr. D. Vt. 1983) (lifting stay to allow continuation of employment discrimination case).[2]

---

[2] Courts in other circuits have articulated slightly different versions of this standard. In practice, however, these standards are likely to lead to similar results. See, e.g., In re Bock Laundry Machine Co., 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984) ("Courts have regarded the opportunity to litigate the issue of liability as a significant right which cannot be easily set aside . . . and have also considered as significant the judicial economy of continuing existing actions rather than beginning the suit anew in another forum").

15. In applying the Sonnax standards, "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties in their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." Matter of Holtkamp, 669 F.2d 505, 508 (7th Cir. 1982) (citing S. Rep. No 989, 95th Cong., 2d Sess. 50 *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836) (affirming decision to lift stay to allow personal injury case to proceed because the civil action did not jeopardize estate where the insurer assumed full financial responsibility for defending the litigation); see also SCO Group, 2007 WL 4224407, at *3. Not all of the Sonnax factors are relevant in each case,[3] and the Court need not assign equal weight to each factor. In re New York Med. Group, P.C., 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (modifying the automatic stay to allow medical malpractice suit to proceed against liquidating debtor).

B. **Both the Balancing Test and the Sonnax Factors Require Modification of the Automatic Stay to Permit The Wrongful Death Litigation to Continue to Judgment**

16. All of the relevant factors under the three-pronged test and Sonnax mandate modification of the automatic stay to permit the Wrongful Death Litigation to proceed to final judgment. First, this Court may not liquidate the personal injury and wrongful death claims. New York Medical Group, 265 B.R. at 412 (citing In re U.S. Lines, Inc., 1998 WL 382023, at *4 (S.D.N.Y. July 9, 1998)). When the bankruptcy court may not liquidate pre-petition claims, the stay should be modified to permit the action to continue in the original court. See Cooke, 2007 WL 2102687, at *3. These wrongful death and personal injury tort claims must, therefore, be tried in a non-bankruptcy court. New York Med. Group, 265 B.R. at 412-13 (modifying stay to permit medical malpractice claim to be liquidated in state court); In re Todd Shipyards Corp., 92

---

[3] For example, this case does not involve fiduciary principles, would not give rise to a claim subject to equitable subordination or to a judicial lien that could be avoided by the debtor, and does not involve third parties.

B.R. 600, 604 (Bankr. D.N.J. 1988) (modifying stay to allow personal injury claimants to proceed with state court action against debtor).[4]

17. Furthermore, severe prejudice to Ms. Daugherty may result if the stay is not modified.

18. In contrast, neither the Debtors nor the chapter 11 estates will be prejudiced in any significant degree, nor will material burdens be imposed on the Debtors if the Court permits the Wrongful Death Litigation to proceed in the Federal District Court. Fact discovery is complete. None of the witnesses deposed by the Plaintiff were members of the Debtors' senior management involved in financial affairs, and given the nature of the facts in dispute, the Plaintiff does not believe that any of the members of the Debtors' senior management whose attention to the bankruptcy case may be essential will be required as witnesses at the trial.

19. Moreover, upon information and belief, because the Debtors have substantial insurance coverage for their potential liability related to the litigation, and because the Debtors' insurer has paid the legal fees of trial counsel that the Debtors have incurred in the Wrongful Death Litigation, the Debtors' exposure with respect to any settlement or judgment is limited to their share of the costs other than legal fees. See In re 15375 Memorial Corp., 382 B.R. 652, 689 (Bankr. D. Del. 2008) (noting that because insurance policy proceeds will be available only to creditors with the types of claims covered by the policy, there is no depletion of assets by allowing the prepetition litigation to continue against the insurance proceeds).[5]

---

[4]  28 U.S.C. § 157(d)(5), which provides that "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending," applies only to claims that originated in the bankruptcy court, and does not enable the district court to remove personal injury and wrongful death claims pending as of the petition date in state courts. In re Dow Corning Corp., 1995 WL 495978 (Bankr. E.D. Mich. 1995); In re U.S. Lines, 128 B.R. 339, 340 (Bankr. S.D.N.Y. 1991).

[5]  In the Third Circuit, litigation expenses alone do not justify enjoining litigation against a debtor. See Todd Shipyards, 92 B.R. at 603 (citing Matter of Nkongho, 59 B.R. 85, 86 (Bankr. D.N.J. 1986), quoting Matter of Nicholas, 55 B.R. 212, 217 (Bankr. D.N.J. 1985), citing In re Davis, 691 F.2d 176, 178 (3rd Cir. 1982), quoting

20. If, as appears to be the case from the Debtors' statements and motions practice in this proceeding, the Debtors have insurance in place for the claims of Plaintiff. Thus, modifying the stay to permit the Plaintiff to liquidate her claim, and ultimately to collect it from the insurance proceeds, will cause no harm to the other unsecured creditors.

