# Exhibit B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DONNA LEE DAUGHERTY, | ) | |
| INDIVIDUALLY AND DONNA | ) | CIVIL ACTION FILE No: |
| LEE DAUGHERTY AS | ) | |
| ADMINISTRATRIX OF THE | ) | 1:22-cv-01777-SEG |
| ESTATE OF NORMAN EUGENE | ) | |
| DAUGHERTY, JR., DECEASED, | ) | |
| | ) | REMOVED FROM SUPERIOR |
| Plaintiffs | ) | COURT OF GWINNETT COUNTY |
| | ) | CIVIL ACTION FILE NO. |
| vs. | ) | 22-A-02616-4 |
| | ) | |
| YRC INC. AND YRC INC. D/B/A YRC | ) | |
| FREIGHT AND LUIS BURGOS, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT YRC, INC. AND YRC, INC. D/B/A YRC FREIGHT'S MOTION FOR SUMMARY JUDGMENT

COME NOW, Plaintiffs and file this, their BRIEF IN OPPOSITION TO DEFENDANT YRC, INC. AND YRC, INC. D/B/A YRC FREIGHT'S MOTION FOR SUMMARY JUDGMENT, and show this honorable court as follows:

## PRELIMINARY STATEMENT

This case arises out of a preventable collision which took the life of Norman ("Ned") Eugene Daugherty, Jr.

On March 25, 2020 Defendant's employee, Larry Ingram, crashed a 70 foot-long tandem tractor-trailer rig (a Volvo tractor pulling two loaded trailers) into the

rear end of Mr. Daugherty's 2014 Toyota Corolla which had safely come to a stop in rush hour traffic on US Interstate Highway I-85. Mr. Daugherty died 12 days later from the injuries he sustained in the collision.

### STATEMENT OF FACTS

### THE COLLISION

The collision occurred in the third left northbound lane of Interstate Highway 85 in Gwinnett County, Georgia at approximately 3:03 PM on March 25, 2020 (Spivey Aff., Doc. 68-3, at 7, 20, Ex 1). The collision occurred during Atlanta rush hour traffic (Dukes Dep., Doc. 63-2, at 17:1-15, Ex 2).

In the moments leading up to the collision, Ned Daugherty was traveling in the third left northbound lane of Interstate Highway 85 (Dukes Dep., Doc. 63-1, at 25:7-20, Ex 3). YRC's employee and driver, Larry Ingram, was operating a tandem tractor trailer rig consisting of a Volvo tractor and two loaded trailers on Interstate Highway 85, less than two seconds directly behind Mr. Daugherty with the truck's throttle wide open (Dukes dep., Doc. 63-1, at 14:21-15:2 and 48:2-6, Ex 4). Mr. Ingram's demonstrated reaction time from throttle to brake during the incident was 1.35 seconds. With a reaction time of 1.35 seconds, at 60 miles per hour, the YRC truck would have traveled 118 feet before Mr. Ingram could have applied the brakes. Mr. Ingram was traveling 60.9 miles per hour as he followed Ned at approximately 140 feet. (Dukes Dep., Doc. 63-2, at 35:7-36:9, Ex 5). Drivers of tractor-trailers are

instructed to expect stopping distances of 451 feet on dry pavement with good brakes at 55 miles per hour, and to expect longer stopping distances if they are pulling double trailers (Morgan Aff., Doc. 62-12, at 27, 28, Ex 6). Drivers of tractor trailers are further instructed that a safe following distance for a 60-foot truck traveling more than 40 miles per hour is seven seconds (Id., at 29, Ex 7). If traffic conditions do not allow for sufficient space ahead, commercial truck drivers are instructed to travel in slower lanes of travel to their right (Id.; Burlingame Dep., Doc. 67-1, at 58:20-59:11, Ex 8)[1].

An unknown van driver merged into the lane in front of Mr. Ingram (Def. Statement of Facts, Doc 60-2, at ¶5, Ex 9). The tall cargo van completely obscured Mr. Ingram's view beyond the van (Id.; Ingram Dep., Doc. 66, at 19:18-21, Ex 10). When the van merged into Mr. Ingram's lane, Mr. Ingram was traveling at approximately 60.9 miles per hour (Dukes Dep., Doc 63-2, at 36:7-19, Ex 11). When the van merged into Mr. Ingram's lane, Mr. Ingram was following Mr. Daugherty with less than two seconds of separation between Mr. Ingram's truck and Mr. Daugherty's car (Id.).

