# Exhibit E

Case 23-11069-CTG    Doc 770-6    Filed 10/05/23    Page 2 of 17

E-FILED IN OFFICE - AM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**22-A-02616-4**
**3/29/2022 3:41 PM**
TIANA P. GARNER, CLERK

SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | |
|---|---|
| Donna Lee Daugherty, individually and Donna Lee Daugherty as Administratrix of the Estate of Norman Eugene Daugherty, Jr., deceased, <br><br> Plaintiffs <br><br> vs. <br><br> YRC INC. and YRC INC. d/b/a YRC Freight and Luis Burgos, <br><br> Defendants. | CIVIL ACTION FILE <br><br> No: 22-A-02616-4 <br><br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES**

Plaintiffs Donna Lee Daugherty individually, and Donna Lee Daugherty as Administratrix of the Estate of Norman Eugene Daugherty, Jr., deceased, make the following complaint against Defendants YRC INC. and Luis Burgos, and show the court as follows:

**THE PARTIES**

1.

Donna Lee Daugherty (Mrs. Daugherty) is the surviving spouse of Norman Eugene Daugherty, Jr. (Ned). Mrs. Daugherty is a resident of Gwinnett County, Georgia. At all times material hereto, she was married to Norman Eugene Daugherty, Jr. Donna Lee Daugherty is the duly appointed Administratrix of Ned's Estate.

2.

YRC INC. (YRC) is a corporation organized and existing under the laws of Delaware. Its Principal Office is 10990 Roe Ave. MS A515, Overland Park, KS, 66211. YRC is a motor common carrier operating as YRC Freight under DOT number 071821.

3.

YRC has a registered office in Gwinnett County, Georgia, located at 289 S. Culver Street, Lawrenceville, Georgia, 30046-4805. Its Registered Agent at said address is CT Corporation System.

4.

Service may be made upon YRC by service upon CT Corporation System at the above-named registered office.

5.

YRC is subject to the jurisdiction and venue of this court.

6.

Luis Burgos (Burgos) is a resident of Georgia. His last known address is at 672 Overlook Wood Way, Lawrenceville, Georgia 30043 at which address he may be served. Burgos is subject to the jurisdiction and venue of this court as a joint-tortfeasor.

## COUNT I

## CLAIMS AGAINST DEFENDANT YRC

7.

On March 25, 2020, shortly after 3:00 PM, Larry D. Ingram (Ingram) and Ned were driving north in rush hour traffic on US Highway I-85 in Gwinnett County, Georgia.

8.

They were traveling in the second lane from the left of the six toll-free northbound lanes.

9.

Ned was driving a 2014 Toyota Corolla.

10.

Ingram was driving a seventy-foot-long tractor-trailer rig consisting of a Volvo Tractor and two loaded trailers, owned and operated by YRC.

11.

Ingram was following Ned's Toyota at a distance of approximately 140 feet.

12.

Ingram was traveling at approximately 60 miles per hour (approximately 88 feet per second).

13.

At a following distance of approximately 140 feet, and a speed of 88 feet per second, Ingram was following Ned's car too closely with less than two seconds of following time.

14.

Ingram had the throttle wide open.

15.

Ingram was engaged in a telephone conversation.

16.

As the two vehicles proceeded north, a Sprinter van moved into the lane ahead of Ingram, completely blocking his view of traffic conditions ahead of the van.

17.

Ingram did not notice the van until it had already entered his lane of travel.

18.

When the van moved into the lane in front of Ingram, instead of slowing down to establish a safe following distance behind the van, Ingram braked for one second, shouted obscenities at the van driver, and pushed the truck's accelerator to the floor.

19.

The applicable safety standards require drivers of tractor trailers to slow down and "back out" of unsafe conditions created by traffic moving into their lane in order to establish a safe space ahead.

20.

Instead of continuing to slow down and backing out as required, Ingram violated the foregoing safety standards by tailgating the van with his throttle wide open.

21.

At no time was Ingram more than 70 feet behind the van, and at no time could Ingram see anything ahead of the van.

22.

Nonetheless, Ingram blindly accelerated behind the van for four and one half seconds.

23.

At Ingram's speeds, the 70 or fewer feet of separation between Ingram and the van represented less than one second of travel time for the loaded tandem tractor trailer Ingram was driving.

24.

While Ingram was accelerating blindly behind the van, traffic ahead of Ingram and the van came to a stop.

25.

