### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, et al.,[1] | ) Case No. 23-11069 (CTG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re:  Docket No. 617** |

### DECLARATION OF DISINTERESTEDNESS
### OF THOMAS AND THORNGREN. INC. D/B/A THOMAS & COMPANY PURSUANT
### TO THE ORDER
### AUTHORIZING THE DEBTORS TO RETAIN AND COMPENSATE
### PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

I, Jim Thomas, declare under penalty of perjury:

1.      I am a Chief Executive Officer] of Thomas and Thorngren, Inc., located at One Vantage Way, Suite A-15, Nashville, TN 37228 (the "Firm").

2.      Yellow Corporation and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), have requested that the Firm provide unemployment cost control and employment and wage verification services to the Debtors, and the Firm has consented to provide such services.

3.      The Firm may have performed services in the past, may currently perform services, and may perform services in the future in matters unrelated to these chapter 11 cases for persons that are parties in interest in the Debtors' chapter 11 cases.  The Firm does not, however, perform services for any such person relating to these chapter 11 cases, or have any relationship with any

---

[1]      A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

DocuSign Envelope ID: F5A7A1C6-D556-4A34-B2E9-B3B58DFAED7B

such person, their attorneys, or their accountants that would be adverse to the Debtors or their estates.

4.      As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants, and parties in interest in these chapter 11 cases.

5.      Neither I nor any principal, partner, director, or officer of, or professional employed by, the Firm, insofar as I have been able to ascertain is a relative of the United States Bankruptcy Judge assigned to these chapter 11 cases, and the Firm does not have a connection with the United States Bankruptcy Judge that would render the Firm's retention in these chapter 11 cases improper. Further, the Firm does not have any connection with the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), or any persons employed by the U.S. Trustee.

6.      Neither I nor any principal, partner, director, or officer of, or professional employed by, the Firm, has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Firm.

7.      Neither I nor any principal, partner, director, or officer of, or professional employed by, the Firm, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which the Firm is to be employed.

8.      The Debtors owe the Firm $8,607.70 for prepetition services, the payment of which is subject to the limitations contained in title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

9.      As of the Petition Date, which was the date on which the Debtors commenced these chapter 11 cases, the Firm was/was not party to an agreement for indemnification with certain of the Debtors.  A copy of such agreement is attached as **Exhibit 1** to this Declaration.  I have reviewed the OCP Order and Procedures and understand that the indemnification provisions set

DocuSign Envelope ID: F5A7A1C6-D556-4A34-B2E9-B3B58DFAED7B

forth in the Agreement are subject, during the pendency of the Debtors' chapter 11 cases, to the modifications set forth in the OCP Order and Procedures.

10.      The Firm has read the OCP Order and Procedures and understands the limitation on compensation and reimbursement of expenses thereunder.  Specifically, the Firm understands that in the event it exceeds the applicable cap, the Firm will be required to file with the Court a fee application for the amount of its fees and expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable order of the Court.

11.      The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: _____10/10/2023_____

_____
Jim Thomas

DocuSigned by:

*Jim Thomas*

07035B1E2B4C4E5...

## AMENDMENT TO SERVICES AGREEMENT

YRC Service Enterprises, Inc. ("YRC") and New Penn, Inc. ("NP"), on the one hand, and Thomas and Thorngren, Inc. d/b/a Thomas & Company ("T&C"), on the other hand, are parties to a Services Agreement originally effective as of March 1, 2012, which includes an Exhibit A – Unemployment Cost Control Service and an Exhibit C – Wage and Employment Verification Service, and which previously has been amended by Addenda dated August 1, 2015, May 24, 2017, and July 1, 2018 (as previously amended, the "Services Agreement"). The parties and USF Holland, Inc. ("USF-H") and USF Reddaway, Inc. ("USF-R") hereby further amend the Services Agreement as follows:

1.     This Amendment shall take effect on April 1, 2021 (the "Amendment Effective Date").

2.     As of the Amendment Effective Date, USF-H and USF-R each shall be added as an "Employer" to the Services Agreement, such that, as of and following the Amendment Effective Date, YRC, NP, USF-H, and USF-R shall each be an "Employer" under the Services Agreement, and T&C shall, consistent with the Services Agreement, provide each of those entities with the services described in Services Agreement Exhibits A and C.

3.     As of the Amendment Effective Date, Section 3 ("Term") of the Services Agreement shall be replaced in its entirety with the following: "This Agreement shall commence on March 1, 2012 and, subject only to an earlier termination pursuant to Section 4, shall continue in effect through June 30, 2024; thereafter, this Agreement shall automatically renew annually for successive one-year terms until any party to this Agreement, including any party added to this Agreement by amendment, gives written notice of non-renewal at least sixty (60) days prior to the expiration of the then-current term, in which case this Agreement will terminate in its entirety at the end of the then-current term."

4     As of the Amendment Effective Date, Paragraph B in the "FEES" section of Services Agreement Exhibit A shall be replaced in its entirety with the following:  "Ongoing Service.  For the quarter beginning April 1, 2021, and for all subsequent quarters, $22,000.  Payment is due within thirty (30) days of date of invoice.  YRC Service Enterprises, Inc. shall be solely responsible for paying on behalf of each Employer the fees due under this Exhibit A."

5.     As of the Amendment Effective Date, Section 11 of the Services Agreement shall be deemed deleted in its entirety.

6.     Except as expressly stated in this Amendment, the Services Agreement, to include its Exhibits A and C, shall remain in full force and effect according to its terms.  This Amendment contains a complete statement of all terms on which the parties are amending the Services Agreement; no party has made any promise or representation to induce another party to enter into this Amendment that is not expressly stated in this Amendment.  This Amendment may be amended only by a subsequent written document executed by both T&C and all three Employers. This Amendment may be executed in counterparts, all of which taken together shall constitute one and the same legal instrument.  Copies and electronic images of this Amendment as executed shall have the same effect as originals.

1

YRC Enterprise Services, Inc.

By: _____

Printed Name: Deanna Parker

Title: Payroll Director

Date: May 27, 2021

Thomas and Thorngren, Inc. d/b/a
Thomas & Company

By: _____
Jim Thomas
07035B1E2B4C4E5...

Printed Name: _____Jim Thomas_____

Title: _____CEO_____

Date: _____6/9/2021_____

New Penn, Inc.

By: _____

Printed Name: Deanna Parker

Title:  Payroll Director

Date: May 27, 2021

USF Holland, Inc.

By: _____

Printed Name: Deanna Parker

Title: Payroll Director

Date: May 27, 2021

USF Reddaway, Inc.

