**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | **Re: Docket Nos. 334, 344, 358, 423,** |
| | ) | **553, 608, 615, 630, 650, 659, 684, 741,** |
| | ) | **758, 770, 783, 789** |

**DEBTORS' OMNIBUS OBJECTION TO**
**PERSONAL INJURY CLAIMANT MOTIONS FOR RELIEF FROM**
**THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] hereby file this omnibus objection (this "Objection") in response to all motions to lift the automatic stay (collectively, the "Lift-Stay Motions")[3] filed by or on behalf of plaintiffs seeking to proceed

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration").

[3] The Lift-Stay Motions include: *Motion of Brett Groves for Relief from the Automatic Stay to the Extent of Liability Insurance Proceeds* [Docket No. 334]; *Motion to Remove Stay* [Docket No. 344]; *Motion of Paul Clark and Jean Clark for Relief from the Automatic Stay to the Extent of Liability Insurance Proceeds* [Docket No. 358]; *Motion for Relief from Stay* [Docket No. 423]; *Motion of James Charles Howard for Relief from the Automatic Stay to the Extent of Liability Insurance Proceeds* [Docket No. 553]; *Motion of Gary W. Gibby for Relief from the Automatic Stay* [Docket No. 608]; *Motion of Amer Nasser and Omeira Ulloque for Relief from the Automatic Stay* [Docket No. 615]; *Motion of Paul R. Wyszynski for Relief from the Automatic Stay* [Docket No. 630]; *Emily Louro's Motion for Relief from Automatic Stay* [Docket No. 650]; *Motion of Lawrence Nowicki, for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) of the Bankruptcy Code* [Docket No. 659]; *Motion for Relief from the Automatic Stay* [Docket No. 684]; *Motion of Jesse Isreal Newton for Relief from the Automatic Stay* [Docket No. 741]; *Motion of Jimmie and Janel Hubert for Relief from the Automatic Stay* [Docket No. 758]; *Motion of Donna Lee Daugherty for Order … Modifying the Automatic Stay to Allow Continuation of Wrongful Death Litigation* [Docket No. 770]; *Motion of Susan Degenkolb for Relief from the Automatic Stay* [Docket No. 783]; and *Motion of Anthony Martino for Orders Granting Relief from the Automatic Stay* [Docket No. 789]. For the avoidance of doubt, pursuant to this Objection, the Debtors object to any motion to lift the automatic stay filed by or on behalf of any plaintiff seeking to recover under the Debtors' insurance policies, including the Auto Policy, whether or not such lift-stay motion is included in the foregoing list.

with litigation and recover (a) against the Debtors and/or under the Debtors' Motor Carrier's Indemnity Insurance Policy (the "Auto Policy") with Old Republic Insurance Company ("ORIC") or any other potentially applicable insurance policy on account of personal injury or wrongful death claims and (b) against the Debtors and/or any applicable insurance policy with respect to alleged wrongful termination and/or related civil claims for damages (collectively, the "Movants").  In support of this Objection, the Debtors respectfully state as follows:

### Preliminary Statement

1. The Movants, unsecured creditors, seek relief from the automatic stay to prosecute claims for prepetition personal injury, wrongful death, wrongful termination, alleged violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, negligent supervision, defamation, and other related claims in courts across the country (collectively, the "Claims") and seek recovery from the Debtors and/or the Debtors' insurance policies, specifically the Auto Policy with ORIC.  But to date, ORIC has denied coverage, and thus any lifting of the stay would put the Debtors to a Hobson's Choice that they should not have to make at this time.  The automatic stay affords debtors a much-needed respite to develop, confirm, and consummate a chapter 11 plan, while protecting other creditors from a race by their peers to procure judgments outside the bankruptcy court.  The law does not recognize exceptions for litigation claimants; nor does it credit arguments that their claims seek to collect solely on insurance proceeds (notwithstanding the existence of attendant litigation costs and other prejudices to debtors), particularly where there is a dispute about coverage.  Rather, *all* unsecured creditors, like Movants, must establish "extraordinary circumstances" to lift the stay and skip the line of other litigants patiently waiting for the chapter 11 process to conclude.

