**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) ) ) | Case No. 23-11069 (CTG) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF CODY LEUNG KALDENBERG IN SUPPORT
OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) APPROVING AGENCY AGREEMENT WITH NATIONS CAPITAL, LLC,
RITCHIE BROS. AUCTIONEERS (AMERICA) INC., IRONPLANET, INC., RITCHIE
BROS. AUCTIONEERS (CANADA) LTD., AND IRONPLANET CANADA
LTD. *NUNC PRO TUNC* TO OCTOBER [●], 2023; (II) AUTHORIZING THE
SALE OF ROLLING STOCK ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

I, Cody Leung Kaldenberg, hereby declare as follows:

**Introduction[2]**

1. I am a founding member of and partner at Ducera Partners LLC ("Ducera"), which maintains its principal office at 11 Times Square, 36th Floor, New York, New York 10036. Ducera is the investment banker to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. I am authorized to submit this declaration (this "Declaration") on the Debtors' behalf in support of the *Motion of Debtors for Entry of an Order (I) Approving Agency*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not otherwise defined shall have the meaning ascribed to them in the Motion, the Agency Agreement, or the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Therefore; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order").

*Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd. and IronPlanet Canada Ltd. Nunc Pro Tunc to October 16, 2023; (II) Authorizing the Sale of Rolling Stock Assets Free and Clear of Liens, Claims, Interests and Encumbrances; and (III) Granting Related Relief* (filed contemporaneously herewith, the "Motion") and the *Motion of Debtors' for Entry of an Order Shortening Notice of Motion of Debtors for Entry of an Order (I) Approving Agency Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd. and IronPlanet Canada Ltd. Nunc Pro Tunc to October 16, 2023; (II) Authorizing the Sale of Rolling Stock Assets Free and Clear of Liens, Claims, Interests and Encumbrances; and (III) Granting Related Relief* (filed contemporaneously herewith, the "Motion to Shorten").

**Professional Background and Qualifications**

3. Founded in 2015, Ducera is an independent investment banking advisory firm, which has extensive experience in, among other areas, providing leading-edge capital structure and restructuring advice in both in-court and out-of-court situations. In addition to numerous out-of-court restructurings and sales, Ducera professionals have served as investment bankers to debtors, creditor groups, asset purchasers, committees, boards of directors, and trustees in a number of bankruptcy and restructuring matters. Ducera provides a broad range of corporate and financial services to its clients, including: general corporate advice; mergers, acquisitions, and divestitures; corporate restructurings; and private placements. Ducera provides its services from three offices located in the United States.

4. Ducera has more than fifty professionals and is one of the leading advisors and investment bankers to debtors, secured and unsecured creditors, acquirers, and other parties in

interest involved with financially troubled companies requiring complex financial restructurings, both in and outside of bankruptcy. Ducera has represented debtors, creditors, and other constituents in some of the largest restructuring cases in the United States, including: (a) *In re Diebold Holding Co., LLC*, Case No. 23-90602 (DRJ) (Bankr. S.D. Tex. July 18, 2023) [Docket No. 266]; (b) *In re Virgin Orbit Holdings, Inc.*, Case No. 23-10405 (KBO) (Bankr. D. Del. May 15, 2023) [Docket No. 261]; (c) *In re Altera Infrastructure L.P.*, Case No. 22-90130 (MI) (d) *In re GBG USA Inc.*, Case No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 22, 2021) [Docket No. 230]; (e) *In re Superior Energy Servs., Inc.*, Case No. 20-35812 (DRJ) (Bankr. S.D. Tex. Feb. 2, 2021) [Docket No. 316]; (f) *In re Hornbeck Offshore Services, Inc.*, Case No. 20-32679 (DRJ); (g) *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI); (h) *In re Toys "R" Us, Inc.*, Case No. 17-34665 (KLP) (Bankr. E.D. Va. Jan. 26, 2018).

5. I have nearly twenty years of restructuring-related investment banking experience and have worked on a broad range of restructuring advisory assignments across a variety of industry sectors. Since joining Ducera in 2015, I have provided investment banking expertise and financing advice, including with respect to marketing for and obtaining postpetition debtor-in-possession financing, to financially distressed companies as well as lenders and strategic investors in distressed and special situations engagements. Prior to joining Ducera, I worked as a Director at Perella Weinberg Partners for over six years, advising companies and other stakeholders on special situation restructuring engagements, prior to which I worked as an associate at Goldman Sachs for over four years. I earned a Bachelor of Science in Economics from the Massachusetts Institute of Technology in 2004.

6. I have worked closely with the Debtors' management and other professionals retained by the Debtors with respect to preparing for these chapter 11 cases and have become

well acquainted with the Debtors' capital structure, liquidity needs, business operations, and Assets (including the Real Property Assets and the Rolling Stock Assets). Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Ducera team, the Debtors' management team, and the Debtors' other advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis. I am authorized to submit this Declaration on behalf of the Debtors. I am not being specifically compensated for this testimony other than through payments received by Ducera as a professional proposed to be retained by the Debtors, subject to approval by this Court. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.

## **The Debtors' Sale Process**

7.      The Debtors retained Ducera in February 2023 to serve as their investment banker and financial advisor in connection with the Debtors' efforts to consider alternatives to address liquidity needs. During the engagement, Ducera has rendered investment banking services to the Debtors in connection with the evaluation of various strategic and financial alternatives and has worked closely with the Debtors' management team to develop and implement a robust marketing process for the sale of the Debtors' assets (the "Sale Process").

