# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | : Chapter 11 |
| YELLOW CORPORATION, et al., | : Case No.: 23-11069(CTG) |
|  | : (Jointly Administered) |
| Debtors. | : |
|  | : Objection Deadline: October 27, 2023 @ 9:00 a.m. |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF NATIONS FUND I, LLC TO THE MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING AGENCY AGREEMENT WITH NATIONS CAPITAL, LLC, RITCHIE BROS. AUCTIONEERS (AMERICA) INC., IRONPLANET, INC., RITCHIE BROS. AUCTIONEERS (CANADA) LTD., AND IRONPLANET CANADA LTD. EFFECTIVE AS OF OCTOBER 16, 2023; (II) AUTHORIZING THE SALE OF ROLLING STOCK ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTEREST, AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

Nations Fund I, LLC ("Nations Fund"), by and through its undersigned counsel, hereby submits this limited objection and reservation of rights (the "Objection") to the Motion of Debtors for Entry of an Order (I) Approving Agency Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and IronPlanet Canada Ltd. Effective as of October 16, 2023; (II) Authorizing the Sale of Rolling Stock Assets Free and Clear of Liens, Claims, Interest, and Encumbrances; and (III) Granting Related Relief (the "Motion to Approve Agency Agreement") [ECF 852]. In support of this Objection, Nations Fund respectfully represents to the Court as follows:

## FACTUAL BACKGROUND

1. On or about March 16, 2012, Nations Fund and USF Holland, LLC ("USF Holland") entered into that certain Master Lease Agreement[1] (the "Master Lease Agreement"

---

[1] A copy of the Master Lease Agreement is attached hereto as Exhibit 1.

123794350-3

together with the Schedules and all other documents executed in connection with the transactions, including any and all amendments thereto, the "Lease Documents"), pursuant to which Nations Fund agreed to lease certain Stoughton trailers to USF Holland.

2.  Also on March 16, 2012, Yellow Corporation f/k/a YRC Worldwide, Inc. executed that certain Master Lease Guaranty (the "Guaranty") in favor of Nations Fund pursuant to which it guaranteed all of the obligations of USF Holland under the Master Lease Agreement.

3.  Prior to the Petition Date and in accordance with the Master Lease Agreement, USF Holland executed and delivered in favor of Nations Fund four (4) equipment schedules pursuant to which it leased 160 trailers from Nations Fund.

4.  Titles to the 160 trailers are in the name of Nations Fund.

5.  The Debtors defaulted on their lease obligations pre-petition, and have not made any post-petition lease payments to Nations Fund notwithstanding their obligations to commence making post-petition lease payments sixty (60) days after the Petition Date (defined below) pursuant to Section 365(d)(5) of the Bankruptcy Code (defined below).

6.  The total amount presently due and owing Nations Fund under the Lease Documents solely with respect to unpaid monthly rent obligations is not less than $186,316.00.

## PROCEDURAL HISTORY

7.  On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.  Debtors are managing their businesses and their properties as debtors-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United

States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors. No trustee or examiner has been appointed in these Chapter 11 cases.

9. On August 7, 2023, the Debtors filed their Motion of the Debtors for Entry of an Order (I)(a) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief (the "Bidding Procedures Motion") [ECF 22]. Pursuant to the Bidding Procedures Motion, the Debtors sought an order, among other things, approving certain bidding procedures in connection with the sale or sales of substantially all of the Debtors' assets, and authorizing procedures to facilitate the assumption and assignment of certain executory contracts and unexpired leases of the Debtors.

10. On September 15, 2023, the Bankruptcy Court entered that certain order (the "Bidding Procedures Order") granting the Bidding Procedures Motion [ECF 575].

11. Pursuant to the Bidding Procedures Motion, the Bid Deadline for submission for bids of the Rolling Stock (as defined therein) was October 13, 2023 (the "Rolling Stock Bid Deadline"), and an auction for the sale of the Rolling Stock was scheduled for October 18, 2023 (the "Rolling Stock Auction").

