IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 23-11069 (CTG) |
| YELLOW CORPORATION, *et al.*,[1] | : | |
| | : | Chapter 11 |
| | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | | Hearing Date: Oct. 27, 2023 at 12:00 p.m. |
| | | Objection Deadline: Oct. 27, 2023 at 9:00 a.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO (I) REDACT AND FILE UNDER SEAL CERTAIN CONFIDENTIAL COMMERCIAL INFORMATION IN CONNECTION WITH THE DEBTORS' AGENCY AGREEMENT MOTION AND (II) GRANTING RELATED RELIEF**

In support of his objection (the "Objection") to the *Motion of Debtors for Entry of an Order Authorizing the Debtors to (I) Redact and File Under Seal Certain Confidential Commercial Information in Connection with the Debtors' Agency Agreement Motion and (II) Granting Related Relief* (D.I. 854) (the "Motion"), Andrew R. Vara, the United States Trustee for Regions 3 and 9 (the "U.S. Trustee"), through his undersigned counsel, states:

**PRELIMINARY STATEMENT**

1. The Debtors seek to employ the Agent[2] pursuant to the Agency Agreement Motion to prepare and liquidate what is arguably the Debtors' most valuable asset after the Debtors' real estate – their Rolling Stock Assets -- but also request entry of an order sealing the

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

Agent's commission structure, citing concerns of confidentiality. The Court should deny the Motion because: 1) the denial of public access is an extraordinary remedy; and 2) the requested sealing will circumvent the mandatory disclosure of compensation required by 11 U.S.C. § 328 and Bankruptcy Rule 2014. There is a strong presumption under U.S. law that the public has a right of access to judicial records. In bankruptcy proceedings, the only categories of information that may be shielded from disclosure are "trade secret or other confidential research, development or commercial information," information that is "scandalous or defamatory," information "made confidential by statute or regulation," or information which could result in identity theft. 11 U.S.C. § 107(b), (c); *see* Fed.R.Bankr.P. 9018.

## JURISDICTION AND STANDING

2. This Court has jurisdiction to hear and determine the Motion and this Objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to the Motion.

## BACKGROUND

5. On August 6, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6.      On August 16, 2023, the U.S. Trustee appointed an official committee of unsecured creditors in these cases.

7.      The Debtors filed the Motion on October 16, 2023.  In the Motion, the Debtors seek authority to redact certain information contained in the *Motion of Debtors for Entry of an Order (I) Approving Agency Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and IronPlanet Canada Ltd. Effective as of October 16, 2023; (II) Authorizing the Sale of Rolling Stock Assets Free and Clear of Liens, Claims, Interests and Encumbrances; and (III) Granting Related Relief* (the "Agency Agreement Motion") (D.I. 852).

8.      Specifically, the Debtors seek to seal the terms of the commission structure by which the Agent will be paid from the proceeds of the Debtors' Rolling Stock Assets.  The Motion alleges that "[d]isclosure of the Commission Percentages and Fees would compromise the Agent's bargaining position in future negotiations as well as reveal confidential economic terms to its competitors and future counterparties. Accordingly, the Commission Percentages and Fees constitute the Agent's 'commercial information' which, if disclosed, could cause commercial damage to the Agent."  Mot. ¶ 17.

9.      The U.S. Trustee objects to the Motion on the grounds set forth below.

**ARGUMENT**

10.     The Supreme Court stated in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 591 (1978), that "[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Unanimity in the case law demonstrates that there is a common law right of access to judicial proceedings and to inspect judicial records in civil matters.  In *Orion Pictures Corp. v. Video*

*Software Dealers Assoc.,* 21 F.3d 24 (2d Cir. 1994), the Court stated the general rule as: "...a strong presumption of public access to court records.... This preference for public access is rooted in the public's first amendment right to know about the administration of justice. It helps safeguard the 'integrity, quality, and respect in our judicial system.'" *Orion*, 21 F. 3d at 26. (citations omitted)). *See also In re Continental Airlines,* 150 B.R. 334 (D. Del. 1993), where the court noted "...the strong presumption in favor of public access to judicial records and papers...." Accord, *In re Foundation for New Era Philanthropy,* 1995 WL 478841 (E.D. Pa. 1995); *In re Barney's Inc.,* 201 B.R. 703 (Bankr. S.D.N.Y. 1996).

11. In the bankruptcy context, limited exceptions to the general rule are contained in the Code and Rules. Bankruptcy Code § 107(b) provides as follows:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may-
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

12. As exceptions to the common law rule, the burden is on the moving party to show that a request to place documents under seal falls within the parameters of Bankruptcy Code § 107(b) and FRBP 9018 by demonstrating that: "that the interest in secrecy outweighs the presumption in favor of access." *See In re Continental Airlines*, 150 B.R. 334 (D. Del. 1993). The inquiry then is whether or not the matter sought to be placed under seal fits within any of the categories included within either of section 107(b) or FRBP 9018.

