# EXHIBIT B

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|   |   |
|---|---|
| In re: | ) Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| Debtors. | ) (Jointly Administered) |
|  | ) **Re: Docket No. —863** |

**ORDER (I) APPROVING AGENCY AGREEMENT WITH NATIONS CAPITAL, LLC, RITCHIE BROS. AUCTIONEERS (AMERICA) INC., IRONPLANET, INC., RITCHIE BROS. AUCTIONEERS (CANADA) LTD., AND IRONPLANET CANADA LTD. EFFECTIVE AS OF OCTOBER 16, 2023; (II) AUTHORIZING THE SALE OF ROLLING STOCK ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to enter into the Agency Agreement dated as of October 16, 2023 with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and IronPlanet Canada Ltd. (collectively, the "Agent"), as auctioneer, broker, and exclusive marketing agent of the Rolling Stock Assets and for related services to be provided by the Agent relating to the Rolling Stock Assets, including, without limitation, removal from Company Properties, refurbishment, and transportation to and storage at Agent Properties of the Rolling Stock Assets, a true and correct copy of which is attached hereto as **Exhibit 1** (as amended, supplemented, or modified from time to time and including all exhibits, schedules, and

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Agency Agreement, as applicable.

appendixes thereto, the "Agency Agreement"), (b) authorizing the sale by the Agent (acting on behalf of the Debtors) of the Rolling Stock Assets free and clear of any liens, claims, interests and encumbrances (effective upon the sale thereof), and (c) granting related relief, all as more fully set forth in the Motion; and upon the Kaldenberg Declaration and the Agent Declaration (including all filed supplements to the Agent Declaration); and the district court having jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion and all relief requested therein were appropriate, adequate, and sufficient, with all parties having been afforded due process and an opportunity to be heard with respect to the Motion and all relief requested therein, and no other or further notice need be provided; and this Court having reviewed and considered the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

      **IT IS HEREBY FOUND AND DETERMINED THAT:**

A. As demonstrated by evidence adduced at and prior to the Hearing and the representations of counsel made on the record at the Hearing, the Debtors' entry into the Agency Agreement and retention of the Agent represent a sound exercise of the Debtors' business judgment under the circumstances. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for entry into the Agency Agreement pursuant to section 363(b) of the Bankruptcy Code. Approval of the Agency Agreement is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Agency Agreement was negotiated, proposed, and entered into by the Debtors and the Agent without collusion, in good faith, and from arms' length bargaining positions. The Agent is not an "insider" of the Debtors, as that term is defined in Section 101 of the Bankruptcy Code. Upon entry of this Order, the Debtors shall have full authority to consummate and perform under the Agency Agreement.

B. Any and all sales of the Rolling Stock Assets at any auction, private sale, or otherwise pursuant to the Agency Agreement will be a legal, valid, and effective transfer of the Rolling Stock Assets to the buyer(s) of the Rolling Stock Assets and, upon the sale thereof, will vest the buyers with all right, title, and interest of the Debtors to the Rolling Stock Assets free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever; *provided* that all liens, claims, encumbrances and interests of which the Rolling Stock Assets are sold free and clear shall attach to the Net Proceeds of the applicable sale, including on the Client Account where Net Proceeds will be deposited, for the benefit of the Prepetition Secured Parties, the Prepetition UST Secured Parties, the Junior DIP Secured Parties, and (as applicable) BNSF Railway Company ("BNSF") in order of priority of such liens, claims, encumbrances, and interests, with the same validity, force, and effect which they had against the applicable Rolling Stock Asset(s) prior to the entry of this Order, including, solely

with respect to Rolling Stock Assets held at BNSF storage locations, prior to the removal of such Rolling Stock Assets from any such BNSF storage locations.[3]  The Agent and the Debtors may sell the Rolling Stock Assets free and clear of all such liens, claims, encumbrances, and interests because, in each case, one or more of the standards set forth in section 363(f)(l) through (5) of the Bankruptcy Code have been satisfied.

        C.      The Agency Agreement is a valid and binding contract between the Debtors and the Agent, which is and shall be immediately enforceable upon entry of this Order according to its terms and provisions.

