**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| Debtors. | ) (Jointly Administered) |

**Objection Deadline: November 6, 2023 at 4:00 p.m. (ET)**
**Hearing Date: November 13, 2023 at 10:00 a.m. (ET)**

**DEBTORS' MOTION FOR ENTRY
OF AN ORDER AUTHORIZING PARTIES, INCLUDING THE DEBTORS'
EXCLUSIVE BROKER AND AUCTIONEER OF ROLLING STOCK ASSETS, TO FILE
UNDER SEAL THE NAMES OF CERTAIN CONFIDENTIAL PARTIES IN INTEREST
IN CONNECTION WITH THE ROLLING STOCK SALE PROCESS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

**Relief Requested**

1. The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing parties to redact and file under seal the names and identities of

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"). Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration, the Agency Agreement Motion (as defined herein), the Agency Agreement Order, or the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignments of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order"), as applicable.

the Confidential Parties (as defined below) consistent with the Debtors' obligations under certain executed confidentiality agreements, among other reasons favoring redaction under the unique facts and circumstances discussed herein, and granting related relief.

## Jurisdiction and Venue

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 9018, and Bankruptcy Local Rule 9018-1(b).

## Background

5. On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169]. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee"). No trustee or examiner has been appointed in these chapter 11 cases.

6. On or about October 16, 2023, the Debtors filed the *Motion of Debtors For Entry of an Order (I) Approving Agency Agreement With Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., Ironplanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and Ironplanet Canada Ltd. Effective as of October 16, 2023; (II) Authorizing the Sale of Rolling Stock Assets Free and Clear of Liens, Claims, Interests And Encumbrances; And (III) Granting Related Relief* [Docket No. 852] (the "Agency Agreement Motion," and the proposed order related thereto [Docket No. 969], the "Agency Agreement Order"). In support thereof, the Agent filed the *Declaration of Disinterestedness of Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and IronPlanet Canada Ltd.* [Docket No. 856] (the "Agent Declaration"), and the Debtors filed the *Declaration of Cody Leung Kaldenberg in Support of Motion of Debtors for Entry of Order (I) Approving Agency Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd. And IronPlanet Canada Ltd Effective as of October 16, 2023; (II) Authorizing the Sale of Rolling Stock Assets Free and Clear of Liens, Claims, Interests and Encumbrances; and (III) Granting Related Relief* [Docket No. 855]. On October 27, 2023, the Agent filed a supplemental declaration of the RB Group (as defined therein) [Docket No. 973] and a supplemental declaration of Nations Capital, LLC [Docket No. 974] (collectively with the Agent Declaration, the "Agent Declarations"). On October 27, 2023, the Court entered the Agency Agreement Order at Docket No. 981, approving the Agent's retention as the Debtors' exclusive

3

marketer, broker, and auctioneer of the Rolling Stock Assets and the Debtors' and the Agent's entry into the Agency Agreement.

7. Substantially contemporaneously herewith, in support of this Motion, the Agent has filed or will file the *Declaration of Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and IronPlanet Canada Ltd. In Support of Debtors' Motion for an Order Authorizing Parties, Including the Debtors' Exclusive Exclusive Broker and Auctioneer of Rolling Stock Assets, to File Under Seal the Names of Certain Confidential Parties In Connection With the Rolling Stock Sale Process* (the "Agent Redaction Declaration").

8. In order to protect the Agent's and/or the Debtors' commercially sensitive information while providing the necessary disclosures required under the Bankruptcy Code and the Bankruptcy Rules, the Agent disclosed in the Agent Declarations and the accompanying schedules (the "Schedules") their relationships with certain of the Debtors' Potential Parties in Interest (as defined in the Agent Declaration), some of whom are or may become potential bidders and potential sale counterparties in the Rolling Stock Assets sale process being conducted by the Agent in these chapter 11 cases (collectively, the "Confidential Parties")[3], without disclosing the names and identities of such entities.

9. The Debtors are currently engaged in an active and ongoing marketing process among numerous potential transaction counterparties, including certain of the Confidential Parties, for the sale of the Debtors' extensive portfolio of assets, including the Rolling Stock Assets. As described in the Agency Agreement Motion and the Kaldenberg Declaration, the Agent is serving

---

[3] Confidential Parties shall include those entities or individuals (a) listed in the Schedules who are or may become potential bidders and/or potential sale counterparties in the Rolling Stock Assets sale process and (b) other entities or individuals who may so participate in the Rolling Stock Assets sale process.

