# Exhibit B

# PROGRAM AGREEMENT

**THIS PROGRAM AGREEMENT (this "Agreement")** entered into by and between **OLD REPUBLIC INSURANCE COMPANY,** Greensburg, Pennsylvania ("Old Republic"), and **YELLOW ROADWAY CORPORATION (now known as YRC Worldwide Inc.)**
(FEIN #48-0948788) (the "Insured").

## WITNESSETH:

**WHEREAS,** the Insured has requested Old Republic to issue to it for its benefit and for the benefit of its subsidiaries or affiliates, effective March 1, 2004, certain workers' compensation and employers' liability, automobile liability, commercial general liability insurance coverages with respect to the Insured's operations and those of its subsidiaries or affiliates, and Old Republic has agreed to do so on the terms and conditions set forth below, as well as those in the insurance policies it issues to Insured.

**NOW, THEREFORE,** in consideration of the premises and the mutual promises herein set forth, and intending legally to be bound, the parties agree as follows:

1. **Insured and Its Subsidiaries**

   This Agreement is entered into by the Insured for its own benefit and, subject to Section 3 below, the benefit of the Insured's subsidiaries or affiliates, and shall be a binding obligation of Insured and its subsidiaries and affiliates.

2. **Application and Effective Date**

   This Agreement, and the Schedules A, B and C attached hereto, which are a part of this Agreement, applies to each and every one of the insurance coverages described in Section 3 below. This agreement will be effective as of the effective date(s) of such insurance coverages as shown on Schedule A and will continue in full force and effect until terminated in accordance with the provisions of Section 15 hereof.

3. **The Insurance Coverages**

   Old Republic will issue to Insured, for the Insured's own benefit and for the benefit of such of the Insured's subsidiaries or affiliates as the Insured designates from time to time, Old Republic's Policies as shown on Schedule A. Coverage will be provided under the Policies in the amounts and with such retentions and/or deductibles, if any, as are set forth in the Schedule A attached hereto. Any renewals shall be set forth on an Addendum to Schedules A, B and C, which shall be added to this Agreement upon renewal from time to time. In addition to the standard exclusions, the Policies will be endorsed as the parties may agree to from time to time.

4. **Definitions**

   As used in this Agreement, the following capitalized terms shall have the meanings given to them in this Section 4.

   (a) "Allocated Loss Adjustment Expenses" means the expenses which are incurred in conjunction with the defense, adjustment or settlement of claims made under any one of the Policies and which are allocable to such claims according to generally accepted insurance industry practices; such expenses include allocable medical and legal costs, attorneys' fees, costs of appeals bonds, expenses incurred in obtaining recovery against any third

party, and the fees and expenses to any firm or company to render any field investigation with respect to claims arising under any of the Policies, but such expenses do not include any ordinary office expenses of Old Republic or any wages or salaries paid to Old Republic's employees, nor the unallocated fees or charges of any third party claims administrator selected in accordance with the provisions of Section 10 below.

(b) "Collateral Requirement" means the sum of the estimated outstanding Losses and Allocated Loss Adjustment Expenses applicable to the Insured's Retention, estimated unallocated fees and expenses of any claims administrator, estimated future audit premium, estimated external charges and assessments, and any unpaid premium determined from time to time by Old Republic, which will include Old Republic's estimates of case reserves for such Losses and Allocated Loss Adjustment Expenses and unallocated loss adjustment expenses outstanding as of the date of such estimate or calculation, and reserves for such Losses incurred but not reported.

(c) "Insured's Retention" means the amount of Loss and Allocated Loss Adjustment Expense that is retained by the Insured or its insured subsidiaries or affiliates per Occurrence, as indicated on Schedule A as the retention of the Insured on each of the Policies.

(d) "Loss" or "Losses" means any claim or claims for which there is coverage under any one of the Policies, and any extra-contractual, punitive, or exemplary damages liability which may be imposed with respect to any of the Policies.

(e) "Occurrence" has the same meaning as that given it under the terms of the Policies.

(f) "Policies" means the insurance policies issued by Old Republic to the Insured which are set forth on Schedule A.

(g) "Statement of Collateral Requirements" has the same meaning as that given the term under Section 9.2.

5. **Premium Charges**

   5.1. **Premiums.** The premiums for each of the Policies are payable to Old Republic as provided in Schedule C.

