**EXHIBIT A**



Connell Foley LLP
56 Livingston Avenue
Roseland, NJ 07068
P 973.535.0500  F 973.535.9217

**Philip W. Allogramento III**
Partner
PAllogramento@connellfoley.com

November 2, 2023

**VIA FEDERAL EXPRESS**
Yellow Corporation Claims Processing Center
c/o Epiq Corporate Restructuring, LLC
10300 SW Allen Boulevard
Beaverton, OR 97005

      Re:    **Case Number 23-11087**
             **Creditor: 445 Hollywood Avenue LLC / Schedule #87000080**
             **Debtor: YRC Inc.**

Dear Sir/Madam:

    This firm represents Creditor, 445 Hollywood Avenue LLC in the above-referenced matter. Enclosed for filing please find an original and one (1) copy of an <u>Amended</u> Proof of Claim with addendum.  Kindly return a "filed" copy of the Proof of Claim to the undersigned in the enclosed, self-addressed, stamped envelope.

    If you have any questions, please do not hesitate to contact me.

                Very truly yours,

                CONNELL FOLEY LLP

                Philip W. Allogramento III

PWA:mac
Enclosure

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

After printing this label:
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**



ORIGIN ID:MHUA     (973) 535-0500
PHILIP W. ALLOGRAMENTO III, ESQ.
CONNELL FOLEY LLP
56 LIVINGSTON AVENUE
ROSELAND, NJ 07068
UNITED STATES US

TO  YELLOW CORP. CLAIMS PROCESSING CTR.
    C/OEPIQ CORPORATE RESTRUCTURING LLC
    10300 SW ALLEN BOULEVARD

    BEAVERTON OR 97005
(973) 535-0500
INV:
PO:                    REF: 143630
                       DEPT:

SHIP DATE: 03NOV23
ACTWGT: 1.00 LB
CAD: 102624704/INET4535

BILL SENDER

583J4/C5BD/9AE3

FedEx Express

MON - 06 NOV 5:00P
STANDARD OVERNIGHT

97005
OR-US     PDX

TRK#
7739 6847 4671          0201

XW BNOA

## United States Bankruptcy Court, District of Delaware

| Fill in this information to identify the case (Select only one Debtor per claim form): | | |
|---|---|---|
| ☐ Yellow Corporation (Case No. 23-11069) | ☐ 1105481 Ontario Inc. (Case No. 23-11070) | ☐ Express Lane Services, Inc. (Case No. 23-11071) |
| ☐ New Penn Motor Express LLC (Case No. 23-11072) | ☐ Roadway Express International, Inc. (Case No. 23-11073) | ☐ Roadway LLC (Case No. 23-11074) |
| ☐ Roadway Next Day Corporation (Case No. 23-11075) | ☐ USF Bestway Inc. (Case No. 23-11076 | ☐ USF Dugan Inc. (Case No. 23-11077) |
| ☐ USF Holland International Sales Corporation (Case No. 23-11078) | ☐ USF Holland LLC (Case No. 23-11079) | ☐ USF RedStar LLC (Case No. 23-11080) |
| ☐ USF Reddaway Inc. (Case No. 23-11081) | ☐ Yellow Freight Corporation (Case No. 23-11082) | ☐ Yellow Logistics, Inc. (Case No. 23-11083) |
| ☐ YRC Association Solutions, Inc. (Case No. 23-11084) | ☐ YRC Enterprise Services, Inc. (Case No. 23-11085) | ☐ YRC Freight Canada Company (Case No. 23-11086) |
| ☒ YRC Inc. (Case No. 23-11087) | ☐ YRC International Investments, Inc. (Case No. 23-11088) | ☐ YRC Logistics Inc. (Case No. 23-11089) |
| ☐ YRC Logistics Services, Inc. (Case No. 23-11090) | ☐ YRC Mortgages, LLC (Case No. 23-11091) | ☐ YRC Regional Transportation, Inc. (Case No. 23-11092) |

| Fill in this information to identify the case: |

Debtor 1    YRC Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    District of Delaware

Case number    23-11087

## Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:    Identify the Claim

| 1. | Who is the current creditor? | 445 Hollywood Avenue LLC |
|---|---|---|
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

| 2. | Has this claim been acquired from someone else? | ☑ No ☐ Yes. From whom? _____ |
|---|---|---|

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Connell Foley LLP attn: Philip W. Allogramento
Name

56 Livingston Avenue
Number    Street

Roseland            NJ            07068
City                State            ZIP Code

Contact phone 973-535-0500

Contact email pallogramento@connellfoley.com

Where should payments to the creditor be sent? (if different)

445 Hollywood Avenue LLC attn: Justine Young
Name

480 Duncan Avenue
Number    Street

Jersey City            NJ            07306
City                State            ZIP Code

Contact phone 201-332-7200

Contact email j.desantis@rdls.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

— — — — — — — — — — — — — — — — — — — — — — —

| 4. | Does this claim amend one already filed? | ☐ No ☑ Yes. Claim number on court claims registry (if known) #87000080    Filed on 10/24/2023 MM / DD / YYYY |
|---|---|---|

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No ☐ Yes. Who made the earlier filing? _____ |
|---|---|---|

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$_____ 63,401.25 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Unpaid Rent / Taxes / See Addendum

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:     Security Deposit

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                          $_____ 71,000.00

Amount of the claim that is secured:        $_____ 63,401.25

Amount of the claim that is unsecured:  $_____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____ 63,401.25

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☑ Yes. Amount necessary to cure any default as of the date of the petition.    $_____ 63,401.25

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   11/03/2023
                    MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Justine Young | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Member | | |
| Company | 445 Hollywood Avenue LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 480 Duncan Ave | | |
| | Number          Street | | |
| | Jersey City | NJ | 07306 |
| | City | State | ZIP Code |
| Contact phone | 201-332-7200 | Email | j.desantis@rdls.com |

## Addendum to Amended Proof of Claim

445 Hollywood Avenue LLC ("445 Hollywood") is a creditor of the debtor, YRC Inc. ("Debtor").

445 Hollywood is entitled to a pre-petition claim in the amount of $63,401.25 against the Debtor based on unpaid rent for the month of August 2023 and unpaid 3rd Quarter property taxes pursuant to the lease agreement entered into by Hollywood Properties, LLC and the Debtor on April 15, 2014 (the "Lease Agreement"). A true and correct copy of the Lease Agreement is attached hereto as Exhibit "**A**". This pre-petition claim is secured in the amount of $71,000.00, which is the security deposit funds currently being held by 445 Hollywood.  445 Hollywood is the successor-in-interest to Hollywood Properties, LLC by virtue of purchase of the subject property.

445 Hollywood reserves the right to file a rejection damages claim as to any rejection in addition to this Proof of Claim.  In the event that the Debtor seeks to assume and assign the Lease Agreement, an express waiver of potential preference claims is required by all debtor entities, including Yellow Corp.  Moreover, 445 Hollywood hereby reserves all of its rights to amend this claim to add any additional matters and/or correct any information contained therein.

Nothing herein shall be construed as an admission or acceptance of any liability to any party, or the Debtor, on the part of 445 Hollywood, all rights, defenses, and/or objections to any such liability being expressly reserved by 445 Hollywood.

12746029-1

# EXHIBIT A

# LEASE AGREEMENT

## BETWEEN

## HOLLYWOOD PROPERTIES, LLC, Lessor

## AND

## YRC INC., Lessee

## 445 HOLLYWOOD AVENUE, SOUTH PLAINFIELD, NJ

**Prepared by:**
**MARK K. FOLLENDER, ESQ.**
**3 UNIVERSITY PLAZA**
**SUITE 207**
**HACKENSACK, NJ 07601**
**201-884-1110**
**201-884-1427 FAX**
**MARK@MKF-LAW.COM**

1

# TABLE OF CONTENTS

SUMMARY OF BASIC LEASE PROVISIONS AND DEFINITIONS ................................................... 1

   1.   ADDITIONAL RENT........................................................................................................... 1
   2.   BROKER......................................................................................................................... 1
   3.   BUILDING...................................................................................................................... 1
   4.   COMMENCEMENT DATE .................................................................................................. 1
   5.   DEMISED PREMISES OR PREMISES .................................................................................. 1
   6.   EXHIBITS ...................................................................................................................... 2
   7.   FIXED BASIC RENT ........................................................................................................ 2
   8.   BUILDING AREA............................................................................................................ 2
   9.   PARKING SPACES .......................................................................................................... 2
   10.  PERMITTED USE............................................................................................................. 2
   11.  SECURITY DEPOSIT ....................................................................................................... 3
   12.  INITIAL TERM ............................................................................................................... 3
   13.  TERMINATION DATE ...................................................................................................... 3
   14.  STANDARD INDUSTRIAL CLASSIFICATION NUMBER ......................................................... 3
   15.  LEASE YEAR ................................................................................................................ 3
   16.  FORCE MAJEURE ........................................................................................................... 3
   17.  AFFILIATED COMPANY................................................................................................... 3
   18.  RENEWAL TERMS .......................................................................................................... 4

1.   DESCRIPTION. ..................................................................................................................... 4

2.   TERM. .................................................................................................................................. 4

3.   RENT. ................................................................................................................................... 4

   (A)   PAYMENT....................................................................................................................... 4
   (B)   ADDITIONAL RENT.......................................................................................................... 5
   (C)   NET LEASE.................................................................................................................... 5
   (D)   LATE CHARGE................................................................................................................ 5
   (E)   RENT CONCESSION ........................................................................................................ 5

4.   REAL ESTATE TAXES. ......................................................................................................... 6

5.   NO SERVICES TO BE PROVIDED BY LESSOR/WATER AND SEWER CHARGES............. 6

6.   USE OF PREMISES. ............................................................................................................. 6

   (A)   PERMITTED USE ONLY.................................................................................................... 6
   (B)   GOVERNMENTAL REQUIREMENTS.................................................................................... 7

7.   CARE AND REPAIR OF PREMISES/ENVIRONMENTAL. .................................................. 7

   (A)   REPAIR OBLIGATIONS..................................................................................................... 7
   (B)   GLASS REPLACEMENT..................................................................................................... 8
   (C)   ALTERATIONS ................................................................................................................ 8
   (D)   RESTORATION UPON REMOVAL ....................................................................................... 8
   (E)   ENVIRONMENTAL COMPLIANCE....................................................................................... 9

8.   RIGHT TO INSPECT AND REPAIR. .................................................................................. 12

i

| | | |
|---|---|---|
| **9.** | **FLOOR LOAD.** | **12** |
| **10.** | **ABANDONMENT.** | **12** |
| **11.** | **INSOLVENCY OF LESSEE.** | **12** |
| **12.** | **DEFAULT OF LESSEE.** | **13** |
| **13.** | **LESSOR'S REMEDIES ON DEFAULT OF LESSEE.** | **13** |
| | (A)   TERMINATION AND LESSEE'S LIABILITIES | 13 |
| | (B)   ACCELERATION OF THE RENTS | 14 |
| | (C)   SPECIFIC PERFORMANCE OF LEASE | 15 |
| | (D)   WAIVER OF RIGHT OF REDEMPTION | 15 |
| | (E)   OTHER REMEDIES | 15 |
| | (F)   NON-EXCLUSIVITY | 15 |
| **14.** | **ATTORNEY'S FEES.** | **15** |
| **15.** | **DAMAGES TO BUILDING.** | **16** |
| **16.** | **SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT.** | **17** |
| **17.** | **SECURITY DEPOSIT.** | **17** |
| **18.** | **RIGHT TO CURE LESSEE'S BREACH.** | **17** |
| **19.** | **MECHANIC'S LIENS.** | **17** |
| **20.** | **ASSIGNMENT AND SUBLEASE.** | **18** |
| | (A)   FINANCIAL INFORMATION/RECAPTURE | 18 |
| | (B)   LESSOR'S APPROVAL | 18 |
| | (C)   APPROVAL NOT REQUIRED | 19 |
| | (D)   BANKRUPTCY | 19 |
| | (E)   ACCEPTANCE OF RENT FROM OTHERS | 20 |
| **21.** | **EMINENT DOMAIN.** | **20** |
| **22.** | **INSURANCE.** | **20** |
| | (A)   BUILDING INSURANCE | 20 |
| | (B)   LESSEE'S PERSONAL PROPERTY INSURANCE | 21 |
| | (C)   LESSEE'S GENERAL LIABILITY INSURANCE | 21 |
| | (D)   FLOOD INSURANCE | 22 |
| | (E)   WAIVER OF SUBROGATION | 22 |
| | (F)   BLANKET COVERAGE | 22 |
| | (G)   LESSOR'S RIGHT TO PURCHASE/ INTEREST CHARGE | 22 |
| **23.** | **COMPLIANCE WITH LAWS, ETC.** | **23** |
| **24.** | **LESSEE'S ESTOPPEL.** | **23** |
| **25.** | **HOLDOVER TENANCY.** | **23** |
| **26.** | **AS IS/LESSEE'S WORK.** | **24** |



