# Exhibit A

## LEASE

THIS LEASE (this "Lease") is made as of *October 1*, 2021, by and between HAWKEY TRANSPORTATION, INC., a California corporation ("Landlord"), and USF REDDAWAY INC., an Oregon corporation ("Tenant").

**RECITALS:**

A.    Landlord owns certain real estate located at 19899 and 2065 Alexander Avenue in Anderson, Shasta County, California and more particularly described on the attached **Exhibit A**, which is incorporated herein with this reference (the "Land").

B.    On December 7, 2001, Landlord and Tenant entered into a Lease for approximately 9,800 square feet of commercial space in one of the improvements located on the Land (the "Original Lease").

C.    The initial term of the Original Lease, as extended by amendment, has since expired. Tenant continues to occupy the Premises (defined below) on a month-to-month basis with Landlord's consent. Landlord and Tenant desire to enter into this Lease to put in writing Landlord's agreement to lease to Tenant, and Tenant's agreement to lease from Landlord, the Premises as of the Commencement Date (defined below).

D.    This Lease is intended to supersede the Original Lease, which will be of no further force or effect as of the Commencement Date.

**AGREEMENT:**

In consideration of the foregoing Recitals, which are incorporated herein by this reference, and the mutual covenants set forth below, the parties agree as follows:

Section 1.    Premises.

1.1    On the terms and conditions set forth in this Lease, Landlord leases to Tenant and Tenant leases from Landlord approximately 9,800 square feet located on the Land and outlined on the diagram attached to this Lease as **Exhibit B** and incorporated herein by this reference (the "Premises", sometimes referred to as the "Building") with fifteen (15) dock-high loading positions. The location of the Premises is outlined on the attached Exhibit B. Tenant shall also have the right, exclusive of other tenants of the Land (except for ingress and egress in those areas, which shall be permitted by such other tenants) to use the parking and staging areas identified on **Exhibit C**. Provided that Tenant's use of the Premises is not materially adversely affected thereby, Landlord shall have the right upon Tenant's prior written approval to reconfigure and relocate portions of the parking and staging areas used by Tenant.

1.2    As an appurtenance to the Premises, Tenant shall have the right to use the Common Area (defined below) for ingress and egress to and from the Premises and for parking, on a non-exclusive basis and in common with other tenants of the Land (except as otherwise provided herein), upon the terms and conditions contained in this Lease and subject to such reasonable rules and regulations as Landlord may from time to time promulgate, provided such rules and regulations do not adversely affect Tenant's ongoing operation of business. Tenant shall not at any time park, or permit the parking, of motor vehicles in truck passageways or adjacent to any

1

improvement on the Land so as to interfere in any way with the use thereof by others, nor shall Tenant at any time park or permit parking of motor vehicles of its employees, suppliers or vendors other than in designated areas of the Common Area.  Tenant shall park and cause its employees, agents, and independent contractors to park only in those areas designated by Landlord from time to time.  Provided that Tenant's use of the Premises is not materially adversely affected thereby, Landlord shall have the right, which may be exercised from time to time, to relocate and reconfigure portions of the Common Area, except that Tenant at all times be entitled to no less than twelve/(12) employee/customer parking spaces and provided such relocation and reconfiguration does not adversely affect Tenant's ongoing operation of business.

1.3     For purposes of this Lease, the term "Common Area" shall mean all areas on the Land and within the Building not leased to the exclusive occupancy of tenants, including vehicle parking spaces and areas, roads, traffic lanes, driveways, sidewalks, pedestrian walkways, landscaped areas, signs, common storage area, common utility facilities and all other areas provided and designated by Landlord for the nonexclusive use of Landlord, Tenant and other tenants of the Land and their respective employees, guests and invitees that from time to time exist.

Section 2.    Term.

2.1     The primary term (the "Term") of this Lease commences on October 1, 2021 ("Commencement Date"), and expires at 11:59 p.m. on September 30, 2024.

2.2     As long as Tenant is not in default under this Lease at the time the option is exercised, Landlord grants to Tenant a total of three options to extend the term of this Lease for successive periods of three (3) years each (each, an "Extension Term").  Tenant must exercise its option to extend the term, if at all, by written notice delivered to Landlord at least 180 days prior to expiration of the preceding term.  The terms and conditions of the Lease during the Extension Terms shall be the same as during the Term, except as otherwise provided in this Section 2.2 and Section 3.1.

(a)     1st option:  Commencing October 1, 2024, and ending September 30, 2027 and Base Rent of $6,360.00 per month.

(b)     2nd option:  Commencing October 1, 2027, and ending September 30, 2030 and Base Rent of $6,742.00 per month.

(c)     3rd option:  Commencing October 1, 2030, and ending September 30, 2033 and Base Rent of $7.147.00 per month.

Section 3.    Rent; Survival of Obligations.

3.1     Tenant shall pay base rent (the "Base Rent") to Landlord in equal monthly installments of $6,000.00 each, due on the first business day of each and every calendar month during the Term.  The Base Rent for each Extension Term is set forth in Section 2.2.  All references to "Rent" or "Rental" in this Lease shall mean Base Rent, Additional Rent, and all other payments required of Tenant under this Lease unless otherwise expressly specified.  All payments required of Tenant under this Lease shall be deemed "Rent".

3.2    [Reserved.]

3.3    [Reserved.]

3.4    [Reserved.]

