**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION., *et al.*,[1] | Case No.  23-11069 (CTG) |
| Debtors. | Jointly Administered |
|  | **Hearing Date:** |
|  | **December 12, 2023 at 10:00 a.m. (ET)** |
|  | **Re: D.I. 968** |

**LIMITED OBJECTIONS OF USHOLL (MI) LLC TO DEBTORS' NOTICE OF
ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS
OR LEASES ASSOCIATED WITH THE NON-ROLLING STOCK ASSETS
REGARDING PROPOSED CURE AMOUNT AND ADEQUATE ASSURANCE OF
FUTURE PERFORMANCE**

USHOLL (MI) LLC ("**Landlord**"), by and through its undersigned attorneys, hereby: (a) objects to the *Debtors' Notice of Assumption or Assumption and Assignment of Certain Contracts of Leases Associated with the Non-Rolling Stock Assets* (D.I. 968) (the "**Cure Notice**") regarding the proposed cure amount for Landlord's Lease (as defined below) and the lack of adequate assurance of future performance upon any assignment of Landlord's Lease; and (b) joins in any objection regarding the Cure Notice filed by any other landlord(s) or other contract counter-parties for the reasons stated therein and to the extent not inconsistent with these limited objections.

**RELEVANT BACKGROUND**

1.      Landlord is the landlord under a "triple net" lease, dated June 25, 2014, as amended as of November 5, 2015 (as amended, the "**Lease**") with Debtor USF HOLLAND

---

[1]    According to the above-captioned debtors (the "**Debtors**"): (a) a complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation; and (b) the location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

INC., as tenant ("**Tenant**") for non-residential real property located at 10151 S. Division Avenue in Byron Township, Kent County.

2.      On September 15, 2023, this Court entered an order (D.I. 575) (the "**Bidding Procedures Order**") finalizing bidding procedures authorizing the Debtors to conduct an auction for the sale of all, substantially all, or any combination of the Debtors' assets.

3.      On September 21, 2023, this Court entered an order (D.I. 518) (the "**Stalking Horse Order**") approving the Debtors' selection of a Stalking Horse Bidder to acquire certain of the Debtors' real estate assets.

4.      Pursuant to the Bidding Procedures Order, on October 26, 2023, the Debtors filed the Cure Notice.  Schedule 1 to the Cure Notice lists the Lease as a lease to be assumed and assigned to the Stalking Horse Bidder or the ultimate winning bidder should there be an auction of the Debtors' real estate assets.  The Cure Notice lists the proposed cure amount for the Lease as "$91,299."  See D.I. 968, Schedule 1, Row No. 170.  The listed cure amount is incorrect.

## LIMITED OBJECTIONS

### I.      THE CURE NOTICE INCORRECTLY STATES THE DEBTORS' CURE OBLIGATIONS UNDER LANDLORD'S LEASE

5.      Landlord does not object to Tenant's assumption of its Lease *per se*, but does object to the proposed cure amount.  Specifically, Landlord objects to assumption of its Lease without Tenant: (a) curing all of Tenant's known unpaid obligations under the Lease, including payment of Landlord's attorney's fees, late fees, and default interest; and (b) assuming its Lease obligations to pay any unknown amounts that now might be or will become due and owing to Landlord.

6.     Section 365(b)(1) of the Bankruptcy Code provides, in pertinent part, that if there is a default under an executory contract or unexpired lease, a debtor may not assume such contract or lease unless the debtor:

> (A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . ; (B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).  Accordingly, the proposed assumption of the Lease requires payment to Landlord of *all* amounts due under that Lease (as amended).  Known liabilities must be paid or assumed up-front, and Tenant (or its assignee) must remain liable for unknown Lease liabilities as and when they become known.

### A.     Known Cure Amounts as of October 31, 2023

7.     Tenant's proposed cure amount in the Cure Notice of "$91,299" excludes certain known cure amounts due.  Those additional known Lease payment defaults as of October 31, 2023, include: (a) Landlord's legal fees and expenses for not less than $29,882.90 plus additional amounts incurred thereafter through the Lease assumption date; and (b) unpaid late fees of not less than $4,560.49 and default interest of not less than $2,776.03, together not less than $7,336.52, plus additional amounts of late fees and default interest incurred through the Lease assumption date.

