IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered)<br><br>Cure Objection Deadline:  November 9, 2023, at 5:00 p.m. (Eastern Time)<br>Related Docket Nos. 575 and 968 |

**OBJECTION OF MAD ACQUISITIONS, LLC TO NOTICE OF POTENTIAL ASSUMPTION OR ASSUMPTION AND ASSINGMENT OF CERTAIN CONTRACTS OR LEASES ASSOCIATED WITH THE NON-ROLLING STOCK ASSETS**

MAD Acquisitions, LLC ("MAD"), by counsel, hereby files its objection (the "Objection") to the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Non-Rolling Stock Assets* (Dkt. No. 968) (the "Cure Notice") filed by the above-captioned debtors (the "Debtors"), and in support thereof states as follows:

**BACKGROUND**

A. **MAD's Lease**

1. On or about June 19, 2009, MAD and YRC Inc. ("YRC") entered into that certain Lease (as amended or modified, the "Lease"), pursuant to which MAD leased to YRC real property located at 1665 Seibel Dr. NE, Roanoke, VA 24012 (the "Premises").  A true and accurate copy of the Lease is attached hereto as **Exhibit A**.

2. On August 6, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  The Debtors' cases have been consolidated for

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 10990 Roe Avenue, Overland Park, Kansas 66211.

{01957112;v1 }

procedural purposes and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

3. YRC has defaulted on its payment obligations under the Lease by, *inter alia*, failing to pay (a) post-petition rent for the months of October and November in the total amount of $10,904.00, (b) real estate taxes for the second half of 2023 in the amount of $4,694.40, and (c) storm water fees totaling $2,469.60.

4. As a result of YRC's default and nonperformance under the Lease, MAD has incurred attorneys' fees and costs estimated in the amount of $4,000.00 through November 9, 2023.[2] The Lease provides,

> *Each party (the "Indemnitor") agrees to indemnify, defend and hold the other party (the "Indemnitee") harmless from and against any and all losses, damages, claims, suits, actions, judgments, liabilities and expenses, including, without limitation, environmental damages and remediation expenses, reasonable attorneys' fees (collectively, "Losses"), arising out of, or with respect to: (A) any breach of any warranty or representation or any covenant or agreement of the Indemnitor under this Lease . . . .*

(Lease, Section 19.)

5. Additionally, YRC has failed to maintain the Premises as required by the Lease. Sections 10 and 11 of the Lease state as follows:

> *10.   Maintenance and Repairs by Landlord.  Landlord, at its sole cost and expense and subject to the provisions of Section 11, shall perform all necessary maintenance and repairs with respect to all of the following portions of the Premises in accordance with the standards set forth in Section 17.l(A):*
>
> *10.1   The structure and exterior of the building located on the Premises, including, without limitation, the roof and roof membrane, exterior and interior bearing walls, floors, foundations, supports, skylights, roof vents, drains and downspouts, and overhead and/or underground electrical, gas, plumbing and sewage lines that are a part of the Premises or in the slab of such building; and*
>
> *10.2   All portions of the Premises covered by any warranties obtained or provided in connection with any Landlord Improvement Work or Expansion (as provided in Section 29) to the extent and for the duration of such warranties, together with all maintenance, repairs and replacements required as the result of any defects in*

---

[2] MAD will provide a statement of its current attorneys' fees upon request.

{01957112;v1 }                                 2

*design, workmanship or materials relating to Landlord's Improvement Work or Expansion; and*

    *10.3    Replacement (to the extent required as the result of any noncompliance with the Plans and Specifications or defective workmanship or materials) of the substructure of the yard, parking, drive and other hard-surfaced areas of the Premises, together with curbs and walkways.*

