## Exhibit A

LEASE

Between

MAD ACQUISITIONS, LLC

and

YRC INC

KCP-1665873-v2-YRC021009

# TABLE OF CONTENTS

**Page**

1.    Demise; Premises ........................................................................................... 1
2.    Term .............................................................................................................. 1
    2.1    Primary Term ...................................................................................... 1
    2.2    Extension Terms .................................................................................. 1
    2.3    Term of this Lease .............................................................................. 1
3.    Rent .............................................................................................................. 1
4.    Real Estate Taxes and Assessments ............................................................. 1
    4.1    Payment by Landlord .......................................................................... 1
    4.2    Reimbursement in Full of Taxes and Assessments ............................ 2
    4.3    Right to Contest .................................................................................. 2
5.    Utilities ........................................................................................................ 2
6.    Landlord's Improvement Work ..................................................................... 2
    6.1    Inspection ............................................................................................ 2
    6.2    Punchlist ............................................................................................. 2
    6.3    Completion of Punchlist Repairs and Landlord's Work .................... 3
    6.4    Increase in Rent .................................................................................. 3
7.    Possession of Premises ................................................................................ 3
8.    Tenant Improvements ................................................................................... 3
9.    Trade Fixtures; Personal Property ................................................................ 3
10.   Maintenance and Repairs by Landlord ......................................................... 4
11.   Maintenance and Repairs by Tenant ............................................................ 4
12.   Insurance ...................................................................................................... 5
    12.1    Property Insurance ............................................................................ 5
    12.2    Public Liability Insurance ................................................................. 5
    12.3    Certificates ........................................................................................ 5
13.   Damage or Destruction ................................................................................ 5
    13.1    Repair and Restoration ...................................................................... 5
    13.2    Rights of Termination ....................................................................... 6
14.   Eminent Domain ........................................................................................... 6
    14.1    Repair and Restoration ...................................................................... 6

|       | 14.2 | Rights of Termination | 7 |
| 15. | | Tenant's Default; Landlord's Remedies | 7 |
| | 15.1 | Tenant Default | 7 |
| | 15.2 | Landlord's Remedies | 7 |
| 16. | | Landlord's Default; Tenant's Remedies | 8 |
| 17. | | Warranties and Representations | 8 |
| | 17.1 | Compliance with Laws | 8 |
| | 17.2 | Warranty of Title | 9 |
| | 17.3 | Fuel Tanks | 9 |
| | 17.4 | Hazardous and Toxic Conditions | 9 |
| | 17.5 | Broker's Commission | 10 |
| 18. | | Landlord's Right of Entry | 10 |
| 19. | | Mutual Indemnification | 10 |
| 20. | | Transfers | 10 |
| | 20.1 | Assignment and Subletting | 11 |
| | 20.2 | Notice of Sale | 11 |
| 21. | | Holding Over | 11 |
| 22. | | Quiet Enjoyment | 11 |
| 23. | | Subordination and Attornment | 11 |
| 24. | | Surrender of Premises | 12 |
| 25. | | Notices; Computation of Time | 12 |
| 26. | | Recording | 13 |
| 27. | | Signs | 13 |
| 28. | | Miscellaneous | 13 |
| 29. | | Expansion | 14 |
| | 29.1 | Plans | 14 |
| | 29.2 | Bids; Budget | 14 |
| | 29.3 | Construction | 15 |
| | 29.4 | Insurance Required | 15 |
| | 29.5 | Final Accounting | 15 |
| | 29.6 | Expansion Rent | 15 |
| | 29.7 | Capitalization Rate | 15 |

| Exhibit | Description | Reference Section |
|---------|-------------|-------------------|
| A | Premises | 1 |
| B | Landlord's Work | 6 |
| C | Tenant's Work | 8 |
| D | Disclosures | 17.2, 23 |

# LEASE

THIS LEASE (the "Lease") is made as of the _19_ day of _JUNE_ , 200_9_ (the "Commencement Date"), between MAD ACQUISITIONS, LLC, a Virginia Limited Liability Company, as landlord (the "Landlord"), and YRC Inc., a Delaware corporation, as tenant (the "Tenant").

1.    Demise; Premises.  In consideration of the undertakings of the parties contained herein, Landlord leases to Tenant, and Tenant leases from Landlord, the real property, and all improvements and fixtures, located for street numbering purposes at 1665 Seibel Dr NE, Roanoke, VA 24012 (the "Premises") for use as a truck terminal, freight distribution and warehouse facility, and for related uses and any other use permitted by law, on the terms and conditions contained in this instrument.  The Premises is further described by metes and bounds (or other legal description) or by diagram on Exhibit A, attached hereto.

2.    Term.

2.1    Primary Term.  The primary term of this Lease shall be for a period of ten (10) years (the "Primary Term"), commencing on the Commencement Date and terminating on the day before the date that is the tenth (10th) anniversary of the Commencement Date, unless this Lease shall be earlier terminated as hereinafter provided.

2.2    Extension Terms.  Tenant shall have the option to extend the term of this Lease for up to two additional five-year periods (each an "Extension Term"), upon the same terms and conditions of this Lease, except as otherwise provided in Section 3(B), below.  Tenant shall deliver to Landlord notice of its election so to extend the term of this Lease on or before the date that is  ninety (90) days prior to the expiration of the then-current term.

2.3    Term of this Lease.  The Primary Term and all Extension Terms elected by Tenant sometimes shall be referred to collectively as the "Term."

3.    Rent.  During the Term of this Lease, Tenant shall pay to Landlord, at the address set forth in Section 26, rent in monthly installments as set forth in Subparagraphs (A), (B), and (C) below (the "Rent").  Rent shall be payable in advance on or before the first business day of each calendar month.  Rent for any partial month during the Term shall be prorated.

