**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: Nov. 9, 2023 at 4:00 p.m. (ET)**<br>**Hearing Date: Dec. 12, 2023**<br>**Re: Docket No. 968** |

**RESPONSE AND RESERVATION OF RIGHTS OF EXOL PROPERTIES, L.L.C. AND ORANGE BATAVIA I LLC TO DEBTORS' NOTICE OF POTENTIAL ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS OR LEASES ASSOCIATED WITH THE NON-ROLLING STOCK ASSETS**

Exol Properties, L.L.C. ("Exol") and Orange Batavia I LLC, ("Orange Batavia," and collectively with Exol, the "Responding Landlords"), by and through their undersigned counsel, submit this response and reservation of rights (the "Response") to the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated With the Non-Rolling Stock Assets* [D.I. 968] (the "Assumption Notice"),[2] as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

1.    On August 6, 2023 (the "Petition Date"), each of the above captioned debtors and debtors in possession (the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [D.I. 169]. Debtors are

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq.com/Yellow Corporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    Capitalized terms not otherwise defined shall have the same meaning as set forth in the Assumption Notice.

managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [D.I. 269]. No trustee or examiner has been appointed in these chapter 11 cases.

2.    Responding Landlords are the lessors under unexpired nonresidential real property leases with debtor USF Reddaway Inc. ("Tenant"), as lessee, for freight terminal properties as follows: (1) Exol is the landlord with respect to the real property located at 1405 North Olive Avenue, Meridian, Idaho, and (2) Orange Batavia is the landlord with respect to the real property located at 2200 North Batavia, Orange, California.

3.    On September 15, 2023, the Court entered its *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 575] (the "Bidding and Sale Procedures Order").

4.    On October 26, 2023, the Debtors filed and served their Notice of Assumption. Debtors' leases with Responding Landlords are both identified as among the "Potential Non-Rolling Stock Asset Assumption List," Schedule 1 to the Notice of Assumption.

## II.    <u>ARGUMENT</u>

### A.    **Debtors Must Cure All Existing Defaults, Or Provide Adequate Assurance Of A Prompt Cure, As A Condition To The Assumption And Assignment Of Its Leases**

5.    Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign a lease.  As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord*, *In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 25 (Bankr. D. Kan. 2001); *In re Mushroom Transportation Co., Inc.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987). Indeed, "the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy had not intervened." *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992). Bankruptcy Code section 365(b)(1)(A) "clearly and unambiguously" requires the cure of *all defaults* before an unexpired lease of nonresidential real property may be assumed. *In re Building Block Child Care Centers, Inc.* (9th Cir. BAP 1999) 234 B.R. 762, 765; *accord, In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults." [emphasis in original]).

6.    Debtors bear the burden of proving the requirements of Bankruptcy Code section 365(b) by a preponderance of the evidence. *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999).

**Monetary Defaults:**

7.      Debtors' Assumption Notice acknowledges the obligation to pay "Cure Amounts," setting forth in the "Real Property Lease Cure Schedule" that amounts asserted to be due to satisfy the "cure" requirement for each of the Responding Landlords. However, Debtors provide no itemization or detail as to the asserted amounts. The Cure Amounts with respect to Debtors' leases with Responding Landlords are summarized below and, if different, are detailed in the account summaries attached hereto as <u>Exhibit A</u>.

| Lease Cure Schedule # | Landlord/Property Address | Debtors' Amount | Landlord's Amount |
|---|---|---|---|
| 52 | Exol Properties, L.L.C., 1405 North Olive Avenue, Meridian, Idaho | $27,960.00 | $59,746.53 |
| 109 | Orange Batavia I LLC, 2000 North Batavia Street, Orange, California | $73,756.00 | $89,968.78 |

8.      The current Cure Amounts asserted by Responding Landlords do not, however, include rent and charges that may accrue after November 9, 2023.   Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption."  *See, e.g.*, *In re Rachels Industries, Inc.*, 109 B.R. 797, 811-12 (Bankr. W.D. Tenn. 1990).  Debtors remain required to pay accruing post-petition rent and charges on a timely basis, as required by Bankruptcy Code section 365(d)(3) and Responding Landlords reserve their respective rights and remedies against Debtors with respect to such additional sums.

**Nonmonetary Defaults**

9.      By its terms, Bankruptcy Code section 365(b)(1) is not limited to monetary obligations.  *See, e.g.*, *In re Old Market Group Holdings, Inc.*, 647 B.R. 104, 113-14 (Bankr. S.D.N.Y. 2022); *In re Rachels Indus., Inc.*, 109 B.R. at 811-12. "A default exists under [Section 365] whenever the debtor has failed to perform its obligations under its contract or lease, regardless of whether that failure amounted to a default as defined by the contract or lease" and regardless of

whether a contractual notice of default was previously served. *In re Old Market Group Holdings, Inc.*, 647 B.R. at 114-15.

10.    Debtors' April 1, 2010 Lease Agreement with Exol (the "Exol Lease") provides, in pertinent part, that "Tenant at its cost shall maintain, and repair in a good and safe operating condition, all portions of the Leases Premises, including but not limited to all of the structural and non-structural elements of the Premises." (Exol Lease § 10.)

