IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Dkt. No. 968** |

**OBJECTION OF EXETER 1619 N PLAZA, LLC TO NOTICE OF POTENTIAL ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS OR LEASES ASSOCIATED WITH THE NON-ROLLING STOCK ASSETS**

Exeter 1619 N. Plaza, LLC ("Exeter") hereby objects to the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Non-Rolling Stock Assets* ("Cure Notice") [Docket No. 968]. In support of this Objection, Exeter respectfully represents as follows

## BACKGROUND

1. On August 6, 2023, ("Petition Date"), the above-captioned debtors and debtors-in-possession ("Debtors"), including USF Reddaway Inc. ("Reddaway"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Court").

2. Prior to the Petition Date, Exeter and the Reddaway were parties to that certain Lease Agreement dated July 14, 2022 (as may have been amended or modified, the "Lease"),

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

guaranteed by Yellow Corporation pursuant to a Guaranty, dated July 12, 2022, concerning approximately 13,600 rentable square feet located at 1619 North Plaza Drive, Visalia, CA 93291 (the "Property").

3. On September 15, 2023, the Court entered an *Order (I)(A) Approving the Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order"), which approved, among other things, the procedures by which the Debtors may solicit and pursue one or more sales of the Debtors' assets pursuant to 11 U.S.C. § 363.

4. In connection with the Bidding Procedures Order, the Debtors filed the Cure Notice. The Cure Notice identifies the Lease as an agreement subject to assumption and assignment.

5. The cure amount for the Lease in the Cure Notice is listed as $34,443 (the "Proposed Cure Amount"). However, as of the date hereof, the correct amount due and owing to Exeter is $53,984.12. *See* attached Exhibit A.

**OBJECTION**

6. Section 365(b)(1) of the Bankruptcy Code provides as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

>(A) cures, or provides adequate assurance that the trustee will promptly cure, such default.
>
>(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
>(C) provides adequate assurance of future performance under such contract or lease.

7. Thus, section 365(b)(1)(A) of the Bankruptcy Code provides that a debtor may not assume a contract unless it cures all defaults (or provides adequate assurance that defaults will be promptly cured). *In re Panaco, Inc.*, No. 02-37811-H3-11, 2002 WL 31990368, at *5 (Bankr. S.D. Tex. Dec. 10, 2002); *In re Rock 49th Rest. Corp.*, 2010 Bankr. LEXIS 1223, at *11 (Bankr. S.D.N.Y. April 7, 2010) ("Assumption in effect restores the debtor-creditor relationship to pre-default conditions, bringing the lease back into compliance with its terms."). This includes both prepetition and post-petition defaults. *See In re Burger Boys*, 94 F.3d 755, 763 (2d Cir. 1996).

8. In order to assume and assign the Lease, the Debtors are required, at the time of assumption, to cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the Lease, including, without limitation, any and all defaults with respect to insurance requirements under the Lease, real estate taxes and other charges, amounts payable under reciprocal easement agreements, utilities (including electricity, gas, oil, water, telephone, sanitary sewer services and all other and utilities), attorneys' fees and costs, repair, maintenance, and replacement obligations, and environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges owing under the Lease that remain undetermined as of the date hereof (the "<u>Unliquidated Obligations</u>"). For example, the Debtors are not entitled to assume the Lease by merely curing arrearages in rent. Instead, the Debtors must cure or provide adequate assurance of promptly curing

3

all liquidated cure amounts and other Unliquidated Obligations under the Lease, including, without limitation, their current and future obligations to maintain the Property and make repairs and replacements, as a condition to the assumption and assignment of the Lease. *See* 11 U.S.C. § 365(b)(1).

9. Exeter objects to the Proposed Cure Amount. Any order approving the assumption of the Lease, should make clear that all liquidated cure amounts must be paid at or prior to assumption and all Unliquidated Obligations under the Lease shall survive, regardless of whether such Unliquidated Obligation could be argued to have existed, occurred, or accrued prior to the assumption of the Lease.

10. Based on currently available information, not less than $53,984.12 must be paid to Exeter at or prior to closing to cure these and other defaults under the Lease. Such liquidated cure claims are comprised of unpaid (a) prepetition rent and related charges and (b) postpetition rent and related charges. This cure is in addition to the Unliquidated Obligations or other cure amounts that may become due and owing after the date hereof and prior to the time the Lease is actually assumed, including all charges billed in arrears and any amounts currently unknown or undetermined by Exeter, including but not limited to accrued and unbilled common area maintenance charges and taxes. Exeter reserves its right to amend or supplement any statement of cure amount as necessary or appropriate under the circumstances, including without limitation to account for year-end adjustments not yet billed or due under the terms of the Lease, amounts that become due and owing after the date hereof and prior to the time the Lease is actually assumed, and the amounts that the Landlord becomes aware of after the date hereof.

11. Further, in connection with any assignment of the Lease, the Debtors are required to provide adequate assurance of future performance of the Lease. To date, no assignee has been

identified and no proof of adequate assurance has been provided to Exeter. Therefore, Exeter reserves its rights to supplement this Objection and to object to any potential assignment based on the failure to provide adequate assurance if an assignee is identified and the Lease is identified for assumption and assignment.

## RESERVATION OF RIGHTS

12. Exeter expressly reserves all rights under the Lease with respect to any and all obligations of the Debtors, including the right to claim any amounts of rent, charges to compensate for monetary defaults, such as accrued real estate taxes, utility charges that have been assessed against the Property, unsatisfied liens on the Property created by the Debtors and/or insurance premiums, and charges to compensate for non-monetary defaults, including without limitation all maintenance, indemnification and environmental obligations of the Debtors. Exeter further reserves all rights to raise further objections, as necessary or appropriate under the circumstances.

## CONCLUSION

WHEREFORE, Exeter hereby requests that any order approving the assumption of the Lease be consistent with this Objection and (i) require the curing, at or prior to closing, of all monetary and non-monetary defaulted under the Lease as set forth in this Objection, (ii) require that Exeter be provided adequate assurance of future performance under the Lease, (iii) grant the other relief requested herein, and (iv) grant Exeter such other or further relief as is just and appropriate under the circumstances.

*[Remainder of page intentionally left blank]*

**BLANK ROME LLP**

Dated: November 9, 2023

*/s/ Josef W. Mintz*
Josef W. Mintz (DE No. 5644)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19810
Tel: 302.425.6400
Fax: 302.425.6464
Email: josef.mintz@blankrome.com

and

Ira L. Herman
Evan J. Zucker
1271 Avenue of the Americas
New York, New York 10020
Tel: 212.885.5000
Fax: 917.591.2726
Email: ira.herman@blankrome.com
       Evan.zucker@blankrome.com

*Attorneys for Exeter 1619 N. Plaza, LLC*