**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) ) ) ) Chapter 11 ) |
| YELLOW CORPORATION, et al.,[1] | ) ) Case No. 23-11069 (CTG) |
| Debtors. | ) ) ) ) ) |

**OBJECTION AND RESERVATION OF RIGHTS OF PROLOGIS USLV SUBREIT 2, LLC, PROLOGIS TARGETED U.S. LOGISTICS FUND, L.P., PROLOGIS, L.P., DCT PEORIA STREET LLC, DCT ECK HOFF STREET LLC, AND PROLOGIS USLV SUBREIT 4, LLC TO THE DEBTORS' NOTICE OF POTENTIAL ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS OR LEASES ASSOCIATED WITH THE NON-ROLLING STOCK ASSETS**

Prologis USLV SubREIT 2, LLC, Prologis Targeted U.S. Logistics Fund, L.P., Prologis, L.P., DCT Peoria Street LLC, DCT Eckhoff Street LLC, and Prologis USLV SubREIT 4, LLC (each a "Landlord" and collectively the "Landlords"), by and through their undersigned counsel, hereby submit this objection and reservation of rights (this "Objection") to the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Non-Rolling Stock Assets* (the "Notice of Potential Assumption") [D.I. 968] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). In support of this Objection, the Landlords respectfully represent as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Tukwila Lease**

1. YRC Inc. ("YRC") and Prologis USLV SubREIT 2, LLC as successor-in-interest to NATMI Truck Terminals, LLC ("Prologis SubREIT 2") are parties to that certain *Lease Agreement* (together with all exhibits, amendments, and/or supplements thereto, the "Tukwila Lease"), effective as of January 30, 2009, for certain premises located at 12855 48th Avenue South in Tukwila, King County, Washington (as more fully described in the Tukwila Lease) (the "Tukwila Premises").

2. As of the filing of this Objection, no less than $137,538.27 was, and remains, due by YRC to Prologis SubREIT 2 in unpaid Rent (as defined herein) under the Tukwila Lease.

**B. Fontana Lease**

3. YRC and Prologis SubREIT 2 as successor-in-interest to NATMI Truck Terminals, LLC are parties to that certain *Lease Agreement* (together with all exhibits, amendments, and/or supplements thereto, the "Fontana Lease"), effective as of January 30, 2009, for certain premises located at 10661 Etiwanda Avenue, Fontana, County of San Bernardino, California (as more fully described in the Fontana Lease) (the "Fontana Premises").

4. As of the filing of this Objection, no less than $343,899.47 was, and remains, due by YRC to Prologis SubREIT 2 in unpaid Rent under the Fontana Lease.

**C. Gardena Lease**

5. YRC and Prologis Targeted U.S. Logistics Fund, L.P. as successor-in-interest to NATMI Truck Terminals, LLC ("Prologis Targeted") are parties to that certain *Lease Agreement* (together with all exhibits, amendments, and/or supplements thereto, the "Gardena Lease"), effective as of January 30, 2009, for certain premises located at 15400 S. Main St., Gardena,

County of Los Angeles, California (as more fully described in the Gardena Lease) (the "Gardena Premises").

6.  As of the filing of this Objection, no less than $111,946.00 was, and remains, due by YRC to Prologis Targeted in unpaid Rent under the Gardena Lease.

**D. Vegas Lease**

7.  USF Reddaway, Inc. ("USF," and collectively with YRC, the "Tenants") and Prologis, L.P. as successor-in-interest to NATMI Truck Terminals, LLC ("Prologis") are parties to that certain *Lease Agreement* (together with all exhibits, amendments, and/or supplements thereto, the "Vegas Lease"), effective as of January 30, 2009, for certain premises located at 4650 East Cheyenne Road, Las Vegas, Clark County, Nevada (as more fully described in the Vegas Lease) (the "Vegas Premises").

8.  As of the filing of this Objection, no less than $65,779.64 was, and remains, due by USF to Prologis in unpaid Rent under the Vegas Lease.

