**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered)<br><br>**Re: Dkt. 1018** |

**OBJECTION AND RESERVATION OF RIGHTS OF**
**LINK LOGISTICS REAL ESTATE MANAGEMENT LLC AND BREIT**
**INDUSTRIAL CANYON GA1B01 LLC TO DEBTORS' SECOND NOTICE OF**
**REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Link Logistics Real Estate Management LLC and its affiliate BREIT Industrial Canyon GA1B01 LLC (collectively, "**Landlord**" or "**Link Logistics**") hereby submit this objection and reservation of rights to the Debtors' *Second Notice of Rejection of Certain Executory Contracts and Unexpired Leases* (the "**Rejection Notice**") [Dkt. 1018], and respectfully state as follows.

**PRELIMINARY STATEMENT**

1. Link Logistics leases that certain real property at 1250 Terminus Drive, Lithia Springs, Georgia 30122 (the "**Atlanta Property**") to the Debtors pursuant to a written agreement (the "**Atlanta Lease**"). The Rejection Notice, filed on November 1, 2023, identifies the Atlanta Lease for rejection effective as of October 31, 2023. Link Logistics objects to the requested effective date for this proposed rejection.

2. As an initial matter, the Rejection Procedures Order (as defined below) does not allow for the rejection effective date to be prior to the filing date of the Rejection Notice. Further,

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

10072705.2

the Rejection Procedures Order (and basic equity) requires that the property be surrendered with keys turned over (or rekeyed) before any rejection can be effective. Because the Debtors did not provide the Landlord with written notice of surrender, and did not provide the keys or allow for rekeying until November 13, 2023, the effective date for rejection of the Atlanta Lease cannot be prior to such date.

3.      Further, Landlord cannot presently proceed to relet the Atlanta Property because of the personal property that remains on site. While the Rejection Notice identifies certain types of personal property being abandoned on site by the Debtors, there is no basis to determine that all personal property on site at the Atlanta Property is owned by the Debtors or that all third parties with interests therein have been given notice and a reasonable opportunity to retrieve such property prior to the rejection effective date as required by the Rejection Procedures Order. The Debtors should be required to represent that no such parties exist or that all such parties have had this reasonable retrieval opportunity, and any rejection of the Atlanta Lease should not be effective until this opportunity has been provided to all such parties.

4.      Finally, pending the rejection of the Atlanta Lease, the Debtors should be required to timely perform all obligations thereunder in accordance with the Bankruptcy Code, including but not limited to payment of November rent owing. In addition, to the extent that the rejection of the Atlanta Lease is approved, Link Logistics should be authorized to apply its security deposit and to pursue available insurance as appropriate to repair damage to the Atlanta Property. Without limiting the foregoing, Link Logistics reserves its rights to seek administrative expense treatment for any costs arising after the petition date, including without limitation for repair costs and indemnification claims.

**BACKGROUND**

5. On August 6, 2023, the Debtors commenced these chapter 11 cases, and have since continued to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Atlanta Lease was entered into as of July 10, 2020, between Landlord and YRC Inc. ("**Tenant**") and has an initial term through 2025.[2] A copy of the Atlanta Lease is attached hereto as **Exhibit 1**. In accordance with the terms of the Atlanta Lease, Landlord presently holds a security deposit in the amount of $70,446 and is an additional insured under certain insurance policies maintained by Tenant.

7. On August 7, 2023, the Debtors filed a motion [Dkt. 22] to approve a sale process, including for the sale of real property leases, and related bidding procedures.

8. On September 14, 2023, the Court entered an order approving procedures for the rejection of executory contracts and unexpired leases [Dkt. 550] (the "**Rejection Procedures Order**").

9. On September 15, 2023, the Court entered an order approving a sale process for the Debtors' assets including real property leases [Dkt. 575] (the "**Sale Process Order**"). As set forth therein, the deadline for the Debtors to file a cure notice for leases potentially being assumed and assigned in the sale process was October 26, 2023 and the deadline for bids on real property leases (among other things) was set at November 9, 2023. Sale Process Order at 12.

