# EXHIBIT C

# NATIONS FUND I, LLC



### EQUIPMENT SCHEDULE UHL-0007

executed pursuant to that certain Master Lease Agreement dated as of Friday, March 16, 2012 (the "Lease"; which is incorporated herein by reference). This Equipment Schedule, incorporating by reference the terms and conditions of the Lease, constitutes a separate instrument of lease. To the extent of any conflict or inconsistency between the terms of this Equipment Schedule and the Lease, the terms of this Equipment Schedule shall prevail.

1. EQUIPMENT. The Equipment leased hereunder shall be as set forth in the schedule attached hereto.

TOTAL INVOICE COST: $621,680.03

2. TERM. Upon and after the date of execution hereof, the Equipment shall be subject to the terms and conditions provided herein and in the Lease.

A full term of lease with respect to said Equipment shall commence on the date hereof and shall extend for 60 months after February 01, 2018 (the "Base Lease Commencement Date").

3. RENT.
(a) During the period from the date hereof to the Base Lease Commencement Date (the "Interim Term"), the pro-rated daily rent for said Equipment shall be $308.47 per day; computed as 0.0496188% of the Total Invoice Cost specified above. This pro-rated payment shall be made on the last day of the month for each month during the Interim Term.

(b) From and after the Base Lease Commencement Date, the monthly rent for said Equipment during the term of this Lease shall be

| Payment Date | Amount |
|---|---|
| 02/01/2018 | $9,253.96 |
| 03/01/2018 | $9,253.96 |
| 04/01/2018 | $9,253.96 |
| 05/01/2018 | $9,253.96 |
| 06/01/2018 | $9,253.96 |
| 07/01/2018 | $9,253.96 |
| 08/01/2018 | $9,253.96 |
| 09/01/2018 | $9,253.96 |
| 10/01/2018 | $9,253.96 |
| 11/01/2018 | $9,253.96 |
| 12/01/2018 | $9,253.96 |
| 01/01/2019 | $9,253.96 |
| 02/01/2019 | $9,253.96 |
| 03/01/2019 | $9,253.96 |
| 04/01/2019 | $9,253.96 |
| 05/01/2019 | $9,253.96 |
| 06/01/2019 | $9,253.96 |
| 07/01/2019 | $9,253.96 |
| 08/01/2019 | $9,253.96 |
| 09/01/2019 | $9,253.96 |
| 10/01/2019 | $9,253.96 |
| 11/01/2019 | $9,253.96 |
| 12/01/2019 | $9,253.96 |
| 01/01/2020 | $9,253.96 |
| 02/01/2020 | $9,253.96 |

| | |
|---|---|
| 03/01/2020 | $9,253.96 |
| 04/01/2020 | $9,253.96 |
| 05/01/2020 | $9,253.96 |
| 06/01/2020 | $9,253.96 |
| 07/01/2020 | $9,253.96 |
| 08/01/2020 | $9,253.96 |
| 09/01/2020 | $9,253.96 |
| 10/01/2020 | $9,253.96 |
| 11/01/2020 | $9,253.96 |
| 12/01/2020 | $9,253.96 |
| 01/01/2021 | $9,253.96 |
| 02/01/2021 | $9,253.96 |
| 03/01/2021 | $9,253.96 |
| 04/01/2021 | $9,253.96 |
| 05/01/2021 | $9,253.96 |
| 06/01/2021 | $9,253.96 |
| 07/01/2021 | $9,253.96 |
| 08/01/2021 | $9,253.96 |
| 09/01/2021 | $9,253.96 |
| 10/01/2021 | $9,253.96 |
| 11/01/2021 | $9,253.96 |
| 12/01/2021 | $9,253.96 |
| 01/01/2022 | $9,253.96 |
| 02/01/2022 | $9,253.96 |
| 03/01/2022 | $9,253.96 |
| 04/01/2022 | $9,253.96 |
| 05/01/2022 | $9,253.96 |
| 06/01/2022 | $9,253.96 |
| 07/01/2022 | $9,253.96 |
| 08/01/2022 | $9,253.96 |
| 09/01/2022 | $9,253.96 |
| 10/01/2022 | $9,253.96 |
| 11/01/2022 | $9,253.96 |
| 12/01/2022 | $9,253.96 |
| 01/01/2023 | $9,253.96 |

