# EXHIBIT H

## OMNIBUS AMENDMENT OF EQUIPMENT SCHEDULES

**THIS AGREEMENT** to amend equipment schedules ( the "Amendment Agreement") is made and entered into as of January 24, 2023 by and among NATIONS FUND I, LLC ("NFI") (referred to herein as "Lessor"), USF HOLLAND, LLC (referred to herein as "Lessee") and YELLOW CORPORATION ("Guarantor"). The Lessor, Lessee and the Guarantor are hereinafter sometimes collectively referred to as the "Parties."

**WHEREAS**, Lessor and Lessee are parties to (i) that certain Master Lease Agreement (the "Master Lease"), dated as of March 16, 2012 (capitalized terms used herein and not otherwise defined shall have the same definition as set forth in the Master Lease); (ii) that certain Equipment Schedule UHL-0007 dated January 31, 2018; (iii) that certain Equipment Schedule UHL-0008 dated January 31, 2018; (iv) that certain Equipment Schedule UHL-0009 dated February 28, 2018; and (v) that certain Equipment Schedule UHL-0010 dated February 28, 2018 (the Master Lease and each of the foregoing Equipment Schedules together with any and all amendments, riders, and other documents executed in connection therewith are referred to herein as the "Lease");

**WHEREAS**, Guarantor guaranteed the Lessee's obligations under the Master Lease pursuant to a Master Lease Guaranty dated March 16, 2012, (as the same may be amended, supplemented, extended or otherwise modified from time to time, "Master Lease Guaranty");

**WHEREAS**, Lessee has requested that Lessor extend the Lease term for each Equipment Schedule through February 1, 2024 (the "Extended Term");

**WHEREAS**, Lessor has agreed to such request subject to the Terms and Conditions set forth herein;

**NOW THEREFORE**, for the forgoing reasons set forth in the preamble to this agreement which are incorporated herein and made a part of this agreement and good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. The Term of each Equipment Schedule is extended through the Extended Term.

2. The monthly rent during the Extended Term for Equipment Schedule UHL-0007 shall be as follows:

| DATE | PAYMENT |
|---|---|
| 2/1/2023 | $7,994.56 |
| 3/1/2023 | $7,994.56 |
| 4/1/2023 | $7,994.56 |
| 5/1/2023 | $7,994.56 |
| 6/1/2023 | $7,994.56 |
| 7/1/2023 | $7,994.56 |
| 8/1/2023 | $7,994.56 |
| 9/1/2023 | $7,994.56 |
| 10/1/2023 | $7,994.56 |
| 11/1/2023 | $7,994.56 |
| 12/1/2023 | $7,994.56 |
| 1/1/2024 | $7,994.56 |

3. The Schedule of Stipulated Loss Values for Equipment Schedule UHL-0007 during the Extended Term shall be as follows and shall be applied to an amended Total Invoice Cost of $248,672.01:

| DATE | % OF BASIS |
|---|---|
| 2/1/2023 | 103.02 |
| 3/1/2023 | 100.64 |
| 4/1/2023 | 98.23 |
| 5/1/2023 | 95.80 |
| 6/1/2023 | 93.35 |
| 7/1/2023 | 90.89 |
| 8/1/2023 | 88.39 |
| 9/1/2023 | 85.88 |
| 10/1/2023 | 83.35 |
| 11/1/2023 | 80.80 |
| 12/1/2023 | 78.22 |
| 1/1/2024 | 75.62 |
| 2/1/2024 | 73.00 |

4. The monthly rent during the Extended Term for Equipment Schedule UHL-0008 shall be as follows:

| DATE | PAYMENT |
|---|---|
| 2/1/2023 | $23,227.86 |
| 3/1/2023 | $23,227.86 |
| 4/1/2023 | $23,227.86 |
| 5/1/2023 | $23,227.86 |
| 6/1/2023 | $23,227.86 |
| 7/1/2023 | $23,227.86 |
| 8/1/2023 | $23,227.86 |
| 9/1/2023 | $23,227.86 |
| 10/1/2023 | $23,227.86 |
| 11/1/2023 | $23,227.86 |
| 12/1/2023 | $23,227.86 |
| 1/1/2024 | $23,227.86 |

