# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF CODY LEUNG KALDENBERG
IN SUPPORT OF ENTRY OF ORDER (I) APPROVING
CERTAIN ASSET PURCHASE AGREEMENTS; (II) AUTHORIZING AND
APPROVING SALES OF CERTAIN REAL PROPERTY ASSETS OF THE DEBTORS
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, IN
EACH CASE PURSUANT TO THE APPLICABLE ASSET PURCHASE AGREEMENT;
(III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION
THEREWITH, IN EACH CASE AS APPLICABLE PURSUANT TO THE APPLICABLE
ASSET PURCHASE AGREEMENT; AND (IV) GRANTING RELATED RELIEF**

I, Cody Leung Kaldenberg, hereby declare under penalty of perjury as follows:

1. I am a founding member of and partner at Ducera Partners LLC ("Ducera"), which maintains its principal office at 11 Times Square, 36th Floor, New York, New York 10036. Ducera is the investment banker to the above captioned debtors and debtors in possession (collectively, the "Debtors").

2. I submit this declaration (this "Declaration") in support of the Court's authorization of the proposed Sale Transactions pursuant to the terms set forth in that certain proposed *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

*Certain Real Property Assets of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, In Each Case Pursuant to the Applicable Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, In Each Case Pursuant to the Applicable Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 1285] (the "Sale Order"), including the Court's entry of the Sale Order and authorization for the Debtors to enter into the Asset Purchase Agreements (as defined in the Sale Order).[2]

**Professional Background and Qualifications**

3. Founded in 2015, Ducera is an independent investment banking advisory firm, which has extensive experience in, among other areas, providing leading-edge capital structure and restructuring advice in both in-court and out-of-court situations. In addition to providing investment banking services regarding numerous out of court restructurings and sales, Ducera professionals have served as investment bankers to debtors, creditor groups, asset purchasers, committees, boards of directors, and trustees in a number of bankruptcy matters. Ducera provides a broad range of corporate and financial services to its clients, including with respect to: general corporate advice; mergers, acquisitions, and divestitures; corporate restructurings; and private placements. Ducera provides its services worldwide from three offices located in the United States.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignments of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order"), the proposed Sale Order, or the Notice of Winning Bidders, as applicable.

4.      Ducera has more than fifty professionals and is one of the leading advisors and investment bankers to debtors, secured and unsecured creditors, acquirers, and other parties in interest involved with financially troubled companies requiring complex financial restructurings, both in and outside of bankruptcy. Ducera has represented debtors, creditors, and other constituents in some of the largest restructuring cases in the United States, including: (a) *In re Diebold Holding Co., LLC*, Case No. 23-90602 (DRJ) (Bankr. S.D. Tex. July 18, 2023) [Docket No. 266]; (b) *In re Virgin Orbit Holdings, Inc.*, Case No. 23-10405 (KBO) (Bankr. D. Del. May 15, 2023) [Docket No. 261]; (c) *In re Altera Infrastructure L.P.*, Case No. 22-90130 (MI) (d) *In re GBG USA Inc.*, Case No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 22, 2021) [Docket No. 230]; (e) *In re Superior Energy Servs., Inc.*, Case No. 20-35812 (DRJ) (Bankr. S.D. Tex. Feb. 2, 2021) [Docket No. 316]; (f) *In re Hornbeck Offshore Services, Inc.*, Case No. 20-32679 (DRJ); (g) *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI); (h) *In re Toys "R" Us, Inc.*, Case No. 17-34665 (KLP) (Bankr. E.D. Va. Jan. 26, 2018).

5.      I have nearly twenty years of restructuring related investment banking experience and have worked on a broad range of restructuring advisory assignments across a variety of industry sectors. Since joining Ducera in 2015, I have provided investment banking expertise and financing advice, including with respect to marketing and selling businesses and assets, to financially distressed companies as well as lenders and strategic investors in distressed and special situations engagements. Prior to joining Ducera, I worked as a Director at Perella Weinberg Partners for over six years, advising companies and other stakeholders on special situation restructuring engagements, prior to which I worked as an associate at Goldman Sachs for over four years. I earned a Bachelor of Science in Economics from the Massachusetts Institute of Technology in 2004.

6. I have worked closely with the Debtors' management and other professionals retained by the Debtors in advance of and throughout these chapter 11 cases and have become well acquainted with the Debtors' capital structure and assets, including the Debtors' extensive portfolio of Real Property Assets. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Ducera team, the Debtors' management team, and the Debtors' other advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis. I am authorized to submit this Declaration on behalf of the Debtors. I am not being specifically compensated for this testimony other than through payments received by Ducera as a professional retained by the Debtors, subject to approval by this Court. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.

**Marketing and Sale Process for Certain of the Real Property Assets**

7. Prior to the Petition Date, on July 31, 2023, Ducera commenced an extensive process to market the Debtors' Assets, including the Real Property Assets (*i.e.*, both Owned Properties and Leased Properties). As part of this process, Ducera contacted over 650 parties, including all or substantially all of the Debtors' industry competitors, that Ducera, in consultation with the Debtors' management team, considered to be likely or potential participants in a sale process of the Real Property Assets: 174 Owned Properties and 149 Leased Properties.

