## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## MOTION OF DEBTORS TO ESTABLISH ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR RESOLUTION OF CERTAIN LITIGATION CLAIMS AND FOR RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

## PRELIMINARY STATEMENT

1.      The Debtors seek approval of the proposed alternate dispute resolution procedures (the "ADR Procedures") annexed as Exhibit 1 to the Proposed Order attached as Exhibit A hereto.[3] The ADR Procedures are designed to facilitate the efficient resolution of certain claims arising before August 8, 2023 (the "Petition Date") for personal injury and/or wrongful death, or for property damage, along with any related claims (the "Litigation Claims"), held by various claimants (the "Claimants") against the Debtors or non-debtor third parties as to which the Debtors believe such claims are covered, in whole or in part, by the Debtors' insurance policies or for

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]     A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration").

[3]     Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the ADR Procedures, as applicable.

which the Debtors retain ultimate liability pursuant to contract, corporate by-laws, or insurance policies and related agreements (such non-debtor third parties, collectively, the "Indemnitees").

2.      The Debtors believe that all or substantially all of the Litigation Claims (if and to the extent they are valid) should be covered under the Motor Carriers Indemnity Insurance Policies issued by Old Republic Insurance Company ("ORIC") to the Debtors (the "ORIC Policies") or otherwise under other insurance policies held by the Debtors and issued by other insurers, or by third-party payors (the "Third-Party Payors") in accordance with the terms of such insurance policies.[4]  The Debtors, ORIC, and the third-party administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), have already identified hundreds of potential Litigation Claims arising from events that occurred prior to the Petition Date.

3.      The approval and implementation of the ADR Procedures will serve the following two purposes necessary for the efficient resolution of the Litigation Claims: (1) minimizing expenses for all interested parties (including the Debtors); and (2) maximizing recovery for holders of allowed unsecured claims.  The ADR Procedures will also reduce lift-stay litigation before this Court, which has been and will likely continue to be voluminous as the Debtors are not currently in a position to defend the Litigation Claims in another forum if the stay were to be lifted.

4.      *First*, the ADR Procedures provide a process through which the Debtors and the Claimants can avoid the delay and expenses associated with protracted litigation to individually adjudicate each of the Litigation Claims.  The streamlined process established in the ADR Procedures will promote the early resolution of the Litigation Claims between the Claimants, ORIC and/or the Third-Party Payors, if applicable, and enable the efficient funding of settlements

---

[4]      ORIC has reserved its rights, and its coverage position is reflected in its omnibus objection to various Lift-Stay Motions [Docket No. 823] (the "ORIC Omnibus Objection").

through available insurance proceeds.  As a result, the ADR Procedures will serve to resolve the Litigation Claims in a way that maximizes the value of the Debtors' estates, to the benefit of all stakeholders in these chapter 11 cases.  The ADR Procedures offer the Claimants an opportunity to negotiate their claims in good faith with ORIC and, if no resolution is reached, to litigate their claims subject to waiving and releasing their claims against the Debtors, their chapter 11 estates, and the Debtors' current and former employees and their personal assets.  This outcome will benefit all parties in interest in these chapter 11 cases by enabling resolution and payment of the Litigation Claims while also minimizing claims against the Debtors and their estates as well as unnecessary estate expenditures.

5.     ***Second***, the ADR Procedures will promote the early and cost-effective resolution of the Litigation Claims. The ADR Procedures allow the Claimants to recover from available insurance coverage.

6.     ***Third***, the alternative path for resolving the Litigation Claims—piecemeal litigation in this Court, other forums, or both—would be unnecessarily wasteful and inefficient.  The Debtors do not have the liquidity or resources to undertake the administrative burden of resolving the Litigation Claims through the normal bankruptcy claims process, as the Debtors are currently in the process of selling substantially all of their assets pursuant to a Court-approved sale process and developing a chapter 11 plan (the "Plan").  The ADR Procedures complement the Debtors' ongoing sales process by efficiently resolving the Litigation Claims and allowing the Debtors to focus on maximizing the value of their estates.

