**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| | ) |
| Debtors. | ) **Re: Docket No. 1377** |
| | ) |

**DEBTORS' OBJECTION TO MOTION OF
TRANE TECHNOLOGIES COMPANY, LLC FOR RELIEF FROM
THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] hereby file this amended and restated omnibus objection (this "Objection") in response to the *Motion of Trane Technologies Company, LLC for Relief from the Automatic Stay to the Extent of Available Insurance Proceeds* [Docket No. 1377] (the "Lift-Stay Motion") filed by or on behalf of Trane Technologies Company, LLC ("Trane" or the "Movant") seeking to pursue certain claims against the Debtors arising from certain lost, damaged, and/or destroyed shipments (the "Claims") and recover against any potentially applicable insurance policy of the Debtors.  In support of this Objection, the Debtors respectfully state as follows:

**Preliminary Statement**

1.    The Movant, an unsecured creditor, seeks relief from the automatic stay to pursue prepetition Claims outside of this Court.  But there simply is no "cause" to lift the stay.

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration").

DE:4883-6613-7497.1 96859.001

2.      Trane has timely filed proofs of claim on account of its Claims and reconciliation of those Claims should be left to the ongoing claims allowance process just like all other of the thousands of unsecured claimants in these chapter 11 cases who have filed proofs of claim.  There is no reason to give Trane special treatment.

3.      The automatic stay affords debtors a much-needed respite to develop, confirm, and consummate a chapter 11 plan, while protecting the debtors and other creditors from a race by their peers to pursue collection efforts outside of the bankruptcy court.  The law does not recognize exceptions for claimants who simply file a proof of claim; nor does it credit arguments that Movant claims to seek its recovery solely on insurance proceeds—notwithstanding the existence of attendant litigation costs and other prejudices to debtors, particularly where the applicable insurance coverage here only kicks in after a per-occurrence deductible ($250,000) has been met by the Debtors (and it will not be met for any of the Claims).[3]  Rather, *all* unsecured creditors, like the Movant, must establish "extraordinary circumstances" to lift the stay and skip the line of other claimants patiently waiting for the chapter 11 process to conclude.

4.      Trane does not come close to meeting this heavy burden of lifting the automatic stay and prioritizing itself ahead of other similarly situated unsecured claimants.  The Lift-Stay Motion should be denied.  ***First***, the Movant's request to pursue the Claims solely to collect on the proceeds of the Debtors' insurance policies must be denied at this juncture as the Debtors' applicable insurance policies only cover claims in excess of the per-occurrence $250,000 deductible.[4]  Trane's Claims are general unsecured claims, each for less than that sum, and their

---

[3]     Trane has filed at least five proofs of claim asserting claims for at least 171 individual occurrences of loss or damage to cargo—the largest of which is for approximately $31,000.

[4]     The Debtors' are not presently aware of any other insurance policies that would cover Trane's Claims.  To the extent the Debtors become aware of any such additional policies, they will amend this Objection as necessary.

DE:4883-6613-7497.1 96859.001

allowance is best left to the claims reconciliation process—not piecemeal collection efforts by general unsecured creditors. While further proceedings may ultimately be necessary, denial of the Lift-Stay Motion is in the best interest of the Debtors' estates at this time.

5.      ***Second***, permitting the Movant to pursue its Claims outside the United States Bankruptcy Court for the District of Delaware (the "Court") at this critical juncture in the chapter 11 cases would force the Debtors to incur significant administrative costs to address such collection efforts. The Debtors do not currently have the liquidity to undertake such an administrative burden—Trane asserts at least 171 individual occurrences of general unsecured claims that need to be reconciled. These are precisely the types of claims that should be left to the claims reconciliation process. The Debtors are currently in the process of completing and closing sales of substantially all of their assets pursuant to a Court-approved sale process and developing a chapter 11 plan to effectuate an orderly and value maximizing wind-down of the Debtors' estates. Permitting Movant to pursue its 171 individual Claims outside of a chapter 11 plan would distract from the Debtors' ongoing efforts to maximize the value of their estates.

