**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Yellow Corporation, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related Docket No. 1329** |
| | ) | |
| | ) | **(Obj. Deadline Extended with Consent)** |
| | ) | |

**(I) OMNIBUS OBJECTION OF CREDITORS KASHA FERGUSON, RUBEN R. RODRIGUEZ, AND BOBBY GRISSOM TO THE DEBTORS' MOTION TO ESTABLISH ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR RESOLUTION OF CERTAIN LITIGATION CLAIMS AND FOR RELATED RELIEF AND (II) JOINDER TO THE OBJECTIONS FILED BY OTHER PARTIES**

COME NOW, Kasha Ferguson ("Ms. Ferguson" or "Claimant"), Ruben R. Rodgriguez ("Mr. Rodriguez" or "Claimant"), and Bobby Grissom ("Mr. Grissom" or "Claimant," and collectively with Ms. Ferguson and Mr. Rodriguez, the "Objecting Personal Injury Creditors"), through undersigned counsel, and hereby file their Omnibus Objection to the *Motion of Debtors to Establish Alternative Dispute Resolution Procedures for Resolution of Certain Litigation Claims and for Related Relief* (the "ADR Procedures Motion") [Doc. 1329] *and Joinder to the Objections of Other Parties* (the "Omnibus Objection and Joinder"). In support of their Omnibus Objection and Joinder, the Objecting Creditors respectfully state as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 511500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

## BACKGROUND

1.     On August 6, 2023 (the "Petition Date"), each of the Debtors filed for protection

under Chapter 11 of the Bankruptcy Code.

2.     On December 11, 2023, the Debtors filed the ADR Procedures Motion. [D.I. 1329].

3.     The insurance policy here at issue, Policy No. MWML 18562, contains in numerous

locations a "Bankruptcy Savings Clause," which provides as follows:

> **B. General Conditions**
> **1. Bankruptcy**
> Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

*See, e.g.,* Policy No. MWML 18562, at p. 9 of 14 (CA 546 002 0319).[2]

4.     In some cases, the following definition is included in the policy:

> No provision, stipulation, or limitation contained in the attached policy or any endorsement shall relieve insurer from obligations arising out of this endorsement or the Act, regardless of the insured's financial solvency, indebtedness or bankruptcy

*See, e.g.,* Policy No. MWML 18562, at (MC 67 M (REV. 10/2010) **UH EF**; **MC2406f** (10-10) Wolters Kluwer | Uniform Forms).

5.     In certain other instances, the Bankruptcy Savings Clause contains an additional

clause, which provides as follows:

> **B. Bankruptcy Or Insolvency**
> **Your** bankruptcy, insolvency or inability to pay, or the bankruptcy shall not relieve **us** from the payment of any claim covered by this Policy.
> But under no circumstances shall any bankruptcy, insolvency, or inability to pay require **us** to drop down or in any way replace **your deductible** or assume any obligation associated with **your deductible**.

*See, e.g.,* Policy No. MWML 18562, at p. 10 of 13 (MC 546 002 0309).

---

[2] A copy of the transmittal letter containing a copy of the policy is attached hereto as Exhibit A. The policy itself is being omitted because it is voluminous at some 498 pages. A copy will be provided to parties-in-interest to this Objection and Joinder, at their expense, who submit a written request.

2

6.      In certain cases, the following definition is included in the policy:

It is understood and agreed that no condition, provision, stipulation or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company.

*See, e.g.,* Policy No. MWML 18562, at (DOT 1858).

A.      **Claim of Ms. Ferguson**

7.      Pre-petition, on or about November 24, 2019, Debtor-defendant YRC Inc. was the owner of 2018 Volvo semi truck, US DOT Number 71821 (hereinafter "Semi Truck"), being driven by its employee, agent and servant defendant John L. Pope, Jr.  At or around 3:18 p.m. that day, Claimant was operating a 2004 Honda car traveling westbound on SR-1722 (Bethany Church Road) near Catawba, Catawba County, North Carolina, and defendant Pope was operating the Semi Truck eastbound when defendant Pope failed to yield while attempting to make a left turn across the path of Claimant's oncoming vehicle and the vehicles collided.

