# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-11069 (CTG)<br>(Jointly Administered)<br><br>**RE: D.I. 1329** |

### JOINDER AND OBJECTION OF PAUL CLARK AND JEAN CLARK TO DEBTORS' MOTION TO ESTABLISH ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR RESOLUTION OF CERTAIN LITIGATION CLAIMS AND FOR RELATED RELIEF

Paul Clark and Jean Clark ("Movants"), by and through their undersigned counsel, hereby submits their objection (the "Objection") to the to the Motion of Debtors to Establish Alternative Dispute Resolution Procedures for Resolution of Certain Litigation Claims and for Related Relief Filed by Yellow Corporation. [D.I. 1329] (the "Motion to Establish ADR") and joins in similarly filed objections and in support of this Objection, the Movants respectfully states as follows:

1. On July 13, 2021, Movants were involved in a catastrophic automobile collision with Charles Spears, a driver for YRC, Inc. d/b/a YRC Freight ("YRC"), when Mr. Spears ran a red light and struck Movants' passenger vehicle. Charles Spears was working within the course and scope of his employment for YRC at the time of the collision. YRC is a subsidiary of Debtor Yellow Logistics, Inc. d/b/a YRC Freight ("Debtor"). Movants were severely injured in the

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 10990 Roe Avenue, Overland Park, Kansas 66211.

collision and, specifically, Paul Clark sustained broken legs and a broken pelvis. He is now unable to walk or complete everyday tasks without assistance and will more than likely be rendered immobile for the remainder of his life. Jean Clark sustained a life-threatening ruptured aorta, which was repaired with a stint. The July 13, 2021, collision occurred because of Charles Spears' inattention and YRC's policies and procedures, which encourage drivers to essentially conduct business meetings with customers while en route to deliveries.

2. On May 17, 2022, Movants filed their Complaint in the Taylor County Circuit Court in Taylor County, Kentucky, styled *Paul Clark and Jean Clark vs. Charles Spears and YRC, Inc. d/b/a YRC Freight and Kentucky Farm Bureau Mutual Insurance Company*, Case No. 22-CI-00104 (the "State Court Action").

3. On or about August 29, 2023, Movants filed a Motion for Relief from Stay.

4. On or about October 12, 2023, the Debtors filed their objection to the Motion for Relief from Stay, asserting, among other things, that Old Republic Insurance Company ("ORIC") was denying insurance coverage. ORIC also objected to the Motion for Relief from Stay suggesting that there was not insurance coverage. The purported denial by ORIC that there is insurance coverage is troubling in light of the facts that: (1) in a bankruptcy proceeding, a debtor is typically required to carry appropriate insurance and the failure to do so will often result in the case converting to a Chapter 7; (2) the Debtors were statutorily required to carry insurance for a minimum amount of $750,000.00 to operate motor vehicles; (3) a certificate was filed with the U.S. Department of Transportation representing that ORIC was providing insurance coverage in connection with the operation of motor vehicles; (4) the Debtors have reported that ORIC drew down on approximately $231 million in letters of credit; and (5) it appears that the ORIC was providing what is characterized as fronting policy for any claim in excess of $750,000.00 and

ORIC, in its own publication, appears to concede that it is ORIC that bears the risk of an insured's insolvency. See article issued by ORIC entitled "*Fronted Policies – When It Makes Sense*" attached hereto as Exhibit A.

5. The Debtors and ORIC filed a MCS-90 endorsement with the U.S. Department of Transportation representing that ORIC was providing $750,000.00 in coverage. Accordingly, there is no coverage question for the minimum required limits of $750,000. This is primary insurance coverage that is required to be in place under the Motor Carrier Act of 1990. As to any claim that would exceed $750,000.00, that aspect of the claim should also be covered by insurance under a fronting policy. Fronting is the use of a licensed, admitted insurer to issue an insurance policy on behalf of a self-insured organization or captive insurer without the intention of transferring any risk. The risk of loss is retained by the self-insured or captive insurer through an indemnity or reinsurance agreement. However, the fronting company (insurer) would be required to honor the obligations imposed by the policy if the self-insurer or captive failed to indemnify it. Therefore, the fronting company is subject to credit risk as a result of the arrangement, and fronting companies charge a fee for this service. Fronting arrangements allow captives to comply with financial responsibility laws imposed by many states that require evidence of coverage written by an admitted insurer, such as for auto liability and workers compensation insurance. Fronting arrangements may also be used when business contracts with other organizations, such as leases and service contracts, require evidence of coverage through an admitted insurer. The insured may face a contractual requirement that stipulates the use of insurers that meet a minimum financial rating to issue the insurance policy for a particular risk. By utilizing a fronting insurer, the certificates of insurance, as well as the policies, would be issued utilizing the name/paper of the fronting company, thereby meeting the contract's requirements. Since it faces a credit risk from

the arrangement, the fronting company will also require that the captive secure its obligation by using some type of collateral, which in this case appear to be letters of credit totaling approximately $231 million.

6. Movants, at the request of the Debtors, had agreed to continue their Motion for Relief from Stay to allow the Debtors to negotiate with ORIC and to file proposed ADR procedures to address claims such as those asserted by Movant on a global basis.

7. On or about December 11, 2023, Debtors filed the Motion to Establish ADR. See D.I. 1329. The objection deadline was set for December 26, 2023, and the Debtors agreed to extend the objection for Movants to January 4, 2024.

8. Movants objects to the Motion to Establish ADR because there are provisions in that Motion that are grossly unfair and one sided. Some of the specific provisions that are objectionable is the one sided default provision if there is a failure to timely respond to a request from the Debtors or ORIC. While Movants have no objection to participating in ADR and indeed welcome the opportunity to do so, only claimants are subject to a default sanction. Also, in the Motion to Establish ADR, it appears that ORIC maintains the right to deny coverage. Movants should not be compelled to participate in ADR until there is some clarity regarding ORIC's apparent continued denial of insurance coverage and the Debtors' apparent acquiescence in this even after ORIC drew down on an approximately $321 million letter(s) of credit. The Debtors also appear to be seeking a waiver of claims against the estate. If Movants participates in ADR in good faith, Movants should not be required to waive claims or release claims against the Debtors to obtain relief from stay and pursue her claim especially when ORIC appears to deny coverage notwithstanding drawing down on $231 million in collateral.

## JOINDER IN THE ARGUMENTS OF OTHER CLAIMANTS OBJECTING TO THE MOTION TO ESTABLISH ADR

9. Movants joins in the arguments raised by other similarly situated claimants that have objected to the Motion to Establish ADR and incorporate by reference those arguments herein.

WHEREFORE, Movants respectfully request that the Court deny the Debtors' Motion to Establish ADR until the ADR procedures are modified to adequately address the concerns of Movants and other claimants and that Movants be awarded such further additional relief as may be just and proper under the circumstances.

Dated: January 3, 2024　　　　　　　　　**GELLERT SCALI BUSENKELL & BROWN, LLC**

*/s/ Charles J. Brown III*
Charles J. Brown III (DE 3368)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Ph: 302.425.5813
Fax: 302.425.5814
cbrown@gsbblaw.com

*Counsel for Movants Paul and Jean Clark*