# **<u>EXHIBIT A</u>**

Blog & News   Contact   Search

Menu

# Fronted Policies – When It Makes Sense

Posted on 05/24/21 by Chris Weber, Vice President, Account Executive

in Share   ✉ Share



As the insurance market continues to firm and policy terms and conditions are constricting on corporate liability programs, more and more Risk Managers are strongly considering "fronted policy" structures.

What is fronting? Fronting may be defined as the provision of insurance by a licensed, admitted insurance company to an insured entity without the actual transfer of insured risk. The ultimate risk of loss is retained by the insured via a deductible and indemnity agreement or other similar agreement or transferred to a captive insurer via a reinsurance agreement.

So… when may a fronted program make sense? What are some of the benefits and major considerations that should be contemplated?

Some of the many potential benefits of a fronted policy in the casualty insurance space are:

## Setting Policy Terms and Conditions

Since the licensed/admitted insurance carrier offering the fronted policy is transferring the ultimate risk resulting from the policy back to the insured or to a captive reinsurer (or, in certain situations, to another party), there may be some flexibility to provide broader coverages than are typically available under a traditional policy.

## Direct Involvement with Claims

Since under a fronted policy, the insured (or captive reinsurer) is responsible for all claim payments under the policy and allocated loss adjustment expenses (ALAE), the carrier may allow a fair amount of flexibility in claims administration. A common motivator for the insured

is to protect its corporate brand regarding sensitive claim issues. In some circumstances, the self-administration of claims and selection of outside defense counsel also may be permitted, subject to the carrier's ultimate control. Keep in mind, the self-administration of casualty claims brings with it a responsibility to follow state claim practices regulations and any applicable adjuster licensing requirements.

## Reduce/Smooth Up-Front Premium Costs

Fees charged by the fronting carrier are intended in large part to cover its internal costs to issue the policy and are usually much less than traditional risk transfer policy premiums. The carrier's fronting costs include administrative costs for policy issuance and servicing throughout the policy term, costs to ensure regulatory compliance/filings (such as state auto filings, use of state approved forms, taxes & assessments), claims oversight and/or support as appropriate, and a general capital/surplus charge for premiums flowing through the insurer. There may be economies of scale available if the fronting policies are combined with other lines of business for your organization through one insurer.

## Effective Use of a Corporate Captive

As stated above, the transfer of the insured's risk from the issuing carrier may be a great addition to your existing corporate captive. Depending on the situation, your corporate captive may be able to directly reinsure the issuing carrier's policy, or it might issue an internal deductible buy-back policy. In both cases, this allows the captive to bear the risk of losses stemming from the fronted policy.

## Added Primary Limit/Capacity

Current market conditions often see lead umbrella policies requiring higher attachments. Possible responses are to increase the limits under the fronted primary policy to meet these requirements or to utilize a fronted buffer layer policy sitting directly above the primary policies (an example: $5mil fronted buffer layer excess of a Primary $5mil CSL Auto program to achieve $10mil total limits).

As you can see, there are many potential benefits to a fronted policy. However, there are also major considerations to analyze before deciding if one is right for your risk management program.

## Increased Security Requirements

A fronting insurer must ensure that the policies it issues work as intended – i.e., that the insurer does not take on insurance-related risk that the parties intended to remain with the insured, or to be transferred to a third-party such as the insured's affiliated captive. As such, the insurer will typically require some sort of financial security (often called collateral) from the insured or captive reinsurer. This protects the insurer against insolvency by the insured or captive or other circumstances that might pose risk to the insurer. Keep in mind that occurrence-based liability policies can accumulate substantial collateral requirements over time.

## Controlling Total Cost of Risk (TCOR)

Retaining losses + ALAE (often major components of TCOR) can bring volatility to operating expenses. The insured's risk tolerance must be weighed against the cost savings associated with the use of fronting policies.

## Long-term or Short-term Solution

It is always best to determine if fronting a certain risk is a long-term strategy within your risk management program… or are you simply trying to solve a current problem (insurance market conditions that lead to increased risk transfer premiums, reduced capacity, restrictive policy terms, etc.). It is not unusual to see insureds decide to make use of a fronting policy as a tool to retain more risk and save current premium dollars in the short run, only to decide this is in fact the right long-term strategy.

Understanding your company's level of risk tolerance and taking steps to efficiently control your TCOR are very important components to a sound risk management program. Naturally, detailed analytics and more in-depth conversations with your broker and carrier partners may be advantageous to best determine if a fronted policy is an appropriate solution for your company.

**Share**    in Share    ✉ Share

**Topics**

Commercial Insurance, Fronting



**Chris Weber, Vice President, Account Executive**



Chris Weber is a Vice President, Account Executive with Old Republic Risk Management. He is responsible for leading the relationship with clients and brokers by marketing and underwriting casualty insurance programs for large corporations and captives in the risk management marketplace. Chris assists with Old Republic's efforts in the Midwest region.

## Related Posts



**Using Mock Trials as an Alternative Resolution Strategy**