### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt. 1329** |

### OBJECTION OF LINK LOGISTICS REAL ESTATE MANAGEMENT LLC, BREIT INDUSTRIAL CANYON GA1B01 LLC, GPT ELKRIDGE TERMINAL OWNER LLC, GPT DEER PARK TERMINAL OWNER LLC, AND GPT ORLANDO TERMINAL OWNER LLC TO MOTION OF DEBTORS TO ESTABLISH ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR RESOLUTION OF CERTAIN LITIGATION CLAIMS AND FOR RELATED RELIEF

Link Logistics Real Estate Management LLC and its affiliates GPT Orlando Terminal Owner LLC, GPT Elkridge Terminal Owner LLC, GPT Deer Park Terminal Owner LLC, and BREIT Industrial Canyon GA1B01 LLC (collectively, "**Link Logistics**") hereby object to the *Motion of Debtors to Establish Alternative Dispute Resolution Procedures for Resolution of Certain Litigation Claims and for Related Relief* [Dkt. 1329] (the "**ADR Motion**"),[2] and respectfully state as follows.[3]

### PRELIMINARY STATEMENT

1.     Link Logistics owns and/or manages the four (4) real property locations described on the attached **Exhibit A** (the "**Premises**"), which are terminals leased by the Debtors pursuant

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]  Capitalized terms used and not defined herein have the meaning ascribed in the ADR Motion.

[3]  Link Logistics received an extension of its deadline to respond to the ADR Motion to January 3, 2024.

10096297.2

to written agreements (the "**Leases**").  Pursuant to the terms of the Leases, Link Logistics is a named additional insured under insurance policies maintained by the Debtors (the "**Premises Policies**") with ORIC and other insurance companies (collectively, the "**Premises Insurers**"). Some or all of the Premises have property damage for which Link Logistics has claims against the Debtors under the Leases or against the Premises Insurers under the Premises Policies.  In addition, Link Logistics may have claims against the Debtors under the Leases or against the Premises Insurers under the Premises Policies for indemnification or for coverage on account of claims by third parties that are presently unknown.  For any such claims, Link Logistics may also have related claims against other non-debtor third parties.

2.      All such landlord claims appear to be Litigation Claims under the ADR Motion and would be subject to the ADR Procedures.  For the avoidance of doubt, the Debtors have confirmed to Link Logistics that this is indeed the intention of the ADR Motion and have declined to clarify or modify the ADR Motion or proposed order to exclude such landlord claims.  This proposed treatment of landlord claims is not equitable and is not consistent with the requirements of section 365 of the Bankruptcy Code.  Nothing in the ADR Motion, which addresses only personal injury claims and indirect claims against ORIC, has any relevance to such landlord claims or provides any factual basis or legal support for this proposed treatment.  The ADR Motion must be denied with respect to any landlord claims under or relating to any lease, including but not limited to claims against the Debtor counterparty under the applicable lease, claims against any potentially liable non-debtor third parties, and claims under any insurance policy in which the landlord has direct rights as a named insured (collectively, "**Landlord Claims**").

3.      Moreover, the ADR Motion should be denied because it seeks injunctive relief that is not available outside of an adversary proceeding.  The ADR Motion should also be denied

2

because it fails to establish an evidentiary record sufficient to justify the requested extraordinary relief.  The ADR Motion should also be denied because it fails to provide any legal basis for such extraordinary relief, particularly with respect to the Landlord Claims and landlords being prohibited from seeking relief from the procedures, having recoveries limited to available insurance coverage if any, and being required to waive claims against the Debtors and others in favor of pursuing non-debtor third parties after completing the ADR Procedures.  In addition, these cases do not present the "unusual circumstances" that could warrant extension of the automatic stay to non-debtor third parties.

## BACKGROUND

4.      On August 6, 2023, the Debtors commenced these cases, and have since continued to operate as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Leases were entered into by certain of the Debtors prior to the commencement of these cases.  The Leases require, among other things, that the Debtors maintain certain insurance coverage with respect to the Premises and that Link Logistics be an additional insured under such policies.  Copies of the applicable certificates of insurance are attached as **Exhibit B**.  As set forth therein, Link Logistics and/or its affiliates are additional insureds under policies covering each of the Premises with ORIC, Travelers Property Casualty Company of America, and/or Illinois Union Insurance Company.

6.      On November 1, 2023, the Debtors filed a notice identifying one of the Leases for rejection [Dkt. 1018].  On November 15, 2023, Link Logistics filed an objection to certain aspects of the proposed rejection [Dkt. 1148].  As of the date hereof, the Debtors and Link Logistics are working to resolve the outstanding issues with the proposed rejection without further litigation, and the other Leases remain subject to the Debtors' continued sale process.  *See* Dkt. 1403 Exh. 3.

