## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered)<br><br>**Objection Deadline: January 5, 2024 at 5:00 p.m. (ET)**<br>**Hearing Date: January 12, 2024 at 2:00 p.m. (ET)**<br>**Re: Docket Nos. 968 & 1403** |

## LIMITED OBJECTION OF ORANGE BATAVIA I LLC TO PROPOSED ASSUMPTION AND ASSIGNMENT OF UNEXPIRED REAL PROPERTY LEASE

Orange Batavia I LLC ("Orange Batavia"), by and through its undersigned counsel, submit this limited objection (the "Limited Objection") to the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated With the Non-Rolling Stock Assets* [D.I. 968] (the "Assumption Notice"), and *Notice of Winning Bidders With Respect to Certain of the Debtors' Leased Properties* [D.I. 1403] (the "Notice of Winning Bidders"),[1] as follows:

### I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [D.I. 169]. Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee")

---

[1]    Capitalized terms not otherwise defined shall have the same meaning as set forth in the Assumption Notice and Notice of Winning Bidders.

appointed an official committee of unsecured creditors [D.I. 269].  No trustee or examiner has been appointed in these chapter 11 cases.

2.      Orange Batavia, as landlord, and debtor USF Reddaway, Inc. ("Tenant"), as successor to NATMI Truck Terminals, LLC, as tenant, are parties to that certain Lease Agreement (Single-Tenant Property), dated January 30, 2009 (the "Lease"), for a freight terminal facility located at 2200 North Batavia, Orange, California (the "Premises").

3.      On September 15, 2023, the Court entered its *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 575] (the "Bidding and Sale Procedures Order").

4.      On October 26, 2023, the Debtors filed and served the Notice of Assumption. Debtors' Lease with respect to the Orange Batavia Premises was among the "Potential Non-Rolling Stock Asset Assumption List," Schedule 1 to the Notice of Assumption.

5.      On November 9, 2023, Orange Batavia filed the *Response and Reservation of Rights of Exol Properties, L.L.C. and Orange Batavia I LLC to Debtors' Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Non-Rolling Stock Assets* [D.I. 1104].

6.      Following the Real Estate Auction for Remaining Leased Properties, conducted on December 18 and 19, 2023,[2] Debtors filed and served the Notice of Winning Bidders on December

---

[2]      Orange Batavia was initially a Qualified Bidder in the Auction process, but withdrew

20, 2023.  The Notice of Winning Bidders identifies Saia Motor Freight Line, LLC ("Saia") as the Winning Bidder with respect to a package of real property leases, including the Orange Batavia Lease.

7.       On December 20, 2023, Debtors filed their *Notice of Rescheduled Sale Objection Deadline, Adequate Assurance Objection Deadline, and Sale Hearing* [D.I. 1406], scheduling the Sale Hearing for the Lease Sales on January 12, 2024 at 2:00 p.m. (ET) and the related sale objection deadline on January 5, 2024 at 5:00 p.m. (ET).

8.       On December 29, 2023, Debtors filed their *Notice of Filing of Proposed Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Leased Properties of the Debtors Free and Clear of Liens, Claims, Interests and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement, etc.* [D.I. 1540] (the "Proposed Order").

9.       On January 2, 2024, Debtors filed their *Notice of Filing of Asset Purchase Agreement Dated as of December 30, 2023 Between the Debtors and Saia Motor Freight Line, LLC* [D.I. 1560] (the "Saia APA").

## II.    ARGUMENT

### A.    Debtors Must Cure All Existing Defaults, or Provide Adequate Assurance of a Prompt Cure, as a Condition to the Assumption and Assignment of the Lease

10.      Bankruptcy Code section 365(b)(1)(A) provides that unless a lessee-debtor either (a) cures all existing defaults or (b) provides the lessor with adequate assurance that it will promptly cure those defaults, it cannot assume and assign a lease.  As one court has held, "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he

---

from further bidding following Debtors' substantive modification of the bidding procedures.

receives the full benefit of his bargain in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985); *accord*, *In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 25 (Bankr. D. Kansas 2001); *In re Mushroom Transportation Co., Inc.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987). Indeed, "the cost of assumption is nothing short of complete mutuality and requires performance in full as if bankruptcy had not intervened." *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1367 (9th Cir. 1992). Bankruptcy Code section 365(b)(1)(A) "clearly and unambiguously" requires the cure of *all defaults* before an unexpired lease of nonresidential real property may be assumed. *In re Building Block Child Care Centers, Inc.*, 234 B.R. 762, 765 (9th Cir. BAP 1999); *accord, In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, (Bankr. S.D. Fla. 2005) ("The purpose of § 365(b)(1)(A) is to preserve the *entirety* of an unexpired lease upon assumption and cure any defaults." [emphasis in original]).

