IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. 1329** |

**JOINDER AND OBJECTION OF PHILLIP B. DETERDING TO DEBTORS' MOTION TO ESTABLISH ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR RESOLUTION OF CERTAIN LITIGATION CLAIMS AND FOR RELATED RELIEF**

Phillip B. Deterding ("Mr. Deterding"), by and through his undersigned counsel, hereby submits this objection (the "Objection") to the Debtors' Motion to Establish Alternative Dispute Resolution Procedures for Resolution of Certain Litigation Claims and for Related Relief Filed by Yellow Corporation. [Docket No. 1329] (the "Motion to Establish ADR") and joins in similarly filed objections, and in support of this Objection, the Mr. Deterding respectfully states as follows:

**INTRODUCTION**

There are two hallmarks of tactics employed by insurers and debtors: delay and deny. Mr. Deterding was significantly injured as a direct and proximate cause of the negligence of the Debtors and their agents/employees. Despite that this Court has no jurisdiction to liquidate the amount of personal injury claims, the Debtors—likely at the behest of their insurer, Old Republic Insurance Company ("ORIC")—have created a process out of whole cloth to delay claimants, such as Mr. Deterding, from litigating their claims in courts of competent jurisdiction, and requiring

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 10990 Roe Avenue, Overland Park, Kansas 66211.

16485447/3

that that run a gauntlet of procedures created solely for the purpose of delaying and denying the rights of personal injury claimants.

To be sure, ORIC has appears to have forced this process when it "has both drawn down on massive amounts of collateral [approximately $321 million letter(s) of credit] specifically attributable to these pending Claims and, at the same time, refused to provide any coverage for such Claims." *See* Docket No. 1273 at ¶2. By doing so, ORIC seems to be in control of the Debtors, cattle-herding claimants through an ADR process that only benefits its interests.

As evidenced by the terms of the proposed procedures (the "Proposed ADR Procedures"), this process is not designed to settle cases (although it may successfully do so as an ancillary benefit), but to delay and deny creditors' claims, all while forcing claimants to pay for a process that they did not request and cannot opt out of, and to set traps to deny their claims on procedural grounds.

The Proposed ADR Procedures are so one-sided and wholly inappropriate that the ADR Motion should be denied, subject to significant revisions.

## BACKGROUND

1. On or about September 25, 2020, Larry J. Cook ("Mr. Cook") was operating a commercial semi-truck with tractor trailer in the parking lot of "Thurman Supply" in Washington. *See Complaint for Damages*, dated August 3, 2023 (the "Complaint").[2] Upon information and belief, Mr. Cook's vehicle was owned by USF Reddaway Inc., one of the Debtors, and Mr. Cook was an employee and/or agent of USF Reddaway Inc.

2. Mr. Cook attempted to park the semi-truck with tractor trailer in the parking lot of

---

[2] *See* Exhibit 1 to *Phillip B. Deterding's Motion for Relief from the Automatic Stay* [Docket No. 1037] (the "Deterding Stay Relief Motion"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Deterding Stay Relief Motion.

Thurman Supply. Shortly thereafter, Mr. Deterding parked his vehicle in the same parking lot and exited his vehicle. When Mr. Cook exited the semi-truck, he failed to engage the parking mechanism(s) and entered the tractor trailer. While inside the tractor trailer, the semi-truck began to roll forward toward Mr. Deterding, his truck, and a building named "Okasan Japanese Restaurant."[3]

3. Mr. Deterding was outside of his truck when Mr. Cook's semi-truck struck Mr. Deterding's truck, causing it to rotate into and onto Mr. Deterding. Mr. Deterding's right leg became lodged in the rear differential of the truck and his left foot became lodged in the rear tire, in an everted fashion. He sustained serious bodily injuries and other damages as a result of the collision. The semi-truck and tractor trailer continued its uncontrolled roll and slammed into the sidewall of the Okasan Japanese Restaurant.

4. Shortly after the incident, Custard Insurance Adjusters on behalf of Reddaway began investigating the circumstances of the incident, and in or around November 2020, counsel to Movant requested business information on Reddaway's insurance provider, to which Sedgwick Claim Management responded on November 12, 2020.

5. Following attempts to settle the matter, on August 3, 2023, Mr. Deterding filed the Complaint against Mr. Cook, his wife Jane Doe Cook, and Reddaway, alleging negligence, negligent supervision and entrustment, and vicarious liability claims against defendants.

6. Prior to August 25, 2023, Mr. Deterding commenced an action filed a motion for relief from the automatic stay in order to litigate his personal injury claim.

