**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| YELLOW CORPORATION, et al., | ) | |
| | ) | Lead Case No. 23-11069 (CTG) |
| Debtors. | ) | |
| | ) | |

**CENTRAL STATES PENSION FUND'S MOTION**
**TO COMPEL ARBITRATION OF WITHDRAWAL**
**LIABILITY DISPUTES, OR ALTERNATIVELY, FOR RELIEF**
**FROM THE AUTOMATIC STAY TO INITIATE ARBITRATION**

Pursuant to Section 362 of Title 11 of the United States Code and Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure, Central States, Southeast and Southwest Areas Pension Fund ("Central States Pension Fund"), by and through its undersigned counsel, moves this Court for an order compelling Debtors to initiate arbitration with respect to Debtors' objections to Central States Pension Fund's proofs of claim for withdrawal liability, Claims 4312 through 4335 (the "Withdrawal Liability Objections") [*see* Dkt. No. 1322]. Alternatively, Central States Pension Fund asks this Court to grant it relief from the automatic stay to initiate arbitration with respect to the Withdrawal Liability Objections. Central States Pension Fund sets forth the following in support of its motion.

**INTRODUCTION**

1.      Central States Pension Fund filed various claims against Debtors, including claims for pension contributions and joint and several claims for statutory withdrawal liability after Debtors effected a "complete withdrawal," as defined in 29 U.S.C. § 1383. When an employer is assessed withdrawal liability, it may dispute that liability, including by requesting review pursuant to 29 U.S.C. § 1399, and if dissatisfied with the result of the review process, by initiating arbitration pursuant to 29 U.S.C. § 1401.

2.      After Central States Pension Fund filed its claims, Debtors filed their claim objections, including the Withdrawal Liability Objections, in which Debtors asserted that their objections were intended to fulfill any obligation Debtors had to request review pursuant to 29 U.S.C. § 1399(b). (*see* Dkt. No. 1322, opening paragraph, p. 8, n.5.) Among the disputes Debtors raised are disputes under 29 U.S.C. §§ 1381, 1389, 1391 and 1393 (*see, e.g.*, Dkt. No. 1322, ¶¶ 59-69).

3.      If an employer decides to continue disputing the withdrawal liability after the review process, the statute is clear that the dispute must be pursued in arbitration. Specifically, 29 U.S.C. § 1401(a)(1) mandates that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title *shall* be resolved through arbitration." (emphasis added.) Federal appellate court authority interpreting section 1401's arbitration requirement, including authority from the Third Circuit, is clear: if an employer wishes to dispute its withdrawal liability, it must do so in arbitration. *Flying Tiger Line v. Teamsters Pension Tr. Fund of Phila.*, 830 F.2d 1241, 1247 (3d Cir. 1987).

4.      Federal appellate courts, including the Third Circuit, have recognized that the arbitration requirement is a critical component of the statutory scheme. That is, arbitration works to conserve judicial resources, including by establishing a system in which arbitrators with expertise in understanding withdrawal liability are assigned to oversee these complex disputes, and is meant to ensure a less expensive and faster dispute resolution process. *See, e.g.*, *Flying Tiger*, 830 F.2d at 1248-49, 1252. Moreover, Third Circuit authority is clear that regardless of whether the dispute concerns purely legal issues or mixed questions of law and fact, the arbitration requirement is the same, and arbitration is mandatory. *Flying Tiger*, 830 F.2d at 1255.

5.      The requirement that withdrawal liability disputes be arbitrated was upheld by the bankruptcy court in *In re BFW Liquidation, LLC*, 459 B.R. 757 (Bankr. N.D. Ala. 2011). After conducting an extensive analysis of the reasons Congress established the arbitration requirement, as embodied in case law from the various United States Courts of Appeals, the court concluded that objections to withdrawal liability claims filed in bankruptcy are the "perfect" subject for arbitration under MPPAA. *Id.* at 778. Specifically, the court found that it was appropriate to defer to arbitration and allow an arbitrator with expertise in withdrawal liability matters to resolve the dispute, and because abstaining from resolving the issue would conserve judicial resources. *Id.* at 779, 785-794. Ultimately, the court determined that arbitration of the withdrawal liability dispute would not only satisfy Congressional intent but would also serve the purpose of the bankruptcy claims dispute resolution process. *Id.* at 799.

6.      In accordance with Third Circuit authority and the ruling in *BFW Liquidation*, Central States Pension Fund requests that this Court likewise determine that arbitration is the appropriate path to resolve the Withdrawal Liability Objections, and that this Court order Debtors to initiate arbitration with respect to those Objections. Alternatively, Central States Pension Fund asks this Court to grant relief from the automatic stay so that Central States Pension Fund may initiate arbitration.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

8.      Pursuant to Local Rule 9013-1(f), to the extent that it is later determined that this Court may not, in accordance with Article III of the U.S. Constitution, enter final orders or judgments in connection with this contested matter without the parties' consent, Central States Pension Fund so consents solely with respect to the determination of this Motion. Notwithstanding

the foregoing, pursuant to Local Rule 9013-1(h), Central States Pension Fund does not consent to the entry of a final order or judgment by this Court on the Debtors' objections to Central States Pension Fund's withdrawal liability claims against the Debtors, if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the U.S. Constitution.

9.     Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

10.     Central States Pension Fund is a multiemployer pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended. Central States Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of Central States Pension Fund and paying the Fund's administrative expenses. There are presently approximately 950 employers that participate in Central States Pension Fund, representing more than 32,000 active participants. Moreover, there are approximately 350,000 participants and beneficiaries of Central States Pension Fund entitled to pension benefits, and that includes the more than 190,000 participants and beneficiaries currently receiving pension payments.

