# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> YELLOW CORPORATION, *et al.*,[1] <br><br> Debtors. | ) Chapter 11 <br> ) <br> ) Case No. 23-11069 (CTG) <br> ) <br> ) (Jointly Administered) <br> ) <br> ) **Re: Docket No. 968, 1112** <br> ) |

### AMENDED OBJECTION AND RESERVATION OF RIGHTS OF M4 TERMINALS, LLC TO THE DEBTORS' NOTICE OF POTENTIAL ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS OR LEASES ASSOCIATED WITH THE NON-ROLLING STOCK ASSETS

M4 Terminals, LLC ("**Landlord**") hereby objects (the "**Amended Objection**") to the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated With the Non-Rolling Stock Assets* [Docket No. 968] (the "**Cure Notice**"). In support of this Amended Objection, Landlord respectfully states as follows:

## BACKGROUND

### I.   Sale Process and Cure Notice

1. On August 6, 2023, ("**Petition Date**"), the above-captioned debtors and debtors-in-possession ("**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware ("**Court**").

2. The next day, the Debtors filed a motion [Docket No. 22] (the "**Sale Motion**") seeking this Court's approval for the sale of substantially all of their assets (the "**Sale**") to one or

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/case/yellowcorporation/info. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

92898787.2

more to-be-determined buyers. In the Sale Motion, the Debtors also sought approval of procedures governing the sale process (the "**Bidding Procedures**").

3.  The Bidding Procedures include procedures for the assumption and assignment of certain of the Debtors' contracts and leases as part of the Sale.

4.  The Court approved the Bidding Procedures on September 15, 2023 [Docket No. 575].

5.  On September 13, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Selection of a Real Estate Stalking Horse Bidder, (II) Approving Bid Protections in Connection Therewith, and (III) Granting Related Relief* [Docket No. 518] (the "**Stalking Horse Motion**").[2] The Court granted the Stalking Horse Motion on September 21, 2023 [Docket No. 624].

6.  Pursuant to the Bidding Procedures, the Debtors filed the Cure Notice with an attached scheduled of designated contracts and leases that "*may* be assumed (and, if applicable, assigned)…" Cure Notice at p. 1 (emphasis added).[3]

7.  The Debtors identified two real property leases between Landlord and the Debtors as subject to potential assumption and assignment: (i) 1700 Montague Expressway, San Jose, CA 95054 (the "**Montague Property**"), identified as No. 89 on Schedule 1 to the Cure Notice (the "**Montague Lease**"); and (ii) 751 Nuttman Ave., Santa Clara, California (the "**Nuttman Property**" and together with the Montague Property, the "**Properties**"), identified as No. 90 on

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Stalking Horse Motion.

[3] As a result of this ambiguous language, counterparties to contracts and leases designated for potential assumption and assignment in the Cure Notice cannot be assured whether or not their contracts and leases will be assumed or rejected.

92898787.2

Schedule 1 to the Cure Notice (the "**Nuttman Lease**" and together with the Montague Lease, the "**Leases**").

8. The Debtors' proposed cure amount for the Montague Lease is $48,038.00 (the "**Montague Cure**").

9. The Debtors' proposed cure amount for the Nuttman Lease is $33,454.00 (the "**Nuttman Cure**").

II. **The Original Cure Objection**

10. On November 9, 2023, Landlord filed its *Objection and Reservation of Rights of M4 Terminals, LLC to the Debtors' Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated With the Non-Rolling Stock Assets* [Docket No. 1112] (the "**Original Cure Objection**"), which is fully incorporated by reference herein. Since filing the Original Cure Objection, Debtors have paid **no** post-petition rent to Landlord in connection with the Montague Lease. Additionally, in December 2023, Landlord paid certain taxes on the Nuttman Property and Montague Property after it appeared unlikely that the Debtors were not going to timely satisfy such obligations.[4] This Amended Objection increases Landlord's asserted cure amount to account for (i) Landlord's payment of the property taxes; and (ii) the subsequent (and ongoing) breaches of the Montague Lease, including Landlord's need to secure the Properties as a result of the Debtors' unilateral decision to vacate the Properties.

