**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JON CREMEANS IN SUPPORT OF ENTRY OF ORDER
(I) APPROVING CERTAIN ASSET PURCHASE AGREEMENTS; (II) AUTHORIZING
AND APPROVING SALES OF CERTAIN REAL PROPERTY ASSETS OF THE
DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, IN EACH CASE PURSUANT TO THE
APPLICABLE ASSET PURCHASE AGREEMENT; (III) APPROVING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH,
IN EACH CASE AS APPLICABLE PURSUANT TO THE APPLICABLE
ASSET PURCHASE AGREEMENT; AND (IV) GRANTING RELATED RELIEF**

I, Jon Cremeans, hereby declare under penalty of perjury as follows:

1. I am an investment banking professional and Director at Ducera Partners LLC ("Ducera"), which maintains its principal office at 11 Times Square, 36th Floor, New York, New York 10036. Ducera is the investment banker to the above captioned debtors and debtors in possession (collectively, the "Debtors").

2. I hereby submit this declaration (this "Declaration") in support of the proposed Sale Order (defined below).[2] If called as a witness, I could and would testify competently to the facts

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined in this Declaration shall have the meanings ascribed to such terms in the proposed Sale Order, the Bidding Procedures Order, or the Notice of Winning Bidders (each as defined below), as applicable.

set forth in this Declaration. I am not being specifically compensated for this testimony other than through payments received by Ducera as a professional retained by the Debtors, subject to approval by this Court. I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.

3. During these chapter 11 cases, I have helped to lead Ducera's strategic, banking, and sale efforts on behalf of Yellow Corporation and its Debtor affiliates. I have reported directly to, and have worked closely with, Ms. Cody Leung Kaldenberg with respect to carrying out each aspect of Ducera's mandate in these chapter 11 cases. Specifically, Ducera's and my efforts have included, among others, procuring debtor-in-possession financing for the Debtors and marketing, auctioning, and selling the Debtors' Real Property Assets, including the twenty-three (23) Leased Properties which are the subject of the proposed Sale Order and set forth in the Notice of Winning Bidders (each as defined below).

**Professional and Educational Background**

4. I have been employed by Ducera for approximately six (6) years. In addition to my employment at Ducera, I have worked as an investment professional in the Special Situations group at EQT Partners.

5. Over my nearly eight (8) years of investment banking experience, I have advised companies (including chapter 11 debtors), creditor groups, and other strategic stakeholders in a variety of distressed situations, including, among others, in the matters of Diebold Nixdorf (debtor), GBG USA (debtor), Superior Energy Services (debtor), Toys 'R Us (parent independent board), iHeartMedia (secured creditors), and Hercules Offshore (equity committee). Several of these mandates, including GBG USA, Toys 'R Us, and Hercules Offshore, have involved sales of

2

assets, including real estate assets, pursuant to controlled liquidations and/or section 363 of the Bankruptcy Code.

6. I received a B.S. in Business Administration from The Ohio State University, Fisher College of Business.

**Background**

7. On August 7, 2023, the Debtors filed that certain *Motion of the Debtors for Entry of an Order (I)(A) Approving Bidding Procedures for the Sale or Sales of The Debtors Assets; (B) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 22] (the "Bidding Procedures and Sale Motion").

8. On September 13, 2023, in support of the Bidding Procedures and Sale Motion, Ms. Kaldenberg submitted that certain *Declaration of Cody Leung Kaldenberg In Support of The Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 515] (the "Kaldenberg Bidding Procedures Declaration").

9. On September 15, 2023, the Court entered that certain *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignments of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order").

10. During the week of November 27, 2023, the Debtors, in accordance with the Bidding Procedures Order, conducted and completed bidding for one hundred and twenty (128) Owned Properties and two (2) Leased Properties (collectively, the "Initial Properties"), culminating in the sales of such properties to twenty-one (21) Winning Bidders for an aggregate purchase price of $1,882,637,655 as set forth in that certain *Notice of Winning Bidders And, If Applicable, Back-Up Bidders With Respect to Certain of the Debtors' Real Property Assets* filed on December 4, 2023 [Docket No. 1268].

