**EXHIBIT A**

**Revised Proposed Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING CERTAIN ASSET PURCHASE AGREEMENTS;
(II) AUTHORIZING AND APPROVING SALES OF CERTAIN LEASED PROPERTIES
OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, IN EACH CASE PURSUANT TO THE APPLICABLE ASSET
PURCHASE AGREEMENT; (III) APPROVING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION THEREWITH, IN EACH CASE AS APPLICABLE
PURSUANT TO THE APPLICABLE ASSET PURCHASE AGREEMENT;
AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"), dated August 7, 2023, of the above-captioned debtors

and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases

(collectively, the "Chapter 11 Cases"), pursuant to sections 105(a), 363, and 365 of Title 11 of the

United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 6004, and

6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1,

6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order:

(i)(a) approving bidding procedures for the sales of the Debtors' Assets, including the Debtors'

Real Property Assets; (b) scheduling auctions, including the Auction for the Real Property Assets,

and approving the form and manner of notice thereof; (c) approving assumption and assignment

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal
place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400,
Overland Park, Kansas 66211.

procedures; (d) scheduling sale hearings, including the Sale Hearing (defined below), and approving the form and manner of notice thereof; (ii)(a) approving the sale of the Debtors' Leased Properties free and clear of liens, claims, interests and encumbrances pursuant to one or more Sale Orders, including this Sale Order (this "Order") and (b) approving the assumption and assignment of executory contracts and unexpired leases, including pursuant to the Asset Purchase Agreements (defined below); and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having entered on September 15, 2023 that certain *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignments of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order")[2]; and upon the *Declaration of Cody Leung Kaldenberg in Support of the Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale or Sales of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 515]; and upon the *Declaration of Cody Leung*

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order, the Asset Purchase Agreement, or the Motion, as applicable.

*Kaldenberg in Support of Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Real Property Assets of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, in Each Case as Applicable Pursuant to the Applicable Asset Purchase Agreement; (IV) and Granting Related Relief* [Docket No. 1303] filed substantially contemporaneously with the Debtors' filing of the proposed form of this Order; and upon the *Supplemental Declaration of Cody Leung Kaldenberg in Support of Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Real Property Assets of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, in Each Case as Applicable Pursuant to the Applicable Asset Purchase Agreement; (IV) and Granting Related Relief* [Docket No. 1330], including all exhibits thereto; and upon the Debtors having conducted and completed bidding for certain of their Leased Properties in the Auction, which was conducted on December 18, 2023 and December 19, 2023; and the Debtors, in consultation with their advisors and the Consultation Parties, having determined that the highest or otherwise best offer for the Acquired Assets, in each case as applicable pursuant to the applicable Asset Purchase Agreement, was made by the applicable Purchaser pursuant to those certain Asset Purchase Agreements listed at **<u>Schedule 1</u>** and filed at the docket numbers indicated, as applicable, thereon (as each may be amended, restated, supplemented or otherwise modified from time to time, including all schedules and exhibits thereto, collectively, the "<u>Asset Purchase Agreements</u>"); and the Debtors having filed and served

on interested parties on or around December 20, 2023, and this Court having reviewed, that certain *Notice of Winning Bidders With Respect to Certain of the Debtors' Leased Properties* [Docket No. 1403] (the "<u>Notice of Winning Bidders</u>"); and the Court having conducted a hearing on September 15, 2023 to consider entry of the Bidding Procedures Order (the "<u>Bidding Procedures Hearing</u>") and on January 12, 2024 to consider entry of this Order (the "<u>Sale Hearing</u>"); and all parties in interest having been offered an opportunity to be heard with respect to the Bidding Procedures, the Bidding Procedures Order, the proposed sale of the applicable Acquired Assets pursuant to the applicable Asset Purchase Agreement (in each individual case, as applicable, the "<u>Sale</u>," and collectively, the "<u>Sales</u>"), the Asset Purchase Agreements, and this Order, including at the Bidding Procedures Hearing and the Sale Hearing, as applicable; and upon the Court having considered the approval of each of the Sales pursuant to the terms and conditions of the Asset Purchase Agreements, as applicable, including all objections thereto, all replies in support thereof, the arguments of counsel made and the evidence adduced at the Bidding Procedure Hearing and the Sale Hearing, and the full record in these Chapter 11 Cases, including the record related to the Bidding Procedures Hearing and the Sale Hearing; and upon all parties in interest having been heard, or having had the opportunity to be heard, regarding this Court's approval of the Asset Purchase Agreements and the Sales and the related relief granted by this Order; and it appearing that the relief requested in the Motion, including by counsel at the Bidding Procedures Hearing and the Sale Hearing, and as set forth in this Order, is in the best interests of the Debtors, their estates, their creditors, and other stakeholders and parties in interest, it is hereby **FOUND, CONCLUDED, AND DETERMINED THAT:**

> A.    <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy

Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Jurisdiction. This Court has jurisdiction over this matter and over the property of the Debtors, including the Acquired Assets (in each case as applicable under the corresponding Asset Purchase Agreement) to be sold, transferred, and conveyed pursuant to the Asset Purchase Agreements, pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these Chapter 11 Cases and the Motion in this district and Court is proper under 28 U.S.C. §§ 1408 and 1409.

C.      Final Order. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the implementation of this Order, and directs entry of judgment as set forth herein.

D.      Property of the Estate. The Debtors are the sole and lawful owners and lessees, as applicable, and as set forth in the applicable Asset purchase Agreement, to the Acquired Assets to be sold to the Purchaser (in each case as applicable) pursuant to the Asset Purchase Agreements, including their interests as lessees.[3] The Debtors' right, title, and interest in and to

---

[3]    References herein to, without limitation, the "Acquired Assets," the "Purchaser," the "Seller," the "Asset Purchase Agreement," and the "Sale," unless otherwise specified in this Order, shall mean in each case as applicable under each of the Asset Purchase Agreements approved by this Order and listed at **Schedule 1** hereto and, as to the "Purchaser," shall be deemed to include, without limitation, all persons constituting the "Purchaser Group," as defined under the applicable Asset Purchase Agreement. For the avoidance of doubt, any provision in this Order relating specifically to one Asset Purchase Agreement, standing alone, will be specified accordingly. In the absence of such specificity, the terms and provisions of this Order shall be interpreted to apply to each and all of the Asset Purchase Agreements listed at **Schedule 1**, in each case as applicable pursuant to the terms and

the Acquired Assets constitute property of the Sellers' estates and the Debtors' right, title, and interest thereto is vested in the Sellers' estates within the meaning of section 541(a) of the Bankruptcy Code.

E.    <u>Statutory Bases for Relief</u>.  The statutory bases for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

F.    <u>Petition Date</u>.  On August 6, 2023 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.    <u>Bidding Procedures Order</u>.  This Court entered the Bidding Procedures Order on September 15, 2023, among other things, (1) establishing and authorizing the Bidding Procedures and auction procedures, including for the Real Property Assets; (2) scheduling the Bid Deadline (November 9, 2023) and the Auction (which was conducted on December 18, 2023 and December 19, 2023) for certain of the Debtors' Leased Properties as well as the Sale Hearing (January 12, 2024) to consider the sale of the Acquired Assets; (3) establishing procedures for noticing and determining cure amounts related to the Sellers' executory contracts and unexpired leases; and (4) granting certain related relief.

H.    <u>Notice</u>.  As evidenced by the applicable affidavits of service and notices previously filed with the Court [Docket Nos. 378, 444, 601, 1389, 1402, 1403, 1406], and based upon the representations of counsel at the Bidding Procedures Hearing and the Sale Hearing, due,

---

provisions of the applicable Asset Purchase Agreement, as if each term and provision of this Order were to be prefaced with: "As applicable to each Asset Purchase Agreement listed at **Schedule 1** hereto . . ."

proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures Order, the Sale Hearing, the Sales, the Notice of Winning Bidders, the Asset Purchase Agreements, and the assumption, assignment and sale of the executory contracts and unexpired leases to be assumed and subsequently assigned and sold pursuant to this Order (in each case as applicable under the relevant Asset Purchase Agreement) has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and in compliance with the Bidding Procedures Order, to each party entitled to such notice, including, as applicable: (a) the United States Trustee for the District of Delaware; (b) the Committee and counsel thereto; (c) counsel to the DIP Secured Parties (as defined in the DIP Orders); (d) counsel to the Prepetition Secured Parties (as defined in the DIP Orders); (e) counsel to the Prepetition UST Secured Parties (as defined in the UST Cash Collateral Orders); (f) the Internal Revenue Service; (g) the state attorneys general for all states in which the Debtors conduct business; and (h) any party that requests service pursuant to Bankruptcy Rule 2002.  The notices described above were good, sufficient, and appropriate under the circumstances, provided all interested parties with timely and proper notice of the Sale contemplated by the Asset Purchase Agreement and the Sale Hearing, and no other or further notice of the Sales, the Asset Purchase Agreements, or the Sale Hearing is or shall be required.

I.      Disclosures.  The disclosures made by the Debtors in the Motion, the Notice of Winning Bidders, and related documents filed with the Court concerning the Asset Purchase Agreements and the Sales, and at the Bidding Procedures Hearing and at the Sale Hearing, were sufficient and appropriate under the circumstances and no other or further disclosures to any party or to this Court are or shall be required.

J.    <u>Sale and Marketing Process</u>.  The Bidding Procedures were non-collusive, proposed and executed in good faith as a result of arms'-length negotiations, including with the Consultation Parties, and substantively and procedurally fair to all parties.  Based upon the evidence adduced at the Sale Hearing, the Debtors and their professionals have adequately marketed and conducted the sale process for the Acquired Assets in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order and the Bidding Procedures.  The sale process established by the Bidding Procedures Order, including the auction procedures set forth therein (including for the Acquired Assets), afforded a full, fair, and reasonable opportunity for any entity to make an offer to purchase, and to competitively bid on, the Acquired Assets under each Asset Purchase Agreement.  The sale process and the Auction were conducted in a noncollusive, fair, and good faith manner.  All potential purchasers had a full and fair opportunity to participate in the sale and auction process and to make higher or better offers for the Acquired Assets.

K.    <u>Winning Bidder</u>.    The Debtors determined, in accordance with their business judgment and the Bidding Procedures Order, in consultation with the Consultation Parties, that, in each case as applicable, (1) the Purchaser's bid (a) was a Qualified Bid for the Acquired Assets and (b) represented the highest or otherwise best offer for the Acquired Assets. As a result, the Debtors, following consultation with the Consultation Parties, declared each Purchaser as the Winning Bidder for the applicable Acquired Assets in the Notice of Winning Bidders filed with this Court [Docket No. 1403].

