IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| Debtors. | ) (Jointly Administered) |

Hearing Date: February 14, 2024 at 10:00 a.m. (ET)

## LIMITED RESPONSE OF THE PENSION BENEFIT GUARANTY CORPORATION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE ABANDONMENT AND DESTRUCTION OF CERTAIN DOCUMENTS AND RECORDS

The Pension Benefit Guaranty Corporation ("PBGC") files this limited objection to the Debtors' Motion for Entry of an Order Authorizing the Abandonment and Destruction of Certain Documents and Records ("Motion") (Dkt. No. 2000).

### I.  STATUTORY BACKGROUND

1. PBGC is a wholly owned United States government corporation, and an agency of the United States, that administers the defined benefit pension plan insurance program under Title IV the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1301-1461 (2018 & Supp. III 2021).  Under Title IV, PBGC insures the payment of pension benefits under both single-employer and multiemployer pension plans, subject to statutory limits.[2]  PBGC protects the retirement security of over 31 million American workers and retirees and their beneficiaries.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.
[2] 29 U.S.C. §§ 1322, 1322a.

1

2. ERISA provides the exclusive means for a plan sponsor to terminate a pension plan covered under Title IV – *i.e.,* a standard termination or a distress termination.[3] In a standard termination, the pension plan has sufficient assets to pay all benefits promised under the plan.[4] A plan sponsor can apply for a distress termination where certain financial distress criteria are met.[5] Separate from a standard or distress termination, PBGC can initiate termination of a pension plan pursuant to section 4042 of ERISA.

3. When a pension plan covered by Title IV terminates without sufficient assets to pay promised benefits, PBGC typically becomes the statutory trustee of the plan and pays to the employees participating in that pension plan their pension benefits up to the limits established by Title IV.[6]

4. Generally, when PBGC takes over a pension plan as statutory trustee, it, among other things, (i) collects, reviews, and analyzes all pension plan documents and employee records; (ii) calculates and pays each participant's pension benefit pursuant to the pension plan's terms and to ERISA's statutory limits; and (iii) determines and pursues, if necessary, any fiduciary breaches with respect to the plan.

5. Until a pension plan is terminated, however, a Plan Sponsor must continue administering that pension plan, even following a declaration of bankruptcy. Specifically, 11 U.S.C. § 521(a)(7) requires that a debtor must continue to perform the obligations required of the administrator of an employee benefit plan if the debtor, or an entity designated by the debtor, served as such administrator at the time of the commencement of the case. Under Title IV of

---

[3] *See* 29 U.S.C. § 1341(a)(1); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999).
[4] *See* 29 U.S.C. § 1341(b).
[5] *See* 29 U.S.C. § 1341(c).
[6] *See* 29 U.S.C. §§ 1321, 1322, and 1361.

ERISA, PBGC is one of the agencies tasked with investigating whether those fiduciary duties are upheld.

## II.  FACTS

6.  Yellow Corporation ("Yellow") sponsors and administers three single-employer defined-benefit plans for approximately 4,383 participants. The plans are: (a) the Yellow Corporation Pension Plan, (b) the Yellow Retirement Pension Plan, and (c) the Roadway LLC Pension Plan (collectively, the "Pension Plans").

7.  Each of the Pension Plans are covered by the federal pension plan insurance programs established under Title IV of ERISA.

8.  On August 6, 2023, Yellow and each of the additional above-captioned Debtors commenced a bankruptcy case by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy").

9.  Since commencement of the Bankruptcy, counsel for PBGC has met with counsel for Debtors on multiple occasions and has informed Debtors of their continuing duties to maintain the Pension Plans, which includes a duty to preserve all documents and records related to the Pension Plans.

10.  Because PBGC's investigation is ongoing and Yellow remains as sponsor of the Pension Plans, PBGC does not yet know how the Plan Sponsor and the Debtors have fulfilled their obligations relating to the Pension Plans.

11.  Despite multiple inquiries from PBGC, Debtors have not confirmed how they will seek to terminate the Pension Plans. But, as this Court is aware, the Court-approved stalking horse's asset purchase agreement does not assume the Pension Plans.  Although PBGC's investigation of the Pension Plans is ongoing, their eventual termination and trusteeship by

3

PBGC is likely. If the Pension Plans are to terminate, Debtors' former employees who were participants in the Pension Plans will look to PBGC for the payment of their pension benefits.

12. On January 31, 2024, the Debtors filed the Motion stating their intention to destroy, cause to be destroyed, or abandon approximately 43,000 boxes of hard copy records that are either on the premises that have been or will be sold (or abandoned) by the Debtors or otherwise in long-term storage at Iron Mountain.

13. The Motion is silent as to whether the records of the Pension Plans or employee records of Pension Plans' participants and beneficiaries are included within those hard copy records. Although Debtors assured PBGC in prior conversation that they did not intend to destroy Pension Plan records before plan termination, several statements in the Motion raise concerns. For example, Debtors state that the documents and records "cover a wide range of materials related to the Debtors' prior trucking business, including employee records going back decades that contain Personally Identifiable Information ('PII') and other personal information of employees that either left the company years ago or were laid off shortly before the bankruptcy case . . . ." (Dkt. No. 2000 at ¶1). Furthermore, Debtors say that they are altogether unaware of the contents of some of the records, stating that "[c]ertain of the boxes of Documents and Records on the Debtors' premises at the time of the sales were packed with limited manpower and in no particular order by outgoing employees. Most if not all of those with detailed knowledge of the contents of the boxes have ceased employment with the Debtor." (*Id.* at ¶ 8).

