**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' OMNIBUS MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME
CERTAIN UNEXPIRED LEASES AND (II) GRANTING RELATED RELIEF**

> **PARTIES RECEIVING THIS OMNIBUS MOTION SHOULD LOCATE THEIR NAMES AND THEIR LEASES ON THE SCHEDULE ATTACHED AS EXHIBIT 1 TO EXHIBIT A ATTACHED HERETO TO DETERMINE IF THIS MOTION AFFECTS THEIR LEASE OR THEIR RIGHTS THEREUNDER**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

**Relief Requested**

1. The Debtors seek entry of an order (the "Order") pursuant to section 365(d)(4) of the Bankruptcy Code (as defined herein), substantially in the form attached hereto as **Exhibit A**: (a) authorizing the Debtors to assume certain nonresidential real property agreements, set forth in Exhibit 1 to **Exhibit A** attached hereto (collectively, the "Leases"), to the extent such agreements

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"). Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration, as applicable.

are subject to section 365 of the Bankruptcy Code (as defined herein); and (b) granting related relief.  In support of this motion, the Debtors respectfully state as follows:[3]

## Jurisdiction

2.     The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory bases for the relief requested herein are sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 6006(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[3]   A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration").  Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration or the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignments of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order"), as applicable.

**Background**

5. On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169]. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee"). No trustee or examiner has been appointed in these chapter 11 cases.

6. On September 15, 2023, the Court entered the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Lease; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order").

7. On October 26, 2023 the Debtors filed that certain *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated With the Non-Rolling Stock Assets* [Docket No. 968] (the "Cure Notice").

8. On November 13, 2023, the Court entered the *Order, Pursuant to Section 365(d)(4) of the Bankruptcy Code, Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* [Docket No. 1127] (the "Extension Order"). The Extension Order extended the date by which the Debtors must assume their unexpired, nonresidential real property leases to avoid

3

automatic rejection under section 365(d)(4) of the Bankruptcy Code to March 4, 2024 (the "Section 365(d)(4) Deadline").

## The Leases

9. Since the Petition Date, the Debtors have continued their robust marketing and sale efforts to capitalize on the value of their assets for the benefit of all stakeholders. These efforts have been overwhelmingly successful. Indeed, as of the filing of this motion, the Debtors have consummated 17 sale transactions, comprised of 118 owned real properties and 25 leasehold interests, totaling nearly $1.9 billion. An additional 6 sale transactions are expected to close in coming weeks, comprised of 10 owned real properties and 1 leasehold interest, totaling $71.6 million. From the proceeds generated by these sales, the Debtors were able to pay off *all* prepetition secured debt and *all* postpetition debtor-in-possession financing, while still maintaining approximately $300 million cash on hand. Critical to the Debtors' continued monetization and disposition of their assets are their numerous unexpired nonresidential real property leases.

10. Given the Debtors' extensive portfolio of unexpired leases, the decision whether to assume or reject any particular unexpired lease takes time to determine. The Debtors' decision to assume or reject any particular unexpired lease depends on a number of different factors, including an assessment as to whether the terms of such unexpired lease are commensurate with the local market and are consistent with their overall sale objectives. Further, once the Debtors make the determination that any such unexpired lease will bring more value to their estates to assume, and subsequently assign through the marketing process, than to reject an unexpired lease, the Debtors must conduct a time-intensive marketing process to sell, sublease, or otherwise generate value from the unexpired lease.

11. The Debtors and their advisors spent significant time since entry of the Extension Order determining which unexpired leases will bring value to their estates through assumption, and subsequent assignment, of such unexpired lease. As a result of this analysis, the Debtors seek to assume approximately 78 unexpired Leases pursuant to this motion. Following assumption of the Leases, the Debtors will continue to strategically market the Leases, some of which are already subject to pending bids, in order to maximize the value of the Leases for the benefit of all stakeholders.

## Basis for Relief

### I. Assumption of the Leases Reflects a Sound Exercise of the Debtors' Reasonable Business Judgment.

12. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume or reject an executory contract or unexpired lease is a matter within the debtor's "business judgment." *See NLRB. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd* 465 U.S. 513, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("As applied in the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction."). Under the business judgment standard, a court should approve a debtor's business decision unless the decision is the product of "bad faith, whim, or caprice." *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (citations omitted); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (noting that, absent extraordinary circumstances, court

approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

13.     Assumption of the Leases as set forth herein is the linchpin in the Debtors' ongoing efforts to maximize value to their estates through a sale of substantially all of the Debtors' assets. Assumption of the Leases preserves the Debtors' ability to market and sell valuable assets of the Debtors' estates.  In addition, and as noted above, the Debtors and their advisors analyzed the Debtors' unexpired lease portfolio and determined assumption of the Leases is likely to drive value to the Debtors' estates.  Conversely, outright rejection of the Leases now will result in approximately hundreds of millions of dollars in value lost.  Accordingly, the Debtors submit that the assumption of the Leases as set forth herein is critical to the Debtors' estates and reflects a sound exercise of the Debtors' business judgment.

**II.     Assumption of the Leases Complies with Section 365 of the Bankruptcy Code.**

14.     Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code:  (a) that a debtor cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract; and (b) provide adequate assurance of future performance thereunder. *See* 11 U.S.C. § 365(b).

