**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| YELLOW CORPORATION, et al., | ) | |
| | ) | Case No. 23-11069 (CTG) |
| Debtors. | ) | |
| | ) | Jointly Administered |

**CENTRAL STATES PENSION FUND'S REPLY
IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION
OF WITHDRAWAL LIABILITY DISPUTES, OR ALTERNATIVELY,
FOR RELIEF FROM THE AUTOMATIC STAY TO INITIATE ARBITRATION**

Central States Pension Fund,[1] by and through its undersigned counsel, files this reply in support of its motion to compel arbitration of withdrawal liability disputes, or alternatively, for relief from the automatic stay to initiate arbitration. ("Motion," Dkt. 1655.) Central States Pension Fund sets forth the following in support of its reply.

## INTRODUCTION

1.      Debtors argue in their objection to the Motion that this Court has no discretion to refer the Withdrawal Liability Objections to arbitration, and that it must resolve the Objections. Yet, Debtors continue to ignore Congress' directive in 29 U.S.C. § 1401(a)(1), *i.e.*, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title *shall* be resolved through arbitration." (Emphasis added.) Debtors also ignore controlling Third Circuit authority finding that there is no "inherent conflict between arbitration and the Bankruptcy Code." *In re Mintze*, 434 F.3d 222, 231-32 (3d Cir. 2006). Furthermore, Debtors have refused to engage with a Delaware bankruptcy court's ruling in *In re GWI, Inc.*, 269 B.R. 114, 119 (Bankr. D. Del. 2001), where the court similarly found "no basis in fact or law for the proposition that arbitration would interfere with the

---

[1] Capitalized terms used herein shall have the same meanings as set forth in the Motion.

bankruptcy function of claim allowance," and noted that "the vast majority of matters which are sent to arbitration are claim disputes."

2.      Indeed, and as Central States Pension Fund demonstrated in its Motion, the Supreme Court has issued a strong endorsement for resolving disputes in arbitration. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). And the one bankruptcy court to have conducted an exhaustive post-*McMahon* analysis of arbitration of withdrawal liability disputes determined that "the claims allowance process is the perfect 'core' candidate for arbitration," and ordered that objections to proofs of claim for withdrawal liability in a Chapter 11 bankruptcy be resolved in arbitration. *In re BFW Liquidation, LLC*, 459 B.R. 757, 778, 799 (Bankr. N.D. Ala. 2011). Yet, Debtors have refused to engage with the court's analysis in *BFW Liquidation* and have also failed to acknowledge that most of the authority they rely upon either pre-dates *McMahon* or does not even address the issue of whether arbitration is appropriate.

3.      Apparently recognizing that the relevant legal authority does not support their argument, Debtors instead pivot to setting up a straw man argument, *i.e.*, that it would be absurd to have the various withdrawal liability disputes between Debtors and several multiemployer pension funds proceed before several different arbitrators. ("Objection," Dkt. 1965, ¶¶ 31-34.) But Debtors concede that the eleven filed objections to withdrawal liability claims concern the "same issues." (Objection, ¶¶ 32, 42.) And Central States Pension Fund (and the other pension funds affected by the objections) are all in agreement that these disputes can be resolved before a single arbitrator. (Dkt. 2180.) That Debtors have chosen to proceed in a chaotic, piecemeal fashion with respect to nearly identical objections should not serve as a legitimate basis to defeat Central States Pension Fund's Motion, particularly where the eleven pension funds have worked collaboratively

to efficiently advance the dispute resolution process, as evidenced by their agreement with Debtors on the terms of a proposed scheduling order.[2]

4.      Debtors also argue that even if arbitration of the Withdrawal Liability Objections might otherwise be appropriate, Central States Pension Fund's proofs of claims for withdrawal liability are not valid notices and demands for collection of withdrawal liability pursuant to 29 U.S.C. § 1399(b)(1), such that any obligation to initiate arbitration under 29 U.S.C. § 1401(a)(1) was not even triggered. (Objection, ¶¶ 28-30.) Debtors are wrong, but worse yet, Debtors' argument is expressly foreclosed by the case they rely upon for this argument, *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. El Paso CGP Co.*, 525 F.3d 591, 598 (7th Cir. 2008). Ironically, in contending that the issues to be resolved with respect to the Withdrawal Liability Objections do not require any expertise, Debtors completely misstate the holding in *El Paso*; indeed, the Seventh Circuit's opinion in *El Paso* confirms that Central States Pension Fund's proofs of claim are valid notices and demands for payments of withdrawal liability. Accordingly, Central States Pension Fund requests that this Court order Debtors to initiate arbitration with respect to the Withdrawal Liability Objections, or alternatively, grant the Fund relief from the automatic stay so that the Fund may initiate arbitration.

## FURTHER BACKGROUND

5.      In their response to the Motion, Debtors work to distract this Court's attention from the controlling statute and regulations, just as they did in their claims objections (Dkt. 1322), focusing on a strained interpretation of the facts related to Central States Pension Fund and Debtors' bankruptcy filing. Central States Pension Fund fully addressed Debtors' fictitious factual

---

[2] *See* Notice of Filing of Proposed Order Scheduling Certain Dates and Deadlines in Connection with the Debtors' Objections to Proofs of Claim filed by the Pension Funds that Received Special Financial Assistance, Dkt. 2141.

claims in its response to those claim objections (Dkt. 1833), which the Fund filed one week before Debtors filed their response to the Fund's Motion (Objection, Dkt. 1965), and there is no need to elaborate on the Fund's response in this reply.

