## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) ) ) | Case No. 23-11069 (CTG) |
| Debtors. | ) ) ) | (Jointly Administered) |
| | ) ) | **Re: Dkt. No. 2157** |

### OBJECTION OF EXETER 1619 N PLAZA, LLC TO DEBTORS' OMNIBUS MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME CERTAIN UNEXPIRED LEASES AND (II) GRANTING RELATED RELIEF

Exeter 1619 N. Plaza, LLC ("Exeter") hereby objects to the *Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Certain Unexpired Leases and (II) Granting Related Relief* ("Cure Notice") [Docket No. 2157]. In support of this Objection, Exeter respectfully represents as follows:

### BACKGROUND

1. On August 6, 2023, ("Petition Date"), the above-captioned debtors and debtors-in-possession ("Debtors"), including USF Reddaway Inc. ("Reddaway"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Court").

2. Prior to the Petition Date, Exeter and the Reddaway were parties to that certain Lease Agreement dated July 14, 2022 (as may have been amended or modified, the "Lease"),

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

guaranteed by Yellow Corporation pursuant to a Guaranty, dated July 12, 2022, concerning approximately 13,600 rentable square feet located at 1619 North Plaza Drive, Visalia, CA 93291 (the "Property").

3.      On September 12, 2023, the Debtors filed their schedules which, among other things, scheduled Exeter with an unsecured claim in the amount of $53,984.12 [Docket No. 501 at 3.649].

4.      On September 15, 2023, the Court entered an *Order (I)(A) Approving the Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order"), which approved, among other things, the procedures by which the Debtors may solicit and pursue one or more sales of the Debtors' assets pursuant to 11 U.S.C. § 363.

5.      In connection with the Bidding Procedures Order, the Debtors filed the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Non-Rolling Stock Assets* ("First Cure Notice") [Docket No. 968]. The First Cure Notice identified the Lease as an agreement subject to assumption and assignment. Notwithstanding the fact that the Debtors' books and records indicated that $53,984.12 was due and owing to Exeter prior to the Petition Date, the Debtors listed in the First Cure Notice that the cure amount for the Lease was $34,443. On November 9, 2023, Exeter filed its *Objection of Exeter 1619 N Plaza, LLC to Notice of potential Assumption or Assumption and Assignment of Certain Contracts or Leases*

*Associated with the Non-Rolling Stock Assets*. Since that time, the Debtors have provided no justification for their proposed reduced cure amount.

6. On February 12, 2024, the Debtors filed the Cure Notice. The Cure Notice identified the Lease as an agreement subject to assumption and assignment. The cure amount for the Lease in the Cure Notice is, again, listed as $34,443 (the "Proposed Cure Amount") without justification for its reduced amount. The correct amount due and owing to Exeter is $58,738.21, which includes additional amounts that the Debtors owe under the lease that have occurred since the filing of the First Cure Notice, for example additional past-due utility charges. *See* attached Exhibit A.

**OBJECTION**

7. Section 365(b)(1) of the Bankruptcy Code provides as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default.
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

8. Thus, section 365(b)(1)(A) of the Bankruptcy Code provides that a debtor may not assume a contract unless it cures all defaults. *In re Panaco, Inc.*, No. 02-37811-H3-11, 2002 WL 31990368, at *5 (Bankr. S.D. Tex. Dec. 10, 2002); *In re Rock 49th Rest. Corp.*, 2010 Bankr. LEXIS 1223, at *11 (Bankr. S.D.N.Y. April 7, 2010) ("Assumption in effect restores the debtor-creditor relationship to pre-default conditions, bringing the lease back into compliance with its terms.").

3

This includes both prepetition and post-petition defaults. *See In re Burger Boys*, 94 F.3d 755, 763 (2d Cir. 1996).

9.   In order to assume and assign the Lease, the Debtors are required, at the time of assumption, to cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the Lease, including, without limitation, any and all defaults with respect to insurance requirements under the Lease, real estate taxes and other charges, amounts payable under reciprocal easement agreements, utilities (including electricity, gas, oil, water, telephone, sanitary sewer services and all other and utilities), attorneys' fees and costs, repair, maintenance, and replacement obligations, and environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges owing under the Lease that remain undetermined as of the date hereof (the "Unliquidated Obligations"). For example, the Debtors are not entitled to assume the Lease by merely curing arrearages in rent. Instead, the Debtors must cure or provide adequate assurance of the prompt cure of all liquidated amounts and Unliquidated Obligations under the Lease, including, without limitation, their current and future obligations to maintain the Property and make repairs and replacements, as a condition to the assumption and assignment of the Lease. *See* 11 U.S.C. § 365(b)(1).

I.   **OBJECTION TO CURE AMOUNT**

10.   Based on currently available information (see Exhibit A), not less than $58,738.21 must be paid to Exeter at or prior to assumption. The liquidated cure claim is comprised of unpaid (a) prepetition rent and related charges and (b) postpetition rent and related charges. This cure amount does not include additional Unliquidated Obligations or other cure amounts that may become due and owing after the date hereof and prior to the time the Lease is actually assumed,

including all charges billed in arrears and any amounts currently unknown or undetermined by Exeter, including but not limited to accrued and unbilled common area maintenance charges and taxes. Exeter reserves its right to amend or supplement any statement of cure amount as necessary or appropriate under the circumstances, including without limitation to account for year-end adjustments not yet billed or due under the terms of the Lease, amounts that become due and owing after the date hereof and prior to the time the Lease is actually assumed, and the amounts that the Landlord becomes aware of after the date hereof.

