# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) ) ) | Case No. 23-11069 (CTG) |
| Debtors. | ) ) ) ) ) ) | (Jointly Administered)<br><br>**Re: Docket No. 2157** |

Terreno Clawiter LLC and Terreno Dell LLC (collectively the Terreno Landlord) respectfully presents its Opposition to Debtors' Assumption Motion [Docket No. 2157] as follows:

**I.       FACTUAL AND PROCEDURAL BACKGROUND**

1.      On or about August 6, 2023 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.      These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169]. Debtors are

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269]. No trustee or examiner has been appointed in these chapter 11 cases.

3.  The Terreno Landlord, as landlord, and co-debtor YRC Inc. as tenant ("Tenant"), are parties to the following (collectively, the "Terreno Leases"):

   a.  Terreno Clawiter LLC, as landlord, and co-debtor YRC Inc, as tenant, are parties to a certain lease dated December 22, 2009 (as amended or modified from time to time, the "Clawiter Lease"), covering certain premises located at 25555 Clawiter Road, Hayward, CA 94545 (the "Clawiter Premises"), on the terms and conditions set forth therein. The Debtors identify the Clawiter Lease as Y889 and refer to it as "Oakland."

   b.  Terreno Dell LLC, as landlord, and co-debtor YRC Inc., as tenant are parties to a certain lease dated February 13, 2009 (as amended or modified from time to time, the "Dell Lease"), covering certain premises located at 700 Dell Road, Carlstadt, NJ 07072 (the "Dell Premises"), on the terms and conditions set forth therein. The Debtors identify the Dell Lease as Y126 and refer to it as "Carlstadt."

4.  On August 30, 2023, Debtors filed their Sale Procedures Motion as part of "a full-scale wind-down of their business operations." Debtors sought the authority to sell substantially all of Debtors' Assets (including leasehold interests) to potential high bidders, to be identified after a bidding and auction process, pursuant to Bidding Procedures, and to assume and assign nonresidential leases in connection therewith.

5.  On September 15, 2023, the Court entered the *Order (I)(A) Approving the Bidding Procedures For the Sale or Sales of the Debtors' Assets, (B) Scheduling Auctions and Approving*

*the Form and Manner of Notice Thereof; (C) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Order"), by which the Court approved procedures for the assumption or assumption and assignment of executory contracts and unexpired leases and granted related relief, as set forth in the Order.

6. On October 26, 2023, the Debtor filed and served its *Notice Of Potential Assumption Or Assumption And Assignment Of Certain Contracts Or Leases Associated With The Non Rolling Stock Assets* [Docket 968] (the "Notice"). The Notice provided that the Terreno Leases might be assumed or assumed and assigned based on the results of an auction conducted pursuant to the Order (the "Auction"). The Notice asserted that the Cure Amount for the Clawiter Lease is $68,762 and the Cure Amount for the Dell Lease is $69,712 (collectively, "Yellow's Cure Amounts").

7. On November 9, 2023, the Terreno Landlord filed its *Cure Objection, Response, Reservation of Rights and Joinder*; [see, Docket No. 1086 and 1101].

8. The Auction with respect to the Terreno Leases was originally set for November 28, 2023, was continued with respect to the Dell Lease only to December 8, 2023, was again continued with respect to the Dell Lease only to December 19, 2023 and was then conducted pursuant to new auction procedures and concluded without a bid. [See, Terreno Landlord's Reservation of Rights; Docket No. 1397.] There was never an Auction with respect to the Clawiter Lease, and the Auction with respect to the Dell Lease concluded without a bid. [See, Docket No.

1403-3] There has been no apparent forward movement toward disposition of either of the Terreno Leases since that date.

9. Although the Debtors have paid rent and provided security for the Dell Premises and the Clawiter Premises, there are no apparent maintenance efforts, and it is unknown whether the Debtors are taking precautions to protect the leased premises from, e.g., water freezing in pipes.

10. On February 12, 2024, the Debtors filed their "*Debtors' Omnibus Motion for Entry of an Order (i) Authorizing the Debtors to Assume Certain Unexpired Leases and (ii) Granting Related Relief*" (the "Assumption Motion"); [Docket No. 2157]. Two days later, on February 14, 2024, the Debtors filed their Declarations in support of the Assumption Motion; [see, Docket No. 2201 and 2202].

