IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered)<br><br>Ref. Docket Nos. 968, 1113, 1663, 2157<br><br>Obj. Deadline: February 20, 2024 at 4:00 p.m. (ET)<br><br>Hearing Date: February 26, 2024 at 10:30 a.m. (ET) |

**OBJECTION OF SOUTHEASTERN FREIGHT LINES TO
THE DEBTORS' OMNIBUS MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO ASSUME CERTAIN UNEXPIRED LEASES
AND (II) GRANTING RELATED RELIEF**

Southeastern Freight Lines ("SEFL"), by and through its undersigned counsel, hereby objects (this "Objection") to the *Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Certain Unexpired Leases and (II) Granting Related Relief* [Docket No. 2157] (the "Assumption Motion") on the grounds that the Debtors have not offered to cure defaults or provide adequate assurance of future performance to SEFL as required by 11 U.S.C. § 365(b). In support of this Objection, SEFL respectfully states as follows:

**BACKGROUND**

1. On August 6, 2023 (the "Petition Date"), each of the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/case/yellowcorporation/info. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

US.362360135.03

consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. The Debtors are operating their businesses and maintaining their assets as debtors in possession pursuant to 1107(a) and 1108 of the Bankruptcy Code.

2.      Prior to the Petition Date, the Debtors leased five parcels of non-residential real property from SEFL (the "SEFL Leases").

3.      On October 26, 2023, the Debtors filed the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Non-Rolling Stock Assets* [Docket No. 968] (the "Cure Notice"). The Cure Notice listed cure amounts totaling $131,880.00 for the SEFL Leases.

4.      On November 9, 2023, SEFL filed the *Objection of Southeastern Freight Lines to the Debtors' Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Non-Rolling Stock Assets* [Docket No. 1113] (the "Initial Objection") to the Cure Notice in which SEFL explained why the Debtors' cure amounts were vastly inadequate. While the Debtors' proposed cure amounts matched SEFL's prepetition claims totaling $131,878.89, the Debtors failed to acknowledge or propose any payment to SEFL for the Debtors' numerous postpetition obligations under the SEFL Leases, including real estate taxes, maintenance, and repair of the leased premises. As of the date of filing the Initial Objection, SEFL estimated that the amount necessary for the Debtors to cure all defaults under the SEFL Leases was no less than $1,718,117.03, with the amount expected to increase due to numerous continuing events of default.

5.      On January 8, 2024, SEFL filed the *Amended Objection of Southeastern Freight Lines to the Debtors' Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Non-Rolling Stock Assets* [Docket No. 1663] (the "Amended Objection", and together with the Initial Objection, the "Cure Objections") to the Cure

Notice in which SEFL cited greatly increased cure costs, much of which are attributable to the Debtors' ongoing failure to maintain the leased premises. For example, SEFL estimated that it will cost $3.7 million to repair damage to the roof, asphalt, grounds, fencing, and building located at 11301 NW 134th Street, Miami, Florida, because the Debtors have abandoned any effort to maintain the premises despite their contractual obligation to do so. As of the date of filing the Amended Objection, SEFL estimated that the amount necessary for the Debtors to cure defaults under all of the SEFL Leases was no less than $9,104,817.03, with the amount expected to rise again due to the Debtors' continuing neglect of the leased premises and failure to fulfill the Debtors' other postpetition obligations under the SEFL Leases.

6. On or about February 15, 2024, SEFL learned from a neighboring property owner that SEFL's leased property located in Tulsa, Oklahoma had been broken into, vandalized, and stripped of valuable assets. An employee of the Debtors confirmed that damage had occurred to the property, that the Debtors were aware of the damage, and that the Debtors had filed a claim. However, no one had notified SEFL of any damage prior to SEFL's inquiry, despite the Debtors having an obligation under the lease to give such notice. SEFL is sending a representative to Tulsa, Oklahoma this week to assess the damage and meet with contractors. The cure amount for the Tulsa leased property will increase to the extent any loss is not covered by insurance.

7. According to the Debtors, they have been marketing the SEFL Leases, but based on a "List of Remaining Properties" filed on February 12, 2024 [Docket No. 2158], the Debtors do not yet have bids on the SEFL Leases and they remain subject to assumption.

8. In the Assumption Motion, the aggregate cure amount for the SEFL Leases remains at $131,880, which equates to SEFL's prepetition claims. Despite assertions by the Debtors that they are negotiating and reconciling the cure objections relating to the contracts to be assumed pursuant to the Assumption Motion, the Debtors have not acknowledged or engaged in any discussion with

SEFL regarding the cure amounts asserted in the Cure Objections. As a result, the Debtors' Assumption Motion proposes to pay SEFL only 1.4% of the total estimated cure costs known as of January 8, 2024 -- a percentage that will continue to decrease once any losses due to the vandalism at the Tulsa location and other continuing defaults are added.

9.  The following table compares the cure amounts that SEFL asserted in its Amended Objection, to the cure amounts proposed by the Debtors in the Assumption Motion:

| SEFL Property Address | SEFL Amended Objection Cure Amount [Docket No. 1663] | Debtors' Proposed Cure Amount |
|---|---|---|
| 11301 NW 134th St., Miami, FL | $4,164,596.71 | $90,360.00 |
| 3924 South Country Road 1290 Odessa, TX | $726,364.28 | $5,304.00 |
| 1317 E. 38th St. Lubbock, TX | $1,027,647.97 | $9,008.00 |
| 3500 McColl Rd, McAllen, TX | $1,294,699.79 | $14,085.00 |
| 14549 E. Admiral Pl, Tulsa, OK | $1,891,508.28 (not including new Feb. 2024 damage) | $13,123.00 |
| TOTAL: | $9,104,817.03 | $131,880.00 |

10. No hearing has been scheduled on SEFL's Cure Objections. Yet, through the Assumption Motion, the Debtors would effectively render the Cure Objections moot by proposing the very same low cure amounts set forth in the Cure Notice and requiring SEFL to object a third time or be deemed to have consented to the Debtors' cure amounts.

11. Given the enormous discrepancy between the Debtors' and SEFL's proposed cure amounts, it is especially troubling that neither Delaware counsel of record for SEFL nor SEFL's regional counsel in North Carolina received notice of the Assumption Motion [Docket No. 2157]

US.362360135.03

from the Debtors' noticing agent despite the Certificate of Service [Docket No. 2176] stating that SEFL's counsel were being served electronically with the Assumption Motion. Curiously, SEFL's counsel did receive from the noticing agent electronic service of certain other filings listed in the Certificate of Service (e.g., the "Bidder Notice," Docket No. 2158), but not the Assumption Motion.

12. The Debtors' deadline to assume or reject nonresidential real property leases under 11 U.S.C. § 365(d)(4) expires on March 4, 2024 according to the *Court's Order, Pursuant to Section 365(d)(4) of the Bankruptcy Code, Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* [Docket No. 1127]. SEFL is opposed to any extension of this deadline.

## OBJECTION

13. Section 365(b) provides in pertinent part as follows:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

- (A) cures, or provides adequate assurance that the trustee will promptly cure, such default. . . .;
- (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and
- (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

14. SEFL objects to the Assumption Motion on the basis that it does not propose to satisfy the Debtors' cure obligations consistent with section 365(b)(1) of the Bankruptcy Code or provide adequate assurance of future performance under the SEFL Leases. Absent satisfaction of all requirements for assumption under section 365(b)(1), the assumption must be denied.

**A. The Proposed Cure Amounts are Insufficient**

15. When a contract is assumed under section 365 of the Bankruptcy Code, the non-

debtor third-party to that contract must be "made whole at the time of the Debtors' assumption of the contract." *In re Entertainment, Inc.*, 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citations omitted). Accordingly, to the extent the Debtors seek to assume any of the SEFL Leases, the Debtors must pay the full cure amounts based upon the actual amounts that are due on the date the SEFL Leases are assumed. 11 U.S.C. § 365(b)(1).

16. As set forth above, SEFL has filed the Cure Objections with respect to the amounts proposed by the Debtors to cure the defaults under the SEFL Leases in the Cure Notice, which Cure Objections are incorporated by reference herein as if fully set forth.[2] Without any outreach to SEFL from the Debtors with respect to the Cure Objections, the Debtors now seek to assume the SEFL Leases with the same proposed cure amount listed in the Assumption Motion.

17. The Debtors attempt to avoid this issue through the inclusion of paragraph 5 to the proposed order attached to the Assumption Motion (the "Proposed Order") which states that the assumption of the SEFL Leases "shall be effective notwithstanding any dispute over cure costs" and that any cure costs that are subject to dispute will "be paid promptly after the earlier of (a) the date on which Debtors and the Lease Counterparty agree to an amount or (b) the date specified in a final and non-appealable order entered by this Court determining such amount." Proposed Order ¶ 5. However, under the Bankruptcy Code, the date after which the defaults must be "promptly" cured is the date of the assumption of the SEFL Leases, not a future undetermined date on which the Cure Objections are finally resolved. *See* 11 U.S.C. § 365(b)(1).

18. Further, the following paragraph to the Proposed Order states that the counterparties to the Leases are "forever barred and enjoined from asserting against the Debtors any defaults,

---

[2] Due to Debtor's failure to timely notify SEFL of the vandalism at the Tulsa property, SEFL is still scrambling to assess the damage at the Tulsa property and anticipates that the ultimate cure amount for the Tulsa property will be greater than as set forth in the Cure Objections. From a very late breaking and preliminary assessment, it appears that the approximate cost to repair the vandalism alone will be in excess of $500,000. It appears that wiring and air conditioning units were stolen and significant transformer and light pole damage was incurred. The entire interior of the building will need to be rewired and significant equipment and fixtures will need to be replaced.
US.362360135.03

claims, interest, or other default penalties under the Leases arising before the date of this Order." Proposed Order ¶ 6.  Taken together, paragraphs 5 and 6 of the Proposed Order seek, not only to kick the can down the road with respect to the Cure Objections, with no actual progress towards a resolution, but also to bind SEFL to the cure amounts contained in the Assumption Motion.  At a minimum, SEFL objects to the inclusion of paragraph 6 of the Proposed Order to the extent that is seeks to limit SEFL's ability to assert or negotiate the alleged cure amounts and the claims set forth in the Cure Objections while the Cure Objections remain unresolved.

**B. The Debtors Have Not Provided Adequate Assurance**

19. In addition to the failure of the Debtors to pay, or even negotiate, the proper cure amounts, the Debtors have also failed to sufficiently establish adequate assurance of future performance.  The Debtors' bare assertion that they have approximately $300 million in cash on hand, and expect to generate more cash through future sales, does not, by itself, satisfy the requirement to provide SEFL with adequate assurance of future performance.  *In re RS Legacy Corp.*, 2015 Bankr. LEXIS 2206, *6 (Bankr. D. Del. June 25, 2015) ("unaudited financials and projections are insufficient to satisfy the statutory requirement to provide adequate assurance of future performance").

20. Through the Assumption Motion, the Debtors seek to assume around 78 leases, and project that it will take a maximum of two years to complete the sale process for the Debtors' remaining assets. The Debtors concede in a footnote that they "are aware of certain objections to the Cure Amounts and continue to negotiate and reconcile such amounts with the applicable Lease Counterparty."  Assumption Motion, ¶ 15 n.4. Yet, nowhere in the Assumption Motion do the Debtors disclose the cure amounts asserted in objections filed by lease counterparties or address the magnitude of the discrepancy between the Debtors' proposed cure amounts and those asserted by the lease counterparties.

US.362360135.03

21. The Debtors also offer no quantification or substantive backup such as a pro forma budget supporting their contentions that they have the ability to fund all cure amounts plus an additional two years of lease obligations and other expenses while they continue marketing efforts. In sum, the assurance the Debtors have offered is generalized, conclusory and inadequate[3]. *See In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 173 (Bankr. E.D. Va. 1993) ("while an absolute guarantee of future performance is not required, more than speculative plans are needed").

### CONCLUSION

WHEREFORE, SEFL respectfully requests that the Court deny the relief requested in the Assumption Motion with respect to the SEFL Leases, or in the alternative, that any order entered by this Court authorizing assumption of the SEFL Leases require the Debtors to cure all defaults under the SEFL Leases in a manner consistent with this Objection, and grant to SEFL such other and further relief as the Court deems just and appropriate under the circumstances.

| | |
|---|---|
| Dated: February 20, 2024 | **FAEGRE DRINKER BIDDLE & REATH LLP** |
| | */s/ Brett D. Fallon* |
| | Brett D. Fallon (No. 2480) |
| | 222 Delaware Avenue, Suite 1410 |
| | Wilmington, DE 19801 |
| | Telephone: (302) 467-4200 |
| | Facsimile: (302) 467-4201 |
| | Email: brett.fallon@faegredrinker.com |
| | -and- |
| | **MAYNARD NEXSEN PC** |
| | Lisa P. Sumner |
| | 4141 Parklake Avenue, Suite 200 |
| | Raleigh, North Carolina 27612 |
| | Telephone: (919) 573-7423 |
| | Facsimile: (919) 653-0435 |
| | Email: lsumner@maynardnexsen.com |
| | *Counsel to Southeastern Freight Lines* |

---

[3] SEFL acknowledges that Debtor has submitted conclusory declarations from Messrs. Kaldenber and Whittman indicating that a budgetary analysis has been conducted. However, the Debtors do not indicate what numbers were used and certainly do not indicate that they have plugged in numbers approaching the amounts set forth in the Cure Objections.

US.362360135.03