# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| | ) |
| Debtors. | ) |
| | ) |

**DEBTORS' OPPOSITION TO PENSION BENEFIT GUARANTY CORPORATION'S "MOTION FOR DENIAL OR DISMISSAL OF DEBTORS' CHALLENGE TO PBGC'S REGULATION CONTAINED IN DEBTORS' OBJECTION TO THE PROOFS OF CLAIM FILED BY CERTAIN MULTIEMPLOYER PENSION PLANS"**

---

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
        tcairns@pszjlaw.com
        pkeane@pszjlaw.com
        ecorma@pszjlaw.com

*Co-Counsel for the Debtors and Debtors in Possession*

Patrick J. Nash, P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
Michael B. Slade (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  pnash@kirkland.com
        dseligman@kirkland.com
        mslade@kirkland.com

Michael Esser (admitted *pro hac vice*)
John Christian (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:  (415) 439-1400
Facsimile:  (415) 439-1500
Email:  michael.esser@kirkland.com
        john.christian@kirkland.com

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

The PBGC's bizarre "Motion for Denial or Dismissal of Debtors' Challenge to PBGC's Regulation Contained in Objections to the Proofs of Claim Filed by Certain Multiemployer Pension Plans" (Docket No. 2276) is procedurally improper and substantively baseless. PBGC's concerns lack merit, but they can and will be addressed as part of the ongoing litigation over 150+ proofs of claim (the "Proofs of Claim") filed by 11 multi-employer pension plans ("MEPPs")—the allowance or disallowance of which will determine the fate of these chapter 11 estates and the recoveries to all unsecured creditors and equity holders. Within that litigation, all parties in interest can be heard, consistent with the scheduling order entered by the Court. *See* Docket No. 2185.

In the interim, there is no reason and no basis for a regulatory body—which is neither one of the claimants nor one of the objectors—to pre-empt every other stakeholder and seek to end the dispute before it even begins through a conclusory, three-page "motion" that cites zero precedent. No court has ever told a Debtor that it was barred from raising a particular argument in its objection to a proof of claim (let alone 150 proofs of claim together comprising 90% of the claims pool). Indeed, the Debtors have fiduciary duties to maximize the value of their estates for the benefit of stakeholders; those duties require the Debtors to object to claims that are meritless or overstated so that potentially valid claims and interests—including an unrelated claim of PBGC itself and the equity owned by the U.S. Treasury—can receive the recovery they deserve.

The PBGC cites no relevant authority in support of its request that the Court summarily dismiss the Debtors' arguments against the Proofs of Claim filed against the estates by the MEPPs. The PBGC's arrogant effort to seize for *itself* the power to decide who does and does not deserve a piece of these chapter 11 estates should be rejected out of hand, and the Court should deny what is just the most recent example of what the Court will see during the course of the litigation has been an extreme administrative overreach.

**BACKGROUND**

1.  Central States Pension Fund ("CSPF") voluntarily filed scores of Proofs of Claim, more than 20 of which allege withdrawal liability. On December 8, 2023, the Debtors objected to CSPF's Proofs of Claim on several grounds—including, among others, that CSPF claims as calculated defy ERISA's mandate by largely ignoring 29 U.S.C. §§ 1381(b), 1391(a), and 1393(c). *See Debtors' Objection to the Proofs of Claim Filed by the Central States Pension Fund*, ECF No. 1322 at 27; *Debtors' Reply In Support of Their Objection to the Proofs of Claim Filed by the Central States Pension Fund*, ECF No. 2130 at 9-13.

2.  Without seeking leave, the PBGC injected itself into the dispute between CSPF and the Debtors, offering unsolicited opinions that: (1) the Debtors somehow both simultaneously refused to address underlying substantive law and overstepped by addressing infirmities in some potentially applicable law; (2) claims allowance is somehow not "core" to bankruptcy; (3) the Debtors somehow lack standing to object to withdrawal liability claims because the allowance of billions of dollars of claims would not pose redressable injury; and (4) a jurisdictional statue that PBGC invoked, which does not apply by its terms and which expressly exempts itself from this dispute *even if* it facially applied, impairs the Debtors' position. *See Limited Response of the Pension Benefit Guaranty Corporation to Objection of the Debtors to the Proofs of Claim Filed by the Central States Pension Fund*, (the "PBGC Response"), ECF No. 1630.

3.  In the *Reply In Support of Their Objection to the Proofs of Claim Filed by the Central States Pension Fund* (the "Reply"), the Debtors explained why each of the PBGC's theories are peculiar and flat-out frivolous. ECF No. 2130 at 9-13. The PBGC suggests in the Motion that the Debtors did not address its jurisdictional argument, but the Debtors did so—in a footnote explaining why the PBGC's jurisdictional theory makes no sense. *Id.* at p. 15, fn. 8.

4. Still, the PBGC pressed on. It next attempted to derail an agreed upon schedule between the actual parties to this withdrawal liability dispute in the *Objection of the Pension Benefit Guaranty Corporation to Debtors' Notice of Filing of Proposed Order Scheduling Certain Dates and Deadlines in Connection with the Debtors' Objections to Proofs of Claim Filed by the Pension Funds That Received Special Financial Assistance* ("Scheduling Brief"). ECF No. 2149. In its Scheduling Brief (basically a sur-reply in opposition to an objection to someone else's claim), the PBGC ignored the Debtors' response to every one of its arguments. ECF No. 2149 at 9-13. And the PBGC has now raised the same issues in yet another filing—the Motion.

## **ARGUMENT**

### I.     **The Motion Should Be Denied as an Improper and Untimely Sur-Reply.**

5. The PBGC cites no authority in support of its Motion—and there is no basis for the Court to simply "deny or dismiss" the Debtors' arguments in support of its objections to the MEPPs' withdrawal liability proofs of claim. As set forth in the Debtors' Reply, this Court has full authority to adjudicate an objection to a proof a claim and consider the arguments raised, whether they are raised by Claimants, the Debtors, the PBGC, or any other actual stakeholder in these cases. More pertinent here, the PBGC cites no statute, rule, or case that would prevent the Court from letting the applicable dispute play out through discovery, motion practice, and trial, and then ruling on the substantive issues on the merits.

6. Nor does the PBGC explain its paranoia that this Court might actually address the substance of the relevant arguments on the merits. The Debtors understand why the PBGC might not want to defend its position on the merits, but the disputes at issue are questions *for the merits*. No party's rights are prejudiced by allowing all parties to be heard, and this Court set a schedule for all relevant questions to be addressed promptly, *see* ECF No. 2195. There is no reason to divert from the parties' agreed schedule. In the interim, the Motion has no basis and should be denied.

## II. The PBGC Asks this Court to Ignore the Supreme Court's Decision in *Raleigh*.

7. While demanding this Court ignore the underlying substantive law supporting the Debtors' dispute with CSPF, the PBGC ironically accuses the Debtors of the violation it commits. PBGC Response, ECF No. 1630 at 9 (asserting that the Debtors request this Court ignore underlying substantive law). But the Debtors' Objection and Reply do no such thing. In fact, the Debtors describe in extreme detail how they believe this Court should harmonize and apply the various relevant bodies of law, including the Bankruptcy Code, ERISA, estoppel doctrine, and Illinois contract law. *See, e.g.,* Reply, ECF No. 2130 at 5-23. Indeed, in explicit accordance with *Raleigh v. Illinois Dep't of Revenue* and similar cases, the Debtors are asking this Court to evaluate the "underlying substantive law . . . subject to any qualifying or contrary provision of the bankruptcy code." 530 U.S. 15, 20 (2000). That is exactly what the Debtors' briefs to date have done, and what the Debtors will continue to do.

8. On the other hand, the PBGC tries to stop this Court from thoughtfully considering the applicable law, including ERISA, three times over. *First*, the PBGC asserts that a claims allowance dispute under 11 U.S.C. § 502(b) is somehow non-core despite Congress's contrary command, *see* 28 U.S.C. § 157(b)(2)(B). *See* Motion, ECF No. 2276 at 3 (incorporating PBGC Response); PBGC Response, ECF No. 1630 at 13. *Second*, the PBGC propounds a theory of standing where the potential allowance of approximately $6.5 billion in Proofs of Claim somehow does not create a redressable injury to a debtor, estate, or other stakeholders in bankruptcy. *See* Motion, ECF No. 2276 at 3 (incorporating PBGC Response); PBGC Response, ECF No. 1630 at 11. And *third*, the PBGC asserts that a statute that only applies to affirmative lawsuits *against* the PBGC (which this is not), and explicitly disclaims any application to withdrawal liability disputes in any event, renders this Court incompetent to rule on the Debtors' Objection. *See* Motion, ECF No. 2276 at 3 (incorporating PBGC Response); PBGC Response, ECF No. 1630 at 12.

9. Respectfully, each of these arguments is independently absurd. Collectively, they demonstrate the PBGC's desire to prevent this Court from careful consideration of the "underlying substantive law" relevant to the disputes between CSPF, the other MEPPs, and the Debtors.

### (a) The Allowance or Disallowance of Claims are Core Proceedings.

10. The PBGC's assertion that an estate's objections to proofs of claim that make up 90% of the claims pool are non-core proceedings is unprecedented, defying basic bankruptcy law. "The allowance and disallowance of claims, which are core matters arising under or in the Bankruptcy Code, fall within the exclusive jurisdiction of the bankruptcy courts." *In re PRS Ins. Grp.*, 335 B.R. 77, 84 (Bankr. D. Del. 2005); *see generally* 28 U.S.C. § 157(b)(2)(B). The facts here are clearly dispositive. The MEPPs filed $6.5 billion in Proofs of Claim seeking withdrawal liability in this Court. Section 502(b) plainly grants this Court the authority to allow or disallow these claims in whole or in part based on a fulsome analysis of the underlying facts and law.

11. To support the novel proposition that claims adjudication under 502(b) is non-core, PBGC relies on two cases that actually contradict its position. *See Schuessler v. United States Small Bus. Admin.*, 2020 WL 2621186 (Bankr. E.D. Wis. May 22, 2020); *In re Dancor Transit, Inc.*, 2020 WL 4730896 (Bankr. W.D. Ark. June 22, 2020). In *Schuessler* and *Dancor,* the bankruptcy courts considered whether the Small Business Administration's (SBA) denial of loan applications under the CARES Act "violate[d] section 525(a) of the Bankruptcy Code." *Schuessler*, 2020 WL 2621186, at *1. While the courts determined that claims seeking writs of mandamus against the SBA based exclusively on non-bankruptcy law were non-core, both decided the opposite with respect to claims implicating 11 U.S.C. § 525(a). Just as this Court should do here with respect to ERISA and 11 U.S.C. § 502(b), the court assessed the "plain terms of the CARES Act" to determine whether the SBA's interpretation of the Paycheck Protection Program was permissible under 11 U.S.C. § 525(a) and deemed its finding core.

12. Here, objected to Proofs of Claim filed by the MEPPs are at issue, and "core proceedings include … [the] allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(B). There is no serious argument to the contrary.

### (b) The Debtors Have Standing to Object to Proofs of Claim.

13. Following a recitation of conventional standing doctrine, the PBGC remarkably asserts, without explanation, that the Debtors lack standing to dispute the Proofs of Claim if any of the underlying assumptions are based on agency regulations that defy Congressional mandates. *See* ECF No. 1630 at 11. Standing requires "a causal connection between the injury and the conduct complained of, and "it must be 'likely' . . . that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

14. Here, CSPF and the other Pension Funds have filed hundreds of Proofs of Claim against these bankruptcy estates seeking **$6.5 billion**, even though the 11 applicable MEPPs **have no unfunded vested benefits** ("UVBs")—which Congress has stated is a prerequisite for any withdrawal liability to exist at all. It is painfully obvious that allowance of these Proofs of Claim would cause an injury to the Debtors, these chapter 11 estates, every single other creditor (including the PBGC itself, which is an actual but unrelated claimant), and every equity holder (including the United States Treasury, which owns 30% of the Debtors' equity). The argument that the Debtors (and presumably all others) lack standing to object to the Proofs of Claim, and to raise any conceivable argument against those claims, is absurd and defies logic.[2]

---

[2] The PBGC's position makes no sense. Imagine that a creditor based its proof of claim on a state law that the Debtor believed violated the U.S. Constitution. The PBGC suggests that, to defeat the claim, the Debtor would have to initiate a lawsuit in another court seeking a declaration that the state law was unconstitutional. But that's absurd. All the Debtor would do is *object to the claim*, and as part of that objection, argue that the law on which the claim is based is unconstitutional. That does not turn a claims objection into something other than a claims objection.

15. The PBGC collectively cites zero cases suggesting that debtors can lack standing to raise any argument in opposition to a proof of claim. For good reason: the Debtors clearly have standing to follow the typical proof of claim allowance and objection process, and this Court is undoubtedly competent to administer that process. The fact that one of the Debtors' arguments is that ERISA and the Bankruptcy Code foreclose a calculation employed by CSPF and the other MEPPs (supported by the PBGC) makes no difference. The PBGC's effort to dodge this Court's review of the most important question in these Chapter 11 cases has no merit.

**(c)    29 U.S.C. § 1303(f) Does Not Prevent This Court from Adjudicating the Debtors' Objections to the Proofs of Claim.**

16. Finally, the PBGC asserts that 29 U.S.C. § 1303(f) somehow restricts this Court's ability to determine the validity and amount of CSPF's Proofs of Claim. ECF No. 1630 at 12-13. The Debtors already directly addressed this argument in prior briefing, *see* ECF 2130, p. 15, fn. 8. The PBGC's argument severely misapprehends 29 U.S.C. § 1303(f) and the Bankruptcy Code.

17. *First*, 29 U.S.C. § 1303(f) is permissive and merely explains when parties "may bring an action against the corporation." But the Debtors are not bringing an action against PBGC; they are objecting to Proofs of Claim that were filed by 11 separate MEPPs against these estates. Section 1303(f) has no import on a Claim Objection dispute between debtors and creditors and says nothing about limiting arguments that can be made in any such claims objection.

18. *Second*, 29 U.S.C. § 1303(f) explicitly excepts the disputed provisions, stating clearly that it applies "***except with respect to withdrawal liability disputes*** under part 1 of subtitle E" (emphasis added). Accordingly, even *if* the Debtors *did* file a lawsuit against the PBGC relating in some way to withdrawal liability, Section 1303(f) is clear and explicit that it would not apply to that lawsuit.

19.     *Third*, even if 29 U.S.C. § 1303(f) somehow applied to actions between debtors and creditor pension funds (it does not), and even if it did not exempt withdrawal liability disputes from its ambit (it does), a dispute over the validity and amount of a proof of claim triggers the paradigmatic claims objection process governed by 11 U.S.C. § 502(b) and 28 U.S.C. § 157(b)(2)(B), and is indisputably a contested matter covered by Bankruptcy Rule 3007, not an adversary proceeding governed by Bankruptcy Rule 7001.  The Debtors are simply asking that MEPPs' filed Proofs of Claim be disallowed or reduced, not that the Court enter a Declaratory Judgment or an injunction.  Thus, the claims objection process is clearly the correct mechanism for assessing the Debtors' objection to the relevant Proofs of Claim, and the PBGC cites nothing that would suggest otherwise.

## **CONCLUSION**

Ultimately, when the Court considers whether to allow the MEPPs' 150+ objected-to Proofs of Claim, it will have to assess every aspect of those claims.  And the Court has entered a scheduling order which provides the MEPPs, the Debtors, and any other party-in-interest a full and fair opportunity to be heard, culminating in a trial the first week of August 2024.

The PBGC's Motion seeks to hide the sausage-making that led to the Proofs of Claim, in which the MEPPs seek $6.5 billion even though the MEPPs have zero UVBs or damages, and which would lead to the MEPPs seizing *all* proceeds (which will ultimately exceed $1 billion) that would otherwise be distributed to unsecured creditors and equity holders.  The PBGC will have its day in court too, but neither it nor any of the MEPPs can avoid this Court from thoughtfully considering each and every aspect of the Proofs of Claim merely because the MEPPs and their regulator would prefer to keep the actual facts a secret.

**WHEREFORE**, the Debtors respectfully request that this Court deny the PBGC's Motion.

| | |
|---|---|
| Dated: February 28, 2024<br>Wilmington, Delaware | */s/ Peter J. Keene*<br>Laura Davis Jones (DE Bar No. 2436)<br>Timothy P. Cairns (DE Bar No. 4228)<br>Peter J. Keane (DE Bar No. 5503)<br>Edward Corma (DE Bar No. 6718)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Facsimile: (302) 652-4400<br>Email: ljones@pszjlaw.com<br>tcairns@pszjlaw.com<br>pkeane@pszjlaw.com<br>ecorma@pszjlaw.com<br><br>Patrick J. Nash, P.C. (admitted *pro hac vice*)<br>David Seligman, P.C. (admitted *pro hac vice*)<br>Michael B. Slade (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>Email: pnash@kirkland.com<br>dseligman@kirkland.com<br>mslade@kirkland.com<br><br>-and-<br><br>Michael Esser (admitted *pro hac vice*)<br>John Christian (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>555 California Street<br>San Francisco, California 94104<br>Telephone: (415) 439-1400<br>Facsimile: (415) 439-1500<br>Email: michael.esser@kirkland.com<br>john.christian@kirkland.com<br><br>*Co-Counsel for the Debtors and Debtors in Possession* |