**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

Hearing Date: March 6, 2024 at 2:00 p.m. (ET)
Response Deadline: February 28, 2024 at 4:00 p.m. (ET)

**THE PENSION BENEFIT GUARANTY CORPORATION'S REPLY IN SUPPORT OF
ITS MOTION FOR DENIAL OR DISMISSAL OF DEBTORS' CHALLENGE TO
PBGC'S REGULATION CONTAINED IN DEBTORS' OBJECTIONS TO THE PROOFS
OF CLAIM FILED BY CERTAIN MULTIEMPLOYER PENSION PLANS**

1.      The Pension Benefit Guaranty Corporation ("PBGC") is a federal government agency that administers the Special Financial Assistance program ("SFA") to provide funding to eligible multiemployer pension funds.[2]  PBGC is also the federal government agency authorized by Congress, in consultation with the Secretary of the Treasury, to impose by regulation reasonable conditions relating to withdrawal liability on plans receiving SFA.[3]

2.      When PBGC promulgated 29 C.F.R. § 4262.16, the regulation at issue in this matter (the "PBGC Regulation"), it did so in accordance with ARP.  PBGC published an interim final rule, and after reviewing over 100 comment letters,[4] published a final rule with request for

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] American Rescue Plan Act of 2021 ("ARP"), Pub. L. No. 117-2, § 9704, 135 Stat. 4, (2021); ERISA § 4262(a)(1), 29 U.S.C. § 1432(a)(1).

[3] ERISA § 4262(m)(1), 29 U.S.C. § 1432(m)(1).

[4] PBGC Final Rules (Other Than Interest Rate Updates) with Associated Proposed Rules, https://www.pbgc.gov/prac/pg/other/guidance/final-rules (collecting received comments for PBGC rules).

comment, and a final rule responsive to comments, carefully documenting each step in over 90 pages of the Federal Register.[5]

3.      The Administrative Procedure Act ("APA") outlines how a party must proceed in challenging an agency regulation.  Contrary to Debtors' protestations, PBGC is not seeking to prevent these issues from being heard.  Indeed, in its *Motion for Denial or Dismissal of Debtors' Challenge to PBGC's Regulation Contained in Debtors' Objection to the Proofs of Claim Filed By Certain Multiemployer Pension Plans* (Dkt. No. 2276, the Motion), PBGC acknowledged that parties may challenge a federal regulation[6] but such a challenge must comply with the APA.

4.      In their *Objection to the Proofs of Claim Filed by the Central States Pension Fund* (Dkt. No. 1322, the "CSPF Claims Objection"), their *Second Omnibus (Substantive) Objection to Proofs of Claim for Withdrawal Liability* (Dkt No. 1962, the "Second Omnibus Objection"), and other related filings, Debtors make plain that they seek to invalidate the PBGC Regulation.  But they do not address PBGC's straightforward argument that the APA governs how a party must bring a challenge to a federal regulation, and Debtors' claims objection has not complied with the requirements of the APA.  Indeed, they have failed to address the APA's requirements in any of their filings.

5.      Instead of engaging with the arguments that their challenge to the PBGC Regulation is improper, Debtors resort to sophistry.  According to Debtors, PBGC is "bizarre[ly]" seeking to bar Debtors from participation in the run of the mill claims objection process.  This is not so.  PBGC has been clear throughout its filings that its issues with Debtors' claims objections are limited to the challenge to the PBGC Regulation.  Debtors may not mask a challenge to an agency regulation by styling it as a claims objection.  Debtors seek to invalidate

---

[5] See 86 Fed. Reg. 36598-36631; 87 Fed. Reg. 40968-41024, 88 Fed. Reg. 4900-4906.
[6] Motion, Ex. A, Dkt. No. 2276-1 at 11-12.

the PBGC Regulation via the wrong mechanism, brought against the wrong parties, in the wrong

court.

I.    **Debtors fail to address the APA's requirement to seek relief from the PBGC Regulation against PBGC in an appropriate court.**

a.    *Debtors must obtain relief in a suit brought against PBGC pursuant to the APA.*

6.    As PBGC stated in its Motion,[7] any challenge to the validity of an agency

regulation is governed by the APA.[8]  Specifically, the APA provides that "[a] person suffering

legal wrong because of agency action, or adversely affected or aggrieved by agency action

within the meaning of a relevant statute, is entitled to judicial review thereof."[9]  PBGC is a U.S.

government agency, and its promulgation of regulations is agency action.[10]  The APA dictates

that any challenges to the PBGC Regulation must be brought in a suit against PBGC.[11]

7.    While other parties to this case have referenced PBGC's arguments in their

pleadings,[12] Debtors' numerous filings with this court fail to acknowledge PBGC's arguments.

Indeed, Debtors do not use the words "Administrative Procedure Act" or "APA" in *any*

responses filed in connection with the CSPF Objection or the Second Omnibus Objection.

---

[7] *Id.*

[8] 5 U.S.C. §§ 551 *et seq.  See, e.g., Louisiana Forestry Assoc., Inc. v. U.S. Dep't of Labor*, 745 F.3d 653 (3ᵈ Cir. 2014) (reviewing challenge to a Department of Labor regulation under the APA).

[9] 5 U.S.C. § 702.

[10] *See generally*, *PBGC v. LTV Corp.*, 496 U.S. 633, 653 (S. Ct. 1990).  5 U.S.C. § 551(13) (agency action defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof.").

[11] 5 U.S.C. § 703 sets forth that "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute . . . . If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer." 5 U.S.C. § 703.  Under ERISA, plan sponsors that are adversely affected by an agency action "may bring an action against the corporation for appropriate equitable relief in the appropriate court." 29 U.S.C. § 1303(f)(1).  Because 29 U.S.C. § 1303(f)(4) specifies that the statute "shall be the exclusive means for bringing actions against the Corporation" under Title IV, Congress has made it clear that challenges to PBGC regulations must be brought in accordance with that statute.

[12] *See* Dkt. No. 2180 at 22 n. 8 (discussing PBGC's APA arguments in the Joint Motion to Compel Arbitration).

8.      One prominent example can be found in footnote 2 in their Objection to the Motion, (Dkt. No. 2451).  There, Debtors present a hypothetical asking whether an unconstitutional state law must be applied in bankruptcy.  But the PBGC Regulation is not a state law, it is an "action" by a federal agency.  As such, the APA dictates the manner by which it must be challenged.

9.      The closest Debtors come to engaging with PBGC's arguments is in their *Reply in Support of Their Objection to the Proofs of Claim Filed by the Central States Pension Fund* (Dkt. No. 2130, <u>Debtors' Reply in Support of Objection</u>).  There, Debtors cite *In re Kennedy*, 568 B.R. 367 (Bankr. D. Kan. 2016), to support the proposition that agency regulations may be reviewed in bankruptcy.[13]  But there the regulation at issue was given deference by the court and upheld, because the Court "does not have the authority to change the law, only interpret it.".[14] There is no indication that the agency that promulgated the rule at issue there was informed its regulation had been challenged.  Perhaps most importantly, it does not appear that *any* party raised arguments concerning whether a claims objection was an appropriate forum under the APA.

10.      A decision by the Bankruptcy Court for the Northern District of Georgia, *In re Rhodes*, demonstrates the weakness of such assertions.  There, the Court rebuffed an objection to a PBGC claim calculated via application of a PBGC regulation.  The Court held that the objection was in fact a challenge to the regulation under which the claim was computed, and that section 502(b) cannot be used as an "end run" to challenge PBGC's regulation. [15]  In its Motion,

---

[13] Dkt. No. 2130 at ¶34.
[14] 568 B.R. at 375-77.
[15] *Dugan v. PBGC (In re Rhodes, Inc.)*, 382 B.R. 550, 560 (Bankr. N.D. Ga. 2008).

PBGC has cited numerous cases where bankruptcy courts recognized that the APA controls review of agency action, regardless of the status of the complainant in bankruptcy.[16]

       *b. The APA dictates that Debtors' must obtain relief in an appropriate court.*

11.      As PBGC also noted in its Motion, the APA directs those with a complaint about a federal regulation to proceed according to the agency's enabling statute. The enabling statute here, ERISA, allows a plan sponsor that is negatively impacted by PBGC action to bring an action against PBGC for appropriate equitable relief in the appropriate court.[17] Specifically, 29 U.S.C. § 1303(f)(2) indicates that the "appropriate" court is the United States district court for the judicial district where the plan has its principal office (here, for CSPF, the United States District Court for the Northern District of Illinois), or the United States District Court for the District of Columbia.[18]

12.      Puzzlingly, while they do not discuss the APA's requirements for challenging an agency regulation, Debtors do discuss PBGC's enabling statute. Because Debtors' arguments concerning §1303(f) all rest on some variation of their mischaracterization of their regulatory challenge as a "claims objection," they fail to demonstrate why the enabling statute should not be followed here. And their arguments fail for additional reasons as well.

13.      Debtors argue that, because §1303(f) states PBGC "may" be sued, filing a lawsuit is discretionary. Their argument misconstrues the interaction between the APA and PBGC's enabling statute. Because Debtors are seeking relief from PBGC's agency action, the APA

---

[16] Motion Ex. A, Dkt. No. 2276-1 at 12 n.45, .

[17] 29 U.S.C. § 1303(f). The APA also appears to contemplate only equitable relief from agency action where an agency's enabling statute does not provide specifically for review. *See* 5 U.S.C. § 703 (providing for "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus,")

[18] 29 U.S.C. § 1303(f)(2).

requires that PBGC be sued directly.  Section 1303(f)(4) is clear that the statute *"shall* be the

exclusive means" (emphasis supplied) for a suit against PBGC.  In other words, to the extent that

Debtors seek relief against PBGC, as they are required to do if they are seeking to invalidate a

PBGC regulation, the statute is the exclusive means to obtain this relief.

14.     Debtors' argument that §1303(f) does not apply because it provides an exception

for  "withdrawal liability disputes under part 1 of subtitle E. . . ." is similarly flawed.  Part 1

deals explicitly with suits between an employer and a pension plan.[19]  Debtors challenge the

PBGC Regulation, which was promulgated under *part IV* of ERISA, the provision governing

SFA, which is a separate program.[20]  To the extent Debtors are seeking relief from PBGC's

agency action, their dispute is with PBGC, not with a pension plan or employer, and is not a

dispute under part 1.

15.     Finally, Debtors close by arguing that they are not bound by § 1301(f) because

they are operating within the "paradigmatic claims objection process," while citing no cases in

which a regulation was invalidated in a claims objection.  Debtors cannot invalidate the PBGC

Regulation in the "paradigmatic claims objection process."  They must seek relief from PBGC

directly, following the restrictions found within PBGC's enabling statute.  Again, the claims

objection process may not be used to perform an "end run" around a PBGC regulation.

## II.     Debtors cannot set aside the requirements of the APA by mischaracterizing the relief they seek.

16.     Debtors pepper their briefs with claims that PBGC, in enacting the PBGC

Regulation, has engaged in administrative overreach and exceeded its authority,[21] actually

---

[19] *See, e.g.*, 29 U.S.C. §1401(b).
[20] 29 U.S.C. § 1432(m).
[21] Debtor's Reply in Support of Objection, Dkt. No. 2130 at ¶20 ("PBGC has exceed its authority"); ¶22 (stating Congress "did not grant PBGC the authority" to issue the PBGC Regulation); ¶24 (stating that PBGC had "no authority" to issue the PBGC Regulation); Debtors' Opposition to Pension Plans' Arbitration, Dkt. No. 2438 at ¶41

mirroring the language of APA, which allows a reviewing court to "hold unlawful and set aside agency action" if such actions are "in excess of statutory jurisdiction, authority, or limitations."[22]

17.     And Debtors' intentions concerning the PBGC Regulation are plain. In their first filing on these issues, Debtor state that they "will demonstrate at trial that [the PBGC Regulation] …cannot be enforced as it is inconsistent with ERISA and federal law more generally."[23]  Subsequent filings have confirmed what Debtors are seeking. For example, in Debtors' Reply in Support of Objection, Debtors devote over four pages to discussing why the PBGC Regulation is invalid pursuant to *Chevron* and the Major Questions doctrine.[24]  In *Debtors' Opposition to the SFA-Funded Pension Plans' Motion to Compel Arbitration* (Dkt. No. 2438, Debtors' Opposition to Pension Plans' Arbitration), Debtors identify "whether PBGC's authority to place reasonable conditions on withdrawal liability enables PBGC to change the statutory definition of UVBs" as a "key issue" to be determined in these proceedings.[25]

18.     But whenever Debtors might be expected to attempt an actual argument as to why they are not bound by the APA, they demur, claiming they are only engaging in "the typical proof of claim allowance and objection process."[26]  Elsewhere, Debtors even bemoan that they are being attacked simply for "raising a particular argument in their objection."[27]  Given their openly stated intention to invalidate the PBGC Regulation, such statements are disingenuous.

19.     As a result of this posture, Debtors fail to address PBGC's arguments, and indeed misstate them throughout. For example, PBGC does not assert that "claims adjudication under

---

(characterizing the PBGC Regulation as "an unlawful regulation that exceeded the scope of PBGC's authority."); Opposition to MTD, Dkt. No. 2451 at 2 (alleging PBGC has engaged in "extreme administrative overreach.").

[22] 5 U.S.C. § 706(2)(C).  The APA limits the grounds upon which agency action can be overturned. *Id.*

[23] CSPF Claims Objection, Dkt. No. 1322 at ¶ 59.

[24] Dkt. No 2130 at 5-10.

[25] Dkt. No. 2438 at ¶33.

[26] Objection to the Motion, Dkt. No. 2451 at ¶15.

[27] *Id.* at 2.

502(b) is non-core."[28]  Rather, PBGC asserts that a challenge to an administrative regulation

pursuant to the APA is non-core.  The cases cited by PBGC that Debtors highlight as

contradictory clearly support PBGC's proposition.[29]  Similarly, PBGC does not assert that

"Debtors lack standing to dispute the Proofs of Claim."[30]  Instead, PBGC asserts that Debtors

lack standing to seek relief from PBGC's regulation from a party that is not PBGC.

20.     Although Debtors make vague appeals to § 502(b), they have not put forward a

serious argument as to how that section authorizes an attack on the PBGC Regulation or why the

PBGC Regulation conflicts with the bankruptcy code.  As the Supreme Court has held in *Raleigh*

and *Travelers,* a bankruptcy court must apply the "underlying substantive law" except when

explicitly in conflict with the bankruptcy code.[31]  Debtors' argument that *Raleigh* authorizes the

Court to "harmonize" or "evaluate the underlying substantive law . . . ." is dead wrong.  *Raleigh*

requires the *application* of the substantive underlying law, not its *evaluation.*[32]  In the end, the

PBGC Regulation must be applied as promulgated or challenged directly in a proceeding against

PBGC.  There is no third option.

### III.    PBGC may assert its rights in these proceedings.

21.     Throughout this case, Debtors have cast PBGC as an interloper in otherwise

routine proceedings.  PBGC has an obvious "stake" in this matter.  As discussed in its initial

Response, the PBGC Regulation is of vital importance to the SFA program and to the national

---

[28] *Id.* at ¶11.

[29] *Schuessler v. United States Small Bus. Admin.,* No. AP 20-02065-BHL, 2020 WL 2621186, at *2 (Bankr. E.D. Wis. May 22, 2020) ("Counts I, II, and IV allege violations of the APA and seek mandamus relief. These claims do not originate in the Bankruptcy Code and are non-core."); *In re Dancor Transit, Inc.,* No. 2:20-AP-07024, 2020 WL 4730896, at *1 (Bankr. W.D. Ark. June 22, 2020) ("The debtor's remaining claims under the APA are non-core because they did not originate under the bankruptcy code.")

[30] Dkt. No. 2451 at ¶15.

[31] *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 24-25 (2000); *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec.*, 549 U.S. 443, 450-51 (2007).

[32] *See id.*

multiemployer pension system that PBGC insures.[33]  As the agency that promulgated the regulation Debtors seek to invalidate, PBGC has an interest in Debtors following the legal process implemented by Congress for challenges to federal regulations.  As the bankruptcy court in *In re Rhodes* recognized when discussing a different PBGC regulation, a regulation challenge disguised as a claims objection "upset[s] the Congressional scheme for uniform treatment of those liable for the amounts of unfunded pension liabilities."[34]

22.     Defendants now characterize PBGC's Motion as an improper "sur-reply."  On the contrary, dismissal of a claims objection "in whole or in part"[35] is the appropriate outcome where it raises a dispute that must be resolved in a different forum.  For example, claims objections have been dismissed because they included disputes required to be brought as an adversary proceeding under Rule 7001.[36]  Even if Debtors' challenge to the PBGC Regulation could be heard in this Court, an adversary proceeding would be required because Debtors seek equitable relief.[37]  As PBGC previously stated both to Debtors and to this Court, the question of whether Debtors have properly challenged the PBGC Regulation is a threshold issue and a pure question of law.[38]  Continuing with discovery and dispositive motions in the context of a claims objection, without determining this issue, would waste time and resources of the Court and the estate.

23.     Debtors have made active choices to sow confusion in this matter.  Instead of giving PBGC space on the agenda to make its arguments, Debtors filed a briefing and discovery

---

[33] *See* Dkt. No. 1620 at 10 n.38.

[34] *In re Rhodes, Inc.*, 382 B.R. at 559-560.

[35] 9 Collier on Bankruptcy ¶ 3007.2.

[36] *See In re Donson*, 434 B.R. 471, 473-474 (Bankr. S.D. Tex. 2010) (dismissing a claims objection that argued that a creditor's claim was nondischargeable because objections to dischargeability must be filed as an adversary proceeding); *In re Anthony*, 550 B.R. 577, 580 (M.D. Fla. 2016) (upholding Bankruptcy Court dismissal of a claims objection that disputed the validity of a lien for failure to file an adversary proceeding); *In re Stoker,* 525 Fed. Appx. 811, 812-813 (10th Cir. 2013) (upholding bankruptcy court dismissal based on Rule 3007(b) of a claims objection that contained an argument that a lien securing the claim was invalid).

[37] Fed.R.Bankr.P. 7001(7).

[38] *Id.* at ¶¶12; 18.

schedule that excluded PBGC, informing the agency that it must bring a motion if it wished its issues to be heard.  Now Debtors claim such motion is improper.  As with their failure to address PBGC's APA arguments, Debtors' attempt to exclude PBGC's Motion is a further effort to avoid the APA's requirements.

## Conclusion

For the reasons stated fully in the PBGC Motion and reiterated above, insofar as the CSPF Claims Objection and the Second Omnibus Objection seek to invalidate the PBGC Regulation, or any other PBGC regulation, PBGC moves the Court to dismiss or deny the CSPF Claims Objection and the Second Omnibus Objection, or to grant any other appropriate relief.

Dated:  March 3, 2024
        Washington, D.C.

Respectfully submitted,

/s/ Rebecca L. Stark
KAREN L. MORRIS
General Counsel
KARTAR S. KHALSA
Deputy General Counsel
STEPHANIE THOMAS
Assistant General Counsel
DESIREE M. AMADOR
SHARI D. WILLIAMS
ANDREW PHILIP WALKER
REBECCA L. STARK
Attorneys
Office of the General Counsel
**PENSION BENEFIT GUARANTY
CORPORATION**
445 12th Street, SW
Washington, D.C. 20024
Telephone: (202) 229-6569
Emails: Stark.Rebecca@pbgc.gov and
        efile@pbgc.gov