# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) ) ) | Case No. 23-11069 (CTG) |
| Debtors. | ) ) ) | (Jointly Administered) |

## DEBTORS' SEVENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO PROOFS OF CLAIM FOR WITHDRAWAL LIABILITY

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400
Email:       ljones@pszjlaw.com
             tcairns@pszjlaw.com
             pkeane@pszjlaw.com
             ecorma@pszjlaw.com

*Co-Counsel for the Debtors and Debtors in Possession*

Patrick J. Nash, P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
Michael B. Slade (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:       pnash@kirkland.com
             dseligman@kirkland.com
             mslade@kirkland.com

Michael Esser (admitted *pro hac vice*)
John Christian (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:   (415) 439-1400
Facsimile:   (415) 439-1500
Email:       michael.esser@kirkland.com
             john.christian@kirkland.com

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

**TABLE OF CONTENTS**

                                                                             **Page**

INTRODUCTION ................................................................................................................. 1

RELIEF REQUESTED ......................................................................................................... 2

JURISDICTION & VENUE .................................................................................................. 2

BACKGROUND ................................................................................................................... 3

LEGAL STANDARD ............................................................................................................ 7

ARGUMENT ......................................................................................................................... 8

        A.        The Pension Plans' Proofs of Claim Must Be Substantially Reduced .................... 8

        B.        The Pension Plans' Proofs of Claim Must Be Discounted To Present Value ........................................................................................................................ 12

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Affiliated Foods, Inc.*,
  249 B.R. 770 (Bankr. W.D. Mo. 2000) ................................................................... 13

*In re Allegheny Int'l, Inc.*,
  954 F.2d 167 (3d Cir. 1992) ..................................................................................... 8

*Cott Corp. v. New England Teamsters & Trucking Indus. Pension Fund* (*In re Cott Corp.*),
  26 B.R. 332 (Bankr. D. Conn. 1982) ........................................................................ 1

*GCIU-Employer Retirement Fund v. MNG Enterprises, Inc.*,
  51 F.4th 1092 (9th Cir. 2022) ......................................................................... 5, 8, 11

*Granfinanciera, S.A., v. Nordberg*,
  492 U.S. 33 (1989) .................................................................................................... 7

*Langenkamp v. Culp*,
  498 U.S. 42 (1990) .................................................................................................... 7

*Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*,
  653 F.3d 573 (7th Cir. 2011) .................................................................................. 10

*Pension Benefit Guar. Corp. v. R.A. Gray Co.*,
  467 U.S. 717 (1984) .................................................................................................. 8

*Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund*,
  15 F.4th 407 (6th Cir. 2021) ................................................................... 3, 4, 5, 8, 11

*In re Stone & Webster, Inc.*,
  279 B.R. 748 (Bankr. D. Del. 2002) ....................................................................... 12

*In re Town Sports Int'l*,
  2023 WL 8827193 (D. Del. Dec. 21, 2023) ............................................................. 7

*Travellers Int'l AG v. Robinson*,
  982 F.2d 96 (3d Cir. 1992) ....................................................................................... 7

*Trs. of the Local 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.*,
  692 F.3d 127 (2d Cir. 2012) ................................................................................ 9, 10

*In re U.S. Airways Grp., Inc.*,
  303 B.R. 784 (Bankr. E.D. Va. 2003) ..................................................................... 12

*UMW 1974 Pension Plan v. Energy West Mining Co.*,
  39 F.4th 730 (D.C. Cir. 2022) ..................................................................................5, 9, 11

*United Student Aid Funds, Inc. v. Espinosa*,
  559 U.S. 260 ...................................................................................................................7

*In re Winstar Commc'ns, Inc.*,
  554 F.3d 382 (3d Cir. 2009) ...........................................................................................7

**Statutes**

11 U.S.C.
  § 502...........................................................................................................................1, 3
  § 502(a) ..........................................................................................................................7
  § 502(b) ......................................................................................................................2, 7

28 U.S.C.
  §§ 157 and 1334.............................................................................................................2
  §§ 1408 and 1409...........................................................................................................3

29 U.S.C.
  § 1381(b) ........................................................................................................................9
  §§ 1381(b), 1399(c)(1)(B) ..............................................................................................9
  § 1391.............................................................................................................................9
  § 1391(b) ........................................................................................................................9
  § 1393(a) ......................................................................................................................11
  § 1393(a)(1) ...................................................................................................................4
  § 1393(c) ........................................................................................................................9
  § 1399(b) ........................................................................................................................2
  § 1399(c)(1)(B) ..............................................................................................................9
  § 1399(c)(4) .................................................................................................................12
  § 1405(b) ......................................................................................................................13
  § 4201(b) ........................................................................................................................9
  § 4219(b) ........................................................................................................................2

**Rules**

Fed. R. Bankr. P. 3001(f)......................................................................................................8

Fed. R. Bankr. P. 3007..................................................................................................1, 2, 3

Fed. R. Bankr. P. 3007-1................................................................................................3, 13

Fed. R. Bankr. P. 9013-1(f)...................................................................................................2

**Other Authorities**

29 C.F.R.
    § 4211.4(a)(1) ...................................................................................................9
    § 4219(c) .........................................................................................................10
    § 4219(c)(1)(B) ................................................................................................9
    § 4225(b) ........................................................................................................13

Alan Rappeport, *After $700 Million U.S. Bailout, Trucking Firm is Shutting
    Down*, N.Y. Times (July 28, 2023),
    https://www.nytimes.com/2023/07/28/business/bailout-trucking-firm-yellow-
    yrc-shutdown.html ..............................................................................................6

U.S. Department of Labor, *IAM National in "critical" status; Local 705 in
    "endangered" status*,
    https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-
    disclosure/2019-funding-status-notices#2019-c-and-d ......................................6

U.S. Department of Labor, *Local 705 and New England Teamsters in "critical"
    status; Virginia Teamsters in "endangered" status*,
    https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-
    disclosure/2015-funding-status-notices#2015-c-and-d ......................................6

U.S. Department of Labor*, Local 705 and Philadelphia Teamsters in
    "endangered" status*
    https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-
    disclosure/2017-funding-status-notices#2017-c-and-d ......................................6
    https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-
    disclosure/2020-funding-status-notices#2020-c-and-d ......................................6
    https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-
    disclosure/2021-funding-status-notices#2021-c-and-d ......................................6

U.S. Department of Labor, *Local 705 in "critical" status; Virginia Teamsters and
    Philadelphia Teamsters in "endangered" status*,
    https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-
    disclosure/2016-funding-status-notices#2016-c-and-d ......................................6

U.S. Department of Labor, *New England Teamsters in "critical and declining"
    status; Local 705 and Philadelphia Teamsters in "endangered" status*,
    https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-
    disclosure/2018-funding-status-notices#2018-c-and-d ......................................6

**INTRODUCTION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby object, pursuant to Section 502 of chapter 11 of of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to each proof of claim alleging withdrawal liability (each a "Proof of Claim," and together, the "Proofs of Claim") filed by Central Pennsylvania Teamsters Defined Benefit Plan ("Central PA Teamsters")[2]; IBT Local 705 ("Local 705")[3]; IAM National Pension Fund ("IAM National")[4]; New England Teamsters Pension Plan ("New England Teamsters")[5]; Teamsters Joint Council # 83 of Virginia Pension Fund ("Virginia Teamsters")[6]; Teamsters Local 710 ("Local 710")[7]; and Teamsters Pension Trust Fund of Philadelphia & Vicinity ("Philadelphia Teamsters")[8] (collectively, the "Pension Plans").

The Pension Plans are multi-employer pension funds that filed 139 Proofs of Claim against the estates, collectively seeking more than ***$582 million*** in withdrawal liability.[9] But these Proofs of Claim are demonstrably overstated and must be substantially reduced. Though the Pension Plans' calculations are not entirely clear, and the Debtors will need discovery to fully understand

---

[2] *See* Proofs of Claim Nos. 17671, 17676, 17679, 17683, 17686, 17692, 17698, 17710, 17715, 17720, 17728, 17736, 17744, 17752, 17759, 17763, 17767, 17770, 17778, 17783, 17788, 17795, 17799, 17808.

[3] *See* Proofs of Claim Nos. 15906, 15917, 15943, 15944, 15949, 15951, 15953, 15955, 15957, 15965, 15969, 15971, 15975, 15978, 15979, 15985, 15989, 15995, 15998, 16001, 16005, 16006.

[4] *See* Proof of Claim No. 18620.

[5] *See* Proofs of Claim Nos. 18617, 18621, 18627, 18631, 18638, 18644, 18649, 18654, 18664, 18671, 18677, 18682, 18688, 18692, 18696, 18703, 18706, 18707, 18709, 18713, 18717, 18720, 18725, 18729.

[6] *See* Proofs of Claim Nos. 4461, 4462, 4463, 4464, 4465, 4466, 4467, 4468, 4469, 4470, 4471, 4472, 4473, 4474, 4475, 4476, 4477, 4478, 4479, 4482.

[7] *See* Proofs of Claim Nos. 17473, 17474, 17477, 17478, 17480, 17481, 17482, 17483, 17485, 17486, 17487, 17490, 17492, 17493, 17495, 17496, 17498, 17499, 17501, 17502, 17504, 17506, 17509, 17510.

[8] *See* Proof of Claim Nos. 13913, 14076, 14079, 14082, 14084, 14109, 14111, 14112, 14116, 14119, 14137, 14211, 14213, 14216, 14235, 14238, 14242, 14259, 14263, 14265, 14315, 14316, 14318, 14319.

[9] *See supra* notes 2-8.

how the Pension Plans performed such calculations, it appears that the Pension Plans relied upon inflated contribution rates, failed to account for required liability caps, and/or neglected to discount their claims to present value. The Pension Plans, in other words, are seeking to recover far more than the Debtors' allocable share of unfunded vested benefits, and thus far more than the Pension Plans are entitled, all to the detriment of the Debtors' unsecured creditors and equity holders, whose own recoveries hang in the balance.

For these reasons, and as the Debtors will establish following fact and expert discovery and trial, the Pension Plans' Proofs of Claim should be disallowed or substantially reduced.[10]

## RELIEF REQUESTED

1. The Debtors request entry of an order pursuant to Section 502(b) of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules disallowing the Pension Plans' Proofs of Claim in their entirety or reducing them by, among other things, applying relevant statutory caps and discounting the claims to present value, which would reduce any allowed claim(s) by up to hundreds of millions of dollars.

## JURISDICTION & VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Pension Plans have waived any objection to this Court's adjudication of their Proofs of Claim by voluntarily filing 139 Proofs of Claim in this Court and seeking allowance of such claims here. But in any event, the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Practice and Procedure of the U.S. Bankruptcy

---

[10] This Objection is intended to, among other things, satisfy any obligation to request review by the Pension Plans of their alleged withdrawal liability assessment, as set forth under ERISA § 4219(b), 29 U.S.C. § 1399(b), to the extent, if any, that making such a request is required of any Debtor.

Court for the District of Delaware, to this Court entering a final order in connection with the Proofs of Claim and this Objection to the extent that it is later found that the Court, absent consent, cannot enter final orders or judgments in connection herewith consistent with Article III of the U.S. Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are Section 502 of the Bankruptcy Code, Rule 3007 of the Bankruptcy Rules, and Rule 3007-1 of the Local Rules.

## BACKGROUND

5. Most multiemployer pension plans ("MEPPs") were established in the decade following the passage of the Taft-Hartley Act of 1947. The Taft-Hartley Act set forth procedural and substantive standards for unions and employers regarding the provision of pension benefits. At the time, participating employers negotiated a contribution rate to the plan, and the plan's board of trustees set pension benefits consistent with the expected contributions.

6. Rules governing single employer pension plans and MEPPs changed with the passage of the Employee Retirement Income Security Act of 1974 ("ERISA"), which set forth a comprehensive scheme to regulate private pension plans. ERISA established reporting and disclosure requirements; funding standards; fiduciary duties; and plan termination insurance. It also established the Pension Benefit Guaranty Corporation ("PBGC"), an administrative agency under the Department of Labor that manages the plan termination insurance program.

7. In the late 1970s, Congress directed PBGC to report on the challenges of insuring MEPPs and to propose legislative solutions. *See Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund*, 15 F.4th 407, 415 (6th Cir. 2021). PBGC, in turn, found that ERISA did not adequately protect multiemployer plans from individual employer withdrawals. *Id*.

8. The problem was that "[e]mployer withdrawals reduce[d] a plan's contribution base," which would "push[] the contribution rate for remaining employers to higher and higher levels in order to fund past service liabilities, including liabilities generated by employers no longer participating in the plan." *Id*. (quoting *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 216 (1986)). Such increased rates would encourage further withdrawals, "thereby increasing the inherited liabilities to be funded by an ever decreasing contribution base," and creating a "vicious downward spiral". *Id*. (quoting *Connolly*, 475 U.S. at 216). PBGC thus recommended imposing withdrawal liability on employers leaving MEPPs, "requiring them to pay for their fair share of the plan's unfunded liabilities." *Id*. at 416. (internal quotations and citations omitted). Congress later incorporated these recommendations into the Multiemployer Pension Plan Amendments Act ("MPPAA"), which became law in 1980.

9. Through ERISA and the MPPAA, "Congress has established a comprehensive scheme for assessing and challenging an assess[ed] withdrawal liability. When an employer withdraws from a multiemployer plan, the plan sponsor is responsible for assessing withdrawal lability and sending the employer a demand for payment." *Sofco Erectors*, 15 F.4th at 416 (internal citation omitted) (citing 29 U.S.C. §§ 1382, 1399). Plan sponsors typically conduct these assessments in accordance with the requirements of ERISA and MPPAA: professional actuaries calculate withdrawal liability by using "actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan." 29 U.S.C. § 1393(a)(1). This requirement has been repeatedly interpreted as requiring the plan's actuary to use assumptions, in particular the interest rate used to calculate the present value of the plan's liabilities, based on the plan's past experience and

reasonable future expectations. *GCIU-Employer Retirement Fund v. MNG Enterprises, Inc.*, 51 F.4th 1092, 1099 (9th Cir. 2022); *Sofco Erectors, Inc.,* 15 F.4th 407, 423; *UMW 1974 Pension Plan v. Energy West Mining Co.*, 39 F.4th 730, 739 (D.C. Cir. 2022). The resulting interest rate should then be the same or similar to the Plans interest rate used for funding purposes. *Id*.

10.     It is the responsibility of the pension fund (in this case, Central PA Teamsters, Local 705, IAM National, New England Teamsters, Virginia Teamsters, Local 710, and Philadelphia Teamsters) to perform an initial formal assessment of withdrawal liability.  A current or former employer (such as the Debtors) that participated in the fund can then challenge any such assessment by, among other things, showing "that the actuarial assumptions and methods used in the determination were, in the aggregate, unreasonable . . . or the plan's actuary made a significant error in applying the actuarial assumptions or methods." *Sofco Erectors,* 15 F.4th at 416-17 (quoting 29 U.S.C. §§ 1393(a)(1), 1401(a)(3)(B)).  Here, while it is unclear how exactly the Pension Plans calculated their Proofs of Claim seeking withdrawal liability, it appears they did not perform a formal assessment or do so in accordance with the requirements of ERISA.

11.     Prior to these bankruptcy proceedings and the events that precipitated them, the Debtors had been a leading trucking and logistics company for more than 100 years, and operated one of the most comprehensive less-than-truckload ("<u>LTL</u>") networks in North America.[11]  As of July 2023, the Debtors employed nearly 30,000 dock, maintenance, and clerical workers, drivers, and other personnel, most of whom belonged to a union, including the International Brotherhood of Teamsters ("<u>IBT</u>"), the International Association of Mechanists and Aerospace Workers, and the Office and Professional Employees International Union (together, the "<u>Unions</u>").[12]

---

[11]  *See* Docket No. 14, *Declaration of Matt Doheny, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (filed August 7, 2023), at 1.

[12]  *Id*. at 14.

5

12. Collective bargaining agreements ("CBAs") governed the Debtors' relationship with each Union. Among other things, these CBAs required that the Debtors make regular contributions to dozens of multi-employer pension plans and various health and welfare funds for the Unions' active employees and retirees.

13. Still, many of these funds, including the Pension Plans, suffered from mismanagement and/or severe liquidity issues for years, such that, by 2021, they had terminated or reduced benefit payments to plan participants, and/or certified themselves to the federal government as in "critical," "critical and declining," or "endangered" status.[13] Moreover, and based on these issues, at least one of the Pension Plans – New England Teamsters – has submitted an application for special financial assistance ("SFA") under the American Rescue Plan Act of 2021.[14]

---

[13] *See, e.g.*, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/2015-funding-status-notices#2015-c-and-d (Local 705 and New England Teamsters in "critical" status; Virginia Teamsters in "endangered" status); https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/2016-funding-status-notices#2016-c-and-d (Local 705 in "critical" status; Virginia Teamsters and Philadelphia Teamsters in "endangered" status); https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/2017-funding-status-notices#2017-c-and-d (Local 705 and Philadelphia Teamsters in "endangered" status); https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/2018-funding-status-notices#2018-c-and-d (New England Teamsters in "critical and declining" status; Local 705 and Philadelphia Teamsters in "endangered" status); https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/2019-funding-status-notices#2019-c-and-d (IAM National in "critical" status; Local 705 in "endangered" status); https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/2020-funding-status-notices#2020-c-and-d (Local 705 and Philadelphia Teamsters in "endangered" status); https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/2021-funding-status-notices#2021-c-and-d (Local 705 and Philadelphia Teamsters in "endangered" status).

[14] New England Teamsters has since withdrawn its SFA application but advised its pensioners that it "anticipates filing a revised application". *See* https://nettipf.com/; *see also* https://www.pbgc.gov/sites/default/files/documents/new-england-teamsters-sfa-app.pdf (New England Teamsters' withdrawn SFA application). To the extent New England Teamsters *does* submit any such revised application and receives SFA funding, which would ensure New England Teamsters can cover all required benefit payments for the next three decades, the Debtors reserve their right to object that such funding is duplicative of the amounts sought through New England Teamsters' Proofs of Claim and/or that New England Teamsters no longer has any unfunded vested benefits and cannot seek withdrawal liability from the Debtors.

14. In July 2023, as a result of unconscionable and unforeseeable conduct by Teamsters leadership detailed in the Debtors' First-Day Declaration,[15] the Debtors commenced a permanent reduction of their workforce, began clearing their freight network, and ceased operations.[16] On August 6, 2023, the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code.

15. As of the claims bar date of November 13, 2023, the Pension Plans at issue in this objection filed 139 Proofs of Claim, collectively seeking more than $582 million in purported withdrawal liability.[17] These claims are separate from other proofs of claim filed by 11 other MEPPs who collectively sought over $7 billion even though they (unlike the MEPPs at issue here) have no unfunded vested benefits.[18] In any event, the Debtors object to these Proofs of Claim and ask that the Court reduce them materially.

## **LEGAL STANDARD**

16. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Once a party in interest objects, the Bankruptcy Court "shall determine the amount" (if any) of the claim. *Id*. § 502(b); *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) ("Respondents filed claims against the bankruptcy estate, thereby bringing themselves within the equitable jurisdiction of the Bankruptcy Court.").[19]

---

[15] *See* ECF No. 14, *Decl. of Matt Doheny, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Ch 11 Pets. & First Day Mots.* (filed August 7, 2023).

[16] *See* Alan Rappeport, *After $700 Million U.S. Bailout, Trucking Firm is Shutting Down*, N.Y. Times (July 28, 2023), https://www.nytimes.com/2023/07/28/business/bailout-trucking-firm-yellow-yrc-shutdown.html

[17] *See supra* n.2-9.

[18] *See Debtors' Objection to the Proofs of Claim Filed by the Central States Pension Fund* [ECF No. 1322]; *Second Omnibus Objection to Proofs of Claim Filed by Multi-Employer Pension Funds that Received Special Financial Assistance* [ECF No. 1962].

[19] *See also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (creditor "fil[ing] a proof of claim" constitutes "submitting itself to the Bankruptcy Court's jurisdiction with respect to that claim"); *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 406 (3d Cir. 2009) (by filing a claim, creditor "brings itself within the equitable

7

17. A proof of claim loses the presumption of prima facie validity under Bankruptcy Rule 3001(f) where, as here, an objecting party refutes at least one of the allegations that are essential to the claim's legal sufficiency. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992). Once such an allegation is refuted, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id.* at 174. Despite this shifting burden during the claim objection process, "[t]he burden of persuasion is always on the claimant." *Id.* (citing *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)).

## ARGUMENT

18. The Pension Plans' Proofs of Claim seek more than $582 million from the estate. For the following reasons (and others that will be demonstrated following discovery and trial), the Court should substantially reduce these Proofs of Claim.[20]

### A. The Pension Plans' Proofs of Claim Must Be Substantially Reduced

19. The Pension Plans' Proofs of Claim do not comply with ERISA's requirements for calculating withdrawal liability.[21]

20. Under ERISA, to determine an employer's withdrawal liability, a multi-employer pension plan must first calculate its unfunded vested benefits ("UVBs"). UVBs are "the difference between the present value of vested benefits and the current present value of the plan's assets."

---

jurisdiction of the Bankruptcy Court") (citing cases); *In re Town Sports Int'l,* 2023 WL 8827193, at *7 (D. Del. Dec. 21, 2023) ("The Supreme Court has held that when a creditor files a claim against a bankruptcy estate, the filing triggers a process of allowance and disallowance of claims, thereby subjecting the creditor to the equity power of the bankruptcy court. *See Granfinanciera, S.A., v. Nordberg*, 492 U.S. 33, 58 (1989) (explaining that the filing of a proof of claim subjects the claimant to the equitable jurisdiction of the bankruptcy court); *Langenkamp*, 498 U.S. at 44-45 (same); *see also Travellers Int'l AG v. Robinson*, 982 F.2d 96, 99-100 (3d Cir. 1992) (same). Thus, claimants face a choice when determining whether to file a proof of claim in a bankruptcy case: assert a proof of claim, and submit to the jurisdiction of the bankruptcy court … or do not submit a proof of claim, and be barred from collecting on a debt and sharing in a pro rata share of a bankruptcy estate.").

[20] For the avoidance of doubt, the Debtors reserve their rights to modify or add to their bases for objection to the Pension Plans' Proofs of Claim once the actual allegations made by the Pension Plans are clarified in discovery.

[21] *See* Ex. 1, *infra*, for the Proofs of Claim subject to this objection.

*Pension Benefit Guar. Corp. v. R.A. Gray Co.*, 467 U.S. 717, 725 (1984). To determine the present value of vested benefits, plans must use an interest rate based on the plan's experience and reasonable future expectations, and that is at least similar to the interest rate the plan uses in determining liabilities for funding purposes. *MNG Enterprises, Inc.*, 51 F.4th at 1099; *Sofco Erectors, Inc.,* 15 F.4th at 423; *Energy West Mining Co.*, 39 F.4th at 739. Once a MEPP has calculated its UVBs, it must then allocate a share of such UVBs to the withdrawn employer. Importantly, this UVB allocation is ***not*** the employer's withdrawal liability. *See* 29 U.S.C. § 1391. To determine such employer's withdrawal liability, the MEPP must take the employer's allocated UVBs and make several statutory adjustments. *See* 29 U.S.C. § 1381(b).

21. Three factors typically determine the amount of withdrawal liability a withdrawing employer owes. First, as previously discussed, the amount of UVBs. 29 U.S.C. § 1393(c); 29 C.F.R. § 4211.4(a)(1). Second, the withdrawing employer's contribution history. *Id*. § 4211.4(a)(2); 29 U.S.C. § 1391(b). And third, whether factors one and two entail an initial allocation of UVBs that would require more than 20 payment years to satisfy. *Id*. § 4219(c)(1)(B); 29 U.S.C. § 1399(c)(1)(B).

22. The third factor is especially important here. Under ERISA, an employer's liability is capped at the amount to be paid over 20 years, and the amounts are spread over, and required to be paid over, that 20-year period. *See Trs. of the Local 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.,* 692 F.3d 127, 130 (2d Cir. 2012) ("[ERISA] limits the employer's obligation to make these payments to 20 years, even if it would take more than 20 [annual] payments for the employer to pay its full withdrawal liability.") (citing 29 C.F.R. § 4219(c)(1)(B); 29 U.S.C. § 1399(c)(1)(B)).

23. In other words, ERISA requires that withdrawing employers make annual payments to the MEPP ***for the lesser of*** (1) the number of years it would take to satisfy its initial allocation

of unfunded benefits (adjusted under ERISA § 4201(b) before application of the 20-year cap), or (2) 20 years. *See* 29 U.S.C. §§ 1381(b), 1399(c)(1)(B); 29 C.F.R. § 4219(c)(1)(B).  Put differently, ERISA imposes a cap on withdrawal liability if an employer's allocation of UVBs (adjusted under ERISA § 4201(b) before application of the 20-year cap) requires more than 20 annual payments to satisfy. *E.g.*, *Trs. of the Local 138 Pension Tr. Fund*, 692 F.3d at 130 ("The statute limits the employer's obligation to make these payments to 20 years, even if it would take more than 20 payments for the employer to pay its full withdrawal liability.") (citing 29 U.S.C. § 1399(c)(1)(B); *Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*, 653 F.3d 573, 576 (7th Cir. 2011)).

24. These annual withdrawal liability payments are calculated independently of the withdrawal liability itself.  ERISA specifically provides that a withdrawing employer's annual withdrawal liability payment is capped at (a) the highest contribution rate in effect during the ten-year period ending with the year in which the employer withdraws multiplied by (b) the highest average annual contribution base units during three consecutive plan years during the ten-year period ending with the plan year prior to the plan year in which the employer withdrew. *See* 29 C.F.R. § 4219(c).

25. Here, New England Teamsters, Virginia Teamsters, Local 710, and Philadelphia Teamsters collectively seek approximately $457 million in total withdrawal liability from the Debtors, but they have either not attempted to calculate the Debtors' annual withdrawal liability, in the case of the Philadelphia Teamsters (*see, e.g.*, Proof of Claim No. 13913), or improperly calculated such annual withdrawal liability by using inflated contribution rates and/or failed to apply 20-year statutory cap to any annual withdrawal liability payments.

26. For example, in calculating the Debtors' annual withdrawal liability payment, New England Teamsters used the Debtors' contribution rates from 2001-2011, when the Debtors were

10

contributing more to the fund, rather than the Debtors' contribution rates for the ten-year-period immediately preceding the Debtors' withdrawal from the plan (i.e., 2013-2022), as required under ERISA. *See, e.g.*, Proof of Claim No. 18617 at 9. The reason for this was simple: New England Teamsters wanted to increase the amount of Debtors' withdrawal liability by using higher contribution rates. And it worked: by cherry picking contribution rates, rather than using those prescribed by ERISA, New England Teamsters were able to overstate the Debtors' annual withdrawal liability by *a multiple of ten*. That is impermissible.

27. But these were not the Pension Plans' only errors.[22] In addition to miscalculating (and overstating) the Debtors' annual withdrawal liability payments, many of the Pension Plans failed to apply ERISA's 20-year statutory cap to such payments. Had these plans performed their withdrawal liability calculations using the framework set forth above, they would have been forced to concede that it would take the Debtors far more than 20 years of payments to satisfy their claims. Indeed, under such framework, and using the Debtors' actual contribution rates to determine annual withdrawal liability, it would take the Debtors more than *21 years* to satisfy Local 710's claim; more than *35 years* to satisfy Virginia Teamsters' claims; more than *37 years* to satisfy Philadelphia Teamsters' claim; and more than *140 years* to satisfy New England Teamster's claim. That violates both the Bankruptcy Code and ERISA.

---

[22] Some of the Pension Plans may also have used an interest rate to determine the present value of vested benefits that does not comply with 29 U.S.C. § 1393(a) because such rates were not based on the experience and future expectations of the relevant Pension Plan. *See Sofco Erectors, Inc.,* 15 F.4th at 423; *see also MNG Enterprises, Inc.*, 51 F.4th at 1099; *Energy West Mining Co.*, 39 F.4th at 739. Whether this failure impacts the Pension Plans' claims depend on whether the reduction to the amount of vested benefits resulting from the use of a complying interest rate would reduce Debtors allocation of UVBs such that it would require less than 20 years to pay-off the allocation. Debtors will need discovery to determine if one or more of the Pension Plan used a non-complying interest rate, and the amount, if any, such interest rate effected the Pension Plans' claims against the Debtor.

28. Accordingly, New England Teamsters, Virginia Teamsters, Local 710, and Philadelphia Teamsters would need to properly calculate the Debtors' annual withdrawal liability payments, and apply the 20-year cap to such payments.

### B. The Pension Plans' Proofs of Claim Must Be Discounted To Present Value

29. Even after correcting for any errors that the Pension Plans made in calculating the Debtors' annual withdrawal liability and/or in failing to apply the statutory cap, the Pension Plans' Proofs of Claim must ***still*** further reduced to net present value.[23] That is, after properly calculating the Debtors' annual withdrawal liability and applying the 20-year cap, as applicable, a discount rate would then have to be applied to those sums to arrive at a present value of the claim as of the Petition Date.

30. Many factors must be considered in choosing the right discount rate, which should account for both the time value of money (as a 20-year stream of payments is being reduced to a single lump-sum which is assumed, under the Bankruptcy Code, to be paid on the Petition Date), and the risks of the underlying cash flows not being paid. The Pension Plans did not do this. Instead, the Pension Plans either failed to discount their claims to present value entirely, or used purposefully low discount rates that do not reflect reality and only serve to inflate the Pension Plans' Proofs of Claim. That is impermissible. *See, e.g.*, 29 U.S.C. § 1399(c)(4); *In re U.S. Airways Grp., Inc.*, 303 B.R. 784, 793 (Bankr. E.D. Va. 2003) ("In fixing the amount of a claim 'as of the date of the filing of the petition,' there is no dispute that the court must discount future damages to present value."); *In re Stone & Webster, Inc.*, 279 B.R. 748, 806 (Bankr. D. Del. 2002) (finding that all damages estimates based on a future payment stream must be reduced by use of a present value adjustment).

---

[23] *See* Ex. 2, *infra*, for the Proofs of Claim subject to this objection.

31. Expert testimony will establish that appropriate discount rate will be material even *if* it were appropriate to assess withdrawal liability here at all. Indeed, applying such discount rate to the Pension Plans' Proofs of Claim, as modified by the 20-year cap where applicable, would reduce such claims by hundreds of millions of dollars.[24]

## Compliance with Local Rule 3007-1

32. To the best of Debtors' knowledge and belief, this Objection and accompanying exhibits comply with Local Rule 3007-1. To the extent this Objection does not comply in all respects with the requirements of Local Rule 3007-1, the Debtors believe such deviations are not material and respectfully request that any such requirement be waived.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court enter an order modifying the Pension Plans' Proofs of Claim.

| | |
|---|---|
| Dated: March 13, 2024<br>Wilmington, Delaware | */s/ Laura Davis Jones*<br>Laura Davis Jones (DE Bar No. 2436)<br>Timothy P. Cairns (DE Bar No. 4228)<br>Peter J. Keane (DE Bar No. 5503)<br>Edward Corma (DE Bar No. 6718)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899-8705 (Courier 19801)<br>Telephone:    (302) 652-4100<br>Facsimile:     (302) 652-4400<br>Email:           ljones@pszjlaw.com<br>                      tcairns@pszjlaw.com<br>                      pkeane@pszjlaw.com<br>                      ecorma@pszjlaw.com |

---

[24] Finally, some portion of the Pension Plans' Proofs of Claim must also be subordinated under 29 U.S.C. § 1405(b) and 29 C.F.R. § 4225(b), such that the subordinated amount would only be recoverable if all other creditor claims were satisfied in full. *See, e.g.*, *In re Affiliated Foods, Inc.*, 249 B.R. 770, 785 (Bankr. W.D. Mo. 2000) (citing *Cott Corp. v. New England Teamsters & Trucking Indus. Pension Fund* (*In re Cott Corp.*), 26 B.R. 332, 335 (Bankr. D. Conn. 1982).

13

Patrick J. Nash, P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
Michael B. Slade (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:       (312) 862-2200
Email:              pnash@kirkland.com
                         dseligman@kirkland.com
                         mslade@kirkland.com

-and-
Michael Esser (admitted *pro hac vice*)
John Christian (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:     (415) 439-1400
Facsimile:       (415) 439-1500
Email:              michael.esser@kirkland.com
                         john.christian@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*