IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*<br><br>Debtor. | Chapter 11<br><br>Case No. 23-11069-CTG<br><br>Jointly administered<br><br>**Hearing: May 1, 2024 @ 10:00 a.m.**<br><br>**Obj. Deadline: April 17, 2024 @ 4:00 p.m.** |

### MOTION OF PEAPACK CAPITAL CORPORATION FOR ALLOWANCE AND IMMEDIATE PAYMENT OF THE ADMINISTRATIVE CLAIM

Peapack Capital Corporation (the "PCC"), by and through their undersigned counsel, hereby submits this Request for Allowance and Immediate Payment of the Administrative Expense Claim pursuant to Section 503(b)(1)(A), and in support thereof respectfully states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and 1334.

2. Venue is proper before this Court pursuant to 28 U.S.C. Sections 1408.

3. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).

### BACKGROUND

4. On August 6, 2023 (the "Petition Date") Yellow Corporation and the other debtors in possession in the above captioned chapter 11 cases (the "Debtors")1 filed voluntary petitions

---

[1] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions [Docket No. 14] (the "First Day Declaration").

1

for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors' chapter 11 cases are being jointly administered for procedural purposes. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Debtor YRC Enterprise Services, Inc. ("Enterprise") as agent for the "Lessee Affiliates" and PCC (the "Lessor"), entered into that certain Master Lease Agreement, dated August 25, 2017 as thereafter amended by that certain First Amendment to Master Lease Agreement dated as of April 29, 2020 (as amended, the "Master Lease") under which the Lessor agreed to lease to the Debtor certain trailers (the "Equipment").

6. Under the Master Lease, inter alia, the Debtor entered into at least four lease schedules, Schedule No. 1, Schedule No. 2, and Schedule No. 4 with YRC Inc. and Schedule No. 5 with USF Reddaway Inc. (collectively, the "Lease Schedules," and together with the Master Lease, the "Lease Agreement") pursuant to which PCC leased a total of 950 Trailers to the specified Debtors (collectively, the "Leased Equipment"). PCC is, or at all relevant times was, the owner of the Leased Equipment.

7. Pursuant to this Court's September 20, 2023, Order Approving the Joint Stipulation By and Among the Debtors and Peapack Capital Corporation (I) Granting Relief From the Automatic Stay and (II) Rejecting Certain Lease Agreement (Doc. 618)), inter alia, the Lease Agreement was rejected and PCC was granted relief from the automatic stay to recover the Leased Equipment.

8. In addition to amounts owed to PCC on account of its filed pre-petition claims, Debtors owe PCC for certain amounts which accrued post-petition.

9.  Pursuant to Schedule 1 the Debtor owes a total of $221,678.46 on account of payments due August 26, 2023 and September 26, 2023 (the "Schedule 1 Admin Claim").

10. Pursuant to Schedule 2 the Debtor owes a total of $219,898.92 on account of the payments due August 21, 2023 and September 21, 2023 (the "Schedule 2 Admin Claim").

11. Pursuant to Schedule 4 the Debtor owes a total of $47,326.5 on account of the payments due August 13, 2023, September 13, 2023, and October 13, 2023 (the "Schedule 4 Admin Claim").

12. Pursuant to Schedule 5 the Debtor owes a total of $27,769.64 on account of the payments due August 27, 2023 and September 27, 2023 (the "Schedule 5 Admin Claim").

13. On account of the Schedule 1 Admin Claim, the Schedule 2 Admin Claim, the Schedule 4 Admin Claim, and the Schedule 5 Admin Claim, PCC is entitled to an administrative expense claim in an amount equal to at least $516,673.52 for unpaid post-petition rent due under the Lease Agreement (the "Administrative Claim").

## RELIEF REQUESTED

14. Pursuant to 11 U.S.C. § 503(b)(1)(A) PCC seeks entry of an order allowing this administrative claim against the Debtors' bankruptcy estate in the amount of $516,673.52.

## LEGAL ARGUMENT

15. PCC is entitled to payment of the Administrative Claim pursuant to Section 503(b)(1)(a) of title 11 of the United States Code (the "Bankruptcy Code") because the sums due to PCC arose from the Debtor's continued post-petition use, possession, and marketing of PCC's Leased Equipment and such amounts were incurred as actual, necessary expenses of preserving the Debtor's estate.

16. 11 U.S.C. § 503 provides in pertinent part that—

17. (b) [a]fter notice and hearing, there shall be allowed administrative expenses . . . including—

18. (1)(A) the actual, necessary expenses of preserving the estate…

19. "For a claim in its entirety to be entitled to first priority under [section 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession.... [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business." *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 472 (Bankr. D. Del. 2006); *See also, In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) ("An administrative expense claim is entitled to priority under Section 503(b)(1)(A) if: (1) there was a 'post-petition transaction between the claimant and the estate,' and (2) those expenses yielded a 'benefit to the estate.'").

20. The Supreme Court in *Reading v. Brown* provided an expansive interpretation of what is an 'actual, necessary cost' entitled to priority, and stated that "'actual and necessary' costs should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible." *Reading Co. v. Brown*, 391 U.S. 471 at 484 (1968)). "

21. The Administrative Claim satisfies each requirement of Section 503(b)(1) of the Bankruptcy Code as such value was provided pursuant to a post-petition transaction and a benefit was conferred on the Debtor's estate. The continued availability of the Leased Equipment for Debtors' use and inclusion in Debtors' strategic planning and/or marketing efforts provided a direct benefit to the Debtor's post-petition efforts.

22. Additionally, PCC is entitled to the full value of the Administrative Claim because the value of said Administrative Claim arises from the post-petition costs incurred by the Debtor

at the contract rates. Section 365(a) of the Bankruptcy Code enables a debtor in possession to "assume or reject" any executory contract or unexpired lease. *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003); *See also*, 11 U.S.C. § 365(a). "Pending the decision to reject, the non-debtor entity to the contract is entitled to payment as an administrative expense for goods and services provided during the period of time before the debtor assumes or rejects the contract." *Id*. "There is an initial assumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate." *Id.*, citing *Memphis–Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.,* 783 F.2d 1283, 1285 (5th Cir.1986); *See also, In re Globe Metallurgical, Inc.,* 312 B.R. 34, 43 (Bankr. S.D.N.Y. 2004) ("there is an initial presumption that the contractual rate is the reasonable value of the goods or services provided to the estate which can only be overcome with convincing evidence to the contrary.").

23.  Here, the contract rates under the Lease Agreement absolutely represent the reasonable value which PCC provided to the Debtors post-petition. As such, PCC is entitled to payment of the full value of the Administrative Claim.

24.  As to timing of payment, the Bankruptcy Code merely provides that an allowed administrative expense must be paid by the effective date of a confirmed plan. 11 U.S.C. § 1129(a)(9). However, bankruptcy courts, authorized to use discretion to require earlier payment, have considered various factors, including prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors in undertaking this analysis. *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005). Additionally, one of the primary factors courts consider is the potential impact on an orderly and equal distribution among creditors and "the need to prevent a race to the debtor's assets" which is typically a concern if the estate if not able to pay all

administrative claims in full. *In re HQ Glob. Holdings Inc.*, 282 B.R. at 173. This is not a concern here as the estate is administratively solvent.

25. In light of the foregoing, PCC is entitled to allowance and immediate payment of its Administrative Claim.

## NOTICE

26. Notice of this Motion has been given to: (a) counsel for Debtor; (b) counsel for the Official Committee of Unsecured Creditors; (c) counsel for the Office of the United States Trustee for the District of Delaware; and (d) those parties entitled to notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, Peapack Capital Corporation respectfully requests that this Court grant enter an order allowing PCC's Administrative Claim in the amount of $516,673.52 pursuant to section 11 U.S.C. § 503(b)(1)(A), ordering immediate payment thereof; and granting such other and further relief as the Court deems just and appropriate.

Date: April 2, 2024  
Wilmington, DE

**McCARTER & ENGLISH LLP**

*/s/ Kate Roggio Buck*  
Kate Roggio Buck (DE #5140)  
405 North King Street, 8th Floor  
Wilmington, DE 19801  
Telephone: (302) 984-6300  
Facsimile: (302) 984-6399  
Email: kbuck@mccarter.com

*Attorneys for Peapack Capital Corporation*