# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re

**YELLOW CORPORATION, *et al*[1]**

**Debtors.**

-------------------------------------------------------

Chapter 11
Case No. 23-11069 (CTG)
(Jointly Administered)

## LIMITED RESPONSE OF THE MID-JERSEY TRUCKING INDUSTRY AND TEAMSTERS LOCAL 701 PENSION AND ANNUITY FUND AND JOINDER TO THE RESPONSE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS AND CENTRAL STATES BENEFIT FUNDS.

The Mid-Jersey Trucking Industry and Teamsters Local 701 Pension and Annuity Fund ("Pension Fund") by and through its undersigned attorneys, hereby files this Limited Response of the Pension Fund and Joinder to the Response filed by the International Brotherhood of Teamsters ("IBT") [D.I. 2778] and Central States Benefit Funds [D.I. 2843] to Debtors' Third Omnibus (Substantive), Fourth Omnibus (Substantive), and Fifth Omnibus (Substantive) Objection to WARN Act Claims:

1. On August 6, and continuing on August 7, 2023, Yellow Corporation and certain affiliated companies (collectively the "Debtors') each filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code").

2. Prior to the Petition Date, certain Debtors, specifically YRC, Inc., was party to a series of collective bargaining agreements with Teamsters Local 701 IBT Union ("Local 701")

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 511500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

**Error! Unknown document property name.**

which covered the terms and conditions of employment for employees working at the YRC Trenton and Hamilton, New Jersey locations, including providing that Debtor YRC make contributions to the Pension Fund.

3. At all times hereinafter mentioned, the Pension Fund has been a multi-employer employee benefit plan as defined under ERISA and administered pursuant to ERISA, 29 U.S.C. § 1001, et seq., which provides retirement benefits to eligible participants.

4. Pension Fund is administered by a Board of Trustees who are fiduciaries as defined by ERISA, 29 U.S.C. § 1002(14)(A) and 1102.

5. The Pension Fund was created for employees working pursuant to certain collective bargaining agreements between Local 701, located in North Brunswick, New Jersey and those employees' employers.

6. Debtor YRC was an establishment operating in the State of New Jersey, and was an employer of employees who worked at out of YRC's Hamilton and South Plainfield facilities, and were members of Local 701.

7. Debtor YRC and Local 701 were parties to a collective bargaining agreement which, among other obligations, obligated YRC to remit contributions to the Pension Fund on behalf of its employees. As noted above, the Pension Fund is administered by a Board of Trustees, these Trustees are fiduciaries whose primary responsibility is to run the plan solely in the interest of participants and beneficiaries for the exclusive purpose of providing benefits and paying plan expenses. Such Trustees exercise control and authority over plan management, plan assets and are responsible for making and enforcing policies to ensure that the Fund receives all contributions which are required to be made pursuant to the governing Trust document collective bargaining agreement(s) and other policies adopted by the Board of Trustees.

**Error! Unknown document property name.**

8. The Federal Worker Adjustment and Retraining Notification Act ("WARN Act") 29 USCS § 2101, was enacted in 1986 in response to extensive worker dislocation that occurred in the 1970s and 1980s when employees lost their jobs, often without notice, as companies were merged, acquired or closed.

9. The stated purpose of the WARN Act is to protect workers by obligating employers to give their employees advanced notice of plant closings. This allows workers who will be laid off time to "adjust to the prospective loss of employment, to seek and obtain alternative jobs and . . . to enter skill training or retraining that will allow [them] to successfully compete in the job market." *Hotel Employees & Rest. Employees Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999).

10. The Federal WARN Act provides that covered employers -- generally, those that employ at least 100 full-time workers at a single site of employment -- must provide 60 days' written notice before a closing or mass layoff. *See* 29 *U.S.C.* §2101 *et seq*. The Act dictates that notice be given to affected employees or their union representative, the state dislocated worker unit and the chief elected official of a unit of local government. *Id*. at § 2102(a).

11. Employers that violate the WARN Act are liable to their employees for back pay [or their representative] and benefits for each day notice is not provided, up to a maximum of 60 days. *Id*. § 2104.

12. The State of New Jersey enacted its own complementary statute to further enhance protections to New Jersey workers, the Millville Dallas Airmotive Plan Job Loss Notification Act, *N.J.S.A*. 34:21-1 et seq. ("NJ WARN Act").

13. The NJ WARN Act provides, in pertinent part.

> If an establishment is subject to… a termination of operations which results, during any continuous period of not more than 30 days, in the termination of employment of 50 or more

**Error! Unknown document property name.**

employees, or if an employer conducts a mass layoff, the employer who operates the establishment or conducts the mass layoff shall:

a. Provide, in the case of an employer who employs 100 or more employees, not less than 90 days, or the period of time required pursuant to the federal "Worker Adjustment and Retraining Notification Act," 29 U.S.C. §2101 et seq., or any amendments thereto, whichever is longer, before the first termination of employment occurs in connection with the termination or transfer of operations, or mass layoff, notification of the termination or transfer of operations or mass layoff to the Commissioner of Labor and Workforce Development, the chief elected official of the municipality where the establishment is located, each employee whose employment is to be terminated and any collective bargaining units of employees at the establishment.

b. Provide to each employee whose employee is terminated severance pay equal to one week of pay for each full year of employment. If the employer provides any employee with less than the number of days notification required pursuant to subsection a. of this section, the employer shall provide that employee with an additional four weeks of pay. The rate of severance pay provided by the employer pursuant to this subsection b. shall be the average regular rate of compensation received during the employee's last three years of employment with the employer or the final regular rate of compensation received during the employee's last three years of employment with the employer or the final regular rate of compensation paid to the employee, whichever rate is higher. Severance under this subsection shall be regarded as compensation due to an employee for back pay and losses associated with the termination of the employment relationship, and earned in full upon the termination of the employment relationship, notwithstanding the calculation of the amount of the payment with reference to the employee's length of service. Any back pay provided by the employer to the employee pursuant to section 5 of the "Worker Adjustment and Retraining Notification Act," Pub.L. 100-379 (29 U.S.C. §2104), because of a violation of section 3 of that act (29 U.S.C. §2102) shall be credited toward meeting the severance requirements of this subsection b.; and

14. On or about July 28, 2023, YRC conducted a mass layoff of all employees employed at its Hamilton and South Plainfield, New Jersey facilities without providing a timely federal WARN Act notice, or timely Millville Dallas Airmotive Plan Job Loss Notification Act (hereinafter referred to as "New Jersey WARN Act"), *N.J.S.A.* 34:21-1 et seq. notice.[2]

15. Debtor YRC failed to remit required contributions to the Pension Fund for work performed in July 2023.

---

[2] The federal Worker Adjustment and Retraining Notification Act, Pub.L. 100-379 (29 U.S.C. §2104) is complementary to the New Jersey WARN Act and Local 701 maintains that both the Federal WARN Act and the New Jersey WARN Act were violated.

**Error! Unknown document property name.**

16. As a result of its failure to make the required contributions to the Pension Fund for work performed in July 2023 as well as for its failure to remit contributions due as a result of its violation of the federal WARN Act and NJ WARN Act, the Pension Fund filed a proof of claim in the amount of $80,052.42 for employee benefit contributions owed by Debtors to the Pension Fund.

17. The Pension Fund's claim for delinquent contributions in the amount of $40,026.21 for work performed during the month of July 2023 is due and owing the and must remain on the docket in Proof of Claim 12513. The Pension Fund's claim is currently incorrectly listed under Schedule 1B, whereas it should be listed under Schedule 1C. Presumably, this incorrect listing is due to the long name of the Fund and the inability of the Proof of Claim form to capture the entire name in the appropriate field.

18. The $40,026.21 Pension Fund contribution delinquency must remain on the docket regardless of the outcome of the WARN Act Objections and Reponses of the parties.

19. The Pension Fund joins in the Response filed by the International Brotherhood of Teamsters and the Central States Benefit Funds to the Debtors' Third Omnibus (Substantive), Fourth Omnibus (Substantive), and Fifth Omnibus (Substantive) Objection to WARN Act Claims.

RESERVATION OF RIGHTS

20. This Limited Response and Joinder is made without prejudice to, and with full reservation of the Pension Fund's rights, claims, defenses, and remedies regarding Proof of Claim 12513, and without in any way limiting any other rights of the Fund.

21. Further, this Reservation of Rights is submitted without prejudice to, and with full reservation of, the Fund's rights, claims, defenses, and remedies, including the right to supplement the Reservation of Rights or modify, amend, or withdraw this Reservation of Rights, to seek

**Error! Unknown document property name.**

discovery, to raise additional objections and to introduce evidence at any hearing related to the Objection, and without in any way limiting or waiving any other rights of the Fund to respond to the Objection, on any grounds, as may be appropriate.

Dated: April 4, 2024

                                                      Respectfully submitted,
/s/ *Brady M. Connaughton*
Brady M. Connaughton, Esq.
COHEN, LEDER, MONTALBANO & CONNAUGHTON, LLC.
669 River Drive, Suite 125
Elmwood Park, New Jersey 07407
Attorneys for Mid-Jersey Trucking Industry and Teamsters Local 701 Pension and Annuity Fund

**Error! Unknown document property name.**