**<u>EXHIBIT 3</u>**

**SEFL00000749**
**(Odessa Lease Agreement)**

US.363199751.01

## LEASE AGREEMENT
### (3924 South County Road 1290, Odessa, TX)

THIS LEASE AGREEMENT ("Lease" or "Lease Agreement") is made and entered into as of this 3̲0̲ day of June, 2009 by and between **SOUTHEASTERN FREIGHT LINES, INC.**, a South Carolina corporation ("Landlord") and **YRC INC.**, a Delaware corporation ("Tenant").

Upon the terms and subject to the conditions hereinafter set forth, Landlord leases to Tenant and Tenant leases from Landlord, the Premises (as hereinafter defined):

1      **LEASED PREMISES.** The premises leased ("Premises" or "Leased Premises") to Tenant is the real estate, including all improvements and fixtures located thereon, described on Exhibit A, attached hereto and incorporated herein by referenced, consisting of a motor freight terminal located at 3924 South County Road 1290, Odessa, TX 79765-9504, and related parking. Landlord makes no representation or warranty with respect to the condition of the Leased Premises or its fitness or availability for any particular use, and Landlord shall not be liable for any latent or patent defect therein.

2.      **TERM.** The Lease is for an initial term ("Initial Term") of ten (10) years, commencing on June 3̲0̲, 2009 (the "Commencement Date"), and ending on the last day of the month in which the tenth (10th) anniversary of the Commencement Date occurs.

Tenant shall have the option to extend the Initial Term of this Lease for up to two (2) separate option periods of ten (10) years each (each a "Renewal Term") upon and subject to the terms set forth below in this Section 2. Subject to Tenant exercising its options to extend in accordance with the terms of this Lease, the first Renewal Term shall commence at the expiration of the Initial Term and the second Renewal Term shall commence at the expiration of the first Renewal Term. Except as otherwise expressly provided herein, all of the terms and conditions of this Lease applicable to the Initial Term shall continue to apply during each Renewal Term. To validly exercise its options to extend, Tenant must and shall deliver to Landlord written notice of Tenant's election to so extend (an "Extension Notice") not later than ninety (90) days prior to the expiration of the Initial Term or the first Renewal Term, as applicable. The "Term", as such term is used herein, means the Initial Term as extended (or as may be extended) pursuant to this Section 2.

3.      **RENT.** Tenant covenants with the Landlord to pay Rent (as hereinafter defined) without any deduction, defalcation, set-off or abatement whatsoever, except as expressly provided in this Lease. For purposes of this Lease, the term "Rent" shall include Minimum Rent (as hereinafter defined) and any and all other amounts payable by Tenant under this Lease ("Additional Rent").

K&E 14206706.5

1

SEFL00000749

Subject to the increases as hereinafter provided, Tenant shall pay to Landlord during the Term hereof, an annual minimum rent ("Minimum Rent") of FORTY EIGHT THOUSAND FIVE HUNDRED SEVENTY SIX DOLLARS ($48,576) per year payable in twelve (12) equal monthly installments, in advance on or before the first day of each calendar month during the Term of the Lease, in the amount of FOUR THOUSAND FORTY EIGHT DOLLARS ($4,048) per month.  In the event the Term of this Lease does not commence on the first day of a calendar month, the installment of Minimum Rent for the partial month shall be pro-rated based on the number of days of the Term within such calendar month and paid on the date this Lease is executed by Tenant.  Upon the date that is eighteen (18) calendar months after the first day of the calendar month immediately following the month containing the Commencement Date and on the first day of the calendar month immediately following each eighteen (18) month period thereafter (including any Renewal Terms), Minimum Rent shall increase by the greater of (i) two percent (2%) and (ii) the percentage increase in the CPI (as hereinafter defined) from the CPI in effect on the commencement of the immediately prior eighteen (18) month period; provided, however, in no event shall Minimum Rent increase by more than five percent (5%) over the Minimum Rent payable during the immediately preceding eighteen (18) month period.  Such monthly payments shall be paid to the Landlord at the address set forth herein for notice to the Landlord.

As used above, "CPI" means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items (1982-84=100), published by the Bureau of Labor Statistics of the U.S. Department of Labor.  If the CPI is not published for any month during the Term, Landlord, in its reasonable discretion, may substitute a comparable index which reflects the purchasing power of the consumer dollar and is published by the Bureau of Labor Statistics of the U.S. Department of Labor.  If such an index is not published by the Bureau of Labor Statistics, Landlord, in its reasonable discretion, shall select a comparable index published by a nationally recognized responsible financial periodical.

Any and all sums of money or charges required to be paid by the Tenant under this Lease, whether to the Landlord or otherwise, shall be deemed to be and be paid as Rent and such sums of money or charges if not paid when due, shall be collectible in the same manner as Rent in arrears.

4.      **REAL ESTATE TAXES.**  Tenant shall pay as Additional Rent all Real Estate Taxes (as hereinafter defined).  "Real Estate Taxes" shall mean all taxes, rates, assessments and impositions, general and special, levied or imposed with respect to the Premises (including any accessories and improvements therein and thereto) for schools, public betterment, general or local improvements and any surtax and tax on non-residential real properties, any water or sewer rate and service tax, whether such taxes, rates, assessments or impositions are charged by a municipal, state, federal or any other body of competent jurisdiction, as well as any tax on capital imposed on the Landlord or the owner of the Premises, accruing during and payable after the Commencement of the Lease Term.  Nothing contained in this Lease, however, shall require Tenant to pay any

2

SEFL00000750

estate, inheritance, franchise, net income or similar taxes of Landlord (other than any rental taxes imposed upon the Landlord that are measured by or based in whole or in part directly upon the Rent payable under this Lease, whether existing at the date hereof or hereinafter imposed by any governmental authority) nor shall any of same be deemed Real Estate Taxes, unless the same shall be specifically imposed in substitution for, or in lieu of, Real Estate Taxes. Tenant shall pay, as Additional Rent, any rental taxes imposed on Landlord and based directly on rent payable. In addition, Tenant shall not be required to pay any tax imposed with respect to the sale, exchange, mortgage, encumbrance, or other disposition by Landlord, in whole or in part, of the Premises or Landlord's interest in this Lease.

Subject to receipt from Landlord of a copy of a bill for Real Estate Taxes payable by Tenant hereunder, Tenant shall pay such Real Estate Taxes to Landlord no less than twenty (20) days prior to the delinquency date thereof. Funds paid by Tenant as Real Estate Taxes shall be held in a segregated escrow account by Landlord, shall be used only for the payment of the Real Estate Taxes, shall be applied towards the payment of the Real Estate Taxes next coming due prior to the delinquency date thereof, and, within twenty (20) days after the due date thereof, Landlord shall provide evidence to Tenant of payment thereof.

Notwithstanding anything to the contrary in this Lease:

(a)     Landlord shall pay prior to delinquency all Real Estate Taxes accruing prior to but payable after the commencement of the Term and, within twenty (20) days after the due date thereof, Landlord shall provide evidence to Tenant of payment thereof.

(b)     In the calendar year in which the last day of the Term occurs, Tenant shall pay to Landlord, within twenty (20) days prior to the expiration of the Term, Tenant's estimated proportionate share of Real Estate Taxes for the calendar year, prorated as of the last day of the Term.

(c)     If Tenant has prepaid any Real Estate Taxes for periods extending beyond the end of the Term, Landlord shall, within forty-five (45) days of the expiration of the Term, reimburse Tenant for such Real Estate Taxes, which obligation shall survive the expiration or earlier termination of this Lease.

Tenant may, at Tenant's expense and with notice to Landlord, contest the validity or amount of any Real Estate Taxes with respect to the Leased Premises by appropriate proceedings duly instituted and diligently prosecuted. Landlord shall, at Tenant's expense, cooperate and participate in any such contest to the extent reasonably requested by Tenant. Promptly after the execution of this Lease, Landlord and Tenant shall confirm that the appropriate governmental authorities shall deliver copies of all future tax statements or invoices to Landlord. Tenant shall be entitled to any refund (after the

3

SEFL00000751

deduction therefrom of all reasonable out-of-pocket expenses paid or incurred by Landlord in connection therewith) of any Real Estate Taxes (including, without limitation, penalties or interest thereon) received by Tenant or Landlord, whether or not such refund was a result of actions or proceedings instituted by Tenant.

5.      **HOLDING OVER.** If Tenant, with Landlord's consent, remains in possession of the Leased Premises after expiration or termination of the Term, such holdover by Tenant shall be deemed to be on a month-to-month lease terminable by either party upon thirty (30) days prior written notice. During any such holdover period, Tenant, as licensee, shall pay a daily license fee in the amount of one hundred and twenty-five percent (125%) of the prorated daily Minimum Rent charged immediately preceding the hold-over (using an assumed 30-day month and the last monthly Minimum Rent rate), plus Additional Rent allocable to such period. If Tenant fails to surrender the Premises after expiration or termination of the Term without Landlord's consent, Tenant shall indemnify, defend and hold Landlord harmless from all loss and liability, including, without limitation, any loss or liability resulting from any claim against Landlord made by any succeeding tenant founded on or resulting from Tenant's failure to surrender the Premises, together with, in each case, actual attorneys' fees and costs. All other provisions of this Lease, except those pertaining to Minimum Rent and any option to extend, if included herein, shall apply to the holdover license period.

6.      **INTENTIONALLY OMITTED.**

7.      **USE.** The Leased Premises may be used and occupied by Tenant solely as a motor freight terminal provided the same complies with all applicable Laws (as hereinafter defined), and Tenant covenants not to use the Leased Premises for any other purpose without the prior written consent of Landlord, which consent shall not be unreasonably withheld, delayed or conditioned. Tenant shall not use or occupy, or permit the Premises to be used or occupied in any manner that would in any way violate any applicable Laws now in effect or hereinafter adopted by any governmental authority having jurisdiction.

8.      **ALTERATIONS.** Without the prior written consent of Landlord (which consent shall not be unreasonably withheld, delayed or conditioned), Tenant will not make (i) any alterations, repairs, additions, changes or improvements in excess of $10,000 in aggregate cost in any rolling twelve (12) month period or (ii) any repairs, alterations, additions or improvements structural in nature (collectively the "Improvements") or permit the same to be made in or to the Premises. Any Improvements made to the Premises by Tenant at any time during the Term of this Lease, shall be at the sole risk, cost and expense of Tenant and made to the reasonable satisfaction of the Landlord, and Tenant shall bear all operating costs in respect of any such Improvement so made. Landlord shall be entitled to impose as a condition of its consent to the Improvements the requirement that the specifications of such Improvements shall be in accordance with Landlord's general standard in the Premises.

4

SEFL00000752

At the expiration or earlier termination of this Lease for whatever reason, if Landlord conditioned its consent upon Tenant's removal of the Improvements upon the expiration of the Term, Tenant shall, as required by Landlord, remove all, or certain specified Improvements in the Premises, pursuant to the terms of this Lease.    Tenant shall thereupon become obligated to restore the Premises to their original condition, (save for such Improvements as Landlord permits to remain).    As to any Improvements Tenant is not required to remove, such Improvements and any other permitted alterations to the Premises shall remain in the Premises and be deemed to have immediately become the property of Landlord without any compensation being paid therefor other than the demise of the Premises set forth herein.

Tenant shall promptly pay all charges incurred by the Tenant for any work, materials or services that may be done, supplied or performed in respect of the Premises and shall not cause or permit any lien or encumbrance against the Premises other than any lien or encumbrance existing as of the Commencement Date and any mortgage, lien, encumbrance, or other charge created by or resulting solely from any act or omission of Landlord.    In the event any such lien or encumbrance caused by Tenant shall be filed against the Premises, Tenant shall, within five (5) days after receipt of notice of such lien, deliver written notice to Landlord thereof, and Tenant shall, within thirty (30) days after receipt of notice of such lien or encumbrance, discharge the same by bond, payment of the amount due the holder of such lien or encumbrance or other means reasonably acceptable to Landlord.    Tenant may in good faith contest any such lien or encumbrance provided that within such thirty (30) day period Tenant provides Landlord with a surety bond or other form of security reasonably acceptable to Landlord, protecting against said lien or encumbrance.    In the event Tenant fails to either discharge such lien or encumbrance or protect against such lien or encumbrance in accordance with the foregoing, then Landlord may, but, shall be under no obligation to pay into Court or to the creditor thereof the amount required to obtain a discharge of any such liens and encumbrances in the name of Tenant and any amount so paid together with all costs in respect of such proceedings shall be forthwith due and payable by Tenant to Landlord as Additional Rent.

9.    **LACK OF LANDLORD OBLIGATIONS**. Except as expressly provided in this Lease, there shall be no abatement from or reduction of the Rent due hereunder regardless of the reason or cause. Tenant shall not be entitled to damages, costs, losses or disbursements from Landlord regardless of the cause or reason therefor (except where such cause or reason is Landlord's gross negligence, bad faith or willful misconduct). Without restricting the foregoing, Landlord shall not be liable for any other damage to or loss, theft, or destruction of property, or death of, or injury to, persons at any time in or on the Premises, however occurring. Notwithstanding any provision to the contrary herein, Landlord shall not be required under the terms of this Lease to make any improvements or alterations to the Premises with respect to Americans with Disabilities Act.

Tenant covenants and agrees that it will protect, save and keep Landlord harmless and indemnified against any penalty or damage or charge imposed for any violation of any

SEFL00000753

laws or ordinances occasioned by Tenant or those acting by or through Tenant, and that Tenant will protect, indemnify, save and keep harmless Landlord against any and all damage or expense arising out of any accident or other occurrence on or about the Premises causing injury to any person or property (except to the extent caused by Landlord), and against any and all damage or expense arising out of any failure of Tenant in any respect to comply with and perform all the requirements and provisions of this Lease.

10.     **TENANT REPAIRS AND MAINTENANCE.** Tenant accepts the Premises in its condition as of the date of this Lease and acknowledges that neither Landlord nor any agent of Landlord has made any representation as to the condition of the Premises or the suitability of the Premises for Tenant's intended use. Tenant at its cost shall maintain, and repair in a good and safe operating condition, all portions of the Leased Premises including, but not limited to, repair of the building structure, roof, yard, fence and underground utilities, windows, doors, dock doors, dock levelers, entrances and vestibules, and all electrical, mechanical, HVAC, plumbing and other fixtures and systems located within the Leased Premises, including the sprinkler system servicing the Leased Premises. At the expiration of the Term of this Lease, or upon prior termination, Tenant shall surrender the Leased Premises to Landlord in the same condition as received, normal wear and tear and damage by casualty and condemnation excepted. Notwithstanding the foregoing, all work shall be performed in accordance with Section 8 of this Lease. Tenant shall maintain the Premises in compliance in all material respects with all environmental laws, rules and regulations and all other laws, rules and regulations applicable to the Leased Premises, including any domestic, federal, provincial, state, municipal and local laws, statutes, regulations, ordinances, and any orders of a court of governmental authority, relating in any way to the natural or human environment (including land, surface water, ground water, and real, personal, moveable and immovable property), public or occupational health and safety and the manufacture, importation, handling, use, reuse, recycling, transportation, storage, disposal, elimination and treatment of hazardous substances, including without limitation the Americans with Disabilities Act (collectively, "Laws"). Notwithstanding the foregoing, Tenant shall not be required to make any improvements to the Premises with respect to Americans with Disabilities Act that are unrelated to Tenant's specific use of the Premises. Tenant shall regularly remove all trash and refuse of any kind from the Leased Premises at its own expense. Tenant shall be liable for any damage to the Leased Premises and personal injury or death arising from its use of the Leased Premises or from the acts or omissions of Tenant, its officers, employees, contractors and/or agents, which obligation shall survive the expiration or earlier termination of this Lease.

11.     **PERSONAL PROPERTY.** Tenant shall remain responsible for disposing of any personal property belonging to Tenant or any subtenant if applicable, at the expiration of this Lease, so that the Leased Premises are delivered to Landlord at the expiration of this Lease in good and presentable condition and appearance, including repair of any damage caused by such removal of such personal property. Landlord hereby waives any statutory or common law lien that may be granted or deemed to be granted to Landlord in Tenant's

6

SEFL00000754

personal property or intangible property. In addition, Landlord agrees that, upon the request of any person that shall be providing secured financing to Tenant, or a purchase money equipment financier or equipment lessor of Tenant (each a "Tenant Lender"), Landlord shall, at Tenant's sole cost and expense, negotiate in good faith for the purpose of executing and delivering a commercially reasonable waiver or subordination of Landlord's statutory lien rights, if any, and a consent and agreement with respect to the respective rights of Landlord and such Tenant Lender regarding the security interests in, and the timing and removal of, any of Tenant's personal property which such Tenant Lender has a secured interest (the "Collateral"), in form and substance reasonably acceptable to Landlord and such Tenant Lender.

12.   **SUBLEASE AND ASSIGNMENT.** Except as provided in this Section, Tenant (including any Tenant Lender and any assignee of a Tenant Lender that shall succeed to Tenant's rights under this Lease) shall not assign this Lease nor sublet any portion of the Premises without the consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed; provided, however, Tenant shall have the right, without the consent of Landlord, to assign this Lease or sublet any portion of the Premises to any entity controlling, controlled by or under common control with Tenant provided such entity remains controlling, controlled by or under common control with Tenant throughout the Term of this Lease. Notwithstanding the foregoing, in the event of any proposed assignment or sublet that requires Landlord's consent, upon receipt of Tenant's request for consent, Landlord may elect, in the event of an assignment, to recapture the Premises, or, in the event of a sublet, recapture that portion of the Premises proposed to be sublet (the "Recapture Space"). Landlord's election to recapture must be in writing and delivered to Tenant within thirty (30) days of Landlord's receipt of Tenant's request for consent. Tenant shall have ten (10) days upon receipt of notice of Landlord's election to recapture, to provide written notice to Landlord of Tenant's election to rescind its request for consent of assignment or sublease. If Tenant does not elect to rescind its notice of assignment or sublease, Landlord's recapture shall be effective on a date selected by Landlord, which date shall be (i) on or before the date which is thirty (30) days after the proposed effective date of the assignment or sublet, as specifically set forth in Tenant's written request to Landlord for consent, or (ii) if Tenant's written request to Landlord for consent to a proposed assignment or sublet does not contain a proposed effective date, then on or before the date which is thirty (30) days after Landlord's election to recapture the Recapture Space. Upon the effective date of such recapture, with respect to the Recapture Space, this Lease shall be terminated and Tenant shall be released from any and all obligations under this Lease with respect to the Recapture Space. Absent the written agreement of Landlord, no assignment of this Lease or subletting of all or any portion of the Premises shall relieve Tenant of any of the terms, conditions, covenants and obligations of this Lease on the part of Tenant to be performed.

Notwithstanding any provision to the contrary herein, Landlord's consent shall not be required in connection with an assignment of this Lease to Tenant Lender pursuant to a leasehold mortgage or leasehold deed of trust granted in accordance with the terms and conditions of Section 26(d) (and any subsequent assignee of such Tenant Lender,

7

SEFL00000755

provided such assignee of Tenant Lender is not a competitor of Landlord) as a result of an event of default under loan documents evidencing the loans secured by such leasehold mortgage or leasehold deed of trust, as described in Section 26(d).

13.   **UTILITIES**. Tenant shall pay for, at its own expense, all utilities and services furnished to or used by it in connection with or chargeable against the Leased Premises, including, without limitation, gas, electricity, water, telephone service and trash collection, and for all connection charges. Tenant shall timely pay when due all invoices for utilities and services and shall indemnify and hold harmless Landlord from and against any loss, expense and cost in connection therewith.

14.   **INSURANCE - TENANT**. Tenant shall, at all times during the Term of this Lease and at Tenant's sole cost and expense, obtain and keep in force the insurance coverages and amounts set forth in this section:

(a)     Tenant shall maintain "all risk" property insurance for the Premises and all personal property of Tenant and improvements, fixtures and equipment constructed or installed by Tenant in the Premises and any property for which Tenant has control or custody in an amount not less than the replacement cost. Such property insurance shall include business income and extra expense coverage with sufficient limits for Tenant to sustain its business operation at this location for a period of twelve (12) months. Upon a casualty, proceeds received under such extra expense coverage shall be used to pay any rents at a temporary facility required by Tenant while the Premises are repaired in order to keep funds available to continue to pay Rent hereunder. Tenant shall maintain boiler and machinery insurance against loss or damage from an accident from Tenant installed in the Premises for replacement cost and plate glass insurance coverage against breakage of plate glass in the Premises from causes other than insured perils. Tenant may self insure for plate glass. Any deductibles selected by Tenant shall be the sole responsibility of Tenant.

(b)     Workers' Compensation in statutory limits as required by law where the facility is located; and Employer's Liability with limits not less than $1,000,000 each accident; $1,000,000 disease-each employee; $1,000,000 disease - policy limit. Tenant shall have the right to self-insure for the insurance required under this Section 14(b).

(c)     Business Auto Liability for auto coverage and/or Truckers or Motor Carrier coverage form as appropriate for insuring Tenant's vehicles used on the Premises with limits not less than $6,000,000, combined single limit, each accident, for all owned, hired and non-

8

SEFL00000756

owed autos or trucks or other insured vehicles, insuring against claims for bodily injury or property damage. Tenant shall have the right to self-insure for the insurance required under this Section 14(c).

(d)     Commercial General Liability with limits not less than six million dollars ($6,000,000) per occurrence and six million dollars ($6,000,000) general aggregate, which insures against claims for bodily injury, personal injury, advertising injury and property damage, based upon, involving or arising out of the use, occupancy or maintenance of the Premises and the property. Such insurance shall include blanket contractual liability, fire legal liability, premises, products and completed operations, and medical payments with minimum limits of ten thousand dollars ($10,000) each accident. The policy shall contain an exception to any pollution exclusion which insures damage or injury arising out of heat, smoke or fumes from a hostile fire. Such insurance shall be written on an occurrence basis and contain a standard separation of insureds provision.

(e)     Motor Truck Cargo Liability and/or Warehouse Legal Liability covering the Tenant's legal liability for personal property of others on the Premises and including coverage for temporarily stored cargo on loaded trailers or otherwise stored on the Premises with limits sufficient to insure the full value of the Tenant's legal liability for the cargo or personal property.

(f)     Pollution exclusion under business auto liability has been amended to include loss, damage, or injury caused by the discharge, release, or escape of pollutants if it is the direct result of a sudden and accidental occurrence involving the operation or use of a covered vehicle or if the pollutants are goods of others which are legally in transit and physically in Tenant's possession at the time of discharge, dispersal, release, or escape but only if they have not been in Tenant's possession for more than 30 days.

All insurance and all renewals thereof shall be issued by companies with a rating of at least "A-" "VIII" or better in the current edition of Best's Insurance Reports or S&P A (or as otherwise reasonably acceptable to Landlord) and be approved to do business in the state in which the Premises is located. Each policy shall expressly provide that the policy shall not be canceled or materially reduced below the limits required without the insurance broker providing thirty (30) days' prior written notice to Landlord and shall remain in effect notwithstanding any such cancellation or alteration until such notice shall have been given to Landlord and such period of thirty (30) days shall have expired. All liability insurance (except employers liability) shall name Landlord, its investment

9

SEFL00000757

manager, asset manager, property manager, ground lessor (if applicable), and mortgagee as additional insureds to the extent of the indemnity provided in this Lease. All property insurance shall name Landlord as loss payee in accordance with Landlord's interest in any improvements and betterments. Tenant shall deliver certificates of insurance, reasonably acceptable to Landlord, to Landlord at least ten (10) days before the Commencement Date and at least ten (10) days before expiration of each policy. Additional Insured Endorsement CG 20 11 11 85 or its equivalent is required to be provided as soon as it is available. If Tenant fails to insure or fails to furnish any such insurance certificate, Landlord shall have the right, but not be required to, from time to time to effect such insurance for the benefit of Tenant or Landlord or both of them, and Tenant shall pay to Landlord on written demand, as Additional Rent, all premiums paid by Landlord. Landlord may at any time amend the requirements herein due to (i) information not previously known to Landlord and which poses a material risk (ii) changed circumstances which in the reasonable judgment of Landlord renders such coverage materially inadequate or (iii) as reasonably required by Landlord's lender.

Subrogation. Tenant waives on behalf of all insurers under all policies of property insurance now or hereafter carried by Tenant insuring or covering the Premises, or any portion or any contents thereof, or any operations therein, all rights of subrogation which any such insurer might otherwise, if at all, have to any claims of Tenant against Landlord. Landlord waives on behalf of all insurers under all policies of property insurance now or hereafter carried by Landlord insuring or covering the Premises, or any portion or any contents thereof, or any operations therein, all rights of subrogation which any such insurer might otherwise, if at all, have to any claims of Landlord against Tenant. Landlord and Tenant shall procure from each of the insurers under all policies of property insurance now or hereafter carried by such party insuring or covering the Premises, or any portion or any contents thereof, or any operations therein, a waiver of all rights of subrogation which the insurer might otherwise, if at all, have to any claims of either party against the other as required by this section.

15. **INSURANCE – LANDLORD.** Landlord shall, at all times during the term of this Lease, secure and maintain, at Landlord's sole cost and expense, commercial general liability insurance with limits not less than five million dollars ($5,000,000) per occurrence and aggregate. Such insurance shall be in addition to, and not in lieu of, insurance required to be maintained by Tenant. Tenant shall be named as an additional insured on any policy of liability insurance maintained by Landlord. In addition, Landlord shall secure and maintain rental income insurance and Tenant shall reimburse Landlord for the cost of premiums related to the Term paid by Landlord for such rental income insurance.

16. **MUTUAL INDEMNIFICATION.** Tenant shall indemnify, protect, hold harmless, and shall defend at its own expense, Landlord and Landlord's mortgagees from time to time against any and all claims and demands made by or arising from Tenant's officers, employees, contractors, invitees and/or agents and/or from the actual or alleged act or omission of Tenant, its officers, agents, invitees and/or employees (except to the

SEFL00000758

extent arising from Landlord's gross negligence or willful misconduct), as well as those arising from Tenant's failure to comply with any applicable environmental laws or regulations (as described in more detail previously herein) and with any covenants of this Lease Agreement on its part to be performed. Tenant further agrees to waive all claims against Landlord and Landlord's mortgagees from time to time on account of any loss or damage from whatsoever cause (other than gross negligence or willful misconduct of Landlord) which may occur to it or its property in the use and occupancy of the Leased Premises, the giving of this waiver being one of the considerations upon which this Lease Agreement is granted. Landlord shall indemnify, protect, hold harmless, and shall defend at its own expense, the Tenant from time to time against any and all claims and demands made by or arising from Landlord's gross negligence or willful misconduct.

The provisions of this section shall survive the expiration or earlier termination of this Lease.

17.    **WARRANTY OF LANDLORD.**  Landlord hereby covenants and warrants to Tenant that it has the authority to enter into this Lease, and that it has caused this Lease to be duly executed and delivered on behalf of Landlord and that this Lease is binding upon Landlord and enforceable against Landlord in accordance with its terms.

18.    **WARRANTY OF TENANT.**  Tenant hereby covenants and warrants to Landlord that it has the authority to enter into this Lease, and that it has caused this Lease to be duly executed and delivered on behalf of Tenant and that this Lease is binding upon Tenant and enforceable against Tenant in accordance with its terms.

19.    **DAMAGE OR DESTRUCTION.**

In the event that the Premises shall be destroyed or damaged by fire or other casualty, insurable under fire and all risks insurance coverage, then,

(a) if the Leased Premises or any part or parts thereof shall at any time during the Term or any renewal thereof be so badly damaged or destroyed by reason of any cause that in the opinion of Tenant the Leased Premises cannot be repaired or rebuilt within one hundred and twenty (120) days from the date of the casualty, then Tenant may elect to terminate this Lease by notice in writing to Landlord mailed within ninety (90) days after the date of such casualty and effective upon a date within thirty (30) days from the date of such notice in which event (i) the insurance proceeds payable with respect to such casualty (except to the extent related to Tenant's personal property) shall be paid to Landlord, and (ii) this Lease shall be deemed terminated and the current Rent shall be equitably abated as of the effective date of such termination.

(b) if damage or destruction to the Leased Premises is, in the opinion of Tenant capable of being repaired or rebuilt within one hundred and twenty (120) days from the date of the casualty or Tenant otherwise elects to repair and rebuild the Premises, then Tenant shall commence such repair and rebuilding as soon as practicable and proceed with reasonable promptness to complete the said repair and rebuilding. All insurance

11

SEFL00000759

proceeds payable with respect to such casualty shall be made available to Tenant for such repair and rebuilding and any excess insurance proceeds may be retained by Tenant.

20.   **CONDEMNATION.** In case of the total or such partial loss (over 50% in value) of the Leased Premises through condemnation, as shall make it impracticable for Tenant's use as a motor freight terminal in Tenant's reasonable judgement, this Lease Agreement may be terminated at the option of either party on thirty (30) days' written notice to the other given within thirty (30) days after the date of notice of condemnation and effective upon a date within thirty (30) days from the date of such notice, and in that case, Tenant shall not be liable for any Rent after the effective date of such termination. If neither Landlord nor Tenant terminates this Lease, then this Lease shall remain in effect as to the portion not taken and the Minimum Rent and Additional Rent shall be reduced in proportion to the portion of the Premises taken. Tenant, at its cost and expense, shall be entitled to claim separately, in a condemnation proceeding, any damages payable for movable trade fixtures paid for and installed by Tenant and for loss of Tenant's business and Tenant's relocation costs; provided Landlord's award is not reduced or otherwise adversely affected thereby.

21.   **COMPLIANCE WITH LAWS.** Tenant shall, at its sole cost and expense, comply in all material respects with all Laws concerning the Leased Premises or Tenant's use of the Leased Premises, including, without limitation, the obligation to comply with all environmental laws and regulations (as described in more detail previously herein). Notwithstanding the foregoing, Tenant shall not be required to make any improvements to the Premises with respect to Americans with Disabilities Act that are unrelated to Tenant's specific use of the Premises.

22.   **ENVIRONMENTAL MATTERS.** As used herein, the term "Hazardous Substances" means any hazardous or toxic substance, material or waste which is or becomes regulated by any local, provincial, state or federal governmental authority and includes but is not limited to any material or substance which is (i) designated as a "hazardous substance" pursuant to section 311 of the Federal Water Pollution Control Act (33 U.S.C section 1317) (ii) defined as a "hazardous waste" pursuant to section 1004 of the Federal Resource Conservation and Recovery Act, 42 U.S.C. section 6901, et seq. (42 U.S.C. section 6903), (iii) defined as a "hazardous substance" pursuant to section 101 of the Comprehensive Environmental Response Compensation and Liability Act (42 U.S.C. section 9601, et seq.), (iv) injurious to the public health, safety or welfare, the environment or the Premises; or (v) any oil, contaminants, pollutants, dangerous substances, liquid waste, industrial waste, hauled liquid waste, toxic substances, hazardous waste, hazardous materials, or Hazardous Substances as defined pursuant to any environmental laws (as previously described herein). As used herein, the term "environmental requirements" means all laws, ordinances, rules, regulations, orders and other requirements of any government or public authority now in force or which may hereafter be in force relating to protection of human health or protection of the environment, including all requirements pertaining to reporting, licensing, permitting, investigation and remediation of emissions, discharges, storage, disposal or releases of

12

SEFL00000760

Hazardous Substances and all requirements pertaining to the protection of the health and safety of employees or the public. Tenant's use of any Hazardous Substances at the Premises shall comply in all material respects with all environmental requirements. Any generation, treatment, storage, use or disposal of any Hazardous Substances at the Premises by Tenant shall be in compliance in all material respects with all environmental requirements.

Except to the extent arising from Landlord's gross negligence or willful misconduct, Tenant shall indemnify, protect, defend and hold Landlord and Landlord's mortgagees from time to time harmless from all claims, demands, liabilities, damages, fines, encumbrances, liens, losses, costs and expenses, including reasonable attorney's fees and disbursements, and costs and expenses of investigations and remedial action, arising from or related to the existence of Hazardous Substances in or on the Leased Premises, or any adjacent or nearby properties or buildings, as a result of the acts or omissions of Tenant, its employees, agents, contractors, customers, visitors, invitees, or licensees, subtenants or those for whom in law the Tenant is responsible, and Tenant shall be responsible for any remediation of environmental contamination required by applicable orders, directives, laws, statues, ordinances, rules or regulations of local, state, provincial, federal or other governmental or quasi-governmental authorities with respect thereto arising prior to or during the Term of this Lease. The obligations contained in this Section 22 shall survive the expiration or earlier termination of this Lease.

23. **TANKS.** The parties acknowledge and agree that the following are included with the Premises: one (1) ten thousand gallon capacity diesel underground storage tank ("Fuel Tank"). It shall be the obligation of Tenant, at its sole cost and expense, to have required annual maintenance performed on the Fuel Tank (and provide Landlord evidence thereof) and keep the Fuel Tank in good state and condition of repair, free from leaks and in compliance in all materials respects with applicable Laws. Tenant further agrees to indemnify and hold and save Landlord harmless of and from all claims, costs, liabilities, damages, actions and causes of action pertaining to the Fuel Tank arising prior to or during the Term of this Lease, except to the extent arising from Landlord's gross negligence or willful misconduct. The obligations contained in this Section 23 shall survive the expiration or earlier termination of this Lease.

24. **SIGNS/ADVERTISING.** Tenant at its cost shall have the right to place, construct, and maintain an exterior sign on the office building and other improvements that are a part of the Leased Premises and maintain such sign existing on the Leased Premises as of the Commencement Date, advertising its business on the Leased Premises, provided same complies with all applicable law. Tenant shall not have the right to place, construct, or maintain any other signs, advertisements, awnings, banners, or other exterior decorations without Landlord's prior consent (which consent shall not be unreasonably withheld, delayed or conditioned).

25. **ATTORNEYS' FEES; WAIVER OF TRIAL BY JURY.** If either party commences an action against the other party arising out of or in connection with a breach

13

of an obligation under Lease Agreement, the prevailing party shall be entitled to have and recover from the other party reasonable attorneys' fees and costs of suit. EACH PARTY HEREBY WAIVES ANY RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER PARTY AGAINST THE OTHER IN CONNECTION WITH ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, INCLUDING RELATIONSHIP OF THE PARTIES, TENANT'S USE AND OCCUPANCY OF ANY PORTION OF THE PREMISES, OR ANY CLAIM OF INJURY OR DAMAGE RELATING TO THE FOREGOING OR THE ENFORCEMENT OF ANY REMEDY.

26.    **ESTOPPEL   CERTIFICATES;   SUBORDINATION;   ATTORNMENT; LEASEHOLD FINANCING.**

(a)    Upon either party's request (the "Requesting Party"), the other party hereto (the "Responding Party") shall execute, acknowledge and deliver to the Requesting Party a written statement certifying: (i) that none of the terms or provisions of this Lease Agreement has been changed (or if any has been changed, stating how it has been changed); (ii) that this Lease Agreement has not been canceled or terminated; (iii) the last date of payment of Rent and other charges and the time period covered by such payment; (iv) that the Requesting Party is not in default under this Lease Agreement (or, if the Requesting Party is claimed to be in default, stating why); and (v) such other matters as may be reasonably required by the Requesting Party. The Responding Party shall deliver such statements to the Requesting Party within ten (10) days after the Requesting Party's written request by certified mail. Any such statement by the Responding Party may be given by the Requesting Party to any prospective purchaser, mortgagee, other encumbrancer of the Leased Premises or any proposed sublessee or assignee, as applicable . Such purchaser, mortgagee, other encumbrancer or any proposed sublessee or assignee may rely conclusively upon such statements as true and correct.

(b)    Tenant hereby agrees that this Lease is and shall be subject to and subordinate to any mortgage, ground lease or deed of trust (and to any amendments, extensions, increases, refinancings or restructurings thereof) of the Leased Premises, whenever made or recorded and whether or not filed subsequent to the execution, delivery or the recording of this Lease or any notice hereof (the holder from time to time of any such instrument being sometimes called a "Mortgagee" in this Lease). The foregoing subordination shall be self-operative and automatically effective as to any mortgage filed subsequent to the date hereof only if either the Mortgagee agrees in writing or such mortgage provides that, for so long as there exists no Default under this Lease by Tenant, the Mortgagee will not, in foreclosing against or taking possession of the Premises or otherwise exercising its rights under such mortgage, disturb Tenant's use or possession of the Leased Premises hereunder or eliminate Tenant's rights with respect to the Leased Premises, or words of similar import. Tenant hereby agrees to execute, acknowledge and deliver in recordable form (i) such instruments confirming and evidencing the foregoing subordination as the Landlord or any such Mortgagee may from time to time reasonably require, and (ii) such further documents and assurances as any such Mortgagee may from

14

SEFL00000762

time to time reasonably request and that are consistent with generally prevailing commercial real estate lending practices. If any Mortgagee elects to have this Lease prior to the lien of its ground lease, deed of trust or mortgage, this Lease shall be deemed prior to such ground lease, deed of trust or mortgage whether this Lease is dated prior or subsequent to the date of said ground lease, deed of trust or mortgage or the date of recording thereof.

(c)     If Landlord's interest in the Leased Premises is acquired by any Mortgagee, or purchaser at a foreclosure sale, Tenant shall attorn to the transferee of or successor to Landlord's interest in the Leased Premises and recognize such transferee or successor as Landlord under this Lease Tenant waives the protection of any statute or rule of law which shall give Tenant any right to terminate this Lease or surrender possession of the Leased Premises upon the transfer of Landlord's interest. In the event of any act or omission of Landlord that would give Tenant the right to cancel or terminate this Lease, or to claim partial or total eviction, or to cease or withhold the payment of Rent, Tenant shall not exercise such right until it has given the Mortgagee written notice of such act or omission and such period that would otherwise be available to Landlord under this Lease for remedying such act or omission, provided that Tenant has received the notice address of the Mortgagee at least thirty (30) days prior to the date Tenant would have the right to cancel or terminate this Lease.

(d)     Subject to the terms of this Section 26(c), Landlord agrees that Tenant shall have the right to encumber or hypothecate Tenant's interest in the leasehold estate created by this Lease. As used in this Section, "Leasehold Mortgage" means any leasehold deed of trust, mortgage, assignment of leases and rents, assignment, security agreement, or other security document encumbering Tenant's leasehold interest in the Premises and securing the obligations of Tenant relating to a financing (a "Leasehold Financing") granted to Tenant by a Tenant Lender. All proceeds of any Leasehold Financing shall remain the property of Tenant. A Leasehold Mortgage shall encumber only Tenant's leasehold interest in the Premises, and shall not encumber Landlord's right, title or interest in the Premises. Landlord shall have no liability whatsoever for the payment of any obligation secured by any Leasehold Mortgage or any other provisions of such note or the Leasehold Mortgage or related obligations. Upon written request from Tenant, Landlord agrees to deliver an estoppel certificate in favor of such Tenant Lender regarding this Lease, in form and substance reasonably acceptable to Landlord and such Tenant Lender. If Landlord delivers to Tenant a default notice under this Lease, Landlord shall notify any such Tenant Lender who has given Landlord a prior written request for such notice of such default by sending a copy of the default notice to such Tenant Lender, and Landlord shall recognize and accept the performance of any obligation of Tenant hereunder by such Tenant Lender (provided said performance occurs within the same cure periods as provided to Tenant under the Lease); provided, however that nothing contained herein shall obligate such Tenant Lender to take any such actions.

27.     **DEFAULT OF TENANT.** Each of the following events ("Default") shall be a

15

SEFL00000763

default hereunder by Tenant and a breach of this Lease:

(a.) if Tenant shall violate any covenant or agreement providing for the payment of Rent, including Minimum Rent or Additional Rent following five (5) days written notice from Landlord;

(b) if Tenant shall assign, transfer, encumber, sublet or permit the use of the Premises by others in a manner prohibited herein;

(c) if Tenant becomes insolvent or makes a general assignment for the benefit of creditors or takes or attempts to take the benefit of any insolvency or bankruptcy legislation, or if any order shall be made for the winding-up of Tenant;

(d) if a receiver or trustee shall be appointed for the Premises or all or substantially all of the assets of Tenant;

(g) if Tenant shall be in default in fulfilling any of the other covenants and conditions of this Lease and such default shall continue for thirty (30) days after written notice thereof from Landlord to Tenant, provided, however, that if Tenant shall exercise in good faith diligent efforts within such thirty (30) day period to cure the failure specified in the notice but shall not be able to do so, then any such failure shall not be considered a Default so long as Tenant shall continue to exercise in good faith such diligent efforts to cure such failure and shall do so within a reasonable period of time.

In the event and during the continuance of any such Default, Landlord, besides any other rights or remedies it may have pursuant to this Lease or by law, shall have, to the extent permitted by law, the immediate right of re-entry either by force or otherwise and may remove all persons and property from the Leased Premises and such property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of the Tenant, or sold by way of a private or public sale, all without service of notice or resort to legal process and without being deemed guilty of trespass, or becoming liable, for any loss or damage which may be occasioned thereby.

Should the Landlord elect to re-enter, as herein provided, or should it take possession pursuant to legal proceedings or pursuant to any notice provided for by law, it may either terminate this Lease or it may from time to time as agent of the Tenant without terminating this Lease, make such alterations and repairs as may be desirable and re-let the Leased Premises, or any part thereof either by way of sublease, assignment of lease or otherwise for such term or terms (which may be for a term extending beyond the Term of this Lease) and at such rental or rentals and upon such other terms and conditions as the Landlord in its sole discretion may deem advisable. No such re-entry or taking possession of the Leased Premises by the Landlord shall be construed as an election on its part to terminate this Lease unless a written notice of such intention is given to the Tenant. Should the Landlord at any time terminate this Lease for any breach, in addition to any other remedies that it may have, it may recover from the Tenant all damages it may

16

SEFL00000764

incur by reason of such breach, including the cost of recovering the Leased Premises, reasonable solicitor's and attorneys' fees, and including the worth at the time of such termination of the excess, if any, of the amount of Rent reserved in this Lease for the remainder of the Term over the then reasonable rental value of the Leased Premises for the remainder of the Term, all of which amounts shall be immediately due and payable by the Tenant to the Landlord.

The exercise by Landlord of any right it may have hereunder or by law shall not preclude the exercise by Landlord of any other right it may have hereunder or by law.

All past due installments of Rent shall bear interest at the rate of eighteen percent (18%) per annum until paid. In addition to the foregoing, if any payment of Rent is not received when due, Tenant shall pay Landlord an amount equal to five percent (5%) of the amount of the past due installment of Rent, which amount represents an estimate of Landlord's administrative costs reasonably related to collecting and accounting for such late payment.

28.    **REAL ESTATE BROKER.** Landlord and Tenant each represents and warrants to the other that Landlord and Tenant, respectively, has no binding agreement with any broker or agent in connection with the Leased Premises and the consummation of this Lease. Landlord and Tenant each covenants and agrees to pay and to indemnify and hold the other harmless from and against any and all costs, expenses (including without limitation, reasonable counsel fees) or liability for any breach of this warranty for compensation, commission or charges claimed by any broker or agent claiming to have introduced Tenant to the Leased Premises, or Landlord to Tenant, or to have been consulted by or have represented Tenant or Landlord with respect to this Lease or the negotiation thereof.

29.    **QUIET ENJOYMENT AND USE.** Landlord covenants and warrants that as long as Tenant is not in Default of the Lease, Tenant shall have peaceful possession and quiet enjoyment of the Premises.

30.    **MISCELLANEOUS.**

    a.    The unenforceability, invalidity, or illegality of any provision shall not render the other provisions unenforceable, invalid, or illegal.

    b.    This Lease shall be construed and interpreted in accordance with the laws of the jurisdiction in which the Leased Premises are located.

    c.    This Lease Agreement, and all its provisions, shall be binding upon the heirs, administrators, executors, successors and assigns of the parties hereof.

17

SEFL00000765

d.    This Lease contains the entire agreement between the parties hereto with respect to the subject matter hereof and all prior negotiations and agreements are hereby superseded. This Lease may not be amended except by a written instrument executed by both of the parties hereto.

e.    Time is of the essence for this Lease Agreement.

f.    Landlord shall be liable only for breaches of Landlord's obligations occurring while Landlord is owner of in fee of the Leased Premises. Tenant (and all persons claiming by, through or under Tenant) agrees to look solely to Landlord's interest from time to time in the Leased Premises (including the uncollected rents, issues, profits, and proceeds thereof, subject to the superior rights of mortgagees therein) for satisfaction of any claim or recovery of any judgment from Landlord (but in no event shall Landlord's equity in the Premises be less than 35% of the fair market value of the Premises); it being agreed that neither Landlord nor any trustee, beneficiary, partner, member, manager, shareholder, agent or employee of Landlord shall ever be personally or individually liable for any claim or judgment, or otherwise, to Tenant (or such persons). In no event shall Landlord ever be liable to Tenant (or such persons) for indirect or consequential damages; nor shall Landlord ever be answerable or liable in any equitable judicial proceeding or order beyond the extent of Landlord's interest in the Leased Premises.

g.    Neither party shall record this Lease but promptly upon the request of either party and at its expense, the parties shall prepare, enter into and the requesting party may record (at the requesting party's sole cost and expense) a suitable short form memorandum of this Lease.

h.    Landlord may upon at least 24 hours prior written notice to Tenant (except in the case of emergency, when no such notice will be required), from time to time enter the Premises for the purpose of making any repairs, alterations and reconstruction to the facilities and services in the Premises or for any purpose which it may deem necessary. During the last six (6) months of the Term of the Lease, Tenant shall allow such person or persons, as may be desirous of leasing the Premises to visit the same so long as such visits to not interfere with Tenant's operations on the Leased Premises.

31.   **NOTICES.** The notice addresses of the parties for purposes of all notices, other communications and any payments which may be or are required to be given by either party to the other herein, shall be as follows:

<u>**LANDLORD:**</u>    Mr. W. T. Brogdon
                           Southeastern Freight Lines, Inc.

18

SEFL00000766

420 Davega Road
Lexington, SC  29073
Fax: (803) 739-5394

With a copy to:

W. Leighton Lord III, Esquire
Nexsen Pruet LLC
1230 Main Street, Suite 700
PO Drawer 2426
Columbia, SC
Fax: (803) 727-1461

**TENANT:**   YRC Inc.
PO Box 471
1077 Gorge Boulevard
Akron, Ohio 44309-0471
Attn:  Real Estate & Properties Department
Fax #: (330) 258-2597

With a copy to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn:  John G. Caruso, Esq.
FAX#: (312) 862-2200

Any notices, other communications or payments to be delivered by either party to the other pursuant to this Lease shall (as to any notice or communication) be in writing and shall be deemed delivered as follows, except as otherwise specifically provided in this Lease:  (a) when hand delivered or telecopied (except as to payments and provided that telecopied notices must be confirmed within any applicable time period plus two (2) days by one of the following methods of notice); (b) one (1) business day after mailing by Federal Express or other overnight courier service; or (c) upon receipt (or refusal to accept delivery) by United States registered or certified mail, postage prepaid, return receipt requested, in each case addressed to the party to be charged with notice at the above recited address or the above recited telecopier number or such other address or telecopier number as either party from time to time may designate by notice delivered to the other; provided, however, that no notice of change of address or telecopier number shall be deemed given until actually received by the party to be notified.  Except as otherwise specifically provided herein, in the computation of any period of time which shall be required or permitted hereunder or under any law for any notice or other communication or for the performance of any term, condition, covenant or obligation, the day from which such period runs shall be excluded and the last day of such period shall

19

be included unless it is a Saturday, Sunday or legal holiday, in which case the period shall be deemed to run until the end of the next day which is not a Saturday, Sunday or legal holiday.

32.    **Right of First Offer.** Landlord hereby grants unto Tenant, for the Term, a right of first offer (the "ROFO") to purchase all or any portion of the Premises, all in accordance with the terms and conditions hereinafter set forth.

(a)    Before Landlord (which, for purposes of this Section 32, shall include any successor to or assign of Landlord) may sell, transfer or otherwise convey fee simple title in and to all or any portion of the Premises (the "Offered Property") to any person or entity, Landlord shall so notify Tenant in writing (the "Sale Notice"). Tenant shall have thirty (30) days after Tenant's receipt of the Sale Notice to deliver, by written notice to Landlord, an offer to purchase the Offered Property (a "Purchase Offer"). The Purchase Offer shall include the following terms:  (A) the proposed purchase price for the Offered Property, (B) any other consideration to be paid by the buyer (other than customary adjustments), (C) whether the purchase price is to be paid in lump sum or in installments over time, (D) whether the sale, transfer or other conveyance may be contingent on the buyer obtaining financing, and if so, the material terms thereof; and (E) all of the other material terms of the sale, transfer or other conveyance of the Offered Property. Notwithstanding the foregoing, in no event shall Tenant be obligated to provide an earnest money deposit as part of the Purchase Offer. Landlord shall have fifteen (15) days after receipt of the Purchase Offer to accept or reject the same. Failure of Landlord to provide notice to Tenant within such fifteen (15) day period shall be deemed an acceptance of Tenant's Purchase Offer. Subject to Sections 32(b) and 32(c), if Tenant fails to deliver a Purchase Offer with such thirty (30) day period or Landlord rejects Tenant's Purchase Offer, Landlord shall thereafter be permitted to sell the Offered Property, free and clear of the ROFO set forth herein.

(b)    If at any time during the Term Landlord rejects a Purchase Offer or Tenant has waived or fails to submit a Purchase Offer for Offered Property and Landlord shall not have sold or otherwise transferred the Offered Property within six (6) months after the date of Landlord's rejection of the Purchase Offer or Tenant's waiver or failure to submit a Purchase Offer, then Landlord shall be obligated to submit to Tenant a new Sale Notice prior to any subsequent sale, transfer or other conveyance of the Offered Property. Thereafter, Tenant and Landlord shall proceed in the same manner as provided for the initial Sale Notice and the exercise of the ROFO under Section 32(a) herein.

(c)    If at any time during the Term, Landlord rejects a Purchase Offer for Offered Property and Landlord shall thereafter and during the Term desire to sell the Offered Property for an amount less than the purchase price set forth in the Purchase Offer or to proceed with any such transaction on material terms and conditions otherwise materially more favorable to the purchaser, as applicable, than those contained in the Purchase Offer (the "Alternative Sale Terms"), then Landlord shall first provide written notice of, and offer to sell the Option Property to Tenant on, such Alternative Sale Terms.

20

SEFL00000768

Tenant shall have fifteen (15) days after receipt of such written notice to accept or reject such offer. Subject to Section 32(b), if Tenant does not accept such offer, Landlord shall thereafter be permitted to sell the Offered Property, free and clear of the ROFO set forth herein, on such Alternative Sale Terms.

(d)   If Tenant exercises its ROFO, the following closing procedure shall apply:

(i)   Payment of the purchase price and delivery of the deed (the "Closing") shall be made at such place as the parties may agree. At the request of either party, the Closing shall be effected through a deed and money escrow, the cost of which escrow shall be borne equally by Landlord and Tenant unless otherwise set forth in the Purchase Offer or Alternative Sale Terms, as applicable. The purchase price shall be payable to Landlord at the Closing in cash or by certified or cashier's check.

(ii)   The conveyance of the Offered Property shall be made by recordable warranty deed to Tenant (or its designee) sufficient to transfer good and marketable fee simple title to the Offered Property to Tenant, subject only to exceptions existing on the Commencement Date, together with such other title exceptions set forth in the Purchase Offer or Alternative Sale Terms, as applicable, or to which Tenant may otherwise agree in writing to accept ("Permitted Title Exceptions").

(iii)   Landlord shall deliver or cause to be delivered to Tenant, not later than twenty (20) days prior to the Closing, as evidence of Landlord's title to the Offered Property, a commitment for an owner's title insurance policy from Chicago Title Insurance Company in the aggregate amount of the purchase price as provided hereunder. Such commitment shall name Tenant or its designee as the proposed insured and shall show title to the Offered Property in Landlord, subject only to (a) the Permitted Title Exceptions, and (b) other title exceptions pertaining to liens or encumbrances of a definite or ascertainable amount removable at Closing by the payment of money, but not to exceed the purchase price otherwise payable to Landlord at Closing, and which Landlord shall so remove or cause to be removed concurrently with the Closing. In addition to the foregoing, Landlord shall remove or cause to be removed, concurrently with the Closing, any mortgage and any other related security instrument. Except as otherwise expressly set forth in the Purchase Offer or Alternative Sale Terms, as applicable, Landlord shall pay all premiums, charges and costs incurred in delivering such commitment, and shall pay any state, county, municipal or other transfer tax incurred in connection with the conveyance to Tenant of the Offered Property.

21

SEFL00000769

(e)     The provisions of this Section 32 shall be covenants running with the land and shall be binding upon any future owner of the Premises and their respective successors and assigns.

(f)     Any sale of all or any portion of the Premises that is made in violation of this Section 32 shall be void ab initio.

[Signature Pages Attached]

22

SEFL00000770

IN WITNESS WHEREOF, the respective parties have executed this instrument as of the day and year first herein above written

WITNESS:

LANDLORD:

**Southeastern Freight Lines, Inc.,** a South Carolina corporation

By:

By: *WT BRODDON*

WITNESS:

TENANT:

**YRC Inc.,** a Delaware corporation

By _____

By: _____

23

SEFL00000771

**IN WITNESS WHEREOF,** the respective parties have executed this instrument as of the day and year first herein above written

**WITNESS:**                    **LANDLORD:**

                               **Southeastern Freight Lines, Inc.,** a South Carolina corporation

_____        _____

By:                            By:

**WITNESS:**                    **TENANT:**

                               **YRC Inc.,** a Delaware corporation

By: _____          By: _____

                               **Brad S. Schroeder**
                               **Authorized Officer**

23

SEFL00000772

## EXHIBIT A

Being 5.76 acres of land out of Section 13, Block 41 T-2-S, T & P RR Co. Survey, Midland County, Texas, and being described by metes and bounds as follows:
BEGINNING at a 1/2" iron rod set in the west boundary of County Road 1290-S in Section 13, Block 41, T-2-S, T & P RR Co. Survey, Midland County, Texas, for the northeast corner of this tract, from which point the southeast corner of Section 13 bears N. 74° 48' 30" E. 50.0 feet and S. 15° 11' 30" E. 2977.09 feet;
tence s. 74° 48' 30" W. 660 feet to a 1/2" iron rod set in the east boundary of a 60-foot wide road for the northwest corner of this tract;
THENCE S. 15° 11' 30" E. along the east boundary of said road, 380 feet to a 1/2" iron rod set for the southwest corner of this tract;
THENCE N. 74° 48' 30" E. 660 feet to a 1/2" iron rod set in the west boundary of County Road 1290-S for the southeast corner of this tract;
THENCE N. 15° 11' 30" W. along the west boundary of County Road No. 1290-S, 380 feet tc the PLACE OF BEGINNING and containing 5.76 acres of land.

SAVE AND EXCEPT: All minerals in, under and which may be produced from said land, and the rights of the owners incident thereto.

Subject to all easements and/or rights-of-way of record in the Office of the County Clerk of Midland County, Texas, or which may be visible or apparent upon the ground, or any portion thereof.

SEFL00000773