**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 2595<br>Hearing Date: May 1, 2024 at 10:00 a.m. (ET) |

**JOINDER OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF YELLOW CORPORATION, *ET AL*., TO DEBTORS' SEVENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO PROOFS OF CLAIM FOR WITHDRAWAL LIABILITY**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this joinder (the "Joinder") to the *Debtors' Seventh Omnibus (Substantive) Objection to Proofs of Claim for Withdrawal Liability* [ECF No. 2595] (the "Objection"). In support of this Joinder, the Committee respectfully states as follows:

**JOINDER**

1. By the Objection, the Debtors object to the validity and amounts of their alleged withdrawal liability as asserted by the Pension Plans in the Proofs of Claim.[2] The Debtors specifically assert that the Proofs of Claim rely on inflated or otherwise inaccurate calculations in contravention of ERISA, causing the underlying withdrawal liability claims to be overstated by

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

hundreds of millions of dollars. The Debtors therefore ask that the Proofs of Claim be disallowed in their entirety or, alternatively, that the Proofs of Claim be substantially reduced to reflect, among other things: (i) the statutory 20-year cap on payments; (ii) adjustments to various inputs in the applicable withdrawal liability calculations; and (iii) application of an appropriate discount rate to calculate the present value of future withdrawal liability payment obligations. For the reasons set forth below, the Committee agrees with the legal positions stated in the Debtors' Objection, and believes that the Proofs of Claim should be reduced to account for the adjustments referenced above. Additional discovery is needed, however, to determine with specificity the extent of any allowed claims in respect of the Proofs of Claim.

2. As set forth in the Objection, a key issue affecting the appropriate amount of the Pension Plans' claims is the applicability of the 20-year cap on withdrawal liability payments set forth in 29 U.S.C. § 1399(c)(1)(B). *See Trs. of the Local 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 130 (2d Cir. 2012) ("[ERISA] limits the employer's obligation to make these payments to 20 years, even if it would take more than 20 [annual] payments for the employer to pay its full withdrawal liability.") (citing 29 U.S.C. § 1399(c)(1)(B)).

3. When an employer's required annual payments as set forth in 29 U.S.C. § 1399(c)(1)(B) do not fully amortize withdrawal liability as determined under 29 U.S.C. § 1391(b) in 20 years or less, the 20-year cap on payments applies, and after making 20 years of payments, the withdrawn employer has no further liability with respect to the subject pension plan. *See* 29 U.S.C. § 1399. Based on the Committee's assessment of the Proofs of Claim, it appears that the 20-year cap was not applied (or not properly applied) in the Proofs of Claim asserted by: (i) Central Pennsylvania Teamsters Defined Benefit Plan; (ii) Teamsters Joint Council # 83 of Virginia

Pension Fund; and (iii) Teamsters Pension Trust Fund of Philadelphia & Vicinity.[3] The Committee agrees with the Debtors that any payments owed in respect of their withdrawal liability to the Pension Plans are subject to the 20-year cap, where applicable, under the plain language of ERISA.

4. The Debtors also argue in the Objection that the Pension Plans appear to have made a variety of other errors in calculating the Debtors' alleged withdrawal liability, including, among others, (i) using the wrong contribution rates to calculate withdrawal liability payments (Objection ¶ 26) and (ii) using an improper interest rate to determine the present value of vested benefits as required by 29 U.S.C. § 1393(a) (Objection ¶ 26 n.22). Although the Debtors' arguments appear to have merit, the Committee requires additional information and diligence to determine the extent of errors that were made in connection with the withdrawal liability calculations.[4]

5. The Debtors further dispute the Proofs of Claim insofar as the Pension Plans failed to discount the asserted claims to their appropriate net present value as of the Petition Date – either entirely or by utilizing artificially low interest rates that "do not reflect reality." (Objection ¶ 30.) There can be no dispute that claims based on future payment streams must be discounted to present value. *See in re Stone & Webster, Inc.*, 279 B.R. 748, 806 (Bankr. D. Del. 2002) (finding that all damages estimates based on a future payment stream must be reduced by use of a present value

---

[3] Based on its preliminary review of claims asserted against the Debtors, the Committee notes that two Pension Plans subject to the Objection—IAM National Pension Fund and Local 705 IBT Pension Fund—asserted claims for withdrawal liability against the Debtors which require a payment stream shorter than 20 years to amortize and pay the withdrawal liability. Further, while there are certain exceptions to the 20-year cap on payments—for example, when there is a "mass withdrawal termination" of a pension plan—no such exceptions appear to apply to the Pension Plans subject to the Objection.

[4] For example, parties often dispute whether ERISA requires contribution rate increases under "rehabilitation plans" to be disregarded in the calculation of an annual payment. Although various pension plans historically have argued that some or all contribution rate increases under rehabilitation plans should be included in the calculation of the annual payment, ERISA is clear that such contribution increases generally should be excluded, and caselaw is in accord. *See* 29 U.S.C. § 4219(c)(1)(C)(i)(II); 26 U.S.C. § 432(g); *see also Cent. States v. Event Media, Inc.*, No. 1:22-CV-06133, 2024 WL 1363542 (N.D. Ill. Mar. 29, 2024). Here, the Pension Plans were under rehabilitation plans during the relevant period, but further diligence is required to determine whether they have calculated the annual payment in contravention of ERISA.

adjustment).  To do so, appropriate market-based interest rates that reflect the time value of money are required to be used.  Based on the Committee's review of the applicable Proofs of Claim, it does not appear that any of the Pension Plans discounted the asserted future withdrawal liability payments to present value, using a market-based interest rate or otherwise.  Accordingly, the Committee agrees that the Proofs of Claims are deficient insofar as the Pension Funds assert that the Debtors' withdrawal liability should be valued based on the undiscounted sum of all required annual payments.

6. The Committee is hopeful that many of the issues raised in the Objection and Proofs of Claim can be resolved consensually in order to avoid the cost of unnecessary, expensive litigation, save valuable estate resources and maximize recoveries for the holders of allowed claims.  Indeed, given the procedural posture of these cases, the Committee has grown increasingly concerned with the accrual of administrative expenses that are necessarily being borne by the unsecured creditors of these estates.  In that regard, the Committee intends to work closely with the Debtors, the Pension Plans and other stakeholders to minimize the costs of these chapter 11 cases and seek to resolve consensually many of the myriad issues that have arisen in connection with the allowance of claims asserted against the Debtors' estates.

7. This Joinder is submitted without prejudice to, and with a full reservation of, the Committee's rights, claims, defenses and remedies, including the right to amend, modify, or supplement this Joinder, to seek discovery, and to introduce evidence at any hearing relating to the Proofs of Claim, the Objection, or this Joinder and without in any way limiting any other rights of the Committee to take any further action with regard to the Objection or Proofs of Claim, on any grounds, as may be appropriate.

Date:  April 18, 2024  
Wilmington, Delaware

**BENESCH, FRIEDLANDER,**
   **COPLAN & ARONOFF LLP**

 */s/ Kevin M. Capuzzi*  
Jennifer R. Hoover (DE No. 5111)  
Kevin M. Capuzzi (DE No. 5462)  
John C. Gentile (DE No. 6159)  
1313 North Market Street, Suite 1201  
Wilmington, DE 19801  
Telephone: (302) 442-7010  
Facsimile:  (302) 442-7012  
E-mail:    jhoover@beneschlaw.com  
             kcapuzzi@beneschlaw.com  
             jgentile@beneschlaw.com

-and-

AKIN GUMP STRAUSS HAUER & FELD LLP  
Philip C. Dublin (admitted *pro hac vice*)  
Meredith A. Lahaie (admitted *pro hac vice*)  
Kevin Zuzolo (admitted *pro hac vice*)  
One Bryant Park  
New York, NY 10036  
Telephone: (212) 872-1000  
Facsimile: (212) 872-1002  
Email: pdublin@akingump.com  
           mlahaie@akingump.com  
           kzuzolo@akingump.com

*Counsel to the Official Committee*  
*of Unsecured Creditors of Yellow Corporation, et al.*