**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Yellow Corporation, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related Docket No. 2595** |

**IBT LOCAL 705 PENSION FUND'S RESPONSE TO DEBTORS'**
**SEVENTH OMNIBUS (SUBSTANTIVE) OBJECTION**
**TO PROOFS OF CLAIM FOR WITHDRAWAL LIABILITY**

INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 705 PENSION FUND[2] ("IBT Local 705"), by and through its undersigned counsel, asks this Court to overrule Debtors' Seventh Omnibus Objection ("Objection") to IBT Local 705's proofs of claim, nos. 15906, 15917, 15943, 15944, 15949, 15951, 15953, 15955, 15957, 15965, 15969, 15971, 15975, 15978, 15979, 15985, 15989, 15995, 15998, 16001, 16005, 16006 (collectively, "Proofs of Claims") and allow IBT Local 705's withdrawal liability claims in their entirety. In support of its response to Debtors' claims objections [Dkt. No. 2595], IBT Local 705 and states[3] as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 10990 Roe Avenue, Overland Park, Kansas 66211.

[2] Although named as "IBT Local 705" in the Objections, and referenced as such herein, the Pension Fund's proper legal name is the Local 705 International Brotherhood of Teamsters Pension Fund.

[3] This Court previously ruled on motions by other pension funds to compel arbitration of disputes to withdrawal liability assessments. [Dkt. No. 2765]. To preserve its rights, IBT Local 705 adopts and incorporates by reference the demand to arbitrate these disputes. *See, e.g.,* [Dkt. No. 2224].

01531417v2

## INTRODUCTION

1.  Debtors' Objection seeks to present value IBT Local 705's claims. (*See* Objection ¶ 29, n.23 and Exhibit 2 thereto [Dkt. No. 2595]). Debtors' present value objection to IBT Local 705's Proofs of Claim has no basis under non-bankruptcy law, any bankruptcy code section, or reported case law. Withdrawal liability claims are allowed in bankruptcy without present value discounting, and Debtors offer no basis to depart from well-established law.

## SUMMARY OF ARGUMENT

2.  Nothing in the Bankruptcy Code affects the allowability of withdrawal liability claims. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000) ("Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code."). Allowability of withdrawal liability is governed under non-bankruptcy law, namely the Employment Retirement Income Security Act ("ERISA"). 29 U.S.C. 1381, *et seq.* Pursuant to Section 1339(c)(4) of ERISA voluntary prepayment of withdrawal liability is permitted without penalty. 29 U.S.C. § 1399(c)(4). However, ERISA does not limit liability to prepayment in the case of a "multiemployer plan [that] terminates by the withdrawal of every employer from the plan, or in which substantially all the employers withdraw from a plan pursuant to an agreement or arrangement to withdraw from the plan." 29 U.S.C. § 1399(c)(4) and (c)(1)(D). Here, IBT Local 705's pension fund did not terminate and IBT Local 705 did not assert claims beyond the prepayment amount in its Proofs of Claim. The Proofs of Claim reflect that statutory calculation afforded to multiemployer plans under non-bankruptcy law.

3.  For the Debtors to successfully challenge claims allowed under non-bankruptcy law, the Debtors must rely on at least one of the enumerated sub-sections of Section 502 of the Bankruptcy Code to establish that there is a qualifying or contrary provision of the Bankruptcy

Code upsetting IBT Local 705's statutorily allowed claim amount. *See Raleigh,* 530 U.S. at 20. Debtors briefly reference Section 502 (Obj. at 1-3,7) but fail to specify the sub-part of Section 502 upon which the Objection is based.

4. Failure to present value discount is not one of the nine exclusive and substantive grounds for objecting to a claim as enumerated in 11 U.S.C. §§ 502(b)(1)-(9). To the contrary, Section 502(a)(1) permits objection in the limited circumstance, not present here, where the claim "is unenforceable . . . under applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. §§ 502(a)(1). IBT Local 705's claims are enforceable under applicable ERISA law.

5. Unlike the withdrawal liability claims here, claims that are contingent or unmatured are subject to estimation only in the limited circumstance, also not present here, where the fixing of the claim would unduly delay the administration of the estate. IBT Local 705's claims are neither contingent nor unmatured. The allowance of the claim is based on simple math and legal authority.

6. Established caselaw, including Debtors' own cited authority in In re U.S. Airways Grp., Inc., 303 B.R. 784, 793 (Bankr. E.D. Va. 2003), support the conclusion that withdrawal liability is a present claim for payment, not a future or contingent claim. See e.g., In re Durango Georgia Paper Company, 2017 WL 221785, p. 3 (Bankr. S.D.Ga. 2017) (Finding PBGC claims upon termination of a pension fund "is not a claim for future payments; it is an obligation that is enforceable now."). The U.S. Airways court similarly explained, "Congress, by statute, has expressly given [the Local 705 Fund] a present right to recover an amount determined in accordance with" ERISA.  303 B.R. 784, 793 (emphasis in original).

7. Debtors cite no reported decision requiring present value discounting of withdrawal liability claim and neither *U.S. Airways* nor *In re Stone & Webster, Inc*., apply here. 279 B.R. 748, 806 (Bankr. D. Del. 2002). *U.S. Airways* involved the resolution of the PBGC's claim to fund the liabilities it incurred due to a *terminated* plan. 303 B.R. at 793. *In re Stone & Webster* involved a claim estimation proceeding for unknown claims related to long-term decommissioning of a nuclear power plant, the fixing of which would unduly delay the administration of the estate. 279 B.R. at 806. Debtors cite no authority for the proposition that a withdrawal liability claim for a continuing fund is subject to present value discount.

8. Moreover, IBT Local 705's Proofs of Claim already give the Debtors the same economic benefit that they seek in present value discounting. IBT Local 705 notified Debtors on October 16, 2023, that it assessed withdrawal liability in the principal amount of $21,367,019.34. IBT Local 705 offered Debtors the option of paying that amount in a lump sum or amortizing it over 234 months, with interest assessed only after the first year at the rate of 7.5 percent per year. If payments were made monthly for the duration of the payment schedule, they would total $38,457,884.37, with accrued interest. The IBT Local 705's Proofs of Claim included a copy of the October 16, 2023, notice and demand and accompanying spreadsheets and did not seek any interest on the withdrawal liability assessment.

**BACKGROUND**

9. IBT Local 705's pension fund is a multi-employer defined benefit pension fund, governed by ERISA, including the withdrawal liability provisions in 29 U.S.C. §1381, *et seq*. IBT Local 705's pension plan, like the other pension funds referenced in the Objection, is a multiemployer pension plan, "in which multiple employers pool contributions into a single fund that pays benefits to covered retirees who spent a certain amount of time working for one or

4

more of the contributing employers." *Trustees of Loc. 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 129 (2d Cir. 2012).

10. When a participating employer ceases to have an obligation to pay contributions into a multiemployer defined benefit pension plan, its employees are entitled to receive the pension benefits they earned, the costs of which are covered, in part, by payment of a statutorily mandated withdrawal liability or, if insufficient, such costs are born by other employers' contributions or by the employees themselves.

As set forth in *In re Mason & Dixon Lines, Inc.*:

> Pension fund withdrawal liability claims are different from general unsecured claims in several major respects: (1) Withdrawal claims do not represent an amount actually owed to the pension funds had the collective bargaining agreement remained in force. Withdrawal claims are statutorily created hypothetical debts; the amount alleged due is not based upon a consideration or value received by the debtor or its employees. The amount is based upon (a) what the creditor estimates it needs to pay future benefits for all of its beneficiaries (including employees and retirees from companies competing with the debtor), (b) investment practices of the individual pension funds, (c) business failures of other employers who contribute to the pension funds, (d) the number of active employees who participate in each pension fund, and (e) the unilaterally adopted actuarial assumptions of each pension fund…

63 B.R. 176, 182 (Bankr. M.D. N.C. 1986).

11. Two of the Debtors, USF Holland, LLC, and YRC, Inc., were, at all relevant times through the filing of their Chapter 11 petitions, bound to collective bargaining agreements with the International Brotherhood of Teamsters Local 705. Among other terms and conditions, the collective bargaining agreements obligated USF Holland and YRC to report and pay pension contributions to IBT Local 705 on behalf of employees who performed covered work.

12. On or about July 28, 2023, USF Holland and YRC permanently laid off all employees on whose behalf they had an obligation to report and pay contributions to IBT Local

705, or otherwise ceased to have an obligation to pay contributions to IBT Local 705, thus incurring a complete withdrawal under 29 U.S.C. § 1383. Shortly thereafter, the Debtors filed the instant Chapter 11 petitions.

13. By letter dated October 16, 2023, the IBT Local 705 fund notified YRC and any "members of any controlled group of trades or businesses, as defined in Section 414(c) of the Internal Revenue Code", that it was assessing withdrawal liability in the principal amount of $21,367,019.34. The IBT Local 705 fund included the withdrawal liability calculation worksheet and provided an option to either pay that amount in a lump sum or to amortize payment over 234 months, with interest assessed only after the first year at the rate of 7.5 percent per year. If payments were made monthly for the duration of the payment schedule, they would total $38,457,884.37, with accrued interest.

14. On November 9 and 13, 2023, IBT Local 705 timely filed its proofs of claims as to each of the Debtors, as businesses under common control, to include only the principal amount of the withdrawal liability assessed. The IBT Local 705's Proofs of Claim included a copy of the October 16, 2023, notice and demand and accompanying spreadsheets. The proofs did not seek any interest on the withdrawal liability assessment.

15. Debtors' Seventh Omnibus Objection ("Objection") filed on March 13, 2024 [Dkt. 2595] asserts two basic objections to claims of various pension plans, but only one objection related to IBT Local 705's Proofs of Claim, namely that IBT Local 705 did not present value discount its claims. *See* Objection, [Dkt. 2595] par.29, n.23 and Exhibit 2, thereto.

**ARGUMENT**

I. **The Court Should Overrule the Objection as it Applies to IBT Local 705**

    A. **Debtors Have Not Raised Proper Bankruptcy Objections**

16. Despite the rather complicated arguments involving the contours of ERISA raised in the Objection and other objections, there is a straightforward bankruptcy code basis for overruling the Objection – there is no provision of the bankruptcy code authorizing the disallowance or reduction of IBT Local 705's claims.

17. IBT Local 705 duly filed proofs of claim on November 9 and 13, 2023 as to each of the Debtors, as businesses under common control, to include *only the principal amount* of the assessed withdrawal liability. Section 101(5)(A) of the Bankruptcy Code defines in relevant part, a "claim" as a "right to payment . . . ." 11 U.S.C. § 101 (5)(A). Section 502(a) of the Bankruptcy Code states in relevant part that, "a claim or interest, proof of which is filed under Section 501 of this title is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 501(a)(2). Absent a valid objection, IBT Local 705 holds a valid and allowed claim. Debtors' sole objection to IBT Local 705 is that its claims are subject to present value discounting. There is no authority for Debtors' objections.

The Objection[4] does not allege any substantive grounds under 11 U.S.C. §§ 502 (b)(1)-(9) for disallowance of IBT Local 705's claims. Sections 502(b)(1)-(9) of the Bankruptcy Code are the enumerated and exclusive grounds upon which the Court may disallow the amount of a

---

[4] The Debtors indicate that their objections should be deemed to satisfy their obligation to request review of the withdrawal liability assessed under ERISA, 29 U.S.C. § 1399(b)(2)(A). This response shall likewise serve as the Local 705 Fund's response to Debtors' request for review under 29 U.S.C. § 1399(b)(2)(B). As explained herein, the Debtors' have not raised any issues which warrant the Local 705 Fund revising its withdrawal liability assessment.

filed claim. 11 U.S.C.§§ 502(b)(1)-(9). There is no basis under Sections 502(b)(1)-(9) for the relief that Debtors apparently seek here.

18. Most courts that have addressed the issue of valid claim objections have held that the nine substantive grounds enumerated in Section 502(b) of the Bankruptcy Code are the exclusive grounds for claim objections *See e.g., Travelers Cas. & Surety Co. of Am. v. Pacific Gas and Elec. Co.* 549 U.S. 443,449 (2007); *see also In re Rehman*, 479 B.R. 238, 242. (Bankr. D. Mass. 2012). The minority of courts that have held that the enumerated list of nine grounds for claim objections in Section 502(b) of the Bankruptcy Code is not exhaustive have been in cases that involved mostly equitable or procedural issues. *See e.g., Adelphia Recovery Trust v. Bank of America, N.A.,* 390 B.R. 64, 74 (S.D. N. Y. 2008); *see also In re Brunson*, 486 B. R. 759, 769 (Bankr. N. D. Tex. 2013).

**B.    Debtors Have Not Raised Valid Objections Under ERISA**

19. Debtors' assertions that IBT Local 705's claims are unenforceable under non bankruptcy law have no support under ERISA. Even if the Debtors' request for review was timely raised under ERISA, it has not raised any issues that warrant any revision to the withdrawal liability assessed. The sole objection raised by the Debtors concerning the IBT Local 705's pension fund is that its withdrawal liability assessment "must still further be reduced to net present value." (¶ 29, emphasis in the original). Debtors cite to 29 USC § 1399(c)(4); *In re U.S. Airways Grp., Inc*., 303 B.R. 784, 793 (Bankr. E.D.Va. 2003); and *In re Stone & Webster, Inc*., 279 B.R. 748, 806 (Bankr. D. Del. 2002). (¶ 30).

Under the section of ERISA cited by Debtors:

The employer shall be entitled to prepay the outstanding amount of the unpaid annual withdrawal liability payments determined under paragraph (1)(C), plus accrued interest, if any, in whole or in part, without penalty. If the prepayment is made pursuant to a withdrawal which is later determined to be part of a

> withdrawal described in paragraph (1)(D), the withdrawal liability of the employer shall not be limited to the amount of the prepayment.

29 USC §1399(c)(4).

20. The Debtors do not explain how this section of ERISA entitles them to any further reduction of the withdrawal liability assessed by the Local 705 Pension Fund. Consistent with the statute's clear terms, the Debtors are free to pay the assessed withdrawal liability without penalty.

21. The amount of the withdrawal liability is calculated as of the date of the complete withdrawal, which would be July 28, 2023, the date the company laid off its bargaining unit employees and cease covered operations. The amount of the withdrawal liability is therefore fixed as of that date, which preceded the chapter 11 petitions in this case. The withdrawal liability was due 60 days after it was assessed (October 16, 2023), either in a lump sum or amortized over 234 months. Thus, the "present value" is the lump sum payment. An employer would be liable for accrued interest if they pay under the amortization schedule, but otherwise it is a fixed amount.

22. For a pension fund like the IBT Local 705 fund whose plan year is the same as a calendar year, when an employer withdraws within a given plan year, the amount of withdrawal liability will be the same whether the withdrawal occurs on January 1 or December 31. 29 U.S.C. § 1391(b)(2)(A)(ii). Thus, the withdrawal liability as of the date the petition was filed is the lump sum amount assessed in October.

    **C.    Debtors Have Not Cited Any Reported Bankruptcy Decisions Supporting Their Objections**

23. The Employee Retirement Income Security Act (ERISA) was enacted fifty years ago in of 1974. It is older than the current Bankruptcy Code enacted in 1978. Withdrawal liability was added to ERISA in 1980, See e.g, In re Pulaski Highway Express, Inc., 441 B.R.

305, 311 (Bankr. M.D. Tenn. 1984). A basic LEXIS search shows dozens of cases involving withdrawal liability claims in bankruptcy going back over 40 years.

24. IBT Local 705 is unaware of any reported cases in this court or any other courts that have subjected withdrawal liability claims to present value discounting. There is good reason for this lack of authority. As the court explained in *In re California-Nevada Methodist Homes,* withdrawal liability represents "an employer's proportionate share of the [pension] plan's 'unfunded vested benefits,' calculated as the difference between the present value of the vested benefits and the current value of the plan's assets." 2023 Bankr. LEXIS 964, *5 (*citing GCIU-Employer Ret. Fund v. MNG Enters.*, 51 F.4th 1092, 1095 (9th Cir. 2022) (quoting *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 217 (1986))).

25. In other words, withdrawal liability is based on both present value vested benefits and present value of assets to pay those benefits. Of course, both liabilities and assets should increase on a commensurate basis but there is no basis for saying that a pension fund should be saddled with increasing liabilities and decreased assets. That should certainly not occur a case like this where it is possible that there will be distributions to equity security holders. Those equity holders made a voluntary decision to risk capital; any recovery they receive should not be at the expense of pension beneficiaries.

26. Debtors' own cited authority in In re U.S. Airways Grp., Inc., 303 B.R. 784, 793 (Bankr. E.D. Va. 2003) supports the position that withdrawal liability is a present claim for payment, not a future or contingent claim. See e.g., In re Durango Georgia Paper Company, 2017 WL 221785, p. 3 (Bankr. S.D.Ga. 2017). (PBGC claims upon termination of a pension fund" is not a claim for future payments; it is an obligation that is enforceable now.") The court in U.S. Airways similarly explained that "Congress, by statute, has expressly given [the Local 705 Fund]

a present right to recover an amount determined in accordance with" ERISA. 303 B.R. 784, 793 (emphasis in original).

27. Debtors cite no reported decision requiring present value discounting of withdrawal liability claim and only cite one case that is remotely close to withdrawal liability: *U.S. Airways* which involves the resolution of the PBGC's claim to fund the liabilities it incurred due to a *terminated* plan. *In re Stone & Webster* has nothing to do with pension plans or any other issue at stake here. Debtors appears to have cited *Stone & Webster* because it was decided by this court. It involves a claim estimation proceeding for unknown claims related to long-term decommissioning of a nuclear power plant, the fixing of which would unduly delay the administration of the estate. Debtors cite no authority for the proposition that a withdrawal liability claim for a continuing fund is subject to present value discount.

28. Even Debtors' decision in *U.S. Airways* involving calculation of PBGC claims, supports IBT Local 705's position and is bolstered by other, and more recent authority. *See In re Rhodes*, 382 B.R. 550, 554 (Bankr. N.D. Ga. 2008) ("After careful consideration of the arguments of the parties and relevant case law, the Court holds that the Bankruptcy Code contains no provision that conflicts with sections 1301(a)(18) and 1362(b)(1)(A) of ERISA or that would otherwise empower the Court to recalculate the PBGC's claim."). *See also, Cox Enters., Inc. v. News-Journal Corp.*, 2014 U.S. Dist. LEXIS 57209.

**WHEREFORE**, INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 705 PENSION FUND respectfully requests that this Court overrule the Debtors' Seventh Omnibus Objection (Substantive) to Withdrawal Liability Claims [Dkt. 2595] and order such other and further relief as this Court deems just and necessary.

Date: April 18, 2024
     Wilmington, Delaware

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No.3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
       whazeltine@sha-llc.com

and

**PEDERSEN HOUPT**

*/s/ John S. Delnero*
John S. Delnero (ARDC No. 6195914)
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
Tel: 312-261-2185
jdelnero@pedersenhoupt.com

and

**BAUM SIGMAN AUERBACH & NEUMAN, LTD.**

*/s/ Patrick N. Ryan*
Patrick N. Ryan (ARDC No. 6278364)
200 West Adams Street, Suite 1825
Chicago, IL 60606
Tel: (312) 216-2573
Email: pryan@baumsigman.com
       srosenblat@baumsigman.com

*Counsel for International Brotherhood of Teamsters Local 705 Pension Fund*