**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) ) ) | Case No. 23-11069 (CTG) |
| Debtors. | ) ) ) ) | (Jointly Administered) |
|  |  | **Re: Docket No. 2806** |

**DEBTORS' OBJECTION TO MOTION OF**
**PEAPACK CAPITAL CORPORATION FOR ALLOWANCE**
**AND IMMEDIATE PAYMENT OF THE ADMINISTRATIVE CLAIM**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully submit this objection (this "Objection") to the *Motion of Peapack Capital Corporation for Allowance and Immediate Payment of the Administrative Claim* [Docket No. 2806] (the "Motion"). In support of this Objection, the Debtors submit the *Declaration of Brian Whittman in Support of the Debtors' Objection to Motion of Peapack Capital Corporation for Allowance and Immediate Payment of the Administrative Claim*, attached hereto as **Exhibit A** (the "Whittman Declaration"), and respectfully state as follows:

**Preliminary Statement**

1. Peapack Capital Corporation ("PCC" or the "Movant") seeks allowance and immediate payment of an administrative claim, but it is not entitled to the relief it requests. Movant demands immediate payment of a purported administrative claim for a period of time in which (a) the Debtors did not use the related Equipment, and (b) the estate derived no benefit from the Equipment. There is no basis for these demands, and the Motion should be denied.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

**Background**

2. On August 6, 2023 (the "Petition Date"), and continuing into August 7, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") [Docket No. 169]. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee"). No trustee or examiner has been appointed in these chapter 11 cases.

3. Prior to the Petition Date, PCC and Debtor YRC Enterprise Services, Inc. ("Enterprise") entered into that certain master lease agreement dated August 25, 2017 (the "Master Lease"). Under the Master Lease, PCC also entered into four corresponding schedules with Debtors YRC Inc. (d/b/a YRC Freight) and USF Reddaway Inc. ("Schedule 1," "Schedule 2," and "Schedule 4" with YRC Inc., and Schedule 5" (with USF Reddaway Inc.), collectively, the "Lease Schedules," and together with the Master Lease, the "Lease Agreement"). The Lease Agreement provided for the lease of trailers (the "Equipment") to Enterprise, YRC Inc., and USF Reddaway Inc.

4. On September 20, 2023 (the "Rejection Date), the Court entered the *Order Approving the Joint Stipulation by and Among the Debtors and Peapack Capital Corporation (I) Granting Relief from the Automatic Stay and (II) Rejecting Certain Lease Agreements* [Docket No. 618] (the "Stipulated Order," and the stipulation attached as Exhibit 1 to the Stipulated Order, the "Stipulation"), thereby modifying the automatic stay to permit the Movant to take possession and/or dispose of the Equipment. The Stipulated Order provides that: (a) "the Master Lease was

deemed rejected as of the date of entry of this Order [*i.e.*, September 20, 2023]"; (b) "[a]ny claim for rejection damages by PCC shall constitute a prepetition general unsecured claim in the Debtors' chapter 11 cases"; and (c) "PCC shall not seek to recover costs, fees, expenses or charges associated with taking possession of the Equipment or otherwise performing under the Stipulation from the Debtors or their estates as an administrative claim."[2]

5.      On April 2, 2024, the Movant filed the Motion, requesting allowance of $516,673.52 in postpetition amounts related to the Lease Agreement as an administrative expense claim and seeking immediate payment of the same. The Debtors respectfully submit that the Court should deny both requests.

## Basis for Relief

I.     **The Movant Has Not Demonstrated Its Claims Are Entitled to Administrative Expense Status Pursuant to Section 503(b)(1)(A) of the Bankruptcy Code.**

6.      Section 503(b)(1)(A) of the Bankruptcy Code provides special priority for "actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commission for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A).

7.      Parties seeking administrative expense status carry a "*heavy burden* to demonstrate that the costs and fees for which it seeks payment provided an actual benefit to the estate" (*In re Bernard Techs., Inc.*, 342 B.R. 174 (Bankr. D. Del. Apr. 13, 2006) (emphasis added)) and that these costs were "necessary to preserve the value of the estate assets." *In re O'Brien Envt'l. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999); *see also In re MTE Holdings LLC*, No. 19-12269 (CTG), 2021 WL 2258270 at *5 (Bankr. D. Del. June 2, 2021) (citing *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010)) (same); *In re Energy Future Holdings Corp.*, 990

---

[2]    *See* Stipulated Order, ¶¶ 4–7.

F.3d 728, 742 (3d Cir. 2021) (explaining there must be a real, actual benefit, not a merely hypothetical benefit to a debtor for administrative expense priority to be appropriate); *In re Lucky's Mkt. Parent Co.*, 2022 WL 843763, at *6 (D. Del. 2022) (citing *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001) ("Section 503 is strictly construed to keep administrative expenses at a minimum, so as to preserve the estate for the benefit of creditors.")).

8. The burden of proving the actual benefit lies with the movant. *See, e.g.*, *In re New WEI, Inc.*, 2018 WL 1115200, at *3 (Bankr. N.D. Ala. 2018) ("In an application for administrative expense, the burden of proof by a preponderance of the evidence is on the movant."). Specifically, the movant is required to provide "a showing that the personalty **was actually used by the debtor post-petition in the ordinary course of business**." *In re Cont'l Airlines, Inc.*, 146 B.R. 520, 527 (Bankr. D. Del. 1992) (emphasis added). "**Mere possession is not sufficient to qualify for an administrative expense** under 503(b)[.]" *Id.*

9. Here, the Movant does not come close to satisfying this heavy burden. The Motion should be denied because the Equipment was not used postpetition and did not provide any benefit to the Debtors or their estates. Immediately before the Petition Date, the Debtors' business came to a halt. The Debtors terminated nearly all of their operational employees, ceased accepting new shipments of goods, and commenced the wind down and liquidation of their trucking businesses and assets. The Equipment sat idle until the Debtors agreed to modify the automatic stay to allow the Movant to reclaim it—there was no use of the Equipment, much less use in the ordinary course of the Debtors' business. While the Movant contends that the Equipment was available for "use and inclusion in Debtors' strategic planning and/or marketing efforts[,]" the Movant does not make any showing that there was a "post-petition transaction between the claimant and the estate" nor that any use of the Equipment was "ordinarily incident to operation of the business."

*See* Motion ¶¶ 19–22.  Indeed, the Debtors' post-petition efforts with respect to the Equipment were limited to returning it to the Movant as expeditiously as possible, given the Debtors' myriad other responsibilities at and around the commencement of these chapter 11 cases.[3]  There is simply no basis under applicable law to grant administrative expenses status to claims that stem from the Debtors' mere possession of the Equipment.  *See In re Cont'l Airlines, Inc.*, 146 B.R. at 527.

10. The Movant's request that the Court afford its $516,673.52 rent expense claims administrative expense status, rather than allowing such claims—if at all—as general unsecured claims, should be denied.  The Equipment provided no benefit to the estates— the Equipment sat idle for a month as the Debtors worked as collaboratively and efficiently as possible with the Movant regarding how the Equipment would be returned to, or reclaimed by, the Movant.  Mere possession is insufficient to show an entitlement to an administrative expense, and that is all that Movant has shown here—the Motion should therefore be denied.

II. **To the Extent that Any Postpetition Fees Under the Lease Agreement Are Treated as Administrative Expenses, They Should Be Limited to the "Reasonable Value" of the Services Provided.**

11. While the Debtors believe the Court should deny the Motion in its entirety, to the extent the Court is inclined to afford any of Movant's claims administrative expenses status, the Debtors are only required to pay the "reasonable value" of the Lease Agreement they used. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (citing *Philadelpha Co. v. Dipple*, 312 U.S. 168, 174 (1941) ("If the debtor-in-possession ***elects to continue to receive benefits*** from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the ***reasonable value of those services***.") (emphasis added).

---

[3] *See* Stipulation (reflecting the agreement reached among the Debtors and PCC approximately one-month postpetition to return the Equipment to PCC).

"[D]epending on the circumstances of a particular contract, [the reasonable value] *may* be what is specified in the contract." *See id.*

12. Under the circumstances of the Lease Agreement in these chapter 11 cases, the amount specified in the Lease Agreement would not be the appropriate metric for what constitutes "reasonable value" the Debtors received prior to the Rejection Date. Specifically, while a total of $376,173.097[4] came due under the terms of the Lease Agreement from the Petition Date through the Rejection Date, the Debtors did not use the Equipment postpetition and therefore did not receive any of the benefit of their bargain under the Lease Agreement. The reasonable value for rental of trailers that are not used and promptly returned to the lessor simply cannot amount to the full contract rate of an agreement that was entered into under the understanding that the lessee would be in a position to use such trailers in the ordinary course of business.

13. Additionally, the $516,673.52 amount Movant requests includes invoiced amounts *after* the Rejection Date, which the Stipulated Order makes clear shall constitute general unsecured claims, not administrative expenses. *See* Stipulated Order ¶ 5 ("Any claim for rejection damages by PCC shall constitute a prepetition general unsecured claim[.]"). Further, $125,724.96 of the requested administrative expenses were invoiced on September 13, 2023, which was *after* the Debtors and PCC agreed to the Stipulation—the Movant knew by that time that the Debtors did not intend to assume or assign the Lease Agreement.[5]

---

[4] The Debtors' records show that the post-petition invoices related to the Lease Agreement that came due prior to the Rejection Date total $376,173.97, not $516,673.52. A table including invoice dates through the Rejection Date, amounts, and the lease schedule to which the amounts relate is attached hereto as **Exhibit B**.

[5] *See* Stipulated Order ("Stipulated and Agreed to this 8th Day of September, 2023); Stipulation, Recitals ("WHEREAS, the Debtors have notified PCC that the Debtors do not intend to assume or assign the Lease Agreement in connection with the Debtors' chapter 11 cases[.]"); **Exhibit B** (reflecting two invoices that came due on September 13, 2023 amounting to a total of $125,724.96).

14. As noted above, a creditor seeking an administrative expense claim must establish its entitlement to the claim by a preponderance of the evidence—Movant has not shown what, if any, benefit the estate received by merely possessing the Equipment in the 45-day period it took to reach an agreement on the Equipment's return to PCC and reject the Lease Agreement. The requirement of a benefit to the estate is "a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been 'necessary within the meaning of § 503(b)(1)(A)." *See, e.g.*, *Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F. 3d 432, 443 (5th Cir. 2019).

15. As the Movant states, the contract rate provides only a *presumption* as to reasonable value. Motion ¶ 22 (citing *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1285 (5th Cir. 1986). However, the court in *Braniff Airways* itself recognized that "if the trustee ultimately rejects the lease the debtor's estate is liable only for the reasonable value of its use and occupancy of the premises. The lessor is entitled to receive administrative expense priority for that amount . . .which is ordinarily presumed to be the contract rental rate, ***adjusted downward or upward to reflect the extent to which the debtor actually used the demised premises***." *See In re Braniff Airways, Inc.*, 783 F.2d at 1285-86 (emphasis added). Further, "[i]n a civil case . . . the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally." *See* Fed. R. Evid. 301. Accordingly, the burden remains with the party claiming the administrative expense to prove its entitlement to such a claim by a preponderance of the evidence. *See In re ID Liquidation One, LLC*, 503 B.R. 392 (Bankr. D. Del. 2013) ("The Court finds that the Objectors have successfully rebutted the presumption that the contract rate represented the reasonable value of the services provided, and therefore the burden shifts to the [movant] to prove their entitlement

to the requested compensation."). The "reasonable value" presumption may be rebutted where there is evidence that the contract rate is "clearly unreasonable," *see Meredith Corp. v. Home Interiors & Gifts, Inc. (In re Home Interiors & Gifts, Inc.)*, No. 08-03125, 2008 WL 4772102, at *10 (Bankr. N.D. Tex. Oct. 9, 2008), or where the debtor provides "convincing evidence" to the contrary. *See In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010).

16. The ultimate determination, however, remains whether and to what extent the goods or services provided benefit to the estate. *See In re Energy Future Holdings Corp.*, 990 F.3d at 741 ("An administrative expense claim is entitled to priority under Section 503(b)(1)(A) if . . . those expenses yielded a benefit to the estate."); *Zagata Fabricators Inc. v. Superior Air Prods.*, 893 F. 2d 624 (3d Cir. 1990) ("Because bankruptcy proceedings are considered to be equitable . . . the landlord's right to collect monetary relief is somewhat curtailed: a debtor is generally required to pay only a reasonable value for the use and occupancy of the landlord's property, which may or may not equal the amount agreed upon in the terms of the lease."); *see also In re C & L Country Mkt. of New Mkt.*, 52 B.R. 61, 62-63 (Bankr. E.D. Pa. 1986) (holding that a chapter 7 debtor who stored $7,000 worth of equipment on a parcel of property he leased did not have to pay a $44,000 contractual rental rate because "the actual, necessary costs and expenses of preserving assets of the estate under § 503(b)(1)(A) cannot exceed the value of those assets."); *In re Ram Mfg., Inc*. 38 B.R. 252, 254 (Bankr. E.D. Pa. 1984) (holding that a debtor who leased a computer only owed as an administrative expense "the amount by which [its] estate benefit[ed]"); *Am. Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 126 (2d Cir. 1960) ("[T]he measure of compensation to which the lessor is entitled is not the amount due under the contract or lease but the fair value of the benefit conferred upon the lease estate.").

17.     Here, the amount the Debtors' estates benefitted by the lease of the Equipment is *zero*, as the Debtors did not use the Equipment and the only postpetition efforts were to promptly return the Equipment to PCC. The Debtors' focus on promptly returning the Equipment to PCC in the 45 days between the Petition Date and the Rejection Date reflects a net expense to the estates, with no corresponding benefit. To require the Debtors to pay anything related to the Lease Agreement as an administrative expense—much less the full contract rate—in light of the circumstances would provide Movant with a windfall at the expense of the Debtors' general unsecured creditors. A bare statement that the continued availability of the Equipment for the "Debtors' use and inclusion in [their] strategic planning and/or marketing efforts" does not carry the Movant's burden to establish their entitlement, particularly where the Court's order approving bidding procedures was entered on September 15, 2023—only five days prior to entry of the Stipulated Order. *See* Motion ¶ 21; *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of the Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575]; *see also In re MTE Holdings LLC*, 2021 WL 2258270 at *5 ("It is certainly true that an administrative claimant must be held to its evidentiary burden of demonstrating its entitlement to payment on its claim.").

18.     Between the Petition Date and the Rejection Date, the Debtors did not exercise any lease buyout options, there was no agreement in place by which the Debtors or their agents would sell the units on PCC's behalf, and the Debtors did not use the Equipment for any commercial

purposes. It would therefore be unreasonable to allow Movant to enjoy the full benefit of their bargain while the Debtors' estates did not receive any benefit in exchange. The Debtors submit that for the reasons described in this Objection, the Whittman Declaration, and any other evidence the Debtors may introduce at the hearing on the Motion, the Debtors have provided convincing evidence that the rates required by the Lease Agreement do not reflect the "reasonable value" of the services provided, rebutting any presumption that may have been created by the Lease Agreement. The burden of persuasion remains with Movant to show its entitlement to any administrative expenses associated with the rejected Lease Agreement. In no event does the "reasonable value" of the unused Equipment amount to $376,173.097—if Movant is to receive any amount as an administrative expense, such amount should be adjusted downward to reflect the Debtors' lack of use of the Equipment.

### III. Even If Movant Is Entitled to Allowance of Any Claims With Administrative Expense Status, It Is Not Entitled to Immediate Payment.

19. The Bankruptcy Code does not require immediate payment of allowed administrative expenses prior to the effective date of a debtor's chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9). Any acceleration of allowed administrative claims during a debtor's chapter 11 cases is left to the discretion of the Court. *In re Bookbinders' Rest., Inc.*, 2006 WL 3858020, at *4 (Bankr. E.D. Pa. Dec. 28, 2006) (finding that timing of the payment of an administrative claim is within the discretion of the bankruptcy court); *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) ("Courts have discretion to determine when an administrative expense will be paid.").

20. In order to qualify for the "exceptional" discretionary grant of immediate payment of an administrative claim, a creditor must show that "there is a necessity to pay and ***not merely that the debtor has the ability to pay***." *In re Cont'l Airlines, Inc.*, 146 B.R. at 531 (emphasis

added) (internal quotations omitted).  In exercising this discretion, courts have adopted a three-factor test to determine whether to require payment of administrative claims upon request:  (a) the prejudice to the debtors in making an early payment; (b) the hardship to the claimant in waiting for payment; and (c) the potential detriment to other creditors that could result from an early payment.  *See Garden Ridge*, 323 B.R. at 143; *Modern Metal Prod. Co.*, 2009 WL 1362632, at *2; *see also In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (holding that, in making a determination as to timing of payment of administrative expenses, "one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets" (internal citations omitted)).

21. The Movant's request does not satisfy any prong of the acceleration test.  **First**, other than stating that the Debtors are administratively solvent (*i.e.*, that the Debtors have the ability to pay), Movant provides *zero* explanation justifying immediate payment of any potential administrative expense.  The request for immediate payment fails on this basis alone.  *See In re Cont'l Airlines, Inc.*, 146 B.R. at 531 (requiring a creditor to show the necessity of immediate payment, not just a showing that the Debtors has the ability to pay).

22. **Second**, the Debtors would be prejudiced were they to be forced to make an immediate payment.  A grant of an immediate payment could result in similarly-situated creditors racing to the courthouse to request immediate payment of their claims and the Debtors should not be forced to divert their attention and available funds for this purpose at this pivotal time in the chapter 11 cases.  Piecemeal payment of administrative expenses prior to the Debtors' consummation of a chapter 11 plan would be distracting, detrimental, and needlessly complicate the Debtors' prosecution of their chapter 11 cases.

23.     ***Third***, the Movant will not be prejudiced, nor has Movant demonstrated that it would face any hardship, much less meaningful, extraordinary hardship by waiting until the end of these chapter 11 cases to receive payment on its claims, regardless of priority.  The Debtors are continuing to work through what has been an efficient and value-maximizing sale process—ultimately to fund equitable distributions to stakeholders pursuant to a plan.  While the payment of claims may be delayed by this process, delay does not amount to material hardship.

24.     ***Lastly***, paying certain administrative claimants ahead of others would undermine one of the Bankruptcy Code's chief goals:  orderly distribution.  *See In re Glob. Home Prod.*, 2006 WL 3791955, at *3 (citing *HQ Global Holdings*, 282 B.R. at 173) (ruling that, in making the determination regarding the timing of payment of administrative expenses, "one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets").  As noted above, acceding to the Movant's request for immediate payment could result in other potential administrative expense claimants requesting similar relief.  This would needlessly create an uncontrolled scramble for payment of administrative claims and undermine the orderly and equitable distribution among similarly-situated claimants.

25.     For these reasons, the Debtors respectfully request the Court deny the Motion.

## Reservation of Rights

26.     Nothing contained herein is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or

defined in this Objection or any order granting the relief requested by this Objection; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## Notice

27.     The Debtors will provide notice of this objection to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) counsel to the Movant; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  In light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

Dated: April 24, 2024
Wilmington, Delaware

*/s/ Peter J. Keane*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | **KIRKLAND & ELLIS LLP** |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | 300 North LaSalle |
| 919 North Market Street, 17th Floor | Chicago, Illinois 60654 |
| P.O. Box 8705 | Telephone: (312) 862-2000 |
| Wilmington, Delaware 19801 | Facsimile: (312) 862-2200 |
| Telephone: (302) 652-4100 | Email: patrick.nash@kirkland.com |
| Facsimile: (302) 652-4400 | david.seligman@kirkland.com |
| Email: ljones@pszjlaw.com | |
| tcairns@pszjlaw.com | |
| pkeane@pszjlaw.com | |
| ecorma@pszjlaw.com | -and- |

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:         allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*