## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date:** |
| | ) **June 3, 2024 at 10:00 a.m. (ET)** |
| | ) **Response Deadline:** |
| | ) **May 28, 2024 at 4:00 p.m. (ET)** |

## MOTION OF DEBTORS
## FOR ENTRY OF AN ORDER (I) EXTENDING
## THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11
## PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION
## 1121 OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion:[2]

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), further extending by 90 days the periods during which the Debtors have

the exclusive right to file a chapter 11 plan (the "Filing Exclusivity Period") and to solicit votes

thereon (the "Solicitation Exclusivity Period," and together with the Filing Exclusivity Period,

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal
place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400,
Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the
Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of
Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14]
(the "First Day Declaration"). Capitalized terms used but not immediately defined in this motion have the
meanings ascribed to them later in this motion or in the First Day Declaration, as applicable.

the "Exclusivity Periods") through and including September 2, 2024[3] and October 29, 2024,

respectively, without prejudice to the Debtors' right to seek further extensions to the Exclusivity

Periods, and (b) granting related relief.[4]  Absent the relief requested herein, the Filing Exclusivity

Period would expire on June 3, 2024, and the Solicitation Exclusivity Period on July 31, 2024.

**Preliminary Statement**

2.      Since their second request for an extension of exclusivity was granted on February

28, 2024,[5] the Debtors have capitalized on the momentum that they have built from the first phase

of a historically successful sale and marketing process to move these chapter 11 cases forward.

The results of the Debtors' efforts to date have been tremendous:  the Debtors' monetized 130

owned properties for $1.88 billion [Docket No. 1354] and 23 leased properties for $92 million

[Docket No. 1735], and with some of those proceeds, paid off all prepetition secured debt and all

debtor-in-possession financing.  The Debtors have since continued to build on this early success,

spending significant time determining which unexpired nonresidential real property leases would

bring value to the estates through assumption of such unexpired leases for later sale and assignment

---

[3]   A 90-day extension of the current Filing Exclusivity Period results in the Filing Exclusivity Period ending on
     Sunday, September 1, 2024.  By operation of Bankruptcy Rule 9006, however, the proposed Filing Exclusivity
     Period will continue through Monday, September 2, 2024.

[4]   Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for
     the District of Delaware (the "Local Rules") provides that "[u]nless otherwise provided in the Code or in the Fed.
     R. Bankr. P., if a motion to extend the time to take any action is filed before the expiration of the period prescribed
     by the Code, the Fed. R. Bankr. P., these Local Rules or Court order, the time shall automatically be extended until
     the Court acts on the motion, without the necessity for the entry of a bridge order."  Accordingly, the Exclusivity
     Periods shall be automatically extended upon the filing of this motion until the Court rules on this motion.

[5]   *See* Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof
     Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief [Docket No. 2449] (the "Second
     Extension Order") granting the Motion of Debtors For Entry of an Order (I) Extending the Debtors' Exclusive
     Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy
     Code and (II) Granting Related Relief [Docket No. 2131] (the "Second Extension Motion").

or other use.   As a result of that analysis, the Debtors sought to assume approximately 78 nonresidential real property leases to ensure that the value from those assets is maximized.[6]

3.      Adding to their growing list of value-maximizing achievements since entry of the Second Exclusivity Order, on April 18, 2024, the Debtors prevailed on the merits at a contested hearing as to whether (among other litigated issues) the Debtors were permitted under section 365 of the Bankruptcy Code to assume unexpired real property leases to maximize their value.   In finding that the Debtors were permitted to assume unexpired nonresidential real property leases without simultaneously assigning such leases to an assignee immediately, the Court extinguished any perceived uncertainty surrounding the Debtors' strategy to maximize the value of their leased property portfolio.   Now, with the Court's guidance on the Debtors' ability to assume unexpired real property leases in tow, the Debtors and their advisors continue to evaluate strategic alternatives for the remaining properties in their leased and owned real estate.   This analysis will ultimately inform the contours of a forthcoming proposed chapter 11 plan.

4.      In addition, the Debtors have, since the entry of the Second Exclusivity Order, continued to reconcile the claims pool, including prosecuting the Debtors' objections to the proofs of claim filed by, among others, certain multiemployer pension plans (the "MEPPs") and alleged WARN claimants, including the International Brotherhood of Teamsters ("IBT"), other unions and union-related funds, and both individual and class claimants (the "MEPP and WARN Litigation").   The Debtors also (effective March 1, 2023) merged together their three single employer pension plans (the "SEPPs"), minimizing the claims pool and beginning the process of reconciling and hopefully fixing the claim of the Pension Benefit Guarantee Corporation (the "PBGC").

---

6   *See* Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Certain Unexpired Leases and (II) Granting Related Relief [Docket No. 2157] (the "Lease Assumption Motion").

5.      If the Debtors prevail in the MEPP and WARN Litigation, then the general unsecured claims pool will be reduced by up to approximately ***$8.0 billion*** in disallowed claims. And the outcome of the MEPP and WARN Litigation will determine, in large part, the ultimate size of the claims pool.  The MEPP and WARN Litigation is expected to continue along the current litigation scheduling orders through late 2024, at the earliest.

6.      The Debtors have also continued to maximize the value of the estate through their thorough review and reconciliation of the rest of the claims register.  Like the outcome of the MEPP and WARN Litigation, the Debtors' claims reconciliation efforts will also inform potential recoveries for stakeholders in these chapter 11 cases.  As of the date hereof, the Debtors have filed twelve omnibus objections to claims (each an "Omnibus Objection to Claims") and anticipate that they will file additional omnibus objections to claims in the coming weeks and months.  Resolution of the foregoing, in addition to many other complex matters related to the Debtors' orderly winddown of their businesses, will bear on the terms of the chapter 11 plan and the value to be distributed thereunder.

7.      Every step of the way, the Debtors have kept the Official Committee of Unsecured Creditors in these chapter 11 cases ("UCC") appraised and involved—with the UCC navigating the reality that the largest claims objected to by the Debtors are the proofs of claim filed by individual UCC members.[7]  To date, the UCC has taken positions on some, but not all, of the Debtors' claims objections.[8]

---

[7]   The UCC currently has eight members.  Four of those members (the IBT, two pension funds, and a WARN claimant) have been the subject of substantial claims objections, affirmative litigation, or both.  A fifth is the PBGC, which has taken positions related to the MEPP litigation.

[8]   *See* Docket No. 2755 & 3057.

8.      Despite the monumental achievements described above, there remain numerous ongoing work streams that must continue to advance before the Debtors can propose, negotiate, and solicit a chapter 11 plan that the Debtors are optimistic will provide meaningful distributions to the Debtors' creditors.  Granting the requested relief will allow the Debtors to focus their attention on capitalizing on the remaining aspects of their sale processes, addressing material parts of the claims pool, and making additional progress on their wind-down efforts to materially reduce the administrative burn of these chapter 11 cases.  The Debtors submit that they are the only party suited to put forth a confirmable chapter 11 plan in light of the complexities of the issues that must be resolved and the competing interests at stake, and the Debtors intend to do so as soon as they are able.  The Debtors believe that permitting any other party in interest to put forth a chapter 11 plan at this juncture of these chapter 11 cases would be value destructive.

9.      The Debtors certainly meet the legal standard for this Court to grant a third extension of exclusivity.  There is no question that these chapter 11 cases have progressed meaningfully since entry of the Second Exclusivity Order.  Among other things, the Debtors have spent significant time and resources:

- reconciling claims and interests as promptly and efficiently as possible;

- filing substantive and non-substantive claims objections to more than 2,800 proofs of claim pursuant to their Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Omnibus Objections to Claims [Docket No. 2576, 2577, 2578, 2586, 2595, 2799, 2800, 2801, 3255, 3256];

- obtaining entry of orders in connection with their Sixth, Eighth, Ninth, and Tenth Omnibus objections to Claims, thereby right-sizing the claims pool by more than $23,260,000 [Docket No. 2911, 3184, 3252, 3253].

- drafting and filing a reply in support of their Third, Fourth, and Fifth Substantive Omnibus Objections to Claims alleging WARN liability [Docket No. 2909];

- successfully negotiating scheduling orders with 11 pension funds, two sets of WARN adversary plaintiffs, and claimants filing over 1,000 WARN-related proofs of claim

that contemplate resolution of all WARN claims by the end of 2024 [Docket Nos. 2195, 2892];

- successfully litigating objections to, and securing a Court order authorizing, the assumption of certain unexpired leases [Docket No. 3076, 3086];

- filing and obtaining entry of orders in connection with several stipulations with landlord counterparties memorializing the consensual extension of the deadline to assume or reject certain non-residential real property leases under section 354(d)(4) [Docket No. 2427, 2687, 2727, 2750, 2764, 3031, 3032]

- obtaining entry of an order extending the deadline by which the Debtors must remove certain actions by 121 days [Docket No. 2654];

- filing three rejection notices pursuant to the Rejection Procedures Order[9] and resulting in the rejection of 15 contracts and four leases [Docket No. 2463, 2955, 3046, 3232];

- successfully negotiated and entered into 72 setoff agreements pursuant to the Customer Collections First Day Order,[10] resulting in approximately $12,680,000 in collections in account receivable;

- addressing a large volume of questions, concerns, and issues raised by employees, vendors, utility companies, and other parties in interest; and

- responding to diligence requests from the UCC and other key stakeholder groups.

10.     Based on the current posture of these chapter 11 cases, the Debtors believe sufficient cause exists to warrant an extension of the Exclusivity Periods. Given the complexities of these chapter 11 cases and the Debtors' ability to continue moving these chapter 11 cases forward, the administration of these chapter 11 cases would be seriously disrupted if another party were permitted to file a plan while the Debtors are in the midst of resolving numerous complex issues that will inform the contours of any confirmable chapter 11 plan. An extension of the Exclusivity Periods is in the best interests of the Debtors, their estates, and all stakeholders, as it

---

[9]  *See* Order (I) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases and (II) Granting Related Relief [Docket No. 550] (the "Rejection Procedures Order").

[10]  *See* Final Order (I) Authorizing the Debtors to Consent to Limited Relief from the Automatic Stay to Permit Setoff of Certain Customer Claims Against the Debtors, and (II) Granting Related Relief [Docket No. 522] (the "Customer Collections First Day Order").

10647255.v2

will allow the Debtors to procure the best recovery for their creditors and help to ensure a successful conclusion to these chapter 11 cases.

11.     Accordingly, the Debtors seek a 90-day extension of the Exclusivity Periods so they have the exclusive right to file a plan until September 2, 2024 and solicit votes thereon until, October 29, 2024.  For all of the foregoing reasons and those set forth below, the Debtors respectfully submit that a 90-day extension of exclusivity and solicit acceptances is appropriate in these circumstances, and request that the Court approve extension of the Exclusivity Periods.

**<u>Jurisdiction and Venue</u>**

12.     The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

13.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     The statutory bases for the relief requested herein are sections 1121 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), rules 2002, 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rules 2002-1 and 9013-1.

**Background**

15.    On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169].  The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee").  No trustee or examiner has been appointed in these chapter 11 cases.

**Basis for Relief**

16.    Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here.   Specifically, section 1121(d) of the Bankruptcy Code provides that "on request of a party in interest made within the respective periods …of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).  Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191; *see also In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D.N.J.) (noting that the legislature intended that the granting of an extension be based "on a showing of some promise of probable success [for reorganization]."), *aff'd, FGH Realty Credit Corp. v Newark Airport/Hotel Ltd. P'ship*, 155 B.R. 93 (D.N.J. 1993).  Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare

adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors.  *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

17.    Courts within the Third Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case.  *See, e.g.*, *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either reduce or increase that period of exclusivity in its discretion."); *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 132 (D.N.J. 1995) (noting that section 1121(d)(1) "grants great latitude to the [b]ankruptcy [j]udge in deciding, on a case-specific basis, whether to modify the exclusivity period."); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (noting that the granting or denial of a request to extend exclusivity is within the discretion of the bankruptcy court).  In general, as long as debtors give the court "no reason to believe that they are abusing their exclusivity rights . . . [a] requested extension of exclusivity . . . should be granted." *In re Glob. Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D.N.Y. 2003); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (noting the debtors' "substantial efforts . . . to stabilize their business and develop a viable exit strategy").

18.    In particular, bankruptcy courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods.  These factors include:

(a)    the size and complexity of the case;

(b)    the existence of good-faith progress;

(c)    the necessity of sufficient time to negotiate and prepare adequate information to allow a creditor to determine whether to accept such chapter 11 plan;

(d)    whether the debtor is paying its debts as they become due;

(e)      whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f)      whether the debtor has made progress negotiating with creditors;

(g)      the length of time a case had been pending;

(h)      whether the debtor is seeking an extension to pressure creditors; and

(i)      whether or not unresolved contingencies exist.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664–65 (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).

19.      Not all of these factors are relevant to every case, and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g.*, *Express One*, 194 B.R. at 100 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two of the factors in holding that cause existed to extend exclusivity). For example, both Congress and courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan. H.R. No. 95-595, at 231-232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek…[relief]…under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); *see also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan…for a huge debtor with a complex

financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

20.     As set forth herein, the Debtors' chapter 11 cases satisfy the relevant factors and, thus, sufficient "cause" exists to extend the Exclusivity Periods as provided herein.  Courts have granted relief similar to that requested herein for other cases of scale and complexity.  *See, e.g.*, *In re Emerald Oil, Inc*., Case No. 16-10704 (KG) (Bank. D. Del. March 6, 2017) (granting the third extension of approximately 120 days); *In re Energy Future Holdings Corp*., No. 14-10979 (CSS) (Bankr. D. Del. May 1, 2015) (granting third extension of approximately 129 days); *In re Exide Technologies*, No. 13-11482 (KJC) (Bankr. D. Del. Aug. 29, 2014) (granting third extension of approximately 130 days); *In re The Great Atlantic & Pacific Tea Company, Inc*., No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 27, 2012) (granting third extension of approximately 150 days); *In re Frontier Airlines Holdings, Inc*., No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 20, 2009) (granting third extension of approximately 125 days);[11]

## I.    The Debtors' Chapter 11 Cases Are Large and Complex.

21.     Having once been the third largest LTL freight carrier and the fifth largest transportation company in North America, these chapter 11 cases involve 24 Debtor-affiliate entities, which had, at the outset of these cases, approximately 1,650 employees as compared to employing over 30,000 people prior to the Petition Date.  The Debtors are winding down operations of numerous service terminals spanning 300 communities across the United States and Canada.  As of the Petition Date, the Debtors had approximately $1.2 billion in funded-debt obligations.

---

[11]  Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' counsel.

10647255.v2

22.     The Debtors have a wide variety of parties in interest, ranging from thousands of vendors to hundreds of contract and litigation counterparties, tens of thousands of former employees, several unions, dozens of pension, health and welfare funds, and numerous local, state, and federal agencies—many of whom have been active in these chapter 11 cases.  The IBT, which represents 22,000 former employees of the Debtors, is active in these chapter 11 cases, having most recently filed a response to the Debtors Third, Fourth, and Fifth Omnibus Claims Objections to Proofs of Claim for WARN liability[12] that has resulted in an ongoing discovery process related to the same.[13]  The Debtors were also participants in three SEPPs and more than 20 MEPPs, which filed claims leading to the Debtors' objections to proofs of claim for withdrawal liability and ongoing discovery processes related to the same.  Collectively, within these pieces of litigation, the Debtors have received massive amounts of discovery demands from various creditors, including at least (so far) 334 requests for production and 126 interrogatories.  The Debtors also have active shareholders, some of whom believe that there should be sufficient value in these chapter 11 cases to make a distribution to equity once all of the Debtors' assets are sold and all of the claims against these chapter 11 estates are reconciled.

23.     The wide variety of parties in interest, and the complexities presented by their competing interests, also notably positions the Debtors as the party best suited to ultimately propose a confirmable chapter 11 plan.  Regardless, at this point, the size and complexity of these chapter 11 cases weigh in favor of extending the Exclusivity Periods.

---

[12]  *See* Docket No. 2778

[13]  *See* Docket Nos. 3237 & 3313.

10647255.v2

II.      **The Debtors Have Made Good-Faith Progress Towards Conclusion of these Chapter 11 Cases.**

24.      During the course of these chapter 11 cases, the Debtors have made significant progress in administering these chapter 11 cases.  The Debtors commenced these chapter 11 cases with extremely limited liquidity and have moved as expeditiously as possible through these chapter 11 cases, engaging in a comprehensive marketing process to maximize the value of their estates for the benefit of all stakeholders.  That process has been extraordinarily successful, resulting in the successful sale and marketing process and related auction for the sale 130 fee-owned properties and 23 leases and the entry of consensual Court orders approving the same.[14]  The proceeds from this sale process allowed the Debtors to pay off all of their prepetition funded-debt obligations.[15] Since the entry of the Second Exclusivity Order, the Debtors have continued to bring additional value into the estate for the benefit of all stakeholders through their ongoing claims reconciliation process and the successful negotiation of 72 setoff agreements pursuant to the Customer Collections First Day Order, securing over $12.6 million in collections on outstanding accounts receivable.

25.      Still, although much process has been made since the Petition Date, the Debtors need additional time to continue to engage with their stakeholders to consummate the remaining sales and litigate certain claims while negotiating others in order to be in a position to develop and negotiate a chapter 11 plan.  This substantial progress administering these chapter 11 cases weighs in favor of an extension of the Exclusivity Periods.

---

[14]  *See* Docket Nos. 1354 & 1735.

[15]  *See* Docket No. 2119.

**III.      The Debtors Are Paying Their Bills as They Come Due.**

26.      Since the Petition Date, the Debtors have paid their postpetition debts in the ordinary course or as otherwise provided by Court order.

**IV.      Time Elapsed in these Chapter 11 Cases**

27.      This is the Debtors' third request for an extension of the Exclusive Periods and comes approximately nine months after the Petition Date.  As referenced above, courts have previously granted debtors' third requests for extension of the exclusivity periods in cases of this size and complexity.  *See also In re Borders Grp., Inc.*, 460 B.R. 818, 826 (Bankr. S.D.N.Y. 2011) (approving the extension of the debtors' exclusivity periods by 120 days and noting that where the debtors have been "busy satisfying the general requirements of a chapter 11 case . . . [that] the debtors should be able to [have additional time to] present creditors with a more refined business model and projections for future operations—*all of which are necessary for filing both a disclosure statement and plan*.") (emphasis added).

**V.      An Extension of the Exclusivity Periods Will Not Pressure or Prejudice Creditors.**

28.      The Debtors are not seeking an extension of the Exclusivity Periods to pressure or prejudice any of their stakeholders.  Rather, the Debtors seek to maintain exclusivity so parties with competing interests do not hinder the Debtors' efforts to maximize value for the benefit of all stakeholders.  Extending the Exclusivity Periods will benefit all creditors by preventing the drain on time and resources that inevitably occurs when multiple parties, with potentially diverging interests, vie for the consideration of their own respective plans.  All stakeholders benefit from the continued stability and predictability that a centralized process provides, which can only occur while the Debtors remain the sole potential plan proponents.  Accordingly, the relief requested herein is without prejudice to the Debtors' creditors and will benefit the Debtors' estates, their creditors, and all other key parties in interest.

29.     An objective analysis of the relevant factors demonstrates that the Debtors are doing everything that they should be doing as chapter 11 debtors to facilitate a successful conclusion to these chapter 11 cases.  Accordingly, the Debtors request an extension of the Exclusivity Periods, and reserve the right to request further extensions of the Exclusivity Periods, as circumstances require.

### **Notice**

30.     The Debtors will provide notice of this motion to:  (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  In light of the nature of the relief requested, no other or further notice need be given.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  May 20, 2024
Wilmington, Delaware

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400
Email:           ljones@pszjlaw.com
                 tcairns@pszjlaw.com
                 pkeane@pszjlaw.com
                 ecorma@pszjlaw.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:           patrick.nash@kirkland.com
                 david.seligman@kirkland.com

-and-

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:           allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*