**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| YELLOW CORPORATION, et al., | ) | |
| | ) | Case No. 23-11069 (CTG) |
| Debtors. | ) | |
| | ) | Jointly Administered |

**MULTIEMPLOYER PENSION PLANS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

SULLIVAN · HAZELTINE · ALLINSON LLC
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com


GROOM LAW GROUP, CHARTERED
Edward J. Meehan (*pro hac vice*)
Samuel I. Levin (*pro hac vice*)
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5811
Tel: (202) 857-0620
Fax: (202) 659-4503
Email: emeehan@groom.com
        slevin@groom.com


*Special Counsel for the Funds*

Date:   June 28, 2024

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

BACKGROUND ..........................................................................................................3

STANDARD..................................................................................................................6

ARGUMENT ................................................................................................................7

I.   The PBGC Regulation is Valid and Within the Authority Congress Granted
to PBGC .............................................................................................................7

A.   Section 1432(m)(1) Unambiguously Authorizes the PBGC Regulation ..................7

B.   The Purposes of MPPAA and ARPA Support the PBGC Regulation......................11

C.   Debtors' Reliance on ARPA's Legislative History is Misplaced and Misleading ....14

D.   The Major Questions Doctrine Does Not Apply ......................................................16

E.   Debtors Cannot Use a Post Hoc Expert Report to Challenge the PBGC
Regulation ...............................................................................................................17

F.   The PBGC Regulation is Not Arbitrary or Capricious .............................................18

CONCLUSION..............................................................................................................19

# TABLE OF AUTHORITIES

<u>Cases</u>

*BedRoc Ltd., LLC v. United States,*
    541 U.S. 176 (2004) ....................................................................................................... 7, 11

*Bintz v. Fed. Emergency Mgmt. Agency,*
    413 F. Supp. 3d 349 (D. Del. 2019) ....................................................................................... 6

*Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. Pension Fund v.*
    *Centra Inc.,*
    983 F.2d 495 (3d Cir. 1992) .................................................................................................. 4

*Bragdon v. Abbott,*
    524 U.S. 624 (1998) .......................................................................................................... 10

*Camp v. Pitts,*
    411 U.S. 138 (1973) ..................................................................................................... 6, 17

*CBS Inc. v. PrimeTime 24 Joint Venture,*
    245 F.3d 1217 (11th Cir. 2001) ........................................................................................ 14

*City of Philadelphia v. Attorney Gen. of United States,*
    916 F.3d 276 (3d Cir. 2019) .............................................................................................. 10

*Connolly v. Pension Ben. Guar. Corp.,*
    475 U.S. 211 (1986) ..................................................................................................... 4, 11

*Corley v. United States,*
    556 U.S. 303 (2009) ............................................................................................................ 9

*Fair Bd. Recruitment v. Sec. & Exch. Comm'n,*
    85 F.4th 226 (5th Cir. 2023) ............................................................................................. 16

*Fed. Commc'ns Comm'n v. Prometheus Radio Project,*
    592 U.S. 414 (2021) .................................................................................................... 18, 19

*In re Mehta,*
    310 F.3d 308 (3d Cir. 2002) .............................................................................................. 14

*Lozano v. New Jersey,*
    9 F.4th 239 (3d Cir. 2021) ................................................................................................... 6

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992) ...................................................................................................... 2, 7

*Nachman Corp. v. Pension Ben. Guar. Corp.*,
    446 U.S. 359 (1980) ............................................................................................ 3

*NVE, Inc. v. Dep't of Health & Hum. Servs.*,
    436 F.3d 182 (3d Cir. 2006) ............................................................................... 17

*Pension Ben. Guar. Corp. v. R.A. Gray & Co.*,
    467 U.S. 717 (1984) ............................................................................ 3, 4, 11, 12

*Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Loc. Union No. 66*,
    580 F.3d 185 (3d Cir. 2009) ................................................................................. 4

*Roth v. Norfalco LLC*,
    651 F.3d 367 (3d Cir. 2011) ............................................................................... 11

*Rowland v. Bissell Homecare, Inc.*,
    73 F.4th 177 (3d Cir. 2023) ................................................................................. 9

*Shelter Framing Corp. v. Pension Ben. Guar. Corp.*,
    705 F.2d 1502 (9th Cir. 1983) ........................................................................... 12

*Sofco Erectors, Inc. v. Trustees of Ohio Operating Engineers Pension Fund*,
    15 F.4th 407 (6th Cir. 2021) ............................................................................ 2, 9

*Trustees of Loc. 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.*,
    692 F.3d 127 (2d Cir. 2012) ................................................................................. 3

*United States v. Craft*,
    535 U.S. 274 (2002) ........................................................................................... 14

*United States v. Est. of Romani*,
    523 U.S. 517 (1998) ........................................................................................... 15

*United States v. McQuilkin*,
    78 F.3d 105 (3d Cir. 1996) ................................................................................. 10

*W. Virginia v. EPA*,
    597 U.S. 697 (2022) ..................................................................................... 16, 17

*Wise v. Ruffin*,
    914 F.2d 570 (4th Cir. 1990) ......................................................................... 11, 12

<u>Statutes</u>

5 U.S.C. § 706(2) ................................................................................................... 6, 18

29 U.S.C. § 1432(l) ................................................................................................ 13

29 U.S.C. § 1432(m) ........................................................................................... *passim*

34 U.S.C. § 10446(e)(3) ......................................................................................... 10

Rules

Federal Rule of Civil Procedure 56 ........................................................................ 1

Federal Rule of Evidence 702 ............................................................................... 17

Federal Rules of Bankruptcy Procedure 7056 and 9014 ......................................... 1

Regulations

29 C.F.R. § 4262.16(g)(2) ............................................................................... 1, 5, 7

*Special Financial Assistance by PBGC,*
    87 Fed. Reg. 40,968 (July 8, 2022) ........................................................ 3, 12, 13, 18

*Special Financial Assistance by PBGC—Withdrawal Liability Condition Exception,*
    88 Fed. Reg. 4,900 (Jan. 26, 2023) ............................................................ 16, 18, 19

The Funds,[1] by and through their undersigned counsel, hereby move this Court pursuant to Federal Rule of Civil Procedure 56, and Federal Rules of Bankruptcy Procedure 7056 and 9014, for partial summary judgment (the "Motion").

## INTRODUCTION

1. The Funds each received Special Financial Assistance ("SFA") from the Pension Benefit Guaranty Corporation ("PBGC"), pursuant to the American Rescue Plan Act of 2021 ("ARPA"). SFA was intended to enable underfunded multiemployer pension plans to pay the hard-earned retirement benefits owed to their participants and beneficiaries, which, for each of the Funds, include Debtors' former employees. While the Funds have already received SFA, PBGC continues to review SFA applications of other multiemployer plans, resulting in ten new grants of SFA this month.[2]

2. Like most federal grants of money, the Funds' receipt of SFA came with a number of conditions to ensure that the money was used appropriately. One of those conditions—imposed by a PBGC regulation, 29 C.F.R. § 4262.16(g)(2) (the "PBGC Regulation")—was that the receipt of SFA not be immediately counted for purposes of determining the withdrawal liability of any employers that, like Debtors, withdrew from plans shortly after the Funds' receipt of SFA.

3. Debtors have asserted that the PBGC Regulation is inconsistent with PBGC's statutory authority. But ARPA expressly granted PBGC the authority to "impose, by regulation .

---

[1] The "Funds" are ten multiemployer pension plans:  New York State Teamsters Conference Pension and Retirement Fund, Road Carriers Local 707 Pension Fund, Teamsters Local 641 Pension Plan, Western Pennsylvania Teamsters and Employers Pension Fund, Management Labor Pension Fund Local 1730, International Association of Machinists Motor City Pension Fund, Mid-Jersey Trucking Industry & Teamsters Local 701 Pension and Annuity Fund, Teamsters Local 617 Pension Fund, Trucking Employees of North Jersey Pension Fund, and Freight Drivers and Helpers 557 Pension Fund.

[2] https://www.pbgc.gov/news/press

. . reasonable conditions on an eligible multiemployer plan . . . relating to . . . withdrawal liability." 29 U.S.C. § 1432(m)(1). The PBGC Regulation, on its face, has a "bearing" on or "concerns" withdrawal liability, and, therefore, is within the scope of PBGC's statutory authority under the plain text of the statute. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (defining the phrase "relating to"). Despite at least four opportunities to do so, Debtors have steadfastly refused to even acknowledge the "relating to" language in Section 1432(m)(1), which expressly and unambiguously authorizes the PBGC Regulation. *See infra* at Section I(A).

4.      Under Debtors' view of ARPA—which appears nowhere in its text or any applicable case law—PBGC may only impose conditions on "withdrawal liability ***after*** it is calculated . . . ." *See* Dkt. 2130 ("Debtors' Central States Reply"), ¶ 17 (emphasis added). But the Sixth Circuit has stated exactly the opposite, that ARPA "explicitly authorized the PBGC to impose conditions on ***calculating*** withdrawal liability." *Sofco Erectors, Inc. v. Trustees of Ohio Operating Engineers Pension Fund*, 15 F.4th 407, 422 n.2 (6th Cir. 2021) (emphasis added).

5.      As discussed in more detail below, Debtors' view of ARPA also: (i) violates multiple fundamental canons of statutory construction; and (ii) is inconsistent with Third Circuit precedent interpreting a similar provision authorizing an agency to impose "reasonable conditions" on the receipt of federal money. *See infra* at ¶¶ 27-29 & Section I(C).

6.       Finally, Debtors' position is also completely at odds with the purposes of ARPA and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), which amended the Employee Retirement Income Security Act of 1974 ("ERISA") to mandate withdrawal liability to curtail employers' incentives to withdraw from plans.

7.      PBGC adopted the PBGC Regulation "to prevent SFA payments from leading to significant decreases in withdrawal liability assessments that would incentivize employers to

withdraw from these plans." *Special Financial Assistance by PBGC*, 87 Fed. Reg. 40,968, 41,001 (July 8, 2022). SFA was intended to benefit multiemployer pension plans and their participants and beneficiaries, not to incentivize and reward employers for *leaving* multiemployer pension plans, thereby damaging the very plans SFA and MPPAA were designed to protect.

8.     There is no textual, case law, or policy basis for this Court to invalidate the PBGC Regulation and, in doing so, undermine hundreds of multiemployer pension plans nationwide (most of which are not represented in this proceeding) and the millions of participants and beneficiaries who depend on them. This Court should, accordingly, reject Debtors' challenge to the validity of the PBGC Regulation and grant the Funds' Motion for Partial Summary Judgment.

## BACKGROUND

9.     The Funds are each multiemployer pension plans, "in which multiple employers pool contributions into a single fund that pays benefits to covered retirees who spent a certain amount of time working for one or more of the contributing employers." *Trustees of Loc. 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 129 (2d Cir. 2012).

10.     The Funds are responsible for paying benefits to more than 70,000 participants and beneficiaries, and are governed by ERISA, which Congress enacted "to prevent the 'great personal tragedy' suffered by the employees whose vested benefits are not paid when pension plans are terminated." *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 374 (1980) (footnote omitted).

11.     In 1980, Congress amended ERISA by passing MPPAA, which imposed withdrawal liability on employers who withdrew from their participation in multiemployer funds. *See Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984). Withdrawal liability "is the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the

difference between the present value of vested benefits and the current value of the plan's assets." *Id.*

12.     In enacting MPPAA, Congress agreed with the analysis of PBGC that "withdrawal liability would . . . discourage voluntary withdrawals and curtail the current incentives to flee the plan." *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 217 (1986) (quoting testimony from the PBGC Executive Director).

13.     "The MPPAA was . . . designed (1) to protect the interests of participants and beneficiaries in financially distressed multiemployer plans, and (2) to encourage the growth and maintenance of multiemployer plans in order to ensure benefit security to plan participants." *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Loc. Union No. 66*, 580 F.3d 185, 193–94 (3d Cir. 2009) (quoting *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. Pension Fund v. Centra Inc.*, 983 F.2d 495, 504 (3d Cir. 1992)) (cleaned up).  Accordingly, the Third Circuit has held that MPPAA "should be construed liberally in favor of protecting the participants in employee benefit plans." *Centra*, 983 F.2d at 504.

14.     Prior to filing bankruptcy, Debtors were participating employers in the Funds and made contributions to the Funds on behalf of eligible employees who were credited with service toward the accumulation of pension benefits.  Debtors, however, withdrew from the Funds and triggered withdrawal liability of more than $1.5 billion under MPPAA.  Debtors have not paid their withdrawal liability obligations to the Funds and have disputed the Funds' withdrawal liability proofs of claim on several grounds.  *See generally* Dkt. 1962 ("Objections"), ¶¶ 34-57.

15.     Debtors' principal challenge to the Funds' withdrawal liability proofs of claim is that the Funds' withdrawal liability calculations complied with the PBGC Regulation, which Debtors contend this Court should invalidate.  *See* Objections, ¶¶ 2-6, 45.  *See also* Dkt. 3565

(Debtors' largest shareholder, MFN, Partners, LP, describing this as "the most pressing issue for this Court to resolve").

16.     The PBGC Regulation, which is entitled "Phase-in-of SFA," requires that multiemployer pension plans' receipt of SFA under ARPA not be immediately considered for purposes of calculating withdrawal liability, but, instead, be phased in over time.  *See* 29 C.F.R. § 4262.16(g)(2).  *See also* Objections, ¶ 45.

17.     In ARPA, Congress provided PBGC with the following authority:

> ***The corporation***, in consultation with the Secretary of the Treasury, ***may impose, by regulation*** or other guidance, ***reasonable conditions on an eligible multiemployer plan that receives special financial assistance relating to*** increases in future accrual rates and any retroactive benefit improvements, allocation of plan assets, reductions in employer contribution rates, diversion of contributions to, and allocation of expenses to, other benefit plans, and ***withdrawal liability***.

29 U.S.C. § 1432(m)(1) (emphasis added).

18.     In their Objections, Debtors appeared to challenge the PBGC Regulation on both legal and equitable grounds.  *See, e.g.*, Objections, ¶ 3 ("The Pension Plans' assertion of approximately $1.6 billion in claims . . . ignores this [SFA] funding," which "belies the reality of their situation as of the Petition Date and seeks an inequitable result fundamentally inconsistent with the Bankruptcy Code.").  *See also id.*, ¶¶ 6, 37.  Debtors, however, have since withdrawn any such equitable arguments regarding the enforceability of the PBGC Regulation—and this Court made clear that it would not consider any equitable challenges to the enforceability of the PBGC Regulation.  *See, e.g.*, Declaration of William D. Sullivan in Support of Multiemployer Pension Plans' Motion for Partial Summary Judgment ("Sullivan Declaration"), Ex. A (Transcript of June 12, 2024 Hearing) at 30:13-20 ("THE COURT: . . . I don't think the question in this case is an equitable question.  I think it's a legal question about how to make sense of the words Congress

wrote and if applicable the regulations . . . .  The Court isn't going to entertain an argument that basically asks the Court on principles of equity to . . . allow or disallow the claim.").[3]

## STANDARD

19.    As a general matter, "[s]ummary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law."  *Lozano v. New Jersey*, 9 F.4th 239, 243 (3d Cir. 2021).  In a challenge to agency action, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  Accordingly, while "[s]ummary judgment is the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the [Administrative Procedure Act] APA standard of review," "[t]he customary summary judgment standard does not apply."  *Bintz v. Fed. Emergency Mgmt. Agency*, 413 F. Supp. 3d 349, 360 (D. Del. 2019) (quotation marks omitted).  Rather, the more deferential standard under the APA applies, pursuant to which "courts may 'hold unlawful and set aside agency action, findings, and conclusions found to be' either 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' . . . ."  *See id.* (quoting 5 U.S.C. § 706(2)).

---

[3] Debtors explained that they are continuing to pursue a narrow equitable "estoppel argument" against one of the Funds based on assumptions in its SFA application.  *See id.* at 17:6-21; Objections, ¶¶ 40-42.  The resolution of that issue is outside the scope of this Motion.

**ARGUMENT**

I.    **The PBGC Regulation is Valid and Within the Authority Congress Granted to PBGC.**

    A.    *Section 1432(m)(1) Unambiguously Authorizes the PBGC Regulation.*

20.    When interpreting a statute, the "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).

21.    The statutory text here is unambiguous.  In ARPA, Congress gave PBGC the authority to "impose, by regulation . . . reasonable conditions on an eligible multiemployer plan that receives special financial assistance relating to . . . withdrawal liability."  29 U.S.C. § 1432(m)(1).

22.    As in the Supreme Court's *Morales* decision, here "the key phrase, obviously, is 'relating to.'"  504 U.S. at 383.  "The ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with[.]'"  *Id.* (quoting Black's Law Dictionary 1158 (5th ed. 1979)).  Obviously, a condition regarding how a multiemployer fund can treat SFA for the purpose of "determining unfunded vested benefits . . . for determining withdrawal liability," 29 C.F.R. § 4262.16(g)(2), has a "bearing" on or "concerns" withdrawal liability.

23.    Debtors have been completely unwilling to even acknowledge the "relating to . . . withdrawal liability," 29 U.S.C. § 1432(m)(1), language in the statute, much less what it means under Supreme Court precedent.  At literally every turn—on no less than four occasions—Debtors have deliberately ignored this key statutory language that forecloses their argument challenging the PBGC Regulation:

a. *First*, in their Objections, Debtors ignored Section 1432(m)(1).  *See generally* Objections.

b. *Second*, when Debtors finally acknowledged Section 1432(m)(1) in their Reply in Support of Their Objections to the Proofs of Claims Filed by the Central States Pension Fund ("Debtors' Central States Reply," Dkt. 2130), Debtors omitted the "relating to" language from their description of and argument regarding Section 1432(m)(1).  *See* Debtors' Central States Reply, ¶¶ 16-17 (claiming that "Section 1432(m)(1) grants PBGC the authority to impose 'reasonable conditions' on 'withdrawal liability,'" and, based on that characterization of the statute, that "PBGC's authority to establish reasonable conditions on withdrawal liability cannot apply to the calculation of UVBs, which are part and parcel of the withdrawal liability calculation formula").

c. *Third*, when the Funds pointed out that Debtors had purported to re-write ARPA, while ignoring the critical "relating to . . . withdrawal liability" language in Section 1432(m)(1), Debtors opted to forego filing a reply brief in support of their Objections.  *See* Dkt. 2224 ("Funds' Response"), ¶ 21.

d. *Fourth*, in response to the Funds' Motion to Compel Arbitration ("Motion to Compel," Dkt. 2180), which, as in Paragraph 22, *supra*, quoted the "relating to . . . withdrawal liability" language and the Supreme Court's decision in *Morales*, before drawing the conclusion that the PBGC Regulation "[o]bviously" relates to withdrawal liability under *Morales*, Debtors managed to, once again, excise any mention of the actual statutory language from their argument.  *See* Motion to Compel, ¶ 43; Dkt. 2438, ¶ 41 (accusing the Funds of simply making a conclusory

8

"[o]bviously" argument, while declining themselves to mention the statutory language or offer a substantive response).

24.    While refusing to acknowledge the existence of the "relating to . . . withdrawal liability" language in Section 1432(m)(1), *see supra* at ¶ 23, Debtors seek to convince this Court that "[t]he only reasonable interpretation of PBGC's authority is that it can apply reasonable conditions to an employer's withdrawal liability ***after*** it is calculated . . . ." Debtors' Central States Reply, ¶ 17.

25.    However, the Sixth Circuit has stated exactly the opposite of Debtors' position: "[ARPA] explicitly authorized the PBGC to impose conditions on ***calculating*** withdrawal liability for employers leaving funds that had accepted this assistance."  *Sofco*, 15 F.4th at 422 n.2 (emphasis added).  Debtors are well aware of *Sofco*, as it is both the first case cited in their Objections and the most frequently cited case in their Objections.  *See* Objections, ¶¶ 15-17, 46, 56.  Nevertheless, Debtors failed to disclose to this Court *Sofco*'s explanation that PBGC's authority under Section 1432(m)(1) included the ability to place conditions on the calculation of withdrawal liability, *see Sofco*, 15 F.4th at 422 n.2, as opposed to (as Debtors claim) limiting PBGC to placing conditions on withdrawal liability only after it is already calculated.

26.    Moreover, if PBGC could not promulgate any regulations that actually impact withdrawal liability, it is unclear what, if any, authority PBGC would have relating to withdrawal liability under Section 1432(m)(1).  But PBGC's authority to impose conditions relating to withdrawal liability must have some meaning, as it is "one of the most basic interpretive canons that we construe a statute so that no part of it will be inoperative or superfluous, void or insignificant."  *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 181–82 (3d Cir. 2023) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)) (quotation marks omitted).

27.     Even if Debtors' theory would leave PBGC with some limited authority relating to withdrawal liability, such a narrow interpretation would be inconsistent with Third Circuit precedent.  The Third Circuit has interpreted Congress' authorization to a federal agency to impose reasonable conditions on the use of money it awards as a "grant . . . of broad discretionary authority . . . ."  *See City of Philadelphia v. Attorney Gen. of United States*, 916 F.3d 276, 286 (3d Cir. 2019) (holding that Congress' authorization to the Attorney General to "impose reasonable conditions on grant awards" under 34 U.S.C. § 10446(e)(3) was a grant of "broad discretionary authority").

28.     ARPA and 34 U.S.C. § 10446(e)(3) are the only two provisions in the United States Code that use the phrase "impose reasonable conditions" to describe a federal agency's authority with respect to regulating the use of funds it awards.  "When . . . judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well."  *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998).

29.     Finally, Section 1432(m)(2) lists conditions PBGC "shall not impose . . . as a condition of . . . receipt of . . . special financial assistance" pursuant to its authority under ARPA.  *See* 29 U.S.C. § 1432(m)(2).  None of the prohibitions apply to the calculation of withdrawal liability.  It is a well-established "canon of statutory construction that the inclusion of certain provisions . . . in a list" should be read to exclude other items "not included in a list . . . ."  *United States v. McQuilkin*, 78 F.3d 105, 108 (3d Cir. 1996) ("*inclusio unius est exclusio alterius*").  This is yet another reason Debtors' position that PBGC cannot impose conditions relating to the calculation of withdrawal liability is inconsistent with ARPA.

B.  *The Purposes of MPPAA and ARPA Support the PBGC Regulation.*

30.    Given that the "statutory text" of Section 1432(m)(1) "is unambiguous," this Court's analysis can "begin[] . . . and end[]" with that statutory text.  *See BedRoc*, 541 U.S. at 183; *supra* at ¶¶ 20-21.  If, however, this Court goes beyond the statutory text, the purposes of MPPAA and ARPA also support the PBGC Regulation.  *See also Roth v. Norfalco LLC*, 651 F.3d 367, 375–76 (3d Cir. 2011) ("The plain wording of the [statutory] provision is of paramount importance, for this necessarily contains the best evidence of Congress' . . . intent.  We may also consider the structure and purpose of the statute as a whole, the larger regulatory scheme, and, where uncertainty persists, the statute's legislative history.").

31.    As previously mentioned, in enacting MPPAA, Congress agreed with the analysis of PBGC that "withdrawal liability would . . . discourage voluntary withdrawals and curtail the current incentives to flee the plan."  *Connolly*, 475 U.S. at 217; *supra* at ¶ 12.   *See also Wise v. Ruffin*, 914 F.2d 570, 577 (4th Cir. 1990) ("Consistent with its overall concern for adequate funding of multiemployer pension plans, Congress intended for MPPAA to eliminate employers' incentives to withdraw from multiemployer plans.").

32.    Discouraging withdrawals was such a central goal of MPPAA that Congress drafted the statute to apply retroactively to the "date on which PBGC had initially submitted its recommendations to Congress . . . to prevent employers from avoiding the adverse consequences of withdrawal liability by withdrawing from plans while such liability was being considered by Congress."  *See Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 723 (1984).  The Ninth Circuit held "that the retroactive application of the withdrawal liability provisions of the [MPPAA] violates the due process rights of employers," noting that "[t]he withdrawal liability imposed on the employers . . . may well be disproportionate to the specific needs of the . . . funds"

11

and that "the equities weight against retroactive application." *Shelter Framing Corp. v. Pension Ben. Guar. Corp.*, 705 F.2d 1502, 1514 (9th Cir. 1983). The Supreme Court unanimously reversed the Ninth Circuit's decision, holding that:

> *[I]t was eminently rational* for Congress to conclude that the purposes of the MPPAA could be more fully effectuated if its withdrawal liability provisions were applied retroactively. ***One of the primary problems Congress identified under ERISA was that the statute encouraged employer withdrawals from multiemployer plans***. And Congress was properly concerned that employers would have an even greater incentive to withdraw if they knew that legislation to impose more burdensome liability on withdrawing employers was being considered.

*R.A. Gray & Co.,* 467 U.S. at 730–31 (emphasis added).

33.     Consistent with the purpose of MPPAA, the PBGC Regulation is "intended to prevent SFA payments from leading to significant decreases in withdrawal liability assessments that would incentivize employers to withdraw from these plans." *Special Financial Assistance by PBGC*, 87 Fed. Reg. at 41,001. *See also Wise*, 914 F.2d at 578–79 (holding that even if a "plan had no UVBs" at "a single point in time," withdrawal liability would still be appropriate and consistent with the purpose of MPPAA because, otherwise, employers "would be inclined to withdraw . . . recogniz[ing] that the value of the UVBs calculated as zero for one year may not be zero the next").

34.     Debtors' own internal documents vividly demonstrate that the PBGC Regulation was necessary to prevent employer withdrawals. Immediately after ARPA was "signed into law," Debtors understood that plans would receive "a lump sum" of SFA that would "'forestall' insolvency until 2051, [but] not fix the plan[s]." Sullivan Declaration, Ex. B at YELLOW-

MEPP_0042746. Debtors still wanted to withdraw from "these plans" and "[t]ransition[] our employees . . . to a modern plan design." *Id.* However, while Debtors believed that SFA could "remove any unfunded liabilities of employers[,]" they presciently recognized that "PBGC will likely address this issue in an upcoming rulemaking[.]" *Id.* In light of the anticipated PBGC Regulation, Debtors indicated that they were "focused" on further Congressional "reforms" to allow Debtors to "[t]ransition . . . out of these plans" by "[e]liminating any remaining withdrawal liability . . . ." *Id.* No such changes were ever adopted.

35.    Avoiding the creation of incentives for employers to withdraw is also consistent with the purpose of ARPA, which Debtors' have already conceded was "To Solve [Multiemployer Pension Plan]'s Problems." Objections at 14. There is no dispute that incentivizing withdrawals would cause, not solve, problems for multiemployer plans. Indeed, Debtors' own internal documents show that, working through a trade organization, they encouraged PBGC not to include other provisions in the PBGC Regulation precisely because they could "lead to more employers exiting these plans." Sullivan Declaration, Ex. C at YELLOW-MEPP_0042889.

36.    Finally, Section 1432(l) places "[r]estrictions on the use of [SFA]," requiring that SFA "be segregated from other plan assets," invested only "in investment-grade bonds or other investments as permitted by [PBGC]," and used only "to make benefit payments and plan expenses." 29 U.S.C. § 1432(l). PBGC reasonably concluded that this provision "reflect[s] the purpose of SFA," which is "to pay all benefits due during the SFA coverage period" rather than to "reduc[e] sources of plan income, such as employer contributions or withdrawal liability . . . ." *Special Financial Assistance by PBGC*, 87 Fed. Reg. at 40,988.

*C. Debtors' Reliance on ARPA's Legislative History is Misplaced and Misleading.*

37.     "We look to the text of a statute to determine congressional intent, and look to legislative history only if the text is ambiguous. Where statutory language is plain and unambiguous, the sole function of the court is to enforce it according to its terms." *In re Mehta*, 310 F.3d 308, 311 (3d Cir. 2002) (cleaned up).  In determining whether there is an ambiguity courts may look to "canons of construction" and only "resort to legislative history" if "the meaning of a statute is [not] discernible in light of canons of construction." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001).  Given that there is no ambiguity in PBGC's authority under ARPA, this Court need not consider ARPA's legislative history.

38.     Debtors' position, as disclosed through their purported experts, *see infra* at Section I(E), appears to now be that because Congress considered incorporating "a form of phase in of the SFA assets" in the text of APRA that was ultimately removed, Congress must have intended to foreclose PBGC from implementing any phase in.[4]

39.     Even if this Court considers ARPA's legislative history, Debtors' position is misguided for at least four reasons—and, if anything, the legislative history further *supports* PBGC's authority to issue the PBGC Regulation.

40.     *First*, as a general matter, "failed legislative proposals are a particularly dangerous ground" on which to infer Congressional intent.  *See United States v. Craft*, 535 U.S. 274, 287 (2002) (cleaned up).  Legislative proposals may fail for a variety of reasons, including procedural reasons that "provide no support for the hypothesis that both Houses of Congress . . . endorsed [a]

---

[4] As discussed below, the Funds do not believe it is proper for this Court to consider expert opinions with respect to the PBGC Regulation.  *See infra* at Section I(E).  Nevertheless, given that this particular "opinion" is simply legal argument, the Funds address it in anticipation that Debtors will raise it in briefing regardless of whether any expert reports are before this Court.

position." *United States v. Est. of Romani*, 523 U.S. 517, 533–34 (1998) ("The earlier proposal may have failed because its wide-ranging subject matter was beyond the House Ways and Means Committee's jurisdiction.").

41.     *Second*, as Debtors are well aware from their own contemporaneous monitoring of the legislative process, the phase in provision "had support from both Democrats and Republicans" and was, in fact, only removed for procedural reasons through the budget reconciliation process. *See* Sullivan Declaration, Ex. D at YELLOW-MEPP_0042739 (noting that the procedural issue was "the Byrd Rule"); Richard Kogan and David Reich, *Introduction to Budget 'Reconciliation'*, Center on Budget and Policy Priorities (May 6, 2022) ("Congress sometimes uses a special legislative process called 'reconciliation' to quickly advance high-priority fiscal legislation. . . . The Byrd Rule generally treats as extraneous any provision of a reconciliation measure that doesn't change the level of spending or revenues, or where the change in spending or revenues is 'merely incidental' to the provision's non-budgetary effects. . . . Deciding whether a provision violates the Byrd Rule is often a judgment call that is traditionally made by the Senate parliamentarian.").[5]

42.     *Third*, given that Congress was clearly aware of the possibility of a phase in, if Congress wanted to prohibit PBGC from implementing a phase in, it easily could have dictated that SFA be counted for withdrawal liability purposes or added a phase in to the list of conditions PBGC could not impose. *See* 29 U.S.C. § 1432(m)(2) (listing conditions PBGC "shall not impose . . . as a condition of . . . receipt of . . . special financial assistance" pursuant to its authority under ARPA). *See also supra* at ¶ 29. Congress took no such action to curtail PBGC's authority.

43.     *Fourth*, the draft phase in provision that Congress removed was different than the phase in provision adopted by PBGC. The version of ARPA that was initially passed by the U.S.

---

[5] https://www.cbpp.org/research/introduction-to-budget-reconciliation

House of Representatives provided that "[a]n employer's withdrawal liability for purposes of this title shall be calculated without taking into account special financial assistance received under this section **until the plan year beginning 15 calendar years** after the effective date of the special financial assistance." *See* H.R. 1319, 117th Cong., § 9704(l) (Feb. 24, 2021) (emphasis added). By contrast, the PBGC Regulation takes a more moderate approach, in which SFA is partially phased in "each year over the projected life of the SFA assets," *Special Financial Assistance by PBGC—Withdrawal Liability Condition Exception*, 88 Fed. Reg. 4,900, 4,901 (Jan. 26, 2023), rather than disregarded in full for 15 years.

### D.  *The Major Questions Doctrine Does Not Apply.*

44.    Given that Section 1432(m)(1) is unambiguous, Debtors' attempt to rely on the major questions doctrine fails at the threshold.  *See* Debtors' Central States Reply, ¶ 18 (citing *W. Virginia v. EPA*, 597 U.S. 697, 735 (2022)).  The Supreme Court has held that the major questions doctrine can only apply if there is "ambiguous statutory text," which there is not here.  *See W. Virginia*, 597 U.S. at 735 ("Thus, in certain extraordinary cases, both separation of powers principles and a practical understanding of legislative intent make us 'reluctant to read into **ambiguous statutory text**' the delegation claimed to be lurking there.") (emphasis added).

45.    In any event, the issue of what conditions PBGC can impose—pursuant to an express grant of authority from Congress—on SFA it awards to multiemployer plans which voluntarily accepted SFA, is hardly a novel "assertion[] of agency power over daily life across America" to which the major questions doctrine could apply.  *See All. for Fair Bd. Recruitment v. Sec. & Exch. Comm'n*, 85 F.4th 226, 257 (5th Cir. 2023) (holding that the major questions doctrine was not implicated by a rule about disclosures for companies that "voluntarily list on Nasdaq").  Indeed, the issue bears no similarity to the examples of "major questions" the Supreme Court

identified, including:  (i) whether the Food and Drug Administration could use "its authority over 'drugs' and 'devices' . . . to regulate, and even ban tobacco products[;]" (ii) whether the Centers for Disease Control and Prevention could use its power "'to prevent the spread of' disease" to "institute a nationwide eviction moratorium in response to the COVID-19 pandemic[;]" and (iii) whether the Environmental Protection Agency "could construe the term 'air pollutant'" to give it the power to regulate "greenhouse gas[]" emissions from "millions of small sources, such as hotels and office buildings, that had never been subjected to such requirements." *W. Virginia*, 597 U.S at 721-22.

### E.  *Debtors Cannot Use a Post Hoc Expert Report to Challenge the PBGC Regulation.*

46.     "In a challenge to administrative action under the APA, the administrative record cannot normally be supplemented."  *NVE, Inc. v. Dep't of Health & Hum. Servs.*, 436 F.3d 182, 189 (3d Cir. 2006) (citing *Camp*, 411 U.S. at 142).  Accordingly, the Third Circuit has rejected attempts "to supplement the administrative record by offering . . . expert testimony."  *NVE*, 436 F.3d at 185.

47.     Nevertheless, Debtors retained purported "experts" to challenge the validity of the PBGC Regulation.  While these so-called experts' wide ranging, speculative, and unsupported views—including on such topics as the import of ARPA's legislative history—would not be admissible under Federal Rule of Evidence 702 in any federal court proceeding, they cannot be considered here for the even more fundamental reason that they are an improper attempt to supplement the administrative record that was before PBGC when it issued the PBGC Regulation. *See NVE*, 436 F.3d at 185; *supra* at ¶ 46.

48.     Notably, Debtors had ample opportunity to submit comments on or otherwise attempt to influence both ARPA and the PBGC Regulation, which they were closely monitoring.

*See supra* at ¶ 41.  Indeed, when asked whether, "if [Debtors] had wanted to work with PBGC on what the regulation should say about recognizing [SFA] . . . is there any reason why you could not have done that," Debtors' CEO not only identified no such reason but explained that "it's not uncommon at all for even the White House to reach out to a company like ours."  Sullivan Declaration, Ex. E (30(b)(6) Deposition Transcript of Darren Hawkins) at 132:13-133:7.

       *F.  The PBGC Regulation is Not Arbitrary or Capricious.*

    49.    Debtors' Objections did not challenge the PBGC Regulation under the APA as "arbitrary, capricious, [or] an abuse of discretion . . . ."  5 U.S.C. § 706(2)(A).  Nevertheless, for the sake of completeness, the Funds note that there is clearly no basis to invalidate the PBGC Regulation as arbitrary and capricious.

    50.    The Supreme Court has explained that:

> The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained. Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency. A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.

*Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

    51.    The PBGC Regulation is "within a zone of reasonableness" and PBGC has "reasonably explained the decision."  *Id.*  For example, PBGC explained that, through two rounds of comments, "[m]ost of the commenters were concerned that not including a condition to exclude SFA from plan assets for purposes of calculating withdrawal liability will incentivize employers to withdraw after the plan receives SFA."  *Special Financial Assistance by PBGC*, 87 Fed. Reg. at 40,996.  *See also Special Financial Assistance by PBGC—Withdrawal Liability Condition Exception*, 88 Fed. Reg. at 4,902 ("[C]ommenters generally supported the added withdrawal liability condition under § 4262.16(g)(2) or said that the phased recognition of SFA funds as a plan

asset was an improvement over the interim final rule that required a plan that received SFA to immediately recognize the SFA funds as a plan asset.").

52.   PBGC also explained "that requiring phased recognition of SFA as a plan asset is a reasonable condition under section 4262(m) of ERISA because SFA does not result from employer contributions, but is a transfer of taxpayer funds to statutorily eligible financially distressed plans for the purpose of enabling these plans to pay benefits and expenses" and that, "[w]ithout the condition, the payment of SFA could instead result in indirect transfers of SFA to withdrawing employers from plans by reducing their withdrawal liability." *Special Financial Assistance by PBGC—Withdrawal Liability Condition Exception*, 88 Fed. Reg. at 4,902.

53.   These reasoned explanations are more than sufficient under the APA's "deferential" standard of review and "[a] court may not substitute its own policy judgment for that of the agency." *Prometheus Radio*, 592 U.S. at 423.

## CONCLUSION

For the foregoing reasons, this Court should grant the Funds' Motion for Partial Summary Judgment and reject Debtors' challenge to the validity of the PBGC Regulation.

Date:   June 28, 2024            SULLIVAN · HAZELTINE · ALLINSON LLC
        Wilmington, Delaware

                                  */s/ William D. Sullivan*
                                  William D. Sullivan (No. 2820)
                                  William A. Hazeltine (No. 3294)
                                  919 North Market Street, Suite 420
                                  Wilmington, DE 19801
                                  Tel: (302) 428-8191
                                  (Fax: (302) 428-8195
                                  Email: bsullivan@sha-llc.com
                                          whazeltine@sha-llc.com

                                  and

GROOM LAW GROUP, CHARTERED
Edward J. Meehan (*pro hac vice*)
Samuel I. Levin (*pro hac vice*)
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-5811
Tel: (202) 857-0620
Fax: (202) 659-4503
Email: emeehan@groom.com
        slevin@groom.com

*Special Counsel for the Funds*