## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| YELLOW CORPORATION, et al., | ) | |
| | ) | Case No. 23-11069 (CTG) |
| Debtors. | ) | |

## DECLARATION OF WILLIAM D. SULLIVAN IN SUPPORT OF MULTIEMPLOYER PENSION PLANS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I, William D. Sullivan, pursuant to 28 U.S.C. § 1746(2), declare the following under penalty of perjury:

1.      I am an attorney and partner with Sullivan Hazeltine Allinson LLC, counsel for the Funds[1] in the above-captioned action.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the transcript of the June 12, 2024 hearing held before the Court in the above-captioned action.

3.      Attached hereto as **Exhibit B** is a true and correct copy of documents produced by Debtors during discovery in the above-captioned action that are Bates stamped YELLOW-MEPP_0042745 – YELLOW-MEPP_0042747.

4.      Attached hereto as **Exhibit C** is a true and correct copy of a document produced by Debtors during discovery in the above-captioned action that is Bates stamped YELLOW-MEPP_0042888 – YELLOW-MEPP_0042893.

---

[1] The "Funds" are ten multiemployer pension plans:  New York State Teamsters Conference Pension and Retirement Fund, Road Carriers Local 707 Pension Fund, Teamsters Local 641 Pension Plan, Western Pennsylvania Teamsters and Employers Pension Fund, Management Labor Pension Fund Local 1730, International Association of Machinists Motor City Pension Fund, Mid-Jersey Trucking Industry & Teamsters Local 701 Pension and Annuity Fund, Teamsters Local 617 Pension Fund, Trucking Employees of North Jersey Pension Fund, and Freight Drivers and Helpers 557 Pension Fund.

5.      Attached hereto as **Exhibit D** is a true and correct copy of documents produced by Debtors during discovery in the above-captioned action that are Bates stamped YELLOW-MEPP_0042738 – YELLOW-MEPP_0042739.

6.      Attached hereto as **Exhibit E** is a true and correct excerpted copy of the deposition transcript of Darren Hawkins taken on June 7, 2024.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 28, 2024.

*/s/ William D. Sullivan*
William D. Sullivan

# EXHIBIT A

```
1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
2

3    IN RE:                        .   Chapter 11
                                   .   Case No. 23-11069 (CTG)
4    YELLOW CORPORATION,           .
     et al.,                       .   (Jointly Administered)
5                                  .
                                   .
6                                  .   Courtroom No. 7
                                   .   824 North Market Street
7            Debtors.              .   Wilmington, Delaware 19801
                                   .
8    . . . . . . . . . . . . . .   .   Wednesday, June 12, 2024
                                       12:00 p.m.
9
                        TRANSCRIPT OF HEARING
10            BEFORE THE HONORABLE CRAIG T. GOLDBLATT
                  UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For the Debtors:          Allyson Smith, Esquire
13                             KIRKLAND & ELLIS LLP
                               KIRKLAND & ELLIS INTERNATIONAL LLP
14                             601 Lexington Avenue
                               New York, New York 10022
15
     For MFN Partners:         Eric Winston, Esquire
16                             QUINN EMANUEL URQUHART
                                  & SULLIVAN LLP
17                             865 S. Figueroa Street, 10th Floor
                               Los Angeles, California 90017
18

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Alyce Doody, ECRO

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

APPEARANCES (CONTINUED):

For Central States:          Andrew Herink, Esquire
                             CENTRAL STATES FUNDS
                             8647 W. Higgins Road
                             Chicago, Illinois 60631

For the MEPP Pension
Funds:                       Edward Meehan, Esquire
                             GROOM LAW GROUP
                             1701 Pennsylvania Avenue, N.W.
                             Washington, DC 20006

3

1                                 <u>INDEX</u>

2   <u>MOTIONS:</u>                                              <u>PAGE</u>

3   Agenda
    Item 7: MFN Partners, LP, MFN Partners GP, LLC,          5
4           MFN Partners Management, LP, and MFN
            Partners Management, LLC Motion to Quash
5           Subpoenas to Appear at a Deposition
            [Filed: 5/31/24] (Docket No. 3565)
6
    Agenda
7   Item 8: Letter to Judge Goldblatt Regarding
            Discovery Disputes relating to MFN and
8           It's Affiliates [Filed: 5/31/24]
            (Docket No 3563)
9
            Court's Ruling:                                  30
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commenced at 12:00 p.m.)

2            THE COURT:  Good morning, all -- or good

3    afternoon, or maybe good exactly noon.  This is Judge

4    Goldblatt.  We are on the record in In Re Yellow Corporation,

5    which is Case No. 23-11069.

6            We are proceeding by Zoom because I believe all we

7    have is a discovery dispute and perhaps an update on status,

8    but why don't I stop talking and pass the virtual podium to

9    Ms. Smith to let us know what is on the agenda for this

10    hearing.  Ms. Smith.

11            MS. SMITH:  Good afternoon, Your Honor.  Allyson

12    Smith, Kirkland & Ellis, for the debtors.

13            You are correct that the only item on today's

14    agenda is the discovery dispute which we do not believe the

15    debtors are implicated in, but I am happy to give a very

16    quick update as to the other two matters that are not going

17    forward today.

18            The Realterm Landlord matters we do believe we

19    have resolved those and we are working with parties to

20    finalize the terms that we expect to submit in the very near,

21    near term.

22            The second item is, what we refer to as, the email

23    destruction motion.  That has been adjourned until later this

24    month.  I also believe that we have a means to address what,

25    otherwise, would resolve all of the objectors concerns, but

1  we also have a (indiscernible) to confirm that.

2          THE COURT:  Okay.  Very well. That is very

3  helpful. I appreciate that.

4          I guess I am happy, unless there is anything else,

5  to hear from the parties with respect to the discovery

6  matter.

7          Mr. Winston.

8          MR. WINSTON:  Good afternoon, Your Honor.  Eric

9  Winston, Quinn Emanuel, on behalf of MFN Partners.

10          Your Honor, there are two dueling discovery

11  matters. One is our motion to quash depositions and then the

12  other is Pension Funds motion to compel production of

13  documents, though they also raised in their letter the

14  deposition.  So, in many ways they are truly dueling.

15          I thought it might make sense, unless Your Honor

16  has any views differently, that I explain what we believe to

17  be the issues and our arguments, not repeating what is in the

18  papers, and then presumably the Fund will do the same as

19  well, then however this goes this goes.  I thought that might

20  make sense since this is really a mirror image of discovery

21  papers.

22          THE COURT:  Mr. Meehan, any objection to

23  proceeding in that fashion?

24          MR. MEEHAN:  No objection, Your Honor.

25          THE COURT:  Very well then.  Mr. Winston, you can

1   proceed.

2           MR. WINSTON:   Thank you, Your Honor.

3           We tried to do this in our response letter to

4   their letter, the one filed on June 10th, Docket 3626, that

5   there are really two substantive matters at issue.  The first

6   was they called document requests one and two, and also, they

7   seek depositions on it, relates to prepetition internal

8   valuations, projections, analysis and the like that MFN had

9   relating both to pension withdrawal liability as well as any

10  projected distributions that might occur in a restructuring

11  whether in court or out of court.  They seek both documents

12  and depositions for that.

13          As laid out in the papers, and certainly the Funds

14  counsel knows this has been out position for months, is we

15  believe all that is irrelevant. It's irrelevant to what is

16  actually this proceeding, which is a claim objection by the

17  debtors against the Funds. And whatever MFN has -- and I will

18  get to the proprietary nature in a second, but whatever MFN

19  actually has cannot, under any circumstance, either approve

20  or disprove the allowance of these claims.  It is truly

21  irrelevant.

22          They served these document subpoenas, which

23  started this, even before MFN had joined the objections.

24  They were in response to the debtors objections. We said this

25  all along, how could it possibly make a difference whatever

1  or MFN or for that matter any other creditor or shareholder

2  ever think internally.

3         One of their responses has been, well, you might

4  have had communications with the debtors and we want to have

5  notes to those communications. I learned earlier this week

6  that the debtors did, in fact, produce to the Funds any

7  communications on these topics to the Funds actually

8  prepetition and post-petition.  This dispute is solely about

9  prepetition.  This dispute is totally about prepetition.

10 From what I understand is the universe of documents, like

11 less then a handful, if any, that is consistent with what we

12 thought which is there isn't going to be anything, but it

13 doesn't change the view by everybody, at least as far as I

14 know, objecting to the Funds claims it literally makes no

15 difference. It cannot make a difference to what is allowed or

16 not, what MFN ever thought at all.

17        We repeatedly asked for authorities to support

18 their views and even in the letter and the response they have

19 identified none.  Part of the reason for that is its pretty

20 universal at this stage that bankruptcy courts simply do not

21 allow discovery into opposing parties internal views of the

22 value in almost every circumstance. Its certainly a claims

23 objection can fall within that category.  We cited cases, we

24 cited Your Honor's earlier ruling regarding lease assumption

25 issues.  It's the same analysis; its simply irrelevant and

1   its obviously very prejudicial the parties to be forced to

2   reveal what they think.

3           The second issue, I think, is even more bizarre

4   and that is they have sought discovery of whether MFN relied

5   upon statements by the Funds prepetition in acquiring the

6   stock of Yellow as an argument against the debtors reliance

7   on whatever statements were made by the Funds prepetition

8   that supports their claim of objections.  When we heard this,

9   we said, again, whatever MFN might have relied upon is truly

10  irrelevant to whether the claims should be allowed or not.

11  The debtors reliance, at best, is at issue, but if you have

12  any concerns we are not going to testify to any of this

13  stuff.

14          They seem to accept that for documents because

15  they need proposed stipulations and after a little bit of

16  modifications, which they accepted, we have a pre-stipulation

17  that confirms MFN at the trial in August or September is

18  never going to introduce any evidence and the debtors are not

19  going to introduce any evidence of MFN relying on its

20  irrelevant, which makes sense, its an easy give. If there was

21  any concerns about that we put that to rest.  That actually

22  did resolve the document requests that they had sought.

23          Thus, it was very surprising to us they still want

24  to take a deposition.  I cannot understand what is the

25  purpose of it at this stage when whatever they would happen

1  to get in a deposition, we would never be able to

2  (indiscernible) anyway.  So, I promised not to repeat what is

3  in the papers, so I am hoping I am honoring that promise, but

4  that is the sum and substance of the argument.  There is

5  simply no possible way whatever they are seeking will ever

6  make a difference to whether the claims should be allowed or

7  not.

8           Unless Your Honor has any questions, I rest.

9           THE COURT:  No, I don't. Thank you, Mr. Winston.

10          I am happy to hear from Mr. Meehan or whomever.  I

11  presumed it was you because you have argued before me on much

12  of these matters, but I don't mean to slight anyone else who

13  intends to make the argument on your side.

14          MR. MEEHAN:  Your Honor, this is Mr. Meehan.

15  Actually, Mr. Herink is going to lead the argument from

16  Central States and the MEPPs that I represent.

17          THE COURT:  Got it.  My apologies, Mr. Herink.

18  Let me give you the opportunity to be heard and apologies.

19          MR. HERINK:  Good morning, Your Honor.  Thank you

20  very much.  This is my first time before you; although, I

21  have been more of a, you know, long time listener first time

22  caller.

23          THE COURT:  I don't have quite that type of

24  audience reach, but I appreciate it.

25          MR. HERINK:  I am going to go through very briefly

1    what we consider our argument to be and then in the process

2    of that hopefully respond to a few things that Mr. Winston

3    said.

4            So, I think one thing that MFN and Central States

5    agree on is there are only two bucket categories that, or

6    whatever you want to say, are discovery requested issues

7    here.  Let me lay our what those steps are.

8            The first is document requests one and two,

9    limited in the ways we noticed in our May 31st letter to the

10   Court, and deposition topics one and two. Those are both in

11   the same ballpark stating the same thing.  Specifically, they

12   seek documents and testimony regarding prepetition analysis

13   and predications about the withdrawal liability potentially

14   owed by the debtors and prepetition analysis and predications

15   regarding any potential distributions to equity holders like

16   MFN.

17           This first set of documents is relevant for two

18   reasons.  First, Mr. Winston focused on internal MFN

19   documents.  We certainly are seeking that as part of what we

20   are seeking.  Those internal documents and other documents

21   that don't involve debtors, analysis and predictions that

22   were not sent to or received by debtors, but instead were

23   just internal MFN analysis and predictions are analysis and

24   predictions shared provided by others to MFN.  These are

25   relevant to debtors arguments including the internal

1   analysis.

2            THE COURT:  So, Mr. Herink, can I stop you there

3   because I saw the discussion in the papers about equitable

4   arguments and I confess I was a little puzzled by it.  So,

5   let me just share with you my overarching view of what this

6   case is about as I see it and I don't know if that will

7   obviate the concern.

8            I do see that the debtor -- so, look, as I

9   understand the dispute the statute imposes withdraw

10  liability, right, for an employer's, you know, allocable

11  share of unfunded pension -- I'm sorry, of vested benefits,

12  the unfunded vested benefits, right.  I understand there is a

13  question that I have got to resolve about whether in light of

14  the American Rescue Plan Act there are or are not unfunded

15  vested benefits.

16           The debtors, you know, do sort of make, at some

17  level, the argument in which they say the Funds would be

18  compensated twice for the same injury if they both get the

19  congressional grant and they get withdraw liability.  Now, at

20  least as I see that issue if its relevant at all, and I'm not

21  sure it is, its relevant only to the question of

22  congressional intent. I have got a statutory question.  I am

23  not here to decide who I think is -- who if I were king, I

24  would decide should get the money.

25           I've got a statutory question, Congress has

1  written words, I've got to read those words and to the

2  extent, under applicable law, I should take account of the

3  applicable regulations then I will address those.  But it is

4  not about what I think is too much or what I think is fair.

5  So, as I -- I am not sure what you are describing as the

6  equitable argument that the debtor makes is relevant at all,

7  but if it is its relevant only to triangulate at what

8  Congress would have intended and that is all.

9           So, assume for a moment that is how I view my job

10  and the question that I have got to decide. If that is the

11  case what is then the relevance of this first category of

12  materials that you are seeking from MFN?

13           MR. HERINK:  Yes.  I understand your point to be

14  that there isn't really an as applied equitable argument that

15  debtors could make. There can be some type of, I guess,

16  equitable argument regarding what Congress intended.  That is

17  aligned, I think, with our view of the case, but

18  respectfully, Your Honor, this issue will probably be

19  appealed up to decision makers of the other decision makers,

20  is my first point, that may view the issue differently and

21  may give credence to debtors equitable arguments.

22           Secondly, debtors are going to make those

23  equitable arguments in their papers and we want to have all

24  the ammunition and facts that we need in order to reply to

25  those regardless of whether Your Honor is going to take those

1  very seriously or not.

2          THE COURT:  Okay.  So, look, I hear you.  My view

3  of the world is every case has one Judge at a time and while

4  that case is before that Judge that Judge's job is to call

5  balls and strikes to the best of their lights based on what

6  is in front of them.  So, its true someone might disagree.

7  If they disagree, I will get reversed and I will deal with

8  it. It presumably will come back or it won't come back.

9  While it's in front of me I think my charge is to do the best

10 I can by my lights.

11         Okay.  I want to give you the chance to make your

12 argument, but I also want to be clear about how I'm thinking

13 about things to the extent that is helpful to the parties.

14         MR. HERINK:  It did help, Your Honor.  Thank you.

15         So, continuing on with this first set of

16 documents.  You know, even internal MFN analysis,

17 (indiscernible), we contend would be relevant because the

18 debtors are claiming that from an equitable perspective

19 Central States recovering the full amount of its withdraw

20 liability, or I guess having a claim for the full amount of

21 its withdraw liability, would be inequitable to equity

22 holders like MFN because it would result in them not

23 recovering anything.

24         So, we think, again, setting aside the strength of

25 that argument, whether Your Honor agrees with it, we think

1    that in order to clearly and fairly respond to that argument

2    we need to know what MFN's expectations were and their

3    knowledge; you know, what information they had prior to the

4    petition date filed because if MFN clearly expected to get

5    nothing in this case, we believe that is relevant to the

6    equities.  It's a different argument if MFN went into this

7    case with eyes closed not knowing, you know, that they could

8    potentially recover nothing versus eyes wide open knowing

9    that it was a long shot for them to ever recover anything.

10            I also want to stress that these internal MFN

11    analysis aren't the only thing we seek.  We also are seeking

12    analysis and predications that involve debtors.  So, if MFN

13    sent, you know, a prediction or analysis to debtors, or the

14    representatives or vice versa, debtor sent one to MFN, we

15    think that is relevant.

16            THE COURT:  Mr. Herink, Mr. Winston represented

17    earlier that you served that request on the debtors and that

18    the debtors responded by saying they will provide responsive

19    documents, is that correct?

20            MR. HERINK:  We did serve a request for these

21    documents on debtors.  They produced, I believe, a small

22    subset of what we requested, but we are requesting more in

23    line with our original request.  So, they have not yet

24    responded as to whether they are going to produce those

25    additional documents.

1       THE COURT:  Help me with this, explain to me why -

2   - let's say the debtors create a piece of paper that -- just

3   explain to me the theory of the relevance. Imagine there was

4   communication -- and I am not -- to the extent they produced

5   it I am not encouraging them to revisit it, but I am

6   struggling with the theory of relevance in the first instance

7   of communication between the debtor and its equity holder as

8   it relates to what these withdraw liabilities are.  Explain

9   to me how that effects what the unfunded vested benefits look

10  like.

11      MR. HERINK:  I don't believe it effects what the

12  unfunded vested benefits look like.  Let me answer that

13  question straightforwardly.

14      THE COURT:  Okay.

15      MR. HERINK:  I think the relevance is something

16  else.  Specifically, debtors are making an equitable argument

17  that we can't recover, you know, the full amount of withdraw

18  liability. The law is clear that a party seeking to have

19  equity applied must have fell back equitably.

20      THE COURT:  I understand that, but if I am --

21  look, I am going to be evenhanded here and if I am going to

22  entertain the argument from the debtor then you are going to

23  have a chance to respond to it.  If the argument to which you

24  are seeking discovery to respond to is one that is dead in

25  the water, then I am not going to -- so, you know, I am going

1  to manage the litigation so that we direct it towards what

2  actually matters, not, you know, a go down rabbit holes.

3          So, look, the debtor is on. I am happy to hear

4  from them, but the notion that in resolving this claims

5  dispute I should be doing anything other then answering the

6  statutory question like doesn't resonate with me. The notion

7  that like I as a matter of moral philosophy should decide how

8  much money should be given on the one hand to the Funds and

9  on the other hand to the debtors estate based on my abstract

10 vision of justice isn't the job that I have.

11         I am applying the statute in light of the facts.

12 I am not saying that there is no role. Look, again, as I said

13 before, on the question of -- if the debtor wants to make an

14 argument about congressional intent, you know, I am not

15 cutting that off at the pass; although, I think what really

16 matters is what Congress meant in 1980 when it passed the

17 Multi-Employer Pension Act Amendments.

18         In any event, I don't see the notion that this is

19 MFN's expectation of the debtors expectation about what

20 distribution to its various constituents would be as bearing

21 on this question.  Look, if the debtor wants to say, no, we

22 have got a real argument, we intend to make it and here is

23 what it is they should jump in because I am generally

24 inclined not to give you this discovery, but what is good for

25 the goose is good for the gander.  I am going to be even

1   handed about this.

2           So, Ms. Smith, let me hear from you.  I am

3   suggesting if the Funds suggestion of the debtors intent is

4   correct, I am talking about narrowing what is at issue. Would

5   I be wrong to do it that way.

6           MS. SMITH:  Thank you, Your Honor.

7           The debtors (indiscernible) going forward with a

8   legal unfairness argument.  As you already acknowledged, when

9   the Funds include the special funding assistance they did so

10  because they made the statement that they expected to receive

11  zero on account of withdraw liability. So, I think

12  (indiscernible) argument is more of an estoppel argument.  I

13  do not disagree with Your Honor.

14          THE COURT:  So, by estoppel argument I want to

15  understand sort of what you -- so, it's based on their

16  statements, and they made statements to Congress to whom?

17          MS. SMITH:  I believe it was to PBGC and other

18  governmental authorities when they were applying for the

19  bailout.  You know, in our view that's double dipping, but

20  our arguments and our position is not, as I said, an unfair -

21  -

22          THE COURT:  Okay.  So, Mr. Herink, I hear your

23  point. I don't think -- well, let me -- my initial reaction

24  is I think that that is -- that that point is different from

25  the abstract one that you are suggesting which is it's just

1  too much money and, therefore, unfair.  So, I don't really

2  see the discovery you are seeking as necessary to respond in

3  fairness to that argument, but let me give you a chance to

4  explain why I am wrong.

5          MR. HERINK:  If you don't mind, Your Honor, and

6  you can totally say this is out of line, if debtors could

7  confirm on the record that their only equitable argument is

8  an equitable estoppel argument that may be useful in helping

9  to resolve all of this.

10          THE COURT:  Ms. Smith.

11          MS. SMITH:  Again, I don't want to speak too much

12  out of turn and I don't necessarily want to give away the

13  legal strategy and argument that we continue to work on, but

14  I don't want to limit the --

15          THE COURT:  All right.  Well, that is -- look, the

16  point is not to put on the spot or trick you.  That said, at

17  the end of the day if I rule that you can't have this

18  discovery, I am going to be evenhanded in my application of

19  the principle.  So, if you start hearing -- if I deny you

20  this discovery and then we get to trial and then you start

21  hearing from them lines of argument as to which you think

22  that you were denied a fair opportunity to respond because of

23  my ruling you will be entitled to be heard on that and maybe

24  I shut down an argument that they would have intended to

25  make.

1        To me, based on what I understand about the case
2   there isn't anything that I see as relevant that the debtor
3   could be arguing as to which what you are seeking would be
4   responsive.  So, at the moment, again I will hear you out, I
5   am inclined to grant the motion to quash and to deny the
6   motion to compel as it relates to this category of materials
7   and carry that thread the rest of the way through the fabric.

8        So, if it means that you have an argument at trial
9   that I should not hear some argument because I have deprived
10  you of your chance to respond to it you will have a chance to
11  say that when we get there.

12        MR. HERINK:  Thank you, Your Honor.  Just on this
13  first category of documents I understand we are setting aside
14  the second category which is deposition testimony on topics
15  three and four, and we will get to that in a minute.  Let me
16  take one chance to perhaps change your mind here.

17        THE COURT:  Please, that is what we are here for.

18        MR. HERINK:  Yes.  So, an equitable estoppel
19  argument is still an equitable argument. If debtors are able
20  to establish every element of their equitable estoppel
21  argument, their prima facie element, it would still be
22  relevant whether debtors are acting equitably because our
23  view would be debtors cannot assert an equitable argument
24  even if they can establish all the elements of it if they
25  themselves are not acting equitably.

1    THE COURT:  So, tell me what they are doing -- on

2  your theory, what are you going to find that establishes that

3  their conduct is inequitable.

4    MR. HERINK:  Yes.  Our theory, although I'm not

5  going to say we're wedded to it, but it's something that we

6  believe may very well be the case is that debtors, at the

7  behest of MFN, their primary shareholder, the shareholder

8  that has control of the company -- because keep in mind that

9  treasury doesn't vote.  Treasury is in a voting trust and

10  they vote proportion with everybody else.

11    So, its important to keep in mind that in effect

12  MFN controls the debtors.  Our belief is that MFN and the

13  debtors are working together, we are not sure who came up

14  with this idea, but we believe MFN and the debtors are

15  working together to take a very aggressive scorched earth

16  litigation approach to the Funds claims because succeeding on

17  that and knocking out Central States claims and the claims of

18  the other Funds, which are also substantial, is, as a

19  practical matter, and the equity committee pointed this out

20  in their exclusivity filing, that as a practical matter it's

21  the only way that equity will be in the money here.

22    THE COURT:  Mr. Herink, I hear you and I

23  understand your point. I don't think that that bears on the

24  claims allowance dispute that is in front of me that the

25  claims allowance dispute isn't about their motivation. This

1    is a balls and strikes question about applying the law of the

2    facts.  Their motivation, if you are right that they are

3    improperly, you know, serving the interest of equity in a way

4    that is harmful to other constituencies that bears on the

5    exclusivity motion. You're right, its part of the argument

6    that the creditors committee made, but I have decided that.

7         If you were to file a motion to appoint a Chapter

8    11 Trustee and wanted this discovery, I am not encouraging

9    that, but I'm not saying it's irrelevant to any issue that

10   might ever be in front of me, but as to the issue that is, in

11   fact, in front of me I don't think its relevant.  So, I hear

12   you.  Again, I don't want to cut you short, but I don't see

13   how the points you are making bear on the allowance or the

14   disallowance of the claim.

15        MR. HERINK:  I think I see which way the winds are

16   blowing, Your Honor, but let me perhaps --

17        THE COURT:  There is nothing unwise about telling

18   me that I'm wrong.  So, you won't hurt my feelings, I

19   promise.

20        MR. HERINK:  Thank you for that. The claims

21   allowance process will inherently involve a determination as

22   to whether debtors equitable estoppel argument applies

23   because that is true, the claims allowance process does rope

24   in the question of whether debtors are acting equitably. That

25   is all I will say on that.

1          THE COURT:  Okay.  I hear you.  Why don't we -- if

2   there is anything else you want to make on this category let

3   me give you that opportunity, but otherwise, it might make

4   sense to move to the next category of materials.

5          Actually, before we get there, Mr. Herink, let me

6   -- there is also -- Mr. Winston also made, with respect to

7   the first category, the sort of narrower but pretty powerful

8   point that in general we are highly reluctant to allow

9   discovery into internal valuation analysis in any event. You

10  know, the debtors asked me for the landlords internal

11  valuation documents because they thought it would be helpful

12  in the dispute we had over the assumption motion and my

13  ruling there was I know why you want those, but we just don't

14  allow discovery of those kinds of materials period.

15         Isn't that another reason?  I don't know if that

16  applies to every piece of paper that you are asking for, but

17  doesn't that -- isn't that an independent reason to deny most

18  of the discovery you are seeking?

19         MR. HERINK:  I don't think so, Your Honor.  We

20  touched on this a bit in our opposition to the motion to

21  quash.  I agree there is a rule, more or less, that

22  valuations are done by creditors, shareholders or anything

23  equivalent to what is here is not going to be allowed for the

24  purpose of showing value.  We are not seeking this for the

25  purpose of --

1          THE COURT:  So, the reason for the rule that

2   prohibits discovery is that once you get someone else's

3   internal valuation analysis you basically can figure out

4   their reserve price for negotiations over resolution and its

5   not fair for one side to basically engineer the other sides

6   internal analysis of where their prepared to resolve a

7   dispute.  So, that is, at least, in part the rational for

8   prohibiting it.  It's not just a restriction on the use of

9   the documents.  It's a restriction on obtaining the documents

10  because of the enormous risk of prejudice that one could

11  suffer if the other side -- if a litigation opponent obtained

12  one's internal analysis of the dispute in front of the Court.

13          MR. HERINK:  On that point let me say this: we are

14  going to enter into a confidentiality agreement with MFN to

15  the extent necessary.

16          THE COURT:  Yeah, but it's not about your

17  distributing it to third parties, its about your having it.

18          MR. HERINK:  Yes, but I believe that the statement

19  you just made assumes that we would be directly negotiating

20  with MFN on these issues.

21          THE COURT:  Okay.

22          MR. HERINK:  It's the committee that would be

23  negotiating (indiscernible).

24          THE COURT:  I hear you.  I understand your point.

25  Let me allow you to proceed to the next point.

1        MR. HERINK:  Thank you, Your Honor.  Again,

2   parties agree what the second category is as well, its topics

3   three and four of the deposition subpoena.  Here we are

4   really just looking to find out and really confirm that there

5   were not any statements relating to withdraw liability by the

6   Funds that MFN is relying on or that MFN relied on.

7        As for the relevance of this, again, debtors have

8   discussed how they're making equitable estoppel arguments.

9   The contours of that argument, you know, based on responses

10  to contention interrogatories that we have received have not

11  really been fleshed out.  Debtors have simply said, you know,

12  not exclusively, the federal government relied on Central

13  States statements.  So, it's a very real possibility that

14  there is some type of argument the debtors are making but

15  have not yet disclosed that MFN relied on Central States

16  arguments.

17        THE COURT:  All right.  Look, let me tell you

18  this, the same principle applies.  If I don't give you these

19  documents, I am not going to hear at trial evidence of MFN's

20  reliance.  Again, I am happy to -- if the debtor wants to

21  make that argument they should jump in and tell me that I am

22  prejudicing their case by limiting the discovery, but I can't

23  think of why -- this is a dispute -- I mean, the debtor is a

24  legal entity.

25        I understand it's got constituencies, but I am not

1  sure why a shareholders reliance would alter the rights of

2  the debtor unless they were acting as an agent of the debtor.

3  To the extent they were acting as an agent of the debtor you

4  would get that discovery, I think, from the debtor.  So, I

5  really don't see the relevance either of an argument the

6  debtor would be making and, therefore, the need for you to

7  have discovery in order to respond to it.

8         MR. HERINK:  Yes.  I agree that as a facial matter

9  its not relevant.  This is more just a matter of covering

10  ourselves because we don't know exactly what debtors are --

11         THE COURT:  I completely understand that.  Look,

12  it's your job to make sure that you are not surprised at

13  trial and, therefore, to make your record by seeking the

14  discovery and have them tell you no and have me rule no and,

15  therefore, you are protected against unfair surprise.  So, I

16  am not faulting anyone for the fact that we are here with

17  this. I am only sharing my effort to resolve it according to,

18  sort of, usual principles.

19         MR. HERINK:  Let me just have one more point on

20  this if I may.

21         THE COURT:  Okay.

22         MR. HERINK:  On Friday we told debtors, look,

23  topics three and four should be an even knockout.  All MFN

24  would need to do is stipulate that it didn't rely on any

25  statements of any of the funds relating to withdraw

1   liability.  MFN has refused to give that to us which kind of

2   raises our antenna that there may be something that we are

3   not getting and the equitable estoppel argument would turn to

4   --

5           THE COURT:  So, Mr. Herink, this is the point

6   about corporate separateness that I was eluding to.  If MFN

7   relied on a statement that it made an investment, MFN -- you

8   know, its true that they can participate in the claims

9   allowance hearing, but their rights in that regard are

10  entirely derivative of the debtors.  They don't have an

11  independent right.  They have a right that is purely

12  derivative of the debtors.

13          So, if they relied on a statement in making an

14  investment decision and it turns out that -- you know, I'm

15  not sure why that in the absence of the debtors reliance I am

16  not sure it moves the needle on claims allowance. I am not

17  even sure that the debtors reliance on the statement -- we

18  will come back to that when we get there, but I don't --

19  look, you are a hundred percent right that if I don't give

20  you these documents, I will not hear from any one at trial

21  that the claims should be disallowed because MFN relied on a

22  statement that was made by the Funds.

23          I do think that part of the job of the Court in

24  discovery disputes is to manage the cost of litigation by

25  cutting off, sort of, rabbit holes early on and this seems to

1  me to be a rabbit hole.  So, I am inclined to disallow the

2  discovery and that has whatever consequence it has in terms

3  of narrowing the available arguments at trial.

4          MR. HERINK:  Thank you very much, Your Honor. I do

5  want to give Mr. Meehan an opportunity to speak.  I only

6  represent Central States and he represents the other Funds

7  and he may have additional things to bring up.

8          THE COURT:  Very well. Mr. Meehan.

9          MR. MEEHAN:  Thank you, Your Honor.  Very briefly,

10 Your Honor, I would say that the discussion today on the

11 record on this issue, the back and forth, and clarifications

12 coming from all sides has been very helpful. I think now we

13 have a much better understanding of the limits and the even-

14 handedness.

15         With that, Your Honor, I am satisfied other then

16 to note that I did hear the debtor, you know, refer to an

17 equitable estoppel argument and certain statements that that

18 type of argument has only been raised with respect to a

19 couple of points, not all.  We can get into that in much more

20 detail later.  So, I have nothing to add other than really,

21 Your Honor, thank you for the discussion. I think it's been

22 very helpful.

23         THE COURT:  Thank you, Mr. Meehan.

24         So, Ms. Smith, before I rule, I just want to make

25 sure I'm being fair to you.  I don't mean to put you on the

1   spot. I appreciate that you are not a movant here, but the

2   necessary fact is that when you are dealing with what is

3   essentially the scope of third party discovery the scope of

4   the discovery you allow against a third party -- and here I

5   am -- while MFN is a party in interest that has the right to

6   appear and be heard, you know, my view is that that right is

7   in a derivative capacity and that for the purposes of this

8   dispute MFN in its actual own capacity is effectively in the

9   shoes of a third party.

10          The resolution for disputes of third-party

11  discovery will necessarily bear on what the Court thinks is

12  relevant to the trial.  So, I have heard you say you intend

13  to make an argument about equitable estoppel, and we will

14  deal with that when we get there, is there -- do you have any

15  other concerns that -- because I am going to be evenhanded

16  and by cutting off this discovery to the extent, you know, we

17  find ourselves at trial and you're making an argument or your

18  colleagues are making an argument as to which the Funds have

19  a fair point that their unable fully to respond because I cut

20  off discovery do you have any concern about, basically, the

21  consequences of this ruling?  Of a ruling that would

22  basically deny the motion to compel and grant the motion to

23  quash?

24          MS. SMITH:  No, Your Honor.

25          THE COURT:  Okay.

1          MR. WINSTON:  Your Honor?

2          THE COURT:  Yes.

3          MR. WINSTON:  This is Eric Winston for MFN.  May I

4    just -- I know you are going to rule, can I -- I just want to

5    state a couple of things on the record.

6          THE COURT:  Of course. This is my job to give the

7    parties a chance to be heard.  So, please do.

8          MR. WINSTON:  Very quickly.  So, thank you for

9    your commentary and hopefully your commentary can be

10   reflected in your ruling.  I will say literally everything

11   you said in your commentary was raised in the meet and

12   confer. So, I am glad to hear Mr. Meehan say there is

13   clarifications.  This is exactly what we have been telling

14   them since March or -- whenever the meet and confer was that

15   is when we first raised these points.  So, none of this is

16   surprising to me.

17         Number two, we will stand by the stipulations at

18   trial which will confirm there will be no MFN statements

19   introduced at trial for reliance by anybody.  So, that is --

20   we are sticking by that.  So, they have exactly what they

21   were searching for.

22         I want to say one more thing, because I just heard

23   Mr. Herink say it, he said on Friday they asked for an

24   additional stipulation. We did not include that in our papers

25   because that was sent to us under Rule 408 which we honored.

1   I just want to make it very clear I'm a little disappointed

2   that he's surprised by that, but just to be clear the reason

3   why we did not agree to that stipulation is because its

4   already been given to them and what was agreed to in the

5   stipulations that are in our motion to quash. I will say no

6   more.

7           THE COURT:  I don't think that any of that

8   requires, you know, further elaboration.

9           Let me just say I am going to grant the motion to

10  quash and deny the motion to compel for the reasons

11  suggested. I am of the view that the material sought is

12  irrelevant. I -- you know, to the extent the argument is that

13  its necessary to respond to an equitable argument I don't

14  think that the question in this case is an equitable

15  question. I think it's a legal question about how to make

16  sense of the words Congress wrote and if applicable the

17  regulations and how those apply to the on the ground facts.

18          The Court isn't going to entertain an argument

19  that basically asks the Court on principles of equity to

20  grant -- to allow or disallow the claim. It's under Section

21  502 of the Bankruptcy Code and applicable non-bankruptcy law.

22  This is not an equitable question, it's a legal question.

23  So, therefore, the request as to equity at large are

24  inapposite to the dispute and, therefore, irrelevant.

25          Again, I do understand the debtor intends to make,

1  what strikes me as, a more focused equitable estoppel

2  argument. I don't have a view on the merits of that, but that

3  will be what it will be. I don't think this discovery, as

4  sought, responds to that.

5          So, that is my ruling. We will deal with to the

6  extent any of the funds wants to make an argument at trial

7  that some argument that is being made that it should in some

8  form or fashion preclude some argument that is being made I

9  will hear you then.  I do think that it makes sense to narrow

10 the dispute before the Court to the one that I believe is

11 before me. I do think that the pursuit of, sort of, these

12 concerns about equity at large are a side show and that in

13 the interest of efficiency we ought to cut that off at the

14 pass.

15         So, that is my ruling.  I guess it would make

16 sense if the parties don't mind submitting an appropriate

17 order under certification reflecting that ruling.  We will

18 enter that order.  Obviously, if to the extent future

19 disputes arise you all know how to find me.

20         Anything else that I can do to be helpful to the

21 parties?

22         MR. WINSTON:  Nothing from MFN, Your Honor.

23         MS. SMITH:  Nothing from the debtors, Your Honor.

24         MR. HERINK:  Nothing from Central States.  Thank

25 you, Your Honor.

1            MR. MEEHAN:  Nothing from the MEPPs.  Thank you,

2   Judge.

3            THE COURT:  Okay.  Thank you, Mr. Meehan.

4            Thanks to all of the parties.  I think these

5   letters and motions were presented clearly and helpfully. I

6   appreciate the manner in which the issues were teed up. So,

7   my thanks to all of you for that.

8            With that we are adjourned.  Thank you.

9       (Proceedings concluded at 12:46 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          <u>CERTIFICATION</u>

2              I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    <u>/s/ Tracey J. Williams</u>                    <u>June 12, 2024</u>

8    Tracey J. Williams, CET-914

9    Certified Court Transcriptionist

10   For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Filed Under Seal

# EXHIBIT B

# Filed Under Seal

# EXHIBIT C

Filed Under Seal

EXHIBIT D

# EXHIBIT E

Page 1

1          IN THE UNITED STATES BANKRUPTCY COURT

2               FOR THE DISTRICT OF DELAWARE

3

IN RE:                        ) Chapter 11

4                             )

YELLOW CORPORATION, et al.,   ) Case No. 23-11069

5                             ) (CTG)

          Debtors.            )

6                             ) RE:  Docket

                              ) No.  2157

7

8

9               The remote Zoom Rule 30(b)(6)

10   deposition of DARREN HAWKINS, called for

11   examination, taken pursuant to the Federal Rules

12   of Civil Procedure of the United States District

13   Courts pertaining to the taking of depositions,

14   taken before CAROLYN J. HAWKES, C.S.R., within and

15   for the State of Illinois, on the 7th day of June,

16   2024, at the hour of 8:00 a.m. CST.

17

18

19

20

21

22

23

24

```
 1   COUNSEL PRESENT:  (Via Zoom)
 2       KIRKLAND & ELLIS, LLP, by:
         MR. MICHAEL P. ESSER
 3       MR. JOHN CHRISTIAN
         300 North LaSalle Street
 4       Chicago, Illinois  60654
         michael.esser@kirkland.com
 5       john.christian@kirkland.com,
 6           appearing on behalf of the Debtors;
 7       CENTRAL STATES FUNDS, by:
         MR. DANIEL SULLIVAN
 8       MS. AMA GYIMAH
         MR. ANDREW HENRICK
 9       MR. BRAD BERLINER
         MS. ERIKA WAGNER
10       8647 West Higgins Road
         8th Floor
11       Chicago, Illinois  60631
         dsullivan@centralstatesfunds.org
12       agyimah@centralstatesfunds.org
         ahenrick@centralstatesfunds.org
13       bberline@centralstatesfunds.org
         ewagner@centralstatesfunds.org,
14
             appearing on behalf of Central States
15           Southeast and Southwest Areas Pension
             Fund and by Central States Southeast
16           and Southwest Areas Health and
             Welfare Fund;
17
         AKIN GUMP STRAUSS HAUER & FELD, LLP, by:
18       MR. JOSEPH SORKIN
         MR. JEFFREY A. LATOV
19       MR. KEVIN ZUZOLO
         One Bryant Park Bank of America Tower
20       New York, New York  10036
         jsorkin@akingump.com
21       jlatov@akingump.com
         kzuzolo@akingump.com,
22
             appearing on behalf of the UCC;
23
24
```

Page 3

```
 1   COUNSEL PRESENT:  (Via Zoom)
 2       GROOM LAW GROUP, by:
         MR. EDWARD MEEHAN
 3       MR. SAMUEL LEVIN
         1701 Pennsylvania Avenue NW
 4       Suite 1200
         Washington, DC  20006
 5       emeehan@groom.com
         slevin@groom.com,
 6
             appearing on behalf of ten MEPPs,
 7           the SFA MEPPs in the Second Omnibus
             Objection;
 8
         CARY KANE, LLP, by:
 9       MS. SUSAN BRUNO
         Herald Square Building
10       1350 Broadway
         Suite 1410
11       New York, New York  10018
         sbruno@carykane.com,
12
             appearing on behalf of Creditor
13           Road Carriers;
14       LITTLER MENDELSON, P.C., by:
         MR. ERIC D. FIELD
15       815 Connecticut Avenue NW
         Suite 400
16       Washington, DC  20006
         efield@littler.com,
17
             appearing on behalf of MFN;
18
         STEPTO, by:
19       MR. ERIC G. SERRON
         1330 Connecticut Avenue NW
20       Washington, DC  20036
         eserron@steptoe.com,
21
             appearing on behalf of Teamsters
22           Local 83;
23
24
```

```
                                              Page 4
 1    COUNSEL PRESENT:   (Via Zoom)
 2        PARAVATI KARL & DeBELLA, LLP, by:
          MR. VINCENT DeBELLA
 3        520 Seneca Street
          Suite 105
 4        Utica, New York  13502,
 5            appearing on behalf of New York
              State Teamsters Conference Pension
 6            and Retirement Fund;
 7        MILBANK, LLP, by:
          MS. VICTORIA COLBERT
 8        1850 K Street NW
          Suite 1100
 9        Washington, DC  20006
          vcolbert@milbank.com,
10
              appearing on behalf of New England
11            Teamsters Pension Fund;
12        PEDERSON & HOUPT, by:
          MR. JOHN S. DELNERO
13        161 North Clark Street
          Suite 2700
14        Chicago, Illinois  60601
          jdelnero@pedersonhoupt.com,
15
              appearing on behalf of Local 705
16            Pension Fund;
17        WPa TEAMSTERS & EMPLOYERS PENSION AND
          WELFARE FUNDS
18        MR. VINCE SZELIGO
          900 Parish Street
19        Suite 101
          Pittsburgh, Pennsylvania  15220,
20
              appearing on behalf of the Creditors'
21            Committee WPa Pension Fund;
22
23
24
```

Page 5

```
 1   COUNSEL PRESENT:  (Via Zoom)
 2       GELLERT SCALI BUSENKELL & BROWN, LLC, by:
         MR. MICHAEL BUSENKELL
 3       1201 North Orange Street
         Suite 300
 4       Wilmington, Delaware  19801
         mbusenkell@gsbblaw.com,
 5
             appearing on behalf of Central
 6           Pennsylvania Teamsters Pension Fund and
             Health and Welfare Fund, Local 710 Fund,
 7           Local 641 Pension Fund.
 8
 9   ALSO PRESENT:
10       Mr. Uzo Dike, Kirkland & Ellis.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 11

```
 1    to swear in our first witness.
 2        THE COURT REPORTER:  And everyone
 3    stipulates that the witness can be sworn in
 4    remotely, correct?
 5        MR. SULLIVAN:  Correct.
 6        THE COURT REPORTER:  Mr. Hawkins, would
 7    you please state your name and current
 8    location, just city and state, for the
 9    record?
10        THE WITNESS:  Darren Hawkins.  Selmer,
11    Tennessee.
12                      (WHEREUPON, the witness was
13                       first remotely duly sworn.)
14                      DARREN HAWKINS,
15    called as a witness herein, having been first
16    remotely duly sworn, was examined and testified as
17    follows:
18                      EXAMINATION
19    BY MR. SULLIVAN:
20        Q.  Good morning, Mr. Hawkins.  Thank you
21    for taking time to be with us here today.  My name
22    is Daniel Sullivan.  I am an attorney for the
23    Central States Southeast and Southwest Areas
24    Pension Fund, which I'm going to refer to by the
```

1  Yellow companies could not have undertaken such an

2  effort with PBGC if the Yellow companies

3  determined that they wished to do so at the time?

4       MR. ESSER:  Object to form.  You can

5     answer if you can.

6  BY THE WITNESS:

7       A.   That question, I think I'm just going to

8  have to have you ask it again.

9  BY MR. MEEHAN:

10      Q.   Sure.  Let me ask it and I'll try to

11  tighten it.

12      A.   Yup.

13      Q.   Can you think of any reason why -- if

14  the Yellow companies had wanted to work with PBGC

15  on what the regulation should say about

16  recognizing the special financial assistance, is

17  there any reason why you could not have done that

18  if you wished to do so?

19      A.   At a company our size and with as many

20  employees we had many times the Department of

21  Labor, Department of Transportation would reach

22  out to us and we would provide our opinion, other

23  things on that.

24                 If that happened from the PBGC, I'm

Page 133

1    not aware of it, but that's a situation I could

2    think of, that, you know, it's not uncommon at all

3    for even the White House to reach out to a company

4    like ours, you know, their National Economic

5    Council, other things from that regard, but that's

6    the best answer I can give to I think what you're

7    trying to ask.

8         Q.   Okay.  And I think I can wrap up by just

9    making sure I've got you is -- so although

10   communications with government agencies about

11   regulations that might concern Yellow were not

12   uncommon, you don't know of any such communication

13   between the Yellow companies and PBGC about this

14   special financing assistance regulation.  Did I

15   get that right?

16        MR. ESSER:  Object to form.  You can

17        answer.

18   BY THE WITNESS:

19        A.   Yeah, not that I recall or that I am

20   aware of.

21        MR. MEEHAN:  Okay.  Sir, I don't have any

22        other questions.  I indicated I would try to

23        be brief, and I hope I achieved that.  And

24        thank you very much for your cooperation and

Page 139

1          I, Carolyn J. Hawkes, Certified

2    Shorthand Reporter within and for the State of

3    Illinois, do hereby certify that, to-wit, on the

4    7th day of June, 2024, appeared remotely before me

5    DARREN HAWKINS, witness produced in a certain

6    cause now pending and undetermined in the United

7    States Bankruptcy Court for the District of

8    Delaware.

9          I further certify that the said

10   DARREN HAWKINS was by me first remotely duly sworn

11   to testify the truth, the whole truth, and nothing

12   but the truth in the cause aforesaid; that the

13   testimony then given by said witness was reported

14   stenographically by me, in the presence of the

15   said witness, and afterwards reduced to

16   typewriting; and the foregoing is a true and

17   correct transcript of the testimony so given by

18   said witness as aforesaid.

19          I further certify that the said

20   deposition was adjourned as indicated herein.

21          I further certify that

22   Counsel of Record appeared on behalf of the

23   respective parties.

24          I further certify that I am not

Page 140

1   counsel for nor in any way related to any of the

2   parties to this cause, nor am I in any way

3   interested in the outcome thereof.

4              In testimony whereof I have hereunto

5   set my hand this 12th day of June, 2024, A. D.

6

7

8

9

10

11

12              Carolyn J. Hawkes
                Certified Shorthand Reporter
                State of Illinois

13

    CSR No. 084-003296.

14

15

16

17

18

19

20

21

22

23

24