## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re:

**YELLOW CORPORATION, et al.**

Debtors.

**Case No. 23-11069 (CTG)**

**Chapter 11**

**Jointly Administered**

## LOCAL 705 PENSION FUND'S MOTION FOR SUMMARY JUDGMENT

SULLIVAN HAZELTINE ALLINSON LLC
WILLIAM D. SULLIVAN (NO. 2820)
WILLIAM A. HAZELTINE (NO. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
whazeltine@sha-llc.com

BAUM SIGMAN AUERBACH & NEUMAN, LTD.
STEPHEN J. ROSENBLAT (ARDC NO. 6204044)
PATRICK N. RYAN (ARDC NO. 6278364)
200 WEST ADAMS STREET, SUITE 1825
CHICAGO, IL 60606
TEL: (312) 216-2573
EMAIL: PRYAN@BAUMSIGMAN.COM
SROSENBLAT@BAUMSIGMAN.COM

PEDERSEN HOUPT
JOHN S. DELNERO (ARDC NO. 6195914)
161 NORTH CLARK STREET, SUITE 2700
CHICAGO, ILLINOIS 60601
TEL: 312-261-2185
JDELNERO@PEDERSENHOUPT.COM

*Counsel for International Brotherhood of
Teamsters Local 705 Penson Fund*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION - SUMMARY OF ARGUMENT ................................................................... 1

BACKGROUND/DEBTORS' WITHDRAWAL LIABILITY ...................................................... 4

STANDARD FOR SUMMARY JUDGMENT ........................................................................ 6

ARGUMENT ......................................................................................................................... 6

    A.    ALL DEBTOR ENTITIES ARE JOINTLY AND SEVERALLY LIABLE FOR WITHDRAWAL LIABILITY TO THE LOCAL 705 PENSION FUND ..................... 6

    B.    WITHDRAWAL LIABILITY ALREADY REPRESENTS A PRESENT VALUE ...... 9

    C.    DEBTORS CONCEDE THAT LOCAL 705 PENSION FUND CORRECTLY CALCULATED ITS CLAIM IN ACCORDANCE WITH ERISA ........................... 14

    D.    THE BANKRUPTCY CODE DOES NOT ALTER THE ALLOWANCE OF LOCAL 705 PENSION FUND's CLAIM. ............................................................... 15

    E.    EVEN IF THE BANKRUPTCY CODE IMPACTS THE ALLOWANCE OF LOCAL 705 PENSION FUND's CLAIM IT WOULD NOT BE ON DEBTORS' THEORY .. 17

CONCLUSION ..................................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 6

*Board of Trs. of Trucking Employees of North Jersey Welfare Fund, Inc. Pension Fund v.
    Centra Inc.*, 983 F.2d 495, 504 (3d Cir. 1992) ....................................................................7

*Butner v. United States*, 440 U.S. 48 (1979) ...............................................................................10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................................6

*Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591 (7th Cir. 2008) ...........................................8

*Connolly v. Pension Ben. Guar. Corp., 475 U.S.* 211, 217 (1986) ...............................................7

*EBC Inc. v. Clark Bldg. Sys.*, Inc., 618 F.3d 253 (3d Cir. 2010) ..................................................6

*Gretag Imaging, Inc.,* 485 B.R. 39 (Bankr. D. Mass. 2013) ........................................................11

*In re Blanco*, 649 B.R. 571 ................................................................................... 3, 16-17

*In re Durango Georgia Paper Company*, 2017 WL 221785 .................................................12, 15

*In re Mason & Dixon Lines, Inc.*, 63 B.R. 176 (Bankr. M.D. N.C. 1986) ....................................9

*In re Oakwood Homes*, 449 F.3d 588 (3rd Cir. 2006) .................................................2, 11, 13, 14

*In re Rhodes*, 382 B.R. 550 (Bankr. N.D. Ga. 2008) ..................................................................12

*In re U.S. Airways Grp., Inc.*, 303 B.R. 784 (Bankr. E.D. Va. 2003) ...............................2, 12, 15

*Law v. Segal*, 571 U.S. 417 (2015) .............................................................................. 10

*Lewis v. Manufacturers National Bank*, 364 U.S. 603 (1961).....................................................10

*Local 705 International Brotherhood of Teamsters Pension Fund v. Gradei's Express Co.*, *Inc.*,
    612 F.Supp.3d 792 (N.D.Ill. 2020) ....................................................................................7

*Lozano v. New Jersey*, 9 F.4th 239 (3d Cir. 2021) ......................................................................6

*Manhattan Ford Lincoln, Inc. v. UAW Local 259 Pension Fund*,
    331 F.Supp.3d 365 (D.N.J. 2018) ....................................................................................13

*Masters, Mates & Pilots Pension Plan v. USX Corp.*, 900 F.2d 727 (4th Cir. 1990) .............14, 15

*Milwaukee Brewery Workers Pension Plan v. Joseph Schlitz Brewing Company*,
    513 U.S. 414 (1995) .........................................................................................................11

*Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359 (1980) ................................................6

*Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717 (1984) ...........................................7

*Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185 (3d Cir. 2009) ...........................................................................................7

*Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15 (2000) ...........................................................10

*Republic Indus., Inc. v. Central Pa. Teamsters Pension Fund,* 693 F.2d 290 (3rd Cir. 1982)..1, 14

*Sexton v. Dreyfus*, 219 U.S. 339, 343-345 (1911) .......................................................................17

*Trustees of Loc. 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.,* 692 F.3d 127 (2d Cir. 2012) ..................................................................................................6

*Vanston Bondholders Protective Comm. v Green*, 329 U.S. 156 (1946) ......................................10

## Statutes

11 U.S.C. § 101(5)(A) ...............................................................................................................3, 16

11 U.S.C. § 345 ............................................................................................................................18

11 U.S.C. § 502 ............................................................................................................................10

26 U.S.C. § 414(c) .........................................................................................................................4

28 U.S.C. § 586 ............................................................................................................................18

29 U.S.C. § 1383 ............................................................................................................................4

29 U.S.C. § 1301 ............................................................................................................................8

## Regulations

26 CFR § 1.414(c) ..........................................................................................................................9

29 CFR § 4001.3 .............................................................................................................................8

## Rules

Fed. R. Civ. P. 56 ............................................................................................................................6

Fed. R. Bankr. P. 3001 ..................................................................................................................10

## Other

H. Rep. No. 595, 95th Cong., 1st Sess. 352-53 (1977)..............................................................3, 16

Thomas H. Jackson, The Logic and Limits of Bankruptcy, Harvard University Press (1986), pp 36-39 .................................................................................................................................16

Trustee Handbook for Chapter 7 Trustees ...................................................................................18

LOCAL 705 INTERNATIONAL BROTHERHOOD OF TEAMSTERS PENSION FUND ("Local 705 Pension Fund"), by and through its undersigned counsel, hereby moves this Court pursuant to Federal Rule of Civil Procedure 56, and Federal Rules of Bankruptcy Procedure 7056 and 9014, for summary judgment (the "Motion").

## INTRODUCTION - SUMMARY OF ARGUMENT

1.     This Court may grant summary judgment in favor of Local 705 Pension Fund because only legal issues remain. Debtors have waived all factual challenges and "only object that IBT Local 705 Fund should have discounted its claim to present value." Debtors' Supplemental Response to Interrogatories dated July 24, 2024. Exhibit A.

2.     Local 705 Pension Fund is a multiemployer pension fund in which the Debtors participated. When the Debtors permanently ceased covered operations prior to the August 6, 2023, petition date (Aug. 7, 2023 Declaration of Brian A. Doheny, Dkt. 14, ¶ 17), they became liable to pay the Fund "withdrawal liability," *i.e.*, the Debtors' portion of the Fund's unfunded vested benefit liability. Local 705 Pension Fund calculated this liability at $17,830,282, a number far less than Debtors themselves calculated. Debtors' experts and discovery responses confirm that Local 705 Pension Fund's calculation was not only reasonable but well below Debtors' pre-petition estimates from 2011 to 2021 in the range of $32,326,446 (Yellow-NON-SFA_0002989, attached as Exhibit B) to $57,000,000 (Yellow-NON-SFA_0067348, attached as Exhibit C). Two years prior to bankruptcy Debtor estimated its withdrawal liability to Local 705 Pension Fund at $34,100,00 Yellow-NON-SFA_0001288, attached as Exhibit D). *See also,* Campbell Deposition, pp.26, 43; attached as Exhibit E: Campbell Report, p.15, attached as Exhibit F.

3.     Local 705 Pension Fund's withdrawal liability calculation is binding on the Debtors under non-bankruptcy law, unless proven unreasonable. *Republic Indus., Inc. v. Central Pa. Teamsters Pension Fund*, 693 F.2d 290, 292 (3rd Cir. 1982) ("the fund's determination of

withdrawal liability is presumed correct unless shown to be 'unreasonable' or 'clearly erroneous.'") (citations omitted).

4.    There is no basis for present value discounting of withdrawal liability claims in bankruptcy. No bankruptcy code section supports the Debtors' position. This is because withdrawal liability claims are present claims — not contingent or unmatured claims. Debtors' own authority, *In re U.S. Airways Grp., Inc.*, 303 B.R. 784, 793 (Bankr. E.D. Va. 2003), confirms this, stating that withdrawal liability "is not simply valuing a contingent future loss." Instead, "Congress, by statute, has expressly given [the multiemployer pension fund] a *present* right to recover an amount determined in accordance with the valuation regulation." *Id.* (emphasis in original).

5.    Because the statutory formula for calculating withdrawal liability already contemplates a reduction to present value, it would be error to further discount that amount.

6.    The Third Circuit's ruling in *In re Oakwood Homes Corporation*, 449 F.3d 588, 601 (3rd Cir. 2006) expressly prohibits "double discounting" of Local 705 Pension Fund's withdrawal liability claim, which is inherent in Debtors' objection: "once unmatured interest has been disallowed, discounting the remainder of the claim to present value would inequitably twice penalize the creditor for the time value of money." *Id.* at 601. The 705 Pension Fund's withdrawal liability claim does not include unmatured interest (though Debtors were presented with the option to amortize payment, which would include accrued interest). To the contrary, it is the discounted value of current and future payments due to pension beneficiaries formerly employed by Debtors.

7.    In accordance with the statutory formula, Local 705 Pension Fund — not the Debtors — will pay current and future beneficiary claims using Debtors' withdrawal liability payments invested in the Fund's investment portfolio. Consistent with ERISA, Local 705 Pension Fund incorporated present value discounting of those benefit payments in its calculation of

withdrawal liability. The undiscounted value of Local 705 Pension Fund's expected benefit payments is $25,596,814 (see exhibit 11 to Hrycay Report, p. 34, attached as Exhibit G, and Local 705 Pension Fund 's Amended Proof of Claim, attached as Exhibit H), and Local 705 Pension Fund's total claim has been discounted at 6.75% per annum to $17,830,282. *See* Campbell Report, p.15, attached as Exhibit F.

8.      Fundamental bankruptcy law treats even unmatured and contingent claims as present, accelerated claims, that are not subject to present value discounting. *See* 11 U.S.C. §101(5)(A) (claim includes any right to payment including contingent and unmatured claims); H. Rep. No. 595, 95th Cong., 1st Sess. 352-53 (1977) ("[B]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor"); *In re Blanco*, 649 B.R. 571, 578 (Bankr. E.D. Wash. 2023) ("The broad statutory definition and express inclusion of 'contingent' and 'unmatured' rights to payment fits with how a bankruptcy filing automatically accelerates a debtor's future obligations on and as of the petition date"). Given the nature of the withdrawal liability calculation and this black-letter law, there is no legal basis for further discounting the withdrawal liability amount.

9.      Nor is there any legal basis to change the discount rate, as Debtors' expert, Amit Seru, appears to propose. Mr. Seru appears to assert that the appropriate discount rate for funds such as Local 705 Pension Fund would be based on hypothetical debtor in possession financing rates in an operating Chapter 11. Seru Report, attached as Exhibit I. In essence, Debtors' expert proposes the worst possible source of returns for the investment of estate funds for payment of future pension benefits — borrowing funds at exorbitant rates on behalf an illiquid non-operating chapter debtor. The Fund, however, would never have to borrow in such a manner. Indeed, no prudent investment manager would borrow funds to cover obligations, which obligations are not

presently payable due to the automatic stay and will be eventually paid from residual estate funds after satisfaction of secured, priority and administrative claims.

10.    Debtors' Objection should be overruled, and summary judgment should be entered in Local 705 Pension Fund's favor as a matter of law.

## BACKGROUND/DEBTORS' WITHDRAWAL LIABILITY

11.    Two of the Debtors, USF Holland, LLC, and YRC, Inc., were, at all relevant times through the filing of their Chapter 11 petitions, bound to collective bargaining agreements with the International Brotherhood of Teamsters, Local 705. Among other terms and conditions, the collective bargaining agreements obligated USF Holland and YRC to report and pay pension contributions to Local 705 Pension Fund on behalf of employees who performed covered work.

12.    On July 28, 2023, USF Holland and YRC permanently laid off all employees on whose behalf they had an obligation to report and pay contributions to IBT Local 705 Fund, or otherwise ceased to have an obligation to pay contributions to IBT Local 705 Fund, thus causing a complete withdrawal from the Fund under 29 U.S.C. § 1383. Shortly thereafter, the Debtors filed the instant Chapter 11 petitions.

13.    By letter dated October 16, 2023, the Local 705 Pension Fund notified YRC and any "members of any controlled group of trades or businesses, as defined in Section 414(c) of the Internal Revenue Code", that it was assessing withdrawal liability in the principal amount of $21,367,019.34. (Exhibit J). The Local 705 Pension Fund included the withdrawal liability calculation worksheet and provided an option to either pay that amount in a lump sum or to amortize payment over 234 months, with interest assessed only after the first year at the rate of 7.5 percent per year. If payments were made monthly for the duration of the payment schedule, they would total $38,457,884.37, with accrued interest. *Id*.

14.     On November 9 and 13, 2023, Local 705 Pension Fund timely filed its proofs of claims as to each of the Debtors, as businesses under common control, to include only the principal amount of the withdrawal liability assessed. Claim Nos. 15906, 15917, 15943, 15944, 15949, 15951, 15953, 15955, 15957, 15965, 15969, 15971, 15975, 15978, 15979, 15985, 15989, 15995, 15998, 16001, 16005and 16006. The Local 705 Pension Fund's Proofs of Claim included a copy of the October 16, 2023, notice and demand and accompanying spreadsheets. The Proofs of Claim did not seek any interest on the withdrawal liability assessment. *Id*.

15.     Debtors' Seventh Omnibus Objection ("Objection") filed on March 13, 2024 [Dkt. 2595] asserts two basic objections to claims of various pension plans, but only one objection to IBT Local 705 Fund's Proofs of Claim, namely that IBT Local 705 Fund did not discount its claim to present value. *See* Objection, [Dkt. 2595] par.29, n.23 and Exhibit 2, thereto.

16.     Local 705 Pension Fund filed its response to the Objection on April 18, 2024. (Dkt. 3060) ("IBT 705 Response"). As set forth in the Response, "Local 705 Pension Fund's Proofs of Claim already give the Debtors the same economic benefit that they seek in present value discounting. Local 705 Pension Fund notified Debtors on October 16, 2023, that it assessed withdrawal liability in the principal amount of $21,367,019.34. Local 705 Pension Fund offered Debtors the option of paying that amount in a lump sum or amortizing it over 234 months, with interest assessed only after the first year at the rate of 7.5 percent per year. If payments were made monthly for the duration of the payment schedule, they would total $38,457,884.37, with accrued interest." *See* Response, paragraph 8.[1].

---

[1]Local 705 Pension Fund has since amended its claims.

## STANDARD FOR SUMMARY JUDGMENT

17.    "Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law." *Lozano v. New Jersey*, 9 F.4th 239, 243 (3d Cir. 2021). *See also*, Fed. R. Civ. P. 56(a) (A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Facts are "material" only if they could "alter the outcome." *EBC Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010). A dispute is "genuine" only if "evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In opposing a motion for summary judgment, a party "must set forth specific facts showing that there is a genuine issue for trial," id. at 256, through affidavits, depositions, admissions, or similar record materials. Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## ARGUMENT

### A.    ALL DEBTOR ENTITIES ARE JOINTLY AND SEVERALLY LIABLE FOR WITHDRAWAL LIABILITY TO THE LOCAL 705 PENSION FUND

18.    Local 705 Pension Fund is a multiemployer pension plan, "in which multiple employers pool contributions into a single fund that pays benefits to covered retirees who spent a certain amount of time working for one or more of the contributing employers." *Trustees of Loc. 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 129 (2d Cir. 2012).

19.    IBT Local 705 Fund is responsible for paying benefits to eligible beneficiaries consistent with its Plan of Benefits, and is governed by ERISA, which Congress enacted "to prevent the 'great personal tragedy' suffered by the employees whose vested benefits are not paid when pension plans are terminated." *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359,

374 (1980) (footnote omitted). *See also*, *Local 705 International Brotherhood of Teamsters Pension Fund v. Gradei's Express Co., Inc.*, 612 F.Supp.3d 792, 794-95 (N.D. Ill. 2020), affirmed, 3 F.47 949 (7th Cir. 2021).

20.    In 1980, Congress amended ERISA by passing the Multiemployer Pension Plan Amendments Act ("MPPAA"), which imposed withdrawal liability on employers who withdrew from their participation in multiemployer funds. *See Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984). Withdrawal liability "is the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the difference between the present value of vested benefits and the current value of the plan's assets." *Id*.

21.    In enacting MPPAA, Congress agreed with the analysis of the Pension Benefit Guaranty Corp. ("PBGC") that "withdrawal liability would . . . discourage voluntary withdrawals and curtail the current incentives to flee the plan." *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 217 (1986) (quoting testimony from the PBGC Executive Director).

22.    "The MPPAA was . . . designed (1) to protect the interests of participants and beneficiaries in financially distressed multiemployer plans, and (2) to encourage the growth and maintenance of multiemployer plans in order to ensure benefit security to plan participants." *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 193–94 (3d Cir. 2009) (quoting *Board of Trs. of Trucking Employees of North Jersey Welfare Fund, Inc. Pension Fund v. Centra Inc*., 983 F.2d 495, 504 (3d Cir. 1992)). Accordingly, MPPAA "should be construed liberally in favor of protecting the participants in employee benefit plans." *Centra*, 983 F.2d at 504.

23.    Prior to filing bankruptcy, two of the Debtors, YRC, Inc. and USF Holland, LLC, were contributing employers to the Local 705 Pension Fund and made contributions to the Local

705 Pension Fund on behalf of covered employees who were credited with service toward the accumulation of pension benefits. YRC and USF Holland, however, withdrew from Local 705 Pension Fund and triggered withdrawal liability of just under $18 million under MPPAA.

24.    Under ERISA, it is not just the withdrawing employer that is liable for withdrawal liability, but any businesses under common control with the withdrawing employer are jointly and severally liable for the assessed withdrawal liability.  29 U.S.C. § 1301(b)(1); *Chicago Truck Drivers v. El Paso Co*., 525 F.3d 591, 595 (7th Cir. 2008).  "[A]ny notice sent to one member of a controlled group is considered constructive notice to all other members of such a group." *Id*. at 596.  The regulations promulgated by the PBGC pursuant to this section simply refer to IRS regulations to define when businesses are under common control for purposes of withdrawal liability.  29 CFR §4001.3(a)(1).  Thus, to determine whether two entities are businesses under common control for purposes of withdrawal liability, the IRS regulations control.  26 CFR §1.414(c)-1, et seq.

25.    Businesses may be related as either parent-subsidiary groups, or brother-sister groups.  26 CFR §1.414(c)-2(a).  The parent-subsidiary group entails one or more entities with a "controlling interest" in others.  26 CFR §1.414(c)-2(b).  The brother-sister group entails two or more entities for which the same five or fewer people have both a "controlling interest" and "effective control" of each entity. 26 CFR §1.414(c)-2(c).  To have a "controlling interest," the individuals must own at least 80% of the voting shares of a corporation, or in the profits or capital for a partnership.  26 CFR §1.414(c)-2(b)(2).  To be in "effective control," the individuals must hold more than 50% of the voting shares of a corporation.  26 CFR §1.414(c)-2(c)(2).  The regulations further define ownership interests for purposes of determining "controlling interest" and "effective control."  If an individual is in "effective control" of an organization (i.e., already

8

has more than 50% ownership), then ownership interests held by his or her parent, grandparent, children, or grandchildren are considered those of the individual for purposes of determining "controlling interest."  26 CFR 1.414(c)-4(b)(6)(ii).

26.     None of the other debtors have disputed that they are jointly and severally liable for the assessed withdrawal liability as businesses under common control with YRC and USF Holland.  Debtors have not paid their withdrawal liability obligations to Local 705 Pension Fund and have objected to Local 705 Pension Fund' withdrawal liability proofs of claim on the basis that Local 705 Pension Fund has not present value discounted its claims. (*See* Objection ¶ 29, n.23 and Exhibit 2 thereto [Dkt. No. 2595].).

### B.     WITHDRAWAL LIABILITY ALREADY REPRESENTS A PRESENT VALUE

27.     Withdrawal liability is a *present value* claim, *i.e.*, it represents an amount due *now*, not a total that would have been paid over time but for the withdrawal (though it could have been amortized and paid over time, with interest).  As set forth in *In re Mason & Dixon Lines, Inc*., 63 B.R. 176, 182 (Bankr. M.D. N.C. 1986):

> Pension fund withdrawal liability claims are different from general unsecured claims in several major respects: (1) Withdrawal claims do not represent an amount actually owed to the pension funds had the collective bargaining agreement remained in force. Withdrawal claims are statutorily created hypothetical debts; the amount alleged due is not based upon a consideration or value received by the debtor or its employees. The amount is based upon (a) what the creditor estimates it needs to pay future benefits for all of its beneficiaries (including employees and retirees from companies competing with the debtor), (b) investment practices of the individual pension funds, (c) business failures of other employers who contribute to the pension funds, (d) the number of active employees who participate in each pension fund, and (e) the unilaterally adopted actuarial assumptions of each pension fund…

*Id.*

28.     Nothing in the Bankruptcy Code affects the allowability of pre-bankruptcy claims such as withdrawal liability. Those matters are governed by applicable non-bankruptcy law. To

impose a different method of allowance in bankruptcy violates the bedrock anti-forum shopping principle of the Supreme Court's decision in *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'") *citing Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609 (1961).

29.    Local 705 Pension Fund's claims constitute *prima facia* evidence of the validity and the amount of its claim. Bankruptcy Rule 3001(f).

30.    For the Debtors to successfully challenge claims allowed under non-bankruptcy law, they must rely on at least one of the enumerated sub-sections of Section 502 of the Bankruptcy Code to establish that there is a qualifying or contrary provision of the Bankruptcy Code upsetting Local 705 Pension Fund's statutorily allowed claim amount. *See Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000) citing *Butner*, 44 U.S. at 55; *Vanston Bondholders Protective Comm. v Green*, 329 U.S. 156 (1946). Debtors briefly reference Section 502 (Obj. at 1-3,7) but fail to specify the sub-part of Section 502 upon which the Objection is based.

31.    Bankruptcy courts lack equitable powers untethered to explicit bankruptcy code provisions. *See, e.g., Law v. Segal*, 571 U.S. 417, 421 (2015) ("We have long held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.'"). Debtors' desire to have this court fashion a non-statutory present value contradicts binding Supreme Court precedent.

10

32.     Local 705 Pension Fund's claims do not include future, unmatured interest subject to disallowance under Section 502(b)(2) and, therefore, do not need to be discounted to present value.[2] On the contrary, it would be error to do so. *See Oakwood Homes*, 449 F.3d at 601 ("We conclude that the language used in §502(b) does not clearly and unambiguously require discounting an interest-bearing obligation to present value considering the words' plain meanings and the language used elsewhere in the Bankruptcy Code. The Bankruptcy Court erred: Interest-bearing debt should not be discounted to present value after unmatured interest has been disallowed pursuant to § 502(b)(2).").

33.     Following *Oakwood Homes*, the bankruptcy court in *Gretag Imaging, Inc.* addressed the same type of claim as that asserted here – a claim for present and future amounts. There, the court stated "[h]ad Supervalu sued Gretag prior to its bankruptcy filing for breach of the rebate agreement, Supervalu would have been entitled to seek judgment for the entire stream of payments contemplated under the agreement, not just the payments missed up to the date of suit. *** The fact that Supervalu did not sue Gretag for breach of contract and obtain judgment pre-petition should not alter the treatment of Supervalu's claim. I will therefore overrule the trustee's objection insofar as it seeks a reduction of Supervalu's claim based on discounting its value as of Gretag's bankruptcy petition date." *Gretag Imaging, Inc.,* 485 B.R. 39, 46 (Bankr. D. Mass. 2013)

---

[2] In *Milwaukee Brewery Workers Pension Plan v. Joseph Schlitz Brewing Company*, 513 U.S. 414, 422 (1995), the Supreme Court recognized that interest would accrue for a withdrawing employer that elected to pay its assessed liability in installments. Local 705 Pension Fund did not assert a claim for the total amount of installments with unmatured interest, and instead asserted the lower present value amount without future interest. Because unmatured statutory interest was excluded from the Local 705 Pension Fund's claim, the claim is already present valued. *Oakwood Homes* prohibits double discounting proposed by Debtors here. *Oakwood Homes*, 449 F.3d at 601.

34.     Unlike the withdrawal liability claims here, claims that are contingent or unmatured are subject to estimation only in limited circumstance, also not present here, where the fixing of the claim would unduly delay the administration of the estate. Local 705 Pension Fund's claim is neither contingent nor unmatured. The allowance of the claim is based on simple math and legal authority.

35.     Established caselaw, including Debtors' own cited authority of *U.S. Airways Group*, support the conclusion that withdrawal liability is a present claim for payment, not a future or contingent claim. The *U.S. Airways* court similarly explained, "Congress, by statute, has expressly given [the Fund] a *present* right to recover an amount determined in accordance with" ERISA. *U.S. Airways Group,* 303 B.R. at 793 (emphasis in original). *See also, In re Rhodes*, 382 B.R. 550, 553 (Bankr. N.D. Ga. 2008) (holding that the "Bankruptcy Code contains no provision that conflicts with sections 1301(a)(18) and 1362(b)(1)(A) of ERISA or that would otherwise empower the Court to recalculate the PBGC's claim."); *In re Durango Georgia Paper Company*, 2017 WL 221785, * 3, Dalis, J. (Bankr. S.D. Ga. 2017) (finding PBGC claim upon termination of a pension fund "is not a claim for future payments; it is an obligation that is enforceable now.").

36.     Local 705 Pension Fund's Proofs of Claim already give the Debtors the same economic benefit that they seek when requesting present value discounting. Local 705 Pension Fund notified Debtors on October 16, 2023, that it assessed withdrawal liability in the principal amount of $21,367,019.34.  Local 705 Pension Fund has amended its claim to the sum of least $17,830,282. Local 705 Pension Fund offered Debtors the option of paying the original withdrawal liability assessment in a lump sum or amortizing it over 234 months, with interest assessed only after the first year at the rate of 7.5 percent per year. If payments were made monthly for the duration of the original payment schedule, they would total $38,457,884.37, with accrued

interest.[3] If IBT Local 705 Fund had filed a claim for $38,457,884.37, *i.e.*, the principal plus future, unmatured interest, discounting to present value would be necessary and would be accomplished by disallowing the interest claim. Because IBT Local 705 Fund is seeking the principal withdrawal liability amount, as revised, however, no such discounting is necessary.

37.     "Pension funds, through their actuaries, necessarily make assumptions or predictions. These include estimates of future contributions, investment return, and liabilities, all of which depend on several actuarial factors. To simplify a bit, the Plan's estimated future liabilities are reduced to a present value using a percentage discount rate (which is itself an actuarial assumption). The resulting figure is used to determine whether the Plan's assets are sufficient to meet its obligations." *Manhattan Ford Lincoln, Inc. v. UAW Local 259 Pension Fund,* 331 F.Supp.3d 365, 372 (D.N.J. 2018).

38.     Debtors' Rule 30(b)(6) corporate representative testified that the Debtors' own calculation of withdrawal liability, which greatly exceeded Local 705 Pension Fund's estimated amounts, incorporated present value discounting:

> Q. So, is it fair to say that this $42,326,446 is a present value number that would be used to pay off overtime retiree benefits as they are paid out --
> [FORM OBJECTION]
>
> A. It seems like a reasonable way of looking at it, yes.

Exhibit E, Campbell deposition, p.26

39.     Mr. Campbell then testified that Debtors' computation of withdrawal liability was consistent with Local 705 Pension Fund's calculation:

---

[3] *In re Oakwood Homes*, 449 F.3d 588, 601 (3rd Cir. 2006), would require discounting of Local 705 Pension Fund's claim for $38,457,884.37, by disallowing the interest, effectively discounting it to the principal sum of the withdrawal liability assessment.

Q. And one of the things that we talked about was the interest rate of 7.5 percent. Do you believe that the 7.5 percent number was used consistently with respect to Exhibit 5, 4, 3, and 2?[4]

A. I would expect that to be the case that the 7.5 percent would have applied to the Local 705 fund.

Exhibit E, Campbell deposition, p. 43.

40.    Debtors' present value discount is not only beyond the scope of Section 502 but seeks to implement double discounting rejected by the Third Circuit, which held that "disallowing post-petition interest and discounting the claim to present value would be impermissible and inequitable double discounting." *Oakwood Homes*, 449 F.3d at 593.

### C.    DEBTORS CONCEDE THAT LOCAL 705 PENSION FUND CORRECTLY CALCULATED ITS CLAIM IN ACCORDANCE WITH ERISA

41.    Local 705 Pension Fund's withdrawal liability calculation is binding on the Debtors under non-bankruptcy law, unless proven unreasonable:

> Because this case centers on the provisions of MPPAA, we must examine that statute in detail. The Act provides that when a contributing employer withdraws from a multiemployer pension fund, it must pay a withdrawal liability -- an allocated portion of the fund's unfunded vested benefit liability. The duty to compute and collect this liability falls upon the trustees and actuaries of the fund. The Act provides that disputes over the amount of withdrawal liability shall be resolved through arbitration. At arbitration, the fund's determination of withdrawal liability is presumed correct unless shown to be "unreasonable" or "clearly erroneous."

*Republic Indus.,* 693 F.2d at 291 (emphasis added) (citations omitted). *See also Masters, Mates & Pilots Pension Plan v. USX Corp.*, 900 F.2d 727, 733 (4th Cir. 1990) ("a fund's determination of [unfunded vested benefits, *i.e.,*] UVBs is presumed correct unless the employer shows by a preponderance of the evidence that 'the actuarial assumptions and methods used in the determination were, in the aggregate, unreasonable.'")

---

[4]Exhibits 2,3,4,5 were Debtors' internal records of calculated withdrawal liability.

42.     Debtors retracted all of their challenges to Local 705 Pension Fund's claim other than present value discounting on July 24, 2024: "Debtors are not alleging Local 705 relied upon inflated contribution rates, failed to account for required liability caps, or is seeking more than Debtors' allocable share of unfunded vested benefits, and will not object to Local 705's proofs of claim on those grounds; at present, and pending service of Local 705's amended proofs of claim, Debtors only object that Local 705 should have discounted its claim to present value."  Exhibit A, Debtors' Supplemental Response to Interrogatories dated July 24, 2024.

### D.     THE BANKRUPTCY CODE DOES NOT ALTER THE ALLOWANCE OF LOCAL 705 PENSION FUND'S CLAIM.

43.     Debtors fundamentally misunderstand the bankruptcy process and its effect on withdrawal liability claims. Withdrawal liability is a present claim to cover unfunded but vested benefits that are payable to beneficiaries (Debtors' former employees in particular) in the future. *See Masters, Mates & Pilots Pension Plan,* 900 F.2d at 733. ("In computing an employer's withdrawal liability, a plan sponsor must calculate the present value of the vested benefits that are to be paid out in the future. An interest rate, or rate of return, is applied in order to determine what present amount of investment will yield the future amounts required to satisfy those vested benefits. In other words, the future benefits are 'discounted' to present value.") The claim is measured as of the petition date even though the payment of benefits occurs over time because the Fund will have the ability to invest the payments until such time as the benefits are payable. *See e.g., In re Durango Georgia Paper Co.*, 2017 WL 221785, * 3, Dalis, J. (Bankr. S.D. Ga. Jan. 18, 2017) (PBGC claims upon termination of pension fund "is not a claim for future payments; it is an obligation that is enforceable now.") The court in *U.S. Airways Group*, 303 B.R. at 793 similarly explained that "Congress, by statute, has expressly given [the Local 705 Fund] a *present* right to recover an amount determined in accordance with" ERISA. (emphasis in original).

15

44.     Section 101(5)(A) of the Bankruptcy Code defines a claim to include any right to payment, whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5)(A). The legislative history of the Bankruptcy Code confirms that bankruptcy accelerates the principal amount of claims. H. Rep. No. 595, 95th Cong., 1st Sess. 352-53 (1977) ("[B]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor."); *see also* THOMAS H. JACKSON, THE LOGIC AND LIMITS OF BANKRUPTCY, Harvard University Press (1986), pp 36-39 (the Bankruptcy Code provides for acceleration and does not provide for present value discounting of unmatured claims with below market interest in liquidation proceedings because "acceleration of a claim in a bankruptcy liquidation accurately mirrors its nonbankruptcy value… '[d]oes this rule, create perverse incentives [for a creditor with a below market interest loan] to use the bankruptcy process for individual gain? … The answer would seem to be no. The presumptive event of default is *not* the filing of a petition for bankruptcy itself. The justification for acceleration, instead, derives from the fact that the debtor is liquidating and terminating its responsibility for repayment. This matches the bankruptcy proceeding to its closest nonbankruptcy analogue and duplicates the attributes of that nonbankruptcy analogue. But a lender that forces a bankruptcy proceeding to accelerate a below-market loan may not be faced with a debtor who is terminating its existence." (emphasis in original).

45.     The court in *In re Blanco* recently stated:

The Bankruptcy Code broadly defines the term 'claim' to include any 'right to payment, whether or not such right is fixed, contingent, matured, unmatured

\*\*\*

The broad statutory definition and express inclusion of 'contingent' and 'unmatured' rights to payment fits with how a bankruptcy filing automatically accelerates a debtor's future obligations on and as of the petition date. By collapsing all of a debtor's future payment obligations to the present, the Bankruptcy Code

ensures that all such obligations will be addressed and channeled through the bankruptcy claims process.

*** 

One implication of the broad definition of 'claim' is that rights to payment potentially arising in the future may nevertheless be prepetition general unsecured claims (i.e., debts subject to discharge or treatment in a bankruptcy plan) if the genesis of those rights is a prepetition contract or occurrence.

*In re Blanco*, 649 B.R. 571, 577-578 (Bankr. E.D. Wash. 2023); *See also, Sexton v. Dreyfus*, 219 U.S. 339, 343-345 (1911) ("We take our bankruptcy system from England, and we naturally assume that the fundamental principles upon which it was administered were adopted by us when we copied the system, somewhat as the established construction of a law goes with the words where they are copied by another State. No one doubts that interest on unsecured debts stops. The rule is not unreasonable when closely considered. It simply fixes the moment when the affairs of the bankrupt are supposed to be wound up. If, as in a well-known illustration of Chief Justice Shaw's, (*Parks v. Boston, 15 Pick. 198*, 208), the whole matter could be settled in a day by a pie-powder court, the secured creditor would be called upon to sell or have his security valued on the spot, would receive a dividend upon that footing, would suffer no injustice, and could not complain.") (internal citations omitted).

### E.    EVEN IF THE BANKRUPTCY CODE IMPACTS THE ALLOWANCE OF LOCAL 705 PENSION FUND'S CLAIM IT WOULD NOT BE ON DEBTORS' THEORY

46.    Debtors' expert Mr. Seru appears to suggest that over a hundred years of bankruptcy jurisprudence should be cast to the side and this court should treat pension obligations to be an ongoing obligation of an operating Chapter 11 debtor, measured at borrowing rates for debtor-in-possession financing. *See* Exhibit I. Debtors' expert appears to impose an excessively high and unrealistic borrowing rate for funds to pay pension obligations that would never occur in a liquidating bankruptcy case.

17

47.    Local 705 Pension Fund asserts that discounting is inappropriate as a matter of law, but if permitted, the appropriate discount rate for a liquidating debtor such as Debtors, here, would not be based on borrowing rates for an operating Chapter 11 debtor but based on investment rules under 11 U.S.C. § 345(b), which provide that, absent a court order to the contrary, estate funds should be deposited with an institution whose assets are backed by the full faith and credit of the United States government.

48.    Indeed, the Trustee Handbook for Chapter 7 Trustees states that "[w]hen substantial funds (e.g., $50,000) are received by the estate, which will not be distributed for an extended period of time (e.g., six months), the trustee should consider higher yield investments such as Certificates of Deposit or Treasury Bills. 28 U.S.C. § 586. In general, investments are to be as risk free as possible." Exhibit K, p. 5-8.

49.    These liquidating estates will not be paying annual contributions from borrowed funds but from the proceeds of liquidated assets at some distant point in time. Local 705 Pension Fund has nevertheless credited the Debtors with a 6.75% return on invested assets and offered the Debtors the option of paying the assessed withdrawal liability in a lump sum or amortized over time, "with interest assessed only after the first year at the rate of 7.5 percent per year."

50.    Using an appropriate risk-free rate of return would yield a claim for Local 705 in the range of $18 to 19.7 million as set forth in the Expert Report of William Hrycay, Exhibit G, p. 36. The reason that Local 705 Pension Fund would hold a larger claim is that Local 705 Pension Fund's claim incorporates a 6.75% discount rate based on reasonable returns on its prudently managed, but not risk free, portfolio of investments. In other words, putting bankruptcy courts in the role of deciding investment decisions (as opposed to real world fund managers) may very well result in even larger withdrawal liability claims of pension funds.

18

## CONCLUSION

WHEREFORE, based on the foregoing, the INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 705 PENSION FUND respectfully requests that this Court grant summary judgment in favor of Local 705 Pension Fund and overrule the Debtors' Seventh Omnibus Objection (Substantive) to Withdrawal Liability Claims [Dkt. 2595] and order such other and further relief as this Court deems just and necessary.

Date:   August 23, 2024
        Wilmington, Delaware

SULLIVAN HAZELTINE ALLINSON LLC

/s/ William D. Sullivan
William D. Sullivan (No. 2820)
William A. Hazeltine (No.3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
       whazeltine@sha-llc.com

BAUM SIGMAN AUERBACH & NEUMAN, LTD.

/s/ Stephen J. Rosenblat
Stephen J. Rosenblat (ARDC No. 6204044)
Patrick N. Ryan (ARDC No. 6278364)
200 West Adams Street, Suite 1825
Chicago, IL 60606
Tel: (312) 216-2573
Email: pryan@baumsigman.com
       srosenblat@baumsigman.com

PEDERSEN HOUPT
/s/ John S. Delnero
John S. Delnero (ARDC No. 6195914)
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
Tel: 312-261-2185
jdelnero@pedersenhoupt.com

Counsel for International Brotherhood of Teamsters Local 705 Pension Fund