**EXHIBIT A**

**Chapter 11 Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**JOINT CHAPTER 11 PLAN OF YELLOW CORPORATION AND
ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated:  September 2, 2024
Wilmington, Delaware

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400
Email:           ljones@pszjlaw.com
                 tcairns@pszjlaw.com
                 pkeane@pszjlaw.com
                 ecorma@pszjlaw.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:           patrick.nash@kirkland.com
                 david.seligman@kirkland.com

-and-

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:           allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in
Possession*

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ..................................................................................................................1

    A.    Defined Terms ............................................................................................................1
    B.    Rules of Interpretation .............................................................................................12
    C.    Computation of Time ...............................................................................................13
    D.    Governing Law ........................................................................................................13
    E.    Reference to Monetary Figures ...............................................................................13
    F.    No Substantive Consolidation; Limited Administrative Consolidation ..................13

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS.........................13

    A.    General Administrative Claims ...............................................................................13
    B.    Professional Fee Claims ..........................................................................................14
    C.    Priority Tax Claims ..................................................................................................15

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........15

    A.    Classification of Claims and Interests.....................................................................15
    B.    Treatment of Claims and Interests ..........................................................................16
    C.    Special Provision Governing Unimpaired Claims ..................................................20
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................20
    E.    Subordinated Claims ................................................................................................20
    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes............20
    G.    Intercompany Interests .............................................................................................21
    H.    Controversy Concerning Impairment.......................................................................21

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ..........................................21

    A.    General Settlement of Claims and Interests ............................................................21
    B.    Liquidation Transactions..........................................................................................21
    C.    Third-Party Sale Transactions..................................................................................22
    D.    The Liquidating Trust ..............................................................................................22
    E.    Sources of Consideration for Plan Distributions .....................................................22
    F.    Tax Returns...............................................................................................................22
    G.    Dissolution of the Debtors .......................................................................................22
    H.    Statutory Committee and Cessation of Fee and Expense Payment..........................22
    I.    Cancellation of Securities and Agreements .............................................................23
    J.    Corporate Action......................................................................................................23
    K.    Effectuating Documents; Further Transactions.......................................................23
    L.    Section 1146 Exemption ..........................................................................................23
    M.    Director and Officer Liability Insurance; Other Insurance ......................................24
    N.    Causes of Action ......................................................................................................24
    O.    Section 1145 Exemption ..........................................................................................24

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............25

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ....................25
    B.    Indemnification Obligations.....................................................................................25
    C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.....................25
    D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.................26
    E.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases...........26
    F.    Insurance Policies ....................................................................................................26
    G.    Modifications, Amendments, Supplements, Restatements, or Other Agreements.....................27
    H.    Reservation of Rights ...............................................................................................27
    I.    Nonoccurrence of Effective Date.............................................................................27

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ..................................................27

    A.     Timing and Calculation of Amounts to Be Distributed ..................................27
    B.     Disbursing Agent ..........................................................................................28
    C.     Rights and Powers of Disbursing Agent .......................................................28
    D.     Delivery of Distributions and Undeliverable or Unclaimed Distributions.....28
    E.     Compliance with Tax Requirements ..............................................................29
    F.     Allocations ...................................................................................................29
    G.     Accrual of Postpetition Interest on Certain Claims .......................................29
    H.     Setoffs and Recoupment ...............................................................................29
    I.     No Double Payment of Claims. .....................................................................29
    J.     Claims Paid or Payable by Third Parties .......................................................29

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS .........................................................................................................30

    A.     Allowance of Claims.....................................................................................30
    B.     Claims Administration Responsibilities........................................................31
    C.     Estimation of Claims ....................................................................................31
    D.     Adjustment to Claims or Interests Without Objection ...................................31
    E.     Time to File Objections to Claims ................................................................31
    F.     Disallowance of Claims or Interests .............................................................32
    G.     Amendments to Proofs of Claims or Interests ..............................................32
    H.     No Distributions Pending Allowance.............................................................32
    I.     Distributions After Allowance ......................................................................32

ARTICLE VIII. THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE .......................32

    A.     Liquidating Trust Creation ............................................................................32
    B.     Purpose of the Liquidating Trust...................................................................33
    C.     Transfer of Assets to the Liquidating Trust ..................................................33
    D.     Tax Treatment of the Liquidating Trust ........................................................33
    E.     Exculpation, Indemnification, Insurance, and Liability Limitation ...............34
    F.     Termination of the Liquidating Trust............................................................34
    G.     Securities Exemption ....................................................................................34
    H.     Transfer of Beneficial Interests ....................................................................35
    I.     Termination of the Liquidating Trustee ........................................................35

ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ...............35

    A.     **Release of Liens** ........................................................................................35
    B.     **Releases by the Debtors**..............................................................................36
    C.     **Releases by the Releasing Parties.** .............................................................36
    D.     **Exculpation** ...............................................................................................37
    E.     **Injunction**..................................................................................................37
    F.     Protections Against Discriminatory Treatment.............................................38
    G.     Reimbursement or Contribution ...................................................................38
    H.     Term of Injunctions or Stays.........................................................................39

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN .............................................................................................................................39

    A.     Conditions Precedent to the Confirmation of the Plan...................................39
    B.     Conditions Precedent to the Effective Date ..................................................39
    C.     Waiver of Conditions....................................................................................39
    D.     Effect of Failure of Conditions .....................................................................39

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ....................................40

    A.    Modification and Amendments ...................................................................................................40
    B.    Effect of Confirmation on Modifications ...................................................................................40
    C.    Revocation or Withdrawal of Plan ............................................................................................40

ARTICLE XII. RETENTION OF JURISDICTION ........................................................................................41

ARTICLE XIII. MISCELLANEOUS PROVISIONS ......................................................................................42

    A.    Immediate Binding Effect .........................................................................................................42
    B.    Additional Documents ...............................................................................................................43
    C.    Payment of Statutory Fees ........................................................................................................43
    D.    Reservation of Rights ................................................................................................................43
    E.    Successors and Assigns .............................................................................................................43
    F.    Notices ......................................................................................................................................43
    G.    Entire Agreement ......................................................................................................................45
    H.    Exhibits .....................................................................................................................................45
    I.    Non-Severability of Plan Provisions ........................................................................................45
    J.    Closing of Chapter 11 Cases .....................................................................................................45
    K.    Conflicts ....................................................................................................................................46

**INTRODUCTION**[2]

Yellow Corporation and the above-captioned debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") propose this Plan for the resolution of the outstanding claims against, and equity interests in, the Debtors. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters. Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

*A. Defined Terms*

As used in this Plan, capitalized terms have the meanings given to them below.

1. "***Administrative Claim***" means a Claim against a Debtor arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) ERISA Administrative Claims; and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2. "***Administrative Claims Bar Date***" means the first Business Day that is thirty (30) days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including, without limitation, the Bar Date Order.

3. "***Administrative Claims Objection Bar Date***" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code), which shall be the first Business Day that is 120 days following the Effective Date; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

4. "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

5. "***Agency Agreement***" means that certain auction agent agreement, together with schedules and exhibits attached thereto, approved by the *Order (I) Approving Agency Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., Ironplanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and Ironplanet Canada Ltd. Effective as of October 16, 2023; (II) Authorizing the Sale of Rolling Stock Assets Free and Clear of Liens, Claims, Interests and Encumbrances; and (III) Granting Related Relief* [Docket No. 981], entered by the Bankruptcy Court on October 27, 2023.

6. "***Allowed***" means with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the applicable claims objection

---

[2]   As of the time of Filing of the Plan, the Committee is not supportive of the Plan.

deadline and that is evidenced by a Proof of Claim or Interest, as applicable, Filed or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; or (c) a Claim or Interest that is upheld or otherwise Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith, or (iv) by Final Order of the Bankruptcy Court (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order); *provided* that with respect to a Claim or Interest described in clauses (a) and (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof has been interposed within the applicable period of time fixed in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest, as applicable, shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for Secured Tax Claims or any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be deemed expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, in no event shall any Intercompany Claim be deemed as Allowed for purposes of distributions hereunder. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or such Liquidating Trust, as applicable. [For the avoidance of doubt: (x) the pre-Effective Date Debtors or the Liquidating Trustee, as applicable, shall remain responsible for the allowance of any Allowed General Unsecured Claims; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims and Interests would be allowed under applicable non-bankruptcy law. "Allow," "Allowing," and "Allowance" shall have correlative meanings].

7.    "***Assumed Executory Contracts and Unexpired Leases Schedule***" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, if any, which shall be included in the Plan Supplement and may be amended, modified, or supplemented from time to time in accordance with the terms otherwise set forth herein.

8.    "***Avoidance Actions***" means any and all actual or potential claims or causes of action to avoid a transfer of property or an obligation incurred by the Debtors, including avoidance, recovery, or subordination actions or remedies that may be brought by or on behalf of the Debtors, their Estates, or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 544, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code, or any similar federal, state or common law causes of action, including fraudulent transfer laws.

9.    "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 100–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

10.    "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Delaware.

11.    "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

12.    "***Bar Date Order***" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of an Manner For Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Form and Manner of Notice Thereof* [Docket No. 521] (as the same may be amended,

supplemented, or modified from time to time after entry thereof), entered by the Bankruptcy Court on September 13, 2023.

13.     "***Beneficiaries***" means, each in their capacity as such, Holders of Claims and Interests that are entitled to receive Liquidating Trust Interests in accordance with the Plan.

14.     "***Bidding Procedures***" means the procedures governing the sale and marketing process for the Sale Transaction(s) as approved pursuant to the Bidding Procedures Order.

15.     "***Bidding Procedures Order***" means the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures; (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (as may be modified, amended, or supplemented), entered by the Bankruptcy Court on September 15, 2023.

16.     "***Business Day***" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

17.     "***Canadian Court***" means the Ontario Superior Court of Justice that has requisite jurisdiction over the Canadian Debtors' bankruptcy proceedings.

18.     "***Canadian Debtors***" means YRC Freight Canada Company, YRC Logistics Inc., USF Holland International Sales Corporation, and 1105481 Ontario Inc.

19.     "***Cash***" or "***$***" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

20.     "***Cause of Action***" or "***Causes of Action***" means any actions, Avoidance Actions, Claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, proceedings, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, choate or inchoate, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise.  Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

21.     "***Chapter 11 Cases***" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

22.     "***Claim***" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

23.     "***Claims and Noticing Agent***" means Epiq Corporate Restructuring, LLC in its capacity as claims and noticing agent for the Debtors and any successor, as approved by the *Order (I) Authorizing and Approving the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent and (II) Granting Related Relief* [Docket No. 170].

24.     "***Claims Bar Date***" means, collectively, the date established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims for which the Bankruptcy Court entered an order excluding the Holders of such Claims from the requirement of Filing Proofs of Claim.

25.     "***Claims Register***" means the official register of Claims maintained by the Claims and Noticing Agent.

26.     "***Class***" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

27.     "***Committee***" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on August 16, 2023, as set forth in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 269] and as amended by the *First Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 3430].

28.     "***Committee Members***" means all current and former members of the Committee, including each of the following, in each case solely in their capacity as such: (a) BNSF Railway; (b) Michelin North America, Inc.; (c) Daimler Trucks, N.A.; (d) RFT Logistics LLC; (e) Pension Benefit Guaranty Corporation; (f) International Brotherhood of Teamsters; (g) Central States, Southeast and Southwest Areas Pension Fund; (h) New York State Teamsters Pension and Health Funds; and (i) Mr. Armando Rivera, c/o Raisner Roupinian LLP.

29.     "***Confirmation***" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

30.     "***Confirmation Date***" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

31.     "***Confirmation Hearing***" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code.

32.     "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

33.     "***Consummation***" means the occurrence of the Effective Date as to the applicable Debtor.

34.     "***Convenience Class Claim***" means (a) any Allowed General Unsecured Claim in an amount less than $[25,000] that is not (i) an Administrative Claim, (ii) a Priority Claim, (iii) a Secured Tax Claim, or (iv) an Employee PTO/Commission Claim and (b) any Allowed General Unsecured Claim where a Holder of such Claim elects on its Ballot to treat their Claim as a Convenience Class Claim, including, if applicable, reducing its Allowed General Unsecured Claim to $[25,000][; *provided*, *however*, that no claims asserted by a current or former employee may be a Convenience Class Claim.]3

35.     "***Cure Claim***" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

36.     "***Cure Notice***" means, with respect to an Executory Contract or Unexpired Lease to be assumed under the Plan, a notice that (a) sets forth the proposed amount to be paid on account of a Cure Claim in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed under the

---

3     Subject to Committee review.

Plan; (c) sets forth the procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases, including the proposed objection deadline, and for the resolution by the Bankruptcy Court of any such disputes; and (d) states that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance of the Executory Contract(s) to be assigned, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease.

37.    "***Debtor Release***" means the releases given on behalf of the Debtors and their Estates as set forth in Article IX.B of the Plan.

38.    "***Definitive Document***" means (a) the Confirmation Order; (b) the Sale Transaction Documents; (c) the Agency Agreement; (d) the Bidding Procedures and the Bidding Procedures Order; (e) all material pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related orders), including the first-day pleadings that the Debtors filed with the Bankruptcy Court upon the commencement of the Chapter 11 Cases and all orders sought pursuant thereto; *provided*, that monthly or quarterly operating reports, retention applications, fee applications, fee statements, and any declarations in support thereof or related thereto shall not constitute material pleadings; and (f) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments or other documents reasonably necessary or desirable to consummate and document the transactions contemplated the Plan (including any exhibits, amendments, modifications, or supplements from time to time).

39.    "***DIP Documents***" means any and all agreements governing the Debtors' postpetition debtor-in-possession financing and postpetition use of cash collateral, regardless of whether any obligations thereunder remain outstanding, together with the schedules and exhibits attached thereto, and all security agreements, pledge agreements, related agreements, documents, instruments, and amendments executed and delivered in connection therewith, including any orders of the Bankruptcy Court entered in connection therewith.

40.    "***Disbursing Agent***" means (a) the Liquidating Trustee or (b) the Entity or Entities selected by the Liquidating Trustee to make or facilitate distributions contemplated under the Plan.

41.    "***Disclosure Statement***" means the *Disclosure Statement for the Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to the *Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices In Connection Therewith; and (IV) Certain Dates In Respect Thereto* [Docket No. [●] (as may be modified, amended, or supplemented by further Final Order), entered by the Bankruptcy Court on [DATE].

42.    "***Disputed***" means, with respect to any Claim or Interest, any Claim or Interest that is subject to an objection or request for estimation Filed by any of the Debtors or any other party-in-interest in accordance with applicable law and which objection or request has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court.

43.    "***Distributable Proceeds***" means collectively, (a) all Cash on hand held by the Debtors on and after the Effective Date, (b) net Cash proceeds generated by the, sale, lease, liquidation, or other disposition of Estate property, including Third-Party Sale Transactions, and (c) Cash proceeds generated by the use, sale, lease, liquidation, or other disposition of any property belonging to the Liquidation Trust; *provided* that Distributable Proceeds shall not include (y) Cash necessary to fund the actual and necessary fees and expenses of the Liquidating Trust as set forth in the Liquidating Trust Agreement or (z) any Cash held in the Utilities Adequate Assurance Account or the Professional Fee Escrow Account, except to the extent, following the wind down of the Chapter 11 Cases, any amounts remain in the Utilities Adequate Assurance Account or the Professional Fee Escrow Account.

44.    "***Distribution Date(s)***" means a date(s) on which certain distributions under the Plan are commenced.

45.      "***Distribution Record Date***" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the [Confirmation Date] or such other date as is designated in a Final Order of the Bankruptcy Court.

46.      "***Effective Date***" means, as to the applicable Debtor, the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX of the Plan and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

47.      "***Employee PTO/Commission Claim***" means any Claim arising on account of outstanding obligations owing to the Debtors' current and/or former employees for unpaid vacation or paid time off pay, sick pay, or sales commissions, to the extent such Claim has not already been paid during the Chapter 11 Cases.  For avoidance of doubt, "Employee PTO/Commission Claim" shall not include any other amounts owed or asserted to be owed to current and/or former employees.  "Employee PTO/Commission Claim" shall not mean and does not include Convenience Class Claims, WARN Claims, or ERISA Claims.

48.      "***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code.

49.      "***Equity Liquidating Trust Interests***" means the beneficial interests in the Liquidating Trust that shall entitle Holders of Allowed Interests in Yellow Corporation to receive distributions of Cash pursuant to the Liquidating Trust Agreement.  For the avoidance of doubt, Equity Liquidating Trust Interests shall only receive a distribution of Cash on account of such Equity Liquidating Trust Interest if any Distributable Proceeds remain after Holders of Allowed General Unsecured Claims (including postpetition interest) have been satisfied in full pursuant to the treatment set forth in Article III.B.5 herein.

50.      "***ERISA Administrative Claims***" shall mean ERISA Claims, if any, arising on or after the Petition Date and before the Effective Date relating to post petition employment service rendered for the benefit of the estate for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code as determined by an order of the Bankruptcy Court or as otherwise agreed to by the Debtors and the applicable claimant(s).

51.      "***ERISA Claims***" shall mean Pension Claims and Multiemployer Plan Claims.

52.      "***ERISA General Unsecured Claims***" shall mean ERISA Claims that are not ERISA Administrative Claims or ERISA Priority Claims.

53.      "***ERISA Priority Claims***" shall mean Multiemployer Plan Claims for missed contributions, if any, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code as determined by an order of the Bankruptcy Court or as otherwise agreed to by the Debtors and the applicable claimant(s), which shall be treated as an Other Priority Claim.

54.      "***Estate***" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

55.      "*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such: (a) each of the Debtors; (b) the Committee and each of its respective members (including any *ex-officio* member(s)); and (c) with respect to the Entities in clause (a) and (b), each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

56.      "***Executory Contract***" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

57.    "***Federal Judgment Rate***" means 5.34%, the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

58.    "***File***" or "***Filed***" or "***Filing***" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

59.    "***Final Order***" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

60.    "***General Unsecured Claim***" means any unsecured Claim, other than [Employee PTO/Commission Claims][4] and Convenience Class Claims.  For the avoidance of doubt, General Unsecured Claims shall include ERISA General Unsecured Claims and WARN General Unsecured Claims.

61.    "***Governing Body***" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors, as applicable.  On or after the Confirmation Date, the Debtors shall consult with the Committee and the Participating Equity Interest Holders regarding any changes to the Governing Body.

62.    "***Governmental Bar Date***" means February 5, 2024, at 11:59 p.m. prevailing Eastern Time, which is the date by which Proofs of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the Bar Date Order.

63.    "***Governmental Unit***" has the meaning set forth in section 101(27) of the Bankruptcy Code.

64.    "***GUC Liquidating Trust Interests***" means the beneficial interests in the Liquidating Trust that shall entitle Holders of Allowed General Unsecured Claims to receive distributions of Cash pursuant to the Liquidating Trust Agreement.

65.    "***Holder***" means an Entity holding a Claim against or an Interest in any Debtor.

66.    "***Impaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

67.    "***Intercompany Claim***" means any Claim held by a Debtor or an Affiliate of a Debtor against another Debtor.

68.    "***Intercompany Interest***" means an Interest in a Debtor held by a Debtor or an Affiliate of a Debtor.

69.    "***Interest***" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any

---

[4]    Subject to Committee review.

Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

70.    "*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 519] (as may be modified, amended, or supplemented by further order of the Bankruptcy Court), as entered by the Bankruptcy Court on September 13, 2023.

71.    "*IRS*" means the United States Internal Revenue Service.

72.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

73.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

74.    "*Liquidating Trust Board of Managers*" means a board of three (3) managers appointed by the Debtors to govern the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement.  Prior to the Effective Date, the Debtors shall consult with the Committee and the Participating Equity Interest Holders on the appointment of managers and/or any changes to the Liquidating Trust Board of Managers.

75.    "*Liquidating Trust*" means the trust(s) that shall be established on the Effective Date in accordance with the terms hereof and any Liquidating Trust Agreement; *provided* that, if the Debtors determine an alternative means, such as a post-Effective Date corporate vehicle, will maximize the Estates' value greater than what is accorded in Article VIII herein, the Debtors will evaluate and potentially pursue such alternative through a further Filed Plan.

76.    "*Liquidating Trust Agreement*" means the agreement to be executed as of the Effective Date, establishing the Liquidating Trust pursuant to this Plan, substantially in the form Filed with the Plan Supplement.

77.    "*Liquidating Trust Assets*" means the Distributable Proceeds and such other assets as determined by the Debtors prior to the Effective Date.

78.    "*Liquidating Trust Interests*" means the Equity Liquidating Trust Interests and the GUC Liquidating Trust Interests.

79.    "*Liquidating Trustee*" means the Person designated by the Debtors as such in the Liquidating Trust Agreement.

80.    "*Liquidation Transactions*" means, collectively, those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions, including any Third-Party Sale Transactions, that the Debtors or the Liquidating Trustee reasonably determine to be necessary to implement the Plan.

81.    "*Multiemployer Plan Claims*" means any Claim, including Claims for withdrawal liability (within the meaning of Title IV of the Employee Retirement Income Security Act of 1974, as amended from time to time), relating to any employee benefit plan of the type described in Sections 4001(a)(3) of ERISA or (3)(37) of ERISA relating to multiemployer welfare plans, to which any Debtor makes or is obligated to make contributions or has any liability.

82.    "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim, a Priority Tax Claim, a Convenience Class Claim, or an Employee PTO/Commission Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.  For the avoidance of doubt, Other Priority Claims shall include ERISA Priority Claims, and WARN Priority Claims.

83.    "*Other Secured Claim*" means any Secured Claim that is not a Secured Tax Claim.

84.     "*Participating Equity Interest Holders*" means MFN Partners, LP, Conversant Opportunity Master Fund LP (or it's designee), and Carronade Capital.

85.     "*Pension Claim*" means any Claim arising under Title IV of ERISA relating to the Yellow Retirement Pension Plan, originally effective January 1, 2017, as amended and restated from time to time.

86.     "*Person*" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

87.     "*Petition Date*" means August 6, 2023, the date on which the Debtors commenced the Chapter 11 Cases.

88.     "*Plan*" means this *Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be altered, amended, modified, or supplemented from time to time.

89.     "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed initially by the Debtors no later than the date that is (a) seven days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan or (b) such later date as may be approved by the Bankruptcy Court, and may be further amended thereafter, including the following to the extent applicable: [●].

90.     "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

91.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code that is not otherwise a Secured Tax Claim.

92.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

93.     "*Professional*" means an Entity: (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

94.     "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

95.     "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors at a third-party bank with Cash on the Effective Date in an amount equal to the Professional Fee Escrow Amount.

96.     "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors or their estates as set forth in Article II.B.3 of the Plan.

97.     "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Administrative Claims Bar Date, or the Governmental Bar Date, as applicable.

98.     "*Purchase Agreement*" means, solely with respect to any Third-Party Sale Transaction, the purchase agreement between the applicable Debtors or Liquidating Trust and any Purchaser party thereto.

99.     "*Purchaser*" means one or more Entities that are the purchasers with respect to any Third-Party Sale Transaction.

100.    "*Quarterly Fees*" means any and all fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable.

101.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

102.    "*Related Party*" means, each of, and in each case in its capacity as such, current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.  For the avoidance of doubt, the members of each Governing Body are Related Parties of the Debtors.

103.    "*Released Party*" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Liquidation Trustee, (c) all Holders of Claims; (d) all Holders of Interests; (e) the Committee and its members (including any *ex-officio* member(s)); (f) each current and former Affiliate of each Entity in clause (a) through the following clause (g); and (g) each Related Party of each Entity in clause (a) through clause (f); *provided* that any Holder of a Claim or Interest that opts out of the releases contained in the Plan shall not be a Released Party.

104.    "*Releasing Parties*" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Liquidation Trustee, (c) all Holders of Claims; (d) all Holders of Interests; (e) the Committee and its members (in their capacity as Committee members); (f) each current and former Affiliate of each Entity in clause (a) through the following clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable non-bankruptcy law; and (g) each Related Party of each Entity in clause (a) through clause (f) for which such Affiliate or Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law; *provided,* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the release contained in the Plan; (y) timely objects to the Third-Party Release and such objection is not withdrawn before Confirmation; or (z) is an Entity in a voting class whose solicitation package was returned as undeliverable.

105.    "*Retained Causes of Action*" means any Causes of Action, including any preference claims held by the Debtors arising from severance payments paid to certain former Yellow employees per Article VII.B herein, that vest in the Liquidating Trust, as applicable, on the Effective Date, as listed on the Schedule of Retained Causes of Action.

106.    "*Sale Closing Date*" means, with respect to any Third-Party Sale Transaction consummated prior to the Effective Date, the date upon which such Third-Party Sale Transaction was consummated.

107.    "*Sale Proceeds*" means the net Cash and net non-Cash consideration provided by an Entity in connection with any Third-Party Sale Transaction.

108.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors.

109.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time.

110.    "***Section 510(b) Claim***" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; provided that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.

111.    "***Secured***" means when referring to a Claim: (a) secured by a Lien on collateral in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

112.    "***Secured Tax Claim***" means any Secured Claim that, absent its secured status would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

113.    "***Securities Act***" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

114.    "***Security***" means a security as defined in section 2(a)(1) of the Securities Act.

115.    "***Subsidiary***" of a Person shall mean a corporation, partnership, joint venture, limited liability company or other business entity of which (i) a majority of the shares of securities or other interests having ordinary voting power for the election of directors or other governing body (other than securities or interests having such power only by reason of the happening of a contingency) are at the time beneficially owned of (ii) the management of which is otherwise controlled, directly or indirectly, through one or more intermediaries, or both, by such Person.  Unless otherwise specified, all references herein to a "Subsidiary" or to "Subsidiaries" shall refer to a Subsidiary or Subsidiaries of Yellow Corporation.

116.    "***Tax Code***" means the United States Internal Revenue Code of 1986, as amended.

117.    "***Third-Party Release***" means the release given by the Releasing Parties to the Released Parties as set forth in Article IX.B and Article IX.C of the Plan.

118.    "***Third-Party Sale Procedures***" means [the procedures governing approval and consummation of any Third-Party Sale Transaction that occurs after the Confirmation Date but before the Effective Date.  The Third-Party Sale Procedures shall be an exhibit to the Plan Supplement.]

119.    "***Third-Party Sale Transactions***" means one or more sales or assignments of the Debtors' assets to one or more third parties,

120.    "***Third-Party Sale Transaction Documents***" means the documents setting forth the definitive terms of the Third-Party Sale Transactions (if any), including any Purchase Agreement.

121.    "***Treasury Regulations***" means the regulations promulgated under the Tax Code by the United States Department of the Treasury.

122.    "***U.S. Trustee***" means the Office of the United States Trustee for the District of Delaware.

123.    "***Unexpired Lease***" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

124.    "***Unimpaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

125. "***Utilities Adequate Assurance Account***" means the Adequate Assurance Account as defined in the *Final Order (A)(I) Approving the Debtors' Proposed Adequate Assurance of Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (B) Granting Related Relief* [Docket No. 534], entered by the Bankruptcy Court on September 13, 2023.

126. "***Voting Deadline***" means 4:00 p.m. (prevailing Eastern Time) on [●].

127. "***WARN Act***" means the Worker Adjustment and Retraining Notification Act of 1988, as amended, and any similar state, local, or foreign law, and the rules and regulations promulgated thereunder.

128. "***WARN Claims***" means any claim arising out of liability or obligation under the WARN Act.

129. "***WARN General Unsecured Claims***" means WARN Claims not entitled to priority treatment pursuant to section 507(a) of the Bankruptcy Code, which shall be treated as General Unsecured Claims.

130. "***WARN Priority Claims***" means WARN Claims entitled to priority in right of payment under section 507(a) of the Bankruptcy Code as determined by an order of the Bankruptcy Court or as otherwise agreed to by the Debtors and the applicable claimant(s), which shall be treated as Other Priority Claims.

*B.* *Rules of Interpretation*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.        *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.        *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors or the Liquidating Trust, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Liquidating Trust, as applicable.

E.        *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.        *No Substantive Consolidation; Limited Administrative Consolidation*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors except for the limited purposes set forth herein. The entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the limited consolidation of each of the Debtors, and their respective estates, solely for voting, confirmation, and distribution purposes under the Plan.  This limited consolidation shall not affect (other than for purposes related to funding distributions under the Plan) (a) the legal and organizational structure of the Debtors, (b) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, and (c) distributions out of any insurance policies or proceeds of such policies.

# ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.        *General Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim in an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable

thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Liquidating Trustee, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except with respect to Administrative Claims that are Professional Fee Claims, or subject to section 503(b)(1)(D) of the Bankruptcy Code, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Liquidating Trustee no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Liquidating Trustee and the requesting party by the Administrative Claims Objection Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Liquidating Trust, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or the Liquidating Trust or any notice to or action, order, or approval of the Bankruptcy Court or any other entity. Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors and the requesting party by the Claims. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.    *Professional Fee Claims*

1.    Final Fee Applications for Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders.

2.    Professional Fee Escrow Account and Payment of Professional Fee Claims

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been indefeasibly paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Liquidating Trust.

The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to each such Professional by the Debtors or the Liquidating Trustee, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Liquidating Trustee's obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee

Escrow Account shall promptly be transferred to the Liquidating Trust and constitute Liquidating Trust Assets without any further notice to or action, order, or approval of the Bankruptcy Court.

       3.    <u>Professional Fee Escrow Amount</u>

The Professionals shall provide a reasonable and good-faith estimate of their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account, *provided* that the Liquidating Trustee shall use Cash on hand or from the Liquidating Trust Assets to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

       4.    <u>Post-Confirmation Fees and Expenses</u>

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Professionals. The Debtors shall pay, within ten (10) Business Days after submission of a detailed invoice to the Debtors, with a copy to the Committee (if prior to the Effective Date) or the Liquidating Trustee (if after the Effective Date), such reasonable claims for compensation or reimbursement of expenses incurred by the Professionals. If the Debtors, the Committee or the Liquidating Trustee, as applicable, dispute the reasonableness of any such invoice, the Debtors, the Committee or the Liquidating Trustee, as applicable, or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

*C.*      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

*A.*      *Classification of Claims and Interests*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4A | [Employee PTO/Commission Claims][5] | Unimpaired | [Permitted to Vote (Presumed to Accept)] |
| 4B | Convenience Class Claims | Unimpaired | Permitted to Vote (Presumed to Accept) |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired / Unimpaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Interests | Impaired / Unimpaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| 8 | Interests in Yellow Corporation | Impaired | Entitled to Vote |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.    Class 1 – Secured Tax Claims

 (a)    *Classification*: Class 1 consists of all Secured Tax Claims.

 (b)    *Treatment*: Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, in exchange for such Secured Tax Claim, on the first Distribution Date after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of a Secured Tax Claim shall receive, at the option of the applicable Debtor or Liquidating Trust:

---

[5]    Subject to Committee review.

(i)     payment in full in Cash of such Holder's Allowed Secured Tax Claim, or

(ii)    equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the applicable Debtor or Liquidating Trustee to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

(c)     *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Secured Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.      Class 2 – Other Secured Claims

(a)     *Classification*:  Class 2 consists of all Other Secured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for such Allowed Other Secured Claim, on the first Distribution Date after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Liquidating Trust:

(i)     payment in full in Cash of such Holder's Allowed Other Secured Claim;

(ii)    the collateral securing such Holder's Allowed Other Secured Claim;

(iii)   Reinstatement of such Holder's Allowed Other Secured Claim; or

(iv)    such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

(c)     *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.      Class 3 – Other Priority Claims

(a)     *Classification*:  Class 3 consists of all Other Priority Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for such Allowed Other Priority Claim, on the first Distribution Date after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Other Priority Claim, will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c)     *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.    [Class 4A – Employee PTO/Commission Claims][6]

(a)    *Classification*:  Class 4A consists of all Employee PTO/Commission Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Employee PTO/Commission Claim agrees to less favorable treatment, in exchange for such Allowed Employee PTO/Commission Claim, in one or more distributions (in the Debtors' sole discretion) after the later to occur of (i) the Confirmation Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Employee PTO/Commission Claim, will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided*, that prior to the date of the distribution(s), the Debtors shall give the Holders of Allowed Employee PTO/Commission Claims ten (10) days' notice prior to such distribution(s).

(c)    *Voting*:  Class 4A is Unimpaired under the Plan.  Holders of Employee PTO/Commission Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  [Holders of Employee PTO/Commission Claims are permitted to vote to accept or reject the Plan.]

5.    Class 4B – Convenience Class Claims

(a)    *Classification*:  Class 4B consists of all Convenience Class Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Convenience Class Claim by amount or election agrees to less favorable treatment, in exchange for such Allowed Convenience Class Claim, in one or more distributions (in the Debtors' sole discretion) after the later to occur of (i) the Confirmation Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Convenience Class Claim, will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided*, that prior to the date of the distribution(s), the Debtors shall give the Holders of Allowed Convenience Class Claims ten (10) days' notice prior to such distribution(s); *provided further*, that to the extent that a Holder of an Allowed Convenience Claim against a Debtor holds any joint and several liability claims, guaranty claims, or other similar claims against any other Debtor arising from or relating to the same obligations or liability as such Allowed Convenience Class Claim, such Holder shall only be entitled to a distribution on one Convenience Class Claim against the Debtors in full and final satisfaction of all such Claims.

(c)    *Voting*:  Class 4B is Unimpaired under the Plan.  Holders of Convenience Class Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Convenience Class Claims are permitted to vote to accept or reject the Plan.

6.    Class 5 –General Unsecured Claims

(a)    *Classification*:  Class 5 consists of all General Unsecured Claims

(b)    *Treatment*:  Except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment, in exchange for such General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive (i) its Pro Rata share of the GUC

---

[6]    Subject to Committee review.

Liquidating Trust Interests and as a Beneficiary shall receive, on the applicable Distribution Date, its Pro Rata share of Distributable Proceeds derived from the Liquidating Trust Assets available for distribution on each such Distribution Date as provided under the Plan and Liquidating Trust Agreement, *plus* (ii) if and only to the extent Distributable Proceeds are available after all Allowed General Unsecured Claims are paid in full, in Cash, postpetition interest at the Federal Judgment Rate from the Petition Date through the applicable Distribution Date on which such Allowed General Unsecured Claim is paid.

(c)     *Voting*: Class 5 is Impaired under the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

7.     Class 6 – Intercompany Claims

(a)     *Classification*: Class 6 consists of all Intercompany Claims.

(b)     *Treatment*: Allowed Intercompany Claims, to the extent not assumed pursuant to the terms of the Sale Transaction Documents, shall, at the election of the applicable Debtor, be (a) Reinstated, (b) converted to equity, (c) otherwise set off, settled, distributed, contributed, cancelled, or released, or (d) otherwise addressed at the option of the Liquidating Trustee without any distribution; *provided,* such election shall not adversely affect the treatment provided to Classes 4A, 4B and 5.

(c)     *Voting*: Holders of Intercompany Claims are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

8.     Class 7 – Intercompany Interests

(a)     *Classification*: Class 7 consists of all Intercompany Interests.

(b)     *Treatment*: Allowed Intercompany Interests shall, at the election of the applicable Debtor, be (a) Reinstated or (b) set off, settled, addressed, distributed, contributed, merged, cancelled, or released, or (c) otherwise addressed at the option of the Liquidating Trustee without any distribution; *provided, however*, such election shall not adversely affect the treatment provided to Classes 4A, 4B, and 5.

(c)     *Voting*: Holders of Intercompany Interests are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

9.     Class 8 – Interests in Yellow Corporation

(a)     *Classification*: Class 8 consists of all Interests in Yellow Corporation

(b)     *Treatment*: If and only to the extent Distributable Proceeds are available after all Allowed General Unsecured Claims are paid in full, including postpetition interest, except to the extent that a Holder of an Interest in Yellow Corporation agrees to less favorable treatment, in exchange for such Interest in Yellow Corporation, each Holder of an Interest in Yellow Corporation shall receive its Pro Rata share of the Equity Liquidating Trust Interests and as a Beneficiary shall receive, on the applicable Distribution Date, their Pro Rata share of Distributable Proceeds derived from the Liquidating Trust Assets available for distribution

on each such Distribution Date as provided under the Plan and Liquidating Trust Agreement.

    (c)    *Voting:*  Class 8 is Impaired under the Plan.  Holders of Interests in Yellow Corporation are entitled to vote to accept or reject the Plan.

    10.    <u>Class 9 – Section 510(b) Claims</u>

    (a)    *Classification:*  Class 9 consists of all Section 510(b) Claims.

    (b)    *Allowance:*  Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.  The Debtors are not aware of any valid Section 510(b) Claim and believe that no such Section 510(b) Claim exists.

    (c)    *Treatment*:  Allowed Section 510(b) Claims, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.

    (d)    *Voting:*  Class 9 is Impaired under the Plan.  Holders (if any) of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders (if any) are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

    Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors', the Liquidating Trust's, or any other party's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

    Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B herein.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XI herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.    *Subordinated Claims*

    Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Liquidating Trustee reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.    *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

    Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the

Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

G.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and in exchange for the Debtors' and Liquidating Trustee's agreement under the Plan to provide management services to certain other Debtors, to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors to the Holders of certain Allowed Claims.

H.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, to the extent provided by the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and Causes of Action, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.      *Liquidation Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Liquidating Trustee shall take all actions as may be necessary or appropriate to effectuate the Liquidation Transactions, including, without limitation: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Liquidation Transactions; (e) all transactions necessary to provide for the purchase of some or all of the assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

C.      *Third-Party Sale Transactions*

On or after the Confirmation Date, the Debtors and the Purchasers, shall be authorized to take all actions as may be deemed necessary or appropriate to consummate any Third-Party Sale Transactions pursuant to the terms of the Plan, the Third-Party Sale Procedures, any Third-Party Sale Transaction Documents, and the Confirmation Order, and any such Third-Party Sale Transactions shall be free and clear of any Liens, Claims, Interests, and encumbrances pursuant to sections 363 and 1123 of the Bankruptcy Code as of the earlier of (i) the Sale Closing Date and (ii) the Effective Date.  For the avoidance of doubt, the Debtors' leased real estate properties incapable of being assigned or subleased without unconditional landlord consent shall be subject to the Third-Party Sale Transactions effectuated by the Debtors prior to the Effective Date and such leased real estate properties shall not be transferred to the Liquidating Trust on or after the Effective Date; *provided* that the Cash proceeds resulting from the Third-Party Sale Transactions of the leased real estate properties shall be transferred to the Liquidating Trust on the Effective Date.  Certain of the Debtors' rolling stock assets and the owned real estate properties not subject to the Third-Party Sale Transactions prior to the Effective Date shall be irrevocably transferred to the Liquidating Trust pursuant to Article IV.D herein.  Neither the Purchaser nor any of its Affiliates shall be deemed to be a successor of the Debtors.

D.      *The Liquidating Trust*

On the Effective Date, the Debtors, on their own behalf and on behalf of the Beneficiaries, and the Liquidating Trustee shall execute the Liquidating Trust Agreement and take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement and Article VIII of this Plan.  On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust all of their rights, title, and interests in all of the Liquidating Trust Assets and any other assets remaining in the Debtors on the Effective Date, if any, and in accordance with Section 1141 of the Bankruptcy Code, the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances or interests, subject to the terms of the Liquidating Trust Agreement.

E.      *Sources of Consideration for Plan Distributions*

The Distributable Proceeds shall be used to fund the distributions to Holders of Allowed Claims against the Debtors and, if applicable, Holders of Interests in Yellow Corporation in accordance with the treatment of such Claims and Interests and subject to the terms provided herein.

F.      *Tax Returns*

After the Effective Date, the Liquidating Trustee shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

G.      *Dissolution of the Debtors*

On or as soon as reasonably practicable after the Effective Date, the Debtors shall be disposed of, dissolved, wound down, or liquidated under applicable Law without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

H.      *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with (a) applications for compensation and objections thereto and (b) any appeals of the Confirmation Order.  The Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with (a) applications for payment of any fees or expenses for services rendered prior to the Effective Date that are Allowed by

the Bankruptcy Court; (b) objections to applications for payment of fees and expenses rendered prior to the Effective Date; and (c) appeals of the Confirmation Order.

I.      *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under any loan document and any other certificate, Security, share, note, bond, indenture, credit agreement, purchase right, option, warrant, or other instrument, agreement or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except (i) such certificates, notes, or other instruments, agreements or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan and (ii) any indemnification obligations set forth in Article V.B hereof) shall be cancelled as to the Debtors and their affiliates, and the Debtors and the Liquidating Trust shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, credit agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, credit agreements, purchase rights, options, warrants, or other instruments, agreements, or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; *provided* that nothing in this Article IV.I shall alter, modify, or affect the treatment provided to Interests in Yellow Corporation set forth in Article III.B.9. Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

J.      *Corporate Action*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (1) the implementation of the Liquidation Transactions; (2) the establishment of the Liquidating Trust and execution of the Liquidating Trust Agreement; (3) the funding of all applicable escrows and accounts; and (4) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date); *provided* that, with respect to any Third-Party Sale Transactions consummated prior to the Effective Date, all actions necessary to consummate such Third-Party Sale Transaction in accordance with the terms of Third-Party Sale Procedures shall be deemed authorized and approved by the Bankruptcy Court as of the Sale Closing Date applicable to such Third-Party Sale Transaction.  The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law.

K.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidating Trustee may issue, execute, deliver, file, or record such contracts, Securities (debt and/or equity), instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Confirmation Order, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

L.      *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Liquidating Trust, or to any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Liquidating Trust; (2) any Third-Party Sale Transaction; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection

with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

M.    *Director and Officer Liability Insurance; Other Insurance*

On or before the Effective Date, the Debtors shall maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement. Reasonable directors and officers insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

Any directors and officers insurance policies shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Liquidating Trust effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under any such policies shall remain available to all individuals within the definition of "Insured" in any such policies.

In addition, on and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any directors and officers insurance policy in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions on or after the Effective Date, in each case, to the extent set forth in such policies.

N.    *Causes of Action*

The Confirmation Order shall constitute full and complete authority for the Debtors and Liquidating Trustee to take all other actions that may be necessary, useful or appropriate to consummate the Plan and the Third-Party Sale Transaction(s) without any further judicial or corporate authority, subject to the terms herein and the Third-Party Sale Procedures, as applicable. Retained Causes of Action shall initially remain with the Debtors and shall immediately vest with the Liquidating Trust as of the Effective Date.

O.    *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code and, to the extent that section 1145 of the Bankruptcy Code is inapplicable, section 4(a)(2) of the Securities Act, the issuance of any Interests pursuant to the Plan is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable United States, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security. As long as the exemption to registration under section 1145 of the Bankruptcy Code is applicable, any securities or other interests issued pursuant to the Plan are not "restricted securities" (as defined in rule 144(a)(3) under the Securities Act) and are freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Liquidating Trust (as defined in rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected, shall be deemed automatically rejected, unless such Executory Contract or Unexpired Lease: (1) is identified on an Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is a Third-Party Sale Transaction Document; or (6) is to be assumed by the Debtors and assigned in connection with a Third-Party Sale Transaction and pursuant to the Third-Party Sale Transaction Documents.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Third-Party Sale Transaction Documents to assume and assign Executory Contracts and Unexpired Leases pursuant to the Third-Party Sale Transaction Documents. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Liquidating Trustee. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Liquidating Trust in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

Notwithstanding anything to the contrary in the Plan or the Third-Party Sale Transaction Documents, the Debtors reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule in the Plan Supplement. The Debtors shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby. For the avoidance of doubt, this Article V relates to Executory Contracts or Unexpired Leases other than such agreements previously assumed, assumed and assigned, or rejected.

B.      *Indemnification Obligations.*

Subject to the occurrence of the Effective Date, to the fullest extent permitted by applicable law, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action under any indemnification provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Liquidating Trust, which shall be deemed to have assumed the obligation, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of service of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Liquidating Trust and the Holder of such Claim.

*D.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an assumed Executory Contract or Unexpired Lease, as reflected on the Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Liquidating Trust or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption or assumption and assignment and proposed amounts of Cure Claims to the applicable third parties.  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment or related cure amount must be Filed, served, and <u>actually</u> <u>received</u> by the Debtors at least seven days before the Confirmation Hearing.**  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment or cure amount will be deemed to have assented to such assumption or assumption and assignment and cure amount.  Notwithstanding anything herein to the contrary, in the event that any Executory Contract or Unexpired Lease is removed from the Rejected Executory Contracts and Unexpired Leases Schedule after such 14-day deadline, a Cure Notice of proposed assumption or assumption and assignment and proposed amounts of Cure Claims with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider whether such Executory Contract or Unexpired Lease can be assumed or assumed and assigned.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors may remove such Executory Contract or Unexpired Lease from the Assumed Executory Contracts and Unexpired Leases Schedule, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary (solely to the extent agreed between the Debtors and the counterparty to an applicable Executory Contract or Unexpired Lease), including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

*E.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Liquidating Trust, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Liquidating Trust expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

*F.      Insurance Policies*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Liquidating Trust.  For the avoidance of doubt, this Article V.F does

not apply to insurance policies or any agreements, documents, or instruments relating thereto that were transferred in any Third-Party Sale Transaction.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Leases Schedule, or any other exhibit, schedule or annex, nor anything contained in the Plan or Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Liquidating Trust has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidating Trust, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Timing and Calculation of Amounts to Be Distributed*

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

1.      <u>Initial Distribution Date</u>.

On the Effective Date, or as soon as reasonably practicable thereafter, the Disbursing Agent shall commence distributions under the Plan on account of each Claim that is Allowed on or prior to the Effective Date.

2.      <u>Subsequent Distribution Dates</u>.

The Liquidating Trustee shall identify, in his or her discretion and in accordance with the Liquidating Trust Agreement, Distribution Dates for the purpose of making additional distributions under the Plan.  On each such

Distribution Date, the Liquidating Trustee shall direct the Disbursing Agent to make distributions in accordance with the Plan and Liquidating Trust Agreement.

**B.**     *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust.

**C.**     *Rights and Powers of Disbursing Agent*

1.     Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and the Confirmation Order; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or the Confirmation Order, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof; *provided, however,* that the Debtors or the Liquidating Trustee, as applicable, shall maintain the Claims Register.

2.     Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Liquidating Trust.

**D.**     *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.     Record Date for Distributions.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim, other than one based on a publicly traded Security, is transferred twenty (20) or fewer days before the Distribution Record Date, distributions shall be made to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.     Delivery of Distributions

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims (as applicable) at the address for each such Holder as indicated on the Debtors' records as of the Distribution Date; *provided* that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.     Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $[100] in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article IX and its Holder is forever barred pursuant to Article VII from asserting that Claim against the Debtors or their respective property.

4.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of an Allowed Claim (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date of the initial attempted distribution. After such date, all unclaimed property or interests in property shall revert to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property in property shall be discharged and forever barred.

E.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors and the Liquidating Trust, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Liquidating Trust, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

F.      *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of the Claims, including any Claims for accrued but unpaid interest.

G.      *Accrual of Postpetition Interest on Certain Claims*

Unless otherwise provided in the Plan, to the extent that postpetition interest accrues on an Allowed Employee PTO/Commission Claim, an Allowed Convenience Class Claim, or an Allowed General Unsecured Claim pursuant to Article III.B, such postpetition interest shall accrue at the Federal Judgment Rate on any unpaid balance of such Allowed Claim from the Petition Date through the applicable Distribution Date on which such Allowed Claim is paid; [*provided* that, to the extent that a Disputed Claim becomes an Allowed Claim on which postpetition interest accrues pursuant to Article III.B, postpetition interest shall accrue at the Federal Judgment Rate on such Allowed Claim as if such Allowed Claim had been an Allowed Claim that received a distribution on each Distribution Date previously made to Holders of the Allowed Claims classified in the applicable Class.]

H.      *Setoffs and Recoupment*

Except as expressly provided in this Plan, the Liquidating Trust may, pursuant to section 553 of the Bankruptcy Code, setoff and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Liquidating Trust may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Liquidating Trust and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust or its successor of any and all claims, rights, and Causes of Action that the Liquidating Trust or its successor may possess against the applicable Holder. Notwithstanding anything to the contrary herein, in no event shall any Holder of a Claim be entitled to setoff any such Claim against any purchaser following consummation of the Sale Transaction.

*I.    No Double Payment of Claims.*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims. No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

*J.    Claims Paid or Payable by Third Parties*

1.    <u>Claims Paid by Third Parties</u>

The Debtors or the Liquidating Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Liquidating Trust, provided that the Debtors or the Liquidating Trustee, as applicable shall provide notice of such reduction to the Holder of such Claim. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trust on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor or the Liquidating Trust, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or the Liquidating Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.    <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers satisfies in full or in part a Claim, then immediately upon such insurers' satisfaction of such Claim, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further action, order, or approval of the Bankruptcy Court, provided that notice of such satisfaction is served by the Debtors or the Liquidating Trustee, as applicable on the Holder of such Claim.

3.    <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

*A.    Allowance of Claims*

After the Effective Date, the Liquidating Trust and the Liquidating Trustee shall have and retain any and all rights and defenses held by the Debtors with respect to any Claim or Interest immediately before the Effective Date. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan or the Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the primary authority:  (1) to File, withdraw, or litigate judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  Except as otherwise provided herein, from and after the Effective Date, the Liquidating Trust shall have and retain any and all rights and defenses held by the Debtors immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Retained Causes of Action pursuant to Article IV.N of the Plan.

For the avoidance of doubt, from and after the Effective Date, the Liquidating Trust shall have and retain any and all rights and defenses held by the Debtors immediately prior to the Effective Date with respect to preference claims arising from severance payments (not then owing prior to the Petition Date) the Debtors' made to certain former employees of the Debtors that did not sign an applicable release with the Debtors.  Those certain payments were preferential and were intended to serve as consideration for releases.  All Debtor employees who did not sign such releases owe the severance payments back, as those employees provided no consideration for the payments, and the Debtors or the Liquidating Trust, as applicable, hold preferences claims against all such persons.

The Debtors up to the Effective Date, and the Liquidating Trust on and after the Effective Date, shall be responsible and obligated to maintain the Claims Register, to administer and adjust the Claims Register in regard to allowance of Claims.  The Debtors or the Liquidating Trust, as applicable, maintain the retention of the Claims and Noticing Agent.

C.      *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, may (but shall not be required to) at any time request that the Bankruptcy Court estimate the amount of any Claim pursuant to applicable law, including, without limitation pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim or Interest, such estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Liquidating Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims or Interests Without Objection*

Any Claim or Interest that has been paid or satisfied may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Liquidating Trustee after notice to the Holder of such Claim (or such Holder's known counsel), but without any further notice to or action, order or approval of the Bankruptcy Court; *provided*, that the Liquidating Trustee shall file a notice of satisfaction or other pleading evidencing such satisfactions and serve the same on the Holders of such Claims, or seek an order of the Bankruptcy Court with respect to the same, upon notice to the Holders of such Claim or Interest.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (1) one-hundred eighty (180) days after the Effective Date and (2) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court, subject to a notice and objection period, for objecting to such Claims.  For the avoidance of doubt,

Administrative Claims are subject to the Administrative Claims Objection Bar Date and the period of limitation set forth herein shall not apply to Administrative Claims.

F.      *Disallowance of Claims or Interests*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Liquidating Trust. All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan after notice to the Holder of such Claim, but without any further notice to or action, order, or approval of the Bankruptcy Court.

G.      *Amendments to Proofs of Claims or Interests*

On or after the applicable bar date, a Proof of Claim or Interest may not be Filed or amended without the prior written authorization of the Bankruptcy Court or the applicable Debtor or Liquidating Trustee, as applicable. Absent such authorization, any new or amended Claim or Interest Filed after the applicable bar date shall be deemed disallowed in full and expunged without any further action by the Debtor or Liquidating Trustee, as applicable.

H.      *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan or the Confirmation Order, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan and the Confirmation Order. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
## THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE

A.      *Liquidating Trust Creation*

**To the extent that the Debtors determine that an alternative means to the Liquidating Trust, such as a post-Effective Date corporate vehicle, will maximize the Estate's value greater than what is accorded under this Article VIII, the Debtors shall evaluate and potentially pursue such alternative means through a further Filed Plan.**

On the Effective Date, a Liquidating Trust shall be established and become effective for the benefit of the Beneficiaries. The Liquidating Trust Agreement shall (i) be in form and substance consistent in all respects with this Plan and be reasonably acceptable to the Debtors, and (ii) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidating Trust as a grantor trust and the Beneficiaries as the grantors and owners thereof for federal income tax

purposes. All relevant parties (including the Debtors, the Liquidating Trustee, and the Beneficiaries) will take all actions necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust. The powers, authority, responsibilities, and duties of the Liquidating Trust and the Liquidating Trustee are set forth in and will be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

B.      *Purpose of the Liquidating Trust*

The Liquidating Trust will be established for the primary purpose of maximizing the value of its assets and making distributions in accordance with the Plan, Confirmation Order, and the Liquidating Trust Agreement, including resolving any Disputed Claims not to be resolved by the Debtors prior to the Effective Date. The Liquidating Trust will have no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

C.      *Transfer of Assets to the Liquidating Trust*

The Debtors and the Liquidating Trustee will establish the Liquidating Trust on behalf of the Beneficiaries pursuant to the Liquidating Trust Agreement, with the Beneficiaries to be treated as the grantors and deemed owners of the Liquidating Trust Assets. The Debtors will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Beneficiaries, all of their rights, title, and interests in the Liquidating Trust Assets. The Liquidating Trust will accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Beneficiaries, subject to the Plan and the Liquidating Trust Agreement.

On the Effective Date, all Liquidating Trust Assets will vest and be deemed to vest in the Liquidating Trust in accordance with section 1141 of the Bankruptcy Code or as otherwise set forth in the Liquidating Trust Agreement; *provided*, *however*, that the Liquidating Trustee may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust. Any assets the Liquidating Trust so abandons or otherwise does not accept shall not vest in the Liquidating Trust. As of the Effective Date, all Liquidating Trust Assets vested in the Liquidating Trust shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order. Upon the transfer by the Debtors of the Liquidating Trust Assets to the Liquidating Trust or abandonment of Liquidating Trust Assets by the Liquidating Trust, the Debtors will have no reversionary or further interest in or with respect to any Liquidating Trust Assets or the Liquidating Trust. Notwithstanding anything herein to the contrary, the Liquidating Trust and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

D.      *Tax Treatment of the Liquidating Trust*

It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Section 671 through 677 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trust shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust. The Liquidating Trust Assets shall be deemed for U.S. federal income tax purposes to have been distributed by the Debtors or the Liquidating Trustee, as applicable, to the Beneficiaries, and then contributed by the Beneficiaries to the Liquidating Trust in exchange for their respective interests in the Liquidating Trust. All Holders shall use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trust for all federal income tax purposes, which determination shall be made as soon as reasonably practicable following the Effective Date. The Beneficiaries of the Liquidating Trust (or their direct or indirect owners, as required under applicable tax law) will be treated as the grantors of the Liquidating Trust. The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, local, and non-U.S. tax purposes. Further, the Liquidating Trust is intended to comply with the conditions and the requirements set forth in Rev. Proc. 94-45, 1994-2 C.B. 684.

Allocations of taxable income with respect to the Liquidating Trust shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed

all of its other assets (valued for this purpose at their tax book value) to the Beneficiaries, taking into account all prior and concurrent distributions. Similarly, taxable losses of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets. The tax book value of the assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired, adjusted in either case in accordance with tax accounting principles prescribed by applicable tax law.

To the extent the Liquidating Trust is determined to incur any tax liability (including any withholding for any reason), it shall be entitled to liquidate the Liquidating Trust Assets to satisfy such tax liability.

The Liquidating Trust will not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement. In addition, the Liquidating Trust may request an expedited determination of Taxes of the Debtors or of the Liquidating Trust under Bankruptcy Code section 505(b) for all returns filed for, or on behalf of, the Debtors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

With respect to any of the assets of the Liquidating Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust, the Debtors intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

E.    *Exculpation, Indemnification, Insurance, and Liability Limitation*

The Liquidating Trustee and all professionals retained by the Liquidating Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Liquidating Trust. The Liquidating Trustee may obtain and maintain, at the expense of the Liquidating Trust, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Liquidating Trust, including customary insurance coverage for the protection of Entities serving as administrators and overseers of the Liquidating Trust on and after the Effective Date, including for the avoidance of doubt, the Liquidating Trust Board of Managers. The Liquidating Trustee may rely upon written information previously generated by the Debtors.

F.    *Termination of the Liquidating Trust*

The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (1) all of the Liquidating Trust Assets have been liquidated or abandoned, (2) all duties and obligations of the Liquidating Trustee hereunder have been fulfilled, (3) all distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made, and (4) the Chapter 11 Cases of the Debtors have been closed, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Liquidating Trustee within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the liquidation, recovery and distribution of the Liquidating Trust Assets.

G.    *Securities Exemption*

The Liquidating Trust Interests to be distributed to the Beneficiaries pursuant to the Plan shall not constitute "securities" under applicable law. The Liquidating Trust Interests shall not be transferrable (except under limited

circumstances set forth in the Liquidating Trust Agreement) and shall not have consent or voting rights or otherwise confer on the Beneficiaries any rights similar to the rights of stockholders of a corporation in respect of actions to be taken by the Liquidating Trustee in connection with the Liquidating Trust (except as otherwise provided in the Liquidating Trust Agreement). To the extent the Liquidating Trust Interests are considered "securities" under applicable law, the issuance of such interests satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act and any state or local law requiring registration. To the extent any "offer or sale" of Liquidating Trust Interests may be deemed to have occurred, such offer or sale is under the Plan and in exchange for Claims against or Interests in one or more of the Debtors, or principally in exchange for such Claims or Interests and partly for cash or property, within the meaning of section 1145(a)(1) of the Bankruptcy Code.

### H.     Transfer of Beneficial Interests

Notwithstanding anything to the contrary in the Plan, the Liquidating Trust Interests shall not be transferrable except upon death of the interest holder or by operation of law.

### I.     Termination of the Liquidating Trustee

The duties, responsibilities, and powers of the Liquidating Trustee will terminate in accordance with the terms of the Liquidating Trust Agreement.

## ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.     **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or Confirmation Order, immediately following the making of all distributions to be made to an applicable Holder pursuant to the Plan and, in the case of a Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.2 hereof, on the Effective Date (or the Sale Closing Date with respect to assets that are transferred by a Debtor under a Third-Party Sale Transaction), all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Liquidating Trustee to evidence the release of such Lien and/or security interest, including the execution, delivery, and Filing or recording of such releases. The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**If any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan or the Confirmation Order, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Liquidating Trustee that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.**

B.      *Releases by the Debtors*

Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, the Liquidating Trust, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Trust, or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, the Liquidating Trust, or other Entity, or that any Holder of any Claim against or Interest in a Debtor, the Liquidating Trust, or other Entity could have asserted on behalf of the Debtors or the Liquidating Trust, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Liquidating Trust (including the Debtors' and the Liquidating Trust's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Liquidating Trust and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Liquidating Trust, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors or the Liquidating Trust), intercompany transactions between or among a Debtor, or an affiliate of a Debtor and another Debtor, or the Liquidating Trust, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, the DIP Documents and any other Definitive Document or any Liquidation Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (2) any matters retained by the Debtors and the Liquidating Trust pursuant to the Schedule of Retained Causes of Action.

C.      *Releases by the Releasing Parties.*

Except as otherwise expressly set forth in this Plan or the Confirmation Order, effective as of the Effective Date, to the fullest extent permitted by applicable law, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Trust, or the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors or the Liquidating Trust (including the Debtors' and the Liquidating Trust's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the

business or contractual arrangements between any Debtor or the Liquidating Trust and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Liquidating Trust, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors or the Liquidating Trust), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, the DIP Documents, and any other Definitive Document or any Liquidation Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (2) the rights of any Holder of Allowed Claims or Interests, if applicable, to receive distributions under the Plan.

D.    *Exculpation*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each Exculpated Party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Third-Party Sale Transactions, the Plan, the Plan Supplement, any other Definitive Document, or any Liquidation Transaction, or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Third-Party Sale Transactions, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

E.    *Injunction*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors and the Liquidating Trust, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any

manner or means of any judgment, award, decree, or order; (c) creating, perfecting or enforcing any encumbrance of any kind; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.  All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims or Causes of Action that (x) have been released in this Plan (the "Released Claims") or (y) that are subject to exculpation (the "Exculpated Claims"), shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iv) asserting any right of subrogation on account of or in connection with or with respect to the Released Claims and Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or (v) commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Released Claims and Exculpated Claims; *provided*, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases.  Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article IX.E.

F.    *Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Liquidating Trust or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Liquidating Trust, or another Entity with whom the Liquidating Trust has been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

G.    *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

*H.*     *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**ARTICLE X.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

*A.*     *Conditions Precedent to the Confirmation of the Plan*

It shall be a condition precedent to the Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C hereof:

1.     The Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance reasonably acceptable to the Committee; and

2.     The Bankruptcy Court shall have entered a Confirmation Order with respect to the Plan that shall:

(a)     authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including the Third-Party Sale Transactions;

(b)     decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

(d)     contain the release, injunction, and exculpation provisions contained in this Plan.

*B.*     *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C hereof:

1.     the Plan, the Disclosure Statement, and all other documents contained in any Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto or other documents contained therein, shall be in full force and effect;

2.     the Confirmation Order shall have been duly entered and remain in full force and effect;

3.     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan, which includes the Canadian Court entering an order recognizing the Confirmation Order for certain of the Debtors organized under the laws of Canada;

4.     the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

5.    the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtors; and

6.    the Debtors shall have implemented all transactions contemplated herein, in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors.

C.      *Waiver of Conditions*

The conditions to Confirmation and to Consummation set forth in Article X may be waived by the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders, or any other Entity in any respect.  Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Third-Party Sale Transactions or the revocation of the Debtors' authority under the Third-Party Sale Transaction Documents to consummate such Third-Party Sale Transaction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Except as otherwise specifically provided in the Plan or the Confirmation Order, the Debtors reserve the right, to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, if permissible under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided*, *however*, that the Debtors shall not amend or modify the Plan in a manner that adversely affects the treatment of any Class of Claims and/or Interests without resoliciting such Class of Holders of Claims or Interests.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof, but before entry of the Confirmation Order, are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:

(a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, any Holder, or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to (for the avoidance of doubt, notwithstanding whether such treatment arises under the terms of the Plan or the Third-Party Sale Transaction Documents):  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Liquidating Trustee amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits or disputes that may arise in connection with the interpretation of the Third-Party Sale Transaction Documents;

10.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

13.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.     enter an order or final decree concluding or closing any of the Chapter 11 Cases;

17.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Liquidating Trust Agreement, or the Third-Party Sale Transaction Documents, including disputes arising under agreements, documents, or instruments executed in connection therewith;

21.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article IX;

23.     enforce all orders previously entered by the Bankruptcy Court; and

24.     hear any other matter over which the Court has jurisdiction under the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

*A.     Immediate Binding Effect*

Subject to Article X.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trust, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan,

each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Liquidating Trustee (subject to the terms of the Liquidating Trust Agreement), as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees*

Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Liquidating Trust, or any entity making disbursements on behalf of any the Liquidating Trust, or making disbursements on account of an obligation of any Debtor or the Liquidating Trust (each, a "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Liquidating Trust, on behalf of itself or any entity making disbursements on behalf of the Liquidating Trust, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, the Liquidating Trust and the Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

D.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

E.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    *Notices*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing. Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed to the following:

1.    If to the Debtors, to:

Yellow Corporation
11500 Outlook Street, Suite 400
Overland Park, Kansas 66211.
Attention:        Yellow Legal
Email address:    legal@myyellow.com

43

with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
Kirkland & Ellis International LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Attention:        Patrick J. Nash Jr., P.C.
                     David Seligman, P.C.
Email address:  patrick.nash@kirkland.com
                     david.seligman@kirkland.com

-and-

Kirkland & Ellis LLP
Kirkland & Ellis International LLP
601 Lexington Avenue
New York, New York 10022
Attention:        Allyson B. Smith
Email address:  allyson.smith@kirkland.com

-and-

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Attention:        Laura Davis Jones
                     Timothy P. Cairns
                     Peter J. Keane
                     Edward Corma
Email address:  ljones@pszjlaw.com
                     tcairns@pszjlaw.com
                     pkeane@pszjlaw.com
                     ecorma@pszjlaw.com

2.   <u>If to the Committee, to:</u>

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Attention:        Philip C. Dublin
                     Meredith A. Lahaie
                     Kevin Zuzolo
Email address:  pdublin@akingump.com
                     mlahaie@akingump.com
                     kzuzolo@akingump.com

-and-

Benesch, Friedlander, Coplan, Aronoff LLP
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Attention:        Jennifer R. Hoover
                     Kevin M. Capuzzi
                     John C. Gentile
Email address:  jhoover@beneschlaw.com
                     kcapuzzi@beneschlaw.com
                     jgentile@beneschlaw.com

3.   If to the United States Trustee, to:

> Office of the United States Trustee
> for the District of Delaware,
> 844 King Street, Suite 2207
> Wilmington, Delaware 19801
> Attention:        Jane Leamy
>                   Richard Shepacarter
> Email address:   Jane.M.Leamy@usdoj.gov
>                   richard.shepacarter@usdoj.gov

After the Effective Date, the Liquidating Trustee may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests, *provided* that the Notice of the Effective Date discloses that Entities who wish to continue to receive service of filings must file a renewed request for service under Bankruptcy Rule 2002.

G.     *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.     *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims and Noticing Agent at https://dm.epiq11.com/YellowCorporation or the Bankruptcy Court's website at https://www.deb.uscourts.gov/.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.     *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

J.     *Closing of Chapter 11 Cases*

The Liquidating Trustee shall, promptly after the full administration of each of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 or by Local Rule 3002-1, including the motion required by Local Rule 3002-1, and any applicable order necessary to close any of the Chapter 11 Cases.

K.    *Conflicts*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

Yellow Corporation


By:      */s/ Matthew Doheny*
Name:   Matthew Doheny
Title:    Chief Restructuring Officer, Yellow        Corporation.