**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*, | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 4462** |

**<u>PRELIMINARY OBSERVATIONS</u>**

In a September 13, 2024 Memorandum Opinion, this Court concluded that it would reject a challenge, asserted by the debtors and certain holders of equity interests in the debtor, to two regulations issued by the Pension Benefit Guaranty Corporation. Those regulations bear on the calculation of the debtors' liability to various multi-employer pension plans on account of the debtors' withdrawal from those plans.[1]

Though the Court rejected their arguments, the challengers raised two particularly colorable points. The *first* argument is that the relevant statute authorizes the PBGC to "impose, by regulation or other guidance, *reasonable conditions on an eligible multiemployer plan* that receives special financial assistance relating to … withdrawal liability."[2] The challengers argued that the regulations at issue, whose net effect was to increase the withdrawal liability employers owed the plans upon withdrawal, could not be described as a "condition" that was being "impose[d]" on the "plan." *Second*, the challengers suggest that the regulations

---

[1] *See* D.I. 4326. The Pension Benefit Guaranty Corporation is referred to as the "PBGC."

[2] 29 U.S.C. § 1432(m) (emphasis added).

conflict with statutory language that could be read to suggest that the special financial assistance provided by the federal statute is an "asset" of the plan.

These preliminary observations are directed to the first of those two points. During the oral argument on the summary judgment motion, based on the Court's review of the arguments advanced by counsel, the Court was receptive to the contention that these regulations were better viewed as conditions on *employers* than conditions on the *plans*.[3]   While the Court did not find the arguments advanced by the plans or the PBGC on this point to be fully satisfactory, the Court ultimately upheld the regulations for a reason that differed somewhat from the parties' arguments.

In its Memorandum Opinion, the Court analogized the statutory grant of authority to the PBGC, which allowed it to impose conditions on the plans' receipt of federal funds, to Congress' Spending Clause Power, which similarly grants authority to impose conditions on the recipients of federal funds.[4]   In the context of the Spending Clause, the Supreme Court has rejected the argument, implicit in the challenge to the PBGC regulations, that an agreement to accept federal funds can only alter the legal rights of the recipient of those funds – not the legal rights of a third party.   To make that point, this Court relied on the Supreme Court decision in *Philpott v. Essex County Welfare Board*.[5]   There, the Court held that the Social Security Act, which

---

[3] *See, e.g.,* Aug. 6, 2024 Hr'g Tr. at 25, 63-64.

[4] D.I. 4326 at 19 (citing *South Dakota v. Dole*, 483 U.S. 203, 206 (1987)).

[5] 409 U.S. 413 (1973).

said that benefits provided to *individuals* under the act would not be subject to garnishment, barred a *government agency* from exercising its state law garnishment rights. This Court relied on that analogy to conclude that the statutory language that limits the PBGC's authority to impose conditions on the plans was not necessarily limited to what might be accomplished merely by the plans' agreement.

MFN and Mobile Street seek reconsideration of this Court's decision.[6] Their motion argues that the Court erred in relying on *Philpott* and offers three reasons why they believe the case does not support the view that "federal regulations may adversely impact the legal rights of employers as a condition of [the plans] receiving [federal funds]."[7] Notwithstanding the demanding standards that typically apply to motions for reconsideration, and in view of the fact that the Court relied on *Philpott* without the case having been cited by any party, the Court believes that principles of fairness and due process counsel in favor of giving the motion for reconsideration a fair hearing on the merits.

The imperatives of this bankruptcy case would be well served by the prompt resolution of this dispute. The Court accordingly hopes to issue a decision on the pending reconsideration motion by November 15, 2024. In order to ensure that, in connection with such a ruling, the Court has the full benefit of the parties' positions, the Court hereby sets forth (on a preliminary basis) additional authority that may support the reasoning set forth in the Memorandum Opinion.

---

[6] D.I. 4462. MFN Partners, LP is referred to as "MFN." Mobile Street Holdings, LLC is referred to as "Mobile Street."

[7] D.I. 4462 at 8.

Congress provides federal funds to various public and private educational institutions. The Family Education Rights and Privacy Act ("FERPA") provides that "[n]o funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records," except as provided by statute.[8]

In *United States v. Miami University*, the Chronicle of Higher Education sought student disciplinary records, under the Ohio Public Records Act, from Miami University (in Ohio) and Ohio State University. Based on a ruling of the Ohio Supreme Court that required the universities to provide the records, the universities did so. The Department of Education then sued the universities, seeking an injunction that would prevent them from releasing further information in violation of FERPA.

The Chronicle of Higher Education intervened. A federal district court concluded, relying on regulations issued by the Department of Education, that disciplinary records were "educational records" covered by FERPA and issued the injunction requested by the Department of Education. The Chronicle of Higher Education appealed. Even though the universities, not the Chronicle of Higher Education, was the recipient of the federal funds, the Sixth Circuit nevertheless held

---

[8] 20 U.S.C. § 1232g(b)(2).

that FERPA operated to preempt the Chronicle of Higher Education's state-law right under the Ohio Public Records Act to obtain the disciplinary records.[9]

*Norfolk Southern Railway* is to similar effect.[10]  There, states that received federal transportation funds agreed to install warning devices, designed in a particular manner, at railroad highway crossings.  The Supreme Court held that this condition on the receipt of federal funds operated to preclude a tort suit by a plaintiff who contended that those warning devices were designed improperly.  In *Norfolk Southern Railway*, as with the FERPA cases and in *Philpott*, the legal rights of a party *other than the recipient of the funds* were altered by another party's receipt of the federal funds.  If all of these circumstances could be found to fall within the rubric of a "condition" imposed on the recipient of federal funds, the Court is hard pressed to see why the effect of the PBGC regulation on the rights of employers should be any different.

---

[9] *United States v. Miami Univ.*, 294 F.3d 797, 809 (6th Cir. 2002) (finding that the "condition" that "sensitive information about students may not be released without the student's consent," could bar the Chronicle of Higher Education from obtaining student records) (emphasis and brackets omitted).  *Cf. Chicago Tribune Co. v. Bd. of Trustees of Univ. of Illinois*, 680 F.3d 1001 (7th Cir. 2012) (rejecting, on jurisdictional grounds, a suit by the Chicago Tribune that sought a determination that FERPA did not provide a defense to its request for educational records from the University of Illinois).

[10] *Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 344 (2000).

The Court intends to consider and address the arguments set forth in the motion for reconsideration and issue a decision as promptly as possible. The Court believes, however, that it would benefit not only from the parties' excellent briefing on the motion, but also from any response they may offer to these preliminary observations. MFN and Mobile Street are directed (if they choose to respond) to do so in a supplemental brief of no more than 10 pages that shall be filed no later than 12:00 p.m. on November 4, 2024. The funds and the PBGC are directed to respond (if they choose to do so) in a brief subject to the same 10-page limit by 5:00 p.m. on November 8, 2024.

Dated: October 29, 2024

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE