IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |
| JEFF MOORE, ELIZABETH BROOKE MOORE, and VIDAL TORRES on behalf of themselves and all others similarly situated, | Adv. Pro. No. 23-50457 (CTG) |
| Plaintiffs, v. | |
| YELLOW CORPORATION, et al., | |
| Defendants. | |
| WILLIAM G. COUGHLEN, et al., | Adv. Pro. No. 23-50761 (CTG) |
| Plaintiffs, v. | |
| YELLOW CORPORATION, et al. | |
| Defendants. | |

**DEBTORS' CROSS-MOTION TO SUPPLEMENT AND RESPONSE TO UNIONS' MOTION TO SUPPLEMENT**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

Debtors move to supplement the summary judgment record and respond to the Unions' Motion to Supplement the Summary Judgment Record ("Motion").[2] Debtors do not oppose the Motion but must correct the Unions' numerous misstatements and supplement the record with additional testimony from IBT General President Sean O'Brien.

## I. THE UNIONS FAILED TO NOTIFY DEBTORS OF ITS APPEAL

The Unions mischaracterize the events surrounding the administrative review by the Department of Workforce Development ("DWD"). First, in flagrant violation of the automatic stay, the Unions initiated the July 11, 2024 appeal of the DWD decision, asking that liability be imposed on the Debtors in another forum. They did not even copy Debtors on their appeal, serve Debtors copies of whatever it was that the Unions sent to the DWD, or notify Debtors in any way about their actions. The DWD Investigations Section Chief noted that as the precise reason for remand to the initial investigator, finding "[i]t is determined that all parties have not had adequate opportunity to review and rebut or augment the argument (II) made by IBT in its July 11, 2024, filing appealing the initial determination. Therefore, this matter is remanded to the initial investigator…" Declaration of Michael Esser In Support of Cross-Motion to Supplement ("Esser Decl."), Ex. A(1) at 206. Moreover, in the past month and a half, the Unions did not notify Debtors or the Court of their efforts in another forum *at any point* despite Debtors' use of the initial decision in its September 6, 2024 Motion for Summary Judgment. *See* D.I. 4291 at 1.

Second, the Unions claim that Debtors "failed to notify the Court that the DWD had remanded the matter to the Investigator for a further investigation; and had ordered the Investigator

---

[2]  "Debtors" shall refer to Yellow Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases. "Unions" shall refer to International Brotherhood of Teamsters ("IBT"), Teamsters National Freight Industry Negotiating Committee, and the International Association of Machinists and Aerospace Workers.

1

to issue a new determination to replace the Investigator's Initial Determination…" is disingenuous. Mot. at ¶4. As the Unions are well aware, Debtors did not even learn of the IBT's July 11, 2024 appeal or the DWD's remand until October 18, less than a week ago. Esser Decl., Ex. A(1) at 2. All correspondence before then (the IBT's July 11, 2024 appeal and the DWD's September 30, 2024 notice of remand and request for statements by October 18) was not received by Debtors. The first time Debtors became aware of any of these events was on October 17, 2024, when the Unions copied in one of Debtors' attorneys, Michael Slade, to the email chain. Once the DWD added in Mr. Slade, he responded on October 18 notifying DWD and the Unions that none of Debtors' counsel received the initial (already untimely) September 30 email with the notice of remand and the IBT appeal. *Id.* The Unions' effort to unfairly malign the Debtors is simply wrong.

Debtors have already been prejudiced by not being served with, made aware of, or given the opportunity to respond to the IBT's secret appeal. Nonetheless, Debtors do not oppose the Court being made aware of the ongoing administrative review. Despite the IBT's misconduct, the Debtors are confident that the DWD's initial decision was correct. Debtors reserve all rights with respect to the Unions' violations of the automatic stay.

## II.    MR. O'BRIEN'S TESTIMONY

Mr. O'Brien testified in his deposition that he wanted to reach a deal with Yellow to save over 22,000 union jobs—which, if true, mirrors the Debtors' desire and renders impossible any argument that the Debtors should have known in May 2023 that they would cease to exist in two months. Indeed, even following the strike notice in July 2023, he made calls to both Central States and the federal government in an effort to facilitate a deal. *See* Esser Decl, Ex. A(2) at 142:14-143:16 (noting he talked to Tom Nyhan from Central States to discuss an extension of benefits for 30 days); 148:3-150:21 ("Q. And during those negotiations, you personally contacted a representative of the Federal Government, correct? A. I did…Q. What is the ask? A. Well, they

2

had a note due, I believe it was August 1st, and they needed some relief on the extension of that.") In fact, these calls were nothing new for Mr. O'Brien, as he had called the federal government on their behalf once before in 2022. *See id.* at 50:14-52:18 ("A…I set up a meeting with the Department of Labor…We went to the Treasury folks…")

Importantly, Mr. O'Brien confirmed that ***he did not foresee that Yellow would go out of business as a result the IBT's strike notice***. *Id.* at 135:5-7 ("Q. Did you expect Yellow would go out of business as a result of this strike notice? A. I did not.") To the contrary, he expected Yellow to continue making its health and welfare contributions even after the strike notice went out. Esser Decl., Ex. A(2) at 136:17-20 ("Q. You believed they could make the contribution payments even after the strike notice was issued? A. The assumption is they could.") As Mr. O'Brien effectively held the keys to the fate of Yellow, and did not foresee its demise even in July 2023, it is impossible for the IBT to claim that the Yellow should have known back in May 2023 that it would be crushed by an ill-fated Union strike notice two months later.

Indeed, Mr. O'Brien expressed that he wanted to reach a deal with Yellow even after the strike notice was issued. *Id.* at 135:13-20 ("Q. Did you believe you could still negotiate a deal with Yellow after issuing the strike notice? MR. HO: Objection. Vague and ambiguous as to who is you. Foundation. Calls for speculation. A. We were are willing to reach an agreement like we are with every other employer.") and 137:10-15 ("Q. Your intent was still to negotiate with Yellow even after issuing the strike notice; correct? MR. HO: Objection. Vague and ambiguous. Foundation. Calls for speculation. A. Of course it was.") Mr. O'Brien was even hopeful that a deal would be possible during discussions with Yellow on July 23 and July 24:

> Q. Over the course of the two-day negotiating session from July 23 to July 24, were you hopeful that you could still get a deal done with Yellow?
>
> A. We were hopeful that we could keep 22,000 people employed.

3

> Q. And that was your intention?
>
> A. That was our intention all along.

*Id.* at 162:16 – 163:1.

Historically, Mr. O'Brien claimed (incorrectly) that IBT threatened to issue a strike notice in 2020 after Yellow asked to defer contributions to the New England Teamsters Pension Fund, despite no evidence in the record to support such a claim. Mot at ¶¶6-7. Mr. O'Brien's testimony does not contradict the voluminous record that no strike notice was ultimately issued in 2020. *See, e.g.,* D.I. 4291 at 8. Further, the Unions' argument that because Mr. O'Brien threatened to strike after Yellow's request for deferral in 2020, Yellow should have known that once Mr. O'Brien was leading the IBT and TNFINC, it would need to pay the contributions or face a strike notice, flies in the face of Mr. O'Brien's testimony denying substantive involvement in the 2023 negotiations. *See* Esser Decl., Ex. A(2) at 123:16-124:20 (noting that he was not involved with and did not write an official letter from the Teamsters to Yellow that was stamped with his signature and by his authorization) and 70:17-71:8 (noting that he did not read a letter from him to Hawkins on negotiating the collective bargaining agreement). Unfortunately, Mr. O'Brien did not foresee the IBT's 2023 strike notice leading to such a devastating outcome for Yellow and its employees. *Id.* at 135:5-7 ("I did not.") That fact proved fatal to Yellow – and it is equally fatal to IBT's WARN claims.

## **CONCLUSION**

For the foregoing reasons, Debtors move to supplement the record with Mr. O'Brien's testimony.

Dated: October 25, 2024  
Wilmington, Delaware

/s/ Peter J. Keane
_____
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:    ljones@pszjlaw.com
           tcairns@pszjlaw.com
           pkeane@pszjlaw.com
           ecorma@pszjlaw.com

-and-

Patrick J. Nash, P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
Michael B. Slade, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    pnash@kirkland.com
           dseligman@kirkland.com
           mslade@kirkland.com

-and-

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

5

KE 115336009.7