**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| YELLOW CORPORATION, et al., ) | |
| ) | Lead Case No. 23-11069 (CTG) |
| Debtors. ) | Related Docket Nos. 4581, 4582 |

**CENTRAL STATES PENSION FUND'S**
**OBJECTION TO DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT**

Central States, Southeast and Southwest Areas Pension Fund ("Central States Pension Fund"), by and through its undersigned counsel, hereby objects to the Debtors' First Amended Disclosure Statement, the "Disclosure Statement," Dkt. No. 4581). In support of this objection, Central States Pension Fund states as follows:

**FACTUAL BACKGROUND**

1. Central States Pension Fund is a multiemployer pension plan. Central States Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters on behalf of employees of those same employers. All principal and income from such contributions and investments thereof are held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of Central States Pension Fund and paying administrative expenses.

2. There are presently approximately 950 employers that participate in Central States Pension Fund, representing more than 32,000 active participants. Moreover, there are approximately 350,000 participants and beneficiaries of Central States Pension Fund entitled to pension benefits, including more than 190,000 participants and beneficiaries currently receiving pension payments.

3. Pre-petition, Central States Pension Fund provided pension credit to thousands of union employees of Debtors YRC Inc. ("YRC") and USF Holland LLC ("USFH"), both wholly owned subsidiaries of Debtor Yellow Corporation ("Yellow"). Under collective bargaining agreements and participation agreements applicable to Debtors YRC and USFH, YRC and USFH's obligations to Central States Pension Fund included regular payments of pension contributions to Central States Pension Fund. Debtors permanently ceased all covered operations prior to the August 6, 2023 petition date. (Aug. 7, 2023 Declaration of Brian A. Doheny, Dkt. No. 14, ¶ 17.)

4. When Debtors YRC and USFH permanently ceased to have an obligation to contribute to Central States Pension Fund, they and the other Debtors effected a complete withdrawal from Central States Pension Fund pursuant to 29 U.S.C. § 1383 and incurred withdrawal liability, jointly and severally, pursuant to 29 U.S.C. § 1301(b)(1) and the regulations thereunder.

5. Pursuant to this Court's bar date order, Central States Pension Fund timely filed proofs of claim that included claims for withdrawal liability in the amount of $4,827,470,743.87, which is the amount of unfunded vested benefits ("UVBs") allocable to Debtors under 29 U.S.C. § 1391. (Claims Nos. 4312 through 4335; Declaration of Andrew M. Sprau, attached hereto as Exhibit A, ¶ 10.) On December 8, 2023, Debtors filed their objections to the proofs of claim filed by Central States Pension Fund in these cases (Dkt. No. 1322).

6. On July 9, 2024, Debtors filed a motion for summary judgment seeking to eliminate or reduce the withdrawal liability claims filed by Central States Pension Fund and certain other multiemployer pension funds. In support of their motion, Debtors stated:

> [T]he SFA MEPPS would only be entitled to accelerate and demand the "outstanding amount of Debtors' withdrawal liability"—not Debtors' allocable share of UVBs. These are not the same thing. Section 1381 of ERISA explicitly defines withdrawal liability, not as allocable UVBs alone, but as "[a fund's

> allocable UVBs], adjusted . . . to reflect the limitation on annual payments under section 1399(c)(1)(B)" and certain other reductions. "Withdrawal liability" does not mean something different in Section 1381 than it does in the default provision of Section 1399 . . . .

(Debtors' Motion for Summary Judgment, Dkt. No. 3852, ¶ 77 (citations and alterations omitted).) On September 13, 2024, the Court entered a Memorandum Opinion (Dkt. No. 4326) resolving cross-motions for summary judgment regarding the withdrawal liability claims of Central States Pension Fund and certain other multiemployer pension funds. In the Memorandum Opinion (as amended on November 5, 2024, *see* Dkt. No. 4769), the Court ruled (among other things) that Central States Pension Fund's claim should be reduced from Debtors' full allocable share of UVBs (that is, the $4,827,470,743.87 set forth in the proofs of claim) to account for the 20-year limitation of payments under 29 U.S.C. § 1399(c)(1)(B). (Amended Memorandum Opinion, Dkt. No. 4769, at 37.) Specifically, the Court held:

> The exception that § 1399(c)(1)(A) authorizes is the one set out in § 1399(c)(5). And § 1399(c)(5) provides for acceleration of the 20 years of payments. Nothing in § 1399(c)(5) suggests that what is accelerated is the employer's full share of the plan's unfunded vested benefits. To the contrary, the statute says that what is accelerated is the employer's "withdrawal liability," a term that, in this context, is best read to mean the amount the employer owes after the application of the 20-year cap.

(*Id.*)

7.  On October 17, 2024, Debtors filed the Disclosure Statement. In the Disclosure Statement, Debtors state that the withdrawal liability claims brought by Central States Pension Fund and other similarly situated multiemployer pension plans may ultimately be "substantially reduced or subordinated, by as much as 50%, under 29 U.S.C. § 1405(b) . . . , given that unsecured creditors will not recover in full." (Disclosure Statement, Dkt. No. 4581, at 17 n.8.) In connection with this position, Debtors provide projections and estimated recovery ranges for general

unsecured creditors in the Disclosure Statement that "assume[] that Withdrawal Liability Claims are reduced or subordinated by as much as 50%." (*Id.* at 17 n.10–11.)

## LEGAL STANDARD

8. Under 11 U.S.C. § 1125(b), a debtor-in-possession under Chapter 11 seeking to solicit a plan must provide to holders of claims and interests a disclosure statement that contains "adequate information." 11 U.S.C. § 1125(a)(1) states that:

> "[A]dequate information" means information of a kind, and in sufficient detail, . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . . . [I]n determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.]

"Congress contemplated that the creditors would be in active negotiations with the debtor over the plan. The necessity of 'adequate information' was intended to help creditors in their negotiations." *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) (citations omitted).

9. The Court may also reject a disclosure statement where the plan it describes is patently unconfirmable. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 148 (3d Cir. 2012). Among other reasons, a disclosure statement may be rejected in relation to an unconfirmable plan of reorganization if the plan was not proposed in good faith, is forbidden by law, or is otherwise not feasible. *Id.* at 152.

## ARGUMENT

**I. The Disclosure Statement fails to provide adequate information because it provides creditors with inaccurate information regarding the prospect of subordination under 29 U.S.C. § 1405.**

10. In the Disclosure Statement, Debtors state that the withdrawal liability claims of Central States Pension Fund and other pension funds may be reduced by as much as 50% under

29 U.S.C. § 1405.[1] This statement is incorrect as it relates to Central States Pension Fund because, even if 29 U.S.C. § 1405(b) were found to be applicable, that would not decrease the amount of Central States Pension Fund's withdrawal liability claim (as already reduced by the Amended Memorandum Opinion).

11. Indeed, 29 U.S.C. § 1405(b) does not use the phrase "withdrawal liability" but rather "unfunded vested benefits":

> (b) Unfunded vested benefits allocable to insolvent employer undergoing liquidation or dissolution; maximum amount; determinative factors. In the case of an insolvent employer undergoing liquidation or dissolution, the unfunded vested benefits allocable to that employer shall not exceed an amount equal to the sum of—
>
>> (1) 50 percent of the unfunded vested benefits allocable to the employer (determined without regard to this section), and
>>
>> (2) that portion of 50 percent of the unfunded vested benefits allocable to the employer (as determined under paragraph (1)) which does not exceed the liquidation or dissolution value of the employer determined—
>>
>>> (A) as of the commencement of liquidation or dissolution, and
>>>
>>> (B) after reducing the liquidation or dissolution value of the employer by the amount determined under paragraph (1).

12. The use of "unfunded vested benefits" in 29 U.S.C. § 1405(b) cannot be understood as meaning "withdrawal liability" in this case as Debtors now implicitly claim, because the term "withdrawal liability" is used in 29 U.S.C. § 1405, but not in subparagraph (b) of that section, which instead uses the term "unfunded vested benefits."

13. Debtors' attempt to interpret "unfunded vested benefits" in 29 U.S.C. § 1405(b) as meaning "withdrawal liability" therefore is contrary to the law of the case. "As most commonly defined, the law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."

---

[1] Debtors also cite to 29 C.F.R. § 4225(b), a regulation which does not exist. (Disclosure Statement at 17, n.8.)

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). Here, the Court has already determined that "withdrawal liability" equates to "the amount the employer owes after the application of the 20-year cap," as opposed to meaning the employer's allocable share of the plan's UVBs. (Amended Memorandum Opinion, Dkt. No. 4769, at 37.)

14. Thus, given the statutory text and the law of this case, Debtors' assertion that the withdrawal liability claims will be further reduced by as much as 50% if 29 U.S.C. § 1405(b) applies provides inadequate and inaccurate information to creditors. This is because applying 29 U.S.C. § 1405(b) to Debtors' allocable share of Central States Pension Fund's UVBs would not affect the amount of Debtors' withdrawal liability to Central States Pension Fund, as already reduced by the Amended Memorandum Opinion.

15. Specifically, as reflected in Central States Pension Fund's withdrawal liability proofs of claim, Debtors' allocable share of Central States Pension Fund's UVBs under 29 U.S.C. § 1391(c)(2) is $4,827,470,743.87. (*See, e.g.*, Claim No. 4312, at 5 (stating that the unadjusted share of allocable UVBs is $4,827,470,743.87).) A 50% reduction in the UVBs allocable to Debtors would reduce the amount of the UVBs allocable to Debtors to $2,413,735,371.94. (Declaration of Andrew M. Sprau, Ex. A, ¶ 11.)

16. Under 29 U.S.C. § 1399(c)(1)(C)(i), the allocable amount of an employer's UVBs is not considered in calculating the employer's annual withdrawal liability payment amount. Instead, the payment amount is independently determined based on the employer's contribution history and highest contribution rate, such that the payment amount is not affected by the employer's allocable amount of UVBs. That allocable share of UVBs is amortized over the number of years it takes to pay off that the employer's allocable share using the annual payment amount.

If the resulting payment schedule is longer than 20 years, the employer's obligation is limited to the first 20 years of payments. 29 U.S.C. § 1399(c)(1)(B).

17.     Here, following the Court's Memorandum Opinion, Central States Pension Fund calculated the annual payment amount Debtors would owe under 29 U.S.C. § 1399(c)(1)(C)(i). That amount is $78,990,326.84 per year. (Declaration of Andrew M. Sprau, Ex. A, ¶ 12.) Amortizing $2,413,735,371.94 (50% of Debtors' allocable share of UVBs) over equal annual payments of $78,990,326.84 would result in more than 20 annual payments of $78,990,326.84, just as amortizing Debtors' full allocable share of $4,827,470,743.87 would. (*Id.*) Either way, then, the 20-year limitation of payments set forth in 29 U.S.C. § 1399(c)(1)(B) would apply under the Amended Memorandum Opinion. (*Id.* ¶ 13; *see* Amended Memorandum Opinion, Dkt. No. 4769, at 4 ("Under the statute, an employer's withdrawal liability will never exceed 20 times that annual payment, even if it would take 25 or 50 or 1,000 such payments to repay the employer's allocable share of the fund's unfunded vested benefits.").) In sum, even if 29 U.S.C. § 1405(b) applies, it would not affect the amount of Central States Pension Fund's claim (as reduced by the Amended Memorandum Opinion) because it would not affect the total amount owed under Debtors' capped withdrawal liability payment schedule. (*See* Declaration of Andrew M. Sprau, Ex. A, ¶ 13.)

18.     Further, even if 29 U.S.C. § 1405(b) did speak to withdrawal liability instead of to the allocable share of UVBs, the Disclosure Statement would still contain inadequate and inaccurate information for the additional reason that it projects that 29 U.S.C. § 1405(b) would reduce the withdrawal liability claims by as much as 50%. (Disclosure Statement, Dkt. No. 4581, at 9 n.10–11.) By so projecting, Debtors ignore 29 U.S.C. § 1405(b)(2), which together with paragraph 1405(b)(1) provides that the allocable share of UVBs is reduced to 50% *plus* the amount of the liquidation or dissolution value of the employer, up to the remaining 50%. Although Debtors

have not yet provided a full liquidation analysis, the implication that the liquidation or dissolution value of the Debtors is zero is inconsistent with the other statements in the Disclosure Statement, including that "over $350 million in Cash remain[s] on the Debtors' balance sheet and dozens of valuable owned and leased Real Property Assets remain available for further value-maximizing monetization efforts." (Disclosure Statement, Dkt. No. 4581, at 3.)[2] Accordingly, there is an inadequate basis for assuming that the "portion of 50 percent of the unfunded vested benefits allocable to the employer . . . which does not exceed the liquidation or dissolution value of the employer" under 29 U.S.C. § 1405(b)(2) is zero. Debtors' projections that make such an assumption are misleading and provide inadequate information contrary to 11 U.S.C. § 1125.

## II. The Disclosure Statement should be rejected as relating to a plan that is unconfirmable.

19. The Disclosure Statement should also be rejected because the plan was not proposed in good faith due to its treatment of the withdrawal liability claims. As explained above, Debtors previously (and successfully) took the position that an employer's allocable share of UVBs and withdrawal liability "are not the same thing." (Debtors' Motion for Summary Judgment, Dkt. No. 3852, ¶ 77.) Generally speaking, adopting a position contrary to one on which a party previously prevailed supports a finding of bad faith. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (holding, in judicial estoppel context, that a court should prevent "a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase"); *see also, e.g.*, *Murray v. Silberstein,* 882 F.2d 61, 66 (3d Cir. 1989). Here, Debtors have changed course entirely by now implicitly claiming that "unfunded vested benefits" and "withdrawal liability" are interchangeable, even though Debtors already successfully argued that

---

[2] The liquidation value of Debtors under 29 U.S.C. § 1405(b)(2) is likely even higher than this, as under subparagraph 1405(b)(2)(A) the liquidation value is to be measured as of the initiation of Debtors' liquidation.

the two terms are distinct in arguing that the 20-year limitation on annual payments should apply to the withdrawal liability. (Debtors' Motion for Summary Judgment, Dkt. No. 3852, ¶ 77.)

## CONCLUSION

For the reasons set forth above, Central States Pension Fund respectfully submits that the Court should deny approval of the Disclosure Statement.

Date: November 7, 2024  
Wilmington, DE

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ William D. Sullivan*  
William D. Sullivan (No. 2820)  
William A. Hazeltine (No. 3294)  
919 North Market Street, Suite 420  
Wilmington, DE 19801  
Tel: (302) 428-8191  
Fax: (302) 428-8195  
Email: bsullivan@sha-llc.com  
       whazeltine@sha-llc.com

and

Brad R. Berliner, Esq.  
Andrew J. Herink, Esq.  
Daniel Sullivan, Esq.  
Central States Funds  
8647 W. Higgins Road  
Chicago, IL 60631  
(847) 939-2478 - Office  
bberliner@centralstatesfunds.org  
aherink@centralstatesfunds.org  
dsulliva@centralstatesfunds.org

*Attorneys for Central States, Southeast and Southwest Areas Pension Fund*