```
 1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3    IN RE:                     .  Chapter 11
                                 .  Case No. 23-11069 (CTG)
 4    YELLOW CORPORATION, et al., .
                                 .  (Jointly Administered)
 5                               .
                                 .  Re: Docket No. 4958
 6                               .
                                 .  Courtroom No. 7
 7           Debtors.            .  824 North Market Street
                                 .  Wilmington, Delaware 19801
 8                               .
                                 .  Thursday, November 21, 2024
 9    . . . . . . . . . . . . . . 9:30 a.m.

10                        TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE CRAIG T. GOLDBLATT
11                    UNITED STATES BANKRUPTCY JUDGE

12    APPEARANCES:

13    For the Debtors:          Shirley Chan, Esquire
                                KIRKLAND & ELLIS LLP
14                              KIRKLAND & ELLIS INTERNATIONAL LLP
                                300 North LaSalle
15                              Chicago, Illinois 60654

16                              Allyson Smith, Esquire
                                KIRKLAND & ELLIS LLP
17                              KIRKLAND & ELLIS INTERNATIONAL LLP
                                601 Lexington Avenue
18                              New York, New York 10022

19    (APPEARACNES CONTINUED)

20    Audio Operator:          Teasha Marsh, ECRO

21    Transcription Company:   Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
      Proceedings recorded by electronic sound recording,
25    transcript produced by transcription service.
```

1  APPEARANCES (CONTINUED):

2  For the US Trustee:          Jane Leamy, Esquire
                                OFFICE OF THE UNITED STATES TRUSTEE
3                               J. Caleb Boggs Federal Building
                                844 North King Street
4                               Suite 2207, Lockbox 35
                                Wilmington, Delaware 19801
5
   For Local 705 Pension
6  Fund:                        William Sullivan, Esquire
                                SULLIVAN HAZELTINE ALLINSON
7                               919 North Market Street
                                Wilmington, Delaware 19801
8
   For the Committee:           Meredith Lahaie, Esquire
9                               AKIN GUMP STRAUSS HAUER & FELD LLP
                                One Bryant Park
10                              Bank of America Tower
                                New York, New York 10036
11
   For the MEPP Funds:          Samuel Levin, Esquire
12                              GROOM LAW GROUP
                                1701 Pennsylvania Avenue, N.W.
13                              Washington, DC 20006

14 For MFN Partners
   Management LP:               L. Katherine Good, Esquire
15                              POTTER ANDERSON & CORROON LLP
                                Hercules Plaza
16                              1313 North Market Street, 6th Floor
                                P.O. Box 951
17                              Wilmington, Delaware 19801

18 For Central States
   Pension Fund:                Brad Berliner, Esquire
19                              CENTRAL STATES FUNDS
                                8647 W. Higgins Road
20                              Chicago, Illinois 60631

21 For the Teamsters:           Susan Kaufman, Esquire
                                LAW OFFICE OF SUSAN E. KAUFMAN, LLC
22                              919 North Market Street
                                Suite 460
23                              Wilmington, Delaware 19801

24

25

1                                    INDEX

2   STATUS CONFERENCE:                                      PAGE

3   Agenda
    Item 2: Status Conference Regarding SFA                  4
4           MEPP Litigation

5
    MOTION:                                                 PAGE
6
    Agenda
7   Item 3: Motion of Debtors for Entry of an               16
            Order Approving (I) the Adequacy
8           of the Disclosure Statement, (II)
            the Solicitation and Voting
9           Procedures, (III) the Forms of
            Ballots and Notices in Connection
10          Therewith, and (IV) Certain Dates
            With Respect Thereto [Filed:
11          10/17/24] (Docket No. 4582)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 9:30 a.m.)

2               THE CLERK:  All rise.

3               THE COURT:  Please be seated.  Good morning, all.

4    We are here in In Re Yellow Corporation, Case No. 23-11069.

5               Ms. Smith.

6               MS. SMITH:  Good morning, Your Honor.  Allyson

7    Smith, Kirkland & Ellis, for the debtors.

8               We just have two items on the agenda for today.

9    It's the status conference for the ongoing MEPP claims

10   rejection litigation and then, of course, approval of our

11   disclosure statement.  If all right with the Court, we would

12   propose proceeding first with the status conference.

13               THE COURT:  Certainly.

14               MS. SMITH:  Great.  Then I am going to cede the

15   podium to my partner, Ms. Chan.

16               THE COURT:  Okay, very well.

17               MS. CHAN:  Good morning, Your Honor.  Shirley Chan

18   from Kirkland & Ellis for the debtors.

19               We appreciate the set of questions that Your Honor

20   posed in your order regarding the acceleration, default, and

21   discounting issues.  We agree that those are important

22   questions that should be addressed now.  We will add that

23   while Your Honor's order was directed to the disputes between

24   the debtors and the SFA funds, because those issues apply to

25   the non-SFA funds as well, we all agree to brief everything

1  on the same schedule.

2          THE COURT:  Because you think I am going to be

3  consistent and have the same rule apply in both cases?

4          MS. CHAN:  Yes.

5      (Laughter)

6          THE COURT:  That was intended to be a joke, sorry.

7          MS. CHAN:  So, we have met and conferred two days

8  ago and agreed on a briefing schedule.  Specifically, we have

9  agreed that December 13th will be the deadline for opening

10 briefs and any facts that the funds wish to put in the record

11 regarding whether and when they declared a security default.

12 Then January 10th will be the deadline for opposition briefs.

13 January 21st will be the deadline for replies.  We would ask

14 the Court to hold the hearing on the motions shortly

15 thereafter and before confirmation.

16         THE COURT:  So that makes eminent sense, like

17 getting these things decided in an orderly and prompt manner

18 and trying to get folks decisions to the best of my ability

19 before, you know, getting teed up or resolved around

20 confirmation makes good sense.

21         Let me just -- just for the sake of making sure I

22 understand my calendar, you are looking for an argument -- so

23 you are looking for a confirmation hearing on February 4th,

24 right?

25         MS. CHAN:  That's right.

1          THE COURT:  So, would you like argument on these

2    motions?

3          MS. CHAN:  Our replies would be due January 21st,

4    so any time between January 21st and February 4th would be

5    fine.

6          THE COURT:  Okay, so let's look at the calendar.

7    I just want to give myself a couple of days with your reply.

8          So, let me ask this question, and only Ms. Smith

9    knows all of these dates like off the top of her head, so I

10   have on hold the 21st to 23rd for a trial, is that this

11   dispute or is that a different dispute?

12          MS. CHAN:  That is the trial for the non-SFA funds

13   but given that we have agreed to this briefing schedule with

14   replies due on the 21st we expect to fish out that trial.

15          THE COURT:  Okay. I just want to make sure that --

16   in connection with setting this schedule, which I am very

17   happy to do, I just want to develop an understanding of what

18   I freed up on my calendar so that I am organized.  But I

19   think that in light of what you said Tuesday the 28th of

20   January.

21          Ms. Barksdale, am I making a mistake there?

22          MS. BARKSDALE:  No, Your Honor.

23          THE COURT:  Does that work for the parties?

24          MS. CHAN:  That works for the debtors.

25          THE COURT:  Okay.  So, I think your briefing

1  schedule is fine.  Happy to ---

2              MS. CHAN:  I will --

3              MR. SULLIVAN:  We didn't hear the date.

4              THE COURT:  I'm sorry.  I suggested Tuesday,

5  January 28th, let's say at -- do the parties have a

6  preference between 9:30 and 10?  I tend to start things at 10

7  if people are going to be coming in from taking an early

8  train but if people are going to be here anyway, I am happy

9  to start earlier, whatever your preference.

10             MS. CHAN:  10 o'clock works for the debtors.

11             THE COURT:  Okay, very well.  So, why don't we --

12  Mr. Sullivan, is 10 o'clock agreeable?

13             MR. SULLIVAN:  I don't know from everybody.  I

14  think there are a few comments that are going to come in on

15  this general topic.

16             THE COURT:  I see.

17             MR. SULLIVAN:  So, I don't want to get to far

18  ahead of myself.

19             THE COURT:  Look, why don't we pencil in that we

20  will have a hearing at 10 o'clock on the 28th. The parties

21  should, obviously, confer about the schedule.  You should

22  submit an order under certification.  If there are tweaks

23  along the way that is fine with me.  Let's try to set it for

24  the 28th so if that doesn't work and we need to hop on the

25  phone to get to a date then I am happy to do it that way.

1  Does that work for you?

2           MS. CHAN:  That works for us.  I will also add

3  that when we met and conferred with the funds two days ago we

4  have also agreed to brief the issues relating to claims

5  subordination on the same schedule.

6           THE COURT:  Okay.  This is subordination as I

7  understand it.  This is not equitable subordination as like a

8  bankruptcy lawyer, but it's the provision of ERISA that

9  provides in certain circumstances for reducing or

10 subordinating part of the claim, is that -- do I have that

11 right?

12          MS. CHAN:  Yes.

13          THE COURT:  So, that will be addressed on the same

14 schedule.

15          MS. CHAN:  Thank you.  So --

16          THE COURT:  I take it that is agreed as among the

17 parties?

18          MS. CHAN:  Yes.

19          THE COURT:  Okay, very well.

20          MS. CHAN:  So, we will work with counsel to make

21 sure we agree on a hearing date and time and we can submit a

22 stipulation.

23          THE COURT:  That would be great.  Now just -- I

24 apologize for having lost track of various of the pieces, but

25 I had understood there was a non-SFA summary judgment motion

1  that was already sort of, if not fully briefed, nearly fully

2  briefed with an argument coming up.  Do I -- am I confused?

3          Mr. Sullivan, let me give you the chance to be

4  heard.

5          MR. SULLIVAN:  Thank you.  Good morning, Your

6  Honor.  Bill Sullivan on behalf of Local 705 Pension Fund.

7          Local 705 Pension Fund filed a motion for summary

8  judgment at the end of August.  We also filed, in connection

9  with the reconsideration, a pleading.

10         THE COURT:  Right, that I treated as an amicus.

11         MR. SULLIVAN:  Right. So, no response has been

12  filed.  There was a deadline of October 22nd, it was not met.

13 Where it stands now this was discussed on the meet and

14 confer.  My co-counsel, John Donaro (phonetic), spoke on the

15 meet and confer.  What Local 705 wants is a response to the

16 pleading by November 26th.  They raised both legal issues and

17 they raised factual issues that are specific to them.  The

18 issue is they don't believe they are going to need to go

19 forward with a future briefing because of how they presented

20 their motion.

21         The second part of that proposal was if the

22 debtors decide that they do need to respond and it raises

23 issues that fall into the general category being briefed

24 beyond that they won't file a reply and it can be moved to

25 there.  Local 705 believes they are entitled to a specific

1  response as to the disputed issues on their motion because

2  both from a legal and a factual basis they don't believe --

3          THE COURT:  So, look, let's slow down here.  I am

4  not sure how it came to be that you filed a motion in August

5  and here we are in November and there is not a response, but

6  that is what it is and this is the first I am hearing of it.

7  So, I am not inclined to order the debtor to file a response

8  within five days.

9          I do think that setting a rational schedule -- so,

10 Ms. Chan, is your position that this should be folded into

11 the schedule that you have, otherwise, addressed?

12         MS. CHAN:  Yes.  Our position is that Local 705

13 agreed to the various amended scheduling orders that pushed

14 out the dispositive motion deadlines and --

15         THE COURT:  So, look, I don't know enough to know

16 whether you agreed or didn't agree.

17         Let me ask you this, Mr. Sullivan, what prejudice

18 would you suffer if -- I want to give people decisions

19 promptly and in a way that moves the case -- my principle

20 objective is to move the case forward -- well, I think my

21 principle objective is to get it right, but moving the case

22 forward is also an important objective.  So, let me ask this

23 question: What prejudice would you suffer if we just folded

24 this into the existing schedule and I could consider all of

25 this at one time rather than piecemeal.

1          MR. SULLIVAN:  To be fair, Your Honor, when I

2   spoke to my co-counsel I said, really, this is, you know, a

3   decision for you whether you think more or less briefing is

4   appropriate.  We certainly want to respect the Court's time

5   and the Court's effort. The prejudice here is we don't

6   believe there is a legitimate argument to be made and that

7   that should be fleshed out now that it should be part of the

8   briefing but the prejudice would be that if we agree now we

9   have to participate in the future briefing and further

10  expense into January when they don't believe that is

11  necessary.

12          THE COURT:  So, look, I hear that and respect

13  that. If you had come to me in August and said we have got a

14  single issue, and its simple, and we want it resolved

15  promptly and it will get us out of the case I would have

16  entertained that notion but given that we are here at the end

17  of November and we are talking about a January argument in

18  any event, I don't think as a practical matter there is going

19  to be some date in between where I am going to get you a

20  decision that will have that effect.

21          So, it's not an unfair ask in principle but just

22  given the world in which we are living and the number of

23  things that are coming down the pike here I don't see a world

24  in which I save you the hassle by getting you a decision. So,

25  I have no problem with your asking for it, I just don't

1  think, given my calendar right now, it's not -- it's a thing

2  I would like to try to do when I can but I just don't think I

3  can.  So, I think it makes sense to fold it in and we will

4  tackle it all together and we will get you a decision as

5  promptly as we can.

6           MR. SULLIVAN:  We certainly will respect that.  We

7  don't need to rehash the procedural -- we have a strong

8  disagreement with what happened, but we want to respect your

9  schedule and that is fine, Your Honor.

10          THE COURT:  Okay, very well.  I appreciate that so

11  thank you.

12          Ms. Chan, from -- oh, Mr. Berliner.

13          MR. BERLINER:  Sorry, Your Honor.  Briefly, Brad

14  Berliner on behalf of Central States.

15          The only other thing I wanted to address with the

16  Court is in addition to resolving these two issues we have

17  just discussed this morning, Central States intends to weave

18  into the brief an argument on this contribution guarantee

19  claim Central States has.  Debtors objected to it. The facts

20  are undisputed and it's a $900 million plus claim that we

21  think has a material effect upon the estate.  So, we intend

22  to cover that along with these other two issues.

23          THE COURT:  Ms. Chan, any objection from the

24  debtor to having that addressed on summary judgment at the

25  same time?

1          MS. CHAN:  No objection.

2          THE COURT:  Okay.  So, you guys will all work out,

3    sort of, a briefing schedule, scheduling order that will

4    provide for I will get these briefs and it will be fully

5    briefed around January 21st, and we will have argument on

6    January 28th, and I will do my best to get you a decision

7    resolving disputes as soon as I can.

8          MR. BERLINER:  Thank you, Your Honor.

9          THE COURT:  So can we just pause for a moment and

10   this -- I want to make sure that I understand my calendar and

11   what is going forward and what is not.  So, this is not

12   intended to quiz Ms. Smith.  So, what I have -- I now have

13   trial on the WARN Act disputes beginning December 9th, right?

14         MS. SMITH:  Yes.  I believe it's the 9th, 10th and

15   20th.

16         THE COURT:  9th, 10th and 20th, okay.  Why don't I

17   just ask the question this way, Ms. Smith, what else should

18   now be on the calendar other than confirmation hearing and

19   the summary judgment argument on the non-SFA claims that we

20   just discussed?

21         MS. SMITH:  We have a December 16th omnibus

22   hearing which I believe also is summary judgment unless I got

23   that wrong.

24         MS. CHAN:  No, that is correct.

25         MS. SMITH:  Okay, summary judgment on the non-SFA.

1          THE COURT:  Hold on a second, that is where I am

2   confused because I thought we were just setting --

3          MS. CHAN:  Right. So, the schedule we just

4   discussed is for the default subordination and contribution

5   guarantee claims. The December 16th date is for summary

6   judgment motions that debtors and certain funds have already

7   filed regarding --

8          THE COURT:  Got it.  Okay, so that is where I was

9   confused.  My apologies for being the slowest one in the

10  room; though, those of you who are here a lot are used to

11  that.  So, basically, we have got separate partial summary

12  judgment motions, one of which goes forward on the 16th on a

13  number of what I believe are, sort of, calculation issues and

14  then another summary judgment motion on the 21st of January -

15  - sorry, the 28th of January on the issues that you just

16  mentioned.

17         MS. CHAN:  That is correct.

18         THE COURT:  What would be super helpful, just for

19  me, is when you submit your agreed order if you could just,

20  in that order identify the issues that will be the subject of

21  the motions just so that when I look at it I can, at least,

22  begin to think about how the -- I just want to make sure I am

23  not doing anything inadvertent on the motion that is set for

24  -- I'm sorry, so what did we say, December 16th.

25         MS. SMITH:  16th.

1          THE COURT:  Right. So, what we have got on

2    December 16th is a summary judgment motion on those issues

3    and that is set for 10 o'clock on the 16th.  I just wanted to

4    make sure that I'm keeping the different issues straight.

5    There are a lot of different moving parts and I want to make

6    sure I have got it right.  That is very helpful. Thank you

7    for your patience.

8          MS. CHAN:  Thank you, Your Honor.

9          THE COURT:  Okay.

10          MR. LEVIN:  Good morning, Your Honor.  Sam Levin

11    from Groom Law Group.

12          I just wanted to add two clarifications and also

13    thank the debtors for working out a schedule with us.  With

14    respect to the group of seven SFA funds that we represent I

15    just wanted to clarify that we have an agreement between the

16    parties that basically every issue that the parties believe

17    are still outstanding will be included in that summary

18    judgment briefing that there aren't any remaining issues that

19    the parties aren't pushing forward.

20          THE COURT:  Okay.

21          MR. LEVIN:  Then with respect to one of the non-

22    SFA funds we represent the IAM national fund.  We have a

23    separate agreement with debtors that we are not moving

24    forward on that same schedule and we hope to be able to reach

25    a resolution.

1           THE COURT:  Okay, very well.  Thank you.

2           MR. LEVIN:  Thank you, Your Honor.

3           THE COURT:  Okay.  With respect to the -- this is

4  very helpful, so I appreciate all of this clarification.

5  With respect to status and scheduling is there anything else

6  that I need to understand?

7       (No verbal response)

8           THE COURT:  Okay, very well.  Ms. Smith.

9           MS. SMITH:  Thank you, Your Honor.  Allyson Smith,

10 Kirkland & Ellis, for the debtors.

11          Just a really quick detour before I got into the

12 disclosure statement, not to throw something else at you.

13          THE COURT:  Okay.  That is what I am here for.

14          MS. SMITH:  We do appreciate Your Honor's guidance

15 on the docket last night with respect to the correspondence

16 that we submitted to your Chambers.  We did have one question

17 come up and to the extent you are able to shed light --

18          THE COURT:  I will do my best.

19          MS. SMITH:  -- specifically with respect to the

20 partial summary judgment and whether that applies to certain

21 or all of the affirmative defenses available or unavailable

22 to the debtors.  If you don't want to provide --

23          THE COURT:  No.  Look, I want to be as helpful as

24 I can.  Its unusual to issue the docket entry I did. I

25 decided in the scheme of things this doesn't need to be a

1  murder mystery and that there is -- and that it made more

2  sense to keep the case moving then to deliver an opinion I

3  will drop on you all at once.  Again, you know, if as I go --

4  until its done its not done.  So, if something happens and I

5  change my mind and the shape of the case changes we will have

6  to deal with that, but it seems to me I should do my best to

7  let you all prepare for trial as best we can.

8          So, with respect to the affirmative defenses, as I

9  understand it, right, there are the two statutory affirmative

10  defenses and the faltering business and unanticipated

11  business circumstances.  Then there is the, sort of,

12  liquidating fiduciary defense which you could have a

13  conversation of whether that is an affirmative defense or

14  not, but the argument is you are not an employer because you

15  are a liquidating fiduciary.

16          What I am saying is everyone should proceed to

17  trial on the assumption that I will grant the plaintiffs

18  summary judgment motion about the unavailability of those

19  defenses. Does that answer your question?

20          MS. SMITH:  Yes. It does, Your Honor.

21          THE COURT:  Okay.

22          MS. SMITH:  So, moving to the disclosure statement

23  and, again, we did want to thank the Court for its patience.

24  We got our documents on file a little bit later then intended

25  yesterday.

1          THE COURT:  So, I have had a chance to read the

2    reply brief.  We are caught up and I think that all we need

3    is an order which I think is being uploaded granting leave to

4    file the reply and we're going to grant that because I have,

5    in fact, read it.  So, I think I am, at least, as up to speed

6    as I am going to be.

7          MS. SMITH:  Okay.  Obviously, to the extent you

8    need redlines or drafts we have those available and can

9    provide them.

10          So, perhaps before jumping into the specifics I

11   will just give a fresh refresher as to where we are and what

12   we had expected to occur between now and the confirmation

13   hearing in early February.  As Your Honor will recall we

14   originally filed our plan and disclosure statement in early

15   September.  At that time the plan provided flexibility to

16   potentially allow the debtors to restructure as a LeaseCo or

17   some other similar entity.

18          Unfortunately, following the summary judgment

19   ruling on the MEPP claims objection that is no longer a

20   viable option and the debtors pivoted to a straight plan of

21   liquidation that will monetize remaining assets and

22   distribute that value to creditors.  A revised plan and

23   disclosure statement along with a disclosure statement motion

24   and solicitation materials was filed in early October

25   reflecting that revised structure.

1    Since then, we have continued to work with parties
2 to garner consensus and while there are certain key terms
3 unresolved we have made tremendous progress to date.  To that
4 end we filed a revised plan and disclosure statement
5 including revised liquidation analysis last night. Those are
6 at Docket Nos. 4974 and 4975 respectively, along with a
7 revised order and revised solicitation materials at Docket
8 No. 4977.  Then as you saw, our reply at Docket No. 4978.

9    So, assuming that we are successful today in
10 getting approval of the disclosure statement we will complete
11 solicitation of the -- or service of the solicitation
12 packages by early December.  We did build in some time to
13 account for the Thanksgiving holiday with a goal to be in
14 front of Your Honor on February 4th for confirmation.

15    We are proposing a slightly longer solicitation
16 period to account for the number and nature of voting parties
17 as well as the numerous holidays this time of year.  We want
18 to be sure and think its prudent to make sure parties do have
19 sufficient time.  Concurrently, with this timeline we are
20 proceeding with what we have been referring to as phase two
21 of the sale process for our remaining real estate assets. The
22 initial indication of interest deadline passed on October
23 18th.  We filed a supplemental notice of further deadlines
24 earlier this week and those deadlines propose a January 6th
25 bid deadline, an auction in mid-January, and sale hearing on

1  January 30th.  So for better or worse you will be seeing a

2  lot of us in January.

3              THE COURT:  So, we will hold the January 30th date

4  which was the original confirmation hearing.

5              MS. SMITH:  Yes.

6              THE COURT:  Got it.  Okay, understood.  That is

7  helpful.

8              MS. SMITH:  Thank you, Your Honor.  Finally, we

9  are, of course, continuing to prosecute our claims objections

10 which we just walked through.  So, while we are pleased to be

11 moving these cases to resolution, obviously, quite a bit of

12 work still to be done.

13             Again, the fact that we did file revised documents

14 late, I will very briefly walk through some of the revisions.

15 In addition to a number of informal comments the debtors

16 received three formal objections: Central States to which

17 other multi-employer pension plans joined, an objection from

18 the U.S. Trustee, and a limited objection from MSN and Mobile

19 Street.

20             THE COURT:  Ms. Smith, can I make the following

21 suggestion?

22             MS. SMITH:  Yes.

23             THE COURT:  My -- in terms of, you know, getting

24 to a disclosure statement that contains adequate information

25 and apprises creditors fairly of what they need to know in

1  order to cast an informed vote it seems to me that -- it has

2  got to be the case that we can get to such a document today.

3  What I think would be most helpful would be -- apologies if

4  this is a little -- it's not that unconventional, I have seen

5  this before, is that we just sort of go through it and, you

6  know, we should all be working off of the same document and

7  as we go through it if there is someone who says it says X

8  but it should also say Y we can just deal with that in real

9  time and I can resolve whatever disputes there are and we can

10 just, sort of, walk through the document and order.

11           Is there any reason we shouldn't proceed that way?

12           MS. SMITH:  Only because I think I am going to

13 make your life easier.

14           THE COURT:  You are going to say you have solved

15 it all for me.

16           MS. SMITH:  We have solved it all for you.

17           THE COURT:  Okay.

18           MS. SMITH:  The one --

19           THE COURT:  Thank you.

20           MS. SMITH:  -- caveat is with respect to the

21 additional disclosures requested by MFN and Mobile regarding

22 the IBT litigation in Kansas.  We are fine tuning that with

23 MFN and the IBT.  We have spoken to both parties.  We are

24 committed to all working together to work that out, but I

25 don't know that we need to go through it in real time.

1        THE COURT:  So, look, I have been through the

2   redlines and my reaction was I thought it resolved everything

3   but I wasn't -- I didn't want to step on anyone's rights if

4   someone wanted to be heard that there were issues with the

5   document.  So, what you are saying is there is nobody in the

6   courtroom today who wants to stand up and argue that the

7   document should include words that it doesn't include.

8        MS. SMITH:  That is the debtors understanding,

9   Your Honor.

10        THE COURT:  Okay.  Now with respect to the

11   disclosures as they relate to the releases, do I have an

12   issue there?

13        MS. SMITH:  I don't believe so, although there is

14   an issue -- there are certain objections raised by the U.S.

15   Trustee with regard to the releases, exculpation and

16   injunction generally.  We view those as confirmation issues

17   but we did want to address the releases.

18        THE COURT:  Right.  So, let's take this in pieces.

19   What seems to me -- and I understand we have got the issue on

20   the solicitation motion about the form of the ballot.  Let's

21   hold that aside and come back to that afterwards.  What

22   seemed to me to be things properly before me today would be

23   anything that relates to the actual disclosure of the

24   releases themselves or to the solicitation process, right.

25        What I don't want to do is approve a process today

1  that will lead to a confirmation issue that could have been

2  solved if only I had said something different today.  So, to

3  the -- I understand there are times when people say that

4  those are confirmation issues and I want to be clear that

5  isn't my view.  That if there is something the solicitation

6  materials I think approval of the materials is saying that

7  going forward with these materials won't, themselves, give

8  rise to a reason why I can't confirm the plan.  Does that

9  make sense?

10          MS. SMITH:  Yes.  Absolutely, Your Honor, and that

11  is why we did want to address the releases and particularly

12  the opt-in mechanism.

13          THE COURT:  Right.  So, I know I have got that

14  issue.  Then as to the -- look, there is this question -- I

15  saw the question about whose exculpated. I think that is

16  probably a confirmation issue, right, because the plan either

17  does or doesn't permissibly exculpate people who are or

18  aren't fiduciaries and as to acts that have or haven't

19  already occurred by the date of the order that, I think,

20  doesn't need to be resolved today.  I think that is a

21  confirmation issue.

22          So, what you are saying is the only thing that is

23  really before me today is the opt-in, opt-out mechanism?

24          MS. SMITH:  Yes.

25          THE COURT:  Is there anyone who is here that

1  thinks there is something else that I ought to be resolving

2  today or has an objection to what the debtor proposes?

3         Ms. Lahaie.

4         MS. LAHAIE:  Good morning, Your Honor.  Meredith

5  Lahaie, Akin Gump Strauss Hauer & Feld, for the official

6  committee.  Is now a good time, Your Honor, to speak to our

7  statement or would you prefer to move that to after the

8  releases discussion?

9         THE COURT:  So, I have seen your statement.  It

10  seems to me that your statement really purely is a

11  confirmation issue. If you want a chance to say what you want

12  to say I am happy to hear you but I am not sure there is --

13  am I right that there isn't an issue to be resolved, you just

14  sort of want to make a record.

15         MS. LAHAIE:  You are exactly correct, Your Honor,

16  as is debtors counsel.  There is no issue here that needs to

17  be resolved per say, but given our role as a fiduciary for

18  unsecured creditors and given the fact that the Class V

19  general unsecured creditor class is the class that will need

20  to accept this plan.  We did think it was important for the

21  Court and for all the parties in interest to understand where

22  the committee lives on this plan today regarding purposes.

23         THE COURT:  Okay.  Understood.  I have read your

24  statement but to the extent you want to make a record you are

25  certainly welcome to.

1          MS. LAHAIE:  I will very quickly, Your Honor.  And

2    as Ms. Smith notes and we agree, we have made significant

3    progress working with the debtors on appropriate consent

4    rights, on tweaks to the treatment of classes under the plan,

5    incorporation of protective insurance provisions, the

6    deletion of identification obligations, etc.  But as Your

7    Honor is aware and I think all the parties in the courtroom

8    are now aware, we do have an issue of critical importance

9    that has not been resolved and that relates to the governance

10   that will control the liquidating trust including both the

11   trustee and the trust advisory board.

12          I think there is no dispute to date and especially

13   as we hear about the myriad of other issues that need to be

14   resolved in this case that unsecured creditors represent the

15   sole beneficiaries of the trust. Indeed, the debtors estimate

16   themselves to the best-case scenario for the recoveries under

17   these cases will likely be significantly less than 50 cents

18   on the dollar.

19          We have generally been patient, Your Honor.  We

20   have been targeted, we have been thoughtful about the issues

21   that we bring to the Court and that we ask the Court to

22   intervene on.  And we have made every effort to work with the

23   debtors to move these cases constructively forward but we do

24   think that now is the time, now that we are finally at the

25   plan stage and the plan process, for unsecured creditors to

1  control their destiny and to have the ability to dictate how

2  those assets are resolved and how they are distributed to

3  unsecured creditors.

4           Your Honor will, of course, know that the vast

5  majority of the cases that address these kinds of issues have

6  found that the committee, as the representative for the true

7  economic beneficiaries of the trust, should be controlling

8  both the trustee and the designation of the advisory board.

9  We cited a number of cases in our statement. Obviously, that

10 list is not exclusive.

11          As we state in our pleading, control over trust

12 governance is consistent with how Courts have interpreted

13 1123(a)(7), analogous to how a Chapter 7 Trustee would be

14 appointed.  The dialog, of course, does remain open with the

15 debtors.  We are hopeful and optimistic that we will resolve

16 the issue ahead of confirmation.  We hope to get there but we

17 do want the Court and the parties in interest to know that if

18 we don't get there we will be objecting to confirmation.

19          Given the criticality of this issue to the

20 committee and unsecured creditors we will also be

21 recommending that unsecured creditors vote to reject the plan

22 if we are not able to resolve this issue. The Court may have

23 seen that the debtors, in connection with the solicitation

24 materials, will be including a letter from the committee that

25 advises them of the concerns that the committee has

1  identified and urges folks to hold off on voting on the plan

2  until the issue has either been resolved or not resolved at

3  which point we will file a subsequent letter on the docket

4  making a formal recommendation to unsecured creditors.

5          Of course, as I noted, Class V is required here to

6  be the impaired accepting class under the plan. I am hopeful

7  and optimistic that we will be able to resolve this issue and

8  I am hopeful that the debtors will not allow this issue to

9  derail all of the parties hard work on the plan process.

10         THE COURT:  Thank you, Ms. Lahaie.

11         MS. LAHAIE:  Thank you.

12         THE COURT:  Let me hear from anyone who wants to

13  be heard.

14         Ms. Good.

15         MS. GOOD:  Good morning, Your Honor.  Katie Good

16  from Potter Andreson & Corroon on behalf of MFN Partners and

17  Mobile Street.

18         We are glad that we could work with Ms. Smith and

19  her colleagues to include language in the disclosure

20  statement that resolved our concerns for purpose of today's

21  hearing.  That included some language with respect to the IBT

22  claims and we will continue to work with the debtors and IBT

23  to finalize that language after today's hearing.

24         In response to what the committee just stated, I

25  wanted to rise because we also raised issues regarding

1  governance of the liquidating trust and the liquidating trust

2  board, and in particular any conflict in recusal procedures

3  for the governance and members of that board in our limited

4  objection.  And while that may be an issue for confirmation,

5  we do disagree with the committee's position that they can

6  completely control their destiny.

7           Particularly, we believe that the case law makes

8  exceptions where there are potential conflicts.  As a result,

9  the language that we worked with the debtors to include in

10  the disclosure statement, we believe, provides information to

11  creditors to highlight our concerns so that creditors have

12  the ability to review the plan supplement and in particular

13  any recusal procedures that may be included in the

14  liquidating trust agreement and governance documents as they

15  vote on the plan.

16           With those additions we are resolved for purpose

17  of today; of course, reserving all of our rights to raise

18  these issues with respect to the confirmability of the plan

19  at the confirmation hearing.

20           THE COURT:  Thank you, Ms. Good.

21           Ms. Kaufman.

22           MS. KAUFMAN:  Good morning, Your Honor.  Susan

23  Kaufman for the Teamsters.

24           As has been highlighted to the Court, there is

25  still an open issue with respect to certain language in the

1   disclosure statement that was added late last night with

2   respect to MFN.  We didn't see this language until shortly

3   before it was filed with the Court.  We have committed to

4   work with both MFN and the debtors to come up with agreeable

5   language, but to answer Your Honor's question that Your Honor

6   posed to debtors counsel does anyone have an issue with any

7   of the language that is presently in the version before the

8   Court the answer is yes, we still do, but we are committed to

9   working with the debtors as soon as possible after the

10  hearing to come up what agreeable language.

11              THE COURT:  Okay, very well.  That is very

12  helpful.

13              MS. KAUFMAN:  Thank you, Your Honor.

14              THE COURT:  Thank you, Ms. Kaufman.

15              Anyone else wish to be heard?

16         (No verbal response)

17              THE COURT:  Okay.  Ms. Smith, I take it your

18  rights are, obviously, reserved with respect to the issues

19  that others have raised.  This all sounds to me like falling

20  into two categories.  One, things that you all expect to

21  resolve without my help and things that aren't before me

22  today and where I will do the least harm to the process if I

23  say nothing.  So, I will try to follow that admonition and

24  allow the process to play itself out.

25              MS. SMITH:  That's perfect.  Thank you, Your

1  Honor.

2              THE COURT:  Okay, very well.

3              MS. SMITH:  So, you saw our reply. I don't think

4  it's anything that the debtors necessarily need to supplement

5  or say on the governance piece.  Yes, we are committed to

6  working with parties to try and resolve that.

7              So, again, our understanding is the only issue

8  really before Your Honor today which is the opt-in mechanism

9  of the releases.  The debtors plan does propose, in our view,

10  a consensual opt-in mechanism and contrary to the U.S.

11  Trustees assertions the opt-in is not acceptance by silence

12  and does require an affirmative act on behalf of parties.

13              For those non-voting classes, they receive an opt-

14  in form that they must complete and return. If its returned

15  with the box checked they have opted in, if its returned

16  without the box checked or no actions taken at all they,

17  obviously, do not opt-in.

18              THE COURT:  Okay.

19              MS. SMITH:  For voting parties, and this is where

20  the trustee raised its objection, that accept to the plan

21  they are deemed to have opted in and consented to the third-

22  party release regardless of whether they also checked that

23  opt-in box on their ballot. All of the materials are

24  abundantly clear and up front as to the release provisions,

25  related definitions, and consequences of opting in or not.

1          THE COURT:  Am I right, this is the only issue

2  that is left?

3          MS. SMITH:  Yes.

4          THE COURT:  So, Ms. Smith, on this issue -- look,

5  I didn't resolve it in Smallhold, but I said a few words

6  that, you know, hint at my concerns here.  Can I ask you this

7  question: Imagine I were to approve the form in you form and

8  then I had, at confirmation, one of these general  unsecured

9  creditors who got to that podium and said, Judge, I voted in

10  favor, I saw that language but, look, the reason I voted in

11  favor is because I think the treatment of my allowed

12  unsecured claim is perfectly appropriate. It proposes to pay

13  me X, I think X is fair, I voted in favor for that reason.

14          I am against the release, that is a confirmation

15  issue. I am here at confirmation and this plan is

16  unconfirmable and if you confirm it over this objection I

17  intend to appeal and say this is a non-consensual release.

18  What am I supposed to do then?

19          MS. SMITH:  Again, the creditor was well aware,

20  well-informed, and accepting the plan is accepting the plan

21  in its entirety.  It's not --

22          THE COURT:  So, let's talk about that because I

23  don't -- I see you say that.  I know there are occasional --

24  there is some language in some cases that say that but I

25  don't really think that is right.  Let's explore it, right.

1  Imagine we have got a case in which there's a creditor who is

2  a landlord with two pieces of real property that are leased

3  to the debtor; one lease is assumed and assigned to the

4  buyer, the other is rejected.

5         The creditor is perfectly -- the unsecured claim

6  is allowed, the creditor is perfectly happy with the

7  treatment of their allowed unsecured claim but doesn't

8  believe that the cure amount is correct and its in the plan.

9  Can we say to that landlord if you vote in favor of the plan

10 you may not raise the fact that the cure amount is incorrect.

11        MS. SMITH:  No, because it's a separate mechanism

12 to object to the cure amount.

13        THE COURT:  Well, why couldn't someone respond to

14 that by making just the point you just did. I have offered

15 you a package deal, the plan you either accept it or you

16 don't, and your choice is to reject it but if you accept the

17 plan, if you vote in favor of it I don't want to hear from

18 you that you don't like the cure amount.  If you can't do

19 that then why can you do what you are doing?

20        MS. SMITH:  Well, a party could object to the

21 release as your noting and that could operate as an effective

22 opt-out of the release.

23        THE COURT:  So, that is my problem. I agree with

24 that, that is the right answer. The problem is you are asking

25 me to approve a disclosure statement that, effectively, is

1  making a false statement to the creditor that if you vote in

2  favor, you can't be heard further and its not right. I am not

3  comfortable approving language telling a creditor something

4  that isn't true.  You see my problem?

5          MS. SMITH: Yes.  Understood,  Your Honor.  I

6  think we are all kind of navigating this.

7          THE COURT:  I understand that and everyone is

8  doing the best they can. I am not faulting anyone for raising

9  this issue but I am just trying to --

10          MS. SMITH:  We hear Your Honor and we will

11  certainly take your guidance.  Again, the last thing that we

12  want is to be at confirmation months from now and having to

13  kind of backtrack and resolicit.

14          THE COURT:  Right.  That is what I am trying to

15  avoid too.  Look, there is -- you are right that the

16  consequences of how we deal with the fallout of Perdue is

17  we're all trying to figure out.  I am not saying that the

18  world in which I am living is the world that, as a matter of

19  policy, I think is the best bankruptcy policy but I think I

20  am bound by the law in these regards and want to just do this

21  in a way that is logical and coherent and, most of all, is

22  clear.  I think whatever the rules are everyone will be able

23  to follow and I just sort of want to do it in a way that is

24  clear and simple and coherent.

25          MS. SMITH:  Understood, Your Honor. Obviously, we

1  are not trying to do anything that would confuse our

2  creditors either.  So, we are fine to revise to make it an

3  affirmative opt-in for the voting parties.

4           THE COURT:  Okay.  So, not to do the U.S. Trustees

5  work for it, but what is left?

6           MS. LEAMY:  Good morning, Your Honor.  Jane Leamy

7  for the U.S. Trustee.

8           Thank you and thank you to the debtors for that. I

9  think that resolves the issues that were remaining with

10  respect to the U.S. Trustees objection.

11           THE COURT:  Okay.

12           MS. LEAMY:  I would just request that we be able

13  to review the language that was submitted to the Court.

14           THE COURT:  It sounds like there is no objection

15  to that.  In any event, the parties need to work out language

16  to resolving this MFN Teamsters language issue, right?

17           MS. SMITH:  Correct.  We will certainly make sure

18  that all parties are on board before we submit.

19           THE COURT:  All right.

20           MS. LEAMY:  The one caveat to that, Your Honor,

21  there were certain named parties that are deemed to consent

22  to the releases.  Presumably those parties will consent but

23  its not clear in the documents.  I believe it's the committee

24  and certain other parties.

25           MS. SMITH:  Yes.  As Your Honor likely saw, the

1  releases are still bracketed because the committee is

2  completing their investigation.  We are happy to disclose at

3  confirmation and upon resolution of that which parties have

4  affirmatively consented to the release.

5          THE COURT:  Okay.  So is there an issue that I

6  need to resolve at this stage then?

7          MS. LEAMY:  As long that they will affirmatively

8  consent and if they don't they're not bound by the releases.

9          THE COURT:  Ms. Lahaie.

10          MS. LAHAIE:  Meredith Lahaie for the committee.

11          I can confirm that we will have completed our

12  investigation ahead of confirmation and will be prepared to

13  confirm that we opt-in at that time.  Presumably that is

14  where we are going to land.

15          THE COURT:  So, if there isn't a dispute for me to

16  resolve I am happy to do nothing which is really what I do

17  best.

18          MS. SMITH:  Otherwise, unless anyone has anything

19  else I think that was it for today.  We will revise

20  accordingly and we will submit a revised order and disclosure

21  statement to Chambers.

22          THE COURT:  So, from the debtors perspective that

23  resolves the agenda for today?

24          MS. SMITH:  Yes.

25          THE COURT:  Is there any other party in interest

1  that would like to be heard with respect to any other matter?

2       (No verbal response)

3          THE COURT:  All right.  Let me thank the parties.

4  Look, I appreciate that not everything in this case is

5  consensual but an awful lot is. I appreciate that as a result

6  of an awful lot of hard work and to the extent you bring me

7  disputes to resolve that is the job for which I signed up and

8  I am happy to do it and hope to do it,  you know, in a way --

9  there is no way to do that in a way that makes everybody

10  happy, but I do hope to do it in a way that allows the case

11  to proceed in an orderly fashion.  So, all of the help you

12  have all provided in that process is enormously helpful and

13  appreciated.

14          So, in the absence of anything else thanks to all

15  of you. I guess I will be seeing a fair amount of you in the

16  coming months.  So, if anything were to arise that requires

17  our attention you know where to find us.  With that we are

18  adjourned.  Thank you.

19          MS. SMITH:  Thank you, Your Honor.

20       (Proceedings concluded at 10:10 a.m.)

21

22

23

24

25

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.


/s/ William J. Garling                    November 21, 2024

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable


/s/ Tracey J. Williams                    November 21, 2024

Tracey J. Williams, CET-914

Certified Court Transcriptionist

For Reliable