## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Proposed Hearing Date:** |
| | ) **December 18, 2024 at 2:00 p.m. (E.T.)** |
| | ) |
| | ) **Proposed Objection Deadline:** |
| | ) **December 18, 2024 at 10 a.m. (E.T.) or orally at Hearing** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING (A) THE ASSET PURCHASE AGREEMENT WITH ESTES EXPRESS LINES AND (B) THE ASSET PURCHASE AGREEMENT WITH RAMAR LAND CORPORATION; (II) AUTHORIZING AND APPROVING THE SALE OF THE ACQUIRED ASSETS UNDER THE ASSET PURCHASE AGREEMENTS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES UNDER THE ESTES ASSET PURCHASE AGREEMENT; AND (IV) GRANTING RELATED RELIEF

1.     The above-captioned debtors and debtors in possession (collectively, the "Debtors") seek entry of an order (the "Order"), attached hereto as **Exhibit A**, (i) approving and authorizing the Debtors' entry into those certain Asset Purchase Agreements, substantially in the forms attached to the proposed Order as Schedule 1 (together with all exhibits, appendices, and supplements thereto, the "Estes Asset Purchase Agreement") and Schedule 2 (together with all exhibits, appendices, and supplements thereto, the "R&L Asset Purchase Agreement" and, together with the Estes Asset Purchase Agreement, the "Asset Purchase Agreements"), each dated as of December 6, 2024, by and among Debtor Yellow Corporation ("Yellow") and its Debtor

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

subsidiaries named therein and, respectively, Estes Express Lines ("Estes") and RAMAR Land Corporation ("R&L"); (ii) approving and authorizing the sales of the applicable Acquired Assets thereunder (respectively, as defined in the Estes Asset Purchase Agreement, the "Estes Acquired Properties", and in the R&L Asset Purchase Agreement, the "R&L Acquired Property" and, together with the Estes Acquired Properties, the "Subject Properties")) free and clear of all liens, claims, and encumbrances (collectively, the "Liens"), with such Liens attaching only to the proceeds of the respective sales with the same validity, priority, force and effect such Liens had on the applicable Acquired Assets immediately prior to such sales; and (iii) granting related relief.

2.      In support of this motion (the "Motion") and the relief requested hereby, the Debtors will substantially contemporaneously herewith submit the *Declaration of Cody Leung Kaldenberg in Support of Debtors' Motion for Entry of an Order (I) Approving (A) the Asset Purchase Agreement with Estes Express Lines and (B) the Asset Purchase Agreement with RAMAR Land Corporation; (II) Authorizing and Approving the Sale of the Acquired Assets Under the Asset Purchase Agreements Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption and Assignment of Certain Unexpired Leases Under the Estes Asset Purchase Agreement; and (IV) Granting Related Relief* (the "Kaldenberg Declaration").

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), to the entry of a

2

final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

<u>**Background**</u>

6.      On August 6, 2023 (the "<u>Petition Date</u>") and continuing into August 7, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  These chapter 11 cases (the "<u>Chapter 11 Cases</u>") have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169].

7.      The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 16, 2023, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors [Docket No. 269] (the "<u>Committee</u>").  No trustee or examiner has been appointed in these chapter 11 cases.

8.      One week prior to the Petition Date, on July 31, 2023, the Debtors, through their investment banker, Ducera Partners ("<u>Ducera</u>") commenced a marketing and sale process for their extensive portfolio of Real Property Assets.[2]  As described in the Kaldenberg Declaration, the

---

[2]   *See Declaration of Cody Leung Kaldenberg In Support of The Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 515] (the "<u>Kaldenberg Bidding Procedures Declaration</u>")

3

Subject Properties were included in the Debtors' prepetition marketing launch, which involved outreach by Ducera to approximately 650 prospective purchasers.

9.  On September 15, 2023, the Court entered the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Therefore; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order").

10.  Pursuant to the Bidding Procedures Order, Bids for the Debtors' Real Property Assets, including for the Subject Properties, were due November 9, 2023 at 5:00 p.m. (E.T.) (the "First Bid Deadline").  As described in the Kaldenberg Declaration, the Debtors and their advisors, including Ducera, in consultation with the Committee, determined as of the First Bid Deadline that the competitive dynamics for the Subject Properties were insufficient to support a value-maximizing auction for the Subject Properties at the time.  Accordingly, the Subject Properties, among other of the Debtors' Real Property Assets, were not made subject to the Auction held on November 28-30, 2023 (the "First Auction").

11.  On September 25, 2024, the Debtors filed the *Notice of Supplemental Dates and Deadlines Under Bidding Procedures Order Regarding Debtors' Continued Sale Process* [Docket No. 4425] (the "September Sale Process Notice"), setting October 18, 2024 at 5:00 p.m. (E.T.) as the deadline (the "IOI Deadline") for prospective bidders to submit non-binding, written

indications of interest ("IOIs") to the Debtors for any of the properties, including the Subject Properties, in the Debtors' Remaining Real Estate Portfolio.

12.  On November 18, 2024, the Debtors filed the *Notice of Further Supplemental Dates and Deadlines Regarding Continued Sale Process for Debtors' Remaining Properties, Including Bid Deadline, Auction, and Sale Hearing* [Docket No. 4952] (the "November Sale Process Notice"), setting January 6, 2025 at 5:00 p.m. (E.T.) as the Bid Deadline for the Remaining Properties (the "Bid Deadline") and January 13-15, 2025 at 9:00 a.m. (E.T.) as the Auction (if any) for the Remaining Properties (the "Auction"). The November Sale Process Notice provides that "the Debtors reserve all rights under the Bidding Procedures Order, including, without limitation, to further modify the Bidding Procedures (including regarding the matters set forth herein) and to seek all value-maximizing alternatives for the Remaining Properties in accordance with the terms thereof."

13.  As described in the Kaldenberg Declaration, following the IOI Deadline, the Debtors and their advisors analyzed all IOIs received, including for the Subject Properties. Further, the Debtors' advisors held discussions with the Committee's advisors regarding the Debtors' go-forward sale process and value-maximization of the Remaining Real Estate Portfolio generally. With respect to the Subject Properties, in light of IOIs received for the Subject Properties at the IOI Deadline, and for the reasons as further described in the Kaldenberg Declaration (including the value for the Subject Properties expressed by Estes and R&L), the Debtors determined, in consultation with the Committee, to pursue direct negotiations with Estes and R&L for the Estes Asset Purchase Agreement and the R&L Asset Purchase Agreement, respectively, in lieu of subjecting the Subject Properties to the Bid Deadline and the Auction.

14. The Bidding Procedures provides that the Debtors, in their business judgment and in consultation with the Committee, may enter into private sale transactions for their Real Property Assets in lieu of bringing them to the Bid Deadline and the Auction. As described in the Kaldenberg Declaration, entry into and consummation of the Estes Asset Purchase Agreement and the R&L Asset Purchase Agreement represent the value-maximizing alternatives for the Subject Properties. Accordingly, the Debtors have engaged in hard-fought, good faith, and arms-length negotiations with Estes regarding the Estes Asset Purchase Agreement and with R&L regarding the R&L Asset Purchase Agreement.

15. On December 3, 2024 and December 4, 2024, respectively, the Debtors' advisors shared advanced drafts of the Estes Asset Purchase Agreement and the R&L Asset Purchase Agreement with the advisors to the Committee.

16. On December 6, 2024, the Debtors and Estes executed the Estes Asset Purchase Agreement, and the Debtors and R&L executed the R&L Asset Purchase Agreement.

17. On December 10, 2024, the Debtors filed this Motion and the *Motion to Shorten the Notice Period With Respect to the Debtors' Motion for Entry of an Order (I) Approving (A) the Asset Purchase Agreements with Estes Express Lines and (B) the Asset Purchase Agreement with RAMAR Land Corporation; (II) Authorizing and Approving the Sale of the Acquired Assets Under the Asset Purchase Agreements Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption and Assignment of Certain Unexpired Leases Under the Estes Asset Purchase Agreement; and (IV) Granting Related Relief* (the "Motion to Shorten") and the proposed Order attached hereto as **Exhibit A**, seeking approval of the Asset Purchase Agreements and the transactions contemplated in each case thereunder (as applicable,

the "Estes Sale Transactions" and the "R&L Sale Transactions", and collectively, the "Sale Transactions").

**Asset Purchase Agreements**

## I. The Marketing Process.

18. As described in the Kaldenberg Bidding Procedures Declaration and the Kaldenberg Declaration (the latter filed in support of the relief requested by this Motion), the Debtors commenced their marketing and sale efforts for their Real Property Assets, including the Subject Properties, one week prior to the Petition Date. Accordingly, the Debtors have been marketing the Subject Properties for approximately eighteen months—leaving no stone unturned.

19. In advance of the Petition Date, the Debtors retained Ducera to serve as their investment banker, which retention was subsequently approved by the Court.[3] As described in the First Day Declaration,[4] Ducera's mandate included leading a comprehensive marketing and sale process for the Real Property Assets, including the Subject Properties. Throughout these Chapter 11 Cases, Ducera has thoroughly canvassed the market of prospective purchasers of the Real Property Assets, including all of the Debtors' former LTL competitors and hundreds more strategic, financial, and real estate investment parties. Indeed, Ducera's process involved contacting approximately 650 parties at the launch of the marketing process and subsequently entering into non-disclosure agreements with over 400 interested parties.[5] Furthermore, the

---

[3]  *See Order (I) Authorizing the Retention and Employment of Ducera Partners LLC as Investment Banker to the Debtors Effective as of the Petition Date, and (II) Granting Related Relief* [Docket No. 648] and *Amended Order (I) Authorizing the Retention and Employment of Ducera Partners LLC as Investment Banker to the Debtors Effective as of the Petition Date, and (II) Granting Related Relief* [Docket No. 4200].

[4]  *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14].

[5]  *Declaration of Cody Leung Kaldenberg in Support of the Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Certain Unexpired Leases and (II) Granting Related Relief* [Docket No. 2202]

4907-4331-3925.1 96859.001

Debtors' published the Auction Notice (as defined in the Bidding Procedures) in *The New York Times* [Docket No. 643] and *The Globe & Mail* [Docket No. 644], and these Chapter 11 Cases and the Debtors' sale efforts have been widely covered in national news and trade publications.

20.     Moreover, in August 2024, the Debtors retained CBRE Inc. ("CBRE") as their exclusive real estate broker of for the properties comprising their Remaining Real Estate Portfolio, including the Subject Properties.[6]    Among other services, CBRE provides "marketing and brokerage services in local markets [to] broaden the purchaser pool for the [Remaining Real Estate Portfolio]."    CBRE's efforts have now been underway for several months.

21.     The IOI Deadline for the properties comprising the Remaining Real Estate Portfolio, including the Subject Properties, was October 18, 2024 at 5:00 p.m. (E.T.), and the First Bid Deadline for all of the Real Property Assets, including the Subject Properties, occurred eleven months prior to the IOI Deadline—on November 9, 2023 at 5:00 p.m. (E.T.).    Following the First Bid Deadline, the Debtors and their advisors (including Ducera), in consultation with the Committee and in their sound business judgment, determined to continue marketing the Subject Properties rather than subject them to the First Auction.    Following the IOI Deadline (which followed approximately eleven months of further marketing of the Subject Properties), the Debtors, in consultation with the Committee, determined that pursuing direct discussions with R&L (for the R&L Acquired Property) and Estes (for the Estes Acquired Properties) would maximize the value of the Subject Properties.

22.     Accordingly, through this Motion, the Debtors, in an exercise of their sound business judgment and in consultation with the Committee, seek to enter into and consummate the

---

[6]    *See Order (I) Authorizing the Retention and Employment of CBRE, Inc. as Real Estate Broker and Advisor to the Debtors Effective as of August 16, 2024 and (II) Granting Related Relief* [Docket No. 4183].

Asset Purchase Agreements.  The Debtors' request for this relief follows intensive, hard-fought, and good-faith negotiations with each of R&L for the R&L Asset Purchase Agreement and Estes for the Estes Asset Purchase Agreement.

23.     The Debtors believe that it is beneficial to their stakeholders and will maximize the value of the Subject Properties (and, in turn, their estates and creditor recoveries) to consummate the Sale Transactions under the Asset Purchase Agreements.  The Purchase Price under the Estes Asset Purchase Agreement is $142,500,000 in the aggregate for the seven Owned Properties and the four Leased Properties set forth at Schedules 1.1(a) and 1.1(b), respectively, thereof. The Purchase Price under the R&L Asset Purchase Agreement is $50,000,000 for the R&L Acquired Property.  As described in the Kaldenberg Declaration, the Debtors believe that the alternative to consummating these transactions as private sales—*i.e.*, to instead subject the Subject Properties to the Bid Deadline and the Auction—risks diminishing the significant value that has been achieved under the Asset Purchase Agreements.  Rather, the Debtors, in consultation with the Committee, have determined in their business judgment that the Asset Purchase Agreements maximize the value of the Subject Properties and should be authorized as private sale transactions.

## II.     The Asset Purchase Agreements

24.     The Debtors respectfully seek the Court's authority to enter into and perform under the Asset Purchase Agreements pursuant to the terms and provisions thereof.  Subject to entry of the proposed Order, the Debtors will sell the Acquired Assets to the respective purchasers free and clear of all liens, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code. Further, with respect to the Estes Asset Purchase Agreement, the Debtors seek the Court's authorization to assume and/or assign, as applicable, the Assigned Contracts thereunder to Estes.[7]

---

[7]     Pursuant to the Estes Asset Purchase Agreement, Estes will acquire four Leased Properties from the Debtors— (i) three that have already been assumed by the Debtors (Norway, MI [Docket No. 2385; Dunmore, PA [Docket

25.     The Debtors believe that the total consideration provided by the Purchasers under the Asset Purchase Agreements, in each case, is fair and reasonable, and that the Sale Transactions under the respective Asset Purchase Agreements maximize the value of the Subject Properties. Accordingly, the Debtors, in an exercise of their sound business judgment, seek to enter into the Asset Purchase Agreements and to take all necessary actions in connection with implementing the Sale Transactions pending the Court's entry of the proposed Order.

26.     The following two charts present summaries[8] of the terms and conditions of each of the Estes Asset Purchase Agreement and the R&L Asset Purchase Agreement:[9]

### Estes Asset Purchase Agreement

| Provision | Summary Description |
|---|---|
| **Seller** | Yellow Corporation and its Debtor subsidiaries listed therein |
| **Purchaser** | Estes Express Lines |
| **Acquired Assets** | Seven Owned Properties<br>1535 E Pescadero Avenue, Tracy, CA<br>4320 Merchant Road, Fort Wayne, IN<br>4885 Keystone Boulevard, Jeffersonville, IN<br>311 East Oak Ridge Drive, Hagerstown, MD<br>4480 S 90th Street, Omaha, NE<br>10074 Princeton-Glendale Road, Cincinnati, OH<br>345 Roadway Drive, Ringgold, GA<br><br>Four Leased Properties<br>1001 Stephenson Street, Norway, MI<br>1212 O'Neil Highway, Dunmore, PA |

No. 2804, and Miami FL [Docket No. 2963] and will accordingly now be assigned to Estes; and (ii) one that is required to be assumed or rejected by the Debtors by December 31, 2024 (Orange, CA [Docket No. 1114] and will accordingly be assumed and assigned to Estes.

[8]     To the extent any summary of either of the Asset Purchase Agreements included in this Motion (including in the provided summary charts or the Motion generally) differs in any way from the terms and conditions of the corresponding Asset Purchase Agreement, the actual terms of the Asset Purchase Agreement shall control in all respects.  The ensuing charts are provided for summary purposes only.

[9]     Pursuant to Local Rule 6004-1(b)(iv), a Sale Motion (as defined in the Local Rules) must highlight certain provisions.  Accordingly, the relevant provisions implicating Local Rule 6001-1(b)(iv) are included in this summary.

10

| | |
|---|---|
| | 11301 NW 134th Street, Miami, FL<br>700 N Eckhoff Street, Orange, CA 92868<br><br>*See* Estes Asset Purchase Agreement, Schedule 1.1(a)-(b) |
| **Purchase Price** | $142,500,000<br><br>*See* Estes Asset Purchase Agreement, § 2.1 |
| **Sale to Insider**<br><br>Local Rule 6004-1(b)(iv)(A) | The Purchaser is not an "insider" of the Debtors, as that term is defined in Section 101(31) of the Bankruptcy Code. |
| **Agreements with Management**<br><br>Local Rule 6004-1(b)(iv)(B) | N/A |
| **Releases**<br><br>Local Rule 6004-1(b)(iv)(C) | N/A |
| **Sale**<br><br>Local Rule 6004-1(b)(iv)(D) | Sale of the Acquired Assets pursuant to private sale authorized by the Sale Order. Pursuant to Local Rule 6004-11(b)(iv)(D), the business justifications for the sale are set forth in this Motion and the Kaldenberg Declaration.  The Bidding Procedures provides that the Debtors have discretion to convey Real Property Assets via private sale in their business judgment in consultation with the Consultation Parties (*i.e.*, the Committee). |
| **Conditions Precedent**<br><br>Local Rule 6004-1(b)(iv)(E) | 7.1     Conditions Precedent to the Obligations of Purchaser and Sellers. The respective obligations of each Party to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Sellers and Purchaser) on or prior to the Closing Date, of each of the following conditions:<br><br>(a)     the expiration or termination of any required waiting period under the HSR Act or any other Antitrust Law set forth in Schedule 7.1 applicable to the Transactions, if required, and the receipt of any required approval related to the Transactions under any other Antitrust Law set forth in Schedule 7.1;<br><br>(b)     no Governmental Body of competent jurisdiction shall have issued, enacted, entered, promulgated or enforced any Order (including any temporary restraining Order or preliminary or permanent injunction) or Law restraining, enjoining or otherwise prohibiting the Closing that is continuing in effect; |

(c)      the Bankruptcy Court shall have entered the Sale Order, which shall have become final and non-appealable and shall not have been stayed, reversed, or modified in a manner not acceptable to the Parties; and

7.2      Conditions Precedent to the Obligations of Purchaser. The obligations of Purchaser to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Purchaser in its sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)      (i) the representations and warranties made by Sellers in Article III (in each case, other than the Fundamental Representations and other than the representations and warranties set forth in Section 3.4) shall be true and correct in all respects as of the Closing Date as though made on and as of the Closing Date, except (A) that representations and warranties that are made as of a specified date need be true and correct in all respects only as of such date and (B) to the extent the failure of such representations and warranties to be true and correct as of such dates has not had a Material Adverse Effect and (ii) the representations and warranties set forth in Section 3.1, Section 3.2 and Section 3.7 (collectively, the "Fundamental Representations") shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that such Fundamental Representations that are made as of a specified date need be true and correct in all material respects only as of such date;

(b)      the representations and warranties set forth in Section 3.4 shall be true and correct in all respects as of the Closing Date with respect to each parcel of the Acquired Real Property, provided that in the event the foregoing condition is not satisfied as of the Closing Date with respect to any individual parcel of Acquired Real Property, Purchaser's sole recourse shall be, at Purchaser's option, to exclude such individual parcel of Acquired Real Property from the Acquired Assets and proceed with the Closing with respect to any other parcels of Acquired Real Property included in the Acquired Assets; provided further that (Y) prior to excluding any such parcel, Purchaser shall notify Sellers of the failure of the foregoing condition to be satisfied, together with Purchaser's basis therefor and supporting evidence thereof, and provide Sellers with reasonable opportunity to cure such failure and (Z) in the event

that any individual parcel or parcels of Acquired Real Property are excluded from the Acquired Assets pursuant to the immediately preceding proviso, the Purchase Price shall be reduced by an amount equal to:

(i)    if (i) is not applicable, but the Sellers otherwise have a binding offer or Contract for such parcel or parcels, the value in such binding offer or Contract or

(ii)    as may otherwise be mutually agreed upon in writing between the Parties;

(c)    Sellers shall not have breached in a manner that is material with respect to the Transactions, taken as a whole, the covenants required to be performed or complied with by Sellers under this Agreement on or prior to Closing; and

(d)    Purchaser shall have received on and as of the Closing Date a certificate of an authorized officer of Sellers confirming that the conditions set forth Section 2.4 have been satisfied.

(e)    As of the Closing Date, no right of first refusal relating to any individual parcel or parcels of Acquired Real Property shall have been exercised, and the deadline to exercise any such right of first refusal shall have expired. In the event that the foregoing condition is not satisfied as of the Closing Date, Purchaser may elect, in its sole and absolute discretion, to exclude such individual parcel or parcels of Acquired Real Property from the Acquired Assets and proceed with the Closing, with the Purchase Price to be reduced by an amount determined pursuant to the methodology set forth in Section 7.2(b) hereof.

7.3    Conditions Precedent to the Obligations of Sellers. The obligations of Sellers to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Sellers in their sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)    the representations and warranties made by Purchaser in Article IV shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that representations and warranties that are made as of a

4907-4331-3925.1 96859.001

| | |
|---|---|
| | specified date need be true and correct in all material respects only as of such date; |
| | (b)    Purchaser shall not have breached in a manner that is material with respect to the Transactions, taken as a whole, the covenants required to be performed or complied with by it under this Agreement on or prior to the Closing Date; and |
| | (c)    Sellers shall have received on and as of the Closing Date a certificate of an authorized officer of Purchaser confirming that the conditions set forth in Section 2.5 have been satisfied. |
| | *See* Estes Asset Purchase Agreement, §§ 7.1–7.3 |
| **Closing and Other Deadlines**<br><br>Local Rule 6004-1(b)(iv)(E) | The closing of the purchase and sale of the Acquired Assets, the delivery of the Purchase Price (*i.e.*, outstanding amount of the Purchase Price following transmission of the Deposit), the assumption of the Assumed Liabilities in accordance with this Agreement (the "Closing") will take place on or before 10 a.m. Eastern Time on the second Business Day following full satisfaction or due waiver (by the Party entitled to the benefit of such condition) of the closing conditions set forth in Article VII (other than conditions that by their terms or nature are to be satisfied at the Closing), or at such other place and time as the Parties may agree in writing; provided that the Closing will occur no earlier than the Bankruptcy Court's entry of the Sale Order. The date on which the Closing actually occurs is referred to herein as the "Closing Date." In anticipation of and following the Closing Date, Sellers and Purchaser shall make all commercially reasonable efforts to accomplish the recording of all documents and instruments necessary to transfer title to the Acquired Owned Real Property within fourteen (14) days of Closing.<br><br>*See* Estes Asset Purchase Agreement, § 2.3 |
| **Good Faith Deposit**<br><br>Local Rule 6004-1(b)(iv)(F) | Purchaser has made an earnest money deposit with SRS Acquiom (with its affiliates, as applicable, the "Escrow Agent") in the amount equal to 5% of the Cash Payment portion of the Purchase Price (the "Deposit"), by wire transfer of immediately available funds for deposit into a separate segregated, non-interest bearing escrow account maintained by the Escrow Agent in accordance with the Bidding Procedures Order. The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of any Seller or Purchaser and shall be applied against payment of the |

| | |
|---|---|
| | Purchase Price on the Closing Date or otherwise paid or disbursed as expressly provided in this Agreement.<br><br>*See* Estes Asset Purchase Agreement, § 2.2 |
| **Interim Arrangements with Proposed Buyer**<br><br>Local Rule 6004-1(b)(iv)(G) | N/A |
| **Use of Proceeds**<br><br>Local Rule 6004-1(b)(iv)(H) | N/A |
| **Tax Exemption**<br><br>Local Rule 6004-1(b)(iv)(I) | N/A |
| **Record Retention**<br><br>Local Rule 6004-1(b)(iv)(J) | From and after the Closing for a period of three (3) years following the Closing Date (or, if later, the closing of the Bankruptcy Cases), Purchaser will provide Sellers and their Advisors with reasonable access, during normal business hours, and upon reasonable advance notice, to the books and records, including work papers, schedules, memoranda, Tax Returns, Tax schedules, Tax rulings, and other documents (for the purpose of examining and copying) of the Sellers or otherwise solely and exclusively pertaining to the Sellers that are included in and relate to the Acquired Assets, the Excluded Assets (if applicable), the Assumed Liabilities or the Excluded Liabilities (if applicable) with respect to periods or occurrences prior to the Closing Date, and reasonable access, during normal business hours, and upon reasonable advance notice, to employees, officers, Advisors, accountants, offices and properties of Purchaser (including for the purpose of better understanding such books and records). Unless otherwise consented to in writing by Sellers, Purchaser will not, for a period of three (3) years following the Closing Date, destroy, alter or otherwise dispose of any such books and records of the Sellers without first offering to surrender such books and records of the Sellers to Sellers or any portion thereof that Purchaser may intend to destroy, alter or dispose of. Purchaser shall provide Sellers with fourteen (14) days prior written notice before disposing of or otherwise destroying any of Sellers' books and records and Sellers shall have fourteen (14) days after the date set forth on Purchasers notice to remove, collect or otherwise cause to be preserved any such books and records of Sellers. From and after the Closing, Purchaser will, and will cause its employees to, provide Sellers with reasonable assistance, support and |

| | cooperation with Sellers' wind-down and related activities (*e.g.*, helping to locate such documents or information).<br><br>*See* Estes Asset Purchase Agreement, § 6.2(c) |
|---|---|
| **Sale of Avoidance Actions**<br><br>Local Rule 6004-1(b)(iv)(K) | Acquired Assets excludes "all preference or avoidance claims or actions arising under the Bankruptcy Code or applicable Law".<br><br>*See* Estes Asset Purchase Agreement, § 1.1(f) |
| **Successor Liability**<br><br>Local Rule 6004-1(b)(iv)(L) | For the avoidance of doubt, the Acquired Assets shall be free and clear of any and all Employment Liabilities, pension liabilities, and successor liabilities of any kind.<br><br>*See* Estes Asset Purchase Agreement, § 1.1 |
| **Unexpired Leases**<br><br>Local Rule 6004-1(b)(iv)(M) | Acquired Assets included the Assigned Contracts (*i.e.*, the four Leased Properties set forth under the Estes Asset Purchase Agreement and listed above).<br><br>*See* Estes Asset Purchase Agreement, § 1.1(c); Schedule 1.1(b) |
| **Credit Bid**<br><br>Local Rule 6004-1(b)(iv)(N) | N/A |
| **Relief from Bankruptcy Rule 6004(h)**<br>Local Rule 6004-1(b)(iv)(O) | *See* para. DD of proposed Sale Order ("Waiver of Bankruptcy Rules 6004(h) and 6006(d)") |

### R&L Asset Purchase Agreement

| Provision | Summary Description |
|---|---|
| **Seller** | Yellow Corporation and its Debtor subsidiaries listed therein |
| **Purchaser** | RAMAR Land Corporation |
| **Acquired Assets** | <u>One Owned Property</u><br>1000 Homestead Avenue, Maybrook, Orange County, NY<br><br>*See* R&L Asset Purchase Agreement, § Schedule 1.1(a) |
| **Purchase Price** | $50,000,000<br><br>*See* R&L Asset Purchase Agreement, § 2.1 |
| **Sale to Insider**<br><br>Local Rule 6004-1(b)(iv)(A) | The Purchaser is not an "insider" of the Debtors, as that term is defined in Section 101(31) of the Bankruptcy Code. |
| **Agreements with Management** | N/A |

| | |
|---|---|
| Local Rule 6004-1(b)(iv)(B) | |
| **Releases**<br><br>Local Rule 6004-1(b)(iv)(C) | N/A |
| **Sale**<br><br>Local Rule 6004-1(b)(iv)(D) | Sale of the Acquired Assets pursuant to private sale authorized by the Sale Order. Pursuant to Local Rule 6004-11(b)(iv)(D), the business justifications for the sale are set forth in this Motion and the Kaldenberg Declaration.   The Bidding Procedures provides that the Debtors have discretion to convey Real Property Assets via private sale in their business judgment in consultation with the Consultation Parties (*i.e.*, the Committee). |
| **Conditions Precedent**<br><br>Local Rule 6004-1(b)(iv)(E) | 7.1    The respective obligations of each Party to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Seller and Purchaser) on or prior to the Closing Date of each of the following conditions:(a) the expiration or termination of any required waiting period under the HSR Act or any other Antitrust Law set forth in <u>Schedule 7.1</u> applicable to the Transactions, and the receipt of any required approval related to the Transactions under any other Antitrust Law set forth in <u>Schedule 7.1</u>;<br><br>(b) no Governmental Body of competent jurisdiction shall have issued, enacted, entered, promulgated or enforced any Order (including any temporary restraining Order or preliminary or permanent injunction) or Law restraining, enjoining or otherwise prohibiting the Closing that is continuing in effect;<br><br>(c) the Bankruptcy Court shall have entered the Sale Order, which shall have become final and non-appealable and shall not have been stayed, reversed, or modified in a manner not acceptable to the Parties; and<br><br>7.2   Conditions Precedent to the Obligations of Purchaser. The obligations of Purchaser to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Purchaser in its sole discretion), on or prior to the Closing Date, of each of the following conditions:<br><br>(a)    (i) the representations and warranties made by Seller in Article III (in each case, other than the Fundamental Representations and other than the representations and warranties set forth in Section 3.4) shall be true and correct in all respects as of the Closing Date as though made on and as of the Closing Date, except (A) that representations and warranties that are made as of a specified date need be true and correct in all respects only as of such date and (B) to the extent the failure |

of such representations and warranties to be true and correct as of such dates has not had a Material Adverse Effect and (ii) the representations and warranties set forth in Section 3.1, Section 3.2 and Section 3.7 (collectively, the "Fundamental Representations") shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that such Fundamental Representations that are made as of a specified date need be true and correct in all material respects only as of such date;

(b) the representations and warranties set forth in Section 3.4 shall be true and correct in all respects as of the Closing Date with respect to the Acquired Real Property;

(c) entry by the Bankruptcy Court of the Sale Order that, for the avoidance of doubt, includes language that any operating licenses, permits, registrations and governmental authorizations constituting Acquired Assets shall be deemed to be and shall be directed to be transferred to the Purchaser as of the Closing;

(d) Seller shall not have breached in a manner that is material with respect to the Transactions, taken as a whole, the covenants required to be performed or complied with by Seller under this Agreement on or prior to Closing;

(e) Purchaser shall have received on and as of the Closing Date a certificate of an authorized officer of Seller confirming that the conditions set forth Section 2.4 have been satisfied; and

(f) as of the Closing Date, no right of first refusal relating to the Acquired Real Property shall have been exercised, and the deadline to exercise any such right of first refusal shall have expired.

7.3    Conditions Precedent to the Obligations of Seller. The obligations of Seller to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Seller in their sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a) the representations and warranties made by Purchaser in Article IV shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that representations and warranties that are made as of a specified date need be true and correct in all material respects only as of such date;

4907-4331-3925.1 96859.001

| | |
|---|---|
| | (b) Purchaser shall not have breached in a manner that is material with respect to the Transactions, taken as a whole, the covenants required to be performed or complied with by it under this Agreement on or prior to the Closing Date; and

(c) Seller shall have received on and as of the Closing Date a certificate of an authorized officer of Purchaser confirming that the conditions set forth in Section 2.5 have been satisfied.

*See* R&L Asset Purchase Agreement, §§ 7.1–7.3 |
| **Closing and Other Deadlines**

Local Rule 6004-1(b)(iv)(E) | The closing of the purchase and sale of the Acquired Assets, the delivery of the Purchase Price (*i.e.*, outstanding amount of the Purchase Price following transmission of the Deposit), the assumption of the Assumed Liabilities in accordance with this Agreement (the "<u>Closing</u>") will take place by telephone conference and electronic exchange of documents (or, if the Parties agree to hold a physical closing, at the offices of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022) at 10:00 a.m. Eastern Time on the second Business Day following full satisfaction or due waiver (by the Party entitled to the benefit of such condition) of the closing conditions set forth in Article VII (other than conditions that by their terms or nature are to be satisfied at the Closing), or at such other place and time as the Parties may agree in writing; provided that the Closing will occur no earlier than the Bankruptcy Court's entry of the Sale Order. The date on which the Closing actually occurs is referred to herein as the "Closing Date." In anticipation of and following the Closing Date, Seller and Purchaser shall make all commercially reasonable efforts to accomplish the recording of all documents and instruments necessary to transfer title to the Acquired Real Property within fourteen (14) days of Closing.

*See* R&L Asset Purchase Agreement, § 2.3 |
| **Good Faith Deposit**

Local Rule 6004-1(b)(iv)(F) | Purchaser has made an earnest money deposit with Fidelity National Title Insurance Company Attn: Angela Rice and Noah Schwieter, 4111 Executive Parkway, Suite 304, Westerville, Ohio 43081 (the "<u>Escrow Agent</u>") in the amount equal to 5% of the Pre-Adjustment Cash Payment portion of the Purchase Price (the "Deposit"), by wire transfer of immediately available funds for deposit into a separate segregated, non-interest bearing escrow account maintained by the Escrow Agent. The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of Seller or Purchaser and shall be applied against payment of the Purchase Price on |

19

| | |
|---|---|
| | the Closing Date or otherwise paid or disbursed as expressly provided in this Agreement.<br><br>*See* R&L Asset Purchase Agreement, § 2.2 |
| **Interim Arrangements with Proposed Buyer**<br><br>Local Rule 6004-1(b)(iv)(G) | N/A |
| **Use of Proceeds**<br><br>Local Rule 6004-1(b)(iv)(H) | N/A |
| **Tax Exemption**<br><br>Local Rule 6004-1(b)(iv)(I) | N/A |
| **Record Retention**<br><br>Local Rule 6004-1(b)(iv)(J) | From and after the Closing for a period of three years following the Closing Date (or, if later, the closing of the Bankruptcy Cases), Purchaser will provide Seller and their Advisors with reasonable access, during normal business hours, and upon reasonable advance notice, to the books and records, including work papers, schedules, memoranda, Tax Returns, Tax schedules, Tax rulings, and other documents (for the purpose of examining and copying) of the Seller or otherwise solely and exclusively pertaining to the Seller that are included in and relate to the Acquired Assets, the Excluded Assets (if applicable), the Assumed Liabilities or the Excluded Liabilities (if applicable) with respect to periods or occurrences prior to the Closing Date, and reasonable access, during normal business hours, and upon reasonable advance notice, to employees, officers, Advisors, accountants, offices and properties of Purchaser (including for the purpose of better understanding such books and records). Unless otherwise consented to in writing by Seller, Purchaser will not, for a period of three years following the Closing Date, destroy, alter or otherwise dispose of any such books and records of the Seller without first offering to surrender such books and records of the Seller to Seller or any portion thereof that Purchaser may intend to destroy, alter or dispose of. Purchaser shall provide Seller with fourteen (14) days prior written notice before disposing of or otherwise destroying any of Seller's books and records and Seller shall have fourteen (14) days after the date set forth on Purchasers notice to remove, collect or otherwise cause to be preserved any such books and records of Seller. From and after the Closing, Purchaser will, and will cause its employees to, provide Seller with reasonable assistance, support and cooperation with Seller's wind-down and related activities (e.g., helping to locate such documents and information). |

| | *See* R&L Asset Purchase Agreement § 6.2(c) |
|---|---|
| **Sale of Avoidance Actions**<br><br>Local Rule 6004-1(b)(iv)(K) | Acquired Assets excludes "all preference or avoidance claims or actions arising under the Bankruptcy Code or applicable Law".<br><br>*See* R&L Asset Purchase Agreement, § 1.1(e) |
| **Successor Liability**<br><br>Local Rule 6004-1(b)(iv)(L) | For the avoidance of doubt, the Acquired Assets shall be free and clear of any and all Employment Liabilities, pension liabilities, and successor liabilities of any kind.<br><br>*See* R&L Asset Purchase Agreement, § 1.1 |
| **Unexpired Leases**<br><br>Local Rule 6004-1(b)(iv)(M) | N/A; no assumption/assignment of unexpired leases contemplated by the R&L Asset Purchase Agreement. |
| **Credit Bid**<br><br>Local Rule 6004-1(b)(iv)(N) | N/A |
| **Relief from Bankruptcy Rule 6004(h)**<br>Local Rule 6004-1(b)(iv)(O) | *See* para. DD of proposed Sale Order ("Waiver of Bankruptcy Rules 6004(h) and 6006(d)") |

## Basis for Relief

**III.    The Debtors' Entry into the Asset Purchase Agreements Should be Authorized, and the Asset Purchase Agreements Should be Approved, as a Sound Exercise of the Debtors' Business Judgment Under Section 363 of the Bankruptcy Code.**

27.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Bankruptcy Rule 6004(f)(1) provides that "sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f).  Further, the Bidding Procedures in these Chapter 11 Cases provides that the Debtors may, in their business judgment and in consultation with the Committee, seek private sales of their Real Property Assets in lieu of bringing them to the Bid Deadline and the Auction.

28.    Courts generally apply the "business judgment" standard in determining whether to approve a proposed transaction under section 363 of the Bankruptcy Code. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances,

courts defer to the debtor's judgment concerning the proposed use of estate property under section 363(b) when there is a legitimate business justification); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business purpose" standard for transactions under section 363).   In addition, section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

29.    Generally, courts in the Third Circuit have applied four factors in connection with the "sound business purpose" test: (1) whether a sound business reason exists for the proposed transaction; (2) whether fair and reasonable notice has been provided to interested persons; (3) whether the debtor has obtained a fair and reasonable price; and (4) whether the transaction has been proposed and negotiated in good faith. *Titusville Country Club v. Pennbank* (*In re Titusville Country Club*), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *Delaware & Hudson Ry.*, 124 B.R. at 176.   The proposed Sale Transactions under the Estes Asset Purchase Agreement and the R&L Asset Purchase Agreement, respectively, satisfy all four conditions, and therefore, the relief requested herein should be approved by this Court.

30.    Under the business judgment standard, the debtor has the initial burden of establishing that a valid business purpose exists for the use of estate property in a manner outside of the debtor's ordinary course of business. *See Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). Once the debtor articulates a valid business justification for the proposed transaction, courts will generally presume that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."   *Official Comm, of*

22

*Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

31.     Thus, after a debtor satisfies its initial burden of establishing a valid business justification, the business judgment rule shields the debtor's management from judicial second-guessing and mandates that a court approve the debtor's business decision unless the decision is a product of bad faith or constitutes a gross abuse of discretion.  *See, e.g., In re Global Crossing*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003): *see also In re Johns-Manville Corp.,* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."); *In re Bridgeport Hldgs., Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008) (stating that directors enjoy a presumption of honesty and good faith with respect to negotiating and approving a transaction involving a sale of assets).

32.     Here, the Debtors respectfully submit that sound business reasons support their decision, in consultation with the Committee, to enter into the Asset Purchase Agreements.

33.     *First*, the Debtors provided extensive notice of their sale process to prospective purchasers for the Subject Properties.  Over an approximately eighteen-month sale process to date, the Debtors and their advisors have engaged in good faith discussions with any party interested in the Subject Properties.  The Subject Properties were marketed to no less than 650 prospective purchasers at the launch of the Debtors' sale process.  They have been thoroughly marketed through the efforts of both Ducera and CBRE, each of whom has maintained datarooms containing information regarding the Subject Properties and accessible to any interested party.

34.     *Second*, given the extensive marketing process undertaken for the Subject Properties, the value to be obtained under the Asset Purchase Agreements has been thoroughly

market-tested and is value-maximizing.  The Debtors subjected the Subject Properties to the First

Bid Deadline in November 2023 as well as the IOI Deadline of October 2024, and any interested

purchaser has had the ability to come forward with higher or otherwise better alternatives relative

to the Asset Purchase Agreements.

35.     *Third*, the terms and provisions of the Asset Purchase Agreements, including,

without limitation, the Purchase Prices, are fair and reasonable under the circumstances.  The Asset

Purchase Agreements are the result of hard-fought, arms-length, and good faith negotiations with

each of the Purchasers.  As described in the Kaldenberg Declaration, no other indications of

interest from other parties approached the value offered by Estes and R&L for the Subject

Properties, and the terms and provisions that have been negotiated were essential to ensuring that

the Debtors arrive at agreed transactions with these parties.

36.     *Fourth*, as described in the Kaldenberg Declaration, the value offered by Estes and

R&L under their respective Asset Purchase Agreements risks being diminished or otherwise lost

in the event the Debtors determined to put the Subject Properties to the upcoming Bid Deadline

and Auction.  The Debtors do not perceive upside in such alternative—only downside.

Accordingly, the Sale Transactions should be authorized as expeditiously and as efficiently as

possible.

37.     The Debtors respectfully submit that, in their sound and prudent business judgment

and in consultation with the Committee, the Asset Purchase Agreements maximize the value of

the Subject Properties.  Accordingly, the relief requested in this Motion should be approved.

## IV.    The Purchasers Acted in Good Faith and are Entitled to Full Protection Pursuant to Section 363(m) of the Bankruptcy Code.

38.     Because the Purchasers acted in good faith, they are entitled to the benefits and

protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale

4907-4331-3925.1 96859.001

Transactions under the respective Asset Purchase Agreements.  Section 363(m) of the Bankruptcy

Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does
> not affect the validity of a sale or lease under such authorization to
> an entity that purchase or leased such property in good faith, whether
> or not such entity knew of the pendency of the appeal, unless such
> authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) of the Bankruptcy Code protects a purchaser or assets sold

pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the

purchased assets if the order allowing the sale is reversed on appeal.  Purchasers are provided this

protection so long as they leased or purchased assets in "good faith." *Id*.  Although the Bankruptcy

Code does not define "good faith purchaser," the Third Circuit has stated that a good faith

purchaser is "one who purchases in 'good faith' and for 'value.'" *In re Abbots Dairies*, 788 F.2d

143, 147 (3d Cir. 1986).  Courts generally conclude that a purchaser has acted in good faith as long

as the consideration is adequate and reasonable, and the terms of the transaction are fully disclosed.

*Id*. at 49–50.  To constitute a lack of good faith, a party's conduct in connection with the sale

usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee or

an attempt to take grossly unfair advantage of other bidders." *Id*.  (citing *In re Rock Indus. Mach.

Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

39.     Here, the Purchasers under each of the Asset Purchase Agreements are unaffiliated

third parties of the Debtors and are each acting for their own *bona fide* commercial purposes.

In connection with this process, the Debtors engaged in good faith, arm's-length discussions with

R&L and Estes for the respective transactions under the R&L Asset Purchase Agreement and the

Estes Asset Purchase Agreement.  The Debtors' marketing process was fair and transparent and

the Sale Transactions are at arm's-length, without collusion or fraud, and entered into in good

faith. Accordingly, the Debtors request that the Court determine that each Purchaser has negotiated and acted at all times in good faith and, as a result, is entitled to the full protections of good faith purchasers under section 363(m) of the Bankruptcy Code.

**V.    Private Sales Are Appropriate Under Bankruptcy Rule 6004 and Local Rule 6004-1. They Are Also Authorized by the Debtors' Bidding Procedures.**

40.    Bankruptcy Rule 6004(f)(1) and Local Rule 6004-1(b)(iv)(D) permit a debtor to sell estate property outside of the ordinary course of its business by private sale or public auction. Fed. R. Bankr. P. 6004(f)(1).  Private sales by a debtor outside of the ordinary course of business are appropriate where the debtor demonstrates that the sale is permissible pursuant to section 363 of the Bankruptcy Code.  *See, e.g.*, *In re Schipper*, 933 F.2d 513, 514 (7th Cir. 1991) (private real estate sale by debtor approved when purchase price was the same as independent appraisal); *In re Adamson*, 312 B.R. 16, 22 (Bankr. D. Mass. 2004) (approving private sale by debtor); *In re Pritam Realty, Inc.*, 233 B.R. 619, 624 (D.P.R. 1999) (upholding bankruptcy court order approving private sale by debtor); *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (explaining that a trustee has ample authority to conduct a sale of estate property through a private sale).

41.    Bankruptcy courts generally have a "large measure of discretion" in determining, "based upon the facts and circumstances of the proposed sale," whether a private sale, as opposed to a public auction, is appropriate.  *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995); *In re Blue Coal Corp.*, 168 B.R. 553, 564 (Bankr. M.D. Pa. 1994).  In general, courts in this and other districts have approved private sales of less than all the assets of a debtor pursuant to section 363(b)(1) of the Bankruptcy Code as long as the debtor provides a valid business reason for not conducting an auction.  *See, e.g.*, *In re RMBR Liquidation, Inc.*, No. 19-10234 (KBO) (Bankr. D. Del. Aug. 22, 2019) (approving private sale of real property for approximately $2.35 million); *In re Buffets Holdings, Inc.*, No. 08-10141 (MFW) (Bankr. D. Del. Feb. 3, 2009)

(approving the private sale of real property for approximately $2.4 million); *In re W.R. Grace & Co.*, No. 0l-01139 (JKF) (Bankr. D. Del. Dec. 18, 2008) (approving the private sale of real property for approximately $3.8 million); *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex for $17.9 million); *In re W.R, Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. July 23, 2007) (authorizing private sale of business line for approximately $22 million); *In re Solutia, Inc.*, No. 03-17949 (SCC) (Bankr. S.D.N.Y. Dec. 28, 2006) (approving private sale of real property for approximately $7.1 million).

42.      In their sound business judgment and in consultation with the Committee, the Debtors have determined that consummating the sales of the Subject Properties on a private basis is appropriate in light of the facts and circumstances of these Chapter 11 Cases, including the Bids, IOIs, and other expressions of interest received by the Debtors for the Subject Properties to date. As described in the Kaldenberg Declaration, putting the Subject Properties to the Bid Deadline and the Auction in lieu of proceeding by expeditious private sales risks a loss of value.  Further, the Asset Purchase Agreements maximize the value of the Subject Properties.   Accordingly, entering into the Asset Purchase Agreements is in the best interest of the Debtors' estates and all parties in interest.

**VI.      The Sales under the Asset Purchase Agreements Should be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code.**

43.      Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if:  (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  See 11 U.S.C. § 363(f).

4907-4331-3925.1 96859.001

44.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtors' sale of the assets free and clear of all interests (*i.e.*, all liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, or encumbrances), except with respect to any interests that may constitute an assumed liability under the applicable purchase agreement. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

45.     Here, the Debtors have satisfied this requirement.  Holders of liens, encumbrances, or interests in the Subject Properties, if any, will have ample notice of this Motion and the proposed Order, in addition to the extensive notice previously provided in these Chapter 11 Cases and regarding the Debtors' sale efforts generally.  The proposed Order provides that any lien, encumbrance or interest in the Subject Properties will automatically attach to the sale proceeds at the respective Closings.  Thus, such lienholder will not be prejudiced in any respect by the proposed Sale Transactions and should be deemed to consent thereto.   Furthermore, all of the Debtors' prepetition and postpetition funded debt obligations have been paid in full and the proposed consideration under the Asset Purchase Agreements far exceeds the value of all liens (if any) on the Subject Properties.

46.     The Debtors accordingly request authority to sell the Subject Properties under the respective Asset Purchase Agreements free and clear of all liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, or encumbrances, with any such liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, or encumbrances to attach to the sale proceeds at the applicable Closing.

4907-4331-3925.1 96859.001

**VII.    The Debtors Should be Authorized to Convey the Four Assigned Leases to Estes Under the Estes Asset Purchase Agreement.**

47.    The Debtors respectfully request the Court's authorization to assume and assign, as applicable, the Assigned Contracts to Estes under the Estes Asset Purchase Agreement pursuant to section 365 of the Bankruptcy Code. The Estes Asset Purchase Agreement contemplates that Estes will acquire the four Leased Properties set forth on Schedule 1.1(b) thereto: (i) three Leased Properties which have already been assumed by the Debtors but not yet assigned (the "Assumed Estes Leases"); and (ii) one Leased Property which the Debtors are required to assume or reject by December 31, 2024. (the "Unassumed Estes Lease").[10]

48.    Section 365(a) provides authority for a debtor-in-possession to either assume or reject unexpired leases with the court's approval.  11 U.S.C. § 365(a).  The decision to assume or reject an unexpired lease is a matter within the "business judgment" of the debtor.  *See NLRB v. Bildisco & Bildisco* (*In re Bildisco*), 682 F.2d 72, 79 (3d Cir. 1982); *see also In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (explaining the business judgment standard to mean that a "reasonable business person would make a similar decision under similar circumstances"); *In re Armstrong World Indus.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("[U]nder section 365 of the Bankruptcy Code, a debtor may assume an [unexpired lease] . . . if the debtor's decision to assume such [unexpired leased] . . . is supported by valid business justifications.").

49.    A debtor who provides a valid business justification for its actions creates a strong presumption that it made the decision in good faith, and with the honest belief that its actions were taken in the best interests of the company.  *In re Filene's Basement*, No.11-13511, 2014 WL

---

[10]    *See Order Approving the Second Joint Stipulation By and Among the Debtors and Prologis, Inc. Extending the Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [Docket No. 4213] (the "Prologis 365(d)(4) Stipulation and Order").

1713416, 20 (Bankr. D. Del. 2014). Courts will therefore generally defer to a debtor's decision, and will only overturn that decision if it was a product of bad faith, whim, or caprice. *In re HQ Global Holdings*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).

50.     The Debtors' assumption and assignment of the Assigned Contracts under the Estes Asset Purchase Agreement represents a sound exercise of their business judgment. Estes considers the Unassumed Estes Lease as a key property within its overall negotiated package of Estes Acquired Properties. Accordingly, it is in the estates' best interest for the Debtors to assume the Unassumed Estes Lease and to assign it to Estes. With respect to the Assumed Estes Leases, all Cure Costs have already been paid by the Debtors (*i.e.*, at the time the Debtors previously assumed the Assumed Estes Leases in their sound business judgment in the Chapter 11 Cases).

51.     Once a court finds a debtor has exercised its sound business judgment in determining if the debtor should assume an unexpired lease, it must then evaluate whether such assumption and subsequent assignment meets the requirements under Bankruptcy Code section 365(f)(2). *See Cinicola* v. *Scharffenberger*, 248 F.3d 110, 117 (3d. Cir. 2001).

52.     Section 365(f)(2) provides that a debtor can assign an unexpired lease to a purchaser if the debtor assumes such lease under section 365(b) and the assignee provides adequate assurances of future performance. 11 U.S.C. § 365(f)(2)(B); *Cinicola*, 248 F.3d at 117. Section 365(b)(1)(A) provides that a debtor can assume an unexpired lease if the debtor first cures, or provides adequate assurance that the assignee will promptly cure, any defaults in the lease. 11 U.S.C. § 365(b)(1)(A); *See Cinicola*, 248 F.3d 110, at 119.

53.     As described above, the Assumed Estes Leases have already had their Cure Amounts paid by the Debtors. *See Order (A) Authorizing the Debtors to Assume Certain Unexpired Leases and (B) Granting Related Relief* [Docket No. 2385] (Cure Amount of $3,929

paid to Harris Real Estate Holdings, LLC for the assumed Norway, MI lease); *Order Approving the Joint Stipulation By and Among the Debtors and R.L. Roberts, L.L.C. to Assume the Dunmore Lease* [Docket No. 2804] (Cure Amount of $141,031.84 paid to R.L. Roberts for the assumed Scranton, PA lease, including that the Debtors subsequently agreed to pay, and did pay, the Disputed Cure Amount (as defined therein) of $100,000 subsequent to the assumption of the lease); *Order Approving the Joint Stipulation By and Among the Debtors and Southeastern Freight Lines to Assume and Reject Certain Leases* [Docket No. 2963] (Cure Amount of $5,095,095.83 paid to Southeastern for the assumed Miami, FL lease).

54.    The Unassumed Estes Lease (*i.e.*, the Orange, CA lease) is with landlord Prologis (*i.e.*, the Landlord as defined in the Prologis 365(d)(4) Stipulation and Order).  Under the Prologis 365(d)(4) Stipulation and Order, the Debtors received a consensual extension by Prologis to assume or reject the Unassumed Estes Lease by no later than December 31, 2024.  Pursuant to that certain *Objection and Reservation of Rights of Prologis USLV Subreit 2, LLC, Prologis Targeted U.S. Logistics Fund, L.P., Prologis, L.P., DCT Peoria Street LLC, DCT Eck Hoff Street LLC, and Prologis USLV Subreit 4, LLC to the Debtors' Notice of Potential Assumption or Assignment of Certain Contracts or Leases Associated with the Non-Rolling Stock Assets* [Docket No. 1114] (the "Prologis Cure Objection"), Prologis asserted no objection to the Debtors' proposed Cure Amounts for the Orange, CA lease ($118,865).  *See* Prologis Cure Objection at "Proposed vs. Minimum Cure Amount" Schedule.  Accordingly, the foregoing amounts represent the Cure Amounts for the Unassumed Estes Lease and align with the Debtors' books and records.  Pursuant to the Estes Asset Purchase Agreement, Estes will pay this Cure Amount.  *See* Estes Asset Purchase Agreement at Sec. 1.5 ("Assumption/Rejection of Certain Contracts").  Accordingly, the Debtors submit that the statutory requirements of Section 365(b)(1)(A) of the Bankruptcy Code are satisfied.

31

55.     Finally, Estes has demonstrated, or will demonstrate, adequate assurance of future performance for each of the Assigned Leases under the Estes Asset Purchase Agreement. Courts have found no single standard of adequate assurance to be dispositive. The form of adequate assurance to be provided will instead depend on the facts and circumstances of the case. *See Winters Nursery v. Color Spot Holdings*, No. 18-1246, 2018 WL 3996938, at *8 (Bankr. D. Del. 2018) (stating that adequate assurance "will fall considerably short of an absolute guarantee of performance"). A party may demonstrate adequate assurance by showing that it is financially capable of performing under the agreement. *See Cinicola*, 248 F.3d at 117. Here, Estes has provided the respective landlords with adequate assurance of future performance through its financial capability, evidenced by the transmission to the landlords of bank statements, among other supporting documentation. Counsel to the Debtors provided each of the landlords to the Assigned Contracts with Estes's Adequate Assurance Package on December 10, 2024. Accordingly, the requirements for assignment as set forth under section 365(f)(2) are satisfied.

56.     In light of the foregoing, the Debtors respectfully submit that entry into the Asset Purchase Agreements is in the best interests of the Debtors' estates. Accordingly, the relief requested in this Motion should be approved.

## Notice

57.     The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) landlords under the Assigned Contracts; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

58.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  December 10, 2024
Wilmington, Delaware

/s/ Peter J. Keane

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | **KIRKLAND & ELLIS LLP** |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | 300 North LaSalle |
| 919 North Market Street, 17th Floor | Chicago, Illinois 60654 |
| P.O. Box 8705 | Telephone:      (312) 862-2000 |
| Wilmington, Delaware 19801 | Facsimile:      (312) 862-2200 |
| Telephone:      (302) 652-4100 | Email:          patrick.nash@kirkland.com |
| Facsimile:      (302) 652-4400 |                david.seligman@kirkland.com |
| Email:          ljones@pszjlaw.com | |
|                tcairns@pszjlaw.com | |
|                pkeane@pszjlaw.com | -and- |
|                ecorma@pszjlaw.com | |
| | Allyson B. Smith (admitted *pro hac vice*) |
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone:      (212) 446-4800 |
| | Facsimile:      (212) 446-4900 |
| | Email:          allyson.smith@kirkland.com |
| | |
| | *Co-Counsel for the Debtors and Debtors in Possession* |