**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Yellow Corporation, *et al.* | ) | Case Nos. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS NATIONAL FREIGHT INDUSTRY NEGOTIATING COMMITTEE, AND INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS' TRIAL BRIEF**

1. Yellow was not a Liquidating Fiduciary at the Time It Decided to Shut Down Terminal Operations and Discharge Its Union Represented Employees.

Whether an entity is an employer subject to WARN should be measured at the time the entity, if it was an employer, acquired the obligation to issue WARN notice to its employees. As the Third Circuit held in *United Healthcare*:

> The thrust of WARN is to give fair warning in advance of prospective plant closings. It would appear, therefore, that if an employer knew of a .... closing and failed to notify its employees, the WARN Act would apply.

200 F. 3d 170, 178 (3d Cir. 1999), *citing Hotel Employees Local 54 v. Elsinore Shores*, 173 F. 3d 175, 182 (3d Cir. 1999). Once an employer knew of a closing and failed to notify its employees, it cannot avoid its liability under the WARN ACT by subsequently becoming a liquidating fiduciary. For example, in *In re Jamesway Corp.*, 235 B.R. 329, 343 (Bankr. S.D.N.Y. 1999), the court held that even if an employer became a liquidating fiduciary by October 18, 1995, it was still liable under the WARN Act because its employees had been selected for layoff, and became affected employees within the meaning of the WARN Act by October 12, 1995. *See also Carroll v. World Marketing Holdings, LLC*, 418 F. Supp. 3d 299, 307 (E.D. Wis. 2019) (Whether an entity was an ongoing business or a liquidating fiduciary should be measured at the time when WARN notice would have been required). The WARN Act would be eviscerated if an employer, after it

violated the WARN Act by deciding to discharge its employees without giving them notice, can avoid liability by simply terminating its operations first before discharging its employees, so that it no longer had any normal business operations by the time that it discharged its employees.

Similarly, in *In re Start Man Furniture*, the District Court looked to the time period after the entity decided to discharge its employees, but before the entity terminated its operations to determine whether an entity was a liquidating fiduciary. The Court held a chain of furniture stores was not a liquidating fiduciary because its activities after it filed for bankruptcy were the same as its pre-petition activities. See 647 B.R. 116, 122, 132 (D. Del. 2020). The Court therefore looked to the time period after the entity filed for bankruptcy on March 8, 2020 (and shortly after the employer decided to shut down operations on March 5, 2020), and before the entity terminated its retail operations on March 21st or 22nd, 2020 to determine whether the entity was a liquidating fiduciary. *See* 647 B.R. 122-124. *United Healthcare* is distinguishable on the facts because in that case the employer both terminated its business operations and decided to terminate its employees during same time period of February 18th to the 21st, so that the company was already a liquidating fiduciary by the time its obligation to issue WARN notices to its employees arose.

According to Yellow, it decided to shut down its operations on July 26, 2023. (D.I. #4487-1, Ho Decl., Ex. 41, pg. 9) Therefore, by July 26, 2023, Yellow's unionized employees became affected employees within the meaning of 29 U.S.C. §2101(a)(5), because they could reasonably expect to experience an employment loss as a consequence of Yellow's plan to shut down its operations. An employee is required to issue WARN notice to its employees 60 days before the first termination as a part of a plan closing or mass layoff. 20 C.F.R. §639.5(a)(1). By July 26, 2023, Yellow expected to terminate its unionized employees within a matter of weeks if not days, given that it had already started the process to stop accepting new shipments. (D.I. #2581, ¶100)

Yellow therefore acquired the obligation to issue WARN notices to its employees by July 26, 2023; an obligation that it failed to fulfill when it failed to provide an adequate explanation of its reasons for reducing the notice period. Consistent with the case law outlined above, Yellow cannot avoid its obligations under the WARN Act by becoming a liquidating fiduciary after July 26, 2023. Whether Yellow was continuing to operate its business, or had become a liquidating fiduciary, therefore should be measured on July 26, 2023.

The record clearly demonstrates that as of July 26, 2023, Yellow was continuing to operate its business and therefore was not a liquidating fiduciary. For WARN purposes, engaging in business includes "supply[ing] a service or good on a mercantile basis." In re Start Man, 647 B.R. at 129. Yellow clearly was engaging in business by supplying the service of delivering shipments in return for payment. On July 26, 2023, Yellow picked up 726 shipments, and more importantly delivered more than 24,000 shipments. (D.I. #2581, 102; D.I. #4286, Ho Decl., Ex. 35, pg. 10-11) Yellow was subject to the WARN Act because it was not a liquidating fiduciary at the time it acquired its obligation to issue WARN notices to its employees.

Alternatively, and at the latest, the liquidating fiduciary analysis should focus upon the company's activities in the period *immediately prior to* the layoffs, rather than at the exact time when the layoffs occurred. *In re Start Man*, 647 B.R. at 130. Because a company needs employees to continue its business operations, it would naturally terminate its last group of employees after it ceased business operations. Measuring whether a company was a liquidating fiduciary at the time it terminated its last group of employees would always deprive those employees of the protections of the WARN Act. Congress could not have intended to provide the WARN Act's protections to the employees who were terminated earlier, but not to the employees who were terminated last, even though due to the employer's failure to provide notice all terminated employees were

similarly deprived of an opportunity to adjust to the prospective loss of employment; and to seek and obtain retraining that will allow [them] to successfully compete in the job market. *United Healthcare*, 200 F. 3d at 178.

Therefore, at the very latest, the Court should look to the final hours before Yellow terminated its employees, rather than at the time Yellow terminated its employees, to determine whether Yellow was continuing to operate its business or was a liquidating fiduciary. The Unions contend Yellow was continuing to supply a service on a mercantile basis by having a driver deliver a tractor and an empty trailer back to a terminal gate after completing deliveries; because the return trip is an intrinsic part of the delivery service that Yellow offered to its customers. The Unions also contend Yellow held a telephone conference with its Board of Directors no earlier than noon eastern time on July 30, 2023, and that its final truck pulled into a terminal gate, after making its last delivery, at the start of the telephone conference. Yellow is not a liquidating fiduciary because during the final hours before it discharged its unionized employees, its drivers continued to supply a service to its customers on a mercantile basis.

2. <u>The Debtors Cannot Meet Their Burden of Proving the Court Can Exercise Its Discretion to Reduce WARN Damages that They Owe</u>.

Under 29 U.S.C. §2104(a)(4):

> If an employer which has violated the Act proves to the satisfaction of the court that the act or omission that violated the Act was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of [the] Act the court may, in its discretion, reduce the amount of the liability or penalty provided for in this section.

An employer therefore must prove both of two elements before the Court may, in its discretion, reduce the amount of the liability or penalty provided by the WARN Act: The employer's act or omission that violated the WARN Act must be in good faith; and the employer must have reasonable grounds for believing that its act or omission was not a violation of the WARN Act.

*See also Castro v. Chicago Housing Authority*, 360 F. 3d 721, 730 (7th Cir. 2004) (The good faith defense requires proof of the employer's subjective intent to comply with the Act, as well as evidence of objective reasonableness in the employer's application of the Act). If an employer’s act or omission that violated the WARN Act was not both objectively and subjectively reasonable, §2104(a)(4) does not allow the Court to rely on its sympathy for the employer to reduce WARN damages owed by the employer. *See by analogy Marshall v. Brunner*, 668 F. 2d 748, 753 (3d Cir. 1982) (In the absence of a showing by the employer that its failure to comply with the FLSA was both in good faith and predicated upon reasonable grounds, a district court has no discretion to mitigate the employer’s statutory liability for liquidated damages).

This Court’ summary judgment opinion made clear that had Yellow issued to the Teamsters and Machinists an adequate explanation of its reasons for shortening the notice period on July 30, 2023, then Yellow would not have violated the WARN Act at all by both terminating its unionized employees and providing them with WARN notice on July 30, 2023. (D.I. #5227, pg. 2-4) Yellow’s act or omission that violated the WARN Act therefore was its failure to provide an adequate explanation of its basis for reducing the notice period as required by §2102(b)(3). Before the Court can rely on §2104(a)(4) to reduce the Debtors’ WARN damages, the Debtors must first demonstrate Yellow had reasonable grounds for believing its WARN notice did not violate §2102(b)(3).

The legislative history of § 2104(a)(4) indicates that it was modeled on and should be interpreted in accordance with the case law under § 11 of the Portal–to–Portal Act, 29 U.S.C. § 260, which amended the Fair Labor Standards Act (FLSA). *Washington v. Air Cap Industries,* Inc., 860 F. Supp. 307, 315 (D.S.C. 1994), citing S.Rep. No. 62, 100th Cong. 1st Sess. at 24–25 (1987). Under the FLSA, to carry his burden of establishing the applicability of the (objective) good faith defense, a defendant employer must show he took affirmative steps to ascertain the

Act's requirements, but nonetheless, violated its provisions. *Martin v. Cooper Elec. Supply Co.*, 940 F. 2d 896, 908 (3d Cir. 1991); *Castro v. Chicago Housing Authority*, 360 F. 3d 721, 731 (7th Cir. 2004) (Employer failed to establish good faith defense, in part, because it failed to introduce evidence as to whether its counsel conducted extensive research on the question of whether the WARN Act applied to the Housing Authority, or merely made a cursory glance at the statutes and caselaw). Without testimony from counsel, Yellow will not be able to demonstrate it made any affirmatively efforts to ascertain what §2102(b)(3) required it to include in an adequate explanation of its reasons for reducing the notice period.

Moreover, as *Castro* demonstrates, that an employer consulted with counsel by itself does not establish the employer's violation of the WARN Act was objectively reasonable. Rather, the Court must examine the quality and basis for the legal advice an employer received to determine whether the employer's reliance upon the advice was objectively reasonable. *Washington*, 860 F. Supp. at 318 ("Without more evidence of the nature and extent of Aircap's consultation with counsel and the specifics of and basis for the legal opinion, the court cannot hold that Aircap carried its burden of proof on the good faith defense."); *United Paper Workers International Union v. Alden Corrugated Container Corp.*, 901 F. Supp. 426, 443 (D. Mass. 1995) (When a case presented legal issues of challenging complexity, it was not reasonable for an employer to rely on counsel's simple advice that the employer fell outside the jurisdiction of the WARN Act).

Yellow's task to demonstrate that it drafted objectively reasonable WARN notices is made more difficult, because a reasonable employer should have known that its WARN notice must mention TNFINC's strike notice. The notice that §2102(b)(3) required Yellow to provide to its employees must both identify the unforeseeable event and explain how the unforeseeable event prevented the company from giving its employees 60 days notice. *Alarcon v. Keller Industries,*

*Inc.*, 27 F. 3d 386, 391 (9th Cir. 1994); *Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996) (A WARN notice must set forth the specific facts that constitute the basis for reducing the notice period). *See also* 20 C.F.R. §639.9 (At the time the employer provided shorter than 60 days WARN notice to its employees, it shall provide a brief statement of the reason for reducing the notice period, in addition to the other elements set out in §639.7). By July 30, 2023, Yellow understood that TNFINC's strike notice killed Yellow, i.e. that the strike notice was the reason why Yellow was terminating its unionized employees without giving them 60 days notice of the terminations. (D.I. #4286-1, Ho Decl., Ex. 35, pg. 118:19-22) Yellow, armed with the knowledge that the strike notice caused its closure, and had it conducted some research into what the regulation and caselaw required the WARN notice to include, should have known that its WARN notices must mention TNFINC's strike notice. *See In re Jamesway*, 235 B.R. at 347 (Employer's belief that it could close without issuing WARN notice was clearly unreasonable when the statutes, regulations and case law available at the time stated in no uncertain terms that employers were required to provide, as soon as was practicable, basic WARN notice and a brief statement explaining why reduced notice was necessary).

In response to the Unions' deposition topic, the Debtors claimed that the entire topic of why Yellow's WARN notices did not mention the strike notice was privileged. (D.I. #5331-4, Ho Decl., Ex. 1, Response to Topic #18) Consistent with the Debtors' representation, none of the Debtors' trial witnesses can offer testimony on why Yellow's WARN notices did not mention the strike notice. See D.I #4286-1, Ex. 35, pg. 164-165 (Hawkins both did not personally attend any meetings that discuss the drafting of the WARN notices, and does not know why the WARN notices to the Teamsters and Machinists did not mention the strike notice); Statlander Dep. Pg. 174:15-20 (Statlander was not involved in preparing Yellow's WARN notices to either the Teamsters or the

Machinists); Whitman Dep., pg. 39:19-25 (The words of the WARN notices were not Whitman's focus, and Whitman does not recall reviewing the drafts of the WARN notices). Since a party should not be permitted to introduce at trial evidence that it withheld from discovery, the Debtors both should not be permitted to, and cannot present any evidence at trial concerning why Yellow's WARN notices did not mention the strike notice. If the Debtors cannot even explain what grounds Yellow relied upon to conclude the WARN notices need not mention the strike notice, they certainly cannot demonstrate those grounds were objectively reasonable, as required by §2104(a)(4) before the Court can acquire discretion to decide whether it should reduce the Debtors' WARN damages.

Importantly, the Teamsters and Machinists are not arguing that in each case the good faith defense is invoked, the employer invoking that defense must introduce advice that it received from counsel. The problem for the Debtors is that no one other than counsel knows whether any investigations were made into the requirements of §2102(b)(3), or what were Yellow's reasons (i.e. grounds) for not mentioning the strike notice in its WARN notices. Consequently, without testimony from counsel that it both is not and should not be permitted to offer, the Debtors cannot demonstrate the Debtors' drafting of the WARN notices, their act or omission that violated the WARN Act, was objectively reasonable. *In re Old Electralloy Corp*., 162 B.R. 121, 126 (Bankr. W.D. Pa. 1993) is easily distinguishable because in that case the employer was entitled to invoke the faltering company defense, so that counsel correctly advised the company that it could issue WARN notices to its employees on the same day that it closed. That case, therefore, did not discuss; and is irrelevant to what an employer must prove to establish a good faith defense when it relied on incorrect advice from counsel.

Moreover, the evidence demonstrates that Yellow had enough time to draft talking points for its non-union employees that accurately described its reasons for closing, including explaining how the strike notice led to its closing. (D.I. #4286-1, Ho Decl., Ex. 35, pg. 162:21 – 163:1, 164:1-4; D.I. #3794-1, Ho Decl., Ex. 15, pg. 1, bullet point #1) Yellow cannot blame the lack of time or a rapidly evolving situation for why it did not provide adequate WARN notices to the Teamsters and Machinists, when it had enough time to draft a perfectly adequate explanation of its reasons for shortening the notice period. The unpublished *per curiam* opinion in *UAW Local 1077 v. Shadyside Stamping Corp*., 947 F. 2d 946 * 3 (6th Cir. 1991), in which the Court blamed a rapidly evolving situation for causing the lack of scientific precision in the layoff notices, is easily distinguishable.

Nor can Yellow avoid liability by pointing to the passage in *Washington*, in which the Court stated that in *Oil Workers v. American Home Prods*., 790 F. Supp. 1441 (N.D. Ind. 1992) and *UAW v. Shadyside Stamping Corp*., 1991 WL 340191 (S.D. Ohio 1991), the good faith defense was properly applied because an employer substantially complied with the Act but committed certain technical violations. *See* 860 F. Supp. at 317. In both *Oil Workers* and *Shadyside*, the employer provided a reasonable explanation for its misinterpretation of the law, so that in *Oil Workers* the governing law was ambiguous on whether an employer must issue repeated WARN notices to its employees, while in *Shadyside* the employer's notice only violated interpretive rules that were not well known rather than any language of the WARN Act. *See* 790 F. Supp. 1450, 1452-1453; 1991 WL 340191 * 9. Similarly, in *International Association of Machinists v. General Dynamics Corp*., 821 F. Supp. 1306, 1312-1313 (E.D. Mo. 1993), the employer's violation of WARN by failing to provide notice to the chief official of the international union was with good faith, because it proved at trial that there was a longstanding practice to assume notice to the local union, which it provided,

also constituted notice to the national union. Each of these cases demonstrate that to invoke the good faith defense, an employer must prove it had an objectively reasonable basis for believing it did not violate the WARN Act, In contrast, without testimony from counsel that it both is not and should not be permitted to offer, Debtors cannot show Yellow had an objectively reasonable basis for believing WARN notices can comply with §2102(b)(3) though they failed to mention the strike notice that Yellow believed caused it to shorten the notice period.

Nor do any of the other cases cited by the Debtors permit the Court to look beyond Yellow's drafting of the WARN notice to analyze whether it can (rather than whether it should) reduce the Debtors' WARN damages under §2104(b)(4). In *Graphic Communications Union Local 31-N v. Quebecor Printing Corp*., 252 F. 3d 296, 301-302 (4th Cir. 2001), the court explained that one path for the employer to demonstrate that it had reasonable grounds for believing a notice satisfied its WARN Act obligations was to present evidence that it acted on advice of counsel, reasonably believed the WARN notice provided sufficient notice for the plant closing, and evidence that it held internal deliberations regarding the content of the notice. Similarly, in *Frymire v. Ampex Corp*., 61 F. 3d 757, 768 (10th Cir. 1995), the Court held that though the employer was wrong in believing the Colorado Springs campus was a single cite of employment, based on the regulations and the caselaw reasonable minds can disagree on whether the Colorado Springs campus was a single site of employment. Both cases therefore require the employer to demonstrate the objective reasonableness of its incorrect belief to establish its good faith defense. Because in this case, Yellow's violation of the WARN Act was its inadequate drafting of the WARN notices, the analysis of the objective reasonableness of Yellow's act or omission that violated the WARN Act is limited to whether Yellow's defective drafting of the WARN notices was nonetheless objectively reasonable.

Because the Debtors cannot demonstrate Yellow had reasonable grounds for believing its act or omission that violated the WARN Act, the deficient drafting of the WARN notice, complied with §2102(b)(3), §2104(a)(4) does not grant to the Court any discretion to reduce WARN damages owed by Yellow. The Teamsters and Machinists therefore are entitled to 100% of the WARN damages provided to them by statute.

3. Conclusion.

Based on the correct legal standards outlined in this trial brief, following trial, the Court should reject both the Debtors' liquidating fiduciary and good faith defenses. Because the Debtors have never objected to the amounts of the proofs of claim, the Teamsters and Machinists are entitled to the entirety of the amount of WARN damages sought by their proofs of claim.

Date: January 14, 2025

Respectfully submitted,

LAW OFFICE OF SUSAN E. KAUFMAN, LLC

*/s/ Susan E. Kaufman*

Susan E. Kaufman, (DSB# 3381)
919 North Market Street, Suite 460
Wilmington, DE 19801
(302) 472-7420
(302) 792-7420 Fax
skaufman@skaufmanlaw.com

-and-

Yingtao Ho (WI Bar No. 1045418)
Emma Woods (WI Bar No. 1120187)
THE PREVIANT, LAW FIRM, S.C.
310 W Wisconsin Ave, Suite 100MW
Milwaukee, Wisconsin 53203
Telephone: 414.271.4500
Facsimile: 414.271.6308
emw@previant.com
yh@previant.com

Attorneys for the International Brotherhood of Teamsters, the Teamsters National Freight Industry Negotiating Committee, and the International Association of Machinists and Aerospace Workers