**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Yellow Corporation, *et al.*, | ) | Case Nos. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS NATIONAL
FREIGHT INDUSTRY NEGOTIATING COMMITTEE, AND INTERNATIONAL
ASSOCIATION OF MACHINISTS' POST TRIAL BRIEF**

### I.      INTRODUCTION.

Whether Yellow was covered by WARN or was a liquidating fiduciary should be measured when it ordered the plant closing, i.e., the shutdown of its terminals. Yellow ordered the plant closing on July 26, 2023 when it commanded its professionals and human resources staff to start performing work for the plant closing, and spent the next four days implementing its order by selecting the date and time when it would shut down its terminals, arranging driver assignments so it could complete scheduled deliveries yet have all equipment inside its gates by shutdown time, performing human resources functions, and resolving customer and vendor issues.  Yellow was covered by WARN when it ordered the plant closing, since it continued to deliver shipments and therefore was covered by WARN through at least July 29, 2023. Indeed, even on July 30, 2023, Yellow was still covered by WARN because it still engaged in some normal operations including having linehaul drivers deliver shipments from terminal to terminal and return to the terminal after completing deliveries to customers.

Debtors must rely on the unforeseeable business circumstances defense, not the faltering company defense, to excuse its failure to issue WARN notices after it no longer had a realistic opportunity to receive capital that it sought 60 days before it closed. Yellow's failure to mention TNFINC's strike notice in the WARN notices was a separate violation of the WARN Act that was

an intrinsic part of Yellow's acts or omissions that violated WARN, which Yellow must show was made with both subjective and objective good faith. In any event, Yellow has not shown that its WARN notice on the faltering company defense was reasonable when that notice both misled the reader about Yellow's efforts to seek additional business and created confusion by conflating statutory language for the faltering company and unforeseeable business circumstances ("UBC") defenses.

Yellow's failure to mention the strike notice in its WARN notices was not with subjective good faith, when it cannot show the WARN notices' drafters had any basis, let alone a reasonable basis, for not mentioning the strike notice in the WARN notices. Yellow's officer and employee testimony as to its communication strategy cannot fill this gap because any explanation of Yellow's reasons for shortening the notice period must be provided to union leadership. Yellow had no reason to fear mentioning the strike notice to union leadership would lead to violence; nor any hesitation about blaming the Teamsters and its strike notice for its closing in public filings. Nor can Yellow successfully argue it acted with subjective good faith because it did not have enough time to prepare a lawful notice.  Yellow started contingency planning for a bankruptcy filing on July 17, 2023, yet did not begin to prepare WARN notices for its union employees until July 28, 2023.

Nor can Yellow demonstrate it had a reasonable basis for believing it complied with the WARN Act, though its WARN notices failed to mention TNFINC's strike notice. Yellow had no reasonable basis for believing it could either (a) mention in the WARN notices "these circumstances" rather than identify the strike notice; (b) provide a less specific explanation of its reason for shortening the notice period because the cause of its closing was already well known; or (c) issue a deficient WARN notice to its employees because they would not suffer harm.

Nor should the Court exercise its discretion to reduce the Debtors' WARN damages when Yellow should have begun to prepare the WARN notices earlier so that its violation of WARN was not merely technical. Yellow never communicated to its union employees the information required by the WARN Act, and treated complying with WARN as an afterthought by failing to prepare WARN notices as a part of its planning for bankruptcy.

## II.    ARGUMENT.

1.    <u>Yellow Was Not a Liquidating Fiduciary at the Time It Ordered the Plant Closing to Shut Down Its Terminals.</u>

An employer acquires potential liability under the WARN Act when it orders a plant closing *or* mass layoff without giving 60 days advanced notice to its employees. 29 U.S.C. §2102(a). Whether an entity was an employer covered by WARN or a liquidating fiduciary should be measured at the moment it acquires potential liability under the WARN Act. An employer should not be permitted to escape its statutory obligation through its conduct thereafter, such as by waiting for a day or two after its last active operations before terminating its employees.

"Order" within the meaning of §2102(a) refers to giving the command that led to the plant closing or mass layoff, not announcing the plant closing or mass layoff to employees. *Deveraturda v. Globe Aviation Security Services*, 454 F. 3d 1043, 1045, 1048 (9th Cir. 2006) (Government ordered the mass layoff by taking over security operations, though employer both notified the employees of the takeover and announced the layoffs). An employer may order a plant closing by instructing its advisors and human resources staff to start performing work to implement the ordered closing; so that an employer may order a plant closing or mass layoff a week before its operations were shut down and its employees were terminated. *Lichtenstein v. Anuvia Plant Nutrients Corp.*, 2023 WL 7411512 *2 (M.D. Fla. Oct. 26, 2023). See also *Cain v. Inacom Corp.*, 2001 WL 1819997 *2 (Bankr. D. Del. Sept. 26, 2001). Indeed, employees and their representatives

are entitled *to written notice of the order* of a plant closing or mass layoff, not a copy of the order itself. See §2102(a)(1). The Third Circuit has similarly recognized that WARN liability is triggered when an employer knew of a closing, not when the employer announced the closing to its employees. *In re United Healthcare System Inc.*, 200 F. 3d 170, 178 (3d Cir. 1999).

In this case, Yellow's shutdown resulted from a plant closing. A plant closing refers to the shutdown of a single site of employment resulting in loss of employment for 50 or more full-time employees; whereas a mass layoff refers to the termination of employes that did not result from a plant closing. 29 U.S.C. §2101(a)(2) and (3). Yellow decided to shut down its terminals on July 30, 2023, at noon eastern time, so that once the terminal gates were locked, the termination of Yellow's unionized workforce inevitably followed. (Day I[1], pg. 87:24 -88:2; 107:18-20; Jt. Ex. 101) Whether Yellow was covered by WARN should be measured at the moment it ordered the shutdown of its terminals, not when it provided its employees notice of the shutdown of the terminals. *Law v. American Capital Strategies*, 2007 WL 221671 *16 (M.D. Tenn. Jan. 26, 2007) (Whether an employer is covered by WARN is measured at the time that the shutdown decision was made on May 4, though the shutdown decision was announced to employees on May 5).[2]

Yellow ordered the closing of its terminals on July 26, 2023, and instructed its professionals and human resources staff to implement that order over the next four days. Yellow began to make a plan on how to do an orderly close once its CEO decided on July 26, 2023 that it had to liquidate. (Day I, pg. 74:7-21) Yellow picked Sunday July 30 during daytime hours as the ideal time to close

---

[1] References to Transcripts of the WARN Trial will be referred to as follows:  January 21, 2025 ("Day I"), January 22, 2025 ("Day II"), and January 23, 2025 ("Day III").

[2] Debtors cannot rely on the law of the case doctrine to avoid this conclusion because the doctrine does not apply to a trial judge revisiting his own prior decisions. *U.S. Ex rel. Petratos v. Genentech, Inc*., 855 F. 3d 481, 493 (3d Cir. 2017).  A partial grant of summary judgment is similarly an interlocutory order.  *Foulk v. Donjon Marine Company, Inc*., 144 F. 3d 252, 255 (3d Cir. 1998).  *Student Public Interest Research Group of New Jersey v. Monsanto*, 1988 WL 156691 *8 (D.N.J. March 24, 1988) is easily distinguishable when it involved a *post-trial* request to reconsider that court's earlier ruling.

its terminals; and *coordinated and planned for the next few days to try to make that happen*, by having multiple teams working over 4 days to accomplish everything that had to be accomplished to timely close its terminals. (Day I, pg. 75:6-15; 87:15-18) The planning included formulating a plan for driver assignments so that Yellow could move shipments as far as possible through July 29, 2023; and have all employees and equipment return to its terminals by noon eastern time on July 30th. (Day I, pg. 76:7 – 77:1) The planning also included performing so many human resources functions that Yellow's VP of Human Resources testified that she was not sure another human resources team could carry out Yellow's decision to shut down its terminals during the four days that were available. (Day I, pg. 152:22-24; 161:1-6) In addition, Yellow also addressed numerous customer and vendor issues before its shutdown. (Day II, pg. 19:15-17)

Had Yellow waited until July 30th or even July 29th to order the closing of its terminals, it could not have completed the work needed to close its terminals by noon eastern time on July 30, 2023. For example, Yellow needed to know in advance when it would close all terminals, so that it could determine when it must stop making customer deliveries, and inform its terminal management and dispatchers to not assign linehaul drivers any driving assignments that could not be completed by the designated closing time.[3]  Similarly,  Yellow needed to determine in advance when it would shut down its terminals so its terminal managers would know when they must lock up the terminals, its WARN notices and talking points could include the correct closing time.

When Yellow ordered its professionals and staff to implement its decision to shut down its terminals, it clearly was an employer covered by WARN. Yellow was covered by WARN at a

---

[3] For example, under federal regulations, a property moving driver is permitted to be on duty for a maximum of 14 hours after 10 consecutive hours off-duty. 49 C.F.R. §395.3(a)(1) and (2).  Yellow's plan to shut down its terminals by noon eastern time on July 30, 2023 would be foiled if a single dispatcher assigned a single driver a route that, after considering the 10 mandatory consecutive hours off-duty, did not allow the driver to return to the terminal by noon eastern time on July 30, 2023.  To avoid such issues, Yellow had to communicate to its terminal staff the selected date and time for the shutdown of its terminals days in advance.

minimum through July 29, 2023, when it delivered about 24,000 shipments on July 26, 2023, about 12,000 shipments on July 28, 2023, and did not complete its last customer shipment delivery until 11:30 p.m. on July 29, 2023. (Day I, pg. 89:19-21; 90:16-24, 199:9-17; Debtors Ex. 112; D.I. #5227-1, pg. 51) Even were the Court to focus on the time when Yellow selected the exact time for the shutdown of its terminals, that time was selected on or very soon after July 26, 2023, at a time when Yellow was still covered by the WARN Act. (Day I, pg. 87:7-14)

Indeed, Yellow had to announce the shutdowns to terminal management hours in advance so that its terminal staff would not send drivers on driving assignments that could not be completed by noon eastern time on July 30, 2023, so that it had staff available to lock up each terminal on a Sunday, and so that it could send talking points to each terminal in time to guide how terminal management notified union employees of their terminations.  (Jt. Ex. 101, Day I, pg. 180:25 – 181:3) At 10:14 a.m. eastern time when Yellow announced the closing of its terminals to the unions (Jt. Ex. 108), Yellow still had linehaul drivers in transit back to their domicile terminals, while it was absolutely possible those drivers were hauling trailers with customer freight inside them. (Day I, 250:24 – 251:2; 251:5-7)

An entity is covered by WARN if its act of liquidation included running operations for the benefit of its customers or creditors. *In re Start Man Furniture, LLC*, 647 B.R. 116, 130 (D. Del. 2022). Towards noon on July 30, 2023, Yellow drivers continued to run operations: Delivering shipments between terminals is normal operations when Yellow transported shipments to its own terminals between July 24 and 30, 2023; and would move freight through a number of terminals before arriving at the destination terminal. (Day I, pg. 141:18-21; Day III, pg. 24:17-22) The return trip after completing a customer delivery and 10 hours off duty mandated by 49 C.F.R. §395.3(a)(1) and (2) is also normal operations since Yellow drivers would make such return trips most of the

time, were paid for the trips, and must follow Yellow's rules and procedures during the trips. (Day I, 94:1 – 95:12) During the final hours before Yellow closed its terminals, its drivers performed work that benefited customers whose freight they moved, and benefited creditors by transporting rolling stock for safe storage at Yellow's terminals.[4]

2.     <u>Debtors Have Failed to Establish that §2104(a)(4) Grants the Court Discretion to Reduce Their WARN Damages</u>.

a.     <u>Debtors Cannot Avoid the Need to Show the Omission of the Strike Notice from the WARN Notices was Both in Good Faith; and Was Supported by Reasonable Grounds</u>.

The good faith defense cognizable under 29 U.S.C. §2104(b)(4) focuses on the employer's acts or omissions that violated the WARN Act. Yellow's failure to mention TNFINC's strike notice in its WARN notices (which made the UBC defense unavailable), was a separate act or omission that violated the WARN Act.  Even if established, the faltering company defense would only excuse Yellow's failure to issue notice to its employees for a portion of, rather than the full 60 days for which the Debtors are liable for WARN damages.

The Court's analysis of the applicability of the faltering company defense should focus on the specific proposals Yellow made to lenders, not just Yellow's retention of Ducera to help it secure financing. "Actively seeking capital" means pursuing "financing or refinancing through the arrangement of loans, the issuance of stocks, bonds, or other methods of internally generated financing," or "seeking additional money, credit, or business through any other commercially reasonable method." *In re AE Liquidation*, 522 B.R. 62, 67 (Bankr. D. Del. 2014). Actively seeking capital means making proposals to lenders to seek capital, not just hiring an advisor to seek capital.

---

[4] Even after July 30, 2023, Yellow employees continued to stage freight on docks to facilitate a liquidation; just like they had done before Yellow shut down its terminals. (Day II, pg. 70:24 – 71:7; 22:17-21; 23:4-12) Yellow's ongoing operations within a liquidation show it was not a liquidating fiduciary.  *In re Start Man*, 647 B.R. at 130.

Even when an employer can rely on the faltering company defense to shorten the notice period, it still must give as much notice of its closing as is practicable. 29 U.S.C. §2102(b)(3). Such an employer must issue WARN notice to its employees once it no longer had a realistic opportunity to obtain the financing or business that it sought. *Carpenters District Council of New Orleans & Vicinity et al. v. Dillard's Dep't Stores, Inc., et al.*, 15 F.3d 1275, 1281 (5th Cir. 1994); *In re Organogenesis Inc.*, 316 B.R. 574, 587 (Bankr. D. Mass. 2004).

An employer cannot rely on new proposals to seek capital, which it made to lenders less than 60 days before its closing, to establish the faltering company defense. *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 237, 249 (3d Cir. 2008); *In re Jevic Holding Inc.*, 496 B.R. 151, 160 (Bankr. D. Del. 2013). In other words, employers cannot rely on proposals to seek financing, which they made less than 60 days before its closing, to justify shortening the notice period. Construing the faltering company defense narrowly as the Court must, the same rule should apply regardless of whether the employer also made other proposals to seek financing 60 days or more in advance of when it closed.  *In re APA Transp.*, 541 F. 3d at 247. Once an employer no longer has a realistic opportunity to receive the capital that it sought 60 days or more in advance of closing, it must issue WARN notice immediately, regardless of whether it also made new proposals to seek financing less than 60 days before its closing.

Debtors therefore can only rely on Yellow's efforts to seek capital on or before May 31, 2023, to excuse its failure to issue WARN notice to its employees. The only relevant proposal Yellow made was its May 26, 2023 proposal to existing lenders Apollo and the United States Treasury. (Jt. Ex. 126, pg. 1) By July 7, 2023, Yellow could no longer rely on two aspects of those proposals: waving the EBITDA covenant and selling the Compton terminal, to justify further delaying issuing WARN notices to its employees. An employer can rely on a proposal to seek

financing to avoid issuing WARN notice, only so long as it reasonably believed that giving the notice would preclude it from obtaining the needed capital. 20 C.F.R. §639.9(a)(4). Yellow cannot continue to rely on the fear of losing financing to refuse to issue WARN notices to its employees after it obtained the covenant waiver and sold its terminal. (Jt. Ex. 126, pg. 1-2)

By July 7, 2023, Yellow did not have a realistic opportunity of obtaining lender consent for the two remaining aspects of its May 26, 2023 proposal: permission to pay interest in kind and to free up collateral. (Jt. Ex. 29, pg. 4) By no later than June 8, 2023, Yellow was no longer proposing to the US Treasury to pay interest in kind. (Jt. Ex. 40, pg. 4) On July 7, 2023, Yellow's loan agreements with Apollo and US Treasury were modified by waving the minimum EBITDA covenant, adding a minimum liquidity covenant, adding reporting requirements, and adding an exit fee; but without adding permission to either pay interest in kind or to free up collateral. (Jt. Ex. 126, pg. 2) By July of 2023, Ducera was discussing with Apollo a new bridge financing proposal, not what Ducera had proposed on May 26, 2023. (Kaldenberg Dep. Pg. 88-89). There is no evidence that on or after July 7, 2023, Ducera contacted Apollo or the US Treasury concerning its proposals for permission to, or that either lender had any interest in permitting Yellow to either pay interest in kind or to free up collateral.  (Jt. Ex. 126) The faltering company defense does not excuse Yellow's failure to issue WARN notice to its employees after July 7, 2023.

Even were the Court to permit the Debtors to rely on efforts to seek financing initiated less than 60 days before closing to justify Yellow's continued failure to issue WARN notices, Yellow had no realistic opportunity to obtain any financing by no later than July 23, 2023. The Doheny First Day Declaration included the party opponent admission that Yellow's shipments evaporated over four days, and by July 21, 2023, Yellow's realistic opportunity to obtain financing had evaporated as well. (Docket #14, ¶13) Yellow's July 23, 2023 Board minutes both referred to the

*near impossibility* of securing the financing needed to reach an agreement with the Teamsters, and included a report by Ducera that financing with Apollo was no longer a viable option. (Jt. Ex. 82, pg. 1 - 2) Indeed, there is no evidence of any contact from ▮▮▮ related to providing financing to Yellow after July 18, 2023. (Jt. Ex. 126) By July 23, 2023, Yellow did not have a realistic opportunity of obtaining any financing, since it admits that such financing was a near impossibility. (Jt. Ex. 82, pg. 2) At a minimum, the faltering company defense cannot excuse Yellow's failure to prepare WARN notices between July 23, and when Yellow began to prepare WARN notices for its union employees on July 28, 2023. (Jt. Ex. 18, Answer to Interrogatory #15)

The good faith defense under §2104(b)(4) focuses on the employer's acts or omissions that violated the WARN Act. In this case, because of the deficiencies in its WARN notices, Yellow is strictly liable to its union employees for the period between May 31 and July 30, 2023. Had Yellow issued an adequate notice that permitted it to invoke the faltering company defense, the Debtors would only have a valid defense against liability for the time period between May 31, 2023 and when its relevant proposals to seek financing were no longer realistic opportunities; rather than for the entire time period between May 31, 2023 and July 30, 2023. Yellow's act or omission that violated the WARN Act therefore necessarily includes its failure to mention TNFINC's strike notice in its WARN notices.[5] Had Debtors provided an adequate notice for the faltering company defense but chose to not assert the UBC defense at all, its violation of the WARN Act could not be reasonable, because it would have no excuse for its failure to issue WARN notices for the time period after it could no longer rely on the faltering company defense. Debtors therefore

---

[5] *Alarcon v. Keller Industries,* 27 F.3d 386, 391 (9th Cir. 1994) is not to the contrary, because in that case the employer's inability to obtain working capital was the unforeseeable business circumstance. In *Alarcon*, the employer relied on the faltering company and unforeseeable business circumstances defenses to explain its failure to issue notice for the same time period, so that it did not need to provide more than one explanation for the failure to provide notice for the same time period. In contrast, in this case, the Debtors must rely on the unforeseeable business circumstances defense to explain its failure to provide notice for a portion of the 60 days for which it should have issued notice.

satisfy §2104(b)(4) by merely showing that whether Yellow's WARN notice permitted it to assert the faltering company defense was a close call.

        b.      <u>Yellow's WARN Notice on the Faltering Company Defense Was Not</u> <u>*Per Se* Objectively Reasonable</u>.

Debtors cannot use the WARN notices that Yellow issued to the Unions in support of the faltering company defense to demonstrate objective good faith, without offering testimony from people who drafted the notices to explain the notices' deficiencies. The first deficiency with the notices is that they stated that Yellow had hoped to complete one or more transactions and secure *business* to prevent the closing of its locations, though the Debtors have never argued that Yellow's efforts to seek new business in 2023 (if any) can justify its failure to issue earlier WARN notices. (Jt. Ex. 105,108) To establish the subjective component of the good faith defense, an employer must demonstrate it had an honest intention to ascertain and follow the dictates of the WARN Act. *Childress v. Darby Lumber, Inc*., 357 F.3d 1000, 1007 (9th Cir. 2004). Debtors cannot demonstrate such honest intention without explaining why Yellow misleadingly mentioned its efforts to secure business in its WARN notices, though it has never argued in this case that any of its efforts to secure business permitted it to shorten the notice period.

Second, a WARN notice cannot merely restate the language of the statute, so that telling employees that a company closed because of its inability to secure necessary capital is insufficient. *Fleming v. Bayou Steel BD Holdings II LLC*, 2022 WL 266942 * 3 (E.D. La. 2022). *See also Grimmer v. Lord, Day & Lord*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996) (A conclusory statement summarizing the statutory provision does not comply with WARN). The WARN notice that Yellow issued to the Unions is no more specific than the notice in *Fleming*, because it only stated that Yellow had hoped to complete transactions to secure funds to prevent the closing of its terminals, but without providing any details on what those transactions were.  Yellow then made the WARN

notices even more confusing by stating that "these circumstances", referring to its failure to complete transactions to secure financing and business, were not reasonably foreseeable. (Jt. Ex. 105, 108) Whether a closing was foreseeable in advance is immaterial to the faltering company defense. *In re APA Transp.*, 541 F. 3d at 249. By parroting and mixing statutory language for the faltering company and unforeseeable business circumstances defenses, Yellow made it difficult for the reader to decipher whether it was relying on its inability to secure financing to support its faltering company or UBC defense. The Court cannot declare Yellow's WARN notices to be reasonable without testimony from the notices' drafters explaining why they overlooked the notices' obvious deficiencies. *Chaney v. Vt. Bread Co.,* 2024 WL 2246394 *5 (D. Vt. May 17, 2024) (To establish good faith defense, an employer must establish that it had a good faith belief that its acts or omissions at the time of closure did not violate the Act.)

      c.    <u>Yellow Did Not Have a Reasonable Basis for Not Mentioning TNFINC's Strike Notice In its WARN Notices</u>.

TNFINC's strike notice was the unforeseeable business circumstance that caused Yellow to lay off its employees. (D.I. 5227, pg. 3) To comply with §2102(b)(3), Yellow's WARN notice must both identify the strike notice and explain how the strike notice caused it to terminate its employees without giving them 60 days' notice. *Alarcon*, 27 F.3d at 391. To demonstrate subjective good faith, Yellow must show it had an honest intention to ascertain and follow the dictates of the WARN Act on what information must be included in the WARN notice. *Childress*, 357 F.3d at 1008. Yellow, in other words, must demonstrate it had a good faith basis for believing the WARN notices complied with the law though they failed to mention the strike notice. (Day III, pg. 57:6-9, 25) Debtors cannot make this showing when they failed to offer any testimony from persons who drafted the WARN notices, so that they cannot show why the notices' drafters thought the WARN notices complied with §2102(b)(3) though they failed to mention the strike notice.  Debtors

do not possess any non-privileged information on why the WARN notices did not mention the strike notice. (Union Ex. 17, response on Topic #18) Because none of the Debtors' witnesses participated in drafting the WARN notices, their testimony about Yellow's communication strategy cannot explain why the notices' drafters thought the notices can comply with §2102(b)(3) without mentioning the strike notice. (Day II, pg. 53:7 – 54:6)

Nor would Yellow's "communication strategy" provide a reasonable basis for not mentioning the strike notice in WARN notices that Yellow issued to high level union officials. An employer's reason for shortening the notice period must be provided to the bargaining representative. 29 U.S.C. §2102(a)(1); 20 C.F.R. §639.9 ("Written explanation of the employer's reason for shortening the notice period must be provided to the union, non-represented employees, state dislocated workers unit, and local government.")  On July 30, 2023, Yellow issued WARN notices to high level union officials, not its rank-and-file employees (Jt. Ex. 105, 108). The drafters of the WARN notices had no reasonable basis for believing that mentioning the strike notice to union officials would lead to violence. Nor did the drafters of the WARN notices have any reason to hold back on blaming the Teamsters and the strike notice for Yellow's troubles, when Yellow had done so publicly both before and after it issued the WARN notices to the unions. Union Ex. 30, ¶¶7-8, 29; Docket #14, ¶13 (The consequence of the union's strike threat was that Yellow's business evaporated over four days, and any realistic prospect of obtaining out of court financing dried up); ¶100 (The threat of the IBT strike was enough to seal Yellow's fate, and irreparably harm Yellow as an ongoing business).  Nor could Yellow have had an honest intention to ascertain and follow the dictates of the WARN Act; yet conclude it could comply with WARN by deliberately omitting from the WARN notice the business circumstance that caused its closing.

Yellow's other arguments on subjective good faith, including its general awareness of

WARN obligations, the number of WARN notices it issued, how it kept its employees informed, and that it prioritized employee welfare and safety, are irrelevant.  The relevant question is a much narrower one that focuses on whether Yellow's act or omission violated WARN (its failure to mention the strike notice in its WARN notices) was in good faith.  Cases cited by the Debtors are not to the contrary when their findings of subjective good faith relied on the thoroughness of the employer's efforts to determine the WARN Act's requirements, not just that the employer knew of the WARN Act or had its employees' welfare in mind. *Frymire v. Ampex Corp.,* 61 F.3d 757, 768-9 (10th Cir. 1995); *In re Old Electralloy Corp.*, 162 B.R. 121, 126 (Bankr. W.D. Pa. 1993).

Yellow's argument concerning the allegedly unprecedented circumstances it faced when it prepared the WARN notices is a subjective good faith argument, not an objective good faith argument. The WARN Act permits an employer to issue notice after the fact. *In re AE Liquidation Inc.*, 866 F. 3d 515, 523 (3d Cir. 2017), citing 20 C.F.R. 639.9.  If an employer does not have sufficient time to prepare an adequate WARN notice, it should take the time that it needs to issue a lawful notice, rather than rely on the lack of time to excuse a deficient notice. *UAW Local 1077 v. Shadyside Stamping Corp.*, 1991 WL 230841 *3 (6th Cir. 1991) similarly discussed the employer facing rapidly evolving and unforeseen developments as a part of its finding that the employer acted in (subjective) good faith.  *Butler v. Fluor Corp.*, 511 F. Supp. 3d 688, 719 n. 33 (D.S.C. 2021) did not specify whether it was analyzing subjective or objective good faith.[6]

Yellow's argument about "unprecedented circumstances" also fails as a subjective good faith argument, because Yellow did not act in good faith by treating preparing a lawful WARN notice as an afterthought. Counsel who were involved in discussion about Yellow's WARN notices

---

[6] *Butler* is additionally distinguishable because that case only involved the employer's minor error of including an email address rather than a phone number, whereas a WARN notice's failure to mention the business circumstance that caused the employer's closing altogether is not a minor violation.  *Grimmer*, 937 F. Supp. at 258.

included its general counsel, assistant general counsel, historic employment counsel, historic labor counsel, and counsel at its restructuring firm. (Day II, pg. 20:7-23). Yellow began contingency planning for a Chapter 11 bankruptcy filing on July 17, 2023; yet did not begin to prepare a WARN notice for its unionized employees until the evening of July 28, 2023. (Day II, pg. 11:4-7; Union Ex. 18, Answer to Interrogatory #15) Had Yellow given preparing WARN notices the same priority as preparing a press release announcing its closing to the public, which Yellow was working on by July 24 at the latest (Jt. Ex. 84), one of its attorneys likely would have time to locate the Ninth Circuit's *Alarcon* decision, and conclude the WARN notices must mention the strike notice as the business circumstance that caused Yellow's closing.  By July 28, 2023, Yellow already had drafted language that explained how the strike notice caused its closing.  (Jt. Ex. 95, pg. 1) Once Yellow concluded its WARN notices must mention the strike notice, it could insert the already prepared language into its WARN notices without modification. Yellow did not act in subjective good faith by treating preparing a notice that complied with §2102(b)(3) as an afterthought to other contingency planning for its closing. *Castro v. Chicago Hous. Auth.*, 360 F.3d 721 (7th Cir. 2004).

        d.    <u>Yellow Had No Reasonable Basis for Believing the WARN Act Did Not Require Its Notices to Mention the Strike Notice</u>.

Each of the Debtors' argument on objective good faith fails. First, it was not reasonable for Yellow to believe its WARN notice could mention "these circumstances" instead of the strike notice. Yellow's argument is grammatically untenable, since "these circumstances" refer to the previous sentence, which described Yellow's inability to secure funds and business, not any strike notices. Moreover, the WARN Act prohibits an employer from relying on vague justification for giving shortened notice. *Grimmer*, 937 F. Supp. at 257. A WARN notice must state reasonably specific facts in support of the employer's defense to WARN liability to avoid employers offering litigation convenient but *post hoc* justifications for their actions. *Sides v. Macon County Greyhound*

*Park, Inc.*, 725 F. 3d 1276, 1285-1286 (11ᵗʰ Cir. 2013); *Chaney*, 2023 WL 5589113 \*10; *Newman v. Crane*, 435 F. Supp. 3d 834, 843-844 (N.D. Ill. 2020). Yellow had no reasonable basis for believing the WARN Act permitted its WARN notice to only refer to "these circumstances", so that it could later insert a litigation convenient explanation as to whether by "these circumstances" it meant the strike notice, inability to obtain financing, or something else altogether.

Second, Yellow had no objectively reasonable basis for believing the WARN Act permitted it to issue a less thorough WARN notice to its employees, because the cause of its closing was already well known. The requirement that an employer shall or must include in its WARN notice a brief statement of its basis for reducing the notification period is unconditional. 29 U.S.C. 2102(b)(3), 20 C.F.R. 639.9.  *U.S. v. Santos Diaz*, 66 F.4th 435, 443 (3d Cir. 2023) (The use of the word "shall" in a statute expresses a mandatory command). There is no plausible way to interpret either the statute or the regulation to suggest an employer can provide a less detailed explanation of its reasons for shortening the notice period if the cause of its closing is well known. Debtors' citation to *Oil Chemical Workers Local 7-515 v. Am Home Prods Corp*. is affirmatively misleading because the Debtors are citing to the portion of the opinion that discussed subjective good faith, where that court relied on ambiguity in the regulations defining the employer's obligation to issue successive notices to find objective good faith. *See* 790 F. Supp. 1441, 1452 (N.D. Ind. 1992). The WARN Act imposes the same standard for what must be included in an explanation of the reason for shortening the notice period, no matter how well known the cause of the employer's closing.

Nor did Yellow have an objectively reasonable basis for believing its deficient WARN notice was lawful, because it could point to other communications to make up for its deficient WARN notice. None of CEO Hawkins' emails to "fellow truckers" that Yellow cites refer to the strike notice. (Jt. Ex. 41, 44, 48, 55, 75; Debtors Ex. 41). Yellow's union talking points are

inadequate both because they do not mention the strike notice (See Jt. Ex. 101); and because the talking points are a script to guide terminal management's verbal discussions with employees, while an employer cannot rely on meetings with employees to make up for a deficient WARN notice. *Conn v. Dewey & Leboeuf, LLP*, 507 B.R. 522, 529 (Bankr. S.D.N.Y. 2014); Day I, pg. 180:25 – 181:3). Nor did Yellow have any reasonable basis for believing its July 19 and July 22, 2023 press releases represented a lawful method to explain to its employees its reasons for shortening the notice period. *Weekes-Walker v. Macon County Greyhound Park, Inc.*, 877 F. Supp. 2d 1192, 1207 (M.D. Ala. 20123)(Under 20 C.F.R. §639.8 notice of the employer's reason for shortening the notice period must be provided by mail, personal delivery, or insertion into a pay envelope, so a press release is obviously insufficient)[7]   Moreover, neither press release ever discussed the possible effects of TNFINC's strike notice or threat to strike. (Jt. Ex. 95, 98)[8]  On or before July 30, 2023, Yellow did not explain to its unionized employees by a method authorized by §639.8 that its closing was caused by TNFINC's strike notice.

Yellow's reliance on its August 7, 2023 press release is even more problematic for two reasons. First, Yellow had no reasonable basis for believing it could violate §2102(b)(3), which requires the employer to provide its reasons for shortening the notice period at the time it issued the WARN notice, by issuing a press release 8 days after it closed its terminals. Second, an employer's conduct after it violated WARN is irrelevant to the good faith defense. *Castro,* 360 F.

---

[7] Nor is *Carlberg v. Guam*, 2017 WL 4381667 *4 (D. Guam Sept. 30, 2017), persuasive authority for the proposition that an employer can rely on press coverage as a substitute for issuing a proper WARN notice to its employees.  That conclusion in *Carlberg* simply is not supported by either of the cases that it cites, both of which evaluated deficiencies in the drafting or distribution of *written* notices.  *SEIU Local 6 v. Andrews International Inc*. concerned the adequacy of a written transition memorandum that the employer distributed to its employees, while *Saxion v. Titan-C Manufacturing, Inc*. addressed a written notice from the employer that was deficient in content.  See 2013 WL 12107630 *2, 6; 86 F. 3d at 561.

[8] While Yellow offered testimony that from the company's perspective, the effect of the strike notice was somewhat the same as the strike, and there is evidence union employees were aware of the decline in shipments, there is no evidence any union employees knew the strike notice caused the decline in shipments though a strike never occurred.

3d at 733; *Chaney*, 2024 WL 2246394 *5. Any argument by Debtors that there were restraints on Yellow prematurely disclosing it was filing for bankruptcy is a red herring, since it could and did explain to its non-union employees how TNFINC's strike notice killed Yellow without mentioning bankruptcy. (Jt. Ex. 95, pg. 1; Day II, 24:5-14)

Third, it was not objectively reasonable for Yellow to believe it could issue a deficient WARN notice because its unionized employees would not be harmed by the notice's deficiencies. Under §2104(a)(4), the Court acquires discretion to reduce WARN damages only if the Debtors can show Yellow had reasonable grounds for believing that its act or omission (that violated the WARN Act) was not a violation of the WARN Act; and not whenever a blatant violation of WARN turned out to be harmless. Indeed, the WARN Act imposes strict liability, so that to receive statutory damages an employee need not prove he was harmed at all. *In re APA Transp.*, 541 F. 3d at 248; *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007). *Machinists Local 776 v. General Dynamics Corp.* cited by the Debtors is not to the contrary, because in that case the employer relied on a past practice of treating service upon the local union as service on the national union, not the lack of harm, to demonstrate objective good faith. *See* 821 F. Supp. at 1313. *Schmelzer* is even more distinguishable when it declined to find a violation, rather than found the employer's violation of WARN was objectively reasonable. *See* 155 F.3d at 1369-1370.

    3.    <u>The Court Should Not Exercise Its Discretion to Reduce the Debtors' WARN Damages.</u>

For the reasons outlined above, the Court does not have discretion to reduce Debtors' WARN damages. Even if the Court could, it should not exercise its discretion for three reasons.

First, even when an employer establishes the faltering company and unforeseeable business circumstances defenses, it must still provide its employees with as much notice as is practicable. 29 U.S.C. §2102(b)(3). One day after TNFINC issued its strike notice, Yellow understood it would

experience a massive decline in the number of shipments it picked up per day, so that it was not surprised by either the subsequent long-term loss of its corporate business, or by the loss of non-corporate business that it similarly may never recover.  (Jt. Ex. 73, pg. 2: Day I, pg. 134:23 – 135:1; 135:5 -136:2; 136:3-10)  Though Yellow understood that if it were to survive at all it would do so as a smaller company, it never discussed with its CFO the level of shipments by which it could continue to operate; such as for example, how its debt level could match the smaller number of shipments it was picking up. (Day I, pg. 137:18-22; 256:13-19) Nor could Yellow look to outside financing for its salvation when Mr. Doheny's admits that Yellow's prospects of obtaining out of court financing had dried up along with its shipments by July 21, 2023; and when its July 23, 2023 Board minutes referred to the likelihood of securing financing as a near impossibility. (D.I. #14, ¶13; Jt. Ex. 82, pg. 2) An employer is obligated to issue a WARN notice once its closing was more likely than not, i.e. was more than a fifty-fifty proposition.  *In re AE Liquidation*, 866 F. 3d at 530, 533. By March of 2023, Yellow understood it should issue WARN notices for job losses covered by WARN that "may" rather than "will" occur. (Day I, pg. 166:11-14) By no later than July 23, 2023, Yellow had less than 50 percent chance of surviving when its prospects for financing had dried up, and when it wasn't even discussing internally how it could survive as a smaller company picking up far fewer shipments. At the latest, Yellow should have begun preparing WARN notices by no later than July 23, 2023, so that by waiting until July 28, 2023 to prepare WARN notices for its union employees Yellow committed more than just a technical violation of §2102(b)(3).

Second, none of Yellow's relevant communications to its employees made up for the deficiencies in its WARN notices. Yellow's public communications after it violated WARN on July 26, 2023 are irrelevant, because an employer cannot rely on its conduct after it violated WARN to support its good faith defense. *Castro*, 360 F. 3d at 733. On or before July 26, 2023, Yellow did

not issue any communications to its unionized employees that mentioned TNFINC's strike notice. (Jt. Ex. 41, 44, 48, 55, 75; Debtors Ex. 41) The closest that any of these communications come to mentioning Yellow's efforts to obtain financing is to state that Yellow is preparing for a comprehensive re-financing, and that it was working with its lenders to provide financial support in the near term.  (Jt. Ex. 50) Financial support, however, could mean the waiver of a covenant for an existing loan, rather than a proposal to actively seek capital. (Day I, pg. 125:22-24) None of Yellow's communications to its employees therefore supplemented its deficient WARN notice by providing more details about Yellow's efforts to seek financing either. Yellow cannot rely on press releases and media coverage to make up for its deficient WARN notices either because the employer's reasons for shortening the notice period must be communicated to employees by first class mail, personal delivery, or similarly reliable methods; so that media coverage or a press release is not an adequate substitute for a proper WARN notice. See §2102(b)(3); 20 C.F.R. §639.8.

Finally, Yellow is not entitled to a good faith reduction of WARN damages because it treated complying with WARN as an afterthought. Starting on July 17, 2023, Yellow engaged in wide ranging contingency planning for a potential bankruptcy filing by answering a list of questions needed to prepare for the filing, calculating non-union severance payments, calculating union vacation pay-outs, figuring out how many non-union employees would need to be laid off and how many employees should be retained after the terminals shut down, calculating its potential WARN exposure, preparing at least three drafts explaining the effects of the strike notice, and even working on a press release to announce its closing to the public.  (Day I, pg. 168:22 – 169:4, 170:13-24, 174:22 – 175:2, 175:9-13; Day II, 28:3-19, 33:17-21, 34:8-12, 39:10-13, 19-22)  By not including the preparation of a lawful WARN notice as a part of its contingency planning, Yellow treated complying with WARN as an afterthought, which further counsels against the Court

20

exercising its discretion to reduce Debtors' WARN damages. *Castro*, 360 F. 3d at 721.

### III.    CONCLUSION.

The result of this trial is mandated by unambiguous statutory language: Whether Yellow was covered by WARN should be measured at the time it ordered the plant closing, which it did by commanding its professionals and human resources staff to begin implementing its order to shut down its terminals. Because Yellow cannot demonstrate that it had either a good faith basis or reasonable grounds for believing its WARN notices complied with the law, §2104(a)(4) does not grant the Court discretion to reduce Debtors' WARN damages. The Court should allow the WARN claims in the Unions' proofs of claim in their entirety.

Date: January 31, 2025        Respectfully submitted,

LAW OFFICE OF SUSAN E. KAUFMAN, LLC

*/s/ Susan E. Kaufman*
Susan E. Kaufman, (DSB# 3381)
919 North Market Street, Suite 460
Wilmington, DE 19801
(302) 472-7420
(302) 792-7420 Fax
skaufman@skaufmanlaw.com

-and-

Yingtao Ho (WI Bar No. 1045418)
Emma Woods (WI Bar No. 1120187)
THE PREVIANT, LAW FIRM, S.C.
310 W Wisconsin Ave, Suite 100MW
Milwaukee, Wisconsin 53203
Telephone: 414.271.4500
Facsimile: 414.271.6308
emw@previant.com
yh@previant.com

Attorneys for the International Brotherhood of Teamsters, the Teamsters National Freight Industry Negotiating Committee, and the International Association of Machinists and Aerospace Workers