# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

**CRAIG T. GOLDBLATT**
**JUDGE**



**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

March 31, 2025

<u>**VIA CM/ECF**</u>

Re:    *In re Yellow Corporation, et al.,* No. 23-11069

Dear Counsel:

In a jointly written March 27, 2025 letter, the debtors and the Committee urge the Court to reconsider its earlier statement that it would issue its decision on the pending summary judgment motions on April 4, 2025.[1]  By contrast, MFN contends that the Court should issue its decision and proceed to resolve the various claim objections on their merits.[2]

For the reasons described below, the Court's tentative determination is that issuing its decision, while likely to cause near-term disruption in the consensus that many of the key constituencies have worked hard to forge, will ultimately facilitate a more orderly confirmation process than would withholding the decision.  That judgment is premised on the Court's conclusion that the pending MFN claim

---

[1] D.I. 5982.  Yellow Corporation and its affiliated debtors are referred to as the "debtors."  The Official Committee of Unsecured Creditors is referred to as the "Committee."

[2] MFN Partners, along with its affiliate, Mobile Street Holdings, is referred to as "MFN."

objections require it, at the very least, to apply more exacting scrutiny to the settlements of those claims, reflected in the proposed plan of reorganization, than the deferential review that would otherwise apply under Rule 9019. And the Court believes that this scrutiny will necessarily be informed by the legal conclusions contained in the summary judgment opinion that are today known to the Court but not the parties.

In short, under the circumstances of this case, the Court does not believe that it can confirm the proposed plan based on an analysis that looks only at whether the claim settlements that form the cornerstone of the plan are broadly within the range of reasonable, applying the highly deferential standard that otherwise applies to Rule 9019 settlements.

*First*, the Court rejects the argument that the "joinders" to the debtors' claim objections that MFN has filed can be mooted by the debtor's decision to withdraw its objections. The point of filing a joinder is to preserve the right to litigate the underlying objection in which the party is joining. And the Court sees little benefit to announcing a rule that would require a party that otherwise wishes to join in an objection to clutter the docket by making a wholly duplicative filing.

*Second*, the Court does not believe that in the present circumstances, it can apply deferential Rule 9019 review to the settlements baked into the plan. The caselaw on which the debtors and the Committee rely, including the district court's decision in *Kaiser Aluminum*, has been overtaken by more recent decisions of the

*In re Yellow Corporation, et al.,* No. 23-11069
March 31, 2025
Page 3 of 27

Supreme Court and the Third Circuit.[3]  Section 502(b) says that any "party in interest" may object to the allowance of claim in bankruptcy and that when such an objection is filed the bankruptcy court "shall" determine the amount of the allowed claim.[4]  In light of the Supreme Court's decision in *Truck Insurance* and the Third Circuit's decision in *FTX* – which interpret the terms "party in interest" and "shall," respectively  – the Court believes that it is, at the very least, required to engage in a more searching review of the reasonableness of the settlements, which will necessarily be informed by the conclusions set out in the (yet unissued) summary judgment ruling. [5]

Given the importance of these issues and to show appropriate respect for the hard work of the debtors, the Committee, and other creditors in reaching an agreement that achieves a measure of consensus, the Court is prepared to hear from the parties, at the status conference set for April 7, 2025 at 10:00 am Eastern Time, with respect to the Court's tentative conclusions on the legal issues described in this letter.  The Court will defer the issuance of its summary judgment opinion until the parties have the chance to be heard at that time.

---

[3] *In re Kaiser Aluminum Corp.*, 339 B.R. 91 (D. Del. 2006).

[4] 11 U.S.C. § 502(b).

[5] *See Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024); *In re FTX Trading Ltd.*, 91 F.4th 148 (3d Cir. 2024).

## Background

The debtors were a leading trucking company whose business failed in the summer of 2023 as a result of a labor dispute. The debtors conducted a tremendously successful auction process for the sale of their terminals and trucking assets. Those sales generated approximately $2 billion in cash, which was used to pay off their secured debt (including the DIP loan) in full and leaving hundreds of millions of dollars available to pay unsecured claims.

Many of the debtors' largest creditors are multiemployer pension plans. As a result of the debtors' withdrawal from those plans, the debtors owe withdrawal liability under the Employee Retirement Income Security Act ("ERISA"). The calculation of that withdrawal liability, however, is quite complex and raises a number of unresolved legal questions both under ERISA and the Bankruptcy Code. The pension plans have filed proofs of claim on account of the withdrawal liability.[6] The debtors and MFN have each filed claim objections.[7]

One of the first disputes that the parties brought to the Court involving the allowance of these claims involved those plans that received federal financial assistance under the American Rescue Plan Act. If federal funds received by pension plans under that statute were treated as ordinary plan assets, then the plans would have little or no "unfunded vested benefits," which would mean that a withdrawing

---

[6] D.I. 5996 at 43 n.13, 45 n.14-21.

[7] D.I. 1962, 2595 (debtors' claim objections); D.I. 5182, 5492 (MFN's claim objections).

*In re Yellow Corporation, et al.,* No. 23-11069
March 31, 2025
Page 5 of 27

employer, such as Yellow, would have little or no withdrawal liability to those plans. The PBGC, seeking to carry out the statutory mandate that the funds provided under the statute in fact be used to shore up the pension plans, issued regulations that effectively provided that those funds would not be counted as plan assets for the purpose of calculating withdrawal liability.[8]  The debtors along with MFN, the holder of equity in the debtors, challenged those regulations as inconsistent with the terms of the American Rescue Plan Act.  The Court upheld the regulations, but certified the question for direct appeal.[9]  The Third Circuit granted that direct appeal and ordered an expedited briefing schedule, indicating that it would set the case for argument as early as June 2025.[10]

In the meantime, other issues regarding the calculation of withdrawal liability have been brought to this Court.  The Court addressed a handful of withdrawal liability calculation issues in the same opinion that upheld the PBGC regulations, and later amended that ruling on reconsideration.[11]  A separate summary judgment opinion resolved a number of issues regarding the calculation of withdrawal liability owed to those pension plans that did not receive federal assistance under the American Rescue Plan Act.[12]

---

[8] The Pension Benefit Guaranty Corporation is referred to as the "PBGC."

[9] D.I. 4326; D.I. 5358.

[10] *See In re Yellow Corp.*, Third Cir. No. 25-8004 (Feb. 28, 2025), D.I. 25.

[11] D.I. 4326 at 34-41; D.I. 4769.

[12] DI. 5619.

Seven significant questions bearing on the calculation of withdrawal liability, applicable to both those plans that received funding under the American Rescue Plan Act and those that did not, were separately briefed to this Court in connection with several motions for summary judgment. In substance, the seven issues raised by those motions are the following:

(1)    Whether, as of the petition date, the debtors' obligation to pay withdrawal liability over 20 years had been accelerated as a result of a default.

(2)    Whether the debtors' 20-year stream of payments is accelerated because of their bankruptcy filing.

(3)    Whether that stream of future obligations should be discounted to present value on account of 29 U.S.C. § 1405(e).

(4)    Whether, under federal bankruptcy law, the 20-year stream of payments should be present discounted, and if so, what discount rate should be used for that purpose.

(5)    Whether the limitation on withdrawal liability set forth in 29 U.S.C. § 1405(b) applies to the employer's total share of the plan's unfunded vested benefits, or only the amount after the application of the 20-year cap provided in 29 U.S.C. § 1399(c)(1)(B).

(6)    Whether Central States and Local 641 used appropriate contribution base units when calculating the debtors' annual payment.

(7)    Whether Central States' claim arising under a side letter between the parties is properly enforceable under applicable non-bankruptcy law.

The Court heard argument on those motions on January 28, 2025. A Memorandum Opinion that seeks to answer those questions is substantially complete.

In the meantime, however, a separate drama was unfolding as the debtors sought to propose and confirm a plan of reorganization. In September 2024 the

debtors filed the first version of a plan of liquidation.[13]  That plan was amended twice in the fall of 2024.[14]  A confirmation hearing was set for February 24, 2025.

At the January 28, 2025 hearing, counsel for the Committee apprised the Court that the Committee did not support confirmation of the plan, and (presumably relatedly) that no impaired class of creditors had voted in favor of the plan, which would preclude its confirmation under § 1129(a)(10) of the Bankruptcy Code.  Counsel went on to say that the Committee intended to move to terminate exclusivity or in the alternative to convert the cases to ones under chapter 7.[15]

The confirmation hearing was subsequently pushed back to March 17, 2025.  On March 12, however, counsel for the debtors reached out to chambers asking to cancel the March 17 hearing.  The Court directed that the hearing go forward as a status conference, and the debtors filed an agenda so indicating.[16]

At that status conference, counsel for the debtors said that they had canceled the confirmation hearing because the "debtors do not have the votes for the waterfall plan that we filed."[17]  The reason for that, counsel explained, is that "[c]ertain of our largest unsecured creditors are unwilling to vote for the debtors' plan."[18]

---

[13] D.I. 4253.

[14] D.I. 4580; D.I. 4974.

[15] Jan. 28, 2025 Hr'g Tr. at 132.

[16] D.I. 5878.

[17] March 17, 2025 Hr'g Tr. at 6.

[18] *Id.*

Debtors' counsel went on to explain, however, that the debtors had recently received a proposal from the Committee for a form of plan that did have support from "certain of the debtors' largest unsecured creditors."[19]  Counsel said that the debtors were "vigorously evaluating" the proposal and that they understood that if the debtors did not support it, the Committee would go forward with that plan on its own.[20]  Counsel observed, however, that other stakeholders also needed to be consulted, and that absent the agreement of those stakeholders, plan confirmation would likely be hotly contested.

Counsel for the Committee then elaborated somewhat on the terms of the proposal.  She explained that the Committee has voted to support a plan that "would resolve in full all disputes that have been or may be pursued with respect to the claims" asserted by many of the largest pension plan creditors.[21]  Counsel added that the plan "will also provide the opportunity for other [multiemployer pension plan] creditors to participate in the settlement on substantially similar terms."[22]  The settlement will thus obviate ongoing claims allowance litigation and thereby "provide general unsecured creditors with both more certainty as to when they would expect

---

[19] *Id.*

[20] *Id.* at 6-7.

[21] *Id.* at 9-10.

[22] *Id.* at 10.

*In re Yellow Corporation, et al.,* No. 23-11069
March 31, 2025
Page 9 of 27

to receive recoveries, and more value than they would otherwise receive in virtually

all other scenarios."[23]

Before concluding the hearing, the Court noted that it expected to be in a

position to issue its decision on the summary judgment motions argued on January

28 "sometime next week."[24]  Appreciating the relevance of the Court's resolution of

those disputes to the ongoing settlement discussions, the Court added that "[n]o one

has asked me … not [to] proceed in the ordinary course …. [s]o I'm just going to …

get it out as promptly as I can … without regard to whatever I [learned] today about

where the parties are."[25]  The Court added that "if someone wants me to do something

different, I'll let you ask me, but unless and until someone does, I'm just going to put

my head down and do my job."[26]

Counsel for the debtors then suggested that the Court use an existing hearing

date on March 26 for another status conference to check in on the state of play

regarding the plan.[27]  The Court agreed to do so.[28]

On March 21, however, counsel for the debtor sent an email to chambers

(copying counsel for many but not all of the affected parties), that read as follows:

> We are reaching out to update the Court regarding the [multiemployer
> pension plan] summary judgment motions that were argued on January

---

[23] March 17, 2025 Hr'g Tr. at 10.

[24] *Id.* at 15.

[25] *Id.*

[26] *Id.*

[27] *Id.* at 16-17.

[28] *Id.* at 17.

*In re Yellow Corporation, et al.,* No. 23-11069
March 31, 2025
Page 10 of 27

28, 2025, and are currently under advisement.  At the status conference
on March 17 this week, the Court indicated it was likely to issue a ruling
by next week.  We believe we have reached a settlement in principle with
the Committee and other [multiemployer pension plans] (other than
MFN Partners).  As such, we would respectfully request that the Court
hold off on issuing its ruling, and we will provide a more fulsome update
at the status conference on March 26.

We have copied relevant counsel for the Committee, the [multiemployer
pension plans], and MFN Partners. Please advise if you have any
questions. Thanks, and have a nice weekend.[29]

Counsel for MFN responded by letter dated March 25, 2026.[30]  The letter notes

that the summary judgment motions were argued on January 28, 2025 and that the

"issues to be resolved either will result in resolution of over a billion dollars in

disputed [multiemployer pension plan] claims and, if the objections are sustained

even in part, would meaningfully improve recoveries to all general unsecured

creditors holding allowed claims."[31]  The letter notes that while certain other creditors

have been brought into the proposed settlement in exchange for "new consideration,"

MFN was not, and that it took the position that the various settlements were likely

to be "patently unfair to MFN Parties and other general creditors and render any

plan unconfirmable."[32]  For that reason, MFN argued that the "fair outcome for all,

---

[29] The Court does not ascribe to debtors' counsel any intent to exclude an affected party from
a communication with the Court.  This Court's chambers procedures do permit emails to
chambers with respect to certain procedural and scheduling matters, but require that all
such email communications be copied to opposing counsel.  For a matter as substantive as
the request at issue here, however, the better practice would have been to file a letter on the
public docket.

[30] D.I. 5961.

[31] *Id.* at 1.

[32] *Id.* at 2.

including the MFN Parties who have objected to the [multiemployer pension plans'] claims, is to have resolution of the disputes brought before the Court."[33]   MFN concluded by noting that "[t]here is no universal resolution and, until there is, this Court should do in the same manner as it has multiple times during these cases – resolve important disputes that impact all stakeholders."[34]

The Court addressed these issues at the March 26 status conference.  Counsel for the debtors explained that a ruling on the pending summary judgment motions, whatever that ruling may be, "will likely gut our ability to maintain the current level of consensus" in support of the plan.[35]  Counsel added that while MFN had not agreed to the plan settlement, the debtors' "ultimate goal … would be to fold as many [parties in interest], including MFN, into this contract as possible."[36]

Counsel for the Committee added that the disputes before the Court in the pending summary judgment motions "are the very matters that we are proposing to settle onto the plan with the settling parties."[37]  Committee counsel further warned that:

> The [C]ommittee firmly believes that if Your Honor were to issue a ruling now in either direction or in a multitude of different directions there will be no near-term consensual resolution of these cases[; no] opportunity for unsecured creditors to vote on whether to accept or reject the settlement [that] the [C]ommittee and the other parties … have

---

[33] *Id.*

[34] *Id.*

[35] March 26, 2025 Hr'g Tr. at 5.

[36] *Id.* at 8.

[37] *Id.* at 11.

negotiated into the plan, no opportunity for the [multiemployer pension plans] that are not currently a party to the settlement to review the terms of that proposal and elect to opt-in[; thus] no confirmable plan to prosecute to the detriment of all stakeholders of these estates.[38]

In response that that plea, the Court posed a question to Committee counsel – one that the Court had not previously considered.  With apologies for the long-winded formulation, the Court asked:

> So imagine the following: There's a creditor whose claim is unliquidated. There's another major creditor in the case who has filed an objection to the allowance of that creditor's claim. The debtor-in-possession, the trustee or what have you, seeks to settle with the creditor whose claim is the subject of another party's objection. How does the Bankruptcy Court think about the question of can I approve the settlement in an amount that is greater than [the amount in which it would ultimately be allowed if the Court resolved the claim objection on the merits?]

> So what do I do if … the trustee in bankruptcy wants to settle, but another creditor, who has a statutory right to object to the allowance of the claim, says, "Judge, the claim is invalid, disallow the claim, I've objected to it and I'm entitled to its disallowance?"  What does a Court do in that circumstance because I think the answer to that is relevant to what's in front of me today.[39]

Committee counsel responded that the issue is "no different than the resolution of any potential estate claim."[40]  Counsel added that "so long as what's being proposed is within the range of reasonableness … the debtors can settle and resolve even if other claimants are not supportive of the resolution."[41]

---

[38] *Id.* at 11-12.

[39] *Id.* at 13-14.

[40] *Id.* at 14.

[41] March 26, 2025 Hr'g Tr. at 14-15.

*In re Yellow Corporation, et al.,* No. 23-11069
March 31, 2025
Page 13 of 27

After counsel for MFN argued that it was entitled to a ruling on a motion to which it was a party, the Court observed that it appreciated the point made by the debtors and the Committee that the Court should not issue a ruling that could be "massively disruptive" to the case and "interfere with [the] progress" the parties had made.[42]  At the same time, the Court indicated that it believed that MFN was "entitled to an adjudication" of an issue that it had properly brought before the Court.[43]  The Court accordingly concluded that it would be appropriate to give the parties an additional window of time in order to see if an MFN might be brought into the fold.  To that effect, the Court agreed to defer issuance of its opinion until noon on Friday, April 4th unless the parties unanimously requested an additional delay.[44]

On March 27, 2025, counsel for the debtors and the Committee wrote a joint letter to the Court.[45]  The letter makes essentially two arguments.  *First*, the debtors and the Committee contend that because MFN filed a "joinder" in the debtors' objection rather than a "standalone" objection they had no independent right to an adjudication.  *Second*, the letter provides law in support of the position that the Committee took in response to the Court's question at the March 26 hearing regarding the debtors' authority to "settle out" claims to which another party-in-interest had filed an objection.  They contend that such settlements are permitted

---

[42] *Id.* at 22.

[43] *Id.*

[44] *Id.* at 24.

[45] D.I. 5982.

and need only satisfy the usual Rule 9019 standard, which essentially asks only whether the settlement is within the range of reasonableness.

On March 28, 2025, the debtors and the Committee filed a new plan of reorganization.[46] The accompanying disclosure statement explains the mechanics of the proposed settlement in some detail.[47]

## Analysis

### I.   MFN's joinder in the debtors' claim objections should be treated as incorporating the debtors' objection by reference.

The debtors and the Committee argue that because MFN did not file a stand-alone objection to the proofs of claim, but instead filed a joinder in the debtors' objection, it should not be treated as a party that has objected to the allowance of the claims.  In support of that contention, the debtors and the Committee point to two decisions from the Southern District of New York.[48]

In *Republic Airways*, two creditors joined in an objection filed by a creditors' committee to relief sought by the debtor.  The debtor resolved the committee's objection.  Judge Lane's decision does in fact state that "[i]n light of the Official Committee's withdrawal of its objection, this joinder is also resolved."[49]  The opinion, however, goes on to say that "[i]n any event, no one from the Teamsters made any

---

[46] D.I. 5995.

[47] D.I. 5996 at 52-55.

[48] D.I. 5982 at 3 (citing *In re Republic Airways Holdings Inc.*, No. 16-10429, 2016 WL 2616717 at *2 (Bankr. S.D.N.Y. May 4, 2016) and *In re Metaldyne Corporation*, No. 09-13412, 2009 WL 2883045, *1 n.4 (Bankr. S.D.N.Y. Jun. 23, 2009)).

[49] *Republic Airways*, 2016 WL 2616717 at *2.

argument at the hearing on these motions."[50]  In light of that statement, it is far from clear that Judge Lane would have permitted the committee to settle out the objection had the joining party sought to press forward with it.

Judge Glenn's decision in *Metaldyne* is to similar effect.  There, the court noted that the committee had objected to approval of the debtors' DIP loan.  A footnote states that "[t]he Pension Benefit Guaranty Corporation also filed an untimely joinder to the Committee's objections.  The Court will not consider untimely objections in the disposition of this dispute.  In any event, because the PBGC incorporated the Committee's objections into its own, the Court resolves the PBGC's objections on the same grounds."[51]  Nothing in the opinion, however, suggests that the PBGC sought press the point it had made in its joinder.  In context, it is very far from clear that this "in any event" point expressed in a footnote is a holding that a party that files a "joinder" should be treated differently from one that files an independent objection.

As a practical matter, the principal reason to file a joinder is to give the joining party the independent right to appear and be heard with respect to that issue.  This Court has always construed a joinder as saying, in effect, that the joining party intends to incorporate by reference the points made in the submission in which that party is joining.  Sure, one could live in a world in which courts chose not to respect "joinders" but instead required a joining party to file its own independent objection.

---

[50] *Id.*

[51] *Metaldyne*, 2009 WL 2883045 at *1 n.4 (internal citation omitted).

The obvious result of such a rule would be that parties would stop filing joinders, and (at the expense of the forests and electronic storage space) would instead file their own, identical pleading, on the docket. The Court is very hard pressed to see how the adoption of such a judicially created rule would make the world a better place or promote the efficient resolution of bankruptcy disputes. The Court therefore will not impose such a rule. Rather, it will treat MFN's pleadings as what they were intended to be – documents through which MFN asserted the same objections to the pension plan proofs of claim that were asserted in the debtors' objections.

## II. Without definitively resolving the question of the standard of review that will apply to the plan settlement, in light of the pending MFN objections the Court's evaluation must be more searching than the otherwise applicable Rule 9019 standard.

The second argument advanced by the debtors and the Committee, that the Court can approve the plan settlement under Rule 9019 notwithstanding the MFN claim objections, is a serious argument and raises a question on which bankruptcy courts have divided. At some level, one could say that this is a confirmation issue that need not be addressed at this stage. And indeed, the Court is not definitively resolving the issue now. That said, the Court's analysis of this issue has led it to conclude that it would make sense to set forth its preliminary views of that issue now, rather than after a confirmation hearing.

Based on this Court's review of the caselaw and a preliminary review of the disclosure statement, the Court does not expect that it will endorse the debtors' and Committee's strongest argument in support of the usual 9019 standard – that the

proposed settlement is to be reviewed under a highly deferential Rule 9019 standard that asks only whether the resolution falls within the outer confines of the range of reasonableness.[52]

The letter submitted by the debtors and the Committee points to a number of cases that (unbeknownst to the Court, when it asked this question to the parties at the March 26 status conference) have addressed the question whether a bankruptcy trustee may settle a claim that is the subject of a pending objection asserted by a party in interest.[53]  Indeed, the topic is the subject of a helpful article that categorizes the caselaw as falling into three groups.[54]  One group are the cases on which the debtors and the Committee rely, which is described as the "majority" position.[55]

---

[52] This argument can be found in the most recently filed version of the disclosure statement. D.I. 5996 at 52-55.  *See, e.g.*, *In re Capmark Financial Group*, 438 B.R. 471, 514-515 (Bankr. D. Del. 2010).

[53] The Court here uses the term "trustee" to include the debtor-in-possession in a chapter 11 case.  *See* 11 U.S.C. § 1107(a).  It is interesting that § 1123(b)(3)(A) states that a plan may "provide for … the settlement or adjustment of any claim or interest *belonging to the debtor or to the estate*," but does not expressly state that the plan may provide for the settlement of a claim *against* the estate.  *See id.* § 1123(b)(3)(A) (emphasis added).  The Court has no trouble, however, with the proposition that such a settlement may properly be achieved under the "catch-all" authority of 1123(b)(6) that states that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title."  The overarching point, however, is that the basic standard is not different than the one that would apply to a trustee seeking to settle a claims dispute outside the plan context.

[54] Brian L. Shaw and David R. Doyle, *Section 502 and the Hidden Limits on a Creditor's Right to Object to a Claim*, 2019 NORTON'S BANKR. L. ADVISER 1 (2019).

[55] *See In re Heritage Org., L.L.C.*, 375 B.R. 230 (Bankr. N.D. Tex. 2007); *In re Tri-State Ethanol Co. LLC*, 370 B.R. 222 (Bankr. D.S.D. 2007); *Kaiser Aluminum Corp.*, 339 B.R. 91; *In re Trism, Inc.*, 282 B.R. 662 (8th Cir. BAP 2002); *In re Dow Corning Corp.*, 244 B.R. 72 (Bankr. E.D. Mich. 1999).

The district court's decision in *Kaiser Aluminum* is a good example of this line of reasoning. There, a creditor had objected to a claim against the debtor's estate filed by the PBGC. The debtor sought to settle with the PBGC, granting it an allowed claim that, according to the objecting creditor, gave the PBGC a "windfall."[56] The bankruptcy court did there what the debtors and Committee ask this Court to do here – stayed the claim objection and considered the motion to approve the settlement first. The subsequent approval of the settlement effectively mooted the objection to the allowance of the claim.[57]

The district court affirmed. The court concluded that there was "no direct conflict between Section 502(a) and Rule 9019 which would require the Bankruptcy Court to resolve claim objections before approving a settlement."[58] Imposing such an obligation, the court said, "would undermine the important policy of promoting settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve."[59] The court noted that a chapter 11 debtor "is charged with fiduciary responsibilities to all creditors to resolve claims in the best interest of the estate."[60] The proposed settlement of the PBGC claim, the court concluded, should accordingly be judged by that standard.

---

[56] *Kaiser Aluminum*, 339 B.R. at 93.

[57] *Id.*

[58] *Id.* at 94.

[59] *Id.*

[60] *Id.* at 95.

On the merits, the district court applied the Third Circuit's *Martin* factors, which require the bankruptcy court to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal' in light of four factors."[61]  Those factors are: "(1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interests of the creditors."[62]  The district court found that the bankruptcy court had not abused its discretion in how it weighed those factors.[63]

There is a second group of cases on the other side of the spectrum.  The bankruptcy court in *C.P. Hall*, for example, held that a creditor that objected to the allowance of a claim "has statutory rights to object to the claims and obtain a ruling on his objection. The settlement cannot be approved if approval would deprive the creditor of those rights."[64]  The court there noted that § 502(b) of the Bankruptcy Code

---

[61] *Id.* at 96 (citing *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)).

[62] *Kaiser Aluminum*, 339 B.R. at 96.

[63] *Id.*  Other courts have adopted this analysis.  *See In re Mallinckrodt PLC*, 639 B.R. 837, 908 (Bankr. D. Del. 2022) (following *Kaiser Aluminum* and noting that a contrary conclusion "would allow a party-in-interest unfettered power and allow them to derail settlements, which would slow down the bankruptcy proceedings"); *In re Fog Cap Retail Investors LLC*, No. 22-1297, 2024 WL 659559, *6 (10th Cir. Feb. 16, 2024) (suggesting that only a claim objection that "involves the individual rights of the objecting creditor, such as a dispute over competing lien rights" may not be resolved without permitting the creditor the opportunity to be heard on the merits).

[64] *In re C.P. Hall Co.*, 513 B.R. 540, 542 (Bankr. N.D. Ill. 2014).

"permits any 'party in interest' to object" to the allowance of a claim.[65]  And when a claim objection is filed, the statute provides that "the court … shall determine the amount of such claim … as of the date of the filing of the petition, and shall allow such claim in such amount."[66]

The *C.P. Hall* court rejected the argument that the "orderly and expeditious administration" of the bankruptcy case provides a reason to override this statutory language, explaining that the "restriction" on the right of a party in interest to object to the allowance of a claim, which other courts had adopted, "does not appear in the Code itself" but rather is a rule that was essentially made up by judges.[67]  "It may be that sound bankruptcy policy warrants limiting creditors' rights this way, and when it comes to objecting to claims a chapter 7 trustee should be given first crack.  But Congress, not the courts, decides what makes for sound bankruptcy policy."[68]  The court accordingly rejected the rationale of *Kaiser Aluminum* on the ground that the decision is "based not so much on an analysis of the Code as on the courts' own policy views."[69]

The decision in *CS Mining* is to the same effect.  "The *C.P. Hall* case is persuasive as it applies the unambiguous language of the Code.  Section 502 makes

---

[65] *Id.* at 543.

[66] 11 U.S.C. § 502(b).

[67] *In re C.P. Hall Co.*, 513 B.R. at 544.

[68] *Id.*

[69] *Id.*

*In re Yellow Corporation, et al.,* No. 23-11069
March 31, 2025
Page 21 of 27

clear that 'the court' is to 'determine' a claim objection under section 502(b) of the Code.  When a party files an objection to a claim, their rights to be heard on the claim objection should not be abridged or modified by a settlement."[70]

Finally, there is one case in a third category.  The Bankruptcy Court for the District of Colorado, in *DVR*, sought to find a goldilocks solution by forging a middle ground.[71]  There, Judge Brown acknowledged that "the use of the word 'shall' in § 502(b) imposes a duty on the bankruptcy court to determine the allowed amount of a claim once an objection has been filed."[72]  The decision, however, emphasized the important role of the bankruptcy trustee as a fiduciary to various constituencies, whose interests will at times conflict with one another.  Seeking to reconcile the express authority of any party in interest to object to a claim with the trustee's duty to administer the estate as a fiduciary, the court suggested that the way to reconcile the principles is "to allow the objector to bring his objection, airing any legitimate grounds for doubting the claim's validity, but then to allow the trustee to come along and settle the dispute when doing so is in the best interests of the estate."[73]

The court described this as a "tag team" approach in which every party in interest "will continue to have a voice in the claim allowance process through his ability to lodge an objection to the settlement," but a bankruptcy court could

---

[70] *In re CS Mining, LLC*, 574 B.R. 259, 281 (Bankr. D. Utah 2017).

[71] *In re DVR, LLC*, 582 B.R. 507 (Bankr. D. Colo. 2018).

[72] *Id.* at 512.

[73] *Id.* at 518.

nevertheless approve a settlement reached by the trustee where the court concludes that such a resolution is in the best interests of the estate.[74]  The Court further suggested that the substance of the objector's contention would receive fair consideration in connection with the motion to approve the settlement.  "Moreover, [the creditor] will still have his day in court. Under Rule 9019, this Court cannot approve the Trustees' settlement without first ruling on [the creditor's] objection to it. The Trustees will bear the burden of proving to the court that their settlement is fair and in the best interests of the estate."[75]  And while the court went on to identify the factors the court would consider in seeking to approve the settlement as ones that are similar to those identified by the Third Circuit in *Martin,* nothing in the *DVR* opinion suggested that the court's analysis would be nearly as deferential to the trustee's judgment as the law under Rule 9019 otherwise is.[76]  Indeed, the clear implication of the "tag-team" approach is that the trustee's burden in seeking approval of the settlement is a meaningful one.

* * *

One could certainly take the position that choosing among these three standards for approving a settlement is a confirmation issue that need not be addressed at this time.[77]  And while that is certainly correct as a technical matter,

---

[74] *Id.* at 521.

[75] *Id.* at 523-524.

[76] *See id.* at 524.

[77] *See* March 26, 2025 Hr'g Tr. at 8 (counsel for the debtors arguing that "MFN's ability to object to the [proposed settlements] is a confirmation issue").

the Court's strong inclination is that two controlling appellate decisions that post-date the decisions in *Kaiser Aluminum* effectively eliminate the so-called majority approach from consideration.

The Supreme Court's decision in *Truck Insurance v. Kaiser Gypsum* makes clear that when a statute says that any "party in interest" has a right to appear and be heard, it means that any party in interest has a right to appear and be heard.[78] And the Third Circuit's decision in *FTX* makes it unmistakably clear that when the Bankruptcy Code directs that the "bankruptcy court shall" do something, it means that the bankruptcy court shall do it.[79]  This emphasis on the literal statutory words – words that also appear in § 502(b) of the Bankruptcy Code – accord with the approach set out in *C.P. Hall* and cannot be squared with the more policy focused approach adopted in *Kaiser*.

In brief, the question in *Truck Insurance* was whether the debtor's insurer had a right to object to confirmation of the debtor's plan under which the insurer would likely be obligated to pay the claims allowed under that plan.[80]  The insurer took the view that it was a party in interest and therefore, as § 1109(b) says, "may raise and may appear and be heard on any issue in a case under this chapter."  The Fourth Circuit rejected that view, finding that language in the plan that purported to ensure that the plan was "insurance neutral" vitiated the insurer's standing to raise other

---

[78] *Truck Ins.*, 602 U.S. at 277-278.

[79] *FTX*, 91 F.4th at 153.

[80] *Truck Ins.*, 602 U.S. at 268.

objections.   The Supreme Court reversed, explaining that the language "party in interest" is "capacious."[81]   The point of that language, the Court explained, was to promote "broad participation" in the reorganization process.[82]   "Drafters and early commentators hoped that an expansive definition of 'party in interest' in § 1109(b) would allow a broad range of individual and minority interests to intervene in Chapter 11 cases, and expressly warned that undue restrictions on who may be a party in interest might enable dominant interests to control the restructuring process."[83]

Use of the same phrase in § 502(b) – party in interest – can only be read to achieve the same purpose.   The Court accordingly does not see how the district court's rationale in *Kaiser Aluminum*, which essentially permitted an objecting creditor to be excluded from the claims allowance process, can be squared with Congress' express statement that any "party in interest" can object to the allowance of a claim.

Section 502(b) goes on to say that when a party in interest objects to the allowance of a claim, "the court … shall determine the amount of such claim."[84]   And as the Third Circuit said in *FTX*, construing the language in § 1104(c) stating that in certain circumstances, "the court shall order the appointment of an examiner," the

---

[81] *Id.* at 277.

[82] *Id.* at 280.

[83] *Id.* (internal citations and brackets omitted).

[84] 11 U.S.C. § 502(b).

"meaning of the word 'shall' is not ambiguous."[85]  It is "a word of command … that normally creates an obligation impervious to judicial discretion."[86]

For these reasons, the Court is quite convinced that it cannot follow the rationale of *Kaiser Aluminum* and confirm the proposed plan so long the plan's settlement mechanism falls anywhere within a broadly conceived range of reasonable settlements.  And while the Court inclines to think that cases like *Truck Insurance* and *FTX* strongly support the approach adopted in *C.P. Hall* and *CS Mining*, the Court is open to a middle-ground approach in the spirit of *DVR* that seeks to harmonize the right of any party in interest to object to the allowance of a claim with the practical concerns expressed by the courts in *Kaiser Aluminum* and *Mallinckrodt*.

Applying an approach modeled on *DVR*, however, would not involve affording the settlements the usual deference to a debtor's business judgment that would otherwise apply to a settlement under Rule 9019.  A trustee is undoubtedly entitled to that deference when it seeks to settle an estate cause of action.  But in the context of settling a claim to which another party in interest has objected, the analysis would need to involve a fairly searching analysis of the fairness of the proposed settlements.  Under such an approach, the factors that the Third Circuit set forth in *Martin* would

---

[85] *FTX*, 91 F.4th at 153.

[86] *Id.* (internal quotations and citations omitted).  *See also Gardner v. New Jersey*, 329 U.S. 565, 573 (1947) (when an objection to a proof of claim is filed, the bankruptcy court "is duty bound to pass on them").

of course be relevant.  But the broad deference to the debtor's business judgment that courts otherwise apply under Rule 9019 would not be applicable.

In either case, the analysis that the Court would apply would be informed by the legal conclusions it has reached with respect to the seven questions the parties presented on summary judgment.  The Court accordingly believes that that it would be best for the go-forward process to issue its summary judgment decision so the parties can see the target at which they must shoot.

That said, the Court wants to emphasize the great respect it has for the hard work of the parties in this case and the challenges they have overcome in proposing a plan that appears to have the support of most of the debtors' largest constituencies. The Court has a measure of sympathy for the pragmatic views expressed in decisions like *Kaiser Aluminum* that seek to facilitate the resolution of the bankruptcy case in the face of such a broad consensus.[87]

But even so, in light of decisions like *Truck Insurance* and *FTX*, the Court simply does not believe that an order confirming the proposed plan on the ground that the claim settlements fall somewhere within a broadly defined range of reasonableness would be consistent with controlling law.  Out of respect for the hard

---

[87] At the same time, it is also true that one way to reach consensus among 20 parties is for parties 1 through 19 to agree that they will mug the 20th and divide up that party's fair share among themselves.  In such a case, it is the Court's obligation to see through the parties' efforts to cast party 20 as a "holdout" who is the "sole obstacle" to a consensual resolution. The Court has certainly not formed any view on merits of the proposed settlement here.  Any such judgment will be based solely on the presentation of evidence at the confirmation hearing.

*In re Yellow Corporation, et al.,* No. 23-11069
March 31, 2025
Page 27 of 27

work of many parties, however, the Court believes it appropriate to give those parties

the opportunity to be heard before it issues its summary judgment decision.

A status conference in this case is set for April 7, 2025 at 10:00 a.m.  The Court

will not issue its summary judgment decision before that time.  But unless the Court

is persuaded that, notwithstanding the views expressed above, it would serve the

interests of the orderly administration of this bankruptcy case to further withhold

the opinion, it intends to issue it following that hearing.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge