**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME
A CERTAIN UNEXPIRED LEASE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (the "Motion"):

**Relief Requested**

1. The Debtors seek entry of an order (the "Order") pursuant to section 365(d)(4) of the Bankruptcy Code (as defined herein), substantially in the form attached hereto as **Exhibit A**: (a) authorizing the Debtors to assume a certain nonresidential real property agreement, set forth in Exhibit 1 to **Exhibit A** attached hereto, to the extent such agreement is subject to section 365 of the Bankruptcy Code (as defined herein); and (b) granting related relief. In support of this Motion, the Debtors respectfully state as follows:[2]

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"). Capitalized terms used but not immediately defined in this motion have the meanings ascribed to them later in this motion or in the First Day Declaration or the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and*

**Jurisdiction**

2.  The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory bases for the relief requested herein are sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 6006(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

5.  On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169]. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee")

---

*Assignments of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order"), as applicable.

2

appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee"). No trustee or examiner has been appointed in these chapter 11 cases.

6. On September 15, 2023, the Court entered the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Lease; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order").

7. Yellow Corporation or one of its Debtor affiliates (the "Tenant") is party to a prepetition lease for nonresidential real property with Freight Line Properties LLC (the "Lessor") regarding a terminal located at 2410 S 2700 W, Salt Lake City, UT 84119 (Y881) (the "Lease").

8. On October 26, 2023, the Debtors filed that certain *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated with the Non-Rolling Stock Assets* [Docket No. 968] (the "Cure Notice"), pursuant to which, among other things, the Debtors notified the Lessor that the Lease may be assumed.

9. On October 30, 2023, the Lessor filed the *Non-Rolling Stock Asset Cure Objection of Freight Line Properties, LLC* [Docket No. 990], asserting certain cure amounts related to the Lease.

10. On November 13, 2023, the Court entered the *Order, Pursuant to Section 365(d)(4) of the Bankruptcy Code, Extending Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* [Docket No. 1127] (the "Extension Order"). The Extension Order extended the date

3

by which the Debtors must assume their unexpired, nonresidential real property leases to avoid automatic rejection under section 365(d)(4) of the Bankruptcy Code (the "Section 365(d)(4) Deadline") through and including March 4, 2024.

11.  On February 21, 2024, the Lessor filed the *Objection of Freight Line Properties, LLC to Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Certain Unexpired Leases and (II) Granting Related Relief* [Docket No. 2273], further asserting certain cure amounts related to the Lease.

12.  On February 26, 2024, the Court entered the *Order Approving the Joint Stipulation By and Among the Debtors and Freight Line Properties, LLC, Extending the Deadline to Assume or Reject Nonresidential Real Property Leases Under Section 365(d)(4) of the Bankruptcy Code* [Docket No. 2384] which extended the Section 365(d)(4) Deadline with respect to the Lease to April 22, 2024.

13.  On March 22, 2024, the Court entered the *Order Approving the Second Joint Stipulation By and Among the Debtors and Freight Line Properties, LLC, Extending the Deadline to Assume or Reject Nonresidential Real Property Leases Under Section 365(d)(4) of the Bankruptcy Code* [Docket No. 2727] which extended the Section 365(d)(4) Deadline with respect to the Lease to July 22, 2024.

14.  On June 17, 2024, the Court entered the *Order Approving the Third Joint Stipulation By and Among the Debtors and Freight Line Properties, LLC, Extending the Deadline to Assume or Reject Nonresidential Real Property Leases Under Section 365(d)(4) of the Bankruptcy Code* [Docket No. 3694] which extended the Section 365(d)(4) Deadline with respect to the Lease to October 22, 2024.

15. On September 30, 2024, the Court *entered the Order Approving the Fourth Joint Stipulation By and Among the Debtors and Freight Line Properties, LLC Extending the Deadline to Assume or Reject a Certain Nonresidential Real Property Leases Under Section 365(d)(4) of the Bankruptcy Code* [Docket No. 4468] which extended the Section 365(d)(4) Deadline with respect to the Lease to January 22, 2025.

16. On January 23, 2025, the Court entered the *Order Approving the Fifth Joint Stipulation By and Among the Debtors and Freight Line Properties, LLC Extending the Deadline to Assume or Reject A Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* [Docket No. 5512] which extended the Section 365(d)(4) Deadline with respect to the Lease to March 31, 2025.

17. On February 12, 2025, the Lessor filed the *Objection and Joinder of Freight Line Properties, LLC to Assumption of Lease, Cure Amount, and Confirmation of Debtors' Plan* [Docket No. 5669], asserting, among other matters, certain cure amounts related to the Lease.

## The Lease

18. Prior to and since the Petition Date, the Debtors have conducted a robust marketing and sale effort of the Debtors' real properties, including the Debtors' leasehold interests, to capitalize on the value of their assets for the benefit of all stakeholders. The Debtors continue to garner significant interest in their properties, and in August 2024, the Debtors retained CBRE Inc. ("CBRE") to assist the Debtors, including the Debtors' investment banker, Ducera, as the Debtors' exclusive real estate broker for their then remaining forty-seven (47) owned properties and sixty-five (65) leased properties (as modified from time to time, the "Remaining Properties"). The sale process for the Remaining Properties, including the Lease, remains ongoing. On March 20, 2025, the Debtors recently filed the *Notice of Further Supplemental Dates and Deadlines Regarding*

5

*Continued Sale Process for Debtors' Remaining Properties, Including Bid Deadline, Auction, and Sale Hearing* [Docket No. 5917] (the "March Sale Process Notice"), establishing that each of the Sale Dates and Deadlines (as defined therein), including the Bid Deadline and the Auction (if any), would be set for dates and times to be determined.

19. The Debtors and their advisors, including Ducera and CBRE, have spent significant time marketing the Lease in order to determine if assuming it in advance of the Section 365(d)(4) Deadline (rather than rejecting it) will be value-maximizing to the estates. The Debtors, in consultation with their advisors and the Committee, believe that, by assuming the Lease, the Debtors will be able to successfully assign the Lease pursuant to a value-maximizing sale transaction. Indeed, the Debtors and their advisors are in active discussions with certain prospective assignment counterparties and expect to enter into an assignment transaction in the near term. Therefore, the Debtors seek to assume the Lease pursuant to this Motion, subsequent to which the Debtors will seek to enter into and consummate a value-maximizing assignment of the Lease for the benefit of all stakeholders.

## Basis for Relief

**I.  Assumption of the Lease Reflects a Sound Exercise of the Debtors' Reasonable Business Judgment.**

20. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume or reject an executory contract or unexpired lease is a matter within the debtor's "business judgment." *See NLRB. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd* 465 U.S. 513, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also In re*

*Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("As applied in the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction."). Under the business judgment standard, a court should approve a debtor's business decision unless the decision is the product of "bad faith, whim, or caprice." *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (citations omitted); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (noting that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

21. Assumption of the Lease is a critical step as part of the Debtors' ongoing efforts to maximize the value of their estates. Assumption of the Lease preserves the Debtors' ability to assign the Lease as part of a value-maximizing assignment, whereas conversely, rejection of the Lease will eliminate the possibility of such transaction. The Debtors' marketing efforts to date suggest to the Debtors and their advisors, in consultation with the Committee, that preserving the ability to assign the Lease (and ultimately assigning it) provides more value to the estates than rejection of the Lease in advance of the Section 365(d)(4) Deadline. Accordingly, the Debtors submit that the assumption of the Lease as set forth herein is beneficial to the Debtors' estates and reflects a sound exercise of the Debtors' business judgment.

**II.     Assumption of the Lease Complies with Section 365 of the Bankruptcy Code.**

22.     Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code: (a) that a debtor cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract; and (b) provide adequate assurance of future performance thereunder. *See* 11 U.S.C. § 365(b).

23.     Pursuant to section 365(b)(1)(A) of the Bankruptcy Code, the Debtors evaluated potential payments necessary to cure any applicable defaults under the Lease. Exhibit 1 to the Order identifies the Lease which the Debtors seek to assume and identifies the dollar amount that the Debtors assert is necessary to be paid to cure all defaults, if any, under the Lease based upon the Debtors' books and records and discussions with the Lease counterparty (the "Cure Amount"). The Lessor previously received proper notice of proposed Cure Amount and were given the opportunity to object. *See Certificate of Service* [Docket No. 1163]. As discussed above, the Lessor filed a written objection regarding the Cure Amount.

24.     The Debtors reconciled the Cure Amount with the Lessor and will, in assuming the Lease, promptly pay the Cure Amount identified on Exhibit 1 to the Order attached hereto. Further, the Lessor will be provided proper notice of this Motion and an opportunity to object.

25.     Accordingly, the Debtors submit that the statutory requirements of section 365(b)(1)(a) of the Bankruptcy Code are satisfied.

**III.    The Lessor Will Be Adequately Assured of Future Performance.**

26.     The Debtors submit that the second requirement of section 365(b)(1)(C) of the Bankruptcy Code—adequate assurance of future performance—will be satisfied with respect to the Lease. The phrase "adequate assurance of future performance" is to be "given a practical,

pragmatic construction determined by consideration of the facts of the proposed assumption." *In re Fleming Cos., Inc.*, 499 F.3d 300, 307 (3d Cir. 2007). Although no single solution will satisfy the threshold of "adequateness" in every case, the required assurance will fall considerably short of an absolute guarantee of performance. *See In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994).

27. As described in the *Declaration of Brian Whittman in Support of the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Assume a Certain Unexpired Lease and (II) Grantign Related Relief* (the "<u>Whittman Declaration</u>"), filed substantially contemporaneously herewith, the Debtors submit that their cash on hand is more than sufficient to provide adequate assurance of performance of their obligations under the Lease to the Lessor. The Debtors' marketing process has been tremendously successful to date and produced significant liquidity. The proceeds to date have generated sufficient cash to pay off all the Debtors' prepetition secured funded debt and postpetition debtor-in-possession financing, as well as to support the Debtors' comprehensive sale efforts. As described in the Whittman Declaration, the Debtors have approximately $585 million of cash or cash equivalents across their multiple bank accounts, and the Debtors' monthly monetary obligation under the Lease is approximately $50,000, on average, including approximately $35,000 in monthly rent. The Debtors' have significant financial wherewithal to continue to perform under the Lease, pending its expected near-term assignment.

28. Accordingly, the Debtors are able to provide adequate assurance of future performance under the Lease as contemplated by 365(b)(1)(C) of the Bankruptcy Code.

**<u>Reservation of Rights</u>**

29. Nothing contained in this Motion or any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or

deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. The Debtors reserve the right to: (h) amend <u>Exhibit 1</u> to **Exhibit A** at any time prior to the hearing; (i) adjourn the determination with regard to the Lease at any time prior to the Court's hearing to consider the relief requested by this Motion; and (j) seek authority to reject any of the Lease prior to entry of an order of the Court approving assumption of the Lease.

### Notice

30. The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Lessor; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>"). In light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

31. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to assume the Lease and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  March 31, 2025
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | **KIRKLAND & ELLIS LLP** |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | 300 North LaSalle |
| 919 North Market Street, 17th Floor | Chicago, Illinois 60654 |
| P.O. Box 8705 | Telephone:    (312) 862-2000 |
| Wilmington, Delaware 19801 | Facsimile:     (312) 862-2200 |
| Telephone:    (302) 652-4100 | Email:            patrick.nash@kirkland.com |
| Facsimile:     (302) 652-4400 | david.seligman@kirkland.com |
| Email:            ljones@pszjlaw.com | david.seligman@kirkland.com |
| tcairns@pszjlaw.com | |
| pkeane@pszjlaw.com |   -and- |
| ecorma@pszjlaw.com | |
| | |
| *Co-Counsel for the Debtors and Debtors in Possession* | Allyson B. Smith (admitted *pro hac vice*) |
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone:    (212) 446-4800 |
| | Facsimile:     (212) 446-4900 |
| | Email:            allyson.smith@kirkland.com |
| | |
| | *Co-Counsel for the Debtors and Debtors in Possession* |