**<u>Exhibit A</u>**

**Proposed Supplemental Disclosure Statement Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re:  Docket No. 5024** |

**SUPPLEMENTAL ORDER (I) APPROVING THE
ADEQUACY OF THE THIRD AMENDED DISCLOSURE STATEMENT,
(II) APPROVING SUPPLEMENTAL SOLICITATION AND VOTING
PROCEDURES, (III) APPROVING REVISED FORMS OF BALLOTS AND
NOTICES IN CONNECTION THEREWITH, (IV) APPROVING CERTAIN
DATES WITH RESPECT THERETO AND (V) GRANTING RELATED RELIEF**

Upon the *Certification of Counsel* (the "<u>Certification of Counsel</u>") of the above-captioned

debtors and debtors in possession (collectively, the "<u>Debtors</u>") and the Official Committee of

Unsecured Creditors (the "<u>Committee</u>" and, together with the Debtors, the "<u>Plan Proponents</u>")

with respect to entry of an order (this "<u>Supplemental Order</u>") (a) approving the adequacy of the

Third Amended Disclosure Statement[2]; (b) approving the Supplemental Solicitation and Voting

Procedures; (c) approving the forms of Revised Ballots, Confirmation Hearing Notice, and other

notices in connection therewith; (d) approving certain dates with respect thereto; and (e) granting

related relief; and the Bankruptcy Court having entered the *Order Approving (I) the Adequacy of*

*the Disclosure Statement, (II) the Solicitation and Voting Procedures (III) the Form of Ballot and*

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors'
       claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal
       place of business and the Debtors' service address in these Chapter 11 Cases is: 11500 Outlook Street, Suite 400,
       Overland Park, Kansas 66211.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them elsewhere in this
       Supplemental Order, the Third Amended Plan, or the Disclosure Statement Order (as defined herein), as
       applicable.

*Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 5024] (the "Disclosure Statement Order") with respect to the *Second Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4974] (the "Second Amended Plan"); and the Plan Proponents having filed the *Third Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 5995] (as may be amended, supplemented or modified from time to time, the "Third Amended Plan") and the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 5996] (as may be amended, supplemented or modified from time to time, the "Third Amended Disclosure Statement"); and the district court having jurisdiction under 28 U.S.C. § 1334, which was referred to this Bankruptcy Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Bankruptcy Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Bankruptcy Court having found that this Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution; and this Bankruptcy Court having found that venue of this proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Bankruptcy Court having found that the relief requested by the Certification of Counsel is in the best interests of the Debtors' Estates, their creditors, and other parties in interest; and this Bankruptcy Court having reviewed the Certification of Counsel; and this Bankruptcy Court having found that the Plan Proponents' notice of the Supplemental Order and opportunity for a hearing with respect thereto were

appropriate and no other notice need be provided; and this Bankruptcy Court having determined that just cause exists for the relief granted herein; and upon all of the proceedings had before this Bankruptcy Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

## I.    Approval of the Third Amended Disclosure Statement.

1.    The Third Amended Disclosure Statement (including all applicable exhibits thereto) is hereby approved as providing Holders of Claims entitled to vote on the Third Amended Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Third Amended Plan in accordance with sections 105 and section 1125(a)(1) of the Bankruptcy Code and Bankruptcy Rule 3017.

2.    The Third Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims, Holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article IX of the Third Amended Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

## II.    Approval of Supplemental Solicitation and Voting Procedures.

3.    The Plan Proponents are authorized to solicit, receive and tabulate votes, and the Claims and Noticing Agent is directed to take these actions on behalf of the Plan Proponents, to accept or reject the Third Amended Plan in accordance with the Solicitation and Voting Procedures, as modified by this Supplemental Order (the "Supplemental Solicitation and Voting Procedures"), which are hereby approved in their entirety and comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; *provided* that, for the avoidance of doubt, the Supplemental Solicitation and Voting Procedures herein are approved solely for the purposes of solicitation of votes to accept or reject the Third Amended Plan and related noticing processes.

4.     The Solicitation and Voting Procedures approved pursuant to the Disclosure Statement Order, and not otherwise modified by this Supplemental Order, remain in full force and effect for purposes of solicitation and tabulating votes in connection with the Third Amended Plan.

**A.     Approval of the Supplemental Solicitation and Voting Procedures with respect to Holders of Class 5A Joint and Several General Unsecured Claims.**

5.     The Debtors shall serve, or cause to be served, a supplemental solicitation package to Holders of Class 5A Joint and Several General Unsecured Claims, which shall consist of (i) this Supplemental Order, (ii) the Third Amended Disclosure Statement, (iii) the Third Amended Plan, (iv) the Solicitation and Voting Procedures, (v) the Supplemental Cover Letter, (vi) the Revised Class 5A Ballot, and (vii) the Updated Confirmation Hearing Notice (as defined herein) (collectively, the "Class 5A Supplemental Solicitation Package" ).  In addition, the Class 5A Supplemental Solicitation Package shall be made available on the Debtors' case website at https://dm.epiq11.com/YellowCorporation, provided that any party that would prefer paper format may contact the Claims and Noticing Agent by: (a) calling (866)-641-1076 (domestic) or +1 (503) 461-4134 (international); (b) writing to Yellow Corporation, et al., c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005; or (c) emailing YellowCorporationInfo@epiqglobal.com and referencing "Yellow" in the subject line.

6.     The Debtors shall distribute, or cause to be distributed, the Class 5A Supplemental Solicitation Package to all Holders of Class 5A Joint and Several General Unsecured Claims who are entitled to vote to accept or reject the Third Amended Plan as of the Voting Record Date within seven (7) business days following entry of this Supplemental Order (the "Supplemental Solicitation Mailing Deadline").   To the extent that such distribution is not made by the Supplemental Solicitation Mailing Deadline, the Debtors shall distribute the Class 5A Supplemental Solicitation Packages immediately thereafter.

7.      Holders of Class 5A Joint and Several General Unsecured Claims must submit a Revised Class 5A Ballot prior to the Voting Deadline in order to vote to accept or reject the Third Amended Plan.  Any Class 5 Ballot previously submitted by a Holder of a Class 5A Joint and Several General Unsecured Claim in connection with the Second Amended Plan, and any election to opt-in to the third-party release contained in the Second Amended Plan, will not be counted or tabulated in connection with the Third Amended Plan.

8.      Holders of Class 5A Joint and Several General Unsecured Claims who are Electing J&S Holders (including any Electing J&S Holders added to the Electing J&S Holder Schedule subsequent to the date hereof) shall be entitled to vote their Class 5A Claims in the Allowed Claim amount set forth on the Electing J&S Holder Schedule (as such Electing J&S Holder Schedule may be revised from time to time).  The Allowed Claim amount set forth on the Electing J&S Holder Schedule shall replace and supersede the Claim amount set forth in any stipulation or order temporarily allowing such Claim for voting purposes pursuant to Bankruptcy Rule 3018.

**B.      Approval of the Supplemental Solicitation and Voting Procedures with respect to Holders of Class 5B Non-Joint and Several General Unsecured Claims.**

9.      The Debtors shall serve, or cause to be served, a supplemental solicitation package to Holders of Class 5B Non-Joint and Several General Unsecured Claims, which shall consist of (i) Supplemental Cover Letter, (ii) the Revised Class 5B Ballot, and (iii) the Updated Confirmation Hearing Notice  (collectively, the "Class 5B Supplemental Solicitation Package" and together with the Class 5A Supplemental Solicitation Package, the "Supplemental Solicitation Packages"), *provided, however,* copies of (i) this Supplemental Order, (ii) the Third Amended Disclosure Statement, (iii) the Third Amended Plan, (iv) the Solicitation and Voting Procedures, (v) the Updated Confirmation Hearing Notice (vi) the Supplemental Cover Letter, and (vii) the Revised Class   5B   Ballot   shall   be   made   available   on   the   Debtors'   case   website

https://dm.epiq11.com/YellowCorporation.  In addition, any party that would prefer paper format of the foregoing documents may contact the Claims and Noticing Agent and request paper copies by: (a) calling (866)-641-1076 (domestic) or +1 (503) 461-4134 (international); (b) writing to Yellow Corporation, et al., c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005; or (c) emailing YellowCorporationInfo@epiqglobal.com and referencing "Yellow" in the subject line.

10.     Holders of Class 5B Non-Joint and Several General Unsecured Claims may submit either a Class 5 Ballot (previously distributed in connection with the Second Amended Plan) or a Revised Class 5B Ballot to vote to accept or reject the Third Amended Plan.  Any valid Class 5 Ballot timely submitted by a Holder of a Class 5B Non-Joint and Several General Unsecured Claim in connection with the Second Amended Plan will be tabulated and counted as a vote in connection with the Third Amended Plan.  For the avoidance of doubt, (i) any election to opt-in to the third-party release in the Second Amended Plan on a Class 5 Ballot shall constitute a valid and binding election to opt-in to the Third-Party Release in the Third Amended Plan and/or (ii) any Convenience Claim Election made on a Class 5 Ballot in connection with the Second Amended Plan will be deemed a Convenience Claim Election for the Third Amended Plan.

11.     Any Holder of a Class 5B Non-Joint and Several General Unsecured Claim that has already submitted a Class 5 Ballot in connection with the Second Amended Plan and desires to change their vote or elections for the Third Amended Plan may submit a new Class 5 Ballot or a Revised Class 5B Ballot.  The latest dated, properly submitted valid Ballot timely received prior to the Voting Deadline will be deemed to reflect the Holder's intent and will supersede any prior received Ballot.

12. Notwithstanding the Voting Record Date, (a) Holders of Claims that are entitled to vote on the Third Amended Plan and whose Claim(s) have been modified pursuant to an order entered by the Bankruptcy Court as of the Solicitation Mailing Deadline will receive Supplemental Solicitation Packages reflecting such Claim(s) in the amount(s) and against such applicable Debtor(s) as set forth in such order of the Bankruptcy Court and (b) to the extent that a Claim has been expunged or withdrawn from the Claims Register as of the Solicitation Mailing Deadline, the Holder of such expunged or withdrawn Claim will not receive a Supplemental Solicitation Package.

13. Except as expressly provided herein, the Debtors shall not be required to distribute Supplemental Solicitation Packages or other solicitation materials to Holders of Class 5B Non-Joint and Several General Unsecured Claims.

## II. Approval of Certain Dates and Deadlines with Respect to the Third Amended Plan and Disclosure Statement.

14. The following Confirmation Timeline is hereby established (subject to modification as necessary) with respect to the solicitation of votes to accept or reject the Third Amended Plan, voting on the Third Amended Plan, and confirming the Third Amended Plan:

| Event | Date | Description |
|---|---|---|
| Voting Record Date | Thursday, November 14, 2024 | The date to determine (i) which Holders of Claims in Classes 5A and 5B (together, the "Voting Classes") are entitled to vote to accept or reject the Third Amended Plan and (ii) whether Claims have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee or transferee, as applicable, can vote to accept or reject the Third Amended Plan as the Holder of a Claim. (the "Voting Record Date"). |

| Event | Date | Description |
|---|---|---|
| Supplemental Solicitation Mailing Deadline | Seven (7) business days following entry of this Supplemental Order | The deadline by which the Claims and Noticing Agent must distribute the Class 5A Supplemental Solicitation Packages, including the Supplemental Cover Letter and Revised Class 5A Ballots, to Holders of Class 5A Joint and Several General Unsecured Claims entitled to vote to accept or reject the Third Amended Plan. |
| Plan Supplement Filing Deadline | Friday, May 2, 2025 | The date by which the Plan Proponents shall file the Plan Supplement (the "Plan Supplement Filing Deadline"). |
| Voting Deadline | Friday, May 9, 2025, at 4:00 p.m., prevailing Eastern Time | The deadline by which all Ballots and Opt-In Forms must be properly executed, completed, submitted and **actually received** by the Claims and Noticing Agent. |
| Plan Objection Deadline | Friday, May 9, 2025, at 4:00 p.m., prevailing Eastern Time | The deadline by which parties in interest may file objections to confirmation of the Third Amended Plan (the "Plan Objection Deadline"). |
| Deadline to File Voting Report | Monday, May 12, 2025 | The date by which the Claims and Noticing Agent shall file the report tabulating the voting on the Third Amended Plan (the "Voting Report") with the Bankruptcy Court. |
| Confirmation Brief and Plan Objection Reply Deadline | Wednesday, May 14, 2025, at 4:00 p.m., prevailing Eastern Time | The deadline by which the Plan Proponents shall file their brief in support of confirmation of the Third Amended Plan and reply to objections to confirmation of the Third Amended Plan. |
| Confirmation Hearing Date | May 19, 2025, or such other date as may be scheduled | The date of the Confirmation Hearing (the "Confirmation Hearing Date"). |

15.     The Plan Proponents may adjourn the Confirmation Hearing Date and any related dates and deadlines from time to time, without notice to the parties in interest other than announcement of such adjournment in open court and/or filing a notice of adjournment with the Bankruptcy Court and serving such notice on the 2002 List.

**III.    Approval of the Form of Revised Ballots and Distribution of the Supplemental Solicitation Packages.**

16.    The Class 5A Supplemental Solicitation Packages shall include the following, the form of each of which is hereby approved:

    a.    a copy of the Supplemental Cover Letter, substantially in the form attached hereto as **<u>Exhibit 1</u>**;

    a.    the form of Revised Class 5A Ballot, substantially in the form attached hereto as **<u>Exhibit 2A</u>**, together with detailed voting instructions and instructions on how to submit the Revised Class 5A Ballot;

    b.    the Third Amended Disclosure Statement (and exhibits thereto, including the Third Amended Plan);

    c.    this Supplemental Order (without exhibits);

    d.    the Solicitation and Voting Procedures;

    e.    the Updated Confirmation Hearing Notice, substantially in the form attached hereto as **<u>Exhibit 3</u>**; and

    f.    a pre-addressed, postage pre-paid reply envelope.[3]

17.    The Class 5B Supplemental Solicitation Packages shall include the following, the form of each of which is hereby approved:

    a.    a copy of the Supplemental Cover Letter, substantially in the form attached hereto as **<u>Exhibit 1</u>**;

    b.    the form of Revised Class 5B Ballot, substantially in the form attached hereto as **<u>Exhibit 2B</u>**, together with detailed voting instructions and instructions on how to submit the Revised Class 5B Ballot;

    c.    the Updated Confirmation Hearing Notice, substantially in the form attached hereto as **<u>Exhibit 3</u>**; and

    d.    a pre-addressed, postage pre-paid reply envelope.[4]

---

[3]    The Claims and Noticing Agent will provide pre-addressed, postage pre-paid reply envelopes only to those Holders who receive a Ballot from the Claims and Noticing Agent by first-class mail.

[4]    The Claims and Noticing Agent will provide pre-addressed, postage pre-paid reply envelopes only to those Holders who receive a Ballot from the Claims and Noticing Agent by first-class mail.

18.     The Claims and Noticing Agent shall distribute the Supplemental Solicitation Packages to all Holders of Class 5A Joint and Several General Unsecured Claims and Class 5B Non-Joint and Several General Unsecured Claims entitled to vote on the Third Amended Plan on or before the Supplemental Solicitation Mailing Deadline.  Such service shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

19.     The Claims and Noticing Agent is authorized and directed to cause the Supplemental Solicitation Packages to be delivered via first-class mail and/or distributed in electronic format via e-mail, hyperlink, and/or flash drive, as applicable, to Holders of Class 5A Joint and Several General Unsecured Claims and Class 5B Non-Joint and Several General Unsecured Claims.  Any party that receives materials in electronic format, but would prefer to receive materials in paper format, may contact the Claims and Noticing Agent and request paper copies of the materials previously received in electronic format (to be provided at the Debtors' expense).  For the avoidance of doubt, Holders of both Class 5A Joint and Several General Unsecured Claims and Class 5B Non-Joint and Several General Unsecured Claims may request to receive materials in paper format by contacting the Claims and Noticing Agent (to be provided at the Debtors' expense).

20.     The revised ballots, substantially in the forms attached hereto as **Exhibit 2A** (the "Revised Class 5A Ballot") and **Exhibit 2B** (the "Revised Class 5B Ballot" and, together with the Revised Class 5A Ballot, the "Revised Ballots"), are hereby approved and comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  As further set forth herein, the Claims and Noticing Agent is authorized, but not directed, to cause the Revised Ballots to be delivered or made available to those parties outlined below:

| Class | Status | Treatment |
|-------|--------|-----------|
| Class 5A | Impaired; Entitled to Vote | Holders of Claims in Class 5A are Impaired under the Third Amended Plan.  Holders of Claims in Class 5A are entitled to vote to accept or reject the Third Amended Plan. |
| Class 5B | Impaired; Entitled to Vote | Holders of Claims in Class 5B are Impaired under the Third Amended Plan.  Holders of Claims in Class 5B are entitled to vote to accept or reject the Third Amended Plan. |

21. The Revised Class 5A Ballot, attached hereto in the form of **Exhibit 2A**, contains an option for Holders of Class 5A Joint and Several General Unsecured Claims to opt-in to the Plan Settlement and be designated an Electing J&S Holder.  Such election will only be applicable to and accepted for eligible Holders of Class 5A Joint and Several General Unsecured Claims who check the box under the Optional Plan Settlement Election to opt-in to the Plan Settlement. Holders of Class 5A Joint and Several Claims who check the box under the Optional Plan Settlement Election irrevocably agree to the Plan Settlement and thereby agree to allocate their Pro Rata share of the Settlement Consideration to Holders of Non-Joint and Several General Unsecured Claims.  Holders of Class 5A Joint and Several General Unsecured Claims who check the box under the Optional Plan Settlement Election must also accept the Third Amended Plan.

22. The Revised Class 5B Ballot, attached hereto in the form of **Exhibit 2B**, contains a Convenience Claim Election.  Such election will only be applicable to and accepted for eligible Holders of Class 5B Non-Joint and Several General Unsecured Claims who check the box under the Convenience Claim Election to select Class 4B Convenience Class Claim treatment.  Holders of Class 5B Non-Joint and Several Unsecured Claims who check the box under the Convenience Claim Election will not be entitled to additional distributions, other than the distributions set forth in the Third Amended Plan for Holders of Allowed Class 4B Convenience Class Claims and may not revoke their Convenience Claim Election.  Holders of Class 5B Non-Joint and Several General

Unsecured Claims who check the box under the Convenience Claim Election must also accept the Third Amended Plan, otherwise such Convenience Claim Election will be invalid. For the avoidance of doubt, any election made with respect to Convenience Class Claim treatment pursuant to a Class 5 Ballot submitted in connection with the Second Amended Plan shall remain valid and binding on such Holder with respect to their Class 5B Non-Joint and Several General Unsecured Claim under the Third Amended Plan.

23.    The form of letter (the "Supplemental Cover Letter"), attached hereto as **Exhibit 1**, describing the Third Amended Plan, the Supplemental Voting and Solicitation Procedures and the contents of the Class 5A Supplemental Solicitation Packages and recommending that all Holders of Claims in Class 5A and Class 5B vote in favor of the Third Amended Plan, is approved.

24.    The form of notice (the "Updated Confirmation Hearing Notice"), attached hereto as **Exhibit 3**, is approved. The Debtors shall file and serve the Updated Confirmation Hearing Notice within one business day following entry of this Order upon the Debtors' entire creditor matrix and all Holders of Interests of record.

**B.    Non-Substantive Modifications.**

25.    The Plan Proponents are authorized to make non-substantive changes to the Third Amended Plan, Third Amended Disclosure Statement, Supplemental Solicitation and Voting Procedures, Revised Ballots, Supplemental Cover Letter and any related documents without further order of the Bankruptcy Court, including formatting changes, changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Third Amended Disclosure Statement, the Third Amended Plan, and any other materials (including any appendices thereto) in the Class 5A Supplemental Solicitation Packages before distribution; *provided*, *however*, the U.S. Trustee shall be provided notice of any non-typographical and grammatical changes. Subject to the foregoing, the Claims and Noticing Agent is authorized and

directed to solicit, receive, and tabulate votes to accept or reject the Third Amended Plan in accordance with the Disclosure Statement Order and this Supplemental Order, without further order of the Bankruptcy Court.

## II.   Miscellaneous.

26.   The Disclosure Statement Order remains in full force and effect, except to the extent modified by this Supplemental Order.

27.   The Plan Proponents' rights are reserved to modify the Third Amended Plan or withdraw the Third Amended Plan at any time before the Confirmation Date without further order of the Bankruptcy Court in accordance with Article XI of the Third Amended Plan.

28.   Nothing in this Supplemental Order shall be construed as a waiver of the right of the Plan Proponents or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

29.   All time periods set forth in this Supplemental Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.   Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Supplemental Order are immediately effective and enforceable upon its entry.

31.   The Plan Proponents and the Claims and Noticing Agent are authorized and directed to take all actions necessary to effectuate the relief granted in this Supplemental Order.

32.   This Bankruptcy Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Supplemental Order.

## __Exhibit 1__

**Supplemental Cover Letter**

*IN RE YELLOW CORPORATION,* ET AL.
**CASE NO. 23-11069 (CTG)**

---

**YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE THIRD AMENDED PLAN[1] (AS DEFINED HEREIN) PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND CAN DO SO BY PROPERLY EXECUTING AND SUBMITTING A BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO THAT IT IS RECEIVED BY THE DEBTORS' CLAIMS AND NOTICING AGENT BEFORE [MAY 9, 2025, AT 4:00 P.M.] (PREVAILING EASTERN TIME).**

**YOU SHOULD READ THIS LETTER CAREFULLY.**

---

[●], 2025

Via First-Class Mail / Email

**RE: Voting on the *Third Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 5995] (the "Third Amended Plan")**

Dear Holders of Claims in Class 5A and Class 5B entitled to vote to accept or reject the Third Amended Plan,

In November 2024, Yellow Corporation and certain of its affiliated debtors and debtors in possession (collectively, the "Debtors") received approval from the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") to solicit votes in connection with the Debtors' *Second Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5028] (the "Second Amended Plan"). In connection therewith, the Debtors previously distributed solicitation materials, including a Ballot pursuant to which Holders of Class 5 General Unsecured Claims were to vote to accept or reject the Second Amended Plan. The Official Committee of Unsecured Creditors (the "Committee") did not support the Second Amended Plan, and submitted a letter advising Holders of Class 5 Claims to vote to reject the Second Amended Plan on January 28, 2025. We write to inform you that the Second Amended Plan has now been replaced by the Third Amended Plan, which incorporates a series of settlements negotiated with and supported by the Committee (the "Plan Settlement") and is jointly proposed by the Debtors and the Committee **AND BOTH THE DEBTORS AND THE COMMITTEE URGE YOU TO VOTE TO ACCEPT THE THIRD AMENDED PLAN**. The Plan Settlement is described in more detail below.

Pursuant to the Third Amended Plan, the Claims that previously comprised Class 5 General Unsecured Claims have been bifurcated into Class 5A Joint and Several General Unsecured Claims and Class 5B Non-Joint and Several General Unsecured Claims. Holders of Class 5A Joint and Several General Unsecured Claims (the "J&S Holders") are entitled to assert their Allowed Claims at every Debtor, while Holders of Class 5B Non-Joint and Several General Unsecured Claims (the "Non-J&S Holders") are entitled to assert their Claims against less than all of the Debtors, and in most circumstances, against only a single Debtor.

**Based on the Plan Settlement, if the Third Amended Plan is confirmed and effectuated, Electing J&S Holders and Non-J&S Holders will receive the same percentage recovery on their Claims, which the Plan Proponents**

---

[1]     Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Third Amended Plan or the Disclosure Statement, as applicable.

**estimate to be between 12% and 16%.  Whereas, under the Second Amended Plan, Non-J&S Holders were estimated to receive only a 3% to 5% recovery on account of their Claims.[2]**

The Ballots to be used by Holders of Claims in each of Classes 5A and 5B to vote to accept or reject the Third Amended Plan reflect this new classification and incorporate settlement mechanics contemplated by the Third Amended Plan, as further described below and in the Disclosure Statement.  You are receiving this letter with the enclosed materials because you are a Holder of a Class 5A or Class 5B Claim and are therefore entitled to vote to accept or reject the Third Amended Plan.  **This letter explains important information regarding submitting your Ballot to vote on the Third Amended Plan and the treatment of any Ballot previously submitted in connection with the Second Amended Plan.**

### Overview of the Plan Settlement

For the past several weeks, the Debtors and the Committee (collectively, the "Plan Proponents") have been engaged in extensive and arms' length negotiations with holders of the vast  majority of the Debtors' largest General Unsecured Claims over the terms of a settlement structure that would resolve most of the disputes that remain outstanding in these cases through the implementation of a revised chapter 11 plan.  These negotiations have culminated in the Third Amended Plan, which incorporates the settlement of significant Claims against the Debtors and their Estates at a substantial discount to the originally asserted Claim amounts and provides for materially increased recoveries for Non-J&S Holders that do not have the ability to assert such Claims on a joint and several basis against each Debtor, as compared to the recoveries that J&S Holders would otherwise be entitled to receive in a non-consolidated, standard waterfall plan construct absent the settlements.

Specifically, the Plan Settlement contemplates that certain significant claimants (the "Electing J&S Holders"), who hold material joint and several pension-related Claims against each of the Debtors, will turn over a portion of the recovery to which they otherwise would be entitled to Non-J&S Holders, such that both Electing J&S Holders and Non-J&S Holders will receive the same recovery percentage on their Allowed Claims (notwithstanding that the Electing J&S Holders are entitled to greater recoveries on account of their Joint and Several General Unsecured Claims).  In exchange for their agreement to turn over a portion of their recovery, the Electing J&S Holders shall have their Claims Allowed in the amounts set forth on the Electing J&S Holder Schedule (or the J&S Holder Opt-In Schedule, to the extent applicable), many of which such amounts are materially less than the Claim amounts originally asserted by such Electing J&S Holders, and all pending disputes and objections to the Claims of the Electing J&S Holders shall be dismissed with prejudice, including any pending appeals.  Therefore, the Plan Settlement resolves significant litigation that would otherwise delay confirmation of a chapter 11 plan and distributions to unsecured creditors, as further described below.

In addition to settling significant Disputed Claims as noted above, the Third Amended Plan provides the Committee with the right to select the Liquidating Trustee, in consultation with the Debtors, and a Liquidating Trust Board of Managers comprised of five members, four of which shall be selected by the Committee and one of which shall be selected by the Debtors. Certain other large Claim Holders shall have the right to designate one non-voting board observer.

### Relevant Plan Settlement Background

A majority of the disputed issues to be settled by the Third Amended Plan, if confirmed, relate to objections that have been made to the allowance of the Claims asserted by substantially all of the multiemployer pension plans (the "MEPPs") for the Debtors' workforce.  These MEPPs have asserted Claims against all of the Debtors' Estates for billions of dollars associated with the Debtors' obligations to such MEPPs on account of the Debtors' withdrawal from the MEPPs and other Claims related to contracts that certain of the MEPPs had with the Debtors.  One of the primary issues in dispute in connection with the Debtors' objections to certain of the MEPPs' Claims related to whether these MEPPs (the "SFA MEPPs"), which had received or will receive, in the aggregate, billions of dollars of

---

[2]    The estimated 3% to 5% recoveries are a blended average for all of the Debtors, and the actual recovery for Non-J&S Holders pursuant to the Second Amended Plan would range from 0% to 10% depending on the Debtor at issue.

funding from the United States government on account of the underfunding of such MEPPs (the "Special Financial Assistance"), were required to reduce their Claims against the Debtors on account of such federal funding. As discussed in Article VII.H of the Disclosure Statement, the Bankruptcy Court determined that the SFA MEPPs were not required to reduce the amount of their Claims on account of the Special Financial Assistance. In addition, the Bankruptcy Court addressed several complex legal questions that bear on the proper calculation of SFA MEPP and Non-SFA MEPP Withdrawal Liability Claims, including whether the Withdrawal Liability Claims should be determined with respect to ERISA's 20-year cap on annual payments of Withdrawal Liability, the enforceability of contractual agreements to calculate Withdrawal Liability, and the applicable interest rate to calculate the Non-SFA MEPP's unfunded vested benefits. The Bankruptcy Court also heard cross-motions for summary judgement on the questions of whether Withdrawal Liability Claims are subject to acceleration, whether Withdrawal Liability Claims are subject to present value discounting, the applicable contribution rate to calculate the Debtors' annual Withdrawal Liability payment, and whether Withdrawal Liability Claims must be reduced or subordinated under applicable law. Certain of the Bankruptcy Court's decisions have been appealed and others could be subject to future appeals.

As a result of the Bankruptcy Court's prior rulings and as discussed in greater detail in the Disclosure Statement, the Debtors and the Committee estimate that, in the absence of the Plan Settlement, the SFA MEPPs would have Allowed Claims against the Debtors' Estates in the aggregate amount of approximately $3 billion, which would account for approximately 72% to 75% of the estimated Allowed General Unsecured Claims against the Debtors. Based on the prior Bankruptcy Court rulings, the Plan Proponents also estimate that, in the absence of the Plan Settlement, the Non-SFA MEPPs would have Allowed Claims against the Debtors' Estates in the aggregate amount of approximately $775 million, which would account for approximately 17% to 18% of the estimated Allowed General Unsecured Claims against the Debtors. Both the SFA MEPPs and the Non-SFA MEPPs, as well as a limited number of other Holders of General Unsecured Claims, are J&S Holders. Based on the estimated range of $476 million to $578 million in value in the Debtors' Estates that will be available for distribution to General Unsecured Creditors, absent settlements with these creditors or the successful appeal of the Bankruptcy Court's rulings, the J&S Holders are expected to recover approximately 11% to 14% on account of their Claims, whereas Non-J&S Holders would recover only 3% to 5% on account of their Allowed Claims (which is a blended average for all of the Debtors, and the actual recovery for Non-J&S Holders would range from 0% to 10% depending on the Debtor at issue).

The Debtors and one of the Debtors' significant creditors and equity holders had taken an interlocutory appeal of the Bankruptcy Court's SFA MEPP Ruling and such appeal currently is pending before the United States Court of Appeals for the Third Circuit (the "Third Circuit"). The Plan Settlement seeks to resolve the appeals before the Third Circuit. Absent implementation of the Plan Settlement, if the appeals at the Third Circuit had been successful and the SFA MEPPs were required to reduce their Claims on account of the Special Financial Assistance they received, the SFA MEPPs' Claims would have been materially reduced, in which case the projected recoveries for J&S Holders would have been estimated to be between 18% and 23%, while Non J&S Holders would have been projected to recover 5% to 8% on account of their Allowed Claims (which is again a blended average for all of the Debtors, and the actual recovery for Non-J&S Holders would range from 0% to 15% depending on the Debtor at issue). In the absence of the Plan Settlement, the outcome of the appeals would be uncertain. If the appeal scenario had been pursued, there are other relevant considerations that would have impacted recoveries to general unsecured creditors including, among others: (i) the likelihood of one or more parties appealing the Third Circuit's ruling, when ultimately issued; (ii) the timeline on which the Third Circuit would have ruled, which timeline could have extended to early 2026 and beyond, and the commensurate delay in distributions to unsecured creditors by months if not years depending on future appeals that the Plan Proponents believe would likely have been taken by one or more parties irrespective of the outcome at the Third Circuit; and (iii) the millions of dollars in incremental costs (including professional fees and expenses) that would be borne by the Debtors' Estates both by virtue of the continuation of these Chapter 11 Cases and the costs associated with the appeal process itself. Although the Plan Settlement, if approved, will moot the Third Circuit appeal as to the Electing J&S Holders, the Liquidating Trustee shall determine whether to pursue such appeal as to the Non-Electing J&S Holders, if any.

Given the uncertainty surrounding the appellate process and when distributions would have been made to creditors absent settlement of the issues in dispute, the Debtors and the Committee have proposed the Third Amended Plan with the objective of (i) resolving disputes involving the Debtors' most significant remaining Claims (including certain of the SFA MEPPs and other J&S Holders), (ii) maximizing general unsecured creditor recoveries, (iii) minimizing the continued accrual of professional fees and (iv) moving the Chapter 11 Cases toward an expeditious conclusion.

Based on the Plan Settlement, if the Third Amended Plan is confirmed and effectuated, Electing J&S Holders and Non-J&S Holders will receive the same percentage recovery on their Claims, which the Plan Proponents estimate to be between 12% and 16%. Given the uncertainty and delay associated with the appellate process and the fact that the Bankruptcy Court already has ruled in favor of the SFA MEPPs with respect to the primary issue in dispute related to the Special Financial Assistance received by the SFA MEPPs, the Plan Proponents believe that the Plan Settlement, which materially reduces the aggregate Allowed amount of the SFA MEPP Claims from approximately $3 billion to approximately $2.4 billion to $2.5 billion, is fair and reasonable and in the best interests of the Debtors, their Estates, and their unsecured creditors taken as a whole.

### Solicitation of and Voting on the Third Amended Plan

On [●], 2025, the Bankruptcy Court entered an order [Docket No. [●]] (the "Supplemental Disclosure Statement Order") with respect to the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 5996] (as may be amended, supplemented, or modified from time to time, the "Disclosure Statement"), including approving procedures for soliciting, receiving and tabulating votes for the Third Amended Plan.

The Bankruptcy Court has approved the following revised solicitation and voting procedures in connection with the Third Amended Plan:

- **Class 5A Holders:** If you are a Holder of a Class 5A Joint and Several General Unsecured Claim, you must submit a **new** Class 5A Ballot in order to vote to accept or reject the Third Amended Plan. Any Ballot previously submitted by a Holder of a Class 5A Joint and Several General Unsecured Claim in connection with the Second Amended Plan will **not** be counted or tabulated in connection with the Third Amended Plan.

  - Optional Plan Settlement Election: Each Holder of a Class 5A Joint and Several General Unsecured Claim (to the extent not already an Electing J&S Holder) has the option to opt-in to the Plan Settlement and become an Electing J&S Holder pursuant to which (i) such Holder's Joint and Several General Unsecured Claim would be Allowed in the amount set forth on the J&S Holder Opt-In Schedule in resolution of all disputes that have been or may be raised in respect of such Holder's Claim, inclusive of the appeal currently pending before the Third Circuit, in exchange for (ii) such Holder agreeing to turn over a portion of such Holder's recovery on its Joint and Several General Unsecured Claim to Holders of Non-Joint and Several General Unsecured Claims that would result in such Holders receiving the same percentage recovery on their Allowed General Unsecured Claims as if such Allowed Non-Joint and Several General Unsecured Claims had the same benefit of joint and several liability as the Electing J&S Holders.

  - Optional Third-Party Release Election: Holders of Class 5A Joint and Several General Unsecured Claims have the option to elect whether to grant the Third-Party Release. If you submit your Ballot and check the box for the Optional Third-Party Release Election, you will consent to the releases contained in Article IX.C of the Third Amended Plan to the fullest extent permitted by applicable law.

  - For the avoidance of doubt, the Plan Settlement Election and Third-Party Release Election are optional. A Holder of a Class 5A Joint and Several General Unsecured Claim will not be deemed to have made either election unless such Holder affirmatively opts-in to the Plan Settlement Election and/or the Third Party Release by checking the appropriate box on the Class 5A Ballot.

- **Class 5B Holders**: Based on the Plan Settlement, if the Third Amended Plan is confirmed and effectuated, Electing J&S Holders and Non-J&S Holders (Holders of Claims in Class 5B) will receive the same percentage recovery on their Claims, which the Plan Proponents estimate to be between 12% and 16%.

  - If you are a Holder of a Class 5B Non-Joint and Several General Unsecured Claim, you are permitted to vote to accept or reject the Third Amended Plan with either a new Class 5B Ballot or the prior

Class 5 Ballot issued in connection with the Second Amended Plan. If you have previously submitted a Class 5 Ballot in connection with the Second Amended Plan, such Ballot will be tabulated and counted as a Class 5B Ballot in connection with the Third Amended Plan. If you have not yet submitted a Class 5 Ballot issued in connection with the Second Amended Plan, you may vote to accept or reject the Third Amended Plan with such Ballot (to be tabulated and counted as a Class 5B Ballot), or you may request a new Ballot by contacting the Debtors' Claims and Noticing Agent via electronic mail at YellowCorporationInfo@epiqglobal.com.

- ▪ <u>Optional Convenience Claim Election</u>: Each Holder of a Class 5B Allowed Non-Joint and Several General Unsecured Claim has the option to treat their Allowed Non-Joint and Several General Unsecured Claim as a Class 4B Convenience Class Claim to be paid in full in Cash by agreeing to reduce its Allowed Non-Joint and Several General Unsecured Claim to $7,500; *provided, however*, that no Claims asserted by a current or former employee may be a Class 4B Convenience Class Claim. Holders making the Convenience Claim Election will have their Claim reduced to $7,500 and will be entitled to a Cash payment of their Allowed Class 4B Convenience Class Claim. If a Holder of a Class 5B Allowed Non-Joint and Several General Unsecured Claim makes or has previously made a Convenience Claim Election on a Class 5 Ballot in connection with the Second Amended Plan, such election will be deemed a Convenience Claim Election for the Third Amended Plan.

- ▪ <u>Optional Third-Party Release Election</u>: Holders of Class 5B Non-Joint and Several General Unsecured Claims have the option to elect whether to grant the Third-Party Release. If you submit your Ballot and check the box for the Optional Third-Party Release Election, you will consent to the releases contained in Article IX.C of the Third Amended Plan to the fullest extent permitted by applicable law. Holders of Class 5B Allowed Non-Joint and Several General Unsecured Claims who make or previously made the election to opt-in to the Third-Party Release for the Second Amended Plan on a Class 5 Ballot will be deemed to have made the election to opt-in to the Third-Party Release for the Third Amended Plan.

- ▪ <u>Last Ballot Counts</u>: Any Holder of a Class 5B Non-Joint and Several General Unsecured Claim that has already submitted a Class 5 Ballot in connection with the Second Amended Plan and desires to change their vote, Optional Convenience Class Election, or Optional Third-Party Release Election for the Third Amended Plan may submit a new Class 5 or Class 5B Ballot. The latest dated, properly submitted valid Ballot timely received prior to the Voting Deadline will be deemed to reflect the Holder's intent and will supersede any prior received Ballot.

The Debtors and the Committee believe that Confirmation of the Third Amended Plan will expedite and enhance distributions on account of Allowed Claims as quickly and efficiently as is practicable while avoiding the lengthy delay of continuing expensive, uncertain and time-consuming litigation with the Debtors' largest creditors. **ACCORDINGLY, THE DEBTORS AND THE COMMITTEE URGE ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE THIRD AMENDED PLAN TO VOTE TO ACCEPT THE THIRD AMENDED PLAN**.

> **YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE THIRD AMENDED PLAN. THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, which were approved by the Bankruptcy Court for distribution to the Voting Classes in connection with the solicitation of votes to accept the Third Amended Plan. **The Disclosure Statement (and all exhibits thereto, including the Third Amended Plan) are available free of charge on the Debtors' case website at https://dm.epiq11.com/YellowCorporation. If you**

**would like to receive paper copies of any or all of these documents, please reach out to the Claims and Noticing Agent (as defined below) using their below contact information.**

Holders of Claims in **Class 5A** will receive a Solicitation Package that consists of the following, as applicable:

1.  a new Ballot, together with detailed voting instructions on how to submit the Ballot, and a pre-addressed, postage prepaid return envelope[3];

2.  the Updated Confirmation Hearing Notice;

3.  this letter;

4.  the Disclosure Statement (and exhibits thereto, including the Third Amended Plan);

5.  a copy of the Solicitation and Voting Procedures;

6.  the Supplemental Disclosure Statement Order (without exhibits)); and

7.  any additional documents that the Bankruptcy Court has ordered to be made available to the Voting Classes.

Holders of Claims in **Class 5B** will receive a Solicitation Package that consists of the following, as applicable:

1.  a new Ballot, together with detailed voting instructions on how to submit the Ballot, and a pre-addressed, postage prepaid return envelope[4];

2.  the Updated Confirmation Hearing Notice;

3.  this letter; and

4.  any additional documents that the Bankruptcy Court has ordered to be made available to the Voting Classes.

---

[3]    The Claims and Noticing Agent will provide pre-addressed, postage pre-paid reply envelopes only to those Holders who receive a Ballot from the Claims and Noticing Agent by first-class mail.

[4]    The Claims and Noticing Agent will provide pre-addressed, postage pre-paid reply envelopes only to those Holders who receive a Ballot from the Claims and Noticing Agent by first-class mail.

---

**THE PLAN PROPONENTS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE THIRD AMENDED PLAN IN ACCORDANCE WITH THE INSTRUCTIONS IN YOUR BALLOT.**

**THE VOTING DEADLINE IS [MAY 9], 2025, AT [4:00 P.M.] (PREVAILING EASTERN TIME).**

---

[The materials in the Solicitation Package are intended to be self-explanatory.]  If you should have any questions, however, please feel free to contact Epiq Corporate Restructuring, LLC, the Claims and Noticing Agent retained by the Debtors in the Chapter 11 Cases (the "Claims and Noticing Agent"), by: (a) calling (866) 641-1076 (domestic) or +1 (503) 461-4134 (international); (b) writing to Yellow Corporation, et al., c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005; or (c) emailing YellowCorporationInfo@epiqglobal.com and referencing "Yellow" in the subject line.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER on the Bankruptcy Court's website at: https://ecf.deb.uscourts.gov.  Copies of certain orders, notices, and pleadings, as well as other information regarding these Chapter 11 Cases, are also available for inspection free of charge on the Debtors' case website, maintained by the Claims and Noticing Agent, at: https://dm.epiq11.com/YellowCorporation.

Please be advised that the Claims and Noticing Agent is authorized to answer questions about, and provide additional copies of, the Solicitation Packages, but may *not* advise you as to whether you should vote to accept or reject the Third Amended Plan or provide any legal advice.

Sincerely,

Yellow Corporation

DRAFT_____
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:   ljones@pszjlaw.com
           tcairns@pszjlaw.com
           pkeane@pszjlaw.com
           ecorma@pszjlaw.com

- and -

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza

The Official Committee of Unsecured Creditors
of Yellow Corporation, *et al.*

 DRAFT_____
Jennifer R. Hoover (DE No. 5111)
Kevin M. Capuzzi (DE No. 5462)
John C. Gentile (DE No. 6159)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone:  (302) 442-7010
Facsimile:  (302) 442-7012
E-mail:    jhoover@beneschlaw.com
           kcapuzzi@beneschlaw.com
           jgentile@beneschlaw.com

-and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Philip C. Dublin (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
Kevin Zuzolo (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000

Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email:   patrick.nash@kirkland.com
          david.seligman@kirkland.com

- and -

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
**LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in*
*Possession*

Facsimile: (212) 872-1002
Email:   pdublin@akingump.com
          mlahaie@akingump.com
          kzuzolo@akingump.com

*Co-Counsel to the Official Committee*
*of Unsecured Creditors of Yellow Corporation,* et al.

**<u>Exhibit 2A</u>**

**Revised Class 5A Ballot (Joint and Several General Unsecured Claims)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR VOTING ON THE THIRD AMENDED JOINT CHAPTER 11**
**PLAN OF YELLOW CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT**
**TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS**
**AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**CLASS 5A – JOINT AND SEVERAL GENERAL UNSECURED CLAIMS**

---

**PLEASE READ – IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT BY [MAY 9], 2025 AT [4:00 P.M.], PREVAILING EASTERN TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

---

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE THIRD AMENDED *JOINT CHAPTER 11 PLAN OF YELLOW CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS* [DOCKET NO. 5995] (AS MAY BE ALTERED, AMENDED, MODIFIED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN" AND THIS BALLOT, THE "BALLOT")[2] INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.

- THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "CLAIMS AND NOTICING AGENT") BEFORE **[4:00 P.M.], PREVAILING EASTERN TIME, ON [MAY 9], 2025**.

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

1

AND NOTICING AGENT Toll Free at (866) 641-1076 (DOMESTIC) OR +1 (503) 461-4134 (INTERNATIONAL) OR EMAIL YELLOWCORPORATIONINFO@EPIQGLOBAL.COM AND REFERENCE "YELLOW" IN THE SUBJECT LINE.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee") are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the Plan, attached as Exhibit A to the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 5996] (as may be amended, supplemented or modified from time to time, the "Disclosure Statement") from Holders of Claims in Class 5A Joint and Several General Unsecured Claims and Class 5B Non-Joint and Several General Unsecured Creditors (collectively, the "Voting Classes").

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims votes to accept the Plan.  The Plan can be confirmed by the Bankruptcy Court and thereby binding upon you if at least one of the Voting Classes votes to accept the Plan and the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code.  **For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

You are receiving this Ballot because you are the Holder of a Class 5A Joint and Several General Unsecured Claim as of **November 14, 2024** (the "Voting Record Date").  Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Ballot (the "Solicitation Package").  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications and elections with respect thereto.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.  Your Claim has been placed in Class 5A under the Plan.*

**THE VOTING DEADLINE IS [4:00 P.M.], PREVAILING EASTERN TIME, ON [MAY 9], 2025.**

<u>**Item 1**</u>.        **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 5A Joint and Several General Unsecured Claim in the following ***aggregate*** unpaid amount and such Claim is assertable against each of the Debtors:[3]

> $_____

<u>**Item 2**</u>.        **Vote on Plan.**

The Holder of the Class 5A Joint and Several General Unsecured Claim against each of the Debtors, the aggregate amount of which is set forth in Item 1, votes to (please check <u>one</u>):

| ☐   **ACCEPT** (vote FOR) the Plan | ☐   **REJECT** (vote AGAINST) the Plan |
|---|---|

<u>**Item 3**</u>.        **Optional Plan Settlement Election.**

The Plan provides each Holder of Class 5A Joint and Several General Unsecured Claims the option to participate in the Plan Settlement, pursuant to which (x) such Holder's Joint and Several General Unsecured Claim would be Allowed in the amount set forth on the J&S Holder Opt-In Schedule in resolution of all disputes that have been or may be raised in respect of such Holder's Claim and (y) such Holder would agree to turn over its Pro Rata share of the Settlement Consideration to Holders of Class 5B Non-Joint and Several General Unsecured Claims.  Holders of Class 5A Joint and Several General Unsecured Claims who agree to the Plan Settlement election will be identified as "Electing J&S Holders" in the Plan and should check the box below. Detailed information regarding the Plan Settlement is set forth Article IV.B of the Plan and Article VII.J of the Disclosure Statement.

**IF YOU MAKE THE PLAN SETTLEMENT ELECTION, YOUR CLAIM WILL BE CONSIDERED ALLOWED IN THE AMOUNT SET FORTH ON THE J&S HOLDER OPT-IN SCHEDULE AND YOUR PRO RATA SHARE OF SETTLEMENT CONSIDERATION WILL BE ALLOCATED TO HOLDERS OF ALLOWED CLASS 5B NON-JOINT AND SEVERAL GENERAL UNSECURED CLAIMS.**

---

3    For voting purposes only, subject to tabulation rules.

> **HOLDERS OF CLASS 5A JOINT AND SEVERAL GENERAL UNSECURED CLAIMS WHO CHECK THE BELOW BOX TO ACCEPT THE PLAN SETTLEMENT ELECTION, MUST ALSO ACCEPT THE PLAN BY CHECKING THE "ACCEPT" BOX IN ITEM 2 ABOVE.**

The Holder of the Class 5A Joint and Several General Unsecured Claims against each of the Debtors elects as follows:

> ☐    **ACCEPTS the Plan Settlement Election and <u>ACCEPTS (VOTES FOR) THE PLAN</u>**

<u>**Item 4**</u>.        **Important information regarding release, exculpation and injunction provisions under the Plan**[4]

Article IX.B of the Plan provides for a release by the Debtors (the "**<u>Debtor Release</u>**"):

> **Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, the Liquidating Trust, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Trust, or the Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, the Liquidating Trust, or other Entity, or that any Holder of any Claim against or Interest in a Debtor, the Liquidating Trust, or other Entity could have asserted on behalf of the Debtors or the Liquidating Trust, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Liquidating Trust (including the Debtors' and the Liquidating Trust's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Liquidating Trust and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Liquidating Trust, intercompany transactions between or among a Debtor, or an affiliate of a Debtor and another Debtor, or the Liquidating Trust, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry**

---

[4]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  Please read the Plan carefully before completing this Ballot.

**into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, the Financing Documents and any other Definitive Document or any Liquidation Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Documents, the Chapter 11 Cases, the Canadian Recognition Proceedings, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any Avoidance Actions (except for Avoidance Actions against the Debtors' current and former employees); (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (3) any matters retained by the Debtors and the Liquidating Trust pursuant to the Schedule of Retained Causes of Action.**

Article IX.C of the Plan provides for the following third-party release (the "**Third-Party Release**"):

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, effective as of the Effective Date, to the fullest extent permitted by applicable law, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Trust, or the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors or the Liquidating Trust (including the Debtors' and the Liquidating Trust's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Liquidating Trust and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Liquidating Trust, intercompany transactions, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, the Financing Documents, and any other Definitive Document or any Liquidation Transaction, or any contract, instrument, release, or other agreement or document created or entered into in**

**connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the Chapter 11 Cases, the Canadian Recognition Proceedings, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any Avoidance Actions (except for Avoidance Actions against the Debtors' current and former employees); (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.**

Definitions related to the Third-Party Release:

UNDER THE PLAN, "*AVOIDANCE ACTIONS*" MEANS ANY AND ALL ACTUAL OR POTENTIAL CLAIMS OR CAUSES OF ACTION TO AVOID A TRANSFER OF PROPERTY OR AN OBLIGATION INCURRED BY THE DEBTORS, INCLUDING AVOIDANCE, RECOVERY, OR SUBORDINATION ACTIONS OR REMEDIES THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR OTHER AUTHORIZED PARTIES IN INTEREST UNDER THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER SECTIONS 544, 547, 548, 549, 550, 551, 552, OR 553 OF THE BANKRUPTCY CODE, OR ANY SIMILAR FEDERAL, STATE OR COMMON LAW CAUSES OF ACTION, INCLUDING FRAUDULENT TRANSFER LAWS.

UNDER THE PLAN, "*DEBTOR RELEASE*" MEANS THE RELEASES GIVEN ON BEHALF OF THE DEBTORS AND THEIR ESTATES AS SET FORTH IN ARTICLE IX.B OF THE PLAN.

UNDER THE PLAN, "*RELATED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, INVESTMENT COMMITTEE MEMBERS, SPECIAL COMMITTEE MEMBERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, MANAGED ACCOUNTS OR FUNDS, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS OR MANAGERS, EMPLOYEES, AGENTS, TRUSTEES, ADVISORY BOARD MEMBERS,

FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS AND ADVISORS. FOR THE AVOIDANCE OF DOUBT, THE MEMBERS OF EACH GOVERNING BODY ARE RELATED PARTIES OF THE DEBTORS.

UNDER THE PLAN, "***RELEASED PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE, (C) ALL HOLDERS OF CLAIMS; (D) ALL HOLDERS OF INTERESTS; (E) THE COMMITTEE AND ITS CURRENT AND FORMER MEMBERS (INCLUDING ANY EX-OFFICIO MEMBER(S)); (F) THE ELECTING J&S HOLDERS; (G) EACH RELEASING PARTY; (H) THE INFORMATION OFFICER; (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (I); PROVIDED THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT ELECTS NOT TO OPT INTO THE RELEASES DESCRIBED IN ARTICLE IX OF THE PLAN.

UNDER THE PLAN, "***RELEASING PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE, (C) ALL HOLDERS OF CLAIMS WHO VOTE TO ACCEPT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (D) ALL HOLDERS OF CLAIMS WHO VOTE TO REJECT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (E) ALL HOLDERS OF CLAIMS WHO ARE DEEMED TO REJECT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (F) ALL HOLDERS OF CLAIMS WHO ARE PRESUMED TO ACCEPT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (G) ALL HOLDERS OF INTERESTS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (H) THE COMMITTEE AND ITS CURRENT AND FORMER MEMBERS (INCLUDING ANY EX OFFICIO MEMBER(S)); (I) THE ELECTING J&S HOLDERS; (J) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (K) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH AFFILIATE TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; AND (K) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (J) FOR WHICH SUCH AFFILIATE OR ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; PROVIDED THAT EACH SUCH ENTITY THAT ELECTS NOT TO OPT INTO THE RELEASES CONTAINED IN THE PLAN, SUCH THAT IT IS NOT A RELEASING PARTY IN ITS CAPACITY AS A HOLDER OF A CLAIM OR INTEREST SHALL NEVERTHELESS BE A RELEASING PARTY IN EACH OTHER CAPACITY APPLICABLE TO SUCH ENTITY.

**Optional Third-Party Release Election**

If you voted to accept or reject the Plan in Item 2 above or elected not to vote to accept or reject the Plan in Item 2 above, check this box if you want **to** grant the release contained in Article IX.C of the Plan. Not consenting to the releases contained in Article IX.C of the Plan is at your discretion. If you submit your Ballot with this box checked, you will consent to the releases

contained in Article IX.C of the Plan to the fullest extent permitted by applicable law.  If you voted to accept the Plan in Item 2 above, you will not be consenting to the releases contained in Article IX.C of the Plan unless you check this box.  If you do not submit this Ballot, you will not consent to the releases contained in Article IX.C of the Plan.

> **YOUR DECISION TO OPT IN OR NOT OPT IN TO THE THIRD-PARTY RELEASE WILL NOT IMPACT YOUR DISTRIBUTION UNDER THE PLAN.**

**The Holder of the Claim identified in Item 1 elects to:**

> ☐ **OPT IN TO the Third-Party Release**

Article IX.D of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

> Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each Exculpated Party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases or the Canadian Recognition Proceedings prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Liquidating Trust Agreement, the Third-Party Sale Transactions, the Plan, the Plan Supplement, any other Definitive Document, or any Liquidation Transaction, or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of the Third-Party Sale Transactions, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Definitions related to the Exculpation:

UNDER THE PLAN, "***EXCULPATED PARTIES***" MEANS, COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) EACH OF THE DEBTORS AND THEIR CURRENT AND FORMER DIRECTORS, MANAGERS, AND OFFICERS THAT SERVED IN SUCH CAPACITY BETWEEN THE PETITION DATE AND EFFECTIVE DATE; (B) THE COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS (INCLUDING ANY EX-OFFICIO MEMBER(S)); (C) THE LIQUIDATING TRUST, LIQUIDATING TRUSTEE AND LIQUIDATING TRUST BOARD OF MANAGERS; AND (D) WITH RESPECT TO THE ENTITIES IN CLAUSE (A) THROUGH (C), EACH OF THEIR RESPECTIVE CURRENT AND FORMER ATTORNEYS, FINANCIAL ADVISORS,

CONSULTANTS, OR OTHER PROFESSIONALS OR ADVISORS THAT SERVED IN SUCH CAPACITY BETWEEN THE PETITION DATE AND EFFECTIVE DATE.

Article IX.E of the Plan establishes an injunction (the "**Injunction**"):

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors and the Liquidating Trust, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order; (c) creating, perfecting or enforcing any encumbrance of any kind; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan. All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims or Causes of Action that (x) have been released in the Plan (the "Released Claims") or (y) that are subject to exculpation (the "Exculpated Claims"), shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iv) asserting any right of subrogation on account of or in connection with or with respect to the Released Claims and Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or (v) or commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Released Claims and Exculpated Claims; _provided_, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code**

**shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases; *provided, however,* the foregoing shall not prevent any party from pursuing a claim consistent with the ADR Procedures Order. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions on account of such Claim pursuant to the Plan shall be deemed to have consented to the injunction provisions set forth in this Article IX.E.**

<u>**Item 5**</u>.        **Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court, the Debtors and the Committee that:

(a)    as of the Voting Record Date, either: (i) the Entity is the Holder (or authorized signatory for a Holder) of the Claim set forth in Item 1;

(b)    the Entity (or in the case of an authorized signatory, the Holder) has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)    the Entity has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

(d)    no other Ballots with respect to the amount of the Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim, then any such earlier Ballots are hereby revoked;

(e)    the Entity understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the latest dated properly completed Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent; and

(f)    the Entity understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

Name of Holder: _____
(Print or Type)


Signature: _____

Name of Signatory: _____
(If other than the Holder)

Title: _____

Address: _____

_____

_____

Telephone
Number: _____

Email: _____

Date Completed: _____

---

**THE VOTING DEADLINE IS [4:00 P.M.], PREVAILING EASTERN TIME, ON [MAY 9], 2025.**

**THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY BY**
***ONLY ONE* OF THE FOLLOWING METHODS:**

**IN THE ENCLOSED REPLY ENVELOPE PROVIDED, OR VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY, OR BY ELECTRONIC ONLINE SUBMISSION.**

| **If by First Class Mail:** | **If by Hand Delivery or Overnight Mail:** |
|---|---|
| Yellow Corporation c/o Epiq Ballot Processing P.O. Box 4422 Beaverton, OR 97076-4422 | Yellow Corporation c/o Epiq Ballot Processing 10300 SW Allen Blvd. Beaverton, OR 97005 |

***OR***

**By electronic online submission:**
To submit your Ballot via the Claims and Noticing Agent's online portal, visit https://dm.epiq11.com/yellow and under the Case Actions section of the website, click on "E-Ballot" and follow the instructions to submit your Ballot.

**IMPORTANT NOTE: You will need the following E-Ballot ID# to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:** _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. **Holders who cast a Ballot using the Claims and Noticing Agent's online portal should NOT also submit a paper Ballot.**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE [MAY 9], 2025, AT [4:00 P.M.], PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS CLASS 5A BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS AND THE COMMITTEE.**

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

This Ballot contains voting options with respect to the Plan.

1.  To ensure that your vote is counted, you must: (a) complete the Ballot in accordance with these instructions; (b) indicate your decision either to accept or reject the Plan in Item 2 of the Ballot; and (c) sign and return the Ballot via (i) first-class mail to Yellow Corporation, et al., c/o Epiq Ballot Processing, P.O. Box 4422, Beaverton, OR 97076-4422 (ii) overnight courier or hand delivery to Yellow Corporation, et al., c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005 or (iii) the Claims and Noticing Agent's E-Ballot Portal at https://dm.epiq11.com/YellowCorporation, so that this Ballot is actually received by the Claims and Noticing Agent on or before the Voting Deadline, [4:00 P.M.], prevailing Eastern Time on **[May 9], 2025**.

2.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors and the Committee otherwise determine.

3.  To vote, you <u>MUST</u> deliver your completed Ballot (whether via first-class mail, hand delivery, or E-Ballot Portal to the Claims and Noticing Agent) so that it is

<u>ACTUALLY RECEIVED</u> by the Claims and Noticing Agent on or before the Voting Deadline by one of the methods described above.  **The Voting Deadline is [4:00 P.M.], prevailing Eastern Time on [May 9], 2025.**

4.     Any Ballot received by the Claims and Noticing Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors and the Committee determine otherwise.  No Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' and the Committee's prior written consent. Additionally, **the following Ballots will *not* be counted:**

(a)     any Ballot that partially rejects and partially accepts the Plan;

(b)     Ballots sent to the Debtors, the Debtors' agents (other than Claims and Noticing Agent), the Debtors' financial or legal advisors, the Committee, the Committee's financial or legal advisors or any other person;

(c)     Ballots sent by electronic mail or facsimile;

(d)     any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

(e)     any Ballot cast by an Entity that does not hold a Claim in Class 5A or Class 5B;

(f)     any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

(g)     any unsigned Ballot (for the avoidance of doubt, Ballots validly submitted through the Ballot Portal will be deemed signed);

(h)     any non-original Ballot (for the avoidance of doubt, Ballots validly submitted through the Ballot Portal will be deemed original); and/or

(i)     any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

5.     Delivery of a Ballot reflecting your vote to the Claims and Noticing Agent will be deemed to have occurred only when the Claims and Noticing Agent actually receives your paper Ballot or E-Ballot.  In all cases, you should allow sufficient time to assure timely delivery.

6.     If you deliver multiple Ballots to the Claims and Noticing Agent, <u>ONLY</u> the latest dated, properly submitted, valid Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

7.     You must vote all of your Claims in a Voting Class either to accept or reject the Plan and may not split your vote.  Further, if a Holder has multiple Claims in a Voting Class against a singular Debtor, the Debtors and the Committee may direct the Claims and Noticing Agent to aggregate those Claims for the purpose of counting votes.

8.      This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim, in the Debtors' Chapter 11 Cases.

9.      You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

10.     SIGN AND DATE your Ballot.[5]  In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot.  Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature or e-signature included on an E-Ballot will be deemed immediately legally valid and effective.

**PLEASE RETURN YOUR BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT:**

**U.S. TOLL FREE:  (866) 641-1076**
**INTERNATIONAL:  +1 (503) 461-4134**

**OR BY EMAILING YELLOWCORPORATIONINFO@EPIQGLOBAL.COM AND REFERENCING "YELLOW" IN THE SUBJECT LINE.**

---

**THE VOTING DEADLINE IS [4:00 P.M.], PREVAILING EASTERN TIME, ON [MAY 9], 2025.**

**THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

[5]    If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors, the Committee, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

**Exhibit 2B**

**Revised Class 5B Ballot (Non-Joint and Several General Unsecured Claims)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR VOTING ON THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF YELLOW CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**CLASS 5B – NON-JOINT AND SEVERAL GENERAL UNSECURED CLAIMS**

---

**PLEASE READ – IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT BY [MAY 9], 2025 AT [4:00 P.M.], PREVAILING EASTERN TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

---

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE *THIRD AMENDED JOINT CHAPTER 11 PLAN OF YELLOW CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS* [DOCKET NO. 5995] (AS MAY BE ALTERED, AMENDED, MODIFIED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN" AND THIS BALLOT, THE "BALLOT")[2] INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.

- THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "CLAIMS AND NOTICING AGENT") BEFORE **[4:00 P.M.], PREVAILING EASTERN TIME, ON [MAY 9], 2025**.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan and the Supplemental Order.

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS AND NOTICING AGENT Toll Free at (866) 641-1076 (DOMESTIC) OR +1 (503) 461-4134 (INTERNATIONAL) OR EMAIL YELLOWCORPORATIONINFO@EPIQGLOBAL.COM AND REFERENCE "YELLOW" IN THE SUBJECT LINE.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee") are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the Plan, attached as Exhibit A to the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 5996] (as may be amended, supplemented or modified from time to time, the "Disclosure Statement") from Holders of Claims in Class 5A Joint and Several General Unsecured Claims and Class 5B Non-Joint and Several General Unsecured Creditors (collectively, the "Voting Classes").

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims votes to accept the Plan. The Plan can be confirmed by the Bankruptcy Court and thereby binding upon you if at least one of the Voting Classes votes to accept the Plan and the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. **For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

You are receiving this Ballot because you are the Holder of a Class 5B Non-Joint and Several General Unsecured Claim as of **November 14, 2024** (the "Voting Record Date"). Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class. The Disclosure Statement, the Plan, the Solicitation and Voting Procedures, and the Supplemental Order are available free of charge on the Debtors' case website https://dm.epiq11.com/YellowCorporation. In addition, if you would prefer paper format of the foregoing documents, you may contact the Claims and Noticing Agent and request paper copies by: (a) calling (866)-641-1076 (domestic) or +1 (503) 461-4134 (international); (b) writing to Yellow Corporation, et al., c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005; or (c) emailing YellowCorporationInfo@epiqglobal.com and referencing "Yellow" in the subject line. This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications and elections with respect thereto. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.  Your Claim has been placed in Class 5B under the Plan.*

**THE VOTING DEADLINE IS [4:00 P.M.], PREVAILING EASTERN TIME, ON [MAY 9], 2025.**

<u>Item 1</u>.        **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 5B Non-Joint and Several General Unsecured Claim in the following ***aggregate*** unpaid amount against the below Debtor:[3]

| $_____ |
|---|
| Debtor: |
| |

<u>Item 2</u>.        **Vote on Plan.**

The Holder of the Class 5B Non-Joint and Several General Unsecured Claim against the above Debtor, the aggregate amount of which is set forth in Item 1, votes to (please check <u>one</u>):

| ☐   <u>**ACCEPT**</u> (vote FOR) the Plan | ☐   <u>**REJECT**</u> (vote AGAINST) the Plan |
|---|---|

<u>Item 3</u>.        **Important information regarding release, exculpation and injunction provisions under the Plan**[4]

Article IX.B of the Plan provides for a release by the Debtors (the "<u>**Debtor Release**</u>"):

**Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, the Liquidating Trust, and their Estates, in each case on behalf of themselves and their respective**

---

3    For voting purposes only, subject to tabulation rules.

4    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  Please read the Plan carefully before completing this Ballot.

successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Trust, or the Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, the Liquidating Trust, or other Entity, or that any Holder of any Claim against or Interest in a Debtor, the Liquidating Trust, or other Entity could have asserted on behalf of the Debtors or the Liquidating Trust, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Liquidating Trust (including the Debtors' and the Liquidating Trust's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Liquidating Trust and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Liquidating Trust, intercompany transactions between or among a Debtor, or an affiliate of a Debtor and another Debtor, or the Liquidating Trust, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, the Financing Documents and any other Definitive Document or any Liquidation Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, Plan Supplement, the Third-Party Sale Transactions, any other Definitive Documents, the Chapter 11 Cases, the Canadian Recognition Proceedings, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any Avoidance Actions (except for Avoidance Actions against the Debtors' current and former employees); (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (3) any matters retained by the Debtors and the Liquidating Trust pursuant to the Schedule of Retained Causes of Action.

Article IX.C of the Plan provides for the following third-party release (the "**Third-Party Release**"):

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, effective as of the Effective Date, to the fullest extent permitted by applicable law, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Trust, or the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors or the Liquidating Trust (including the Debtors' and the Liquidating Trust's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Liquidating Trust and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Liquidating Trust, intercompany transactions, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, the Financing Documents, and any other Definitive Document or any Liquidation Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the Chapter 11 Cases, the Canadian Recognition Proceedings, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any Avoidance Actions (except for Avoidance Actions against the Debtors' current and former employees); (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.**

Definitions related to the Third-Party Release:

UNDER THE PLAN, "***AVOIDANCE ACTIONS***" MEANS ANY AND ALL ACTUAL OR POTENTIAL CLAIMS OR CAUSES OF ACTION TO AVOID A TRANSFER OF PROPERTY OR AN OBLIGATION INCURRED BY THE DEBTORS, INCLUDING AVOIDANCE, RECOVERY, OR SUBORDINATION ACTIONS OR REMEDIES THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR OTHER AUTHORIZED PARTIES IN INTEREST UNDER THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER SECTIONS 544, 547, 548, 549, 550, 551, 552, OR 553 OF THE BANKRUPTCY CODE, OR ANY SIMILAR FEDERAL, STATE OR COMMON LAW CAUSES OF ACTION, INCLUDING FRAUDULENT TRANSFER LAWS.

UNDER THE PLAN, "***DEBTOR RELEASE***" MEANS THE RELEASES GIVEN ON BEHALF OF THE DEBTORS AND THEIR ESTATES AS SET FORTH IN ARTICLE IX.B OF THE PLAN.

UNDER THE PLAN, "***RELATED PARTY***" MEANS EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, INVESTMENT COMMITTEE MEMBERS, SPECIAL COMMITTEE MEMBERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, MANAGED ACCOUNTS OR FUNDS, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS OR MANAGERS, EMPLOYEES, AGENTS, TRUSTEES, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS AND ADVISORS. FOR THE AVOIDANCE OF DOUBT, THE MEMBERS OF EACH GOVERNING BODY ARE RELATED PARTIES OF THE DEBTORS.

UNDER THE PLAN, "***RELEASED PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE, (C) ALL HOLDERS OF CLAIMS; (D) ALL HOLDERS OF INTERESTS; (E) THE COMMITTEE AND ITS CURRENT AND FORMER MEMBERS (INCLUDING ANY *EX-OFFICIO* MEMBER(S)); (F) THE ELECTING J&S HOLDERS; (G) EACH RELEASING PARTY; (H) THE INFORMATION OFFICER; (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (I); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT ELECTS NOT TO OPT INTO THE RELEASES DESCRIBED IN ARTICLE IX OF THE PLAN.

UNDER THE PLAN, "***RELEASING PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE, (C) ALL HOLDERS OF CLAIMS WHO VOTE TO ACCEPT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (D) ALL HOLDERS OF CLAIMS WHO VOTE TO REJECT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (E) ALL HOLDERS OF CLAIMS

WHO ARE DEEMED TO REJECT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (F) ALL HOLDERS OF CLAIMS WHO ARE PRESUMED TO ACCEPT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (G) ALL HOLDERS OF INTERESTS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (H) THE COMMITTEE AND ITS CURRENT AND FORMER MEMBERS (INCLUDING ANY *EX OFFICIO* MEMBER(S)); (I) THE ELECTING J&S HOLDERS; (J) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (K) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH AFFILIATE TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; AND (K) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (J) FOR WHICH SUCH AFFILIATE OR ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; *PROVIDED* THAT EACH SUCH ENTITY THAT ELECTS NOT TO OPT INTO THE RELEASES CONTAINED IN THE PLAN, SUCH THAT IT IS NOT A RELEASING PARTY IN ITS CAPACITY AS A HOLDER OF A CLAIM OR INTEREST SHALL NEVERTHELESS BE A RELEASING PARTY IN EACH OTHER CAPACITY APPLICABLE TO SUCH ENTITY.

**Optional Third-Party Release Election**

If you voted to accept or reject the Plan in Item 2 above or elected not to vote to accept or reject the Plan in Item 2 above, check this box if you want **to** grant the release contained in Article IX.C of the Plan.  Not consenting to the releases contained in Article IX.C of the Plan is at your discretion.  If you submit your Ballot with this box checked, you will consent to the releases contained in Article IX.C of the Plan to the fullest extent permitted by applicable law.  If you voted to accept the Plan in Item 2 above, you will not be consenting to the releases contained in Article IX.C of the Plan unless you check this box.  If you do not submit this Ballot, you will not consent to the releases contained in Article IX.C of the Plan.

> **YOUR DECISION TO OPT IN OR NOT OPT IN TO THE THIRD-PARTY RELEASE WILL NOT IMPACT YOUR DISTRIBUTION UNDER THE PLAN.**

**The Holder of the Claim identified in Item 1 elects to:**

> ☐  **OPT IN TO the Third-Party Release**

Article IX.D of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each Exculpated Party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases or the Canadian Recognition Proceedings prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Liquidating Trust Agreement, the Third-Party Sale Transactions, the Plan,**

**the Plan Supplement, any other Definitive Document, or any Liquidation Transaction, or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of the Third-Party Sale Transactions, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

Definitions related to the Exculpation:

UNDER THE PLAN, "***EXCULPATED PARTY***" MEANS, COLLECTIVELY, AND IN EACH CASE SOLELY IN ITS CAPACITY AS SUCH: (A) EACH OF THE DEBTORS AND THEIR CURRENT AND FORMER DIRECTORS, MANAGERS, AND OFFICERS THAT SERVED IN SUCH CAPACITY BETWEEN THE PETITION DATE AND EFFECTIVE DATE; (B) THE COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS (INCLUDING ANY *EX-OFFICIO* MEMBER(S)); (C) THE LIQUIDATING TRUST, LIQUIDATING TRUSTEE AND LIQUIDATING TRUST BOARD OF MANAGERS; AND (D) WITH RESPECT TO THE ENTITIES IN CLAUSE (A) THROUGH (C), EACH OF THEIR RESPECTIVE CURRENT AND FORMER ATTORNEYS, FINANCIAL ADVISORS, CONSULTANTS, OR OTHER PROFESSIONALS OR ADVISORS THAT SERVED IN SUCH CAPACITY BETWEEN THE PETITION DATE AND EFFECTIVE DATE.

Article IX.E of the Plan establishes an injunction (the "**Injunction**"):

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors and the Liquidating Trust, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order; (c) creating, perfecting or enforcing any encumbrance of any kind; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities**

or against the property of such Entities unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.  All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims or Causes of Action that (x) have been released in the Plan (the "Released Claims") or (y) that are subject to exculpation (the "Exculpated Claims"), shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iv) asserting any right of subrogation on account of or in connection with or with respect to the Released Claims and Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or (v) or commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Released Claims and Exculpated Claims; *provided*, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases; *provided, however,* the foregoing shall not prevent any party from pursuing a claim consistent with the ADR Procedures Order. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions on account of such Claim pursuant to the Plan shall be deemed to have consented to the injunction provisions set forth in this Article IX.E.

**<u>Item 4</u>.**          **Optional Convenience Claim Election.**[5]

Holders of Class 5B Non-Joint and Several General Unsecured Claims may **<u>irrevocably</u>** elect to have their Claim treated as a Class 4B Convenience Class Claim and have such Allowed General Unsecured Claim reduced to $7,500 (the "<u>Convenience Claim Election</u>"); *provided*, *however*, that no Claims asserted by a current or former employee may be a Convenience Class Claim.

Holders of General Unsecured Claims who would like to make the **<u>optional</u>** Convenience Claim Election and elect to have their Class 5B Non-Joint and Several General Unsecured Claim treated as a Class 4B Convenience Class Claim, including reducing such claim to $7,500, should check the box below.

Holders of Class 4B Convenience Class Claims are entitled to a Cash payment (in one or more distributions) in full of their Allowed Class 4B Convenience Class Claim (the "<u>Convenience Claim Recovery</u>"). Holders of Class 5B Non-Joint and Several General Unsecured Claims who make the Convenience Claim Election will receive the Convenience Claim Recovery in full and final satisfaction of their Class 5B Non-Joint and Several General Unsecured Claim. Holders of Class 4B Allowed Convenience Claims and Holders making the Convenience Claim Election will not be entitled to additional payments other than the Convenience Claim Recovery.

**IF YOU MAKE THE CONVENIENCE CLAIM ELECTION, YOUR CLAIM WILL BE CONSIDERED A CLASS 4B CONVENIENCE CLASS CLAIM AND YOUR CLAIM SHALL NOT BE ENTITLED TO ANY OTHER DISTRIBUTION OTHER THAN THE CONVENIENCE CLAIM RECOVERY AMOUNT. YOU MAY NOT REVOKE YOUR CONVENIENCE CLAIM ELECTION.**

**FOR THE AVOIDANCE OF DOUBT, CURRENT OR FORMER EMPLOYEES ARE <u>NOT PERMITTED</u> TO CHECK THE BELOW BOX TO ACCEPT THE CONVENIENCE CLAIM ELECTION AND SHOULD SKIP TO <u>ITEM 5 BELOW.</u>**

---

**HOLDERS OF CLASS 5B NON-JOINT AND SEVERAL GENERAL UNSECURED CLAIMS WHO CHECK THE BELOW BOX TO ACCEPT THE CONVENIENCE CLAIM ELECTION MUST ALSO ACCEPT THE PLAN BY CHECKING THE "ACCEPT" BOX IN ITEM 2 ABOVE, OTHERWISE SUCH CONVENIENCE CLAIM ELECTION WILL BE INVALID.**

---

The Holder of the Claims against the Debtors identified in Item 1 elects as follows:

---

☐          **ACCEPTS the Convenience Claim Election including the reduction of their Claim(s) to $7,500 and <u>ACCEPTS (VOTES FOR) THE PLAN</u>**

---

[5]   For more information regarding convenience class treatment please see Article III.F of the Disclosure Statement.

**Item 5**.        **Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court, the Debtors and the Committee that:

(a)        as of the Voting Record Date, either: (i) the Entity is the Holder (or authorized signatory for a Holder) of the Claim set forth in Item 1;

(b)        the Entity (or in the case of an authorized signatory, the Holder) has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)        the Entity has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

(d)        no other Ballots with respect to the amount of the Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim, then any such earlier Ballots are hereby revoked;

(e)        the Entity understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the latest dated properly completed Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent; and

(f)        the Entity understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

Name of Holder: _____

(Print or Type)


Signature: _____

Name of Signatory: _____

(If other than the Holder)

Title: _____

Address: _____

_____

_____

Telephone
Number: _____

Email: _____

Date Completed: _____

---

**THE VOTING DEADLINE IS [4:00 P.M.], PREVAILING EASTERN TIME, ON [MAY 9], 2025.**

**THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY BY _ONLY ONE_ OF THE FOLLOWING METHODS:**

**IN THE ENCLOSED REPLY ENVELOPE PROVIDED, OR VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY, OR BY ELECTRONIC ONLINE SUBMISSION.**

| **If by First Class Mail:** | **If by Hand Delivery or Overnight Mail:** |
|---|---|
| Yellow Corporation<br>c/o Epiq Ballot Processing<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | Yellow Corporation<br>c/o Epiq Ballot Processing<br>10300 SW Allen Blvd.<br>Beaverton, OR 97005 |

***OR***

12

**By electronic online submission:**
To submit your Ballot via the Claims and Noticing Agent's online portal, visit https://dm.epiq11.com/yellow and under the Case Actions section of the website, click on "E-Ballot" and follow the instructions to submit your Ballot.

**IMPORTANT NOTE: You will need the following E-Ballot ID# to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:** _____

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. **Holders who cast a Ballot using the Claims and Noticing Agent's online portal should NOT also submit a paper Ballot.**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE [MAY 9], 2025, AT [4:00 P.M.], PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS CLASS 5B BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS AND THE COMMITTEE.**

---

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

This Ballot contains voting options with respect to the Plan.

1.  To ensure that your vote is counted, you must:  (a) complete the Ballot in accordance with these instructions; (b) indicate your decision either to accept or reject the Plan in Item 2 of the Ballot; and (c) sign and return the Ballot via (i) first-class mail to Yellow Corporation, et al., c/o Epiq Ballot Processing, P.O. Box 4422, Beaverton, OR 97076-4422 (ii) overnight courier or hand delivery to Yellow Corporation, et al., c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005 or (iii)  the Claims and Noticing Agent's E-Ballot Portal at https://dm.epiq11.com/YellowCorporation, so that this Ballot is actually received by the Claims and Noticing Agent on or before the Voting Deadline, [4:00 P.M.],  prevailing Eastern Time on **[May 9], 2025**.

2.  To have your Class 5B Non-Joint and Several General Unsecured Claim treated as a Class 4B Convenience Class Claim, you must (i) vote in favor of the Plan by checking the "Accept" box in Item 2 above; and (ii) accept the Convenience Claim Election by checking the "Accept" box in Item 4 above.

3.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors and the Committee otherwise determine.

4.  To vote, you <u>MUST</u> deliver your completed Ballot (whether via first-class mail, hand delivery, or E-Ballot Portal to the Claims and Noticing Agent) so that it is <u>ACTUALLY RECEIVED</u> by the Claims and Noticing Agent on or before the Voting Deadline by one of the methods described above.  **The Voting Deadline is [4:00 P.M.], prevailing Eastern Time on [May 9], 2025.**

5.  Any Ballot received by the Claims and Noticing Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors and the Committee determines otherwise.  No Ballot may be withdrawn or modified after the Voting Deadline without the Debtors' and the Committee's prior written consent.  Additionally, **the following Ballots will *not* be counted:**

    (a)  any Ballot that partially rejects and partially accepts the Plan;

    (b)  Ballots sent to the Debtors, the Debtors' agents (other than Claims and Noticing Agent), the Debtors' financial or legal advisors, the Committee, the Committee's financial or legal advisors or any other person;

    (c)  Ballots sent by electronic mail or facsimile;

    (d)  any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

    (e)  any Ballot cast by an Entity that does not hold a Claim in Class 5A or Class 5B;

    (f)  any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

    (g)  any unsigned Ballot (for the avoidance of doubt, Ballots validly submitted through the Ballot Portal will be deemed signed);

    (h)  any non-original Ballot (for the avoidance of doubt, Ballots validly submitted through the Ballot Portal will be deemed original); and/or

    (i)  any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

6.  Delivery of a Ballot reflecting your vote to the Claims and Noticing Agent will be deemed to have occurred only when the Claims and Noticing Agent actually receives your paper Ballot or E-Ballot.  In all cases, you should allow sufficient time to assure timely delivery.

7.  If you deliver multiple Ballots to the Claims and Noticing Agent, <u>ONLY</u> the latest dated, properly submitted, valid Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

8.      You must vote all of your Claims in a Voting Class either to accept or reject the Plan and may not split your vote.  Further, if a Holder has multiple Claims in a Voting Class against a singular Debtor, the Debtors and the Committee may direct the Claims and Noticing Agent to aggregate those Claims for the purpose of counting votes.

9.      This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim, in the Debtors' Chapter 11 Cases.

10.     You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

11.     SIGN AND DATE your Ballot.[6]  In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot. Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature or e-signature included on an E-Ballot will be deemed immediately legally valid and effective.

## PLEASE RETURN YOUR BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT:**

**U.S. TOLL FREE:  (866) 641-1076**
**INTERNATIONAL:  +1 (503) 461-4134**

**OR BY EMAILING YELLOWCORPORATIONINFO@EPIQGLOBAL.COM AND REFERENCING "YELLOW" IN THE SUBJECT LINE.**

---

**THE VOTING DEADLINE IS [4:00 P.M.], PREVAILING EASTERN TIME, ON [MAY 9], 2025.**

**THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE THE VOTING DEADLINE.**

---

[6]   If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors, the Committee, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

## <u>Exhibit 3</u>

**Updated Confirmation Hearing Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF HEARING TO CONSIDER
## CONFIRMATION OF THE THIRD AMENDED JOINT
## CHAPTER 11 PLAN AND RELATED VOTING AND OBJECTION DEADLINES

**PLEASE TAKE NOTICE** that, on November 22, 2024, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No. 5024] (the "Disclosure Statement Order") (a) authorizing Yellow Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *Second Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5028] ("Second Amended Plan");[2] (b) approving the *Second Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5027] (as may be amended, supplemented, or modified from time to time, the "Second Amended Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT,** on March 28, 2025, the Debtors and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors, the "Plan Proponents") filed the *Third Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of the Unsecured Creditors* [Docket No. 5995] (as may be altered, amended, modified, or supplemented from time to time, the "Third Amended Plan" or the "Plan") and the *Third Amended Disclosure Statement For the Third Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is:  11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Third Amended Plan, Third Amended Disclosure Statement, Disclosure Statement Order, or the Supplemental Disclosure Statement Order, as applicable.

*Proposed by the Debtors and the Official Committee of the Unsecured Creditors* [Docket No. 5996] (the "Third Amended Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE THAT,** on [●], 2025, the Bankruptcy Court entered the *Supplemental Order (I) Approving the Adequacy of the Third Amended Disclosure Statement, (II) Approving Supplemental Solicitation and Voting Procedures, (III) Approving Revised Forms of Ballots and Notices in Connection Therewith, (IV) Approving Certain Dates with Respect Thereto and (V) Granting Related* [Docket No. [●]] (the "Supplemental Disclosure Statement Order") (i) approving (a) the adequacy of the Third Amended Disclosure Statement, (b) the solicitation and voting procedures, (c) the revised forms of ballots and notices in connection therewith, (d) certain dates with respect thereto, and (ii) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on **May 19, 2025 at [●] prevailing Eastern Time**, before the Honorable Craig T. Goldblatt, in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market St., Third Floor, Wilmington, DE 19801.

---

**PLEASE BE ADVISED**: THE CONFIRMATION HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE BANKRUPTCY COURT OR THE DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE BANKRUPTCY COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

ANY SUCH NOTICES OF ADJOURNMENT ARE AVAILABLE FREE OF CHARGE ON THE DEBTORS' CASE WEBSITE AT HTTPS://DM.EPIQ11.COM/YELLOWCORPORATION.

---

## CRITICAL INFORMATION REGARDING VOTING ON THE PLAN

**Voting Record Date**.  The voting record date is November 14, 2024, which is the date for determining which Holders of Claims in Class 5A and Class 5B are entitled to vote on the Plan.

**Voting Deadline**.  The deadline for voting on the Plan is **May 9, 2025 at 4:00 p.m., prevailing Eastern Time** (the "Voting Deadline").  If you received a Solicitation Package, including a Ballot and intend to vote on the Plan you *must*:  (a) follow the instructions carefully; (b) complete *all* of the required information on the ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is *actually received* by the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC (the "Claims and Noticing Agent") on or before the Voting Deadline.  *A failure to follow such instructions may disqualify your vote*.

## CRITICAL INFORMATION REGARDING OBJECTING TO THE CONFIRMATION OF THE PLAN

> ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE IX.C CONTAINS A THIRD-PARTY RELEASE**.  YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**Plan Objection Deadline.**  The the deadline for filing objections to confirmation of the Plan is **May 9, 2025, at 4:00 p.m., prevailing Eastern Time**.  All such objections *must*:  (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Bankruptcy Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Bankruptcy Court (contemporaneously with a proof of service) and served upon the following notice parties so as to be ***actually received*** on or before the Plan Objection Deadline:

| Debtors | |
|---|---|
| **Yellow Corporation**<br>11500 Outlook Street, Suite 400<br>Overland Park, Kansas 66211.<br>Attention: Yellow Legal<br>legal@myyellow.com | |
| ***Counsel for the Debtors*** | ***Counsel for the Debtors*** |
| **Kirkland & Ellis LLP**<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>Attention: Patrick J. Nash Jr., P.C.<br>David Seligman, P.C.<br>Patrick.nash@kirkland.com<br>David.seligman@kirkland.com<br><br>-and-<br><br>**Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Allyson B. Smith<br>Allyson.smith@kirkland.com | **Pachulski Stang Ziehl & Jones LLP**<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19801<br>Attention:  Laura Davis Jones, Timothy P. Cairns,<br>Peter J. Keane, and Edward Corma<br>ljones@pszjlaw.com<br>tcairns@pszjlaw.com<br>pkeane@pszjlaw.com<br>ecorma@pszjlaw.com |

| Counsel for the Committee |
|---|
| **Akin Gump Strauss Hauer & Feld LLP**<br>One Bryant Park<br>New York, NY 10036<br>Attention: Philip C. Dublin; Meredith A. Lahaie, and Kevin Zuzolo<br>pdublin@akingump.com<br>mlahaie@akingump.com<br>kzuzolo@akingump.com<br><br>**and**<br><br>**Benesch, Friedlander, Coplan, Aronoff LLP**<br>1313 North Market Street, Suite 1201<br>Wilmington, DE 19801<br>Attention: Jennifer R. Hoover, Kevin M. Capuzzi, and John C. Gentile<br>jhoover@beneschlaw.com<br>kcapuzzi@beneschlaw.com<br>jgentile@beneschlaw.com |
| *United States Trustee* |
| **Office of the United States Trustee**<br>844 King Street, Suite 2207<br>Wilmington, DE 19801<br>Attention: Jane M. Leamy<br>Jane.M.Leamy@usdoj.gov |

**Please be advised that Article IX of the Plan contains the following release, exculpation, and injunction provisions:**[3]

Article IX.B of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

**Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, the Liquidating Trust, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Trust, or the Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, the Liquidating Trust, or other Entity, or that any Holder of any Claim against or Interest in a Debtor, the**

---

[3]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

Liquidating Trust, or other Entity could have asserted on behalf of the Debtors or the Liquidating Trust, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Liquidating Trust (including the Debtors' and the Liquidating Trust's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Liquidating Trust and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Liquidating Trust, intercompany transactions between or among a Debtor, or an affiliate of a Debtor and another Debtor, or the Liquidating Trust, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, the Financing Documents and any other Definitive Document or any Liquidation Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Documents, the Chapter 11 Cases, the Canadian Recognition Proceedings, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any Avoidance Actions (except for Avoidance Actions against the Debtors' current and former employees); (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (3) any matters retained by the Debtors and the Liquidating Trust pursuant to the Schedule of Retained Causes of Action.

Article IX.C of the Plan provides for the following third-party release (the "**Third Party Release**"):

Except as otherwise expressly set forth in this Plan or the Confirmation Order, effective as of the Effective Date, to the fullest extent permitted by applicable law, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Trust, or the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the

**Debtors or the Liquidating Trust (including the Debtors' and the Liquidating Trust's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Liquidating Trust and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Liquidating Trust, intercompany transactions, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, the Financing Documents, and any other Definitive Document or any Liquidation Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the Chapter 11 Cases, the Canadian Recognition Proceedings, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any Avoidance Actions (except for Avoidance Actions against the Debtors' current and former employees); (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.**

<u>Definitions related to the Third-Party Release</u>:

UNDER THE PLAN, "***AVOIDANCE ACTIONS***" MEANS ANY AND ALL ACTUAL OR POTENTIAL CLAIMS OR CAUSES OF ACTION TO AVOID A TRANSFER OF PROPERTY OR AN OBLIGATION INCURRED BY THE DEBTORS, INCLUDING AVOIDANCE, RECOVERY, OR SUBORDINATION ACTIONS OR REMEDIES THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR OTHER AUTHORIZED PARTIES IN INTEREST UNDER THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER SECTIONS 544, 547, 548, 549, 550, 551, 552, OR 553 OF THE BANKRUPTCY CODE, OR ANY SIMILAR FEDERAL, STATE OR COMMON LAW CAUSES OF ACTION, INCLUDING FRAUDULENT TRANSFER LAWS.

UNDER THE PLAN, "***DEBTOR RELEASE***" MEANS THE RELEASES GIVEN ON BEHALF OF THE DEBTORS AND THEIR ESTATES AS SET FORTH IN ARTICLE IX.B OF THE PLAN.

UNDER THE PLAN, "***RELATED PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, INVESTMENT COMMITTEE MEMBERS, SPECIAL COMMITTEE MEMBERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, MANAGED ACCOUNTS OR FUNDS, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS OR MANAGERS, EMPLOYEES, AGENTS, TRUSTEES, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS AND ADVISORS.  FOR THE AVOIDANCE OF DOUBT, THE MEMBERS OF EACH GOVERNING BODY ARE RELATED PARTIES OF THE DEBTORS.

UNDER THE PLAN, "***RELEASED PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE, (C) ALL HOLDERS OF CLAIMS; (D) ALL HOLDERS OF INTERESTS; (E) THE COMMITTEE AND ITS CURRENT AND FORMER MEMBERS (INCLUDING ANY *EX-OFFICIO* MEMBER(S)); (F) THE ELECTING J&S HOLDERS; (G) EACH RELEASING PARTY; (H) THE INFORMATION OFFICER; (I) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (J); AND (J) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (I); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT ELECTS NOT TO OPT INTO THE RELEASES DESCRIBED IN ARTICLE IX OF THIS PLAN.

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE, (C) ALL HOLDERS OF CLAIMS WHO VOTE TO ACCEPT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (D) ALL HOLDERS OF CLAIMS WHO VOTE TO REJECT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (E) ALL HOLDERS OF CLAIMS WHO ARE DEEMED TO REJECT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (F) ALL HOLDERS OF CLAIMS WHO ARE PRESUMED TO ACCEPT THE PLAN AND WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (G) ALL HOLDERS OF INTERESTS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (H) THE COMMITTEE AND ITS CURRENT AND FORMER MEMBERS (INCLUDING ANY *EX OFFICIO* MEMBER(S)); (I) THE ELECTING J&S HOLDERS; (J) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (K) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH AFFILIATE TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; AND (K) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE

(A) THROUGH CLAUSE (J) FOR WHICH SUCH AFFILIATE OR ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; *PROVIDED* THAT EACH SUCH ENTITY THAT ELECTS NOT TO OPT INTO THE RELEASES CONTAINED IN THIS PLAN, SUCH THAT IT IS NOT A RELEASING PARTY IN ITS CAPACITY AS A HOLDER OF A CLAIM OR INTEREST SHALL NEVERTHELESS BE A RELEASING PARTY IN EACH OTHER CAPACITY APPLICABLE TO SUCH ENTITY.

Article IX.D of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each Exculpated Party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases or the Canadian Recognition Proceedings prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Liquidating Trust Agreement, the Third-Party Sale Transactions, the Plan, the Plan Supplement, any other Definitive Document, or any Liquidation Transaction, or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of the Third-Party Sale Transactions, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

Article IX.E of the Plan establishes an injunction (the "**Injunction**"):

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors and the Liquidating Trust, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching,**

collecting, or recovering by any manner or means of any judgment, award, decree, or order; (c) creating, perfecting or enforcing any encumbrance of any kind; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan. All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims or Causes of Action that (x) have been released in this Plan (the "Released Claims") or (y) that are subject to exculpation (the "Exculpated Claims"), shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iv) asserting any right of subrogation on account of or in connection with or with respect to the Released Claims and Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or (v) or commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Released Claims and Exculpated Claims; *provided*, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases; *provided, however,* the foregoing shall not prevent any party from pursuing a claim consistent with the ADR Procedures Order. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions on account of such Claim pursuant to the Plan shall be deemed to have consented to the injunction provisions set forth in this Article IX.E.

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**.  The materials in the Solicitation Package are intended to be self-explanatory.  If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials), please feel free to contact the Debtors' Claims and Noticing Agent, by:  (a) calling (866) 641-1076 (domestic) or +1 (503) 461-4134 (international); (b) writing to Yellow Corporation, et al., c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005; or (c) emailing YellowCorporationInfo@epiqglobal.com and referencing "Yellow" in the subject line.  You may also obtain copies of any pleadings filed in these Chapter 11 Cases (a) for a fee via PACER at: https://ecf.deb.uscourts.gov; or (b) at no charge by accessing the Debtors' restructuring website at https://dm.epiq11.com/YellowCorporation.

Please be advised that the Claims and Noticing Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may ***not*** advise you as to whether you should vote to accept or reject the Plan.

---

**BINDING NATURE OF THE PLAN**:

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND/OR INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM OR INTEREST IN THESE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

---

Dated:  [●], 2025

Wilmington, Delaware

| /s/ *DRAFT* | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | **KIRKLAND & ELLIS LLP** |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | 333 West Wolf Point Plaza |
| 919 North Market Street, 17th Floor | Chicago, Illinois 60654 |
| P.O. Box 8705 | Telephone:    (312) 862-2000 |
| Wilmington, Delaware 19801 | Facsimile:    (312) 862-2200 |
| Telephone:    (302) 652-4100 | Email:    patrick.nash@kirkland.com |
| Facsimile:    (302) 652-4400 | david.seligman@kirkland.com |
| Email:    ljones@pszjlaw.com | |
| tcairns@pszjlaw.com | -and- |
| pkeane@pszjlaw.com | |
| ecorma@pszjlaw.com | Allyson B. Smith (admitted *pro hac vice*) |
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone:    (212) 446-4800 |
| | Facsimile:    (212) 446-4900 |
| | Email:    allyson.smith@kirkland.com |
| | |
| | *Co-Counsel for the Debtors and Debtors in Possession* |

| /s/ DRAFT | |
|---|---|
| Jennifer R. Hoover (DE No. 5111) | Philip C. Dublin (admitted pro hac vice) |
| Kevin M. Capuzzi (DE No. 5462) | Meredith A. Lahaie (admitted pro hac vice) |
| John C. Gentile (DE No. 6159) | Kevin Zuzolo (admitted pro hac vice) |
| **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP** | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| 1313 North Market Street, Suite 1201 | One Bryant Park |
| Wilmington, DE 19801 | New York, NY 10036 |
| Telephone: (302) 442-7010 | Telephone: (212) 872-1000 |
| Facsimile:  (302) 442-7012 | Facsimile: (212) 872-1002 |
| E-mail:   jhoover@beneschlaw.com | Email:   pdublin@akingump.com |
| kcapuzzi@beneschlaw.com | mlahaie@akingump.com |
| jgentile@beneschlaw.com | kzuzolo@akingump.com |
| | |
| | *Co-Counsel for the Official Committee of Unsecured Creditors of Yellow Corporation,* et al. |