**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | ) Case No. 23-11069 (CTG) |
| Debtors. | ) (Jointly Administered) |
|  | ) **Re: Docket No. 6204** |

**OBJECTION OF DEBTORS TO**
**MOTION OF MFN PARTNERS, LP AND MOBILE STREET**
**HOLDINGS, LLC FOR ENTRY OF AN ORDER CONVERTING THE DEBTORS'**
**CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

The Debtors object to the *Motion of MFN Partners, LP and Mobile Street Holdings, LLC for Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases under Chapter 7 of the Bankruptcy Code* [Docket No. 6204] (the "Motion") and respectfully state as follows:

**Preliminary Statement**

1. Movants' Motion should be denied. Following the Court's issuance of preliminary observations regarding certain claims subject to the proposed settlement incorporated in the Third Amended Plan, the Debtors—in accordance with the Court's direction[2]—have remained engaged in discussions regarding a potential revised settlement. The Debtors have not withdrawn the Third Amended Plan because there is a reasonable prospect of amending the Third Amended Plan

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Hearing Tr. 34:19 – 35:2, April 7, 2025 ("you should talk to each other, and then reach out to chambers when you want to have a further status conference about whereto from here, and whether that's, you know, teeing up the legal issue or the debtor says, no, I want a confirmation hearing on date X -- or approval of the disclosure statement on date X, we can figure that out once you've seen this, and you can all puzzle through and take whatever position you want to take about the consequence it has for the plan in its current form").

consistent with the Court's rulings and the preliminary observations to date. Neither, however, have the Debtors sought to set any deadlines or otherwise take any steps whatsoever to prosecute the Third Amended Plan as filed. The Debtors' counsel communicated multiple times to Movants' counsel—by email, text, and verbally—that the Debtors have no intention of prosecuting the Third Amended Plan and will not do so without first meaningfully conferring with Movants. One example of these communications is attached hereto as **Exhibit A**.

2. The Debtors negotiated and proposed the Third Amended Plan with the Committee because the Debtors believe that confirming and consummating a chapter 11 plan is the best outcome for these chapter 11 cases, and the Debtors likewise believe that the settlement embodied in the Third Amended Plan was reasonable in light of the litigation risk that was present at the time that the Debtors jointly proposed the Third Amended Plan. Specifically, the Debtors and the Committee moved forward with the Third Amended Plan because, on average, holders of Class 5B – Non-Joint and Several General Unsecured Claims stood to recover at least as much, if not more, under the Third Amended Plan than they will do in the absence of a settlement notwithstanding the Court's rulings and guidance to date, and, upon information and belief, the Third Amended Plan was supported by all material creditors other than Movants. But that is "neither here nor there"; the Debtors are no longer prosecuting Third Amended Plan.

3. On April 23, 2025, advisors to the Debtors and the Committee met via videoconference with counsel to the Movants to review and seek alignment on what the allowed amount of each MEPP claim should be under the Court's rulings and guidance to date. While there were some relatively minor differences, the basis for which were identified and understood by all, there is general alignment amongst the professionals for each of the Debtors, Committee, and Movants as to the amount of such claims. The Debtors believe that filing an amended

confirmable plan consistent with the Courts' rulings and guidance is a real possibility. To that end, the Debtors are actively pursuing a revised settlement in light of the Courts' rulings and guidance. Constructive discussions with the Committee and the Debtors' largest creditors continue in earnest. And the Debtors continue to coordinate with the Movants and committed on multiple separate occasions that the Debtors would not take steps to prosecute an amended plan without first conferring with Movants.³ At the same time, just as they did while the Third Amended Plan was pending, the Debtors continue to pursue the Third Circuit Appeal, in close coordination with Movants.

4. Notwithstanding the foregoing, the Movants filed the Motion asking this Court to convert the chapter 11 cases to chapter 7 effective as of June 30, 2025. As set forth herein, "cause" does not exist to support conversion of these chapter 11 cases to chapter 7. The Motion should be denied.

**Objection**

I. **The Movants Fail to Show Cause to Convert the Debtors' Chapter 11 Cases.**

5. The Bankruptcy Code provides that the court shall convert a case to chapter 7, "[if it] is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). The "burden is on the moving party to prove cause by a preponderance of the evidence." *In re Rsrvs. Resort, Spa & Country Club LLC*, 2013 WL 3523289, at *2 (Bankr. D. Del. July 12, 2013). Once "cause" is found, "the burden shifts to the opposing party to show why dismissal or conversion would not be in the best interests of the estate and the creditors." *In re Dr. R.C. Samanta Roy Inst. of Sci. Tech. Inc.*, 465 F. App'x 93, 96–97 (3d Cir. 2011).

---

³ A further example of such communication is attached hereto as **Exhibit B**.

3

6. The Movants argue that conversion of the Debtors' chapter 11 cases to chapter 7 is warranted because of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," 11 U.S.C. § 1112(b)(4)(A),[4] and because there is a "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of this court." 11 U.S.C. § 1112(b)(4)(J).[5]

7. As more fully described herein, the Movants fail to satisfy their burden under 11 U.S.C. § 1112(b)(4)(A) and 11 U.S.C. § 1112(b)(4)(J).

**A. The Debtors Have Not Suffered a Substantial or Continuing Loss to or Diminution of the Estate Supporting Conversion.**

8. To prevail on a showing of "cause" under subsection 1112(b)(4)(A), "both tests [(a) loss to or diminution of the estate and (b) absence of a reasonable likelihood of rehabilitation] must be satisfied." *In re AIG Financial Products Corp.*, 651 B.R. 463, 475 (Bankr. D. Del. 2023), aff'd No. 23-573-GBW, 2024 WL 3967465 (D. Del. Aug. 28, 2024). The Movants fail to show either.

9. Subsection 1112(b)(4)(A) of the Bankruptcy Code requires a movant to first show the existence of "substantial or continuing loss to or diminution of the estate." 11 U.S.C. § 1112(b)(4)(A). To assess whether there is "substantial or continuing loss to or diminution of the estate," "[a] court must make a full evaluation of the present condition of the estate, not merely look at the debtor's financial statements." *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003); *see also AIG Financial*, 651 B.R. at 475 (declining to convert case

---

[4] 11 U.S.C. § 1112(b)(4) provides sixteen different grounds for "cause." However, the Movants only pleaded "cause" under § 1112(b)(4)(A) and § 1112(b)(4)(J). For the avoidance of doubt, the Debtors submit that there is no "cause" for conversion on any grounds.

[5] *See* Mot. at 29–31, 31–32.

where debtor "ha[d] cash on hand," had "reduced accruing losses by filing bankruptcy," and where there was potential for deal with movants, notwithstanding their pleadings).

10. Courts do not convert a case merely because a debtor may be sustaining losses while administering its estate; "[s]mall losses over an extended period may be acceptable." *AdBrite*, 290 B.R. at 215. Instead, courts require more—a true degradation of estate assets. *See In re Strawbridge*, 2010 WL 779267, at *4 (Bankr. S.D.N.Y. Mar. 5, 2010) ("[T]here must be both a 'pattern of decline' and an inability to 'stop the bleeding' for cause to exist under [section] 1112(b)(4)(A)."); *In re Creech*, 538 B.R. 245, 250 (Bankr. E.D.N.C. 2015) (denying motion to convert because "[t]his is clearly not a case where the operating account has been depleted and there is no income to fund ongoing expenses").

11. There is no substantial or continuing loss to or diminution of the Debtors' estates, and the Movants offer no evidence to the contrary. The Movants only put forth vague and conclusory statements that the Debtors' estates will continue to incur Debtor and Committee professional fees and U.S. Trustee Fees if these cases remain in chapter 11.[6] Courts, however, have found that accrual of professional fees "does not constitute a continuing loss to the estate." *In re TMT Procurement Corp.*, 534 B.R. 912, 920 (Bankr. S.D. Tex. 2015) (emphasis added); *see also In re Vaughan*, No. 11–10–10759, 2013 WL 2244285, at *7-8 (Bankr. D.N.M. May 21, 2013) (denying conversion and finding that accruing professional fees did not establish cause because, inter alia, "the Trustee has expended professional fees for the purpose of building up the value of future assets for the benefit of the estate"). Further, for the loss to be "substantial" under section 1112(b)(4)(A), a movant must show that the loss sufficiently large given the financial circumstances of the debtor as to **materially negatively impact** the bankruptcy estate and interest

---

[6]    *See* Mot. ¶ 83.

of creditors." See 7 Collier on Bankruptcy ¶ 1112.04[6][a][i] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014) (emphasis added).

12. The Movants have not provided any evidence to demonstrate that there has been, or will be, a "pattern of decline" or an inability to "stop the bleeding." *Strawbridge*, 2010 WL 779267, at *4. Instead, Movants have simply pointed out that there will continue to be professional fees. To be sure, estate professional fees incurred after the consummation of the Debtors' sale process will be commensurate with the work done by each estate professional to benefit the estate.[7] Aside from these professional fees that will be incurred to continue the administration of these chapter 11 cases, the Debtors do not forecast any administrative expenses to be incurred after June 30, 2025, that could possibly "materially negatively impact" the bankruptcy estate and interests of creditors, and Movants have not suggested otherwise. Specifically, any material costs that are anticipated to be borne by the estate after June 30, 2025, will almost surely be commensurable to costs incurred by any trustee to continue the orderly administration of these cases, even under chapter 7.

13. Finally, the Movants wholly ignore that conversion to chapter 7 would not reduce costs or yield better results. Conversion would likely result in a mountain of administrative expenses related to bringing a court-appointed trustee, with no historical knowledge or relationships, and who must also hire advisors, and quickly educate itself on numerous complex, sophisticated issues, including the Third Circuit Appeal and any possible related litigation thereafter.

---

[7] To the extent the Movants take issue with any professional's fees, the Movants, like any party in interest, are afforded notice and the opportunity to object pursuant to the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 519]. To date, Movant has never objected to any professional's fees.

6

14. The Movants have not met their burden to satisfy the first prong of subsection 1112(b)(4)(A).

**B.     The Debtors Have a Reasonable Likelihood of Rehabilitation in Chapter 11.**

15. Even if "loss" could be shown (it cannot), a movant seeking conversion under subsection 1112(b)(4)(A) must also demonstrate "the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).  The Movants argue that the Debtors have "no reasonable prospect of rehabilitation" because (a) the Debtors' businesses ended prior to the Petition Date, (b) the Debtors have discontinued pursuing a potential REIT structure as a reorganization strategy, and (c) the Debtors will soon complete their sale and marketing process for their real estate efforts.[8]  Courts have found, however, that a liquidating plan is a form of rehabilitation. *See In re Smith*, 77 B.R. 496, 502 (Bankr. E.D. Pa. 1987) ("There is no requirement that the plan contemplate reorganization, as a liquidating plan is an acceptable alternative in a Chapter 11 case, and thus a liquidation is a form of rehabilitation."); *In re R & S St. Rose Lenders, LLC*, 2016 WL 3536533, at *6 n.11 (Bankr. D. Nev. May 18, 2016) (denying U.S. Trustee's conversion motion and finding that conversion was not in the best interest of creditors where U.S Trustee argued that there was no likelihood of rehabilitation because the debtors had proposed a liquidating plan); *In re McTiernan*, 519 B.R. 860, 866 (Bankr. D. Wy. 2014) (holding that there is "a reasonable likelihood of rehabilitation" if the "Debtor may successfully liquidate").

16. As stated above, the Debtors are in the midst of constructive discussions with their largest creditors to revise the Third Amended Plan consistent with the Courts' rulings and guidance to date.  The Debtors submit that there is more than a reasonable likelihood that they will be in a position to file, prosecute, and confirm such plan in the relative near-term.

---

[8]     *See* Mot. ¶ 86.

17. Accordingly, the Movants have not met their burden to satisfy the second prong of subsection 1112(b)(4)(A).

**C. Cause Does Not Exist Under 1112(b)(4)(J) to Convert the Chapter 11 Cases to Chapter 7.**

18. While the Movants look to section 1112(b)(4)(J) to support their request for conversion, the Debtors submit that section 1112(b)(4)(J) is inapplicable. Section 1112(b)(4)(J) of the Bankruptcy Code provides that cause includes a "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of this court." 11 U.S.C. 1112(b)(4)(J). Only mandatory deadlines set by the Code or by an order of the court provide the basis for invoking 1112(b)(4)(J) as a cause for a dismissal. 7 Collier on Bankruptcy ¶ 1112.04[6][j] (Richard Levin & Henry J. Sommer eds., 16th ed.). A debtor's failure to file a plan within the exclusivity period does not necessarily constitute cause for purposes of section 1112(b)(4)(J). *Id.*

19. Here, the Debtors have filed a plan and disclosure statement within the exclusivity period as fixed by the Court,[9] and the Movants have not suggested otherwise. In chapter 11, with respect to debtors other than small businesses, there is no deadline to confirm a plan. *See generally* 11 U.S.C. §§ 101–1532

20. The Debtors filed the Third Amended Plan and Third Amended Disclosure Statement and, as stated above, are in active discussions with their stakeholders to potentially

---

[9] The Debtors filed their initial Plan on September 2, 2024 [Docket No. 4253]. The Debtors subsequently filed the First Amended Plan on October 17, 2024 [Docket No. 4580], the Second Amended Plan on November 20, 2024 [Docket No. 4974], and the Third Amended Plan on March 28, 2025 [Docket No. 5995]. The Debtors' plan filing exclusivity period expired on September 2, 2024, and solicitation exclusivity period expired on February 28, 2025, and the Debtors voluntarily declined to seek a further extensions of their exclusivity periods. *See Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 3590]; *Order (I) Extending the Debtors' Exclusive Period to Solicit Acceptances of a Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 4953].

amend the Third Amended Plan consistent with the Courts' prior rulings and guidance. The Debtors are optimistic that they will be in a position to file, prosecute, and confirm an amended plan in the relative near-term.

21.     Accordingly, the Movants have not met their burden to satisfy subsection 1112(b)(4)(J).

## II.     Even If the Movants Had Successfully Shown "Cause," Conversion Is Not in the Best Interests of Creditors or the Estates.

22.     If cause is found, "the burden shifts to the opposing party to show why conversion would not be in the best interests of the estate and the creditors." *In re Dr. R.C. Samanta Roy Inst. of Sci. Tech. Inc.*, 465 F. App'x 93, 96–97 (3d Cir. 2011); *In re Korn*, 523 B.R. 453, 464 (Bankr. E.D. Pa. 2014) (same). Even if the Movants had successfully satisfied its burden to show "cause" for conversion (they have not), conversion is decidedly against the interest of creditors and the estates.

23.     The Movants cannot actually believe that the administration of the Debtors estates after June 30, 2025, including any potential litigation related to the Third Circuit Appeal, would be benefitted from a conversion of these cases to chapter 7. An amended chapter 11 plan that garners requisite creditor support is achievable, and clearly a more efficient and cost-effective means for resolving these cases than conversion to chapter 7.

24.     For the reasons set forth herein, the Motion should be denied.

*[Remainder of Page Intentionally Left Blank]*

Dated:  May 5, 2025
Wilmington, Delaware

/s/ Laura Davis Jones

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | **KIRKLAND & ELLIS LLP** |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | 333 West Wolf Point Plaza |
| 919 North Market Street, 17th Floor | Chicago, Illinois 60654 |
| P.O. Box 8705 | Telephone:   (312) 862-2000 |
| Wilmington, Delaware 19801 | Facsimile:    (312) 862-2200 |
| Telephone:   (302) 652-4100 | Email:          patrick.nash@kirkland.com |
| Facsimile:    (302) 652-4400 |                      david.seligman@kirkland.com |
| Email:          ljones@pszjlaw.com | |
|                      tcairns@pszjlaw.com | -and- |
|                      pkeane@pszjlaw.com | |
|                      ecorma@pszjlaw.com | Allyson B. Smith (admitted *pro hac vice*) |
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone:   (212) 446-4800 |
| | Facsimile:    (212) 446-4900 |
| | Email:          allyson.smith@kirkland.com |

*Co-Counsel for the Debtors and Debtors in Possession*