**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 6003, 6205** |
| | ) | |

**DEBTORS' REPLY IN FURTHER SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME A CERTAIN UNEXPIRED LEASE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors") file this reply in response to the objection filed at Docket No. 6205 (the "Objection") to the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Assume a Certain Unexpired Lease and (II) Granting Related Relief* (the "Motion")[2] and in further support of the relief requested in the Motion, and respectfully state as follows:

**Preliminary Statement**

1.  For the reasons set forth below—including that (1) caselaw, including Delaware's *Filene's Basement*, is abundantly clear that unexpired leases are *not* automatically rejected where the debtor-in-possession timely (prior to the § 365(d)(4) deadline) files an assumption motion; (2) the Stipulation explicitly preserves all of the Debtors' rights under § 365(d)(4), including their ability to "seek to assume" the Lease "at any time prior to" the § 365(d)(4) Deadline; (3) the Debtors assumed (by virtue of timely filing the Motion), or for the avoidance of any doubt,

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion [Docket No. 6003].

"sought to assume" (by virtue of timely filing the Motion) the Lease; and (4) the Debtors are in advanced discussions to sell the Lease for significant cash proceeds—FLP's objection should be denied, and respectfully, the Motion should be approved.

**A. The Debtors Timely Filed the Motion by the Section 365(d)(4) Deadline, and Accordingly, the Lease Has Been Assumed (Subject to Court Approval).**

2.      In an attempt to both make new law and receive a windfall at the expense of the Debtors' estates, FLP misleadingly and erroneously asserts that when a chapter 11 debtor files an assumption motion "clearly too late for any possible action by the Court to approve it" (that is, by the § 365(d)(4) Deadline), then the lease sought to be assumed is automatically rejected as of "12:01 a.m." following the § 365(d)(4) deadline date.[3]

3.      But that is not the law.  The definitive case of this Court on this issue, *Filene's Basement*, provides for a "bright line" rule—and the Debtors, by timely filing the Motion, are undoubtedly on the right side of it.  In *Filene's Basement*, Judge Carey stated:

> The deadline provisions of 11 U.S.C. § 365(d)(4) are intended to set ***a "bright line"*** regarding how much time the trustee has to decide whether to assume or reject a lease.  Congress does not specify the manner in which a trustee is to announce the decision, although case law consistently holds that ***the mere filing of a motion to assume is sufficient***.  If we were to adopt the Appellant's interpretation of 11 U.S.C. § 365(d)(4), such certainty would be destroyed.  The period within which the trustee could consider assumption or rejection would vary widely, depending on the vagaries of a particular bankruptcy court's caseload and local procedures.

*In re Filene's Basement, LLC*, No. 11-13511, 2014 WL 1713416, at *9 (Bankr. D. Del. Apr. 29, 2014) (quoting *Cousins Props., Inc. v. Treasure Isles HC, Inc. (In re Treasure Isles EC, Inc.)*, 462 B.R. 645 (B.A.P. 6th Cir. 2011) (emphasis added)).  As Judge Carey further stated,

---

[3] *See* FLP Obj. at Prelim. Statement [Docket No. 6205]; *see also Id.* ¶ 25 ("Because the Debtors . . . did not assume the Lease prior to the [365(d)(4) Deadline], the Debtors rejected the Lease"—and "because a rejected lease may not be subsequently assumed," the Motion "must be denied.").

2

"when Congress intends to set a time by which the court must act, it says so explicitly."[4] Ultimately, he held that "[b]ased on the record before me[5] and the reasoning of the *Treasure Isles* Court,[6] I conclude that the Lease has not been deemed rejected."[7]

4. Despite the "bright line" rule established in *Filene's Basement*, FLP attempts to create a carveout for when a debtor acts with "sloth" and should, accordingly, "be punished" (*i.e.*, with "automatic rejection" of the Lease). Citing to the fact that "the Debtors filed the Motion at approximately 8:00 PM on [the 365(d)(4) Deadline], well after the Court closed," FLP invites the Court to reject the rule established in *Filene's Basement* and to replace it with a floating inquiry into "whose failure prevented both the motion and court action from occurring prior to the deadline." *Id.* ¶ 43. Where a court determines—based on some uncertain calculus—that the blame lies with the court itself, "the debtor should not be punished," in contrast to when the failure lies with the Debtors, in which case "leniency should not be afforded." *Id.* Applying its newly invented standard, FLP asserts that the timing of the filing of the Motion "made it impossible for the Court, even on an emergency basis, to act prior to the deadline at

---

[4] *Filene's Basement*, 2014 WL 1713416, at *9; *See also In re Simbaki Ltd.*, 520 B.R. 241, 244 (Bankr. S.D. Tex. 2014) ("[B]y stating that a lease is deemed rejected unless *the trustee* assumes or rejects the lease, Congress has indicated that the deadline is satisfied when the trustee takes action, not the court . . . The absence of any reference to court action is § 365(d)(4)(a) is conspicuous . . . Congress could have required the trustee to obtain a court order approving his motion to satisfy the deadline, but chose to omit that explicit requirement.").

[5] Part of the record before Judge Carey in *Filene's Basement* was that "the [] Debtors have shown that they will receive millions of dollars in value from the assumption and assignment of this long-term, advantageous Lease." *Id.* Here too, as further described in the Supplemental Kaldenberg Declaration (defined below), the Debtors expect to receive significant value from the assumption and assignment of this long-term, advantageous Lease.

[6] *Treasure Isles HC, Inc.*, 462 B.R. at 649 ("[A]lmost every pre-BAPCPA case addressing this issue holds that a trustee need only file its motion to assume the lease prior to the deadline under 11 U.S.C. § 365(d)(4) and does not have to obtain court approval of the same prior to the deadline to avoid having its executory contract deemed rejected (citations omitted). Furthermore . . . , post-BAPCPA cases addressing the issue hold that a trustee 'assumes' a nonresidential lease for purposes of meeting the applicable 11 U.S.C. § 365(d)(4) deadline simply by filing a motion to assume (citations omitted).")

[7] *Filene's Basement*, 2014 WL 1713416, at *9. *See also Treasure Isles HC, Inc.*, 462 B.R. at 650: "Conversely, allowing trustees to signify their intentions merely by filing motions to assume clearly satisfies the goals of 11 U.S.C. § 365(d)(4) to let lessors know the trustees' intention with respect to their property within a reasonable, certain time frame."

3

11:59 PM . . . and therefore [the Debtors] may not avail themselves of the leniency granted under *Filene's Basement*." *Id.* ¶ 43.

5. But neither *Filene's Basement* nor *Treasure Isles* (nor any case cited by FLP in its Objection) distinguish between (let alone create or impose a rule that would treat any differently) a debtor that files an assumption motion *on* the date of the 365(d)(4) Deadline versus a debtor that files an assumption motion some days *before* the 365(d)(4) Deadline. The distinction does not matter: the "bright line" of *Filene's Basement* controls. And FLP does not cite to a single case in which a court has agreed with its position. For a number of reasons, FLP's version of the law is *not* the law because the "certainty" provided by § 365(d)(4) . . . would be destroyed" if it was. *Treasure Isles HC, Inc.*, 462 B.R. at 650; *see also In re Simbaki, Ltd.*, 520 B.R. 241, 244 (Bankr. S.D. Tex. 2014) (citing *Treasure Isles* and stating that "[r]equiring the trustee to obtain a court order approving the motion to assume the lease would destroy the purpose of a bright-line rule.").

6. Nor does Collier "advocate" for FLP's carveout. Misleadingly, FLP claims that "Collier advocates" that "the lenient approach [of *Filene's Basement*] should have a limit." FLP Obj. ¶ 41. But FLP has quoted Collier not only incompletely, but out of context. FLP quotes Collier as stating "[i]f an extension request [for a consensually extended 365(d)(4) Deadline] 'was made at the last minute, for example on the 59th day, and that simply gave the court no meaningful opportunity to act" prior to the 60-day deadline, such filing would be untimely" FLP Obj. ¶ 41 (quoting 3 Collier on Bankruptcy ¶ 365.51 (Richard Levin & Henry J. Sommer eds.,16th ed.)). But Collier actually states:

> Pre-2005 Act, some courts held, based on ***a very strict reading*** of the statute, that the court could extend the time only if the court acted before the expiration of the 60-day period . . . [S]ince the statute on its face called for any extension of the initial 60-day period to be

4

> fixed within the initial 60-day period, *it could have been argued* that an extension request that was made at the last minute, for example, on the 59th day, and that simply gave the court no meaningful opportunity to act within the 60-day period, was insufficient.

3 Collier on Bankruptcy ¶ 365.51 (Richard Levin & Henry J. Sommer eds.,16th ed.) (emphasis added). With respect to the timeliness of a debtor-in-possession filing assumption motions, Collier states that while "it **could be argued** that [] the trustee or debtor in possession should be required to file its motion to assume in sufficient time to enable the court to act before the period expires," that is *not* the law—as "[a] review of both pre-and post-BAPCPA cases shows that an overwhelming majority of courts [including the Bankruptcy Court for the District of Delaware, pursuant to *Filene's Basement*] hold that a trustee **need only file a motion to assume before the deadline**." *Id.* n.42 (emphasis added) (citing, *e.g.*, *In re By-Rite Distrib., Inc.*, 55 B.R. 740 (D. Utah 1985); *In re Scorpion Fitness Inc.*, No. 19-11231, 2020 Bankr. LEXIS 1294, at *10 (Bankr. S.D.N.Y. May 18, 2020); *In re Simbaki, Ltd.*, 520 B.R. 241, 245 (Bankr. S.D. Tex. 2014) ("Turning to the intent of Congress to assist in interpreting [Section 365(d)(4)(a)], *it is apparent that filing a motion to assume satisfies the statutory deadline*.") (emphasis added)).[8]

7.     Recognizing the deficiency in its Code-based (and Collier-based) arguments, FLP relies upon the text of the Stipulation to assert that the Lease has, nonetheless, been

---

[8] Collier's full discussion is provided here for reference: "On its face, the statute seems to indicate that the lease must actually be assumed before the expiration of the 120-day period. However, ***this would create an unrealistic situation*** because assumption of an executory lease must be approved by the court. In many cases, a trustee or debtor in possession will be unable to determine which leases to assume, file motions and obtain a hearing and court approval prior to the expiration of the 120-day period [or such other consensually extended period]. Even if the trustee or debtor in possession could meet that deadline, it would allow substantially less than the 120 days for a decision, ***something that Congress did not appear to intend***. In any event, the trustee or debtor in possession has no control over the court docket; thus, even if it performs in a timely fashion the court may fail to approve assumption of a lease prior to the expiration of the 120-day period. Recognizing these difficulties, most courts required that a trustee or debtor in possession act before the expiration of the 60-day period, but held that court approval of a trustee or debtor in possession's motion to assume could be granted after the expiration of the period. Nevertheless, ***it could be argued*** that in any event the trustee or debtor in possession should be required to file its motion to assume in sufficient time to enable the court to act before the period expires. If the trustee or debtor in possession files within sufficient time and the court fails to act, it is truly the court's default, not the trustee's or the debtor in possession's." *Id.* (emphasis added).

"automatically rejected". FLP Obj. ¶ 28. FLP argues that "[t]he Stipulation [] rejects the Lease 'if not assumed by the Extended Deadline' [of March 31, 2025]," but also recognizes that "[t]he Stipulation contains language analogous to § 365(d)(4) and should be interpreted through that lens." *Id.* ¶ 26. The Debtors agree that the lens of § 365(d)(4) is the appropriate method for interpreting the language of the Stipulation. Through that lens, the caselaw—including *Filene's Basement*—overwhelmingly and decisively sets a "bright line" that settles the Debtors' filing of the Motion as timely.

8. Moreover, the Stipulation contains additional language independently confirming that the bright line rule of § 365(d)(4) should apply. Specifically, the Stipulation states that it is "without prejudice to the Debtors' rights pursuant to section 365 of the Bankruptcy Code . . . ***to seek to assume***, reject, or assume and assign the Lease ***at any time prior to the Extended Deadline***," with "[FLP] specifically acknowledg[ing] that [the] Stipulation ***does not . . . affect or diminish in any way the Debtors' (including the Tenant's) . . . rights under section 365***." Stipulation ¶¶ 3, 5 [Docket No. 5512]. Even though "[t]he Bankruptcy Code does not explicitly define the term 'assume'", the plain language of the Stipulation leaves no doubt that *any time* prior to the Extended Deadline was an appropriate time for the Debtors to assume (or to "seek to assume") the Lease. *Simbaki Ltd.*, 520 B.R. at 243. By timely filing the Motion, the Debtors properly exercised their rights under the Stipulation and the Bankruptcy Code.

**B. The Debtors Clearly and Timely Indicated Their Intentions to Assume the Lease, and the Debtors Will File a Subsequent Assignment Motion.**

9. FLP additionally argues that "the Motion does not constitute an assumption because it is conditional." FLP Obj. ¶ 33 (specifically referencing "[t]he Motion's equivocal reservation of the right to reject the Lease prior to the hearing" (*Id.* ¶ 32)). Not only does FLP cite no case that stands for the proposition that such a reservation of rights in the Motion somehow negates the Motion (with the effect of "automatically rejecting" the Lease), but the Debtors were both timely and clear that they had determined to assume the Lease. *See, e.g.*, Debtor's Mot. ¶ 19 [Docket No. 6003] ("Indeed, the Debtors and their advisors are in active discussions with certain prospective assignment counterparties and expect to enter into an assignment transaction in the near term. Therefore, the Debtors seek to assume the Lease pursuant to this Motion[.]"); *Declaration of Brian Whittman in Support of the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Assume a Certain Unexpired Lease and (II) Granting Related Relief* [Docket No. 6003-3¶ 6] ("[T]he Debtors, in consultation with their advisors and the Committee, have determined to assume the Lease[.]"); *Declaration of Cody Leung Kaldenberg in Support of the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Assume a Certain Unexpired Lease and (II) Granting Related Relief* [Docket No. 6003-4 ¶¶ 13, 15] ("[A]ssuming the Lease at this time will maximize the Lease's value for the Debtors and their estates . . . The alternative to assuming the Lease—*i.e.*, rejecting the Lease []—would . . . be value-destructive."). On top of the Motion and the two Declarations, Debtors' counsel emailed FLP's counsel simultaneous with the filing of the Motion, in advance of the expiration of the Extension Deadline: "We are seeking assumption [of the Lease] effective as of today."

10. FLP argues that "assumption still should not be granted" as "assumption of the Lease must be *cum onere*" and "the Debtors seek to effect massive modifications to the Lease by

7

the Motion." FLP Obj. ¶¶ 54, 56, 35. Specifically, FLP takes issue with paragraph 5 of the proposed Order—which would "forever bar[] and enjoin[] [FLP] from asserting against the Debtors any defaults, claims, interest, or other default penalties under the Lease arising before the date of this Order." Debtor's Mot. Proposed Order ¶ 5. FLP interprets such language as the Debtors seeking to assume parts of the Lease while abandoning others—namely, to abandon the Indemnification Obligations of the Lease. If FLP believes that the Debtors owe to FLP certain Indemnification Obligation that "arose before the date of [the] Order," FLP should raise the issue—with specificity—now (*i.e.*, in the context of being paid a cure by the Debtors). To be clear, upon assuming the Lease, the Debtors will continue to perform under the Lease, *cum onere*—including with respect to Indemnification Obligations, if any, owed by the Debtors following the Court's entry of the Order. And, for the avoidance of doubt, and for FLP's comfort, the Debtors agree to incorporate FLP's proposed language into the Order. *See* FLP Obj. ¶ 62.[9]

11.    FLP also objects to paragraph 7 of the proposed Order "which would permit the Debtors to assign the Lease in violation of its terms, specifically Section 11 which prohibits sublease or assignment without the consent of FLP." *Id.* ¶ 60. FLP argues that the ability of a debtor to assign a lease without lessor consent "is only possible if a debtor meets the requirements of Bankruptcy Code § 365(f)(2)"—*i.e.*, (A) proper assumption in accordance with § 365 and (B) adequate assurance of future performance by the assignee. *Id.* As discussed above, the Debtors' assumption of the Lease is timely and proper under the Bankruptcy Code and the

---

[9]    The Debtors agree to accept FLP's proposed language with the two changes in **bold underline** set forth here (with respect to the second paragraph of FLP's proposed language and based upon feedback received by advisors to the Committee): "Any disputed Additional Lease Obligations will be paid or performed promptly after the earlier of (a) the date on which Debtors, **the Committee** and FLP agree to an amount or (b) the date specified in a final and non-appealable order entered by this Court determining such amount; provided that the Debtors, **the Committee** and FLP may modify the date that any Additional Lease Obligations must be paid or performed upon mutual written agreement and without further notice or the Court's approval."

Stipulation. In the same way, the Debtors do not dispute that, when they seek to assign the Lease, the Debtors will have to file a motion and establish that the assignment complies with § 365(f)(2). And FLP maintains all of its rights to object to such assignment on any proper basis, including that the assignee cannot provide adequate assurance of future performance.[10]

### C. The Debtors Are in Advanced Discussions to Assign the Lease for Value Maximizing Proceeds.

12. Substantially contemporaneously herewith, the Debtors filed the *Supplemental Declaration of Cody Leung Kaldenberg In Further Support of the Court's Entry of an Order (I) Authorizing the Debtors to Assume a Certain Unexpired Lease and (II) Granting Related Relief* (the "Supplemental Kaldenberg Declaration").

13. As discussed in the Supplemental Kaldenberg Declaration, the Debtors expect to shortly enter into a value-maximizing assignment of the Lease to an industry assignee that will provide FLP with adequate assurance of future performance under the Lease. Assigning the Lease will deliver significant value to the Debtors' estates—value that will be erased, to the detriment of the Debtors' estates and their creditors, if the relief requested in the Motion is not approved. For the reasons described in the Supplemental Kaldenberg Declaration, the Debtors' assumption of the Lease was (as of the filing of the Motion on March 31), and has been confirmed to be (by virtue of these advanced discussions), a proper and prudent exercise of the Debtors' business judgment, made in consultation with the Committee.

---

[10] The Debtors have also provided adequate assurance of future performance under the Lease. As described in the *Declaration of Brian Whittman in Support of the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Assume a Certain Unexpired Leases and (II) Granting Related Relief* [Docket No. 6003-3], the Debtors possess the financial wherewithal to perform their Lease obligations on a go-forward basis. The Debtors have approximately $585 million of cash or cash equivalents across their multiple bank accounts and no outstanding debt obligations. As the Debtors' monthly monetary obligation under the Lease is approximately $50,000 on average, including approximately $35,000 in monthly rent, the Debtors' cash on hand is more than sufficient to enable the Debtors to continue to satisfy their monthly obligations under the Lease, including payment of monthly rent, property maintenance, insurance costs, and miscellaneous items, as applicable, in the ordinary course following the Debtors' assumption of the Lease.

4921-5384-1729.1 96859.001

### Conclusion

14. "As long as assumption of a lease appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to assume the lease should ***only be withheld*** if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *In re Senior Care Ctrs., LLC*, 607 B.R. 580, 587 (Bankr. N.D. Tex. 2019) (emphasis added) (quoting *Richmond Leasing Co. v. Cap. Bank N.A.*, 762 F.2d 1301, 1309 (5th Cir. 1985).

15. The Debtors' decision to assume the Lease was made clearly and timely to FLP when the Debtors filed the Motion on March 31 (*i.e.*, not contrary to the provisions of the Bankruptcy Code). And their decision to assume the Lease was, and continues to be, a proper exercise of their business judgment. For the reasons set forth above, the Objection should be overruled and the Motion approved.

4921-5384-1729.1 96859.001

Dated: May 9, 2025
Wilmington, Delaware

| | |
|---|---|
| */s/ Peter J. Keane* | |
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | **KIRKLAND & ELLIS LLP** |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | 333 West Wolf Point Plaza |
| 919 North Market Street, 17th Floor | Chicago, Illinois 60654 |
| P.O. Box 8705 | Telephone: (312) 862-2000 |
| Wilmington, Delaware 19801 | Facsimile: (312) 862-2200 |
| Telephone: (302) 652-4100 | Email: patrick.nash@kirkland.com |
| Facsimile: (302) 652-4400 | Email: david.seligman@kirkland.com |
| Email: ljones@pszjlaw.com | |
| tcairns@pszjlaw.com | |
| pkeane@pszjlaw.com | |
| ecorma@pszjlaw.com | -and- |
| | |
| | Allyson B. Smith (admitted *pro hac vice*) |
| | Aaron Metviner (*pro hac vice* pending) |
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone: (212) 446-4800 |
| | Facsimile: (212) 446-4900 |
| | Email: allyson.smith@kirkland.com |
| | Email: aaron.metviner@kirkland.com |

*Co-Counsel for the Debtors and Debtors in Possession*