**Exhibit B**

**Redline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING CERTAIN ASSET
PURCHASE AGREEMENTS; (II) AUTHORIZING
AND APPROVING SALES OF CERTAIN PROPERTIES OF ~~THE DBETORS~~
THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, ~~AND
ENCUMRANCES~~AND ENCUMBRANCES IN EACH CASE PURSUANT TO THE
APPLICABLE
ASSET PURCHASE AGREEMENT; AND (III) ~~APPROVING THE
ASSUMPTION~~GRANTING RELATED RELIEF**

**~~AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES IN CONNECTION
THEREWITH AS APPLICABLE; AND (IV) GRANTING RELATED RELIEF~~**

Upon the motion (the "Motion")[2] of the Debtors for entry of an order, pursuant to

sections 105(a)~~, and~~ 363~~, and 365~~ of the Bankruptcy Code, rules 2002~~, and~~ 6004~~, and 6006~~ of

the Bankruptcy Rules, and rules 2002-1 and 6004-1 of the Local Bankruptcy Rules (i) pursuant

to the terms and conditions of those certain Asset Purchase Agreements (defined below);

(ii) approving the sales of the Acquired Assets under the Asset Purchase Agreements, in each

case free and clear of all Liens, with such Liens attaching only to the sale proceeds of such Sale

Transactions with the same validity, priority, force and effect such Liens had on the applicable

Acquired Assets immediately prior to the Closing of the Sale Transactions, as applicable; and

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the Asset Purchase Agreements, as applicable.

(iii~~) approving the assumption and assignment of certain unexpired leases in connection with the Asset Purchase Agreements (as applicable); and (iv~~) granting related relief; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Referenc*e from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other or further notice need be provided; and this Court having reviewed the Motion, the Kaldenberg Declaration and having heard the statements in support of the relief requested therein at a hearing before this Court held May 14, 2025 at 2:00 p.m. (E.T.) (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND, CONCLUDED, AND DETERMINED THAT:**

A.      Findings of Fact and Conclusions of Law.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction</u>.  This Court has jurisdiction over this matter and over the property of the Debtors, including the Acquired Assets under each Asset Purchase Agreement to be sold, transferred, and conveyed to the applicable Purchaser pursuant to the respective Asset Purchase Agreement, pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these Chapter 11 Cases and the Motion in this district and Court is proper under 28 U.S.C. §§ 1408 and 1409.

C.    <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the implementation of this Order, and directs entry of judgment as set forth herein.

D.    <u>Property of the Estate</u>.  With respect to each of the Asset Purchase Agreements, the Debtors are the sole and lawful owners and lessees, as applicable, as set forth in the Asset Purchase Agreement, to the Acquired Assets to be sold to the Purchaser (in each case as applicable) pursuant to the Asset Purchase Agreements, including their interests as lessees to the extent applicable.[3]  The Debtors' right, title, and interest in and to the Acquired Assets

---

[3]  References herein to, without limitation, the "Acquired Assets," the "Purchaser," the "Seller," the "Asset Purchase Agreement," the "Sale," and the "Sale Transactions", unless otherwise specified in this Order, shall mean as defined under, and with respect to, each of the Asset Purchase Agreements approved by this Order and listed at **Schedule 1** hereto.  "Purchaser," shall be deemed to include, without limitation, all persons constituting the "Purchaser Group," as defined, as applicable, under the applicable Asset Purchase Agreement.  For the avoidance of doubt, any provision in this Order relating specifically to one Asset Purchase Agreement, standing alone, will be specified accordingly.  In the absence of such specificity, the terms and provisions of this Order shall be interpreted to apply to each and all of the Asset Purchase Agreements listed at **Schedule 1**, in each case as applicable pursuant to the terms and provisions of the applicable Asset Purchase Agreement, as if each term and provision of this Order were to be prefaced with: "As applicable to each Asset Purchase Agreement listed at **Schedule 1** hereto . . . ."

constitute property of the Sellers' estates and the Debtors' right, title, and interest thereto is vested in the Sellers' estates within the meaning of section 541(a) of the Bankruptcy Code.

E.      Statutory Bases for Relief.  The statutory bases for the relief requested in the Motion are sections 105(a), and 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6005, and Local Bankruptcy Rules 2002-1 and 6004-1.

F.      Petition Date.  On August 6, 2023 (the "Petition Date"), and continuing into August 7, 2023, each Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.      Bidding Procedures Order.  This Court entered the Bidding Procedures Order on September 15, 2023, among other things, (1) establishing and authorizing the Bidding Procedures, including for the Real Property Assets; (2) establishing procedures for noticing and determining cure amounts related to the Sellers' executory contracts and unexpired leases; (3) authorizing the Debtors to "in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, . . . exclude any Assets from the Bidding Procedures and [] sell such Assets pursuant to a private sale"; (4) authorizing the Debtors to make modifications to the Bidding Procedures in manners that maximize value; and (5) granting certain related relief.

H.      Notice.  As evidenced by the applicable affidavits of service and notices previously filed with the Court [Docket Nos. 378, 444, 601, and 5706] and based upon the representations of counsel at the Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Hearing, the Sale Transactions, and the Asset Purchase Agreements, and the assumption and assignment of the Assigned Contracts has been provided in accordance with

sections 102(1), and 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9007 to each party entitled to such notice, including, as applicable: (a) the United States Trustee for the District of Delaware; (b) the Committee and counsel thereto; (c) the Internal Revenue Service; (d) the state attorneys general for all states in which the Debtors conduct business; and (e) the landlords under the Assigned Contracts; and (f) any party that requests service pursuant to Bankruptcy Rule 2002.  The notices described above were good, sufficient, and appropriate under the circumstances, provided all interested parties with timely and proper notice of the Sale Transactions, the Asset Purchase Agreements, the Motion, the Order, and the Hearing, and no other or further notice of the Sale Transactions, the Asset Purchase Agreements, the Motion, the Order, or the Hearing is or shall be required.

I.    <u>Disclosures</u>.  The disclosures made by the Debtors in the Motion and related documents filed with the Court concerning the Asset Purchase Agreements and the Sale Transactions, and at the Hearing, were and are sufficient under the circumstances and no other or further disclosures to any party or to this Court are or shall be required.

J.    <u>Sale and Marketing Process</u>.  Based upon the evidence adduced at the Hearing and as set forth in the Kaldenberg Declaration, the Debtors and their professionals have adequately marketed and conducted the sale process for the Acquired Assets under each of the Asset Purchase Agreements.  The sale process afforded a full, fair, and reasonable opportunity for any entity or individual to make an offer or other indication of interest to purchase the Acquired Assets.  The sale process was conducted in a noncollusive, fair, and good faith manner. All potential purchasers had a full and fair opportunity to participate in the sale process and to make higher or otherwise better offers or indications of interest for the Acquired Assets.

K.    <u>Private Sales</u>.  The Debtors determined, in accordance with their business judgment, as permitted under the Bidding Procedures Order, and in consultation with the Committee, that the Asset Purchase Agreements represented the highest or otherwise best offers for the Acquired Assets.  As a result, the Debtors determined to pursue the Asset Purchase Agreements with the Purchasers, in each case, on a private sale basis to maximize the value of the Acquired Assets and, in turn, the Debtors' estates.

L.    <u>Highest or Otherwise Best Offer</u>.  After a full, fair, and robust marketing and sale process for the Acquired Assets, the Debtors' determination that the Asset Purchase Agreements constitute, in each case, the highest or otherwise best offer for the applicable Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment. The total consideration provided by the Purchasers for the Acquired Assets under each of the Asset Purchase Agreements, as applicable, represents not only a fair and reasonable offer to purchase the Acquired Assets, but also the highest or otherwise best offer received by the Debtors for the respective Acquired Assets.  With respect to each Asset Purchase Agreement approved hereby, no other person, entity or group of entities has presented a higher or otherwise better offer to the Sellers to purchase the Acquired Assets for greater economic value to the Sellers' estates than as provided by the respective Purchaser pursuant to the respective Asset Purchase Agreement.  With respect to each of the Asset Purchase Agreements, the transactions contemplated thereunder, including the total consideration to be realized by the Debtors for the applicable Acquired Assets, (i) represent the highest or otherwise best offer received by the Debtors after extensive marketing of the Acquired Assets and (ii) are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.  Therefore, the Debtors' determination that each Asset Purchase Agreement represents the highest or otherwise best offer

for the applicable Acquired Assets, and the Debtors' determination to pursue the Asset Purchase

Agreements as the value-maximizing alternative for the Acquired Assets, constitutes a valid and

sound exercise of the Debtors' business judgment. The Debtors' decision to enter into the Asset

Purchase Agreements and to consummate the transactions contemplated in each case thereunder

constitutes a proper exercise of the fiduciary duties of the Debtors and their officers and

directors. Each of the Asset Purchase Agreements provides fair and reasonable terms for the

purchase of the applicable Acquired Assets. Approval and entry of this Order, approval and

authorization for the Debtors to enter into the Asset Purchase Agreements, and the

consummation of the transactions contemplated in each case thereunder will maximize the value

of the Acquired Assets, and in turn, the Debtors' estates, and are, accordingly, in the best

interests of the Debtors, their estates, their creditors, and all other parties in interest. In making

the determination that the Asset Purchase Agreements constitute, in each case, the highest or

otherwise best offer for the applicable Acquired Assets, the Debtors complied with all applicable

consultation obligations under the Bidding Procedures and the Bidding Procedures Order,

including with respect to consultation with the Committee. There is no legal or equitable reason

to delay this Court's approval of the Asset Purchase Agreements and the consummation of the

transactions contemplated in each case by the Asset Purchase Agreements.

   M. <u>Best Interests of the Estates, Creditors, and Parties in Interest</u>.

With respect to each of the Asset Purchase Agreements, given all of the facts and circumstances

of these Chapter 11 Cases and the adequacy and fair value of the consideration provided by each

applicable Purchaser for the applicable Acquired Assets under each Asset Purchase Agreement,

the transactions under the Asset Purchase Agreements, including the Sale Transactions,

constitute a reasonable and sound exercise of the Sellers' business judgment, are in the best

interests of the Debtors, their estates, their creditors, and other parties in interest, and therefore should each be approved by this Order.

N.  <u>Sound Business Purpose</u>.  With respect to each of the Asset Purchase Agreements and the transactions, including the Sale Transactions, contemplated thereunder, the Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Acquired Assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code and pursuant to the respective Asset Purchase Agreement.  Given all of the facts and circumstances of these Chapter 11 Cases, the Debtors' entry into each of the Asset Purchase Agreements, and consummation of the transactions, including the Sale Transactions thereunder, are an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

O.  <u>Good Faith</u>.  With respect to each of the Asset Purchase Agreements and each of the Sale Transactions contemplated thereunder, the applicable Purchaser is purchasing the applicable Acquired Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  Neither such Purchaser nor any of its Affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, successors, or assigns is an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor and no common identity of incorporators, directors, managers, or controlling stockholders existed between the Debtors and each applicable Purchaser, and, therefore, each such person is entitled to the full protections of section 363(m), and otherwise has proceeded in good faith in all respects in connection with these Chapter 11 Cases in that (with respect to each

of the Asset Purchase Agreements): (1) each applicable Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing and ultimately acquiring the Acquired Assets; (2) each applicable Purchaser's offer was subject to a thorough and competitive marketing process; (3) all payments to be made by each applicable Purchaser and other agreements or arrangements entered into by each such Purchaser in connection with the Sale Transactions, under the applicable Asset Purchase Agreement, have been fully and properly disclosed; (4) no Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction; and (5) the negotiation and execution of the Asset Purchase Agreement, including the Sale Transactions contemplated thereby, were at arm's-length and in good faith. With respect to each of the Asset Purchase Agreements, there was and is no evidence of insider influence or improper conduct in any manner by any Purchaser or any of their Affiliates in connection with the negotiation of the Asset Purchase Agreements with the Debtors.

P.     No Collusion. With respect to each of the Asset Purchase Agreements and each of the Sale Transactions contemplated thereunder, the Asset Purchase Agreements and the transactions contemplated thereby, including each of the Sales, cannot be avoided under section 363(n) of the Bankruptcy Code. With respect to each of the Asset Purchase Agreements, none of the Debtors, the Purchaser, or any of their respective Affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, attorneys, financial advisors, bankers, successors, or assigns have engaged in any conduct that would cause or permit any of the Asset Purchase Agreements or the consummation of the transactions contemplated thereby, including the Sales, to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. With respect to each of the Asset Purchase Agreements, the transactions under the Asset Purchase Agreement may not be avoided,

and no damages may be assessed against the applicable Purchaser or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

Q.    <u>Fair Consideration</u>.    With respect to each of the Asset Purchase Agreements and each of the Sale Transactions contemplated thereunder, the consideration provided by the applicable Purchaser for the Acquired Assets pursuant to the respective Asset Purchase Agreement: (1) is fair and adequate, (2) negotiated at arm's-length, and (3) constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and similar laws).

R.    <u>Purchaser Not a Successor</u>.    With respect to each of the Asset Purchase Agreements, by consummating the applicable Sale Transactions pursuant to the applicable Asset Purchase Agreement, none of the Purchasers are a mere continuation of any Debtor or any Debtor's estate, and there is no continuity, no common identity, and no continuity of enterprise between the Purchasers and any Debtor.  None of the Purchasers shall be deemed to be holding themselves out as a continuation of the Debtors based on the Sale, the Asset Purchase Agreements, or this Order.  None of the Purchasers are a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity and is not an alter ego or mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors under any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of any Purchaser and the Debtors.  Neither the Purchasers nor any of their Affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume

or in any way be responsible for any obligation or liability of any Debtor (or any Affiliates thereof) or any Debtor's estate, except to the extent expressly provided in the Asset Purchase Agreement.

S.    No *Sub Rosa* Plan.  The Sale Transactions under the Asset Purchase Agreements, both individually and collectively, neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan of the Debtors. The Sales, both individually and collectively, do not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation.

T.    Power and Authority.  With respect to each of the Asset Purchase Agreements and each of the Sales, the Debtors and the applicable Purchaser, each acting by and through their existing agents, representatives, and officers, have full corporate power and authority to execute and deliver the applicable Asset Purchase Agreement and all other documents contemplated thereby.  Upon entry of this Order, the Debtors and each Purchaser require no further consents or approvals to consummate the applicable Sale contemplated by the applicable Asset Purchase Agreement, except as otherwise set forth in the applicable Asset Purchase Agreement.

U.    Binding Agreement.  With respect to each of the Asset Purchase Agreements, the applicable Asset Purchase Agreement is a valid and binding contract between the Sellers and the Purchaser and shall be enforceable pursuant to its terms.  With respect to each of the Asset Purchase Agreements, the Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession or the District of Columbia.  Each Asset Purchase Agreement and each of the Sale Transactions themselves, and the consummation

thereof, shall be, to the extent provided in each Asset Purchase Agreement, specifically enforceable against and binding upon (without posting any bond) the applicable Purchaser, the Debtors, and any chapter 7 or chapter 11 trustee or receiver or trustee in bankruptcy appointed with respect to any of the Debtors, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.  With respect to each of the Asset Purchase Agreements, the terms and provisions of each Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown) and holders of equity interests in any Debtor, any holders of claims against or liens on all or any portion of the applicable Acquired Assets, ~~all counterparties to the applicable Assigned Contracts,~~ each applicable Purchaser, and each of their respective affiliates, successors, and assigns (*provided*, affiliates of the Purchaser shall be bound only to the extent set forth in the applicable Asset Purchase Agreement), and any affected third parties, including, without limitation, all Persons asserting Adverse Interests (as defined below) (except to the extent expressly set forth in the applicable Asset Purchase Agreement) (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, or receiver under the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under the Bankruptcy Code or any other law with respect to any of the Bound Parties, and all such terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary, and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, receiver, party, entity, or other fiduciary.  The provisions of this Order and the terms and provisions of the Asset Purchase Agreement shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors, dismissing these

chapter 11 cases, or converting these chapter 11 cases to cases under chapter 7. With respect to each of the Asset Purchase Agreements, the rights and interests granted pursuant to this Order and the Asset Purchase Agreement shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns, including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to perform under the Asset Purchase Agreement and this Order without the need for further order of the Court.

V.    <u>Valid Transfer</u>.  With respect to each of the Asset Purchase Agreements and each of the Sale Transactions contemplated thereunder, the transfer, as applicable, of the Acquired Assets to each Purchaser will be a legal, valid, and effective transfer of the Acquired Assets, and vests or will vest the Purchaser with all right, title, and interest of the Sellers to the Acquired Assets free and clear of all Adverse Interests (as defined below) (except to the extent expressly set forth in the Asset Purchase Agreement) accruing, arising or relating thereto any time prior to the Closing Date (as defined in the applicable Asset Purchase Agreement), unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement.

W.    <u>Free and Clear Sale</u>.  With respect to each of the Asset Purchase Agreements and each of the Sale Transactions contemplated thereunder, the Debtors may sell the Acquired Assets free and clear of all Adverse Interests against the Debtors, their estates, or the Acquired Assets (except to the extent specifically set forth in the applicable Asset Purchase Agreement), because, in each case, one or more of the standards set forth in section 363(f)(1)–(5)

of the Bankruptcy Code has been satisfied.  Upon entry of this Order, the Debtors are authorized

upon the applicable Closing to transfer all of their right, title and interest in and to the applicable

Acquired Assets free and clear of any and all claims (as such term is defined by section 101(5) of

the Bankruptcy Code), liabilities (including any liability that results from, relates to or arises out

of tort or any other product liability claim), interests and matters of any kind and nature

whatsoever, including, without limitation, hypothecations, mortgages, security deeds, deeds of

trust, debts, levies, indentures, restrictions (whether on voting, sale, transfer, disposition or

otherwise), leases, licenses, easements, rights of way, encroachments, instruments, preferences,

priorities, security agreements, conditional sales agreements, title retention contracts and other

title retention agreements and other similar impositions, options, judgments, offsets, rights of

recovery, rights of preemption, rights of setoff, profit sharing interest, other third party rights,

other impositions, imperfections or defects of title or restrictions on transfer or use of any nature

whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for

exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor

liability claims, substantial continuation claims, COBRA claims, withdrawal liability claims,

environmental claims, claims under or relating to any employee benefit plan, ERISA affiliate

plan, or ERISA (including any pension or retirement plan), WARN Act claims or any claims

under state or other laws of similar effect, tax claims (including claims for any and all foreign,

federal, state, provincial and local taxes, including, but not limited to, sales, income, use or any

other type of tax), escheatment claims, reclamation claims, obligations, liabilities, demands, and

guaranties, and other encumbrances relating to, accruing, or arising any time prior to the

applicable Closing Date, duties, responsibilities, obligations, demands, commitments,

assessments, costs, expense, losses, expenditures, charges, fees, penalties, fines, contributions,

premiums, encumbrances, guaranties, pledges, consensual or nonconsensual liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code), statutory liens, real or personal property liens, mechanics' liens, materialman's liens, warehouseman's liens, tax liens, security interests, charges, options (including in favor of third parties), rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, rights of first refusal, rights and restrictions of any kind or nature whatsoever against the Debtors or the applicable Acquired Assets, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims, or claims for taxes of or against the Debtors, and any derivative, vicarious, transferee or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession, or the District of Columbia), whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability or substantial continuation liability, including, without limitation, that each Purchaser is in any way a successor, successor-in-interest, continuation or substantial continuation of the Debtors or their business,

arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the applicable Acquired Assets, the operation of the Debtors' respective businesses at or before the effective time of the closing pursuant to the applicable Asset Purchase Agreement, or the transfer of the Debtors' interests in the applicable Acquired Assets to the applicable Purchaser, and all applicable Excluded Liabilities (collectively, "Adverse Interests"), as, and to the extent, provided for in the Asset Purchase Agreement because in each case one or more of the standards set forth in section 363(f)(1)—(5) of the Bankruptcy Code has been satisfied. Except as otherwise expressly provided in each Asset Purchase Agreement or this Order, such Adverse Interests on the applicable Acquired Assets shall attach to the proceeds for such Acquired Assets allocated to the Debtors in the order of their priority, with the same validity, force and effect which they have against the applicable Acquired Assets immediately prior to the applicable Closing, subject to any claims and defenses the Debtors may possess with respect to such Adverse Interests.  Those holders of Adverse Interests against the Acquired Assets who did not object or who withdrew their objections to the applicable Asset Purchase Agreement or the Motion are deemed to have consented to the transactions contemplated by the applicable Asset Purchase Agreement pursuant to section 363(f)(2) of the Bankruptcy Code and shall be forever barred from pursuing or asserting such Adverse Interests against the applicable Purchaser or any of its respective assets, property, affiliates, successors, assigns, or the applicable Acquired Assets.

X. Assigned Contracts Under Saia Asset Purchase Agreement.  With respect to the Saia Asset Purchase Agreement and the Sale Transactions contemplated thereunder, the Sellers seek authority to assume, assign, and sell to the Purchasers the unexpired leases that are to be assumed, assigned, and sold (Calexico, CA) or (having already been assumed pursuant to

the February 2024 Assumption Order (defined below)) assigned and sold (Deer Park, NY and Orlando, FL) to the Purchaser as more particularly set forth in the Saia Asset Purchase Agreements (collectively, the "Assigned Contracts").  The Debtors have demonstrated that the assumption, assignment and sale, or assignment and sale, as applicable, of the Assigned Contracts under the Saia Asset Purchas Agreements are an exercise of their sound business judgment and are in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts to be assumed, assigned, and sold, or assigned and sold, as applicable, to the Purchaser under the Saia Asset Purchase Agreement are an integral part of the Saia Asset Purchase Agreement and the Sale Transactions thereunder and, accordingly, such assumption, assignment, and sale, or assignment and sale, as applicable, are reasonable and enhance the value of the Debtors' estates.

Y. Cure Notice.  The Debtors filed that certain *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases Associated With the Non-Rolling Stock Assets* on October 26, 2023 [Docket No. 968] (the "Cure Notice") pursuant to which the Sellers identified the dollar amount, if any, that the Sellers assert is necessary to be paid to cure all defaults, if any, under their executory contracts and unexpired leases based on the Sellers' books and records (the "Seller Asserted Cure Amount") and served the Cure Notice on the non-Debtor counterparties to the executory contracts and unexpired leases listed thereon in accordance with the Bidding Procedures Order.  Except to the extent the Debtors agreed to an extension, pursuant to the Bidding Procedures Order and the Cure Notice, contract counterparties to the Sellers' executory contracts and unexpired leases were required to file objections (each, a "Cure Objection"), if any, to the Seller Asserted Cure Amount by no later than November 9, 2023 at 5:00 p.m. (E.T.).  The Cure Notice and the Bidding Procedures Order provided that in

the absence of a timely filed Cure Objection, the cure costs set forth in the Cure Notice (each, a "Cure Cost" and, collectively, the "Cure Costs") relating to the period prior to the objection deadline would be controlling and fixed, notwithstanding anything to the contrary in any Assigned Contract, or any other document, and the contract counterparty to any Assigned Contract shall be deemed to have consented to the Cure Costs set forth in the Cure Notice.

Z. Stipulation With Calexico, CA Lessor.  With respect to the Calexico, CA lease to be assumed by the Debtors, and assigned and sold to the Purchaser under the Saia Asset Purchase Agreement, the Debtors and Lessor Jay F. Mannino Trust are party to the *Fifth Joint Stipulation Extending The Deadline to Assume or Reject a Certain Nonresidential Real Property Lease Under Section 365(d)(4) of the Bankruptcy Code* dated as of March 13, 2025 [Docket No. 5885] (the "Mannino Stipulation").  Pursuant to the Mannino Stipulation, the Debtors' deadline to assume the Lease (as defined therein) is June 30, 2025, *provided* that the "[t]he extension of time granted pursuant to [the Mannino] Stipulation is without prejudice to the Debtors' rights pursuant to section 365 of the Bankruptcy Code . . . to seek to assume, reject, or assume and assign the Lease at any time prior to the Extended Deadline [(as defined therein)]" (including pursuant to the Motion).

AA. With respect to the Assigned Contracts under the Saia Asset Purchase Agreement, the Debtors have paid the Cure Costs, as set forth in the *Order (A) Authorizing the Debtors to Assume Certain Unexpired Leases and (B) Granting Related Relief* [Docket No. 2385] (the "February 2024 Assumption Order") for the Deer Park, NY ($31,883) and Orlando, FL ($59,068) leases in connection with the Debtors' assumption of such leases pursuant to the February 2024 Assumption Order, and the Debtors will pay at Closing $25,000.00 in Cure Costs for the Calexico, CA lease in accordance with the Cure Notice and the *Notice to Contract*

*Counterparties to Potentially Assumed Executory Contracts* filed February 3, 2025 [Docket No. 5600] (listing the Cure Costs at Schedule A thereof for the Calexico, CA lease as $25,000.00 (no change from as set forth in the Cure Notice) and reserving all of the Debtors' rights regarding assumption and assignment of the leases listed therein (including to seek to assume and assign the Calexico, CA lease pursuant to the Motion).

BB. Adequate Assurance of Future Performance.  With respect to the Saia Asset Purchase Agreement, the Debtors have sent , or will send, the counterparty to the Assigned Contracts evidence that the Purchaser has the ability to perform under the Assigned Contract and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code.  Such contract counterparties to Assigned Contracts that failed to file an objection to the adequate assurance of future performance in advance of the Hearing are forever barred from objecting to the assumption, assignment, and sale of such Assigned Contract on the grounds of a failure to provide adequate assurance of future performance.  Based on the evidence adduced at the Hearing and based on the record in these Chapter 11 Cases, to the extent necessary, the Sellers have satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code, in connection with the assumption, assignment, and sale of the Assigned Contracts under the Saia Asset Purchase Agreement and: (1) conditioned on the assumption, assignment, and sale of the applicable Assigned Contract for which Cure Costs have not yet been paid (Calexico, CA), the Debtors will cure, in accordance with the terms set forth in this Order, paragraph 39 of the Bidding Procedures Order, and the Asset Purchase Agreement, any default existing prior to the date of the assumption and assignment of such Assigned Contract, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code (which shall be in

~~the amount of $25,000.00 of Cure Costs for the Calexico, CA lease), (2) conditioned on the assumption, assignment, and sale of the applicable Assigned Contract for which Cure Costs have not yet been paid (Calexico, CA), the Debtors have provided or will provide compensation or adequate assurance of compensation to the lease counterparty for any actual pecuniary loss to such party resulting from a default prior to the date of assumption, assignment, and sale of such Assigned Contract, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (3) the Purchaser has provided or will provide adequate assurance of future performance of and under the applicable Assigned Contracts, within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code based on the evidence adduced at the Hearing.~~

X.    ~~CC.~~ <u>Single, Integrated Transaction</u>.  With respect to each of the Asset Purchase Agreements and each of the Sale Transactions contemplated thereunder, entry of this Order approving the Asset Purchase Agreements and all provisions of this Order and the Asset Purchase Agreements are a necessary condition precedent to the applicable Purchaser consummating the applicable Sale Transactions.  The provisions of this Order and the Asset Purchase Agreement, in each case as applicable, and the transactions contemplated by this Order and the Asset Purchase Agreements, including (in each case as applicable) the Sales of the Acquired Assets to the applicable Purchasers, are, with respect to each respective Asset Purchase Agreement, inextricably linked and technically and collectively constitute a single, integrated transaction.

Y.    ~~DD.~~ <u>Consummation is Legal, Valid and Authorized</u>.  With respect to each of the Asset Purchase Agreements and each of the Sale Transactions contemplated thereunder, the consummation of the applicable transactions, including the Sale Transactions, pursuant to

each Asset Purchase Agreement is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), and 363(m), 365(b), and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with.

Z.     EE. Legal and Factual Bases.  The legal and factual bases set forth in the Motion, the Kaldenberg Declaration, and at the Bidding Procedures Hearing and the Hearing establish just cause for the relief granted herein.

AA.     FF. Waiver of Bankruptcy Rules 6004(h) and 6006(d).  With respect to each of the Asset Purchase Agreements, the Debtors have demonstrated (i) good, sufficient, and sound business purposes and justifications for approving each Asset Purchase Agreement and the transactions, including the Sale Transactions, contemplated thereunder and (ii) compelling circumstances for the immediate approval and consummation of the transactions contemplated by each Asset Purchase Agreement and all other ancillary documents for each Sale transaction outside of (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (b) a chapter 11 plan, in that, among other things, the immediate consummation of the Sales and all transactions contemplated thereby and by the Asset Purchase Agreements are necessary and appropriate to maximize the value of the Debtors' estates, and the Sales will provide the means for the Debtors to maximize distributions to their creditors.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the transactions contemplated by each of the Asset Purchase Agreements and this Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**Section 1.**      **Approval of the Motion**

1.1      The relief requested in the Motion is granted as set forth herein.

1.2      Any and all objections and responses to the entry of this Order or to the relief granted herein that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.  All persons and entities notified or deemed notified of the relief sought in the Motion and set forth in this Order that failed to timely object thereto are deemed to consent to such relief.

1.3      Notice of the Motion, the Bidding Procedures Order, the Bidding Procedures Hearing, the Hearing, the Sale Transactions, the Asset Purchase Agreements, ~~the Cure Notice, the February 2024 Assumption Order,~~ and the Debtors' marketing process for the Acquired Assets was, in each case, fair and equitable under the circumstances and complied in all respects with section 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Local Bankruptcy Rules 2002-1 and 6004-1.

1.4      The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, and the record of the Hearing, are incorporated herein by reference.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bidding Procedures Order, and the Bidding Procedures Order is a final order of the Court, has not been vacated, withdrawn, rescinded, or amended, and remains in full force and effect.

**Section 2.**   **Approval of the Sale of the Acquired Assets**

2.1     Each of the Asset Purchase Agreements set forth at **Schedule 1** hereto, in each case as filed as an exhibit to this Order, including all other ancillary documents, and all of the terms and conditions thereof, in each case as applicable, and the Sale and related transactions contemplated thereby, in each case as applicable, are hereby approved in all respects.

2.2     With respect to each of the Asset Purchase Agreements, pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Debtors into each of the Asset Purchase Agreements is hereby authorized and approved as a valid exercise of the Debtors' business judgment.  Pursuant to sections 105, and 363, and 365 of the Bankruptcy Code, the Debtors are authorized to continue performance under and make all payments required by each Asset Purchase Agreement and all other ancillary documents as and when due thereunder without further order of this Court.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives and officers, are authorized, without further order of this Court, to take any and all actions necessary or appropriate to: (a) consummate and close the applicable Sale and the transactions contemplated by the Asset Purchase Agreement, and pursuant to and in accordance with the terms and conditions of, the applicable Asset Purchase Agreement; (b) transfer and assign all right, title, and interest to all assets, property, licenses, and rights to be conveyed in accordance with the terms and conditions of the applicable Asset Purchase Agreement; and (c) execute and deliver, perform under, consummate, and implement the applicable Asset Purchase Agreement, the transactions thereunder, and all additional instruments and documents that may be reasonably necessary or desirable to implement the applicable Asset Purchase Agreement and the applicable transactions thereunder, including the Sale Transactions, including any other ancillary documents, deeds,

assignments, stock powers, transfers of membership interests and other instruments of transfer, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the applicable Asset Purchase Agreement and such other ancillary documents. Neither the Purchaser nor the Sellers shall have any obligation to proceed with the Closing under the applicable Asset Purchase Agreement until all conditions precedent to its obligations to do so have been met, satisfied, or waived in accordance with the terms of the applicable Asset Purchase Agreement.

2.3     With respect to each of the Asset Purchase Agreements, the Debtors are authorized to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Unit (as defined in section 101(27) of the Bankruptcy Code), any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions, including the Sale Transactions, contemplated by the applicable Asset Purchase Agreement, any related agreements and this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Units or as any of the officers of the Debtors may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

2.4     This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Adverse Interests against any Debtor (in each case as applicable), any holders of Adverse Interests against or on all or any portion of the Acquired Assets (in each case as applicable), all counterparties to any executory contract or unexpired lease of the Debtors, each Purchaser (including the Purchaser Entities), any trustees, examiners, receiver or other fiduciary under any section of the Bankruptcy

Code or similar law, if any, subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 of the Bankruptcy Code of any of the Debtors' cases, and any filing agents, filing officers, title agents, title companies, registrars of deeds, administrative agencies, governmental departments, recording agencies, secretaries of state, federal, state, foreign, provincial, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets (in each case as applicable), and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions approved hereby. With respect to each of the Asset Purchase Agreements, the terms and provisions of each Asset Purchase Agreement and this Order shall inure to the benefit of the Debtors, their estates and their creditors, the applicable Purchaser and its Affiliates, and any other affected third parties, including all persons asserting any Adverse Interests in the Acquired Assets to be sold pursuant to the Asset Purchase Agreement, in each case as applicable, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding. With respect to each of the Asset Purchase Agreements, a certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel, effective upon the applicable Closing Date, any Adverse Interests of record, as provided herein, except with respect to Assumed Liabilities (as applicable) and Permitted Encumbrances (as applicable); *provided* that, for the avoidance of doubt, the provisions of this Order shall be self-executing. This Order shall survive any dismissal or

conversion of any of these Chapter 11 Cases or any dismissal of any subsequent chapter 7 cases. With respect to each of the Asset Purchase Agreements, nothing contained in any chapter 11 plan of reorganization or liquidation confirmed in any of these Chapter 11 Cases, any order confirming any such chapter 11 plan of reorganization or liquidation or any order approving the wind-down or dismissal of any of these Chapter 11 Cases or any subsequent chapter 7 cases (including any discharge of claims thereunder) or otherwise shall alter, conflict with, or derogate from the provisions of this Order or the applicable Asset Purchase Agreement, and to the extent of any conflict or derogation between this Order or the applicable Asset Purchase Agreement and such future plan or order, the terms of this Order and the applicable Asset Purchase Agreement shall control.

**Section 3.      <u>Sale and Transfer of Assets</u>**

3.1      With respect to each of the Asset Purchase Agreements, pursuant to sections 105(a), 363(b), <u>and </u>363~~(f), 365(b), and 365~~(f) of the Bankruptcy Code, upon the applicable Closing Date and thereafter pursuant to the applicable Asset Purchase Agreement, and pursuant to and except to the extent expressly set forth in the applicable Asset Purchase Agreement, the applicable Acquired Assets shall be transferred free and clear of all applicable Adverse Interests (as set forth in the Asset Purchase Agreement); *provided*, *however*, that solely to the extent expressly set forth in the applicable Asset Purchase Agreement, Adverse Interests shall not include Assumed Liabilities (as defined in the applicable Asset Purchase Agreement) and Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement), with all such Adverse Interests to attach to the proceeds of the applicable Sale in the order of the priority of such Adverse Interests and with the same validity, force, and effect which such Adverse Interests had against the applicable Acquired Assets prior to the entry of this Order, and subject

to any claims and defenses the Debtors may possess with respect thereto. Those holders of Adverse Interests who did not timely object (or who ultimately withdrew their objections, if any) to the applicable Sale are deemed to have consented to such Sale being free and clear of their Adverse Interests pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Adverse Interests who did timely object to the applicable Sale could be compelled in a legal or equitable proceeding to accept money satisfaction of such Adverse Interests pursuant to section 363(f)(5) of the Bankruptcy Code, or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Adverse Interests that constitute interests in the Acquired Assets, if any, attach solely to the proceeds of the applicable Sale ultimately attributable to the property in which they have an interest, in each case with the same validity, force and effect that such holders had prior to the entry of this Order, and subject to any claims and defenses of the Debtors. Neither the process by which any of the Acquired Assets were sold, nor the results of any such Sales in the Asset Purchase Agreements (as opposed to selling the Acquired Assets to any other party), create claims of any kind against either the Purchasers or the Debtors, including, without limitation, claims of any kind under any of the Debtors' executory contracts or unexpired leases, and no claims arising out of the sale process or any Sale itself shall be brought against the Purchasers or the Debtors.

3.2    With respect to each of the Asset Purchase Agreements, conditioned upon the occurrence of the applicable Closing Date (in each case as applicable and defined under the applicable Asset Purchase Agreement), this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Acquired Assets or a bill of sale transferring all of the Debtors' right, title, and interest in such Acquired Assets to the Purchaser pursuant to the terms and allocations set forth in the applicable

Asset Purchase Agreement. With respect to each of the Asset Purchase Agreements and for the avoidance of doubt, the Excluded Assets set forth in the Asset Purchase Agreement are not included in the Acquired Assets (under such Asset Purchase Agreement), and the Excluded Liabilities set forth in the Asset Purchase Agreement are not Assumed Liabilities (under such Asset Purchase Agreement), and the Purchaser is not acquiring such Excluded Assets or assuming such Excluded Liabilities.

3.3     With respect to each of the Asset Purchase Agreements, all persons and entities (including, without limitation, those persons and entities set forth in section 2.4 hereof) are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the applicable Acquired Assets to the applicable Purchaser in accordance with the applicable Asset Purchase Agreements and this Order.

3.4     Subject to the terms and conditions of this Order, in each case as applicable to each Asset Purchase Agreement, the transfer of the Acquired Assets to the Purchaser pursuant to the Asset Purchase Agreement and the consummation of the transactions thereunder, including the Sale, and any related actions contemplated thereby do not require any consents other than as specifically provided for in the Asset Purchase Agreement, constitute a legal, valid, and effective transfer to the Purchaser of all of the Debtors' right, title, and interest in the Acquired Assets, notwithstanding any requirement for approval or consent by any person, and shall vest the Purchaser with the right, title, and interest of the Sellers in and to the Acquired Assets as set forth in the Asset Purchase Agreement, as applicable, free and clear of all Adverse Interests of any kind or nature whatsoever (except to the extent expressly set forth in the Asset Purchase Agreement). This Order is and shall be effective as a determination that, on the applicable Closing Date, all Adverse Interests, other than Assumed Liabilities (as applicable) and

Permitted Encumbrances (as applicable), whatsoever existing as to the Acquired Assets prior to the applicable Closing Date, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effective; *provided*, *however*, that such Adverse Interests shall attach to the proceeds of the applicable Sales in the order of their priority, with the same validity, force and effect which they had before the applicable Closing Date against such Acquired Assets.

3.5     To the maximum extent permitted under applicable law, in each case as applicable to each Asset Purchase Agreement, the Purchaser or its Affiliates, to the extent provided by the Asset Purchase Agreement, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Sellers constituting Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are directed to be, transferred to the Purchaser or its Affiliates as of the Closing Date as and to the extent provided by the applicable Asset Purchase Agreement.  With respect to each of the Asset Purchase Agreements, to the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may revoke or suspend any grant, permit, or license relating to the operation of the Acquired Assets sold, transferred, assigned, or conveyed to the applicable Purchaser or its Affiliates on account of the filing or pendency of these Chapter 11 Cases or the consummation of the applicable Sale.  With respect to each of the Asset Purchase Agreements, each and every federal, state, provincial, foreign and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale set forth in each Asset Purchase Agreement.  With respect to each of the Asset Purchase Agreements, this Order is deemed to be in recordable form sufficient

to be placed in the filing or recording system of each and every federal, state, provincial, foreign or local government agency, department, or office.  With respect to each of the Asset Purchase Agreements, to the greatest extent available under applicable law, each Purchaser shall be authorized to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the applicable Acquired Assets.

3.6    With respect to each of the Asset Purchase Agreements, all persons or entities that are presently, or on the applicable Closing Date may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed (wherever located) to the Purchaser pursuant to the applicable Asset Purchase Agreement are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

3.7    With respect to each of the Asset Purchase Agreements, effective upon the Closing Date and except to the extent expressly included in Assumed Liabilities (as defined in the applicable Asset Purchase Agreement) or Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement) or as otherwise expressly provided in the applicable Asset Purchase Agreement, all persons and entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, contract counterparties, customers, licensors, litigation claimants, employees and former employees, dealers and sale representatives, and trade or other creditors holding Adverse Interests against the Debtors or the Acquired Assets, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets or the transfer of the

Acquired Assets, hereby are forever barred and estopped from asserting any Adverse Interests relating to the Debtors, the Acquired Assets, or the transfer of the Acquired Assets against the Purchaser and its Affiliates or their respective assets or property (including the Acquired Assets), or the Acquired Assets transferred to the Purchaser (it being understood that such Adverse Interests shall attach solely to the proceeds of the applicable Sale at the applicable Closing), including, without limitation, taking any of the following actions with respect to or based on any Adverse Interest relating to the Debtors, the Acquired Assets or the transfer of the Acquired Assets (other than to the extent expressly set forth in the Asset Purchase Agreement): (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its Affiliates or their respective assets or properties (including the Acquired Assets); (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Purchaser, its Affiliates or their respective assets or properties (including the Acquired Assets); (c) creating, perfecting, or enforcing any Adverse Interest against the Purchaser or its Affiliates or their respective assets or properties (including the Acquired Assets); (d) asserting an Adverse Interest as a setoff (except for setoffs asserted prior to the Petition Date), or right of subrogation of any kind against any obligation due the Purchaser or Affiliates; (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof; (f) revoking, terminating, failing, or refusing to renew any license, permit, or authorization to operate any business in connection with the Acquired Assets or conduct any of the businesses operated with respect to such assets; or (g) interfering with, preventing, restricting, prohibiting or otherwise enjoining the consummation of the Sale.  No such persons or entities shall assert or pursue against the Purchaser or its Affiliates, assets, or

property any such Adverse Interest directly or indirectly, in any manner whatsoever, except to the extent expressly included in Assumed Liabilities (as defined in the applicable Asset Purchase Agreement) or Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement) or as otherwise expressly provided in the applicable Asset Purchase Agreement.

3.8     With respect to each of the Asset Purchase Agreements, this Order shall be effective as a determination that, as of the applicable Closing Date (as defined in the applicable Asset Purchase Agreements), except as expressly set forth in the applicable Asset Purchase Agreement, (i) no claims other than the Assumed Liabilities and Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement) will be assertable against the applicable Purchaser or any of its respective assets or property (including the Acquired Assets), (ii) the Acquired Assets shall have been transferred to the applicable Purchaser (or its designee) free and clear of all liens, claims, interests, and encumbrances, subject only to the Assumed Liabilities (as defined in the applicable Asset Purchase Agreement) and Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement), and (iii) the conveyances described herein and in each Asset Purchase Agreement, as applicable, have been effected as of the applicable Closing Date (as defined in each of the Asset Purchase Agreements).

3.9     With respect to each of the Asset Purchase Agreements, if any person or entity that has filed financing statements, mortgages, mechanic's claims, *lis pendens*, or other documents or agreements evidencing claims against the Debtors or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing Date (as defined in each of the Asset Purchase Agreements, as applicable), in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all liens, claims,

interests, and encumbrances that the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then only with respect to the Acquired Assets that are purchased by the applicable Purchaser (or its designee) pursuant to the Asset Purchase Agreement and this Order, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets, (b) the Purchaser (or its designee) is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, interests, and encumbrances against the Purchaser (except with respect to Assumed Liabilities and Permitted Encumbrances) and the Acquired Assets as of the applicable Closing Date, and (c) upon consummation of the Sale, the Purchaser (or its designee) may seek, as necessary, in this Court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all liens, claims, interests, and encumbrances that are extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the applicable Acquired Assets.  With respect to each of the Asset Purchase Agreements, notwithstanding the foregoing, the provisions of this Order shall be self-executing and neither the Debtors nor the Purchaser (or its designee) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

3.10    With respect to each of the Asset Purchase Agreements, the Purchaser and its Affiliates and their respective successors, assigns, nominees, designees, members, partners, principals, and shareholders (or equivalent) (collectively, and as applicable, the "Purchaser Entities") are not and shall not be (a) deemed a "successor" in any respect to the Debtors or their

estates as a result of the consummation of the transaction contemplated by the Asset Purchase Agreement or any other event occurring in the Debtors' Chapter 11 Cases under any theory of law or equity, including, without limitation, successor or transferee liability, (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors or (f) deemed to be an alter ego or mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors, in each case of the foregoing, under any theory of law or equity. With respect to each of the Asset Purchase Agreements, each Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except to the extent expressly provided in the Asset Purchase Agreement, including, solely to the extent set forth in the Asset Purchase Agreement, with respect to Assumed Liabilities (as defined in the applicable Asset Purchase Agreement) and the Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement). With respect to each of the Asset Purchase Agreements, except to the extent otherwise set forth in the Asset Purchase Agreement, including, solely to the extent expressly set forth in the Asset Purchase Agreement, with respect to Assumed Liabilities (as defined in the applicable Asset Purchase Agreement), Permitted Encumbrances (as defined in the applicable Asset Purchase Agreement), and the Purchaser's obligations with respect to the transfer of the Acquired Assets ~~and the Assigned Contracts~~ to the Purchaser under the Asset Purchase Agreement, consummation of the applicable Sale Transactions shall not result in (i) the

Purchaser, or the Acquired Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) the Purchaser, or the Acquired Assets, having any liability whatsoever with respect to, or being required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Adverse Interests or Excluded Liability, or (iii) the Purchaser, or the Acquired Assets, having any liability or responsibility to the Debtors, in each case except to the extent expressly set forth in the applicable Asset Purchase Agreement.

3.11    With respect to each of the Asset Purchase Agreements, without limiting the effect or scope of the foregoing, except to the extent expressly provided in the applicable Asset Purchase Agreement, as of the Closing Date (as defined in each of the Asset Purchase Agreements, as applicable), the Purchaser shall have no successor or vicarious liabilities of any kind or character with respect to the applicable Acquired Assets, and such Acquired Assets shall be transferred free and clear of all Adverse Interests (except for Assumed Liabilities (as applicable) and Permitted Encumbrances (as applicable)), including, but not limited to:  (a) any employment, labor, or collective bargaining agreements or the termination thereof; (b) any pension, health, welfare, compensation, multiemployer plan (as such term is defined in connection with the Employee Retirement Income Security Act of 1974, as amended), or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan or multiemployer plan of or related to any of the Debtors or any of the Debtors' Affiliates or predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any claims of any former employees of the Debtors; (f) any employee, workers' compensation, occupational disease or unemployment

or temporary disability related law; and (g) any claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended; (ii) the Fair Labor Standards Act; (iii) Title VII of the Civil Rights Act of 1964; (iv) the Federal Rehabilitation Act of 1973; (v) the National Labor Relations Act; (vi) the Worker Adjustment and Retraining Notification Act of 1988; (vii) the Age Discrimination in Employee Act of 1967, as amended; (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985; (x) the Multiemployer Pension Plan Amendments Act of 1980; (xi) state, provincial, foreign, and local discrimination laws; (xii) state, provincial, foreign, and local unemployment compensation laws or any other similar state and local laws; (xiii) state workers' compensation laws; (xiv) any other state, provincial, foreign, local or federal employee benefit laws, regulations or rules or other state, provincial, foreign, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with any or all Debtors or any predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state or federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state, provincial, foreign, or local tax statutes, regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xx) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising,

accruing or payable under, out of, in connection with, or in any way relating to, the applicable Acquired Assets or the applicable Asset Purchase Agreement except to the extent otherwise set forth in this Order or the applicable Asset Purchase Agreement.

3.12    With respect to each of the Asset Purchase Agreements, except as expressly set forth in the applicable Asset Purchase Agreement, including with respect to Assumed Liabilities (as applicable) and Permitted Encumbrances (as applicable), it is expressly ordered and directed that the Sale of the Acquired Assets is free and clear of any and all unemployment compensation taxes and any related contribution and reimbursement obligations of the Debtors, and all state tax and labor agencies shall treat the applicable Purchaser as a "new employer" in all respects and for any applicable tax rates and contribution and reimbursement obligations and "experience rates" as of and after the applicable Closing Date (and each state unemployment compensation law agency or department shall be prohibited from treating the applicable Purchaser as a successor of the Debtors for any contribution rates, benefit charges, benefit rates, experience rates or similar charges or taxes).

3.13    With respect to each of the Asset Purchase Agreements, subject to the terms and provisions of the applicable Asset Purchase Agreement, the Purchaser is hereby authorized in connection with the consummation of the applicable Sale to transfer or direct the transfer of any or all of the applicable Acquired Assets ~~and the applicable Assigned Contracts~~ (or any rights to acquire the Acquired Assets ~~and the Assigned Contracts~~) to its nominees, and/or direct and indirect subsidiaries, in a manner as it, in its sole and absolute discretion, deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Acquired Assets ~~or the rights under any Assigned Contracts~~ to its direct and indirect subsidiaries with all of the rights and protections accorded under this Order and the applicable Asset

Purchase Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the applicable Purchaser to effectuate any of the foregoing.

**Section 4. Assumption and Assignment Under the Saia Asset Purchase Agreement**

4.1 With respect to the Saia Asset Purchase Agreement, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, and subject to Paragraphs 4.6, 4.17 and 4.18 hereof, the Sellers' assumption, assignment, and sale, or assignment and sale, as applicable, to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement of the Assigned Contracts, is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Subject to Paragraphs 4.6, 4.17 and 4.18 hereof, the Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume, assign, and sell, or assign and sell, as applicable, to the Purchaser, effective upon the Closing Date of the Sale of the Acquired Assets pursuant to the Saia Asset Purchase Agreement, the Assigned Contracts free and clear of all Adverse Interests of any kind or nature whatsoever (except to the extent expressly set forth in the Saia Asset Purchase Agreement) and execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser.

4.2 With respect to the Saia Asset Purchase Agreement, upon the date that each Assigned Contract is assumed, assigned, and sold, or assigned and sold, as applicable, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract under the Saia Asset Purchase Agreement.

4.3 With respect to the Saia Asset Purchase Agreement, the Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract that is assumed, assigned and sold, or assigned and sold, as applicable, to the Purchaser pursuant to the Saia Asset Purchase Agreement (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, or requires any counterparty to consent to assignment.

4.4 Subject to paragraphs 4.6, 4.17 and 4.18 hereof, the Purchaser under the Saia Asset Purchase Agreement has provided or will provide adequate assurance of future performance for the Assigned Contracts (as defined in the Saia Asset Purchase Agreement) within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

4.5 Upon the Closing Date under the Saia Asset Purchase Agreement, the contract counterparties to the Assigned Contracts (as defined in the Saia Asset Purchase Agreement) have been or will promptly be paid the Cure Costs (as set forth above) and are hereby enjoined from taking any action against the Purchaser or the Acquired Assets with respect to any claim for cure.

4.6 Subject to paragraph 39 of the Bidding Procedures Order, any executory contract or unexpired lease for which there is an unresolved adequate assurance objection shall not be assumed, assigned and sold, or assigned and sold, as applicable, unless (i) all such objections relating to such contract or lease are withdrawn, (ii) the contract or lease counterparty and the Purchaser consents, or (iii) the Court subsequently orders otherwise.

4.7 With respect to the Saia Asset Purchase Agreement, the payment of the applicable Cure Costs effected (with respect to the Deer Park, NY and Orlando, FL leases) or

shall effect (with respect to the Calexico, CA lease) a cure of all defaults existing as of the date that the Assigned Contracts were or (with respect to the Calexico, CA lease) are assumed and compensated or (with respect to the Calexico, CA lease) shall compensate for any actual pecuniary loss to such contract counterparty resulting from such default.

4.8 With respect to the Saia Asset Purchase Agreement, pursuant to section 365(f) of the Bankruptcy Code, the assignment and sale by the Debtors to the Purchaser of the Assigned Contracts, under the Saia Asset Purchase Agreement, shall not constitute a default thereunder. Upon the Closing Date under the Saia Asset Purchase Agreement, the Debtors and the Purchaser shall not have any further liabilities to the contract counterparties to such Assigned Contracts, other than the Purchaser's obligations under such Assigned Contracts that become due and payable on or after the date that such Assigned Contracts are assumed, assigned, and sold, or assigned and sold, as applicable.

4.9 Any provisions in any Assigned Contracts under the Saia Asset Purchase Agreement that prohibit or condition the assumption, assignment and sale, or assignment and sale, as applicable, of such Assigned Contracts or allow the party to such Assigned Contracts to terminate, recapture, impose any penalty or condition on renewal or extension, purport to require the consent of any counterparty, or modify any term or condition upon the assignment and sale of such Assigned Contracts constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the assignment and sale of the Assigned Contracts to the Purchaser and all Assigned Contracts shall remain in full force and effect, without existing default(s), subject only to payment by the Purchaser of the appropriate cure amount, if any. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for

the assumption by the Debtors, as applicable, and assignment and sale to the Purchaser of the Assigned Contracts under the Saia Asset Purchase Agreement have been satisfied.

4.10 Subject to paragraphs 4.17 and 4.18 hereof, any party having the right to consent to the assumption, assignment or sale, or assignment and sale, as applicable, of any Assigned Contract under the Saia Asset Purchase Agreement that failed to object to such assumption, assignment and/or sale is deemed to have consented to such assumption (as applicable), assignment and sale as required by section 365(c)(1)(B) of the Bankruptcy Code.

4.11 As of the date of assignment and sale of the Assigned Contracts to the Purchaser under the Saia Asset Purchase Agreement, the Purchaser shall be deemed to be substituted for the Debtors (including the relevant Debtor lessee) as a party to the Assigned Contracts and the Debtors (including the relevant Debtor lessee) shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any liability under such Assigned Contracts arising from and after the assignment and sale to the Purchaser.

4.12 With respect to the Saia Asset Purchase Agreement and the Sale Transactions thereunder, all counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale.

4.13 With respect to the Saia Asset Purchase Agreement and the Sale Transactions thereunder, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any assignment fee, rent acceleration,

rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date that such Assigned Contracts are assumed, assigned and sold, or assigned and sold, as applicable, or arising by reason of the Closing.  For the avoidance of doubt, nothing in this paragraph alters any counterparty's entitlement to the Cure Costs determined pursuant to paragraph 39 of the Bidding Procedures Order with respect to its Assigned Contract; *provided* that the Cure Costs (as set forth above) for the Deer Park, NY and Orlando, FL leases have been paid in full by the Debtors and the Cure Costs for the Calexico, CA lease (as set forth above) shall be paid in full by the Debtors at Closing.

4.14  Notwithstanding any term of any Assigned Contract (under the Saia Asset Purchase Agreement) to the contrary, any extension or renewal options or other rights contained in such Assigned Contract that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by the Purchaser subject to the other applicable terms of the applicable Assigned Contract.  Any extension or renewal options in connection with all Assigned Contracts that the Debtors have sought to exercise prior to the entry of this Order have been timely and validly exercised by the Debtors, and all Assigned Contracts are in full force and effect and have not been previously rejected, and the Debtors' time to assume or reject the Assigned Contracts (including the Calexico, CA lease which the Debtors assume pursuant to this Order) has not otherwise expired.

4.15  With respect to the Saia Asset Purchase Agreement and the Sale Transactions thereunder, neither the Purchaser nor any successor of the Purchaser shall be responsible for any Adverse Interests or obligations arising out of any of the Assigned Contracts

that are not assumed, assigned, and sold to the Purchaser, except to the extent specifically provided by the Saia Asset Purchase Agreement.

4.16 Notwithstanding anything to the contrary in this Order or the Saia Asset Purchase Agreement, with respect to each Assigned Contract under the Saia Asset Purchase Agreement, from and after the date that such Assigned Contract is assumed, assigned and sold, or assigned and sold, as applicable, to the Purchaser, the Purchaser shall be responsible for continuing obligations under such Assigned Contract, *cum onere*, including, without limitation, liabilities for any breach of such Assigned Contract occurring after such assumption, assignment and sale, or assignment and sale, as applicable, and obligations to pay year-end adjustment and reconciliation amounts that become obligations after the entry of this Order (irrespective of whether such obligations accrued before, on, or after assumption, assignment and sale, or assignment and sale, as applicable, of the Assigned Contract), including real property taxes, tax reconciliations, common area charges and insurance premiums, in each case subject to the terms and conditions of the applicable Assigned Contracts, and subject to any defenses provided by such Assigned Contracts and applicable non-bankruptcy law and unless otherwise agreed.

4.17 Notwithstanding anything in this Order to the contrary, to the extent that executory contracts and unexpired leases that were not previously included in the Cure Notice are designated for assumption, assignment and sale after the applicable Closing Date (with respect to each Asset Purchase Agreement, as applicable), the right of counterparties to such applicable contracts and leases to object to the assumption, assignment and sale thereof, including with respect to cure amounts and adequate assurance of future performance, is reserved to the extent set forth in the following paragraph, and the Sellers shall not be authorized

to assume, assign and sell such contracts and leases to the applicable Purchaser absent compliance with the following paragraph or further order of the Court.

4.18 In the case of any executory contracts and/or unexpired leases that the Debtors seek to assume, assign and sell pursuant to each Asset Purchase Agreement, as applicable, that were not previously included in the Cure Notice, following receipt of a written notification by the applicable Purchaser (email shall suffice) that an executory contract and/or unexpired lease is designated for assumption, assignment and sale, pursuant to the Order and the applicable Asset Purchase Agreement, the Debtors shall file with the Court, subject to paragraph 39 of the Bidding Procedures Order, a written supplemental Cure Notice of the Debtors' intent to assume, assign and sell such executory contract and/or unexpired lease, substantially in the form of the Cure Notice attached as an exhibit to the Bidding Procedures Order (each, a "Supplemental Cure Notice"). The Debtors shall serve such Supplemental Cure Notice via electronic first class mail on each of the following parties (the "Supplemental Cure Notice Parties"): (i) each counterparty to any such executory contract and/or unexpired lease (and their known counsel) to be assumed, assigned and sold by the Debtors, (ii) the U.S. Trustee, (iii) counsel to the Committee, and (iv) counsel to the applicable Purchaser. The Debtors shall also serve on affected counterparties and their respective known counsel by electronic mail (if available) or overnight mail adequate assurance information for the applicable Purchaser. The Supplemental Cure Notice shall set forth the following information, to the best of the Debtors' knowledge: (a) the street address of the real property that is the subject of any unexpired lease that the Debtors seek to assume, assign and sell or a description of any executory contract that the Debtors seek to assume, assign and sell, (b) the name and address of the affected counterparties (and their known counsel), (c) a description of the deadlines and procedures for

filing objections to the Supplemental Cure Notice, if so permitted as set forth below or in the Bidding Procedures Order, and (d) any proposed cure amounts as of that time.  A party in interest may object to a Supplemental Cure Notice solely with respect (i) to the proposed cure amount contained therein but only to the extent such objection could not have been raised prior to the Cure Objection Deadline, or (ii) adequate assurance of future performance.  Any such objection must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Supplemental Cure Notice Parties no later than fourteen (14) calendar days after the date the Debtors served the applicable Supplemental Cure Notice.  If no permitted objection is timely filed and served with respect to the applicable Supplemental Cure Notice, all non-Debtor parties to such executory contract and/or unexpired lease shall be deemed to have consented to the cure amount set forth in such supplemental Cure Notice.  If a permitted objection to a Supplemental Cure Notice is timely filed and served on the Supplemental Cure Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled by the Court to consider that objection.  The assumption, assignment and sale of any executory contract and/or unexpired lease set forth in a Supplemental Cure Notice shall be deemed to have occurred as of the date of filing of a Supplemental Cure Notice upon payment of the cure amount, unless otherwise agreed by the relevant counterparty.

**Section 4.** ~~Section 5.~~ **Consumer Privacy Provisions**

4.1  ~~5.1~~ With respect to each Asset Purchase Agreement and the transactions, including the Sale Transactions, thereunder, to the extent applicable, the Purchaser (including the Purchaser Entities) shall be bound by and meet the material standards established by the Sellers' privacy policies solely with respect to the personally identifiable information transferred to the Purchaser (as applicable) pursuant to the Asset Purchase Agreement; *provided*, however, that nothing in this Order shall affect, limit, restrict, prohibit or impair any right to amend or replace the Sellers' privacy policies on a going forward basis with respect to the personally identifiable information transferred to the applicable Purchaser, in accordance with the terms thereof and applicable law.

**Section 5.** ~~Section 6.~~ **Additional Provisions**

5.1  ~~6.1~~ Stay Relief.  With respect to each of the Asset Purchase Agreements, the automatic stay pursuant to section 362 is hereby lifted to the extent necessary, without further order of this Court, to (i) allow each applicable Purchaser to deliver any notice provided for in the applicable Asset Purchase Agreement and any ancillary documents and (ii) allow such Purchaser to take any and all actions permitted under this Order, the Asset Purchase Agreement and any ancillary documents in accordance with the terms and conditions thereof.

5.2  ~~6.2~~ Bulk Transfer Laws. With respect to each of the Asset Purchase Agreements, each of the Sellers and the Purchasers hereby waive, and shall be deemed to waive, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

5.3    ~~6.3~~ Non-Interference.   With respect to each of the Asset Purchase Agreements, following the Closing Date, no holder of an Adverse Interest in or against the Debtors or the Acquired Assets, nor any other person or entity, shall interfere with the applicable Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Adverse Interest or any actions that the Debtors or their successors, including any chapter 11 or chapter 7 trustee, has taken or may take in these Chapter 11 Cases or any successor chapter 7 cases.

5.4    ~~6.4~~ Authorization.   With respect to each of the Asset Purchase Agreements, the Debtors, including their respective officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of each Asset Purchase Agreement and this Order.  The Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of each Asset Purchase Agreement, this Order and the relief granted pursuant to this Order.

5.5    ~~6.5~~ Good Faith.  With respect to each of the Asset Purchase Agreements, the Sale Transactions contemplated by each Asset Purchase Agreement are undertaken by the applicable Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal, modification or vacatur on appeal of the authorization provided herein to consummate the Sale shall not affect the validity or enforceability of the Sale (including, for the avoidance of doubt, the ~~assumption, assignment, and sale to the Purchaser of the Assigned Contracts (defined below) and the~~ Sale of the Acquired Assets free and clear of all Adverse Interests (unless otherwise assumed under, or permitted by, the Asset Purchase Agreement)), or the obligations or rights granted pursuant to the terms of this

Order, unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.  The Purchaser under each Asset Purchase Agreement is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.  The Purchaser has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Acquired Assets, and therefore the sale of the Acquired Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code or other applicable law or statute.

5.6     6.6 Certain Provision Relating to Police or Regulatory Enforcement. With respect to each of the Asset Purchase Agreements, nothing in this Order or in any Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-closing owner, lessee, or operator of property after the date of entry of this Order.  Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license,  (b) permit,  (c) registration,  (d) authorization,  (e) certification,  or (f) approval, or the discontinuation of any obligation thereunder without requiring compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

5.7     6.7 Cooperation.  With respect to each of the Asset Purchase Agreements, from time to time, as and when reasonably requested by any party, each party to each Asset Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale,

including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in the Purchaser its right, title and interest in and to the Acquired Assets.

5.8     Provision Regarding Chubb.  Notwithstanding anything to the contrary in this Order, the Motion, any of Asset Purchase Agreements, the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, any Cure Notice, any Supplemental Cure Notice, any notice or list of Assigned Contracts and/or Cure Costs, the Stalking Horse Approval Order, or any documents relating to any of the foregoing, (a) nothing shall permit or otherwise effectuate a sale, assumption, assignment or any other transfer to any Purchaser at this time of (i) any insurance policies that have been issued by ACE American Insurance Company, ACE Property and Casualty Insurance Company, Westchester Surplus Lines Insurance Company, Indemnity Insurance Company of North America, Insurance Company of North America, Illinois Union Insurance Company, Bankers Standard Insurance Company, Federal Insurance Company, Executive Risk Indemnity Inc., Executive Risk Specialty Insurance Company, Great Northern Insurance Company, and/or any of their U.S.-based affiliates and/or any predecessors and successors of any of the foregoing (collectively, and solely in their capacities as insurers under the foregoing policies, the "Chubb Companies") to, or pursuant to which coverage is provided to, any of the Sellers (or their affiliates or predecessors) at any time, and all agreements, documents or instruments relating to such policies, including, without limitation, any collateral or security provided by or on behalf of any of the Sellers (or their affiliates or predecessors) to any of the Chubb Companies and the proceeds thereof (collectively, the "Chubb Insurance Contracts"), and/or (ii) any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related to such Chubb Insurance Contracts including, without limitation, any of the Chubb Companies' indemnity, subrogation, setoff,

recoupment, and/or other rights; (b) the Chubb Insurance Contracts and any rights, interests, proceeds, benefits, claims, rights to payments and/or recoveries under or related to such Chubb Insurance Contracts (i) are not and shall not be deemed to be Assigned Contracts, Seller Support Obligations, Acquired Assets, or a portion of any of the Acquired Assets sold, assigned or otherwise transferred as part of any of the Sales hereunder, and (ii) shall be deemed to be Excluded Assets; (c) nothing herein shall alter, modify or otherwise amend the terms, conditions, rights, and/or obligations of and/or under the Chubb Insurance Contracts; (d) for the avoidance of doubt, the Purchasers are not, and shall not be deemed to be, insureds under any of the Chubb Insurance Contracts; *provided*, *however*, that, to the extent any claim with respect to the Acquired Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Purchasers any such insurance proceeds (each, a "Proceed Turnover"), *provided*, *further*, *however*, that the Chubb Companies shall not have any duty to the Purchasers to effectuate a Proceed Turnover or liability to the Purchasers related to a Proceed Turnover; (e) nothing herein shall permit or otherwise effectuate a sale, assumption, assignment, or any other transfer at this time to any Purchaser of (i) any surety bond issued by Westchester Fire Insurance Company ("Westchester") on behalf of any Seller, or its affiliate and/or predecessor (the "Westchester Bonds"), (ii) any indemnity agreement, collateral agreement and/or other related agreement to the Westchester Bonds between Westchester and any Seller, or its affiliate and/or predecessor, (iii) any Westchester collateral, including, without limitation, cash, letters of credit and/or the proceeds of collateral; (iv) any of Westchester's indemnity, subrogation, setoff, recoupment, and/or surety rights (together with item (iii), the "Westchester Security"); or (v) any agreements governing the Westchester Security (collectively with items (i),

(ii), (iii), and (iv), the "Westchester Bond Agreements"); (f) for the avoidance of doubt the Westchester Bond Agreements shall not constitute Acquired Assets, Assigned Contracts, or Seller Support Obligations; and (g) nothing herein shall alter, modify, or otherwise amend the terms, rights, or obligations under the Westchester Bond Agreements and specifically, but without limiting the generality of this clause (g), nothing herein shall permit or otherwise allow the substitution of any of the Purchasers as principal under any of the Westchester Bonds.

5.9    6.8  Scope of Approval.    With respect to each of the Asset Purchase Agreements, the failure specifically to include any particular provisions of the Asset Purchase Agreements, including any of the documents, agreements, or instruments executed in connection therewith, in this Order shall not diminish or impair the efficacy, approval, or effectiveness of such provision, document, agreement, or instrument, it being the intent of this Court that each Asset Purchase Agreement and each such document, agreement or instrument be authorized and approved in its entirety, except as otherwise specifically set forth herein.

5.10    6.9  Post-Closing Claims Administration.    With respect to each of the Asset Purchase Agreements, after the applicable Closing Date: (a) neither the Debtors nor any successor in interest, including any chapter 11 or chapter 7 trustee in these Chapter 11 Cases or any successor chapter 7 cases, shall consent or agree to the allowance of any claim to the extent it would constitute an Assumed Liability (as applicable) or Permitted Encumbrance (as applicable) without the prior written consent of the applicable Purchaser; and (b) such Purchaser shall have standing to object to any claim against the Debtors and their estates to the extent that, if allowed, it would constitute an Assumed Liability or Permitted Encumbrance, and the Court will retain jurisdiction to hear and determine any such objections.

5.11   ~~6.10~~ Notice of Sale Closing.  With respect to each of the Asset Purchase Agreements, within three (3) Business Days of the occurrence of the Closing of each applicable Sale, or as promptly as practicable thereafter, the Debtors shall file and serve a notice of the closing of such Sale.

5.12   ~~6.11~~ Computations of Time-Periods.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

5.13   ~~6.12~~ Order Governs in Event of Inconsistencies.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall govern.  With respect to each of the Asset Purchase Agreements, to the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

5.14   ~~6.13~~ Modifications.  With respect to each of the Asset Purchase Agreements, the parties to each Asset Purchase Agreement may make any non-material modifications, amendments or supplements to such agreement and to any related agreements, documents or other instruments in accordance with the terms thereof without further order of this Court.

5.15   ~~6.14~~ Non-Severability.  With respect to each of the Asset Purchase Agreements, the provisions of this Order as applies to each applicable Purchaser for each applicable Asset Purchase Agreement are nonseverable and mutually dependent.

5.16   ~~6.15~~ No Stay.  Notwithstanding the provisions of the Bankruptcy Rules, including Bankruptcy Rules 6004(h~~) and 6006(d~~), this Order shall not be stayed after the entry

hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) ~~and 6006(d)~~ is waived and shall not apply.

5.17    ~~6.16~~ Retention of Jurisdiction.  With respect to each of the Asset Purchase Agreements and the transactions, including the Sale Transactions, contemplated thereunder, this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and each of the Asset Purchase Agreements, and all amendments thereto and any waivers and consents thereunder, and of each of the agreements executed in connection therewith to which the Debtors are a party or which have been acquired by the applicable Purchaser under the applicable Asset Purchase Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transactions or the Asset Purchase Agreements.

**<u>Schedule 1</u>**

**Asset Purchase Agreements**

| Purchaser | Asset Purchase Agreement | Purchase Price | Real Property (Address/Site #) |
|---|---|---|---|
| M Way Holding LLC | *Asset Purchase Agreement Dated as of April 22, 2025 By and Among M Way Holding LLC, as Purchaser, and Yellow Corporation and its Subsidiaries Named Herein, as Sellers* (the "M Way Asset Purchase Agreement") | $10,000,000.00 | 1.   1280 Joslyn Ave, Pontiac, MI 48340 (Y223) |
| Borg Enterprises, LLC | *Asset Purchase Agreement Dated as of April 21, 2025 By and Among Borg Enterprises, LLC, as Purchaser, and Yellow Corporation and its Subsidiaries Named Herein, as Sellers* (the "Borg Asset Purchase Agreement") | $1,600,000.00 | 1.   2502 7th Avenue N, Fargo, ND 58102 (Y864) |
| Gale Group, LLC | *Asset Purchase Agreement Dated as of March 17, 2025 By and Among Gale Group, LLC, as Purchaser, and Yellow Corporation and its Subsidiaries Named Herein, as Sellers* (the "Gale Group Asset Purchase Agreement") | $140,000.00 | 1.   3020 Gale Drive, Hubbard, OH 44425 (Y212) |
| Midas Vantage Partners Management LLC | *Asset Purchase Agreement Dated as of April 14, 2025 By and Among Midas Vantage Partners Management LLC, as Purchaser, and Yellow Corporation and its Subsidiaries Named Herein, as Sellers* (the "Midas Asset Purchase Agreement") | $480,000.00 | 1.   1111 Virginia Street, Mobile AL 36604 (Y429) |
| Baldor Portland, LLC | *Asset Purchase Agreement Dated as of May 2, 2025 By and Among Baldor Portland, LLC, as Purchaser, and Yellow Corporation and its Subsidiaries Named Herein, as Sellers* (the "Baldor Asset Purchase Agreement") | $1,550,000.00 | 1.   75 Eisenhower Drive, Westbrook, ME 04092 (Y154) |
| Goodland Partners LLC | *Asset Purchase Agreement Dated as of April 30, 2025 By and Among Goodland Partners LLC, as Purchaser, and Yellow Corporation and its Subsidiaries Named Herein, as Sellers* (the "Goodland Asset* | $25,000.00 | 1.   2815 S. Highway 27, Goodland, KS 67735 |

| | | | |
|---|---|---|---|
| | Purchase Agreement") | | |
| United Holdings Group, Inc. | *Asset Purchase Agreement Dated as of May 1, 2025 By and Among United Holding Group, Inc., as Purchaser, and Yellow Corporation its Subsidiaries Named Herein, as Sellers* (the "United Asset Purchase Agreement") | $450,000.00 | 1.  700 NE Arch St., Atlanta, IL 61723 (H368) |
| ~~Saia Motor Freight Line, LLC~~ | *~~Asset Purchase Agreement dated as of May 1, 2025 By and Among Saia Motor Freight Line, LLC, as Purchaser, and Yellow Corporation and its Subsidiaries Named Herein, as Sellers~~* ~~(the "Saia Asset Purchase Agreement")~~ | ~~$6,500,000.00~~ | ~~1. 50 Burt Dr., Deer Park, NY 11729 (Y116)~~ ~~2. 1265 Laquinta Drive, Orlando, Orange County, FL 32809 (Y423)~~ ~~3. 2451 Portico Blvd., Calexico, CA 92231 (Y840)~~ |