**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 6204, 6225** |

**JOINDER OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF YELLOW CORPORATION, *ET AL.*, TO OBJECTION OF DEBTORS TO MOTION OF MFN PARTNERS, LP AND MOBILE STREET HOLDINGS, LLC FOR ENTRY OF AN ORDER CONVERTING THE DEBTORS' CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this joinder (the "Joinder") to the *Objection of Debtors to Motion of MFN Partners, LP and Mobile Street Holdings, LLC for Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [Dkt. No. 6225] (the "Debtors' Objection"). In support of this Joinder, the Committee respectfully states as follows:

**JOINDER**

1. By this Joinder, the Committee adopts the arguments set forth in the Debtors' Objection in their entirety and asks the Court to deny the *Motion of MFN Partners, LP and Mobile Street Holdings, LLC for Entry of an Order Converting the Debtors' Chapter 11 Cases to Chapter*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

*7 of the Bankruptcy Code* (the "MFN Motion") [Dkt. No. 6204] both for the reasons set forth in the Debtors' Objection, and for the additional reasons set forth below in this Joinder.

2.  As an initial matter, the MFN Motion[2] is premised on a set of erroneous factual assumptions and assertions.[3] MFN principally argues that the Chapter 11 Cases should be converted because (i) there is no path to a confirmable plan of liquidation and (ii) the Debtors and the Committee have done nothing to move the Cases forward in the weeks following the issuance of the Court's April 7 preliminary observations regarding various multiemployer pension plan ("MEPP") claim disputes.[4] Contrary to MFN's incorrect and unsubstantiated assertions, the Committee and the Debtors have been hard at work building consensus on a revised plan of liquidation premised on prior orders of this Court and the Court's Preliminary Observations with the objective of bringing these Chapter 11 Cases to conclusion.[5]

---

[2] Movants MFN Partners, LP and Mobile Street Holdings, LLC are defined collectively herein as "MFN."

[3] Among other things, the MFN Motion suggests that the Committee has acted improperly because, according to MFN, the Committee did not join the Debtors in objecting to claims affecting the Committee's own members. MFN Motion ¶¶ 53-54. The record, however, belies MFN's allegation. *See, e.g., Statement of the Official Committee of Unsecured Creditors of Yellow Corporation, et al., to Debtors' Third, Fourth, and Fifth Omnibus (Substantive) Objections to Proofs of Claim for Withdrawal Liability* [Dkt. No. 2755] (noting that the WARN Act claims, including those asserted by Committee member International Brotherhood of Teamsters, will be significantly less than the total asserted amounts if not disallowed in their entirety); *Joinder of the Official Committee of Unsecured Creditors of Yellow Corporation, et al., to Debtors' Seventh Omnibus (Substantive) Objection to Proofs of Claim for Withdrawal Liability* [Dkt. No. 3057] (joining Debtors in arguing that various MEPP claims were improperly calculated, subject to ERISA's 20-year cap and must be discounted to present value); *Statement of the Official Committee of Unsecured Creditors of Yellow Corporation, et al., Regarding Motions for Summary Judgment Regarding Withdrawal Liability* [Dkt. No. 3998] (joining Debtors' legal arguments regarding ERISA's 20-year cap and present value discounting, including as against Committee member Central States, Southeast and Southwest Areas Pension Fund); *Qualified Joinder of the Official Committee of Unsecured Creditors of Yellow Corporation, et al., to the Debtors' Motion to Reconsider in Part the September 13, 2024 Memorandum Opinion Finding A Withdrawal Liability Default in Advance of a Withdrawal Liability Payment Obligation* [Dkt. No. 4543] (joining Debtors' arguments on motion to reconsider ruling regarding withdrawal liability defaults).

[4] *Memorandum Opinion Setting Forth Preliminary Observations on Remaining Multiemployer Pension Plan Claims Allowance Disputes* (the "Preliminary Observations") [Dkt. No. 6030].

[5] The Court's March 31, 2025, Letter Opinion noted the Court's determination that issuing the Preliminary Observations would "ultimately facilitate a more orderly confirmation process than would withholding the decision." *Letter Opinion* at 1 [Dkt. No. 5999].

2

3. The Committee and the Debtors are on the verge of achieving that goal. Indeed, the Committee anticipates the filing of a further amended plan in the very near term. Importantly, the further amended plan will incorporate a proposed settlement of significant claims asserted by certain MEPP claimants—which proposed settlement will comport with each element of the Court's Preliminary Observations and prior rulings and otherwise result in the substantial reduction of the universe of allowed MEPP claims asserted against these estates. The Committee and the Debtors intend to prosecute the amended plan on an efficient yet equitable timeline that will ensure all parties in interest are given an opportunity to raise any concerns they may have regarding the plan while minimizing, to the greatest extent possible, attendant administrative costs.

4. In light of the foregoing, and for the reasons set forth in the Debtors' Objection and this Joinder, the MFN Motion should be denied.

**A.     MFN Cannot Establish "Cause" Under Bankruptcy Code Section 1112(b)(4)(A).**

5. In order for MFN to prevail on a showing of "cause" under Bankruptcy Code section 1112(b)(4)(A), MFN must demonstrate both: (a) a loss to or diminution of the estate and (b) an absence of a reasonable likelihood of rehabilitation. *See In re AIG Fin. Prods. Corp.*, 651 B.R. 463, 475 (Bankr. D. Del. 2023), aff'd No. 23-573-GBW, 2024 WL 3967465 (D. Del. Aug. 28, 2024) ("Both tests must be satisfied"). The MFN Motion satisfies neither.

(i)     <u>MFN Cannot Demonstrate Substantial or Continuing Loss to or Diminution of the Debtors' Estates.</u>

6. Parties seeking conversion or dismissal under Bankruptcy Code section 1112(b)(4)(A) must, as a threshold matter, prove "substantial or continuing loss to or diminution of the estate." 11 U.S.C. § 1112(b)(4)(A). "Bankruptcy judges have wide discretion to determine whether cause exists to dismiss or convert a case under § 1112(b)." *In re Weiss Multi-Strategy Advisers LLC*, No. 24-10743 (MG), 2024 WL 2767893, at *12 (Bankr. S.D.N.Y. May 29, 2024).

As set forth in the Debtors' Objection, the incurrence of professional fees does not satisfy this standard. *See* Debtors' Objection ¶ 11. However, even if the Court were to consider the magnitude of professional fees incurred to date, applicable precedent generally requires a far greater showing of financial distress than what MFN has alleged.

7. "Cause" under section 1112(b)(4)(A) demands more than negative cashflows or an expectation of "avoidable administrative expenses," as MFN suggests. MFN Motion ¶ 83. At minimum, a movant must show there is a "pattern of decline" and an inability by the debtor to "stop the bleeding." *See* 7 Collier on Bankruptcy ¶ 1112.04[6][a]. Moreover, when evaluating "cause," courts must conduct a holistic assessment of the debtor's present condition. *See In re Adamo*, No. 14–73640–las, 2016 WL 859349, at *11 (Bankr. E.D.N.Y. Mar. 4, 2016) (citing *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003)) ("a court must make a full evaluation of the present condition of the estate, not merely look at the debtor's financial statements."). Here, a "full evaluation" of the Debtors' present condition reveals that the Debtors are well-capitalized from postpetition asset sales and have the financial wherewithal to prosecute—and fund distributions under—a chapter 11 plan.

8. Moreover, courts often consider whether a debtor is administratively insolvent when considering whether "cause" has been shown for purposes of section 1112(b)(4)(A). For example, in *In re AIG Fin. Prods. Corp.*, the District of Delaware affirmed the bankruptcy court's denial of a dismissal motion filed by former employees of the debtors. 2024 WL 3967465, at *10 (D. Del. Aug. 28, 2024). In that case, the movants asserted that the estate faced "substantial or continuing losses" on account of accruing administrative expenses, notably including more than $20 million in professional fees, and cited these losses as a basis to dismiss the case. *Id.* at *9-11. The court rejected this argument as grounds for cause, emphasizing that the debtors had sufficient

cash on hand to satisfy all administrative expenses in full. *Id*. at *10–11. The court also noted that many of the administrative costs identified by the movants were non-recurring in nature. *Id*. In other words, the debtors' ability to pay administrative expenses precluded a finding of "cause" under section 1112(b)(4)(A).

9. There is no dispute here that the Debtors are administratively solvent and capable of funding the postpetition expenses necessary to confirm a chapter 11 plan. Accordingly, and for the additional reasons cited in the Debtors' Objection, MFN cannot establish "cause."

(i) <u>MFN Fails to Establish the Absence of a Reasonable Likelihood of the Debtors' Rehabilitation.</u>

10. MFN also fails to establish "the absence of a reasonable likelihood of rehabilitation" necessary to establish "cause" under Bankruptcy Code section 1112(b)(4)(A).

11. As set forth in the Debtors' Objection, there is a "reasonable likelihood of rehabilitation" of the Debtors through the near-term filing and prosecution of the amended plan. Although MFN contends that the Debtors "are not seeking to rehabilitate" because the Debtors are pursuing a liquidating plan, bankruptcy courts routinely hold that "the term 'rehabilitation' refers to the debtor's ability to confirm a plan even if it involves a liquidation of assets." *See In re Profundity LLC*, No. 23-16720-CLC, 2024 WL 4249715, at *1 (Bankr. S.D. Fla. Apr. 11, 2024) (collecting cases); *In re Smith*, 77 B.R. 496, 502 (Bankr. E.D. Pa. 1987) ("There is no requirement that the plan contemplate reorganization, as a liquidating plan is an acceptable alternative in a Chapter 11 case, and thus a liquidation is a form of rehabilitation."); *In re McTiernan*, 519 B.R. 860, 866 (Bankr. D. Wy. 2014) ("In determining whether the debtor can rehabilitate, the court does not find that an interpretation of 'rehabilitation' precludes liquidation under a chapter 11 bankruptcy case."); *In re R & S St. Rose Lenders, LLC*, No. 11-14973-MKN, 2016 WL 3536533, at *6 n.11 (Bankr. D. Nev. May 18, 2016) (rejecting U.S. Trustee's argument that a liquidating plan

precluded rehabilitation and therefore required conversion under section 1112(b)(4)(A)) (citing *In re McTiernan*, 519 B.R. 860 (Bankr. D. Wy. 2014)); *In re Imperial Pac. Int'l (CNMI), LLC*, No. 1:24-bk-00002, 2024 WL 4528513, at *3 (D. N. Mar. Is. Oct. 19, 2024) (rejecting argument that liquidation did not constitute rehabilitation and holding that "[t]here is no requirement that the plan contemplate reorganization, as a liquidating plan is an acceptable alternative in a Chapter 11 case, and thus a liquidation is a form of rehabilitation.") (quoting *In re Smith*, 77 B.R. 496 (Bankr. E.D. Pa. 1987)).

12. Under MFN's logic, any complex chapter 11 case involving a plan of liquidation would be subject to immediate conversion or dismissal upon the motion of a disgruntled party in interest, regardless of the costs or harms inflicted on a debtor's estate or creditors by such dismissal or conversion, merely because such liquidating chapter 11 case required the expenditure of significant professional fees by the estate's retained professionals in order to negotiate, prosecute and implement a confirmable plan. Such an absurd result is contrary to the express language of the Bankruptcy Code that permits—and indeed expressly contemplates—liquidating plans. *See* 11 U.S.C. § 1123(b)(4) ("[A] plan may . . . provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests [.]"); *In re E. End Dev., LLC*, 491 B.R. 633, 642 (Bankr. E.D.N.Y. 2013) ("While reorganization is an appropriate use of Chapter 11, the Bankruptcy Code also authorizes liquidating plans pursuant to § 1123(b)(4)"); *In re Alves Photo Serv., Inc.,* 6 B.R. 690, 694 (Bankr. D. Mass. 1980) (holding "that the purported savings derived from a conversion would not offset the additional replacement costs" and that "liquidation is permissible in a Chapter 11 proceeding under the Code and that a plan . . . can be effectuated in this case. Thus, no cause pursuant to Section 1112(b)(2) is found to exist.").

13. The position advocated by MFN was analyzed, and rejected, in *In re Profundity*, where the court expressly stated that if rehabilitation did not include liquidation, "arguably many of the Chapter 11 cases in which the debtors propose liquidating plans could be subject to conversion." *In re Profundity LLC*, 2024 WL 4249715, at *2. The court noted further: "The conversion of the case to a Chapter 7 would result in the estate bearing additional administrative expenses, including the trustee's statutory fee . . . the fees that would be incurred by the trustee's counsel, and the additional delay and expense while the trustee and counsel familiarize themselves with the case." *Id.* These estates also would be forced to bear the additional cost and delay cited by the *Profundity* court if these cases were to be converted and MFN has not (and cannot) cite a compelling justification for conversion away from the professional fees that have largely already been incurred.

14. Accordingly, MFN has failed to satisfy its burden under prong two of section 1112(b)(4)(a), and the MFN Motion should be denied.

B. **The Court Should Not Convert the Chapter 11 Cases Even if "Cause" Exists.**

15. Even assuming, *arguendo*, that MFN can establish the requisite elements of "cause" under section 1112(b)(4)(A), conversion is not mandatory. The Bankruptcy Code expressly permits a court to exercise its discretion and decline to convert a chapter 11 case where it "finds and specifically identifies unusual circumstances" indicating that conversion is not in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(2). The Committee respectfully submits that such circumstances are present in these Chapter 11 Cases.

16. Although Bankruptcy Code section 1112(b)(2)(B) arguably limits the applicability of the unusual circumstances exception when the basis for conversion or dismissal is "cause" under section 1112(b)(4)(A), this Court nevertheless has declined to dismiss or convert a case due to

unusual circumstances even where "cause" under section 1112(b)(4)(A) otherwise exists. *See, e.g., In re Imerys Talc America, Inc.,* Case No. 19-10289-LSS, Hr'g Tr. 12:16-19 (Bankr. D. Del. Oct. 17, 2022) ("Even assuming that both prongs of 1112(b)(4)(a) [sic] are met I find unusual circumstances exist under Subsection (b)(2) establishing that dismissing the case is not in the best interest of creditors and the estate");[6] *In re The SCO Grp., Inc.*, No. 07–11337 (KG), 2009 WL 2425755, at *5 (Bankr. D. Del. Aug. 5, 2009) (declining to convert the chapter 11 case despite an undisputed finding of "cause" under section 1112(b)(4)(A), concluding that "'an unusual circumstance' . . . militate[d] against conversion" and was not in the best interests of the creditors or the estate).

17. These Chapter 11 Cases present precisely the type of circumstances that warrant application of the statutory exception. The Debtors and the Committee are in the process of finalizing negotiations on a revised settlement with many of the largest claimants of these estates, which will eliminate costly litigation (including litigation involving both current appeals and appeals that the Committee would expect to be taken from further orders of this Court absent approval of the proposed settlement to be incorporated in the further amended plan) and pave the way for plan confirmation. While some administrative expenses will indisputably arise in connection with the prosecution of the plan, these costs will be far less than the expenses associated with continuing litigation in the absence of such plan. Moreover, conversion would not eliminate the expenses MFN complains of; to the contrary, professional fees would continue to increase if conversion were to be ordered as any chapter 7 trustee would need to retain its own advisors to liquidate assets and continue the pursuit of litigation that the forthcoming revised plan will seek to settle.

---

[6] A copy of the transcript is attached hereto as **Exhibit A**.

18. Simply, conversion to chapter 7 at this time is neither necessary nor in the best interests of creditors. The statutory exception under section 1112(b)(2) therefore applies, and the Court should deny the MFN Motion.[7]

### RESERVATION OF RIGHTS

19. This Joinder is submitted without prejudice to, and with a full and express reservation of, the Committee's rights to supplement or amend this Joinder. Nothing herein is intended to be a waiver by the Committee of any right, objection, argument, claim or defense with respect to any matter, all of which are hereby expressly reserved.

### CONCLUSION

20. For the reasons set forth herein and those set forth in the Debtors' Objection, the MFN Motion should be denied.

*[Remainder of page intentionally left blank]*

---

[7] MFN also argues that the Committee must support the MFN Motion because the Committee previously filed a motion [*see* Dkt. No. 5564] seeking to terminate exclusivity that, in the alternative, sought to convert the cases to chapter 7. MFN Motion ¶ 87 n.27. MFN's argument is incorrect. As stated in the Committee's motion, the Committee filed the motion because the then-operative plan proposed by the Debtors was, in the Committee's view, unconfirmable. After that motion was filed, however, the Debtors and the Committee agreed to adjourn the motion to a future date and subsequently reached agreement on a joint plan of liquidation reflected in the Third Amended Plan. With the filing of a further revised confirmable plan of liquidation on the horizon—indeed, a plan for which the Committee itself is a proponent—the Committee has not rescheduled its motion.

| | |
|---|---|
| Date: May 20, 2025<br>Wilmington, Delaware | **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**<br><br>*/s/ John C. Gentile*<br>Jennifer R. Hoover (DE No. 5111)<br>Kevin M. Capuzzi (DE No. 5462)<br>John C. Gentile (DE No. 6159)<br>1313 North Market Street, Suite 1201<br>Wilmington, DE 19801<br>Telephone: (302) 442-7010<br>Facsimile:  (302) 442-7012<br>E-mail:   jhoover@beneschlaw.com<br>　　　　　kcapuzzi@beneschlaw.com<br>　　　　　jgentile@beneschlaw.com<br><br>-and-<br><br>**AKIN GUMP STRAUSS HAUER & FELD LLP**<br>Philip C. Dublin (admitted *pro hac vice*)<br>Meredith A. Lahaie (admitted *pro hac vice*)<br>Kevin Zuzolo (admitted *pro hac vice*)<br>One Bryant Park<br>New York, NY 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br>Email: pdublin@akingump.com<br>　　　　mlahaie@akingump.com<br>　　　　kzuzolo@akingump.com<br><br>*Counsel to the Official Committee*<br>*of Unsecured Creditors of Yellow Corporation, et al.* |