## **EXHIBIT A**

*In re Imerys Talc America, Inc., et al.* **(Case No. 19-10289 (LSS))**
**October 17, 2022, Hearing Transcript**

1

```
                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE

                                          .       Chapter 11
IN RE:                                    .
                                          .       Case No. 19-10289 (LSS)
IMERYS TALC AMERICA, INC.,                .
et al.,                                   .
                                          .       Courtroom No. 2
                                          .       824 North Market Street
                                          .       Wilmington, Delaware 19801
                                          .
                        Debtors.          .       Monday, October 17, 2022
. . . . . . . . . . . . . . . . . . .             4:00 p.m.

                           TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
                      UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:           Amanda Steele, Esquire
                           RICHARDS, LAYTON & FINGER, P.A.
                           One Rodney Square
                           920 North King Street
                           Wilmington, Delaware 19801

                           Kimberly Posin, Esquire
                           LATHAM & WATKINS LLP
                           355 South Grand Avenue, Suite 100
                           Los Angeles, California 90071


Electronically
Recorded By:               Madaline Dungey, ECRO

Transcription Company:     Reliable
                           1007 N. Orange Street
                           Wilmington, Delaware 19801
                           (302)654-8080
                           Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

```
 1  APPEARANCES (CONTINUED):

 2  For the U.S. Trustee:     Linda Richenderfer, Esquire
                              OFFICE OF THE UNITED STATES TRUSTEE
 3                            844 King Street, Suite 2207
                              Lockbox 35
 4                            Wilmington, Delaware 19801

 5
    For the Committee:        Mark Fink, Esquire
 6                            ROBINSON & COLE LLP

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

INDEX

JUDGE'S RULING:                                                  PAGE

Agenda
Item 1: Riverstone Insurers' Motion to Dismiss                   4
        Bankruptcy Case
        [Docket No. 5052 – Filed September 13, 2022]

1          (Proceedings commenced at 4:00 p.m.)
2                    THE CLERK:  All rise.
3                    THE COURT:  Please be seated.
4          Good afternoon.  We're here for my ruling in the
5    Imerys Talc America case, 19-10289.
6          Are there any preliminary matters before I read my
7    ruling?
8                    MS. STEELE:  None from the debtors, Your Honor.
9                    THE COURT:  Thank you.
10         Last Wednesday I heard the Riverstone Insurers
11   motion to dismiss the bankruptcy case.  It was opposed by
12   Imerys, Cyprus Mining, the Committee of Tort Claimants in
13   each of those cases, and the FCR in each of those cases.
14   Having considered the evidence presented, the posture of the
15   cases, and the legal standard for the reasons that follow I
16   deny the motion.
17         The Riverstone Insurers motion is brought under
18   Section 1112(b).  Section 1112(b) provides that a bankruptcy
19   case can be dismissed for cause, cause being undefined, but
20   examples being enumerated.  Riverstone's legal argument for
21   cause is twofold:
22         First, Riverstone argues that 1112(b)(4)(a)
23   provides that cause includes "Substantial or continuing loss
24   to or diminution of the estate and the absence of a
25   reasonable likelihood of rehabilitation."

1     Second, Riverstone argues that debtor's
2 bankruptcies are not in good faith.  Riverstone argues that
3 the bankruptcy cases lack a proper bankruptcy purpose, that
4 debtor cannot satisfy Section 524(g) because it sold its
5 business, the case will not maximize insurance, and the case
6 improperly seeks a litigation advantage.
7     The second argument, lack of good faith, takes up
8 the bulk of the motion to dismiss.  The objectors
9 collectively argue that the Riverstone Insurers do not have
10 standing to bring a motion to dismiss as they are not
11 creditors and are not harmed by the bankruptcy case or the
12 continuation of it.  They also argue that the Riverstone
13 Insurers motion is a premature confirmation objection.  They
14 also argue that while the professional fees are significant
15 in these cases by any measure, important settlements have
16 been reached by virtue of negotiations and mediation which
17 will unwind if the cases are dismissed.  They suggest that
18 continued mediation will prove fruitful and that dismissal is
19 not in the best interest of the creditors.
20     Because standing is a foundational concept I will
21 start there.  If the Riverstone Insurers do not have standing
22 to bring the motion to dismiss the motion must be denied.
23 The Riverstone Insurers argue that they have standing to
24 bring a motion to dismiss because they have constitutional
25 standing, and in particular are harmed by the bankruptcy

1  case.

2           In their reply the Riverstone Insurers state that
3  they have harm traceable to the bankruptcy petition and the
4  debtor's bankruptcy.  The insurers argue that by choosing to
5  file a bankruptcy case "Debtors are seeking to foreclose any
6  opportunity to substantively defend against future liability"
7  and that "Any trust will eliminate the sort of rigorous
8  defense and review that would have taken place in traditional
9  tort litigation."

10          The insurers provide examples of that harm arguing
11 that the plan debtors have filed -- arguing that the plans
12 debtors have filed to date "Have allowed the payment of
13 claims barred by the statute of limitations, valued claims
14 far in excess of prepetition averages, and had no meaningful
15 exposure criteria."

16          The recitation of the harm alleged to be suffered
17 by the Riverstone Insurers shows that there is no immediate
18 harm.  Each of the harms identified relates to a plan of
19 reorganization or liquidation, but currently there is not a
20 plan before me.  Debtor's proposed a plan over a year ago.
21 The Court approved a disclosure statement for that plan and
22 it was solicited.  Afterwards, upon various motions, I ruled
23 that certain votes should not be counted resulting in an
24 affirmative vote of less than 75 percent.  Debtors thereafter
25 determined not to put that plan forward for confirmation and

1 asked for permission to mediate with various constituents.
2 That is the current status.
3       Any harm that may be visited upon the Riverstone
4 Insurers from a future proposed plan and/or trust procedures
5 can be raised in the confirmation context assuming, at that
6 point in time, the Riverstone Insurers have standing.  But
7 there is no current harm by the continuation of these cases.
8       At argument, the Riverstone Insurers also
9 suggested that they are harmed because professional fees are
10 being spent in this case would be better spent defending
11 individual lawsuits in the tort system.  The Riverstone
12 Insurers do not suggest that they would receive a payout from
13 debtors as a creditor if this case is dismissed.
14       Moreover, the declaration of Eric Danner suggests
15 that the Riverstone Insurers are not creditors.  Mr. Danner
16 testified that the insurers have not filed a proof of claim
17 and he understands that none of the Riverstone Insurers
18 provided coverage for Talc claims prepetition.
19       The Riverstone Insurers and debtors did enter into
20 a stipulation in connection with the entry of the bar date
21 order.  A review of that stipulation does not establish that
22 the Riverstone Insurers are creditors.  The stipulation
23 merely provides that the Riverstone Insurers have no
24 obligation to file a proof of claim for an indirect Talc
25 claim by the general bar date, and that debtors cannot object

1  to any claim the Riverstone Insurers may file on the basis
2  that the claim is late filed.  At this point in time then the
3  Riverstone Insurers are not creditors.  They do not,
4  therefore, have standing to raise issues that can be raised
5  by creditors.
6          While I do not believe that the Riverstone
7  Insurers are harmed by the bankruptcy case itself, and that
8  they have no standing to bring the motion to dismiss, I will
9  evaluate the merits of the motion starting with the
10 Riverstone Insurers good faith argument and the question I
11 posed at oral argument: what is the standard that should be
12 used, if any, to measure a debtors good faith at year three
13 of a bankruptcy case.  No case cited addressed this question,
14 nor did the parties flesh-out this issue.
15         The Riverstone Insurers cite to Integrated
16 Resources which is a case addressing whether a petition was
17 filed in good faith.  It examines whether the bankruptcy
18 petition serves a proper bankruptcy purpose and/or whether
19 the bankruptcy petition was filed as a litigation tactic.
20 The Riverstone Insurers adopt this standard and suggest that
21 this case, in its present posture, does not serve a
22 bankruptcy purpose and is being continued as a litigation
23 tactic.
24         The Integrated Resources standard is not a proper
25 standard to be applied at this stage of the case.  The Courts

1 that dismiss a case for the lack of a good faith filing do so
2 based on motions that were filed shortly after the bankruptcy
3 petition was filed.  The Court recognized this in <u>Energy</u>
4 <u>Future Holdings</u>, 630 Bankruptcy Reporter 561 (2016), when it
5 found that the motion to dismiss there brought 31 months into
6 the case was barred by Latches.  Nonetheless, the Court also
7 analyzed the merits of the motion and found them lacking as
8 well.
9      The Riverstone Insurers motion to dismiss comes
10 three years into the case and I conclude that it is too late
11 to base such a motion on a bad faith filing.  As explored at
12 the hearing, good faith arises in at least two contexts in
13 the code: at the filing of the petition through the judge
14 made concept of good faith in the filing of a petition, and
15 at confirmation under 1129(a)(3), but the Riverstone Insurers
16 point to nothing for the proposition that a good faith
17 concept generally arises during the course of the case.
18      That is not to say that a debtor should be acting
19 in bad faith in its day to day operations, but for purposes
20 of a motion to dismiss cause under Section 1112(b)
21 sufficiently addresses debtor conduct and/or case
22 circumstances during the course of the case.  The section
23 enumerate cause to dismiss the case after the filing of a
24 petition and prior to and even after confirmation.
25 Circumstances sufficient to dismiss a case for conduct or

1  circumstances in a case include gross mismanagement, failure
2  to make required bankruptcy filings, failure to attend the
3  341 Meeting or an ordered Rule 2004 Examination, failure to
4  pay taxes, and various failures to make progress in the case.
5         Some continuing day to day good faith would seem
6  to be inherent in the 1112(b) enumerated examples of cause.
7  I see no reason or basis to import a judge made standard
8  aimed directly at the filing of the petition into the middle
9  of a case.  Moreover, I would not dismiss the bankruptcy case
10 based on the Integrated Resources standard.  Any suggestion
11 that the petitions were not filed in good faith flies against
12 the stated purposes for the filing including the 14,000 plus
13 lawsuits filed against Imerys seeking damages for ovarian
14 cancer and mesothelioma.
15        Mr. Danner testified that debtor's initial filing
16 for Chapter 11 protection was to resolve its historic Talc
17 liabilities and maximize recoveries for creditors.  He also
18 testified that this remains true today.
19        So now I will turn to the other basis for the
20 Riverstone Insurers motion.  They argue that the case must be
21 dismissed under 1112(b)(4)(a).  That section provides that
22 cause exists to dismiss or convert a bankruptcy case where
23 there is a "Substantial or continuing loss too or diminution
24 of the estate and the absence of a reasonable likelihood of
25 rehabilitation."

1  If the movant shows these circumstances the Court
2  still need not dismiss a case if unusual circumstances exist
3  such that converting or dismissing the case is not in the
4  best interest of creditors and the estate, and there is a
5  reasonable likelihood that a plan will be confirmed within
6  the timeframes established by the code or within a reasonable
7  period of time.  The cited cases show that the Court has
8  broad discretion in addressing dismissal motions.
9  The Riverstone Insurers contend that there is a
10 substantial, or continuing loss to, or diminution of the
11 estate because of the significant monthly cash burn driven by
12 the number of professionals that are paid by the estate.
13 There is no question that the cash burn is significant even
14 if it has recently declined somewhat.  The rents received
15 from the two Dollar General stores do not cover the monthly
16 expenses.
17 Further, the evidence shows that the proceeds of
18 the sale have decreased from approximately $271 million to
19 approximately $152 million.  Debtors argue that the
20 expenditures are necessary to preserve significant value
21 already achieved in these cases, namely $500 million in
22 settlements and to reach more settlements.  This goes more to
23 unusual circumstances, but on the facts here it is fair to
24 conclude that the first prong of 1112(b)(4)(a) is met.
25 The Riverstone Insurers also contend that there is

1  not a reasonable likelihood of rehabilitation because debtors
2  have liquidated.  They argue that this second prong looks at
3  whether debtors can successfully operate their prepetition
4  business, not whether there is some business to reorganize
5  around.  Objectors point out that the cases cited by the
6  Riverstone Insurers are all distinguishable as either
7  individual cases or small business cases.  None are 524(g)
8  cases.
9        Objectors also argue that Imerys came into this
10 case with 14,000 plus Talc claims against it and will exit
11 with a clean slate and equate this posture to rehabilitation.
12 Objectors take on rehabilitation does not neatly square with
13 this prong of Section 1112(b)(4).  Arguably, though, this
14 standard is met notwithstanding that the code does not rule
15 out liquidation cases and they are not uncommon.
16       Even assuming that both prongs of 1112(b)(4)(a)
17 are met I find unusual circumstances exist under Subsection
18 (b)(2) establishing that dismissing the case is not in the
19 best interest of creditors and the estate.
20       First, this is a mass tort case.  And while those
21 seem to be in vogue these days they are relatively rare in
22 relation to the number of bankruptcy cases filed.  Mass tort
23 cases face their own unique challenges.  Here, there were
24 14,000 cases filed prepetition.  If these cases are dismissed
25 debtors will face the very challenge that placed them into

1  bankruptcy to start with.  And there is no assurance that the
2  cash burn outside of bankruptcy will not be equally
3  significant.
4          Second, debtors have made progress in their cases,
5  though a plan has not been confirmed.  Debtors proposed a
6  plan of reorganization that was solicited.  When debtors came
7  up short after my decision with respect to certain votes
8  neither debtors, nor the Imerys Committee, or the FCR
9  believed there was an impasse.
10         Third, the progress made to date includes $500
11 million in settlements that would fund a trust for the
12 benefit of Talc Claimants.  There is no reason to believe
13 that these settlements will be available if the cases are
14 dismissed.  Abandoning that work at this time is not in the
15 estate's interest.
16         Fourth, the Cyprus Mines bankruptcy case is tied
17 into the Imerys bankruptcy case.  The plan that Imerys
18 solicited, provided that the claims of Talc Claimants against
19 Cyprus would be channeled to the trust created under the
20 Imerys plan.  While this plan is not before me, and I have
21 not considered the merits of such a plan, the Riverstone
22 Insurers ignore the connection between the two bankruptcy
23 estates.
24         Fifth, the filing of the LTL case is a
25 complicating factor which the Riverstone Insurers also

1 ignored.

2 Sixth, assuming that the Riverstone Insurers are
3 creditors no other creditor supported the motion to dismiss.
4 And the fiduciary for tort claimants and the Imerys FCR also
5 oppose the motion.

6 This combination of factors creates unusual
7 circumstances that, at this time, make the dismissal of this
8 case not in the best interest of the creditors or the estate.
9 Finally, I also find that there is a reasonable likelihood
10 that a plan will be confirmed within a reasonable period of
11 time. There is no real guidance here provided by the cases
12 on this factor, but it seems apparent that this is a facts
13 and circumstances test.

14 Given the complicated nature of this case I
15 conclude that there is still a reasonable likelihood that a
16 plan can be confirmed within a reasonable time. I recognize
17 that there will be challenges to confirmation and such
18 challenges could prevail in whole or in part, but at this
19 time I do not discount the possibility that a confirmable
20 plan can be proposed.

21 Having come to these conclusions I deny the motion
22 to dismiss, but I am concerned about the cost of the cases
23 and the length of time Imerys has been in bankruptcy. The
24 Imerys Committee states in its objection that three of the
25 original committee members died during the course of this

1  case.  There could not be a more stark reminder that the
2  Imerys bankruptcy case needs to come to a conclusion and
3  sooner rather than later.
4           That concludes my ruling.
5           I have another note I just want to put on the
6  record, I guess, again, late Wednesday I believe it was Ms.
7  Richenderfer informed me that the mediator in this case, Mr.
8  Feinberg, was appointed as a Rule 706 expert in the LTL case
9  and that he was ordered to make a disclosure in this case to
10 that effect.  I still have not seen any such disclosure and I
11 would reiterate my request that it be filed expeditiously,
12 and ask debtor's counsel to once again pass that along to Mr.
13 Feinberg.
14          MS. POSIN:  Your Honor, if I may respond to that.
15 Kim Posin for the debtors.  We have passed that along.  My
16 understanding was they were -- Mr. Feinberg was still
17 retaining counsel.  I believe that filing was made in the LTL
18 proceeding over the weekend and I was told that they would be
19 filing something with this Court very shortly in response to
20 the Court's request.
21          THE COURT:  Thank you.
22          MS. RICHENDERFER:  Your Honor, if I may.  I'm
23 sorry, I'm not on the screen today.  It's Linda Richenderfer
24 from the Office of the United States Trustee.
25          I think that there is a difference of opinion

1  between the Office and Mr. Feinberg as to when he was to make
2  that disclosure.  I do not believe that it was contingent
3  upon him hiring professionals.  The Court's order was in mid-
4  July, and then there was a follow-up order with procedures in
5  mid-August.  And I appreciate the fact that Mr. Feinberg may
6  be getting ready to make a disclosure to Your Honor, but I
7  just want to be clear on the record that the U.S. Trustee
8  does not agree with his interpretation of when he was to make
9  it.
10             THE COURT:  Okay.  Thank you.
11             Anything further for today?
12             MR. FINK:  Your Honor, this is Mark Fink with
13 Robinson & Cole on behalf of the committee.
14             It's more administrative than anything else.  We
15 filed a motion for leave to exceed the page limit
16 requirements based on your Chambers procedures and that's
17 still outstanding. It's Docket 5108.
18             THE COURT:  Okay.
19             MR. FINK:  I'm guessing you read our papers by
20 now. I just wanted to raise that so we could close the loop.
21             THE COURT:  Thank you.  I did read your papers.
22 We will find the order.
23             MR. FINK:  Thank you, Your Honor.
24             THE COURT:  Anything else?
25        (No verbal response)

1      THE COURT: Okay. Thank you very much. We're
2 adjourned.
3      (Proceedings concluded at 4:22 p.m.)

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ Mary Zajaczkowski                    October 17, 2022
Mary Zajaczkowski, CET-531
Certified Court Transcriptionist
For Reliable