# EXHIBIT A

# YRC Enterprise Services Inc.

## LTL MOTOR CARRIER

## TRANSPORTATION CONTRACT

# Table of Contents

| | | |
|---|---|---|
| Article 1. | Transportation Service | 3 |
| Article 2. | Documentation of Shipments | 4 |
| Article 3. | Compensation | 5 |
| Article 4. | Rules and Regulations | 5 |
| Article 5. | Control of Transportation | 5 |
| Article 6. | Contract Carriage | 6 |
| Article 7. | Insurance | 6 |
| Article 8. | Operating Authority | 6 |
| Article 9. | Liability | 7 |
| Article 10. | Trailer Drop-offs | 7 |
| Article 11. | Loss or Damage to Shipments | 7 |
| Article 12. | Indemnification | 8 |
| Article 13. | Payment | 9 |
| Article 14. | Undercharges | 10 |
| Article 15. | Overcharges | 10 |
| Article 16. | Force Majeure | 10 |
| Article 17. | Term and Termination | 10 |
| Article 18. | Default | 11 |
| Article 19. | Assignment | 11 |
| Article 20. | Modifications and Effectiveness | 11 |
| Article 21. | Entire Agreement | 11 |
| Article 22. | Notices | 11 |
| Article 23. | Confidentiality | 12 |
| Article 24. | Applicable Law | 12 |
| Article 25. | Severability | 12 |
| Article 26. | Remedies | 12 |
| Article 27. | Time | 12 |
| Article 28. | Counterparts | 12 |
| Article 29. | Electronic Commerce Enablement | 12 |
| Article 30. | Conflicts of Interest | 13 |
| Article 31. | English | 13 |
| Article 32. | Undeliverable Shipment | 13 |
| Article 33. | Import and Export Laws. | 13 |
| Schedule A | List of Facilities | 15 |
| Schedule B | Accessorials & Definitions, FAK, and FSC Tables | 20 |
| Schedule C | Pricing | 26 |

THIS AGREEMENT is entered into as of March 15, 2021 by and between ( "**Carrier**"), and FIRST BRANDS GROUP, LLC, a Delaware limited liability company. on behalf of itself and its affiliates, having offices at 127 Public Square, Suite 5300 Cleveland OH 44114 (hereinafter referred to as "First Brands Group") and YRC Enterprise Services, Inc. of 10990 Roe Avenue, Overland Park, Kansas, 66211, herein called "YRC ESI" who is acting solely as a negotiating agent for and on behalf of YRC ESI's affiliated company(ies) as identified in the attached Appendix C (hereinafter referred to as "Carrier" or "Carriers").  References herein to "Party" or to the "Parties" shall mean, in the case of YRC ESI, the actual motor Carrier or motor Carriers providing service to First Brands Group pursuant to this Agreement, as may be applicable.  Affiliates may be added or deleted from this Agreement by written agreement of the Parties.

For purposes of this Agreement, YRC ESI is solely a negotiating agent for each named Carrier and assumes no legal responsibility or liability for performance or obligations under this Agreement.  Each individual Carrier is solely responsible for all services such Carrier provides.  Customer hereby agrees that all legal recourse against a Carrier regarding such Carrier's services herein must be asserted by Customer directly against such individual Carrier and not against YRC ESI.  Therefore, Customer acknowledges and agrees that each Carrier is individually liable regarding the services it performs and there is no joint liability between or among such Carrier or YRC ESI.  Customer acknowledges and agrees that YRC ESI is not a motor carrier, as defined by Title 49 of the United States Code or any other governmental authority/agency.  In the event of termination, each Carrier may unilaterally exercise its termination rights as provided in the Agreement without affecting the applicability of the Agreement as between the other Carriers and First Brands Group and First Brands Group may exercise its termination rights against any individual Carrier.

1.    <u>Transportation Service</u>.  Carrier shall provide interstate and/or intrastate and/or foreign commerce motor carrier contract service ("**Transportation Service**") to meet the needs of First Brands Group and its subsidiaries and affiliates as First Brands Group may request based on Carrier's capacity. This Agreement shall apply solely to shipments tendered to Carrier in which First Brands Group affiliates (as listed in Schedule A) are the payors of the transportation charges and pricing is established in Appendices, Schedules, Exhibits or Attachments to this Agreement.  Unless otherwise stated in Appendices, Schedules, Exhibits or Attachments, this Agreement only applies between points and places within the contiguous United States and between points and places within the contiguous United States and a single point in Canada.  If Carrier accepts from First Brands Group shipments which are not covered by Appendices, Schedules, Exhibits or Attachments, First Brands Group agrees to pay reasonable rates and charges for such transportation consistent with the prevailing rates and charges Carrier charges other First Brands Groups for similar transportation services. Carrier's Transportation Services provided hereunder shall conform to the service level standards and scope set in this Agreement.  The Transportation Service to be provided to First Brands Group by Carrier shall include without limitation the following:

   a)    the provision of motor vehicles and allied equipment (the "**Vehicles**");
   b)    the maintenance of the Vehicles in a roadworthy condition;
   c)    the provision of, competent, properly trained, managed and supervised drivers, dispatchers and other personnel operating its motor vehicles and equipment and otherwise performing services hereunder, fully qualified and licensed as appropriate, including with Commercial Drivers Licenses and all required endorsements, and fully informed concerning their responsibilities for all involved freight;

d) proper compliance with applicable provincial, state, local and federal safety, environmental and other laws, rules and regulations, including but not limited to (i) procuring and maintaining, at its sole cost and expense, any and all licenses and permits required by federal, state or local authorities with respect to the services to be provided hereunder, and (ii) assuming full responsibility for all federal, state and local taxes, licenses, and assessments, and operating permits and authorities related to performance of the services.

e) Carrier warrants that it will comply with the Hazardous Materials Transportation Act, 49 U.S. Code Section 5101 et seq., as amended, and all regulations promulgated thereunder. First Brands Group represents and warrants to Carrier that any commodities it tenders to Carrier are classified as hazardous materials, as defined by the Hazardous Materials Transportation Act, 49 U.S.C. 501, and by the regulations of the USDOT. First Brands Group warrants that such commodities when tendered to the Carrier shall be properly classified, described, packaged, labeled and will be in proper condition for transportation.

f) Carrier will maintain at all times a US Department of Transportation Federal Motor Carrier Administration (FMCSA) safety rating of Satisfactory or Unrated and at least an equivalent safety rating issued by the provinces of Canada as applicable, in which it operates and will notify First Brands Group as soon as reasonably practicable upon receipt of any rating other than Satisfactory;

g) the safety of Carrier and its representatives, agents, employees and invitees, while on property owned or controlled by First Brands Group, or of any other person who enters upon property owned or controlled by First Brands Group with the consent of Carrier or the representatives, agents, employees or invitees of Carrier or for reasons relating to this Agreement, shall act responsibly, and First Brands Group warrants it provides a safe work environment on all property owned or controlled by First Brands Group for the site locations where Carrier will provide services. Carrier shall at all times maintain good order among its employees and shall not employ, for purposes of this Agreement, any person unfit or not skilled in the work assigned. Carrier shall confine (i) all tools, vehicles, containers and equipment, (ii) all persons who come onto property owned or controlled by First Brands Group for reasons relating to this Agreement, and (iii) all other persons who come onto property owned or controlled by First Brands Group with the consent of Carrier or its representatives, agents, employees or invitees to that portion of the site where the work is being performed, to roads leading to and from such areas, and to any other area which First Brands Group may permit Carrier to use;

h) Carrier shall comply, and shall at all times during the performance of this Agreement take all measures and precautions necessary to ensure that its representatives, agents, employees and invitees shall comply, with such regulations, policies and procedures as First Brands Group may from time to time establish to the extent such regulations, policies and procedures are openly displayed and posted on the premises.

i) the safe, proper, and legal load securement of all products tendered by First Brands Group and compliance with First Brands Group's reasonable loading and unloading procedures;

j) Carrier shall (i) make available to First Brands Group for inspection, copying and audit purposes during normal business hours, upon ten (10) business days' prior written request, all of Carrier's business records pertaining to the performance and pricing of services pursuant to this Agreement to enable First Brands Group to determine whether Carrier is providing the type, kind, level and pricing of services required by this Agreement and (ii) maintain all such records and supporting documents related to this Agreement throughout its Initial Term and for a period of three (3) years after final payment, or longer if required by law;

    k) Carrier shall (i) obtain receipts for goods delivered as required by First Brands Group to substantiate billing for the services provided and (ii) at First Brands Group's request, provide copies of same to First Brands Group in sufficient detail to substantiate delivery, including documentation of the quantity of goods delivered and of any damage thereto;

    l) Carrier shall as soon as is reasonably practicable notify First Brands Group (i) if any of Carrier's registrations, safety ratings or other matters required by this Agreement are revoked, canceled, suspended or discontinued by operation of law or otherwise, or (ii) any of Carrier's insurance policies required by this Agreement are canceled, reduced or otherwise invalidated;

    m) Carrier shall meet First Brands Group's distinct needs as set forth in this Agreement, subject to Carrier's capacity, ;

    n) Carrier will make all necessary arrangements to provide sufficient and appropriate personnel, motor vehicles and equipment.

    o) the procurement of all applicable and required supplies, licenses, permits, certificates, titles, fees and other related requirements by all appropriate government agencies.

2. <u>Documentation of Shipments</u>. First Brands Group, including all of its corporate subsidiaries, affiliates and entities named in Schedule A, shall be free to utilize independently the services provided by the Carrier hereunder and ship commodities. Each such shipment shall be evidenced by a receipt in the form agreed to specified by Carrier and First Brands Group, which shall be signed by Carrier and show the description and quantity of commodities received by Carrier at the origin, provided however, that the absence or loss of any such receipt shall not relieve Carrier of its obligations and responsibilities with respect to any shipment made to hereunder. In the event that First Brands Group elects to use a bill of lading, manifest or other form of freight receipt or contract, any terms, conditions and provisions of such bill of lading, manifest or other form shall be subject and subordinate to the terms, conditions and provisions of this Agreement and, in the event of a conflict between the terms, conditions and provisions of such bill of lading, manifest or other form and this Agreement, the terms, conditions and provisions of this Agreement shall govern and prevail. Any prescribed form of bill of lading or transportation conditions shall be subject to the terms and conditions of this Agreement.

Shipments will be tendered by First Brands Group or a First Brands Group Lead Logistics Provider (LLP) listed in Schedule [E]. Carrier agrees to use its best commercial efforts to accept and transport such shipments in accordance with terms and conditions stated in this Agreement.

3. <u>Compensation</u>. First Brands Group (and/or any subsidiary or affiliate, as applicable) agrees to pay to Carrier, as compensation for the Transportation Service, the invoiced amounts, calculated in accordance with the schedule of rates and charges set forth in Schedules B and C hereto as full and complete compensation for non-accessorial services and for accessorial services properly performed pursuant to this Agreement. Rates and charges listed in Schedules B and C are not subject to adjustment during the Initial Term or Renewal Term of this Agreement unless agreed to by the parties and evidenced by the issuance of a written modification signed by authorized agents of both parties or in accordance with Article 29 hereof.

4. <u>Rules and Regulations</u>. All provisions of Schedules A, B and C, are incorporated by reference herein. In addition, except when it is inconsistent with the express provisions, terms or conditions of this Agreement, First Brands Group and Carrier shall comply with, and agree to be governed by, all laws, statutes, rules and regulations issued by governmental authorities that are applicable to common carriage by motor vehicles, including, but not limited to, rules and regulations regarding packaging, load securement, loss and damage claims, and bills of lading and further including the

procurement of necessary approvals, authorities or licenses from all appropriate governmental agencies.

5.    Control of Transportation.  If Carrier uses a substituted service of any type, with or without First Brands Group's permission, Carrier agrees to remain liable for any loss, damage or delay to First Brands Group's property incurred in transit to the same extent that Carrier would be liable if it performed the transportation directly    Carrier shall have sole and exclusive responsibility over the manner in which it or its employees perform the Transportation Service.  Carrier shall contractually require any independent contractor that it engages to perform Transportation Services required by this Agreement shall, (1) maintain all licenses, permits and authorities required to perform the Transportation Services; (2) maintain at least the levels of insurance as set forth in Article 7 hereunder; (3) maintain a "Satisfactory" safety rating (or an equivalent rating that may exist under the laws of Canada with respect to Transportation Services in Canada respectively) when applicable; and (3) comply with all applicable laws or regulations in performing the Transportation Services. Carrier's relationship with First Brands Group shall be that of an independent contractor, and not that of a First Brands Group agent, joint venture partner or employee, and nothing contained herein shall be construed to be inconsistent with that independent contractor relationship.  Carrier shall have exclusive control and direction of the personnel operating its motor vehicles and equipment or otherwise engaged in providing the Services.  Carrier shall pay and assume full responsibility for all commissions, salaries, insurance, taxes, pensions, benefits and other expenses of Carrier and its employees, agents and representatives in the performance of this Agreement.  Notwithstanding the above, First Brands Group and Carrier acknowledge that they intend to work together to insure the industry best standard and most economical Transportation Service.  Therefore, the parties agree to cooperate fully with each other in all matters relating to the services to be rendered by Carrier for First Brands Group hereunder.

6.    Contract Carriage.  Regardless of whether Carrier is authorized to operate, or does operate, as a common Carrier, each shipment tendered to Carrier by First Brands Group during the term of this Agreement shall be transported by Carrier as a motor contract Carrier and not as a common Carrier.

7.    Insurance.

(A)    Carrier shall maintain at its own cost, at all times during the term of this Agreement, the following types of insurance coverage:

(1)    Automobile Liability Insurance, with combined limits of not less than $1,000,000 per occurrence,

(2)    Commercial General Liability Insurance, with a limit of not less than $1,000,000 per occurrence, $2,000,000 aggregate,

(3)    Cargo Legal Liability Insurance, with a limit of not less than $250,000 per shipment,

(4)    Worker's Compensation Insurance or qualification as a self-insurer to satisfy the laws of the states and/or provinces in which the employees and contractors of Carrier are employed, and

(5)    Employers' Liability Insurance, with a limit of not less than $1,000,000 per accident.

(B)    Carrier agrees that all Carrier's insurance identified in Sections 7, (A)(1), (A)(2) and (A)(3) above will specifically indicate that coverage with respect to First Brands

Group (and any First Brands Group affiliate or subsidiary for which it performs services) will be primary to any other insurance carried by or on behalf of First Brands Group. Carriers' said insurance policies will provide for a 30-day notice to Carrier in the event of cancellation of coverage. Carrier shall promptly provide notice to First Brands Group upon receipt of such notice from its insurer(s). All of the Carrier's above-mentioned insurance will be occurrence-based coverage, and insured by insurance companies with an AM Best Rating of not less than A- IIV.

(C)     Carrier will provide First Brands Group with written certification, reasonably acceptable to First Brands Group, of Carrier's compliance with the requirements listed in Sections 7(A) and 7(B) above.

(D)     The requirements in this Section 7 are separate and distinct from any other obligations of Carrier under this Agreement.

8.     <u>Operating Authority</u>. Carrier shall maintain valid Operating Authority and provide to First Brands Group upon request: (a) copies of Carrier's operating authority, as issued by the Federal Motor Carrier Safety Administration, or any predecessor or successor agency or as required by any other applicable federal or provincial government agencies of Canada in which it operates, upon execution of this Agreement and any amendment thereto within thirty (30) days of such amendment.

Carrier is a motor carrier authorized by the U.S. Department of Transportation ("USDOT") to transport general commodities in interstate, intrastate, and foreign commerce. When Carrier acts as a motor carrier, it is acting pursuant to its motor carrier authority #MC 109533 Sub 146 (as to common carrier authority) and #MC 109533 (Sub-No. 149-P) (as to contract carrier authority);

9.     <u>Liability</u>. From the time that the products have been physically delivered to possession of Carrier, evidenced by a bill of lading, shipping order or other appropriate documents signed by Carrier's employee or independent contractor, Carrier shall be responsible to assure that the products are properly loaded and secured for transit, and that the products are promptly and safely transported and delivered to their destination. Control, risk of loss subject to the limitations of liability stated in Section 11, shall be assumed by Carrier at the time Carrier takes possession and/or removes the products from their present location on First Brands Group's property. Carrier's responsibility shall extend until the time that delivery to First Brands Group's designated recipient is achieved, the goods accepted and a delivery receipt is given, and nothing remains to be done by Carrier to deliver the shipment to the consignee. Liability as to returned or rejected shipments shall continue until the shipment is delivered in accordance with First Brands Group's instructions.

10.     <u>Trailer Drop-offs</u>. Carrier shall have the right, with First Brands Group's prior consent, to drop and spot trailers for loading and unloading, and initial spotting, when and as requested by First Brands Group, subject to the terms and conditions of Schedule F at no additional charge. Notwithstanding First Brands Group's consent, such trailer drop-off shall be deemed to be for the sole convenience of Carrier and shall not subject First Brands Group to the payment or collection of any charges for detention or demurrage. Carrier, at its sole cost and expense, shall have the right to remove any unloaded trailer at any reasonable time upon prior notice to First Brands Group. First Brands Group shall have the right to move any trailer on its property and, at its convenience, may load such trailer for transportation by Carrier.

11.     <u>Loss or Damage to Shipments</u>. Except as limited herein or in any of the attachments hereto, Carrier agrees that, in the transportation of all goods hereunder, it shall assume, and does assume,

the liability of an interstate motor carrier, as provided by 49 U.S.C. § 14706, such liability to exist from the time of the receipt of any of said goods by Carrier until proper delivery has been made.

All liability standards and burdens of proof will be governed by the common law applicable to common Carriers, the provisions of 49 U.S.C. §14706 and rules promulgated thereunder.  All claims will be filed and resolved in accordance with the regulations, which are presently codified at 49 C.F.R. §370.

The time limit for filing a claim against Carrier for damage claims shall be nine (9) months from date of delivery and loss claims shall be nine (9) months from date of shipment pickup., but First Brands Group shall be deemed to have filed such a claim in a timely manner in the event of any of the following:

a)  by the mailing of a claim within that time limit;
b)  by an exception notation written on the Delivery Receipt by the consignee or its agent, followed by the mailing of a claim within nine (9) months of delivery; or
c)  by Carrier's knowing acceptance or sale of the goods in their damaged condition.

First Brands Group's claims against Carrier shall be either paid, compromised or disallowed within 60 days of receipt by Carrier, and unless First Brands Group has failed to provide complete documentation.

The time limit for filing suit against Carrier for loss or damage claims shall be two (2) years from the date First Brands Group receives a written disallowance from Carrier which includes a detailed statement of a lawful reason for declining to accept liability for the loss, or damage in compliance with all applicable regulations, statutes and laws, which shall come from Carrier and not from its insurer or other third party.   An offer of compromise shall not constitute disallowance of any part of the claim unless Carrier informs First Brands Group in writing that such part of the claim is disallowed and provides the lawful reasons for such disallowance.  If for any reason Carrier's insurance company refuses to pay First Brands Group with respect to any valid claims, Carrier shall promptly pay the balance due First Brands Group.

First Brands Group shall retain title to and remain the beneficial owner of all salvage.  If mitigation is not possible and salvage is retained by Shipper, Shipper shall deduct from such claim to Carrier a 50% salvage allowance.

12.   Indemnification.  To the extent caused by the negligent acts, omissions, or willful misconduct of Carrier during the course of performance under this Agreement, Carrier covenants and agrees to indemnify, defend and hold harmless First Brands Group, its present and future officers, directors, employees, representatives, agents, successors and assigns from all liabilities, claims, penalties, forfeitures, causes of action, suits, and costs and expenses incident thereto (including but not limited to costs of defense, settlements, and reasonable attorneys' fees) which First Brands Group, its present and future officers, directors, employees, representatives, agents, successors, assigns, or any of them may hereafter suffer, incur, become responsible for or pay out as a result of death or bodily injury to any person, destruction or damage  to any property, real or personal, (excluding cargo loss, damage or delay) contamination of or adverse effect on the environment, or violation or alleged violation of any applicable federal, state or local law, rule, regulation or ordinance.  Such obligations shall not apply to the extent caused by First Brand Group's negligence, willful acts or omissions..

To the extent caused by the negligent acts, omissions, or willful misconduct of First Brands Group during the term of this Agreement, First Brands Group covenants and agrees to indemnify, defend and hold harmless Carrier, its present and future officers, directors, employees, representatives, agents, successors and assigns from all liabilities, claims, penalties, forfeitures, causes of action, suits, and costs and expenses incident thereto (including but not limited to costs of

defense, settlements, and reasonable attorneys' fees) which Carrier, its present and future officers, directors, employees, representatives, agents, successors, assigns, or any of them may hereafter suffer, incur, become responsible for or pay out as a result of death or bodily injury to any person, destruction or damage to any property, real or personal, (excluding cargo loss, damage or delay) contamination of or adverse effect on the environment, or violation or alleged violation of any applicable federal, state or local law, rule, regulation or ordinance. Such obligations shall not apply to the extent caused by Carrier's negligence, willful acts or omissions.

If the indemnified party claims indemnification hereunder, the indemnifying party shall be informed promptly in writing of such claim; provided, however, that the failure to promptly inform the indemnifying party of such claim shall not reduce the obligations of the indemnifying party to provide indemnification, except to the extent that the indemnifying party has been irreparably and materially prejudiced thereby. The indemnified party shall cooperate as reasonably requested by the indemnifying party, at the indemnifying party's expense, in the defense of any indemnified claims and shall not unreasonably withhold its consent to the settlement thereof. In addition, the indemnified party shall have the right to be represented by counsel of its own choosing in any action, at its own expense. The provisions of this Section 12 do not apply to "Loss or Damage to Shipments" claims, which are covered by Section 11 of this Agreement.

13.   <u>Payment</u>. As further outlined below, Carrier shall invoice First Brands Group (or if it so directs its freight payment agent) either by conventionally transmitted freight bills, Electronic Data Interchange or participation in First Brands Group's self-invoicing freight payment program as agreed by the parties for amounts due and owing for the Transportation Service, calculated in accordance with the rates and charges set forth in Schedules B and C, including without limitation, claims for equipment detention charges or other similar charges for any delay in the delivery schedule due to the actions of First Brands Group. Payments shall be made exclusively by First Brands Group or its freight payment agent. Carrier shall not communicate, directly or indirectly, with First Brands Group's customers, consignors, consignees or any party concerning the collection of any charges relating to the services provided under this Agreement.

All invoices or other claims for payment for Transportation Service provided by Carrier hereunder shall be submitted to First Brands Group within one hundred and eighty (180) days from the date such Transportation Service is provided to First Brands Group. Any charges not submitted and received within such one hundred and eighty (180) day period are null and void, and Carrier waives any and all claims for charges for Transportation Service not submitted in accordance with the time period set forth above.

Carrier shall notify First Brands Group in writing of any freight bills remaining unpaid after one hundred twenty (120) days of ship date. First Brands Group will pay Carrier within 45 days of the date of Carrier's original invoice with the understanding that credit is extended by Carrier, in its sole discretion. In the event First Brands Group breaches its payment obligations hereunder, Carrier may retract such extended credit. Claims against Carrier of any kind may not be deducted from freight charges or from any other amount due and owing Carrier.

The liability of First Brands Group, including all of its corporate subsidiaries, affiliates and entities, shall be several and not joint and, therefore, none of First Brands Group's corporate subsidiaries, affiliates or entities, shall be liable for payments to Carrier for shipments of commodities requested by and made on behalf of another of First Brands Group's corporate subsidiaries, affiliates or entities.

Except as otherwise provided herein, the processing, investigation, and disposition of overcharge, unidentified payment, duplicate payment or over-collection claims shall be governed by the regulations that are presently codified at 49 C.F.R. 378.

Carrier shall not claim title or any rights in, and shall not have any lien on, and expressly waives its right to place any lien on, any cargo, freight or other property of First Brands Group or any of its customers shipped pursuant to this Agreement.  In the event insolvency proceedings are instituted by or against Carrier, First Brands Group may immediately enter upon the premises where its goods may be found and take possession thereof.

14.   <u>Undercharges and Overcharges</u> .  Any action or proceeding by Carrier to recover undercharges alleged to be due hereunder, and any action or proceeding by First Brands Group to recover overcharges, over collections, duplicate or unidentified payments, or other billing disputes alleged to be due hereunder, shall be commenced not more than 180 days after the original bill date with respect to which such undercharges, overcharges, overcollections, duplicate or unidentified payments, or other billing disputes are claimed.  To the extent permitted by applicable law, the expiration of the said 180 day period shall be a complete and absolute defense to any such action or proceeding, without regard to any mitigating or extenuating circumstance or excuse whatsoever

15.   INTENTIONALLY DELETED

16.   <u>Force Majeure</u>.  The obligations of Carrier to furnish the Transportation Service, and of First Brands Group to use the Transportation Service, shall be temporarily suspended during any periods when either of the parties is unable to comply with the requirements of this Agreement by reason of the acts of God, public enemy, labor disorders, fire, floods, strikes, lockouts, work stoppages, plant closings or shutdowns, accidents, civil commotion, closing of public highways, governmental interference or regulations and other contingencies, similar or dissimilar to the foregoing, beyond the reasonable control of the affected party.  The party that is unable to perform because of such an event shall give the other notice of same within three (3) business days of the occurrence of such event

17.   <u>Term and Termination</u>.   The term of this Agreement shall commence the 15th day of March, 2021, and shall continue until terminated, with or without cause, by either Party's giving the other Party thirty (30) days prior written notice.  In the event either Party breaches a material provision of this Agreement and such breach is not cured within ten (10) days from the date notice is given to the breaching Party by the non-breaching Party, the non-breaching Party may terminate this Agreement immediately upon notice and shall not operate to otherwise restrict the rights and remedies the non-breaching Party might otherwise have against the breaching Party. Notwithstanding, in the event bankruptcy is filed against a Party, or if a Party otherwise becomes insolvent or makes general assignment for the benefit of creditors, the other Party may terminate this Agreement immediately without notice and without further obligation under the terms hereof

18.   <u>Default</u>.  In the event that either party shall fail to perform any covenant or condition required under this Agreement to be performed by that party, and such default in performance shall have continued for a period of seven (7) business days after written notice thereof given by the non-defaulting party, the non-defaulting party may declare the other party to be in default.  Upon

declaration of default, the non-defaulting party may elect to treat this Agreement as immediately terminated by written notice to the defaulting party.  Not terminating this Agreement in no way constitutes acceptance by the non-defaulting party of the default, and in no way limits the remedies of the non-defaulting party.

19.    <u>Assignment</u>.  This Agreement shall apply to and bind the successors and assigns of the parties; <u>provided</u>, however, that no such assignment by either parties shall be effective without the prior written consent of the party to be assigned.

20.    <u>Modifications and Effectiveness</u>.  It is agreed that there are no oral representations, agreements, or understanding affecting this instrument and that any future representation, agreement, understanding or waiver to be binding upon the parties hereto, must be reduced to writing or in accordance with Section 29 hereof.  Either party's failure to strictly enforce any provisions of this Agreement shall not be construed as a waiver or modification thereof excusing the other party from performance.

21.    <u>Entire Agreement</u>.  This Agreement and the Schedules attached hereto shall constitute the entire agreement between the First Brands Group and Carrier hereto with respect to the subject matter contained herein and supersedes any prior contracts, understandings, agreements, courses of conduct and quotations, oral or written between the parties hereto.  Any amendments to this Agreement or any Schedule must be agreed upon in writing with an effective date or in accordance with Section 29 hereof.  Amendments and Schedules will not be considered in force unless accompanied by the mutual agreement signatures of the authorized agents of both the First Brands Group and Carrier or in accordance with Section 29 hereof.

22.    <u>Notices</u>.  All notices required to be given under the terms of this Agreement or which either party hereto may desire to give to the other must be in writing and shall be delivered via mail or email to the addresses as noted below, unless otherwise notified differently by First Brands Group or Carrier.  The date of the notice so sent will be deemed to be the date of receipt:

| | |
|---|---|
| First Brands Group: | First Brands Group |
| | 1100 Worldwide Blvd. |
| | Hebron, KY  41048 |
| | Attn: Director Transportation |
| | |
| | Copy to: |
| | Trico Products Corporation |
| | 3255 W Hamlin Rd #3231 |
| | Rochester Hills, MI 48309 |
| | Attn:  Sr. Director Freight |
| | |
| | For notices involving a default or termination, a copy to: |
| | First Brands Group, LLC |
| | 127 Public Square, Suite 5300 |
| | Cleveland, OH  44114 |
| | Attn: General Counsel |
| | |
| Carrier: | YRC Enterprise Services Inc. |
| | 10990 Roe Ave. |
| | Overland Park, KS. 66211 |
| | Attn:  Vice President Pricng |

23.    <u>Confidentiality</u>.  The parties shall safeguard and  protect the confidentiality of all information related to this Agreement with the highest degree of control and care reasonably practicable, but not less than that degree of care practiced by such party with respect to its own similar property under similar circumstances, and shall not disclose any such confidential information, directly or indirectly, to any third party or use such confidential information other than for the purposes set forth in this Agreement; provided, however, that their obligations of confidentiality shall preclude neither the use nor disclosure of information in this Agreement:

a)    as required by law;
b)    was known by the other party prior to time of disclosure, is available or becomes generally available to the public other than through a breach of this Agreement, or is independently developed, or acquired or received rightfully and without confidential limitation from a third party;
c)    to obtain financing;
d)    to a corporate parent, subsidiary or affiliate; or
e)    to auditors, accountants, major lending institutions or legal counsel retained by a party for the purpose of assessing the accuracy of freight charges.

If a party becomes legally required to disclose confidential information, or any part thereof, such party will give the other party prompt notice of such requirement.

24.    <u>Applicable Law.</u>  Except to the extent inconsistent with federal law, this Agreement shall be governed by and construed in accordance with the internal laws and not the conflicts of laws rules of the State of Delaware without presumption or construction against the party preparing it.

25.    <u>Severability.</u>  Should any provision of this Agreement subsequently be determined to be illegal or unenforceable, said provisions shall at that time be deemed omitted from this Agreement and all other provisions shall be unaffected and shall continue in full force and effect.

26.    <u>Remedies.</u>  All remedies provided herein are cumulative and in addition to all other remedies which may be available at law or in equity.

27.    <u>Performance of Services.</u>  First Brands Group and Carrier represents, warrants and agrees that it is fully qualified and adequately equipped to perform the services it is obligated to provide hereunder and that all such services shall be performed in a good and workmanlike manner in accordance with industry practices.

28.    <u>Counterparts.</u>  This Agreement and all related Schedules and Amendments shall be executed simultaneously in at least two (2) counterparts, and each such counterpart shall be deemed an original, but shall together constitute but one (1) and the same instrument.

29.    <u>Electronic Commerce Enablement</u>.  At First Brands Group's  request and Carrier agreement, First Brands Group and Carrier will facilitate business transactions, including modifications to Schedules A, B and C as well as any other modifications to the Agreement required to be in writing, by electronically transmitting data utilizing electronic commerce enabling technologies.  Any data digitally signed pursuant to this Agreement and electronically transmitted will be as legally sufficient as a written, signed, paper document exchanged between the parties, notwithstanding any legal requirement that the data be in writing or signed.  Each authorized representative of a party

will adopt a unique, verifiable digital identification consisting of symbols or codes to be transmitted with each transmission.  Use of the digital identification will be deemed for all purposes to constitute a "signature" and will have the same effect as a signature on a written document.  Each authorized representative of a party will maintain sole control of the use of his or her digital identification and neither party will disclose the digital identification of the other party to any unauthorized person. Each party will provide appropriate security measures to ensure that all transmission of data are authorized and to protect data from unauthorized access, alteration, or loss.  Each party will use reasonable care to maintain the confidentiality of transactions and the data therein to the same extent as it would for paper documents of like kind and importance.

30.    <u>Conflicts of Interest</u>.  Neither party shall give any director, employee or representative of the other party any commission, fee, rebate, gift or entertainment of significant cost or value in connection with this Agreement or enter into any other business arrangement with any director, employee or representative of the other without prior written notification to and approval of the other party.

31.    <u>English</u>.  The parties hereto confirm that it is their wish that this Agreement as well as any other documents relating hereto including notices, have been and shall be drawn up in English only.

32.    <u>Undeliverable Shipment</u>.  If the consignee refuses a shipment tendered by Carrier for delivery; if Carrier is unable to deliver a shipment because of a fault or mistake of First Brands Group, or if First Brands Group advises and instructs Carrier to stop movement of a shipment and to hold it in transit, the shipment will be considered stored and Carrier's liability thereafter immediately shall be that of a warehouseman.  As a warehouseman, Carrier agrees to use ordinary care to keep the shipment in a safe and suitable place or to store the shipment properly. Carrier shall promptly attempt to provide notice, to First Brands Group or the party, if any, designated to receive notice on the bill of lading.

      If Carrier does not receive disposition instructions within seven (7) business days of the time of Carrier's first notification, Carrier will issue a final notification.  Such notice shall advise that if Carrier does not receive written disposition instructions within ten (10) business days of that notification, Carrier will return the goods, at First Brands Group's expense, to the shipping location identified on the bill of lading and First Brands Group will be responsible for Carrier's invoice for reasonable transportation, storage and other accrued charges.

33.    <u>Import and Export Laws</u>.  The parties acknowledge and agree that all activities hereunder, including the export, re-export, import, trans-shipment, transfer and release of all goods, software and technology are subject to all applicable U.S. and non-U.S. laws governing the import and export of goods, including, but not limited to, laws concerning export and economic sanctions, customs and related laws, other laws and executive orders of similar import, and any and all regulations and other measures promulgated pursuant to such laws or executive orders (collectively, "Import and Export Laws").  First Brands Group agrees to act as the "importer," "exporter" or other responsible party under all Import and Export Laws and, in such capacity, is solely responsible for properly classifying under the Import and Export Laws all goods, software and technology shipped between countries. First Brands Group is also responsible for providing written instructions to Carrier regarding any export, re-export, delivery, pickup or other activity in relation to any goods, software and technology, and these instructions shall be in compliance with all Import and Export Laws.

**34.    SPECIAL AND CONSEQUENTIAL DAMAGES.    IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES (INCLUDING DAMAGES RESULTING FROM LOSS, DAMAGE AND/OR DELAY TO CARGO), OR COMMERCIAL LOSS OF ANY KIND (INCLUDING, BUT NOT LIMITED TO, LOSS OF BUSINESS OR LOST PROFITS),**

**HOWEVER CAUSED AND ON ANY THEORY OF LIABILITY, EVEN IF A PARTY OR ITS AGENTS KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES.**

35.    FOODSTUFFS.        First Brands Group agrees that each shipment subject to this Agreement which contains foodstuffs i.e., edible materials, drugs that are ingested, injected intravenously, or otherwise taken internally, will be tendered to Carrier with the notation of "Foodstuffs" on the bill of lading.  Initials and acronyms are not acceptable

36.    RESTRICTED AND EXCLUDED COMMODITIES.    First Brands Group agrees not to tender any shipment to Carrier containing items designated as prohibited or restricted in Carrier's Rules Tariff. In the event of an accidental or inadvertent tendering by First Brands Group to Carrier of such prohibited or restricted items, Carrier's liability in the event of loss, damage and/or delay will be limited to $1.00 per pound per package or the actual value (whichever is less) and all other Carrier limitations and defenses contained herein will apply.

37.    LEGAL FEES.  Should any litigation be commenced between the Parties concerning any provision of this Agreement, the rights and duties of any entity in relation thereto, or the interpretation of any provision hereof, each Party shall pay and be responsible for its own attorney's fees and costs.

38.    SURVIVAL.    Those provisions that by their content are intended to survive the expiration or termination of this Agreement will survive the expiration or termination of this Agreement to the extent not prohibited by law.

39.    CONSTRUCTION.        This Agreement will not be construed against either Party due to authorship.  Nothing in this Agreement gives anyone, other than the Parties and any permitted assignees, any rights or remedies under this Agreement.

40.    AUTHORITY.  The Parties hereby represent that they have full power and authority to enter into and perform this Agreement and the Parties know of no contracts, agreements, promises or undertakings that would prevent the full execution and performance of this Agreement.  The Parties hereby represent to each other that the person signing this Agreement is duly empowered to bind the Party to this Agreement and no further proof shall be required.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

**First Brands Group:**

By:

Name: _____

Title: _____

Date: _____


**CARRIER:  YRC Enterprise Services Inc.**

By: *Richard Paul Willard*

Name: Richard Paul Willard

Title: Authorized Representative

Date: March 1, 2021

AB: 01033537jpk

**SCHEDULE A**

**Current First Brands Group Shipping & Bill to Location Listing – Updated 01/21/2021**

ASC Industries

1100 Worldwide Blvd

Hebron, KY 41048


Carter Fuel Systems

101 E Industrial Blvd

Logansport, IN 46947


Carter Fuel Systems

600 Elca Lane

Brownsville, TX 78521


FDC

6700 Paredes Line Road

Brownsville, TX 78526


FRAM

851 Jackson Street or 1100 Sater Street Gate 6 (Truck Entrance)
Greenville, OH 45331


Fram Group/Autolite

c/o RL Jones

1778 Zinetta Road, Suite A

Calexico, CA 92231


FRAM Group

1100 Worldwide Blvd.

Hebron, KY  41048


Strongarm

3108 US-76

Marion, SC 29571

Trico Aftermarket Plant 9

1900 Billy Mitchell Blvd BLDG D

Brownsville, TX 78521


Trico Aftermarket Anco

1900 Billy Mitchell Blvd BLDG B

Brownsville, TX 78521


Trico Aftermarket Napa

800 Elca Lane

Brownsville, TX 78521


Trico Plant 4

1995 Billy Mitchell Blvd

Brownsville, TX 78521


Trico El Paso

1401 Pullman Dr, Suite C

El Paso, TX 79936


Champion Laboratories, Inc

329 Industrial Dr

Albion, IL 62806


Champion Laboratories, Inc

51180 Celeste

Shelby Township, MI 48315


Brake Parts Inc (BPI)

1100 Corporate Dr

McHenry IL 60050


Brake Parts Inc (BPI)

1380 Corporate Dr

McHenry IL 60050

Brake Parts Inc (BPI)

1600 Industrial Dr

McHenry IL 60050


Brake Parts Inc (BPI)

2701 Keystone Pacific Pkwy Ste 100

Patterson, CA 95363


Centric Parts

14441 Bonelli St

City of Industry, CA 91746


Centric Parts

14528 E Bonelli St

City of Industry, CA 91746


Centric Parts

14421  Bonelli St

City of Industry, CA 91746


Centric Parts

211136 Figueroa St

Carson CA 90745


Centric Parts

21112 Figueroa St

Carson CA 90745


Centric Parts

21046 Figueroa St

Carson CA 90745


Centric Parts

1401 Pullman Dr

El Paso TX 79936

Stoptech (Centric)

1805 S Wilmington Ave

Compton CA 902205


Power Performance Group (Centric)

20645 Bahama St

Chatsworth, CA 91311




**ASC Freight Bill to Address:**

**ASC c/o ITS Traffic Systems**

**28915 Clemens Rd, #200**

**Westlake, OH 44145**


**Carter Fuel Systems Freight Bill to Address:**

**Carter c/o ITS Traffic Systems**

**28915 Clemens Rd, #200**

**Westlake, OH 44145**


**Fram/Autolite Freight Bill to Address:**

**Fram c/o ITS Traffic Systems**

**28915 Clemens Rd, #200**

**Westlake, OH 44145**


**Strongarm Freight Bill to Address:**

**Strongarm c/o ITS Traffic Systems**

**28915 Clemens Rd, #200**

**Westlake, OH 44145**


**Trico Freight Bill to Address:**

**Trico c/o ITS Traffic Systems**

**28915 Clemens Rd, #200**

**Westlake, OH 44145**

**Centric Parts c/o ITS Traffic Systems**

**28915 Clemens Rd #200**

**Westlake, OH 44145**


**Champion Laboratories c/o Blue Grace Logistics**

**2846 South Falkenburg Rd**

**Riverview FL 33578**


**Brake Parts Inc LLC c/o Williams and Associates**

**405 East 78th Street**

**Bloomington MN 55420-1251**

SCHEDULE B

ACCESSORIAL CHARGES AND DEFINITIONS

I.      **Accessorial Charges:**

| Accessorial | Charge Amount | Other Information |
|---|---|---|
| Collect on Delivery | $30.00 | Flat amount per shipment |
| Customers / Inbound: US & Canada | $30.00 | Flat amount per shipment |
| Driver Detention with Power | $20.00 | Flat amount per quarter hour (after 30 min.) |
| Driver Detention without Power | $40.00 | Flat amount per 24 hour period |
| Driver Hand Load / Unload: Weekdays | $50.00 | Flat amount per hour |
| Driver Hand Load / Unload: Weekends | $75.00 | Flat amount per hour |
| Hazmat | $7.50 | Flat amount per shipment |
| Inside Delivery | $2.00 | Per cwt. Minimum charge $30.00 |
| Lift gate Service | $20.00 | Flat amount per shipment |
| Marking & Tagging | $15.00 | Flat amount per hour |
| Reconsignment | $40.00 | Flat amount per reconsigned shipment |
| Redelivery | $30.00 | Flat amount per attempt |
| Saturday Pickup/Delivery | $50.00 | Flat amount per occurrence |
| Sufferance | $30.00 | Flat amount per shipment |
| Sunday / Holiday Pickup / Delivery | $75.00 | Flat amount per occurrence |
| Sorting & Segregating | $1.00 per cwt | Max of $75.00 |
| Storage | $25.00 | Flat amount per shipment per day |
| Trailer detention | $40.00 | Flat charge per calendar day (after 4 days) |
| Order not picked up | $0.00 | Waived |
| Corrected bill of lading | $0.00 | Waived |
| First Re-delivery | $0.00 | Waived |
| Re-weighing | $0.00 | Waived |
| Delivery Appointment / Notification Fee | $0.00 | Waived |
| Single Shipment | $0.00 | Waived |

II.     **Accessorial Definitions**

Carrier must have authorization from First Brands Group for accessorial charges incurred and is responsible for retaining documentation for the charges. Carrier agrees to provide documentation if requested by First Brands Group.

**Linear Foot / Capacity load** – For those shipments that meet the criteria stated below, the rule will apply when rating these shipments.

Linear Foot will apply on a shipment only if it occupies more than eight (8) feet in width and more than twenty-five (25) linear feet of the trailer. Such a shipment will be rated at 700 pounds a linear foot, at the contracted FAK class, less the contracted discount. In no case will the charges exceed

$1.25 per mile based on 300 miles or actual miles, whichever is greater.  Mileage will be determined by PC Miler, Version 31.

**COLLECT ON DELIVERY (C.O.D.)** - is defined as occurring when a Carrier is requested by the First Brands Group per the notation on the bill of lading to collect a specific payment for the value of the product shipped from the consignee. The Carrier must forward the payment to the First Brands Group in such a manner as to assure receipt by the First Brands Group. C.O.D. service is paid as a flat amount. All checks tendered in payment for C.O.D.  shipments will be accepted by Carrier at First Brands Group's risk. The fee for collecting and remitting a C.O.D.  other than a company check or customer check will be twice the amount listed. Redelivery fees will also apply if the consignee, upon proper notification by the Carrier, does not have the proper payment methods available at the time of the initial delivery.

**DRIVER DETENTION** is defined as occurring when the Carrier is detained at the First Brands Group, at a stop-off point, or at the consignee. Two (2) hours of free time will be applied prior to charges being authorized. Driver detention is paid as a rate per quarter hour after 30 minutes free time.

**HAZARDOUS MATERIALS** – Shipments as defined by the Department of Transportation regulations under title 49 CFR. The Carrier is responsible for safe and proper transport of commodities specified or known to be Hazardous Materials.

**INSIDE DELIVERY** – The movement of shipments or portions of shipments at consignee or consignor's request significantly beyond the immediate adjacent unloading area or to floors above or below the level accessible by the Carrier's vehicle.

**LIFTGATE SERVICE** is defined as occurring when the Carrier provides the use of a liftgate trailer to lower product to ground level for delivery. Liftgate service charges are paid as a flat rate.

**PROTECT FROM FREEZING** - requires the Carrier to transport the shipment at a temperature that assures the commodity is not frozen at any point in transit. First Brands Group will issue a tender to the Carrier notating this service.

First Brands Group will also send via electronic communication verification of these tenders and requested service. Carrier has the right to reject these tenders based on forecasted low temperatures and actual transit time but if the tender is accepted, the Carrier is obligated to perform this service. The First Brands Group will mark protect from freezing on the bill of lading. Protect from Freezing is paid at a flat rate per shipment.

**RECONSIGNMENT** is defined as a change in the consignee location once the shipment has arrived at the original destination. The new location must be a different address than the original consignee. If both are located at the same address, reconsignment charges will not be approved.

**REDELIVERY** is defined as occurring when a delivery is scheduled, Carrier arrives at the consignee to deliver, and delivery cannot be accomplished, therefore requiring that the Carrier return to deliver the shipment

Authorization must be obtained from First Brands Group at the time the delivery is unable to be completed as scheduled. Re-delivery charges are paid as a flat amount for each time the Carrier is unable to complete delivery as scheduled.

**RESIDENTIAL DELIVERY** – The movement of shipments or portion of shipments at consignee or consignor's request to a private residence. The term private residence is defined only as the premises on which there is a dwelling for living. Service will be to the main door of the residence.

**SATURDAY/SUNDAY/HOLIDAY PICKUP/DELIVERY** is defined as occurring when a driver is required to pick up and/or deliver on a Saturday, Sunday or on a holiday. Holidays are defined as January 1, Memorial Day, July 4, Labor Day, Thanksgiving Day, and December 25. Saturday/Sunday/Holiday Pickup/Delivery charges are paid as a flat amount. The Day after Thanksgiving Day will be considered a non-workday, not a paid holiday.

First Brands Group reserves the right to expect Carrier service on this day with proper notification.

**SORTING & SEGREGATING** - This service shall be applicable when the Carrier's driver or agent is required to sort the packages contained within that shipment by brand, size, marks or any other distinguishing packaging characteristics. Sorting and segregating service shall not include assembling, packing unpacking or dismantling of commodities. This fee shall be $1 per cwt and the maximum charge should be $75.00.

**STORAGE** – If the consignee refuses the shipment for delivery or the Carrier is unable to deliver the shipment through no fault of the Carrier, the Carrier's liability shall become that of a warehouseman. Carrier shall promptly notify First Brands Group by electronic notification. Storage charges will be paid as a flat fee per day commencing at 8 AM on the 5th business day after notification has been given to First Brands Group.

**TRAILER DETENTION** is defined as occurring when the Carrier's trailer or container is detained at the First Brands Group or consignee. Four (4) days of free time will be applied prior to charges being authorized. Trailer detention is paid as a flat rate per calendar day.

**ORDER NOT PICKED UP** – is defined as when the Carrier's trailer is ordered and not used. This charge shall be waived.

**CORRECTED BILL OF LADING** – is defined as when correction of bill lading occurs. This charge shall be waived.

**FIRST RE-DELIVERY** – is defined as when the first re-delivery of a shipment occurs. This charge shall be waived.

**RE-WEIGH** – is defined as charges for re-weighing a shipment. This charge shall be waived.

**DELIVERY APPOINTMENT AND ARRIVAL NOTIFICATION** – is defined as the fee for notifying the receiver of a scheduled delivery date and time. This fee shall be waived.

**SINGLE SHIPMENT CHARGE** – is defined as the fee for orders of single shipments. This fee shall be waived.


## FAK AND FUEL SURCHARGE TABLES

I.    **FAK Table**

Any Carrier awarded primary or secondary position on any lane agrees to make all their rates offered in any lane available for First Brands Group to tender. All rates offered are binding and effective for First Brands Group to ship upon given award and implementation.

All rates offered must be valid for at least 12 months with an option to extend by 1 year.

All rates offered take into account the following FAK structure for First Brands Group business units:

| NMFC Classification | | FAK Class |
|---|---|---|
| At Least | But Less than or Equal to | |
| 50 | 77.5 | 50 |
| 85 | 110 | 77.5 |
| 125 | 200 | 125 |
| 250 | 500 | 250 |

- Please note the following exceptions to the FAK structure for shipments originating out of Trico Products, Brownsville, TX 78521:
  - FAK Class 65 shall apply to articles with NMFC Classification of 60 through 110
  - NMFC 197720 will be rated at FAK Class 60
- Please note the following exceptions to the FAK structure for shipments originating out of Carter Fuel Systems, Brownsville, TX 78521 and Logansport, IN 49467:
  - FAK Class 100 shall apply to articles with NMFC Classification of 100 through 200
  - NMFC 127640 will be rated at FAK Class 100

## II.    Fuel Surcharge (FSC) Table

Freight charges for the line haul transportation and charges for other transportation services, which consume fuel when performed by Carrier under this Agreement, may be subject to a fuel surcharge as provided below. Surcharge shall not be assessed to over-dimensional penalties, permits or other charges not directly related to the consumption of fuel.

Adjustments in this fuel surcharge will be based on fuel prices announced on Monday of each week by the DOE's Energy Information Administration (EIA) in its "National Average Diesel Fuel Price Survey, (DOE National Average Price)". This fuel surcharge will be reviewed weekly and adjusted, if appropriate, as diesel fuel prices change in accordance with the table below. The Carrier should call the EIA @ (202) 586-6966 each Tuesday for an announcement advising the applicable average diesel fuel price to become effective the following Monday. The corresponding fuel surcharge will be effective Monday through Sunday of the next week.

| At Least | But Less than or Equal to | Fuel Surcharge factor is: |
|---|---|---|
| $1.210 | $1.259 | 0.60% |
| $1.260 | $1.309 | 0.90% |
| $1.310 | $1.359 | 1.20% |
| $1.360 | $1.409 | 1.50% |
| $1.410 | $1.459 | 1.80% |
| $1.460 | $1.509 | 2.10% |
| $1.510 | $1.559 | 2.40% |
| $1.560 | $1.609 | 2.70% |
| $1.610 | $1.659 | 3.00% |
| $1.660 | $1.709 | 3.30% |
| $1.710 | $1.759 | 3.60% |

| At Least | But Less than or Equal to | Fuel Surcharge factor is: |
|---|---|---|
| $1.760 | $1.809 | 3.90% |
| $1.810 | $1.859 | 4.20% |
| $1.860 | $1.909 | 4.50% |
| $1.910 | $1.959 | 4.80% |
| $1.960 | $2.009 | 5.10% |
| $2.010 | $2.059 | 5.40% |
| $2.060 | $2.109 | 5.70% |
| $2.110 | $2.159 | 6.00% |
| $2.160 | $2.209 | 6.30% |
| $2.210 | $2.259 | 6.60% |
| $2.260 | $2.309 | 6.90% |
| $2.310 | $2.359 | 7.20% |
| $2.360 | $2.409 | 7.50% |
| $2.410 | $2.459 | 7.80% |
| $2.460 | $2.509 | 8.10% |
| $2.510 | $2.559 | 8.40% |
| $2.560 | $2.609 | 8.70% |
| $2.610 | $2.659 | 9.00% |
| $2.660 | $2.709 | 9.30% |
| $2.710 | $2.759 | 9.60% |
| $2.760 | $2.809 | 9.90% |
| $2.810 | $2.859 | 10.20% |
| $2.860 | $2.909 | 10.50% |
| $2.910 | $2.959 | 10.80% |
| $2.960 | $3.009 | 11.10% |
| $3.010 | $3.059 | 11.40% |
| $3.060 | $3.109 | 11.70% |
| $3.110 | $3.159 | 12.00% |
| $3.160 | $3.209 | 12.30% |
| $3.210 | $3.259 | 12.60% |
| $3.260 | $3.309 | 12.90% |
| $3.310 | $3.359 | 13.20% |
| $3.360 | $3.409 | 13.50% |
| $3.410 | $3.459 | 13.80% |
| $3.460 | $3.509 | 14.10% |
| $3.510 | $3.559 | 14.40% |
| $3.560 | $3.609 | 14.70% |
| $3.610 | $3.659 | 15.00% |
| $3.660 | $3.709 | 15.30% |
| $3.710 | $3.759 | 15.60% |

| At Least | But Less than or Equal to | Fuel Surcharge factor is: |
|----------|---------------------------|---------------------------|
| $3.760 | $3.809 | 15.90% |
| $3.810 | $3.859 | 16.20% |
| $3.860 | $3.909 | 16.50% |
| $3.910 | $3.959 | 16.80% |
| $3.960 | $4.009 | 17.10% |
| $4.010 | $4.059 | 17.40% |

For diesel fuel prices above or below the scale published above, the fuel surcharge factor shall increase 0.3% for every 5 increase in diesel fuel prices.

In applying this surcharge, first determine the otherwise applicable charges provided in this Agreement, and then calculate the surcharge as above. When multiplying the freight charges by the surcharge, amounts of less than one-half cent will be dropped and amounts of one-half cent and more will be increased to the next whole cent. The fuel surcharge is to be shown as a separate entry on the Carrier's freight bill.

This fuel surcharge cancels and supersedes all previous fuel surcharge amendments.

Fuel surcharge records shall be maintained in First Brands Group's fuel surcharge files.

**Schedule C**

**AFFILIATED COMPANIES**

YRC Inc. d/b/a YRC Freight, a Delaware corporation
10990 Roe Avenue
Overland Park, KS 66211
Contract Carrier #: MC-2202 (sub 727)
DOT #: 071821
SCAC: RDWY

USF Holland LLC, a Delaware limited liability company
d/b/a Holland
700 S. Waverly Road
Holland, MI 49423
Carrier #: MC-59206
SCAC: HMES
DOT #: 75806

USF Reddaway Inc., an Oregon corporation
d/b/a Reddaway
7720 SW Mohawk Street, BLDG H
Tualatin, OR  97062
Carrier #: MC-65895 (sub 21)
SCAC: RETL
DOT #: 62227

New Penn Motor Express, LLC, a Delaware limited liability company
10990 Roe Avenue
Overland Park, KS 66211
Carrier #: MC-70832
SCAC: NPME
DOT #: 10670

SCHEDULE D
CARGO LIABILITY

A.    The following limits of liability apply to all shipments hereunder:

(i)    Carrier's Maximum Liability

Unless otherwise stated herein, in the event of loss, damage and/or delay to any shipment, for YRC Freight Carrier's liability will not exceed $25 per pound per package, subject to a maximum liability of $100,000 per shipment (whichever is less) and for Holland, Reddaway and New Penn Carrier's liability will not exceed $10 per pound per package, subject to a maximum liability of $100,000 per shipment (whichever is less), unless Shipper has requested excess liability coverage before the Carrier accepts tender of the shipment.  Excess liability coverage terms and conditions are stated in Carrier's Rules Tariff.  Such excess liability charge is in addition to the lawful freight charges otherwise accruing to the shipment.  Charges are to be paid by the party responsible for payment of the otherwise applicable freight charges.  Requests for excess coverage shall be made as the last entry in the "Description of Articles, Special Marks and Exceptions" section of the bill of lading or such similar section if the Uniform Straight Bill of Lading is not used.  Otherwise, such requests shall be made adjacent to, but not in lieu of, the "declared value" section on the bill of lading. Excess liability coverage is not available for commodities having a released or declared value in the National Motor Freight Classification 100 Series ("NMFC").

(ii)    Liability for Class, FAK and/or Exception Class Shipments

When shipments move under Class rates, FAK rates or Exception class, Carrier's liability will not exceed the maximum liability per pound per package for classes provided in Carrier's tariff. Exception rated shipments that do not have a class listed will default to the class 50 liability limit. When the shipment moves under actual class provisions, standard liability limitations will apply. All liability per pound per package will be subject to a maximum Carrier liability of $100,000 per incident per Shipper. Claims will be based on a per pound per package basis. Liability will not be determined on the weight of the entire shipment in question.

Carrier's liability for loss or damage to any article(s) or part thereof for which the charges are determined by class, FAK class or Exception class is limited to the lesser of:

(1)    actual invoice value of the article(s) lost, damaged or destroyed;
(2)    exclusions or limited liability provisions of the bill of lading;
(3)    applicable limited liability provisions of the NMFC;
(4)    lowest released value shown in the NMFC for the commodity shipped;
(5)    the maximums by class, FAK and/or exception class as provided in Carrier's tariff; or
(6)    a maximum of $100,000 per shipment.

(iii)    Carrier's Liability for Limited Liability Commodities (YRC Freight only)

Carrier's liability for commodities listed as Limited Liability Commodities in Carrier's rules tariff will be subject to the maximum liability per pound per package and maximum liability per occurrence provided in Carrier's rules tariff.

(iv)    Carrier's Maximum Liability on New Released or Declared Value Commodities
Release or declared value amounts will be as stated in the current NMFC tariff.  Carrier's liability will be according to Shipper's declaration on the bill of lading at the time of the shipment.  If there is no declaration on the bill of lading, unless the individual NMFC tariff item provides otherwise, Carrier's liability will be the lowest release value.  Unless the individual NMFC tariff item permits "full value" as choice, excess liability coverage is not permitted for release or declared commodities with the exception that YRC Freight will allow on NMFC 100240 – Household Goods.

(v)    Carrier's Liability on Used Goods
With the exception of Exhibit Materials, all used goods move subject a released value not to exceed $0.50 per pound, unless excess liability coverage is purchased.  Maximum liability for used goods is $5.00 per pound not to exceed $10,000.00 per shipment.

Obsolete, Unsellable, Waste articles shipped for purposes of Reclamation or Scrap articles of any kind will be accepted only when released to a value not exceeding $0.10 per pound per package.

Used items which have been reconditioned and not further used prior to shipment will be considered used equipment.  Exhibit materials move subject to 20% depreciation per year from date of original purchase based on the values stated on the original purchase invoice.

(vi)    Canadian Southbound Shipments
Shipments originating in Canada will be subject to liability not exceeding $2.00 per pound (CDN Funds) per shipment weight, unless a higher value is declared by the shipper.  Liability shall not exceed maximum value as provided in the NMF 100 series.

B.    Items not specifically addressed in this Agreement will be governed by Carrier's Rules Tariff.

**SCHEDULE E**

**SPOT TRAILER AGREEMENT**



Spot Trailer Agmt
20161207.pdf