## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 6748, 7509** |

**REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF YELLOW CORPORATION, *ET AL.*, TO THE OBJECTION OF
MFN PARTNERS, LP AND MOBILE STREET HOLDINGS, LLC TO
(A) APPROVAL OF FOURTH AMENDED DISCLOSURE STATEMENT FOR THE
FOURTH AMENDED JOINT CHAPTER 11 PLAN OF YELLOW CORPORATION
AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE AND (B) SOLICITATION PROCEDURES MOTION**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this reply (this "Reply") to the *Objection of MFN Partners, LP and Mobile Street Holdings, LLC to (A) Approval of Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code and (B) Solicitation Procedures Motion* [Docket No. 7509] (the "Objection").  In support of this Reply, the Committee respectfully states as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is:  11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

## REPLY[2]

1.        By its Objection, MFN Partners, LP and Mobile Street Holdings, LLC (collectively, "MFN") demonstrate yet again that their actions in these cases are and have always been driven by a singular desire to obtain a recovery on their ill-fated equity investment.  This desire is evident in MFN's repeated efforts to force the Debtors to ascribe value to the IBT litigation (value that is, given the procedural posture of that litigation, speculative at best) and to minimize the universe of unsecured claims ultimately allowed against the estates, irrespective of whether the positions asserted comport with applicable law or negatively impact general unsecured creditors as a class. MFN recognizes, at this late stage in the cases and after nearly all of the Debtors' assets have been monetized, that there will be no recovery for equity unless MFN can capitalize on a Hail Mary (*i.e.*, the IBT litigation) or otherwise extract consideration to which equity is not entitled from the creditors of these estates through value-destructive and meritless litigation tactics. These tactics include leveling baseless and inflammatory accusations at the Committee and its members, culminating in MFN's repeated assertions that the Committee has not acted in accordance with its fiduciary duties and thus neither it nor its members are entitled to benefit from the Plan's contemplated release and exculpation provisions.  This putative "objection" to the Disclosure Statement is, of course, properly taken up at confirmation—as are many of the other issues identified in the Objection.  The Committee, as a fiduciary of these estates, declines to engage in the type of rhetoric employed by MFN in its transparent attempt to extract hold up value from the

---

[2] Capitalized terms used but not defined herein shall have the meanings assigned to them in the *Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 6746] (the "Plan"), the *Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 6747] (the "Disclosure Statement") or the *Motion of Debtors for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 6748] (the "Soclicitation Procedures Motion"), as applicable.

Debtors and their creditors despite the Committee's support of a straightforward waterfall plan that clearly comports with the Court's directive to the parties (and with MFN's own views as to how these cases should be resolved).[3]  Instead, the Committee files this brief Reply to respond to certain of the more glaring misstatements and inaccuracies contained in the Objection, and to urge this Court to approve the Disclosure Statement.

2.      As an initial matter, MFN's characterization of the Plan's proposed release and exculpation provisions is simply wrong.  MFN states that the Plan "gives Committee members releases and exculpations, substantially risking both pending claim objections to Committee members and the lawsuit against the IBT[.]"[4]  MFN's statement—whether intentionally or unintentionally—demonstrates a fundamental lack of understanding as to how the Plan's release and exculpation provisions operate (and indeed, how release and exculpation provisions operate in nearly every chapter 11 plan).  The definition of Released Party in the Plan clearly provides that the release extends to the Committee and each Committee member solely "***in its capacity as such***."[5]  Stated differently, members of the Committee are proposed to be released solely in their capacity as members of the Committee and not, as MFN erroneously maintains, in their capacity as creditors, litigation counterparties or otherwise.  Similarly, the definition of Exculpated Parties as set forth in the Plan states that the exculpation extends to the Committee and each Committee member "***solely in its capacity as such***."[6]  The Committee's tireless and good-faith actions in these

---

[3] *See* Hr'g Tr. at 68:21–24 (D. Del. June 17, 2025) [ECF No. 6547] (MFN's counsel stating "I'm hoping that the parties that need to listen are listening, that either it's going to be global or it's going to be neutral waterfall or its going to be converted.  Any of those will be sufficient for us.").

[4] *See* Objection ¶ 6.

[5] *See* Article I.A.120 of the Plan ("Released Party" means, each of, ***and in each case in its capacity as such***: . . . (e) the Committee and its current and former members (including any *ex-officio* members(s) . . .") (emphasis added).

[6] *See* Article I.A.67 of the Plan ("Exculpated Parties" means, collective***ly, and in each case solely in its capacity as such***: . . . (b) the Committee and each of its current and former members (including any *ex-officio* members(s) . . .") (emphasis added).

cases more than justify including the Committee and its members (in their capacity as such) in the proposed release and exculpation provisions.[7]

3.    MFN goes on to argue that the Committee and its members should not be receiving releases in any capacity in any event, given that "[t]he Committee has done little in these cases to justify releases."[8]    MFN purports to support this wholly unfounded commentary by highlighting, yet again, the Debtors' and Committee's efforts to prosecute the Third Amended Plan, and the Committee's issue-specific determination to join, or not join, various claim objections prosecuted by the Debtors over the course of these cases.    The Committee has, to date, largely declined to respond to MFN's repeated efforts to tarnish the Committee through its invocation of these issues, but given the frequency with which MFN has determined to make these statements to the Court, the Committee feels that a response is appropriate at this time.    As to the Third Amended Plan, there is simply no support for the assertion that the Debtors and the Committee—as the estates' two fiduciaries—elected to "jam" a settlement through this Court that was designed to benefit certain Committee member creditors (and other large MEPP claimants) to the detriment of all other stakeholders.    The Third Amended Plan was the result of extensive, often contentious, good faith negotiations to move these cases forward to conclusion and represented, at the time and without the benefit of the Court's views regarding pending MEPP claim objections, a result that the Debtors and the Committee believed balanced the competing legal and factual disputes among the estates and their most significant claimants.    As the Court has repeatedly noted, after the Court provided the parties with its preliminary observations regarding pending MEPP claim disputes on April 7, 2025 (the "Preliminary Observations"), the Debtors and the Committee determined not to pursue

---

[7] The Committee will brief the release and exculpation issues further in connection with Confirmation, to the extent necessary.

[8] *See* Objection ¶ 25.

confirmation of the Third Amended Plan.[9]  MFN's revisionist attempts to characterize the Plan Proponents' efforts to negotiate and prosecute a plan containing numerous settlements of factual and complex, novel legal issues prior to the Court opining on the same (and without the estates having to expend further resources prosecuting and defending multiple, additional appeals) as negative or taken in bad faith do not alter the fact that such efforts in fact constituted a proper attempt by the Debtors and Committee to resolve these chapter 11 cases consensually and to maximize recoveries for all creditors taking into account the chapter 11 cases' posture at the time. Likewise, the Debtors' and Committee's determination not to proceed with the Third Amended Plan following the Court's provision of its Preliminary Observations and determination to pivot to pursuit of the Plan while continuing to pursue settlement discussions are fully in accord with the Debtors' and the Committee's fiduciary duties, as well as the Court's intentions behind the provision of its Preliminary Observations.[10]

4.    MFN similarly argues that the Committee's determination to join, or not join, certain of the Debtors' claim objections evidences its failure to acquit its duties and that an independent fiduciary should take a "hard look" at the Committee's actions (or inactions) in these cases.[11] There can be no real debate that, with respect to every issue in these cases, the Committee has conducted itself in accordance with its fiduciary duties to the unsecured creditors of these estates.  As an initial matter, the Committee functions pursuant to bylaws that contain robust

---

[9] *See* Hr'g Tr. at 3:2–13 (D. Del. May 14, 2025) [ECF No. 6392] (Debtors' counsel stating "Since the April 7th conference and the issuance of Your Honor's preliminary observations, we have been in very active discussions with the committee . . . regarding a revised settlement that incorporates and is reflective of Your Honor's rulings and guidance to date. . . . Our hope is that we will be in a position to file a further amended plan sometime in the near term and confer with the parties around a confirmation time line and path forward.")

[10] *See Memorandum Opinion Setting Forth Preliminary Observations On Remaining Multiemployer Pension Plan Claims Allowance Disputes* [ECF No. 6030] at 4 ("And all of the parties agreed that, however the Court might ultimately resolve the question, the issuance of preliminary observations would permit continued discussions among the parties and allow them to form considered judgments about how to proceed with respect to confirmation with greater visibility into the target at which they will be shooting.").

[11] *See* Objection ¶ 25.

conflicts procedures carefully designed to ensure, among other things, that conflicted members are recused from, and do not vote on, matters that implicate their own claims.  At all times, the Committee and its advisors have diligently analyzed every legal issue presented in these cases as applied to the facts known at the time, and have come to their own views as to the strengths and weaknesses of the arguments advanced by all parties involved.  As to the PBGC Regulations specifically, the Committee spent a significant amount of time educating itself on the complex and novel issues implicated by that dispute and ultimately came to the conclusion that the PBGC, CSPF and the SFA MEPPs were likely to prevail as a matter of law.  The Court ultimately agreed with the Committee's conclusion, and based on oral argument at the Third Circuit, it appears likely that the Third Circuit will affirm the Court's decision on the matter.  Given the Committee's own views as to the likely outcome of that dispute, it determined that it would not be appropriate to expend estate resources to support the Debtors in their efforts to invalidate the PGBC Regulations or to support the PBGC, CSPF or the SFA MEPPs on their own parochial issues.[12] Again, this topic is irrelevant to the question of whether the Disclosure Statement should be approved.

5.      Finally, MFN again objects to the Committee's involvement in the prospective Liquidating Trust's governance, irrespective of the fact that unsecured creditors are anticipated to be the sole beneficiaries of the Liquidating Trust Assets.  As previously set forth in the *Statement of the Official Committee of Unsecured Creditors Regarding Motion of Debtors for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures,  (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [ECF No. 4950], liquidating trusts are virtually always controlled by

---

[12] *See In re Bonert,* 2020 Bankr. LEXIS 1783, 2020 WL 3635869 (Bankr. C.D. Cal. June 3, 2020) (finding that the Committee's advocacy on behalf of specific creditors was not in the interests of the creditor body and that the Committee was not "fulfilling its primary responsibility to represent the interests" of all of its members).

a creditors' committee's designees when the trust at issue is contemplated to be formed for the sole or primary benefit of unsecured creditors.[13]  MFN's efforts to argue otherwise and disenfranchise the Committee from making decisions that directly affect its constituency—the only constituency entitled to share in the proceeds of the Liquidating Trust Assets as reflected in the Debtors' recovery estimates incorporated in the Disclosure Statement—underscore the fact that MFN is simply a disgruntled equity holder that refuses to acknowledge the irrefutable fact that its gamble to buy equity as a pure litigation play following the Debtors' determination to wind-down operations has failed.[14]  As to the conflicts issues that MFN claims will result in the "fox guarding the henhouse",[15] the Debtors and the Committee anticipate filing a form of Liquidating Trust Agreement prior to the hearing on the Disclosure Statement that will contain robust conflicts procedures designed to address and assuage any concerns as to how the Liquidating Trust will operate if the Plan is confirmed.  To the extent MFN or any other party objects to the terms of the Liquidating Trust Agreement, those objections can and should be taken up at confirmation, together with all of the other issues raised in the Objection that are not properly characterized as disclosure statement objections.  Accordingly, the Committee asks that the Court overrule the

---

[13] *See, e.g.,* First Amended Joint Plan of Reorganization of the Debtors and Debtors in Possession, *In re American Apparel, Inc.,* No. 15-12055 (BLS) (Bankr. D. Del.), D.I. 687-1 at art. 1 ¶¶ 79, 85 (providing that the litigation trustee and five-member trust board will be selected by the creditors' committee); First Amended Joint Plan of Liquidation of RS Legacy Corporation and Its Debtor Affiliates, *In re RS Legacy Corp.,* No. 15-10197 (BLS) (Bankr. D. Del.), D.I. 3067-1 at art. 1 ¶ 91, art. XI.A.3 (providing that the liquidating trustee and the seven-member board will be selected by the creditors' committee); Standard Register Company General Unsecured Creditors' GUC Trust Agreement, *In re The Standard Register Company,* No. 15-10541 (BLS) (Bankr. D. Del.), D.I. 888-1 at art 1.1.22, 7.1 (providing that the liquidating trustee will be selected by the creditors' committee and the GUC liquidating trust oversight committee will be comprised of members of the creditors' committee); Amended and Restated Seventh Plan of Reorganization for DLH Master Land Holding, LLC, *In re DLH Master Land Holding, LLC,* No. 10-30561 (HDH) (Bankr. N.D. Tex.), D.I. 1254 at art. 1.43, 1.76 (providing that the liquidating trustee and trust board will be selected by the creditors' committee).

[14] *See* Article III.D of the Disclosure Statement, Class 5 General Unsecured Claims Projected Recovery.

[15] *See* Objection ¶¶ 2, 6, and 31.

Objection and approve the Disclosure Statement as containing adequate information to enable creditors to determine whether to vote to accept or reject the Plan.

### RESERVATION OF RIGHTS

6.     The Committee expressly reserves the right to amend, modify or supplement this Reply, and to introduce evidence at any hearing relating to the Plan, the Disclosure Statement or the Solicitation Procedures Motion.  This Reply shall not in any way limit any other rights of the Committee to take any further action, on any grounds, as may be appropriate.

### CONCLUSION

7.     For the forgoing reasons and the reasons set forth in the Solicitation Procedures Motion, the Committee respectfully requests that the Court: (i) overrule the Objection; (ii) grant the Solicitation Procedures Motion; and (iii) approve the Disclosure Statement.

Dated:  August 29, 2025
Wilmington, Delaware

**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**

*/s/ Kevin M. Capuzzi*
Jennifer R. Hoover (DE No. 5111)
Kevin M. Capuzzi (DE No. 5462)
John C. Gentile (DE No. 6159)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
E-mail: jhoover@beneschlaw.com
        kcapuzzi@beneschlaw.com
        jgentile@beneschlaw.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Philip C. Dublin (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
Kevin Zuzolo (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: pdublin@akingump.com
        mlahaie@akingump.com
        kzuzolo@akingump.com

*Counsel to the Official Committee of Unsecured Creditors*