## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

**CRAIG T. GOLDBLATT**
**JUDGE**



**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

September 12, 2025

**<u>VIA CM/ECF</u>**

Re:    *In re Yellow Corporation, et al.,* No. 23-11069

Dear Counsel:

This Court held a hearing on September 5, 2025 on the fourth amended disclosure statement in connection with the debtors' fourth amended plan.[1] Various objecting parties, led by MFN, objected to the approval of the disclosure statement.[2] MFN's basic position is that the proposed plan is beset by problems of corporate governance. It contends that the most significant factor that will drive the recoveries of the holders of unsecured claims will be the allowance of various claims asserted by multiemployer pension plans, to which it (and the debtors) have objected. Under the plan, a majority of the board of managers of the liquidating trust will be appointed by the Committee. And a majority of the Committee's members are multiemployer pension plans. MFN views this situation as one of the fox being left to guard the

---

[1] D.I. 7547.

[2] MFN Partners, LP, along with its affiliate, Mobile Street Holdings, LLC, is referred to as "MFN."

henhouse.  MFN further argues that this problem is exacerbated by the fact that the trust will control a cause of action that the debtors asserted, prepetition, against the Teamsters Union.  So MFN contends that the close relationships between the multiemployer pension funds and the unions thereby creates further conflicts.

The debtors' basic response to this argument is that there is nothing at all surprising about the beneficiaries of a trust having a say in the governance of the trust, and that (for this reason) it is commonplace in chapter 11 cases for creditors' committees to appoint the managers of post-confirmation liquidating trusts.  To the extent that issues may arise between the trust and one or more of the entities that has appointed a member of the board of managers, ordinary corporate law principles involving disclosure of conflicts and recusal of conflicted members should be sufficient to ensure that the trust operates as an honest fiduciary that acts in the best interests of the beneficiaries of the trust.

At the September 5 hearing, the Court concluded that it would approve a disclosure statement, but that the disclosure statement should include an insert in which MFN states the reasons why it contends that the plan is deficient, and the debtors may offer their response to MNF's statement.  Needless to say, the merits of the objection to confirmation are not before the Court at this time, and all parties' rights on that merits issue are reserved.  The parties have met and conferred about the language to be included in such an insert to the disclosure statement but could not agree.  They have provided dueling language to the Court for its consideration. This letter ruling is intended to resolve that dispute.

*In re Yellow Corporation, et al.,* No. 23-11069
September 12, 2025
Page 3 of 8

The governing legal standards are not particularly contested. A disclosure statement must include "adequate information."[3]  That term is defined by the Bankruptcy Code to mean "information of a kind, and in sufficient detail, as far as is reasonably practicable … that would enable … a hypothetical investor of the relevant class to make an informed judgment about the plan."[4]  The statute goes on to explain that "in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information."[5]

The task is thus to ensure that the disclosure statement contains "adequate information" to enable impaired classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan.[6]  In this regard, the Court's overarching view is that (a) less can be more – there are times that including more information makes a document less understandable; (b) plain English is better than legalese; and

---

[3] 11 U.S.C. § 1125(b).

[4] *Id.* § 1125(a)(1).

[5] *Id.*

[6] *See, e.g., Century Glove, Inc. v. First American Bank of New York,* 860 F.2d 94, 100 (3d Cir.1988); *In re Phoenix Petroleum Co.,* 278 B.R. 385, 392-393 (Bankr. E.D. Pa. 2001).  *See also* H.R. Rep. No. 595, 95th Cong, 1st Sess., 408-409 (1977) ("Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection.")

*In re Yellow Corporation, et al.,* No. 23-11069
September 12, 2025
Page 4 of 8

(c) where a disclosure statement sets forth competing views about the best course for the estate, the positions should be set out in a balanced and measured way. The goal is to inform creditors, not to inflame them.

The Court has reviewed the dueling language submitted by the parties. The Court concludes that to best achieve the goals reflected in § 1125 of the Bankruptcy Code, the disclosure statement insert should read, in substance, as follows:

**Article III.U: Are there any parties anticipated to object to confirmation of the Plan?**

MFN Partners, LP ("MFN"), Mobile Street Holdings, LLC ("Mobile Street"), CRG Financial, LLC, Interstate Building Maintenance Corp., and Boulevard Truck Lease, Inc. (collectively, the "Objecting Parties"), who collectively hold more than 110 claims against the Debtors (and in the case of MFN, is the largest shareholder of Yellow) believe that the proposed Plan is flawed and will not maximize recoveries for Class 5 creditors and Yellow's shareholders. The Objecting Parties have requested that this Disclosure Statement include the following information. The Plan Proponents – the Debtors and the Committee – disagree with the Objecting Parties' positions. The Plan Proponents also believe that MFN is motivated by its equity interests. The Objecting Parties do not believe that the Committee members are motivated by maximizing recoveries for Class 5 general unsecured creditors.

***Under the Plan, the Committee is positioned to select a majority of the Liquidating Trust Board and, in consultation with the Debtors, the Liquidating Trustee, which the Objecting Parties oppose because members of the Committee hold the largest of the Disputed Claims in the Chapter 11 Cases.***

Under the Plan, the Committee has the exclusive right to appoint four of the five members of the Liquidating Trust Board of Managers (the "Trust Board") and nominate (with the Debtors being the only other consultation parties) the Liquidating Trustee. Pursuant to the Liquidating Trust Agreement, the Liquidating Trustee will act at the direction of the Trust Board, including whether to pursue, settle or abandon claim objections and litigation claims that could (if the Liquidating Trust is successful) significantly improve recoveries for

Class 5 creditors and potentially provide a return to Yellow's shareholders. The Plan Proponents assert that the decisions by the Liquidating Trustee, at the direction of the Trust Board, to pursue, settle or abandon claim objections and litigation claims are subject to approval of the Bankruptcy Court to the extent certain materiality thresholds are exceeded.

The Objecting Parties believe that this is problematic for Class 5 creditors and shareholders for the following reasons:

- The 7-member Committee is comprised of two trade creditors; one former employee; the Central States, Southwest and Southeast Areas Pension Fund ("Central States"); the New York State Teamsters Pension and Health Funds ("New York Teamsters"); the International Brotherhood of Teamsters ("IBT"); and the Pension Benefit Guaranty Corporation ("PBGC"). Throughout the case, the Debtors' estates (and in some cases MFN/Mobile Street) have objected to claims of, taken positions adverse to, and/or sued Central States, New York Teamsters, IBT and PBGC.

- While the Debtors have worked closely with MFN/Mobile Street to disallow billions of dollars of claims asserted by Committee members Central States and New York Teamsters (and are seeking to disallow hundreds of millions of dollars more), the Committee has not joined in these objections. While the objections have thus far been generally successful, the Court's decisions sustaining those objections have not yet been tested on appeal.

- The Committee has called the Debtors' pending lawsuit and appeal against Committee member IBT a "Hail Mary", indicating that a Committee-controlled Trust Board may likewise will take a dim view of the litigation against the IBT (the "IBT Suit"). The Debtors have previously publicly stated that the potential value the Debtors stand to recover from the IBT Suit is over $1.5 billion. Accordingly, the Objecting Parties believe that success against the IBT could result in payment to all creditors in full. As noted herein, however, the Debtors have not succeeded in the IBT Suit to date and the U.S. District Court for the District of Kansas (the "Kansas District Court") has dismissed the Debtors' complaint and also denied the Debtors' motion for reconsideration. The Debtors have appealed to the Tenth Circuit Court of Appeals (the "Tenth Circuit") and would need the Tenth Circuit to reverse the Kansas District Court's prior rulings to have any chance of success in such action. MFN/Mobile Street detailed their views of the

effects of these objections in their motion to convert [Dkt No. 6204] at paragraph 17 and encourage all Class 5 creditors to review it; and

- While the Debtors' estates have brought over 600 "preference" adversary proceedings against entities who received payments from the Debtors within 90 days of the Petition Date (including some for as low as $12,000) despite many of them having ordinary course or new value defenses which would otherwise extinguish such claim(s), not a single Committee member was sued to avoid a preference even though several Committee members received payments within the same 90-day period. Because the two-year statute of limitations has now passed, any preference claims against Committee members have effectively been released. However, the Plan Proponents note that ASK LLP (the Debtors' special counsel retained for purposes of pursuing preference claims) determined that transfers made to Committee members were either not viable preferential transfers or were subject to viable defenses. The Objecting Parties note that ASK has not made such determinations with respect to other creditors notwithstanding noting potential affirmative defenses in many of the complaints.

These highlighted matters are why the Objecting Parties are concerned that issues regarding the post-confirmation governance of the trust – which have been a major source of friction and cost in these cases for over a year – cannot be handed to a constituency that itself has conflicted members.

### *The Liquidating Trust Agreement's "Conflict Provisions" Are Not Sufficient.*

The Debtors and the Committee believe that the proposed Liquidating Trust Agreement contains conflict provisions that protect Liquidating Trust Beneficiaries from unfair transactions. The Objecting Parties encourage all Class 5 members to carefully review the Liquidating Trust Agreement, which is attached hereto as Exhibit __.

The Objecting Parties believe, among other things, that the "conflict provisions" found in section 7.4 are insufficient for this case which, in the Objecting Parties' view, is materially different than typical issues of conflicts for Delaware trusts. The Plan Proponents disagree and believe that the conflict provisions are appropriately tailored to ensure that any members of the Trust Board that have conflicts on any issue to be considered by the Trust Board will be recused from such discussions and decisions and will not have access to any related information.

*In re Yellow Corporation, et al.,* No. 23-11069
September 12, 2025
Page 7 of 8

The Objecting Parties have proposed several ways to resolve their concerns, but no agreement has yet been reached on any or all of these proposals. These include:

- Appointing to the Liquidating Trust Board of Managers one independent Manager (i.e., not selected by the Committee or the Debtors though it can be a Class 5 creditor) who is authorized to direct the Liquidating Trustee with respect to prosecuting or settling any pending or anticipated estate claim objection involving any multi-employer pension plan, any WARN Act claim, or litigation against the IBT or any Committee member (to the extent not released or exculpated under the Plan);

    o The Plan Proponents do not believe this is a valid concern because the Liquidating Trustee will be an independent entity and will also serve as one of the five Managers serving on the Trust Board. The Liquidating Trustee will not be a member of the Committee and will be an independent entity with appropriate experience serving in similar trustee and fiduciary roles.

- Deeming, as of the Effective Date, Central States, New York Teamsters, the PBGC, and the IBT "Conflicted Managers" with respect to any multi-employer pension plan claim, any WARN Act claim, or litigation against the IBT, such that they cannot have access to any privileged materials, cannot participate in any Board meeting where such matters are discussed, and none of their advisors can be engaged by the Liquidating Trustee for such matters;

    o The Plan Proponents do not believe that this is a valid concern because, as noted above, the conflict provisions in the Liquidating Trust Agreement are appropriately tailored to ensure Conflicted Managers will be recused from such meetings and decisions and will not have access to any privileged materials or related information.

- In the event that the Liquidating Trustee determines to abandon any claim objections or Retained Causes of Action, the Liquidating Trustee must provide sufficient notice to Liquidating Trust Beneficiaries to give them adequate opportunity to object; and

    o The Plan Proponents do not believe that this is a valid concern because the abandonment of material claim objections or

Retained Causes of Action will require Bankruptcy Court approval after notice and an opportunity for hearing.

- Removal of the bar on seeking derivative standing for Liquidating Trust Beneficiaries with respect to any claim objections or Retained Causes of Action that the Liquidating Trustee seeks to abandon or settle.

  o As noted above, the Plan Proponents do not believe that this is necessary because the Liquidating Trustee will be required to seek Bankruptcy Court approval for the abandonment or settlement of material claim objections or Retained Causes of Action.

Subject to the addition of an insert consistent with the language set forth above, the Court is prepared to enter an order approving the disclosure statement.

The parties are directed to settle an order so-providing under certification of counsel.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge