**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline:**<br>**November 5, 2025 at 4:00 p.m.**<br>**(prevailing Eastern Time)** |
| | **Hearing Date:**<br>**November 12, 2025, at 10:00 a.m.**<br>**(prevailing Eastern Time)** |

**DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) APPROVING CERTAIN ASSET
PURCHASE AGREEMENTS; (II) AUTHORIZING AND
APPROVING SALES OF CERTAIN PROPERTIES OF THE
DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, IN EACH CASE PURSUANT TO THE APPLICABLE
ASSET PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

1.     The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") seek entry of an order (the "<u>Order</u>"), attached hereto as **<u>Exhibit A</u>**, (i) approving and authorizing the Debtors' entry into those certain Asset Purchase Agreements, substantially in the forms attached to the proposed Order at <u>Schedule 1</u> (together with all exhibits, appendices, and supplements thereto, the "<u>Asset Purchase Agreements</u>"), by and among Debtor Yellow Corporation ("<u>Yellow</u>"), including its Debtor subsidiaries named therein, and the purchasers under the respective Asset Purchase Agreements (the "<u>Purchasers</u>"); (ii) approving and authorizing the sales of the applicable Acquired Assets thereunder as defined in the respective Asset Purchase

---

[1]     A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is:  11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

Agreements (the "<u>Subject Properties</u>") free and clear of all liens, claims, and encumbrances (collectively, the "<u>Liens</u>"), with such Liens attaching only to the proceeds of the respective sales with the same validity, priority, force, and effect such Liens had on the applicable Acquired Assets immediately prior to the closings of such sales; and (iii) granting related relief.

2.    In support of this motion (the "<u>Motion</u>")[2] and the relief requested hereby, the Debtors will substantially contemporaneously herewith submit the *Declaration of Cody Leung Kaldenberg in Support of Entry of an Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; and (III) Granting Related Relief* (the "<u>Kaldenberg Declaration</u>").

**Jurisdiction and Venue**

3.    The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012 (the "<u>Amended Standing Order</u>").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Local Rules</u>"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Bidding Procedures (as defined herein), the September Sale Process Notice (as defined herein), the applicable Asset Purchase Agreement, or the Order, as applicable.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Bankruptcy Local Rules 2002-1 and 6004-1.

**Background**

6.      On August 6, 2023 (the "Petition Date") and continuing into August 7, 2023, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases (the "Chapter 11 Cases") have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169].

7.      The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee").  No trustee or examiner has been appointed in these Chapter 11 Cases.

8.      One week prior to the Petition Date, on July 31, 2023, the Debtors, through their investment banker, Ducera Partners ("Ducera"), commenced a marketing and sale process for their extensive portfolio of Real Property Assets.[3]  As described in the Kaldenberg Declaration, the Subject Properties were included in the Debtors' prepetition marketing launch, which involved outreach by Ducera to approximately 650 prospective purchasers.

---

[3]      *See Declaration of Cody Leung Kaldenberg In Support of The Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 515] (the "Kaldenberg Bidding Procedures Declaration").

9.     On September 15, 2023, the Court entered the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order").

10.    Pursuant to the Bidding Procedures Order, Bids for the Debtors' Real Property Assets, including for the Subject Properties, were due November 9, 2023 at 5:00 p.m. (ET) (the "First Bid Deadline").  As described in the Kaldenberg Declaration, the Debtors and their advisors, including Ducera, in consultation with the Committee and its advisors, determined as of the First Bid Deadline that the competitive dynamics for the Subject Properties were insufficient to support a value-maximizing auction for the Subject Properties at the time.  Accordingly, the Subject Properties, among other of the Debtors' Real Property Assets, were not made subject to the Auction held on November 28-30, 2023 (the "First Auction").

11.    On September 25, 2024, the Debtors filed the *Notice of Supplemental Dates and Deadlines Under Bidding Procedures Order Regarding Debtors' Continued Sale Process* [Docket No. 4425] (the "September Sale Process Notice"), setting October 18, 2024 at 5:00 p.m. (ET) as the deadline (the "IOI Deadline") for prospective bidders to submit non-binding, written indications of interest ("IOIs") to the Debtors for any of the properties, including the Subject Properties, in the Debtors' Remaining Real Estate Portfolio.

12.     On November 18, 2024, the Debtors filed that certain *Notice of Further Supplemental Dates and Deadlines Regarding Continued Sale Process for Debtors' Remaining Properties, Including Bid Deadline, Auction, and Sale Hearing* [Docket No. 4952] (the "November Sale Process Notice"), setting forth and establishing certain dates and deadlines regarding the Debtors' continued sale process for the Remaining Properties, including the Subject Properties (collectively, the "Sale Dates and Deadlines"), including January 6, 2025 at 5:00 p.m. (ET) as the Bid Deadline.

13.     On each of January 3, 2025, January 23, 2025, February 3, 2025, February 20, 2025, March 5, 2025, and March 20, 2025, the Debtors, in consultation with the Committee and in accordance with the Bidding Procedures Order, filed those certain *Notice[s] of Further Supplemental Dates and Deadlines Regarding Continued Sale Process for Debtors' Remaining Properties, Including Bid Deadline, Auction, and Sale Hearing* [Docket Nos. 5328, 5519, 5597, 5701, 5841, 5917] (collectively, with the September Sale Process Notice, the November Sale Process Notice, and the March Sale Process Notice (defined below), the "Sale Process Notices"), in each case (x) setting forth and establishing certain revised Sale Dates and Deadlines, including, pursuant to the March 20, 2025 notice filed at Docket No. 5917 (the "March Sale Process Notice") and with respect to each of the Sale Dates and Deadlines, at dates and times to be determined and (y) providing that "the Debtors reserve all rights under the Bidding Procedures Order, including, without limitation, to further modify the Bidding Procedures (including regarding the matters set forth herein) and to seek all value-maximizing alternatives for the Remaining Properties in accordance with the terms thereof."

14.     As described in the Kaldenberg Declaration, following the IOI Deadline, the Debtors and their advisors analyzed all IOIs received, including for the Subject Properties under

the Asset Purchase Agreements, and pursued discussions and negotiations with interested parties, including the Purchasers, that had indicated competitive value for the Subject Properties. The Debtors and their advisors have engaged in hard-fought, good faith, and arm's-length negotiations with each of the Purchasers regarding the respective Asset Purchase Agreements.

15.     The Bidding Procedures provide that the Debtors, in their business judgment and in consultation with the Committee, may enter into private sale transactions for their Real Property Assets.  As described above, pursuant to the March Sale Process Notice and in accordance with the Bidding Procedures, each of the Sale Dates and Deadlines have been rescheduled to dates and times to be determined; and, as described in the Kaldenberg Declaration, entry into and consummation of the Asset Purchase Agreements by private sales represent, in the Debtors' business judgment following the Debtors' consultation with the Committee, the value-maximizing alternative for the Subject Properties.

16.     On October 3, 2025, the Debtors' advisors shared an advanced draft of the Rocchio Asset Purchase Agreement with the advisors to the Committee.  On October 16, 2025, the Debtors' advisors shared the AA Venture Holdings Asset Purchase Agreement with the advisors to the Committee.  On October 17, 2025, the Debtors' advisors shared an advanced draft of the ArcBest Asset Purchase Agreement with the advisors to the Committee.  On October 20, 2025, the Debtors' advisors shared an advanced draft of the Triten Asset Purchase Agreement with the advisors to the Committee.

17.     On October 20, 2025, the Debtors' advisors shared advanced drafts of the Motion and the proposed Order with the advisors to the Committee.

18.     The AA Venture Holdings Asset Purchase Agreement was executed on October 2, 2025.  The Rocchio Asset Purchase Agreement was executed on October 6, 2025.  The ArcBest

Asset Purchase Agreement was executed on October 17, 2025. The Triten Asset Purchase Agreement was executed on October 20, 2025.

19.      On October 22, 2025, the Debtors filed this Motion, seeking approval of the Asset Purchase Agreements and the transactions contemplated in each case thereunder (collectively, the "Sale Transactions"), along with the substantially contemporaneously filed Kaldenberg Declaration in support thereof.

### Asset Purchase Agreements

### I.      The Marketing Process.

20.      As described in the Kaldenberg Bidding Procedures Declaration and the Kaldenberg Declaration (the latter filed in support of the relief requested by this Motion), the Debtors commenced their initial marketing and sale efforts for their Real Property Assets, including for the Subject Properties under the Asset Purchase Agreements, one week prior to the Petition Date. Accordingly, the Debtors and their advisors, including Ducera and CBRE (as defined below), have marketed the Subject Properties for over two years—leaving no stone unturned.

21.      In advance of the Petition Date, the Debtors retained Ducera to serve as their investment banker, which retention was subsequently approved by the Court.[4] As described in the First Day Declaration,[5] Ducera's mandate included leading a comprehensive marketing and sale process for the Real Property Assets, including the Subject Properties. Throughout these

---

[4]      *See Order (I) Authorizing the Retention and Employment of Ducera Partners LLC as Investment Banker to the Debtors Effective as of the Petition Date, and (II) Granting Related Relief* [Docket No. 648] and *Amended Order (I) Authorizing the Retention and Employment of Ducera Partners LLC as Investment Banker to the Debtors Effective as of the Petition Date, and (II) Granting Related Relief* [Docket No. 4200].

[5]      *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14].

Chapter 11 Cases, Ducera has thoroughly canvassed the market of prospective purchasers of the Real Property Assets, including all of the Debtors' former LTL competitors and hundreds more strategic, financial, and real estate investment parties. Indeed, Ducera's process involved contacting approximately 650 parties at the launch of the marketing process and subsequently entering into nondisclosure agreements with over 400 interested parties.[6] Furthermore, the Debtors published the Auction Notice (as defined in the Bidding Procedures) in *The New York Times* [Docket No. 643] and *The Globe & Mail* [Docket No. 644], an additional Auction Notice was published January 17, 2025 in *The New York Times* [Docket No. 5526] and in *The Globe & Mail*, January 20, 2025 [Docket No. 5525], and these Chapter 11 Cases and the Debtors' sale efforts generally have been widely covered in national news and trade publications. The marketing and sale process, including for the Subject Properties, has been transparent and open to any and all prospective purchasers.

22.    Moreover, in August 2024, the Debtors retained CBRE Inc. ("CBRE") as their exclusive real estate broker for the properties comprising their Remaining Real Estate Portfolio, including the Subject Properties.[7] Among other services, CBRE provides "marketing and brokerage services in local markets [to] broaden the purchaser pool for the [Remaining Real Estate Portfolio]." CBRE's efforts, including outreach to prospective purchasers regarding the Subject Properties, have been underway for approximately ten months.

23.    The IOI Deadline for the properties comprising the Remaining Real Estate Portfolio, including the Subject Properties, was October 18, 2024 at 5:00 p.m. (ET), and the First

---

[6]    *Declaration of Cody Leung Kaldenberg in Support of the Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to Assume Certain Unexpired Leases and (II) Granting Related Relief* [Docket No. 2202].

[7]    *See Order (I) Authorizing the Retention and Employment of CBRE, Inc. as Real Estate Broker and Advisor to the Debtors Effective as of August 16, 2024 and (II) Granting Related Relief* [Docket No. 4183].

Bid Deadline for all of the Real Property Assets, including the Subject Properties, occurred eleven months prior to the IOI Deadline—on November 9, 2023 at 5:00 p.m. (ET).  Following the First Bid Deadline, the Debtors and their advisors (including Ducera), in consultation with the Committee and its advisors, and in their sound business judgment, determined to continue marketing certain properties, including each of the Subject Properties, rather than subject them to the First Auction.  Following the IOI Deadline (which followed approximately eleven months of further marketing of the Subject Properties), the Debtors, in consultation with the Committee, determined to pursue direct discussions with the Purchasers regarding the terms and provisions of the Asset Purchase Agreements.  Concurrently, the Debtors and their advisors held discussion with other interested parties indicating competitive value for the Subject Properties.  The Debtors, in consultation with the Committee, determined that the Asset Purchase Agreements maximized the value of the Subject Properties, and in turn, the estates.

24.    Accordingly, through this Motion, the Debtors, in an exercise of their sound business judgment and in consultation with the Committee, seek to enter into and consummate each of the Asset Purchase Agreements.  The Debtors' request for this relief follows intensive, hard-fought, and good-faith negotiations with each of the Purchasers regarding the terms and provisions of each of the respective Asset Purchase Agreements, and follows thorough marketing of the Subject Properties.

25.    The Debtors believe that it is beneficial to their stakeholders and will maximize the value of the Subject Properties (and, in turn, their estates and creditor recoveries) to consummate the Sale Transactions under the Asset Purchase Agreements.  The aggregate Purchase Price proceeds to be obtained by the Debtors' estates under the Asset Purchase Agreements is approximately $6.1 million, i.e., (1) $375,000 under the AA Venture Holdings Asset Purchase

Agreement, (2) $2,750,000 under the Rocchio Asset Purchase Agreement, (3) $375,000 under the ArcBest Asset Purchase Agreement, and (4) $2,600,000 under the Triten Asset Purchase Agreement.

26.    As described in the Kaldenberg Declaration, the Debtors, in consultation with the Committee, have determined in their business judgment that the Asset Purchase Agreements maximize the value of the Subject Properties and contain terms and provisions that are value-maximizing, fair, and reasonable.  The Asset Purchase Agreements are the culmination of hard-fought, good faith, arm's-length negotiations with the respective Purchasers.

27.    The following charts present summaries[8] of the terms and conditions of each of the Asset Purchase Agreements:[9]

### The AA Venture Holdings Asset Purchase Agreement

| Provision | Summary Description |
|---|---|
| Seller | Yellow Corporation and its subsidiaries listed therein |
| Purchaser | AA Venture Holdings LLC |
| Acquired Assets | One Owned Property<br>2257 South Main Street, Florence, South Carolina 29501<br><br>*See* AA Venture Holdings Asset Purchase Agreement, Schedule 1.1(a) |
| Purchase Price | $375,000<br><br>*See* AA Venture Holdings Asset Purchase Agreement, § 2.1 |
| Sale to Insider<br><br>Local Rule 6004-1(b)(iv)(A) | The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code. |

---

[8]    To the extent any summary of either of the Asset Purchase Agreements included in the Motion (including in the provided summary charts or the Motion generally) differs in any way from the terms and conditions of the corresponding Asset Purchase Agreement, the actual terms of the Asset Purchase Agreement shall control in all respects.  The ensuing charts are provided for summary purposes only.

[9]    Pursuant to Local Rule 6004-1(b)(iv), a Sale Motion (as defined in the Local Rules) must highlight certain provisions.  Accordingly, the relevant provisions implicating Local Rule 6001-1(b)(iv) are included herein.

| | |
|---|---|
| **Agreements with Management**<br><br>Local Rule 6004-1(b)(iv)(B) | N/A |
| **Releases**<br><br>Local Rule 6004-1(b)(iv)(C) | N/A |
| **Sale**<br><br>Local Rule 6004-1(b)(iv)(D) | Sale of the Acquired Assets pursuant to private sale authorized by the Sale Order. Pursuant to Local Rule 6004-11(b)(iv)(D), the business justifications for the sale are set forth in this Motion and the Kaldenberg Declaration. The Bidding Procedures provides that the Debtors have discretion to convey Real Property Assets via private sale in their business judgment in consultation with the Consultation Parties (*i.e.*, the Committee). |
| **Conditions Precedent**<br><br>Local Rule 6004-1(b)(iv)(E) | 7.1     Conditions Precedent to the Obligations of Purchaser and Sellers. The respective obligations of each Party to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Sellers and Purchaser) on or prior to the Closing Date, of each of the following conditions:<br><br>(a)     the expiration or termination of any required waiting period under the HSR Act, if required;<br><br>(b)     no Governmental Body of competent jurisdiction shall have issued, enacted, entered, promulgated or enforced any Order (including any temporary restraining Order or preliminary or permanent injunction) or Law restraining, enjoining or otherwise prohibiting the Closing that is continuing in effect;<br><br>(c)     the Bankruptcy Court shall have entered the Sale Order, which shall have become final and non-appealable and shall not have been stayed, reversed, or modified in a manner not acceptable to the Parties; and<br><br>7.2     Conditions Precedent to the Obligations of Purchaser. The obligations of Purchaser to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Purchaser in its sole discretion), on or prior to the Closing Date, of each of the following conditions:<br><br>(a)     (i) the representations and warranties made by Sellers in Article III (in each case, other than the Fundamental |

Representations and other than the representations and warranties set forth in Section 3.4) shall be true and correct in all respects as of the Closing Date as though made on and as of the Closing Date, except (A) that representations and warranties that are made as of a specified date need be true and correct in all respects only as of such date and (B) to the extent the failure of such representations and warranties to be true and correct as of such dates has not had a Material Adverse Effect and (ii) the representations and warranties set forth in Section 3.1, Section 3.2 and Section 3.6 (collectively, the "Fundamental Representations") shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that such Fundamental Representations that are made as of a specified date need be true and correct in all material respects only as of such date;

(b)      the representations and warranties set forth in Section 3.4 shall be true and correct in all respects as of the Closing Date with respect to each parcel of the Acquired Real Property;

(c)      Sellers shall not have breached in a manner that is material with respect to the Transactions, taken as a whole, the covenants required to be performed or complied with by Sellers under this Agreement on or prior to Closing; and

(d)      Purchaser shall have received on and as of the Closing Date a certificate of an authorized officer of Sellers confirming that the conditions set forth Section 2.4 have been satisfied.

(e)      As of the Closing Date, no right of first refusal relating to any individual parcel or parcels of Acquired Real Property shall have been exercised, and the deadline to exercise any such right of first refusal shall have expired.  In the event the foregoing condition is not satisfied as of the Closing Date, Purchaser may elect, in its sole and absolute discretion, to exclude such individual parcel or parcels of Acquired Real Property from the Acquired Assets and proceed with the Closing, with the Purchase Price to be reduced by an amount determined pursuant to the methodology set forth in Section 7.2(b) hereof.

7.3      Conditions Precedent to the Obligations of Sellers. The obligations of Sellers to consummate the Closing are subject to

| | the satisfaction (or to the extent permitted by Law, written waiver by Sellers in their sole discretion), on or prior to the Closing Date, of each of the following conditions: |
|---|---|
| | (a)      the representations and warranties made by Purchaser in Article IV shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that representations and warranties that are made as of a specified date need be true and correct in all material respects only as of such date; |
| | (b)      Purchaser shall not have breached in a manner that is material with respect to the Transactions, taken as a whole, the covenants required to be performed or complied with by it under this Agreement on or prior to the Closing Date; and |
| | (c)      Sellers shall have received on and as of the Closing Date a certificate of an authorized officer of Purchaser confirming that the conditions set forth in Section 2.5 have been satisfied. |
| | *See* AA Venture Holdings Asset Purchase Agreement, §§ 7.1–7.3 |
| **Closing and Other Deadlines**<br><br>Local Rule 6004-1(b)(iv)(E) | The closing of the purchase and sale of the Acquired Assets, the delivery of the Purchase Price, the assumption of the Assumed Liabilities in accordance with this Agreement (the "Closing") will take place by telephone conference and electronic exchange of documents at 10:00 a.m. Eastern Time on the second Business Day following full satisfaction or due waiver (by the Party entitled to the benefit of such condition) of the closing conditions set forth in Article VII (other than conditions that by their terms or nature are to be satisfied at the Closing), or at such other place and time as the Parties may agree in writing. The date on which the Closing actually occurs is referred to herein as the "Closing Date." In anticipation of and following the Closing Date, Sellers and Purchaser shall make all commercially reasonable efforts to accomplish the recording of all documents and instruments necessary to transfer title to the Acquired Real Property within fourteen (14) days of Closing.<br><br>*See* AA Venture Holdings Asset Purchase Agreement, § 2.3 |
| **Good Faith Deposit**<br><br>Local Rule 6004-1(b)(iv)(F) | Purchaser, on or prior to the date hereof (which shall have been (x) the date Purchaser submitted a Bid (as defined in, and in accordance with, the Bidding Procedures Order) and (y) any |

| | |
|---|---|
| | applicable subsequent date on which (to the extent applicable) the Purchase Price of such Bid increased), has, as of the date hereof, made an earnest money deposit (including any subsequently required incremental deposit(s)) with SRS Acquiom (with its affiliates, as applicable, the "Escrow Agent") in the amount $18,750 (the "Deposit"), by wire transfer of immediately available funds for deposit into a separate segregated, non-interest bearing escrow account maintained by the Escrow Agent in accordance with the Bidding Procedures Order. The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of any Seller or Purchaser and shall be applied against payment of the Purchase Price on the Closing Date or otherwise paid or disbursed as expressly provided in this Agreement.<br><br>*See* AA Venture Holdings Asset Purchase Agreement, § 2.2 |
| **Interim Arrangements with Proposed Buyer**<br><br>Local Rule 6004-1(b)(iv)(G) | N/A |
| **Use of Proceeds**<br><br>Local Rule 6004-1(b)(iv)(H) | At Closing, Purchaser shall pay (i) the cost of the Closing Escrow; (ii) any costs related to any inspections by any municipality and repairs required by any municipal, county, provincial, or state inspections, if any, and shall meet any other requirements as established by any municipal, county, provincial, or State ordinance with regard to the transfer of real estate; (iii) all financing related fees related to any Purchaser financing; and (iv) all recording and registration charges for the each conveyancing document and all documents pertaining to any Purchaser financing. All closing costs other than as specified above, or as may be specifically allocated elsewhere in this Agreement, will be payable by the party responsible therefor at Closing. Except as otherwise provided for in this Agreement, the Parties shall each be solely responsible for the fees and disbursements of their respective counsel and other professional advisors (all of the foregoing, the "Closing-Related Costs").<br><br>*See* AA Venture Holdings Asset Purchase Agreement, § 2.7 |
| **Tax Exemption**<br><br>Local Rule 6004-1(b)(iv)(I) | N/A |

| | |
|---|---|
| **Record Retention**<br><br>Local Rule 6004-1(b)(iv)(J) | From the date hereof until the Closing, Sellers will provide Purchaser and its authorized Advisors with reasonable access and upon reasonable advance notice and during regular business hours (so long as consistent with applicable Law and in accordance with the reasonable procedures established by Sellers) to the facilities, books, and records (excluding any personnel files) of Sellers, in order for Purchaser and its authorized Advisors to access such information regarding the Acquired Assets and Assumed Liabilities (which shall include the Acquired Real Property, for certainty) as is reasonably necessary in order to consummate the Transactions; provided that (i) such access does not unreasonably interfere with the normal operations of Sellers or any of their Subsidiaries, (ii) such access will occur in such a manner as Sellers reasonably determines to be appropriate to protect the confidentiality of the Transactions and such books and records, (iii) all requests for access will be directed to Seller Broker and Seller Banker or such other Person(s) as Sellers may designate in writing from time to time, (iv) nothing herein will require Sellers or any of their Subsidiaries to provide access to, or to disclose any information to, Purchaser or any other Person if such access or disclosure (A) would reasonably cause competitive harm to Sellers or any of their Subsidiaries if the Transactions are not consummated, (B) would waive any legal privilege or (C) would be in violation of applicable Laws (including the HSR Act and Antitrust Laws) or the provisions of any Contract to which Sellers is bound or would violate any fiduciary duty and (v) nothing herein will permit Purchaser or its authorized Advisors to conduct any sampling or testing of environmental media or any other invasive investigation or assessment at any property or facility (including the Acquired Real Property) of Sellers, including of the type commonly known as a Phase II environmental site assessment.<br><br>*See* AA Venture Holdings Asset Purchase Agreement**,** § 6.2 |
| **Sale of Avoidance Actions**<br><br>Local Rule 6004-1(b)(iv)(K) | Acquired Assets excludes "all preference or avoidance claims or actions arising under the Bankruptcy Code or applicable Law."<br><br>*See* AA Venture Holdings Asset Purchase Agreement, § 1.1 |
| **Successor Liability**<br><br>Local Rule 6004-1(b)(iv)(L) | For the avoidance of doubt, the Acquired Assets shall be free and clear of any and all Employment Liabilities, pension liabilities, and successor liabilities of any kind.<br><br>*See* AA Venture Holdings Asset Purchase Agreement, § 1.1 |

| | |
|---|---|
| **Unexpired Leases**<br><br>Local Rule 6004-1(b)(iv)(M) | N/A |
| **Credit Bid**<br><br>Local Rule 6004-1(b)(iv)(N) | N/A |
| **Relief from Bankruptcy Rule 6004(h)**<br>Local Rule 6004-1(b)(iv)(O) | *See* para. AA of proposed Sale Order ("Waiver of Bankruptcy Rules 6004(h)"). |

**The Rocchio Asset Purchase Agreement**

| Provision | Summary Description |
|---|---|
| **Seller** | Yellow Corporation and its subsidiaries listed therein |
| **Purchaser** | John A. Rocchio |
| **Acquired Assets** | <u>One Owned Property</u><br>55 Industrial Road, Cumberland, Rhode Island 02864<br><br>*See* Rocchio Asset Purchase Agreement, Schedule 1.1(a) |
| **Purchase Price** | $2,750,000<br><br>*See* Rocchio Asset Purchase Agreement, § 2.1 |
| **Sale to Insider**<br><br>Local Rule 6004-1(b)(iv)(A) | The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code. |
| **Agreements with Management**<br><br>Local Rule 6004-1(b)(iv)(B) | N/A |
| **Releases**<br><br>Local Rule 6004-1(b)(iv)(C) | N/A |
| **Sale**<br><br>Local Rule 6004-1(b)(iv)(D) | Sale of the Acquired Assets pursuant to private sale authorized by the Sale Order.  Pursuant to Local Rule 6004-11(b)(iv)(D), the business justifications for the sale are set forth in this Motion and the Kaldenberg Declaration.   The Bidding Procedures provides that the Debtors have discretion to convey Real Property Assets via private sale in their business judgment in consultation with the Consultation Parties (*i.e.*, the Committee). |
| **Conditions Precedent**<br><br>Local Rule 6004-1(b)(iv)(E) | 7.1      Conditions Precedent to the Obligations of Purchaser and Sellers. The respective obligations of each Party to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Sellers and Purchaser) on or prior to the Closing Date, of each of the following conditions:<br><br>(a)      the expiration or termination of any required waiting period under the HSR Act, if required;<br><br>(b)      no Governmental Body of competent jurisdiction shall have issued, enacted, entered, promulgated or enforced any Order (including any temporary restraining Order or preliminary or permanent injunction) or Law restraining, |

enjoining or otherwise prohibiting the Closing that is continuing in effect; and

(c)    the Bankruptcy Court shall have entered the Sale Order, which shall have become final and non-appealable and shall not have been stayed, reversed, or modified in a manner not acceptable to the Parties.

7.2    Conditions Precedent to the Obligations of Purchaser. The obligations of Purchaser to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Purchaser in its sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)    (i) the representations and warranties made by Sellers in Article III (in each case, other than the Fundamental Representations and other than the representations and warranties set forth in Section 3.4) shall be true and correct in all respects as of the Closing Date as though made on and as of the Closing Date, except (A) that representations and warranties that are made as of a specified date need be true and correct in all respects only as of such date and (B) to the extent the failure of such representations and warranties to be true and correct as of such dates has not had a Material Adverse Effect and (ii) the representations and warranties set forth in Section 3.1, Section 3.2 and Section 3.6 (collectively, the "Fundamental Representations") shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that such Fundamental Representations that are made as of a specified date need be true and correct in all material respects only as of such date;

(b)    the representations and warranties set forth in Section 3.4 shall be true and correct in all respects as of the Closing Date with respect to each parcel of the Acquired Real Property;

(c)    Sellers shall not have breached in a manner that is material with respect to the Transaction, taken as a whole, the covenants required to be performed or complied with by Sellers under this Agreement on or prior to Closing; and

(d)      Purchaser shall have received on and as of the Closing Date a certificate of an authorized officer of Seller confirming that the conditions set forth Section 2.4 have been satisfied.

(e)      As of the Closing Date, no right of first refusal relating to any individual parcel or parcels of Acquired Real Property shall have been exercised, and the deadline to exercise any such right of first refusal shall have expired. In the event that the foregoing condition is not satisfied as of the Closing Date, Purchaser may elect, in its sole and absolute discretion, to exclude such individual parcel or parcels of Acquired Real Property from the Acquired Assets and proceed with the Closing, with the Purchase Price to be reduced by an amount determined pursuant to the methodology set forth in Section 7.2(b) hereof.

7.3      Conditions Precedent to the Obligations of Sellers. The obligations of Sellers to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Sellers in their sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)      the representations and warranties made by Purchaser in Article IV shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that representations and warranties that are made as of a specified date need be true and correct in all material respects only as of such date;

(b)      Purchaser shall not have breached in a manner that is material with respect to the Transactions, taken as a whole, the covenants required to be performed or complied with by it under this Agreement on or prior to the Closing Date; and

(c)      Sellers shall have received on and as of the Closing Date a certificate of an authorized officer of Purchaser confirming that the conditions set forth in Section 2.5 have been satisfied.

*See* Rocchio Asset Purchase Agreement, §§ 7.1–7.3

| | |
|---|---|
| **Closing and Other Deadlines**<br><br>Local Rule 6004-1(b)(iv)(E) | The closing of the purchase and sale of the Acquired Assets, the delivery of the Purchase Price, the assumption of the Assumed Liabilities in accordance with this Agreement (the "Closing") will take place by telephone conference and electronic exchange of documents (or, if the Parties agree to hold a physical closing, |

| | |
|---|---|
| | at the offices of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022) at 10:00 a.m. Eastern Time on the second Business Day following full satisfaction or due waiver (by the Party entitled to the benefit of such condition) of the closing conditions set forth in Article VII (other than conditions that by their terms or nature are to be satisfied at the Closing), or at such other place and time as the Parties may agree in writing. The date on which the Closing actually occurs is referred to herein as the "Closing Date." In anticipation of and following the Closing Date, Sellers and Purchaser shall make all commercially reasonable efforts to accomplish the recording of all documents and instruments necessary to transfer title to the Acquired Real Property within fourteen (14) days of Closing.<br><br>*See* Rocchio Asset Purchase Agreement, § 2.3 |
| **Good Faith Deposit**<br><br>Local Rule 6004-1(b)(iv)(F) | Purchaser, on or prior to the date hereof (which shall have been (x) the date Purchaser submitted a Bid (as defined in, and in accordance with, the Bidding Procedures Order) and (y) any applicable subsequent date on which (to the extent applicable) the Purchase Price of such Bid increased), has, as of the date hereof, made an earnest money deposit (including any subsequently required incremental deposit(s)) with SRS Acquiom (with its affiliates, as applicable, the "Escrow Agent") in the amount equal to 5% of the Cash Payment portion of the Purchase Price (the "Deposit"), by wire transfer of immediately available funds for deposit into a separate segregated, non-interest bearing escrow account maintained by the Escrow Agent in accordance with the Bidding Procedures Order. The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of any Seller or Purchaser and shall be applied against payment of the Purchase Price on the Closing Date or otherwise paid or disbursed as expressly provided in this Agreement.<br><br>*See* Rocchio Asset Purchase Agreement, § 2.2 |
| **Interim Arrangements with Proposed Buyer**<br><br>Local Rule 6004-1(b)(iv)(G) | N/A |
| **Use of Proceeds**<br><br>Local Rule 6004-1(b)(iv)(H) | At Closing, Purchaser shall pay (i) the cost of the Closing Escrow; (ii) any costs related to any inspections by any municipality and repairs required by any municipal, county, |

| | |
|---|---|
| | provincial, or state inspections, if any, and shall meet any other requirements as established by any municipal, county, provincial, or State ordinance with regard to the transfer of real estate; (iii) all financing related fees related to any Purchaser financing; and (iv) all recording and registration charges for the each conveyancing document and all documents pertaining to any Purchaser financing. All closing costs other than as specified above, or as may be specifically allocated elsewhere in this Agreement, will be payable by the party responsible therefor at Closing. Except as otherwise provided for in this Agreement, the Parties shall each be solely responsible for the fees and disbursements of their respective counsel and other professional advisors (all of the foregoing, the "Closing-Related Costs").<br><br>*See* Rocchio Asset Purchase Agreement, § 2.7 |
| **Tax Exemption**<br><br>Local Rule 6004-1(b)(iv)(I) | N/A |
| **Record Retention**<br><br>Local Rule 6004-1(b)(iv)(J) | From the date hereof until the Closing, Sellers will provide Purchaser and its authorized Advisors with reasonable access and upon reasonable advance notice and during regular business hours (so long as consistent with applicable Law and in accordance with the reasonable procedures established by Sellers) to the facilities, books and records (excluding any personnel files) of Sellers, in order for Purchaser and its authorized Advisors to access such information regarding the Acquired Assets and Assumed Liabilities (which shall include the Acquired Real Property, for certainty) as is reasonably necessary in order to consummate the Transactions; provided that (i) such access does not unreasonably interfere with the normal operations of Sellers or any of their Subsidiaries, (ii) such access will occur in such a manner as Sellers reasonably determines to be appropriate to protect the confidentiality of the Transactions and such books and records, (iii) all requests for access will be directed to Seller Broker and Seller Banker or such other Person(s) as Sellers may designate in writing from time to time, (iv) nothing herein will require Sellers or any of their Subsidiaries to provide access to, or to disclose any information to, Purchaser or any other Person if such access or disclosure (A) would reasonably cause competitive harm to Sellers or any of their Subsidiaries if the Transactions are not consummated, (B) would waive any legal privilege or (C) would be in violation of applicable Laws (including the HSR Act and Antitrust Laws) or the provisions |

| | |
|---|---|
| | of any Contract to which Sellers is bound or would violate any fiduciary duty and (v) nothing herein will permit Purchaser or its authorized Advisors to conduct any sampling or testing of environmental media or any other invasive investigation or assessment at any property or facility (including the Acquired Real Property) of Sellers, including of the type commonly known as a Phase II environmental site assessment.<br><br>*See* Rocchio Asset Purchase Agreement**,** § 6.2 |
| **Sale of Avoidance Actions**<br><br>Local Rule 6004-1(b)(iv)(K) | Acquired Assets excludes "all preference or avoidance claims or actions arising under the Bankruptcy Code or applicable Law."<br><br>*See* Rocchio Asset Purchase Agreement, § 1.1 |
| **Successor Liability**<br><br>Local Rule 6004-1(b)(iv)(L) | For the avoidance of doubt, the Acquired Assets shall be free and clear of any and all Employment Liabilities, pension liabilities, and successor liabilities of any kind.<br><br>*See* Rocchio Asset Purchase Agreement, § 1.1 |
| **Unexpired Leases**<br><br>Local Rule 6004-1(b)(iv)(M) | N/A |
| **Credit Bid**<br><br>Local Rule 6004-1(b)(iv)(N) | N/A |
| **Relief from Bankruptcy Rule 6004(h)**<br>Local Rule 6004-1(b)(iv)(O) | *See* para. AA of proposed Sale Order ("Waiver of Bankruptcy Rules 6004(h)"). |

**The ArcBest Asset Purchase Agreement**

| Provision | Summary Description |
|---|---|
| **Seller** | Yellow Corporation and its subsidiaries listed therein |
| **Purchaser** | ArcBest Property Management, LLC |
| **Acquired Assets** | <u>One Owned Property</u><br>5680 Old Hayneville Road, Montgomery, Alabama 36108<br><br>*See* ArcBest Asset Purchase Agreement, § 1.1(a) |
| **Purchase Price** | $375,000<br><br>*See* ArcBest Asset Purchase Agreement, § 2.1 |
| **Sale to Insider**<br><br>Local Rule 6004-1(b)(iv)(A) | The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code. |
| **Agreements with Management**<br><br>Local Rule 6004-1(b)(iv)(B) | N/A |
| **Releases**<br><br>Local Rule 6004-1(b)(iv)(C) | N/A |
| **Sale**<br><br>Local Rule 6004-1(b)(iv)(D) | Sale of the Acquired Assets pursuant to private sale authorized by the Sale Order.  Pursuant to Local Rule 6004-11(b)(iv)(D), the business justifications for the sale are set forth in this Motion and the Kaldenberg Declaration.   The Bidding Procedures provides that the Debtors have discretion to convey Real Property Assets via private sale in their business judgment in consultation with the Consultation Parties (*i.e.*, the Committee). |
| **Conditions Precedent**<br><br>Local Rule 6004-1(b)(iv)(E) | 7.1     Conditions Precedent to the Obligations of Purchaser and Sellers. The respective obligations of each Party to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Sellers and Purchaser) on or prior to the Closing Date, of each of the following conditions:<br><br>(a)     no Governmental Body of competent jurisdiction shall have issued, enacted, entered, promulgated or enforced any Order (including any temporary restraining Order or preliminary or permanent injunction) or Law restraining, enjoining or otherwise prohibiting the Closing that is continuing in effect; and |

(b)    the Bankruptcy Court shall have entered the Sale Order, which shall have become final and non-appealable and shall not have been stayed, reversed, or modified in a manner not acceptable to the Parties.

7.2    Conditions Precedent to the Obligations of Purchaser. The obligations of Purchaser to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Purchaser in its sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)    (i) the representations and warranties made by Sellers in Article III (in each case, other than the Fundamental Representations and other than the representations and warranties set forth in Section 3.4) shall be true and correct in all respects as of the Closing Date as though made on and as of the Closing Date, except (A) that representations and warranties that are made as of a specified date need be true and correct in all respects only as of such date and (B) to the extent the failure of such representations and warranties to be true and correct as of such dates has not had a Material Adverse Effect and (ii) the representations and warranties set forth in Section 3.1, Section 3.2 and Section 3.7 (collectively, the "Fundamental Representations") shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that such Fundamental Representations that are made as of a specified date need be true and correct in all material respects only as of such date;

(b)    the representations and warranties set forth in Section 3.4 shall be true and correct in all respects as of the Closing Date with respect to the Acquired Real Property;

(c)    Sellers shall not have breached in a manner that is material with respect to the Transactions, taken as a whole, the covenants required to be performed or complied with by Sellers under this Agreement on or prior to Closing;

(d)    Purchaser shall have received on and as of the Closing Date a certificate of an authorized officer of Sellers confirming that the conditions set forth Section 2.4 have been satisfied; and

(e)    as of the Closing Date, no right of first refusal relating to the Acquired Real Property shall have been exercised, and the

deadline to exercise any such right of first refusal shall have expired.

7.3     Conditions Precedent to the Obligations of Sellers. The obligations of Sellers to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Sellers in their sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)     the representations and warranties made by Purchaser in Article IV shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that representations and warranties that are made as of a specified date need be true and correct in all material respects only as of such date;

(b)     Purchaser shall not have breached in a manner that is material with respect to the Transactions, taken as a whole, the covenants required to be performed or complied with by it under this Agreement on or prior to the Closing Date; and

(c)     Sellers shall have received on and as of the Closing Date a certificate of an authorized officer of Purchaser confirming that the conditions set forth in Section 2.5 have been satisfied.

*See* ArcBest Asset Purchase Agreement, §§ 7.1–7.3

| | |
|---|---|
| **Closing and Other Deadlines**<br><br>Local Rule 6004-1(b)(iv)(E) | The closing of the purchase and sale of the Acquired Assets, the delivery of the Purchase Price, the assumption of the Assumed Liabilities in accordance with this Agreement (the "Closing") will take place by telephone conference and electronic exchange of documents (or, if the Parties agree to hold a physical closing, at the offices of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022) at 10:00 a.m. Eastern Time on the second Business Day following full satisfaction or due waiver (by the Party entitled to the benefit of such condition) of the closing conditions set forth in Article VII (other than conditions that by their terms or nature are to be satisfied at the Closing), or at such other place and time as the Parties may agree in writing. The date on which the Closing actually occurs is referred to herein as the "Closing Date." In anticipation of and following the Closing Date, Sellers and Purchaser shall make all commercially reasonable efforts to accomplish the recording of all documents and instruments |

| | |
|---|---|
| | necessary to transfer title to the Acquired Real Property within fourteen (14) days of Closing.<br><br>*See* ArcBest Asset Purchase Agreement, § 2.3 |
| **Good Faith Deposit**<br><br>Local Rule 6004-1(b)(iv)(F) | Purchaser, has, as of the date hereof, made an earnest money deposit with SRS Acquiom (the "Escrow Agent") in the amount equal to 5% of the Cash Payment portion of the Purchase Price (the "Deposit"), by wire transfer of immediately available funds for deposit into a separate segregated, non-interest bearing escrow account maintained by the Escrow Agent in accordance with the Bidding Procedures Order. The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of any Seller or Purchaser and shall be applied against payment of the Purchase Price on the Closing Date or otherwise paid or disbursed as expressly provided in this Agreement.<br><br>*See* ArcBest Asset Purchase Agreement, § 2.2 |
| **Interim Arrangements with Proposed Buyer**<br><br>Local Rule 6004-1(b)(iv)(G) | N/A |
| **Use of Proceeds**<br><br>Local Rule 6004-1(b)(iv)(H) | At Closing, Purchaser shall pay (i) the cost of the Closing Escrow; (ii) any costs related to any inspections by any municipality and repairs required by any municipal, county, provincial, or state inspections, if any, and shall meet any other requirements as established by any municipal, county, provincial, or State ordinance with regard to the transfer of real estate; (iii) all financing related fees related to any Purchaser financing; and (iv) all recording and registration charges for the each conveyancing document and all documents pertaining to any Purchaser financing. All closing costs other than as specified above, or as may be specifically allocated elsewhere in this Agreement, will be payable by the party responsible therefor at Closing. Except as otherwise provided for in this Agreement, the Parties shall each be solely responsible for the fees and disbursements of their respective counsel and other professional advisors (all of the foregoing, the "Closing-Related Costs").<br><br>*See* ArcBest Asset Purchase Agreement, § 2.7 |
| **Tax Exemption**<br><br>Local Rule 6004-1(b)(iv)(I) | N/A |

| | |
|---|---|
| **Record Retention**<br><br>Local Rule 6004-1(b)(iv)(J) | From the date hereof until the Closing, Sellers will provide Purchaser and its authorized Advisors with reasonable access and upon reasonable advance notice and during regular business hours (so long as consistent with applicable Law and in accordance with the reasonable procedures established by Sellers) to the facilities, books and records (excluding any personnel files) of Sellers, in order for Purchaser and its authorized Advisors to access such information regarding the Acquired Assets and Assumed Liabilities (which shall include the Acquired Real Property, for certainty) as is reasonably necessary in order to consummate the Transactions; provided that (i) such access does not unreasonably interfere with the normal operations of Sellers or any of their Subsidiaries, (ii) such access will occur in such a manner as Sellers reasonably determines to be appropriate to protect the confidentiality of the Transactions and such books and records, (iii) all requests for access will be directed to Seller Broker and Seller Banker or such other Person(s) as Sellers may designate in writing from time to time, (iv) nothing herein will require Sellers or any of their Subsidiaries to provide access to, or to disclose any information to, Purchaser or any other Person if such access or disclosure (A) would reasonably cause competitive harm to Sellers or any of their Subsidiaries if the Transactions are not consummated, (B) would waive any legal privilege or (C) would be in violation of applicable Laws or the provisions of any Contract to which Sellers is bound or would violate any fiduciary duty and (v) nothing herein will permit Purchaser or its authorized Advisors to conduct any sampling or testing of environmental media or any other invasive investigation or assessment at any property or facility (including the Acquired Real Property) of Sellers, including of the type commonly known as a Phase II environmental site assessment.<br><br>*See* ArcBest Asset Purchase Agreement**,** § 6.2 |
| **Sale of Avoidance Actions**<br><br>Local Rule 6004-1(b)(iv)(K) | Acquired Assets excludes "all preference or avoidance claims or actions arising under the Bankruptcy Code or applicable Law."<br><br>*See* ArcBest Asset Purchase Agreement, § 1.1 |
| **Successor Liability**<br><br>Local Rule 6004-1(b)(iv)(L) | For the avoidance of doubt, the Acquired Assets shall be free and clear of any and all Employment Liabilities, pension liabilities, and successor liabilities of any kind.<br><br>*See* ArcBest Asset Purchase Agreement, § 1.1 |

| | |
|---|---|
| **Unexpired Leases**<br><br>Local Rule 6004-1(b)(iv)(M) | N/A |
| **Credit Bid**<br><br>Local Rule 6004-1(b)(iv)(N) | N/A |
| **Relief from Bankruptcy Rule 6004(h)**<br>Local Rule 6004-1(b)(iv)(O) | *See* para. AA of proposed Sale Order ("Waiver of Bankruptcy Rules 6004(h)"). |

**The Triten Asset Purchase Agreement**

| Provision | Summary Description |
|---|---|
| **Seller** | Yellow Corporation and its subsidiaries listed therein |
| **Purchaser** | Triten Real Estate Holdings LLC |
| **Acquired Assets** | <u>One Owned Property</u><br>3404 Clifford Lane, Jacksonville, Florida 32209<br><br>*See* Triten Asset Purchase Agreement, § 1.1(a) |
| **Purchase Price** | $2,600,000<br><br>*See* Triten Asset Purchase Agreement, § 2.1 |
| **Sale to Insider**<br><br>Local Rule 6004-1(b)(iv)(A) | The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code. |
| **Agreements with Management**<br><br>Local Rule 6004-1(b)(iv)(B) | N/A |
| **Releases**<br><br>Local Rule 6004-1(b)(iv)(C) | N/A |
| **Sale**<br><br>Local Rule 6004-1(b)(iv)(D) | Sale of the Acquired Assets pursuant to private sale authorized by the Sale Order.  Pursuant to Local Rule 6004-11(b)(iv)(D), the business justifications for the sale are set forth in this Motion and the Kaldenberg Declaration.   The Bidding Procedures provides that the Debtors have discretion to convey Real Property Assets via private sale in their business judgment in consultation with the Consultation Parties (*i.e.*, the Committee). |
| **Conditions Precedent**<br><br>Local Rule 6004-1(b)(iv)(E) | 7.1     Conditions Precedent to the Obligations of Purchaser and Sellers. The respective obligations of each Party to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Sellers and Purchaser) on or prior to the Closing Date, of each of the following conditions:<br><br>(a)     no Governmental Body of competent jurisdiction shall have issued, enacted, entered, promulgated or enforced any Order (including any temporary restraining Order or preliminary or permanent injunction) or Law restraining, enjoining or otherwise prohibiting the Closing that is continuing in effect; and |

(b)      the Bankruptcy Court shall have entered the Sale Order, which shall have become final and non-appealable and shall not have been stayed, reversed, or modified in a manner not acceptable to the Parties.

7.2      Conditions Precedent to the Obligations of Purchaser. The obligations of Purchaser to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written waiver by Purchaser in its sole discretion), on or prior to the Closing Date, of each of the following conditions:

(a)      (i) the representations and warranties made by Sellers in Article III shall be true and correct in all respects as of the Closing Date as though made on and as of the Closing Date, except (A) that representations and warranties that are made as of a specified date need be true and correct in all respects only as of such date and (B) to the extent the failure of such representations and warranties to be true and correct as of such dates has not had a Material Adverse Effect and (ii) the representations and warranties set forth in Section 3.1, Section 3.2 and Section 3.6 (collectively, the "Fundamental Representations") shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that such Fundamental Representations that are made as of a specified date need be true and correct in all material respects only as of such date;

(b)      Sellers shall not have breached in a manner that is material with respect to the Transactions taken as a whole, the covenants and obligations required to be performed or complied with by Sellers under this Agreement on or prior to Closing; and

(c)      Purchaser shall have received on and as of the Closing Date a certificate of an authorized officer of Sellers confirming that the conditions set forth Section 2.4 have been satisfied.

(d)      As of the Closing Date, no right of first refusal relating to any individual parcel or parcels of Acquired Real Property shall have been exercised, and the deadline to exercise any such right of first refusal shall have expired.

7.3      Conditions Precedent to the Obligations of Sellers. The obligations of Sellers to consummate the Closing are subject to the satisfaction (or to the extent permitted by Law, written

|  | waiver by Sellers in their sole discretion), on or prior to the Closing Date, of each of the following conditions: |
|  | (a)    the representations and warranties made by Purchaser in Article IV shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date, except that representations and warranties that are made as of a specified date need be true and correct in all material respects only as of such date; |
|  | (b)    Purchaser shall not have breached in a manner that is material with respect to the Transactions, taken as a whole, the covenants required to be performed or complied with by it under this Agreement on or prior to the Closing Date; and |
|  | (c)    Sellers shall have received on and as of the Closing Date a certificate of an authorized officer of Purchaser confirming that the conditions set forth in Section 2.5 have been satisfied. |
|  | *See* Triten Asset Purchase Agreement, §§ 7.1–7.3 |
| **Closing and Other Deadlines**<br><br>Local Rule 6004-1(b)(iv)(E) | The closing of the purchase and sale of the Acquired Assets and the delivery of the Purchase Price (the "Closing") will take place by telephone conference and electronic exchange of documents (or, if the Parties agree to hold a physical closing, at the offices of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022) at 10:00 a.m. Eastern Time on the fifteenth (15th) day following full satisfaction or due waiver (by the Party entitled to the benefit of such condition) of the closing conditions set forth in Article VII (other than conditions that by their terms or nature are to be satisfied at the Closing), or at such other place and time as the Parties may agree in writing. The date on which the Closing actually occurs is referred to herein as the "Closing Date."  In anticipation of and following the Closing Date, Title Company shall make all commercially reasonable efforts to accomplish the recording of all documents and instruments necessary to transfer title to the Acquired Real Property within two (2) Business Days of Closing.<br><br>*See* Triten Asset Purchase Agreement, § 2.3 |
| **Good Faith Deposit**<br><br>Local Rule 6004-1(b)(iv)(F) | Purchaser, on or prior to the date hereof (which shall have been (x) the date Purchaser submitted a Bid (as defined in, and in accordance with, the Bidding Procedures Order) and (y) any applicable subsequent date on which (to the extent applicable) |

| | |
|---|---|
| | the Purchase Price of such Bid increased), shall make an earnest money deposit with SRS Acquiom (in such capacity, the "Escrow Agent") in the amount equal to 5% of the Cash Payment portion of the Purchase Price (the "Deposit"), by wire transfer of immediately available funds for deposit into a separate segregated, non-interest bearing escrow account maintained by the Escrow Agent in accordance with the Bidding Procedures Order. The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of any Seller or Purchaser and shall be applied against payment of the Purchase Price on the Closing Date or otherwise paid or disbursed as expressly provided in this Agreement. <br><br> *See* Triten Asset Purchase Agreement, § 2.2 |
| **Interim Arrangements with Proposed Buyer** <br><br> Local Rule 6004-1(b)(iv)(G) | N/A |
| **Use of Proceeds** <br><br> Local Rule 6004-1(b)(iv)(H) | At Closing, Purchaser shall pay (i) the cost of the Closing Escrow; and (ii) all recording and registration fees related to the purchase and conveyance of the Acquired Real Property. At Closing, Sellers shall pay the cost of the Closing Escrow. All closing costs other than as specified above, or as may be specifically allocated elsewhere in this Agreement, will be payable the customs of Jacksonville, Duval County, Florida or by the party responsible therefor at Closing. Except as otherwise provided for in this Agreement, the Parties shall each be solely responsible for the fees and disbursements of their respective counsel and other professional advisors (all of the foregoing, the "Closing-Related Costs"). <br><br> *See* Triten Asset Purchase Agreement, § 2.7 |
| **Tax Exemption** <br><br> Local Rule 6004-1(b)(iv)(I) | N/A |
| **Record Retention** <br><br> Local Rule 6004-1(b)(iv)(J) | From the date hereof until the Closing, Sellers will provide Purchaser and its authorized Advisors with reasonable access and upon reasonable advance notice and during regular business hours (so long as consistent with applicable Law and in accordance with the reasonable procedures established by Sellers) to the facilities, books and records (excluding any personnel files) of Sellers, in order for Purchaser and its authorized Advisors to access such information regarding the Acquired Assets and Assumed Liabilities (which shall include |

| | |
|---|---|
| | the Acquired Real Property, for certainty) as is reasonably necessary in order to consummate the Transactions; provided that (i) such access does not unreasonably interfere with the normal operations of Sellers or any of their Subsidiaries, (ii) such access will occur in such a manner as Sellers reasonably determines to be appropriate to protect the confidentiality of the Transactions and such books and records, (iii) all requests for access will be directed to Seller Broker and Seller Banker or such other Person(s) as Sellers may designate in writing from time to time, (iv) nothing herein will require Sellers or any of their Subsidiaries to provide access to, or to disclose any information to, Purchaser or any other Person if such access or disclosure (A) would waive any legal privilege or (B) would be in violation of applicable Laws or the provisions of any Contract to which Sellers is bound or would violate any fiduciary duty and (v) nothing herein will permit Purchaser or its authorized Advisors to conduct any intrusive sampling or testing of environmental media or any other invasive investigation or assessment at any property or facility (including the Acquired Real Property) of Sellers, including of the type commonly known as a Phase II environmental site assessment without the Sellers' prior consent.<br><br>*See* Triten Asset Purchase Agreement, § 6.2 |
| **Sale of Avoidance Actions**<br><br>Local Rule 6004-1(b)(iv)(K) | N/A |
| **Successor Liability**<br><br>Local Rule 6004-1(b)(iv)(L) | For the avoidance of doubt, the Acquired Assets shall be free and clear of any and all Employment Liabilities, pension liabilities, and successor liabilities of any kind.<br><br>*See* Triten Asset Purchase Agreement, § 1.1 |
| **Unexpired Leases**<br><br>Local Rule 6004-1(b)(iv)(M) | N/A |
| **Credit Bid**<br><br>Local Rule 6004-1(b)(iv)(N) | N/A |
| **Relief from Bankruptcy Rule 6004(h)**<br>Local Rule 6004-1(b)(iv)(O) | *See* para. AA of proposed Sale Order ("Waiver of Bankruptcy Rules 6004(h)"). |

## II.    The Asset Purchase Agreements.

28.    The Debtors respectfully seek the Court's authority to enter into and perform under each of the Asset Purchase Agreements pursuant to the terms and provisions thereof.  Subject to entry of the proposed Order, the Debtors will sell the Acquired Assets to the respective Purchasers free and clear of all liens, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code.

29.    The Debtors believe that the total consideration provided by the Purchasers under the Asset Purchase Agreements, in each case, is fair and reasonable, and that the Sale Transactions under the respective Asset Purchase Agreements maximize the value of the Subject Properties. Accordingly, the Debtors, in an exercise of their sound business judgment, seek to enter into the Asset Purchase Agreements and to take all necessary actions in connection with implementing the Sale Transactions pending the Court's entry of the proposed Order.

## Basis for Relief

## III.    The Debtors' Entry into the Asset Purchase Agreements Should Be Authorized, and the Asset Purchase Agreements Should Be Approved, as a Sound Exercise of the Debtors' Business Judgment Under Section 363 of the Bankruptcy Code.

30.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   Bankruptcy Rule 6004(f)(1) provides that "sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f). Further, the Bidding Procedures in these Chapter 11 Cases provides that the Debtors may, in their business judgment and in consultation with the Committee, seek private sales of their Real Property Assets in lieu of bringing them to the Bid Deadline and the Auction.

31.     Courts generally apply the "business judgment" standard in determining whether to approve a proposed transaction under section 363 of the Bankruptcy Code.  *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to the debtor's judgment concerning the proposed use of estate property under section 363(b) when there is a legitimate business justification); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business purpose" standard for transactions under section 363).  In addition, section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

32.     Generally, courts in the Third Circuit have applied four factors in connection with the "sound business purpose" test:  (1) whether a sound business reason exists for the proposed transaction; (2) whether fair and reasonable notice has been provided to interested persons; (3) whether the debtor has obtained a fair and reasonable price; and (4) whether the transaction has been proposed and negotiated in good faith.  *Titusville Country Club v. Pennbank* (*In re Titusville Country Club*), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *Delaware & Hudson Ry.*, 124 B.R. at 176.  The proposed Sale Transactions under the Asset Purchase Agreements satisfy all four conditions, and therefore, the relief requested herein should be approved by this Court.

33.     Under the business judgment standard, the debtor has the initial burden of establishing that a valid business purpose exists for the use of estate property in a manner outside of the debtor's ordinary course of business.  *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). Once the debtor articulates a valid business justification for the proposed transaction, courts will generally presume that the decision was made "on an informed basis, in good faith and

in the honest belief that the action was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

34.     Thus, after a debtor satisfies its initial burden of establishing a valid business justification, the business judgment rule shields the debtor's management from judicial second-guessing and mandates that a court approve the debtor's business decision unless the decision is a product of bad faith or constitutes a gross abuse of discretion. *See, e.g.*, *In re Global Crossing*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."); *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008) (stating that directors enjoy a presumption of honesty and good faith with respect to negotiating and approving a transaction involving a sale of assets).

35.     Here, the Debtors respectfully submit that sound business reasons support their decision, in consultation with the Committee, to enter into the Asset Purchase Agreements.

36.     *First*, the Debtors provided extensive notice of their marketing and sale process to prospective purchasers for the Subject Properties. Over an approximately two-year marketing and sale process to date, the Debtors and their advisors have engaged in good faith discussions with any party interested in one or more of the Subject Properties. The Subject Properties were marketed to no less than 650 prospective purchasers at the launch of the Debtors' sale process. The Subject Properties have been thoroughly marketed through the efforts of both Ducera and CBRE, each of whom has maintained datarooms containing information regarding the Subject Properties which were accessible to any interested party.

37.     *Second*, given the extensive marketing process undertaken for the Subject Properties, the value to be obtained for the respective Subject Properties under the Asset Purchase Agreements has been thoroughly market-tested and is value-maximizing.  The Debtors subjected the Subject Properties to the First Bid Deadline in November 2023 as well as the IOI Deadline of October 2024, and any interested purchaser has had the ability to come forward to the Debtors, Ducera, or CBRE with higher or otherwise better alternatives relative to the Asset Purchase Agreements.

38.     *Third*, the terms and provisions of the Asset Purchase Agreements, including, without limitation, the Purchase Prices, are fair and reasonable under the circumstances.  The Asset Purchase Agreements are the result of hard-fought, arm's-length, and good faith negotiations with each of the respective Purchasers.  As described in the Kaldenberg Declaration, no other indications of interest from other parties exceeded the value offered by the Purchasers under the respective Asset Purchase Agreements for the Subject Properties, and the terms and provisions that have been negotiated, in each case, were essential to ensuring that the Debtors arrived at agreed, value-maximizing transactions with these parties.

39.     The Debtors respectfully submit that, in their sound and prudent business judgment and in consultation with the Committee, the Asset Purchase Agreements maximize the value of the Subject Properties.  Accordingly, the relief requested in this Motion should be approved.

**IV.    The Purchasers Acted in Good Faith and Are Entitled to Full Protection Pursuant to Section 363(m) of the Bankruptcy Code.**

40.     Because the Purchasers acted in good faith, they are entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale Transactions under the respective Asset Purchase Agreements.  Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does
> not affect the validity of a sale or lease under such authorization to
> an entity that purchase or leased such property in good faith, whether
> or not such entity knew of the pendency of the appeal, unless such
> authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code protects a purchaser of assets sold

pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the

purchased assets if the order allowing the sale is reversed on appeal. Purchasers are provided this

protection so long as they leased or purchased assets in "good faith." *Id.* Although the Bankruptcy

Code does not define "good faith purchaser," the Third Circuit has stated that a good faith

purchaser is "one who purchases in 'good faith' and for 'value.'" *In re Abbots Dairies*, 788 F.2d

143, 147 (3d Cir. 1986). Courts generally conclude that a purchaser has acted in good faith as long

as the consideration is adequate and reasonable, and the terms of the transaction are fully disclosed.

*Id.* at 49–50. To constitute a lack of good faith, a party's conduct in connection with the sale

usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee or

an attempt to take grossly unfair advantage of other bidders." *Id.* (citing *In re Rock Indus. Mach.

Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

41. Here, each of the Purchasers under the respective Asset Purchase Agreements are

unaffiliated third parties of the Debtors and are each acting for their own *bona fide* commercial

purposes. In connection with the Debtors' marketing and sale process for the Subject Properties,

the Debtors engaged in good faith, arm's-length discussions with each of the Purchasers for the

transactions under the respective Asset Purchase Agreements. The Debtors' marketing and sale

process for the Subject Properties was fair and transparent, and the respective Sale Transactions

are at arm's-length, without collusion or fraud, and entered into, in each case, in good faith.

Accordingly, the Debtors request that the Court determine that each Purchaser has negotiated and

acted at all times in good faith and, as a result, is entitled to the full protections of good faith purchasers under section 363(m) of the Bankruptcy Code.

**V.    Private Sales Are Appropriate Under Bankruptcy Rule 6004 and Local Rule 6004-1. They Are Also Authorized by the Debtors' Bidding Procedures.**

42.    Bankruptcy Rule 6004(f)(1) and Local Rule 6004-1(b)(iv)(D) permit a debtor to sell estate property outside of the ordinary course of its business by private sale or public auction. Fed. R. Bankr. P. 6004(f)(1).  Private sales by a debtor outside of the ordinary course of business are appropriate where the debtor demonstrates that the sale is permissible pursuant to section 363 of the Bankruptcy Code.  *See, e.g.*, *In re Schipper*, 933 F.2d 513, 514 (7th Cir. 1991) (private real estate sale by debtor approved when purchase price was the same as independent appraisal); *In re Adamson*, 312 B.R. 16, 22 (Bankr. D. Mass. 2004) (approving private sale by debtor); *In re Pritam Realty, Inc.*, 233 B.R. 619, 624 (D.P.R. 1999) (upholding bankruptcy court order approving private sale by debtor); *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (explaining that a trustee has ample authority to conduct a sale of estate property through a private sale).

43.    Bankruptcy courts generally have a "large measure of discretion" in determining, "based upon the facts and circumstances of the proposed sale," whether a private sale, as opposed to a public auction, is appropriate.  *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995); *In re Blue Coal Corp.*, 168 B.R. 553, 564 (Bankr. M.D. Pa. 1994).  In general, courts in this and other districts have approved private sales of less than all the assets of a debtor pursuant to section 363(b)(1) of the Bankruptcy Code as long as the debtor provides a valid business reason for not conducting an auction.  *See, e.g.*, *In re RMBR Liquidation, Inc.*, No. 19-10234 (KBO) (Bankr. D. Del. Aug. 22, 2019) (approving private sale of real property for approximately $2.35 million); *In re Buffets Holdings, Inc.*, No. 08-10141 (MFW) (Bankr. D. Del. Feb. 3, 2009) (approving the private sale of real property for approximately $2.4 million); *In re W.R. Grace &*

*Co.*, No. 0l-01139 (JKF) (Bankr. D. Del. Dec. 18, 2008) (approving the private sale of real property for approximately $3.8 million); *In re Wellman, Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex for $17.9 million); *In re W.R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. July 23, 2007) (authorizing private sale of business line for approximately $22 million); *In re Solutia, Inc.*, No. 03-17949 (SCC) (Bankr. S.D.N.Y. Dec. 28, 2006) (approving private sale of real property for approximately $7.1 million).

44.     In their sound business judgment and in consultation with the Committee, the Debtors have determined that consummating the sales of the Subject Properties on a private basis, in each case as applicable pursuant to the respective Asset Purchase Agreement, is appropriate in light of the facts and circumstances of these Chapter 11 Cases, including the expressions of interest received by the Debtors for the Subject Properties to date.  As described in the Kaldenberg Declaration, putting the Subject Properties to an auction in lieu of proceeding to closings by expeditious private sales risks a loss of value with respect to the Subject Properties.  Further, the Asset Purchase Agreements maximize the value of the Subject Properties, which have been thoroughly and transparently marketed.  Accordingly, entering into the Asset Purchase Agreements is in the best interest of the Debtors' estates and all parties in interest.

## VI.    The Sales Under the Asset Purchase Agreements Should Be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code.

45.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if:  (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a *bona fide* dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  *See* 11 U.S.C. § 363(f).

46.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtors' sale of the assets free and clear of all interests (*i.e.*, all liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, or encumbrances), except with respect to any interests that may constitute an assumed liability under the applicable purchase agreement. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

47.     Here, the Debtors have satisfied this requirement.  Holders of liens, encumbrances, or interests in the Subject Properties, if any, will have ample notice of this Motion and the proposed Order, in addition to the extensive notice previously provided in these Chapter 11 Cases and regarding the Debtors' marketing and sale efforts generally.  *See, e.g.*, Docket Nos. 378, 444, 601, 643, 644, 5525, and 5526.  The proposed Order provides that, unless otherwise set forth in the respective Asset Purchase Agreement, any lien, encumbrance or interest in the Subject Properties will automatically attach to the sale proceeds at the respective closings.  Thus, such lienholder will not be prejudiced in any respect by the proposed Sale Transactions and should be deemed to consent thereto.  Furthermore, all of the Debtors' prepetition and postpetition funded debt obligations have been paid in full, and the proposed consideration under the respective Asset Purchase Agreements far exceeds the value of all liens (if any) on the Subject Properties.

48.     The Debtors accordingly request authority to sell the Subject Properties under the respective Asset Purchase Agreements free and clear of all liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, or encumbrances, with any such liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, or encumbrances to attach to the applicable sale proceeds at the applicable closing.

49.     In light of the foregoing, the Debtors respectfully submit that entry into the Asset Purchase Agreements is in the best interests of the Debtors' estates.  Accordingly, the relief requested in this Motion should be approved.

## Notice

50.     The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Purchasers under the Asset Purchase Agreements; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

51.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: October 22, 2025
Wilmington, Delaware

/s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:          ljones@pszjlaw.com
                tcairns@pszjlaw.com
                pkeane@pszjlaw.com
                ecorma@pszjlaw.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
                david.seligman@kirkland.com

-and-

Allyson B. Smith (admitted *pro hac vice*)
Aaron Metviner (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          allyson.smith@kirkland.com
Email:          aaron.metviner@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*