## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 7619** |
| | <u>Hearing Date</u>: November 12, 2025 at 10:00 a.m. (ET)<br>**<u>Obj. Deadline</u> (extended for the U.S. Trustee):**<br>**October 31, 2025 at 4:00 p.m. (ET)** |

### THE UNITED STATES TRUSTEE'S OBJECTION TO THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF YELLOW CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

———————————

Andrew R. Vara, the United States Trustee for Region Three (the "<u>U.S. Trustee</u>"), by and through his undersigned counsel, hereby objects (the "<u>Objection</u>") to the *Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 5028] (the "<u>Plan</u>"),[2] and in support of this Objection respectfully states:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## PRELIMINARY STATEMENT

1.      The U.S. Trustee objects to confirmation of the Plan on the basis that the Plan's exculpation provision violates controlling Third Circuit case law by attempting to shield entities that are not fiduciaries of the Debtors' estates.

2.      The U.S. Trustee also objects to confirmation of the Plan because the Plan contains inappropriate language that deems the Plan itself to be a settlement, contains provisions regarding automatic disallowance, filing, and amendment of claims that are contrary to the plain language of the Bankruptcy Code, and impermissibly deems non-voting classes to accept the Plan.

3.      Accordingly, and for the reasons set forth in more detail herein, the U.S. Trustee respectfully requests that the Court enter an order denying confirmation of the Plan.

## JURISDICTION AND STANDING

4.      This Court has jurisdiction to hear and determine approval of the Plan and this Objection under: (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court of the District of Delaware issued under 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

5.      Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. The duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the Courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6.      The U.S. Trustee has standing to be heard on approval of the Plan under 11 U.S.C. § 307. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

2

## BACKGROUND

### A.    The Chapter 11 Cases

7.    On August 6, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, (the "Bankruptcy Code," or "Code"), in the United States Bankruptcy Court for the District of Delaware (this "Court"), thereby commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

8.    On August 16, 2023, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").

9.    Since the Petition Date, the Debtors have liquidated certain real estate and rolling stock assets and continue to market and liquidate their remaining assets.

### B.    The Plan and Disclosure Statement

10.    On October 17, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [D.I. 4582] (the "Procedures Motion").

11.    On November 22, 2024, the Court entered an order approving the Procedures Motion [D.I 5024].

12.    On November 22, 2024, the Debtors filed the *Second Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5027] and the *Second Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5028].

13.     On March 28, 2025, the Debtors filed the *Third Amended Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 5996] and the *Third Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 5995].

14.     On July 29, 2025, the Debtors filed the *Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 6747] and the *Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 6746] (the "Plan").

15.     On September 15, 2025, the Bankruptcy Court entered its *Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Form of Ballot and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [D.I. 7608] (the "Solicitation Procedures Order").

16.     On September 16, 2025, the Debtors filed the *[SOLICITATION VERSION] Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 7619] (the "Disclosure Statement").

17.     The Plan effectuates a liquidation of the Debtors' remaining assets and establishes a Liquidating Trust to distribute net proceeds of that liquidation for the benefit of unsecured creditors.

## C.     Specific Provisions of the Debtors' Proposed Plan

18.     The Plan includes the following provisions relevant to this Objection.

19.     The Plan defines Exculpated Parties to mean " . . . , collectively, and in each case solely in its capacity as such: (a) each of the Debtors and their current and former directors, managers, and officers that served in such capacity between the Petition Date and Effective Date; (b) the Committee and each of its current and former members (including any ex-officio member(s)); (c) the Liquidating Trust, Liquidating Trustee and Liquidating Trust Board of Managers; and (d) with respect to the Entities in clause (a) through (c), each of their respective current and former attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.." Plan, Art. I.A.xvii.[3]

20.     Additionally, the Plan provides for the exculpation of the Exculpated Parties as follows (the "Plan Exculpation"):

> Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each Exculpated Party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases or the Canadian Recognition Proceedings prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Liquidating Trust Agreement, the Third-Party Sale Transactions, the Plan, the Plan Supplement, any other Definitive Document, or any Liquidation Transaction, or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of the Third-

---

[3] Section references herein are to the sections as set forth in the Plan's Table of Contents. The Plan's actual section numbering differs substantially from the Table of Contents

Party Sale Transactions, the pursuit of Consummation, the administration and
implementation of the Plan or the distribution of property under the Plan, or any
other related agreement, except for claims related to any act or omission that is
determined in a Final Order to have constituted gross negligence, willful
misconduct, or actual fraud. Notwithstanding anything to the contrary in the
foregoing, the exculpation set forth above does not exculpate any obligations
arising on or after the Effective Date of any Person or Entity under the Plan, or
any document, instrument, or agreement (including those set forth in the Plan
Supplement) executed to implement the Plan.

*Id.* at Art. IX. D.

21.     The Plan further provides that non-voting classes are presumed to accept the plan:

"If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class

vote to accept or reject the Plan, the Debtors and the Committee shall request the Bankruptcy Court

deem the Plan accepted by the Holders of such Claims in such Class." Plan, Art.III.F.

22.     The Plan also provides that it is a general settlement of all claims and interests:

. . . to the extent provided by the Bankruptcy Code and in consideration
for the classification, distributions and other benefits provided under the Plan,
upon the Effective Date the provisions of the Plan shall constitute a good-faith
compromise and settlement of all Claims, Interests, Causes of Action, and
controversies released, settled, compromised, or otherwise resolved pursuant to
the Plan. The Plan shall be deemed a motion to approve the good-faith
compromise and settlement of all such Claims, Interests, and Causes of Action,
and the entry of the Confirmation Order shall constitute the Bankruptcy Court's
approval of such compromise and settlement, as well as a finding by the
Bankruptcy Court that such settlement and compromise is fair, equitable,
reasonable, and in the best interests of the Debtors and their Estates.

*Id.* at Art. IV.A.

23.     The Plan further provides that the claims of entities from which property is

recoverable are deemed disallowed:

Any Claims held by Entities from which property is recoverable under sections
542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer
avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the
Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the
Bankruptcy Code, and Holders of such Claims may not receive any distributions
on account of such Claims until such time as such Causes of Action against that

> Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Liquidating Trust.

*Id.*, Art. VII.G.

24. Finally, the Plan provides that no one can file a proof of claim or amend a previously-filed proof of claim without the prior written authorization of the Bankruptcy Court or the Liquidating Trustee:

> On or after the Effective Date, a Proof of Claim may not be Filed or amended without the prior written authorization of the Bankruptcy Court or Liquidating Trustee, and the Liquidating Trustee shall be authorized to update the Claims Register to remove any such new or amended Proof of Claim; *provided* that the Liquidating Trustee will provide notice to such Holder at the address or email address on the Proof of Claim, to the extent such information is provided, informing such Holder that its Claim will be adjusted or removed from the Claims Register.

*Id.*, Art. VII.H.

## OBJECTION

### I.   The Plan Cannot Be Confirmed Because the Plan Exculpation Violates Circuit Precedent by Shielding Non-Estate Fiduciaries

25. To the extent exculpation is permissible beyond the provisions of section 1125(e), this Circuit has only approved exculpations that are limited to estate fiduciaries. The Plan's definition of Exculpated Parties is inconsistent with controlling case law because it is not limited to estate fiduciaries.  In *In re PWS Holding Corp.*, the Third Circuit considered whether an official committee of unsecured creditors could be exculpated and held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of immunity to members of the unsecured creditors' committee.  228 F.3d 224, 246 (3d Cir. 2000).  This Court has repeatedly interpreted *PWS Holding* as requiring a party's exculpation to be based upon its status as an estate fiduciary.  *See In re Mallinckrodt PLC,* 639 B.R. 837, 882 (Bankr. D. Del. 2022); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 304 (Bankr. D. Del. 2013); *In re Tribune Co.*, 464 B.R. 126, 189 (Bankr. D. Del. 2011);

*In re Washington Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011); *In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *12 (Bankr. D. Del. Nov. 10, 2011).

26.    The Plan definition of Exculpated Parties includes many parties who are not fiduciaries of the estates— the current and former attorneys, financial advisors, consultants, and other advisors of the Committee, the Liquidating Trustee, and the Debtors.  *See In re Mallinckrodt*, 639 B.R. at 883 (holding that inclusion of a distribution agent in exculpation clause improper because entity is not in existence until after plan effective date); *In re Washington Mut.*, 442 B.R. at 350-51 ("[An] exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers.").  Moreover, the Liquidating Trustee will not even be in existence until the plan effective date and has not retained any professionals in this Court.

27.    To be consistent with controlling case law, the Exculpated Parties should be limited to the Debtors, the directors and officers of the Debtors who served during any portion of the cases, the Debtors' professionals retained in these cases, the Committee, the members of the Committees, in their capacity as such, and the Committee's professionals retained in these cases.

28.    Because the definition of Exculpated Parties is not limited to fiduciaries who have served during the chapter 11 cases, the exculpation provision contravenes Circuit precedent, and the Plan cannot be confirmed as written.

## II.    The Plan Cannot be Confirmed Because it Contains Impermissible Settlement Language.

29.    The plan should not be confirmed because the Plan is impermissibly deemed to be a settlement. Although the Plan does not make any specific reference to Bankruptcy Rule 9019, Article IV.A provides that ". . . upon the Effective Date the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and

controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan

shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims,

Interests, and Causes of Action, and the entry of the Confirmation Order shall constitute the

Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the

Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the

best interests of the Debtors and their Estates."

30.     Section 1123(b)(3)(A) of the Bankruptcy Code allows a plan proponent to "provide

for [] the settlement or adjustment of any claim or interest *belonging to the debtor or to the estate*."

11 U.S.C. § 1123(b)(3)(A) (emphasis added).

31.     Section 1123(b)(3) only allows a debtor to settle claims it has against others; it does

not allow a debtor to settle claims that creditors and interest holders may have against it, which is

what Plan § IV.A seeks to do.  *See Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*,

293 B.R. 489, 496 (B.A.P. 9th Cir. 2003) ("The only reference in [section 1123(b)] to adjustments

of claims is the authorization for a plan to provide for 'the settlement or adjustment of any claim

or interest *belonging* to the debtor or to the estate.' . . .  It is significant that there is no parallel

authorization regarding claims *against* the estate.") (emphasis in original) (quoting section

1123(b)(3)(A)) (internal citation omitted).

32.     The resolution of claims against the Debtors is governed by sections 1129 and 1141.

33.     A plan may incorporate one or more negotiated settlements, but a plan is not itself

a settlement.  Sending a plan to impaired creditors for a vote is not equivalent to parties negotiating

a settlement among themselves.  A "settlement" is "an agreement ending a dispute or lawsuit."

BLACK'S LAW DICTIONARY (10th ed. 2014).  An "agreement" is "a mutual understanding between

two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." *Id.*

34.     Approval of settlements is governed by Fed. R. Bankr. P. 9019, which provides that, "[o]n motion by the trustee [or chapter 11 debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." But, because a "settlement" requires an agreement between the settling parties, Rule 9019 governs only parties that have entered into an express settlement agreement; it is not a blanket provision allowing general "settlements" to be unilaterally imposed upon broad swaths of claimants that have no formal agreement with any party to "settle" their claims.

35.     The decision whether to approve a settlement under Rule 9019 is left to the sound discretion of the bankruptcy court, which "must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'" *Wash. Mut., Inc.*, 442 B.R. at 338 (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).[4] In contrast, chapter 11 plans are subject to the requirements of Bankruptcy Code sections 1123 and 1129. *See In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511 (3d Cir. 2005) ("Confirmation of a proposed Chapter 11 reorganization plan is governed by 11 U.S.C. § 1129."). What may be permissible under a negotiated settlement agreement that is considered "fair, reasonable, and in the best interest of the estate" outside of the plan context is different from what may be permissible under a plan.

36.     Here, Plan § IV.A purports to treat the Plan itself as if it were a Rule 9019 "settlement." Merely omitting the words "Rule 9019" does not change the true intent of IV.A, which is to provide that the Plan should be treated as a settlement motion and evaluated as same.

---

[4] The standard for approval of a settlement under Rule 9019 is guided by the following criteria: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citations omitted).

Plan § IV.A exceeds the scope of what can be settled under section 1123(b)(3)(A). Unless this provision is narrowed so that (i) it pertains only to claims the Debtors are settling against others and (ii) it provides the Plan itself is not a settlement, the Plan does not comply with section 1123(b)(3)(A) and does not satisfy section 1129(a)(1).

### III.    The Plan Cannot Be Confirmed Because its Automatic Claims Disallowance and Claim Amendment Restrictions Violate the Bankruptcy Code.

37.    Automatic disallowance or expungement of a claim is contrary to § 502(a) of the Code, which provides that, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, . . . objects." 11 U.S.C. § 502(a). Requiring claimants to obtain written permission from the Debtors or the Liquidating Trustee before amending a previously-filed claim or filing a claim is also directly contrary to §502(a). Neither is permissible.

38.    If the claims proposed to be disallowed or expunged are the subject of a proof of claim, such claims are allowed under § 502(a) of the Bankruptcy Code unless or until an objection is filed. If the Liquidating Trustee or another party believes that a claim has been paid in full or in part, or that a claimant is holding property that is recoverable by the estate, then either the Liquidating Trustee must file a claim objection (to object to the claim) or an adversary proceeding (to recover property and disallow a claim). Such objection or adversary complaint must be served on the affected claimholder, who then must be provided with an opportunity to respond.

39.    In that same vein, if the Liquidating Trustee or any other party believes that an amendment to a proof of claim is improper or objectionable, or that a filed claim is invalid, that party must file a claim objection, as such filed or amended claim is valid unless and until a party objects to it. The Plan already provides that the Liquidation Trustee is to "provide notice to such Holder at the address or email address on the Proof of Claim, to the extent such information is

provided, informing such Holder that its Claim will be adjusted or removed from the Claims Register." Plan, Art. VII.H. Rather than what appears to be a half-hearted nod to proper procedure under the Bankruptcy Code, the Plan should be amended to remove this provision, and the Liquidation Trustee should follow the claims resolution procedure contemplated by § 502.

40.     A claimholder's right to notice that their claim will be disallowed or expunged is not only required under § 502(a) of the Code, but is right and fair. The Plan must provide for an objection to be filed as to any claim that the Debtors, the Liquidating Trustee or any other party seek to have disallowed by the Court or expunged.

## IV.     The Plan Cannot be Confirmed Because it Deems Non-Voting Classes to be Accepting Classes.

41.     Section 1129(a)(8) of the Bankruptcy Code provides that a plan can only be confirmed if "[w]ith respect to each class of claims or interests . . . such class has accepted the plan." 11 U.S.C. § 1129(a)(8). Section 1126 governs acceptance of a plan by a creditor, providing that the holder of a claim "may accept or reject a plan" and Rule 3018(c) requires such acceptances or rejections to be in writing. 11 U.S.C. §1126; Fed. R. Bankr. Pro. 3018(c). Section 1126 also enumerates who may vote on a plan and the numerosity and debt thresholds that must be met for a class to accept a plan for purposes of § 1129(a)(8).

42.     Only a few courts have held that a non-voting class should be deemed to have accepted a plan. *See, e.g., In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988); *In re Cypresswood Land Partners I*, 409 B.R. 396, 430 (Bankr. S.D. TX 2009). The majority of courts that have considered the issue have held that a non-vote cannot be deemed to be an acceptance. *See e.g., In re M. Long Arabians*, 103 B.R. 211 (B.A.P. 9th Cir. 1989); *see also In re Vita Corp.*, 358 B.R. 749, 751-52 (Bankr. C.D. Ill. 2007), *aff'd*, 380 B.R. 525, 528 (C.D. Ill. 2008); *In re 7th Street and Beardsley P'ship*, 181 B.R. 426 (Bankr. D. Ariz. 1994); *In re Townco Realty, Inc.*, 18

C.B.C.2d 13, 81 B.R. 707 (Bankr. S.D. Fla. 1987) (section 1126(c) and Bankruptcy Rule 3018 require express acceptance).

43.     In both *In re Franco's Paving, LLC* and *In re Hot'z Power Wash, Inc.*, two recent Subchapter V cases from the Southern District of Texas, the bankruptcy court held that non-voting classes should simply not be counted for purposes of § 1126 and plan confirmation. Discussing the issue, the *Hot'z* court concluded that "that the result of a § 1126(c) computation for a nonvoting class is absurd, unsolvable, and was not contemplated by Congress." *See In re Hot'z Power Wash, Inc.*, Case No. 23-30749 (Bankr. S.D. Tex. Nov. 7, 2023) (quoting *In re Franco's Paving, LLC*, 2023 Bankr. LEXIS 2505 at *8 ("a nonvoting class renders the mathematical calculation required by § 1126(c) as impossible to calculate. . . . the indeterminate result obtained by dividing zero by zero was absurd and could not have been intended by Congress.")). This, not presumed acceptance, is the more appropriate treatment of non-voting classes.

44.     And while this Court recently permitted a chapter 11 plan class without votes to be an accepting class, these cases are distinguishable.  In *In re AIO US, Inc*, No. 24-11836 (CTG), 2025 WL 2426380 (Bankr. D. Del. Aug. 21, 2025), the Court approved the proposed "no votes in a given class equals deemed acceptance" rule at the solicitation procedures stage after due notice was given and no objections to the rule were received, all prior to the solicitation of votes.  *See id.* at *30-32.  While the U.S. Trustee questions how the *AIO US* ruling squares with the text of section 1126(c) of the Bankruptcy Code, here the plan proponents did not seek this Court's approval of the proposed rule prior to solicitation and, by extension, the *AIO US* ruling does not support their cause.

45.     Plan III.F provides that, in the event that there are no votes cast with respect to a class entitled to vote on the Plan, that class is deemed to have accepted the Plan. But a "non-vote"

does not satisfy the plain language of § 1126—it is neither an acceptance nor a rejection. Therefore, a class that does not vote cannot be deemed to accept the plan. Unless III.F is removed, the Plan should not be confirmed.

## **CONCLUSION**

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order denying confirmation of the Plan and granting such other and further relief as the Court deems just and equitable.

Dated: October 30, 2025                        Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

By:  */s/ Jane M. Leamy*
       Jane M. Leamy (DE Bar No. 4113)
       United States Department of Justice
       Office of the United States Trustee
       J. Caleb Boggs Federal Building
       844 N. King Street, Room 2207, Lockbox 35
       Wilmington, DE 19801
       Tel: (302) 573-6491
       Email: Jane.M.Leamy@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Jane M. Leamy, hereby certify that on October 30, 2025, a copy of this Objection was caused to be served *via* electronic service on the parties registered with the Court's CM/ECF system with courtesy copies sent via email to other parties in interest.


Dated: October 30, 2025                          */s/ Jane M. Leamy*_____
                                                            Jane M. Leamy