**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*: | Chapter 11 |
| YELLOW CORPORATION et al.,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administrered) |
| | **Re: Docket No. 7619** |
| | **Hearing Date: November 12, 2025 at** |
| | **10:00 a.m. (ET)** |
| | **Obj. Deadline (extended for the U.S.):** |
| | **November 5, 2025 at 4:00 p.m. (ET)** |

**UNITED STATES' LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE
FOURTH AMENDED JOINT CHAPTER 11 PLAN OF YELLOW CORPORATION AND
ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY
CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

The United States, on behalf of the Environmental Protection Agency (collectively the
"United States") files this *Limited Objection and Reservation of Rights to the Fourth Amended Joint
Chapter 11 Plan Of Yellow Corporation And Its Debtor Affiliates Pursuant To Chapter 11 Of The
Bankruptcy Code Proposed By The Debtors And The Official Committee Of Unsecured Creditors*
("Plan").[2] The State of Arizona and the California State Water Resources Control Board join in this
*Limited Objection and Reservation of Rights.[3]*

**PRELIMINARY STATEMENT**

1.     The United States and the Debtors continue to have productive discussions relating to

the Plan's treatment of the Debtors' liability for the investigation and remediation of contamination

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims
and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business
and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas
66211.
[2] Capitalized terms used but not defined in this Objection have the meanings given them in the Plan.
[3] The State of Maryland also supports the filing of this Limited Objection but because no member of the MD AG's
office has filed a notice of appearance, MD is not able to formally join the Limited Objection.

from potential releases of hazardous material from underground and aboveground storage tanks (collectively "Storage Tanks") that the Debtors own by transferring such obligations to the Liquidating Trust and establishing a segregated fund to pay for such liabilities. The United States expects those discussions to be resolved through language inserted into the Confirmation Order. The United States files this reservation of rights because the Debtors have yet to file a proposed Confirmation Order that includes the agreed upon language. Where the United States and Debtors disagree concerns the treatment for tanks that the Debtors previously operated, and these tanks are either still owned by Debtors or are registered to Debtors in state tank regulatory programs. In these instances, the law provides that tank operators and registered owners remain liable for the proper closure of tanks, and investigation and remediation of releases that have, or may have occurred, and there is no basis to allow Debtors to escape their liability as tank owners and operators.

2.      Accordingly, and for the reasons set forth in more detail herein, the United States respectfully requests that the Court enter an order denying confirmation of the Plan unless the funds set aside to pay for liabilities relating to the Debtors' owned Storage Tanks are also available to pay for liabilities relating to the Storage Tanks that the Debtors operated on the Petition Date which compliance obligations have not been assumed by third parties.

## JURISDICTION AND STANDING

3.      This Court has jurisdiction to hear and determine approval of the Plan and this Objection under: (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court of the District of Delaware issued under 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

## I. BACKGROUND

### A.      The United States' Role in Regulating Underground and Aboveground Storage Tanks

4.      The United States oversees the protection of public health and the environment and has oversight authority over Storage Tanks.

5.      The Environmental Protection Agency ("EPA") approves state underground storage tank ("UST") programs to operate in lieu of the EPA UST program. Congress created EPA's program with the Hazardous and Solid Waste Amendments ("HSWA") of 1984 to the Solid Waste Disposal Act of 1965, as amended (commonly known as RCRA).  The UST statute has been amended several times since then, with significant modifications including the Superfund Amendments and Reauthorization Act in 1986, and the Energy Policy Act in 2005. The UST statute is often referred to as Subtitle I of RCRA. The UST statute is incorporated into the U.S. Code at Title 42, Chapter 82, Subchapter IX (42 U.S.C. § 6991 et seq.). The UST provisions in the Solid Waste Disposal Act (as amended) serve as the statutory basis of the UST program.

6.      The United States and the States have enacted detailed statutory and regulatory programs to prevent releases, to investigate potential releases, and to remediate actual releases from tanks. Most states have their own UST programs applicable to UST owners in that particular state. As described in its objection, for example, California has enacted a comprehensive statute to regulate underground storage tanks. See Cal. Health & Safety Code §§ 25280, et. seq. The statute is clear that operators of underground storage tanks are responsible for unauthorized releases from such tanks. *Id*. § 25296.10(a). There are similar provisions in many other states.

7.      Certain aboveground storage tanks ("ASTs") are covered by 40 C.F.R. § 112 which applies to storage tanks holding petroleum oils and non-petroleum oils. With respect to tanks containing hazardous materials (i.e., gasoline, diesel fuel, other liquids) stored and/or used at a facility, EPA reporting requirements may apply. Similar to regulations governing USTs, there are also state or local regulatory requirements that may apply to ASTs depending upon the jurisdiction.

**B.      Relevant Case Background**

3

8.      On August 6, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., (the "Bankruptcy Code," or "Code"), in the United States Bankruptcy Court for the District of Delaware (this "Court"), thereby commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

9.      Since the Petition Date, the Debtors have liquidated certain real estate and rolling stock assets and continue to market and liquidate their remaining assets, including the remaining USTs and ASTs.

10.     On October 17, 2024, the Debtors filed the Motion of Debtors for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto [D.E. 4582] (the "Procedures Motion").

11.     On November 22, 2024, the Court entered an order approving the Procedures Motion [D.E 5024].

12.     On July 29, 2025, the Debtors filed the Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors [D.E. 6747] and the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors [D.E. 6746] (the "Plan").

13.     On September 15, 2025, the Bankruptcy Court entered its Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Form of Ballot and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto [D.E. 7608] (the "Solicitation Procedures Order").

14.     On September 16, 2025, the Debtors filed the [SOLICITATION VERSION] Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors [D.E. 7619] (the "Disclosure Statement").

15.     The Plan effectuates a liquidation of the Debtors' remaining assets and establishes a Liquidating Trust to distribute net proceeds of that liquidation for the benefit of unsecured creditors.

## II. LIMITED OBJECTION

### A.     Debtors Must Address Compliance Obligations for All Tanks

16.     The Plan includes provisions that address Debtors' compliance obligations with respect to Debtors' owned Storage Tanks by transferring them to the Liquidating Trust and establishing a reserve fund to address the potential liability associated with those Storage Tanks. The United States does not object to the Plan's treatment of the Storage Tanks that Debtors own. However, the Plan as proposed fails because it does not similarly address Debtors' responsibility to address their compliance obligations that have not been assumed by third parties for the Storage Tanks that Debtors operated or previously operated as of the Petition Date. The Plan can be cured and the United States' objection addressed if the Plan were revised to treat the Storage Tanks that Debtors operated or previously operated on the Petition Date, and for which third parties have not assumed compliance obligations, in a similar way to the treatment of owned tanks.

17.     The United States files this Limited Objection with respect to the Debtors' environmental compliance obligations for operated or previously operated Storage Tanks to ensure that Debtors comply with applicable non-bankruptcy law consistent with the proposed language the United States has negotiated with respect to the owned Storage Tanks.

18.     Anyone who owns or operates property, including Storage Tanks, must comply with environmental law. No one has a right to ignore hazards or disregard laws that protect the public and the environment. *See, e.g., Ohio v. Kovacs*, 469 U.S. 274, 285 (1985) ("[A]nyone in possession of [a]

site . . . must comply with . . . environmental laws . . . Plainly that person . . . may not maintain a nuisance, pollute the waters . . . [,] or refuse to remove the source of such conditions."); *In re General Motors Corp.*, 407 B.R. 463, 508 (S.D.N.Y. 2009) (a free and clear purchaser "would have to comply with its environmental responsibilities starting with the day it got the property, and if the property required remediation as of that time, any such remediation would be the buyer's responsibility"); *In re CMC Heartland Partners*, 966 F.2d 1143 (7th Cir. 1992) (a reorganized debtor that owns property that was contaminated before confirmation is liable to EPA as the present owner of the property).

19.      In addition, a liquidating trustee must comply with 28 U.S.C. § 959(b), which requires trustees and debtors-in-possession to "manage and operate the property in [their] possession . . . according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." In *In re Wall Tube*, the Sixth Circuit found that section 959(b) applied to "liquidating trustees," reasoning that "whether a trustee is liquidating, managing or reorganizing the debtor's estate, his efforts under the Code remain the same—the consolidation and distribution of the estate's assets to the benefit of the creditors." *In re Wall Tube & Metal Products Co.*, 831 F.2d 118, 122 (6th Cir. 1987).

20.      Furthermore, even in this case, where the underlying lease may have been rejected, the owner or operator of the Storage Tanks must comply with environmental law. The responsibility of such Storage Tanks rests with the Liquidating Trustee until such time that such Storage Tanks are transferred to a new responsible party. *See, e.g.*, *In re Lyondell Chem. Co.*, 416 B.R. 108, 117 (S.D.N.Y. 2009) (holding that the rejection of a lease did not authorize debtors to abandon environmentally hazardous property at the leased facility).

21.      The United States hereby requests that the protective language negotiated among the parties relating to the Debtors' owned Storage Tanks be extended to those Storage Tanks the Debtors operated on leased property, including where the Debtors rejected the lease but retain liability under non-bankruptcy law in connection with Storage Tanks.

6

**B.      The Plan Impermissibly Enjoins the United States' Setoff and Recoupment Rights**

22.      Article IX. E. of the Plan purports to permanently enjoin all holders of Claims, Interests, or Causes of Action from a broad range of actions, including asserting any right of setoff, subrogation, or recoupment of any kind." The Plan cannot impair the United States' setoff and recoupment rights. Confirmation does not extinguish setoff claims when they are timely asserted. *In re Cont'l Airlines*, 134 F.3d 536, 541–42 (3d Cir. 1998). Like other creditors, the United States has the common law right to setoff mutual debts. *See United States v. Munsey Tr. Co. of Wash., D.C.*, 332 U.S. 234, 239 (1947). "The government's common law right of setoff—which is inherent in the federal government—is broad and 'exists independent of any statutory grant of authority to the executive branch.'" *Marre v. United States*, 117 F.3d 297, 302 (5th Cir. 1997) (quoting *United States v. Tafoya*, 803 F.2d 140, 141 (5th Cir. 1986)). Likewise, the right of recoupment is "essentially a defense to the debtor's claim against the creditor . . . and application of the limitations on setoff in bankruptcy would be inequitable." *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984).

## III. RESERVATION OF RIGHTS

23.      The United States is currently negotiating with Debtors with respect to proposed protective language for the Confirmation Order. The United States expects to reach a consensual resolution with Debtors such that the Confirmation Order shall include language relating to the Debtors' treatment of Storage Tanks on property owned by the Debtors and certain of the Storage Tanks on leased property for which the Debtors remain liable under applicable non-bankruptcy law. The United States further expects the protective language to cover other concerns of the United States, including what was specifically described above. However, to the extent the United States is unable to reach agreement with Debtors as to such language, then the United States reserves all rights to supplement this Limited Objection to the extent that the Debtors seek entry of a final confirmation Order that is inconsistent with the terms that the parties are negotiating.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth in this limited objection and reservation of rights, the United States respectfully requests that the Court (i) deny confirmation of the Plan unless the language negotiated by the parties is included in the Confirmation Order and the reserve fund applies to all Storage Tanks for which the Debtors remain liable for environmental compliance obligations under applicable non-bankruptcy law; and (ii) grant such other and further relief as the Court deems just and proper.

Date: November 5, 2025            Respectfully submitted,

ADAM GUSTAFSON
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

By: s/Jeanne T. Cohn
Jeanne T. Cohn
Senior Counsel
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
Email: Jeanne.cohn@usdoj.gov
Telephone: (202) 598-0131

I-Heng Hsu
Trial Attorney
United States Department of Justice
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
Email: i-heng.hsu@usdoj.gov
Telephone: (202) 616-3619

ATTORNEYS FOR THE UNITED STATES

KRISTIN K. MAYES
Attorney General

s/Matthew A. Silverman
Shelley Cutts
Matthew A. Silverman
Assistant Attorney General
Attorney for the State of Arizona
*ex rel*. Arizona Department of Environmental Quality

Rob Bonta
Attorney General of California

s/Eric M. Katz
Eric M. Katz
Supervising Deputy Attorney General
*Attorneys for California State Water Resources Control Board*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2025 a true and correct copy of this *Limited Objection and Reservation of Rights to the Fourth Amended Joint Chapter 11 Plan Of Yellow Corporation And Its Debtor Affiliates Pursuant To Chapter 11 Of The Bankruptcy Code Proposed By The Debtors And The Official Committee Of Unsecured Creditors* was electronically filed with the clerk of the court by using the CM/ECF system which caused electronic service on all persons receiving notice in this case.

By: s/Jeanne T. Cohn
Jeanne T. Cohn