## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL DECLARATION
OF CODY LEUNG KALDENBERG IN SUPPORT OF ENTRY OF
ORDER (I) APPROVING CERTAIN ASSET PURCHASE AGREEMENTS;
(II) AUTHORIZING AND APPROVING SALES OF CERTAIN PROPERTIES
OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS,
AND ENCUMBRANCES, IN EACH CASE PURSUANT TO THE APPLICABLE
ASSET PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

I, Cody Leung Kaldenberg, hereby declare under penalty of perjury as follows:

1. I am a founding member of and partner at Ducera Partners LLC ("Ducera"), which maintains its principal office at 11 Times Square, 36th Floor, New York, New York 10036. Ducera is the investment banker to the above captioned debtors and debtors in possession (collectively, the "Debtors").

2. I hereby submit this supplemental declaration (this "Supplemental Declaration") in support of the Court's entry of the proposed *Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Properties of the Debtors Free and Clear of Liens, Claims, Interests Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; and (III) Granting Related Relief* (the "Sale Order"). If called as a witness,

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

I could and would testify competently to the facts set forth in this Supplemental Declaration. I am not being specifically compensated for this testimony other than through payments received by Ducera as a professional retained by the Debtors, subject to approval by this Court. I am over the age of 18 and am authorized to submit this Supplemental Declaration on behalf of the Debtors.

3. During these chapter 11 cases, I have helped to lead Ducera's strategic, banking, marketing, and sale efforts on behalf of Yellow Corporation and its Debtor affiliates. As part of the Debtors' sale efforts, Ducera continues to pursue value-maximizing transactions for the Debtors' remaining Real Property Assets. With respect to the Debtors' remaining owned Real Property Assets, they continue to be featured on Crexi's market-leading Platform for commercial real estate transactions, pursuant to the Court's recently entered *Order (I) Approving That Certain Web-Based Real Estate Promotional Agreement with Crexi Technologies, LLC, (II) Authorizing the Debtors to Redact and File Under Seal Certain Confidential Commercial Information Contained Therein, and (III) Granting Related Relief* [Docket No. 7728] (the "Crexi Order" and the Web-Based Real Estate Promotional Agreement dated September 15, 2025 (as amended from time to time, and including all exhibits and supplements therein) approved and authorized thereby, the "Crexi Agreement").[2]

### Professional Background and Qualifications

4. Founded in 2015, Ducera is an independent investment banking advisory firm, which has extensive experience in, among other areas, providing leading-edge capital structure and restructuring advice in both in-court and out-of-court situations. In addition to providing

---

[2] Capitalized terms used but not defined in this Supplemental Declaration shall have the meanings ascribed to such terms in the *Motion of Debtors for Entry of an Order (I) Approving That Certain Web-Based Real Estate Promotional Agreement with Crexi Technologies, LLC, (II) Authorizing the Debtors to Redact and File Under Seal Certain Confidential Commercial Information Therein, and (III) Granting Related Relief* [Docket No. 7615] (the "Crexi Motion"), the Crexi Agreement, the Bidding Procedures (as defined herein), or the Sale Order, as applicable.

2

investment banking services regarding numerous out of court restructurings and sales, Ducera professionals have served as investment bankers to debtors, creditor groups, asset purchasers, committees, boards of directors, and trustees in a number of bankruptcy matters. Ducera provides a broad range of corporate and financial services to its clients, including with respect to: general corporate advice; mergers, acquisitions, and divestitures; corporate restructurings; and private placements. Ducera provides its services worldwide from three offices located in the United States.

5. Ducera has more than fifty professionals and is one of the leading advisors and investment bankers to debtors, secured and unsecured creditors, acquirers, and other parties in interest involved with financially troubled companies requiring complex financial restructurings, both in and outside of bankruptcy. Ducera has represented debtors, creditors, and other constituents in some of the largest restructuring cases in the United States, including: (a) *In re Nikola Corp.,* Case No. 25-10258 (TMH) (Bankr. D. Del. Apr. 21, 2025) [Docket No. 427]; (b) *In re Franchise Grp., Inc.*, Case No. 24-12480 (JTD) (Bankr. D. Del. Jan. 21, 2025) [Docket No. 802]; (c) *In re Casa Sys., Inc.*, Case No. 24-10695 (KBO) (Bankr. Del. May 1, 2024) [Docket No. 256]; (d) *In re Revitalid Pharm. Corp.*, No. 23-11704 (BLS) (Bankr. D. Del. Nov. 15, 2023) [Docket No. 105]; (e) *In re Diebold Holding Co., LLC*, Case No. 23-90602 (DRJ) (Bankr. S.D. Tex. July 18, 2023) [Docket No. 266]; (f) *In re Virgin Orbit Holdings, Inc.*, Case No. 23-10405 (KBO) (Bankr. D. Del. May 15, 2023) [Docket No. 261]; (g) *In re GBG USA Inc.*, Case No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 22, 2021) [Docket No. 230]; and (h) *In re Superior Energy Servs., Inc.*, Case No. 20-35812 (DRJ) (Bankr. S.D. Tex. Feb. 2, 2021) [Docket No. 316].

6. I have over twenty years of restructuring related investment banking experience and have worked on a broad range of restructuring advisory assignments across a variety of

industry sectors. Since joining Ducera in 2015, I have provided investment banking expertise and financing advice, including with respect to marketing and selling businesses and assets, to financially distressed companies as well as lenders and strategic investors in distressed and special situations engagements. Prior to joining Ducera, I worked as a Director at Perella Weinberg Partners for over six years, advising companies and other stakeholders on special situation restructuring engagements, prior to which I worked as an associate at Goldman Sachs for over four years. I earned a Bachelor of Science in Economics from the Massachusetts Institute of Technology in 2004.

7. I have worked closely with the Debtors' management and other professionals retained by the Debtors in advance of and throughout these chapter 11 cases and have become well acquainted with the Debtors' capital structure and Real Property Assets, including the properties under each of the Birch Run Asset Purchase Agreement (the "Birch Run Property") and the Mountain Top Asset Purchase Agreement (the "Mountain Top Property").

8. Except as otherwise indicated, all facts set forth in this Supplemental Declaration are based upon my personal knowledge, my discussions with other members of the Ducera team, the Debtors' management team, and the Debtors' other advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Supplemental Declaration on that basis. I am authorized to submit this Supplemental Declaration on behalf of the Debtors. I am not being specifically compensated for this testimony other than through payments received by Ducera as a professional retained by the Debtors, subject to approval by this Court. I am over the age of 18 years and authorized to submit this Supplemental Declaration on behalf of the Debtors.

**Background**

9. On September 15, 2023, the Court entered the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures, (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignments of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (the "Bidding Procedures Order").

10. I understand that the Bidding Procedures grant the Debtors the flexibility to, in their business judgment and in consultation with the Consultation Parties, sell assets via a private or public sale outside the Bidding Procedures, but subject to Court approval. *See* Bidding Procedures at p. 3; *see also* September Sale Process Notice[3] at p. 4 ("The Debtors reserve all rights under the Bidding Procedures Order . . . to seek all value-maximizing alternatives for the Assets in accordance with the terms thereof.").

11. On September 25, 2024, the Debtors filed the September Sale Process Notice, pursuant to which the Debtors set October 18, 2024 at 5:00 p.m. (ET) as the IOI Deadline for prospective bidders to submit non-binding, written indications of interest to the Debtors (including CBRE and Ducera) for any of the properties within the Debtors' Remaining Real Estate Portfolio—including for the Birch Run Property and the Mountain Top Property.

---

[3] "September Sale Process Notice" means the *Notice of Supplemental Dates and Deadlines Under Bidding Procedures Order Regarding Debtors' Continued Sale Process* [Docket No. 4425].

12. On November 18, 2024, the Debtors filed the November Sale Process Notice,[4] setting January 6, 2025 at 5:00 p.m. (ET) as the Bid Deadline for the Remaining Properties (the "Bid Deadline") and January 13-15, 2025 at 9:00 a.m. (ET) as the Auction (if any) for the Remaining Properties.

13. On each of January 3, 2025, January 23, 2025, February 3, 2025, February 20, 2025, February 20, 2025, March 5, 2025, and March 20, 2025, the Debtors, in consultation with the Committee and in accordance with the Bidding Procedures Order, filed those certain *Notice[s] of Further Supplemental Dates and Deadlines Regarding Continued Sale Process for Debtors' Remaining Properties, Including Bid Deadline, Auction, and Sale Hearing* [Docket Nos. 5328, 5519, 5597, 5701, 5841, 5917] (collectively, with the September Sale Process Notice, the November Sale Process Notice, and the March Sale Process Notice (defined below), the "Sale Process Notices"), in each case setting forth and establishing certain revised Sale Dates and Deadlines, including, pursuant to the March 20, 2025 notice filed at Docket No. 5917 (the "March Sale Process Notice") and with respect to each of the Sale Dates and Deadlines, at dates and times to be determined.

14. Following the IOI Deadline, the Debtors and their advisors analyzed all IOIs received, including for the Birch Run Property and the Mountain Top Property. Further, the Debtors' advisors held discussions with the Committee's advisors regarding the Debtors' go-forward sale process and value-maximization of the Remaining Real Estate Portfolio, including the Birch Run Property and the Mountain Top Property.

---

[4] "November Sale Process Notice" means the *Notice of Further Supplemental Dates and Deadlines Regarding Continued Sale Process for Debtors' Remaining Properties, Including Bid Deadline, Auction, and Sale Hearing* [Docket No. 4952].

15. On September 15, 2025, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving That Certain Web-Based Real Estate Promotional Agreement with Crexi Technologies, LLC, (II) Authorizing the Debtors to Redact and File Under Seal Certain Confidential Commercial Information Therein, and (III) Granting Related Relief* [Docket No. 7615], seeking approval of the Crexi Agreement. Pursuant to the Crexi Agreement, Crexi, in close consultation with Ducera and CBRE, features and promotes the CBRE Listings of the Debtors' remaining owned Real Property Assets on Crexi's market-leading commercial real estate platform.

16. On October 2, 2025, the Court entered the Crexi Order, approving the Crexi Agreement.[5] Shortly thereafter, and through November 5, 2025, Crexi featured and promoted the Birch Run Property and the Mountain Top Property on the Platform.

17. On November 5, 2025, the Platform End Date for each of the Birch Run Property and the Mountain Top Property,[6] the respective Purchasers under the Birch Run Asset Purchase Agreement and the Mountain Top Asset Purchase Agreement, each providing the highest value for the respective properties relative to any other interested parties (both on and off the Platform), entered into the Birch Run Asset Purchase Agreement and the Mountain Top Asset Purchase Agreement. As further described below, the Birch Run Asset Purchase Agreement and the

---

[5] The Crexi Order also provides, at paragraph 4: "Following the Platform End Date, the Debtors shall file and serve a proposed form of Sale Order authorizing the Debtors' entry into any executed Purchase and Sale Agreement(s) with the Winning Bidder(s) from the Platform, to be heard at the hearing before this Court scheduled for November 12, 2025 at 10:00 a.m. (prevailing Eastern Time) (unless rescheduled) and without the requirement for the Debtors to file a separate sale motion on account thereof."

[6] Pursuant to an amendment to the Crexi Agreement dated as of October 30, 2025 entered by the Debtors (in consultation with the Creditors' Committee) and Crexi, the Platform End Date for the owned Real Property Assets remaining on Crexi's Platform (*i.e.*, Monroe, LA; Jackson, MN; Sacramento, CA; Chicago Heights, IL; Sauk Village, IL; Lagrange, GA) is rescheduled to December 5, 2025 (subject to the Debtors' rights under the Crexi Agreement to withdraw any of the properties on the Platform in advance thereof, in accordance with the terms of the Crexi Agreement). The Debtors, in consultation with the Creditors' Committee, withdrew the Montgomery, AL and Jacksonville, FL properties from the Platform on October 22, 2025.

Mountain Top Asset Purchase Agreement maximize the value of the Birch Run Property and the Mountain Top Property, respectively, and each contain terms that are fair and reasonable.

### The Birch Run Asset Purchase Agreement and the Mountain Top Asset Purchase Agreement Are Each Value-Maximizing, Contain Fair and Reasonable Terms, and Should Be Approved

18. In my opinion, the Birch Run Asset Purchase Agreement maximizes the value of the Birch Run Property and the Mountain Top Asset Purchase Agreement maximizes the value of the Mountain Top Property. Additionally, the terms and provisions of each of the Birch Run Asset Purchase Agreement and the Mountain Top Purchase Agreement are fair and reasonable. Accordingly, the Birch Run Asset Purchase Agreement and the Mountain Top Asset Purchase Agreement—each the culmination of a successful web-based marketing process on Crexi's Platform—should each be approved and authorized.[7]

19. I arrived at this conclusion based upon my review of all expressions of interest for each of the Birch Run Property and the Mountain Top Property received during the chapter 11 cases. Ducera has held discussions with any interested purchaser that has approached Ducera regarding the Birch Run Property or the Mountain Top Property. In addition, any prospective purchaser accessing Crexi's Platform (*i.e.*, open and free-of-charge to any and all prospective purchasers) has had an opportunity of multiple weeks to indicate higher value for the respective properties. In my professional opinion and judgment, the Birch Run Asset Purchase Agreement and the Mountain Top Asset Purchase Agreement maximize the value of the respective assets following a thorough, transparent, and open marketing process, which has spanned over two years

---

[7] With respect to the other Asset Purchase Agreements sought for approval under the proposed Sale Order (*i.e.*, each of properties sold outside of the Crexi process), the Debtors previously filed, contemporaneous with their filing of the Motion, the *Declaration of Cody Leung Kaldenberg in Support of Entry of an Order (I) Approving Certain Asset Purchase Agreements; (II) Authorizing and Approving Sales of Certain Properties of the Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances, in Each Case Pursuant to the Applicable Asset Purchase Agreement; and (III) Granting Related Relief* [Docket No. 7865] (the "Kaldenberg Declaration").

(including, recently, over four weeks of the applicable CBRE Listings being listed on Crexi's Platform). Any and all prospective purchasers have had an extensive opportunity to access Ducera's and/or CBRE's datarooms, to conduct diligence on the Birch Run Property and the Mountain Top Property, to access Crexi's Platform, and to submit indications of interest or offers to the Debtors whether on or off the Platform.

20. In my professional opinion and judgment, the terms and provisions of each of the Birch Run Asset Purchase Agreement and the Mountain Top Asset Purchase Agreement are fair and reasonable. The respective Purchasers have each agreed to the Debtors' form asset purchase agreement, which was posted on the Platform alongside the listings and prepared in consultation with the advisors to the Creditors' Committee, and each executed the form asset purchase agreement on the Platform End Date.

21. In my professional opinion and judgment, each of the Birch Run Property and the Mountain Top Property have been sufficiently and thoroughly marketed (including, among other of the Debtors' significant efforts, via Crexi's Services and the Platform) to enable me to conclude that the Birch Run Asset Purchase Agreement and the Mountain Top Asset Purchase Agreement maximize the value of the Birch Run Property and the Mountain Top Property. Respectfully, the Court should approve the proposed Sale Order.

## Conclusion

22. Based on the foregoing, and respectfully, the requested relief should be authorized.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: November 7, 2025  /s/ *Cody Leung Kaldenberg*

Cody Leung Kaldenberg
Partner
Ducera Partners, LLC

*Investment Banker to the Debtors*