# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered)<br><br>Hearing Date: November 10, 2025, at 10:00 a.m. (ET)<br>Objection Deadline: October 28, 2025, at 4:00 p.m. (ET)[2]<br><br>Re: Docket No. 8144 |

**OBJECTION OF THE CHUBB COMPANIES TO FOURTH AMENDED JOINT CHAPTER 11 PLAN OF YELLOW CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (TECHNICAL MODIFICATIONS)**

ACE American Insurance Company, ACE Property and Casualty Insurance Company, Bankers Standard Insurance Company, Illinois Union Insurance Company, Indemnity Insurance Company of North America, Insurance Company of North America, Westchester Surplus Lines Insurance Company, Federal Insurance Company, and each of their respective U.S.-based affiliates and successors (collectively, and solely in their capacities as insurers of one or more of the above-captioned debtors, the "Chubb Companies"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the *Fourth Amended Joint Chapter 11 Plan of Reorganization of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and Official Committee of Unsecured Creditors*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2] The Objection Deadline for the Chubb Companies was extended up to and through, Monday, November 10, 2025.

*(Technical Modifications)* [Docket No. 8144] (the "Modified Plan"),[3] and in support of the Objection, the Chubb Companies respectfully state as follows:

## PRELIMINARY STATEMENT

The Bankruptcy Code and applicable law are clear: bankruptcy courts cannot unilaterally rewrite the terms and conditions of contracts, including insurance contracts. Despite this well-established legal principle, this is precisely what the Debtors are asking the Court to do through the proposed Modified Plan. The modifications to the Debtors' insurance policies set forth in the Plan violate black letter law and, therefore, the Chubb Companies object to the Modified Plan as more fully set forth herein.

## BACKGROUND

### I. The Bankruptcy Case

1. On August 6, 2023 and August 7, 2023 (collectively, the "Petition Date"), Yellow Corporation and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. On September 2, 2024, the Debtors filed with the Bankruptcy Court the *Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 4253] and the *Disclosure Statement for the Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No 4254], along with the *Motion of Debtors for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms*

---

[3]    Capitalized terms used but not defined herein shall the meaning set forth in the Plan.

*of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 4582].[4]

3. On July 29, 2025, the Debtors filed with the Bankruptcy Court the *Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* (the "Plan") [Docket No. 6746] and the *Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 6747] (the "Disclosure Statement"), along with the *Motion of the Debtors for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 6748].

4. On September 15, 2025, the Bankruptcy Court entered the *Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures (III) the Form of Ballot and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 7608].

5. On September 16, 2025, the Debtors filed the solicitation version of the Plan [Docket No. 7619] and the Disclosure Statement [Docket No. 7619].

6. On November 9, 2025, the Debtors filed the Modified Plan, which they seek confirmation of at the hearing on Wednesday, November 12, 2025.

---

[4] Prior to filing the Plan, the Debtors filed amendments to the Plan and Disclosure Statement at the following docket entries respectively Docket Nos. 4974 and 5995 and Docket No. 4975.

## II. The Insurance Program

7. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors as named insureds.

8. Prior to the Petition Date, the Chubb Companies and the Debtors also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

9. Pursuant to certain Policies and Insurance Agreements (the "Insurance Program"), ACE American Insurance Company, ACE Property and Casualty Insurance Company, Bankers Standard Insurance Company, Illinois Union Insurance Company, Indemnity Insurance Company of North America, Insurance Company of North America, Federal Insurance Company and Westchester Surplus Lines Insurance Company, and/or certain of their U.S.-based affiliates provide, inter alia, certain workers' compensation, workers' compensation excess, international, directors' and officers' liability, inland marine, marine cargo, cargo, international advantage, umbrella, environmental, fiduciary liability, umbrella excess, excess, commercial marine, crime, directors' and officers' liability excess, fiduciary liability excess, employment practices liability, excess, export package, package, hull, general liability, inland marine, workers' compensation, WorldNet, special coverage, and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit

premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Insurance Program (collectively, the "Obligations").[5]

10. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

11. Certain of the Obligations are secured by certain collateral, including letters of credit or proceeds of such letters of credit. The Obligations may also be secured by trusts, escrows, surety bonds, cash collateral, other paid loss deposit funds, or other amounts.

### III. The Plan

12. With regard to the Insurance Policies the Plan provides as follows:

> Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):
>
> (a) subject to Article IV.M, Article VIII.C, Article V.E(e), and applicable law, on the Effective Date, the rights and obligations of the Insurance Policies (other than the D&O Liability Insurance Policies) shall vest, unaltered and in their entirety with the Liquidating Trust, and all debts, obligations, and liabilities of the Debtors (and, after the Effective Date, of the Liquidating Trust) thereunder, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired, and all such debts, obligations, and liabilities of the Debtors (and, after the Effective Date, of the Liquidating Trust) shall be satisfied by the Liquidating Trust in the ordinary course of business, and the Insurers shall not need to or be required to file or serve any objection to a proposed cure amount or a request, application, Claim, proof or motion for payment or allowance of any Claim or Administrative Claim and shall not be

---

[5] The Obligations include both monetary and non-monetary obligations that the insureds, including one or more of the Debtors, may have.

subject to any bar date or similar deadline governing cure amounts, proofs of Claim or Administrative Claims;

(b) for the avoidance of doubt, subject to the automatic stay under section 362 of the Bankruptcy Code and the injunction under Article IX.E of this Plan, if there is available insurance, any party with rights against or under the applicable Insurance Policy, including, without limitation, the Estates, the Liquidating Trust and Holders of Insured Claims, may pursue such rights, and the Debtors and the Liquidating Trust may, but shall not be required to, move to limit an Insured Claim to the Face Amount of such Insured Claim less the total coverage available with respect to that Insured Claim under the Insurance Policies; provided, however, that doing so in no way obligates an Insurer to pay any portion of the Insured Claim or otherwise alters an Insurer's coverage defenses; provided further, however, that, subject to Article IV.M, Article V.E.(a), and Article V.E.(e), nothing alters or modifies the duty, if any, that Insurers have to pay Insured Claims covered by the Insurance Policies and the Insurers' right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Liquidating Trust); provided finally, however, the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article IX.E of this Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (I) all current and former employees of the Debtors to proceed with any covered workers compensation claims they might have in the appropriate judicial or administrative forum; (II) holders of direct action claims against an Insurer under applicable law to proceed with their claims; (III) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) any valid workers compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable law, or an order has been entered by this Court granting a claimant relief from the automatic stay to proceed with its Insured Claim, and (C) all costs in relation to each of the foregoing; and (IV) Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors at any time and to hold the proceeds thereof as security for the obligations of the Debtors and/or apply such proceeds to the obligations of the Debtors in accordance with the applicable Insurance Policies;

(c) nothing in Article V.E shall constitute a waiver of any Causes of Action the Debtors, their Estates or the Liquidating Trust may hold against any Entity, including any Insurers. Nothing in Article V.E.(e) is intended to, shall or shall be deemed to preclude any Holder of an Insured Claim from seeking and/or obtaining a recovery from any Insurer; provided, no distributions under the Plan

shall be made on account of an Insured Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Insured Claim has exhausted all remedies with respect to such Insurance Policy; provided, however, that the Debtors, their Estates, and the Liquidating Trust do not waive, and expressly reserve their rights to assert that the proceeds of the Insurance Policies are an asset and property of the Estates to which they are entitled to the extent that the Debtors are entitled;

(d) subject to Article IV.M, Article VIII.C, Article V.E(e), and applicable law, nothing shall modify the scope of, or alter in any other way, the rights and obligations of the Insurers, the Debtors (or, after the Effective Date, the Liquidating Trust), or any other individual or entity, as applicable, under the Insurance Policies (including, but not limited to, any agreement to arbitrate disputes), and all such rights and obligations shall be determined under the Insurance Policies and applicable law, and the Insurers shall retain any and all legal, equitable, or contractual rights, claims and defenses to liability and/or coverage that they have under the Insurance Policies, including the right to contest and/or litigate with any party, including the Debtors and Liquidating Trust, concerning the existence, primacy and/or scope of liability and/or available coverage under any allegedly applicable Insurance Policy; and

(e) any payment, pecuniary, reimbursement or other financial or monetary obligations of the Debtors, their Estates or the Liquidating Trust owing to the Insurers under the Insurance Policies other than the D&O Liability Insurance Policies, including, but not limited to, subrogation rights and reimbursement for payments within a deductible or self-insured retention, shall be satisfied first from existing collateral and/or security, if any, held by the Insurers in the ordinary course and pursuant to the terms of the Insurance Policies, which shall be subject to the Insurer's defense to payment in favor of the Insurer under the Insurance Policy or Policies, if applicable, and to the extent that any such collateral and/or security is insufficient to satisfy any such obligations, the Insurers shall have a claim against the Debtors and their Estates, the type, priority and amount of which is to be determined by the Bankruptcy Court under applicable law and shall have rights to a distribution from, the Debtors, their Estates and the Liquidating Trust, the type, priority and amount of which is to be determined by the Bankruptcy Court under applicable law.

Plan at Art. V.E.

13. The Plan further proposes, with regard to D&O Liability Insurance Policies, as follows:

> On or before the Effective Date, the Debtors, with the reasonable consent of the Committee, shall maintain tail coverage for existing D&O Liability Insurance Policies for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing D&O Liability Insurance Policies and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing D&O Liability Insurance Policies upon placement. For the avoidance of doubt, each D&O Liability Insurance Policy shall be assumed under the Plan, in accordance with in Article V.A. of the Plan; provided, however, nothing herein shall be deemed to change the insureds under any of the D&O Liability Insurance Policies. On and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies in effect or purchased as of the Effective Date for the full term of such D&O Liability Insurance Policies regardless of whether such officers, directors, agents, and/or employees remain in such positions as of the Effective Date, in each case, to the extent set forth in such D&O Liability Insurance Policies. For the avoidance of doubt, nothing herein shall in any way impair the Liquidating Trust's ability on and after the Effective Date to assert on behalf of the Debtors or the Estates any Assigned Insurance Rights[6] or Retained Causes of Action, including with respect to the D&O Liability Insurance Policies. In no event shall the Liquidating Trust have any obligation to indemnify any officer, director, agent or employee of the Debtors, nor shall the Liquidating Trust have any obligation to satisfy or pay any deductible, retention, or other financial obligation under the Insurance Policies. The Liquidating Trust shall be responsible for monitoring and preserving the ability to maintain claims that are Assigned Insurance Rights against the Insurance Policies. The Debtors shall provide reasonable cooperation necessary to maximizing the value of the Assigned Insurance Rights.

---

[6] "*Assigned Insurance Rights*" means, collectively, any and all rights, titles, privileges, interests, claims, demands or entitlements of the Debtors or their Estates to any and all proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity arising under, or attributable to, any and all Insurance Policies, now existing or hereafter arising, accrued, or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent subject to the terms of the Insurance Policies and applicable law.

DM3\11187587.20

14. The Plan further proposes, with regard to the transfer of assets to the Liquidating Trust, as follows:

> The Debtors and the Liquidating Trustee will establish the Liquidating Trust on behalf of the Beneficiaries pursuant to the Liquidating Trust Agreement, with the Beneficiaries to be treated as the grantors and deemed owners of the Liquidating Trust Assets. The Debtors and the Estates will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Beneficiaries, all of their rights, title, and interests in the Liquidating Trust Assets. The Liquidating Trust will accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Beneficiaries, subject to the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement.
>
> On the Effective Date, all Liquidating Trust Assets will vest and be deemed to vest in the Liquidating Trust in accordance with section 1141 of the Bankruptcy Code or as otherwise set forth in the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee determines, in good faith, have no value to the Liquidating Trust. Any assets the Liquidating Trustee so abandons or otherwise does not accept shall not vest in the Liquidating Trust. As of the Effective Date, all Liquidating Trust Assets vested in the Liquidating Trust shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order. Upon the transfer by the Debtors of the Liquidating Trust Assets to the Liquidating Trust or abandonment of Liquidating Trust Assets by the Liquidating Trust, the Debtors and their Estates will have no reversionary or further interest in or with respect to any Liquidating Trust Assets or the Liquidating Trust. For the avoidance doubt, the transfer of the Assigned Insurance Rights contemplated in this section is not an assignment of any Insurance Policy itself.
>
> Notwithstanding anything herein to the contrary, the Liquidating Trust and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

Plan at Art. VIII.C.

**OBJECTION**

15. The Chubb Companies object to the Plan on the grounds that the Plan attempts to alter the Insurance Program, *e.g.*, the Plan provides that the "rights and obligations" under the

9

Insurance Program shall be separated from the Insurance Program and that the Debtors' successors do not need to remain liable for the Obligations under the Insurance Program to retain the benefits thereunder (*see e.g.,* Art. V.E).

**I. The Plan Must Clearly Provide That Nothing Modifies, Alters Or Impairs The Insurance Program.**

16. Neither the Debtors nor this Court can rewrite the Insurance Program, but rather, the Insurance Program must be enforced as written. *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd*, 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (citation omitted); *Ally Financial Inc., v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill [its] unspoken expectation"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr.

E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

17. However, the Plan contains provisions that provide for the release of liens, the vesting of assets in the Debtors' successors free and clear of liens, releases of certain third parties, and exculpation and injunctions against certain actions. *See, e.g.*, Plan at Art. VIII.C and Art. IX.

18. Further, the proposed vesting only of the "rights and obligations of the Insurance Policies" in the Liquidating Trust not the Insurance Policies themselves and that such vesting be "free and clear of any and all actual or alleged Liens or encumbrances of any nature whatsoever" (Plan at Art. V.E and Art. VIII.C) would improperly modify and amend the terms and conditions of the Insurance Program, the benefits of which the Debtors and their successors and assignees appear determined to retain, all of which is a violation of well-established applicable law. *See, e.g.*, *In re Amatex Corp.*, 107 B.R. 856, 865-66 (E.D. Pa. 1989), *aff'd*, 908 F.2d 961 (3d Cir. 1990) ("[T]he rights and obligations of the Debtor and [its insurer] under the [insurance] policy are not altered because of the Debtor's Chapter 11 filing."); *In re Lloyd E. Mitchell, Inc.*, No. 06-13250, 2012 Bankr. LEXIS 5531, at *20 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written" in bankruptcy); *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 193 (Bankr. S.D.N.Y. 2012) (finding that contractual provisions could not be "excised" from insurance policies "because doing so would rewrite the [insurance] [p]olicies and expand the Debtors' rights under them," and "the Court cannot modify those rights pursuant to the Bankruptcy Code").

19. These Plan provisions would create an improper split of certain of the rights and benefits of the Insurance Program from the balance of the Insurance Program, without ever clearly providing for the retention of the Obligations thereunder.

20. It is well-established that debtors (and their successors and assignees) cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect.") (internal citations omitted); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he

accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."); *see also In re American Home Mortgage Holdings, Inc.*, 402 B.R. 87, 98 (Bankr. D. Del. 2009) ("[T]he *cum onere* principle applies equally to the transfer of rights and obligations under a non-executory contract pursuant to § 363 of the Bankruptcy Code as to the assumption and assignment of contracts and leases pursuant to § 365.").

21. Moreover, the Insurance Program is an integrated insurance program and therefore must be read, interpreted and enforced in its entirety. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

22. Therefore, to the extent that the Debtors or their successors and/or assignees (including the Liquidating Trust) seek to retain the benefits of any portion of the Insurance Program, the Insurance Program must continue in its entirety, and the rights and benefits under the

13
DM3\11187587.20

Insurance Program cannot be split from the Obligations thereunder.  The Debtors or any of their successors or assignees, including the Liquidating Trust must also remain liable for all of the Obligations arising under the Insurance Program, regardless of when they arise.

23. The Plan must therefore clarify that nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order or any other document related to the foregoing, including, but not limited to, those provisions identified above, shall modify, alter or impair the Insurance Program, including the rights and obligations of the Chubb Companies and the Debtors thereunder, as well as the coverage provided thereunder.

## **RESERVATION OF RIGHTS**

24. The Chubb Companies specifically reserve all of their rights with respect to the Insurance Program and their rights to assert additional objections to the Plan, to assert any other objections, including, but not limited to, objections to the Plan Supplement, the Liquidating Trust Agreement, and the Confirmation Order and/or any documents related thereto, and/or to join in or rely on the objections of other insurers to the Plan or any documents related thereto and/or any other objections.

WHEREFORE, the Chubb Companies respectfully request that this Court: (a) either (i) deny confirmation of the Plan, or (ii) condition confirmation of the Plan on inclusion of the clarifications requested herein; and (b) grant such other relief as the Court deems appropriate.

Dated: November 10, 2025.

        Respectfully submitted,

        **DUANE MORRIS LLP**

        */s/ Lawrence J. Kotler*
        Lawrence J. Kotler, Esq. (DE 4181)
        1201 North Market Street, Suite 501
        Wilmington, DE 19801
        Phone: (302) 657-4900
        Fax: (303) 657-4901
        Email: LJKotler@duanemorris.com

        -and-

        Wendy M. Simkulak, Esq.
        Jessica Kenney Bonteque, Esq.
        22 Vanderbilt
        335 Madison Avenue, 23rd Floor
        New York, NY 10017-4669
        Telephone: (212) 692-1036
        Fax: (212) 954-5310
        Email: wmsimkulak@duanemorris.com
        Email: JBonteque@duanemorris.com

        *Counsel for the Chubb Companies*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered) |

### CERTIFICATE OF SERVICE

I, Lawrence J. Kotler, certify that I am not less than 18 years of age, and that on the date set forth below, I caused a true and correct copy of the foregoing *Objection of the Chubb Companies to Fourth Amended Joint Chapter 11 Plan of Reorganization of Yellow Corporation and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and Official Committee of Unsecured Creditors (Technical Modifications)* to be filed and served via CM/ECF on all parties requesting electronic notification in this case.

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: November 10, 2025.          */s/ Lawrence J. Kotler*
                                                            Lawrence J. Kotler, Esq. (DE 4181)

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

DM3\11187587.20