**<u>Exhibit A</u>**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FOURTH AMENDED JOINT CHAPTER 11 PLAN OF**
**YELLOW CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT**
**TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS**
**AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (TECHNICAL MODIFICATIONS)**

Dated: November 18, 2025
Wilmington, Delaware

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
tcairns@pszjlaw.com
pkeane@pszjlaw.com
ecorma@pszjlaw.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
david.seligman@kirkland.com

-and-

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in*
*Possession*

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these Chapter 11 Cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

Jennifer R. Hoover (DE No. 5111)
Kevin M. Capuzzi (DE No. 5462)
John C. Gentile (DE No. 6159)
**BENESCH, FRIEDLANDER, COPLAN &**
   **ARONOFF LLP**
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile:  (302) 442-7012
E-mail:   jhoover@beneschlaw.com
        kcapuzzi@beneschlaw.com
        jgentile@beneschlaw.com

Philip C. Dublin (admitted pro hac vice)
Meredith A. Lahaie (admitted pro hac vice)
Kevin Zuzolo (admitted pro hac vice)
**AKIN GUMP STRAUSS HAUER & FELD LLP**

One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email:   pdublin@akingump.com
       mlahaie@akingump.com
       kzuzolo@akingump.com

*Co-Counsel for the Official Committee*
*of Unsecured Creditors of Yellow Corporation,* et al.

4939-1823-9867.1 96859.001

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ........................................................................................................................1

A.    Defined Terms ...............................................................................................................1
B.    Rules of Interpretation ................................................................................................14
C.    Computation of Time ..................................................................................................14
D.    Governing Law ...........................................................................................................14
E.    Reference to Monetary Figures ..................................................................................15
F.    No Substantive Consolidation; Limited Administrative Consolidation .....................15

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS.............................15

A.    General Administrative Claims ..................................................................................15
B.    Professional Fee Claims .............................................................................................16
C.    Priority Tax Claims ....................................................................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................17

A.    Classification of Claims and Interests........................................................................17
B.    Treatment of Claims and Interests .............................................................................18
C.    Special Provision Governing Unimpaired Claims .....................................................22
D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................22
E.    Subordinated Claims ..................................................................................................22
F.    Intercompany Interests ...............................................................................................22
G.    Controversy Concerning Impairment.........................................................................22

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .................................................23

A.    General Settlement of Claims and Interests ...............................................................23
B.    Liquidation Transactions............................................................................................23
C.    Third-Party Sale Transactions....................................................................................23
D.    The Liquidating Trust .................................................................................................23
E.    Sources of Consideration for Plan Distributions .......................................................24
F.    Tax Returns .................................................................................................................24
G.    Dissolution of the Debtors .........................................................................................24
H.    Statutory Committee and Cessation of Fee and Expense Payment ...........................24
I.    Cancellation of Securities and Agreements ...............................................................24
J.    Corporate Action.........................................................................................................25
K.    Effectuating Documents; Further Transactions..........................................................25
L.    Section 1146 Exemption .............................................................................................25
M.    Director and Officer Liability Insurance; Other Insurance .......................................26
N.    Causes of Action .........................................................................................................26
O.    Termination of ADR Procedures and ADR Injunction ..............................................26

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............27

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ...................27
B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.....................27
C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases...................28
D.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases...........28
E.    Insurance Policies .......................................................................................................28
F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ........................30
G.    Reservation of Rights..................................................................................................30
H.    Nonoccurrence of Effective Date................................................................................30

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...................................................30
    A.    Timing and Calculation of Amounts to Be Distributed ............................30
    B.    Disbursing Agent .......................................................................................31
    C.    Rights and Powers of Disbursing Agent ...................................................31
    D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions........31
    E.    Compliance with Tax Requirements ...........................................................32
    F.    Allocations .................................................................................................32
    G.    Accrual of Postpetition Interest on Certain Claims...................................32
    H.    Setoffs and Recoupment ............................................................................33
    I.    No Double Payment of Claims. ..................................................................33
    J.    Claims Paid by Third Parties......................................................................33

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS.........................................................................................................33
    A.    Allowance of Claims..................................................................................33
    B.    Claims Administration Responsibilities.....................................................33
    C.    Estimation of Claims..................................................................................34
    D.    Adjustment to Claims Without Objection ..................................................34
    E.    Time to File Objections to Claims .............................................................34
    F.    Disputed Claims Reserves..........................................................................35
    G.    Disallowance of Claims .............................................................................35
    H.    Amendments to Proofs of Claims ..............................................................35
    I.    Distributions Pending Allowance ..............................................................35
    J.    Distributions After Allowance ...................................................................35

ARTICLE VIII. THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE ....................36
    A.    Liquidating Trust Creation .........................................................................36
    B.    Purpose of the Liquidating Trust................................................................36
    C.    Transfer of Assets to the Liquidating Trust ...............................................36
    D.    Tax Treatment of the Liquidating Trust.....................................................37
    E.    Exculpation, Indemnification, Insurance, and Liability Limitation ...........37
    F.    Termination of the Liquidating Trust.........................................................38
    G.    Securities Exemption ..................................................................................38
    H.    Transfer of Beneficial Interests .................................................................38
    I.    Termination of the Liquidating Trustee .....................................................38

ARTICLE IX. RELEASE, INJUNCTION, EXCULPATION AND RELATED PROVISIONS ..............38
    A.    **Release of Liens** ........................................................................................38
    B.    **Releases by the Debtors** ...........................................................................39
    C.    **Releases by the Releasing Parties** ...........................................................40
    D.    **Exculpation** .............................................................................................40
    E.    **Injunction**................................................................................................41
    F.    Protections Against Discriminatory Treatment..........................................42
    G.    Reimbursement or Contribution.................................................................42
    H.    Term of Injunctions or Stays......................................................................42

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN.............................................................................................................................42
    A.    Conditions Precedent to the Effective Date ...............................................42
    B.    Waiver of Conditions .................................................................................43
    C.    Effect of Failure of Conditions ..................................................................43

4939-1823-9867.1 96859.001

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ......................................43

    A.    Modification and Amendments ...................................................................................43
    B.    Effect of Confirmation on Modifications ..................................................................43
    C.    Revocation or Withdrawal of Plan ...........................................................................44

ARTICLE XII. RETENTION OF JURISDICTION ................................................................................44

ARTICLE XIII. MISCELLANEOUS PROVISIONS .............................................................................46

    A.    Immediate Binding Effect .........................................................................................46
    B.    Additional Documents ..............................................................................................46
    C.    Payment of Statutory Fees .......................................................................................46
    D.    Reservation of Rights ...............................................................................................46
    E.    Successors and Assigns .............................................................................................47
    F.    Notices ......................................................................................................................47
    G.    Entire Agreement ......................................................................................................48
    H.    Exhibits ....................................................................................................................48
    I.    Non-Severability of Plan Provisions ........................................................................49
    J.    Closing of Chapter 11 Cases and Canadian Recognition Proceedings .........................49
    K.    Conflicts ...................................................................................................................49

4939-1823-9867.1 96859.001

**INTRODUCTION**

Yellow Corporation and the above-captioned debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee") jointly propose this Plan for the resolution of the outstanding Claims against, and Interests in, the Debtors. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor. Defined terms used herein shall have the meanings ascribed to them in Article I of this Plan or elsewhere herein.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations and historical financial information as well as a summary and description of this Plan and certain related matters. The Debtors and the Committee are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.     *Defined Terms*

As used in this Plan, capitalized terms have the meanings given to them below.

1.     "*Administrative Claim*" means a Claim against a Debtor arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and monetizing the assets of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) ERISA Administrative Claims; and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.     "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including, without limitation, the Bar Date Order.

3.     "*Administrative Claims Objection Bar Date*" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of title 28 of the United States Code), which shall be the first Business Day that is 120 days following the Effective Date; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and an opportunity for a hearing in the event of any responses to any extension request.

4.     "*ADR Procedures Order*" means the *Order Authorizing the Debtors to Establish Alternative Dispute Resolution Procedures for Resolution of Certain Litigation Claims and Granting Related Relief* [Docket No. 2389].

5.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.     "*Agency Agreement*" means that certain auction agent agreement, together with schedules and exhibits attached thereto, approved by the Agency Agreement Order.

7.     "*Agency Agreement Order*" means the *Order (I) Approving Agency Agreement with Nations Capital, LLC, Ritchie Bros. Auctioneers (America) Inc., Ironplanet, Inc., Ritchie Bros. Auctioneers (Canada) Ltd., and Ironplanet Canada Ltd. Effective as of October 16, 2023; (II) Authorizing the Sale of Rolling Stock Assets Free*

*and Clear of Liens, Claims, Interests and Encumbrances; and (III) Granting Related Relief* [Docket No. 981], entered by the Bankruptcy Court on October 27, 2023.

8.　　　"*Agent*" has the meaning ascribed to such term in the Agency Agreement.

9.　　　"*Allowed*" means with respect to any Claim or Interest, except as otherwise provided herein:  (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the applicable claims objection deadline and that is evidenced by a Proof of Claim or Interest, as applicable, Filed or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; (c) a Claim or Interest that is upheld or otherwise Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith, or (iv) by Final Order (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order).  Except as otherwise specified in the Plan or any Final Order, and except for Secured Tax Claims or any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such setoff, recoupment or reduction is either (1) agreed in amount among the holder of such claim, the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement or (2) otherwise adjudicated by a Final Order.  Any Claim, other than an Allowed Employee PTO/Commission Claim, that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be deemed expunged without further action by the Debtors, the Committee or any other party in interest and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, in no event shall any Intercompany Claim be deemed as Allowed for purposes of distributions hereunder.  Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, following an objection to a claim filed on such grounds.

10.　　　"*Assigned Insurance Rights"* means, collectively, any and all rights, titles, privileges, interests, claims, demands or entitlements of the Debtors or their Estates to any and all proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity arising under, or attributable to, any and all Insurance Policies, now existing or hereafter arising, accrued, or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent subject to the terms of the Insurance Policies and applicable law.

11.　　　"*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors or their Estates pursuant to the Plan, if any, which shall be included in the Plan Supplement and may be amended, modified, or supplemented from time to time in accordance with the terms and consent rights otherwise set forth herein.

12.　　　"*Avoidance Actions*" means any and all actual or potential claims or causes of action to avoid a transfer of property or an obligation incurred by the Debtors, including avoidance, recovery, or subordination actions or remedies that may be brought by or on behalf of the Debtors, their Estates, or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 544, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code, or any similar federal, state or common law causes of action, including fraudulent transfer laws.

13.　　　"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 100–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

14.    "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Delaware.

15.    "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

16.    "***Bar Date Order***" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of an Manner For Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Form and Manner of Notice Thereof* [Docket No. 521] (as the same may be amended, supplemented, or modified from time to time after entry thereof), entered by the Bankruptcy Court on September 13, 2023.

17.    "***Beneficiaries***" means each, in their capacity as such, Holders of Claims and Interests that are entitled to receive Liquidating Trust Interests in accordance with the Plan.

18.    "***Bidding Procedures***" means the procedures governing the sale and marketing process for the Sale Transaction(s) as approved pursuant to the Bidding Procedures Order.

19.    "***Bidding Procedures Order***" means the *Order (I)(A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures; (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 575] (as may be modified, amended, or supplemented), entered by the Bankruptcy Court on September 15, 2023.

20.    "***Business Day***" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

21.    "***Canadian Court***" means the Ontario Superior Court of Justice that has requisite jurisdiction over the Canadian Debtors' bankruptcy proceedings.

22.    "***Canadian Debtors***" means YRC Freight Canada Company, YRC Logistics Inc., USF Holland International Sales Corporation, and 1105481 Ontario Inc.

23.    "***Canadian Employee Priority Claims***" means any claims by Employees entitled to priority under applicable Canadian law or for which Employees may have claims against the directors or officers of the Canadian Debtors.

24.    "***Canadian Plan Recognition Order***" means an order of the Canadian Court in the Canadian Recognition Proceedings recognizing and giving full force and effect in Canada to the Confirmation Order and this Plan.

25.    "***Canadian Recognition Proceedings***" means the proceedings commenced in the Canadian Court under Part IV of the CCAA (bearing Court File No. CV-23-00704038-00CL), among other things, recognizing in Canada the Chapter 11 Cases of the Canadian Debtors as foreign main proceedings.

26.    "***Canadian Taxation Legislation***" means the *Excise Tax Act*, R.S.C., 1985, c. E-15, as amended, and the regulations promulgated thereunder, the *Income tax Act*, R.S.C., 1985, c. 1 (5th Supp.), as amended, and the regulations promulgated thereunder, or any other similar Canadian federal, provincial or territorial tax legislation.

27.    "***Cash***" or "***$***" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

28.    "*Cause of Action*" or "*Causes of Action*" means any actions, Avoidance Actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, proceedings, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, choate or inchoate, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise.  Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

29.    "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

30.    "*Claim*" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

31.    "*Claims and Noticing Agent*" means Epiq Corporate Restructuring, LLC in its capacity as claims and noticing agent for the Debtors and any successor, as approved by the *Order (I) Authorizing and Approving the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent and (II) Granting Related Relief* [Docket No. 170].

32.    "*Claims Bar Date*" means, collectively, the date established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim must have been or must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims for which the Bankruptcy Court entered an order excluding the Holders of such Claims from the requirement of Filing Proofs of Claim.

33.    "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

34.    "*Class*" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

35.    "*Committee*" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on August 16, 2023, as set forth in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 269] and as amended by the *First Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 3430] and the *Second Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 5615].

36.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

37.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

38.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code.

39.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be acceptable to the Debtors and the Committee.

40.    "*Consummation*" means the occurrence of the Effective Date as to the applicable Debtor.

41.    "***Convenience Class Claim***" means (a) any Allowed General Unsecured Claim in an amount less than $7,500 that is not (i) an Administrative Claim, (ii) a Priority Claim, (iii) a Secured Tax Claim or (iv) an Employee PTO/Commission Full Pay GUC Claim and (b) any Allowed General Unsecured Claim where a Holder of such Claim elects on its Ballot to treat its Claim as a Convenience Class Claim, including, if applicable, by reducing its Allowed General Unsecured Claim to $7,500; *provided*, *however*, that no Claims asserted by a current or former employee may be a Convenience Class Claim.

42.    "***Cure Claim***" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors or their Estates pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

43.    "***Cure Notice***" means, with respect to an Executory Contract or Unexpired Lease to be assumed under the Plan, a notice that: (a) sets forth the proposed amount to be paid on account of a Cure Claim in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed under the Plan; (c) sets forth the procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases, including the proposed objection deadline, and for the resolution by the Bankruptcy Court of any such disputes; and (d) states that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance of the Executory Contract(s) to be assigned, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease.

44.    "***D&O Liability Insurance Policies***" means all directors and officers liability insurance policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors, any of their predecessors, and/or any of their current or former subsidiaries for current or former directors', managers', and officers' liability and all agreements, documents, or instruments relating thereto.

45.    "***Debtor Release***" means the releases given on behalf of the Debtors and their Estates as set forth in Article IX.B of the Plan.

46.    "***Definitive Document***" means (a) Plan; (b) the Disclosure Statement; (c) the Confirmation Order; (d) the Liquidating Trust Agreement; (e) the Sale Transaction Documents; (f) the Agency Agreement; (g) the Bidding Procedures and the Bidding Procedures Order; (h) all material pleadings filed by the Debtors and/or the Committee in connection with the Chapter 11 Cases (or related orders), including the first-day pleadings that the Debtors filed with the Bankruptcy Court upon the commencement of the Chapter 11 Cases and all orders sought pursuant thereto; *provided* that monthly or quarterly operating reports, retention applications, fee applications, fee statements, and any declarations in support thereof or related thereto shall not constitute material pleadings; (i)  all materials filed by the Foreign Representative and the Information Officer in connection with the Canadian Recognition Proceedings (or related orders); and (j) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments or other documents reasonably necessary or desirable to consummate and document the transactions contemplated the Plan (including any exhibits, amendments, modifications, or supplements from time to time).

47.    "***Disbursing Agent***" means (a) the Liquidating Trustee or (b) the Entity or Entities selected by the Liquidating Trustee to make or facilitate distributions contemplated under the Plan.

48.    "***Disclosure Statement***" means the *Fourth Amended Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to the *Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices In Connection Therewith; and (IV) Certain Dates In Respect Thereto* [Docket No. 760] (as may be modified, amended, or supplemented by further Final Order), entered by the Bankruptcy Court on September 15, 2025.

49.  "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is subject to an objection or request for estimation Filed by any of the Debtors, the Committee, the Liquidating Trustee or any other party-in-interest in accordance with applicable law and which objection or request has not been withdrawn, resolved, or overruled by a Final Order.

50.  "*Disputed Claims Reserve(s)*" means one or more reserve accounts established by the Liquidating Trustee with respect to Disputed Claims to be funded with Liquidating Trust Interests, Liquidating Trust Assets and/or Distributable Proceeds pursuant to Article VII.F and the Liquidating Trust Agreement.

51.  "*Distributable Proceeds*" means collectively, all of the Debtors' and the Estates' Cash (inclusive of any funds remaining in any reserve accounts including the Professional Fee Escrow Account after Professionals are paid in full on account of their Allowed Professional Fee Claims and reserves for the fees and expenses of the Liquidating Trust) and Cash of the Liquidating Trust, including, but not limited to, the following: (a) all Cash on hand held by the Debtors on the Effective Date; (b) net Cash proceeds generated by the, sale, lease, liquidation or other disposition of Estate property, including Third-Party Sale Transactions; (c) Cash proceeds generated by the use, sale, lease, liquidation or other disposition of any property belonging to the Liquidating Trust; (d) Cash proceeds generated from the Debtors' and the Estates' accounts receivable; and (e) Cash proceeds from the Debtors' and the Estates' Causes of Action; *provided* that Distributable Proceeds shall not include (y) Cash necessary to fund the actual and necessary fees and expenses of the Liquidating Trust as set forth in the Liquidating Trust Agreement or (z) any Cash held in the Utilities Adequate Assurance Account or the Professional Fee Escrow Account, except to the extent, prior to the entry of the final decree, any amounts remain in the Utilities Adequate Assurance Account or the Professional Fee Escrow Account, as applicable.

52.  "*Distribution Date(s)*" means a date(s) on which distributions under the Plan (including distributions by the Liquidating Trust) will occur.

53.  "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims are eligible to receive distributions under the Plan upon the Allowance of such Claims and which date shall be the Effective Date or such other date as is designated in a Final Order.

54.  "*Effective Date*" means, as to the applicable Debtor, the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX of the Plan and (b) no stay of the Confirmation Order is in effect, which date shall be determined jointly by the Debtors and the Committee.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

55.  "*Employee PTO/Commission Claim*" means any Claim arising on account of outstanding obligations owing by the Debtors to the Debtors' current and/or former employees for unpaid vacation or paid time off pay, sick pay, or sales commissions and any Canadian Employee Priority Claims, to the extent such Claim has not already been paid during the Chapter 11 Cases.  For avoidance of doubt, "Employee PTO/Commission Claims" shall not include any other amounts owed or asserted to be owed to current and/or former employees and no current and/or former employee shall be allowed more than one (1) Employee PTO/Commission Claim.  "Employee PTO/Commission Claims" shall not mean and does not include Convenience Class Claims, WARN Claims, or ERISA Claims.

56.  "*Employee PTO/Commission Class 5 GUC Claim*" means any Employee PTO/Commission Claim that is not an Employee PTO/Commission Priority Claim and is in excess of the Employee PTO/Commission Full Pay GUC Cap.  Employee PTO/Commission Class 5 GUC Claims shall not be Convenience Class Claims.

57.  "*Employee PTO/Commission Full Pay GUC Cap*" means $7,500 per Allowed Employee PTO/Commission Claim.

58.  "*Employee PTO/Commission Full Pay GUC Claim*" means any Employee PTO/Commission Claim that is not an Employee PTO/Commission Priority Claim and is less than or equal to the Employee PTO/Commission Full Pay GUC Cap.

59.    "*Employee PTO/Commission Priority Claim*" means any Employee PTO/Commission Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

60.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

61.    "*Equity Liquidating Trust Interests*" means the beneficial interests in the Liquidating Trust that may entitle Holders of Allowed Interests in Yellow Corporation to receive distributions of Cash pursuant to the Liquidating Trust Agreement.  For the avoidance of doubt, Equity Liquidating Trust Interests shall only receive a distribution of Cash on account of such Equity Liquidating Trust Interest if any Distributable Proceeds remain after Holders of Allowed General Unsecured Claims (including Postpetition Interest) have been satisfied in full pursuant to the treatment set forth in Article III.B.6 herein.

62.    "*ERISA Administrative Claims*" shall mean ERISA Claims, if any, arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code as determined by a Final Order or as otherwise agreed to by the applicable claimant, the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement.

63.    "*ERISA Claims*" shall mean Pension Claims and Multiemployer Plan Claims.

64.    "*ERISA General Unsecured Claims*" shall mean ERISA Claims that are not ERISA Administrative Claims, ERISA Priority Claims or Priority Tax Claims.

65.    "*ERISA Priority Claims*" shall mean Multiemployer Plan Claims for missed contributions, if any, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code as determined by a Final Order or as otherwise agreed to by the applicable claimant, the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, which shall be treated as an Other Priority Claim.

66.    "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

67.    "*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such: (a) each of the Debtors and their current and former directors, managers, and officers that served in such capacity between the Petition Date and Effective Date; (b) the Committee and each of its current and former members (including any *ex-officio* member(s)); and (c) the Professionals retained by the Debtors and Committee.

68.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

69.    "*Federal Judgment Rate*" means 5.34%, the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

70.    "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

71.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.  For the avoidance of doubt, to the extent that a petition for certiorari is

not timely filed with respect to an order or judgment that would otherwise constitute a Final Order, such order or judgment shall constitute a Final Order. For the further avoidance of doubt, with respect to any order or judgment that is not a Final Order, absent a stay issued by a court of competent jurisdiction, there shall be no limitation in giving effect to such order or judgment for purposes of implementation of the Plan, implementation of any transaction authorized by the Plan, or distributions under the Plan.

72. "*Financing Documents*" means any and all agreements governing the Debtors' prepetition asset based loan facility, postpetition debtor in possession financing and postpetition use of cash collateral, regardless of whether any obligations thereunder remain outstanding, together with the schedules and exhibits attached thereto, and all security agreements, pledge agreements, related agreements, documents, instruments, and amendments executed and delivered in connection therewith, including any orders of the Bankruptcy Court entered in connection therewith.

73. "*Foreign Representative*" means Yellow Corporation in its capacity as "foreign representative" in respect of the Chapter 11 Cases for the purposes of the Canadian Recognition Proceedings.

74. "*General Unsecured Claim*" means any unsecured Claim, other than (a) an Administrative Claim, (b) a Priority Tax Claim, (c) an Other Priority Claim, (d) an Employee PTO/Commission Full Pay GUC Claim, (e) a Convenience Class Claim, (f) an Intercompany Claim or (g) a Section 510(b) Claim. For the avoidance of doubt, General Unsecured Claims shall include any ERISA General Unsecured Claims, Employee PTO/Commission Class 5 GUC Claims, Withdrawal Liability Claims and WARN General Unsecured Claims, if any.

75. "*Governing Bod*y" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors, as applicable. On or after the Confirmation Date, the Debtors shall obtain the consent of the Committee with respect to any proposed changes to any Governing Body.

76. "*Governmental Bar Date*" means February 5, 2024, at 11:59 p.m. prevailing Eastern Time, which is the date by which Proofs of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the Bar Date Order.

77. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

78. "*GUC Liquidating Trust Interests*" means the beneficial interests in the Liquidating Trust that shall entitle Holders of Allowed General Unsecured Claims to receive distributions of Cash pursuant to the Liquidating Trust Agreement.

79. "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor.

80. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

81. "*Information Officer*" means Alvarez & Marsal Canada Inc. in its capacity as the Canadian Court appointed information officer in the Canadian Recognition Proceedings.

82. "*Insurance Policies*" means collectively, all of the Debtors' insurance policies, including but not limited to any property and casualty policies, punitive damage policies, commercial general liability policies, cyber policies, professional liability policies, D&O Liability Insurance Policies and all agreements, documents or instruments relating thereto, and any of the Debtors' rights under any third parties' insurance policies.

83. "*Insured Claim*" means any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage under the workers' compensation program applicable in the particular state in which the employee is employed by the Debtors) that is insured under any Insurance Policy, but only to the extent of such coverage.

84.    "*Insurer*" means any company or other entity that issued an Insurance Policy, any third-party administrator for an Insurance Policy, and any respective predecessors and/or affiliates of the foregoing solely with respect to an Insurance Policy.

85.    "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate of a Debtor against another Debtor.

86.    "*Intercompany Interest*" means an Interest in a Debtor held by a Debtor or an Affiliate of a Debtor.

87.    "*Interest*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

88.    "*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 519] (as may be modified, amended, or supplemented by further order of the Bankruptcy Court), as entered by the Bankruptcy Court on September 13, 2023.

89.    "*IRS*" means the United States Internal Revenue Service.

90.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

91.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

92.    "*Liquidating Trust*" means the trust that shall be established on the Effective Date in accordance with the terms hereof and any Liquidating Trust Agreement.

93.    "*Liquidating Trust Agreement*" means the agreement to be executed as of the Effective Date, establishing and governing the operation of the Liquidating Trust pursuant to this Plan, which agreement shall be acceptable to the Debtors and the Committee and Filed with the Plan Supplement.

94.    "*Liquidating Trust Assets*" means all assets of the Debtors and the Estates as of the Effective Date and the proceeds thereof, including, but not limited to, the Distributable Proceeds, the Retained Causes of Action, and the Assigned Insurance Rights.

95.    "*Liquidating Trust Board of Managers*" means a board of five (5) voting managers (one (1) of which is the Liquidating Trustee designated by the Committee, in consultation with the Debtors) appointed to govern the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement, comprised of four (4) voting managers to be appointed by the Committee and one (1) voting manager to be appointed by the Debtors.  If Allowed General Unsecured Claims are satisfied in full in Cash (including Postpetition Interest), the Liquidating Trust Board of Managers may be replaced by Holders of Equity Liquidating Trust Interests.

96.    "*Liquidating Trust Interests*" means the Equity Liquidating Trust Interests and the GUC Liquidating Trust Interests.

97.    "*Liquidating Trustee*" means the Entity designated by the Committee, in consultation with the Debtors, as the "Liquidating Trustee," which shall be identified in the Plan Supplement.

98.    "*Liquidation Transactions*" means, collectively, those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions, including any Third-Party Sale Transactions, that the Debtors and the Committee or the Liquidating Trustee, as applicable, reasonably determine to be necessary to implement the Plan.

99.    "*Multiemployer Plan Claim*" means any Claim, except for Withdrawal Liability Claims, relating to any employee benefit plan of the type described in Sections 4001(a)(3) of ERISA or (3)(37) of ERISA relating to multiemployer pension and welfare plans, to which any Debtor makes or is or was previously obligated to make contributions or has any liability.

100.    "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the pendency of the Chapter 11 Cases, other than an Administrative Claim, a Priority Tax Claim, or a Convenience Class Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.  For the avoidance of doubt, Other Priority Claims shall include Employee PTO/Commission Priority Claims, ERISA Priority Claims, and WARN Priority Claims.

101.    "*Other Secured Claim*" means any Secured Claim that is not a Secured Tax Claim.

102.    "*Pension Claim*" means any Claim arising under Title IV of ERISA relating to the Yellow Retirement Pension Plan, originally effective January 1, 2017, as amended and restated from time to time.

103.    "*Person*" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

104.    "*Petition Date*" means August 6, 2023 or August 7, 2023, the applicable date on which the applicable Debtor commenced the Chapter 11 Cases.

105.    "*Plan*" means this *Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors*, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof.

106.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed initially by the Debtors no later than the date that is (a) seven days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan or (b) such later date as may be approved by the Bankruptcy Court, and may be further amended thereafter, including the following to the extent applicable:  (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Schedule of Retained Causes of Action; (c) the identities of the Liquidating Trustee and the Liquidating Trust Board of Managers; (d) the Liquidating Trust Agreement; and (e) any additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.  The Plan Supplement shall be in form and substance acceptable to the Debtors and the Committee; *provided*, *however*, that the identities of the Liquidating Trustee and the Liquidating Trust Board of Managers shall be determined as set forth herein and the Liquidating Trust Agreement shall be acceptable to the Debtors and the Committee.

107.    "*Postpetition Interest*" means interest accruing on Allowed General Unsecured Claims from the Petition Date through and including the date of satisfaction of such Claims in full in Cash, which shall continue to accrue at the rate set forth in any contract governing such claim or, if no such contract exists or such contract is silent on the rate of interest to apply, at the Federal Judgment Rate.

108.    "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

109.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code that is not otherwise a Secured Tax Claim.

110.     "***Pro Rata***" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, unless otherwise indicated.

111.     "***Professional***" means an Entity: (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

112.     "***Professional Fee Claim***" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

113.     "***Professional Fee Escrow Account***" means an interest-bearing account funded by the Debtors or the Liquidating Trust at a third-party bank with Cash on the Effective Date in an amount equal to the Professional Fee Escrow Amount.

114.     "***Professional Fee Escrow Amount***" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors or the Committee as set forth in Article II.B.3 of the Plan.

115.     "***Proof of Claim***" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Administrative Claims Bar Date, or the Governmental Bar Date, as applicable.

116.     "***Purchase Agreement***" means, solely with respect to any Third-Party Sale Transaction, the purchase agreement between the applicable Debtors or Liquidating Trust and any Purchaser party thereto.

117.     "***Purchaser***" means one or more Entities that are the purchasers with respect to any Third-Party Sale Transaction.

118.     "***Quarterly Fees***" means any and all fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable.

119.     "***Related Party***" means, each of, and in each case in its capacity as such, current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.  For the avoidance of doubt, the members of each Governing Body are Related Parties of the Debtors.

120.     "***Released Party***" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Liquidating Trustee, (c) all Holders of Claims; (d) all Holders of Interests; (e) the Committee and its current and former members (including any *ex-officio* member(s)); (f) each Releasing Party; (g) the Information Officer; (h) each current and former Affiliate of each Entity in clause (a) through the following clause (i); and (i) each Related Party of each Entity in clause (a) through clause (i); *provided* that in each case, an Entity shall not be a Released Party if it elects not to opt into the releases described in Article IX of this Plan.

121.     "***Releasing Parties***" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Liquidating Trustee, (c) all Holders of Claims who vote to accept the Plan and who affirmatively opt in to the releases provided by the Plan; (d) all Holders of Claims who vote to reject the Plan and who affirmatively opt in to the releases provided by the Plan; (e) all Holders of Claims who are deemed to reject the Plan and who affirmatively opt in to the releases provided by the Plan; (f) all Holders of Claims who are presumed to accept the Plan and who affirmatively opt in to the releases provided by the Plan; (g) all Holders of Interests who affirmatively opt in to the releases provided

by the Plan; (h) the Committee and its current and former members (including any *ex officio* member(s)); (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable non-bankruptcy law; and (j) each Related Party of each Entity in clause (a) through clause (i) for which such Affiliate or Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law; *provided* that each such Entity that elects not to opt into the releases contained in this Plan, such that it is not a Releasing Party in its capacity as a Holder of a Claim or Interest shall nevertheless be a Releasing Party in each other capacity applicable to such Entity.

122.    "***Retained Causes of Action***" means all Causes of Action of the Debtors or their Estates existing as of the Effective Date which shall vest in the Liquidating Trust on the Effective Date, including (i) any pending lawsuits, legal proceedings, collections proceedings, and claims arising from certain multiemployer pension and welfare plan matters and certain WARN Act matters, (ii) any Avoidance Actions (except for Avoidance Actions against the Debtors' current and former employees), and (iii) any claims or causes of action listed on the Schedule of Retained Causes of Action.

123.    "***Sale Closing Date***" means, with respect to any Third-Party Sale Transaction consummated prior to the Effective Date, the date upon which such Third-Party Sale Transaction was consummated.

124.    "***Sale Proceeds***" means the net Cash and net non-Cash consideration provided by an Entity in connection with any Third-Party Sale Transaction.

125.    "***Schedule of Retained Causes of Action***" means the schedule of certain Causes of Action of the Debtors that are not released or waived pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time with the consent of the Debtors and the Committee.

126.    "***Schedules***" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time.

127.    "***Section 510(b) Claim***" means a Claim subject to subordination under section 510(b) of the Bankruptcy Code, if any; *provided* that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.

128.    "***Secured***" means when referring to a Claim: (a) secured by a Lien on collateral in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

129.    "***Secured Tax Claim***" means any Secured Claim that, absent its secured status would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

130.    "***Securities Act***" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

131.    "***Security***" means a security as defined in section 2(a)(1) of the Securities Act.

132.    "***Subordinated Withdrawal Liability Claims***" means the portion of Withdrawal Liability Claims, if any, that may be reduced and/or subordinated under 29 U.S.C. Section 1405(b)(2) by a maximum of 50% as determined by a Final Order or as otherwise agreed to by the applicable claimant(s), the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement.

133.    "*Subsidiary*" of a Person shall mean a corporation, partnership, joint venture, limited liability company or other business entity of which (i) a majority of the shares of securities or other interests having ordinary voting power for the election of directors or other governing body (other than securities or interests having such power only by reason of the happening of a contingency) are at the time beneficially owned or (ii) the management of which is otherwise controlled, directly or indirectly, through one or more intermediaries, or both, by such Person.

134.    "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

135.    "*Third-Party Release*" means the release given by the Releasing Parties to the Released Parties as set forth in Article IX.B and Article IX.C of the Plan.

136.    "*Third-Party Sale Transactions*" means one or more sales or assignments of the Debtors' assets to one or more third parties.

137.    "*Third-Party Sale Transaction Documents*" means the documents setting forth the definitive terms of the Third-Party Sale Transactions (if any), including any Purchase Agreement.

138.    "*Treasury Regulations*" means the regulations promulgated under the Tax Code by the United States Department of the Treasury.

139.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

140.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

141.    "*Unimpaired*" means, with respect to a Class of Claims, a Class of Claims that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

142.    "*Utilities Adequate Assurance Account*" means the Adequate Assurance Account as defined in the *Final Order (A)(I) Approving the Debtors' Proposed Adequate Assurance of Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (B) Granting Related Relief* [Docket No. 534], entered by the Bankruptcy Court on September 13, 2023.

143.    "*Voting Deadline*" means 4:00 p.m. (prevailing Eastern Time) on October 22, 2025.

144.    "*WARN Act*" means the Worker Adjustment and Retraining Notification Act of 1988, as amended, and any similar state, local, or foreign law, and the rules and regulations promulgated thereunder.

145.    "*WARN Claims*" means any claim arising out of liability or obligations under the WARN Act.

146.    "*WARN General Unsecured Claims*" means WARN Claims, if any, not entitled to priority treatment pursuant to section 507(a) of the Bankruptcy Code, which shall be treated as General Unsecured Claims.

147.    "*WARN Priority Claims*" means WARN Claims entitled to priority in right of payment under section 507(a) of the Bankruptcy Code as determined by a Final Order or as otherwise agreed to by the applicable claimant, the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, which shall be treated as Other Priority Claims.

148.    "*Withdrawal Liability*" shall have the meaning ascribed to it in Title IV of the Employee Retirement Income Security Act of 1974, as amended from time to time.

149.    "*Withdrawal Liability Claim*" means any unsecured Claim asserted against the Debtors on account of Withdrawal Liability without regard to any possible reduction or subordination under 29 U.S.C. Section 1405(b)(2).

B.    *Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors or the Liquidating Trust, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Liquidating Trust, as applicable.

*E.      Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

*F.      No Substantive Consolidation; Limited Administrative Consolidation*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors or their Estates.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

*A.      General Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim, the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim, the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement; or (5) at such time and upon such terms as set forth in a Final Order.

Except with respect to Administrative Claims that are Professional Fee Claims, or subject to section 503(b)(1)(D) of the Bankruptcy Code, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Liquidating Trustee no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  Objections to such requests must be Filed and served on the Liquidating Trustee and the requesting party by the Administrative Claims Objection Bar Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Estates, the Liquidating Trust, or their respective property, and such Administrative Claims shall be deemed released and extinguished as of the Effective Date without the need for any objection from the Debtors, the Committee or the Liquidating Trustee or any notice to or action, order, or approval of the Bankruptcy Court or any other entity.

Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.    *Professional Fee Claims*

    1.    Final Fee Applications for Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders.

Notwithstanding anything to the contrary set forth herein, the Information Officer and its counsel shall in all cases continue to be paid in accordance with the terms of the orders of the Canadian Court.

    2.    Professional Fee Escrow Account and Payment of Professional Fee Claims

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been indefeasibly paid in full to the Professionals pursuant to one or more Final Orders. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Liquidating Trust, as applicable.

The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to each such Professional by the Debtors or the Liquidating Trustee, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Liquidating Trustee's obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders, any remaining funds held in the Professional Fee Escrow Account shall promptly be transferred to the Liquidating Trust and constitute Liquidating Trust Assets without any further notice to or action, order, or approval of the Bankruptcy Court.

    3.    Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors and the Committee, as applicable, before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors, counsel to the Committee and the identified Liquidating Trustee no later than five (5) days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors and the Committee may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors, the Committee and/or the Liquidating Trustee, as applicable, to determine the amount to be funded to the Professional Fee Escrow Account, *provided* that the Liquidating Trustee shall use Cash on hand or from the Liquidating Trust Assets to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4. Post-Confirmation Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Professionals. The Debtors shall pay, within ten (10) Business Days after submission of a detailed invoice to the Debtors, with a copy to the Committee (if prior to the Effective Date) or the Liquidating Trustee (if after the Effective Date), such reasonable claims for compensation or reimbursement of expenses incurred by the Professionals. If the Debtors, the Committee or the Liquidating Trustee, as applicable, dispute the reasonableness of any such invoice, the Debtors, the Committee or the Liquidating Trustee, as applicable, or the affected Professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking compensation for services rendered after such date shall otherwise terminate.

C.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4A | Employee PTO/Commission Full Pay GUC Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4B | Convenience Class Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |

| 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Interests in Yellow Corporation | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below on account of such Holder's Allowed Claim or Allowed Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, that is entitled to receive a distribution under the Plan shall receive such distribution on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest, as applicable, or as soon as reasonably practicable thereafter.

1.    Class 1 – Secured Tax Claims

(a)    *Classification*:  Class 1 consists of all Secured Tax Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Secured Tax Claim, on the first Distribution Date after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of a Secured Tax Claim shall receive, at the option of the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement:

(i)    payment in full in Cash of such Holder's Allowed Secured Tax Claim, or

(ii)    equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Liquidating Trustee to pay the entire amount of such Allowed Secured Tax Claim during such time period.

(c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Secured Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    Class 2 – Other Secured Claims

(a)    *Classification*:  Class 2 consists of all Other Secured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement,  in exchange for such Allowed Other Secured Claim, on the first Distribution Date after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan),

each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement:

(i)      payment in full in Cash of such Holder's Allowed Other Secured Claim;

(ii)     the collateral securing such Holder's Allowed Other Secured Claim; or

(iii)    such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

(c)     *Voting*: Class 2 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.    Class 3 – Other Priority Claims

(a)    *Classification*:  Class 3 consists of all Other Priority Claims.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed Other Priority Claim, on the first Distribution Date after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Other Priority Claim, will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c)    *Voting*: Class 3 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.    Class 4A – Employee PTO/Commission Full Pay GUC Claims

(a)    *Classification*:   Class 4A consists of all Employee PTO/Commission Full Pay GUC Claims.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed Employee PTO/Commission Full Pay GUC Claim agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed Employee PTO/Commission Full Pay GUC Claim, in one or more distributions (in the Liquidating Trustee's reasonable discretion) after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Employee PTO/Commission Full Pay GUC Claim will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c)    *Voting*: Class 4A is Unimpaired under the Plan.  Holders of Employee PTO/Commission Full Pay GUC Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Employee PTO/Commission Full Pay GUC Claims are not entitled to vote to accept or reject the Plan.

5.    <u>Class 4B – Convenience Class Claims</u>

(a)    *Classification*:  Class 4B consists of all Convenience Class Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Convenience Class Claim by amount or election agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed Convenience Class Claim, in one or more distributions (in the Liquidating Trustee's reasonable discretion) after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Convenience Class Claim, will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided* that to the extent that a Holder of an Allowed Convenience Class Claim holds any joint and several liability claims, guaranty claims or other similar claims against more than one but less than all Debtors arising from or relating to the same obligations or liability as such Allowed Convenience Class Claim, such Holder shall only be entitled to a distribution on one Convenience Class Claim in full and final satisfaction of all such Claims.  For the avoidance of doubt, Employee PTO/Commission Class 5 GUC Claims shall not be Convenience Class Claims.

(c)    *Voting*:  Class 4B is Unimpaired under the Plan.  Holders of Convenience Class Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Convenience Class Claims are not entitled to vote to accept or reject the Plan.

6.    <u>Class 5 – General Unsecured Claims</u>

(a)    *Classification*:  Class 5 consists of all General Unsecured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive (i) its Pro Rata share of the GUC Liquidating Trust Interests and as a Beneficiary shall receive, on the applicable Distribution Date, its Pro Rata share of Distributable Proceeds derived from the Liquidating Trust Assets available for distribution on each such Distribution Date as provided under the Plan and Liquidating Trust Agreement, *plus* (ii) if and only to the extent Distributable Proceeds are available after all Allowed General Unsecured Claims are paid in full, in Cash, a Beneficiary shall be entitled to receive Postpetition Interest from the Petition Date through and including the date of satisfaction of such Allowed General Unsecured Claim in full, in Cash; *provided*, a portion of Allowed Withdrawal Liability Claims may be reduced and/or subordinated to all other Allowed General Unsecured Claims in an amount as determined by a Final Order or as otherwise agreed to by the applicable claimant, the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement.[2]  For the avoidance of doubt, the Holders of Allowed General Unsecured Claims shall receive the Postpetition Interest set forth in this Article

---

[2]    The Debtors previously argued that the Withdrawal Liability Claims will be substantially reduced or subordinated, by as much as 50%, under 29 U.S.C. § 1405(b), given that unsecured creditors will not recover in full.  *See Debtors' Second Omnibus (Substantive) Objection to Proofs of Claim for Withdrawal Liability* [Docket No. 1962], *fn.* 65; *Debtors' Seventh Omnibus (Substantive) Objection to Proofs of Claim for Withdrawal Liability* [Docket No. 2595] *fn.* 24.  In the *Memorandum Opinion Setting Forth Preliminary Observations on Remaining Multiemployer Pension Plan Claims Allowance Disputes* [Docket No. 6030], the Court observed that such Withdrawal Liability Claims are subject to 29 U.S.C. § 1405(b).  On July 18, 2025, the Court issued an interlocutory order giving effect to the Preliminary MEPP Opinion [Docket Nos. 6682, 6683].  To the extent that General Unsecured Claims are paid in full, any Subordinated Withdrawal Liability Claims will be paid in full prior to any distribution on account of Interests in Yellow Corporation.

III.B.6 on a *pari pasu* basis with Allowed Subordinated Withdrawal Liability Claims, if any.

(c)　　*Voting*:  Class 5 is Impaired under the Plan.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

7.　　Class 6 – Intercompany Claims

(a)　　*Classification*:  Class 6 consists of all Intercompany Claims.

(b)　　*Treatment*:  Allowed Intercompany Claims, to the extent not assumed pursuant to the terms of the Sale Transaction Documents, shall, at the election of the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, be (a) set off, settled, distributed, contributed, cancelled, or released or (b) otherwise addressed at the option of the Liquidating Trust without any distribution; *provided, however,* that such election shall not adversely affect the treatment provided to Classes 4A, 4B, and 5.

(c)　　*Voting*:  Class 6 is Impaired under the Plan.  Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8.　　Class 7 – Intercompany Interests

(a)　　*Classification:*  Class 7 consists of all Intercompany Interests.

(b)　　*Treatment*:  Allowed Intercompany Interests shall, at the election of the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, be (a) set off, settled, addressed, distributed, contributed, merged, cancelled, or released or (b) otherwise addressed at the option of the Liquidating Trust without any distribution; *provided, however*, that such election shall not adversely affect the treatment provided to Classes 4A, 4B, and 5.

(c)　　*Voting*:  Class 7 is Impaired under the Plan.  Holders of Intercompany Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9.　　Class 8 – Interests in Yellow Corporation

(a)　　*Classification:*  Class 8 consists of all Interests in Yellow Corporation.

(b)　　*Treatment*:  Except to the extent that a Holder of an Allowed Interest in Yellow Corporation agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed Interest in Yellow Corporation, each Holder of an Interest in Yellow Corporation shall receive its Pro Rata share of the Equity Liquidating Trust Interests and as a Beneficiary shall receive, on the applicable Distribution Date, and if and only to the extent Distributable Proceeds are available after all Allowed General Unsecured Claims are paid in full, including Postpetition Interest, its Pro Rata share of Distributable Proceeds derived from the Liquidating Trust Assets available for distribution on each such Distribution Date as provided under the Plan and Liquidating Trust Agreement.

(c)　　*Voting:*  Class 8 is Impaired under the Plan.  Holders of Interests in Yellow Corporation are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the

Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

10.    Class 9 – Section 510(b) Claims

(a)    *Classification:*  Class 9 consists of all Section 510(b) Claims.

(b)    *Treatment*:  Section 510(b) Claims, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Section 510(b) Claims will not receive any distribution on account of such Section 510(b) Claims.

(c)    *Voting:*  Class 9 is Impaired under the Plan.  Holders (if any) of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders (if any) are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors', the Committee's, the Liquidating Trust's, or any other party's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.

D.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by the Class entitled to vote pursuant to Article III.B. herein.  The Debtors and the Committee shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors and the Committee reserve the right to modify the Plan in accordance with Article XI herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.    *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors, and the Committee  reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto or as otherwise contemplated by the Liquidating Trust Agreement.

F.    *Intercompany Interests*

Notwithstanding anything to the contrary in the Plan, distributions on account of Intercompany Interests, if any, are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience.

G.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims, or any Class of Claims, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

# ARTICLE IV.
# MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests*

Subject to Article VI hereof, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be in full and final satisfaction of such Allowed Claims .

B.      *Liquidation Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Liquidating Trustee shall take all actions as may be necessary or appropriate to effectuate the Liquidation Transactions, including, without limitation: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Liquidation Transactions; and (e) all other actions that the Liquidating Trustee determines to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

Nothing herein is intended to, nor shall it be deemed to, preclude the National Labor Relations Board or any court from finding that any purchaser of the Debtors' assets, is subject to a successor collective bargaining obligation under the National Labor Relations Act in accordance with *NLRB v. Burns International Security Services*, 406 U.S. 272 (1972) and applicable law.

C.      *Third-Party Sale Transactions*

On or after the Confirmation Date, the Purchasers and the Debtors, with the consent of the Committee, and on or after the Effective Date, the Purchasers and the Liquidating Trustee shall be authorized to take all actions as may be deemed necessary or appropriate to consummate any Third-Party Sale Transactions pursuant to the terms of the Plan, any Third-Party Sale Transaction Documents, and the Confirmation Order, and any such Third-Party Sale Transactions shall be free and clear of any Liens, Claims, Interests, and encumbrances pursuant to sections 363 and 1123 of the Bankruptcy Code as of the applicable Sale Closing Date. The Confirmation Order shall constitute full and complete authority for the Debtors, the Committee, and Liquidating Trustee to take all other actions that may be necessary, useful or appropriate to consummate the Plan and the Third-Party Sale Transaction(s) without any further judicial or corporate authority, subject to the terms herein and any applicable order approving a Third-Party Sale Transaction. For the avoidance of doubt, the Debtors' leased real estate properties incapable of being assigned or subleased without unconditional landlord consent shall be subject to the Third-Party Sale Transactions effectuated by the Debtors prior to the Effective Date and such leased real estate properties shall not be transferred to the Liquidating Trust on or after the Effective Date; *provided* that the Cash proceeds resulting from the Third-Party Sale Transactions of such leased real estate properties shall be transferred to the Liquidating Trust on the Effective Date. Certain of the Debtors' rolling stock assets and the owned real estate properties not subject to the Third-Party Sale Transactions prior to the Effective Date shall be irrevocably transferred to the Liquidating Trust pursuant to Article VIII.C herein; *provided* that nothing in this Plan or the Confirmation Order shall in any way impair the rights of the Agent under the Agency Agreement or Agency Agreement Order, each of which shall continue in full force and effect on and after the Confirmation Date. No Purchaser or any Affiliates of any Purchaser shall be deemed to be a successor of the Debtors.

D.      *The Liquidating Trust*

On the Effective Date, the Debtors, on their own behalf and on behalf of the Beneficiaries, and the Liquidating Trustee shall execute the Liquidating Trust Agreement and take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement and Article VIII herein. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors and the Estates shall irrevocably transfer and shall be deemed

to have irrevocably transferred to the Liquidating Trust all of their rights, title, and interests in all of the Liquidating Trust Assets and any other assets remaining with the Debtors or in the Estates on the Effective Date, if any, and in accordance with section 1141 of the Bankruptcy Code, the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances or interests, subject to the terms of the Plan and the Liquidating Trust Agreement.

E.      *Sources of Consideration for Plan Distributions*

The Distributable Proceeds shall be used to fund the distributions to Holders of Allowed Claims and, if applicable, Allowed Interests in Yellow Corporation in accordance with the treatment of such Claims and Interests provided in the Plan, including the Claims and Interests underlying the Liquidating Trust Interests, subject to the terms of the Plan and the Liquidating Trust Agreement.

F.      *Tax Returns*

After the Effective Date, the Liquidating Trustee shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

G.      *Dissolution of the Debtors*

On or as soon as reasonably practicable after the Effective Date and after transfer of all Liquidating Trust Assets to the Liquidating Trust, the Debtors shall be disposed of, dissolved, wound down, or liquidated under applicable law without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

H.      *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with (a) applications for compensation and objections thereto and (b) any pending appeals, including any appeals of the Confirmation Order.  The Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with (a) applications for payment of any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court; (b) objections to applications for payment of fees and expenses rendered prior to the Effective Date; and (c) any pending appeals, including any appeals of the Confirmation Order.

I.      *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under any loan document and any other certificate, Security, share, note, bond, indenture, credit agreement, purchase right, option, warrant, or other instrument, agreement or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest shall be cancelled as to the Debtors and their Affiliates, and the Debtors or the Liquidating Trust, as applicable, shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their Affiliates pursuant, relating, or pertaining to any agreements, credit agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, credit agreements, purchase rights, options, warrants, or other instruments, agreements, or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors shall be released and cancelled.  Notwithstanding the foregoing, no executory contract or unexpired lease (i) that has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

J.      *Corporate Action*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable:  (1) the implementation of the Liquidation Transactions; (2) the establishment of the Liquidating Trust and execution of the Liquidating Trust Agreement; (3) the funding of all applicable escrows and accounts; and (4) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law.

From entry of the Confirmation Order, before, on or after the Effective Date (as appropriate), but subject to the occurrence of the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, partners, managers, members, or other owners of any Debtor under the Plan, including (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving any Debtor or organizational structure of any Debtor, shall be deemed to have occurred and shall be in effect before, on or after the Effective Date (as applicable), under applicable non-bankruptcy law, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, partners, managers, members, or other owners of any Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

On the Effective Date, each Governing Body and its members, as applicable, shall: (i) be discharged from all further authority, duties, and responsibilities relating to the applicable Debtor(s); and (ii) be deemed to have resigned their positions with the applicable Debtor(s) without any further action.

The Liquidating Trust shall have the authority and direction to take all actions necessary or appropriate to effectuate the discharge, resignation, and termination of the Governing Body of any Debtor(s) and its members, as applicable, and any officers and directors pursuant to this Article IV.J.

K.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidating Trust or Liquidating Trustee, as applicable, may issue, execute, deliver, file, or record such instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Confirmation Order, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

L.      *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Liquidating Trust or to any other Entity, or from the Liquidating Trust to a Beneficiary) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Liquidating Trust; (2)  any Third-Party Sale Transaction; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection

of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

M.      *Director and Officer Liability Insurance; Other Insurance*

On or before the Effective Date, the Debtors, with the reasonable consent of the Committee, shall maintain tail coverage for existing D&O Liability Insurance Policies for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing D&O Liability Insurance Policies and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing D&O Liability Insurance Policies upon placement.   For the avoidance of doubt, each D&O Liability Insurance Policy shall be assumed under the Plan, in accordance with Article V.A. of the Plan; *provided, however,* nothing herein shall be deemed to change the insureds under any of the D&O Liability Insurance Policies.

On and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies in effect or purchased as of the Effective Date for the full term of such D&O Liability Insurance Policies regardless of whether such officers, directors, agents, and/or employees remain in such positions as of the Effective Date, in each case, to the extent set forth in such D&O Liability Insurance Policies.

For the avoidance of doubt, nothing herein shall in any way impair the Liquidating Trust's ability on and after the Effective Date to assert on behalf of the Debtors or the Estates any Assigned Insurance Rights or Retained Causes of Action, including with respect to the D&O Liability Insurance Policies.  In no event shall the Liquidating Trust have any obligation to indemnify any officer, director, agent or employee of the Debtors, nor shall the Liquidating Trust have any obligation to satisfy or pay any deductible, retention, or other financial obligation under the Insurance Policies.  The Liquidating Trust shall be responsible for monitoring and preserving the ability to maintain claims that are Assigned Insurance Rights against the Insurance Policies.  The Debtors shall provide reasonable cooperation necessary to maximizing the value of the Assigned Insurance Rights.

N.      *Causes of Action*

Retained Causes of Action shall immediately vest with the Liquidating Trust as of the Effective Date, provided that, prior to the Effective Date, the Debtors shall not compromise, settle or release any such Retained Causes of Action without the consent of the Committee.

O.      *Termination of ADR Procedures and ADR Injunction*[3]

On the date that is thirty (30) days after the Effective Date (the "<u>ADR Termination Date</u>"), the ADR Injunction and the ADR Procedures as set forth in the ADR Procedures Order shall terminate and no longer be of any force or effect.  From and after the ADR Termination Date, and notwithstanding any injunction in the Plan, the Holder of a Litigation Claim may seek to prosecute such claim in the appropriate judicial forum (each, a "<u>Civil Action</u>") to final judgment, settlement, or arbitration award, including any appellate and/or confirmation proceedings.  The Holder of a Litigation Claim shall be entitled to recover, collect and enforce any final judgment, settlement or award (if any) against the applicable Insurance Policy solely to the extent of available insurance coverage, if any, and may not enforce such Litigation Claim against the Debtors, the Debtors' Estates or the Liquidating Trust; *provided, however,* the Debtors may be named as a nominal party in a Civil Action solely to the extent necessary to obtain or enforce any final judgment, settlement or award (if any) against the applicable Insurance Policy.

Old Republic Insurance Company ("<u>ORIC</u>") shall (i) pay, if applicable, any fees and expenses associated with the defense of the claims in any Civil Action, and (ii) obtain the prior written consent of the Liquidating Trustee prior to settling any Litigation Claim in excess of $100,000.

---

[3]    Capitalized terms used but not defined in this Article IV.O shall have the meanings ascribed to them in the ADR Procedures Order.

The Holder of a Litigation Claim shall not (a) seek to recover as an administrative claim any costs, fees (including attorneys' fees), expenses, or charges associated with a Civil Action or otherwise entering into and performing under any settlement relating to a Litigation Claim or (b) directly or indirectly seek to compel any of the Debtors, the Debtors' Estates or the Liquidating Trust to pay any deductible, any retainage, or any other amount for or on account of any insurance carrier, provider, broker, or policy.  Any proof of claim filed by the Holder of a Litigation Claim or listed in the Schedules shall be expunged from the Claims Register as paid in full upon ORIC's payment in full of any final judgment, settlement amount, or other payment finally resolving such Litigation Claim, if applicable.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected, shall be deemed automatically rejected, unless such Executory Contract or Unexpired Lease: (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Effective Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a D&O Liability Insurance Policy; (5) is a Third-Party Sale Transaction Document; or (6) is to be assumed by the Debtors and assigned in connection with a Third-Party Sale Transaction and pursuant to the Third-Party Sale Transaction Documents.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' or the Estates' authority under the Third-Party Sale Transaction Documents to assume and assign Executory Contracts and Unexpired Leases pursuant to the Third-Party Sale Transaction Documents.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Liquidating Trustee. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Effective Date, shall revest in and be fully enforceable by the Liquidating Trustee in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

Notwithstanding anything to the contrary in the Plan or the Third-Party Sale Transaction Documents, the Debtors and the Committee reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule in the Plan Supplement.  The Debtors and the Committee shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby.  For the avoidance of doubt, this Article V relates to Executory Contracts or Unexpired Leases other than such agreements previously assumed, assumed and assigned, or rejected.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of service of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Holder of such Claim, the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an assumed Executory Contract or Unexpired Lease, as reflected on the Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Liquidating Trust or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption or assumption and assignment and proposed amounts of Cure Claims to the applicable third parties.  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment or related cure amount must be Filed, served, and <u>actually received</u> by the Debtors and the Committee at least seven days before the Confirmation Hearing.**  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment or cure amount will be deemed to have assented to such assumption or assumption and assignment and cure amount.  Notwithstanding anything herein to the contrary, in the event that any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases Schedule after such 14-day deadline, a Cure Notice of proposed assumption or assumption and assignment and proposed amounts of Cure Claims with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider whether such Executory Contract or Unexpired Lease can be assumed or assumed and assigned.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors and the Committee may agree to remove such Executory Contract or Unexpired Lease from the Assumed Executory Contracts and Unexpired Leases Schedule, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary (solely to the extent agreed between the Debtors and the Committee or the Liquidating Trustee, as applicable, on one hand, and the counterparty to an applicable Executory Contract or Unexpired Lease, on the other hand), including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Liquidating Trust, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Liquidating Trust and Liquidating Trustee expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E.      *Insurance Policies*

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be

preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

(a)  subject to Article IV.M, Article VIII.C, Article V.E(e), and applicable law, on the Effective Date, the rights and obligations of the Insurance Policies (other than the D&O Liability Insurance Policies) shall vest, unaltered and in their entirety with the Liquidating Trust, and all debts, obligations, and liabilities of the Debtors (and, after the Effective Date, of the Liquidating Trust) thereunder, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired, and all such debts, obligations, and liabilities of the Debtors (and, after the Effective Date, of the Liquidating Trust) shall be satisfied by the Liquidating Trust in the ordinary course of business, and the Insurers shall not need to or be required to file or serve any objection to a proposed cure amount or a request, application, Claim, proof or motion for payment or allowance of any Claim or Administrative Claim and shall not be subject to any bar date or similar deadline governing cure amounts, proofs of Claim or Administrative Claims;

(b)  for the avoidance of doubt, subject to the automatic stay under section 362 of the Bankruptcy Code and the injunction under Article IX.E of this Plan, if there is available insurance, any party with rights against or under the applicable Insurance Policy, including, without limitation, the Estates, the Liquidating Trust and Holders of Insured Claims, may pursue such rights, and the Debtors and the Liquidating Trust may, but shall not be required to, move to limit an Insured Claim to the Face Amount of such Insured Claim less the total coverage available with respect to that Insured Claim under the Insurance Policies; provided, however, that doing so in no way obligates an Insurer to pay any portion of the Insured Claim or otherwise alters an Insurer's coverage defenses; provided further, however, that, subject to Article IV.M, Article V.E.(a), and Article V.E.(e), nothing alters or modifies the duty, if any, that Insurers have to pay Insured Claims covered by the Insurance Policies and the Insurers' right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Liquidating Trust); provided finally, however, the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article IX.E of this Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (I) all current and former employees of the Debtors to proceed with any covered workers compensation claims they might have in the appropriate judicial or administrative forum; (II) holders of direct action claims against an Insurer under applicable  law to proceed with their claims; ; (III) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) any valid workers compensation claims, (B) claims where a claimant asserts a direct claim against an Insurer under applicable law, or an order has been entered by this Court granting a claimant relief from the automatic stay to proceed with its Insured Claim, and (C) all costs in relation to each of the foregoing; and  (IV) Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors at any time and to hold the proceeds thereof as security for the obligations of the Debtors and/or apply such proceeds to the obligations of the Debtors in accordance with the applicable Insurance Policies;

(c)  nothing in Article V.E shall constitute a waiver of any Causes of Action the Debtors, their Estates or the Liquidating Trust may hold against any Entity, including any Insurers.  Nothing in Article V.E.(e) is intended to, shall or shall be deemed to preclude any Holder of an Insured Claim from seeking and/or obtaining a recovery from any Insurer; provided, no distributions under the Plan shall be made on account of an Insured Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Insured Claim has exhausted all remedies with respect to such Insurance Policy; provided, however, that the Debtors, their Estates, and the Liquidating Trust do not waive, and expressly reserve their rights to assert that the proceeds of the Insurance Policies are an asset and property of the Estates to which they are entitled to the extent that the Debtors are entitled;

(d)  subject to Article IV.M, Article VIII.C, Article V.E(e), and applicable law, nothing shall modify the scope of, or alter in any other way, the rights and obligations of the Insurers, the Debtors (or, after the Effective Date, the Liquidating Trust), or any other individual or entity, as applicable, under the Insurance Policies (including, but not limited to, any agreement to arbitrate disputes), and all such rights and obligations shall be determined under the Insurance Policies and applicable  law, and the Insurers shall retain any and all legal, equitable, or contractual rights, claims and defenses to liability and/or coverage that they have under the Insurance Policies, including the right to contest and/or litigate with any party, including the Debtors and the

Liquidating Trust, concerning the existence, primacy and/or scope of liability and/or available coverage under any allegedly applicable Insurance Policy; and

(e) any payment, pecuniary, reimbursement or other financial or monetary obligations of the Debtors, their Estates or the Liquidating Trust owing to the Insurers under the Insurance Policies other than the D&O Liability Insurance Policies, including, but not limited to, subrogation rights and reimbursement for payments within a deductible or self-insured retention, shall be satisfied first from existing collateral and/or security, if any, held by the Insurers in the ordinary course and pursuant to the terms of the Insurance Policies, which shall be subject to the Insurer's defense to payment in favor of the Insurer under the Insurance Policy or Policies, if applicable, and to the extent that any such collateral and/or security is insufficient to satisfy any such obligations, the Insurers shall have a claim against the Debtors and their Estates, the type, priority and amount of which is to be determined by the Bankruptcy Court under applicable law and shall have rights to a distribution from, the Debtors, their Estates and the Liquidating Trust, the type, priority and amount of which is to be determined by the Bankruptcy Court under applicable law.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Leases Schedule, or any other exhibit, schedule or annex, nor anything contained in the Plan or Plan Supplement, shall constitute an admission by the Debtors and the Committee or the Liquidating Trust, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Liquidating Trust has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors and the Committee or the Liquidating Trust, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

H.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the

provisions set forth in Article VII hereof and the Liquidating Trust Agreement. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

1.    Initial Distribution Date.

On the Effective Date, or as soon as reasonably practicable thereafter, the Disbursing Agent shall commence distributions under the Plan on account of each Claim that is Allowed (in whole or in part) on or prior to the Effective Date.

2.    Subsequent Distribution Dates.

The Liquidating Trustee shall identify, in its discretion and in accordance with the Liquidating Trust Agreement, Distribution Dates for the purpose of making additional distributions under the Plan. On each such Distribution Date, the Liquidating Trustee shall direct the Disbursing Agent to make distributions in accordance with the Plan and Liquidating Trust Agreement.

B.    *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust.

C.    *Rights and Powers of Disbursing Agent*

1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and the Confirmation Order; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or the Confirmation Order, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof; *provided, however,* that, after the Effective Date, the Liquidating Trustee shall maintain the Claims Register.

2.    Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Liquidating Trust.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Record Date for Distributions.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred twenty (20) or fewer days before the Distribution Record Date, distributions shall be made to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.     Delivery of Distributions

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims (as applicable) at the address for each such Holder as indicated on the Debtors' records as of the Distribution Date; *provided* that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided further* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.     Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $100 in value, and each such Claim to which this limitation applies shall be extinguished pursuant to Article IX and its Holder is forever barred pursuant to Article VII from asserting that Claim against the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust or their respective property.

4.     Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of an Allowed Claim is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date of the initial attempted distribution.  After such date, all unclaimed property or interests in property shall revert to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to or in such property shall be extinguished and forever barred.

E.     *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors or the Liquidating Trust, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors or the Liquidating Trust, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

F.     *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of the Claims, including any Claims for accrued but unpaid interest.

G.     *Accrual of Postpetition Interest on Certain Claims*

Unless otherwise provided in the Plan, to the extent that Postpetition Interest accrues on an Allowed General Unsecured Claim pursuant to Article III.B.6, such Postpetition Interest shall accrue on any unpaid balance of such Allowed Claim from the Petition Date through and including the date of satisfaction of such Allowed Claim in full, in Cash; *provided* that, to the extent that a Disputed Claim becomes an Allowed Claim on which Postpetition Interest accrues pursuant to Article III.B.6, Postpetition Interest shall accrue on such Allowed Claim as if such Allowed Claim had been an Allowed Claim as of the Effective Date.

H.      *Setoffs and Recoupment*

Except as expressly provided in this Plan, the Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code, setoff and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Liquidating Trust may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount as contemplated by the Liquidating Trust Agreement or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee or its successor of any and all claims, rights, and Causes of Action that the Liquidating Trust may possess against the applicable Holder.  Notwithstanding anything to the contrary herein, in no event shall any Holder of a Claim be entitled to setoff any such Claim against the applicable Purchaser following consummation of an applicable Sale Transaction.

I.      *No Double Payment of Claims*.

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims.  No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

J.      *Claims Paid by Third Parties*

The Debtors or the Liquidating Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Liquidating Trust, provided that the Debtors or the Liquidating Trustee, as applicable, shall provide notice of such reduction to the Holder of such Claim.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trust on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor or the Liquidating Trust, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or the Liquidating Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED AND DISPUTED CLAIMS

A.      *Allowance of Claims*

After the Effective Date, the Liquidating Trust and the Liquidating Trustee shall have and retain any and all rights, claims and defenses held by the Debtors and the Estates immediately before the Effective Date with respect to any Claim (except for Claims Allowed as of the Effective Date), Interest, Disputed Claim, Disputed Interest or Retained Causes of Action.  The Liquidating Trustee may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

B.      *Claims Administration Responsibilities*

In accordance with the Liquidating Trust Agreement and except as otherwise specifically provided in this Plan or the Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive authority:

(1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises.

The Debtors, up to the Effective Date, and the Liquidating Trust on and after the Effective Date, shall be responsible and obligated to maintain the Claims Register, to administer and adjust the Claims Register in regard to allowance of Claims. The Debtors or the Liquidating Trust, as applicable, will maintain the retention of the Claims and Noticing Agent.

C.    *Estimation of Claims*

Before, on, or after the Effective Date, as applicable, the Debtors, the Committee or the Liquidating Trustee, to the extent contemplated by the Liquidating Trust Agreement, may (but shall not be required to) at any time request that the Bankruptcy Court estimate the amount of any Claim not Allowed as of the Effective Date pursuant to applicable law, including, without limitation pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register and that is not subject to appeal shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Liquidating Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Any Disputed Claim that is subject to a pending appeal and not subject to a Final Order shall not be subject to estimation by the Bankruptcy Court and shall be reserved for in its full asserted amount as set forth in the applicable Proof of Claim or as otherwise agreed by the Debtors and the Committee or the Liquidating Trustee, to the extent contemplated by the Liquidating Trust Agreement.

D.    *Adjustment to Claims Without Objection*

Any Claim that has been paid or satisfied may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Liquidating Trustee after notice to the Holder of such Claim (or such Holder's known counsel), but without any further notice to or action, order or approval of the Bankruptcy Court; *provided* that the Liquidating Trustee shall file a notice of satisfaction or other pleading evidencing such satisfactions and serve the same on the Holders of such Claims, or seek an order of the Bankruptcy Court with respect to the same, upon notice to the Holders of such Claim.

E.    *Time to File Objections to Claims*

Any objections to Claims shall be Filed by the Liquidating Trustee on or before the later of (1) one-hundred eighty (180) days after the Effective Date and (2) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court, subject to a notice and objection period, for objecting to such Claims; *provided, however,* any party in interest (other than the Liquidating Trustee) may file an objection to a Claim, (a) with respect to Claims filed by the Confirmation Date and which have not already been subject to a Claim objection, in whole or in part, on or before the date that is ninety (90) days after the Confirmation Date and (b) with respect to any new Claim not filed by the Confirmation Date, ninety (90) days after the date of filing of such new Claim; *provided, further,* nothing set forth in this sentence shall alter, modify, or diminish the procedural or substantive rights, claims and defenses of the Debtors, the Committee, the Liquidating Trustee or the Holder of any Claim subject to an objection (including the right of a Holder of a Claim that has already been subject to a Claim objection to argue that any objection is untimely). For the avoidance of doubt, Administrative Claims are subject to the Administrative Claims Objection Bar Date and the period of limitation set forth herein shall not apply to Administrative Claims.

*F.      Disputed Claims Reserves*

The Liquidating Trustee shall establish, for the benefit of each Holder of a Disputed Claim, one or more Disputed Claims Reserves in an amount equal to the distributions that would have been made to the Holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim has been estimated by the Bankruptcy Court pursuant to Bankruptcy Code section 502 as constituting and representing the maximum amount in which such Claim may ultimately become an Allowed Claim; or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Liquidating Trustee.  The Liquidating Trustee may, but shall not be obligated to, physically segregate and maintain separate accounts or subaccounts for the Disputed Claims Reserve.  The Disputed Claims Reserve may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidating Trustee to determine reserves and amounts to be paid to Holders of Allowed Claims.  Amounts held in any Disputed Claims Reserve shall be retained by the Liquidating Trustee for the benefit of Holders of Disputed Claims pending determination of their entitlement thereto under the terms of the Plan.   Notwithstanding anything to the contrary in the foregoing, the Disputed Claims Reserve shall include sufficient Cash for payment of WARN Priority Claims equal to 14 days of back pay and benefits per affected union employee consistent with the *Memorandum Opinion* issued by the Bankruptcy Court on February 26, 2025 [Docket No. 5807] (the "Memorandum Opinion") in an amount agreed upon by the Debtors and the Committee pending the entry of a Final Order with respect to the Claims at issue in the Memorandum Opinion.

*G.      Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code; provided that an objection with notice with an opportunity to be heard in accordance with the Bankruptcy Code and Bankruptcy Rules is filed and served on to the Holder of such Claim (or such Holder's known counsel) and an order of the Bankruptcy Court is entered disallowing such Claim, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Liquidating Trustee, as applicable.

*H.      Amendments to Proofs of Claims*

On or after the Effective Date, any new or amended Claim or Interest Filed may be disallowed in full and expunged pursuant to an order of the Bankruptcy Court upon the filing of an objection and service on such Holder at the address or email address on the Proof of Claim in accordance with the Bankruptcy Code and Bankruptcy Rules.

*I.      Distributions Pending Allowance*

Notwithstanding any other provision of the Plan or the Confirmation Order, if any portion of a Claim is a Disputed Claim, a distribution may be made on account of any portion that is an Allowed Claim in accordance with the Liquidating Trust Agreement.

*J.      Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan, the Confirmation Order and the Liquidating Trust Agreement.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE VIII.
## THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE

A.      *Liquidating Trust Creation*

On the Effective Date, the Liquidating Trust shall be established and become effective for the benefit of the Beneficiaries.  The Liquidating Trust Agreement shall (i) be in form and substance consistent in all respects with this Plan and be acceptable to the Debtors and the Committee and (ii) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidating Trust as a grantor trust and the Beneficiaries as the grantors and owners thereof for federal income tax purposes.  On the Effective Date, the Liquidating Trust Board of Managers will be appointed in accordance with the terms of this Plan and the Liquidating Trust Agreement.  Notwithstanding anything contained in the Plan or the Liquidating Trust Agreement, the Liquidating Trust Board of Managers shall always act consistently with, and not contrary to, the purpose of the Liquidating Trust as set forth in the Plan.

All relevant parties (including the Debtors, the Liquidating Trust, the Liquidating Trustee and the Beneficiaries) will take all actions necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust.  The powers, authority, responsibilities, and duties of the Liquidating Trust and the Liquidating Trustee are set forth in and will be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

B.      *Purpose of the Liquidating Trust*

The Liquidating Trust will be established for the primary purpose of maximizing the value of the Liquidating Trust Assets and making distributions in accordance with the Plan, Confirmation Order, and the Liquidating Trust Agreement, including resolving any Disputed Claims not resolved prior to the Effective Date.  The Liquidating Trust will have no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

C.      *Transfer of Assets to the Liquidating Trust*

The Debtors and the Liquidating Trustee will establish the Liquidating Trust on behalf of the Beneficiaries pursuant to the Liquidating Trust Agreement, with the Beneficiaries to be treated as the grantors and deemed owners of the Liquidating Trust Assets.  The Debtors and the Estates will irrevocably transfer, assign, and deliver to the Liquidating Trust, on behalf of the Beneficiaries, all of their rights, title, and interests in the Liquidating Trust Assets.  The Liquidating Trust will accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Beneficiaries, subject to the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

On the Effective Date, all Liquidating Trust Assets will vest and be deemed to vest in the Liquidating Trust in accordance with section 1141 of the Bankruptcy Code or as otherwise set forth in the Liquidating Trust Agreement; *provided*, *however*, that the Liquidating Trustee may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee determines, in good faith, have no value to the Liquidating Trust.  Any assets the Liquidating Trustee so abandons or otherwise does not accept shall not vest in the Liquidating Trust.  As of the Effective Date, all Liquidating Trust Assets vested in the Liquidating Trust shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.  Upon the transfer by the Debtors of the Liquidating Trust Assets to the Liquidating Trust or abandonment of Liquidating Trust Assets by the Liquidating Trust, the Debtors and their Estates will have no reversionary or further interest in or with respect to any Liquidating Trust Assets or the Liquidating Trust.  For the avoidance doubt, the transfer of the Assigned Insurance Rights contemplated in this section is not an assignment of any Insurance Policy itself.

Notwithstanding anything herein to the contrary, the Liquidating Trust and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

D.    *Tax Treatment of the Liquidating Trust*

It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Section 671 through 677 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust. The Liquidating Trust Assets shall be deemed for U.S. federal income tax purposes to have been distributed by the Debtors or the Liquidating Trustee, as applicable, to the Beneficiaries, and then contributed by the Beneficiaries to the Liquidating Trust in exchange for their respective interests in the Liquidating Trust. All Holders shall use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trust for all federal income tax purposes, which determination shall be made as soon as reasonably practicable following the Effective Date. The Beneficiaries of the Liquidating Trust (or their direct or indirect owners, as required under applicable tax law) will be treated as the grantors of the Liquidating Trust. The Liquidating Trust will be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, local, and non-U.S. tax purposes. Further, the Liquidating Trust is intended to comply with the conditions and the requirements set forth in Rev. Proc. 94-45, 1994-2 C.B. 684.

Allocations of taxable income with respect to the Liquidating Trust shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the Beneficiaries, taking into account all prior and concurrent distributions. Similarly, taxable losses of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets. The tax book value of the assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired, adjusted in either case in accordance with tax accounting principles prescribed by applicable law.

To the extent the Liquidating Trust is determined to incur any tax liability (including any withholding for any reason), it shall be entitled to liquidate the Liquidating Trust Assets to satisfy such tax liability.

The Liquidating Trust will not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement. In addition, the Liquidating Trustee may request an expedited determination of Taxes of the Debtors or of the Liquidating Trust under Bankruptcy Code section 505(b) for all returns filed for, or on behalf of, the Debtors or the Liquidating Trust, as applicable, for all taxable periods through the dissolution of the Liquidating Trust.

With respect to any of the assets of the Liquidating Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust, the Debtors and the Committee intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

E.    *Exculpation, Indemnification, Insurance, and Liability Limitation*

The Liquidating Trustee, the Liquidating Trust Board of Managers (and each manager) and all professionals retained by the Liquidating Trust, the Liquidating Trust Board of Managers and the Liquidating Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Liquidating Trust. The Liquidating Trustee may obtain and maintain, at the expense of the Liquidating Trust, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Liquidating Trust, including customary insurance coverage for the protection of Entities serving as administrators and overseers of the Liquidating Trust on and after the Effective Date, including for

the avoidance of doubt, the Liquidating Trust Board of Managers. The Liquidating Trustee may rely upon written information previously generated by the Debtors.

F.     *Termination of the Liquidating Trust*

The Liquidating Trustee and the Liquidating Trust Board of Managers shall be discharged and the Liquidating Trust shall be terminated, at such time as (1) all of the Liquidating Trust Assets have been liquidated or abandoned, (2) all duties and obligations of the Liquidating Trustee hereunder have been fulfilled, (3) all distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made, and (4) the Chapter 11 Cases of the Debtors have been closed, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Liquidating Trustee within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the liquidation, recovery and distribution of the Liquidating Trust Assets.

G.     *Securities Exemption*

The Liquidating Trust Interests to be distributed to the Beneficiaries pursuant to the Plan shall not constitute "securities" under applicable law. The Liquidating Trust Interests shall not be transferrable (except under limited circumstances set forth in the Liquidating Trust Agreement) and shall not have consent or voting rights or otherwise confer on the Beneficiaries any rights similar to the rights of stockholders of a corporation in respect of actions to be taken by the Liquidating Trustee in connection with the Liquidating Trust (except as otherwise provided in the Liquidating Trust Agreement). To the extent the Liquidating Trust Interests are considered "securities" under applicable law, the issuance of such interests satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act and any state or local law requiring registration. To the extent any "offer or sale" of Liquidating Trust Interests may be deemed to have occurred, such offer or sale is under the Plan and in exchange for Claims against or Interests in one or more of the Debtors, or principally in exchange for such Claims or Interests and partly for cash or property, within the meaning of section 1145(a)(1) of the Bankruptcy Code.

H.     *Transfer of Beneficial Interests*

Notwithstanding anything to the contrary in the Plan, the Liquidating Trust Interests shall not be transferrable except upon death of the interest holder or by operation of law subject to the terms of the Liquidating Trust Agreement.

I.     *Termination of the Liquidating Trustee*

The duties, responsibilities, and powers of the Liquidating Trustee will terminate in accordance with the terms of the Liquidating Trust Agreement.

## ARTICLE IX.
## RELEASE, INJUNCTION, EXCULPATION AND RELATED PROVISIONS

A.     **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or Confirmation Order, immediately following the making of all distributions to be made to an applicable Holder pursuant to the Plan and, in the case of a Secured Claim that is Allowed as of the Effective Date, on the Effective Date (or the applicable Sale Closing Date with respect to assets that are transferred by a Debtor under a Third-Party Sale Transaction), all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert**

automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Liquidating Trustee to evidence the release of such Lien and/or security interest, including the execution, delivery, and Filing or recording of such releases. The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

If any Holder of a Secured Claim that has been satisfied or settled in full pursuant to the Plan or the Confirmation Order, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Committee, or the Liquidating Trustee that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

B.    *Releases by the Debtors*

Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, the Liquidating Trust, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Trust, or the Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, the Liquidating Trust, or other Entity, or that any Holder of any Claim against or Interest in a Debtor, the Liquidating Trust, or other Entity could have asserted on behalf of the Debtors or the Liquidating Trust, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Liquidating Trust (including the Debtors' and the Liquidating Trust's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Liquidating Trust and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Liquidating Trust, intercompany transactions between or among a Debtor, or an affiliate of a Debtor and another Debtor, or the Liquidating Trust, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, the Financing Documents and any other Definitive Document or any Liquidation Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Documents, the Chapter 11 Cases, the Canadian Recognition Proceedings, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any Avoidance Actions (except for Avoidance Actions against the Debtors' current and former employees); (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from

any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (3) any matters retained by the Debtors or the Liquidating Trust, as applicable, pursuant to the Schedule of Retained Causes of Action.

C.      *Releases by the Releasing Parties*

Except as otherwise expressly set forth in this Plan or the Confirmation Order, effective as of the Effective Date, to the fullest extent permitted by applicable law, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Liquidating Trust, or the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors or the Liquidating Trust (including the Debtors' and the Liquidating Trust's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Liquidating Trust and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Liquidating Trust, intercompany transactions, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, the Financing Documents, and any other Definitive Document or any Liquidation Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the Chapter 11 Cases, the Canadian Recognition Proceedings, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any Avoidance Actions (except for Avoidance Actions against the Debtors' current and former employees); (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (3) the rights of any Holder of Allowed Claims or Interests, if applicable, to receive distributions under the Plan.

D.      *Exculpation*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each Exculpated Party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases or the Canadian Recognition Proceedings prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Liquidating Trust Agreement, the Third-Party Sale Transactions, the Plan, the Plan Supplement, any other Definitive Document, or any Liquidation Transaction, or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Third-Party Sale Transactions, any other Definitive Document, the filing of the Chapter 11 Cases, the commencement of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of the Third-Party Sale Transactions, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan, or any other

related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

E.    *Injunction*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors or the Liquidating Trust, as applicable, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order; (c) creating, perfecting or enforcing any encumbrance of any kind; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan. All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims or Causes of Action that (x) have been released in this Plan (the "<u>Released Claims</u>") or (y) that are subject to exculpation (the "<u>Exculpated Claims</u>"), shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iv) asserting any right of subrogation on account of or in connection with or with respect to the Released Claims and Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or (v) or commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Released Claims and Exculpated Claims; *provided*, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases; *provided, however,* the foregoing shall not prevent any party from pursuing a Litigation Claim (as defined in the ADR Procedures Order) in accordance with the terms of the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, by accepting, or being eligible to accept, distributions on account of such Claim or Interest, as applicable, pursuant to the Plan shall be deemed to have consented to the injunction provisions set forth in this Article IX.E.

*F.        Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Liquidating Trust or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Liquidating Trust, or another Entity with whom the Liquidating Trust has been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Effective Date), has commenced or been subject to the Canadian Recognition Proceedings, or has not paid a debt that is addressed under the Plan or otherwise in the Chapter 11 Cases.

*G.        Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

*H.        Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE X.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

*A.        Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.B hereof:

1.    the Plan, the Disclosure Statement, and all other documents contained in any Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto or other documents contained therein, shall be in full force and effect;

2.    the Confirmation Order shall have been duly entered and remain in full force and effect;

3.    solely as it relates to the occurrence of the Effective Date in respect of the Canadian Debtors, the Canadian Plan Recognition Order shall have been granted by the Canadian Court and remain in full force and effect;

4.    all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan shall have been obtained, which shall include, to the extent any Canadian Debtor issues any distributions pursuant to the Plan, such documentation from any applicable governmental entity or agency as the Canadian Debtors may require in order to make such distributions without any liability to the Debtors, the Information Officer, or each of their respective directors, employees, advisors or agents in respect of any Canadian Taxation Legislation;

5. the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

6. the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan;

7. all transactions contemplated herein shall have been implemented, in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors and the Committee; and

8. the Debtors shall have assumed and assigned or rejected all Unexpired Leases related to the Debtors' non-residential real property assets.

B.      *Waiver of Conditions*

The conditions to Consummation set forth in Article X may be waived by agreement between the Debtors and the Committee without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

C.      *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, the Committee, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, the Committee, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Committee, any Holders, or any other Entity in any respect. Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Third-Party Sale Transactions or the revocation of the Debtors' authority under the Third-Party Sale Transaction Documents to consummate such Third-Party Sale Transaction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Except as otherwise specifically provided in the Plan or the Confirmation Order, the Debtors and the Committee reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, if permissible under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors and the Committee expressly reserve their respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to any Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided*, *however*, that the Debtors and the Committee shall not amend or modify the Plan in a manner that materially and adversely affects the treatment of any Class of Claims without resoliciting such Class of Holders of Claims.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof, but before entry of the Confirmation Order, are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

*C.*        *Revocation or Withdrawal of Plan*

The Debtors and the Committee reserve their respective rights to revoke or withdraw the Plan before the Confirmation Date and to File subsequent chapter 11 plans. If the Debtors and/or the Committee revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of any Debtor, the Committee, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by any Debtor, the Committee, any Holder, or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.        allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests not specifically Allowed under the Plan or by a prior Final Order;

2.        decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.        resolve any matters related to (for the avoidance of doubt, notwithstanding whether such treatment arises under the terms of the Plan or the Third-Party Sale Transaction Documents): (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Liquidating Trustee amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.        ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan and the Liquidating Trust Agreement;

5.        adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.        adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Liquidating Trust after the Effective Date, including Retained Causes of Action and objections to Disputed Claims;

7.        adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.        enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

9.       enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.      resolve any cases, controversies, suits or disputes that may arise in connection with the interpretation of the Third-Party Sale Transaction Documents;

11.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, exculpation and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpation and other provisions;

14.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

15.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust, the Liquidating Trust Agreement or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the authority or actions of the Liquidating Trustee or Liquidating Trust Board of Managers;

18.      enter an order or final decree concluding or closing any of the Chapter 11 Cases;

19.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

20.      consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

21.      determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

22.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Liquidating Trust Agreement, or the Third-Party Sale Transaction Documents, including disputes arising under agreements, documents, or instruments executed in connection therewith;

23.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

24.      hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, injunctions, releases granted and settlements approved in connection with and under the Plan, including under Article IX;

25.      enforce all orders previously entered by the Bankruptcy Court; and

26.        hear any other matter over which the Bankruptcy Court has jurisdiction under the Bankruptcy Code.

For greater certainty, notwithstanding the foregoing, the Canadian Court shall retain jurisdiction to address all matters with respect to the Canadian Recognition Proceedings.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article X.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trust, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.     *Additional Documents*

On or before the Effective Date, the Debtors and/or the Committee may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and the Committee or Liquidating Trustee (subject to the terms of the Liquidating Trust Agreement), as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Payment of Statutory Fees*

Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Liquidating Trust, or any entity making disbursements on behalf of any Debtor or the Liquidating Trust, or making disbursements on account of an obligation of any Debtor or the Liquidating Trust (each, a "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Liquidating Trust, on behalf of itself or any entity making disbursements on behalf of the Liquidating Trust, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors, the Liquidating Trust and any Disbursing Entity shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the Chapter 11 Cases, and shall not be treated as providing any release under the Plan.

D.     *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor or the Committee with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or the Committee with respect to the Holders unless and until the Effective Date has occurred.

E.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    *Notices*

To be effective, all notices, requests and demands to or upon the Debtors or the Committee shall be in writing. Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered, addressed to the following:

1.    <u>If to the Debtors, to:</u>

Yellow Corporation
11500 Outlook Street, Suite 400
Overland Park, Kansas 66211.
Attention:        Yellow Legal
Email address:    legal@myyellow.com
with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
Kirkland & Ellis International LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Attention:        Patrick J. Nash Jr., P.C.
                  David Seligman, P.C.
Email address:    patrick.nash@kirkland.com
                  david.seligman@kirkland.com

-and-

Kirkland & Ellis LLP
Kirkland & Ellis International LLP
601 Lexington Avenue
New York, New York 10022
Attention:        Allyson B. Smith
Email address:    allyson.smith@kirkland.com

-and-

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Attention:        Laura Davis Jones
                  Timothy P. Cairns
                  Peter J. Keane
                  Edward Corma
Email address:    ljones@pszjlaw.com
                  tcairns@pszjlaw.com
                  pkeane@pszjlaw.com
                  ecorma@pszjlaw.com

2.    <u>If to the Committee, to:</u>

Akin Gump Strauss Hauer & Feld LLP

One Bryant Park
New York, NY 10036
Attention:          Philip C. Dublin
                    Meredith A. Lahaie
                    Kevin Zuzolo
Email address:      pdublin@akingump.com
                    mlahaie@akingump.com
                    kzuzolo@akingump.com

-and-

Benesch, Friedlander, Coplan, Aronoff LLP
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Attention:          Jennifer R. Hoover
                    Kevin M. Capuzzi
                    John C. Gentile
Email address:      jhoover@beneschlaw.com
                    kcapuzzi@beneschlaw.com
                    jgentile@beneschlaw.com


3.     If to the United States Trustee, to:

Office of the United States Trustee
for the District of Delaware,
844 King Street, Suite 2207
Wilmington, Delaware 19801
Attention:          Jane Leamy
Email address:      Jane.M.Leamy@usdoj.gov

After the Effective Date, the Liquidating Trustee may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests, *provided* that the Notice of the Effective Date discloses that Entities who wish to continue to receive service of filings must file a renewed request for service under Bankruptcy Rule 2002.

G.      *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims and Noticing Agent at https://dm.epiq11.com/YellowCorporation or the Bankruptcy Court's website at https://www.deb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.       *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Committee, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

J.       *Closing of Chapter 11 Cases and Canadian Recognition Proceedings*

The Liquidating Trustee shall, promptly after the full administration of each of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 or by Local Rule 3002-1, including the motion required by Local Rule 3002-1, and any applicable order necessary to close any of the Chapter 11 Cases. Either concurrently with the granting of the Confirmation Order or at such time thereafter as the Canadian Debtors may determine with the consent of the Committee or the Liquidating Trust, the Foreign Representative shall seek an order of the Canadian Court authorizing the termination of the Canadian Recognition Proceedings, the discharge of the Information Officer, and such other relief as the Foreign Representative may determine necessary or appropriate in order to bring the Canadian Recognition Proceedings to a conclusion.

K.       *Conflicts*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

Date:  November 18, 2025
Wilmington, Delaware

Yellow Corporation

/s/  Matthew Doheny
Name:   Matthew Doheny
Title:     Chief Restructuring Officer, Yellow Corporation.


The Official Committee of Unsecured Creditors
of Yellow Corporation, *et al.*

**BENESCH, FRIEDLANDER,**
**    COPLAN & ARONOFF LLP**

/s/  Jennifer R. Hoover
Jennifer R. Hoover (DE No. 5111)
Kevin M. Capuzzi (DE No. 5462)
John C. Gentile (DE No. 6159)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile:  (302) 442-7012
E-mail:      jhoover@beneschlaw.com
                  kcapuzzi@beneschlaw.com
                  jgentile@beneschlaw.com

   -and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Philip C. Dublin (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
Kevin Zuzolo (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email:     pdublin@akingump.com
                mlahaie@akingump.com
                kzuzolo@akingump.com

*Co-Counsel to the Official Committee*
*of Unsecured Creditors of Yellow Corporation, et al.*