## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*,[1] | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |
|  | **Re: Dkt. Nos. 7603 & 7731** |

### MFN PARTNERS, LP'S AND MOBILE STREET HOLDINGS, LLC'S REPLY TO NEW YORK TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND'S RESPONSE TO OBJECTION TO PROOFS OF CLAIM

MFN Partners, LP ("MFN") and Mobile Street Holdings, LLC ("Mobile Street" and together with MFN, "MFN/Mobile Street") by and through their undersigned counsel, hereby submit this Reply to the response (the "Response") [Dkt. No. 7731] filed by New York Teamsters Conference Pension and Retirement Fund (the "NYST Fund") to the claim objection filed by MFN/Mobile Street (the "Claim Objection") [Dkt. No. 7603][2] and joined by the Debtors.[3]

In support of the Claim Objection, MFN/Mobile Street respectfully represents as follows:

### PRELIMINARY STATEMENT

1.     On November 9, 2023, the NYST Fund filed overstated proofs of claim ("POCs") in the amount of $757,215,199, purportedly reflecting the amount of each Debtor's withdrawal liability owed to the NYST Fund (though the POCs just reflected such Debtor's allocable share of

---

[1]  A complete list of each of the debtors in these chapter 11 cases (the "Debtors") may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is:  10990 Roe Avenue, Overland Park, Kansas 66211.

[2]  All terms not otherwise defined herein have the same meanings as defined in the Claim Objection.

[3]  This Reply includes comments provided by the Debtors.

unfunded vested benefits, before the required statutory adjustments, and not withdrawal liability). (POCs 4489-4512). These POCs also included an additional, and unfounded, claim for liquidated damages in the amount of $75,721,519, equal to 10% of NYST Fund's overstated claim for "withdrawal liability." *Id.*

2.      This Court's rulings to date—as a result in large part to the joint efforts of the Debtors and MFN/Mobile Street to ensure that the various multiemployer pension plans' allowed claims for withdrawal liability accurately reflect Debtors' true withdrawal liability—has reduced the NYST Fund's claims by over $600 million.[4] ***First***, this Court reduced the NYST Fund's claim as required by ERISA § 4219(c)(1)(B), 29 U.S.C. § 1399(c)(1)(B), by applying the twenty-year cap on annual payments. (Dkt. No. 4326, pp. 34-38). The NYST Fund calculated the annual payment as $23,470,146.60 (POCs 4489-4512), therefore, the Court's ruling, as required by the plain language of the statute, reduced the NYST Fund's claim to $469,402,932 ($23,470,146.60 x 20).   ***Next***, this Court determined that this claim must be further reduced to reflect the present value of these payments, to be determined using the same interest rate the NYST Fund uses to determine its annual funding requirements (the "Funding Rate"). (Dkt. No. 6030, pp. 42-47; Dkt. No. 6682, p. 3).  On December 31, 2022, the last day of the plan year preceding the plan year of Debtor's withdrawal, the NYST Fund used a funding rate of 7.5%.[5]

---

[4]   MFN/Mobile Street's efforts to limit NYST Fund's claims to the amount of Debtor's actual withdrawal liability owed to the NYST Fund may explain bizarre animosity toward MFN/Mobile Street reflected throughout the Response, raising matters wholly unrelated to the merits.  MFN/Mobile Street is doing the job that a creditors' committee might do – work with a debtor's estate to ensure that inflated claims are disallowed.  That joint work has not only reduced NYST Fund's overstated withdrawal liability claim by hundreds of millions of dollars, but also resulted in billions of dollars of total withdrawal liability claims being disallowed.  The NYST Fund, which sits on the Creditors' Committee and intends to serve as a trustee on the post-confirmation liquidating trust board, could have looked to the Local 705 International Brotherhood of Teamsters 705 Pension Fund POCS (POCs 19789-19811) to see how a multi-employer pension plan calculated withdrawal liability mostly consistent with the statute (subject to subordination under 29 U.S.C. § 1405(b)) as opposed to making a bid to extract more than it is entitled to receive.  MFN/Mobile Street refrains from retaliatory *ad hominem* attacks against the NYST Fund; and limits its Reply to the relevant facts and law.

[5]   The NYST Fund's 2022 Plan Year Form 5500 may be found at https://www.efast.dol.gov/5500Search/, Plan EIN No. 16-6063585. The NYST Fund's 2022 funding interest rate is set forth on Schedule MB, Line 6d.

Discounting twenty annual payments of $23,470,146.60 at a 7.5% discount rate results in a lump sum value of $257,211,172.22.[6]  ***Lastly***, this Court has further held that if a Debtor is ultimately determined to be insolvent, the NYST Fund's claim is to be further reduced by up to 50%, as required by ERISA § 4225(b), and is therefore reduced to $128,605,586, more than $628 million less than the NYST Fund—who sits in a fiduciary capacity in these cases— asserts in its POCs. (Dkt. No. 6030, pp. 47-49; Dkt. No. 6682, p. 3).

## **REPLY ARGUMENT**

### A. The NYST Fund's Claim for Liquidated Damages is Not Made Pursuant to ERISA § 502(g)(2) and Must be Disallowed

3.    Notwithstanding its table pounding to the contrary, neither the plain language of ERISA § 502(g)(2) nor the *The New York State Conference of Teamsters Pension Fund's Policies and Procedures for Contributing Employers* (the "NYST Fund's Policies," POC 4489, pp. 73-90) could be any clearer. The NYST Fund's Policies state, in relevant part, that "*in the event of a default . . .* [t]he Withdrawn Employer will also be assessed the greater of interest or ten percent (10%) liquidated damages, attorney's fees and costs, ***pursuant to*** 29 U.S.C. § 1132(g)(2) [ERISA § 502(g)(2)]." (POC 4489, p. 84 (emphasis added)). And ERISA § 502(g)(2) states that "*[i]n any action* under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 [ERISA § 515] of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . (C) liquidated damages . . . ." 29 U.S.C. 1132(g)(2) (emphasis added).

---

[6]  Notwithstanding its ruling that the multiemployer pension plans had to discount the annual payments using the Funding Rate, this Court has yet to address whether the NYST Fund or other multiemployer pension plans receiving Special Financial Assistance from the PBGC, may discount the twenty years of annual payments at a lower discount rate than their respective funding rates. MFN/Mobile Street calculates the lump sum amount of the NYST Fund's withdrawal liability claim for purposes of this objection using the 7.5% Funding Rate based on the verbatim language from this Court's prior orders requiring the twenty annual payments to be discounted at the funding rate. This calculation may be verified using a present value of annuity calculator, one which may be found at: https://www.calculatorsoup.com/calculators/financial/present-value-annuity-calculator.php.

Therefore, the only reasonable reading of the NYST Fund's Policies is that liquidated damages are *only* available for defaulted withdrawal liability payments when they would be available in accordance with ERISA § 502(g)(2). The NYST Fund may now wish that it did not link its liquidated damages claim to only being available to the extent they are awarded pursuant to an action under ERISA § 502(g)(2); but the NYST Fund's Policies do just that. And as this Court has found that the Debtors are bound by their contractual agreements with various multiemployer pension plans, including the NYST Fund, *see* Dkt. No. 4326, p. 41, so too should this Court bind the NYST Fund to the language of its own governing documents.

4.      In addition, every case cited by the NYST Fund supports MFN/Mobile Street's objection to the NYST Fund's liquidated damages claim. The first sentence in the Seventh Circuit's decision in *Central States, Southeast & Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339 (7th Cir. 1992) states that "[a] Pension Fund, Central States, brought this suit against an employer, Lady Baltimore Foods, for withdrawal liability . . . ." From the start, this case is not about collecting a liquidated damages claim when there is no action to enforce ERISA § 515. Rather, the NYST Fund should have quickly realized that this decision involved a liquidated damages claim that *did* satisfy the statutory requirement that a multiemployer pension plan first file an action under either § 502(g)(2) (for delinquent contribution) or § 4301(a) (for withdrawal liability claims) to enforce ERISA § 515 before being entitled to liquidated damages. *See* 29 U.S.C. §§ 1132(g)(2), 1145, 1431(a).[7]

---

[7]    Under ERISA § 4301(b), 29 U.S.C. § 1451(b), "[i]n any action under [§ 4301(a)] to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of [ERISA Section 515])." Accordingly, an action brought under § 4301(a) to compel an employer to make withdrawal liability payments that have come due is treated as an action to enforce ERISA § 515, the same as an action brought under ERISA § 502(g)(2) to collect delinquent contributions is an action to enforce ERISA § 515. Here, the NYST Fund has not filed any action under ERISA § 4301(a) or under ERISA § 502(g)(2) to compel payment of contributions or withdrawal liability.

5.      At issue, among other things, in *Lady Baltimore* is a quirk under ERISA §§ 4219(c)(2), 4201(a), that requires an employer, once assessed withdrawal liability, to begin paying its withdrawal liability, even if disputed, in accordance with the schedule provided by the multiemployer pension plan. 29 U.S.C. § 1399(c)(2), 1401(a); *see also Lady Baltimore,* 960 F.2d at 1343. This payment requirement exists *even if the assessment is wrong*, and this obligation to make payments is often referred to as "pay now, dispute later" regime. *See Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241, 1245 (3d Cir. 1987). The employer may challenge the assessment, but if the employer fails to make the required withdrawal liability payments while challenging the assessment, the multiemployer pension plan may file suit to enforce ERISA § 515, and collect the unpaid withdrawal liability payments plus interest, attorney's fees and liquidated damages *pursuant to* ERISA § 502(g)(2). *See* 29 U.S.C. §§ 1132(g)(2), 1431(b). The employer may recover its withdrawal liability payments if it ultimately prevails on its challenge, but because the employer forced the plan to bring an action under ERISA § 4301(a) to enforce ERISA § 515, the plan may recover liquidated damages from the employer. *Lady Baltimore Foods*, 960 F.2d at 1347. As the Seventh Circuit explained, liquidated damages are a penalty the employer must pay "for trying to litigate before paying rather than paying upon assessment and litigating to get a refund." *Id*. The Seventh Circuit did not hold, however, that an employer owes liquidated damages even if the multiemployer pension plan never had to file an action to enforce ERISA § 515, and such a holding, if it did exist, would directly conflict with ERISA § 502(g)(2).

6.      Similarly, in *Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors*, 68 F.3d 1502 (2d Cir. 1995), the Second Circuit further buttresses the point that liquidated damages are only available pursuant to ERISA § 502(g)(2) when the multiemployer pension plan brings an action to enforce ERISA § 515. In *Hudson Steel Fabricators & Erectors*, the multiemployer

pension plan did in fact bring an action to enforce ERISA § 515 and collect liquidated damages under ERISA § 502(g)(2). 68 F.3d at 1503-1504. So right there, the NYST Fund should have realized that this case did not support its claim that an action to enforce ERISA § 515 was not a prerequisite to collect liquidated damages under ERISA § 502(g)(2), because *Hudson Steel Fabricators & Erectors* was in fact a case to enforce ERISA § 515. Furthermore, the court's reasoning that liquidated damages are available only *if at the time of filing of the action to enforce ERISA § 515*, unpaid contributions were due, even if they were not due at the time of judgment, should have made it clear to the NYST Fund that filing an enforcement action to collect contributions was a prerequisite to liquidated damages. *Id.* at 1507-1508.

7.      The Fund's reliance on inapposite bankruptcy court decisions, none of which involve withdrawal liability, is equally off-the-mark. In *In Re Star Fire Protection, Inc.,* 426 B.R. 884, 888 (M.D. Fla. 2010), the language in the trust agreement does not link the availability of liquidated damages to those recoverable pursuant to an enforcement action brought under ERISA § 502(g)(2), unlike how the NYST Fund makes its liquidated damages claims for defaulted withdrawal liability payments limited to liquidated damages recoverable in an ERISA § 502(g)(2) enforcement action. Furthermore, and as with all other cases cited by the NYST Fund, the decision in *In re M&S Grading, Inc.*, 2009 WL 2501066, at *3 (Bankr. D. Neb. Aug. 20, 2009) supports MFN/Mobile Street because the award of liquidated damages in that case was based on the multiemployer pension plan's adversarial proceedings to collect post-petition delinquent contributions. In awarding liquidated damages, the court relied on the Ninth Circuit's decision in *Teamsters Industrial Security Fund v. World Sales, Inc. (In re World Sales, Inc.)*, 183 B.R. 872, 874 (B.A.P. 9th Cir. 1995), which awarded attorney's fees and liquidated damages under ERISA § 502(g) also because the multiemployer pension plan in that case had to file an adversarial

proceeding to collect delinquent contributions from an employer that continued operations post-petition. Here, unlike the multiemployer pension plans *In Re M&S Grading, Inc.* and *World Sales, Inc.*, the NYST Fund has filed no such adversarial proceeding to collect anything. And lastly, in *In Re Anything Electric Contractors Company, Inc.*, 2005 WL 6796808, at *6 (Bankr. S.D.N.Y. Jan. 18, 2005), the bankruptcy court awarded a multiemployer pension plan a claim for liquidated damages required under a post-petition collective bargaining agreement for contributions paid after the due date. The liquidated damages provision at issue, unlike NYST Fund's liquidated damages provision, did not make liquidated damages contingent on an ERISA § 502(g)(2) action. *Id*.

8.      It is important to note that an employer's delinquent contributions—the subject of almost every case relied upon by the NYST Fund—are not synonymous with defaulted withdrawal liability payments. *See* ERISA § 4212(b), 29 U.S.C. § 1392(b). Employer contributions are monthly payments required to be made in accordance with a collective bargaining agreement or related agreement. *See* ERISA § 4212(a), 29 U.S.C. § 1392(a).  Generally, these contributions are based on the hours a covered employee works in a month and the relevant contribution rate and are payable by the 15th of the following month, as, for example, was the case in *Star Fire Protection.* 426 B.R. at 888. An employer self-reports the hours for which it owes contributions for in that month by the 15th of the following month and includes payments for those reports. *See Id.* An employer's withdrawal liability payments are a statutory obligation owed after an employer partially or completely withdraws from a multiemployer pension plan, *i.e.*, when its obligation to make contributions under a collective bargaining or related agreement partially or fully ceases, and the amount and schedule of such payments are determined by statute and not a collective bargaining or related agreement. *See* ERISA §§ 4201, 4219; 29 U.S.C. §§ 1381, 1399.

9.      Accordingly, the fact that a multiemployer pension plan's trust agreement or a collective bargaining agreement provides for liquidated damages for delinquent contributions without an ERISA § 502(g)(2) action to enforce ERISA § 515, as was the case in *Star Fire Protection,* 426 B.R. at 888, and *Anything Electric Contractors Company, Inc.*, 2005 WL 6796808, at \*6, says nothing about whether liquidated damages are available for allegedly defaulted withdrawal liability payments without an action under ERISA § 4301(a) to enforce ERISA § 515. This point is especially salient as to the NYST Fund's argument that its participation agreements provide for liquidated damages notwithstanding the requirements of ERISA § 502(g)(2).

10.     The NYST Fund wrongly asserts that even if the NYST Fund's Policies require an action to be filed to enforce ERISA § 515 (seeking an order requiring payment of any due and owing withdrawal liability) before liquidated damages are owed—which the plain language of the NYST Fund Policies does—the Debtors signed the NYST Fund's Participation Agreements (the "Participation Agreements") that entitle the NYST Fund to liquidated damages without filing an action to enforce ERISA § 515. The glaring and dispositive weakness in the NYST Fund's argument is that these Participation Agreements do no such thing.

11.     The Participation Agreements establish the requirements under which an employer may contribute to the NYST Fund, as required by the employer's collective bargaining agreement. Paragraph 1 of the Participation Agreements binds the employer to the relevant plan documents, rules and regulations, including the NYST Fund's Policies; identifies for which employees the employer owes contributions; states the contribution rate for which contributions are to be paid; and establishes the due date for the employer to make the monthly contributions. POC 4489, pp. 35, 39, 44, 49. Paragraph 2 of the Participation Agreements provides that if the employer fails to timely make these required contributions, the employer will be liable to the Fund

8

for damages, including liquidated damages in the amount of 10% of the delinquent contributions. *Id.* And as further provided under Paragraph 2 of the Participation Agreements, an employer's continued failure to comply with the Participation Agreements may result in the NYST Fund terminating the employer's participation in the NYST Fund. *Id.*

12.     In sum, the Participation Agreement governs the relationship between the employer and the NYST Fund while the employer is still a contributing employer to the NYST Fund. It allows the NYST Fund to end that relationship if the employer does not comply with the Participation Agreement; but it does not address at all an employer's liability upon its withdrawal from the NYST Fund. The liquidated damages referenced in the Participation Agreement relate only to delinquent contributions. Withdrawal liability, or liquidated damages for withdrawal liability, is not referenced once in the Participation Agreements.

13.     As explained above, contributions and withdrawal liability payments are different from one another, with contributions being required by a collective bargaining or related agreement while an employer is a participating contributor to the multiemployer pension plan; and withdrawal liability being statutorily required payments an employer owes when it partially or completely ceases to be a participating contributor to the multiemployer pension plan. 29 U.S.C. §§ 1381, 1392, 1399. In fact, ERISA § 4212(b) states that "[p]ayments of withdrawal liability under this part shall not be considered contributions for purposes of [employer withdrawals]." 29 U.S.C. § 1392(b). This distinction is important, because the Participation Agreements say not a word about withdrawal liability payments; they only reference contributions. POC 4489, pp. 35 - 50. MFN/Mobile Street's Objection did not reference the Participation Agreements because they are irrelevant. MFN/Mobile Street objected to the NYST Fund's withdrawal liability liquidated damages claim. And it is the NYST Fund's Policies, not the Participation Agreements,

that address when liquidated damages are owed for defaulted withdrawal-liability payments. And as explained in detail in both MFN/Mobile Street's Objection and above, the NYST Fund's Policies only provide for withdrawal-liability-liquidated damages when a § 502(g)(2) action is brought. Here, the NYST Fund has brought no such action. And there is no other plan document, or other agreement between Debtor and the NYST Fund, that entitles the NYST Fund to any liquidated damages for its withdrawal liability claim without bringing such an action.

14.     Failing in its other arguments, the NYST Fund makes the equally baseless claim that this court's proceedings that have dramatically reduced the artificially bloated claims of the various multiemployer pension plans, including the NYST Fund—which have been reduced in the aggregate, and due in large part to the efforts of MFN/Mobile Street, from over $8 billion to now under $1 billion (*See* Dkt. Nos. 4326, 6030, 6682)—are an action under § 502(g)(2) to enforce ERISA § 515.  They are not.  An action under § 502(g)(2), or more specifically § 4301(a) because it is withdrawal liability, not contributions, that are at issue, is an action to compel payment as required by ERISA § 515. The NYST Fund has filed no such action to compel Debtor to pay any withdrawal liability, or could it, as such an action would violate the automatic stay under 11 U.S.C. § 362. Rather, this Court's proceedings are akin to a withdrawal liability arbitration under ERISA § 4221(a), 29 U.S.C. § 1401(a). ERISA does not provide for liquidated damages to be awarded when an employer challenges withdrawal liability, even if the challenge is unsuccessful, although liquidated damages would be owed if a multiemployer pension plan filed a separate action to collect withdrawal liability that has come due and is owing. *Lady Baltimore Foods*, 960 F.2d at 1347. In this case, liquidated damages would be especially inappropriate given that the Debtors' and MFN/Mobile Street's challenges have resulted in an over $600 million reduction to the NYST Fund's inflated withdrawal liability claim; the Debtors have not failed to make any withdrawal

liability payments that they were required to make, and the NYST Fund has not filed an enforcement action to collect withdrawal liability payments.

15.     With all else failing, the NYST Fund asks this Court to just ignore the plain language of the NYST Fund's Policies and the Participation Agreements, and instead just accept the NYST Fund's representation that it is entitled to liquidated damages. Although it is true that an ERISA plan fiduciary's interpretation of unambiguous plan language is subject to deference, the interpretation must be "reasonably consistent" with the plan's text. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012) (*quoting Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001)). As to ambiguous plan language, an administrator's interpretation is entitled to deference only if not arbitrary and capricious. *Fleisher*, 679 F.3d at 121, *citing McElroy v. SmithKline Beecham Health & Welfare Benefits Tr. Plan*, 340 F.3d 139, 143 (3d Cir. 2003). Whether plan language is "subject to reasonable alternative interpretations," and therefore ambiguous, is a question of law subject to *de novo* review. *Fleisher*, 679 F.3d at 121 (*quoting Taylor v. Cont'l Grp. Change in Control Severance Pay Plan*, 933 F.2d 1227, 1233 (3d Cir. 1991)); *see also Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp.*, 871 F.3d 239 (3d Cir. 2017).

16.     Here, as explained in detail above, the NYST Fund's interpretation of the NYST Fund's Policies and of the Participation Agreements contradict the language of those documents. The NYST Fund's Policies only provide for liquidated damages "***pursuant to*** ERISA § 502(g)(2)." (emphasis added). And ERISA § 502(g)(2) only provides for liquidated damages when the multiemployer pension plan's fiduciary brings an action to "enforce section 1145 [ERISA § 515] . . . ." The NYST Fund's interpretation that the NYST Fund's Policies do not require an action to enforce ERISA § 515 is wholly inconsistent with the unambiguous language of the plan.

"[P]ursuant to ERISA § 502(g)(2)" is not subject to reasonable alternative interpretations. It can only mean that liquidated damages are only available in accordance with ERISA § 502(g)(2). And therefore, liquidated damages are only owed when the NYST Fund has brought an ERISA § 502(g)(2) action.

17.      The NYST Fund's interpretation of the Participation Agreement is no less baseless. As explained above, the Participation Agreement does not even address withdrawal liability, as it merely establishes the requirements of an employer's ongoing contributions to the NYST Fund. The only provision in the Participation Agreement remotely relating to an employer's withdrawal is that the Participation Agreements permit the NYST Fund to terminate an employer's participation in the NYST Fund if it fails to comply with the Participation Agreement; they say nothing about withdrawal liability.  POC 4489, pp. 35, 39, 44, 49. The liquidated damages provision of the Participation Agreement only refers to liquidated damages for an employer's failure to "timely contribute on any of its employees as specified herein." *Id.* As the Participation Agreement only specifies the contribution obligation for participating contributing employers, and does not address withdrawal liability, the only reasonable interpretation is that the liquidated damages referenced in the Participation Agreement only refer to liquidated damages on delinquent contributions owed before an employer withdraws. The NYST Fund's interpretation to the contrary is "arbitrary and capricious."

## B.  The Claim for Liquidated Damages Must be Disallowed Because Debtors Were Not in Default on NYST Fund's Withdrawal Liability Claim

18.      The NYST Fund's Policies only require liquidated damages when an employer is in default. The NYST Fund's arguments notwithstanding, the Debtors have never been in default on their withdrawal liability to the NYST Fund. The NYST Fund first attempts to assert a default occurred because its POCs filed on November 3, 2024, were the NYST Fund's Notice and Demand

for Withdrawal Liability (the "Demand"), and that the Debtors failed to pay the withdrawal liability referenced in the Demand within 60 days. The Fund's faulty argument, however, conflates the Notice and Demand required by ERISA § 4219(b)(1), 29 U.S.C. § 1399(b)(1)—which the NYST Fund's POCs would constitute—with the default notice required by ERISA § 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), which the NYST Fund never sent to the Debtors, nor could it because of the automatic stay under 11 U.S.C. § 362. Under ERISA § 4219(c)(5)(A), a default only occurs if a withdrawn employer does not cure its failure to pay withdrawal liability that has come due, "within 60 days *after the employer receives written notification* from the plan sponsor of such failure." (emphasis added). The NYST Fund's POCs function as the § 4219(b)(1) Notice and Demand for Withdrawal Liability as the POCs do notify Debtor of the alleged amount of the liability. *See* 29 U.S.C. § 1399(b)(1). The POCs do not, however, serve as the § 4219(c)(5)(A) Default Notice because nowhere in the POCs is there a demand for payment of outstanding withdrawal liability within 60 days.

19.     The NYST Fund separately, and incorrectly, argues that the Debtors are in default under ERISA § 4219(c)(5)(B). To make this argument, the NYST Fund misinterprets this Court's prior rulings in these Chapter 11 Cases. Contrary to the NYST Fund's contentions, this Court never held that the Debtors were in default on their withdrawal liability obligations to the NYST Fund, or to any other multiemployer pension plans. In fact, this Court held that as of the petition date, the Debtors were not in default on their withdrawal liability obligations. (Dkt. No. 6030, p. 16). And this Court went on to hold that whether there was a post-petition default was irrelevant. *Id.* at 17. Bankruptcy law already required that the Debtors' obligation to make annual withdrawal liability payments to the NYST Fund had to be converted to a lump sum claim amount, with the only question being whether that amount was the sum of 20 annual payments, or the present lump

sum value of those 20 annual payments. *Id.* Therefore, despite the NYST Fund's mischaracterization of this Court's ruling, there has never been a determination of whether the Debtors were in default under ERISA § 4219(c)(5)(B), and no such determination needs to be made because of the acceleration required by bankruptcy law.

### C. Even if NYST Fund is Entitled to Liquidated Damages, Such Damages are Limited to 10% of NYST Fund's Allowable Withdrawal Liability Claim

20.      The NYST Fund makes the preposterous claim that its liquidated damages should be based on the original amount of its artificially inflated POCs, notwithstanding the fact that this Court has already determined that this claim was overstated by more than $600 million. Presumably the NYST Fund's assertion is due to its misreading of the case law.[8]

21.      Courts have held that liquidated damages are based on amounts owed at the time an ERISA § 502(g)(2) enforcement action is filed, and not when judgment is entered. *Hudson Steel Fabricators & Erectors*, 68 F.3d at 1507-08 (Employer's payment of delinquent contributions after filing of enforcement action, but before judgment, did not relieve employer of obligation to pay liquidated damages based on the amount of delinquent contributions due at the time action was filed). And they have also held that liquidated damages are owed on delinquent withdrawal liability payments, required to be paid under the "pay now, dispute later" regime, even if it is ultimately determined that no withdrawal liability is owed. *Lady Baltimore Foods*, 960 F.2d at 1347 (Multiemployer pension plan allowed to retain liquidated damages calculated on amount of withdrawal liability payments that were owed and were delinquent under "pay now, dispute later" at the time the enforcement action was filed, even though court ultimately determined that no withdrawal liability was owed).

---

[8]  It is stunning that NYST Fund, as a member of the Creditors' Committee owing fiduciary duties to general unsecured creditors, would make this argument that directly harms general unsecured creditors (if the Debtors are insolvent).

22.     But these cases do not hold that liquidated damages may be based on liability amounts that were not delinquent and never owed. The amounts that the NYST Fund sought in the inflated POCs were never owed. Rather, as this Court has held, the amount of the NYST Fund's true withdrawal liability claim is the amount of the Debtors' allocable share of unfunded vested benefits reduced by discounting the twenty years of annual payments calculated under ERISA § 4219(b)(1)(C), 29 U.S.C. § 1399(c)(1)(C), by the interest rate that the NYST Fund uses to determine its minimum funding requirements; and then reducing that amount by 50% as required by ERISA § 4225(b), 29 U.S.C. § 1405(b) (if it is ultimately determined that the Debtors are insolvent as defined under ERISA § 4225(d), 29 U.S.C. § 1405(d)). MFN/Mobile Street estimates this amount to be between $120 million and $160 million, depending on the rate at which NYST Fund's twenty years of annual payments are discounted.

23.     The validity of NYST Fund's position that any liquidated damages must be based on whatever the NYST Fund asserted in its original claim for withdrawal liability is belied by the fact that if correct a multiemployer pension plan could simply make up a number and assert that it is owed as withdrawal liability, and then claim employer owes 10% of that amount as liquidated damages.[9] Nothing would stop a multiemployer pension plan from assessing $10 billion in withdrawal liability against an employer that only owes $100 million, defaulting that employer because it is unable to pay $10 billion of withdrawal liability, and then claiming liquidated damages of $1 billion. Under the NYST Fund's "logic," even if that employer succeeds in reducing the $10 billion claim down to a $100 million claim, it still owes $1 billion in liquidated damages. This example is an obvious exaggeration, but it is close to the facts presented here. In total, the

---

[9]   It also raises the specter of a creditor knowingly filing a proof of claim that is invalid, in violation of 18 U.S.C. § 157.  Even if NYST Fund had a good faith basis for initially filing a proof of claim asserting $757 million withdrawal liability claim and a $75.7 million liquidated damages claim, there is no good faith basis to assert liquidated damages greater than 10% of what is the known withdrawal liability claim.

multiemployer pension plans asserted withdrawal liability claims that exceeded $8 billion, but it turns out the real amount of these claims is less than $1 billion (after 50% subordination). If every multiemployer pension plan with a claim against the Debtors took the same position as the NYST Fund, there would be liquidated damages claims of more than $800 million in this case.

24.     The NYST Fund Policies provide that liquidated damages—if they are owed, which here they are not—are limited to 10% of the employer's defaulted withdrawal liability payments. At most, the delinquent withdrawal liability payments is the full amount of the Debtors' withdrawal liability owed to the NYST Fund. And as explained above, that amount is the amount of the Debtors' allocable unfunded vested benefits determined under ERISA § 4211, 29 U.S.C. § 1391, reduced by ERISA § 4219(b)(1)(C), 29 U.S.C. § 1399(c)(1)(C), discounted to present value; and then reduced by 50% to extent required by ERISA § 4225(b), 29 U.S.C. § 1405(b) if the Debtors are insolvent. The amount of the Debtors' allocable unfunded vested benefits that the NYST Fund's assert as its withdrawal liability claim in its POCs is not the Debtors' withdrawal liability; and any liquidated damages owed (and none should be) are not equal to 10% of this number. Rather, to the extent liquidated damages are owed they are only owed in an amount equal to 10% of NYST Fund's actual withdrawal liability claim.

**D.  The Claim Objection is Timely and NYST Fund's Position is Inconsistent with the Fourth Plan That it Voted in Favor of and Will Be Serving as a Fiduciary Under**

25.     The Response spends a surprising number of pages devoted to arguing that the Claim Objection is untimely, mostly aimed at MFN/Mobile Street even though it is actually an attack on the Debtors and the Committee for allegedly failing to timely object to the Liquidated Damages Claim when the Debtors objected to the Withdrawal Liability Claim.

26.     MFN/Mobile Street expects the Debtors will write separately to demonstrate that the NYST Fund's timely argument is wholly meritless.   But MFN/Mobile Street notes the following, all of which the NYST Fund ignores.

27.     *One*, there is no statutory deadline in these Chapter 11 Cases to object to a proof of claim.[10]  Thus, *anyone* could still object today if they wanted to.

28.     *Two*, when the Debtors did object to the Withdrawal Liability Claim, they expressly made clear that it was without prejudice to the right to further object on any grounds.  *See* Second Omnibus Objection, p. 22, fn. 55.  The Second Omnibus Objection by its face only addressed "Withdrawal Liability Claims" and the Liquidated Damages Claim, while included in the same proof of claim, is not a Withdrawal Liability Claim.  *See* Second Omnibus Objection, p.1, Title. The NYST Fund did *not* argue in its own responses to the Withdrawal Liability Claim that the Debtors (or any other party in interest) were barred from raising further objections.[11] This makes sense because, among other things, even if the NYST Fund had any allowed Liquidated Damages Claim, it is at most 10% of the ultimately allowed amount of the Withdrawal Liability Claim.

29.     No doubt the Debtors firmly believed that they had not somehow forfeited a right to object.[12]  It would be exceedingly problematic to charge the Debtors (and the Committee) with forfeiting the right to object to a $77 million claim on this record.

30.     *Three*, NYST Fund cannot remotely claim prejudice.  It has known that this was an open issue between it and the estates for months prior to the filing of the Claim Objection. Moreover, the order confirming the Fourth Plan expressly establishes a claim objection deadline

---

[10]    Or seek to equitably subordinate any allowed claim of the NYST Fund under 11 U.S.C. § 510(c).

[11]    They only raised it in connection with responding to MFN/Mobile Street's objections to the adequacy of the Disclosure Statement.  *See* Claim Objection at n.2

[12]    Indeed, on June 10, 2025, MFN/Mobile Street asked the Debtors to confirm that this was their understanding and the Debtors confirmed in writing.

of February 16, 2026, and gives the Liquidating Trustee exclusive authority to object and parties in interest standing to seek derivative standing.  (Dkt. No. 8229, p. 48).  This means the NYST Fund's Liquidation Damages Claim can still be objected to under any circumstances.  Indeed, this alone distinguishes the *In re Hyman Companies* case cited by the NYST Fund, which dealt with an objection filed after the deadline for objecting to claims in the debtors' plan.  *See In re Hyman Companies*, 497 B.R. 465, 481 (Bankr. E.D. Pa. 2013).

31.     The NYST Fund not only voted in favor of the Fourth Plan with these mechanics but has apparently agreed to serve as a Board Trust member, meaning it owes fiduciary duties to all beneficiaries (including MFN/Mobile Street).  It goes to the heart of the concerns MFN/Mobile Street has had since the start of these cases that fiduciaries like the NYST Fund are abusing their positions of power to extract benefits for themselves.

32.     The NYST Fund asserts that "[t]he only reason this Court has not yet entered a final order on the Second Omnibus Objection is because MFN and the Debtors have engaged in numerous tactics that have resulted in unnecessary delays . . . ."  *See* Response at ¶ 65.  However, this Court has expressly noted that the reason a final order has not been entered is because "the claims still need to be allowed in specified amounts."  *See* Letter Explaining the Court's Revisions to the Proposed Order [Dkt. No. 6683].

33.     The cases the NYST Fund cites are easily distinguishable.  The NYST Fund relies on *In re Nazu, Inc.* and *In re Catron* for the proposition that a debtor could not raise additional arguments not raised in its objection in a brief filed in support one day before the hearing.  However, those cases are distinguishable for several reasons.

34.     First, the court in *Nazu* refused to consider arguments raised in a brief in support of an objection on the day of a hearing, and stated that such arguments were waived.  350 B.R. at 311.

The court there said nothing about whether subsequent claim objections could be filed, where a claimant would then have adequate opportunity to respond.  That is what happened here.  While a court may bar a claim objector from asserting additional arguments on the day of a hearing in an ancillary filing, which argument was not contained within the operative pleading, that has no application in our circumstance, where a claim objection was properly lodged in full compliance with all orders of the Court, all established time limitations and bar dates, and the Bankruptcy Code.

35.     Second, *Nazu* addressed a very different type of claim and objection.  In that case, the Court reviewed a claim based on a default judgment, not a claim asserting multiple bases for liability, such as NYST Funds.  Unlike the court in *Nazu* that was able to resolve all issues related to the creditor's claim in one hearing, this Court has conducted multiple summary judgment hearings on the various issues asserted by NYST Fund.

36.     Third, unlike the objections in *Catron* and *Nazu* which could have included all bases for objection, here the Second Omnibus Objection was focused on withdrawal liability claims and the subsequent rounds of summary judgment briefing focused on issues related to withdrawal liability claims.  The liquidated damages claim asserted by NYST Fund is not a withdrawal liability claim.  That NYST Fund lumped multiple claims into a single proof of claim should not entitle them to a "gotcha" argument that objections to its non-withdrawal liability claims are now waived.

37.     Fourth, *In re Catron* does not support the NYST Fund's argument either, as already explained in the Claim Objection.  The NYST Fund's counterargument in the Response is unavailing.  The NYST Fund states that "to the extent MFN implies that the only reason new objections were not allowed in *In re Catron* is because they were not meritorious, that is not

accurate.  It was only after the court concluded that because '[t]he motion is not timely' the additional objections would not be 'permit[ted],' that it then also noted, in the alternative, that the 'additional grounds for objection' do not 'constitute legal and valid grounds for objecting to the claim of the Internal Revenue Service.'"    Response at 23–24 (internal citations omitted).  MFN/Mobile Street never implied that this was the only reason for not allowing new objections.  On the contrary, the Claim Objection explicitly says that *In re Catron* addressed a "debtor's motion to amend its objections to claims."  The above excerpt of the Response correctly admits that the basis for the *Catron* court's holding was that the motion to amend was "not timely because the court already had ruled on the objection which Debtor seeks to amend."  198 B.R. at 909.  That is simply not the case here.  There is no motion to amend here, and there is no argument to say that the Claim Objection is untimely because, unlike in *Catron*, there is no final order that has been entered regarding the other objections to the NYST Fund's claims, namely the Second Omnibus Objection.  Moreover, in contrast to *Catron*, as explained above, the NYST Fund was on notice that the Debtors may object to its claims on additional grounds, and suffer no prejudice as a result of the timing of this Claim Objection.  No deadline was ever established for claims objections in these cases, and it is explicitly contemplated that additional objections may still be filed.  As described above, there were valid reasons for staggering the claim objections to withdrawal liability claims in the manner they were, and as such, this case is entirely unlike *In re Catron*.

38.    Notably, the NYST Fund does not identify any actual undue prejudice it will suffer; it merely cites to cases in which potential prejudice was one basis for a court's holding.  Confusingly, some of these cases have nothing to do with claim objections at all, and it strains credulity to understand how they serve to advance the NYST Fund's arguments.  MFN/Mobile Street does not deny the fact that delay in *some* circumstance in *some* fora in *some* factual settings

could prejudice *some* party, and that such prejudice *could* serve as a legal basis to deny *some* request, but that has no bearing on the case at bar. As explained, the Claim Objection was filed in accordance with all relevant criteria and should be resolved on its merits. The NYST Fund was on notice that this objection may be filed, and there is no rational prejudice identified by the NYST Fund that should preclude litigating the Claim Objection.

39.    By way of example, *Uniformed Pro. Fire Fighters Ass'n of Connecticut v. 3M Co.*, 2024 WL 4471356 (D. Conn. Oct. 10, 2024) involved a motion for a stay of litigation pending a motion to transfer such litigation to a multidistrict litigation involving arguably similar issues. In denying the motion, the court found that *one* of five factors, the interest of a plaintiff in expeditious process versus prejudice suffered by the plaintiff as a result of granting the requested stay, weighed in favor of plaintiff because, among *three* identified sources of potential prejudice, the plaintiff may have been subjected to numerous delays in discovery that could cumulatively have been prejudicial. *Id.* at *2. The NYST Fund does not even attempt to draw a parallel between that case and ours, and MFN/Mobile Street can discern none. Again, MFN/Mobile Street has never argued that undue delay can never serve to prejudice any party. Moreover, the court did not even deny the stay only on the basis of this delay being prejudicial. Instead, the court found that prejudice to the plaintiffs weighted in favor of denial, potential prejudice to the defendants weighed in favor of granting the stay, factors three and four were neutral, but the fifth factor, "the public interest" weighed heavily in favor of denying the stay "given the nature of the function the plaintiffs [in-state firefighters] perform." *Id.* at *3.

40.    The NYST Fund further cites to *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994)'s explication of the principals underlying equitable tolling. Response at 23. Again, the NYST Fund's argument is difficult to parse. As acknowledged by the court in

*Oshiver*, equitable tolling rests upon "the equitable principle that, having unfairly lulled the plaintiff into inaction, the defendant may not profit by such wrongful conduct through invocation of the statute of limitations defense." *Id.* at 1389 (citing *LaVallee Northside Civic Ass'n v. Coastal Zone Management*, 866 F.2d 616, 625 (3d Cir.1989)). Here, there is simply no analogy to draw. Nobody "lulled" the NYST Fund into inaction, and the NYST Fund is not being deprived of any right it may have otherwise had; the NYST Fund has and had the full and fair opportunity to respond to the Claim Objection, with no defense allegedly barred due to the passage of time. If anything, the NYST Fund is seeking to deprive parties of the rights they thought they had explicitly preserved, when it could have raised its objection to the reservation of rights in the Second Omnibus Objection at the time it was filed or any other relevant time thereafter. However, as has been evident throughout these cases, the parties proceeded in the order that made sense and was agreed upon by all relevant entities in an effort to move things along as efficiently as possible.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, MFN/Mobile Street respectfully request entry of an order disallowing and expunging the NYST Fund's Liquidated Damages Claim and for such other and further relief as the Court deems appropriate.

*[Remainder of Page Intentionally Left Blank]*

Dated: November 24, 2025
      Wilmington, Delaware

Respectfully Submitted,

*/s/ L. Katherine Good*

L. Katherine Good (No. 5101)
Maria Kotsiras (No. 6840)
Andrew C. Ehrmann (No. 7395)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: kgood@potteranderson.com
      mkotsiras@potteranderson.com
      aehrmann@potteranderson.com

– and –

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Eric Winston (*pro hac vice* admitted)
Benjamin Roth (*pro hac vice* admitted)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
Email:  ericwinston@quinnemanuel.com
      benroth@quinnemanuel.com

– and –

**LITTLER MENDELSON, P.C.**
Eric Field (*pro hac vice* admitted)
815 Connecticut Ave., NW Suite 400
Washington, D.C. 20006
Telphone: (202) 772-2539

*Counsel for MFN Partners, LP and Mobile Street
Holdings, LLC*