**<u>Exhibit B</u>**

**Reply**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>YELLOW CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11069 (CTG)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 8285, 8374 & 8375** |

**REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS IN SUPPORT OF THE SUPPLEMENTAL APPLICATION**
**TO RETAIN AND EMPLOY MILLER BUCKFIRE ON ADDITIONAL TERMS**
**AS INVESTMENT BANKER, *NUNC PRO TUNC* TO AUGUST 21, 2023**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases (the "**Chapter 11 Cases**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), by and through its undersigned counsel, hereby files this reply (this "**Reply**") in support of the *Supplemental Application of the Official Committee of Unsecured Creditors of Yellow Corporation, et al., to Retain and Employ Miller Buckfire on Additional Terms as Investment Banker, Nunc Pro Tunc to August 21, 2023* [Docket No. 8285] (the "**Supplemental Application**") and in response to *The United States Trustee's Objection to the Supplemental Application* [Docket No. 8374] (the "**UST Objection**") filed by the United States Trustee (the "**UST**") and the *Joinder to Objection of the United States Trustee to the Supplemental Application* [Docket No. 8375] (the "**Joinder**" and, together with the UST Objection, the "**Objections**") filed by MFN Partners, LP ("**MFN Partners**") and Mobile Street Holdings, LLC

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is:  11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

("**Mobile Street**" and, together with MFN Partners, "**MFN**").   In support of this Reply, the Committee respectfully states as follows:

**REPLY[2]**

1.      The Objections should be overruled because they fail to take into account the unique circumstances of these Chapter 11 Cases.  The parties are generally in agreement that when a court has fixed the terms and conditions of employment for an application to employ that was approved pursuant to Bankruptcy Code section 328, the court may allow compensation on different terms or conditions if the court's initial approval "prove[s] to have been improvident in light of developments not capable of being anticipated at the time of approval."  *In re Fed. Mogul-Glob., Inc.*, 348 F.3d 390, 397 (3d Cir. 2003) (citing 11 U.S.C. § 328(a)).  However, the parties disagree as to whether the extraordinary trajectory of these cases justifies the relief sought by the Supplemental Application.  While it is true that Bankruptcy Code section 328 imposes a high standard for modification of a previously approved fee arrangement, the Committee maintains that such standard has been satisfied here, and that Miller Buckfire should be entitled to the incremental compensation contemplated by the New Fee Structure.

2.      As set forth in the Supplemental Application, Miller Buckfire, and indeed all of the advisors involved in these Chapter 11 Cases, anticipated in the summer of 2023 that the sale processes conducted in these cases would play out over a much shorter period of time.  Miller Buckfire's well-founded belief is supported by the fact that the Debtors initially filed bidding procedures together with their Bidding Procedures Motion [Docket No. 22] contemplating that an auction in respect of all or substantially all of the Debtors' assets would be held on October 18, 2023 (approximately two months after the cases were commenced).  At that point, and based on

---

[2] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Supplemental Application.

2

all information available at the time Miller Buckfire's retention terms were negotiated, the Committee and Miller Buckfire anticipated that Miller Buckfire's services would be largely completed by the end of 2023.[3]  However, the docket of these cases reflects the fact that widespread changes and extensions were ultimately made to the various sales processes that were critical given the complexity and scale of the Debtors' Rolling Stock and Real Estate assets and the evolving market environments for such assets—changes that in many instances were recommended and supported by Miller Buckfire.  As described in the Supplemental Application, such changes and extensions were "developments not capable of being anticipated" at the time of Miller Buckfire's original retention pursuant to Bankruptcy Code section 328, but such changes and extensions were indisputably in the best interests of the estates and expressly designed to maximize the value of the Debtors' asset portfolio for the benefit of all stakeholders.

3.     The unexpected complexities of the sale processes and the appropriateness of the relief sought by the Supplemental Application under section 328 are highlighted by the facts surrounding the retention of the Debtors' advisors.  When the Debtors commenced the Chapter 11 Cases, they sought, pursuant to section 328(a), to retain the services of a single investment banker, Ducera, who was employed by the Debtors to, among other things, sell and monetize the Debtors' assets (including the Debtors' Real Estate and Rolling Stock).  It subsequently became apparent that the Debtors' sale process would need to be conducted in a manner different than that originally planned, again in order to maximize value.  First, the Debtors determined to retain Ritchie Brothers to liquidate the Rolling Stock.  Notwithstanding that Ducera had signed an engagement letter with the Debtors that would entitle it to earn fees from the sale of Rolling Stock, the parties recognized that it was necessary to modify the terms of Ducera's retention and exclude fees related to the sale

---

[3] This belief is further evidenced by the terms of the Engagement Letter, which provided for 50% crediting of the Monthly Fee to start after four months.

of Rolling Stock sold by an agent, broker, or liquidator (which change was reflected in an amended retention order before Ducera's retention was ultimately approved by the Court).[4]

4.     Next, in August 2024, it was determined that the Debtors should retain CBRE in connection with a second phase of the Real Estate disposition process.  At this point, and notwithstanding the fact that the Court had authorized Ducera's retention pursuant to section 328, it became necessary to modify the terms of Ducera's compensation to accommodate the unexpected events of these cases and the prolonged sales processes.  Specifically, pursuant to a further amended retention order, Ducera agreed to reduce the applicable fee that it otherwise would have earned under its original retention terms related to the sale of the Debtors' leased Real Estate.[5] Such reduction, however, did not entirely offset the additional fees to be paid to CBRE related to the sale of the Debtors' Real Estate—which fees the Committee agreed were appropriate to incur under the circumstances given the complexity of the Debtors' Real Estate portfolio and the Committee's and the Debtors' aligned desire to maximize the sale proceeds ultimately obtained. Thus, the unanticipated facts and circumstances of these Chapter 11 Cases have resulted in the modification of retention terms for the Debtors' professionals retained pursuant to section 328, and an increase in the aggregate fees paid to the Debtors' professionals related to the monetization of the Debtors' assets.  Again, the Committee did not and does not take issue with the increase in the aggregate fees because it believed at the time (and continues to believe) that the incremental fees were justified by the asset-specific expertise that the Debtors' supplemental advisors provided.

---

[4] *Certification of Counsel Regarding Application for Entry of an Order (I) Authorizing the Retention and Employment of Ducera Partners LLC as Investment Banker to the Debtors Effective as of the Petition Date, and (II) Granting Related Relief* [Docket No. 647].

[5] *Certification of Counsel Regarding Amended Order (I) Authorizing the Retention and Employment of Ducera Partners LLC as Investment Banker to the Debtors Effective as of the Petition Date, and (II) Granting Related Relief* [Docket No. 4119].

5.      Here, the Committee is simply seeking analogous and appropriate relief for Miller Buckfire.  While the Debtors determined to retain three separate advisors to market their assets during the past two years, the Committee relied solely on Miller Buckfire to oversee and assist with all of the Debtors' sale processes.  The Debtors' determination to hire two additional advisors to run the sales processes alongside Ducera multiplied the work and coordination that was required of Miller Buckfire and further demonstrates the complexity and the resources that were required to execute the sales processes.  As a result of the protracted sale processes, the additional professionals, the bifurcation of the Real Estate and Rolling Stock processes, and the complexity inherent in the Debtors' asset portfolio—complexities that could not be and were not known at the time of Miller Buckfire's original retention, Miller Buckfire unexpectedly spent significantly more time (totaling over 10,980 hours through the Eighth Interim Fee Applications) and expended significantly more resources than originally contemplated in order to provide the Committee with appropriate investment banking services.  These are precisely the types of circumstances that warrant modification of retention terms and compensation even when the professional at issue has been retained pursuant to section 328.

6.      The cases cited in the Objections are distinguishable from the unique facts of these Chapter 11 Cases, and a number of other cases support the requested relief.  For example, in *In re FAH Liquidating (f/k/a Fisker Automative Holdings)*, 2015 Bankr. LEXIS 190 (Bankr. D.Del. Jan. 21, 2015), the court denied a fee enhancement request under section 328 because there was no evidence that the relevant work was unexpected.  Here, Miller Buckfire could not, and did not, envision that it would be charged with overseeing three separate advisors on a bifurcated sale process of extensive Real Estate and Rolling Stock assets lasting almost two-and-a-half years.  *See also In re Covad Commc'ns Grp., Inc.,* 292 B.R. 31, 32 (D. Del. 2003) (approving fee enhancement

5

for debtor's counsel over objection of the United States Trustee because of a successful reorganization when the debtor was facing certain failure); *In re Washington Mut., Inc.*, 2018 WL 704361, at *3 (Bankr. D. Del. Feb. 2, 2018) (citing *In re Coho Energy, LLC*, 395 F.3d 198, 205 (5th Cir. 2004) (holding that an arbitration panel using ill-informed calculations was not foreseeable when the court entered an order approving fees to be decided by the arbitration panel). Given the complexities of these cases, and the extent and intensity of services required by the Committee from Miller Buckfire, which were not foreseen or foreseeable when Miller Buckfire was engaged, the high burden for modification of Miller Buckfire's retention terms under section 328 has been met.

7.    The Joinder also notes that it is surprising that the Committee has requested additional compensation for Miller Buckfire because the Committee and its members have expressed concern over the magnitude of the professional fees and expenses incurred in these cases. This observation, however, highlights the reasonableness of Miller Buckfire's request for appropriate compensation. Although the Committee has indeed expressed concerns regarding the professional fee burn in these cases, the Committee made a determination that it was appropriate to utilize estate resources to ensure that Miller Buckfire is fairly compensated for the services it has rendered to the Committee on behalf of all unsecured creditors in light of the unanticipated events that unfolded during these cases. Moreover, the Objections do not challenge or dispute that the additional fees requested by Miller Buckfire are wholly consistent with the fees earned in comparable cases as set forth in Exhibit D to the Supplemental Application. As such, the Committee believes that a modest incremental $3.75 million fee to compensate Miller Buckfire for two-and-a-half years of extensive and value-additive work is reasonable and warranted under the circumstances.

## RESERVATION OF RIGHTS

8.     The Committee reserves the right to amend, modify or supplement this Reply, and to introduce evidence at the hearing.  This Reply shall not in any way limit any other rights of the Committee to take any further action, on any grounds, as may be appropriate.

## CONCLUSION

9.     For the foregoing reasons and for the reasons set forth in the Supplemental Application, and all ancillary papers filed in support thereof, the Committee respectfully requests that the Court: (i) overrule the Objections; (ii) enter an order approving the Supplemental Application substantially in the form of order attached thereto as **Exhibit A**; and (iii) provide the Committee with such other and further relief as the Court may deem just, proper and equitable.


Dated:  December 17, 2025
Wilmington, Delaware

**BENESCH, FRIEDLANDER,**
     **COPLAN & ARONOFF LLP**

*/s/ Kevin M. Capuzzi*
Jennifer R. Hoover (DE No. 5111)
Kevin M. Capuzzi (DE No. 5462)
John C. Gentile (DE No. 6159)
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
E-mail: jhoover@beneschlaw.com
       kcapuzzi@beneschlaw.com
       jgentile@beneschlaw.com


*Counsel to the Official Committee of Unsecured Creditors*

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Philip C. Dublin (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
Kevin Zuzolo (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: pdublin@akingump.com
       mlahaie@akingump.com
       kzuzolo@akingump.com