# GROOM LAW GROUP

Edward J. Meehan
(202) 861-2602
emeehan@groom.com

January 9, 2026

The Honorable Craig T. Goldblatt
United States Bankruptcy Court
824 North Market Street
3rd Floor, Courtroom 7
Wilmington, DE 19801

      Re:    *In re Yellow Corp., et al.*, Case No. 23-11069 (CTG) – Response to Letter From MFN Partners, LP and Mobile Street Holdings, LLC Requesting to Quash Subpoena Issued by New York State Teamsters Conference Pension and Retirement Fund

Dear Judge Goldblatt:

      We write pursuant to the Court's January 5, 2026 directive (Dkt. 8484) in response to the January 2, 2026 Letter (Dkt. 8477, the "Letter") by MFN Partners, LP and Mobile Street Holdings, LLC (collectively, "MFN") seeking to quash a subpoena (the "Subpoena," Ex. A hereto) by the New York State Teamsters Conference Pension and Retirement Fund (the "Fund").

      After MFN filed the Letter, MFN made belated efforts to meet and confer. As a result, the scope of the parties' dispute has been narrowed, but not eliminated.

      In particular, the Subpoena asks MFN to acknowledge and describe its settlement demands during this case. MFN is a "vulture capitalist" that purchased "lottery tickets on the eve of Debtors' bankruptcy" in the form of stock and subsequently acquired two MEPP claims to hedge its bet. Dkt. 4540 ¶¶ 14, 16-17; Dkt. 7731 ¶ 2. MFN has been attempting to extract a *premium both on its MEPP claims and on its equity position*. As the Fund learned from Debtors in response to a separate discovery request, mere weeks ago, MFN proposed to withdraw its opposition to Debtors' MEPP settlements—including with the Fund—if Debtors acceded to MFN's financial demands and transferred to it control of certain litigation in the case. Debtors rightly declined. *See* Exs. B, C. Despite its representation to the Court that the Fund's claims are inflated (even though they are less than the Fund would be entitled to under the Court's rulings to date), MFN offered to drop its objection to plan confirmation and appeal of the Court's SFA ruling, and not object to the MEPP settlements, but only if Debtors agreed that: (i) the MEPP claims that MFN purchased would be allowed at higher amounts than under the Court's rulings to date; and (ii) most of any recovery on one of Debtors' affirmative claims would go primarily to equity, even though creditors have not been paid in full. *See* Ex. B at 2.

      MFN is engaging in what courts, in a related context, term "[o]bjector blackmail." *See, e.g.*, *In re Wells Fargo & Co. S'holder Derivative Litig.*, 523 F. Supp. 3d 1108, 1113 (N.D. Cal.

**GROOM LAW GROUP**

Response to MFN Letter Regarding NYST Deposition
Page 2

2021) ("Objector blackmail is a well-known . . . phenomenon whereby objectors 'use an appeal [of a class action or derivative settlement] as a means of leveraging compensation for themselves or their counsel.'") (quoting *Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295, 300 (5th Cir. 2007)) (alteration in original).  Moreover, documents produced by Debtors on January 2 show that MFN's "blackmail" is not new.  While this recently surfaced evidence already supports dismissing MFN's settlement opposition, the Fund is entitled to a full discovery record on this topic.

The Fund's questions are limited and simple.  MFN should be ordered to answer them.  The Fund can address MFN's information in a Reply to Debtors' 9019 Motion (Dkt. 8296), due January 19, 2026.  *See* Dkt. 8379 at 2.

**I.      Standard for a Motion to Quash Under Rule 45.**

"The party seeking to quash a subpoena bears the heavy burden of demonstrating that Rule 45 is satisfied."  *Gov't Emps. Ins. Co. v. Koppel*, No. 2:21-cv-03413-MEF-JRA, 2023 WL 5526809, at *2 (D.N.J. Aug. 28, 2023).  "Specifically, the moving party must show a 'clearly defined and serious injury.'"  *Charter Oak Fire Ins. Co. v. Am. Cap., Ltd.*, No. MISC. 1:12-MC-00358, 2012 WL 5862735, at *3 (M.D. Pa. Nov. 19, 2012) (quoting *City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953-CIV, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008)).

"[G]eneral assertions are insufficient to show undue burden for the purpose of a motion to quash."  *Adesanya v. Novartis Pharms. Corp.*, No. 13-CV-5564 (SDW-SCM), 2015 WL 7574362, at *1 (D.N.J. Nov. 24, 2015).  Rather, "[w]here a party contends that the sought discovery causes an undue burden, they must demonstrate specifically how each item of discovery is objectionable by 'offering evidence revealing the nature of the burden.'"  *Northern v. City of Philadelphia*, No. CIV. A. 98-6517, 2000 WL 355526, at *2 (E.D. Pa. Apr. 4, 2000) (quoting *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980)).  "Merely asserting that a party will suffer an undue burden without 'specific estimates of staff hours needed to comply' will be 'categorically rejected.'"  *Gabe Staino Motors, Inc. v. Volkswagen of Am., Inc.*, CIV.A. No. 99-5034, 2003 WL 25666135, at *2 (E.D. Pa. Feb. 28, 2003) (quoting *Association of Am. Physicians & Surgeons v. Clinton*, 837 F.Supp. 454, 458 n. 2 (D.D.C. 1993)).

**II.     The Subpoena is Targeted, Relevant, and Respects Any Privilege or Protection.**

The Subpoena asks three brief sets of related questions.  *First*, what settlement demands has MFN made, to whom, when, and what were the terms?  *Second*, which claims does MFN own, and what does MFN believe those claims are worth under the Court's rulings to date?  *Third*, have any of the settlement demands included any value beyond the amount of MFN's claims identified in Question 2?  *See* Ex. A at p. 7 of 7.

These are simple, straightforward questions that MFN can easily answer.  Instead, MFN blusters that the information "has absolutely no relevance" and "appears to be nothing more than

**GROOM LAW GROUP**

Response to MFN Letter Regarding NYST Deposition
Page 3

a burdensome and costly expedition intended to intimidate MFN/Mobile Street.  That is an improper reason to seek discovery.  *See* **[cite]**." Letter at 5 (missing citation in bold in original).

The requests are relevant.  Courts have allowed discovery into settlements that bear on the motive of an objector.  *See, e.g.*, *In re L. Off. of Jonathan E. Fortman, LLC*, No. 4:13MC00042 AGF, 2013 WL 414476, at *1–2 (E.D. Mo. Feb. 1, 2013) ("[a]greeing . . . that the materials sought are relevant to assessing the merits of the objection," including "[a]ny settlements or payouts Movant received in return for withdrawing a client's objection or appeal," because "the background and intent of objectors and their counsel" is "relevant," "particularly when indicative of a motive other than putting the interests of the class members first").

Bankruptcy courts agree that the motive of an objector is relevant.  *See, e.g.*, *DeepRock Venture Partners LP v. Beach*, No. 3:16-CV-1552-M, 2017 WL 1293090, at *4 (N.D. Tex. Apr. 4, 2017) (rejecting the argument "that the bankruptcy court improperly disregarded [the] views [of] the majority creditor and made improper assumptions regarding its motives in opposing the settlement"), *aff'd sub nom. Matter of Beach*, 731 F. App'x 322 (5th Cir. 2018); *In re Reinicke*, 338 B.R. 292, 298 (Bankr. N.D. Tex. 2006) ("The court, in this circumstance, will take into account the motives of Objectors in trying to prevent confirmation of the Plan."); *In re Grant Broad. of Philadelphia, Inc.*, 71 B.R. 390, 400–401 (Bankr. E.D. Pa. 1987) ("totally agree[ing]" that "[o]bviously, their opposition to the proposed Settlement Agreement is to be discounted where personal gain is the motive for the objection").

After filing the Letter, MFN engaged in some attempts to meet and confer with the Fund, but refused to give a complete answer to the Fund's question on this topic and cut off further dialogue, stating "[t]his is our last go-around."  Ex. D at 3.  MFN engaged in similarly obstructionist tactics in its prior correspondence with the Fund.  *See* Exs. E, F, G.

### III.    MFN's Attack on the Fund Is a Red Herring Without Merit.

MFN deems the Subpoena "clear retaliation . . . simply because New York Teamsters or its counsel is upset tactics during the December 8, 2025 deposition did not work." Letter at 5–6. *See also id.* at 5.  MFN's histrionics are mere misdirection and not well taken.

*First*, what matters is that the Subpoena is narrowly tailored to obtain relevant information. *See supra* at 2-3.  The Fund has long pointed out (along with others, including the Creditors Committee) that "MFN . . . has decided to use 'value-destructive and meritless litigation tactics' in an attempt to 'extract considerations to which equity is not entitled from the creditors of these estates.'" Dkt. 7540 ¶ 5 (quoting Dkt. 7533 ¶ 1).  At its December 8, 2025 deposition of the Fund's representative, MFN inquired into settlement discussions.  Counsel for the Fund permitted all of the questioning after stating that "[i]f you're going to inquire into any settlement conversations, I will take it that MFN is waiving the agreement . . . that we will not discuss what was exchanged in settlement and that we are free to put MFN's demands in their entirety on the public record."

Response to MFN Letter Regarding NYST Deposition
Page 4

Ex. H at 31:11-18.[1] There is nothing retaliatory about seeking discovery after the party from which that discovery is sought has opened the door. Nor would the settlement-related discovery be inadmissible under Rule 408 as the Fund is not seeking to use the discovery to prove the amounts of MFN's claims, but instead to show MFN's motive. Indeed, as the Court has already stated, "the notion that Rule 408 protects against the admission of every settlement communication just isn't correct." Dkt. 6547 at 21:2-4.

Indeed, MFN has represented to the Court that it intends only to recover what remains after the MEPP claims have been paid. *See* Dkt. 4056 at 155:19-21 ("MR. WINSTON: . . . My client wants to see [certain MEPPs] get paid their allowed claim because hopefully there is money that is left over."); Dkt. 5989 at 67:21-68:4 ("MR. WINSTON: . . . [I]f the [D]ebtors are able to give us money, as counsel stated, that means every other allowed claim has been paid in full. That is a phenomenal outcome. I hope that does happen."). But MFN's conduct behind the scenes belies its representations to the Court. MFN's efforts to extract a ransom from Debtors' estate are designed to reward MFN at the expense of creditors, contradicting its on-the-record position concerning the pending MEPP settlements. Its settlement opposition is in bad faith. While the Fund already has evidence of some of MFN's demands, in fairness to MFN and to avoid needless disputes concerning the particulars of its demands, MFN should be required to respond to the Fund's limited discovery so that the facts are not in dispute. This will ensure that the Court can examine the facts and draw its own conclusions about MFN's conduct, which the Fund believes supports overruling MFN's opposition to the settlements.

*Second*, there were no improper "tactics" deployed by Fund counsel at the December 8, 2025 deposition. Fund counsel did not instruct the Fund's representative to decline to answer a single question. Counsel for MFN unilaterally decided to stop asking questions without even attempting to cover the topics in its notice. *See* Ex. H at 95:15–97:19; Dkt. 8336-1 at 6.[2]

The Fund previously responded to MFN's assertions about the deposition in a detailed letter that MFN now, in a footnote and without explanation, can manage to say only is "riddled with baseless assertion." Letter at 3 n.6. MFN's selective excerpts from the transcript do not support its assertions. There were no "disruptive objections," Letter at 3 n.5; rather, Fund counsel assisted in getting MFN information when **specifically requested** by MFN's counsel. *See, e.g.*,

---

[1] The Fund had taken the position—including on the record during a hearing before the Court—that settlement-related matters are not discoverable. *See* Dkt. 6547 at 19:16-21:12 ("MR. MEEHAN: . . . "[I]n every conversation with every party I have reached a separate and independent agreement that nothing . . . either of us says to each other is admitted."). The Court has not adopted the Fund's position. *See, e.g., id.* at 20:21-21:4. MFN chose to put settlement discussions at issue and has denied the agreement to protect them.

[2] Despite having **six lawyers** present, Ex. H at 3, rather than admit it was not prepared to finish the deposition and discuss with Fund counsel how to proceed, MFN aborted the deposition on pretext and launched its *ad hominem* attack. *See* Ex. H at 95:15-99:20; Dkt. 8477-4.

GROOM LAW GROUP

Response to MFN Letter Regarding NYST Deposition
Page 5

Dkt. 8477-2 at 35:17-19 ("MR. EHRMANN: Counsel, please refresh the witness's recollection on this matter, then."), 74:11-16.  Nor were there "monologues on the record," Letter at 3, but rather limited colloquy alerting MFN that inquiring into the Fund's settlement negotiations with Debtors would lead to the very discovery MFN now seeks to quash and—*after* MFN refused to continue its questioning and demanded a second deposition—that its questioning was beyond the scope of the topics it had noticed.  *See* Dkt. 8477-2 at 29:1-32:19, 48:8-15, 95:15-99:10.  These were efforts by Fund counsel to avert and resolve disputes, not create them.

In any event, the dispute over the Fund's deposition was resolved before the Letter:  the Fund committed on December 13, 2025 to respond to MFN's Rule 31 questions, and did so on time and in full on January 5, 2026, despite them being far beyond the few it had been misled into expecting and largely outside the deposition topics.  *See* Ex. I; Dkt. 8336-1 at 6.  That long-resolved dispute has nothing to do with what is in front of the Court.

*   *   *

MFN's requested motion to quash should be overruled and MFN should be ordered to answer the questions posed in the Subpoena reasonably in advance of the January 21, 2026 hearing.

Respectfully,

*/s/ Edward J. Meehan*

Edward J. Meehan

cc:   All registered CM/ECF users via CM/ECF