# EXHIBIT B

# KIRKLAND & ELLIS LLP

333 West Wolf Point Plaza
Chicago, IL 60654
United States

Patrick J. Nash, Jr. P.C.
To Call Writer Directly:
+1 312 862 2290
patrick.nash@kirkland.com

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

January 2, 2026

**Via: E-MAIL**

Eric Winston
Quinn Emanuel
865 South Figueroa St., 10th Fl.
Los Angeles, CA 900017-2543

Re:   <u>MFN's letter requesting derivative standing</u>

Dear Eric,

This letter responds to yours dated December 23, 2025. The Debtors decline to grant MFN/Mobile Street ("<u>MFN</u>") derivative standing. MFN isn't an estate fiduciary and is clearly pursuing its own agenda. Until shortly before the Petition Date, MFN had no connection to Yellow. MFN acquired Yellow's equity on a bet that Judge Goldblatt's "SFA ruling" would turn out differently than it did. During the case, MFN hedged this bet by acquiring two MEPP claims in or around the time that other financial institutions started acquiring other MEPP claims. All of which MFN was of course free to do; no criticism here.

Throughout the case, MFN's singular focus, understandably, has been to minimize the claims pool and maximize the possibility of a recovery to equity. Because of this, the Debtors do not believe that MFN is or ever has been seriously interested in a consensual resolution of these cases that doesn't provide for a meaningful recovery to equity holders.

The Debtors, the UCC, and all creditors of consequence other than MFN were prepared to end these cases in the Spring of 2025 on the back of proposed MEPP settlements that would have been primarily funded by the settling MEPPs and PBGC. MFN successfully blocked that path to resolution and the case continued on, with MFN next focusing on having these cases converted to Chapter 7.

MFN filed its motion to convert the cases on April 29, 2025. MFN sought to bolster its effort to have these cases converted by offering to "pay for" the litigation against the IBT post-conversion; I do not believe that altruism motivated MFN's offer in this regard.

## KIRKLAND & ELLIS LLP

January 2, 2026
Page 2

      Next, MFN strenuously opposed confirmation of a strict waterfall plan on the basis of alleged deficiencies in the plan's post-effective date governance and an argument that the plan failed the "best interest of creditors" test. MFN pursued its objection to the governance aspect of the plan despite the Debtors and the UCC proposing a not-atypical post-effective date governance structure and the Debtors' assurances to you and the Court that anything of consequence would be presented to the Court for approval with an opportunity to be heard and object.

      Especially indicative of MFN pursuing its own agenda was its "best interest of creditors" objection to plan confirmation. I don't think it's even a close call that general unsecured creditors are worse off if these cases are converted to chapter 7, but credit to you and the effectiveness of your advocacy, you seem to have made it one. Conversion to chapter 7 is a bad outcome for general unsecured creditors where, as MFN knows, the Debtors seek to resolve these cases on the back of MEPP settlements that will be largely funded by participating MEPP's and the PBGC.

      Now, MFN seeks derivative standing "in the event the settlements are denied . . . to continue with all claim objections against the MEPP claimants, including appeals." MFN offers to do this using its own counsel and at MFN's expense. Like its offer to "pay for" the IBT litigation, I do not believe altruism motivates MFN's proposal, and we decline the offer.

      Related to the foregoing discussion, MFN has on multiple occasions accused the UCC, the settling MEPPs and the Debtors of bad faith, including that the confirmed plan was filed in bad faith. The Debtors think it relevant that on November 6, 2025, MFN offered to resolve its (i) confirmation objection, (ii) appeal of the Court's SFA ruling, and (iii) objection to the impending MEPP settlements, in consideration for (a) the Debtors allowing MFN's MEPP claims in an amount greater than would be the case under the methodology used in reaching the pending MEPP settlements (which methodology already results in an amount greater than would be the case under the Court's "rulings to date"), and (b) any recovery on the IBT litigation split 75% to existing equity, 25% to general unsecured creditors, with existing equity controlling the prosecution and any resolution of that litigation.

      I am available as desired to discuss the contents of this letter or anything else at your convenience.

      Very truly yours,

      KIRKLAND & ELLIS LLP

      By:  */s/ Patrick J. Nash, Jr.*
           Patrick J. Nash, Jr.