# EXHIBIT I

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| YELLOW CORPORATION, *et al.*, | Case No. 23-11069 (CTG) |
| Debtors. | (Jointly Administered) |

**NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND'S RESPONSES AND OBJECTIONS TO MFN PARTNERS, LP AND MOBILE STREET HOLDING'S RULE 31 DEPOSITION BY WRITTEN QUESTIONS**

## <u>GENERAL OBJECTIONS</u>

1.      The Fund objects to the Instructions to the extent they purport to impose obligations on the New York State Teamsters Conference Pension and Retirement Fund (the "Fund") beyond the obligations imposed under the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure.

2.      The Fund objects that the Questions are largely outside the scope of the topics in the original deposition subpoena.

3.      The Fund further objects that the Questions do not represent a limited number of follow-up questions from the December 8, 2025 deposition, as the Fund was misled to believe when it agreed to review and consider responding to follow-up written questions.

4.      The Fund further objects that the Questions could not have been asked and answered at the December 8, 2025 deposition in the allotted two-hour time, much less the amount of time remaining after the MFN Parties asked their other questions, even in the absence of a single objection by counsel.

5.      The Fund further objects that the Questions are largely irrelevant and were clearly written after the December 8, 2025 deposition in an attempt to further harass the Fund, in bad faith.

6.      The Fund further objects that Questions related to the merits of the Fund's claims are untimely because discovery closed in July 2024.

7.      Notwithstanding the Fund's Objections, as set forth below, the Fund has answered each of the Questions, where applicable.

## QUESTIONS

**Question No. 1**:

Understanding that NYST may disagree with the Bankruptcy Court Rulings, does NYST agree that, based on the Bankruptcy Court Rulings, the amount of its withdrawal liability claim is the amount of allocable unfunded vested benefits adjusted for ERISA's limit on annual payments under § 4219(c)(1)(B), reduced by the present value of the annual payments discounted by using the interest rate NYST uses as interest on a withdrawn employer's payment schedule, and, if ultimately determined to be applicable, by up to a 50% reduction under ERISA § 4225(b)?

**OBJECTIONS**:

The Fund objects on the grounds that Question 1 calls for a legal conclusion and that the Bankruptcy Court's Rulings speak for themselves.

**RESPONSE:**

Notwithstanding the Fund's Objections, the description in Question 1 of the impact of Court's rulings is generally consistent with the Fund's understanding.

**Question No. 2**:

Does NYST agree that applying ERISA's limit on annual payments under § 4219(c)(1)(B), 29 U.S.C. § 1399(c)(1), reduced to present value, and by any reduction required by ERISA §

4225(b), 29 U.S.C. § 1425(b), reduces the amount of NYST's withdrawal liability claim against the Debtors?

**OBJECTIONS:**

The Fund objects on the grounds that Question 2 calls for a legal conclusion and that the Bankruptcy Court's Rulings speak for themselves.

**RESPONSE:**

Notwithstanding the Fund's Objections, the Fund agrees that if the limitations and reductions described in Question 2 are applied, they would reduce the value of the Fund's allowed withdrawal liability claim.

**Question No. 3:**

Do You agree that the Policies and Procedures for Contributing Employers attached to Your Proofs of Claim is a true and accurate copy of Your policies and procedures?

**RESPONSE:**

Yes.

**Question No. 4:**

Do You have any reason to disagree that Section 6, Paragraph F, of the Policies and Procedures requires liquidated damages at 10% of the amount of delinquent withdrawal liability payments?

**OBJECTIONS:**

The Fund objects to Question 4 to the extent it calls for a legal conclusion or seeks information covered by the attorney-privilege.

**RESPONSE:**

The Fund's longstanding interpretation of Section 6, Paragraph F of its Policies and

Procedures is that, following a delinquency, the required 10% liquidated damages are based on the amount of withdrawal liability assessed by the Fund.

**Question No. 5**:

Are you aware of any other provision in these Policies and Procedures that references liquidated damages for delinquent or defaulted withdrawal liability?

**RESPONSE:**

Yes.

**Question No. 6**:

If the answer to Question No. 5 is yes, please identify the section of the Policies and Procedures and the specific language in such section, for which You believe provides for liquidated damages for withdrawal liability.

**RESPONSE:**

Sections 1 and 8.  Section 1(D) provides that "The Trustees have the right to establish rules and regulations for the operation of the Fund . . . including, but not limited to, the right to: . . . Require that a delinquent employer pay . . . liquidated damages . . . ."  Section 8(A) provides that "All questions or disputes relating to the interpretation, meaning and/or application of these policies and procedures shall be finally and exclusive resolved by the Trustees, in their sole discretion . . . ."

**Question No. 7**:

Do You agree that the New York State Teamsters Conference Pension and Retirement Fund Participation Agreements attached to Your Proofs of Claim is a true and accurate copy of Your participation agreement?

**RESPONSE:**

Yes.

**Question No. 8:**

Please identify the specific language, if any, in the New York State Teamsters Conference Pension and Retirement Fund Participation Agreements requiring liquidated damages for delinquent or defaulted withdrawal liability.

**RESPONSE:**

Section 1(a) of the Fund's participation agreements provide that "[t]his Participation Agreement, executed by the undersigned Teamsters Local Union (hereinafter 'Union') and Employer, is the basis for participation in the New York State Teamsters Conference Pension & Retirement Fund (hereinafter 'Fund').  The Employer, its participating employees, and the Union, as a condition of participation in this Fund, are bound by this Participation Agreement, the Trust Agreement, Plan documents and all of the rules and regulations of the Fund now and/or hereafter adopted by the Board of Trustees."  Further, Section 2 of the Fund's participation agreements provides that "the Employer must pay . . . liquidated damages in the sum of ten percent (10%) of the delinquent amount."  The Fund's longstanding interpretation is that "the delinquent amount" means any delinquency owed to the Fund, including withdrawal liability assessed by the Fund.

**Question No. 9:**

Does NYST agree that the amount of its $75,721,519.00 liquidated damages claim in Your Proof of Claim is based on 10% of the full amount of Debtors' allocable unfunded vested benefits as calculated by Your actuary under ERISA § 4211, 29 U.S.C. § 1391? If You answer no, please explain how the liquidated damages claim is not based on the full amount of Debtors' allocable unfunded vested benefits.

**RESPONSE:**

The Fund generally agrees with the description in Question 9 of the Fund's liquidated damages claim.

**Question No. 10:**

Does NYST agree that if its allowed withdrawal liability claim were reduced in accordance with the Bankruptcy Court's 's rulings to date, even if NYST disagrees with those rulings, would 10% of the reduced withdrawal liability be less than the liquidated damages amount asserted in Your Proof of Claim?

**OBJECTIONS:**

The Fund objects on the grounds that Question 10 calls for a legal conclusion and that the Bankruptcy Court's Rulings speak for themselves.  The Fund further objects that Question 10 is not a complete sentence.

**RESPONSE:**

Notwithstanding the Fund's Objections, the Fund does not agree that a reduction in the amount of its allowed withdrawal liability claim changes the amount of the Fund's liquidated damages claim.  To the extent Question 10 is asking a tautological math question, the Fund agrees that if the Fund had calculated its 10% liquidated damages claim based off of a lower number, the resulting liquidated damages claim would have been lower.

**Question No. 11:**

According to Exhibit A (Yellow_Debtors_Confirmation00008560), the estimated baseline estimates of NYST's withdrawal liability claim is $167.180 million. Does NYST agree that this amount reflects the allowed amount of withdrawal liability after giving effect to the Bankruptcy Court Rulings, including applying 50% subordination?

**OBJECTIONS:**

The Fund objects on the grounds that Question 11 calls for a legal conclusion and that the Bankruptcy Court's Rulings speak for themselves.  The Fund further objects that the Fund was not involved in the preparation of Exhibit A and does not have knowledge of how it was prepared.

**RESPONSE:**

Notwithstanding the Fund's Objections, the Fund does not agree with Question 11.

**Question No. 12:**

Exhibit A (Yellow_Debtors_Confirmation00008560) also lists the estimated baseline estimates of every other MEPP.  Does NYST agree or disagree that each amount listed reflects the allowed amount of withdrawal liability after giving effect to Judge Goldblatt's rulings, including applying 50% subordination?

**OBJECTIONS:**

The Fund objects on the grounds that Question 12 calls for a legal conclusion and that the Bankruptcy Court's Rulings speak for themselves.  The Fund further objects that the Fund was not involved in the preparation of Exhibit A and does not have knowledge of how it was prepared.

**RESPONSE:**

Notwithstanding the Fund's Objections, the Fund states that it does not have a view of the correct amounts of the claims of other MEPPs.

**Question No. 13:**

If You answer no to Question No. 11, have You had your actuary, or any other actuary, calculate the amount of Your withdrawal liability claim against each Debtor after giving effect to the Bankruptcy Court Rulings on withdrawal liability and MEPP Claims to date? If so, provide the amount Your actuary, or any other actuary calculated, as Your reduced withdrawal liability

amount.

**OBJECTIONS:**

The Fund objects on the grounds that Question 13 calls for a legal conclusion and that the Bankruptcy Court's Rulings speak for themselves.

**RESPONSE:**

Notwithstanding the Fund's Objections, the Fund has had an actuary calculate what its withdrawal liability claim would be under the Bankruptcy Court's Rulings. That amount is $334,360,698.

**Question No. 14:**

If You answer yes to Question No. 11, please also answer the following: (a) how much did Your actuary, or any actuary, calculate Debtor's allocable unfunded vested benefits under ERISA § 4211, 29 U.S.C. § 1391 to be after applying the Bankruptcy Court Rulings; (b) how much did your actuary, or any actuary, calculate the sum of Debtor's annual payments to be after applying the Bankruptcy Court Rulings; (c) what discount rate did your actuary, or any actuary, use to calculate the present value of Debtors' 20 annual payments; (d) based on this interest rate, what did Your actuary, or any actuary, calculate the present value of Debtors' annual withdrawal liability payments to be; and (e) what did your actuary, or any actuary, calculate your withdrawal liability claim to be after applying ERISA § 4225(b), 29 U.S.C. § 1425(b)?

**OBJECTIONS:**

The Fund objects on the grounds that Question 14 calls for a legal conclusion and that the Bankruptcy Court's Rulings speak for themselves.

**RESPONSE:**

Not applicable.

**Question No. 15:**

If You answer No to Question 13, please explain how you evaluated Debtors' settlement proposal without having the calculation of the amount of Your withdrawal liability claim against Debtors would be after application of the Bankruptcy Court's rulings?

**OBJECTIONS:**

The Fund objects to the extent Question 15 to the extent it seeks information covered by the attorney-privilege.

**RESPONSE:**

Not applicable.

**Question No. 16:**

How much of Your allowed $326,500,000.00 claim under the Proposed Settlement is attributable to your liquidated damages claim against the Debtors?

**RESPONSE:**

From the Fund's perspective, the allowed $326,500,000 claim under the Proposed Settlement represents an all-in number of what the Fund is willing to settle at based on the Bankruptcy Court's Rulings to date and the risks of continued litigation. The Proposed Settlement does not provide for a specific amount attributable to the Fund's liquidated damages claim.

**Question No. 17:**

What, if any, discovery are You aware of that must occur in the MEPP Litigation prior to the Bankruptcy Court entering a final order on the calculation of Your withdrawal liability claim against Debtors? In Your response, please specify what discovery is left with respect to the Bankruptcy Court's determination of the application of the 20-year cap on Debtors' annual withdrawal liability payments for each's MEPP's allocable unfunded vested benefits assessed

against the Debtors, the determination of the present value of the 20 years or less of annual withdrawal liability payments owed by Debtors for its allocable unfunded vested benefits assessed by each MEPP, the determination of the appropriate interest rate required to be used in determining each of the MEPP's unfunded vested benefits, , and whether ERISA § 4225(b), 29 U.S.C. § 1425(b) is applicable to each MEPP's claim against Debtors, and whether the reduction required under such section is 50% or some lower percentage, of the adjusted allocable unfunded vested benefits assessed against debtor by each MEP.

**OBJECTIONS:**

The Fund objects to the extent Question 17 calls for a legal conclusion or seeks information covered by the attorney-privilege.

**RESPONSE:**

The Fund does not believe that any additional discovery should take place prior to the Bankruptcy Court entering a final order on the calculation of the Fund's withdrawal liability claims against Debtors given that discovery closed in July 2024 and any remaining challenges to the Fund's claims should be deemed waived. Nevertheless, the Fund notes that Debtors and MFN have continued to re-litigate issues, raise new issues, issue new discovery, and Debtors have now indicated that they intend to further litigate "fact-intensive, complex questions likely requiring expert testimony" related to Section 4225(b). *See* Docket 8296 at paragraphs 42 and 43.

**Question No. 18:**

What, if any, briefing are you aware of that must be completed in the MEPP Litigation prior to the Bankruptcy Court entering a final order on the calculation of Your withdrawal liability claim against Debtors?

**OBJECTIONS:**

The Fund objects to the extent Question 18 calls for a legal conclusion or seeks information covered by the attorney-privilege.

**RESPONSE:**

The Fund does not believe that any additional briefing should take place prior to the Bankruptcy Court entering a final order on the calculation of the Fund's withdrawal liability claims against Debtors and that any remaining challenges to the Fund's claims should be deemed waived. Nevertheless, the Fund expects that Debtors and others, including MFN, would contest this, necessitating briefing on waiver issues. The Fund also expects that, at a minimum, Debtors' positions with respect to Section 4225 would require further briefing.

**Question No. 19:**

Have the Debtors provided You with any projected costs of continuing the MEPP Litigation if the Proposed Settlements do not become effective? If the Debtors have provided such projection, identify the amount of such projection.

**RESPONSE:**

No.

**Question No. 20:**

Without disclosing any communications or work product not previously disclosed in these proceedings concerning legal advice, has any representative of the Committee provided You with any projected costs of continuing the MEPP Litigation if the Proposed Settlements do not become effective? If the Committee has provided such projection, identify the amount of such projection.

**OBJECTIONS:**

The Fund objects to the extent Question 20 seeks information covered by the attorney-privilege.

**RESPONSE:**

Discussions related to this topic took place, but the Fund understands them to be privileged and confidential communications that took place in the Fund's capacity as a Committee member.

**Question No. 21:**

Have the Debtors provided You with any projected costs of any litigation related to non-settling MEPPs' withdrawal liability claims if the Proposed Settlements are approved and become effective? If the Debtors have provided such projection, identify the amount of such projection.

**RESPONSE:**

No.

**Question No. 22:**

Without disclosing any communications or work product not previously disclosed in these proceedings concerning legal advice, has any representative of the Committee provided You with any projected costs of litigation related to non-settling MEPPs' withdrawal liability claims if the Proposed Settlements are approved and become effective? If the Committee has provided such projection, identify the amount of such projection.

**RESPONSE:**

No.

**Question No. 23:**

Did any person other than Your counsel, including the Debtors, the Committee, or any Settling MEPP, inform You as to the interest rate each Settling MEPP used to calculate unfunded vested benefits in determining the amount of their allowed claims in the Proposed Settlements? To the best of your knowledge, what interest rate was used in calculating Your unfunded vested benefits, and each Settling MEPPs' unfunded vested benefits, to determine the allowed claim

amounts under the Proposed Settlements?

**RESPONSE:**

The Fund understands that Debtors calculated the Fund's withdrawal liability claim in connection with the Proposed Settlement based on the PBGC rates, which, as applicable to the Fund, were 3.9%. The Fund has not analyzed the interest rates used by other Settling MEPPs under the Proposed Settlements.

**Question No. 24:**

Did You use Your funding rate to discount Debtors' annual payments to present value? If not, what interest rate did You use to discount Debtors' annual withdrawal liability payments to present value, and why? And if you did not use Your funding rate, what would be the impact on Your withdrawal liability claim against Debtors if You used Your funding rate instead of the rate you used to discount Your claim to present value?

**RESPONSE:**

The Fund did not discount Debtors' annual payments to present value in connection with the filing of its claims. The Fund understands that Debtors calculated annual withdrawal liability payments to the Fund in connection with the Proposed Settlement, discounted to present value at the PBGC rates, which, as applicable to the Fund, were 3.9%. The Fund further notes that the PBGC rates are required to be used in this context and that they were used for the purpose of the calculation described in Question 13. If the Fund's funding rate of 7.5% were used to discount annual withdrawal liability payments, the present value of the Fund's payment schedule would be approximately $257.21 million.

**Question No. 25:**

Did any person other than your counsel, including the Debtors, the Committee, or any

Settling MEPP, inform you as to the interest rate each Settling MEPP used to discount annual withdrawal liability payments to present value in determining the amount of their allowed claims in the Proposed Settlements?

Are any of the Proposed Settlements calculated using a different interest rate to determine present value of the annual withdrawal liability payments than the interest rate used to calculate Your allowed claim under the Proposed Settlement?

**RESPONSE:**

The answer to the first question is no.  The answer to the second question is that the Fund has not analyzed the interest rates used by other Settling MEPPs under the Proposed Settlements.

**Question No. 26:**

Do You believe that the Bankruptcy Court was correct when it ruled that Central States' asserted 10-year contributions guarantee claim was an unenforceable penalty?

If not, why not?

**RESPONSE:**

The Fund has not had occasion to analyze and form a view on this issue.

**Question No. 27:**

Have you discussed with Central States whether the Central States' contributions guarantee claim should or should not be disallowed as an unenforceable penalty?  If yes, what was discussed and when?

**RESPONSE:**

No.  The Fund further notes its counsel has had conversations with Central States and understands that Central States continues to believe that its claims, as filed, were valid.

**Question No. 28:**

Do you believe that the Proposed Settlement with Central States is fair to the Debtors' estates? If so, explain how it is fair.

**RESPONSE:**

The Fund has not had occasion to analyze and form a view on this issue, except to the extent that any continued litigation with Central States will result in a depletion of estate assets available for distribution to unsecured creditors and will also delay any distribution to unsecured creditors.

**Question No. 29:**

If the Bankruptcy Court Ruling regarding the PBGC Regulations is reversed by the Supreme Court, would it change the amount of your withdrawal liability claim? If yes, how much? If the Bankruptcy Court Ruling regarding the PBGC Regulations is reversed by the Supreme Court, do you have a view on whether it would change the amount of the withdrawal liability claim of any other Settling MEPP? If yes, which ones and how much for each?

**RESPONSE:**

If the Bankruptcy Court and Third Circuit rulings regarding the PBGC Regulations were reversed, it would reduce the Fund's withdrawal liability claim from $757,215,199 to $542,194,606. The Fund has not calculated the impact that it would have on other Settling MEPPs, but assumes that it would reduce the claims of at least some of the Settling MEPPs that received Special Financial Assistance.

**Question No. 30:**

Have you calculated the effect on Your recovery on account of your settled MEPP Claims if the Bankruptcy Court approves the settlement of all other settling MEPP Claims?

Excluding all other factors, have you calculated the effect on Your recovery on account of your withdrawal liability claim, assuming $167.180 million correctly accounts for the Bankruptcy Court Rulings, if the Bankruptcy Court denies the settlements?

**RESPONSE:**

The Fund states that it received and reviewed waterfall analyses showing the projected impact of proposed settlements on holders of general unsecured claims. On information and belief, the Fund understands that these analyses were jointly prepared by Alvarez & Marsal, financial advisors to the Debtors, and Huron Consulting, financial advisor to the Committee.

**Question No. 31:**

Did the Committee ever take a vote on whether or not to join in objecting to the Central States' withdrawal liability claims? If so, state what the results of the vote were.

**RESPONSE:**

The Fund was recused from deliberations, and votes, if any, regarding the claims of MEPPs, and, therefore, does not know the answer to Question 31.

**Question No. 32:**

The Third Circuit found that New York Teamsters and Western Pennsylvania did not have to have a rule consistent with ERISA or submit a rule to the PBGC because those plans had contracts with Yellow. Does NYST believe that ruling applies to New England's withdrawal liability claim? If so, explain why You believe that ruling applies to New England's claim.

**OBJECTIONS:**

The Fund objects on the grounds that Question 32 calls for a legal conclusion and that the Bankruptcy Court's Rulings speak for themselves. The Fund further objects on the grounds that Question 32 mischaracterizes the Third Circuit's ruling.

**RESPONSE:**

Notwithstanding its Objections, the Fund states that it has not had occasion to analyze and form a view on this issue, except to the extent that any continued litigation with New England will result in a depletion of estate assets available for distribution to unsecured creditors and will also delay any distribution to unsecured creditors.

**Question No. 33:**

Do You believe that the Proposed Settlement with New England is fair to the Debtors' estates? If so, explain how it is fair.

**RESPONSE:**

The Fund has not had occasion to analyze and form a view on this issue, except to the extent that any continued litigation with New England will result in a depletion of estate assets available for distribution to unsecured creditors and will also delay any distribution to unsecured creditors.

**Question No. 34:**

On what date did You agree in principle to the Proposed Settlement with the Debtors?

**RESPONSE:**

November 26, 2025.

**Question No. 35:**

What internal approvals were required in order for NYST to accept the Proposed Settlement? When were such internal approvals requested? When were such internal approvals obtained?

**OBJECTIONS:**

The Fund objects to the extent Question 35 calls for a legal conclusion or seeks information covered by the attorney-privilege.

**RESPONSE:**

Notwithstanding, the Fund's Objections, the Fund states that preliminary approval was sought and obtained from the Fund's Board of Trustees to enter into a settlement above a threshold amount on several occasions during this case, but no final approval was obtained until the Fund received the Debtors' final proposed term sheet, which included additional revisions, on November 26, 2025.

**Question No. 36:**

The Proposed Settlement appears to require submission of the Proposed Settlement to the PBGC. Have You submitted the Proposed Settlement to the PBGC? If so, identify the date upon which You submitted the Proposed Settlement.

**OBJECTIONS:**

The Fund objects to the extent Question 36 calls for or asserts a legal conclusion.

**RESPONSE:**

Notwithstanding its Objections, the Fund states that it submitted the Proposed Settlement to PBGC for approval on December 1, 2025.

**Question No. 37:**

Was Your Proposed Settlement conditioned on the Debtors agreeing to any other Proposed Settlements?

**RESPONSE:**

No.

**Question No. 38:**

Did you discuss the Proposed Settlements with any other Settling MEPPs prior to agreeing to the Proposed Settlement? If yes, please describe the content of each of those discussions.

**OBJECTIONS:**

The Fund objects to the extent that Question 38 seeks information covered by common interest privilege.

**RESPONSE:**

Notwithstanding the Fund's Objections, the Fund states that it did not.  The Fund further notes that, without waiving any applicable privilege or protection, its counsel had conversations with counsel for other Settling MEPPs regarding specific terms of the Proposed Settlement, but did not negotiate with the other Settling MEPPs regarding the amount of any Settling MEPPs' allowed claim under the Proposed Settlement.

**Question No. 39:**

At the December 8 Deposition, You testified that that You would not have agreed to the Proposed Settlement if the Fourth Plan had not been confirmed. Why were You only willing to agree to the Proposed Settlement if the Fourth Plan was confirmed?

**OBJECTIONS:**

The Fund objects to the extent that Question 39 mischaracterizes the December 8 Deposition transcript.

**RESPONSE:**

Notwithstanding its Objections, the Fund states that, as reflected at Page 103:12 to Page 104:11 of the December 8 Deposition Transcript, the Fund's understanding was that, if a plan was not confirmed, the case would be converted to Chapter 7, meaning that Debtors would no longer

have authority to enter into any proposed settlement with the Fund.  The Fund further states that it would have been willing to enter into a proposed settlement on substantially identical terms with a Chapter 7 trustee, had one been appointed.

**Question No. 40:**

Did you disclose to any representative of the Debtors or the Committee that you would not agree to the Proposed Settlement unless the Fourth Plan was confirmed by the Bankruptcy Court? If so, identify every such instance in which You made such disclosure and the parties to whom you made such disclosure.

**RESPONSE:**

The Fund incorporates by reference its answer to Question 39 and further states that no such disclosure was made.

**Question No. 41:**

At the December 8 Deposition, You adopted the Deposition Script in full, which provides legal opinions based on quoted language from an opinion titled *In re Garden Ridge Corp.* Given that You, through adoption of the Script, asserted legal opinions, do you have any opinions on any legal issues being settled as part of the Proposed Settlements and what those legal opinions are? If so, identify those opinions and provide the bases for those opinions.

**OBJECTIONS:**

The Fund objects to Question 41 on the grounds that it mischaracterizes the outline used at the Deposition, calls for legal conclusions, is vague, is not a complete sentence, and to the extent it seeks information covered by the attorney-client privilege.

**RESPONSE:**

The Fund disagrees that it asserted any legal opinions based on *In re Garden Ridge Corp.*

Rather, the Fund merely quoted a court decision providing general background information about the obligations of a Creditors' Committee in response to MFN's deposition topics.  The Fund further states that it has set forth its views on the legal issues that are part of the Proposed Settlements in its prior filings and will set forth any further legal views in connection with the upcoming briefing on the motion to approve the Proposed Settlements.

**Question No. 42:**

According to page 1 of the Script, '[t]he Fund has been recused from all Committee discussions and votes regarding: (i) objections and potential objections to multiemployer plan claims; and (ii) settlements or potential settlements of multiemployer plan claims.' But according to the minutes produced to us for Committee meetings on 11/13/24, 12/4/24, 1/8/25, and 10/15/25, Your representative attended each meeting, was never recused, and in each of those meeting MEPP claim objections and/or settlements were discussed.

For each of these four minutes, are the minutes accurate in that Your representative attended, was not recused, and MEPP claim objections and/or settlements were discussed?

**RESPONSE:**

The Fund states that its representative did attend these four meetings, but does not recall any such discussions or votes at those meetings.  Rather, the Committee provided general, factual updates, on the status of claims objection litigation, which were not the topic of substantive discussions or deliberations.

**Question No. 43:**

Have You prepared, or have You received, any analysis of the likelihood of any of the Court's rulings, including, without limitation, the rulings in the Bankruptcy Court's April 7 Preliminary Observations, will be reversed on appeal? If so, and without disclosing any

communications from your counsel, identify the person who prepared or supplied to You such analysis.

**<u>OBJECTIONS:</u>**

The Fund objects to Question 43 to the extent it seeks information covered by the attorney-client privilege.

**<u>RESPONSE:</u>**

Notwithstanding its Objections, and without waiving any applicable privilege or protection, the Fund states that it has not received or calculated the percentage chance that any of the Bankruptcy Court's Rulings will be reversed on appeal. However, the Fund believes that the positions it has taken in this case are meritorious and likely to be vindicated in any appeal, and, accordingly, intends to appeal any adverse rulings in the event that the Proposed Settlement is not approved.

**<u>Question No. 44</u>:**

Have You calculated the impact the Proposed Settlements, if approved, would have on recoveries for claimants under class 5 of the Debtors' Fourth Plan? If so, state the calculated impact on class 5 claimants.

**<u>RESPONSE:</u>**

The Fund has not independently conducted such calculations, but has received and reviewed waterfall analyses showing the projected impact of proposed settlements on holders of general unsecured claims. On information and belief, the Fund understands that these analyses were jointly prepared by Alvarez & Marsal, financial advisors to the Debtors, and Huron Consulting, financial advisor to the Committee.

**<u>Question No. 45</u>:**

Has any party provided You with a calculation of the impact the Proposed Settlements, if approved, would have on claimants under class 5 of the Debtors' Fourth Plan? If so, and without disclosing any communications or work product not previously disclosed in these proceedings concerning legal advice state the party providing such calculation and the calculated impact, as both a percentage and dollar amount of class 5 claimants' recoveries, on class 5 claimants.

**OBJECTIONS:**

The Fund objects to Question 45 as unduly burdensome to the extent it purports to require the Fund to summarize the contents of multiple documents it received from other parties that MFN could obtain directly from the source.

**RESPONSE:**

Notwithstanding its Objections, the Fund states that it received waterfall analyses showing the projected impact of proposed settlements on holders of general unsecured claims. On information and belief, the Fund understands that these analyses were jointly prepared by Alvarez & Marsal, financial advisors to the Debtors, and Huron Consulting, financial advisor to the Committee.

**Question No. 46:**

Do You know if the PBGC will be reducing its allowed claim as part of any of the Proposed Settlements (if the Proposed Settlements are approved).

**RESPONSE:**

The Fund is not aware of any such agreement by PBGC to reduce its allowed claim.

**Question No. 47:**

Please review the attached Exhibit B, which are the Debtors' board minutes from October 22, 2025. The sixth page of that document, which is marked as

YELLOW_DEBTORS_CONFIRMATION_00008235, analyzes the Proposed Settlements.

Were you aware that, based upon the Debtors' calculations, all Settling MEPPs, including You, will receive less under the Proposed Settlements than they otherwise would have based upon the Court's rulings to date?

**OBJECTIONS:**

The Fund objects on the grounds that Question 47 calls for a legal conclusion and that the Bankruptcy Court's Rulings speak for themselves. The Fund further objects that the Fund was not involved in the preparation of Exhibit B and does not have knowledge of how it was prepared.

**RESPONSE:**

The Fund was not aware of the specific calculations and commentary set forth in Exhibit B. The Fund is aware that, under the Proposed Settlement, it will receive an allowed claim lower than it otherwise would have based on the Bankruptcy Court's Rulings to date. The Fund is not aware whether or not all Settling MEPPs will receive allowed claims lower than they otherwise would have based on the Bankruptcy Court's Rulings to date.

**Question No. 48:**

Pursuant to the Fourth Plan, a nominee of NYST is appointed to the board of managers of the liquidating trust established pursuant to the Fourth Plan. After November 17, 2025, have You received from the Debtors any "onboarding" or background information in connection with such appointment? If You answer yes, please identify all information received regarding anticipated litigation against MEPPs other than the Settling MEPPs.

**RESPONSE:**

No.

**Question No. 49:**

Have the Debtors requested from You consent to file the petition to the Supreme Court of the United States referenced in the Prepared Outline? Are you aware if the Debtors have requested consent from any other Settling MEPPs to file the petition to the Supreme Court of the United States referenced in the Prepared Outline?

**RESPONSE:**

No to both questions.

**Question No. 50:**

Did you ever request the Debtors to file a motion to approve Your Proposed Settlement prior to the hearing on confirmation of the Fourth Plan? If yes, when did You make such request?

**RESPONSE:**

The Proposed Settlement had not been reached prior to the hearing on confirmation of the Fourth Plan.  The Fund, however, notes that it has repeatedly urged Debtors (and other stakeholders) to move more expeditiously with respect to discussing and negotiating settlements, and providing drafts of and filing settlement agreements.

Pursuant to 28 U.S.C. § 1746 I, Kenneth R. Stilwell, declare under penalty of perjury that the foregoing Responses are true and correct.

Executed on this 5th day of January, 2026 at Syracuse, N.Y.

_____