## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3602**

WRITER'S EMAIL ADDRESS
ericwinston@quinnemanuel.com

January 11, 2025

The Honorable Craig T. Goldblatt
United States Bankruptcy Court
824 North Market Street
3rd Floor, Courtroom 7
Wilmington, DE 19801

Re:   *In re Yellow Corp., et al.*, Case No. 23-11069 (CTG) – Letter to the Honorable Judge Goldblatt from MFN Partners, LP and Mobile Street Holdings, LLC In Support of Request to Quash Subpoenas issued by New York State Teamsters Conference Pension and Retirement Fund ("Letter to Quash")

Dear Judge Goldblatt:

MFN Partners, LP and Mobile Street Holdings, LLC (together, "MFN/Mobile Street") hereby reply to the letters filed on January 9, 2026 by the Debtors [Dkt No. 8504] and New York State Teamsters Conference Pension and Retirement Fund ("New York Teamsters") [Dkt No. 8503], which were submitted in response to MFN/Mobile Street's letter to quash a Rule 31 subpoena New York Teamsters (a non-moving party) served on MFN/Mobile Street.  MFN/Mobile Street submit this reply to apprise the Court of developments since the letter was submitted on January 2, 2026 and to address New York Teamsters' misleading cited cases and statements in its response letter on what amounts to preliminary argument on the merits of whether it should be allowed a $326 million claim over the $200.6 million that is the maximum amount based on this Court's existing rulings and without regard to the pending objection to its liquidation damages claim.

Since the submission of the letter, New York Teamsters answered Rule 31 written deposition questions and MFN/Mobile Street deposed the Debtors' corporate designee (which New York Teamsters also noticed for deposition but did not ask any questions).  Tomorrow, before the hearing on the Letter to Quash, MFN/Mobile Street will be serving responses to the Debtors' interrogatories, which (in part) directly answer some of the questions New York Teamsters sought to compel.

Most significantly, the only open question concerning the Letter to Quash is whether New York Teamsters is entitled to ask depositions questions concerning "proposals, offers, and

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

demands for payment by" MFN/Mobile Street to resolve their objections to the Settling MEPP claims that occurred prior to June 11, 2025.[1] MFN/Mobile Street believes that any of its settlement communications are irrelevant to whether the Debtors' proposed settlement with New York Teamsters should be approved, but clearly anything MFN/Mobile Street believed before the Debtors abandoned the Third Amended Plan has zero relevance to what is now before this Court.

**Debtor Response**

The Debtors' helpful response bears on the dispute for several reasons. One, the Debtors note that they produced all such communications with MFN/Mobile Street since October 2025. Given that the Settlement Motion was not even filed until November 26, 2025, New York Teamsters already has anything it could ever need.

Two, the Debtors note that MFN/Mobile Street made in November 2025 (right before confirmation) a proposal to globally resolve all matters, including their confirmation objection concerns and any potential claims for substantial contribution. MFN/Mobile Street already provided New York Teamsters with the history leading up to this proposal, including matters not reflected in written communications produced by the Debtors.

Three, the Debtors state that there may be "potential relevance" to MFN/Mobile Street's settlement communications because, in prior matters, MFN/Mobile Street raised bad faith and fiduciary duties;[2] if MFN/Mobile Street assert "the Debtors are acting in bad faith or abandoning their fiduciary responsibility by agreeing to claim amounts that would exceed what the claims would be under rulings to date" [Dkt No. 8504 at 2] the Debtors believe it is fair game to response with MFN/Mobile Street's proposals. But, as MFN/Mobile Street have explained to the Debtors, they are not raising bad faith or breach of fiduciary duty as a reason to deny the proposed settlements. The forthcoming objection states this expressly. Thus, the Debtors' concern is unwarranted. The Debtors do not otherwise suggest that MFN/Mobile Street's objections to the Settlement, or the plan confirmation compromise they made prior to the confirmation hearing, were made in bad faith or in any way inconsistent with their prior positions.

---

[1] That date is significant because on June 10, 2025, at an in-person meeting at the Debtors' counsel, the Debtors, the Creditors' Committee (with the support of New York Teamsters and Central States) made settlement proposals concerning MEPP claim litigation to the other Settling MEPP Claimants and MFN/Mobile Street. New York Teamsters' counsel had repeatedly made *ad hominem* attacks on MFN/Mobile Street for neither accepting nor countering the settlement proposals even though, that day, such counsel expressly stated to MFN/Mobile Street he understood why MFN/Mobile Street had not accepted it. MFN/Mobile Street will be addressing its forthcoming objection the particular issues with the proposed settlement with New York Teamsters, including why its signaled acceptance of the June 10 proposals is not what is now before the Court.

[2] This refers to the Third Amended Plan, which gave the Settling MEPPs extraordinarily large allowed claims. This Court recently explained in its confirmation opinion was "highly favorable to the pension plans" [Dkt No. 8258 at 2] and "vastly higher that then claim amounts as they would be determined after giving effect to the Court's analysis." *id.* at 12.

**New York Teamsters**

Counsel for New York Teamsters apparently cannot help themselves but continue the pattern of misrepresenting the record. MFN/Mobile Street's counsel has expressly warned them not to do so, including earlier in the day when New York Teamsters filed their letter with this Court, but they did it anyway. Accordingly, MFN/Mobile Street must respond.

As noted above, the sole issue is whether New York Teamsters is entitled to Subject Communications prior to June 11, 2025. Their letter omits this, even though Exhibit D to the letter unambiguously shows that they were supposed to inform this Court in their letter. Instead, the letter states "[a]fter MFN filed the Letter, MFN made belated efforts to meet and confer. As a result, the scope of the parties' dispute has been narrowed, but not eliminated." This is a misrepresentation. MFN/Mobile Street did not "belatedly" seek to meet and confer. Instead, this Court set the hearing on the Letter for January 12, thus mooting out the timing issue raised in the Letter, and New York Teamsters served document requests on the Debtors, receiving settlement communications with MFN/Mobile Street in the appropriate date range (if there were any relevance). To avoid any need for any party to submit to this Court or for this Court to have address, MFN/Mobile Street asked if New York Teamsters intended to attempt to proceed with its subpoena. When New York Teamsters then asked for more information relating to what had been produced, MFN/Mobile Street provided it.

Next, New York Teamsters quote the Debtors in a response letter the Debtors sent to MFN/Mobile Street when MFN/Mobile Street requested derivative standing, at their own expense, to handle all MEPP claim objections, thus saving the estates future litigation expenses.[3] Notably, the Debtors do not make those same assertions in their letter filed on January 9, 2026. And, of course, New York Teamsters did not wait for MFN/Mobile Street's response, which MFN/Mobile Street has provided to the Debtors' counsel.[4]

New York Teamsters cites three cases for the proposition that an objecting parties' motivations can matter. Not a single one involves an estate settling a claim objection brought by another party in interest, which, consistent with this Court's stated views that the lowest point of reasonableness standard does not apply here, is why MFN/Mobile Street kept asking New York Teamsters to supply a single case. It failed to do so. *In re Reinicke*, 338 B.R. 292, 298 (Bankr. N.D. Tex. 2006), concerned a party's motivations objecting to confirmation. That clearly does not apply to a claim objection but can apply in connection with voting on a plan (*see* 11 U.S.C. § 1126(e)) and, in any event, in its confirmation opinion, this Court stated it "understands and

---

[3] Subsequent to the Debtors sending their response on derivative standing, they stipulated to facts demonstrating the close cooperation between the Debtors and MFN/Mobile Street on claim objections that has continued through this month, along with the Debtors soliciting MFN/Mobile Street's input on a number of matters notwithstanding their differences. New York Teamsters made no mention of these stipulated facts even though they were filed the night before it decided to make personal attacks on MFN/Mobile Street. These stipulated facts put to rest some of acerbic statements made in the Debtors' letter rejecting derivative standing.

[4] New York Teamsters, of course, does not explain how MFN/Mobile Street's request for derivative standing and the Debtors' response thereto has anything to do with seeking settlement communications prior to June 11, 2025. There is no relevance – it was added by New York Teamsters as part of its harassment campaign and, typical of it, ignores the facts.

appreciates Objecting Parties' concern . . . ." Dkt No. 8258 at 24.  New York Teamsters leaves this out of its citation to *Reinicke* and also leaves out that this Court noted the question "why the pension plans would have held up confirmation of the plan (and their own distributions) for many months if they did not intend to *use* their role in trust governance to serve their own individual interests." *Id.* (emphasis in original).  New York Teamsters is one the ringleaders of such pension plans.

*In re Grant Broad. Of Philadelphia, Inc.*, 71 B.R. 390 (Bankr. E.D. Pa. 1987), involved a settlement between the debtor television stations and Viacom concerning Viacom's arguments that the debtors had property belonging to Viacom.  The court permitted evidence to determine whether the debtors had engaged in collusion, naivete, "or just bad bargaining tactics." *Id.* at 394.  But the court did not consider settlement communications of the objecting parties but instead determined that through their arguments the objecting parties had "partisan agendas of wresting control of the Debtor stations from their present management to serve as an example to other entities in this troubled industry who were contemplating following the Debtors in the bankruptcy route." *Id.*  It is hard to understand how this case helps New York Teamsters because MFN/Mobile Street do not personally gain anything if the settlements are denied; all that happens is that the claims will eventually be resolved and all creditors will receive what the Fourth Amended Plan or the Bankruptcy Code provides them.[5]

*DeepRock Venture Partners LP v. Beach*, No. 16-cv-1552, 2017 WL 1293090 (N.D. Tex. Apr. 4, 2017), involved a settlement of a fraudulent transfer adversary proceeding where the objecting creditor got everything it could have received in its own litigation – waiver of a discharge against the debtor – and it was "economically irrational" for the objecting party to oppose.  No one has suggested it is "economically irrational" for MFN/Mobile Street to oppose the proposed settlements.

Recent discovery and New York Teamsters' own letter cement that its Subpoena was done in retaliation to harass MFN/Mobile Street.  In the letter, New York Teamsters admits pages 3 and 4 of its letter it was only when MFN/Mobile Street itself inquired at the December 8 deposition into New York Teamsters' discussions[6] that this purportedly waived a pre-existing agreement – a

---

[5] *Grant Broadcasting* did distinguish the facts before it from the facts in two cases, *In re Hydronic Enter., Inc.*, 58 B.R. 363, 367 (Bankr. D.R.I. 1986), where the court denied a settlement of a claim for $105,000 when the likely outcome was $10,000, and *In re Hallet*, 33 B.R. 564, 566 (Bankr. D. Me. 1983), where the court denied a settlement where the trustee "presented no evidence" to support compromise of a $154,0000 for $10,000. *Grant Broadcasting*, 71 B.R. at 399.  If New York Teamsters believes *Grant Broadcasting* is persuasive, these two cases it cited are far more on point with the settlements here.

[6] New York Teamsters continues to ignore it and MFN/Mobile Street are situated differently.  Not only is one a settling party and the other is the objecting party, but New York Teamsters has two estate fiduciary roles and is trying – through the settlement – to get releases and exculpation (in its individual capacity as well as its capacity as a fiduciary).  Further, unlike any other Settling MEPP, New York Teamsters did not allocate its $326 million settled claim among its two claims (withdrawal liability and liquidated damages) and trying to understand the parties' understanding is important.  Finally, since New York Teamsters has economically benefited from the work MFN/Mobile Street has undertaken to disallow *other* MEPP claims but New York Teamsters has not lifted a finger, MFN/Mobile Street has sought to find out if there is an undisclosed *quid pro quo* understanding among

4

deposition where New York Teamsters never objected to the scope of the topics. In other words, New York Teamsters never thought any such communications were relevant but – nine days later – served its subpoena. But then in response to Question 17 MFN/Mobile Street's Rule 31 written deposition questions, New York Teamsters stated it did not believe *any* further discovery was necessary concerning its claims. *See* New York Teamsters Ltr. at Ex. I (page 103 of 119). If no such discovery is required for any purpose, the Subpoena was served to harass. Finally, New York Teamsters served a notice of deposition the day before the January 9 deposition of the Debtors' corporate designee but never asked any questions at the deposition – it certainly could inquire into settlement communications with MFN/Mobile Street. The only reasonable inference is harassment.

Like the Debtors, New York Teamsters makes reference to MFN/Mobile Street's pre-confirmation global compromise and even tries to tell this Court some of the terms. But they leave out the most significant parts. Importantly, had that global resolution proposal been accepted, it would have been presented to this Court as part of confirmation – not a separate, stand-alone settlement of claim objections – precisely because of the need of this Court and all parties know of all of the terms. It easily could have required re-solicitation of the Fourth Amended Plan, which MFN/Mobile Street believes is one reason why it was turned down. And, while again entirely irrelevant to the proposed settlements before the Court, the allowed claims as part of that proposal were consistent with the Debtors' own settlement methodologies set forth in the Settlement Motion (including exceptions to that methodology). And ***unlike New York Teamsters***, the proposed settlement did not allow claim of Mobile Street (the only holder of claims) greater than the filed proof of claim amount – as will demonstrated in the forthcoming objection, New York Teamsters ***uniquely*** receives a settlement claim greater than what it asserted in its proof of claim.

New York Teamsters makes its usual bleating that MFN/Mobile Street have dragged out the case, now asserting that they are engaged in "objector blackmail." Given what this Court did with its Preliminary Observations in April (which significantly benefitted the economic recovery for New York Teamsters' legitimate claims) and what it wrote in its confirmation opinion regarding pension plans blocking the second amended plan, the assertion is demonstrably false and counsel should be admonished.

For the reasons set forth above, MFN/Mobile Street respectfully requests that this Court enter an order quashing the Subpoena.

Respectfully Submitted,

/s/ *Eric Winston*
Eric Winston

EW

---

the Settling MEPPs. In discovery, learned that there is in fact such an understanding among the MEPPs represented by counsel for New York Teamsters.

cc:
All registered CM/ECF users via CM/ECF
L. Katherine Good (kgood@potteranderson.com)
Nicole K. Pedi (npedi@potteranderson.com)
Maria Kotsiras (mkotsiras@potteranderson.com)
Andrew C. Ehrmann (aehrmann@potteranderson.com)