## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case No. 23-11069 (CTG) |
| YELLOW CORPORATION, *et al.*,[1] | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) | **Hearing Date:** March 17, 2026 at 10:00 a.m. (ET) |
|  | ) | **Obj. Deadline:** March 12, 2026 at 4:00p.m. (ET) |

## SUMMARY OF FINAL APPLICATION OF
## KASOWITZ LLP AS SPECIAL LITIGATION COUNSEL
## TO THE DEBTORS AND DEBTORS IN POSSESSION FOR ALLOWANCE OF
## COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED
## FOR THE PERIOD OF AUGUST 6, 2023 THROUGH NOVEMBER 19, 2025

| | |
|---|---|
| Name of Applicant: | Kasowitz LLP |
| Authorized to provide professional services to: | Debtors / Debtors in Possession |
| Petition Date: | August 6, 2023 |
| Date of Retention: | *Nunc pro tunc* to August 6, 2023 |
| Period for which compensation and reimbursement are sought: | August 6, 2023 through November 19, 2026 |
| Amount of compensation sought as actual, reasonable, and necessary for which approval is sought by this application: | $12,353,709.18[2] |
| Amount of expense reimbursement for expenses sought as actual, reasonable, and necessary | $168,278.00 |

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]  This amount incorporates the 15% discount to Kasowitz's fees consistent with its agreement with the Debtors.

Total fees approved by interim order to date:   $9,927,481.97

Total expenses approved by interim order to date:   $110,161.49

Total fees paid since retention date:   $10,507,575.50

Total expenses paid since retention date:   $131,612.15

Blended rate in this application for all attorneys:   $611.16 (after 15% discount)

Blended rate in this application for all timekeepers:   $602.07 (after 15% discount)

Number of professionals included in application period:   108

Number of attorneys billing fewer than 15 hours to the Chapter 11 case during this application period:   15 attorneys; 17 paraprofessionals

Are any rates higher than those approved or disclosed at retention:   No

This is a final application.

## COMPENSATION BY TIMEKEEPER[1]

| Professional Person | Position | Year Admitted | Hourly Billing Rate | Total Billed Hours | Total Fees Incurred |
|---|---|---|---|---|---|
| Jacob Abrams | Partner | 2013 | $1,075 | 2.40 | $2,580.00 |
| Thomas J. Amburgy | Partner | 2008 | $1,200 | 639.70 | $767,640.00 |
| Melissa Barahona | Partner | 2014 | $1,000 | 6.20 | $6,200.00 |
| Daniel R. Benson | Partner | 1981 | $2,100 | 37.80 | $79,380.00 |
| Robert W. Bosslet III | Partner | 2008 | $1,100 | 9.20 | $10,120.00 |
| Kim Conroy | Partner | 2005 | $1,300 | 65.20 | $84,760.00 |
| Joshua Fulop | Partner | 2008 | $1,050 | 1.30 | $1,365.00 |
| Michael E. Hutchins | Partner | 1983 GA | $1,200 | 2.20 | $2,640.00 |
| Marc E. Kasowitz | Partner | 1978 | $2,200 | 198.70 | $437,140.00 |
| Thomas Kelly | Partner | 2008 | $1,200 | 3.40 | $4,080.00 |
| Mark W. Lerner | Partner | 1991 | $1,250 | 1.00 | $1,250.00 |
| Albert Mishaan | Partner | 1995 | $1,425 | 1.70 | $2,422.50 |
| Constantine Pamphilis | Partner | 2016 | $942.53* | 77.50 | $73,046.00 |
| Jessica Rosenberg | Partner | 2006 | $1,175 | 0.60 | $705.00 |
| Michael D. Rosenbloom | Partner | 1987 | $1,100 | 53.40 | $58,740.00 |
| Ronald R. Rossi | Partner | 1997 | $1,350 | 957.30 | $1,292,355.00 |
| Daniel A. Saunders | Partner | 1992 CA | $608.58* | 138.10 | $84,045.00 |
| Jonathan L. Shapiro | Partner | 2009 | $504.82* | 163.00 | $82,285.00 |
| Matthew B. Stein | Partner | 2004 | $1,438* | 250.80 | $360,650.00 |
| Michael Wilson | Partner | 2004 | $883.29* | 85.10 | $75,168.00 |
| Maria Gorecki | Counsel | 1998 | $800 | 1,642.90 | $1,314,320.00 |
| Jordan Beltz | Special Counsel | 2012 | $621.06* | 22.70 | $14,098.00 |
| Lea Dartevelle | Special Counsel | 2013 | $1,025 | 850.00 | $871,250.00 |
| Nancy Kaschel | Special Counsel | 1999 | $1,075 | 568.50 | $611,137.50 |
| Jessica Sutliff | Special Counsel | 1996 | $1,075 | 1,106.50 | $1,189,487.50 |
| Saddiq Abdul | Associate | 2021 | $625 | 7.30 | $4,562.50 |
| Kristine B. Abrenica | Associate | 2020 | $725 | 92.10 | $66,772.50 |
| Paula Ajumobi | Associate | 2023 | $625 | 82.60 | $51,625.00 |
| Michele L. Angell | Associate | 2007 | $1,150 | 8.20 | $9,430.00 |
| Katrina Bader | Associate | 2022 | $625 | 56.00 | $35,000.00 |

---

[1]  Amounts in this chart do not reflect the 15% discount to Kasowitz's fees agreed to by Kasowitz and the Debtors. With the 15% discount, the blended rate is referenced in the chart is $602.07 and total fees incurred are $12,353,709.18.  Additionally, the chart marks with a "*" those attorneys who had multiple rates in the case based on agreements with the Debtors and its insurance carriers.  For those attorneys, the reflected rate is the blended rate.

| Professional Person | Position | Year Admitted | Hourly Billing Rate | Total Billed Hours | Total Fees Incurred |
|---|---|---|---|---|---|
| Sabrina Baig | Associate | 2018 | $825 | 878.10 | $724,432.50 |
| Stuart Boyarsky | Associate | 2022 | $525 | 515.60 | $270,690.50 |
| Andrew H. Elkin | Associate | 2015 | $975 | 26.50 | $25,837.50 |
| Aishling Fitzpatrick | Associate | 2021 | $675 | 8.70 | $5,872.50 |
| Paulina Flores Elizondo | Associate | n/a | $425 | 62.70 | $26,647.50 |
| Kevin J. Frank | Associate | n/a | $625 | 145.80 | $91,125.00 |
| Jordan Goldberg | Associate | 2021 | $675 | 387.50 | $261,562.50 |
| Andrew Golden | Associate | 2017 DE | $900 | 14.10 | $12,690.00 |
| Dana Haldeman | Associate | 2005 | $525 | 83.10 | 43,628.00 |
| Corey Hirsch | Associate | 2021 | $625 | 15.70 | $9,812.50 |
| Catherine Kohn | Associate | 2022 | $625 | 156.00 | $97,500.00 |
| Elson Law | Associate | 2025 | $700 | 34.50 | $24,150.00 |
| Ahmed N. Mabruk | Associate | 2023 | $625 | 101.50 | $63,437.50 |
| Matthew S. Manacek | Associate | 2016 CA | $327.70* | 11.10 | $3,637.50 |
| Kate Meulemans | Associate | n/a | $625 | 112.30 | $70,187.50 |
| Cody Paschall | Associate | 2023 TX | $563.01* | 47.20 | $26,574.00 |
| Hunter Pearl | Associate | 2022 | $625 | 95.00 | $59,375.00 |
| John Planamento | Associate | 2023 | $625 | 983.90 | $614,938.00 |
| Jonathan Pryor | Associate | 2021 | $675 | 116.30 | $78,502.50 |
| Nathan W. Richardson | Associate | 2015 TX | $922.83* | 24.00 | $22,148.00 |
| Ben Salvatore | Associate | 2023 | $625 | 353.60 | $221,000.00 |
| Monet Thomas | Associate | n/a | $625 | 35.10 | $21,937.50 |
| Angela M. Waldner | Associate | 2004 | $475 | 209.80 | $99,655.00 |
| Katheryn M. Wenger | Associate | 2025 CA | $497.86* | 327.20 | $162,900.50 |
| Yeilee Woo | Associate | 2019 | $850 | 34.00 | $11,075.00 |
| Lena Youness | Associate | 2022 | $700 | 13.30 | $9,310.00 |
| Marc Acriche | Staff Attorney | 1994 | $575 | 319.40 | $183,655.00 |
| Eric Amin | Staff Attorney | 2005 | $575 | 284.80 | $163,760.00 |
| Chaim Appel | Staff Attorney | 2010 | $450 | 333.00 | $149,850.00 |
| Benjamin J. Bakke | Staff Attorney | 2006 | $400 | 294.00 | $117,600.00 |
| Aneta Naumova Brzova | Staff Attorney | 2011 | $475 | 634.70 | $301,482.50 |
| Nerissa Coan | Staff Attorney | 2008 | $400 | 327.00 | $130,800.00 |
| Jorge Diaz | Staff Attorney | 2001 | $535 | 302.60 | $161,891.00 |
| Kurt A. Emhoff | Staff Attorney | 1997 | $550 | 123.40 | $67,870.00 |
| Monique Hardial | Staff Attorney | 2011 | $400 | 280.10 | $112,040.00 |
| Mahwash A. Jaffery | Staff Attorney | 2014 | $400 | 321.60 | $128,640.00 |
| Carlos J. Jimenez | Staff Attorney | 2010 | $400 | 226.90 | $90,760.00 |
| Jason D. Jones | Staff Attorney | 2014 | $400 | 302.30 | $120,920.00 |

| Professional Person | Position | Year Admitted | Hourly Billing Rate | Total Billed Hours | Total Fees Incurred |
|---|---|---|---|---|---|
| Janine Kapp | Staff Attorney | 2014 | $400 | 143.10 | $57,240.00 |
| Ranya Khalil | Staff Attorney | 2007 | $475 | 429.60 | $204,060.00 |
| Lorenzo E. Merlo | Staff Attorney | 2003 | $400 | 321.60 | $128,640.00 |
| Matthew Miller | Staff Attorney | 1997 | $575 | 337.90 | $194,292.50 |
| Eileen Naples | Staff Attorney | 2009 | $400 | 120.00 | $48,000.00 |
| Nancy Pokler | Staff Attorney | 2006 | $450 | 218.30 | $98,235.00 |
| Donald Pollio | Staff Attorney | 1997 | $535 | 697.20 | $373,002.00 |
| Emmanueler Quaye | Staff Attorney | 2015 | $400 | 210.00 | $84,000.00 |
| Karina Aiello Rocha | Staff Attorney | 2019 | $475 | 148.60 | $70,585.00 |
| Oladayo Sanni | Staff Attorney | 1994 | $400 | 324.70 | $129,880.00 |
| Sari Schreiber | Staff Attorney | 2020 | $400 | 144.40 | $57,760.00 |
| Izabela A. Soltys | Staff Attorney | 2015 | $400 | 289.20 | $115,680.00 |
| Melissa Uson | Staff Attorney | 2003 | $475 | 279.00 | $132,525.00 |
| Kamila Washington | Staff Attorney | 2005 | $400 | 142.40 | $56,960.00 |
| Tanyka T. Wilson | Staff Attorney | 2008 | $450 | 260.20 | $117,090.00 |
| Cecile Wortman | Staff Attorney | 2018 | $400 | 178.30 | $71,320.00 |
| Wendy Adames | Paralegal | n/a | $465 | 117.40 | $54,591.50 |
| Thomas J. Albuquerque | Paralegal | n/a | $340 | 22.70 | $3,955.00 |
| Michael Birnbaum | Paralegal | n/a | $425 | 0.60 | $255.00 |
| Oliver Buskin | Paralegal | n/a | $410 | 1.10 | $451.00 |
| Michael Cheung | Paralegal | n/a | $350 | 203.90 | $71,365.00 |
| Eduardo Garcia-Nava | Paralegal | n/a | $360 | 8.00 | $2,880.00 |
| Joyce Li | Paralegal | n/a | $310 | 82.50 | $23,900.00 |
| Sheng Mai | Paralegal | n/a | $340 | 28.40 | $9,161.50 |
| Maurcie Parmley | Paralegal | n/a | $344.17* | 4.20 | $1,445.50 |
| Myra Pedroza | Paralegal | n/a | $395 | 0.90 | $355.50 |
| Angel Rivera | Paralegal | n/a | $315 | 9.10 | $2,866.00 |
| Ethan Silberstein | Paralegal | n/a | $310 | 4.80 | $1,488.00 |
| Ayana Tyrell-Le Platte | Paralegal | n/a | $375 | 36.20 | $13,575.50 |
| Lannette Venegas | Paralegal | n/a | $360 | 52.30 | $18,828.00 |
| Joseph M. Caiazzo | Managing Attorney | n/a | $640 | 1.00 | $640.00 |
| Daniel Garcia | Managing Clerk | n/a | $235 | 1.90 | $446.50 |
| Michael Greenstein | Managing Clerk | n/a | $310 | 1.30 | $403.00 |
| Jessica Melendez | Managing Clerk | n/a | $310 | 1.70 | $527.50 |
| Jennifer A. Ortiz | Managing Clerk | n/a | $235 | 6.00 | $1,080.00 |
| Clara Schaeffer | Managing Clerk | n/a | $235 | 5.00 | $1,175.00 |
| Lisa Singh | Managing Clerk | n/a | $211.67* | 1.50 | $317.50 |
| Kevin Titland | Managing Clerk | n/a | $275* | 7.00 | $1,925.00 |

| Professional Person | Position | Year Admitted | Hourly Billing Rate | Total Billed Hours | Total Fees Incurred |
|---|---|---|---|---|---|
| Nicholas Youngblood | Managing Clerk | n/a | $255 | 2.10 | $535.50 |
| Dylan Zeiff | Managing Clerk | n/a | $235 | 0.80 | $188.00 |
| **Total** | | | | **20,518.70** | **$14,533,775.50** |
| **Discounted Blended Rate** | $602.07 | | | | **$12,353,709.18** |

**COMPENSATION BY PROFESSIONAL CATEGORY**

| Professional | Blended Rate (After 15% Discount) | Total Hours Billed | Total Compensation (After 15% Discount) |
|---|---|---|---|
| Partners | $1,080.90 | 2,694.60 | $2,912,585.78 |
| Counsel | 811.40 | 4,190.60 | $3,400,249.05 |
| Associates (including Staff Attorneys) | $449.65 | 13,033.10 | $5,860,371.33 |
| Paraprofessionals | $300.64 | 600.40 | $180,502.18 |
| **Totals** | **$602.07** | **20,518.70** | **$12,353,708.33** |

10

## COMPENSATION BY PROJECT CATEGORY

| Matter Description | TOTAL BILLED HOURS | TOTAL FEES INCURRED (BEFORE 15% DISCOUNT) |
|---|---|---|
| | | |
| Litigation | 20,129.30 | $11,867,915.05 |
| General Corporate/Administrative | 389.40 | $485,794.13 |
| | | |
| **TOTAL** | **20,518.70** | **$12,353,709.18** |

## SUMMARY OF ITEMIZED EXPENSES

| EXPENSE DESCRIPTION | AMOUNT |
|---|---|
|  |  |
| Official Records Search | $28,793.51 |
| Filing Fees | $864.30 |
| Court Costs | $225.00 |
| Process Server Fees | $1,607.06 |
| Transcripts | $1,828.00 |
| Travel Expenses | $23,918.50 |
| Local Transportation | $2,113.69 |
| Business Meals | $757.20 |
| Computer Equipment | $93.20 |
| Medical Record Copies | $925.40 |
| Professional Services | $6,876.62 |
| Automated Research | $82,604.50 |
| Document Reproduction | $16,565.12 |
| Document Delivery | $1,105.90 |
|  |  |
| **TOTAL** | **$168,278.00** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 23-11069 (CTG) |
| YELLOW CORPORATION, *et al.*,[1] | (Jointly Administered) |
| Debtors. | **Hearing Date:** March 17, 2026 at 10:00 a.m. (ET) |
| | **Obj. Deadline:** March 12, 2026 at 4:00 p.m. (ET) |

**FINAL APPLICATION OF**
**KASOWITZ LLP AS SPECIAL LITIGATION**
**COUNSEL TO THE DEBTORS AND DEBTORS IN**
**POSSESSION FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES INCURRED FOR**
**THE PERIOD OF AUGUST 6, 2023 THROUGH NOVEMBER 19, 2025**

Pursuant to sections 327, 330, and 331 of chapter 11 of title 11 of the United States Code, (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the *Order Pursuant to Sections 327(e), 328(a), and 330 of the Bankruptcy Code Authorizing the Employment and Retention of Kasowitz Benson Torres LLP, as Special Litigation Counsel to the Debtors Effective as of the Petition Date*, dated December 1, 2023 [Docket No. 1257] (the "Retention Order"), the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief*, dated September 13, 2023 [Docket No. 519] (the "Interim Compensation Order"), and Rule 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), Kasowitz LLP ("Kasowitz"), special litigation

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

counsel for the above-captioned debtors and debtors in possession (collectively, the "Debtors"),

hereby files this final application for compensation (this "Application") for: (i) compensation in

the amount of $12,353,709.18 for the reasonable and necessary legal services Kasowitz rendered

to the Debtors from August 6, 2023 through November 19, 2025 (the "Application Period");[2] and

(ii) reimbursement for the actual and necessary expenses that Kasowitz incurred, in the amount of

$168,278.00 during the Application Period.

## JURISDICTION AND VENUE

1.      The United States District Court for the District of Delaware has jurisdiction over

this Application pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court") under 28 U.S.C. § 157 pursuant to the

Amended Standing Order of Reference from the United States District Court for the District of

Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief sought herein are sections 330 and 331 of the Bankruptcy

Code, Rule 2016 of the Bankruptcy Rules, Rule 2016-1 of the Local Bankruptcy Rules, and the

*Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for*

*Retained Professionals and (II) Granting Related Relief* [Docket No. 519] (the "Interim

Compensation Order").

## BACKGROUND

4.      On August 6, 2023 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The chapter 11 cases have been

---

[2]      This amount incorporates the 15% discount to Kasowitz's fees consistent with its agreement with the Debtors.

consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169].  The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the chapter 11 cases [Docket No. 269] (the "Committee").  No trustee or examiner has been appointed in these chapter 11 cases.

5.      A detailed description of the Debtors, their businesses, and the facts and circumstances supporting this Motion and the Debtors' bankruptcy petitions are set forth in greater detail in the Declaration of *Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration").  This Application incorporates by reference the facts set forth in the First Day Declaration as if fully set forth herein.  Additional facts specific to this Application are set forth below.

6.      On September 7, 2023, the Debtors filed the *Debtors' Application Pursuant to Sections 327(e), 328(a), And 330 of the Bankruptcy Code for Entry of an Order Authorizing the Retention and Employment of Kasowitz Benson Torres LLP, as Special Litigation Counsel to The Debtors Effective as of the Petition Date* [Docket No. 418] (the "Retention Application").  The Retention Application set forth Kasowitz's disinterestedness and qualifications.

7.      On November 30, 2023, the Debtors filed the *Supplemental Declaration of Marc E. Kasowitz in Support of Debtors' Application Pursuant to Sections 327(e), 328(a), and 330 of the Bankruptcy Code for Entry of an Order Authorizing the Retention and Employment of Kasowitz Benson Torres LLP, as Special Litigation Counsel to the Debtors Effective as of the Petition Date* [Docket No. 1249].

4

8.     On December 1, 2023, the Bankruptcy Court entered the *Order Pursuant to Sections 327(e), 328(a), and 330 of the Bankruptcy Code Authorizing the Employment and Retention of Kasowitz Benson Torres LLP, as Special Litigation Counsel to the Debtors Effective as of the Petition Date* [Docket No. 1257] authorizing the Debtors' retention of Kasowitz *nunc pro tunc* to August 6, 2023.

9.     On September 13, 2023, the Bankruptcy Court entered the Interim Compensation Order.

10.     On December 8, 2023, Kasowitz filed the *First Monthly Fee Application of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Period of August 6, 2023 through August 31, 2023* [Docket No. 1325] (the "First Monthly Application").  No objection was filed to the First Monthly Application.

11.     On December 27, 2023, Kasowitz filed the *Second Monthly Fee Application of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Period of September 1, 2023 through September 30, 2023* [Docket No. 1497] (the "Second Monthly Application").  No objection was filed to the Second Monthly Application.

12.     On December 27, 2023, Kasowitz filed the *Third Monthly Fee Application of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Period of October 1, 2023 through October 31, 2023* [Docket No. 1499] (the "Third Monthly Application").  No objection was filed to the Third Monthly Application.

13.     On March 4, 2024, Kasowitz filed the *Fourth Monthly Fee Application of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the period of November 1, 2023 through November 30, 2023* [Docket No. 2516] (the "Fourth Monthly Application").  No objection was filed to the Fourth Monthly Application.

14.     On March 6, 2024, Kasowitz filed the *Fifth Monthly Fee Application of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Period of December 1, 2023 through December 31, 2023* [Docket No. 2534] (the "Fifth Monthly Application").  No objection was filed to the Fifth Monthly Application.

15.     On March 15, 2024, Kasowitz filed the *Sixth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period January 1, 2024 through January 31, 2024* [Docket No. 2629] (the "Sixth Monthly Application").   No objection was filed to the Sixth Monthly Application.

16.     On April 26, 2024, Kasowitz filed the *Seventh Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period February 1, 2024 through February 29, 2024* [Docket No. 3181] (the "Seventh Monthly Application").  No objection was filed to the Seventh Monthly Application.

17.     On May 14, 2024, Kasowitz filed the *Eighth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period March 1,*

*2024 through March 31, 2024* [Docket No. 3368] (the "Eighth Monthly Application").   No objection was filed to the Eighth Monthly Application.

18.     On July 1, 2024, Kasowitz filed the *Ninth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period April 1, 2024 through April 30, 2024* [Docket No. 3808] (the "Ninth Monthly Application").  No objection was filed to the Ninth Monthly Application.

19.     On July 15, 2024, Kasowitz filed the *Tenth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period May 1, 2024 through May 31, 2024* [Docket No. 3906] (the "Tenth Monthly Application").  No objection was filed to the Tenth Monthly Application.

20.     On August 22, 2024, Kasowitz filed the *Eleventh Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period June 1, 2024 through June 30, 2024* [Docket No. 4181] (the "Eleventh Monthly Application").  No objection was filed to the Eleventh Monthly Application.

21.     On September 17, 2024, Kasowitz filed the *Twelfth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period July 1, 2024 through July 31, 2024* [Docket No. 4352] (the "Twelfth Monthly Application").  No objection was filed to the Twelfth Monthly Application.

22.     On October 30, 2024, Kasowitz filed the *Thirteenth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period August 1, 2024 through August 31, 2024* [Docket No. 4725] (the "Thirteenth Monthly Application").  No objection was filed to the Thirteenth Monthly Application.

23.     On November 19, 2024, Kasowitz filed the *Fourteenth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period September 1, 2024 through September 30, 2024* [Docket No. 4964] (the "Fourteenth Monthly Application").  No objection was filed to the Fourteenth Monthly Application.

24.     On December 6, 2024, Kasowitz filed the *Fifteenth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period October 1, 2024 through October 31, 2024* [Docket No. 5094] (the "Fifteenth Monthly Application").  No objection was filed to the Fifteenth Monthly Application.

25.     On April 8, 2025, Kasowitz filed the *Sixteenth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period November 1, 2024 through November 30, 2024* [Docket No. 6036] (the "Sixteenth Monthly Application").  No objection was filed to the Sixteenth Monthly Application.

26.     On May 12, 2025, Kasowitz filed the *Seventeenth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the*

*period December 1, 2024 through December 31, 2024* [Docket No. 6295] (the "Seventeenth Monthly Application"). No objection was filed to the Seventeenth Monthly Application.

27.    On August 15, 2025, Kasowitz filed the *Eighteenth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period January 1, 2025 through January 31, 2025* [Docket No. 7451] (the "Eighteenth Monthly Application"). No objection was filed to the Eighteenth Monthly Application.

28.    On August 18, 2024, Kasowitz filed the *Nineteenth Monthly Fee Application of Kasowitz Benson Torres LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period February 1, 2025 through February 28, 2025* [Docket No. 7454] (the "Nineteenth Monthly Application"). No objection was filed to the Nineteenth Monthly Application.

29.    On September 4, 2025, Kasowitz filed the *Twentieth Monthly Fee Application of Kasowitz LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period March 1, 2025 through March 31, 2025* [Docket No. 7571] (the "Twentieth Monthly Application"). No objection was filed to the Twentieth Monthly Application.

30.    On September 12, 2025, Kasowitz filed the *Twenty-First Monthly Fee Application of Kasowitz LLP, Special Litigation Counsel for the Debtors and Debtors in Possession, for Allowance of Compensation and Reimbursement of Expenses Incurred for the period April 1, 2025 through April 30, 2025* [Docket No. 2629] (the "Twenty-First Monthly Application"). No objection was filed to the Twenty-First Monthly Application.

31.    This is Kasowitz's final application for compensation.  Pursuant to this Application, Kasowitz seeks final allowance of $12,353,709.18 in fees and reimbursement of $168,278.00 incurred during the Application Period.

## COMPENSATION PAID AND ITS SOURCES

32.    All services for which compensation is requested by Kasowitz were performed for or on behalf of the Debtors.

33.    During the Application Period, Kasowitz has not received any payment or promises of payment from any source other than the Debtors for services rendered or to be rendered in connection with the matters covered by this Application (nor at any time).  There is no agreement or understanding between Kasowitz and any other person, other than other employees of Kasowitz, for the sharing of compensation to be received for services rendered in the chapter 11 cases.

34.    To the extent that billable time or disbursement charges for services rendered or expenses incurred relate to the Application Period but were not processed prior to the preparation of this Application, Kasowitz reserves the right to request compensation for such services and reimbursement of such expenses in future fee applications.

## SUMMARY OF SERVICES RENDERED

35.    The "Summary" accompanying and filed with this Application contains, among other things:  (i) a summary of the services rendered by Kasowitz during the Application Period categorized by timekeeper; (ii) a summary of the services rendered by Kasowitz during the Application Period categorized by project code; and (iii) a summary of the actual and necessary costs and expenses incurred and/or disbursed by Kasowitz during the Application Period.

36.    The exhibits to the Monthly Fee Applications set forth in chronological detail the services performed by each Kasowitz timekeeper, calculated by tenths of an hour, and categorized

by project code, in accordance with the requirements of Local Rule 2016-2. The time records not previously attached to a Monthly Fee Application are attached hereto as Exhibit F.

      **A.**     **Litigation: 20,129.30 Total Hours;[3] $11,867,915.05 Total Fees (after 15% Discount)**

     37.     As set forth in greater detail in the Retention Application and First Day Declaration, prior to the Petition Date, the Debtors engaged Kasowitz to prosecute a lawsuit against the International Brotherhood of Teamsters ("IBT"), the negotiating committee ("TNFINC"), and several local unions (the "Local Unions," together with the IBT and TNFINC, the "IBT Defendants") for breaches Yellow Corporation's and its direct and indirect subsidiaries' (the "IBT Plaintiffs") collective bargaining agreements to block them from completing the "One Yellow" restructuring initiative designed to upgrade and modernize the Debtors' businesses (the "IBT Litigation"). The IBT Litigation commenced on June 27, 2023 in the U.S. District Court for the District of Kansas. The Debtors estimate the damages from the lawsuit to be conservatively measured at not less than $1.5 billion, and to be a significant potential source of recovery for creditors in these chapter 11 cases. The prosecution of this litigation on an expedited schedule required a significant amount of time and effort from Kasowitz attorneys and paraprofessionals during the Application Period.

     38.     Prior to the Petition Date, on July 20, 2023, the IBT Defendants filed motions to dismiss the IBT Litigation. After the Petition Date, Kasowitz moved for extensions of time for the

---

[3]    The majority of the work Kasowitz performed and billed for under "Litigation" relates to its work in the IBT Litigation (defined and discussed *infra*). However, Kasowitz served as counsel to the Debtors in numerous other litigation matters and regulatory and investigative prepetition, and continued to do some limited work in these matters postpetition. With respect to the litigation matters, Kasowitz's work primarily consisted of liaising with other parties and courts concerning the ongoing status of the chapter 11 cases case including with respect to the filing and the automatic stay and the filing of suggestions of bankruptcy. Kasowitz also continued to represent the Debtors in regulatory/investigative matters concerning the Coronavirus Aid, Relief, and Economic Security Act ("CARES") including with respect to an investigation by the House Committee on Oversight and Reform ("Oversight") and an investigation the Special Inspector General for Pandemic ("SIGPR").

IBT Plaintiffs to oppose the motions to dismiss, which were granted.  Kasowitz filed motions to dismiss on October 31, 2023, and performed a significant amount of work in research and drafting these motions.

39.     Initial disclosures pursuant to Fed. R. Civ. P. 26 were due on December 4, 2023. Meeting this deadline required conducting interviews and factual investigations to determine individuals likely to have discoverable information in the IBT Litigation.  This required considerable effort given the high number of individuals (35 ultimately were identified) and the fact that the Debtors were operating with a reduced workforce in light of the chapter 11 cases, and that this limited workforce had other responsibilities to address during the Application Period related to the Debtors' business and the chapter 11 cases.

40.     On December 7, 2023, the Bankruptcy Court set a highly-expedited scheduling order for discovery in the IBT Litigation, which included upcoming deadlines to serve initial written discovery on December 20, 2023 and to submit a joint protective order on December 21, 2023.  Substantial completion of discovery was due by March 1, 2024 under the scheduling order. The short timeframe during which to complete document discovery required Kasowitz attorneys and paraprofessionals to ramp up work later in December 2023 and January 2024 to ensure compliance with the IBT Plaintiffs' discovery obligations.  During these months, Kasowitz collected documents from a universe of 15 custodians and commenced document review. Responses and objections to the IBT Defendants' written discovery were served on January 26, 2024 initial document productions.

41.     On March 25, 2024, the court issued a decision granting the defendants' motions to dismiss. Discovery was ongoing at the time of dismissal. The district court had denied Defendants' request to stay discovery and had set a document production deadline of March 1, 2024.

Defendants failed to meet this deadline, and Yellow instead received substantial productions from them only days before the motion to dismiss was granted.

42.     Thereafter, at the direction of the Debtors, Kasowitz commenced work on a motion for reconsideration and for leave to amend.  On April 22, 2024, Yellow filed a post-judgment motion to alter or amend the judgment and sought leave to file a proposed amended complaint containing additional allegations based on the March document productions. The district court denied relief and denied leave to amend.

43.     Yellow appealed the denial. On November 5, 2025, the United States Court of Appeals for the Tenth Circuit reversed the district court's denial of Yellow's post-judgment motion requesting leave to amend and remanded the case to allow Yellow to submit an amended complaint and to conduct further proceedings. The Tenth Circuit held that leave to amend should have been freely given and, without deciding whether Yellow was bound to grieve its claims, that Yellow's proposed amended complaint adequately pleaded that Defendants had repudiated the NMFA's grievance process, which excused any grievance requirement.

44.     Following entry of the Tenth Circuit's decision, Kasowitz commenced work on the amended complaint, which was finalized and filed following the Application Period.

**B.     Corporate/Administrative:  389.40 Total Hours; $485,794.13 (after 15% discount)**

45.     Time billed to this matter during the Application Period included preparation for and attendance at the Debtors' board meetings, monitoring of hearings, automatic-stay related issues impacting litigation, pension withdrawal liability, as well as work on Kasowitz's retention application and fee application.  The time billed to this matter was necessary to ensure Kasowitz's effective representation of the Debtors in the IBT Litigation and the other various pending litigation, regulatory, and investigative matters referenced above.

## DISBURSEMENTS EXPENDED OR INCURRED
## DURING THE APPLICATION PERIOD

46.    In connection with the provision of the legal services detailed in exhibits to the Monthly Fee Statements and as summarized above, Kasowitz has incurred out-of-pocket disbursements during the Application Period in the amount of $168,278.00.  This amount is broken down into categories of charges, and is summarized in the chart set forth in the Summary filed as a cover herewith.  Expenses of the type requested herein are customarily charged to Kasowitz's non-bankruptcy clients.

47.    During the Application Period, Kasowitz incurred document reproduction charges. These charges are intended to cover Kasowitz's direct incremental operating costs for copying and printing, which costs are not incorporated into the Kasowitz's hourly billing rates.  With respect to in-house document reproduction expenses, Kasowitz customarily charges $.20 per page but has reduced its charge in this case to $.10 per page.

48.    Regarding providers of on-line legal research (*e.g.*, LexisNexis and Westlaw), Kasowitz charges all of its clients the standard usage rates these providers charge, which, due to contractual flat fees, may not always equal Kasowitz's actual cost.  Charging its clients the online providers' standard usage rates allows Kasowitz to cover adequately the monthly flat fees it must pay to these types of providers.

49.    Expenses for searches of official records, for which Kasowitz utilized the Public Access to Court Electronic Records ("PACER") system, were also incurred.  The Judicial Conference of the United States has established a fee to be collected for access to PACER at $.10 per page for web access.  Kasowitz bills only clients that actually utilize PACER official record searches the actual and direct cost of such searches.

50.     Expenses were also incurred for: travel; local transportation for Kasowitz attorneys and paraprofessionals rendering services late into the evening to return safely home; and mailing and document delivery.

51.     Kasowitz has made every reasonable effort to minimize its expenses in the chapter 11 cases.  The actual expenses incurred in providing professional services to the Debtors were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and other parties in interest.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

52.     Section 330 of the Bankruptcy Code provides, in pertinent part, that the bankruptcy courts may award to a professional "reasonable compensation for actual, necessary services rendered . . . ."  11 U.S.C. § 330(a)(1).  The statute further provides:

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

53.     The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citations and internal quotations omitted).

54.     In the Third Circuit, these factors are not exclusive, and bankruptcy courts can and should take into account "all relevant factors" in determining the reasonableness of the fees under the circumstances of a particular case.  *See In re Lan Assocs. XI, L.P.*, 192 F.3d 109, 123 (3d Cir. 1999) ("[W]e hold that the factors enumerated in section § 330(a) are not all-inclusive.").

55.     Additionally, courts have recognized that "[t]he 'necessary' standard in section 330 is given a broad interpretation.  Services are 'necessary' if they benefit the estate." *In re Mesa Air Grp.*, 449 B.R. 441, 444 (Bankr. S.D.N.Y. 2011) (citing *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997)).  "The test considers whether services provided were 'reasonably likely to benefit the estate' and is an objective test, considering the services that a reasonable lawyer would have performed in the same circumstances." *Id*. (quoting *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996)).

56.     Thus, in reviewing fee applications, "[h]ours for an activity or project should be disallowed only where a Court is convinced it is readily apparent that no reasonable attorney should have undertaken that activity or project or where the time devoted was excessive." *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758, 767 (Bankr. E.D.N.Y. 2005) (*In re Drexel*

*Burnham Lambert Grp., Inc.*, 133 B.R. 13, 23 (Bankr. S.D.N.Y. 1991) (internal quotation marks omitted)). "The determination of reasonableness should not be made in hindsight but as of the time when the services were rendered." *Mesa*, 449 B.R. at 444 (citing 3 COLLIER ON BANKRUPTCY ¶ 330.04[1][b][iii]).

57.     Kasowitz's compensation during the Application Period should be allowed as reasonable and necessary and in compliance with Section 330 of the Bankruptcy Code, as described in greater detail below.

### A.     Time Spent on Kasowitz's Services

58.     The "time spent" factor primarily relates to whether the time that professionals billed was "reasonable." *Beaver Bldg. Ctrs.*, 19 F.3d at 849. In making this determination, courts are tasked with determining whether time entries "reveal sufficient data to enable the Court to make an informed judgment about the specific tasks and hours allotted." *In re Zenith Labs., Inc.*, 119 B.R. 54 (Bankr. D.N.J. 1990). Kasowitz's time records, attached to the Monthly Applications, demonstrate that it maintained detailed and accurate time records that comply with Local Bankruptcy Rule 2016-1 and the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, Effective as of November 1, 2013 (the "UST Guidelines"). As discussed *supra*, the expedited nature of the litigation and the fact that the Debtors were operating with a reduced staff during the Application Period required Kasowitz attorneys and paraprofessionals to perform a large amount of work in a short amount of time to ensure compliance with the IBT Plaintiff's compliance with deadlines and obligations in the IBT Litigation. The services and nature of the work Kasowitz performed was reasonable and of the kind that would be performed by professionals and

paraprofessionals in non-bankruptcy cases, and support allowing 100% of the requested fee amounts. *See* 11 U.S.C. § 330(a)(3)(A).

**B.    Rates Charged for Kasowitz's Services**

59.    The hourly rates described in the Application are Kasowitz's normal rates for services of this kind, and lower than those which Kasowitz customarily charges in comparable bankruptcy and non-bankruptcy matters, because they are 2022 billing rates and are discounted 15% pursuant to an agreement with the Debtors. *See* 11 U.S.C. § 330(a)(3)(B).

**C.    Necessity of Kasowitz's Services to the Case**

60.    The services Kasowitz provided in connection with the IBT Litigation are critical to the Debtors' chapter 11 cases. In the IBT Litigation, the recovery of amounts that could exceed $1.5 billion will have a material impact on ultimate recoveries for the Debtors' estates and for parties in interest in these chapter 11 cases if successful. *See* 11 U.S.C. § 330(a)(3)(C). Additionally, as prepetition defense counsel on numerous other matters, Kasowitz's services were necessary after the Petition Date to ensure opposing counsel and courts were on notice of the automatic stay and to minimize unnecessary and potentially wasteful automatic stay litigation. Further, Kasowitz also continued its prepetition representation in connection with the SIGPR and Oversight regulatory and investigatory matters. Additionally, the general corporate/administrative work Kasowitz performed was necessary to ensure adequate representation in all of the litigation matters that Kasowitz handled. *See* 11 U.S.C. § 330(a)(3)(C).

**D.    Kasowitz's Completion in Reasonable Time Commensurate with Complexity, Importance, and Nature of the Task**

61.    As referenced above, to ensure that the IBT Litigation proceeded on an expedited basis (which is in the best interest of the Debtors and their estates), Kasowitz attorneys and paraprofessionals were required to expend considerable time and effort on tasks including the

18

opposition of three motions to dismiss, the compiling of initial disclosures, collecting documents, reviewing documents, drafting and responding to written discovery, and intensive document review.  Addressing these issues on an extremely compressed timeframe at a time when the Debtors are winding down and not reorganizing presented unique challenges and required a high degree of skill and precision.  *See* 11 U.S.C. § 330(a)(3)(D).

### E.      The Experience, Reputation and Ability of Kasowitz's Attorneys

62.      As outlined in greater detail in the Retention Application, Kasowitz has extensive experience in complex commercial litigation matters, as well as in labor and employment disputes such as the IBT Litigation, and in restructuring.  *See* 11 U.S.C. § 330(a)(3)(E).  Accordingly, Kasowitz had the necessary background to represent the Debtors in the IBT Litigation, to attend to ongoing bankruptcy-related administrative issues in the other matters, and to provide representation in the SIGPR and Oversight Committee investigations.

### F.      Kasowitz's Requested Compensation is Reasonable

63.      The professional services rendered by Kasowitz in during the Application Period required the continuous expenditure of substantial time and effort under time pressures.  This often required the performance of services late into the evening and over weekends.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

64.      The hourly rates described in the Application (which are 2022 billing rates and have been discounted by 15%) are commensurate with or lower than those which Kasowitz's customarily charges in comparable bankruptcy and non-bankruptcy matters.  *See* 11 U.S.C. § 330(a)(3)(F).  In the course of providing services, Kasowitz has been mindful of the importance of keeping its fees and expenses as low as reasonably possible in order to minimize the financial burden on the Debtors' estates, while fully satisfying Kasowitz's obligation to provide the Debtors

with proper legal representation as special litigation counsel.  Accordingly, Kasowitz's fees in the

chapter 11 cases are reasonable and comparable to or lower than the customary compensation

charged by comparably skilled practitioners, including Kasowitz's professionals, in comparable

bankruptcy and non-bankruptcy matters.

### UST GUIDELINES QUESTIONAIRRE

**Question:** Did Kasowitz agree to any variations from, or alternatives to, Kasowitz's
standard billing arrangements for this engagement?

**Response:**  Yes. Kasowitz and the Debtors have agreed that Kasowitz will provide the
Debtors with a 15% discount to the Firms' standard billing rates for this engagement
consistent with the parties' prepetition agreement.

**Question:** Did any of the Kasowitz professionals in this engagement vary their rate based
on the geographic location of the Chapter 11 Cases?

**Response:**  No.  The hourly rates used by Kasowitz in representing the Debtors, prior to
application of the 15% discount, are Kasowitz's 2022 billing rates and therefore lower
than the rates that Kasowitz charges other comparable chapter 11 clients, regardless of
the location of the chapter 11 case.

**Question**: If Kasowitz has represented the Debtors in the 12 months prepetition, disclose
Kasowitz's billing rates and material financial terms for the prepetition engagement,
including any adjustments during the 12 months prepetition. If Kasowitz's billing rates
and material financial terms have changed postpetition, explain the difference and the
reasons for the difference.

**Answer**: As previously disclosed Kasowitz represented certain of the Debtors during the
12 months prepetition. Kasowitz' billing rates and material financial terms have not
changed since its selection as special litigation counsel.

**Question**: Did the Debtors approve Kasowitz's budget and staffing plan, and, if so, for
what budget period?

**Answer:**  Kasowitz developed a budget for these Chapter 11 Cases in coordination with
the Debtors and the U.S. Trustee.  Because Kasowitz serves as special litigation counsel,
and fees and expenses can vary with the idiosyncrasies of ligation, Kasowitz provides the
Debtors and the U.S. Trustee 13-week budgets, updated on a weekly basis, starting with
the week ended October 6, 2023.

## RESERVATION OF RIGHTS

65.     Although every effort has been made to include all fees and expenses incurred in the Application Period, some fees and expenses might not be included in this Application due to delays caused by accounting and processing during the Application Period.  Kasowitz reserves the right to make further application to this Court for allowance of such fees and expenses not included herein.  Subsequent fee applications will be filed in accordance with the Bankruptcy Code, the Bankruptcy Rules, Local Bankruptcy Rules, and the Interim Compensation Order.

## NO PRIOR REQUEST

66.     No prior request for the relief sought in this Application has been made to this or any other court.

## NOTICE

67.     Kasowitz will provide notice of this Application to the Application Recipients as defined in the Interim Compensation Order.

*[Remainder of page intentionally left blank.]*

## CONCLUSION

WHEREFORE, Kasowitz respectfully requests that the Bankruptcy Court enter an order, allowing:  (i) compensation in the amount of $12,353,709.18 for the reasonable and necessary legal services Kasowitz rendered to the Debtors during the Application Period;[4] and (ii) reimbursement for the actual and necessary expenses that Kasowitz incurred, in the amount of $168,278.00 during the Application Period.


Dated: February 19, 2026
Wilmington, Delaware


| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436)<br>Timothy P. Cairns (DE Bar No. 4228)<br>Peter J. Keane (DE Bar No. 5503)<br>Edward Corma (DE Bar No. 6718)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19801<br>Telephone:    (302) 652-4100<br>Facsimile:    (302) 652-4400<br>Email:    ljones@pszjlaw.com<br>                tcairns@pszjlaw.com<br>                pkeane@pszjlaw.com<br>                ecorma@pszjlaw.com | Marc E. Kasowitz<br>Ronald R. Rossi<br>Matthew B. Stein<br>**KASOWITZ BENSON TORRES LLP**<br>1633 Broadway<br>New York, New York 10019<br>Telephone:    (212) 506-1700<br>Facsimile:    (212) 506-1800<br>Email:    mkasowitz@kasowitz.com<br>                rrossi@kasowitz.com<br>                mstein@kasowitz.com |

---

[4]    This amount incorporates the 15% discount to Kasowitz's fees consistent with its agreement with the Debtors.