## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Yellow Corporation, *et al.* | ) | Case Nos. 23-11069 (CTG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | Hearing Date: March 17, 2026 at 10:00 a.m. (ET) |
| | ) | Obj. Deadline: March 12, 2026 at 4:00p.m. (ET) |
| | ) | **Related Docket No. 8657** |

## INTERNATIONAL BROTHERHOOD OF TEAMSTERS AND TEAMSTERS NATIONAL FREIGHT INDUSTRY NEGOTIATING COMMITTEE'S OBJECTION TO THE  APPLICATION OF KASOWITZ, LLP, FOR ALLOWANCE OF <u>FINAL COMPENSATION</u>

### INTRODUCTION

1.    The International Brotherhood of Teamsters ("IBT") and Teamsters National Freight Industry Negotiating Committee ("TNFINC") its affiliated local unions, and its members for whom the IBT and TNFINC have filed proofs of claims (collectively, "Teamsters"), by and through their undersigned counsel, hereby files this objection to Kasowitz, LLP's[1] ("Kasowitz Firm") Final Application for Allowance of Compensation and Reimbursement of Expenses ("Final Fee Application"). [D.I. 8657]. The Teamsters are creditors in their capacity as the exclusive bargaining representatives of these employees, who are also creditors in their own right. *U.S. Truck Co. v. Teamsters*, 89 B.R. 618, 621-623 (E.D. Mich. 1988) (holding that a labor union is the creditor which owns claims arising under the collective bargaining agreement); *See also In re Altair Airlines, Inc.*, 727 F.2d 88 (3d Cir. 1984).  As shown by the proofs of claim filed with the Court, individual members of the Teamsters currently hold general unsecured claims (excluding WARN

---

[1] Formerly known as Kasowitz Benson Torres, LLP. *See Notice of Firm Name Change For Retained Professional*, D.I. 7569.

Act claims subject to appeal) that exceed the $7,500 cap for Class 4A of the Debtors' Plan of Reorganization.[2] [D.I. 8229].

2.      Teamster members' recoveries from the Plan therefore will be directly affected by whether excessive attorneys' fees are awarded to the Kasowitz Firm pursuant to its fee application.

3.      Pursuant to 11 U.S.C. §330(a)(4)(A), a court shall not allow compensation to a professional person for performing services that were not reasonably likely to benefit the debtor's estate. Under §330, a Bankruptcy Court may not award compensation for legal services that were neither reasonably likely to benefit the debtor's estate nor necessary to the administration of the case. *In re Jade Management Services*, 386 Fed. Appx. 145, 151 (3d Cir. 2010); *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 131 (3d Cir. 2000), *abrogated on unrelated grounds by Lamie v. U.S. Trustee*, 124 S. Ct. 1023 (2004). *In re Hosp. Partners of Am., Inc.*, 597 B.R. 763, 766 (Bankr. D. Del. 2019) (Court will review whether, at the time the services were *rendered*, they were reasonably likely to benefit the estate). Under this test, even when a law firm was approved for retention by the Bankruptcy Court to provide services to the estate, its application for compensation should be denied altogether when the law firm cannot demonstrate that its services were reasonably likely to benefit the estate. *In re Top Grade Sausage*, 227 F.3d at 132.

4.      The burden of proof as to the reasonableness of the requested compensation lies with the applicant. *In re Sounds Distributing Corp.*, 122 B.R. 952, 956 (Bankr. W.D. Pa. 1991). Importantly, the burden of proof to show entitlement to the requested fees should not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is

---

[2] For example, Thomas McIntosh holds a General Unsecured vacation claim against YRC Inc. in the amount of $10,189.57 while Michael Shifflet holds a General Unsecured vacation claim against YRC Inc. in the amount of $13,598.44. (See Claim #17248 by IBT and TNFINC against YRC, Inc. (23-11087) p. 396-397).

available for distribution to creditors. *In re Spanjer Brothers, Inc.*, 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996).

5.    For the reasons stated below, the Kasowitz Firm has failed to meet its burden of demonstrating that the Debtors' pursuit of litigation against the Teamsters has currently or ever had a reasonable chance of success that outweighed the costs of pursuing the action.[3] The Court should either defer ruling on Kasowitz Firm's fee application, or reduce it for the reasons stated in subsections B. through D. below.

## FACTS

6.    Since June 27, 2023, Yellow Corporation has pursued a lawsuit against the IBT, TNFINC, and several Teamster Local unions. *Yellow Corporation et al. v. International Brotherhood of Teamsters et al.*, Case No. 23-cv-01131, D.I., (D. Kan.). Yellow filed its Second Amended Complaint on July 19, 2023. *Yellow Corporation et al.*, Case No. 23-cv-01131, D.I. 21 (D. Kan.). The Teamsters filed a Motion to Dismiss for failure to state a claim on July 20, 2023. *Yellow Corporation et al.*, Case No. 23-cv-01131, D.I. 29 (D. Kan.).  The Debtors filed a motion to retain the Kasowitz Firm as Special Litigation Counsel to the estate on September 7, 2023. D.I. 418. The Kansas District Court granted the Teamsters' Motion to Dismiss  Yellow's Complaint on March 24, 2024. *Yellow Corporation et al.*, Case No. 23-cv-01131, D.I. 109 (D. Kan.).[4]

7.    Roughly one month after the case dismissal, the Kasowitz Firm filed with the Kansas District Court both a Motion to Alter or Amend Judgment and for Relief from Judgment

---

[3] Notably, just because the Debtors can plead a plausible claim that the Teamsters repudiated Article 8 of the NMFA does not demonstrate it had a reasonable basis for believing it can prove the facts that are needed to support that thesis. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (A Complaint can state a claim to relief that is plausible on its face, even though it strikes a savvy judge that actual proof of the facts alleged is improbable).

[4] Before responding to the Teamsters Motion to Dismiss, Yellow first attempted to transfer the litigation to the District of Delaware Bankruptcy Court. Case No. 23-cv-01131, D.I. 47-48 (Filed on August 18, 2023). The Judge denied the Motion to Transfer on October 12, 2023 (D.I. 57) stating, "there is also evidence of forum shopping given the procedural timeline."

and a Motion for Leave to File the Proposed Second Amended Complaint. *Yellow Corporation et al.*, Case No. 23-cv-01131, D.I. 111-114, filed on April 22, 2024 (D. Kan.). The Teamsters responded in opposition on May 20, 2024 (D.I. 125-128) and Yellow replied on June 10, 2024. *Yellow Corporation et al.*, Case No. 23-cv-01131, D.I. 129-131 (D. Kan.). The District Court denied the motions on July 15, 2024. *Yellow Corporation et al.*, Case No. 23-cv-01131 D.I. 132 (D. Kan.). The Kasowitz Firm filed notices of appeal of the dismissal of Yellow's Complaint on August 12, 2024. *Yellow Corporation et al.*, Case No. 23-cv-01131, D.I. 133 (D. Kan.). Debtors submitted their opening appeal brief to the 10th Circuit on October 7, 2024. *Yellow Corporation et al. v. International Brotherhood of Teamsters et al.*, Case No. 24-3111, D.I. 23. Teamsters filed their Brief in Opposition on November 6, 2024 (D.I. 31). *Yellow Corporation et al.*, Case No. 24-3111 (10th Cir.). Debtors' filed their reply appeal brief on November 27, 2024. On July 18, 2025, the 10th Circuit issued a notice of oral argument for September 9, 2025 (D.I. 39). *Yellow Corporation et al..*, Case No. 24-3111. After oral argument, the 10th Circuit reversed and remanded the matter back to the District of Kansas on the sole ground that the District Court should have allowed Yellow to file an amended complaint. *Yellow Corporation et al.*, Case No. 24-3111 (D.I. 47). Yellow filed their Second Amended Complaint in the District of Kansas on December 23, 2025. Case No., 23-cv-01131, D.I. 143.

## ARGUMENT

A.    <u>The Court Should Defer Ruling on the Kasowitz Firm's Fee Application</u>.

8.    Bankruptcy courts can exercise their discretion to defer ruling on final fee applications. *See, for example, In re Value City Holdings, LLC*, 436 B.R. 300, 303-304 (Bankr. S.D.N.Y. 2010). Similarly, when a fee application fails to explain how services provided benefited the Debtors and the estate, the Court can deny the fee application with leave to refile. *In re*

*Aquamarine USA, Inc.*, 2007 WL 4707546 * 2 (Bankr. M.D. Fla. April 12, 2007) (Denying fee application with leave to refile where Applicant fails to explain how services provided benefited the Debtor and the estate).  Here, the Kasowitz Firm's Final Application for Compensation has failed to demonstrate how the hours and expenses that it has billed for litigating the Debtors' dispute against the Teamsters in the District of Kansas and the 10th Circuit have benefited the estate. The Teamsters maintain that after discovery, the Debtors will not be able to recover any proceeds for the estate through the lawsuit against the Teamsters.

9.    To explain why its services related to the litigation against the Teamsters are necessary, the Kasowitz Firm only relies on the amount of recovery that its lawsuit seeks against the Teamsters. [D.I. 8657, ¶60]. However, the amount sought by the litigation, by itself, does not demonstrate that pursuing the litigation is reasonable, Futile efforts aimed at achieving unattainable objectives are unreasonable. *In re Saturley*, 131 B.R. 509, 521 (Bankr. D. Me. 1991). After all, an attorney should only proceed with a legal service for an estate if the potential benefit of the service, which takes into consideration its chances of success, outweighs the service's cost. *In re APW Enclosure System, Inc.*, 2007 WL 3112414 * 3-4 (Bankr. D. Del. 2007); *See In re Mattera*, 128 B.R. 107, 115 (Bankr. E.D. Pa. 1991) (Court refused to award any fees incurred to pursue vague, unproven allegations that three sets of Defendants were involved in conspiratorial, concerted action to commit fraud); *In re Saturley*, 131 B.R. at 521 (Bankr. D. Me. 1991) (Fees generated in tilting at windmills will be disallowed).

10.    Over two and a half years since the Court authorized the retention of the Kasowitz Firm as Special Litigation Counsel to the Debtors,[5] the Kasowitz Firm has requested millions of

---

[5] When referring to pre-petition events (before August 6, 2023) the Teamsters will refer to Yellow Corporation and its subsidiaries as "Yellow." When referring to  post-petition events (on and after August 6, 2023) the Teamsters will refer to Yellow Corporation and its subsidiaries as "Debtors."

dollars of attorneys' fees and costs from the estate. The only thing the Debtors can show for deploying the Kasowitz firm against the Teamsters these past nearly three years is that they have finally made it to the discovery phase after filing their Second Amended Complaint on December 23, 2026.  Notably, as advisor to the Debtors, Brian Whitman, stated in his testimony regarding the Fourth Amended Plan of Reorganization, even in the Debtors' view the litigation against the Teamsters "does not open up a clear path to value, to recovery… there's still a lot of question as to what the value of that claim is." D.I. 8199, p. 112 ¶¶6-9. The Kasowitz Firm is asking the Court to approve multiple millions of dollars of fees and costs for its services in a litigation proceeding that has not yet and  which the Teamsters maintain will not ever recover a penny for the Debtors' estate.

11.    Compensation should only be awarded to attorneys for unsuccessful actions pursued on behalf of the Estate when there was a reasonable chance of success which outweighed the costs of pursuing the action. *In re Jefsaba, Inc.*, 172 B.R. 786, 799 (Bankr. E.D. Pa. 1994). Moreover, in this case, pursuing the litigation against the Teamsters may harm other creditors, especially unsecured creditors, because the Teamsters filed unfair labor practice charges against the Debtors, asserting that the lawsuit is retaliatory and violates 29 U.S.C. §158(a) of the National Labor Relations Act. (*Yellow Corporation,* NLRB Case No. 10-CA-320962). Unfair Labor Practice proceedings can result in an award of attorneys' fees in favor of the Teamsters and against the Debtors, for which the National Labor Relations Board has timely filed proofs of claim with the Court.  (Claims No. 19409, 19411, 19412, 19414).  For these reasons, the Court should not award any attorneys' fees to the Kasowitz Firm for the fees and costs of the litigation against the Teamsters, unless and until it can show the litigation had a reasonable chance of success which outweighed the multiple millions of dollars that the Kasowitz Firm is seeking to charge the estate for pursuing the claim.

B.    The Kasowitz Firm Failed to Exercise Its Billing Judgment to Reduce the Number of Hours Billed to Account for Its Overstaffing of the Litigation against the Teamsters.

12.    As the Third Circuit has explained, the court should review a fee application to ensure the applicant exercises the same "billing judgment" as do non-bankruptcy attorneys by, for example, writing off unproductive research time, duplicative services, redundant costs precipitated by overstaffing, or other expenses with regard to which the professional generally assumes the cost as overhead in corresponding non-bankruptcy matters, or for which analogous non-bankruptcy clients typically decline to pay. *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 855 (3d Cir. 1994). Included in reasonable billing judgment is the expectation that attorneys are responsive to the changing tides of the case and the likelihood of recovery for the estate. *In re Cal Dive Int'l, Inc.*, No. 15-10458 (CSS), 2015 WL 9487852, at *3 (Bankr. D. Del. Dec. 28, 2015) citing *In re Kitchen Factors, Inc.*, 143 B.R. 560, 562 (B.A.P. 9th Cir. 1992). Estate attorneys must scale back their services based on the reasonable expected recovery for the estate, not the potential optimum recovery. *Id*. Hours that were not reasonably expended because a law firm overstaffed a case therefore should be excluded when computing a reasonable fee. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). One shorthand way that courts from within the Third Circuit have used to measure whether a case was overstaffed, so that hours were not reasonably expended is by measuring how many hours were billed to prepare each page of a brief, and how many hours were billed to prepare for each hour of a hearing. *Coal. to Save Our Child. v. State Bd. of Educ. of State of Del.*, 901 F. Supp. 824, 831 (D. Del. 1995) (spending 602.2 hours to prepare 63 pages for a brief is unreasonable); *Americans for Prosperity v. Grewal*, 2021 WL 1153194 *9 (D.N.J. March 26, 2021) (Spending 203 hours to prepare for a two-hour preliminary injunction hearing that four attorneys attended is unreasonable).

13.     As a first example of the Kasowitz Firm's overstaffing and lack of billing judgment, in May of 2024 alone 10 different attorneys (Baig, Gorecki, Planamento, Salvatore, Dartevelle, Boyarsky, Sutliff, Kasowitz, Ambrenica, and Amburgy) combined to spend more than 330 hours working on the Debtors' reply briefs in support of its Motion for Reconsideration and Motion for Leave to Amend its Complaint in the District of Kansas. D.I. 3906-5, p. 11-25. In June of 2024 the Kasowitz Firm billed an additional approximately 200 hours spent by 13 attorneys (Kasowitz, Planamento, Salvatore, Abrenica, Gorecki, Sutliff, Amburgy, Rossi, Benson, Frank, Boyarsky, Dartevelle, and Pollio) working on the same two reply briefs between June 1 and June 10, 2024. D.I. 4181-6, p. 9-15. The two reply briefs filed by the Debtors included approximately 10 pages of substantive argument each. *Yellow Corporation, et al., v. International Brotherhood of Teamsters, et al.*, Case No. 23-cv-01131, D.I. 129-131, Filed on June 10, 2024 (D. Kan.). By overstaffing the case so that the attorneys spent time performing duplicative research, attending meetings, and reviewing each other's research memorandums, the Kasowitz Firm managed to bill the Estate more than 530 hours for working on no more than 20 pages of substantive argument, or 26.5 hours per page.

14.     Even more egregious is a second example, wherein the Kasowitz Firm billed the Estate for 948.2 hours worked by 12 different attorneys (Sutliff, Dartevelle, Gorecki, Baig, Planamento, Goldberg, Mabruk, Boyarsky, Ross, Pollio, Kasowitz, and Benson) in November of 2024, for their Appellate reply brief to the Tenth Circuit Court of Appeals. D.I. 6036-5, p. 10-27. The 948.2 hours billed amounts to approximately $800,000. *Id*. An appellate reply brief may not exceed 15 pages or 6,500 words. Fed. R. App. P. 32(7). Reply briefs are optional. Fed. R. App. P. 28(c). The Debtors' brief spanned approximately 27 pages and included 6,461 words. *Yellow Corporation et al., v. International Brotherhood of Teamsters, et al.*, Case No. 24-3111, D.I. 35,

Filed On Nov. 27, 2024 (10th Cir.). The Kasowitz Firm therefore charged the estate approximately 35 hours for each page of its brief, and more than $120 for every single word in its reply brief.

15.     Equally egregious is the amount of time that the Kasowitz Firm spent in August and September of 2025 to prepare for oral argument before the 10th Circuit.  Between July 3, 2025 and September 8, 2025, nine different attorneys (Kasowitz, Dartevelle, Gorecki, Sutliff, Planamento, Waldner, Haldeman, Rossi, and Boyarski) billed the estate more than 700 hours in preparation for an oral argument that lasted for a single hour. [D.I. 8657-7, p. 4-19]; *see also Yellow Corporation et al.*, Case No. 24-1113,  D.I. 46, Filed on Sept. 9, 2025 (10th Cir.,) (Court provided link to oral argument, lasting 54 minutes). Just as egregiously, the Kasowitz Firm billed the estate for time spent by 9 different attorneys to review the Tenth Circuit's decision on November 5 and 6, 2025. D.I. 8657-7, p. 19-20.

16.     Overstaffing or duplicative work product is not reasonably charged to an estate. *See generally In re Spanjer Brothers, Inc.*, 191 B.R. at 749; *see also Matter of Liberal Mkt.*, *Inc.*, 24 B.R. 653, 665 (Bankr. S.D. Ohio 1982) (Where multiple professionals charged a Debtor's estate for communication between each other, review of each other's work product, and travel and attendance at the same hearings, each fee application was reduced by one half the hours charged in regard to those matters). In this case, the Kasowitz Firm billed the estate for time that attorneys spent communicating with each other. For example, six Kasowitz attorneys billed the Estate 2.2 hours each for attending a meeting on September 3, 2025. [D.I. 8657-7, p. 16]. The Kasowitz Firm also billed for time that its attorneys spent reviewing each other's work. For example, eight different attorneys (Rossi, Sutliff, Gorecki, Boyarski, Dartevelle, Planamento, Kasowitz, and Amburgy) reviewed the reply briefs that the Debtors filed in June of 2024. [D.I. 4181-6, p. 8-12]. The Kasowitz Firm also charged the Estate for multiple attorneys attending the same hearing, such

as five different attorneys (Rossi, Kasowitz, Dartevelle, Boyarski, and Planamento) attending the 10th Circuit Oral Argument.[ D.I. 8657-7, p. 19]. As a result of these and other duplication of services (which in some cases will be difficult for the Court to detect because of the brevity of the descriptions of tasks performed) the Kasowitz Firm is charging the estate for more than 30 hours per page of briefs filed and more than 700 hours to prepare for an oral argument that only lasted for a single hour.

17.     Courts are not required to conduct a line-by-line review of time entries so long as they apply reasoned judgment based on the record. *In re Busy Beaver*, 19 F.3d at 846-847. Even if the Court decides to award some fees to Kasowitz for working on the litigation against the Teamsters, the lack of billing judgment and duplicative and/or excessive work outlined above warrants reducing Kasowitz's fees by at least 30 percent

  C. <u>The Kasowitz Firm Improperly Billed The Estate For Clerk's Work At Attorney Rates</u>.

19.     When an experienced attorney does clerk's work, he or she should be paid clerk's wages." *In re Busy Beaver*, 19 F.3d at 855; *see also Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). (Courts do not "approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates.") For instance, in *Americans for Prosperity v. Grewal*, the court admonished a partner for spending several hours "reviewing the docket," a task which could have been delegated to a less experienced colleague. 2021 WL 1153194, at *4 (D.N.J. Mar. 26, 2021). In that case, the court treated the work of reviewing the docket as paralegal work and therefore approved fees for the attorney's time for reviewing the docket at paralegal rates.

20.     Just the first two pages of billing entries in the Kasowitz Firm's Final Fee Application show the following entries of clerk's work that were billed at much higher attorney

rates: Reviewing the 10th Circuit's Calendar, reviewing docket entries, conferring on oral argument logistics, and preparing 10th Circuit Calendar Acknowledgement Forms. [D.I. 8657-7, p. 5-6]. All of these are routine matters that should be billed at paralegal rates at best, rather than at attorney rates of $800 per hour or higher. The Court should therefore order a further reduction of the Kasowitz Firm's applied for fees to account for attorneys performing clerical or paralegal work.

        D.       <u>The Kasowitz Firm Is Billing For Hours And Expenses That Should Not Be Charged To The Estate</u>.

       21.      While Courts allow attorneys to bill the estate for some time spent preparing fee applications, the amount of hours billed cannot be excessive. As a rule of thumb, the petitioned amount of fees for time spent preparing fee applications should not exceed 5% of the amount of fees being petitioned for. *In re Mesa Air Group, Inc.*, 449 B.R. 441, 445 (S.D.N.Y. 2011). Time spent reviewing other lawyers' billing records is administrative and therefore is not chargeable to the estate. *In re Jeffrey*, 2023 WL 7220759 * 8 (Bankr. E.D. Pa. Nov. 2, 2023).

       22.      Numerous fee applications that the Kasowitz Firm has submitted, such as the Seventeenth [D.I. 6295], Eighteenth [D.I. 7451], Nineteenth [D.I. 7454], and Twenty-First [D.I. 7601] Monthly Application for Fees violated both of these rules. In the Twenty-First Application, for example, the total amount of fees billed was $12,595. [D.I. 7601, p. 2] Attorney Stein billed for 4.4 hours at $1,450 per hour related to the fee application, including 1.2 hours spent reviewing the invoice, 1.9 hours spent preparing the fee application, and 1.3 hours that were simply billed as "Attn to monthly fee statement." [D.I. 7601-5, p. 5-6] Time spent by Attorney Stein reviewing the invoice, i.e., the billing records of other attorneys, is non-chargeable. The total amount of fees that the Kasowitz Firm is seeking for time spent preparing the fee application, $6,380, exceeds one half of the total amount sought by the fee application.

23.     Even when the Kasowitz Firm submitted more substantial fee applications, it still improperly billed for time spent by Attorney Stein to review other attorney's billing invoices. See for example entries for August 8, 2025 ("reviewing monthly invoice") and September 15, 2025 ("Review May Invoice"). [D.I. 8657-7, p. 25-26].

24.     Next, the Kasowitz Firm billed the estate for media work, such as work related to a Fox News appearance dated August 7, 2023 [D.I. 1325-3, p. 25] (billing entries for Kasowitz and Rossi); time spent that was generally billed as time related to media [D.I. 1325-3, p. 27] (billing entry for Kasowitz for August 9, 2023); time spent preparing press releases [D.I. 3181-5] (billing entry for Rossi for February 4, 2024); and time spent preparing press releases for Kasowitz's own website. [D.I. 657-7, p. 20] (Dartevelle time entry for November 5, 2025). The Kasowitz Firm has not provided the Court with any explanation for how any of these media related services benefited the Debtors' estate; and therefore, have failed to meet their burden of demonstrating that the sought compensation is reasonable.

25.     Next,  each time a firm changes the professionals working on a particular matter, the estate should not bear the burden of the new addition's learning curve. *In re Jefsaba, Inc*., 172 B.R. at 801. The Kasowitz Firm, however, is charging the estate for the costs of bringing new members of its litigation team up to speed.  Its billing entries for January of 2024, for example, include entries for email correspondence to on-board new members (Salvatore, 1/8/2024); time spent by a new attorney to review background materials (Sutliff and Dartevelle, 1/9/2024); time reviewing case background materials (Sutliff, 1/11/2024); and time spent by 8 different lawyers to attend a meeting to bring the new team members up to speed on January 9, 2024. [D.I. 2629-6, pg. 9-13]. Evident in the Kasowitz Firm's Final Fee Application is that it utilized 108 timekeepers in representing the Debtors as compared to its approximately 200 total attorneys employed at the

firm. Thirteen of the timekeepers listed in the Final Fee Application billed less than 2 hours on any matter.

26.     Finally, routine expenses that Kasowitz has incurred, including the costs of ordinary transportation, should not be billed to the estate. *In re Jefsaba, Inc.*, 172 B.R. at 803 (Bankr. E.D. Pa. 1994).  Local car service transportation for Kasowitz attorneys in the evening constitutes ordinary travel between work and home and therefore should not be billable to the estate.

## CONCLUSION

For these reasons, the Teamsters respectfully ask the Court defer ruling on the Kasowitz Firm's Final Fee Application related to the Debtors' litigation against the Teamsters  unless and until the Kasowitz Firm can explain to the Court why the litigation has a reasonable chance of success, after taking into account the multiple millions of dollars that the Kasowitz Firm is seeking from the Debtors to fund the litigation. Alternatively, the Court should reduce the Kasowitz Firm's fees by at least 30 percent, to account for its over-staffing and lack of billing judgment; and make additional more modest adjustments to the billings and expenses pursuant to the arguments advanced in subsections C. and D. above.

Dated: March 12, 2026                LAW OFFICE OF SUSAN E. KAUFMAN, LLC

*/s/ Susan E. Kaufman*
Susan E. Kaufman, (DSB# 3381)
919 North Market Street, Suite 460
Wilmington, DE 19801
(302) 472-7420
(302) 792-7420 Fax
skaufman@skaufmanlaw.com

-and-

Yingtao Ho (WI Bar No. 1045418)
Emma Woods (WI Bar No. 1120187)
THE PREVIANT, LAW FIRM, S.C.
310 W Wisconsin Ave, Suite 100MW
Milwaukee, Wisconsin 53203
Telephone: 414.271.4500
Facsimile: 414.271.6308
emw@previant.com
yh@previant.com

*Counsel for International Brotherhood of Teamsters
and Teamsters National Freight Industry Negotiating
Committee*