**Exhibit B**

**Reply**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**REPLY IN SUPPORT OF FINAL FEE APPLICATION OF
KASOWITZ LLP AS SPECIAL LITIGATION COUNSEL TO THE
DEBTORS AND DEBTORS IN POSSESSION FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED
FOR THE PERIOD OF AUGUST 6, 2023 THROUGH NOVEMBER 19, 2025**

Kasowitz LLP ("Kasowitz"), special litigation counsel for the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby files this reply in support of its final application for compensation, dated February 19, 2026 [ECF No. 8657] (the "Kasowitz Final Fee Application") and in response to the *Objection to the Application of Kasowitz LLP for Allowance of Final Compensation*, dated March 12, 2026 [ECF No. 8720] (the "Teamsters Objection") filed by the International Brotherhood of Teamsters and Teamsters National Freight Industry Negotiating Committee (the "Teamsters"), and respectfully represents as follows:

1. Despite Kasowitz consensually resolving or receiving no objection to its fees throughout the pendency of these chapter 11 cases, the Teamsters, against whom Kasowitz remains in active litigation on behalf of the Debtors' estates, filed their objection to the Kasowitz Final Fee Application asserting that the work incurred was not reasonably likely to benefit the Debtors' estates rendering the requested fees unreasonable. While it is rational for the Teamsters not to like

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

the litigation that Kasowitz is successfully prosecuting against them, the Teamsters' distaste for the Debtors' reinstitution of a 93-page complaint against them following the Tenth Circuit's revival of the action is not grounds to object to Kasowitz's fee application.

2. There is no question that the commencement and continued litigation against the Teamsters has been and continues to be a reasonable exercise of the Debtors' business judgment. As noted in Matthew Doheny's first day declaration filed in these chapter 11 cases, one of the precipitating causes of the bankruptcy was the "severe liquidity crisis orchestrated by the International Brotherhood of Teamsters . . . General-President Sean O'Brien and carried out by Union leadership who acted at all times at his behest and direction. For more than nine months leading up to today, Mr. O'Brien and other senior Union leadership caused the Union to engage in a series of egregious breaches of Yellow's collective bargaining agreement designed to block Yellow from completing One Yellow, which was a vital strategic initiative that Mr. O'Brien and other Union senior leadership knew and understood was absolutely critical to Yellow's survival and future success." *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, In Support of the Debtors' Chapter 11 Petitions and First Day Motions*, dated August 7, 2023 [ECF No. 14] at ¶ 2.

3. As a result of this conduct prior to commencement of these cases, on June 27, 2023, with the approval of its board of directors, Yellow sued the Teamsters, its negotiating committee, and several local unions in the U.S. District Court for the District of Kansas, alleging that those parties had breached the collective bargaining agreement. The lawsuit seeks $137 million in damages, as well as the loss of Yellow's enterprise value which it estimates at approximately $1.5 billion.

4. At all times since then, Kasowitz has pursued the litigation under the supervision and direction of the Debtors' board and its chief restructuring officer, consistent with the Debtors' restructuring and value-maximizing objectives.

5. A brief summary of Kasowitz' work on the litigation during the application period, all of which the Teamsters are keenly aware of, is as follows:

- Yellow asserted two claims for breach of contract based on breaches of the collective bargaining agreement that governed the relationship between Yellow and its Teamsters employees. Briefly stated, Yellow's breach of contract claims are predicated on the intentional obstruction of Yellow's endeavor to modernize its operations and merge its subsidiaries in a multi-phase enterprise-wide initiative called "One Yellow." The complaint included numerous specific public statements made by Teamsters General President Sean O'Brien to malign and ultimately to destroy Yellow's business.

- Following the commencement of the Debtors' bankruptcy cases, Kasowitz continued representing Yellow in its lawsuit against the Teamsters. Kasowitz attorneys did extensive research and drafting to oppose the two motions to dismiss filed by defendants. Also during this time, Kasowitz prepared briefing as part of Yellow's motion to transfer the action from Kansas District Court to consolidate it with the ongoing bankruptcy proceedings in Delaware Bankruptcy Court. Judge Robinson denied the motion to transfer in October 2023.

- Discovery was not stayed while the motions to dismiss were *sub judice*, and during that period, Kasowitz: (i) prepared and served initial disclosures; (ii) prepared and served requests for production; (iii) prepared and served third-party subpoenas; (iv) reviewed and analyzed tens of thousands of Yellow's internal documents for productions made to the defendants from January to March 2024; (v) raised disputes with defendants regarding their tardy and inadequate productions of documents, via correspondence and videoconferences with defense counsel; (vi) successfully opposed the defendants' motion to stay discovery; (vii) raised defendants' delaying tactics with the court at a discovery hearing; (viii) reviewed and analyzed defendants' document productions; (ix) prepared responses and objections to the defendants' requests for production; (x) scheduled and began preparing for fact witness depositions, which were scheduled to begin in April 2024; and (xi) did work in connection with expert witnesses.

- On March 25, 2024, Judge Robinson granted the Defendants' Motions to Dismiss and simultaneously entered judgment against the Debtors. Kasowitz determined that the order rested on legally faulty grounds, and researched and prepared: (i) a Motion to Alter or Amend Judgment and For Relief From Judgment and Order ("Motion for Reconsideration"); (ii) a Motion to Amend Scheduling Order and For Leave to File Proposed Second Amended Complaint; and (iii) a proposed Second Amended Complaint. As part of these efforts, Kasowitz continued to review and analyze

- defendants' document productions and discovered critical documents supporting Yellow's allegations that the IBT orchestrated a breach of the NMFA, including minutes of an IBT General Executive Board meeting that showed the IBT specifically resolved to obstruct Yellow's implementation of its One Yellow initiative. Kasowitz revised Yellow's complaint to strengthen its claims and include new allegations predicated on its document review and analysis. Briefing on these motions, including reply briefs prepared by Kasowitz, was concluded on June 10, 2024. Judge Robinson denied the Motion for Reconsideration on July 15, 2024.

- Kasowitz appealed the district court's orders to the Tenth Circuit Court of Appeals, based on the district court's errors in dismissing Yellow's claims and in denying the motion for leave to amend the complaint. Work on this appeal entailed extensive legal research, drafting a fifty-five page opening appellate brief and twenty-seven page reply brief, and the preparing of a thirteen volume accompanying appendix. Kasowitz filed Yellow's opening appellate brief in October 2024 and the reply brief in November 2024. The Tenth Circuit set oral argument on Yellow's appeal for September 9, 2025. In the lead-up to this argument, Kasowitz updated and conducted more legal research pertinent to the issues on appeal, prepared documents for oral argument preparation and use during the argument, including case summaries, summaries of arguments, anticipated questions from the bench and formulated proposed responses, and met in groups to moot the oral argument. A team of three Kasowitz lawyers attended the oral argument in Denver, Colorado.

- Kasowitz's thorough and diligent work on the appeal was vindicated when, on November 5, 2025, the Tenth Circuit issued a detailed order that unanimously reversed the district court's denial of Yellow's motion to alter or amend the judgment and its motion for leave to amend the complaint, and remanded the case back to the district court, with leave for Yellow to amend its complaint.

6. Although subsequent to the application period relevant to the Kasowitz Final Fee Application, Kasowitz filed an amended complaint (the "Second Amended Complaint") on December 23, 2025. The new complaint incorporated much of the substance of the amended complaint proposed in April 2024, but furthermore incorporated revised and fine-tuned allegations and damages bases, a stronger assertion of Yellow's claims, and substantial additions based on Kasowitz' continued review and analysis of relevant documents and to directly address arguments Defendants had made in their motions to dismiss that were not resolved by the Tenth Circuit.

7. The day after the district court entered its amended scheduling order, defendants implicitly acknowledged the strength of the Second Amended Complaint by eschewing another attempt to dismiss and instead filed answers.

8. Not only did the Tenth Circuit decision substantiate the Debtors' good faith belief that its claims against the Teamsters were valid, the decision also confirmed that the alleged "waste" that the Teamsters now complain about is due to the Teamsters own conduct:

> This is not a case "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint[.]" Id. at 1366. It would have been problematic had Yellow merely been "awaiting a ruling on the motion to dismiss before trying to cure any possible defects" with the intent of making late stage "improvements" to its complaint. *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020). But Yellow had little opportunity to move for leave to amend based on the details of the March discovery production prior to dismissal (and judgment). By failing to produce documents before the March 1st deadline, and then filing a motion for a stay on that date, the Teamsters needlessly delayed the discovery process and prevented Yellow from having a reasonable chance to earlier amend its complaint. Absent any other "justifying reasons for the denial of leave to amend[,]" the district court's decision was an abuse of discretion. *Triplett*, 712 F.2d at 447.

*Yellow Corp. v. Int'l Bhd. of Teamsters*, 2025 U.S. App. LEXIS 28943 (10th Cir. Nov. 5, 2025) at *16-17.

9. Moreover, the Tenth Circuit substantiated the underlying merits of a core component of the Debtors' case against the Teamsters:

> Yellow has adequately pleaded repudiation. The proposed amended complaint alleges that the Teamsters categorically refused to support the proposed CHOPS under any circumstances absent renegotiation of the NMFA, and that they made accompanying statements to that effect. IBT sent notices to the Locals to oppose the Phase 2 CHOPS even after it had been revised to meet the Teamsters' demands. And Teamsters President O'Brien publicly stated that the Teamsters "are done making concessions" and that they would "go after [Yellow] with everything we've got[.]" Aplt. App. X at 200. He also allegedly told the Teamsters General Executive Board that the Teamsters' "position is that we do not in any way support Yellow's proposed change of operations" and "will therefore not adhere to any such changes and will reject, up to and including striking, any proposals of such." Id. at 202. In addition to stating their refusal to support the Phase 2 CHOPS, the Teamsters walked out of a meeting on the CHOPS in Chicago and unilaterally cancelled a planned CHOPS hearing in Dallas.
>
> These factual allegations supported Yellow's overarching theory that the Teamsters' ultimate plan was to "stall the Phase 2 CHOPS, blindly decline all proposals by Yellow, and foment an illegal strike." Id. at 201.

*Id.* at \*22-23.

10. This factual background – unsurprisingly omitted from the Teamsters Objection – exposes the Teamsters Objection for what it truly is: a disingenuous direct attack against the law firm pursuing valuable claims against it for leverage and harm. The initiation and continued pursuit of the litigation is meritorious and well within the Debtors' reasonable business judgment to maximize recoveries for all creditors and other parties in interest, as succinctly crystallized by the Tenth Circuit.

11. The substantive merits of the Teamsters Objection fare no better. While acknowledging that the Court should employ a prospective test to determine whether Kasowitz' fees were reasonable when it performed its services, the Teamsters request that the Court adjourn adjudication of the fee application until after the Court is able to determine whether the litigation produced a valuable outcome for the Debtors' estate. This retroactive analysis is not the governing standard, nor is it appropriate here given that Kasowitz was not retained by the Debtors on a contingency fee basis. Even still, Kasowitz' success in the Tenth Circuit and the Teamsters' determination that it needed to answer the Second Amended Complaint rather than seek another dismissal constitutes sufficient grounds to find that the litigation is viable and confirm the decision of the Debtors that continued prosecution of the claims is in the best interest of the Debtors' estates. Tellingly, rather than addressing the Tenth Circuit's decision, the Teamsters ignore it and hope it will fade away in favor of their wish-casting that the Debtors will not recover any proceeds for their estates.

12. Furthermore, while the Teamsters cherry-pick select time entries to provide their ulterior motive with a semblance of cover, the truth is that the litigated matters were complex and deserving of the time and attention given. Of course, it is also of no surprise that the Teamsters

would have preferred the Debtors to prepare for a complex oral argument before the Tenth Circuit as if it was an uncontested first day motion, but that is neither reasonable nor appropriate. Indeed, if the Teamsters actually addressed the underlying issues in dispute in its objection, it would have noted that Kasowitz had to brief before the Tenth Circuit the question of whether exhaustion of the grievance procedure was required, whether IBT was a proper defendant, whether Yellow Corporation was a proper plaintiff, and whether the suit was preempted by the NLRA. Even though the Tenth Circuit decided the appeal on futility of exhaustion grounds and didn't decide the other questions, the Teamsters raised these other issues and they had to be addressed. The Teamsters likewise ignore the fact that the Tenth Circuit *sua sponte* doubled the normally allocated time for oral argument as a testament to the complexity of the issues before it.

13. The Teamsters attempt to evaluate the value of work performed by the number of words in a brief or the length of oral argument without any attention to the legal matters at issue or their complexity bears all the superficial analysis of a large language model rather than that of an experienced attorney. Despite the best attempt of the Teamsters, the work Kasowitz performed for the Debtors' estates cannot be reduced to an algorithm, easily discernable based on page limits (or the willingness of defendants to admit culpability); if that were the case, the Debtors' appeal would have suffered the fate of the overwhelming majority of appeals: affirmation rather than reversal.

14. Finally, any determination regarding the reasonableness of the Kasowitz Final Fee Application has to account for the rates that Kasowitz billed the estate. As previously disclosed, Kasowitz billed the Debtors' estates at its 2022 rates at a 15% discount resulting in a blended attorney rate during the chapter 11 cases of $611.16. Compared with the blended rates of other

professionals in the case of $1292 and $1761, the rates charged by Kasowitz support the argument that the work performed for the Debtors was and continues to be reasonable and appropriate.

15. Accordingly, for the reasons set forth herein and in the Kasowitz Final Fee Application and all other supporting documentation, Kasowitz respectfully requests that the Court enter an order approving its fees and expenses.

Dated: March 16, 2026

Respectfully Submitted,

*/s/ Peter J. Keane*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436)<br>Timothy P. Cairns (DE Bar No. 4228)<br>Peter J. Keane (DE Bar No. 5503)<br>Edward Corma (DE Bar No. 6718)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19801<br>Telephone:   (302) 652-4100<br>Facsimile:    (302) 652-4400<br>Email:          ljones@pszjlaw.com<br>                     tcairns@pszjlaw.com<br>                     pkeane@pszjlaw.com<br>                     ecorma@pszjlaw.com | Marc E. Kasowitz<br>Ronald R. Rossi<br>Matthew B. Stein<br>**KASOWITZ BENSON TORRES LLP**<br>1633 Broadway<br>New York, New York 10019<br>Telephone:   (212) 506-1700<br>Facsimile:    (212) 506-1800<br>Email:          mkasowitz@kasowitz.com<br>                     rrossi@kasowitz.com<br>                     mstein@kasowitz.com |