**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| YELLOW CORPORATION, et al., | ) | |
| | ) | Case No. 23-11069 (CTG) |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

**STATEMENT OF NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND**
**RETIREMENT FUND, TEAMSTERS LOCAL 617 PENSION FUND, AND**
**MANAGEMENT LABOR PENSION FUND LOCAL 1730**
**IN OPPOSITION TO DEBTORS' PROPOSED ORDER AND CASE SCHEDULE**

SULLIVAN NIMEROFF BROWN HILL LLC
William D. Sullivan (No. 2820)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@snbhlaw.com


GROOM LAW GROUP, CHARTERED
Edward J. Meehan (*pro hac vice*)
Samuel I. Levin (*pro hac vice*)
1701 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 857-0620
Email: emeehan@groom.com
        slevin@groom.com

*Special Counsel for the Funds*

Date:   June 8, 2026

1.      The Funds[1] submit this Statement in Response to Debtors' Certification of Counsel and Proposed Order, Dkt. 9005 ("Debtors' Proposal").

### BACKGROUND

2.      In its April 2, 2026 Memorandum Opinion addressing Debtors' settlements with multiemployer pension plans ("MEPPs"), this Court held that it was "reasonable" for settlement purposes to reduce withdrawal liability claims "by 25 percent to account for the requirement of § 1405(b), which (according to this Court's ruling) would require a 50 percent reduction of each claim in the event of the debtors' insolvency."  Dkt. 8799 ("Settlement Opinion") at 26, 49–52.

3.      This Court explained that, at the relevant time, "equity in the debtors traded for positive value" which "generally implies a market conclusion that the company is solvent"—in which case the reduction Debtors would actually be entitled to would be 0 percent, not 25 percent. *See id.* at 51.

4.      This Court also explained that "the one-day proceeding this Court conducted" to determine whether to approve the settlements was "similar" to "an estimation hearing[.]" *Id.* at 39.

5.      This Court further explained that, with respect to 617 and 1730, it "likely already had sufficient [information] to permit the Court to estimate these claims" and "propose[d] that the parties submit a scheduling order that provides for reasonably prompt and simultaneous briefing on a motion to estimate" which "the Court would expect to" rule on "soon thereafter" given "the extensive consideration the Court has given to these issues . . . ." *Id.* at 71.

6.      After more than two months, Debtors now assert that:

---

[1] The "Funds" are three multiemployer pension plans:  New York State Teamsters Conference Pension and Retirement Fund ("NYST"); Teamsters Local 617 Pension Fund ("617"); and Management Labor Pension Fund Local 1730 ("1730").

> The Debtors and each of the Funds have conferred and are unable to agree on either revised settlements or a scheduling order regarding a motion to estimate the Funds' claims. The Debtors and the Funds are engaging in productive discussions to narrow the issues necessary for ***further discovery, briefing or evidentiary hearing*** and intend to submit a proposed scheduling order as soon as possible.

Debtors' Proposal, ¶ 6 (emphasis added).

7.       The Funds' consistent position has been that there is no basis for further discovery or an evidentiary hearing and that all briefing and evidence that is necessary for this Court to issue a final order have already been filed with this Court.  Accordingly, as Debtors are aware, the Fund does not consent to (and does not intend to join) any apparently forthcoming proposed scheduling order.  Instead, the Fund believes this Court should enter a final order resolving Debtors' claims objections forthwith. *See also infra*, ¶¶ 11–19.

8.       Indeed, Debtors previously successfully argued to this Court that "Arbitration Would Needlessly Delay the Debtors' Restructuring and Waste Estate and Judicial Resources" because, absent arbitration, "the parties would resolve these withdrawal liability disputes in less than six months," i.e., by ***August 2024***, in a "more efficient and less costly procedure . . . ." Dkt. 2438, ¶¶ 30–37 (emphasis added).  This Court agreed that "in the unusual circumstances of this case, in which . . . substantial sums will need to be held in reserve . . . the risk of delay" beyond the "trial on the claims allowance dispute to take place in ***August*** of [***2024***]" "counsels strongly in favor of denying stay relief." Dkt. 2765 at 29–30 (emphasis added).

## STANDARD

9.       "The purpose of an estimation proceeding is to avoid delays that may arise from waiting to fix the value of contingent claims." *In re Stone & Webster, Inc.*, 279 B.R. 748, 810 (Bankr. D. Del. 2002).  "A court must only perform an estimation proceeding where the fixing of the claim 'would unduly delay' the administration of the bankruptcy case." *Id.* at 809.  "[T]here

would be no need to estimate . . . claim[s] once the claims were actually adjudicated and valued under § 502(b)." *Kool, Mann, Coffee & Co. v. Coffe*y, 300 F.3d 340, 357 (3d Cir. 2002).

10.     A party seeking to reopen discovery must establish that "good cause exists for the Court to reopen discovery." *Dow Chem. Canada Inc. v. HRD Corp.*, 287 F.R.D. 268, 270 (D. Del. 2012), *aff'd*, 587 F. App'x 741 (3d Cir. 2014).  "To establish good cause, [the moving party] must show that a more diligent pursuit of discovery was impossible." *Id.*

## **ARGUMENT**

11.     This Court should reject Debtors' request for further delay.  It is already more than two months after this Court's Settlement Opinion.  Debtors are proposing additional costly and extended litigation.  Instead, this Court should promptly enter an order to resolve the only remaining factual dispute between Debtors and the Funds: the amount of any reduction under Section 1405(b) based on this Court's existing legal rulings.  Both Debtors and this Court— utilizing a procedure "similar" to "an estimation hearing"—have already concluded that a reduction of 25 percent is "reasonable."  *See* Settlement Opinion at 39, 49–52.  The Court should apply the same result here and now to the Funds.

12.     At least five additional considerations further compel this conclusion.

13.     *First*, this Court stated that it "likely already had sufficient [information] to permit the Court to estimate these claims."  Settlement Opinion at 71.[2]

14.     *Second*, Debtors cannot show (and have not even attempted to do so) that there is good cause to reopen discovery.

---

[2] While this Court was referring specifically to the 617 and 1730 claims, those claims, like the NYST claim, necessarily involve resolution of the Section 1405(b) issue, which is common to each Fund.

15.     *Third*, any further litigation would push the resolution of Debtors' claims objections to more than **two years** after the **August 2024** deadline Debtors convinced this Court was vital to the success of these bankruptcy proceedings and warranted an exception to the statutory requirement that withdrawal liability disputes be arbitrated.  *See supra*, ¶ 7.

16.     *Fourth*, additional litigation would cause significant further expense both for the Funds and Debtors' estates—both directly through the costs incurred in the litigation and indirectly given that Debtors appear to be continuing to delay the effective date of the plan (and distributions) until the withdrawal liability litigation before this Court is complete.

17.     *Fifth*, there is a significant risk to Debtors that continued litigation on this issue would result in a reduction of the Funds' claims by 0 percent, rather than 25 percent.  As this Court already acknowledged, "equity in the debtors traded for positive value" which "generally implies a market conclusion that the company is solvent"—in which case the reduction Debtors would actually be entitled to would be 0 percent, not 25 percent.  *See* Settlement Opinion at 51.  Moreover, in any further briefing on the merits, the Funds would continue to assert that Debtors have waived any ability to assert any reduction under Section 1405(b) multiple times over.  *See, e.g.*, Dkt. 8542, ¶¶ 92–95.  Debtors have not presented (and the Funds are not aware of) any authority that debtors are immune from the generally applicable rules of waiver.

18.     In the alternative, this Court should reconsider its decision denying approval of Debtors' settlements with the Funds.

19.     This Court justified the denials, in part, by explaining that "the cost of [continued] litigation" did not warrant higher settlement values because "the tool of a § 502(c) estimation is readily available to permit the quick and efficient resolution of these claims disputes" "likely" based on the existing "record before the Court . . . ."  Settlement Opinion at 71.  If this Court is not

4

prepared to conduct an estimation in the fashion contemplated in its Settlement Opinion, it should approve the settlements with the Funds to bring finality rather than the endless wasting of Debtors' estate assets on litigation.  *See, e.g.*, Dkt. 8258 at 4 ("These cases have already been very expensive. The result of a conversion to chapter 7 will be a longer period of very expensive litigation that will consume substantial value that could otherwise be distributed to creditors."), *id.* at 42 (observing that "the debtors' bankruptcy counsel['s] . . . professional fees have been running at a rate of $3.5 million/month over the first 24 months of this bankruptcy case" and that "[t]he chapter 11 process is very expensive").

## CONCLUSION

This Court should enter an order estimating a reduction under Section 1405(b) at 25 percent or reconsider its decision denying approval of Debtors' settlements with the Funds.  In all events, this Court should enter a final order on Debtors' claims objections with respect to the Funds forthwith.

Date:  June 8, 2026
      Wilmington, Delaware

SULLIVAN NIMEROFF BROWN HILL LLC

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@snbhlaw.com

GROOM LAW GROUP, CHARTERED
Edward J. Meehan (*pro hac vice*)
Samuel I. Levin (*pro hac vice*)
1701 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 857-0620
Email: emeehan@groom.com
      slevin@groom.com

*Special Counsel for the Funds*

5