**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Bankr. Case No. 23-11069 (CTG) |
| YELLOW CORPORATION, et al.,[1] | |
| | (Jointly Administered) |
| Debtors. | |
| | **Hearing Date: August 18, 2026 at 10:00 a.m. (ET)** |
| | **Objection Deadline: August 11, 2026 at 4:00 p.m. ET** |

**DATA BREACH PLAINTIFFS' MOTION FOR RETROACTIVE ANNULMENT OF
AUTOMATIC STAY AND PLAN INJUNCTION PROVISIONS OF THE DEBTORS'
FOURTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION TO
<u>PERMIT PROSECUTION OF DATA BREACH CLAIMS</u>**

Randolph Davis, Eric Hernandez, Timothy O'Brien, and John Payton (collectively, the "Data Breach Plaintiffs"), on behalf of themselves and a putative class of similarly situated former employees (together with the Data Breach Plaintiffs, the "Data Breach Claimants"), post-petition creditors in the above-captioned, jointly-administered bankruptcy cases (the "Bankruptcy Cases"), hereby moves this Court (the "Motion") pursuant to 11 U.S.C. §§ 105, 362; Federal Rule of Bankruptcy Procedure 9006(b) and Del. Bankr. L.R. 9006-2, for entry of an order granting retroactive annulment of the automatic stay and the Plan Injunction to permit the Data Breach Class Action Adversary Proceeding to proceed against the Debtors and the Liquidating Trustee and to liquidate the Data Breach Claims as Administrative Claims. In support of this Motion, the Data Breach Plaintiffs respectfully state as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

**INTRODUCTION AND BACKGROUND**

On August 6, 2023 and continuing on August 7, 2023 (together, the "Petition Date"), Yellow Corporation and its affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing the Bankruptcy Cases.

On November 19, 2025, the Bankruptcy Court entered an order (the "Confirmation Order") [D.I. 8229] confirming the *Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors (Technical Modifications)* (the "Plan") [D.I. 8829-3] and all Plan supplements, including the Liquidating Trust Agreement (defined below) [D.I. 9071].

On July 1, 2026, the Debtors filed their *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Relief* [D.I. 9073] (the "Effective Date Notice"). The Effective Date Notice provided that the Effective Date, as defined in the Plan, occurred on July 1, 2026. *Id*.

The Effective Date Notice provides that:

> [E]xcept as otherwise provided by the Confirmation Order, the Plan, or a Final Order of the Bankruptcy Court, the deadline for filing requests for payment of Administrative Claims shall be **July 31, 2026** (the "Administrative Bar Date"), which is the first Business Day that is thirty (30) days after the Effective Date. If a Holder of an Administrative Claim (other than the U.S. Trustee) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Bar Date, such Administrative Claim shall be forever barred and discharged. If for any reason any such Administrative Claims is incapable of being forever barred and disallowed, then the Holder of such Claim shall

2

in no event have recourse to any assets or property to be distributed pursuant to the Plan.

[D.I. 9073] (emphasis in original).

On the Effective Date, the Debtors filed the *Seventh Amended Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed By the Debtors and The Official Committee of Unsecured Creditors* [D.I. 9071] which included the Liquidating Trust Agreement dated July 1, 2026. The Liquidating Trust Agreement appoints Daniel H. Golden as trustee of the Liquidating Trust.

However, three business days prior to the Effective Date, on or about June 26, 2026, the Debtors began notifying (the "Breach Notice") the Data Breach Claimants (consisting of former employees of the Debtors) about a data breach (the "Data Breach") relating to employee personally identifiable information ("PII") that occurred on March 27, 2025, nearly fifteen months prior to the issuance of the Breach Notice.  A version of the Breach Notice is attached as **Exhibit A**.

The Data Breach and Data Breach Notice both occurred post-petition (and pre-Effective Date) and the claims related thereto are entitled to administrative expense priority.[2]

The Plan, as confirmed and now effective, provides, among other things, for broad injunctive relief in as set forth in Article IX (E) (the "Plan Injunction"), which provides in part:

> Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors or the Liquidating Trust, as applicable, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the

---

[2] The basis for the Data Breach Claimants' administrative expense claim is set forth in the *Motion of Data Breach Claimants for Allowance and Payment of Administrative Expenses* filed contemporaneously herewith.

Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order; . . . (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan. . . . provided, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases; provided, however, the foregoing shall not prevent any party from pursuing a Litigation Claim (as defined in the ADR Procedures Order) in accordance with the terms of the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Plan, Article IX (E) [D.I. 8829-3].

Article V (E)(b) of the Plan also provides, among other things, that:

(b) for the avoidance of doubt, subject to the automatic stay under section 362 of the Bankruptcy Code and the injunction under Article IX.E of this Plan, if there is available insurance, any party with rights against or under the applicable Insurance Policy, including, without limitation, the Estates, the Liquidating Trust and Holders of Insured Claims, may pursue such rights, and the Debtors and the Liquidating Trust may, but shall not be required to, move to limit an Insured Claim to the Face Amount of such Insured Claim less the total coverage available with respect to that Insured Claim under the Insurance Policies…

Article V (E)(b) [D.I. 8829-3].

As it stands today, the Debtors gave notice of claims arising from the Data Breach three business days prior to the Effective Date which, given the Plan's language, including the Plan

4

Injunction, may have immediately become enjoined Claims or Causes of Action (as defined in the Plan.) In order to protect and preserve the post-petition administrative expense claims of the Data Breach Claimants, in addition to this Motion, the Data Breach Plaintiffs 1) on July 24, 2026 provided via email a draft copy of the Data Breach Class Action Adversary Proceeding and requested that the Debtors and/or Liquidating Trustee stipulate to relief from the Plan Injunction and any applicable stays; 2) on July 30, 2026, filed the Class Action Adversary Proceeding styled *Randolph Davis, Eric Hernandez, Timothy O'Brien, and John Payton, on behalf of themselves and all others similarly situated v. Yellow Corporation, et al.*; Adv. Pro. No. 26-50597 (CTG) (the "Data Breach Class Action Adversary Proceeding" a copy of which can be obtained at https://dm.epiq11.com/case/yellowcorporation/dockets at Docket No. 9144[3]; and 3) contemporaneously with this Motion, intends to file a *Motion of Data Breach Claimants for Allowance and Payment of Administrative Expenses* in order to remain in compliance with the Administrative Bar Date.

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are § 105 and § 362 of the Bankruptcy Code as well as Federal Rule of Bankruptcy Procedure 9006(b) and Del. Bankr. L.R. 9006-2.

4.      In accordance with Del. Bankr. L.R. 9013-1(f), the Data Breach Plaintiffs consent to the entry of a final judgment or order with respect to this motion if it is determined that the

---

[3] Copies also shall be made available upon request to undersigned counsel.

Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the Constitution of the United States.

### **RELIEF REQUESTED AND BASIS THEREFOR**

5.      The Data Breach Claimants respectfully request that the Bankruptcy Court enter an order granting the retroactive annulment of the automatic stay and the Plan Injunction to permit the Data Breach Class Action Adversary Proceeding to proceed against the Debtors and the Liquidating Trustee and to liquidate the Data Breach Claims as Administrative Claims.

6.      The Plan Injunction set forth in Article IX (E) of the Plan provides that:

> all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors or the Liquidating Trust, as applicable, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind…

Plan, Article IX (E) [D.I. 8829-3].

7.      The Plan Injunction also provides that, with certain exceptions that are not applicable here, "[n]otwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases[.]" Plan, Article IX (E) [D.I. 8829-3].

**But For the Delayed Data Breach Notice, No Relief Would Be Necessary**

8.      Notwithstanding the Plan Injunction's language regarding the continuation of the automatic stay, the automatic stay of 11 U.S.C. § 362 would not have applied to post-petition tort claims. By its terms, the automatic stay applies only to claims and causes of actions against a debtor "that was or could have been commenced before the commencement of the case under [the Bankruptcy Code,] or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code.] See 11 U.S.C. § 362 (a)(1); *In re Grossman's Inc.*, 607 F.3d 114, 122 (3d Cir. 2010). Nothing in § 362 prevents a creditor that asserts a post-petition claim from seeking to liquidate that claim. *In re Smallhold, Inc.*, 675 B.R. 313, 330 (Bankr. D. Del. 2025). And debtors-in-possession may also be sued under 28 U.S.C. § 959(a), which provides that:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a).

9.      As the Data Breach occurred post-petition on March 27, 2025, had the Data Breach Plaintiffs and Data Breach Claimants received timely notice of the Data Breach, those claims could have been asserted and liquidated without leave of the Bankruptcy Court (but subject to the administrative expense process.) However, by the Debtors inexplicably delaying the Data Breach Notice until the eve of the Effective Date, the Data Breach Plaintiffs were denied such a process and were immediately enjoined by the Plan Injunction.

**The Bankruptcy Court Should Grant Relief from the Plan Injunction**

10.     The Plan and the Confirmation Order do not recite the standards for relief from the Plan Injunctions, but it is customary for courts in this district and elsewhere to look to the same grounds applicable to relief from the automatic stay pursuant to 11 U.S.C. § 362(d). *See e.g. In re Town Sports Int'l*, 2023 WL 8827193, at *4 (D. Del.) (affirming court's application of *Rexene* and *W.R. Grace & Co* for relief from plan injunction); *In re SquareTwo Fin. Servs. Corp.*, 2017 WL 4012818, at *1 (Bankr. S.D.N.Y.) (applying the standard for relief for considering whether to lift the automatic stay when considering a request for relief from a plan injunction).

11.     Section 362(d)(1) of the Bankruptcy Code provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay [ ] for cause." 11 U.S.C. § 362(d)(1).

12.     Because the term "cause" is not defined in § 362(d) of the Bankruptcy Code, courts "conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *Town Sports Int'l*, 2023 WL 8827193, at *4 (quoting *In re Trump Ent. Resorts, Inc.*), 526 B.R. 116, 120 (Bankr. D. Del. 2015).

13.     Courts in the Third Circuit consider three factors when balancing competing interests of debtors and movants: "(1) whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the nonbankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits." *In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 (Bankr. D. Del.) (citing *Matter of Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992), and *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993)). "To

establish cause, the party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips significantly in [its] favor." *Town Sports Int'l, 2023 WL 8827193, at \*4* (quoting *In re Am. Classic Voyages, Co.*, 298 B.R. 222, 225 (D. Del. 2003) (internal quotations and citation omitted).

14.     As to *Rexene*'s prejudice factor, it is questionable if the Debtors or Yellow Liquidating Trust will suffer any prejudice. At the onset of these Bankruptcy Cases, the Debtor sought, and received, approval to maintain no fewer than eleven Primary and Excess Cyber policies[4] The Insurance Motion states that:

> The Debtors currently maintain cyber liability insurance coverage (the "Cyber Liability Insurance") for losses relating to the damage to, or loss of information from, information technology ("IT") systems and networks. Due to the claims-made-and-notified structure of Cyber Liability Insurance, an insured party must make a claim and notify the insurer during the active period of the policy for coverage to apply. The Debtors maintain Cyber Liability Insurance currently, but such coverage will lapse when the policy expires on August 31, 2023. As such, the Debtors seek the authority, to negotiate, renew, and procure such run-off coverage to provide against unforeseen issues.

Insurance Motion at ¶ 15.

15.     Upon information and belief, the Cyber Liability Insurance (as defined in the Insurance Motion,) remains in effect and pursuant to the Plan certain rights under the Insurance Policies, including the Cyber Liability Insurance, were assigned to the Yellow Liquidation Trust.

---

[4] See *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance Coverage Entered Into Prepetition and Pay Related Prepetition Obligations and (B) Renew, Supplement, Modify, or Purchase Insurance Coverage, (II) Approving Continuation of the Surety Bond Program, and (III) Granting Related Relief* (the "Insurance Motion") [D.I. 6] and the Final Order approving thereof at [D.I. 523]

See Plan, Article I (A) defining "Liquidating Trust Assets" to include the Assigned Insurance Rights.[5]

16.    If such is the case[6], the Debtors and/or the Yellow Liquidating Trust would have no economic interest in the Data Breach Case. *See In the Matter of Fernstrom Storage and Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991) (lifting stay to allow lawsuit in which "the real economic interests…[were] those of the various insurers.")

17.    To the extent that the Debtors or Yellow Liquidating Trust do face potential liability, contemporaneous with the filing of this Motion, the Data Breach Plaintiffs intend to file their *Motion of Data Breach Claimants for Allowance and Payment of Administrative Expenses* asserting post-petition administrative expense claims for damages arising from the Data Breach. There can be no prejudice when the Debtors or Yellow Liquidating Trustee will have to address and defend these issues in any case in order to liquidate a timely filed administrative expense claim.

18.    As to the second *Rexene* factor, the hardship to the Data Breach Claimants considerably outweighs the hardship to the Debtors or Yellow Liquidating Trust. As set forth in

---

[5] "Assigned Insurance Rights" in turn is defined as ""collectively, any and all rights, titles, privileges, interests, claims, demands or entitlements of the Debtors or their Estates to any and all proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity arising under, or attributable to, any and all Insurance Policies, now existing or hereafter arising, accrued, or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent subject to the terms of the Insurance Policies and applicable law."

"Insurance Policies" are defined in the Plan as "collectively, all of the Debtors' insurance policies, including but not limited to any property and casualty policies, punitive damage policies, commercial general liability policies, **cyber policies**, professional liability policies, D&O Liability Insurance Policies and all agreements, documents or instruments relating thereto, and any of the Debtors' rights under any third parties' insurance policies." (emphasis added).

[6] Counsel to the Data Breach Claimants emailed counsel to the Debtors and Liquidating Trustee to resolve this Motion via stipulation and received no response. As such, the Data Breach Plaintiffs have not been able to confirm whether the Cyber Liability Policies or any other Insurance Policies relevant to the Data Breach Claims remain in effect.

the Data Breach Notice, the Debtors identified that the information affected by the Data Breach may include some or all of the following: name, Social Security number, date of birth, driver's license or state identification card number, passport number, other government issued identification card numbers, financial account number, payment card number, medical information, and health insurance information. *See* Data Breach Notice, Ex. A. The only apparent assistance offered to those that may have had their information stolen was to direct them to the three major credit reporting agencies. While the Debtors and Yellow Liquidating Trust will suffer little to no hardship, the Data Breach Claimants are left to their own devices to monitor their credit and without compensation for the post-petition Data Breach.

19. The probability of success of the Data Breach Claims weighs in favor of relief from the Plan Injunction. "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re SCO Grp., Inc.*, 395 B.R. 852, 859 (Bankr. D. Del. 2007). The Data Breach Notice and the Data Breach Class Action Adversary Proceeding provide ample support for the Data Breach Claims and likelihood of success of the claim therein.

**The Bankruptcy Court Should Grant Retroactive Relief**

20. To the extent the Bankruptcy Court finds that the Plan Injunction applies to the Data Breach Claims but further finds that annulment of the Plan Injunction is appropriate, the Data Breach Plaintiffs request that the Bankruptcy Court rule that such annulment is retroactive to July 30, 2026, the filing date of the Data Breach Class Action Adversary Proceeding.

21. Courts in the Third Circuit and others have held that actions that may be in violation of the stay, although void (as opposed to voidable), may be revitalized in appropriate circumstances by retroactive annulment of the stay. *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) (citing *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994) and *Soares v. Brockton Credit Union (In*

*re Soares)*, 107 F.3d 969, 976–77 (1st Cir.1997)); *see also In re Levitz Furniture Inc.*, 267 B.R. 516, 522 (Bankr. D. Del. 2000). The court may weigh the equities of a matter to determine whether retroactive relief is warranted, and if so, the date on which such relief should be granted. *In re Rupari Holding Corp.*, 573 B.R. 111, 120 (Bankr. D. Del. 2017).

22.     Retroactive relief is important and appropriate here. Section 503(a) provides that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. 503(a). The bankruptcy court's power to set and enforce bar dates extends to post-petition administrative expense claims and those claims are subject to discharge if not timely filed. *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221, 232-23 (3d Cir. 2021).

23.     Given the impending Administrative Bar Date and three business days' notice of the Data Breach prior to the Effective Date, the Data Breach Plaintiffs filed the Data Breach Class Action Adversary Proceeding out of an abundance of caution to preserve the rights of the Data Breach Claimants and not face the extreme sanction of the Data Breach Claims being forever discharged. It is also unclear whether an unfiled complaint asserting class claims can adequately serve as the basis for an administrative expense claim or motion in support thereof.[7]

24.     Given the equities of the case and the timing of the Data Breach Notice, retroactive relief is appropriate.

25.     Alternatively, the Data Breach Plaintiffs request that the Administrative Bar Date be extended pursuant to Fed. R. Bankr. P. 9006 for the re-filing (if necessary) of the Data Breach Class Action Adversary Proceeding until such time that the Bankruptcy Court rules on this Motion.

---

[7] The Data Breach Plaintiffs submit that they will not take any action in furtherance of the Data Breach Class Action Adversary Proceeding until the Bankruptcy Court rules on this issue (or as otherwise required by the Bankruptcy Code and Bankruptcy Rules.)

WHEREFORE, for the foregoing reasons, the Data Breach Plaintiffs, on behalf of themselves and the Data Breach Claimants, respectfully request that the Bankruptcy Court enter an order: (a) annulling the automatic stay and Plan Injunction, retroactive to July 30, 2026, to permit the Data Breach Class Action Adversary Proceeding to proceed; and (b) granting such other relief as the Bankruptcy Court deem just and proper.

DATED: July 30, 2026

Respectfully submitted,

**COOCH AND TAYLOR, P.A.**

*/s/ R. Grant Dick IV*
R. Grant Dick IV (No. 5123)
Dean R. Roland (No. 6459)
Kevin Daniel Levitsky (No. 7228)
1000 N. West Street, Suite 1500
Wilmington, DE  19801
Telephone: (302) 984-3867
Facsimile:  (302) 984-3989
Email: gdick@coochtaylor.com
        droland@coochtaylor.com
        klevitsky@coochtaylor.com

*Attorneys for Data Breach Plaintiffs and Proposed Class*

**OF COUNSEL:**

Joe P. Leniski, Jr.,
**HERZFELD, SUETHOLZ, GASTEL,
LENISKI AND WALL PLLC**
1920 Adelicia Street, Suite 300
Nashville, Tennessee 37212
Phone: (615) 800-6225
Email: joey@hsglawgroup.com

*Attorneys for Data Breach Plaintiffs and Proposed Class*

13