**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>YELLOW CORPORATION, et al.,[1]<br><br>Debtors. | Chapter 11<br>Bankr. Case No. 23-11069 (CTG)<br><br>(Jointly Administered) |

**MOTION OF DATA BREACH CLAIMANTS FOR**
**ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES**

Randolph Davis, Eric Hernandez, Timothy O'Brien, and John Payton (collectively, the "Data Breach Plaintiffs"), on behalf of themselves and a putative class of similarly situated former employees (together with the Data Breach Plaintiffs, the "Data Breach Claimants"), post-petition creditors in the above-captioned, jointly-administered bankruptcy cases (the "Bankruptcy Cases"), hereby file this motion (the "Motion") pursuant to 11 U.S.C. § 503(a) and (b) for the allowance and ultimate payment of administrative expenses in the form of post-petition damages as set forth in the Data Breach Class Action Adversary Proceeding (as defined below). In support of the Motion, the Data Breach Plaintiffs state as follows:

**INTRODUCTION AND BACKGROUND**

On August 6, 2023 and continuing on August 7, 2023 (together, the "Petition Date"), Yellow Corporation and its affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing the Bankruptcy Cases.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

1

On November 19, 2025, the Bankruptcy Court entered an order (the "Confirmation Order") [D.I. 8229] confirming the *Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors (Technical Modifications)* (the "Plan") [D.I. 8829-3] and all Plan supplements, including the Liquidating Trust Agreement (defined below) [D.I. 9071].

On July 1, 2026, the Debtors filed their *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Relief* [D.I. 9073] (the "Effective Date Notice"). The Effective Date Notice provided that the Effective Date, as defined in the Plan, occurred on July 1, 2026. *Id.*

The Effective Date Notice provides that:

> [E]xcept as otherwise provided by the Confirmation Order, the Plan, or a Final Order of the Bankruptcy Court, the deadline for filing requests for payment of Administrative Claims shall be **July 31, 2026** (the "Administrative Bar Date"), which is the first Business Day that is thirty (30) days after the Effective Date. If a Holder of an Administrative Claim (other than the U.S. Trustee) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Bar Date, such Administrative Claim shall be forever barred and discharged. If for any reason any such Administrative Claims is incapable of being forever barred and disallowed, then the Holder of such Claim shall in no event have recourse to any assets or property to be distributed pursuant to the Plan.

[D.I. 9073] (emphasis in original).

On the Effective Date, the Debtors filed the *Seventh Amended Plan Supplement for the Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed By the Debtors and The Official Committee of Unsecured Creditors* [D.I. 9071] which included the Liquidating Trust Agreement dated July 1,

2026. The Liquidating Trust Agreement appoints Daniel H. Golden as trustee of the Liquidating Trust.

However, three business days prior to the Effective Date, on or about June 26, 2026, the Debtors began notifying (the "Breach Notice") the Data Breach Claimants (consisting of former employees of the Debtors) about a data breach (the "Data Breach") relating to employee personally identifiable information ("PII") that occurred on March 27, 2025, nearly fifteen months prior to the issuance of the Breach Notice.  A version of the Breach Notice is attached as **Exhibit A**.

The Data Breach and Data Breach Notice both occurred post-petition (and pre-Effective Date) and, as set forth below, the claims related thereto are entitled to administrative expense priority.

The Plan, as confirmed and now effective, provides, among other things, for broad injunctive relief in as set forth in Article IX (E) (the "Plan Injunction"), which provides in part:

> Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors or the Liquidating Trust, as applicable, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order; . . . (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan. . . . provided, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. Notwithstanding anything to the contrary in the Plan, the Plan Supplement,

3

or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases; provided, however, the foregoing shall not prevent any party from pursuing a Litigation Claim (as defined in the ADR Procedures Order) in accordance with the terms of the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Plan, Article IX (E) [D.I. 8829-3].

Article V (E)(b) of the Plan also provides, among other things, that:

(b) for the avoidance of doubt, subject to the automatic stay under section 362 of the Bankruptcy Code and the injunction under Article IX.E of this Plan, if there is available insurance, any party with rights against or under the applicable Insurance Policy, including, without limitation, the Estates, the Liquidating Trust and Holders of Insured Claims, may pursue such rights, and the Debtors and the Liquidating Trust may, but shall not be required to, move to limit an Insured Claim to the Face Amount of such Insured Claim less the total coverage available with respect to that Insured Claim under the Insurance Policies…

Article V (E)(b) [D.I. 8829-3].

As it stands today, the Debtors gave notice of claims arising from the Data Breach three business days prior to the Effective Date which, given the Plan's language, including the Plan Injunction, may have immediately become enjoined Claims or Causes of Action (as defined in the Plan.) In order to protect and preserve the post-petition administrative expense claims of the Data Breach Claimants, in addition to this Motion, the Data Breach Plaintiffs 1) on July 24, 2026 provided via email a draft copy of the Data Breach Class Action Adversary Proceeding and requested that the Debtors and/or Liquidating Trustee stipulate to relief from the Plan Injunction and any applicable stays[2]; 2) on July 30, 2026, filed the Class Action Adversary Proceeding styled

---

[2] No response was received.

*Randolph Davis, Eric Hernandez, Timothy O'Brien, and John Payton, on behalf of themselves and all others similarly situated v. Yellow Corporation, et al.*; Adv. Pro. No. 26-50597 (CTG) (the "Data Breach Class Action Adversary Proceeding" a copy of which is attached hereto as **Exhibit B**)[3] [Main Case D.I. 9144]; and 3) on July 30, 2026, filed the *Data Breach Plaintiffs' Motion for Retroactive Annulment of Automatic Stay and Plan Injunction Provisions of the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization to Permit Prosecution of Data Breach Claims* [D.I. 9145].

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are § 503(b)(1) and § 507(a)(2) of the Bankruptcy Code.

4.      In accordance with Del. Bankr. L.R. 9013-1(f), the Data Breach Plaintiffs consent to the entry of a final judgment or order with respect to this motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the Constitution of the United States.

---

[3] The claims asserted in the Data Breach Class Action Adversary Proceeding are hereinafter referred to as the "Data Breach Claims")

**RELIEF REQUESTED AND BASIS THEREFOR**

5.      The Data Breach Claimants respectfully request that the Bankruptcy Court enter an order allowing the Data Breach Claims upon the liquidation of those claims via the Data Breach Class Action Adversary Proceeding.

6.      Section 503(b) of the Bankruptcy Code provides, in pertinent part, that allowed administrative expense claims exist for the "actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A).  Section 507(a) of the Bankruptcy Code provides that administrative expense claims that are allowed under section 503(b) of the Bankruptcy Code have second priority.  11 U.S.C. § 507(a)(2).

7.      "Actual and necessary costs" should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible. *See Reading Co. v. Brown,* 391 U.S. 471, 483, 88 S. Ct. 1759, 1766, 20 L. Ed. 2d 751 (1968).

**The Data Breach Claims are Entitled to Administrative Expense Priority**

8.      Pursuant to the Supreme Court's *Reading* doctrine, "a post-petition tort committed by a debtor-in-possession within the course and scope of its continued operation of the estate's business may, itself, be considered a cost of doing business and is, therefore, entitled to administrative expense priority under section 503(b)(1)(A)." *In re Blanchard*, 547 B.R. 347, 353 (Bankr. C.D. Cal. 2016); *see also In re Mallinckrodt PLC*, 2021 WL 4876908, at *3 (Bankr. D. Del.). The *Reading* doctrine allows for post-petition tort claims as administrative expenses "if those claims arise from actions related to the preservation of a debtor's estate despite having no discernable benefit to the estate." *Mallinckrodt*, 2021 WL 4876908, at *3 (quoting *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 173 (3d Cir. 2012)).

9.      Based on *Reading*, courts in Delaware and the Third Circuit have granted requests for administrative expense claims arising from a variety of tort actions. *See Philadelphia Newspapers*, 690 F.3d 161, 173 (3d Cir. 2012) (also digesting cases: *In re B. Cohen & Sons Caterers, Inc.*, 143 B.R. 27 (E. D. Pa. 1992) (granting an administrative expense claim for injuries resulting from a slip and fall while on the debtor's premises); *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461 (Bankr. D. Del. 2006) (granting an administrative expense claim to the lessor of machines that the debtor-lessee returned damaged where the damage occurred post-petition); *In re Women First Healthcare, Inc.*, 332 B.R. 115 (Bankr. D. Del. 2005) (granting the stalking horse bidder an administrative expense claim as compensation for its reliance on the debtor's negligent misrepresentations regarding the sale). On the other hand, Courts have also denied administrative expense claims under *Reading* where the alleged tort claims were speculative or too strained to be considered related to the preservation of a debtor's estate. *See Philadelphia Newspapers*, 690 F.3d at 173.

10.      For a claimant to be entitled to an administrative expense claim under the *Reading* doctrine, it must demonstrate that its allegations support a tort cause of action. *In re Lucky's Mkt. Parent Co.*, 2021 WL 1100066, at *12 (Bankr. D. Del.), *aff'd*, 2022 WL 843763 (D. Del.). The Data Breach Plaintiffs have adequately done so. See Data Breach Class Action Adversary Proceeding attached as Exhibit B. Further, the post-petition Data Breach itself cannot be contested as the Debtors acknowledged the Data Breach just prior to the Effective Date.

11.      Nor can the Debtors or Liquidating Trustee assert that claims such as the Data Breach Claims are not "costs ordinarily incident to operation of a business." At the onset of these

Bankruptcy Cases, the Debtor sought, and received, approval to maintain no fewer than eleven Primary and Excess Cyber policies.[4] The Insurance Motion states that:

> The Debtors currently maintain cyber liability insurance coverage (the "Cyber Liability Insurance") for losses relating to the damage to, or loss of information from, information technology ("IT") systems and networks. Due to the claims-made-and-notified structure of Cyber Liability Insurance, an insured party must make a claim and notify the insurer during the active period of the policy for coverage to apply. The Debtors maintain Cyber Liability Insurance currently, but such coverage will lapse when the policy expires on August 31, 2023. As such, the Debtors seek the authority, to negotiate, renew, and procure such run-off coverage to provide against unforeseen issues.

*Insurance Motion* at ¶ 15.

12.     There can also be no dispute that the maintenance and security of the employee information was and is relevant to these Bankruptcy Cases given the extensive litigation regarding employee claims in these cases, including pension liability issues and the WARN claims litigation.

13.     Finally, upon information and belief, the Cyber Liability Insurance (as defined in the Insurance Motion,) remains in effect and pursuant to the Plan certain rights under the Insurance Policies, including the Cyber Liability Insurance, were assigned to the Yellow Liquidation Trust. See Plan, Article I (A) defining "Liquidating Trust Assets" to include the Assigned Insurance Rights.[5]

---

[4] See *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance Coverage Entered Into Prepetition and Pay Related Prepetition Obligations and (B) Renew, Supplement, Modify, or Purchase Insurance Coverage, (II) Approving Continuation of the Surety Bond Program, and (III) Granting Related Relief* (the "Insurance Motion") [D.I. 6] and the Final Order approving thereof at [D.I. 523]

[5] "Assigned Insurance Rights" in turn is defined as ""collectively, any and all rights, titles, privileges, interests, claims, demands or entitlements of the Debtors or their Estates to any and all proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity arising under, or attributable to, any and all Insurance Policies, now existing or hereafter arising, accrued, or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent subject to the terms of the Insurance Policies and applicable law."

8

14.     Accordingly, as the maintenance and security of the employee information was and continues to be 1) relevant to these Bankruptcy Cases; 2) costs ordinarily incident to operation of a business; and 3) related to the preservation of a Debtors' estates, the Data Breach Claimants are entitled to administrative expense claims under Reading and pursuant to 11 U.S.C. § 503(b).

WHEREFORE, for the foregoing reasons, the Data Breach Plaintiffs, on behalf of themselves and the Data Breach Claimants, respectfully request that the Bankruptcy Court enter an order: (a) approving the allowance of the Data Breach Claims as an unliquidated administrative expense claim pending the resolution of the Data Breach Class Action Adversary Proceeding; and (b) granting such other relief as the Bankruptcy Court deem just and proper.

[*Remainder of Page Intentionally Left Blank*]

---

"Insurance Policies" are defined in the Plan as "collectively, all of the Debtors' insurance policies, including but not limited to any property and casualty policies, punitive damage policies, commercial general liability policies, *cyber policies*, professional liability policies, D&O Liability Insurance Policies and all agreements, documents or instruments relating thereto, and any of the Debtors' rights under any third parties' insurance policies." (emphasis added).

DATED: July 30, 2026

Respectfully submitted,

**COOCH AND TAYLOR, P.A.**

*/s/ R. Grant Dick IV*
R. Grant Dick IV (No. 5123)
Dean R. Roland (No. 6459)
Kevin Daniel Levitsky (No. 7228)
1000 N. West Street, Suite 1500
Wilmington, DE  19801
Telephone: (302) 984-3867
Facsimile:  (302) 984-3989
Email: gdick@coochtaylor.com
        droland@coochtaylor.com
        klevitsky@coochtaylor.com

*Attorneys for Plaintiffs and Proposed Class*

**OF COUNSEL:**

Joe P. Leniski, Jr.,
**HERZFELD, SUETHOLZ, GASTEL,
LENISKI AND WALL PLLC**
1920 Adelicia Street, Suite 300
Nashville, Tennessee 37212
Phone: (615) 800-6225
Email: joey@hsglawgroup.com

*Attorneys for Plaintiffs and Proposed Class*