21. Certainly, relief from the automatic stay will ensure judicial economy and will allow the most efficient and expeditious resolution of Ms. Daugherty's claims, which have been pending for more than three years, with fact discovery, expert discovery and dispositive motions practice complete. In similar circumstances, courts have frequently modified the automatic stay to allow prepetition litigation to continue where discovery has already taken place (or is well underway). See Packerland Packing Co. v. Giffith Brokerage Co. (In re Kemble), 776 F.2d 802, 807 (9th Cir. 1985) (affirming decision to modify the stay where trial was pending); In re Fischer, 202 B.R. at 355 (granting stay relief to allow civil RICO claims to proceed where discovery was near completion); Rexene, 141 B.R. 574 (granting relief from stay where document discovery had been completed and only a few depositions remained).

22. Modifying the stay to allow the Wrongful Death Litigation to continue would be the most efficient and cost-effective way to achieve complete resolution of the issues raised in her case. Moreover, it would be unfair to force Ms. Dauhgerty to wait indefinitely to obtain recovery from the Debtors' insurance when the burden on the Debtors of permitting the trial to go forward is so minimal. For these reasons, judicial economy, and the interest in expediting complete resolution of the issues raised by the Wrongful Death Litigation requires that Ms. Daugherty's personal injury and wrongful death claims that cannot be decided in the bankruptcy

---

Younger v. Harris, 401 U.S. 37, 46 (1971)). Thus, the costs the Debtors may be required to bear do not support denial of the Motion.

court - be resolved in the non-bankruptcy courts in which the claims were commenced. Larkham, 31 B.R. at 276; Cooke, 2007 WL 2102687, at *3.

23.     The automatic stay should be modified where the purposes of section 362(a) of the Bankruptcy Code - "protect[ing] property that may be necessary for the debtor's fresh start and . . . provid[ing] breathing space to permit the debtor to focus on its rehabilitation or reorganization . . . [and] prevent[ing] the dismemberment of a debtor's assets by individual creditors levying on the property"[6] would not be served by leaving the stay in effect. See, e.g., American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 152 B.R. 420, 426 (D. Del. 1993) (finding cause existed to lift the automatic stay to permit movant to file motion in federal district court). In this case, enforcing the automatic stay would not promote any of these policies. As discussed above, the Wrongful Death Litigation will not dismember the estate because the Plaintiff will look principally to the insurance proceeds for any recovery and will not have a claim on any property the debtor might need for its fresh start. And in any event, as noted above, none of the Debtors' senior management involved in the bankruptcy case are likely to be required to testify at the trial, permitting the trial to proceed will not interfere with the breathing room the Debtors need to reorganize.

24.     Finally, policy concerns mandate modification of the automatic stay in this case. In enacting the Bankruptcy Code, Congress noted that while the automatic stay had broad application "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties in their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." Holtkamp, 669 F.2d at 508 (citing S. Rep. No 989, 95th Cong., 2d Sess. 50 *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836). Here, where it would increase efficiency to have

---

[6]     3 COLLIER ON BANKRUPTCY ¶ 362.03, at 362-13 (15th ed. rev. 2006).

the claims against YRC heard in the court where those claims were originally brought and where no prejudice to the bankruptcy estate would result from modifying the stay to allow the Wrongful Death Litigation to continue in the Federal District Court, public policy dictates that the Court modify the automatic stay.

## NO PRIOR REQUEST

No prior request for the relief sought herein has been made to this or any other court.

## CONCLUSION

For the reasons set forth above, Donna Lee Daugherty respectfully requests that this Court enter an order substantially in the form attached as Exhibit A, modifying the automatic stay to allow continuation of the Daugherty Litigation; and granting such other and further relief as is just and proper under the circumstances.

Dated: Wilmington, Delaware
October 5, 2023

**THE ROSNER LAW GROUP LLC**

*/s/Frederick B. Rosner*
Frederick B. Rosner (#3995)
824 N. Market Street
Suite 810
Wilmington, DE  19801
rosner@teamrosner.com

CHARLES E. DORR, P.C.
Charles E. Dorr
201 West Jefferson Street
Madison, Georgia 30650
(713) 443-7030
chuck@dorrlaw.com

*Counsel to Movant*