---

[1] Nicholas Burlingame is Defendant's expert in the area of commercial vehicle safety.

On the day in question from approximately 2:37 PM through the time of the collision, Mr. Ingram's cell phone was engaged in a call with the cell phone of a co-worker (Ingram Dep., phone records, Doc. 66, at 274, time 14:37, Ex 12). Mr. Ingram was the sole occupant of his truck and was in possession of his cell phone. In the moments before the collision, Mr. Ingram can be heard talking on the Lytx video recording as the van came along side of and moved in front of Mr. Ingram's truck (Spivey Dep., Exh. 1, Lytx video combined with count down, manually filed, Ex 13). Mr. Ingram did not slow down or otherwise react to the van until after it had fully entered his lane (Ingram Dep., Doc. 66, at 131:14-24, Ex 14; Holmes Dep., Doc. 63-3, at Exh. 21, manually filed, Ex 15). A jury could reasonably find that Mr. Ingram was distracted by being on the phone.

The proximity of the van triggered the Wingman audible crash avoidance alarm in Mr. Ingram's truck (Ex 13, <u>supra</u>).  After the van had fully entered the lane, Mr. Ingram reacted to the dangerous condition created by the close proximity of the van.  Instead of adjusting his speed to establish a safe following distance behind the van,  Mr. Ingram exclaimed that the "son of a bitch" van driver was "fucking crazy," applied the truck's brake lightly for one second then immediately pushed and held the throttle of his truck to the floor (100% throttle) even though the truck's crash alarm was sounding and he couldn't see anything in front of him beyond the tall cargo van (Ingram dep., Doc. 66, at 19:18-21, Ex 16; Ex 13, <u>supra</u>). Mr. Ingram

began accelerating and did nothing more to create space between his truck and the van (Spivey Aff., Doc. 68-3, at 20, 21, Ex 17).  Mr. Ingram accelerated blindly, unable to see anything in the lane ahead of him except the back of the tall cargo van he was tailgating (Lytx video, Ex 13; Spivey Aff., Doc. 68-3, at 23, 24, Ex 18). Mr. Ingram tailgated the van at between approximately 59 and 61 mph at 100% throttle with less than 70 feet of separation (a following distance of less than one second) for approximately 4.5 seconds (Id.).  For most of the time Mr. Ingram was tailgating the van with the truck's throttle wide open, the truck's crash avoidance alarm continued to sound, indicating that Mr. Ingram was actually within one second following distance of the van (Id., at 24, item 12, Ex 19; Lytx video, Ex 13, supra).

As Mr. Ingram tailgated the van which blocked his view, traffic conditions in front of the van changed. Traffic ahead of Mr. Ingram and the van had come to a stop, as is very common in Atlanta rush hour traffic (Dukes Dep., Doc. 63-2, at 17:5-15, Ex 20). Three cars had safely come to a stop ahead of the van Mr. Ingram was tailgating (Joint Preliminary Report, Doc. 7, at 2, Ex 21; Spivey Aff., Doc. 68-3, at 23, items 2, 3, Ex 22). Mr. Daugherty's car was the last in the line of the stopped cars.   The cargo van moved out of Mr. Ingram's lane to avoid hitting Mr. Daugherty's car.  From the time the cargo van merged into Mr. Ingram's lane until it moved to the left to avoid hitting Mr. Daugherty's car, Mr. Ingram never created more than 70 feet of separation between his truck and the van (Spivey Aff., Doc. 68-

3, at 24, item 12, Ex 23). From the time the cargo van merged into Mr. Ingram's lane until it moved to the left to avoid hitting Mr. Daugherty's car, Mr. Ingram stayed so close behind the van that he couldn't see anything in front of it (Lytx video, Ex 13, supra). Because Mr. Ingram had been following Mr. Daugherty too closely before the van moved into his lane, and because he was tailgating the van, Mr. Ingram left himself no time to stop before crashing into Mr. Daugherty's car (Spivey Aff., Doc. 68-3, at 24, items 6-9, Ex 23). Mr. Ingram braked but crashed the YRC rig into the back of Mr. Daugherty's car at approximately 38 mph (Id. at item 9). The force of the collision demolished the Daugherty vehicle and scattered traffic across six lanes of I-85 northbound (Spivey Aff., Doc. 68-3, at 9-12, Ex 25). Ned was transported by ambulance to Northside Hospital where he was found to have multiple traumatic injuries including broken ribs, a broken arm, brain injuries and spinal fractures (Floyd Dep., Doc. 68-1, at 17:21-18:3, Ex 26; Raore Dep., Doc 68-2, at 72, Assessment, Ex 27). Ned died as result of his injuries on April 6, 2020 (Raore Dep., Doc 68-2, at 18:8, 9, Ex 28). Only Mr. Ingram drove into the stopped cars (Defendant Exh. B, at 9, Ex 29). No vehicles hit Mr. Ingram's truck from behind when it decelerated rapidly, struck Mr. Daugherty's car and stopped (Id.).

As discussed below, in order to avoid the collision, Mr. Ingram did not need to break the law or anticipate that traffic had stopped ahead of the van. To avoid the collision, Mr. Ingram needed only drive where he was supposed to be (in the slower

right lanes) or slow down behind the van to establish the following distances and forward visibility distances applicable industry standards required of him. The latter is true even though Mr. Ingram was tailgating Ned when the van pulled in front of him.

## UNDISPUTED APPLICABLE STANDARDS OF CARE

The undisputed industry standard of care applicable to Mr. Ingram under the circumstances of this case required him to operate in the slower right lanes of the highway (Morgan Aff., Doc. 62-12 at 29, Managing Space, Ex 30; Burlingame Dep., Doc. 67-1, at 58:20-59:12, Ex 31).

The undisputed industry standard of care applicable to Mr. Ingram under the circumstances of this case required him to maintain a following distance of six to seven seconds behind the vehicle in front of him (Morgan Aff., Ex 30, supra; Holmes Dep., Doc. 63-3, at 98:8-99:1, Ex 32).

The undisputed industry standard of care applicable to Mr. Ingram under the circumstances of this case required him to maintain forward visibility of traffic conditions 12 to 15 seconds ahead of him (Morgan Aff., Doc. 62-12, at 26, Seeing-Proper Lookout, Ex 33; Holmes Dep., Doc. 63-3, at 90:6-9, Ex 34).

The undisputed industry standard of care applicable to Mr. Ingram under the circumstances of this case required him to slow down and back away from the van

(Morgan Aff., <u>supra</u>, Basic Safe Vehicle Control, Ex 35; Holmes Dep., Doc. 63-3, at 90:18-21, Ex 36, and 91:14-25, Ex 37).

The evidence shows Mr. Ingram did none of the above.

<u>MR. SPIVEY'S UNDISPUTED AVOIDANCE ANALYSIS</u>

Plaintiff's expert, Heath Spivey, has performed an avoidance analysis in this case. The results are graphically displayed in a line chart at page 33 of his Affidavit. There are three lines on the chart. The top line (blue) shows what actually happened (Mr. Ingram braked for one second after the van moved into his lane, returned to full throttle for 4.5 seconds, took his foot off of the accelerator at t-3.8 when the van's brake lights came on then braked hard after the van moved out of his lane, exposing Mr. Daugherty's stopped car. Mr. Ingram collided with Mr. Daugherty's car at a velocity of approximately 38 miles per hour). The middle line (red) shows that Mr. Ingram would have collided with Mr. Daugherty's car at a velocity of approximately 23 miles per hour had Mr. Ingram taken his foot off of the accelerator and coasted for the 4.5 seconds and then braked exactly as he did after the van moved out of his lane. The bottom line (green) shows that Mr. Ingram would have stopped 60 to 70

feet short of Mr. Daugherty's car had he continued to brake at -.1 G[2] for those 4.5 seconds and then braked exactly as he did after the van moved out of his lane (Spivey Aff., Doc. 68-3, at 20-24, Ex 38).

Defendant's expert, Mr. Dukes, confirmed that Mr. Spivey's methodology and calculations are correct (Dukes Dep., Doc. 63-2, at 50:11-16, Ex 39). Mr. Dukes' sole criticism of the avoidance analysis is a proposition that the analysis would require Mr. Ingram to break the law by slowing down to less than 40 mph for no reason (Id., at 51:1-25, Ex 40). He is wrong. Mr. Spivey's analysis shows that Mr. Ingram's speed would not have gone below 40 mph until after Mr. Ingram had seen the stopped traffic immediately ahead. In fact, Mr. Ingram would have been traveling at approximately 47 mph at t- 3.8, the moment he took his foot off of the accelerator when the van braked and began to move to the left, exposing Mr. Daugherty's stopped car. Mr. Spivey's undisputed avoidance analysis shows that by braking as Mr. Morgan says he should have, Mr. Ingram could safely and lawfully have avoided the collision (Spivey Aff., Doc. 68-3, at 23, 24, Ex 41; item 11, Ex 42).

---

[2] Defendant's expert, Tharon Dukes testified that -.1G would be safe, light braking for the type of truck Mr. Ingram was operating (Dukes depo, Doc. 63-1, at 53:6-15, Ex 43).

## ARGUMENT AND CITATION OF AUTHORITY

Defendant's argument that Mr. Ingram could do nothing to avoid hitting Mr. Daugherty's car once the van moved away is a sleight of hand which sidesteps the true issue in this case. By operating in the faster left lane where the collision occurred, by following too closely behind Mr. Daugherty (1.9 seconds instead of six to seven seconds), by accelerating and following too closely behind the cargo van (less than one second instead of six to seven seconds), by failing to maintain forward sight distance (less than one second instead of 12 to 15 seconds), Mr. Ingram placed himself in the position where he was unable to stop in time. This fatal collision was entirely preventable. Simply stated, the collision occurred because Mr. Ingram was following Mr. Daugherty and the cargo van too closely and failed to slow down behind the van as he should have done.

In driving as he did, Mr. Ingram violated long-established industry safety standards required of commercial motor vehicle drivers under the same or similar circumstances (Morgan Aff., Doc. 62-12, at 26-31, Ex 44).

Defendant's motion for summary judgment should be denied. The evidence before the court will allow a reasonable jury to return a verdict for the Plaintiffs.

### A. The applicable law.

#### 1. Summary Judgement Standard
Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

E.E.O.C. v. SDI Athens E., LLC, 690 F. Supp. 2d 1370, 1373 (M.D. Ga. 2010).

### 2. The issues

To state a cause of action for negligence, a plaintiff must establish the following essential elements: (1) legal duty (2) breach of this duty, (3) an injury, and (4) a causal connection between the breach and the injury.

R & R Insulation Servs., Inc. v. Royal Indem. Co., 307 Ga. App. 419, 705 S.E.2d 223 (2010).

Failure to exercise due care is, by definition, negligence.
In general, ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. … **The absence of such diligence is termed ordinary negligence.**

O.C.G.A. § 51-1-2 (emphasis supplied).

O.C.G.A. § 51-1-32. Motor vehicle cases; separate causes of action for personal injury and property damage.

In cases arising from the wrongful or negligent operation of a motor vehicle in which the single wrongful or negligent act causes or results in both physical injuries to a person and injuries to the property of such person, the injured person shall have a separate and distinct cause of action against the person whose wrongful or negligent act caused such injury for the physical injury to his person and a separate and distinct cause of action for the injuries to his property. The injured party shall have the right, in his sole discretion, to prosecute each cause of action separately or to combine the two causes of action in one single action.

The evidence before the court shows that genuine issues of material fact exist from which a reasonable jury could find that Mr. Ingram breached his duty to exercise ordinary diligence in his driving and, by failing to exercise ordinary diligence, Mr. Ingram caused a crash which, in turn, caused fatal injuries to Ned Daugherty.

**B.  Genuine issues of material fact remain for a jury to determine as to whether Mr. Ingram's driving fell below widely-recognized standards of care required by the commercial vehicle industry as well as those required by the Georgia Rules of the Road.**

Mr. Ingram was negligent by following the cargo van with one second or less of following distance. Mr. Ingram was negligent by following Mr. Daugherty with two seconds or less of following distance.  In doing so, Mr. Ingram violated long-standing industry standards required of drivers of commercial vehicles under the circumstances of this case (<u>Id.</u>).

Mr. Ingram was pulling double trailers (Joint Preliminary Report, Doc. 7, at 2, ¶1(b).  A tractor-trailer pulling double trailers has serious limitations on its steering and handling.  It cannot safely be suddenly braked or suddenly steered.  If it is not handled very carefully, the rear trailer will "crack the whip," and can overturn (Burlingame Dep., Doc. 67-1, at 28:12-29:5, Ex 45; Dukes Dep., Doc. 63-1, at 48:21-51:7, Ex 46).

Defendant's own expert, Tharon Dukes, testified to the instability of a tractor trailer combination pulling double trailers (Dukes Dep., Ex 46, supra). Defendant's commercial driving expert Nicholas Burlingame agrees. (Ex 45, supra).

It is absurd to suggest that a following time of two seconds or less is a safe following time for such a vehicle. It is even more absurd to suggest that the driver of such a vehicle is doing all he can do to reclaim his space ahead when he has the throttle wide open with one second or less of following time behind the vehicle in front of him. At all times material hereto, Mr. Ingram was driving at speeds between 59 and 61.5 mph (Spivey dep., Doc. 61-1, at 50:23-51:7, Ex 47).

Because of the speeds involved and stopping distance required for a tractor-trailer, the standard of care for Mr. Ingram required a following time of more than seven seconds behind traffic ahead:

> Managing Space: The CDL Manual instructs CMV drivers that, "to be a safe driver, you need space all around your vehicle. When things go wrong, space gives you time to think and to take action. To have space available when something goes wrong, you need to manage space. While this is true for all drivers, it is very important for large vehicles. They take up more space and they require more space for stopping and turning. Of all the space around your vehicle, it is the area ahead of the vehicle - the space you're driving into - that is most important. How much space should you keep in front of you. One good rule says you need at least one second for each 10 feet of vehicle length at speeds below 40 mph. At greater speeds, you must add 1 second for safety. For example, if you are driving a 60 foot vehicle you'll need 7 seconds between you and the vehicle ahead when driving over 40 mph.".. Mr. Ingram was driving a longer combination CMV pulling double trailers, and would need greater than 7 seconds of space between his vehicle and the vehicle in front of him.

(Morgan Aff., Doc. 62-12, at 29, Managing Space, Ex 48; Holmes Dep., Doc. 63-3, at 98:8-99:1, Ex 49).

 If traffic conditions prevent a truck driver from being able to maintain a safe following distance in the faster lanes of a multi-lane highway, the standard of care requires the driver to use the slower lanes to the right (Morgan Aff., Doc. 62-12, at 29, Managing Space, Ex 50).

Defendant's commercial driving expert, Nicholas Burlingame testified the "rule of thumb" requires a truck driver to drive in slower lanes of traffic to the right. (Burlingame Dep., Doc 67-1, at 58:20-59:12, Ex 51).

Georgia Rules of the Road prohibit motorists from following too closely.

### O.C.G.A. § 40-6-49. Following too closely

> (a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

In the 12 seconds leading up to the crash, as the cargo van began to move into his lane, Mr. Ingram's following distance behind Ned Daugherty was two seconds or less (Dukes dep., Doc. 63-2, at 36:7-18, Ex 52).  Based upon the foregoing facts, a jury could reasonably find that Mr. Ingram was following Ned more closely than was reasonable and prudent, having due regard for the speed of the vehicles involved.  In fact, a jury could reasonably find that Mr. Ingram was tailgating both

Ned and the cargo van that moved into Mr. Ingram's lane. Genuine issues of material fact also remain for a jury concerning whether the collision could have been prevented if Mr. Ingram had simply slowed down to establish a safe following distance behind the van as he was required to do (Id.; Spivey Aff., Doc. 68-3, at 24, Item 11, Ex 53; Morgan Aff., Doc. 62-12, at 26, Basic Safe Vehicle Control, Ex 54).

On March 25, 2020, Defendant YRC determined that Mr. Ingram's actions resulted in a serious accident (Ingram Dep., Doc. 66, at 207, Ex 55).[3] Likewise, the final iteration of the report of Officer Notestine, who investigated the collision, identifies Mr. Ingram as at fault (Final Investigative Report, Doc. 60-4, at 2, Ex 56).

The evidence shows that Mr. Ingram was negligent in the operation of the YRC truck for the following reasons:

Mr. Ingram was driving in a fast lane of traffic, instead of driving in one of the slower lanes of traffic available to his right (Morgan Aff., Doc. 62-12, at 29, Managing Space, Ex 57).

---

[3] Ex 55 is offered for the sole purpose of admitting YRC's determination that its driver caused the collision at issue. It is not offered for the purpose of showing that Ingram was fired. The document goes to the issue of preventability and can be redacted to eliminate any reference to disciplinary action.

Mr. Ingram was following Ned Daugherty too closely (Dukes Dep., Doc. 63-2, at 36:7-19, Ex 58).

Mr. Ingram failed to establish a safe following distance behind Ned Daugherty before, during, and after the van interloped into his lane (Id.; Spivey Aff., Doc. 68-3, at 24, items 7-9).

When the van began to move into the lane ahead of him, Mr. Ingram failed to slow down in a timely manner to establish a safe following distance behind the van (Id.; Morgan Aff., Doc. 62-12, at 26, Basic Safe Vehicle Control, Ex 59).

Mr. Ingram blindly accelerated the truck behind the van despite his inability to see traffic for a sufficient distance ahead. In so doing, Mr. Ingram negligently deprived himself of any opportunity to react to changing traffic conditions ahead of him (Id.; Lytx video, Ex 13, supra).

By accelerating blindly behind the Sprinter van, Mr. Ingram  put himself in the position where he was traveling at 61 miles per hour less than one second behind the van and only 1.9 seconds behind Ned's car.  By placing himself in that position, Mr. Ingram made it impossible for himself to react and stop in time to avoid the collision.

Mr. Ingram was negligent in that he violated the following laws and industry standards of care:

**O.C.G.A. § 40-6-49. Following too closely**

(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

### O.C.G.A. § 40-6-180. Basic rules

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing.

### O.C.G.A. § 40-6-390. Reckless driving

(a) Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving.

The standards of care for drivers of commercial vehicles are industry standards applicable in all 50 states. Those standards have been reduced to writing in the Commercial Driver's License Manual (CDL Manual) (Morgan aff, Doc. 62-12 at 26, first paragraph, Ex 60). 49 C.F.R. §383.3 (Applicability of the Federal Motor Vehicle Safety Regulations) requires all drivers of commercial vehicles to know and to be able to apply the safety standards set forth in the CDL Manual. Evidence of violations of industry standards is a measure for determining negligence. (Prillaman v. Sark, 255 Ga. App. 781, 782–83, 567 S.E.2d 76, 77–78 (2002) Ex 61).

As set forth in Mr. Morgan's Affidavit, Mr. Ingram failed to abide by the following industry standards required of drivers of trucks such as the one in question:

CDL Manual § 2.2 Basic Vehicle Control: Failure to control speed of the truck.

CDL Manual § 2.4 Seeing-proper lookout:  Knowing what is going on around the vehicle.

CDL Manual § 2.5.2 Communicating your presence to other drivers.

CDL Manual § 2.6 Controlling speed-adjusting speed to traffic conditions.

CDL Manual § 2.7  Managing space – maintaining a safe space ahead.

CDL Manual § 2.8   Seeing hazards – seeing hazards in time to react safely to changing traffic conditions.

CDL Manual § 7.1, ff.  Special care required pulling double trailers.

49 C.F.R. § 385.3  Definition of preventable accident.

(Morgan Aff., Doc. 62-12, at 26-33, Ex 62).

**Defendant's case law is inapposite**.

In its brief, Defendant argues that Plaintiffs demand a higher standard of care for Mr. Ingram in that he is not required to foresee what is unlikely, remote, slightly probable or slightly possible. (Doc 60-1 at 12, 13).  The argument fails because Mr. Ingram did not need to foresee what was unlikely, remote, slightly probable or slightly possible to avoid the collision. The evidence before this court shows that Mr. Ingram fell below the general standards of care applicable to him by (1) failing to travel in a slower lane of travel to his right, (2) following too closely behind Mr. Daugherty, and (3) by failing to  slow down behind the van which had moved into the lane ahead of him. The undisputed evidence shows that had he simply applied

light braking to establish a safe following distance behind the van which he clearly

saw, and had he reacted exactly as he did when he saw Mr. Daugherty's stopped car,

he could have stopped the truck 60 feet before striking the car, without breaking the

law (Spivey Aff., Doc. 68-3, at 24, item 11, Ex 63).

Nothing above requires Mr. Ingram to anticipate that traffic ahead of the van

might stop, although such events are common during rush hour on I-85 in Atlanta

(Dukes Dep., Doc. 63:2, at 17:5-15, Ex 64).

Defendant relies heavily on the ruling of the court in <u>Rios v. Norsworthy</u>, 266

Ga. App. 469, 597 S.E.2d 421 (2004) (Ex 65). The reliance is misplaced. To say, as

Defendant says at page 13 of its brief, that the facts in <u>Rios</u> are different from those

in the instant case is a vast understatement (Brief, Doc 60-1 at 13). The truck driver

in <u>Rios</u> was driving along a highway at night approaching a curve when Rios tried

to pass the truck on a double yellow line. The driver had seen Rios behind him, but

at the moment had his eyes on a curve in the road. Rios ran into the side of the truck

when trying to avoid an oncoming car. Rios sued the truck driver for not getting out

of his way. <u>Rios</u>, supra. at 469-470.

Plaintiffs take no issue with the principles recognized and applied by the court

in <u>Rios</u>; however, the facts in <u>Rios</u> are distinguishable from those in the instant case.

The opinion in <u>Rios</u> is predicated on the undisputed fact that at the time of an

unanticipated event, the driver of the commercial vehicle was operating in

accordance with the rules of the road.   The court found as a fact that the commercial driver, Norsworthy, was driving in accordance with the rules of the road when Rios attempted to pass him in a no passing zone (Rios v. Norsworthy, supra, Ex 65).

Unlike the truck driver in Rios,  Mr. Ingram was not complying with the rules of the road at the time of the event.  It is a violation of the rules of the road of Georgia to follow a vehicle too closely.  Mr. Morgan has testified that the standard of care required Mr. Ingram to maintain a following distance of seven seconds behind traffic ahead (Morgan Aff., Doc. 62-12,  at 29, Managing Space, Ex 66).  Mr. Spivey has testified that Mr. Ingram was driving one second or less behind the white Sprinter cargo van (Spivey Aff., Doc. 68-3 at 24, item 2, Ex 67). Defendant's accident reconstructionist, Tharon Dukes, has testified that Mr. Ingram was following Mr. Daugherty with two seconds or less of following time (Dukes Dep., Doc. 63-1, at 48:2-6, Ex 68).

Given the fact that Mr. Ingram was driving a 70 foot-long combination tractor trailer, at 60.9 miles per hour with two seconds or less of following time, a trier of fact could find that Mr. Ingram was following the Daugherty car too closely at the time the cargo van moved into his lane.  Following too closely is a violation of O.C.G.A. § 40-6-49.

The evidence is clear that in order to safely react to changing traffic conditions, Mr. Ingram required 12 to 15 seconds of forward visibility (Morgan Aff.,

Doc. 62-12, at 26, Seeing-Proper Lookout, Ex 69; Holmes Dep., Doc. 63-3, at 90:6-9, Ex 70); therefore, when the van entered Mr. Ingram's lane, it created a dangerous condition of which Mr. Ingram had immediate knowledge. Mr. Ingram was following the van with less than one second of following time (Spivey Aff., Doc. 68-3, at 24, Item 12, Ex 71). The van completely blocked his vision of traffic ahead.

By not adjusting his speed when the van moved into his lane, Mr. Ingram fell below the standards of care required of him. Unlike the dangerous condition unknown to the driver in <u>Rios</u>, the dangerous condition created by the van was right before Mr. Ingram's eyes. Instead of continuing to slow down to establish a safe following distance behind the van, Mr. Ingram slowed for about one second and applied full throttle to the truck, maintaining a following distance of one second or less behind the van (<u>Id.</u>, at items 10-12). A finder of fact could find that in falling below the standards of care, Mr. Ingram was following the van too closely in violation of O.C.G.A. § 40-6-49.

Based upon the critically different facts of the two cases, <u>Rios</u> is inapposite.

**Plaintiff does not ask this Court to apply a duty of care contrary to Georgia law.**

Plaintiffs' theories of liability do not impose a duty of care contrary to Georgia law. Rather, Plaintiffs' evidence concerning industry standards is consistent with and fully supported by Georgia law. Evidence of compliance or non-compliance

with industry standards of professional conduct goes to the issue of negligence. (Prillaman v. Sark, 255 Ga. App. 781, 782–83, 567 S.E.2d 76, 77–78, Ex 72). Mr. Morgan's opinions provide the finder of fact with evidence upon which to determine whether or not Mr. Ingram was negligent in the operation of the YRC truck. Mr. Morgan's testimony does not impose a higher degree of care under Georgia law.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied.

ATTORNEYS FOR PLAINTIFFS

/s/ Charles E. Dorr
CHARLES E. DORR
GA Bar No: 225983

Charles E. Dorr, P.C.
201 West Jefferson Street
Madison, Georgia 30650
(404) 474-2334
chuck@dorrlaw.com

/s/ James E. Carter
JAMES E. CARTER
GA Bar No: 114400

James E. Carter Law Firm, LLC
199 West Jefferson Street
Madison, Georgia 30650
(706) 438-4225
jcarter@jcarterlawllc.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA LEE DAUGHERTY,    )
INDIVIDUALLY AND DONNA    )     CIVIL ACTION FILE No:
LEE DAUGHERTY AS    )
ADMINISTRATRIX OF THE    )     1:22-cv-01777-SEG
ESTATE OF NORMAN EUGENE    )
DAUGHERTY, JR., DECEASED,    )
   ) REMOVED FROM SUPERIOR
     Plaintiffs    ) COURT OF GWINNETT COUNTY
   ) CIVIL ACTION FILE NO.
vs.    ) 22-A-02616-4
   )
YRC INC. AND YRC INC. D/B/A YRC    )
FREIGHT AND LUIS BURGOS,    )
   )
     Defendants.    )

CERTIFICATE OF COMPLIANCE

The foregoing Plaintiffs' Brief in Opposition to Defendant YRC, Inc. and

YRC, Inc. D/B/A YRC Freight's Motion for Summary Judgment is double spaced

in 14 point Times New Roman font and complies with the type-volume limitation

set forth in Local Rule 7.1.

/s/ James E. Carter
JAMES E. CARTER
GA Bar No: 114400

James E. Carter Law Firm, LLC
199 West Jefferson Street
Madison, Georgia 30650
(706) 438-4225
jcarter@jcarterlawllc.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONNA LEE DAUGHERTY, )
INDIVIDUALLY AND DONNA ) CIVIL ACTION FILE No:
LEE DAUGHERTY AS )
ADMINISTRATRIX OF THE ) 1:22-cv-01777-SEG
ESTATE OF NORMAN EUGENE )
DAUGHERTY, JR., DECEASED, )
 ) REMOVED FROM SUPERIOR
     Plaintiffs ) COURT OF GWINNETT COUNTY
 ) CIVIL ACTION FILE NO.
vs. ) 22-A-02616-4
 )
YRC INC. AND YRC INC. D/B/A YRC )
FREIGHT AND LUIS BURGOS, )
 )
     Defendants. )

CERTIFICATE OF SERVICE

This is to certify I have this day served a copy of the Plaintiffs' Brief in

Opposition to Defendant YRC, Inc. and YRC, Inc. D/B/A YRC Freight's Motion

for Summary Judgment via email and the court's efiling system to:

    Scott H. Moulton   smoulton@hallboothsmith.com
    Mark D. Christopher mchristopher@hallboothsmith.com
    Hall Booth Smith, P.C.
    191 Peachtree Street NE, Suite 2900
    Atlanta, Georgia 30303-1775

    This 15th day of March 2023.

ATTORNEYS FOR PLAINTIFFS

/s/ James E. Carter
JAMES E. CARTER
GA Bar No: 114400

James E. Carter Law Firm, LLC
199 West Jefferson Street
Madison, Georgia 30650
(706) 438-4225
jcarter@jcarterlawllc.com