Ned's Toyota was still ahead of the van but was stopped behind two cars which had stopped ahead of him.

26.

The van moved left out of Ingram's lane and avoided Ned's stopped car.

27.

As the van moved out of his lane, Ingram saw Ned's stopped car.

28.

When Ingram saw Ned's car, the throttle on the rig Ingram was operating was wide open.

29.

At that point, Ingram was less than two seconds behind Ned's car, just as he was before the van interloped.

30.

Ingram's known reaction time from throttle to brake is 1.85 seconds.

31.

With a reaction time of 1.85 seconds and a following time of less than two seconds behind Ned's stationary car, Ingram had left himself insufficient time in which to stop before striking Ned's car.

32.

As a result, Ingram crashed the YRC truck into the rear of Ned's car at approximately 38 miles per hour, causing a collision that scattered several vehicles along and across I-85.

33.

The impact of the truck with Ned's car destroyed the car and fatally injured Ned.

34.

Ned sustained multiple traumatic injuries as result of the collision, among which were T-2 fracture with dislocation, T-3 fracture, neurogenic shock, pulmonary contusions, comminuted humerus fracture, and right-sided pneumothorax, and traumatic subdural hematoma. Had he lived, Ned would have been in a paralyzed and, likely, vegetative state for the remainder of his life.

35.

Ned was transported by ambulance from his car to Northside Hospital where he died as result of his injuries on April 6, 2020.

36.

The collision was entirely avoidable. Had Ingram simply maintained a safe following distance behind Ned and reacted to the interloping van as his training and the standards applicable to his profession instruct, he could have safely brought the truck to a complete stop sixty (60) to seventy (70) feet behind Ned's car.

37.

The collision occurred because Ingram violated critical safety standards established by the trucking industry.

38.

Ingram was driving a 70-foot-long truck with two trailers at 60 MPH in a fast lane of I-85, under conditions in which the applicable safety standards required him to drive in the slower lanes to his right.

39.

Ingram was traveling at 60 MPH approximately 140 feet behind Ned with less than two seconds of following time behind Ned before the van ever interloped, when the applicable safety standards required him to have at least six to eight seconds of following time due to the length and composition of the YRC truck.

40.

Ingram failed to establish and maintain a safe following distance behind Ned's car, either before or during the appearance of the Sprinter van.

41.

After the van moved into Ingram's path, Ingram failed to establish a safe following distance behind the van, in violation of the applicable standards for managing space ahead.

42.

Sudden stops on interstate highways in metropolitan areas during rush hour traffic are not uncommon occurrences and are foreseeable. At 60 miles per hour, a seventy-foot tandem tractor trailer requires a following distance of six to eight seconds behind traffic ahead of it, and twelve to fifteen seconds of sight distance ahead, in order for the driver to safely stop or to change lanes in response to changing traffic conditions.

43.

By following Ned with less than two seconds of following time and tailgating the Sprinter van, Ingram failed to comply with the applicable safety standards for managing space ahead.

44.

By failing to comply with the safety standards for managing space ahead, Ingram was negligent.

45.

If traffic is too heavy to allow the required following time at higher speeds, then drivers of tandem tractor trailers on multi-lane highways such as I-85 are required by applicable standards to drive in slower traffic lanes to the right.

46.

By failing to travel in the slower traffic lanes to his right, Ingram was negligent in that he violated a safety standard which required him to travel to the right in slower traffic under the circumstances of the subject incident.

47.

Ingram was also driving in a traffic lane restricted by signage to trucks with six or fewer wheels.

48.

By following Ned with less than two seconds of following time and by his aggressive driving after the van moved into his lane, Ingram placed himself in a situation in which he could not stop to avoid crashing into Ned's car which had stopped suddenly under foreseeable circumstances.

49.

Had Ingram complied with the standard which required him to drive to the right in slower lanes of traffic, instead of driving aggressively in a fast lane of traffic, he would not have caused the collision that killed Ned.

50.

Because of the Coronavirus pandemic, Ms. Daugherty was unable to visit Ned at the hospital; thus she was totally deprived of his companionship as he lay dying in an ICU unit.

51.

Ingram's negligence was a proximate cause of the collision with Ned's car.

52.

Ingram's negligence was a proximate cause of Ned's pain and suffering, his medical expenses, his death, and the expenses of his cremation.

53.

Ingram's negligence was a proximate cause of Mrs. Daugherty's loss of Ned's consortium.

54.

Ned's medical expenses caused by the collision are $381,616.00.

55.

The cost of Ned's cremation was $2,018.30.

56.

Ned underwent excruciating pain and suffering as result of his injuries.

57.

Ned was 63 years old and in good health at the time of the collision. He enjoyed life with his family, his friends, and in his work. He left home for work on the morning of March 25, 2020 and was returning home when his life was cut short by Mr. Ingram's acts.

58.

At all times material hereto, Ingram was an employee of YRC.

59.

At all times material hereto, Ingram was driving the subject tractor-trailer in the scope and course of his employment with YRC.

60.

YRC is liable for Ingram's negligence under the doctrine of *respondeat superior*.

61.

YRC is liable for Plaintiffs' damages caused by Ingram's negligence under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiffs demand judgment against Defendant YRC as follows:

1. Donna Lee Daugherty individually demands judgment against Defendant YRC for the full value of the life of Norman Eugene Daugherty, Jr. in such an amount as a fair and impartial jury may deem appropriate;

2. Donna Lee Daugherty individually demands judgment against Defendant YRC for her loss of consortium between the time of the collision in question and the time of Mr. Daugherty's death in such an amount as a fair and impartial jury may deem appropriate;

3. Donna Lee Daugherty as Administratrix of the Estate of Norman Eugene Daugherty, Jr., deceased, demands judgment against Defendant YRC for Mr. Daugherty's pain and suffering, and for his medical and funeral expenses set forth above;

5. Plaintiffs demand judgment for the costs of this action;

6. Plaintiffs pray for such other relief as the court may deem just and proper;

7. Plaintiffs demand a trial by jury.

## COUNT II

## CLAIMS AGAINST LUIS BURGOS

The allegations of paragraphs 1 through 61 above are hereby incorporated as though they were fully realleged herein.

62.

On the afternoon of March 25, 2020, Burgos was driving a Honda Civic Northbound on U. S. Highway Interstate 85 in Gwinnett County, Georgia.

63.

Burgos was traveling in the second of six toll-free lanes of I-85 northbound.

64.

Richard Kaziba (Kaziba) was following Burgos in the same lane of travel. He was driving a 2014 Toyota Corolla.

65.

Ned was following Kaziba in the same lane of travel. Mr. Daugherty was also driving a 2014 Toyota Corolla.

66.

As traffic proceeded northbound on I-85, Burgos suddenly and without warning stopped his car, thus obstructing traffic ahead of Ned.

67.

Kaziba suddenly stopped behind Burgos in order to avoid colliding with him.

68.

Ned stopped suddenly in order to avoid striking the Kaziba vehicle.

69.

Shortly after Ned came to a stop, Ingram crashed the YRC tractor into the rear of Ned's car, fatally injuring Ned.

70.

Burgos' negligence in obstructing traffic was a contributing cause of the collision and of Plaintiffs' damages as set forth above.

## DISCOVERY

71.

Plaintiffs' First Interrogatories to Defendant are attached as Exhibit A and are served herewith.

WHEREFORE, Plaintiffs demand judgment against Defendant Burgos as follows:

1. Donna Lee Daugherty individually demands judgment against Defendant Burgos for the full value of the life of Norman Eugene Daugherty, Jr. in such an amount as a fair and impartial jury may deem appropriate;

2. Donna Lee Daugherty individually demands judgment against Defendant Burgos for her loss of consortium between the time of the collision in question and the time of Mr. Daugherty's death in such an amount as a fair and impartial jury may deem appropriate;

3. Donna Lee Daugherty as Administratrix of the Estate of Norman Eugene Daugherty, Jr., deceased, demands judgment against Defendant Burgos for Mr. Daugherty's pain and suffering, and for his medical and funeral expenses set forth above;

5. Plaintiffs demand judgment for the costs of this action;

6. Plaintiffs pray for such other relief as the court may deem just and proper;

7. Plaintiffs demand a trial by jury.

ATTORNEYS FOR PLAINTIFFS:

/s/ Charles E. Dorr
CHARLES E. DORR
Georgia Bar No: 225983

Charles E. Dorr, P.C.
201 West Jefferson Street
Madison, Georgia 30650
(404) 474-2334
chuck@dorrlaw.com

/s/ James E. Carter
JAMES E. CARTER
Georgia Bar No: 114400

James E. Carter Law Firm, LLC
199 West Jefferson Street
Madison, Georgia 30650
(706) 438-4225
jcarter@jcarterlawllc.com