By: _____

Printed Name: Deanna Parker

Title: Payroll Director

Date: May 27, 2021

*Each individual signing on behalf of a corporation above represents and warrants that they have authority to bind that corporation to the terms of this amendment.*

2



### EXHIBIT A
### UNEMPLOYMENT COST CONTROL SERVICE

THIS UNEMPLOYMENT COST CONTROL SERVICE EXHIBIT A ("Exhibit A") is between THOMAS & THORNGREN, a Tennessee corporation ("T&T") with its principal place of business at One Vantage Way, Suite A-105 Nashville, Tennessee 37228 , and  USF HOLLAND, INC. D/B/A HOLLAND, ("Employer"), with its principal place of business at ___Holland  MT___ . Exhibit A is subject to the Service Agreement (the "Agreement") executed by Holland Affiliate YRC Enterprise Service, Inc. and T&T executed by the parties and dated January 11, 2012.

SERVICE. The Service consists of the following:

A.    **Initial Review**

    1.    Review of state unemployment tax returns for the preceding three (3) calendar years
    2.    Preparation and filing of claims for refund when appropriate
    3.    Compilation of all data affecting future merit rating
    4.    Review of payroll procedures for internal control and tax reporting purposes

B.    **Experience Rating**

    1.    Verification of the accuracy of Employer's annual contribution rate as assigned by the state unemployment agency
    2.    Analysis of tax accounts for possible voluntary contributions, where permitted
    3.    Analysis of tax accounts for possible joint accounts, where permitted
    4.    Analysis of tax accounts for possible transfers of unemployment experience following an acquisition or merger
    5.    State unemployment tax account registration services including account closures will be provided
    6.    Rate forecasting is available upon the client's request
    7.    Assistance with resolution of all unemployment tax issues

C.    **Claims Supervision**

    1.    Supervision of response to each unemployment claim to ensure that unwarranted claims are protested
    2.    Consultations and preparation of Employer witnesses for administrative hearings
    3.    Unemployment hearing representation: Five in-person and five telephonic hearings represented will be included in this agreement. Should the client exceed the allotted amount, in-person representation will be billed at $225 per hearing and telephonic representation will be billed at $125 per hearing
    4.    Drafting and submission of written appeals and requests for administration review
    5.    Audit of benefit charges and protest of erroneous charges

D.    **Training / Continued Education**

    1.    Customized trainings specific to the client's needs will be provided upon the client's request
    2.    All trainings are available in person, via webinar or conference call
    3.    The client will be given access to all available training materials to be used at their convenience

4. All training provided will be included in the total fees for the Services provided

E.   Reporting Functions
1. Detailed reports of unemployment claims activity
2. Bulletins regarding changes in unemployment laws and procedures, when appropriate
3. Periodic visits to your office to review procedures which will result in control of Employer's unemployment tax liability

ASSISTANCE. The Assistance includes the following:
1. Inform all appropriate Employer Affiliates to participate with T&T in unemployment matters
2. Provide employee separation information as requested by T&T
3. Inform T&T of any changes in legal entities relating to existing or new Employer locations
4. Execute the limited Power of Attorney forms required by the state unemployment agencies
5. Provide records of quarterly state unemployment tax returns as requested by T&T
6. Provide information and records necessary for T&T to perform the initial three-year review

FEES.

A.   Initial Review. An amount equal to twenty-five percent (25%) of any refunds or tax savings resulting from T&T's review of unemployment tax matters for any period prior to the Effective Date. Payment is due when any such refunds are issued or tax savings are realized by Employer.

B.   Ongoing Service. Beginning July 1, 2012, $4,200 (Four thousand two hundred dollars) per quarter. Payment is due from Employer within forty-five (45) days of date of invoice. No payments for Ongoing Service will be due or payable to T&T prior to July 1, 2012.

T&T may amend this Exhibit A on thirty (30) day's written notice to Employer, and acceptance of any changes by Employer. Employer may terminate this Agreement without penalty within thirty (30) days after notice of such amendment by giving written notice of termination to T&T, provided that such termination shall not be effective until thirty (30) days after notice of termination is provided.

THOMAS & THORNGREN, INC.                    USF HOLLAND, INC. D/B/A HOLLAND

By _____                  By _Stephen M Blhbaugh_

Title: _SNP Sa/r)_                           Title: _Vice President, Human Resources_

Date: _2/16/2012_                           Date: _2/23/12_

2



**EXHIBIT C**

**WAGE AND EMPLOYMENT VERIFICATION SERVICE**

THIS UNEMPLOYMENT COST CONTROL SERVICE EXHIBIT C ("Exhibit C") is between THOMAS & THORNGREN, a Tennessee corporation ("T&T") with its principal place of business at One Vantage Way, Suite A-105 Nashville, Tennessee 37228 , and USF HOLLAND, INC. D/B/A HOLLAND, ("Employer"), with its principal place of business at Holland, MI . Exhibit C is subject to the Service Agreement (the "Agreement") executed by Holland Affiliate YRC Enterprise Service, Inc. and T&T executed by the parties and dated January 11, 2012.

<u>SERVICE</u>. The Service consists of the following:

1.  Respond to requests for employment information and salary history from government agencies

2.  Respond to third party requests for employment information and salary history

3.  Provide continuous access to the T&T verification system

4.  Provide detailed, monthly reports of wage verification activity

5.  Provide instruction cards to Employer to distribute to employees as needed

6.  Password protect all employment and wage data provided by Employer

7.  Retain copies of third party requests for a period of one (1) year (government agency requests will not be retained)

8.  No verification services to be outsourced by T&T unless approved by Employer

<u>ASSISTANCE</u>. The Assistance includes the following:

1.  Provide employee wage information via web interface or file download each payroll cycle

2.  Assure that all Employer locations have received instruction cards as provided by T&T

<u>FEES</u>. ($0.00 per inquiry for non-wage employment verification and $0.00 per inquiry for government agencies. There is no charge to Employer for non-governmental inquiries.) T&T will charge the inquiring party reasonable fees determined by T&T for other inquiries.

T&T may amend this <u>Exhibit C</u> on thirty (30) day's written notice to Employer, and acceptance of any changes by Employer. Employer may terminate this Agreement without penalty within thirty (30) days after notice of such amendment by giving written notice of termination to T&T; provided that such termination shall not be effective until thirty (30) days after notice of termination is provided.

THOMAS & THORNGREN, INC.                    USF HOLLAND, INC. D/B/A HOLLAND

By _____                  By _Stephen M. Shubaugh_

Title: SVP Sales

Date: 2/16/2012

Title: Vice President, Human Resources

Date: 2/23/12

ADDENDUM TO THE SERVICE AGREEMENT

Thomas & Thorngren, Inc. DBA Thomas and Company ("T&C") and the undersigned ("Employer") agree as follows:

Term. This Agreement shall commence on the Effective Date (defined below) and continue for a period of three (3) years. Thereafter, this Agreement shall automatically renew annually until either party gives written notice of non-renewal at least sixty (60) days prior to expiration of the then-current term. This agreement will serve as an extension to the original Service Agreement executed on 1/20/2012.

Fees – Unemployment Cost Control Service:

Ongoing Service - Payment is due within thirty (30) days of date of invoice.

Quarterly Fee: $19,500

Wage and Employment Verification:

Ongoing Service: $0.00

T&T and Employer hereby execute this addendum as of _July 1, 2018_ (the "Effective Date").

THOMAS & COMPANY

By _____

Print Name: _Jim Thomas_

Title: _CEO_

Address:  One Vantage Way, Suite A105
          Nashville, TN 37228

YRC ENTERPRISE SERVICES, INC.

By _Deanna Parker_

Print Name: _Deanna Parker_

Title: _Payroll Director_

Address:  10990 Roe Avenue
          Overland Park KS 66211

## ADDENDUM TO THE SERVICE AGREEMENT

Thomas & Thorngren, Inc. ("T&T") and YRC Enterprise Services, Inc. ("Employer") agree as follows:

Term.  This Agreement shall commence on the Effective Date (defined below) and continue for a period of three (3) years. Thereafter, this Agreement shall automatically renew annually until either party gives written notice of non-renewal at least sixty (60) days prior to expiration of the then-current term. This document will serve as an extension to the original Service Agreement signed on 1/20/2012.

Fees — Unemployment Cost Control Service

  Ongoing Service - $29,000 per quarter. Payment is due within thirty (30) days of date of invoice.

  Wage and Employment Verification

  Ongoing Service - $0.00

T&T and Employer hereby execute this addendum as of  8|1          , 2015 (the "Effective Date").

THOMAS & THORNGREN, INC.

By_____

Print Name: _____Jim Thomas_____

Title:_____Chief Operating Officer_____

Address:  One Vantage Way, Suite A105
     Nashville, TN  37228

YRC ENTERPRISE SERVICES, INC.

By_____

Print Name: _Phil J. Gaines_

Title: _Senior Vice President—Finance_

Address: 10990 Roe Avenue
     Overland Park, KS 66211

YRC

## SERVICE AGREEMENT

**THIS SERVICE AGREEMENT** (the "Agreement") is between **THOMAS & THORNGREN**, a Tennessee corporation ("T&T") with its principal place of business at One Vantage Way, Suite A-105 Nashville, Tennessee 37228 , and **YRC ENTERPRISE SERVICES, INC.**, a Delaware corporation, ("Employer"), with its principal place of business at 10990 Roe Avenue, Overland Park, KS 66211.

This Agreement includes and incorporates by this reference the following general terms and conditions, as well as those Schedules referencing this Agreement which Company and Customer and its Affiliates may execute from time to time for the purchase or provision of Services. The terms of this Agreement shall apply to all Services provided by T&T. The terms and conditions set forth in this Agreement shall control in the event that there are different or additional terms set forth in any other document submitted by Employer or acceptance form or invoice issued by T&T. The terms and conditions of any future-executed Schedule shall incorporate the terms and conditions of this Agreement.

1.     Service.  T&T shall provide to Employer the services described on Exhibit(s) hereto (the "Services").  Employer hereby appoints T&T as its agent for purposes of providing the Services. Employer shall provide to T&T all information and assistance reasonably necessary to permit T&T to provide the Services, including any assistance described on Exhibit(s) (the "Assistance"). Employer shall provide current and accurate data to T&T in such formats and timeframes reasonably requested by T&T. The parties shall comply with all laws applicable to their respective operations.

2.     Fees.  Employer shall timely pay to T&T the fees described on Exhibit(s) (the "Fees").

2.1.     Invoices.  All payments of Fees hereunder shall be payable 2% 10 days, Net 45 following Employer's receipt of T&T's invoice unless otherwise set forth on the Schedule.  Employer may also elect to submit payments via Visa or other credit card. T&T will invoice Employer for Services after delivery thereof to Employer unless otherwise set forth on the Schedule.  If T&T does not invoice Employer within sixty (60) days after delivery of Services, the invoice will be discounted by 25%. If T&T does not invoice Employer within one hundred twenty (120) days after delivery of Services, the invoice will be waived.  Employer must notify T&T of any dispute as to the amount of any invoice within ninety (90) days from the date of the receipt or the invoice will be deemed undisputed and accepted by Employer.  Any amount in dispute shall not be payable until resolution of such dispute.

2.2.     Other Fees.  All other applicable fees, if any, shall be payable thirty (30) days from the date of T&T's invoice.

2.3.     Taxes.  The fees specified in this Agreement do not include taxes, duties or other fees.  If T&T is required to pay (i) sales, use, property, value-added, withholding or other taxes, (ii) any customs or other duties, or (iii) any import, warehouse or other fees, associated with the importation or delivery based on Services provided in this Agreement or on Employer's use of Services, then such taxes, duties or fees shall be billed to and paid by Employer.  If Employer is permitted to declare any such taxes, Employer shall declare and pay such taxes and T&T shall not be required to invoice Employer.  This Section shall not apply to taxes based on T&T's net income or payroll taxes.

3.     Term.  This Agreement shall commence on March 1, 2012the "Effective Date"  and continue for a period of sixteen (16) months, expiring on June 30, 2013.  Thereafter, this Agreement shall automatically renew month to month until either party gives written notice of non-renewal at least sixty (30) days prior to expiration of the then-current term.

4.     Termination.  If either party fails to perform its obligations under this Agreement in any material respect, then the non-breaching party may terminate this Agreement upon thirty (30) days prior written notice to the breaching party, setting forth the basis of breach, provided that such termination shall

1

be effective only if the breaching party fails to cure the breach within the thirty (30) day period. Accrued payment obligations, this sentence, Sections 6 through 9 and Section 11 shall survive expiration or termination of this Agreement.

5.    <u>Indemnification</u>. Each party (an "Indemnitor") shall defend and indemnify the other party and its employees, officers, directors and agents (the "Indemnitee") against all damages for bodily injury, death, or damage to real or tangible personal property proximately caused by the Indemnitor in the course of performing this Agreement; provided that (i) the Indemnitor receives prompt written notice of the claim from the Indemnitee under this section, (ii) the Indemnitor has the right to control the defense of such claim and any related settlement negotiations, and (iii) the Indemnitee provides to the Indemnitor, at the Indemnitor's request and expense, with the assistance, information and authority necessary to perform the Indemnitor's obligations under this section.

6.    <u>LIMITATIONS</u>. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, EXCEPT PURSUANT TO SECTIONS 2, 5 AND 6, IN NO EVENT SHALL EITHER PARTY OR ITS OFFICERS, DIRECTORS, AGENTS OR EMPLOYEES BE LIABLE FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE SERVICES, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EXCEPT PURSUANT TO SECTIONS 2, 5, 6 AND THE LAST SENTENCE OF SECTION 11.3, IN NO EVENT SHALL DAMAGES OF ANY KIND PAYABLE BY EITHER PARTY ON ANY BASIS WHATSOEVER EXCEED THE AGGREGATE FEES PAID AND DUE TO T&T FROM EMPLOYER FOR SERVICES RENDERED DURING THE TWELVE (12) MONTHS PRIOR TO THE EVENT THAT GIVES RISE TO THE CLAIM.

7.    <u>Warranty</u>. T&T warrants that all Services will be performed in all material respects in a reasonable and workmanlike manner.

T&T warrants to Employer that the necessary licenses and bonds have been secured by T&T for performance of the Services covered by this Agreement. T&T further warrants that the Services performed hereunder will be performed in a manner in accord with any statutes, regulations, ordinances or contracts applicable to the Services covered hereunder, and will be performed in a manner in accord with ordinary business custom and usage.

T&T warrants that neither the performance of its duties under this Agreement, nor any deliverable or the use thereof, will infringe any patent, copyright, trade secret or other proprietary right of any third party. T&T warrants that no deliverable shall contain any material owned by any third party, except as disclosed to Employer in writing prior to T&T's incorporating such material into any deliverable, and that as to any such material, T&T shall have all rights necessary to provide to Employer the full, unrestricted benefits to such material as incorporated into the deliverable, including without limitation the right to use, market, distribute and copy, and to provide such rights to others.

T&T warrants that all computer work product delivered hereunder, and the media on which any copy is so delivered, shall not contain any code which will destroy or alter data or program code or interfere with the operation of the computer on which the software is used, or any other computer with which such computer exchanges data or storage media, except to the extent such actions are described in written documentation furnished with the deliverables so as to be under the knowing control of the ultimate user of the software.

It is not anticipated that T&T's performance of Services pursuant to this Agreement will result in the development of any copyrightable works, ideas, discoveries, inventions, patents, products, or other information ("Work Product"). Notwithstanding the foregoing, if any Service to be performed by T&T is likely to result in the development of Work Product, the parties will agree in writing as to the ownership of such Work Product before the Service is performed by T&T."

2

T&T MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, AND DISCLAIMS ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NONINFRINGEMENT, WITH RESPECT TO ANY SERVICES, SOFTWARE, DOCUMENTATION, OR ANY OTHER ITEM PROVIDED UNDER THIS AGREEMENT.

8.      Confidential Information. Each party will use the same care to prevent disclosing to third parties the proprietary business information of the other party as it employs to avoid disclosure of its own information of the same nature, but in no event less than a reasonable standard of care. Neither party will make any use of the other party's proprietary business information except to perform its duties under this Agreement. This section will not apply to any information that the receiving party can demonstrate: (i) was in the public domain or possession of the receiving party at the time of disclosure to it; (ii) became a part of the public domain, after disclosure to the receiving party, through no fault of its own; (iii) was received from a third party who had a lawful right to disclose such information; or (iv) is required to be disclosed by law; *provided, however,* that the responding party shall first have given notice to the other party and shall have made a reasonable effort to obtain a protective order requiring that the Confidential Information so disclosed be used only for the purposes for which the order was issued.

9.      Insurance. T&T will maintain commercial general liability insurance for claims arising out of liability for bodily injury, death, personal injury, advertising injury and property damage in the amount of not less than $1,000,000 per occurrence, and $2,000,000 aggregate. T&T will maintain errors and omission insurance in the amount of $1,000,000 per occurrence, and $1,000,000 aggregate Coverage shall be placed with a financially responsible insurance company and shall include Employer as an Additional Insured. Upon request, T&T shall supply Employer with a certificate of insurance evidencing required coverage and shall provide Employer with thirty (30) days' advance notice in the event of a material change or a cancellation of coverage.

10.     Miscellaneous.

10.1.   No Agency. Except as set forth in Section 1 and except for any separately executed power of attorney, the parties are independent contractors and no employment, agency, partnership or joint venture is created by this Agreement.

10.2.   Interpretation. The headings of the various sections of this Agreement are for convenience of reference only, and shall not affect the express provisions or meaning of this Agreement. No failure or delay by a party in exercising any right, power or privilege under this agreement will operate as a waiver thereof nor will any single or partial exercise thereof preclude any other or further exercise of any right, power or privilege hereunder. A waiver by a party of a breach or failure to perform by the other party will not constitute a waiver of any subsequent breach or failure. The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of the remaining provisions of this Agreement. This Agreement may not be modified except by a writing executed by the party to be charged. This Agreement constitutes the entire agreement of the parties hereto and supersedes all prior agreements and representations and warranties with respect to the subject matter hereof. This Agreement may be executed in counterparts, all of which together will constitute the same agreement. Any ambiguities in this Agreement will not be construed against the drafter.

10.3.   Governing Law; Venue. This Agreement will be governed by the laws of the State of New York without regard to conflict of laws provisions. Each party hereby submits to the exclusive jurisdiction of the State and Federal courts sitting in New York for all actions arising out of or relating to this Agreement (and agrees not to commence any such action except in such courts) and waives any objection to such venue. The prevailing party in any such litigation will be entitled to recover its litigation-related costs, including reasonable attorney's fees, from the non-prevailing party.

3

10.4.  <u>Assignment</u>.  This Agreement may not be transferred or assigned, directly or indirectly, by assignment, operation of law, change of control or otherwise; provided that either party may assign or transfer this Agreement to an Affiliate of to any entity that acquires all or substantially all of its assets, merges or consolidates with such party, or acquires a majority of the voting securities of such party. This Agreement shall bind the parties' permitted successors and assigns.

10.5.  <u>Force Majeure</u>.  Neither party shall be responsible for any failure or delay in the performance of any obligations to the extent that failure is caused by acts of God, acts of terror, war, flood, fire, labor disputes, acts or omissions of the other party, non-delivery or delays in delivery by any supplier of goods or services, or other events or circumstances beyond the reasonable control of such party.

10.6.  <u>Notices</u>.  All notices required to be sent hereunder shall be in writing and shall be deemed to have been given upon (i) the date sent by confirmed facsimile, as long as such facsimile are followed by at least one (1) original copy sent by a nationally recognized courier service, (ii) on the date it was delivered by courier, or (iii) if by certified mail return receipt requested, on the date received, to the addresses set forth above and to the attention of the signatories of this Agreement and the relevant Schedule, or to such other address or individual as the parties may specify from time to time by written notice to the other party.

10.7.  <u>T&T Personnel</u>.  All personnel supplied or used by T&T shall be deemed employees or subcontractors of T&T and will not be considered employees, agents or subcontractors of Employer for any purpose whatsoever. T&T assumes full responsibility for the actions of all such personnel while performing services under this Agreement and for the payment of their compensation (including, if applicable, withholding of income taxes, and the payment and withholding of social security and other payroll taxes), workers' compensation, disability benefits and the like to the extent applicable to the personnel involved. Notwithstanding and without in any way limiting any terms and conditions set forth in this Agreement, all subcontractors of T&T shall be deemed to have made all of the representations and warranties of T&T set forth herein and shall be subject to any obligations of T&T hereunder, and, if requested by Employer, T&T shall obtain from each subcontractor its written consent to and acknowledgment of the terms of this Agreement. T&T shall be responsible for any breach by any subcontractor of any representations, warranties or obligations set forth in this Agreement. No part of Services to be provided pursuant to any Schedule may be subcontracted without the written consent by Employer, which such consent shall be in Employer's sole discretion.

10.8.  <u>Use of Name/Marks</u>.  Neither party shall advertise, market or otherwise make known to others any information relating to the services performed under this Agreement, including mentioning or implying the name of the other party, or any of its personnel, without first obtaining the prior written consent of such other party. The parties recognize that they have no right, title or interest, propriety or otherwise, in or to the name or any logo, copyright, service mark or trademark owned or licensed by the other party.

10.9.  <u>Entire Agreement</u>.  This Agreement, together with the attached exhibits which are incorporated by reference, constitutes the complete agreement between the parties and supersedes all prior or contemporaneous agreements or representations, written or oral, concerning the subject matter of this Agreement and such exhibits. This Agreement may not be modified or amended except in writing signed by a duly authorized representative of each party; No other act, document, usage or custom shall be deemed to amend or modify this Agreement.

10.10.  <u>Counterparts and Exchanges by Fax</u>.  This Agreement may be executed simultaneously in two (2) or more counterparts, each of which will be considered an original, but all of

4

which together will constitute one and the same instrument. The exchange of a fully executed Agreement (in counterparts or otherwise) by fax shall be sufficient to bind the parties to the terms and conditions of this Agreement.

10.11.  Security. Where T&T is granted access to information systems, as part of their contract(s), T&T agrees to comply with the Employer's security policies and procedures. This includes full and unconditional compliance with legal and regulatory requirements of the country in which the organization is performing services. T&T agrees to be bound by Employer's current "Information Security Requirements" as may be, and will be, amended unilaterally by Employer from time to time throughout the duration of this agreement. A current version (as of time of execution of this agreement hereto) of the Information Security Requirements is attached hereto as "information only" and will not, and does not, change the legal obligation of T&T to be subject to the most current version in effect by Employer at any particular time. A current version is available at anytime upon request by T&T.

11.  Employer Affiliate Usage. For the purposes of this Agreement, Employer Affiliates may utilize the services provided by T&T hereunder. T&T agrees that all such usage of the services by Employer Affiliates will be separate dealings between T&T and such Employer Affiliate pursuant to the terms and conditions of this Agreement and that Employer does not guarantee the performance of its Affiliates. T&T further agrees that all usage of the services by Employer Affiliates will contribute toward any minimum commitments, usage guarantees, etc. as may be set forth in this Agreement or its Schedules and attachments.

11.1.  "Affiliate(s)" shall mean (1) all business units and divisions of a party or its parents and (2) any entity controlled by, controlling, or under common control with such party. Such entity shall be deemed to be an "Affiliate" only so long as such control exists. Upon request, the parties agree to confirm the Affiliate status of a particular entity.

T&T and Employer hereby execute this Agreement as of ___1/20___, 2012.

THOMAS & THORNGREN, INC.                    YRC ENTERPRISE SERVICES, INC.

By _____                  By _____

Title: _Sup Sales_                           Title: _PRESIDENT YRC_

Address:  One Vantage Way, Suite A105        Address: _____
          Nashville, TN 37228                         _____
                                                      _____

## EXHIBIT C
### WAGE AND EMPLOYMENT VERIFICATION SERVICE

**SERVICE.** The Service consists of the following:

1. Respond to requests for employment information and salary history from government agencies

2. Respond to third party requests for employment information and salary history

3. Provide continuous access to the T&T verification system

4. Provide detailed, monthly reports of wage verification activity

5. Provide instruction cards to Employer to distribute to employees as needed

6. Password protect all employment and wage data provided by Employer

7. Retain copies of third party requests for a period of one (1) year (government agency requests will not be retained)

8. No verification services to be outsourced by T&T unless approved by Employer

**ASSISTANCE.** The Assistance includes the following:

1. Provide employee wage information via web interface or file download each payroll cycle

2. Assure that all Employer locations have received instruction cards as provided by T&T

**FEES.** ($0.00 per inquiry for non-wage employment verification and $0.00 per inquiry for government agencies. There is no charge to Employer for non-governmental inquiries.) T&T will charge the inquiring party reasonable fees determined by T&T for other inquiries.

T&T may amend this **Exhibit C** on thirty (30) day's written notice to Employer, and acceptance of any changes by Employer. Employer may terminate this Agreement without penalty within thirty (30) days after notice of such amendment by giving written notice of termination to T&T, provided that such termination shall not be effective until thirty (30) days after notice of termination is provided.

THOMAS & THORNGREN, INC.                    YRC ENTERPRISE SERVICES, INC.

By _____                  By _____

Title: _____SVP Sales_____                   Title: ___PRESIDENT YRC___

Date: ___1/11/2012___                        Date: ___1/19/12___

## SERVICE AGREEMENT

**THIS SERVICE AGREEMENT** (the "Agreement") is between **THOMAS & THORNGREN**, a Tennessee corporation ("T&T") with its principal place of business at One Vantage Way, Suite A-105 Nashville, Tennessee 37228 , and **YRC ENTERPRISE SERVICES, INC.**, a Delaware corporation, ("Employer"), with its principal place of business at 10990 Roe Avenue, Overland Park, KS 66211.

This Agreement includes and incorporates by this reference the following general terms and conditions, as well as those Schedules referencing this Agreement which Company and Customer and its Affiliates may execute from time to time for the purchase or provision of Services. The terms of this Agreement shall apply to all Services provided by T&T. The terms and conditions set forth in this Agreement shall control in the event that there are different or additional terms set forth in any other document submitted by Employer or acceptance form or invoice issued by T&T. The terms and conditions of any future-executed Schedule shall incorporate the terms and conditions of this Agreement.

1.    <u>Service</u>. T&T shall provide to Employer the services described on <u>Exhibit(s)</u> hereto (the "Services"). Employer hereby appoints T&T as its agent for purposes of providing the Services. Employer shall provide to T&T all information and assistance reasonably necessary to permit T&T to provide the Services, including any assistance described on <u>Exhibit(s)</u> (the "Assistance"). Employer shall provide current and accurate data to T&T in such formats and timeframes reasonably requested by T&T. The parties shall comply with all laws applicable to their respective operations.

2.    <u>Fees</u>. Employer shall timely pay to T&T the fees described on <u>Exhibit(s)</u> (the "Fees").

2.1.    <u>Invoices</u>. All payments of Fees hereunder shall be payable 2% 10 days, Net 45 following Employer's receipt of T&T's invoice unless otherwise set forth on the Schedule. Employer may also elect to submit payments via Visa or other credit card. T&T will invoice Employer for Services after delivery thereof to Employer unless otherwise set forth on the Schedule. If T&T does not invoice Employer within sixty (60) days after delivery of Services, the invoice will be discounted by 25%. If T&T does not invoice Employer within one hundred twenty (120) days after delivery of Services, the invoice will be waived. Employer must notify T&T of any dispute as to the amount of any invoice within ninety (90) days from the date of the receipt or the invoice will be deemed undisputed and accepted by Employer. Any amount in dispute shall not be payable until resolution of such dispute.

2.2.    <u>Other Fees</u>. All other applicable fees, if any, shall be payable thirty (30) days from the date of T&T's invoice.

2.3.    <u>Taxes</u>. The fees specified in this Agreement do not include taxes, duties or other fees. If T&T is required to pay (i) sales, use, property, value-added, withholding or other taxes, (ii) any customs or other duties, or (iii) any import, warehouse or other fees, associated with the importation or delivery based on Services provided in this Agreement or on Employer's use of Services, then such taxes, duties or fees shall be billed to and paid by Employer. If Employer is permitted to declare any such taxes, Employer shall declare and pay such taxes and T&T shall not be required to invoice Employer. This Section shall not apply to taxes based on T&T's net income or payroll taxes.

3.    <u>Term</u>. This Agreement shall commence on March 1, 2012 the "Effective Date" and continue for a period of sixteen (16) months, expiring on June 30, 2013. Thereafter, this Agreement shall automatically renew month to month until either party gives written notice of non-renewal at least sixty (30) days prior to expiration of the then-current term.

4.    <u>Termination</u>. If either party fails to perform its obligations under this Agreement in any material respect, then the non-breaching party may terminate this Agreement upon thirty (30) days prior written notice to the breaching party, setting forth the basis of breach, provided that such termination shall

be effective only if the breaching party fails to cure the breach within the thirty (30) day period. Accrued payment obligations, this sentence, Sections 6 through 9 and Section 11 shall survive expiration or termination of this Agreement.

5.    Indemnification. Each party (an "Indemnitor") shall defend and indemnify the other party and its employees, officers, directors and agents (the "Indemnitee") against all damages for bodily injury, death, or damage to real or tangible personal property proximately caused by the Indemnitor in the course of performing this Agreement; provided that (i) the Indemnitor receives prompt written notice of the claim from the Indemnitee under this section, (ii) the Indemnitor has the right to control the defense of such claim and any related settlement negotiations, and (iii) the Indemnitee provides to the Indemnitor, at the Indemnitor's request and expense, with the assistance, information and authority necessary to perform the Indemnitor's obligations under this section.

6.    LIMITATIONS. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, EXCEPT PURSUANT TO SECTIONS 2, 5 AND 6, IN NO EVENT SHALL EITHER PARTY OR ITS OFFICERS, DIRECTORS, AGENTS OR EMPLOYEES BE LIABLE FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE SERVICES, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EXCEPT PURSUANT TO SECTIONS 2, 5, 6 AND THE LAST SENTENCE OF SECTION 11.3, IN NO EVENT SHALL DAMAGES OF ANY KIND PAYABLE BY EITHER PARTY ON ANY BASIS WHATSOEVER EXCEED THE AGGREGATE FEES PAID AND DUE TO T&T FROM EMPLOYER FOR SERVICES RENDERED DURING THE TWELVE (12) MONTHS PRIOR TO THE EVENT THAT GIVES RISE TO THE CLAIM.

7.    Warranty. T&T warrants that all Services will be performed in all material respects in a reasonable and workmanlike manner.

T&T warrants to Employer that the necessary licenses and bonds have been secured by T&T for performance of the Services covered by this Agreement. T&T further warrants that the Services performed hereunder will be performed in a manner in accord with any statutes, regulations, ordinances or contracts applicable to the Services covered hereunder, and will be performed in a manner in accord with ordinary business custom and usage.

T&T warrants that neither the performance of its duties under this Agreement, nor any deliverable or the use thereof, will infringe any patent, copyright, trade secret or other proprietary right of any third party. T&T warrants that no deliverable shall contain any material owned by any third party, except as disclosed to Employer in writing prior to T&T's incorporating such material into any deliverable, and that as to any such material, T&T shall have all rights necessary to provide to Employer the full, unrestricted benefits to such material as incorporated into the deliverable, including without limitation the right to use, market, distribute and copy, and to provide such rights to others.

T&T warrants that all computer work product delivered hereunder, and the media on which any copy is so delivered, shall not contain any code which will destroy or alter data or program code or interfere with the operation of the computer on which the software is used, or any other computer with which such computer exchanges data or storage media, except to the extent such actions are described in written documentation furnished with the deliverables so as to be under the knowing control of the ultimate user of the software.

It is not anticipated that T&T's performance of Services pursuant to this Agreement will result in the development of any copyrightable works, ideas, discoveries, inventions, patents, products, or other information ("Work Product"). Notwithstanding the foregoing, if any Service to be performed by T&T is likely to result in the development of Work Product, the parties will agree in writing as to the ownership of such Work Product before the Service is performed by T&T."

2

T&T MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, AND DISCLAIMS ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NONINFRINGEMENT, WITH RESPECT TO ANY SERVICES, SOFTWARE, DOCUMENTATION, OR ANY OTHER ITEM PROVIDED UNDER THIS AGREEMENT.

8.      Confidential Information.  Each party will use the same care to prevent disclosing to third parties the proprietary business information of the other party as it employs to avoid disclosure of its own information of the same nature, but in no event less than a reasonable standard of care.  Neither party will make any use of the other party's proprietary business information except to perform its duties under this Agreement.  This section will not apply to any information that the receiving party can demonstrate: (i) was in the public domain or possession of the receiving party at the time of disclosure to it; (ii) became a part of the public domain, after disclosure to the receiving party, through no fault of its own; (iii) was received from a third party who had a lawful right to disclose such information; or (iv) is required to be disclosed by law; *provided, however,* that the responding party shall first have given notice to the other party and shall have made a reasonable effort to obtain a protective order requiring that the Confidential Information so disclosed be used only for the purposes for which the order was issued.

9.      Insurance.  T&T will maintain commercial general liability insurance for claims arising out of liability for bodily injury, death, personal injury, advertising injury and property damage in the amount of not less than $1,000,000 per occurrence, and $2,000,000 aggregate.  T&T will maintain errors and omission insurance in the amount of $1,000,000 per occurrence, and $1,000,000 aggregate Coverage shall be placed with a financially responsible insurance company and shall include Employer as an Additional Insured.  Upon request, T&T shall supply Employer with a certificate of insurance evidencing required coverage and shall provide Employer with thirty (30) days' advance notice in the event of a material change or a cancellation of coverage.

10.     Miscellaneous.

10.1.   No Agency.  Except as set forth in Section 1 and except for any separately executed power of attorney, the parties are independent contractors and no employment, agency, partnership or joint venture is created by this Agreement.

10.2.   Interpretation.  The headings of the various sections of this Agreement are for convenience of reference only, and shall not affect the express provisions or meaning of this Agreement.  No failure or delay by a party in exercising any right, power or privilege under this agreement will operate as a waiver thereof nor will any single or partial exercise thereof preclude any other or further exercise of any right, power or privilege hereunder.  A waiver by a party of a breach or failure to perform by the other party will not constitute a waiver of any subsequent breach or failure.  The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of the remaining provisions of this Agreement.  This Agreement may not be modified except by a writing executed by the party to be charged.  This Agreement constitutes the entire agreement of the parties hereto and supersedes all prior agreements and representations and warranties with respect to the subject matter hereof. This Agreement may be executed in counterparts, all of which together will constitute the same agreement.  Any ambiguities in this Agreement will not be construed against the drafter.

10.3.   Governing Law; Venue.  This Agreement will be governed by the laws of the State of New York without regard to conflict of laws provisions.  Each party hereby submits to the exclusive jurisdiction of the State and Federal courts sitting in New York for all actions arising out of or relating to this Agreement (and agrees not to commence any such action except in such courts) and waives any objection to such venue.  The prevailing party in any such litigation will be entitled to recover its litigation-related costs, including reasonable attorney's fees, from the non-prevailing party.

3

10.4.    Assignment.  This Agreement may not be transferred or assigned, directly or indirectly, by assignment, operation of law, change of control or otherwise; provided that either party may assign or transfer this Agreement to an Affiliate of to any entity that acquires all or substantially all of its assets, merges or consolidates with such party, or acquires a majority of the voting securities of such party. This Agreement shall bind the parties' permitted successors and assigns.

10.5.    Force Majeure.  Neither party shall be responsible for any failure or delay in the performance of any obligations to the extent that failure is caused by acts of God, acts of terror, war, flood, fire, labor disputes, acts or omissions of the other party, non-delivery or delays in delivery by any supplier of goods or services, or other events or circumstances beyond the reasonable control of such party.

10.6.    Notices.  All notices required to be sent hereunder shall be in writing and shall be deemed to have been given upon (i) the date sent by confirmed facsimile, as long as such facsimile are followed by at least one (1) original copy sent by a nationally recognized courier service, (ii) on the date it was delivered by courier, or (iii) if by certified mail return receipt requested, on the date received, to the addresses set forth above and to the attention of the signatories of this Agreement and the relevant Schedule, or to such other address or individual as the parties may specify from time to time by written notice to the other party.

10.7.    T&T Personnel.  All personnel supplied or used by T&T shall be deemed employees or subcontractors of T&T and will not be considered employees, agents or subcontractors of Employer for any purpose whatsoever.  T&T assumes full responsibility for the actions of all such personnel while performing services under this Agreement and for the payment of their compensation (including, if applicable, withholding of income taxes, and the payment and withholding of social security and other payroll taxes), workers' compensation, disability benefits and the like to the extent applicable to the personnel involved.  Notwithstanding and without in any way limiting any terms and conditions set forth in this Agreement, all subcontractors of T&T shall be deemed to have made all of the representations and warranties of T&T set forth herein and shall be subject to any obligations of T&T hereunder, and, if requested by Employer, T&T shall obtain from each subcontractor its written consent to and acknowledgment of the terms of this Agreement.  T&T shall be responsible for any breach by any subcontractor of any representations, warranties or obligations set forth in this Agreement.  No part of Services to be provided pursuant to any Schedule may be subcontracted without the written consent by Employer, which such consent shall be in Employer's sole discretion.

10.8.    Use of Name/Marks.  Neither party shall advertise, market or otherwise make known to others any information relating to the services performed under this Agreement, including mentioning or implying the name of the other party, or any of its personnel, without first obtaining the prior written consent of such other party.  The parties recognize that they have no right, title or interest, propriety or otherwise, in or to the name or any logo, copyright, service mark or trademark owned or licensed by the other party.

10.9.    Entire Agreement.  This Agreement, together with the attached exhibits which are incorporated by reference, constitutes the complete agreement between the parties and supersedes all prior or contemporaneous agreements or representations, written or oral, concerning the subject matter of this Agreement and such exhibits.  This Agreement may not be modified or amended except in writing signed by a duly authorized representative of each party; No other act, document, usage or custom shall be deemed to amend or modify this Agreement.

10.10.   Counterparts and Exchanges by Fax.  This Agreement may be executed simultaneously in two (2) or more counterparts, each of which will be considered an original, but all of

which together will constitute one and the same instrument. The exchange of a fully executed Agreement (in counterparts or otherwise) by fax shall be sufficient to bind the parties to the terms and conditions of this Agreement.

       10.11.  Security. Where T&T is granted access to information systems, as part of their contract(s), T&T agrees to comply with the Employer's security policies and procedures. This includes full and unconditional compliance with legal and regulatory requirements of the country in which the organization is performing services. T&T agrees to be bound by Employer's current "Information Security Requirements" as may be, and will be, amended unilaterally by Employer from time to time throughout the duration of this agreement. A current version (as of time of execution of this agreement hereto) of the Information Security Requirements is attached hereto as "information only" and will not, and does not, change the legal obligation of T&T to be subject to the most current version in effect by Employer at any particular time. A current version is available at anytime upon request by T&T.

      11.    Employer Affiliate Usage. For the purposes of this Agreement, Employer Affiliates may utilize the services provided by T&T hereunder. T&T agrees that all such usage of the services by Employer Affiliates will be separate dealings between T&T and such Employer Affiliate pursuant to the terms and conditions of this Agreement and that Employer does not guarantee the performance of its Affiliates. T&T further agrees that all usage of the services by Employer Affiliates will contribute toward any minimum commitments, usage guarantees, etc. as may be set forth in this Agreement or its Schedules and attachments.

      11.1.  "Affiliate(s)" shall mean (1) all business units and divisions of a party or its parents and (2) any entity controlled by, controlling, or under common control with such party. Such entity shall be deemed to be an "Affiliate" only so long as such control exists. Upon request, the parties agree to confirm the Affiliate status of a particular entity.

T&T and Employer hereby execute this Agreement as of _____1/20_____, 2012.

THOMAS & THORNGREN, INC.

By _____

Title: Sr.P Sales

Address: One Vantage Way, Suite A105
           Nashville, TN 37228

YRC ENTERPRISE SERVICES, INC.

By _____

Title: _____President YRC_____

Address: _____
         _____
         _____

**EXHIBIT A**
**UNEMPLOYMENT COST CONTROL SERVICE**

<u>SERVICE</u>. The Service consists of the following:

A.    <u>Initial Review</u>

    1.    Review of state unemployment tax returns for the preceding three (3) calendar years
    2.    Preparation and filing of claims for refund when appropriate
    3.    Compilation of all data affecting future merit rating
    4.    Review of payroll procedures for internal control and tax reporting purposes

B.    <u>Experience Rating</u>

    1.    Verification of the accuracy of Employer's annual contribution rate as assigned by the state unemployment agency
    2.    Analysis of tax accounts for possible voluntary contributions, where permitted
    3.    Analysis of tax accounts for possible joint accounts, where permitted
    4.    Analysis of tax accounts for possible transfers of unemployment experience following an acquisition or merger
    5.    State unemployment tax account registration services including account closures will be provided
    6.    Rate forecasting is available upon the client's request
    7.    Assistance with resolution of all unemployment tax issues

C.    <u>Claims Supervision</u>

    1.    Supervision of response to each unemployment claim to ensure that unwarranted claims are protested
    2.    Consultations and preparation of Employer witnesses for administrative hearings
    3.    Unemployment hearing representation: Ten in-person and ten telephonic hearings represented will be included in this agreement. Should the client exceed the allotted amount, in-person representation will be billed at $225 per hearing and telephonic representation will be billed at $125 per hearing
    4.    Drafting and submission of written appeals and requests for administration review
    5.    Audit of benefit charges and protest of erroneous charges

D.    <u>Training / Continued Education</u>

    1.    Customized trainings specific to the client's needs will be provided upon the client's request
    2.    All trainings are available in person, via webinar or conference call
    3.    The client will be given access to all available training materials to be used at their convenience
    4.    All training provided will be included in the total fees for the Services provided

E.    <u>Reporting Functions</u>

    1.    Detailed reports of unemployment claims activity
    2.    Bulletins regarding changes in unemployment laws and procedures, when appropriate

3.    Periodic visits to your office to review procedures which will result in control of Employer's unemployment tax liability

ASSISTANCE.  The Assistance includes the following:

1.    Inform all appropriate Employer Affiliates to participate with T&T in unemployment matters
2.    Provide employee separation information as requested by T&T
3.    Inform T&T of any changes in legal entities relating to existing or new Employer locations
4.    Execute the limited Power of Attorney forms required by the state unemployment agencies
5.    Provide records of quarterly state unemployment tax returns as requested by T&T
6.    Provide information and records necessary for T&T to perform the initial three-year review

FEES.

A.    Initial Review.  An amount equal to twenty-five percent (25%) of any refunds or tax savings resulting from T&T's review of unemployment tax matters for any period prior to the Effective Date. Payment is due when any such refunds are issued or tax savings are realized by Employer.

B.    Ongoing Service.  Beginning July 1, 2012, $36,000 (Thirty-six thousand dollars) per quarter. Payment is due from Employer within forty-five (45) days of date of invoice. No payments for Ongoing Service will be due or payable to T&T prior to July 1, 2012.

T&T may amend this Exhibit A on thirty (30) day's written notice to Employer, and acceptance of any changes by Employer.  Employer may terminate this Agreement without penalty within thirty (30) days after notice of such amendment by giving written notice of termination to T&T, provided that such termination shall not be effective until thirty (30) days after notice of termination is provided.

THOMAS & THORNGREN, INC.                YRC ENTERPRISE SERVICES, INC.

By _____          By _____

Title: _SVP & Solo_____          Title: _President  YRC_____

Date: _1/11/2012_____          Date: _1/19/12_____

2

## ADDENDUM TO THE SERVICE AGREEMENT

Thomas & Thorngren, Inc. DBA Thomas and Company ("T&C") and the undersigned ("Employer") agree as follows:

This Agreement shall commence on the Effective Date (defined below).   This agreement will serve as an addendum to the Original Service Agreement that was executed on 01-20-2012.

**Effective as of the date noted below, T&C agrees to provide services to the entity of New Penn as part of this agreement, and included under the existing fees.**

T&C and Employer hereby execute this addendum as of _5/24/2017_ (the "Effective Date").

THOMAS & THORNGREN, INC.

By _____

Print Name: _Jim Thomas_

Title: _CEO_

Address:  One Vantage Way, Suite A105
              Nashville, TN  37228

YRC Enterprise Services, Inc.

By _Sean Saunders_

Print Name: _SEAN SAUNDERS_

Title: _SUP HR & SAFETY_

Address:  10990 Roe Avenue
              Overland Park, KS  66211