2. The Movants do not come close to meeting this heavy burden of lifting the automatic stay and prioritizing themselves ahead of other unsecured claimants.  The Lift-Stay

Motions should be denied. *First*, the Movants' requests to prosecute the Claims solely to collect on the proceeds of the Debtors' insurance policies must be denied at this juncture. The Debtors have been engaged in discussions with ORIC with respect to coverage under the Auto Policy and the Movants' Claims since the Petition Date. Despite having drawn down on over $231 million of collateral posted by the Debtors pursuant to the Auto Policy and related agreements, and despite cutting off the Debtors' access to information about the claims, ORIC has taken the position that there is no insurance coverage for the defense or indemnity of the Debtors or any other defendants under the Auto Policy with respect to such Claims. In other words, ORIC has both drawn down on massive amounts of collateral specifically attributable to these pending Claims and, at the same time, refused to provide any coverage for such Claims. Consequently, while the Debtors dispute ORIC's position, there are currently no insurance proceeds against which the Movants may prosecute their Claims. While further proceedings may be necessary to determine the extent of coverage, denial of the Lift-Stay Motions is in the best interest of the Debtors' estates at this time.

3. *Second*, permitting the Movants to pursue their Claims at this critical juncture in the chapter 11 cases would force the Debtors to incur significant administrative costs to address such litigation across multiple judicial forums. The Debtors do not currently have the liquidity to undertake such an administrative burden. The Debtors are currently in the process of selling substantially all of their assets pursuant to a Court-approved sale process and developing a chapter 11 plan to effectuate an orderly and value maximizing wind-down of the Debtors' estates. Permitting the Movants to pursue their claims would disrupt the Debtors' ongoing sales process and distract from the Debtors' ongoing efforts to maximize the value of their estates.

4. *Third*, the Movants have not identified any cognizable harm that would be suffered if the stay is not lifted. Instead, the Movants maintain that they will be prejudiced because of

delay.  The Movants may timely file a proof of claim to preserve their claims and—just like every other prepetition litigation claimant—must now allow such claim to be adjudicated through the claims administration process.  The Movants will not be prejudiced, nor have the Movants shown they would sustain meaningful, extraordinary harm, by waiting until the end of these chapter 11 cases (or until the parties' coverage disputes are resolved) to prosecute their Claims.

5. There is no cause to lift the stay under the circumstances of these chapter 11 cases and the Debtors are working diligently with parties in interest to develop a global and equitable resolution for all claims entitled to share in the Debtors' estates.  For the reasons set forth herein, the Debtors request that the Court deny the Lift-Stay Motions.

## Background

6. On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169].  The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee").  No trustee or examiner has been appointed in these chapter 11 cases.

## Argument

**I.     The Automatic Stay Is a Fundamental Protection that Prevents Piecemeal Litigation of Claims in Other Courts.**

7. The automatic stay of section 362 of the Bankruptcy Code is "one of the most fundamental protections granted the debtor under the Bankruptcy Code." *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Midlantic*

*Nat'lBank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)). The purpose of the automatic stay is threefold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condo. Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)), *quoted in Rexene Prods.*, 141 B.R. at 576.

8. The automatic stay is designed to give a debtor a "breathing spell" free from lawsuits and collection actions while the debtor attempts to reorganize or otherwise maximize value for stakeholders through an orderly wind-down of its affairs. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); H.R. Rep. No. 595, 95th Cong. 1st Sess. 340 (1977). Implementation and maintenance of the automatic stay is fundamental to the effective administration of pending bankruptcy cases as it provides a debtor protection from "a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y. 1981) (internal citations omitted).

9. Section 362(d)(1) of the Bankruptcy Code permits a court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362. "The term "cause" as used in section 362(d) has no obvious definition and is determined on a case-by-case basis." *See In re Integrated Health Servs., Inc.*, 2000 WL 33712483, *1 (Bankr. D. Del. Aug. 11, 2000); *In re Lincoln*, 264 B.R 370, 372 (Bankr. E.D. Pa. 2001) ("Each request for relief for 'cause' under [section] 362(d)(1) must be considered on its own facts."). In determining whether "cause" exists, courts in this district consider the following three "*Rexene* Factors":

    (1)    the prejudice that would be suffered by the debtors should the stay be lifted;

    (2)    the balance of the hardships facing the parties if the stay is lifted; and

      (3)      the probable success on the merits if the stay is lifted.

*In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (Bankr. D. Del. 1996) (citing *Rexene Prods.*, 141 B.R. at 576). "To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips *significantly* in [its] favor.'" *Atl. Marine Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (alteration in original) (quoting *In re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990)); *see also In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009) (listing as the second prong "whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor" (internal citations omitted)).

## II.    There Is No "Cause" to Modify the Stay.

      10.      A review of the *Rexene* Factors demonstrates that lifting the automatic stay is not warranted. The delay in prosecuting the Movants' Claims is not in itself a sufficient basis to lift the automatic stay. *See, e.g., In re Madison Hotel Assocs.*, 18 B.R. 218, 219 (Bankr. W.D. Wis. 1982) ("Relief from the automatic stay for 'cause' is not, nor was it intended by the drafters of the Bankruptcy Code, to encompass mere delay in the assertion of rights.").

      11.      On the other hand, the Debtors would suffer significant prejudice if the Court were to allow the Claims to proceed at this critical juncture of these chapter 11 cases. The Debtors are currently negotiating with parties in interest and conducting an efficient and value maximizing sale process, ultimately to fund equitable distributions to stakeholders. Because of the reality that neither ORIC nor any other non-Debtor third party will defend or pay the Claims under the Auto Policy, the burden of defending such Claims, if they were allowed to proceed, may fall to the Debtors (unless they made the decision not to defend at all), but the Debtors can ill afford the distraction and expense associated with defending the Claims at this stage of the chapter 11 cases.

12. Lifting the stay for Movants to prosecute their Claims would deplete the Debtors' limited resources and undermine one of the key objectives of the stay. *See Rexene*, 141 B.R. at 576; *Borman*, 946 F.2d at 1036 ("The automatic stay was designed . . . to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it . . . ."). As a result, the lifting of the stay to allow the Claims to proceed would be value-destructive and prejudice the Debtors and their other creditors. *See In re Continental Airlines*, 177 B.R. 475, 481 (D. Del. 1993) (upholding bankruptcy court's finding that the automatic stay applied and further enjoining prosecution of litigation based, in part, on the direct impact on the debtor's assets caused by the debtor having to bear indemnification obligations and advancement of defense costs in the absence of insurance); *Majestic Star Casino v. City of Gary (In re Majestic Star Casino, LLC)*, 2010 WL 2540457, *2 (Bankr. D. Del. Apr. 28, 2010) ("In addition, the Debtors will have to advance defense costs thereby, at the very least, temporarily diverting much needed funds—and funds which they do not have to expend absent their lenders' acquiescence." (citing *Continental,* 177 B.R. at 481)). The Debtors' budget is already tightly constrained. Any additional expenses will therefore frustrate the Debtors' efforts to maximize value for the benefit of all stakeholders.

13. Additionally, allowing the Movants' Claims to proceed outside of an eventual chapter 11 plan process ahead of other similarly situated creditors is contrary to the priority scheme set forth in the Bankruptcy Code and the principle of bankruptcy law that all of the Debtors' interests in property are to be distributed equitably. Such a result would encourage others to race to the courthouse to seek similar relief as quickly as possible and would undermine the Debtors' chapter 11 efforts and hamper their ability to conduct a focused and structured claims reconciliation process. *See In re SNLiquidation, Inc.*, 388 B.R. 579, 584 (Bankr. D. Del. 2008); *DBSI*, 407 B.R. at 167 (denying stay relief where it may encourage "a race to the courthouse by

parties seeking similar orders, which will cause undue hardship and expense to the estate"); *In re Bally Total Fitness of Greater N. Y., Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying a motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case").

14. Now is simply not the time to grant relief from the automatic stay to permit creditors to liquidate their prepetition claims on an ad hoc basis, which would result in unnecessary expense to the Debtors' estates and interference with the Debtors' administration of these chapter 11 cases, including the confirmation of a chapter 11 plan (for which approval of a disclosure statement and solicitation of the plan has not even been approved) and the sale of the Debtors' assets (the marketing of which has not even concluded).

15. There are already significant, and conflicting, demands on management's time, which include: (a) working with counsel and advisors to prepare, prosecute, and respond to pleadings in connection with these chapter 11 cases; (b) communicating and negotiating with certain parties in interest regarding the Debtors' remaining operational issues; (c) complying with certain disclosure requirements as required in these chapter 11 cases; (d) working with counsel and advisors to assess and process the universe of claims; and (e) most importantly, assisting counsel and advisors with the negotiations and preparation of the various documents in connection with effectuating a value-maximizing sale and, ultimately, confirmation of a chapter 11 plan. The automatic stay is meant to allow the Debtors to concentrate on these critical chapter 11 tasks without the distraction of ancillary litigation. *See In re W.R. Grace*, 2007 WL 1129170 at *2 n.7 (Bankr. D. Del. Apr. 13, 2007).

**III.    The Balance of Harms Weighs Against Granting the Lift-Stay Motions.**

16. The most important factor to consider when addressing whether cause exists to lift the automatic stay is the effect on the administration of the chapter 11 cases. *See In re W.R. Grace*,

8

2007 WL 1129170 at *2 n.7 ("Even slight interference [to the administration of the case] . . . may be enough to preclude relief in the absence of a commensurate benefit."); *see also DBSI*, 407 B.R. at 166 (same); *In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980) ("Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited."). As a result, cause exists only if the harm that the Movants would suffer from maintaining the stay "considerably outweighs" the harm that the Debtors would suffer from lifting of stay. *See, e.g.*, *DBSI*, 407 B.R. at 166.

17. As described above, the harm that the Debtors would suffer if the stay were lifted for the Claims would be substantial. By contrast, the Movants would suffer little hardship if the stay is maintained. The chapter 11 cases are promptly progressing toward a comprehensive sale of the Debtors' assets, and any recovery that the Movants may be entitled to will be determined following the sale process and in conjunction with distributions pursuant to a chapter 11 plan. Accordingly, the automatic stay may delay the prosecution of the Movants' Claims, but such delay does not establish the harm necessary for relief from stay. If it did, every creditor would be entitled to relief from stay, and the exception would swallow the rule. *Cf. In re Condisco,* 271 B.R. 273, 277 (Bankr. N.D. Ill. 2002) ("The automatic stay almost always delays litigants. That is, after all, its purpose and the reason they call it a 'stay.'").

18. Accordingly, based on the foregoing, there is no cause for lifting the automatic stay here, and the Lift-Stay Motions should be denied.

**Reservation of Rights**

19. Nothing contained in this Objection or any order granting the relief requested in this Objection, and no action taken by the Debtors pursuant to the relief requested or granted, is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for,

priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law, including, without limitation, with respect to the Debtors' insurance policies and coverage thereunder and the Claims, or shall waive, impair, prejudice, or otherwise affect any rights, claims, defenses, arguments, or remedies of the Debtors or their estates (or any successors thereto) with respect to such matters, including, without limitation, in any proceedings before this Court or in any other court; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## Notice

20.     The Debtors will provide notice of this Objection to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as proposed counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto;(i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST

Tranche B Agent, and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; (o) counsel to the Movants; (p) the Debtors' insurance carriers and counsel thereto; and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court deny the Lift-Stay Motions and grant the Debtors such other and such other relief as the Court deems appropriate under the circumstances.

Dated: October 12, 2023
Wilmington, Delaware

*/s/ Peter J. Keane*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | Whitney Fogelberg (admitted *pro hac vice*) |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 919 North Market Street, 17th Floor | 300 North LaSalle |
| P.O. Box 8705 | Chicago, Illinois 60654 |
| Wilmington, Delaware 19801 | Telephone: (312) 862-2000 |
| Telephone: (302) 652-4100 | Facsimile: (312) 862-2200 |
| Facsimile: (302) 652-4400 | Email: patrick.nash@kirkland.com |
| Email: ljones@pszjlaw.com | david.seligman@kirkland.com |
| tcairns@pszjlaw.com | whitney.fogelberg@kirkland.com |
| pkeane@pszjlaw.com | |
| ecorma@pszjlaw.com | -and- |

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

DOCS_DE:245315.1 96859/001