8.      On July 31, 2023, Ducera launched the Sale Process, pursuant to which it has contacted over six hundred prospective purchasers of the Assets and provided such parties with marketing materials. In response to Ducera's outreach, more than three hundred and fifty interested parties have executed confidentiality agreements and have been provided access to a virtual dataroom for the purpose of conducting further due diligence on the Assets. The process

generated more than one hundred twenty indications of interest. Of the total parties contacted, approximately 300 were contacted specifically based on their potential interest in the Rolling Stock Assets (among other assets) and of these parties, over 150 have executed confidentiality agreements and were provided dataroom access.

9. Based on information gathered through this process, including indications of interest received from potential purchasers of the Rolling Stock Assets, the Debtors, in consultation with myself and their other advisors, determined that retention of a liquidator would provide the best path for the Debtors to maximize the value of the Rolling Stock Assets while addressing other logistical constraints such as removing the Rolling Stock Assets from the Debtors' properties. I and other members of my team, in consultation with the Debtors' management, negotiated with potential liquidators of the Rolling Stock Assets to achieve the best terms possible under the circumstances. This process included engagement with six potential liquidators who provided proposals with respect to their proposed strategy and pricing to monetize the Rolling Stock Assets on behalf of the Debtors. The Debtors ultimately selected Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. (Canada) Ltd., and IronPlanet Canada Ltd. (collectively, the "Agent") to act as the Debtors' exclusive marketer, broker, and auctioneer of the Rolling Stock Assets, based upon, among other reasons, and as further described below, the Agent's market access, selling platform, ability to remove and transport the Rolling Stock Assets from the Debtors' facilities and house the Rolling Stock Assets on their facilities, and experience with section 363 sales and bankruptcy proceedings.

**The Agency Agreement**

10. On October 16, 2023, the Debtors and the Agent entered into an agreement (the "Agency Agreement") providing that the Agent will serve as the Debtors' exclusive marketer, broker, and auctioneer of the Rolling Stock Assets, as well as provide certain other critical and related services such as refurbishment of the Rolling Stock Assets, removal of the Rolling Stock Assets from Company Properties by the Removal Date (*i.e.*, six (6) months following the Court's entry of the Order), and transportation to and storage of the Rolling Stock Assets at Agent Properties.

11. Pursuant to the Agency Agreement, the Agent will ready the Debtors' Rolling Stock Assets for sale and disposition through private treaty, online, webcast, or unreserved public auctions to maximize the value of the Rolling Stock Assets. These marketing and sale strategies will be consented to by the Debtors and in consultation with the Consultation Parties (as defined in the Bidding Procedures Order). To the extent any Rolling Stock Assets require refurbishments in advance of the Agent's marketing and sale efforts, in each case only if appropriate to enhance expected sale values, the Agent will arrange for and conduct these refurbishments.

12. As described in the First Day Declaration, the Debtors have terminated nearly all of their prepetition workforce. The Debtors lack the personnel and other resources to conduct these refurbishments as they continue a wholesale winddown of operations in these chapter 11 cases. Accordingly, the Debtors lack the ability and the resources to remove all of the Rolling Stock Assets from the Company Properties by the Removal Date. Clearing the Rolling Stock Assets from the Company Properties as soon as commercially practicable is essential to minimizing rent expenses to future purchaser(s) of the Real Property Assets and to maximize the

value of the Real Property Assets pursuant to the ongoing Sale Process under the Bidding Procedures Order.  Critically, the Agency Agreement provides for free storage of the Rolling Stock Assets on the Agent Properties, allowing the Rolling Stock Assets to be monetized over a value-maximizing time period while minimizing occupancy costs that would be incurred if the Rolling Stock Assets were to remain on the Company Properties.

13.    Additionally, the Agent is an industry-leading marketer, auctioneer, and broker of assets of this type with vast industry connections and experience.  To best maximize the value of the Rolling Stock Assets and the estates, it is, in my opinion, in the Debtors' best interest to retain the Agent so that the Debtors and their estates can directly benefit from the Agent's expertise, experience, and market access.  The Debtors, the Debtors' advisors (including Ducera), and the Consultation Parties will continue to consult with the Agent in connection with the sale of the Rolling Stock Assets as set forth in the Agency Agreement and the Bidding Procedures Order.

14.    Based on my experience as a restructuring professional, the Debtors' limited resources to execute upon the critical tasks contemplated by the Agency Agreement, the Agent's industry-leading qualifications to serve this role, the lack of available alternatives to the Agent to remove the Rolling Stock Assets from the Company Properties on the timeline contemplated by the Agency Agreement, and the fact that, in my professional opinion, the terms and provisions of the Agency Agreement are commercially reasonable, fair, and justified under the circumstances, I believe that the Debtors' entry into the Agency Agreement represents an exercise of sound business judgment by the Debtors and should be approved by the Court.

15.    The Agency Agreement was heavily negotiated between the Debtors and the Agent at arm's-length and in good faith over the course of multiple weeks.  The key terms and

provisions of the Agency Agreement are set forth in the Motion. In my professional opinion, each of the terms and provisions of the Agency Agreement, including its economic components (*i.e.*, the sale commission and expense reimbursement structure) are fair and commercially reasonable.

16. Based on my professional experience and knowledge of these chapter 11 cases, I believe that the Debtors' entry into the Agency Agreement constitutes a sound and reasonable exercise of the Debtors' business judgment, consistent with their fiduciary duties and, that the Agency Agreement will provide a greater recovery for the Debtors' estates on account of the Rolling Stock Assets than any other available alternative.

## Conclusion

17. For the foregoing reasons, I believe that the Debtors' entry into the Agency Agreement is in the best interests of the Debtors, their estates, their stakeholders, and other parties in interest and is necessary and appropriate to maximize the value of the Debtors' estates. Thus, I believe the Court should enter the Order on the requested shortened notice.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my information, knowledge and belief.

Dated: October 16, 2023

*/s/ Cody Leung Kaldenberg*
Cody Leung Kaldenberg
Partner
Ducera Partners LLC