12. On October 11, 2023, the Debtors filed the Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Rolling Stock (the "Rolling Stock Cure Notice") [ECF 819] which identifies on Schedule I each executory

3

contract or unexpired lease that may be potentially assumed by the Debtors and the proposed cure amount with respect to each such executory contract or unexpired lease.

13. The Debtors included the four (4) Equipment Schedules (i.e., leases) with Nations Fund covering all 160 Stoughton trailers on Schedule I.

14. On October 12, 2023, the Debtors filed the Amended Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Rolling Stock (the "Amended Rolling Stock Cure Notice") [ECF 824] that similarly includes the four (4) leases between debtor USF Holland and Nations Fund.

15. On October 13, 2023, the Debtors filed their Notice of Rescheduled Bid Deadline, Auction, and Hearing to Approve the Rolling Stock Winning Bidder [ECF 834], pursuant to which the Debtors indicated that the Rolling Stock Bid Deadline and the Rolling Stock Auction were being adjourned to an unknown date.

16. Three (3) days later, on October 16, 2023, the Debtors filed their Notice of Cancellation of Rolling Stock Bid Deadline and Rolling Stock Auction [ECF 857] pursuant to which the Debtors altogether cancelled the Rolling Stock Bid Deadline and the Rolling Stock Auction. That same day, the Debtors filed their Motion to Approve Agency Agreement.

17. Pursuant to the Motion to Approve Agency Agreement, the Debtors seek permission to: (i) retain Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and IronPlanet Canada Ltd. (collectively, the "Agent"); (ii) enter into the Agency Agreement attached to the motion as Exhibit A; and (iii) authorize and approve the Agent's sale of the Rolling Stock Assets free and clear of all liens, claims and encumbrances.

18. The Agency Agreement provides the terms and conditions pursuant to which the Agent is to sell certain of the Debtors' assets.

19. The Agency Agreement provides that the Assets to be marketed and sold pursuant to the Agreement are set forth exclusively on Exhibit A thereto and defined as the "Rolling Stock Assets." Agency Agreement, p.1, ¶A and fn 1.

20. The Agency Agreement also attaches as Exhibit B, a schedule list of all "leased or financed Rolling Stock Assets, which may be marketed and sold by the Agent pursuant to the Agreement." Agency Agreement, p.1-2, ¶C. Included on Exhibit B are all 160 Stoughton trailers owned by Nations Fund and leased to debtor USF Holland.

## OBJECTION

21. Nations Fund generally has no objection to the Debtors exercise of their business judgment to retain the Agent to liquidate and auction the Rolling Stock identified in Exhibit A. Notwithstanding the foregoing, Nations Fund objects to the Motion to Approve Agency Agreement to the extent it purports to seek authority from the Bankruptcy Court to sell the 160 trailers owned by Nations Fund. Nations Fund further objects to a number of other provisions in the Debtors' Motion to Approve Agency Agreement and in the Agency Agreement itself, that appear to contravene Nations Fund's rights under the Bankruptcy Code.

22. First, while it is not entirely clear from the pleadings, it appears that the Debtors seek authority to have the Agent sell all of the Leased or Financed Rolling Stock Assets set forth on Exhibit B (which includes all 160 trailers owned by Nations Fund). The confusion stems from a discrepancy between the Motion to Approve Agency Agreement, the proposed order and the Agency Agreement itself. The Debtors state at the outset in their Motion to Approve Agency Agreement, that they are seeking to engage the Agent to "ready the Debtors' Rolling Stock Assets

5

for sale and to dispose of the Rolling Stock Assets though private treaty, online, webcast, or unreserved public auctions to maximize the Rolling Stock Assets." (Motion at p. 4, ¶9). Pursuant to the Debtors' Motion, Rolling Stock Assets "only includes the assets listed in <u>Exhibit A</u> to the Agency Agreement." (Motion at p.7, fn. 4). However, the Agency Agreement provides in pertinent part, "[a]ny assumption of any executory contract or lease, *the sale by the Agent of any leased Assets listed at <u>Exhibit B</u> hereto*, or alternative strategy with respect to such contracts and leases shall be subject to the Company's consent in consultation with the Consultation Parties." (Agency Agreement at p. 2)(emphasis added). The Agreement further provides that "[a] schedule of the Company's leased or financed Rolling Stock Assets, *which may be marketed and sold by the Agent* pursuant to this Agreement . . . is shown in <u>Exhibit B</u>." (Agency Agreement at p. 2)(emphasis added). Finally, the proposed order provides at Paragraph 15 that the leased Rolling Stock Assets listed on Exhibit B to the Agency Agreement are subject to the terms of the Agency Agreement. (Proposed Order, p. 9, ¶15)[2][3]. Significantly, the Proposed Order also provides that the provisions of the Order govern inconsistencies between the Agency Agreement and the Order. Proposed Order, ¶ 21.

23.     Based on the foregoing provisions, an argument can be made (despite the representations in the Debtors' Motion to Approve Agency Agreement that the sales will only

---

[2] The Agency Agreement provides, in fn. 1, that Exhibit A to the Agreement contains the universe of assets that are to be considered Rolling Stock Assets. Notwithstanding that clarification, the Proposed Order makes multiple references to "leased Rolling Stock Assets" on Exhibit B to the Agency Agreement. See, e.g., Proposed Order, ¶8(ii)(obligating the Debtors to consult with the Consulation Parties regarding "the inclusion or removal of Rolling Stock Assets and *leased Rolling Stock Assets from Exhibits* A and *B* respectively, to the Agency Agreement.")(emphasis added); ¶15 ("The inclusion of leased Rolling Stock Assets on Exhibit B shall be subject to: (i) the terms of the Agency Agreement").

[3] The Motion also seeks authority for the Debtors to modify Exhibit A to the Agency Agreement in the future without further order of Court (and presumably without notice and an opportunity to be heard by potentially affected parties in interest). Motion to Approve Agency Agreement, ¶14, fn 4. See also Proposed Order, ¶14 (providing such modifications are permissible and that the Debtor need only file notice of such modifications); Agency Agreement, fn1 and fn 2 (parties may amend Exhibits A and B by mutual written agreement.)

6

apply to the equipment listed on Exhibit A) that the Agent has permission to sell the leased equipment identified on Exhibit B to the Agency Agreement. Furthermore, it is undisputed that Nations Fund's trailers are included on the list of Leased or Financed Rolling Stock Assets attached as Exhibit B to the Agency Agreement. In light of the provisions in the Agency Agreement, it appears that the Debtors seek to grant the Agent authority to sell the Nations Fund trailers without providing it with notice or an opportunity to object to the sale. Nations Fund is certainly not one of the "Consultation Parties" as identified in the Debtors' Bidding Procedures Order who may, under certain circumstances, be entitled to notice of the sales of the Rolling Stock Assets.

24.    The Debtors do not have the right under either the Bankruptcy Code or non-Bankruptcy law to sell property that they do not own. While Section 363 of the Bankruptcy Code gives the Debtors the right to sell property of the estate, such rights do not extend to property that belongs to third parties. The Debtors' rights with respect to unexpired leases of personal property are set forth in Section 365 of the Bankruptcy Code, which permits debtors to either assume and assign such unexpired leases subject to certain conditions or reject same. To date, the Debtors have neither assumed nor rejected their leases with Nations Fund and the Motion to Approve Agency Agreement does not seek relief pursuant to Section 365. While the Debtors have included the Nations Fund leases among those that "may be potentially assumed" pursuant to the Amended Rolling Stock Cure Notice, there is no guarantee of same.[4]

25.    Moreover, while the Agency Agreement expressly states that the Agent shall recommend to the Debtors which leases should be assumed within thirty (30) days following the entry of the Retention Order, there does not appear to be any requirement or provision that the Debtors seek Bankruptcy Court approval for the assumption and assignment of leases pursuant to

---

[4] Nations Fund has filed an Objection to the Rolling Stock Cure Notice [ECF 945].

Section 365 of the Bankruptcy Code prior to the sale of leased property. Nor is there a provision requiring proof of adequate assurance of future performance under the Master Lease Agreement by the proposed assignee as required by Section 365(b)(1)(C). As such, Nations Fund objects to the assumption and assignment of its trailers without receiving any notice of same or an opportunity to object to the proposed cure amount at the time of the assumption and/or the adequacy of future assurance or any other rights to which it is entitled under the Bankruptcy Code.

26. Second, pursuant to the proposed Agency Agreement, the Agent will have the right, among other things, to repair and refurbish the Rolling Stock Assets, which arguably includes Nations Fund's trailers. Moreover, the Agent will be entitled to be reimbursed for the expenses associated with these services from gross proceeds of the sale of the collateral. (Motion at p.14). It appears that the Debtors and the Consultation Parties as defined in the Bidding Procedures Order will enter "into an acceptable expense and proceed sharing agreement with the lessor(s) of the Rolling Stock Assets that are proposed to be included on Exhibit B." (Proposed Order at p. 9, ¶15). There is no further explanation as to what type of "expense and proceed sharing agreement" the Debtors and/or the Agent will look to enter into with Nations Fund or any of the other lessors *after the expenses are already incurred*. Nations Fund construes this to mean that its equipment will be sur-charged by the Agent with respect to any expenses incurred and that it will be required to bear certain unknown costs based on the Agent's actions taken in its discretion with the approval of the Debtors and the Consultation Parties (but not the lessors whose property is being impacted).

27. Requiring Nations Fund to assume any of the repair costs directly contradicts the parties' Master Lease Agreement. Pursuant to Section 12 of the Master Lease Agreement, the lessee (debtor USF Holland) "bears the risk of loss, theft, confiscation, taking, unavailability,

damage or partial destruction of the Equipment" until the Equipment is returned to Nations Fund in accordance with the lease.

28. Section 365(d)(5) of the Bankruptcy Code provides in relevant part that, "[t]he trustee shall timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease or personal property . . . until such lease is assumed or rejected . . . unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof." 11 U.S.C. §365(d)(5). "Section 365(d)(5) represents a Congressional determination that lessors of non-consumer personal property should receive current 'payments and the performance of all other obligations that initially become due more than 60 days after the order for relief.'" *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 76 (Bankr. S.D.N.Y. 2009) *quoting* 140 Cong. Rec. S14462 (daily ed. Oct. 6, 1994). "Section 365(d)(5) thus strikes 'a balance between the debtor-in-possession's need for time to reject non-beneficial personal property leases without creating administrative claims against the estate, and the lessor's right to get paid for the leased goods.'" *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 76 *quoting In re Furley's Transport, Inc.*, 263 B.R. 733, 740 (Bankr. D. Md. 2001).

29. In light of the foregoing, the Debtors must adhere to the terms of the Master Lease Agreement until it is either assumed or rejected. *See generally, In re Federal-Mogul Global Inc.,* 222 F. App'x. 196, 199 (3d Cir. 2007). Therefore, it is the Debtors' obligation to pay for any repairs or damages to the trailers – not Nations Fund. Nations Fund objects to the Motion to Approve Agency Agreement to the extent it seeks to impose costs on Nations Fund contrary to the Master Lease Agreement.[5]

---

[5] The Agency Agreement provides that insurance will be provided on all Rolling Stock Assets during the term of the Agreement. Agency Agreement, p. 15, §VIII. To the extent that the Rolling Stock Assets do not include the trailers

9

30. Third, Nations Fund opposes the Agency Agreement to the extent that it gives the Agent the right, at the Debtors' request, to terminate existing insurance coverage on the trailers and procure other insurance once the Rolling Stock Assets are delivered to the Agent's properties.

31. The Master Lease Agreement expressly require the Debtors to maintain proper insurance coverage "in such amounts and upon such terms and with such companies as Lessor may reasonably approve during the entire Lease Term and until the Equipment has been returned to, and accepted by, Lessor." (Master Lease Agreement, p. 5). As such, the Debtors must continue to insure the leased trailers in accordance with the Lease Documents and as statutorily required pursuant to Section 365(d)(5) of the Bankruptcy Code. Therefore, the Agent should not be permitted to procure different insurance coverage without Nations Fund's knowledge or consent that may not satisfy Nations Fund's insurance coverage requirements.

32. Fourth, Nations Fund objects to the Agency Agreement insofar as the Debtors and/or the Agent may rely on same for their entitlement to be reimbursed any Transportation Fees incurred by the Agent due to the removal of Nations Fund's trailers from the Debtors' property to the Agent's property. Pursuant to the Agency Agreement, the Agent is entitled to be reimbursed by the Debtors for any of its expenses on a cost basis for the removal of the Rolling Stock Assets from the Debtors' properties (referred to as the Transportation Fees). To the extent that the Debtors or the Agent seek to pass along such costs to Nations Fund, it objects to same.

33. Fifth, Paragraph 18 of the Proposed Order provides that parties who purchase the Rolling Stock Assets shall be afforded protections under Section 363(m) of the Bankruptcy Code. As the Court is not being presented (nor could it be) with the identity of the buyers or the

---

identified in Exhibit B, this Court should not approve this agreement without the counterparties to the leased trailers identified in Exhibit B being provided proof of the requisite insurance on their trailers. Moreover, any Exhibit B party so requesting should be afforded proof of insurance on their trailers naming it as a loss payee.

123794350-3

circumstances surrounding the purchase, this Court cannot make a ruling at this time that these parties are entitled to good faith findings and the related Section 363(m) protections.

34. Finally, if the Debtors breach the non-monetary provisions of the Master Lease Agreement such as by failing to properly insure the trailers, such defaults may prevent the Debtors from assuming the leases should such defaults prove to be material. "'Where the default is non-monetary and is not curable, the debtor is precluded from assuming an executory contract only if the default was material or if the default caused 'substantial economic detriment.'" *In re Cumberland Corral, LLC*, No. 313-06-06325, 2014 WL 948473, at *10 (Bankr. M.D. Tenn. March 11, 2014), *quoting In re Chapin Revenue Cycle Mgmt., LLC*, 343 B.R. 728, 731 (Bankr. M.D. Fla. 2006) (citations omitted); *In re Clearwater Natural Res., LP*, No. 09–70011, 2009 WL 2208463, at *4 (Bankr. E.D. Ky. July 23, 2009) (materiality and economic significance of default is measure of whether debtor may assume a contract in which a non-curable, non-monetary default has occurred).

WHEREFORE, Nations Fund I, LLC respectfully requests that any order approving the Motion to Approve Agency Agreement be modified so it is consistent with the above and for such other and further relief as is necessary and just.

Dated: October 25, 2023

By: /s/ Martin J. Weis
Martin J. Weis (No. 4333)
Dilworth Paxson, LLP
704 N. King Street, Suite 500
PO Box 1031
Wilmington, DE 19899-1031
Tel: 302-571-9800
Email: mweis@dilworthlaw.com

11

123794350-3

-and-

Kristin B. Mayhew (admitted pro hac vice)
Pullman & Comley, LLC
850 Main Street
Bridgeport, CT 06601-7006
Tel: (203) 330-2198
Email: kmayhew@pullcom.com

Attorneys for Nations Fund I, LLC

123794350-3