13. "Confidential commercial information" is not a defined term within the Bankruptcy Code, but it has been addressed in the case law interpreting Section 107(b)(1). "Confidential commercial information" is "information which would result in 'an unfair

advantage to competitors by providing them information as to the commercial operations of the [entity]." *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) (Walrath, J.) (citing *In re Orion Pictures Corp.*, 21 F.3d at 27-28 and *Ad Hoc Protective Comm. for 10 ½% Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (9th Cir. BAP 1982)). The disclosure of such information must "reasonably be expected to cause the entity commercial injury." *Alterra*, 353 B.R. at 75 (citing *In re Northstar Energy, Inc.*, 315 B.R. 425, 429 (Bank. E.D. Tex. 2004) and *In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003)). "Moreover, the Court must find that information contained in the . . . [documents] . . . 'is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors.'" *Alterra*, 353 B.R. at 75-76 (quoting *In re Barney's, Inc.*, 201 B.R. 703, 708-09 (Bankr. S.D.N.Y. 1996)).  Information is not "'commercial' within the meaning of § 107(b) merely because it relate[s] to business affairs." *In re Northwest Airlines Corp.*, 363 B.R. 704, 706 (Bankr. S.D.N.Y. 2007).  It must be "information which would give a competitor an unfair advantage." *Id*. (quoting *In re Handy Andy Home Improvement Centers, Inc.*, 199 B.R. 376, 382 (Bankr. N.D. Ill. 1996)).  However, Section 107(b) does not require the court to find that the information is the equivalent of a trade secret before protecting it.  *Orion Pictures Corp.*, 21 F.3d at 28.

14. Section 327 of the Bankruptcy Code governs the employment of professional persons.  Section 327(a) of the Bankruptcy Code provides that a trustee, or debtor in possession, "with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."   11 U.S.C. § 327(a).

15. Section 328(a) of the Bankruptcy Code provides that:

> [t]he trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, ***on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis***, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a) (emphasis added).

16. Fed. R. Bankr. P. 2014 provides that:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. ***The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation***, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014 (emphasis added).

17. The U.S. Trustee understands that in limited circumstances, it is appropriate to protect confidential commercial, competitively sensitive, or proprietary information from unnecessary disclosure. However, any such protection must not be so overarching as to prevent

the public from understanding the details of what is, by common law and the Bankruptcy Code, an inherently public process.   In this context, the mandatory disclosure requirements of Bankruptcy Code section 328 and Bankruptcy Rule 2014 must also be taken into account when evaluating the seal request.

18. The net effect of the requested sealing by the Agent and the Debtors would prevent parties in interest from evaluating the reasonableness of the Agent's proposed compensation.  The Court must determine the appropriate balance between public disclosure and protection of confidential commercial information, and it is the Debtors' burden to establish to this Court's satisfaction that the information sought to be protected is confidential commercial information that should be protected from public disclosure.

19. The United States Bankruptcy Court for the Southern District of New York has held that the identity of a proposed investor and the terms of a Preliminary Proposal Letter seeking a due diligence advance of $1 million from the debtor was not subject to section 107(b) protection. *See In re Barney's, Inc.*, 201 B.R. 703 (Bankr. S.D.N.Y. 1996).  The debtor claimed that this information was commercial information.  The court rejected this contention, restating the definition from *Orion, supra*, and adding the inclusion of information related to the trading of securities.  The *Barney's* Court found that neither the potential investor's identity nor the terms of the Preliminary Proposal Letter were subject to protection by either section 107(b) or FRBP 9018: "The Potential Investor's desire to avoid the professional embarrassment associated with the unsuccessful pursuit of a deal is no basis to grant this motion."

20. The policies of section 107 and FRBP 9018, as enumerated above, place the burden squarely on the Debtors to show a compelling need to seal or mark such information as confidential.  The Debtors have failed to meet such burden in this case.

21. The Debtors have sought to seal the terms of the Agent's Commission Structure as confidential commercial information. However, auctioneer commissions and other professional fees are routinely disclosed as part of professional retention applications and professional fee applications. As bankruptcy is a transparent process, creditors and other parties in interest have the right to review such information. Indeed, the information is essential to the determination of whether such fees are reasonable. In the Motion, the Debtors do not indicate why this case is unique and why making this information publicly available would cause an "unfair advantage" to the Agent's competitors when commission structures are routinely disclosed in bankruptcy proceedings.

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Motion and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

**By:** _/s/ Jane M. Leamy_
Jane M. Leamy (#4113)
Richard L. Schepacarter
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
(302) 573-6566
jane.m.leamy@usdoj.gov
richard.schepacarter@usdoj.gov

Dated: October 26, 2023