**IT IS HEREBY ORDERED THAT:**

        1.      The Motion is GRANTED, as set forth herein.

        2.      Any objections to the Motion or to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby DENIED and OVERRULED.

        3.      The Agency Agreement, including all of its terms and conditions, and sales of the Rolling Stock Assets as contemplated therein, are approved in all respects pursuant to sections 327(a), 328(a), and 363 of the Bankruptcy Code.  The Debtors and the Agent are authorized, without further order of the Court, to take all steps they deem necessary or appropriate to sell the Rolling Stock Assets in accordance with the Agency Agreement, as well as to perform any and all other duties and obligations contemplated by the Agency Agreement.

        4.      Pursuant to section 363 of the Bankruptcy Code, the Debtors are authorized, without further order of the Court, to execute, deliver, and perform under,

---

[3] Nothing in this Order shall be construed as a determination of the nature, scope, or validity of BNSF's interests in Rolling Stock Assets (including Rolling Stock Assets stored at BNSF locations), if any.  The rights of BNSF and the Debtors are fully preserved with respect to such matters.

consummate, and implement the Agency Agreement together with any additional instruments and documents that may be reasonably necessary or desirable to implement the transactions contemplated by the Agency Agreement.

5. The Debtors are authorized to employ and retain the Agent on the terms and provisions set forth in the Agency Agreement, effective as of October 16, 2023.

6. The Agent shall perform all of its obligations, including, without limitation, marketing and selling the Rolling Stock Assets on the Debtors' behalf, pursuant to the Agency Agreement in accordance with the terms and provisions of the Agency Agreement. The Agent shall be permitted and hold power of attorney from the Debtors to sign any title, release, or other similar instrument to transfer ownership to a purchaser of any Rolling Stock Assets free and clear of liens, claims, interests, and encumbrances.

7. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Rolling Stock Assets shall be sold, pursuant to the Agency Agreement, free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (effective upon the sale thereof), in accordance with section 363(f) of the Bankruptcy Code; *provided* that all liens, claims, encumbrances, and interests of which the Rolling Stock Assets are sold free and clear pursuant to the Agency Agreement and this Order shall attach to the Net Proceeds of the applicable sale, including on the Client Account where Net Proceeds will be deposited, for the benefit of the Prepetition Secured Parties, the Prepetition UST Secured Parties, ~~and~~ the Junior DIP Secured Parties, and (as applicable) BNSF in the order of priority of such liens, claims, encumbrances, and interests, with the same validity, force, and effect which they had against the applicable Rolling Stock Asset(s) prior to the entry of this Order, including, solely with respect

to Rolling Stock Assets held at BNSF storage locations, prior to the removal of such Rolling Stock Assets from any such BNSF storage locations.

8. The Debtors shall consult with the Consultation Parties in connection with each of the Debtors' rights and obligations under the Agency Agreement, including, but not limited to: (i) amendments, extensions, modifications, transfers, and assignments of the Agency Agreement; (ii) the inclusion or removal of Rolling Stock Assets and leased Rolling Stock Assets from Exhibits A and B, respectively, to the Agency Agreement; (iii) the timing of the Agent's removal of Rolling Stock Assets from the Company's Properties and the order in which such assets will be removed; and (iv) approval of sales of Rolling Stock Assets by private treaty, or pursuant to Strategic Bulk Sales and the timing of such sales. For the avoidance of doubt, nothing herein shall limit any of the rights of the Consultation Parties under the Bidding Procedures Order and, to the extent of any conflicts between this Order and the Bidding Procedures Order with respect to the consultation rights of the Consultation Parties regarding sales of the Rolling Stock Assets, the Bidding Procedures Order shall govern.

9. The Agent's sale of Rolling Stock Assets by private treaty and Strategic Bulk Sales shall be subject to approval by the Debtors in consultation with and following notice to the Committee and the Consultation Parties that have liens on the Rolling Stock Assets that are the subject of such private treaty sale or Strategic Bulk Sale (which consultation rights shall continue until such time as the applicable Consultation Party's claims against the Debtors' estates have been paid in full in cash); *provided* that, with respect to private treaty and Strategic Bulk Sales of Rolling Stock Assets constituting Prepetition UST Tranche B Priority Collateral and/or Prepetition Joint Collateral (each as defined in the Final UST Cash Collateral Order)[24],

---

[24] The "Final UST Cash Collateral Order" shall mean the *Final UST Cash Collateral and Adequate Protection Order (I) Authorizing the Debtors to Use UST Cash Collateral and All Other Prepetition UST Collateral, (II)*

the Debtors shall receive the approval of the Prepetition UST Secured Parties (not to be unreasonably withheld and deemed given if not objected to within two (2) business days) in advance of their providing approval pursuant to this paragraph.

10. For each Rolling Stock Asset sold or collective group of Rolling Stock Assets sold to a single purchaser, the Debtors shall provide a statement (a "Rolling Stock Lien Statement") to the advisors to each of the Prepetition Secured Parties, the Prepetition UST Secured Parties, the Junior DIP Secured Parties, and the Committee, BNSF (solely with respect to Rolling Stock Assets stored at BNSF's storage locations as of or subsequent to the date of the entry of this Order (such Rolling Stock Assets, the "Possible BNSF Lien Collateral"))[5], and Alvarez & Marsal Canada Inc., as information officer in respect of the Canadian Recognition Proceedings (as defined below) (the "Information Officer") (solely with respect to Canadian Rolling Stock Assets (as defined below)),[6] that indicates the relative lien priorities of each such secured party on each Rolling Stock Asset sold and the Net Proceeds attributable to the sale of each Rolling Stock Asset. In the event that a Rolling Stock Lien Statement includes any Possible BNSF Lien Collateral, such Rolling Stock Lien Statement shall indicate the Debtors' position with respect to the existence, validity, and priority of BNSF's liens, if any, on such Possible

---

*Order (I) Authorizing the Debtors to Use UST Cash Collateral and All Other Prepetition UST Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 570].

[5] BNSF shall provide the Debtors with a list of Possible BNSF Lien Collateral (including the applicable BNSF storage locations) as promptly as practicable, and in no event later than fourteen (14) calendar days, following entry of this Order.

[6] "Canadian Rolling Stock Assets" shall mean Rolling Stock Assets located in Canada and/or owned by YRC Freight Canada Company, YRC Logistics Inc., USF Holland International Sales Corporation, and/or 1105481 Ontario Inc. The "Canadian Recognition Proceedings" shall mean those certain recognition proceedings under the *Companies' Creditors Arrangement Act* in respect of these chapter 11 cases pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court").

BNSF Lien Collateral sold and the Net Proceeds attributable to such sale(s) of Possible BNSF Lien Collateral; *provided* that if BNSF disputes the Debtors' position with respect to the foregoing and desires to have such applicable Net Proceeds held in reserve pending resolution of such dispute in accordance with paragraph 11 of this Order, BNSF may file an appropriate pleading with this Court no later than five (5) calendar days following BNSF's receipt of the Rolling Stock Lien Statement and request that this Court resolve any such dispute (any such filing, a "BNSF Rolling Stock Asset Lien Dispute").

11. As soon as is reasonably practicable following Agent's transfer of Net Proceeds to the Client Account, but in no event later than ten (10) calendar days thereafter (except, as applicable, as set forth below with respect to disputed Net Proceeds (if any) of Possible BNSF Lien Collateral), the Debtors shall distribute the Net Proceeds from the sale of each Rolling Stock Asset to the Prepetition Secured Parties, the Prepetition UST Secured Parties, ~~and/or~~ the Junior DIP Secured Parties (collectively, the "Secured Parties"), and/or (as applicable and only with respect to Possible BNSF Lien Collateral) BNSF in satisfaction of those parties' claims against the Debtors' estates in the order of priority of such liens, claims, encumbrances, and interests against the Rolling Stock Asset sold, consistent with the Final DIP Order and the applicable Rolling Stock Lien Statement, until such time as ~~those~~the ~~s~~Secured ~~p~~Parties' claims against the Debtors' estates are paid in full in cash; *provided* that, in the event any Net Proceeds are received by the Secured Parties or BNSF prior to the expiration of the Challenge Period (as defined in the Final DIP Order), such Net Proceeds shall be subject to disgorgement or any other appropriate remedy the Court may fashion in the event of a successful Challenge (as defined in the Final DIP Order) pursuant to the Final DIP Order~~.~~; *provided further* that if a Rolling Stock Lien Statement includes any Possible BNSF Lien Collateral, unless agreed otherwise between

the Debtors and BNSF, the Debtors shall not distribute the Net Proceeds from the sale of such Possible BNSF Lien Collateral to the Secured Parties prior to the sixth (6th) calendar day following BNSF's receipt of such Rolling Stock Lien Statement; *provided further* that, if BNSF timely files a BNSF Rolling Stock Asset Lien Dispute in accordance with paragraph 10 of this Order, the disputed amount of (*i.e.*, BNSF's alleged claim to) such Net Proceeds of the sale of the Possible BNSF Lien Collateral referenced in such Rolling Stock Lien Statement shall be held in reserve by the Debtors pending further Order of this Court resolving such BNSF Rolling Stock Asset Lien Dispute or upon agreement by the Debtors and BNSF.

12. This Order is and shall be effective as a determination that all liens, claims, encumbrances and interests shall be and are released with respect to the Rolling Stock Assets as of the closing of any sale of Rolling Stock Assets. The provisions of this Order authorizing the sale and assignment of the Rolling Stock Assets free and clear of all liens, claims, encumbrances and interests, subject to the terms and provisions hereof, shall be self-executing upon the sale of any Rolling Stock Asset pursuant to the terms of the Agency Agreement.

13. Notwithstanding the failure of the Debtors, the Agent, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests on or against the Rolling Stock Assets, if any, shall be deemed released, discharged and terminated as of the closing of any sale of Rolling Stock Assets. This Order (including, as applicable with respect to the Canadian Rolling Stock Assets, subject to the

9

entry by the Canadian Court of a Canadian Recognition Order (as defined below))[7] shall be the sole and sufficient evidence of authority to transfer title to any particular purchaser of the Rolling Stock Assets, (including any Canadian Rolling Stock Assets), and the transactions consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transaction.

14.    The Debtors, in consultation with the Consultation Parties, (along with the Information Officer regarding Canadian Rolling Stock Assets), are authorized, without further order of the Court, to modify Exhibit A and Exhibit B to the Agency Agreement (and upon the Agent's consent in accordance with the terms of the Agency Agreement) to add or remove Rolling Stock Assets thereto or therefrom during the Term in accordance with the Agency Agreement.[8]  The Agency Agreement may be amended by (i) the Debtors, in consultation with the Consultation Parties (along with the Information Officer with respect to amendments concerning Canadian Rolling Stock Assets) (and which may not be amended or modified in any

---

[7] A "Canadian Recognition Order" shall mean an order of the Canadian Court recognizing this Order.

[8] For the avoidance of doubt, the 160 trailers leased by Nations Fund I, Inc. to debtor USF Holland are not included in the trailers identified on Exhibit B to the Agency Agreement and may not be subject to the terms of this Order absent the written consent of Nations Fund I, Inc. and USF Holland.

manner which adversely affects a Consultation Party's rights under the Agency Agreement, this Order, the DIP Orders, the UST Cash Collateral Orders, and the Prepetition Intercreditor Agreement, without written consent of such adversely affected Consultation Party), and (ii) the Agent in a writing signed by both Parties without further order of the Court.  The Debtors will file a notice on the Court's docket setting forth any such foregoing modifications or amendments (if any).

15. The inclusion of leased Rolling Stock Assets on <u>Exhibit B</u> to the Agency Agreement shall be subject to: (i) the terms of the Agency Agreement, (ii) the Debtors' consent, given following consultation with the Consultation Parties (along with the Information Officer regarding Canadian Rolling Stock Assets); and (iii) entry by the Debtors, following consultation with the Consultation Parties, into an acceptable expense and proceed sharing agreement with the lessor(s) of the Rolling Stock Assets that are proposed to be included on <u>Exhibit B</u>.

16. Notwithstanding any other provision in this Order, as adequate protection for the purported secured tax claims asserted by the Texas Taxing Authorities,[9] the Debtors shall set aside, from the Net Proceeds generated by Rolling Stock Assets located in the state of Texas and prior to the distribution of such Net Proceeds to any other creditor, the amount of $171,424.10 in a segregated account (the "Texas Tax Reserve"), and the tax liens, if any, of the Texas Taxing Authorities shall attach to the Texas Tax Reserve to the same extent and with the

---

[9] The "Texas Taxing Authorities" shall mean all *ad valorem* taxing jurisdictions represented by the firms of Linebarger, Goggan, Blair and Sampson, McCreary, Veselka, Bragg & Allen, PC, and Perdue Brandon Fielder Collins and Mott LLP, including but not limited to Bexar County, Cypress-Fairbanks Independent School District, Dallas County, City of Eagle Pass, Eagle Pass Independent School District, City of El Paso, Fort Bend County, Harris County, Hidalgo County, Irving Independent School District, Jefferson County, City of McAllen, McLennan County, City of Mesquite, Nueces County, Tarrant County, Bowie Central Appraisal District, Central Appraisal District of Taylor County, Waco Independent School District, Lubbock Central Appraisal District, Maverick County Tax Office.

same priority as the liens they now assert against such Rolling Stock Assets. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Texas Taxing Authorities, nor a cap on the amounts the Texas Taxing Authorities may be entitled to receive. These funds may be distributed only upon agreement between the Texas Taxing Authorities and the Debtors, in consultation with the Consultation Parties, or by subsequent order of the Court, duly noticed to the Texas Taxing Authorities and the Consultation Parties. The claims and liens of the Texas Taxing Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity, or extent of such liens.

17. ~~16.~~ Neither the Debtors nor the Agent shall be required to file a separate motion or seek Court approval for any sale or other disposition of the Rolling Stock Assets, which sale or other disposition shall be authorized to be sold pursuant to the terms set forth in the Agency Agreement and this Order (including, as applicable with respect to the Canadian Rolling Stock Assets, subject to the entry by the Canadian Court of a Canadian Recognition Order). The Debtors shall not be required to file a separate motion or to seek Court approval to pay or reimburse the Agent in accordance with and for any purposes under the Agency Agreement, and the Agent shall not be required to file a separate motion or to seek Court approval to be paid or reimbursed from Gross Proceeds in accordance with and for any purposes under the Agency Agreement. For the avoidance of doubt, other than with respect to Strategic Bulk Sales, Ducera Partners LLC, investment banker~~s~~ to the Debtors, shall not earn any fees in respect of the Rolling Stock Asset sales(s) by the Agent on behalf of the Debtors~~.~~; *provided that,* in no event shall the aggregate fees paid or payable to the Agent and Ducera Partners LLC on account of Strategic Bulk Sales exceed the applicable Rolling Stock Services Fee which would

otherwise be paid or payable to the Agent (*i.e.*, if such sales were not Strategic Bulk Sales) under the terms of the Agency Agreement.

18.    ~~17.~~ The Agent shall not be required to maintain time records or to file interim or final fee applications with the Court.  Any and all commissions, reimbursements, fees, or other amounts due to, earned by, and paid to the Agent in accordance with the Agency Agreement (including those to be set forth in the Final Report (defined below)) shall not be subject to the review by the Court, any party in interest (except as and only to the extent provided in the Agency Agreement), or the U.S. Trustee.  Upon the conclusion of the Term or at such earlier time following Agent's completion of the sale process for the Rolling Stock Assets, the Agent shall prepare, and the Debtors shall file, a report (the "Final Report") with the Court that identifies (i) the Rolling Stock Assets sold pursuant to the terms set forth in the Agency Agreement, (ii) the sale prices for the Rolling Stock Assets, and (iii) the commission and fees and reimbursement of expenses deducted by the Agent with respect to each transaction (or in the aggregate with respect to expenses if not directly incurred to sell a Rolling Stock Asset).  For the avoidance of doubt, the Final Report need only describe the information contained in this paragraph, and the Agent shall not be required to file interim reports or to keep time records of hours spent performing the services set forth in the Agency Agreement.

19.    ~~18.~~ Parties who purchase the Rolling Stock Assets shall be afforded the protections under section 363(m) of the Bankruptcy Code.

20.    ~~19.~~ No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Agency Agreement and the Agent Sale authorized therein.

21. ~~20.~~ The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Agency Agreement be authorized and approved in its entirety.

22. ~~21.~~ To the extent of any inconsistency between the provisions of this Order and the Agency Agreement, the provisions contained in the Order shall govern.

23. ~~22.~~ Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

24. ~~23.~~ Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

25. ~~24.~~ This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

*[Different first page link-to-previous setting changed from on in original to off in modified.]*.

# **EXHIBIT 1**

**Agency Agreement**

|  | |
|---|---|
| **Summary report:** <br> **Litera Compare for Word 11.3.1.3 Document comparison done on 10/26/2023 8:50:28 PM** | |
| **Style name:** Color (Kirkland Default) | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Yellow_ Ritchie Brothers - Agency Agreement Order [Filing Version 10.16.23]_(101213512_12).doc | |
| **Modified filename:** Yellow_ Ritchie Brothers - Agency Agreement Order [Post-Filing Version - KE Draft 10.26.23]_(101213512_16).doc | |
| **Changes:** | |
| Add | 63 |
| Delete | 26 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 89 |