4

as the Debtors' exclusive marketer, broker, and auctioneer for the Rolling Stock Assets. The Rolling Stock Assets comprise over sixty thousand tractor trucks and trailers and represent significant estate value. Many hundreds of potential counterparties in the freight and other industries have expressed interest in bidding on the Rolling Stock Assets.

10. Due to the inherently competitive nature of the Debtors' marketing, bidding, and sale process for the Rolling Stock Assets (which is being conducted by the Agent on the Debtors' behalf)—as well as the significant value the Rolling Stock Assets represent for the Debtors' estates and the fact that the potential counterparties' identities are required by non-disclosure agreement (or other confidentiality obligations of the Agent) to be kept private—the Debtors respectfully submit that revealing the identities of the Confidential Parties could chill or otherwise negatively affect the marketing and bidding process for the Rolling Stock Assets. *First*, as described below and in the Agent Redaction Declaration, disclosure of the Confidential Parties' identities could cause Confidential Parties to either withdraw from ongoing negotiations and interest regarding the Rolling Stock Assets or to choose to not participate in the Rolling Stock Assets sale process altogether. *Second*, publicizing the names and identities of the Confidential Parties, in breach of existing confidentiality agreements or arrangements, could jeopardize the Agent's commercial relationships to the detriment of both the Rolling Stock Sale sale process and potential future dealings between the Agent and Confidential Parties who have a legal and commercial expectation of privacy. *Third*, to maximize value of the sale proceeds of the Rolling Stock Assets, bidder names should be kept confidential to foreclose the possibility of Confidential Parties discussing bidding strategy and approach. In sum, disclosing the names and the identities of the Confidential Parties could be detrimental to competitive bidding, the liquidation values of the Rolling Stock Assets, and ultimately, creditor recoveries.

11. The identities of the Confidential Parties have been redacted from the Schedules—and are hereby respectfully proposed to be permitted to remain redacted—because the non-disclosure agreements between the Debtors and these parties (and/or the confidentiality arrangements between certain of these parties and the Agent, as applicable) require that such parties' identities remain confidential. Further, the Agent's potential counterparties contained in the Confidential Parties' lists in the Schedules (*i.e.*, entities with whom the Agent has historical business dealings and whom may have interest in the Rolling Stock Assets but have not yet entered into a non-disclosure agreement) have not consented to the Debtors' or the Agent's disclosure of their identities. Historically and typically, these counterparties, in their dealings with the Agent, expect their involvement in such dealings to be kept and remain private by the Agent. To publicly disclose such parties' identities could discourage such parties from participating in the Rolling Stock Assets sale process as well as compromise the Agent's business relationships with these entities in this process and in future dealings.

12. As described in the Agent Redaction Declaration, to best maximize value of the Rolling Stock Assets, potential bidders of the Rolling Stock Assets should not have access to the names and identities of other potential bidders. Such disclosure of names and identities could cause industry peers, however unlikely, to discuss individual approaches and strategies regarding bidding on the Rolling Stock Assets, to the detriment of purely competitive bidding. Out of an abundance of caution, the names and identities of the Confidential Parties should be and remain confidential to preserve the anonymity and competitiveness of the Rolling Stock sale process.

13. Importantly, as set forth in the Agent Declarations, the Agent has not represented and will not represent the Confidential Parties in connection with any matter in these chapter 11 cases or which bears in any way on the Debtors or the Rolling Stock Assets sale process. Thus,

such representations of Confidential Parties do not preclude the Agent from meeting the disinterestedness standard under section 327(a) of the Bankruptcy Code.  Should any representation or conflict arise in the future that may bear on the Agent's disinterestedness with respect to the foregoing, the Agent agrees to promptly notify the Court by supplemental declaration attesting to the same.

14. In light of the foregoing, out of an abundance of caution, and in an effort to honor existing confidentiality arrangements and to maintain the confidentiality expected by potential bidders in this sale process—as well as to maximize estate value for the benefit of creditor recoveries—the Debtors seek entry of an order authorizing the Agent to file the names and identities of the Confidential Parties under seal. Redacted versions of the Schedules will be publicly filed in accordance with Bankruptcy Local Rule 9018-1(b).

## Basis for Relief

15. Section 107(b) of the Bankruptcy Code provides bankruptcy courts with authority to issue orders that will protect entities from potential harm that may result from the disclosure of certain confidential information.  11 U.S.C. § 107(b).  Specifically, section 107(b) provides, in relevant part:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

16. Bankruptcy Rule 9018 defines the procedures by which a party may move for relief under section 107(b) of the Bankruptcy Code, providing that: "[o]n motion, or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information." Fed. R. Bankr. P. 9018. Further, Bankruptcy Local Rule 9037-1

provides, in relevant part, that when it may be practicable to redact confidential information from a document, "(i) a redacted document should be filed, not under seal; and (ii) the unredacted document should simultaneously be filed, under seal."

17. If the material sought to be protected satisfies one of the categories identified in section 107(b) of the Bankruptcy Code, "the court is *required* to protect a requesting party and has no discretion to deny the application." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis in original); *see also In re Gen. Homes Corp.*, 181 B.R. 898, 903 (Bankr. S.D. Tex. 1995) ("The court has authority to seal court records, in order to protect trade secrets or confidential research, development, or confidential information, or to protect a person with regard to a scandalous or defamatory matter."); *In re 50-Off Stores, Inc.*, 213 B.R. 646, 655–56 (Bankr. W.D. Tex. 1997) ("The statute, on its face, states that the bankruptcy court is ***required*** to protect such an entity on request of a party in interest.") (emphasis in original). Stated differently, section 107(b) of the Bankruptcy Code does not require a party seeking its protections to demonstrate "good cause." *Orion Pictures*, 21 F.3d at 28. "Courts have supervisory power over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose." *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005). Courts are required to provide such protections "generally where open inspection may be used as a vehicle for improper purposes." *Orion Pictures*, 21 F.3d at 27. Indeed, the "authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice." *See In re Glob. Crossing Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y 2003).

18. Confidential commercial information "has been defined as information which would cause 'an unfair advantage to competitors by providing them information as to the

commercial operations of the debtor.'" *In re Faucett*, 438 B.R. 564, 567–68 (Bankr. W.D. Tex. 2010) (quoting *Orion Pictures Corp.*, 21 F.3d at 27). Commercial information need not rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code. *See In re Northstar Energy, Inc.*, 315 B.R. 425, 429 (Bankr. E.D. Tex. 2004) ("A bankruptcy court is required to seal 'documentary information filed in court that does not rise to the level of a trade secret but that is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors.'"); *see also Orion Pictures*, 21 F.3d at 27–28 (holding that section 107(b)(1) creates an exception to the general rule that court records are open to examination by the public and, under this exception, an interested party must show only that the information it wishes to seal is "confidential" and "commercial" in nature).

19. Confidential commercial information includes situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a chilling effect on business negotiations. *See In re Borders Group, Inc., 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011); see also In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 20, 2023) (sealing the names of potential bidders to avoid discouraging such parties from future transactions). Courts have granted the sealing of certain limited information in the context of a potential sale on grounds that "dissemination of these details could negatively affect the sale process, and, therefore, run against the Trustee's goal and duty to maximize the [debtors'] estate." *See In re MF Global*, No. 11-2790 (MG) SIPA, 2012 WL 3260393, at *3 (Bankr. S.D.N.Y. Aug. 12, 2012).

20. Courts have held that confidential commercial information includes information related to a debtor's contractual non-disclosure agreements. *See In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 20, 2023) (authorizing debtors to seal identities of certain confidential parties pursuant to non-disclosure agreements due to the inherently competitive nature

of the transactions); *In re Carlson Travel, Inc.*, No. 21-90017 (MI) (Bankr. S.D. Tex. Jan. 10, 2022) (same); *In re Washington Prime Group, Inc.*, No. 21-31948 (MI) (Bankr. S.D. Tex. July 23, 2021) (same).

21. Here, the Confidential Parties are actual or potential participants in the Debtors' and/or the Agent's efforts to negotiate sale transactions regarding the Rolling Stock Assets for the benefit of all stakeholders. The Debtors and the Agent, as applicable, are required to maintain the confidentiality of the identities of Confidential Parties (whose identities are proposed to be kept sealed pursuant to the relief sought in this Motion) pursuant to certain non-disclosure agreements. Public disclosure of such identities, in violation of these non-disclosure agreements, may impair the negotiation and sale process regarding the Rolling Stock Assets to the detriment of creditor recoveries. In addition, public disclosure of the identities of parties with whom the Agent has transacted in the past could harm the marketing and sale process of the Rolling Stock Assets by deterring such parties from entering this process. Further, the Agent's business relationships with such Confidential Parties could be compromised due to the Agent's failing to maintain confidentiality. Non-disclosure of the Confidential Parties' names will maximize the competitiveness of the sale process as it will ensure anonymity and foreclose the risk of intra-bidder discussions.

22. As discussed herein and in the Agent Redaction Declaration, the Confidential Parties have an expectation of privacy by participating in the Rolling Stock Assets sale process. Such expectation for privacy is reasonable given the requirement that such Confidential Parties enter into non-disclosure agreements in order to receive diligence related to any proposed transaction for the Rolling Stock Assets. Public disclosure of the Confidential Parties could also potentially harm innocent third parties who have no stake in these chapter 11 cases (though may

be considered potential bidders, for marketing purposes, by the Agent) and have relied on the Agent to keep their relationships and identities confidential.

23. As mentioned above and as set forth in the Agent Declarations, the Agent will not represent any of the Confidential Parties in connection with any matter in these chapter 11 cases. Accordingly, the Debtors and the Agent do not believe that the Agent's representations of the Confidential Parties in matters unrelated to the Debtors and these chapter 11 cases preclude the Agent from meeting the disinterestedness standard under the Bankruptcy Code.

24. The Agent has recognized, been responsive to, and will continue to be responsive to their disclosure obligations under the Bankruptcy Code and related requests or requirements by of the Court and the U.S. Trustee. The Agent has narrowly tailored the request set forth in this Motion to protect only the kind of commercially sensitive information that is entitled to be protected under section 107 of the Bankruptcy Code. Indeed, the Agent searched and disclosed over 1,500 connections to the Debtors' Potential Parties in Interest.

25. The Debtors and the Agent request authority to maintain the confidentiality of the Confidential Parties (including any future parties not listed in the Schedules who may become potential bidders for the Rolling Stock Assets) who either (a) have executed nondisclosure agreements requiring the Debtors or the Agent to maintain the confidentiality of their names and identities or (b) have not otherwise consented to the public disclosure of their names and identities by either the Debtors or the Agent. Further, the names and identities of all potential bidders for the Rolling Stock Assets should remain sealed for the reasons set forth in this Motion and in the Agent Redaction Declaration, including to maximize the competitiveness of the Rolling Stock Assets sale process for the benefit of creditor recoveries. The Debtors and the Agent believe that,

in addition to all that has been disclosed in the Agent Declarations, authorizing the names of the Confidential Parties to be filed under seal will maximize estate value.

26. For the avoidance of doubt, the Debtors will provide the Court, the Committee, and any other statutorily formed committees with unredacted versions of the Schedules. The Debtors have already provided unredacted versions of the Confidential Parties' names to the U.S. Trustee. In addition, the Debtors will publicize any information as required by (i) the Bidding Procedures Order (including pursuant to any Notice of Winning Bidder and Back-Up Bidder (as defined therein) in connection with the Real Estate Assets sale process) and (ii) the Agency Agreement Order (including pursuant to the Final Report (as defined therein)).

**Notice**

27. The Debtors will provide notice of this motion to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as proposed counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto;(i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent, and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002. A copy of this Motion is also available on the website of the Debtors' notice and claims agent at

https://dm.epiq11.com/YellowCorporation.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

## **No Prior Request**

28.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  October 30, 2023
Wilmington, Delaware

*/s/ Peter J. Keane*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | Whitney Fogelberg (admitted *pro hac vice*) |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 919 North Market Street, 17th Floor | 300 North LaSalle |
| P.O. Box 8705 | Chicago, Illinois 60654 |
| Wilmington, Delaware 19801 | Telephone: (312) 862-2000 |
| Telephone: (302) 652-4100 | Facsimile: (312) 862-2200 |
| Facsimile: (302) 652-4400 | Email: patrick.nash@kirkland.com |
| Email: ljones@pszjlaw.com | david.seligman@kirkland.com |
| tcairns@pszjlaw.com | whitney.fogelberg@kirkland.com |
| pkeane@pszjlaw.com | |
| ecorma@pszjlaw.com | -and- |

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*