   5.2. **Premium Adjustment.** The premiums for the Policies will be subject to adjustments based upon Old Republic's rights of audit under the terms of the Policies, and will also be subject to adjustment to reflect the addition or deletion of any subsidiaries as named insureds under the Policies during the term of coverage. The insured's failure to provide audited exposure data to Old Republic within 90 days of policy expiration shall be considered as forfeiture of the Insured's rights under the audit provisions of the program. Old Republic shall use the best information available to produce audit adjustments which shall become due under the terms of the Policies.

   5.3. **Premiums include External Costs.** The policy premiums include external costs as shown on Schedule B of this Agreement. For workers' compensation, at the inception of the program, these costs are a function of the total estimated premium for the Policy as indicated on the attached Schedules. If it should later be determined that the basis for these charges, as determined by the jurisdiction, is to be calculated on a different premium

base (i.e., discounted premium before the application of any deductible credits) or on something other than premium (i.e., Losses), Old Republic will be entitled to recover the difference through a subsequent adjustment to its external costs or in accordance with the provisions of Section 7.1 below. The adjustment will not be processed as retained premium, but rather as a surcharge.

6. **Allocated Loss Adjustment Expenses**

    Allocated Loss Adjustment Expenses incurred with respect to each Occurrence under a Policy for which Insured's Retention does not include Allocated Loss Adjustment Expense will be prorated between the Insured and Old Republic in the same ratio as each party is required to pay toward the Loss, net of Allocated Loss Adjustment Expenses. For purposes of such proration, any extra-contractual, punitive or exemplary damages will be excluded from the amount of the net Loss where prohibited by law. Allocated Loss Adjustment Expenses with respect to Losses which are entirely within Insured's Retention, as well as claims which are successfully defended and result in no Loss payments will not be prorated but will be fully the responsibility of the Insured.

7. **Hold Harmless**

    7.1 **Insured's Indemnification of Old Republic.** In consideration of Old Republic's agreement to enter into this Agreement and to issue the Policies on the terms and conditions set forth in this Agreement, including entering into any agreement for third party administration of claims in accordance with Section 10 below, the Insured hereby unconditionally agrees to indemnify and hold Old Republic harmless from all claims, Losses, costs and expenses which Old Republic may incur or suffer under the Policies or this Agreement or any third party claims administration agreement, or for which Old Republic may be held liable by a final order of a court or regulatory authority as a result of issuing such Policies and entering into this Agreement or any such third party claims administration agreement. Such indemnification obligations do not extend, however, to any liability suffered or incurred by Old Republic as a direct result of its own negligence, willful misconduct, or lack of good faith in performing or failing to perform its obligations under this Agreement and the Policies. The liability to indemnify Old Republic hereunder will remain in full force and effect, not withstanding any change in the ownership or control of the Insured or its subsidiaries or affiliates insured under the Policies, for as long as this Agreement remains in effect.

    7.2 **Indemnification for Issuance of Certificates.** In consideration of the fact that Old Republic, the Insured's broker or the Insured itself may, from time to time issue certificates or other evidence of insurance with various regulatory authorities and others certifying to coverage other than, or limits in excess of, those provided on the subject Policies, the Insured hereby agrees to indemnify and hold harmless Old Republic against any claim, Loss or expense occasioned by a requirement to pay a Loss, provide a defense against a claim or incur any other expense that would not have been paid, provided or incurred except for the issuance of such certificate or evidence of insurance. This obligation of the Insured to hold harmless and defend Old Republic shall not be limited by the amount of the

Insured's Retention.

8. **No Aggregate or Stop Loss Coverage**

   Notwithstanding the limits of the Insured's Retention as to any one Occurrence, there is no limitation of the Insured's liability on a cumulative or aggregate basis, and it is understood that under the terms and conditions set forth in this Agreement, Old Republic does not undertake to limit Insured's liability with respect to coverage within Insured's Retention through any aggregate, stop loss or similar protection.

9. **Letters of Credit**

   9.1. **Issuance of Letters of Credit.** As security for the payment of all of the foregoing charges, other charges and adjustments, as well as for the indemnification obligations and the Loss and Loss Expense funding obligations described in Section 10 below, the Insured will provide to Old Republic, as it requests from time to time, one or more clean, unconditional, irrevocable letters of credit establishing credits in favor of Old Republic or other security acceptable to Old Republic in the aggregate sum not to exceed the Collateral Requirement. Such letter(s) of credit will be issued by a bank(s) that is a member of the Federal Reserve System and that is acceptable to Old Republic. The form of the letter(s) of credit will be a form acceptable to Old Republic. Each such letter of credit will be issued for a term of at least twelve (12) months and shall be, by its terms, subject to an unlimited number of automatic renewals thereafter for additional terms of at least twelve (12) months, unless the issuer bank advises Old Republic in writing of its intention not to have the letter(s) of credit renewed at least thirty (30) days prior to the next expiration date. In that case, the Insured must furnish Old Republic, within not less than ten (10) business days before the expiry date, with a replacement letter(s) of credit issued to Old Republic by an equally acceptable bank(s), or other security as may be acceptable to Old Republic, establishing credit or security in an amount equal to the credit which remained under the letter(s) of credit being replaced. The requirement for such security will remain in place until all ultimate incurred Losses, Allocated Loss Adjustment Expenses and unallocated loss adjustment expenses, claim fees, under the Policies and any other obligations under this Agreement have been paid or otherwise provided for to Old Republic's satisfaction.

   9.2. **Statement of Collateral Requirements.** At such times as Old Republic deems it appropriate or necessary, before and after the expiration or any cancellation of coverage under the Policies, until all liability of Old Republic with respect to the Policies has been concluded or has terminated in the ordinary course, Old Republic will prepare and furnish to Insured a statement ("Statement of Collateral Requirements") at least annually indicating the Collateral Requirements , less all sums drawn by Old Republic under the letter(s) of credit and not returned to the Insured. With eachStatement of Collateral Requirements, the amount of credit then remaining available to Old Republic under the letter(s) of credit provided to it hereunder will be adjusted, as necessary to equal 100% of the amounts indicated on the statement. If the result of such calculation exceeds the amount of credit remaining available to Old Republic under the letter(s) of credit it holds as of the calculation

date, the Insured will provide Old Republic with additional credit or letter(s) of credit equal to the amount of such excess within twenty (20) days of the Insured's receipt of the Statement of Collateral Requirements. If the result of the above calculation is less than the remaining credit available to Old Republic under the letter(s) of credit it then holds, the total amount of such credit will be reduced by the amount of such difference, and within twenty (20) days of the Insured's receipt of the Statement of Collateral Requirements, Old Republic will execute any document necessary in order to reduce the amount of such credits in accordance with this Section 9.2.

9.3. **Old Republic Draws on Letters of Credit.** Old Republic or its successors in interest may draw upon any letter of credit at any time and from time to time, and such funds shall be applied without diminution because of the insolvency of Insured or Old Republic, for one or more of the following purposes only:

(a) to reimburse Old Republic for Insured's share of Losses or Allocated Loss Adjustment Expenses paid by Old Republic under Insured's Retention, for any unpaid unallocated fees and expenses of any claims administrator, and for any external costs or assessments, and to pay any unpaid premium owed to Old Republic;

(b) to fund an account with Old Republic for the full amount secured under this Agreement by letter of credit in the event Insured has failed to replace timely any expiring letter of credit as required by Section 9.1. or to adjust timely the amount secured hereunder as required by Section 9.2. and such failure would result in a deficiency in the total amount secured by Insured as reflected in the most recent Statement of Collateral Requirements.

(c) to fund an account with Old Republic for the full amount secured by letter of credit in the event of the filing of a voluntary or involuntary petition in bankruptcy by Insured, the insolvency of Insured, the admission in writing by Insured of its inability to pay its debts as they become due, or a general assignment by Insured of its assets for the benefit of creditors;

(d) to pay any other amounts Old Republic claims are due to it under the Policies or this Agreement. In the event Old Republic draws upon a letter of credit pursuant to items (b) or (c) in Section 9.3, Old Republic will be free to hold the proceeds thereof, without liability for interest thereon, until Insured has fully remedied the circumstance for which the draw was made, whereupon Old Republic shall promptly return the proceeds held by it, less portions allocable to amounts due it under items (a) and (d) above, upon receipt of written instructions from Insured, signed by a duly authorized officer of Insured, indicating to whom such return is to be made. Old Republic will try, when possible, to provide prior notice to the Insured but shall be free to draw upon the letter(s) of credit or other security under the circumstances described in paragraphs (a), (b), (c), and (d) of this Section 9.3.

10. **Claims Administration**

   10.1. **Third Party Claims Administrators.** Claims arising under Policies issued by Old Republic will be administered by a third party claims adjusting firm(s) approved by and under contract with Old Republic. Fees and expenses for such services will be strictly the responsibility of the Insured.

   10.2. **No Third Party Claims Administrator.** If claims under the policies are not adjusted by a third party claims administrator(s) under contract with Old Republic, Insured under contract with Old Republic will provide a monthly report to Old Republic showing the status of all claims including details of payment and outstanding reserves in a format acceptable to Old Republic.

   10.3 **Insured Will Fund an Imprest Account.** If required for the payment of claims, the Insured will fund an imprest account (Escrow Account) to be used for the payment of Losses and Allocated Loss Adjustment Expenses within the Insured's Retention. In the event said funds are deemed insufficient by Old Republic or the third party claims administrator(s), it will be the responsibility of the Insured to replenish and/or increase the funds to the required level.

   10.4 **Old Republic Is the Final Authority in Claims Handling Decisions.** It is understood and agreed, and will similarly be understood and agreed by any claims administrator(s), that, except as otherwise provided herein, in the event of any disagreement as to case reserves, Allocated Loss Adjustment Expenses, claims handling decisions, or the choice of defense counsel or claims administrators, the final authority will rest with Old Republic in its sole discretion. In the event a claims administrator ceases to provide the services required of it or is unable to provide such services, for whatever reason, and an acceptable replacement is not immediately engaged, and the Insured does not select another which is reasonably acceptable to Old Republic or the Insured does not assume the claims administration itself, Old Republic will have the option of selecting one of its own choice or assuming the claims administration function itself until a reasonably acceptable administrator is selected. For any such period of time, Old Republic will be entitled to receive claims administration fees and reimbursement equal to the greater of what the unacceptable administrator would have been paid for the same services, or to what any one of the national claims administration firms would have charged for the same services. Nothing in this Section 10.4 shall give Old Republic power or authority to direct or cause the direction of Insured's accounting, reporting or corporate governance functions.

11. **Breach of Obligations**

   If the Insured fails to perform in a timely manner any obligation due Old Republic hereunder (including but not limited to the posting of required security), and if such failure continues for at least ten (10) business days following the Insured's receipt of written notice of such failure, Old Republic will have the option of canceling all of the Policies due to non-performance or non-payment under this Agreement, and any such cancellation shall be deemed to have been made at the Insured's request. Further, if a third party claims administrator reports to Old Republic that Insured has failed to pay the third party claims administrator's fees and reconciliation payments within the time period

allowed for payment after presentation by the third party claims administrator of an invoice pursuant to the terms of the claims administration agreement, then Old Republic shall notify Insured in writing that it has received such report and Old Republic shall take such steps as it deems necessary, in its sole discretion, including but not limited to negotiating substitute compensation for the third party claims administrator, to ensure the continued administration of claims under the Policies. Old Republic shall also have the option of cancelling all of the Policies as provided above if non-payment of the third party claims administrator is not cured in 10 business days from receipt of notice from Old Republic. Old Republice may, at its sole discretion, draw on the letter(s) of credit or other security furnished to it under this Agreement in payment of the monies due from the Insured, but will be under no obligation to do so and will be free instead to cancel the Policies and retain the letter(s) of credit or other security furnished as security for the payment of Losses, Allocated Loss Adjustment Expenses and other expenses subject to indemnification under Section 7.

12. **Renewal Option**

   Old Republic is under no obligation, and unless otherwise agreed to in writing, Old Republic will not be under any obligation in the future, to renew any of the coverages under the Policies or to offer renewal of the coverages under the same terms and conditions following the expiration of the Policies. If Old Republic elects not to renew or to cancel coverage, it will furnish written notice to Insured of its intent not to renew and/or cancel consistent with the terms and conditions of the Policies.

13. **Joint Obligations**

   The obligations set forth in Sections 5 (Premium Charges), 6 (Allocated Loss Adjustment Expenses), 7 (Hold Harmless), 9.1 (Issuance of Letters of Credit), 9.2 (Statement of Collateral Requirements), 10 (Claims Administration), 14.1 (Financial Statements) and 14.2 (Access to Records) are obligations of the Insured and its insured subsidiaries and affiliates jointly and severally. While Old Republic agrees to look primarily to the Insured for all such obligations, its recourse is not limited to the Insured, and Old Republic has the right at all times to hold any or all of the insured subsidiaries and affiliates liable for any such obligations due it. The Insured hereby expressly represents and warrants that it is authorized to enter into this Agreement on behalf of, and to bind, its insured subsidiaries and affiliates to this Section 13 and all of the other terms and conditions hereof, and stipulates that the foregoing representation and warranty is material and has been specifically relied upon by Old Republic in entering into this Agreement and agreeing to issue the Policies.

14. **Financial Statements; Access to Records**

    14.1. **Financial Statements.** So long as Insured is required to file annual and quarterly reports under the Securities Exchange Act of 1934, as amended, annually while this Agreement remains in force, the Insured will make available on its web site (i.e., www.yellowroadway.com) copies of Insured's Form 10-K and Form 10-Q Reports to the Securities and Exchange Commission or through the Securities and Exchange Commission's web site (www.sec.gov). In the event the Insured ceases to be a public reporting company required to file such forms and while this Agreement remains in effect, it will provide Old Republic with copies of quarterly financial statements certified by its chief financial officer and annual financial statements certified by its independent auditors within sixty (60) days after the end of each calendar quarter and within one hundred and twenty (120) days after the end of each calendar year.

    14.2. **Access to Records.** While this Agreement remains in effect, Old Republic will have full and free access to the books and records of the Insured, its subsidiaries and affiliates insured under the Policies, as respects information pertaining to the subject coverages. Such access will be limited however, to normal business hours and shall be afforded only at reasonable intervals and upon reasonable prior written notice.

15. **Term and Duration**

    All of the foregoing terms and conditions will remain in full force and effect while the Policies remain in force and effect, and those described in Sections 4 (Definitions), 5 (Premium Charges), 6 (Allocated Loss Adjustment Expenses), 7 (Hold Harmless), 8 (No Aggregate or Stop Loss coverage), 9 (Letters of Credit), 10 (Claims Administration), 10.1 (Third Party Claims Administrator), 10.2 (No Third Party Claims Administrator), 10.3 (Insured Will Fund an Imprest Account), 13 (Joint Obligations), 14 (Financial Statements; Access to Records), 16 (Entire Agreement, Amendment), 17 (Governing Law), 18 (Notices), 19 (No Waiver), 20 (Construction), 21 (Severability), 22 (Assignment), 23 (Remedies), and 24 (Successors) will survive any breach or cancellation of the Policies, as well as the normal expiration of the Policies, and will remain in full force and effect until all Losses and Allocated Loss Adjustment Expenses covered under the Policies have been paid or otherwise concluded.

16. **Entire Agreement, Amendment**

    Apart from any agreement entered into for the administration of claims by a third party claims adjuster, this Agreement, together with the Policies issued hereunder, represents the entire agreement between the parties with respect to the subject matter hereof. This Agreement may only be changed by written amendment signed by duly authorized officers of the respective parties. No other change will be binding or enforceable.

17. **Governing Law**

    This Agreement will be governed in all respects by the laws of the state of Illinois.

18. **Notices**

    All notices or other communications required hereunder will be in writing, sent by registered mail to:

**Old Republic:**

**OLD REPUBLIC INSURANCE COMPANY**
445 South Moorland Rd., Suite 300
Brookfield, WI 53005
Attention: Michael Weber

**Insured:**

YRC Worldwide Inc., formerly known as
Yellow Roadway Corporation
10990 Roe Avenue
Overland Park, KS 66211
Attention: General Counsel

or such other addresses as may be designated in the same manner from time to time.

19. **No Waiver**

The failure on any occasion by either party to enforce the terms of this Agreement will not be deemed or construed as a waiver of that party's right to enforce those or any other terms of this Agreement on any other occasion.

20. **Construction**

The terms and conditions of this Agreement will be liberally construed so as to give the fullest possible effect to the intentions of the parties. To the extent that any of the terms or conditions of the aforesaid Policies are inconsistent with any of the terms or conditions of this Agreement, the latter are to be given effect and the former will be considered superseded by this Agreement.

21. **Severability**

If any term or provision of this Agreement is in violation of the law of any state, such term or provision shall be void in the jurisdictions where it is unlawful. The remainder of this Agreement shall remain binding on the parties so that the terms of this Agreement are binding only to the extent lawful under applicable laws. If any provision of this Agreement is determined by a court of law to be unenforceable, the parties hereto agree, and it is their desire, that the court shall limit such provision to the extent necessary to be deemed enforceable by such court. As so modified, the provision shall be binding upon the parties as if originally set forth herein.

22. **Assignment**

Neither party may assign any of its rights or obligations under this Agreement without the prior written consent of the other party.

23. **Remedies**

The rights and remedies granted to the parties hereunder will be in addition to, and not in lieu of, any rights or remedies they may otherwise have.

24. **Successors**

The terms and conditions of this Agreement will be binding upon and shall inure to the benefit of the lawful successors and assigns of the parties hereto.

**IN WITNESS WHEREOF,** the parties hereto have caused this instrument to be executed by their duly authorized officers on the ___28th___ day of ___May___, 20 ___10___, to be effective as of ___, 2004.

                **OLD REPUBLIC INSURANCE COMPANY**
BY: _[signature]_
OFFICER'S TITLE: ___Vice President___
DATE: ___7-7-10___

**YRC Worldwide Inc. (formerly known as) YELLOW ROADWAY CORPORATION,** for itself and on behalf of its insured subsidiaries and affiliates
BY: _Daniel J. Churay_
OFFICER'S TITLE: ___Executive Vice President, General Counsel & Secretary___
DATE: ___5/28/10___

| USDOT Number: | Date Received: |
|---|---|

Please note, the expiration date as stated on this form relates to the process for renewing the Information Collection Request for this form with the Office of Management and Budget. This requirement to collect information as requested on this form does not expire. For questions, please contact the Office of Registration and Safety Information, Registration, Licensing, and Insurance Division.

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.



United States Department of Transportation
**Federal Motor Carrier Safety Administration**

**Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980**

# FORM MCS-90

**Issued to** YRC Inc. dba YRC Freight **of** Kansas
　　　　　　*(Motor Carrier name)*　　　　　　　　　　　　*(Motor Carrier state)*

**Dated at** 9:00 AM **on this** 2nd **day of** June , 2023

**Amending Policy Number:** MWML 18562　　**Effective Date:** 06/01/23

**Name of Insurance Company:** Old Republic Insurance Company

**Countersigned by:** *Mallory Collins*
　　　　　　　　　　　*(authorized company representative)*

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown *(check only one)*:

[X] This insurance is primary and the company shall not be liable for amounts in excess of　$ 5,000,000　for each accident.

[ ] This insurance is excess and the company shall not be liable for amounts in excess of　$ _____　for each accident in excess of the underlying limit of　$ _____　for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: 877-797-3400.

Cancellation of this endorsement may be effected by the company of the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, DC).

Filings must be transmitted online via the Internet at http://www.fmcsa.dot.gov/urs.

*(continued on next page)*

Rev 6/3/2021

MC 1622y (06-21) Wolters Kluwer | Uniform Forms™

FORM MCS-90 Page 1 of 3

MWML 18562　　　Yellow Corporation　　　06/01/23 - 09/01/23

## DEFINITIONS AS USED IN THIS ENDORSEMENT

***Accident*** includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

***Motor Vehicle*** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

***Bodily Injury*** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

***Property Damage*** means damage to or loss of use of tangible property.

***Environmental Restoration*** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

***Public Liability*** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

*(continued on next page)*

## SCHEDULE OF LIMITS — PUBLIC LIABILITY

| Type of carriage | Commodity transported | January 1, 1985 |
|---|---|---|
| **(1)** For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |
| **(2)** For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| **(3)** For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| **(4)** For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

*The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

**Y.**   **You** and **your** refer to the **Named Insured(s)** shown in the Declarations and any other person(s) or organization(s) qualifying as a **Named Insured** under this Policy.

**VII.**   **CONDITIONS**

**A.**   **Assignment**

**Your** interest or the interest of any Insured is not assignable.  **Your** rights and duties under this Policy may not be transferred without **our** written consent.

If **you** die or are declared legally bankrupt, **your** rights and duties shall be transferred to **your** legal representative but only while acting within the scope of his or her duties as **your** legal representative.

**B.**   **Bankruptcy Or Insolvency**

**Your** bankruptcy, insolvency or inability to pay, or the bankruptcy shall not relieve **us** from the payment of any claim covered by this Policy.

But under no circumstances shall any bankruptcy, insolvency, or inability to pay require **us** to drop down or in any way replace **your deductible** or assume any obligation associated with **your deductible**.

**C.**   **Changes**

The first **Named Insured** is authorized to make changes in this Policy with **our** consent.  This Policy can only be changed by a written endorsement **we** issue and make a part of this Policy. Notice to any broker or knowledge possessed by a broker or any other person shall not effect a waiver or change in any part of this Policy.

**D.**   **Conformance To Statute**

To the extent a term of this Policy conflicts with a statute of the state within which this Policy is issued, this Policy shall be amended to conform to the minimum requirement of the statute.

**E.**   **Concealment, Misrepresentation Or Fraud**

Any and all relevant provisions of this Policy are void in any case of fraud by **you** at anytime. They are also void if **you**, at any time, conceal or misrepresent a material fact.  **Our** right to retain or recover the premium shall not be affected thereby.

**F.**   **Duties In The Event Of An Occurrence, Claim, Or Suit**

   **1.**   **You** must notify us as soon as practicable of an **occurrence**, which may result in a claim, **damages, suit,** or loss. To the extent possible, notice should include:

      **a.**   How, when, and where the **occurrence** took place;

      **b.**   Names and addresses of any injured persons and witnesses; and

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5.    Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B.    General Conditions**

**1.    Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2.    Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.**    This Coverage Form;

**b.**    The covered "auto";

**c.**    Your interest in the covered "auto"; or

**d.**    A claim under this Coverage Form.

**3.    Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4.    No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5.    Other Insurance**

**a.**    For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)**    Excess while it is connected to a motor vehicle you do not own.

**(2)**    Primary while it is connected to a covered "auto" you own.

**b.**    For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

- **d.** If the injured person is entitled to underinsured motorists coverage under more than one policy, the following order of priority applies and any amount "available for payment" shall be credited against such policies in the following order of priority:
  - **(1)** The policy covering a motor vehicle "occupied" by the injured person at the time of the "accident".
  - **(2)** The policy covering a motor vehicle not involved in the "accident" under which the injured person is a named insured.
  - **(3)** The policy covering a motor vehicle not involved in the "accident" under which the injured person is other than a named insured.

  If there is more than one insurer providing coverage under one of the payment priorities set forth in Paragraph **d.** above, we will pay only "our" share of the "loss". "Our" share is the proportion that "our" limit of liability bears to the total of all limits applicable on the same level of priority.

2. **Our Right To Recover From Others**

   If "we" make any payment, "we" are entitled to recover what "we" paid from other parties. Any person to or for whom "we" make payment must transfer to "us" his or her rights of recovery against any other party. The person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

3. **Legal Action Against Us**

   No legal action may be brought against "us" until there has been full compliance with all the terms of the policy.

4. **Changes**

   If a change requires a premium adjustment, "we" will adjust the premium as of the effective date of the change.

5. **Transfer Of Rights And Duties**

   "Your" rights and duties under this endorsement may not be assigned without "our" written consent.

6. **Bankruptcy**

   Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve "us" of any obligations under this endorsement.

7. **Policy Period, Coverage Territory**

   Under this endorsement, "we" cover "accidents" and "losses" occurring:
   - **a.** During the policy period shown in the Declarations; and
   - **b.** Within the coverage territory.

   The coverage territory is:
   - **a.** The United States of America
   - **b.** The territories and possessions of the United States of America.
   - **c.** Puerto Rico; and
   - **d.** Canada

   "We" also cover "loss" to, or "accidents" involving, a "covered auto" while being transported between any of these places.

8. **Concealment, Misrepresentation, Or Fraud**

   Coverage for "your" claim under this endorsement is void in any case of fraud by "you" at any time as it relates to this coverage. It is also void if "you", at any time, intentionally conceal or misrepresent a material fact concerning:
   - **a.** This endorsement;
   - **b.** The "covered auto";
   - **c.** "Your" interest in the "covered auto"; or
   - **d.** A claim under this coverage.

9. **Premium Audit**
   - **a.** The estimated premium for this endorsement is based on the exposures "you" told "us" "you" would have when this policy began. "We" will compute the final premium due when "we" determine "your" actual exposures. The estimated total premium will be credited against the final premium due and the First Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the First Named Insured will get a refund.
   - **b.** If this policy is issued for more than one year, the premium for this endorsement will be computed annually, based on "our" rates or premiums in effect at the beginning of each year of the policy.

10. **Arbitration**
    - **a.** If "we" and an "insured" disagree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.