(A) "AS IS" CONDITION.................................................................................................................24
(B) SYSTEMS DELIVERED IN GOOD WORKING ORDER .........................................................24
(C) CONDITIONS ATTACHING TO LESSEE'S WORK................................................................24

27. **LEASE COMMENCEMENT.**............................................................................................**25**

28. **RIGHT TO SHOW PREMISES.** ........................................................................................**25**

29. **WAIVER OF TRIAL BY JURY.** ......................................................................................**26**

30. **NO OTHER REPRESENTATIONS.**..................................................................................**26**

31. **QUIET ENJOYMENT.** ......................................................................................................**26**

32. **PERSONAL LIABILITY.**...................................................................................................**26**

(A) LESSOR'S EXCULPATION ..................................................................................................26
(B) LESSOR'S CONSENT .........................................................................................................27

33. **LESSOR'S LIABILITY FOR LOSS OF PROPERTY.** ...................................................**27**

34. **INDEMNITY.** .....................................................................................................................**27**

35. **BROKER.**............................................................................................................................**27**

36. **PARKING SPACES.** ..........................................................................................................**28**

37. **ACCORD AND SATISFACTION.** ....................................................................................**28**

38. **EFFECT OF WAIVERS OF DEFAULT.**...........................................................................**28**

39. **NO OPTION.** ......................................................................................................................**28**

40. **NOTICES.** ...........................................................................................................................**28**

41. **PARAGRAPH HEADINGS.**..............................................................................................**29**

42. **APPLICABILITY TO HEIRS AND ASSIGNS.** ..............................................................**29**

43. **NUMBER AND GENDER.** ................................................................................................**29**

44. **CORPORATE/AUTHORITY/REPRESENTATIONS.** ....................................................**29**

(A) CORPORATE AUTHORIZATION .........................................................................................29
(B) LESSEE'S REPRESENTATIONS .........................................................................................29

45. **RECORDING.** ....................................................................................................................**30**

46. **MISCELLANEOUS.** ..........................................................................................................**30**

(A) JURISDICTION/VENUE ......................................................................................................30
(B) SIGNS ................................................................................................................................30

47. **OCCUPANCY.** ...................................................................................................................**30**

(A) RENT PAYMENT ................................................................................................................30
(B) TAX PAYMENT..................................................................................................................30
(C) EVIDENCE OF INSURANCE ...............................................................................................30



   (D)     SECURITY DEPOSIT ............................................................................................................... 31
   (E)     FLOOD INSURANCE ............................................................................................................... 31
   (F)     COPY OF LETTER TO UTILITY PROVIDERS ............................................................................... 31
   (G)    COMMENCEMENT OF ADDITIONAL RENT .................................................................................. 31

**48.   OFAC COMPLIANCE ................................................................................................................. 31**

**49.   TERMINATION RIGHT .............................................................................................................. 31**



## NET LEASE

THIS NET LEASE (this "Lease") is entered as of the _15th_ day of April, 2014, by and between **HOLLYWOOD PROPERTIES, LLC,** a New Jersey limited liability company, with offices at c/o Bruce Arbeiter, 359 Eagle Drive Jupiter, Florida 33477 (hereinafter referred to as "Lessor"); and **YRC INC.,** a Delaware corporation, with offices at 10990 Roe Avenue, Overland Park, KS, 66211 (hereinafter referred to as "Lessee").

### PREAMBLE

### SUMMARY OF BASIC LEASE PROVISIONS AND DEFINITIONS

In addition to other terms elsewhere defined in this Lease, the following terms whenever used in this Lease should have only the meanings set forth in this section, unless such meanings are expressly modified, limited or expanded elsewhere herein and all of such terms are deemed expressly incorporated into the Lease.

### 1.   *Additional Rent*

Shall mean all sums in addition to Fixed Basic Rent payable by Lessee to Lessor pursuant to the provisions of this Lease or sums expended by Lessor on Lessee's behalf, or fines imposed upon Lessor as a result of Lessee's failure to comply with the terms hereof.

### 2.   *Broker*

Shall mean Cassidy Turley, who is acting as Lessor's broker and Colliers International, who is acting as the cooperating broker and Lessee's broker.

### 3.   *Building*

Shall mean the approximately _27,000 square foot building located at 445 Hollywood Avenue in the Borough of South Plainfield, County of Middlesex and State of New Jersey and all land thereon as described in Exhibit A hereto.

### 4.   *Commencement Date*

Shall mean April 15, 2014.

### 5.   Demised Premises or Premises

The entire _approximately 27,000 square foot Building and Building Area let and demised to Lessee herein including all exterior appurtenances such as, sidewalks, curbs, loading dock areas, parking areas, exterior doors, adjacent green areas and the like and depicted on the Site Plan attached hereto as Exhibit B.

Initial *BA*

**1**

### 6. *Exhibits*

The following Exhibits attached to this Lease are incorporated herein and made a part hereof:

Exhibit A:    Legal Description
Exhibit B:    Site Plan
Exhibit C:    Fixed Basic Rent for Renewal Terms

### 7. *Fixed Basic Rent*

Shall mean the rent to be paid during the Initial Term in amounts as follows (and for each Renewal Term, if any, as provided on Exhibit C):

| DATE | ANNUAL RENT | MONTHLY INSTALLMENT |
| --- | --- | --- |
| April 15, 2014-June 30, 2015 (subject to concession described at Para.3# below) | $426,000 *3 E* | $35,500 |
| July 1, 2015 – June 30, 2016 | $444,000 | $37,000 |
| July 1, 2016 – June 30, 2017 | $456,000 | $38,000 |
| July 1, 2017 – June 30, 2018 | $468,000 | $39,000 |
| July 1, 2018 – June 30, 2019 | $480,000 | $40,000 |
| July 1, 2019 – June 30, 2020 | $492,000 | $41,000 |
| July 1, 2020 – June 30, 2021 | $504,000 | $42,000 |

### 8. *Building Area*

Lot 14 Block 390 on the tax map of the Borough of South Plainfield, Middlesex County, New Jersey.

### 9. *Parking Spaces*

Shall mean all available parking spaces at the Demised Premises.

### 10. *Permitted Use*

**2**

initial

Shall be trucking, loading and unloading, freight forwarding, warehousing, and related uses and related office use all permitted as of right and approved by the Borough of South Plainfield upon use permit application, without need for variance, and excluding any environmentally hazardous products (except those used in the ordinary course of Lessee's operations and in material compliance with applicable environmental laws), which use may be on a 24 hour, 7 days a week basis.

### 11.  *Security Deposit*

Shall be Seventy-one Thousand and 00/100 ($71,000.00) Dollars.

### 12.  *Initial Term*

Shall mean seven (7) years two and one-half months from the Commencement Date..

### 13.  *Termination Date*

Shall be June 30, 2021, subject to extension pursuant to the Renewal Terms.

### 14.  *Standard Industrial Classification Number*

Of Lessee is 484122 (General Freight Trucking, Long-Distance, Less Than Truckload).

### 15.  *Lease Year*

The first (1st) Lease Year shall be the period commencing on the Commencement Date and ending on June 30, 2015 and each subsequent Lease Year shall be the twelve (12) month period after the first Lease Year.

### 16.  *Force Majeure*

Shall mean and include those situations beyond Lessor's control, including by way of example and not by way of limitation, acts of God; accidents; repairs; strikes; shortages of labor, supplies or materials; inclement weather; or where applicable, the passage of time while waiting for an adjustment of insurance proceeds.

### 17.  *Affiliated Company*

With respect to Lessee shall mean any corporation or other business entity related to Lessee as a parent, subsidiary or brother-sister entity so that such entity and Lessee or such entity and Lessee and other entities constitute a controlled group as determined under Section 1563 of the Internal Revenue Code of 1986, as amended and as elaborated by the Treasury Regulations promulgated thereunder.

Initial

18. *Renewal Terms*

Shall mean two (2) five (5) year renewal terms.

## W I T N E S S E T H:

For and in consideration of the covenants herein contained, including the terms, covenants, conditions and definitions in the Preamble set forth above and specifically incorporated herein, and upon the terms and conditions herein set forth below, Lessor and Lessee agree as follows:

**1. DESCRIPTION.**

Lessor hereby leases to Lessee and Lessee hereby hires from the Lessor, upon and subject to the covenants, agreements, terms, provisions and conditions of this Lease, the Demised Premises.

**2. TERM.**

The Premises are leased for the Initial Term to commence on the Commencement Date, and to end at 12:00 midnight on the Termination Date, all as defined in the Preamble or on such other date as the Initial Term may expire or be terminated or be extended pursuant to the provisions of this Lease or pursuant to law (the "Term").

Lessee shall have the right, subject to the provisions hereinafter provided, to renew the Term for two (2) periods of five (5) years each (each such 5-year period is sometimes hereinafter referred to as a "Renewal Term"). Each Renewal Term shall be upon the same terms, covenants and conditions as provided in this Lease; provided, however, the annual Fixed Basic Rent for each Renewal Term shall be as set forth on Exhibit C. Lessee shall exercise its right to each Renewal Term provided herein, if at all, by notifying Landlord in writing of its election to exercise the right to renew the Term at least six (6) months prior to the expiration of the Initial Term or the prior Renewal Term, if applicable, time being of the essence with respect to said date. Lessee shall not be permitted to exercise this right and any attempted exercise shall be invalid if an uncured Event of Default exists at the time of attempted exercise.

**3. RENT.**

### (A) Payment

The Lessee shall pay to the Lessor during the Term the Fixed Basic Rent as defined in the Preamble, payable in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts. The Fixed Basic Rent shall be payable in advance on the first day of each calendar month during the Term at the Monthly Installments as defined in the Preamble, except that a proportionately lesser sum may be paid for the first and last months of the Term of this Lease if the Term commences on a day other than the first day of the month, in accordance with the provisions of this Lease herein set forth. Lessee shall pay Fixed Basic Rent, and any Additional Rent as hereinafter provided, to Lessor by ACH bank transfer

Initial

pursuant to instructions to be delivered to Lessee in writing, or at such other place as Lessor may designate in writing, without demand and without counterclaim, deduction or setoff or abatement.

### (B)    Additional Rent

The Lessee shall, and will, during the Term, well and truly pay, or cause to be paid, to the Lessor, the Monthly Installments and all other sums that may become due and payable by the Lessee, hereunder, at the time and in the manner herein provided; and all other sums due and payable by the Lessee hereunder (including without limitation intended charges as set forth in Paragraph 5) may, at the Lessor's option, be deemed to be, and treated as, Additional Rent, and added to any Fixed Basic Rent due and payable by the Lessee hereunder, and, in the event of nonpayment of such other sums, the Lessor shall have all the rights and remedies herein provided for in the case of the nonpayment of Fixed Basic Rent, or of a breach of any covenant to be performed by the Lessee including the collection of Late Charges (defined below), interest, other collection costs incurred by Lessor and legal fees as Additional Rent..

### (C)    Net Lease

Except as otherwise expressly provided in this Lease, the Fixed Basic Rent payable by the Lessee pursuant to this Lease is intended to be net to the Lessor, of all insurance, taxes, utilities and maintenance charges and these and all other charges, impositions, assessments and expenses imposed upon the Demised Premises or incurred in connection with its use, occupancy, care, maintenance, operation and control shall be paid by the Lessee as Additional Rent.

### (D)    Late Charge

Anything in this Lease to the contrary notwithstanding, at Lessor's option, Lessee shall pay as Additional Rent a "Late Charge" of six (6%) percent of any installment of Rent or Additional Rent paid more than five (5) days after the due date thereof, to cover the extra expense involved in handling delinquent payments.

In addition to the Late Charge, payments received more than ten (10) days after the due date shall accrue interest from the due date until paid at the rate of eighteen (18%) per annum and same shall be payable as Additional Rent.

### (E)    Rent Concession

Lessee shall not be obligated to pay the Monthly Installment of Fixed Basic Rent for the first two months of the Initial Term, currently anticipated to be from April 15 through June 14, 2014.  Lessee shall at all times be obligated to pay any Additional Rent during the months in which a rent concession has been granted.

_____initial_____

### 4.   REAL ESTATE TAXES.

Lessee shall pay in the manner set forth in the following subparagraph, as Additional Rent, all real estate taxes assessed against the Demised Premises during the Term.  As used herein real estate taxes shall mean the property taxes and assessments (including, but not limited to, all assessments, including special assessments, for public improvements or benefit and water and sewer rents) imposed upon the Building and Building Area, or upon the Fixed Basic Rent and Additional Rent, as such, payable to Lessor, including, but not limited to, real estate, city, county, village, school, and transit taxes, or taxes, assessments, or charges levied, imposed, or assessed against the Building and Building Area by any other taxing authority, whether general or specific, ordinary or extraordinary, foreseen or unforeseen.  If due to a future change in the method of taxation, any franchise, income or profit tax shall be levied against Lessor in substitution for, or in lieu of, any tax which would otherwise constitute a real estate tax, such franchise, income or profit tax shall be deemed to be a real estate tax for the purpose hereof; conversely, any additional real estate tax hereafter imposed in substitution for, or in lieu of, any franchise, income or profit tax (which is not in substitution for, or in lieu of, or in addition to, a real estate tax as hereinbefore provided) shall not be deemed a real estate tax for the purposes hereof.  In the event Lessor shall file a tax appeal which is ultimately successful, Lessee shall be obligated to reimburse Lessor for all reasonable attorneys' fees and costs incurred in the appeal provided such costs do not exceed the savings received by Lessee as a result of such appeal.

       Lessor shall deliver copies of the tax bills to Lessee via e-mail and Lessee shall pay each quarter the amount due to Lessor by ACH wire transfer in the same manner as the payment of Fixed Basic Rent no later than thirty days prior to the due date for payment without incurring additional interest, or within 10 days of receipt of the invoice from Lessor, whichever is later.

       Lessee shall not have the right to institute a tax appeal on the Demised Premises without first obtaining Lessor's consent, which consent shall not be unreasonably withheld, conditioned or delayed.

### 5.   NO SERVICES TO BE PROVIDED BY LESSOR/WATER AND SEWER CHARGES.

Nothing in this Lease shall impose upon the Lessor any obligation to provide any services for the benefit of the Lessee, including, but not limited to, water, gas, electricity, heat, janitorial, landscaping or snow removal and Lessee agrees that it shall be Lessee's responsibility to contract for and pay for all of such services without exception.  Lessor may elect to pay municipal water and/or sewer charges directly by delivering to Lessee a copy of an associated bill from the municipality prior to the date upon which a payment is due, whereupon Lessee shall pay directly to Lessor as Additional Rent via ACH wire transfer, in accordance with Section 3(A) above, any amounts set forth thereon within ten (10) days and prior to the date due for payment without imposition of interest or other penalties.

### 6.   USE OF PREMISES.

#### *(A)     Permitted Use Only*

initial

The Premises shall be used and occupied only for the Permitted Use described in the Preamble to this Lease and for no other use or purpose without the Lessor's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Lessee shall not use or permit the use of the Premises or any part thereof in any way which would violate any certificate of occupancy for the Building or Premises, or any of the covenants, agreements, terms, provisions and conditions of this Lease or for any unlawful purposes or in any unlawful manner.

## (B)    Governmental Requirements

If any governmental license or permit (other than the certificate of occupancy required to be obtained by Lessor with Lessee's cooperation and at Lessee's cost and expense) shall be required for the proper and lawful conduct of Lessee's business or other activity carried on in the Premises by Lessee and if the failure to secure such license or permit would, in any way, affect Lessor, Lessee, at Lessee's expense, shall duly procure and thereafter maintain such license or permit and submit the same to inspection by Lessor, and Lessee, at Lessee's expense, shall, at all times, comply with the terms and conditions of each such license or permit.

## 7.    CARE AND REPAIR OF PREMISES/ENVIRONMENTAL.

## (A)    Repair Obligations

The Lessee shall keep the Demised Premises and all fixtures and appurtenances thereto in good condition and repair.  The Lessee shall keep the Demised Premises and all parts thereof in a clean and sanitary condition and free from trash, inflammable material and other objectionable matter.  The Lessee shall keep the sidewalks, roadways and the parking lot, clean and free of obstructions, snow, and ice.  With regard to snow and ice removal, Lessee shall use only calcium chloride and no rock salt shall be uses.  Any violation of the restriction of the previous sentence shall require Lessee to repave the parking area at its sole cost and expense.  Except as hereinafter in this Lease set forth, throughout the Term, the Lessee, at its sole cost and expense, will take good care of the Demised Premises interior and exterior including all walls and the sidewalks and parking lot and curbs adjoining the entire Demised Premises and will keep the same in good order and condition and make all necessary repairs thereto, interior and exterior, ordinary and extraordinary, foreseen and unforeseen.  When used in this Paragraph 7 the term "repairs" shall include all necessary replacement parts and renewals necessary to maintain the existing systems and equipment in good operating order.  All repairs made by Lessee shall be equal in quality and class to the original work.  The Lessee shall quit and surrender the Demised Premises at the end of the Term in as good condition as the reasonable use thereof will permit and in a "broom clean" condition, reasonable wear and tear, casualty (which is the obligation of Lessor to repair) and condemnation excepted. Notwithstanding anything in the foregoing to the contrary, Lessor shall complete and pay for all repairs and replacements to the roof, the exterior walls, the foundations.  Subject to Lessee's obligation to properly repair and maintain all of the systems and equipment, and to use same in a customary and reasonable manner, Lessor agrees to pay for any required replacement of the HVAC, electrical, water, sewer and other mechanical systems provided such replacements are not necessitated by Lessee's use, failure to maintain or negligent or intentional conduct.

_____initial_____

### *(B)     Glass Replacement*

The Lessee shall replace, at the Lessee's expense, all glass in and on the Demised Premises which may become broken after the date of Lessee's occupancy.  In case of destruction of or any damage to the glass in the Demised Premises, or the destruction of or damage of any kind whatsoever to the said Premises, caused by the carelessness, negligence or improper conduct on the part of the Lessee or the Lessee's agents, employees, guests, licensees, invitees, subtenants, assignees or successors, subject to Paragraph 15, the Lessee shall repair the said damage or replace or restore any destroyed parts of the premises, as speedily as possible, at the Lessee's own cost and expense.

### *(C)     Alterations*

The Lessee shall not make any alterations, additions, installations, or improvements to the interior or exterior of the Demised Premises without the prior written consent of the Lessor, which consent shall not be unreasonably withheld, conditioned or delayed.  As to any alterations with an estimated cost of in excess of $50,000 or any structural alterations (each a "Major Alteration"), Lessor shall not be deemed unreasonable for requiring additional cash security to bond the reasonably estimated future removal and restoration costs to be required by any such alterations.  Notwithstanding any provision to the contrary in this Lease, Lessee shall have the right to make non-structural alterations to the Premises without Lessor's consent so long as the cost of such alterations do not exceed $50,000 in any twelve (12) month period.  All erections, alterations, additions, and improvements, whether temporary or permanent in character, which may be made upon or to the Demised Premises either by the Lessor or the Lessee, except furniture or movable trade fixtures installed at the expense of the Lessee, shall be the property of the Lessor and shall remain upon and be surrendered with the Demised Premises as a part thereof at the Termination Date, without compensation to the Lessee and without hindrance, molestation or injury.  Notwithstanding the foregoing, Lessor shall have the right to require Lessee to remove such installations at Lessee's sole cost and expense at the expiration of the Term and restore the Premises to its original condition as of the Commencement Date at the Lessee's sole cost and expense unless otherwise agreed at the time of such installation.  All other property of Lessee remaining on the Premises after the last day of the Term shall be conclusively deemed abandoned and may be removed by Lessor, and Lessee shall reimburse Lessor for the cost of such removal.  Lessor may have any such property stored at Lessee's risk and expense.

### *(D)     Restoration Upon Removal*

Upon the expiration or sooner termination of this Lease, except as otherwise provided in this Lease, Lessee agrees that it shall restore the Premises to substantially the same condition as of the Commencement Date of this Lease, reasonable wear and tear, casualty (which is the obligation of Lessor to repair) and condemnation excepted and failure to do so timely shall result in Lessee being declared a holdover tenant and subject to damages for wrongful holding over.  . In addition to being liable as a holdover tenant,  Lessee shall be responsible for all consequential damages to Lessor as a result of Lessee's failure to timely surrender the Premises in accordance with this Lease and this clause shall survive the termination of the Lease.  As used herein, "rentable" shall include completion of Lessee's obligations with respect to Environmental Compliance as more fully set forth in Paragraph 7 (E) below.  All other property of Lessee remaining on the Premises after the

_____initial_____

last day of the Term shall be conclusively deemed abandoned and may be removed by Lessor, and Lessee shall reimburse Lessor for the cost of such removal.  Lessor may have any such property stored at Lessee's risk and expense..

## (E)    Environmental Compliance

(a)   Lessee shall, at Lessee's sole cost and expense, without notice or demand from Lessor, comply in all material respects with all the requirements of all county, municipal, state, federal and other applicable governmental authorities, now in force, or which may hereafter be in force, pertaining to Lessee's occupancy of the Demised Premises and shall comply in all materials respect in the use of the Demised Premises with all governmental requirements now in force or which may hereafter be in force.  For the purpose of this Article, the term "Demised Premises" shall be deemed to include the land upon which the building containing the space leased to Lessee hereunder is located.

(b) Lessee's operations at the Demised Premises shall be outside of those defined as an Industrial Establishment as defined in ISRA.

(c) Lessee represents and warrants to Lessor that Lessee intends to use the Demised Premises for which operations have the following North American Industry Classification System ("NAICS") numbers as defined by the 2002 edition of the NAICS Manual published by the Federal Executive Office of the President, Office of Management and Budget: 484 - Truck Transportation.  Lessee shall not use the Demised Premises or any part thereof for any activities or business having an  NAICS number that would, if Hazardous Substances or Materials as defined by NJAC7:1E were present, subject the premises to definition as an "Industrial Establishment" under ISRA.  Lessee's use of the Demised Premises shall be restricted to the classification set forth above unless Lessee obtains Lessor's prior written consent to any change in the use of the demised premises. Following commencement of the lease term, Lessee shall notify Lessor by way of a supplemental Officer's Affidavit as to any changes in Lessee's operation or NAICS numbers.  Lessee shall not commence or alter any operation at the Demised Premises prior to:  (i) obtaining all required operating and discharge permits or approvals, including but not limited to air pollution control permits and water pollution discharge elimination system permits from NJDEP, from all governmental or public authorities having jurisdiction over Lessee's operations or the demised premises, and (ii) providing a copy of the permits or approvals to Lessor.

(d) If as a result of a change in use by Lessee or a modification of ISRA, Lessee's operations at the Demised Premises falls within the definition of an Industrial Establishment as defined in ISRA, Lessee shall, at Lessee's sole cost and expense:

(i) without notice or demand from Lessor, comply with the Industrial Site Recovery Act, N.J.S.A. 13:1K-6 et seq., the regulations promulgated thereunder and any amending and successor legislation and regulations ("ISRA") and make all submissions to, provide all information to, and comply with all requirements to the Industrial Site Evaluation Element or its successor ("Element") of the New Jersey Department of Environmental Protection or its successor ("NJDEP");

(ii)  provided this Lease is not previously canceled or terminated by either party or by operation of law, Lessee shall commence its submission to the Element (or retain the services of a Licensed Site Remediation Professional or

"LSRP") in anticipation of the end of the lease term, no later than one year prior to the expiration of the lease term;

(ii)   should the LSRP, Element or any other division of NJDEP or other governmental authority determine that a remedial action or workplan be prepared and that remediation be undertaken because fill materials, or hazardous or toxic substances, pollutants or wastes exist, or have been spilled, discharged or placed in, on, under or about the demised premises during the lease term, Lessee shall, promptly prepare and submit a remedial action workplan and establish a remediation funding source, which plan and funding source shall be reasonably satisfactory to Lessor, and shall promptly implement the approved remedial action workplan to the reasonable satisfaction of Lessor and in no event shall Lessee's remedial action involve engineering or institutional controls, including without limitation capping, deed notice, declaration of restriction or other institutional control notice, pursuant to P.L. 1993, c.139, and notwithstanding NJDEP's requirements, Lessee's remedial action shall meet the most stringent NJDEP remediation standards for soil, surface water and groundwater and promptly upon completion of all required investigatory and remedial activities, Lessee shall restore the affected areas of the Premises, including without limitation closing, pursuant to law, any wells installed at the Premises or Demised Premises; and

(iv) Lessee shall promptly provide all information reasonably requested by Lessor or NJDEP for preparation of an remedial action outcome ("RAO"), non-applicability affidavit, de minimus quantity exemption application, limited conveyance application or other submission and shall promptly sign such affidavits and submissions when reasonably requested by Lessor or NJDEP.

(e)   For purposes of this Article, the term "Environmental Documents" shall mean all environmental documentation concerning contamination at or hazardous substance releases at or migrating from the Demised Premises, in the possession or under the control of the Lessee, including without limitation all sampling plans, cleanup plans, preliminary assessment plans and reports, site investigation plans and reports, remedial investigation equivalent, sampling results, sampling result reports, data, diagrams, charts, maps, analyses, conclusions, quality assurance/quality control documentation, correspondence to or from the NJDEP or any other municipal, county, state or federal governmental authority, submissions to the NJDEP or any other directives, orders, approvals and disapprovals issued by the Element or any other municipal, county, state, or federal governmental authority related to the foregoing. During the term of this lease and subsequently promptly upon receipt by Lessee or Lessee's representatives, Lessee shall deliver to Lessor all Environmental Documents concerning or generated by or on behalf of Lessee, whether currently or hereafter existing.

(f)   Lessee shall notify Lessor and Lessor shall notify Lessee in advance of all meetings scheduled between Lessee or Lessee's representatives (or Lessor or Lessor's representatives) and NJDEP or any other environmental authority concerning contamination or hazardous substance releases at the Demised Premises, and Lessor and Lessor's representatives (and Lessee and Lessee's representatives) shall have the right, without the obligation, to attend and participate in all such meetings.

(g)   Lessor reserves the right from time to time during the term and any renewal term hereof, but not more than once a year except in the event of an environmental emergency, to have the Demised Premises inspected by environmental engineers and/or specialists, consultants and legal counsel, at Lessor's cost and expense, for the purposes of environmental inspection and sampling to determine compliance by

initial

Lessee with any environmental laws, rules and regulations applicable to Lessee's operations in or about the Demised Premises and with the terms and conditions of this Lease dealing with environmental matters, including without limitation, the provisions of this Article.  Lessee shall have the right to establish reasonably conditions to any such access by Lessor or environmental engineers and/or specialists, consultants or legal counsel retained by Lessor, including without limitation, contacting Lessee's manager of environmental services to arrange for such access.  The inspection shall be conducted during regular business hours or during other hours either by agreement of the parties or in the event of any environmental emergency.  If the environmental assessment or report resulting from such inspection discloses any material non-compliance resulting from Lessee's operations at or use of the Demised Premises, Lessee shall promptly following receipt of the environmental assessment take all such steps as are required by applicable environmental laws to put the Demised Premises into compliance, including without limitation, cleaning up any spills or other emissions of hazardous and/or toxic substances or wastes.

(h)  During the term of this Lease, Lessee shall not permit any hazardous substances or hazardous wastes defined under ISRA on the Demised Premises (except as used in the ordinary course of Lessee's operations permitted under the Lease and in material compliance with applicable environmental laws).

(i)  Lessee agrees that it will register with the State of New Jersey, to the extent such registration is required by law and within the time periods set forth in the statutes, any underground storage tanks which Lessee installs on the Demised Premises.  Lessor shall indemnify, defend and hold harmless Lessee from and against all claims, liabilities, losses, damages, penalties and costs with regard to underground storage tanks at the Demised Premises not installed by Lessee during the lease term.

(j)  In the event that there shall be filed a lien against the Demised Premises by the NJDEP, pursuant to and in accordance with the provisions of N.J.S.A.58:10-23.11f, as a result of  the Chief Executive of the New Jersey Spill Compensation Fund having expended moneys from said fund to pay for "Cleanup and Removal Costs", as such term is defined in N.J.S.A.58:10-23.11b, resulting from an intentional or unintentional action or omission of the Lessee, resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of "Hazardous Substances", as such term is defined in N.J.S.A. 58:10-23.11b into waters of the State of New Jersey or onto the lands from which it might flow or drain into said waters, then Lessee shall, within thirty (30) days from the date that the Premises or within such shorter period of time in the event that the State of New Jersey has commenced steps to cause the Demised Premises to be sold pursuant to the lien either, at Lessor's option, (i) pay the claim and remove the lien from the demised premises, or (ii) furnish a cash deposit with the Lessor in the amount of the claim out of which the lien arises, or (iii) provide other security reasonably satisfactory to Lessor in an amount sufficient to discharge the claim out of which the lien arises.

(k)  Should the Lessee cause or permit any intentional or unintentional action or omission which results in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of "Hazardous Substances," as such term is defined in N.J.S.A. 58:10-23.11b from the Demised Premises into waters or onto lands of the State or in to waters outside the jurisdiction of the State resulting in damage to the lands, waters, fish, shellfish, wildlife, biota, air or other resources owned managed or held in trust or otherwise controlled by the State, without having a permit issued by the appropriate governmental authorities, the Lessee shall promptly clean up the same to the

Initial

extent required by and in accordance with the applicable provisions of the New Jersey Spill Compensation and Control Act.

(l)  Lessee hereby agrees to defend, indemnify and to save Lessor harmless from and against all losses, damage, liability and expense (including attorney's fees and expenses) which the Lessor may sustain as a result of or on account of any lien imposed on the Premises pursuant to N.J.S.A. 58:10-23.11, et seq., the Spill Compensation and Control Act or any amendments thereto as a result of Lessee's operations at or use of the Demised Premises or Lessee's breach of any of the covenants contained in this Article. Lessor hereby agrees to defend, indemnify and to save Lessee harmless from and against all losses, damage, liability and expense (including attorney's fees and expenses) which the Lessee may sustain as a result of or on account of any contamination or Hazardous Substances at or migrating from the Premises and (i) first existing on or prior to the Commencement Date or (ii) not resulting from Lessee's operations at or use of the Demised Premises during the Term.

(m) This Article shall survive the expiration or earlier termination of this Lease.

### 8.   RIGHT TO INSPECT AND REPAIR.

Lessor may enter the Premises but shall not be obligated to do so (except as may be required by any specific provision of this Lease) at reasonable times during normal business hours on not less than five (5) business days' notice to Lessee (except that no notice need be given in case of emergency) for the purpose of inspection or the making of such repairs, replacement, or additions, in, to, on or about the Premises or the Building, required or permitted to be made by Lessor pursuant to the terms of this Lease and, except as to losses or damages resulting from Lessor's gross negligence or willful misconduct, Lessee shall have no claims or cause of action against Lessor by reason thereof.  In no event shall Lessee have any claim against Lessor for interruption to Lessee's business, however occurring, including, but not limited to, that arising from the negligence of Lessor, its agents, servants, or invitees, or from defects, errors or omissions in the construction or design of the Demised Premises and/or the Building, including the structural and non-structural portions thereof, except to the extent arising from Lessor's gross negligence or willful misconduct.

### 9.   FLOOR LOAD.

Lessee shall not place a load upon any floor of the Demised Premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Such installments shall be placed and maintained by Lessee, at Lessee's expense, in settings sufficient, in Lessor's reasonable judgment, to absorb and prevent vibration, noise and annoyance.

### 10.   ABANDONMENT.

Lessee shall not, without first obtaining the written consent of Lessor, which consent may be arbitrarily withheld, abandon the Premises.

### 11.   INSOLVENCY OF LESSEE.

initial

Either (a) the appointment of a receiver to take possession of all or substantially all of the assets of Lessee, or (b) a general assignment by Lessee for the benefit of creditors, or (c) any action taken or suffered by Lessee, voluntarily or involuntarily (and not dismissed within 90 days of such involuntary action provided Lessee is continuing the timely payment of Rent and Additional Rent during the 90 day period), under any insolvency, reorganization or bankruptcy law or act, shall constitute a default under this Lease by Lessee, and Lessor may terminate this Lease forthwith and upon notice of such termination Lessee's right to possession of the Demised Premises shall cease, and Lessee shall then quit and surrender the Premises to Lessor but Lessee shall remain liable as hereinafter provided in Paragraph 13 hereof.

### 12.   DEFAULT OF LESSEE.

Any of the following events shall be an "Event of Default" of Lessee:   (a)   Lessee's default in the payment on the due date of the Basic Rents and/or additional rents and/or any other payment required of Lessee by this Lease which Lessee fails to cure within five (5) days after written notice of such default by Lessee hereunder; provided, however, Lessee's second failure to pay Basic Rent and Additional Rent in any consecutive 4 month period shall be an immediate Event of Default (without a 5 day cure period): (b) Lessee's default in the performance of any of the other covenants of Lessee or conditions of this Lease which Lessee fails to cure within thirty (30) days after written notice of such default given by Lessor (or if any such default is of such nature that it cannot be completely cured within such period, then such default shall not constitute an Event of Default so long as Lessee shall commence such cure within thirty (30) days after written notice of such default given by Lessor and shall thereafter proceed with reasonable due diligence and in good faith to cure such default and shall succeed in curing such default within a reasonable period of time, and provided that the existence of such default for more than thirty (30) days does not, in Lessor's reasonable judgment, itself result in substantial damages to Lessor and place Lessor in risk of substantial damage by such additional time to cure such default); (c) insolvency of Lessee as set forth in Paragraph 11 of this Lease; (d) assignment by operation of law of Lessee's leasehold interest hereunder; (e) any attempt by Lessee to assign the within Lease or sublet the Demised Premises without the express prior written consent of the Lessor; or(f) any attempt by Lessee to assign the within Lease or sublet the Demised Premises in violation of the terms of this Lease.

### 13.   LESSOR'S REMEDIES ON DEFAULT OF LESSEE.

Upon the occurrence and during the continuance of an Event of Default of Lessee, Lessor, at Lessor's sole option, may elect and enforce any one of the remedies hereinafter provided in this Paragraph 13; provided, however, that Lessor may, at Lessor's sole option, elect and enforce multiple remedies from among those remedies hereinafter provided to the extent such remedies are not inconsistent and are not legally mutually exclusive and to the extent Lessor, in Lessor's reasonable judgment, deem the enforcement of such multiple remedies necessary or appropriate to indemnify and make Lessor whole from any loss or damage as a result of the Event of Default of Lessee; and provided further that Lessor, at Lessor's sole discretion, may successively elect and enforce any number of the remedies hereinafter provided to the extent that Lessor, in Lessor's reasonable judgment, deems necessary or appropriate to indemnify and make Lessor whole from any loss or damage as a result of the Event of Default of Lessee:

### *(A)   Termination and Lessee's Liabilities*

13

_____initial_____

Lessor shall have the right to terminate this Lease forthwith, and upon notice of such termination given by Lessor to Lessee in accordance with the notice provisions of this Lease, Lessee's right to possession, use and enjoyment of the Demised Premises shall cease, and Lessee shall immediately quit and surrender the Demised Premises to Lessor, but Lessee shall remain liable to Lessor as hereinafter provided. Upon such termination of this Lease, Lessor may at any time thereafter re-enter and resume possession of the Premises by any lawful means and remove Lessee and/or other occupants and their goods and chattels. In any case where Lessor has recovered possession of the Premises by reason of Lessee's default, Lessor may, at Lessor's option, occupy the Premises or cause the Premises to be redecorated, altered, divided, consolidated with other adjoining premises, or otherwise changed or prepared for reletting, and may relet the Premises or any part thereof as agent of Lessee or otherwise, for a term or terms to expire prior to, at the same time as, or subsequent to, the original expiration date of this Lease, at Lessor's sole option, and Lessor shall receive the rent therefor. Rent so received shall be applied first to the payment of such expenses as Lessor may have incurred in connection with the recovery of possession, redecorating, altering, dividing, consolidating with other adjoining premises, or otherwise changing or preparing for reletting, and the reletting, including brokerage and reasonable attorney's fees, and then to the payment of damages in amounts equal to the rent (basic and additional) and other payments required of Lessee hereunder and to the costs and expenses of performance of the other covenants of Lessee as herein provided. Lessee agrees, in any such case, whether or not Lessor has relet, to pay to Lessor damage equal to the basic and additional rent and other sums herein agreed to be paid by Lessee, less the net proceeds of the reletting, if any, as ascertained from time to time, and the same shall be payable by Lessee on the several rent days above specified. Lessee shall not be entitled to any surplus accruing as a result of any such reletting. In reletting the Premises as aforesaid, Lessor may grant rent concessions, and Lessee shall not be credited therewith. No such reletting shall constitute a surrender and acceptance or be deemed evidenced thereof. If Lessor elects, pursuant hereto, actually to occupy and use the Premises or any part thereof during any part of the balance of the term as originally fixed or since extended, there shall be allowed against Lessee's obligation for rent, other payments and damages as herein defined, during the period of Lessor's occupancy, the reasonable value of such occupancy, equal to in any event the basic and additional rent herein reserved. In no event shall such occupancy by Lessor be construed as a release of Lessee's liability hereunder.

### (B)   Acceleration of the Rents

Lessor shall have the right to declare the entire remaining unpaid Basic Rents and all other then known additional rents and other payments required of Lessee by this Lease for the full balance of the Lease term to be immediately due and payable. Such declaration of acceleration shall be made by notice given by Lessor to Lessee in accordance with the notice provisions of this Lease. Upon notice of declaration of acceleration Lessee shall immediately pay to Lessor, without further demand or notice, an amount equal to the sum of the entire remaining unpaid Basic Rents provided in Paragraph 3 of this Lease for the entire Lease term, plus the entire remaining balance of all unpaid Additional Rents provided in this Lease of the entire Lease term to the extent the amount of such Additional Rents are then known, plus all unpaid other payments required of Lessee by this Lease for the entire Lease term to the extent the amount of such other payments are then known, which amount shall be discounted by four (4) percent. Upon timely payment of all the sums hereinabove provided in this Subparagraph 13(B), Lessee shall have the right to continue to possess, occupy and enjoy the Demised Premises for the remaining balance of the Lease term, subject to observance by Lessee of all the covenants,

14 _____initial

conditions and other provisions of this Lease and provided that Lessee has not abandoned the Premises and provided that Lessee shall pay when due all Additional Rents as provided in this Lease and all other payments required of Lessee by this Lease, the amount of which Additional Rents and other payments were not paid upon the declaration of this Subparagraph 13(B).   Lessor shall have the right to immediately enforce declaration of acceleration as hereinabove provided by means of distress or any legal action.   The foregoing notwithstanding, Lessor shall have the right to declare an acceleration and collect upon same and, in addition, to dispossess Lessee and re-enter and take possession of the Premises if Lessee has abandoned the Premises or if Lessor is dispossessing and evicting Lessee for the purpose of ultimately reducing Lessee's liabilities under this Lease.  In the event Lessor shall declare an acceleration as provided in this Subparagraph 13(B) and the amounts due hereunder shall not be paid forthwith, then Lessor, at Lessor's sole option, may exercise Lessor's right to terminate this Lease as provided in Subparagraph 13(A) hereof, in which event Lessor shall be entitled to the full benefits of, and full enforcement of, Subparagraph 13(A) hereof.

### (C)    Specific Performance of Lease

Lessor shall have the right to enforce Lessee's specific performance of each and every covenant, condition and other provision of this Lease.

### (D)    Waiver of Right of Redemption

Lessee hereby waives all right of redemption to which Lessee or any person under the Lessee might be entitled by any law now or hereafter in force.

### (E)    Other Remedies

Lessor's remedies hereunder are in addition to any remedy allowed by law or in equity.

### (F)    Non-Exclusivity

The remedies set forth above shall be non-exclusive and the Lessor's election to enforce any remedy shall not be deemed a waiver of any other remedy Lessor may be entitled to hereunder or as allowed by law or in equity.

### 14.   ATTORNEY'S FEES.

In the event Lessor shall employ an attorney to review documents at the request of Lessee for Lessee's benefit such as a lien waiver, to enforce any of the conditions of this Lease, or to enforce Lessee's covenants hereunder, or any of Lessor's rights, remedies, privileges or options under this Lease, or at law or in equity, the Lessor shall be entitled to reimbursement from Lessee of all reasonable costs and expenses incurred or paid by Lessor in so doing, including, but not by way of limitation, all reasonable attorney's fees and costs incurred or paid by Lessor at any time or times in connection therewith, or by arbitration, or by legal action at the trial court level and at any and all appellate court

initial

levels and all such legal fees shall be deemed Additional Rent and payable as such hereunder.

### 15.  DAMAGES TO BUILDING.

If the Building is damaged by fire or any other cause to such extent that the cost of restoration, as reasonably estimated by Lessor, will equal or exceed twenty-five (25%) percent of the replacement value of the Building (exclusive of foundations) just prior to the occurrence of the damage, then Lessor or Lessee may, no later than the sixtieth (60th) day following the damage, give the other a notice of election to terminate this Lease; In such event of election, this Lease shall be deemed to terminate on the thirtieth (30th) day after the giving of said notice, and Lessee shall surrender possession of the Premises within a reasonable time thereafter, and the Fixed Basic Rent, and any Additional Rent, shall be apportioned as of the date of said surrender and any Fixed Basic Rent or Additional Rent paid for any period beyond said date shall be repaid to Lessee.  If the cost of restoration as estimated by Lessor shall amount to less than twenty-five (25%) percent of said replacement value of the Building, or if, despite the cost, neither Lessor or Lessee elects to terminate this Lease, Lessor shall, subject to the availability and adequacy of the insurance to be provided by Lessee restore the Building and the Premises with reasonable promptness, subject to Force Majeure (as hereinafter defined) and except as stated above, and Lessee shall have no right to terminate this Lease; provided, however, if Lessee did not have a right to terminate this Lease pursuant to this Paragraph 15 as a result of such damage to the Building, if the Building is not restored within 180 days of such damage, Lessee shall have a right to terminate this Lease.  Lessee understands that Lessor will not carry insurance of any kind on Lessee's furniture, fixtures, equipment or improvements and Lessor shall not restore said fixtures and improvements owned by Lessee, including any alterations made pursuant to Paragraph 7 or elsewhere unless Lessor shall have received full reimbursement for replacement of the Building plus, an amount in excess thereof to cover the cost of repair or replacement of Lessee's installations.  This language shall apply notwithstanding Lessor's ownership of Lessee's installation by reason of the language in Paragraph 7.

If this Lease is not terminated pursuant to this Paragraph 15, the Fixed Basic Rent and Additional Rent payable under this Lease shall not abate, by reason of any damage, partial or complete, to any building or other structure on the Demised Premises or to the Demised Premises or any part thereof, except that Lessee shall be relieved from the payment of rent to the extent of any insurance proceeds paid to Lessor under a rent insurance policy..  The words "restoration" and "restore" as used in this Paragraph 15 shall include repairs.  If the damage results from the gross negligence or willful misconduct of the Lessee, or Lessee's agents, servants, visitors, or licensees, Lessee shall not be entitled to any abatement or reduction in Fixed Basic Rent or Additional Rent.

If the damage or destruction shall have been due to fire or any other casualty covered by the aforementioned insurance policies, then the Lessor shall be entitled to receive all net proceeds of insurance collected on account of such damage or destruction to be applied in accordance with the terms of this Lease.  Lessee shall cooperate with Lessor in collection of any insurance monies from insurance companies and, as to any such policies maintained by Lessee, pay any deductible under such policies to Lessor to be applied in accordance the insurance proceeds regardless of whether the casualty results in a termination of the Lease.

_____initial

## 16.   SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT.

This Lease shall at Lessor's option, be subject and subordinate to any mortgage which may hereafter affect the real property of which the Premises form a part, and also to all renewals, modifications, consolidations, and replacements of said mortgage and Lessee agrees to execute upon request a certification or estoppel confirming such subordination, provided Lessor shall have used best efforts to obtain the written agreement from the holder of any such mortgage acknowledging and agreeing not to disturb Lessee's possession of the Premises under this Lease and to execute and deliver such further instruments confirming such agreement not to disturb Lessee's possession under this Lease in form reasonably acceptable to such mortgage holder.  If any mortgage superior to this Lease is foreclosed upon or otherwise sold, Lessee shall, on timely request, attorn to the owner of the reversion.

## 17.   SECURITY DEPOSIT.

Lessee shall deposit with Lessor on the signing of this Lease the Security Deposit as defined in the Preamble for the full and faithful performance of Lessee's obligations under this Lease, including, without limitation, the surrender of possession of the Premises to Lessor as herein provided.  If Lessor applies any part of said Security Deposit to cure any default of Lessee, Lessee shall on demand deposit with Lessor the amount so applied so that Lessor shall have the full Security Deposit on hand at all times during the Term of this Lease.  Lessor, in the event that the Demised Premises are sold, shall transfer and deliver the Security Deposit, as such, to the purchaser of the Demised Premises and shall notify Lessee thereof, and thereupon Lessor shall be discharged from any further liability in reference thereto.  The Security Deposit (less any portions thereof used, applied or retained by Lessor in accordance with the provisions of this Paragraph 17), shall be returned to Lessee without interest within 30 days after the expiration or earlier termination of this Lease provided Lessee has cured any outstanding defaults and after delivery of the entire Premises to Lessor in accordance with the provisions of this Lease including ISRA compliance.  Lessee covenants that it will not assign or encumber or attempt to assign or encumber the Security Deposit and Lessor shall not be bound by any such assignment, encumbrance or attempt thereof.

## 18.   RIGHT TO CURE LESSEE'S BREACH.

If Lessee breaches any covenant or condition of this Lease, Lessor may, without thereby waiving such default, on reasonable notice to Lessee (except that no notice need be given in case of emergency), cure such breach at the expense of Lessee and the reasonable amount of all expenses, including reasonable attorney's fees, incurred by Lessor in so doing (whether paid by Lessor or not) shall be deemed Additional Rent payable on demand.

## 19.   MECHANIC'S LIENS.

The Lessee covenants not to suffer or permit any mechanic's or materialmen's or other liens to be filed against Lessor's fee or leasehold interest in the Building, Building Area or Demised Premises by reason of work, labor, services or materials supplied or claimed to have been supplied to the Lessee or any contractor, subcontractor or any other party or person acting at the request of the Lessee or anyone holding the Demised Premises or any part thereof or under the Lessee, unless the Lessee shall, within thirty(30) days after

_____initial

receiving notice of the filing thereof, cause the same to be discharged of record by payment, deposit, bond or Order of a Court of competent jurisdiction or otherwise. Nothing in this Lease contained shall be deemed or construed in any way as constituting consent by Lessor to the making of any alterations or additions by Lessee for the purposes of N.J.S.A. 2A:44-68, et seq., or any amendment thereof, or constituting a request by Lessor, express or implied, to any contract, subcontract, labor or materialmen for the performance of any labor or the furnishing of any materials for the use or benefit of the Lessor.

### 20.   ASSIGNMENT AND SUBLEASE.

Lessee may sublease the Premises without Lessor's consent, provided no subletting shall in any manner release Lessee from its obligations hereunder and provided that a the time of such subletting there is no uncured Event of Default on the part of Lessee.  Lessee may assign the within Lease to any party subject to the following:

### (A)      Financial Information/Recapture

In the event that the Lessee desires to assign the within Lease to any other party, the terms and conditions of such assignment, together with the name and address of the proposed assignee; the nature and character of the business of the proposed assignee; and any other information requested by Lessor reasonably calculated to enable Lessor to determine the proposed assignee's financial responsibility, shall be communicated to Lessor in writing no later than ten (10) days prior to the effective date of any such assignment, and, prior to such effective date, Lessor shall have the option, exercisable in writing to Lessee, within five (5) days of Lessee's notice to consent to such assignment or recapture the Premises.

Upon receipt by Lessee of said notification of intent to recapture, Lessee shall then remove itself and all of its personal property from the Demised Premises pursuant to all the terms, conditions and provisions of this Lease and in accordance with Paragraph 7 of this Lease pertaining to Lessee's removal and restoration of the Demised Premises.

In the event the Lessor shall recapture the Demised Premises pursuant to this Paragraph as above stated, the Lessee's obligation to pay Fixed Basic Rent, Additional Rent and all other payments due hereunder shall continue until Lessee has completed its removal and restoration of the Demised Premises pursuant thereto.  Lessee shall be required to pay the full monthly rental for every month or any portion thereof in which it remains in occupancy hereunder up to and until it has completed its removal from the Demised Premises in accordance with all of the terms of this Lease and Lessor has retaken possession thereof.  After Lessee's removal from the Demised Premises and restoration of same, and Lessor has retaken possession thereof, this Lease Agreement shall terminate, cease and come to an end.

### (B)      Lessor's Approval

In the event that the Lessor elects not to recapture the Lease as hereinabove provided, the Lessee may nevertheless assign this Lease, subject to the Lessor's prior written consent which consent shall not be unreasonably withheld;

**18**

initial

provided, however, that Lessor shall not be deemed unreasonable if, in the reasonable judgment of Lessor, the business of such proposed assignee is not compatible with the type of occupancy of the Building, and on the basis of the following terms and conditions:

(1)     The terms and conditions of the assignment shall not be materially altered from those terms and conditions previously communicated to Lessor.

(2)     The assignee shall assume, by written instrument satisfactory to Lessor, all of the obligations of this Lease, and a copy of such assumption agreement shall be furnished to the Lessor within ten (10) days of its execution.

(3)     The Lessee and each assignee shall be and remain liable for the observance of all the covenants and provisions of this Lease, including, but not limited to, the payment of Fixed Basic Rent and Additional Rent reserved herein, throughout the Term, as the same may be renewed, extended or otherwise modified.

(4)     The Lessee and any assignee shall promptly pay to Lessor any consideration received for any assignment or all of the Fixed Basic Rent and Additional Rent received by Lessee in excess of the Fixed Basic Rent and Additional Rent required to be paid by Lessee for the area assigned, computed on the basis of an average square foot rent for the gross square footage Lessee has leased.

(5)     In any event, the acceptance by the Lessor of any Fixed Basic Rent or Additional Rent from the assignee, or the failure of the Lessor to insist upon a strict performance of any of the terms, conditions, and covenants contained herein, shall not release the Lessee herein, nor any assignee assuming this Lease, from any and all of the obligations herein during and for the entire Term.

(6)     Lessor shall require a Five Hundred and 00/100 ($500.00) Dollar payment to cover its handling charges for each request for consent to any assignment prior to its consideration of the same.  Lessee shall further reimburse to Lessor all reasonable attorneys' fees incurred in the drafting, negotiation or completion of the transaction.  Lessee acknowledges that its sole remedy with respect to any assertion that Lessor's failure to consent to any sublet of assignment is unreasonable shall be the remedy of specific performance and Lessee shall have no other claim or cause of action against Lessor as a result of Lessor's actions in refusing to consent thereto.

### *(C)* *Approval Not Required*

Any assignment to a parent, subsidiary, affiliate ("Affiliated Company") as defined in the Preamble, or successor entity of Lessee or a sale to an entity that acquires all or substantially all of the assets of Lessee shall not be subject to the provisions of Subparagraphs (A) and (B) hereof and shall not require Lessor's prior written consent.

### *(D)* *Bankruptcy*

If, pursuant to the Federal Bankruptcy Code (or any similar law hereafter enacted having the same general purpose), Lessee is permitted to assign this Lease, notwithstanding the restrictions contained in this Lease, adequate assurance of future performance by an assignee expressly permitted under such code shall be deemed to mean the deposit of

**19**

____initial

cash security in an amount equal to the sum of one (1) year's Fixed Basic Rent plus an amount equal to the sum of all other charges due and payable by Lessee hereunder for the calendar year preceding the year in which such assignment is intended to become effective, which deposit shall be held by Lessor for the balance of the Term, without interest, as security for the full performance of all of Lessee's obligations under this Lease, to be held and applied in the manner specified for security in Paragraph 16.

### (E)   Acceptance of Rent From Others

If this Lease be assigned, or if the Demised Premises or any part thereof be underlet or occupied by anyone other than Lessee, Lessor may, after default by Lessee collect Fixed Basic Rent or Additional Rent from the assignee, undertenant or occupant and apply the net amount collected to the Fixed Basic Rent or Additional Rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of this lease, or the acceptance of the assignee, undertenant or occupant as  Lessee, or a release of Lessee from the further performance by Lessee of all covenants on the part of Lessee herein contained.  The consent by Lessor to an assignment or underletting shall not in any way be construed to relieve Lessee from obtaining the express consent in writing of Lessor to any further assignment or underletting, nor shall the same release or discharge Lessee from any liability, past, present or future, under this Lease, and Lessee shall continue fully liable in all respects hereunder.  Additionally, such action by Lessor shall in no manner be construed as an obligation or undertaking to return any security to such undertenant.

### 21.   EMINENT DOMAIN.

If Lessee's use of the Premises is materially affected due to the taking by eminent domain of (a) the Premises or any part thereof or any estate therein; or (b) any other part of the Building; then, in either event, this Lease shall terminate on the earlier of (i) the date of delivery of the Deed by the owner of the fee to the Condemnor or (ii) the date of lawful physical possession by Condemnor provided said possession materially and permanently affects Lessee's use of the Demised Premises.  The Fixed Basic Rent and any Additional Rent, shall be apportioned as of said termination date and any Fixed Basic Rent or Additional Rent paid for any period beyond said date shall be repaid to Lessee.  Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof, but Lessee may file a separate claim for any taking of fixtures and improvements owned by Lessee which have not become Lessor's property, and for moving expenses, provided the same shall in no way affect or diminish Lessor's award.  In the event of a partial taking, which does not affect a termination of this Lease, but does deprive Lessee of the use of a portion of the Demised Premises, there shall either be an abatement or an equitable reduction of the Fixed Basic Rent, and an equitable adjustment reducing the Base Period Costs, depending on the period for which and the extent to which the Premises so taken are not reasonably usable for the purpose for which they are leased hereunder.

### 22.   INSURANCE.

### (A)   Building Insurance

_____initial_____

The Lessee shall, during the Term of this Lease, cause the Building to be insured for the benefit of Lessor, and any and all mortgagees, in an amount not less than Three Million and 00/100 ($3,000,000.00) Dollars under the terms of a policy maintained and paid for by Lessee insuring special causes of loss form (CP 10 30) providing "all risk" coverage and Lessee shall deliver to Lessor a certificate of property insurance evidencing coverage under said policy.  The Lessee shall pay the total premium for the Building insurance, in accordance with payment terms of the policy.  In addition, the Lessee shall pay any increase in the premium imposed by reason of its being a named insured and any increase assessed against the entire Building occasioned by the Lessee's use.  Likewise, any increase in the amount of insurance required by reason of any addition or alteration to the entire Building shall be the sole obligation of the Lessee.  The Lessee's obligation hereunder shall constitute Additional Rent required to be paid by the Lessee under this Lease.  Lessee shall have the further obligation, in the event of casualty, to pay any deductible under the policy.  The insurance above described shall be obtained from a company licensed to do business in the State of New Jersey with a Bests' rating of A+ or better.  Lessor reserves the right to have the building insurance amounts increased after appraisal by a representative of the insurance company and Lessee shall pay the increased cost of such premiums.

### (B)    Lessee's Personal Property Insurance

Lessee covenants and represents (said representation being specifically designed to induce Lessor to execute this Lease), that Lessee's personal property and fixtures and any other items which Lessee may bring to the Premises which may be subject to any claim for damages or destruction due to Lessor's negligence (but not to the extent cause by Lessor's gross negligence or intentional misconduct) shall be fully insured by a policy of insurance covering all risks  Lessee agrees as a material inducement to Lessor to permit said deductible, that Lessee shall act as a self-insurer to the amount of any such deductible and shall make no claim against Lessor therefor.  Said policy shall specifically provide for a waiver of subrogation for Lessor without regard to whether or not same shall cost an additional premium and notwithstanding anything to the contrary contained in this Lease.

### (C)    Lessee's General Liability Insurance

Lessee shall purchase at its own expense and keep in force during this Lease a policy or policies of (i) commercial general liability insurance, including personal injury and property damage, in the amount of not less than Five Million Dollars ($5,000,000.00) combined single limit per occurrence and commercial automobile liability insurance covering Lessee against any losses arising out of liability for personal injuries or deaths of persons and property occurring in or about the Premises as a result of the use of automobiles and (ii) "all-risk" property insurance covering Lessee's property (and otherwise resulting from any acts or operations of Lessee).  Said policies shall to the extent of the indemnity obligations herein (a) name Lessor, any managing agent of Lessor and any party holding an interest to which this Lease may be Subordinated as additional insureds; (b) be issued by an insurance company with a Best rating of A or better and otherwise reasonably acceptable to Lessor and licensed to do business in the State of New Jersey; (c) provide that said insurance shall not be canceled or materially modified unless thirty (30) days prior written notice shall have been given to Lessor; (d) provide coverage on an occurrence basis; (e) provide coverage for insurable indemnity obligations of Lessee under this Lease including those obligations expressly set forth in Paragraphs 7

initial

and 34 hereof and all other damage to the premises whether incidental, accidental, known or unknown; (f) contain a severability of insured parties provision and a cross liability endorsement except named insured vs. named insured; (g) be primary, not contributing with, and not in excess of coverage which Lessor may carry; (h) contain a hostile fire endorsement; and (i) otherwise be in such form and include such overages as Lessor may reasonably require provided that such coverage is standard and customary for companies of similar size and scope of the Lessee.   Certificate of Insurance on the so-called "ACCORD" Form 27 of other form currently in use as standard insurance practice evidencing said policies, shall be delivered to Lessor by Lessee upon commencement of the Lease and renewals thereof shall be delivered at least fifteen (15) days prior to the expiration of said insurance. Said limits shall be subject to periodic review, and Lessor reserves the right to increase said coverage limits if, in the reasonable opinion of Lessor, said coverage becomes inadequate and is less than that commonly maintained by tenants in similar buildings in the area by tenants having similar uses.

### (D)   Flood Insurance

Lessor advises Lessee that the Premises are located in a flood zone as designated on the maps promulgated by the Federal Emergency Management Act ("FEMA"). Lessor maintains flood insurance to which Lessee shall contribute, or in the alternative, Lessee shall provide evidence of its own flood insurance, or a waiver of this insurance as may be selected as set forth in Paragraph 47 below.  Lessee's waiver of the benefit of flood insurance shall not relieve Lessee of the liability to repair and restore the Premises following any damage by a cause that would have been covered under such policies.

### (E)   Waiver of Subrogation

Each insurance policy carried by the Lessee or the Lessor insuring the Demised Premises against special causes of loss form providing protection for all risk coverage, and each insurance policy carried by the Lessee and insuring the Demised Premises and its fixtures and contents against loss by fire, water, and causes covered by standard extended coverage, shall be written in a manner so as to provide that the insurance company waives all right of recovery by way of subrogation against the Lessor or the Lessee in connection with any loss or damage covered by any such policies.

### (F)   Blanket Coverage

The Lessee's coverage for any insurance required to be maintained by Lessee may be included in a blanket policy   The limits of coverage set forth in this Lease shall not be construed to limit the coverage available to any additional insured party to an amount which is less than the full policy limit(s) of the coverage(s) actually carried by Lessee.

### (G)   Lessor's Right to Purchase/ Interest Charge

Upon failure at any time on the part of the Lessee to procure any or all of the policies of insurance as herein provided, or to pay the premiums therefor, the Lessor shall be at liberty from time to time as often as such failure shall occur, to procure such insurance and pay the premiums therefor as herein without need for delivery of notice prior thereto (Lessee acknowledging that the avoidance of a lapse in coverage is material, essential and emergent in nature such that any requirement for delivery of written notice may be

initial

suspended), and all and any sums paid for such insurance by the Lessor together with an administrative add on fee of 15% plus interest thereon at the rate of Eighteen (18%) per annum plus late charges as applicable to late paid Fixed Basic Rent, all of same to be declared to be Additional Rent under this Lease, forthwith due and payable, and shall be collectible accordingly.

### 23. COMPLIANCE WITH LAWS, ETC.

The Lessee shall not do or permit anything to be done in the Demised Premises which shall constitute a public nuisance or which will conflict with the regulations of the fire department or with any insurance company having issued or about to issue a policy of insurance in favor of Lessor covering said Demised Premises and its contents for the prevention of fire or other casualty damage or injury and Lessee covenants to comply at its own expense with all such related orders, rules, regulations or policies of any such company or public authority. The Lessee shall, at its own expense, obtain all necessary environmental and operating permits and promptly comply in all material respects with all applicable requirements of law and with all applicable ordinances or orders, rules, and regulations of any Federal, State, Municipal or other public authority having jurisdiction over the Demised Premises and with all applicable requirements of the Fire Insurance Exchange or similar body, and of any liability insurance company insuring the Lessor (or about to issue a policy of insurance to Lessor) against liability for accidents in or connected with the Demised Premises, including, but not limited to, laws, regulations, ordinances, orders and rules, which apply to the interior or exterior of the Demised Premises, the structural or non-structural parts thereof, are ordinary or extraordinary, foreseen or unforeseen.

### 24. LESSEE'S ESTOPPEL.

Lessee shall, from time to time on not less than ten (10) days' prior written request by Lessor, execute, acknowledge and deliver to Lessor or to anyone Lessor shall designate, without charge to Lessor, a written statement of Lessee certifying that (i) the Lease is unmodified and in full force and effect, or that the Lease is in full force and effect as modified and listing the instruments of modification; (ii) the dates to which the rents and charges have been paid; (iii) that Lessee has not discharged or used and does not discharge or use any hazardous or toxic substance or waste at the Building; and (iv) whether or not to the best of Lessee's knowledge Lessor is in default hereunder, and if so, specifying the nature of the default and as to any other matters as may reasonably be so requested. It is intended that any such statement delivered pursuant to this Paragraph 24 may be relied on by a prospective purchaser of Lessor's interest or mortgagee of Lessor's interest or assignee of any mortgage of Lessor's interest.

### 25. HOLDOVER TENANCY.

If Lessee holds possession of the Premises after the expiration of the Term of this Lease, Lessee shall become a Lessee from month to month under the provisions herein provided, at a monthly basic rental of double the monthly rate charged herein for Fixed Basic Rent in the last year of the Lease and without the requirement for demand or notice by Lessor to Lessee demanding delivery of said Premises for which this Lease and all relevant provisions shall be deemed sufficient written demand (but Additional Rent shall continue as provided in this Lease), which sum shall be payable in advance on the first day of each month, and such tenancy shall continue until terminated by Lessor, or until Lessee shall have given to Lessor, at least sixty (60) days prior to the intended date of termination, a

**23**

written notice of intent to terminate such tenancy, which termination date must be as of the end of a calendar month.  The provisions of this Paragraph do not exclude the Lessor's rights of re-entry and shall not be deemed or construed as a waiver by Lessor of any other rights or remedies granted to Lessor under the terms of this Lease or available at law.

### 26.   AS IS/LESSEE'S WORK.

### (A)   *"As Is"* Condition.

Except as otherwise expressly provided in this Lease, Lessee agrees to accept the Building in its "as is" condition without exception.  Prior to Lease commencement and occupancy by Lessee, Lessor and Lessee shall mutually inspect the Premises and the parties shall prepare an inspection report ("Inspection Report") upon which the parties shall rely to evidence the condition of the Premises as of the Commencement Date and the Inspection Report shall be relied upon as the condition to which the Premises are to be restored in accordance with Paragraph 7 above.

### (B)   Systems Delivered in Good Working Order

Lessor represents that as of the Commencement Date all systems in the Building, to expressly include HVAC, electrical, plumbing and existing tailgate overhead doors, door locks, dock levelers, fencing and gates shall be in good working order, asphalt areas shall be free of potholes and the roof shall be free of leaks.  The office areas shall be painted a color of Lessor's selection, stained ceiling tiles shall be replaced and existing floor surfaces and bathrooms shall be cleaned prior to the Commencement Date.  If a non-compliance with said condition exists as of the Commencement Date, Lessor shall, promptly after receipt of written notice from Lessee setting forth with specificity the nature and extent of such non-compliance, malfunction or failure, rectify same at Lessor's sole cost and expense; provided that any such notice is provided by Lessee to Lessor within thirty (30) days of the Commencement Date.

### (C)   Conditions Attaching To Lessee's Work

In the event, at any time during the Lease Lessee shall desire to make any Major Alterations, same shall be subject to the following conditions which shall be restated in a letter agreement containing Lessor's consent:

(i)        Before commencing any construction, Lessee shall deliver to the Lessor for the Lessor's prior approval in writing (which approval shall not be unreasonably withheld, conditioned or delayed, a detailed plan for the proposed work, and as necessary or required by the municipality or governing agency, prepared, signed and sealed by a licensed architect of the State of New Jersey together with complete specifications therefor, which shall set forth the location, design, layout, mechanical installations, materials and other pertinent or relevant information, to be used in said construction;

(ii)        All of the demolition or construction shall be performed and completed in a good and workmanlike manner consistent in character and quality to the Building;

initial

(iii)        All of the demolition or construction shall be carried on and completed at the sole cost and expense of the Lessee and Lessee shall also obtain and pay for any permits or approvals required for said work and before commencement of the work;

(iv)        Any violations or liens created or caused by virtue of Lessee's work shall be immediately cured and removed by Lessee at its sole cost and expense;

(v)        All work, once commenced, shall be performed on a continuous basis until complete;

(vi)        All contractors employed at the premises shall carry workman's compensation insurance and general liability insurance in the minimum amounts of $1,000,000.00 and, prior to commencement of any work shall deliver certificates of insurance evidencing same naming Lessor thereon as an additional insured;

(vii)        The work shall be subject to Lessor's right (at its sole option) to require Lessee to remove all work and/or restore the Demised Premises herein to its original condition upon expiration or sooner termination of the Lease as more fully set forth in Paragraph 7 (C) and 7(D) above; and

(viii)        All governmental permits and approvals shall be obtained and paid for prior to the commencement of any work. Lessor makes no representation as to the availability of said approvals. The commencement of this Lease and Lessee's obligations hereunder are expressly not contingent on the obtaining of said approvals.  The refusal of the municipality or any other agency to grant the necessary permits or approvals to perform any work that may hereinafter be requested by Lessee shall not be deemed a cause for termination of/or non-performance of Lessee's obligations hereunder and this Lease shall continue unabated, in full force and effect in accordance with all of the terms, conditions and provisions stated elsewhere herein until the expiration of the entire Term of this Lease.

## 27.  LEASE COMMENCEMENT.

This Lease and all of its terms, conditions and provisions shall commence on April 15, 2014.  Anything in this Lease to the contrary notwithstanding, in the event delivery of possession is later than April 15, 2014, then the Lease Commencement and Termination Dates shall be adjusted to provide for a full seven (7) year and two month term with a further adjustment such that the rent shall be payable on the first of the month as more fully set forth in Subparagraph 3A above.  Lessor shall extend its full cooperation in obtaining the Certificate of Occupancy from the Borough of South Plainfield and shall complete, execute and deliver all applications and pay the fees therefor as necessary immediately upon Lessee's request.  The applications to be made shall be for occupancy only by the Lessee and shall not include any site plan application sign application or reference for any work to be performed by Lessee.  Lessee expressly understands and agrees that Lessee shall not be permitted to use and occupy the Premises until issuance of the Certificates.  If requested by Lessor, Lessor and Lessee shall, by a writing signed by the parties, ratify and confirm said Commencement Date and Termination Date.

## 28.  RIGHT TO SHOW PREMISES.

Initial

Lessor may show the Premises to prospective purchasers and mortgagees at any time on reasonably telephonic notice. During the twelve (12) months prior to Termination Date, of this Lease, Lessor may show the Premises to prospective Lessees, during business hours on not less than five (5) days prior written notice to Lessee and may place the usual "To Let" or "For Sale" signs thereon.

### 29.  WAIVER OF TRIAL BY JURY.

It is mutually agreed by and between Lessor and Lessee that the respective parties hereto shall and they hereby do waive trial by jury in any action or proceeding brought by either of the parties hereto against the other on any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Lessor and Lessee, Lessee's use or occupancy of the Demised Premises, and/or any claim of injury or damage, and any emergency statute or any other statutory remedy. Should Lessor seek recourse to equity to enforce any of its rights under this Lease, Lessee agrees to waive any defense which it might otherwise have that Lessor has an adequate remedy at law. Lessee further agrees that it shall not interpose any counterclaim or set off in a summary proceeding or in any action based, in whole or in part, on non-payment of Fixed Basic Rent or Additional Rent.

### 30.  NO OTHER REPRESENTATIONS.

No representations or promises shall be binding on the parties hereto except those representations and promises contained herein or in such future writing signed by the party making such representations(s) or promise(s).

### 31.  QUIET ENJOYMENT.

Lessor covenants that if, and so long as, Lessee pays the Fixed Basic Rent, and any Additional Rent as herein provided, and performs the covenants hereof, Lessor shall do nothing to affect Lessee's right to peaceably and quietly have, hold, and enjoy the Premises for the Term, subject to the provisions of this Lease.

### 32.  PERSONAL LIABILITY.

#### (A)    Lessor's Exculpation

Notwithstanding anything to the contrary provided in this Lease, it is specifically understood and agreed, such agreement being a primary consideration for the execution of this Lease by Lessor, its constituent members (to include, but not be limited to, officers, directors, partners and trustees), their respective successors, assigns or any mortgagee in possession (for the purposes of this Paragraph, collectively referred to as "Lessor"), with respect to any of the terms, covenants and conditions of this Lease, and that Lessee shall look solely to the equity of Lessor in the building for the satisfaction of each and every remedy of Lessee in the event of any breach by Lessor of any of the terms, covenants and conditions of this Lease to be performed by Lessor, such exculpation of liability to be absolute and without any exceptions whatsoever.

Initial

### (B)   Lessor's Consent

With respect to any provision of this Lease which provides that Lessee shall obtain Lessor's prior consent or approval, unless otherwise expressly provided in this Lease, Lessor's consent or approval shall not be unreasonably withheld, conditioned or delayed. As to any such provision, Lessee shall be permitted to bring an action for specific performance only and no money damages shall be sought or allowed.

## 33.   LESSOR'S LIABILITY FOR LOSS OF PROPERTY.

The Lessor shall not be liable for any damage or injury which may be sustained by the Lessee or any other person, as a consequence of the failure, breakage, leakage or obstruction of the water, plumbing, steam, sewer, waste or soil pipes, roof, drains, leaders, gutters, valleys, downspouts or the like or of the electrical, gas, power, conveyor, refrigeration, sprinkler, air-conditioning or heating systems, elevators or hoisting equipment; or by reason of the elements; or resulting from the carelessness, negligence or improper conduct on the part of any other Lessee or of the Lessor of the Lessor's or this or any other Lessee's agents, employees, guests, licensees, invitees, subtenants, assignees or successors; or attributable to any interference with, interruption of or failure, beyond the control of the Lessor, of any services to be furnished or supplied by the Lessor but Lessor shall be liable for any such damages resulting from Lessor's gross negligence or willful misconduct.

## 34.   INDEMNITY.

Except to the extent caused by the willful misconduct or other uninsurable act of Lessor, its agents, contractors or employees, the Lessee shall and will indemnify and save harmless the Lessor from and against any and all liability, claims, demands, damages, expenses, fees, fines, penalties, suits, proceedings, actions and causes of action of any and every kind and nature [including but not limited to same brought by Lessee or any other person(s) or entity] for any damage or injury arising or growing out of or in any way connected with the use, occupation, design or construction, management or control of the Demised Premises and each and every part thereof and the sidewalks, curbs, streets and yards adjoining the same, or arising out of or in any way connected with any act, omission, or negligence of the Lessor or Lessee, its successors or assigns, or any one claiming under it or through it or resulting from any breach, violation or non-performance of any covenant, conditions, or agreement herein contained on the part of the Lessee to be kept and performed, or resulting in injury to person or property or loss of life or property of any kind or nature whatsoever sustained during the term hereof in or about the Demised Premises or any part thereof or to or upon the adjoining sidewalks, streets, and yards; and the Lessee shall and will, at its own cost and expense defend any and all actions, suits and proceedings which may be brought against the Lessor or in which the Lessor may be impleaded with others in any such actions or proceedings, including the payment of attorneys' fees and shall and will satisfy, pay and discharge any and all judgments, order and decrees that may be recovered against the Lessor in any such actions or proceedings or in which the Lessor may be a party defendant. In defending any action hereunder, Lessor shall have the right to select the attorney or law firm of its own choosing, same to be paid by Lessee.

## 35.   BROKER.

initial

Each party represents and warrants to the other that the Broker, as defined in the Preamble, is the sole broker with whom the parties have negotiated in bringing about this Lease, and each agrees to indemnify and hold the other harmless from any and all claims of other brokers and expenses in connection therewith arising out of or in connection with the negotiation of or the entering into this Lease by Lessor and Lessee. Lessor shall pay Broker pursuant to the terms of a separate written agreement.

### 36. PARKING SPACES.

Lessee's occupancy of the Demised Premises shall include all parking spaces available at the Demised Premises.

### 37. ACCORD AND SATISFACTION.

No payment by Lessee or receipt by Lessor of a lesser amount than the Fixed Basic Rent and Additional Rent payable hereunder shall be deemed to be other than a payment on account of the earliest stipulated Fixed Basic Rent and Additional Rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment for Fixed Basic Rent or Additional Rent be deemed an accord and satisfaction, and Lessor may accept such check or payment without prejudice to Lessor's right to recover the balance of such Fixed Basic Rent and Additional Rent or pursue any other remedy provided herein or by law.

### 38. EFFECT OF WAIVERS OF DEFAULT.

No failure by Lessor to insist upon the strict performance of any covenant, agreement term or condition of this Lease, or to exercise any right or remedy consequent upon a breach thereof, and no acceptance of full or partial rent during the continuance of any such breach, shall constitute a waiver of any such breach or of such covenant, agreement, term or condition. No consent or waiver, express or implied, by Lessor to or of any breach of any covenant, condition, or duty of Lessee shall be construed as a consent or waiver to or of any other breach of the same or any other covenant, condition or duty, unless in writing signed by Lessor.

### 39. NO OPTION.

The submission of this Lease Agreement for examination does not constitute a reservation of, or option for, the Premises, and this Lease Agreement shall become effective as a Lease Agreement only upon execution and delivery thereof by Lessor and Lessee and delivery of all items set forth in Paragraph 47 below.

### 40. NOTICES.

Any notice, demand, consent, approval, request and any instrument or document (the "Notice") by this Lease required to be given or served upon or by either party to the other shall be in writing and shall be deemed to have been duly given only if delivered personally or sent by registered mail or certified mail in a postpaid envelope, or recognized national overnight courier service such as Federal Express or UPS addressed, if to Lessee, at the above-described Building; if to Lessor, at Lessor's address as set forth above; or, to either at such other address as Lessee or Lessor, respectively, may designate in writing in notice delivered in accordance herewith. Notice shall be deemed to have been duly given, if delivered personally or by courier service, on delivery thereof, and if

28

initial

mailed, upon the second (2nd) business day after the mailing thereof. E-mailing of a PDF version of a notice may be effective only upon acknowledgment of receipt of same by the recipient.

### 41. PARAGRAPH HEADINGS.

The paragraph headings in this Lease and position of its provisions are intended for convenience only and shall not be taken into consideration in any construction or interpretation of this Lease or any of its provisions.

### 42. APPLICABILITY TO HEIRS AND ASSIGNS.

The provisions of this Lease shall apply to, bind, and inure to the benefit of Lessor and Lessee, and their respective heirs, successors, legal representatives, and assigns. It is understood that the term "Lessor" as used in this Lease means only the owner, a mortgagee in possession or a term lessee of the Building, so that in the event of any sale of the Building or of any lease thereof, or if a mortgagee shall take possession of the Premises, the Lessor named herein shall be and hereby is entirely freed and relieved of all covenants and obligation hereunder accruing thereafter, and it shall be deemed without further agreement that the purchaser, the term lessee of the Building, or the mortgagee in possession has assumed and agreed to carry out any and all covenants and obligations of Lessor hereunder and Lessee shall upon receipt of notice from the owner of the reversion attorn thereto.

### 43. NUMBER AND GENDER.

The terms "Lessor" and "Lessee" wherever used herein shall be applicable to one or more persons, as the case may be, and the singular shall include the plural and neuter shall include the masculine and/or feminine, and if there be more than one, the obligations hereof shall be joint and several.

### 44. CORPORATE/AUTHORITY/REPRESENTATIONS.

#### (A)   Corporate Authorization

Lessee represents and warrants that this Lease and the undersigned's execution of this Lease has been duly authorized and approved by the corporation's Board of Directors. The undersigned officers and representatives of the corporation executing this Lease on behalf of the corporation represent and warrant that they are officers of the corporation with authority to execute this Lease on behalf of the corporation, and within fifteen (15) days of execution hereof, Lessee will provide Lessor with a corporate resolution confirming the aforesaid.

#### (B)   Lessee's Representations

(i)   Lessee represents that it is a duly organized and validly existing corporation of the State of Delaware, authorized to do business in the State of New Jersey.

_____ initial

                       (ii)     Lessee represents that on the Commencement Date that Lessee shall be the entity occupying and conducting day to day business in the Premises.

### 45.  RECORDING.

Lessee covenants that it will not place this Lease on record without the prior written consent of Lessor, provided, however, Lessee and Lessor each agree to execution a memorandum of this lease for recording upon the request of the other party hereto.

### 46.  MISCELLANEOUS.

#### (A)    Jurisdiction/Venue

The laws of the State of New Jersey shall govern the validity, performance and enforcement of this Lease.  The invalidity or unenforceability of any provision hereof shall not affect or impair any other provision of this Lease.  Any action brought to enforce the provisions of this Lease shall be venued in Middlesex County, New Jersey.

#### (B)    Signs

No sign, advertisement or notice shall be affixed to or placed upon any part of the Demised Premises by Lessee, except in such manner, and of such size, design and color as shall be approved in writing in advance by Lessor which approval shall not be unreasonably withheld conditioned or delayed.   Any sign so affixed shall be removed upon the termination of the Lease or occupancy in such a manner so as to cause as little damage to the Building as possible and Lessee shall repair and pay for the cost to restore the exterior to its original condition.

### 47.  OCCUPANCY.

Upon the Commencement Date, Lessee may take possession of the Demised Premises provided Lessee shall have delivered to Lessor all of the following:

#### (A)    Rent Payment

One and one-half month's installment of Fixed Basic Rent in the amount of Fifty-three Thousand Two Hundred Fifty and 00/100 ($53,250) Dollars for one and one-half month (currently anticipated to be from June 15, 2014 through July 31, 2014) after the rent concession period set forth in Section 3F of this Lease.

#### (B)    Tax Payment

The quarterly tax payment (or the pro rated portion thereof as of the Commencement Date).

#### (C)    Evidence of Insurance

Evidence of insurance required to be maintained by Lessee as set forth hereinbefore in this Lease.

_initial_

### (D)    Security Deposit

The security deposit in full in good and collected funds.

### (E)    Flood Insurance

Payment of Lessee's pro rated portion of the flood insurance from the Commencement Date to Insurance policy expiration of November 17, 2014 in the amount of $1311.30, or in the alternative a written rejection from Lessee as to the available flood insurance.

### (F)    Copy of Letter to Utility Providers

Evidence of Lessee's assumption of all costs of utilities and burglar/fire alarm and to establish service in Lessee's name, for costs incurred from and after the Commencement Date.

### (G)    Commencement of Additional Rent

Commencing on the Commencement Date, Lessee shall pay all of the costs and expenses incurred or accruing in the operation and/or possession of the Demised Premises, including, but not limited to, utilities (such as water, gas, and electric) and shall provide evidence of notification to the utility providers of its intention to transfer the services into its name.

### 48.  OFAC COMPLIANCE

(a) Defined Terms.  "Blocked Person" shall mean any Person that is publicly identified on the most current list of "Specially Designated Nationals and Blocked Persons" published by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC").  "OFAC" shall have the meaning assigned to such term in the definition of "Blocked Person".

(b)  To the extent applicable, Lessee is in compliance, in all material respects, with (A) the Trading with the Enemy Act and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V) and any other enabling legislation or executive order relating thereto, and (B) the USA PATRIOT Act.

(c)  Neither Lessee nor, to the knowledge of Lessee, any director, officer, agent, employee or affiliate of Lessee, (i) is a Blocked Person or (ii) is currently subject to any U.S. sanctions administered by OFAC that could, individually or in the aggregate, reasonably be expected to have a material adverse effect; and Lessee will not use the sale proceeds for the purpose of financing the activities of any person currently subject to any U.S. sanctions administered by OFAC.

### 49.  TERMINATION RIGHT

Notwithstanding any provision to the contrary in this Lease, if at any time during the Term Lessee is not permitted to use the Premises for the Permitted Use on a 24 hour,

initial

seven days a week basis as a result of any governmental law or regulation for a period of not less than 30 days, upon not less than thirty (30) days prior written notice to Lessor, Lessee may terminate this Lease.

_____initial

**IN WITNESS WHEREOF**, the parties hereto have hereunto set their hands and seals to this Lease Agreement consisting of 32 pages (exclusive of table of contents, title page and exhibits) the day and year first above written.

**WITNESS:**

_____

**HOLLYWOOD PROPERTIES, LLC, Lessor**

By: _____

**Bruce Arbeiter, Manager/Member**

**ATTEST:**

_____

**YRC INC., Lessee**

By: _____

**Lance Collins, Director - Properties**

33

EXHIBIT C

FIXED BASIC RENT
RENEWAL TERMS

FIRST RENEWAL TERM

| Year | Monthly Rent |
|------|--------------|
| 1. | $42,000 |
| 2. | $43,000 |
| 3. | $44,000 |
| 4. | $45,000 |
| 5. | $46,000 |

SECOND RENEWAL TERM

| Year | Monthly Rent |
|------|--------------|
| 1. | $46,000 |
| 2. | $47,000 |
| 3. | $48,000 |
| 4. | $49,000 |
| 5. | $50,000 |

34

initial

## EXHIBIT "A"

## LEGAL DESCRIPTION OF SOUTH PLAINFIELD, NEW JERSEY PROPERTY

**TRACT 1**

BEGINNING at a point in the northerly side line of Hollywood Avenue at a point therein distant in an easterly direction 1530.45 feet from the easterly side line of Ryan Street, measured along the northerly side line of Hollywood Avenue, said beginning point being in the division line between Lots 36 and 37 on map hereinafter mentioned; thence along the easterly side line of Lot 36 in a course of North 0 degrees 10 minutes West a distance of 592.73 feet to a point and corner; thence in a course of South 79 degrees 55 minutes 10 seconds East a distance of 229.41 feet to a point in the division line between Lots 39 and 40 on map hereinafter mentioned; thence along the westerly side line of Lot 40 in a course South 0 degrees 10 minutes East a distance of 547.98 feet to the said northerly side line of Hollywood Avenue in a course of South 89 degrees 50 minutes West a distance of 225 feet to the point and place of BEGINNING.

BEING also known as Lots 37 and 38 and 39 on map entitled "Amended Map of Hollywood Farms located at South Plainfield, Middlesex County, New Jersey, July, 1923", which map is filed in Office of Clerk of Middlesex County in File 593 as Map 1023.

BEING the same premises conveyed by deed from Edwin L. Daly and Gwendolyn L. Daly, his wife, dated June 18, 1970, and recorded in the Office of the Middlesex County Clerk on June 19, 1970, in Deed Book 2700 at page 1163.

**TRACT II**

KNOWN and designated on a certain map entitled "Amended Map of Hollywood Farms, located in South Plainfield, Middlesex County, New Jersey", said map is filed in the Office of the Clerk of Middlesex County, being Plot #34 and more particularly described as follows:

    Being 75 feet front on Hollywood Avenue and 637.49 feet and 622.59 feet in depth.

BEING the same premises conveyed by Deed of Joseph P. Borgese and Jennie Borgese, his wife, dated June 18, 1970, recorded June 19, 1970 in the Clerk's Office of the County of Middlesex in Book 2700, page 1160.

**TRACT III**

BEING known and designated as Lot 15 in Block 390, as shown and designated in the Official Tax & Assessment Maps of the Borough of South Plainfield, excepting therefrom a strip of land 15 feet in depth, fronting on Hollywood Avenue for road widening.

BEING the same premises conveyed by Deed of H. Beale Rollins and Mary E. Rollins, his wife, dated July 15, 1970, recorded in the Clerk's Office of the County of Middlesex, July 22, 1970, in Book No. 2704, page 644.

The above three tracts are also described as one tract in accordance with a description prepared by Hallard and Associates, P.E., L.S., dated April 21, 1981, as follows:

BEGINNING at a point in the northerly side line of Hollywood Avenue, said point being distant 1305.45 feet measured easterly along the various courses and distances of said side line of Hollywood Avenue from its intersection with the easterly side line of Ryan Street,  thence along the said side line of Hollywood Avenue the following courses and distances,  (1) North 89°-50' E, 75.00 feet to a point,   (2) N 0°-10' W, 15.00 feet to a point, (3) N 89°-50' E, 150.00 feet to a point,  (4) S 0°-10' E, 15.00 feet to a point,  (5) N 89°-50' E, 225.00 feet to a point,  thence (6) leaving said side line N 0°-10' W, 547.98 feet to a point, thence (7) 78°-55' W, 458.82 feet to a point,  thence  (8) 0°-10' E, 637.49 feet to the point and place of BEGINNING.

BEING all of Lots 34, 37, 38 & 39 and PART of Lots 35 & 36, "Amended Map of Hollywood Farms, Borough of South Plainfield, Middlesex County, N.J.", said map filed in the Middlesex County Clerk's Office August 27, 1923 as Map No. 1023, File 593 and containing 6.123 Acres according to a survey by Hallard and Associates, Watchung, N.J. dated April 21, 1981.



EXHIBIT B
SITE PLAN