3.5    Unless otherwise provided herein, all Rent shall be payable in lawful money of the United States at the address of Landlord specified for notices to Landlord in Section 21 hereof as the same may be changed from time to time in accordance with said Section 21.

Section 4.    Use of Premises; Compliance with Laws.

4.1    The Leased Property shall be used and occupied solely as a truck terminal for an LTL freight operation and related uses, which may include only freight storage, delivery, distributions and related office use. Tenant shall use the Leased Property for no other purpose without the prior written consent of Landlord, which may be withheld in Landlord's sole discretion. Tenant's activities shall be governed by the provisions of any Applicable Legal Requirements (defined below). Tenant shall not use the Premises for any major or heavy duty maintenance to be performed on trucks and or trailers.

4.2    Tenant shall not commit or permit any waste to the Leased Property, and shall comply with all laws, rules, regulations, orders and other requirements applicable to the Leased Property imposed by governmental authorities having competent jurisdiction with respect thereto (collectively, "Applicable Legal Requirements"). Tenant shall complete any alterations, additions, improvements, repairs or replacements to the Premises hereunder required by Applicable Legal Requirements at Tenant's sole cost and expense if such requirements are due to Tenant's use or occupancy of the Premises; provided, however, that is such requirements either (i) the Landlord's responsibility under Section 8.1 hereof, or (ii) deemed a capital expense under generally accepted accounting principles, then such alterations, additions, improvements, repairs or replacements to the Premises shall be at Landlord's sole cost and expense. Subject to the protection of Landlord's interests as provided herein and provided that Tenant shall have first obtained Landlord's written consent, Tenant may contest any Applicable Legal Requirement by appropriate proceeding duly instituted and diligently prosecuted at Tenant's sole expense. Landlord will cooperate, without any expense to Landlord, with Tenant in connection with any such contest. Unless required by law, rule, regulation or ordinance, and so long as any such contest is pending, Tenant shall not be required to so comply with the disputed requirement, provided that the Leased Property is not subjected to loss, damage or forfeiture and Landlord and Landlord's interest in the Leased Property is not subjected to any adverse consequences, costs or expenses as a result thereof. Tenant shall be responsible for and shall indemnify, defend and hold Landlord harmless from and against any fines, penalties or other costs, expenses or charges which may result from any such contest and the resolution thereof.

4.3    Tenant shall take, at Tenant's expense, all action necessary to obtain, prior to the date required for obtaining the same, all licenses, approvals, certificates, permits or other evidence of authority issued by any governmental agency or authority or required by any Applicable Legal Requirements or otherwise deemed necessary or desirable by Tenant with respect to the Leased Property or Tenant's use or occupancy thereof.

3

Section 5.  <u>Taxes.</u>

Landlord shall pay, prior to delinquency, all real property taxes, general assessments and special assessments levied or assessed against the Land and the improvements located thereon (including, without limitation, the Premises) during the term of this Lease ("<u>Taxes</u>"). Commencing with the 2021 / 2022 tax year, Tenant shall reimburse Landlord for thirty three percent (33%) of all increases in Taxes levied, assessed, or imposed after the Base Year during the remainder of the Lease term.  For purposes of this Lease, the term "<u>Base Year</u>" shall mean the 2020 / 2021 tax year.  Tenant shall pay Tenant's share of the increase in Taxes on an annual basis, within 30 days of written demand from Landlord, which written demand shall be accompanied by documentation substantiating the charge including but not limited to the invoice from the taxing authority and Tenant's proportionate share calculated thereof.  Any amount that is not paid by Tenant within the 30-day period will accrue interest at the Default Rate until paid in full.  Notwithstanding the foregoing, Tenant shall not be required to pay any portion of late fees imposed due to Landlord's late payment of Taxes. Tenant shall pay, prior to delinquency, all taxes, assessments, license fees and other charges that are levied and assessed against the Tenant's personal property installed in or located on the Premises which become payable during the term of this Lease.

Section 6.  <u>Utilities.</u>

Landlord shall provide the following utilities and services to the Premises: (i) heat and air-conditioning; (ii) water; (iii) sewer/septic; (iv) gas; (v) electricity; and (vi) such other utilities and services as Landlord reasonably determines are necessary or appropriate for the Premises. Landlord will timely pay the cost of providing such utilities and services to the Premises and will seek reimbursement for the cost of the usage of the same by Tenant upon written demand for utilities that are not separately metered for the Premises, which demand shall be accompanied by documentation substantiating the charge or charges for which reimbursement is sought.  Tenant shall pay each such demand within 30 days of the date of the demand.  Any amount that is not paid by Tenant within the 30-day period will accrue interest at the Default Rate until paid in full.  In no instance shall Tenant be responsible for (i) utility usage by other tenants on the Land, or (ii) the Landlord's utility usage on the Land.

Unless caused by Landlord's negligent acts or omissions, Landlord shall have no liability for interruptions, variations, shortages, failures, changes in quality, quantity, character or availability of any utility or service provided under this section.  Neither shall any of the foregoing circumstances be deemed an eviction or disturbance of Tenant's use and possession of the Premises or any part thereof; however, upon the occurrence of any such event, after receiving notice from Tenant, Landlord shall use diligent efforts to restore such utilities or services required to be provided hereunder.

Section 7.  <u>No Setoff.</u>

Tenant shall pay Rent to Landlord free of any charges, assessments, impositions or deductions of any kind and without abatement, deduction or set-off.

4

Section 8.   Condition of Leased Property; Repairs; Hazardous Substances.

8.1     Landlord, at its cost, shall maintain in good condition, the following:

(a)     The structural parts of the Building.

(b)     The unexposed electrical, plumbing, and sewage systems, including, without limitation, those portions of the systems lying outside the Building or Premises.

(c)     Window frame, gutters, and down-spouts on the Building.

(d)     Heating, ventilating, and air-conditioning system servicing the Premises provided, however, that Tenant shall be required to pay the cost to pay for the ordinary maintenance and upkeep of said system which solely services the Premises, and Landlord shall only be required to make any capital repairs and replacements which may be necessary so long as such repairs and replacements are not necessitated by a failure to maintain on the part of Tenant. Landlord may, in its discretion, arrange for the necessary maintenance and upkeep of said system and invoice Tenant and all other tenants for their proportionate share of such maintenance costs on an annual schedule.

(e)     The roof and any painting required to the exterior of the Building.

8.2     Tenant, at its sole cost and expense, shall maintain in good condition and repair all portions of the Premises except for those items specifically set forth in Article 8.1 above, including, but not by way of limitation, all personal property, signs, plate glass, flooring, interior non-structural walls, floor coverings, ceiling tiles, interior doors, overhead and roll-up doors, dock bumpers, dock levelers, as well as maintenance to the heating, ventilating and air conditioning system solely servicing the Premises unless Landlord maintains such system as set forth in Section 8.1(d) herein. Tenant shall promptly, at Tenant's cost, repair any damage to the Premises and any other portion of the Land or the improvements located thereon caused by Tenant or Tenant's employees, guests or invitees.

8.3     Tenant shall not cause, permit or allow any chemical substances, asbestos or asbestos containing materials, formaldehyde, polychlorinated biphenyls, and no toxic, carcinogenic, radioactive, or other hazardous material, substance, waste, contaminant, or pollutant regulated now or hereafter by any governmental entity or agency (collectively, "Hazardous Materials") to be manufactured, processed, treated, disposed of, placed, stored, dumped, dispensed, released, discharged, used, sold, or located about, from, on or within any portion of the Premises by itself or its servants, agents, employees, contractors, subcontractors, licensees, assignees or subtenants except in accordance with all Environmental Laws (as hereinafter defined), provided, however, minor quantities of Hazardous Materials may be used or stored in the Premises for cleaning purposes only or in connection with the use of office equipment and the normal operation of Tenant's business only, so long as such quantities and the use thereof are permitted by or are exempt from applicable governmental regulation, and provided that Tenant's use, storage, transportation and disposition thereof is performed in accordance with all applicable federal, state or local laws, rules, regulations, ordinances and manufacturer's recommendations. Tenant may engage in the shipment or transportation of Hazardous Materials using appropriate hauling and transportation equipment and containers and in full compliance with applicable Environmental

5

Laws and Department of Transportation regulations. Tenant agrees to give Landlord prompt written notice of any discharge, release or threatened discharge or threatened release of any Hazardous Materials on or about the Premises. Tenant agrees to promptly clean up any Hazardous Materials which are discharged or released in or about the Premises by Tenant or its servants, agents, employees, contractors, subcontractors, licensees, assignees or subtenants and to remediate and remove any such contamination relating to the Premises, at Tenant's cost and expense and at no cost or expense to Landlord, to the standards provided in the following paragraphs. Tenant shall comply with all applicable Environmental Laws.

Tenant hereby agrees to indemnify, defend and hold harmless Landlord and Landlord's partners, officers, directors, members, shareholders, directors, lenders, affiliates, employees, agents, successors and assigns from and against all loss, cost, damage, liability and expense (including attorneys' fees and expenses) arising from or relating to any actual or asserted failure of Tenant to fully comply with all applicable Environmental Laws or arising from or relating to any Hazardous Materials which are placed in, on or about the Premises by Tenant or its servants, agents, employees, contractors, subcontractors, licensees, assignees or subtenants during the Lease term, including, but not limited to:

A. Any and all costs for which Landlord may be liable to any governmental agency for studying, assessing, containing, removing, remedying, mitigating, or otherwise responding to the release of any Hazardous Materials at, in, on, under, from, or relating to the Premises; and

B. Any and all fines or penalties assessed upon Landlord or liabilities of Landlord to third parties by reason of Tenant's failure to comply with any obligations, covenants, or conditions set forth in this Section 8.3.

The term "Environmental Laws" shall include the CERCLA, any state "Superfund" or "Superlien" law, or any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability or standards of conduct covering Hazardous Materials as may now or at any time hereafter be in effect. Tenant's obligation to undertake, pay for or reimburse any party with respect to any indemnity hereunder, remediation or other activity regarding Hazardous Materials shall be limited to the extent necessary for the Premises to comply with the minimum standards required by applicable Environmental Laws.

The terms and provisions in this Section 8.3 shall survive expiration or earlier termination of this Lease.

Section 9.    Alteration of Premises.

9.1    [Intentionally Omitted]

9.2    Subject to obtaining Landlord's written consent for structural improvements (which consent shall not be unreasonably withheld, conditioned, or delayed), Tenant, at its sole cost and

6

expense, shall have the right, prior to and from time to time during the Term of this Lease, to add an exterior fence (subject to Landlord's right to approve the location of such fencing, which approval will not be unreasonably withheld, conditioned or delayed) and otherwise to improve, alter and renovate the Premises in any manner which Tenant deems necessary or desirable to adapt the same for the conduct of its business operations, including, without limitation, performing the following items (which the parties agree are non-structural in nature): painting, decorating, redecorating and installing non-load-bearing partitions, pass-through windows, counters, shelving, floor coverings, wall coverings, drop ceilings and light fixtures (all of the work referred to in this Section 9 being collectively referred to as the "Tenant Improvement Work"). Notwithstanding the foregoing, Tenant must obtain Landlord's prior written consent (which consent shall not be unreasonably withheld, conditioned, or delayed) for any Tenant Improvement Work that will cost in excess of $25,000 or that will take longer than 120 days to complete. Unless otherwise agreed in writing by the parties, any improvements, alterations and renovations to the Premises by Tenant pursuant to this Section shall remain on the Premises upon the expiration or earlier termination of this Lease.

9.3     Tenant shall not permit any mechanics', builders', laborers', materialmen's or similar liens to exist upon the Premises by reason of any act or omission of Tenant. If any such lien shall at any time exist upon the Premises, Building or Land due to Tenant's act or omission, Tenant hereby agrees to indemnify, defend and save Landlord harmless against such lien and any suits or judgments arising therefrom. Tenant shall cause any such lien caused by Tenant's act or omission to be removed of record by payment, bonding, discharge or otherwise as permitted by law within thirty (30) days after notice to Tenant by Landlord of the existence of such lien of record. Landlord shall have the right to post and maintain on the Premises or the Building such notices of non-responsibility as are provided for under the lien laws of the state in which the Premises are located.

Section 10.   Insurance.

10.1     At all times during the Term, Landlord shall maintain all risk property insurance coverage for all buildings on the Premises.

10.2     At all times during the Term, Tenant shall, at its expense, maintain (i) commercial general liability insurance against claims for personal injury, bodily injury, wrongful death and property damage occurring upon, in or about the Leased Property, affording insurance protection with a combined single limit of not less than Three Million Dollars ($3,000,000.00), and (ii) commercial auto liability insurance covering owned, non-owned, and hired vehicles with a limit of not less than One Million Dollars ($1,000,000) per accident. The commercial general liability insurance and commercial auto liability required of Tenant hereunder, shall have an endorsement providing Landlord as an additional insured but only to the extent of the indemnity obligations herein.

10.3     Both Tenant and Landlord mutually hereby waive all rights and claims against each other for all losses covered by their respective insurance policies (or required to be covered by insurance under this Lease), and waive all rights of subrogation of their respective insurers. The parties agree that their respective insurance policies are now, or shall be, endorsed such that said waiver of subrogation shall not affect the right of the insured to recover thereunder. Landlord

7

disclaims any representation as to whether the foregoing coverages will be adequate to protect Tenant, and Tenant agrees to carry such additional coverage as may be necessary or appropriate.

10.4    Tenant shall be responsible for obtaining property insurance covering its personal property located on the Leased Property and Landlord shall have no liability with respect to any damage or loss to such personal property.

10.5    Should any of the aforementioned policies be cancelled before the expiration date thereof, notice will be delivered in accordance with the policy provisions. Tenant shall provide notice to Landlord upon receipt of such notice from its insurer(s). A certificate of insurance shall be provided to Landlord upon request and upon the renewal of the required insurance policies. All required insurance shall be written by insurance companies with an A.M. Best rating of A-VII.

10.6    Contractors and subcontractors hired by Landlord to provide services on site shall be required to maintain (i) commercial general liability to include coverage for products and completed operations with a limit of not less than One Million Dollars ($1,000,000) per occurrence, (ii) commercial auto liability insurance covering all owned, non-owned and hired vehicles with a limit not less than One Million Dollars ($1,000,000) per accident, (iii) workers compensation in accordance with statutory requirements with employers' liability limits not less than One Million Dollars ($1,000,000), and if applicable (iv) professional liability with limits not less than $1,000,000 per claim. Commercial general liability and auto liability shall be endorsed to include Tenant, its parent and its parents subsidiaries as additional insured. Coverage shall be primary and receive no contribution from any insurance available to the additional insureds. All policies shall include a waiver of subrogation in favor of the additional insureds. Any subcontractors doing work on behalf of Landlord's contractor or subcontractor shall be required to maintain the same types and amounts of insurance as required within Section 10.6.

Section 11.    Damage and Destruction.

11.1    Except as expressly provided to the contrary in this Section 11, in the event of any damage to or destruction of the Premises, Building or any portion thereof during the Term by fire, explosion or other casualty ("Damage or Destruction"): (a) Tenant shall remain in possession of the Premises to the extent reasonably possible and this Lease shall remain in full force and effect, and (b) Landlord shall repair or restore the Premises or Building following the occurrence of any casualty to a condition at least equal to that prior to such Damage or Destruction. Landlord shall use its reasonable efforts to repair such Damage or Destruction with no unreasonable interference with Tenant's use and occupancy of the Premises. Tenant's obligation to pay Rent and other charges hereunder shall equitably abate from the date of the Damage or Destruction to the date which is the earlier of: (a) the date Tenant shall resume its operations in the portion of the Premises damaged; or (b) the date which is thirty (30) days after Landlord shall have restored the Premises.

11.2    In the event of any Damage or Destruction of or to the Premises or Building (a) which, in the judgment of a reputable architect, engineer and/or contractor selected by Landlord, cannot reasonably be repaired or restored as required by Section 11.1(b) within one hundred twenty (120) days after the occurrence of such Damage or Destruction, or (b) if Landlord determines in the exercise of its reasonable discretion that the insurance proceeds pursuant to Section 11.1 are insufficient to restore the Leased Property, then either Landlord or Tenant, in the

8

case of (a) above, or Landlord, in the case of (b) above, shall have the right, at its option, to terminate this Lease by the delivery of notice thereof to the other party. In the event of any termination of this Lease pursuant to this Section 11.2: (a) such termination shall be effective on the date of such Damage or Destruction, (b) Landlord shall not have any obligation to repair or restore the Premises or Building pursuant to this Section 11, (c) any insurance proceeds with respect to the Premises or Building shall be payable to Landlord, (d) Intentionally Deleted, (e) Rent and all other obligations hereunder shall be payable to the date or such Damage or Destruction, and (f) Landlord and Tenant shall record an instrument evidencing the termination of this Lease in the appropriate official records in the county where the Premises is located, but only if a memorandum of this Lease is recorded.

11.3     If Landlord shall be required to restore the Premises or Building, Landlord shall repair and restore the Premises or Building to a condition at least equal to that immediately prior to such Damage or Destruction; provided, however, that the Premises shall not include any additions, alterations, improvements or replacements made by Tenant as permitted under Section 9 hereof. All such repairs, restoration, additions, alterations, improvements and replacements shall be commenced by Landlord promptly after Landlord's receipt of all insurance proceeds from the insurance company and shall be diligently and continuously pursued to completion thereafter, and shall be completed by Landlord in a workmanlike manner and in accordance with all Applicable Legal Requirements.

Section 12.    Eminent Domain.

12.1     If the possession of, title to, or ownership of all of the Land shall be permanently taken during the Term by any competent authority under a statutory power or condemnation or eminent domain or by private sale in lieu thereof, this Lease shall terminate upon the transfer of title to such authority.

12.2     If the possession of, title to, or ownership of any portion but less than all of the Land shall be permanently taken, or any or all of the Land shall be temporarily taken during the Term by any competent authority under a statutory power of condemnation or eminent domain or by private sale in lieu thereof, Landlord and Tenant may, at either party's option, elect to terminate this Lease by the delivery of notice thereof to the other party within thirty (30) days after the date any judgment or order ordering such taking (or agreed settlement in lieu thereof) becomes final and no longer subject to appeal or the date upon which title transfers to such authority, whichever is earlier. In the event either party elects to terminate this Lease pursuant to this Section 12.2, this Lease shall terminate upon the transfer of title to such authority. If neither party elects to terminate this Lease, this Lease shall remain in full force and effect for the balance of the Term without reduction or abatement of the Rent; provided, however that if such taking results in a change to the Premises or the Common Area such that the parking spaces are insufficient for Tenant's business operations, the Rent shall decrease by a commercially reasonable factor due to the decrease in parking spaces.

12.3     Landlord shall be entitled to the entire award made in respect of any taking of the Land, or any portion thereof, and Tenant waives any and all claims thereto. However, the foregoing shall not prohibit Tenant from pursuing any separate award that may be available to Tenant.

Section 13.    Default; Remedies.

13.1    The occurrence of any of the following shall constitute an event of default (an "Event of Default") by Tenant under this Lease:

(a)    the failure of Tenant to pay the Rent or any other amounts payable by Tenant hereunder within ten (10) business days after written notice from Landlord; provided, however, that Landlord shall only be required to provide such notice of default twice in any twelve-month period during the term of this Lease, after which Tenant's default on failure to pay will be automatic;

(b)    the failure of Tenant to perform its obligations to maintain the insurance required by this Lease;

(c)    the failure of Tenant to perform any other covenant or obligation or to comply with any other term or condition imposed upon Tenant under this Lease if such failure shall continue for a period of ten (10) business days or more after Tenant receives written notice thereof from Landlord; provided, however, that if the default is of such nature that it cannot be completely remedied within the ten (10) business day period, this provision shall be complied with if Tenant begins correction of the default within the ten (10) business day period and thereafter proceeds with reasonable diligence and in good faith to effect the remedy as soon as practicable, but in no event later than ninety (90) days from the date of Landlord's notice.

(d)    the making by Tenant of any general assignment of all or a substantial portion of all of Tenant's assets for the benefit of creditors; or the filing by or against Tenant of a petition in bankruptcy, insolvency or for reorganization or arrangement or for the appointment of a receiver of all or any substantial portion of Tenant's assets pursuant to any statute of the United States or any state, and Tenant's failure to secure a stay or discharge within thirty (30) days, or the attachment, execution or other judicial seizure of substantially all of Tenant's assets where such seizure is not discharged in thirty (30) days.

13.2    Upon the occurrence of an uncured Event of Default, Landlord, in addition to all other remedies given to Landlord at law or in equity, may by written notice to Tenant terminate this Lease or, without terminating this Lease and without notice, may re-enter the Premises by summary proceeding or otherwise and in any event may dispossess Tenant. Tenant agrees to be and remain liable for all Rent and other charges and sums due hereunder for the remainder of the Term, which liability shall survive the termination of this Lease, the re-entry by Landlord and the commencement of any action to secure possession of the Premises. Landlord shall have the right to maintain successive actions against Tenant for recovery of all damages, including, without limitation, amounts equal to the Rents and other charges and sums payable hereunder as and when said Rents and other charges and sums are payable hereunder, and Landlord shall not be required to wait to begin such actions or legal proceedings until the date this Lease would have expired. All remedies available to Landlord in this Lease, at law or in equity are declared to be cumulative and concurrent. No termination of this Lease or taking or recovering of possession of the Premises shall deprive Landlord of any of its rights, remedies or actions against Tenant including, without limitation, the right to receive all past due rents and damages equal to future rents and other charges accruing under this Lease, which rights shall survive the termination of this Lease or taking of

10

possession of the Premises; however, if the Premises are relet to a new tenant for any remaining portion of the then-remaining current Term, any rent paid by such new tenant shall offset any future rents accruing under this Lease.

Section 14.    <u>Access to Premises.</u>

Landlord shall have the right to enter any portion of the Premises upon twenty-four (24) hours prior written notice to Tenant, except in case of emergency in which no notice shall be required, for the purpose of examining and inspecting the Leased Property, exhibiting the same to any prospective purchaser or tenant, or making such repairs, replacements, alterations or improvements to the Premises as Landlord may deem necessary.

Section 15.    <u>Assignment and Subletting.</u>

Except as set forth herein, this Lease shall not be assigned, mortgaged, pledged, encumbered or in any other manner transferred by the Tenant, voluntarily or involuntarily, by operation of law, merger or otherwise, nor shall the Premises or any part thereof be sublet, licensed, granted to a concessionaire or used or occupied by anyone other than Tenant, without the prior written consent of Landlord, which may be withheld or conditioned by Landlord in its sole discretion. In the event that Landlord consents to any assignment or other transfer of this Lease, the assignee or transferee shall execute an assumption agreement in form and substance acceptable to Landlord, but Tenant also shall remain directly and primarily liable for all of the obligations under this Lease. Notwithstanding anything to the contrary contained in this Section 15, Tenant may assign this Lease without Landlord's consent to (i) any corporation, limited liability company, partnership or other business entity that controls, is controlled by, or is under common control with Tenant; (ii) any corporation, limited liability company, partnership or other business entity resulting from the merger or consolidation with Tenant; or (iii) any entity that acquires all of Tenant's assets including, without limitation, all of Tenant's assets related to its business at the Premises.

Section 16.    <u>Covenant of Quiet Enjoyment.</u>

Landlord covenants with Tenant that, upon performing the covenants and obligations on Tenant's part to be kept and performed under this Lease, Tenant shall and may peaceably and quietly have, hold and enjoy the Premises during the Term without any hindrance of Landlord or any person lawfully claiming the Premises or any portion thereof by, through or under Landlord.

Section 17.    <u>Right to Perform Covenants.</u>

If Tenant shall at any time fail or refuse to perform any of its covenants or obligations hereunder, Landlord may, but shall not be obligated to, perform such covenant or obligation without waiving or releasing Tenant from any liability therefor. All sums paid, advanced or expended by Landlord pursuant to this Section 17 and all costs and expenses incurred by Landlord in connection therewith (including, without limitation, reasonable attorneys' fees) shall be repaid to Landlord by Tenant, on demand, together with interest on any balance thereof from and after the date such sums, costs and expenses were so paid, advanced, expended or

incurred by Landlord at a rate equal to the lesser of ten percent (10%) per annum or the maximum rate of interest allowed by applicable law (the "Default Rate").

Section 18.    Surrender of Premises.

Upon the expiration or termination of this Lease by lapse of time or otherwise, Tenant shall surrender the Leased Property to Landlord, together with all additions, alterations and improvements thereto in broom-clean condition and in good order and repair, normal wear and tear and the effects of any Damage or Destruction, or any taking pursuant to Section 12 hereof, excepted.

Section 19.    Holdover.

If, at the expiration or termination of this Lease, Tenant continues to occupy the Leased Property, Tenant shall be a tenant from month to month (on a calendar month basis) at a monthly Base Rent and Additional Rent equal to the amount of Base Rent for the last month of the Term, subject to all of the other terms and conditions of this Lease. Nothing contained in this Section 19 shall be construed as a consent by Landlord to any holding over by Tenant, and Landlord expressly reserves the right to require Tenant to surrender possession of the Leased Property to Landlord forthwith upon the expiration of the Term or other termination of this Lease.

Section 20.    Successors and Assigns.

Subject to the limitations imposed upon Tenant pursuant to Section 15 hereof, this Lease shall be binding upon and shall inure to the benefit of Landlord and Tenant and their respective successors and assigns.

Section 21.    Notices.

All notices, requests, consents and other communications required or permitted under this Lease shall be in writing and shall be (as elected by the person giving such notice) personally delivered, sent by a nationally-recognized overnight courier service, or mailed by registered or certified mail (postage prepaid), return receipt requested, addressed to:

Landlord:    **HAWKEY TRANSPORATION, INC.**
P.O. BOX 732
Beaverton, OR  97075
c/o:  Mike Hawkey
E-mail: hawkeytransportation@gmail.com

Tenant:    **USF REDDAWAY INC.**
c/o Yellow Corporation
Attn: Properties
10990 Roe Ave., Mail Stop A650
Overland Park, KS 66211
Email: tommy.truluck@myyellow.com
Email: jeff.coltrin@myyellow.com

12

or at such other address as any party may designate by notice complying with the terms of this Section 21. Each such notice shall be deemed delivered on the date: (a) delivered if by personal delivery, and (b) upon which the return receipt is signed, delivery is otherwise confirmed, or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed or sent by overnight courier.

Section 22.    Severability.

If any term or condition of this Lease or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Lease and the application of such term or condition to any other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

Section 23.    Entire Agreement; No Oral Modification.

This Lease may not be modified, amended or supplemented except by a subsequent agreement in writing executed by both Landlord and Tenant. This Lease constitutes the entire agreement between the parties hereto as to the matters contained herein and supersedes any and all prior agreements between the parties hereto as to the matters contained herein.

Section 24.    Applicable Law.

This Lease shall be governed in all respects by the laws of the state in which the Premises is located.

Section 25.    Captions.

The section captions contained in this Lease are for convenience of reference only and are not intended and shall not be deemed or construed to limit, enlarge or affect the scope or meaning of this Lease or any term or condition hereof.

Section 26.    No Recording.

Neither party shall record this Lease or any memorandum hereof.

Section 27.    Rights and Remedies Cumulative.

No right or remedy specified herein or otherwise conferred upon or reserved to Landlord or Tenant, as the case may be, shall be exclusive of any other right or remedy. All such rights and remedies shall be cumulative, and shall be in addition to every other right and remedy whether hereunder, at law or in equity, and may be exercised by Landlord and Tenant, as the case may be, from time to time and as often as occasion therefor may arise.

Section 28.    Waiver.

No consent or waiver, express or implied, by either party hereto with respect to any breach or default by the other party hereto in the performance of any of the covenants or obligations of such other party hereto under this Lease shall be deemed or construed to be a consent to or

13

waiver of any other such breach or default. Failure or delay on the part of either party hereto to complain of any act (whether of commission or omission) of the other party hereto or to declare a breach of or default under this Lease, irrespective of how long such failure or delay continues, shall not constitute a waiver by such party hereto of its rights hereunder. No waiver by either party hereto of any default or breach by the other party hereto in the performance of any of the covenants or obligations of such other party hereto under this Lease shall be deemed to have been made by such party unless contained in a writing executed by such party hereto.

Section 29.    Indemnity.

To the fullest extent permitted by applicable law, Tenant shall defend, indemnify and hold Landlord harmless from and against any and all claims, demands, losses, penalties, fines, fees, charges, assessments, liabilities, damages, judgments, orders, decrees, actions, administrative or other proceedings, costs and expenses (including court costs, reasonable attorneys' fees and expert witness fees) and any diminution in value or loss or interference with the transfer, use or enjoyment of the Premises or the Building, howsoever caused ("Loss"), which, directly or indirectly, relate to or result wholly or in part from: (i) any violation or breach of this Lease by any Tenant Parties (as defined below); (ii) damage, loss or injury to persons, property or business occurring in or around the Premises or the Building or surrounding areas during the term of this Lease, which is caused by Tenant's negligent or intentional act or omission; (iii) damage, loss or injury to persons, property or business arising out of any Tenant Party's use of the Premises or the Building or the Land during the term of this Lease; and (iv) any act or omission of a Tenant Party. Notwithstanding the foregoing, Landlord shall not be released from, and Tenant shall not be obligated to indemnify Landlord for, any Loss to the extent such Loss is caused by the gross negligence or willful misconduct of Landlord, or its agents, contractors, employees or invitees or Landlord's breach of its obligations under this Lease. For purposes of this provision, "Tenant Parties" shall mean Tenant and Tenant's agents, employees, invitees, assignees, transferees and contractors. Without limiting the generality of the foregoing, Tenant specifically acknowledges that Tenant's obligations under this Section 29 shall apply to claims in connection with or arising out of the transportation, use, storage, maintenance, generation, manufacturing, handling, disposal, release, discharge, spill or leak of any Hazardous Materials, as defined in Section 8 of this Lease, and any violation or breach of the terms of that section. To the fullest extent permitted by law, Landlord shall indemnify, defend and hold Tenant harmless from and against all liabilities, claims, damages, penalties, causes of action, costs and litigation expenses (including reasonable attorneys' fees) in connection with loss of life, bodily injury or damage to property arising from or out of any occurrence: (i) on or about the Common Areas, except to the extent caused by the negligence or intentional misconduct of Tenant, its agents, contractors, employees, subtenants, concessionaires or licensees; (ii) in or upon the Premises, to the extent caused by the negligence or intentional misconduct of Landlord, its agents, contractors or employees; and (iii) a breach of this Lease.

Section 30.    Estoppel Letters.

Tenant shall from time to time upon not less than ten (10) business days' prior written request by Landlord execute and deliver to Landlord a statement in writing certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, stating the modifications and stating that the Lease as modified is in full force and effect), the date to which the Rent and other amounts payable by Tenant have been paid, that Tenant, and to the best

14

of Tenant's knowledge Landlord, is not in default of its covenants and obligations under this Lease or, if in default, stating the particulars of the default, and further certifying to such other matters as any lender to Landlord may reasonably require. Tenant acknowledges and agrees that any such statement delivered pursuant to this Section 30 may be relied upon by any lender or prospective assignee of Landlord. If Tenant fails to execute and deliver such statement within the period provided, then such failure shall constitute a default by Tenant hereunder.

Section 31.    Subordination and Non-disturbance.

This Lease and Tenant's interest herein shall be junior and subordinate to the rights of Landlord's lenders from time to time holding mortgages against the Premises. Tenant agrees that, upon the request of Landlord made in writing, Tenant will subordinate this Lease to any mortgage or lien which may hereafter include the Premises, and to any renewals, modifications, replacements and extensions thereof, provided however, that Landlord shall cause the holder of any such mortgage or other lien to enter into its standard non-disturbance agreement with Tenant providing that Tenant will not be disturbed in its possession of the Premises or have its rights hereunder terminated by such holder so long as Tenant is not in default hereunder.

Section 32.    Waiver of Liability by Tenant.

(a)    Landlord and Landlord's agents and employees shall not be liable for, and Tenant waives all claims for damage to person or property sustained by Tenant or any person claiming through Tenant resulting from any accident or occurrence on or about the Leased Property or any part thereof except as a result of Landlord's negligence or intentional misconduct.

(b)    Said waiver shall include but not be limited to claims for damage resulting from: (i) any equipment or appurtenances becoming out of repair; (ii) injury done or occasioned by wind; (iii) any defect in or failure of plumbing, heating, or air conditioning equipment, electric wiring, gas, water and steam pipes, stairs, rail or walks; (iv) broken glass; (v) the backing up of any sewer pipe or washstand, water closet, waste pipe, drain or any other pipe or tank in, upon or about the Premises; (vi) the escape of steam or hot water; (vii) water, snow or ice being upon or coming through the roof, skylight, trap door, stairs, walks or any other place upon or near the Leased Property; (viii) the falling of any fixture, plaster or stucco; and (ix) any act, omission or negligence of trespassers or of any other persons on or occupants of the Leased Property, contiguous buildings or adjacent or contiguous property.

Section 33.    Liability of Landlord.

If Landlord shall fail to perform any covenant, term or condition of this Lease upon Landlord's part to be performed  and, as a consequence of such default, Tenant shall recover a money judgment against Landlord, such judgment shall be satisfied only out of the proceeds of sale received upon execution of such judgment and levy thereon against the right, title and interest of Landlord in the Leased Property as the same may then be encumbered, and neither Landlord nor any owner, agent, employee, officer or director of Landlord shall be liable for any deficiency. It is understood and agreed that in no event shall Tenant have any right to levy execution against any property of Landlord other than its interest in the Leased Property as hereinbefore expressly provided.

15

Section 34.    <u>Transfer of Landlord's Interest.</u>

The Land, the improvements located thereon, and this Lease are freely transferrable by Landlord.  In the event of any transfer of transfers of Landlord's interest in the Land, the improvements located thereon, and this Lease, other than a transfer for security purposes only, the transferor shall be relieved of any and all obligations and liabilities on the part of Landlord accruing from and after the date of such transfer upon the transferor's delivery to Tenant of an assignment and assumption agreement duly signed by both the transferor and transferee in which the transferee agrees to assume all obligations and liabilities of the Landlord under this Lease.

Section 35.    <u>Broker.</u>

Tenant covenants, warrants and represents to Landlord, and Landlord covenants, warrants and represents to Tenant, that no broker was involved in this lease transaction.  Each party agrees to and hereby does defend, indemnify and hold the other harmless against and from any brokerage commissions or finder's fees or claims therefor by any party claiming to have dealt with the indemnifying party and all costs, expenses and liabilities in connection therewith, including, without limitation, reasonable attorneys' fees and expenses, for any breach of the foregoing.  The foregoing indemnification shall survive the termination of this Lease for any reason.

Section 36.    <u>Counterparts.</u>

This Lease may be executed in several counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument, and shall have the same force and effect as though all of the parties had executed a single signature page.

Section 37.    <u>Attorneys' Fees</u>.

The prevailing party in any action or proceeding arising out of or to enforce any provision of this Lease will be awarded reasonable attorneys' fees and costs incurred in that action or proceeding and any appeal thereof, or in the enforcement of any judgment or award rendered.

*[Signatures appear on the following page]*

16

Landlord and Tenant have executed or caused to be executed this Lease on the date and year first above written.

**LANDLORD:**                                         **TENANT:**

HAWKEY TRANSPORTATION, INC.              USF REDDAWAY INC.

By: _____                  By: _____

Name: Mike Hawkey                              Name: Jeffrey H. Coltrin

Its: Pres Hawkey Transportation              Its: Vice President – Properties

Date: 10·27·2021                               Date: 9/20/2021

17

## EXHIBIT A

### Description of the Land

All that portion of Lots 29 and 30 as shown on the map of the Belle Vue Tract recorded in the office of the County Recorder September 8, 1892, in Book of Old Plats at page 52, Shasta County Records, described as follows:

BEGINNING at the most Westerly corner of that certain 14.96 acre parcel as shown on the map recorded March 20, 1958, in Book 20 of Land Surveys at page 22, Shasta County Records, from which the Section corner common to Sections 36, 37, 38 and 39 of the P. B. Reading Grant bears North 50°16'13" West, 6,683.32 feet; thence, North 41°56' East, 940.00 feet to a 6 x 6 inch concrete monument as shown on said map; thence, South 48°04' East, 836.40 feet; thence, South 58°51'30" West, 982.56 feet to the Northeasterly line of the Southern Pacific Railroad right of way; thence, along said Northeasterly line, North 48°04' West, 550.37 feet to the point of beginning.

Said Land is shown as tax parcel 201-550-026-000 and contains 14.78 acres.

Exhibit A
Page 18 of 20

**EXHIBIT B**

**Depiction of Premises**
*(The depiction is approximate)*



19

## EXHIBIT C

## Parking and Staging Areas

*The areas outlined in red below are parking and staging areas for Tenant's sole use.*



20