8.     As to Landlord's legal fees and expenses as of October 31, 2023, Landlord has incurred not less than $29,882.90 (comprised of $26,435 for Landlord's primary counsel Chaffetz Lindsey LLP and $3,447.90 for Landlord's Delaware counsel, Morris, Nichols, Arsht & Tunnell LLP).  Sections 16.1 and 24.1(E) of the Lease entitle Landlord to reimbursement of such

fees and expenses as they were incurred due to, among other things, Tenant's Lease defaults and enforcement of Landlord's rights.

9.     The Bankruptcy Code requires payment of attorneys' fees due under a lease before it may be assumed.  See Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co., 549 U.S. 443, 449 (2007) (upholding enforcement of a contract provision requiring payment of attorneys' fees because the Bankruptcy Code does not require disallowance of a contract-based claim for attorneys' fees); In re Westview 74th St. Drug Corp., 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (payment of attorneys' fees required as condition to lease assumption); In re Crown Books Corporation, 269 B.R. 12, 18 (Bankr. D. Del. 2001) (attorneys' fees are recoverable as part of a landlord's cure claim if lease requires payment of such fees). Consequently, Tenant must reimburse Landlord for all of its legal fees and expenses through the Lease assumption date.

10.    As to late fees, section 5.2 of the Lease provides that "if any installment of monthly Base Rent is not received by Landlord when due or any other sum due hereunder is not paid when due, Tenant shall immediately pay to Landlord a late charge equal to five percent (5%) of the unpaid amount."  Tenant owes $4,560.49 in late fees as of October 31, 2023.

11.    Respecting default interest, section 5.2 of the Lease provides that "[r]ent not paid within ten (10) days of the date when due shall bear interest from the date when the same is payable under the terms of this Lease until the same shall be paid at an annual rate of interest equal to the rate of interest published from time to time in *The Wall Street Journal* as the "Prime Rate", plus three percent (3%), unless a lesser rate shall then be the maximum rate permissible by law, in which event said lesser rate shall be charged."  Tenant owes $2,776.03 in default interest as of October 31, 2023.

12.    The "full benefit of the bargain" principle (explained in more detail below) requires payment of interest provided for in a lease being assumed.  See In re Entertainment,

4

Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (court allowed 18% interest reasoning: "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy.  One of the purposes of Section 365 is to permit debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract.") (citation omitted).

13.    For an assumed lease, interest on unpaid prepetition charges runs through the lease's assumption date.  See In re Skylark Travel, Inc., 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990).  The amounts listed above exclude Lease payment obligations for attorneys' fees, late fees, and interest, due under the Lease for the period after October 31, 2023, as they are not yet known.  Nevertheless, all such lease obligations still must be paid for the period through the Lease assumption date.

14.    Additionally, to the extent there are accrued Tenant payment obligations under the Lease that are not yet due on the Lease assumption date, or Landlord is billed later based on Tenant's failure to pay an obligation due on or before the Lease assumption date, those charges constitute additional cure amounts due under any applicable Lease assumption order.

15.    Consequently, absent ensuring that Tenant will pay *all* of Tenant's payment obligations under the Lease, including for Lease obligations that are accrued, but not yet due, the Cure Notice and any proposed order governing assumption of a Lease would not satisfy applicable Bankruptcy Code requirements.

**B.    Unknown Cure Amounts**

16.    Tenant's proposed cure amount does not include Lease obligations for currently unknown defaults for which payment ultimately would be due.  However, Tenant must remain

responsible for any such unknown cure amounts, including, without limitation, indemnification, property maintenance, and other Lease payment obligations that accrued under the Lease, but are not yet known to Landlord.[2]   Accordingly, because the Cure Notice does not provide for Tenant's assumption of such obligations, any order providing for assumption of the Lease and/or governing the consequences of its assignment through a sale must require assumption of all monetary Lease obligations unknown to Landlord.

17.    Payment of all unknown lease obligations is required to assume an unexpired lease under the Bankruptcy Code.  See In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996) ("Congress's intent in imposing [the] conditions on the ability of the debtor to assume the contract was to ensure that the contracting parties received the full benefit of their bargain.'"); In re Bon Ton Restaurant & Pastry Shop, Inc., 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985) ("Section 365(b)(1) is intended to provide protection to the non-debtor lessor to ensure that he receives the full benefit of his bargain in the event of assumption."); 3 Collier on Bankruptcy ¶ 365.06[3][b] (16th ed. rev. 2017) ("The idea of cure in the [Bankruptcy] Code is to provide the other party to the contract with the benefit of its economic bargain.").

18.    Correspondingly, payment of such unknown amounts is mandated by the general rule requiring a debtor to assume a lease or contract in full.  See In re CellNet Data Systems, 327 F.3d 242, 249 (3d Cir. 2003) (assumption or rejection is an "all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected."); In re Joshua Slocum Ltd., 922 F.2d 1081, 1089-92 (3d. Cir. 1990) (strictly limits bankruptcy court's discretion to waive contractual provisions in the context of a debtor's assumption and assignment of a lease because "modification of a contracting party's rights is not to be taken lightly."); AGV

---

[2] See e.g., section 8.1 of the Lease: "Tenant agrees, *at Tenant's sole cost and expense*, to take good care of the Premises and keep and maintain same and all parts thereof" (emphasis added).

Productions, Inc. v. Metro-Goldwyn-Mayer, Inc., 115 F. Supp. 2d 378, 391 (S.D.N.Y. 2002) ("[U]nder the law of bankruptcy a contract cannot be assumed in part or rejected in part."); In re MF Glob. Holdings Ltd., 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and rejected in part . . . .  The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, . . . .").

19.    This obligation is also consistent with the language of section 365.  For example, section 365(b), which governs a debtor's cure obligation upon assumption, applies "[i]f there has been a default" other than one based on the debtor's bankruptcy filing or financial condition.  11 U.S.C. § 365(b)(1).  In effect, if a lease default is unknown, then the debtor could not be expected or required to cure it prior to assumption.  Correspondingly, "adequate assurance of future performance [is required] by the assignee" of an assumed lease "whether or not there has been a default."  11 U.S.C. § 365(f)(2).

20.    Further, regarding the Lease at issue here, requiring payment of all unknown Lease obligations is consistent with equitable principles.  Specifically, for years Tenant has had exclusive control over the property covered by the Lease (which is a triple net lease under which Tenant is responsible for paying all liabilities associated with the applicable leased property).  Hence, in contrast to Landlord, Tenant is the party in the far better position to know of any potential Lease liabilities that might have arisen, whether environmental, property maintenance, personal injury, tax, or another type.

21.    Additionally, providing for payment of unknown cure amounts is a requirement for assignment of the Lease upon any sale because assumption of an unexpired lease "is a necessary prerequisite to its assignment under § 365."  In re Sunterra Corp., 361 F.3d 257, 266 (4th Cir. 2004); In re Best Payphones, Inc., 2007 Bankr. LEXIS 1677 at *36 (Bankr. S.D.N.Y.

7

2007) ("The trustee can only assign what he assumes, and the assignee cannot impose terms, implicitly or explicitly, that render performance less onerous to the assignee or more onerous to the non-debtor party to the contract.").

22.     Consequently, absent ensuring that all unknown accrued Lease obligations will be paid, the Cure Notice and any proposed order governing assumption and assignment or a sale would not satisfy the applicable Bankruptcy Code requirements.

23.     To comply with these requirements, the following (or substantially similar) language should be included in any proposed order specifically governing assumption and/or assignment of the Lease or governing a sale that incorporates assumption and assignment of the Lease:

> Notwithstanding anything in this or any other order entered in these cases to the contrary, any liabilities due under the Lease dated as of November 5, 2015 (as amended, the "Lease"), between Tenant USF HOLLAND INC., as tenant, and USHOLL (MI) LLC as landlord respecting real property located at 10151 S. Division Avenue in Byron Township, Kent County, Michigan, shall survive entry of this and any other order entered in these cases except for liabilities under the Lease not awarded by this Court as cure amounts pursuant to section 365 for the period prior to the entry of this order for: (x) basic rent, (y) late fees and interest, and (z) Landlord's attorney's fees and costs due under the Lease.

**II.     THE STALKING HORSE BIDDER HAS NOT PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER THE LEASE**

24.     Tenant has the burden of proof on adequate assurance of future performance issues.  See In re F.W. Restaurant Assoc., Inc., 190 B.R. 143 (D. Conn. 1995); In re Lafayette Radio Electronics Corp., 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

**A.     Adequate Assurance of Payment of Known and Unknown Accrued Lease Obligations**

25.     Assumption by a debtor or lease assignee of a debtor/tenant's lease obligations to pay additional rent and charges and satisfy lease indemnity obligations *cum onere is* required to

provide adequate assurance of future performance to Landlord under section 365(b)(1)).  See In re Interstate Bakeries Corp., 167 F.3d 843, 961 (8th Cir. 2014).  Consequently, Landlord objects to any assumption and/or assignment of its Lease to the extent any future tenant assignee has not provided adequate assurance of future performance of Tenant's Lease obligations.

**B.  Adequate Assurance of Future Performance by the Stalking Horse Bidder**

26.    Landlord further objects to assumption and assignment of the Lease due to Tenant's failure to demonstrate adequate assurance of future performance by the Stalking Horse Bidder[3] of Tenant's obligations under of the Lease.

27.    The Debtors have neither confirmed that Estes Express Lines itself will be the new tenant under the Lease nor provided Landlord with any information establishing Estes's ability to perform under the Lease for the remaining Lease term of more than seven years.  Yet section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that a debtor may assign an executory contract or unexpired lease only if "(A) the [debtor] assumes such contract or lease in accordance with the provisions of this section; and (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2).  Accordingly, prior to entry of any order granting assumption and assignment of the Lease to the Stalking Horse Bidder, Landlord must be provided with adequate assurance of future performance by the Stalking Horse Bidder.

28.    Absent such information, credit enhancement for the assumed Lease such as a guaranty from a financially capable entity, a letter of credit, or a cash security deposit would be necessary because Landlord would have required such enhancement upon the initial leasing to a similar tenant.  See 11 U.S.C.  § 365(l) ("If an unexpired lease under which the debtor is the

---

[3] Landlord understands the Stalking Horse Bidder is Estes Express Lines, a privately held operating entity.

lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.").

In the ordinary course of its business, Landlord typically requires security deposits, guaranties, letters of credit, and/or other credit enhancements when leasing or assessing a proposed assignment of a lease based on the proposed tenant's financial information and history (or lack thereof).  Indeed, under section 1.1(U) of the Lease, Tenant was required to provide a letter of credit in the amount of $1,350,360.  Accordingly, as part of providing adequate assurance of future performance under its Lease, Landlord hereby demands from the Stalking Horse Bidder similar credit enhancement as provided for under section 365(l).

## JOINDER

Landlord joins in any other landlord's or other contract counter-party's objection to or respecting the Cure Notice to the extent applicable to the Lease and not inconsistent with these limited objections.

## RESERVATION OF RIGHTS

Landlord reserves its rights to amend and/or supplement this objection, as circumstances might require, including, without limitation, regarding the terms of any proposed order approving assumption of its Lease.

## CONCLUSION

WHEREFORE, Landlord respectfully requests that the Court: (a) condition any assumption of its Lease on entry of an order consistent with this objection; and (b) grant Landlord such other and further relief as the Court may deem just or proper.

Dated:  November 9, 2023
Wilmington, Delaware

*/s/ Curtis S. Miller*

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Curtis S. Miller (No. 4853)
1201 Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: cmiller@mnat.com

- and –

**CHAFFETZ LINDSEY LLP**
Alan J. Lipkin (*pro hac vice granted*)
1700 Broadway, 33rd Floor
New York, NY 10019
Telephone: (212) 257-6922
Email:  a.lipkin@chaffetzlindsey.com

*Attorneys for USHOLL (MI) LLC*

1463560.1