*11.    <u>Maintenance and Repairs by Tenant.</u> Subject to the provisions of Section 10, Tenant, at its sole cost and expense, from and after the Commencement Date and continuing during the Term,* **shall keep the Premises in a clean and orderly condition and shall perform all maintenance and repair to the Premises occasioned by Tenant's negligence or misconduct. Tenant shall also (a) maintain and repair the windows, doors, and overhead doors of the Premises, (b) maintain the landscaping of the Premises, (c) be responsible for periodic repaving and any patching and pothole maintenance of the yard, parking, drive, and other hard-surfaced areas of the Premises, and (d) maintain, repair and replace (if the same fail and cannot be repaired) the mechanical and utility systems serving the Premises, including without limitation, the heating, ventilating, air conditioning, electrical, plumbing, gas, telephone and communications lines and circuits (sometimes collectively referred to herein as the <u>"Mechanical and Utility Systems")</u>.** *Upon the completion of Landlord's Improvement Work or Expansion, Landlord shall assign to Tenant all warranties covering any such portions or components of the Premises. Notwithstanding the foregoing, in the event Tenant is required to make any repair to or replacement of the Mechanical and Utility Systems with a cost in excess of $5,000.00, Tenant shall first give Landlord written notice that such repair or replacement is required. Within five (5) days after receipt of such notice, Landlord may waive the requirement that Tenant perform such maintenance or repair. If Landlord does not waive such requirement within such five-day period, Tenant shall proceed with the repair or replacement and the cost thereof shall be amortized over the useful life of such repair or replacement. Unless agreed to otherwise, Tenant shall be responsible for paying the portion of such cost which is attributable to the remainder of the then-current Term, and Landlord shall reimburse Tenant for the remainder of such cost within thirty (30) days after Tenant's delivery to Landlord of an invoice therefor, failing which Tenant may offset such cost against Rent and other amounts payable by Tenant hereunder. With respect to the heating, ventilation, and air-conditioning systems <u>("HVAC")</u>, after any major repair or replacement Tenant shall be required to enter into and maintain, during the full remaining Term, a service contract with a mechanical contractor reasonably acceptable to Landlord for the continued service and maintenance on the HVAC equipment. If Tenant fails to perform its maintenance and repair obligations within (15) days after Landlord's delivery to Tenant of notice of the need therefor, then Landlord shall have the right, upon delivery of three (3) business days' notice to Tenant, to perform all or part of such maintenance and repairs, at the sole cost and expense of Tenant, and Tenant shall reimburse Landlord for such costs and expenses within thirty (30) days after Landlord's delivery to Tenant of an invoice therefor.*

(emphasis added)

    6.    A contractor estimate that details the costs of, without limitation, putting the

Premises in clean and orderly condition and making the repairs and replacements that YRC is responsible for is attached as **Exhibit B**. The estimate totals $361,589.00 (the "Estimate").[3]

7. YRC's failure to pay all rent, taxes, and storm-water fees due under the Lease, and its failure to perform its maintenance obligations under the Lease, have resulted in damage to MAD and a total balance due under the Lease of $383,614.00. A true and accurate ledger of amounts owed under the Lease is attached hereto as **Exhibit C**.

### B. Proposed Assumption or Assumption and Assignment of the Lease

8. On September 15, 2023, the Court entered its *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (Dkt. No. 575) (the "Bidding Procedures Order"), pursuant to which the Court approved, *inter alia*, procedures for the assumption or assumption and assignment of executory contracts and unexpired leases.

9. Pursuant to the Bidding Procedures Order, on October 26, 2023, the Debtors filed their Cure Notice, which identifies the Lease as an unexpired lease that may be assumed and indicates that the cure amount under the Lease is $5,452.00 (the "Proposed Cure Amount").

### **OBJECTION**

10. Section 365(a) of the Bankruptcy Code provides that a chapter 11 debtor may assume or reject an unexpired lease or executory contract subject to the Court's approval.

---

[3] MAD's investigation of the condition of the Premises and who is responsible for the cost of the repairs, replacements, and other work detailed in the Estimate is ongoing. MAD accordingly reserves the right to amend this Objection to add to, or subtract from, the Estimate.

{01957112;v1 }                                        4

Section 365(b)(1) conditions the assumption of such unexpired leases or executory contracts as follows:

> **(1)** If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> **(A)** cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> **(B)** compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> **(C)** provides adequate assurance of future performance under such contract or lease.

A. **YRC Must Cure Existing Defaults and Compensate for MAD's Pecuniary Loss.**

11. MAD objects to the Proposed Cure Amount as it does not reflect the correct amount currently necessary to cure all defaults under the Lease and to compensate MAD for all pecuniary loss resulting from such defaults.

12. As set forth above, MAD has reviewed its accounts and records and determined that YRC is in default of the Lease for, *inter alia*, nonpayment of rent, insurance, tax payments, and charges due and owing and for failing to perform its maintenance obligations under the terms of the Lease.

13. Further, MAD has incurred attorneys' fees related to the assumption or assumption and assignment of the Lease, which constitute "pecuniary loss" under section 365(b)(1)(B). *See In re Crown Books Corp.*, 269 B.R. 12 (Bankr. D. Del. 2001); *In re Williams*, No. 10-11108 BLS,

2011 Bankr. LEXIS 2463 (Bankr. D. Del. June 24, 2011).

14. As of the filing of this Objection, a total of $383,614.00 is due and owing under the Lease for past due rent, insurance, taxes, attorneys' fees, and damages to the Premises.

15. Rent and other charges continue to accrue under the terms of the Lease, and MAD continues to accrue attorneys' fees related to the assumption or assumption and assignment of the Lease. MAD reserves its right to supplement this Objection at the time of any assumption or assumption and assignment of the Lease with the current amount of rent, charges, accrued attorneys' fees, and other damages due under the terms of the Lease.

16. To the extent the Lease provides for the payment by YRC of any adjustments, reconciliations, or other charges that accrue under the Lease but are billed at a later date, including after the assumption or assumption and assignment of the Lease, the Cure Notice fails to provide for such charges. Any sale order or asset purchase agreement with respect to the Premises must provide for the payment of any adjustments, reconciliations, or other charges under the Lease that are related in whole or in part to the period of time prior to closing but are not billed until after closing in order to fully cure the defaults under the Lease.

17. The Proposed Cure Amount also does not include YRC's contractual obligations to indemnify MAD for events occurring prior to any assumption or assumption and assignment of the Lease. The Lease obligates YRC to indemnify and hold MAD harmless from and against various claims, liabilities, and expenses. Any assignee must assume liability for such obligations.

**B. YRC Must Provide Adequate Assurance of Future Performance.**

18. Before assuming or assuming and assigning the Lease, YRC must provide adequate assurance of future performance under the Lease pursuant to section 365(b)(1)(C). MAD requires that YRC or any assignee of the Lease provide sufficient evidence of their ability to perform their obligations under the terms of the Lease.

19. Further, all of the above-stated obligations of YRC under the Lease should be assumed by YRC and/or any assignee as part of any assumption or assumption and assignment of the Lease. MAD reserves its rights to object to any proposed assumption or assumption and assignment of the Lease absent strict compliance with the requirements of section 365(b)(1)(C).

## **RESERVATION OF RIGHTS**

20. MAD reserves all of its rights under the Lease and applicable law, including without limitation the right to supplement or amend this Objection to assert any additional amounts due and owing under the Lease or to assert any further objection related to the proposed assumption or assumption and assignment of the Lease.

WHEREFORE, MAD respectfully requests that this Court enter an Order (1) denying the Debtors' proposed assumption or assumption and assignment of the Lease; (2) requiring YRC to pay all amounts due under the Lease and provide adequate assurance of future performance by the reorganized Debtors or any assignee; and (3) granting such other relief the Court deems just and proper.

| | |
|---|---|
| Dated: November 9, 2023<br>Wilmington, Delaware | **ASHBY & GEDDES, P.A.**<br><br>*/s/ Gregory A. Taylor*<br>Gregory A. Taylor (DE Bar No. 4008)<br>500 Delaware Avenue, 8th Floor<br>Wilmington, Delaware 19899-1150<br>Tel: (302) 654-1888<br>Email: gtaylor@ashbygeddes.com<br><br>-and-<br><br>**SPOTTS FAIN PC**<br>Neil E. McCullagh, Esq.<br>411 E. Franklin Street, Suite 600<br>Richmond, VA 23219<br>Tel: (804) 697-2064<br>Email: nmccullagh@spottsfain.com<br><br>*Counsel to MAD Acquisitions, LLC* |