(A)    Primary Term:  Monthly installments of $4,956.00

(B)    First Extension Term:  Monthly installments of $5,452.00

(C)    Second Extension Term:  Monthly installments of $5,724.00

4.    Real Estate Taxes and Assessments.

4.1    Payment by Landlord:  During the Term of this Lease, Landlord shall pay, as the same may become due and payable and before any fine, penalty, interest or other

charge may be added for nonpayment, all real estate taxes and assessments, general and special, against the Premises.

4.2     Reimbursement in Full of Taxes and Assessments: Notwithstanding the provisions of Section 4.1, Tenant shall reimburse Landlord for the real estate taxes and assessments, general and special, levied against the Premises (the "Taxes and Assessments") for each twelve (12) month period of the Term from and after the Commencement Date (a "Lease Year"); provided, however, that Tenant shall reimburse Landlord for assessments only to the extent that such assessments shall be attributable to the Term, amortized over the longest permissible term and paid in periodic installments with other real estate taxes. Reimbursement shall be made by Tenant to Landlord within thirty (30) days after Landlord's delivery to Tenant of a paid tax bill showing payment in full of the Taxes and Assessments currently due and payable. In no event shall Tenant be responsible for paying any share of: (a) any increase in taxes attributable to Landlord's sale or transfer of the Premises (or any interest therein) during the Term in situations where state or local law allows a deferral of payment of Taxes and Assessments until the Premises are sold; or (b) any income, franchise, estate, inheritance or other taxes or assessments which shall not be denoted specifically as real estate taxes or assessments.

4.3     Right to Contest: Tenant may initiate proceedings to contest the Taxes and Assessments. If required by law, Landlord shall join in any such proceedings initiated by Tenant, provided that Tenant shall pay all costs and expenses, charges, interest and penalties in connection therewith, including reasonable costs and expenses incurred by Landlord. Tenant shall continue to reimburse Landlord under Section 4.2 for all Taxes and Assessments which Landlord is or becomes obligated to pay pursuant to Section 4.1 during the pendency of any such proceedings. Upon conclusion of such proceedings, Tenant shall be entitled to credit for any Taxes and Assessments refunded to Landlord as a result of any such proceedings.

5.     Utilities. During the Term, Tenant shall pay for all utility services consumed by Tenant upon the Premises, including without limitation gas and electricity, sanitary and storm sewer, water and telephone services.

6.     Landlord's Improvement Work.

6.1     Inspection. Within ten (10) business days after the Commencement Date, representatives of Landlord and Tenant shall make a joint inspection of the Premises, and the results of such inspection shall be reduced to a written memorandum executed on behalf of each party (the "Inspection Report"). The Inspection Report shall constitute a part of this Lease and be conclusive with respect to the condition of the Premises on the Commencement Date.

6.2     Punchlist. The Inspection Report shall identify any items or maintenance, repair, or replacement requested by Tenant that Landlord agrees to make (the "Punchlist Repairs"), together with the deemed cost of the same, as determined between Landlord and Tenant (the "Punchlist Cost").

6.3     Completion of Punchlist Repairs and Landlord's Work.  At the same time as Landlord completes the Expansion (as provided in Section 29), but in no event later than June 1, 2009, Landlord shall, at its sole cost and expense, complete the Punchlist Repairs and the work set forth on Exhibit B under the caption "Landlord's Work," and shall obtain any necessary certificates of occupancy (the Punchlist Repairs and the Landlord's Work being collectively referred to as the "Landlord Improvements"). Landlord shall perform the Landlord Improvements in accordance with Section 17.1(A), and in a manner such that there shall be no unreasonable or material interruption, disruption or delay in the performance of Tenant's work at the Premises, including, but not limited to, the Tenant Improvements.

6.4     Increase in Rent.  Upon the completion of the Landlord Improvements, the Rent due for the remainder of the Primary Term shall be increased by an amount determined by applying an annual capitalization rate of 9.22% to the total Punchlist Cost (which shall not include the cost of any items identified on Exhibit B as Landlord's Work) over the remainder of the Primary Term.

7.     Possession of Premises.  Tenant has been in possession of the Premises prior to the Commencement Date, and such possession shall continue uninterrupted on the Commencement Date and for the remaining Term.

8.     Tenant Improvements.  Subject to obtaining Landlord's written consent for structural improvements (which consent shall not be unreasonably withheld and has been given with respect to all structural items referred to on Exhibit C under the caption "Tenant's Work"), Tenant, at its sole cost and expense, shall have the right, but shall not be obligated, prior to and during the Term to improve, alter, and renovate the Premises in any manner which Tenant deems necessary or desirable to adapt the same for the conduct of its business operations, including, without limitation, performing the following items (which the parties agree are non-structural in nature): painting, decorating, redecorating, and installing non-load-bearing partitions, pass-through windows, counters, shelving, floor coverings, wall coverings, drop ceilings and light fixtures (all of the work referred to in this Section 9 being collectively referred to as the "Tenant's Improvement Work").  Tenant shall perform all work described in this Section according to the standards set forth in Section 17.1(B).  Unless otherwise agreed in writing by the parties, and subject to Section 9, any improvements, alterations and renovations to the Premises by Tenant pursuant to this Section shall remain on the Premises upon the expiration or earlier termination of this Lease.

9.     Trade Fixtures; Personal Property.  Tenant, at its sole cost and expense, shall have the right, but shall not be obligated, to install, use, replace, and remove its trade fixtures and personal property, such as, without limitation, telephone, teletype and other communications equipment, machinery, modular docks, office furniture, and office trailers.  Upon the expiration of the Term or the earlier termination of this Lease, Tenant shall have the right to remove such trade fixtures and personal property from the Premises, provided that Tenant shall repair all damage to the Premises resulting from such removal.

10. <u>Maintenance and Repairs by Landlord</u>. Landlord, at its sole cost and expense and subject to the provisions of Section 11, shall perform all necessary maintenance and repairs with respect to all of the following portions of the Premises in accordance with the standards set forth in Section 17.1(A):

10.1 The structure and exterior of the building located on the Premises, including, without limitation, the roof and roof membrane, exterior and interior bearing walls, floors, foundations, supports, skylights, roof vents, drains and downspouts, and overhead and/or underground electrical, gas, plumbing and sewage lines that are a part of the Premises or in the slab of such building; and

10.2 All portions of the Premises covered by any warranties obtained or provided in connection with any Landlord Improvement Work or Expansion (as provided in Section 29) to the extent and for the duration of such warranties, together with all maintenance, repairs and replacements required as the result of any defects in design, workmanship or materials relating to Landlord's Improvement Work or Expansion; and

10.3 Replacement (to the extent required as the result of any noncompliance with the Plans and Specifications or defective workmanship or materials) of the substructure of the yard, parking, drive and other hard-surfaced areas of the Premises, together with curbs and walkways.

11. <u>Maintenance and Repairs by Tenant</u>. Subject to the provisions of Section 10, Tenant, at its sole cost and expense, from and after the Commencement Date and continuing during the Term, shall keep the Premises in a clean and orderly condition and shall perform all maintenance and repair to the Premises occasioned by Tenant's negligence or misconduct. Tenant shall also (a) maintain and repair the windows, doors, and overhead doors of the Premises, (b) maintain the landscaping of the Premises, (c) be responsible for periodic repaving and any patching and pothole maintenance of the yard, parking, drive, and other hard-surfaced areas of the Premises, and (d) maintain, repair and replace (if the same fail and cannot be repaired) the mechanical and utility systems serving the Premises, including without limitation, the heating, ventilating, air conditioning, electrical, plumbing, gas, telephone and communications lines and circuits (sometimes collectively referred to herein as the "<u>Mechanical and Utility Systems</u>"). Upon the completion of Landlord's Improvement Work or Expansion, Landlord shall assign to Tenant all warranties covering any such portions or components of the Premises. Notwithstanding the foregoing, in the event Tenant is required to make any repair to or replacement of the Mechanical and Utility Systems with a cost in excess of $5,000.00, Tenant shall first give Landlord written notice that such repair or replacement is required. Within five (5) days after receipt of such notice, Landlord may waive the requirement that Tenant perform such maintenance or repair. If Landlord does not waive such requirement within such five-day period, Tenant shall proceed with the repair or replacement and the cost thereof shall be amortized over the useful life of such repair or replacement. Unless agreed to otherwise, Tenant shall be responsible for paying the portion of such cost which is attributable to the remainder of the then-current Term, and Landlord shall reimburse Tenant for the remainder of such cost within thirty (30) days after Tenant's delivery to Landlord of an invoice therefor, failing which Tenant may offset such cost against Rent and other amounts payable by Tenant hereunder. With respect to the heating, ventilation, and air-conditioning systems ("<u>HVAC</u>"), after any major

D·2

repair or replacement Tenant shall be required to enter into and maintain, during the full remaining Term, a service contract with a mechanical contractor reasonably acceptable to Landlord for the continued service and maintenance on the HVAC equipment. If Tenant fails to perform its maintenance and repair obligations within (15) days after Landlord's delivery to Tenant of notice of the need therefor, then Landlord shall have the right, upon delivery of three (3) business days' notice to Tenant, to perform all or part of such maintenance and repairs, at the sole cost and expense of Tenant, and Tenant shall reimburse Landlord for such costs and expenses within thirty (30) days after Landlord's delivery to Tenant of an invoice therefor.

12.    Insurance.

12.1    Property Insurance. At all times during the Term, Tenant, at its sole cost and expense, shall maintain property insurance insuring the Premises (excluding foundations) against loss or damage resulting from perils covered by the causes of loss – special form (or the equivalent ISO form in use from time to time in the state where the Premises are located). Such property insurance shall be written on a replacement cost basis in the full insurable replacement cost of the Property, and may be provided under Tenant's blanket insurance policy in effect from time to time. Such insurance policy shall name Landlord, Landlord's lender of which Tenant has written notice, and Tenant as insureds, as their interests may appear.

12.2    Public Liability Insurance. At all times during the Term of this Lease, Tenant shall maintain in full force and effect:

(A)    Commercial General Liability Insurance for the Premises with limits of $1,000,000 combined single limit for bodily injury and property damage;

(B)    Commercial Automobile Liability Insurance for the Premises with limits of $1,000,000 combined single limit for bodily injury and property damage; and

(C)    Workers' Compensation coverage in accordance with statutory requirements of the state in which the Premises are located.

Liability policies shall include Landlord as an additional insured to the extent of the indemnification provided herein and may be provided under Tenant's blanket insurance policy in effect from time to time.

12.3    Certificates. Insurance policies shall be evidenced by a certificate of insurance delivered to Landlord upon execution of this Lease. Tenant's insurance broker shall endeavor to notify Landlord at least 30 days before any cancellation or material change coverage.

13.    Damage or Destruction.

13.1    Repair and Restoration. In the event that the Premises shall be damaged or destroyed by fire, casualty, or other risk required to be insured against pursuant to Section 12.1, Tenant promptly shall deliver to Landlord notice thereof. Unless

ᴅ2

terminated pursuant to Section 13.2, this Lease shall remain in full force and effect, and Landlord, at its sole cost and expense, but with the right to use insurance proceeds to the extent of Landlord's interest therein, shall promptly repair the damage or destruction and restore the Premises to substantially that condition existing immediately prior to such damage or destruction. If Tenant remains in occupancy of the Premises, Landlord shall exercise such repair and restoration efforts in a manner so as not to interfere unreasonably with the use and occupancy of the Premises by Tenant for the conduct of its business operations. Until the completion of Landlord's repair and restoration pursuant to this Section, Tenant's obligation to pay Rent and other amounts payable by Tenant hereunder shall be abated as of the date of the damage or destruction in proportion to the extent that the value of the Premises for the use and occupancy thereof by Tenant for the conduct of its business operations shall be reduced, in Tenant's reasonable judgment.

13.2   <u>Rights of Termination</u>. Landlord's and Tenant's respective rights to terminate this Lease upon the occurrence of certain damage or destruction shall be governed as follows:

(A)   If the Premises shall be damaged or destroyed to the extent of more than fifty percent (50%) of the full replacement cost thereof, then either Landlord or Tenant may elect to terminate this Lease by delivery of notice to the other within thirty (30) days after the date of such damage or destruction; or

(B)   If any portion of the Premises shall be rendered untenantable, in Tenant's reasonable judgment, for the use and occupancy thereof by Tenant for the conduct of its business operations as a result of any damage or destruction, or if Tenant reasonably shall anticipate that the repair and restoration of any such damage or destruction shall not be completed within sixty (60) days after the date of the damage or destruction and Landlord shall not have provided Tenant with temporary substitute premises acceptable to Tenant, in Tenant's reasonable judgment, then Tenant may elect to terminate this Lease by delivery of notice to Landlord within thirty (30) days after the date of such damage or destruction; and

(C)   Upon delivery of any notice pursuant to Section 13.2(A) or 13.2(B), this Lease shall terminate as of the date of the damage or destruction unless otherwise provided in such notice, and Tenant shall have no further liabilities or obligations hereunder other than to pay Rent accrued hereunder as of the date of such termination.

14.   <u>Eminent Domain</u>.

14.1   <u>Repair and Restoration</u>. In the event that any portion of the Premises shall be taken or threatened to be taken under the power of eminent domain or settlement in lieu thereof for any public or quasi-public use, Landlord promptly shall deliver to Tenant notice thereof. Unless terminated pursuant to Section 14.2, this Lease shall remain in full force and effect, and Landlord, at its sole cost and expense, shall repair the damage and restore the Premises so as to constitute the remaining portion thereof a complete architectural unit. If Tenant remains in occupancy of the Premises, Landlord shall

exercise such repair and restoration efforts in a manner so as not to interfere unreasonably with the use and occupancy of the Premises by Tenant for the conduct of its business operations. Until the completion of Landlord's repair and restoration pursuant to this Section, Tenant's obligation to pay Rent and other amounts payable by Tenant hereunder shall be abated as of the date on which possession of the Premises or portion thereof shall be required by the public or quasi-public body in proportion to the extent that the value of the Premises for the use and occupancy thereof by Tenant for the conduct of its business operations shall be reduced, in Tenant's reasonable judgment.

14.2   Rights of Termination. If, as a result of any of the events for which notice is required to be given to Tenant under Section 14.1, the Premises no longer shall be fit and suitable for the use and occupancy thereof by Tenant for the conduct of its business operations by reason of a material reduction of any portion of the Premises, Tenant may elect to terminate this Lease by delivery of notice to Landlord. In such event, this Lease shall terminate effective as of the later to occur of (A) the date of actual vacation of the Premises by Tenant, or (B) a date not more than sixty (60) days in advance of the date on which possession of the Premises are required by the public or quasi-public body; and thereupon Tenant shall have no further liabilities or obligations hereunder other than to pay Rent accrued hereunder as of such date of termination.

15.   Tenant's Default; Landlord's Remedies.

15.1   Tenant Default. Each of the following events shall constitute a default of this Lease by Tenant (a "Tenant Default"):

(A)   The failure of Tenant to pay any Rent or other amount payable by Tenant hereunder within ten (10) days after the date on which Tenant receives from Landlord notice specifically describing such failure; and

(B)   Subject to cure by Landlord under Section 11, the failure of Tenant to perform any other term, condition, covenant or obligation of this Lease on the part of Tenant to be performed within thirty (30) days after the date on which Tenant receives from Landlord notice specifically describing such failure; provided, however, that if Tenant shall exercise in good faith diligent efforts within such thirty (30) day period to cure the failure specified in the notice but shall not be able to do so using reasonable efforts, then any such failure shall not be considered a Tenant Default so long as Tenant shall continue to exercise in good faith such diligent efforts to cure such failure and shall do so within a reasonable period of time.

15.2   Landlord's Remedies. In the event of a Tenant Default, Landlord shall have the following rights and remedies which shall be exercisable three (3) business days after the date on which Tenant receives from Landlord additional notice with respect thereto:

(A)   To enter upon the Premises and again have, repossess, and enjoy the same as if this Lease had not been made, and all terms, conditions, covenants

and obligations of this Lease on the part of Landlord to be performed shall cease and terminate, without prejudice, however, to the right of Landlord to recover from Tenant all Rent accrued hereunder as of the date of such entry by Landlord; and

(B)     To relet the Premises for the remainder of the Term for the highest rent reasonably obtainable and to recover from Tenant any deficiency, as it accrues, between the amount so obtained and Rent payable by Tenant hereunder; provided, however, that Landlord shall be obligated in such event to exercise in good faith diligent efforts to mitigate its damages by reletting the Premises for the highest rent reasonably obtainable under the circumstances; and

(C)     To pursue all other rights and remedies to which Landlord may be entitled hereunder, at law or in equity.

16.     <u>Landlord's Default; Tenant's Remedies</u>.  In the event of any failure by Landlord to perform any term, condition, covenant or obligation of this Lease on the part of Landlord to be performed within fifteen (15) days after the date on which Landlord receives from Tenant notice specifically describing such failure, except in the event such failure impairs Tenant's ability to use and occupy the Premises for the conduct of its business operations (an "<u>Emergency</u>"), in which case no notice or opportunity to cure shall be required, Tenant (in addition to all other remedies to which Tenant may be entitled under this instrument or at law or in equity) may cure such default by Landlord on behalf of, and at the sole cost and expense of, Landlord, including a supervision charge of twenty percent (20%) of all costs and expenses incurred by Tenant. Landlord shall reimburse Tenant for its costs and expenses in connection therewith within thirty (30) days after Tenant's delivery to Landlord of an invoice therefor, failing which Tenant may offset such costs and expenses against any Rent and other amounts payable by Tenant hereunder. The foregoing notwithstanding, except in the event of an Emergency, if Landlord shall exercise in good faith diligent efforts within such fifteen (15) day period to cure the failure specified in the notice but shall not be able to do so using reasonable efforts, then any such failure shall not be considered a default of this Lease by Landlord so long as Landlord shall continue to exercise in good faith such diligent efforts to cure such failure and shall do so within a reasonable period of time.

17.     <u>Warranties and Representations</u>.

17.1    <u>Compliance with Laws</u>.

(A)     Landlord warrants and represents that Landlord's Improvement Work, the improvements located on the Premises, and Landlord's maintenance and repairs under Section 10 shall be done in a good and workmanlike manner and comply with all laws, ordinances and requirements, including without limitation the procuring of all building and other permits, licenses, approvals and certificates of occupancy and the observance of applicable building, zoning and other code requirements of governmental authorities with competent jurisdiction. Notwithstanding any provision of this Lease to the contrary, if any improvements, alterations or renovations to the Premises shall be required by any law, ordinance

or requirement of any governmental authority with competent jurisdiction, then Landlord, at its sole cost and expense, shall perform such improvements, alterations or renovations in a timely manner.

(B)    Tenant represents and warrants that Tenant's Improvement Work, its maintenance and repairs, and its use and occupancy of the Premises for the conduct of its business operations shall comply with all applicable laws, ordinances and requirements of governmental authorities with competent jurisdiction; provided, however, that: (i) no alleged violation by Tenant of any such law, ordinance or requirement shall be deemed to constitute a Tenant Default so long as Tenant shall contest, in good faith, the validity of such law, ordinance or requirement or the existence of the alleged violation thereof; and (ii) Tenant shall not be obligated to incur costs or expenses for improvements, alterations or renovations to the Premises required from time to time by any applicable law, ordinance or requirement of a governmental authority with competent jurisdiction.

17.2    Warranty of Title.  Landlord warrants and represents that: (A) Landlord is the fee simple owner of the Premises with full authority to execute, deliver and perform this Lease; and (B) as of the date of this Lease, no third party has any right, title or interest adverse to Tenant's right, title and interest hereunder in the Premises and no mortgage or deed of trust or other lien or restriction encumbers the Premises, except as set forth in Exhibit D, if applicable.

17.3    Fuel Tanks.  Landlord and Tenant each agrees that it shall not install, cause to be installed, or permit the installation of, any additional underground or above ground fuel storage tanks or related piping, venting and dispensing systems (collectively, "Fuel Tanks") within the physical boundaries of the Premises during the Term.  Tenant, at its sole cost and expense, from and after the Commencement Date and continuing during the Term, shall be responsible for the proper operation, orderly condition, and perform all maintenance and repair to the existing fueling system.  The existing fueling system includes but is not limited to all underground/above ground tanks, related piping, venting and dispensing systems.  Tenant shall operate, maintain, test and keep proper accounting records of the fueling system in accordance with all applicable federal, state and local requirements and regulations.  Tenant shall maintain the necessary insurance required by all applicable federal, state and local requirements and regulations and shall provide the Landlord written copy of such on an annual basis.  Tenant shall be responsible for all acts of negligence or misconduct with regards to the operation and maintenance of the fueling system

17.4    Hazardous and Toxic Conditions.

(A)    If a toxic or hazardous condition not caused by Tenant is discovered on the Premises at any time during or after the Term, then (i) Landlord shall (a) promptly give Tenant written notice of such condition and (b) immediately cause such toxic or hazardous condition to be remediated and brought into compliance with applicable laws, ordinances, and requirements of

governmental authorities with competent jurisdiction, and (ii) Landlord agrees to indemnify Tenant pursuant to the provisions of Section 19 hereof against any Losses (as defined in Section 19) incurred by Tenant arising out of any such newly-discovered toxic or hazardous condition.

(B)     If a toxic or hazardous condition is discovered on the Premises that was caused by Tenant, then (i) Tenant shall (a) promptly give Landlord written notice of such condition and (b) immediately cause such toxic or hazardous condition to be remediated and brought into compliance with applicable laws, ordinances and requirements of governmental authorities with competent jurisdiction, and (ii) Tenant agrees to indemnify Landlord pursuant to the provisions of Section 19 hereof against any Losses incurred by Landlord arising out of any such Tenant-caused toxic or hazardous condition.

17.5     Broker's Commission.  Landlord and Tenant each warrants and represents for the benefit of the other that neither has employed any broker or agent in connection with this Lease, other than DES Real Estate Services, Inc., who is acting as agent for the Tenant and for whose fee Tenant shall be responsible under a separate agreement.  Each party agrees to indemnify and hold harmless the other for any claims, obligations, liabilities, damages, costs and expenses arising from a breach of their representation or warranty under this Section.

18.     Landlord's Right of Entry.  Following reasonable notice to Tenant, Landlord may enter upon the Premises as often as Landlord may deem reasonably necessary for the purposes of performing such maintenance and repairs, inspecting the Premises, offering the Premises for lease (but only during the period which commences ninety (90) days prior to the expiration of the Term ) or offering the Premises for sale.  Landlord's right of entry shall be exercised in a manner and at times such that there shall be no unreasonable interference with the use and occupancy of the Premises by Tenant for the conduct of its business operations.

19.     Mutual Indemnification.  Each party (the "Indemnitor") agrees to indemnify, defend and hold the other party (the "Indemnitee") harmless from and against any and all losses, damages, claims, suits, actions, judgments, liabilities and expenses, including, without limitation, environmental damages and remediation expenses, reasonable attorneys' fees (collectively, "Losses"), arising out of, or with respect to: (A) any breach of any warranty or representation or any covenant or agreement of the Indemnitor under this Lease; or (B) any injury to, or death of, persons and/or any damage to, or destruction of, property, on or about the Property and attributable to the negligence or misconduct of the Indemnitor, or its officers, employees, agents, contractors, or invitees, except to the extent any such breach, any injury or death or any damage or destruction is attributable to the negligence or misconduct of the Indemnitee, or any of its officers, employees, agents, contractors or invitees, or as otherwise specifically provided in this Lease; provided, however, that the indemnification obligation created by this Section shall be expressly conditioned upon the Indemnitee (i) delivering to the Indemnitor prompt notice of any event giving rise to such indemnification obligation and (ii) providing the Indemnitor the opportunity to defend itself from and against any Losses.

20.     Transfers.

20.1   <u>Assignment and Subletting</u>. Except as provided in this Section, Tenant shall not assign this Lease nor sublet any portion of the Premises without the consent of Landlord, which consent shall not be unreasonably withheld or delayed; provided, however, that Tenant shall have the right, without the consent of Landlord, to assign this Lease or sublet any portion of the Premises to any entity controlling, controlled by or under common control with Tenant or to any successor by merger, consolidation or purchase of assets. Absent the written agreement of Landlord, no assignment of this Lease or subletting of all or any portion of the Premises shall relieve Tenant of any of the terms, conditions, covenants and obligations of this Lease on the part of Tenant to be performed.

20.2   <u>Notice of Sale</u>. If Landlord desires to sell the Premises, Landlord shall, in each case, inform Tenant by notice under Section <u>26</u> hereof.

21.   <u>Holding Over</u>. If Tenant shall continue to occupy the Premises after the expiration or earlier termination of this Lease, then Tenant shall be deemed to be occupying the Premises as a tenant from month-to-month, subject to the terms and conditions of this Lease; provided, however, that either party shall have the right to terminate such month-to-month tenancy upon delivery of thirty (30) days' notice to the other and the rent shall be one hundred twenty-five percent (125%) of the rent charged in the last full month before expiration of the term of this Lease or earlier termination of the Lease.

22.   <u>Quiet Enjoyment</u>. Landlord covenants and agrees that Tenant shall have the peaceful and quiet possession and enjoyment of the Premises (subject to all mortgages and other matters to which this Lease, is or shall become, subordinate in accordance with the provisions of Section 23) for the conduct of its business operations during the Term, without hindrance by Landlord or any party whatsoever.

23.   <u>Subordination and Attornment</u>. Tenant covenants and agrees, on the terms and conditions provided in this Section, that this Lease shall be subordinate to any institutional mortgage or deed of trust that now or hereafter shall encumber the Premises, provided that each mortgagee or beneficiary shall execute and deliver to Tenant a non-disturbance, attornment and subordination agreement stating (in addition to other reasonable terms, if any) in substance that (A) if Tenant is not in default hereunder, the right of possession of Tenant to the Premises shall not be affected or disturbed by any mortgagee in the exercise of any of its rights under a mortgage or the note secured thereby, and any sale of the Premises pursuant to the exercise of any rights and remedies under a mortgage or otherwise shall be made subject to Tenant's right of possession to the Premises under this Lease; and (B) Tenant shall attorn to any mortgagee or purchaser at a foreclosure sale (a "<u>Purchaser</u>") upon acquisition of title to the Premises by a mortgagee or Purchaser and notice to Tenant thereof, and this Lease shall continue in full force and effect between Tenant and such mortgagee or Purchaser. Upon Tenant's receipt and approval of such a non-disturbance/attornment agreement from a mortgagee or beneficiary from time to time, Tenant covenants and agrees to attorn to such mortgagee or beneficiary upon foreclosure. Without limiting the generality of the foregoing, within thirty (30) days after the date of this Lease, Landlord shall exercise Landlord's best efforts to deliver to Tenant such a non-disturbance/attornment agreement from the mortgagee and beneficiary of each mortgage and deed of trust, respectively, including without limitation all mortgages and deeds of trust set forth

in Exhibit D, now encumbering the Premises.  If Landlord shall fail to obtain any such non-disturbance/attornment agreement within such thirty (30) day period, or if the form thereof shall not be reasonably acceptable to Tenant, then Tenant may deem such failure a Landlord default.

24.     <u>Surrender of Premises</u>.  Upon the expiration or earlier termination of this Lease, Tenant shall deliver up and surrender the Premises to Landlord in as good order and condition as upon the Commencement Date, subject to:  (A) Tenant's improvements, alterations and renovations to the Premises, including without limitation Tenant's Improvement Work; (B) normal wear and tear and the effects of aging; (C) damage by fire, explosion, or other casualty; (D) repairs and restoration for which Tenant shall not be responsible hereunder; and (E) Tenant's removal of its trade fixtures.

25.     <u>Notices; Computation of Time</u>.  For the purposes of payments of Rent and other amounts payable by Tenant to Landlord hereunder and all other notices and communications between the parties, the addresses of Tenant and Landlord shall be as follows:

Tenant:

YRC Inc.
1077 Gorge Boulevard (44310)
P.O. Box 471
Akron, OH  44309-0471
Attention: Real Estate and Properties
FAX #:  (330) 258-6081

Landlord:

Mad Acquisitions, LLC
Attn: David Gauldin
PO Box 910
Newton, NC 28658
FAX #: (828) 466-1437

Any notices and other communications to be delivered by either party to the other pursuant to this Lease shall be in writing and shall be deemed delivered as follows, except as otherwise specifically provided in this Lease:  (A) when hand delivered or telecopied (provided that telecopied notices must be confirmed within any applicable time period plus two (2) days by one of the following methods of notice); (B) one (1) business day after mailing by Federal Express or other overnight courier service; or (C) three (3) business days after deposit (or, in the case of any notices sent by Tenant to Landlord for the purpose of exercising rights of first refusal and rights and options to extend the Primary Term or any Extension Term, to purchase any portion of the

Premises or Landlord's right, title and interest therein, upon deposit) in the United States mail by registered or certified mail, postage prepaid, return receipt requested, addressed to the party to be charged with notice at the above-recited address or the above-recited telecopier number or such other address or telecopier number as either party from time to time may designate by notice delivered to the other; provided, however, that no notice of change of address or telecopier number shall be deemed given until received by the party to be notified. Except as otherwise specifically provided herein, in the computation of any period of time which shall be required or permitted hereunder or under any law for any notice or other communication or for the performance of any term, condition, covenant or obligation, the day from which such period runs shall be excluded and the last day of such period shall be included unless it is a Saturday, Sunday or legal holiday, in which case the period shall be deemed to run until the end of the next day which is not a Saturday, Sunday or legal holiday.

26. <u>Recording</u>. If Landlord or Tenant requests, the parties shall execute and acknowledge a short form of lease for recording purposes, which short form of lease shall be recorded at the expense of the party requesting the same, which party shall pay any documentary transfer tax or other special tax or assessment associated with, or triggered by, such recording.

27. <u>Signs</u>. Tenant shall have exclusive sign rights for the Premises, exterior and interior, and shall have the right to erect and display signs on the Premises as Tenant reasonably may request, subject only to compliance with applicable laws, ordinances and requirements of governmental authorities with competent jurisdiction.

28. <u>Miscellaneous</u>:

28.1    This Lease: (i) contains the entire agreement between the parties and no promise, representation, warranty, covenant, agreement, or understanding not specifically set forth in this Lease shall be binding upon either party; (ii) may not be amended, modified, or supplemented in any manner except in writing signed by the parties; (iii) shall be construed and governed under the laws of the state where the Premises are located; (iv) shall not be construed more stringently in favor of one party against the other regardless of which party has prepared the same; (v) shall be binding upon, and inure to the benefit of, the parties and their respective heirs, executors, administrators, personal and legal representatives, successors, and permitted assigns; (vi) shall not be binding until this Lease shall be executed and delivered by the parties, to each other; and (vii) may be executed in counter parts, each of which shall be deemed an original, but which all together constitute the same instrument.

28.2    Any person executing this Lease on behalf of a corporation, trust, or partnership represents and warrants that such person is authorized to execute and deliver this Lease on behalf of the entity.

28.3    The failure of either party to insist upon strict performance of any provision of this Lease shall not be deemed a waiver of any rights or remedies at any other time.

28.4    The exhibits attached hereto are incorporated herein by this reference.

28.5    In the event of any conflict between this Lease and an exhibit, the exhibit shall control.

28.6    Headings are for convenience only and are not a part of this Lease.

28.7    The invalidity or unenforceability of any term or provision shall not affect the validity or enforceability of the remainder of this Lease.

28.8    The parties agree to obtain, execute, deliver, and file such additional documents, instruments, and consents as may be reasonably requested by either party, at the sole cost and expense of the requesting party, in order to fully effectuate the terms and conditions of this Lease.

29.    Expansion.

29.1    Plans. Tenant has requested Landlord expand the dock and yard on the Premises to meet Tenant's current needs (the "Expansion"). Tenant will provide its specific expansion requirements for the Expansion to Landlord in writing. Within thirty (30) days after receipt of such requirements, Landlord shall cause detailed plans and specifications of the Expansion (the "Preliminary Plans") to be prepared and submit them to Tenant. Within fifteen (15) days after receipt of the Preliminary Plans, Tenant shall review the same and either (A) approve the Preliminary Plans in writing, which approval shall not be unreasonably withheld, or (B) deliver to Landlord Tenant's detailed, written comments to the Preliminary Plans. If Tenant provides comments to any portion of the Preliminary Plans, Landlord shall cause the Preliminary Plans to be revised to address Tenant's comments, and the foregoing process shall be completed until Landlord and Tenant have agreed on the plans and specifications for the Expansion (the "Final Plans").

29.2    Bids; Budget. Landlord shall solicit bids from at least three different bona fide contractors and/or subcontractors, if applicable, for the construction of the Expansion. Based upon the bids received, Landlord shall prepare and submit to Tenant for approval, a project budget for the design and construction of the Expansion (the "Project Budget"). Landlord agrees to provide cost details, including any contractor/subcontractor bid proposals, to Tenant for review, if requested. Within 15 days after the date of Tenant's receipt of the proposed Project Budget, Tenant shall furnish to Landlord any objections it has with respect to the proposed Project Budget and shall advise Landlord as to which of Landlord's value engineering proposals Tenant elects to accept, if any. If Tenant objects to any line item entry in the proposed Project Budget that Landlord proposes on the basis of bids received from Landlord's contractor, subcontractors, or suppliers, Tenant may (i) cause Landlord to seek additional bids, or (ii) cause Landlord to negotiate with the bidder upon whose bid Landlord based that line item entry in an effort to reduce the amount for which that bidder is willing to provide the labor and materials that is the subject of its bid, or (iii) cause the engineer to revise the Final Plans to reduce the scope of the Expansion and thereby reduce the projected cost of the Expansion. Landlord shall revise the proposed Project Budget after giving effect to any value engineering proposals Tenant accepts and to any cost reductions that Landlord

is able to achieve as a result of any of the foregoing actions and shall submit the adjusted Project Budget to Tenant for Tenant's approval.

29.3   Construction. Within thirty (30) days after Landlord and Tenant have agreed upon the Final Plans and the Project Budget, Landlord shall, at its sole cost and expense, apply for all permits and approvals necessary to complete the Expansion (the "Permits"). Landlord shall diligently pursue the Permits. After the Permits have been obtained, Landlord shall proceed with the construction of the Expansion in a good and workmanlike manner, free of any and all liens, and in compliance with all applicable laws and the Final Plans. Landlord shall use good faith efforts to substantially complete the Expansion, secure a "Use and Occupancy Notice" permitting Tenant's lawful occupancy of the Expansion, and deliver possession of the Expansion to Tenant (collectively, "Substantial Completion") within one (1) year after the issuance of the Permits (the date upon which Substantial Completion is achieved being referred to as the "Completion Date"). The Completion Date may be extended due to any delay for a reasonable period of time caused by fire, the elements, strikes, lockouts, or other labor troubles, or any other cause, event or circumstance, whether similar or dissimilar to the foregoing, beyond the control of Landlord or Tenant or their respective contractors or subcontractors, as the case may be. Landlord shall deliver possession of the Expansion to Tenant in a clean, tenantable condition with all applicable mechanical and utility systems including, but not limited to all overhead doors, loading lights, dock levelers, etc. in fully operable condition.

29.4   Insurance Required. Prior to the Completion Date, Landlord shall maintain in force a policy of multiple peril (all-risk) builder's risk insurance with respect to the Expansion on a completed value basis in an amount equal to the full replacement cost of the Expansion.

29.5   Final Accounting. Within thirty (30) days following the Completion Date, Landlord shall provide Tenant with an accounting of the hard and soft costs Landlord incurred in the design and construction of the Expansion ("Expansion Cost"), along with such documentary support as Tenant reasonably requests.

29.6   Expansion Rent. Effective as of the Completion Date, the Primary Term shall be deemed to be extended to the last day of the month in which occurs the tenth (10th) anniversary of the Completion Date, and the Rent for the Primary Term shall be increased by an amount (the "Expansion Rent") equal to the product achieved by multiplying an 9.22% annual capitalization rate by the total Expansion Cost (for example: if the total expansion cost is $1,000,000, the monthly rental will increase $7,683.33 per month). Rent for the First Expansion Term, if Tenant exercises its options to the same, shall likewise be increased by ten percent (10%) over the Rent payable during the Primary Term; and Rent for the Second Expansion Term shall be increased by five percent (5%) over the Rent payable during the First Expansion Term. If the Completion Date occurs on a day other than the first day of a calendar month, the Expansion Rent allocable to the month in which the Completion Date occurs will be equal to the product achieved by multiplying the Expansion Rent, as calculated in the manner set forth above, by a fraction, the numerator of which is the number of days between the Completion Date

and the last day of that calendar month, inclusive, and the denominator of which is the total number of days in that calendar month. Tenant shall pay the Expansion Rent allocable to the month in which the Completion Date occurs within five (5) business days after the Completion Date. Landlord and Tenant shall execute an amendment to this Lease confirming the revised Rent and the dates of the Primary Term, but the failure to execute such amendment shall not preclude the self-operative nature of the foregoing provisions.

    29.7    <u>Capitalization Rate.</u> The 9.22% annual capitalization rate noted in Section 29.6 above only applies to the initial estimated twelve (12) door expansion of the terminal as well as any agreed to Punchlist Repairs resulting from the initial inspection described in Section 6.1, which are to be completed along with the initial expansion.

    [NO FURTHER TEXT ON THIS PAGE. SIGNATURE PAGE FOLLOWS.]

IN WITNESS WHEREOF, the parties have caused this Lease to be duly executed by each of their respective authorized representatives effective as of the date referred to in the Preamble on page 2 hereof.

"LANDLORD"

**Mad Acquisitions, LLC**

By:  David Gauldin II

By: _____

Name: _____

Its: _____MANAGER_____

Dated: _____MARCH 12, 2009_____

"TENANT"

**YRC Inc.**

By: _____

Name: _____Brad S. Schroeder_____

Its: _____Authorized Officer_____

Dated: _____6-17-2009_____

D2

EXHIBIT "A"

## Description of Premises

Property Address:  1665 Seibel Dr NE, Roanoke, VA  24012

Legal Description:  5.0 Acres Scott Land-Glade Creek

Property Description:  Truck terminal on 4.9998 acres.

Tax ID # 7190501    Neighborhood Number: 741

EXHIBIT "B"

<u>Landlord's Work</u>

Landlord shall, at its sole cost and expense, install/perform the following:

TBD

EXHIBIT "C"

<u>Tenant's Work</u>

Tenant may, but is not obligated to, install/perform the following:

[None.]

KCP-1645376-2

## EXHIBIT "D"

### Disclosures

Section 17.2 (Mortgages/Deeds of Trust)

TBD

Section 23 (Subordination and Attornment)

TBD