11.    Based on a recent inspection (on October 19, 2023) of the Meridian, Idaho premises by Exol and Debtors, there are numerous deferred maintenance items at the premises in need of maintenance, replacement, or repair.  A summary of these items, and accompanying photographs, is attached hereto as Exhibit B.  These repair and maintenance issues must be cured, or Exol provided with adequate assurance of a prompt cure, in connection with any assumption or assumption and assignment of the Exol Lease.

12.    The Meridian, Idaho premises contains an underground storage tank ("UST"), which is over 30 years old, and related fueling system, used in the operation of the motor freight terminal at the property.  Section 22(b) of the Exol Lease provides, in pertinent part, that "[d]uring the Term, any such generation, treatment, storage or disposal of any Hazardous Substances by Tenant shall be in compliance with all environmental requirements, other Laws and this Lease . . . ."  Similarly, Section 7 of the Exol Lease provides that "Tenant shall not use or occupy, or permit the Premises to be used or occupied in any manner that would in any way violate any applicable Laws now in effect or hereinafter adopted by any governmental authority having jurisdiction."

13.    Debtors, notwithstanding multiple requests, has not provided Exol with sufficient documentation or other evidence demonstrating that the UST and fueling system are in compliance

with applicable laws and regulations. Exol is informed and believes that, due to the lack of historical documentation regarding inspections and the operational status of the UST and fueling system, the continued presence of the UST and fueling system is contrary to the terms of the Exol Lease. This condition must be remedied as a condition to any assumption, or assumption and assignment, of the Exol Lease.

**Attorneys' Fees:**

14.     Where, as here, there are defaults under leases sought to be assumed and assigned, Bankruptcy Code section 365(b)(1) comes into play. Debtors' Leases with Responding Landlords contain provisions for the recovery of attorneys' fees in the event of defaults under the respective lease. Bankruptcy courts have held that attorneys' fees incurred in the enforcement of obligations, covenants and conditions of a lease are recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) due upon assumption and assignment of a lease if the underlying lease provides for them. *In re Entm't, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties." *In re Child World, Inc.*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); *see also Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, 127 S.Ct. 1199, 1203-06 (2007) (contract providing for attorneys' fee recovery enforceable in bankruptcy unless Bankruptcy Code specifically provides otherwise); *In re Crown Books Corp.*, 269 B.R. 12, 18 (Bankr. D. Del. 2001) (landlord's attorneys' fees incurred in proving post-petition rent had not been recoverable as component of cure under Section 365(b)(1)). "[T]here is no logical distinction, for purposes of §365, between claims for attorney's in connection with pre-petition defaults and such claims in connection with post-petition defaults." *In re Entm't, Inc.*, 223 B.R. at 154. The Responding

Landlords' attorneys' fees, which currently are in excess of $4,000.00 in the aggregate, are ongoing.  Responding Landlords each reserve the right to supplement this Response to provide such further attorneys' fees information as may be requested by Debtors.

## III.    RESERVATION OF RIGHTS

15.    Responding Landlords fully reserve their respective rights to (a) further supplement or amend this Response and assert any additional objections, including any additional obligations that may arise under Debtors' leases with Responding Landlords in the ordinary course of business, (b) further object to any proposed assumption, or assumption and assignment of their leases with Debtors, including any objection based on the failure of Debtors or any proposed assignee to demonstrate adequate assurance of future performance, as required by Bankruptcy Code Section 365(b)(1)(C) and (f)(2)(B), and (c) further object on additional grounds based upon any new information provided by Debtors or upon any different relief requested by Debtors.

## IV.    CONCLUSION

16.    For the foregoing reasons, Responding Landlords request that their cure objection be sustained.  Among other things, the assumption, or assumption and assignment of each of Debtors' leases with Responding Landlords must be conditioned on the prompt cure of existing monetary and nonmonetary defaults asserted by Responding Landlords, and payment of Responding Landlords' reasonable attorneys' fees.

Dated: November 9, 2023
Wilmington, Delaware

Respectfully submitted,

*/s/ Laurel D. Roglen*
Leslie C. Heilman (DE 4716)
Laurel D. Roglen (DE 5759)
Nicholas J. Brannick (DE 5721)
Margaret Vesper (DE 6995)
BALLARD SPAHR LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel:  (302) 252-4465
Fax:  (302) 252-4466
Email: heilmanl@ballardspahr.com
      roglenl@ballardpshar.com
      brannickn@ballardspahr.com
      vesperm@ballardspa

    and

Michael S. Greger, Esquire
ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California  92614-7214
Tel:  (949) 553-1313
Fax:  (949) 553-8354
Email:  mgreger@allenmatkins.com

    and

Ivan M. Gold, Esquire
ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone:  (415) 837-1515
Facsimile:  (415) 837-1516
E-mail:  igold@allenmatkins.com

*Attorneys for Exol Properties, L.L.C. and Orange
Batavia I LLC*