**E. Downey Lease**

9.  USF and Prologis as successor-in-interest to Regentview Terminal Downey, LLC are parties to that certain *Lease Agreement* (together with all exhibits, amendments, and/or supplements thereto, the "Downey Lease"), effective as of October 15, 2009, for certain premises located at 11937 Regentview Avenue, Downey, California (as more fully described in the Downey Lease) (the "Downey Premises").

10. As of the filing of this Objection, no less than $78,965.58 was, and remains, due by USF to Prologis in unpaid Rent under the Downey Lease.

**F. Sun Valley Lease**

11.     YRC and DCT Peoria Street LLC as successor-in-interest to Peoria Terminal Sun Valley ("DCT Peoria") are parties to that certain *Lease Agreement* (together with all exhibits, amendments, and/or supplements thereto, the "Sun Valley Lease"), effective as of October 15, 2009, for certain premises located at 11266-11300 Peoria Street, Sun Valley, California (as more fully described in the Sun Valley Lease) (the "Sun Valley Premises").

12.     As of the filing of this Objection, no less than $72,253.18 was, and remains, due by YRC to DCT Peoria in unpaid Rent under the Sun Valley Lease.

**G. Orange Lease**

13.     YRC and DCT Eckhoff Street LLC as successor-in-interest to Eckhoff Terminal Orange, LLC ("DCT Eckhoff") are parties to that certain *Lease Agreement* (together with all exhibits, amendments, and/or supplements thereto, the "Orange Lease"), effective as of October 15, 2009, for certain premises located at 700 N. Eckhoff Street, Orange, California (as more fully described in the Orange Lease) (the "Orange Premises").

14.     As of the filing of this Objection, no less than $118,864.67 was, and remains, due by YRC to DCT Eckhoff in unpaid Rent under the Orange Lease.

**H. Tacoma Lease**

15.     YRC and Prologis Targeted as successor-in-interest to NAT Investors Tacoma SPE, LP are parties to that certain *Lease Agreement* (together with all exhibits, amendments, and/or supplements thereto, the "Tacoma Lease"), effective as of December 15, 2009, for certain premises

located at 2807 70th Avenue., East, Tacoma, Washington (as more fully described in the Tacoma Lease) (the "Tacoma Premises").

16. As of the filing of this Objection, no less than $121,703.28 was, and remains, due by YRC to Prologis Targeted in unpaid Rent under the Tacoma Lease.

**I.  Brisbane Lease**

17. YRC and Prologis USLV SubREIT 4, LLC ("Prologis SubREIT 4") are parties to that certain *Lease Agreement* (together with all exhibits, amendments, and/or supplements thereto, the "Brisbane Lease," and collectively with the Tukwila Lease, Fontana Lease, Gardena Lease, Vegas Lease, Downey Lease, Sun Valley Lease, Orange Lease, and Tacoma Lease, the "Leases"), effective as of December 22, 2017, for certain premises located at 499 Valley Drive, Brisbane, California (as more fully described in the Brisbane Lease) (the "Brisbane Premises," and collectively with the Tukwila Premises, Fontana Premises, Gardena Premises, Vegas Premises, Downey Premises, Sun Valley Premises, Orange Premises, and Tacoma Premises, the "Premises").

18. As of the filing of this Objection, no less than $206,431.37 was, and remains, due by YRC to Prologis SubREIT 4 in unpaid Rent under the Brisbane Lease.

**J.  Obligations under the Leases**

19. Each of the Leases require Tenants to make payments of Minimum Rent[2] and Additional Rent including, but not limited to, taxes and insurance premiums (collectively, "Rent"). Rent owed under the Leases continues to accrue post-Petition Date (defined below).

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in each relevant Lease described herein. Upon information and belief, the Debtors have copies of the relevant Leases. The Leases are available upon written request to the undersigned counsel.

20. Each of the Leases contain various maintenance, surrender, and indemnification obligations of the Tenants, including, but not limited to, annual maintenance of the Fuel Tanks in certain of the Premises (at Tenant's sole cost and expense), as more fully described in each relevant Lease (collectively, the "Non-Monetary Obligations").

**K. Debtors' Bankruptcy Proceedings**

21. On August 6, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their businesses and maintaining their assets as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

22. On September 15, 2023, this Court entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 575] (the "Bidding Procedure Order"), by which it approved procedures for the assumption or assumption and assignment of executory contracts and unexpired leases and granted related relief.

23. On October 26, 2023, the Debtors filed the Notice of Potential Assumption identifying those executory contracts and unexpired leases that may be assumed by the Debtors and assigned to third-parties pursuant to Section 365 of the Bankruptcy Code and the amounts that the Debtors assert must be paid to cure any defaults under each of the Leases (the "Proposed Cure

Amounts"). The Notice of Potential Assumption lists Cure Costs with respect to the Leases in the aggregate amount of $1,148,058.

24. **Exhibit A** hereto sets forth a comparison between the Proposed Cure Amount and the minimum amount of Rent owed under each Lease (the "Minimum Cure Amount"). The Minimum Cure Amount for each Lease does not include amounts owed for maintenance and/or repairs for any of the Premises, which amounts would also need to be cured prior to any assumption and/or assignment. Notwithstanding the foregoing, as of the date of this Objection, approximately $100,000.00 was, and remains, due by YRC to Prologis SubREIT 2 for landscaping maintenance under the Fontana Lease. This has been indicated with a double asterisk on **Exhibit A**, which amount must also be cured prior to any assumption and/or assignment of the Fontana Lease.

## OBJECTION

25. The Landlords do not, in principle, object to the Debtors' business judgment to sell the Debtors' assets and/or assume or reject executory contracts or unexpired leases. However, as indicated on **Exhibit A**, certain of the cure amounts identified in the Notice of Potential Assumption by the Debtors are incorrect.

**A.  The Proposed Cure Amount Fails to Provide for the Payment of All Obligations Due Under the Leases.**

26. Pursuant to section 365(b)(1)(A) of the Bankruptcy Code:

> If there has been a default in an . . . unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee . . . cures, or provides adequate assurance that the trustee will promptly cure, such default . . . .

11 U.S.C. § 365(b)(1)(A).

27. "Cure is a critical component of assumption." *In re Thane International, Inc.*, 586 B.R. 540, 549 (Bankr. D. Del. 2018). "The language and intent behind § 365 is decisive … [and

it] was clearly intended to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance." *Id.* (c*iting In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir. 1996)). "If the trustee is to assume a contract or lease, the court will have to ensure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain." *Id.* (citation to legislative history omitted). "[T]he term 'full benefit of his bargain' refers to 'the full amount due' under the contract or lease in question, as opposed to liabilities solely for future performance." *Id.; see also In re Handy Andy Home Improvement Centers, Inc.*, 196 B.R. 87, 93 (Bankr. N.D. Ill. 1996) (debtor must cure pre- and post-petition defaults prior to assumption).

28. The Debtors owe the Landlords no less than the Minimum Cure Amount for each Lease as of the filing of this Objection. These amounts, adjusted as necessary to reflect the unpaid obligations under the Leases as of the date of assumption, must be paid as a condition precedent to the Debtors' assumption and assignment of the Leases pursuant to section 365(b)(1)(A) of the Bankruptcy Code.

29. Further, in the event the Debtors pay the correct cure amounts, the Debtors must assume *all* of the obligations under the Leases, including the obligation to perform the Non-Monetary Obligations under the Leases. *See In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and rejected in part. . . . The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits."). Thus, the Landlords object to the proposed assumption and assignment of the Leases to the extent the Debtors purport to assume anything less than all of the obligations under the Leases.

30. Accordingly, the Minimum Cure Amount and any Rent due must be satisfied, and the Debtors must assume and assign the entire Leases, and comply with the Non-Monetary Obligations under the Leases.

**B.  The Prevailing Bidder for the Leases Must Provide the Landlords with Adequate Assurance of its Future Performance Under the Leases.**

31. Pursuant to section 365(f)(2) of the Bankruptcy Code, a trustee or debtor-in-possession may assign an unexpired lease of the debtor only if:

> (A)  the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)  adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

32. "The statutory requirement of 'adequate assurance of future performance by the assignee' affords 'needed protection to the non-debtor party because the assignment relieves the trustee and the bankruptcy estate from liability for breaches arising after the assignment.'" *In re Fleming Cos.*, 499 F.3d 300, 305 (3d Cir. 2007) (citing *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001)); *see also In re Sanshoe Worldwide Corp.*, 139 B.R. 585, 592 (S.D.N.Y. 1992) (noting that this provision "was primarily designed to protect landlords.").

33. The phrase adequate assurance of future performance "is to be given a practical and pragmatic construction based upon the facts and circumstances of each case." *Cinicola*, 248 F.3d at 120. A party's satisfaction with such assurances must be based upon reason and not be arbitrary or capricious. *Id.* In determining whether there has been adequate assurance of future performance of an executory contract, courts have considered the nature of the parties involved, their prior dealings, and the contents of the agreement. *See, e.g.*, *In re Yardley*, 77 B.R. 643 (Bankr. M.D. Tenn. 1987). Although a trustee and/or debtor need not provide an absolute guarantee of future

performance, it must provide more than speculative plans to constitute adequate assurance. *Cinicola*, 248 F.3d at 120; *see also In re Washington Capital Aviation & Leasing*, 156 B.R. 167 (Bankr. E.D. Va. 1993).

34.     As of the date of this Objection, no adequate assurance information has been provided to the Landlords because the identity of the proposed assignee of the Leases will not be known until the conclusion of the auction for the Debtors' real property and leased assets.

## RESERVATION OF RIGHTS

35.     The Landlords reserve all rights to supplement or amend this Objection upon the selection of the winning bidder for the Leases on the grounds that any assumption and assignment of the Leases must be conditioned on the Landlords receiving adequate assurance of future performance by the prevailing bidder.

36.     In addition to the foregoing, the Landlords reserve the right to supplement or amend this Objection based upon information acquired by the Landlords, and to introduce evidence at any hearing related to the Chapter 11 Cases, the assumption and assignment of the Leases, and/or this Objection.  Further, the Landlords reserve the right to otherwise amend, supplement, and/or otherwise modify this Objection and its Minimum Cure Amount and/or Rent, and to raise other and further objections to the assumption and assignment or cure amounts with respect to the Leases.  The Landlords additionally reserve the right to exercise all available remedies under the Leases to obtain possession of the Premises (subject to any applicable procedural limitations imposed by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure), and to assert claims against the Debtors (including, but not limited to, administrative expense claims under sections 365(d)(3) and/or 503(b) of the Bankruptcy Code and claims arising from the rejection of the Leases

should the Debtors later withdraw the proposed assumption or otherwise reject the Lease) at the appropriate time.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Landlords respectfully request that this Court predicate any entry of an order approving the assumption and assignment of the Leases on the Debtors' (i) satisfaction of cure obligations as those exist at the time of the assumption and assignment, and (ii) provision of adequate assurance information for the Landlords' consideration, each consistent with this Objection, and grant such other and further relief as is just and equitable.

Dated: November 9, 2023

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Patrick A. Jackson*
Patrick A. Jackson (No. 4976)
222 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
patrick.jackson@faegredrinker.com

-and-

Brian P. Morgan
Roya Imani
1177 Avenue of the Americas, 41st Floor
New York, New York 10036
Telephone: (212) 248-3140
Facsimile: (212) 248-3141
brian.morgan@faegredrinker.com
roya.imani@faegredrinker.com

*Counsel for Prologis USLV SubREIT 2, LLC, Prologis Targeted U.S. Logistics Fund, L.P., Prologis, L.P., DCT Peoria Street LLC, DCT Eckhoff Street LLC, and Prologis USLV SubREIT 4, LLC*