10. On October 26, 2023, the Debtors filed their notice of potential assumption and assignment [Dkt. 968] (the "**Potential Assignment Notice**"), which among other things identified

---

[2] Although various filings by the Debtors alternatively identify YRC Inc., Yellow Logistics, Inc, and Yellow Logistics Services, Inc. as the Tenant, the Lease and Landlord's related documentation identify YRC Inc. as the Tenant, and Landlord reserves all of its rights with respect thereto.

10072705.2

the Atlanta Lease as being potentially subject to assumption and assignment with a proposed cure amount of $71,062.

11. On November 1, 2023, the Debtors filed the Rejection Notice, seeking among other things to reject the Atlanta Lease effective as of October 31, 2023. Rejection Notice, Exh. 1 at 1. The Rejection Notice also discloses that "[f]urniture, fixtures, IT equipment, other miscellaneous de minimis items" will be abandoned at the Atlanta Property by the Debtors. *Id.*

12. On November 13, 2023, the Debtors delivered the keys to the Atlanta Property to Landlord and authorized rekeying. At all relevant times prior to such date, the Debtors had legal possession of and made use of the Atlanta Property. Prior to such date, the Debtors had not surrendered the premises or delivered keys to Landlord.

13. Also on November 13, 2023, after receiving the keys and obtaining access to the Atlanta Property, Landlord entered and confirmed the presence on site of furniture, fixtures such as a conveyor belt, IT equipment including racking, and other miscellaneous items, all of which will require time to remove and an estimated cost of approximately $20,000. In addition, Landlord discovered certain slab damage from installation by Tenant of the conveyor belt for which repair is estimated to be not less than $50,000.

14. Repair of damage to the Atlanta Property, or reimbursement to Landlord for such repairs on demand, is the obligation of Tenant under the Atlanta Lease irrespective of property surrender or lease termination. Atlanta Lease ¶ 11(a), (d). In addition to requiring Tenant to repair damage as an ongoing obligation of its occupancy, the Lease requires Tenant to surrender the Atlanta Property in broom clean condition. Atlanta Lease Addendum 3.

## OBJECTION

A. **The Proposed Effective Date is Not Permissible**

15. The Rejection Procedures Order provides that:

4

> . . . the effective date of a rejection of a nonresidential real property lease shall not occur until the later of (i) the date the Debtors file and serve a Rejection Notice for such lease, (ii) the Rejection Date set forth in the Rejection Notice, and (iii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises.

Rejection Procedures Order ¶ 2(d).  This is consistent with the weight of authority and practice in this district, where retroactive rejection requires among other things proper prior notice and prompt property surrender.  *See, e.g., In re TW, Inc.*, No. 03-10785 (MFW), Civ. 03-533-SLR, 2004 WL 115521 (D. Del. Jan. 14, 2004) (affirming denial of retroactive rejection where "possession of the Premises was not properly surrendered and fault, in this regard, indisputably rested with the debtor."); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. Del. 2004) (the appropriate effective date for rejection is the date that the premises were surrendered to landlord and new leases could be entered into); *see also, e.g., In re At Home Corp.*, 392 F.3d 1064, 1072 (9th Cir. 2004) (requiring "exceptional circumstances" for retroactive rejection) (citation omitted).

16.     Here, the Debtors filed the Rejection Notice on November 1, 2023.  The Debtors did not provide written notice of surrender of the Atlanta Property prior to such date (or afterwards), and did not deliver the keys until November 13, 2023.  Accordingly, there are no factual, legal or equitable grounds for rejection of the Atlanta Lease as of October 31, 2023.  Pursuant to the Rejection Procedures Order, the effective date for rejection of the Atlanta Lease cannot be prior to November 13, 2023.

B.     **The Effective Date Must Account for Personal Property On Site**

17.     The Debtors are seeking to reject the Atlanta Lease with substantial personal property remaining on site.  But it is impossible to determine whether such property is owned by

the Debtors or by third parties, and if by third parties, whether the Debtors have complied with the related requirements of the Rejection Procedures Order.

18. The Rejection Procedures Order requires, for personal property owned by any non-Debtor third party and located on or within the real property that is subject to the lease that the Debtors seek to reject (such property, the "**Non-Debtor Personal Property**"), that the Debtors:

> . . . serve a copy of the Rejection Notice on said parties and within three (3) business days of filing a Rejection Notice. Further, the Debtors will make reasonable efforts to contact any third parties that may be known to the Debtors to have a property interest in such Non-Debtor Personal Property and such third parties shall be provided reasonable access to the leased premises and reasonable time and opportunity to retrieve their respective Non-Debtor Personal Property from the premises prior to the effectiveness of any Rejection Date.

Rejection Procedures Order ¶ 2(g).

19. Although the Rejection Notice provides that the Debtors will abandon their "[f]urniture, fixtures, IT equipment, other miscellaneous de minimis items" that is at the Atlanta Property, Rejection Notice, Exh. 1 at 1, nothing therein or elsewhere in the record permits any inference, let alone any conclusion, that all of the personal property at the Atlanta Property is owned by the Debtors and not by any third parties. It is grossly inequitable to force Landlord to bear the burden and related risks of determining ownership of personal property that was acquired, installed and/or used by the Debtors.

20. Accordingly, any rejection of the Atlanta Lease involving abandonment of personal property on site should be conditioned on:

> (a) a representation from the Debtors that no such third parties exist or that all such parties have had the requisite "reasonable access to the leased premises and reasonable time and opportunity to retrieve their respective Non-Debtor Personal Property," and

      (b)      findings by the Court, in an order authorizing rejection, that (i) confirm no such third parties exist based on the Debtors' representation, or (ii) if such third parties do exist, that all such parties have received reasonable notice of the abandonment and have had reasonable access, and reasonable time and opportunity, to retrieve their property.

21. If any such third parties exist, the rejection of the Atlanta Lease should not be effective before such persons have received reasonable notice and have had the "reasonable access to the leased premises and reasonable time and opportunity to retrieve their respective Non-Debtor Personal Property" as required by the Rejection Procedures Order.

22. More broadly, the Landlord is being prevented from reletting the Atlanta Property because of extensive personal property that remains onsite. The Debtors' proposal to retroactively reject the Atlanta Lease and impose the burden and risks of the personal property being owned by third parties is grossly inequitable.

**C.**      **Pending Rejection, the Debtors Must Comply With Section 365(d)(3)**

23. Section 365(d)(3) of the Bankruptcy Code requires the Debtors to "timely perform all the obligations . . . arising from and after the order for relief under any unexpired lease of nonresidential property, until such lease is assumed or rejected, notwithstanding Section 503(b)(1)." 11 U.S.C. 365(d)(3). "The clear and express intent of § 365(d)(3) is to require the [debtor] to perform the lease in accordance with its terms." *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001). Accordingly, the Debtors must continue to perform under the Atlanta Lease pending the effectiveness of any rejection.

24. The Debtors are presently in breach of their obligations to timely pay all post-petition rent and related charges, in particular for November 2023. All such amounts must be paid in full and on time in accordance with the Atlanta Lease. In addition, the Debtors are presently in breach of their obligations under the Atlanta Lease to repair damages, in particular for the slab damage from Tenant's installation of the conveyor belt referenced above. For the avoidance of

doubt, this repair obligation does not arise upon Tenant's surrender of the premises but rather is an ongoing obligation of Tenant under the Atlanta Lease. To the extent that the Debtors continue to fail to comply with all of their obligations as debtors in possession, any Court order authorizing the proposed rejection should require the payment by Debtors of all outstanding post-petition amounts and performance of all repair obligations (or reimbursement to Landlord for such costs).

**D.     Landlord Should be Authorized to Apply the Security Deposit and Proceed Against Available Insurance**

25.     Landlord is presently holding a prepetition security deposit in the amount of $70,446 and therefore is a secured creditor to that extent. 11 U.S.C. § 506(a) (a claim "that is subject to setoff under section 553 . . . is a secured claim to . . . the extent of the amount subject to setoff . . ."); *In re Atl. Container Corp.*, 133 B.R. 980, 989 (Bankr. N.D. Ill.1991) ("A landlord is a secured creditor to the extent of any security deposit it holds."). Landlords holding prepetition security deposits are commonly permitted to set off prepetition claims against such deposit. *See, e.g., In re Leather Factory Inc.*, 475 B.R. 710, 718 (Bankr. C.D. Cal. 2012) ("Precedent under both § 365(d)(3) and § 553 overwhelmingly holds that pre-petition security deposits may be applied against pre-petition claims, whether arrearages or rejection damages, rather than administrative claims."). Here, the prepetition amounts owing to Landlord (and acknowledged by the Debtors in the Potential Assignment Notice) already substantially exceed the amount of the security deposit, and Landlord is authorized under the terms of the Atlanta Lease to setoff the security deposit against such amounts. Atlanta Lease §§ 5, 23.

26.     Any order authorizing rejection of the Atlanta Lease should lift the automatic stay to allow Landlord to apply the security deposit to prepetition amounts owing. Apart from the automatic stay, the Bankruptcy Code does not impair or bar this setoff. 11 U.S.C. § 553 (restricting setoff in certain situations not applicable here). Accordingly, the existence of Landlord's setoff

right constitutes cause for stay relief. *See* 11 U.S.C. § 362(d)(1) (providing for stay relief "for cause"); *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000) ("Courts have generally concluded that the existence of mutual obligations subject to set-off constitutes sufficient 'cause' to meet the creditor's initial evidentiary burden in seeking relief from the automatic stay."). In addition, stay relief with respect to the security deposit is appropriate because the Debtors do not have "an equity in such property," as Landlord's claims already substantially exceed the amount of the security deposit, and because the security deposit is not necessary for the Debtors' reorganization. 11 U.S.C. § 362(d)(2).

27. Also, Landlord is an additional insured under certain insurance policies maintained by the Debtors that may have coverage for some or all of the damages to the Atlanta Property by Tenant,[3] including but not limited to the slab damage from Tenant's installation of the conveyor belt referenced above. Any order authorizing the rejection of the Atlanta Lease should lift the automatic stay, to the extent necessary, to allow Landlord to recover under these insurance policies. Cause exists to lift the stay because allowing Landlord to proceed against insurance does not diminish the estates, and, by facilitating the cleanup, repair and reletting of the Atlanta Property may serve to reduce liability for the estates arising from the rejection. *See* U.S.C. § 362(d)(1). Alternatively, stay relief is warranted because the Debtors do not have "equity" in such policies and are liquidating, not reorganizing. *See* U.S.C. § 362(d)(2).

## **RESERVATION OF RIGHTS**

28. Link Logistics reserves the right to amend and/or supplement this objection as additional information concerning the Atlanta Property is obtained, and to seek other or further

---

[3] These insurance policies are issued by Old Republic Insurance Company or Travelers Property Casualty Company of America and include without limitation policy nos. MWML18562 and KTJ-CMB-1T61970-A-23.

9

10072705.2

relief, including without limitation seeking administrative expense status for any claims or obligations owing to Link Logistics under the Atlanta Lease.

## CONCLUSION

WHEREFORE, Link Logistics respectfully requests that any order entered by the Court authorizing the rejection of the Atlanta Lease (i) provide for such rejection to be effective no earlier than November 13, 2023, (ii) confirm that all personal property on site is the property of the Debtors or, if property of any third parties, that such parties have received reasonable notice and reasonable time and opportunity to retrieve such property; (iii) require the Debtors to timely pay all amounts and perform all obligations prior to rejection; and (iv) grant relief from the automatic stay for Link Logistics to apply the security deposit to prepetition amounts owing and to proceed against any available insurance, and (v) grant such other and further relief to Link Logistics as is just and proper.

| | |
|---|---|
| Dated: November 15, 2023 | **GELLERT SCALI BUSENKELL & BROWN, LLC**<br><br>*/s/ Michael Van Gorder*<br>Michael Van Gorder (DE 6214)<br>1201 North Orange Street, Suite 300<br>Wilmington, Delaware 19801<br>Telephone (302) 425-5800<br>mvangorder@gsbblaw.com<br><br>**RAINES FELDMAN LITTRELL LLP**<br>David S. Forsh, Esq. (*pro hac vice* pending)<br>1350 Avenue of the Americas, 22nd Fl<br>New York, NY 10019<br>Telephone (917) 790-7109<br>dforsh@raineslaw.com<br><br>*Attorneys for Link Logistics Real Estate Management LLC and its affiliate BREIT Industrial Canyon GA1B01 LLC* |

10072705.2