4.  LESSEE'S CONFIRMATION. Lessee hereby confirms and warrants to Lessor that the Equipment: (a) was duly delivered to Lessee at the location specified in Section 5 hereof; (b) has been received, inspected and determined to be in compliance with all applicable specifications and that the Equipment is hereby accepted for all purposes of the Lease; and (c) is a part of the "Equipment" referred to in the Lease and is taken subject to all terms and conditions therein and herein provided. Lessee hereby represents and warrants to Lessor that, as of the date hereof, there is no Default or Event of Default under any Schedule or any other Lease Document (as such terms are defined in the Lease).

5.  LOCATION OF EQUIPMENT. The location of the Equipment (or the location of the principal garage of the Equipment, if the Equipment is mobile) is specified on the Schedule of Equipment attached hereto.

6.  TAX ATTRIBUTES. The class of property to which the Equipment is assigned (as referenced in Section 14(b)(2) of the Lease) is 5-year property.

7.  COMMERCIAL LIABILITY INSURANCE. The amount of commercial liability insurance referenced in Section 11 of the Lease is $10,000,000.00.

8.  PERSONAL PROPERTY TAXES. Lessee agrees that it will not list any of such Equipment for property tax purposes or report any property tax assessed against such Equipment until otherwise directed in writing by Lessor. Upon receipt of any property tax bill pertaining to such Equipment from the appropriate taxing authority, Lessor will pay such tax

and will invoice Lessee for the expense. Upon receipt of such invoice, Lessee will promptly reimburse Lessor for such expense

9. SCHEDULE OF STIPULATED LOSS VALUES. Exhibit A contains the Schedule of Stipulated Loss Values shall be applicable solely to the Equipment described in this Equipment Schedule.

10. RIDERS. Riders Nos. 1 through 3 attached hereto are incorporated in this Equipment Schedule.

11. PAYMENT AUTHORIZATION. Lessor is hereby irrevocably authorized and directed to pay the Total Invoice Cost specified above as follows:

| Company Name | Address | Amount |
|---|---|---|
| STROUGHTON TRAILERS | 416 S. Academy St. Stoughton, WI 53589 | $621,680.03 |

Lessor is hereby authorized to insert such factually correct information as is necessary to complete this Equipment Schedule, including (without limitation) the date of execution, and the rental payment amount(s) and factor(s).

DATE OF EXECUTION: January 31, 2018.

Lessor: NATIONS FUND I, LLC

By: _____
Name: DENNIS J. BICKERSTAFF
Title: Executive Vice President

Lessee: USF HOLLAND, LLC

By: _____
Name: MARK D. BOEHMER
Title: VICE PRESIDENT & TREASURER

## Exhibit A

| Loss Payment Date | % Factor |
|---|---|
| Prior to 2/1/2018 | 103.00 |
| 2/1/2018 | 101.51 |
| 3/1/2018 | 100.70 |
| 4/1/2018 | 99.88 |
| 5/1/2018 | 99.06 |
| 6/1/2018 | 98.23 |
| 7/1/2018 | 97.40 |
| 8/1/2018 | 96.56 |
| 9/1/2018 | 95.71 |
| 10/1/2018 | 94.86 |
| 11/1/2018 | 94.01 |
| 12/1/2018 | 93.14 |
| 1/1/2019 | 92.27 |
| 2/1/2019 | 91.40 |
| 3/1/2019 | 90.52 |
| 4/1/2019 | 89.63 |
| 5/1/2019 | 88.74 |
| 6/1/2019 | 87.84 |
| 7/1/2019 | 86.93 |
| 8/1/2019 | 86.02 |
| 9/1/2019 | 85.11 |
| 10/1/2019 | 84.18 |
| 11/1/2019 | 83.25 |
| 12/1/2019 | 82.31 |
| 1/1/2020 | 81.37 |
| 2/1/2020 | 80.42 |
| 3/1/2020 | 79.46 |
| 4/1/2020 | 78.50 |
| 5/1/2020 | 77.53 |
| 6/1/2020 | 76.56 |
| 7/1/2020 | 75.57 |
| 8/1/2020 | 74.58 |
| 9/1/2020 | 73.59 |
| 10/1/2020 | 72.58 |
| 11/1/2020 | 71.57 |
| 12/1/2020 | 70.56 |
| 1/1/2021 | 69.53 |
| 2/1/2021 | 68.50 |
| 3/1/2021 | 67.46 |

| Date | Value |
|---:|---:|
| 4/1/2021 | 66.42 |
| 5/1/2021 | 65.37 |
| 6/1/2021 | 64.31 |
| 7/1/2021 | 63.24 |
| 8/1/2021 | 62.16 |
| 9/1/2021 | 61.08 |
| 10/1/2021 | 59.99 |
| 11/1/2021 | 58.90 |
| 12/1/2021 | 57.79 |
| 1/1/2022 | 56.68 |
| 2/1/2022 | 55.56 |
| 3/1/2022 | 54.43 |
| 4/1/2022 | 53.30 |
| 5/1/2022 | 52.16 |
| 6/1/2022 | 51.01 |
| 7/1/2022 | 49.85 |
| 8/1/2022 | 48.68 |
| 9/1/2022 | 47.51 |
| 10/1/2022 | 46.32 |
| 11/1/2022 | 45.13 |
| 12/1/2022 | 43.93 |
| 1/1/2023 | 42.73 |
| 2/1/2023 | 40.00 |

# NATIONS FUND I, LLC

ORIGINAL

### RIDER NO. 1 TO EQUIPMENT SCHEDULE UHL-0007

To and part of Equipment Schedule UHL-0007 dated as of the **31** day of **January**, **2018** (the "Schedule"), executed pursuant to that certain Master Lease Agreement dated as of March 16, 2012 (the "Lease"), each between NATIONS FUND I, LLC, its successors and assigns ("Lessor"), and USF HOLLAND, LLC, its successors and permitted assigns (hereafter referred to both individually, and collectively (if more than one), as "Lessee").

As used herein, "Equipment" shall mean the Equipment described on all Schedules of this series. Section 13 of the Lease remains applicable in the event that Lessee does not irrevocably exercise its option pursuant to Section B of this Rider.

A. TERMINAL RENTAL ADJUSTMENT. It is presently anticipated that the fair market value of the Equipment upon the expiration of the original lease term relating thereto will be an amount equal to the Estimated Residual Value of the Equipment specified on this Schedule. Upon expiration of the original lease term, Lessor will attempt to sell the Equipment. If the Net Proceeds of Sale is less than the Estimated Residual Value, promptly upon demand Lessee shall pay to Lessor the amount of the difference (not to exceed the Lessee Risk Amount). If the Net Proceeds of Sale exceeds the Estimated Residual Value, the amount of the difference promptly shall be paid by Lessor to Lessee. If the Equipment has not been sold on the expiration date of the original lease term relating thereto, then the Net Proceeds of Sale shall be deemed to be zero; and promptly upon demand Lessee shall pay to Lessor the Lessee Risk Amount. If Lessor thereafter shall sell the Equipment, the Net Proceeds of Sale promptly shall be distributed as follows: first, an amount equal to the Lessor Risk Amount shall be retained by Lessor (in addition to the amount previously paid by Lessee to Lessor); and second, the balance (if any) promptly shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Equipment.

As used herein, "Net Proceeds of Sale" shall mean the gross selling price actually received by Lessor less all (i) selling expenses incurred by Lessor, (ii) amounts which (if not paid) would constitute a lien on the Equipment for which Lessee is responsible under the Lease, and (iii) applicable sales or other transfer taxes paid by Lessor; "Estimated Residual Value" shall mean FORTY percent (40%) percent of the Total Invoice Cost of the Equipment; "Lessee Risk Amount" shall mean TWENTY percent (20%) percent of the Total Invoice Cost of the Equipment; and "Lessor Risk Amount" shall mean TWENTY percent (20%) percent of the Total Invoice Cost of the Equipment.

As required by Section 7701(h) of the Internal Revenue Code of 1986, as now or hereafter amended, Lessee shall execute and deliver to Lessor the Certification by Lessee in substantially the form attached hereto as Exhibit No. 1. Lessee acknowledges that the Truth in Mileage Act of 1986 (and the regulations promulgated thereunder) requires the lessee of motor vehicles (at the time such motor vehicles are terminated from the lease) to provide a written disclosure to the lessor regarding the mileage of such motor vehicles. Under this law, the "failure to complete or providing false information may result in fines and/or imprisonment". Therefore, Lessee agrees to provide to Lessor (on a form provided by Lessor) upon termination of a motor vehicle from the Lease the mileage disclosure information required by the Federal regulations.

B. OPTION TO PURCHASE. Provided that no Default or Event of Default has occurred, Lessee shall have the option to purchase, upon the expiration of the term of the Lease, all but not less than all of the Equipment upon the following terms and conditions: If Lessee desires to exercise this option it shall, at least two hundred forty (240) days before expiration of the term of the Lease with respect to the first Schedule of this series to terminate in accordance with its terms, give Lessor written notice of its intention to exercise this option to purchase and shall engage in negotiations with Lessor to determine the purchase price for the Equipment. Not less than one hundred eighty (180) days before expiration of the term of the Lease with respect to the first Schedule of this series to terminate in accordance with its terms, Lessee shall give Lessor written notice of its election to purchase on the terms mutually agreed upon during negotiations. Such election shall be effective with respect to all Equipment leased under all Schedules of this series. At the expiration of the term of the Lease, Lessee shall pay to Lessor in cash any Rent due on that date plus the purchase price for the Equipment so purchased, determined as hereinafter provided. Lessee's exercise of the purchase option contained herein shall constitute a sale of the Equipment pursuant to Section A above and Lessee shall be responsible for the performance of its obligations pursuant to Section A above.

The purchase price of the Equipment shall be an amount equal to its then Fair Market Value, together with all taxes and charges upon sale. For purposes of this Section, "Fair Market Value" shall mean FORTY percent (40%) of the Total Invoice Cost of the Equipment.

Notwithstanding any election of Lessee to purchase, the provisions of the Lease shall continue in full force and effect until the passage of ownership of the Equipment upon the date of purchase. On the date of purchase, Lessor shall deliver to Lessee a bill of sale transferring and assigning to Lessee, without recourse or warranty, except (with respect to the status of title conveyed) in respect of Lessor's acts, all of Lessor's right, title and interest in and to the Equipment. Lessor shall not be required to make and may specifically disclaim any representation or warranty as to the condition of the Equipment or any other matters.

NATIONS FUND I, LLC
Lessor

By: _____
Name: DENNIS L. BICKERSTAFF
Title: Executive Vice President

USF HOLLAND, LLC
Lessee

By: _____
Name: MARK D. BOEHMER
Title: VICE PRESIDENT & TREASURER



# NATIONS FUND I, LLC

---

### RIDER NO. 2 TO EQUIPMENT SCHEDULE UHL-0007

To and part of Equipment Schedule UHL-0007 dated as of the  31  day of  January 2018  (the "Schedule"), executed pursuant to that certain Master Lease Agreement dated as of Friday, March 16, 2012 (the "Lease"), each between NATIONS FUND I, LLC, its successors and assigns ("Lessor"), and USF HOLLAND, LLC, its successors and permitted assigns (hereafter referred to both individually, and collectively (if more than one), as "Lessee").

RETURN PROVISIONS: In addition to the provisions of Section 13 of the Lease, and provided that Lessee has not elected to exercise its option to purchase the Equipment, Lessee shall, at its expense:

(1) ensure all Equipment and equipment operations conform to all applicable local, state, and Federal laws, health and safety guidelines. Upon return, the Equipment will be complete and operational with all components as originally supplied and will have passed D.O.T. inspections, or other appropriate agency or association requirements for operation. If applicable, an inspection sticker or certificate will be furnished to Lessor verifying compliance with any regulatory requirements. Lessee shall satisfy all legal and regulatory conditions necessary for Lessor to sell or lease the Equipment to a third party. Lessee will keep all licenses and operating certificates required for operation of the Equipment current during the term of the Lease. Lessee will at all times use the Equipment in compliance with all applicable laws and regulations of any governmental, local and regulatory agency;

(2) provide safe, secure storage for the Equipment for ninety (90) days after expiration or earlier termination of the Lease at not more than five (5) locations selected by Lessor;

(3) take such action as may be required so that, upon return, each unit of Equipment must meet all of its manufacturer's specifications for performance under full-rated loads, meet current smoke emission standards and be free of oil leaks, and all of the following conditions:

- (a) Tires: All tires shall be of the same type (original size) and manufacturer (i.e. matched) and have a minimum of fifty (50) percent remaining tread on original or recapped casings without flat or bald spots, dry rot, exposed cord or cuts in sidewall;

- (b) General Condition: Upon return, there must be no structural or mechanical damage. All rust or corrosion must be treated in a manner consistent with standard industry practices. All Equipment must have a good overall appearance and no material damage. The Equipment shall be cleaned (internal and external), free of rust and corrosion with no missing or damaged parts. Upon return, all commercial logos, advertising, graffiti, insignias and lettering shall be removed and repaired in a workmanlike manner so as to not damage the Equipment. Manufacturer's identity plates and markings shall not be removed. With respect to each unit, the total cost of necessary repairs for damage or other related costs necessary to place the Equipment in such condition as to be in complete compliance with the Lease may not exceed $250.00;

- (c) Documents and Records: Written records of scheduled and other maintenance and repair work done shall be kept, dated, and signed by the appropriate authority. A service history or log will be maintained during the Lease term and a copy provided to Lessor upon request during the term of the Lease, or at Lease termination. All maintenance records, maintenance record jackets, repair jackets, repair orders, license plates, registration certificates and all other similar documents, in their entirety, must be returned to Lessor;

- (d) Brakes: Brake drums and linings shall not be cracked and shall not exceed manufacturers' recommended wear limits. Brake linings shall have fifty (50) percent remaining wear;

- (e) Maintenance: Lessee shall strictly follow the manufacturer's recommended maintenance and service schedule, as required to validate any warranty, at Lessee's sole cost and expense. Any maintenance or repair work shall comply with the guidelines and procedures as specified by the manufacturers of the

AJM 2024235.v1 9/20/2010 4:14 PM :TL

equipment and in accordance with standards in the industry. Lessee will use only original manufacturer's approved replacement parts and components in the performance or any maintenance and repair of the Equipment. Lessee will at all times maintain the Equipment in good operational condition and appearance, and shall not discriminate such maintenance between owned or leased equipment;

(f) Use: Lessee guarantees that the Equipment will not be or have been loaded beyond the rated capacity as certified by the manufacturer at any time during the Lease term. Lessee will not discriminate in the use of the Equipment from any other similar equipment in its fleet; and

(g) Alterations: Lessee will not modify the Equipment without the prior written approval of Lessor. In any event, Lessee will not make any modifications or alterations that would impair the Equipment's use, value, marketability or manufacturer's warranty and recommendations. Lessee will not make any alterations to the Equipment that would damage or restrict the use of the Equipment from its initial use and design and that cannot be removed without damage to the unit. Changes, modifications or additions to the Equipment mandated by Federal or state authorities will be completed by Lessee and become property of Lessor; and

(4) prior to any return of the Equipment, an in-depth physical inspection will be conducted by a manufacturer's service representative(s) or other authorized maintenance provider selected by Lessor. Any part, component or function found not to be within the manufacturer's tolerances and operational specifications will be replaced or brought within those tolerances and specifications to the satisfaction of Lessor. Lessee shall obtain written certification from the manufacturers or their authorized representative, that the Equipment has been returned in accordance with the terms set forth herein.

As used herein, "Equipment" shall mean the Equipment described on all Schedules of this series.

**NATIONS FUND I, LLC**
Lessor

By: *(signature)*
Name: DENNIS J. BICKERSTAFE
Title: Executive Vice President

**USF HOLLAND, LLC**
Lessee

By: *(signature)*
Name: MARK D. BOEHMER
Title: VICE PRESIDENT & TREASURER



## NATIONS FUND I, LLC

### RIDER NO. 3 TO EQUIPMENT SCHEDULE UHL-0007

To and part of Equipment Schedule UHL-0007 dated as of the **31** day of **January 2018** (the "Schedule") executed pursuant to that certain Master Lease Agreement dated as of Friday, March 16, 2012 (the "Lease"), each between NATIONS FUND I, LLC, its successors and assigns ("Lessor"), and USF HOLLAND, LLC, its successors and permitted assigns (hereafter referred to both individually, and collectively (if more than one), as "Lessee").

Lessee agrees to add Lessor as owner to any piece of titled equipment included in the Schedule of Equipment.

OWNER name to be listed as:

NATIONS FUND I, LLC
501 Merritt Seven
Norwalk, CT 06851

Once Lessor's security interest in the titled equipment has been perfected, Lessee agrees that the original titles will be held by the Lessor or its agents. If Lessor does not receive the original title with appropriate information by April 30, 2018, it will be an Event of Default under the Master Lease Agreement.

**NATIONS FUND I, LLC**

Lessor

By: _____
Name: DENNIS J. BICKERSTAFF
Title: Executive Vice President

**USF HOLLAND, LLC**
Lessee

By: _____
Name: MARK D. BOEHMER
Title: VICE PRESIDENT & TREASURER

# NATIONS FUND I, LLC



## SCHEDULE OF EQUIPMENT

Lessee: USF HOLLAND, LLC,
Approved by _____
(Lessee to initial each page)

Page No: 1 of 3

Attached to Equipment Schedule No. UHL-0007

Equipment located at (or the location of the principal garage of the Equipment, if the Equipment is mobile):

700 S. Waverly Road
HOLLAND, MI 49423

| Manufacturer and/or Vendor Name & Invoice No. | Description (including VIN or S/N) | Total Invoice Cost |
|---|---|---|
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538746<br>S/N:1DW1A532XJBA08847 | $31,084.03 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538748<br>S/N:1DW1A532XJBA08864 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538710<br>S/N:1DW1A5322JBA08860 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538712<br>S/N:1DW1A5323JBA08835 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538713<br>S/N:1DW1A5323JBA08849 | $31,084.00 |



| | | |
|---|---|---|
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538715<br>S/N:1DW1A5323JBA08866 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538717<br>S/N:1DW1A5324JBA08844 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT :538719<br>S/N:1DW1A5324JBA08861 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538721<br>S/N:1DW1A5325JBA08836 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538725<br>S/N:1DW1A5326JBA08831 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538726<br>S/N:1DW1A5326JBA08845 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT I:538730<br>S/N:1DW1A5327JBA08837 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538733<br>S/N:1DW1A5327JBA08868 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538735<br>S/N:1DW1A5328JBA08829 | $31,084.00 |



| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538736<br>S/N:1DW1A5328JBA08832 | $31,084.00 |
|---|---|---|
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538702<br>S/N:1DW1A5320JBA08856 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538705<br>S/N:1DW1A5321JBA08848 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538741<br>S/N:1DW1A5329JBA08841 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538742<br>S/N:1DW1A5329JBA08855 | $31,084.00 |
| Stoughton | 2018 Stoughton 53' Trailer<br>Model Year:2018<br>UNIT:538744<br>S/N:1DW1A5329JBA08872 | $31,084.00 |