5. The Schedule of Stipulated Loss Values for Equipment Schedule UHL-0008 during the Extended Term shall be as follows and shall be applied to an amended Total Invoice Cost of $722,505.92:

| DATE | % OF BASIS |
|---|---|
| 2/1/2023 | 103.02 |
| 3/1/2023 | 100.64 |
| 4/1/2023 | 98.23 |
| 5/1/2023 | 95.80 |
| 6/1/2023 | 93.35 |
| 7/1/2023 | 90.89 |
| 8/1/2023 | 88.39 |
| 9/1/2023 | 85.88 |
| 10/1/2023 | 83.35 |

| DATE | % OF BASIS |
|---|---|
| 11/1/2023 | 80.80 |
| 12/1/2023 | 78.22 |
| 1/1/2024 | 75.62 |
| 2/1/2024 | 73.00 |

6. The monthly rent during the Extended Term for Equipment Schedule UHL-0009 shall be as follows:

| DATE | PAYMENT |
|---|---|
| 2/1/2023 | $4,010.78 |
| 3/1/2023 | $4,010.78 |
| 4/1/2023 | $4,010.78 |
| 5/1/2023 | $4,010.78 |
| 6/1/2023 | $4,010.78 |
| 7/1/2023 | $4,010.78 |
| 8/1/2023 | $4,010.78 |
| 9/1/2023 | $4,010.78 |
| 10/1/2023 | $4,010.78 |
| 11/1/2023 | $4,010.78 |
| 12/1/2023 | $4,010.78 |
| 1/1/2024 | $4,010.78 |

7. The Schedule of Stipulated Loss Values for Equipment Schedule UHL-0009 during the Extended Term shall be as follows and shall be applied to an amended Total Invoice Cost of $124,756.01:

| DATE | % OF BASIS |
|---|---|
| 2/1/2023 | 103.02 |
| 3/1/2023 | 100.64 |
| 4/1/2023 | 98.23 |
| 5/1/2023 | 95.80 |
| 6/1/2023 | 93.35 |
| 7/1/2023 | 90.89 |
| 8/1/2023 | 88.39 |
| 9/1/2023 | 85.88 |
| 10/1/2023 | 83.35 |
| 11/1/2023 | 80.80 |
| 12/1/2023 | 78.22 |
| 1/1/2024 | 75.62 |
| 2/1/2024 | 73.00 |

8. The monthly rent during the Extended Term for Equipment Schedule UHL-0010 shall be as follows:

| DATE | PAYMENT |
|---|---|
| 2/1/2023 | $26,872.06 |
| 3/1/2023 | $26,872.06 |
| 4/1/2023 | $26,872.06 |
| 5/1/2023 | $26,872.06 |
| 6/1/2023 | $26,872.06 |

| | |
|---|---|
| 7/1/2023 | $26,872.06 |
| 8/1/2023 | $26,872.06 |
| 9/1/2023 | $26,872.06 |
| 10/1/2023 | $26,872.06 |
| 11/1/2023 | $26,872.06 |
| 12/1/2023 | $26,872.06 |
| 1/1/2024 | $26,872.06 |

9.  The Schedule of Stipulated Loss Values for Equipment Schedule UHL-0010 during the Extended Term shall be as follows and shall be applied to an amended Total Invoice Cost of $835,859.91:

| DATE | % OF BASIS |
|---|---|
| 2/1/2023 | 103.02 |
| 3/1/2023 | 100.64 |
| 4/1/2023 | 98.23 |
| 5/1/2023 | 95.80 |
| 6/1/2023 | 93.35 |
| 7/1/2023 | 90.89 |
| 8/1/2023 | 88.39 |
| 9/1/2023 | 85.88 |
| 10/1/2023 | 83.35 |
| 11/1/2023 | 80.80 |
| 12/1/2023 | 78.22 |
| 1/1/2024 | 75.62 |
| 2/1/2024 | 73.00 |

10. RIDER NO. 1 for each Equipment Schedule is replaced in its entirety with Rider No. 1 to Omnibus Amendment of Equipment Schedules UHL-0007, UHL-0008, UHL-0009 and UHL-0010 attached hereto and made a part hereof.

11. The Guarantor acknowledges the terms of this Amendment Agreement and agrees that the terms of the Master Lease Guaranty remain in full force and effect and that the Guarantor's obligations set forth in the Master Lease Guaranty extend to this Amendment Agreement.

12. Except as expressly set forth herein, the terms and conditions of the Lease, Schedules, Master Lease Guaranty and Lease Documents remain unmodified and in full force and effect as if incorporated herein in their entirety.

13. This Agreement may be executed in any number of counterparts and by different parties to this Agreement in separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement. Each party agrees that the electronic signatures of the parties included in this Agreement are intended to authenticate this writing and to have the same force and effect as manual signatures.  Delivery of an executed signature page counterpart hereof by telecopy, emailed .pdf or any other electronic means that reproduces an image of the actual executed signature page shall be effective as delivery of a manually executed counterpart hereof.  The words "execution," "signed," "signature," "delivery," and words of like import in or relating to any document to be signed in connection with this LOAN AND SECURITY AGREEMENT and the other Lease Documents and the transactions contemplated hereby shall be deemed to include digital signatures, electronic signatures, the electronic association of signatures and records on electronic platforms including, but not limited to, DocuSign, deliveries or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature, physical delivery thereof or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law.

**IN WITNESS WHEREOF**, the parties hereto expressing their agreement to the terms and conditions set forth herein, have caused this Agreement to be executed as of the date first written above.

**LESSEE:**  **USF HOLLAND, LLC**

By:_____
Name:  Anthony Carreno
Title: Senior Vice President Treasury and Investor Relations

**GUARANTOR:**  **YELLOW CORPORATION**

By:_____
Name:  Anthony Carreno
Title: Senior Vice President Treasury and Investor Relations

**LESSOR:**  **NATIONS FUND I, LLC**

By:_____
Name:   Shari Williams
Title:     Authorized Signatory

5

# NATIONS FUND I, LLC

## RIDER NO. 1 TO OMNIBUS AMENDMENT OF EQUIPMENT SCHEDULES UHL-0007, UHL-0008, UHL-0009 and UHL-0010 ("RIDER NO. 1")

This Rider No. 1 is entered into as of January 24, 2023 between NATIONS FUND I, LLC, its successors and assigns ("Lessor"), and USF HOLLAND, LLC, its successors and permitted assigns (hereafter referred to both individually, and collectively (if more than one), as "Lessee") pursuant to the terms of that certain Omnibus Amendment of Equipment Schedules of even date.

As used herein, "Equipment" shall mean the Equipment described on all Schedules of this series. Section 13 of the Lease remains applicable in the event that Lessee does not irrevocably exercise its option pursuant to Section B of this Rider.

A. TERMINAL RENTAL ADJUSTMENT. It is presently anticipated that the fair market value of the Equipment upon the expiration of the original lease term relating thereto will be an amount equal to the Estimated Residual Value of the Equipment specified on this Schedule. Upon expiration of the original lease term, Lessor will attempt to sell the Equipment. If the Net Proceeds of Sale is less than the Estimated Residual Value, promptly upon demand Lessee shall pay to Lessor the amount of the difference (not to exceed the Lessee Risk Amount). If the Net Proceeds of Sale exceeds the Estimated Residual Value, the amount of the difference promptly shall be paid by Lessor to Lessee. If the Equipment has not been sold on the expiration date of the original lease term relating thereto, then the Net Proceeds of Sale shall be deemed to be zero; and promptly upon demand Lessee shall pay to Lessor the Lessee Risk Amount. If Lessor thereafter shall sell the Equipment, the Net Proceeds of Sale promptly shall be distributed as follows: first, an amount equal to the Lessor Risk Amount shall be retained by Lessor (in addition to the amount previously paid by Lessee to Lessor); and second, the balance (if any) promptly shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Equipment.

As used herein, "Net Proceeds of Sale" shall mean the gross selling price actually received by Lessor less all (i) selling expenses incurred by Lessor, (ii) amounts which (if not paid) would constitute a lien on the Equipment for which Lessee is responsible under the Lease, and (iii) applicable sales or other transfer taxes paid by Lessor; "Estimated Residual Value" shall mean SEVENTY percent (70%) percent of the Total Invoice Cost of the Equipment; "Lessee Risk Amount" shall mean FIFTY-EIGHT percent (58%) percent of the Total Invoice Cost of the Equipment; and "Lessor Risk Amount" shall mean TWELVE percent (12%) percent of the Total Invoice Cost of the Equipment.

As required by Section 7701(h) of the Internal Revenue Code of 1986, as now or hereafter amended, Lessee shall execute and deliver to Lessor the Certification by Lessee in substantially the form attached hereto as Exhibit No. 1. Lessee acknowledges that the Truth in Mileage Act of 1986 (and the regulations promulgated thereunder) requires the lessee of motor vehicles (at the time such motor vehicles are terminated from the lease) to provide a written disclosure to the lessor regarding the mileage of such motor vehicles. Under this law, the "failure to complete or providing false information may result in fines and/or imprisonment". Therefore, Lessee agrees to provide to Lessor (on a form provided by Lessor) upon termination of a motor vehicle from the Lease the mileage disclosure information required by the Federal regulations.

B. OPTION TO PURCHASE. Provided that no Default or Event of Default has occurred, Lessee shall have the option to purchase, upon the expiration of the term of the Lease, all but not less than all of the Equipment upon the following terms and conditions: If Lessee desires to exercise this option it shall, at least two hundred forty (240) days before expiration of the term of the Lease with respect to the first Schedule of this series to terminate in accordance with its terms, give Lessor written notice of its intention to exercise this option to purchase and shall engage in negotiations with Lessor to determine the purchase price for the Equipment. Not less than one hundred eighty (180) days before expiration of the term of the Lease with respect to the first Schedule of this series to terminate in accordance with its terms, Lessee shall give Lessor written notice of its election to purchase on the terms mutually agreed upon during negotiations. Such election shall be effective with respect to all Equipment leased under all Schedules of this series. At the expiration of the term of the Lease, Lessee shall pay to Lessor in cash any Rent due on that date plus the purchase price for the Equipment so purchased, determined as hereinafter provided. Lessee's exercise of the purchase option

contained herein shall constitute a sale of the Equipment pursuant to Section A above and Lessee shall be responsible for the performance of its obligations pursuant to Section A above.

The purchase price of the Equipment shall be an amount equal to its then Fair Market Value, together with all taxes and charges upon sale. For purposes of this Section, "Fair Market Value" shall mean SEVENTY percent (70%) of the Total Invoice Cost of the Equipment.

Notwithstanding any election of Lessee to purchase, the provisions of the Lease shall continue in full force and effect until the passage of ownership of the Equipment upon the date of purchase. On the date of purchase, Lessor shall deliver to Lessee a bill of sale transferring and assigning to Lessee, without recourse or warranty, except (with respect to the status of title conveyed) in respect of Lessor's acts, all of Lessor's right, title and interest in and to the Equipment. Lessor shall not be required to make and may specifically disclaim any representation or warranty as to the condition of the Equipment or any other matters.

NATIONS FUND I, LLC
Lessor

By: _____
Name:  Shari Williams
Title: Authorized Signatory

USF HOLLAND, LLC
Lessee

By: _____
Name:  Anthony Carreno
Title:  Senior Vice President Treasury and Investor Relations

2

EXHIBIT NO. 1

CERTIFICATION BY LESSEE

This Certification is provided by the undersigned ("Lessee") in connection with that certain Master Lease Agreement dated as of March 16, 2012 (the "Lease"), with NATIONS FUND I, LLC. The parties intend and agree that the Lease constitute a "qualified motor vehicle operating agreement" within the meaning of Section 7701(h) of the Internal Revenue Code of 1986, as now or hereafter amended, and this Certification is required to be provided pursuant to that Section.

Lessee hereby certifies, under penalty of perjury, that it intends that more than fifty (50) percent of the use of the Equipment (as such term is defined in the Lease) is to be in a trade or business of the Lessee.

Lessee acknowledges that it has been advised that it will not be treated as the owner of the Equipment for Federal income tax purposes.

IN WITNESS WHEREOF, Lessee has caused this Certification to be duly executed as of the 27 day of January, 2023.

USF HOLLAND, LLC
Lessee

By: _____
Name: Anthony Carreno
Title: Senior Vice President Treasury and Investor Relations