8. On August 7, 2023, to advance the Debtors marketing and sale process of their Assets, the Debtors filed that certain *Motion of the Debtors for Entry of an Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors Assets; (B) Scheduling an Auction and*

*Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures; (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 22] (the "<u>Bidding Procedures Motion</u>"). On September 15, 2023, the Court entered the Bidding Procedures Order authorizing the relief requested therein.

9. On September 13, 2023, substantially contemporaneously with the Court's entry of the Bidding Procedures Order, and to establish a competitive price floor for the Debtors' Real Property Assets, the Debtors filed that certain *Motion for Entry of an Order (I) Approving the Debtors' Selection of a Real Estate Stalking Horse Bidder, (II) Approving Bid Protections In Connection Therewith, and (III) Granting Related Relief* [Docket No. 518] (the "<u>Stalking Horse Motion</u>"). I submitted to this Court a declaration in support of the relief requested in the Stalking Horse Motion [Docket No. 529]. On September 21, 2023, the Court entered that certain *Order (I) Approving the Debtors' Selection of a Stalking Horse Bidder, (II) Approving Bid Protections In Connection Therewith, and (III) Granting Related Relief* [Docket No. 624] (the "<u>Stalking Horse Order</u>"), approving Estes Express Lines as the Real Estate Stalking Horse Bidder for all of the Debtors' Owned Properties at an aggregate purchase price of $1.525 billion (the "<u>Stalking Horse Bid</u>").

10. The Debtors, with guidance from Ducera, have been focused throughout these chapter 11 cases on maximizing value for the benefit of all stakeholders. Accordingly, during the first three months of these chapter 11 cases, and notwithstanding the Stalking Horse Bid, the Debtors, with guidance from Ducera, entered into non-disclosure agreements with over 400

interested parties in an effort to reach a higher and better result. Ducera collected, organized, and aggregated key due diligence materials related to the Debtors and the Real Property Assets in the Data Room and provided all such parties with access to the Data Room, in addition to sending them other marketing materials. Prior to the Bid Deadline for the Real Property Assets, Ducera had received over 120 indications of interest for the Real Property Assets. As of the Bid Deadline for the Real Property Assets (November 9, 2023 at 4:00 p.m. (E.T.), over 70 parties had submitted Bids for Real Property Assets, and those Bids varied widely in terms of the assets parties were interested in bidding on and the prices they were willing to pay.

11. On November 28, 2023 at 9:00 a.m. (E.T.), the Debtors, in a process led by Ducera and as authorized by the Bidding Procedures Order, commenced an Auction for the Real Property Assets, to which 62 Qualified Bidders were invited to participate for bidding on the Initial Properties (defined below). Bidding on the Initial Properties took four full days and was extremely competitive. Multiple bidders participated actively in the process and various assets received multiple overbids such that, even when certain assets were removed from the Auction because we believed they could secure higher and better prices through an alternate sale structure, the auction for 130 of the Real Property Assets resulted in proceeds that far exceeded the Stalking Horse Bid.

12. More specifically, on December 4, 2023, the Debtors filed that certain *Notice of Winning Bidders and, if Applicable, Back-Up Bidders With Respect To Certain of the Debtors' Real Property Assets* [Docket No. 1268] (the "Notice of Winning Bidders") to announce that the Debtors, following the completion of competitive bidding of one hundred and twenty-eight (128) Owned Properties and two (2) Leased Properties (collectively, the "Initial Properties") as part of the Real Estate Auction, had received binding offers, pursuant to twenty-one (21) Asset Purchase

Agreements, to purchase the Initial Properties for an aggregate purchase price amount of $1,882,637,655 (collectively, the "Winning Bids").

13. Relative to the "all properties" Stalking Horse Bid, the Winning Bids reflect an improvement of approximately $350 million in sale proceeds (across just the Initial Properties). Separate and apart from the sales being presented for Court approval pursuant to the Sale Order at this time, forty-six (46) Owned Properties (or approximately twenty-five percent (25%) of them) and nearly all of the Debtors' Leased Properties (collectively, the "Remaining Properties") remain to be sold by the Debtors pursuant to either the Real Estate Auction or continued marketing efforts. Even accounting for the Estes Bid Protections (as defined in the Stalking Horse Order), the Winning Bids, in my judgment, represent a significant improvement relative to the Stalking Horse Bid. Accordingly, I respectfully submit that they should be approved pursuant to their respective Asset Purchase Agreements and the Sale Order.

14. The Real Estate Auction, with respect to bidding on the Initial Properties, was conducted fairly and competitively pursuant to the Bidding Procedures (and the auction procedures contained therein), which were devised in close consultation with the Consultation Parties, including the Committee, the Prepetition Secured Parties, the Prepetition UST Secured Parties, and the DIP Secured Parties. Indeed, the Consultation Parties' advisors were invited to attend, and did attend and/or monitor, the Real Estate Auction for the Initial Properties, and Ducera kept such parties apprised with respect to each round of competitive bidding and each communication conveyed to Qualified Bidders. To the best of my knowledge, the Consultation Parties supported (and continue to support) the manner in which the Real Estate Auction was conducted for the Initial Properties (and continues for certain of the Remaining Properties) and the relief requested by the Debtors in the proposed Sale Order.

7

15. As part of the Real Estate Auction, each of the Initial Properties was auctioned to all applicable Qualified Bidders on a "property-by-property" basis in the Debtors' effort, in consultation with the Consultation Parties, to maximize the proceeds of each individual property sold.[3] Ducera conducted several rounds of bidding, imposing "minimum bid requirements" and other procedural rules agreed to by each of the Consultation Parties and communicated in advance to each applicable Qualified Bidder. Based upon my professional judgment and experience, the Real Estate Auction with respect to the Initial Properties was conducted fairly and competitively with the singular goal of maximizing estate value, and the outcome did maximize estate value.

16. Further, each Winning Bidder was required to attest to and did attest to in writing, at each round of bidding, that its bid was submitted without any collusion or fraud of any kind whatsoever. I and the Ducera team consistently informed Qualified Bidders that collusion as part of the Real Estate Auction was strictly prohibited, and the same is set forth in the Bidding Procedures. I have no reason to believe that any Winning Bidder colluded or proceeded in anything less than good faith during this process and in these chapter 11 cases, nor am I aware of any "side deals" or similar arrangements between Winning Bidders that would evidence a lack of good faith or a compromised bidding process. I have no knowledge of any Winning Bidder engaging in any improper action or inaction—or otherwise acting in any manner in violation of the Bidding Procedures—that would or could cause or permit any of the Asset Purchase

---

[3] Where a certain Qualified Bidder (*i.e.*, XPO, Inc. ("XPO")) for certain of the Initial Properties (*i.e.*, the twenty-six (26) Owned Properties and two (2) Leased Properties for which XPO is the Winning Bidder (the "XPO Properties") indicated a desire to purchase the XPO Properties as a "package" pursuant to a "package bid" submitted by XPO (the "XPO Package Bid"), the Debtors, in their discretion and in consultation with the Consultation Parties, auctioned each of the XPO Properties—on a property-by-property basis—to all Qualified Bidders for such properties to ensure that the XPO Properties generated the highest value to the estates possible. XPO is the Winning Bidder for the XPO Properties because the XPO Package Bid (*i.e.*, $870 million for the XPO Properties) exceeds the aggregate of the otherwise highest "property-by-property" bids submitted by other Qualified Bidders for the XPO Properties pursuant to competitive and open property-by-property bidding.

Agreements or the Sale Transactions set forth in the Notice of Winning Bidders and requested to be authorized by the proposed Sale Order to be avoided. Nor did the Debtors do anything, to the best of my knowledge, to create any claims against the estates arising out of the sale process that they conducted. Further, to my knowledge, no Winning Bidder is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between any Winning Bidder and any Debtor.

17. Lastly, I understand from several Winning Bidders of the Initial Properties that they desire to close their applicable Sale Transactions in as timely a manner as achievable. I believe that the Debtors and these parties are prepared to consummate Closings as soon as practicable upon entry of the proposed Sale Order, including, in certain cases, by the end of this calendar year. Accordingly, I respectfully submit that the Court should enter the proposed Sale Order on or as soon as practicable following the date of the Sale Hearing, to meet these timing goals as well as to expedite the process by which the Debtors can begin distributions of proceeds to creditors.

18. Based upon the foregoing, I believe that the proceeds to be earned for the Debtors' estates from the consummation of the Sale Transactions described above reflects the maximization of value for these Initial Properties and the Debtors' estates, and these Sale Transactions are in the best interests of the estates. The Real Estate Auction for the Initial Properties was conducted fairly with the significant support of and input by the Consultation Parties, and in full compliance with the Bidding Procedures Order. The Winning Bids represent a significant improvement relative to the Stalking Horse Bid, and several Remaining Properties remain to be sold. I believe that the Winning Bids (as reflected in each respective Asset Purchase Agreement) represent the highest or otherwise best offer for the Initial Properties (as applicable). I believe that the Debtors, in an

extensive process led by Ducera, adequately and exhaustively marketed the Debtors' Real Property Assets, including the Initial Properties, affording all interested purchasers a full and fair opportunity to participate in the Debtors' bidding process.

19. Accordingly, based upon the foregoing and my professional experience and judgment, I respectfully submit that the Court should approve the proposed Sale Order, authorizing the Debtors' entry into the value-maximizing Asset Purchase Agreements.

DE:4893-3025-9862.1 96859.001

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: December 8, 2023                    /s/ Cody Leung Kaldenberg

                                                Cody Leung Kaldenberg
                                                Partner
                                                Ducera Partners, LLC

*Investment Banker to the Debtors*

DE:4893-3025-9862.1 96859.001