7.     The Debtors acknowledge that many of the Claims at-issue may potentially present complex legal and factual issues.  As such, the ADR Procedures are designed to expedite the

DE:4856-7802-3318.1 96859.001

Litigation Claims by sparing the Debtors and the Claimants the delay and expenses associated with

protracted litigation while continuing to protect the Claimants' due process rights.

8.      To achieve this end, the ADR Procedures contain a series of provisions designed to

effectively and efficiently resolve the Litigation Claims.

A.  *Notice*. The ADR Procedures provide for fulsome noticing whereby: (a) ORIC will
    provide advance notice to any known applicable Third Party Payor of any potential
    Third-Party Payor Claim, which advance notice may include an immediate settlement
    offer that ORIC proposes to make to a Claimant; and (b) after providing advance notice
    to any known applicable Third Party Payors, ORIC will provide notice of the ADR
    Procedures to the Claimants, which notice is attached as <u>Exhibit B</u> to the ADR
    Procedures, including settlement demand documents that must be completed by
    Claimants and provided to ORIC and its counsel.

B.  *Offer Exchange Procedures*. The Claimants and ORIC, and/or the Third-Party Payor,
    if applicable will engage in an offer and exchange process with the goal of consensual
    resolution of the applicable Litigation Claims.  The offer and exchange process may
    include informal resolution discussions, as provided in the ADR Procedures.

C.  *Mediation*. If the Claimants, ORIC, and/or the Third-Party Payor, if applicable are
    unable to reach a resolution via the offer exchange procedures described above, then
    the parties will engage in a mediation (which will occur virtually) in an effort to resolve
    the applicable Litigation Claims.

D.  *ADR Injunction*. The ADR Procedures also provide for an injunction (the "<u>ADR
    Injunction</u>") preventing the Claimants from initiating or continuing to pursue any action
    or other proceeding against the Debtors and their estates, the Indemnitees, ORIC and
    any applicable Third-Party Payors, while the procedures are playing out.

E.  *Litigation*.  Finally, as a last resort, if the above mediation process proves unsuccessful,
    the Claimants may seek relief from the ADR Injunction and the automatic stay to
    proceed with their Litigation Claims against available insurance coverage.  The Debtors
    will agree, pursuant to these ADR Procedures, to the lifting of the ADR Inunction and
    the stay at that time and for that purpose.  The Debtors' agreement to such relief,
    however, is conditioned on the Claimants' agreement to waive and release the
    applicable Litigation Claims against the Debtors, their estates, and the Debtors' current
    and former employees and their personal assets, and the Claimants' agreement to seek
    only insurance proceeds (if available).

9.      Prior to filing this motion, the Debtors sought the input of ORIC and the Official

Committee of Unsecured Creditors (the "<u>Committee</u>").  The Committee's advisors have provided

feedback to the current form of ADR Procedures and are continuing to review and analyze the

DE:4856-7802-3318.1 96859.001

relief requested in the motion.  ORIC is supportive of this motion and the ADR Procedures and has been involved in the development of the ADR Procedures themselves.  The Debtors will work to resolve any outstanding issues in advance of the hearing on the motion, so as to expeditiously resolve the Litigation Claims.

## **RELIEF REQUESTED**

10.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (a) authorizing the implementation of the ADR Procedures described herein and attached as <u>Exhibit 1</u> to the Proposed Order, to facilitate the efficient resolution of the Litigation Claims; and (b) granting related relief.

## **JURISDICTION AND VENUE**

11.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The statutory bases for the relief requested herein are sections 105 and 362 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rules 3001-3, 3007, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

DE:4856-7802-3318.1 96859.001

## BACKGROUND

14.     On August 6, 2023 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169].  The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

15.     On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee [Docket No. 269].  No trustee or examiner has been appointed in these chapter 11 cases.

## THE LITIGATION CLAIMS

16.     Prior to the Petition Date, the Debtors were a leading provider of transportation services in North America.  Due to the nature of their business and the transportation industry, the Debtors had to routinely address personal injury and property damage claims arising from automobile incidents involving the Debtors' trucks and drivers.

17.     As of the filing date of this motion, while the bar date has recently passed and the Debtors are still reconciling claims, ORIC and the Debtors have identified approximately 200 potential Litigation Claims, substantially all of which allege bodily injury or property damage stemming from automobile incidents involving the Debtors' trucks and/or drivers.

18.     Furthermore, many of the Claimants have filed motions seeking relief from the automatic stay to pursue their respective claims against the Debtors, the Debtors' former employees, and/or ORIC in nonbankruptcy forums (collectively, the "Lift-Stay Motions").[5]

---

[5]     *See, e.g.*, *Motion of Brett Groves for Relief from the Automatic Stay to the Extent of Liability Insurance Proceeds* [Docket No. 334]; *Motion to Remove Stay* [Docket No. 344]; *Motion of Paul Clark and Jean Clark for Relief from the Automatic Stay to the Extent of Liability Insurance Proceeds* [Docket No. 358]; *Motion for Relief from Stay* [Docket No. 423]; *Motion of James Charles Howard for Relief from the Automatic Stay to the Extent of*

19.     Pursuant to the Court's Bar Date Order entered on September 13, 2023 [Docket No. 521], any parties holding prepetition claims against the Debtors were required to file proofs of claim by November 13, 2023.  The Debtors' reconciliation of those claims is ongoing.  The Debtors, however, expect that the Lift-Stay Motions will continue to increase in number now that the Bar Date has passed.

20.     Without the ADR Procedures, given the coverage arguments,[6] the Debtors likely would need to initiate coverage litigation against ORIC immediately, and the ultimate resolution of the Litigation Claims would be indefinitely delayed, with the costs associated with disputing or liquidating these claims expected to escalate, to the detriment of the Debtors' chapter 11 estates and all stakeholders in these chapter 11 cases.

21.     The Debtors have, therefore, proposed, with support from ORIC, the ADR Procedures.  The Debtors expect that the ADR Procedures will thin the claims pool and provide litigation claimants an opportunity for recoveries faster than litigation with the Debtors or ORIC

---

*Liability Insurance Proceeds* [Docket No. 553]; *Motion of Gary W. Gibby for Relief from the Automatic Stay* [Docket No. 608]; *Motion of Amer Nasser and Omeira Ulloque for Relief from the Automatic Stay* [Docket No. 615]; *Motion of Paul R. Wyszynski for Relief from the Automatic Stay* [Docket No. 630]; *Emily Louro's Motion for Relief from Automatic Stay* [Docket No. 650]; *Motion of Lawrence Nowicki for Relief from the Automatic Stay* [Docket No. 659]; *Motion of Tena J. Spence for Relief from the Automatic Stay* [Docket No. 684]; *Motion of Jesse Isreal Newton for Relief from the Automatic Stay* [Docket No. 741]; *Motion of Jimmie and Janel Hubert for Relief from the Automatic Stay* [Docket No. 758]; *Motion of Donna Lee Daugherty for Order … Modifying the Automatic Stay to Allow Continuation of Wrongful Death Litigation* [Docket No. 770]; *Motion of Susan Degenkolb for Relief from the Automatic Stay* [Docket No. 783]; *Motion of Anthony Martino for Orders Granting Relief from the Automatic Stay* [Docket No. 789]; *Motion of Kavir Moonilal-Singh for Relief from the Automatic Stay* [Docket No. 812]; *Motion of William Littral for Relief from the Automatic Stay* [Docket No. 844]; *Jacob Bazarov and Tamara Peirova's Motion for Relief from the Automatic Stay* [Docket No. 878]; *Sopia L. Goodman's Motion for Relief from the Automatic Stay* [Docket No. 879]; *Motion of James Alexander and Lisa Alexander for Relief from the Automatic Stay* [Docket No. 903]; *Motion of Seung Chung for Order Granting Relief from Automatic Stay* [Docket No. 984]; *Motion of Shane Snider and Carla Maria Snider for Relief from the Automatic Stay* [Docket No. 991]; *Motion of Alexis McCully for Relief from the Automatic Stay* [Docket No. 1035]; *Phillip B. Deterding's Motion for Relief from the Automatic Stay* [Docket No. 1037]; *Motion Of Jill Napiwocki For Relief From The Automatic Stay To The Extent Of Liability Insurance* [Docket No. 1062]; *Motion Of Derek Hall For Relief From The Automatic Stay To The Extent Of Liability Insurance* [Docket No. 1118]; and *Motion of Delores Jones for Relief from the Automatic Stay* [Docket No. 1181]

6       ORIC's coverage position is reflected in the ORIC Omnibus Objection.

(or Third-Party Payors, if applicable) would provide.  The ADR Procedures will also hopefully avoid the need for the Debtors and others to engage in costly coverage litigation, and will minimize the need for what is otherwise likely to be extensive additional lift stay litigation.

### THE ADR PROCEDURES[7]

22.     Consistent with the Debtors' intent to create a fair and efficient process to resolve the Litigation Claims without depriving claimants of their due process rights, they propose the following ADR Procedures:

a) **ADR Injunction**.  To implement and ensure compliance with the ADR Procedures, all Claimants will be enjoined from commencing or continuing any action or proceeding in any manner or place, including this Court, seeking to establish, liquidate, collection, or otherwise enforce any Litigation Claims against the Debtors or their estates, and the Indemnitees and ORIC and any applicable Third-Party Payors, other than through the ADR Procedures (or as otherwise agreed by the parties).  The ADR Injunction will be in addition to and cumulative with any other injunctions under the Bankruptcy Code or the Plan that may apply to the Claimants or the Litigation Claims and will expire only after the completion of the ADR Procedures or as otherwise provided in the ADR Procedures.

b) **Stage 1: ADR Notice**. The first stage will involve notice of the ADR Procedures to all Claimants:

1. ADR Notice Within 30 days of the entry of an order approving the ADR Procedures and the service date of any Advance Notice (to the Debtors and/or applicable Third-Party Payors), ORIC will mail the ADR Notice, in the form annexed as Exhibit B to the ADR Procedures, to all known Claimants.  The ADR Notice will inform the Claimants that the Litigation Claims are included in the ADR Procedures and either: (1) make an offer to the Claimant based on ORIC's reasonable review and assessment of the Litigation Claim (the "Immediate Claim Settlement Offer"); or (2) require the Claimant to return the ADR Notice with the Claim Information and Settlement Demand Form and supporting information to ORIC.

---

[7]     This summary is qualified by and subject to the terms of the ADR Procedures and parties should refer to and review the terms of the ADR Procedures.

DE:4856-7802-3318.1 96859.001

2. <u>Additional ADR Notices</u>.  Within 30 days after ORIC becomes aware of any Additional Litigation Claims, ORIC will also mail the ADR Notice to any such newly-identified Claimants.

c) **Stage 2: Offer Exchange Procedures**.  The second stage of the ADR Procedures is an offer and exchange process, requiring the parties to exchange information and settlement offers:

1. <u>ORIC's Offer</u>.  Within 30 days of receipt of a Claimant's settlement demand ("<u>Claimant's Demand</u>"), ORIC shall provide the Claimant with their response (the "<u>Response</u>"), which will: (1) accept the Claimant's Demand; (2) make a counteroffer to settle the Litigation Claim (the "<u>Offer</u>");  or  (3) request  additional  supporting information or documentation necessary to determine how to respond to the applicable Litigation Claim.

2. <u>Claimant's Reply</u>. The Claimant will have 20 days from the service of the Response to reply in a writing signed by the Claimant or their authorized representative.  If the Claimant rejects the Offer or fails to timely respond, ORIC may seek the relief provided for in Section VI of the ADR Procedures, including, but not limited to, disallowance of the applicable Litigation Claim.

d) **Stage 3: Informal Resolution Procedures**.  If a settlement is not reached as a result of the Offer Exchange Procedures outlined above, then counsel for ORIC (and/or the Third-Party Payor, if applicable) and counsel for the Claimant will meet in-person or over Zoom to negotiate further to determine if a resolution can be reached.

e) **Stage 4: Mediation Procedures**.  If a settlement is not reached following the Offer Exchange Procedures and the Informal Resolution Procedures outlined above, ORIC will serve a notice of mediation, in the form annexed to the ADR Procedures as <u>Exhibit C</u>, on the applicable Claimants within 10 days after the completion of the Offer Exchange Procedures or as soon thereafter as is reasonably practicable.  If applicable, ORIC will also give the same notice to any potential Third-Party Payors, who will be given the opportunity to participate in the mediation.

f) **Stage 5: Relief from the ADR Injunction and Litigation**. The completion of the Offer Exchange Procedures, Informal Resolution Procedures, and the Mediation Procedures will be prerequisite for a Claimant to obtain relief from the ADR Injunction.  If the Claimant proceeds in good faith through the ADR Procedures and the parties are unable to complete a settlement, and certifies the same in an attachment to a motion for relief from the ADR Injunction, the Claimant may be granted relief from the ADR Injunction to commence or continue any action, suit or trial, to proceed with discovery, or to pursue the applicable Litigation Claim before this Court or in any other

DE:4856-7802-3318.1 96859.001

forum, subject to the conditions described below and in the ADR Procedures; provided, however, that the Claimant must waive and release any and all claims against the Debtors, their estates, and the Indemnitees and their personal assets, and the Claimant may pursue the applicable Litigation Claims solely to the extent of insurance proceeds (if any).

g) **Failure to Comply with ADR Procedures**.  If, absent written agreement with ORIC (and/or the Third-Party Payor, if applicable), the Claimant fails to comply with the ADR Procedures or fails to negotiate in good faith with ORIC, any applicable Third-Party Payor, or the Debtors, if applicable, the Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or an abandonment of or failure to prosecute the Litigation Claim, or both.  Upon such findings, the Court may, among other things, disallow and expunge the Litigation Claim, in whole or in part, or grant such other remedy as may be just and appropriate under the circumstances.

23.     Accordingly, the ADR Procedures will establish a streamlined process for the resolution of the Litigation Claims.  The ADR Procedures will avoid protracted and costly litigation while preserving the value of the Debtors' estates, which will ultimately be available to satisfy the holders of allowed general unsecured claims.  The ADR Procedures are, therefore, in the best interests of the Debtors' estates and all of the stakeholders in these chapter 11 cases, including the Claimants, and should, therefore, be approved.

## BASIS FOR RELIEF

24.     This Court has authority to establish mandatory ADR procedures and to grant the related relief requested herein pursuant to sections 105(a) and 362(d) of the Bankruptcy Code, Bankruptcy Rules 7016 and 9019, and Local Rules 9019-3, 9019(5)(a) and 9019(6).

### A.  Section 105 Supports the Court's Approval of the ADR Procedures.

25.     Settlements are favored in bankruptcy to facilitate the expeditious administration of claims and avoid the expenses and burdens associated with protracted litigation.[8]

---

[8]     *In re Keene Corp.*, 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994) ("Under 11 U.S.C. § 105(a), the Court can 'use its equitable powers to assure the orderly conduct of the reorganization proceedings.'") (quoting *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987)); *see also Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996) (holding that "[t]o minimize litigation and expedite the administration of a bankruptcy case, '[c]ompromises are favored

DE:4856-7802-3318.1 96859.001

26.     Section 105(a) of the Bankruptcy Code permits the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title"[9] including orders "prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically."[10]   Section 105(a) thus gives credence to the use and implementation of ADR procedures for the efficient resolution of complex, disputed claims, such as the Litigation Claims in these chapter 11 cases.

## B. Bankruptcy Rules 7016 and 9019 Authorize Compromises and Settlement Under the ADR Procedures.

27.     Furthermore, the ADR Procedures are appropriate pursuant to Bankruptcy Rule 7016.[11]   Pursuant to Bankruptcy Rule 7016, the Court may adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems"[12] at any pretrial conference.  While Bankruptcy Rule 7016 generally applies to pretrial matters, courts have permitted the implementation of similar alternative dispute resolution procedures as special procedures to assist

---

in bankruptcy'") (quoting 9 Colliers, Bankruptcy ¶ 9019.03[1] (15th rev. ed. 1993)); *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in bankruptcy]"); *In re Key3Media Grp., Inc.*, No. 03-10323 (MFW), 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"); *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) ("[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts."); *Hass v. Hass (In re Hyman Hass)*, 273 B.R. 45, 50 (Bankr. S.D.N.Y. 2002) ("[c]onsensual resolution of litigation has been favored in the law from time immemorial, whether by the parties themselves, or through mediation or other techniques of dispute resolution.").

[9]     11 U.S.C. § 105(a).

[10]    11 U.S.C. § 105(d)(2); *see also In re Keene Corp.*, 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994) ("Under 11 U.S.C. § 105(a), the Court can 'use its equitable powers to assure the orderly conduct of the reorganization proceedings.'") (quoting *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987)).

[11]    Fed. R. Bankr. P. 7016(a); *see also* Fed. R. Civ. P. 16.

[12]    Fed. R. Civ. P. 16(c)(2)(L).

DE:4856-7802-3318.1 96859.001

in the resolution of potentially difficult or protracted actions.[13]  Moreover, pursuant to Bankruptcy Rule 9016, this Court has the discretion to apply Bankruptcy Rule 7016 to contested matters such as claims objections, which would include any proceedings to resolve the Litigation Claims.

28.     In addition, Bankruptcy Rules 9019(a) and 9019(b) provide this Court with the authority to approve the ADR Procedures.[14]  Bankruptcy Rule 9019(a) states that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement."[15] Further, Bankruptcy Rule 9019(b) provides that "[a]fter a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice."[16]  As such, "Fed. R. Bankr. P. 9019(b) provides a mechanism to 'pre-approve' settlements of claims that might be too numerous for efficient administration under the requirements of 9019(a)."[17]

### C. Local Rules 9019-3(a), 9019-5(a) and 9019-6 Support the Approval and Implementation of the ADR Procedures.

29.     The Local Rules also support the approval and implementation of the ADR Procedures.  Local Rule 9019-6 expressly recognizes that parties may agree and submit to dispute

---

[13]     *See, e.g., In re Sargeant Farms, Inc.*, 224 B.R. 842, 845-46 (Bankr. M.D. Fla. 1998) (finding that under Bankruptcy Rule 7016 and Federal Rule 16, bankruptcy courts have authority to "allow the use of Alternative Dispute mechanisms").

[14]     *In re Lehman Bros. Holdings Inc.,* 433 B.R. 113, 120 n.16 (Bankr. S.D.N.Y. 2010) (noting ADR procedures were approved by the court pursuant to Bankruptcy Rule 9019(b)).

[15]     Fed. R. Bankr. P. 9019(a).

[16]     Fed. R. Bankr. P. 9019(b).

[17]     *In re Applegate*, 2007 WL 4365681, at *2 (Bankr. N.D. Ohio Dec. 12, 2007); *see also In re Grossman's Inc.*, 1997 WL 33446688 at* 1 (Bankr. D. Del. Dec. 18, 1997) (authorizing the debtors' settlement of contested litigation pursuant to alternative dispute resolution procedures and standards pursuant to §§ 363(b) and 105(a) of the Bankruptcy Code and Rule 9019(b),); *In re Buffets, LLC, No. 16-50557 (RBK)* (Bankr. W.D. Tex. Oct. 17, 2016) [D.I. 1377] (approving "alternative dispute resolution procedures for resolution of personal injury claims and employment related claims" on account of authority granted to the court by Bankruptcy Rule 9019).

DE:4856-7802-3318.1 96859.001

resolution procedures such as the ADR Procedures. Local Rule 9019-6 provides that "[t]he parties may employ any other method of alternative dispute resolution."[18]

30.    Further, Local Rule 9019-3(a) authorizes the Court to refer any dispute pending before it to mediation.[19] Local Rule 9019-5(a) similarly states that the "Court may assign to mediation any dispute arising in an adversary proceeding, contested matter, or otherwise in a bankruptcy case," granting the Court broad authority to assign any dispute before it to mediation.[20]

### D.    The Court Can Issue the ADR Injunction and Set Conditions for Granting Relief from the Automatic Stay Pursuant to Sections 105(a) and 362(d).

31.    Finally, the Court has the authority to issue the ADR Injunction and to impose conditions for relief from the ADR Injunction and the automatic stay, pursuant to sections 105 and 362 of the Bankruptcy Code. The ADR Injunction is necessary to ensure the viability and success of the ADR Procedures as a means of streamlining the resolution process for the Litigation Claims. Conditions such as a requirement that a claimant waive claims against the estate to pursue insurance proceeds are often imposed when lifting the automatic stay or other injunctions, and the use of such a condition is reasonable in the context of the ADR Procedures. Indeed, courts have granted similar relief in other large chapter 11 cases.[21]

---

[18]   Del. Bankr. L.R. 9019-6.

[19]   Del. Bankr. L.R. 9019-3(a).

[20]   Del. Bankr. L.R. 9019-5(a).

[21]   *See, e.g.*, *In re Eagle Bus Mgf., Inc.,* 134 B.R. 584, 591 (Bankr. S.D. Tex. 1991) (approving ADR procedures in bankruptcy plan for resolution of personal injury, property damage, and workers' compensation claims); *see also In re The Great Atl. & Pac. Tea Co., Inc.,* No. 10-24549 (RDD) (Bankr. S.D.N.Y. Oct. 21, 2011) (approving procedures resolving personal injury and other claims that included pre-arbitration and pre-mediation settlement offer exchange procedures as well as arbitration and mediation procedures); *In re Overseas Shipholding Grp., Inc.,* No. 12-20000 (PJW) (Bankr. D. Del. Dec. 19, 2013) [D.I. 2165]; *In re Penson Worldwide, Inc.,* No. 13-10061 (PJW) (Bankr. D. Del. July 31, 2013) [D.I. 782]; *In re WCI Communities, Inc.,* No. 08-11643 (KJC) (Bankr. D. Del. Feb. 24, 2009) [D.I. 1230]; *In re Hostess Brands, Inc.,* No. 12-22052 (RDD) (Bankr. S.D.N.Y. June 11, 2012) [D.I. 1085]; *In re Dana Corp.,* No. 06-10354(BRL) (Bankr. S.D.N.Y. May 23, 2007) [D.I. 5372]; *In re Northwest Airlines Corp.,* No. 05-17930 (ALG) (Bankr. S.D.N.Y. Dec. 14, 2006) [D.I. 4224]; *In re NPC International, Inc.* No. 20-33353 (Bankr. S.D. Tex. May 25, 2021) [D.I. 1714].

32.     The approval and implementation of the ADR Procedures, including the issuance of the ADR Injunction, will allow the Litigation Claims to be addressed in an efficient manner for the benefit of all stakeholders and minimize protracted and costly litigation.  The ADR Procedures will: (a) minimize the time and expenses required for litigation of the Litigation Claims; and (b) provide the Claimants with the best opportunity to promptly resolve the Litigation Claims while protecting the Claimants' due process rights.  The alternative, protracted litigation of hundreds of claims before this Court and in other forums, is impracticable and would hinder the ability the Debtors to successfully complete the sales process and propose and confirm the Plan. This is especially so in light of the large number of already-filed Litigation Claims as well as the size of the pool of potential Litigation Claims.  In contrast, the ADR Procedures provide a fair, efficient, and reasonable alternative mechanism for resolving the Litigation Claims.

33.     The same is true of the injunction provisions, which both enforce the automatic stay against the Debtors and extend it to third parties with identities of interest with the Debtors to preserve the Debtors' insurance coverage (which the Debtors share with the Indemnitees) and conserve estate resources.  The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws."  *See In re Continental Airlines,* 177 B.R. 475, 479 (D. Del. 1993); *see also Midlantic Nat'l Bank v. N..J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986).  Its purpose is to "protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts."  *In re Continental Airlines*, 177 B.R. at 479 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir. 1986)).

34.     This Court has the authority under section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Thus, this Court may enjoin a pending suit where, as

14

here, "the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor." *See McCartney v. Integra Nat. Bank N., 106* F.3d 506, 510 (3d Cir. 1997); *see also In re Midway Games, Inc.,* 428 B.R. 327, 334 (Bank. D. Del. 2010) (recognizing that the automatic stay applies to a third party where there is an "identity of interest" between the debtor and the third party).

35.    This Court should exercise this authority here and provide the same rules to govern the liquidation of claims against the Indemnitees (typically the drivers, who were employees of the Debtors at the time of the accidents) as those against the Debtors themselves.  The Debtors are the real party defendants in these claims, and a judgment against the drivers would be a judgment or finding against the Debtors.  The same insurance policies, too, cover the Debtors and their now-former employees.  In cases such as this, when there is such a common identity of interest between the Debtors and the drivers, an extension of the automatic stay is warranted.  *McCartney*, 106 F.3d at 510-11 (*citing A.H. Robins Co.,* 788 F.2d at 999 (4th Cir. 1986)) (concluding that the automatic stay enjoined an action against non-debtor third party where the debtor "was, in essence, the real party in interest" in the pursuit of a deficiency judgment against the third party).  Indeed, given the "identity of interest" factor, courts have indicated that even the "mere possibility of indemnification obligations warrants extension of the automatic stay." *In re LTL Mgmt., LLC*, 638 B.R. 291, 312 (Bankr. D.N.J. 2022) (citations omitted).  *See also In re W.R. Grace & Co.*, 115 F. App'x 565, 568–69 (3d Cir. 2004) (refusing to modify injunction precluding state court action against nondebtor third parties because the "prospect of indemnification" warranted a stay).

36.    Here, the Debtors and ORIC are parties to a program agreement whereby ORIC is supposed to provide insurance coverage for "workers' compensation and employers' liability, automobile liability, commercial general liability insurance coverages" with respect to Debtors'

operations. Any claims against former drivers or employees of the Debtors who were acting within the scope of their employment are essentially claims against the Debtors. Under these circumstances, declining to apply the automatic stay to the non-Debtor third parties indemnified by the Debtors "would defeat the very purpose of the statute," intended to provide the Debtors with repose from litigation and its associated costs and distractions. *See A.H. Robins Co.*, 788 F.2d at 999; *In re LTL Mgmt., LLC*, 638 B.R. 291, 313 (Bankr. D.N.J. 2022) ("[A]mple authority exists to conclude that § 362(a), § 105(a), or a court's inherent powers can each serve as independent bases for extension of a stay to nondebtor third parties.").

37.     In sum, the approval and implementation of the ADR Procedures is in the best interests of the Debtors' estates, their creditors, and all parties in interest in these chapter 11 cases, and the ADR Procedures should, therefore, be approved.

### NOTICE

38.     The Debtors will provide notice of this motion to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto;(i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent, and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; (o) counsel to ORIC; (p) all parties on the list of Litigation Claims; and (q) any party that has requested notice pursuant to

Bankruptcy Rule 2002 (collectively, the "Notice Parties").  In light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

39.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein, and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: December 11, 2023
Wilmington, Delaware

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:      (302) 652-4100
Facsimile:       (302) 652-4400
Email:            ljones@pszjlaw.com
                  tcairns@pszjlaw.com
                  pkeane@pszjlaw.com
                  ecorma@pszjlaw.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
Whitney Fogelberg (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:            patrick.nash@kirkland.com
                  david.seligman@kirkland.com
                  whitney.fogelberg@kirkland.com

-and-

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

17

DE:4856-7802-3318.1 96859.001