6.      ***Third***, Trane has not identified any cognizable harm that would be suffered if the stay is not lifted. Instead, Movant maintains that it will be prejudiced because of delay but, apart from delay, Movant does not describe how or why. The Movant will not be prejudiced at all, nor has the Movant shown it would sustain meaningful, extraordinary harm, by waiting until the end of these chapter 11 cases to receive a distribution on its Claims.

7.      There is no cause to lift the stay under the circumstances of these chapter 11 cases and the Debtors are working diligently with parties in interest to develop a global and equitable resolution pursuant to a chapter 11 plan for all claims entitled to share in the Debtors' estates. For the reasons set forth herein, the Debtors request that the Court deny the Lift-Stay Motion.

DE:4883-6613-7497.1 96859.001

**Background**

8.      On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169].  The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee").  No trustee or examiner has been appointed in these chapter 11 cases.

**Argument**

**I.      The Automatic Stay Is a Fundamental Protection that Prevents Piecemeal Collection Efforts.**

9.      The automatic stay is "one of the most fundamental protections granted the debtor under the Bankruptcy Code." *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot.*, 474 U.S. 494, 503 (1986)).  The purpose of the automatic stay is threefold:  "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condo. Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)), *quoted in Rexene Prods.*, 141 B.R. at 576.

10.     The automatic stay is designed to give a debtor a "breathing spell" free from lawsuits and collection actions while the debtor attempts to reorganize or otherwise maximize value for stakeholders through an orderly wind-down of its affairs. *See Maritime Elec. Co. v.*

4

*United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); H.R. Rep. No. 595, 95th Cong. 1st Sess. 340 (1977). Implementation and maintenance of the automatic stay is fundamental to the effective administration of pending bankruptcy cases as it provides a debtor protection from "a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y. 1981) (internal citations omitted).

11.    Section 362(d)(1) of the Bankruptcy Code permits a court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362. "The term "cause" as used in section 362(d) has no obvious definition and is determined on a case-by-case basis." *See In re Integrated Health Servs., Inc.*, 2000 WL 33712483 at *1 (Bankr. D. Del. Aug. 11, 2000); *In re Lincoln*, 264 B.R 370, 372 (Bankr. E.D. Pa. 2001) ("Each request for relief for 'cause' under [section] 362(d)(1) must be considered on its own facts."). In determining whether "cause" exists, courts in this district consider the following three "*Rexene* factors":

(1)    the prejudice that would be suffered by the debtors should the stay be lifted;

(2)    the balance of the hardships facing the parties if the stay is lifted; and

(3)    the probable success on the merits if the stay is lifted.

*In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (Bankr. D. Del. 1996) (citing *Rexene Prods.*, 141 B.R. at 576). "To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips *significantly* in [its] favor.'" *Atl. Marine Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (alteration in original) (quoting *In re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990)); *see also In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009) (listing as the second prong "whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor" (internal citations omitted)).

DE:4883-6613-7497.1 96859.001

12.    As this Court has recognized, the standard for evaluating whether a movant has established "cause" to lift the automatic stay "ultimately boils down to a common-sense judgment about whether it makes good sense to have the case proceed in the court where it was pending as opposed to being heard by the bankruptcy court." *See In re AP Orangevale, LLC*, No. 23-10687 (CTG), 2023 WL 5093819 at *7 (Bankr. D. Del. Aug. 8, 2023).  Here, there is no indication there was any case pending in another court at all, and that alone is reason enough for the stay to remain in place and for Trane's Claims to be subject to the claims allowance processes.

13.    Indeed, the very work being done by the automatic stay in the context of these chapter 11 cases is to provide a breathing spell and centralized forum to establish an efficient, equitable, and orderly distribution of the Debtors' estates to claimants pursuant to the terms of a chapter 11 plan and in accordance with the Bankruptcy Code.  *See id.* at *8–9 (noting that the "context of the work being done by the automatic stay in a particular case is critical to how a Court ought to consider a motion seeking stay relief" and that "ensur[ing] the centralization of disputes in a single forum . . . might be said about claims allowance.").  Where, as here, a claimant has not even filed a prepetition action on account of their claims, it simply does not make sense to lift the stay.  Simply filing a proofs of claim, believing there are insurance proceeds available, and crying delay does not amount to "cause" to lift the stay.  If it did, every creditor could lift the stay and the very purpose of the automatic stay would be fundamentally frustrated.

## II.    There Is No "Cause" to Modify the Stay.

14.    A review of the *Rexene* factors demonstrates that lifting the automatic stay is not warranted.  The delay in collecting on the Movant's Claims is not in itself a sufficient basis to lift the automatic stay.  *See, e.g.*, *In re Madison Hotel Assocs.*, 18 B.R. 218, 219 (Bankr. W.D. Wis. 1982) ("Relief from the automatic stay for 'cause' is not, nor was it intended by the drafters of the Bankruptcy Code, to encompass mere delay in the assertion of rights.").  Other than stating that

DE:4883-6613-7497.1 96859.001

Trane is "entitled to bring a civil action in a United States district court or in a State court[,]" Movant does not point to anything other than delay with respect to the prejudice it faces by the stay remaining in place.[5]

15.    Contrary to Movant's assertions, the Debtors would suffer significant prejudice if the Court were to allow the Claims to proceed at this critical juncture of these chapter 11 cases. The Debtors are currently working through what has been an efficient and value maximizing sale process, ultimately to fund equitable distributions to stakeholders pursuant to a chapter 11 plan. Following these efforts, the Debtors will work to formulate and confirm a chapter 11 plan, pursuant to which claims, including those of Movant, will (if allowed) receive the distributions that they are entitled to under such chapter 11 plan.

16.    Trane argues that the Debtors will not suffer prejudice because the Claims are "carrier liability claims which do not present any factual or legal issue that will impact or distract the Debtors from their reorganization or liquidation process." Lift-Stay Motion ¶ 18. This assertion is without merit. First, the Claims are not a part of any prepetition litigation where the parties have already conducted discovery or even evaluated the merits of the Claims. To assess the Claims, the Debtors would need to evaluate further information than what has been provided in the proofs of claim forms (at minimum, a "PRO number," similar to a tracking number). Without undertaking significant additional efforts, the Debtors cannot assess the Claims' validity. Second, there is typically a nine-month statute of limitations for a shipper to file a cargo claim

---

[5]    Movant also intimates that Trane's Claims "must" be brought in a United States district court or in a State court. Lift-Stay Motion ¶ 18. The text of the cited statute, however, does not support Trane's theory that jurisdiction elsewhere is mandatory; it only says that the Claims "*may* be brought in a United States district court or in a State court." *See* 49 U.S.C. § 14706(d)(3) (emphasis added). In any event, Trane affirmatively filed proofs of claim, thereby triggering the claims allowance process and voluntarily subjecting itself to the equitable powers and jurisdiction of this Court with respect to such claims. *See, e.g.*, *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989); *Katchen v. Landy*, 382 U.S. 323, 336 (1966).

7

against the carrier under federal law and a two-years statute of limitations to bring a civil action following disallowance (as that term is used in 49 U.S.C. § 14706) of the claim. *See* 49 U.S.C. § 14706(e). Movant's proofs of claim include at least 171 individual Claims that date back as early as January 2020. *See* Lift-Stay Motion, Exhibits A–D. A number of these Claims will likely be disallowed on a statute of limitations basis alone, whether filed as a prepetition cargo claim or assessed in a reconciliation process in these chapter 11 cases. Third, even if the individual Claims are not rejected on a statute of limitations basis, they may also be rejected for lack of documentation (*e.g.*, the delivery receipt does not note damage, there is no proof showing the value of the damaged shipment) or otherwise reduced due to a limitation of liability provision in the applicable shipment contract. Fourth, it is at best uncertain whether the Debtors' applicable insurance policies would provide coverage for Trane's claims. The policies have a per-occurrence deductible of $250,000 and state that "We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage, before applying the applicable Limits of Insurance, exceeds the applicable Deductible shown in the Declarations." Trane's proofs of claim assert at least 171 individual claims occurrences, the largest of which is approximately $31,000—well below the applicable per-occurrence deductible. In any event, there are legal and factual aspects underlying the Claims that need to be resolved before they would be allowed. And, for these same reasons, it would be premature to conclude what the success on the merits of these Claims would be. There is simply no principled reason why the stay should be lifted at this time.

17.     Movant argues that, because it believes there to be insurance policies applicable to the Claims, the stay should be lifted. Without a thorough analysis of the Claims, their merits, and which of the Debtors' other insurance policies apply to such Claims (if any at all), it would be inappropriate to assume that the Claims will be paid in full solely out of insurance proceeds. The

DE:4883-6613-7497.1 96859.001

very fact that work needs to be done to reconcile the scope of coverage and allocation of payment among the Debtors' insurance providers and the Debtors is reason enough for the automatic stay to remain in full force. Resolving issues regarding allocation of Claims' payment in light of potential insurance coverage is exactly the type of issue the claims allowance process is designed to resolve. It would be wholly inappropriate for the stay to be lifted to allow a claimant to pursue remedies on a piecemeal basis outside of this Court and separate from the chapter 11 plan and claims allowance processes.

18.     Lifting the stay for Movant to attempt to collect on its Claims outside the Court at this time would be massively disruptive, depleting the Debtors' limited resources and undermining one of the key objectives of the stay. *See Rexene*, 141 B.R. at 576; *Borman*, 946 F.2d at 1036 ("The automatic stay was designed . . . to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it . . . ."). As a result, the lifting of the stay to allow the Claims to proceed would be value-destructive and prejudice the Debtors and their other creditors. *See In re Continental Airlines*, 177 B.R. 475, 481 (D. Del. 1993) (upholding bankruptcy court's finding that the automatic stay applied and further enjoining prosecution of litigation based, in part, on the direct impact on the debtor's assets caused by the debtor having to bear indemnification obligations and advancement of defense costs in the absence of insurance); *Majestic Star Casino v. City of Gary (In re Majestic Star Casino, LLC)*, 2010 WL 2540457 at *2 (Bankr. D. Del. Apr. 28, 2010) ("In addition, the Debtors will have to advance defense costs thereby, at the very least, temporarily diverting much needed funds—and funds which they do not have to expend absent their lenders' acquiescence." (citing *Continental,* 177 B.R. at 481)).

19.     For all the reasons set forth herein, the stay should not be lifted. The Claims can simply be resolved more efficiently in the claims allowance process than proceeding with

9

potentially expensive ancillary resolution and/or litigation over the Claims outside of the bankruptcy court. *See In re AP Orangevale, LLC*, 2023 WL 5093819 at *8 (explaining that, where a creditor's claim is a very weak one and non-bankruptcy litigation would be expensive, "a court may well exercise its discretion to find that the claim is more properly liquidated in the bankruptcy case through the (presumably more efficient) claims allowance process"). For the reasons described throughout this Objection, the Court should exercise its discretion and deny the Lift-Stay Motion and the Claims should be addressed through the claims allowance process.

20. Additionally, allowing the Movant's Claims to proceed outside of an eventual chapter 11 plan process ahead of other similarly situated creditors is contrary to the priority scheme set forth in the Bankruptcy Code. Such a result would encourage others to race to the courthouse to seek similar relief, undermining the Debtors' chapter 11 efforts and hampering their ability to conduct a focused claims reconciliation process. *See In re SNLiquidation, Inc.*, 388 B.R. 579, 584 (Bankr. D. Del. 2008); *In re DBSI*, 407 B.R. at 167 (denying stay relief where it may encourage "a race to the courthouse by parties seeking similar orders, which will cause undue hardship and expense to the estate"); *In re Bally Total Fitness of Greater N. Y., Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying a motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case").

21. Now is simply not the time to grant relief from the automatic stay to permit creditors to pursue prepetition claims on an ad hoc basis, which would result in unnecessary expense to the Debtors' estates and interference with the Debtors' administration of these chapter 11 cases, including the confirmation of a chapter 11 plan (for which approval of a disclosure statement and solicitation of the plan has not even been approved) and the sale of the Debtors' assets (which

DE:4883-6613-7497.1 96859.001

remains subject to ongoing closing efforts).  The automatic stay is meant to allow the Debtors to concentrate on these critical chapter 11 tasks without the distraction of ancillary litigation. *See In re W.R. Grace*, 2007 WL 1129170 at *2 n.7 (Bankr. D. Del. Apr. 13, 2007).

## III.   The Balance of Harms Weighs Against Granting the Lift-Stay Motions.

22.    The most important factor to consider when addressing whether cause exists to lift the automatic stay is the effect on the administration of the chapter 11 cases.  *See id.* ("Even slight interference [to the administration of the case] . . . may be enough to preclude relief in the absence of a commensurate benefit."); *see also In re DBSI*, 407 B.R. at 166 (same); *In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980) ("Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited.").  As a result, cause exists only if the harm that the Movant would suffer from maintaining the stay "considerably outweighs" the harm that the Debtors would suffer from lifting the stay.  *See, e.g.*, *In re DBSI*, 407 B.R. at 166.

23.    Movant does not come remotely close to satisfying that burden.  As described above, the harm that the Debtors would suffer if the stay were lifted for the Claims would be substantial.  By contrast, the Movant will suffer little-to-no hardship if the stay is maintained.  The chapter 11 cases are promptly progressing toward a comprehensive sale of the Debtors' assets, and any recovery that the Movant may be entitled to will be determined following the sales and claims reconciliation processes and in conjunction with distributions pursuant to a chapter 11 plan.  Accordingly, the automatic stay may delay the collection of Movant's Claims, but such delay does not establish the harm necessary for relief from stay.  If it did, every creditor would be entitled to relief from stay, and the exception would swallow the rule.  *Cf. In re Condisco*, 271 B.R. 273, 277 (Bankr. N.D. Ill. 2002) ("The automatic stay almost always delays litigants.  That is, after all, its purpose and the reason they call it a 'stay.'").

DE:4883-6613-7497.1 96859.001

24.     Accordingly, based on the foregoing, there is no cause for lifting the automatic stay here, and the Lift-Stay Motion should be denied.

## **Reservation of Rights**

25.     Nothing contained in this Objection or any order granting the relief requested in this Objection, and no action taken by the Debtors pursuant to the relief requested or granted, is intended as or shall be construed or deemed to be:  (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law, including, without limitation, with respect to the Debtors' insurance policies and coverage thereunder and the Claims, or shall waive, impair, prejudice, or otherwise affect any rights, claims, defenses, arguments, or remedies of the Debtors or their estates (or any successors thereto) with respect to such matters, including, without limitation, in any proceedings before this Court or in any other court; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## **Notice**

26.     The Debtors will provide notice of this Objection to:  (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as proposed counsel to the Committee;

DE:4883-6613-7497.1 96859.001

(c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto;(i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent, and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; (o) counsel to the Movant; (p) the Debtors' insurance carriers and counsel thereto; and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

DE:4883-6613-7497.1 96859.001

WHEREFORE, the Debtors respectfully request that the Court deny the Lift-Stay Motion and grant the Debtors such other and such other relief as the Court deems appropriate under the circumstances.

Dated:  December 29, 2023
Wilmington, Delaware

/s/ Peter J. Keane
_____

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | Whitney Fogelberg (admitted *pro hac vice*) |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 919 North Market Street, 17th Floor | 300 North LaSalle |
| P.O. Box 8705 | Chicago, Illinois 60654 |
| Wilmington, Delaware 19801 | Telephone:    (312) 862-2000 |
| Telephone:    (302) 652-4100 | Facsimile:    (312) 862-2200 |
| Facsimile:    (302) 652-4400 | Email:    patrick.nash@kirkland.com |
| Email:    ljones@pszjlaw.com |     david.seligman@kirkland.com |
|     tcairns@pszjlaw.com |     whitney.fogelberg@kirkland.com |
|     pkeane@pszjlaw.com | |
|     ecorma@pszjlaw.com | -and- |

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*