8.      As a direct and proximate result of one or more of defendant Pope's acts of negligence, Claimant suffered serious, painful, and permanent bodily injuries.  Defendant Pope's negligence is imputed to his employer, Debtor-defendant YRC Inc., under the principles of agency.

9.      At all relevant times, Debtor-defendant YRC Inc., a motor carrier, and defendant Pope were subject to the rules and regulations of the United States Department of Transportation and the Federal Motor Carrier Safety Administration, codified in Title 49 of the Code of Federal Regulations, parts 300-399 and related parts.

10.      Thereafter, pre-petition, on or about September 6, 2022, in connection with the collision, Claimant caused a lawsuit to be filed in the State of North Carolina General Court of

Justice, Superior Court Division, Catawba County styled *Ferguson v. Pope and YRC INC. d/b/a YRC Freight,* case number 2022-CVS-2010 (the "State Court Action").  The State Court Action sounds in three claims for relief:  (i) negligence of defendant Pope, (ii) vicarious liability as to Debtor-defendant YRC Inc., and (iii) direct negligence as to Debtor-defendant YRC Inc.  The complaint demands trial by jury.  The State Court Action was removed to the United States District Court for the Western District of North Carolina, Statesville Division and is currently pending at File No.: 5:22-CV-174-KDB-DSC (the "Federal Court Action").

11.     Upon information and belief, the Debtors are covered by one or more primary motor carrier's indemnity and excess liability insurance policies (the "Policies") issued by Old Republic Insurance Company ("ORIC").  Upon information and belief, the Policies also include an MCS-90 endorsement,[3] applicable here, which creates a surety obligation for claims that qualify under 49 U.S.C. § 31139(b)(1) whereby the motor carrier named therein is the principal, the Claimant is the obligee, and ORIC is the surety.  Upon information and belief, Claimant may also be the obligee under a state-law analog statute.  The Debtors may own other insurance policies that may be applicable to the Claimant's claim, and the Claimant reserves her rights as to any other applicable insurance policies.  The Claimant's claim as set forth herein relates to any portion of any judgment or settlement obtained against the Debtors that is <u>not</u> satisfied by the Policies, the MCS-90 endorsement, other applicable motor carrier statutes, or other applicable insurance policies.

---

[3] According to Policy No. MWML 18562, a certificate of liability insurance pertaining to uniform motor carrier bodily injury and property damage has been filed with the North Carolina insurance commissioner. MC 1690a (Ed. 8-99) UNIFORM INFORMATION SERVICES, INC.

12.     The foregoing description of Claimant's claim is qualified in its entirety by proofs of claim No. 17596 filed against Debtor YRC Inc. and No. 17601 filed against Debtor Yellow Corporation on November 10, 2023.

### B.     Claim of Mr. Rodriguez

13.     Pre-petition, on or about September 15, 2021, at approximately 12:02 p.m., Claimant, a Las Vegas Metro Police Officer, was traveling northbound on N. Jones Boulevard just north of the intersection with Craig Road in his Las Vegas Metropolitan Police Department-issued 2018 Ford Explorer with lights and siren activated while responding to an emergency call.  At that time and place, defendant Luis Raul Velez, an employee of Debtor-defendant YRC Inc., was the operator, within the course and scope of his employment, of a 2001 Volvo semi-truck with enclosed box trailer, US DOT Number 71821, owned by Debtor-defendant YRC Inc., which was stopped on southbound N. Jones Boulevard waiting to make a left turn, which then turned into the path of Claimant's approaching patrol vehicle.

14.     As a direct and proximate result of one or more of defendant Velez's acts of negligence, Claimant sustained injuries to, without limitation, his head, neck, throat, shoulder, hand, lower back, foot, psyche, and systems, all or some of which conditions are permanent and disabling.  Claimant was transported from the scene of the collision by ambulance to United Medial Center Trauma Center.  Defendant Velez's negligence is imputed to his employer, Debtor-defendant YRC Inc., under the principles of agency.

15.     Thereafter, pre-petition, on or about July 25, 2023, in connection with the collision, Claimant caused a lawsuit to be filed in the District Court, Department 21, Clark County, Nevada styled *Ruben v. YRC INC. f/k/a YRC Worldwide d/b/a YRC Freight, et al.,* case number A23-

874557-C (the "State Court Action").  The State Court Action sounds in three claims for relief:  (i) negligence and negligence *per se*, including violation of applicable Federal Motor Carrier Safety Regulations, (ii) negligent entrustment, and (iii) negligent hiring, training, supervision, and retention.

16.    Upon information and belief, Debtor-defendant YRC Inc., a motor carrier, and defendant Velez were subject to the rules and regulations of the United States Department of Transportation and the Federal Motor Carrier Safety Administration, codified in Title 49 of the Code of Federal Regulations, parts 300-399 and related parts.

17.    Upon information and belief, the Debtors are covered by one or more primary motor carrier's indemnity including, as applicable here, policy number MWML18562, and excess liability insurance policies (the "Policies") issued by Old Republic Insurance Company ("ORIC"). Upon information and belief, the Policies also include an MCS-90 endorsement, applicable here, which creates a surety obligation for claims that qualify under 49 U.S.C. § 31139(b)(1) whereby the motor carrier named therein is the principal, the Claimant is the obligee, and ORIC is the surety. The Debtors may own other insurance policies that may be applicable to the Claimant's claim, and the Claimant reserves his rights as to any other applicable insurance policies.  The Claimant's claim as set forth herein relates to any portion of any judgment or settlement obtained against the Debtors that is <u>not</u> satisfied by the Policies, the MCS-90 endorsement, applicable motor carrier statutes, or other applicable insurance policies.

18.    The foregoing description of Claimant's claim is qualified in its entirety by proof of claim No. 17087 filed against Debtor YRC Inc. on November 10, 2023.

C.     **Claim of Mr. Grissom**

19.     Pre-petition, on or about June 26, 2022, Claimant was driving his 2014 Ram 2500 northbound on Interstate 610 in Houston, Texas.  At the same time, defendant Delral Dolphus, an employee of Debtor-defendant YRC Inc., was the operator, within the course and scope of his employment, of a vehicle owned by Debtor-defendant YRC Inc., which was traveling in the same direction in the lane directly to the right of Claimant when defendant Dolphus suddenly swerved into Claimant's vehicle striking it at high speed and pushing it into the concrete divider on the left side of the interstate, thereby proximately causing Claimant to sustain personal injuries and resulting damages.

20.     Thereafter, pre-petition, on or about September 23, 2022, in connection with the collision, Claimant caused a lawsuit to be filed in the 129th Judicial District Court, Harris County, Texas the matter styled *Grissom v. Dolphus and YRC Inc. d/b/a Yellow Transportation Inc.*, Envelope No. 68581446 (the "State Court Action").  The State Court Action sounds in eight causes of action: (i) negligence of defendant Dolphus, (ii) negligence *per se* of defendant Dolphus, and (iii) *respondeat superior*, (iv) negligent hiring by Debtor-defendant YRC Inc., (v) negligent training by Debtor-defendant YRC Inc., (vi) negligent supervision by Debtor-defendant YRC Inc., (vii) negligent retention by Debtor-defendant YRC Inc., and (viii) negligent entrustment by Debtor-defendant YRC Inc. and seeks damages in an amount of not less than $1,000,000.00 to be determined by a jury.

21.     Upon information and belief, Debtor-defendant YRC Inc., a motor carrier, and defendant Dolphus were subject to the rules and regulations of the United States Department of Transportation and the Federal Motor Carrier Safety Administration, codified in Title 49 of the Code of Federal Regulations, parts 300-399 and related parts.

22.     Upon information and belief, the Debtors are covered by one or more primary motor carrier's indemnity and excess liability insurance policies (the "Policies") issued by Old Republic Insurance Company ("ORIC").  Upon information and belief, the Policies also include an MCS-90 endorsement,[4] applicable here, which creates a surety obligation for claims that qualify under 49 U.S.C. § 31139(b)(1) whereby the motor carrier named therein is the principal, the Claimant is the obligee, and ORIC is the surety, as well as potential state law analogs. The Debtors may own other insurance policies that may be applicable to the Claimant's claim, and the Claimant reserves his rights as to any other applicable insurance policies.  The Claimant's claim relates to any portion of any judgment or settlement obtained against the Debtors that is not satisfied by the Policies, the MCS-90 endorsement, applicable motor carrier statutes, or other applicable insurance policies.

23.     The foregoing description of Claimant's claim is qualified in its entirety by proof of claim No. 17139 filed against Debtor YRC Inc. on November 10, 2023.

## OBJECTION

24.     The Objecting Personal Injury Creditors bring their Omnibus Objection to the Debtors' ADR Procedures Motion on the grounds that they do not wish to be compelled to participate in a multi-step ADR Procedure -- despite Debtors' unsupported claim that by participating they will receive quicker payment (although unmentioned is the likelihood that any such payment will be in a substantially lesser amount than the Objecting Personal Injury Creditors would likely otherwise be entitled to should their cases be tried before local juries comprised of their local community peers) -- at the end of which process, if the parties have been unable in good

---

[4] According to Policy No. MWML 18562, a certificate of liability insurance pertaining to uniform motor carrier bodily injury and property damage has been filed with the Texas insurance commissioner.  MC 1690a (Ed. 8-99) UNIFORM INFORMATION SERVICES, INC.

faith to achieve a consensual resolution, Objecting Personal Injury Creditors would then, either (i) be permitted to file a motion for relief from stay and from the ADR injunction (and any Plan Injunction), subject, however, to the proviso[5] that the movants *waive their claims against the Debtors and their estates* and *release the Indemnified Parties* and *agree to limit their recoveries to the proceeds, if any, of the Debtors' insurance policies* -- in a context where the Debtors' primary insurer denies coverage, defense obligations, and all liability -- or (ii) proceed before the Court to request stay relief, and risk, presumably, subjecting their claims to the Court's normal claims adjudication process even though, normally, the Court does not adjudicate personal injury claims because the Court lacks authority to liquidate, estimate, or try personal injury claims.  28 U.S.C. §§ 157(2)(B) and (5).

25.    Rather, the Objecting Personal Injury Creditors intend to pursue relief from the automatic stay and the injunctive provisions of the ADR Procedures so that they can engage in formal discovery and prosecute their state and federal lawsuits against the Debtors to settlement or judgment in their home states before juries of their local peers.

26.    The Debtors do not even mention or address the fact that this Court lacks the authority to liquidate, estimate, or try personal injury claims.  28 U.S.C. §§ 157(2)(B) and (5).  In effect, the Debtors seek to impose a Section 524(g) channeling injunction over their personal injury creditors despite the fact this is not a mass tort case, such as an asbestos case, without future personal injury creditors, and where there is no proposal to establish a trust to which future personal injury creditors would be referred to seek compensation for their injuries.  Rather, this is

---

[5] Compare this formulation of the stay relief procedure to the sugar-coated formulation where the proviso provides that such claims waiver would *only* be required where claimant sought to keep the Debtors from objecting to movant's request for stay.  ADR Procedures Motion, at 17 of 34, para E(1)(a).  More illusion.

a garden variety bankruptcy of Debtors whose business operations have resulted, predictably, in a finite number of known automobile collisions.

27.     It is clear that the Debtors' real goal here, despite the presence of one or more Bankruptcy Savings Clauses, is to avoid having to initiate coverage litigation with their insurers, proposing instead to shunt the Objecting Personal Injury Creditors into a procedure that offers illusory remedies.  Query what it even means for a corporate debtor who operates a trucking company to adopt an insurance scheme ostensibly designed to protect the rights of innocent third party tort victims where the entire coverage limit is self-insured?  Where is the Committee's objection on behalf of its constituency?   Having adopted such an insurance scheme, query, what is Debtors' fiduciary duty to its innocent tort victims?

28.     Moreover, the Debtors offer no justification for their proposal to require a waiver of claims against them (and a releases of the Indemnities) in order for movants even to have a chance to return to the constitutional tort resolution system, subject to movants' success in obtaining stay relief at the end of the process.  Query what consideration have the Indemnities contributed to the benefit of the general unsecured creditor constituency to justify such releases?

29.     As a practical matter, having a claim against the Debtors, who have recently completed a $1.8 billion asset sale, may turn out to be the only (or a primary) source of recovery for my clients.  Query whether the proposal even passes the red face test?  The Court's conscience should be shocked.

30.     There are various additional details of the proposal that objectionable at the operational level.  For instance:

- in order to participate in the ADR Procedure, the Objecting Personal Injury Creditors would be required to pay up to $500 towards the cost of mediation, even though the

Debtors bear the full costs of paying the mediator's fee in mediation of avoidance actions;

- the Objecting Personal Injury Creditors would be required to waive their rights to formal discovery, whereas ORIC and any participating Third-Party Payors would be permitted to request additional information from injured victims in connection with the offer and exchange procedure;

- the Objecting Personal Injury Creditors would be required to waive their claims against the Debtors if dissatisfied with the results of ADR, even though such is not a requirement associated with a normal personal injury stay relief motion which is usually couched in terms of waiving such a claim against a debtor only to the extent it is covered by that debtor's insurance scheme;

- at the end of an unsuccessful ADR process, in order to return to the Constitutional tort adjudication system, the Objecting Personal Injury Creditors would be required to petition the Court for stay and injunctive relief (rather than having it granted automatically, and there is no opt-out election); and

- Third-Party Payors and the Indemnities would not even be required to participate in the ADR process, thus potentially exposing the Objecting Personal Injury Creditors to the need to pursue supplemental proceedings, incur the attendant costs in doing so, and risk being saddled with inconsistent or contradictory outcomes.

31.     There are numerous additional details of the proposal that warrant objection, such as the provision that failing to reject ORIC's settlement offer within a compressed time frame at the offer and exchange phase can result in deemed acceptance of the offer and disallowance of the

creditor's claim.  And that ORIC may request additional information about a claim, but a creditor

may not, but failing to negotiate in good faith may result in claims disallowance.

32.     Moreover, query who are these opaquely defined "Indemnities" against whom the

Objecting Personal Injury Creditors would be required to waive their claims against?    That term

refers to "claims against non-debtor third parties, which claims are covered in whole, or in part,

by the Debtors' insurance policies or for which the Debtors retain ultimate liability pursuant to

contract, corporate by-laws and/or insurance policies and related agreements." ADR Procedures

Motion, at p. 4 of 17, ¶ 8(E) and at p. 7 of 34.  That definition is far from illuminating.  A further

descriptive attempt provides, that "Indemnitees shall include, but are not limited to: (a) any of the

Debtors' or their predecessors- in-interest's current or former agents, representatives, *drivers*, or

employees; (b) *any person indemnified by the Debtors*; (c) *any person or entity listed as an

additional insured under any of the Debtors' insurance policies* (including, but not limited to, the

ORIC Policies); (d) any current or former direct or indirect parent corporation, *affiliates or

subsidiaries of the Debtors*; (e) the officers, directors, and or *employees of the Debtors or of any

such parent, affiliate or subsidiary*; and (f) *any other entity or individual sharing coverage with

the Debtors.*" *Id.* (emphasis supplied).   Query, who are these corporate entities and natural

persons?  And why are they not named?  More illusion.

33.     Finally, courts have held that an insurer's perspective on a lift stay motion ought

not be considered.  <u>In re Sonnax Industries, Inc.</u>, 907 F.2d 1280 (2d Cir.1990) ("where a plaintiff

seeks relief from the stay to pursue a claim in another forum, the interests or desires of the

insurance company which provides coverage of the claim are not considered in determining

whether the stay should be lifted.").  Accordingly, ORIC should not be heard in connection with

this proposal to erect procedural barriers in the path of movants who are seeking or intending to seek stay relief.

34.    For all of the foregoing reasons, the proposal seeks impermissibly to curtail the Objecting Personal Injury Creditors' access to the Constitutional tort adjudication system and, therefore, the motion ought to be denied.

## RESERVATION OF RIGHTS

35.    The Objecting Personal Injury Creditors reserve all rights to file additional pleadings in connection with this matter, including without limitation, to pursue formal discovery and to request relief from the automatic stay and injunctive provisions of the ADR Procedures (as well as of any Plan).

## JOINDER

36.    Except as to the differing factual circumstances applicable to the Objecting Personal Injury Creditors' claims, the Objecting Personal Injury Creditors join in and adopt as if fully restated herein the arguments asserted by other objectors to the ADR Procedures Motion, including, without limitation, the following:

- joinder to objection filed by Anne-Celeste Openshaw [D.I. 1489] (failure of disclosure of motion's potential adverse impact on individual creditor's substantive rights under Local Rules; failure to respond to settlement offer within strict timeframe or to otherwise comply with ADR Procedures deemed consent to accept settlement offer or to disallowance of claim; potential illusory funding of settlements), and

- limited objection filed by Hagop Kouloujian, Aram Kouloujian, and Daniela Gaito [D.I. 1329] (preclusive effect of definitions of Indemnitees and Third-Party Payors to suing non-debtor third-parties; proviso requiring waiver of claims against the Debtors

and Indemnities in order to pursue litigation outside of Bankruptcy Court when stay is lifted; definition of Indemnities is overbroad; extending stay to non-debtor third-parties (possessing their own insurance coverage); delay associated with extending stay to non-debtor third-parties).

## CONCLUSION

WHEREFORE, the respective Objecting Personal Injury Creditors respectfully request that this Honorable Court enter an Order (i) sustaining the Joinder and Objection, (ii) denying the ADR Procedures Motion unless and until it is modified to conform substantially herewith, and (iii) granting to the Objecting Personal Injury Creditors such other and further relief as the Court deems just and proper.

Date:   January 2, 2024
        Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

*/s/ E.E. Allinson III*
Elihu E. Allinson III (No. 3476)
919 North Market Street, Suite 420
Wilmington, DE  19801
Tel: (302) 428-8191
Fax : (302) 428-8195
Email : zallinson@sha-llc.com

and

Adrienne S. Blocker, Esq.
DeMayo Law Offices, LLP
1211 E. Morehead St.
Charlotte, NC 28204
Tel: (704) 632-1592
Email: ablocker@demayolaw.com

*Attorneys for Kasha Ferguson*

Dillon Coil, Esq.
Ryan Loosvelt, Esq.
GGRM Law Firm
2270 S. Maryland Pkwy., Ste 100
Las Vegas, NV  89109
Tel: (702) 384-1616
Fax: (725) 220-4722
Email: dcoil@ggrmlawfirm.com
          rloosvelt@ggrmlawfirm.com

*Attorneys for Ruben R. Rodriguez*

14

Cole Gumm, Esq.
Zinda Law Group, LLC
8834 North Capital of Texas Highway
Suite 304
Austin, TX   78759
Tel: (512) 246-2224
Email: cole@zindlaw.com

*Attorneys for Bobby Grissom*