# ARGUMENT

7.    The proposed ADR Procedures require a broad group of unnamed claimants and their claims, including landlords with Landlord Claims, to engage in certain noticing and offer exchange activity followed by mandatory mediation, with no relief possible from such procedures until the conclusion of the mandatory mediation.  Even then, claimants are limited to recoveries from available insurance coverage if any and may only proceed against such coverage if all claims against the Debtors, their estates, current and former employees, and their personal assets are waived.  The Debtors provide no evidentiary record whatsoever and no relevant legal authority in support of this extraordinary relief, which would be manifestly contrary to the requirements of section 365 of the Bankruptcy Code for Landlord Claims.  In addition, these cases do not present the "unusual circumstances" necessary for a section 105(a) extension of the automatic stay to non-debtor third parties.

### A.    Treatment of Landlord Claims as Litigation Claims is Contrary to the Bankruptcy Code

8.    The ADR Motion defines Litigation Claims to include, among other things, all claims for "property damage" and any claims related to claims for personal injury, wrongful death or property damage, whether against any Debtor or against non-debtor third parties, and whether covered by insurance or not.  *See* ADR Motion at 1, ADR Procedures at 1.  This broad definition appears to subsume all Landlord Claims.  For the avoidance of doubt, counsel for the Debtors has confirmed to counsel for Link Logistics that this is indeed the intention of the ADR Motion (and have declined to clarify or modify the ADR Motion or proposed order to exclude Landlord Claims).

9.    Nothing in the ADR Motion provides a legal basis for treating Landlord Claims in this manner.  As an initial matter, injunctive relief is not available outside of an adversary

proceeding.  *See* Fed. R. Bankr. P. 7001(7).  Further, Bankruptcy Rule 7016 is not applicable to contested matters, and its authorization for scheduling orders and pretrial conferences in particular actions before the court, based on the particular issues of that action, cannot be extended to the injunctive relief or non-consensual claim waivers of the ADR Procedures.  Similarly, while Bankruptcy Rule 9019 allows for the pre-approval of consensual settlements with claimants through the proposed offer exchange and mediation process, nothing therein authorizes non-consensual injunctive relief or non-consensual claim waivers.  *See* Fed. R. Bankr. P. 9019(b). Likewise, the cited Local Rules do not authorize any such relief.  *See* Del. Bankr. L.R. 9019-3, 9019-5, 9019-6.  To the contrary, the Local Rules authorizing mediation in contested matters expressly provide that the assignment of a matter to mediation does not relieve any party from its other obligations under the Bankruptcy Code, expressly provide for the withdrawal of matters from mediation by the Court, and expressly provide for parties to seek modifications of any such procedures.  *See* Del. Bankr. L.R. 9019-5(b), (i).  Overall, the Debtors' string citations do not appear to stand for anything more than the entirely non-controversial proposition that bankruptcy courts may compel parties to participate in mediation and may approve settlement procedures. Nothing therein appears to contemplate, let along provide support for, the non-consensual injunctive relief and forced claim waivers of the ADR Procedures, let alone as applied to any Landlord Claims.

10.    The treatment of Landlord Claims under the ADR Procedures is not consistent with the requirements of section 365 of the Bankruptcy Code, which among other things requires cure of defaults prior to assumption or assignment and timely performance of all obligations pending assumption or rejection.  *See, e.g.,* 11 U.S.C. § 365(b)(1)(A), (d)(3).  Accordingly, the ADR Procedures must be denied with respect to Landlord Claims.

B.      **The Proposed Injunctive Relief is Not Warranted**

11.     The Debtors also seek to extend the automatic stay pursuant to sections 105(a) and 362(d) of the Bankruptcy Code to enjoin suits by claimants with Litigation Claims against the Debtors, their estates, ORIC, all Third-Party Payors, and all Indemnitees.  ADR Motion at 4, 14-15; ADR Procedures at 4.

12.     As an initial matter, an extension of the automatic stay does not justify prohibiting claimants, particularly landlords asserting Landlord Claims, from seeking relief from the ADR Procedures.  Extending the automatic stay also does not justify limiting claimants, particularly landlords asserting Landlord Claims, to available insurance coverage if any.  And extending the automatic stay does not justify requiring claimants, particularly landlords asserting Landlord Claims, to waive claims against the Debtors and their estates in order to pursue direct claims against non-debtor third parties after completing the ADR Procedures.  Accordingly, even if the requested extension of the automatic stay was otherwise appropriate – and as discussed below, it is not – the extraordinary relief requested in the ADR Motion would still be unwarranted.

13.     Extension of the automatic stay pursuant to section 105(a) of the Bankruptcy Code is appropriate only in "unusual circumstances" where the interests of the debtor and the non-debtor are "inextricably intertwined."  *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986).  While the requisite unusual circumstances have been found in various situations, this invariably involves a well-defined set of claims against a well-defined set of non-debtor third parties.  The cases cited by the Debtors do not support their efforts to extend the automatic stay to a broad group of unspecified Landlord Claims against a broad group of unspecified defendants.[4]

---

[4]  The term "Third-Party Payors" is defined as "other insurers and any other third-party payors," a definition that subsumes all guarantors and co-obligors or other responsible parties.  ADR Motion at 2; ADR Procedures at 2.  No such entities are identified by the ADR Motion.  The term "Indemnitee" includes all non-debtor third parties subject to claims that are covered in whole or in part by the Debtors' insurance

10096297.2

14.     The Debtors also fail to establish that the requisite "unusual circumstances" exist here.  While the ADR Motion baldly asserts that "the Indemnitees (typically the drivers, who were employees of the Debtors at the time of the accidents)" have the requisite identity of interest with the Debtors, ADR Motion ¶ 35, these assertions are not evidence even as to claims against drivers, and certainly are not evidence as to unspecified claims against unspecified third parties.  The Debtors have offered no evidence as to the existence or extent of any indemnification or defense obligations with respect to any drivers and any Litigation Claims (let alone for other non-debtor third parties or for the Landlord Claims), and have not offered evidence as to the volume or cost of the litigation facing the Debtors, the impact of the Litigation Claims (let alone the Landlord Claims) on available insurance coverage or otherwise on the estates.[5]  Indeed, because the Debtors have not identified with any specificity the universe of Litigation Claims at issue, or the universe of Third-Party Payors or Indemnitees that will benefit from the extension of the automatic stay, a finding of "unusual circumstances" as to such claims and parties is not possible.

15.     The Debtors' failure to provide an evidentiary basis for the extraordinary relief requested is particularly problematic given that this is not a first day request for temporary relief but is a request for a permanent injunction being made five months into these cases.  Indeed, under the circumstances of these cases – where the Debtors are not reorganizing but rather are liquidating

---

policies or for which the Debtors are liable by contract, bylaws, insurance policies or other agreements, and includes without limitation "(a) any of the Debtors' or their predecessor in interest's current or former agents, representatives, drivers, or employees; (b) any person indemnified by the Debtors; (c) any person or entity listed as an additional insured under any of the Debtors' insurance policies (including, but not limited to, the ORIC Policies); (d) any current or former direct or indirect parent corporation, affiliates or subsidiaries of the Debtors; (e) the officers, directors, and or employees of the Debtors or of any such parent, affiliate or subsidiary; and (f) any other entity or individual sharing coverage with the Debtors."  ADR Procedures at 1-2.

[5]  Notably, prior filings by the Debtors or ORIC have suggested that some or all of the ORIC insurance is effectively illusory, in that the policy limits are equal to the Debtors' retention.  *See, e.g.,* Dkt 823 ¶ 6 ("Since the policy limits under the [ORIC motor carrier policies] are equal to the Debtors' retention, all amounts up to the policy limits are the Debtors' responsibility.").

in a process that has already been massively successful, such that all secured debt will be paid in full and there will be distributions to unsecured creditors – the Debtors appear fully capable of defending the Landlord Claims (or other claims) as appropriate, and no extension of the automatic stay should be necessary.

## **RESERVATION OF RIGHTS**

16.     Link Logistics reserves the right to amend and/or supplement this objection in the event that the Debtors brief issues that are relevant to Landlord Claims or provide any legal or evidentiary support that is relevant to Landlord Claims and the extraordinary relief requested.

## **CONCLUSION**

WHEREFORE, Link Logistics respectfully requests that the Court deny the ADR Motion or condition approval of the ADR Procedures on the express exclusion of any Landlord Claims from such procedures, and grant such other and further relief to Link Logistics as is just and proper.

Dated: January 3, 2024

**GELLERT SCALI BUSENKELL & BROWN, LLC**

*/s/ Michael Van Gorder*
Michael Van Gorder (DE 6214)
1201 North Orange Street, Suite 300
Wilmington, Delaware 19801
Telephone (302) 425-5800
mvangorder@gsbblaw.com

**RAINES FELDMAN LITTRELL LLP**
David S. Forsh, Esq. (*pro hac vice*)
1350 Avenue of the Americas, 22nd Fl
New York, NY 10019
Telephone (917) 790-7109
dforsh@raineslaw.com

*Attorneys for Link Logistics*

10096297.2