11.     Debtors bear the burden of proving the requirements of Bankruptcy Code section 365(b) by a preponderance of the evidence. *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999).

**Monetary Defaults:**

12.     Debtors' Assumption Notice acknowledges the obligation to pay "Cure Amounts," setting forth in the "Real Property Lease Cure Schedule" that amount the Debtors' believe to be due to satisfy the "cure" requirement with respect to the Orange Batavia Lease. As set forth in the Assumption Notice, and repeated in Schedule 1 to the Proposed Order, Debtors assert the cure amount for the Orange Batavia Lease is $73,756.00. The difference between this amount, which approximates the unpaid August 1, 2023 (pre-petition) "Minimum Rent" amount, and the $89,963.74 figure asserted by Orange Batavia (*see* Exhibit A), relates to property repairs

performed by Orange Batavia at Tenant's request, and for which Tenant agreed to pay Orange Batavia. *See* Exhibit B.

13.     The current Cure Amount asserted by Orange Batavia does not include any further sums that may accrue after January 5, 2024.  Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." *See, e.g., In re Rachels Industries, Inc.*, 109 B.R. 797, 811-12 (Bankr. W.D. Tenn. 1990).  Tenant remains required to pay accruing post-petition rent and charges on a timely basis, as required by Bankruptcy Code section 365(d)(3), pending the Closing under the Saia APA and Orange Batavia reserves its rights and remedies against Tenant with respect to any such additional sums.

**Attorneys' Fees:**

14.     Where, as here, there are defaults under leases sought to be assumed and assigned, Bankruptcy Code section 365(b)(1) comes into play.   Tenant's Lease with Orange Batavia (at Section 25) contains a provision for the recovery of attorneys' fees in the event of defaults under the Lease. Bankruptcy courts have held that attorneys' fees incurred in the enforcement of obligations, covenants and conditions of a lease are recoverable as part of a landlord's "pecuniary loss" under Bankruptcy Code section 365(b)(1)(B) due upon assumption and assignment of a lease if the underlying lease provides for them.  *In re Entm't, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998).   "Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties."  *In the Child World, Inc.*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993); *see also Travelers Cas. & Sur. Co. v. Pac, Gas & Elec. Co.*, 127 S. Ct. 1199, 1203-06 (2007) (contract providing for attorneys' fee recovery enforceable in bankruptcy unless Bankruptcy Code specifically provides otherwise); *In re Crown Books Corp.*, 269 B.R. 12, 18

(Bankr. D. Del. 2001) (landlord's attorneys' fees incurred in proving post-petition rent had not been recoverable as component of cure under Section 365(b)(1)). "[T]here is no logical distinction, for purposes of § 365, between claims for attorney's in connection with pre-petition defaults and such claims in connection with post-petition defaults." *In re Entm't, Inc.*, 223 B.R. at 154. Orange Batavia's attorneys' fees, which currently are in excess of $5,000.00 in the aggregate, are ongoing. Orange Batavia reserves the right to supplement this Limited Objection to provide such further attorneys' fee information as may be requested by Debtors.

**B.      Debtors Must Provide Adequate Assurance of Future Performance with Respect to the Proposed Assumption and Assignment of the Lease**

15.      While Orange Batavia does not generally object to the proposed assumption of the Lease and its assignment to Saia, another LTL (less than truckload) freight provider, any assumption and assignment of the Lease must be conditioned on Debtors' and Saia's compliance with the requirements of Bankruptcy Code section 365.

16.      Bankruptcy Code section 365(f)(2)(A) expressly provides that the assumption of an unexpired lease of nonresidential real property or executory contract is a necessary precedent to an assignment. It is well-established that the Debtors bear the ultimate burden of presentation and persuasion that a unexpired lease of nonresidential real property is one subject to assumption and that all of the applicable requirements under Bankruptcy Code section 365 for assumption have been met. *In re Rachels Indus., Inc.*, 109 B.R. at 802; *In re Memphis-Fridays Assocs.*, 88 B.R. 830, 840-41 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

17.      Bankruptcy Code section 365(b)(1)(A) provides as follows:

> If there has been a default in an executory contract or unexpired Lease of the Debtor, the Trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the Trustee –

A.    cures or provides adequate assurance that the Trustee will promptly cure such default;

B.    compensates, or provides adequate assurance that the Trustee will promptly compensate, a party other than the Debtor to such contract or lease for any pecuniary loss to such party from such default; and

C.    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1)(A).

18.    "Section 365(b)(1) is intended to provide protection to the non-debtor lessor to insure that he receives the <u>full benefit of his bargain</u> in the event of assumption." *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985) (emphasis added); *accord, In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 25 (Bankr. D. Kan. 2001).

19.    Thus, adequate assurance of future performance is clearly an element of the assumption process which must be met in addition to the curing of any default.  11 U.S.C. § 365(b)(1)(C).  Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *See In re Sun TV and Appliances, Inc.*, 234 B.R. at 370.

20.    While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case." *In re Natco Indus., Inc.*, 54 B.R. 436, 440-41 (Bankr. S.D.N.Y. 1985).  The emphasis is on protection of the lessor, and the intention "is to afford landlord with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." *Id.* at 441.  Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive

so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.*, 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. *See In re Standard Furniture Co.*, 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980). The factors for the court to consider are whether the debtor is able to provide adequate assurance include the present status of the existing obligations under the lease, the remaining term of the lease, and what a landlord can look to for sufficient adequate assurance of future performance. *In re Hub of Military Circle, Inc.*, 19 B.R. 460, 461 (Bankr. E.D. Va. 1982).

21.    The initial burden of presentation as to adequate assurance falls upon the debtor. *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* Court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's "empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest*, 868 F.2d at 1080.

22.    Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.*, 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986).

23.    As discussed below, Debtors have not satisfied their burden with respect to adequate assurance of future performance, as required by Bankruptcy Code sections 365(b)(1)(C) and (f)(2)(B) in connection with the proposed assignment of the Lease to Saia.

**The Identity of Assignee**:

24.     While the Saia APA identifies the Purchaser as Saia Motor Freight Line, LLC, Section 10.4 of the Saia APA permits Saia to assign "any of its rights and obligations hereunder to any of its Affiliates without the consent of any Person."  Similarly, the Proposed Order (at Section 3.13) permits the Purchaser, "in connection with consummation of the applicable Sale," to "*transfer or direct the transfer of any or all of the applicable Acquired Assets* and the applicable Assumed Contracts" (which include Debtors' interests in the Acquired Leased Real Property) to "its nominees, and/or direct or indirect subsidiaries, in a manner as it, *in its sole and absolute discretion, deems appropriate . . . .*" (Emphasis added).  Simply put, Debtors and Saia, which has been identified as the Purchaser and proposed assignee of the Lease, cannot escape the scrutiny and approval of this Court under Section 365 of the Bankruptcy Code, or evade Lease restrictions on assignment between entry of the Sale Order and Closing, through such overbroad language. Orange Batavia is entitled to know the identity of the assignee of the Lease and be provided with adequate assurance of future performance by its proposed new tenant.  Saia cannot be permitted to create a "newco," a newly-formed acquisition subsidiary, with no operating history and no demonstrated financial backing, to take the assignment of the Lease without meeting the prerequisites for an assignment under Bankruptcy Code section 365(f)(2)(B).[3]  The language of

---

[3]     Any belated disclosure of a different assignee at this point potentially leaves inadequate time for meaningful analysis and response.  The Due Process Clause of the United States Constitution applies to proceedings under the Bankruptcy Code.  *See, e.g.*, *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985).  "The fundamental requisites of due process consist of notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Turney v. Fed. Deposit Ins. Corp.*, 18 F.3d 865, 868 (10th Cir. 1994).

Section 3.13 of the Proposed Order must be stricken or sharply limited to prevent the evasion of the landlord protections of Bankruptcy Code section 365.

**<u>Accrued but Unbilled or Unasserted Monetary and Nonmonetary Obligations:</u>**

25.     There are numerous accruing obligations under the Lease in addition to the payment of monthly Minimum Rent.  For example, Tenant is required to reimburse Orange Batavia for certain "Insurance Costs" and pay, either directly or through Orange Batavia, "Real Estate Taxes." *See* Section 4 of Lease.

26.     Debtors and Saia attempt to limit this liability through several provisions of the Proposed Order and Saia APA, a number of which are internally inconsistent or contrary to the requirements of Bankruptcy Code section 365.  For example, in defining "Assumed Liabilities" in the Saia APA, Saia purports to assume only those "Liabilities and obligations of any Seller [Debtor] under the Assigned Contracts that become due and after the Closing." Saia APA at Section 1.4(a). "Excluded Liabilities" which Saia "shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for" is broadly defined to include "any Liabilities of, or Action against, any Seller of any kind or nature whatsoever, whether absolute, accrued, contingent or otherwise, liquidated or unliquidated, due or to become due, known or unknown, currently existing or hereafter arising, matured or unmatured, direct or indirect, and however arising, whether existing on the Closing Date or arising thereafter as a result of any act, omission, or circumstances taking place prior to the Closing, other than the Assumed Liabilities."  Similarly, Section 3.1 and 3.7 of the Proposed Order seek to transfer the Acquired Assets "free and clear" of Adverse Interests (defined in paragraph W of Proposed Order as including Excluded Liabilities) and bar "parties to executory contracts and unexpired leases" from taking action with respect thereto.  Thus, Saia is attempting to limit the scope of Assumed

Liabilities based on the Closing, thus disclaiming responsibility for accrued, but unbilled or unasserted obligations when they might become due in the future under the terms of the Lease.

27.    The Proposed Order attempts to "dial back" some of this overbroad language through Section 4.18, which provides that, notwithstanding the Purchaser Order and terms of the Saia APA,

> Purchaser shall be responsible for continuing obligations under such Assigned Contract, *cum onere*, including, without limitation, liabilities for any breach of such Assigned Contract occurring after such assumption, assignment and sale and obligations to pay year-end adjustment and reconciliation amounts that become obligations after the entry of this Order (irrespective of whether such obligations accrued before, on, or after assumption, assignment and sale of the Assigned Contract), including real property taxes, tax reconciliations, common area charges and insurance premiums, in each case subject to the terms and conditions of the applicable Assigned Contracts, and subject to any defenses provided by such Assigned Contracts and applicable non-bankruptcy law and unless otherwise agreed.

Proposed Order, § 4.18.  But this language falls short of providing for a complete assumption and assignment of the obligations of the Lease.[4]  A straightforward example is illustrated through Tenant's obligations to pay Real Estate Taxes under Section 4 of the Lease.  California real property taxes are due and payable biannually, based on a July 1-June 30 fiscal year.  The second installment of Orange County, California 2023-2024 real property taxes (for the period from January 1-June 30, 2024) is due on February 1, 2024 and delinquent on April 10, 2024.  Under the Saia APA, assuming a January 29, 2024 Closing, will Saia pay the entirety of the real property tax billing or only be responsible for the five-sixths (5/6) of the billed amount attributable to the period after the Closing?

---

[4]    For example, Section 4.18 of the Proposed Order makes no reference to potential nonmonetary liabilities, such as repair, restoration or indemnification obligations.

28.    It is well-established that debtors must assume executory contracts or unexpired leases *cum onere* and may not unilaterally seek to modify the terms of such assumed contracts and leases.  *See*, *e.g.*, *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-32, 104 S. Ct. 1188, citing *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3d Cir. 1951); *Cinnicola v. Scharffenberger*, 248 F.3d 110, 119 (3rd Cir. 2001) ("If the trustee [or debtor-in-possession] meets the assumption requirements under § 365 it must assume the executory contract *entirely*." (Emphasis added).)  "If the debtor decides to assume a lease [], it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed."  *In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008); *see also In re New York Skyline, Inc.*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party.").

29.    In order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), then Saia must have clear responsibility for such as yet unbilled or unasserted obligations (and, conversely, receive the benefit of any credits) even though future billings or claims may include expenses or obligations that accrue prior to the Closing under the assignment transaction. Similarly, Saia cannot escape liability for accrued, but not yet due, nonmonetary obligations such as future maintenance and repair to the Premises to remedy previously deferred maintenance or the restoration obligations (Section 8 of Lease) that arise upon the expiration or earlier termination of the Lease.

**<u>Future Performance of Indemnification Obligations:</u>**

30.    In addition to the monetary obligations that Debtors or Saia, as the proposed assignee, must satisfy under Section 365 of the Bankruptcy Code, Section 9 of the Lease provides that the tenant "will protect, indemnify, save and keep harmless Landlord against any and all

damages or expense arising out of any accident or other occurrence on or about the Premises causing injury to any person or property (except to the extent caused by Landlord), and against any and all damage or expense arising out of any failure of Tenant in any respect to comply with and perform all the requirements and provisions of this Lease." In the event of a future third-party claim with respect to the Premises, even if relating to a pre-Closing occurrence, Orange Batavia is entitled to the benefit of previously bargained for insurance coverage obtained by Tenant. *See* Section 14 of Lease.

31.     While the Saia APA attempts to limit the scope of Saia's Assumed Liabilities, Debtors simultaneously seek to be relieved of any further liability under the Lease pursuant to Bankruptcy Code section 365(k). (Proposed Order at Section 4.13). As a matter of law, however, a debtor is not entitled to the benefits and protections of Bankruptcy Code section 365(k) where the debtor does not assume and assign the lease *cum onere*—with all benefits and burdens. *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999). In particular, where an agreement between the debtor and assignee attempts to limit the obligations assumed by the assignee only to obligations arising after the closing, there has not been a complete assignment and the debtor is not entitled to the protections of Section 365(k). *Id.* at 81.

32.     The requirement of adequate assurance of future performance is not limited to monetary obligations. *See, e.g., In re Rachels Indus, Inc.*, 109 B.R. at 803. Accordingly, in order to provide adequate assurance of future performance with respect to the indemnification obligations under the Lease with Orange Batavia, either (a) Saia must clearly be required to assume all responsibility for any and all such claims, including any deductible or self-insured retention amount, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on

events or occurrences prior to the Closing.  Such claims for indemnity could include claims for personal injury occurring at the Premises where Orange Batavia is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

33.    Similarly, Saia cannot exclude potential environmental liabilities from the scope of its assumed Lease obligations. *See* Saia APA at Section 1.3(e); Proposed Order at Section 3.11. Under Section 9 of the Lease, Tenant has a duty to "protect, save and keep Landlord harmless and indemnified against any penalty or damage or charge imposed for any violation of any laws or ordinances occasioned by Tenant or those connected with Tenant" and "against any and all damage or expense arising out of any failure of Tenant in any respect to comply with and perform all the requirements and provisions of this Lease."  Additionally, Section 21 of the Lease provides that "Tenant shall, at its sole cost and expense, comply with all Laws concerning the Leased Premises or Tenant's use of the Leased Premises, including, without limitation, the obligation to comply with all environmental laws and regulations."  Section 23 of the Lease provides that "Tenant further agrees to indemnify and hold and save Landlord harmless of and from all claims, costs, liabilities, damages, actions and causes of action pertaining to" maintenance of the underground storage tanks at the Premises. Saia's assumption of the Lease should clearly be subject to these potential obligations, irrespective of site conditions existing as of the Closing.[5]

---

[5]    Even if Saia was acquiring a fee interest in the Premises, "free and clear" of successor environmental claims and liabilities relating to potential cleanup costs (rather than assuming such obligations under a nonresidential real property lease), "the purchaser would have to comply with environmental responsibilities starting with the day it got the property, and if the property required remediation at that time, any such remediation would be the buyer's responsibility." *In re La Paloma Generating Co*., Case No. 16-12700 (CSS), 2017 Bankr. LEXIS 3876 at *22 (Bankr. D. Del. Nov. 9, 2017) (*citing In re General Motors Corp*., 407 B.R. 463, 508 (Bankr. S.D.N.Y. 2010)).  Indeed, where a governmental entity seeks compliance with environmental laws through the cleanup of hazardous conditions, such effort is not a "claim" but rather the exercise of police and regulatory powers. *See, e.g.*, *In re Torwico Elecs., Inc*., 8 F.3d 146, 151 (3d Cir. 1993).

III.    **RESERVATION OF RIGHTS**

Orange Batavia fully reserves its rights to (a) further supplement or amend this Limited Objection and assert any additional objections, including any additional obligations that may arise under Tenant's Lease with Orange Batavia in the ordinary course of business,  and (b) further object to any proposed assumption and assignment of the Lease on additional grounds based upon any new information provided by Debtors or upon any different relief requested by Debtors.

IV.    **CONCLUSION**

The Debtors' assumption and assignment of the Lease to Saia must be clearly subject to all the terms, conditions, liabilities and obligations of the Lease, without regard to any attempted artificial limitations on potential liability based on the Closing Date. The identity of the assignee of the Lease cannot be unilaterally changed by Saia, notwithstanding provisions of the Saia APA and the Proposed Order.

Dated: January 5, 2024
   Wilmington, Delaware

**BALLARD SPAHR LLP**

*/s/ Laurel D. Roglen*
Leslie C. Heilman (DE 4716)
Laurel D. Roglen (DE 5759)
Nicholas J. Brannick (DE 5721)
Margaret Vesper (DE 6995)
BALLARD SPAHR LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Tel:  (302) 252-4465
Fax:  (302) 252-4466
Email: heilmanl@ballardspahr.com
   roglenl@ballardpshar.com
   brannickn@ballardsphar.com
   vesperm@ballardspa

and

Michael S. Greger, Esquire
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, California  92614-7214
Tel:  (949) 553-1313
Fax:  (949) 553-8354
Email:  mgreger@allenmatkins.com

and

Ivan M. Gold, Esquire
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
Telephone:  (415) 837-1515
Facsimile:  (415) 837-1516
E-mail:  igold@allenmatkins.com

*Attorneys for Orange Batavia I LLC*