7. On August 25, 2023, the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

---

[3] *Id.*

8.     On November 3, 2023, Mr. Deterding filed the Deterding Stay Relief Motion [Docket No. 1037], and on December 5, 2023, the Debtors filed an *Omnibus Objection to Personal Injury Claimant Motions for Relief from the Automatic Stay Under Section 362 of the Bankruptcy Code* [Docket No. 1273].

9.     On December 11, 2023, the Debtors filed the Motion to Establish ADR, by and through which the Debtors sought approval of the Proposed ADR Procedures, which would require, among other things, that personal injury claimants such as Mr. Deterding submit to mediation and delay his ability to liquidate his claim and seek payment solely from insurance.

## **BASIS FOR OBJECTION**

10.     The Proposed ADR Procedures proposed by the Debtors (with ORIC at the helm presumably), are so one-sided and wholly inappropriate that the Motion to Establish ADR should be denied, subject to significant revisions. Among other things:

- The Debtors and/or ORIC seek to require that the claimants participate in the mediation, but the Debtors (and the Committee) can choose whether or not to participate in the solution of the claims. The Debtors should be required to participate in negotiating settlements in the same manner that claimants are required, given that the policy at issue—which was provided for the first time after Mr. Deterding filed his stay relief motion—is fully fronting. This is particularly important as Mr. Deterding refuses to waive his claim against the Debtors' estates.

- The Motion to Establish ADR repeatedly provides that the claimant must participate in the Proposed ADR Procedures in good faith; nowhere in the Motion to Establish ADR is there any requirement that the Debtors and/or ORIC participate in the process in good faith.

- The Debtors and/or ORIC seek to require claimants to waive and release their claims against the Debtors, the chapter 11 estates, and the Indemnitees and their personal assets, and agree to proceed solely against insurance proceeds in order to get the ADR injunction lifted to pursue their claim. Mr. Deterding refuses to waive his claim against the Debtors' estates. There is no legal or equitable basis for requiring any such waiver or release.

- The Debtors and/or ORIC seek to compel claimants to pay half of the cost of mediation that many claimants, like Mr. Deterding, do not want in the first instance. Simply

stated, if the Debtors and ORIC want mediation, they should pay for it. *Cf.* Del. Bank. L.R. 9019-5(c)(i)(1) (in cases where mandatory mediation is required in certain adversaries commenced by debtors, the estate is obligated to pay for the process).

- The selection of the mediator is fraught with potential biases.[4] If there is any chance that mediation of claims will be successful, there must be buy-in by both parties. That cannot happen if one party does not believe that the mediator is neutral. The Motion says that ORIC (and possibly the Debtors) shall identify three experienced mediators to serve, and all shall be impartial and neutral and shall not have any financial or personal interest in or relation to the proceedings. But a mediator not having an interest in the "proceedings" doesn't mean that he or she is actually neutral.[5] Mr. Deterding respectfully submits that the Debtors, ORIC and their respective counsel likely have a long list of mediators who they have retained in other matters, and those mediators likely rely upon those continued relationships. Whether intentionally or subconsciously, such a relationship could lead to a situation where the mediator is not, in fact, neutral. Instead, the Debtors should be required to select five (5) potential mediators from the Delaware Bankruptcy Court's panel of mediators, and claimants should be permitted to select from one of those five (or another mediator if the parties can agree upon another person to serve as mediator).

- The Proposed ADR Procedures are replete with multiple instances of foot-faults by and through which the Debtors and/or ORIC can unilaterally compel settlement if certain deadlines are not met or certain forms are not completed and returned.[6] It is questionable whether there is any need for these deadlines, and the appropriateness of the sanctions to be awarded to the Debtors and/or ORIC in the first instance. It is emblematic of the entire process created by the Debtors and/or ORIC that there are no similar foot-faults if the Debtors and/or ORIC fail to meet deadlines or complete and return forms.

---

[4] The Motion provides as follows:

> ORIC and the Debtors (if they elect to participate) shall identify three experienced mediators for consideration by the Claimant. The Claimant shall select one of the mediators from the List.
>
> All mediators shall be impartial and neutral. No mediator shall have any financial or personal interest in or relation to the proceedings or, except where otherwise agreed by the parties, in any related matters.

Proposed ADR Procedures, at V.D.2.

[5] It is unclear if "proceedings" refers to the specific underlying claim or the Bankruptcy Cases in their entirety.

[6] Two examples of foot-faults sought by the Debtors under the Motion to Establish ADR are as follows: "Failure to sign and return the Second ADR Notice and Immediate Claim Settlement Offer by the Second Claimant Response Deadline shall result in the Claimant being deemed to have accepted the Immediate Claim Settlement Offer and to have agreed and consented to the proposed treatment of the Litigation Claim as set forth in the Immediate Claim Settlement Offer. Any proof of claim filed by Claimant with respect to such Litigation Claim will be deemed satisfied in full without further order of the Bankruptcy Court if Claimant is deemed to consent to the Immediate Claim Settlement Offer pursuant to this paragraph." *See* Proposed ADR Procedures V.A.1. Further, "[a]ny Claimant who does not timely return the completed ADR Notice and the Claim Information and Settlement Demand Form, unless otherwise agreed to in writing by ORIC, the Debtors, and the Committee, (i) shall not be entitled to relief from the ADR Injunction. and (ii) may have its Litigation Claim disallowed in accordance with Section VI below." *See* Proposed ADR Procedures V.A.2.

- Any claimant who has survived the gauntlet created by the Debtors and ORIC but has been unable to settle his or her claim would still be subject to the ADR injunction and the automatic stay.  At a bare minimum, if the process is unsuccessful, the automatic stay with respect to such claims should be lifted, especially where a motion to lift stay has been filed.  As currently proposed, the procedures create an economic disincentive for the Debtors and ORIC to resolve claims because the procedures require claimants to go back the Court, obtain stay relief over the Debtors' continued objection (presumably), and, if granted, only then possibly obtain relief from a court of competent jurisdiction.

11. Simply stated, the Debtors are seeking a process that seeks to unilaterally bind claimants such as Mr. Deterding from pursuing claims that this Court cannot consider (*see* 28 U.S.C. § 157(b)(5)), and which have the effect on delaying or denying those claimants from having their claims adjudicated by a court of competent jurisdiction.

12. Mr. Deterding recognizes that the Debtors and their estates are likely the subject of a significant number or large claims resulting from the Debtors' negligence.  Mr. Deterding appreciates the Debtors' argument about how the Debtors, their estates and ORIC all need a streamlined process to avoid the slippery slope of expense to the estate borne by the litigation of so many claims.   This argument should be rejected.  First, the Court should recognize the irony that the Debtors are seeking to adversely affect the rights of personal injury and wrongful death claimants under the Bankruptcy Code and 28 U.S.C. § 157(b)(5) because the Debtors and their employees and agents were negligent in such an enormous number of instances that the personal injury claims cannot be handled in the same manner as the bankruptcy case of a less negligent debtor.

13. Second, if there is a slippery slope argument, it should weigh against the Debtors. Specifically, while the Debtors may believe that the lopsided procedures sought are appropriate in

these cases, there are other, future debtors who will attempt to rely upon similar (or worse, if possible) procedures to adversely affect the rights of personal injury claimants.[7]

14. While there may be valid reasons for some of the provisions of the Motion to Establish ADR, as currently constituted on the whole, the process requested is so lopsided, both substantively and procedurally, that the Motion to Establish ADR should be denied, absent significant revisions.

## JOINDER

15. Mr. Deterding joins in the arguments raised by other similarly situated claimants that have objected to the Motion to Establish ADR and incorporate by reference those arguments herein.

## RESERVATION OF RIGHTS

16. Mr. Deterding expressly reserves the right to supplement this Objection, including joining any objections not inconsistent with this Objection.

*[Remainder of Page Intentionally Left Blank]*

---

[7] Mr. Deterding acknowledges that the Debtors' bankruptcy cases are large and involve significant assets and liabilities, including personal injury and wrongful death claims, but that hardly makes these cases unique. Large and complicated bankruptcy cases are regularly filed in this Court, including debtors that are the subject of significantly larger personal injury and wrongful death claims, both in terms of numerosity and aggregate amount, than the Debtors' bankruptcy case. Yet even in those cases, the debtors have not proposed procedures as onerous as those sought by the Debtors in these cases. The Debtors have provided no basis for deviating from the well-trod path followed by other debtors in this district and elsewhere.

16485447/3

**WHEREFORE**, Mr. Deterding respectfully requests that the Court deny the Debtors' Motion to Establish ADR until the ADR procedures are modified to adequately address the concerns of Mr. Deterding and other claimants and that Mr. Deterding be awarded such further additional relief as may be just and proper under the circumstances.

Dated: January 8, 2024            **MORRIS JAMES LLP**

*/s/ Tara C. Pakrouh*
Jeffrey R. Waxman (DE Bar No. 4159)
Tara C. Pakrouh (DE Bar No. 6192)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: tpakrouh@morrisjames.com

*Counsel for Phillip B. Deterding*