11.     Pre-petition, Central States Pension Fund provided pension credit to thousands of union employees of Debtors YRC Inc. ("YRC") and USF Holland LLC ("USFH"). Under collective bargaining agreements and participation agreements applicable to Debtors YRC and USFH, Debtors YRC and USFH's obligations to Central States Pension Fund and its union members included regular contributions payable to Central States Pension Fund.

12.     When Debtors YRC and USFH permanently ceased to have an obligation to contribute to Central States Pension Fund, they and the other Debtors effected a complete withdrawal from Central States Pension Fund pursuant to 29 U.S.C. § 1383, and incurred withdrawal liability, jointly and severally, pursuant to 29 U.S.C. §§ 1301(b)(1) and 1381, and the regulations thereunder.

13.     Pursuant to this Court's bar date order, Central States Pension Fund timely filed proofs of claim that included claims for statutory withdrawal liability.

14.     On December 8, 2023, Debtors filed an omnibus objection to the proofs of claim filed by Central States Pension Fund in these cases, including Central States Pension Fund's claims against all Debtors, jointly and severally, for withdrawal liability in the approximate amount of $4.8 billion based on Debtors' complete withdrawal from Central States Pension Fund (Claims Nos. 4312-4335).

## STATUTORY BACKGROUND

15.     Congress enacted ERISA to provide comprehensive regulation for private pension plans. *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 214 (1986). In enacting ERISA, Congress sought to guarantee that workers would receive the pension benefits they were promised. *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 607 (1993). Soon after ERISA was enacted, Congress became concerned about the debilitating effect that employer withdrawals were having on multiemployer plans. *Connolly*, 475 U.S. at 215. Specifically, employers were incentivized to withdraw from financially troubled plans rather than remain and potentially be required to pay a share of the plan's underfunding if the plan later became insolvent. *Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 416-17 (1995). This created the possibility that there would be an employer stampede

for the exits, thus ensuring that the plan would fail. *Id.* If left unmanaged, this would lead to increased taxpayer expenses because the Pension Benefit Guaranty Corporation (the "PBGC"), a government corporation, must ultimately cover the shortfall between the benefits a plan owes to its participants and the benefits an insolvent plan is able to pay. *Trs. of the Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Leaseway Transp. Corp.*, 76 F.3d 824, 827 (7th Cir. 1996).

16.     Congress enacted the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1301-1461, an amendment to ERISA, to address these concerns. *Connolly*, 475 U.S. at 217. Withdrawal liability, created pursuant to MPPAA, acts as this safeguard, ensuring that the costs associated with the plan paying vested pension benefits does not then get shifted to the employers that remain in the plan, or to the PBGC. *Cent. States, Se. & Sw. Areas Pension Fund v. Bomar, Nat'l, Inc.*, 253 F.3d 1011, 1014-15 (7th Cir. 2001).

17.     In enacting MPPAA, Congress determined that imposing withdrawal liability upon employers that exit these plans was the best means of ensuring both that employers remain in multiemployer plans, and that the burdens otherwise created by such employers withdrawing from these plans would not be passed onto the employers that remained in the plan, and ultimately to taxpayers. *Peick v. PBGC*, 724 F.2d 1247, 1267 (7th Cir. 1983). As the Third Circuit has noted, even where withdrawing employers have made all their required contributions to the plan, those contributions may not have been in an amount sufficient to fund the employer's share of the benefits the plan will ultimately be obligated to pay. *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 315-16 (3d Cir. 2011).

18.     An employer effects a complete withdrawal from a multiemployer pension fund when it "(1) permanently ceases to have an obligation to contribute under the plan, or (2)

permanently ceases all covered operations under the plan." *Concrete Pipe*, 508 U.S. at 610-11; 29 U.S.C. § 1383(a). The employer then becomes liable for withdrawal liability, which represents the employer's proportionate share of the plan's unfunded vested benefits ("UVBs"), which is the difference between the present value of a pension plan's assets and the present value of the benefits it will be obligated to pay in the future.[1] *Connolly*, 475 U.S. at 217; 29 U.S.C. §§ 1381, 1391. This liability is a joint and several obligation of the employer that had the obligation to contribute to the plan and all commonly owned trades or businesses. *Steelworkers Pension Trust by Bosh v. Renco Group, Inc.*, 694 Fed. Appx. 69, 71-2 (3d Cir. 2017); 29 U.S.C. § 1301(b)(1); 26 C.F.R. 1.414(c)-2(b)(2).

19.      To collect withdrawal liability, the plan then calculates the employer's withdrawal liability, notifies the employer of the amount of the liability, the schedule of payments, and sends the employer a demand for payment. 29 U.S.C. § 1399(b)(1). A notice and demand need not take any specific form, and a notice and demand filed in a Chapter 11 bankruptcy constitutes one recognized means of satisfying the notice and demand requirements of 29 U.S.C. § 1399(b)(1). *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. El Paso CGP Co.*, 525 F.3d 591, 598 (7th Cir. 2008).

20.      If the employer disputes the withdrawal liability, it must then request review of the withdrawal liability assessment and, if dissatisfied with the response to that request, initiate arbitration. 29 U.S.C. §§ 1399(b)(2), 1401(a)(1). *Flying Tiger*, 830 F.2d at 1244. Under 29 U.S.C. § 1401(a), the employer and the plan are both entitled to separately initiate arbitration, or the employer and the plan may jointly initiate arbitration.

---

[1] Technically, for a plan like Central States Pension Fund that uses the modified presumptive method allowed by 29 U.S.C. § 1391(c)(2), an employer's withdrawal liability is based on its allocable share of the "Net Change Value," which is the UVBs less the sum of all outstanding claims for withdrawal liability that can reasonably be expected to be collected. 29 U.S.C. § 1391(c)(2)(C).

21.    In objecting to Central States Pension Fund's withdrawal liability claims, Debtors acknowledge that they intended their objection to fulfill the requirements of 29 U.S.C. § 1399(b). (*see* Dkt. No. 1322, opening paragraph, p. 8, n.5.) In line with federal appellate authority, including Third Circuit authority, specifically, *Flying Tiger*, 830 F.2d at 1244, the next step in the MPPAA dispute resolution process is arbitration with respect to Debtors' Withdrawal Liability Objections.[2]

## RELIEF REQUESTED

22.    Central States Pension Fund asks this Court to compel Debtors to initiate arbitration with respect to the Withdrawal Liability Objections. Alternatively, Central States Pension Fund asks this Court to grant it relief from the automatic stay to initiate arbitration with respect to the Withdrawal Liability Objections.

## ARGUMENT

### I.    *Under MPPAA, Debtors' challenges to Central States Pension Fund's assessment of withdrawal liability must be arbitrated.*

23.    Congress has spoken clearly in this area of the law. Disputes over withdrawal liability must be arbitrated. Specifically, 29 U.S.C. § 1401(a)(1) provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title *shall* be resolved through arbitration." (emphasis added.) Courts have vigorously enforced this requirement. As explained by the Supreme Court, if the employer requests review to dispute the withdrawal liability, and if the employer and pension fund are unable to resolve the dispute, then the matter "shall be referred to arbitration." *Concrete Pipe*, 508 U.S. at 611.

---

[2] This Court would continue to have jurisdiction to resolve Central States Pension Fund's claims for unpaid pension contributions, as well as amounts owed pursuant to a contribution guarantee agreement. (Claims Nos. 4303, 4305, 4336-4352.)

24.     United States Courts of Appeals, including the Third Circuit, have enforced Congress' arbitration mandate where the employer was subject to MPPAA, and where the dispute falls within the MPPAA sections subject to arbitration, declaring that MPPAA's arbitration procedures "must be followed." *See, e.g.*, *Flying Tiger*, 830 F.2d at 1247; *see also Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*, 653 F.3d 573, 579 (7th Cir. 2011) (explaining that "all disputes" concerning withdrawal liability must be arbitrated); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 372 (4th Cir. 2006) (noting that arbitration of withdrawal liability is mandatory, and that mandatory arbitration is a critical component of the statute).

25.     MPPAA's arbitration scheme reflects Congress' determination that arbitration, and not the courts, is the appropriate forum for resolving disputes over withdrawal liability. *Flying Tiger Line,* 830 F.2d at 1248-49. The Third Circuit in *Flying Tiger* explained that arbitration is such a critical component of MPPAA in that it relieves a burden that would otherwise fall on the court system. This is so even if an arbitration decision is later appealed through the court system, as judges will then have the benefit of the arbitrator's expertise and analysis. *Id.* at 1248. Indeed, MPPAA has created a system where arbitrators with expertise in understanding withdrawal liability are assigned to oversee these complex disputes. *Bd. of Trs. of Trucking Emps. N. Jersey Welfare Fund, Inc.* v. *Centra, Inc.*, 983 F.2d 495, 506 (3d Cir. 1992); *see also Flying Tiger*, 830 F.2d at 1252 (similarly explaining that the MPPAA procedures are designed to allow an arbitrator skilled in MPPAA to exercise his or her expertise). And in *Central States, Southeast & Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc.*, 826 F.3d 320, 328-29 (5th Cir. 1987), the Fifth Circuit upheld the arbitration requirement, explaining that this requirement furthers important legislative

objectives, including allowing an arbitrator to apply his or her expertise, and also conserving judicial resources.

26.     Yet Congress was not only concerned with conserving judicial resources, as Congress also intended for MPPAA's arbitration requirement to provide for a faster resolution of withdrawal liability disputes, and with lower costs, which in turn helps to "secure the financial health of multiemployer pension plans." *Flying Tiger*, 830 F.2d at 1248–49; *accord Trs. of the Chi. Truck Drivers Pension Fund v. Cent. Transp., Inc.*, 935 F.2d 114, 119 (7th Cir.1991).

27.     Certainly, the scope of an arbitrator's responsibilities is broad and includes the resolution of legal disputes. As set forth in the MPPAA regulations enacted by the PBGC at the direction of Congress, specifically 29 C.F.R. § 4221.5(a)(1), arbitrators are instructed to "follow applicable law, as embodied in statutes, regulations, court decisions, interpretations of the agencies charged with the enforcement of ERISA, and other pertinent authorities."

28.     To be clear, in legislating that disputes over withdrawal liability under 29 U.S.C. §§ 1381 through 1389 "shall" be arbitrated, Congress plainly understood that even purely legal issues would be resolved via arbitration. *Flying Tiger*, 830 F.2d at 1255 (noting that 29 U.S.C. § 1381 "does not differentiate between legal and factual questions; it simply dictates that '[a]ny dispute between an employer and the plan sponsor . . . shall be resolved through arbitration.'"). "'[I]t should be beyond cavil that the existence of an issue of statutory interpretation, standing alone, does not justify bypassing arbitration.'" *Id.* (quoting *I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 418 (D.C. Cir. 1987)); *see also Crown Cork & Seal, Co. v. Cent. States, Se. & Sw. Areas Pension Fund*, 881 F.2d 11, 19 (3d Cir. 1989) (citing *ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks*, 846 F.2d 879, 886 (2d Cir.1988)) (similarly noting that MPPAA's arbitration requirement does not depend upon whether the case concerns legal or factual

issues). Accordingly, where an employer asserted that the disputes pertaining to its withdrawal liability assessment raised solely legal issues, and where neither the employer nor the pension fund asserted that there were any factual disputes, the Third Circuit nonetheless held that the dispute must proceed to arbitration, noting that employer's arguments to the contrary were "entirely undercut" by the Third Circuit's ruling in *Flying Tiger*. *Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters & Emp'rs Pension Fund*, 847 F.2d 113, 123-24 (3d Cir. 1988).

29.     Furthermore, the Third Circuit is not unique for having determined that even purely legal disputes concerning an employer's withdrawal liability must be arbitrated. In *Clinton Engines*, 825 F.2d at 421-22, the District of Columbia Circuit rejected a district court's holding that a withdrawal liability dispute did not need to be arbitrated since the disputes concerned only the interpretation of the statute. The court explained that "arbitration reigns supreme under the MPPAA," and if courts were to make exceptions to the arbitration requirement for matters of pure statutory interpretation, they would be ignoring the specific command from Congress that all withdrawal liability disputes must be arbitrated. *Id.* at 422.

30.     The Fourth Circuit has likewise held that regardless of whether the withdrawal liability dispute is legal or factual in nature, it must be resolved in arbitration. *BES Servs.*, 469 F.3d at 375. Again, to carve out an exception to the mandatory arbitration requirement for withdrawal liability disputes that are purely legal in nature would require a court to ignore the plain language of the statute, *i.e.*, 29 U.S.C. § 1401(a)(1). *Id.*

31.     Citing to the District of Columbia Circuit's ruling in *Clinton Engines*, the Ninth Circuit similarly held that disputes limited to the interpretation of the statutory language are nonetheless subject to the mandatory arbitration requirement. *Teamsters Pension Trust Fund-Bd. of Trs. of W. Conference v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir. 1987). In reaching its

decision, the Ninth Circuit relied in part upon legislative history, specifically a statement by the floor manager of the bill in the United States House of Representatives, who explained that the role of the arbitrator would be akin to a judge in a lawsuit, applying the relevant law to the facts of the case. *Id.*, n.3.

32.    Withdrawal liability disputes involving mixed questions of fact and law also benefit from having an arbitrator skilled in labor and pension law. *Crown Cork*, 881 F.2d at 19 (citing *Grand Union Co. v. Food Emp'rs Labor Relations Ass'n*, 808 F.2d 66, 70 n.5 (D.C. Cir.1987); *see also I.A.M. Nat'l Pension Fund v. Stockton TRI Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984) (explaining that an arbitrator skilled in pension matters is likely to better resolve disputes within the arbitrator's area of expertise, and that deference to the arbitration process therefore advances judicial economy). In *Vaughn v. Sexton*, 975 F.2d 498, 501 (8th Cir. 1992), the Eighth Circuit succinctly summarized reasons federal courts of appeals have cited for insisting that withdrawal liability disputes be resolved in arbitration:

> The courts holding that all defenses are barred if not initially arbitrated cite several reasons for so ruling—the congressional preference for a nonjudicial, possibly speedier resolution for disputes, as reflected by the establishment of an arbitration scheme; the fact that 29 U.S.C. § 1401 declares that "[a]ny dispute" concerning a determination related to a withdrawal liability assessment is to be arbitrated; the arbitrator's likely expertise in pension matters; the consideration that factual questions are especially amenable to resolution by an arbitrator; and the promotion of judicial economy and efficient use of judicial resources by the potential for resolution of most issues outside the court system.

On the other hand, if it were instead left to courts to determine on a case-by-case basis whether a withdrawal liability dispute should be resolved in court or in arbitration, that would result in excessive discretion of courts to determine arbitrability, which is contrary to Congress' directive that such disputes "shall" be resolved in arbitration. *Crown Cork*, 881 F.2d at 19.

33.     The mandatory arbitration requirement plainly applies to Debtors' withdrawal liability assessment since there is no dispute that Debtors were an employer subject to MPPAA for withdrawal liability purposes. Rather, Debtors' challenges relate solely to the amount of withdrawal liability Central States Pension Fund contends is owed. Accordingly, based upon MPPAA's arbitration requirement, and the fact that the arbitration requirement has been upheld in the context of a bankruptcy claim dispute (as discussed below), Debtors' Withdrawal Liability Objections should proceed in arbitration and this Court should abstain from resolving the dispute.

**II.      *This Court should either order Debtors to initiate arbitration to contest Central States Pension Fund's withdrawal liability proofs of claim or lift the automatic stay to allow Central States Pension Fund to initiate the arbitration.***

34.     The Supreme Court has long endorsed the concept of resolving specialized and complex disputes that arise in a bankruptcy in arbitration, particularly where Congress has expressed a preference for resolving such disputes in that forum. For example, even though the Supreme Court recognized that the bankruptcy court typically resolves claim disputes in a case, the Supreme Court nonetheless stated that "where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court normally should stay its hand pending an administrative decision." *Nathanson v. NLRB*, 344 U.S. 25, 30 (1952). In *Gary Aircraft Corp. v. United States (In the matter of Gary Aircraft Corp.)*, 698 F.2d 775, 782, 784-85 (5th Cir. 1983), the Fifth Circuit cited to *Nathanson* with approval in reversing an order of a bankruptcy court exercising jurisdiction over a governmental contract dispute. In that opinion, the Fifth Circuit explained that *Nathanson* and two other Supreme Court decisions that preceded *Nathanson* "at least can stand for the general proposition that a bankruptcy court should defer a complicated, technical dispute to a specialized forum." *Id.* at 784.

35.     Decades later, in assessing arbitrability under the Federal Arbitration Act, the Supreme Court noted the strong federal interest in arbitration and explained that the Act provides that any doubts concerning whether arbitration is appropriate should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-5 (1983); *see also Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (similarly noting the strong federal interest in arbitration).

36.     Notably, under MPPAA, specifically 29 U.S.C. § 1401(b)(3), withdrawal liability arbitration proceedings are generally conducted in the same manner as arbitration proceedings carried out under the Federal Arbitration Act. Moreover, Congress' declaration in 29 U.S.C. § 1401 that withdrawal liability disputes "shall" be arbitrated must be considered at least as strong a pronouncement of the federal interest in arbitration as that set forth in the Federal Arbitration Act, and as recognized by the Supreme Court.

37.     More recently, a bankruptcy court conducted an exhaustive analysis of the withdrawal liability arbitration requirements under MPPAA, including an analysis of the goals Congress sought to achieve when it legislated those requirements, and how those requirements and goals fit within the aims of the claims resolution process in bankruptcies. *BFW Liquidation*, 459 B.R. 757. Following that exhaustive analysis, including an analysis of case law from the Supreme Court and the various United States Courts of Appeals, the court granted a pension fund relief from the automatic stay so that a withdrawal liability dispute initiated pursuant to a claim objection could be resolved in arbitration. *Id.* at 799-800. Thus, the court decided to abstain from considering the objection to the withdrawal liability claim in the "interests of justice" pursuant to 28 U.S.C. § 1334(c)(1). *Id.* at 777.

38.     The *BFW Liquidation* court arrived at this conclusion by first analyzing the underpinnings of Congress' determination that arbitration is the appropriate forum for resolving withdrawal liability disputes, as reflected in 29 U.S.C. § 1401(a)(1) (*i.e.*, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration"). In this regard, the bankruptcy court noted the Third Circuit's decisions in *Centra*, 983 F.2d at 506, and *Flying Tiger*, 830 F.2d at 1252,[3] which stand for the proposition that withdrawal liability issues can be complex and are best resolved by arbitrators with expertise in this particular area of the law. *BFW Liquidation*, 459 B.R. at 764. The bankruptcy court also cited to the Third Circuit's decisions in *Flying Tiger*, 830 F.2d at 1248, and *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 293 (3rd Cir.1982) (as well as decisions from the Second, Fourth, Fifth, Sixth and Ninth Circuit Courts of Appeals), which explained how the MPPAA arbitration scheme fulfills the goal of conserving judicial resources, that is, by resolving issues without a court ever having to get involved, or at least by narrowing the issues that might ultimately need to be considered by a court. *BFW Liquidation*, 459 B.R. at 765-66.

39.     With these considerations in mind, the *BFW Liquidation* court held that the "interests of justice plainly indicate that abstention in favor of arbitration is warranted in this case pursuant to 28 U.S.C. § 1334(c)(1)." *Id.* at 777. Consideration of several factors served as the basis for the court's decision. First, the court noted that abstention (and allowing the MPPAA arbitration

---

[3]  The bankruptcy court noted that the Third Circuit seemingly came to a different conclusion in *Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity*, 787 F.2d 897, 903 (3rd Cir.1986), but determined that *Dorn's Transportation* was no longer good law based upon the subsequent Third Circuit decisions on the topic (*i.e.*, *Flying Tiger*, 830 F.2d 1241; *Carl Colteryahn Dairy*, 847 F.2d 113; and *Crown Cork & Seal*, 881 F.2d 11). *BFW Liquidation*, 459 B.R. at 767 n.5.

to proceed) would advance the goals of both 29 U.S.C. § 1401 and 11 U.S.C. § 502, noting too that "the claims allowance process is the perfect 'core' candidate for arbitration." *Id.* at 778.

40.     Second, the court ruled that there was no evidence that deferring to arbitration would disrupt the bankruptcy case or impede its progression, and absent such evidence, "there is no reason for [the core matter] not to be arbitrated." *Id.* Specifically, the court ultimately found no evidence that (1) the arbitration would take "inordinately longer" than the claims resolution process in the bankruptcy case, (2) that referring the claim dispute to arbitration would cost the estate significantly more money than having the matter proceed in the bankruptcy case, or (3) that the dispute concerning the withdrawal liability lacked issues that an arbitrator skilled in withdrawal liability, based upon the arbitrator's expertise and experience, could resolve more efficiently and correctly. *BFW Liquidation*, 459 B.R. at 778.

41.     The *BFW Liquidation* court noted that ultimately it was most persuaded by the fact that courts, including the Supreme Court and the Fifth, Federal, Tenth and the Temporary Emergency Courts of Appeals, have held that whenever possible, bankruptcy courts should defer matters to more specialized tribunals that are more qualified than courts of general jurisdiction to decide matters that are within the expertise of those tribunals. *Id.* at 779. Given Congress' pronouncement that withdrawal liability disputes are to be resolved by arbitrators with expertise in pension and labor matters, the bankruptcy court held that the objection to the pension fund's withdrawal liability claim should proceed in arbitration. *Id.* at 783-84.

42.     Based upon Congress' determination that withdrawal liability disputes must be resolved in arbitration (*i.e.*, 29 U.S.C. § 1401(a)(1)), the Supreme Court's and the various courts of appeals' pronouncements in support of arbitration (including the Third Circuit), and the reasoning of the *BFW Liquidation* court regarding how resolution of withdrawal liability disputes

in arbitration furthers the goals of the bankruptcy claim dispute resolution process, this Court should grant Central States Pension Fund's motion, and either order Debtors to initiate arbitration to dispute the withdrawal liability claims or grant Central States Pension Fund relief from the automatic stay to initiate arbitration. The disputes Debtors have asserted raise significant issues of statutory and regulatory interpretation under MPPAA and its underlying regulations and should therefore be resolved by an arbitrator with expertise in MPPAA.

43.    Most significantly, Debtors purport to challenge 29 U.S.C. §§ 1381, 1391, 1393, 1432(m)(1), as well as a PBGC regulation enacted pursuant to the express authority granted to the PBGC by Congress under 29 U.S.C. § 1432(m)(1), *i.e.*, 29 C.F.R. § 4262.16(g)(2), that addresses the phasing in of certain Special Financial Assistance ("SFA") that Central States Pension Fund received pursuant to that statute and regulation. (*see* Dkt. No. 1322, ¶¶ 59-69.) The invalidation of this regulation could have a catastrophic, nationwide impact upon multiemployer pension funds, not to mention the PBGC. Indeed, given that more than 100 multiemployer pension plans have been    approved    for    SFA    (Pension    Benefit    Guaranty    Corporation, https://www.pbgc.gov/sites/default/files/documents/sfa-application-status-current.xlsx    (last visited Jan. 5, 2024)), and further given that most of those plans have no claims in this case, the effects of a ruling invalidating the PBGC's regulation would reach nationwide and far beyond the confines of this bankruptcy case.

44.    And to be clear, Debtors' Withdrawal Liability Objections concerning the SFA implicate and arise under 29 U.S.C. §§ 1381, 1391 and 1393, which sections are all within the range of MPPAA sections for which Congress provided that arbitration of disputes is mandatory under 29 U.S.C. § 1401. Indeed, Debtors make clear in their Withdrawal Liability Objections (including their challenge to 29 C.F.R. § 4262.16(g)(2), which dictates how funds are to phase in

SFA for purposes of calculating their UVBs) that their principal objection concerns Central States Pension Fund's determination of its UVBs under 29 U.S.C. § 1391 (*see* Dkt. No. 1322, ¶¶ 43-47, 59-61), which dispute falls within the MPPAA sections reserved for arbitration (*i.e.*, sections 1381 through 1399). Indeed, in *T.I.M.E.-DC, Inc.*, 826 F.3d at 327 n.5, the court referred to legislative history concerning the arbitration requirement, specifically the explanation that "[u]nder the bill, an employer is permitted to challenge a plan's determination of withdrawal liability or of unfunded vested benefits. Such disputes are subject to compulsory arbitration." (*citing* Joint Explanation of S. 1076: Multiemployer Pension Plan Amendments Act of 1980, 126 Cong. Rec. 20,189, 20,198 (1980)). Debtors' Withdrawal Liability Objections also reveal that the parties have a dispute concerning the interpretation of 29 U.S.C. §§ 1399(c)(1)(A), (c)(1)(B), (c)(5), 1432(m)(1) and 29 C.F.R. § 4262.16(g)(2), including: how withdrawal liability is amortized when an employer is not in default, what are the consequences when an employer is in default, and how much withdrawal liability an employer is obligated to pay when it is in default. (*see* Dkt. No. 1322, ¶¶ 62-68.) Specifically, Debtors contend they are entitled to a limitation on payments set forth in 29 U.S.C. § 1399(c)(1)(B), but Debtors are in default under 29 U.S.C. § 1399(c)(5)(B) and therefore are not entitled to the limitation on payments. *See*, *e.g.*, *GCIU-Emp'r Ret. Fund v. Lillie Suburban Newspapers, Inc.*, Case No. CV 17-7372 DSF, 2018 WL 6137603, at *4 (C.D. Cal. Feb. 20, 2018). Even if Debtors were not in default and were entitled to pay the present value of a 20-year payment schedule, the present value of that schedule would be calculated as set forth in 29 C.F.R. § 4262.16(g)(1), as authorized by 29 U.S.C. § 1432(m)(1). Most importantly, Debtors' disputes concern 29 U.S.C. § 1399 and are therefore reserved for arbitration under 29 U.S.C. § 1401.

45.     In support of its objections to Central States Pension Fund's claims, Debtors have also served voluminous discovery upon Central States Pension Fund (Exhibit A), including

discovery that relates solely to Debtors' Withdrawal Liability Objections (specifically, interrogatories 7 through 18, and requests for production 7 through 21), and have served a subpoena upon the PBGC (Exhibit B) which relates almost exclusively to Debtors' Withdrawal Liability Objections. These requests and the subpoena are extraordinarily broad and seek extensive information and documents that are irrelevant given that Debtors' Withdrawal Liability Objections concern purely legal issues. It would be a waste of judicial resources for this Court to sift through this dispute where an arbitrator with expertise interpreting ERISA, MPPAA and PBGC regulations would likely be able to resolve the issues, including the anticipated discovery disputes, more efficiently and without having to burden this Court.

46.    Indeed, the court in *BFW Liquidation* concluded that 29 U.S.C. § 1401(a)(1) and 28 U.S.C. § 1334(c)(1) are aligned in their goal to conserve judicial resources, and that this goal would be best accomplished by referring the withdrawal liability claim dispute in that case to arbitration. 459 B.R. at 785-94. Referring Debtors' Withdrawal Liability Objections to arbitration would similarly fulfill the goal of conserving judicial resources since Debtors have raised exclusively non-bankruptcy-related objections to Central States Pension Fund's withdrawal liability proofs of claims (indeed, all such objections relate to MPPAA and amendments thereto, and its underlying regulations).

47.    Moreover, Debtors served discovery upon Central States Pension Fund, as well as a subpoena to the PBGC, which seeks voluminous amounts of information and documents that relate to purely legal issues under MPPAA, its amendments and underlying regulations, and which do not require consideration of any bankruptcy issues. As such, there will almost certainly be briefing concerning the appropriate limits of discovery given the nature of Debtors' disputes, and

a withdrawal liability arbitrator screened and selected by the American Arbitration Association[4] specifically to resolve withdrawal liability disputes is more likely to efficiently resolve such disputes in light of the arbitrator's experience with MPPAA and its underlying regulations. *See, e.g., Cent. Transp.*, 935 F.2d at 119 (explaining that a withdrawal liability "[a]rbitration is supposed to speed final decision and reduce the costs of getting there.") Of course, it would be unreasonable to expect an arbitrator skilled in MPPAA to understand and efficiently resolve complex bankruptcy issues. Yet, Debtors ask this Court to resolve claims that relate exclusively to complex issues that arise under MPPAA and its underlying regulations. Thus, in the interests of justice, this Court should abstain in favor of arbitration, just as the *BFW Liquidation* court did in declining to resolve a withdrawal liability dispute.

48.    In determining that the interests of justice "plainly" warranted that the bankruptcy court abstain in favor of having the withdrawal liability dispute proceed in arbitration, the *BFW Liquidation* court recognized but rejected certain adverse authority. In particular, the court rejected the relevance of *In re Interco Inc.,* 137 B.R. 993 (Bankr. E.D. Mo.1992), where the bankruptcy court refused to defer a withdrawal liability claim dispute to arbitration based upon expert testimony that resolution of the claim could take years and could frustrate the debtors' ability to reorganize. 459 B.R. at 795-96. However, the court in *BFW Liquidation* found this analysis irrelevant given that the debtor in *BFW Liquidation* was out of business and not reorganizing. *Id.* Similarly, there is no business reorganization that can be frustrated in this case as Debtors have already permanently ceased operations and are liquidating.

---

[4] Appendix E, Section 6(b)(1) of Central States Pension Fund's plan document (Exhibit C) provides that arbitration of a withdrawal liability dispute "is initiated by written notice to the Chicago Regional Office of the American Arbitration Association . . . ."

49.    *In re GWI, Inc.*, 269 B.R. 114, 119 (Bankr. D. Del. 2001), involved a bankruptcy court in this district similarly deferring the resolution of a claim objection to arbitration. In so holding, the court relied in part on the Supreme Court's pronouncement that since Congress has expressed a preference for arbitration with respect to the Federal Arbitration Act, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 117 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, 941 (1983)). In exercising discretion to defer to arbitration, the bankruptcy court explained that most matters that are referred to arbitration are claim disputes, and that deferring to arbitration would likely neither negatively affect the bankruptcy process nor slow the progress of the bankruptcy case. *Id.* at 119.

50.    Similarly, resolution of Central States Pension Fund's claim should not negatively affect or impede the administration of the bankruptcy estate. As Debtors have represented, the proceeds from the various sale transactions will satisfy Debtors' secured debt obligations, so resolution of the objections to Central States Pension Fund's withdrawal liability claims will have no effect in that regard. (*See, e.g.*, Dkt. No. 1305, Decl. of Brian Whitman, at ¶ 9, Dec. 8, 2023.)

51.    Moreover, in addition to Central States Pension Fund's withdrawal liability claim of approximately $4.8 billion, the claims register shows numerous other joint and several claims for collection of withdrawal liability against Debtors in the cumulative amount of more than $2.5 billion. While some of those claims for withdrawal liability implicate some of the same issues as Central States Pension Fund's claims (including because certain other multiemployer pension plans received SFA), it is unlikely that Debtors' objections to these claims would be identical, and Debtors have not yet even objected to any of the other withdrawal liability claims. The other most significant claims in terms of dollar value are that of the IBT and various WARN Act claimants, and these claims are all disputed.

52.     Furthermore, Debtors have been and continue to be involved in protracted litigation with the IBT in the District of Kansas. Indeed, in the Kansas litigation, Yellow Corporation, YRC and USFH are seeking to collect more than $1.6 billion. First Am. Verified Compl. at ¶¶ 37, 206, 216, *Yellow Corp. v. Int'l Bhd. of Teamsters*, Case No. 6:23-cv-01131-JAR-ADM (D. Kan. Jul. 19, 2023), Dkt. No. 21. On December 7, 2023, a scheduling order was entered in that case. Scheduling Order, *Yellow Corp. v. Int'l Bhd. of Teamsters,* Case No. 6:23-cv-01131-JAR-ADM (D. Kan. Dec. 7, 2023), Dkt. No. 82. Pursuant to that scheduling order, dispositive motions must be filed by July 26, 2024, *id.* at section 3(b), p. 7, and that deadline does not take into account response and reply briefs. Additionally, the court noted that it will not even schedule the date of the jury trial until it has ruled on dispositive motions, and the parties estimated that the jury trial will take 12 days. *Id.* at section 4(b), p. 9.

53.     Thus, even if it were true that resolution of Debtors' Withdrawal Liability Objections would proceed more slowly in arbitration than it would before this Court, which would not be the case, it is extraordinarily unlikely that resolution of Central States Pension Fund's claims in arbitration will delay resolving Debtors' estate. Again, there are numerous large claims that will have a material effect on Debtors' estate. To date, Debtors have not filed objections to any of the more than $2.5 billion in withdrawal liability claims other than Central States Pension Fund's withdrawal liability claims. And there is no indication that Debtors' litigation with the IBT, where Debtors seek to collect more than $1.6 billion, will be resolved any time before the fourth quarter of 2024, at the earliest.

54.     In any event, 29 C.F.R. § 4221.8(b) requires an arbitrator presiding over a withdrawal liability dispute to issue a decision within 30 days after the close of proceedings. Thus, there is no reason to believe that proceeding in arbitration will take longer than proceeding with

the withdrawal liability disputes in this Court. And if the arbitration proceeding was to be delayed, that delay would almost certainly be caused by Debtors' insistence upon attempting to obtain irrelevant discovery regarding an issue that is a pure question of law (namely the validity of the PBGC regulation). (*See* Exhibits A and B.)

55.     The *BFW Liquidation* court noted other adverse authority that was cited in opposition to the pension fund's motion in that case, but in rejecting the applicability of that authority, the court correctly noted that such authority preceded the 1987 Supreme Court decision in *McMahon*, where the Supreme Court expressed its strong support for arbitration. 459 B.R. at 796-97. Notably, one such adverse authority, *In re T.D.M.A., Inc.*, 66 B.R. 992 (Bankr. E.D. Pa. 1986), also preceded the Third Circuit's numerous withdrawal liability decisions upholding MPPAA's requirement that withdrawal liability disputes be resolved in arbitration, regardless of whether the disputes are purely legal in nature or mixed questions of fact and law. *See, e.g., Flying Tiger*, 830 F.2d at 1241; *Carl Colteryahn Dairy*, 847 F.2d 113; *Crown Cork*, 881 F.2d 11; *Centra*, 983 F.2d 495.

56.     More critically, the court in *T.D.M.A.* appears to have misread 28 U.S.C. § 1334(c)(1) in refusing to defer to arbitration. Specifically, the court stated as follows:

> [I]t is not clear that 28 U.S.C. § 1334(c)(1) has any application here, because that provision appears expressly related to issues of comity and respect for *state* law. Here, of course, the Plan urges that we abstain on the basis of the existence of policy in *federal law*.

66 B.R. at 995 (emphasis in original). Yet, abstaining based upon comity or respect for state law is just one of the grounds for a bankruptcy court to abstain from hearing a proceeding under section 1334(c)(1). As the plain language of 28 U.S.C. § 1334(c)(1) and the *BFW Liquidation* ruling make clear, a court can also abstain from hearing a matter "in the interest of justice," and the court in

*T.D.M.A.* simply ignored this language. As such, this Court should not be persuaded by the court's decision in *T.D.M.A.*

57.    In addition to the *BFW Liquidation* court, a bankruptcy court in the Third Circuit addressed MPPAA's arbitration requirement and noted the Third Circuit's decision upholding that requirement in *Flying Tiger*, 830 F.2d 1241. *In re Mushroom Transp. Co.*, 90 B.R. 718, 721 (E.D. Pa. 1988). The court in *Mushroom Transportation* noted, however, that a dispute over whether an entity ever became an employer for withdrawal liability purposes is a narrow exception to the arbitration requirement. 90 B.R. at 721-22. The *Mushroom Transportation* court's decision is in line with that of other courts that have addressed the issue. *See e.g., Banner Indus., Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 875 F.2d 1285, 1291 (7th Cir. 1989) (noting that the question of whether an entity remains an employer for withdrawal liability purposes is a question reserved for arbitration, whereas the question of whether an entity ever became an employer for withdrawal liability purposes may be decided by a court); *see also Flying Tiger*, 830 F.2d at 1247 (likewise holding that where the entity was once part of the MPPAA employer at some point in time, and where the issues fall within the sections reserved for arbitration, *i.e.*, 29 U.S.C. §§ 1381 through 1399, the dispute is subject to the statute's mandatory arbitration requirement); *see also Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 122-23 (4th Cir. 1991) (same). These rulings flow from the logical conclusion that the provisions of MPPAA do not become applicable until the threshold issue of whether the entity is even an employer for MPPAA purposes is decided. But here there is no such threshold dispute. And absent such a narrow exception, "[t]he extent of [withdrawal] liability . . . must be determined under the arbitration provisions of MPPAA." *Mushroom Transp.*, 90 B.R. at 728.

**CONCLUSION**

For the reasons set forth in this motion, Central States Pension Fund requests that this Court grant its motion and order Debtors to initiate arbitration as provided for under Appendix E to Central States Pension Fund's plan document (Exhibit C). Alternatively, and also for the reasons set forth in this motion, Central States Pension Fund requests that this Court grant Central States Pension Fund relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) so that Central States Pension Fund may initiate arbitration with respect to Debtors' objections to Central States Pension Fund's withdrawal liability claims (Claims 4312 through 4335). Central States submits that cause exists for this Court to abstain from resolving Debtors' objections to Central States Pension Fund's withdrawal liability claims pursuant to 28 U.S.C. § 1334(c)(1).

Date:   January 8, 2024
        Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com

Brad R. Berliner, Esq.
Andrew J. Herink, Esq.
Daniel Sullivan, Esq.
Central States Funds
8647 W. Higgins Road
Chicago, IL 60631
(847) 939-2478 - Office
bberliner@centralstatesfunds.org
aherink@centralstatesfunds.org
dsulliva@centralstatesfunds.org

*Attorneys for Central States, Southeast and Southwest Areas Pension Fund and Central States, Southeast and Southwest Areas Health and Welfare Fund*