**OBJECTION AND RESERVATION OF RIGHTS**

11. *First*, as a threshold issue, the Montague Lease cannot be assumed because it terminated on September 30, 2023 (the "**Termination Date**") pursuant to the Conditional Lease

---

[4] On December 5, 2023, Debtors' counsel stated that they were going to make the property tax payments by check; however, as of January 5, 2024, such payments are not reflected on the County's on-line public records.

92898787.2

Termination Agreement entered into by Landlord and Debtor YRC, Inc. on July 1, 2023 (the "**CLTA**"). As of the Termination Date, whatever remaining interest the Debtors had in the Montague Lease, if any, was no longer property of the estate. *See* 11 U.S.C. § 541(b)(2). "Once a contract has expired on its own terms, there is nothing left for the trustee to reject or assume." *Gloria Mfg. Corp. v. Int'l. Ladies' Garment Workers' Union*, 734 F.2d 1020, 1022 (4th Cir. 1984) (citing 2 Collier on Bankruptcy ¶ 365.02 (15th Ed.1983)). Accordingly, Landlord reserves its right to object to any purported assumption and assignment of the Montague Lease.

12. *Second*, the Debtors cannot assume the Montague Lease without also assuming the CLTA because the Montague Lease and CLTA constitute an integrated, non-severable document. "Assumption or rejection of an executory contract or unexpired lease must be done in its entirety; the executory contract or unexpired lease cannot be assumed or rejected in part." *In re Contract Research Sols., Inc.*, 2013 WL 1910286, at *2 (Bankr. D. Del. May 1, 2013) (citing *In re Fleming Co., Inc.*, 499 F.3d 300, 308 (3d Cir. 2007)). *See also In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008) ("If the debtor decides to assume a lease, however, it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed."). "The rationale underlying this fundamental principle is that a debtor may not retain the benefits of a lease without accepting its burdens." *Contract Research Sols.* at *2.

13. It is not clear from the Debtors' vague description of the Montague Lease on the Cure Notice as "REAL PROPERTY – LEASE" whether the Debtors also intend to assume the CLTA together with the Montague Lease. Accordingly, Landlord reserves its right to object to any assumption of the Montague Lease that does not also assume the CLTA.

14. *Third*, the Debtors' proposed Montague Cure and Nuttman Cure are both inadequate, and certain non-monetary defaults existing under the CLTA are incurable. Under


Section 365(b)(1) of the Bankruptcy Code, a trustee (and under 11 U.S.C. § 1107, a debtor) may not assume an unexpired lease or executory contract on which there has been a default unless it: (a) cures the default or provides adequate assurance that the default will be promptly cured; (b) compensates or provides adequate assurance that any pecuniary loss of the counterparty resulting from the default will be promptly compensated; and (c) provides adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1). Assumption requires cure of all defaults, both monetary and non-monetary. *See, e.g.*, *In re Empire Equities Capital Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) ("In 2005 Congress revised the language of § 365(b)(2)(D) by including the word "penalty" as a modifier to the word "provision," making it clear that most non-monetary defaults are not exempted from the cure requirements."); *In re Escarent Entities, L.P.*, 423 Fed. App'x 462, 465 (5th Cir. 2011) (observing that an incurable non-monetary default precluded assumption of a contract). The cure requirement ensures "that contracting parties receive the full benefit of their bargain if they are forced to continue performance." *In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir. 1996).

15. Landlord's books and records reflect that (i) not less than **$505,547.91** is owed to Landlord on account of outstanding obligations under the Montague Lease and CLTA and (ii) not less than **$68,810.39** is owed to Landlord on account of outstanding obligations under the Nuttman Lease, as summarized below:

| MONTAGUE LEASE | | |
|---|---|---|
| **Description** | **Expense** | **Additional Notes** |
| General Contractor Unpaid Balance | $ 49,696.54 | Unpaid balance stemming from vandalism repair. Landlord paid contractor directly to clear lien. |
| Fire Alarm System Repairs | $ 13,428.91 | Vendor repaired fire alarm panel after vandalism. Landlord paid vendor directly. |
| Wheelchair Lift Repair | $ 2,307.00 | Tenant obligation to maintain, not currently operational. Landlord quoted $2,307.00 to repaid and $3,307.00 to replace. Landlord will amend claim down if repair is possible. |
| Asphalt | $ 7,205.00 | Due to be reimbursed to Landlord for asphalt sealcoat project, pursuant to lease terms. |

| Secondary Containment Test | $ 2,400.00 | Tenant failed to perform state compliance testing for underground diesel storage tank. Landlord contracted to perform testing. |
|---|---|---|
| Concrete Striping Removal | $ 25,500.00 | Landlord provided Tenant with approval to strike the lot with the condition that striping would be removed upon lease termination. Tenant advised that sub-tenant would be performing this word as part of move out repair, but repair was not completed. |
| Fixturized Ramps | $ 57,340.00 | Landlord provided Tenant with approval to install exterior mounted ramps at the property provided they were to remain as fixtures at the termination of Lease. Tenant removed the ramps. |
| Three months Abated Rent | $ 144,115.00 | Landlord provided Tenant with three months of abated rent (July - September 2023) as part of the Conditional Lease Termination Agreement |
| November 2023-January 2024 Rent | $ 144,114.69 | Post-petition rent. |
| Fire Panel Replacement | $ 9,461.14 | Landlord assumed fire monitoring as a result of Tenant failing to continue fire monitoring after vacating the property. Landlord discovered panel has mechanical failures and is not usable in current condition, requiring replacement. |
| Property Taxes | $ 42,750.77 | |
| Security Services – Setup | $ 2,500.00 | Initial setup for two surveillance trailers and related ongoing security service which are required as a vandalism deterrent due to the property being vacant and unmonitored. |
| Security Services – Monthly (January 2024) | $ 13,815.00 | Monthly security expense for vacated property. |
| Underground Storage Tank Monitoring (October 2023 – December 2023) | $ 375.00 | $125/mo for underground storage tank monitoring. Will continue on a monthly basis. |
| **TOTAL** | **$ 505,547.91** | |
| **NUTTMAN LEASE** | | |
| **Description** | **Expense** | **Additional Notes** |
| August Rent | $ 33,454.13 | |
| Late fee stemming from non-payment of August Rent | $ 1,672.70 | |
| Property Taxes | $ 22,683.56 | |
| Security Services – Setup | $ 2,500.00 | Initial setup for two surveillance trailers and related ongoing security service which are required as a vandalism deterrent due to the property being vacant and unmonitored. |
| Security Services – Monthly (January 2024) | $ 8,500.00 | Monthly security expense for vacated property. |
| **TOTAL** | **$ 68,810.39** | |

16. Moreover, the Debtors defaulted under the CLTA (and have continued in default through the date of this filing) by, among other things, failing to surrender the premises to Landlord on the Termination Date. The nature of this non-monetary default renders cure logically impossible because the act of curing the default (i.e., surrendering the premises), by its nature, reaffirms the

6

92898787.2

extinguishment of the Montague Lease. *See Escarent Entities*, 423 Fed.Appx. at 465 ("Closing the sale by the specified date constituted a material term of the contract, the breach of which could not be cured given the nature of financing arrangements and the operation of interrelated provisions of the parties' contract.").

17.  *Fourth*, section 22 of the Leases contain broad environmental indemnity provisions that survived the expiration of the Montague Lease (and will survive the expiration of the Nuttman Lease) and was expressly preserved under the CLTA:

> Tenant shall indemnify, protect, defend and hold Landlord and Landlord's mortgagees from time to time harmless from all claims, demands, liabilities, damages, fines, encumbrances, liens, losses, costs and expenses, including reasonable attorney's fees and disbursements, and costs and expenses of investigations and remedial action, arising from or related to the existence of Hazardous Substances in or on the Leased Premises, the Property, or any adjacent or nearby properties or buildings as a result of the acts or omissions of Tenant, its employees, agents, contractors, customers, visitors, invitees, or licensees, subtenants or those for whom in law Tenant is responsible that occurred during the Term, and Tenant shall be responsible for any remediation of environmental contamination required by applicable orders, directives, laws, statutes, ordinances, rules or regulations of local, state, provincial, federal or other governmental or quasi-governmental authorities with respect thereto. Tenant shall indemnify, defend and hold Landlord and Landlord's mortgagees from time to time harmless from and against any and all claims, demands, losses, expenses, damages, liabilities, fines, penalties, charges, administrative and judicial proceedings and orders, judgments, remedial action requirements, enforcement actions of any kind, attorneys' fees and court costs, and all costs and expenses incurred in connection therewith, which obligations shall survive the expiration or earlier termination of this Lease.

18.  Under certain legal principles, claims under these provisions might arguably "relate back" to as early as the date that the Leases became effective. *See In re City of Detroit, Mich.*, 548 B.R. 748, 751 (Bankr. E.D. Mich. 2016) (discussing the "fair contemplation" test and its use in determining which claims arise prepetition). While there is no cure amount currently attributed to

environmental indemnity obligations, the "free and clear" language generally included in a sale order could be interpreted to bar subsequent (and currently unknown) environmental indemnity claims that do not become known until after the Leases are assumed and assigned to a buyer. Accordingly, any sale order must make clear that the assumption of any contract or lease, including the Leases, requires the assumption of the whole contract, including any indemnity obligations owed to Landlord. *See In re Vision Metals, Inc.*, 325 B.R. 138 (Bankr. D. Del. 2005) ("When a debtor assumes an executory contract it assumes both the benefits and burdens of that contract…") (citing *In re Tayor*, 913 F.2d 102, 106-07 (3d Cir. 1990)).

19.     *Fifth*, Landlord reserves all rights to object to the assumption and assignment of the Leases to any winning bidder (including the Stalking Horse Bidder) because the Debtors have not provided any information relating to such party's ability to adequately perform under the Leases. Accordingly, the Landlord is unable to determine at this time whether it objects to assumption and assignment to the Stalking Horse Bidder, or any other winning bidder of the Landlord's Leases.

20.     Landlord reserves its right to supplement and further amend this Amended Objection or to make such other and further objections as may be appropriate or necessary with respect to any potential assumption, assignment, or sale of the Leases. Nothing in this Amended Objection shall operate as an election of remedies or waive Landlord's right to request payment of administrative expenses.

**WHEREFORE**, to the extent the Debtors seek to assume and assign the Leases, Landlord respectfully requests that the Court order that (i) any assumption and assignment of the Leases be conditioned upon the provision to Landlord of sufficient information to demonstrate and provide adequate assurance of future performance under the Leases; (ii) the Debtors and/or the applicable

92898787.2

assignee be required to cure all monetary and non-monetary defaults or provide adequate assurance that such defaults will be promptly cured, and (iii) the Debtors or the applicable assignee be required to expressly assume and satisfy all environmental indemnity obligations relating to the Leases.

Dated: January 9, 2024

Respectfully submitted,

*/s/ Katherine M. Devanney*
Katherine M. Devanney (No. 6356)
POLSINELLI PC
222 Delaware Ave., Suite 1101
Wilmington, DE 19801
Phone: 302-252-0933
E-mail: kdevanney@polsinelli.com

*Counsel for M4 Terminals, LLC*

9

92898787.2