11. On December 6, 2023 and December 11, 2023, respectively, the Debtors filed that certain proposed *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Real Property Assets of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, in Each Case as Applicable Pursuant to the Applicable Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 1285] and a

4

further revised proposed sale order with respect to the Initial Properties [Docket No. 1338] (the "Initial Sale Order").

12. On December 8, 2023 and December 11, 2023, respectively, in support of the Initial Sale Order, Ms. Kaldenberg submitted that certain *Declaration of Cody Leung Kaldenberg in Support of Entry of Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Real Property Assets of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, in Each Case as Applicable Pursuant to the Applicable Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 1303] (the "Kaldenberg Initial Sale Order Declaration") and that certain *Supplemental Declaration in Support of Cody Leung Kaldenberg in Support of Entry of Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Real Property Assets of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, in Each Case as Applicable Pursuant to the Applicable Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 1330] (collectively, the "Kaldenberg Initial Sale Order Supplemental Declaration," and collectively with the Kaldenberg Initial Sale Order Declaration and the Kaldenberg Bidding Procedures Declaration, the "Kaldenberg Declarations").

13. On December 12, 2023, the Court entered the Initial Sale Order [Docket No. 1354], authorizing the Debtors' sale of the Initial Properties, *i.e.*, approximately two-thirds (2/3) of the

5

Debtors' Real Property Assets, across twenty-one (21) Winning Bidders for an aggregate purchase price of approximately $1.9 billion.

14. On December 18 and 19, 2023, the Debtors conducted bidding for an additional eighteen (18) Leased Properties in accordance with the Bidding Procedures Order (the "Leased Properties Auction"). Our goal was to maximize the value of all of the Debtors' assets, including the Debtors' interests in the Leased Properties, in the best interest of all of the Debtors' stakeholders. Accordingly, ten (10) such Leased Properties were the subject of winning bids on December 18, 2023 (by the auction process described in the Kaldenberg Initial Sale Order Declaration) and three (3) such Leased Properties were the subject of winning bids on December 19, 2023 (by Dutch Auction (defined below) format). Five (5) such Leased Properties did not receive bids above the Debtors' Reserve Price (defined below) and, accordingly, remain to be sold.

15. In addition to the thirteen (13) Leased Properties sold by the auction process described in the Kaldenberg Initial Sale Order Declaration (ten (10) properties) and the Dutch Auction (three (3) properties) on December 18-19, 2023, the Debtors sold ten (10) additional Leased Properties (subject of the proposed Sale Order) without conducting "live" bidding for those Leased Properties.[3] Altogether, these efforts culminated in the sales of of twenty-three (23) Leased Properties to six (6) Winning Bidders for an aggregate purchase price of $82,892,697 as set forth in that certain *Notice of Winning Bidders With Respect to Certain of the Debtors' Leased Properties* filed on December 20, 2023 [Docket No. 1403] (the "Notice of Winning Bidders").[4]

---

[3] Ten (10) Leased Properties proposed to be sold to Saia Motor Freight Line, LLC ("Saia") pursuant to the proposed Sale Order were not subject to "live" bidding because because no other Qualified Bidder for such Leased Properties except for Saia indicated bidding interest in such properties.

[4] As provided in the Notice of Winning Bidders, one hundred and eighteen (118) Leased Properties and forty-six (46) Owned Properties remain to be sold by the Debtors pursuant to the Real Estate Auction or continued marketing efforts.

The Debtors now seek approval of these sales through the Court's entry of the proposed Sale Order (defined below).

16.  On December 29, 2023, the Debtors filed that certain proposed *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Leased Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, in Each Case as Applicable Pursuant to the Applicable Asset Purchase Agreement; and (IV) Granting Related Relief* [Docket No. 1540] with respect to the Won Leased Properties (defined below) (the "Sale Order"). The Debtors anticipate filing a further revised Sale Order in advance of the January 12 hearing.

17.  Pursuant to the proposed Sale Order, the Debtors, in accordance with the Bidding Procedures Order, have requested that the Court approve the sales of those certain twenty-three (23) Leased Properties sold pursuant to the Leased Properties Auction and set forth in Notice of Winning Bidders (collectively, the "Won Leased Properties") and authorize the Debtors to enter into and consummate the transactions contemplated by those certain six (6) Asset Purchase Agreements (as may be amended, modified, or supplemented from time to time, including all supplements, exhibits, and attachments thereto) filed at Docket Nos. 1560 (Saia Motor Freight Line, LLC), 1561 (ArcBest Property Management, LLC), 1562 (FedEx Freight, Inc.), 1586 (Knight-Swift Transportation Holdings, Inc.), 1599 (Estes Express Lines), and 1625 (Greenwood Motor Lines, Inc.) (collectively, the "Asset Purchase Agreements").

18.  With respect to the proposed Sale Order, one reservation of rights and one limited objection have been filed. On December 18, 2023, Terreno Dell LLC (the "Terreno Landlord"),

7

landlord to that certain lease agreement dated February 13, 2009 (the "Dell Lease") covering certain premises located at 700 Dell Road, Carlstadt, NJ 07072 (the "Dell Premises"), filed that certain *Reservation of Rights Regarding Conduct of Auction* [Docket No. 1397] (the "Terreno Reservation of Rights").  On January 5, 2024, Orange Batavia I LLC (the "Orange Batavia Landlord"), landlord to that certain lease agreement dated January 30, 2009 (the "Orange Batavia Lease") covering certain premises located at 2200 North Batavia Street, Orange, California 92865 (the "Orange Batavia Premises"), filed that certain *Limited Objection of Orange Batavia I LLC to Proposed Assumption and Assignment of Unexpired Real Property Lease* [Docket No. 1623] (the "Orange Batavia Limited Objection").

19.     A hearing before the Court to consider entry of the proposed Sale Order is scheduled for January 12, 2024 at 2:00 p.m. (E.T.) (the "Sale Hearing").

**The Auction Procedures for the Won Leased Properties, Including the "Dutch Auction" Procedure Utilized for Three (3) Such Leased Properties, Complied with the Bidding Procedures Order and Maximized Value**

20.     As mentioned above, the Debtors, as part of the Leased Properties Auction held on December 18-19, 2023, sold ten (10) Leased Properties pursuant to the auction process described in the Kaldenberg Initial Sale Order Declaration (*i.e.*, the same format used by the Debtors for the Initial Properties), three (3) Leased Properties pursuant to a "Dutch" auction format (the "Dutch Auction"), and an additional ten (10) Leased Properties without "live" bidding where only one Qualified Bidder expressed bidding interest in those properties.  My colleague, Ms. Kaldenberg, provided the Court and interested parties with extensive detail regarding the Debtors' Auction Procedures in the Kaldenberg Initial Sale Order Declaration and the Kaldenberg Initial Sale Order Supplemental Declaration, including, without limitation, with respect to (i) property-by-property bidding, (ii) anonymized submissions, (iii) types of rounds, (iv) Ducera's communications with

Qualified Bidders prior to and during bidding, (v) the record maintained during bidding, and (v) consultation with the Consultation Parties with respect to auction procedure and progress.

21. I submit this Declaration to provide additional detail regarding (i) the Debtors' Dutch Auction held for eight (8) Leased Properties on December 19, 2023, of which three (3) such Leased Properties sold pursuant to the Dutch Auction and (ii) certain issues raised in the Terreno Reservation of Rights (which includes an "objection" to the Dutch Auction procedures) and in the Orange Batavia Limited Objection (which raises cure and adequate assurance concerns regarding the Orange Batavia Lease).

22. The Debtors, in consultation with and with the support of the Consultation Parties, conducted a Dutch Auction for eight (8) Leased Properties (collectively, the "Dutch Auction Leased Properties") on December 19, 2023. Eight (8) Qualified Bidders participated in the Dutch Auction, invited to do so in accordance with the requirements set forth in the Bidding Procedures Order. Rather than the ascending bidding format of a "traditional" auction, the Dutch Auction utilized a descending format, whereby the Debtors commenced the Dutch Auction in each case with a high initial "offer price" and incrementally reduced the applicable offer price until one or multiple Qualified Bidders placed a bid at such price. In each round of the Dutch Auction, Ducera provided each applicable Qualified Bidder with an "offer price" for each applicable Leased Property. These Qualified Bidders were invited to "accept" the offer price. If only one Qualified Bidder accepted the offer price, that Qualified Bidder would be declared the Winning Bidder for that Leased Property. If more than one Qualified Bidder accepted the offer price, then each such Qualified Bidder would be invited to submit to the Debtors a "best and final" bid for that Leased Property—and the highest "best and final" bid submitted by those applicable remaining Qualified Bidders, in turn, would be declared the Winning Bidder for the applicable Leased Property. In the

9

event no remaining Qualified Bidders accepted the most recent offer price, Ducera circulated a revised, lower offer price for each property.

23. The Dutch Auction continued under this cadence until either one or multiple Qualified Bidders accepted an offer price or the applicable Reserve Price (defined below) for each property was met. These Dutch Auction procedures were devised in consultation with the Consultation Parties and communicated by email from Ducera to all applicable Qualified Bidders in advance of bidding, as shown at **Exhibit A**. The Debtors used this procedure for these particular assets because, based on the nature of the assets and the Qualified Bidders that had expressed interest in them, as well as the amount of the initial Qualified Bids, we believed a Dutch Auction would maximize value for these assets.

24. Ducera determined the opening "offer prices" for the Dutch Auction Leased Properties based upon Ducera's view of the "high end" of fair market values for each applicable Dutch Auction Leased Property. In compliance with the Bidding Procedures Order and in advance of the Dutch Auction, Ducera consulted with, and received the approval of, the Consultation Parties regarding these opening values and the Dutch Auction procedure generally. Further, Ducera, in consultation with the Consultation Parties, determined certain Reserve Prices (*i.e.*, floors) for the Dutch Auction Leased Properties, below which the Debtors would retain such properties for further marketing efforts. Where five (5) of the Dutch Auction Leased Properties (including the Dell Lease, which is the subject of the Terreno Reservation of Rights) did not actually sell following the Dutch Auction, it is because no Qualified Bidder in the Dutch Auction submitted a bid matching or exceeding the applicable Reserve Price. Accordingly, those properties remain to be sold pursuant to the Real Estate Auction or further marketing efforts.

25. The Debtors and Ducera, in consultation with the Consultation Parties, elected to utilize the Dutch Auction procedure for the Dutch Auction Leased Properties because those properties each (a) held competitive bidding interest from multiple, well-capitalized bidders yet (b) received bids that the Debtors and Ducera, in consultation with the Consultation Parties, believed to be significantly below the range of fair market value for those Leased Properties. Accordingly, the Debtors, in their business judgment and to maximize value, chose to utilize the Dutch Auction (rather than "traditional" bidding) for these Leased Properties to create a process that would efficiently drive value for those properties while retaining the Debtors' optionality and flexibility to continue marketing efforts for such properties in the event sufficient value was not obtained through the Dutch Auction and it would be in the best interests of the Debtors and their stakeholders for the Debtors to retain the assts for further marketing efforts. As mentioned above, the Debtors will continue marketing efforts for five (5) such Leased Properties (*i.e.*, which did not sell pursuant to the Dutch Auction) in their continued effort to maximize value for all remaining Real Property Assets.

26. With respect to the three (3) Leased Properties sold pursuant to the Dutch Auction, I believe that the Debtors maximized estate value for those properties. Pursuant to bidding in the Dutch Auction, the sales of those properties generated for the estates an aggregate purchase price of over $35 million, an amount nearly thirteen times (13x) higher than the aggregate of the otherwise highest bids received by Qualified Bidders for those properties prior to the Dutch Auction in accordance with the Bidding Procedures Order. Given the significant delta between these bids and the purchase prices actually generated for these properties by the Dutch Auction, I believe that achieving such a result pursuant to a traditional bidding format would have been very unlikely and could have even been impeded by Qualified Bidders "stalling out" over the course of

DE:4887-3592-5148.1 96859.001

what could have been a significantly prolonged bidding process. The Dutch Auction was designed to efficiently maximize value, and did (over the course of one day) efficiently maximize value, for those three Dutch Auction Leased Properties.

27. In my opinion and based upon my professional experience, the Dutch Auction procedures were fair to all applicable Qualified Bidders, were developed and implemented in close consultation with the Consultation Parties, and were designed to maximize—and did maximize—the property-by-property values of the three (3) Leased Properties sold by Dutch Auction on December 19, 2023.

### The Orange Batavia Landlord Has Been Provided with Adequate Assurance of Future Performance

28. The Orange Batavia Landlord asserts in the Orange Batavia Limited Objection that "the Debtors have not satisfied their burden with respect to adequate assurance of future performance" with respect to the Orange Batavia Lease proposed to be assigned to Saia. See Orange Batavia Limited Objection, ¶ 23. That statement, in my opinion, is incorrect. On December 21, 2023, the Debtors provided counsel to the Orange Batavia Landlord with an adequate assurance package with respect to Saia, containing Saia's Form 10-Q for the quarter ending September 30, 2023 as well as certain bank statements. In addition, the Debtors have provided the Orange Batavia Landlord with Saia's contact information so that the two parties may connect directly. The Orange Batavia Landlord states that it "does not generally object to the proposed assumption of the Lease and its assignment to Saia." Id. at ¶ 15. Further, it was not until the filing of the Orange Batavia Limited Objection that the Orange Batavia Landlord made the Debtors aware of these concerns regarding adequate assurance of future performance. In my opinion, the Debtors have fulfilled their obligation to provide Saia's adequate assurance information to the Orange Batavia Landlord because (i) the information provided provides

12

adequate assurance of future performance under the Orange Batavia Lease by the potential new tenant and (ii) the Debtors have provided contact information to each party to permit the two parties to discuss these issues further. Additionally, as of the submission of this Declaration, I understand that counsel to the Debtors, counsel to the Orange Batavia Landlord, and counsel to Saia remain engaged in discussions regarding revised Sale Order language to attempt to resolve certain issues raised in the Orange Batavia Limited Objection relating to cure amounts and related issues.[5]

## Conclusion

29. Accordingly, based upon the foregoing, and my professional experience and judgment, I respectfully submit that utilizing the Dutch Auction format was a proper exercise of the Debtors' business judgment and designed to maximize value in consultation with the Consultation Parties, the Dutch Auction did maximize value for the three Leased Properties sold pursuant thereto. With respect to the twenty other (*i.e.*, non-Dutch Auction) Leased Properties the subject of the proposed Sale Order, I believe that the Debtors, in consultation with the Consultation Parties, have maximized value for those properties. Thus, I respectfully submit that the Court should approve the proposed Sale Order.

---

[5] The Orange Batavia Landlord, as part of its Orange Batavia Limited Objection, asserts a cure amount of $89,963.74 relating to the Orange Batavia Lease. See Orange Batavia Objection, Ex. A. Saia has agreed to pay $90,000.00 at Closing in respect of these amounts. See Asset Purchase Agreement Ex. B [Docket No. 1560-1].

13

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: January 11, 2024                             /s/ Jon Cremeans

                                                    Jon Cremeans
                                                    Director
                                                    Ducera Partners, LLC

                                                    *Investment Banker to the Debtors*