L.    <u>Highest or Otherwise Best Bid</u>.  After a full, fair, and robust sale and auction process for the Acquired Assets, the Debtors' determination, in consultation with the Consultation Parties, that the Asset Purchase Agreements constitute, in each case, the highest or otherwise best

8

offer for the applicable Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.  The total consideration provided by the Purchasers for the Acquired Assets (in each case as applicable) as reflected in the Asset Purchase Agreements represents not only a fair and reasonable offer to purchase the Acquired Assets, but also the highest or otherwise best offer received by the Debtors for the Acquired Assets.  With respect to each Asset Purchase Agreement approved hereby, no other entity or group of entities has submitted a Qualified Bid presenting a higher or otherwise better offer to the Sellers to purchase the applicable Acquired Assets for greater economic value to the Sellers' estates than as provided by the Purchaser pursuant to the applicable Asset Purchase Agreement.  The transactions contemplated under each Asset Purchase Agreement, including the total consideration to be realized by the Debtors as applicable thereunder, (i) is the highest or otherwise best offer received by the Debtors after extensive marketing and a thorough and fairly conducted auction process for the Acquired Assets in accordance with the Bidding Procedures Order and (ii) is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.  Therefore, the Debtors' determination, in each case, that the Asset Purchase Agreements, in each individual case, constitutes the highest or otherwise best offer for the applicable Acquired Assets, and the Debtors' selection of the Asset Purchase Agreements as the Winning Bids for the applicable Acquired Assets, each constitute a valid and sound exercise of the Debtors' business judgment.  The Debtors' decision to enter into each of the Asset Purchase Agreements and to consummate the transactions contemplated thereunder constitutes a proper exercise of the fiduciary duties of the Debtors and their officers and directors.  Each Asset Purchase Agreement represents fair and reasonable terms for the purchase of the applicable Acquired Assets.  Approval and entry of this Order (as it pertains to each Sale), approval and authorization for the Debtors to enter into each Asset Purchase

Agreement, and the consummation of the transactions contemplated thereby will maximize the value of each of the Debtors' estates and are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.  There is no legal or equitable reason to delay consummation of the transactions contemplated by each Asset Purchase Agreement, including, without limitation, each of the Sales.

   M. <u>Best Interests of the Estates, Creditors, and Parties in Interest</u>.  Given all of the facts and circumstances of these Chapter 11 Cases and the adequacy and fair value of the consideration provided by each applicable Purchaser for the applicable Acquired Assets under each Asset Purchase Agreement, the Sales constitute a reasonable and sound exercise of the Sellers' business judgment, are in the best interests of the Debtors, their estates, their creditors, and other parties in interest, and therefore should each be approved by this Order.

   N. <u>Sound Business Purpose</u>. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sales of the Acquired Assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code and pursuant to the Asset Purchase Agreements.  Given all of the facts and circumstances of these Chapter 11 Cases, the Debtors' entry into each of the Asset Purchase Agreements, and consummation of each of the Sales, is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

   O. <u>Good Faith</u>.  With respect to each of the Asset Purchase Agreements and each of the Sales, the applicable Purchaser is purchasing the applicable Acquired Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  Neither such Purchaser nor any

DE:4865-0640-7580.1 96859.001

of its Affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, successors, or assigns is an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor and no common identity of incorporators, directors, managers, or controlling stockholders existed between the Debtors and each applicable Purchaser, and, therefore, each such person is entitled to the full protections of section 363(m), and otherwise has proceeded in good faith in all respects in connection with these Chapter 11 Cases in that: (1) each Purchaser recognized that the Debtors were free to deal with any other party interested in bidding on and ultimately acquiring the Acquired Assets; (2) each Purchaser complied with all of the provisions of the Bidding Procedures Order; (3) each Purchaser's bid was subject to the competitive bidding and auction procedures set forth in and established by the Bidding Procedures Order; (4) all payments to be made by each Purchaser and other agreements or arrangements entered into by each Purchaser in connection with the Sale have been fully and properly disclosed; (5) no Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction; and (6) the negotiation and execution of the Asset Purchase Agreement, including the Sale contemplated thereby, were at arms'-length and in good faith.  There was and is no evidence of insider influence or improper conduct in any manner by any Purchaser or any of their Affiliates in connection with the negotiation of the Asset Purchase Agreements with the Debtors.

P.      No Collusion. With respect to each of the Asset Purchase Agreements and each of the Sales, the Asset Purchase Agreements and the transactions contemplated thereby, including each of the Sales, cannot be avoided under section 363(n) of the Bankruptcy Code.  None of the Debtors, the Purchasers, or any of their respective Affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives,

DE:4865-0640-7580.1 96859.001

attorneys, financial advisors, bankers, successors, or assigns have engaged in any conduct that would cause or permit any of the Asset Purchase Agreements or the consummation of the transactions contemplated thereby, including the Sales, to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. The transactions under each Asset Purchase Agreement may not be avoided, and no damages may be assessed against the applicable Purchaser or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

Q.    <u>Fair Consideration</u>.  With respect to each of the Asset Purchase Agreements and each of the Sales, the consideration provided by the Purchasers for the Acquired Assets pursuant to the Asset Purchase Agreement: (1) is fair and adequate, (2) negotiated at arm's-length, and (3) constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and similar laws).

R.    <u>Purchaser Not a Successor</u>.  With respect to each of the Asset Purchase Agreements and each of the Sales, by consummating the applicable Sale pursuant to the applicable Asset Purchase Agreement, none of the Purchasers are a mere continuation of any Debtor or any Debtor's estate, and there is no continuity, no common identity, and no continuity of enterprise between the Purchasers and any Debtor.  None of the Purchasers shall be deemed to be holding themselves out as a continuation of the Debtors based on the Sale, the Asset Purchase Agreements, or this Order.  None of the Purchasers are a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity and is not an alter ego or mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors under any theory of law or equity, and

the Sale does not amount to a consolidation, merger, or *de facto* merger of any Purchaser and the Debtors.  Neither the Purchasers nor any of their Affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any Affiliates thereof) or any Debtor's estate, except to the extent expressly provided in the Asset Purchase Agreement.

S.      No *Sub Rosa* Plan.  The Sales, both individually and collectively, neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan of the Debtors.  The Sales, both individually and collectively, do not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation.

T.      Power and Authority.  With respect to each of the Asset Purchase Agreements and each of the Sales, the Debtors and the applicable Purchaser, each acting by and through their existing agents, representatives, and officers, have full corporate power and authority to execute and deliver the applicable Asset Purchase Agreement and all other documents contemplated thereby.  Upon entry of this Order, the Debtors and each Purchaser require no further consents or approvals to consummate the applicable Sale contemplated by the applicable Asset Purchase Agreement, except as otherwise set forth in the applicable Asset Purchase Agreement.

U.      Binding Agreement.  With respect to each of the Asset Purchase Agreements and each of the Sales, the applicable Asset Purchase Agreement is a valid and binding contract between the Sellers and the applicable Purchaser and shall be enforceable pursuant to its terms.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession or the District of Columbia.  Each Asset Purchase Agreement and each of the Sales themselves, and the consummation thereof, shall be, to the extent provided in each Asset

Purchase Agreement, specifically enforceable against and binding upon (without posting any bond) the applicable Purchaser, the Debtors, and any chapter 7 or chapter 11 trustee or receiver or trustee in bankruptcy appointed with respect to any of the Debtors, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.  The terms and provisions of each Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown) and holders of equity interests in any Debtor, any holders of claims against or liens on all or any portion of the applicable Acquired Assets, all counterparties to the applicable Assigned Contracts, each applicable Purchaser, and each of their respective affiliates, successors, and assigns (*provided*, affiliates of the Purchaser shall be bound only to the extent set forth in the applicable Asset Purchase Agreement), and any affected third parties, including, without limitation, all Persons asserting Adverse Interests (except to the extent expressly set forth in the applicable Asset Purchase Agreement) (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, or receiver under the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under the Bankruptcy Code or any other law with respect to any of the Bound Parties, and all such terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, receiver, party, entity, or other fiduciary. The provisions of this Order and the terms and provisions of the Asset Purchase Agreement shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors, dismissing these chapter 11 cases, or converting these chapter 11 cases to cases under chapter 7.  The rights and interests granted pursuant to this Order and the Asset

DE:4865-0640-7580.1 96859.001

Purchase Agreements shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns, including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to perform under the Asset Purchase Agreement and this Order without the need for further order of the Court.

V.     Valid Transfer.  With respect to each of the Asset Purchase Agreements and each of the Sales, the transfer, as applicable, of the Acquired Assets to each Purchaser pursuant to the Asset Purchase Agreement will be a legal, valid, and effective transfer of the Acquired Assets, and vests or will vest the Purchaser with all right, title, and interest of the Sellers to the Acquired Assets free and clear of all Adverse Interests (as defined below) (except to the extent expressly set forth in the Asset Purchase Agreement) accruing, arising or relating thereto any time prior to the Closing Date (as defined in the applicable Asset Purchase Agreement), unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement.

W.     Free and Clear Sale.  With respect to each of the Asset Purchase Agreements and each of the Sales, the Debtors may sell the Acquired Assets free and clear of all Adverse Interests against the Debtors, their estates, or the Acquired Assets (except to the extent specifically set forth in the applicable Asset Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Upon entry of this Order, the Debtors are authorized upon the applicable Closing to transfer all of their right, title and interest in and to the applicable Acquired Assets free and clear of any and all claims (as such term is defined by section 101(5) of the Bankruptcy Code), liabilities (including any liability

15

that results from, relates to or arises out of tort or any other product liability claim), interests and matters of any kind and nature whatsoever, including, without limitation, hypothecations, mortgages, security deeds, deeds of trust, debts, levies, indentures, restrictions (whether on voting, sale, transfer, disposition or otherwise), leases, licenses, easements, rights of way, encroachments, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts and other title retention agreements and other similar impositions, options, judgments, offsets, rights of recovery, rights of preemption, rights of setoff, profit sharing interest, other third party rights, other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor liability claims, substantial continuation claims, COBRA claims, withdrawal liability claims, environmental claims, claims under or relating to any employee benefit plan, ERISA affiliate plan, or ERISA (including any pension or retirement plan), WARN Act claims or any claims under state or other laws of similar effect, tax claims (including claims for any and all foreign, federal, state, provincial and local taxes, including, but not limited to, sales, income, use or any other type of tax), escheatment claims, reclamation claims, obligations, liabilities, demands, and guaranties, and other encumbrances relating to, accruing, or arising any time prior to the applicable Closing Date, duties, responsibilities, obligations, demands, commitments, assessments, costs, expense, losses, expenditures, charges, fees, penalties, fines, contributions, premiums, encumbrances, guaranties, pledges, consensual or nonconsensual liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code), statutory liens, real or personal property liens, mechanics' liens, materialman's liens, warehouseman's liens, tax liens, security interests, charges, options (including in favor of third parties), rights, contractual

DE:4865-0640-7580.1 96859.001

commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, rights of first refusal, rights and restrictions of any kind or nature whatsoever against the Debtors or the applicable Acquired Assets, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims, or claims for taxes of or against the Debtors, and any derivative, vicarious, transferee or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession, or the District of Columbia), whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability or substantial continuation liability, including, without limitation, that each Purchaser is in any way a successor, successor-in-interest, continuation or substantial continuation of the Debtors or their business, arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the applicable Acquired Assets, the operation of the Debtors' respective businesses at or before the effective time of the closing pursuant to the applicable Asset Purchase Agreement, or the transfer of the Debtors' interests in the applicable Acquired Assets to the applicable Purchaser, and all applicable Excluded Liabilities (collectively,

DE:4865-0640-7580.1 96859.001

"Adverse Interests"), as, and to the extent, provided for in the Purchase Agreement because in each case one or more of the standards set forth in section 363(f)(1)—(5) of the Bankruptcy Code has been satisfied.  Except as otherwise expressly provided in each Asset Purchase Agreement or this Order, such Adverse Interests on the applicable Acquired Assets shall attach to the proceeds for such Acquired Assets allocated to the Debtors in the order of their priority, with the same validity, force and effect which they have against the applicable Acquired Assets immediately prior to the applicable Closing, subject to any claims and defenses the Debtors may possess with respect to such Adverse Interests. Those holders of Adverse Interests against the Acquired Assets who did not object or who withdrew their objections to the applicable Asset Purchase Agreement or the Motion are deemed to have consented to the transactions contemplated by the applicable Asset Purchase Agreement pursuant to section 363(f)(2) of the Bankruptcy Code and shall be forever barred from pursuing or asserting such Adverse Interests against the applicable Purchaser or any of its respective assets, property, affiliates, successors, assigns, or the applicable Acquired Assets.

X.     Assigned Contracts.   With respect to each of the Asset Purchase Agreements and each of the Sales (as and to the extent set forth under the applicable Asset Purchase Agreement), the Sellers seek authority to assume, assign and sell to the Purchasers the Acquired Assets, and any other executory contracts or unexpired leases related to the Acquired Assets that are to be assumed, assigned and sold to the Purchasers (in each case as applicable) as more particularly set forth in the Asset Purchase Agreements (collectively, under each Asset Purchase Agreement, as applicable, the "Assigned Contracts").  The Debtors have demonstrated that the assumption, assignment and sale of the Assigned Contracts under the Asset Purchase Agreements (as applicable) is an exercise of their sound business judgment and is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned

DE:4865-0640-7580.1 96859.001

Contracts to be assumed, assigned, and sold to the Purchasers under the Asset Purchase Agreements (as applicable) are an integral part of the Asset Purchase Agreements and the Sales and, accordingly, such assumption, assignment, and sale are reasonable and enhance the value of the Debtors' estates.  Subject to Paragraphs 4.19 and 4.20 hereof, any contract counterparty to any Assigned Contract that has not actually filed with the Court an objection to such assumption, assignment and/or sale as of the applicable deadline specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order or with the consent of the Debtors and the Purchaser) is deemed to have consented to such assumption, assignment and sale.

Y.    Designation Rights.  With respect to each of the Asset Purchase Agreements and each of the Sales (as and to the extent set forth under the applicable Asset Purchase Agreement), the Purchaser shall maintain certain rights to modify the list of Assigned Contracts after the date of this Order and up to the applicable designation deadline (the "Designation Deadline") as set forth in the applicable Asset Purchase Agreement, which shall be five (5) business days prior to the applicable Closing Date unless specified otherwise in the applicable Asset Purchase Agreement.  Such modification rights include, but are not limited to, the right of the Purchaser, prior to the Designation Deadline, to designate certain Contracts (the "Designation Rights Assets") for assumption by the Debtors and assignment and sale to the applicable Purchaser.  The notice and opportunity to object provided to the contract counterparties to such Assigned Contracts and to other parties in interest, as set forth in the Bidding Procedures Order and the applicable Asset Purchase Agreement, fairly and reasonably protects any rights that such contract counterparties and other parties in interest may have with respect to such Contracts.

DE:4865-0640-7580.1 96859.001

Z.      <u>Cure Notice</u>.  The Debtors filed that certain *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated With the Non-Rolling Stock Assets* [Docket No. 968] (the "<u>Cure Notice</u>") pursuant to which the Sellers identified the dollar amount, if any, that the Sellers assert is necessary to be paid to cure all defaults, if any, under their executory contracts and unexpired leases based on the Sellers' books and records (the "<u>Seller Asserted Cure Amount</u>") and served the Cure Notice on the non-Debtor counterparties to the executory contracts and unexpired leases listed thereon in accordance with the Bidding Procedures Order.  Except to the extent the Debtors agreed to an extension, pursuant to the Bidding Procedures Order and the Cure Notice, contract counterparties to the Sellers' executory contracts and unexpired leases were required to file objections (each, a "<u>Cure Objection</u>"), if any, to the Seller Asserted Cure Amount by no later than November 9, 2023 at 5:00 p.m. (E.T.).  The Cure Notice and the Bidding Procedures Order provided that in the absence of a timely filed Cure Objection, the cure costs set forth in the Cure Notice (each, a "<u>Cure Cost</u>" and, collectively, the "<u>Cure Costs</u>") relating to the period prior to the objection deadline would be controlling and fixed, notwithstanding anything to the contrary in any Assigned Contract, or any other document, and the contract counterparty to any Assigned Contract shall be deemed to have consented to the Cure Costs set forth in the Cure Notice.

AA.      <u>Adequate Assurance of Future Performance</u>.  With respect to each of the Asset Purchase Agreements and each of the Sales, in accordance with the Bidding Procedures Order, upon request by any Assigned Contract counterparty to the Debtors, the Debtors sent such counterparty evidence that the applicable Purchaser has the ability to perform under the executory contract or unexpired lease and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code.  Pursuant to the Bidding

DE:4865-0640-7580.1 96859.001

Procedures Order, contract counterparties to Assigned Contracts whose executory contracts and unexpired leases were listed on the Cure Notice were required to file any objections to the Purchaser's ability to provide adequate assurance of future performance as contemplated under sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code (the "Adequate Assurance Objections") by no later than December 8, 2023 at 5:00 p.m. (E.T.).  Such contract counterparties to Assigned Contracts that failed to file an Adequate Assurance Objection are forever barred from objecting to the assumption, assignment, and sale of such Assigned Contract on the grounds of a failure to provide adequate assurance of future performance.  Based on the evidence adduced at the Sale Hearing and based on the record in these Chapter 11 Cases, to the extent necessary, the Sellers have satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code, in connection with the assumption, assignment, and sale of the Assigned Contracts to the extent provided under the applicable Asset Purchase Agreement and: (1) conditioned on the assumption, assignment, and sale of the applicable Assigned Contract, the applicable Purchaser will cure, in accordance with the terms set forth in this Order, paragraph 39 of the Bidding Procedures Order, and the Asset Purchase Agreement, any default existing prior to the date of the assumption and assignment of such Assumed Contract, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (2) conditioned on the assumption, assignment, and sale of the applicable Assigned Contract, each Purchaser has provided or will provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date of assumption, assignment, and sale of such Assigned Contract, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (3) the applicable Purchaser has provided adequate assurance of future

DE:4865-0640-7580.1 96859.001

performance of and under the applicable Assigned Contracts, within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code based on the evidence adduced at the Sale Hearing.

BB.    <u>Single, Integrated Transaction</u>.  With respect to each of the Asset Purchase Agreements and each of the Sales, entry of this Order approving the Asset Purchase Agreements and all provisions of this Order and the Asset Purchase Agreements are a necessary condition precedent to the applicable Purchaser consummating the applicable Sale.  The provisions of this Order and the Asset Purchase Agreements (in each case as applicable) and the transactions contemplated by this Order and the applicable Asset Purchase Agreements, including (in each case as applicable) the Sales of the Acquired Assets to the applicable Purchasers, are inextricably linked and technically and collectively constitute a single, integrated transaction.

CC.    <u>Consummation is Legal, Valid and Authorized</u>.  With respect to each of the Asset Purchase Agreements and each of the Sales, the consummation of each Sale pursuant to each Asset Purchase Agreement is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with.

DD.    <u>Protection of Consumer Privacy</u>.  With respect to each of the Asset Purchase Agreements, as contemplated by the applicable Asset Purchase Agreement and subject to the terms of this Order, the sale to the Purchasers under the Asset Purchase Agreements of any personally identifiable information (as such term is defined in section 101(41A) of the Bankruptcy Code) satisfies the requirements of section 363(b)(1)(A) of the Bankruptcy Code.

EE.     <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and at the Bidding Procedures Hearing and the Sale Hearing establish just cause for the relief granted herein.

FF.     <u>Waiver of Bankruptcy Rules 6004(h) and 6006(d)</u>.  The Debtors have demonstrated (i) good, sufficient, and sound business purposes and justifications for approving each Asset Purchase Agreement and each Sale and (ii) compelling circumstances for the immediate approval and consummation of the transactions contemplated by each Asset Purchase Agreement and all other ancillary documents for each Sale transaction outside of (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (b) a chapter 11 plan, in that, among other things, the immediate consummation of the Sales and all transactions contemplated thereby and by the Asset Purchase Agreements are necessary and appropriate to maximize the value of the Debtors' estates, and the Sales will provide the means for the Debtors to maximize distributions to their creditors.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the transactions contemplated by this Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**Section 1.     <u>Approval of the Motion</u>**

1.1     The relief requested in the Motion is granted as set forth herein.

1.2     Any and all objections and responses to the entry of this Order or to the relief granted herein that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.  All persons and entities notified or deemed notified of the relief sought in the Motion and set forth in this Order that failed to timely object thereto are deemed to consent to such relief.

1.3     Notice of the Motion, the Bidding Procedures Order, the Bidding Procedures Hearing, the Sale Hearing, the Notice of Winning Bidders, each Sale, and each Asset

DE:4865-0640-7580.1 96859.001

Purchase Agreement was, in each case, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

1.4     The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, and the record of the Sale Hearing, are incorporated herein by reference.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bidding Procedures Order, and the Bidding Procedures Order is a final order of the Court, has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.

**Section 2.**     **<u>Approval of the Sale of the Acquired Assets</u>**

2.1     Each Asset Purchase Agreement set forth at **<u>Schedule 1</u>** hereto, in each case as filed at the relevant docket number as indicated thereon, including all other ancillary documents, and all of the terms and conditions thereof, in each case as applicable, and the Sale and related transactions contemplated thereby, in each case as applicable, are hereby approved in all respects.

2.2     Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Debtors into each Asset Purchase Agreement is hereby authorized and approved as a valid exercise of the Debtors' business judgment.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by each Asset Purchase Agreement and all other ancillary documents as and when due thereunder without further order of this Court.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives and officers, are authorized, without further order of this Court, to take any and all actions necessary or appropriate to: (a) consummate and close the applicable Sale pursuant to and in accordance with the terms and conditions of the

DE:4865-0640-7580.1 96859.001

applicable Asset Purchase Agreement; (b) transfer and assign all right, title, and interest to all assets, property, licenses, and rights to be conveyed in accordance with the terms and conditions of the applicable Asset Purchase Agreement; and (c) execute and deliver, perform under, consummate, and implement the applicable Asset Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the applicable Asset Purchase Agreement and the applicable Sale, including any other ancillary documents, deeds, assignments, stock powers, transfers of membership interests and other instruments of transfer, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the applicable Asset Purchase Agreement and such other ancillary documents.  Neither the Purchaser nor the Sellers shall have any obligation to proceed with the Closing under the applicable Asset Purchase Agreement until all conditions precedent to its obligations to do so have been met, satisfied, or waived in accordance with the terms of the applicable Asset Purchase Agreement.

2.3     The Debtors are authorized to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Units (as defined in section 101(27) of the Bankruptcy Code), any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the applicable Asset Purchase Agreement, any related agreements and this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Units or as any of the officers of the Debtors may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

DE:4865-0640-7580.1 96859.001

2.4     This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Adverse Interests against any Debtor (in each case as applicable), any holders of Adverse Interests against or on all or any portion of the Acquired Assets (in each case as applicable), all counterparties to any executory contract or unexpired lease of the Debtors, each Purchaser, any trustees, examiners, receiver or other fiduciary under any section of the Bankruptcy Code or similar law, if any, subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 of the Bankruptcy Code of any of the Debtors' cases, and any filing agents, filing officers, title agents, title companies, registrars of deeds, administrative agencies, governmental departments, recording agencies, secretaries of state, federal, state, foreign, provincial, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets (in each case as applicable), and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions approved hereby.  The terms and provisions of each Asset Purchase Agreement and this Order shall inure to the benefit of the Debtors, their estates and their creditors, the applicable Purchaser and its Affiliates, and any other affected third parties, including all persons asserting any Adverse Interests in the Acquired Assets to be sold pursuant to the Asset Purchase Agreement, in each case as applicable, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.  A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the

recorder to act to cancel, effective upon the applicable Closing Date, any Adverse Interests of record, as provided herein, except with respect to Assumed Liabilities (as applicable) and Permitted Encumbrances (as applicable); *provided* that, for the avoidance of doubt, the provisions of this Order shall be self-executing.  This Order shall survive any dismissal or conversion of any of these Chapter 11 Cases or any dismissal of any subsequent chapter 7 cases.  Nothing contained in any chapter 11 plan of reorganization or liquidation confirmed in any of these Chapter 11 cases, any order confirming any such chapter 11 plan of reorganization or liquidation or any order approving the wind-down or dismissal of any of these Chapter 11 Cases or any subsequent chapter 7 cases (including any discharge of claims thereunder) or otherwise shall alter, conflict with, or derogate from the provisions of this Order or the applicable Asset Purchase Agreement, and to the extent of any conflict or derogation between this Order or the applicable Asset Purchase Agreement and such future plan or order, the terms of this Order and the applicable Asset Purchase Agreement shall control.

**Section 3.** <u>**Sale and Transfer of Assets**</u>

3.1     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, upon the applicable Closing Date and thereafter pursuant to the applicable Asset Purchase Agreement, and pursuant to and except to the extent expressly set forth in the applicable Asset Purchase Agreement, the applicable Acquired Assets shall be transferred free and clear of all Adverse Interests (as set forth in the applicable Asset Purchase Agreement) (*provided*, *however*, that solely to the extent expressly set forth in the applicable Asset Purchase Agreement, Adverse Interests shall not include Assumed Liabilities (as defined in the applicable Asset Purchase Agreement), Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement), and the Purchaser's obligations with respect to Designation Rights Assets), with all such Adverse

Interests to attach to the proceeds of the applicable Sale, including the separate deposit account or accounts maintained by the Debtors into which the proceeds from each Sale shall be deposited (the "Proceeds Account") for the benefit of the holders of such Adverse Interests, including the Junior DIP Secured Parties (as defined in the DIP Orders) and the Prepetition UST Secured Parties (collectively, the "Secured Parties"), in each case until such holders have been paid in full in cash, and in each case in the order of the priority of such Adverse Interests under the Final DIP Order, the Final UST Cash Collateral Order, and the Prepetition Intercreditor Agreement and with the same validity, force, and effect which such Adverse Interests had against the applicable Acquired Assets prior to the entry of this Order, and solely with respect to Adverse Interest other than the interest of the Secured Parties subject to any claims and defenses the Debtors may possess with respect thereto and the expiration of any applicable Challenge Period. Those holders of Adverse Interests who did not object (or who ultimately withdrew their objections, if any) to the applicable Sale are deemed to have consented to such Sale being free and clear of their Adverse Interests pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Adverse Interests who did object to the applicable Sale could be compelled in a legal or equitable proceeding to accept money satisfaction of such Adverse Interests pursuant to section 363(f)(5) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Adverse Interests that constitute interests in the Acquired Assets, if any, attach solely to the proceeds of the applicable Sale ultimately attributable to the property in which they have an interest, in each case in the same order of priority as set forth under the Final DIP Order, the Final UST Cash Collateral Order, and the Prepetition Intercreditor Agreement, and with the same validity, force and effect that such holders had prior to the entry of this Order, and solely with respect to Adverse Interest other than the interest of the Secured Parties

subject to any claims and defenses of the Debtors and the expiration of any applicable Challenge Period.  Neither the process by which any of the Acquired Assets were sold, nor the results of any such Sales in the Asset Purchase Agreements (as opposed to selling the Acquired Assets to any other party), create claims of any kind against either the Purchasers or the Debtors, including, without limitation, claims of any kind under any of the Debtors' executory contracts or unexpired leases, and no claims arising out of the sale process or any Sale itself shall be brought against the Purchasers or the Debtors.

3.2     Conditioned upon the occurrence of the applicable Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Acquired Assets or a bill of sale transferring all of the Debtors' right, title, and interest in such Acquired Assets to the Purchaser pursuant to the terms and allocations set forth in the applicable Asset Purchase Agreement.  For the avoidance of doubt, the Excluded Assets set forth in the applicable Asset Purchase Agreement are not included in the Acquired Assets (under such Asset Purchase Agreement), and the Excluded Liabilities set forth in the applicable Asset Purchase Agreement are not Assumed Liabilities (under such Asset Purchase Agreement), and the Purchaser is not acquiring such Excluded Assets or assuming such Excluded Liabilities.

3.3     All persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the applicable Acquired Assets to the applicable Purchaser in accordance with the applicable Asset Purchase Agreement and this Order.

3.4     Subject to the terms and conditions of this Order, in each case as applicable to each Asset Purchase Agreement, the transfer of the Acquired Assets to the Purchaser pursuant to the Asset Purchase Agreement and the consummation of the Sale and any related actions

DE:4865-0640-7580.1 96859.001

contemplated thereby do not require any consents other than as specifically provided for in the Asset Purchase Agreement, constitute a legal, valid, and effective transfer to the Purchaser of all of the Debtors' right, title, and interest in the Acquired Assets, notwithstanding any requirement for approval or consent by any person, and shall vest the Purchaser with the right, title, and interest of the Sellers in and to the Acquired Assets as set forth in the Asset Purchase Agreement, as applicable, free and clear of all Adverse Interests of any kind or nature whatsoever (except to the extent expressly set forth in the Asset Purchase Agreement).  This Order is and shall be effective as a determination that, on the applicable Closing Date, all Adverse Interests, other than Assumed Liabilities (as applicable) and Permitted Encumbrances (as applicable), whatsoever existing as to the Acquired Assets prior to the applicable Closing Date, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effective; *provided*, *however*, that such Adverse Interests shall attach to the proceeds of the applicable Sales in the order of their priority, with the same validity, force and effect which they had before the applicable Closing Date against such Acquired Assets.

3.5     To the maximum extent permitted under applicable law, in each case as applicable to each Asset Purchase Agreement, the Purchaser or its Affiliates, to the extent provided by the Asset Purchase Agreement, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Sellers constituting Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are directed to be, transferred to the Purchaser or its Affiliates as of the Closing Date as and to the extent provided by the applicable Asset Purchase Agreement.  To the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may revoke or suspend any grant, permit, or license relating to the

30

operation of the Acquired Assets sold, transferred, assigned, or conveyed to the applicable Purchaser or its Affiliates on account of the filing or pendency of these Chapter 11 Cases or the consummation of the applicable Sale. Each and every federal, state, provincial, foreign and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale set forth in each Asset Purchase Agreement. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, provincial, foreign or local government agency, department, or office. To the greatest extent available under applicable law, each Purchaser shall be authorized to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the applicable Acquired Assets.

3.6     With respect to each Asset Purchase Agreement, all entities that are presently, or on the applicable Closing Date may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed (wherever located) to the Purchaser pursuant to the applicable Asset Purchase Agreement are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

3.7     Effective upon the Closing Date and except to the extent expressly included in Assumed Liabilities (as defined in the applicable Asset Purchase Agreement) or Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement) or as otherwise expressly provided in the applicable Asset Purchase Agreement, all persons and entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, contract counterparties, customers, licensors, litigation claimants, employees and former employees, dealers and sale representatives,

DE:4865-0640-7580.1 96859.001

and trade or other creditors holding Adverse Interests against the Debtors or the Acquired Assets, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the transfer of the Acquired Assets, hereby are forever barred and estopped from asserting any Adverse Interests relating to the Debtors, the Acquired Assets, or the transfer of the Acquired Assets against the Purchaser and its Affiliates or their respective assets or property (including the Acquired Assets), or the Acquired Assets transferred to the Purchaser (it being understood that such Adverse Interests shall attach to the proceeds of the applicable Sale at the applicable Closing), including, without limitation, taking any of the following actions with respect to or based on any Adverse Interest relating to the Debtors, the Acquired Assets or the transfer of the Acquired Assets (other than to the extent expressly set forth in the Asset Purchase Agreement): (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its Affiliates or their respective assets or properties (including the Acquired Assets); (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Purchaser, its Affiliates or their respective assets or properties (including the Acquired Assets); (c) creating, perfecting, or enforcing any Adverse Interest against the Purchaser or its Affiliates or their respective assets or properties (including the Acquired Assets); (d) asserting an Adverse Interest as a setoff (except for setoffs asserted prior to the Petition Date), or right of subrogation of any kind against any obligation due the Purchaser or Affiliates; (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof; (f) revoking,

terminating, failing, or refusing to renew any license, permit, or authorization to operate any business in connection with the Acquired Assets or conduct any of the businesses operated with respect to such assets; or (g) interfering with, preventing, restricting, prohibiting or otherwise enjoining the consummation of the Sale.  No such persons shall assert or pursue against the Purchaser or its Affiliates, assets, or property any such Adverse Interest directly or indirectly, in any manner whatsoever.

3.8    This Order shall be effective as a determination that, as of the applicable Closing Date (as defined in the applicable Asset Purchase Agreement), except as expressly set forth in the applicable Asset Purchase Agreement, (i) no claims other than the Assumed Liabilities (as defined in the applicable Asset Purchase Agreement) will be assertable against the applicable Purchaser or any of its respective assets or property (including the Acquired Assets), (ii) the Acquired Assets shall have been transferred to the applicable Purchaser (or its designee) free and clear of all liens, claims, interests, and encumbrances, subject only to the Assumed Liabilities (as defined in the applicable Asset Purchase Agreement) and Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement), and (iii) the conveyances described herein and in each Asset Purchase Agreement, as applicable, have been effected as of the applicable Closing Date.

3.9    If any person or entity that has filed financing statements, mortgages, mechanic's claims, lis pendens, or other documents or agreements evidencing claims against the Debtors or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing of the applicable Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all liens, claims, interests, and encumbrances that the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then only with respect to the Acquired Assets that are purchased by the applicable

DE:4865-0640-7580.1 96859.001

Purchaser (or its designee) pursuant to the applicable Asset Purchase Agreement and this Order, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets, (b) the Purchaser (or its designee) is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, interests, and encumbrances against the Purchaser and the Acquired Assets as of the applicable Closing Date, and (c) upon consummation of the Sale, the Purchaser (or its designee) may seek, as necessary, in this Court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all liens, claims, interests, and encumbrances that are extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the applicable Acquired Assets.  Notwithstanding the foregoing, the provisions of this Order shall be self-executing and neither the Debtors nor the Purchaser (or its designee) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

       3.10    Each Purchaser and its Affiliates and their respective successors, assigns, nominees, designees, members, partners, principals and shareholders (or equivalent) (collectively, the "Purchaser Entities") are not and shall not be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the transactions contemplated by the Asset Purchase Agreement or any other event occurring in the Debtors' Chapter 11 Cases under any theory of law or equity, including, without limitation, successor or transferee liability, (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity

of enterprise with the Debtors, (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors or (f) deemed to be an alter ego or mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors, in each case of the foregoing, under any theory of law or equity.  Each Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except to the extent expressly provided in the Asset Purchase Agreement, including, solely to the extent set forth in the Asset Purchase Agreement, with respect to Assumed Liabilities (as defined in the applicable Asset Purchase Agreement), Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement) and the Purchaser's obligations with respect to Designation Rights Assets.  Except to the extent otherwise set forth in the Asset Purchase Agreement, including, solely to the extent expressly set forth in the Asset Purchase Agreement, with respect to Assumed Liabilities (as defined in the applicable Asset Purchase Agreement), Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement) and the Purchaser's obligations with respect to Designation Rights Assets, the transfer of the Acquired Assets and the Assumed Contracts to the Purchaser under the Asset Purchase Agreement shall not result in (i) the Purchaser Entities, or the Acquired Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) the Purchaser Entities, or the Acquired Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Adverse Interests or Excluded Liability or (iii) the Purchaser Entities, or the Acquired Assets, having any liability or

responsibility to the Debtors, in each case except to the extent expressly set forth in the applicable Asset Purchase Agreement.

3.11    Without limiting the effect or scope of the foregoing, except to the extent expressly provided in the applicable Asset Purchase Agreement, as of the applicable Closing Date, the applicable Purchaser Entities shall have no successor or vicarious liabilities of any kind or character with respect to the applicable Acquired Assets, and such Acquired Assets shall be transferred free and clear of all Adverse Interests (except for Assumed Liabilities (as applicable) and Permitted Encumbrances (as applicable)), including, but not limited to: (a) any employment, labor, or collective bargaining agreements or the termination thereof; (b) any pension, health, welfare, compensation, multiemployer plan (as such term is defined in connection with the Employee Retirement Income Security Act of 1974, as amended), or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan or multiemployer plan of or related to any of the Debtors or any of the Debtors' Affiliates or predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any claims of any former employees of the Debtors; (f) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law; and (g) any claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended; (ii) the Fair Labor Standards Act; (iii) Title VII of the Civil Rights Act of 1964; (iv) the Federal Rehabilitation Act of 1973; (v) the National Labor Relations Act; (vi) the Worker Adjustment and Retraining Notification Act of 1988; (vii) the Age Discrimination in Employee Act of 1967, as amended; (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985;

36

(x) the Multiemployer Pension Plan Amendments Act of 1980; (xi) state, provincial, foreign, and local discrimination laws; (xii) state, provincial, foreign, and local unemployment compensation laws or any other similar state and local laws; (xiii) state workers' compensation laws; (xiv) any other state, provincial, foreign, local or federal employee benefit laws, regulations or rules or other state, provincial, foreign, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with any or all Debtors or any predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state or federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state, provincial, foreign, or local tax statutes, regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xx) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to, the applicable Acquired Assets, the applicable Asset Purchase Agreement or the applicable Assumed Contracts except to the extent otherwise set forth in this Order.

3.12    With respect to each Asset Purchase Agreement, except as expressly set forth in the applicable Asset Purchase Agreement, including with respect to Assumed Liabilities (as applicable), Permitted Encumbrances (as applicable) and the Purchaser's obligations with respect to Designation Rights Assets (as applicable), it is expressly ordered and directed that the

DE:4865-0640-7580.1 96859.001

Sale of the Acquired Assets is free and clear of any and all unemployment compensation taxes and any related contribution and reimbursement obligations of the Debtors, and all state tax and labor agencies shall treat the applicable Purchaser as a "new employer" in all respects and for any applicable tax rates and contribution and reimbursement obligations and "experience rates" as of and after the applicable Closing Date (and each state unemployment compensation law agency or department shall be prohibited from treating the applicable Purchaser as a successor of the Debtors for any contribution rates, benefit charges, benefit rates, experience rates or similar charges or taxes).

3.13    With respect to each Asset Purchase Agreement, subject to the applicable Asset Purchase Agreement, the Purchaser is hereby authorized in connection with the consummation of the applicable Sale to transfer or direct the transfer of any or all of the applicable Acquired Assets and the applicable Assumed Contracts (or any rights to acquire the Acquired Assets and the Assumed Contracts) to its nominees, and/or direct and indirect subsidiaries, in a manner as it, in its sole and absolute discretion, deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Acquired Assets or the rights under any Assumed Contract to its direct and indirect subsidiaries with all of the rights and protections accorded under this Order and the applicable Asset Purchase Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the applicable Purchaser to effectuate any of the foregoing.

**Section 4.**    <u>**Assumption and Assignment**</u>

4.1    With respect to each Asset Purchase Agreement (as and to the extent applicable in each case thereunder), pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, and subject to

38

Paragraphs 4.7, 4.19 and 4.20 hereof, the Sellers' assumption, assignment and sale to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement of the Assigned Contracts, is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Subject to Paragraphs 4.7, 4.19 and 4.20 hereof, the Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume, assign and sell to the applicable Purchaser, effective upon the applicable Closing Date of the Sale of the Acquired Assets or thereafter pursuant to the applicable Asset Purchase Agreement, the Assigned Contracts free and clear of all Adverse Interests of any kind or nature whatsoever (except to the extent expressly set forth in the Asset Purchase Agreement) and execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser.

4.2    With respect to each Asset Purchase Agreement (as and to the extent applicable in each case thereunder), upon the date that each Assigned Contract is assumed, assigned and sold, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract, under the respective Asset Purchase Agreement, as applicable.  The Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing, as further provided in the applicable Asset Purchase Agreement.  The Purchaser shall likewise cooperate with the Debtors and otherwise comply with the terms and conditions in relation to any Designation Rights Asset under the applicable Asset Purchase Agreement.

4.3    With respect to each Asset Purchase Agreement (as and to the extent applicable in each case thereunder), the Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of the Purchaser in accordance with their respective terms,

39

notwithstanding any provision in any such Assigned Contract that is assumed, assigned and sold to the Purchaser pursuant to the applicable Asset Purchase Agreement (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, or requires any counterparty to consent to assignment.

4.4     Subject to Paragraphs 4.7, 4.19 and 4.20 hereof, each Purchaser, as applicable, has provided adequate assurance of future performance for the Assigned Contracts (as defined in the applicable Asset Purchase Agreement) within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

4.5     Subject to paragraph 39 of the Bidding Procedures Order and the applicable Asset Purchase Agreement, the applicable Purchaser shall pay to the applicable contract counterparty the Cure Costs relating to any Assigned Contracts within seven (7) days of the applicable Closing Date.  Upon payment of such Cure Costs as provided for herein, the contract counterparties to such Assigned Contracts are hereby enjoined from taking any action against the applicable Purchaser or the Acquired Assets with respect to any claim for cure.  For the avoidance of doubt, to the extent provided in the applicable Asset Purchase Agreement, the Purchaser shall maintain its right (i) not to designate such executory contract or unexpired lease for assumption, assignment and sale at any time prior to Closing , (ii) to designate such executory contract or unexpired lease for assumption, assignment and sale at any time prior to Closing or (iii) to adjust the Closing Date Payment based on the amount of the Cure Costs as of Closing.

A.     <u>Provisions Regarding Saia Cure Costs</u>.  Subject to paragraph 39 of the Bidding Procedures Order and the applicable Asset Purchase Agreement, the applicable Purchaser shall pay to the applicable contract counterparty the Cure Costs relating to any Assigned Contracts as set forth in the applicable Asset Purchase Agreement within seven (7) days of the applicable

DE:4865-0640-7580.1 96859.001

Closing Date. All portions of the Cure Costs not required to be paid by the applicable Purchaser pursuant to the applicable Asset Purchase Agreement shall be paid to the applicable contract counterparty by the Debtors within seven (7) days of the applicable Closing Date. With respect to the real property identified as R559 at 833 Mellowney Lane, Billings, MT 59101, Debtors shall pay $231,402 of the amount designated in Schedule 1 as "Cure Costs Paid by Debtor" directly to Mid-American Constructors, LLC who shall, within 14 days of receipt and clearance of the funds, discharge its construction lien on the real property. Upon payment of such Cure Costs by Purchaser as provided for herein, the contract counterparties to such Assigned Contracts are hereby enjoined from taking any action against the applicable Purchaser or the Acquired Assets with respect to any claim for cure. For the avoidance of doubt, to the extent provided in the applicable Asset Purchase Agreement, the Purchaser shall maintain its right (i) not to designate such executory contract or unexpired lease for assumption, assignment and sale at any time prior to Closing , (ii) to designate such executory contract or unexpired lease for assumption, assignment and sale at any time prior to Closing or (iii) to adjust the Closing Date Payment based on the amount of the Cure Costs as of Closing.

4.6     At least one (1) day prior to the Closing Date, each Purchaser, with respect to each Asset Purchase Agreement, as applicable, shall provide the Debtors, and the Debtors shall file, schedules of (a) all Assigned Contracts to be assumed, assigned and sold as of the applicable Closing Date, and (b) all Non-Assigned Contracts. Any Contract that is not designated as an Assigned Contract or a Non-Assigned Contract as of the Closing Date shall constitute a Designation Rights Asset under the applicable Asset Purchase Agreement.

4.7     Subject to paragraph 39 of the Bidding Procedures Order, any executory contract or unexpired lease for which there is an unresolved adequate assurance objection or cure

DE:4865-0640-7580.1 96859.001

claim objection shall not be assumed, assigned and sold unless (i) all such objections relating to such contract or lease are withdrawn, (ii) the contract or lease counterparty and applicable Purchaser consents, or (iii) the Court subsequently orders otherwise.

4.8    The rights of each Purchaser to modify the lists of Assigned Contracts and Non-Assigned Contracts after the date of this Order and up to the applicable Designation Deadline, as and to the extent set forth in the applicable Asset Purchase Agreement, are hereby approved and shall survive confirmation of any chapter 11 plan, notwithstanding sections 365(d)(2) and 365(d)(4) or any similar provision of the Bankruptcy Code.  Moreover, with respect to any Designation Rights Asset which is not an Assigned Contract on the applicable Closing Date and provided such Contract has not been rejected by the Debtors after the applicable Closing Date pursuant to section 365 of the Bankruptcy Code, upon written notice(s) from the applicable Purchaser to the Debtors, the Debtors are hereby authorized to take all actions reasonably necessary to assume, assign and sell to the Purchaser pursuant to section 365 of the Bankruptcy Code any such Contract(s) as set forth in such notice(s); provided, that, subject to paragraph 39 of the Bidding Procedures Order, paragraph 7.8 of this Order, and the applicable Asset Purchase Agreement, any determined Cure Cost applicable thereto shall be satisfied solely by the Purchaser. Notwithstanding anything in this Order to the contrary, on the date any such Contract is assumed, assigned and sold to the Purchaser, such Contract shall thereafter be deemed an Acquired Asset for all purposes under this Order and the applicable Asset Purchase Agreement.

4.9    The payment of the applicable Cure Costs (if any) shall effect a cure of all defaults existing as of the date that the applicable Assigned Contracts (under the applicable Asset Purchase Agreement) are assumed and shall compensate for any actual pecuniary loss to such contract counterparty resulting from such default.

DE:4865-0640-7580.1 96859.001

4.10    Pursuant to section 365(f) of the Bankruptcy Code, the assignment and sale by the Debtors to the applicable Purchaser of the applicable Assigned Contracts, in each case under the applicable Asset Purchase Agreement, shall not constitute a default thereunder. After the payment of the relevant Cure Costs as provided for herein and in the applicable Asset Purchase Agreement, the Debtors and the applicable Purchaser shall not have any further liabilities to the contract counterparties to such Assigned Contracts, other than the Purchaser's obligations under such Assigned Contracts that become due and payable on or after the date that such Assigned Contracts are assumed, assigned and sold, including as set forth in Paragraph 4.18 of this Order.

4.11    Any provisions in any Assigned Contracts (as and to the extent applicable under each Asset Purchase Agreement, as applicable) that prohibit or condition the assignment and sale of such Assigned Contracts or allow the party to such Assigned Contracts to terminate, recapture, impose any penalty or condition on renewal or extension, purport to require the consent of any counterparty, or modify any term or condition upon the assignment and sale of such Assigned Contracts constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the assignment and sale of the Assigned Contracts to the applicable Purchaser and all Assigned Contracts shall remain in full force and effect, without existing default(s), subject only to payment by the applicable Purchaser of the appropriate cure amount, if any.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment and sale to the applicable Purchaser of the applicable Assigned Contracts under the applicable Asset Purchase Agreement have been satisfied.

4.12    Subject to Paragraphs 4.19 and 4.20 hereof, any party having the right to consent to the assumption, assignment or sale of any Assigned Contract under any Asset Purchase Agreement that failed to object to such assumption, assignment and/or sale is deemed to have

DE:4865-0640-7580.1 96859.001

consented to such assumption, assignment and sale as required by section 365(c)(1)(B) of the Bankruptcy Code.

4.13    As and to the extent applicable under each Asset Purchase Agreement, as of the date of assignment and sale to the applicable Purchaser, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any liability under such Assigned Contracts arising from and after the assignment and sale.

4.14    With respect to each Asset Purchase Agreement and each Sale, as applicable, all counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the applicable Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale.

4.15    With respect to each Asset Purchase Agreement and each Sale, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the applicable Purchaser any assignment fee, rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date that such Assigned Contracts are assumed, assigned and sold or arising by reason of the Closing.  For the avoidance of doubt, nothing in this paragraph alters any counterparty's entitlement to the Cure Cost determined pursuant to paragraph 39 of the Bidding Procedures Order with respect to its Assigned Contract.

DE:4865-0640-7580.1 96859.001

4.16    Notwithstanding any term of any Assigned Contract (under any Asset Purchase Agreement, as applicable) to the contrary, any extension or renewal options or other rights contained in such Assigned Contract that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by the applicable Purchaser subject to the other applicable terms of the Assigned Contract.  Any extension or renewal options in connection with all Assigned Contracts that the Debtors have sought to exercise prior to the entry of this Order have been timely and validly exercised by the Debtors, and all Assigned Contracts are in full force and effect and have not been previously rejected, and the Debtors' time to assume or reject the Assigned Contracts has not otherwise expired.

4.17    With respect to each Asset Purchase Agreement and each Sale, neither the applicable Purchaser nor any successor of the Purchaser shall be responsible for any Adverse Interests or obligations arising out of any of the executory contracts or unexpired leases that are not assumed, assigned, and sold to the Purchaser (whether at the Closing or prior to the applicable Designation Deadline), except to the extent specifically provided by the applicable Asset Purchase Agreement.

4.18    Notwithstanding anything to the contrary in this Order or the applicable Asset Purchase Agreement, with respect to each Assigned Contract under each Asset Purchase Agreement, from and after the date that such Assigned Contract is assumed, assigned and sold to the applicable Purchaser, the Purchaser shall be responsible for continuing obligations under such Assigned Contract, *cum onere*, including, without limitation, liabilities for any breach of such Assigned Contract occurring after such assumption, assignment and sale and obligations to pay year-end adjustment and reconciliation amounts that become obligations after the entry of this

DE:4865-0640-7580.1 96859.001

Order (irrespective of whether such obligations accrued before, on, or after assumption, assignment and sale of the Assigned Contract), including real property taxes, tax reconciliations, common area charges and insurance premiums, in each case subject to the terms and conditions of the applicable Assigned Contracts, and subject to any defenses provided by such Assigned Contracts and applicable non-bankruptcy law and unless otherwise agreed.

4.19    Notwithstanding anything in this Order to the contrary, to the extent that executory contracts and unexpired leases that were not previously included in the Cure Notice are designated for assumption, assignment and sale after the applicable Closing Date (with respect to each Asset Purchase Agreement, as applicable), the right of counterparties to such applicable contracts and leases to object to the assumption, assignment and sale thereof, including with respect to cure amounts and adequate assurance of future performance, is reserved to the extent set forth in the following paragraph, and the Sellers shall not be authorized to assume, assign and sell such contracts and leases to the applicable Purchaser absent compliance with the following paragraph or further order of the Court.

4.20    In the case of any executory contracts and/or unexpired leases that the Debtors seek to assume, assign and sell pursuant to each Asset Purchase Agreement, as applicable, that were not previously included in the Cure Notice, following receipt of a written notification by the applicable Purchaser (email shall suffice) that an executory contract and/or unexpired lease is designated for assumption, assignment and sale, pursuant to the Order and applicable Asset Purchase Agreement, the Debtors shall file with the Court, subject to paragraph 39 of the Bidding Procedures Order, a written supplemental Cure Notice of the Debtors' intent to assume, assign and sell such executory contract and/or unexpired lease, substantially in the form of the Cure Notice attached as an exhibit to the Bidding Procedures Order (each, a "Supplemental Cure Notice").  The

DE:4865-0640-7580.1 96859.001

Debtors shall serve such Supplemental Cure Notice via electronic first class mail on each of the following parties (the "Supplemental Cure Notice Parties"): (i) each counterparty to any such executory contract and/or unexpired lease (and their known counsel) to be assumed, assigned and sold by the Debtors, (ii) the U.S. Trustee, (iii) counsel to the Committee, (iv) counsel to the applicable Purchaser, and (v) counsel to the Consultation Parties.[4]  The Debtors shall also serve on affected counterparties and their respective known counsel by electronic mail (if available) or overnight mail adequate assurance information for the applicable Purchaser.  The Supplemental Cure Notice shall set forth the following information, to the best of the Debtors' knowledge: (a) the street address of the real property that is the subject of any unexpired lease that the Debtors seek to assume, assign and sell or a description of any executory contract that the Debtors seek to assume, assign and sell, (b) the name and address of the affected counterparties (and their known counsel), (c) a description of the deadlines and procedures for filing objections to the Supplemental Cure Notice, if so permitted as set forth below or in the Bidding Procedures Order, and (d) any proposed cure amounts as of that time.  A party in interest may object to a Supplemental Cure Notice solely with respect (i) to the proposed cure amount contained therein but only to the extent such objection could not have been raised prior to the Cure Objection Deadline, or (ii) adequate assurance of future performance.  Any such objection must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Supplemental Cure Notice Parties no later than fourteen (14) calendar days after the date the Debtors served the applicable Supplemental Cure Notice.  If no permitted objection is timely filed and served with respect to the applicable Supplemental Cure Notice, all non-Debtor parties to such

---

[4]    For the avoidance of doubt, any prepetition secured lender that has since been repaid in full shall not be a Consultation Party.

executory contract and/or unexpired lease shall be deemed to have consented to the cure amount set forth in such supplemental Cure Notice.  If a permitted objection to a Supplemental Cure Notice is timely filed and served on the Supplemental Cure Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled by the Court to consider that objection.  The assumption, assignment and sale of any executory contract and/or unexpired lease set forth in a Supplemental Cure Notice shall be deemed to have occurred as of the date of filing of a Supplemental Cure Notice upon payment of the cure amount, unless otherwise agreed by the relevant counterparty.

**Section 5.**      **Consumer Privacy Provisions**

5.1      With respect to each Asset Purchase Agreement and each Sale, to the extent applicable, the Purchaser shall be bound by and meet the material standards established by the Sellers' privacy policies solely with respect to the personally identifiable information transferred to the Purchaser (as applicable) pursuant to the Asset Purchase Agreement; provided, however, that nothing in this Order shall affect, limit, restrict, prohibit or impair any right to amend or replace the Sellers' privacy policies on a going forward basis with respect to the personally identifiable information transferred to the applicable Purchaser, in accordance with the terms thereof and applicable law.

**Section 6.**      **Secured Party Matters**

6.1      As soon as reasonably practicable and in no event later than ten (10) business days following the applicable Closing Date and in consultation with the Consultation Parties, the Debtors shall deliver or cause to be delivered to the applicable Secured Parties, in satisfaction of the Secured Parties' claims against the Debtors' estates in accordance and consistent with the relative order of claim and lien priorities under the Final DIP Order, the Final UST Cash

Collateral Order, and the Prepetition Intercreditor Agreement, and the other terms and provisions of the Final DIP Order and the Final UST Cash Collateral Order, by wire transfer of immediately available funds, the total proceeds received from the applicable Purchaser upon the Closing of each applicable Sale, net of any Break Up Fee and Expense Reimbursement amounts payable to the Stalking Horse Bidder (each as defined in the Stalking Horse Approval Order[5]) and Other Pre-Distribution Costs (defined below[6]), with such available funds to be distributed by the Debtors to the Secured Parties in the order of priority of the Secured Parties' claim and liens against the Acquired Assets sold until such time as those Secured Parties' claims against the Debtors' estates, as applicable, are paid in full in cash.  Pending distribution of the available funds received by the Debtors from the applicable Purchaser upon the Closing of each applicable Sale, such available funds shall be held in trust by the Debtors for the benefit of the Secured Parties in the Proceeds Account.  No later than five (5) business days prior to the delivery of any such net proceeds pursuant to this Section 6.1, the Debtors shall deliver to the Consultation Parties a statement detailing the net proceeds to be distributed to the respective Secured Parties, the amounts to be received by each intended recipient, and any other information related thereto reasonably requested by the Consultation Parties.

6.2    Except as set forth in this paragraph, nothing in this Order shall impair, modify, or otherwise affect the Carve Out.  The Debtors are authorized, without further notice or relief from this Court, to take any and all actions that are necessary or appropriate in the exercise of their business judgment to fund the Carve Out in accordance with the Final DIP Order and the

---

[5]    "Stalking Horse Approval Order" means the *Order Approving the Debtors' Selection of A Stalking Horse Bidder, (II) Approving Bid Protections in Connection Therewith, and (III) Granting Related Relief* [Docket No. 624].

[6]    "Other Pre-Distribution Costs" means any and all costs associated with or arising from the applicable Sale Transaction, including, without limitation, due and payable taxes, investment banker fees, and lease and related costs associated with the Initial Properties in advance of their being turned over to the applicable Purchaser.

DE:4865-0640-7580.1 96859.001

Final UST Cash Collateral Order, including making or authorizing the payments contemplated in connection therewith.  The Carve Out shall not constitute property of the Debtors' estates or be subject to claw back or disgorgement, and such funds (including any residual funds) may be released and applied in accordance with the terms of the Final DIP Order.  Nothing in this Order affects the priorities set forth in the Final DIP Order and the Final UST Cash Collateral Order, including with respect to professional fees and expenses incurred by the Debtors' and the Committee's retained professionals.

6.3     In the event that any person or entity receives any payment on account of an Adverse Interest that is inconsistent with the relative order of lien priorities under the Final DIP Order, the Final UST Cash Collateral Order, and the Prepetition Intercreditor Agreement, such person or entity shall be deemed to have received, and shall hold, any such payment in trust for the benefit of the proper recipient and shall immediately turn over such proceeds to the Debtors for the Debtors to make a corrective distribution, or as otherwise instructed by this Court.

6.4     For the avoidance of doubt, nothing in this Sale Order or any applicable Asset Purchase Agreement shall prejudice the rights of the Committee as set forth in the *Stipulation Extending the Committee's Challenge Periods* [Docket No. 1234-1].

**Section 7.     <u>Additional Provisions</u>**

7.1     <u>Stay Relief</u>. The automatic stay pursuant to section 362 is hereby lifted to the extent necessary, without further order of this Court, to (i) allow each applicable Purchaser to deliver any notice provided for in the applicable Asset Purchase Agreement and any ancillary documents and (ii) allow such Purchaser to take any and all actions permitted under this Order, the Asset Purchase Agreement and any ancillary documents in accordance with the terms and conditions thereof.

7.2    <u>Bulk Transfer Laws</u>. Each of the Sellers and the Purchasers hereby waive, and shall be deemed to waive, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

7.3    <u>Non-Interference</u>. Following the Closing Date (in each case as applicable pursuant to the terms and provisions of each Asset Purchase Agreement), no holder of an Adverse Interest in or against the Debtors or the Acquired Assets, nor any other person or entity, shall interfere with the applicable Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Adverse Interest or any actions that the Debtors or their successors, including any chapter 11 or chapter 7 trustee, has taken or may take in these Chapter 11 Cases or any successor chapter 7 cases.

7.4    <u>Authorization</u>.  The Debtors, including their respective officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of each Asset Purchase Agreement and this Order.  The Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of each Asset Purchase Agreement, this Order and the relief granted pursuant to this Order.

7.5    <u>Good Faith</u>.  The Sale contemplated by each Asset Purchase Agreement is undertaken by the applicable Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal, modification or vacatur on appeal of the authorization provided herein to consummate the Sale shall not affect the validity or enforceability of the Sale (including, for the avoidance of doubt, the assumption, assignment and sale to the Purchaser of the Assumed Contracts and the Sale of the Acquired Assets free and

clear of all Adverse Interests (unless otherwise assumed under, or permitted by, the Asset Purchase Agreement)), or the obligations or rights granted pursuant to the terms of this Order, unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal. The Purchaser under each Asset Purchase Agreement is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.  The Purchaser has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Acquired Assets, and therefore the sale of the Acquired Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code or other applicable law or statute.

7.6     Certain Provision Relating to Police or Regulatory Enforcement.  Nothing in this Order or is any Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner, lessee, or operator of property after the date of entry of this Order. Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, (e) certification, or (f) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

7.7     Provision Regarding Chubb. Notwithstanding anything to the contrary in this Order, the Motion, any of Asset Purchase Agreements, the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, any Cure Notice, any Supplemental Cure Notice, any notice or list of Assigned Contracts and/or Cure Costs, the Stalking

DE:4865-0640-7580.1 96859.001

Horse Approval Order, or any documents relating to any of the foregoing, (a) nothing shall permit or otherwise effectuate a sale, assumption, assignment or any other transfer to any Purchaser at this time of (i) any insurance policies that have been issued by ACE American Insurance Company, ACE Property and Casualty Insurance Company, Westchester Surplus Lines Insurance Company, Indemnity Insurance Company of North America, Insurance Company of North America, Illinois Union Insurance Company, Bankers Standard Insurance Company, Federal Insurance Company, Executive Risk Indemnity Inc., Executive Risk Specialty Insurance Company, Great Northern Insurance Company, and/or any of their U.S.-based affiliates and/or any predecessors and successors of any of the foregoing (collectively, and solely in their capacities as insurers under the foregoing policies, the "Chubb Companies") to, or pursuant to which coverage is provided to, any of the Debtors (or their affiliates or predecessors) at any time, and all agreements, documents or instruments relating to such policies, including, without limitation, any collateral or security provided by or on behalf of any of the Debtors (or their affiliates or predecessors) to any of the Chubb Companies and the proceeds thereof (collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related to such Chubb Insurance Contracts including, without limitation, any of the Chubb Companies' indemnity, subrogation, setoff, recoupment, and/or other rights; (b) the Chubb Insurance Contracts and any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related to such Chubb Insurance Contracts (i) are not and shall not be deemed to be Assigned Contracts, Seller Support Obligations, Acquired Assets, or a portion of any of the Acquired Assets sold, assigned or otherwise transferred as part of any of the Sales hereunder, and (ii) shall be deemed to be Excluded Assets; (c) nothing shall alter, modify or otherwise amend the terms, conditions, rights, and/or obligations of and/or under the Chubb

53

Insurance Contracts; (d) for the avoidance of doubt, the Purchasers are not, and shall not be deemed to be, insureds under any of the Chubb Insurance Contracts; *provided*, *however*, that, to the extent any claim with respect to the Acquired Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Purchasers any such insurance proceeds (each, a "Proceed Turnover"), *provided*, *further*, *however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover; (e) nothing shall permit or otherwise effectuate a sale, assumption, assignment, or any other transfer at this time to any Purchaser of (i) any surety bond issued by Westchester Fire Insurance Company ("Westchester") on behalf of any Debtor, or its affiliate and/or predecessor (the "Westchester Bonds"), (ii) any indemnity agreement, collateral agreement and/or other related agreement to the Westchester Bonds between Westchester and any Debtor, or its affiliate and/or predecessor, (iii) any Westchester collateral, including, without limitation, cash, letters of credit and/or the proceeds of collateral; (iv) any of Westchester's indemnity, subrogation, setoff, recoupment, and/or surety rights (together with item (iii), the "Westchester Security"); or (v) any agreements governing the Westchester Security (collectively with items (i), (ii), (iii), and (iv), the "Westchester Bond Agreements"); (f) for the avoidance of doubt the Westchester Bond Agreements shall not constitute Acquired Assets, Assigned Contracts, or Seller Support Obligations; and (g) nothing shall alter, modify, or otherwise amend the terms, rights, or obligations under the Westchester Bond Agreements and specifically, but without limiting the generality of this clause (g), nothing shall permit or otherwise allow the substitution of any of the Purchasers as principal under any of the Westchester Bonds.

DE:4865-0640-7580.1 96859.001

7.8     Provision Regarding Certain Leased Properties.  Upon entry of this Order, the Debtors shall place into escrow the amount of any disputed Cure Costs relating to the Leased Properties constituting Acquired Assets as provided in the "Disputed Cure Costs" column of **Schedule 1** attached hereto, which amount shall be kept in escrow pending either resolution regarding the amount of such Cure Costs by the Debtors and the applicable contract counterparty or further order of the Court; *provided*, that any such disputed Cure Costs kept in escrow shall not constitute a cap on the amount of Cure Costs or other amounts to which such applicable contract counterparty may be entitled to under section 365 of the Bankruptcy Code and that such applicable contract counterparty may seek or be entitled to be paid; provided further, that with respect to the Leased Properties constituting Acquired Assets for which there are disputed Cure Costs kept in escrow (i) all parties' rights are reserved with respect to the amount, validity, and obligation of the Debtors to pay such disputed Cure Costs and other amounts necessary to permit assumption and assignment of the applicable unexpired lease and (ii) either the Debtors and/or the applicable contract counterparty may file a motion with the Court with requisite notice requesting a hearing to determine the amount of such Cure Costs relating to the Leased Properties constituting Acquired Assets.

7.9     Provision Regarding Knight-Swift Purchaser. Notwithstanding anything to the contrary in the Sale Order, the Acquired Assets (including the Acquired Real Property) under that certain Asset Purchase Agreement with Knight-Swift Transportation Holdings Inc. ("Knight"), filed at Docket No. [1586] (the "Knight Asset Purchase Agreement"), shall be transferred subject to certain provisions of the Knight Asset Purchase Agreement: (i) the Acquired Assets shall include all preference and avoidance claims and causes of action as provided for in Section 1.1(e) of the Knight Asset Purchase Agreement; (ii) Sellers shall not enter into any new

Contract related to the Acquired Assets pursuant to Section 6.1 of the Knight Asset Purchase Agreement; (iii) Sellers shall maintain all insurance policies in effect as to the Acquired Assets pursuant to Section 6.9 of the Knight Asset Purchase Agreement; (iv) Sellers' obligation to remove Rolling Stock shall be governed by Section 6.13 of the Knight Asset Purchase Agreement; (v) for the avoidance of doubt, Knight shall not be required to file income tax returns for the Acquired Assets pursuant to Section 9.4(b) of the Knight Asset Purchase Agreement; (vi) the definition of "Contract" from the Knight Asset Purchase Agreement shall apply in all respects; (vii) the definition of "Permitted Encumbrances" from the Knight Asset Purchase Agreement shall apply in all respects; and (viii) Knight's obligation to pay Cure Costs as part of the Assumed Liabilities shall be governed by Section 1.3(b) of the Knight Asset Purchase Agreement in all respects, and, upon payment of such Cure Costs by Knight as provided for in Section 1.3(b) of the Knight Asset Purchase Agreement, the contract counterparties to such Assigned Contracts and Assumed Leases are hereby enjoined from taking any action against Knight or the Acquired Assets with respect to any cure claim.

   7.10 <u>Provision Regarding Agent.</u> For the avoidance of doubt, notwithstanding anything in the applicable Asset Purchase Agreement or this Order to the contrary, nothing herein shall or is intended to impair the rights afforded to Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and IronPlanet Canada Ltd. as set forth in the *Order (I) Approving Agency Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., IronPlanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and IronPlanet Canada Ltd. Effective as of October 16, 2023; (II) Authorizing the Sale of Rolling Stock Assets Free and Clear of Liens, Claims, Interests and Encumbrances; and (III) Granting Related Relief* [Docket No. 981] or the Agency Agreement approved thereunder.

7.11    <u>Provision Regarding the 833 Mellowney Lane, Billings, MT Lease</u>.  With respect to the 833 Mellowney Lane, Billings, MT Lease Agreement dated October 1, 2010, as amended, supplemented or modified (the "<u>Billings Lease</u>") and  the SAIA APA, after the Closing Date (as defined in the SAIA APA), Purchaser shall comply with its obligations under the Billings Lease in their entirety, including, but not limited to any indemnification obligations the responsibility of Purchaser as set forth herein or in the SAIA APA and expressly contained in the Billings Lease.  In addition, pursuant to the Billings Lease and to the extent set forth herein or in the SAIA APA, the Debtors (and not Purchaser) shall be responsible for any additional Cure Costs (as defined in the SAIA APA) that become due and payable through the Closing Date; *provided* (i) that all rights and defenses of Debtors with respect to any additional Cure Costs are expressly preserved and (ii) that the allocation of responsibility for additional Cure Costs as set forth in the SAIA APA shall not be adversely affected by the assumption of the Kestrel Lease by Purchaser.  As required by section 365(d)(3) of the Bankruptcy Code, the Debtors shall continue to timely perform all obligations under the Billings Lease until the Billings Lease is assumed and assigned.

7.12    <u>Provision Regarding the 7180 Kestrel Drive, Missoula, MT Lease</u>.  With respect to the 7180 Kestrel Drive, Missoula, MT Lease Agreement dated August 13, 2010, as amended, supplemented or modified (the "<u>Kestrel Lease</u>") and the SAIA APA, after the Closing Date (as defined in the SAIA APA), Purchaser shall comply with its obligations under the Kestrel Lease in their entirety, including, but not limited to any indemnification obligations the responsibility of Purchaser as set forth herein or in the SAIA APA and expressly contained in the Kestrel Lease.  In addition, pursuant to the Kestrel Lease and to the extent set forth herein or in the SAIA APA, the Debtors (and not Purchaser) shall be responsible for any additional Cure Costs (as defined in the SAIA APA) that become due and payable through the Closing Date; *provided*

(i) that all rights and defenses of Debtors with respect to any additional Cure Costs are expressly preserved and (ii) that the allocation of responsibility for additional Cure Costs as set forth in the SAIA APA shall not be adversely affected by the assumption of the Kestrel Lease by Purchaser. As required by section 365(d)(3) of the Bankruptcy Code, the Debtors shall continue to timely perform all obligations under the Kestrel Lease until the Kestrel Lease is assumed and assigned.

7.13    Provision Regarding the 2200 N Batavia Street, Orange, CA 92865 Lease. Notwithstanding anything to the contrary in this Order or the applicable Asset Purchase Agreement, and for the avoidance of doubt, Debtors' assumption and assignment of the Orange, California lease ("Orange Lease") with Orange Batavia I, LLC to Saia Motor Freight Line, LLC ("SMFL") shall be subject to and not "free and clear" of any accrued but unknown nonmonetary liabilities, and unmatured, contingent obligations and covenants of the Orange Lease not constituting a default or event of default (with or without notice or lapse of time) under the Orange Lease as of the Closing Date, including, without limitation, indemnification, repair, restoration and environmental liabilities; *provided*, that, the Debtors (and not SMFL) shall be responsible for any additional Cure Costs (as defined in the Asset Purchase Agreement) that become due and payable through the Closing Date; provided, further that any rights and defenses of the Debtors with respect to any additional Cure Costs are fully preserved.  Saia's assumption of these liabilities, obligation and covenants under the Orange Lease shall remain subject to any conditions of, and defenses provided by, the Orange Lease and applicable non-bankruptcy law.

7.14    Cooperation.  From time to time, as and when requested by any party, each party to each Asset Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate

58

the Sale, including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in the Purchaser its right, title and interest in and to the Acquired Assets.

7.15    Scope of Approval.   The failure specifically to include any particular provisions of the Asset Purchase Agreements, including any of the documents, agreements, or instruments executed in connection therewith, in this Order shall not diminish or impair the efficacy, approval, or effectiveness of such provision, document, agreement, or instrument, it being the intent of this Court that each Asset Purchase Agreement and each such document, agreement or instrument be authorized and approved in its entirety, except as otherwise specifically set forth herein.

7.16    Post-Closing Claims Administration.   After the applicable Closing Date: (a) neither the Debtors nor any successor in interest, including any chapter 11 or chapter 7 trustee in these Chapter 11 Cases or any successor chapter 7 cases, shall consent or agree to the allowance of any claim to the extent it would constitute an Assumed Liability (as applicable) or Permitted Encumbrance (as applicable) without the prior written consent of the applicable Purchaser; and (b) such Purchaser shall have standing to object to any claim against the Debtors and their estates to the extent that, if allowed, it would constitute an Assumed Liability or Permitted Encumbrance, and the Court will retain jurisdiction to hear and determine any such objections.

7.17    Notice of Sale Closing. Within three (3) Business Days of the occurrence of the Closing of each applicable Sale, the Debtors shall file and serve a notice of the closing of such Sale.

7.18    Computations of Time-Periods.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

DE:4865-0640-7580.1 96859.001

7.19    Order Governs in Event of Inconsistencies.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall govern.  To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreements (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

7.20    Modifications.  The parties to the Asset Purchase Agreements, in each case as applicable, may make any non-material modifications, amendments or supplements to such agreement and to any related agreements, documents or other instruments in accordance with the terms thereof without further order of this Court.

7.21    Non-Severability.  The provisions of this Order as applies to each applicable Purchaser for each applicable Asset Purchase Agreement are nonseverable and mutually dependent.

7.22    No Stay.   Notwithstanding the provisions of the Bankruptcy Rules, including Bankruptcy Rules 6004(h), 6006(d), and 7062, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is waived and shall not apply.

7.23    Retention of Jurisdiction.  This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and each of the Asset Purchase Agreements, and all amendments thereto any waivers and consents thereunder, and of each of the agreements executed in connection therewith to which the Debtors are a party or which have been assigned by the Debtors to the applicable Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

DE:4865-0640-7580.1 96859.001

## Schedule 1

**Asset Purchase Agreements**

**Schedule 1 – Winning Bidders**

| Winning Bidder | Asset Purchase Agreement | Purchase Price | Real Property (Address/Site #) | | APA Docket No. | Cure Costs Paid By Buyer | Cure Costs Included In Purchase Price | Cure Costs Paid by Debtor | Disputed Cure Costs |
|---|---|---|---|---|---|---|---|---|---|
| Estes Express Lines | *Asset Purchase Agreement Dated as of January 4, 2024, 2023 by and among Estes Express Lines, as Purchaser, and Yellow Corporation and its Subsidiaries Named Therein, as Sellers* | $ 35,347,782 | 1. 11266 & 11300 Peoria Street, Sun Valley, CA 91352 | Y661 | Docket No. 1599 | $72,246 | - | - | $7,221 |
| | | | 2. 802 E 11th Street, Tacoma, WA 98421 | R880 | | $577,545 | - | - | - |
| | | | 3. 1650 Kleppe Lane, Sparks, NV 89431 | Y819 | | $614,087 | - | - | - |
| | | | 4. 8125 Old Highway Road North, St. Cloud, MN 56301 | Y346 | | $12,440 | - | - | - |
| | | | 5. 4931 South Hydraulic Avenue, Wichita, KS 67216 | Y569 | | $269,131 | - | - | - |
| FedEx Freight, Inc. | *Asset Purchase Agreement Dated as of January 2, 2024 by and among FedEx Freight, Inc., as Purchaser, and Yellow Corporation and its Subsidiaries Named Therein, as Sellers* | $ 22,469,000 | 1. 1875 Industrial Way, Sparks, NV 89431 | R760 | Docket No. 1562 | - | $66,316 | - | $1,625,900 |
| Greenwood Motor Lines, Inc. | *Asset Purchase Agreement Dated as of January 5, 2024 by and* | $ 8,983,750 | 1. 2100 Rochester Drive, Montgomery, IL 60538 | Y304 | Docket No. 1625 | $429,144 | - | - | - |

| Winning Bidder | Asset Purchase Agreement | Purchase Price | Real Property (Address/Site #) | APA Docket No. | Cure Costs Paid By Buyer | Cure Costs Included In Purchase Price | Cure Costs Paid by Debtor | Disputed Cure Costs |
|---|---|---|---|---|---|---|---|---|
| | *among Greenwood Motor Lines, Inc., as Purchaser, and Yellow Corporation and its Subsidiaries Named Therein, as Sellers* | | 2. 9900 E 102nd Avenue, Commerce City, CO 80640          R589 | | $48,610 | - | - | - |
| | | | 3. 3901 East Broadway, Spokane, WA 99202          R915 | | - | $28,642 | - | $47,621 |

2

| Winning Bidder | Asset Purchase Agreement | Purchase Price | Real Property (Address/Site #) | | APA Docket No. | Cure Costs Paid By Buyer | Cure Costs Included In Purchase Price | Cure Costs Paid by Debtor | Disputed Cure Costs |
|---|---|---|---|---|---|---|---|---|---|
| Saia Motor Freight Line, LLC | *Asset Purchase Agreement Dated as of December 30, 2023 by and among Saia Motor Freight Line, LLC, as Purchaser, and Yellow Corporation and its Subsidiaries Named Therein, as Sellers* | $ 7,923,796 | 1. 2200 N Batavia Street, Orange, CA 92865 | R575 | Docket No. 1560 | $90,000 | - | -[1] | - |
| | | | 2. 7180 Kestrel Drive, Missoula, MT 59808 | R633 | | $215,957 | - | $3,336 | - |
| | | | 3. 625 N 1400 East, St. George, UT 84770 | Y865 | | $15,957 | - | - | - |
| | | | 4. 833 Mellowney Lane, Billings, MT 59101 | R559 | | $413,109 | - | $257,252 | - |
| | | | 5. 122005 W Browns Gulch Road, Butte, MT 59701 | Y604 | | $3,204 | - | - | - |
| | | | 6. 2615 Lockheed Avenue, Watertown, SD 57201 | Y668 | | $2,756 | - | - | - |
| | | | 7. 900 E Omaha Street, Rapid City, SD 57701 | Y614 | | $3,795 | - | - | - |
| | | | 8. 62 Copper Avenue, Evansville, WY 82636 | Y629 | | $4,368 | - | - | - |
| | | | 9. 1955 Hancock Drive, Bismarck, ND 58501 | Y602 | | $3,200 | - | - | - |
| | | | 10. 101 Lexington Avenue, Suite 4, Cheyenne, WY 82007 | Y607 | | $3,450 | - | - | - |

---

[1] Additional Cure Costs incurred through Closing (including reasonable and documented attorneys' fees) in amount to be agreed. *See* para. 7.13 of Sale Order.

DE:4868-2668-2012.1 96859.001

| Winning Bidder | Asset Purchase Agreement | Purchase Price | Real Property (Address/Site #) | | APA Docket No. | Cure Costs Paid By Buyer | Cure Costs Included In Purchase Price | Cure Costs Paid by Debtor | Disputed Cure Costs |
|---|---|---|---|---|---|---|---|---|---|
| | | | 11. 4650 E Cheyenne Road, Las Vegas, NV 89115 | ROVH - LV | | - | - | $45,410 | - |
| ArcBest Property Management, LLC | *Asset Purchase Agreement Dated as of January 2, 2024 by and among ArcBest Property Management,LLC , as Purchaser, and Yellow Corporation and its Subsidiaries Named Therein, as Sellers* | $ 7,751,219 | 1. 2527 Brodhead Road, Bethlehem, PA 18017 | Y158 | Docket No. 1561 | - | $43,931 | - | $981,455 |
| Knight-Swift Transportation Holdings, Inc. | *Asset Purchase Agreement Dated as of January 2, 2024 by and among Knight-Swift Transportation Holdings, Inc., as Purchaser, and Yellow Corporation and its Subsidiaries Named Therein, as Sellers* | $417,150 | 1. 4169 N Park Trail, Great Falls, MT 59405<br><br>2. 5537 Enterprise Drive, E Wenatchee, WA 98802 | R610<br><br>R554 | Docket No. 1586 | $2,544<br><br>$6,506 | -<br><br>- | -<br><br>- | -<br><br>- |

DE:4868-2668-2012.1 96859.001