14. On February 5, 2024, PBGC contacted counsel for Debtors for confirmation that Yellow intended to fulfill its fiduciary duty to the Pension Plans by ensuring that no Pension Plan records would be destroyed pursuant to the Order requested by the Motion. In response to PBGC's inquiry, counsel for Debtors responded by sending Excel spreadsheets containing the

index for the documents stored at Iron Mountain and stating "the Debtors don't believe any of these documents would be relevant to claims under the defined benefit pension plans." Despite further clarification from PBGC regarding its concerns, Debtors' counsel would not confirm their intentions with respect to the Pension Plans' records.

15. Debtors' response to PBGC's inquiry raised additional concerns. Although PBGC did not review Debtors' entire voluminous spreadsheet, certain entries in the indexes appeared to identify documents that might contain Pension Plan records. For example, the indexes list approximately fifty boxes labeled "Employee Benefit Files," approximately fourteen boxes labeled "Pension Lump Sums," and approximately eight boxes labeled "Inactive Retirees." Furthermore, the Motion indicates that the index is not a comprehensive list of all documents slated for destruction. Most concerning is Debtors' refusal to acknowledge their continuing duty to the Pension Plans or to confirm that any steps had been taken to preserve documents.

### III.   ARGUMENT

16. PBGC objects to the Motion to the extent the Debtors are requesting authorization to abandon or destroy any records relating to the Pension Plans or employee records of Pension Plans' participants and beneficiaries. Such records may include, but are not limited to, Pension Plan governing documents, actuarial documents, personnel and employment records of Pension Plans' participants, service provider agreements and invoices, Pension Plan asset statements, and insurance (fiduciary, directors, officers). Upon termination of the Pension Plans, these records will be necessary, among other things, to calculate the benefits of participants of the Pension Plans and to ensure the proper use of the Pension Plans' assets.

17. As stated above, PBGC's investigation of the Pension Plans is ongoing. In the likely event that the Pension Plans are terminated, however, PBGC will become the statutory

trustee of the Pension Plans and will have all of the rights and powers of a trustee specified in ERISA or otherwise granted by law with respect to the Pension Plans. For example, PBGC will have the statutory authority to require the plan sponsor and any contributing employer (i) transfer all assets and records of the Pension Plans to PBGC and (ii) furnish any information with respect to the Pension Plans that PBGC may reasonably need to take over the Pension Plans.[7]

18. As the Pension Plans' statutory trustee, PBGC will also become responsible for paying benefits under the Pension Plans.[8] Consequently, preservation and retention of records of the Pension Plans and employee records of Pension Plans' participants are essential to enable PBGC to calculate and pay benefits to the Pension Plans' participants and beneficiaries.

19. Even if PBGC does not terminate and trustee the Pension Plans, the Plan Sponsor and the Debtors are statutorily required to retain certain Pension Plan records for the benefit of Pension Plans' participants and beneficiaries.[9] For example, any information used in preparing any reports on the Pension Plans must be maintained for a period of not less than six years from the date the report was filed.[10]

20. The authority cited by Debtors does not support the destruction of any Pension Plan records. All three cited decisions specifically authorizing the destruction of records did not involve discussion of pension plan records and were decided during the final stages of those bankruptcies. Debtors have cited no authority which allows them to potentially destroy Pension Plan records in the early stages of an ongoing bankruptcy.

---

[7] *See* 29 U.S.C. § 1342(d)(1)(A)(ii), (vii).
[8] *See* 29 U.S.C. §§ 1321, 1322, and 1361.
[9] *See* 29 U.S.C. §§ 1027, 1059.
[10] *See* 29 U.S.C. § 1027.

21. As stated above, the Bankruptcy Code places a continuing duty on Debtors to maintain their Pension Plans. Any records related to the Pension Plans may be relevant to PBGC's ongoing investigation of the Pension Plans. Finally, any premature destruction of Pension Plan records which harms plan participants may amount to breach of fiduciary duty, therefore incurring additional costs for the estate and its professionals.

22. PBGC has communicated its concerns regarding the Motion to Debtors' counsel. PBGC hopes that Debtors' counsel will provide assurances that no Pension Plan records will be destroyed, but PBGC files this objection as a protective measure in case no resolution is reached.

## CONCLUSION

For the foregoing reasons, PBGC respectfully requests that the Court order the Debtors to store and preserve any records of the Pension Plans and employee records of the Pension Plans' participants until the Pension Plans are terminated and such records are transmitted to PBGC.

Dated: February 7, 2024
Washington, D.C.

Respectfully submitted,

/s/ Andrew Philip Walker
KAREN L. MORRIS
General Counsel
KARTAR S. KHALSA
Deputy General Counsel
STEPHANIE THOMAS
Assistant General Counsels
ANDREW PHILIP WALKER
DESIREE M. AMADOR
REBECCA L. STARK
Attorneys
Office of the General Counsel
**PENSION BENEFIT GUARANTY CORPORATION**
445 12th Street, SW
Washington, D.C. 20024
Telephone: (202) 229-6863
Emails: Walker.Andrew@pbgc.gov and efile@pbgc.gov