15.     Pursuant to section 365(b)(1)(A) of the Bankruptcy Code, the Debtors evaluated potential payments necessary to cure any applicable defaults under the Leases.  Exhibit 1 to the Order identifies the Leases which the Debtors seek to assume and identifies the dollar amount, if any, that the Debtors assert is necessary to be paid to cure all defaults, if any, under their unexpired leases based on the Debtors' books and records and discussions with certain Lease counterparties

(the "Cure Amounts").[4]  Counterparties to the Leases (each, a "Lease Counterparty") previously received proper notice of proposed Cure Amounts and given the opportunity to object.  *See Certificate of Service* [Docket No. 1163].  Lease Counterparties will further be provided proper notice of this motion and opportunity to object.  In connection with assumption of the Leases, the Debtors will promptly pay the Cure Amounts or provide adequate assurance of future performance, as applicable.

16. Accordingly, the Debtors submit that the statutory requirements of section 365(b)(1)(a) of the Bankruptcy Code are satisfied.

### III. The Lease Counterparties Will Be Adequately Assured of Future Performance.

17. The Debtors submit that the second requirement of section 365(b)(1)(C) of the Bankruptcy Code—adequate assurance of future performance—will be satisfied with respect to the Leases.  The phrase "adequate assurance of future performance" is to be "given a practical, pragmatic construction determined by consideration of the facts of the proposed assumption." *In re Fleming Cos., Inc.*, 499 F.3d 300, 307 (3d Cir. 2007).  Although no single solution will satisfy the threshold of "adequateness" in every case, the required assurance will fall considerably short of an absolute guarantee of performance.  *See In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994).

18. The Debtors submit that the combination of (1) cash on hand and (2) cash proceeds to be generated from pending or future sales of Real Property Assets and Rolling Stock Assets are sufficient to provide adequate assurance of performance of their obligations under the Leases to the Lease Counterparties.  The Debtors' marketing process has been tremendously successful and produced significant liquidity.  The proceeds to date have generated sufficient cash to pay off all

---

[4] The Debtors are aware of certain objections to the Cure Amounts and continue to negotiate and reconcile such amounts with the applicable Lease Counterparty.

the Debtors' prepetition secured funded debt and postpetition debtor-in-possession financing, and approximately $300 million of cash remains on the Debtors' balance sheet. As described in the accompanying declaration, the Debtors believe that they have sufficient cash on hand to satisfy their contractual obligations under the Leases for, at a minimum, the next two years—the maximum amount of time the Debtors and their advisors expect their sale process of remaining assets to continue until it is fully completed. Moreover, the Debtors' ongoing sale process will yield additional cash which will supplement the existing $300 million of cash already on the Debtors' balance sheet. Inclusive of the Leases, the Debtors continue to market 108 Leased Properties and 46 Owned Properties, not to mention other assets (such as Intellectual Property) remaining in their portfolio. The liquidity generated by the continued marketing and sales of the Leased Properties sought to be assumed by this Motion will bolster the Debtors' already significant cash balance.

19. Accordingly, the Debtors' assets on hand, including significant cash on hand from already closed sales, together with the cash proceeds expected to be generated from pending and future expected sales, is sufficient evidence that the Debtors are able to provide adequate assurance of future performance under the Leases as contemplated by 365(b)(1)(C) of the Bankruptcy Code.

## Requirements Under Bankruptcy Rule 6006

20. Under Bankruptcy Rule 6006(f), a debtor may join requests for authority to assume multiple unexpired leases in one motion if permitted under subdivision (e). *See* Fed. R. Bankr. P. 6006(f). Specifically, Bankruptcy Rule 6006(f) requires that a motion to assume multiple executory contracts or unexpired leases, among other things:

- state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

- list parties alphabetically and identify the corresponding contract or lease;

8

- specify the terms, including the curing of defaults, for each requested assumption or assignment;

- be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

- be limited to no more than 100 executory contracts or unexpired leases.

21. Pursuant to this motion, the Debtors have complied with the requirements of Bankruptcy Rule 6006(f).

### Reservation of Rights

22. Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. The Debtors reserve the right to: (h) amend Exhibit 1 to **Exhibit A** at any time prior to the hearing; (i) adjourn the determination with regard to specific Leases at any time prior

9

to the Court's hearing to consider the relief requested by this motion; and (j) seek authority to reject any of the Leases prior to entry of an order of the Court approving assumption of the Leases.

## Notice

23. The Debtors will provide notice of this motion to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Junior DIP Lender and counsel thereto; (h) the Junior DIP Agent and counsel thereto; (i) White & Case LLP, as counsel to the B-2 Lenders; (j) the Prepetition ABL Agent and counsel thereto; (k) the B-2 Agent and counsel thereto; (l) the Prepetition UST Tranche A Agent and counsel thereto; (m) the Prepetition UST Tranche B Agent, and counsel thereto; (n) the United States Department of Justice and Arnold & Porter Kaye Scholer LLP as counsel to the United States Department of the Treasury; (o) counterparties to the Leases; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

24. No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to assume the Leases, to the extent they are subject to section 365 of the Bankruptcy Code and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: February 12, 2024
Wilmington, Delaware

*/s/ Peter J. Keane*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | **KIRKLAND & ELLIS LLP** |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | 300 North LaSalle |
| 919 North Market Street, 17th Floor | Chicago, Illinois 60654 |
| P.O. Box 8705 | Telephone: (312) 862-2000 |
| Wilmington, Delaware 19801 | Facsimile: (312) 862-2200 |
| Telephone: (302) 652-4100 | Email: patrick.nash@kirkland.com |
| Facsimile: (302) 652-4400 | david.seligman@kirkland.com |
| Email: ljones@pszjlaw.com | david.seligman@kirkland.com |
| tcairns@pszjlaw.com | |
| pkeane@pszjlaw.com | -and- |
| ecorma@pszjlaw.com | |

*Co-Counsel for the Debtors and Debtors in Possession*

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*