6.       However, Debtors now claim that Central States Pension Fund "sandbagged" them by filing its Motion prior to responding to Debtors' claims objections. (Objection, ¶ 13). Debtors' description of the parties' negotiation over a scheduling order is, at best, disingenuous. Specifically, in their December 20, 2023 discussions regarding scheduling, Central States Pension Fund informed Debtors that the Fund planned on filing the Motion by January 16, 2024, and then responding to the claims objections later. (Ex. A hereto, Dec. 20, 2023 email.) Moreover, when Debtors asked for an extension of the time to respond to the Motion, Central States Pension Fund granted Debtors' request.[3]

7.       Debtors' counsel boasts about the "professional courtesy" shown towards Central States Pension Fund's counsel by agreeing to an extension of the time to respond to discovery and the claims objections but ignores the chaos Debtors caused by filing their objections right before major holidays, and by proceeding piecemeal with respect to nearly identical objections Debtors filed with respect to ten other pension funds' withdrawal liability claims. Debtors waited until December 8, 2023 to file their objections to Central States Pension Fund's withdrawal liability claims. (Dkt. 1322.) Yet, Debtors' counsel's time records reveal that Debtors began analyzing these issues in August 2023, began drafting the claims objections no later than October 3, 2023 (Dkt. 1484, p. 151 of pdf), and were revising the objections by no later than October 20, 2023. (*Id.* at p. 162 of pdf.) But Debtors inexplicably waited until December 8, 2023 to file their objections to Central States Pension Fund's withdrawal liability claims and another month-and-a-half to file

---

[3] *See* Order Approving Stipulation Relating to the Withdrawal Liability Objection, Discovery Requests, and Motion to Compel Arbitration, Dkt. 1846.

virtually identical objections to withdrawal liability claims of ten other multiemployer pension plans (Dkt. 1962). Even this second set of objections was filed only on the same day that Debtors responded to Central States Pension Fund's Motion. Debtors' actions belie their assertions that they have been acting appropriately and desiring to resolve these matters as quickly and efficiently as possible. Instead, Debtors have attempted to create chaos with the apparent goal of using that very chaos as an excuse to not defer resolution of the withdrawal liability disputes to arbitration.

8.      And yet, Central States Pension Fund and the other ten pension funds worked together to overcome this chaos, collectively reaching agreement with Debtors on a proposed scheduling order. (Dkt. 2141.) Therefore, there is no reason to believe that an arbitration before a single arbitrator involving Debtors and the eleven pension funds would result in any chaos or delays, as Debtors suggest.

## ARGUMENT

### I.      *This Court should defer resolution of the Withdrawal Liability Objections to arbitration.*

9.      Debtors argue that the debate over whether the Withdrawal Liability Objections should be resolved by this Court or in arbitration begins and ends with an analysis of section 502 of the Bankruptcy Code. (Objectin, ¶ 16.) Yet Debtors ignore the clear directive from Congress in 29 U.S.C. § 1401(a)(1) mandating that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title *shall* be resolved through arbitration." (Emphasis added.) As Central States Pension Fund explained in its Motion, the Supreme Court and the Third Circuit have both cited to 29 U.S.C. § 1401 in declaring that *any* dispute concerning withdrawal liability "shall be referred to arbitration." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602,

611 (1993); *see also Flying Tiger Line v. Teamsters Pension Tr. Fund of Phila.*, 830 F.2d 1241, 1247 (3d Cir. 1987).

10.     Debtors' argument that this Court has no discretion also ignores the Supreme Court's ruling in *Nathanson v. N.L.R.B*, 344 U.S. 25, 30 (1952), where the Court held that a bankruptcy court's supervision of the claims process is not absolute, and that sound reasons may exist for having a particular dispute resolved in a different tribunal. Not only is Debtors' sweeping and simplistic conclusion –  that the submission of a proof of claim in a bankruptcy means that any disputes regarding such claim must be resolved in the bankruptcy – contradicted by *Nathanson* (and *Mintze*), it is not at all supported by the cases they cite and was expressly rejected by a Delaware district court in *In re American Classic Voyages*, Co., 298 B.R. 222, 226 (D. Del. 2003); *see also In re Herrington*, 374 B.R. 133, 147 (Bankr. E.D. Pa. 2007) (same, collecting cases).

11.     Debtors' position also cannot be reconciled with the numerous cases holding that arbitration is the appropriate forum for resolving numerous types of claims disputes that arise in bankruptcy cases, as discussed herein.

12.     First and foremost, Debtors' position cannot be squared with the Third Circuit's holding in *Mintze*, 434 F.3d 222. In *Mintze*, the Third Circuit noted that whether a bankruptcy court has discretion to deny enforcement of an agreement to arbitrate does not depend upon whether the matter is a core or non-core proceeding. *Id.* at 229. The court also found that there is no "inherent conflict between arbitration and the Bankruptcy Code." *Id.* at 231-32. Thus, the Third Circuit rejected the bankruptcy court's finding that a conflict existed merely because of the potential effect on the claims of other creditors. *Id.* at 231. As a result, the court ruled that the bankruptcy court had no discretion to refuse to enforce an arbitration agreement, reasoning as follows:

> The FAA mandates enforcement of arbitration when applicable unless Congressional intent to the contrary is established. Mintze has failed to demonstrate through statutory text, legislative history, or the underlying purposes of the Bankruptcy Code that Congress intended to preclude waiver of judicial remedies for her claims.

*Id.* at 233. Given 29 U.S.C. § 1401(a)(1)'s similar if not stronger mandate regarding arbitration of withdrawal liability disputes, this Court should reject Debtors arguments and order them to arbitrate the Withdrawal Liability Objections. *See, e.g.*, Flying *Tiger*, 830 F.2d at 1248 ("we again emphasize the importance of the legislature's decision that arbitration, and not the courts, is the proper forum for the initial resolution of disputes under MPPAA").

13.    Debtors' position also runs afoul of the holding in *In re Mushroom Transportation Co.*, 90 B.R. 718, 728 (Bankr. E.D. Pa. 1988). As noted in Central States Pension Fund's Motion (Motion, ¶ 57), the court in *Mushroom Transportation* first needed to determine whether a Chapter 11 debtor was part of the "employer" for withdrawal liability purposes (*i.e.*, part of the withdrawn entity's controlled group), as the question of whether an entity ever became an employer for withdrawal liability purposes is for a court to determine in the first instance. *Id.* at 721-22. After having determined that the Chapter 11 debtor was part of the employer, the bankruptcy court then ruled that "[t]he extent of this liability though must be determined under the arbitration provisions of MPPAA [*i.e.*, 29 U.S.C. § 1401(a)(1)] (unless the parties agree as to its amount)" *Id.* at 728 (citing *Flying Tiger*, 830 F.2d 1241).

14.    Although Central States relied upon the *Mushroom Transportation* decision in its Motion, Debtors did not challenge or even address the bankruptcy court's conclusion in their response. (Dkt. 1965.) Instead, Debtors falsely claim that "[i]n arguing that 29 U.S.C. § 1401(a)(1) requires arbitration, CSPF only cites cases that do **not** address proofs of claim filed in chapter 11

cases." (Objection, ¶ 25 (emphasis in original).)[4] And yet, *Mushroom Transportation* concerned proofs of claim filed in Chapter 11 cases and analyzed them in the context of 29 U.S.C. § 1401(a)(1). 90 B.R. at 719-21, 728.

15.     In addition, and as Central States Pension Fund also noted in its Motion, a Delaware bankruptcy court cited to Supreme Court authority in holding that any doubts concerning arbitrability should be resolved in favor of arbitration. (Motion, ¶ 49); *GWI*, 269 B.R. at 116-17, 119. In *GWI*, the court noted that most matters referred to arbitration are claim disputes, and that deferring to arbitration would likely neither negatively affect the bankruptcy process nor slow the progress of the bankruptcy case. *Id.* at 119. Debtors failed to even acknowledge the above authority from a Delaware bankruptcy court in their response.

16.     Debtors nevertheless claim that Congress' use of "shall" in section 502 of the Bankruptcy Code is specific, that Congress' use of "shall" regarding arbitration of withdrawal liability disputes in 29 U.S.C. § 1401(a)(1) is general (at least in the context of a bankruptcy case), and that the specific must control over the general. (Objection, ¶ 24.) Debtors' suggestion that Congress' use of "shall" in 29 U.S.C. § 1401(a)(1) is more general than Congress' use of "shall" elsewhere in the United States Code is perplexing and is not at all supported by the authority upon which Debtors rely. That proposition is certainly not supported by the recent Third Circuit case Debtors cite, *In re FTX Trading Ltd.*, 91 F.4th 148 (3d Cir. 2024), which merely stands for the principle that "shall" does not mean "may." In any event, given that the Bankruptcy Code envisions a varied array of claim types, and that 29 U.S.C. § 1401(a)(1) pertains to a much narrower set of

---

[4] Debtors' claim that "CSPF's argument that 29 U.S.C. § 1401(a) requires arbitration of bankruptcy proofs of claim asserting withdrawal liability is unsupported by a single published case" (Objection, ¶ 26), is similarly untrue.

disputes, to the extent the specific-controls-the-general maxim applies, it applies in favor of deferring the Withdrawal Liability Objections to arbitration.

17.    Even if one believed there is a conflict between the Bankruptcy Code and MPPAA, (here, 29 U.S.C. § 1401(a)(1)), 28 U.S.C. § 1334(c)(1) specifically authorizes a bankruptcy court, "in the interest of justice" to "abstain[] from hearing a particular proceeding arising under title 11 . . . ." Therefore, section 1334(c)(1) further undercuts Debtors' assertion that a bankruptcy court has no discretion to refer a claim dispute to arbitration. Indeed, the court in *In re BFW Liquidation* relied upon section 1334(c)(1) and held that the interests of justice favor referring withdrawal liability disputes to arbitration. Debtors hastily dismiss the *BFW Liquidation* decision, noting simplistically that sixteen pages of the ruling are devoted to the assertion that the court did not need to decide whether arbitration of withdrawal liability disputes in bankruptcy cases is required (Objection, ¶ 26), but Debtors otherwise refused to engage with or address the *BFW Liquidation* court's analysis.

18.    Debtors instead rely upon *In re Interco Inc.*, 137 B.R. 993 (Bankr. E.D. Mo. 1992), where the bankruptcy court refused to defer a withdrawal liability claim dispute to arbitration. However, the decision in that case was based upon the court's determination that resolution of the withdrawal liability claim could take years and could frustrate the debtors' ability to reorganize. 459 B.R. at 795-96. The court in *BFW Liquidation* determined that the *Interco* ruling was irrelevant given that the debtor in *BFW Liquidation* was out of business and not reorganizing. *Id.* The same is true here, as Debtors are not proposing to reorganize.

19.    In any event, there is no reason to believe resolution of the Withdrawal Liability Objections in arbitration would take longer than resolution by this Court. First, despite Debtors' best efforts, Central States Pension Fund and the other ten pension funds quickly came together to

reach agreement on a scheduling order with Debtors. (Dkt. 2141.) Moreover, Central States Pension Fund and the ten other pension funds agree that the withdrawal liability disputes can be resolved in arbitration before a single arbitrator. (Dkt. 2180.) Furthermore, and as noted in Central States Pension Fund's Motion, 29 C.F.R. § 4221.8(b) requires an arbitrator presiding over a withdrawal liability dispute to issue a decision within thirty days after the close of proceedings. Thus, any potential chaos is entirely of Debtors' own making. That is, Debtors have not explained why it took them more than two months after beginning to draft their objections to Central States Pension Fund's claims to actually file the objections, and only then shortly before major holidays. Nor have Debtors explained why they then waited forty-nine more days to file virtually identical objections to the withdrawal liability claims of ten other multiemployer plans.[5] Filing the objections to the other withdrawal liability claims immediately before responding to Central States Pension Fund's Motion (and only after the Fund agreed to grant Debtors an extension of time to respond to the Motion) appears to have been solely a strategic attempt by Debtors to defeat the Fund's Motion.

20.     Debtors also rely upon the 1986 decision in *In re T.D.M.A., Inc.*, 66 B.R. 992 (Bankr. E.D. Pa. 1986). However, and as also noted in Central States Pension Fund's Motion, the *BFW Liquidation* court rejected the applicability of *T.D.M.A*, reasoning that the decision preceded the 1987 Supreme Court decision in *McMahon*, where the Supreme Court expressed its strong support for arbitration. 459 B.R. at 796-97. The *T.D.M.A.* ruling also preceded the Third Circuit's numerous withdrawal liability decisions upholding MPPAA's requirement that withdrawal liability disputes be resolved in arbitration. *See, e.g., Bd. of Trs. of Trucking Emps. N. Jersey Welfare Fund, Inc.* v. *Centra, Inc.*, 983 F.2d 495 (3d Cir. 1992); *Crown Cork & Seal, Co. v. Cent.*

---

[5] *Compare* Dkt. 1322, ¶¶ 42, 43, 45–47, 56–59, 61–66, 68, 69 *with* Dkt. 1962, ¶¶ 34, 35, 37–39, 42–51, 56, 57.

*States, Se. & Sw. Areas Pension Fund*, 881 F.2d 11 (3d Cir. 1989); *Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters & Emp'rs Pension Fund*, 847 F.2d 113 (3d Cir. 1988); *Flying Tiger*, 830 F.2d at 1241. Moreover, and as Central States Pension Fund explained in its Motion (Motion, ¶ 56), the court's refusal to defer the withdrawal liability dispute to arbitration in *T.D.M.A.* was based, at least in part, upon a misreading of 28 U.S.C. § 1334(c)(1). Debtors do not address any of these issues with the *T.D.M.A.* decision or otherwise explain why a pre-*McMahon* decision would be persuasive.

21.    Ultimately, Debtors rely largely upon cases that preceded the Supreme Court's 1987 *McMahon* ruling, and where the courts therefore did not have the benefit of the Supreme Court's endorsement of the strong federal policy favoring the resolution of disputes in arbitration. *See, e.g.*, *In re Amalgamated Foods, Inc.*, 41 B.R. 616 (Bankr. C.D. Cal. 1984); *see also In re Cott Corp.*, 26 B.R. 332 (Bankr. D. Conn. 1982). Consequently, the court in *BFW Liquidation* found those cases to be unpersuasive. 459 B.R. at 796.

22.    Debtors also rely upon several cases that did not concern claim objections whatsoever, and instead related to pension funds seeking to have portions of their withdrawal liability claims accorded administrative priority status. (Objection, ¶ 20.) None of those cases (*McFarlin's*, *Kessler*, *Great Nebreska Lumber*, *Pulaski Highway* and *United Department Stores*) addressed the issue of whether withdrawal liability disputes should be resolved in arbitration or by a bankruptcy court. Similarly, *Granada Wines, Inc. v. New England Teamsters & Trucking Industry Pension Fund*, 748 F.2d 42 (1st Cir. 1984), also did not concern a pension fund's request that a withdrawal liability dispute be referred to arbitration.

## II.   *Central States Pension Fund's proofs of claim for withdrawal liability triggered the arbitration requirement under 29 U.S.C. § 1401(a)(1).*

23.     In an apparent acknowledgement that arbitration is the appropriate forum for resolving the Withdrawal Liability Objections, Debtors also argue that the Fund's proofs of claims were not adequate notices for purposes of 29 U.S.C. § 1399(b)(1), such that the arbitration requirement was not even triggered. Debtors have failed to cite to a single authority that supports this conclusion. Indeed, Debtors' argument has been squarely rejected by the courts that have considered it.

24.     Initially, and as discussed in Central States Pension Fund's Motion (Motion, ¶¶ 3, 23), 29 U.S.C. § 1401(a)(1) provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." As Debtors acknowledge, notices and demands for payments of withdrawal liability, including any required payment schedule, are referenced in 29 U.S.C. § 1399 (Objection, ¶ 28), and disputes relating to notices and demands for payment of withdrawal liability under section 1399 are indisputably reserved for arbitration, since disputes under section 1399 fall within that statutory range of sections 1381 through 1399. *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 262-63 (2d Cir. 1990) (noting that "'any dispute *concerning the notice* or amount of withdrawal liability 'shall be resolved through arbitration'") (emphasis added); *see also Cent. States, Se. & Sw. Areas Pension Fund v. George Jones Excavating, LLC*, No. 16-cv-10331, 2017 WL 5454457, at *4 (N.D. Ill. Nov. 14, 2017) (holding that an employer waived its disputes regarding the validity of a notice for payment of withdrawal liability since that dispute needed to be resolved in arbitration). Accordingly, even if Debtors' argument regarding the effectiveness of notice were serious, that argument would still have to be resolved in arbitration.

25.     Oddly, Debtors purport to rely upon *El Paso*, 525 F.3d 591, for the proposition that Central States Pension Fund's withdrawal liability proofs of claims did not constitute proper notice of withdrawal liability for purposes of 29 U.S.C. § 1399(b)(1) (Objection, ¶¶ 28-30 & n.13), but the Seventh Circuit rejected the exact same argument in *El Paso*. 525 F.3d at 598. In rejecting these arguments, the Seventh Circuit first explained that a notice and demand for payment of withdrawal liability need not take any specific form, and that a proof of claim filed in a Chapter 11 bankruptcy constitutes one recognized means of satisfying the notice and demand requirements of 29 U.S.C. § 1399(b)(1). *El Paso*, 525 F.3d at 598 ("we recognized proofs of claim in Chapter 11 bankruptcies as meeting the statutory requirements. . . . [A] proof of claim is, by definition, a demand for payment . . . ."). The court in *El Paso* further noted that "[a] proof of claim filed in bankruptcy need not contain a schedule of payment; such a schedule would be useless in that context . . . ." *Id*; *see also Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1375 (7th Cir. 1992) (similarly noting with respect to a proof of claim for withdrawal liability filed in a bankruptcy that "such a schedule would have been otiose, because the bankruptcy court would inevitably establish its own, supervening schedule for payment of all debts of the bankrupt to all creditors"). As such, Debtors' reliance upon *El Paso* to argue that Central States Pension Fund's withdrawal liability proofs of claims did not satisfy the requirements of 29 U.S.C. § 1399(b)(1) is severely misguided.

26.     Accordingly, Debtors' suggestion that the Seventh Circuit issued a broad ruling in *El Paso* that any proof of claim filed in a bankruptcy fails to meet the notice requirements of 29 U.S.C. § 1399(b)(1) (Objection, ¶ 30 n.13) is blatantly false. Contrary to Debtors' arguments, the Seventh Circuit recognized no shortcomings with the pension fund's proof of claim for withdrawal liability filed in the Chapter 7 bankruptcy, at least to the extent it sought to collect the withdrawal

liability in the bankruptcy from the debtor, including the fact that the demand for payment was set forth solely in a proof of claim and did not include a schedule of multiple payments. *Id.* at 598.

27.     Indeed, that aspect of the *El Paso* decision was a basic statement of uncontested law and was provided as background in a decision in which the Seventh Circuit recognized additional avenues by which a multiemployer fund may provide statutory notice of withdrawal liability. Specifically, *El Paso* concerned a pension fund's lawsuit to collect withdrawal liability from non-bankrupt businesses that were formerly part of the "employer" for withdrawal liability purposes (*i.e.*, part of the withdrawn employer's controlled group). 525 F.3d at 597. That is, all trades or businesses under common control are jointly and severally liable for withdrawal liability. *Steelworkers Pension Trust by Bosh v. Renco Group, Inc.*, 694 Fed. Appx. 69, 71-2 (3d Cir. 2017); 29 U.S.C. § 1301(b)(1); 26 C.F.R. § 1.414(c)-2(b)(2). The Seventh Circuit in *El Paso* noted that the pension fund's claim against the non-bankrupt former controlled group members hinged on whether the June 3, 1999 proof of claim that the pension fund filed in a Chapter 7 bankruptcy provided adequate notice to the non-bankrupt controlled group members. 525 F.3d at 598.

28.     Before delving into the issue, the court noted the well-known maxim that notice of withdrawal liability to one member of an employer's controlled group constitutes notice to all such members. *Id.* at 596; *see also IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 129-30 (3d Cir. 1986) (noting the same principle). The court then explained that a proof of claim filed in a Chapter 11 bankruptcy would typically satisfy the notice requirements since Chapter 11 proceedings involve a debtor-in-possession, as opposed to a Chapter 7 bankruptcy where an independent trustee presides over the estate. 525 F.3d at 598. But it is not foreseeable that a proof of claim for withdrawal liability filed in a Chapter 7 bankruptcy would provide notice to the non-bankrupt businesses in the controlled group. *Id.* at 598-99.

29.     Thus, the issue in *El Paso* was solely whether the pension fund's proof of claim for withdrawal liability filed in the Chapter 7 bankruptcy effectively notified the defendant non-bankrupt controlled group members of the withdrawal liability. *Id.* at 599. And because the defendant non-bankrupt controlled group members admitted that they had seen the proofs of claim for withdrawal liability filed in the Chapter 7 bankruptcy, the Seventh Circuit determined that the duty to arbitrate was therefore triggered. *Id.* at 600. Thus, the *El Paso* court held both that a bankruptcy proof of claim for withdrawal liability that does not include a schedule of multiple payments is a statutorily adequate notice of withdrawal liability, and that the notice is effective as to non-bankrupt entities having actual notice of the claim.

30.     Also, and with respect to Debtors' assertion that the withdrawal liability proofs of claims do not comply with 29 U.S.C. § 1399(b)(1) because they listed an amount but not a schedule of payments, Debtors ignore the fact that "the entire amount of the withdrawal liability is immediately payable upon default . . . ." *Cent. States, Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 775 (7th Cir. 2010); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Dworkin, Inc.*, No. 19-cv-06176, 2020 WL 5365968, at *4 (N.D. Ill. Sept. 8, 2020) (noting that in a default scenario, Central States Pension Fund has "the legal authority to demand full and immediate payment of the withdrawal liability instead of having to resort to a 20-year installment schedule"); *Local No. 499, Bd. of Trs. of the Shopmen's Pension Plan v. Art Iron, Inc.*, No. 19-cv-2174, 2021 WL 229986, at * 3, 6 (N.D. Ohio Jan. 22, 2021) (rejecting challenge to validity of notice and demand where demand was for payment of withdrawal liability in a lump sum rather than a schedule of multiple payments). And, as explained above, the *El Paso* decision upon which Debtors rely stands for the proposition that "[a] proof of claim filed in bankruptcy need not contain a schedule of payment[s]." *El Paso*, 525 F.3d at 598.

31.     Debtors appear to be searching in vain for an argument as to why the Withdrawal Liability Objections should not be resolved in arbitration. In this regard, Debtors also suggest that they are not even challenging a determination under 29 U.S.C. § 1381 through 1399 because they are merely objecting to the allowance of claims in a bankruptcy case. This argument is not only preposterous, but again, completely unsupported by a single case cited by Debtors that supports this conclusion. In any event, Debtors make clear both in their Withdrawal Liability Objections and their opposition to the Motion that they take issue with: (i) Central States Pension Fund's calculation of its UVBs under 29 U.S.C. § 1391; (ii) the adequacy of the withdrawal liability demand, as embodied in the proofs of claim for withdrawal liability, under 29 U.S.C. § 1399; and (iii) the amount of withdrawal liability sought based upon additional arguments regarding the interpretation of 29 U.S.C. § 1399, and in particular, the effects of a default under 29 U.S.C. § 1399(c)(5). These are all disputes for which arbitration under 29 U.S.C. § 1401(a)(1) is mandatory.

32.     Debtors also argue (without any citation to authority) that the Withdrawal Liability Objections, and particularly the determination of Central States Pension Fund's UVBs, are legal questions that do not require any expertise to resolve (Objection, ¶ 37). Initially, Debtors have failed at the task of demonstrating that resolution of the Withdrawal Liability Objections does not require any expertise, as Debtors misstated both the issues and holding in *El Paso*. (¶¶ 25-29 above.) And as the Supreme Court has recognized, ERISA is an "enormously complex and detailed statute." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *see also Meredith v. Time Ins., Co.*, 980 F.2d 352, 357 (5th Cir. 1993) (similarly noting the complexity of ERISA, as well as ERISA's "highly technical regulatory program"). The bankruptcy court in *BFW Liquidation* also noted that the Third Circuit's decisions in *Centra*, 983 F.2d at 506, and *Flying Tiger*, 830 F.2d at 1252, stand for the proposition that withdrawal liability issues can be complex and are best resolved by

arbitrators with expertise in this area of the law. 459 B.R. at 764. "By generally mandating arbitration in the first instance with review by a federal court, MPPAA has created arbitrators who are experts in applying the technical provisions of how and when to assess withdrawal liability." *Centra*, 983 F.2d at 506.

33.     Furthermore, as discussed in Central States Pension Fund's Motion (Dkt. 1665), the Third Circuit has determined that arbitration of withdrawal liability disputes is appropriate both for purely legal issues and mixed questions of fact and law. *See, e.g., Flying Tiger*, 830 F.2d at 1241; *Carl Colteryahn Dairy*, 847 F.2d 113; *Crown Cork*, 881 F.2d 11; *Centra*, 983 F.2d 495; *see also I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Clinton Engines Corp.*, 825 F.2d 415, 418 (D.C. Cir. 1987) (explaining that "[f]rom the unambiguous language by which Congress established the primacy of arbitration in withdrawal liability disputes and in light of our decisions interpreting those terms, it should be beyond cavil that the existence of an issue of statutory interpretation, standing alone, does not justify bypassing arbitration"). Debtors do not offer any contradictory authority, instead rotely repeating their argument (rejected in *Mintze*, 434 F.3d at 229) that Congress intended that bankruptcy claims be resolved only in bankruptcy, while at the same time ignoring Congress' declaration in 29 U.S.C. § 1401(a)(1) that disputes over withdrawal liability *shall* be resolved in arbitration. Debtors also refused to engage with the thorough analysis of the *BFW Liquidation* court, which court resolved precisely the same issue by simultaneously deferring resolution of a withdrawal liability dispute to arbitration and granting relief from the automatic stay to accomplish the deferral. 459 B.R. at 799-800.

34.     Debtors instead focus on their straw man argument, *i.e.*, that deferring this matter to arbitration will cause chaos by forcing Debtors to proceed in several different arbitrations, and subject Debtors to potentially inconsistent rulings. (Objection, ¶¶ 6, 31-34.) Of course, Debtors set

up this straw man argument through their piecemeal process of objecting to the various withdrawal liability claims. To blame Central States Pension Fund for this potential risk where Debtors acknowledge that the disputes concern "the same issues and . . . the same discovery fights" (Objection, ¶ 32) is silly, and Debtors' gamesmanship – filing nearly identical objections to multiple parties' claims months apart and then blaming those multiple parties for creating the risk of separate dispute resolution schedules – should not be rewarded.

35.     Nonetheless, Debtors themselves admit that their objections to the other pension fund's claims are nearly identical to Debtors' objections to Central States Pension Fund's claims and "concern largely overlapping issues." (Objection, ¶ 32, n.15; *compare* Dkt. 1322 *with* Dkt. 1962.) And Central States Pension Fund and the other ten pension funds subject to claim objections agree that the issues are largely overlapping and capable of resolution in an arbitration before a single arbitrator with the American Arbitration Association. (Dkt. 2180.)

36.     Lacking any substantive argument, Debtors attempt to scare this Court by noting that twenty multiemployer pension plans have filed more than 300 proofs of claim against Debtors. (Objection, ¶ 12.) However, Debtors fail to note that withdrawal liability is a joint and several obligation of all commonly owned trades or businesses, including those with a parent-subsidiary relationship such as Debtors. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 876, 880 (7th Cir. 2011). Because it is undisputed that all twenty-four Debtors share a parent-subsidiary relationship (Dkt. 14, ¶ 50), Central States Pension Fund filed twenty-four joint and several claims for withdrawal liability against each one of the Debtors (as did other multiemployer pension funds), but all such claims are premised upon the same withdrawal and thus present identical issues. Debtors' suggestion that each one of these claims requires an independent analysis is therefore misleading, as the efforts to resolve Debtors' disputes with

respect to Central States Pension Fund's withdrawal liability claims would be the same had the Fund filed just one withdrawal liability proof of claim instead of twenty-four.

37.     As such, Debtors' setting up of, and their reliance upon, their straw man argument to defeat Central States Pension Fund's Motion should be rejected. Indeed, despite Debtors' bald protests to the contrary, the Withdrawal Liability Objections obviously present complex issues, some of first impression, the resolution of which could dramatically impact multiemployer pension plans not subject to this bankruptcy case, as well as the PBGC. Central States Pension Fund explained these concerns in its Motion, but again, Debtors simply refused to engage on these issues. Moreover, in deciding whether to require a party to arbitrate disputes over withdrawal liability, as Congress intended with 29 U.S.C. § 1401(a)(1), a court may not "not substitute its own views of economy and efficiency for those of Congress." *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Economy and efficiency would be served here, as again, 29 C.F.R. § 4221.8(b) requires an arbitrator presiding over a withdrawal liability dispute to issue a decision within thirty days after the close of proceedings.  And to be clear, Debtors' views of economy and efficiency are unsupported and incorrect.

### III.     *This Court should alternatively grant Central States Pension Fund relief from the automatic stay to initiate arbitration.*

38.     Debtors argue that Central States Pension Fund did not argue that cause exists to lift the automatic stay. (Objection, ¶¶ 39–43.) That is not true. Throughout its Motion, Central States Pension Fund explained that arbitration is the appropriate forum for resolving withdrawal liability disputes and supported this assertion by referencing 29 U.S.C. § 1401(a)(1), case law interpreting that section, and relevant bankruptcy case law. Central States Pension Fund also demonstrated that referring the dispute to arbitration would advance principles of judicial efficiency and conserve judicial resources, and that the mechanics of arbitration mean that

arbitration would not delay resolution of the Withdrawal Liability Objections or otherwise negatively affect the Debtors' bankruptcy estate. (Motion, ¶¶ 34-54.)

39.     Furthermore, in *In re Quad Systems Corp.*, No. 00-35667F, 2001 WL 1843379, at *6 (E.D. Pa. Mar. 20, 2001), in granting relief from the automatic stay so that a dispute could be resolved in arbitration, the court noted that cause exists for purposes of granting relief from the automatic stay "if the claim would normally be determined by a specialized forum." Additionally, the court in *BFW Liquidation* granted relief from the automatic stay, based on Congress' determination that arbitration was the appropriate forum for resolving disputes concerning withdrawal liability and because referring the dispute to arbitration would promote judicial economy and conserve judicial resources, as Central States Pension Fund set forth in its Motion. 459 B.R. at 779, 785-87. (Motion, ¶¶ 38-41, 46.)

40.     Critically for purposes of this motion, "[t]he legislative history [of the Bankruptcy Code] indicates that cause may be established by a single factor." *Izzarelli v. Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). Thus, Debtors' reliance on *Rexene* for the proposition that Central States Pension Fund is not entitled to relief from the automatic stay simply because Debtors say the Fund did not demonstrate a probability of success on the merits or prejudice is a red herring. Indeed, "[c]ause under section 362(d)(1) [of the Bankruptcy Code] . . . is a flexible concept and not confined solely to the *Rexene* factors." *In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 120–21 (Bankr. D. Del. 2015). Accordingly, in *Trump Entertainment Resorts*, the court granted relief from the automatic stay even after determining that such relief would not be appropriate under the "traditional *Rexene* analysis." *Id.* And in *American Classic Voyages*, 298 B.R. at 226, the district court overturned a bankruptcy court ruling denying relief from the

automatic stay, including because the bankruptcy court did not adequately consider an arbitration

agreement, particularly "[g]iven the strong federal policy favoring arbitration."

41.    Moreover, although the court in *BFW Liquidation* may not have considered the

traditional *Rexene* factors, the court conducted an extensive analysis in deciding that the interests

of justice demanded that the withdrawal liability dispute be resolved in arbitration, which analysis

included examining the Congressional intent behind the obligation to arbitrate withdrawal liability

disputes, the complexity of the statute (*i.e.*, MPPAA), the potential to promote judicial economy

and conserve judicial resources (by having specialists resolve complex withdrawal liability

disputes), and the fact that there was no reason to believe that arbitration would negatively impact

the bankruptcy estate. 459 B.R. at 764-66, 778-79. Indeed, "[a]rbitration of withdrawal liability

disputes . . . bears a burden that would otherwise fall on the federal courts. . . . MPPAA's purposes

would be undermined by the expense and delay that would be involved if litigation occurred prior

to the Act's dispute resolution procedures." *Flying Tiger*, 830 F.2d at 1248 (citation omitted). The

very same factors justify granting relief from the automatic stay in this case.

42.    However, given that Debtors appear to concede that Central States Pension Fund

followed the relevant PBGC regulation in calculating Debtors' withdrawal liability, and given the

fact that Debtors make clear they seek to invalidate that regulation (Dkt. 1322, ¶ 60; Dkt. 2130, ¶

24),[6] the Fund's chances of prevailing on the merits are strong.

---

[6] Debtors' argument that their regulatory challenge should not be treated like a regulatory challenge (Dkt. No. 2130, ¶ 33) is also foreclosed by binding Third Circuit authority. In *U.S. v. Troup*, 821 F.2d 194, 198 (3d Cir. 1987), the Third Circuit held that a civil defendant who challenged government regulations related to his liability calculation as an affirmative defense (rather than as part of an explicit claim) nonetheless invoked a "judicial review of the regulations," which in turn subjected him to the statutory and regulatory requirements for such a review. Put differently, whether a party seeks judicial review of a regulation is a substantive question and does not turn on the procedural posture in which the argument is asserted. *Id.* ("Our conclusion is not affected by the fact that Troup's challenge arose as a defense to a collection action.")

43.     Debtors nonetheless argue that the automatic stay should not be lifted, relying largely upon the fiction that they would then have to participate in numerous arbitrations before different arbitrators. (Objection, ¶ 42.) Of course, Central States Pension Fund could not have predicted Debtors' argument in this regard, because when the Fund filed the underlying motion, Debtors had not objected to any other withdrawal liability claims. Nevertheless, Debtors' concern is unfounded since Central States Pension Fund and the ten other pension funds subject to withdrawal liability claim objections agree that the disputes can be resolved in arbitration before a single arbitrator. (Dkt. 2180.) Debtors should not be permitted to rely upon their own gamesmanship to defeat Central States Pension Fund's motion.

## CONCLUSION

Referring this matter to arbitration is appropriate because it would fulfill Congressional intent, conserve this Court's resources, and allow an arbitrator with special expertise in resolving withdrawal liability disputes to determine the issues raised in the Withdrawal Liability Objections. This Court should therefore either order Debtors to initiate arbitration with respect to the Withdrawal Liability Objections, or, alternatively, grant Central States Pension Fund relief from the automatic stay to initiate arbitration.

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com

and

Brad R. Berliner, Esq.
Andrew J. Herink, Esq.
Daniel Sullivan, Esq.
Central States Funds
8647 W. Higgins Road
Chicago, IL 60631
(847) 939-2478 - Office
bberliner@centralstatesfunds.org
aherink@centralstatesfunds.org
dsulliva@centralstatesfunds.org

*Attorneys for Central States, Southeast and Southwest Areas Pension Fund*