II. **OBJECTION TO ASSUMPTION PRIOR TO THE ALLOWANCE AND PAYMENT OF CURE AMOUNTS AND CLAIMS BAR**

11. Exeter objects to the form of the Proposed Order, to the extent it purports to permit assumption prior to the resolution and payment of the cure amounts (*see* Proposed Order at ¶ 5) while simultaneously seeking to enjoin Exeter, upon entry of the order, from asserting any claims against the Debtors (*Id*. at ¶ 6). Any order approving the assumption of the Lease, should make clear that all liquidated cure amounts shall be paid at or prior to assumption and all Unliquidated Obligations under the Lease shall survive, regardless of whether such Unliquidated Obligation could be argued to have existed, occurred, or accrued prior to the assumption of the Lease. Concomitantly, any dispute as to the current cure amount must be decided prior to assumption. Similarly, Exeter objects to paragraph 7 of the Proposed Order insofar as the Debtors, after paying the required cure amounts to assume a lease, seeks the right to later object such amounts, disclaim liability for such amounts, or claw-back such payments. Any dispute as to the propriety of the quantum of cure costs must be resolved prior to assumption.

III. **OBJECTION TO THE FUTURE ASSIGNMENT OF THE LEASE WITHOUT ADEQUATE ASSURANCE OF FUTURE PERFORMANCE**

12. Here, the Debtors offer adequate assurance of their own ability to perform under the Lease for the next two years, while retaining the right to assign the Lease in the future, without

the obligation to provide adequate assurance of future performance by a hypothetical assignee (*see* Proposed Order at ¶ 8). It is elemental, however, that a Debtor is required to provide adequate assurance of future performance by an assignee because such adequate assurance is "needed protection to the non-debtor party because the assignment relieves the trustee and the bankruptcy estate from liability for breaches that occur after the assignment." *In re Fleming Co., Inc.*, 499 F.3d 300, 305 (3d Cir. 2007) (internal quotation and citations omitted); *see also Matter of World Skating Center, Inc.*, 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989) ("[a]dequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord that it will receive the amount of the default"). To date, no assignee has been identified and no proof of adequate assurance by an assignee has been provided to Exeter. Therefore, Exeter reserves its rights to object to any potential assignment based on the failure to provide adequate assurance if an assignee is identified and the Lease is identified for assumption and assignment.

IV.   **OBJECTION TO THE MODIFICATION OF THE LEASE**

13.   Paragraph 8 of the Proposed Order appears to modify the Lease by deleting any true anti-assignment provisions in the Lease that may be unenforceable in the context of an assumption or an assumption and assignment of the Lease under section 365 of the Bankruptcy Code. There is no legal basis for modifying the Lease by "invalidating" any of its terms. While any true anti-assignment provisions may be unenforceable in the context of an assumption and assignment under section 365, all such provisions must remain in the Lease and continue to be enforceable after any assignment of the Lease authorized by the Court under section 365.

V.   **OBJECTION TO ANY FUTURE ASSIGNMENT OF THE LEASE WITHOUT ADEQUATE NOTICE TO EXETER AND AN OPPORTUNITY TO BE HEARD**

14.   Should the Debtors seek to assign the Lease in the future, said assignment should only be permitted after entry of an appropriate order of this Court, after notice and a hearing on

the issue of the proposed assignment, including the adequacy of the adequate assurance of future performance being offered by any hypothetical assignee.

## RESERVATION OF RIGHTS

15. Exeter expressly reserves all rights under the Lease with respect to any and all obligations of the Debtors, including the right to claim any amounts of rent, charges to compensate for monetary defaults, such as accrued real estate taxes, utility charges that have been assessed against the Property, unsatisfied liens on the Property created by the Debtors and/or insurance premiums, and charges to compensate for non-monetary defaults, including without limitation all maintenance, indemnification and environmental obligations of the Debtors. Exeter further reserves all rights to raise further objections, as necessary or appropriate under the circumstances.

## CONCLUSION

WHEREFORE, Exeter hereby requests that any order approving the assumption of the Lease be consistent with this Objection and (i) require the curing, at or prior to closing, of all monetary and non-monetary defaulted under the Lease as set forth in this Objection, (ii) require that Exeter be provided adequate assurance of future performance under the Lease, (iii) grant the other relief requested herein, and (iv) grant Exeter such other or further relief as is just and appropriate under the circumstances.

**BLANK ROME LLP**

Dated: February 20, 2024

*/s/ Josef W. Mintz*
Josef W. Mintz (DE No. 5644)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19810
Tel: 302.425.6400
Fax: 302.425.6464
Email: Josef.Mintz@blankrome.com

and

7

Ira L. Herman
Evan J. Zucker
1271 Avenue of the Americas
New York, New York 10020
Tel: 212.885.5000
Fax: 917.591.2726
Email: Ira.Herman@blankrome.com
        Evan.Zucker@blankrome.com

**Attorneys for Exeter 1619 N. Plaza, LLC**