## II.    OPPOSITION TO ASSUMPTION MOTION

11. The Debtors' Assumption Motion declines to assume the Terreno Leases *cum onere*, declines to provide assurances of future performance under the Terreno Leases and declines to pay the cure amounts actually due under the Terreno Leases. The Assumption Motion should be denied as regards the Terreno Leases.

### A.    *Assumption Must Be Cum Onere*

12. The Terreno Landlords object to any attempt by the Debtor to assume the Terreno Leases free and clear of **any** of the Debtor's indemnity obligations under the respective Leases; rather, the Terreno Leases must be assumed *cum onere*.

13. The "Indemnity Obligations" include, but are not limited to, the following:

4

  c. Real Estate Taxes and Insurance. See, ¶4 and ¶14 of the Clawiter Lease; ¶4 and ¶14 of the Dell Lease.

  d. Restore premises to original condition at end of lease. See, ¶8 of the Clawiter Lease; ¶8 of the Dell Lease.

  e. Indemnify for penalties, damages and charges. See, ¶9 of the Clawiter Lease; ¶9 of the Dell Lease.

  f. Maintenance and repair of the leased premises. See, ¶10 of the Clawiter Lease; ¶10 of the Dell Lease.

  g. Disposing of all personal property at the end of the lease term. See, ¶11 of the Clawiter Lease; ¶11 of the Dell Lease.

  h. General claim indemnity. See, ¶16 of the Clawiter Lease; ¶16 of the Dell Lease.

  i. All-encompassing indemnity of all environmental issues including claims, damages, remediation and attorney's fees, including claims arising out of the presence of Hazardous Materials on the premises. See, ¶22 of the Clawiter Lease; ¶22 of the Dell Lease.

  j. Indemnification for maintenance, repair and claims relating to two fuel tanks on site at the Clawiter Premises and one fuel tank on site at the Dell Premises. See, ¶23 of the Clawiter Lease; ¶23 of the Dell Lease.

14. The Indemnity Obligations apply regardless of whether or not the matter for which indemnity is or becomes due occurred before or after the lease assumption.

15. The Terreno Leases must be assumed without modification, *cum onere,* with all of their benefits and burdens, as expressly provided in 11 U.S.C. §365(b)(1)(C).

> The trustee, however, may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.

*In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951); see also, *In re Fleming*, 499 F.3d 300, 308 (3d Cir. 2007) ("Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder."); *In re Dewalt*, 107 B.R. 719, 727 (B.A.P. 9th Cir. 1989) *rev'd on other grounds* 961 F.2d 848, 851 (9th Cir. 1992) ("The courts have unanimously held that the debtor must assume the detriments as well as the benefits of such contracts."); *Schokbeton Inds. v. Schokbeton Products Corp.*, 466 F.2d 171, 175 (5th Cir. 1972) ("the universally recognized rule that a trustee cannot accept the benefits of an executory contract without accepting the burdens as well."); *Matter of Steelship Corp.*, 576 F.2d 128, 132 (8th Cir. 1978) ("It is well settled that the trustee cannot accept the benefits of an executory contract without assuming its burdens as well."); *In re Airlift Intern., Inc.*, 761 F.2d 1503, 1512 (11th Cir. 1985) ("It is well-settled that when the debtor or trustee enters into a post-petition agreement he is bound by the terms of such agreement, and if he receives the benefits he must adopt the burdens."); *Matter of Chicago, Rock Island and Pac. R. Co.*, 860 F.2d 267, 272 (7th Cir. 1988) ("A trustee in bankruptcy takes the debtor's contracts *cum onere,* that is, subject to existing burdens. '[A] trustee cannot accept the benefits of an executory contract without accepting the burdens as well.'"); *In re ANC Rental Corp.*, 277 B.R. 226, 238-39 (Bankr. D. Del. 2002) (same),

16. The proposed Assumption Order strips the indemnity duties and burdens out of the Terreno Leases; [see, Docket No. 2157-2, ¶6]. It should not be approved.

### B. The Assurances of Future Performance Are Not Adequate

17. Pursuant to section 365(b)(1) of the Bankruptcy Code, a trustee or debtor-in-possession may not assume an unexpired lease unless it:

> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(a)(1)(C).

18. The initial burden of presentation as to adequate assurance falls upon the debtor. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that "Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest*, 868 F.2d at 1080. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.*, 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989). Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.*, 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986).

19. The Debtor entirely fails to present a showing, let alone a "specific factual showing," of adequate assurances of future performance. The Terreno Landlord is seeking discovery on these issues, and hence a continuance of this aspect of the hearing, but even in the absence of discovery, the following fatal failings are clear:

20. ***First***, the Debtors propose to provide assurance of only a portion of the obligations under the Terreno Leases, and that for only a small portion of the terms of the Terreno Leases. The

7

remaining term of the Clawiter Lease runs through December 31, 2029 and the remaining term of the Dell Lease runs through February 28, 2029. Base rent and an estimate of flow-through additional rent charges – without considering the potentially substantial indemnity obligations – is almost $6.5 million over the remaining term of the Clawiter Lease and over $5.5 million over the remaining term of the Dell Lease.

21. Through the Whitman Declaration the Debtors assert, without support, that "the process to market, sell, and assign each of the Leases will take a maximum of two additional years;" [see, Docket No. 2201] The Whitman Declaration ascribes the assertion to the Kaldenberg Declaration; [Docket No. 2201, ¶9]; but the Kaldenberg Declaration does not present the assertion; [see generally, Docket No. 2202].

22. It should be noted that this case has already demonstrated that the *ability* to sell a lease does not necessarily translate in action. The Clawiter Lease was originally set for auction on November 28, 2023 but that Auction was cancelled and there have been no further efforts to monetize the Clawiter Lease. The Dell Lease was the subject of a bid-less Auction on December 19, 2023 and there have been no further efforts to monetize the Dell Lease. The Debtors have presented no explanation for their inability to monetize their lease portfolio in the first 210 days of the case.

23. Based on the dubiously relevant and unsupported assertion that the Debtors *could* monetize the Leases it proposes to assume within two years, the Debtors contend that they provide "adequate assurances" for the purposes of Section 365 if they demonstrate an ability to pay rent for two years.

24.     The Debtors' arguments must be clarified through discovery, but at a high order of abstraction the threshold issue can be presented as follows:

| Terreno Lease | Debtor's "Assurance" | *Minimum* Actual Monetary Obligations |
|---|---|---|
| Clawiter Lease | $2,117,840 | $6,459,377 |
| Dell Lease | $2,131,105 | $5,566,271 |

25.     It should be noted that the foregoing identifies only direct contract rent and current triple net charges. Maintenance and repair obligations are significant. On *each* Terreno Lease, unfunded recent maintenance and repair obligations amount to more than $200,000, as reflected in the Terreno Cure Amounts, Exhibit 1. Similarly, the indemnity obligations, especially respecting environmental issues, represent potentially substantial additional adequate assurance obligations.

26.     **Second**, assuming *arguendo* the Debtors need only show "adequate assurances" for a small fraction of the lease term, they do not even do that.

27.     The Debtors do not, for example, offer to "freeze funds" to comply with obligations under assumed leases. Rather, the day after the Assumption Order is entered, the Debtors could seek to distribute some or all of their cash on hand to some or all pre-petition creditors, or could propose a Plan of Reorganization which did so, and the meager "adequate assurances" proposed for the Terreno Landlord could largely vanish.

28.     The obligation to pay rent under an assumed lease and damages from breaches of an assumed lease are entitled to administrative priority. Adequate assurances must, at the least, include an obligation to abstain from making distributions to creditors with a priority lower than Chapter 11 administrative claims until there has been a disposition of the assumed leases, or at least the Terreno Leases.

29. **Third**, the magnitude of the aggregate obligations the Debtors seek to incur undermine their assurances of an ability to perform under the assumed leases. The Terreno Leases are only two out of seventy five to be assumed. If the other leases are comparable, the aggregate obligations to be assumed approximate $450 million.

30. If the Assumption Motion is granted, Yellow will again become highly leveraged, with assumed administrative expense obligations to landlords materially exceeding its liquid assets. The Debtors highly leveraged condition belies the argument that their promise to honor their assumed leases is sufficient to provide "adequate assurances" to their landlords.

C.   *The Yellow Cure Amounts Are Inadequate*

31. In the event that the Terreno Leases are assumed, the Debtor is required to cure all defaults under the Terreno Leases and compensate the Terreno Landlord for actual pecuniary loss as a result of such defaults. 11 U.S.C. § 365(b).

32. As of February 20, 2024, the proper 11 U.S.C. § 365(b) "cure" amounts for each of the Terreno Leases is as set forth in detail on the attached Exhibit 1, exclusive of (i) any amounts that may become outstanding after February 20, 2024, (ii) interest, and (iii) attorneys' fees, (the "Terreno Cure Amounts").

33. A comparison of cure amounts proposed by Yellow and the Terreno Cure Amounts can be presented as follows:

|  | Debtors' Cure Amount | Terreno Cure Amount |
|---|---|---|
| Clawiter Lease | $ 68,762 | $ 361,569 |
| Dell Lease | $ 69,712 | $ 366,593 |

Terreno prays that the Court determine that the correct Cure Amounts for the Terreno Leases are the Terreno Cure Amounts and not the Yellow Cure Amounts.

34. In addition to the Terreno Cure Amounts set forth on Exhibit 1, pursuant to the terms of the Terreno Leases and 11 U.S.C. § 365(b), the Court should award the Terreno Landlords interest and a reasonable amount for attorneys' fees actually incurred as a result of the Debtor's bankruptcy case through the entry of the Order(s) assuming the Terreno Leases (the "Total Terreno Cure Amounts"). See, e.g., *Travelers Cas. & Su. Co. of Am. v. Pacific Gas and El. C*o., 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); *In re Fresh-G Rest. Intermediate Holding, LLC*, 580 B.R. 103, 114 n.53 (Bankr. D. Del. 2017) ("landlord entitled to attorney's fees when the lease allows such fees"; citing authorities); *In re Entertainment, Inc*., 223 B.R. 141, 151-154 (Bankr. E.D. Ill. 1998) (interest and attorneys' fees must be paid as provided for in the assumed lease).

**III.        RESERVATION OF RIGHTS**

35. The Terreno Landlord reserves the right to make such other and further objections to Debtors' Assumption Motion as may be appropriate based upon the results of discovery, any new information provided by Debtors or upon any different relief requested by Debtors and to object to any assignment of the Terreno Leases with Debtors following any assumption.

**IV.**         **JOINDER**

36.     To the extent not inconsistent with the foregoing, the Terreno Landlord joins in the Objections filed by the Debtors' other landlords, the Official Committee of Unsecured Creditors, and the U.S. Trustee.

**V.**          **CONCLUSION**

37.     Accordingly, the Terreno Landlord moves the Court to deny the Assumption Motion.

38.     In the alternative, the Terreno Landlord moves the Court for an Order conditioning the assumption of any Terreno Lease on:

   a.     The assumption of the Terreno Leases by the Debtors *cum onere*, specifically including, without limitation, the Indemnity Obligations whensoever incurred;

   b.     The provision by the Debtors of adequate assurances of future performance, including, at a minimum, (i) a dedicated, ever-green sequestration of cash in the amount of five years' rent and additional rent charges separately for each Terreno Lease, and (b) a prohibition on any distributions to persons holding entitlements junior in priority to Chapter 11 administrative claims, until there have been final dispositions of both of the Terreno Leases ;

   c.     The payment of the Total Terreno Cure Amounts; and

      d.    The granting of such other and further relief as may be just and proper.

Date: February 20, 2024
Wilmington, Delaware

    /s/ Garvan F. McDaniel, Esq.
Garvan F. McDaniel, Esq. (#4167)
**HOGAN MCDANIEL**
Attorneys at Law
1311 Delaware Avenue
Wilmington, DE 19806
Telephone (302) 656-7596
Facsimile (302) 656-7599

Michael St. James, Esq.
**ST. JAMES LAW, P.C.**
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile